# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; **NANCY PEASE**, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; **MARILYN L. HOLLEY**, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; **DONNA WARE**, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; and **DONNETTE WENGERD**, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate, and as representative of others similarly situated, and **ROSANNE CHERNICK**, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated, | Civil Action No.  11-cv-1754 (SRC)(MAS)<br><br>CIVIL ACTION |
|           Plaintiffs, | |
|     v. | **DEFENDANT BASF CATALYSTS LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| **BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, CAHILL GORDON & REINDEL**, a partnership including a professional corporation, **THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, GLENN HEMSTOCK, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, SCOTT A. MARTIN, JOHN DOE BUSINESS ENTITIES 1 to 100; JOHN DOE BUSINESS ENTITIES 101 to 200; JOHN DOE LAWYERS 1 to 500; and, JOHN DOE 1 to 500,** | **Oral Argument Requested**<br><br>**Electronically Filed** |
|           Defendants. | |

Eugene F. Assaf, P.C. (*pro hac vice*)
Michael F. Williams
Daniel A. Bress (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Defendant*
*BASF Catalysts LLC*

Stephen M. Orlofsky
New Jersey Resident Partner
David C. Kistler
Blank Rome LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
Phone: (609) 750-2646
Facsimile: (609) 750-7701

*Counsel for Defendant*
*BASF Catalysts LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................3

LEGAL STANDARDS ON A MOTION TO DISMISS ..........................6

ARGUMENT ..........................................................................................6

I.    PLAINTIFFS DO NOT STATE A CLAIM UNDER RICO
BECAUSE THEY CANNOT ALLEGE INJURY TO "BUSINESS
OR PROPERTY" ............................................................................7

    A.    Plaintiffs' Personal Injury Claims Are Not Injuries To
"Business Or Property" Under RICO. ..................................10

    B.    The Loss Of A Speculative Opportunity To Obtain A Financial
Payment Is Not An Injury To "Business Or Property." ......................15

    C.    Plaintiffs Cannot Plead RICO Conspiracy. ..........................17

II.    THE FRAUDULENT CONCEALMENT CLAIM (AND ALL
COUNTS IN THE COMPLAINT) FAIL FOR LACK OF
PROXIMATE CAUSE....................................................................17

III.    NEW JERSEY'S BROAD LITIGATION PRIVILEGE BARS CIVIL
LIABILITY FOR STATEMENTS MADE IN LITIGATION ....................24

    A.    The Litigation Privilege Protects Statements Made In
Litigation. ............................................................................24

    B.    Defendants Are Absolutely Immune From Civil Liability Based
On Statements Made In Litigation. ......................................27

IV.    PLAINTIFFS' REMAINING COMMON-LAW CLAIMS ARE
LIKEWISE SUBJECT TO DISMISSAL....................................30

    A.    Unjust Enrichment Has No Application In This Lawsuit. .................30

    B.    The Civil Conspiracy Claim Fails As A Matter Of Law. .................32

V.    THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFFS'
      REQUEST TO OVERTURN PRIOR STATE COURT JUDGMENTS ......35

CONCLUSION ......................................................................................................40

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aetna Health, Inc. v. Carabasi Chiropractic Ctr., Inc.*,
   2006 WL 66460 (N.J. Super. Ct. App. Div. Jan. 13, 2006) .........................31

*Agacoili v. Gonzo*,
   2010 WL 606697 (D.N.J. Feb. 18, 2010)...................................................25

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
   228 F.3d 429 (3d Cir. 2000) ........................................................................19

*Anderson v. Ayling*,
   396 F.3d 265 (3d Cir. 2005) ........................................................................10

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)............................................................................... 18, 19

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006)......................................................................................10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)....................................................................................6

*Baglini v. Lauletta*,
   768 A.2d 825 (N.J. Super. Ct. App. Div. 2001) ...........................................25

*Banco Popular North America v. Gandi*,
   876 A.2d 253 (N.J. 2005) .............................................................................34

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................6

*Bradley v. Phillips Petroleum*,
   527 F. Supp. 2d 625 (S.D. Tex. 2007)..........................................................13

*Brown v. Ajax Paving Indus., Inc.*,
   2011 WL 768317 (E.D. Mich. Feb. 28, 2011) .............................................13

*Bullock v. Sloane Toyota Inc.*,
   2011 WL 713622 (3d Cir. Mar. 2, 2011) .....................................................37

*Cantell v. Adience, Inc.*,
    2010 WL 3046112 (Ohio Ct. App. Aug. 5, 2010)........................................20

*Castro v. NYT Television*,
    851 A.2d 88 (N.J. Super. Ct. App. Div. 2004) ..............................................31

*Cetel v. Kirwan Fin. Group, Inc.*,
    460 F.3d 494 (3d Cir. 2006) ...........................................................................8

*Circiello v. Alfano*,
    612 F. Supp. 2d 111 (D. Mass. 2009).................................................... 13, 17

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002) .........................................................................19

*Commercial Ins. Co. of Newark v. Steiger*,
    928 A.2d 126 (N.J. Super. Ct. App. Div. 2007) ...........................................25

*Component Hardware Group, Inc. v. Trine Rolled Moulding Corp.*,
    2007 WL 2177667 (D.N.J. July 27, 2007) ...................................................28

*Curbison v. United States Gov't of N.J.*,
    242 Fed. Appx. 806 (3d Cir. June 27, 2007) ................................................32

*Curley v. Cumberland Farms Dairy, Inc.*,
    728 F. Supp. 1123 (D.N.J. 1990)..................................................................17

*Cycle Chem, Inc. v. Campbell*,
    2009 WL 44746 (D.N.J. Jan. 6, 2009)..........................................................37

*D & D Assocs., Inc. v. Board of Educ. of N. Plainfield*,
    2007 WL 4554208 (D.N.J. Dec. 21, 2007) ..................................................34

*Dawson v. Bunker Hill Plaza Assocs.*,
    673 A.2d 847 (N.J. Super. Ct. App. Div. 1996) ...........................................18

*DeVivo v. Ascher*,
    550 A.2d 163 (N.J. Super. Ct. App. Div. 1988) ..................................... 25, 29

*District 1199P Health and Welfare Plan v. Janssen, L.P.*,
    2011 WL 1086004 (D.N.J. Mar. 21, 2011) ..................................................32

*District of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (1983).................................................................36

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000) ................................................ 15, 16

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   3 F. Supp. 2d 518 (D.N.J. 1998)................................................16

*Durand Equip. Co. v. Superior Carbon Prods., Inc.*,
   591 A.2d 987 (N.J. Super. Ct. App. Div. 1991) ...........................25

*Evans v. City of Chicago*,
   434 F.3d 916 (7th Cir. 2006) ............................................... 11, 15

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005).................................................................36

*Gatson v. New Jersey*,
   2009 WL 3667066 (D.N.J. Nov. 4, 2009) ..................................37

*General Refractories Co. v. Fireman's Fund Ins. Co.*,
   337 F.3d 297 (3d Cir. 2003) .................................................. 33-35

*Genty v. Resolution Trust Corp.*,
   937 F.2d 899 (3d Cir. 1991) ......................................................10

*Georgine v. Amchem Prods., Inc.*,
   83 F.3d 610 (3d Cir. 1996) .................................................. 20, 21

*Grant v. Turner*,
   2011 WL 1775682 (D.N.J. May 9, 2011).....................................9

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010) .................................................. 36-39

*Hawkins v. Harris*,
   661 A.2d 284 (N.J. 1995) ...........................................24, 26, 28-29

*Heffernan v. Hunter*,
   189 F.3d 405 (3d Cir. 1999) .................................................. 33-35

*Henrichs v. Valley View Dev.*,
    474 F.3d 609 (9th Cir. 2007) ..........................................................................38

*Holmes v. Securities Investor Prot. Corp.*,
    503 U.S. 258 (1992)........................................................................................19

*Howell v. Celotex Corp.*,
    904 F.2d 3 (3d Cir. 1990) ...............................................................................20

*In re Fibreboard Corp.*,
    893 F.2d 7062 (5th Cir. 1990) ................................................................. 20, 21

*In re Knapper*,
    407 F.3d 573 (3d Cir. 2005) .................................................................... 37, 39

*In re Madera*,
    586 F.3d 228 (3d Cir. 2009) ..........................................................................37

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    2009 WL 2043604 (D.N.J. July 10, 2009) ..................................................8, 9

*In re Taxable Mun. Bond Sec. Litig.*,
    51 F.3d 518 (5th Cir. 1995) ...........................................................................16

*Interchange State Bank v. Veglia*,
    668 A.2d 465 (N.J. Super. Ct. App. Div. 1995) ............................................19

*Jackson v. Anchor Packing Co.*,
    994 F.2d 1295 (8th Cir. 1993) ................................................................. 20, 21

*Jensen v. Schooley's Mountain Inn, Inc.*,
    522 A.2d 1043 (N.J. Super. Ct. App. Div. 1987) ..........................................18

*JP Morgan Chase Bank, N.A. v. Republic Mortg. Ins. Co.*,
    2011 WL 1750439 (D.N.J. May 4, 2011).......................................................6

*Karas v. Robbins*,
    2009 WL 2912778 (D.N.J. Sept. 9, 2009)....................................................37

*Kim v. Travelers Auto Ins. Co. of N.J.*,
    2009 WL 798043 (N.J. Super. Ct. Law Div. 2009) ......................................25

*Klagsbrun v. Va'ad Harabonim of Greater Monsey*,
   53 F. Supp. 2d 732 (D.N.J. 1999)....................................................................10

*Lee v. Hoffman*,
   2002 WL 57408 (Cal. Ct. App. Jan. 16, 2002)..............................................30

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ............................................................................17

*Lindstrom v. A-C Prod. Liab. Trust*,
   424 F.3d 488 (6th Cir. 2005) ........................................................................21

*LoBiondo v. Schwartz*,
   970 A.2d 1007 (N.J. 2009) ............................................................................34

