

One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: 973.690.5400 Fax: 973.466.2761
www.rwmlegal.com

June 5, 2017

**VIA ECF**

Hon. Joseph A. Dickson, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> **Re:** *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*
> **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Judge Dickson:

BASF files this reply to plaintiffs' opposition, ECF No. 312 ("5/30/17 Pls.' Ltr"), to BASF's request for sanctions, ECF No. 303 ("5/1/17 BASF Ltr.").

BASF and the undersigned law firms do not lightly seek sanctions in their cases, but the conduct of plaintiffs' counsel in obstructing the testimony of a critical witness and putative class representative was simply beyond the pale. Plaintiffs' opposition brief—which does not respond to the key issues at stake here—confirms that BASF's request for sanctions was well-taken and that plaintiffs' counsel's conduct was indefensible under the Federal Rules. Indeed, plaintiffs' opposition does not address any particular instruction not to answer or explain why the question posed justified it.

Simply stated, it was completely contrary to federal practice and the governing rules for plaintiffs' counsel to object 90 times in the three-hour deposition of Ms. Wengerd to questions as basic as how long Ms. Wengerd met with counsel, whether she knew about a settlement offer, and whether she provided documents to her lawyers. These are straightforward, routine deposition questions. Plaintiffs have no answer to the established body of law making clear that instructions not to answer on grounds of relevance are not allowed. Indeed, the Eastern District of New York recently issued a sanctions order for obstruction of a deposition through similarly improper relevance instructions. *See Cordero v. City of New York*, 2017 WL 2116699 (E.D.N.Y. May 12, 2017). Nor do plaintiffs offer any support for their counsel's repeated objections that BASF's questions somehow invaded Ms. Wengerd's own work product and mental impressions—frivolous instructions not to answer that, if allowed, would all but prevent any questioning of fact witnesses.

Plaintiffs' attempt to justify their objections through the Third Circuit's ruling is also badly misplaced. The Third Circuit—which ruled on whether the allegations pled in plaintiffs' complaint could survive a motion to dismiss—did not limit discovery in this case, and existing disagreements about the scope of discovery do not affect the vast majority of the questions for which plaintiffs' counsel instructed Ms. Wengerd not to answer, such as whether she was aware

**RM** ROBINSON
MILLER LLC

Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 2

of a settlement offer.  Plaintiffs' view of this case—which would assume the truth of allegations in a complaint not only for purposes of a motion to dismiss but for the entirety of a case—would radically alter the Federal Rules and constitutional due process requirements by allowing a plaintiff to make allegations and then block discovery into those very allegations.  That is not how discovery works in our civil justice system, and it does not justify plaintiffs' counsel's approach at the Wengerd deposition.

Of course, plaintiffs' counsel's entire attempt to defend their conduct at the Wengerd deposition ignores the most critical feature of BASF's motion: that plaintiffs' counsel had allowed plaintiff Holley to answer the very same questions the previous day.  The Holley deposition yielded eye-opening testimony that raises serious questions about Ms. Holley's suitability as a class representative and even the suitability of plaintiffs' attorneys as class counsel, among other things. In an obvious attempt to avoid a repeat of that damaging testimony, plaintiffs' counsel—through his repeated instructions not to answer and frequent rebukes of BASF's counsel to "move on"— made it impossible for BASF to obtain the same testimony from Ms. Wengerd concerning the exact same subjects that it had just raised with Ms. Holley.  Plaintiffs' entire opposition is just a *post hoc* attempt to rationalize instructions not to answer that were not made when the very same areas were probed the day before.

For the reasons stated in BASF's opening brief and those that follow, BASF respectfully requests that the Court (i) reopen the deposition of Ms. Wengerd, and overrule the improper objections and instructions made by plaintiffs' counsel; (ii) sanction plaintiffs and award BASF its costs and attorney's fees for this filing and BASF's attendance at the first deposition of Ms. Wengerd, which plaintiffs' counsel improperly obstructed through repeated improper instructions not to answer; and (iii) compel plaintiffs' counsel to collect, review, and either produce or log all relevant documents in the named plaintiffs' possession, custody, or control.

## I.    PLAINTIFFS' OPPOSITION IGNORES COUNSEL'S MISCONDUCT AT THE WENGERD DEPOSITION.

Plaintiffs' opposition brief remarkably never addresses the primary basis for BASF's sanctions motion: plaintiffs' counsel's repeated and improper instructions not to answer at the deposition of plaintiff Wengerd, which were based on frivolous privilege and relevance objections. Plaintiffs do not even attempt to address the numerous federal cases that make clear counsel's conduct was sanctionable.  *See* 5/1/17 BASF Ltr. 13-15; *see also, e.g., Derricote v. Pressler & Pressler, LLP*, 2011 WL 2971540, at *7 (D.N.J. July 19, 2011) ("When a non-moving party fails to respond to a moving party's argument, that argument shall be deemed unopposed.").  Instead, plaintiffs set up a straw man, claiming at various points that BASF is seeking sanctions for certain testimony offered by plaintiff Holley.  *E.g.*, 5/30/17 Pls.' Ltr. 5 ("BASF's complaints about questions Plaintiff Holley could not answer mischaracterizes Ms. Holley's deposition testimony, and, more importantly, fails to justify its request for sanctions."); *id.* ("Given the wide range of areas inquired about, it is hard to see how [Ms. Holley's] testimony gives rise to a claim for sanctions."); *id.* at 3 ("Ms. Holley testified that she did not know the amount of compensation that



Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 3

she was offered to settle."). Plaintiffs also suggest that BASF is seeking sanctions based on testimony given by Ms. Wengerd. *E.g.*, *id.* at 8 ("It is accordingly unfair to charge that Ms. Wengerd is not a *bona fide* Plaintiff or has no idea of what is going on in this lawsuit, let alone support a motion for sanctions on this testimony.").

