1                      UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY
2

3  _____
   KIMBERLEE WILLIAMS,              :
   individually, as personal       :    Civil Action No.
4  representative of the Estate     :    2:11-cv-01754-JLL-JAD
   of Charles L. Williams,          :
5  deceased on behalf of said       :
   estate, and as representative :
6  of others similarly situated, :
   et al.,                          :
7                                   :
                Plaintiffs,         :
8                                   :    Newark, New Jersey
      vs.                           :    Wednesday, June 7, 2017
9                                   :    3:32 p.m.
   BASF CATALYSTS LLC, et al.,      :
10                                  :
                Defendants.         :
   _____
11
                   TRANSCRIPT OF STATUS CONFERENCE
12            BEFORE THE HONORABLE JOSEPH A. DICKSON
                  UNITED STATES MAGISTRATE JUDGE
13

14 APPEARANCES:

15 For the Plaintiffs:          Cohen, Placitella & Roth, P.C.
                                By:  CHRISTOPHER M. PLACITELLA, ESQ.
16                              127 Maple Avenue
                                Red Bank, NJ  08801
17
                                Cohen, Placitella & Roth, P.C.
18                              By:  MICHAEL COREN, ESQ.
                                Two Commerce Square
19                              2001 Market Street, Suite 2900
                                Philadelphia, PA  19103
20

21

22 Transcription Company:       KLJ Transcription Service, LLC
                                P.O. Box 8627
23                              Saddle Brook, NJ  07663
                                (201)703-1670 - Fax (201)703-5623
24
   Proceedings recorded by electronic sound recording, transcript
25 produced by transcription service.

```
 1   APPEARANCES (Cont.):

 2   For Defendant
     BASF Catalysts, LLC:           Robinson Miller, LLC
 3                                   By:  JUSTIN T. QUINN, ESQ.
                                     One Newark Center, 19th Floor
 4                                   Newark, NJ  07102

 5                                   Kirkland & Ellis, LLP
                                     By:  EUGENE F. ASSAF, ESQ.
 6                                        DANIEL AARON BRESS, ESQ.
                                          PETER A. FARRELL, ESQ.
 7                                        ELIZABETH DALMUT, ESQ.
                                     655 15th Street, N.W.
 8                                   Washington, D.C.  20005

 9   For Defendant Cahill,
     Gordon & Reindel:              Connell Foley, LLP
10                                   By:  ROBERT F. RYAN, ESQ.
                                     85 Livingston Avenue
11                                   Roseland, NJ  07068

12                                   Williams & Connolly, LLP
                                     By:  JON K. VILLA, ESQ.
13                                        DAVID S. BLATT, ESQ.
                                     725 Twelfth Street, N.W.
14                                   Washington, D.C.  20005

15   For Defendant
     Arthur A. Dornbusch, II:       Marino, Tortorella & Boyle, P.C.
16                                   By:  KEVIN H. MARINO, ESQ.
                                          JOHN A. BOYLE, ESQ.
17                                   437 Southern Boulevard
                                     Chatham, NJ  07928
18
     For Defendant
19   Thomas D. Halket:              Herold Law, P.A.
                                     By:  ERIC TUNIS, ESQ.
20                                   25 Independence Boulevard
                                     Warren, NJ 07059
21

22   For Subpoenaed Non-Party
     Rothenberg Law Firm, LLP:      Stief, Gross & Sagoskin, P.C.
23                                   By:  ROBERT D. SOKOLOVE, ESQ.
                                     2080 Cabot Blvd West, Suite 201
24                                   Langhorne, PA  19047

25
```

```
 1    APPEARANCES (Cont.):

 2    For Third-Party Witness
      Johnson & Johnson:          McCarter & English, LLP
 3                                By:  DAVID R. KOTT, ESQ.
                                  Four Gateway Center
 4                                100 Mulberry Street
                                  Newark, NJ 07102
 5

 6    APPEARANCES (Telephonically):

 7    For the Plaintiffs:         Fox Rothschild, LLP
                                  By:  JEFFREY M. POLLOCK, ESQ.
 8                                997 Lenox Drive, Building 3
                                  Princeton Pike Corporate Center
 9                                Lawrenceville NJ 08648-2311

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                 I N D E X

2

3    RE APPOINTMENT OF SPECIAL MASTER:                        PAGE

4    Colloquy. . . . . . . . . . . . . . . . . . . . . . .    7

5

6    RE CLASS CERTIFICATION MOTION:                           PAGE

7    Argument by Mr. Assaf.. . . . . . . . . . . . . . 11, 19

8    Argument by Mr. Pollock.. . . . . . . . . . . . . . . 14

9    Argument by Mr. Placitella. . . . . . . . . . . . . . 15

10   Colloquy re Letter Briefing.. . . . . . . . . . . . . 19

11   Argument by Mr. Assaf.. . . . . . . . . . . . 20, 23, 26

12   Argument by Mr. Placitella. . . . . . . . . . . . 21, 25

13   Argument by Mr. Pollock.. . . . . . . . . . . . . . . 24

14   Argument by Mr. Marino. . . . . . . . . . . . . . . . 28

15   Colloquy. . . . . . . . . . . . . . . . . . . . . . . 30

16   Argument by Mr. Sokolove. . . . . . . . . . . . . . . 31

17   Colloquy re Presence of The Press.. . . . . . . . . . 34

18

19

20

21

22

23

24

25

1              (Conference commenced at 3:32 p.m.)

