NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLEE WILLIAMS, *et al.*, | Civil Action No. 11-1754 |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| BASF CATALYSTS, LLC, *et al.*, | |
| Defendants. | |

**LINARES**, Chief District Judge

This matter comes before the Court by way of Plaintiffs' objections to this Court's June 7, 2017 Order appointing a Special Discovery Master under Federal Rule of Civil Procedure 53. (ECF No. 317, 321). Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard.

### I.    Factual Background

The Court will rely upon the factual background contained in its decision in *Williams v. BASF Catalysts LLC*, 2016 U.S. Dist. LEXIS 46273 (D.N.J. Apr. 5, 2016). In summary, Plaintiffs allege, *inter alia*, that BASF Catalysts LLC and its attorneys at the firm Cahill Gordon & Reindel conspired to prevent thousands of litigants that claimed injuries due to asbestos exposure from attaining fair tort recoveries. Plaintiffs alleged that BASF's predecessor, Engelhard Corp. ("Engelhard"), with the help of its attorneys from Cahill, destroyed or hid tests and reports that documented the presence of asbestos in Engelhard's talc. (SAC, ECF No. 158 at ¶¶ 256; 258(a)-(f)). Plaintiffs commenced this action subsequent to the revelations brought about by the *Paduano*

*v. Ace Scientific Supply Co.*, No. MID-L-2976-09 (N.J. Super. Ct. Law. Div.) case concerning the concealed and destroyed documents. (SAC, ECF No. 158 at ¶¶ 244, 248(a)).

## II.    Procedural History

On March 28, 2011, Plaintiffs Kimberlee Williams, Nancy Pease, Marilyn L. Holley, Donna Ware, Donnette Wengerd and Rosanne Chernick filed this putative class action. (Compl., ECF No. 1.) Plaintiffs filed a First Amended Class Action Complaint ("FAC") on August 4, 2011, alleging violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJ RICO"), fraud, fraudulent concealment, civil conspiracy, fraud upon the court, unjust enrichment, and violation of New York Judiciary Law § 487. (ECF No. 70). Defendants moved to dismiss (ECF Nos. 77-80, 83), and on December 12, 2012, the Honorable Stanley R. Chesler, U.S.D.J. granted the motions and dismissed the FAC in its entirety. (ECF Nos. 129, 130.)

Plaintiffs appealed the dismissal of three claims: (1) fraud; (2) fraudulent concealment; and (3) violation of NJ RICO. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 2014 U.S. App. LEXIS 16999 (3d Cir. 2014); *see also* Concise Summary of the Case at 4, 765 F.3d 306 (3d Cir. 2014) (USCA 3d Cir. No. 13-1089, ECF No. 3111143049, Jan 22, 2013). On September 3, 2014, the United States Court of Appeals for the Third Circuit ("Court of Appeals") affirmed in part and reversed in part, and remanded for further proceedings. (ECF No. 136.)

As an initial matter, the Court of Appeals found that New Jersey law applied and that the parties waived their right to argue otherwise. *Id.* at 316-17. Substantively, the Court of Appeals affirmed the District Court's dismissal of the NJ RICO count, *id.* at 323-24, but reversed with respect to the fraud and fraudulent concealment claims, concluding that the FAC "properly allege[d]" the requisite elements-- "namely that BASF and Cahill lied about and destroyed the asbestos evidence to plaintiffs' detriment." *Williams*, 765 F.3d at 311, 317-23. However, the

Court of Appeals declined to rule on whether the FAC sufficiently stated a claim against the individual Defendants. *Id.* at 324.

On June 25, 2015, United States Magistrate Judge Joseph A. Dickson held a status conference and permitted Plaintiffs to amend their complaint in accordance with the Court of Appeals' Opinion and mandate. (See ECF No. 156, Tr. of 6/25/15 Status Conf. at 8:24.) On July 16, 2015, Plaintiff filed their Second Amended Complaint ("SAC"). (ECF No. 158).

Plaintiffs SAC asserts a cause of action against all Defendants under the law of New Jersey, Fraudulent Concealment (Count I) Fraud and Deceit (Count II) and a derivative liability claim for Civil Conspiracy (Count III). (SAC, ECF No. 158 at ¶¶ 299-337). Plaintiffs seek, *inter alia*, compensatory and punitive damages. (Id.). On January 22, 2016, Defendants moved to dismiss the SAC. (ECF Nos. 166-178). On April 5, 2016, this Court denied Defendants' motion to dismiss the SAC.[1]

