```
1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
2                       Civil No. 11-01754(JLL)


3
     - - - - - - - - - - - - - -X
4                                  :
     KIMBERLEE WILLIAMS, et al.,   :      TRANSCRIPT OF
5                                  :       PROCEEDINGS
             Plaintiffs,           :
6                                  :      September 5, 2017
           -vs-                    :
7                                  :
     BASF CATALYSTS, LLC, et al.,  :
8                                  :
             Defendants.           :      Newark, New Jersey
9                                  :
     - - - - - - - - - - - - - -X
10


11


12
     B E F O R E:
13
                   CHIEF JUDGE JOSE L. LINARES,
14             UNITED STATES DISTRICT COURT JUDGE
                           -and-
15         MAGISTRATE JUDGE JOSEPH A. DICKSON,
           UNITED STATES DISTRICT MAGISTRATE JUDGE
16


17


18


19
          Pursuant to Section 753 Title 28 United States Code, the
20   following transcript is certified to be an accurate record
     as taken stenographically in the above-entitled proceedings.
21
     s/Phyllis T. Lewis, CCR, CRCR
22   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                   PHYLLIS T. LEWIS, C.C.R., C.R.C.R.
23      Official Court Reporter - United States District Court
                   Newark, New Jersey  07101
24                      (732) 735-4522

25
```

```
 1       A P P E A R A N C E S:

 2               COHEN PLACITELLA ROTH, PC
                 127 Maple Avenue
 3               Red Bank, New Jersey 07701
                 732-747-9004
 4               BY:  CHRISTOPHER M. PLACITELLA, ESQ.
                      MICHAEL COREN, ESQ.
 5                   -and-
                 FOX ROTHSCHILD, LLP
 6               997 Lenox Drive
                 Lawrenceville, New Jersey 08648
 7               609-348-4515
                 BY:  JEFFREY M. POLLOCK, ESQ.
 8               Attorneys for Plaintiffs.

 9
                 ROBINSON MILLER, LLC
10               One Newark Center
                 Newark, New Jersey 07102
11               973-690-5400
                 BY:  JUSTIN T. QUINN, ESQ.
12                   -and-
                 KIRKLAND & ELLIS, LLP
13               601 Lexington Avenue
                 New York, New York 10022
14               212-446-4930
                 BY:  EUGENE F. ASSAF, ESQ.
15                    DANIEL A. BRESS, ESQ.
                      PETER A. FARRELL, ESQ.
16               Attorneys for Defendant,
                 BASF Catalysts, LLC.
17
18               CONNELL FOLEY, LLP
                 85 Livingston Avenue
19               Roseland, New Jersey 07068
                 973-535-0500
20               BY:  ROBERT E. RYAN, ESQ.
                     -and-
21               WILLIAMS & CONNOLLY, LLP
                 725 12th Street NW
22               Washington, DC 20005
                 BY:  DAVID BLATT, ESQ.
23               Attorneys for Defendant,
                 Cahill, Gordon & Reindel, LLP
24

25
```

```
 1        A P P E A R A N C E S (Continued):

 2              HEROLD LAW
                25 Independence Boulevard
 3              Warren, New Jersey 07058
                908-647-1022
 4              BY:  ERIC TUNIS, ESQ.
                Attorneys for Defendant,
 5              Thomas D. Halket.

 6

                MARINO, TORTORELLA & BOYLE, PC
 7              437 Southern Boulevard
                Chatham, New Jersey 07928
 8              973-824-9300
                BY:  JOHN A. BOYLE, ESQ.
 9                   KEVIN H. MARINO, ESQ.
                Attorneys for Defendant,
10              Arthur A. Dornbusch, II

11

                ROBERT SOKOLOVE, ESQ.
12              Third-party Defendant,
                Alan Rothenberg.
13

14              MC CARTER & ENGLISH, LLP
                100 Mulberry Street
15              Newark, New Jesey 07102
                973-622-4444
16              BY:  DAVID R. KOTT, ESQ.
                Attorneys for Third-Party Witness,
17              Johnson & Johnson.

18

19

20

21

22

23

24

25
```

```
 1                    THE CLERK:  All rise.

 2                    THE COURT:  You may be seated.

 3                    All right.  Counsel, this is in the matter of,

 4          let's get the whole correct docket number, Docket No.

 5          2:11-01754.  Your appearances for the record, please.

 6                    MR. POLLOCK:  Jeff Pollock, Fox Rothschild on

 7          behalf of the plaintiffs.

 8                    THE COURT:  Okay.  I didn't say the name of the

 9          case.  Kimberlee Williams, et al., versus BASF Catalysts,

10          LLC, et al., and the docket number, as I indicated is,

11          11-cv-01754.  Okay.

12                    So who do you represent, the plaintiffs?

13                    MR. POLLOCK:  Jeff Pollock from Fox Rothschild on

14          behalf of plaintiffs with my co-counsel from Cohen,

15          Placitella & Roth.

16                    MR. PLACITELLA:  Good morning, your Honor.

17                    THE COURT:  Good morning.

18                    MR. SOKOLOVE:  Good morning, your Honor.

19                    I'm Robert Sokolove.  I represent the third-party

20          defendant, Alan Rothenberg.

21                    THE COURT:  All right.

22                    MR. ASSAF:  Good morning, your Honor.

23                    John Assaf from Kirkland & Ellis for BASF.

24                    THE COURT:   Good morning.

25                    MR. FARRELL:  Good morning, your Honor.
```

1              Peter Farrell of Kirkland & Ellis for BASF.

2              MR. BRESS:  Good morning, your Honor.

3              Daniel Bress from Kirkland & Ellis for BASF.

4              MR. QUINN:  Justin Quinn from Robinson Miller on

5    behalf of BASF.

6              Good afternoon.

7              MR. RYAN:  Robert E. Ryan, Connell Foley, for the

8    Cahill defendants.

9              MR. BLATT:  Good afternoon, your Honor.

10             David Blatt from Williams & Connolly for the Cahill

11   defendants.

12             MR. BOYLE:  Good afternoon, your Honor.

13             John Boyle from Marino, Tortorella & Boyle on

14   behalf of defendant Arthur Dornbusch.

