```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRCT OF NEW JERSEY
                       Civil No. 11-01754(JLL)


- - - - - - - - - - - - - - - -X
                                :
KIMBERLEE WILLIAMS, et al.,     :    TRANSCRIPT OF
                                :      PROCEEDINGS
          Plaintiffs,           :
                                :    September 5, 2017
          -vs-                  :
                                :
BASF CATALYSTS, LLC, et al.,    :
                                :
          Defendants.           :    Newark, New Jersey
                                :
- - - - - - - - - - - - - - - -X




B E F O R E:


          MAGISTRATE JUDGE JOSEPH A. DICKSON,
          UNITED STATES DISTRICT MAGISTRATE JUDGE
```

     Pursuant to Section 753 Title 28 United States Code, the
following transcript is certified to be an accurate record
as taken stenographically in the above-entitled proceedings.

s/Phyllis T. Lewis, CCR, CRCR
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
              PHYLLIS T. LEWIS, C.C.R., C.R.C.R.
       Official Court Reporter - United States District Court
                  Newark, New Jersey  07101
                       (732) 735-4522

```
 1         A P P E A R A N C E S:

 2                   COHEN PLACITELLA ROTH, PC
                     127 Maple Avenue
 3                   Red Bank, New Jersey 07701
                     732-747-9004
 4                   BY:  CHRISTOPHER M. PLACITELLA, ESQ.
                          MICHAEL COREN, ESQ.
 5                        -and-
                     FOX ROTHSCHILD, LLP
 6                   997 Lenox Drive
                     Lawrenceville, New Jersey 08648
 7                   609-348-4515
                     BY:  JEFFREY M. POLLOCK, ESQ.
 8                   Attorneys for Plaintiffs.

 9
                     ROBINSON MILLER, LLC
10                   One Newark Center
                     Newark, New Jersey 07102
11                   973-690-5400
                     BY:  JUSTIN T. QUINN, ESQ.
12                        -and-
                     KIRKLAND & ELLIS, LLP
13                   601 Lexington Avenue
                     New York, New York 10022
14                   212-446-4930
                     BY:  EUGENE F. ASSAF, ESQ.
15                        DANIEL A. BRESS, ESQ.
                          PETER A. FARRELL, ESQ.
16                   Attorneys for Defendant,
                     BASF Catalysts, LLC.
17

18                   CONNELL FOLEY, LLP
                     85 Livingston Avenue
19                   Roseland, New Jersey 07068
                     973-535-0500
20                   BY:  ROBERT E. RYAN, ESQ.
                          -and-
21                   WILLIAMS & CONNOLLY, LLP
                     725 12th Street NW
22                   Washington, DC 20005
                     BY:  DAVID BLATT, ESQ.
23                   Attorneys for Defendant,
                     Cahill, Gordon & Reindel, LLP
24

25
```

```
 1         A P P E A R A N C E S (Continued):

 2              HEROLD LAW
                25 Independence Boulevard
 3              Warren, New Jersey 07058
                908-647-1022
 4              BY:  ERIC TUNIS, ESQ.
                Attorneys for Defendant,
 5              Thomas D. Halket.

 6

                MARINO, TORTORELLA & BOYLE, PC
 7              437 Southern Boulevard
                Chatham, New Jersey 07928
 8              973-824-9300
                BY:  JOHN A. BOYLE, ESQ.
 9                   KEVIN H. MARINO, ESQ.
                Attorneys for Defendant,
10              Arthur A. Dornbusch, II

11
                ROBERT SOKOLOVE, ESQ.
12              Third-party Defendant,
                Alan Rothenberg.
13

14              MC CARTER & ENGLISH, LLP
                100 Mulberry Street
15              Newark, New Jesey 07102
                973-622-4444
16              BY:  DAVID R. KOTT, ESQ.
                Attorneys for Third Party Witness,
17              Johnson & Johnson.

18

19

20

21

22

23

24

25
```

```
 1                THE COURT:  Back on the record with a Magistrate
 2       Judge.
 3                Okay.  How can I help you?
 4                MR. ASSAF:  Sir, your Honor, Gene Assaf on behalf
 5       of BASF.
