# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Eugene F. Assaf, P.C.
To Call Writer Directly:
(202) 879-5196
eugene.assaf@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

November 6, 2017

**VIA E-MAIL**

Christopher M. Placitella
Cohen, Placitella & Roth, P.C.
127 Maple Avenue
Red Bank, NJ 07701

Brendan E. Little
Levy Konigsberg LLP
800 Third Avenue, 11th Fl.
New York, NY 10022

    Re:    *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*

Dear Messrs. Placitella and Little:

    We write to address troubling new information about files and information in the Bevan Law Firm's possession, custody, and control, which was disclosed by plaintiffs' counsel, Mr. Placitella, for the first time at the parties' November 1, 2017 meet-and-confer discussion in Philadelphia. This new information is inconsistent with what we and, more importantly, the Special Discovery Master were led to believe regarding the Bevan firm's files. As discussed below, we have now learned that the Bevan files are largely (if not entirely) in electronic form, which fundamentally changes the burden arguments that Bevan and plaintiffs advanced before the Court in their briefing over the past nine months and at the October 26, 2017 motions hearing. We also have now learned that the Bevan firm possesses a database or spreadsheet that identifies cases, plaintiffs, alleged injuries, and potentially other information about previously filed asbestos claims involving Engelhard or BASF. Given the significance of this information, we believe that we are obliged to inform the Court without meaningful delay.

1.    The Bevan Firm's Files

    (a)    Bevan's and Plaintiffs' Prior Claims About Bevan's Files

    As you are aware, on November 21, 2016, BASF served a subpoena on the Bevan Law Firm calling for the production of relevant documents and information from Bevan's files

## KIRKLAND & ELLIS LLP

Christopher M. Placitella
Brendan E. Little
November 6, 2017
Page 2

concerning asbestos cases Bevan previously filed against Engelhard or BASF.  In response, the Bevan firm and plaintiffs claimed (among other things) that it would be unduly burdensome to produce responsive documents.  As of this letter, Bevan still has not produced any documents or information in response to BASF's subpoena.

Despite communicating about Bevan's files for nearly twelve months, neither counsel for Bevan nor counsel for plaintiffs ever explained that most, if not all, of Bevan's files were scanned years ago and are now stored electronically.  Rather, counsel for plaintiffs and the Bevan firm repeatedly said or suggested that the Bevan firm's files are maintained in hard copy as part of closed files in offsite storage that would be highly burdensome to retrieve, review, and produce.

These claims about Bevan's files began last year, when plaintiffs' counsel asked for an additional 30 days to respond to BASF's discovery requests on the grounds that plaintiffs' counsel would have to travel to Ohio to gather the requested documents and information.  *See* 10/14/16 Hr'g Tr. at 9:6-12.  Soon thereafter, the Bevan firm objected to requests in BASF's subpoena because of the purported "tremendous burden of reviewing closed files."  *See, e.g.*, 12/9/16 Bevan Obj. to BASF Req. for Prod. No. 19.  The Bevan firm further stated that many documents would be produced only if they were "readily and reasonably locatable" and could be connected to a particular plaintiff.  *See id.*

Several months later, in response to BASF's motion to enforce its subpoena, Bevan claimed that "[c]ompliance would require the review of ***extensive paper*** and electronic files."  4/6/17 Bevan Resp. to BASF Mot. to Enforce (ECF No. 279) at 9-10 (emphasis added).  Plaintiffs' brief in support of Bevan's position further contended that "the manpower, time and expense associated with scouring through 3,000 former asbestos claimant files …. would completely and utterly disrupt a boutique size law firm like Bevan." *Williams v. BASF, et al.*, Case No. 17-MC-00015, 4/3/17 Pls.' Resp. to BASF Mot. to Enforce (ECF No. 9) at 27.

