# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Eugene F. Assaf, P.C.<br>To Call Writer Directly:<br>(202) 879-5196<br>eugene.assaf@kirkland.com | 655 Fifteenth Street, N.W.<br>Washington, D.C. 20005<br><br>(202) 879-5000<br><br>www.kirkland.com | Facsimile:<br>(202) 879-5200 |

November 9, 2017

**VIA E-MAIL**

Christopher M. Placitella
Cohen, Placitella & Roth, P.C.
127 Maple Avenue
Red Bank, NJ 07701

Brendan E. Little
Levy Konigsberg LLP
800 Third Avenue, 11th Fl.
New York, NY 10022

Re:   *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*

Dear Messrs. Placitella and Little:

I write in response to Mr. Placitella's November 8th letter and Mr. Little's November 8th e-mail, which both purport to answer some of my questions regarding the Bevan Law Firm's client files but, in fact, only raise additional questions.

It is difficult to understand how Mr. Placitella was unaware that Bevan's files were maintained in electronic format until after the October 26, 2017 hearing. As experienced class counsel, he has an obligation to investigate and preserve documents that are likely to be relevant to this litigation, including the named plaintiffs' files at the Bevan and Early Firms. In order to discharge that obligation, Mr. Placitella would necessarily need to know if documents existed and what measures were being taken to preserve them. We are now increasingly concerned with what, if anything, class counsel has done to ensure that relevant materials are being preserved and identified. *See, e.g.*, 4/5/17 Holley Dep. at 32:6-8, 64:11-18, 69:12-24 (plaintiff Holley not told "in words or substance" to maintain documents). Please produce to us any and all document retention policies applicable to the Bevan Firm's client files for putative class members. If you refuse to produce these documents based on a claim of privilege or work product, please identify where such memos are logged so that we can move for their immediate production. If no such document retention policies exist, we are, of course, entitled to know that as well.

# KIRKLAND & ELLIS LLP

Christopher M. Placitella
Brendan E. Little
November 9, 2017
Page 2

      Leaving aside the preservation issues, class counsel made it clear to the Court and to the defendants that he intended to travel to Ohio in order to gather documents and put together discovery responses and objections. Indeed, more than a year ago, Mr. Placitella represented to the Court that he needed to go to Ohio to review client files in order to respond to BASF's discovery requests. *See* 10/14/16 Hr'g Tr. at 9:6-8 ("Yes, we have to answer it and it requires trips to Cleveland and other places, so we're going to need a little more time."). It is difficult to understand how Mr. Placitella could have filed a lawsuit, prepared for discovery, and then travelled to Ohio to collect documents, all without appreciating that the Bevan documents were available in electronic form and not in some storage facility.

      It is clear that the Cohen Placitella Firm has a formal relationship, including perhaps even a contractual relationship, with the Bevan Firm in connection with this case. *See* 4/5/17 Holley Dep. Tr. at 19: 9-11) ("Q. … [A]ny relationship, then, with the Williams lawyers would be through Mr. Bevan? A. It's through Mr. Bevan."). More specifically, documents that the Special Discovery Master sent to us on November 7, 2017—which had previously been withheld by class counsel as "privileged"—make clear that the Cohen Placitella Firm has specifically asked for and received consent from the named plaintiffs for the Bevan Firm to "provid[e] documents and testimony" as part of this litigation. *See* PWMS-0001307 at 3. To date, we have not identified any fee-sharing arrangement between class counsel and the Bevan Firm that has been logged or produced. If one exists, we believe it must be produced. If you insist on withholding the agreement under a claim of privilege and logging it, we will move the Court for immediate production consistent with the Court's prior decisions on documents previously withheld by plaintiffs.

      With respect to the Bevan Firm's electronic database of client information, it is clear that you have known about those materials for over a year. Indeed, since you have opened the door and raised the parties' mediation process in your letter, it is only fair to point out that, during the mediation process, you specifically referenced Ohio data on the putative class members' injuries, *e.g.*., what percentages of cases were asbestosis, mesothelioma, etc. We now understand this must have come from the Bevan Firm's database.

      It also bears mention that you represented to the Special Discovery Master that you require access to Cahill's electronic database in order to prepare your motion for class certification. However, it is now clear that you have the data you need from the Bevan Firm's database. Moreover, the Special Discovery Master indicated that similar data, when held by Cahill, constituted attorney work-product that must nevertheless be produced under an appropriate non-waiver agreement. *See* 10/26/17 Hr'g Tr. at 79:17-18, 194:5-13. Plaintiffs and the Bevan Firm cannot simultaneously seek the Cahill database and withhold the analogous Bevan database. Therefore, we ask you to produce the Bevan database by November 14, 2017.

# KIRKLAND & ELLIS LLP

Christopher M. Placitella
Brendan E. Little
November 9, 2017
Page 3

      As to the Bevan Firm's recent arguments that their burden representations to the Court remain accurate, we disagree with the claim that whether a document review "starts from paper or scanned, non-OCR'd images makes little difference." 11/8/17 B. Little E-mail to E. Assaf. Because the images exist electronically, the process of converting them to text-searchable format can be automated, making the electronic files much easier to search and review than paper files in storage. But, in any event, neither Bevan's counsel nor plaintiff's counsel argued to the Special Discovery Master that they needed time to review electronic scanned images.

      Similarly, we still fail to appreciate class counsel's position that this is some trivial issue. We believe that the understanding among all those present was that a manual review of physical paper files was necessary. Indeed, the Special Discovery Master stated: "I am assuming that whatever is in the files, particularly since these are 25-year-old files, that before they were sent to storage, they were purged because that is common practice in every courtroom. You take out all extraneous documents and you only preserve that which is important." 10/26/17 Hr'g Tr. at 97:15-20. The Special Discovery Master directed plaintiffs' counsel to selected files for review by sticking a "hand in the box and pull[ing] out a file." *Id.* at 152:22-153:4. At no point during the hearing did Bevan's counsel or plaintiffs' counsel inform the Special Discovery Master that Bevan's files are not in physical boxes but are instead in electronic format. Mr. Placitella only reinforced the Court's misapprehension by requesting—and then receiving—30 days "to go to Ohio" to randomly sample the files. *Id.* at 153:5-10.

      In short, we have a fundamental disagreement about what was conveyed to the Court, and it appears that we cannot resolve that issue informally. On more granular issues, you have indicated that you are conferring with your client regarding whether the Bevan Firm will make available for deposition its records custodian in order to resolve some of the outstanding questions at issue here. With respect to (1) document retention memos, (2) any fee sharing agreement between the Cohen Placitella Firm and the Bevan Firm, and (3) the Bevan database, please let us know in short order whether you will agree to produce. I am pleased to discuss these issues by telephone anytime today, but I ask for a written response by the close of business today in all events.

      We look forward to your response.

      Sincerely,

      /s/ Eugene F. Assaf, P.C.

      Eugene F. Assaf, P.C.