# EXHIBIT "A"

## ROBERT H. DAVIS, JR.
ATTORNEY & COUNSELOR AT LAW
121 Pine Street, First Floor
Harrisburg, Pa. 17101-1209
*Member: Pennsylvania, West Virginia & Georgia (inactive) Bars*

Phones: (717) 238-6861 / (800) 401-6861 / Cell: (717) 580-8941   E-Mail: ethiclaw45@gmail..com

November 20, 2017

BY REGULAR U.S. MAIL
Robert Sokolove, Esq.
Sokolove Gross & Sagoskin PC
2080 Cabot Blvd W., Suite 201
Langhorne, PA 19047

### Re: Williams, et al. V. BASF Catalysts LLC, et al.
Expert Guidance Regarding Court Direction to Turn Over Files of Former Clients of Pennsylvania Attorney Allen Rothenberg

Dear Attorney Sokolove :

Thank you for the invitation to provide you and your client, Philadelphia, PA Attorney Allen Rothenberg, ["Attorney Rothenberg"] and his firm guidance and, if necessary, expert opinions and testimony, regarding an October 27, 2017 Order by Special Master Rivera Soto ["the Order"] to turn over office files of Attorney Rothenberg relating to a number of former clients he represented long ago in claims versus BASF Corporation, which files are now long since closed and stored in bulk in a storage facility and without known organization.

I will attach my CV to explain the qualifications I have to provide expert opinions on matters of attorney ethics and, more broadly, the law of lawyering as it applies to actions and duties of attorneys, particularly attorneys who are licensed and who practice principally in the Commonwealth of Pennsylvania. I understand that the background case against BASF handled by Attorney Rothenberg was a class action or mass tort matter. One aspect of my private practice has been to advise individual attorneys involved in mass tort matters as to specific ethics and practice challenges of those types of case and to advise groups advertising nationally for clients to be represented in those types of cases.

The concern of Attorney Rothenberg has arisen in a case in which he is not counsel to any party, nor is he or his firm a party. The underlying litigation, commenced by Cohen, Placitella & Roth and the Fox Rothchild firm on behalf of six (6) putative class representatives, alleges that BASF/Englehard and its attorneys fraudulently concealed the evidence that its industrial talc was contaminated with asbestos, inducing potentially thousands of tort claimants nationwide to either dismiss their claims against BASF/Englehard or to settle them for nuisance value.

The putative class representatives were represented in their underlying tort cases by the Bevan Firm or the Early firm. No client of the Rothenberg firm has been involved in the commencement or prosecution of the current litigation to date, but numerous of them may be class members at some later date, if a suitable class is certified. The mere filing of a putative class and expected filing of a potential certification motion, possibly in December, do not work a waiver of the Rule 1.6(a) duty to protect client confidential information or of the attorney-client privilege that would support the Order of Special Master Rivera-Soto in my view..

The particular problem for the Rothenberg Firm, as I understand it, is that BASF served subpoenas for production of **all** of the client files, believed to represent some 1,800 in number and for all of the Bevan client files, estimated at 3,000, which numbers represent files well beyond those of the several class representatives they represented. You advise that this type of discovery at this stage of potential class action cases, absent putative class members is extraordinary prior to class certification and even after class certification, discovery of absent class members is generally limited. In this case the subpoena issued to the Rothenberg Firm is excessively burdensome as the files in question, if they even exist, are up to twenty-five (25) years old and location and ability practically to obtain client authorizations for clients still living and competent to consent, as well as location of estate representatives where necessary to obtain consent will be extremely difficult. I understand that the files are in a storage facility and, as long-since closed and relating to no ongoing matter, were stored in no particular order and in very large boxes. In such circumstance, a person accessing such files cannot know which files to "pull" and pulling a random 18 such files as required by Special Master Rivera-Soto's Order - or pulling a single file - for delivery to a non-Rothenberg attorney would be a violation, whether the client is still alive or not, of Rule 1.6(a) and attorney-client privilege law. In addition to expected attorney-client privileged and work product privileged materials, the files would necessarily, in the normal course of defective product litigation claims, contain other confidential and sensitive information such as medical records and social security numbers of the clients. The ordered random selection of any file and its delivery as described in the Order without specific client consent would offend both Rule 1.6(a), Pa Rules of Professional Conduct, 42 Pa.C.S.A. and attorney-client privilege law absent client consent. I have expressed to you my strong opinion that filing of a potential class action, particularly when Attorney Rothenberg's former clients have no present connection with that filing, does not work a waiver of the Rule 1.6(a) confidentiality duty or of attorney-client or work product privileges.

