


One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: 973.690.5400 Fax: 973.466.2761
www.rwmlegal.com

December 15, 2017

**VIA ECF**

The Honorable Roberto A. Rivera-Soto
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002

**Re: *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.***
**Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

At the November 30, 2017 hearing, it was made clear that the Bevan Firm did not object to producing entries from its client database regarding putative class members, subject to an appropriate confidentiality designation and non-waiver agreement. *See* 11/30/2017 Hr'g. Tr. at 32:15 - 33:4; *see also* 11/29/17 Bevan Ltr. to Court (ECF No. 380) (agreeing to production of Bevan database "for the putative class if the report will be covered by the same non-waiver protection Defendants have sought for their own databases."). As a result, since the November 30 hearing, BASF has been working to reach agreement with the Bevan Firm on confidentiality and non-waiver designations so that production of the Bevan database could be resolved without the Court's intervention.

Although this discovery issue seemed on track for a speedy resolution, plaintiffs' counsel (Mr. Placitella) interrupted BASF's meet-and-confer efforts with Bevan and strongly suggested that Bevan (a non-party) might still offer some objections to avoid producing its database. Thus, over the past two weeks, plaintiffs' counsel (and now Bevan) revisited the Bevan Firm's earlier agreement to produce the Bevan database and tried to carve out the most relevant and critical information—information that could seriously undermine plaintiffs' class certification efforts.

Unlike the six class representatives, each of whom alleges their decedent developed mesothelioma or lung cancer because of asbestos exposure, most of the putative class did ***not*** claim to have asbestos-related mesothelioma or lung cancer. Rather, most of the putative class—and almost all of the 30 plaintiffs Bevan identified under the Court's October 27, 2017 Order—claimed to have a form of non-malignant respiratory disease ("NMRD"), such as pleural plaques. This distinction is critical for a variety of reasons, including (as relevant here) because a plaintiff claiming NMRD would have sought and received substantially less compensation (if any) than a plaintiff claiming mesothelioma or lung cancer. In addition, NMRD claims have been widely criticized because they often were





frivolous or based on suspect diagnoses and litigation practices. *See* Ex. A (Am. Bar Ass'n, Comm'n on Asbestos Litig., Report to the House of Delegates, at 6, 13 (Feb. 2003)) ("[F]or-profit litigation screenings began systematically generating tens of thousands of new non-malignant claims each year by individuals who had some degree of occupational asbestos exposure, but did not have, and probably would never get an impairing asbestos-related disease.").

Despite the foregoing, plaintiffs now seek to redact the following from the Bevan database:

- *The Identity of the Referring Attorney*. The database information Bevan produced for the class representatives lists the National Tire Workers Litigation Project ("NTWLP") and its attorneys as referring counsel for some cases. ***The NTWLP, which was central to the Bevan Firm's asbestos and talc litigation docket, has been roundly criticized by federal courts for bringing a flurry of abusive and frivolous claims.*** Plaintiffs' counsel acknowledges that the identity of the referring attorney is not privileged but now seek to redact it anyway on the purported grounds that it is "premature class discovery."

- *Whether Plaintiffs Qualified for and Received Payment from Asbestos Settlement Trusts*. Other fields in the Bevan database indicate whether plaintiffs qualified for payment from asbestos settlement trusts, or whether their claims were denied. For plaintiffs who qualified, the database also provides the amount received from the trust. This information is relevant to damages, among other issues. Filings with asbestos settlement trusts are also routinely produced in asbestos litigation. Indeed, in Ohio where Bevan filed his cases, filings with asbestos settlement trusts ***must*** be produced in asbestos litigation. *See* Ohio Rev. Code § 2307.952. Plaintiffs now seek to redact the information even though they acknowledge that it is ***not*** protected by a confidentiality agreement.

