

One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: 973.690.5400 Fax: 973.466.2761
www.rwmlegal.com

December 15, 2017

**VIA ECF**

The Honorable Roberto A. Rivera-Soto
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002

Re:    *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*
       *Civil Action No. 11-cv-01754 (JLL) (JAD)*

Dear Justice Rivera-Soto:

Plaintiffs have failed to provide any factual responses to BASF's November 7, 2017 interrogatories, and have failed to amend prior interrogatory responses covered by Chief Judge Linares's August 3, 2017 Order. Plaintiffs' refusal to provide factual responses to the interrogatories is a replay of their earlier refusal to provide responses to discovery for over a year on "forfeiture" and "relevance" theories—which Your Honor has seen plaintiffs continue to raise at hearings—as well as their obstruction of the Wengerd and Holley depositions. At some point, plaintiffs must be made to understand that the discovery rules and rulings apply to them, especially if this case is expected to move forward as Chief Judge Linares and Your Honor have directed. Accordingly, as discussed below, BASF seeks an order compelling plaintiffs to respond to the interrogatories at issue here.

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 2

## PROCEDURAL BACKGROUND

The present dispute relates to two sets of interrogatories that BASF served on each plaintiff in this case: a first set served on October 23, 2015, and a second set served on November 7, 2017.

### A.     Plaintiffs' Responses to BASF's Second Set of Interrogatories.

BASF's second set of interrogatories arose out of the October 26, 2017 hearing and the discussion there regarding several key issues in this case, including the need for plaintiffs to identify their damages theory, discovery related to class issues, plaintiffs' privilege waiver, and the scope of discovery.  At the October 26, 2017 hearing, plaintiffs were unable to articulate a coherent theory of damages or class certification, or to provide any factual basis regarding how the named plaintiffs were, in fact, damaged.  These should all be straightforward issues at this point in the litigation.

In addition to posing questions regarding plaintiffs' damages, BASF has also been trying to advance the resolution of plaintiffs' spoliation claims.  In the years since this litigation began, BASF has located a substantial number of documents that plaintiffs claimed were destroyed.  In response, plaintiffs have argued that most of the located documents are merely copies and not "originals," and thus purportedly

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 3

inadequate.   Plaintiffs, however, provided no indication whether their own documents are copies or "originals."

Finally, at the October 26, 2017 hearing (and later at the November 30, 2017 hearing), the parties and the Court discussed how plaintiffs' forthcoming class certification motion will impact discovery.  While plaintiffs have promised (after repeated extensions) to file a motion on January 15, 2018, there is, of course, no assurance that such a motion will lay out the facts necessary to assess the class certification requirements set forth in Rule 23.  To avoid a repeat of plaintiffs' typical discovery delays (and mindful of the Court's admonition to move this case forward), BASF made clear that it is eager to hear plaintiffs identify the facts that will be critical to the Court's analysis of class certification under *Hydrogen Peroxide* and other Third Circuit precedent.

Accordingly, following the October 26, 2017 hearing, BASF served on each of the named plaintiffs interrogatories that asked for basic information related to three of the key issues described above: plaintiffs' alleged damages, plaintiffs' "original" documents, and the facts that plaintiffs will cite to support their motion for class certification.  To date, plaintiffs have offered no substantive responses. With respect to their damages, ***plaintiffs refused to identify a single fact*** and instead

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 4

indicated that an expert will someday opine on damages issues.  For the remaining interrogatories, plaintiffs served only vague objections, in some cases with references to their complaint, and indicated that they may provide factual responses in their class certification motion, in subsequent post-certification fact discovery, and through expert opinions.  These evasive non-responses run afoul of the Federal Rules as well as Your Honor's directives at the October 26 hearing.  Plaintiffs have provided literally no information of any substance in response to what are typical interrogatories served in putative class action cases.

Plaintiffs have had six weeks since the October 26, 2017 hearing to consider their factual positions on damages, class certification, and the other issues that are the subjects of these interrogatories.  Indeed, plaintiffs have had six years to ponder these questions in the more than half-decade since this case was first filed.  Yet plaintiffs either cannot or will not provide responses, having refused to reconsider their position during the meet-and-confer process.

