# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS, et al.**<br><br>                                   Plaintiffs,<br><br>              vs.<br><br><br>**BASF CATALYSTS LLC, et al.**<br>                        Defendants. | CIVIL ACTION<br><br>No. 11-1754 (JLL/JAD) |

### PLAINTIFFS' PROPOSED FACT DISCOVERY PLAN
### (Submitted To Special Discovery Master)

Plaintiffs hereby submit their Proposed Discovery Plan along with discovery dispute status in accordance with the Court's Special Discovery Master's Request of September 26, 2017, as well as Judge Linares' August 3, 2017 Order.

Plaintiffs' discovery plan proposes a schedule and process for completing discovery regarding the elements and defenses that are relevant to Plaintiffs' spoliation and fraudulent concealment claims. Plaintiffs also outline proposals to effectuate the coordination of the cases before this Court and the Superior Court of New Jersey as we believe was contemplated by the Third Circuit when it remanded the case. *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3d Cir. 2014)

1.  **Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating party represented.**

| **Attorneys for Plaintiffs** |
|---|

*COHEN PLACITELLA & ROTH, P.C.*
  Stewart L. Cohen,
  Christopher M. Placitella
  Michael Coren
  Jared M. Placitella
  127 Maple Avenue
  Red Bank, NJ 07701
  T: (732) 747-9003
  F: (732) 747-9004
  scohen@cprlaw.com
  cplacitella@cprlaw.com
  hroth@cprlaw.com
  mcoren@cprlaw.com
  jmplacitella@cprlaw.com

*FOX ROTHSCHILD LLP*
  Jeffrey M. Pollock
  997 Lenox Drive, Building 3
  Princeton Pike Corporate Center
  Lawrenceville, NJ 08648-2311
  T: (609) 896-3600
  F: (609) 896-1469
  jmpollock@foxrothschild.com

**Attorneys for Defendants**

**Attorneys for Defendant BASF Catalysts, LLC:**

    KIRKLAND & ELLIS LLP
    Eugene F. Assaf
    Michael W. Williams
    Peter Farrell
    Tia Trout-Perez
    Elizabeth Dalmut
    655 15th Street N.W.
    Washington, D.C. 20005
    T: (202) 879-5000
    F: (202) 879-5200
    eassaf@kirkland.com
    mwilliams@kirkland.com
    pfarrell@kirkland.com
    tia.trout-perez@kirkland.com
    elizabeth.dalmut@kirkland.com

    *R*OBINSON MILLER LLC
    Justin T. Quinn
    1 Newark Center
    19th Floor
    Newark, NJ 07102
    T: (973) 690-5400
    F: (973) 466-2761
    jquinn@rwmlegal.com

**Attorneys for Defendant Arthur A. Dornbusch, II:**

    *MARINO, TORTORELLA & BOYLE P.C.*
    Kevin H. Marino
    John A. Boyle
    437 Southern Boulevard
    Chatham, NJ 07928
    T: (973) 824-9300
    F: (973) 824-8425
    kmarino@khmarino.com
    jboyle@khmarino.com

**Attorneys for Defendants Cahill, Gordon & Reindell, Cahill, Gordon & Reindell, LLP, Howard G. Sloane and Ira J. Dembrow:**

    WILLIAMS & CONOLLY LLP
    John Villa
    Grant Geyerman
    David Blatt
    725 12th Street N.W.
    Washington, D.C. 20005
    T: (202) 434-5000
    F: (202) 434-5029
    jvilla@wc.com
    ggeyerman@wc.com
    dblatt@wc.com

    CONNELL FOLEY LLP
    Robert E. Ryan
    Craig S. Demareski
    85 Livingston Avenue
    Roseland, NJ 07068
    T: (973) 535-0500
    F: (973) 535-9217
    rryan@connellfoley.com
    cdemareski@connellfoley.com

**Attorneys for Defendant Thomas D. Halket:**

    *HEROLD LAW*
    Eric Tunis
    25 Independence Boulevard
    Warren, NJ 07059
    T: (908) 647-1022
    F: (908) 647-7721
    etunis@heroldlaw.com

**Attorneys for Non Parties with Entered Appearances**

**Attorneys for Non-Parties Bevan & Associates, Thomas Bevan Esq., Early, Lucarelli, Sweeney & Meisenkothen, James F. Early LLC, Mark Strauss, Esq. and James F. Early**

*LEVY KONIGSBERG LLP*
Moshe Maimon
Brendan E. Little
800 Third Avenue
11th Fl
New York, NY 10022
T: (212) 605-6282
F: (212) 605-6290
blittle@levylaw.com
mmaimon@lpklaw.com

**Attorneys for Non-Parties The Rothenberg Law Firm, LLP and Jeffrey Schwartz, Esq.**

STIEF, GROSS & SAGOSKIN, P.C. A.
Robert D. Sokolove, Esq.
Arthur R. Sagoskin, Esq.
2080 Cabot Boulevard West, Suite 201
Langhorne, PA 19047
Telephone: (215) 968-3900
rsokolove@sgsglegal.com
asagoskin@sgsglegal.com

*WILENTZ, GOLDMAN & SPITZER, P.A.*
Lynne M. Kizis
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
lkizis@wilentz.com
mfried@wilentz.com

**Attorneys for Non-Parties non-party Johnson & Johnson**

*McCARTER & ENGLISH, LLP*
David Kott
Zane C. Riester
100 Mulberry Street
Four Gateway Center
Newark, NJ 07102
dkott@mccarter.com
zriester@mccarter.com

**2. Set forth a brief description of the case including the causes of action and defenses asserted:**

Plaintiffs allege that their respective family member decedents were all exposed to Defendant BASF Catalysts, LLC's (formerly Engelhard Corporation" and hereinafter referred to as "BASF") EMTAL talc products which contained asbestos, and in connection with asbestos injury claims they and/or their respective decedents were among a targeted class of similarly situated victims (asbestos claimants with injury claims arising from Emtal exposure) systematically defrauded out of their legal rights to fair compensation by BASF and its former corporate and national asbestos defense counsel, Defendant Cahill, Gordon & Reindel ("Cahill") and the named individual defendants.

3

Plaintiffs seek class treatment of their Second Amended Complaint's ("**SAC**") claims under Fed. R. Civ. P. 23 for (1) fraudulent concealment; (2) common law fraud; and (3) conspiracy. Each count has withstood Defendants' motions to dismiss under Rule 12(b)(6). *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 311 (3d Cir. 2014); *Williams v. BASF Catalysts, LLC*, No. 11-1754, 2016 U.S. Dist. LEXIS 46273 (D.N.J. Apr. 5, 2016).The Third Circuit has ruled New Jersey law applies to these claims. *Id.* at. 765 F.3d 316-17; *Williams v. BASF Catalysts, LLC*, Civil Action No. 11-1754, 2017 U.S. Dist. LEXIS 122053, at *5 (D.N.J. Aug. 3, 2017) ( "The Court of Appeals found that New Jersey law applied and that the parties waived their right to argue otherwise.")

