# EXHIBIT F

MARILYN HOLLEY - 04/05/2017

```
 1            IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF NEW JERSEY

 3
    KIMBERLEE WILLIAMS,      )
 4  et al.,                  )
                             )
 5         PLAINTIFFS,       )
                             )
 6                           )
         vs.                 )      CIVIL ACTION
 7                           )      NO. 11-CV-01754
                             )
 8  BASF CATALYSTS LLC,      )
    et al.,                  )
 9                           )
           DEFENDANTS.       )
10

11                   -  -  -  -  -
        THE VIDEOTAPED DEPOSITION OF MARILYN HOLLEY
12              WEDNESDAY, APRIL 5, 2017
                     -  -  -  -  -
13

14      The videotaped deposition of MARILYN HOLLEY,

15  called by the Defendants for examination pursuant

16  to the Federal Rules of Civil Procedure, taken

17  before me, the undersigned, Sarah R. Drown, Notary

18  Public within and for the State of Ohio, taken at

19  the offices of Thompson Hine LLP, 3900 Key Center,

20  127 Public Square, Cleveland, Ohio, commencing at

21  10:01 a.m., the day and date above set forth.

22

23

24

25
```

1  Q  And as a class representative, could you point
2     me to the person who would know anything about
3     those practices as referenced in the complaint?
4              MR. COREN:          Objection to
5     the form.
6  Q  Could I talk to Mr. Bevan?  Would he be a
7     better person to talk to?
8  A  Yes.  Because I consider accepted practices to
9     be an issue that the attorneys would know
10    about, not an issue that I would know about
11    personally.
12 Q  So it's something --
13 A  In spite of reviewing -- I review the complaint
14    based upon -- based upon facts that I know of.
15    The legal issues I rely on the attorneys.  I
16    consider that to be a legal issue when you say
17    "accepted practices."  How would I know about
18    accepted practices as a layperson?
19 Q  That would be Mr. Bevan?
20 A  Right.
21 Q  Okay.  And turn to the next sentence.  It says,
22    "reasonably relying upon and acting upon the
23    misrepresentations and material omissions of
24    Defendants regarding Engelhard's talc products
25    and the absence of any evidence indicating

```
 1        Engelhard's talc contained asbestos fibers that
 2        were made to her attorney and representative,
 3        Thomas Bevan, as set forth more particularly
 4        herein."
 5             Do you see that?
 6   A    Yes.
 7   Q    I think you mentioned earlier that the alleged
 8        representations were made to or known about by
 9        Mr. Bevan, not you, correct?
10   A    That would be correct.
11   Q    So if I want to ask somebody about that
12        sentence, I would have to ask Mr. Bevan,
13        correct?
14   A    Yes.  It says, "that were made to her attorney
15        and representative, Thomas Bevan."
16   Q    And then going to the next sentence, it says,
17        "Plaintiff voluntarily dismissed her lawsuit
18        against Eastern Magnesia as part of a nominal
19        settlement with a group of talc supplier
20        defendants without receiving full, fair and
21        adequate compensation for her asbestos injury
22        claims against BASF's predecessors."
23             Do you know anything about that sentence
24        and the facts underlying it?
25   A    That my mom accepted settlement based upon the
```

MARILYN HOLLEY - 04/05/2017                Page 62

```
 1        facts that her attorneys had at that time.
 2   Q    And you know about that through Mr. Bevan,
 3        correct?
 4   A    Yes, I do.
 5   Q    Other than what you know from Mr. Bevan, you
 6        don't have any personal knowledge?
 7   A    I have no personal knowledge.
 8   Q    Turning to the next page, still paragraph 25.
 9        "Plaintiff Holley did not know and learn that
10        her decedent was a victim of Defendants'
11        Fraudulent Asbestos Defense Scheme until late
12        2010/early 2011, when she was informed of the
13        same by her attorney, Tom Bevan."
14             Do you see that?
15   A    Yes.
16   Q    Do you have any papers, documents, emails, that
17        could put a more specific date on when
18        Mr. Bevan informed you of this fraudulent
19        asbestos defense scheme?
20   A    To the best of my recollection, it was late
21        2010, early 2011 when I met with -- when I met
22        at Attorney Bevan's office.
23   Q    Okay.  And was that the same meeting
24        Mr. Placitella was at?
25   A    Yes.
```

