# EXHIBIT G

DONNETTE WENGERD - 04/06/2017

```
 1
              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF NEW JERSEY

 3

 4    KIMBERLEE WILLIAMS,       )
      et al.,                   )
 5                              )
              Plaintiffs,       )
 6                              )
      vs.                       ) Case No. 11-cv-01754
 7                              )
      BASF CATALYSTS, LLC,      )
 8    et al.,                   )
                                )
 9            Defendants.       )

10

11
                              - - - - -
12     THE VIDEO RECORDED DEPOSITION OF DONNETTE WENGERD
                    THURSDAY, APRIL 6, 2017
13                            - - - - -

14

15

16        The video recorded deposition of DONNETTE

17    WENGERD, called by the Defendants for examination

18    pursuant to the Ohio Rules of Civil Procedure, taken

19    before me, the undersigned, Jill A. Kulewsky, RPR

20    and Notary Public within and for the State of Ohio,

21    taken at the offices of Thompson Hine, LLP, 3900 Key

22    Tower, 127 Public Square, Cleveland, Ohio,

23    commencing at 9:44 a.m., the day and date above set

24    forth.

25
```

 1                THE VIDEOGRAPHER:  This is the
 2   beginning of the video-recorded deposition of
 3   Donnette Wengerd in the case of Kimberlee
 4   Williams, et al. versus BASF Catalysts, LLC, et
 5   al., in the United States District Court for
 6   the District of New Jersey, Civil Action Number
 7   11-CV-01754.
 8        My name is Alex Cook.  I'm the video
 9   operator.  Would counsel please identify
10   yourselves and state whom you represent.
11                MR. COREN:  Good day.  I am
12   Michael Coren.  I represent the Plaintiffs in
13   this case, including the witness today,
14   Donnette Wengerd.
15                MR. PLACITELLA:  John Placitella
16   for the Plaintiffs.
17                MR. FARRELL:  Peter Farrell of
18   Kirkland & Ellis for Defendant BASF Catalysts.
19                MS. DALMUT:  Elizabeth Dalmut,
20   Kirkland & Ellis, on behalf of BASF Catalysts.
21                MR. GEYERMAN:  Grant Geyerman
22   from Williams & Connolly on behalf --
23                MR. TUNIS:  I'm sorry.
24                MR. GEYERMAN:  -- of the Cahill
25   Defendants.

```
 1                 MR. COREN:  Eric.
 2                 MR. TUNIS:  Eric Tunis on the
 3      phone on behalf of Thomas Halket.
 4                 MR. BOYLE:  John Boyle by phone
 5      on behalf of Defendant Arthur Dornbusch.
 6                 MR. COREN:  I think that's it.
 7                 DONNETTE WENGERD
 8   of lawful age, called for examination, as provided
 9   by the Ohio Rules of Civil Procedure, being by me
10   first duly sworn, as hereinafter certified, deposed
11   and said as follows:
12              EXAMINATION OF DONNETTE WENGERD
13   BY MR. FARRELL:
14   Q   Good morning, Mrs. Wengerd.  Can you describe
15       the claims you're pursuing in this case?
16   A   I'm pursuing claims against BASF for fraud.
17   Q   And what is the fraud?
18   A   Fraud was against the claim that was brought on
19       my mother's behalf, that there was evidence
20       left out or not provided toward her claim, and
21       it was therefore thrown out.
22   Q   And what is the source of that information?
23                 MR. COREN:  Donnette, I'm going
24       to instruct you not to answer to the extent
25       your answer relies upon the advice of counsel.
```

1      If you can answer the question without
2      incorporating or revealing advice of counsel,
3      please respond to Mr. Farrell's question.
4   A  I'm unable to add anything other than the
5      advice of counsel.
6   Q  So you have no personal knowledge of the fraud
7      committed by BASF, other than what you learned
8      through counsel?
