LAW OFFICES
**COHEN, PLACITELLA & ROTH**
A PROFESSIONAL CORPORATION
TWO COMMERCE SQUARE
2001 MARKET STREET, SUITE 2900
PHILADELPHIA, PENNSYLVANIA 19103

(215) 567-3500
FAX (215) 567-6019
www.cprlaw.com

RED BANK, NJ
LEMOYNE, PA
BALA CYNWYD, PA
PITTSBURGH, PA
CHERRY HILL, NJ

March 5, 2018

The Honorable Justice Roberto A. Rivera-Soto (ret.)
Special Discovery Master
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1163

RE:   *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*
      **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

We write to express our opposition to BASF's second motion to enforce the January 15, 2018 Order (CM/ECF # 455) with respect to Plaintiffs' Supplemental Answers to BASF's First Set of Interrogatories Nos. 1, 4, 12, and 13, as Plaintiffs have complied with the express requirements and spirit of the Order as well as Your Honor's expectations during the hearing on that date.

## BACKGROUND

On January 15, 2018, Your Honor presided over a hearing on a motion to compel filed by BASF. In discussing the obligation to respond to interrogatories,

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 2

Your Honor acknowledged the difficulty that Plaintiffs find themselves in of having to verify interrogatory responses without first-hand knowledge of what had happened with their family members' underlying cases. 1/15/2018 Hr'g Tr. 151:19-22; 155:8-9. Your Honor consequently directed Plaintiffs to distinguish between the facts within their personal knowledge and those that are on information and belief, which Your Honor explained Plaintiffs can do in either the interrogatory answers themselves or in the verifications. *Id.* at 153:23 to 154:2; 155:1-3. But again, recognizing the challenge of the situation, Your Honor reminded counsel that the "overarching purpose" of discovery is to get "as much information transmitted from one side to the other" as possible "with a minimum amount of fuss." *Id.* at 155:21 to 156:2.

In compliance with Your Honor's directives, Plaintiffs supplemented their interrogatory responses on January 29, 2018. (CM/ECF # 455-1).

## ARGUMENT

BASF's Motion should be denied as it is much fuss about nothing. BASF claims that "the named plaintiffs alluded to . . . information without actually articulating it or identifying its source." (CM/ECF # 455, pg. 6). In making this point, BASF ignores the complete answers to the four interrogatories in question, and instead plucks a single sentence from the response of Plaintiff William's response to Interrogatory No. 12:

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 3

> My attorneys from the Underlying Case may have more information responsive to this request as the information that I have is based on my reading of the complaints filed in this matter and is being developed by the lawyers who represent me in this case.

*Id.* What BASF fails to do is provide any of the context for this statement by not showing the Court a complete view of the interrogatory response.

> In full, the response to Interrogatory No. 12 provides:
>
> **RESPONSE:** In addition to the General Objections set forth above, including but not limited to Objection No. 16, Plaintiff objects to this Interrogatory as overbroad and unduly burdensome. The following response is provided subject to and without waiving the foregoing Objections.
>
> My husband's attorneys in the Underlying Action had frequent conversations with Charles regarding the Underlying Action when my husband was alive and the case was still pending.
>
> After my husband's death, I too had conversations with Mr. Bevan about the status of the Underlying Action, but to a much lesser extent. Still, I am confident Mr. Bevan explained to us the decision to dismiss Engelhard from the Underlying Action, as he had with other events related to the case. My husband and I relied upon Mr. Bevan and agreed to his recommendation. My attorneys from the Underlying Case may have more information responsive to this request as the information that I have is based on my reading of the complaints filed in this matter and is being developed by the lawyers who represent me in this case.
>
> Plaintiff reserves the right to supplement her response as discovery in this and related matters such as the *Sampson* case continue.

Put more simply, Ms. Williams states that (1) her husband's attorneys had frequent conversations with him while the underlying case was still pending; (2) that after

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 4

his death, she too had conversations with Mr. Bevan, (3) that Mr. Bevan explained the decision to dismiss Engelhard to them, and (4) that they agreed to Mr. Bevan's recommendation. Seen in this context, the statement that the attorneys from the Underlying Case "may have more information responsive to this request" is nothing more than a logical coda to her statement about what she knows based on what sources and a reservation of rights to supplement this response. Indeed, as should be evident, the full response both describes in detail her knowledge of the "process" behind the decision to settle the underlying case and identifies the participants to the discussions in full satisfaction of the interrogatory.

