

One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: 973.690.5400 Fax: 973.466.2761
www.rwmlegal.com

March 9, 2018

**VIA ECF**

The Honorable Roberto A. Rivera-Soto
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002

Re:   *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*
      **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

I write on behalf of defendant BASF Catalysts LLC to request an order compelling Bevan & Associates, LPA to sit for an additional Rule 30(b)(6) deposition on records issues, this time with a witness who is adequately prepared to testify.

The Bevan Firm, one of the most successful asbestos plaintiffs' firms in Ohio, has represented (and apparently still represents) five of the named class representatives in past and ongoing asbestos litigation. To resolve outstanding questions about document retention and production, this Court ordered a short deposition of the Bevan Firm's records custodian. At the February 21, 2018 deposition, the records custodian—Thomas Bevan himself, an experienced

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 2

lawyer—was not prepared to answer very basic questions about the firm's efforts to preserve, locate, and produce relevant materials.

Mr. Bevan's inability to provide necessary testimony runs afoul of court rules for corporate representative depositions. With respect to the few questions Mr. Bevan was able to answer, his responses strongly suggest that plaintiffs and the Bevan Firm have not adequately preserved and produced relevant documents and electronically-stored information. For instance, despite years of active litigation involving the named plaintiffs, the Bevan Firm has produced only a few dozen emails.

BASF expected that a 60-minute deposition would be able to quickly resolve outstanding questions about the Bevan Firm's documents, but that deposition only raised further concerns that responsive documents have not been searched, reviewed, and produced. Accordingly, BASF requests that the Bevan Firm be ordered to provide a competent witness to testify on records issues. Should the Bevan Firm be unable or unwilling to do so, the Court may wish to consider the appointment of an independent forensic examiner to ascertain the nature of the Bevan Firm's electronic files and the preservation of those materials.

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 3

## PROCEDURAL BACKGROUND

**A.    The Court Orders The Bevan Firm To Sit For A Records Deposition**

Following Chief Judge Linares's August 3, 2017 decision on the scope of discovery and plaintiffs' privilege waiver, this Court granted BASF's motion to compel in relevant part and ordered the Bevan Firm to produce certain client files to defendants.  *See* 10/27/17 Order (ECF No. 360).  After it was later revealed that the Bevan Firm maintained its files in electronic form, contrary to plaintiffs' counsel's previous suggestions, BASF on November 13, 2017 moved for an order requiring the Bevan Firm to make available for deposition a records custodian to "allow the parties and the Court to understand exactly how Bevan's files are maintained." 11/13/17 BASF Ltr. to SDM (ECF No. 372).  Two weeks later, the Bevan Firm produced a limited set of court filings and correspondence apparently retrieved from its electronic files, but produced no emails.

Your Honor addressed BASF's motion, as well as the Bevan Firm's failure to produce emails, at a November 30, 2017 discovery hearing and granted BASF's request for a deposition of the Bevan Firm's "records custodian or corporate representative." 11/30/17 Hr'g. Tr. 90:22 - 91:6.  In doing so, Your Honor explained that one purpose of the deposition was to clarify the scope of the search the Bevan

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 4

Firm conducted for responsive material in its emails and electronic files. *Id*. at 38:18 - 39:10. The Bevan Firm later produced 79 emails on February 20, 2018, just hours before Mr. Bevan's deposition. Subsequently, after this Court's privilege review, Bevan produced another 43 emails on February 26, 2018.

### B. Mr. Bevan's February 21, 2018 Deposition

On February 21, 2018, and pursuant to the Court's Order, BASF deposed the Bevan Firm's corporate representative in Cleveland, Ohio. The Bevan Firm chose as its representative Thomas Bevan. Unfortunately, Mr. Bevan failed to prepare for his deposition, lacked relevant knowledge about his firm's documents, and was unable to provide basic information about which documents had been searched and produced. When asked specifically how he prepared for the deposition, Mr. Bevan answered that he merely "looked at the deposition notice" and "thought about what [he] did in response to the document request." Ex. A (2/21/18 T. Bevan Dep. Tr. 37:12-20).[1] He did not otherwise prepare by "talk[ing] to anybody about what [he] did" or by "review[ing] any of the documents that had been produced." *Id.*

---

[1] BASF has attached hereto as Exhibit A a full transcript of Mr. Bevan's February 21, 2018 deposition, with Mr. Bevan's most troubling testimony highlighted for the Court's review.

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 5

    As a likely result of his failure to prepare, Mr. Bevan could not provide basic information about his firm's records. For example, though one of the key purposes of the deposition was to verify the scope of the Bevan Firm's search for documents included in its production, Mr. Bevan was unaware of what documents had been produced. Indeed, he was apparently unaware of even the few emails the Bevan Firm had disclosed just the night prior. *See id.* at 10:23 - 11:9 ("Q. You weren't aware that a batch of Bevan Law Firm e-mails were produced to BASF last night in the Williams case? A. I don't know what was produced last night.").

