LAW OFFICES

## COHEN, PLACITELLA & ROTH

A PENNSYLVANIA PROFESSIONAL CORPORATION

127 MAPLE AVENUE

RED BANK, NEW JERSEY 07701

———

(732) 747-9003

FAX (732) 747-9004

www.cprlaw.com

PHILADELPHIA, PA

LEMOYNE, PA

BALA CYNWYD, PA

PITTSBURGH, PA

CHERRY HILL, NJ

CHRISTOPHER M. PLACITELLA

MANAGING NJ ATTORNEY

March 28, 2018

**VIA ECF**

The Honorable Justice Roberto A. Rivera-Soto (ret.)

Special Discovery Master

Ballard Spahr LLP

210 Lake Drive East, Suite 200

Cherry Hill, New Jersey 08002-1163

RE:    ***Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.***
           **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

At the heart of this case is whether the Defendants committed fraud and fraudulent concealment when they made repeated, unqualified representations to claimants' counsel to induce the dismissal of their clients' cases that: (a) the Emtal talc product manufactured from the Johnson mine in Vermont did not contain any asbestos, (b) that there was no evidence to the contrary, and (c) no Engelhard employee had ever testified about asbestos in the talc. One of the tools constructed to perpetrate the fraud was the Ashton Affidavit, which Engelhard offered for the proposition that no study of the Johnson mine ever found asbestos in the mine. *See* Ex. A (5/8/1989 Affidavit of William H. Ashton).

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 2

Before these representations were made and universally repeated to

plaintiffs' lawyers and courts around the country, Engelhard scientists—Dr. Glenn

Hemstock ("Hemstock"), the head of Engelhard's research and development

division ("R&D"), and Engelhard geologist Peter Gale ("Gale"), who gathered

samples from the Johnson mine and conducted studies—had in fact testified that

Engelhard carried out a study on samples from both the Johnson mine ore and the

finished milled product. *See, e.g.,* Ex. B (3/16/83 Deposition of Glenn Hemstock)

at 17:16-24, 73:21–74:16, 118:22–121:11; Ex. C (4/26/83 Deposition of Peter

Gale) at 23:8–25:11; *see also* Ex. D (3/23/79 Engelhard R&D Memo) at 1 ¶ 2.

Hemstock, Gale, and Emil Triglia ("Triglia"), another Engelhard scientist who

assumed Gale's responsibilities at Engelhard, all testified that they discovered

chrysotile fibers in samples from the Johnson mine ore and finished product. *See,*

*e.g.*, Ex. B at 17:16-24; Ex. C at 17:5–20:14, 22:14–23:8; Ex. E (4/7/83 Deposition

of Emil Triglia) at 66:18–68:18. Triglia also testified about the Engelhard asbestos

testing program. *See, e.g.,* Ex. E at 55:24–56:17.

Dr. Hemstock's, Mr. Triglia's, and Mr. Gale's 1983 deposition testimony—

concealed by BASF/Engelhard for over twenty years until unearthed following the

testimony of David Swanson in 2009—not only proves the lie of the

Engelhard/Cahill "no asbestos/no evidence/no testimony" defense, but establishes

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 3

a compelling need for the Court to now examine *in camera* documents listed on

BASF Catalysts LLC's ("BASF") December 23, 2016 Privilege Log, in particular

documents identified therein as PRIV001633, PRIV001672, and PRIV001786.[1]

*See* Ex. F (12/23/16 BASF Privilege Log). Documents on BASF's privilege log

such as these, that were authored by Engelhard's internal R&D department

scientists and described as "regarding talc testing," may contain crucial, non-

privileged information on asbestos in the talc which was never identified or

provided to asbestos claimants in post-*Westfall* litigation; even though

interrogatories and document requests squarely asked if Engelhard employees had

ever given testimony, and if the talc contained any asbestos.

      Plaintiffs contend that these documents are not privileged. BASF's privilege

log does not provide adequate explanation to satisfy its burden of establishing that

an attorney-client privilege exists for documents authored by Engelhard scientists

"regarding talc testing"; its privilege explanation that these materials "reflect[ ] [a]

request for legal advice" is deficiently vague. *See id*. BASF also fails to establish

that Engelhard sent the documents to inside counsel for the primary purpose to

---

[1] These documents are listed in Plaintiffs' crime-fraud motion currently
pending before Your Honor, but even more fundamentally, these documents are
not entitled to privilege at all.

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 4

secure legal advice. More so, consistent with Your Honor's rulings in other motions addressing the scope of the attorney-client privilege, even if some communication is privileged, the facts contained in the documents "regarding talc testing" are not. *See Leonen v. Johns-Manville*, 135 F.R.D. 94, 98–99 (D.N.J. 1990).

