# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**KIMBERLEE WILLIAMS, et al.**

Plaintiffs,

vs.

**BASF CATALYSTS LLC, et al.**

Defendants.

No. 2:11-cv-01754 (JLL) (JAD)

CIVIL ACTION

### PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF THE MOTION TO STAY THE IMPLEMENTATION
### OF THE SCIENCE DAY ORDER (CM/ECF # 485)

**FOX ROTHSCHILD LLP**

Jeffrey M. Pollock, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648
(Tel): (609) 896-3600
(Fax): (609) 896-1469

**COHEN, PLACITELLA & ROTH, P.C.**

Christopher M. Placitella, Esq.
Michael Coren, Esq.
Jared M. Placitella, Esq.
Eric S. Pasternack, Esq.
127 Maple Ave
Red Bank, New Jersey 07701
(Tel): (732) 747-9003
(Fax): (732) 747-9004

*Attorneys for Plaintiffs and the
Proposed Class*

Dated: April 30, 2018

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT .....................................................................1

II.   STATEMENT OF THE CASE RELEVANT TO THE SCIENCE DAY
ORDER .............................................................................................................6

III.  STANDARD OF REVIEW........................................................................14

IV.   ARGUMENT..............................................................................................15

   A.    Plaintiffs will prove that the unprecedented Science Day Order is clearly
erroneous and contrary to the law.........................................................................17

    1.  Because a science tutorial is not evidence, a Science Day would neither be
useful nor necessary to the resolution of Plaintiffs' crime-fraud motion and
invites potential overstepping by the Special Discovery Master of his authority
and role under CM/ECF # 335.........................................................................17

    2.  The Special Discovery Master can resolve the crime-fraud motion without
weighing in on the science of asbestos testing.................................................22

    3.  The Special Discovery Master should review the documents at issue to
determine if those documents and the evidence placing the documents in
context establish the applicability of the crime-fraud exception. .....................24

   B.    Plaintiffs will suffer irreparable harm if this request for a stay pending
appeal is not granted. ...........................................................................................26

   C.    Granting a stay pending appeal would not injure any of the parties...........28

   D.    The grant of a stay pending appeal will not harm the public interest. ........28

V.   CONCLUSION ..................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Alliance to End Repression v. Rochford*,
  75 F.R.D. 441 (N.C. Ill. 1977)............................................................................28

*Ascion, LLC v. Tempur Sealy Int'l, Inc.*,
  No. 15-12067, 2017 U.S. Dist. LEXIS 169279 (S.D. Mich. Oct. 13, 2017) .......18

*AT&T Corp. v. Pub. Serv. Enter., Inc.*,
  Civil Action No. 99-4975, 2000 U.S. Dist. LEXIS 4649
  (E.D. Pa. Apr. 12, 2000) .......................................................................... 15, 30

*Best Med. Int'l, Inc. v. Accuray, Inc.*,
  No. 10-1043, 2012 U.S. Dist. LEXIS 184490 (W.D. Pa. 2012) .........................18

*Caldwell v. District Court*,
  644 P.2d 26 (Colo. 1982) ....................................................................................27

*Cost Bros., Inc. v. Travelers Indem. Co.*,
  760 F.2d 58 (3d Cir. 1985) ..................................................................................14

*Effective Exploration, LLC v. Pa. Land Holdings Co.*,
  Civil Action No. 14-00845, 2015 U.S. Dist. LEXIS 111504 (W.D. Pa. 2015) ...18

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) .............................................................................................15

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011) ........................................................................ 17, 27

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005) ...........................................................................18

*Robertson v. Allied Signal, Inc.*,
  914 F.2d 360 (3d Cir. 1990) ...................................................................... 23, 24, 25

*St. Charles Hosp. & Rehab. Ctr. v. Mylan Labs*,
  208 F.R.D. 1 (D.D.C. 2002) ...................................................................................28

*United States v. Nutrition Serv., Inc.*,
  234 F. Supp. 578 (W.D.Pa 1964) ...........................................................................30

*United States v. Zolin*,
  491 U.S. 554 (1989) ...............................................................................................26

*Williams v. BASF Catalysts LLC*,
  765 F.3d 306 (3d. Cir. 2014) ............................................................................6, 22

*Williams v. BASF Catalysts LLC*,
  Civil Action No. 11-1754, 2016 U.S. Dist. LEXIS 46273 (D.N.J. Apr. 5, 2016). 2

**Rules**

Fed. R. Civ. P. 1 .............................................................................................. 15, 29

## I.   PRELIMINARY STATEMENT

Plaintiffs' respectfully request emergent relief in the form of an order staying the implementation of the Special Discovery Master' April 23, 2018 Order, scheduling a "Science Day evidentiary hearing" for May 2, 2018, (Exhibit 1, CM/ECF # 485) (the Science Day Order), relating to Plaintiffs' pending-motion to determine the applicability of the crime-fraud motion to BASF's claim of attorney-client privilege. (Exhibits 2, 3, 4). The Special Discovery Master's Order is contrary to the law governing this case, imposes unjust burdens on Plaintiffs that are impossible to comply with, and is unprecedented in more than 50 years of asbestos litigation nationwide.

