LAW OFFICES

# COHEN, PLACITELLA & ROTH
A PENNSYLVANIA PROFESSIONAL CORPORATION

127 MAPLE AVENUE

RED BANK, NEW JERSEY 07701

(732) 747-9003
FAX (732) 747-9004
www.cprlaw.com

PHILADELPHIA, PA
LEMOYNE, PA
BALA CYNWYD, PA
PITTSBURGH, PA
CHERRY HILL, NJ

CHRISTOPHER M. PLACITELLA
MANAGING NJ ATTORNEY

April 30, 2018

**VIA ECF**
The Honorable Justice Roberto A. Rivera-Soto (ret.)
Special Discovery Master
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1163

RE:   ***Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.***
      **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

Plaintiffs are replying to BASF's opposition (ECF 486) to Plaintiffs' motion to compel documents on BASF's December 23, 2016 Privilege Log. *See* ECF 477. The subject documents were authored by an Engelhard internal R&D department scientist, are described as "regarding talc testing," and withheld because they allegedly "reflect[] a request for legal advice." *See* ECF 477-6 at PRIV001633, PRIV001672, PRIV001786.

We begin by noting Your Honor's observation to BASF's counsel upon receiving the subject documents that "the basis for the privilege assertion does not appear from the face of those documents." 4/25/18 Email from SDM to Quinn. Nor does BASF publicly present any extraneous evidence demonstrating the privilege

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 2

applies. So far as the record stands, BASF fails to demonstrate that the "regarding talc testing" documents were distributed for the sole express purpose of securing legal advice—a necessary showing when asserting communications to and from in-house counsel are privileged. *See* ECF 486 at 3; *see also Kramer v. Raymond Corp.*, Civ. No. 90-5026, 1992 U.S. Dist. LEXIS 7418, at *3–4 (E.D. Pa. May 26, 1992).

Nevertheless, even if portions of the "regarding talc testing" documents were privileged, any underlying facts in the documents are not. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98–99 (D.N.J. 1990). BASF is wrong on the law asserting otherwise. To be sure, BASF cannot avoid its obligation to produce discoverable facts by embedding them in an allegedly privileged communication. Nor can it shield relevant documents and facts by the expedient of copying a lawyer on them.

In short, BASF fails to carry its burden in proving the attorney-client privilege applies, and facts inserted within the "regarding talc testing" documents are indisputably discoverable. Your Honor should therefore compel production of the "regarding talc testing" documents, and any other listed documents authored by Engelhard scientists that concern talc testing. Alternatively, if portions of the

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 3

documents expressly seek or constitute legal advice, BASF should redact such portions as Your Honor directs.

## ARGUMENT

### A. BASF Fails to Prove the Attorney-Client Privilege Applies to the "Regarding Talc Testing" Documents.

As the party asserting attorney-client privilege, BASF bears the burden to show it applies. *La. Mun. Police Emples. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008). For the privilege to apply, BASF must "*clearly demonstrate* that the communication in question was made for *the express purpose of securing legal*, not business, advice." *TransWeb, LLC v. 3M Innovative Props. Co.*, No. 10-4413, 2012 U.S. Dist. LEXIS 97534, at *17 (D.N.J. Apr. 12, 2012) (emphasis added) (internal citations omitted). This demonstration requires BASF to show "that the ['regarding talc testing'] documents would not have been made *but for [a] need for legal advice or services*." *La. Mun. Police Emps. Ret. Sys.*, 253 F.R.D. at 306 (emphasis and alteration added) (internal quotations and citations omitted). BASF must present sufficient facts in order to bring the "regarding talc testing" documents within the narrow confines of the privilege. *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 570 (E.D. Pa. 1989). BASF makes none of these proofs, and in turn, fails to carry its burden.

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 4

BASF concedes the "regarding talc testing" documents are not privileged because in-house counsel was merely cc'd on the communications. ECF 486 at 4. BASF instead asserts the "regarding talc testing" documents (ECF 477-6 at PRIV001633, PRIV001672, PRIV001786) are part of a series of communications Engelhard R&D scientist, Emil Triglia, prepared in order to obtain legal advice about test results that showed chrysotile asbestos in Emtal talc. *See* ECF 486 at 4. This broad application of the privilege, however, contradicts the general principle that the attorney-client privilege must be asserted on a document by document basis. *See In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 163–64 (D.N.J. 2008).