*Loigman v. Township Comm. of Twp. of Middleton*,
   889 A.2d 426 (N.J. 2006) ...........................................................24-26, 28-29

*Magnum v. Archdiocese of Philadelphia*,
   253 Fed. Appx. 224 (3d Cir. 2007) ............................................ 11-12, 14, 16

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir. 2000) ...................................................9-10, 14-15, 17

*Malley-Duff & Associates, Inc. v. Crown-Life Insurance Co.*,
   792 F.2d 341 (3d Cir. 1986) ................................................................. 12, 13

*Manickavasagar v. Virginia Commonwealth Univ. School of Med.*,
   667 F. Supp. 2d 635 (E.D. Va. 2009) .............................................................6

*Mason v. Coca-Cola Co.*,
   2010 WL 2674445 (D.N.J. June 30, 2010)....................................................31

*Motorola Credit Corp. v. Uzan*,
   322 F.3d 130 (2d Cir. 2003) .........................................................................15

*N.V. Siravo v. Country Wide Home Loan*,
   349 Fed. Appx. 766 (3d Cir. 2009) ...............................................................38

*Nelson v. Xacta 3000 Inc.*,
   2010 WL 1931251 (D.N.J. May 12, 2010)....................................................31

*O.R. v. Cave*,
   2011 WL 813236 (N.J. Super. Ct. App. Div. Mar. 10, 2011) ......................25

*Ord v. United States*,
   8 Fed. Appx. 852 (9th Cir. 2001) ................................................................40

*Pigg v. Manfredo*,
   2008 WL 80662 (Cal. Ct. App. Jan. 9, 2008)...............................................30

*Price v. Pinnacle Brands, Inc.*,
   138 F.3d 602 (5th Cir. 1998) .......................................................................11

*Provini v. Asbestospray Corp.*,
   822 A.2d 627 (N.J. Super. Ct. App. Div. 2003) ...........................................20

*Purpura v. Bushkin, Gaimes*,
   317 Fed. Appx. 263 (3d Cir. 2009) ..............................................................39

*Reese v. Horizon Blue Cross Blue Shield of N.J.*,
   2008 WL 5188853 (D.N.J. Dec. 10, 2008) ..................................................33

*Reiter v. Pneumo Abex, LLC*,
   8 A.3d 725 (Md. 2010) .................................................................................21

*Rickenbach v. Wells Fargo Bank, N.A.*,
   635 F. Supp. 2d 389 (D.N.J. 2009)...................................................... 24-25, 30

*Ritger v. Gatlin*,
   2010 WL 1490582 (D.N.J. Apr. 13, 2010)...................................................28

*Robison v. Canterbury Vill., Inc.*,
   848 F.2d 424 (3d Cir. 1988) ........................................................................33

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923)......................................................................................36

*Ruberton v. Gabage*,
   654 A.2d 1002 (N.J. Super. Ct. App. Div. 1995) ............................. 24, 26, 28

*Silberg v. Anderson*,
   786 P.2d 365 (Cal. 1990)..............................................................................26

viii

*Singh v. HSBC Bank USA*,
200 F. Supp. 2d 338 (S.D.N.Y. 2002) ..........................................................25

*Sinistovic v. Aviles*,
2011 WL 1792559 (D.N.J. May 10, 2011)......................................................4

*Slaughter v. Southern Talc Co.*,
949 F.2d 167 (5th Cir. 1991) ................................................................ 21, 22

*Spitz v. Medco Health Solutions, Inc.*,
2010 WL 4615233 (D.N.J.Nov. 3, 2010) ......................................................33

*State v. Ball*,
632 A.2d 1222 (N.J. Super. Ct. App. Div. 1993) ...........................................8

*Steel v. Hospital Corp. of Am.*,
36 F.3d 69 (9th Cir. 1994) ...........................................................................15

*Sunkett v. Misci*,
183 F. Supp. 2d 691 (D.N.J. 2002)................................................................32

*Talbert v. Judiciary of N.J.*,
2010 WL 1799600 (D.N.J. May 4, 2010).............................................. 19, 23

*Taliaferro v. Darby Twp. Zoning Bd.*,
458 F.3d 181 (3d Cir. 2006) ................................................................ 39, 40

*Thomas v. Ford Motor Co.*,
137 F. Supp. 2d 575 (D.N.J. 2001)................................................................28

*Treadaway v. Academy of Motion Picture Arts & Sciences*,
783 F.2d 1418 (9th Cir. 1986) ......................................................................40

*U.S. Express Lines Ltd. v. Higgins*,
281 F.3d 383 (3rd Cir. 2002) ......................................................................26

*Union Ink Co., Inc. v. AT&T Corp.*,
801 A.2d 361 (N.J. Super. Ct. App. Div. 2002) ...........................................30

*United States v. Pendergraft*,
297 F.3d 1198 (11th Cir. 2002) ....................................................................30

ix

*Wade v. Amanda Rinkleur & Assoc., Inc.*,
   2006 WL 709607 (N.J. Super. Ct. App. Div. 2006)........................................9

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*,
   2009 WL 4730187 (D.N.J. Dec. 3, 2009) ....................................................31

*Wilkerson v. Armstrong World Indus., Inc.*,
   1990 WL 138586 (D.N.J. Sept. 19, 1990)....................................................21

*Yovev v. Northrop Corp.*,
   1994 WL 416078 (9th Cir. Aug. 9, 1994) ............................................. 14, 16

*Zagami, LLC v. Cottrell*,
   957 A.2d 691 (N.J. Super. Ct. App. Div. 2008) .................................... 26, 28

*Zdrok v. V Secret Catalogue, Inc.*,
   108 Fed. Appx. 692 (3d Cir. 2004) ..............................................................40

*Zdrok v. V Secret Catalogue, Inc.*,
   215 F. Supp. 2d 510 (D.N.J. 2002).............................................................40

*Zimmerman v. HBO Affiliate Group*,
   834 F.2d 1163 (3d Cir. 1987) .....................................................................11

**Statutes**

18 U.S.C. § 1341 ...................................................................................29

18 U.S.C. § 1343 ...................................................................................29

18 U.S.C. § 1961 .....................................................................................8

28 U.S.C. § 1257 ............................................................................. 37, 40

28 U.S.C. § 1291 ...................................................................................40

N.J. Stat. Ann. § 2C:41-1 ....................................................................5, 7

N.J. Stat. Ann. § 2C:41-1.1(a) ...............................................................8

N.J. Stat. Ann. § 2C:41-2(c) ..................................................................8

N.J. Stat. Ann. § 2C:41-4(c) ...............................................................8, 9

## INTRODUCTION

This putative nationwide class action asks the Court to authorize and supervise the re-opening of thousands of closed asbestos cases litigated in both state and federal courts across the country over nearly three decades.  Since the scope of plaintiffs' suit and the nature of their allegations are unprecedented in the history of this Court or any other, their complaint is unsurprisingly fraught with legal error and fails as a matter of law.  What plaintiffs request—on a classwide basis, no less—is that the Court go back in time and determine whether information allegedly withheld in those prior asbestos cases would have resulted in larger settlements or changed outcomes, or would have caused persons who refrained from litigation to have initiated it.  Those inquiries are all fundamentally speculative, particularly in the context of asbestos cases where plaintiffs—who in many instances sued upwards of one hundred companies at a time—faced strict burdens of proving causation that could not be satisfied in the underlying litigations, and certainly cannot be satisfied here.

The law's strong preference necessarily is that litigation must eventually come to an end.  Yet if this case is allowed to proceed, any judgment is potentially susceptible to re-opening in a collateral proceeding, and federal courts will become enmeshed in cascading litigation over dead cases, re-opening final judgments that those courts had nothing to do with in the first place.  Because plaintiffs' complaint contravenes basic principles of our legal system, it should be dismissed.

1

Plaintiffs' various theories of liability fail as a matter of law for several independent reasons. This case is not about racketeering, because plaintiffs cannot allege an injury to "business or property" under the Racketeer Influenced and Corrupt Organizations Act (RICO). Plaintiffs' other claims likewise suffer from similarly fatal legal deficiencies: fraud and "fraud on the court"—because these claims are based on alleged statements and omissions made in litigation that are immune from civil liability under New Jersey's litigation privilege; unjust enrichment—because that quasi-contractual doctrine has no application to this tort suit; and civil conspiracy— because there is no viable claim of underlying wrongful conduct, and because a conspiracy among a company and its employees and its legal counsel is not cognizable as a matter of law. Plaintiffs' request for sweeping injunctive relief overturning prior state-court judgments, moreover, is barred under the venerable *Rooker-Feldman* doctrine.

Once these defective claims are stripped away, what remains is this: that in thousands of asbestos cases in which plaintiffs would have had to prove, *inter alia*, that they suffered injuries, that those injuries were caused by asbestos-containing products, that it was defendant's asbestos-containing products (as opposed to those of the scores of other companies also named as defendants) that caused their injuries, and that having access to certain additional information would have changed plaintiffs' entire litigation strategy and allowed them to achieve more favorable outcomes. To

2

hypothesize this attenuated causal chain is to refute it, because beyond the causation problems inherent in asbestos cases more generally, plaintiffs' "case-within-a-case" theory (really thousands of cases within thousands of cases) requires proof that the allegedly withheld information would have made a material difference to their already tenuous asbestos claims, an insurmountable burden.  If ever the doctrine of proximate cause had any application, it is here, where plaintiffs' complaint depends on a Rube Goldberg causal sequence with no basis in logic or American law.  Indeed, if plaintiffs' allegations pass muster, they would allow after-the-fact challenges to virtually any closed case, spawning the endless re-litigation of stale claims in courts foreign to the underlying judgments.  There is simply no basis for using the federal courts to conduct potentially boundless inquisitions into cases long since closed.