These arguments are purely diversionary. BASF does not seek sanctions for the testimony given by Ms. Holley or Ms. Wengerd, even as that testimony raises serious questions about plaintiffs' ability to meet the requirements of Rule 23. Rather, BASF seeks sanctions because of the testimony Ms. Wengerd **was prevented from giving** as a result of her counsel's improper objections and instructions not to answer. On this point, plaintiffs' opposition brief is almost entirely non-responsive.

### A.    Plaintiffs' Counsel Obstructed the Wengerd Deposition by Improperly Invoking the Attorney-Client Privilege and the Work-Product Doctrine.

Plaintiffs provide no adequate justification (and often no explanation at all) for their counsel's assertion of privilege over questions regarding: (1) whether documents in Ms. Wengerd's possession were collected, reviewed, and produced; (2) Ms. Wengerd's personal knowledge of BASF's settlement offer; (3) her personal knowledge about her own allegations; (4) her demand for damages; (5) her own understanding of the putative class she seeks to represent; and (6) the timing and form of her deposition preparation. *See* 5/1/17 BASF Ltr. 6-7; *see also* 5/30/17 Pls.' Ltr. 6-10. Plaintiffs' privilege objections in these areas were completely baseless.

### 1.   Collection And Review Of Ms. Wengerd's Documents

Ms. Holley testified that her counsel never collected documents in her possession related to her decedent's underlying asbestos cases. *See, e.g.*, Ex. A (4/5/17 Holley Dep. 68:17 - 69:24).[1] Plaintiffs' counsel did not raise any privilege objections to this line of questioning. But when BASF asked Ms. Wengerd the very next day whether documents related to **her** decedent's underlying case have been collected and produced, class counsel suddenly asserted privilege. Ex. B (4/6/17 Wengerd Dep. 22:16 - 24:2, 41:24 - 42:13). Counsel would not even allow Ms. Wengerd to testify whether she **possessed** certain relevant documents. *Id.* at 19:20 - 20:18 ("Q. Do you still have all the letters? MR. COREN: Don't answer. A. On advice of counsel, I'm not answering."). Plaintiffs' opposition does not even address their instructions not to answer in this area, implicitly conceding that there was no valid basis for them. *See also Stillaguamish Tribe of Indians v. Nelson*, 2012 WL 1855763, at *3 (W.D. Wash. May 21, 2012) ("Plaintiff must also state whether all responsive documents have been produced."); *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *7 (E.D. Pa. May 26, 2006) (privilege objections were improper where "Defendants just want to know whether Plaintiffs possess any such documents at all").

---

[1] Exhibits A through H were attached to 5/1/17 BASF Ltr. and are not re-attached here.

RM | ROBINSON
MILLER LLC

Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 4

### 2.  BASF's Settlement Offer

BASF asked Ms. Holley at her deposition whether she was aware of BASF's settlement offer in this case, and she unequivocally responded that she lacked any such knowledge.  *See, e.g.*, Ex. A (4/5/17 Holley Dep. 39:9-17).  Plaintiffs' counsel did not object on the basis of privilege (or any other basis) because BASF's questions were not directed towards the ***content*** of any legal advice or communication between Ms. Holley and her attorneys.  Indeed, by Ms. Holley's admission, there were no communications over which privilege could be asserted.  *See id.*  Nonetheless, plaintiffs' counsel asserted privilege objections over the exact same questioning at Ms. Wengerd's deposition the very next day. Ex. B (4/6/17 Wengerd Dep. 75:2-21) ("Q. Is it your understanding that proposals were exchanged between the parties in the course of the mediation in the *Williams* case?  MR. COREN: Objection.  Once again, attorney-client privilege, work product privilege, mediation privilege.  Please do not answer.").

Plaintiffs' opposition does not even attempt to justify these instructions not to answer.  Either Ms. Wengerd was aware of BASF's settlement offer or she was not.  Her awareness of that offer—made by BASF, an opposing party—is not privileged; it would not reveal the substance of any legal advice given to Ms. Wengerd by her counsel.  And if, like Ms. Holley, Ms. Wengerd was never informed that BASF made a settlement offer, then there was never any attorney-client communication over which privilege could be asserted in the first place.  Plaintiffs' counsel's privilege objections on this topic were meritless and had no purpose other than to obstruct Ms. Wengerd's deposition by limiting testimony that was damaging to plaintiffs' case.[2]

### 3.  Ms. Wengerd's Personal Knowledge Of Her Own Allegations

Remarkably, plaintiffs' counsel invoked privilege when BASF tried to ask Ms. Wengerd about her understanding of this case.  5/1/17 BASF Ltr. 6-7, 10-12.  Plaintiffs offer no basis for