2              THE CLERK:  Judge, we're on the record.

3              THE COURT:  Do we have somebody on the phone?

4              THE CLERK:  Yes.

5              THE COURT:  Who is that?  Mr. -- who is on the phone?

6     It's one of you guys.

7              MR. PLACITELLA:  Mr. Pollock.

8              MR. COREN:  Jeff Pollock.

9              THE COURT:  Mr. Pollock?  Okay.  Hello?

10             MR. POLLOCK:  Good afternoon, Your Honor.  Jeff

11    Pollock.  How are you?

12             THE COURT:  I'm good.  How are you?

13             All right.  This is the matter of Williams versus

14    BASF Catalysts, LLC, et al., Docket Number 11-1754.

15             May I have appearances, please?

16             MR. PLACITELLA:  Good morning, Your Honor.  Or good

17    afternoon.  Chris Placitella on behalf of the plaintiffs.

18             THE COURT:  Good afternoon.

19             MR. COREN:  Good afternoon, Your Honor.  Mike Coren

20    for plaintiffs.

21             THE COURT:  Good afternoon.

22             MR. SOKOLOVE:  Rob Sokolove for Allen Rothenberg Law

23    Firm.

24             THE COURT:  Okay.  Good afternoon.

25             MR. ASSAF:  Gene Assaf for defendant BASF.

1          THE COURT:  You know what?  Let me just -- I'm sorry

2    for interrupting you, Mr. Assaf, but just so the record is

3    clear, and Mr. Pollock is joining us by telephone; correct,

4    Mr. Pollock?

5          MR. POLLOCK:  Yes, Your Honor.  Thank you.

6          THE COURT:  All right.  Thank you.

7          MR. FARRELL:  Good afternoon, Your Honor.  Peter

8    Farrell for BASF.

9          THE COURT:  Okay.

10         MR. BRESS:  Good afternoon.  Daniel Bress for BASF.

11         MR. QUINN:  And good afternoon.  This is Justin Quinn,

12   also for BASF.

13         THE COURT:  Okay.

14         MR. VILLA:  Good afternoon, Your Honor.  Jon Villa

15   for the Cahill defendants.

16         THE COURT:  Okay.

17         MR. MARINO:  Good afternoon, Your Honor.  Kevin Marino

18   for defendant Arthur Dornbusch.

19         MR. BOYLE:  Good afternoon, Your Honor.  John Boyle

20   for defendant Arthur Dornbusch.

21         THE COURT:  Okay.

22         MR. TUNIS:  Good afternoon, Your Honor.  Eric Tunis

23   for Thomas Halket.

24         THE COURT:  Good afternoon.

25         MR. BLATT:  Good afternoon, Your Honor.  David Blatt

1    for the Cahill defendants.

2              MR. RYAN:  Good afternoon, Judge.  Robert Ryan,

3    Connell Foley, Cahill defendants.

4              THE COURT:  Okay.  And nobody else wants to make an

5    appearance?  We've got other people in the courtroom.  I take

6    it that --

7              MS. DALMUT:  Elizabeth Dalmut for BASF.

8              THE COURT:  Okay.

9              MR. KOTT:  Good afternoon, Your Honor.  I am David

10   Kott, K-O-T-T, McCarter and English, for the third-party

11   witness Johnson & Johnson.

12             THE COURT:  Okay.  Anybody else?

13             All right.  We are here today for a status conference

14   called by the Court.  And if you're prescient and/or

15   observant, you may have noticed that Judge Brown has walked

16   into the courtroom.  Judge Linares has determined that this

17   case calls for a special master and he's made a determination

18   to appoint Judge Garrett Brown as the special master in this

19   case, so that's what I want to talk to you about today.  And I

20   had an order prepared and signed by Judge Linares, which we're

21   going to distribute.

22             I am looking -- before I -- here.  This my copy.  I

23   knew I had a copy.

24             I haven't put it on the docket yet, because there are

25   two quick issues that I wanted to discuss.

1           (Discussion with clerk, off the record.)

2           THE COURT:  Rule 53, Federal Rule of Civil Procedure

3   53, which allows for the appointment of masters in cases, at

4   subsection (b), requires the Court to consider any objections.

5   So, I have no idea whether anyone here today or anyone on the

6   phone will have an objection and, at the risk of pressing the

7   issue, does anyone either have an objection or does anyone

8   want to reserve the right after their review of the order to

9   pose an objection?

10          MR. PLACITELLA:  I would just reserve the right just

11  to review the order.

12          THE COURT:  Okay.

13          MR. ASSAF:  No objection, Your Honor.

14          THE COURT:  Okay.  So, Mr. Placitella, it's well

15  within your right to do that.  What -- so then, what I'd like

16  to do is ask you -- because if you look at the last page, I've

17  left some blank spaces.  Is five days a sufficient amount of

18  time?

19          MR. PLACITELLA:  Absolutely.

20          THE COURT:  So, can I say June 13th?

21          MR. PLACITELLA:  Yes.  Of course.

22          THE COURT:  If Mr. Placitella makes an objection or

23  if anyone else makes an objection, then there's -- I want --

24  we want to have any responses filed -- June 13th is a Tuesday.

25  Can we have responses filed by Friday, the 16th?

1        MR. ASSAF:  Yes, Your Honor.

2        THE COURT:  Now, Judge Brown is here and he's willing

3   to start work right now.  So I want to make a suggestion and

4   then I'll hear from everybody on this, including Judge Brown.

5        He cannot really start work until the -- it's actually

6   approved by JAMS; correct?

7        JUDGE BROWN:  Well, no.  The point is, I am not going

8   to start work until I actually have the retainer that JAMS

9   receives, which (indiscernible) split it up (indiscernible) et

10  cetera.  I can preliminary talk at least (indiscernible)

11  subject to, you know, no objection and subject to a retainer

12  having been paid, et cetera, et cetera.  Let's figure out how

13  we're going to proceed (indiscernible).