On February 2, 2017, the parties appeared before Judge Dickson for a case status conference. (ECF No. 236). On February 16, 2017, counsel for Defendants BASF Catalysts LLC submitted their position on the issue of whether Plaintiffs waived their attorney client privilege and work product protection "by placing 'at issue' plaintiffs' reliance on what their former counsel allegedly told them, (or did not tell them) regarding what plaintiffs' former counsel allegedly understood regarding Engelhard's defenses and the merits of plaintiffs' allegations, especially as to reliance on counsel." (Def. Ltr. 2/16/17, ECF No. 242 at 1). On March 1, 2017, Plaintiffs submitted a letter addressed to Judge Dickson concerning their position on the scope of discovery. (Pl. Br., ECF No. 249). On April 14, 2017, Defendants' provided a response to Plaintiffs' March

---

[1] On April 5, 2016, this Court also decided that the SAC sufficiently stated claims against the individual Defendants. *Williams v. BASF Catalysts LLC*, 2016 U.S. Dist. LEXIS 46273 (D.N.J. Apr. 5, 2016).

1, 2017 letter. (Def. Opp., ECF No. 289).[2]  Plaintiffs filed a reply on May 12, 2017. (Pl. Rep., ECF No. 308).  On June 8, 2017, the Court entered an Order appointing Garrett Brown, U.S.D.J. (ret.) as a Special Master.  There, the Court ordered that the "special master shall oversee the schedule for completion of discovery and all discovery disputes and motions related thereto pursuant to procedures for practice that the special master may establish and modify as necessary" and address the issues currently in contention.  (Order, ECF No. 319 at 4).

On June 13, 2017, Plaintiffs filed a letter requesting that the Court "modify and clarify the Special Master Order".  (Pl. Ltr 6/13/17, ECF No. 321 at 1).  In the section entitled, "Objection No. 1," Plaintiffs argue that a Special Master should not be appointed at this time as an Article III judge should determine the scope of discovery because it is a "fundamental issue of law" not appropriate for the review of a Special Master.  (Id.).  Plaintiffs assert that "the cornerstone of discovery here is whether discovery of Plaintiffs' causes of action are limited as directed by the Third Circuit Court of Appeals or should be substantially enlarged as BASF insists to permit detailed discovery into the merits of thousands of cases that ended decades ago."  (Id.).  In the section entitled "Objection No. 2," Plaintiffs raised their issues concerning the Special Master's compensation rate and the allocation of costs to each party.  (Id. at 3-4).

As set forth in more detail below, discovery will not necessarily be allowed into the "merits of thousands of cases" but neither will it be restricted or limited as Plaintiffs' propose. Accordingly, this will resolve Plaintiffs' application to modify and clarify the Special Master Order. (Order, ECF No. 319).  A Special Master will undertake all of the tasks set forth in the June

---

[2]  On March 1, 2017, Defendants Cahill Gordon and Reindel LLP, Howard G. Sloane, and Ira J. Dembrow's filed a notice of joinder in BASF's February 16, 2017 letter brief.

8, 2017 Order. (Id.). This Opinion will define, generally, the scope of discovery in this matter and set forth some guidelines regarding the scope and the concomitant privilege issues.

## III. Discussion

### A. Objection No. 1

While the Court disagrees that a District Judge *must* preliminarily set the scope of discovery,[3] the Court will engage in said discussion considering Plaintiffs' objections to date, the age of this case, and in the interest of moving it along. While a resolution of these issues would normally fall to the Magistrate Judge (contrary to Plaintiffs' objection on page 1 of their June 13, 2017 letter), the Court has conferred with Judge Dickson and taken the step of authoring this Opinion to avoid any unnecessary further delay by appeals.

#### 1. Scope of Discovery

The parties agree that the issue concerning the scope of discovery pertains to the two substantive claims under the law of New Jersey, Fraud and Deceit (Count I) and Fraudulent Concealment (Count II). (Pl. Br., ECF No. 249 at 5). The Court will first address the scope of discovery and whether the Defendants are entitled to any discovery of the underlying cases.

##### a) Standard of Law

Federal Rule of Civil Procedure 26(b) defines the scope of discovery.

(b) Discovery Scope and Limits.