15             MR. TUNIS:  Good afternoon, your Honor.

16             Eric Tunis on behalf of defendant Thomas Halket.

17             THE COURT:  All right.

18             Good afternoon to all of you.

19             I had scheduled this hearing for the limited

20   purpose of deciding what, if anything, the Court is going to

21   do going forward with regard to my appointment of Past

22   Justice Rivera-Soto in connection with this matter as a

23   Special Master.

24             The Court has already decided that a special master

25   is necessary in this litigation.  I am not revisiting the

```
1        issue of whether a special master is necessary, so that ship
2        has sailed.  I have done my analysis in the opinion that I
3        issued.  There are a myriad of reasons for which a special
4        master is appropriate here, the complexity of the issues
5        involving the discovery and how that needs to be parceled
6        out in light of concerns regarding privilege, et cetera, on
7        the underlying litigations, the fact that the courts,
8        especially this Court, is down judges.  We have vacancies.
9        We have a lot of cases that we are stretched out in trying
10       to do all of this work, and this is a complex case important
11       to everybody here, and the Court has already made the
12       determination that the special master is necessary, so that,
13       as I said, is not an issue for today.
14            I also received letters that were filed over the
15       weekend regarding discovery issues.  I am not going to deal
16       with that today myself.  I do have Magistrate Judge Dickson
17       here seated to my left, and he will approach that with you,
18       but those letters are testament to why a special master is
19       necessary in this case to deal with all of these issues, and
20       I need to move the ball forward here.  We are not going to
21       continue to, you know, argue over special masters.
22            Now, I had asked Justice Rivera-Soto to be here.
23            He is here, right?
24            MR. RIVERA-SOTO:  Yes.
25            THE COURT:  He is here.  I want you to come up,
```

1    because I want you to address preliminarily some of the

2    issues before I hear from the parties on this matter.

3              MR. RIVERA-SOTO:  Should I come to the podium, your

4    Honor?

5              THE COURT:  Come up to the podium, please.

6              MR. RIVERA-SOTO:  Good morning.

7              THE COURT:  Good morning.

8              So we are here today, as you know, because you have

9    been privy to the letters that have been submitted to this

10   Court.  After I appointed you in connection with this

11   matter, I received letters objecting to you continuing to be

12   the special master because of some alleged conflicts, one

13   dealing with the fact that you used to be at Fox Rothschild

14   several years ago, and another one dealing with the fact

15   that the Williams Connolly law firm was representing Ballard

16   Spahr in connection with what I am going to describe, and I

17   realize it was more than that, but a collection matter

18   involving some defendant, Symphony, something or other --

19             MR. RIVERA-SOTO:  Symphony Health Solutions, a

20   prior --

21              THE COURT:   -- Symphony Health Solutions.

22             MR. RIVERA-SOTO:   -- client of Ballard Spahr.

23             THE COURT:  Okay.

24             First, I want to get some input from you, so that

25   we have a clear record in the event that anybody wants to

1    review this record in the future.

2              First of all, let's talk about the first objection,

3    which deals with your prior involvement with Fox Rothschild.

4    Can we talk about that a little bit, please?

5              MR. RIVERA-SOTO:  Sure.  Certainly, your Honor.

6              I actually was at Fox Rothschild twice.  I was an

7    associate at Fox Rothschild from 1980 to 1983, and then 16

8    years later in 1999, I returned to Fox Rothschild as a

9    partner.

10             I was a partner at Fox Rothschild until August 31,

11   2004.  The next day I was sworn in as a Justice of the

12   Supreme Court of New Jersey.

13             When I left the bench in 2011, at the end of my

14   term, I went to Ballard Spahr.  I did not go back to Fox

15   Rothschild, so it has been literally 13 years and five days

16   since I was associated with Fox Rothschild.

17             When I left Fox Rothschild in 2004, I was paid out

18   my complete capital contributions in one shot.

19             THE COURT:  That was my next question.

20             So is there any lingering or remaining economic

21   obligations from either side arising out of your partnership

22   there?

23             MR. RIVERA-SOTO:  No, not at all.  In fact, the

24   partnership agreement provides for a scheduled payout of

25   contributions.  They actually repaid my full contribution in

1    one lump sum because I was going on the bench, so that

2    relationship ended August 31, 2004.

3              THE COURT:  At your present law firm, do you have

4    cases where you are adverse to your past law firm?

5              MR. RIVERA-SOTO:  I have to assume we do, that we

6    have cases that we are representing opposite sides on, but I

7    don't know of any off the top of my head.  They are a large

8    law firm, and we are a large law firm, so....

9              THE COURT:  So any continuing obligation whatsoever

10   regarding Fox Rothschild?

11             MR. RIVERA-SOTO:  No, and there hasn't been one for

12   over 13 years.

13             THE COURT:  Any lingering feelings about bias for

14   or against Fox Rothschild in any way, shape or form?

15             MR. RIVERA-SOTO:  No different than other of the

16   lawyers who I know throughout the state, some of whom I

17   like, some of whom I don't.

18             (Laughter)

19             THE COURT:  Okay.

20             Anything else that you want to tell me about Fox

21   Rothschild?

22             MR. RIVERA-SOTO:  No, your Honor.

23             I think that the notion that I would be somehow

24   prejudiced because Fox Rothschild appears representing a

25   party in this lawsuit is a bit absurd.

1          THE COURT:  Well, it does seem to have been a long

2     time ago, and if that was the test, there would be many

3     judges here who couldn't preside over a lot of cases because

4     we all came from law firms at some point, and at some point

5     that potential conflict or appearance of impropriety just

6     dwindles away and doesn't exist anymore.

7          Let's just continue here because I want to make a

8     fair and adequate decision for all of the parties here.

9     This is an important litigation.  It is important for me

10    that I have a special master that's involved in the case

11    with all of the powers that I am giving that special master

12    to be able to move the ball forward here in a fair and

13    adequate manner, so that is why I am having this hearing

14    today, and then I'm going to make a call.  So that is why I

15    asked you to come here.  I wanted to hear from you.  I

16    didn't want to just have letters.