 6                And while I appreciate the plaintiffs' notion that
 7       maybe we can conduct more meets and confers, I think
 8       regrettably we need some guidance on what a meet and confer
 9       constitutes, because it seems to be different than any other
10       Federal District Court I practiced in.
11                The plaintiffs' meet and confer last time consisted
12       of not having any letters beforehand, but saying they would
13       tell us what happens on the phone.
14                We got on the phone.  They read for about nine
15       minutes a prepared statement, and then much like
16       congressional committee testimony, refused to answer
17       questions and said I refer you to my prior statement that I
18       just read.
19                And then we said:  Well, can we have a copy of the
20       statement?
21                And they said:  We will think about it.
22                And so to me, that is not a meet and confer.  If I
23       am mistaken, I am happy to learn a new way to do it.  But
24       unless we can actually do things like say, do you have any
25       documents that Devon was withholding from Wygard's files
```

1     regarding settlements with other companies, unless we can
2     actually talk about that, then we are not going to make any
3     progress.  We are just going to continue to exchange
4     letters, and I guess written statements that are read to us
5     over the phone.
6             So that is why I am saying the meet and confers, I
7     am happy to do it, but we need some guideposts as to whether
8     this is just congressional testimony and referred back to
9     the written statements.
10            Thank you, your Honor.
11            THE COURT:  Mr. Placitella?
12            MR. PLACITELLA:  I actually offered to meet in
13    person, to spend as much time as necessary to go over the
14    issues.  You know, Mr. Assaf thinks that he dictates what
15    happens, and if he doesn't like what he hears, he writes
16    letters to the Court complaining.
17            We had a meet and confer on the phone.  Yes, I did
18    read him sections, not a nine-paragraph or nine minutes.  I
19    did point him to sections of Judge Linares' opinion, which
20    we thought supported our position.
21            I also indicated to him that we have a legitimate
22    difference of opinion on what was intended.  It was our
23    understanding that the special discovery master would
24    resolve those issues between us.
25            I asked him specific questions about moving

1    forward.  Asked him to go back and look at his privilege
2    logs or whatever and have another meeting or another phone
3    call or meet in person because that is what I thought
4    actually you were supposed to do, go meet in person with all
5    of these people and see if we can come to some resolution
6    where people aren't on the phone interrupting each other,
7    and instead he wrote me a letter.
8            So I do believe that we have satisfied our
9    obligation.  Just because Mr. Assaf says here is my
10   question, answer it now, does not mean it is a legitimate
11   question and does not mean that when he gets my response,
12   and he doesn't like it, that that gives rise that he can ask
13   the question again over and over and over without me saying
14   to him, gee, I already answered that question.
15           So that is the purpose of a special discovery
16   master I thought, because if they won't meet with me in
17   person, and it has to be on the phone with all kinds of
18   people and people interrupting each other, then we will do
19   it with the special master.
20           I still hold open the offer to try to resolve the
21   things that we can resolve and to tee up for the special
22   discovery master those things that we can't resolve.
23           Because Mr. Assaf asks a question, and I tell him I
24   am on vacation, and he gets agitated because I am on
25   vacation for a week, that I didn't respond to him fast

1    enough, does not mean that I am not trying to meet and
2    confer.  But, you know, it is the summer.  We do try to take
3    some leisure time, although I am not very good at it, I will
4    say, but, you know, I continue to offer.  I want to move the
5    case forward, but under the guidance of the Court within the
6    frame outlined by Judge Linares and the Third Circuit and
7    with the assistance of a special discovery master.
8           Thank you.
9           MR. ASSAF:  Three points, your Honor.
10          As you know all too well, this case came to a
11   grinding halt for discovery.  Plaintiffs took the position
12   that BASF forfeited its discovery rights, that Rule 26
13   should be read differently in this case, that the Third
14   Circuit ruled that no discovery need to take place except as
15   to the defendants, and they stopped all document
16   productions, didn't produce anything.
17          Judge Linares' opinion came out, and the meet and
18   confer as part of the written statement is that they now
19   believe that when Judge Linares' opinion, when combined with
20   the Third Circuit findings, means that they don't have to
21   produce any other documents.
22          So think about that.  You lived through this for a
23   year.  Their view was we didn't have to produce anything.