   (b)  The October 26, 2017 Motions Hearing

In light of the foregoing statements about the Bevan firm's files, it is not surprising that the defendants and the Court all mistakenly believed at the October 26, 2017 motions hearing that the Bevan files were in a storage facility in Ohio.  For example, the Special Discovery Master stated: "I am assuming that whatever is in the files, particularly since these are 25-year-old files, that ***before they were sent to storage***, they were purged because that is common practice in every courtroom.  You take out all extraneous documents and you only preserve that which is important." 10/26/17 Hr'g Tr. at 97:15-20 (emphasis added).  Based on this understanding and the Bevan firm's claimed burden, the Special Discovery Master limited the Bevan firm's document production to only 1% of its purported 3,000 client files, which would be selected arbitrarily by ***sticking a "hand in the box and pull[ing] out a file."***  *Id.* at 152:22-153:4 (emphasis added).

## KIRKLAND & ELLIS LLP

Christopher M. Placitella
Brendan E. Little
November 6, 2017
Page 3

At no point during the hearing did Bevan's counsel or plaintiffs' counsel inform the Special Discovery Master that Bevan's files are not in physical boxes but are instead in electronic format. Mr. Placitella reinforced the Court's misapprehension by requesting—and then receiving—30 days "to go to Ohio" to randomly sample the files. *Id.* at 153:5-10.

(c) Plaintiffs' November 1, 2017 Disclosure That the Bevan Firm's Files Are Stored Electronically

On November 1, 2017, after both the Bevan firm's counsel and plaintiffs' counsel had sought and obtained relief from the Special Discovery Master based on the premise that Bevan's files are in hard copy storage, Mr. Placitella informed the defendants that ***all or the vast majority of Bevan's files were scanned years ago***, are available in electronic format, and are organized or labeled with the name of each plaintiff. Mr. Placitella also indicated that the Bevan firm possesses in electronic format not only its own files, but also the files of several other Ohio attorneys who previously filed Emtal cases against Engelhard.[1] Mr. Placitella said he was disclosing the information because there are no boxes to pull files from, thus acknowledging that the Special Discovery Master's orders were based on an incorrect premise about the nature of the Bevan firm's files.

Although Mr. Placitella claimed this was new information, it is difficult to understand how Mr. Placitella could not have known at the time of the October 26, 2017 hearing—and, indeed, much earlier—that Bevan's client files were available in electronic format. He has been working on this case with Bevan for more than six years. More pointedly, plaintiffs' counsel reviewed and collected some Bevan files a year ago in response to BASF's first set of discovery requests. Indeed, Mr. Placitella received another extension of time for document production last year when he told the Court that "it requires trips to Cleveland and other places." 10/14/16 Hr'g Tr. at 9:6-8. Mr. Placitella therefore must have (or should have) known Bevan's files are kept in electronic format.

Mr. Little, as counsel for the Bevan firm, likewise must have (or should have) known that the Bevan firm's files are stored electronically. At a minimum, Mr. Little and his firm were obligated to conduct a reasonable inquiry before repeatedly making representations to the Court about the burden of reviewing the files. Yet as of this letter, neither Bevan nor its counsel has informed BASF or the Court that the Bevan firm's files are stored electronically and that the premise for the Court's instruction to pull files from boxes was incorrect.

---

[1] It remains unclear whether these files from other attorneys are included in the count of 3,000 client files that Bevan claimed to possess in its briefing on BASF's motion to enforce. See 4/6/17 Bevan Resp. to BASF Mot. to Enforce at 10.

## KIRKLAND & ELLIS LLP

Christopher M. Placitella
Brendan E. Little
November 6, 2017
Page 4

    (d)    Unanswered Questions About Bevan's Files

Although plaintiffs' counsel has now provided us with some information about the Bevan firm's electronic files, many questions remain unanswered. We therefore ask that you respond to the following questions as soon as possible so that we can evaluate the impact of the information on the discovery plan for this case:

1. What percentage of the Bevan firm's asbestos-injury client files exist in electronic format?

2. Are the files for all five named plaintiffs represented by Bevan available in electronic format?

3. Are any or all of the electronic files word searchable?

4. Are files maintained by individual plaintiff or by case (*i.e.*, are co-plaintiffs filed together)?

5. If maintained individually, what steps did you take to determine whether information related to the five named plaintiffs is in the files of other plaintiffs (*e.g.*, co-plaintiffs)?