You have asked my guidance in the form of expert opinion as to whether the order of the provision of the entirety, or even a representative sample of, such former client files to others may be obeyed, as a matter of law and legal ethics, without further action on the part of the Rothenberg Firm to protect such files.

-3-

Applicable Rules of Professional Conduct and Law

Your primary concern is quite properly that under the PA Rules of Professional Conduct, specifically Pennsylvania Rule 1.6(a) Attorney Rothenberg and all in his Philadelphia office are under a strict and mandatory duty to guard client confidential information indefinitely:

> Rule 1.6 Confidentiality of Information
> (a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated paragraphs (b) and ( c ).
> ...
> (d) A lawyer shall make reasonable efforts to prevent the inadvertent disclosure of, or unauthorized access to, information relating to the representation.
> (e) The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated.
> Rule 1.6, Pa.R.P.C., 42 Pa.C.S.A.

While Pennsylvania's Rules of Professional Conduct do contain the provision that attorneys have strong duties of candor to all courts, Pennsylvania has not adopted the provisions of ABA Model Rule 1.6(b)(4) (2000) which Rule provides that an attorney **may** disclose - i.e. has discretion, not a duty, to disclose - confidential client information if ordered by a court.. Thus, Attorney Rothenberg has a duty, even when all the client files he may hold are closed matters and are quite old, to continue to protect the entire content of files he holds for every one of the 1,800 or more clients he formerly represented. Even if clients are deceased, that fact does not end the duty not to reveal and to protect confidential information under Rule 1.6, nor does death end the solemn duty of Pennsylvania attorneys to guard with the highest fidelity client confidences covered by attorney-client privilege in every file. This high duty applies to evaluation of the "solution" of picking only eighteen files of the 1,800 that may exist. The mandatory duty strongly to resist the delivery of client files as ordered by Special Master Rivera-Soto would exist just as strongly if only a single client file were at issue. Attorney Rothenberg cannot "pick" any file, much less 18, without a fully-informed waiver by the client, a nearly- impossible task, in fact..

I note that while the specific legal action in which the subpoena the Order were issued is in U.S. District Court in New Jersey, Attorney Rothenberg and his files are in Pennsylvania. Accordingly, Attorney Rothenberg is obligated, by the applicable Rule of Professional Conduct, Rule 8.5 Disciplinary Authority: Choice of Law, to obey the more restrictive provisions of Pennsylvania Rule 1.6(a), (d) and (e) than may exist elsewhere. Applying the provisions of Rule 8.5, it is important that he is not involved in the proceeding in New Jersey as party or as counsel and, as provided in Rule 8.5(a) and (b)(2), the conduct ordered by Special Master Rivera-Soto in the

-4-

Order would occur in Pennsylvania and the predominant effect, i.e. the massively-intense efforts to locate client files, to identify clients living and dead, to actually locate clients to see which would or would not provide Attorney Rothenberg and his firm with authorization to release confidential information, would all focus on and directly involve only files in Pennsylvania.

As noted, the "order of court" exception does not exist in Pennsylvania and likely in New Jersey, so Attorney Rothenberg and his firm are obligated to guard client confidences and resist the order of Special Master Rivera-Soto under the confidentiality requirements applicable under Pennsylvania law, failing which they could be exposed to criticism and ethical liability. I note that New Jersey has also rejected the "order of court" exception to its version of Rule 1.6 and if its conflict of laws provision in Rule 8.5 is similar to that of Pennsylvania and the U.S. District Court, as is normal, has adopted the New Jersey Rules of Professional Conduct, then that Court's Rules also dictate that the Pennsylvania Rule 1.6(a) be respected.

I also again note that Pennsylvania has specific statutory protection for file content that is attorney-client privileged material. 42 Pa.C.S.§5928. As there has been no necessary waiver by clients, or by any other development, of that privilege either, and as death of a client does not end or dilute that privilege the ethical and fiduciary duty of the Rothenberg firm strongly and vigorously to resist disclosure of the files on that basis also exists. Failure of that duty also could have liability repercussions.