- *Compensation Received by Plaintiffs*. The Bevan database also shows how much compensation each plaintiff received from various defendants, including talc and asbestos defendants. This data is critical. Plaintiffs are claiming that, but for the defendants' alleged misrepresentations, plaintiffs would have received greater compensation for their purported injuries. But if the data shows that plaintiffs were settling for nominal sums with asbestos manufacturers and with talc manufacturers whose products were known to contain asbestos, that data would undercut plaintiffs' damages claims here. Plaintiffs now seek to redact all of this information. Based on the entries Bevan has produced to date, however, much of the settlement information in the Bevan database has already been disclosed in the public domain through probate court filings or was not confidential in the first place (*e.g.*, bankruptcy trust claims).

Plaintiffs' efforts to re-trade on the agreement to produce the Bevan database stand in contrast to how BASF handled the Cahill databases. At the October 26, 2017 hearing, Your Honor made clear that BASF should produce the databases (even though BASF or Cahill could have lodged work product objections). BASF heard Your Honor and promptly contacted plaintiffs' counsel to confirm that plaintiffs could use the databases for purposes of this case. Here, however, plaintiffs left the November 30, 2017 hearing and largely ignored Your Honor's encouragement to produce the Bevan database. As a result, we now find ourselves in unnecessary briefing.

At bottom, plaintiffs' counsel should not be permitted to interfere with Bevan's production of its client database—especially after Bevan expressed willingness to produce such information. The fact that evidence may be unfavorable

is not a reason for plaintiffs' counsel to obstruct discovery from a third party. The database entries are plainly relevant, and BASF therefore respectfully requests that Your Honor order Bevan to produce them in unredacted form—just as BASF produced the Cahill databases in unredacted form.[1]

## ARGUMENT

### I. THE BEVAN FIRM SHOULD BE ORDERED TO PRODUCE ITS CLIENT DATABASE ENTRIES IN UNREDACTED FORM.

At the October 26, 2017 hearing, Your Honor made clear that Bevan was to produce or log its entire client files for 30 putative class members selected at random. 10/26/17 Hr'g Tr. at 151:6-15. Your Honor selected this limited sample size "as a middle ground" to "ameliorate[]" Bevan's claims of undue burden. *Id.* at 151:6-24. However, when the October 26 hearing took place, neither BASF nor Your Honor was aware that the Bevan Firm maintains a database with key information on all of the putative class members' cases.

The existence of Bevan's database was one of the key facts BASF learned after the October 26, 2017 hearing. *See* 11/13/17 BASF Ltr. to Court (ECF No. 372).

---

[1] BASF did withhold two pieces of sensitive personal information: plaintiffs' social security numbers and addresses. However, BASF did not withhold any substantive information regarding plaintiffs' cases.

Because the database exists in electronic form and contains information for scores of putative class members in one place, the Bevan Firm has no valid burden objection. Moreover, plaintiffs' arguments concerning their claimed need for Cahill's databases—which BASF has already produced—underscore that databases like these are relevant and discoverable. *See, e.g.*, 10/26/17 Hr'g Tr. at 75:20-23.

Presumably because of the foregoing, Bevan agreed to produce its database, as described in Bevan's November 29, 2017 submission to the Court. Shortly after the November 30, 2017 hearing, however, plaintiffs intervened and sought to block production of much of the information in Bevan's database by redacting it. Bevan has now changed course and is following plaintiffs' lead.[2]

**A. The Bevan Database Contains Relevant, Discoverable Information.**

As an initial matter, neither Bevan nor plaintiffs dispute that Bevan's database contains relevant information. That is equally true of the fields plaintiffs now want

---

[2] BASF has met and conferred extensively with counsel for plaintiffs and Bevan regarding the production of Bevan's client database, but the parties have reached an impasse on the present disputes. *See* E. Assaf Decl. ¶¶ 4-11. However, BASF was able to resolve other disputes, not before the Court, regarding the database. For instance, plaintiffs had previously sought to redact whether a given client was a plaintiff in litigation related to silica exposure but eventually withdrew that redaction proposal during the meet-and-confer process, acknowledging that if a particular plaintiff sought damages for silica exposure only, that plaintiff would not be part of the class in this case.

to redact. *First*, as described above, plaintiffs and Bevan seek to redact the identity of the attorney or group of attorneys who referred each case to the Bevan Firm. This information is relevant—indeed, potentially critical—to class certification and to the merits of plaintiffs' claims. The "referring attorney" field for several of the entries Bevan has already produced indicate that cases were referred to Bevan by the National Tire Workers Litigation Project and its attorneys.