Shortly after receiving plaintiffs' responses to BASF's second set of interrogatories, counsel for BASF reached out to plaintiffs' counsel to set up a telephonic meet-and-confer.  *See* Ex. A (12/7/17 E. Assaf Email); E. Assaf Decl. ¶ 5. During meet and confer discussions, plaintiffs' counsel was adamant that they intend

**RM** | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 5

to stand on their objections and ***refused to provide any facts or any further***

***responses***, even as to the named plaintiffs whose cases plaintiffs' counsel has been

handling for years.  *See* E. Assaf Decl. ¶ 6.

### B.    Plaintiffs' Responses to BASF's First Set of Interrogatories.

In addition to failing to answer BASF's more recent interrogatories, plaintiffs

have also failed to supplement their responses to BASF's October 23, 2015

interrogatories.  Plaintiffs objected to many of those interrogatories nearly a year ago

in December 2016, but have not supplemented them in light of Chief Judge Linares's

and Your Honor's rulings regarding the scope of discovery, plaintiffs' privilege

waiver, and other issues.  Those various rulings confirm that plaintiffs' objections to

the interrogatories have now been overruled.

BASF wrote to plaintiffs' counsel on December 7, 2017 to remind them of

their obligation to amend or supplement their responses.  *See* E. Assaf Decl. ¶ 7.  On

December 14, 2017, plaintiffs' counsel indicated that plaintiffs intended to

supplement their responses by December 29, 2017 but could not commit to that date.

*See id.* ¶ 8.  On December 15, 2017, BASF and plaintiffs agreed to a proposed

stipulated order, attached hereto, memorializing the December 29, 2017 date.  *See*

*id.* ¶ 9.

RM | ROBINSON
     MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 6

More than six years into this litigation, plaintiffs cannot continue to stonewall BASF with objections and rely on their purported right to supplement as discovery progresses. Nor can plaintiffs refuse to comply with their discovery obligations on the theory that everything will be revealed in their class certification motion or in later discovery. Plaintiffs have provided essentially no response to basic questions, which is contrary to the Federal Rules. For these reasons and those that follow, BASF now asks the Court for an Order compelling plaintiffs to amend their December 7, 2017 interrogatory responses and memorializing plaintiffs' agreement to amend their December 23, 2016 interrogatory responses.

## ARGUMENT

I.  **Plaintiffs' Responses to BASF's Second Set of Interrogatories Are Inadequate.**

   A.  **Plaintiffs Should Be Ordered to Respond to BASF's Interrogatory No. 1 Regarding the Facts of the Named Plaintiffs' Damages.**

At the October 26, 2017 hearing, the parties and Your Honor engaged in an extended discussion regarding plaintiffs' alleged damages. *See* 10/26/17 Hr'g Tr. at 115:12 - 124:9. Your Honor repeatedly asked plaintiffs' counsel to articulate their theory of damages for any particular plaintiff, but plaintiffs' counsel could not or would not answer the question. *See, e.g.*, *id.* at 120:13-21 (Special Discovery

**RM** ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 7

Master: "She is going to have to say at some point or another, okay, at least in New Jersey, she is going to have to say these are my damages . . . So at some point or another, a number is going to have to be attached to her damages."); *see also Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 306 (3d Cir. 2016) ("[I]t was entirely appropriate for the District Court to examine the plaintiffs' theory of damages and the proof supporting it.").

In an attempt to understand what, if any, damages—and what ascertainable loss and injury—are actually at issue here (or even what categories of damages are at issue), BASF served on plaintiffs an interrogatory designed to elicit the answers plaintiffs had yet to provide.[1]  *See* Ex. B at 6 (11/7/17 BASF's Interrog. to K. Williams, No. 1).  That interrogatory asked plaintiffs to "[d]escribe all damages, losses, harm, or other relief for which [plaintiffs] contend BASF is responsible," including (1) the amount of damages, (2) the method for calculating those damages,

---

[1] BASF respectfully submits that an interrogatory should not have been necessary in light of plaintiffs' disclosure obligations under Fed. R. Civ. P. 26(a)(1)(A)(iii) ("[A] party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party."). Plaintiffs' initial disclosures do not set forth an amount or theory of damages. Instead, they state that "[t]o the extent compensatory and punitive damages are sought pursuant to Plaintiffs' Fraud, Fraudulent Concealment, and Civil Conspiracy Claims, such are presently unliquidated and a matter of jury determination."