Key opinions in this matter defining Plaintiffs' claims are:

A.      Williams v. BASF Catalysts LLC, 765 F.3d 306 (3d Cir. 2014).

B.      Williams v. BASF Catalysts, LLC, No. 11-1754, 2016 U.S. Dist. LEXIS 46273 (D.N.J. Apr. 5, 2016).

C.      Williams v. BASF Catalysts, LLC, Civil Action No. 11-1754, 2017 U.S. Dist. LEXIS 122053 (D.N.J. Aug. 3, 2017).

## 3.   Have settlement discussions taken place?

Yes.

Counsel for Plaintiffs, BASF and Cahill voluntarily attempted mediation with the Hon. Layn Phillips, U.S.D.J. (Retired) pursuant to a confidential mediation agreement. Details of the mediation are confidential and privileged. The Court, however, was made aware of the mediation effort and the participants' impasse. Plaintiffs are not opposed to further mediation of their claims**.**

## 4.   The parties have met pursuant to Fed. R. Civ. P. 26(f).

The parties have had numerous meet and confer conferences. Most recently an in-person meeting was held in Newark, NJ on October 3, 2017, and a follow up telephone conference call was held on October 7, 2017, with the objective of narrowing the issues and understanding the parties' respective positions in anticipation of submitting one or more proposed discovery plans. Given the stark disagreements concerning the scope and timing of discovery that remains to be completed plaintiffs submit their own proposed plan as directed by Special Discovery Master.

## 5.   The parties have exchanged the information required by Fed. R. Civ. P. 26(a)(1).

## 6.   Explain any problems in connection with completing the disclosures required by Fed. R. Civ. P. 26(a)(1):

See ¶ 8 below.

**7.   The parties *have* conducted discovery other than the above disclosures.**

   *(a) Discovery in Williams:*

   **(i) Document Discovery:**

   Each side has served the other with various interrogatories, document production requests, requests for admissions and deposition notices. The responses to these have generated multiple issues related to claims of privilege and permissible scope of discovery which are before the Court.

   In connection with this discovery the Court has entered a discovery confidentiality order ("DCO"). ECF No. 260. Documents not subject to objection or other pending dispute have been produced.

   Both sides have subpoenaed third parties for production of documents and eventual testimonial depositions. Plaintiffs have subpoenaed Johnson and Johnson ("**JNJ**") for production of documents related to: (1) the Johnson, Vermont mine and Emtal talc. Prior to Engelhard, JNJ had owned the Johnson Vermont mine and processing plant from which Emtal talc was produced; and (2) documents related to JNJ's making one of its research scientists, William Ashton, available to serve as Engelhard/BASF's purported expert affiant on Emtal talc in a widely disseminated affidavit referred to in the SAC that is central to litigation. Plaintiffs and JNJ have a dispute over confidential document designations and the terms of the existing Discovery Confidentiality Order, which contains provisions for third party confidential materials. The parties' dispute has been briefed and is pending before the Court. See ECF Nos. 268, 276 and 290.

   **(i)        Depositions Noticed by the Plaintiffs**

   **Victoria Kormanicki –** On January 19, 2017 Plaintiffs subpoenaed and took the deposition of Victoria Komarnicki, Esq. In that deposition it was learned for the first time that BASF/Engelhard made material misrepresentations to the federal court as part of the strategy to obtain dismissals of thousands of pending asbestos cases.[1]

_____

[1] During the late 1980s/early 1990's Kormanicki and her law firm, Dilworth Paxson, represented BASF in asbestos cases brought by the Rothenberg law firm pending at the time in Southeastern Pennsylvania. These cases included those filed in or removed to the Eastern District of Pennsylvania ("EDPA") where they were assigned with other asbestos cases to the Hon. Charles Weiner, USDJ. Until his death, Judge Weiner presided over every asbestos case pending in the EDPA under one of the earliest consolidated asbestos cases judicial management programs in the country. He eventually was appointed to preside over the Asbestos MDL established by the Joint Panel on Multi-District Litigation where all federal asbestos personal injury cases were transferred to the EDPA for pre-trial management. Thus, representations shaping his view of Emtal talc were important. Ms. Komarnicki's deposition explored the dismissal of the Southeastern Pennsylvania tire-worker cases brought by the Rothenberg firm which, as the SAC discusses, was the first of BASF and Cahill's numerous voluntary dismissals obtained as a result of the false representations that Emtal talc did not contain asbestos and that no evidence existed that it did. That plaintiffs' counsel agreed to these dismissals was used around the nation by BASF and Cahill to prove the reliability of the misrepresentations contained in their discovery

5

**Charles Carter** – Retired Engelhard/BASF manager. Over the course of several years dating back to, at least, 1989, Carter signed sworn documents on behalf of Engelhard/BASF that are central to this litigation.[2]

**Defense Lawyers who interacted with Named Plaintiffs' counsel** – Plaintiffs have served subpoenas for documents and testimony on several BASF local defense counsel who represented it in pertinent asbestos lawsuits referred to in the SAC in Ohio (Jack S. Kluznik, Esq., Jennifer Reister. Esq.) and in New York (Gideon Mark, Esquire). Each attorney has counsel representing him or her. While counsel for the witnesses have not objected to producing the witnesses for deposition, BASF has asserted objections to the subpoenas' document requests, including attorney-client and work-product privileges.

**Non-Party Cahill Lawyers-**Plaintiffs also noticed (and where the witnesses are retired have subpoenaed) two Cahill attorneys involved in BASF's asbestos defense, Allen Joslyn, Esq. and Scott Martin, as well as Cahill paralegal Michael Sullivan. BASF and Cahill have asserted objections to the notices/subpoenas' document requests, including attorney-client and work-product privileges. (See *infra* for description of discovery other BASF outside and in-house counsel.)

(ii)    **Depositions Noticed by Defendants**

**Depositions of Representative Plaintiffs** – BASF, who is leading the defense of this case,[3] has noticed the depositions of all six representative plaintiffs. To date, two of the six class

---

responses, correspondence and Ashton Affidavit to other asbestos claimants and thus, to convince them to dismiss their claims outright or settle cheaply.