| | | |
|---|---|---|
| 1 | Q | So the first time you heard of this alleged |
| 2 | | scheme and filing a class action complaint was |
| 3 | | a meeting with Mr. Bevan and Mr. Placitella |
| 4 | | that lasted about two hours at Mr. Bevan's |
| 5 | | office? |
| 6 | A | One or two hours.  And let me -- let me |
| 7 | | clarify.  It was -- Mr. Coren was there. |
| 8 | Q | And Mr. Coren too? |
| 9 | A | Uh-huh.  Yeah. |
| 10 | Q | And after that the complaint was filed? |
| 11 | A | Sometime after that.  I don't remember exactly |
| 12 | | when, but sometime after that meeting the |
| 13 | | complaint was filed. |
| 14 | Q | Did you have any other meetings between that |
| 15 | | first meeting and the time the complaint was |
| 16 | | filed? |
| 17 | A | I can't recall for sure.  I know that there |
| 18 | | were at least one or two more meetings, but I |
| 19 | | can't say specifically if they were before or |
| 20 | | after the complaint was filed. |
| 21 | Q | And at any of those meetings were there people |
| 22 | | besides your attorneys or other class |
| 23 | | representatives? |
| 24 | A | At the first meeting for sure. |
| 25 | Q | The other class reps were at the meeting? |

```
 1   A    Yes.
 2   Q    Were there people who weren't class
 3        representatives at the meeting?
 4   A    I would not know that.
 5   Q    Okay.  After -- withdrawn.
 6             After that first meeting, were there
 7        other meetings where people attended who were
 8        not class reps or attorneys?
 9   A    Not that I can recall.  I won't say
10        unequivocally, but not that I can recall.
11   Q    And at this first meeting, did Mr. Placitella
12        in words or in substance, or any of his
13        colleagues, tell you to make sure you
14        maintained all of your documents relating to
15        the underlying Bevan cases against Emtal?
16   A    No, I was not specifically told that.
17   Q    Were you ever told that?
18   A    Not specifically, no.
19   Q    Turning to the next sentence of paragraph 25.
20        "Had Plaintiff's counsel and Plaintiff known
21        about the existence of spoliation described
22        more particularly herein and/or the existence
23        of evidence that BASF's talc and talc products
24        contained asbestos, the settlement demand would
25        have been higher and/or the Plaintiff would
```

```
 1        have taken her case to trial."
 2             Do you see that?
 3    A   Yes.
 4    Q   Do you have any knowledge of the facts
 5        surrounding the settlement demand and whether
 6        you would have taken the case to trial or is
 7        that a Mr. Bevan topic as well?
 8    A   I have no personal knowledge of that, no.
 9    Q   And it says here plaintiffs would have taken
10        the case to trial.
11             Do you see that?
12    A   Yes.
13    Q   Out of the 98 or so cases -- withdrawn.
14             Out of the 98 or so defendants that
15        you've sued, have any of those cases gone to
16        trial?
17    A   We did not go --
18                  MR. COREN:       Form objection.
19             You can answer it.
20                  THE WITNESS:     Okay.
21    A   We did not go to trial.
22    Q   In any of them?
23    A   We did not go to trial.
24    Q   But Mr. Bevan would know whether this was the
25        case that you were going to take to trial?
```

```
 1        He's the person I should ask?
 2   A    He would know that.  I specifically personally
 3        recall that BFGoodrich defendant settled within
 4        a week before the trial date.
 5   Q    And then the next sentence says, "Plaintiff is
 6        willing and offers to return the portion of the
 7        settlement contributed by BASF, or such amount
 8        the Court deems fair and just, in order to be
 9        restored to the status quo ante the settlement
10        with BASF."
11            So the plaintiff, that's you, correct?
12   A    Correct.
13   Q    And that means you're willing to return the
14        money you've already gotten from BASF or
15        Engelhard?
16   A    If I'm not mistaken in the way I read this
17        paragraph, the money would have been returned
18        if there had not been a problem with BASF.
19   Q    Do you know how much money you or the estate
20        received from BASF or Engelhard?
21   A    I don't know.  I don't remember the amount.  I
22        don't remember.
23   Q    Okay.  In settling these cases -- by the way,
24        you've dealt with various settlements of people
25        who had asbestos, correct?
```

```
 1   A   Correct.
 2   Q   And have you dealt with defendants who didn't
 3       have asbestos?
 4   A   I can't recall.
 5   Q   By the way, with respect to -- withdrawn.
 6             You've been acting as a representative
 7       for your mother's estate since 2000 in these
 8       asbestos cases?
 9   A   No.  No.  2000 was prior to her death.
10   Q   Okay.
11   A   Okay.  She passed June 7, 2001.
12   Q   Correct.
13   A   Okay.
14   Q   So since that time you've been responsible for
15       handling the asbestos cases?
16   A   Since that time -- in 2001 we did open up an
17       estate with the local Probate Court.
18   Q   And you mentioned before that you've received
19       hard copies of documents from Mr. Bevan?
20   A   Correct.
21   Q   And you say you haven't received any emails
22       from Mr. Bevan?
23   A   No.  We usually deal with the documents
24       themselves via hard copy.
25   Q   Okay.  So Mr. -- if Mr. Bevan has emails to
```

```
 1         settlement?
 2   A     Yes.
 3   Q     And did you -- withdrawn.
 4               And has Mr. Bevan represented you in
 5         these aggregate settlements?
 6   A     Yes.
 7   Q     Now, if you turn to paragraph 230, at the very
 8         bottom of the page, it says, "Correspondingly."
 9         Do you see it at the bottom right?
10   A     Uh-huh.
11   Q     "Correspondingly, the Bevan Law Firm asbestos
12         injury clients, including Plaintiff Pease,
13         Plaintiff Holley's decedent, Ms. Darnell, and
14         Plaintiff Ware, as well as others similarly
15         situated to them, would not have given their
16         consent or authorization to participate in an
17         aggregate settlement with BASF."
18               Do you see that?
19   A     Yes.
20   Q     Do you have any knowledge of whether or not you
21         would have given authorization to participate
22         in a settlement with BASF?
23   A     I have no knowledge of that.
24   Q     If I wanted -- the person who would have
25         knowledge of that would be Mr. Bevan, correct?
```

```
 1   A   Yes, it would have been Mr. Bevan.
 2   Q   All right.  Could you turn to page -- to
 3       paragraph 289.
 4   A   Okay.
 5   Q   It says, "Plaintiffs' claims are typical of the
 6       claims of other Class Members'."
 7           Do you see that?
 8   A   Yes.
 9   Q   Do you know what that means?
10   A   Yes.
11   Q   What does that mean to you?
12   A   It says because we were similarly affected by
13       Defendants' spoliation of asbestos evidence.
14   Q   And do you have any facts to that or is that a
15       Mr. Bevan issue?
16   A   That's a Mr. Bevan issue.
17   Q   Okay.  Could you turn to paragraph 316.
18   A   I'm there.
19   Q   Okay.  It says, "As a further proximate" cause
20       "of the above described deliberate gathering
21       and withholding, destruction and/or concealment
22       of documents and evidence relating to Class
23       Members' underlying asbestos claims, and/or the
24       false and misleading statements thereafter that
25       no documents or evidence existed, Plaintiffs
```

```
 1        and other Class Members may or will incur, or
 2        have already incurred pecuniary losses and
 3        damages, including but not limited to the loss
 4        of their underlying asbestos injury claim, the
 5        expenses and costs of proceeding without this
 6        evidence incurred in the effort to replace,
 7        locate, or identify evidence, and the cost of
 8        prosecuting this case to prove the fraudulent
 9        concealment and spoliation of evidence."
10             Do you see that?
11   A    Yes.
12   Q    Okay.  First of all, the pecuniary damages,
13        what pecuniary damages, what money damages have
14        you suffered?
15   A    What money damages?
16   Q    Yeah.
17   A    Are you asking are there money damages that I
18        have suffered personally?
19   Q    Yes.
20   A    I'd have to give thought to that question.  I'm
21        not certain what's involved in money damages
22        for me.  Are you talking about time?  Are you
23        talking about any kind of material loss that I
24        have had?  I'm not sure what that means.
25   Q    What about in terms of your mother's estate,
```

```
 1        what money damages has that incurred?
 2   A    What do you mean?
 3   Q    Well, it says that class members, plaintiffs --
 4   A    Right.
 5   Q    -- have -- may or will incur or may have
 6        already incurred pecuniary or monetary losses
 7        and damages, including but not limited to the
 8        loss of their underlying asbestos injury
 9        claims, and then it goes on.
10   A    Uh-huh.
11   Q    So let's start there.  With respect to the loss
12        of the underlying asbestos injury claim, do you
13        think that that's a loss that you or your
14        mother's estate has incurred?
15   A    Yes.
16   Q    Okay.  And how much?
17   A    How much?
18   Q    Is that loss?
19                  MR. COREN:       Objection as to
20        form.
21   A    As in a monetary value?
22   Q    Yes.
23   A    I would not be able to answer that.
24   Q    Well, you now have testified you've been
25        involved with Mr. Bevan for 15 years settling
```

```
                 MARILYN HOLLEY - 04/05/2017              Page 77
```