9   A  That is correct.
10  Q  Do you know when this alleged fraud began?
11  A  Not to my knowledge of an exact date, no.
12  Q  Did it end on a particular date?
13  A  Not to my knowledge.
14  Q  Who was involved in the alleged fraud by BASF?
15              MR. COREN:  Once again, I
16     instruct you not to answer to the extent your
17     answers rely upon advice of counsel.  If you
18     can answer the question without incorporating
19     or revealing advice of counsel, please respond.
20  A  I cannot respond without advice of counsel.
21  Q  So you have no personal knowledge of who was
22     involved in an alleged fraud by BASF other than
23     information provided to you by counsel?
24  A  That is correct.
25  Q  What is the Westfall case?

| | | |
|---|---|---|
| 1 | A | The Westfall case was a case where information |
| 2 | | was provided regarding BASF and some of the |
| 3 | | evidence of asbestos in their talc, and that is |
| 4 | | part of what the fraud is, that that was not |
| 5 | | supplied. |
| 6 | Q | And where did you learn about the Westfall |
| 7 | | case? |
| 8 | | MR. COREN: The same instruction. |
| 9 | A | Through my attorney. |
| 10 | Q | So other than conversations with your counsel, |
| 11 | | you have no personal knowledge of the Westfall |
| 12 | | case? |
| 13 | A | That's correct. |
| 14 | Q | Do you know how the Westfall case connects to |
| 15 | | the case that your mother filed? |
| 16 | A | The information that was provided to the |
| 17 | | Westfall case was not provided in my mother's |
| 18 | | case, and the evidence of such information even |
| 19 | | existing was denied by BASF. |
| 20 | Q | And where did that information come from? |
| 21 | | MR. COREN: Once again, I |
| 22 | | instruct you not to answer to the extent your |
| 23 | | answer relies upon the advice of counsel.  If |
| 24 | | you can answer the question without |
| 25 | | incorporating or revealing the advice of |

```
 1            counsel, please respond.
 2    A       The information would come from my attorney.  I
 3            can't answer without their advice.
 4    Q       So other than information you learned from
 5            counsel, you can't tell me how the Westfall
 6            case relates to the case that your mother
 7            filed?
 8    A       That's correct.
 9    Q       Which attorney told you about the Westfall
10            case?
11    A       That would be Mr. Cohen, as well as Mr. Bevan.
12    Q       Who is Mr. Bevan?
13    A       Thomas Bevan is another one of my attorneys.
14    Q       Is Mr. Bevan representing you in this case?
15    A       He is a part of the legal team.
16    Q       So he's counsel for you in the Williams case?
17    A       He would be a part of the team.  There are
18            quite a few attorneys representing me.
19    Q       Who are the other attorneys?
20    A       Mr. Cohen, Mr. Placitella.  There are also a
21            few others that I have not met, but I do
22            understand that they are involved in helping.
23    Q       Do you know which law firms they are associated
24            with?
25    A       Cohen and Placitella is one.  Bevan and
```

```
 1   Q   During this meeting with Mr. Bevan and
 2       Mr. Coren, did you take any notes?
 3   A   No.
 4   Q   Did they take any notes?
 5               MR. COREN:  Objection.  Don't
 6       answer.
 7               MR. FARRELL:  What is the basis
 8       for the instruction not to answer?
 9               MR. COREN:  Work product.
10       Attorney-client privilege.
11               MR. FARRELL:  The fact that
12       whether you took notes is privileged?
13               MR. COREN:  Everything is, yes.
14       Move on.
15               MR. FARRELL:  Everything is
16       privileged.
17   Q   Do you know the answer to whether Mr. Coren or
18       Mr. Bevan took notes at their meeting with you?
19   A   Yes.
20   Q   You could answer that question but for the
21       instruction not to answer?
22   A   That is correct.
23               MR. COREN:  Peter, I look forward
24       to seeing all your notes with your meetings
25       with your clients.