BASF likewise claims that the responses to Interrogatories Nos. 1 and 13 include "similarly evasive language" while the response to Interrogatory No. 4 contains no reference to Bevan's knowledge at all. But once more, BASF presents only part of the responses. For instance, although the response to Interrogatory No. 13 states that "[i]nformation responsive to this request is outside [Ms. Williams'] personal knowledge," the response goes on to state:

> My understanding of what happened comes from reading the complaints in this case and from privileged communications with my attorneys. I rely upon my attorneys to provide the evidence supporting my case.
>
> I, however, am generally aware that there was discovery in my husband's lawsuit as set out in the Second Amended Complaint, which sought out information about EMTAL talc. Based on the Second Amended Complaint and referenced exhibits, as well as the

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 5

>documents described below, it is my understanding that Engelhard/BASF through its attorneys represented to the Bevan Law Firm (my husband's attorneys in the Underlying Action) that Defendant's EMTAL talc does not contain asbestos and that there was no evidence that EMTAL talc contained asbestos.
>
>While I have no first-hand knowledge, upon information and belief, records and information obtained by my attorneys indicate that my attorneys from the Underlying Case may be able to attest to the following:
>
>I do not have first-hand knowledge, upon which to respond to this interrogatory. The Bevan Law Firm, when prosecuting my husband's case, was able to document substantial sales of EMTAL talc, both directly from Engelhard/BASF and through its distributor C.P. Hall, to the Goodyear facility where my husband worked, that the lawyers were also aware from testimony of witnesses in the facility that whitish/gray talc was used by employees in Goodyear's plant. However, upon receiving Engelhard/Cahill's representations and information that the talc did not contain asbestos, this was not specifically explored in every case. It is also my understanding that The Bevan Law Firm retained expert witnesses to support my husband's lawsuit. The Bevan Law Firm would likely know more about this evidence.
>
>The Bevan Law Firm could not prove that EMTAL talc contained asbestos. Through various correspondence and conversations with attorneys Scott Martin and Allen Joslyn of the Cahill Gordon Law Firm, the Bevan Law Firm was informed that EMTAL talc does not contain asbestos and that there is no evidence that EMTAL talc contains asbestos.

As with the response to Interrogatory No. 12, the response here describes the limits of Ms. Williams' knowledge, as well as the source of her "information and belief." In fact, the response does not end at just describing the effect of

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 6

Engelhard/BASF's fraudulent scheme; it describes seven letters between Cahill and the Bevan Law Firm that precipitated the decision to dismiss Engelhard:

- **1992/04/23:** a letter from Scott Martin, Esq. (Cahill) to Dale Economus, Esq. (Bevan) where Mr. Martin requested that Engelhard be voluntarily dismissed from the Williams, Compton, and Brown actions "on the basis that talc produced by EMTAL contained no asbestos." In support of that request, Mr. Martin enclosed (1) the Affidavit of William H. Ashton, (2) two affidavits of Mr. Charles Carter, (3) a report by Dr. Fred Pooley, and (4) a B.F. Goodrich specification for EMTAL talc. Based upon these documents, Mr. Martin explained that "there appears to be no basis for maintaining Engelhard as a named defendant in these actions." Mr. Martin further explained that there was "substantial precedent" for his request as plaintiff's counsel in Pennsylvania voluntarily dismissed Engelhard from other asbestos-related cases based upon his review, and his expert's review of the enclosed documents. So too did attorneys in the federal district court of Kansas and Michigan state court.

- **1992/5/18:** a letter from Scott Martin, Esq. (Cahill) to Dale Economus, Esq. (Bevan) stating that he had previously sent "various documents demonstrating that talc produced by EMTAL from its sole mine and mill in Johnson, Vermont contained no asbestos." Mr. Martin then notes that he had received a complaint in the Gonzalez matter that named Engelhard as a defendant. To avoid "incurring additional expenses in defense of the four actions" for which "there appears to be no basis in fact for maintaining Engelhard as a defendant", Mr. Martin requested that Mr. Economus give "serious and prompt consideration to our dismissal request."

- **1992/12/21:** a letter from Scott Martin, Esq. (Cahill) to Dale Economus, Esq. (Bevan) where Mr. Martin requested that Engelhard be dismissed from the James v. Abex litigation because the talc sold to plaintiffs' employers "contained no asbestos". Mr. Martin stated that this fact was "demonstrated in the various affidavits and other documents forwarded to you with my previous correspondence."

> Because the "diagnosis of the plaintiff in each of the [James] actions in which Engelhard is named as a defendant is an asbestos-related disease, [the plaintiffs' diseases] which cannot be attributed to EMTAL talc."

- **1993/02/04:** a letter from Scott Martin, Esq. (Cahill) to Thomas Bevan, Esq. (Bevan) stating that at Mr. Bevan's request, Mr. Martin has prepared notices of dismissal for Mr. Bevan's signature from the five recently-filed actions "on the basis of our correspondence demonstrating that talc produced by Engelhard's former subsidiary, Eastern Magnesia Talc Company ("EMTAL"), contained no asbestos." Mr. Martin instructs that the dismissal notices for four of the five actions should be sent to Judge Weiner of the U.S. District Court for the Eastern District of Pennsylvania and the dismissal for the James action should be filed in state court. Mr. Martin finally requests that C.P. Hall be dismissed from these actions as well if it is "named only as the distributor of EMTAL talc".