    Mr. Bevan was likewise unaware of where potentially responsive documents might be stored. He admitted that he uses an AOL email account "for all aspects of [his] law practice," *id.* at 19:1-3, but when asked if "anybody else at the Bevan firm use[s] an email account that's outside of the Bevan email system," he answered only that "I think Pat Walsh uses AOL. You know, probably most of the attorneys are using something, you know, private email account," *id.* at 20:11-15. He did not identify what types of "private email accounts" those attorneys were using. He also could not confirm what types of email accounts the Bevan Firm's paralegals use. *See id.* at 21:18-23.

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 6

      With respect to how the Bevan Firm searched for responsive documents, Mr. Bevan indicated that he searched his own AOL email account, but he did not make any record of the search terms he used. *Id.* at 17:13-24. He did not recall when he performed the search, *id.* at 18:9-11, or whether he found any responsive documents, *id.* at 18:14-16. When asked which other attorneys at the Bevan Firm had also searched their emails, Mr. Bevan mentioned four names "[a]s far as I know," *id.* at 21:17, and again did not know which search terms had been used, beyond a speculative list of: "clients' names, you know, BASF, Eastern Magnesia Talc, talc," *id.* at 23:14-19. Mr. Bevan does not recall if he told plaintiffs' counsel what searches he was going to run, and could not recall if plaintiffs' counsel had provided any search terms to him. *Id.* at 23:20 - 24:4. With respect to non-email client files, Mr. Bevan did not know if they were searchable. *Id.* at 46:16 - 47:2.

      Mr. Bevan was also unaware whether his emails were preserved or purged. Specifically, when asked if either his AOL account or the Bevan Firm's email systems automatically delete emails after a given time, Mr. Bevan did not know. *Id.* at 16:4-7 ("Q. Is there any auto delete function in your e-mail system, for example? A. I'm not sure what an auto delete function is, so I don't know. I don't believe. Q. Does the e-mail system at the Bevan Law Firm automatically discard e-mails

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 7

after a certain period of time?  A.  I don't know.); *see also id.* at 30:12-14.  Mr. Bevan did confirm, however, that he personally deletes emails from his AOL account whenever he believes them to be irrelevant, and that he does not keep all emails related to his cases.  *Id.* at 31:3-17.  He also did not know whether the Bevan Firm had suspended any systems that might automatically delete information.  *Id.* at 27:11-18.

To the extent Mr. Bevan's testimony made anything clear, it was what his firm had ***not*** done: implement any document preservation procedures in connection with this litigation.  *See id.* at 15:1-7.  Surprisingly, Mr. Bevan testified that "I'm not sure what a document hold notice is, but nobody from my law firm ever issued any kind of a written document saying not to destroy any documents."  *Id.*; *see also id.* at 15:8-11 ("Q.  You're not even sure what a memoranda like that would look like?  A.  I've never seen one in my firm.  We don't operate that way.").  Although Mr. Bevan had a vague recollection of a conversation with Mr. Placitella about retaining documents related to this litigation, Mr. Bevan could not recall when that conversation occurred, noting only that "it would have been sometime in the last ten years, but I don't recall."  *Id.* at 26:10-14.  Nevertheless, Mr. Bevan conceded that "we do not have a document retention policy" and "I don't recall ever receiving a

memoranda from Plaintiffs' counsel, and I know I've never issued a memoranda regarding preservation of any documents." *Id.* at 14:21-25.

Mr. Bevan's testimony makes clear that he did not prepare for his deposition as required by the Federal Rules, thereby depriving BASF of meaningful Court-ordered testimony about the Bevan Firm's files. It remains unclear what Bevan files exist, how they were searched, and whether documents were properly preserved. BASF therefore moves pursuant to Rule 37 to compel a second deposition of the Bevan Firm's corporate representative.

## ARGUMENT

Mr. Bevan was plainly unprepared to represent his law firm as a corporate representative. As the Third Circuit has explained, "if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000). Mr. Bevan's inability to describe the Bevan Firm's document systems, document retention practices, and efforts to identify documents responsive to BASF's subpoena requires a second deposition of the Bevan Firm.

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 9

As set forth above, Mr. Bevan did virtually nothing to prepare for his deposition beyond "look[ing] at the deposition notice" and "th[inking] about what [he] did in response to the document request." Ex. A (2/21/18 T. Bevan Dep. 37:12-20). He was unaware of whether the email systems that he and his employees use actually preserve email or automatically purge it over time. *Id*. at 16:8-14. And he was unaware of what types of email systems those employees use in the first place. *Id.* at 21:18-23. Moreover, Mr. Bevan could not recall whether his searches of his AOL email account (which he uses exclusively) yielded any documents responsive to BASF's subpoena. *Id*. at 18:14-16 ("Q. Did you find any responsive documents in your AOL email account? A. I don't recall. I don't recall."). He also had no record of the searches he actually conducted in an effort to identify responsive materials. *Id.* at 17:13-22. The entire point of BASF's request for a deposition of the Bevan Firm's records custodian was to understand these issues. But in light of Mr. Bevan's deficient testimony, BASF cannot determine whether the Bevan Firm has complied with its preservation and production obligations.