We have conferred with BASF's counsel both orally and in writing multiple times on this matter. They disagree with our position. We now place the issue before Your Honor.

## STATEMENT OF RELEVANT FACTS

In 1983, Engelhard scientists Hemstock, Triglia, and Gale testified that Engelhard performed testing on both the talc ore extracted from the Johnson mine, as well as the finished processed product. Asbestos was found in both. *See, e.g.,* Ex. B at 17:16-24.

As the Court is aware, these depositions discussing the testing of the mine ore and finished product were never identified or produced to plaintiffs' counsel in any case before *Paduano*, where the alleged fraudulent conduct was discovered in 2009. In fact, BASF claimed that it could not find the Gale deposition, which only surfaced in November 2017 when Johnson & Johnson produced it in response to Plaintiffs' subpoena here in this case.

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 5

According to BASF, all relevant testing results have been produced to Plaintiffs except for those documents that BASF withholds under a claim of privilege. *See* ECF 473 at 15 (3/21/18 BASF Sur-Reply). While a number of tests have been produced, Plaintiffs contest the assertion that all relevant testing information concerning the finished product have been disclosed. Moreover, no test results have been produced specifically referencing the 1979 Engelhard study of the Johnson mine's ore.

BASF's *Williams* case privilege log identifies several entries where Engelhard scientists, such as Triglia, are listed as the author of memos "regarding talc testing," dated at or about the same time Engelhard conducted studies of both the Emtal finished product and the ore from the Johnson mine. *See* Ex. F at PRIV001633, PRIV001672, PRIV001786. Each of these documents written by Triglia (Ex. F at PRIV001633, PRIV001672, PRIV001786) lists Hemstock or Gale as memo recipients, both of whom we know participated in the Johnson mine ore study as well as studies of the company's finished Emtal products. *Id.* BASF's log further lists numerous persons as recipients of the memos "regarding talc testing" including J. Brush, designated with an asterisk signaling him as the lone attorney who was copied on the document. *Id.*

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 6

It is impossible to determine from BASF's vague privilege log entries

whether the memos "regarding talc testing" relate to the Hemstock/Gale/Triglia

testing done by Engelhard of the Johnson mine, or some other undisclosed study of

Emtal talc. The BASF privilege log does not set forth sufficient information to

determine whether the documents are truly entitled to privileged protection, and we

are therefore asking the Court to examine the documents *in camera* for that

purpose.[2]

## ARGUMENT

### BASF Should Be Compelled to Produce All Documents Authored by Engelhard Scientists "Regarding Talc Testing."

Under New Jersey law the attorney-client privilege generally applies to

communications (1) in which legal advice is sought, (2) from an attorney acting in

his capacity as a legal advisor, (3) and the communication is made in confidence,

(4) by the client. *Hedden v. Kean Univ.*, 434 N.J. Super. 1, 10, 82 A.3d 238, 244

(Super. Ct. App. Div. 2013) (quoting and citing N.J.S.A. 2A:84A-20(1); N.J.R.E.

---

[2] In Plaintiffs' counsel's March 19, 2018 meet and confer letter and follow-up e-mail communication to BASF's counsel dated March 26, 2018, we asked BASF's counsel to identify who were direct or "cc'd" recipients of the subject documents, their roles and functions at Engelhard, and whether any document in question expressly sought or provided legal advice. BASF counsel did not respond with the requested information.

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 7

504(1)); (citing *Metalsalts Corp. v. Weiss*, 76 N.J. Super. 291, 297, 184 A.2d 435

(Ch. Div. 1962)).

The party asserting the privilege bears the burden of establishing it. *Rivard*

*v. Am. Home Prods., Inc*., 391 N.J. Super. 129, 152, 917 A.2d 286, 299 (App. Div.

2007). "When a party asserts a privilege, it must provide a specific explanation of

why each document is privileged or immune from discovery [which] must include

a comprehensive presentation of all factual grounds and legal analyses in a non-

conclusory fashion." *Id*. (internal citations and quotations omitted) (alteration in

original); *see also* N.J. R. 4:10-2(e). BASF fails to satisfy this requirement by

stating in a conclusory fashion on its privilege log that documents authored by

scientists "regarding talc testing" are "reflecting a request for legal advice." *See*

Ex. F at PRIV001633, PRIV001672, PRIV001786.

Plaintiffs ask Your Honor to review the documents authored by Engelhard

scientists "regarding talc testing" *in camera*. Plaintiffs believe that upon such

review, Your Honor should compel production of the documents as not privileged

for the following reasons.