Ruling that the parties must take part in an elaborate, unprecedented Science Day evidentiary proceeding, the Hon. Justice Roberto Rivera-Soto, J. (ret.), the Court's Special Discovery Master ("SDM"), directed the parties to exchange reports of experts by April 30, 2018, just 5 business days after the issuance of the Science Day Order, and then have those experts testify just two days later on the following issues:

> (a) the overall testing record concerning Emtal talc to determine whether and to what extent it contained asbestos;
>
> (b) the relevant capabilities and limitations of the testing methods then used by BASF (and its predecessors) and others to determine whether and to what extent the Emtal talc was contaminated with asbestos;

1

(c) the conclusions, if any, reached by government investigators, third-party analysts, and others regarding whether and to what extent the Emtal talc was contaminated with asbestos; and,

(d) the results of any more recent testing of Emtal talc samples[.]

Plaintiffs object to this elaborate, disruptive and costly Science Day proceeding and are preparing to timely appeal the Order to this Court as is their right. However, the exchange of testimony and the hearing itself as required by the Science Day Order in the middle of the appeal period render moot Plaintiffs' right of appeal. Plaintiffs promptly informed the Special Discovery Master of their intention to appeal his Order and requested that he stay it to permit an orderly appeal process. On April 25, 2018 the Special Discovery Master denied Plaintiffs' request for a stay. (Exhibit 18, CM/ECF # 491). Plaintiffs now ask this Court for a stay so that they may perfect their appeal of the Science Day Order.

The Science Day proceeding as ordered is objectionable and prejudicial to Plaintiffs for several reasons. As this Court has recognized, "[t]his action is not itself an asbestos injury case," to be re-opened and tried as such decades after the underlying cases were dismissed as a result of Defendants' actions in courts around the country. *Williams v. BASF Catalysts LLC*, Civil Action No. 11-1754, 2016 U.S. Dist. LEXIS 46273, *56 (D.N.J. Apr. 5, 2016). Science Day is thus unnecessary because the scientific questions posed have no bearing upon the resolution of the crime-fraud motion in the circumstances of this case. The central issue in this class

action is whether BASF Catalysts LLC, formerly known as Engelhard Corporation

("BASF"), and its national asbestos defense counsel, Cahill Gordon & Reindel

("Cahill"), conspired to deceive some 16,000 putative Class Members who brought

asbestos claims against BASF. All members of the proposed Class throughout the

course of Defendants' conspiracy were: (1) lied to regarding the existence of

asbestos in the talc; and (2) were injured by Defendants' deceit by either

voluntarily dismissing their cases without receiving fair and adequate consideration

or suffering an involuntary dismissal when they could not prove the most

fundamental liability element that the talc contained asbestos. To determine the

crime-fraud issue, the Court should not delve into the question of whether the

positive test results were sufficient to sustain Plaintiffs' underlying claims. The

only question is whether the company and its lawyers concealed and lied about the

existence of positive asbestos test results.

Defendants defended Emtal asbestos injury lawsuits with three interrelated

falsehoods: (1) there was no asbestos in Emtal talc; (2) there was no evidence that

Emtal talc contained asbestos; and (3) no Engelhard employee had ever testified

that there was asbestos in the talc. In addition, shortly following the settlement of

the *Westfall* mesothelioma case in 1984, the company gathered up and either

discarded or secreted away documents harmful to its defense of subsequent

asbestos actions, which in the late 1980s began to pour in.[1]  Neither these lies nor the suppression of evidence requires expert testimony to understand and similar requests by BASF for a Science Day proceeding have been uniformly denied by this Court previously and others as being unnecessary.

Second, preparing expert reports, when fact discovery is not even concluded, will alone take weeks, not days.[2] Justice here cannot be determined in haste, but rather with the opportunity for both sides to be heard in a meaningful manner and time. Moreover, when asked and informed about the April 30 report deadline and the May 2 "evidentiary hearing" as set forth in the Science Day Order, Plaintiffs' consulting expert on mineralogy and testing materials for asbestos advised that he could not prepare a report on such short notice and was not available to testify on the ordered date, and that even if he were available, could not be ready to testify on the topics by then. *See* Declaration of Christopher M. Placitella. So, even if a "Science Day" were  permissible, Plaintiffs and their expert cannot comply with the Order as written.

---

[1]     This Court has ruled that the Defendants had a duty to preserve all of this evidence beginning at least as early as 1984, if not earlier. *BASF Catalysts LLC*, Civil Action No. 11-1754, 2016 U.S. Dist. LEXIS 46273, *21-22 (D.N.J. Apr. 5, 2016).

[2]     Indeed, the Special Discovery Master has previously ordered that expert reports are not due until June 1, 2018. (CM/ECF # 371).

4

Third, requiring the parties to put on an elaborate, costly Science Day evidentiary hearing, which cannot be used for evidentiary purposes in the case is contrary to law. Tutorial proceedings are not common place litigation events. And when allowed or requested by a court, usually to initially inform it on a novel or highly esoteric technical matter such as some particular technology involved in a patent dispute, courts emphatically note the tutorials are not evidence and cannot serve as basis to make rulings on issues. *See* discussion *infra*. The elaborate proceeding called for here in the Science Day Order thus has no discernable utility and is not needed for the Court to determine if the New Jersey crime-fraud exception or the elements of the *Kozlov* exception apply to negate BASF's claims of privilege. Indeed, Plaintiffs' proof of a *prima facie* case of crime-fraud is far more than sufficient based on the documents attached to the pleadings alone to require the Special Discovery Master to proceed to the next stage of reviewing the withheld documents *in camera*.