Moreover, even on a document by document basis, BASF offers zero public evidence that Mr. Triglia, a scientist at Engelhard, directed the "regarding talc testing" documents to Mr. Brush to solicit legal advice or service. BASF's own privilege log shows Mr. Triglia distributed the "regarding talc testing" memos to seven other non-attorney employees at Engelhard (*see* ECF 477-6 at PRIV001633, PRIV001672, PRIV001786); this belies BASF's assertion that Mr. Triglia specifically sought legal advice from Mr. Brush. *See Nanticoke Lenni-Lenape Tribal Nation v. Porrino*, No. 15-5645, 2017 U.S. Dist. LEXIS 151410, at *32–33 (D.N.J. Sep. 19, 2017) (declining to extend attorney-client privilege to a

Case 2:11-cv-01754-BRM-AME   Document 496   Filed 04/30/18   Page 5 of 15 PageID: 24374

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 5

memorandum that "was not written by, to or for an attorney seeking legal advice."); *see also In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 120 (E.D. Pa. 2011) (declining to extend attorney-client privilege to an internal memorandum where general counsel was cc'd, when nothing on the document's face, nor in the record, showed the memorandum was a specific request for legal advice).

BASF's legal authority is equally unsupportive. In *In re Niaspan Antitrust Litig.*, the lawyers initiated the first email in the chain by specifically requesting input and information from business executives to assist in the drafting of legal paperwork. No. 13-2460, 2017 U.S. Dist. LEXIS 135753, at *7 (E.D. Pa. Aug. 24, 2017). Here, BASF proffers no evidence that Mr. Brush initiated or otherwise requested from Mr. Triglia any specific analyses of talc or general "asbestos in talc" data, or any Johnson mine study information in order to develop a legal opinion.

Given the time frame of the documents and general subject of the talc testing documents Plaintiffs seek relating to the missing Johnson mine study results testified to by Dr. Hemstock, Mr. Triglia, and Mr. Gale in the *Westfall* case, Plaintiffs note to Your Honor that all the evidence shows that Engelhard's R&D department initiated the talc ore investigation to gain a better understanding of the

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 6

Johnson mine's geological makeup (a general mining business issue) and had nothing to do with legal advice. *See* ECF 477-2 at 80–81, 125–128; ECF 477-3 at 18–19. The mere fact that the results of this Engelhard R&D investigation may have been shared with Mr. Brush or caused some corporate concern does not make the resulting data and findings intrinsically privileged. Dr. Hemstock's and Mr. Triglia's *Westfall* deposition testimony and other public documents show Engelhard initiated and conducted the Johnson mine study, and analyzed the recovered data for mining business reasons and not to provide data for legal advice. *Id*.

      Plaintiffs surmise from Your Honor's comment that BASF's *ex parte* submission is equally devoid of "express request for legal advice" evidence. If such proof did exist, BASF would have listed Mr. Brush as the direct recipient of the subject documents on its December 23, 2016 Privilege Log, or openly submitted versions of the documents redacting only the portion where Mr. Triglia specifically requested legal analysis. *See generally Mine Safety Appliances Co. v. N. River Ins. Co.*, No. 09-00348, 2012 U.S. Dist. LEXIS 198242, at *1 (W.D. Pa. Sep. 8, 2012) (providing allegedly privileged documents in redacted form to the opposing party, and to the court for *in camera* review).

Instead, BASF attempts to compensate for the lack of the required clear evidence on the face of each document by asking Your Honor to review the May 1979 "regarding talc testing" documents and a June 18, 1979 memorandum[1] in context. *See* ECF 486 at 2, 4. BASF proposes that Mr. Brush's June 18, 1979 memorandum supposedly offering legal advice about talc test results creates an attorney-client privilege over the "regarding talc testing" documents created earlier in time.

Applying this framework changes nothing. Indeed, the argument presents no more than the *post hac* fallacy. Taken to its logical conclusion, BASF's theory of privilege would allow a corporation to claim privilege over documents concerning a certain issue, that at the time of distribution did not seek legal advice, because an attorney subsequently rendered a legal opinion on the factual situation that was the subject of the earlier memorandum. This cannot be. The law does not permit the retroactive application of the attorney-client privilege. *See Hudson v. Gen. Dynamics Corp.*, 186 F.R.D. 271, 277 (D. Conn. 1999); *see also In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979) (Because attorney-client

---

[1] BASF disclosed in an April 26, 2018 email from Daniel Bress, Esq. to Your Honor, that the June 18, 1979 memorandum is Exhibit H attached to its *ex parte* submission, and designated as PRIV000315 on BASF's December 23, 2016 Privilege Log (*see* ECF 477-6).