Apparently recognizing the legal defects in their theories, plaintiffs have already amended their complaint once and dropped several claims in the process.  But plaintiffs' amended complaint is as deficient as their original complaint.  For the reasons that follow, this Court should dismiss plaintiffs' claims as to BASF Catalysts LLC in their entirety, on the basis of Rules 12(b)(1) and 12(b)(6).

## BACKGROUND

Plaintiffs' decedents worked in manufacturing and other industrial facilities in Ohio and New York starting in the 1950s, and filed personal injury claims for alleged asbestos-related health problems starting in the 1990s.  Am. Compl. ¶¶ 17-34.  As was

3

(and is) common in asbestos litigation, the decedents filed suit against dozens of companies at once, in some cases upwards of over 130 defendants. *See, e.g.*, Ex. A (complaint of plaintiff Ware's decedent, naming 137 defendants); Ex. B (complaint of plaintiff Holley's decedent, naming 122 defendants).[1]  Among the defendants in those asbestos cases was the Engelhard Corporation or its affiliates.  Am. Compl. ¶¶ 17-34, 70-71.  The purported basis for naming Engelhard as a defendant was that from 1967 to 1983, Engelhard operated a Vermont talc mine whose talc (sold under the brand name "Emtal talc") may have been used at plaintiffs' workplaces, where they were allegedly exposed to asbestos.   Am. Compl. ¶¶ 17-34, 70-71.   BASF acquired Engelhard in June 2006 after an attempted unsolicited stock-tender offer. *Id.* at ¶ 36; *see also* BASF Corp., Report of Foreign Private Issuer (Form 6-K) (Aug. 2, 2006). Since the vast majority of the events at issue here took place prior to that time, this motion will refer to BASF Catalysts and all Engelhard-related entities as "Engelhard."

In the instant suit, plaintiffs purport to represent a class comprised of at least "several thousand asbestos claimants across the United States," who for the last several decades "were exposed to BASF's talc and talc products and sustained an asbestos related injury, or who have or had the right to claim damages derivatively

---

[1] In considering a motion to dismiss, the Court "may consider the allegations of the complaint, [or] documents attached or specifically referenced in the complaint if the claims are based upon those documents[,] and matters of public record."  *Sinistovic v. Aviles*, 2011 WL 1792559, at *2 (D.N.J. May 10, 2011).  Here, public documents and court filings associated with plaintiffs' decedents' earlier asbestos suits necessarily form part of their claims and may be considered here.

based upon such exposed person's asbestos related injury." Am. Compl. ¶¶ 269, 278.
This putative class consists of persons who "(a) suffered an involuntary dismissal of
their lawsuit"; "(b) voluntarily dismissed or discontinued their cases without
consideration"; "(c) voluntarily dismissed or discontinued their cases for a nominal or
token consideration"; or "(d) refrained from filing a claim or suit against BASF and/or
its predecessor companies," all as a result of Engelhard and its former law firm, Cahill
Gordon & Reindel, LLP, allegedly withholding information about the purported
existence of asbestos fibers in Emtal talc. *Id.* ¶¶ 1-16, 312, 338.

Plaintiffs' complaint seeks relief under various theories, including the New
Jersey Racketeer Influenced and Corrupt Organizations Act (NJRICO), N.J. Stat. Ann.
2C:41-1 *et seq.*, and "New Jersey common-law." Am. Compl. ¶ 290(a); *see also id.*
¶ 284. Plaintiffs seek, *inter alia*, damages related to the alleged "depriv[ation] of fair,
full and just compensation for their respective asbestos injury claims," the creation of
a "notice program" and "constructive trust," and "extraordinary" equitable relief in the
form of "restoring Plaintiff[s] and class members back to the *status quo ante*" the
judgments being entered in their asbestos injury cases. *Id.* ¶¶ 6, 16, 314.

Plaintiffs filed their original complaint in March 2011. *See* 3/28/11 Compl.
[Dkt. #1]. After defendants filed motions to dismiss, plaintiffs filed the instant
Amended Complaint, dropping causes of action for misrepresentation, abuse of
process, negligent supervision, and punitive damages. *See* Am. Compl. ¶¶ 291-383.

## LEGAL STANDARDS ON A MOTION TO DISMISS

A complaint will survive a motion to dismiss under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, "the Complaint must contain sufficient factual allegations to raise a right to relief above the speculative level." *JP Morgan Chase Bank, N.A. v. Republic Mortg. Ins. Co.*, 2011 WL 1750439, at *2 (D.N.J. May 4, 2011); *see also Manickavasagar v. Virginia Commonwealth Univ. School of Med.*, 667 F. Supp. 2d 635, 644 (E.D. Va. 2009) (dismissing complaint because "notwithstanding its volume and length, [it] does not meet the test of *Twombly* and *Iqbal*").  Where plaintiffs' claims sound in fraud, plaintiffs must also meet the heightened pleading standards of Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud."

## ARGUMENT

Plaintiffs seek to re-open closed asbestos cases from courts across the nation, thereby putting this Court in the business of re-visiting thousands of stale judgments entered in other forums, based upon legal theories and allegations that fail as a matter of law.  The vast majority of plaintiffs' claims, such as RICO racketeering, unjust enrichment, and civil conspiracy, are nothing but make-weights: claims that add length to a complaint but that suffer from fatal legal deficiencies, such as the failure to

6

allege basic elements, or dispositive defenses like the litigation privilege and the *Rooker-Feldman* doctrine. Plaintiffs' core allegations of fraud, meanwhile, depend on theories of proximate cause that are so attenuated as to warrant judgment as a matter of law. Indeed, if allegedly new information discovered after a final judgment could justify the re-opening of thousands of closed asbestos cases—which on their own have inherent causation problems of the severest sort—then every judgment ever entered is potentially susceptible to collateral litigation in new forums that had no involvement in the original judgments. Neither basic principles of tort law, RICO, nor the powers of federal courts provide for a legal regime of such drastic instability.

This motion largely addresses plaintiffs' complaint in the order in which the Counts are plead, although certain bases for dismissal (such as proximate cause and the litigation privilege) necessarily apply across multiple claims. This motion does not address Counts VI and VII, which are brought only against other defendants.[2]

## I.   PLAINTIFFS DO NOT STATE A CLAIM UNDER RICO BECAUSE THEY CANNOT ALLEGE INJURY TO "BUSINESS OR PROPERTY"

In Counts I and II, plaintiffs allege racketeering and conspiracy under the New Jersey Racketeer Influenced and Corrupt Organizations Act (NJRICO), N.J. Stat. Ann. § 2C:41-1, *et seq. See* Am. Compl. ¶¶ 291-322. Under NJRICO, it is a crime to

---

[2] It is not clear that New Jersey law properly applies to the claims in this putative nationwide class action brought by Ohio and New York plaintiffs' estates, but BASF assumes for purposes of this motion that New Jersey law applies, as plaintiffs have pleaded in the complaint. *See* Am. Compl. ¶¶ 284, 290(a). Should the Court determine otherwise at any later point in this litigation, BASF would respectfully request the opportunity to brief these issues under applicable law.

"conduct or participate" in the affairs of an "enterprise" "through a pattern of racketeering activity." N.J. Stat. Ann. § 2C:41-2(c). NJRICO creates a private right of action for any person injured in "his business or property by reason" of a violation of the Act, and allows such persons to seek treble damages, fees, and costs. *Id.* § 2C:41-4(c).

Because NJRICO "is patterned after" the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and "borrows its structure, purpose and remedies from Federal RICO," New Jersey courts have made clear that when interpreting NJRICO, "it is appropriate to seek guidance from those federal decisions" construing federal RICO. *State v. Ball*, 632 A.2d 1222, 1235 (N.J. Super. Ct. App. Div. 1993) (quotations omitted); *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 510 (3d Cir. 2006) ("[T]he New Jersey Supreme Court believe[s] the New Jersey RICO statute was and should be consistent with the federal RICO statute."); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *7 (D.N.J. July 10, 2009) (noting that NJRICO claims "are subject to the same standards of proof as those required by the federal statute").

Since NJRICO (like federal RICO) is principally directed at "organized crime," *see* N.J. Stat. Ann. § 2C:41-1.1(a), and is subject to potential misuse because of the severe penalties it makes available, *id.* § 2C:41-4(c), courts have cautioned against indiscriminate application of the statute, requiring a careful determination that

8

NJRICO's elements are met before a claim may proceed.  *See, e.g.*, *Wade v. Amanda Rinkleur & Assoc., Inc.*, 2006 WL 709607, at \*3 (N.J. Super. Ct. App. Div. 2006) (warning against the "trivialization of this statute as an aid to garden variety civil litigation"); *see also Grant v. Turner*, 2011 WL 1775682, at \*7 (D.N.J. May 9, 2011) (cautioning that in light of RICO's "stigmatizing effect," "[c]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb") (quotations and alterations omitted).

Under N.J. Stat. Ann. § 2C:41-4(c), plaintiffs must prove an injury to "business or property," one of the features of the statute that "helps to assure that RICO is not expanded to provide a … cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quotations omitted); *see also In re Schering-Plough Corp.*, 2009 WL 2043604, at \*11 ("[A] plaintiff must do more than plead any theory of injury—the theory of injury must be one that is cognizable under RICO.").  The "business or property" injury requirement is one of "restrictive significance," *Maio*, 221 F.3d at 483, and it is dispositive here: (1) plaintiffs' claims are ultimately for alleged personal injuries caused by asbestos exposure, but it is black-letter law that personal injuries (and personal-injury claims) are not injuries to "business or property"; and (2) even if plaintiffs' personal-injury claims are properly characterized as injuries to "business or property," here the lost opportunity to obtain

additional financial benefit in earlier lawsuits is insufficiently concrete to constitute a RICO-compensable injury.  Each of these points is explained in turn.[3]

### A. Plaintiffs' Personal Injury Claims Are Not Injuries To "Business Or Property" Under RICO.

Plaintiffs claim they "suffered a significant loss of their property," but what they point to is the alleged "depriv[ation] of fair, full and just compensation for their respective *asbestos injury claims* as was their property right under the law."  Am. Compl. ¶ 6 (emphasis added); *id.* ¶ 268 ("Plaintiffs … sustained the loss of their property in the form of the termination or impairment of their *asbestos injury claims*.") (emphasis added).  At bottom, then, plaintiffs' NJRICO injury is premised on what gave rise to their decedents' underlying asbestos claims in the first place: alleged personal injuries.