---

[2] Plaintiffs' claim that "Defendants never made a firm, complete settlement offer and in particular never made a firm offer as to any of the six class representatives' cases."  5/30/17 Pls.' Ltr. 2.  Even if that were true, it does not justify an instruction not to answer.  Critically, however, it is false, and if the Court wishes to know more about BASF's offer, BASF has no objection to the Court contacting retired Judge Layn Phillips, who served as mediator.  It is deeply troubling that plaintiffs' counsel did not inform their own clients of BASF's settlement offer, and it is equally troubling that plaintiffs' counsel now inaccurately claims no such offer was made.  Mediation in this case extended for more than six months and multiple settlement offers were made.  Indeed, it now appears that plaintiffs' counsel took up the time and resources of the defendants and mediator (and this Court) without even engaging their clients, raising serious questions as to whether plaintiffs' counsel is litigating this case for the benefit of the class.



Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 5

these objections and instructions not to answer. Instead, plaintiffs make three arguments on this score, none of which is responsive or justifies their conduct.

*First*, plaintiffs argue that Ms. Wengerd was allowed to answer some of BASF's questions about her allegations in this case. 5/30/17 Pls.' Ltr. 7. These responses do not excuse her refusal to answer, at counsel's instruction, the remaining questions that BASF properly asked. The fact that plaintiffs' counsel permitted Ms. Wengerd to testify as to certain questions about her lawsuit, but not others, only illustrates the unprincipled position plaintiffs have taken.

*Second*, plaintiffs argue that Ms. Wengerd was not in a position to answer questions "about specific allegations in Plaintiffs' Complaint." *Id.* But that provides no basis for instructing Ms. Wengerd not to answer questions that called for non-privileged information. A witness can simply answer that she does not know, if that is a truthful response. It is highly significant under Rule 23 if a class representative cannot answer basic questions about allegations she is making in a putative class action lawsuit. *See* 5/1/17 BASF Ltr. 18-19 (citing authorities). Whatever disagreement plaintiffs' counsel could have with this settled law, it provides no basis for blocking BASF from questioning a deponent.

*Third*, plaintiffs' argue that Ms. Wengerd could not answer questions because defendants "destroyed and concealed evidence for decades." 5/30/17 Pls.' Ltr. 7. According to plaintiffs, "having sewn poisoned seeds of deceit," BASF is "now trying to reap the benefits of its resulting massive crop of poisonous fruit." *Id.*. Plaintiffs' unnecessary rhetoric aside, this too provides no basis for instructing a witness not to answer. As plaintiffs have done throughout this case, they try to thwart discovery by asking the Court to accept as true their unproven allegations. That is completely improper.

## 4. Ms. Wengerd's Understanding of Her Alleged Damages

Plaintiffs' counsel repeatedly instructed Ms. Wengerd not to answer questions about her claimed damages, including because the questions supposedly invaded Ms. Wengerd's own work product. *See* 5/1/17 BASF Ltr. 7, 11; *see also* Ex. B (4/6/17 Wengerd Dep. 66:13 - 67:4) ("MR. COREN: Objection. Don't answer. We're here not for her mental impressions or evaluation. A. I'm choosing not to answer on the advice of counsel."); *id.* at 111:5-11 (MR. COREN: "Objection . . . you're invading her work product and her mental processes. I instruct her not to answer."). Plaintiffs offer no justification for these frivolous objections and instructions.

As an initial matter, plaintiffs claim that the amount of damages sought in a fraudulent concealment case requires the knowledge of "the most qualified legal scholars and jurists …, [and] is not a question a layperson can answer." 5/30/17 Pls.' Ltr. 8. But that argument is a red herring. If plaintiffs were correct, it at most justifies an objection to the form of the question, not an instruction not to answer. But it is not correct: it is entirely permissible to ask a class action plaintiff about the damages she seeks in her case. *See, e.g., Scott v. N.Y. City Dist. Council of*

RM | ROBINSON
MILLER LLC

Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 6

*Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004) ("Knowledge of issues central to the case and of the role of class representatives is crucial since not even the presence of competent class counsel can make up for a utter lack of familiarity with the action on the part of named plaintiffs.").

Nor are plaintiffs correct that defendants' questions here "sought privileged information." 5/30/17 Pls.' Ltr. 8. Plaintiffs' opposition does not identify any particular question they believe sought this information, and none did, which is why plaintiffs' counsel largely objected to the questions on the ground that they invaded ***Ms. Wengerd's*** work product and mental impressions. On that issue, plaintiffs claim "[c]ourts agree that a party's subjective valuation of their claim at issue is privileged and outside the scope of permissible discovery." *Id.* That contention is manifestly incorrect, even by plaintiffs' own case citations.