14       THE COURT:  It's a matter of language.  I said start

15  working.  Judge Brown in a better way said he can start to

16  preliminarily have discussions.  I think that's a good idea.

17  And frankly, Mr. Placitella, maybe it will be helpful for you

18  making a decision whether or not you want to file an objection.

19       MR. PLACITELLA:  I have no problem with that, Your

20  Honor.

21       MR. RYAN:  Judge, Bob Ryan from Connell Foley.  Just

22  in the spirit of full disclosure, I believe I may be wrong

23  that Mr. Murphy once worked at Connell Foley, so I just wanted

24  everybody to be aware of that.

25       THE COURT:  Okay.

1          MR. MURPHY:  Yes, sir, and I --

2          THE COURT:  No, no.  I haven't identified Mr. Murphy.

3    Mr. Murphy is, I think, an employee or is consulting or

4    contracted with JAMS.  And he's an attorney who -- well, some

5    of us know.  He's been here in the courthouse before and I

6    think he actually clerked in this courthouse for a few years.

7    Or in another courthouse in this district.  But he works with

8    Judge Brown on cases like this and I think it would be

9    proposed that he work with Judge Brown.

10         So, having said that, that was -- that con -- that

11   potential conflict was reviewed by Mr. Murphy and thank you

12   for pointing it out.

13         Anything else?  Are there any questions in general

14   before I actually -- or anything that we need to talk about?

15   Because, frankly, almost everything that we have been talking

16   about, I've got this list that was prepared by I think Mr.

17   Quinn of the pending motions and I didn't get anybody

18   objecting to that, yes, these are the actual motions.  And

19   this is coincident to our list of disputed matters and/or

20   motions.

21         So, I thought -- it says these will be handed over to

22   Judge Brown, assuming that the order is not vacated by Judge

23   Linares.  I didn't want to have to waste anybody's time

24   telling you what I think about where this is going to go.

25   Okay?

1          So, but the time could be better spent having those

2    preliminary discussions with Judge Brown and I think my jury

3    room -- my conference room may be more comfortable than the

4    jury room, actually.

5          JUDGE BROWN:  Do we have space for everybody in the

6    conference room?  (Indiscernible)

7          THE COURT:  Well, you -- you know what?  You can stay

8    right here.  I mean, you can stay here.

9          Now, here's the thing.  There are people here, I

10   noticed, in the gallery.  Is it -- are they all clients and/or

11   connected with this case?

12         UNIDENTIFIED MALE:  I'm not.  I'm a reporter.

13         THE COURT:  Okay.  Well, then I'll leave it to the

14   parties as to whether they want you to sit in on a private

15   conversation.  Right now, we're on the record.

16         Yes, Mr. Assaf?

17         MR. ASSAF:  For the record, Gene Assaf on behalf of

18   BASF.

19         Yes, Your Honor, I understand that there is a chart

20   of the various discovery motions and, upon my quick review of

21   Judge Linares's order, I see that they will be referred now to

22   Judge Brown.  I think the -- including the sanctions motion,

23   which I also see noted at the end that he has the authority

24   over the proposed sanctions motion.

25         In terms of outstanding issues though, Your Honor, I

1   do think there's a non-discovery issue that's still

2   theoretically in front of you that you said was not ripe yet,

3   but you wanted to hear again.  We raised it in October.  The

4   issue of early class motion.  We raised it again in January of

5   2017 and last week Mr. Placitella now filed a piece in which

6   he shifts again, in terms of his class theory.  Now he says it

7   is -- his words, not mine -- present intention to file a class

8   motion that is an issues-based class under Rule 23(c)(4).

9        Which, Your Honor, if that's going to happen, again,

10  I think it then makes your inclination to have an early class

11  motion all the more important, and now that we're having

12  discovery issues with Judge Brown, because 23(c)(4) cannot be

13  used to circumvent (b)(3) and, in particular, predominance.

14  And, Your Honor, the Gates versus Rohm and Haas case from the

15  Third Circuit, 655 F.3d 255, makes it very clear.

16       So, if there is going to be -- we felt as though the

17  class cert issue has moved along.  You'll remember the very

18  first hearing, Your Honor.  You asked Mr. Placitella:  Are

19  people who never filed cases in your class?  He said:  I don't

20  know I have to think about that.  And we're now years into

21  discovery and we still don't have pen to paper on that issue.

22       We have a putative class of people from Mississippi,

23  thousands of putative cases, there's no class rep from

24  Mississippi.  There are no lawyers from Mississippi regarding

25  the alleged representations.  There are thousands of people in

1    his putative class, I think, who have asbestosis.  There is no

2    class rep with asbestosis.

3           So, if he's going to have a class, again, Your Honor,

4    I think now, compared to October of 2016, is the time for him

5    to start putting pen to paper as to who is in the class and

6    what's the basis of his class, because, if it is a (c)(4)

7    class, then we're going to be back here in very short order

8    and we will show to you conclusively that that's not a basis

9    for class certification, which will obviously impact the

10   discovery issues in this case.

11          So, I would renew our request, Your Honor, that you

12   ask Mr. Placitella to file a class cert motion identifying his

13   basis for class cert and the people who are purportedly in

14   that class, whether they're from Mississippi, when they were

15   injured, how they were injured, what their injuries are.  So,

16   I would raise that issue.  I think that's probably outside

17   Judge Brown's order, but I would raise with you, since we're

18   here.