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the

---

[3] Of course, a district judge can and will set the scope of discovery, but the case law cited by both Plaintiffs and Defendants, as well as this Court's prior experience, shows that there is no such blanket requirement. Indeed, such a requirement would defeat the purpose of having a Special Master appointed in many cases, to say nothing of the role of magistrate judges in this district and elsewhere as defined by statute, General Orders of this Court, and this Court's practice.

amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26 (b)(1)

Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. *Wisniewski v. Johns—Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). In considering whether evidence is relevant, the Court considers whether the evidence has "a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981). "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

Rule 26 was amended effective December 1, 2015 to require that the discovery be proportional to the needs of the case and take into account the burdens created by the discovery proceedings. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also Mylan Pharms. V. Celgene Corp.*, Civ. No. 14-2094, 2016 U.S. Dist. Lexis 66393, at \*16 (D.N.J. May 20, 2016) (discussing the 2015 amendment). The present amendment moves the proportionality factors to the forefront of Rule 26, but does not change any of the analysis applied to the scope of discovery issues:

> This change reinforces the obligation of the parties to consider these factors in making discovery requests, responses or objections. Restoring the proportionality calculation to Rule 26(b)(1) does not

> change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations. Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

When addressing the scope of discovery under the revised Rule 26(b)(1), the Court must consider a number of factors: (1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Discovery requests may still be curtailed to protect a person from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Courts determine the proportionality of discovery on a case by case basis with the aforementioned factors, and "no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Emplrs Ins. Co. v. Daybreak Express, Inc.*, Civ. No. 16-4269 (JLL/SCM), 2017 U.S. Dist. LEXIS 86224, at *5 (D.N.J. June 5, 2017) (citing *Bell v. Reading Hosp.*, 2016 U.S. Dist. LEXIS 4643, at *2 (E.D. Pa. Jan. 14, 2016))

To establish a fraudulent concealment claim, a plaintiff must show the following:

> (1) the defendants ... had a legal obligation to disclose the evidence in connection with an existing or pending litigation;

> (2) the evidence was material to the litigation;

> (3) plaintiff could not reasonably have obtained access to the evidence from another source;

(4) defendant intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation; and

(5) *plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.*

*Rosenblit*, 166 N.J. at 406–07; *see also Williams*, 765 F.3d at 320–21 (emphasis added).

New Jersey recognizes the common-law fraud cause of action. A plaintiff seeking to recover for fraud and deceit must allege five elements:

(1) a material misrepresentation of a presently existing or past fact;

(2) knowledge or belief by the defendant of its falsity;

(3) an intention that the other person rely on it;

(4) *reasonable reliance thereon by the other person*; and

(5) resulting damages.

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73, (N.J. Sup. Ct. 2005) (emphasis added) (quotation marks and citation omitted); *see also Williams,* 765 F.3d at 317.

### b)  Defendants' Discovery Demands

The discovery currently at issue are Defendants interrogatories and document demands and Defendants subpoenas served on non-parties. On October 23, 2015, Defendant BASF served document requests and interrogatories to each named Plaintiff. (Def. Ltr. 2/16/17, ECF No. 242 at 4).[4] Defendants argue that the discovery was "designed to elicit basic documents and information" concerning Plaintiffs' claims. (Id.). Defendants state that they sought the discovery to test "plaintiffs' allegations that [were] the purported withholding of evidence and misrepresentations by Engelhard and Cahill that caused plaintiffs to dismiss or settle their

---

[4] Defendant BASF attached a copy of the discovery propounded on Plaintiff Kimberlee Williams as Exhibit A to Defendant BASF's February 16, 2017 letter. *See, e.g.*, Ex. A (10/23/15 BASF Req., ECF No. 242-1).

underlying asbestos cases for amounts too low, rather than some failure of proof unrelated to the alleged fraudulent conduct." (ECF No. 242 at 5). Defendants contend that they are entitled to inquire whether "plaintiffs' counsel actually knew of the purported misstatements, whether those purported misstatements were material to plaintiffs' litigation decisions, or whether plaintiffs settled their cases for reasons unrelated to the asbestos content of Emtal talc, including because plaintiffs were unable to prove exposure to Emtal talc or did not actually suffer from an asbestos related disease, among other potential failures of proof." (ECF No. 242 at 3). Furthermore, Defendants argue that they are "entitled to disprove plaintiffs' allegations that their counsel relied or made (or failed to make) particular litigation decisions in the underlying asbestos cases based on certain alleged misstatements." (ECF No. 242 at 8). As part of their defense, Defendants intend to show, *inter alia*, "that any alleged withholding of evidence in plaintiffs' decedents' underlying cases did not materially affect those cases—and certainly not in any uniform way that could allow for class certification." (ECF No. 242 at 8).

Plaintiffs, however, argue that the scope of discovery should focus, *inter alia*, on the following issues raised in the SAC:

> • Whether BASF and Cahill destroyed and/or concealed evidence that Emtal talc contained asbestos.
> • Whether BASF and Cahill routinely and systematically made false and misleading statements that Emtal talc did not contain asbestos.
> • Whether BASF and Cahill routinely and systematically made false and misleading statements that there was no evidence that Emtal talc contained any asbestos.
> • Whether BASF and Cahill's spoliation of evidence had the capacity to and did adversely affect and hamper the prosecution of asbestos claims against BASF.
> • BASF and Cahill's reasons or motives for their fraud and spoliating evidence.
> • What BASF and Cahill each sought, achieved and gained from the spoliation of evidence and misrepresentation scheme.