17         Let's go to the next step, which is this issue of

18    this representation.  That does concern the Court.  It does

19    seriously concern the Court if, in fact, there is an ongoing

20    representation by Williams & Connolly because even though I

21    am told -- by the way, did you participate in that

22    litigation at all, in the Symphony litigation?

23         MR. RIVERA-SOTO:  Not at all.

24         THE COURT:  Were you involved either as an attorney

25    or a witness, a co-counsel, anything at all in that

1      litigation?

2              MR. RIVERA-SOTO:  None whatsoever.  The only thing

3      I knew about that litigation is what has appeared in the

4      popular press.  I am like a member of the public in that

5      regard.

6              THE COURT:  Okay.

7              Have you ever consulted with any of the people from

8      Williams & Connolly regarding that litigation?

9              MR. RIVERA-SOTO:  No.

10             THE COURT:  All right.

11             What is the status of that litigation now?

12             MR. RIVERA-SOTO:  Your Honor, I was informed this

13     morning by the general counsel of Ballard Spahr that that

14     case has been settled, and that the engagement of Williams &

15     Connolly has been terminated.

16             THE COURT:  So the case is over.

17             MR. RIVERA-SOTO:  The case is over.

18             THE COURT:  Okay.  Well, that changes the analysis

19     a little bit.

20             So Williams & Connolly is not involved as an

21     attorney for your law firm?

22             MR. RIVERA-SOTO:  As I was advised by our general

23     counsel, Williams & Connolly is no longer engaged

24     representing Ballard Spahr.

25             THE COURT:  And the underlying litigation has been

1    settled?

2            MR. RIVERA-SOTO:  And the underlying litigation has

3    been settled.

4            THE COURT:  Okay.

5            MR. RIVERA-SOTO:  I should note, your Honor, that

6    during the pendency of that representation, Williams &

7    Connolly did appear adverse to Ballard Spahr, adverse

8    lawyers, in an action in the U.S. District Court in the

9    District of Columbia.

10           THE COURT:  Did they raise the issue of the

11   conflict there?

12           MR. RIVERA-SOTO:  No.

13           THE COURT:  Were they representing your firm at

14   that time?

15           MR. RIVERA-SOTO:  Yes.

16           THE COURT:  In the Symphony case?

17           MR. RIVERA-SOTO:  Yes.

18           THE COURT:  How long did that litigation, the other

19   litigation go on?

20           MR. RIVERA-SOTO:  It went on for a couple of years.

21   I can give you the docket number.

22           THE COURT:  Please give me that docket number.

23           MR. RIVERA-SOTO:  It will just take a moment.

24           MR. POLLOCK:  Would you like it, Justice?  I have

25   it here.

```
 1                    MR. RIVERA-SOTO:  I have it.
 2                    The case is Howard Town Center Developer, LLC
 3          versus Howard University, and then there is a third-party
 4          defendant, Castle Rock Partners, LLC.  The docket number is
 5          13-1075.  It was before Chief Judge Beryl, B-e-r-y-l,
 6          Howell, H-o-w-e-l-l.  It was decided after trial by an order
 7          and opinion dated --
 8                    THE COURT:  This is while they were representing
 9          you in the Symphony case?
10                    MR. RIVERA-SOTO:  Correct.  This was --
11                    THE COURT:  And when was it decided?
12                    MR. RIVERA-SOTO:  August 14th.
13                    THE COURT:  What year?
14                    MR. RIVERA-SOTO:  This year.
15                    THE COURT:  Okay.
16                    The last question, the same question I asked you
17          about Fox Rothschild:  Do you have any bias for or against
18          the Williams & Connolly firm by virtue of the fact that they
19          had represented your firm in connection with this other
20          litigation?
21                    MR. RIVERA-SOTO:  None whatsoever.  My only
22          knowledge of Williams & Connolly is what one acquires, or at
23          least in my case, over 40 years of practicing law, and I
24          would think that they are -- if they are up to their
25          reputation, that they are very fine lawyers, and it would be
```

```
 1        my pleasure to work with them.

 2                THE COURT:  Thank you very much.

 3                Have a seat.

 4                MR. RIVERA-SOTO:  Thank you.

 5                THE COURT:  Counsel, who is going to speak?

 6                Is it going to be you, Mr. Assaf?

 7                MR. ASSAF:  I think Mr. Ryan is going to say

 8        something first, and then if you allow me, I would then

 9        address the argument, your Honor.

10                THE COURT:  Well, I am a little concerned about two

11        issues.

12                MR. ASSAF:  Sure.

13                THE COURT:  One, that this issue of conflict never

14        arose in connection with another case, which was an active

15        litigation for a long time.  This is news to the Court, so I

16        would like to hear you on that.

17                Now, secondly, does the analysis change since you

18        are no longer representing them, or Williams & Connolly is

19        no longer representing them in connection with the Symphony

20        litigation, and doesn't that just change the analysis all

21        together on the objections that have been raised, because

22        what was raised to this Court was a question of a conflict

23        of interest, so whoever wants to address it, I am willing to

24        hear it now.

25                MR. RYAN:  Thank you, your Honor.
```

1          Your Honor --

2          THE COURT:  Restate your name, please.

3          MR. RYAN:  Robert E. Ryan, Connell Foley, for the

4     Cahill defendants.

5          Your Honor, I am here today representing the Cahill

6     defendants, not Ballard Spahr, not Wililiams & Connolly.

7          And Justice Rivera-Soto is ineligible to serve as

8     the special discovery master in the presence of the conflict

9     unless the conflict is disclosed, which it has been, and

10     properly by Williams & Connolly, and there was a unanimous

11     waiver --

12          THE COURT:  That is not the case when no longer

13     representation exists.

14          MR. RYAN:  This is the first time we have heard.

15          THE COURT:  But the point is, if that is in fact

16     the case, that is not the analysis.  The waiver is not

17     necessary.  That ship sails.

18          The question then becomes:  Under the circumstances

19     where an attorney has priorly represented a client, is there

20     a conflict now, if he is not representing the client in a

21     matter that is adverse to the client or substantially

22     involved the same matter.  None of those things under, I

23     think it's 1.9, even applies here.