24   We are going to brief all of this for Judge Dickson and
25   Judge Linares.  We briefed it all.  With all due respect, I

```
 1      think Judge Linares basically rejected a lot of the
 2      defendants' positions on Rule 26 and what the Third Circuit
 3      said.
 4              And now their position is, to be clear, and he
 5      could correct me, if I'm wrong on this, we are not going to
 6      produce a single other document, and Judge Linares' opinion
 7      means we don't have to revise our privilege lot in one
 8      instance, even though Judge Linares said there is a limited
 9      waiver, their view is there is no waiver.
10              In fact, they told the newspaper that Judge Linares
11      ruled in the plaintiffs' favor finding there is no waiver.
12              So, your Honor, we do.  We have a significant
13      issue.  I am happy to meet with Mr. Placitella.  I met with
14      him in your conference room months ago, but we have not made
15      any progress, and we are not going to make any progress
16      unless somebody says Judge Linares meant what he said in his
17      opinion.
18              And, for example, the settlement documents, there
19      are collateral issues out there, did the named plaintiffs
20      settle with other talc companies.
21              That will be relevant for damages.  That will be
22      relevant obviously to see what was told to them and why they
23      were settling those cases, because we now know that the
24      named plaintiff in this case settled with a talc company
25      that had asbestos in the talc and knew.  She knew that, and
```

```
 1        she took a thousand dollars.
 2                 That is certainly within the rule, within Rule 26
 3        of relevance.
 4                 Can this lead to relevant evidence?
 5                 And so they say, no, we are not going to produce
 6        those.  There is no order from Judge Dickson requiring us to
 7        produce anything.  We only have this analytical framework
 8        from Judge Linares.  But until we get an order, we are not
 9        producing anything.
10                 Your Honor, I am happy to sit and talk with Mr.
11        Placitella about that, but until we get some guidance that
12        Judge Linares meant what he said, we are not going to get a
13        single document from them.
14                 MR. PLACITELLA:  Your Honor, I am not going to go
15        through this.  I will tell you that that is not an accurate
16        description of what happened.
17                 We do have a material disconnect on what the import
18        of the decision was.  We are happy to discuss it at length
19        with the special discovery master, but that is not what
20        transpired between us, and I am just going to leave it at
21        that.
22                 THE COURT:  I don't think it is time for me to tell
23        you what Judge Linares' opinion means.  If we had not had
24        the problems that we had with the two special masters that
25        have come into this case, I don't think we would be sitting
```

```
 1     here today unless it was on an appeal of the special
 2     master's ruling, and I just think it is not judicially
 3     efficient for me to interpret the decision without having
 4     actually the special master yet confirmed and solidified or
 5     whatever the right word is, we are in flex a little bit.
 6             So I am going to decline to do it, even though I
 7     think I could shed some light on this, I just don't think it
 8     is appropriate at this time for me to do that, other than to
 9     say that it means discovery will go forward in this case.
10     To the extent anybody thinks there is no discovery --
11             MR. PLACITELLA:  That is not what I even implied --
12             THE COURT:  -- from both sides --
13             MR. PLACITELLA:  All right.
14             THE COURT:  -- from both sides.
15             I am going to be that ridiculously general, okay?
16             I am going to be happy -- no, I shouldn't say that
17     at all.  Forget it.
18             The special master I am sure will be able to solve
19     all of your problems.
20             (Laughter)
21             MR. POLLOCK:  Judge Dickson, can I ask you a
22     procedural question?
23             THE COURT:  I just wanted to say one more thing
24     about meeting and conferring, and I think you both disagree
25     with what each one of you just said, which, of course, is
```

1      the problem we always have when we are trying to define meet
2      and confer.
3              Just as a practical matter, what happens is we,
4      Magistrate Judges, hear this problem all of the time.  Maybe
5      sometimes not in quite such stark terms, but the parties
6      say, well, we tried to meet and confer, and they wouldn't
7      listen or they wouldn't respond, or they wouldn't do this,
8      or they wouldn't do that, and then we wind up, as you know,
9      asking you to go to our jury room or our conference room.