6. Which law firms provided files to the Bevan firm?

7. What percentage of the files from other law firms are stored electronically?

8. Does the Bevan firm have an index or database for its files, including the files it received from other firms?

2.    The Bevan Firm's Database

In addition to the electronic files discussed above, Mr. Placitella also told us at the November 1, 2017 meet-and-confer discussion that the Bevan firm maintains some sort of database or spreadsheet of all its prior asbestos-injury cases. According to Mr. Placitella, the database or spreadsheet identifies, at a minimum, the name of each plaintiff and may also include other relevant information, such as the plaintiffs' claimed injury.

Prior to November 1, neither plaintiffs' counsel nor the Bevan firm's counsel told the defendants that this database exists. Like the Bevan firm's electronic files, this revelation is troubling given plaintiffs' claims that they lack information regarding putative class members and therefore need discovery from BASF on this score. *See, e.g.*, 10/26/17 Hr'g Tr. at 75:20-23 ("If

# KIRKLAND & ELLIS LLP

Christopher M. Placitella
Brendan E. Little
November 6, 2017
Page 5

there is a database, where they admit who is in and who is out based upon the representations that were made or the unavailability of evidence, that would dramatically curtail whatever would be looked for from the defendants.").

When we said that the Bevan firm should produce its database, Mr. Placitella responded that it is subject to the attorney-client privilege and work-product doctrine. This is inconsistent with plaintiffs' position that the Cahill database most be produced, even though it is concededly attorney work product. Moreover, the Bevan firm has not articulated any basis for withholding the database on privilege grounds. Nor has it explained how the database could still be privileged given the Court's holding that plaintiffs made a "limited waiver that permits Defendants access to previously privileged information that Plaintiffs have put at issue." 8/3/17 Op. at 21. There can be no dispute that plaintiffs have put information contained in the Bevan database and files at issue.[2]

We therefore ask that you provide us with the following information:

1. If the Bevan firm contends that the database or spreadsheet is privileged, what is the basis for that assertion?

2. Given the Court's holding that plaintiffs waived their privilege at least in part, will the Bevan firm produce the database or spreadsheet?

3. Which cases are included in the database or spreadsheet?

4. Which plaintiffs are included in the database or spreadsheet?

5. What categories of information are included in the database or spreadsheet? For instance, does it include the plaintiff's name, the plaintiff's alleged injury, settlement information, the basis for resolution of the plaintiff's Emtal claim, and/or the plaintiff's current contact information?

---

[2] Plaintiffs have alleged that "the Bevan Law Firm also represented thousands of [asbestos-injury clients]" in lawsuits, and "Engelhard, Eastern Magnesia and, eventually, BASF were named in such suits as a co-defendant along with other parties." 7/16/15 2d. Am. Compl. (ECF No. 158) ¶ 224. Plaintiffs further allege that, absent BASF's alleged misconduct, "the Bevan Law Firm's asbestos injury clients … would not have given their consent or authorization to voluntarily dismiss their asbestos claims against BASF" or "to participate in an aggregate settlement with BASF." *Id.* ¶¶ 223, 230.

# KIRKLAND & ELLIS LLP

Christopher M. Placitella
Brendan E. Little
November 6, 2017
Page 6

\*   \*   \*

Given the importance of these issues and their relation to the discovery orders that were just issued by the Court, BASF believes it is obliged to raise the matter with the Special Discovery Master promptly. In the meantime, we ask that you respond to the questions contained in this letter as soon as possible.

We look forward to your response.

Sincerely,

/s/ Eugene F. Assaf, P.C.

Eugene F. Assaf, P.C.

cc:   Counsel for all parties