Conclusion
Based upon the facts presently known to me and upon the authorities quickly collected as discussed here, it is my guidance to Attorney Rothenberg and my opinion, to a reasonable degree of professional certainty, that Rule 1.6(a) and Pennsylvania attorney-client privilege law protect the documents subject to Judge Rivera-Soto's Order and that the duties of Pennsylvania Rules 1.6(a) (d) and (e) require the Rothenberg Firm strongly to resist, by appropriate and courteous action, and by appeal to judicial officers and courts above Special Master Rivera-Soto, if necessary, the Order of Special Master Rivera-Soto of October 27, 2017, to provide the requested client files, or portions of them, in the New Jersey BASF/Englehard proceeding.

Thank you for the opportunity to be of service.

Very truly yours,

Robert H. Davis, Jr.

Encs: CV of Robert H. Davis, Jr., Esq.
cc:    Lynne M. Kizis, Esq. (w/enc.)

# EXHIBIT "B"

# ROBERT H. DAVIS, JR.
*Attorney & Counselor at Law*
121 Pine Street, First Floor
Harrisburg, Pa. 17101-1209
*Member: Pa., W. Va. and Georgia (inactive) Bars*
(717) 238-6861 / (800) 401-6861     E-Mail: ethiclaw45@gmail.com

## CURRICULUM VITAE OF ROBERT H. DAVIS, JR.

<u>Present Employment</u>: Solo Practice of Law
121 Pine Street, First Floor
Harrisburg, Pa. 17101 - 1209

<u>Education</u>: Vanderbilt University - B.A. 1967
University of Georgia Law School - J.D. 1972
three-year Vasser Wooley Scholar and President
of Athens Legal Aid and Defender Clinic.

<u>Work and Professional Experience</u>:

**Peace Corps** - Secondary School Teacher, Government Secondary School, Jimi, Bagbo Chiefdom, Southern District, Sierra Leone, West Africa, 1967-1969.

**Augusta Office, Georgia Indigents Legal Services** - Summer, 1971 and February and June 1972. (A Founder)

**Associate of D. Landrum Harrison** - Augusta, Georgia, June 1972-January 1973, General practice of law.

**State Bar of Georgia** - Assistant General Counsel, February 1973 to January 1980.
I was the first person to serve full-time as Assistant to the General Counsel of the State Bar of Georgia. In addition to playing a significant role in modernizing Georgia ethics rules at the invitation of the Georgia Supreme Court, I had responsibility for case preparation and UPL and ethics prosecution for the entire state of Georgia. I tried (and won) the first modern-day ethics jury trial in Georgia and tried the first ethics hearing open to the public in Georgia. I also made numerous presentations on ethics and practice management to the bar during the period of my service.

**The West Virginia State Bar** - Bar Counsel, 1980 to September 1986.

In April 1983 the West Virginia State Bar presented me the Award of Merit, its highest award, for my service as their counsel, for my work nationally, including presidency of the NOBC and work with the Conference of Chief Justices and work with the ABA Young Lawyers Division and in West Virginia to urge bar involvement in substance abuse interventions. I advised and represented the Bar of West Virginia as General Counsel, including ethics and UPL prosecutions and in other litigation. I also handled insurance, employment and contract problems which arose. I was principal draftsman of revised and updated disciplinary rules for West Virginia lawyers and was appointed by Chief Justice Thomas Miller to review and recommend improvements in West Virginia's judicial discipline system. My

recommendations for change resulted in significant improvement of the procedures, staff support and credibility of the judicial ethics effort in West Virginia. I wrote and spoke frequently on legal ethics and practice management issues while I served as Bar Counsel.

### Disciplinary Board of the Supreme Court of Pennsylvania
Deputy Chief Counsel September 1986 to August 28, 1992.
Acting Chief Counsel November 1990 to February, 1992.

I supervised, alone and cooperatively with Chief Counsel, a staff of twenty-two lawyers, ten investigators and supporting clerical workers. The Board maintained four district offices, with the Harrisburg office as the administrative center for the system. Major case and litigation supervision (including critique of strategy and of draft pleadings), budgeting, employee supervision and evaluation, personal litigation involvement and rules drafting are some of the duties listed in the job descriptions for Chief Counsel and Deputy Counsel. At the same time I continued my efforts to improve various areas of law practice in Pennsylvania by active participation on Committees of the Pennsylvania Bar Association.