To be clear, one of the largest groups of putative class members referenced in the complaint are the Bevan plaintiffs. Given BASF's work over the last several years, BASF believes that a large number of the Bevan cases are NTWLP-generated claims. It will be important to confirm those findings and determine, with certainty, that a large portion of the class is made up of NTWLP plaintiffs who may not have had any actual injury (and, indeed, whose cases may be frivolous).

Federal courts have recognized that NTWLP cases were largely meritless and marred by fraud. *See, e.g.*, *Raymark Indus., Inc. v. Stemple*, 1990 WL 72588, at *22 (D. Kan. May 30, 1990) (recognizing that many of these cases were "in fact without merit," that "most" of the claims "could not pass Rule 11 muster," and that "the physicians couldn't pass Fed. R. Evid. 703 muster"). Thus, whether a given case was referred to Bevan by the NTWLP is relevant to assessing whether that case

against Engelhard had any legal or factual basis, whether plaintiffs' counsel planned ahead of time to settle cases in groups for small settlements, and so on. *See* Ex. A (Am. Bar Ass'n, Comm'n on Asbestos Litig., Report to the House of Delegates, at 6, 13 (Feb. 2003)) ("[F]or-profit litigation screenings began systematically generating tens of thousands of new non-malignant claims each year by individuals who had some degree of occupational asbestos exposure, but did not have, and probably would never get an impairing asbestos-related disease."); *id.* at 10 ("Once a lawsuit is filed, unimpaired [NMRD] claimants may choose to resolve their claims for minimal values, executing a complete release. For the vast majority who never develop a disabling asbestos-related disease, the money is arguably a windfall.").[3]

---

[3] BASF initially understood that, in addition to the referring attorney, plaintiffs intended to redact the identity of physicians who provided the claimed diagnosis. Like the referring attorney, this information is relevant because the Bevan Firm used several of the physicians who performed "for-profit litigations screenings" to manufacture asbestos claims, including Drs. Ray Harron and Alvin Schonfeld. Because of their improper practices, these doctors were later investigated or barred from providing evidence to asbestos settlement trusts. *See, e.g.*, *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 603-08, 630-40 (S.D. Tex. 2005); *In re Asbestos Prod. Liab. Litig.*, 2011 WL 6181334, at *5 (E.D. Pa. Dec. 13, 2011); W.R. Grace Asbestos Tr., Policy on Physicians and Medical Facilities, http://wrgraceasbestostrust.com/wp-content/uploads/2014/02/policy-on-physicians-5_28_091.pdf. During the meet-and-confer process, plaintiffs and Bevan confirmed that the identity of doctors and any film reads will now be included when the Bevan database is produced.

*Second*, as noted above, most putative class members did not have cancer but instead had NMRD, which is a substantially different and less serious condition. As the American Bar Association has explained, most of these individuals "did not have, and probably would never get an impairing asbestos-related disease." Ex. A (Am. Bar Ass'n, Comm'n on Asbestos Litig., Report to the House of Delegates, at 6 (Feb. 2003)). As a result, the settlement considerations and amounts in an NMRD case are profoundly different from those in a mesothelioma or lung cancer case. NMRD plaintiffs and their counsel also would have had different expectations regarding whether to settle an NMRD case or take it to trial. Simply put, under any Rule 23 analysis, it would be relevant to know whether large swaths of the class have no injuries and thus had very different reasons for resolving their cases.