**RM** ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 8

(3) the basis for calculating those damages, and (4) how the damages differ from the damages sought in plaintiffs' underlying cases. *Id.*

Six years into this litigation, plaintiffs responded with no factual information regarding their damages, or even the types or categories of damages they are seeking or for what alleged harms. *See* Ex. C at 9-10 (12/7/17 Pls.' Resp. to BASF's Interrog., No. 1). These non-responses echoed plaintiffs' colloquy with Your Honor at the October 26, 2017 hearing. *See* 10/26/17 Hr'g Tr. at 115:12 - 124:9. Plaintiffs chose to stand on their objections, explaining that information regarding their "damages, losses, and harms will be provided in Plaintiffs' Motion for Class Certification, the discovery that follows, and accordingly, this response will be supplemented at the appropriate time by that filing and subsequent discovery." Ex. C at 10 (12/7/17 Pls.' Resp. to BASF's Interrog., No. 1). Plaintiffs also asserted that BASF's interrogatory "calls for the opinion of an expert witness" and "objectionably invades the province of the fact finder in determining remedies, damages, loss, and harm." *Id.*

Plaintiffs cannot rely on their class certification motion and the undefined "discovery that follows" to inform BASF of the facts underlying their injuries and alleged damages, or even what types of damages are at issue. Indeed, Rule 26(a)

RM | ROBINSON
     MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 9

required plaintiffs to provide that information *before* discovery even began in earnest. Plaintiffs also cannot rely on the opinions of expert witnesses to provide factual information about the nature of plaintiffs' claims and their damages. BASF asked plaintiffs to "[d]escribe all damages, losses, harm, or other relief for which [plaintiffs] contend BASF is responsible." Ex. B at 6 (11/7/17 BASF's Interrog. to K. Williams, No. 1). No expert analysis or methodology will affect whether or not plaintiffs can provide the factual basis for their damages. Indeed, it is not even clear if plaintiffs are seeking damages for their decedents' alleged asbestos injuries (of which plaintiffs should clearly have knowledge), the supposed diminished value of their decedents' past causes of action, or something else.

Plaintiffs' failure to comply with their discovery obligations is all the more troubling because this case has been pending for more than six years. As Your Honor made clear at the October 26 hearing, "at some point or another, a number is going to have to be attached" to plaintiffs' damages. 10/26/17 Hr'g Tr. at 120:20-21. With the close of fact discovery on the horizon and plaintiffs' class certification motion due in just over a month, basic information regarding plaintiffs' damage is long overdue. Your Honor should therefore order plaintiffs to respond to BASF's Interrogatory No. 1.

**RM** ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 10

      **B.**    **Plaintiffs Should Be Ordered to Respond to BASF's Interrogatory No. 4 Regarding Original Documents.**

At the October 26, 2017 hearing, the parties also addressed plaintiffs' spoliation theory and claims about BASF's "original" historical documents. Indeed, BASF's original documents form the basis for an entire section of plaintiffs' proposed discovery plan, where plaintiffs argued that the copies of documents BASF located are not adequate and that BASF must produce "original," decades-old documents in order to defeat plaintiffs' spoliation allegations. *See* Ex. D at 14 (10/10/17 Pls.' Proposed Discovery Plan) ("Plaintiffs further assert that the copies of documents found by BASF are no substitute for the originals of test apparatus outputs or hardcopies which are required for proper scientific evaluation."); *id.* ("Moreover, establishing that copies of some documents have been found while the originals remain missing does not negate the material, probative fact that defendants destroyed the originals in execution of an effort to suppress evidence needed by asbestos claimants to prove their asbestos injury claims."). Plaintiffs have also sought Rule 30(b)(6) deposition testimony from BASF on "original documents," *see* Ex. E (2/1/17 Pls.' Rule 30(b)(6) Dep. Notice), and deposed BASF's corporate representative for three days in the *Sampson* case on that issue.