During her deposition Ms. Komarnicki revealed that the "no asbestos/no evidence of any" misrepresentations were made directly to Judge Weiner in a 1989 letter she signed and sent at BASF and Cahill's behest. Her testimony raised a significant discovery issue as, despite numerous document requests that would have covered this correspondence, her testimony was the first time its existence was made known to the *Williams* Plaintiffs' counsel. Indeed, production of the letter to Judge Weiner would have been compelled by production requests by them and other lawyers in numerous cases since the fraudulent asbestos defense scheme was first unearthed in 2009. These facts are discussed in more detail in Plaintiffs' Memorandum in support of the Rothenberg firm's Motion for Protective Order. ECF No. 243. BASF's subpoenas directed to the Philadelphia Rothenberg law firm and its lawyers are described *infra*.

[2] Mr. Carter is elderly and currently resides in Georgia. He is represented by counsel with offices in Augusta. His attorney is cooperative regarding the scheduling of Carter's deposition, which has been adjourned pending development of a comprehensive deposition schedule. Due to his wife's serious illness Mr. Carter is unable to travel out of town. His counsel has offered his Augusta offices as location for Mr. Carter's deposition when rescheduled. BASF has asserted objections, including attorney-client and work-product privileges, to the subpoena's document requests which need to be resolved.

[3] Plaintiffs believe BASF is controlling the defense of itself as well as Cahill and its former in-house counsel co-defendants under a joint defense agreement or arrangement that may include indemnification and/or contribution elements. One reason for the belief is the absence of any cross claims filed among the co-defendants for contribution or indemnity. The existence and

representative plaintiffs (Ms. Holley and Ms. Wengerd) have been deposed. These depositions went forward before the entry of Judge Linares' August 3, 2017 Order and generated many objections and other disputes over the scope of discovery and privilege issues. Plaintiffs believe that since the entry of the August 3, 2017 Order it has complied with the Court's directives with respect to certain issues that arose at these depositions. However, many other objections and disputes were not ruled upon by Judge Linares and have been referred to the Special Discovery Master.

**Depositions of Representative Plaintiffs' Attorneys** – BASF has subpoenaed the representative plaintiffs' decedents' former attorneys and law firms who handled the underlying dismissed asbestos law suits: Thomas Bevan Esq., Bevan & Associates, Mark Strauss, Esq., James F. Early, Early, Lucarelli, Sweeney & Meisenkothen and James F. Early LLC. Each of these non-party lawyers and law firms is represented by separate counsel. Both Plaintiffs' and the lawyers/law firms' respective counsel have filed objections to BASF's subpoenas, including objections based on (a) attorney-client and work-product privileges; (b) requests going to confidential information; (c) proportionality concerns; and (d) scope of discovery (including improper absent class member discovery). The parties' and non-parties' disputes over these subpoenas is briefed and before the Court.[4] See ECF 227, 269.

---

terms of the joint defense agreement and related arrangements is a subject of Plaintiffs' discovery that is in controversy before the Court. See ECF Nos. 248, 265 and 266.

[4] As guidance on attorney-client and work product issues raised by Plaintiffs and these non-party former attorneys/law firms, Judge Linares ruled in his August 3, 2017 Opinion:

> Defendants raise the issue "[w]hether Plaintiffs have waived the attorney-client privilege and work product protection by placing 'at issue' plaintiffs' reliance on what their former counsel allegedly told them (or did not tell them) regarding what plaintiffs' former counsel allegedly understood regarding Engelhard's defenses and the merits of plaintiffs' underlying asbestos cases.'" (ECF No. 242 at 1). It appears that Defendants are entitled to the information as Plaintiffs raised these issues in their SAC. (SAC, ECF No. 158 at ¶¶ 12, 19, 228, 230, 329)…. The waiver here may not be a complete waiver, but rather a limited waiver that permits Defendants access to previously privileged information that Plaintiffs have put at issue by relying on what the underlying counsel was told and the nature of advice given by counsel as a result of what counsel was led to believe. Moreover, the Court agrees with Plaintiffs that such information should be "tightly define[d] and control[led]" pursuant to Federal Rule of Evidence 502(d). (Pl. Rep., ECF No. 308 at 21).

> The extent of any such [limited at issue] waiver, and the information to be produced, will be subject to the Special Master's review as outlined above. Accordingly, the Special Master shall ascertain, and apply all relevant law to the documents and objections concerning the attorney client privilege and determine what discovery (by way of written and testimonial), if any, Plaintiffs shall produce pursuant to the Federal Rule of Civil Procedure 26. Furthermore, the Special Master will address whether the Court should enter an order defining and controlling or

**Depositions of Attorneys for Absent Class Members** – BASF has also subpoenaed attorney Jeffery Schwartz, Esq. along with the Philadelphia law firm he once, but no longer, practiced with, the Rothenberg Law Firm (collectively "Rothenberg"). In addition to appearing for testimonial examination, BASF's subpoenas commanded Rothenberg to produce in advance its asbestos clients' files for matters dating back to the 1980s that were long closed. Unbeknowst to the Rothenberg firm, since 1989 BASF has used the Rothenberg firm's dismissals of its clients' Emtal claims, to persuade other lawyers to accept as truthful its false representations and the Ashton Affidavit and to dismiss their client's suits against Engelhard/BASF. Rothenberg estimates that there are 1,800 closed client files it would have to locate, retrieve from storage, and review to determine if the file contained information responsive to the subpoenas, and, if so locate and contact the client (or personal representative given the passage of time) to obtain instructions on what to do regarding privileged matter. Rothenberg has moved for an order quashing the subpoenas (or provide other necessary and appropriate relief, including Rothenberg's expenses). ECF No. 229. Rothenberg's objections to the subpoena are based upon (a) attorney-client and work product privileges claims; (b) scope of discovery (including improper absent class member discovery) and (c) proportionality of putting it to the tremendous and disruptive burdens BASF's discovery initiative imposes on it. Both the parties and Rothenberg's counsel have fully briefed the issues relating to the Rothenberg's motion. For docket management purposes Magistrate Judge Dickson has entered an order denying Rothenberg's motion *without* prejudice. ECF No. 275. During a subsequent status conference he clarified that the merits of the motion were not decided. Accordingly, Rothenberg's Motion to Quash is a matter for the Special Discovery Master's determination.