 1      cases against asbestos defendants, including,
 2      as we're going to see, people who actually
 3      created asbestos piping where your mother
 4      worked.
 5   A  Right.
 6   Q  And you settled those cases?
 7   A  Right.
 8   Q  So you have some understanding of what cases
 9      settle for, correct?
10   A  I have some understanding of what cases settled
11      for, but I do not know how the figures were
12      derived.
13   Q  Well, as we sit here today, do you have any
14      amount of money that you could identify for me
15      as your loss for having your mother's claim
16      dismissed or settled against BASF?
17                  MR. COREN:       Objection as to
18      form.
19                  You can respond.
20   A  I have -- I have no idea.  That has not been
21      discussed.
22   Q  Well, do you know that you or your mother's
23      estate have settled with other talc
24      manufacturers?
25   A  I know that they have settled with other

```
 1       defendants, whether or not they were talc
 2       manufacturers, I'm not certain.  I particularly
 3       remember defendants like BFGoodrich, Cooper,
 4       that sort of thing.
 5   Q   And you said you understood the term "aggregate
 6       settlements" --
 7   A   Right.
 8   Q   -- right?
 9   A   Right.
10   Q   That's where maybe a bunch of defendants --
11   A   Right.
12   Q   -- were settling --
13   A   Right.
14   Q   -- with a bunch of plaintiffs --
15   A   Right.
16   Q   -- correct?
17   A   Right.  Right.
18   Q   And would you agree with me, would it be fair
19       if I can show you that your mother or your
20       mother's estate settled with talc manufacturers
21       who admitted they had asbestos in the talc,
22       that would be instructive for you in
23       understanding what the damages are in having
24       settled with Engelhard, correct?
25   A   I think it's instructive to a certain extent.
```