```

```
 1                  MR. FARRELL:  I didn't ask to see
 2        the notes, Michael.  I asked whether they
 3        existed.
 4   Q    Do you still -- withdrawn.
 5             Have you signed a retention letter
 6        retaining the Cohen Placitella firm in the
 7        Williams case?
 8   A    Yes.  I believe I have.
 9   Q    Do you have a copy of that letter?
10   A    I would have to check my file for certainty.
11   Q    You don't know one way or the other whether you
12        still have the retention letter?
13   A    I couldn't tell you if my electric bill is in
14        that file, sir, without looking at the file
15        itself.
16   Q    Well, I'm not asking whether it's in the file.
17        I'm just asking do you know, as you sit here
18        today, one way or the other whether you still
19        have the retention letter that you signed
20        retaining the Cohen Placitella firm?
21   A    I don't know.
22   Q    Did you sign a retention letter retaining the
23        Bevan firm in connection with the Williams
24        case?
25   A    I don't know.  I can't recall if there was one
```

```
 1        with Bevan.  I do know that I do believe that I
 2        signed one with Mr. Coren's firm.
 3   Q    When you first spoke to the Cohen Placitella
 4        firm about potentially being a Plaintiff in the
 5        Williams case, did they tell you to preserve
 6        all of the documents related to your mother's
 7        asbestos case?
 8                   MR. COREN:  Objection.
 9        Privilege.  Move on.
10   A    Per my attorney's suggestion not to answer the
11        question.
12   Q    Is it your understanding, Mrs. Wengerd, that
13        you're supposed to preserve all of the
14        documents related to your mother's asbestos
15        case?
16                   MR. COREN:  Objection.
17        Privilege.  Move on.
18   A    Again, per my attorney's information, I'm
19        choosing not to answer.
20   Q    Do you know the answer to that question?
21   A    Yes.
22   Q    Does the retention letter you have with the
23        Cohen Placitella firm address the fees that
24        they would receive for acting as counsel in
25        this case?
```

```
 1                    MR. COREN:  Objection.  Don't
 2        answer.
 3   A    That would be attorney-client privilege, I
 4        believe.
 5   Q    You believe, or it is?
 6                    MR. COREN:  It is.  Move on.  I'm
 7        asserting it for her.
 8                    MR. FARRELL:  Your position is
 9        that your fee arrangement with the Plaintiffs
10        in this class action is privileged?
11                    MR. COREN:  Yes.  It's a fee --
12        it's a client communication, a fee retainer.
13        If His Honor would like to see it, we will
14        provide it.  Move on.
15   Q    Do you know the answer to the question I asked?
16   A    I'm not sure without looking at the document
17        itself.
18   Q    Without looking at the retention letter, you
19        don't know the nature of the fee arrangement
20        you have with the Cohen Placitella firm?
21                    MR. COREN:  Objection.
22   A    Per my attorney's suggestion not to answer the
23        question, I'm choosing not to answer.
24   Q    Do you know the answer to that question?
25   A    No.  I'm not sure.
```

```
 1   Q   What is the fee arrangement you have with the
 2       Bevan firm?
 3   A   That would be attorney-client privileged
 4       information.
 5   Q   Do you know the answer to that question?
 6   A   Yes.
 7   Q   What's the answer?
 8               MR. COREN:  Excuse me --
 9   A   It's attorney-client privileged.
10               MR. COREN:  She asserted it.
11   Q   Are you paying the Cohen Placitella firm right
12       now?
13               MR. COREN:  Objection.  Don't
14       answer.
15   A   It would be attorney-client privileged
16       information, any fee agreement that I may have
17       with the firm.
18   Q   Have you paid any money to the Bevan firm to
19       represent you in the Williams case?
20               MR. COREN:  Objection.  Same.
21   A   Again, same.  I'm choosing not to answer.
22   Q   Is any other law firm representing you in
23       connection with the Williams case other than
24       Cohen Placitella and the Bevan firm?
25   A   I believe there is another attorney on the team
```