- **1993/02/11:** a letter from Thomas Bevan, Esq. (Bevan) to Scott Martin, Esq. (Cahill) indicates that "in light of new information" Mr. Bevan was "reconsidering [its] decision to dismiss Engelhard Minerals & Chemicals Company." Mr. Bevan explains that correspondence dated February 24, 1950 from the State of Vermont Department of Health discusses the propensity of EMTAL employees to develop pneumoconiosis and refers to future x-rays of Johnson employees and a future publication. Based on that correspondence, Mr. Bevan requests "to review the results of the studies at Waterbury and Johnson as well as the publication that was alluded to" as well as sales records to Goodyear Tire & Rubber, B.F. Goodrich, and Goodyear Aerospace plans in Akron.

- **1993/02/22:** a letter from Scott Martin, Esq. (Cahill) to Thomas Bevan, Esq. (Bevan) in response to Mr. Bevan's Feb. 11, 1993 letter where Mr. Martin states that the 1950 correspondence "should in no way alter your previously expressed decision to dismiss Engelhard from these cases." Mr. Martin explains that he was not aware of any follow-up study or publication of Johnson employees, and that the company the correspondence referred to was "long since defunct."

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 8

> Mr. Martin then recounts the "voluminous materials" that he had sent to the Bevan Law Firm last April with his request for a dismissal that demonstrated that "the talc produced from [the Johnson] mine <u>did not contain asbestos.</u>" Mr. Martin adds that the R.J. Lee Group had just completed an analysis that showed no evidence of asbestos minerals, and that Engelhard had retained the "leading geologist in Vermont, who will also confirm these facts." Mr. Martin concludes by asserting that there is "no basis for maintaining Engelhard as a named defendant in these actions" because "plaintiffs allege injuries as a result of exposure to asbestos" which cannot be attributed "to talc uncontaminated by asbestos." "Accordingly," Mr. Martin states, "EMTAL talc is not a cause of plaintiffs' alleged injuries."
>
> - **1996/07/24**: a letter from Scott Martin, Esq. (Cahill) to Thomas Bevan, Esq. (Bevan), where Mr. Martin requests a voluntary dismissal of the <u>Stricklin</u> case because "this action is an asbestos case and there is no evidence whatsoever that talc mined and milled by EMTAL contained asbestos." In support of that request, Mr. Martin encloses his correspondence with the Bevan Law Firm pertaining to the <u>Brown</u>, <u>Compton</u>, <u>Gonzales</u>, <u>James</u>, and <u>Williams</u>, and the dismissals from those cases. Mr. Martin goes on to say, "there has never been any room for argument that EMTAL talc could cause an asbestos-related disease." Mr. Martin concludes by stating "as there is no evidence whatsoever that EMTAL talc could have caused Mr. Stricklin's alleged injuries, there can be no basis in law or fact for this action to continue against EMTAL."

The response thus goes above and beyond what BASF asked for in the interrogatory.

BASF's claim that the response to Interrogatory No. 1 contains evasive language likewise relies on an interpretation of the response divorced from what Ms. Williams actually said:

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 9

> I am personally unaware of anyone with knowledge of my claims against BASF in the matter of *Williams, et al. v. BASF Catalysts, LLC, et al.*, No. 11-cv-1754 (D.N.J.) other than my attorneys and presumably my other co-plaintiffs.

There is nothing evasive about this response: it identifies persons with knowledge, the subject matter of which should be self-evident from both the description of those individuals as the lawyers in the Underlying Action and the other interrogatory responses.

Finally, BASF implies that Ms. Williams stated only in the response to Interrogatory No. 4 that she has "no personal recollection of information responsive to this request." (CM/ECF 455, pg. 7). Again though, BASF draws the Court's attention to only one sentence to make it seem that the response was not responsive. But in actuality, the response—in accordance with Fed. R. Civ. P. 33(d)—referred Defendants "to documents regarding individual settlement amounts."

In sum, faced with the difficult proposition of having to verify interrogatory responses without first-hand knowledge on some issues, Plaintiffs followed the direction provided by Your Honor to distinguish between the facts within Plaintiffs' personal knowledge and those that are on information and belief. Through these responses then, as well as the documents produced from Mr. Bevan's files, Plaintiffs have fully complied with Your Honor's directive that the

The Honorable Robert A. Rivera-Soto
March 5, 2018
Page 10

parties transmit as much information as possible from one side to the other under the prevailing circumstances. BASF's continuing efforts to keep alive a controversy over the adequacy of Plaintiffs' responses to BASF First Set of Interrogatories should come to an end because Plaintiffs have complied with the Order dated January 15, 2018.

## CONCLUSION

For the foregoing reasons, BASF's Motion should be denied.

Respectfully submitted,

/s/ *Christopher M. Placitella*
Christopher M. Placitella

*Counsel for Plaintiffs and the Proposed Class*

cc: All Counsel of Record (via ECF)