When an organization produces a representative to testify, the witness has a duty to prepare—to make a "good faith effort . . . to find out the relevant facts—to collect information, review documents, and interview employees with personal

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 10

knowledge just as a corporate party is expected to do in answering interrogatories." *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2011 WL 5416330, at *16 (D.N.J. Nov. 7, 2011). The witness must also "educate himself as to all matters that are known or reasonably available to the corporation." *In re Neurontin Antitrust Litig.*, 2011 WL 2357793, at *5 (D.N.J. June 9, 2011).

When an organization fails to produce a witness with knowledge of the topics to be covered, courts order that the organization produce another witness and bear the costs of the repeat deposition. *See*, *e.g.*, *Black Horse Lane Assoc.*, 228 F.3d at 304 ("[W]e hold that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)."); *Harris v New Jersey*, 259 F.R.D. 89, 95 (D.N.J. 2007) (ordering party to produce second Rule 30(b)(6) witness and bear costs and attorney's fees associated with second deposition).

As with any other topic properly noticed for a Rule 30(b)(6) deposition, the duty to prepare has long extended to "topics concerning electronic discovery." *See QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 694-96 (S.D. Fla. 2012) (noting deponent's inability to discuss electronic discovery); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 127 (M.D.N.C. 1989) (ordering second Rule

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 11

30(b)(6) deposition after designee "was unable to answer specific questions concerning the retrieval of computerized data").

In this regard, Mr. Bevan's stated ignorance of his own firm's records-keeping practices and his inability to articulate what actions it took in responding to BASF's subpoena is comparable to the Rule 30(b)(6) deposition testimony at issue in *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 1054279 (D. Kan. Apr. 9, 2007). There, the district court granted the defendants' request for a second Rule 30(b)(6) deposition when the plaintiff's originally-designated witness could not answer straightforward questions regarding his employer's records-keeping procedures and its efforts to respond to discovery requests. *Id.* at *3.

In granting the defendants' request for a second deposition, the *Heartland Surgical* Court noted that, similar to Mr. Bevan, the witness "did not know the storage or retention policies for some identified servers"; "did not know … whether archived e-mails were searched for responsive discovery documents"; "did not know exactly how they [plaintiff's e-discovery vendor] searched the [] servers"; and "did not know … 'what all was on' the CD database that was produced to Defendants." *Id*. at *4; *see also id*. at *6.

RM ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 12

Here, BASF made clear that it sought the deposition of a "records custodian" to "allow the parties and the Court to understand exactly how Bevan's files are maintained," as well as the Bevan Firm's document review and production practices. 11/13/17 BASF Ltr. to SDM (ECF No. 372) at 9. The Court granted this request. *See* 11/30/17 Order (ECF No. 381) ¶ 4. Mr. Bevan's testimony does not even come close to providing BASF and the Court with the information necessary to ascertain "how Bevan's files are maintained" and whether the Bevan Firm is complying with its discovery obligations. The Bevan Firm should be responsible for bearing the costs of a second deposition as a result.

A second deposition is further warranted because of the serious questions that still exist concerning the Bevan Firm's production. As noted, the Bevan Firm has produced only several dozen emails, even though at issue in this case are underlying asbestos cases that were litigated for years when email was a common method of communication. There also remain open questions, unanswered by Mr. Bevan, as to whether the Bevan Firm properly preserved its files. By Mr. Bevan's own admission, no litigation hold was ever instituted. *See* Ex. A (2/21/18 T. Bevan Dep. Tr. 15:1-7) ("I'm not sure what a document hold notice is, but nobody from my law firm ever issued any kind of a written document saying not to destroy any

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 13

documents."). As Mr. Bevan acknowledged, "we do not have a document retention policy" and "I don't recall ever receiving a memoranda from Plaintiffs' counsel, and I know I've never issued a memoranda regarding preservation of any documents." *Id.* at 14:21-25; *see also* Ex. B (3/18/16 Ohio Board of Professional Conduct Ethics Guide to Client File Retention 3) (recommending retention of client files for seven years and noting that, "[a]lthough maintaining client files for [that] retention period may be appropriate in many cases, certain client matters may require a longer or possibly an indefinite period of retention"). This testimony only underscores the need for BASF fully to understand what Bevan files exist and how they were searched.

## **CONCLUSION**

BASF tried to resolve this dispute informally. We asked plaintiffs' counsel, who had defended the deposition, if they would produce a document custodian who was prepared to answer relevant questions, but plaintiffs' counsel declined. We also reached out to Bevan's counsel, Mr. Little, who similarly declined. *See* Ex. C (3/8/18 B. Little to E. Assaf).

For the foregoing reasons, BASF asks the Court to require the Bevan Firm to produce a witness prepared to discuss its document retention practices and

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
March 9, 2018
Page 14

procedures for responding to BASF's subpoena. The Bevan Firm should be required to pay the costs associated with this re-deposition. To the extent the Bevan Firm cannot comply with such an Order, the Court may later wish consider appointing a neutral forensic examiner to evaluate the Bevan Firm's document retention efforts.

                                      Respectfully submitted,

                                      s/ Justin T. Quinn
                                         Justin T. Quinn
                                      Counsel for BASF Catalysts LLC

cc:    All counsel of record (via ECF)