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 8

    a.    *The Attorney-Client Privilege Does Not Apply to the Documents Authored by Engelhard Scientists "Regarding Talc Testing."*

Although the attorney-client privilege may apply to certain communications between a corporation and inside counsel the privilege is narrow: "[c]orporations seeking to invoke the privilege must clearly demonstrate that the communication in question was made for the express purpose of securing legal, not business, advice." *TransWeb, LLC v. 3M Innovative Props. Co.*, No. 10-4413, 2012 U.S. Dist. LEXIS 97534, at *17 (D.N.J. Apr. 12, 2012); *see also Metalsalts Corp.*, 76 N.J. Super. at 298–99, 184 A.2d at 439 (declining to extend attorney-client privilege when corporate counsel was engaged for non-legal advice). The privilege only applies if the claimant demonstrates that the communication would not have been made but for the client's need for legal advice or services. *Leonen*, 135 F.R.D. at 98–99.

More so, "the attorney-client privilege does not apply just because a statement was made by or to an attorney." *In re Riddell Concussion Reduction Litig.*, No. 13-7585, 2016 U.S. Dist. LEXIS 168457, at *7 (D.N.J. Dec. 5, 2016) (applying New Jersey law). In addition, merely copying or "cc'ing" an attorney on a document or communication is insufficient to establish the privilege. *See Spiniello Cos. v. Hartford Fire Ins. Co.*, No. 07-2689, 2008 U.S. Dist. LEXIS 53509, at *6 (D.N.J. July 14, 2008).

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 9

> In other words, "[communications] in which in-house or outside
> attorneys are merely sent copies of the text of the [communication], or
> in which they are merely one of many addresses, should not be
> privileged, unless the [communication] is *directed to the attorney* or
> sent by the attorney . . . . To rule otherwise would allow parties to
> evade the privilege limitations by sending copies of every company-
> generated [communication] to the company's attorney so as to protect
> the communication from discovery, regardless of whether legal
> services were sought or who the other recipients of the email were."

*Id*. at *6–7 (emphasis and alterations added, substituting "email" with

"communication") (quoting *In re Avantel*, 343 F.3d 311, 321 (5th Cir. 2003)).

"This makes perfect sense because otherwise parties could facilely avoid

producing relevant discovery by simply copying an attorney on every email." *In re*

*Riddell Concussion Reduction Litig*., 2016 U.S. Dist. LEXIS 168457, at *7–8.

While BASF has produced certain documents related to the testing of

finished talc product, there is ample evidence in the record that all such evidence

has not been provided. In addition, to date BASF has not produced any document

referencing and setting forth the results of Engelhard's 1979 study of the Johnson

mine ore.

BASF's privilege log describes the pertinent documents authored by

Engelhard scientists as "memos" or "attachments" "regarding talc testing." *See* Ex.

F at PRIV001633, PRIV001672, PRIV001786. Recipients of the documents

include J. Brush (Engelhard's inside counsel), Hemstock, Gale, and other non-

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 10

attorneys.[3] The dates of the withheld documents correspond closely with the period

during which Hemstock, Gale, and Triglia conducted the Johnson mine study as

well as other studies of the finished product to determine if the Emtal talc

contained asbestos. BASF claims attorney-client privilege over the "regarding talc

testing" documents because, according to BASF's privilege log, they reflect a

request for legal advice from Engelhard inside counsel, J. Brush. *See id.*

    If the withheld Triglia documents "relating to talc testing" concern the

Johnson mine study, the depositions of Hemstock and Gale provide important

context. According to their *Westfall* testimony, the Johnson mine study was done

by the Engelhard R&D department to gain a better understanding of the mine's

geologic make up. *See* Ex. B at 73:21–74:16; 118:22–121:11; *see also* Ex. C at

17:5–18:9.

---

    [3] In the corporate context, the attorney-client privilege also may be waived if
the communications are disclosed to employees who did not need access to them to
carry out their work. *See Tetris Holding, LLC v. Xio Interactive*, No. 09-6115,
2011 U.S. Dist. LEXIS 160871, at *37 (D.N.J. June 20, 2011) (citing *Smithkline
Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005)). Although
BASF provides the first initials and last names of the individual recipients, it does
not explain their Engelhard employment positions. Plaintiffs are thus unable to
determine if a waiver occurred because it is unknown if receipt of the Johnson
mine study documents was necessary for the identified individuals to perform their
job.

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 11

According to Hemstock's *Westfall* testimony, beginning in early 1979

Engelhard conducted a study of the Johnson, Vermont mine not for legal reasons,

but to evaluate the mine and its ore. *See* Ex. B at 73:21–74:16, 118:22–121:11.