For these reasons, which are expanded upon below, the Court should grant Plaintiffs emergent application for a Stay of the Special Discovery Master's Science Day Order pending this Court's determination of Plaintiffs' appeal.

## II.   STATEMENT OF THE CASE RELEVANT TO THE SCIENCE DAY ORDER

Following the Third Circuit's decision here in *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3d. Cir. 2014), Plaintiffs filed a Second Amended Complaint with leave of the Court. (CM/ECF # 156, 158). The parties then filed several discovery motions, including a motion by BASF requesting that the Court hold a "Science Day." (Exhibit 5, CM/ECF # 238).

In its initial motion requesting a "Science Day," BASF wished to address "[t]he relevant differences between asbestos and talc" and "[s]tandards and terminology related to asbestos exposure and the amount of asbestos in a product." (Exhibit 5, CM/ECF # 238). In opposition to that request, Plaintiffs noted that "in the 50 years of litigation involving asbestos containing products there is no precedent for BASF's request . (Exhibit 6, CM/ECF # 240). Plaintiffs also stressed that "the time and expense associated with the preparation and proper presentation associated with BASF's proposed 'Science Day' is unjustified." (*Id.*). The Hon. Joseph A. Dickson, U.S.M.J. denied BASF's motion for a Science Day as being "not necessary." (Exhibit 7, CM/ECF # 261).

Although discovery in earnest in this case had only just begun, and virtually no depositions of the Defendants had been taken yet under this caption (depositions had been taken and many documents had been produced under seal  in

a two year long proceeding in the related Superior Court *Sampson* case before Justice Gary S. Stein (Ret.) who sat as the state court  Special Discovery Master), [3] the Special Discovery Master at the October 26, 2017 argument *sua sponte* directed Plaintiffs to file their crime-fraud exception motion by November 2, 2017; that is seven days after the hearing. (CM/ECF # 369). Plaintiffs complied and filed their crime-fraud motion on that date. (Exhibit 2).

It merits pausing here to note that Plaintiffs were ordered to file their crime fraud motion without the benefit of even a single deposition in this case. Since then depositions in this case which inform the crime-fraud motion have been taken, are ongoing and are scheduled to conclude on May 21, the class-wide fact discovery end date. The parties have an aggressive and tight schedule of preparing for and taking or defending depositions all over the country, which is being disrupted by having to stop and prepare for the Science Day evidentiary hearing. New and significant information bearing upon the fraud issues in this case is moreover being discovered with every deposition taken, such as:

---

[3]  Efforts by Plaintiffs to provide the Special Discovery and the Court with the benefit of the depositions of BASF's former counsel taken before Justice Stein in *Sampson* were stymied by BASF and its co-defendants who objected to the Special Discovery Master and the Court having access.  A motion by the *Sampson* counsel (who also represent the *Williams* plaintiffs here) before the New Jersey Supreme Court to obtain permission to share the factual record with this Court is presently pending to allow this Court's access to the *Sampson* record as had been allowed in a previous Order entered in the Law Division.

1. BASF's corporate representative, Charles Carter, who had signed affidavits under penalty of perjury based upon his personal knowledge and review of corporate records stating that no asbestos testing data or results existed, has recently testified contrary to his representations in his affidavits that he actually possessed no personal knowledge and had never reviewed a single document. Exhibit 22, 3/14/2018 Carter Tr., T81:8 to 82:13, 85:22 to 86:10.

2. Englehard/BASF's in-house counsel testified that the company completely outsourced the responsibility for the defense of Emtal asbestos claims to Cahill, including all discovery responses that there was no evidence of any asbestos in Emtal talc. BASF's counsel also testified  that the company did not take steps to verify that the discovery responses were truthful. Exhibit 23, 4/24/2018 Hassett Tr., T78:8-18.

3.  Engelhard/BASF's in-house counsel indicated in answers to interrogatories filed in the underlying cases that he had coordinated the responses to answer interrogatories. He has now admitted, however, that he  never actually read a single interrogatory or had anything to do with providing the responses. Exhibit 23, 4/24/2018 Hassett Tr., T113:10-16.

4. Even after a Cahill paralegal informed Cahill lawyers that he had in his possession the depositions of Dr. Hemstock and Dr. Gale, both of whom had testified in *Westfall* that Engelhard found asbestos in the Engelhard mine and

finished product, BASF continued to represent to claimants and courts that there

was no such evidence of asbestos contamination in Emtal talc. Exhibit 24,

4/13/2018 Kelly Tr., T249:20 to 251:6.

5. In 2005, a lawyer in Rhode Island discovered the identity of the plaintiff's

expert, Dr William Glassley, in  the *Westfall* case in 1983, and secured a report

from him establishing that he had personally visited the mine and analyzed

samples which showed the mine contained chrysotile asbestos. When confronted

with the report, BASF/Engelhard quickly settled the *Martin* case for $400,000

(which was 400x the average amount paid in cases within the *Williams* class which

did not have the benefit of this evidence) on the condition that the plaintiff's

lawyer never disclose the information to anyone. BASF thereafter placed Dr.

Glassley's expert report on the privilege log and continued to falsely represent to

litigants and courts that there was no evidence of asbestos in the Johnson mine.

Exhibit 23, 4/24/2018 Hassett Tr., 94:12-21; 156:15-22; 167:7-9.