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 8

privilege "obstructs the search for the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with the logic of its principle.") (internal citations and quotations omitted).

     Simply put, whether the attorney-client privilege applies to the "regarding talc testing" documents authored by Engelhard scientists depends on what those documents say when they were created. When assessing the documents, Your Honor should ask: Do the May 2nd or May 14th memos clearly and specifically request Mr. Brush's legal expertise; or, were they written to a group of Engelhard employees that included Mr. Brush, about issues involving business or operational concerns? Are the memos directly addressed to Mr. Brush; or, is he the first recipient listed in the group because of alphabetic or some other protocol of ordering?[2] To be sure, the attorney-client privilege does not apply unless each of Mr. Triglia's May 1979 "regarding talc testing" memos made an express request for legal advice; or, on its face ties in to a directive from Mr. Brush or one of Mr. Triglia's colleagues to provide the information to Mr. Brush for use in rendering a

---

[2]    As noted above, BASF admits that the inclusion of Mr. Brush on the group recipients does not render the document a privileged communication. *See* ECF No. 486 at 4.

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 9

specific request for legal advice or services. BASF failed to present any public evidence of an express request, and Your Honor's comment so far suggests that the *in camera* submission also failed to meet the required standard.

If on the other hand any of the withheld documents relate to the missing Johnson mine study results, what the undisputed record evidence does show is that the Engelhard R&D department conducted the Johnson mine study, not for legal reasons, but for a business purpose—to gain a better understanding of the mine's geological makeup. *See* ECF 477-2 at 80–81, 125–128; ECF 477-3 at 18–19. BASF fails to contradict the undisputed record that is its burden to prove the attorney-client privilege applies to the "regarding talc testing" documents, and these documents should be produced.

### B. Facts Contained Within the "Regarding Talc Testing" Documents Must Be Disclosed

BASF's contention that facts contained in a privileged communication cannot be released is wrong. *See* ECF 486 at 5. Courts in the Third Circuit have held that the attorney-client privilege does not shield production of underlying facts contained in a communication. *See, e.g., Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) ("The client . . . may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 10

statement of such fact into his communication to his attorney.") (citation and quotation omitted); *La. Mun. Police Emples. Ret. Sys.* 253 F.R.D. at 305 ("In all instances, the facts underlying any given communication remain discoverable."). Thus, even if some portions of the "regarding talc testing" documents contain language seeking or delivering legal advice, BASF may redact that language, but must produce any facts contained therein. *See FTC v. Hope Now Modifications, LLC*, No. 09-1204, 2011 U.S. Dist. LEXIS 71921, at *4 (D.N.J. July 5, 2011) (fact material is severable from privileged information and must be produced). Such facts include information concerning general testing for asbestos in Engelhard talc, years of production and specific product grade tested (if testing refers to finished product) Johnson mine testing data, the specific location or sources from which ore samples were obtained (if the testing refers to ore samples), the analysis results as to those samples, and any conclusions that Engelhard scientists may have drawn from those results.

     BASF's assertion that Plaintiffs already possess and can decipher the Johnson mine study data based on a September 19, 1979 correspondence from Georgia Institute of Technology scientist James L. Hubbard to Emil Triglia (ECF No. 486-1) (the "Georgia Tech Letter") BASF previously produced is also unavailing and incorrect. *See* ECF No. 486 at 6–7.

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 11

First, the Georgia Tech Letter cannot be read on its face to identify which sample is which. The letter lists test results done by Georgia Tech (not Engelhard) of 68 samples with code numbers but no further description to identify which samples are which (apparently the Georgia Tech analysts were blinded to the origins of the samples, or whether any were duplicates). The letter shows numerous samples with significant asbestos contamination, but there is no indication on the face of the letter which specific samples pertain to the Johnson mine talc ore study initiated by Engelhard and referenced by Dr. Hemstock, Mr. Triglia, and Mr. Gale in their depositions, as showing the presence of asbestos in the samples, and which pertain to finished products. *See* ECF 477-2 at 24, ECF 477-3 at 18-21; 23-24, ECF 477-5 at 63-65. More so, the Georgia Tech Letter does not indicate for any Johnson mine ore samples where in the Johnson mine any of the samples came from, which is critical information for determining the prevalence and extent of asbestos contamination in the mine. Were the samples taken from active production areas and from which of the six levels of the mine? Were the samples taken from the active ore body or from mine tailings?