But it is well-established that losses due to personal injuries are not injuries to "business or property" under RICO.  *See, e.g.*, *Maio*, 221 F.3d at 492 ("We emphasize that any personal injuries … would not constitute a compensable RICO injury."); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918-19 & n.12 (3d Cir. 1991)

---

[3] While courts have sometimes referred to the "business or property" injury requirement as an element of "standing," *see, e.g.*, *Maio*, 221 F.3d at 481-82 & n.7, "standing" in the statutory sense is properly viewed as a substantive element of RICO, not a restriction on federal court jurisdiction.  *See Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) ("Civil RICO 'standing' is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction."); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").  In any case, even if NJRICO's injury rule is "jurisdictional," this Court has discretion to treat a Rule 12(b)(6) motion as one brought under Rule 12(b)(1).  *See, e.g.*, *Klagsbrun v. Va'ad Harabonim of Greater Monsey*, 53 F. Supp. 2d 732, 734 (D.N.J. 1999).

(explaining that "[i]n ordinary usage, 'injury to business or property' does not denote physical or emotional harm to a *person*," and holding that plaintiffs could not recover damages for personal "injuries due to harmful exposure to toxic waste") (emphasis in original); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir. 1987) (holding that "mental distress" is not an injury to "business or property").  Moreover, "losses which 'flow' from personal injuries are not 'property' under RICO" either. *Magnum v. Archdiocese of Philadelphia*, 253 Fed. Appx. 224, 227 (3d Cir. 2007) (quoting *Evans v. City of Chicago*, 434 F.3d 916, 930-31 (7th Cir. 2006)).

To the extent plaintiffs frame their alleged loss of "property" as the loss of their decedents' *causes of action* for asbestos-related personal injuries, that purported distinction makes no difference here.  *See* Am. Compl. ¶ 6 (suggesting that the right to obtain relief in a lawsuit is a "property right under the law"); *id.* ¶ 12 (referencing plaintiffs' "loss of their asbestos injury claim or chose in action").  Even if a cause of action is a "property right" under New Jersey law (or the laws of the States where the original asbestos cases were brought), the state-law characterization of a right as a "property" right is still not sufficient for meeting the RICO (and thus NJRICO) definition of injury to "business or property."  *See, e.g.*, *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("[I]t does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO.") (footnote omitted).

11

Where, as here, RICO plaintiffs allege that an unfulfilled cause of action is a "property right," courts look through that label to determine whether the *underlying* cause of action was one for injury to "business or property," or rather something not covered by RICO.  Two Third Circuit cases, *Malley-Duff & Associates, Inc. v. Crown-Life Insurance Co.*, 792 F.2d 341 (3d Cir. 1986), and *Magnum v. Archdiocese of Philadelphia*, 253 Fed. Appx. 224 (3d Cir. 2007), illustrate this important distinction. In *Malley-Duff*, plaintiff filed a RICO suit claiming that defendant engaged in obstruction of justice in an earlier case, in which plaintiff sued defendant for terminating plaintiff's business.  792 F.3d at 343-44 & n.4.  Plaintiff's RICO suit alleged that defendant's interference in the prior suit caused damage to "business or property."  *Id.* at 353.  The Third Circuit agreed, because the earlier suit concerned a business injury: "A cause of action, of course, is a form of 'property,' *and when it arises out of the termination of a business*, we think it is not unfair to characterize conduct tending to impair it as 'business injury.'"  *Id.* at 354 (emphasis added).

In *Magnum*, by contrast, sexual abuse victims sued the Archdiocese of Philadelphia, claiming the Archdiocese engaged in a pattern of racketeering activity by fraudulently concealing its priests' sexual misconduct, which thereby caused plaintiffs' state-law tort claims to become time-barred.  253 Fed. Appx. at 225-26. Plaintiffs claimed that the "lost opportunity to bring state law personal injury claims

against the Archdiocese" constituted an injury to "business or property" under RICO.

*Id.* at 226.  The Third Circuit disagreed, distinguishing *Malley-Duff*:

> Although a cause of action indeed may be a form of property, injuries to that property will only be redressable under civil RICO if the plaintiff can allege that the wrong to be vindicated is itself an injury to "business or property" within the meaning of RICO.  This distinction separates *Malley-Duff* … from the case at bar, because ***the wrong underlying [plaintiffs'] lost opportunity to sue***—personal injury from childhood sexual abuse—does not implicate injury to "business or property."

*Id.* at 228 (emphasis added).  This was so, the court explained, because "physical or emotional harm to a *person*" is not "property" under RICO.  *Id.* at 227-28 (emphasis in original); *see also Brown v. Ajax Paving Indus., Inc.*, 2011 WL 768317, at *6-7 (E.D. Mich. Feb. 28, 2011) (explaining that "courts have accepted th[e] 'lost cause of action' theory of civil RICO damages only where the underlying wrong to be vindicated through the 'lost' suit is itself an injury to 'business or property,'" and holding that plaintiff could not plead RICO injury based on interference with a previous worker's compensation claim for personal injury); *Circiello v. Alfano*, 612 F. Supp. 2d 111, 115 (D. Mass. 2009) (holding that lost personal-injury claim is "not 'property' within the meaning of the RICO statute"); *Bradley v. Phillips Petroleum*, 527 F. Supp. 2d 625, 647 (S.D. Tex. 2007) (explaining that "even if the Court undertook some philosophical approach and construed the lost opportunity to bring a personal injury lawsuit as a property right," interference with a personal-injury cause of action "does not constitute an injury cognizable under RICO") (quotations omitted).

13

Plaintiffs' amended complaint adds that plaintiffs were also allegedly deprived of "their Constitutional right to a fair, honest and just judicial proceeding." Am. Compl. ¶ 268. To the extent plaintiffs are thereby trying to address the core deficiency in their NJRICO claim, the effort is unavailing. For RICO purposes, alleging the loss of a "fair" proceeding is no different than alleging the loss of the cause of action in that proceeding, because, once again, the underlying claim in the prior proceeding was one for personal injury, which is not an injury to "business or property." *See, e.g.*, *Maio*, 221 F.3d at 492. Plaintiffs cannot evade the "restrictive significance" of RICO's injury requirement, *id.* at 483—and case law in which courts determine whether the underlying suit in question involved an injury to "business or property," *see, e.g.*, *Magnum*, 253 Fed. Appx. at 228—by recasting their injury as a lost right to a fair trial. *See, e.g.*, *Yovev v. Northrop Corp.*, 1994 WL 416078, at *1 (9th Cir. Aug. 9, 1994) (holding that where plaintiff alleged that defendants "conspired to destroy his earlier state-court case … by misleading the court into dismissing the case," plaintiff had failed to allege RICO injury, because the earlier case involved "personal injuries" which "are not compensable under RICO").

In the final analysis, it does not matter whether plaintiffs cast their alleged injuries as the loss of an "asbestos injury claim or chose in action" or as a deprivation of the "Constitutional right to a fair, honest, and just judicial proceeding." Neither states a claim for injury to "business or property," and the NJRICO claim thus fails.

**B.     The Loss Of A Speculative Opportunity To Obtain A Financial Payment Is Not An Injury To "Business Or Property."**

Even if the alleged deprivation of plaintiffs' decedents' personal-injury claims could as a general matter count as an injury to "business or property," the allegations here still fail to satisfy RICO's injury requirement for another reason: they are insufficiently concrete, because the lost opportunity to recover a potential financial payment is not an injury to "business or property" as a matter of law.

The Third Circuit has made clear that under RICO, "'a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest.'" *Maio*, 221 F.3d at 483 (quoting *Steel v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)); *see also Evans*, 434 F.3d at 932 ("[E]very court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous."); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (*per curiam*) (noting the "general principle that a cause of action does not accrue under RICO until the amount of damages becomes clear and definite") (quotations omitted); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 188 (3d Cir. 2000) ("[S]urely it would be difficult to characterize [a] lost speculative opportunity as an injury to 'business or property.'").

Here, plaintiffs point to no sum certain they claim to have lost as a result of defendants' alleged conduct in the earlier asbestos cases. Nor can they, given that

their entire complaint is premised on the lost opportunity to obtain some unknown greater amount of damages.  *See, e.g.*, Am. Compl. ¶ 5; *see also id.* ¶ 16(d) (seeking a "constructive trust" that would include "expense savings relating to Plaintiff's and absent class member's asbestos injury claims").  But "[a] lost opportunity to obtain a financial benefit is too speculative to constitute an injury to business or property under RICO."  *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518, 534 (D.N.J. 1998).  Here, the speculative nature of the opportunity is particularly salient, given the significant causation problems in asbestos cases generally, *see post*, at 18-23, and the extraordinary difficulties plaintiffs face in arguing that allegedly new information would have changed past outcomes, to say nothing of proving the "concrete and actual" additional amount plaintiffs allegedly would have obtained.

Unsurprisingly, courts have held that similarly speculative (and indeed much less speculative) claims did not qualify as injuries to "business or property" under RICO.  *See, e.g.*, *Magnum*, 253 Fed. Appx. at 229 (holding that interference with putative tort suits did not qualify as an injury to "business or property" because, *inter alia*, success on the tort claims was "too speculative to confer RICO standing"); *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) (holding that "a lost 'opportunity' to obtain a … loan" did not qualify as RICO injury because it "would have required extensive speculation"); *Yovev*, 1994 WL 416078, at *1 (holding that damages allegedly arising from the "inability to obtain a judgment … in [an] earlier

state-court proceeding" are "purely speculative, and are not the tangible financial losses required for standing in a RICO action"); *Circiello*, 612 F. Supp. 2d at 114 (holding that a "lost opportunity" to recover money in a tort suit was "based on a series of 'what ifs'" and was thus too "speculat[ive]" to constitute RICO injury).