For instance, plaintiffs cite *Tardiff v. County of Knox*, 246 F.R.D. 66, 75 (D. Me. 2007), for the proposition that BASF's questions regarding Ms. Wengerd's understanding of her case and the value of her damages were off-limits on the grounds of work product. But in *Tardiff*, the deponent was ***the plaintiff's attorney*** in the underlying action—not the actual plaintiff asserting privilege over her own mental impressions and work product. *Id.*; *cf., e.g.*, Ex. B (4/6/17 Wengerd Dep. 62:3-7) ("MR. FARRELL: What is the basis for the instruction not to answer the question? MR. COREN: It has no relevance whatsoever. Two, you're asking her for her mental impressions and her work product."). Plaintiffs' reliance on *Mountain Marketing Group, LLC v. Heimerl & Lammers, LLC*, 2015 WL 4529638 (D. Minn. July 27, 2015) is similarly misguided. In that case, the court limited discovery into the ***defendant's*** valuation of the ***plaintiffs'*** claim because the information sought was "completely within the realm of attorney-client privilege or attorney work product." *Id.* at *3. The decision does not purport to limit discovery into a plaintiff's understanding of her own case. Plaintiffs' remaining cases also provide no support for their claim of work product over a plaintiff's personal knowledge of her case. *See United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980) (sustaining privilege claim over "legal advice or opinion ***from an attorney*** to his client") (emphasis added); *Canel v. Lincoln Nat'l Bank*, 179 F.R.D. 224, 228 (N.D. Ill. 1998) (similar). And *Stoffels v. SBC Communications, Inc.*, 238 F.R.D. 446 (W.D. Tex. 2006), actually supports BASF, as the court there considered on a motion for class certification extensive deposition testimony by the named plaintiff, which included questioning about plaintiff's "understanding of a class action" and plaintiff's "factual basis" for his claims. *Id.* at 455 n.67.

### 5. Ms. Wengerd's Understanding of Her Role As Class Representative

Plaintiffs mistakenly claim that questions regarding whether a named plaintiff understands her role as class representative "call[] for non-discoverable legal conclusions … that are irrelevant to the merits of the case." 5/30/17 Pls.' Ltr. 9. But plaintiffs fail to identify what legal conclusions Ms. Wengerd must draw to answer these questions, and testimony regarding Ms. Wengerd's understanding of the putative class is squarely relevant to (at least) the issue of her adequacy as a class representative. *See* Fed. R. Civ. P. 23(a)(4). Indeed, named plaintiffs are often required to



Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 7

testify regarding their role as class representatives as a precondition to class certification. *See, e.g.*, *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 649 (W.D. Okla. 2012) ("Mr. Robertson's deposition testimony also reflects that Lead Plaintiff understands the requirements and responsibilities of serving as a class representative in a securities class action like this one."); *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 533 (N.D. Tex. 2005) (denying certification where named plaintiff's "deposition testimony indicates that there are many instances in which she has little or no knowledge outside of that given to her by her attorneys").[3]

More importantly, even if plaintiffs' counsel believed that questions regarding Ms. Wengerd's understanding of the *Williams* class called for a legal conclusion, counsel should have interposed an objection to form and allowed the witness to answer. *See* Fed. R. Civ. P. 30(c)(2). The sole proffered justification for objecting to questions seeking Ms. Wengerd's understanding of her role as a class representative was that such questions "invad[e] into her mental process." Ex. B (4/6/17 Wengerd Dep. 71:13 - 72:1). As explained above, that is not a valid basis for asserting privilege.

### 6. The Timing and Form of Ms. Wengerd's Communication With Class Counsel

Finally, contrary to plaintiffs' assertions, at no time did BASF "question[] [Ms. Wengerd] about the substance … of her preparations" for the deposition. *See* 5/30/17 Pls' Ltr. 9. Rather, BASF asked only about the timing and form of Ms. Wengerd's communications with counsel, and her counsel instructed her not to respond on the basis of privilege. *See* Ex. B (4/6/17 Wengerd Dep. 17:16-23) ("Q: … How long did the meeting on Tuesday [with counsel] last? MR. COREN: Don't answer."); *see also id.* at 78:15-23 ("MR. FARRELL: You're asserting a privilege objection to whether Mrs. Wengerd communicated with you by phone or other means? MR. COREN: Yes. Move on."). Plaintiffs have no answer to the fact that information about the timing and form of

---

[3] Plaintiffs' reliance on *O'Connor v. Diversified Consultants, Inc.*, 2012 U.S. Dist. LEXIS 135195 (E.D. Mo. Sep. 21, 2012), is misplaced. There, the court explained that a defendant's interrogatory seeking all "facts which support your allegation that Plaintiff is an adequate class representative" was inappropriate because it called for a legal conclusion. *Id.* at *3. Setting aside whether this out-of-district authority is correct, and the fact that the court there also found that plaintiff had already provided such information in an amended complaint, *O'Connor* has no application here because BASF did not ask Ms. Wengerd to state any legal conclusion regarding her adequacy as a class representative. Rather, BASF asked about underlying facts that are relevant to the adequacy inquiry, such as Ms. Wengerd's understanding of who she seeks to represent and how recovery should be allocated among putative class members. *See, e.g.*, Ex. B (4/6/17 Wengerd Dep. 61:20-24). Plaintiffs cite no authority holding that such deposition questions justify an instruction not to answer. Indeed, one of plaintiffs' own cases involves deposition testimony regarding a named plaintiff's "understanding of a class action" and a plaintiff's "factual basis" for his claims. *Stoffels*, 238 F.R.D. at 455 n.67.



Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 8

attorney-client communications is not privileged.  Indeed, it is the type of information regularly included on privilege logs.  *See, e.g.*, Fed. R. Civ. P. 26(b)(5)(A)(ii); *Glennon v. Wing Enters., Inc.*, 2010 WL 4782773, at *14 (D.N.J. Nov. 17, 2010); *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996).