19          THE COURT:  Okay.

20          MR. POLLOCK:  And, Judge, this is Jeff Pollock.  Can

21   I jump in for a second?

22          THE COURT:  Mr. Placitella just got up.  Mr.

23   Placitella, can Mr. Pollock --

24          MR. POLLOCK:  Go ahead, Chris.

25          MR. PLACITELLA:  I will defer to Mr. Pollock, since

Pollock - Argument                    14

1    he is closer to you.

2              MR. POLLOCK:  Chris, go ahead.

3              THE COURT:  No, he wants you to go first, because

4    you're closer to me.

5              MR. POLLOCK:  Okay.  I just have two questions,

6    procedurally.  And obviously, you know, Garrett -- Judge Brown,

7    being the former chief judge, obviously has the skills and

8    ability to do exactly what you want him to do.

9              Procedurally, with the -- since we have one core

10   question up front, as I see it, which is what is and is not

11   discoverable.  Obviously, Gene Assaf and company on one side

12   and Chris and I on the other, disagree on that fundamental

13   issue, what is and is not discoverable and I think that arises

14   out of what is and is not at issue.  As I see it, and you may

15   disagree with me, that's really a call that has to be made I

16   think by the Court and then, at that point, Judge Brown can

17   direct us and make sure we all behave.

18             So, I'm just wondering how the -- how do you see this

19   working, procedurally?  Because the first -- I think the first

20   issue is:  are -- is BASF entitled to discovery of the

21   underlying cases?  Obviously, BASF believes strongly they are,

22   we believe strongly they are not.  So, I am just trying to get

23   a sense of how you see this working out procedurally.

24             THE COURT:  Procedurally -- and I think the order

25   implements this -- Judge Linares and I still -- and I talked

1   about this to Judge Linares and I both anticipated that Judge

2   Brown would address that issue.  I think Judge Brown is

3   prepared to talk about which issues should be addressed first

4   and the order of those issues once we break here.

5        But to answer your question, that -- I am well aware

6   of that issue and procedurally and process wise, that was

7   going to part of Judge Brown's duties as the special master.

8        MR. POLLOCK:  Thank you, Your Honor.

9        MR. PLACITELLA:  Thank you, Your Honor.

10       As I said previously, class certification is

11  premature.  Not a single deposition of any defendant has been

12  taken.  There is outstanding discovery related to Johnson &

13  Johnson that would bear upon that.  We believe that there are

14  documents being wrongfully withheld under claim of privilege

15  that would directly bear on the issue of class certification.

16  We have no problem, once we get through some of that,

17  addressing the issue.

18       I know Mr. Assaf wants to teach me how to practice

19  law in whatever order he thinks I should do things.  But,

20  respectfully, we are the -- it's our case and we have a right

21  to get the discovery, and that's why Judge Linares and Your

22  Honor have asked Judge Brown to step in, and I think at some

23  point a few months down the road, Judge Brown can give you

24  advice and Judge Linares advice and counsel as to whether he

25  thinks, based on what he knows, that -- you know, whether it's

Placitella - Argument                          16

1    ripe at that point at time.

2          I would raise the following:  To the extent that

3    Judge Brown would be involved in this case -- I've raise this

4    before and I'll raise it again -- because the issues so

5    overlap with discovery going on in the state court, that there

6    will be coordination between whatever Judge Brown does and

7    whatever is going on in the state court.  There are identical

8    issues, identical depositions noticed, identical requests for

9    admissions.

10         At the very least, I believe that Judge Brown should

11   have a conversation with the Superior Court Middlesex County.

12   There is a long history here in the state of New Jersey of the

13   Middlesex County Superior Court that handles asbestos cases

14   having coordinated proceedings and conversations with the

15   Court here in this very courthouse, going all the way back to

16   Judge Ackerman and then Judge Cowen when Judge Keefe was

17   involved and then Judge Hamlin and it's worked very well

18   before and, frankly, I think it will save everybody a lot of

19   time and a lot of money.

20         Thank you.

21         THE COURT:  All right.  So, there are two issues you

22   raised.  One is the response to the timing of the class

23   certification motion.

24         MR. PLACITELLA:  Correct.

25         THE COURT:  And essentially your position is it's not

1   time, because discovery has not given you enough.

2          MR. PLACITELLA:  Correct.  It's not ripe.

3          THE COURT:  It's not ripe.  Okay.  And the second

4   issue is the coordination issue with the state court with the

5   parallel issues.

6          MR. PLACITELLA:  Well, the state court in the <u>Sampson</u>

7   case and other -- and -- and the <u>Ross</u> case, for example, the

8   allegations are very similar.  Fraudulent concealment,

9   spoliation.  There has been -- it's no secret there has been

10  an opinion issued by Justice Stein that's being considered by

11  the superior court.  That took --

12         THE COURT:  That's still under consideration?

13         MR. PLACITELLA:  It's under consideration.  We are

14  hopeful we will get some determination soon, because the

15  superior court has added a second asbestos judge, which has

16  allowed Judge Viscomi to get rid of some of the backlog she

17  had on motions, because of just the crushing burden of pending

18  motions.  But over the last number of weeks, you know, dozens

19  and dozens of backlogged motions have been handled, because

20  there is now more judicial resources.  So, we're hopeful we're

21  going to get a decision one way or the other.  That will

22  impact, obviously, I think, on what is happening here and I

23  think Judge Brown should know.

24         I will repeat that Judge Viscomi has said that

25  Justice Stein's opinion could be shared with this Court.  This

1   Court has taken a position, understandably, that you weren't

2   ready to look at that at this time, because that opinion,

3   although addressed, had been in possession of Cahill and BASF,

4   has not been shared with the counsel for Arthur Dornbusch or

5   Mr. Halket, and it was your position -- and I understand it

6   and I'm not rearguing it -- that until such time as that

7   opinion would be available to Mr. Marino, it would -- it

8   should not be viewed here.