- Did the Representative Plaintiffs have an asbestos injury claim that BASF and Cahill targeted and affected in the course and conduct of their fraudulent asbestos defense scheme?

(Pl. Br., ECF No. 249 at 3-4). Additionally, Plaintiffs "seek a rightful collection of remedies for compensatory and punitive damages, as well as declaratory and equitable relief available under the law." (ECF No. 249 at 3). Plaintiffs indicate that discovery into the aforementioned issues will resolve the "core issues" and will "materially advance the resolution of both the claims of the representative Plaintiffs' and the claims of the putative class members' alike as they are common and essential issues to both groups' claims." (Id.).

### c) Relevance

Plaintiffs argue that the discovery propounded by Defendants is not relevant nor proportionate to claims in this issue. (Pl. Br., ECF No. 249 at 14, Pl. Rep., ECF No. 308 at 11). Plaintiffs assert that the purpose of the SAC was not to revive the old claims but rather to address BASF and Cahill's conduct before, during, and after the underlying action. (Id. at 14-15). Plaintiffs further argue that "this case is now all about what BASF and Cahill wrongfully did to eliminate or reduce as much as possible BASF's asbestos liability exposure in response to foreseeable or occurring litigation, the likes of which by the early to mid - 1980s had already impacted the bottom line of many peers of BASF." (Id. at 15).

### (i) Count I- Fraudulent Concealment (Spoliation).

**Plaintiffs' Arguments:**

Plaintiffs argue that reliance is not an element required under the tort of fraudulent concealment. First, Plaintiffs assert that in *Williams v. BASF Catalyst*, 765 F. 3d at 321-322, "the Third Circuit recognized the difference between requiring Plaintiffs to show they would have otherwise succeeded on their underlying claims versus a requirement that they provide a general

10

explanation of asbestos claim fundamentals (which they satisfied in the course of their pleadings' allegations)." (Pl. Rep., ECF No. 308 at 9). Plaintiffs aver that the Court of Appeals explained that a "fraudulent concealment does not require reliance on an adversary's representations." *Williams v. BASF Catalyst*, 765 F. 3d at 323. Accordingly, Plaintiffs argue that in this case, BASF and Cahill's conduct "shuts the door as to any proof needed about reliance." (Id.). Plaintiffs contend that they do not have the necessary evidence in the underlying case because Defendants destroyed or concealed it. (Id.). Therefore, "it is obvious and self-evident that the plaintiff had to go forward 'relying' on a record that does not contain the evidence concealed by defendants." (Id.).

Additionally, Plaintiffs contend that the New Jersey Supreme Court in *Rosenblit v. Zimmerman*, 166 N.J. 391, 766 A.2d 749, (N.J. Sup. Ct. 2001) held that reliance was not a requisite element for an actionable fraudulent concealment claim. (Pl. Rep. ECF No. 308 at 11). Plaintiffs argue that the court in *Rosenblit* "did not intend to import 'reliance' back into the cause of action as a requisite part of proving causation between the defendant's spoliation and the victim's resulting injury." (Id.). Furthermore, Plaintiffs assert that, according to *Rosenblit*, the fact finder "need be presented only with sufficient contextual information concerning what the underlying litigation was about and how and why what was spoliated, or what was misrepresented, fit in and mattered." (Pl. Br., ECF No. 249 at 15). Plaintiffs argue that the holding in *Rosenblit* does not require a "whole redo and presentation of" the underlying case at issue. (Id. at 15-16).

Finally, Plaintiffs assert that the type of discovery the Defendants want to conduct "contradicts the deterrence and punishment goals and purposes of allowing Fraudulent Concealment actions." (Pl. Br., ECF No. 249 at 16) (citing *Rosenblit*, 166 N.J. at 408). Plaintiffs assert that Defendants forfeited their right to take discovery "when it chose to spoliate evidence and then repeatedly make fraudulent misrepresentations in the course of litigation to affect that

11

litigation." (Id. at 16). In support of its argument, Plaintiffs cite to *Abtrax Pharms. v. Elkins-Sinn*, 139 N.J. 499 (N.J. Sup. Ct. 1995).