24          MR. RYAN:  I think the analysis is that the

25     lawyers, as maybe the Court, has to confer with the client,

1     namely Cahill, as to what their feelings are as to whether

2     or not they now feel comfortable with this special discovery

3     master maintaining this position.

4           I don't think it is fair candidly, Judge, to say:

5     Oh, guess what, that case is now over and all of these

6     concerns and all of these --

7           THE COURT:  Rule 1.9 of the Rules of Professional

8     Conduct, which is what is on point here and what the Court

9     is concerned about is:  A lawyer who represented, past

10    tense, a client in a matter shall not thereafter represent

11    another client in the same or substantially related matter

12    in which that client's interests are materially adverse in

13    the interest of the former client unless the former client

14    gives consent.

15          None of those things are applicable here now.

16          MR. RYAN:  I think what is applicable here now,

17    your Honor, respectfully is the statute, Rule 53 and the

18    formal opinions of the ABA on ethics with regard to retired

19    judges sitting as special discovery masters.  The analysis

20    isn't the same analysis that you make for a lawyer

21    respectfully, Judge.

22          The law is clear.  There must be full disclosure,

23    if a sitting judge is now going to participate in the case

24    when he is represented by one of the lawyers in the case,

25    who has had an attorney-client relationship, and there must

1          be unanimous consent by all of the parties.

2                  We are standing here today, your Honor, and two of

3          the three parties in this case, a case which we all know is

4          very complex and very contentious, two of the three parties

5          do not consent.  Cahill does not consent.  BASF does not

6          consent.

7                  I respectfully suggest that while we can argue the

8          nuances of maybe what this new information may mean, it

9          doesn't change what is best for this case.  This case needs

10         a special discovery master who has no conflicts, who has no

11         ties to any --

12                 THE COURT:  Where is the conflict here?  Recite the

13         conflict for me.

14                 MR. RYAN:  He has an attorney-client relationship

15         with Williams & Connolly.

16                 THE COURT:  His firm --

17                 MR. RYAN:  Not just his firm --

18                 THE COURT:  -- had a prior --

19                 MR. RYAN:  -- him, Justice Rivera-Soto, standing

20         here today, has an attorney-client relationship with

21         Williams & Connolly.

22                 THE COURT:  He does not.  Where is it?

23                 MR. RYAN:  He has told your Honor that the case has

24         been settled.  I have no idea --

25                 THE COURT:  And that the employment of Williams --

```
1        well, you are telling me to disbelieve that representation.

2        Is that what you are telling me?

3               MR. RYAN:  No, I'm not.

4               THE COURT:  So what are you telling me?

5               He is telling me the representation has been

6        terminated, and this conflict has never been raised before.

7        Isn't that a little strange to you?

8               MR. RYAN:  What conflict?

9               THE COURT:  Williams & Connolly represented, they

10       are involved in adverse litigation representing separate

11       clients --

12              MR. RYAN:  Judge, that is a whole different issue.

13              The minute your Honor appointed Justice

14       Rivera-Soto, Williams & Connolly did what the RPC required

15       them to do.  They notified everybody.  They disclosed to

16       everybody that there was an attorney-client relationship

17       between Williams & Connolly --

18              THE COURT:  Which they didn't do before the other

19       Chief Judge.

20              MR. RYAN:  Judge, you don't know, respectfully, you

21       don't know if there had been waivers in that other case.

22              THE COURT:  All right, Counsel.  Finish your

23       argument respectfully.

24              MR. RYAN:  Okay.

25              My point, Judge, is that as we stand here today,
```

```
 1          the Cahill defendants do not consent to Justice Rivera-Soto
 2          serving as the special discovery master.
 3               I do not believe that this information changes the
 4          entire analysis, and I suggest, your Honor, that this case
 5          would be better served with an independent objective special
 6          discovery master, who has no ties to the parties, no ties to
 7          the lawyers.  This case is going to be difficult enough as
 8          it is.  I respectfully suggest that that would be the
 9          appropriate procedure.
10               THE COURT:  Thank you.
11               Is there anybody who wants to address the Court?
12               MR. ASSAF:   May it please the Court, Gene Assaf
13          on behalf of BASF.
14               Thank you, your Honor, for devoting the time to
15          this.
16               As an initial matter, the disclosure that I guess
17          within the last few days, the Symphony case settled, and
18          Williams & Connolly's relationship was severed is, in fact,
19          new information that would have been at least disclosed in
20          the affidavit that is required under the code, under 455.
21          And, again, the affidavit has never has been submitted, so
22          we are actually -- this is the exact situation that the
23          affidavit and the code and the statute hopes to avoid, that
24          lawyers show up, and the special master discloses things
25          that have not been disclosed prior to this, and there is not
```

1        a chance to confer with clients and assess them, and that is

2        also why the consent has to be done in writing, so that

3        there is not this rush to appoint on new information.

4               THE COURT:  Let me ask you a question.

5               If, in fact, the employment of Williams & Connolly

6        has terminated, and that case no longer exists, and this

7        case has nothing to do with that case, it's not involving

8        the same matter, it's not adversely affecting the same

9        matter or the client, where is there a requirement legally

10       that you can point this Court to that you need the consent?

11              MR. ASSAF:  Sure, your Honor.

12              Rule 53 of the Advisory Committee Conduct first

13       says the disqualification standards are strict, so we are

14       not talking about a liberal interpretation of conflicts and

15       fiduciary duty laws.

16              As the Court well knows, again, I am just hearing

17       about this.  But even under well established ethical rules,

18       such as the Hot Potato, a lawyer still owes a fiduciary duty

19       to a client after that termination of the relationship.