10             So, Mr. Assaf, you asked for the guidance on meet
11     and confer.  It can be done over the telephone, although
12     even when I do conference calls with a lot of attorneys, I
13     kind of share Mr. Placitella's frustration with a lot of
14     people on a conference call and people starting talking, and
15     I can't tell who is saying what.
16             So in a case this big perhaps, I am not going to
17     order you to do this, but I think it would be a good idea to
18     try to meet in person.  A lot of times you ask me to hear
19     from you on a regular basis.  Maybe you should set up a
20     monthly meeting or bimonthly, and I am not going to dictate
21     the terms of just getting together to try to go through the
22     issues.  And once you sit around the conference table and
23     can't work it out, then the special master will have an idea
24     where that needs to go, either whether he's sitting there
25     with you or whether you just letter brief it, whatever.

```
 1            I don't have to tell you how to do this.  Meet and
 2       confer does not mean dictating a position, and perhaps just
 3       from a practical point of view, I think in-person and
 4       face-to-face meet and confer works better.
 5            Is there anything else that I can really help you
 6       with at this point in time?
 7            MR. PLACITELLA:  No, your Honor.
 8            Thank you.
 9            THE COURT:  Mr. Assaf, what is it that you want me
10       to tell them to do?
11            In the words of Mr. Placitella, do you want me to
12       tell him just to agree with you?
13            MR. ASSAF:  No.
14            THE COURT:  I am being tongue in cheek.  I mean
15       that for the record.
16            MR. ASSAF:  That would be okay, too.
17            No, listen, I am happy to meet.  In fact, I think
18       we wanted to meet, and that's fine.  I am happy to meet here
19       every time for a meet and confer.  I'm happy to meet in
20       person.
21            Our problem is actually getting the meet and confer
22       and then getting actually a dialog about it.  So I am happy
23       to do that.  In fact, I will propose that we meet in person
24       in Newark.  That would be great.  We will just come to the
25       courthouse or come to somebody's office here in Newark and
```

```
 1    do it.  That would be great.  I think if that is Mr.
 2    Placitella's issue, we will address that right off the bat.
 3              I think, again, the SDM, the Special Discovery
 4    Master, I think there are a couple outstanding issues that
 5    are still hanging out there regarding disclosure issues and
 6    the sanction issues, and I am assuming there are special
 7    discovery master's in the first instance, not Judge Dickson
 8    in the first instance.
 9              THE COURT:  Right now -- well, it was my
10    understanding that everything would go to the special
11    master, but I think what this needs is once we get the
12    special master issue straightened out, we have a meeting
13    with the special master.
14              If you say those are the ten issues, and you all
15    agree, or the special master recommends that I deal with any
16    of them, we will go that way.  I don't want to start picking
17    and cherry picking right now.
18              MR. ASSAF:  Fair enough, your Honor.
19              Thank you.
20              THE COURT:  Now I have a question for you, probably
21    for you, Mr. Assaf.
22              You referred a couple of times during the hearing
23    with Judge Linares about the requirement for an affidavit,
24    and I think you said Rule 53.  We are trying to figure out
25    what exactly you may be speaking of.  I hate to admit it on
```

```
1        the record, but I don't know.
2                MR. ASSAF:  I am looking at Rule 53 --
3                THE COURT:  Is it a civil rule, a federal rule?
4                MR. ASSAF:  Federal Rule of Civil Procedure 53 and
5        the commentary in the 2003 Committee Notes on Subdivision
6        (a)(2) and (a)(3).
7                THE COURT:  Okay.
8                MR. ASSAF:  I also think there is a affidavit in
9        the commentary to 28 USC 455, but I am not sure on that one,
10       and then the ABA opinion also makes reference to the
11       affidavit and I can get you --
12               THE COURT:  The ABA opinion --
13               MR. ASSAF:  -- it's ABA Opinion 07-44, dated
14       August 9th, 2007.
15               THE COURT:  Okay.  That it is.
16               Thank you.
17               MR. ASSAF:  Thank you.
18               MR. PLACITELLA:  Thank you, your Honor.
19               MR. POLLOCK:  And that cites in turn to 28 USC 455,
20       that that one really cites to, then cites over to this one.
21               MR. ASSAF:  Your Honor --
22               THE COURT:  Off the record.  We're off the record.
23               (Discussion held off the record)
24               (The matter concluded)
25
```