### Solo Practice of Law, Harrisburg, PA.
November, 1992 to present.

Since leaving the Disciplinary Board of the Supreme Court I have engaged in solo practice of law from offices located in Harrisburg, Pa. The practice I engage in is quite varied but increasingly the primary focus is upon advising lawyer, judicial and governmental respondents in Pennsylvania and West Virginia as to defense of ethics charges, provision of ethics advisory opinions to lawyers, government officials and businesses in both jurisdictions and the teaching of ethics to members of the bar and to law students. The practice began as a general practice including minor criminal matters, basic wills, simple real estate transactions, representation of nonprofit corporations, disputes over lost dogs and contract dispute representation as well as service as an expert witness in matters relating to legal malpractice or questions of ethics and disqualification in Pennsylvania Common Pleas and federal district courts as well as state courts in New York, Ohio, Texas and West Virginia. I have served a two-year term as a member of an arbitration panel for the Dauphin County Court of Common Pleas. By 1997 my practice began to focus almost exclusively on consultation with clients on ethics/malpractice avoidance questions, defense of lawyer and judicial and governmental ethics charges and occasional service as an expert witness.

<u>Bar Memberships</u> - The State Bar of Georgia, 1972 (inactive since 1981); The West Virginia State Bar, since 1980; Pennsylvania Bar since 1986, Pa. Bar Association (Professionalism Committee Subcommittee Chair; Professional Liability Committee Co-Chair, 2007; Lecturer, Malpractice Avoidance Effort of the Professional Liability Committee; Recipient of two PBA Special Achievement Awards, May 1992, and April 2002, for writing PBA Response Plan for Mass Disasters and work on the PBA Client and Community Relations Committee; Chair (2000-2003) and Vice-Chair (1998-2000) of the Client and Community Relations Committee; James Bowman American

Inn of Court (elected Master, 2001; Treasurer 2006 -2010); National Organization of Bar Counsel [NOBC] (Pres.'83-'84; Chaired NOBC Committees to evaluate National Discipline Data Bank, 1991 and was the reporter for the NOBC critique of the A.B.A. Kutak Committee Report, 1982; directed annual nationwide salary survey for disciplinary agencies, NOBC; Association of Professional Responsibility Lawyers [APRL]; American Bar Association [Fellow, American Bar Foundation, 2009].

<u>Teaching Positions:</u> - Adjunct Professor of Law, Widener University School of Law-Harrisburg Campus, teaching Professional Responsibility and an Advanced Ethics Problems Seminar [Fall of 1992 - present]; Recipient of the Widener Law School's Adjunct Faculty Distinguished Service Award, 2/2004; course moderator/presenter in mandatory Continuing Legal Education courses in ethics presented statewide by the Pennsylvania Bar Institute and the Pennsylvania Bar Association (well over 125 at last count), West Virginia Continuing Legal Education, as well as for the Bowman Inn, American Inns of Court, Philadelphia Bar Education Foundation, the American Bar Association's Business Law Section, Pennsylvania Defense Institute, Pennsylvania Criminal Defense Lawyer's Association, the Pennsylvania Trial Lawyers' Association, the New Jersey Bar Institute, American Conference Institute, of New York, NY, the mandatory Bridge-the-Gap sessions established by the Pennsylvania Supreme Court (as both author of materials and presenter) and Widener Law School CLE. In many of the teaching assignments relating to continuing legal education, I prepared, co-authored or revised the teaching materials used in the sessions I taught.

<u>Publications of which I am the Principal Author or Editor and Contributor</u>

During my twenty-one years of service as a bar counsel or ethics counsel to three states and as an ethics prosecutor, I did not write more than one or two articles which were published and none were published in the last ten years of that service. However, since entry into private practice one of the focuses of my practice has been practical education of lawyers on ethics and malpractice issues. In that capacity, I have written materials most of which were created for a number of Continuing Legal Education [CLE] providers, a representative list of which writings follows:

- Materials - <u>Views From the Arena - Some Practical Lessons and Rules on Conflicts</u> - Course materials presented in New York, NY in March of 2001 and San Francisco, CA in June of 2001 for the American Conference Institute ethics portion of the program: "Patenting: Genomics and Proteomics."

s   Materials - Attorney Advertising Ethics - Presentation to the annual meeting of the Pennsylvania Association of Trial Lawyers, Hershey, PA. July 6, 2001 and Auto Law Seminars of PaTLA in December of 2001 in Harrisburg and Allentown, PA. and, in upgraded form, to accompany an hour-long video presentation for PaTLA recorded in the summer of 2004 for statewide use.