Because of these disparities across cases, the nature of a given class member's injury and prior settlements is relevant to determining that class member's potential damages, as well as whether the claim is suitable for class-wide adjudication in light of the requirements of Rule 23. Although most of the putative class in this case is made up of individuals with NMRD, plaintiffs have produced no settlement data for those class members, and they are now trying to block discovery of it from a readily

accessible source. Those efforts improperly hinder BASF's and the Court's ability to determine whether the proposed class can be certified under Rule 23.

**B. Plaintiffs' and Bevan's Objections Lack Merit.**

Although plaintiffs and Bevan acknowledge that the Bevan database contains relevant information, they now want to redact information on the basis of newly asserted objections. None of those objections has merit.

*First*, with respect to the identity of the referring attorney, Bevan has offered no principled objection for withholding the information. Plaintiffs have acknowledged that the identity of the referring attorney is ***not privileged*** or protected by any confidentiality restriction. Rather, plaintiffs' only objection is that production of these database fields would constitute "premature" class discovery. That is not a valid basis to withhold the information, particularly when production of the Bevan database would impose only a minimal burden on plaintiffs and Bevan.

*Second*, with respect to class members' settlements with asbestos bankruptcy trusts, plaintiffs' only objection again is that production of this information would constitute "premature" class discovery. Plaintiffs do not and cannot claim that bankruptcy trust submissions and settlements are privileged. Plaintiffs also concede that documents related to bankruptcy trust claims and settlements are not

confidential. Indeed, Ohio law requires asbestos plaintiffs to "identify[] all existing asbestos trust claims made by or on behalf of the claimant" and provide "all trust claims material pertaining" to those claims. Ohio Rev. Code § 2307.952(A)(1)(a). Plaintiffs have shown no reason why information regarding their trust claims should not be produced.

*Third*, for settlements with private parties, Bevan relies solely on confidentiality objections. BASF is mindful of the Court's ruling that Bevan need not produce its clients' settlement agreements with defendants other than Engelhard, which was based on confidentiality concerns raised by plaintiffs, Bevan, and third party Vanderbilt Minerals. *See* 10/26/17 Hr'g Tr. at 221:22 - 222:4, 229:10-13. However, BASF's review of the documents produced on behalf of the class representatives suggests that these confidentiality concerns are unfounded: much of the settlement information at issue here has already been disclosed publicly through filings in probate courts. For instance, settlement information (amounts and parties) for named plaintiff Pease has been publicly filed in probate court documents that plaintiffs have produced in this very case. *See, e.g.*, Ex. B (P-WMS-0012270); Ex. C (P-WMS-0012274), Ex. D (P-WMS-0012278). Other class representatives filed

similar documents with probate courts, demonstrating that this was a common practice for clients of the Bevan Firm.

During the meet-and-confer process, BASF asked plaintiffs and Bevan to justify their confidentiality concerns with either a confidentiality agreement that governs the settlement information in the Bevan database or some other basis for withholding that information. Neither plaintiffs nor Bevan were able to provide such a justification. Instead, they relied on the Court's prior directive that discovery on settlements should not extend to putative class members. That directive, however, was based on burden and confidentiality considerations that appear unfounded.

### C. If Plaintiffs and Bevan Withhold Information Regarding Putative Class Members, They Should Be Precluded From Relying On It Later.

As noted above, plaintiffs have offered no evidence or data regarding settlements or damages for putative class members who claimed NMRD. Information regarding NMRD cases is relevant to whether the proposed class satisfies the commonality, predominance, and typicality requirements of Rule 23, and plaintiffs' refusal to produce that information will prejudice BASF's ability to respond to plaintiffs' motion for class certification. If plaintiffs withhold or block discovery into these issues, plaintiffs should be precluded from relying on NMRD

case information or seeking NMRD-related damages later, including in expert discovery.

**CONCLUSION**

For the reasons discussed above, Your Honor should compel Bevan to produce an unredacted version of its client database.

Respectfully Submitted,

s/ Justin T. Quinn
Justin T. Quinn
Counsel for BASF Catalysts LLC

cc: All counsel of record (via ECF)