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 11

In light of plaintiffs' position regarding "original" documents (as compared to copies), BASF served an interrogatory regarding the status of the class representatives' and putative class members' original documents from their underlying cases. *See* Ex. B at 8 (11/7/17 BASF's Interrog. to K. Williams, No. 4) ("Describe whether each Putative Class representative and Putative Class member has the 'original' Documents (as opposed to copies or electronically scanned versions) from their Underlying Actions."). What limited discovery BASF has undertaken on this subject has already revealed troubling deficiencies. At her deposition earlier this year, named plaintiff Marilyn Holley confirmed that she was never told to preserve original documents in her possession. *See, e.g.*, Ex. F at 64:11-18 (4/5/17 M. Holley Dep. Tr.) ("Q. And at this first meeting, did Mr. Placitella in words or in substance, or any of his colleagues, tell you to make sure you maintained all of your documents relating to the underlying Bevan cases against Emtal? A. No, I was not specifically told that. Q. Were you ever told that? A. Not specifically, no."). Plaintiffs' counsel objected on privilege grounds when BASF asked a second named plaintiff the same question the next day (a privilege objection that plaintiffs can no longer maintain given the Court's ruling concerning the many troubling aspects of this deposition). *See* Ex. G at 54:3-19 (4/6/17 D. Wengerd Dep. Tr.). Interrogatory

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 12

No. 4 was designed to follow up on these inquiries and elicit basic information on

the status of class members' original files from their underlying cases.

The need for this information has only increased with the Bevan and Early

Firms' recent admission that neither law firm has any document retention policies

or memoranda related to this case.  Ex. H (12/6/17 B. Little E-mail to P. Farrell)

("I've confirmed there are no retention policy documents.").  Moreover, BASF has

now learned through the meet-and-confer process that the Bevan Firm converted

paper files to electronic files at some point during this litigation.  It appears that the

original paper documents were discarded (after being scanned) during the pendency

of active litigation matters.

Although plaintiffs have claimed that the status of "original" documents is a

key issue in this case, plaintiffs provided no substantive response regarding the status

of their own "original" documents.  Instead, plaintiffs offered boilerplate objections,

including the scope of discovery objection the Court already rejected.  Plaintiffs

cannot have it both ways on this issue.  If plaintiffs intend to maintain their position

that the absence of original documents (as opposed to photocopies or electronically

scanned documents) is evidence of spoliation, then BASF is entitled to that

information regarding the status of plaintiffs' original documents.  The information

RM | ROBINSON
         MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 13

that BASF seeks may result in key portions of plaintiffs' spoliation theory being

rejected.  But the fact that an interrogatory response may harm plaintiffs' own theory

of the case is not a valid objection.  Your Honor should therefore order plaintiffs to

respond to BASF's Interrogatory No. 4.

### C. Plaintiffs Should Be Ordered to Respond to BASF's Interrogatories 2, 3, 5, 6, 7, and 8 Regarding the Class Certification Requirements of Rule 23.

Finally, Your Honor should order plaintiffs to provide substantive answers to

BASF's interrogatories regarding the putative class and class certification.  As the

parties discussed at the October 26, 2017 hearing, in *In re Hydrogen Peroxide*

*Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008), the Third Circuit set forth a

rigorous standard for class certification.  As Chief Judge Scirica observed, "the

requirements set out in Rule 23 are not mere pleading rules."  *Id*. at 316.  Rather, in

deciding whether to grant class certification, a reviewing court should go beyond the

pleadings to determine whether the ***factual record*** underlying the plaintiffs'

allegations satisfies the certification requirements.  *Id*.; *see also Johnston v. HBO*

*Film Mgmt., Inc.*, 265 F.3d 178, 189 (3d Cir. 2001) (district court properly

"examine[d] the factual record underlying plaintiffs' allegations in making its

certification decision.").  In doing so, "the district court must find that the evidence

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 14

more likely than not establishes each fact necessary to meet the requirements of Rule

23." *In re Hydrogen Peroxide*, 552 F.3d at 320. That is, plaintiffs seeking class

certification must establish all of the relevant Rule 23 requirements—here,

commonality, typicality, adequacy, predominance, and superiority—by a

preponderance of the evidence.

Because *Hydrogen Peroxide* and other cases require facts, not mere

allegations, BASF served interrogatories on each named plaintiff asking them to

provide information related to the scope of the class and plaintiffs' ability to meet

the Rule 23 standard. *See, e.g.*, Ex. B at 6-7 (11/7/17 BASF's Interrog. to K.