### (b) Relevant discovery in the related Superior Court Sampson litigation.

A major issue of dispute between the parties is the District Court's access to and permitted use of discovery already taken and orders entered in in the related and still pending New Jersey Superior Court matter, *Sampson v. 3M Co., et al.* Each of the individual defendants has been deposed by the same counsel representing the *Williams* Plaintiffs in a sealed, special discovery master's proceeding presided over by the Hon. Justice Gary S. Stein (Ret.) in *Sampson*. In 2013 Superior Court Law Division Judge Vincent LeBlon, J.S.C, appointed Justice Stein to serve as special discovery master and tasked him with creating an evidentiary record for the court on which the applicability of New Jersey's crime-fraud exception could be determined as to BASF based upon the spoliation and fraudulent concealment charges alleged by Mrs. Sampson against BASF. The fraud and spoliation claims made by Mrs. Sampson are essentially the same as alleged here. Copies of the Orders establishing the Sampson Special Discovery Masters proceeding are annexed as Exhibit "A". In sealed proceedings taking over two years to complete, Justice Stein presided over depositions of BASF's former in-house lawyers and former and current outside defense counsel and reviewed the deposition transcripts of other witnesses. He also received and reviewed hundreds of pages of withheld documents and thousands of pages of briefing submitted by counsel for BASF and Mrs. Sampson (as well as from Cahill's present attorneys) on spoliation, fraudulent concealment and the crime-fraud exception. After

---

otherwise protecting such information and how such information is divulged pursuant to Federal Rule of Evidence 502(d).

ECF No. 334 at 20-21.(Citations omitted)

entertaining extensive oral arguments over several days from counsel for plaintiffs, BASF and Cahill (who was permitted to participate to a limited degree), Justice Stein in 2015 issued two sealed Recommendation and Report opinions concerning application of New Jersey's crime-fraud exception to BASF's assertion of attorney-client and work-product privileges to Judge Ana C. Viscomi, J.S.C., who had replaced Judge LeBlon as the presiding judge over New Jersey's state-wide asbestos litigation program.

On July 7, 2017, Judge Viscomi adopted Justice Stein's SDM Recommendations, with one exception, and ordered documents withheld by BASF under claim of privilege be produced along with all of the transcripts of depositions taken before the Sampson Special Discovery Master.[5] A copy of Judge Viscomi's July 7 Order, which is publicly available, is annexed as Exhibit "B". However, pursuant the July 7, 2017 Order, both Justice Stein's and Judge Viscomi's respective opinions remain sealed pending determination of BASF's application to the Superior Court Appellate Division for leave to appeal. BASF's application is pending.

Prior to her July 7th ruling, and while the appeals of Justice Stein's Recommendations were before her under advisement, Judge Viscomi amended the Superior Court's sealing order to permit Judge Linares and Magistrate Judge Dickson to have access to Justice Stein's Recommendations and the parties briefing in *Sampson* relating to them if they desired to review same in connection with the management of this case. The access was subject to the District Court entering an appropriate protective order under F.R.E. Rule 502(d). Judge Dickson, however, informed the parties that he believed the Court could not review the Recommendations notwithstanding the Superior Court's protective order amendment because BASF refused to allow former in-house counsel Dornbusch and Halket access to copies of Justice Stein's Recommendation opinions. BASF's refusal is inconsistent with its earlier agreement with Judge Stein to allow the Cahill defendants (as well as their insurers) to review copies at the time he filed same with the Superior Court under seal and has deprived this Court access to highly relevant information gleaned from years of work regarding the dispute before it.

On October 10, 2017 Plaintiff's counsel in *Sampson* filed a request with Judge Viscomi for a "Show Cause" order why both the District Court (including Special Discovery Master) and all defendants in the *Williams* matter should not have access to Justice Stein's Recommendations as well as the Sampson crime-fraud record, subject to entry of an appropriate order under F.R.E. Rule 502(d).

On October 10, 2017, BASF filed a partially sealed motion to recuse Judge Viscomi, which plaintiff Sampson will oppose.

**BASF Corporate Representative Deposition –** During July and August, 2017 Plaintiffs' counsel in *Sampson* took the deposition of Daniel Steinmetz, a former BASF employee who was designated to testify on BASF's behalf concerning subjects relating to

---

[5] The single exception related to what SPD hearing deposition transcripts should be unsealed and publicly available. In response to an objection filed by Plaintiff Sampson to the SDM's Recommendations on what from the SDM proceeding should remained sealed, Judge Viscomi's ruling, set forth in a public order dated July 7, 2017, enlarged the scope of the testimony Justice Stein recommend be released from seal to encompass all of the proceeding's transcripts, including those of the individual defendants in this matter. See order of July 7, 2017 in *Sampson*. A true copy is annexed to this submission as Exhibit "B".

documents about Emtal in BASF's possession. Among other things Mr. Steinmetz testified BASF's counsel had in its possession an electronically scanned set of BASF's asbestos litigation files from 1984 to present that are word searchable. This searchable database has not been provided to Plaintiffs.

**8.  Plaintiff's proposed discovery plan:**

In view of the nature, time frame and complexity of the issues raised by the pleadings in this case, which span three decades of operative events dating back to the 1970s and raise a considerable number of privilege issues given that prior litigation is involved, Plaintiffs believe discovery should be broken down into discrete phases. Moreover, the time frames for completion of each stage should be set separately and adjusted as needed by the Special Discovery Master based upon progress and issues encountered during a phase. As described above, there are already a number of threshold decisions needed from the Special Master which at this point realistically prevent any meaningful and realistic proposal for a pre-trial schedule (including class certification and dispositive motions) for the entire case.

Plaintiffs believe that the most efficient and expeditious way to complete discovery in accordance with directives of the Third Circuit and Judge Linares is as follows:

1.  Decision by the Special Discovery Master Concerning Prerequisite Gateway Issues

2.  Discovery Concerning Spoliation Issues

3.  Discovery Concerning Misrepresentations and Effect of Those Representations

4.  Expert Reports and Depositions

### (a) Prerequisite Gateway Issues to Be Decided by the Special Discovery Master [6]

According to both the Third Circuit and Judge Linares, Plaintiffs are required to prove the following elements of liability to establish their fraudulent concealment claim, which is the predominant claim in this case:

1.  The defendant had a legal obligation to disclose evidence during an existing or pending litigation;

2.  the evidence was material to the litigation;

3.  the plaintiff could not reasonably have obtained access to the evidence from another source;

4.  the defendant intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation; and

5.  the plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed."

---

[6] During the meet and confer the parties were in accord that common issues affecting discovery going forward should be decided before anything else. There appears to be, however, some disagreement as to what those issues were.

ECF No. 334 at 12 (citing *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 320-21 (3d Cir. 2014) and *Rosenblit v. Zimmerman*, 166 N.J. 391,406-07 (2001).)

Based upon this governing law Plaintiffs identify the following as the core issues in this matter on which discovery is needed:

1. Whether BASF and Cahill destroyed and/or concealed evidence that Emtal talc contained asbestos.

2. Whether BASF and Cahill routinely and systematically made false and misleading statements that Emtal talc did not contain asbestos.