Hemstock and fellow Engelhard scientist, Peter Gale, went to the mine in Vermont

where they gathered 38 rock samples from ten different areas of the mine. *Id*.; *see*

*also* Ex. C at 23:8–25:11; Ex. D at 1 ¶ 2. Those samples were returned to

Engelhard's lab in Menlo Park, New Jersey for analysis. *See* Ex. D at 1 ¶ 2.

The Engelhard R&D department processed the samples and sent some of

them to the Georgia Institute of Technology ("Georgia Tech") for analysis. *Id*.; *see*

*also* Ex. C at 70:12–71:9. Gale testified that he personally travelled to Georgia

Tech where he himself, examined samples taken from the Johnson mine and found

chrysotile asbestos in certain samples. *See* Ex. C at 17:5–20:9, 73:14-24. Gale

documented his findings in notes that he took while performing his analyses. *Id*. at

30:2–32:4. 2. Triglia explained in his *Westfall* deposition that he took over the

Johnson mine study after Gale left Engelhard. *See* Ex. E at 55:24–56:17.

Thus, if the withheld documents relate to that study, they cannot be

privileged even if Engelhard's inside counsel, J. Brush, received a copy. In fact,

Hemstock and Gale testified that the Engelhard R&D team conducted the Johnson

mine study for a business purpose—to gain a better understanding of the mine's

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 12

geological makeup, including determining the existence of asbestos—not for the

development of a legal opinion. *See* Ex. B at 73:21–74:16; 118:22–121:11; *see*

*also* Ex. C at 17:5–18:9

In the end, whether the withheld Triglia documents relate to the Johnson

mine ore testing, or testing of the finished product, there is no basis to conclude

that Triglia sent the memos "regarding talc testing" for the express purpose of

receiving legal advice. BASF thus fails to carry its burden in establishing that the

attorney-client privilege applies to these documents. *See* Ex. F at PRIV001633,

PRIV001672, PRIV001786.

b.   *The Facts Contained in the Withheld Engelhard Scientist*
     *"Regarding Talc Testing" Documents Should Be Produced.*

Consistent with the law and Your Honor's rulings where the scope of

attorney-client privilege has been raised, the privilege does not shield production

of any underlying facts contained in the documents.

> Protected communications can be written as well as oral. Where a
> privileged document has attachments, each attachment must
> individually satisfy the criteria for falling within the privilege. Merely
> attaching something to a privileged document will not, by itself, make
> the attachment privileged. The privilege, however, protects only the
> disclosure of the protected document; it does not protect disclosure of
> the underlying facts in the documents. Protection of the privilege
> extends only to communications not to facts. The fact is one thing and
> a communication concerning that fact is entirely different.

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 13

*Leonen*, 135 F.R.D. at 98 (internal quotations and citations omitted); *see also*

*Polansky v. Exec. Health Res. Inc.*, No. 12-4239, 2018 U.S. Dist. LEXIS 41403, at

*7 (E.D. Pa. Mar. 13, 2018) ("[T]he facts of which the Defendant had possession,

whether in the possession of business people or attorneys, paralegals, or all of the

above, and the decisions made, and actions taken, pursuant to and following those

privileged communications, are not privileged."). Thus, even if some excerpts of

the memos contain communication seeking or delivering legal advice, the facts, *i.e.*

test results and/or location from where samples were taken, are not protected by

the attorney-client privilege.

BASF cannot be allowed to shield essential facts under the guise of

privilege. To the extent that the memos outline facts concerning the testing of

Emtal talc, detailing the location or sources from which samples were obtained,

and the analysis results and conclusions as to those samples, Your Honor should

compel production of those facts, even if embedded within allegedly privileged

communications. *See, e.g., Leonen*, 135 F.R.D. at 95.

Justice Robert A. Rivera-Soto (ret.)
March 28, 2018
Page 14

## **CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that Your Honor

compel *in camera* production of December 23, 2016 BASF Privilege Log at

PRIV001633, PRIV001672, PRIV001786, and any other listed documents

authored by Engelhard scientists that concern talc testing. Your Honor may then

determine whether the attorney-client privilege applies, and whether the documents

contain discoverable facts subject to production.

Respectfully Submitted,

**COHEN, PLACITELLA & ROTH, P.C.**

/s/ *Christopher M. Placitella*
Christopher M. Placitella, Esq.
(NJ Atty #: 027781981)
Michael Coren, Esq.
(NJ Atty #: 024871979)
Jared M. Placitella, Esq.
(NJ Atty #: 068272013)
Eric S. Pasternack, Esq.
(NJ Atty #: 015132011)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

*Attorneys for Plaintiffs and the Putative
Class*

**FOX ROTHSCHILD LLP**

Jeffrey M. Pollock, Esq.
(NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive,
Building 3
Lawrenceville, NJ 08648
(609) 896-7660

cc:    All Counsel of Record (via ECF)