6. In order to secure dismissals of all the cases filed in Pennsylvania, BASF

represented to the plaintiff's lawyer 12 different times that there was no evidence

of asbestos in the Engelhard product. Defendants moreover represented to Judge

Charles Weiner, the federal judge in the Eastern District of Pennsylvania

overseeing all federal cases in the United States, that the Engelhard product was

asbestos free and threatened the plaintiff's lawyer with sanctions. Exhibit 25, 4/26/2018 Schwartz Tr., T2744:1 to 282:21.

7. In 2009, BASF again commissioned it local counsel to threaten a plaintiff's lawyer in New Jersey with sanctions if she did not agree to dismiss BASF on the basis that there was no asbestos in the talc. In his recent deposition, BASF's local counsel indicated the evidence of positive tests in possession of BASF and the depositions of the corporate scientists were not shared with him. He further indicated that he would have never have agreed to send the letter threatening sanctions if he had been told the truth and the evidence in BASF's possession  had been shared with him.  Exhibit 24, 4/13/2018 Kelly Tr., T249:18 to 251:6.

People still to be deposed include the former General Counsel of Engelhard, lawyers from Cahill, and the corporate representatives of both Cahill and BASF. Yet even with the above fact discovery still going on, the Special Discovery Master conducted oral argument on the crime-fraud motion on February 23, 2018. In that argument, counsel for BASF again brought up a Science Day. Exhibit 9, 2/23/18 Hr'g Tr., T263:14-21. Recognizing however that a Science Day would be "an expensive proposition for all the parties who are involved," the Special Discovery Master expressed his view that a Science Day is not "necessary." *Id.*, T285, T18-25.

10

The Special Discovery Master again heard oral argument on Plaintiffs' crime-fraud motion on April 2, 2018. During the second argument on the crime-fraud issue, the Special Discovery Master volunteered that "maybe there is some worth to the Science Day that [Defendants] keep wanting to have." Exhibit 10, 4/2/2018 Hr'g Tr., 204:3-5. The Special Discovery Master, however, neither said why he was wavering on holding a Science Day nor what issues should be addressed.

The Special Discovery Master directed the parties to meet and confer regarding a Science Day. There was no agreement between the parties given the disparate views of whether such was required or needed and, even were it ordered, the topics and process.

On April 18, 2018, the Special Discovery Master sent the parties an email noting that he had only "expressed [his] desire to grant BASF's earlier denied motion for a 'science day' to aid [him] in understanding the claims underlying plaintiff's motion to determine the applicability of the crime-fraud and *Kozlov* exceptions to defendants' privilege claims." (Exhibit 11). Again, the Special Discovery Master gave no reasons for the Science Day.

That same day, April 18, 2018, BASF advised that it would be filing a letter on the subject, and the Special Discovery Master responded by directing that any

11

responses thereto be made within 24 hours. BASF soon thereafter filed its letter, and the Special Discovery Master sent the following email reply that same day:

> For the avoidance of doubt, there are two conditions precedent that should guide you in making your comments. **First, there will be a "science day;"** this is not a question of "**whether**" but of "**when**." Second, the scope of and procedure to be following during the "science day" will be determined once everyone's comments are in hand.

(Exhibit 12) (emphasis added). Concerned by the Special Discovery Master's imposition of a 24-hour deadline to respond to the Science Day proposal put forth by BASF on April 18, 2018, Plaintiffs requested additional time to reply (Exhibit 13). (CM/ECF # 484). As Plaintiffs explained, because "we have not yet had an opportunity to address its need, we write today to formally object and share our view that a Science Day is not necessary to meaningfully advance these proceedings on Plaintiffs' crime-fraud motion." (*Id.*). Plaintiffs also asked that there be full briefing on the subject given the importance of the crime-fraud motion to this case.

Notwithstanding Plaintiffs' repeated requests for full briefing on the issue, the Special Discovery Master next entered an order on April 23, 2018, that an evidentiary hearing for the receipt of expert proofs in aid in resolving plaintiffs' pending motion to determine the applicability of the crime-fraud and *Kozlov* exceptions to defendants' privilege claims be, and the same hereby is, scheduled

for Wednesday, May 2, 2018," beginning with the exchange of expert reports on

April 30, 2018. (Exhibit 1, CM/ECF # 485). It is in this Order that the Special

Discovery Master for the first time delineated the scope of the hearing by adopting

all the points given to him by BASF:

> (a) the overall testing record concerning Emtal talc to determine whether and to what extent it contained asbestos;
>
> (b) the relevant capabilities and limitations of the testing methods then used by BASF (and its predecessors) and others to determine whether and to what extent the Emtal talc was contaminated with asbestos;
>
> (c) the conclusions, if any, reached by government investigators, third-party analysts, and others regarding whether and to what extent the Emtal talc was contaminated with asbestos; and,
>
> (d) the results of any more recent testing of Emtal talc samples[.]

(*Id.*).

The Science Day evidentiary hearing as ordered is elaborate and will be

expensive for the parties to put on. Unlike the Science Day held before Judge

Wolfson in the ovarian talc cases, in which counsel for the parties explained the

science and the studies to the Court concerning a single targeted issue in non-

argumentative form, (Exhibit 21), the Science Day Order sets up a full blown

adversarial evidentiary hearing, requiring that "these proofs are to be presented

exclusively via the *viva voce* testimony of experts qualified as required by *Fed. R.*

*Evid.* 702" and that "summaries of the testimony of each of the experts to be

tendered at the May 2, 2018 evidentiary hearing shall be exchanged among the

parties by no later than noon on Monday, April 30, 2018." (Exhibit 1, CM/ECF # 485).