In fact, the Georgia Tech Letter is so vague on its face that BASF's own corporate representative, Daniel Steinmetz, testified that:

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 12

(1) He could not tell from looking at the correspondence where the samples were taken from. Ex. A at 644:13-646:5;

(2) He could not tell from looking at the correspondence whether the report refers to test results of the end-product or ore samples from the Johnson mine. *Id*. at 646:7-15; and

(3) If any of the samples referenced in the correspondence came from the Johnson mine, as he is unaware of any other document providing a key to where the samples came from. *Id*. at 647:6-12.

Second, BASF's other produced discovery is insufficient for Plaintiffs to understand the Georgia Tech Letter. None of the letters or reports that BASF attached to its *ex parte* submission, which BASF also produced to Plaintiffs (e.g. BASF's 4/24/18 *Ex Parte* Opp. – Ex. D (4/11/79 Triglia Memo) and Ex. J (5/22/79 Triglia Memo)), explains the Johnson mine's ore study results with the requisite degree of specificity. The documents BASF produced on this issue so far concern the testing of *production*, not *talc ore* samples, and to the extent they bear on the mine ore samples, only state that the Georgia Tech lab would analyze 38 rock samples from production areas of the Johnson mine, without specifying the type of rock or from where the samples were taken.

Third, BASF has not identified any evidentiary basis of record to substantiate that the Georgia Tech Letter contains the same test results as those

BASF continues to withhold wrongly. BASF counsel's representation and offer to stipulate at the April 2, 2018 hearing that the Georgia Tech Letter included the Johnson mine ore sample results is not evidence that goes to the required heart of the matter. Plaintiffs continue to question, and are entitled to know, which results are for the 38 Johnson mine ore samples, and where in the mine those samples came from. In fact, BASF's counsel's representation that the Georgia Tech Letter contains Johnson mine sample tests results conducted by Georgia Tech (*see* ECF No. 486 at 6) raises an additional question: Where are the test results of the analysis conducted by Engelhard itself, as opposed to Georgia Tech, of the mine referenced in the *Westfall* depositions of Dr. Hemstock, Mr. Triglia, and Mr. Gale? *See* ECF 477-2 at 24, ECF 477-3 at 18-21; 23-24, ECF 477-5 at 63-65.

Lastly, BASF's allegations that it already explained the Georgia Tech Letter to Plaintiffs, and that Johnson mine sample test results may also be found in other materials does not make the "regarding talc testing" inherently privileged. In fact, this argument proves the opposite that the information in the documents Plaintiffs seek is not privileged at all.

Without the additional information BASF has refused to produce, the Georgia Tech Letter cannot be fully understood. Indeed, if BASF's corporate representative cannot understand the Georgia Tech Letter, and BASF has provided

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 14

Your Honor a fuller explanation in its *ex parte* submission (*see* ECF No. 486 at 6),

Plaintiffs cannot be expected to understand the letter without the supplemental

facts. Such underlying facts, if embedded in the "regarding talc testing"

documents, are discoverable and should be disclosed

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that Your Honor

compel full production of December 23, 2016 BASF Privilege Log at

PRIV001633, PRIV001672, PRIV001786, and any other listed documents

authored by Engelhard scientists that concern talc testing, or with such redactions

that specifically constitute or request privileged legal advice.

                              Respectfully Submitted,

| **COHEN, PLACITELLA & ROTH, P.C.** | **FOX ROTHSCHILD LLP** |
|---|---|
| /s/ *Christopher M. Placitella* <br> Christopher M. Placitella, Esq. <br> (NJ Atty #: 027781981) <br> Michael Coren, Esq. <br> (NJ Atty #: 024871979) <br> Jared M. Placitella, Esq. <br> (NJ Atty #: 068272013) <br> Eric S. Pasternack, Esq. <br> (NJ Atty #: 015132011) <br> 127 Maple Avenue <br> Red Bank, NJ 07701 <br> (732) 747-9003 | Jeffrey M. Pollock, Esq. <br> (NJ Atty #: 015751987) <br> Princeton Pike Corp. Center <br> 997 Lennox Drive, <br> Building 3 <br> Lawrenceville, NJ 08648 <br> (609) 896-7660 |

Justice Robert A. Rivera-Soto (ret.)
April 30, 2018
Page 15

*Attorneys for Plaintiffs and the Putative Class*

cc:     All Counsel of Record (via ECF)