Thus, regardless of whether plaintiffs' underlying tort claims for asbestos-related injuries are "valuable intangible property interest[s]," *Maio*, 221 F.3d at 483, they are insufficiently concrete to meet RICO's (and NJRICO's) injury requirement.[4]

### C.    Plaintiffs Cannot Plead RICO Conspiracy.

Because plaintiffs cannot state a claim under RICO, their Count II claim that defendants conspired to commit a NJRICO violation necessarily cannot survive either. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under [RICO] based on conspiracy to violate the other subsections of [RICO] necessarily must fail if the substantive claims are themselves deficient.").

## II.    THE FRAUDULENT CONCEALMENT CLAIM (AND ALL COUNTS IN THE COMPLAINT) FAIL FOR LACK OF PROXIMATE CAUSE

In Count III, plaintiffs claim that as "a direct and proximate result" of defendants' alleged fraudulent concealment in the asbestos litigations, plaintiffs' decedents: "(a) suffered an involuntary dismissal of their lawsuit …; (b) voluntarily dismissed or discontinued their cases without consideration; (c) voluntarily dismissed

---

[4] Plaintiffs also cannot even seek equitable relief in a civil NJRICO suit. *See Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123, 1138 (D.N.J. 1990); *Kim v. Travelers Auto Ins. Co. of N.J.*, 2009 WL 798043, at *14-15 (N.J. Super. Ct. Law Div. Mar. 6, 2009).

or discontinued their cases for a nominal or token consideration…; or, (d) refrained from filing a claim or suit against BASF and/or its predecessor companies."  Am. Compl. ¶¶ 337-338.  Plaintiffs' fraudulent concealment claim—and indeed every claim in their complaint, including RICO—must be dismissed for the basic reason that plaintiffs cannot plead proximate cause.  If that doctrine has any application it is here, where the serious causation problems inherent in plaintiffs' underlying asbestos suits are compounded by the additional problems of causation endemic to their present claims: that possessing additional information would have changed the results of thousands of asbestos cases nationwide, including some that were never even filed.

A proximate cause is an action "which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred."  *Dawson v. Bunker Hill Plaza Assocs.*, 673 A.2d 847, 853 (N.J. Super. Ct. App. Div. 1996) (quotations omitted). New Jersey courts have consistently warned that proximate cause "must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability."  *Jensen v. Schooley's Mountain Inn, Inc.*, 522 A.2d 1043, 1044 (N.J. Super. Ct. App. Div. 1987) (quotations omitted).

In the RICO context, and in light of that statute's harsh penalties and easy manipulability, courts are even more stringent, requiring that "the alleged violation led ***directly*** to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451,

18

461 (2006) (emphasis added); *see also Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268-69, 274 (1992) (same); *Interchange State Bank v. Veglia*, 668 A.2d 465, 472-74 (N.J. Super. Ct. App. Div. 1995) (same for NJRICO).  Indeed, one of the central purposes of proximate cause in this context is to prevent litigants, under the guise of RICO, from "forc[ing] courts to adopt complicated rules apportioning damages among plaintiffs." *Holmes*, 503 U.S. at 269; *see also Anza*, 547 U.S. at 459-60 (noting that RICO's proximate cause requirement deters "speculative" proceedings and prevents "intricate, uncertain inquiries from overrunning RICO litigation").

When a plaintiff's alleged injury is too attenuated from its claimed causal source, courts do not hesitate to dismiss such lawsuits at the outset.  Thus as this Court has succinctly explained, "[a] Court can dismiss claims based on lack of proximate causation at the motion to dismiss stage." *Talbert v. Judiciary of N.J.*, 2010 WL 1799600, at *3 (D.N.J. May 4, 2010) (granting motion to dismiss).  This prevents wasteful discovery on speculative claims, for "[w]hen an injury is indirect, remote, and many steps away from the alleged cause, it is unadvisable to allow a case to proceed." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445 (3d Cir. 2000) (affirming dismissal due to lack of proximate cause because the "causation chain is much too speculative and attenuated") (quotations omitted); *see also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423-26 (3d Cir. 2002) (same where the asserted causal connection was "attenuated and weak").

Here, plaintiffs' suit faces not only one but two sets of causation hurdles: those attributable to their decedents' underlying asbestos claims, and those associated with the instant claim that allegedly new information would have changed the results in those original cases. With respect to the former, courts have recognized that personal-injury claims for asbestos exposure create particular causation impediments. Indeed, the Third Circuit long ago recognized that personal injury suits for asbestos exposure involve complex questions of causation. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626-27 (3d Cir. 1996). Among the things plaintiffs must prove:

- **Injury:** That they suffered compensable injuries. *See, e.g., Georgine*, 83 F.3d at 626 ("Some class members suffer[ed] no physical injury or have only asymptomatic pleural changes."); *Howell v. Celotex Corp.*, 904 F.2d 3, 5 (3d Cir. 1990) (holding that "substantial medical disagreement" over plaintiffs' alleged asbestos-related harm "prevents us from declaring it to be an injury as a matter of law").

- **Exposure:** That by virtue of working in a particular facility, they were exposed to products that contained asbestos fibers. *See, e.g., Provini v. Asbestospray Corp.*, 822 A.2d 627, 629 (N.J. Super. Ct. App. Div. 2003) (affirming judgment for defendant because "plaintiff cannot demonstrate that the decedent was ever exposed to the product during his employment"); *Cantell v. Adience, Inc.*, 2010 WL 3046112, at *4 (Ohio Ct. App. Aug. 5, 2010) (affirming judgment for defendant because plaintiff "failed to present sufficient evidence to establish that she was actually exposed to [defendant's] asbestos-containing product").

- **Exposure Level:** That they were exposed to a legally relevant level of asbestos. *See, e.g., Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1307 (8th Cir. 1993) ("The evidence does not show where and how [defendant's] products were used in the plant and whether the locations of [defendant's] products were close enough to … plaintiffs' work stations to support a reasonable inference of exposure."); *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) ("The plaintiffs were exposed to asbestos in various manners and to varying degrees."); *Wilkerson v. Armstrong World Indus., Inc.*, 1990 WL 138586, at *4

20

(D.N.J. Sept. 19, 1990) ("[G]eneralized assertions that [plaintiff] and [defendant's] asbestos insulation were both present in [defendant's] plant … is insufficient to establish … frequent, regular and proximate exposure").

- **Product Identification:** That in manufacturing and other facilities that used a variety of materials, they were exposed to Engelhard's talc products. *See, e.g.*, *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 495 (6th Cir. 2005) (affirming judgment for defendant because "there was insufficient evidence to connect [plaintiff] with [defendant's] product or to connect [defendant's] product with asbestos that caused [plaintiff's] illness"); *Reiter v. Pneumo Abex, LLC*, 8 A.3d 725, 734-35 (Md. 2010) (affirming judgment for defendant where plaintiff could not establish exposure to defendant's products).

- **Defendant's Product Contained Asbestos**:   That Emtal talc contained a legally relevant amount of asbestos after it was removed from the Vermont mine and sent to facilities in processed form, and that asbestos existed in Emtal talc at the relevant time of exposure when compared to Engelhard's approximately 16-year operation of the mine.   *See, e.g.*, *Jackson*, 994 F.2d at 1307 ("[N]o witness was prepared to testify under oath even that any [of defendant's] product present in the ... facility actually contained asbestos."); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 171 (5th Cir. 1991) ("There was ... no evidence presented that [defendant's] talc contained any asbestos when it arrived at the General Tire plant years before [plaintiff's expert's] study."); *id.* ("Plaintiffs had … no evidence that [defendant's] talc contained asbestos during the years in which plaintiffs allege that they were injured.").

- **Exposure To Defendant's Asbestos:** That by working in various facilities and having necessarily different exposure to talc, they were exposed to a legally relevant level of asbestos through Engelhard's talc.  *Cf. Georgine*, 83 F.3d at 626 ("Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods.").

- **Asbestos-Related Injury:** That their injuries are legally attributable to asbestos exposure, as opposed to something else, such as smoking or family history.  *Cf. Georgine*, 83 F.3d at 626 ("Each [plaintiff] has a different history of cigarette smoking, a factor that complicates the causation inquiry."); *In re Fibreboard Corp.*, 893 F.2d at 712 ("The plaintiffs suffer from different diseases, some of which are more likely to have been caused by asbestos than others.").

- **Injury Due To Defendant's Asbestos:** That their asbestos-related injuries are legally attributable to Engelhard's products.  *See, e.g.*, *Jackson*, 994 F.2d at

21

1310 ("We recognize that the plaintiffs from the start have faced a formidable task in establishing whose asbestos products caused their injuries."); *Slaughter*, 949 F.2d at 170 ("[P]laintiffs must prove that asbestos fibers from defendants' products were an actual, producing cause of plaintiffs' injury.").

All of these causation problems are only compounded by the fact that plaintiffs' decedents sued dozens of companies at once (in one instance over 130 defendants), *see ante*, at 4, and also by the time that had passed between their initial exposure to asbestos and the filing of asbestos lawsuits. *E.g.*, Am. Compl. ¶¶ 18-19 (plaintiff Williams' decedent was exposed to asbestos starting in 1950 and filed suit in 1992).

On top of all of these things, however, plaintiffs here—given their allegations of fraudulent concealment—must prove even more in the causal chain:

- That plaintiffs' decedents would have reviewed the information allegedly withheld in the underlying asbestos cases.

- That having the allegedly withheld information would have made a material difference to the merits of those cases, notwithstanding that plaintiffs' decedents were inevitably subjected to different periods of exposure at different times, at different locations and at different levels.

- That the information allegedly withheld would have led plaintiffs' decedents to adopt a different legal strategy in those cases, notwithstanding that the decedents had sued dozens of other companies as defendants.