Rather than explain the basis for repeated, frivolous privilege objections, plaintiffs argue for the first time that questions regarding Ms. Wengerd's preparation for her deposition called for irrelevant information.  5/30/17 Pls.' Ltr. 9.  This *post hoc* justification fails because, as one court recently observed, "it is routine to ask a witness what they [did] in preparation for the deposition."  *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 314 F.R.D. 397, 409 (E.D. La. 2016) (holding that the question, "What documents did you review in preparation for this deposition[?]" does not invade attorney-client privilege).  In any event, as detailed below, relevance is not a valid basis to instruct a deponent not to answer a question.  *See infra* at I.B.

At bottom, plaintiffs' counsel's instructions to Ms. Wengerd not to answer questions on the basis of privilege were meritless and served no purpose other than to "frustrate or impede the fair examination of a deponent during the deposition."  *In re Neurontin Antitrust Litig.*, 2011 WL 253434, at *12 (D.N.J. Jan. 25, 2011).  Accordingly, the Court should award sanctions.  *Id.*[4]

## B.   Plaintiffs' Counsel Obstructed the Wengerd Deposition by Repeatedly Instructing the Witness Not to Answer on the Basis of Relevance.

Plaintiffs have no response to the black-letter law that counsel cannot instruct a deponent not to answer on the basis of relevance.  *See, e.g.*, 5/1/17 BASF Ltr. 13-14; *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("It is inappropriate to instruct a witness not to answer a question on the basis of relevance.") (citing Fed. R. Civ. P. 30(d)(1)); *Pal v. N.Y. Univ.*, 2007 WL 4358463, at *10 n.5 (S.D.N.Y. Dec. 10, 2007) ("[A party] may not instruct a deposition witness not to answer a question on the basis of relevance."); *Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 2008 WL 2645680, at *7 (S.D. Fla. June 26, 2008) ("[T]his Court has for many years enforced the principle that pure relevance objections cannot be the bases for instructions not to answer during a deposition.").

---

[4] Plaintiffs also contend that BASF's questioning was "abusive and vexatious."  5/30/17 Pls.' Ltr. 6.  That is simply untrue and plaintiffs provide no basis for this assertion.  Plaintiffs cannot levy misplaced attacks on BASF in an attempt to divert attention from their own sanctionable conduct during the Wengerd deposition.  In this regard, BASF would be pleased to make available to the Court video recordings of the depositions.  Those recordings will confirm that counsel for BASF conducted the depositions with appropriate professional decorum and treated the witnesses with the utmost respect, while the plaintiffs' counsel was dismissive and abrupt, with repeated interjections such as "Move on."

RM **ROBINSON** **MILLER** LLC

Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 9

Indeed, the Eastern District of New York recently sanctioned counsel who, like plaintiffs' counsel here, improperly obstructed a deposition by offering a "plethora of speaking objections" and "repeatedly instruct[ing] the witness not to answer questions that were relevant to the case on the grounds that they were not relevant." *Cordero v. City of New York*, 2017 WL 2116699, at *7 (E.D.N.Y. May 12, 2017). The Court reiterated that "lack of relevance is not an appropriate objection to raise during a deposition" and "does not provide a basis to direct a witness not to answer a question." *Id.* at *5, *8. The Court also made clear that "[t]he making of an excessive number of unnecessary objections may itself constitute sanctionable conduct." *Id.* at *5. In light of the improper nature and frequency of the objections, *Cordero* concluded that counsel denied the examining party "the right to have deposition questions answered," and granted the motion for sanctions, awarding associated costs and attorneys' fees. The same result should obtain here.

In an apparent attempt to defend the improper relevance objections, plaintiffs claim that BASF's questioning of Ms. Wengerd called for information that is not discoverable under the Third Circuit's opinion in this case. *See, e.g.*, 5/30/17 Pls.' Ltr. 1 ("Plaintiffs have not permitted discovery that is beyond the scope anticipated by the Court of Appeals."). Plaintiffs' *post hoc* justification is once again no defense to BASF's sanctions request.

As an initial matter, plaintiffs' counsel did not invoke the Third Circuit's opinion during the Wengerd deposition when instructing the witness not to answer (and counsel certainly did not do so during the Holley deposition, where Ms. Holley was permitted to answer questions that Ms. Wengerd was instructed the next day not to answer). In addition, the Third Circuit ruling and any claimed limits on discovery have no bearing on most of the questions that counsel instructed Ms. Wengerd not to answer. Questions about Ms. Wengerd's knowledge of BASF's settlement offer, Ms. Wengerd's collection of documents, her knowledge and understanding of this case, the scope and structure of the putative class, and her preparation for deposition have nothing to do with the Third Circuit's opinion and do not implicate any dispute about the scope of discovery into the plaintiffs' decedents' underlying asbestos cases.

Of course, if plaintiffs' counsel were attempting to block discovery based on the Third Circuit opinion, that would be completely improper. Plaintiffs' counsel cannot take matters into their own hands and unilaterally instruct a witness not to answer based on their own (incorrect) interpretation of the Third Circuit's opinion. The Federal Rules provide that an instruction not to answer may be issued "to enforce a limitation ordered by the court." Fed. R. Civ. P. 30(c)(2). But the Third Circuit opinion contains no such limitation (because neither depositions nor discovery were at issue at the Rule 12(b)(6) stage of the proceedings, or in the appeal more generally). Indeed, plaintiffs do not even attempt to invoke Rule 30(c)(2) to justify their instructions because the Rule plainly does not apply in the absence of an actual "limitation ordered by the court."