9        But we can't do this in a vacuum.  Years have been

10  spent on the very issues that are going to be confronted here

11  and it, to me, makes all the sense in the world, at a minimum,

12  for Judge Brown and/or yourself to have a conversation with

13  the superior court and find out where things stand and how and

14  if those efforts can be coordinated so as not to, you know,

15  expend judicial resources unnecessary -- unnecessarily.

16       THE COURT:  You know, I think it would be -- and I

17  will hear from you in a minute, Mr. Assaf.  But I think it

18  would be helpful if you could more finely tune that in a

19  letter to the Court as to what issues should we discuss.  I

20  mean, there are -- you know, --

21       MR. PLACITELLA:  I'll be happy to do that.

22       THE COURT:  And then -- and Mr. Assaf could, of

23  course, respond.  Unless you think we should discuss this case

24  with  the superior court, as well.

25       Mr. Assaf, do you agree or do you --

1          MR. ASSAF:  Your Honor, I think there -- for example,

2     if there is going to be a deposition on what I had proposed

3     before on where the documents have been found, I think that's

4     worth a discussion with Judge Brown in terms of saying, okay,

5     is there a duplication of effort here and can we get some

6     efficiencies out of it?

7          But what I don't think should happen is what's

8     happening now, was when we were here last time, Mr. Placitella

9     had discovery come to a screeching halt and the very next day

10    initiated waves of discovery in the state court.  And so I

11    don't think it should be used tactically and I think we should

12    have a discussion with Judge Brown about how we should get

13    some efficiency out of the process.  And especially on this

14    document issue.

15         THE COURT:  Well, but I want to stick with one thing.

16         MR. ASSAF:  Sure.

17         THE COURT:  I think Mr. Placitella -- and I'm not

18    going to speak for you, Mr. Placitella.  Correct me if I am

19    not getting what you are talking about.  But there are a lot

20    of things going on in the state court.

21         MR. PLACITELLA:  Correct.

22         THE COURT:  And there are a lot of things going on

23    here or about to go on here, --

24         MR. PLACITELLA:  Correct.

25         THE COURT:  -- depending on how you look at it.

 1          MR. PLACITELLA:  Correct.

 2          THE COURT:  You are talking about the federal court

 3   and Judge Brown, assuming he's appointed -- excuse me --

 4   coordinating with the state court judges to make sure that we

 5   don't render inconsistent rulings or make duplicate work.  I

 6   mean, it's --

 7          MR. PLACITELLA:  Correct.

 8          THE COURT:  I'd like for you to fine tune that in a

 9   letter.

10          MR. PLACITELLA:  Your Honor, I'm happy to flesh it

11    out in a letter, Your Honor.

12          THE COURT:  Okay.

13          MR. PLACITELLA:  It sounds like Mr. Assaf is not

14   totally --

15          THE COURT:  Well, that's why I'd like to get --

16          MR. PLACITELLA:  -- against what I am saying, so  --

17          THE COURT:  I'd like to -- so, it's always easier for

18   me to see it --

19          MR. PLACITELLA:  Okay.

20          THE COURT:  -- in writing, so it can be addressed.

21          MR. PLACITELLA:  I'm happy to do that.

22          THE COURT:  Okay.  And then Mr. Assaf you can -- you

23   can respond.

24          MR. ASSAF:  Yeah.  And to be clear, Your Honor, what

25   -- yes.  I'd like to see it in writing, but let's talk about

1    something that's I think pretty easy.  If there is going to be

2    a witness deposed, whether they should be cross-noticed in the

3    cases, so they don't have to sit for depositions seriatim, --

4              THE COURT:  Right.

5              MR. ASSAF:  -- that's something we should discuss and

6    I would hope we, if we aren't able to agree on it, that Judge

7    Brown would make us see the good sense in doing that.

8              THE COURT:  Well, I think -- I am going to guess Mr.

9    Placitella would agree that we take one dep --

10             MR. PLACITELLA:  We're on the same page.

11             THE COURT:  -- one deposition.

12             MR. PLACITELLA:  We're on the same page.  So, what

13   happened is --

14             THE COURT:  It may be a 40-day deposition, but it

15   will be one deposition.

16             MR. PLACITELLA:  Right.  So, for example -- for

17   example, just to give -- to put some meat on those bones, we

18   asked for -- they said -- they walked in here and said we

19   didn't destroy any documents, we want to bring a motion to

20   prove it.  We said, okay, Judge, we would like a deposition on

21   that issue.  And because when we took the deposition in the

22   state court, their corporate representative admitted that

23   documents were missing.

24             Mr. Assaf stood up before Your Honor and said, well,

25   Judge, that was an old deposition that really -- you know,

1   it's stale.  So, I went back to the state court and issued the

2   same notice and said, well, they told Judge Dickson it was

3   stale, so now I need to go back and find out on the record

4   exactly what they say they found since I took the deposition.

5          They then objected to that happening in the state

6   court.  The special master in the state court, whom I am

7   hoping Judge Brown will get to know, recommended that he

8   deposition go forward.  That was then appealed by BASF.  BASF

9   -- and then the preliminary decision from Judge Viscomi was,

10  no, the deposition should go forward.  BASF asked for oral

11  argument.  They came into court and they said, well, maybe we

12  will put up somebody for a deposition, but we have the meet

13  and confer on the scope of that deposition, which meet and

14  confer is scheduled for tomorrow.