In *Abtrax*, the trial court determined that, during the course of the litigation, plaintiff had willfully concealed relevant documents. *Id.* at 502. In addition to awarding counsel fees and expenses, the trial court also dismissed the plaintiff's complaint with prejudice. *Id.* The Supreme Court of New Jersey, in review of the lower court's decision to dismiss plaintiff's case, held that the trial court's decision to dismiss plaintiff's complaint was justified. *Id.* at 521-522. There, the Supreme Court held the following:

> In exceptional circumstances, however, interests other than prejudice can shift the balance in favor of dismissal as a sanction. . . . A litigant that deliberately obstructs full discovery corrupts one of the fundamental precepts of our trial practice--the assumption by the litigants and the court that all parties have made full disclosure of all relevant evidence in compliance with the discovery rules. A litigant who willfully violates that bedrock principle should not assume that the right to an adjudication on the merits of its claims will survive so blatant an infraction. Wholly apart from the prejudice caused by Abtrax's discovery violations, the conclusion is inescapable that Abtrax's failure to comply with discovery demands and orders, if undetected, would have afforded Abtrax an unfair advantage at trial, because of Abtrax's familiarity with facts and documents that had never been disclosed to Elkins. Prevention of such an unfair advantage is a basic premise of our discovery rules.

*Abtrax Pharms.*, 139 N.J. at 521-522.

### Defendants' Arguments:

Defendants, on the other hand, contend that the elements of fraudulent concealment tort numbers two ("the evidence was material to the litigation") and five ("plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed") require discovery into the underlying litigation. (Def. Opp., ECF No. 289 at 13). Defendants argue that a fraudulent concealment claim will "involve consideration of the

substantive counts" in order to determine "the 'true impact of the spoliated items' in light of the 'particular facts and circumstances of the litigation.'" (Def. Opp., ECF No. 289 at 14) (citing *Robertet Flavors, Inc. v. Tri-Form Const., Inc.*, 1 A.3d 658, 671 (N.J. Sup. Ct. 2010). Defendants aver that "[t]o know whether withheld or destroyed evidence was 'material,' one has to know something about the underlying case. (Def. Opp., ECF No. 289 at 14). Similarly, Defendants contend that in order to determine whether plaintiff was "damaged" in the underlying action by not having the evidence that was allegedly destroyed or withheld, "one again has to have an understanding of the underlying case and whether it was meritorious." (Id.). Defendants further argue that they are entitled to discovery in order to prove their theory that "even if the allegedly concealed evidence had been available for plaintiffs and their counsel to review, Plaintiffs' underlying personal injury claims still would have failed. (Id. at 15).

Furthermore, Defendants assert that Plaintiffs are mischaracterizing the Court of Appeals decision in *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3d Cir. N.J. Sept. 3, 2014). Defendants note that the *Williams* analysis was decided under the motion to dismiss standard. Therefore, the Court of Appeals was required to "accept as true the Amended Class Action Complaint's well pled allegations." (Def. Opp., ECF No. 289 at 25) (citing *Williams*, 765 F.3d at 311). Defendants point to the Court of Appeals' discussion on the motion to dismiss. The Court of Appeals explained, "[o]f course, discovery may exonerate [defendants] and, in any event, [they] will have the opportunity to contest the truth of those allegations in a later stage of the lawsuit." (ECF No. 289 at 25) (citing *Williams*, 765 F.3d at 324). Furthermore, as to Plaintiffs' argument that the Court of Appeals held that the underlying claims were not relevant, Defendants contend that the Court of Appeals merely held that the *Rooker-Feldman* doctrine did not bar the remaining claims in the

Second Amended Complaint because plaintiffs were seeking "independent torts" rather than seeking review of the state court judgments. (ECF No. 289 at 25)

As to Plaintiffs' analysis of *Rosenblit*, Defendants argue that Plaintiffs have misread *Rosenblit*. Defendants assert that *Rosenblit* is "straightforward" as "a plain reading of the New Jersey Supreme Court's opinion makes clear that an evaluation of the underlying litigation is required in evaluating a fraudulent concealment claim." (Id. at 26). Defendants argue that *Rosenblit* "makes clear that a plaintiff must demonstrate a very particular type of harm in order to prove up a fraudulent concealment claim, namely, that the defendant destroyed or concealed 'material' evidence and the 'plaintiff' was damaged in the underlying action by having to rely on evidential record that did not contain the evidence defendant concealed." (Id. at 27).

Defendants also note that the New Jersey Supreme Court has expressed that discovery into the underlying claims is necessary in its *Rosenblit* Opinion. Defendants contend that *Rosenblit* instructed that "in evaluating a fraudulent concealment claim 'the fundamentals of the underlying litigation will also require exposition.'" (Def. Opp., ECF No. 289 at 14).