20              So, again, assuming the relationship was terminated

21       this morning, Williams & Connolly still owes a fiduciary

22       relationship and a duty under both Pennsylvania and New

23       Jersey ethical rules.

24              THE COURT:  Right, which the rule acknowledges and

25       says, because of that fiduciary - it doesn't say these

```
 1        words - but obviously because of the fiduciary duty, the
 2        lawyer shall not thereafter represent another client in the
 3        same or a substantially related matter in which that
 4        client's interests are materially adverse to the interests
 5        of the former client, unless the former client gives
 6        consent.
 7              So it acknowledges that.  There is some continuing
 8        obligation, but the question is:  Does it under the
 9        circumstances of this case, if in fact -- listen, I do agree
10        with you that this coming to the Court at the last minute
11        does throw sort of a monkey wrench in the whole situation
12        because I didn't know until today.  I was willing to
13        undertake a different analysis and hear arguments in a
14        different context, but if, in fact, there is no longer a
15        relationship between the Spahr firm and the Connolly firm as
16        attorney/clients, where is the conflict here in serving as a
17        special master in a case, where he is not mediating the
18        case, not trying to settle the case in any way.  He is
19        trying to, you know, put -- this is a former representation
20        of not even the specific judge, of someone in the judge's
21        law firm or the judge's law firm on a collection matter.  I
22        mean, it is a little different, isn't it?
23              MR. ASSAF:  So, your Honor, I actually think it is
24        not, the more I have this discussion with you.
25              First of all, I would like to address the threshold
```

```
 1          issue of whether this is a representation of a judge.  It
 2          clearly is.  Under New Jersey and Pennsylvania partnership
 3          rules, Williams & Connolly's representation was of the
 4          Ballard Spahr --
 5                    THE COURT:  I agree with you there --
 6                    MR. ASSAF:  -- okay, so he had --
 7                    THE COURT:  -- I am acknowledging that.
 8                    MR. ASSAF:   -- so he had an attorney-client
 9          relationship, and then again, if you look --
10                    THE COURT:  All I am saying is in determining or
11          informing the Court of the extent of a conflict, of a
12          potential conflict, clearly there would be something that
13          the Court should look at if the partner at Williiams -- I
14          mean, if there was some kind of partnership issue, and he
15          himself was being represented, plus the firm, or something.
16          But anyway this is the firm --
17                    MR. ASSAF:  But, your Honor --
18                    THE COURT:  -- I think it is the same thing for the
19          purposes of the analysis, so I will give you that one.
20                    MR. ASSAF:  Okay.
21                    So he had an attorney-client relationship until
22          this morning, okay?
23                    He was appointed under the Court's order, okay?  At
24          least the threshold appointment occurred two or three weeks
25          ago, okay, without an affidavit of conflicts and without an
```

1    affidavit of disclosure, which is required under 28 USC 455

2    and Rule 53.

3           So even assuming that was disclosed then, under the

4    analogous Hot Potato rule, and under the commentary to both

5    the statute and Rule 53, they posit the situation where what

6    happens if he is already the special master, and two years

7    into the case a conflict develops, and --

8           THE COURT:  That's happened in the past.  It

9    happened in the Eastern District of Pennsylvania case --

10          MR. ASSAF:  Correct.

11          THE COURT:  -- and the special master by the way in

12   that case was allowed to stay.

13          MR. ASSAF:  Correct.  Because what the Court says,

14   even though there are requirements under the statute,

15   judicial cannons are stripped, there is a balancing test

16   after the special master has already put in time and effort,

17   and so that is why I say on this one, your Honor, it is not

18   actually a closed case.  He has put in zero time on this

19   matter, and it is much closer to the line of the Hot Potato

20   rule, where he is saying now I am trying to address the

21   conflict and step back, but we don't have to address that

22   because he hasn't put in two years on the case, and the

23   balancing test is much different.

24          Here you have a situation, where up until this

25   morning, there was clearly, and everybody would agree, a

```
 1        conflict.  I don't hear anybody arguing that up until this
 2        morning, there wasn't a conflict.
 3              So now three weeks after the appointment, they try
 4        to undue the conflict, and what --
 5              THE COURT:  Wel, he hasn't started to do any work
 6        at all --
 7              MR. ASSAF:  Pardon me?
 8              THE COURT:  -- this is not analogous to some other
 9        situations where work has begun as a special master.
10        Nothing has been done.
11              MR. ASSAF:  Correct.
12              THE COURT:  And, by the way, there was also, and I
13        did ask, when we did the conflicts check or where we asked
14        Justice Rivera-Soto to do the conflicts check, one of the
15        issues that we have is this pro hac vice thing, right?
16              MR. ASSAF:  Right.
17              THE COURT:  Where the Williams & Connolly name did
18        not come up in the docket list.
19              MAGISTRATE JUDGE DICKSON:  It's not shown on the
20        list.
21              THE COURT:  It did not show on the list.
22              So the record should be clear about what happened
23        there, because in fairness to Rivera-Soto, the docket list
24        did not have the Connolly law firm in there until it was
25        brought up, and it was brought up right away, and we
```

1     addressed it right away.

2               MR. ASSAF:  Yeah.  I want to be clear on the

3     record, your honor.

4               With respect to that issue, there could be no

5     complaint.  That was not Justice Rivera-Soto's fault and

6     so --

7               THE COURT:  I just wanted the record to show that,

8     because it is not like he was trying to hide it.

9               MR. ASSAF:  Correct.

10              So we have a situation, where at least as of last

11    week, there was an attorney-client relationship with

12    Williams & Connolly and Rivera-Soto, and, your Honor --

13    Justice Rivera-Soto, I'm sorry.

14              And with all due respect, your Honor, I ask

15    yourself to put yourself in your situation.  If Williams &

16    Connolly was representing you up until this morning, you

17    wouldn't come in today and say, now I could hear this case.

18              Under the strict rules, under Kensington by the

19    Third Circuit, where they say:  Given all of the other

20    options available for judicial officers, let's err on the

21    side of somebody that doesn't create the appearance of some

22    impropriety or conflict.

23              And so if your Honor came in this morning and said,

24    Williams & Connolly no longer represents my family, I can

25    hear the case, I don't think you would do that.

1          And he -- and Justice Rivera-Soto is governed by

2     the same cannons as you're governed by.  I don't think you

3     would do it, your Honor, and I am asking that this judicial

4     officer not also be exempted from those rules.