- Conflicts of Interest in the Non-Litigation Context: article: "Some Practical Lessons from the Real World" - Panel Presentation - American Bar Association Section of Business Law Midyear Meeting, Philadelphia, Pa., March 24, 2001.

- Materials - <u>Fiduciary Requirements for Lawyers in Pennsylvania - Handling Property of Clients and Others</u>, these course materials were prepared in the summer of 2000 with Samuel Miller, Esq. and Edwin W. Frownfelter, Esq. for use in 2001 in the Supreme Court mandatory "Bridge the Gap" seminar for candidates for the Pennsylvania Bar.

- Article, "Supreme Court Announces New Disciplinary Enforcement Rule" <u>Pennsylvania Bar News</u>, March 19, 2001, p. 9. Alerting bar to new Pa.R.D.E. Rule 217(j) restrictions on law-related work by suspended and disbarred counsel.

- Article, <u>Trust Accounts - Handle With Care</u>, September, 1994 issue of <u>The Pennsylvania Lawyer Magazine</u>, page 40. This article has also been published in West Virginia and in the Pennsylvania CPA Association statewide magazine as well, I understand.

S  Article - "Using Lawyer-Experts in Financial Litigation (Part I)," Vol. 14, No. 3, <u>The Practical Litigator</u>, ALI/ABA, May, 2003.

S  Article - "Using Lawyer-Experts in Financial Litigation (Part II)," Vol 14, No. 4, <u>The Practical Litigator</u>, ALI/ABA, July, 2003.

-Article - "Notary Best Practice" - Vol. XXI, Issue 3, <u>Facts & Findings, The Journal for Legal Assistants</u>, November, 2004.

- Book - <u>The Hornbook on Developing & Maintaining Positive Client Relationships</u> - I was a principal editor of, and contributor to, the first edition of this highly successful PBA publication, first printed and released in early 1998, which provides guidance to bar members on building and maintaining positive client relationships.

- Pamphlet - Chair of drafting group, with Samuel Miller, Esq. and Edwin R. Frownfelter, Esq., of the pamphlet <u>Fiduciary Requirements for Lawyers in Pennsylvania</u>, 1997, published and widely distributed to members of the Pennsylvania Bar by Pennsylvania Interest on Lawyer Trust Accounts Board and the Pennsylvania Bar Association. This pamphlet was revised and expanded in 2000 by the same drafting group for the Supreme Court's "Bridge the Gap" seminars for new lawyers, starting in 2001, mentioned above.

-Article, "All DUI's Look Uglier at Quittin' Time", Vol. 10, No. 2, 1998, <u>PACDL Forum</u>, the magazine of the Pennsylvania Criminal Defense Lawyers' organization, describing the impact of a DUI conviction on a lawyer's Pennsylvania law license.

- Materials - Trust Accounting Basics, course materials for August 11, 1993 Widener University Law School CLE program in Philadelphia, Pa. This same program has also been presented, in updated version, to lunch and learn programs of the Dauphin County Bar Association, Harrisburg, Pa. It was since taught on a number of occasions and revised, under the auspices of the Pennsylvania Bar Institute and some sponsoring local bar associations. In the summer of 1996 an expanded version of this presentation was created for the New Jersey Continuing Legal Education Institute and was utilized at two programs presented in New Jersey for lawyers jointly licensed in New Jersey and Pennsylvania.

- Materials - Avoiding Neglect Problems/ Identifying Dangerous Files - This program and related materials developed by me has been given in various forms under the auspices of the Pennsylvania Defense Institute, ( initially at Rosemont College,

12/5/1992), Philadelphia Bar Institute, Pennsylvania Bar Institute, (various locations), West Virginia Bar CLE, (2/27/1993, Canaan Valley Resort, WV) Widener University Law School CLE (8/11/1993), James F. Bowman American Inn of Court (April, 2001, Harrisburg, PA) and the Dauphin County Bar Association. This presentation has been given many times around the state of Pennsylvania as a part of the malpractice avoidance effort of the Pennsylvania Bar's Attorney Liability Insurance Committee malpractice avoidance programs to law firms in-house and as a stand-alone program for local bar associations.