Williams, No. 2) ("Identify each and every Person who previously filed an Action

against BASF based on exposure to Emtal Talc."); *id*. at 7-8 (11/7/17 BASF's

Interrog. to K. Williams, No. 3) ("Identify each and every Person who did not file

an Emtal-related claim against BASF because of the fraud and fraudulent

concealment alleged in the Second Amended Complaint."); *id*. at 9 (11/7/17 BASF's

Interrog. to K. Williams, No. 5) ("As Putative Class representative, describe Your

trial plan for this case," including "establishing . . . the existence of injury for a

particular plaintiff"); *id*. at 9-10 (11/7/17 BASF's Interrog. to K. Williams, No. 6)

("Identify all common questions of law or fact that You contend exist under Federal

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 15

Rule of Civil Procedure 23(a)(2) and/or predominate under Rule 23(b)(3)"); *id*. at
10 (11/7/17 BASF's Interrog. to K. Williams, No. 7) ("Identify all Facts, including
Documents, that support Your contention that the Putative Class representatives
satisfy the requirements of typicality and/or adequacy under Rules 23(a)(3)-(4)");
*id*. at 10 (11/7/17 BASF's Interrog. to K. Williams, No. 8) ("Identify all Facts,
including Documents, that support Your contention that the Putative Class satisfies
the superiority requirement of Rule 23(b)(3) . . .").

Notwithstanding the Third Circuit's directives in *Hydrogen Peroxide*,
plaintiffs provided no meaningful response to BASF's interrogatories and instead
referred to their Second Amended Complaint, which purportedly "explains how and
why they and their claims are typical," Ex. C at 17 (12/7/17 Pls.' Resp. to BASF's
Interrog., No. 7), and to the documents and deposition transcripts attached to that
complaint, *id*. at 16-18. Plaintiffs were explicit in their reliance on their pleadings:
"Plaintiffs refer defendant to their Second Amended Complaint which explains how
and why a class action adjudication . . . is superior to alternative methods." *Id*. at
17. Plaintiffs further noted that any facts "beyond those already set out in the Second
Amended Complaint, will be specified in Plaintiffs' motion for class certification."
*Id*. at 16; *see also id*. at 14 ("[I]nformation regarding damages, losses, and harms

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 16

will be provided in Plaintiffs' Motion for Class Certification [and] the discovery that

follows.").

  *Referring to the complaint, however, is precisely what Hydrogen Peroxide*

*says a plaintiff cannot do.* A plaintiff moving for class certification cannot rely

upon mere allegations in the complaint, "demonstrate an intention," or give an

"assurance . . . that it intends or plans to meet the requirement." *Hydrogen Peroxide*,

552 F.3d at 318, 321. Nor can a plaintiff rely on a "threshold showing" or a "prima

facie showing," or claim that their motion is "supported by some evidence." *Id.* at

321. Plaintiffs' repeated references to their complaint, to future expert discovery,

and to future post-certification fact discovery reflect the type of threadbare attempts

at class certification *specifically prohibited* by *Hydrogen Peroxide*.

  Plaintiffs' inadequate discovery responses also make clear that the named

plaintiffs are not adequate class representatives because they lack even the most

basic knowledge of the claims in this case. Indeed, prior discovery confirmed that

the two named plaintiffs deposed have no factual knowledge of their claims or of

damages they are supposedly seeking. *See* Ex. F at 62:5-7 (4/5/17 M. Holley Dep.

Tr.) ("Q: Other than what you know from Mr. Bevan, you don't have any personal

knowledge? A: I have no personal knowledge."); *id.* at 65:4-8 ("Q: Do you have any

RM | ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 17

knowledge of the facts surrounding the settlement demand and whether you would

have taken the case to trial or is that a Mr. Bevan topic as well?  A: I have no personal

knowledge of that, no."); *id*. at 75:12 - 76:23 ("Q.  . . . [W]hat money damages have

you suffered?"  "A: I would not be able to answer that."); Ex. G at 9:6-9 (4/6/17 D.

Wengerd Dep. Tr.) ("Q: So you have no personal knowledge of the fraud committed

by BASF, other than what you learned through counsel?  A: That is correct.").

The named plaintiffs' continued failure to answer basic questions about their

claims demonstrates the adequacy issues plaintiffs will face in seeking class

certification.  Eight months after the depositions of Marilyn Holley and Donnette

Wengerd, plaintiffs are still unable or unwilling to describe their damages, identify

the scope of the class, or explain how they plan to certify a class.