3. Whether BASF and Cahill routinely and systematically made false and misleading statements that there was no evidence that Emtal talc contained any asbestos.

4. Whether BASF and Cahill's spoliation of evidence had the capacity to and did adversely affect and hamper the prosecution of asbestos claims against BASF.

5. BASF and Cahill's reasons or motives for their fraud and spoliating evidence.

6. What BASF and Cahill each sought, achieved and gained from the spoliation of evidence and misrepresentation scheme.

7. Did the Representative Plaintiffs have an asbestos injury claim that BASF and Cahill targeted and affected in the course and conduct of their fraudulent asbestos defense scheme?

8. Whether the plaintiffs were damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed?

As the Third Circuit opinion and the District Court opinions lay out, the focus of Plaintiff's case is on Defendants' actions, and plaintiffs' case is not a re-opener of the thousands of cases that were dismissed, compromised or never brought because of Defendants' fraud. Judge Linares observed in the Court's August 3rd opinion, the requisite "exposition" of the underlying cases mentioned in *Rosenblit* does not require re-litigating the representative (or the absent class members') plaintiffs' underlying suits. Referring for illustration purposes to core issue No. 4 above—[w]hether BASF and Cahill's spoliation of evidence had the capacity to and did adversely affect and hamper the prosecution of asbestos claims against BASF—he wrote:

Such discovery may include some of the facts arising from the underlying cases; however, the purpose of this discovery does not require a complete "redo" of the underlying claims and defenses. The court's analyses in *Rosenblit* and *Abtrax* do not mean that, generally speaking, this Court must re-open the underlying proceedings for the purposes of allowing the parties to prove or disprove the merits of the underlying cases. Accordingly, the Special Master should examine with care Plaintiffs' objections to discovery requests that [they] assert exceed the parameters of the scope set forth herein. As is always the case, discovery requests must be tailored to the relevant issues in a case, subject to a rigorously applied proportionality analysis.

ECF No. 334 at 19-20.

It is plaintiffs' position that the discovery sought by defendants of the representative plaintiffs to date—and is the subject of the parties' numerous discovery disputes and motions—goes far beyond that allowed by law and contemplated by Judge Linares. Notably only if plaintiffs were attempting to—or permitted to—reopen and retry the underlying causes of action, would BASF and its co-defendants have a point that discovery into the merits of the underlying case is permitted because they would entitled to test each claim on the merits and corresponding class action element as well (commonality, typicality, manageability, damages, *etc*.). However, the Third Circuit, has ruled, and the parties are thereby bound, that the *Rooker-Feldman* doctrine does not permit re-litigating the underlying state court claims. Those claims are not at issue here because, as Third Circuit held, this action is ***not*** about the underlying cases. Rather, in the Court's words:

> "As pleaded, this lawsuit concerns years of purported deceit by Engelhard and Cahill. This action is not itself an asbestos injury case, but rather an action about Engelhard and Cahill's conduct when they confronted asbestos injury cases in state courts around the country."

765 F.3d at 311

Nevertheless, defendants have subpoenaed asbestos plaintiffs' counsel for the files of thousands of absent class members and have openly threatened to subpoena others for thousands more. Defendants' discovery requests in this vein are not supported by either the facts or the law.

From a class action perspective, the discovery sought by defendants about absent class members from non-party attorneys is not supported by the law and is way beyond the bounds of proportionality contemplated by the Federal Rules. In addition, the subpoenaed counsel and their separate attorneys need to be heard before the sought after discovery relating to absent class members is decided. These issues have been briefed before but given the significance of any decision, plaintiffs would be happy to update those filings for the Special Master in light of facts that have come to light since this issue was originally raised with the Court or to address any specific issues or concerns the SDM might have.

In addition, factually there is absolutely no need for this extensive discovery into plaintiffs' or absent class members' underling cases. **The defendants already know why every one of the absent class members' cases was dismissed because they kept records on every case and the reason for dismissal**. That the defendants already have the information they now seek is beyond dispute and can be readily demonstrated. In addition, the defendants have, as described above, electronically word searchable litigation files for virtually each and every asbestos plaintiff that has ever sued Engelhard or BASF since 1984.

Plaintiffs believe as a threshold matter there is additional evidence listed on the defendants' privilege log relevant to the Defendants' claimed need for discovery of absent class members. Before any decision is made by the Court concerning discovery of absent class members the Court should apprise itself of the readily identifiable information and facts that plaintiffs believe demonstrate that defendants' request for such extensive absent class member discovery is without merit.

Plaintiffs therefore believe the following threshold or "gateway" issues must be first decided by the Special Master before depositions of the representative Plaintiffs and their counsel, as well as the depositions of defendants, can go forward:

1. Whether defendants are entitled to discovery into underlying litigation from the representative plaintiffs *beyond* the reasons why the underlying claims against BASF were dismissed.

2. Whether any discovery of absent class members is necessary, permissible and proportional to the needs of the case and the limits and conditions on same if permitted.

3. Rulings on evidence being withheld by Defendants under claims of privilege directly relating to gateway issues 1 and 2, as well as to the core issues in general.

4. How the depositions of attorneys shall be conducted so that the required information is disclosed while preserving any claim of privilege.

With the exception of issues of privilege, these gateway issues are fully briefed for the Court as outlined at the end of this submission.

### (b) *Proposed Initial Discovery Phases*

#### (i)    **1st Phase: Spoliation and Destruction of Evidence.**

(A) Spoliation was the first issue raised by BASF of items to address when the parties appeared before Judge Dixon on October 14, 2016. See ECF Nos. 231, 241 and 246. Plaintiffs agree now that this is the easiest part of this case to resolve and should be handled first.

At issue in this case is the intentional destruction of documents by the defendants. Plaintiffs intend to prove that pursuant to the BASF March 7, 1984 purge memo critical, material evidence about the testing of Emtal talc for asbestos was purposely gathered up and destroyed once BASF and Cahill had settled the *Westfall* mesothelioma case in October, 1983. However, BASF maintains that plaintiffs are unable to prove their spoliation claim based upon BASF's contention that it has located some *copies* of some evidence concerning the testing of its talc for asbestos that BASF and Cahill previously represented to the Plaintiffs' former counsel did not exist.

In response to BASF's request for a judicial finding in this Court that Emtal documents exist, plaintiffs argued BASF's motion was premature because they needed the depositions of BASF and Cahill personnel on the subject of spoliation before any such motion is considered. Both BASF and Cahill objected to those depositions arguing that plaintiffs are only entitled to one eight hour 30(b)(6) deposition on all issues concerning the fraud and spoliation that occurred over more than 30 years.