On April 24, 2018, Plaintiffs requested that the Special Discovery Master stay the implementation of the April 23, 2018 Order pending appeal. (Exhibit 15, CM/ECF # 487). In response, BASF responded that the Special Discovery Master should deny the motion for a stay but agreed that the Science Day could be postponed. (Exhibit 16, CM/ECF # 488). Cahill likewise did not object to a postponement of the Science Day. (Exhibit 17, CM/ECF # 490).

Although the Special Discovery Master received no objection from the parties to postponing the Science Day, on April 24, 2018, he denied Plaintiffs' motion for a stay pending appeal. (Exhibit 18, CM/ECF # 491).

## III.   STANDARD OF REVIEW

The decision of whether to grant a stay in this case is committed to this Court's discretion, "since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket." *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *AT&T Corp. v. Pub. Serv. Enter., Inc*., Civil Action No. 99-4975, 2000 U.S. Dist. LEXIS 4649, *15 (E.D. Pa. Apr. 12, 2000) (granting stay pending appeal where the appeal would call the validity of the decision into question). The Court must consider the following factors in determining whether to issue a stay pending appeal: (1) whether the stay applicant

14

has made a showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

## IV.   ARGUMENT

Rule 1 of the Rules of Civil Procedure offers one fundamental promise to all litigants, that the Rules of Civil Procedure will be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding. Requiring parties engaged in extensive discovery under time pressure of an impending discovery cut-off day of May 21st to stop and engage experts, obtain and present expert reports in one week, when expert reports cannot be generated in less than one month on the extensive topics listed in the Special Discovery Master's order, and then have the experts come in from across the country and testify shatters the very core premise of Rule 1 upon which all of the Rules of Civil Procedure are premised.

Plaintiffs believe their forthcoming appeal is likely to succeed because Defendants three-prong fraudulent defense scheme included the denial and suppression of *any* positive evidence of asbestos contamination, which denial and suppression requires no scientific expertise to understand. Indeed, three other New Jersey jurists who have ruled upon the same crime fraud issues surrounding

Defendants' actions—Justice Stein, Appellate Division Judge Lintner and Superior

Court Judge Viscomi—did not require an elaborate Science Day in order to

consider and determine the applicability of the crime-fraud exception. Moreover, a

Science Day tutorial is not evidence upon which the Special Discovery Master

could resolve the crime-fraud motion in the first instance. Further, the truncated

procedure and denial of merits briefing leading to the Science Day Order

constitute  a denial of Plaintiffs' due process rights. Plaintiffs were afforded just

two days to offer an opposition to the need for a Science Day though receiving, in

the interim, an e mail  from the Special Discovery Master that there would be a

Science Day and that he was in interested in hearing only "when" and not

"whether" a Science Day should take place. (Exhibit 12). Thus, no matter the

schedule, the Special Discovery Master had already decided the issue without

considering Plaintiffs' opposition.

In addition to the procedural and substantive irregularity of the decision to

hold a Science Day, and  not following Third Circuit precedent, the Special

Discovery Master has not yet reviewed BASF's withheld documents at issue in the

crime-fraud motion to both determine if they provide *prima-facie* basis for

conducting an *in camera* review as well as to begin making rulings on what comes

within the ambit of the exception and what does not. *In re Chevron Corp.*, 633

F.3d 153, 167 (3d Cir. 2011). Although having stated the need to "deal with the

facts as they are," Exhibit 10, 4/2/18 Hr'g Tr., 52:23-24, the Special Discovery

Master has only requested, but not ordered, BASF to provide him the very

documents for review the Third Circuit directs he should review; instead, the

Special Discovery Master has scheduled a Science Day, which cannot form the

basis for determining the state of mind of the Defendants who conceived and

carried out the fraudulent defense scheme more than thirty years ago. Indeed, after

the fact scientific opinion in a fraud and fraudulent concealment case cannot and

should not be a basis upon which the Court decides the crime-fraud motion.

Accordingly, Plaintiffs will show on appeal that a Science Day serves no purpose

and that the Order should be vacated.

**A.     Plaintiffs will prove that the unprecedented Science Day Order is clearly erroneous and contrary to the law.**

**1.   Because a science tutorial is not evidence, a Science Day would neither be useful nor necessary to the resolution of Plaintiffs' crime-fraud motion and invites potential overstepping by the Special Discovery Master of his authority and role under CM/ECF # 335.**

A court may permit or require the use of tutorials to educate it in cases

involving complex technology or other complex subject matter that may be

especially difficult for a non-specialist in a particular field to comprehend. *See Best*