- That proceeding to trial or negotiating larger settlements would have been worth the additional time and expense.

- That as a result of allegedly withheld information, plaintiffs' decedents would have not suffered dismissals, would have been able to settle their multi-defendant claims for larger amounts, or would have won their cases at trial.

The causal chain is even more attenuated with respect to those persons (of whom the named plaintiffs are not representative) who did not even file suits for

22

asbestos-related injuries, because among other things, those persons would have had to learn of the allegedly withheld information, discover their injuries, retain counsel, elect to file suit, and obtain a recovery. The point is that for these plaintiffs and the entire putative class, given the vagaries of asbestos litigation and the speculative nature of their claims in this case, the causal connection here is fundamentally insufficient. Dismissal is thus warranted because "it is clear that the causal chain that [p]laintiff[s] seek[] to describe has so many variables that proximate causation cannot be attributed to this conduct." *Talbert*, 2010 WL 1799600, at *4.

The importance of properly applying the doctrine of proximate cause cannot be overstated here. If these thousands of decades-old asbestos cases can be re-opened, the upshot is that virtually any judgment ever issued by any court in the country is potentially susceptible to re-opening in a court foreign to that original lawsuit, whenever the plaintiffs can point to some evidence that allegedly was not disclosed in the first case. The law's strong preference for the finality of judgments, embodied in rules such as Federal Rule of Civil Procedure 60(b), demonstrates the truly radical nature of that suggestion. The doctrine of proximate cause exists precisely to ensure that courts and litigants do not set out on speculative ventures, and takes on even greater salience when the consequence of allowing claims to proceed is the specter of federal court superintendence over thousands of cases that were previously litigated and resolved decades ago in state and other federal courts across the nation.

## III.   NEW JERSEY'S BROAD LITIGATION PRIVILEGE BARS CIVIL LIABILITY FOR STATEMENTS MADE IN LITIGATION

All of plaintiffs' claims are based on statements made by Engelhard and its lawyers in the course of the underlying asbestos litigations.  But New Jersey's broad litigation privilege creates absolute immunity for such statements in order to avoid curtailing vigorous legal advocacy.  Accordingly, though improper statements made in litigation may result in other repercussions, plaintiffs' claims for civil liability based on statements made during litigation must be dismissed.

### A.   The Litigation Privilege Protects Statements Made In Litigation.

The litigation privilege, which insulates a participant in the legal system "from civil liability [for] words he has uttered in the course of judicial proceedings," has "deep roots in the common law" and "has long been embedded in New Jersey's jurisprudence."  *Loigman v. Township Comm. of Twp. of Middleton*, 889 A.2d 426, 433-34 (N.J. 2006).  The effect of the privilege is to render those statements "absolutely privileged and wholly immune from liability."  *Hawkins v. Harris*, 661 A.2d 284, 287-88 (N.J. 1995).

New Jersey's litigation privilege is "expansive," *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 401 (D.N.J. 2009), covering "'all statements or communications in connection with [a] judicial proceeding.'"  *Hawkins*, 661 A.2d at 289 (quoting *Ruberton v. Gabage*, 654 A.2d 1002, 1006-07 (N.J. Super. Ct. App. Div. 1995)).  As a result, courts have applied the privilege to bar claims for liability based

on statements made in pleadings, discovery responses, testimony, and correspondence between attorneys.  *See, e.g.*, *Rickenbach*, 635 F. Supp. 2d at 402 (letters); *DeVivo v. Ascher*, 550 A.2d 163, 165-66 (N.J. Super. Ct. App. Div. 1988) (pre-litigation letters); *Commercial Ins. Co. of Newark v. Steiger*, 928 A.2d 126, 131-32 (N.J. Super. Ct. App. Div. 2007) (discovery responses and expert report); *O.R. v. Cave*, 2011 WL 813236, at *6 (N.J. Super. Ct. App. Div. Mar. 10, 2011) (*per curiam*) (responses to "discovery demands are absolutely insulated"); *Agacoili v. Gonzo*, 2010 WL 606697, at *3 (D.N.J. Feb. 18, 2010) (pleadings); *Durand Equip. Co. v. Superior Carbon Prods., Inc.*, 591 A.2d 987, 989-90 (N.J. Super. Ct. App. Div. 1991) (testimony).

Moreover, while initially employed as a defense to defamation suits, "courts have extended the litigation privilege to cover unconventional and sometimes novel causes of action," *Loigman*, 889 A.2d at 435, so that "[f]ar from being an exception, the litigation privilege is applicable as a general rule," *Rickenbach*, 635 F. Supp. 2d at 402.  Indeed, aside from the sole exception of malicious prosecution (not at issue here), *see id.*; *Baglini v. Lauletta*, 768 A.2d 825, 833-34 (N.J. Super. Ct. App. Div. 2001), courts have applied New Jersey's litigation privilege (and analogous privileges in other States) to bar an array of different legal claims based on covered statements, including causes of action at issue here.  *See, e.g.*, *Kim v. Travelers Auto Ins. Co. of N.J.*, 2009 WL 798043, at *15-17 (N.J. Super. Ct. Law Div. 2009) (NJRICO); *Singh v. HSBC Bank USA*, 200 F. Supp. 2d 338, 339-40 (S.D.N.Y. 2002) (RICO); *Agacoili*,

25

2010 WL 606697, at *3 (fraud); *Ruberton*, 654 A.2d at 1007 (fraud); *Zagami, LLC v. Cottrell*, 957 A.2d 691, 693, 699 (N.J. Super. Ct. App. Div. 2008) (civil conspiracy).

The litigation privilege reflects New Jersey's balance of competing public purposes. Allowing every statement made in litigation to form the basis for civil liability would impinge on our "system that requires attorneys to vigorously and fearlessly represent their clients' interests." *Loigman*, 889 A.2d at 438; *see also Hawkins*, 661 A.2d at 287 (explaining that the "immunity is predicated on the need for unfettered expression" in adversarial settings, so that "persons in such circumstances [can] be permitted to speak and write freely without the restraint of fear") (quotations omitted). The litigation privilege also prevents a downward spiral of satellite civil litigation, thereby promoting the "'finality [of] judgments, and avoiding unending litigation.'" *Hawkins*, 661 A.2d at 292 (quoting *Silberg v. Anderson*, 786 P.2d 365, 370 (Cal. 1990)). Thus, while the litigation privilege inevitably might provide some refuge for "the few unethical and negligent attorneys from a merited civil judgment and damages award," the courts of New Jersey have determined this "trade-off is the necessary price that must be paid for the proper functioning of our judicial system." *Loigman*, 889 A.2d at 438. This does not mean, of course, that wrongful statements in litigation carry no consequences, only that, where appropriate, they are properly addressed "to the discipline of the courts, the bar association, and the state." *Hawkins*, 661 A.2d at 289 (quotations omitted); *see also Loigman*, 889 A.2d at 438.

26

**B.    Defendants Are Absolutely Immune From Civil Liability Based On Statements Made In Litigation.**

A review of the complaint reveals that it is based fundamentally on statements by Engelhard and its outside counsel in prior asbestos cases.  Indeed, since this entire lawsuit is premised on alleged wrongdoing in earlier cases—a point highlighted by plaintiffs' addition of a claim for "fraud on the court," *see* Am. Compl. ¶¶ 355-360— the statements and omissions that plaintiffs cite as the source of liability are necessarily ones made in the course of judicial proceedings.  Thus plaintiffs ask for damages based on, for instance, "misrepresentations … to presiding courts in the form of motions," Am. Compl. ¶ 6, misleading statements in "verified answers to discovery requests or affidavits," *id.* ¶ 5, false and incorrect "correspondence" to "asbestos claimants' counsel," *id.* ¶ 144(f), "false and misleading sworn statements in the form of … verified interrogatory answers," *id.* ¶ 306(b), and "false and incorrect expert reports," *id.* ¶ 144(h).   In fact, the vast majority of paragraphs in plaintiffs' complaint—including every cause of action—are based on statements made in litigation.  *See id.* ¶¶ 1-2, 5-6, 10, 12, 19, 22, 25, 28, 31, 34, 44, 57, 120, 126-127, 136, 138-39, 143-235, 259-61, 267-68, 272-75, 281, 283, 285, 290, 297, 300, 304-11, 319-21, 329-31, 338, 340, 344-54, 356-59, 366, 370-71, 374-75, 380.

The application of the litigation privilege in New Jersey turns on a four-part standard: "The privilege shields 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to

27

achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Loigman*, 889 A.2d at 437 (quoting *Hawkins*, 661 A.2d at 289). Each element of the privilege is met here.

*First*, there can be no doubt that the statements alleged by plaintiffs were "made in judicial or quasi-judicial proceedings," since they were made in various asbestos cases. *See, e.g.*, *Ruberton*, 654 A.2d at 1006-07 (privilege extends "to all statements or communications in connection with [a] judicial proceeding").

*Second*, the statements in question were, by the allegations of the complaint, made by lawyers, parties, or experts, who are all "litigants or other participants authorized by law." *Loigman*, 889 A.2d at 437 (privilege covers parties and lawyers); *Zagami*, 957 A.2d at 694 (privilege "extends to witnesses, parties and their representatives, as well as other participants in [the] proceedings").

*Third*, by plaintiffs' own allegations, *see, e.g.*, Am. Compl. ¶¶ 1, 12, the statements were made "to achieve the objects of the litigation," *Hawkins*, 661 A.2d at 289, *i.e.*, to obtain in the asbestos cases favorable results, which is the ultimate goal in any litigation. *See, e.g.*, *Ritger v. Gatlin*, 2010 WL 1490582, at *2 (D.N.J. Apr. 13, 2010) (holding that litigation privilege applied to statements intended to achieve success in litigation); *Component Hardware Group, Inc. v. Trine Rolled Moulding Corp.*, 2007 WL 2177667, at *5 (D.N.J. July 27, 2007) (same); *Thomas v. Ford Motor Co.*, 137 F. Supp. 2d 575, 585-86 (D.N.J. 2001) (same). It makes no difference that

28

plaintiffs allege defendants *wrongfully* attempted to achieve the objects of litigation, because "[i]n applying the privilege, [courts] consider neither the justness of the lawyers' motives nor the sincerity of their communications." *Loigman*, 889 A.2d at 437; *see also DeVivo*, 550 A.2d at 165 (privilege applies "even if the words are written or spoken maliciously, without any justification or excuse").