In any event, plaintiffs are clearly misusing the Third Circuit's opinion. Both in their opposition and elsewhere, plaintiffs repeatedly invoke the opinion to claim it supports their

Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 10

position that discovery into the underlying asbestos-injury cases is irrelevant and impermissible. *E.g.*, 5/30/17 Pls.' Ltr. 1, 2, 10; 5/12/17 Pls.' Ltr. (ECF No. 308) 1-9; 3/1/17 Pls.' Ltr. (ECF No. 249) 2, 5, 14-15, 27-28. As BASF previously explained, *see* 4/14/17 BASF Ltr. 17-19 (ECF No. 289), the Third Circuit's ruling reviewing the grant of a motion to dismiss did not and could not impose plaintiffs' claimed limits on discovery, and its recitation of the elements of fraud and fraudulent concealment made clear that plaintiffs would have to prove materiality, damages, and reliance—each of which necessarily requires consideration of the plaintiffs' underlying asbestos cases. *Id.* at 18. If, for example, a plaintiff was never exposed to Emtal talc, any alleged misrepresentations relating to asbestos in Emtal talc by definition could not have been material. It is impossible to understand how plaintiffs could provide a basis for damages without reference to the merits of the underlying cases. Indeed, the United States Supreme Court's recent decision in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), makes clear that plaintiffs' underlying personal injury cases are squarely relevant to the damages issues in this litigation, and BASF has filed on this same date a separate letter advising the Court of this recent authority. *See* 6/5/17 BASF Ltr. (ECF No. 316).

Plaintiffs ignore these basic points and instead attempt to derive a rigid prohibition on discovery into the underlying asbestos cases by relying upon snippets from the Third Circuit's opinion. But in each instance, plaintiffs are imagining holdings about discovery limitations that the Third Circuit never issued in its review of the Rule 12(b)(6) dismissal order.

*First*, plaintiffs point to the Third Circuit's prefatory statement that "[t]his action is not itself an asbestos injury case, but rather an action about Engelhard and Cahill's conduct when they confronted asbestos injury cases in state courts around the country." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 311 (3d Cir. 2014) (cited in 5/30/17 Pls.' Ltr. 1, 10; 5/12/17 Pls.' Ltr. (ECF No. 308) 3; 3/1/17 Pls.' Ltr. (ECF No. 249) 2). Plaintiffs rely on this passage as evidence that the Third Circuit somehow imposed strict limitations on the scope of discovery following remand and precluded any inquiry into the merits of plaintiffs' underlying cases. That is incorrect. The passage cited by plaintiffs is an introductory remark that explains the nature of the claims asserted and the fact that plaintiffs are bringing a new lawsuit about past litigation. The Third Circuit did not purport to address the scope of discovery in this (or any other) section of its opinion, and there is no basis for construing the court's characterization of the case to bar discovery into the merits of the underlying lawsuits, which are discussed at length in plaintiffs' complaint and therefore fall within the scope of permissible discovery. *E.g.*, 2d Am. Compl. (ECF No. 158) ¶ 19 (alleging that, absent BASF's purported misconduct, plaintiff Williams "would have either had her day in court, or obtained a substantial settlement amount").

*Second*, plaintiffs claim that the Third Circuit's discussion of the *Rooker-Feldman* doctrine precludes discovery into plaintiffs' underlying asbestos-injury cases because the Third Circuit noted that "this suit does not concern state-court judgments." *Williams*, 765 F.3d at 315 (cited in 5/30/17 Pls.' Ltr. 1, 10; 5/12/17 Pls.' Ltr. (ECF No. 308) 3; 3/1/17 Pls.' Ltr. (ECF No. 249) 14-15). Again, plaintiffs misconstrue language that has nothing to do with the scope of discovery.

Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 11

As the Third Circuit explained, *Rooker-Feldman* is a "narrow" jurisdictional doctrine that is "confined to cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 765 F.3d at 315. In such cases, federal courts lack subject-matter jurisdiction to adjudicate the controversy. *See id.* The Third Circuit concluded that "[t]hose circumstances do not appear here" because plaintiffs "do[] not complain of an injury caused by a state-court judgment," but rather base their claims on "independent torts." *Id.* Whether plaintiffs' claims fall within the "narrow" scope of the *Rooker-Feldman* doctrine for purposes of a motion to dismiss has nothing to do with whether discovery into plaintiffs' underlying claims is permissible on remand.