15         That issue is a complete overlap and there may be

16  issues, frankly, that we would put before Judge Brown,

17  assuming the order is permissible, on privileged documents

18  that may bear on some of these issues, but we don't have to go

19  over that now.  I am just saying that we're at a point where

20  there is a lot of work to do, but there is no reason to redo

21  two years of work done by Justice Stein.

22         THE COURT:  Okay.  I understand.

23         All right.  So, I'm going to get a letter and, Mr.

24  Assaf, you'll respond.

25         MR. ASSAF:  Correct, Your Honor.

1          And I want to come back in terms of we will do a

2  letter, we'll respond.  I am sure the individual defendants

3  will have some process issues, since they weren't part of the

4  process and aren't part of the cases, and they could weigh in

5  on that.

6          But I would like to come back to this class cert

7  motion, which, again, I --

8          THE COURT:  How are we going to get there, Mr. Assaf?

9          MR. ASSAF:  I'll tell you how, Your Honor.  I think,

10  we -- all I want is a motion -- which can be amended, okay?

11  For good cause, if he finds other discoverable issues.  But

12  I'd like to know what I'm shooting at to begin with.  Okay?

13  What is the class?  Who is in the class?  Are they Ohio

14  people?  Are they Mississippi people?  Are they asbestosis

15  victims?  What does it look like today, based on what he

16  knows?

17          On April 4, 2015, Mr. Placitella stood up in front of

18  Your Honor and said I would like a trial date in three days,

19  I've been living this case, I know this case.  And now he's

20  telling you today he really doesn't understand what his class

21  even looks like yet.  I don't think that's the case and that's

22  why he keeps shifting in terms -- all I want him to do is put

23  together an eight to ten piece -- page what rule he's going to

24  move under, how he thinks it's going to look, and if he finds

25  facts later on that changes his mind, then he comes in and

1    says, Your Honor, I didn't know these facts at the time.

2         But at least let me know whether people from

3    Mississippi are in it.  And I'll tell you why it matters.  So,

4    if people from Mississippi are in this case, I want to issue

5    subpoenas to the companies that settled with the Mississippi

6    plaintiffs and see what the Mississippi plaintiffs said.  Or

7    subpoena the law firms.  Or at least find out what their

8    injuries were.  If they are not in the case, it changes the

9    case dramatically.

10        So, that's why I'm saying, Your Honor, he reserves

11   all of his rights to amend it, but let him tell us what rules

12   he's going to move under and what the basis of the rules are.

13        MR. POLLOCK:  Your Honor, may I respond briefly to

14   that?

15        THE COURT:  Sure.

16        MR. POLLOCK:  What Mr. Assaf just said is precisely

17   the problem I identified four minutes ago.  His core premise

18   is the underlying cases are directly relevant to the cause of

19   action here.  Our core position is the Third Circuit said

20   we're not retrying those cases.  So, what he is trying to do,

21   as he just said 30 seconds ago, is to reopen -- he wants to

22   subpoena those companies, those plaintiffs, those people.

23        The question as we perceive it -- and, obviously,

24   Judge Brown will be the one who will be the arbiter of this

25   initially and then it may go on to others -- is the question

1   of whether it is BASF's actions.  Did they lie steal, cheat,

2   hide information?  The underlying plaintiffs' cases, as the

3   second-to-the-last paragraph of the Third Circuit's decision

4   clearly articulates, and we all read the language, said that's

5   not relevant, but that's exactly what he's trying to make

6   relevant.

7            So, that's where I think we need -- that's why I was

8   -- I'm concerned about that starting point.  We don't

9   (indiscernible), we're not going to agree upon it today, but

10  we have to have an answer to that question, because that

11  dictates everything else.

12           THE COURT:  Okay.  I understand your point.

13           Mr. Placitella?

14           MR. POLLOCK:  Thank you, Judge.

15           MR. PLACITELLA:  Yes, Your Honor.

16           MR. POLLOCK:  Thank you.

17           THE COURT:  Mm-hmm.

18           MR. PLACITELLA:  The class is framed in the

19  complaint.  The Third Circuit said we can proceed.  We don't

20  have any discovery by way of depositions.  There are documents

21  that we believe go directly to the issue that are being

22  withheld.  It's premature.

23           I understand that Mr. Assaf would like to instruct me

24  about how to represent my clients, but with all due respect,

25  despite the lessons trying to be taught, we have a game plan

1    that we would like to execute.  Thank you.

2          THE COURT:  I don't view Mr. Assaf's arguments as

3    that, Mr. -- with all due respect, Mr. Placitella.  I view his

4    arguments as trying to understand really the breadth of what

5    this case is going to be all about.  But I also understand

6    what Mr. Pollock said and I understand what you're saying.

7          What I want to do is see where this shakes out with

8    Judge Brown.  He's going to have a discussion with all of you

9    in about two minutes.  And I'm going to see how that shakes

10   out and where that comes from.  Judge Brown will then talk to

11   me and/or Judge Linares and -- and because I'm trying to think

12   process on this.  I mean, you're essentially asking me to

13   order a date by which the class motion -- the class mot --

14   yeah, the motion for class certification has to be filed.

15         MR. ASSAF:  Slightly different, Your Honor.  I think

16   it would be the first --

17         THE COURT:  You'd take less than a motion?  You'd

18   take just a description?

19         MR. ASSAF:  Yeah, I'd take a description --

20         THE COURT:  So, you want me to order a date by which

21   they describe what the class is?