As to Plaintiffs' argument that Defendants forfeited their right to discovery, Defendants argue that Plaintiffs' arguments are misguided, and if accepted, "would turn the fundamentals of due process on their head". (Id. at 23). Defendants contend that Plaintiffs have not proven their case for fraud or fraudulent concealment. (Id. at 23). Defendants assert that they are entitled to "challenge" the allegations made against them and conduct discovery. (ECF No. 289 at 24). In support of their argument, Defendants cite to *Hicks v. Feeney*, 850 F. 2d 152, 156 (3d Cir. 1988). There, the Court held that "plaintiff must prove his case, as well as give the defendant an opportunity to prepare against it." *Id*. at 156.

Furthermore, Defendants argue that Plaintiffs' interpretation of *Abtrax* runs contrary to the Supreme Court's decision and underlying reasoning as "[n]othing in *Abtrax* supports plaintiffs' position that a litigant forfeits the right to discovery based on untested and unproven allegations against it." (ECF No. 289 at 24). Defendants contend that Plaintiffs ignore the fact that the trial court in *Abtrax* made "specific findings of spoliation based on actual discovery into the validity of the allegations." (ECF No. 289 at 24). Specifically, the trial court in *Abtrax* "sat through four days of trial, heard lengthy arguments on three separate dates regarding the issue of dismissing *Abtrax's* complaint with prejudice, and reviewed relevant documents." *Abtrax Pharms.*, 655 A. 2d at 519-520. Additionally, the trial court permitted plaintiff to conduct additional discovery and submit additional documents on the issue of spoliation when plaintiffs moved to reconsider. *Id*.

### (ii)    Count II- Common Law Fraud claim

Plaintiffs also argue that the claims for fraud against Defendants do not require proof that the Plaintiffs relied on Defendants' misrepresentations. Plaintiffs assert that "Plaintiffs fraud claims is predicated upon Defendants' scheme of false statements, suppression of evidence and threats in advance of, and during, litigation to gain voluntary dismissals (with and without nominal token settlement payments) and involuntary dismissals of asbestos claims." (Pl. Rep., ECF No. 308 at 15) (citing *Williams*, 765 F. 3d at 319-320). Plaintiffs argue that the "discovery is not relevant or proportionate to this case," and contend that documents from Defendants' files produced in the related New Jersey Superior court matter, as well as the documents filed with the courts handling the underlying cases, BASF, and Cahill essentially admit that other asbestos cases were "repeatedly and voluntarily dismissed based upon BASF's uniform representations that there was not any asbestos in Emtal talc and no evidence to the contrary existed." (Pl. Rep., ECF No.

308 at 15-16). Therefore, Plaintiffs assert that, under these circumstances, "the element of reliance can be presumed or objectively proven on a universal basis." (Id.).

Additionally, Plaintiffs argue that if this Court does not find that "BASF's attorney's admissions regarding their success in gaining wide acceptance of BASF/Cahill's false representations and resulting dismissals of claims against BASF establishes outright, or dispenses with the need for, individualized proof of reliance, Plaintiffs then intend to seek certification of an issues class under Rule 23(c)(4) directed to proving on behalf of the class the first three elements of Plaintiff's fraud." (Id.).

Defendants contend they are entitled to test the allegations made against them, and assert that Plaintiffs are required to establish "reasonable reliance" and "resulting damages" from the alleged misrepresentations in order to prove their fraud claim. (Def. Opp., ECF No. 289 at 15). In support of their argument, Defendants cite to *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, (N.J. Sup. Ct. 2005). There, the Court explained that "misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." (ECF No. 289 at 16) (citing *Banco Popular N. Am.*, 184 N.J. at 175).

## IV.    Analysis

Discovery of some of the underlying proceedings is necessary to resolve the issues pertaining to Count I (Fraudulent Concealment) and Count II (Fraud and Deceit). In Count I, Plaintiffs seek to prove that Defendants intentionally destroyed or withheld material evidence that Defendants had a duty to disclose, that Plaintiffs were not able to access such evidence on their own, and that Plaintiffs were damaged by the destruction or concealment of such evidence. (SAC, ECF No. 158 at 137). In Count II, Plaintiffs allege that Defendants misrepresented that the talc

products did not contain asbestos and/or that Defendants did not have in their possession any record or test results that concluded that the talc product contained asbestos.