5          I just can't imagine under the Third Circuit's

6     analysis in Kensington, where Judge Garth says, we agree

7     this is an eminent jurist, when he is talking about Judge

8     Wolin in trying to mediate the asbestos situation, but he

9     said:  The events that have happened would give a reasonable

10    observer questions about how this process is going to work

11    going forward.  And, remember, that is when Judge Wolin had

12    already put in years into the case.

13         Here there has not been a single hour put into the

14    case.  So I come back to:  Can't we find a former federal --

15    a former judicial officer who has no connections to the

16    parties and is willing to undertake this.

17         And given where we are today in equipoise, why

18    would you hire somebody, who at least as of a couple hours

19    ago, was represented by Williams & Connolly?

20         Your Honor, I think that conflict to your first

21    question was real without disclosing joint defense

22    communications, there is a reason why Williams & Connolly

23    isn't arguing today.  They are recused from this situation,

24    and so that should again tell you all you need to know on

25    the conflict issue, that one party's law firm has decided

1    that they can't speak on behalf of another client because of

2    what was a fiduciary relationship.

3            And with all due respect, your Honor, I think that

4    should give the Court pause as to what the underpinnings are

5    of Rule 53 and the judicial cannons, and I don't think the

6    ABA opinion, if you looked at it and posed this question

7    under the ABA opinion, that they would say, well, as long as

8    the judge discloses the client relationship and terminates

9    it during the case or on day one of the case, it is fine.

10           I don't think they are the guideposts that have

11   been set up analytically by the Third Circuit or by the ABA

12   rules.  The reason that the rules committee said strict

13   adherence to the rule is the governing principle is for this

14   very situation.  It is not to try to say, well, it is close

15   enough.

16           With all of the judicial officers out there, let's

17   try to find one --

18           THE COURT:  Well, I tried, and there have been

19   objections.  There was an objection to Judge Brown on

20   grounds that were not raised to the same Judge Brown when he

21   was appointed before Judge Wolfson.  None of those issues

22   about, you know, the Jams issue with the trust and none of

23   those issues came up, but there were objections to Judge

24   Brown.  Judge Brown chose not to continue to be a master.  I

25   did not take him out.  I don't know why anybody had the

1    misconception I took him out.  He just, after all the

2    objections were raised, he said, you know what, if it is

3    going to be this contentious, I don't want to.  And then

4    that was an issue.

5            I now appointed Justice Rivera-Soto.  There appears

6    to be an issue.  This one I thought had some validity to it.

7    I think the situation has not changed.  I have to give that

8    some thought.

9            Anything else?

10            MR. ASSAF:  Well, since we brought up Judge Brown,

11    I expect a minute on Judge Brown.

12            I understand that he took himself out, but knowing

13    the reputation of Judge Brown, if he knew there was a

14    situation where there was a need for him, he has no

15    connections to the parties, no attorney-client relationships

16    with the parties, and the Jams decision that was forwarded

17    to your Honor, with all due respect, that was a frivolous

18    objection.  We now know that because of what was said to

19    Judge Wolfson, totally frivolous objection, because the

20    plaintiffs were proposing --

21            THE COURT:  I am not going to reargue Judge Brown

22    now.  I am not.  He is no longer in the case, and I didn't

23    take him out.

24            MR. ASSAF:  So then, your Honor, again, I know this

25    is under the rubric of Justice Rivera-Soto, but Judge

```
 1        Pisano, Judge Bassler, I could go on with some other judges
 2        who --
 3                  THE COURT:  I bet you right now, if I said Judge
 4        Pisano, someone is going to object.
 5                  You are going to object, right?
 6                  MR. RYAN:  I would have to confer with my client.
 7                  MR. ASSAF:  But, your Honor --
 8                  THE COURT:  Judge Pisano used to be in his law
 9        firm --
10                  MR. ASSAF:  -- correct --
11                  THE COURT:  -- so I mean, it's --
12                  MR. ASAF:  -- but that is the distinction, though.
13        I think the courts have looked at the differences between
14        somebody who has a connection with a law firm, okay, in
15        which there are rules regarding payouts, et cetera, and
16        leaving that law firm versus the situation where there is an
17        attorney-client relationship, and the fiduciary relationship
18        continued even post termination, I think they are
19        analytically separate, and so that is why we are talking
20        about somebody whose son or daughter is at a law firm or is
21        a paralegal at a law firm, that is a different conflict, and
22        even the rules treat it differently, right?
23                  You come out and you disclose this.  It is on the
24        record, and people say no problem.
25                  Under the judicial cannons, this type of disclosure
```

 1    has to be not only in writing in an affidavit, but then the
 2    parties get a chance to go back and submit their objections
 3    in writing, and I think, again, that goes to the rules
 4    committee's decision about how they are going to handle
 5    these situations.
 6            So, your Honor, I would ask that if there is any
 7    consideration of this going forward, that we get an
 8    affidavit of disclosure from Justice Rivera-Soto.  I hate
 9    doing this, but I think we would have to submit an expert
10    affidavit under the ABA rules showing why this conflict, and
11    I would want to talk to the expert, since I just found out
12    this information, but I think the expert is going to say,
13    this conflict is still relevant because it is not a conflict
14    of lawyers like representing a party against Ballard Spahr,
15    it is a conflict of attorney/client issues, and I think that
16    we would like to be heard on that, your Honor, and that is
17    the whole purpose of the statute and Rule 53 requiring an
18    affidavit of disclosure.
19            I'm sorry I went on so long, your Honor.  I am
20    happy to answer any questions, and I appreciate your time.
21            THE COURT:  Anybody else want to address the Court?
22            MR. POLLOCK:  Briefly, your Honor.
23            Jeff Pollock, Fox Rothschild, your Honor.
24            Our belief -- our position is that this is
25    completely within your discretion, that whatever decision

1    you make or respect, we will abide by.

2            The rule that nobody mentioned to date is 3.17D,

3    which is the New Jersey judicial rule, non code judicial

4    conduct.  And what it says as far as Fox Rothschild is

5    concerned is that -- and this was adopted last year, Stuart

6    Rabner, Chief Justice of New Jersey Supreme Court, signed

7    the order, that for seven years, the time period is, that a

8    court, a judge should recuse himself.  Justice Rivera-Soto

9    has now passed that almost twice, so that will take care of

10   the Fox Rothschild one.