- Materials - A Lawyer's Duty to His Client vs. His Duty of Candor to the Court - First developed for presentation March 25, 1993 at a Widener University Law School CLE program in Hershey, Pa., this presentation has been given under those auspices and numerous other times under the auspices of the Pennsylvania Bar Institute and sponsoring local bar groups to various bar groups, including the Pennsylvania Bar Association Midyear Meeting, Williamsburg, Va., 1/10/1994 and the Dauphin County Bar.

-Materials - Ethics Dangers of Scorched Earth Litigation Tactics: Use of Misrepresentation and Capitalizing on Mistakes of Opponents - for the February 2, 1995 meeting of the National Association of Railroad Trial Counsel, Naples, Fla. Repeated as PBI course, Philadelphia, May 10, 1995, and on other occasions after revision.

-Materials - The New Rules of Lawyer Advertising - For the Pennsylvania Bar Institute program for new lawyers, August, 1994, at Bucknell University, Dauphin County Bar Association (1/10/1995) and repeated for the Pennsylvania Trial Lawyers annual meeting, July 6, 1995 and at Bucknell, August 3, 1995 and West Conshohocken, Pa. November 10, 1995. The program was updated and presented under the sponsorship of the Pennsylvania Bar Institute, most recently in the fall of 1999 in Mechanicsburg, and was given in early Fall of 1998 for the Bench-Bar retreat of the Berks County Bar Association.   These course materials, in updated form, were also selected as part of the first mandatory "Bridge the Gap" orientation to be given to candidates for admission to the Pennsylvania bar in the summer of 2001 and are the basis of a presentations made to the Pennsylvania Trial Lawyers Association Meetings in July of 2001 and December of 2002.

-"Ethics Jeopardy" - Materials and video vignette scripts - Written and produced about 2005, based upon an earlier set of vignettes produced and presented a number of times, including statewide in PA via satellite, the second series of five "ethics jeopardy" vignettes has been presented in numerous venues, including, most recently, twice in WVU CLE Mountaineer Series presentations in 2008 and 2009, as well as a PBI presentation on ethics in Atlantic City, NJ, various bar association annual meetings and at the initial PBI series of presentations.

-Materials - A Primer on Retainers Non-Refundable and Otherwise - Annual Meeting of Pennsylvania Trial Lawyers' Association, Hershey, Pa., July, 1994, Dauphin County Bar (12/9/1994).

-Materials - Law Firm Responsibility: Supervisor-Subordinate Relations and Duties - Oct. 2, 1992, Hershey, Pennsylvania for Widener Law School CLE effort.

-Materials - Corporate Counsel Ethics - PBA Midyear Meeting, Baltimore Md., 1993.

- Materials -  Ethics of Client Communication and Counseling - PBI program, Harrisburg, Pa, December 1994.

- Materials -  Ethics of Bond Counsel Representation - PBI program, June, 1993, Hbg, Pa., repeated summer of 1999, Philadelphia, PA.

- Materials -  Playing a Dangerous Game: Misrepresentation, Mistakes of Opponents, Spoliation and Discovery Abuse in Litigation - For August 21, 22, 1995, PBI

- Materials -  Ethics in Civil Practice 2000 (January, 2000) , Ethics in Civil Practice 2001 (January 2001), Ethics in Civil Practice 2002 (January 2002), Ethics in Civil Practice 2003 (March 2003), Ethics in Civil Practice 2004 (March 2004) Ethics in Civil Practice 2005 (March, 2005) Ethics In Civil Practice 2006( March, 2006) Ethics in Civil Practice 2007 (March 2007)Ethics in Civil Practice 2008 (February/March 2008) Ethics in Civil Practice 2009 (February/March 2009)  - an ethics presentation during the annual program of the Pennsylvania Bar Institute on current developments in civil practice in which I focus on the area of ethics and the law of lawyering presented as a part of the Civil Practice 2000/2001/2002/2003/ 2004/ 2005/ 2006/ 2007/2008/2009/2010/2011 and 2012  programs presented by the PBI in Marco Island, Florida,(2000-2001),  Pittsburgh, Philadelphia, Harrisburg and  telecast statewide annually for Pennsylvania lawyers by satellite network.