This is, however, basic factual information that the class representatives must

be aware of in order to satisfy the adequacy requirement of Rule 23.  *See, e.g.*, *Scott*

*v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356

(S.D.N.Y. 2004) ("Knowledge of issues central to the case and of the role of class

representatives is crucial since not even the presence of competent class counsel can

make up for a utter lack of familiarity with the action on the part of named

plaintiffs.").  As the Third Circuit has explained, to fulfill the adequacy requirement,

RM ROBINSON
MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 18

"the Class Representatives [must] have the ability and the incentive to represent the claims of the class vigorously." *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012). Class representatives may not "lend[] their names to a suit controlled entirely by the class attorney." *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011). Rather, they must meaningfully understand and sufficiently control the major decisions of the case. *See, e.g.*, *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (explaining that a proposed class representative is inadequate if she possesses "so little knowledge of and involvement in the class action that [she] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys"). However, as discovery has thus far shown, the named plaintiffs display just such an "utter lack of familiarity" with the factual basis for their claims and any resulting damages.

Your Honor should order plaintiffs to respond to BASF's interrogatories concerning the putative class and class certification. There is no rule allowing plaintiffs to delay responding to basic discovery requests by claiming they will provide this information later. In the alternative, BASF does not oppose plaintiffs' production of verified interrogatory responses with facts on January 15, 2017, the day they file their motion for class certification. But the Court should memorialize

RM | ROBINSON
        MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 19

that obligation in an order so that BASF can obtain basic information it needs to defend against plaintiffs' class allegations.

## II.    Plaintiffs Should Be Ordered to Supplement Their Responses to BASF's First Set of Interrogatories.

Nearly two years ago, BASF served on plaintiffs a first set of interrogatories regarding key issues in this case, including the reasons why plaintiffs settled their cases against Engelhard and other defendants, and the efforts plaintiffs took to develop and prosecute their claims against Engelhard and its subsidiaries.  *See, e.g.*, Ex. I (10/23/15 BASF Interrogs. to K. Williams).  Plaintiffs objected on privilege and scope-of-discovery grounds and refused to provide responses to many of these requests.  *See, e.g.*, Ex. J (12/23/16 K. Williams Resps. to BASF's Interrogs.).

On August 3, 2017, Chief Judge Linares held that plaintiffs waived their attorney-client privilege and work product protection as relevant here, and that defendants were entitled to "previously privileged information that Plaintiffs … put at issue by relying on what the underlying counsel was told and the nature of advice given by counsel."  8/3/17 Op. at 21.  The Court further held that "Defendants will be entitled to discover what Plaintiffs and their counsel knew, and were told, and whether any knowledge, or lack thereof, contributed to Plaintiffs' decisions on resolving the[ir] underlying case[s]."  *Id.* at 19.

RM | ROBINSON
        MILLER LLC

The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 20

At the October 26, 2017 hearing, plaintiffs' counsel raised the forfeiture arguments that Chief Judge Linares previously rejected. *See* 10/26/17 Hr'g Tr. at 114:4-7 (Mr. C. Placitella: "Whether or not somebody has asbestosis, that can't be litigated here. They forfeited that when they had these cases dismissed fraudulently."). At the November 30, 2017 hearing, plaintiffs' counsel again tried to reargue the Court's August 3, 2017 rulings. *See* 11/30/17 Hr'g Tr. at 54:11-12 (Mr. C. Placitella: "The issue of Judge Linares and waiver, as Mr. Roth said, we have agreed to disagree. I read Judge Linares' opinion differently."). Your Honor, however, could not have been clearer: "Chief Judge Linares has decided that plaintiffs' claims of privilege have been waived," and defendants did not forfeit the right to discovery. *See* 10/26/17 Hr'g Tr. at 69:25 - 70:3; *see also id.* at 71:1-2 ("If you want to assert the claim, then your privilege is waived.").

During the meet-and-confer process, plaintiffs agreed to amend their responses to BASF's first set of interrogatories. BASF believes it is clear that plaintiffs must now identify facts—and not re-formulate objections or argue that the information is included in the complaint (or will be provided later). Although plaintiffs have now indicated that they will supplement, BASF is presenting the



The Honorable Roberto A. Rivera-Soto
December 15, 2017
Page 21

Court with a stipulated order to memorialize that obligation with a specified date for

compliance, with an extension to be given freely for good cause shown.

## **<u>CONCLUSION</u>**

For the reasons discussed above, Your Honor should compel plaintiffs to

provide complete and substantive answers to BASF's interrogatories.

Respectfully Submitted,

<u>s/ Justin T. Quinn</u>
Justin T. Quinn
Counsel for BASF Catalysts LLC

cc:    All counsel of record (via ECF)