Unlike here, extensive discovery has been conducted in the *Sampson* case in the Middlesex County Superior Court on the subject of spoliation, some of which is presently sealed. In *Sampson,* the plaintiff deposed BASF representatives pursuant to Court orders and has obtained substantial – but not all – discovery needed from BASF on this topic. Plaintiffs here still need the deposition of a Cahill representative as well as defendants Dornbusch and Halket on the issue of spoliation.

13

To be clear, Plaintiffs do not dispute that the *copies* of *some* documents believed to have been destroyed, as well as some limited original testing documents have been found. Nevertheless, they are prepared to prove that key evidence remains missing in its entirety as a result of the intentional destruction of the evidence. Plaintiffs further assert that the copies of documents found by BASF are no substitute for the originals of test apparatus outputs or hardcopies which are required for proper scientific evaluation. Moreover, establishing that copies of some documents have been found while the originals remain missing does not negate the material, probative fact that defendants destroyed the originals in execution of an effort to suppress evidence needed by asbestos claimants to prove their asbestos injury claims. *See Rosenblit, supra,* 166 N.J. at 408-11, 766 A.2d at 759-60 (Holding fact of defendant chiropractor's spoliating alteration of plaintiff's medical records admissible as substantive evidence of defendant's culpability).

Also at issue are documents BASF and Cahill continue to withhold under the claims of privilege. With respect to this issue plaintiffs are prepared to ask the Special Master to examine *in camera* no more than 25 documents on this subject before making any decisions on this issue.

Once the plaintiffs take the deposition of Cahill witnesses and the Court reviews and makes its determinations as to defendants' documents currently withheld concerning spoliation, plaintiffs agree with defendants that the issue will be ripe for determination by the Court possibly through cross motions filed by the parties. This entire process could be completed within a relative short time span (60 to 90 days) once the Court resolves privilege issues, thereby possibly putting to rest a significant part of this case. A proposed schedule on this phase is set out in the next section.

**(B) Proposed Discovery Plan Related to Spoliation**

1.  Plaintiff to identify documents related to spoliation withheld by defendants under claim of privilege for SDM review by October 30, 2017.

2.  Briefing and argument concerning withheld documents to be completed by November 30, 2017.

3.  All fact discovery depositions concerning spoliation shall be completed by January 31, 2018.

4.  Cross motions for Summary Judgment on issue of Spoliation should be filed by February 28, , 2018

**(ii)    2nd Phase: Crime Fraud and Misrepresentation Discovery.**

**A.  *Issues Concerning Attorney Client and Work Product Privilege.***

The second discrete phase of discovery phase should be to address the more complex misrepresentation claims issues. This issue requires resolution of the applicability of New Jersey's crime-fraud and/or *In re Kozlov's*[7] necessity exceptions. At the heart of this case is the concerted effort of BASF's in-house attorneys (Dornbusch, Halket) and outside counsel (Cahill) to destroy and/or hide critical evidence on Emtal's asbestos content and then for over 27 years

---

[7] *In re Kozlov*, 79 N.J. 232 (1979).

systematically lying that no such evidence existed in order to secure dismissals and achieve miniscule settlements of asbestos cases against Engelhard/BASF.

The same lawyers representing BASF in the early 1980s *Westfall* case—where Engelhard scientists swore under oath that tests showed trace to abundant asbestos fibers in Emtal talc—were intimately involved in the gathering up and destruction or other concealment of inculpating evidence in Engelhard/BASF's possession, custody and control once the *Westfall* matter settled in 1983. BASF's in-house attorneys and Cahill (as outside national coordinating lawyers) then systematically wrote letters (or directed or authorized their writing) to asbestos claimants' counsel and asbestos courts falsely representing that Emtal talc was asbestos free. BASF's lawyers further fashioned false and misleading affidavits to corroborate their false representations. In furtherance of their coordinated scheme they also falsely answered (or directed local counsel to unwittingly falsely answer) interrogatories, documents requests and admission requests stating Emtal did not contain any asbestos. They also wrote (or caused local counsel to write) threatening Rule 11 letters to plaintiffs' counsel who did not agree to dismiss claims based upon BASF/Cahill's representations. And when voluntarily dismissals were not forthcoming in a matter for whatever reason, BASF's lawyers filed (or directed the filing of) summary judgment motions which falsely represented that Emtal was asbestos free and there was not any evidence that Emtal contained asbestos in order to obtain involuntary dismissals.

In view of this history, the communications between BASF's outside counsel and BASF/Engelhard's in-house counsel concerning the concerted misrepresentations are squarely at issue and the key (and sole) source of the information is BASF's in-house and outside counsel. The complicit fraud before the Court abrogates any claim of privilege pursuant to the New Jersey crime-fraud or *In re Kozlov* necessity exceptions to attorney-client and work product privileges.

### B. Depositions of the Defendants

As set forth above, questions concerning discussion between attorneys and BASF which acknowledge that evidence of asbestos in Emtal existed and the concerted efforts to cover that evidence up are relevant to the claims asserted here and upheld by the Third Circuit.

Plaintiff anticipates taking the following depositions of defendants or their former employees:

1. Howard ("Peter") Sloane, Esq.

2. Arthur A. Dornbusch II, Esq.

3. Thomas Halkett, Esq.[8]

4. Alan Joslyn, Esq.

5. Michael Sullivan (Cahill paralegal)

6. Scott Martin, Esq.

7. 30(b)(6) representative of Cahill concerning topics of knowledge and misrepresentations in letters, pleadings, motions and collateral materials

---

[8] The depositions of Sloane, Dornbusch and Halket will also involve the issue of spoliation and should be prioritized.

related to litigation matters, as well as claim demographics, procedures and outcome statistics.

8. 30(b)(6) representative of Cahill concerning topics of spoliation.

9. 30(b)(6) representative of BASF concerning topics of knowledge and misrepresentations in letters, pleadings, motions and collateral materials related to litigation matters, as well as claim demographics, procedures and outcome statistics.

10. 30(b)(6) representative of BASF concerning topics of spoliation.

11. 30(b)(6) representative of BASF concerning topics of risk management, claims management, claims procedures, contingent liability cost accounting and financial reporting, and representations and disclosures by Engelhard to BASF in connection with BASF's corporate acquisition and merger of Engelhard in 2006.

The depositions of these defendants or defendant witnesses on the eight core issues identified above will evoke claims of privilege that will disrupt the orderly flow and completion of the depositions. This situation was addressed by the Superior Court in *Sampson* under a SDM procedure BASF agreed to in order for a record to be developed. See Exhibit "A".