*Med. Int'l, Inc. v. Accuray, Inc.*, No. 10-1043, 2012 U.S. Dist. LEXIS 184490,

*314 (W.D. Pa. 2012); *In re Pharmaceutical Industry Average Wholesale Price*

*Litig.*, 230 F.R.D. 61, 67 (D. Mass. 2005). Most critically, a "tutorial is not

17

evidence; it is only for the Court's benefit so that it can understand" the complex subject matter. *Ascion, LLC v. Tempur Sealy Int'l, Inc.*, No. 15-12067, 2017 U.S. Dist. LEXIS 169279, at *11 (S.D. Mich. Oct. 13, 2017); *accord Effective Exploration, LLC v. Pa. Land Holdings Co.*, Civil Action No. 14-00845, 2015 U.S. Dist. LEXIS 111504, at *138 (W.D. Pa. 2015) ("[t]he parties' technology tutorials, while helpful, do not provide 'evidence' on which a Court can rely, nor is that the purpose of a 'technology tutorial.'"). In fact, when Judge Wolfson recently conducted a Science Day in the Johnson & Johnson talcum powder cases, the court began the session with the following statement on the purpose of the tutorial:

> First of all, this educational exercise today, the agreement between counsel and the Court is that this is for, essentially, informational educational purposes and may not be used by any party in this case. It will not be admissible in evidence in any matter or in any other matter pending, or to be filed.

(Exhibit 21). Consistent with this purpose, Judge Wolfson restricted the science tutorial before her to the issue of talcum powder's association with ovarian cancer, which was then given to her through presentations by each side's respective counsel limited to two hours a side. No experts were called to testify or appear through affidavits.

None of the safeguards that Judge Wolfson employed to prevent misuse of the tutorial to her are present in the Science Day Order. Meaning no disrespect, the Special Discovery Master was appointed by the Court to determine the

administration of discovery, not decide this case. (CM/ECF # 335, §I. Scope of the

Special Master's Authority) ("[S]special master shall oversee the schedule for

completion of discovery and all discovery disputes and motions related

thereto…."). It is consequently troubling that the scope of the Science Day

evidentiary hearing set forth in the Science Day Order is so broad and wide-

ranging: the issues identified by the Special Discovery Master go to the merits of

the underlying asbestos cases which the Third Circuit has already ruled are not part

of this case, and not to the crime-fraud exception. It appears that the Special

Discovery may be intent on making rulings as to what is or is not asbestos or what

is or is not a sufficient test finding of asbestos to have warranted its production in

the underlying cases. That is not the Special Discovery Master's role and that is not

what he is authorized by the Court to do. *Id.*

Furthermore, there is no evidence in the record showing that Defendants

concealed and otherwise misrepresented evidence because of questions stemming

from the geologic science of talc ore, the text and meaning of government

regulations or the validity of test findings and methodologies. Rather, Defendants

suppressed and misrepresented evidence of positive test results precisely because

the tests were asbestos positive and could support a plaintiff's case, as the evidence

did in the *Westfall* case when Cahill produced it  to Westfall's lawyer. The legacy

tests that the *Williams* Plaintiffs have uncovered in this proceeding were produced

in the *Westfall* case, and they should have been produced in the later cases when Engelhard and BASF were sued. Yet Defendants did not produce or identify these positive test results. Indeed, BASF's local counsel, Robert Kelly, in the *Paduano* case finally turned over the positive test results testified to in the *Westfall* when he learned of their existence.

Likewise, the issues in the Science Day Order have no bearing on why the Hemstock, Gale, and Triglia depositions in the *Westfall* case were suppressed. These deponents were Engelhard research and development scientists, with Hemstock serving as the Vice President of Englehard's Mineral and Chemical Division R&D department when he testified. That should be all the science a court needs to know in determining if suppression of the depositions, which state the talc contained asbestos, was material and done so in order to hamper and defeat asbestos claimants' claims

BASF has argued that a scientific tutorial is necessary on these issues to understand "why there was a reasonable basis in the minds of lawyers and others in the 80s and the 90s and the 2000s for statements that were made." Exhibit 9, 2/23/18 Hr'g Tr., T263:14-21. But this contention is neither factually nor logically correct or even plausible. At the time defendants were withholding evidence, BASF's responses to discovery and representations in briefs were unequivocal: it represented that there was no evidence whatsoever of asbestos contamination. A

20

Science Day would not shed any light on the simple fact that Engelhard/BASF and Cahill for three decades falsely told courts and claimants that there was no positive evidence of asbestos in the talc, and thereby got their claims dismissed.  Indeed, as stated above, we know from contemporaneous documents what was "in the minds of lawyers and others" when the statements were made. The proper question here is thus not whether BASF can now present scientific opinion in an attempt to justify the scheme employed decades ago against asbestos claimants. What matters is what Defendants actually said and did when they denied the very existence of material facts and evidence about asbestos in the talc that was then in BASF and Cahill's custody, possession or control and which they had a duty to preserve. *Williams v. BASF Catalysts LLC*, Civil Action No. 11-1754, 2016 U.S. Dist. LEXIS 46273, *21-22 (D.N.J. Apr. 5, 2016).

Suffice to say, as a matter of common sense none of the areas identified by the Special Discovery Master would be of any proper use to the Court in deciding Plaintiffs' crime-fraud motion: the issue is not the scientific explanation or value of asbestos-positive test results but whether, for purposes of obtaining the dismissal of cases, Defendants concealed and suppressed that evidence, which is the most central element of an asbestos case. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 322 (3d Cir. 2014) (asking "[w]hat could be more important to a claim that

talc caused asbestos disease than proof that talc contained asbestos?"). And in that regard, there is no question that they did.