*Fourth*, and finally, the statements had "some connection or logical relation" to the asbestos cases. *Hawkins*, 661 A.2d at 289. Relevancy for purposes of the litigation privilege is "interpreted quite broadly and liberally," *DeVivo*, 550 A.2d at 167, and "[t]he pertinency thus required is not a technical legal relevancy … but rather a general frame of reference and relationship to the subject matter of the action," *Hawkins*, 661 A.2d at 290 (quotations omitted). According to the complaint, the statements at issue here—about Emtal talc and asbestos—meet this standard. Indeed, the whole premise of this lawsuit is that these statements were relevant to the asbestos cases, and thus affected their outcomes.

The result is that all of plaintiffs' claims must be dismissed to the extent they are based on statements made in litigation—and indeed, every Count in the complaint relies on such statements. *See ante*, at 27. That is particularly the case (and complete dismissal is thus warranted) with respect to those claims that by their nature depend exclusively upon statements, such as the RICO predicate acts of mail and wire fraud, which premise liability on communications. *See* 18 U.S.C. §§ 1341, 1343; *see also*

*United States v. Pendergraft*, 297 F.3d 1198, 1208-09 (11th Cir. 2002). In addition, and most prominently, Counts IV and V sound in fraud, Am. Compl. ¶¶ 343-360, a tort that—like defamation, the archetypal case for applying the privilege—requires a false statement as an element. *See, e.g.*, *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002) ("Incorrect statement and misstatement of fact are elements of … common law fraud."). Since the only statements forming the basis for Counts IV and V are statements made in litigation—allegedly false and incorrect affidavits, verifications to discovery responses, correspondence to claimants' counsel, motions, and so forth—the litigation privilege bars Counts IV and V in their entirety,[5] even assuming plaintiffs' newly minted "fraud upon the court" claim (Count V) is actually a cognizable private right of action under New Jersey law.

## IV.   PLAINTIFFS' REMAINING COMMON-LAW CLAIMS ARE LIKEWISE SUBJECT TO DISMISSAL

### A.   Unjust Enrichment Has No Application In This Lawsuit.

The Count VIII unjust enrichment claim fails because under New Jersey law unjust enrichment is a quasi-contractual theory, not an independent tort. *See, e.g.*,

---

[5] It is immaterial in this regard whether Counts IV and V are based on affirmative misrepresentations or omissions, *see, e.g.*, Am. Compl. ¶ 348, because omissions made in litigation are likewise subject to the privilege. *See, e.g.*, *Pigg v. Manfredo*, 2008 WL 80662, at *5 (Cal. Ct. App. Jan. 9, 2008) ("[T]he alleged representations or omissions are absolutely protected."); *Lee v. Hoffman*, 2002 WL 57408, at *3 (Cal. Ct. App. Jan. 16, 2002) ("[T]he litigation privilege precludes tort claims resting on omissions."); *see also Rickenbach*, 2010 WL 920869, at *5 (noting that New Jersey "borrowed its litigation privilege jurisprudence" from California and looks to California law as instructive in this area). Indeed, were omissions not covered, the litigation privilege would be rendered a nullity, because any false statement could be reframed as an omission of the truth.

*Nelson v. Xacta 3000 Inc.*, 2010 WL 1931251, at *9 (D.N.J. May 12, 2010) ("New Jersey does not recognize unjust enrichment as an independent tort."); *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) ("The Restatement of Torts does not recognize unjust enrichment as an independent tort.").  Accordingly, where, as here, plaintiffs' claim sounds in tort rather than contract, courts dismiss unjust enrichment claims that simply parrot other allegations in a tort complaint.  *See, e.g.*, *Mason v. Coca-Cola Co.*, 2010 WL 2674445, at *7 (D.N.J. June 30, 2010) (dismissing unjust enrichment claim because plaintiffs' "claim appears to sound in tort and not in quasi-contract"); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (holding that where "Plaintiff's theory of recovery is based on the assertion that it was misled" by defendant, "[s]uch allegations sound in tort" and plaintiff's unjust enrichment claim must be dismissed, because "New Jersey does *not* recognize unjust enrichment as an independent tort cause of action") (emphasis in original); *Aetna Health, Inc. v. Carabasi Chiropractic Ctr., Inc.*, 2006 WL 66460, at *4 (N.J. Super. Ct. App. Div. Jan. 13, 2006) (dismissing unjust enrichment claim that "merely reasserts … claim for fraud").

Here, Count VIII simply recites plaintiffs' preceding claims and asserts that defendants "should not be permitted to unjustly retain the revenues … from such misconduct."  Am. Compl. ¶¶ 374-75.  These allegations do not state a claim for

quasi-contract, but rather seek damages for other tortious behavior.  Because no such theory of recovery exists under New Jersey law, the Court should dismiss this claim.

**B.    The Civil Conspiracy Claim Fails As A Matter Of Law.**

The Count IX claim for civil conspiracy, *see* Am. Compl. ¶¶ 377-383, fails for two independent reasons, either of which is sufficient to support dismissal.

*First*, a conspiracy is only actionable when plaintiffs have properly alleged an agreement to do something unlawful.  *See, e.g.*, *District 1199P Health and Welfare Plan v. Janssen, L.P.*,  2011 WL 1086004, at *18 (D.N.J. Mar. 21, 2011) ("Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort, and because all of Plaintiffs' tort claims fail as a matter of law, Plaintiffs' civil conspiracy claim must be dismissed.").  Where, as here, plaintiffs have not sufficiently alleged any underlying wrongs, *see ante*, at 6-31, their conspiracy claim necessarily fails as a matter of law.  *See, e.g.*, *Curbison v. United States Gov't of N.J.*, 242 Fed. Appx. 806, 810 (3d Cir. June 27, 2007) ("[B]ecause the underlying claims were properly dismissed, the conspiracy claims had to be dismissed as well.").

*Second*, plaintiffs' conspiracy claim fails because the conspiracy as plead—one between a company and its employees and agents (here lawyers)—is not cognizable as a matter of law.  In New Jersey, "[a] civil conspiracy is a combination of *two or more persons* acting in concert to commit an unlawful act."  *Sunkett v. Misci*, 183 F. Supp. 2d 691, 722 (D.N.J. 2002) (emphasis added) (quotations omitted).  But on the

allegations of the complaint, Engelhard and its employees and lawyers are properly considered as one "person," and thus incapable of constituting a conspiracy.

With respect to officers and employees, courts have held that "[w]hen the officers of a corporation are acting in their corporate capacity, they cannot conspire with the corporation," because "[a]n abstract entity can only act through its officers." *Sunkett*, 183 F. Supp. 2d at 722; *see also Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 1988) (affirming dismissal of conspiracy count where plaintiff "made no allegation of any conspiracy beyond that of [an officer] conspiring with the corporation in his corporate capacity"); *Reese v. Horizon Blue Cross Blue Shield of N.J.*, 2008 WL 5188853, at *3 (D.N.J. Dec. 10, 2008) (dismissing conspiracy count because "[e]mployees of a corporation acting within the scope of their employment cannot conspire with a corporation or with each other, as they are all considered one entity"). The only "exception" to this rule is "when the employees have acted for their *sole personal benefit* and thus outside the course and scope of their employment." *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999) (emphasis added); *see also Spitz v. Medco Health Solutions, Inc.*, 2010 WL 4615233, at *4 (D.N.J.Nov. 3, 2010).

These same limitations on the doctrine of conspiracy apply not only to officers and employees, but also to a corporation's lawyers. *See, e.g.*, *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-14 (3d Cir. 2003) (affirming dismissal of client-lawyer conspiracy where no allegation that lawyers acted for their

33

sole personal benefit); *Heffernan*, 189 F.3d at 411-14 (same); *D & D Assocs., Inc. v. Board of Educ. of N. Plainfield*, 2007 WL 4554208, at *29 n.19 (D.N.J. Dec. 21, 2007) (noting that a conspiracy claim would "fail insofar as asserted against [an attorney] because … he acted in his professional capacity as … counsel").  Indeed, because "[t]he right of a litigant to independent and zealous counsel is at the heart of our adversary system," and because the conduct of lawyers (unlike corporate employees) "is regulated and enforced by disciplinary bodies" and "punishable by sanctions," it "follows all the more that [courts] should enforce the ban on conspiracies in the attorney-client context." *Heffernan*, 189 F.3d at 413.  Courts have thus made clear that "the mere fact that attorneys have mixed motives, such as enhancing their reputation by aggressive representation," does not thereby render their conduct for their "sole benefit," so as to support a conspiracy.  *Id.* at 413 (quotations omitted); *see also General Refractories*, 337 F.3d at 313-14 ("[T]hat the attorney[s] … may have acted in bad faith … does not, in itself," create a conspiracy).[6]

---

[6] The decision in *Banco Popular North America v. Gandi*, 876 A.2d 253 (N.J. 2005), is not to the contrary.  There an allegation of conspiracy between a lawyer and client was allowed to proceed because the plaintiff had alleged that the lawyer and his client conspired to conceal assets in violation of the Uniform Fraudulent Transfer Act.  *Id.* at 261-64.  *Banco Popular* did not hold—and had no occasion to hold—that alleged conspiracies between lawyers and their clients arising out of efforts to defend litigation are cognizable, which would turn every past litigation into a conspiracy.  That is especially so where sanctions are available in the litigation context.  *See LoBiondo v. Schwartz*, 970 A.2d 1007, 1028-30 (N.J. 2009) (noting that while *Banco Popular* "authorized in principle" an attorney-client conspiracy involving "fraudulent transfer of assets," such claims involving attorneys must be "vastly limited" given the effectiveness of "sanctions" and the need to avoid "chill[ing] … entirely appropriate zealous advocacy").