*Third*, plaintiffs rely on the Third Circuit's statement that "the viability of a particular plaintiff's asbestos-injury claim against BASF" is "not before it." *Williams*, 765 F.3d at 328-29 (cited in 5/30/17 Pls.' Ltr. 1, 2; 5/12/17 Pls.' Ltr. (ECF No. 308) 2, 3; 3/1/17 Pls.' Ltr. (ECF No. 249)28). Yet again, plaintiffs take the Third Circuit's language out of context and ignore the Court's actual holding. This particular line is from the part of the Third Circuit's decision *rejecting* plaintiffs' attempt to obtain injunctions and declarations "determining rights and defenses available to BASF and Cahill in future proceedings." *Williams*, 765 F.3d at 328-29. Affirming Judge Chesler, the Third Circuit concluded that such relief was unavailable as a constitutional matter because it would amount to "a judgment that would merely determine a collateral legal issue governing certain aspects of [plaintiffs'] pending or future suits." *Id.* In other words, plaintiffs were asking the court "to determine in part what would be litigated in full on a later date," and the Third Circuit held that such a request would run afoul of Article III. *Id.* The Third Circuit's remark that "the viability of a particular plaintiff's asbestos-injury claim against BASF" is "not before it" did not somehow imply that discovery into such claims was off limits when plaintiffs were bringing fraud and fraudulent concealment claims about what allegedly transpired in the underlying asbestos cases.

*Finally*, plaintiffs seek refuge in the Third Circuit's rhetorical question: "What could be more important to a claim that talc caused asbestos disease than proof that the talc contained asbestos?" *Williams*, 765 F.3d at 322 (cited in 5/12/17 Pls.' Ltr. (ECF No. 308) 5; 3/1/17 Pls.' Ltr. (ECF No. 249) 2). Relying on this passage, plaintiffs argue that they have already proven materiality by mere allegation and that no discovery on that element of the fraudulent concealment tort is necessary. 5/12/17 Pls.' Ltr. (ECF No. 308) 5 ("In other words, the issue [of materiality] in the context of this case is self-evident. Plaintiffs do not have to show any more than that they had asserted an asbestos injury claim against Engelhard/BASF to satisfy the 'evidence was material to the litigation' element."); *id.* (claiming that whether there was asbestos in Emtal talc is "*per se* material").

These arguments are remarkable. The Third Circuit was not ruling on the scope of discovery but rather was determining whether plaintiffs adequately **pleaded** a cause of action for fraudulent concealment in the context of a motion to dismiss. That determination required the



Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 12

court to "accept as true" plaintiffs' allegations regarding their exposures to Emtal talc and their development of asbestos-related disease. *Williams*, 765 F.3d at 311. Although the Third Circuit concluded that plaintiffs had *alleged* materiality, the opinion did not conclude—and could not have concluded, given the procedural posture—that plaintiffs had *proven* materiality. Indeed, the Third Circuit explicitly stated that "discovery may exonerate [defendants] and, in any event, [they] will have the opportunity to contest the truth of those allegations in a later stage of the lawsuit." *Id.* at 324. This passage—the Third Circuit's only substantive comment on discovery following remand—makes clear what is self-evident: that plaintiffs' allegations with respect to materiality and all other elements of their claims are mere allegations that must be tested through discovery. They do not provide a basis for instructing witnesses not to answer questions at depositions.[5]

## II.   PLAINTIFFS' COUNSEL FAILED TO DISCHARGE THEIR OBLIGATIONS TO COLLECT AND PRODUCE DOCUMENTS FROM THE NAMED PLAINTIFFS.

The depositions of Ms. Holley and Ms. Wengerd made clear that plaintiffs' counsel never asked their clients for documents relating to this case or notified them of their duties to preserve those documents for discovery. Ms. Holley's testimony was consistent and unequivocal on this score:

> Q. Have your attorneys ever asked you for notes relating in any way to this case?

---

[5] Although they primarily contend that the Third Circuit opinion forecloses discovery into the plaintiffs' decedents underlying cases, plaintiffs at one point claim this is true under New Jersey law as well, citing *Rosenblit v. Zimmerman*, 166 N.J. 391 (2001), and providing the following parenthetical after the case cite: "whether patient had valid malpractice claim held irrelevant to question whether defendant doctor was nonetheless liable for spoliation of evidence." 5/30/17 Pls.' Ltr. 2. That is not a quote from *Rosenblit*; rather it is plaintiffs' asserted description of what the case said. Tellingly, plaintiffs provide no pincite or quote for this supposed holding, which was (unsurprisingly) not a holding of the case. In *Rosenblit*, a patient sued a doctor for medical malpractice, and in discovery the doctor produced altered medical records. 166 N.J. at 397. This wrongdoing was uncovered before trial and the original medical records were turned over. *Id.* The New Jersey Supreme Court held that the tort of fraudulent concealment could not be maintained in this circumstance because "the evidence the spoliator sought to hide or destroy has come to light in time for the underlying litigation." *Id.* at 408. The New Jersey Supreme Court thus did not hold that discovery into the underlying case was irrelevant; to the contrary, it used what had occurred in the underlying case as the basis for explaining why plaintiff had no fraudulent concealment claim at all. Moreover, in discussing the fraudulent concealment tort more generally, the New Jersey Supreme Court could not have been clearer that when there is alleged concealment in a past case, "*the fundamentals of the underlying litigation will also require exposition*." *Id.* (emphasis added).



Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 13

> A. No, they have not.
>
> [. . .]
>
> Q. And at this first meeting, did Mr. Placitella in words or in substance, or any of his colleagues, tell you to make sure you maintained all of your documents relating to the underlying Bevan cases against Emtal?
>
> A. No, I was not specifically told that.
>
> Q. Were you ever told that?
>
> A. Not specifically, no.
>
> [. . .]
>
> Q. And in order to find out whether the notes are extensive or not and whether they have actual facts that might be relevant to the case, we wouldn't know actually until an attorney reviewed them, correct?
>
> A. Correct.
>
> Q. And Mr. Placitella and Mr. Coren haven't asked to review them, correct?
>
> A. No.  No.