22         MR. ASSAF:  Correct, Your Honor.  And with good cause

23   they could amend or file a motion later on for that.  And as

24   you know, Your Honor, the trend in district courts is actually

25   for local rules requiring it within 30 days of filing the

1    complaint.  So, I don't think there's any prejudice here.  He

2    could tell us what he thinks.

3            And again, Your Honor, I urge you to look at the very

4    last brief Mr. Placitella filed on the sanctions issue where

5    he now says that the class --

6            THE COURT:  Which one would that be?  The very last?

7            MR. ASSAF:  It -- it's the class --

8            THE COURT:  I mean, it seems there's one every day.

9    The one that came today or the one that came yesterday?

10           MR. ASSAF:  I think it's the one that came -- it's

11   the one that came Monday.  But it's the classic -- it's where

12   he says I now am -- I'm now envisioning my present intention

13   is now to do a class-based issue.  Which means what he wants

14   to do is say I am just going to say misstatements, but not

15   reliance and not damages.  And that's not allowed under Third

16   Circuit precedent.  And so, if he wants to do that, we should

17   know sooner rather than later.

18           THE COURT:  Well, why don't -- maybe it will be

19   helpful not to keep piling on letters and letters, but maybe --

20   have you responded to that letter?

21           MR. ASSAF:  Yes.

22           THE COURT:  Okay.  Then I'll look at that letter and

23   your response.

24           MR. ASSAF:  Okay.

25           THE COURT:  Okay.

1              MR. ASSAF:  Great.

2              THE COURT:  Mr. Marino, did you have something?

3              MR. MARINO:  Just very briefly, Your Honor.  I think

4   the Court is aware we, on behalf of Mr. Dornbusch, had no

5   involvement in the state court actions.  So, it isn't just a

6   matter of seeing the opinion.  Obviously, this whole notion of

7   coordination is problematic.  I think what probably makes most

8   sense is, when Mr. Placitella files his papers and Mr. Assaf

9   is going to respond, we will respond as well and I assume that

10  Mr. Tunis, on behalf of Mr. Halket, will as well, if that's

11  all right with the Court.

12             THE COURT:  And maybe --

13             MR. TUNIS:  That's correct, Your Honor.

14             THE COURT:  I don't want to go too far out on a limb

15  here, but it seems to me that if there's going to be

16  coordination, there has to be coordination with all of the

17  parties.

18             MR. ASSAF:  Which is a --

19             MR. MARINO:  You would think, Your Honor, and --

20             MR. ASSAF:  Which is a -- which is a problem, Your

21  Honor.

22             THE COURT:  Well, it's a --

23             MR. MARINO:  It's a major -- it's a major problem for

24  us.

25             THE COURT:  It's a problem now, but maybe the problem

1    -- if -- if we -- if this Court decides that there should be

2    coordination, then the state court also has to decide there

3    should be coordination.

4              MR. MARINO:  Well, our concern, Your Honor, --

5              THE COURT:  Or there's no coordination.  And if the

6    state court decides that there's going to be coordination,

7    they have to understand that there are parties here that need

8    to be coordinated with.

9              MR. MARINO:  Well, you know what I envision, Your

10   Honor, is Mr. Placitella being unable to get certain discovery

11   in this Court, where we are all present, and then repairing to

12   the state court, where some of us are not present.

13             THE COURT:  Well, yeah, but he's the one who brings

14   up the coordination problem.  He -- so, I think he's trying to

15   solve that problem --

16             MR. MARINO:  No, I'm --

17             THE COURT:  -- before it becomes a problem.

18             MR. MARINO:  Oh, I -- well, --

19             THE COURT:  I understand the problem, too.

20             MR. MARINO:  -- to the extent it hasn't become a

21   problem already, but --

22             THE COURT:  I agree.

23             MR. MARINO:  -- but I would like the opportunity,

24   with the Court's permission --

25             THE COURT:  You -- well, absolutely.

```
                              Colloquy                        30
```

1              MR. MARINO:  -- to respond.

2              THE COURT:  The bottom line is, you wanted to respond

3    to it.  Absolutely.

4              MR. MARINO:  All right.  Thank you, sir.

5              THE COURT:  Of course.  All right?

6              MR. ASSAF:  I have one more non-discovery issue.

7              MR. PLACITELLA:  I thought you only had one.

8              THE COURT:  Yeah.  What, are you Columbo?  I'm sorry.

9    Go ahead, Mr. Assaf.  I apologize for --

10             MR. ASSAF:  That's okay.

11             THE COURT:  That was a tongue-in-cheek joke.

12             MR. ASSAF:  No, no, that's -- eh, medium --

13             THE COURT:  But I want the transcript to reflect --

14             MR. ASSAF:  It was a medium joke.

15             THE COURT:  -- that I was teasing.  Five years from

16   now, when this case is still going on and somebody says that I

17   said something nasty to you.

18             MR. ASSAF:  Maybe by that time we'll have a class

19   cert motion.

20             THE COURT:  Okay.

21             MR. ASSAF:  So -- and, Your Honor, on this issue I am

22   wondering if you and Mr. Placitella and I may have a sidebar,

23   because I want to know whether I should raise it here in open

24   court.  It's a sensitive issue and I just -- I would prefer to

25   raise it just with Your Honor and Mr. Placitella first and as

1 | opposed to raising it on the record, if that's okay with Mr.

2 | Placitella.

3 |         THE COURT:  Okay.

4 |         UNIDENTIFIED MALE:  Can we assume that doesn't --

5 |         MR. ASSAF:  Correct.

6 |         UNIDENTIFIED MALE:  -- have anything to do with --

7 |         MR. ASSAF:  Correct.