The Court will address both Count I and II together as there is no structural or analytical differences for the purposes of determining the scope. Plaintiffs' arguments miss the point of the scope of relevant discovery under Federal Rule of Civil Procedure 26(b). Furthermore, the Court disagrees with Plaintiffs' interpretation of the Court of Appeals Opinion in *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3d Cir. 2014). (Pl. Rep., ECF No. 308 at 11). The issues concerning the scope of discovery were not presented to the Court of Appeals, nor was the Court of Appeals in the position of reviewing such issues due to the state of litigation and issues before it. But it is noteworthy that the Court of Appeals reasoned:

> [T]his is a motion to dismiss. Courts must accept as true the plaintiff's allegation and draw inferences in the plaintiffs' favor. Inferring from plaintiffs' choice of counsel unfavorable facts about plaintiffs' beliefs runs contrary to this rule. Third, as noted, the tort of spoliation requires a plaintiff to prove he or she was harmed in the underlying action *by having "to rely on an evidential record that did not contain the evidence defendant concealed." Rosenblit*, 766 A. 2d at 758. *The tort does not require reliance on an adversary's representations. Indeed, a lawyer or litigant who destroys or conceals evidence may be liable even if he or she makes no representations to his or her adversaries at all.*

*Williams v. BASF Catalyst*, 765 F. 3d at 321-323 (emphasis added).

First, Plaintiffs' focus on reliance ignores that causation, an element of every tort, still creates an issue for discovery. Defendants are entitled to explore, through discovery, the link by causation between Defendants' conduct and Plaintiffs' damages. Second, the quote above does not necessarily mean reliance is not an element of the tort of spoliation; rather, it only means concealment may be found when concealment has occurred without active misrepresentation. The fact that an attorney or a litigant says nothing in the face of a duty to say something may support

a claim of fraudulent concealment. But most importantly, for the discussion here, the resulting effects of that silence will give rise to discovery of those effects in subsequent litigation pursuant to Federal Rule of Civil Procedure 26(b).

Finally, the Court of Appeals did not write "reliance" out of the tort. Instead, the Court of Appeals recognized that Plaintiffs must prove that decisions were made in the underlying case that would have been different if they had known evidence had been destroyed or otherwise concealed: "Accordingly the plaintiffs did not have to allege facts to show that they 'would have succeeded in proving their asbestos injury claims against BASF,' as the District Court held, ... but rather facts to show that BASF and Cahill's destruction of evidence harmed their case." *Williams v. BASF Catalyst*, 765 F. 3d at 321-322. Additionally, the Court of Appeals reasoned:

> Indeed, the complaint states enough facts regarding the consequences of defendants' spoliation *that it has raised a "reasonable expectation that discovery will reveal real evidence" that plaintiffs have been harmed by BASF and Cahill's misconduct.*

*Williams v. BASF Catalyst*, 765 F. 3d at 321-323 (emphasis added). The analysis by the Court of Appeals clearly acknowledges the need for discovery into how the Defendants' alleged misconduct affected the Plaintiffs' underlying cases. Without discovery, there will be no answers to the questions raised by the Court of Appeals. Accordingly, Defendants are well within their rights, pursuant to Federal Rule of Civil Procedure 26, to explore these issues in discovery.

This Court also disagrees with Plaintiffs interpretation of *Rosenblit*. In *Rosenblit*, the court held:

> If, however, the spoliation is not discovered until after the underlying action has been lost or otherwise seriously inhibited, the plaintiff may file a separate tort action. In such an action, plaintiff will be required to establish the elements of the tort of fraudulent concealment. *To do so, the fundamentals of the underlying litigation will also require exposition.*

*Rosenblit*, 166 N.J. at 408 (emphasis added). A plain reading of the Supreme Court's decision makes clear that "exposition" of the underlying litigation is required. *Id.*

Finally, the Court disagrees with Plaintiffs' reading of *Abtrax* as the Federal Rules of Civil Procedure 26 permits for the discovery of claims and defenses. Fed. R. Civ. P. 26(b)(1). As discussed above, the litigants in *Abtrax* did not forfeit their rights as the Court permitted discovery on the issue of fraudulent concealment. *Abtrax Pharms.*, 655 A. 2d at 519-520.

The same analysis applies to Count II. Contrary to Plaintiffs' argument, the elements of "reliance" and "resulting damages" have not been proven. (Pl. Rep., ECF No. 308 at 15-16). The Court of Appeals merely held that the SAC sufficiently states a claim for fraud. *Williams v. BASF Catalyst*, 765 F. 3d at 318. Additionally, the Court of Appeals held that the New Jersey's litigation privilege did not "foreclose liability" for any statements made in the course of asbestos-injury litigation. *Williams v. BASF Catalyst*, 765 F. 3d at 317-320. As noted above, the Court of Appeals did not decide issues pertaining to the discovery of the claims.