11           As to the -- I -- I -- let me tell you where I

12   agree with my colleagues on the other side.  I think the

13   standard is the appearance of impropriety, not an actual

14   conflict, because this is in essence an extension of your

15   office, your Honor.

16           That being said and done, the question is the one

17   you pointed to, which is 1.9D, is it basically the same or a

18   substantially related matter.

19           It is not.

20           I agree with Mr. Assaf's argument in part, that

21   this relates to the question of the appearance.  How does it

22   look?

23           And, first of all, I don't know because I wasn't

24   quick enough to hear when, in fact, the deal went down with

25   regard to the termination of Williams & Connolly.  I just

```
 1    don't know, and perhaps that will require some
 2    investigation.  But if the question as a matter of law, and
 3    this is Third Circuit law, is the standard is:  What will an
 4    objective member of the public think, and is there an
 5    appearance of impropriety.
 6          And I think an objective member of the community
 7    would say, well, clearly, as to the Fox Rothschild one,
 8    there is a rule.  It was just adopted last year.  He has
 9    passed the standard by twice, so that one is out of the way.
10          Now, we are down to the question of:  Is there a
11    problem with him serving on any large law firm of over 500
12    lawyers on a case where he was not involved in.  This is a
13    fee collection dispute, and it has been settled.  It's done.
14    He had no involvement in it.  He has no participation in it
15    and no knowledge of it, other than what the general counsel
16    told him and what's in the papers.
17          Does that really color his ability to honorably and
18    candidly rule for or against either side?
19          I think the answer is a reasonable person would say
20    no.
21          Every lawyer, you, yourself, your Honor, and every
22    lawyer has some connections to the political community to
23    their practice of law.  That doesn't mean that we can't
24    stand -- we can't work as -- argue in front of you, appear
25    before you.  You may like my arguments.  You may dislike my
```

```
 1    arguments.  But the fact is I will respect your decision,
 2    and I think a member of the public would look at Justice
 3    Rivera-Soto and say, this is a guy who has passed the first
 4    rule.  Let's get rid of the Fox Rothschild one.
 5              Now, the question is:  Is there any merit to the
 6    question of this case, where he had no involvement, and the
 7    case is settled and done.
 8              I think the answer is the average person would say
 9    no.  If that is the case, then let's just look for somebody
10    who never really practiced law because that is the only
11    person who is ever going to satisfy this group.
12              So respectfully, your Honor, I think that this is
13    again within your discretion.
14              If you have any questions, I will be glad to answer
15    them, if I can.
16              Thank you, your Honor.
17              THE COURT:  Thank you.
18              Can I talk to you a minute?
19              MR. ASSAF:  Your Honor, may I just alert you to one
20    footnote I found in the ABA opinion --
21              THE COURT:  Yes, you may in a second, please.
22              (Chief Judge confers with Magistrate Judge)
23              THE COURT:  Let me ask you a question.
24              MR. POLLOCK:  Yes, your Honor.
25              THE COURT:  You had raised an objection regarding
```

1     Judge Brown earlier in the proceedings just because he was

2     raised, real quick, have you stepped back from that

3     objection or not?

4            MR. POLLOCK:  We raised it to -- we did not object

5     to Judge Garret Brown on the basis of skills, criteria,

6     qualifications, background, none of that stuff.

7            The Supreme Court Advisory Committee wrote two

8     opinions within two months.  The second one was the one that

9     says Jams cannot perform legal services in New Jersey, and

10    the question that I did not address was what Mr. Assaf, and

11    you had a brief discussion, was well, then how can we

12    raise -- how can Mr. Placitella raise the issue of a Jams

13    mediator in New Jersey and the distinction is as follows.

14           In this case it is a class action.  Therefore, it

15    assumes, and everybody has agreed, New Jersey law applies to

16    this case.  That was the argument that the Third Circuit

17    asked us point blank.  We agreed with New Jersey law.  That

18    case is an MDL, a Multi-District Litigation, and in the MDL,

19    it assumes the law of each individual plaintiff.  There are

20    no New Jersey plaintiffs in that case, so there is a

21    question under the two advisory opinions.

22           The first advisory opinion, which was issued -- I

23    forget the date, your Honor, but let's say it was a month

24    and a half before the one related to Jams.  That one said

25    that the -- there's a -- we don't want Avo and some of these

1        other legal advertising services in New Jersey, the reason

2        being is that you don't want to have non lawyers sharing

3        fees with lawyers under New Jersey ethics rules --

4                THE COURT:  My only question was, you are still

5        holding to your original objection.

6                MR. POLLOCK:  We're raising our initial concern

7        again.  Nothing against the man individually --

8                THE COURT:  That's all I wanted to know.

9                MR. POLLOCK:  -- I just wanted you to understand,

10       your Honor, that the -- I know it is late, and I appreciate

11       it.  I just didn't like the tone that Mr. Placitella was

12       talking out of both sides of his mouth.

13               The reason is an MDL is different than a class and

14       therefore, we maintain that distinction because there are no

15       New Jersey plaintiffs in the MDL, so he's not practicing --

16       those people would not.  But also Chris to his credit said,

17       Judge, look, here is what I as liaison counsel have been

18       asked to give you.  I am telling you there are these two

19       advisory committee opinions, and I think that that was

20       exactly the right thing to do.

21               Is it a difference that makes a difference between

22       a class and an MDL?

23               That is something for the judge to decide.  He did

24       the right thing.

25               THE COURT:  Thank you.

1          You wanted to say something or supplement

2     something?

3          MR. ASSAF:  Yes, your Honor.

4          You raised the question to me in our conversation

5     about what the timing is.  Good question, right?  Like how

6     long would it last, would he have to be -- how long does the

7     aftermath of the attorney-client relationship last.

8          And, again, I'm just hearing this, so I am reacting

9     on my feet, but I looked at the ABA opinion, Footnote 16,

10    and I think it addresses this issue.  It says:  New York

11    Advisory Committee on Judicial Ethics, Opinion 5-143, Super

12    Note 3 stated that a judge's recusal obligation expires two

13    years after the judge last consults the lawyer on the matter

14    giving rise to disqualification.