- Materials -  Ethics Issues in Tax Practice - Presented to the Pa. Bar Association Tax Institute Program in Philadelphia, PA on November 18, 1999.

- Materials - "Update on the Law of Ethics, 2001" accompanying lecture presented in Morgantown, WV on November 3, 2001, which program was presented by West Virginia Continuing Legal Education as a part of the Mountaineer CLE Series.

- Materials - "The 360 Degree Duty of Lawyers in Litigation: Loyalty to the Client vs. Candor to the Court and Fairness to the Opposition" - WVCLE Litigation Program of February 9, 2002, Canaan Valley Lodge, Davis, WV.

- Materials - "Ethics For Criminal Defense Lawyers" - Joint Annual Meeting of the PACDL and PDA of  PA, Camp Hill, PA, April 19, 2002.

- Materials - "Ethical Issues Relating to Municipal Finance Practice -   Fees, Employment and Conflicts Issues" - Program presented at the annual seminar of the Pa. Association of Bond Lawyers, Harrisburg, PA,   May 23, 2000.

- Materials  - "Using the Lawyer-Expert in Financial Litigation" - Program presented at the Annual Meeting of the Business Law Section of the American Bar Association, Washington, D.C., August 11, 2002.

- Materials - "Ethics Concerns in the Practice of Employment Law" - WVCLE Mountaineer CLE Series, Morgantown, WV, August 31, 2002.

- Materials - "Ethics: Attorney Fees: Professional, Practical and Ethical Considerations" - WVCLE Mountaineer Series, Morgantown, WV August 31, 2002.

B    Materials  - "Ethics: Building a Bullet-Proof Ethics Screen In a Rule-Hostile Environment" - WVCLE Mountaineer CLE Series, Morgantown, WV, October 22, 2003.

| | |
|---|---|
| B | Materials – "Ethics: Do Your Clients Go Out the Window When Your Associates Go Out the Door?" - WVCLE Mountaineer CLE Series, Morgantown, WV, October 22, 2003. |
| B | Materials – "Survey of Ethics and Law of Lawyering" - WVCLE Mountaineer CLE Series, Morgantown, WV, October 21, 2004. |
| B | Materials – "Ethics in Representing Small Businesses" - WVCLE Mountaineer CLE Series, Morgantown, WV, November 12, 2004. |
| - | Materials – "There Ought to Be a Rule - Wait, Maybe There Is" - WVCLE Mountaineer CLE Series, Morgantown, WV, November 2, 2005. |
| - | Materials – "Ethics Update - Riding into the Sunset - With Dignity; Current Developments" -WVCLE Mountaineer Series, Morgantown, WV, November 8, 2007. |
| - | Materials – "Ethics Update" - WVCLE Series, Shepherdstown, WV, June 13, 2008. |
| - | Materials – "Ethics Update" and "Ethics Showdown" presentations - WVCLE Mountaineer Series, Morgantown, WV, October 23, 2008. |
| - | Materials – "Ethics Update" and "Ethics Challenge" - WVCLE Mountaineer Series, Morgantown, WV, October, 2009 and 2010. |
| | - Materials – "Malpractice and Ethics Complaint Avoidance", with Lonnie Simmons, Esq. - WVCLE, Morgantown, WV, Sept. 1, 2012 |
| - | Materials – "Ethics and the Paralegal" - Ethics credit presentation October 13, 2012, Keystone Alliance of Paralegal Associations Annual Meeting, Lancaster, PA |
| - | -Materials – "Fee Practices, Pointers and Traps" with Dana Pirone Carosella, Esq. and Barbara Rosenberg, Esq., PBI Webinar, December 6, 2012. |
| - | Materials –"Ethics Potpourri - What to Do When You Receive that "OMG" Letter" - With Dana Pirone Carosella, Esq. - Pa Bar Institute, programs in Philadelphia and Mechanicsburg, PA 2011; presented again on five occasions in 2012 as part of Ethics Potpourri Series. |

There are other course materials which I authored or to which I contributed at times, or materials which I slightly updated or simply reused without alteration for speaking engagements without creating new materials before this list was last updated and which I have simply forgotten and have not thus listed, but this list is representative.

Rev. 1/2017