Based upon the procedures used in *Sampson*, plaintiffs propose that all depositions of the lawyers who worked for the defendants be taken under a F.R.E. 502(d) order under which witnesses be required to answer germane questions that otherwise would be protected by a claim of attorney-client and/or work product privileges. Plaintiffs further propose that after a deposition is concluded, defendants be given 30 days to designate those portions of the depositions one or more of them believe should remain under seal because of privilege. Plaintiffs will then have the right to challenge those designations with full briefing before the Special Discovery Master. Under this procedure, all parties should have access to the deposition transcripts and documents in the *Sampson* crime-fraud proceeding.

### C. *Depositions of Third Parties.*

As set forth above in section 7, plaintiffs intend to take the depositions of non-party witnesses relevant to the claims asserted here. These witnesses include BASF's local attorneys involved in the communications of the misrepresentations to the representative plaintiffs as well as witnesses involved or knowledgeable about the cover up and destruction of evidence and misrepresentations. Plaintiffs also want depositions of a representative of BASF's insurance carrier and brokers and of the Johnson & Johnson Company. The non-party witnesses who have been subpoenaed so far have not objected to the taking of their depositions and Plaintiffs are in the process of attempting to work out mutually convenient dates for their depositions to take place. Third parties who have been subpoenaed for depositions include:

1. Charles Carter

2. Jennifer Riester

3. Gideon Mark

4. Jack Kluznik

5. Howard A. Merten, Esq.

6. 30(b)(6) representative of Johnson & Johnson.

Notices and subpoenas are prepared for service upon Engelhard/BASF's insurance brokers and companies.

### D. Discovery of the Representative Plaintiffs.

As detailed above, plaintiffs have responded to defendants' multiple sets of interrogatories and document requests and produced non-privileged responsive documents to the extent documents could be reasonably located, including what they understand to be their underlying asbestos claim lawyers' files relating to their particular cases. Plaintiffs have provided the defendants with a privilege log concerning those communications that plaintiffs believe are privileged and not subject to discovery. After Judge Linares ruled on the scope of discovery and held that a limited waiver exists, plaintiffs' privilege log was reviewed by counsel and they concluded that no further disclosures were warranted. Although defendants expressed disagreement with this position they have not pointed plaintiffs to any specific entry on the privilege log that requires further examination. Notwithstanding this review, plaintiffs have agreed to review the privilege log once again to verify that no further documents should be removed from the list of privileged documents and turned over.

Two of the named plaintiffs. Ms. Holley and Ms. Wengerd, have been deposed. During their depositions, a number of areas of questioning were opposed by plaintiffs' counsel based on privilege or limitations on the scope of discovery issues that had been raised prior to and were being litigated before the court at the time of the depositions. Plaintiffs believe Judge Linares's August 3rd ruling supports their objections and the instructions given them during the deposition with perhaps one exception. Based on Judge Linares' recent ruling, and subject to the Special Master's further directions on privilege matters, defendants may be permitted to ask representative plaintiffs certain limited questions concerning the reason for dismissing cases against BASF, including any contemporaneous communications with their former counsel about the reasons their or their decedent's cases against Engelhard were dismissed or settled cheaply. The precise extent of such questioning should be discussed by the parties with the Special Master.

Plaintiffs' counsel is in the process of working with the families of two of the representative plaintiffs, Donna Ware and Nancy Pease, regarding changes needed in view of the death of one and changed circumstances of the other. Ms. Ware has died. She was survived by her nephew Randall Ware, who inherited Ms. Ware's estate and, through her, Mr. Ralph Ware's (the Emtal victim) estate as well. Raymond Ware unfortunately also died recently. In turn his estate, including the Ralph Wares' subject claims against BASF, are now being administered by his son, Ryan Ware. Ryan Ware lives in West Virginia. Plaintiffs' Counsel is in communication with Ryan Ware on his being substituted in place of plaintiff Donna Ware and continuing the Estate's claim. As to Mrs. Pease, unfortunately she has developed severe dementia and is no longer able to continue as the personal representative of the Estate of her deceased father, William Clarke. Her sister, Gayle Williams, is taking over that role and upon receipt of her letters of administration will be substituted for Mrs. Pease.

### E. Depositions of Plaintiffs' Former Counsel

Defendants have noticed the depositions of counsel to the representative plaintiffs in the underlying cases, Mr. Thomas Bevan and Mr. James Early. Both witnesses are represented by

counsel who need to be heard on the issue concerning the need for and scope of any deposition. Each has filed oppositions to BASF's motions to enforce subpoenas and determine objections.

Plaintiffs anticipate that under Judge Linares' August 3rd Order limited questioning may be allowed concerning the fundamentals of the underlying litigation against BASF, the witness's knowledge about Emtal (including representations and information he received from Engelhard/BASF and its attorneys) and why the cases of the representative plaintiffs against Engelhard were dismissed or settled. The precise extent of such questioning should be discussed by the parties and counsel to the witnesses with the Special Master. Plaintiffs believe, as Judge Linares' August 3rd order allows for, that the depositions of the personal representatives' former counsel should be governed by the same F.R.E. 502(d) order governing the depositions of the defendant lawyers.

### F. *Discovery Schedule Concerning Misrepresentations.*

In view of the above, plaintiffs propose the following schedule for this 2nd Phase, which overlaps partially with the 1st Phase:

1. Plaintiffs shall identify those documents on the defendants' privilege logs plaintiffs believe relate to discovery of absent class members for *in camera* review by October 31, 2017. Defendants will turn over those documents to the Court by November 6, 2017.

2. Plaintiffs shall identify those documents on the defendants' privilege logs plaintiffs believe relate to their fraudulent misrepresentation claim for *in camera* review by the Court by November 15, 2017. Defendants will turn over those documents to the Court by November 31, 2017.

3. Any additional briefs concerning discovery of absent class members will be submitted by November 15, 2017.

4. After review of the documents turned over the Special Discovery Master will schedule any briefing and argument that he deems appropriate.

5. Discovery of all non-party witnesses noticed by the plaintiffs shall be completed by March 31, 2018.

6. Depositions of any party shall be completed by June 31, 2018.

### (iii)   **Subsequent Phases, Expert Discovery, Class Certification and Pre-trial Conference items**.

Plaintiffs believe that it is not practical or realistic at this juncture to determine and set a definitive plan or time schedule for determining other discovery phases that may needed as well as other pre-trial time table items such as the exchange of expert reports, expert depositions scheduling, class certification motion and briefing (which are highly dependent upon discovery being taken in, at least, the 1st and 2nd Phases set out above), dispositive motions and final pre-trial conference and related tasks. The Special Discovery Master should defer entering a schedule as to these items.