The falsehood used to secure dismissals was not that the evidence was unreliable or did not meet some reporting threshold. Rather, BASF and its counsel represented that the product contained no amount of asbestos whatsoever. For example, BASF represented  in a letter dated May 3, 2002 to counsel for one of the class representatives that "there is **absolutely no evidence** that this talc contained asbestos." (Exhibit 20, 5/3/2002 Mark ltr. to Strauss (emphasis added)).

### 2.  The Special Discovery Master can resolve the crime-fraud motion without weighing in on the science of asbestos testing.

Defendants suggest that certain governmental definitions of asbestos containing product justify their representations that there was no evidence of asbestos in Emtal talc. But assuming reliance on these definitions by Defendants, and there is no evidence of such, Plaintiffs' crime-fraud motion can be resolved without first determining whether Emtal talc contained a sufficient level of asbestos because the Defendants' fraudulent scheme was predicated on denying the existence of *any* positive test results.

In *Robertson v. Allied Signal, Inc.*, 914 F.2d 360 (3d Cir. 1990), Dr. Arthur Rohl on behalf of Philadelphia area tireworker claimants, opined that Vermont Talc Company's product contained just 0.2 to 0.5% asbestiform minerals in some

samples, which would have become airborne and respirable when the talc was used. *Id.* at 377. Judge Charles A. Weiner granted summary judgment for all four defendants, grounding his conclusion that plaintiffs had failed to present sufficient product identification evidence. *Id.* at 375. In particular, Judge Weiner rejected Plaintiff's exposure evidence of the "fiber drift theory," holding that this failed to comport with *Eckenrod*'s "frequency, regularity and proximity" standard. *Id.*

The Third Circuit reversed the grant of summary judgment, explaining:

> As we have discussed, under the strict *Eckenrod* standard, a plaintiff claiming asbestos-related injury may withstand a defendant's motion for summary judgment only in those cases in which he is able to raise a reasonable inference that he was exposed to and injured by fibers released by the particular defendant's product. **Our review of the record convinces us that, completely without reference to the fiber drift theory, some of the plaintiffs were able to adduce evidence sufficient to establish the requisite *Eckenrod* showing of regularity, frequency and proximity with regard to some of the defendants' products and are, therefore, entitled to have the question of causation considered by the jury.**

*Id.* at 376 (emphasis added). In other words, notwithstanding that the product contained just 0.2 to 0.5% asbestiform minerals, the Third Circuit found a genuine dispute of material fact about even low level asbestos contamination that should go to the jury.

This finding showing that low level asbestos claims can go to the jury is significant generally. But its importance here is dramatic as the test results

Engelhard concealed about Emtal talc showed even *higher* asbestos content than

those in *Robertson* which the Third Circuit allowed to go forward. *Id.* at 372, 384.

By denying the existence of and secreting away positive testing results,

Defendants denied every putative class member exactly what Defendants

themselves seek here for their own benefit: an opportunity to assess the strength

and validity of both the positive and negative testing results. The Court accordingly

need not assess the validity and impact of the positive and negative test results for

asbestos contamination; it suffices in the context of this case that there was

evidence of asbestos in Emtal talc, which would have allowed plaintiffs to go

forward with their cases. That is particularly so given that Defendants' fraudulent

defense did not rely on a distinction between reliable and unreliable test results or

trace and abundant amounts. Rather, Defendants falsely represented—without

exception or equivocation—that there was simply ***no asbestos***, ***no evidence,*** and

**no Engelhard witness testimony** of asbestos in Emtal talc. (Exhibit 19).

   **3. The Special Discovery Master should review the documents at issue
to determine if those documents and the evidence placing the
documents in context establish the applicability of the crime-fraud
exception.**

To understand and appreciate the nature and extent of Defendants'

fraudulent scheme, the Special Discovery Master should review the claimed-

privileged documents that Plaintiffs identified because only then could the Court

"deal with the facts as they are" in determining whether the crime-fraud exception applies here. Exhibit 10, 4/2/18 Hr'g Tr., 52:23-24.

In declining to do so, the Special Discovery Master explained that (1) the burden of proof Plaintiffs must satisfy is that of a "preponderance of the evidence"; and (2) that the Court will only conduct an *in camera* review of the documents at issue once a *prima facie* of crime-fraud has been made. Exhibit 9, 2/23/2018 Hr'g Tr., 84:4-11; 108:17-19. This position however is not only contrary to the law but also prejudicial to Plaintiffs.

As the Supreme Court has explained, a movant need only produce sufficient evidence to "support a reasonable believe that *in camera* review may yield evidence that establishes the exception's applicability" to justify an *in camera* review. *United States v. Zolin*, 491 U.S. 554, 574-75 (1989). That is because an "*in camera* inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure[.]" *Id.* at 570-72. As a result, the gateway standard guiding the Court's discretion is a liberal one: "[b]efore engaging in *in camera* review to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' . . . that *in camera review* of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572 (quoting *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo.

25

1982)). And consistent with these pronouncements, the Third Circuit has held that
"even if the party seeking to invoke the crime-fraud exception to the attorney-
client privilege cannot make out a *prima facie* case sufficient to overcome the
privilege, it still may be entitled to have a court make an *in camera* review of the
documents in issue to determine if those documents and the evidence placing the
documents in context establish the applicability of the crime-fraud exception to the
privilege." *In re Chevron Corp.*, 633 F.3d 153, 167 (3d Cir. 2011). Stated another
way, Plaintiffs need not point to the proverbial "smoking gun" as the Special
Discovery Master has suggested. 4/2/2018 Hr'g Tr., T95:21-24.