Here, plaintiffs do not allege that Engelhard's employees and lawyers acted for their "sole personal benefit," so as to render them separate from Engelhard and thereby enable a conspiracy claim. *Heffernan*, 189 F.3d at 412. To the contrary, plaintiffs claim that all of the defendants conspired together when defending asbestos cases. *See, e.g.*, Am. Compl. ¶¶ 2, 378. But defending Engelhard in litigation was undoubtedly within the scope of the employees' and lawyers' agency for Engelhard. *See, e.g.*, *General Refractories*, 337 F.3d at 313-14. And while plaintiffs do allege that Cahill benefited through legal fees and marketing, *see, e.g.*, Compl. ¶ 270, these are at best "mixed motives" that are not tantamount to allegations of lawyers acting for their "sole personal benefit." *Heffernan*, 189 F.3d at 413; *see also General Refractories*, 337 F.3d at 314 ("[T]he challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge.") (quotations omitted). In short, whether or not Engelhard's officers, employees, and lawyers acted with Engelhard's knowledge and approval—which is not at issue for present purposes—plaintiffs' allegations as plead do not allege a combination of two or more persons acting together.

## V.  THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFFS' REQUEST TO OVERTURN PRIOR STATE COURT JUDGMENTS

Finally, in their Demand for Relief plaintiffs seek various forms of injunctive relief, including an order "restoring members of the Asbestos Claimant Class back … to the position they were in prior to the commission of Defendants' obstruction of

justice and fraud," *i.e.*, to the position plaintiffs were in prior to the judgments being entered in their asbestos cases.  Am. Compl. Demand for Relief ¶ (b); *see also id.* ¶ 283(i) (requesting "the Court to take jurisdiction and implement curative measures restoring class members and BASF back to the *status quo ante*").  This request for "extraordinary" injunctive relief, *id.* ¶ 1, is emblematic of plaintiffs' efforts to interject this Court into the decisions of other courts, and it is without authorization in federal law.  Most of the named plaintiffs' decedents litigated claims against Engelhard in state courts, and those claims were eventually reduced to judgment as a result of settlement or dismissal.  Am. Compl. ¶¶ 22, 25, 28, 31, 219.  Because plaintiffs ask this Court to overturn state-court judgments, the Court lacks subject matter jurisdiction to provide such relief under the long-standing *Rooker-Feldman* doctrine.

Taken together, the decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), establish that a federal district court cannot exercise jurisdiction if it would result in "overturn[ing] an injurious state-court judgment."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).  The *Rooker-Feldman* doctrine thus deprives federal district courts of jurisdiction over cases that are "essentially appeals from state-court judgments," *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010), and "is implicated when, in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court

36

judgment was erroneously entered or must take action that would render that judgment ineffectual," *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quotations omitted). The basis for this doctrine is 28 U.S.C. § 1257: because it gives the Supreme Court exclusive jurisdiction to review state-court judgments, district courts lack that authority. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). This Court has thus repeatedly dismissed claims on *Rooker-Feldman* grounds.[7]

*Rooker-Feldman* divests a court of jurisdiction where "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western*, 615 F.3d at 166 (quotations omitted). Here the first and third elements are met, because plaintiffs are disappointed state-court litigants, and the *Rooker-Feldman* doctrine applies with equal force to claims resolved through judgments entered after settlements as it does to those resolved by adverse judgment. *See, e.g.*, *Bullock v. Sloane Toyota Inc.*, 2011 WL 713622, at *1 & n.2 (3d Cir. Mar. 2, 2011) (*per curiam*) (barring under *Rooker-Feldman* plaintiff's attempt to set aside a state-

---

[7] *See, e.g.*, *Gatson v. New Jersey*, 2009 WL 3667066, at *9 (D.N.J. Nov. 4, 2009) ("[A] cause of action asserted in federal court that ultimately seeks to vacate the decision or reasoning of a state court is barred under *Rooker-Feldman*."); *Karas v. Robbins*, 2009 WL 2912778, at *5 (D.N.J. Sept. 9, 2009) (invoking *Rooker-Feldman* where ruling in plaintiff's favor "would have the effect of overruling and/or vacating the orders and judgments rendered by the state court"); *see also Cycle Chem, Inc. v. Campbell*, 2009 WL 44746, at *2 (D.N.J. Jan. 6, 2009). To the extent plaintiffs' seek relief under Rule 60, that would only underscore the *Rooker-Feldman* problem here, as plaintiffs would again be asking this Court to re-open judgments issued by other courts, including state courts.

court settlement and succeeding judgment); *N.V. Siravo v. Country Wide Home Loan*, 349 Fed. Appx. 766, 768 (3d Cir. 2009) (*per curiam*) (same).

The second element of *Rooker-Feldman*—whether the complained-of injury is "caused by" a state-court judgment—is also met here. *Great Western*, 615 F.3d at 166. By asking for injunctive relief restoring them to the position they were in prior to those judgments, and to deem those judgments without preclusive effect, *see, e.g.*, Demand for Relief ¶ (b), plaintiffs are necessarily complaining about injuries caused by the judgments themselves, *i.e.*, the legal effects of those judgments, as opposed to injuries for harms that preceded the state-court proceedings. *See, e.g.*, *Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007) ("[A] request to declare the state court judgment void seeks redress from an injury caused by the state court itself."); *see also Great Western*, 615 F.3d at 167 ("A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been caused by those proceedings.") (quotations omitted). Indeed, plaintiffs' whole point in requesting this sort of injunctive relief is their acknowledgement that attempting to re-litigate their decedents' asbestos claims encounters various obstacles as a result of the fact that those claims previously ended in court judgments. *See, e.g.*, Am. Compl. ¶ 16.

The fourth *Rooker-Feldman* element—whether the plaintiff is inviting the court to "review and reject" the state-court judgment—precludes relief that would be

equivalent to "hav[ing] the state-court decisions undone or declared null and void by the federal court[]." *Great Western*, 615 F.3d at 173; *see also Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006) ("Under the *Rooker-Feldman* doctrine, a district court . . . lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling."); *Purpura v. Bushkin, Gaimes*, 317 Fed. Appx. 263, 265 (3d Cir. 2009) (*per curiam*) (same). That is the case here with respect to plaintiffs' sweeping requests for declaratory and injunctive relief, which would "reduce the state court judgments to nullities," "precisely what *Rooker-Feldman* prohibits." *In re Knapper*, 407 F.3d at 582.

Specifically, this Court is without jurisdiction to provide the following:

> Declaratory and equitable relief restoring [plaintiffs] … to the position they were in prior to the commission of Defendants' obstruction of justice and fraud, including but not limited to … (i) prohibiting … defendants from asserting or claiming against Plaintiffs and members of the Class the benefit of *res judica[ta]* or any other claim preclusion doctrine or right based upon prior litigation or a claim adjudication concerning BASF's talc or talc products; (ii) barring … defendants from asserting any time passage related defense such as statutes of limitations, laches, repose or death action claim time commencement requirements; and/or (iii) … barring Defendants from asserting any defense based upon the existence of a release of claims, covenants not to sue or settlement agreement or similar defense.  Demand for Relief ¶ (b).

Restoring plaintiffs "to the position they were in prior to the commission of Defendants' obstruction of justice and fraud" necessarily requires vacating the judgments in their prior cases, which is *Rooker-Feldman*'s essence.  And ordering other relief, such as the setting aside of releases, "effectively would reverse a state

39

court decision or void its ruling" by draining it of preclusive effect.  *Taliaferro*, 458 F.3d at 192.  Plaintiffs can no more ask this Court to directly overturn state-court judgments than they can seek the same objective by indirection.

Plaintiff Williams requests that this Court set aside a judgment previously entered by another federal court, as opposed to a state court.  *See* Am. Compl. ¶ 19. But just as 28 U.S.C. § 1257 is the basis for *Rooker-Feldman*, 28 U.S.C. § 1291— which grants courts of appeal jurisdiction over appeals from federal district courts— should cause the Court to refrain from exercising jurisdiction to nullify another federal district court's judgment.  *See Ord v. United States*, 8 Fed. Appx. 852, 854 (9th Cir. 2001) ("We are reluctant to allow independent actions for relief from other [federal] courts' judgments or orders because of considerations of comity and orderly administration of justice.") (quotations omitted); *Treadaway v. Academy of Motion Picture Arts & Sciences*, 783 F.2d 1418, 1421-22 (9th Cir. 1986) (affirming on comity grounds dismissal of complaint seeking to set aside judgment of another district court); *Zdrok v. V Secret Catalogue, Inc.*, 215 F. Supp. 2d 510, 515 (D.N.J. 2002) (holding that "[e]stablished principles of comity preclude this Court from interfering with" the decision of another federal court), *vacated on other grounds*, 108 Fed. Appx. 692 (3d Cir. 2004).

## CONCLUSION

For the foregoing reasons, plaintiffs' complaint should be dismissed.

Date:   September 30, 2011                    Respectfully submitted,

                                              /s/ Stephen M. Orlofsky
Eugene F. Assaf, P.C. (*pro hac vice*)        Stephen M. Orlofsky
Michael F. Williams                           New Jersey Resident Partner
Daniel A. Bress (*pro hac vice*)              David C. Kistler
KIRKLAND & ELLIS LLP                          Blank Rome LLP
655 15th St., N.W.                            301 Carnegie Center, 3rd Floor
Washington, D.C. 20005                        Princeton, NJ 08540
Phone: (202) 879-5000                         Phone: (609) 750-2646
Facsimile: (202) 879-5200                     Facsimile: (609) 750-7701

*Counsel for Defendant*                       *Counsel for Defendant*
*BASF Catalysts LLC*                          *BASF Catalysts LLC*

41