Ex. A (4/5/17 Holley Dep. 32:1-19, 64:11-18, 69:12-24).  The next day, BASF attempted to ask Ms. Wengerd the same questions but plaintiffs' counsel blocked them.  *See* Ex. B (4/6/17 Wengerd Dep. 22:16 - 22:37) ("Q. Have you provided the documents that you keep at home related to your mother's affairs to your attorneys in this case?  MR. COREN:  Privilege.  Move on.  Objection."); *id.* at 23:13-25 ("Q.  Have any of the documents kept in the file you have at home been produced to BASF in this case?  MR. COREN:  Objection.  Privilege.  Move on."); *id.* at 19:20 - 20:4 ("Q. Do you still have all the letters?  MR. COREN:  Don't answer.  A.  On advice of counsel, I'm not answering."); *id.* at 41:24 - 43:13 ("Q.  So you provided -- did you provide the whole file related to your mother's affairs to the Cohen Placitella firm?  MR. COREN:  Objection.  Same instruction. A.  That is under attorney-client privilege, and I'm choosing not to answer.").

In their opposition, plaintiffs essentially concede that they did not collect documents from the named plaintiffs themselves.  *See* 5/30/17 Pls.' Ltr. 4 (claiming that "Plaintiffs' counsel have collected each class representative Plaintiffs' decedent's asbestos claims file *from their asbestos attorneys* for review and production") (emphasis added); *id.* (admitted they "[s]tart[ed] with

RM | ROBINSON
MILLER LLC

Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 14

production of non-privileged portions in the *attorney's claims files*") (emphasis added).  Indeed, it appears that BASF's questioning of Ms. Holley on the issue of her documents is what finally prompted plaintiffs' counsel to determine what documents she possessed.

That is not acceptable conduct.  It is remarkable that this case had been pending for approximately six years and that plaintiffs' counsel—who was at the same time making strident allegations of spoliation against BASF—failed to even inquire as to the documents their own clients possessed.  Indeed, plaintiffs' counsel has levied serious allegations about what allegedly transpired in the underlying asbestos cases, and it is now apparent that those allegations were made without plaintiffs' counsel so much as reviewing the files that the named plaintiffs maintained.  Nor can plaintiffs get away with claiming that the named plaintiffs "do not have very many responsive documents to produce." *Id.* at 4.  It is unclear how plaintiffs' counsel can say this when it is unknown what work, if any, they have done to gather documents from the named plaintiffs.  The suggestion that the plaintiffs' documents are "largely duplicative" of the files held by the decedents' asbestos injury counsel, *id.*, itself confirms that the plaintiffs in fact possess unique documents that have yet to be produced.

Finally, Plaintiffs' opposition makes numerous statements that raise even more questions.  For example, plaintiffs claim that Ms. Holley merely "forgot about specific instructions" by her attorneys to preserve documents relevant to this case, *id.*, but they provide no support for that assertion, which contradicts Ms. Holley's sworn testimony.  *See* Ex. A (4/5/17 Holley Dep. 64:11-18).  Plaintiffs also claim that "[f]ollowing her deposition Ms. Holley checked and determined that despite her earlier belief to the contrary, there were not any documents [in her sister's home] related to her mother's terminated case." 5/30/17 Pls.' Ltr. 4 n.3.  It is unclear how this search was done and it appears it was done by Ms. Holley alone, without the assistance of counsel.  It is equally unclear whether documents once existed in her sister's home, but no longer exist (this is the same home where plaintiff Holley's decedent used to live).  These questions will need to be asked of Ms. Holley once her deposition is reopened following the complete production of documents from her files.  And it underscores the prejudice to BASF of plaintiffs' counsel preventing BASF from asking Ms. Wengerd about her collection and preservation of documents.

## CONCLUSION

For the foregoing reasons and those set forth in BASF's opening letter-brief, BASF respectfully requests that the Court: (i) reopen the deposition of Ms. Wengerd, and overrule the improper objections raised by plaintiffs' counsel in her deposition; (ii) sanction plaintiffs and award BASF its costs and attorney's fees for this filing and BASF's attendance at the first deposition of Ms. Wengerd, which plaintiffs' counsel improperly obstructed through repeated improper instructions not to answer; and (iii) compel plaintiffs' counsel to collect, review, and either produce or log all relevant documents in the named plaintiffs' possession, custody, or control.



Hon. Joseph A. Dickson, U.S.M.J.
June 5, 2017
Page 15

Date:   June 5, 2017

Eugene F. Assaf, P.C.
Michael F. Williams
Daniel A. Bress
Peter A. Farrell
**KIRKLAND & ELLIS LLP**
655 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

Respectfully submitted,

s/ Justin T. Quinn
Justin T. Quinn
**ROBINSON MILLER LLC**
One Newark Center
19th Floor
Newark, NJ 07102
Phone: (973) 690-5400
Facsimile: (973) 466-2761

*Counsel for Defendant BASF Catalysts LLC*