8 |         THE COURT:  Does anybody object to Mr. Assaf and Mr.

9 | Placitella having an off-the-record sidebar with me?

10 |         MR. SOKOLOVE:  It's kind of hard to know if you don't

11 | know what the subject matter is.

12 |         THE COURT:  Yes.  Mr. Assaf, that's --

13 |         MR. ASSAF:  It doesn't have anything to do with other

14 | counsel.  It only has to do with Mr. Placitella and BASF.

15 |         THE COURT:  Okay.  Let's go off the record.

16 |            (Off record from 4:05:57 to 4:06:02 p.m.)

17 |         THE COURT:  Hold on.

18 |         THE CLERK:  Just one second.

19 |         MR. SOKOLOVE:  I'd like to just -- I'm sorry.

20 |         THE CLERK:  Now we're on.

21 |         MR. SOKOLOVE:  While we're on the record, can I --

22 | can I just raise one issue?  Right?  I represent the kind of

23 | the 1,800-client elephant not in the room -- or may be in the

24 | room, I'm not sure.  We represent, you know, the Rothenberg

25 | files.

1          THE COURT:  Right.

2          MR. SOKOLOVE:  We're kind of -- we're in the cross --

3    you know, we're in the crossfire between all this.  We may be

4    in this case, we may not be.  Of course, we can't find our

5    files yet.  And I know Your Honor made a ruling that, frankly,

6    we were a little confused by.

7          I just want to kind of raise for the record that

8    right now it's the Rothenberg third-party kind of position

9    that we're okay to be doing nothing right now.  Because as

10   long as the underlying discovery dispute as to what is

11   discoverable at this point is still alive, we shouldn't have

12   to be going and trying to find the errors, probable errors, of

13   1,800 people who were middle-aged men 25 years ago and not try

14   to find their errors, to see if we can pull the files, to see

15   if we represent them.  And that's kind of the position we're

16   in right now.

17         So, I just want to make it clear that while this

18   discussion is taking place, there are these third-party --

19   perhaps parties -- involved in this that are sitting waiting

20   to determine what we should do.  And I just want that on the

21   record.  I -- I -- because we're kind of parties, but we're

22   not yet, but we can't proceed with the discovery as long as

23   these discovery disputes are taking place and I just want that

24   on the record and I -- you know, I want both judges to

25   understand we're kind of caught in that middle right now.

1              THE COURT:  Okay.

2              MR. SOKOLOVE:  Thank you, Your Honor.

3              THE COURT:  What -- I thought that what we were doing

4    is putting you on hold.

5              MR. PLACITELLA:  That was my understanding.

6              MR. SOKOLOVE:  Well, that -- that was the

7    understanding, although we did move to quash the subpoena and

8    it -- and --

9              THE COURT:  Did I deny it without prejudice or did I

10   terminate it?

11             MR. SOKOLOVE:  Well, you denied the motion without

12   prejudice.

13             THE COURT:  Without prejudice, because it was --

14   because I am trying to -- that was docket control.  I'm trying

15   to get it off the docket.  That was all.

16             MR. SOKOLOVE:  Okay.

17             THE COURT:  I --

18             MR. SOKOLOVE:  That's the way we read it and, quite

19   frankly, we assumed that since we didn't get a phone call the

20   very next day --

21             THE COURT:  I thought I made that clear.

22             MR. ASSAF:  I think you did, Your Honor.

23             MR. SOKOLOVE:  Okay.  Well, then --

24             THE COURT:  Okay.

25             MR. SOKOLOVE:  -- then we're all good for now.

Colloquy                                    34

1        THE COURT:  All right.

2        MR. SOKOLOVE:  For now.  Thank you, Your Honor.

3        THE COURT:  Okay.  Anything else?

4        All right.  We're going to break now and we'll have --

5    and I want everybody to sit down with Judge Brown.

6        With all due respect to the press, somebody should

7    decide whether or no they want the press in the room while

8    you're having an off-the-record conversation.  Okay?  I don't --

9        MR. ASSAF:  I think --

10       THE COURT:  I don't think I'm asked to take a position

11   on that.

12       MR. ASSAF:  Your Honor, my practice has been, as the

13   press, for example, this would be akin to Judge Brown

14   supervising a deposition and the press doesn't have normal

15   access to that.  And these are discovery issues, some of which

16   will be covered by protective orders already entered in the

17   case.  So, with all due respect, huge fan of the First

18   Amendment and I'm sure the reporter back there, but I don't

19   think it would be appropriate, in terms of full and frank

20   discussion of confidential information and discovery issues.

21       THE COURT:  Okay.  Let's go off the record.

22       (Off record from 4:09:18 to 4:09:18 p.m.)

23       THE COURT:  -- to Mr. Placitella?

24       MR. PLACITELLA:  I defer to Your Honor.

25       THE COURT:  Okay.  Thanks.  Off the record.

1           (Conference adjourned at 4:09 p.m.)

2                   * * * * * * * * * *

3

4                C E R T I F I C A T I O N

5       I, TERRY L. DeMARCO, court-approved transcriber,

6   certify that the foregoing is a correct transcript from the

7   electronic sound recording of the proceedings in the above-

8   entitled matter recorded on June 7, 2017 from 3:32:30 p.m. to

9   4:09:26 p.m.

10

11  _____06/12/17_____          *S / Terry L. DeMarco*_____

12       Date                       Terry L. DeMarco, AD/T 566

13                                  KLJ Transcription Service

14

15

16

17

18

19

20

21

22

23

24

25