The scope of discovery will focus on the alleged wrongful conduct and any alleged harm following from that conduct. In order to resolve the issues Plaintiffs identified, *i.e.* "[w]hether BASF and Cahill's spoliation of evidence had the capacity to and did adversely affect and hamper the prosecution of asbestos claims against BASF" (Pl. Br., ECF No. 249 at 3-4), the scope of discovery may include inquiry as to why Plaintiffs settled or dismissed their underlying claims. To fully explore this issue, Defendants will be entitled to discover what Plaintiffs and their counsel knew, and were told, and whether any knowledge, or lack thereof, contributed to Plaintiffs' decisions on resolving the underlying case.[5]

---

[5] See Section 2 *infra*, Attorney Client Privilege.

Such discovery may include some of the facts arising from the underlying cases; however, the purpose of this discovery does not require a complete "redo" of the underlying claims and defenses. The court's analyses in *Rosenblit* and *Abtrax* do not mean that, generally speaking, this Court must re-open the underlying proceedings for the purposes of allowing the parties to prove or disprove the merits of the underlying cases. Accordingly, the Special Master should examine with care Plaintiffs' objections to discovery requests that assert exceed the parameters of the scope set forth herein. As is always the case, discovery requests must be tailored to the relevant issues in a case, subject to a rigorously applied proportionality analysis. This Court declines to set forth a "one-size fits all approach" to the discovery in this matter. Counsel, as always, will be required to meet and confer and should be able to resolve most of the disputes regarding discovery. If the meet and confer process has not resolved a dispute, the Special Master assigned to this case shall address each discovery request and objection in due course.

### 2. Attorney Client Privilege

Defendants raise the issue "[w]hether Plaintiffs have waived the attorney-client privilege and work product protection by placing 'at issue' plaintiffs' reliance on what their former counsel allegedly told them (or did not tell them) regarding what plaintiffs' former counsel allegedly understood regarding Engelhard's defenses and the merits of plaintiffs' underlying asbestos cases.'" (ECF No. 242 at 1). It appears that Defendants are entitled to the information as Plaintiffs raised these issues in their SAC. (SAC, ECF No. 158 at ¶¶ 12, 19, 228, 230, 329). Both the Court of Appeals, as well as this Court, have found that the attorney-client privilege is waived when "the client has made a conscious decision to inject the advice of counsel as an issue in the litigation." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995). *See also In re G-I Holdings, Inc.*, 218 F.R.D. 428, 431-32 (D.N.J. 2003) ("Once a party places attorney-client

communications at issue, that party waives the privilege with regard to all communications on the same subject matter."). The waiver here may not be a complete waiver, but rather a limited waiver that permits Defendants access to previously privileged information that Plaintiffs have put at issue by relying on what the underlying counsel was told and the nature of advice given by counsel as a result of what counsel was led to believe. Moreover, the Court agrees with Plaintiffs that such information should be "tightly define[d] and control[led]" pursuant to Federal Rule of Evidence 502(d). (Pl. Rep., ECF No. 308 at 21).

The extent of any such waiver, and the information to be produced, will be subject to the Special Master's review as outlined above. Accordingly, the Special Master shall ascertain, and apply all relevant law to the documents and objections concerning the attorney client privilege and determine what discovery (by way of written and testimonial), if any, Plaintiffs shall produce pursuant to the Federal Rule of Civil Procedure 26. Furthermore, the Special Master will address whether the Court should enter an order defining and controlling or otherwise protecting such information and how such information is divulged pursuant to Federal Rule of Evidence 502(d).

**B.     Objection No. 2- Going to expense considerations**

**1.     Special Master Compensation Rate:**

Plaintiffs argue that if the Court does not determine the scope of discovery, the expenses involved in compensating the Special Master will "become prohibitive." (ECF No. 321 at 3). As the Court has decided the scope of discovery, this issue is now moot.

**2.     Application to Third Parties and Calculating Pro Rata Shares:**

The allocation of costs to the parties is addressed in this Court's prior Order and will not be revisited. The Special Master will resolve all matters concerning the allocation of costs.

**3.    Appeals deadline:**

As to the time for appeals from the Special Master's Orders, the parties shall abide by the time deadlines contained in Local Civil Rule 70.1(c)(1).

**C.    Appointment of Special Master**

This Opinion and Order modifies the Court's previous June 8, 2017 Order referring the case to Special Master Judge Brown.  (ECF No. 319).   Judge Brown has declined to serve as a Special Master.  Accordingly, the Court has determined to appoint Roberto A. Rivera-Soto (former N.J. Supreme Court Justice) as the Special Master in place of Judge Brown.  The Order appointing the Special Master will be so Amended.

Date:    8/3/17

_____
JOSE L. LINARES
Chief Judge, United States District Court