15         So going back to our earlier discussion, where we

16    agreed now that the representation of Williams & Connolly

17    was a representation of Justice Rivera-Soto, at least under

18    New York ethical cannons, the sunset on that would be two

19    years as opposed to a couple of hours, so that is why I

20    would suggest, your Honor, we are way -- we're far away from

21    having the discussion of whether we are at 18 months, and is

22    that is long enough.

23         THE COURT:  Isn't that at the end of the day really

24    what counsel just said, that the analysis now is the

25    appearance of impropriety, and whether or not we need the

1       guideline of that as set forth by the Third Circuit of

2       whether an average person looking at the facts and

3       circumstances would think that there is a potential bias

4       here?

5                  MR. ASSAF:  I want to think that through.  I think

6       that is partially correct, but not fully complete.  The

7       reason it's not complete is because those cases that he has

8       referred to about the appearance of impropriety don't

9       address the fiduciary aspect of this, and it goes to your

10      Honor's first set of questions here about Williams &

11      Connolly being on the other side of Ballard Spahr in other

12      cases representing clients.  That is the difference I am

13      trying to get at here.

14                 It's not clients -- Williams & Connolly here is

15      representing Justice Soto as opposed to representing just

16      one of Williams & Connolly's clients against Ballard Spahr,

17      and that is why the appearance issue doesn't get you all the

18      way there.  It goes to this analysis of what the fiduciary

19      aspects are, and that is why I come back to the New York

20      opinion on a two-year presumptive rule.

21                 Again, your Honor, I am happy to look at the ABA

22      opinions more closely, if we get the affidavit, but I think

23      that is going to be in line with other judicial cannons and

24      ethics.

25                 On Justice Brown -- on Judge Brown --

1          THE COURT:  I don't need to hear about Judge Brown

2     any more.

3          MR. ASSAF:  Okay.  Fair enough.

4          Thank you, your Honor.

5          THE COURT:  So I was, and in fact, I think I still

6     am potentially ready to rule in connection with this matter.

7     I have heard everybody tell me their thoughts.  I don't know

8     that any additional briefing may be necessary, but I do

9     agree with counsel that in light of his revelation today, I

10    would rather not shoot from the hip, if you will, on this

11    new issue.  I was ready to rule under the old circumstances.

12    I think regardless of what counsel has said, I think this

13    does change the analysis somewhat.

14          I think, Justice Rivera-Soto, you are going to be

15    required to submit a disclosure, so that I can look at that

16    in the right context.  Give me all of the information and

17    the parties all of the information necessary pertaining to

18    this representation and your involvement or lack of

19    involvement therein, when it ceased, the circumstances when

20    it ceased, et cetera, so that I have all of the information

21    in front of me.

22          Upon receipt of that, I don't know that any

23    additional briefing is necessary.

24          What is there?

25          I will tell you what.  I will allow each side to

```
 1    give me, no longer than three pages, one for each side, that
 2    is it.  It is not that complicated of an issue.  It is very
 3    narrow.  I think there's an enormous amount of discretionary
 4    power that the Court has in connection with this matter that
 5    I want to look at.
 6          I do think, look, there are no objections to
 7    Justice Rivera-Soto's ability in connection with this
 8    matter.  There is no, I don't think, any issue of bias that
 9    has been raised by one side or the other.  I really don't
10    think that that is on the table either.
11          The only issue really is or originally was the
12    question of whether or not there was a conflict of interest.
13    Now that has changed a little bit, and then there is the
14    question of this appearance of impropriety under the
15    circumstances of the case, and rather than just put
16    something on the record today, I will get into the weeds of
17    that and I will make a decision.
18          If for some reason I decide, and don't assume from
19    what I am about to say that I have made a decision that I am
20    going to remove Rivera-Soto, because as of right now I have
21    not made that decision, and he is still appointed the
22    special master in this case as of today until this issue
23    gets resolved.  He is not going to do any work until then
24    for obvious reasons.
25          Justice, how long would it take you to get this
```

```
1      disclosure to me?

2                MR. RIVERA-SOTO:  Today is Tuesday.  I will have it

3      to you by Thursday.

4                THE COURT:  Okay.

5                So by next Friday, I want whatever briefing you

6      guys are going to do, one set.  I don't want back and forth,

7      so like the old Appendix N, one set of letters, so that I

8      can consider this.

9                In the event that the Court were to remove Justice

10     Rivera-Soto from this case, I am going to, and I will issue

11     an order in accordance with that, but I am going to give you

12     a very short amount of time for you all to confer and come

13     up with one.

14               If you don't, I will continue to appoint a special

15     master until we get this done.  We need to move this

16     forward.  I will give you a list.  Like you said, there are

17     plenty out there.  I think I found a very good one, and I

18     would like to keep him, if it is appropriate, so that is

19     where we are.

20               So I am going to give you a very finite time in the

21     event that I decide to remove Rivera-Soto.  It may very well

22     be that I disagree respectfully with counsel for the defense

23     on this issue that has been raised today and I keep him in

24     the case.  Then you are free to do whatever you want with

25     that decision.  But at the end of the day, this case needs
```

1          to be moved forward.

2                    With regard to the issues of the discovery, I am

3          going to leave this matter to Judge Dickson to deal with,

4          but I think he is going to tell you that we need to decide

5          this issue on the special master first, but in any event --

6                    MAGISTRATE JUDGE DICKSON:   I am done.

7                    (Laughter)

8                    THE COURT:   I guess that is what he was going to

9          say.

10                    (Laughter)

11                    -- which is going to be a week.   I mean, I'm not

12          going to sit on this.   Within the next two weeks, this issue

13          will be resolved one way or the other.   It is either going

14          to be resolved by me allowing Rivera-Soto to continue, or

15          removing Rivera-Soto and giving you four or five days to

16          come up with a different one, or appointing another one,

17          which hopefully will not have any issues for anyone.

18                    All right.   Thank you.

19                    MR. POLLOCK:   Thank you, your Honor.

20                    MR. ASSAF:   Thank you, your Honor.

21                    (The matter concluded)

22

23

24

25