(c)  *Comprehensive Initial Discovery Schedule*

Based upon the above plaintiffs propose the following comprehensive initial discovery schedule:

- Resolution of Gateway Issues by SDM

- Plaintiff to identify documents related to spoliation withheld by defendants under claim of privilege for SDM review by October 31, 2017.

- Plaintiffs shall identify those documents on the defendants' privilege logs plaintiffs believe relate to discovery of absent class members for *in camera* review by October 31, 2017. Defendants will turn over those documents to the Court by November 6, 2017.

- Plaintiffs shall identify those documents on the defendants' privilege logs plaintiffs believe relate to their fraudulent misrepresentation claim for *in camera* review by the Court by November 15, 2017. Defendants will turn over those documents to the Court by November 31, 2017.

- After review of the documents turned over the SDM will schedule any briefing and argument that he deems appropriate.

- Any additional briefs concerning discovery of absent class members will be submitted by November 15, 2017 or as directed by the SDM.

- Briefing and argument concerning withheld spoliation documents to be completed by November 30, 2017 or as directed by the SDM.

- All fact discovery depositions concerning spoliation shall be completed by January 31, 2018.

- Cross motions for Summary Judgment on issue of Spoliation should be filed by February 28, 2018 or as directed by the SDM.

- Discovery of all non-party witnesses noticed by the plaintiffs shall be completed by March 31, 2018.

- Depositions of any party shall be completed by June 31, 2018.

- Expert Disclosure and Discovery to be set at future conference based upon the progress of fact discovery

**9.  Do you anticipate any special discovery needs (*i.e.,* videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? If so, please explain.**

Yes. Some of the Defendants have principal offices located outside of this District, and some of the anticipated key factual witnesses also reside outside of this District. As a result, depending on the deponent, videotape/telephone depositions may be used and travel to out-of-state locations for document review and meetings may be necessary.

**10. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced?**

None at this time other than possible issue of BASF producing a copy of its searchable database on asbestos claims,

**11. Do you anticipate entry of a Discovery Confidentiality Order?**

One already has been agreed to and entered. See ECF. No. 260.

**12. Do you anticipate any discovery problem(s) not listed above?**

Yes.

This matter is proceeding concurrently to parallel state court litigation in the Superior Court of New Jersey's Asbestos Program presided over by Judge Viscomi, such as the *Sampson* and *Ross* cases. Judge Viscomi's management of the cases is assisted by standing special master, Agatha N. Dzikiewicz, Esq. These related New Jersey matters, and especially the *Sampson* case, which has taken over and built upon the record developed in the preceding *Paduano* case, are more advanced in discovery. While this matter was clearing pleading issues, the Superior Court has devoted considerable time and resources to address and determine the overarching crime-fraud exception issues embedded in the fraudulent misrepresentation issues involved in these spoliation and fraudulent concealment cases (which issues are being treated separately from the document destruction/concealment spoliation issues by the Superior Court). The Superior Court, as stated in its July 7th Order, is poised to take up and address the spoliation destruction issues. Thus, the issue of coordination of discovery to avoid duplicative discovery needs to addressed.

Efforts to coordinate discovery in the state and federal matters so far has not been successful. Mainly such efforts have been hampered by: (1) BASF's refusal to allow this Court and all of the direct parties before it controlled access to the Superior Court's crime-fraud record and findings. This has impeded the Court's accessing these materials in connection with determining discovery issues notwithstanding Judge Viscomi's modifying the Superior Court's sealing order to enable this Court to access and review materials such as Justice Stein's Recommendations; and (2) defendants' unwillingness to agree to multiple 30(b)(6) depositions along with extended lengths of examination time to conduct such depositions. Both, as the Superior Court has recognized and allowed, are necessary to accommodate 27 years of events occurring in many different venues. Plaintiffs request the Special Master take up these issues with the parties and develop rulings and processes which can enable the two New Jersey courts to coordinate the cases' discovery and avoid duplication or divergent rulings, especially since New Jersey state law governs the matters before both Courts.

As outlined above, there will be numerous depositions of parties' former or current attorneys (none of which are trial counsel in this matter). Protocols and procedures regarding depositions of attorneys should be established as a gateway matter in accordance with Judge Linares' August 3rd rulings. Similarly, protocols concerning at issue waiver should be established should BASF or any other co-defendant assert reliance on counsel as part of its or their defense. See No. 8 above.

**13. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.):**

Plaintiffs are not opposed to mediation of their claims. It may be beneficial for a new mediator to become involved.

**14. Is this case appropriate for bifurcation?**

No.

**15. Interim status conferences should be held regularly in view of the nature of the case.**

**16. Plaintiffs do not consent to the trial being conducted by a Magistrate Judge.**

**17. Identify any other issues to address at the Rule 16 Scheduling Conference.**

Plaintiffs believe the following motions are outstanding or further action by the Special Master is required in light of Judge Linares' August 3rd Order and Opinion:

1. BASF's Request for Leave to File a Motion for Findings that Documents Exist (Dkt. 231, 241, 246)

2. Plaintiffs' request for a 502(d) Order and 30(b)(6) Witness Requests (Dkt. 247, ).

3. Plaintiffs' Motion to Compel Indemnification Agreements (Dkt. 248, 266, 267).

4. BASF/Cahill's Motion for Sanctions (Dkt. 303, 304, 312, 318) .

5. Johnson & Johnson Subpoena issues (Dkt. 268,276, 290).

6. BASF's Motion to Enforce Bevan (ND Ohio, transferred to DNJ)/Early Subpoenas (Dkt.  257, 259).

7. BASF's Motion on the Discoverability of Plaintiffs' Underlying Settlements with Other Defendants (Dkt. 250, 267).

8. Rothenberg Motion to Quash (Court's order denied motion without prejudice pending resolution of other motions.) (Dkt.229, 237, 239, 243,251, 275))

Respectfully submitted,

/s/ Christopher M. Placitella

    Stewart L. Cohen, Esq.
    Christopher M. Placitella, Esq.
    Michael Coren, Esq.
    Jared M. Placitella, Esq.
    **COHEN PLACITELLA & ROTH, P.C.**
127 Maple Avenue
Red Bank, NJ 07701
T: (732) 747-9003
F: (732) 747-9004
scohen@cprlaw.com
cplacitella@cprlaw.com
hroth@cprlaw.com
mcoren@cprlaw.com
jmplacitella@cprlaw.com

/s/ Jeffrey M. Pollock

    Jeffrey M. Pollock, Esq.
    **FOX ROTHSCHILD LLP**
997 Lenox Drive, Building 3
Princeton Pike Corporate Center
Lawrenceville, NJ 08648-2311
T: (609) 896-3600
F: (609) 896-1469
jmpollock@foxrothschild.com

*Attorneys for Plaintiffs and the Putative Class.*

22