The Special Discovery Master should review the sought-after documents.
That he has not already done so is contrary to the law and also prejudicial to
Plaintiffs because while the crime-fraud issue has been pending for nearly six
months, Plaintiffs have been and continue to be left conducting discovery without
the benefit of a ruling on the crime-fraud motion.

**B.** **Plaintiffs will suffer irreparable harm if this request for a stay
pending appeal is not granted.**

If Plaintiffs' request for a stay pending appeal is denied, the conduct and
ordered format of Science Day would impose significant, impossible and
unnecessary burdens on Plaintiffs. *See St. Charles Hosp. & Rehab. Ctr. v. Mylan
Labs*, 208 F.R.D. 1, 6 (D.D.C. 2002) (granting a stay "to conserve the resources of
all parties" where the appeal "could dispose of this litigation"); *Alliance to End*

*Repression v. Rochford*, 75 F.R.D. 441, 447 (N.C. Ill. 1977) (granting motion to stay class discovery where there was a "possibility that needless discovery might occur if the Circuit Court were to decide to modify the class").

      To begin with, the Science Day envisioned and ordered by the Special Discovery Master requires Plaintiffs to retain, prepare, schedule, and compensate experts on short notice in what has already been an extraordinarily costly proceeding.[4] That should not be required as the June 1st deadline for expert reports is still more than a month off. Additionally, Plaintiffs did not envision having an expert speak to the topics that the Special Discovery Master wants them to address as they are in no way germane to this proceeding. Moreover, if this appeal is granted, the Science Day will not only have been unnecessary, but also a distraction from the pressing needs of class-wide discovery with its approaching end date of May 21, 2018.

      As a practical matter, Plaintiffs are unable to on short notice obtain an expert to testify as their current consulting mineralogist is unable to be in Philadelphia to attend the hearing and testify and cannot  prepare by April 30th a report on his testimony as required. Nor is he able to become prepared to address the four broad areas set out in the Order by May 2, 2018. See Placitella Certification.

---

[4]     To date, the Special Discovery Master has invoiced the parties over $260,000.

Further, Plaintiffs would also be substantially prejudiced by a Science Day evidentiary hearing if Defendants present testimony on the "results of any more recent testing of Emtal talc samples" as Plaintiffs have not been provided with any such samples or testing data. Testimony on this issue would thus amount to nothing less than a trial by ambush, which should not be permitted.

**C.      Granting a stay pending appeal would not injure any of the parties.**

The grant of a motion to stay the implementation of the Science Day Order would not injure any of the other parties. Indeed, while Defendants opposed Plaintiffs' motion for a stay pending appeal before the Special Discovery Master, they did not oppose the postponement of the Science Day and offered no explanation for how a stay would cause them any injury.

**D.      The grant of a stay pending appeal will not harm the public interest.**

A stay of the proceedings in this matter is consistent with the public interest because it will avoid the unnecessary expenditure of money and preserve judicial resources. *See AT&T*, 2000 U.S. Dist. LEXIS at *15–16 (noting that a stay was appropriate to avoid "a potentially gross waste of judicial resources"). Generally, where no harm will result from a delay in judicial process, a stay should be granted. *United States v. Nutrition Serv., Inc.*, 234 F. Supp. 578, 579 (W.D. Pa 1964).

Nothing suggests that the public interest will be harmed if a stay is imposed here. To the contrary, if a stay pending appeal is not granted, moving forward with

the Science Day would result in a complete waste of judicial resources as an "evidentiary hearing" would be neither necessary nor useful in that a Science Day tutorial is not competent evidence upon which the crime-fraud motion can be based.

## V.   CONCLUSION

For all these reasons, a stay of the Special Discovery Master's Science Day Order should be granted pending appeal. Plaintiffs here have fought long and hard to protect and advance the interests of the class members and are ardently opposed to Defendants effort to erect a smokescreen of "science" to blot out the essential fact that Defendants have repeatedly for nearly 30 years told three material lies to courts and plaintiffs. The Third Circuit and this Court have found that Plaintiffs stated claims for fraud and fraudulent concealment for this conduct are distinct from a claim to reopen the underlying suits. And since then, as we outline above, Plaintiffs have been marshalling evidence to back up those allegations. Yet the order that a Science Day evidentiary hearing occur—with pre-hearing expert reports and live testimony —in less than 10 days deprives Plaintiffs of the very premise the rules of civil procedure promise in Rule 1: that the Rules of Civil Procedure be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding. A hearing on the essence of the case in less than 10 days is not just. A

stay is therefore needed to afford Plaintiffs their right to meaningfully appeal the

Science Day Order to this Court and the Motion should be granted.

Respectfully Submitted,

**COHEN, PLACITELLA & ROTH, P.C.**

/s/ *Christopher M. Placitella*
Christopher M. Placitella, Esq.
(NJ Atty #: 027781981)
Michael Coren, Esq.
(NJ Atty #: 024871979)
Jared M. Placitella, Esq.
(NJ Atty #: 068272013)
Eric S. Pasternack, Esq.
(NJ Atty #: 015132011)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**FOX ROTHSCHILD LLP**

Jeffrey M. Pollock, Esq.
(NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive,
Building 3
Lawrenceville, NJ 08648
(609) 896-7660

***Attorneys for Plaintiffs and the Putative Class***

30