Ex. A

Page 537

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION:  MIDDLESEX COUNTY

DOCKET NO. MID-L-5384-11 AS

AUDREY SAMPSON,                    :
individually and as Executrix     :
of the Estate of JOHN SAMPSON     :

        Plaintiff,                :

       vs.                           :

3M COMPANY, f/k/a                  :
Minnesota Mining &                 :
Manufacturing Company, et al.,     :

        Defendants.               :


Washington, D.C.

Wednesday, August 2, 2017

Videotaped deposition of DANIEL STEINMETZ

10:02 A.M.

VOLUME III



Page 538

1   DEPOSITION OF DANIEL STEINMETZ
2        Held at
3        Kirkland & Ellis
4        655 - 15th Street, N.W.
5        Third Floor
6        Washington, D.C.  20005
7
8            Pursuant to notice, before Carol J.
9   Robinson, Registered Professional Reporter and Notary
10  Public in and for the District of Columbia.
11
12
13
14
15
16
17
18
19
20
21
22

Page 539

1        A P P E A R A N C E S
2   ON BEHALF OF THE PLAINTIFF:
3   COHEN, PLACITELLA & ROTH
    BY:  CHRISTOPHER M. PLACITELLA, ESQ.
4   MICHAEL COREN, ESQ.
    127 Maple Avenue
5   Red Bank, NJ 07701
    888-394-0962
6
    ON BEHALF OF Defendants BASF CATALYSTS LLC AND
7   SITA REALTY F/K/A EASTERN MAGNESIUM:
8   KIRKLAND & ELLIS
    BY:  PETER A. FARRELL, ESQ.
9   TIA T. TROUT-PEREZ, ESQ.
    ELIZABETH DALMUT, ESQ.
10  peter.farrell@kirkland.com
    ttrout-perez@kirkland.com
11  elizabeth.dalmut@kirkland.com
    202-879-5959
12
    ON BEHALF OF DEFENDANT UNION CARBIDE and
13  CERTAINTEED CORP.:
14  CARUSO SMITH EDELL PICINI, P.C.
    BY:  ALEXANDRA CARUSO, ESQ.  (by telephone)
15  60 Route 46 East
    Fairfield, NJ 07004
16  973-667-6000
17  ON BEHALF OF WHITTAKER, CLARK & DANIELS, INC.:
18  HOAGLAND, ONGO, MORAN, DUNST & DOUKAS, LLP
    BY:  JAMES R. GOODLOE, II, ESQ. (by telephone)
19  40 Paterson Street - P.O. Box 480
    New Brunswick, NJ 08903
20  732-545-4717
    jgoodloe@hoaglandlongo.com
21
22

Page 540

1        A P P E A R A N C E S (continued)
2   ON BEHALF OF DEFENDANT E.A. DUPONT DE NEMOURS AND
3   CO.:
4   PORZIO, BROMBERG & NEWMAN, P.C.
    BY:  DIANE AVERELL, ESQ.  (by telephone)
5   100 Southgate Parkway
    Morristown, NJ 07962
6   Dfaverell@pbnlaw.com
    973-889-34150
7
8   ON BEHALF OF DEFENDANT SOUTHERN TALC:
9   REILLY JANICZEK & MCDEVITT
    BY:  JAMES ANDRIS, ESQ.  (by telephone)
10  2500 McClellan Boulevard
    Suite 240
11  Merchantville, NJ 08109
    856-317-7180
12  jandris@rjm-law.com.
13  ON BEHALF OF DEFENDANT DAP, INC.:
14  MCGIVNEY & KLUGER, P.C.
    BY:  STEPHEN DENARO, ESQ. (by telephone)
15  23 Vreeland Road, Suite 220
    Florham Park, NJ 07932
16  973-822-1110
    sdenaro@mklaw.us.com
17
18  ON BEHALF OF DEFENDANT BENJAMIN MOORE:
19  MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
    BY:  JOSEPH D. RASNEK, ESQ. (by telephone)
20  1300 Mt. Kemble Avenue
    Morristown, New Jersey 07962-2075
21  jrasnek@mdmc-law.com
    973-425-8774
22

Page 541

1        A P P E A R A N C E S (continued)
2   ON BEHALF OF DEFENDANT VANDERBILT MINERALS, LLC
3   O'TOOLE SCRIVO FERNANDEZ WEINER VAN LIEU, LLC
    BY:  ELIAS ARROYO, ESQ. (by telephone)
4   14 Village Park Road
    Cedar Grove, NJ 07009
5   973-239-54700
    Earroyo@oslaw.com
6
7
8
9   Also Present:  Ray Moore - Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22



C O N T E N T S

EXAMINATION OF DANIEL STEINMETZ         PAGE

By Mr. Placitella                    546

E X H I B I T S   M A R K E D

(Attached)

Number       Description                PAGE

Exhibit 32    Physical testing laboratory     554
               use form dated August 14, 1972

Exhibit 33    Analytical laboratory use form   554
               dated June 7, 1971

Exhibit 34    Physical testing laboratory use  555
               form dated April 2, 1973

Exhibit 35    Letter dated May 17, 1989 from   587
               Ira J. Dembrow at Cahill Gordon
               & Reindel to Jeffrey C.
               Schwarts, Esq., Bates stamped
               BASF FC 0010055-57

E X H I B I T S   M A R K E D (continued)

(Attached)

Number       Description                PAGE

Exhibit 36A-B   Pair of rock samples taken     673
               from the Johnson mine of
               EMTAL  42 and EMTAL 500,
               submitted to McCrone from
               Engelhard in 1973

Exhibit 37A-C   Three talc rock samples        674
               obtained from Ed Lomas at
               Johnson mine in the late
               '70s and early '80s

Exhibit 37D-F   Three powder samples           674
               currently under the custody
               of Micky Gunter

Exhibit 38     Talc rock sample obtained by    681
               Micky Gunter from Leslie
               White

Exhibit 39     Talc rock sample reportedly     686
               taken from the Johnson mine
               obtained by Micky Gunter
               from University of Vermont

E X H I B I T S   M A R K E D (continued)

(Attached)

Number       Description                PAGE

Exhibit 40    Declaration of Edward Lomas     692
               dated April 4, 2013

Exhibit 41    Transcript of videotape         692
               deposition of William Grassley
               taken on June 17, 2014

Exhibit 42    Document entitled Stipulation   692
               and Order of Confidentiality,
               Bates stamped
               BASF_SAMPSON000025203-2509

Exhibit 43    Document entitled Summary of    776
               Activities Related to Services
               Rendered for Decof & Grimm in
               the Case of David H. Westfall
               vs. Whittaker, Clark & Daniels,
               et al.

Exhibit 44    Letter dated August 10, 2010    782
               from Robert J. Kelly to
               Christopher Placitella

P-R-O-C-E-E-D-I-N-G-S

THE VIDEOGRAPHER:  We are now on the record.  This begins DVD Number 1 in the deposition of Daniel Steinmetz in the matter of Audrey Sampson vs. 3M Company, et al., in the Superior Court of New Jersey, Middlesex County, Law Division, Docket Number MID-L-5384-11AS.

Today is August 2, 2017, and the time is 10:02 a.m.

This deposition is being taken at 655 15th Street Northwest, Washington, D.C., at the request of Cohen Placitella and Roth.

The videographer is Ray Moore of Magna Legal Services, and the court reporter is Carol Robinson of Magna Legal Services.

Counsel will be noted on the stenographic record.  Will the court reporter please swear in the witness.

DANIEL STEINMETZ

called as a witness, having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:



Page 546

```
1           EXAMINATION
2   BY MR. PLACITELLA:
3       Q.   Good morning, Mr. Steinmetz.  How are
4   you?
5       A.   I'm fine, thank you.
6       Q.   We are here hopefully to conclude your
7   deposition today.
8       A.   Yes.
9       Q.   Do you have P-13?  It should be under --
10  I had it on top before.
11      A.   Yes.
12          MR. FARRELL:  Which one is that, Chris?
13  BY MR. PLACITELLA:
14      Q.   P-13 is the court order.  Is that
15  correct?
16      A.   Yes.
17      Q.   Mr. Steinmetz, as a representative of
18  BASF on the issues identified in the court order,
19  what is your understanding of your duties and
20  obligations of preparing to testify on behalf of
21  BASF?
22          MR. FARRELL:  Objection to form.
```

Page 547

```
1           THE WITNESS:  My understanding is that I
2   am the person most knowledgable representing BASF
3   regarding the issues outlined in that order.
4   BY MR. PLACITELLA:
5       Q.   My question is:  What is your
6   understanding of what your obligations are in order
7   to prepare to give the testimony pursuant to the
8   Court's order?
9           MR. FARRELL:  Objection to form.
10          THE WITNESS:  My understanding is I
11  should be prepared to answer questions that you have
12  regarding those issues.
13  BY MR. PLACITELLA:
14      Q.   And what specific preparation did you
15  undertake in order to respond fully to the Court's
16  order?
17          MR. FARRELL:  Objection to form.
18          THE WITNESS:  Well, before the first set
19  of depositions, I met with counsel for a couple of
20  days, spent several hours reading prior testimony
21  from other depositions of other people, learning
22  about the methods of searching for information that
```

Page 548

```
1   have been done over the last few years with regards
2   to Engelhard, old Engelhard documents.  I learned
3   about the samples that we have and the chain of
4   custody for those samples; and then, just in general,
5   other information regarding all of the documents that
6   are in the boxes in the back.
7   BY MR. PLACITELLA:
8       Q.   Am I correct that all of the information
9   concerning the source and selection of the documents
10  that have been produced here today came from the
11  lawyers of BASF?
12          MR. FARRELL:  Objection to form,
13  foundation.
14          THE WITNESS:  By "came from," you mean
15  the ones that I've looked at?
16  BY MR. PLACITELLA:
17      Q.   Yes.
18      A.   Yes.
19      Q.   You did not do any independent searches
20  on your own.  Correct?
21          MR. FARRELL:  Objection to form.
22          THE WITNESS:  That's correct.  I -- I
```

Page 549

```
1   watched searches done as examples, so I knew how they
2   were done, but I didn't do them myself.
3   BY MR. PLACITELLA:
4       Q.   But the selection of documents was done
5   exclusively by BASF's counsel or people working for
6   them.  Correct?
7       A.   Yes.
8           MR. FARRELL:  Objection to form.
9   BY MR. PLACITELLA:
10      Q.   And any information that you're providing
11  concerning the source of the documents that have been
12  selected came directly from BASF's lawyers.  Correct?
13          MR. FARRELL:  Objection to form.
14          THE WITNESS:  Yes.  The information came
15  from them, but a lot of it I -- I looked at on my own
16  and independently I made sure I was comfortable with.
17  BY MR. PLACITELLA:
18      Q.   Did you ask whether the Cahill lawyers
19  had any information on the existence, fate, or last
20  known whereabouts of any of the documents that had
21  been asked to be produced in this deposition?
22      A.   I'm sorry.  Could you repeat that?
```



Page 550

1    Q.   Sure.  Did you ask whether the Cahill
2  Gordon lawyers had any information on the source of
3  the information that's been produced for this
4  deposition?
5        MR. FARRELL:  Objection to form.
6        THE WITNESS:  I'm not sure if I asked
7  that specifically, but we did discuss Cahill Gordon
8  and the source of a lot of the documents that are in
9  the back, having come from Cahill Gordon.
10 BY MR. PLACITELLA:
11   Q.   Did you ask whether there were any
12 current or former Engelhard employees or BASF
13 employees who have any information on the existence,
14 fate, or last known whereabouts of any of the
15 documents you've been asked about in this deposition?
16   A.   I'm not sure if I asked specifically, but
17 we did discuss the fact that several former employees
18 were spoken to regarding this case.
19   Q.   But you never did that yourself?
20   A.   No, I did not.
21   Q.   Were you provided access to those people?
22        MR. FARRELL:  Objection to form.

Page 551

1        THE WITNESS:  If I had wanted it, I
2  probably could have had access to those that are
3  still available.
4  BY MR. PLACITELLA:
5    Q.   Okay.  Now, the last time we were here,
6  we talked about -- and I just want to clarify -- the
7  physical -- the Box No. Exhibit 5, which is the box
8  of physical testing documents.
9    A.   Yes.
10   Q.   And in that box, we identified a single
11 document relating to the testing of EMTAL talc for
12 asbestos.  Do you recall that?
13        MR. FARRELL:  Objection to form.
14        THE WITNESS:  I do.
15 BY MR. PLACITELLA:
16   Q.   Since that time, have you identified any
17 other documents in Exhibit 5 relating to the testing
18 of EMTAL talc for asbestos?
19   A.   Yes.  I think at the -- at the last
20 deposition I mentioned there were more than just that
21 one, that there were at least a couple of others.
22 And we -- I have identified those.  There are two

Page 552

1  additional ones.
2    Q.   So, do you have all -- all of them with
3  you?
4    A.   Yes, I do.
5  BY MR. PLACITELLA:
6    Q.   Okay, thank you.
7        Can -- can I -- do you have copies of
8  them?
9    A.   Yes.
10       MR. FARRELL:  We do have a copy.
11       What orders do you have yours in, Dan?
12       THE WITNESS:  The first exhibit I have is
13 Exhibit P-17, which is the one we talked about last
14 time.
15       MR. FARRELL:  Here you go,
16 Mr. Placitella.
17       MR. PLACITELLA:  So, why don't we mark
18 them --
19       MR. FARRELL:  I'm sorry, Chris.  Did I
20 give you three -- I don't know if I gave you two
21 copies of one or I gave you all three.
22       MR. PLACITELLA:  They look to be

Page 553

1  different.
2        MR. FARRELL:  Okay.
3        THE WITNESS:  The first one is -- was
4  P-17 from the last deposition.
5        MR. PLACITELLA:  Okay.  So, let's just
6  mark the next two, and then I'll look at them over a
7  break so we don't waste a lot of time.
8        What's the `next exhibit number do you
9  have?
10       THE REPORTER:  32.
11       MR. PLACITELLA:  So, can we mark the next
12 two exhibits 32 and 33?
13       MR. FARRELL:  Just so the record is
14 clear, you will see there are paper clips on there.
15 These are collections of documents, not individual
16 documents.
17       MR. PLACITELLA:  Okay.
18       MR. FARRELL:  One came from -- for each
19 of those packets, it's the document from the box and
20 then one or two other documents that Mr. Steinmetz
21 took note of.
22

**MAGNA**
LEGAL SERVICES

Page 554

1       (Plaintiff's Exhibit No. 32,
2       physical testing laboratory use
3       form dated August 14, 1972, was
4       marked for identification.)
5       (Plaintiff's Exhibit No. 33,
6       analytical laboratory use form
7       dated June 7, 1971, was
8       marked for identification.)
9           MR. FARRELL:  Also your -- just so you
10  know, Mr. Placitella, your call on how you want to
11  mark these.  The one document that was P-17,
12  Mr. Steinmetz now has a packet with that one
13  document.  So, I don't know if you want to mark this
14  as --
15          MR. PLACITELLA:  Why don't we just mark
16  it --
17          MR. FARRELL:  -- with whatever you are up
18  to.
19          MR. PLACITELLA:  Why don't we just mark
20  it 34.
21          MR. FARRELL:  Sure.
22          MR. PLACITELLA:  That makes more sense.

Page 555

1           MR. FARRELL:  So, so the record is clear,
2   the first page of what is going to be 34 should be
3   the same as P-17.  It just has -- 34 has some
4   additional documents paper-clipped to it.
5       (Plaintiff's Exhibit No. 34,
6       physical testing laboratory use
7       form dated April 2, 1973, was
8       marked for identification.)
9   BY MR. PLACITELLA:
10      Q.   You have in front of you Exhibits 32, 33,
11  and 34.  Correct?
12      A.   Yes.
13      Q.   Can you just describe them generally for
14  the record.
15      A.   Exhibit P-32 is a physical testing
16  laboratory use form dated August 14, 1972.
17          Exhibit P-33 is also an analytical
18  laboratory use form dated June 7, 1971.
19          And then P-34 is another physical testing
20  laboratory use form dated April 2, 1973.
21      Q.   And all of the pages of the documents of
22  P-32, 33, and 34 came from the box P-5?

Page 556

1           MR. FARRELL:  Objection to form.
2           THE WITNESS:  Only the first page of
3   each.
4   BY MR. PLACITELLA:
5       Q.   Okay.  So, the first page of 32, 33, and
6   34 came from P-5?
7       A.   That's correct.
8       Q.   Okay.  And they were the original
9   documents you received from where?  What source?
10      A.   These documents were recovered from a box
11  at Iron Mountain.  So, they were originally acquired
12  by BASF when Engelhard was acquired in 2006.
13      Q.   And the other documents you have attached
14  to 32, 33, and 34, where are they from?
15      A.   In Exhibit 32, there is an attached TSR
16  from Dankwerth to Hemstock dated August 1, 1972.  And
17  this was one of the Hemstock exhibits from the 1983
18  Hemstock deposition.
19          And then also attached to P-32 is page 14
20  from Laboratory Notebook No. 2333.
21      Q.   Okay.
22      A.   And P-33, again, that's the laboratory

Page 557

1   use form dated 6-7-71, and attached to that is a
2   customer report dated July 8, 1971, which was part of
3   the compilation put together by Cahill in 1982, and
4   that was Tab 1 of that compilation.
5           And then also attached to P-32 is page 19
6   from Notebook No. 2139.
7       Q.   Okay.
8       A.   And P-34, again, that's the laboratory
9   testing use form from April 2, 1973, and attached to
10  that is a TSR from Schafer to Triglia dated
11  February 28, 1973.  This was also one of the Hemstock
12  exhibits.
13          And then page 14 from Notebook 3057,
14  page 17 from Notebook 3104, and page 47 from Notebook
15  3014.  And those are all the original notebooks that
16  we found at Iron Mountain.
17      Q.   So, I'll take a look at that over a
18  break, over lunch, and see if I have any other
19  questions rather than take the time now.
20          Remember, last time we talked a little
21  bit about Mr. Oulton's files.  Do you recall that?
22      A.   Yes.

MAGNA
LEGAL SERVICES

Page 558

1    Q.   Okay.  Do you know whether Mr. Oulton's
2  files concerning the testing of EMTAL talc were in
3  existence and in possession, in custody and control
4  of Engelhard during the Westfall case?
5        MR. FARRELL:  Objection to form.  Vague
6  as to which documents.
7        THE WITNESS:  Well, as I mentioned, I
8  think, previously, we don't know what happened to
9  Oulton's files because he retired in 1977.  They have
10 been broken up, he may have cleaned them out, he may
11 have thrown some things away.  We just don't know.
12       What we do know is that we have a lot of
13 documents on which Oulton is either a recipient, a
14 copied recipient, or an author.  And those would have
15 been available during the Westfall case.
16 BY MR. PLACITELLA:
17    Q.   But in terms of Oulton's file, that was
18 identified last time we were here.  Do you know
19 whether that was available to Engelhard during the
20 Westfall case?
21       MR. FARRELL:  Objection to form and
22 foundation.

Page 559

1        THE WITNESS:  Yes.  I believe you are
2  referring to the file TDO.  And as I mentioned
3  before, we really don't even know what was in there,
4  who put it together, whether there was one sheet of
5  paper in there or whether there were a hundred sheets
6  of paper, and we don't even know if that file was in
7  existence in 1983.
8        Again, we do know that we have a lot of
9  information from Oulton.  We just don't know if it
10 came from that -- a specific file called TDO file.
11 BY MR. PLACITELLA:
12    Q.   So, the answer to my question is:  Do you
13 know whether the TDO file was in possession of
14 Engelhard during the Westfall case, the answer is you
15 don't know?
16       MR. FARRELL:  Objection to form,
17 foundation, misstates his testimony.
18       THE WITNESS:  As I mentioned, we don't
19 know whether that file was available.  We don't know
20 whether it existed at the time, but we do know that
21 we have a lot of the information from Oulton.
22

Page 560

1  BY MR. PLACITELLA:
2    Q.   What is the TDO file, to your knowledge?
3        MR. FARRELL:  Objection to form.
4        THE WITNESS:  The only reference I've
5  seen to the TDO file is a reference on one of the
6  exhibits that we've spoken about previously.  And in
7  handwriting, it says, I believe, "Look at the TDO
8  file."  That's all I know about it.
9  BY MR. PLACITELLA:
10    Q.   So, you don't know what it is.
11    A.   That's correct.
12    Q.   And you don't know what was in it.
13       MR. FARRELL:  Objection to form.
14       THE WITNESS:  That's correct.
15 BY MR. PLACITELLA:
16    Q.   Do you know whether the TDO file was in
17 existence when the March 7, 1984, memo from Hemstock
18 was sent?
19       MR. FARRELL:  Objection to form,
20 foundation, vague.
21       THE WITNESS:  No.  I guess it would be --
22 my answer would be the same as it was before.  We

Page 561

1  don't know whether -- first, we don't know what was
2  in the file, we don't know how it existed, but we do
3  know that we have all kinds of documents with
4  Oulton's name on them.
5    Q.   Do you have any testimony that the source
6  of information concerning the documents that have
7  been produced came from BASF's lawyers, what -- did
8  you ask since the last meeting, the last deposition,
9  whether BASF's lawyers have any idea what happened to
10 the Oulton file?
11       MR. FARRELL:  Objection to form,
12 foundation.
13       THE WITNESS:  I didn't ask that
14 specifically.
15 BY MR. PLACITELLA:
16    Q.   Do you think, in terms of your obligation
17 to respond to the Court's order, that would have been
18 a good idea?
19       MR. FARRELL:  Objection to form,
20 foundation, argumentative.
21       THE WITNESS:  No.  I think I prepared
22 well for this.  I -- I don't think that would have



Page 562

1  made a difference.
2  BY MR. PLACITELLA:
3      Q.   If the lawyers had that information,
4  don't you think it would be helpful to you?
5          MR. FARRELL:  Objection to form,
6  foundation.
7          THE WITNESS:  It would only be helpful
8  insofar as I could have answered your last question.
9  But as I've mentioned many times, we have so much
10  information from Oulton, I don't think it matters
11  what file it came from.  We just know that we have
12  it.
13  BY MR. PLACITELLA:
14      Q.   That's your opinion.  Right, sir?
15          MR. FARRELL:  Objection, argumentative.
16          THE WITNESS:  That's based on what I've
17  known and learned from preparing.
18  BY MR. PLACITELLA:
19      Q.   Do you know whether Cahill Gordon was
20  asked if they have a copy of the Oulton file?
21      A.   I don't know if they were asked
22  specifically.  I do know that every file that Cahill

Page 563

1  had was individually searched.
2      Q.   For the Oulton file?
3      A.   For anything related to EMTAL talc.
4      Q.   Now, I don't know which number it is,
5  your folder addressing the documents used at the
6  Westfall deposition of Triglia.  It is 20 or 21.  Do
7  you know which one?
8      A.   I have 20.
9      Q.   20.  Okay.
10          The source of this is what?
11          MR. FARRELL:  Objection to form, vague.
12  BY MR. PLACITELLA:
13      Q.   The source of this exhibit is what?
14      A.   The source of --
15          MR. FARRELL:  Same objection.
16          THE WITNESS:  The source of this exhibit
17  was counsel who put together this information for my
18  use.
19  BY MR. PLACITELLA:
20      Q.   Okay.  I'm looking -- I put it here under
21  the Elmo.  This is the -- you have in front of you
22  the transcript of Mr. Triglia?

Page 564

1      A.   Yes.
2      Q.   The same thing?
3      A.   Yes.
4      Q.   All right.  Is that complete, to your
5  knowledge?
6          MR. FARRELL:  Objection to form.
7          THE WITNESS:  This may have been the one
8  where there may be one page that is missing.  I'm not
9  sure.  I'd have to look at each page.  But other than
10  that, yes.  Page 37 wasn't in here, but otherwise
11  it's complete, yes.
12  BY MR. PLACITELLA:
13      Q.   In terms of assessing what went on at the
14  Triglia deposition, do you think it would be
15  important to have all of the pages of the transcript
16  available to you?
17          MR. FARRELL:  Objection to form,
18  foundation, calls for speculation.
19          THE WITNESS:  Again, I have no reason
20  to -- I think this may have been a mistake.  Maybe it
21  was misnumbered, but if we had page 37, we might have
22  a little bit more information.  But I think, even if

Page 565

1  one page were missing, having all but one page of 117
2  gives me a good idea of the general direction of that
3  deposition.
4  BY MR. PLACITELLA:
5      Q.   How many missing pages would start to
6  create concern for you?
7          MR. FARRELL:  Objection to form, calls
8  for speculation.
9          THE WITNESS:  I have no idea.  That's
10  hypothetical.
11  BY MR. PLACITELLA:
12      Q.   Two, three, four, five, six, seven?
13          MR. FARRELL:  Same objection.
14          THE WITNESS:  I don't know.
15  BY MR. PLACITELLA:
16      Q.   Okay.  Can you go to page 15 -- 14,
17  rather, of the transcript?
18      A.   Okay.
19      Q.   That's -- I have a Bates number 33355.
20  Is that correct?
21      A.   Yes.
22      Q.   The last question on that says, "After

MAGNA ▶
LEGAL SERVICES

Page 566

1    you concluded that talc probably wouldn't be --
2    wouldn't profitably be used for cosmetic purposes,
3    what purposes did the company decide it would try to
4    sell the talc for?"
5            Do you see that?
6        A.   Yes.
7        Q.   And before that, on page 13, do you see
8    generally they talk about the testing of talc?
9        A.   If I can take a couple of minutes just to
10   read through it.
11       Q.   Yes.
12           (Witness reading through the document.)
13       A.   Okay, I read that.  Yes.
14       Q.   It talks generally, on page 13 and into
15   14, about the testing of EMTAL talc.  Correct?
16           MR. FARRELL:  Objection to form.
17           THE WITNESS:  Yes.  It discusses some of
18   the methodologies that they had available to them.
19   BY MR. PLACITELLA:
20       Q.   Can you tell me -- and then we talked
21   about the bottom of 14, where it talks about the talc
22   not being good for cosmetic purposes.  Do you see

Page 567

1    that?
2        A.   Yes.
3        Q.   Can you tell me what's -- what
4    information is disclosed on page 15 of the
5    deposition?
6        A.   Okay.  Page 15 is not in here, and I
7    don't know if that's because the copy you have or --
8        Q.   This is the copy you gave me.
9        A.   Yes.
10       Q.   Okay.  Can you tell me what's disclosed
11   about the testing of EMTAL talc on page 16 of the
12   deposition?
13       A.   No.  Pages 15 through 20 are not in this
14   copy.
15       Q.   Can you tell me what's disclosed on
16   the -- page 17 of the deposition?
17           MR. FARRELL:  Objection.
18           THE WITNESS:  No.
19   BY MR. PLACITELLA:
20       Q.   Do you have any concerns that you might
21   be missing some information?
22           MR. FARRELL:  Objection, argumentative.

Page 568

1            THE WITNESS:  As I mentioned before --
2    no, I'm not.  Like I said, I think I've read the
3    totality of this, and I'm comfortable with what he
4    testified.
5    BY MR. PLACITELLA:
6        Q.   Can you tell me what was testified to
7    about on page 19 of the deposition?
8            MR. FARRELL:  Objection.  Harassing the
9    witness.
10           THE WITNESS:  No.  As I mentioned, pages
11   15 through 20 are not in here.
12   BY MR. PLACITELLA:
13       Q.   And you didn't know that before today in
14   preparation for your deposition?
15           MR. FARRELL:  Objection to form,
16   foundation.
17           THE WITNESS:  I didn't notice that
18   before.
19   BY MR. PLACITELLA:
20       Q.   Now, let's go to page 36.
21           Do you see page 36, line 7, when it talks
22   about the TSR by the research department, do you see

Page 569

1    that?
2        A.   Yes.
3        Q.   And it says, "We -- well, we ran all the
4    tests that we were asked to run, comparative x-ray,
5    diffraction, examination of comparative x-ray,
6    fluorescence analysis, mineralogic microscopic exams,
7    and applicable techniques, including thin-section
8    study and the preparation of photographic evidence to
9    substantiate any mineralogical observations with
10   respect to texture, minerals present, et cetera."
11           Do you see that?
12       A.   Yes.
13       Q.   Then it goes on to say, "That's what we
14   did.  We had a geologist in our employ at the time,
15   Karen Newger, who was a very good microscopist.  She
16   did the microscopic work.
17           We also sent some of the samples to
18   another mineralogist, Dr. Farwell.  He was up in
19   Connecticut.  And their results, you know, agreed
20   more or less, you know, in the general categories.
21   Their report on actinolite kind of flip-flopped.  One
22   said trace and one said there was slight trace.

MAGNA ▶
LEGAL SERVICES

Page 570

1    There was never any significant amounts found, just
2    traces of that particle, that mineral."
3        Do you see that.
4        A.    Yes.
5        Q.    What was the rest of his answer?
6        MR. FARRELL:  Objection to form,
7    foundation.
8        THE WITNESS:  I don't know if there was
9    any rest of it.  It sounds like he's completing the
10   thought that -- at this point.  There is no page 37,
11   as I mentioned earlier.
12   BY MR. PLACITELLA:
13       Q.    Well, they're talking about the testing
14   of talc and the documentation of the testing.  What
15   was on page 37?
16       MR. FARRELL:  Objection to form.
17       THE WITNESS:  I'm not sure there was
18   anything on 37.  Like I said, that wasn't in this
19   copy.  But he finishing the thought by saying there
20   were never any significant amounts found, answering
21   as to that question.
22

Page 571

1    BY MR. PLACITELLA:
2        Q.    Do you see where it is underlined,
3    "photographic evidence"?
4        A.    Yes.
5        Q.    Who underlined that?
6        A.    I don't know.
7        Q.    Where is that photographic evidence?
8        MR. FARRELL:  Objection to form and
9    foundation.
10       THE WITNESS:  I don't know.
11   BY MR. PLACITELLA:
12       Q.    Do you see where it says that work was
13   done by Karen Newger?  Do you see that?
14       A.    Yes.
15       Q.    Do you have the results of her test?
16       MR. FARRELL:  Objection to form and
17   foundation.
18       THE WITNESS:  We have a lot of
19   information that was related to Karen Newger.  I
20   suspect, if I went through all of the -- all the
21   documents in P-15, I could find work that she had
22   done and probably relate it back to this.

Page 572

1        Likewise with that photographic evidence,
2    it is probably related to a lot of the other
3    documents that we have in P-15.
4    BY MR. PLACITELLA:
5        Q.    Oh, so, you have the photographic
6    evidence in P-15?
7        A.    I didn't say we have the photographic
8    evidence.  I said we could probably relate this back
9    to the -- to the documents that are in here where
10   they discuss the photographic evidence.
11       Q.    Somebody thought it was important enough
12   that they underlined it in the transcript.  Correct?
13       MR. FARRELL:  Objection to form,
14   foundation, calls for speculation.
15       THE WITNESS:  I don't know why anybody
16   underlined it.  I don't know even who underlined it.
17   BY MR. PLACITELLA:
18       Q.    Well, it certainly wasn't you.  Correct?
19       A.    Correct.
20       Q.    That's how it was given to you.
21       A.    That's how this booklet was, yes.
22       Q.    And it talks about microscopic work that

Page 573

1    was done by Dr. Farwell in Connecticut and finding
2    actinolite.  Do you see that?
3        A.    Yes.
4        Q.    Do you have Dr. Farwell's results?
5        MR. FARRELL:  Objection to form and
6    foundation.
7        THE WITNESS:  No.  We discussed this, I
8    think, last time.  This was mentioned in some of the
9    exhibits, and we haven't found that.
10   BY MR. PLACITELLA:
11       Q.    So, you don't know what he found
12   specifically?
13       MR. FARRELL:  Objection to form,
14   foundation.
15       THE WITNESS:  I don't know what he found
16   specifically.
17   BY MR. PLACITELLA:
18       Q.    And if what he found specifically was on
19   page 37, we will never know that?
20       MR. FARRELL:  Objection to form,
21   foundation, calls for speculation.
22       THE WITNESS:  As I mentioned, it sounds

MAGNA
LEGAL SERVICES

Page 574

1  to me, just reading this, it looks like he finished
2  his thought and answer by saying there was never any
3  significant amount found.
4      And so, I guess Dr. Farwell didn't find
5  any, since that was his general conclusion at the end
6  of his answer.
7  BY MR. PLACITELLA:
8      Q.  Actually, it doesn't say that.  It says,
9  "never any significant amounts found."  We don't know
10 how much was found because we don't have his test
11 results.  Right?
12     MR. FARRELL:  Objection to form,
13 foundation, assumes facts.
14     THE WITNESS:  I'm not sure that his
15 results exist anywhere anymore, though.
16 BY MR. PLACITELLA:
17     Q.  But they certainly must have existed when
18 this deposition was taken.
19     A.  I don't know if they existed when it was
20 taken.  He knew about them at this time, but I don't
21 know if they actually existed at that point.
22     Q.  Is he still alive?

Page 575

1      A.  I don't know.
2      MR. FARRELL:  Objection to form.
3  BY MR. PLACITELLA:
4      Q.  Did anybody try to call him and find out
5  whether he had any of this information?
6      MR. FARRELL:  Objection to form and
7  foundation.
8      THE WITNESS:  I don't know.  I didn't.
9  Counsel may have.  I don't know.
10 BY MR. PLACITELLA:
11     Q.  When you read his deposition, did you ask
12 questions about what happened to the test results
13 done by Dr. Farwell, preparing for today's
14 deposition?
15     MR. FARRELL:  Objection to form.
16     THE WITNESS:  We discussed those as part
17 of the general discussion of some of the exhibits,
18 but I didn't ask that specifically.
19 BY MR. PLACITELLA:
20     Q.  As we sit here today, whatever
21 Dr. Farwell found in his report is missing.
22     MR. FARRELL:  Objection to form,

Page 576

1  foundation, assumes facts, misstates the record.
2      THE WITNESS:  We haven't found it.  We
3  don't have it.  It may be missing.  It may not have
4  existed in 1983 when this deposition was taken.  We
5  don't know.
6  BY MR. PLACITELLA:
7      Q.  Well, certainly, the lawyers at Cahill
8  Gordon would know.  Right?  They were at the
9  deposition.
10     MR. FARRELL:  Objection to form and
11 foundation.
12     THE WITNESS:  I don't know what they
13 knew.
14 BY MR. PLACITELLA:
15     Q.  Did anybody ask them?
16     MR. FARRELL:  Same objections.
17     THE WITNESS:  I didn't.
18 BY MR. PLACITELLA:
19     Q.  Why not?
20     A.  Because I don't think it's significant.
21     Q.  The fact that somebody found actinolite
22 in the EMTAL talc is not significant to you?

Page 577

1      MR. FARRELL:  Objection to form,
2  foundation, assumes facts, misstates the record.
3      THE WITNESS:  No, I don't think it's
4  significant based in the -- in the context of this
5  statement because, as we saw in the answer here, he
6  concluded that there was never any significant amount
7  found.
8  BY MR. PLACITELLA:
9      Q.  But we don't know what "significant"
10 means, do we, without actually seeing the report?
11     MR. FARRELL:  Objection to form and
12 foundation.
13     THE WITNESS:  Significant, to me, means
14 significant whether it's in the report or not.
15 BY MR. PLACITELLA:
16     Q.  How much asbestos is significant in EMTAL
17 talc from your perspective?
18     MR. FARRELL:  Objection to form,
19 foundation, assumes facts, misstates the record.
20     THE WITNESS:  I'm -- I'm not an expert.
21 I can only rely on what other people thought at the
22 time or what people -- what experts think now.  I

Page 578

1  don't know what "significant" is because I'm not an
2  expert in that.
3  BY MR. PLACITELLA:
4      Q.   Okay.  So -- and the first time you found
5  out that there are now at least seven pages missing
6  from his transcript as we sit here today; correct?
7          MR. FARRELL:  Objection to form.
8          THE WITNESS:  I'm not sure there are
9  seven pages.  I didn't use this for preparation.  I
10  used ones that were at home.  There may be other
11  copies that have those in there.  I just don't know.
12  I'd have to look at the original copies.
13  BY MR. PLACITELLA:
14      Q.   Wait a second.  You produced here
15  documents, and you have other documents that are
16  complete that I was not given?
17          MR. FARRELL:  Objection to form.
18          THE WITNESS:  I have one at home.  You
19  asked me in the last deposition if I had any
20  preparation material at home, and I said I do have a
21  document like this at home that I left in Detroit.
22          MR. PLACITELLA:  Is there another

Page 579

1  document that has these pages, Mr. Farrell, that I
2  was not provided?
3          MR. FARRELL:  You've been provided the
4  copies of the Triglia transcript that we have.
5          MR. PLACITELLA:  Okay.  So, there is no
6  other document with the missing pages?
7          MR. FARRELL:  I don't know if there is
8  another version of the Triglia transcript.
9          MR. PLACITELLA:  Okay.
10          MR. FARRELL:  If we have another version
11  of it, I'm sure it's been produced to you.
12          MR. PLACITELLA:  I found another version
13  that didn't even have page numbers on it.  At least
14  this one has page numbers.
15          MR. FARRELL:  So, apparently, there is
16  more than one version of this transcript.
17          MR. PLACITELLA:  And it doesn't have
18  these pages.
19          MR. FARRELL:  Well, no.  I haven't -- I
20  would look into it if -- you can check the document
21  production, Mr. Placitella.  It has been produced to
22  you.

Page 580

1          MR. PLACITELLA:  No, that's fine, what
2  we're doing.
3  BY MR. PLACITELLA:
4      Q.   Can we go to page 67, please?
5          MR. FARRELL:  What page is that?
6          MR. PLACITELLA:  Page 67.
7  BY MR. PLACITELLA:
8      Q.   Do you see where it says, on line 8:
9      "Is that the same list of samples that's
10  included in Exhibits 15 and 17 of this deposition?
11      "ANSWER:  I think they are different.
12  They are not the same.  These were all" --
13      Do you see that?
14      A.   Yes.
15      Q.   Do you see where somebody whited out and
16  typed something else in, the mine samples?  Do you
17  see that?  I circled it on mine.
18          MR. FARRELL:  Objection to form and
19  foundation.
20          THE WITNESS:  I have no idea.
21  BY MR. PLACITELLA:
22      Q.   Well, who whited it -- who whited it out

Page 581

1  and typed something else in?
2          MR. FARRELL:  Objection to form and
3  foundation.
4          THE WITNESS:  I don't know.
5  BY MR. PLACITELLA:
6      Q.   Well, would that be significant, for
7  example, if there was another word there other than
8  "mine"?
9      A.   I can't think of many words that would
10  fit in there other than the word "the."
11      Q.   How about "the production samples, the
12  air samples"?  Who whited it out and put "mine
13  samples"?
14      A.   I don't think --
15          MR. FARRELL:  Objection -- one moment
16  please.
17          Objection to form, foundation, calls for
18  speculation.
19          Go ahead, Mr. Steinmetz.
20          THE WITNESS:  I don't know.  I don't
21  think "production" or a longer word would fit in
22  there.

**MAGNA**
**LEGAL SERVICES**

Page 582

```
 1   BY MR. PLACITELLA:
 2      Q.   How could you represent that this is an
 3   accurate transcription of what happened back in 1984
 4   of this deposition where we have white-outs and
 5   things typed in, and you have no idea who did it and
 6   when it was done?
 7          MR. FARRELL:  Objection to form,
 8   foundation, argumentative.
 9          THE WITNESS:  I -- my feeling, looking at
10   this and reading it and preparing for this, I don't
11   think that is significant.  It's...
12   BY MR. PLACITELLA:
13      Q.   You don't think it's significant that
14   people were whiting out and typing other things in
15   the transcript and this is represented to be a true
16   and accurate copy of the original transcript?  You
17   don't think that's significant?
18          MR. FARRELL:  Objection to form and
19   foundation.
20          THE WITNESS:  I'm not sure how it's
21   represented.  All I know is that it doesn't change my
22   perception of -- of the value of it or the accuracy
```

Page 583

```
 1   of it.  I have no problem with that.
 2   BY MR. PLACITELLA:
 3      Q.   So, now we have missing pages and
 4   whited-out sentences, and you still think that it is
 5   absolutely representative of what transpired at the
 6   date of this deposition in 1984.  Correct?
 7          MR. FARRELL:  Objection to form,
 8   foundation, argumentative.
 9          THE WITNESS:  I don't know what you mean
10   by "absolutely," but, yes, I do think that it's a
11   good representation of what was given at deposition.
12   BY MR. PLACITELLA:
13      Q.   Okay.  Now, am I correct that --
14      A.   Keep in mind, this is, again, we're
15   talking 40 years ago.  So --
16      Q.   Yes, sir, but --
17      A.   -- it's hard to say what happened 40
18   years ago.
19      Q.   But BASF's lawyers were there at this
20   deposition.  Correct?
21          MR. FARRELL:  Objection to form,
22   misstates the record.
```

Page 584

```
 1   BY MR. PLACITELLA:
 2      Q.   Correct?
 3      A.   Well, Engelhard.
 4      Q.   Engelhard's lawyers.  Correct?
 5          MR. FARRELL:  Objection to form,
 6   foundation, misstates the record.
 7          THE WITNESS:  I'm sorry.  Could you
 8   repeat the question?
 9   BY MR. PLACITELLA:
10      Q.   Engelhard's lawyers were there at the
11   deposition.  Correct?
12          MR. FARRELL:  Same objection.  Misstates
13   the record.
14          THE WITNESS:  My understanding is that
15   there probably were Engelhard lawyers there.  I know
16   Cahill was there.  I'd have to look and -- but I
17   assume that they were.
18   BY MR. PLACITELLA:
19      Q.   Do you see where, on the first page, it
20   says Cahill Gordon & Reindel were there?
21      A.   Yes.
22      Q.   And those lawyers eventually became
```

Page 585

```
 1   BASF's lawyers.  Correct?
 2      A.   I'm sorry.  I don't understand what you
 3   mean by "they became."
 4      Q.   Well, after BASF bought out Engelhard,
 5   Cahill continued to serve as their lawyers.  Correct?
 6      A.   Yes, they did, for a while.  I -- yes.
 7      Q.   Now, am I correct that, from your review
 8   of all of the evidence in your prior deposition, that
 9   one of the most important facts litigated in cases
10   involving EMTAL talc for asbestos was whether there
11   was actually asbestos in the EMTAL talc.  Correct?
12          MR. FARRELL:  Objection to form and
13   foundation, beyond the scope of the notice.
14          THE WITNESS:  I'm sorry.  Could you
15   repeat it?
16   BY MR. PLACITELLA:
17      Q.   One of the most important facts in these
18   cases or issues that are debated is whether there
19   was, in, fact asbestos in the EMTAL talc sold by
20   Engelhard.  Correct?
21          MR. FARRELL:  Objection to form,
22   foundation, beyond the scope of the notice.  Calls
```

**MAGNA** ▶
LEGAL SERVICES

Page 586

1    for speculation.
2          THE WITNESS: I'm not sure, from a legal
3    perspective, what the answer is. I know that the
4    issue surrounding EMTAL talc included the possible
5    presence of asbestos.
6    BY MR. PLACITELLA:
7          Q.   And if there was no asbestos in the EMTAL
8    talc, then there was no case that the plaintiff could
9    prove. Correct?
10         MR. FARRELL: Objection to form,
11   foundation, beyond the scope of the notice.
12         THE WITNESS: I don't know.
13   BY MR. PLACITELLA:
14         Q.   You know from looking at depositions that
15   representations were made by Engelhard and its
16   lawyers that there was no evidence of asbestos in
17   EMTAL talc. Correct?
18         MR. FARRELL: Objection to form,
19   foundation, beyond the scope of the notice.
20         THE WITNESS: There's been so much --
21   there have been so many depositions and so much
22   information and so many cases, I'd have to look at

Page 587

1    specific statements.
2          MR. PLACITELLA: Can you mark this as the
3    next exhibit?
4               (Plaintiff's Exhibit No. 35,
5                letter dated May 17, 1989 from
6                Ira J. Dembrow at Cahill Gordon &
7                Reindel to Jeffrey C. Schwarts,
8                Esq., Bates stamped BASF FC
9                0010057-57, was marked for
10               identification.)
11         MR. PLACITELLA: First let me give it to
12   counsel, because I only brought one copy.
13         MR. FARRELL: Which topic in your notice
14   does this relate to?
15         MR. PLACITELLA: I'll get to it in a
16   second.
17         MR. FARRELL: Which topic is it?
18         MR. PLACITELLA: I'll get to it in a
19   second.
20         MR. FARRELL: You can't tell me a topic
21   number?
22   BY MR. PLACITELLA:

Page 588

1          Q.   Do you have that in front of you, sir?
2          MR. FARRELL: Mr. Placitella, can you
3    tell me the topic number?
4          MR. PLACITELLA: I am not answering your
5    questions. I'm not doing this today.
6          MR. FARRELL: We came back for a third
7    day so you could talk about talc samples --
8          MR. PLACITELLA: We're going to get
9    there.
10         MR. FARRELL: -- and now you are spending
11   the morning covering material you covered on the
12   first two days --
13         MR. PLACITELLA: I don't think so.
14         MR. FARRELL: -- and now you're covering
15   material that is beyond the scope of the notice.
16         MR. PLACITELLA: Let me know when you're
17   done, and I'll ask my next question.
18         MR. FARRELL: I'm just asking you to tell
19   me which topic you are covering.
20         MR. PLACITELLA: Let me know when you are
21   done, and I'll ask my next question.
22         MR. FARRELL: I'm finished. I'm waiting

Page 589

1    for your answer.
2          MR. PLACITELLA: Thank you very much.
3    BY MR. PLACITELLA:
4          Q.   Do you have that in front of you, sir?
5          A.   Yes.
6          Q.   Have you had a chance to look at it?
7          A.   I can look at it. I would say that I
8    haven't looked into any other types of litigation for
9    my preparation, so I'm not sure I will be able to
10   respond to this very -- well, I -- I can read it.
11         Q.   Well, weren't you supposed to be prepared
12   for what was in the historical litigation files
13   related to EMTAL talc?
14         MR. FARRELL: Objection to form,
15   foundation, misstates the notice, beyond the scope of
16   the notice.
17   BY MR. PLACITELLA:
18         Q.   Can you answer my question, sir?
19         A.   I'm sorry. Could you repeat it?
20         MR. PLACITELLA: Can you read it back?
21              (The record was read by the court
22   reporter.)

MAGNA
LEGAL SERVICES

Page 590

1      MR. FARRELL:  Same objections.
2      THE WITNESS:  I'm sorry.  Can I look at
3  the original notice just to --
4  BY MR. PLACITELLA:
5      Q.   It's right here.  Do you see under
6  Number 13?
7      A.   I'm sorry, I can't see it.
8      Q.   I'll put it on and then I'll hand it to
9  you.
10      "The location, completeness of all
11  original files related to lawsuits filed against
12  Engelhard and BASF for injuries allegedly related to
13  EMTAL talc."
14      Do you see that?
15      A.   I see it, not very well, but -- again,
16  I'm comfortable talking about location and
17  completeness of original files.
18      As I mentioned, I can't talk a lot about
19  individual specifics of -- of specific litigation
20  activities because I didn't prepare for that kind of
21  thing.
22      Q.   Okay.

Page 591

1      A.   So, I know where the files are and --
2      Q.   Can I just have that document?
3      A.   Yes.
4      Q.   I just have one question about it.
5      Do you see, on Exhibit 35, the second
6  page, "The unequivocal conclusion reached by all of
7  these investigations" -- well, let me start up
8  further.
9      "Enclosed is an affidavit by William" --
10      MR. FARRELL:  Do you have a copy that I
11  can read along with?
12      MR. PLACITELLA:  It's up there.  It's
13  pretty --
14      MR. FARRELL:  Do you have a copy of the
15  document I can read along with?
16      MR. PLACITELLA:  No, but you can see it
17  right up on the screen.
18      "Enclosed is an" --
19      MR. FARRELL:  Mr. Placitella, do you have
20  a copy of the document for me?
21      MR. PLACITELLA:  No, I don't.  I'm sorry.
22      It says, "Enclosed" --

Page 592

1      MR. FARRELL:  So, when the judge directed
2  you to have copies of the documents, you didn't bring
3  copies with you?
4  BY MR. PLACITELLA:
5      Q.   "Enclosed is an affidavit by William H.
6  Ashton who has been involved in investigating and
7  studying the talc industry and talc technology for
8  over 35 years."
9      And is that -- have you ever seen the
10  Ashton affidavit?
11      A.   I've seen it.  I don't know if I've read
12  it, but I've seen it.
13      Q.   In his affidavit, Mr. Ashton summarizes a
14  number of reports, studies, and analyses from the
15  1940s to the 1980s of the talc produced at the
16  Johnson, Vermont talc mine that was owned and
17  operated by EMTAL from 1967 to 1983.  Are you with
18  me?
19      A.   Yes.
20      Q.   Okay.
21      A.   Again, I can't see it very well on the
22  screen, so --

Page 593

1      MR. FARRELL:  And I can't see it either
2  and I don't have a copy.
3  BY MR. PLACITELLA:
4      Q.   Well, I'll give it back to you.  Let me
5  show you.
6      "The unequivocal conclusion reached by
7  all these investigations, as set forth in
8  Mr. Ashton's affidavit, is that the talc from the
9  Johnson, Vermont mine, which was Engelhard's only
10  talc mine, did not contain asbestos."
11      Here, I'll give it to you to see if I've
12  read that correctly.
13      (Witness hands the document to
14  Mr. Farrell.)
15      MR. FARRELL:  Thank you.
16      (Witness reading over the document.)
17      THE WITNESS:  Okay.  I've read it.
18  BY MR. PLACITELLA:
19      Q.   Do you see in the last page the Cahill
20  Gordon firm is cc'd?
21      A.   Yes.
22      Q.   Okay.  So, if there was available

15 (Pages 590 to 593)

MAGNA ▶
LEGAL SERVICES

Page 594

1    evidence that showed that there was asbestos
2    throughout the talc -- the EMTAL mine, that would be
3    significant, don't you think --
4           MR. FARRELL:  Objection --
5    BY MR. PLACITELLA:
6       Q.   -- in light of these representations?
7           MR. FARRELL:  Objection to form,
8    foundation, beyond the scope of the notice, assumes
9    facts.
10          THE WITNESS:  I -- I'm not sure what you
11   mean by representations.  This is a statement that
12   several investigations were reviewed and that the
13   equivocal -- unequivocal conclusion from those
14   investigations was that there was no talc in the mine
15   from those investigations.
16   BY MR. PLACITELLA:
17      Q.   And based on that representation,
18   Engelhard was demanding the plaintiff's lawyer
19   dismiss all those cases.  Right?
20          MR. FARRELL:  Objection to form,
21   foundation, beyond the scope of the notice.
22          Are we really -- this is what we're going

Page 595

1    to do here today?  We are going to cover these
2    questions?
3           MR. PLACITELLA:  Well, I would be done if
4    you'd stop talking.
5           MR. FARRELL:  Well, why don't we get the
6    Court on the phone, and we'll talk about how this
7    relates to your notice.
8           MR. PLACITELLA:  As soon as we take a
9    break.
10          MR. FARRELL:  Mr. Placitella, how does
11   this relate to the location and completeness of --
12          MR. PLACITELLA:  I'm going to get there
13   in about 30 seconds if you let me ask the questions.
14   BY MR. PLACITELLA:
15      Q.   Sir, if there was available evidence that
16   showed asbestos throughout the mine, that would be
17   significant.  Correct?
18          MR. FARRELL:  Objection to form,
19   foundation, beyond the scope of the notice, assumes
20   facts.
21          THE WITNESS:  In what context?  I mean,
22   asbestos information in any mine would be important

Page 596

1    to know.  I don't know what you mean specifically
2    here.
3    BY MR. PLACITELLA:
4       Q.   Well, the EMTAL mine I'm talking about.
5           MR. FARRELL:  Same --
6    BY MR. PLACITELLA:
7       Q.   If there was available evidence that
8    showed asbestos throughout the EMTAL mine, that would
9    be significant.  That's all I'm asking you.
10          MR. FARRELL:  Same objections.
11          THE WITNESS:  I guess my feeling is I
12   have nothing to lead me to conclude that there was
13   asbestos throughout the mine.
14   BY MR. PLACITELLA:
15      Q.   Okay.
16      A.   So, it's a hypothetical, I guess.
17      Q.   If evidence was lost or destroyed that
18   was proven there was asbestos throughout the EMTAL
19   mine, that would be significant, don't you think?
20          MR. FARRELL:  Objection to form,
21   foundation, beyond the scope of the notice, calls for
22   speculation.

Page 597

1           THE WITNESS:  You never want to lose or
2    destroy evidence.  As I've mentioned, I've done a lot
3    of preparation.  Everything I've looked at indicates
4    that these -- the documents related to EMTAL testing
5    at the mine have -- have survived for 40 years.  It's
6    remarkable that they are still around.  And I have no
7    evidence that any were destroyed.
8    BY MR. PLACITELLA:
9       Q.   Okay.  So, you reviewed Dr. Hemstock's
10   deposition from the Westfall case.  Correct?
11      A.   Yes, I read it.
12      Q.   And that's one of the documents you
13   produced and you rely upon.  Correct?
14          MR. FARRELL:  Objection to form.
15          THE WITNESS:  Yes.  I -- we produced it,
16   yes.
17   BY MR. PLACITELLA:
18      Q.   And do you recall that, in his
19   deposition, Dr. Hemstock said that his department
20   initiated a study of the EMTAL mine.  Do you recall
21   that?
22          MR. FARRELL:  Objection to form.  The

MAGNA
LEGAL SERVICES

Page 598

1  testimony speaks for itself.
2         THE WITNESS:  I'd have to look at that
3  again.
4  BY MR. PLACITELLA:
5     Q.   Can you get Dr. Hemstock's transcript
6  out?
7     A.   From 1983?
8     Q.   Yes, sir, the second day.
9         Do you have that in front of you?
10    A.   Yes.
11    Q.   See, you go up the page, line 2.  I'm
12  talking about the study that Dr. Hemstock has
13  testified to --
14    A.   I'm sorry.  What page are you on?
15    Q.   119.
16    A.   Okay, I'm there.
17    Q.   "I'm talking about the study that
18  Dr. Hemstock has testified to that took place in 1978
19  and 1979 in which Mr. Gale took part."
20        Are you aware of that study, sir?
21    A.   I'm generally aware -- again, I prepared
22  for this deposition in a way that I would know where

Page 599

1  documents are and what documents are available.  I
2  didn't study the study itself.
3     Q.   I understand that.  That's what I'm going
4  to get to.  But I have to do some preliminary
5  questions.
6         "Yes, there were that probably appeared
7  in memoranda.  I think we have seen the results of
8  them this afternoon.
9         "Well, the memoranda that we've seen or
10  brief memoranda without conclusions or summaries of
11  the results of the tests, was there any final report
12  that was written regarding that series of tests?"
13        Do you see that?
14    A.   Yes.
15    Q.   And Dr. Hemstock says, "I don't recall
16  that there was."
17        Do you see that?
18    A.   Yes.
19    Q.   Okay.
20        "You don't recall that there was?
21        "ANSWER:  I don't recall that there was."
22        Do you know whether there was a final

Page 600

1  report ever issued?
2         MR. FARRELL:  Objection to form and
3  foundation.
4         THE WITNESS:  I haven't seen a final
5  report.  If he couldn't recall one at the time and
6  that was only a couple of years after the fact, I
7  would conclude that there probably never was one, but
8  I haven't seen a final report.
9  BY MR. PLACITELLA:
10    Q.   Did you ask your lawyers whether there
11  was a final report?
12        MR. FARRELL:  Objection to form and
13  foundation.
14        THE WITNESS:  No, but we have all of
15  the -- we have the data that was generated during
16  those periods.
17  BY MR. PLACITELLA:
18    Q.   See, that's the problem.  We really
19  don't, and I want to talk about that.
20        MR. FARRELL:  Objection, argumentative.
21  BY MR. PLACITELLA:
22    Q.   It says, down below, "Dr. Hemstock, do

Page 601

1  you have any question what study I'm asking you
2  about?
3         "ANSWER:  I assume you're talking about
4  the study in which Mr. Gale and I visited the mine.
5         "QUESTION:  That's right.
6         "ANSWER:  That study probably occurred
7  over several months, but it was not a dedicated
8  effort on anybody's part.  It was a relatively small
9  study that was almost like a TSR except it was
10  initiated within my department as opposed to being
11  requested by others."
12        Do you see that?
13    A.   Yes.
14    Q.   Okay.
15        "And why was it initiated within your
16  department?
17        "Mr. Gale and I, I had never been to the
18  EMTAL mine or plant, nor had Mr. Gale.  Mr. Gale had
19  just joined the organization, and we were generally
20  interested in learning more about the nature of the
21  EMTAL deposit."
22        Do you see that?

Page 602

1      A.   Yes.
2           MR. FARRELL:  Objection to form.
3    BY MR. PLACITELLA:
4      Q.   "And I was personally interested in
5    seeing the processing operation.
6           "One of the purposes of the study was to
7    determine asbestos content in the talc and the ore.
8    Is that correct?
9           "ANSWER:  No, it was not.
10          "QUESTION:  It was not?
11          "ANSWER:  No, it was not.  It was a
12   broader intent than that.  We wanted to see the
13   general geology of the deposit.  We wanted to find
14   out what other mineral constituents were there.  If
15   we found asbestos that was, so be it.  We were
16   looking for other things like magnesite content, iron
17   carbonate content and other extraneous minerals like
18   chlorite, like sphene.  So, it was a much broader
19   study than you had indicated.
20          "QUESTION:  And was asbestos one of the
21   minerals that was looked for?
22          "ANSWER:  We looked for fibers.  We were

Page 603

1    interested in morphology.  We were interested in
2    knowing what talc -- what our talc, the basic
3    morphology of the talc deposit.  If we found fibers,
4    when you are looking in an electron microscope, you
5    see what you see.
6           "QUESTION:  My question was:  Was
7    asbestos one of the minerals that was looked for in
8    the talc?
9           "ANSWER:  Yes, it was one of the
10   minerals.
11          "QUESTION:  How many other studies did
12   your department initiate of its own the way you
13   describe this report, this study, as being initiated
14   on its own during the time that you've been
15   associated with the department?
16          "ANSWER:  To my knowledge, none.
17          "QUESTION:  This is the only one?
18          "ANSWER:  That is correct."
19          Do you see that?
20     A.   Yes.
21     Q.   Did I read that correctly?
22     A.   Yes.

Page 604

1      Q.   Okay.  So, have you found any other
2    evidence of any other studies of the mine conducted
3    by or on behalf of Engelhard or BASF in preparing for
4    today's deposition?
5           MR. FARRELL:  Objection to form,
6    foundation, vague.
7           THE WITNESS:  I'm sorry.  Could you ask
8    that again, sir?
9    BY MR. PLACITELLA:
10     Q.   Other than the study that Dr. Hemstock is
11   talking about where he and Mr. Gale went to the mine
12   to determine what was in it -- are you with me?
13     A.   Yes.  This was a geologic survey
14   generally, yes.
15     Q.   Okay.  Have you found any other studies
16   or were you provided any other studies that were
17   conducted by Engelhard or BASF or on their behalf
18   related to whether there was asbestos in the mine
19   itself?
20          MR. FARRELL:  Objection to form,
21   foundation, vague as to "studies."
22          THE WITNESS:  Well, we've talked about

Page 605

1    and produced dozens of studies that had to do with
2    analysis of EMTAL products for potential presence of
3    asbestos.
4           There were studies conducted by NIOSH in
5    the 1970s in that mine that were published, both of
6    which showed no presence of asbestos.  There may be
7    other studies that we produced.  I -- I can't think
8    of them off the top of my head, but, yes, many
9    studies have been produced.  We have given you many
10   documents that relate to the analysis of samples.
11   BY MR. PLACITELLA:
12     Q.   Well, it is very important for me to know
13   and understand, pursuant to the Court's order, what
14   studies conducted by Engelhard of the Johnson mine,
15   what was in the Johnson mine -- not the finished
16   product, in the mine -- have you brought with you
17   today.
18          MR. FARRELL:  Objection to form,
19   foundation.
20   BY MR. PLACITELLA:
21     Q.   What studies?
22          MR. FARRELL:  Objection to form,

MAGNA⟩
LEGAL SERVICES

Page 606

1   foundation, asked and answered, vague.
2        THE WITNESS:  Again, I would say some of
3   the published studies that NIOSH performed that
4   showed the presence of no asbestos, included rock
5   samples as well as airborne sampling, I believe.  We
6   have some -- we have recovered some rock samples that
7   were obtained at the time and have been produced.
8   BY MR. PLACITELLA:
9        Q.   With all due respect, I'm not asking you
10  about NIOSH or what you've done recently.  I'm asking
11  you:  Have you located any studies conducted by
12  Engelhard of the Johnson mine other than the study
13  that's referenced by Dr. Hemstock in his deposition?
14       MR. FARRELL:  Objection to form,
15  foundation, harassing the witness, asked and
16  answered, vague as to "study."
17       Go ahead, Mr. Steinmetz.
18       THE WITNESS:  Yes.  We've presented
19  dozens of documents that show analysis of samples
20  from the -- that were taken from the Johnson mine.
21  BY MR. PLACITELLA:
22       Q.   Can you show me them, sir?  Because I

Page 607

1   haven't seen them.
2        A.   I can just --
3        Q.   Other than -- other than the study that
4   was conducted by Dr. Hemstock and Dr. Gale.
5        A.   There was -- I can just go through the
6   book of exhibits here.  There was a study of -- dated
7   September 6, 1977.  This was a TSR from Zimmermann to
8   Marchetti concerning --
9        Q.   What tab are you looking at?
10       A.   -- samples for tremolite.
11       Q.   What -- what tab are you looking at?
12       A.   Beg your pardon?
13       Q.   What tab are you looking at?
14       A.   This is -- I just chose one at random.
15  This is Tab 6 of the --
16       Q.   Of Exhibit 15?
17       A.   Yes.
18       Q.   This is of -- this is of the EMTAL mine?
19  These are samples from the EMTAL mine?
20       A.   These are -- these are samples --
21       MR. FARRELL:  Objection to form,
22  foundation.

Page 608

1        Go ahead.
2        THE WITNESS:  These are EMTAL samples
3   that were produced at the EMTAL mine.  If you go to
4   Tab 7 --
5   BY MR. PLACITELLA:
6        Q.   Excuse me.  I want to make sure we are
7   clear.
8        You are saying that these are testing
9   results of samples of the mine itself, not the
10  finished product.
11       MR. FARRELL:  Objection to --
12  BY MR. PLACITELLA:
13       Q.   That's what you're saying.
14       MR. FARRELL:  Objection to form,
15  foundation.
16  BY MR. PLACITELLA:
17       Q.   Do you understand the distinction, sir?
18       MR. FARRELL:  One moment.
19       Which tab are you on, Mr. Steinmetz?
20       THE WITNESS:  I'm on, I guess, going
21  back, I'm on Tab 6 still, because --
22       MR. PLACITELLA:  Let me -- let me back

Page 609

1   up.
2        MR. FARRELL:  I just want to be sure I'm
3   in the same spot.  Tab 6 of the Hemstock --
4        THE WITNESS:  Yes --
5        MR. FARRELL:  -- binder?
6        THE WITNESS:  -- of P-19.  So, the
7   Hemstock binder.
8   BY MR. PLACITELLA:
9        Q.   Let's be clear on what we're doing here.
10       A.   Okay.
11       Q.   You understand there were samples taken
12  of the product itself after manufacture.  Correct?
13       A.   Yes.
14       Q.   There were also samples done of the
15  actual ore talc from the mine.  Correct?
16       A.   I'm not sure what you mean by that
17  question.
18       Q.   Where the people went into the mine, took
19  the rock and sampled to see if there was asbestos
20  before it was processed.  You understand that that
21  happened.  Correct?
22       A.   I don't understand what you mean by "I

MAGNA ►
LEGAL SERVICES

Page 610

1    understand that that happened." When -- what
2    timeframe are we talking about? I'm sorry.
3        Q.   During the time that Engelhard owned the
4    mine, is it your understanding -- do you understand
5    that they did sampling of the finished product --
6            MR. FARRELL:  Objection to form.
7    BY MR. PLACITELLA:
8        Q.   -- to determine if there was asbestos?
9        A.   Yes, there was sampling done.  And there
10   was analysis done of finished product samples.
11       Q.   There were also air samples done.
12   Correct?
13       A.   That's correct.
14       Q.   And there were also samples done of the
15   ore that was coming out of the mine.  Correct?
16       A.   I don't know.  Again, I have to tell you,
17   I didn't read each one of these documents for the
18   details of what was actually being analyzed.  I
19   looked at the documents in their totality to see
20   where they came from, what their source was, and
21   whether they were here.
22           So, I'd have to read through every

Page 611

1    document to look at whether they were looking at rock
2    samples or airborne particulate samples or product
3    samples.
4        Q.   Well, that's the problem I'm having.
5    Okay?
6            Do you see where Dr. Hemstock said this
7    is the only study that he was aware of that was
8    originated by Engelhard of studying the ore itself in
9    the mine.  You got that?
10           MR. FARRELL:  Objection.
11   BY MR. PLACITELLA:
12       Q.   You want to go back and look at it?
13           MR. FARRELL:  Objection to form,
14   argumentative.
15           THE WITNESS:  That's what he said, but he
16   also seemed to indicate that he wasn't sure what
17   was -- what was in existence.  It's the ones he
18   knew -- that's what he knew of.
19   BY MR. PLACITELLA:
20       Q.   He doesn't say that anywhere, does he?
21   He says he's not sure whether there was a final
22   report generated.

Page 612

1        A.   I'm sorry.  I'd have to -- what page are
2    we looking at?
3        Q.   119 to 121.
4        A.   Well, yes.  He doesn't say there weren't
5    any other studies where they might have looked at
6    rock samples.  What he says was there were no other
7    such studies that his department did.  And those
8    studies, he made clear was, it was a broad study that
9    was intended to look at the general geology of the
10   deposit, looking at mineral constituents.
11           So, you know, he was talking in the
12   context of what that study was.  I don't know whether
13   he was -- how generalized he was perceiving that
14   question to be.
15       Q.   He says, on page 121, he's asked, "My
16   question was:  Was asbestos one of the minerals that
17   was looked for in the talc?
18           "Yes.  It was one of the minerals.
19           "How many other such studies did your
20   department initiate on its own the way you described
21   this report -- this study as being initiated on its
22   own during the time that you've been associated with

Page 613

1    that department?
2            "To my knowledge, none.
3            "This is the only one?
4            "That's correct."
5            Do you see that.
6        A.   I see it, but the way I read this is it's
7    a one-of-a-kind study where they went to -- actually
8    went to the mine.  He went to the mine with somebody
9    else.
10       Q.   Mr. Gale.
11       A.   With Mr. Gale.  They looked at the
12   general geology.  They looked for mineralogy.  They
13   looked for fibers.  I mean, this was a pretty
14   expansive study, and he makes it clear that it was
15   very expansive and one of a kind, that it wasn't
16   just -- it wasn't just a study of asbestos.  It was a
17   general big, expansive study.
18           So, he said this is the only one that
19   they did, and I -- that steams like it would be a
20   one-of-a-kind study.
21       Q.   And my question simply was this:  Did you
22   bring with you -- have you seen results of any other



Page 614

1    studies of the mine, not the end product, that was
2    initiated by Engelhard?
3           MR. FARRELL:  Objection to form,
4    foundation, asked and answered.
5           THE WITNESS:  And if you mean other
6    studies of the mine that are like this, where they
7    looked at -- where they went to the mine, did
8    geology, did mineralogy, looked for fibers and it was
9    very expansive in scope, no.  I wouldn't think that
10   people would do that regularly.  I haven't seen
11   another one.
12   BY MR. PLACITELLA:
13      Q.  Okay.  So, we're finally on the sane
14   page.
15          Do you see anywhere in Dr. Hemstock's
16   testimony that this study was initiated by the legal
17   department in any way?
18          MR. FARRELL:  Objection to form,
19   foundation, beyond the scope of the notice.
20          THE WITNESS:  From the pages we've read,
21   I don't see that.  I'd have -- I don't recall that
22   that was the case.

Page 615

1    BY MR. PLACITELLA:
2       Q.  Well, he said the purpose of the study
3    was it originated with him and his department.
4    Correct?  Not the legal department.  Correct?
5           MR. FARRELL:  Objection to form,
6    foundation, beyond the scope of the notice.
7           THE WITNESS:  That's what -- that's what
8    the transcript says.
9    BY MR. PLACITELLA:
10      Q.  Okay.  Now, you're aware that, according
11   to Dr. Triglia, in his deposition, he said that he
12   actually took over this study from Mr. Gale when
13   Mr. Gale left the employ of Engelhard.  Do you recall
14   that?
15      A.  Again, I didn't prepare in that much
16   detail for this kind of questioning, but I'd have to
17   look at it.  I believe you.  I just don't recall it.
18      Q.  If you go to Mr. Triglia's transcript,
19   where he starts on the bottom of page 55, do you see
20   that?  He talks about embarking on a testing program?
21      A.  Yes.
22      Q.  And then he's asked:  "Who are the

Page 616

1    employees within Engelhard who were involved in that
2    testing program?"
3           And the objection:  "There is no
4    timeframe.  Are we talking about '79 again?
5           "Yes.
6           "QUESTION:  Do you have any confusion as
7    to the time period I'm discussing?
8           "No, I don't.  There was, of course, our
9    geologist at the time, Peter Gale.  He was doing
10   quite a bit of legwork going down to the mine and
11   bringing the samples over to the Georgia Institute,
12   but he left when the investigation was only halfway
13   through.
14          "So, the burden of that fell on me,
15   because I was next in line as far as mineralogic
16   expertise went and knowing where to send the samples
17   and who to contact.  I was the one -- I was the one
18   that was, you know, called on to do that."
19          Do you see that?
20      A.  Yes.
21      Q.  Okay.  So, do you recall that, in
22   Mr. Hemstock's deposition, he was -- he discussed the

Page 617

1    results of his investigation, and he produced
2    documents relating to the results of his
3    investigation that happened up in the mine.  Do you
4    recall that?
5           MR. FARRELL:  Objection to form.
6           THE WITNESS:  I'd have to look at it.  I
7    don't recall off the top of my head.
8    BY MR. PLACITELLA:
9       Q.  Okay.  That's fair.
10          Look at page 117.
11          MR. FARRELL:  Of what?
12          MR. PLACITELLA:  Dr. Hemstock's
13   transcript.
14          MR. FARRELL:  We've been going over an
15   hour.  I'd like to take a break.
16          MR. PLACITELLA:  That's fine.
17          THE VIDEOGRAPHER:  The time is now
18   11:08 a.m.  We're going off the record.
19          (Recess taken.)
20          THE VIDEOGRAPHER:  The time is now
21   11:20 a.m.  We are back on the record.
22   BY MR. PLACITELLA:

MAGNA
LEGAL SERVICES

Page 618

1    Q.   So, I have to ask you this, I apologize
2  in advance: During the break, you're not talking
3  about your testimony, are you?
4    A.   Absolutely not.
5    Q.   You're talking about the nationals and
6  how they are running away with it?
7    A.   Sure.
8    Q.   So, can we go to 117?
9    A.   Yes.
10   Q.   Do you see, on the top, it says, "Do
11 you -- do you know that your counsel came over today
12 with a black looseleaf binder that was filled with
13 documents and that this Exhibit 50 is a bundle of
14 copies of all those documents?
15     "ANSWER: Yes.
16     "QUESTION: Are you familiar that series
17 of documents?
18     "ANSWER: I believe this was a record
19 that Mr. Gale kept of some of the raw data that he
20 accumulated."
21     Do you see that?
22   A.   Yes.

Page 619

1    Q.   Do you understand that that was the raw
2  data that Mr. Gale accumulated from his trips and
3  studies of the mine?
4      MR. FARRELL: Objection to form,
5  foundation, harassing the witness.
6      THE WITNESS: I'm not sure if it was just
7  from the mine. It may have been other things, but I
8  assume that could have been some of it.
9  BY MR. PLACITELLA:
10   Q.   And have you been able to produce that
11 entire binder in response to the Court's order?
12     MR. FARRELL: Objection to form, asked
13 and answered.
14     THE WITNESS: We haven't found the entire
15 exhibit, no.
16 BY MR. PLACITELLA:
17   Q.   Can we go to page 126?
18     Starting at line 4, it says, "When did
19 you make the visit with Mr. Gale to the EMTAL
20 facility?"
21     And he says, "It was in the 1978-79 time
22 period.

Page 620

1      "Over what period of time did the study
2  take place?"
3      And he asks, "Can you be more specific on
4  the study? You're still referring to the visit that
5  Gale and I made and the subsequent analysis? That
6  was only one of many, many TSR-type activities that
7  went on over a long period of time. I don't think it
8  should be highlighted to the degree that you've
9  indicated."
10     Then he says, "Now, there is a memorandum
11 dated March 20, 1979, from Peter Gale to several
12 people, including yourself. The subject of that
13 memorandum is Talc. Is that the talc study or talc
14 investigation?
15     "ANSWER: Talc investigation.
16     "QUESTION: Do you know what Mr. Gale is
17 referring to as the talc investigation?
18     "No, I don't."
19     Do you see that?
20   A.   Yes.
21   Q.   Do you have that document so we can see
22 what they were referring to?

Page 621

1    A.   The document from March 20, 1979?
2    Q.   Yes, sir.
3    A.   No.
4    Q.   It goes on, if you look on the next page,
5  starting at line 10, it says, "Here's a memorandum
6  dated March 1, 1979, from Mr. Yunko to you, subject
7  'EMTAL talc.' Do you have a recollection of
8  receiving that?
9      "No, I don't.
10     "And so, Mr. Yunko told you, in this
11 memorandum, the issue of properly defining EMTAL talc
12 mineralogy insists on becoming more complicated all
13 of a sudden. Do you have any idea what he's
14 referring to?
15     "No, I don't.
16     "QUESTION" -- and he's reading from the
17 document -- "'I'm deferring any action until we have
18 an opportunity to review Peter's findings and
19 recommendations. We'll have to decide on a strategy
20 at that time.'
21     "Do you have any idea -- any knowledge or
22 recollection of what strategy he's referring to?"

MAGNA ▶
LEGAL SERVICES

Page 622

1      He says, "No, I don't."
2      Do you see that?
3    A.   Yes, I see it.
4    Q.   Do you have or have you been able to
5  produce the March 1, 1979, memo from Mr. Yunko
6  discussed here?
7      MR. FARRELL:  Objection to form.
8      THE WITNESS:  I believe so.  I'd have to
9  look real quickly.  I'm not sure.  I don't think
10  that's one that we had, but I can look real quickly.
11      (Witness perusing the document.)
12      No, we don't have that one.
13  BY MR. PLACITELLA:
14    Q.   So, have you been able to find the --
15  Peter Gale's findings and recommendations that are
16  referred to on page 127?
17      MR. FARRELL:  Objection to form.
18      Can you read that back, please?
19      (The record was read by the court
20  reporter.).
21      MR. FARRELL:  Objection to form and
22  foundation.

Page 623

1      THE WITNESS:  Well, we have produced a
2  document from Gale to Triglia April 1979 where he
3  reviews the talc investigation and provides an update
4  with tables.
5  BY MR. PLACITELLA:
6    Q.   And is that of the mine or of the
7  production samples?  At what tab are you talking
8  about?
9      MR. FARRELL:  Objection to form.
10      THE WITNESS:  This is part of Tab 50.
11  This is about samples, but I -- I'm not sure that
12  they say they actually did take rock samples.
13  BY MR. PLACITELLA:
14    Q.   Are you sure it is Tab 50?
15    A.   Part of Tab 50, yes.
16    Q.   Oh, I don't have a Tab 50.  I have it as
17  withheld, potentially omitted.
18    A.   Oh, I'm sorry.  I'm talking about the
19  Hemstock exhibit, Tab 50.
20    Q.   I'm sorry.  My fault.
21      Okay.  Am I correct that some of what was
22  in the binder identified in the Hemstock transcript

Page 624

1  as P-50 was discussed in the Triglia deposition?
2      MR. FARRELL:  Objection to form.
3      THE WITNESS:  Yes, I recall.  Yes.
4  BY MR. PLACITELLA:
5    Q.   They pulled some of the documents out,
6  and Mr. Triglia was asked questions about them.  Do
7  you recall that?
8      MR. FARRELL:  Same objection.
9      THE WITNESS:  Yes.
10  BY MR. PLACITELLA:
11    Q.   So, let's go there.
12      Go to page 58.  Let me know when you're
13  ready.
14    A.   Yes, I'm ready.
15    Q.   Okay.  It says, "I show you a one-page
16  memo dated March 14, 1979, to Gale from Lomas.
17  That's also from Exhibit 50.  Correct?"
18      When he is saying Exhibit 50, we're
19  talking about Hemstock Exhibit 50, which is the
20  looseleaf binder.  Correct?
21    A.   Yes.
22    Q.   Okay.  And it's marked P-15.

Page 625

1      And it says, "Do you know what Exhibit 15
2  is?
3      "ANSWER:  Yes, I recognize it.
4      "What is it?
5      "This is a memo from the engineer up at
6  the talc plant, Lomas, Ed Lomas, to Peter Gale,
7  telling him that 38 samples that were requested were
8  picked out and selected, and they were being mailed
9  to him."
10      Do you see that?
11    A.   Yes.
12    Q.   "Was that prepared by Mr. Lomas in the
13  course of his employment for Engelhard?
14      "I think so.
15      "Was it prepared at or about the date
16  that appears in that memo?"
17      He says, "I think so."  Correct?
18    A.   Yes.
19    Q.   You don't have that exhibit.  Correct?
20      MR. FARRELL:  Objection to form.
21      THE WITNESS:  That's correct.  We haven't
22  found all parts of that exhibit, yes.

MAGNA
LEGAL SERVICES

Page 626

1    BY MR. PLACITELLA:
2        Q.   Well, you don't have any part of this
3    exhibit, correct?
4            MR. FARRELL:  Same objection.
5            THE WITNESS:  Not this one specifically.
6    BY MR. PLACITELLA:
7        Q.   Okay.  So, we don't know, then, although
8    it says Lomas picked out samples, we don't know where
9    the samples were taken from.  Correct?
10           MR. FARRELL:  Objection to form and
11   foundation.
12           THE WITNESS:  I don't know.
13   BY MR. PLACITELLA:
14       Q.   We don't know whether the memo would have
15   told us that.
16           MR. FARRELL:  Same objection.  Calls for
17   speculation.
18           THE WITNESS:  I don't know.
19   BY MR. PLACITELLA:
20       Q.   We don't know what kind of rock he
21   selected the samples from.  Correct?
22           MR. FARRELL:  Same objections.

Page 627

1            THE WITNESS:  I don't know.
2    BY MR. PLACITELLA:
3        Q.   We don't know what part of the ore body
4    the samples were taken from.  Correct?
5            MR. FARRELL:  Same objections.
6            THE WITNESS:  I don't know if that
7    information ever existed, but I don't know.
8    BY MR. PLACITELLA:
9        Q.   And if it was in this document, we just
10   don't know?
11           MR. FARRELL:  Objection to form,
12   foundation, assumes facts, calls for speculation.
13   BY MR. PLACITELLA:
14       Q.   Correct?
15       A.   I don't know.
16       Q.   Okay.  The next document on the next
17   page, he continues to talk about -- and we know that
18   we are now talking about the study of the mine that
19   was done by Mr. Hemstock and Mr. Gale.  Correct?
20   We're on the same page?
21       A.   I believe so.  I think they are
22   continuing to talk about that.

Page 628

1        Q.   Then he says, on the next page, "I show
2    you now a memoranda dated March 20, 1979, from Gale
3    to a list of individuals.  This is from Exhibit 50
4    from the prior deposition."
5            You understand that to be the Hemstock
6    deposition.  Correct?
7            MR. FARRELL:  Objection to form.
8            THE WITNESS:  Yes.
9    BY MR. PLACITELLA:
10       Q.   Okay.  And it's described as "a
11   memorandum from Peter Gale to several individuals
12   dated 3-20-79 we received and marked as P-16 for
13   identification."
14           And he's asked, "Do you know what P-16
15   is?
16           "Yes.
17           "What is that?
18           "ANSWER:  This is a memo written by Peter
19   Gale, and he's reporting on the trip that he and
20   Dr. Hemstock undertook up to the Vermont mine to
21   examine the EMTAL operation."
22           Correct?

Page 629

1        A.   Yes.
2        Q.   You don't have that exhibit either.
3    Correct?
4            MR. FARRELL:  Objection to form,
5    foundation, asked and answered over the course of
6    five hours on day two of the deposition.
7            MR. PLACITELLA:  Thank you for you
8    testimony.
9            THE WITNESS:  We haven't found it yet.
10   BY MR. PLACITELLA:
11       Q.   Okay.  And we don't know what was
12   contained in that report, do we?
13           MR. FARRELL:  Objection to form,
14   foundation.
15           THE WITNESS:  Well, again, we do know the
16   types of information that came from that work because
17   Gale, as I mentioned before, Gale did produce talc
18   investigation summaries.  So, that gives us some
19   information on -- on what Gale had found.
20   BY MR. PLACITELLA:
21       Q.   But we don't know what was in that report
22   in terms of results that he found.  Correct?

Page 630

1    MR. FARRELL: Objection to form,
2  foundation, calls for speculation.
3    THE WITNESS: We only know what we know
4  from the Gale talc investigation summary that we
5  produced.
6  BY MR. PLACITELLA:
7    Q.   The Gale talc investigation summary
8  doesn't tell -- well, I want to get to that in a
9  little bit.
10    But I'm just talking about this
11  particular document.  We don't know what results were
12  contained in that document, if any.  Correct?
13    MR. FARRELL: Objection to form,
14  foundation, asked and answered.
15    THE WITNESS: We haven't found the
16  document yet.
17  BY MR. PLACITELLA:
18    Q.   Okay.  We don't know where the samples
19  were taken from based upon that document.  Correct?
20    MR. FARRELL: Objection to form and
21  foundation.
22    THE WITNESS: We haven't found the

Page 631

1  document.
2  BY MR. PLACITELLA:
3    Q.   We don't know what percentage of the
4  samples that were tested were found to have asbestos
5  versus not -- not having asbestos.  Correct?
6    MR. FARRELL: Objection to form,
7  foundation, beyond the scope of the notice.
8    THE WITNESS: I don't know.  We haven't
9  found it, and we don't even know if they were looking
10  for asbestos.
11  BY MR. PLACITELLA:
12    Q.   You don't know if they found asbestos.
13  Correct?
14    MR. FARRELL: Same objection.  Beyond the
15  scope.
16    THE WITNESS: I don't know.
17  BY MR. PLACITELLA:
18    Q.   Can we -- it goes on -- go to the next
19  page, 60, starting line 9.
20    "Now I'd like to show you a memorandum
21  that's dated March 16, 1979, to Mr. Hemstock from
22  Mr. Lomas."

Page 632

1    And this also came from Exhibit 50 of the
2  Hemstock transcript.  Correct?
3    A.   Yes.
4    Q.   Okay.  And he describes it.  The
5  questioner says, "What I have bundled together is a
6  memo dated March 16th, together with three pages of
7  maps that are referenced in the memo -- in the
8  memorandum that's P-16."
9    Do you see that?
10    A.   Yes.
11    Q.   And he's asked, "What is P-16,
12  Mr. Triglia?"
13    And he answers, "All right.  This is
14  another memo from Lomas to Dr. Hemstock, this time
15  listing the samples from the areas that already had
16  been preselected, and they were marked according to
17  the type of basic rock that was there.
18    "There were four basic types of rock that
19  he noted.  The T purifies -- signifies pure talc,
20  and G signifies grit or talc carbonate ore, and the B
21  signifies black chloritic schist, and S signifies
22  serpentine.'"

Page 633

1    Do you see that?
2    A.   Yes.
3    Q.   Okay.  Now, if we had that memo,
4  presumably, we could tell from the maps exactly where
5  each sample was taken from; correct, according to
6  this description?
7    MR. FARRELL: Objection to form,
8  foundation, calls for speculation, beyond the scope
9  of the notice.
10    THE WITNESS: I -- I don't know.
11  BY MR. PLACITELLA:
12    Q.   That memo might tell us whether the
13  samples were taken from the main ore body where the
14  product was mined for production.  Correct?
15    MR. FARRELL: Objection to form,
16  foundation, calls for speculation.  Asked and
17  answered.
18    THE WITNESS: I -- I haven't seen it, so
19  I don't know what was in it.
20  BY MR. PLACITELLA:
21    Q.   The memo might tell us what was found in
22  each basic rock type.  Correct?

MAGNA
LEGAL SERVICES

Page 634

```
1        MR. FARRELL:  Same objections.
2        THE WITNESS:  I don't know.
3   BY MR. PLACITELLA:
4        Q.   Okay.  If we had this memo, I could have
5   asked Dr. Hemstock, when I took his deposition, to
6   explain it to me.  Correct?
7        MR. FARRELL:  Same objections, calls for
8   speculation.
9        THE WITNESS:  You could ask him whatever
10  you wanted, yes.
11  BY MR. PLACITELLA:
12       Q.   And because I didn't have that memo, I
13  was precluded from asking him questions about where
14  the samples were taken from, exactly what kind of
15  rock was tested, and where it was tested from.
16  Correct?
17       MR. FARRELL:  Objection to form,
18  foundation, beyond the scope of the notice, calls for
19  speculation.
20       THE WITNESS:  I don't know what you can
21  ask in a deposition or what you can't ask.
22  BY MR. PLACITELLA:
```

Page 635

```
1        Q.   He talks about S signifies serpentine.
2   Do you see that?
3        A.   Yes.
4        Q.   Did you know that serpentine was a
5   precursor for chrysotile asbestos?
6        MR. FARRELL:  Objection to form,
7   foundation, beyond the scope of the notice.
8        THE WITNESS:  I'm really not prepared to
9   talk about the specifics of asbestos and the
10  technical aspects of it.
11  BY MR. PLACITELLA:
12       Q.   But if I had the map, at least according
13  to this description, I would be able to tell where
14  the serpentine was that was tested in the mine.
15  Correct?
16       MR. FARRELL:  Same objections.  Harassing
17  the witness.
18       THE WITNESS:  I don't know what you could
19  tell based on this.
20  BY MR. PLACITELLA:
21       Q.   Go down to line 14.  Do you see where it
22  says, "Mr. Triglia, I'm going to show you a five-page
```

Page 636

```
1   set of handwritten notes on graph paper.  It's
2   entitled Engelhard Minerals and Chemicals
3   Calculation.  There is a name at the top of Mark
4   Palenik."
5        Do you see that?
6        A.   Yes.
7        Q.   And it says, "This is also from
8   Exhibit 50."  Correct?
9        A.   Yes.
10       Q.   Okay.  We don't have that document
11  either.  Correct?
12       MR. FARRELL:  Objection to form.
13       THE WITNESS:  We haven't found that
14  document yet.
15  BY MR. PLACITELLA:
16       Q.   Okay.  Let's go now to where he talks
17  about Exhibit 18.  We are still all talking about
18  this test study that was done up at the mine.  Are
19  you with me?
20       MR. FARRELL:  Objection to form and
21  foundation.
22       THE WITNESS:  I'm not sure it's clear
```

Page 637

```
1   from this that they are still talking about that, but
2   they have been talking about that.
3   BY MR. PLACITELLA:
4        Q.   Okay.  Let's go to line 14 of page 63.
5        It says, "I have here a multi-page
6   collection of handwritten notes on graph paper.  The
7   graph paper has a handling -- heading, rather, of
8   'Engelhard Minerals and Chemicals Calculation.'"
9        And he marks that as Exhibit 19.  Do you
10  see that?
11       A.   Yes.
12       Q.   Okay.  And he says, "I'd like to have
13  you, Mr. Triglia, look through and tell me
14  whether you recognize what they are."
15       He looks at it, and then on the next page
16  it says, "Mr. Triglia, have you had an opportunity to
17  review Plaintiff's 19 in this case?
18       "Yes, I've looked at it.
19       "Do you know what it is?
20       "It's just some doodling by Peter Gale to
21  calculate, you know, what he found, I think in the
22  test, and try to make some sense of it."
```

**MAGNA**
LEGAL SERVICES

Page 638

1    Do you see that?
2    A.   Yes, I see it.
3    Q.   "Do you recognize the handwriting on the
4  pages in the document as being Peter Gale's
5  handwriting?
6        "ANSWER:  I'm pretty sure it is.
7        "QUESTION:  Are those laboratory notes?
8        "ANSWER:  I think these were
9  preparations.  This was preparatory to making the
10 notations in the notebook."
11   Do you see that?
12   A.   Yes.
13   Q.   Okay.  And you don't have that document.
14 Right?
15       MR. FARRELL:  Objection to form,
16 foundation.
17       THE WITNESS:  I'm sorry.  The document
18 discussed here, which is part of --
19 BY MR. PLACITELLA:
20   Q.   -- Mr. Gale's calculations.
21   A.   No, we have not found that.
22       MR. FARRELL:  Objection to form and

Page 639

1  foundation.
2  BY MR. PLACITELLA:
3    Q.   You don't know what the calculation
4  showed, then.  Correct?
5        MR. FARRELL:  Objection to form,
6  foundation, beyond the scope of the notice.
7        THE WITNESS:  We haven't found that.
8  BY MR. PLACITELLA:
9    Q.   You don't know whether the calculation
10 showed that they found asbestos when they went up
11 there.  Correct?
12       MR. FARRELL:  Same objections.
13       THE WITNESS:  We haven't found it.
14 Again, we have a lot of data from that study, but we
15 haven't found that document.
16 BY MR. PLACITELLA:
17   Q.   You don't know whether the calculations
18 told us where the samples came from.  Correct?
19       MR. FARRELL:  Objection to form,
20 foundation, calls for speculation.
21       THE WITNESS:  I'm not sure that was in
22 the document originally, so, I don't know.

Page 640

1  BY MR. PLACITELLA:
2    Q.   Where is this notebook that they are
3  referring to here, Mr. Gale's notebook?  Do you have
4  that?
5        MR. FARRELL:  Objection.
6  BY MR. PLACITELLA:
7    Q.   At least we can look there and see what's
8  in his notebook.
9        MR. FARRELL:  Objection to form.
10       THE WITNESS:  I think we discussed this
11 the last time.  In his testimony, he wasn't all that
12 clear as to whether he had a notebook.  He said he
13 had been issued one, but then it seemed to be that he
14 was unclear as to whether he had used it.
15 BY MR. PLACITELLA:
16   Q.   But Mr. -- we have some more support for
17 that now, don't we?  Dr. Hemstock says it would be in
18 his notebook.  Right?  Where is the notebook?
19       MR. FARRELL:  Objection to form,
20 foundation, asked and answered over the course of
21 hours in day two, harassing the witness.
22       THE WITNESS:  I don't know whether

Page 641

1  Hemstock would know any better than I would know
2  whether he kept it in the notebook.
3  BY MR. PLACITELLA:
4    Q.   So, his boss, who went with him to the
5  mine and did the study, wouldn't know any better than
6  you as to whether he kept a notebook of his findings?
7  Is that what you're telling this jury under oath?
8        MR. FARRELL:  Objection to form,
9  foundation, argumentative.
10       THE WITNESS:  That's what I feel.
11       MR. FARRELL:  Do you have something new
12 to cover, Mr. Placitella?
13       MR. PLACITELLA:  I'm covering lots of new
14 stuff, Mr. Farrell.
15       MR. FARRELL:  This is all material that
16 was covered at length here during day two --
17       MR. PLACITELLA:  All I did on day two was
18 catalog what was missing.
19       MR. FARRELL:  Excuse me.  I'm speaking.
20       You went to the Court and demanded a
21 third day of this deposition on the argument that you
22 get to cover talc samples.  We have yet to cover the

27 (Pages 638 to 641)

Page 642

1  talc samples.
2       And you said you wanted to ask about
3  documents in P-5. We came in prepared to talk about
4  P-5. You set those pages aside, and you haven't
5  asked a single question about them. Instead, we're
6  here reviewing exhibits from the Triglia and Hemstock
7  depositions which you covered over the course of five
8  hours in day two of the deposition of what had been
9  located and hasn't been located.
10      We are basically redoing day two at this
11 point, and beyond that, you've asked questions that
12 are clearly beyond the scope of the notice, including
13 about letters from Cahill Gordon in the 1980s, other
14 plaintiffs in other cases, which is both irrelevant
15 here and beyond the scope of the notice.
16      Are you going to get to something new
17 that you told the Court justified a third day of this
18 deposition?
19      MR. PLACITELLA: Are you done now?
20      MR. FARRELL: Can you answer my question?
21      MR. PLACITELLA: I'm not answering any of
22 your questions today, sir. Are you done now?

Page 643

1       The Court will review the transcript and
2  make its own judgment.
3       Are you done now?
4       MR. FARRELL: Can you answer my question?
5       MR. PLACITELLA: I'm not going to answer
6  any questions you put to me, sir.
7       Are you done now so I can proceed with
8  the deposition?
9       MR. FARRELL: Do you have a new question
10 for the witness?
11      MR. PLACITELLA: Thank you. I appreciate
12 you allowing me to ask my questions. Thank you.
13      MR. FARRELL: I haven't stopped you from
14 asking a single question, Mr. Placitella. I'm just
15 wondering whether we are actually going to get to
16 something new like you told the Court.
17 BY MR. PLACITELLA:
18      Q.  Okay. Just to be clear, before I move
19 on, you don't have a notebook from Mr. Gale
20 referenced by Mr. Hemstock in his deposition.
21 Correct?
22      MR. FARRELL: Objection. Asked and

Page 644

1  answered multiple times, harassing the witness.
2  BY MR. PLACITELLA:
3       Q.  Can you answer, please?
4       A.  Based on Gale's testimony, I don't know
5  if there ever was a notebook.
6       Q.  You don't have the notebook referenced by
7  Dr. Hemstock of Mr. Gale, do you?
8       A.  We haven't found one, and based on Gale's
9  testimony, I don't know if there ever was one.
10      MR. FARRELL: Objection to form, asked
11 and answered.
12 BY MR. PLACITELLA:
13      Q.  Okay. Now, can you look at your -- in
14 P-15, Tab 32?
15      A.  Yes.
16      MR. FARRELL: You said 32?
17      MR. PLACITELLA: Yes, sir.
18 BY MR. PLACITELLA:
19      Q.  It is the September 19, 1979, memo from
20 GTEES, that's Georgia Institute of Technology, to
21 Mr. Triglia.
22      Do you see that?

Page 645

1       A.  Yes.
2       Q.  It says -- and it says, "At long last,
3  here is the data and micrographs of the last three
4  sets of asbestos counts."
5       Do you see that?
6       A.  Yes.
7       Q.  Have you found the first three sets of
8  asbestos counts?
9       MR. FARRELL: Objection to form,
10 foundation.
11      THE WITNESS: Again, I didn't look at the
12 contents of every document in here with the intent of
13 knowing what was in them, so, I can't say whether we
14 had documents that have the first sets. I don't
15 know.
16 BY MR. PLACITELLA:
17      Q.  Can you tell, from looking at this
18 document, where the samples that were analyzed were
19 taken from?
20      MR. FARRELL: Objection to form,
21 foundation.
22      THE WITNESS: From this document?

Page 646

1   BY MR. PLACITELLA:
2       Q.   Yes.
3       A.   No.  Once again, I don't know all the
4   documents.  I didn't prepare that way.  So, there may
5   be other documents that can clarify that.
6       Q.   Fair enough.
7           Do you know whether this report refers to
8   samples tested of the mine ore or the production
9   samples?
10          MR. FARRELL:  Objection to form and
11  foundation.
12          THE WITNESS:  So, again, we may have
13  other documents that would put this in the context.
14  I don't know.  I haven't prepared them that way, so I
15  just can't answer.
16  BY MR. PLACITELLA:
17      Q.   If, in fact, any of the samples
18  referenced in this document came from the mine versus
19  a production sample, is there any way to tell from
20  this document where in the mine the samples came
21  from?
22          MR. FARRELL:  Objection to form and

Page 647

1   foundation.
2           THE WITNESS:  I guess I would have the
3   same answer.  I don't know if there are other
4   documents that put this into context.
5   BY MR. PLACITELLA:
6       Q.   But as you sit here today, do you -- do
7   you know whether there is a key or a map or something
8   to tell us where these samples came from if they, in
9   fact, came from the mine?
10          MR. FARRELL:  Same objections.  Beyond
11  the scope.
12          THE WITNESS:  I don't know.
13  BY MR. PLACITELLA:
14      Q.   And then, lastly, it talks about
15  returning the micrographs.  Do you have those?
16          MR. FARRELL:  Objection to form.
17          THE WITNESS:  I don't know if we found
18  these micrographs.  I don't think we have.
19  BY MR. PLACITELLA:
20      Q.   Okay.  Now, can you go to your -- to
21  Tab 28?  Do you have that, see that?  That's a
22  document entitled "Talc Meeting 5-17-79," in your

Page 648

1   P-15.
2       A.   Yes.
3       Q.   Correct?
4       A.   Yes.
5       Q.   And can you turn over to the next page,
6   please?
7           Do you see at the very top where it says,
8   "Asbestos fiber is present"?
9       A.   Yes, I see that.
10      Q.   Okay.  Do you know where the report or
11  conclusions are or data that would lead to that
12  conclusion, asbestos fiber is present?
13          MR. FARRELL:  Objection to form,
14  foundation, beyond the scope of the notice.
15          THE WITNESS:  I -- I don't know what that
16  first bullet means.  I -- it says asbestos fiber is
17  present.  I don't know what it meant at the time, I
18  don't know what it means now, and I really can't
19  answer that.
20  BY MR. PLACITELLA:
21      Q.   Okay.  Can we go to your Tab 21?  Do you
22  see that?

Page 649

1       A.   Yes.
2       Q.   This is a March 23, 1979, memo from
3   Triglia to Hemstock.  Correct?
4       A.   Yes.
5       Q.   And it's entitled "Talc Investigation."
6   Do you see that?
7       A.   Yes.
8       Q.   It says, "38 rock samples were taken from
9   ten working areas at the Johnson mine.  The samples
10  were received on Friday, March 16th, and are now
11  being processed, i.e., crushed, dried, pulverized and
12  split down to a manageable size.
13          "The processed samples will be shipped to
14  Georgia Tech for qualitative transmission electron
15  identification and confirmation of contaminant
16  materials by selected area diffraction analysis."
17          Did I read that correctly?
18      A.   Yes.
19      Q.   "This work will be given a second order
20  of priority.  It is expected the electron diffraction
21  work will be completed in ten days to two weeks after
22  receipt of the samples, and results will be phoned to

MAGNA
LEGAL SERVICES

Page 650

1    us on or about April 10th."
2        Do you see that?
3    A.   Yes.
4    Q.   Where are the results of those samples
5    that were arrived at on or about April 10th --
6        MR. FARRELL:  Objection to form and
7    foundation.
8    BY MR. PLACITELLA:
9    Q.   -- of the rock samples?
10   A.   I'm sorry.  Can I read this again?
11   Q.   Yes, sir.
12       (Witness reading over the document.)
13   A.   I'd have to look and see.  I know we got
14   a lot of information.  Again, I didn't prepare for
15   this deposition by memorizing all the contents of the
16   various documents.  We got a lot of information from
17   Georgia Tech.
18       Actually, this doesn't say they are
19   looking at rock samples.  It says that the materials
20   were crushed and turned into -- made into samples.
21   So, I don't know that they were actually looking at
22   rock samples.

Page 651

1    Q.   Do you see the first three words that
2    says "38 rock samples"?
3    A.   Yes.  And then they say, "They are now
4    being processed, i.e., crushed, dried, pulverized and
5    split down to manageable size."
6    Q.   They are taking the rocks and they're
7    pulverizing them.  Isn't that what they're doing?
8    And then they're doing a test with an electron
9    microscope to see if there is something in there.
10       MR. FARRELL:  Objection to form and
11   foundation.
12       THE WITNESS:  So, I would think that that
13   may be the results that we got back from Georgia
14   Tech.  I would have to look and see how the dates
15   line up.  But I haven't memorized it in any way.
16   BY MR. PLACITELLA:
17   Q.   I understand that.  I'm just trying to
18   figure out where the documents are, and that's why
19   I'm asking these questions.  I am not trying to --
20   all right?
21       As you sit here today, have you produced
22   the test results from the 38 rock samples that were

Page 652

1    done at Georgia Tech?
2        MR. FARRELL:  Objection to form,
3    foundation, beyond the scope of the notice.
4        THE WITNESS:  I don't know.  As I said,
5    we produced results from Georgia Tech, and I presume
6    that those would be the same ones.
7    BY MR. PLACITELLA:
8    Q.   Can you look at that over lunch break and
9    see if they are the same ones?
10   A.   If I have time, I will.
11   Q.   Then, on the next page --
12       MR. FARRELL:  Are you asking me to talk
13   to him about that?
14       MR. PLACITELLA:  No.  I'm just asking him
15   to look himself, unless you -- the only way he can
16   know it from you, and you can tell him.
17       MR. FARRELL:  I'm just trying to clarify
18   what your question is.
19       MR. PLACITELLA:  I was asking if he could
20   look and tell me.  I didn't ask him to talk to you
21   about it.
22   BY MR. PLACITELLA:

Page 653

1    Q.   Can you go to the next page, please, on
2    No. 5.  It says, "Next in order of priority is the
3    mineralogic characterization of the 38 rock samples
4    taken at the mine.  This will involve x-ray analysis
5    from mineral identification in thin section
6    preparation by D.M. Organist Delaware from
7    microscopic analysis to determine contaminant or
8    trace minerals."
9        Do you see that?
10   A.   Yes.
11   Q.   Have you -- have you produced those
12   results here today?
13       MR. FARRELL:  Objection to form and
14   foundation.
15       THE WITNESS:  We haven't produced them,
16   and I don't know if it was ever done.  It just says
17   it was in priority to be done.  I don't know that it
18   was ever done.
19   BY MR. PLACITELLA:
20   Q.   How would we find that out?
21   A.   We haven't found it, so I don't know that
22   they exist.

MAGNA
LEGAL SERVICES

Page 654

1    Q.   Well, the only way we'd know is if you
2  had all the documents.  Right?
3       MR. FARRELL:  Objection to form,
4  foundation, and calls for speculation.
5       THE WITNESS:  I don't know if we would
6  ever know if we had all the documents.  I don't know.
7  BY MR. PLACITELLA:
8    Q.   It says it's going to be done, sir.  Do
9  you -- have you seen anything that would raise a
10 question in your mind that it was not done?
11      MR. FARRELL:  Objection to form,
12 foundation.
13      THE WITNESS:  I haven't seen anything
14 that makes me think it was done, so I don't know.
15 BY MR. PLACITELLA:
16   Q.   Except that it was already put in the
17 business record that it was going to be done.
18 Correct?
19      MR. FARRELL:  Objection to form,
20 foundation.
21      THE WITNESS:  That's done often.
22 BY MR. PLACITELLA:

Page 655

1    Q.   Okay.  Have you identified, in producing
2  documents for today's deposition, any records
3  indicating what parts of the mine were studied
4  specifically by Dr. Hemstock and Dr. Gale during the
5  1978 and 1979 visit?
6       MR. FARRELL:  Objection to form,
7  foundation.
8       THE WITNESS:  I -- I don't remember.  I
9  don't know.
10 BY MR. PLACITELLA:
11   Q.   Do you have any records as to whether
12 they studied the main ore body or some other area of
13 the mine when they took the samples?
14      MR. FARRELL:  Same objections.
15      THE WITNESS:  I don't know.
16 BY MR. PLACITELLA:
17   Q.   Do you have any records indicating what
18 rock type they looked at?
19      MR. FARRELL:  Same objections.
20      THE WITNESS:  I'm not sure what you mean
21 by rock type, but I don't know that we have that type
22 of information.

Page 656

1  BY MR. PLACITELLA:
2    Q.   Have you seen any records concerning the
3  conclusions that were reached as a result of their
4  study?
5       MR. FARRELL:  Objection to form,
6  foundation, asked and answered.
7       THE WITNESS:  From that specific study, I
8  don't know that we have their specific conclusions,
9  but we do have information that was prepared by Gale
10 that summarized the talc investigation.  We've
11 produced several documents that relate to the
12 conclusions of the talc studies.
13 BY MR. PLACITELLA:
14   Q.   If you have conclusions -- documents that
15 would have conclusions about what was found, would
16 that be significant?
17      MR. FARRELL:  Objection to form,
18 foundation, calls for speculation.
19      THE WITNESS:  I'm just not sure what you
20 mean by the question.
21 BY MR. PLACITELLA:
22   Q.   If there were -- if there were documents

Page 657

1  with conclusions about exactly what was found, where
2  the testing happened, how much was asbestos, how much
3  wasn't, would that be important?
4       MR. FARRELL:  Objection to form,
5  foundation, calls for speculation, beyond the scope
6  of the notice, vague as to important as to what.
7       THE WITNESS:  I don't know.  It depends
8  on what the report said.
9  BY MR. PLACITELLA:
10   Q.   Okay.  Let me -- I don't -- I want to do
11 this one at a time with the samples.  I have one
12 follow-up question for the last time, and then I want
13 to go through each of these samples, if that works
14 for you.  Okay?
15   A.   Yes.
16   Q.   We identified -- and I'm not sure what
17 exhibit number it is, maybe you could grab it -- the
18 test that was done by RJ Lee from 1993.  Do you know
19 what I'm talking about?
20   A.   Yes.
21   Q.   Okay.  What proof do you have that that
22 sample that was tested by RJ Lee actually came from a

MAGNA▶
LEGAL SERVICES

Page 658

1  bag of EMTAL talc?
2        MR. FARRELL:  Objection to form.
3        THE WITNESS:  As part of a chain of
4  custody, we have a letter from Cahill to RJ Lee
5  stating where the samples originated, how they were
6  put in the bags.
7  BY MR. PLACITELLA:
8     Q.  Well, I didn't -- I understand you said
9  that, but how do we know the sample that Cahill had
10  actually came from a bag of EMTAL talc?
11        MR. FARRELL:  Objection to form.
12  BY MR. PLACITELLA:
13     Q.  I didn't see anything that told us that.
14        MR. FARRELL:  Objection to form,
15  foundation.
16        THE WITNESS:  I would have to look at the
17  letter, but I believe it said it came from an EMTAL
18  bag.
19  BY MR. PLACITELLA:
20     Q.  Who took that sample?  I didn't see
21  where -- where did the bag come from?
22     A.  I don't know that.

Page 659

1     Q.  I'm trying to understand what proof we
2  have that what was sampled was actually a bag of
3  EMTAL talc versus something else.  What's the proof?
4        MR. FARRELL:  Objection to form.
5        THE WITNESS:  The proof we have is that,
6  when Cahill sent it to RJ Lee, they stated it was
7  from an EMTAL bag.
8  BY MR. PLACITELLA:
9     Q.  But how does Cahill prove that?  I mean,
10  that's that I am trying to understand.  How does
11  it -- what's the proof that it was from an EMTAL bag?
12        MR. FARRELL:  Objection to form,
13  foundation.
14        THE WITNESS:  I guess I couldn't -- if
15  somebody said -- in one of these depositions,
16  somebody said they pulled a rock from the mine, I
17  couldn't prove that they did other than to believe
18  what they said.
19  BY MR. PLACITELLA:
20     Q.  Well, who pulled the talc from the bag?
21  Where did the bag come from?  That's what I'm trying
22  to understand.

Page 660

1        MR. FARRELL:  Objection to form.
2        THE WITNESS:  Well, this happened about
3  15 years ago, but it was sent by a Michael Sullivan
4  at Cahill to RJ Lee.
5  BY MR. PLACITELLA:
6     Q.  So, did he pull the talc from the bag?
7        MR. FARRELL:  Objection to form.
8        THE WITNESS:  I don't know.  We may have
9  more information.  I don't know the details of how it
10  was pulled.  People may know that.  I don't know
11  that.
12  BY MR. PLACITELLA:
13     Q.  How do I find that out?  I'm here to ask
14  you about that today.
15     A.  I can ask counsel.
16     Q.  Okay.  That one, I'll allow you to ask
17  him at lunchtime.  How's that?
18        What's the next -- pick any other sample.
19  We're going to go through them all.
20        MR. FARRELL:  Do you want me to discuss
21  that with him on the lunch break?
22        MR. PLACITELLA:  You can tell him, if you

Page 661

1  know, that specific issue, or you can tell us now.
2  Whatever you what.
3        MR. FARRELL:  He's here to answer your
4  questions.  Do you have a question?
5        MR. PLACITELLA:  That's part of the
6  issue.
7        MR. FARRELL:  He's responded to your
8  question.  What's your next question?
9  BY MR. PLACITELLA:
10     Q.  All right.  So, as we sit here today, you
11  don't have any actual proof that the sample that was
12  sent by Michael Sullivan was taken from an EMTAL bag.
13  Correct?
14        MR. FARRELL:  Objection to form,
15  foundation, misstates Mr. Steinmetz's testimony.
16        THE WITNESS:  From a legal perspective, I
17  don't know what you mean by "actual proof."
18  BY MR. PLACITELLA:
19     Q.  Well, you don't know who took the sample
20  out of the bag.
21     A.  We have a --
22        MR. FARRELL:  Objection.  Objection to

MAGNA
LEGAL SERVICES

Page 662

1  form, foundation, harassing the witness.
2      THE WITNESS:  We have a statement that
3  says that a sample was taken from an EMTAL bag.
4  BY MR. PLACITELLA:
5      Q.   But we don't know who took the sample and
6  when.  Correct?
7      MR. FARRELL:  Same objections, asked and
8  answered.
9      THE WITNESS:  With respect to chain of
10  custody, it's not necessary to identify exactly who
11  pulled the sample and -- and the details of how it
12  was transferred.  The important part is to identify
13  the sample.
14  BY MR. PLACITELLA:
15      Q.   So, it's not important to figure out
16  whether they actually took the sample from a bag of
17  EMTAL talc and what the proof of that is?  That's
18  your testimony?
19      MR. FARRELL:  Objection to form,
20  argumentative.
21      THE WITNESS:  I believe them.
22  BY MR. PLACITELLA:

Page 663

1      Q.   You believe who?
2      A.   The statement from Cahill that it was
3  taken from EMTAL.
4      Q.   And you don't know what Cahill's
5  information is, and you never asked where it came
6  from.  Correct?
7      MR. FARRELL:  Objection to form.
8      THE WITNESS:  Correct.
9  BY MR. PLACITELLA:
10      Q.   Okay.  Take any other sample in order
11  that's over there, and we'll just identify them and
12  go through them.  Pick the next one until we are all
13  done.
14      A.   Well, the first sample, the first --
15      MR. FARRELL:  I don't want to -- you can
16  do this however you want to do it, but do you want to
17  take five minutes?  We have been going for an hour.
18  He can bring the samples over, just walk through
19  them.  It may be faster.
20      MR. PLACITELLA:  That's fine.  That's
21  fine.  We can do it that way.
22      THE VIDEOGRAPHER:  The time is now

Page 664

1  12:03 p.m.  We're going off the record.
2      (Recess taken.)
3      THE VIDEOGRAPHER:  The time is now
4  12:13 p.m.  We're back on the record.
5  BY MR. PLACITELLA:
6      Q.   Before I turn to the samples, you had
7  pointed before to a tab in P-15 that you said had the
8  results of the study that Gale and Hemstock did of
9  the mine.  Can you show me what -- tell me what tab
10  that was?
11      A.   No.  I think it was P-50 of the Hemstock.
12      Q.   P-50?
13      A.   Yes.
14      Q.   Okay.  Are you sure it was P-50?  I just
15  want to make sure we are on the same -- the P-50 I
16  have as -- I'm not going to spend time on it now.
17  I'll look at it later -- the P-50 I have as a
18  March 23, 1979, memo from Triglia to Hemstock.  Is
19  that what you're talking about?
20      A.   No.  I'm talking about an April 11 --
21      MR. FARRELL:  I think there's multiple
22  documents behind that tab.

Page 665

1      THE WITNESS:  -- memorandum.  It is at
2  the back of the tab.  It's an April 11, 1979,
3  memorandum from Gale to Triglia, "Talc Investigation
4  Review and Update."  It's at the very back.
5  BY MR. PLACITELLA:
6      Q.   Okay.  So, we're on the same page.
7      A.   I'm not sure if I said it was a summary
8  of the mine study.  I said it was a summary of the
9  talc studies that Gale had been working on.
10      Q.   Well, I'll --
11      A.   An update of the studies.
12      Q.   I'll look at it over -- so we don't spend
13  time now.
14      All right.  What is the next -- which one
15  do you want to do first?
16      A.   So, the first one in front of me is a
17  pair of samples that came from what used to be
18  McCrone, it's now McCrone Institute, being handled
19  through a derivative of that company, Microtrace.
20      Q.   Okay.
21      A.   And these are two samples that were
22  originally submitted to McCrone in 1973 as part of

Page 666

1    McCrone Project MA 3360.
2       Q.   Okay.  And they came from where to
3    McCrone?
4       A.   They were sent from Engelhard in 1973 to
5    McCrone.  They were samples from the Johnson mine.
6       Q.   Are they samples from the mine or from
7    the production after the talc was processed?
8            MR. FARRELL:  Objection to form,
9    foundation.
10           You can answer the question if you can.
11           Don't the production -- doesn't the
12   production talc come from the mine?
13           MR. PLACITELLA:  I'm asking for specific
14   reasons.
15           MR. FARRELL:  Okay.
16           THE WITNESS:  There were samples of EMTAL
17   42 and EMTAL 500.
18   BY MR. PLACITELLA:
19      Q.   Okay.  And do you know what part of the
20   mine those -- the ore came from that was used for --
21   for those samples?
22      A.   I don't know.  These are 40 years old.  I

Page 667

1    don't know.
2       Q.   Who would know that?  Who could we ask?
3            MR. FARRELL:  Objection to form, calls
4    for speculation.
5            THE WITNESS:  I don't know that anybody
6    knows.
7    BY MR. PLACITELLA:
8       Q.   Do we know what level of the mine it was
9    taken from?
10           MR. FARRELL:  Objection to form.
11           THE WITNESS:  It would be speculation for
12   me to say.
13   BY MR. PLACITELLA:
14      Q.   You understood that the Johnson EMTAL
15   mine had different levels?
16      A.   Yes.
17      Q.   And you understand that you could find a
18   constituent in one level and not another one, it's
19   possible?
20           MR. FARRELL:  Objection to form,
21   foundation, beyond the scope of the notice.  I don't
22   think he's an expert in geology.

Page 668

1            THE WITNESS:  I don't know.  I'm not a
2    geologist.
3    BY MR. PLACITELLA:
4       Q.   Do you know what the criterion was for
5    selecting those samples?
6       A.   They wanted samples of M 42 and M 500.
7       Q.   Do you know what kind of rock those
8    samples came from at the mine?
9       A.   It would have been from the talc in the
10   mine.  I don't know.
11      Q.   But you don't know whether it was
12   chlorate rock or serpentine rock or anything else?
13      A.   I'm not a geologist.
14      Q.   How would we find that out?
15           MR. FARRELL:  Objection to form.  Calls
16   for speculation.
17           THE WITNESS:  I don't know.
18   BY MR. PLACITELLA:
19      Q.   When were the samples taken?
20      A.   Well, they would have been taken on or
21   around 1973.
22      Q.   How do we know that for sure?

Page 669

1            MR. FARRELL:  Objection to form.
2    BY MR. PLACITELLA:
3       Q.   How do we know it's not a bag that was
4    sitting there for three years?
5            MR. FARRELL:  Objection to form, calls
6    for speculation.
7            THE WITNESS:  I don't know.
8    BY MR. PLACITELLA:
9       Q.   Who took the samples?
10      A.   They were taken by somebody at Engelhard
11   at the time and submitted to McCrone.
12      Q.   Who was that?
13      A.   I don't know.
14      Q.   Is there a chain of custody from
15   Engelhard to McCrone telling us where the samples
16   came from and -- to McCrone?
17           MR. FARRELL:  Objection to form.
18           THE WITNESS:  Again, chain of custody
19   typically starts with sending the sample out to
20   the -- out to whoever is doing the work.  We have a
21   letter from -- we have various documents from
22   Engelhard stating that they're sending the

MAGNA
LEGAL SERVICES

Page 670

1    information to McCrone, and McCrone received it.  And
2    then McCrone reported back subsequently on the
3    results of their studies.
4    BY MR. PLACITELLA:
5        Q.  But who took the samples?
6        A.  Somebody at Engelhard.
7        Q.  We don't know?
8            MR. FARRELL:  Objection to form.
9    Harassing the witness.
10           THE WITNESS:  That's right.  I don't
11   know.
12   BY MR. PLACITELLA:
13       Q.  Is there any documentation that could
14   tell us that?
15           MR. FARRELL:  Objection to form, asked
16   and answered.
17           THE WITNESS:  I don't know.  I don't know
18   if any was ever made.
19   BY MR. PLACITELLA:
20       Q.  If there was a notebook that told us that
21   that no longer exists, that would be important
22   evidence, don't you think?

Page 671

1            MR. FARRELL:  Objection to form,
2    foundation, calls for speculation.
3            THE WITNESS:  I don't know.
4    BY MR. PLACITELLA:
5        Q.  Okay.  Can you give me -- can you go to
6    the next set of samples, please?
7            Were they marked, those samples, by the
8    way?
9        A.  Yes, they were marked.  There is a strong
10   chain of custody for what happened to them.
11       Q.  I mean marked for this deposition.
12           MR. FARRELL:  I think that -- I think
13   that Jared either marked them or read them in at the
14   inspection.
15           MR. PLACITELLA:  I just want to make
16   sure, when we are going back, we have -- so, can we
17   give them a mark if there -- is there any marking on
18   them?
19           THE WITNESS:  There are markings, but --
20   BY MR. PLACITELLA:
21       Q.  An exhibit number?
22       A.  -- but no exhibit number, at least on the

Page 672

1    package.
2            MR. PLACITELLA:  Can we give it the next
3    exhibit number?
4            MR. FARRELL:  These are the original
5    samples, so they have been read into the record as
6    part of the document inspection.
7            MR. PLACITELLA:  So, can we mark them
8    just so we know what we are dealing with?  Is there a
9    problem with marking the bag with the exhibit number?
10           MR. FARRELL:  Microtrace is going to want
11   them back is the issue.  So, it's up to you.
12           MR. PLACITELLA:  We'll have to deal with
13   that with the judge.  Why don't we mark them anyhow.
14           What's the next exhibit number?
15           THE REPORTER:  36.
16           MR. PLACITELLA:  Can we put a little 36
17   on there, please?
18           THE WITNESS:  Along with these two
19   samples, by the way, are two samples of the same
20   material that was used by Micky Gunter to do a
21   subsequent analysis of the same material.
22           MR. PLACITELLA:  All right.  So, we'll

Page 673

1    call it -- what was that number again?
2            THE REPORTER:  36.
3            MR. PLACITELLA:  36A and B.  B will be
4    the Gunter.
5            THE WITNESS:  Sure.
6            (Plaintiff's Exhibit Nos. 36A and
7             36B, pair of rock samples taken
8             from the Johnson mine of EMTAL 42
9             and EMTAL 500, submitted to
10            McCrone from Engelhard in 1973,
11            were marked for identification.)
12   BY MR. PLACITELLA:
13       Q.  Okay.  What is the next one you've got?
14       A.  The next set of samples are three
15   sample -- rock samples obtained from Ed Lomas, who
16   worked at the mine in the late '70s and early '80s.
17           MR. PLACITELLA:  Okay.  Can we just mark
18   those, what, 37?
19           THE WITNESS:  Yes.  These are A, B, and
20   C.  And along with those, we also have three ground
21   samples taken from those that are currently under the
22   chain of custody of Mickey Gunter.

MAGNA
LEGAL SERVICES

Page 674

1       MR. PLACITELLA:  All right.  So, let's
2   do -- what was that number?
3       THE REPORTER:  The next would be 37.
4       MR. PLACITELLA:  So, let's do 37A through
5   whatever, and just -- so we all know what we are
6   dealing with.
7              (Plaintiff's Exhibit Nos. 37A,
8              37B, 37C, three talc rock samples
9              obtained from Ed Lomas at Johnson
10             mine in the late '70s and early
11             '80s, were marked for
12             identification.)
13             (Plaintiff's Exhibit Nos. 37D,
14             37E, and 37F, three powder
15             samples currently under the
16             custody of Micky Gunter, were
17             marked for identification.)
18   BY MR. PLACITELLA:
19      Q.   So, how many --
20      A.   So, there are three rock samples and then
21   three ground samples.
22      Q.   So, A, B, C, D, E, and F.  37A, B, C, D,

Page 675

1   E, and F.
2   BY MR. PLACITELLA:
3       Q.   So, why don't you just identify them by
4   exhibit number, specifically what you have.
5       A.   So, Exhibit 37A is a talc rock sample
6   obtained from Ed Lomas.  And he designated that
7   Talc A.
8            37B is another rock sample obtained from
9   Lomas, and he designated that as Talc B.
10           And then No. 37C is a third rock sample
11  obtained from Lomas that he identified as Talc C.
12           37D is a powder sample obtained from
13  Micky Gunter, and that is a powder sample of Talc A,
14  which is 37A.
15           37E is the powder sample of Talc D, which
16  was 37B.
17           And then 37F is the powder sample of
18  Talc C, which was 37C.
19      Q.   Okay.  Thank you.
20           Do you know the circumstances under which
21  samples were provided by Mr. Lomas?
22      A.   He was contacted and asked if he had

Page 676

1   information, and he did have these rock samples.
2       Q.   And where did he have them?
3       A.   Somewhere in his house.  I don't know
4   where specifically.
5       Q.   Okay.  Do you know for how long he had
6   those samples?
7       A.   Well, these were obtained fairly
8   recently, so he would have had them since from --
9   either from 1976 through 1983 sometime.
10      Q.   Is it your understanding these are
11  samples of rock that was taken from the mine?
12      A.   Yes.
13      Q.   Okay.  Do you know where in the mine they
14  were taken from?
15      A.   From either Levels 4 or 5.
16      Q.   Okay.  And how do you know that?
17      A.   He wrote a declaration regarding the
18  origin of the samples and how he had taken them.
19      Q.   How would we know whether it was 4 or 5?
20      A.   He said that in his declaration.
21      Q.   Right, but -- so, he couldn't be more
22  specific?  He said it was either 4 or 5?

Page 677

1       A.   That's what he said, yes.
2       Q.   Okay.  And do you know what part of the
3   ore body he took it from?
4       A.   I don't know.  He may have said in the
5   declaration, but I don't know that.
6       Q.   Did he take it from the main ore body?
7       A.   I'd have to read the declaration again.
8   I'm not sure.
9       Q.   All right.  Do you -- do you know what
10  criteria there was for taking those samples?
11      A.   I think he wanted to take samples as a
12  memento of his work there, I think.
13      Q.   We don't know what part of the mine in
14  Levels 4 or 5, they came from.  Is that fair?
15      A.   I don't think we know specifically.
16      Q.   And we don't know exactly when they were
17  taken.  Correct?
18      A.   Correct.  We know between '76 and '83.
19           MR. FARRELL:  I don't mean to interrupt,
20  but I think you may have misspoken about which
21  levels.
22           I just wanted to raise the issue for you,

MAGNA
LEGAL SERVICES

Page 678

1    Mr. Placitella.
2           MR. PLACITELLA:  Okay.
3    BY MR. PLACITELLA:
4       Q.   Did you say something wrong?
5       A.   I don't know.
6           MR. FARRELL:  You were saying 4 and 5.
7    I'm not sure if that was 4 or 5.
8           THE WITNESS:  It may be 4 and 5, I'm not
9    sure, or 5 and 6.  I don't know.
10   BY MR. PLACITELLA:
11      Q.   So, you don't know?
12          MR. FARRELL:  It is in the declaration.
13          THE WITNESS:  It's in the declaration.  I
14   think it is 5 and 6, or 5 or 6, one of the two.
15   BY MR. PLACITELLA:
16      Q.   What part of 5 and 6?
17      A.   I don't know.
18      Q.   Was it from the wall, from the main ore
19   body?  Where?
20      A.   I don't know.
21      Q.   Was it from the part of the mine where
22   they produced the product or from the side wall,

Page 679

1    what?  Do you know?
2       A.   I don't know.
3       Q.   Who would know?
4       A.   Lomas might know.
5       Q.   Is that in his declaration, exactly where
6    in the mine it was taken from?
7       A.   I'd have to read it again.
8           MR. PLACITELLA:  Do I have that?
9           MR. FARRELL:  I believe so.  I'm getting
10   a copy now.
11          MR. PLACITELLA:  I'll look at it over
12   lunchtime so we don't waste a lot of time here.
13   BY MR. PLACITELLA:
14      Q.   What other samples do you have?
15      A.   We have the samples that we have already
16   discussed, the three samples from the EMTAL bag that
17   Cahill sent to RJ Lee for analysis in 1993.
18          And then along with those, we have ground
19   samples of those, or powder samples, that were
20   obtained from Micky Gunter as part of his analysis.
21      Q.   From the RJ Lee samples from 1993?
22      A.   Yes.

Page 680

1       Q.   Okay.  So, any questions I would have
2    asked you about the RJ Lee samples would apply to the
3    samples from -- that Gunter did his analysis.  Is
4    that fair?
5           MR. FARRELL:  Objection to form.
6           THE WITNESS:  I would think so.
7    BY MR. PLACITELLA:
8       Q.   So, we have three sets of samples as we
9    sit here today with derivatives.  Correct?  We have
10   the RJ Lee samples from 1993, allegedly.  Correct?
11      A.   From 1993, yes.
12      Q.   Okay.  We have samples from McCrone from
13   '72-'73?
14      A.   Yes.
15      Q.   Okay.  And we have the Lomas samples.
16   Correct?
17      A.   Yes.
18      Q.   That's it?
19          MR. FARRELL:  Objection to form.
20   Misstates the record.
21          THE WITNESS:  Those are the ones with --
22   as you mentioned, derivatives.  By that, I think you

Page 681

1    meant the powder.
2    BY MR. PLACITELLA:
3       Q.   Correct.
4       A.   But we have other samples.
5       Q.   In addition to the ones we just
6    identified?
7       A.   Yes.
8       Q.   What else?
9       A.   We have a sample from Micky Gunter that
10   he obtained in his investigations.  This is a talc
11   sample --
12      Q.   Can we just mark that, please, so we are
13   all talking about the same thing?  What's in your
14   hand, we want to mark it.
15          The next exhibit, please.
16      A.   Sure.  Yes.
17             (Plaintiff's Exhibit No. 38, talc
18             rock sample obtained by Micky
19             Gunter from Leslie White, was
20             marked for identification.)
21          MR. FARRELL:  Mr. Placitella, this is the
22   Lomas declaration that Mr. Steinmetz referenced.

MAGNA
LEGAL SERVICES

Page 682

1      MR. PLACITELLA: I'll look at it over a
2  break.
3      MR. FARRELL: I didn't want --
4      MR. PLACITELLA: I'm not fighting with
5  you. I'll look it over.
6      MR. FARRELL: I didn't want you to leave
7  and to then say --
8      MR. PLACITELLA: It is whatever it is.
9      MR. FARRELL: All right.
10  BY MR. PLACITELLA:
11     Q.   Okay. Do you have a number on that now?
12     A.   Yes, it is P-38.
13     Q.   And what is that?
14     A.   This is a rock sample that Micky Gunter
15  obtained from Leslie White, who lived in the Johnson
16  area, who had obtained a -- who says she had obtained
17  this rock sample.
18     Q.   When was this sample obtained?
19     A.   This would have been obtained in 2012.
20     Q.   And who is Leslie White?
21     A.   She is a person who lived in the area of
22  the Johnson mine, and she obtained a rock sample from

Page 683

1  somebody who worked there, apparently.
2      Q.   Who currently works there, you say?
3      A.   Who worked there at the time.
4      Q.   So, Leslie got it from somebody else.
5  Who did she get it from?
6      A.   I don't know.
7      Q.   Do we know?
8      A.   Micky Gunter may know. I don't know.
9      Q.   We don't have a name?
10     MR. FARRELL: Objection to form.
11     THE WITNESS: We have the name Leslie
12  White. That's it.
13  BY MR. PLACITELLA:
14     Q.   So, Micky Gunter got it from Leslie, who
15  got it from somebody else. So, we don't have his
16  name.
17     MR. FARRELL: Objection to form --
18  BY MR. PLACITELLA:
19     Q.   Is that fair?
20     MR. FARRELL: Objection to form and
21  foundation.
22     THE WITNESS: We may have the person's

Page 684

1  name. I don't know it.
2  BY MR. PLACITELLA:
3      Q.   And when did he work there?
4      A.   I don't know.
5      Q.   Where did he get it from?
6      A.   I don't know who he is, so I don't know.
7      Q.   What part of the mine?
8      A.   I don't know.
9      Q.   What level of the mine?
10     A.   I don't know who he is, so, I don't know.
11     Q.   What part of the rock?
12     A.   I don't know.
13     Q.   How are we going to rely on this sample
14  means anything?
15     MR. FARRELL: Objection to form,
16  foundation, argumentative.
17     THE WITNESS: I don't know if we can rely
18  on it. I'm just saying this is a sample that we
19  have.
20  BY MR. PLACITELLA:
21     Q.   Okay. And do we know whether it came
22  from the mine ore -- main ore body or the

Page 685

1  outcroppings, or it was just sitting outside the
2  mine?
3      MR. FARRELL: Objection to form.
4      THE WITNESS: I don't know.
5  BY MR. PLACITELLA:
6      Q.   Who would know?
7      MR. FARRELL: Objection to form.
8      THE WITNESS: Who would know what?
9  BY MR. PLACITELLA:
10     Q.   Where the sample came from, who took it
11  out, when it was taken.
12     A.   I don't know that anybody knows that.
13  Micky Gunter might know somebody who knows it, having
14  talked to Leslie White, but I don't know if anybody
15  knows it.
16     Q.   As part of your investigation, did you
17  ask Micky Gunter any of those questions?
18     A.   No.
19     Q.   So, we don't know what Micky Gunter might
20  know.
21     MR. FARRELL: Objection to form and
22  foundation.

**MAGNA** ▶
LEGAL SERVICES

Page 686

1       THE WITNESS:  We might know from his
2  testimony.  I don't know.
3  BY MR. PLACITELLA:
4       Q.   Is there testimony about this rock that I
5  don't know about, that he got from Leslie, who got it
6  from somebody else who worked there?
7       MR. FARRELL:  Objection to form.
8       THE WITNESS:  I believe there might be,
9  but I don't -- I haven't seen any.
10  BY MR. PLACITELLA:
11       Q.   Okay.  Do you have any other samples?
12       A.   One other sample.  This is also from
13  Micky Gunter, and this is a sample that he obtained
14  from the University of Vermont.  He had contacts at
15  the University of Vermont, having been -- or having
16  had some type of appointment there.  And he was given
17  a sample that was purportedly from the Johnson mine.
18       MR. PLACITELLA:  Okay.  And can we mark
19  that, please?
20       (Plaintiff's Exhibit No. 39,
21       rock sample reportedly taken from
22       the Johnson mine obtained by

Page 687

1       Micky Gunter from University of
2       Vermont, was marked for
3       identification.)
4  BY MR. PLACITELLA:
5       Q.   What's the number?
6       A.   39.
7       Q.   What's your source of information as to
8  where Micky Gunter got this from?
9       MR. FARRELL:  Objection to form.
10       THE WITNESS:  From where he got it, my
11  source is counsel, who spoke with him.
12  BY MR. PLACITELLA:
13       Q.   You didn't speak to him yourself?
14       A.   Correct.
15       Q.   And do you know when he obtained the
16  sample?
17       A.   The beginning of the chain of custody is
18  4-17-2012.
19       Q.   Okay.  And do we -- is that the only
20  sample that the University has?
21       MR. FARRELL:  Objection to form,
22  foundation, beyond the scope.

Page 688

1  BY MR. PLACITELLA:
2       Q.   Do you know?
3       A.   I don't know.  I don't know.
4       Q.   Okay.  And do you know who at the
5  university obtained that sample and how they got it?
6       A.   I don't know.
7       Q.   Who would know?
8       A.   Micky Gunter may know.  I don't know.
9       Q.   Did you ask Micky Gunter, knowing that we
10  had to attempt to figure out chain of custody as we
11  were sitting here?
12       MR. FARRELL:  Objection to form,
13  argumentative.
14       THE WITNESS:  No.
15  BY MR. PLACITELLA:
16       Q.   Do you know when it was taken from the
17  mine?
18       A.   No.
19       Q.   Do we know where it was taken from the
20  mine?
21       A.   I don't know if we do.  I don't.
22       Q.   Does BASF know?

Page 689

1       A.   I don't know.
2       Q.   Do we know who extracted it from the
3  mine?
4       A.   I don't know.
5       Q.   Do we know if it actually came from the
6  mine?
7       MR. FARRELL:  Objection to form.
8       THE WITNESS:  I can only rely on what
9  Micky Gunter has -- has said.  I don't -- I didn't
10  personally take it, so, I don't know anything more
11  than that, except that he says that he got it from
12  somebody who said it came from the Johnson mine.
13  BY MR. PLACITELLA:
14       Q.   Do we know what the criteria was for
15  obtaining that sample?
16       MR. FARRELL:  Objection to form.
17       THE WITNESS:  I don't know.
18  BY MR. PLACITELLA:
19       Q.   Do we know whether it came from the main
20  ore body?
21       A.   I don't know.
22       Q.   Do we know whether it came from the part

MAGNA
LEGAL SERVICES

Page 690

1    of the mine that was used to produce EMTAL talc?
2         MR. FARRELL:  Objection to form,
3    foundation, beyond the scope.
4         THE WITNESS:  I don't know.
5    BY MR. PLACITELLA:
6      Q.   Do we know what kind of rock it came
7    from?
8         MR. FARRELL:  Objection to form and
9    foundation.
10        THE WITNESS:  I don't know.  I'm not a
11   geologist.
12   BY MR. PLACITELLA:
13     Q.   Okay.  Do you know whether Gunter
14   obtained a chain of custody from the University
15   providing any of that information?
16     A.   I don't know.
17     Q.   Do you have any other samples?
18     A.   That is all.
19        MR. PLACITELLA:  Okay.  Is this a good
20   time for a lunch break or do you want to keep going?
21        MR. FARRELL:  We can take lunch now.
22        Are you done with the samples?  Are you

Page 691

1    moving to something different?
2         MR. PLACITELLA:  I think I'm done.  I'll
3    have to go back and look, but I think I'm done.
4         I want to read Lomas' declaration to see
5    if I have any questions about it.
6         MR. FARRELL:  Well, his declaration is
7    like ten lines of text.
8         MR. PLACITELLA:  I know, but I'm very,
9    very slow, as you know.  It takes me a while to do
10   things.  So, I'll do it over the break.
11        MR. FARRELL:  I have noticed that.
12        MR. PLACITELLA:  Yeah, it's a problem
13   but, you know...
14        I'll do it over lunch so we don't waste
15   anybody's time.
16        So, if you want to take a break now, it's
17   fine.
18        THE WITNESS:  Sure.
19        MR. PLACITELLA:  Tell me a good place to
20   go that's quick so we can keep going as fast as you
21   can, or are you just going to turn me out into
22   Washington, D.C., and try to figure it out?

Page 692

1         MR. FARRELL:  There are plenty of places
2    to eat.  I'm sure you'll find one.
3         Are we off the record?
4         MR. PLACITELLA:  Thank you so much for
5    helping me.
6         THE VIDEOGRAPHER:  The time is 12:41 p.m.
7    We are going off the record.
8         (Recess taken.)
9         THE VIDEOGRAPHER:  Stand by, please.
10        The time is now 1:38 p.m.  We are back on
11   the record.
12        (Plaintiff's Exhibit No. 40,
13        Declaration of Edward Lomas dated
14        April 4, 2013, was
15        marked for identification.)
16        (Plaintiff's Exhibit No. 41,
17        transcript of videotape
18        deposition of William Grassley
19        taken on June 17, 2014, was
20        marked for identification.)
21        (Plaintiff's Exhibit No. 42,
22        document entitled Stipulation and

Page 693

1         Order of Confidentiality, Bates
2         stamped
3         BASF_SAMPSON000025203-2509, was
4         marked for identification.)
5    BY MR. PLACITELLA:
6      Q.   Good afternoon.
7      A.   Hi.
8      Q.   This morning, you recall we went over the
9    documents concerning the study that was done by
10   Dr. Hemstock and Mr. Gale up at the mine.  We went
11   over the documents that were missing in the Triglia
12   transcript.  Do you recall that?
13     A.   Yes.
14        MR. FARRELL:  Objection to form.
15   BY MR. PLACITELLA:
16     Q.   And do you recall you said that that
17   didn't matter that much because the results were in
18   Exhibit 50 to the Hemstock deposition.
19        Do you recall that?
20        MR. FARRELL:  Objection to form,
21   foundation, misstates his testimony.
22        THE WITNESS:  I'm not sure that's what I

MAGNA
LEGAL SERVICES

Page 694

1  said.  What -- I didn't say it didn't matter.  What I
2  said was that a lot of the information in a summary
3  of that talc that Gale and Hemstock were doing was
4  available in that document.
5  BY MR. PLACITELLA:
6      Q.   In Exhibit 50?
7          MR. FARRELL:  Objection to form,
8  foundation, misstates his testimony.
9          THE WITNESS:  As part of Exhibit 50.
10  BY MR. PLACITELLA:
11     Q.   And you specifically referred me to this
12  report from Gale, right before we broke, of April 11,
13  1979, from Gale to Triglia.  Do you see that?
14     A.   Yes.
15     Q.   Okay.  And I just want to go through that
16  with you to see if perhaps you were mistaken.
17        It starts --
18        MR. FARRELL:  I'm sorry, Chris.  Just so
19  I understand what you are going back to, are you
20  talking about the Waterbury Talc Inlet document or --
21        MR. PLACITELLA:  No.  I'm talking about
22  the document he referred me to, which was Tab 50 to

Page 695

1  the Hemstock transcript, Bates No. 13154, which is
2  what he pointed to me.
3          MR. FARRELL:  This is on the 38 samples
4  question?
5          MR. PLACITELLA:  Yes, sir.
6  BY MR. PLACITELLA:
7      Q.   So, do you have that in front of you?
8      A.   I have it in front of me, yes.
9      Q.   Do you have the April 11, 1979, memo from
10  Gale to Triglia?
11     A.   Yes.
12     Q.   All right.  Do you see where it starts
13  out, "The following is a review and update on the
14  talc investigation which was initiated in
15  February 1979.  The investigation itself concerns the
16  identification of contaminants in a number of talc
17  production samples using transmission electron
18  microscopy."
19        Do you see that?
20     A.   Yes.
21     Q.   It doesn't talk about mine ore samples.
22  Correct?

Page 696

1          MR. FARRELL:  Objection to form,
2  foundation.
3          THE WITNESS:  No.  I think I mentioned
4  this in -- with respect to the fact that we were
5  talking about samples being taken, sent to Georgia
6  Tech.  And I mentioned that updates were being
7  provided.  I didn't say that the documents that we
8  haven't found weren't important.  I was just saying
9  that they were providing updates on this information.
10  So, I'm not surprised it is not there.
11  BY MR. PLACITELLA:
12     Q.   Right.  And then, if you look down here,
13  I highlighted again, they are talking production
14  samples.  Do you see on the second page?
15     A.   Yes.
16     Q.   And then a little further down it talks
17  about production samples.  Do you see that?
18     A.   Yes.
19     Q.   And then, if you look at the Table 1,
20  which I guess is the actual results, do you see that?
21     A.   Yes.
22     Q.   Okay.  It says, "Data on talc production

Page 697

1  samples from transmission electron microscopy
2  examinations done at Georgia Institute."
3          Do you see that?
4      A.   Yes.
5      Q.   Okay.  So, for example, when they are
6  looking at EMTAL 42 -- by the way, how big is like a
7  milligram, do you know?
8          MR. FARRELL:  Objection to foundation.
9  BY MR. PLACITELLA:
10     Q.   Small?  Smaller than a -- is a milligram
11  bigger or smaller than this cap?
12     A.   It depends on the density and the -- and
13  the weight of the material and everything, the
14  density and the specific gravity of the material.
15     Q.   Okay.  Is it a reasonable approximation?
16     A.   No.
17     Q.   Should it be smaller or larger?
18     A.   I don't know what the information is for
19  talc, so I don't know the answer.
20     Q.   Okay.  Do you see where it says, "Number
21  of fibers calculated per milligram of sample"?
22     A.   Yes.

MAGNA
LEGAL SERVICES

Page 698

1    Q.   All right.  And it says, "4.1" -- and
2   this is for EMTAL 42 -- "4.14 times 10 to the 5th."
3   Right?
4    A.   Yes.
5    Q.   So, how many fibers are they finding in
6   this production sample of EMTAL 42?
7        MR. FARRELL:  Objection --
8   BY MR. PLACITELLA:
9    Q.   How do you -- I'm not that good at the
10  exponential.  How many fibers are they finding in
11  that milligram?
12       MR. FARRELL:  Objection to form,
13  foundation, beyond the scope of the notice, calls for
14  expert testimony.
15  BY MR. PLACITELLA:
16   Q.   You can do the math.  What is it?  How
17  many?
18       MR. FARRELL:  Same objections, beyond the
19  scope of the notice.
20       THE WITNESS:  I'm not an expert.  I know
21  what 4 times 10 to the 5th is.  I don't know what it
22  means in this perspective.

Page 699

1   BY MR. PLACITELLA:
2    Q.   What is 4 times 10 to the 5th?
3    A.   It's 40,000.
4    Q.   40,000.  So, they found, according to
5   this, 40,000 fibers in one milligram of EMTAL 42.
6   Correct?
7        MR. FARRELL:  Objection to form,
8   foundation, beyond the scope of the notice.
9   BY MR. PLACITELLA:
10   Q.   Correct?
11   A.   I'm really not prepared to talk about
12  this.  I just didn't prepare for this.
13   Q.   Then there's -- two over, it says,
14  EMTAL 42 -- another EMTAL 42.  This time they found
15  6.7 times 10 to the 4th in a milligram, 10 to the
16  6th.  So, that would be what?  That would be 600,000
17  fibers in a single milligram?
18       MR. FARRELL:  Objection to form,
19  foundation, beyond the scope of the notice.
20       Do you have any questions that relate to
21  the reasons you said you needed a third day of this
22  deposition?

Page 700

1        MR. PLACITELLA:  I'm just probing what he
2   told me is all the data.  I think I'm entitled to do
3   that.
4   BY MR. PLACITELLA:
5    Q.   So, somewhere around more than 600,000
6   fibers per milligram.  Is that what this says?
7        MR. FARRELL:  Objection to form,
8   foundation, beyond the scope of the notice, calls for
9   expert testimony.
10       THE WITNESS:  I'm sorry.  I didn't mean
11  to imply, when I answered your question before, that
12  I had looked at this data and I understood it all and
13  that I was familiar with it and what it would mean in
14  this context.  All I was trying to say was that we
15  were talking about talc investigations.  Georgia Tech
16  came up, and I mentioned that we had -- we had
17  produced reports that showed results from Georgia
18  Tech, among other places.
19  BY MR. PLACITELLA:
20   Q.   Okay.  So, let's go back to page 2.  You
21  see where it says -- I highlighted it -- "38 crushed
22  rock samples have been sent to Georgia Institute --

Page 701

1   to Georgia Institute of Technology for qualitative
2   transmission electron microscopy investigations."
3        Do you see that?
4    A.   Yes.
5    Q.   Where are those results?
6        MR. FARRELL:  Objection.
7   BY MR. PLACITELLA:
8    Q.   Where have you produced them?
9        MR. FARRELL:  Objection to form and
10  foundation.
11       Where in the document are you?
12       MR. PLACITELLA:  Right here.  I've
13  highlighted it.  38 crushed rock samples.
14  BY MR. PLACITELLA:
15   Q.   Where are the results from the Georgia
16  Institute of Technology when they did the TEM?
17   A.   Well, again, I'll say it in the same way.
18  There are other reports and results that we have
19  obtained from Georgia Tech that we produced.  So,
20  there was a report on July 17, 1979, from Triglia to
21  Hemstock where, again, results were --
22   Q.   What are you looking at, sir?

MAGNA
LEGAL SERVICES

Page 702

1      A.   A July 17, 1979, memo from Triglia to
2  Hemstock.
3      Q.   What tab?
4      A.   This is Tab 30 in the compendium.
5           And again, it may or may not apply to
6  these. I'm just saying, as I said before, we have a
7  lot of results from Georgia Tech.
8           I haven't looked at each of these
9  documents to try to link what samples were what --
10  were included in what reports. I'm just saying we
11  received results from them. I can't tell you a lot
12  of detail about the reports themselves.
13      Q.   But it's very important to know the
14  differences, at least for me.
15           All right. You just showed me Tab 30,
16  which was a July 17, 1979 memo from Triglia to
17  Hemstock. This, again, is looking at production
18  samples. Correct?
19      A.   I don't know. I don't know all the
20  contents. I haven't read it and haven't analyzed it,
21  so, I can't say.
22      Q.   EMTAL 42, they found abundant fibers.

Page 703

1  EMTAL 500, they found many fibers.
2           There is nothing in this document about
3  testing the ore, is there?
4      MR. FARRELL:  Objection to form,
5  foundation.
6      THE WITNESS:  I don't know. I haven't
7  read through it. I wasn't -- I wasn't preparing to
8  look at these in detail and try to analyze them.
9  BY MR. PLACITELLA:
10      Q.   Well, here -- here is the reason I'm
11  asking you this question:  There was a lot of
12  testimony in both Dr. Hemstock's deposition and
13  Dr. Triglia's deposition about the study they did of
14  the ore in the EMTAL mine. You agree?
15      A.   Yes. There was discussion about that,
16  yes.
17      Q.   And I think you told me that all the
18  testing results that you could find were located in
19  P-15, which was the Cahill compilation. Correct?
20      MR. FARRELL:  Objection to form.
21      THE WITNESS:  I'm not sure -- when did I
22  say it was all in --

Page 704

1  BY MR. PLACITELLA:
2      Q.   As you sit here today, can you find in
3  P-15 any testing results concerning the study that
4  was done by Dr. Hemstock and Dr. Gale of the mine
5  that was extensively discussed in their depositions?
6      MR. FARRELL:  Objection to form,
7  foundation, asked and answered.
8      THE WITNESS:  No. And I'm sorry. I
9  don't think I ever did say that that data -- that
10  that data and those results were in here. What I
11  tried to say was that results from Georgia Tech that
12  we had received we had produced.
13           There were several reports that had
14  Georgia Tech information. I didn't say that that was
15  the information from that particular study.
16  BY MR. PLACITELLA:
17      Q.   Well, where is the information from that
18  study, sir?
19      MR. FARRELL:  Objection to form,
20  foundation, asked and answered, harassing the
21  witness.
22      THE WITNESS:  We haven't found those

Page 705

1  exhibits.
2  BY MR. PLACITELLA:
3      Q.   So --
4      MR. FARRELL:  Which exhibits are we
5  talking about?
6      MR. PLACITELLA:  I think the record is
7  clear. I'm moving on to something else.
8      MR. FARRELL:  You showed him a document
9  discussing 38 samples of talc. You've seen the
10  documents. I don't even know what we're talking
11  about right now.
12      MR. PLACITELLA:  I think the witness is
13  answering my questions. Thank you.
14  BY MR. PLACITELLA:
15      Q.   One of the things you were asked about to
16  produce and to talk about -- actually, just to talk
17  about was, under the court order -- and I put it up
18  here -- the location and completeness of all original
19  files related to lawsuits filed against Engelhard and
20  BASF for injuries allegedly related to EMTAL talc.
21           Do you see that?
22      A.   Yes.

Page 706

1      Q.   So, I want to ask you some questions
2  about that.
3           Where are those files?
4           MR. FARRELL:  Objection to form,
5  foundation, asked and answered during day one and two
6  of the deposition.
7           THE WITNESS:  The files that we have that
8  we obtained from Cahill, and those were all files
9  related to Engelhard, are located here at Kirkland &
10 Ellis.
11 BY MR. PLACITELLA:
12     Q.   So, they are all in this building?
13          MR. FARRELL:  Objection to form and
14 foundation.
15          THE WITNESS:  I don't know if they are
16 all here, but they're all in the possession of -- of
17 Kirkland & Ellis or BASF.
18 BY MR. PLACITELLA:
19     Q.   And I did ask you some questions.  These
20 are just follow-up.
21          So, the current custodian of those files
22 is Kirkland & Ellis.  Is that your understanding?

Page 707

1           MR. FARRELL:  Objection to form and
2  foundation, vague as to which files.
3  BY MR. PLACITELLA:
4      Q.   The litigation files from 1984 to the
5  present.
6           MR. FARRELL:  Objection to form,
7  foundation, asked and answered, vague as to which
8  files.
9           THE WITNESS:  That's my understanding.
10 BY MR. PLACITELLA:
11     Q.   Were all of those files, to your
12 knowledge, scanned and OCR'd?
13          MR. FARRELL:  Objection to form and
14 foundation.
15          THE WITNESS:  I'm not sure what OCR'd is.
16 BY MR. PLACITELLA:
17     Q.   In other words, so you could do word
18 searches on them.  Were they all scanned
19 electronically?
20     A.   My understanding is that they were all --
21 they were all scanned, yes.
22     Q.   And can they all be -- run word searches

Page 708

1  to find things on them?
2      A.   It depends on the form of the document.
3  If it was typewritten, you could do a search.  If it
4  was handwritten, you may not be able to.
5      Q.   But all the typewritten documents that
6  are under the custody and control of Kirkland &
7  Ellis, you could run word searches on.  Correct?
8           MR. FARRELL:  Objection to form,
9  foundation, beyond scope.
10          THE WITNESS:  And which files are we
11 talking about?
12 BY MR. PLACITELLA:
13     Q.   The historical litigation files called
14 for that you were supposed to talk about under No. 13
15 of the court order.
16          MR. FARRELL:  Objection to form,
17 foundation, misstates the notice.
18          THE WITNESS:  Could you repeat the
19 question again?
20 BY MR. PLACITELLA:
21     Q.   Yes, sir.
22          All of those electronic files in their

Page 709

1  electronic form are under the custody and control of
2  Kirkland & Ellis.  Correct?
3           MR. FARRELL:  Objection to form and
4  foundation.
5           THE WITNESS:  As I understand it, yes.
6  BY MR. PLACITELLA:
7      Q.   If you wanted to find something in those
8  files, you could do a word search if it was a
9  typewritten document.  Correct?
10          MR. FARRELL:  Objection to form,
11 foundation, beyond the scope.
12          THE WITNESS:  You could do a search, a
13 word search.
14 BY MR. PLACITELLA:
15     Q.   So, for example, if I wanted to search
16 all of the letters that were written by Cahill Gordon
17 in the context of the -- this litigation, I should be
18 able to find that.  Correct?
19          MR. FARRELL:  Objection to form,
20 foundation, beyond the scope.
21          THE WITNESS:  I don't know.  That would
22 be something that counsel here would know.

MAGNA ▶
LEGAL SERVICES

Page 710

1  BY MR. PLACITELLA:
2      Q.   Well, I could type in Cahill Gordon, and
3  I'd get all of the documents with Cahill Gordon on
4  them. Right?
5      A.   I haven't done it myself, so, I don't
6  know. I haven't done that, so, I don't know.
7          MR. PLACITELLA: Do you have P-13,
8  please, over there?
9  BY MR. PLACITELLA:
10     Q.   Do you see on P-13, the judge actually
11 put, in her own handwriting, an addition?
12     A.   Yes.
13     Q.   And you've read that. Correct?
14     A.   Yes.
15     Q.   And the judge says that, in addition to
16 testifying about everything that I asked for on the
17 notice, you must be able to testify fully with regard
18 to the document searches conducted in this case.
19 Correct?
20     A.   That's what it says, yes.
21     Q.   So, part of your charge is to know how
22 documents can be searched. Correct?

Page 711

1          MR. FARRELL: Objection to form,
2  foundation.
3          THE WITNESS: I'm not sure. If I could
4  look at that. I would have to look at it again.
5  BY MR. PLACITELLA:
6      Q.   Sure. Look at the whole thing.
7      A.   And what was the question again? I'm
8  sorry.
9          (Witness reads over the document.)
10         I'm sorry. What was the question?
11     Q.   You are supposed to know how document
12 searches can be done according to the judge's
13 handwritten order. Correct?
14         MR. FARRELL: Objection to form and
15 foundation.
16         THE WITNESS: I guess it is not clear
17 what the judge meant. I mean, the judge says,
18 "Testify fully with regard to the document searches
19 conducted." I don't know if it says who conducted
20 them, but I did learn about how they are conducted
21 generally here, yes.
22 BY MR. PLACITELLA:

Page 712

1      Q.   Right.  And what they did is they, in
2  addition to doing some manual searches, they did word
3  searches. Correct?
4      A.   That's right, yes.
5      Q.   And they could do word searches of the
6  litigation files, correct?
7          MR. FARRELL: Objection to form and
8  foundation.
9          THE WITNESS: Yes.
10 BY MR. PLACITELLA:
11     Q.   So, if I wanted --
12         MR. FARRELL: Excuse me. Just give me
13 one second to object, just so we don't have an angry
14 court reporter.
15         Go ahead, Mr. Placitella.
16 BY MR. PLACITELLA:
17     Q.   So, if I wanted to search for all the
18 letters written by Cahill Gordon to plaintiff's
19 lawyers, I should be able to find them. Correct?
20         MR. FARRELL: Objection to form,
21 foundation, beyond the scope of the notice.
22         THE WITNESS: And the answer is I never

Page 713

1  searched Cahill Gordon, so, I don't know what would
2  happen. I know you can do word searches. I've just
3  never done it, so I don't know.
4  BY MR. PLACITELLA:
5      Q.   Well, presumably, if it's all the
6  documents are word-searchable and there are documents
7  in there from Cahill Gordon, I should be able to find
8  them. Correct?
9          MR. FARRELL: Objection to form,
10 foundation, calls for speculation.
11         THE WITNESS: Again, I just don't know
12 because I haven't done it. You can do word searches.
13 I know that.
14 BY MR. PLACITELLA:
15     Q.   Are you limited to the words you can
16 search?
17         MR. FARRELL: Objection to form.
18         THE WITNESS: Not that I know of. I
19 don't --
20 BY MR. PLACITELLA:
21     Q.   Then can you only search "asbestos" and
22 not "Cahill Gordon"?

MAGNA
LEGAL SERVICES

Page 714

1          MR. FARRELL:  Objection to form.
2          THE WITNESS:  I don't know.  I don't
3  think so, but I don't know.
4  BY MR. PLACITELLA:
5      Q.   If we wanted to find all the answers to
6  interrogatories that were filed by Engelhard or BASF
7  in a case, we should be able to just do a word
8  search.  Right?
9          MR. FARRELL:  Objection to form,
10  foundation, beyond the scope of the notice.
11          THE WITNESS:  Again, it depends on what
12  you're looking for and what words you would use.
13  BY MR. PLACITELLA:
14      Q.   How about "interrogatory"?
15          MR. FARRELL:  Objection to form,
16  foundation, beyond the scope of the notice.
17          THE WITNESS:  I haven't done it myself,
18  so, I can't say specifically whether "interrogatory"
19  would come up.  It's a word search, so I would think
20  so, but I don't know.
21  BY MR. PLACITELLA:
22      Q.   What about all the motions filed with

Page 715

1  courts, papers filed with courts?  Presumably, we
2  should be able to find that too.  Correct?
3          MR. FARRELL:  Same objection.  Beyond the
4  scope of the notice.
5          THE WITNESS:  Again, I don't know.  It
6  depends on what the word you use and what you are
7  searching for, I guess.
8  BY MR. PLACITELLA:
9      Q.   So, if I typed in the word "summary
10  judgment," I should be able to find that as easy as I
11  could find "EMTAL," if the words existed in the
12  database.  Correct?
13          MR. FARRELL:  Objection to form,
14  foundation, beyond the scope.
15          Do you have any questions that actually
16  relate to this?
17          MR. PLACITELLA:  Yes.  They all relate.
18  They all relate.
19          MR. FARRELL:  How do they relate to the
20  searches we conducted to put these boxes here in the
21  room with you?
22  BY MR. PLACITELLA:

Page 716

1      Q.   Can you answer it?
2          MR. FARRELL:  I'll take that as you can't
3  tell me.
4          MR. PLACITELLA:  I'll take it as I'm not
5  answering your question.  You can ask me as many as
6  you want.
7          MR. FARRELL:  Got it.  I assume, then,
8  you don't have an answer.
9          MR. PLACITELLA:  Okay.
10          THE WITNESS:  I haven't done it myself.
11  You can do word searches, I know that, and I've seen
12  some run as examples.
13  BY MR. PLACITELLA:
14      Q.   Are you aware as to whether Engelhard or
15  BASF ever conducted an internal investigation to
16  determine whether original evidence was destroyed
17  pursuant to the March 7, 1984 memo from Dr. Hemstock?
18          MR. FARRELL:  Objection to form,
19  foundation.
20          THE WITNESS:  I'm sorry.  Could you
21  repeat the question?
22  BY MR. PLACITELLA:

Page 717

1      Q.   Sure.  Are you aware as to whether
2  Engelhard or BASF ever conducted an internal
3  investigation to determine whether original evidence
4  was destroyed pursuant to the March 7, 1984 memo
5  issued by Dr. Hemstock that we discussed on day one?
6          MR. FARRELL:  And this is getting very
7  close to the line of privileged information.  It's a
8  yes-or-no answer as to whether you know one way or
9  the other, and that's it, Mr. Steinmetz.
10          THE WITNESS:  I don't know.
11  BY MR. PLACITELLA:
12      Q.   Do you know whether Engelhard ever
13  concluded that original evidence was destroyed
14  pursuant to the 1984 Hemstock memo?
15          MR. FARRELL:  Objection to form and
16  foundation.
17          THE WITNESS:  No, I don't know.
18  BY MR. PLACITELLA:
19      Q.   Okay.  The documents from the physical
20  testing box, do you have them, that we marked this
21  morning?
22      A.   I don't have these -- yes.  I have these,

Page 718

1    yes.
2         Q.   So, just showing you 32, 33, and 34.
3         As it relates to the evidence, P-32
4    through 34, which are the documents relating to the
5    testing of EMTAL talc for asbestos that came from the
6    Box No. Exhibit 5.  Are you with me?
7         A.   Yes.
8         Q.   Do you have any of the underlying data
9    that goes with those exhibits, for example, the
10   x-ray -- the x-ray printouts or photomicrographs or
11   anything like that?
12        MR. FARRELL:  Objection to form and
13   foundation.
14        THE WITNESS:  We have summaries of some
15   of the information.  We don't have photomicrographs,
16   but we have, for example, lab notebook entries
17   related to this type of -- to this -- to these
18   documents.
19   BY MR. PLACITELLA:
20        Q.   Okay.  Other than what's in 32, 33, and
21   34, P-15, and the lab notebooks, are you aware of any
22   other documents in the custody and control of BASF

Page 719

1    relating to the testing of EMTAL talc or ore for
2    asbestos?
3         MR. FARRELL:  Objection to form,
4    foundation.
5         THE WITNESS:  Yes.  There are some
6    published documents that weren't included in that
7    compendium or the compilation because that was a
8    compilation of Engelhard testing.  But there are some
9    published documents, published articles that dealt
10   with surveys of the Johnson site.
11   BY MR. PLACITELLA:
12        Q.   Okay, fair enough.
13        So, let me ask the question this way:
14   Other than Exhibits 32, 33, 34, what is ever in P-15,
15   and the lab notebooks, are you aware of any other
16   documents generated by or requested by Engelhard
17   concerning the testing of EMTAL talc for asbestos?
18        MR. FARRELL:  Objection to form and
19   foundation.
20        THE WITNESS:  I'm sorry.  What timeframe
21   are we talking about here?
22   BY MR. PLACITELLA:

Page 720

1         Q.   At any time that Engelhard -- by
2    Engelhard, at any time.
3         MR. FARRELL:  Objection to form,
4    foundation, overbroad.
5         THE WITNESS:  Well, if we include going
6    forward until now, we obviously have tested some of
7    the samples that we have that we've talked about
8    earlier today.
9    BY MR. PLACITELLA:
10        Q.   Yes.  But I'm not talking about the
11   litigation samples that we talked about today.  I'm
12   talking about testing that was done by or on behalf
13   of Engelhard, not BASF or their lawyers.  All right?
14   So, let me rephrase it.
15        I'm referring now specifically to testing
16   done by or on behalf of Engelhard relating to the
17   testing of EMTAL talc or ore for asbestos.
18        Are you aware of anything other than
19   P-32, 33, 34, whatever is in P-15, and the lab
20   notebooks?
21        MR. FARRELL:  Objection to form,
22   foundation, overbroad.

Page 721

1         THE WITNESS:  I don't know everything
2    that was in the compilation because there was
3    privileged information in there.  So, I don't know
4    everything that was in there.
5         Based on what I know, there are -- yes,
6    there are several dozen, hundreds -- hundreds of
7    documents that we've produced are what we have from
8    those sources.
9    BY MR. PLACITELLA:
10        Q.   So, nothing other than I've just
11   identified.
12        MR. FARRELL:  Objection to form,
13   foundation, overbroad, harassing the witness.
14        THE WITNESS:  Nothing that I can think of
15   right now.
16   BY MR. PLACITELLA:
17        Q.   Okay.  And now, you said there were --
18   you believe there was certain information withheld
19   from you that might relate to the testing of asbestos
20   and EMTAL talc.  Is that what you said?
21        MR. FARRELL:  Objection to form.
22        THE WITNESS:  I said I don't know what's

MAGNA
LEGAL SERVICES

Page 722

1   in those privileged documents. That's all.
2   BY MR. PLACITELLA:
3       Q.   Did you ask to see them?
4       A.   I was told you can't see them.
5       Q.   Why not? You've a representative of
6   BASF. Maybe I can't see them, but why can't you see
7   them?
8           MR. FARRELL: Objection to form,
9   foundation.
10          THE WITNESS: I don't know. I'm not a
11  lawyer.
12  BY MR. PLACITELLA:
13      Q.   Did you ask to see them?
14      A.   No.
15          MR. FARRELL: Objection to form and
16  foundation.
17          THE WITNESS: No. I was told that I
18  wouldn't be seeing them.
19  BY MR. PLACITELLA:
20      Q.   So, you don't know whether they would be
21  germane to your testimony here or not.
22          MR. FARRELL: Objection to form and

Page 723

1   foundation.
2           THE WITNESS: I trust that my counsel
3   prepared me for this.
4   BY MR. PLACITELLA:
5       Q.   What does that mean?
6       A.   I trust that they gave me what I needed
7   and what was necessary for me to answer your
8   questions.
9       Q.   Have you reviewed any type of privilege
10  log to see if anything on the privilege log was
11  withheld from you from P-15?
12      A.   I've seen the privilege log. I didn't
13  see anything that stood out, but I didn't look at it
14  in that context.
15      Q.   Okay. On the first day --
16          We should probably just mark this for
17  completeness.
18  BY MR. PLACITELLA:
19      Q.   In the notice on P-12, No. 8 asks for all
20  notes, samples, reports, photographs or other
21  printouts relating to the testing by William Glassley
22  in the Westfall case and the Martin case.

Page 724

1           I'll give it to you.
2       A.   Thank you. Yes.
3       Q.   And when I asked you about it last time,
4   you said you weren't sure what you produced. You
5   were going to go look. Did you have an opportunity
6   to do that?
7       A.   I did, and I think that everything that
8   we've produced -- that we have, was originally
9   produced by you at some point.
10      Q.   So, other than the documents that came
11  from my office, you did not find any evidence in the
12  files of BASF related to Dr. Glassley?
13          MR. FARRELL: Objection to form and
14  foundation.
15          THE WITNESS: I'm sorry. Could you
16  repeat that?
17  BY MR. PLACITELLA:
18      Q.   Yes. Other than the documents that my
19  office produced at Dr. Glassley's deposition -- you
20  read that deposition. Correct?
21      A.   Yes.
22      Q.   Other than the documents my office

Page 725

1   produced at the Glassley deposition, BASF has located
2   no documents in their historical litigation files
3   related to Dr. Glassley?
4           MR. FARRELL: Objection to form and
5   foundation.
6           THE WITNESS: I don't know. There may be
7   documents that mention his name. I don't know that.
8           For example, I don't know -- I'm sure
9   there are documents that mention his name, but as far
10  as I know, there are no documents attributable to him
11  that we found in our files.
12  BY MR. PLACITELLA:
13      Q.   Well, do you have documents where you saw
14  his name but he didn't author?
15      A.   I haven't seen it. I just say there may
16  be some. I haven't seen them.
17          For example, I would think there are
18  documents that list different depositions that have
19  been taken. His name may be on there. I don't know.
20  This is speculation on my part.
21      Q.   Okay. You recall that the plaintiff in
22  the Westfall case hired Dr. Glassley as his expert?

MAGNA
LEGAL SERVICES

Page 726

1    A.   Yes.  I recall that.
2    Q.   And when you went and looked and produced
3  whatever was left from the Westfall litigation file,
4  there was nothing in that file relating to the work
5  of Dr. Glassley.  Is that fair?
6    A.   As I mentioned last time, I didn't go
7  through every page in there.  So, I can't say that I
8  looked at every single page in every one of those
9  boxes, but I haven't seen anything that came from
10  there that was from Glassley.
11    Q.   Do you recall that he testified that he
12  traveled to the Johnson mine and collected ore
13  samples from outside the entrance to the mine?
14    A.   Yes, I --
15    MR. FARRELL:  Objection to form.
16    THE WITNESS:  Yes.  I remember that.
17  BY MR. PLACITELLA:
18    Q.   And he testified that he ran tests on the
19  samples he gathered, including sending the samples
20  out to an outside laboratory.
21    MR. FARRELL:  Objection to form.
22    THE WITNESS:  Yes.  I remember he

Page 727

1  testified about samples, but he didn't give much
2  detail on where he found them, how he picked them up,
3  what he did with them after he found them, how he
4  kept control of them as a chain of custody.
5  BY MR. PLACITELLA:
6    Q.   Do you recall that Dr. Glassley testified
7  that, in the samples he looked at, he found
8  chrysotile asbestos --
9    MR. FARRELL:  Objection to form.
10  BY MR. PLACITELLA:
11    Q.   -- from the samples from that mine?
12    MR. FARRELL:  Objection to form,
13  foundation, beyond the scope of the notice.
14    THE WITNESS:  I'd have to read the
15  testimony again.  I know he reported on what he
16  found.  Before I say "yes" or "no," I would have to
17  look at it again to confirm.
18    MR. PLACITELLA:  Why don't you mark that
19  next.
20           (          Exhibit
21           No.           ,
22                    , w

Page 728

1         marked for identification.).
2  BY MR. PLACITELLA:
3    Q.   Could you -- you've seen this deposition
4  of Dr. Glassley before.  Correct?
5    MR. FARRELL:  Do you have a copy for me,
6  Mr. Placitella?
7    MR. PLACITELLA:  No.  I only brought two.
8  Sorry.  I'm sure you have it, though.
9    MR. FARRELL:  So, the Court's instruction
10  about bringing copies of the documents was optional
11  for you, I guess?
12    MR. PLACITELLA:  Mr. Farrell, I'm not
13  going to respond to you.  I brought 200 pounds of
14  documents here.  You have documents that originated
15  in New Jersey from a New Jersey corporation.  You
16  decided to take them outside of the state.  I
17  traveled here two times to D.C. at your convenience.
18  No complaint.  If I had to bring three copies of
19  every document, I physically could not do it.  So, I
20  brought them on the train with me.  I am sure you
21  have copies here since you have everything here.  If
22  you want to break for two minutes, we'll get your

Page 729

1  copies of Mr. Glassley's deposition.  I'm happy to
2  wait.
3    MR. FARRELL:  I'm just noting the fact
4  that the Court asked you to bring copies of all of
5  the documents, and you have not done so.
6    MR. PLACITELLA:  I know exactly what the
7  Court said, and it's on the record.  So, if you want
8  to take a break and get the transcript because you
9  think you're at a disadvantage, although counsel has
10  it probably up on her Thinkpad in front of me, that's
11  fine.
12    So, do we need to take a break or can I
13  just ask the question?
14    MR. FARRELL:  I'll take a look at the
15  copy that Mr. Steinmetz is looking at.
16    MR. PLACITELLA:  Okay.
17  BY MR. PLACITELLA:
18    Q.   I'm just asking you:  Is this the
19  deposition you reviewed before?
20    A.   I am just looking at it because it's been
21  a couple of weeks, and I just want to make sure it's
22  the same one.

MAGNA
LEGAL SERVICES

Page 730

1    Q.   Okay.  Sure.
2        (Witness reviews the document.)
3    A.   I believe this is the one.
4    Q.   Okay.  I'm referring you to page 74 of
5    the transcript where Mr. Farrell asks Dr. Glassley:
6        "Yes, and let me ask it more precisely.
7    You were prepared to testify in the Westfall case
8    that EMTAL talc contained chrysotile asbestos without
9    having seen internal Engelhard documents that discuss
10   whether EMTAL talc contained asbestos.  True?
11       "ANSWER:  I was willing to testify that
12   the talc samples from the Johnson mine contained
13   chrysotile asbestos."
14       Does that refresh your memory?
15   A.   I -- I am seeing it, and I believe this
16   is it.
17       MR. FARRELL:  Objection to form,
18   foundation, beyond the scope of the notice.
19       MR. PLACITELLA:  It's not beyond.  We'll
20   get there.
21   BY MR. PLACITELLA:
22   Q.   Is it your understanding that --

Page 731

1        MR. FARRELL:  How does it relate to the
2    location of Dr. Glassley's notes, what his testimony
3    in the case is going to be?
4        MR. PLACITELLA:  I will get there.
5    BY MR. PLACITELLA:
6    Q.   So --
7        MR. FARRELL:  We have put in 15 minutes
8    of new ground today and four hours of material that
9    is either beyond the scope of the notice or you have
10   already covered.
11       MR. PLACITELLA:  Probably I would finish
12   a lot earlier if you didn't testify for about a half
13   hour already.  But let's just keep going, okay?
14       MR. FARRELL:  We could have been finished
15   after day two.
16       MR. PLACITELLA:  Well, I don't think so,
17   and obviously the judge didn't think so.
18   BY MR. PLACITELLA:
19   Q.   So, am I correct that, as a condition of
20   settlement in the Westfall case, Dr. Glassley was
21   forced to give back his scientific data?
22       MR. FARRELL:  Objection to form and

Page 732

1    foundation.
2        THE WITNESS:  I know that there was a
3    document that called for the return of certain
4    documents from the -- from the case.  Glassley
5    testified that he gave some of it back to his
6    attorney.  He also -- to the plaintiff's attorney.
7    He also kept material on his own.  He couldn't
8    remember what exactly, but he did keep enough to
9    write a pretty lengthy report ten years later.
10   BY MR. PLACITELLA:
11   Q.   I'm going to get to all of that.
12       Am I correct that Glassley, over his
13   objection, was forced to return to the plaintiff's
14   lawyer in the Westfall case his samples and
15   underlying scientific data?
16       MR. FARRELL:  Objection to form and
17   foundation.
18       THE WITNESS:  Over his objection, I would
19   have to read specifically how he said it.
20   BY MR. PLACITELLA:
21   Q.   Okay.  Let's look at page 89 of his
22   deposition.  Do you see that?

Page 733

1    A.   Yes.
2    Q.   He's asked about an exhibit by
3    Mr. Farrell, Exhibit 5, which is his report, the
4    summary of what you did in the Westfall case.
5        "Does the summary describe -- document
6    describe all the analyses you did in connection with
7    Westfall?
8        "ANSWER:  I believe so.
9        "Have you tested samples of Johnson ore
10   or talc at any other time?
11       "No.
12       "What happened to the five samples that
13   you collected from the area around the Johnson mine?
14       "ANSWER:  Ultimately, I sent them back to
15   Mr. Prentiss."
16       Does that refresh your memory of what
17   happened to those samples?
18       MR. FARRELL:  Objection to form,
19   foundation, misstates Dr. Grassley's testimony.
20       THE WITNESS:  That's what they -- that's
21   what you read.
22   BY MR. PLACITELLA:

MAGNA
LEGAL SERVICES

Page 734

1    Q.   Okay.  And if you go to page 94, he's
2    asked:
3         "Of the data that you generated at the
4    time of the Westfall case, you mentioned earlier some
5    of it you wanted to keep.
6         "QUESTION:  Tell me what -- which of the
7    data that you would have wanted to keep after
8    Westfall.
9         "I would have wanted to keep the
10   photographic plates from the TEM work, the electron
11   microprobe data, the printouts, those runs.  Those
12   would have been the key things, those two things."
13        Do you see that?
14   A.   I see it, yes.
15   Q.   Okay.  And do you see, on the next page,
16   96, he said that he also sent samples to Rudolph
17   von Huene to prepare sections.  Do you see that?
18   A.   I see that, yes.
19   Q.   And you earlier said that Dr. Glassley
20   kept some of his material, but he wasn't sure what
21   that was.  Was that your testimony?
22        MR. FARRELL:  Objection to form,

Page 735

1    foundation.  His testimony speaks for itself.
2         THE WITNESS:  That was what I remembered
3    from reading it, that he wasn't clear on exactly what
4    he had kept and -- and what had happened to it after
5    he lost it.
6    BY MR. PLACITELLA:
7    Q.   So, let's go to page 38.
8         Do you see where it says, "Did you tell
9    Mr. Prentiss you wanted to keep all these materials
10   you had during the Westfall case"?
11        "I told him I wanted to keep some of the
12   material.  There was some stuff I didn't care that
13   much about that wasn't basic fundamental data, but
14   some of it I wanted to.
15        "Which stuff didn't you care much about?
16        "Letters that were correspondence between
17   us, record of time spent on things, billing issues.
18   I think there was some Xerox copies of publications,
19   I can always reproduce those, things like that.
20        "Anything else?"
21        He says, "Not that I recall."
22        Then he said, "What materials did you

Page 736

1    keep?"
2         And he said, "The only thing I had left
3    was my field notebook.  I told him that I really did
4    not want to submit those because the field notebook
5    contained information not only about my visit to the
6    Johnson mine and Windham but also information from
7    all of my other, the work I was doing in the San Juan
8    Islands in Washington State, work I was doing in the
9    other parts of New York State and Vermont.  They were
10   my field notes.  Those were -- I was not going to
11   give those up if I could avoid it."
12        Do you see that?
13   A.   Yes, I see it.
14   Q.   Does that refresh your memory as to what
15   documents Dr. Glassley kept in his possession related
16   to a study at the Vermont mine?
17        MR. FARRELL:  Objection to form,
18   foundation.  Dr. Glassley's testimony speaks for
19   itself.  Beyond the scope.
20        Go ahead.
21        THE WITNESS:  All right.  At this point,
22   he says he only had his field notebook.  I think

Page 737

1    later on his testimony evolved to where he said there
2    was other information that he must have had in order
3    to write the report that he wrote in 1992.
4    BY MR. PLACITELLA:
5    Q.   I'm going to get to that.  I'm just
6    talking about the documents that he turned back over
7    to Mr. Prentiss.
8         What investigation did you do to
9    determine what happened to the documents that he
10   turned over to Mr. Prentiss that he had to give back
11   to Engelhard?
12        MR. FARRELL:  Objection to form,
13   foundation.
14        THE WITNESS:  I -- I didn't do anything,
15   and I don't even know what he turned back, based on
16   his testimony.
17   BY MR. PLACITELLA:
18   Q.   Well, he says he turned back his
19   notebooks, samples, and photomicrographs.  Correct?
20        MR. FARRELL:  Objection to form,
21   foundation.
22   BY MR. PLACITELLA:

MAGNA
LEGAL SERVICES

1    Q.   That's what it says.
2         MR. FARRELL:  Objection to form and
3    foundation.
4         THE WITNESS:  And then later on he says
5    he kept things, and it was enough to write a report.
6    And I just don't know what those things that he kept
7    were.
8    BY MR. PLACITELLA:
9    Q.   Sir, did BASF or Engelhard ever take
10   possession of Dr. Glassley's notebook, samples, or
11   photomicrographs at the conclusion of the Westfall
12   case?
13        MR. FARRELL:  Objection to form,
14   foundation, beyond the scope of the notice.
15        THE WITNESS:  I -- I don't know that.
16   BY MR. PLACITELLA:
17   Q.   Why don't you know that?
18        MR. FARRELL:  Same objections.
19        THE WITNESS:  Because I don't know what
20   he turned back.
21   BY MR. PLACITELLA:
22   Q.   He said -- he testified what he turned

1    back.
2         MR. FARRELL:  Objection to form,
3    foundation, beyond the scope, harassing the witness,
4    asked and answered, not just today but also when we
5    were here for two days two weeks ago.
6         THE WITNESS:  Then, if he said that, that
7    speaks for itself.  But as I mentioned, later on in
8    his testimony it appears he kept a lot more things.
9    BY MR. PLACITELLA:
10   Q.   Well, that was in the Martin case where
11   some things popped up.  Right?  That wasn't in the
12   Westfall case.
13        MR. FARRELL:  Objection to form,
14   foundation --
15        MR. PLACITELLA:  We're going to get
16   there.
17        MR. FARRELL:  -- beyond the scope,
18   argumentative.
19   BY MR. PLACITELLA:
20   Q.   Sir, what did BASF or Engelhard do with
21   the scientific data that was turned back over and the
22   samples that were turned back over by Dr. Glassley to

1    their lawyers?  Do you know?
2         MR. FARRELL:  Objection to form and
3    foundation.
4         THE WITNESS:  No, I don't know.
5    BY MR. PLACITELLA:
6    Q.   Did you ask?
7    A.   I don't know if I specifically asked.
8    We've talked about it, and I know that there was a
9    letter or a stipulation for destroying that.  I just
10   don't know personally whether it was actually
11   destroyed.
12   Q.   Well, that stipulation had nothing to do
13   with Dr. Glassley's samples.  Correct?
14        MR. FARRELL:  Objection.
15   BY MR. PLACITELLA:
16   Q.   That had to do with information that was
17   generated by Engelhard.  Correct?
18        MR. FARRELL:  Objection to form,
19   foundation, beyond the scope.
20        THE WITNESS:  I don't know.  And once
21   again, I don't know if he turned those things back
22   over.

1         MR. PLACITELLA:  Well, can I have P-12,
2    please?
3    BY MR. PLACITELLA:
4    Q.   Do you have it?
5    A.   I don't have it there.
6    Q.   You understand you were asked to testify
7    specifically about the samples, the reports, and the
8    data that Dr. Glassley had in his possession?
9         MR. FARRELL:  Objection to form,
10   misstates the notice.
11   BY MR. PLACITELLA:
12   Q.   You were asked to be prepared to talk
13   about the destruction or loss of any and all notes,
14   samples, reports, and photographs relating to the
15   testing by William Glassley in the Westfall case and
16   the Martin case.  Correct?
17   A.   That's what the -- that's what the
18   document states.  And, again, I don't know if they
19   were destroyed.  I don't know if they were even
20   turned back.  That's my problem.
21        Reading his testimony, he started out
22   saying he had turned everything back, and then later

Page 742

1    on it turned out that he hadn't because he was able
2    to write a report. So, I just don't know.
3        Q. Well, what investigation did you
4    undertake in order to comply with the court order to
5    make those determinations?
6        MR. FARRELL: Objection to form,
7    foundation, harassing the witness.
8        THE WITNESS: I read Glassley's
9    testimony, and we haven't found those documents or
10   those samples. So, that's all I can say.
11   BY MR. PLACITELLA:
12       Q. But the Court ordered you to be prepared
13   to testify concerning the location of all notes,
14   samples, reports, and photographs relating to the
15   testing of William Glassley.
16       What did you do in order to investigate
17   and be prepared to testify today about those issues?
18       MR. FARRELL: Objection to form,
19   foundation, asked and answered at least a half dozen
20   times, harassing the witness.
21       THE WITNESS: I read the testimony,
22   looked at what we have, been able to find things, and

Page 743

1    spoke with counsel.
2    BY MR. PLACITELLA:
3        Q. Did counsel -- when you spoke to counsel,
4    did he tell you that -- did you ask him what happened
5    to the stuff?
6        MR. FARRELL: Objection -- objection to
7    form and foundation.
8        THE WITNESS: Not this specifically, no.
9    BY MR. PLACITELLA:
10       Q. Why not? That's what the court order
11   said. You are supposed to come here and talk about
12   that. Why wouldn't you ask him?
13       MR. FARRELL: Objection to form,
14   foundation, harassing the witness, asked and
15   answered.
16       THE WITNESS: Because I don't know the
17   location, because I don't know. We haven't found
18   them.
19   BY MR. PLACITELLA:
20       Q. And you don't know whether those -- that
21   material was destroyed?
22       MR. FARRELL: Objection to form,

Page 744

1    foundation, harassing the witness, asked and
2    answered.
3        THE WITNESS: I don't personally know.
4    BY MR. PLACITELLA:
5        Q. And counsel didn't tell you what happened
6    to it. Is that fair?
7        MR. FARRELL: Same objections, asked and
8    answered, harassing the witness.
9        THE WITNESS: I -- I just don't know what
10   happened to them.
11   BY MR. PLACITELLA:
12       Q. Do you know whether anyone at Engelhard
13   ever took control of Glassley's scientific data?
14       MR. FARRELL: Objection to form,
15   foundation, asked and answered.
16       THE WITNESS: I don't know. Again, I
17   don't know what he actually turned in, if he turned
18   it in. I presume somebody did, but I just don't
19   know.
20   BY MR. PLACITELLA:
21       Q. You have in front of you P-25?
22       A. Yes.

Page 745

1        Q. This is the request for admission
2    responses from BASF in this case?
3        A. Yes.
4        Q. You saw these the last time?
5        A. Yes.
6        Q. In preparing for today, did you go back
7    and look at them?
8        A. I'm sure I reviewed them at some point,
9    yes.
10       Q. Can you go to page 49, which is Request
11   No. 93?
12       A. Yes.
13       Q. Do you see No. 93 says, "At the
14   conclusion of the Westfall case, the samples
15   collected by William Glassley were turned over to
16   counsel for Engelhard."
17       And on the bottom, it says, "BASF admits
18   that certain samples collected by Dr. Glassley were
19   turned over to counsel for Engelhard." Do you see
20   that?
21       A. Yes.
22       Q. And counsel never told you that, in

1  preparation for your deposition, that they already
2  provided these answers?
3         MR. FARRELL:  Objection to form and
4  foundation.  He just said that he had this document
5  and looked at it as part of his preparation.
6         MR. PLACITELLA:  I hear you.
7  BY MR. PLACITELLA:
8      Q.   Go ahead.
9      A.   Yeah.  And it said pursuant to the
10  stipulations that I mentioned earlier.  And I
11  mentioned earlier that I don't doubt that he turned
12  some over.  I just can't identify what exactly he
13  turned.  So, I don't know if he turned over the
14  photomicrographs or the -- or the samples.
15     Q.   Well, you were supposed to investigate
16  and come here to testify.  Why would you not know
17  what BASF has already admitted in responses to
18  discovery in this case --
19         MR. FARRELL:  Objection to form.
20  BY MR. PLACITELLA:
21     Q.   -- if you were prepared to testify?
22         MR. FARRELL:  Objection to form,

1  foundation, argumentative.
2         Why are you wasting 15 minutes on
3  something that's been admitted in an RFA?  We covered
4  this today, on day two, day one, and it's been
5  admitted in an RFA.
6         Do you have something new to cover?
7  BY MR. PLACITELLA:
8      Q.   Sir, can you answer my question, why you
9  don't know this information?
10     A.   It just -- it says that certain samples
11  were collected.  I'm not disputing that.
12     Q.   It says that samples were collected.
13  Correct?
14     A.   Per the stipulation, yes.
15     Q.   Okay.  It says that -- the next one, 94,
16  says that photographs relating to the testing by
17  Glassley were turned -- turned over to Engelhard.
18  Correct?
19     A.   Yes.
20     Q.   And they admit that.  Correct?
21         MR. FARRELL:  Objection to form,
22  foundation.

1         THE WITNESS:  It says certain photographs
2  were turned over.
3  BY MR. PLACITELLA:
4      Q.   And No. 5 says that Dr. Glassley's notes
5  relating to the testing performed at the Johnson mine
6  were turned over to counsel for Engelhard.  Correct?
7         MR. FARRELL:  Objection to form,
8  foundation.
9         THE WITNESS:  Again, it says certain
10  notes.  Again, I don't know what ones.
11  BY MR. PLACITELLA:
12     Q.   Did you ask?
13     A.   No.
14     Q.   In light of these admissions, you never
15  asked in order to prepare for today's testimony?
16         MR. FARRELL:  Objection to form,
17  foundation, argumentative, harassing the witness.
18         THE WITNESS:  No.  I guess, because they
19  had already been admitted, there was no need to --
20  BY MR. PLACITELLA:
21     Q.   No need to prepare you on it even though
22  the Court said --

1         MR. FARRELL:  Excuse me.
2  BY MR. PLACITELLA:
3      Q.   -- that you should be ready to talk about
4  it, sir?
5         MR. FARRELL:  The witness is answering
6  your question, and you're interrupting him.  You're
7  also harassing him.  You've covered this on three
8  different days.  It's been admitted in an RFA, which
9  means there is no point in these questions at all.
10        If you're going to waste time covering
11  all this, despite what you told the Court about the
12  need for a third day, you should at least give
13  Mr. Steinmetz the courtesy of answering your question
14  without interrupting him with your harassment and
15  your bullying of him.
16        MR. PLACITELLA:  Are you done now?
17        MR. FARRELL:  Do you have an actual new
18  question to ask the witness?
19        MR. PLACITELLA:  Are you done now?
20        MR. FARRELL:  I'm finished.  Do you have
21  a new question?
22        MR. PLACITELLA:  Are you done now?  Just

Page 750

1  tell me when you're done, and I'll ask my next
2  question.
3        MR. FARRELL:  I'm finished.
4        MR. PLACITELLA:  Thank you very much.
5  BY MR. PLACITELLA:
6     Q.   Is this the first time you're finding out
7  that Dr. Glassley turned over his photographs,
8  samples, and notes of the testing he did in Westfall?
9        MR. FARRELL:  Objection to form,
10 foundation, misstates Mr. Steinmetz's testimony.
11       THE WITNESS:  No.  As I said, I've read
12 this before.  I read his deposition.  But reading his
13 deposition, it's not clear exactly what he turned
14 over or what he kept on his own.  That's all.
15 BY MR. PLACITELLA:
16    Q.   Can you go to 96, please.
17       Do you see where it says, "Engelhard or
18 its attorneys destroyed or disposed of all Johnson
19 mine ore samples tested by Dr. William Glassley in
20 the Westfall case"?
21    A.   Yes.
22    Q.   And they say -- they admit that at least

Page 751

1  certain of Dr. Glassley's talc samples were
2  destroyed.  You never knew that before today?
3        MR. FARRELL:  Objection to form,
4  foundation, misstates Mr. Steinmetz's testimony.
5        THE WITNESS:  Again, I obviously didn't
6  remember everything in this document.  I'm reading
7  it, and it says they were destroyed.  Some of them
8  were.  It doesn't say all of them, but certain talc
9  samples.
10 BY MR. PLACITELLA:
11    Q.   Do you see No. 99 where Dr. Glassley's
12 notes were destroyed?
13       MR. FARRELL:  Objection to form and
14 foundation.
15       THE WITNESS:  It says certain of them,
16 yes.
17 BY MR. PLACITELLA:
18    Q.   It says, "BASF admits that certain of
19 Dr. Glassley's note were turned over to counsel for
20 Engelhard and destroyed pursuant to the stipulation
21 and confidentiality order in place."
22       Do you see that?

Page 752

1     A.   Yes.
2        MR. FARRELL:  Objection to form and
3  foundation.
4  BY MR. PLACITELLA:
5     Q.   What did you do to determine what was
6  destroyed?
7        MR. FARRELL:  Same objections.
8        THE WITNESS:  As I mentioned before, my
9  preparation was to talk to counsel, read the Glassley
10 testimony.
11 BY MR. PLACITELLA:
12    Q.   So, did you ask counsel whether any of
13 the evidence was destroyed by BASF or Engelhard?
14       MR. FARRELL:  Objection to form and
15 foundation.
16       THE WITNESS:  It already says in here
17 that some was.
18 BY MR. PLACITELLA:
19    Q.   But did you ask in preparing for today's
20 deposition?
21       MR. FARRELL:  Same objections.
22       THE WITNESS:  We met for a few days.  I

Page 753

1  don't remember specifically what I asked about that.
2  BY MR. PLACITELLA:
3     Q.   Do you see on No. 102, which you have up
4  here, that the photographs of Dr. Glassley were
5  destroyed?
6        MR. FARRELL:  Objection to form and
7  foundation.
8        THE WITNESS:  It says that certain of his
9  photographs were turned over.  Again, I don't know
10 what ones or what he had.
11 BY MR. PLACITELLA:
12    Q.   Did you ask?
13    A.   No.
14    Q.   Who was it at Engelhard that destroyed
15 this evidence?
16       MR. FARRELL:  Objection to form and
17 foundation.
18       THE WITNESS:  I don't know that myself.
19 BY MR. PLACITELLA:
20    Q.   Did you ask?
21       MR. FARRELL:  Objection to form and
22 foundation, assumes facts.

MAGNA ▶
LEGAL SERVICES

Page 754

1    THE WITNESS: No.
2    BY MR. PLACITELLA:
3    Q.   Without that evidence, how do we know
4    whether it's important or not?
5    MR. FARRELL: Objection to form,
6    foundation.
7    THE WITNESS: I don't know.
8    MR. FARRELL: Are you moving to something
9    else, Mr. Placitella?
10   MR. PLACITELLA: Do you need to take a
11   break?
12   MR. FARRELL: I would like to if you are
13   changing topics.
14   MR. PLACITELLA: I can take a break any
15   time you want.
16   MR. FARRELL: Let's take a break.
17   THE VIDEOGRAPHER: The time is now
18   2:36 p.m. We are going off the record.
19   (Recess taken.)
20   THE VIDEOGRAPHER: The time is now
21   2:58 p.m. We are back on the record.
22   MR. PLACITELLA: So, for the record, we

Page 755

1    broke at 2:36, and it is now 2:58 p.m.
2    BY MR. PLACITELLA:
3    Q.   You had indicated that documents were
4    collected and destroyed and evidence was collected
5    and destroyed pursuant to a stipulation. Do you
6    recall that?
7    MR. FARRELL: Objection to form.
8    THE WITNESS: Yes. That was in the
9    admissions, yes.
10   (        Exhibit
11   No.          ,
12   , w
13   marked for identification.).
14   BY MR. PLACITELLA:
15   Q.   I am going to show you what's been marked
16   Exhibit 42.
17   MR. FARRELL: Do you have a copy of me,
18   Mr. Placitella?
19   MR. PLACITELLA: Yes, I do, because it
20   was light.
21   BY MR. PLACITELLA:
22   Q.   Exhibit 42 is the stipulation and

Page 756

1    confidentiality order entered in the Westfall case.
2    Do you see that?
3    A.   Yes.
4    Q.   Okay. Now, can you turn to page 3,
5    please.
6    A.   Yes.
7    Q.   Paragraph 2.
8    Do you see where it says, "This
9    stipulation shall be applicable to govern all
10   documents, including any transcripts of depositions
11   of Engelhard hereto or hereafter furnished by or on
12   behalf of Engelhard to the attorneys for any of the
13   parties to the above-captioned action"?
14   A.   Yes.
15   Q.   And do you see, under 4A, it talks about
16   documents furnished by Engelhard?
17   MR. FARRELL: Objection to form.
18   THE WITNESS: Yes, I see that.
19   BY MR. PLACITELLA:
20   Q.   Can you go to the number F on page 5?
21   A.   Yes.
22   Q.   It says, "At the conclusion of all

Page 757

1    proceedings herein, all documents subject to the
2    terms of the stipulation shall be returned to Cahill
3    Gordon."
4    Do you see that?
5    A.   Yes.
6    Q.   There is nothing in the stipulation that
7    says that the plaintiff's lawyer has to turn over the
8    results from his own expert, is there?
9    MR. FARRELL: Objection to form,
10   foundation, beyond the scope.
11   THE WITNESS: I don't know. I mean, I
12   could read this whole document, but it's a legal
13   document, and I just wouldn't know.
14   BY MR. PLACITELLA:
15   Q.   Oh, but you said the stuff was taken and
16   destroyed pursuant to his order. I don't see
17   anything in his order that says that you can destroy
18   the plaintiff's stuff. It just says that, if I'm
19   reading it right, that Engelhard could get their own
20   stuff back.
21   Can you show me anywhere in this order
22   where it says that you had the right to take other

MAGNA
LEGAL SERVICES

Page 758

1 evidence in the case back and destroy it?
2       MR. FARRELL: Objection to form,
3 foundation, beyond the scope. Misstates
4 Mr. Steinmetz's testimony.
5       Go ahead.
6       THE WITNESS: I didn't state as personal
7 knowledge that it was done per this stipulation. I
8 was reading from the document that said, from the
9 admissions that said certain documents or certain
10 samples were destroyed per the stipulation agreement.
11 BY MR. PLACITELLA:
12    Q.  Can we take a minute? Can you look and
13 tell me where it says in this document that it was
14 okay to destroy evidence that came from the
15 plaintiff's expert? I don't see it anywhere.
16       MR. FARRELL: Objection to form,
17 foundation, beyond the scope.
18       THE WITNESS: I'm just not a lawyer. I
19 wouldn't be able to do that.
20 BY MR. PLACITELLA:
21    Q.  So, what do you know about the Martin
22 case?

Page 759

1    A.  Very little. That it was a case in the
2 1990s that had to do with EMTAL talc, very little
3 more than that, and that Glassley was involved in it.
4    Q.  Well, what kind of investigation did you
5 find out -- did you conduct to find out about the
6 Martin case?
7       MR. FARRELL: Objection to form,
8 foundation, beyond the scope.
9       THE WITNESS: No specific investigation.
10 BY MR. PLACITELLA:
11    Q.  Did you do anything?
12       MR. FARRELL: Objection to form,
13 foundation.
14       THE WITNESS: I worked with counsel to
15 prepare for this deposition in general. I didn't do
16 anything specific to that.
17 BY MR. PLACITELLA:
18    Q.  Well, it says here, for example, pursuant
19 to the court order, that you were to come here and
20 talk about the location of all notes, samples,
21 reports, photographs related to the testimony by
22 William Glassley in the Martin case. Do you see

Page 760

1 that?
2       MR. FARRELL: Objection to form.
3       THE WITNESS: I'm not looking at it, but
4 I know you read it, yes.
5 BY MR. PLACITELLA:
6    Q.  And the destruction or loss of any
7 evidence from the Martin case. Right?
8       MR. FARRELL: Objection to form,
9 foundation, misstates the notice.
10       THE WITNESS: I don't have that in front
11 of me, but I believe that you read that correctly.
12 BY MR. PLACITELLA:
13    Q.  But you didn't do anything to find out
14 what happened to the evidence from the Martin case?
15       MR. FARRELL: Objection to form,
16 foundation, misstates the notice, misstates
17 Mr. Steinmetz's testimony, beyond the scope of the
18 notice.
19       THE WITNESS: As I mentioned before, I --
20 I've read his testimony. I talked to counsel about
21 what his testimony was in order to prepare for this.
22 BY MR. PLACITELLA:

Page 761

1    Q.  So, you know what happened was that,
2 sometime after the Westfall case was settled and
3 Dr. Glassley's materials were turned over to counsel
4 for Engelhard, another case in Rhode Island was filed
5 called the Martin case, by a woman named Cuzzone.
6 Correct?
7       MR. FARRELL: Objection to form,
8 foundation.
9       THE WITNESS: I've seen the name. I -- I
10 wouldn't have known that that was necessarily the
11 Martin case, but I've seen the name Cuzzone, yes.
12 BY MR. PLACITELLA:
13    Q.  Okay. And do you recall that what
14 happened in the Martin case was that Cuzzone got
15 ahold of some of the materials from the Westfall case
16 and hired Dr. Glassley. Right?
17       MR. FARRELL: Objection to form and
18 foundation.
19       THE WITNESS: Only what I saw in the --
20 in the testimony that Glassley gave. I know there
21 were a couple of exhibits that mentioned Cuzzone's
22 name and the potential source of those. That's all I

MAGNA
LEGAL SERVICES

Page 762

1  know about it from what was in his testimony.
2  BY MR. PLACITELLA:
3      Q.   Well, you know what happened was, from
4  his testimony, that Cuzzone got some materials from
5  the Westfall case and ended up hiring Glassley in
6  that case.  Correct?
7          MR. FARRELL:  Objection to form,
8  foundation.
9          THE WITNESS:  I don't remember that
10 specifically.  I'm not saying it's not true.  I just
11 don't remember it specifically.
12 BY MR. PLACITELLA:
13     Q.   Can you take out Dr. Glassley's dep and
14 go to page 119.
15     A.   Yes.
16     Q.   Okay.  This was Mr. Farrell asking him
17 questions.
18         It says, "Dr. Glassley, before we just
19 took a break, we were about to discuss the Martin
20 case and your work in that case with Elizabeth
21 Cuzzone.  Do you recall that?
22         "ANSWER:  Yes.

Page 763

1          "Do you remember approximately when
2  Ms. Cuzzone first contacted you?
3          "No.
4          "Tell me about your first communication
5  with Ms. Cuzzone.
6          "As I recall, she called me on the phone.
7  We had a brief chat.  She asked me if I had
8  participated in the Westfall case.  Other than that,
9  I don't recall what the conversation, where it went.
10         "QUESTION: So, when Ms. Cuzzone first
11 contacted you, she already knew about the Westfall
12 case?
13         "ANSWER: I believe so."
14         Does that refresh your memory?
15         MR. FARRELL:  Objection to form and
16 foundation.
17         THE WITNESS:  I remember reading this
18 now.
19 BY MR. PLACITELLA:
20     Q.   Okay.  And do you recall that Cuzzone
21 asked Mr. Glassley to do a report in the Martin case
22 based upon what he did in the Westfall case?

Page 764

1          MR. FARRELL:  Objection to form,
2  foundation, asked and answered.
3          THE WITNESS:  I recall that he did a
4  report for this case.  I don't recall the specifics
5  of the testimony and how it was requested, but I do
6  know that he did do one, yes.
7  BY MR. PLACITELLA:
8      Q.   Okay.  And do you recall that Cuzzone had
9  certain evidence that she had gotten from the Martin
10 case, and she sent it to Glassley.
11         MR. FARRELL:  Objection.
12 BY MR. PLACITELLA:
13     Q.   Correct?
14         MR. FARRELL:  Objection to form,
15 foundation, beyond the scope.
16         THE WITNESS:  I don't know.  I don't
17 recall that.
18 BY MR. PLACITELLA:
19     Q.   Can you go to page 51, please, of the
20 Glassley dep.  Actually, 50.
21         Do you see line 16, they're talking about
22 Exhibit 6 to his deposition, marked from the Westfall

Page 765

1  case, entitled "Plaintiff's Answers to
2  Interrogatories of Defendant Whittaker Clark &
3  Daniels."
4          "Do you see that?
5          "Yes, I do.
6          "The document appears to be dated
7  March 2, 1983.  Do you see that last page?  Have you
8  ever seen that document before?
9          "Yes.
10         "Have you ever seen it before?
11         "It was in material that Elizabeth
12 Cuzzone sent to me, and I believe it was something
13 that Mr. Prentiss had also sent to me."
14         Do you see that?
15     A.   Yes.
16     Q.   Okay.  Then a little further down:
17         "Do you remember what Ms. Cuzzone told
18 you when she gave you the document we have marked as
19 Exhibit 6?
20         "My recollection is that she was
21 providing to me materials from the Westfall case and
22 wanted me to look at them.

MAGNA
LEGAL SERVICES

## Page 766

1        "Did she provide you with any other
2   materials from the Westfall case?"
3        "Much of what's here.
4        "When you say 'here,' you are referring
5   to the documents we have marked as Exhibits 3 and 4
6   to the deposition.  Is that correct?
7        "ANSWER:  That's correct."
8        Do you see that?
9   A.   Yes.
10  Q.   Okay.  Then it goes on:
11       "If you would, Dr. Glassley, take a look
12  at the exhibits" -- this is Mr. Farrell -- "we have
13  marked so far, and I would like to know whether
14  Ms. Cuzzone, at the time of the Martin case, gave you
15  documents from the Westfall case other than those we
16  have marked as an -- as an exhibit to this
17  deposition.
18       "Not that I know of.  Not that I recall.
19  This material -- this is material she did provide me.
20  I'm not certain it's everything that she provided
21  me."
22       Next page.

## Page 767

1        "Let me ask you differently," Mr. Farrell
2   says, "a different way.  We have now marked a handful
3   of documents that you have in your possession and one
4   that -- which we had marked as Exhibit 6 that I
5   presented to you that you said that Ms. Cuzzone gave
6   to you at the time of the Martin case."
7        "ANSWER:  Correct."
8        Do you see that?
9   A.   Yes.
10  Q.   So, does that refresh your recollection
11  that Dr. Glassley was asked to prepare a report in
12  the Martin case using his own field notes plus
13  information provided to him by Ms. Cuzzone?
14       MR. FARRELL:  Objection to form,
15  foundation, beyond the scope.
16       THE WITNESS:  Yes, I'd have to read the
17  whole thing through.  I just recall that, at the end
18  of the deposition, toward the end, he starts talking
19  about information that he had and that he had lost in
20  a move.
21  BY MR. PLACITELLA:
22  Q.   And this case, I'll represent to you, was

## Page 768

1   filed sometime in 2004.  That would have been roughly
2   20 years after the Westfall case.  Were you aware of
3   that?
4        MR. FARRELL:  Objection to form and
5   foundation, beyond the scope.
6        THE WITNESS:  If that's the date, that
7   would be about 20 years from 1983.
8   BY MR. PLACITELLA:
9   Q.   Did you make a search for the Martin file
10  in the historical litigation files?
11       MR. FARRELL:  Objection to form,
12  foundation, beyond the scope of the notice.
13       THE WITNESS:  I did not, no.
14  BY MR. PLACITELLA:
15  Q.   Did you ask that a search be made for the
16  Martin file to see what evidence existed from that
17  file from Dr. Glassley?
18       MR. FARRELL:  Objection to form and
19  foundation.
20       THE WITNESS:  I did not request a search
21  be done.  It may have been done.  I didn't ask for
22  one.

## Page 769

1   BY MR. PLACITELLA:
2   Q.   Were you ever told that it was done?
3        MR. FARRELL:  Same objections.
4        THE WITNESS:  I don't recall.
5   BY MR. PLACITELLA:
6   Q.   Well, pursuant to the court order, it
7   asks that you be prepared to testify concerning the
8   current location of all notes, samples, reports and
9   photographs related to the Martin case.  What did you
10  do to do that?
11       MR. FARRELL:  Objection to form,
12  foundation, argumentative, harassing the witness,
13  asked and answered.
14       THE WITNESS:  As I mentioned, I reviewed
15  our files.  I talked to counsel, and I read
16  Glassley's deposition.
17  BY MR. PLACITELLA:
18  Q.   But you never made a request for the
19  Martin file?
20       MR. FARRELL:  Same objections.
21       THE WITNESS:  No, I did not.
22  BY MR. PLACITELLA:

Page 770

1      Q.   Was a search ever conducted of this
2  database that's word-searchable for -- for the Martin
3  case?
4          MR. FARRELL:  Same objections.  Beyond
5  the scope.
6          THE WITNESS:  I would think so.  I just
7  didn't remember talking about it.
8  BY MR. PLACITELLA:
9      Q.   But nothing was provided to you related
10 to the Martin case other than the information I
11 provided to Mr. Farrell.  Correct?
12         MR. FARRELL:  Objection to form,
13 foundation, misstates the record.
14         THE WITNESS:  I just don't know.  I've
15 looked at so much information over the last three
16 weeks, I can't say for sure.
17 BY MR. PLACITELLA:
18     Q.   Who at Engelhard was aware of the Martin
19 case and the evidence that was produced by Cuzzone
20 about the Westfall case, do you know?
21         MR. FARRELL:  Objection to form,
22 foundation, beyond the scope of the notice.

Page 771

1          THE WITNESS:  I don't know.
2  BY MR. PLACITELLA:
3      Q.   At the time the Martin case was filed and
4  this information was produced by Ms. Cuzzone and
5  Dr. Glassley, was any type of investigation launched
6  to find out if there was any other information
7  related to the Westfall case?
8          MR. FARRELL:  Objection to form,
9  foundation, beyond the scope of the notice.
10         THE WITNESS:  I don't know.
11 BY MR. PLACITELLA:
12     Q.   Well, what was done by Engelhard and its
13 counsel when the information from the -- from the
14 Westfall case resurfaced in the Martin case?
15         MR. FARRELL:  Objection to form,
16 foundation, beyond the scope of the notice.
17         Do you have any questions that are
18 actually within the scope of your notice,
19 Mr. Placitella?
20 BY MR. PLACITELLA:
21     Q.   Can you answer my question, please?
22     A.   I don't know.

Page 772

1          MR. FARRELL:  We've spent 20 minutes
2  today on the material you said you needed a third day
3  for.
4  BY MR. PLACITELLA:
5      Q.   Who took possession of the evidence from
6  the Martin case when that case was terminated?
7          MR. FARRELL:  Objection to form,
8  foundation, beyond the scope of the notice.
9          THE WITNESS:  I don't know.
10 BY MR. PLACITELLA:
11     Q.   In preparing for today's deposition, have
12 you produced anything from the Martin case?
13         MR. FARRELL:  Objection to form,
14 foundation.
15         THE WITNESS:  I'm sorry.  "Produced" in
16 what context?
17 BY MR. PLACITELLA:
18     Q.   As we sit here, have you produced
19 anything from the Martin case other than what I gave
20 to Mr. Farrell?
21         MR. FARRELL:  Objection to form,
22 foundation, beyond the scope of the notice, misstates

Page 773

1  the notice.
2          THE WITNESS:  I don't know.  I just don't
3  know everything that's been produced, so much has
4  been produced.
5  BY MR. PLACITELLA:
6      Q.   How are you prepared to talk about the
7  current location of notes, samples, reports, and
8  photographs related to the testing by Glassley in the
9  Martin case if you never looked?
10         MR. FARRELL:  Objection to form,
11 foundation, asked and answered a half dozen or more
12 times at this point.
13         THE WITNESS:  Again, I talked to counsel
14 and was prepared on what we had and where it would
15 be.
16 BY MR. PLACITELLA:
17     Q.   And you produced nothing related to the
18 Martin case.  Correct?
19         MR. FARRELL:  Objection to form,
20 foundation, misstates the record.
21         THE WITNESS:  I just don't know
22 everything that's been produced in this case.

Page 774

1      MR. FARRELL: I -- I don't know why you
2  ask these questions, Mr. Placitella, that are
3  contrary to the facts as you know them. You know
4  that documents related to the Martin case have been
5  produced to you. I don't know why you persist in
6  asking these questions that assume a set of facts
7  that are contrary to reality.
8      MR. PLACITELLA: Thank you for your
9  testimony.
10      MR. FARRELL: Are you disputing --
11      MR. PLACITELLA: I'm not going to respond
12  to any of your questions.
13      MR. FARRELL: Are you disputing this man
14  produced documents --
15      MR. PLACITELLA: This man was ordered to
16  produce information here today and be prepared to
17  testify about it.
18      MR. FARRELL: And he's done that.
19      MR. PLACITELLA: Well, that will be for
20  the Court to determine.
21      Could you mark this next, please?
22      MR. FARRELL: I don't know why you would

Page 775

1  ask the witness questions based on facts you know not
2  to be true. But if you want to persist in doing it,
3  then I suppose I can't stop you from doing that.
4      MR. PLACITELLA: Yes, sir.
5      MR. FARRELL: You have now said no
6  documents from the Martin case have been produced to
7  you and yet, lo and behold, you pull out a document
8  from the Martin case that we produced to you.
9      MR. PLACITELLA: Yes, sir. I was asking
10  about here today, produced here today. He was
11  supposed to bring all the evidence related to the
12  Martin case with him today.
13      MR. FARRELL: Which request says "Bring
14  all of the evidence from the Martin case with you"?
15      MR. PLACITELLA: "The current location of
16  all notes, samples, reports, and photographs." He's
17  supposed to be able to testify.
18      MR. FARRELL: That's a topic --
19      MR. PLACITELLA: "Their destruction or
20  loss." Okay?
21      MR. FARRELL: That's a topic, sir. Where
22  does it say, "Bring all of the evidence in the Martin

Page 776

1  case"?
2      MR. PLACITELLA: "All notes, samples,
3  reports, photographs, or other printouts relating to
4  the testing by William Grassley in the Westfall and
5  the Martin case." That's what he's supposed to
6  bring.
7      MR. FARRELL: Yes, William Glassley, not
8  the Martin case. You are holding Dr. Glassley's
9  report from the Martin case. Show me where it says
10  he is supposed to bring all the evidence from the
11  Westfall case or from the Martin case.
12      MR. PLACITELLA: Can we mark this,
13  please?
14      MR. FARRELL: It's not in there.
15      MR. PLACITELLA: Thank you. Thank you
16  for your testimony. We'll let the Court decide.
17          (Plaintiff's Exhibit No. 43,
18          document entitled Summary of
19          Activities Related to Services
20          Rendered for Decof & Grimm in the
21          Case of David H. Westfall vs.
22          Whittaker, Clark & Daniels, et

Page 777

1          al., was marked for
2          identification.)
3  BY MR. PLACITELLA:
4      Q.   I want to show you what's been marked
5  Plaintiff's 43.
6      MR. FARRELL: Do you have a copy for me?
7      MR. PLACITELLA: No, I don't.
8  BY MR. PLACITELLA:
9      Q.   Have you ever seen this before?
10      A.   Yes.
11      Q.   Okay. When is the first time you saw
12  this?
13      A.   In the last couple of weeks during
14  preparation.
15      Q.   Okay. Did you produce this here today as
16  part of the materials that were requested?
17      A.   I'm sorry. I'm not sure what you mean,
18  "did you produce it here today."
19      Q.   Did you produce it as a representative of
20  BASF? Is it in any of those boxes behind you or in
21  those exhibits in front of you?
22      A.   I don't know that it is in this room

MAGNA
LEGAL SERVICES

Page 778

1  today, but I know it has been produced.
2      Q.   But you were told and you were ordered to
3  bring anything related to the testing by William
4  Glassley with you today.  Correct?
5          MR. FARRELL:  He just said it's been
6  produced to you.  What is the problem?
7  BY MR. PLACITELLA:
8      Q.   You didn't bring anything with you today.
9  Correct?
10     A.   I guess when I read that, it didn't say
11 that I had to bring things with me.  It just said
12 that I had to be prepared to talk about them.
13         MR. FARRELL:  Mr. Placitella, are you
14 disputing this report was produced to you?
15         MR. PLACITELLA:  I'm going to get there.
16 BY MR. PLACITELLA:
17     Q.   Number 8 says, "All notes, samples,
18 reports, photographs, or other printouts relating to
19 the testing by William Glassley in the Martin case."
20 Correct?
21     A.   I'm sorry.  I don't have it in front of
22 me.

Page 779

1      Q.   That's what you were to produce today,
2  number 8.
3      A.   I guess I didn't -- it doesn't say -- I
4  didn't read it as "bring it with you."  It just says
5  "Request for production," and it's been produced.
6      Q.   It says you are supposed to produce it at
7  this deposition, sir, and be prepared to talk about
8  it.
9          Are you prepared to talk about this
10 report?
11         MR. FARRELL:  Objection to form and
12 foundation.  Misstates the notice.
13         THE WITNESS:  I've seen it, and I'm
14 prepared to talk about it.
15 BY MR. PLACITELLA:
16     Q.   Do you know where any of the data that's
17 referred to in this report is located?
18         MR. FARRELL:  Objection to form,
19 foundation, vague as to data.
20         THE WITNESS:  I'm sorry.  Do you mean the
21 sources of the information in here?
22 BY MR. PLACITELLA:

Page 780

1      Q.   Yes, sir, the SEM studies that he did,
2  the photographs, the samples, the TEM analysis, all
3  the things referred to.  Do you know where any of
4  that is?
5          MR. FARRELL:  Objection to form,
6  foundation.
7          THE WITNESS:  I don't know where it is,
8  and I know, as I mentioned, later on in his
9  testimony, Glassley may have had some of it, but he
10 lost it as well.  So, as far as I know, it doesn't
11 exist.  I don't know where it is.
12 BY MR. PLACITELLA:
13     Q.   Your testimony is Dr. Glassley lost his
14 photographs and his samples and the electro
15 micrographs.  Is that your testimony?
16         MR. FARRELL:  Objection to form,
17 foundation, argumentative.
18         THE WITNESS:  No.  My testimony is just
19 that some of the information that was used in here he
20 said he had when he wrote this, and he doesn't have
21 it now.
22 BY MR. PLACITELLA:

Page 781

1      Q.   Yes, sir.  He refers in this report to
2  SEM studies that he did.  Correct?
3      A.   I'd have to read it again, but, yes, I
4  think he does talk about that, yes.
5      Q.   And where are they?
6          MR. FARRELL:  Objection to form,
7  foundation.
8          THE WITNESS:  I don't know.
9  BY MR. PLACITELLA:
10     Q.   He refers to his TEM grids.  Where are
11 they?
12         MR. FARRELL:  Objection to form and
13 foundation.
14         THE WITNESS:  I -- I don't know.
15 BY MR. PLACITELLA:
16     Q.   He refers to samples that he tested.
17 Where are they?
18         MR. FARRELL:  Same objections.
19         THE WITNESS:  Again, I don't know, and I
20 don't know, when he refers to these, whether he's
21 talking about old ones that he had tested in the past
22 or he tested recently.  I don't know.

MAGNA
LEGAL SERVICES

1    BY MR. PLACITELLA:
2        Q.   Does anybody at BASF know?
3            MR. FARRELL: Objection to form,
4    foundation.
5            THE WITNESS: I don't know if they exist.
6    So, I don't know if anybody at BASF knows.
7    BY MR. PLACITELLA:
8        Q.   Okay.  The title of this report, correct,
9    is "Summary of Activities Related To Services
10   Rendered For DeCof & Grimm in the case of David
11   Westfall vs. Whittaker Clark & Daniels, et al."
12   Correct?
13       A.   There is a typo.  It says "related to
14   survives," but that's what he meant.
15           MR. PLACITELLA: Okay.  Can you mark this
16   next, please?
17           (Plaintiff's Exhibit No. 44,
18           letter dated August 10, 2010 from
19           Robert J. Kelly to Christopher
20           Placitella, was marked for
21           identification.)
22           MR. FARRELL: Do you have a copy for me?

1            MR. PLACITELLA: That's the only copy I
2    have.
3            MR. FARRELL:  So, you don't have a copy
4    for me?
5            MR. PLACITELLA: No, I don't.  Sorry.
6    BY MR. PLACITELLA:
7        Q.   Exhibit 44 is the August 10, 2010, letter
8    from Mr. Kelly to myself.  And it's the privilege log
9    in the Comandini, Volk, Fuschino, and Paduamo cases.
10   Do you see that?
11       A.   Yes.
12       Q.   Can you go to page 7, please.
13       A.   Yes.
14       Q.   Do you see the fourth entry from the
15   bottom?
16       A.   Yes.
17       Q.   Do you see where it says BASF 611-1626?
18       A.   Yes.
19       Q.   Do you see how that corresponds with the
20   report of Dr. Glassley?
21           MR. FARRELL: Objection to form,
22   foundation, beyond the scope of the notice.

1    BY MR. PLACITELLA:
2        Q.   Do you see the Bates numbers are the
3    same?
4        A.   Those numbers are in this document, yes.
5        Q.   Do you see where it says, "Summary of
6    activities related to services rendered"?
7        A.   Yes.
8        Q.   And it's being withheld as attorney work
9    product.  Do you see that?
10       A.   Yes.
11           MR. FARRELL: Objection to form,
12   foundation, beyond the scope of the notice.
13   BY MR. PLACITELLA:
14       Q.   Can you tell me how the report of
15   Dr. Glassley from -- that he authored in the Martin
16   case could, in any way, be withheld as work product
17   on behalf of BASF?
18           MR. FARRELL: Objection to form,
19   foundation, beyond the scope of the notice.
20           THE WITNESS: I'm not a lawyer.  I have
21   no idea.
22   BY MR. PLACITELLA:

1        Q.   Is there any way that you could look at
2    Dr. Glassley's report and figure out, in looking at
3    the entry on page 7, that it's actually the report of
4    Dr. Glassley?
5            MR. FARRELL: Objection to form,
6    foundation, beyond the scope of the notice.
7            THE WITNESS: I don't know.
8    BY MR. PLACITELLA:
9        Q.   Do you see, up on the top of Glassley's
10   report, it's typed in, "Privileged and confidential.
11   Produced under seal in this case"?
12       A.   Yes. I see that.
13       Q.   Do you know, before this was ultimately
14   turned over in this case, had anybody else ever been
15   given, from 2004 and 2006 forward, a copy of
16   Dr. Glassley's report?
17           MR. FARRELL: Objection to form,
18   foundation, beyond the scope of the notice.
19           THE WITNESS: I don't know.
20   BY MR. PLACITELLA:
21       Q.   Was anyone -- do you have any idea, from
22   the time this was put on the privilege log until

1    sometime in this case, what happened to the materials
2    that were referenced in -- in this report?
3         MR. FARRELL:  Objection to form,
4    foundation, beyond the scope of the notice.
5         THE WITNESS:  All I know is that Glassley
6    said he lost some materials.
7    BY MR. PLACITELLA:
8         Q.    Well, he didn't lose his report.  Right?
9         MR. FARRELL:  Same objections.
10        THE WITNESS:  I don't know.  He might
11   have.  He didn't -- he didn't remember what he had
12   and what he had lost.
13   BY MR. PLACITELLA:
14        Q.    Well, apparently, BASF had the report,
15   didn't they?
16        MR. FARRELL:  Objection to form and
17   foundation.
18        THE WITNESS:  It's here, yes.
19   BY MR. PLACITELLA:
20        Q.    The last time we were together, you had a
21   book of document retention policies related to
22   Engelhard and BASF.  Do you recall that?

1         A.    Yes.
2         Q.    Okay.  Did you find any document
3    retention policy that was being used by BASF before
4    August 1984?
5         MR. FARRELL:  Objection to form.
6         THE WITNESS:  There was one from
7    Engelhard dated in the 1960s.
8    BY MR. PLACITELLA:
9         Q.    And what did that relate to?
10        A.    Document retention.
11        Q.    Did it allow the destruction of evidence
12   in cases and testing?
13        MR. FARRELL:  Objection to form and
14   foundation.
15        THE WITNESS:  I'd have to look at it
16   again.  It addressed legal documents, so, I'm sure it
17   addressed that.
18   BY MR. PLACITELLA:
19        Q.    Do you recall that Dr. Hemstock testified
20   in this case that, until he sent out the March 7,
21   1984 memo that was written by legal, that everything
22   in Research and Development was kept permanently?

1         MR. FARRELL:  Objection to form,
2    foundation.  Dr. Hemstock's testimony is what it is.
3         THE WITNESS:  I don't remember that
4    testimony.  There was so much of it.
5    BY MR. PLACITELLA:
6         Q.    Do you have any reason to dispute that
7    testimony?
8         MR. FARRELL:  Same objections.
9         THE WITNESS:  I don't have any reason to
10   support it or dispute it.  I don't know.
11        MR. PLACITELLA:  I am getting close to
12   the end, so why don't we take ten minutes, and I'll
13   assemble what questions I have left.  And hopefully
14   you will be done with me for the day.
15        THE VIDEOGRAPHER:  The time is now
16   3:29 p.m.  We are going off the record.
17        (Recess taken.)
18        THE VIDEOGRAPHER:  The time is now
19   3:45 p.m.  We are back on the record.
20   BY MR. PLACITELLA:
21        Q.    Just a few more questions.
22        So, just to close the loop, other than

1    the Glassley report that we marked, I think, as
2    Exhibit 45 and the documents that were identified at
3    Dr. Glassley's deposition, does BASF have any other
4    documents related to the testing of EMTAL talc by
5    Dr. Glassley?
6         MR. FARRELL:  Objection to form,
7    foundation.
8         Are you including or excluding privileged
9    documents?
10        MR. PLACITELLA:  I'm not -- I'm not going
11   to the privileged documents.  I'm not -- I can't do
12   that.
13        MR. FARRELL:  I understand you can't.
14   I'm trying to understand if you want his answer based
15   on what he knows --
16        MR. PLACITELLA:  It has got to be what he
17   knows.  I can't ask him about privileged documents.
18        THE WITNESS:  I'm not aware of others.
19   There may be some that were listed in the log.  I
20   just don't -- in the privilege log.  I just don't
21   remember ever seeing them.
22   BY MR. PLACITELLA:

Page 790

1    Q.   And you didn't really examine the
2  privilege log to see if there was anything that would
3  be relevant. Is that fair? I mean closely.
4    A.   Correct. Yes.
5    Q.   A number of documents talked about
6  Mr. Newger, who was the geologist. Have you located
7  Mr. Newger's lab notebook -- Ms., rather?
8         MR. FARRELL: Objection to form.
9         THE WITNESS: I don't know that we found
10 hers. I don't recall that we have.
11 BY MR. PLACITELLA:
12   Q.   Did someone look?
13   A.   Yes, we looked.
14        MR. PLACITELLA: I think that's all the
15 questions I have for now. Thank you very much.
16        MR. FARRELL: Are you finished?
17        MR. PLACITELLA: Unless somebody else has
18 questions and spurs more questions in my mind. But
19 at this point, I'm finished.
20        MR. FARRELL: Well, I don't have any
21 questions at this point.
22        So, let me just say for the record that,

Page 791

1  over the course of three days, Mr. Placitella asked
2  Mr. Steinmetz dozens and dozens of questions about
3  dozens and dozens of different testing documents.
4         Many of those questions related to 38
5  samples of talc that were tested in 1979, and after
6  asking him dozens of questions about those 38 samples
7  and Mr. Steinmetz saying he wasn't sure about the
8  test results and how the samples corresponded to
9  those, I believe Mr. Steinmetz ultimately said he
10 didn't think we had those test results.
11        And let me just say, just so the record
12 is clear, because I don't want this transcript to be
13 read or misinterpreted by --
14        MR. PLACITELLA: You cannot testify.
15        MR. FARRELL: Excuse me, sir.
16        MR. PLACITELLA: Okay, do what you want.
17 I'll be here another hour, I guess.
18        MR. FARRELL: Tab 21 is a March 23, 1979,
19 memo, subject "Talc investigation," that
20 Mr. Placitella used to ask questions about 38 rock
21 samples that were studied in 1979. I just want the
22 record to be clear which documents we're talking

Page 792

1  about.
2         Tab 25 from the Cahill compilation, which
3  I believe was marked as P-19, and April 11, 1979, an
4  Engelhard document, talc investigation review and
5  update, Bates No. BASF_SAMPSON 13154, which also
6  discusses the 38 rock samples.
7         And Tab 32 from P-19, again, the Cahill
8  compilation, this is a September 19, 1979, letter
9  from the Georgia Tech Engineering Experiment Station
10 to Engelhard which contains numerous test results
11 from testing that had been done in 1979.
12        I don't know why Mr. Placitella decided
13 to ask dozens of questions suggesting that Engelhard
14 or BASF doesn't have the results of the testing on
15 those 38 rock samples when he knows and I know that
16 BASF has those test results and that they've been
17 produced to Mr. Placitella and that the test results
18 exist.
19        So, I'm just going to say that for the
20 record because I believe Mr. Steinmetz misspoke after
21 he had been berated over the course of dozens and
22 dozens of questions in multiple days about it, and I

Page 793

1  just wanted the record to be clear about that.
2         MR. PLACITELLA: I appreciate your
3  testimony, Mr. Farrell.
4  BY MR. PLACITELLA:
5    Q.   So, I guess I have a few more questions
6  for you, sir.
7         Going to Tab No. 21 of P-15.
8         MR. FARRELL: Are you disputing,
9  Mr. Placitella, that we have the test results?
10        MR. PLACITELLA: You did your testimony.
11 Now I'm going to ask Mr. Steinmetz questions.
12        MR. FARRELL: You've already asked him
13 your questions.
14 BY MR. PLACITELLA:
15   Q.   Going to Tab 21 just referred to by
16 Mr. Farrell, is there anything in Tab 21 about the
17 results of the 38 -- of the analysis of the 38 rock
18 samples, what the results were?
19   A.   It talks about the preparation of them
20 being in process, crushing, drying and pulverizing.
21   Q.   It doesn't give any results. Correct?
22   A.   Not at this point.

Page 794

1    Q.   Okay. Can you put up Tab No. 30 -- 25,
2  Mr. Farrell just referred to.
3        Is there anything in Tab No. 25 that
4  provides the results for what was -- for the study
5  that was conducted by Mr. Hemstock and Mr. Gale of
6  the rock samples at the EMTAL mine?
7    A.   Is it okay if I take a look at it?
8    Q.   Yes, sir, please.
9    A.   Great.
10       MR. FARRELL: While he's reading that,
11  Mr. Placitella --
12       MR. PLACITELLA: I'm not answering any
13  more of your questions.
14       MR. FARRELL: Well, you've written --
15       MR. PLACITELLA: I'm not answering any of
16  your questions. Don't even bother.
17       MR. FARRELL: Sir, you've written briefs
18  to the Court about the test results. Are you now
19  disputing that they exist? You have the documents in
20  your possession. Are you disputing they exist?
21       MR. PLACITELLA: I'm not going to answer
22  your question, sir.

Page 795

1        MR. FARRELL: That's really
2  disappointing, Mr. Placitella, to have an hour of
3  questions that presupposes that test results are
4  missing when you know they exist and have, in fact,
5  submitted briefs to the Court about them.
6        MR. PLACITELLA: So, why don't you tell
7  us what they are, Mr. Farrell.
8        MR. FARRELL: If you want me to tell you,
9  I would be happy to. The test results are contained
10  in the September 19, 1979, document which appears at
11  Tab 32 of the Cahill compilation, including the
12  sample numbers that begins at 6B, and goes into the
13  second row of that document.
14       MR. PLACITELLA: Okay. Thank you for
15  your testimony.
16       MR. FARRELL: If you want to pretend that
17  they don't exist, I suppose you can pretend that, but
18  I'm not going to pretend they don't exist.
19       MR. PLACITELLA: Thank you for your
20  testimony, sir.
21       (Witness reading over the document.)
22       THE WITNESS: So, on the second page,

Page 796

1  there is a mention of the 38 crushed rock samples
2  having been sent to Georgia Institute of Technology.
3  BY MR. PLACITELLA:
4    Q.   Are there any test results?
5    A.   There are test results. I don't know if
6  they're related directly to -- to these samples. It
7  doesn't say that they are.
8    Q.   Sir, can we just go over, in detail,
9  Table 1 that talks about the production samples. And
10  you told me that you weren't an expert at -- tell me
11  whether there was like 600,000 fibers in the EMTAL
12  talc. Do you remember we just talked about that?
13       MR. FARRELL: Objection, asked and
14  answered.
15       THE WITNESS: Yes, I remember talking
16  about that.
17  BY MR. PLACITELLA:
18    Q.   This exhibit -- I just want to know,
19  because Mr. Farrell made a statement on the record.
20  Is there anything in Tab No. 25 that provides the
21  test results for the study that was done by
22  Mr. Hemstock and Mr. Gale and ultimately Mr. Triglia,

Page 797

1  he got involved? Is there anything of the mine
2  itself? Is there anything in here about test
3  results?
4    A.   Just the reference of them being --
5        MR. FARRELL: Objection to form,
6  foundation. Asked and answered.
7        THE WITNESS: There is a reference to
8  them being tested at this point.
9  BY MR. PLACITELLA:
10    Q.   There's no test results, correct, in this
11  document?
12       MR. FARRELL: Objection to form,
13  foundation. There are a lot of test results in that
14  document.
15  BY MR. PLACITELLA:
16    Q.   Sir, there's no test results in this
17  document pointed to by Mr. Farrell related to the
18  testing of the EMTAL mine by Mr. Hemstock, Mr. Gale,
19  or Mr. Triglia. Correct?
20       MR. FARRELL: Objection to form,
21  foundation. The whole document is about test results
22  of testing done by Dr. Hemstock, Mr. Gale, and

MAGNA
LEGAL SERVICES

Page 798

1  Mr. Triglia.
2  BY MR. PLACITELLA:
3      Q.   Sir, I'm going to ask the question again.
4      Are there any test results in Tab No. 25
5  specifically relating to the rock samples that were
6  taking -- the 38 rock samples that were taken by
7  Mr. Gale and Mr. Hemstock and handed over to
8  Mr. Triglia?
9          MR. FARRELL:  Objection to form,
10 foundation.
11 BY MR. PLACITELLA:
12     Q.   Is there anything in there, any test
13 results?
14         MR. FARRELL:  Same objections.
15         THE WITNESS:  There are all kinds of
16 results in here related -- related to EMTAL talcs and
17 other company talcs.  It doesn't specifically list
18 the 38 samples at this point.
19 BY MR. PLACITELLA:
20     Q.   Sir, the only test results in here
21 finding thousands of fibers in milligrams of EMTAL
22 were for the production samples.  Correct?

Page 799

1          MR. FARRELL:  Objection to form,
2  foundation, asked and answered.
3          I said the test results were in the
4  September 19, 1979, letter.
5          MR. PLACITELLA:  I'm going to get to
6  that, sir.  I'm happy to take your deposition on this
7  issue too.
8  BY MR. PLACITELLA:
9      Q.   Let's just do this document.
10     Are there any test results in here
11 relating to the EMTAL mine ore?
12     A.   No, I just --
13         MR. FARRELL:  Objection to form and
14 foundation.
15         THE WITNESS:  No, I just said there are
16 none related to the 38 samples that are discussed as
17 being at Georgia Tech at this point.
18 BY MR. PLACITELLA:
19     Q.   Okay, let's go to 32.
20     I asked you a lot of questions about this
21 before.  Is there anything in Tab 32 that indicates
22 that these are test results related to the Engelhard

Page 800

1  EMTAL mine?
2          MR. FARRELL:  Objection to form,
3  foundation.
4          THE WITNESS:  I'm looking at a two-page
5  document.  I'd have to -- I don't know the context
6  around this.  It doesn't say that they're from an
7  EMTAL or a Johnson mine, but there are several
8  results listed.  There are around 40 sample numbers
9  with results listed.  I just don't know -- I'm
10 looking at them.  There are several.  I don't have
11 that information in front of me, what they relate to
12 in this case.
13 BY MR. PLACITELLA:
14     Q.   How many samples are there here coded?
15     A.   More than 50, I'd say.
16     Q.   A lot more than 50, do you know?  If I
17 count down just one column, I see 1, 2, 3, 4, 5, 6,
18 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20,
19 21, 22, 23, 24, 25, times 3, is like 75.  Right?
20     A.   And what's interesting, I think, if you
21 look at sample 6B through 74PS, I think that's 38.
22     So, I would think -- and then you go into

Page 801

1  the MC samples and then to the 4026 samples.
2          So, I suspect -- and I just don't have
3  every one in front of me, I suspect those 38 relate
4  to those.
5      Q.   Okay.  So, I'm going to ask you, if you
6  go back to 25 --
7          MR. FARRELL:  Mr. Placitella, in fact,
8  knows that to be true.
9          MR. PLACITELLA:  Could you please stop
10 testifying?  You are breaking the court rules left
11 and right, and I'm tolerating it and not calling the
12 judge.
13         MR. FARRELL:  If you want to talk to the
14 judge about asking disingenuous questions of the
15 witness, you let me mow.
16         MR. PLACITELLA:  Please just stop.
17 Please just stop.
18 BY MR. PLACITELLA:
19     Q.   Sir, in Exhibit 32, is there any
20 quantification on test results like there is on
21 Table 1 of Exhibit 25 --
22         MR. FARRELL:  Objection to form.

MAGNA
LEGAL SERVICES

Page 802

1   BY MR. PLACITELLA:
2      Q.   -- where they are actually counting the
3   numbers of fibers per grid opening in -- in samples?
4      A.   No, but they never said they were going
5   to do quantitative.  These are qualitative results.
6      Q.   And when you look at this document, is
7   there any way to tell where exactly these samples
8   came from?  I'm talking about now Exhibit 32.
9          MR. FARRELL:  Objection to form,
10  foundation.
11         THE WITNESS:  Well, I think we talked
12  about this earlier.  We know that the 38 samples came
13  from the Johnson mine.
14  BY MR. PLACITELLA:
15     Q.   But where in the Johnson mine?  Do we
16  know from looking at -- let's assume that the samples
17  are here, okay?  Give you the benefit of the doubt.
18  Let's assume.
19         From looking at this document, does it
20  tell us where in the mine the samples were taken?
21         MR. FARRELL:  Objection to form and
22  foundation.

Page 803

1          THE WITNESS:  This document doesn't, but,
2   you know, if you -- I mean, the samples that Glassley
3   took, we didn't know where they came from exactly
4   either.  We do know they came from the mine.
5   BY MR. PLACITELLA:
6      Q.   Actually, we do.  He said he got them
7   from the entrance to the mine.  Do you recall that,
8   sir?
9          So, please answer my question.  Is there
10  anything in Exhibit No. 32 that tells you where these
11  samples were taken from specifically?
12         MR. FARRELL:  Objection to form,
13  foundation, argumentative.
14         THE WITNESS:  Well, we know these didn't
15  come from the outside in the entrance, but we do know
16  they came from inside the mine where they were
17  actually taken.
18  BY MR. PLACITELLA:
19     Q.   How do you know that, sir?
20     A.   Because I said earlier on I would have to
21  look back, that they were taking samples from the
22  mine.

Page 804

1      Q.   Well, how do you know they were actually
2   the same samples?
3          MR. FARRELL:  Objection to form,
4   foundation.
5          THE WITNESS:  I'm sorry.  The same
6   samples --
7   BY MR. PLACITELLA:
8      Q.   Well, I'm looking here -- you see, sir,
9   it says, "At long last is the data and micrographs"
10  -- do you have the micrographs, by the way?
11         MR. FARRELL:  Objection to form and
12  foundation.
13         THE WITNESS:  We haven't located them.
14  BY MR. PLACITELLA:
15     Q.   You don't have the micrographs.
16         It says, "At long last is the data and
17  micrographs of the last three sets of asbestos
18  counts."
19         Do you see that?
20     A.   Yes, I see that.
21     Q.   Where are the rest of them?
22         MR. FARRELL:  Objection to form and

Page 805

1   foundation.
2          THE WITNESS:  I -- I'm not sure.  I would
3   have to look back.  And again, I don't know the
4   contents of all the documents and -- and a
5   chronological accounting of when everything was being
6   done, so, I don't know.  I'd have to look at all of
7   the documents.
8   BY MR. PLACITELLA:
9      Q.   And assuming -- we're looking at the next
10  page, okay?  Tell me where in the mine these samples
11  were taken from.
12         MR. FARRELL:  Objection to form,
13  foundation, asked and answered, harassing the
14  witness.
15         THE WITNESS:  All I can tell you is they
16  were found in the mine.
17  BY MR. PLACITELLA:
18     Q.   Remember, there were maps where the
19  samples were taken, and they are no longer available.
20  That would have told us where in mine they were taken
21  if these are, in fact the mine samples.  Correct?
22         MR. FARRELL:  Objection to form,

MAGNA
LEGAL SERVICES

Page 806

1   foundation, harassing the witness, asked and
2   answered, argumentative.
3           THE WITNESS:  I'm not sure I remember
4   that they were mapped.
5   BY MR. PLACITELLA:
6       Q.   Do you remember that -- that we went into
7   Dr. Triglia's deposition and there were exhibits, and
8   the exhibits talked about the maps of the mine where
9   the samples were taken from?  You don't recall that
10  from this morning?
11          MR. FARRELL:  Same objections.
12          THE WITNESS:  I recall the discussion
13  about maps of the mine.  I don't know that they
14  specifically said that they were mapping to the
15  samples that were taken.
16          MR. PLACITELLA:  We'll let the record
17  speak for itself.
18  BY MR. PLACITELLA:
19      Q.   This does not tell us where, if they were
20  from the mine, where in the mine they were taken
21  from.  Correct?
22          MR. FARRELL:  Objection to form,

Page 807

1   foundation, asked and answered.
2           THE WITNESS:  I want to make sure we are
3   on the same page.
4           What we do know is that we have 38
5   samples from that mine.  That's quite a few.  So, I
6   suspect it's a pretty good cross-section.
7   BY MR. PLACITELLA:
8       Q.   My question, sir, is:  We don't know
9   where in the mine they were taken from.  Correct?
10          MR. FARRELL:  Same objections.
11          THE WITNESS:  According this, no, we
12  don't.
13  BY MR. PLACITELLA:
14      Q.   We don't know whether they were in
15  Level 4, Level 5, Level 6, Level 2.  We have no idea.
16  Correct?
17          MR. FARRELL:  Objection to form and
18  foundation, asked and answered, harassing the
19  witness.
20          THE WITNESS:  We know they were collected
21  in the mine, and it is a good cross-section of the
22  mine because that was the point of the study.

Page 808

1   BY MR. PLACITELLA:
2       Q.   We don't know what level of the mine they
3   were taken from, correct, if they were, in fact, from
4   the mine?
5           MR. FARRELL:  Same objections.
6           THE WITNESS:  Again, we don't know
7   exactly where.  We know they were taken from the
8   mine.
9   BY MR. FARRELL:
10      Q.   Okay.  We don't know what kind of rock
11  they were taken from in the mine.  Correct?
12          MR. FARRELL:  Objection to form,
13  foundation, misstates the record.
14          THE WITNESS:  I don't know.
15  BY MR. PLACITELLA:
16      Q.   We don't know whether they were taken
17  from the main ore body where the product was mined or
18  somewhere else.  Correct?
19          MR. FARRELL:  Objection to form,
20  foundation, misstates the record.
21          THE WITNESS:  I would have to read
22  Hemstock's deposition again, but I know they were

Page 809

1   trying to get a good cross-section of the -- from the
2   mine.
3   BY MR. PLACITELLA:
4       Q.   Sir, Exhibit No. 32 does not tell us what
5   part of the mine the samples were taken from.
6   Correct?
7       A.   Yes, that's correct.
8       Q.   It doesn't tell us what kind of rock they
9   were taken from.  Correct?
10          MR. FARRELL:  Objection, asked and
11  answered, harassing the witness.
12          THE WITNESS:  32 does not do that, yes.
13  BY MR. PLACITELLA:
14      Q.   It does not tell us whether they were
15  from the main ore body.  Correct?
16          MR. FARRELL:  Same objections.
17          THE WITNESS:  I would assume they would
18  be because they were trying to do a good
19  cross-section of the mine, but it doesn't state that
20  in this document.
21  BY MR. PLACITELLA:
22      Q.   It doesn't tell us what percentage of the

MAGNA
LEGAL SERVICES

Page 810

1 samples were positive for asbestos from specific
2 parts of the mine. Correct?
3          MR. FARRELL: Same objections. Objection
4 to form, foundation, asked and answered.
5          THE WITNESS: This does not.
6 BY MR. PLACITELLA:
7      Q.   We don't have the photomicrographs for
8 some expert to look at and say, "You know what?
9 That's either right or wrong based upon my reading of
10 the photomicrographs." Correct?
11          MR. FARRELL: Objection to form,
12 foundation.
13          THE WITNESS: We don't have the
14 photomicrographs. I don't know if that would be
15 enough to make a determination even for an expert.
16 So, I can't answer that entirely, I guess.
17 BY MR. PLACITELLA:
18      Q.   Well, it was important enough for Georgia
19 Tech to give them back to Mr. Triglia. Correct?
20          MR. FARRELL: Objection to form and
21 foundation, assumes facts.
22          THE WITNESS: I don't know why they gave

Page 811

1 it back.
2 BY MR. PLACITELLA:
3      Q.   We don't know what the actual counts were
4 for these samples. Correct?
5          MR. FARRELL: Objection to form,
6 foundation, misstates the document.
7          THE WITNESS: This is a qualitative
8 assessment, and each of those code numbers correspond
9 to levels.
10 BY MR. PLACITELLA:
11      Q.   And we don't know whether a quantitative
12 assessment was done, do we?
13          MR. FARRELL: Objection to form and
14 foundation.
15          THE WITNESS: Well, it is quantitative to
16 the -- to the extent that, by coding, you can tell
17 whether it was zero to five, 5 to 15, greater than 55
18 or that type of thing. So, there was some
19 quantitation to it.
20      Q.   But it's not exact. Correct? They were
21 just ranges. Correct?
22          MR. FARRELL: Objection.

Page 812

1 BY MR. PLACITELLA:
2      Q.   There were no exact readings in this
3 document. Correct?
4          MR. FARRELL: Are you finished?
5          Objection to form and foundation.
6          THE WITNESS: From a science perspective,
7 I don't know what you mean by "exact," but there are
8 ranges that were reported, yes.
9 BY MR. PLACITELLA:
10      Q.   So, for example, in 25, where they gave
11 exact numbers, they don't exist in this document.
12 Correct?
13          MR. FARRELL: Objection to form and
14 foundation.
15          THE WITNESS: These are more
16 quantitative, and I'm not sure that they ever meant
17 to report the 38 samples quantitatively.
18 BY MR. PLACITELLA:
19      Q.   Well, you don't know because we don't
20 have all the documents related to this testing.
21 Right?
22          MR. FARRELL: Objection to form,

Page 813

1 foundation. Again, misstates the record.
2          THE WITNESS: I know that they sent them
3 out. They reported twice that they were being
4 reviewed, and then they got the results back from
5 Georgia Tech, and Georgia Tech had produced the
6 information in this format.
7 BY MR. PLACITELLA:
8      Q.   What percentage of the samples tested
9 positive for asbestos from the main ore body? Can
10 you tell from looking at this document?
11          MR. FARRELL: Objection to form and
12 foundation.
13          THE WITNESS: I'm sorry. Could you
14 repeat that?
15 BY MR. PLACITELLA:
16      Q.   Sure. If these are samples, results from
17 the mine, what percentage of the tests tested
18 positive for asbestos from the main ore body?
19          MR. FARRELL: Objection to form,
20 foundation, beyond the scope of the notice.
21          THE WITNESS: I'm not a geologist, and I
22 don't know what the main ore body is or would be.

Page 814

1  That's not discussed in this, so, I guess I can't
2  answer.
3  BY MR. PLACITELLA:
4      Q.   There are no conclusions by a scientist
5  at Engelhard concerning the significance or
6  insignificance of these raw numbers.  Correct?
7      MR. FARRELL:  Objection to form,
8  foundation, beyond the scope of the notice.
9      THE WITNESS:  I don't know.
10 BY MR. PLACITELLA:
11     Q.   Do you know whether any of the samples
12 came from talc brannerite rock at the EMTAL mine?
13     MR. FARRELL:  Objection to form, beyond
14 the scope of the notice, calls for expert testimony.
15     THE WITNESS:  I don't know what talc
16 brannerite rock is.
17 BY MR. PLACITELLA:
18     Q.   Do you know from looking at this whether
19 it would be possible to continue to mine without
20 encountering asbestos in the EMTAL mine?
21     MR. FARRELL:  Objection to form,
22 foundation, beyond the scope of the notice.

Page 815

1      THE WITNESS:  I don't know, but this was
2  just one of hundreds of pieces of data that -- that
3  were being generated that -- that you received.  So,
4  there was a lot more information than just this
5  available.
6  BY MR. PLACITELLA:
7      Q.   What else do you have allegedly related
8  to the test results from the study that was done by
9  Dr. Hemstock and Dr. Gale and Dr. Triglia of the mine
10 in 1979?  What do you have?
11     MR. FARRELL:  Objection to form,
12 foundation.
13     Are you really asking these questions,
14 Mr. Placitella?  You now --
15     MR. PLACITELLA:  I am --
16     MR. FARRELL:  Excuse me.  You are now
17 making use of and improperly using information from a
18 sealed proceeding.
19     MR. PLACITELLA:  No, I am not.
20     MR. FARRELL:  You are, sir.
21     MR. PLACITELLA:  No, I am not.
22     MR. FARRELL:  You are, sir.

Page 816

1      MR. PLACITELLA:  No, I am not.
2      THE WITNESS:  I'm not saying there is
3  other information in this.  I'm just saying this is
4  one of hundreds of documents that -- that looked at
5  EMTAL and the products and the airborne -- and the
6  airborne particulates in that mine.
7      So, this would be used among hundreds of
8  other documents and studies or dozens of other
9  studies to determine whether or not that should be
10 mined.
11 BY MR. PLACITELLA:
12     Q.   All I want to know is:  Do you have any
13 other reports or data that pertain to the study done
14 by Dr. Hemstock and Mr. Gale of the mine in 1979?
15     MR. FARRELL:  Objection to form,
16 foundation, asked and answered multiple times,
17 harassing the witness.
18     THE WITNESS:  Not that I know of.
19     MR. PLACITELLA:  Thank you very much.
20     MR. FARRELL:  Are you finished?
21     MR. PLACITELLA:  I am, unless you're
22 going to ask more questions.

Page 817

1      MR. FARRELL:  No.
2      Are you finished?
3      MR. PLACITELLA:  I don't know if anybody
4  on the phone has any questions.
5      MR. FARRELL:  Hearing nothing, I would
6  say --
7      MR. PLACITELLA:  Does anybody on the
8  phone have any questions?
9      MR. ANDRIS:  James Andris.  No questions.
10     MR. ARROYO:  This is Elias Arroyo.  No
11 questions.
12     THE VIDEOGRAPHER:  The time is now
13 4:11 p.m.  This completes the deposition of Daniel
14 Steinmetz.
15     We are going off the record.
16     (Whereupon, at 4:11 p.m., the deposition
17 of DANIEL STEINMETZ concluded.)
18
19
20
21
22

**MAGNA** ▶
LEGAL SERVICES

Page 818

1       CERTIFICATE OF NOTARY PUBLIC
2           I, Carol J. Robinson, RPR the officer
3   before whom the foregoing cause was taken, do hereby
4   certify that the witness whose testimony appears in
5   the foregoing transcript was taken by me in shorthand
6   at the time mentioned in the caption hereof and
7   thereafter transcribed by me; that said transcript is
8   a record of the testimony given by said witness to
9   the best of my ability; that I am neither counsel
10  for, related to, nor employed by any parties to the
11  action; and further, that I am not a relative or
12  employee of any counsel or attorney employed by the
13  parties hereto, nor financially or otherwise
14  interested in the outcome of this action.
15
16          CAROL J. ROBINSON
17      Notary Public in and for the
18          District of Columbia
19  My commission expires:
20  March 1, 2020
21
22

Page 819

1       ACKNOWLEDGMENT OF DEPONENT
2           I, DANIEL STEINMETZ, do hereby certify
3   that I have read the foregoing pages ____ to _____ and
4   that the same is a correct transcription of the
5   answers given by me to the questions therein
6   propounded, except for the corrections or changes in
7   form or substance, if any, noted in the attached
8   Errata Sheet.
9
10  _____      _____
11  DATE                 SIGNATURE
12
13          Subscribed and sworn to before
14  me this 26th day of July 2017
15
16
17
18
19
20
21
22

**MAGNA**
LEGAL SERVICES

**A**

**ability** 818:9
**able** 589:9 619:10
622:4,14 635:13
708:4 709:18
710:17 712:19
713:7 714:7 715:2
715:10 742:1,22
758:19 775:17
**above-captioned**
756:13
**absolutely** 583:5,10
618:4
**abundant** 702:22
**access** 550:21 551:2
**accounting** 805:5
**accumulated**
618:20 619:2
**accuracy** 582:22
**accurate** 582:3,16
**ACKNOWLED...**
819:1
**acquired** 556:11,12
**actinolite** 569:21
573:2 576:21
**action** 621:17
756:13 818:11,14
**activities** 544:14
590:20 620:6
776:19 782:9
784:6
**actual** 609:15
661:11,17 696:20
749:17 811:3
**addition** 681:5
710:11,15 712:2
**additional** 552:1
555:4
**addressed** 787:16
787:17
**addressing** 563:5
**admission** 745:1
**admissions** 748:14
755:9 758:9
**admit** 747:20

750:22
**admits** 745:17
751:18
**admitted** 746:17
747:3,5 748:19
749:8
**advance** 618:2
**affidavit** 591:9
592:5,10,13 593:8
**afternoon** 599:8
693:6
**ago** 583:15,18
660:3 739:5
**agree** 703:14
**agreed** 569:19
**agreement** 758:10
**ahead** 581:19
606:17 608:1
712:15 736:20
746:8 758:5
**ahold** 761:15
**air** 581:12 610:11
**airborne** 606:5
611:2 816:5,6
**al** 537:9 544:18
545:5 777:1
782:11
**ALEXANDRA**
539:14
**alive** 574:22
**allegedly** 590:12
680:10 705:20
815:7
**allow** 660:16
787:11
**allowing** 643:12
**amount** 574:3
577:6
**amounts** 570:1,20
574:9
**analyses** 592:14
733:6
**analysis** 569:6
605:2,10 606:19
610:10 620:5
649:16 653:4,7

672:21 679:17,20
680:3 780:2
793:17
**analytical** 542:9
554:6 555:17
**analyze** 703:8
**analyzed** 610:18
645:18 702:20
**Andris** 540:9 817:9
817:9
**angry** 712:13
**answer** 547:11
559:12,14 560:22
570:5 574:2,6
577:5 580:11
586:3 589:1,18
599:21 601:3,6
602:9,11,22 603:9
603:16,18 618:15
618:18 620:15
625:3 628:18
638:6,8 642:20
643:4,5 644:3
646:15 647:3
648:19 661:3
666:10 697:19
712:22 716:1,8
717:8 723:7
730:11 733:8,14
747:8 762:22
763:13 766:7
767:7 771:21
789:14 794:21
803:9 810:16
814:2
**answered** 562:8
606:1,16 614:4
619:13 629:5
630:14 633:17
640:20 644:1,11
656:6 662:8
670:16 700:11
704:7,20 706:5
707:7 739:4
742:19 743:15
744:2,8,15 764:2

769:13 773:11
796:14 797:6
799:2 805:13
806:2 807:1,18
809:11 810:4
816:16
**answering** 570:20
588:4 642:21
705:13 716:5
749:5,13 794:12
794:15
**answers** 632:13
714:5 746:2 765:1
819:5
**anybody** 572:15
575:4 576:15
667:5 685:12,14
782:2,6 785:14
817:3,7
**anybody's** 601:8
691:15
**anymore** 574:15
**apologize** 618:1
**apparently** 579:15
683:1 786:14
**appeared** 599:6
**appears** 625:16
739:8 765:6
795:10 818:4
**applicable** 569:7
756:9
**apply** 680:2 702:5
**appointment**
686:16
**appreciate** 643:11
793:2
**approximately**
763:1
**approximation**
697:15
**April** 542:12 544:5
555:7,20 557:9
623:2 650:1,5
664:20 665:2
692:14 694:12
695:9 792:3

**area** 649:16 655:12
682:16,21 733:13
**areas** 632:15 649:9
**argument** 641:21
**argumentative**
561:20 562:15
567:22 583:8
600:20 611:14
641:9 662:20
684:16 688:13
739:18 747:1
748:17 769:12
780:17 803:13
806:2
**argumentive** 582:8
**arrived** 650:5
**Arroyo** 541:3
817:10,10
**articles** 719:9
**asbestos** 551:12,18
577:16 585:10,11
585:19 586:5,7,16
593:10 594:1
595:16,22 596:8
596:13,18 602:7
602:15,20 603:7
604:18 605:3,6
606:4 609:19
610:8 612:16
613:16 631:4,5,10
631:12 635:5,9
639:10 645:4,8
648:8,12,16 657:2
713:21 718:5
719:2,17 720:17
721:19 727:8
730:8,10,13
804:17 810:1
813:9,18 814:20
**Ashton** 592:6,10,13
**Ashton's** 593:8
**aside** 642:4
**asked** 549:21 550:6
550:15,16 562:20
562:21 569:4
578:19 606:1,15



612:15 614:4
615:22 619:12
624:6 628:14
629:5 630:14
632:11 633:16
634:5 640:20
642:5,11 643:22
644:10 656:6
662:7 663:5
670:15 675:22
680:2 704:7,20
705:15 706:5
707:7 710:16
724:3 729:4 733:2
734:2 739:4 740:7
741:6,12 742:19
743:14 744:1,7,15
748:15 753:1
763:7,21 764:2
767:11 769:13
773:11 791:1
793:12 796:13
797:6 799:2,20
805:13 806:1
807:1,18 809:10
810:4 816:16
**asking** 588:18
596:9 601:1 606:9
606:10 634:13
643:14 651:19
652:12,14,19
666:13 703:11
729:18 762:16
774:6 775:9 791:6
801:14 815:13
**asks** 620:3 723:19
730:5 769:7
**aspects** 635:10
**assemble** 788:13
**assessing** 564:13
**assessment** 811:8
811:12
**associated** 603:15
612:22
**assume** 584:17
601:3 619:8 716:7

774:6 802:16,18
809:17
**assumes** 574:13
576:1 577:2,19
594:8 595:19
627:12 753:22
810:21
**assuming** 805:9
**attached** 542:5
543:2 544:2
556:13,15,19
557:1,5,9 819:7
**attempt** 688:10
**attorney** 732:6,6
784:8 818:12
**attorneys** 750:18
756:12
**attributable** 725:10
**Audrey** 537:4
545:4
**August** 537:13
542:8 544:19
545:8 554:3
555:16 556:16
782:18 783:7
787:4
**author** 558:14
725:14
**authored** 784:15
**available** 551:3
558:15,19 559:19
564:16 566:18
593:22 595:15
596:7 599:1 694:4
805:19 815:5
**Avenue** 539:4
540:20
**AVERELL** 540:4
**avoid** 736:11
**aware** 598:20,21
611:7 615:10
716:14 717:1
718:21 719:15
720:18 768:2
770:18 789:18
**a.m** 537:15 545:9

617:18,21

---

## B

**B** 542:4 543:1
544:1 632:20
673:3,3,19 674:22
674:22 675:9
**back** 548:6 550:9
571:22 572:8
582:3 588:6
589:20 593:4
608:21,22 611:12
617:21 622:18
651:13 664:4
665:2,4 670:2
671:16 672:11
691:3 692:10
694:19 700:20
731:21 732:5
733:14 737:6,10
737:15,18 738:20
739:1,21,22
740:21 741:20,22
745:6 754:21
757:20 758:1
788:19 801:6
803:21 805:3
810:19 811:1
813:4
**bag** 658:1,10,18,21
659:2,7,11,20,21
660:6 661:12,20
662:3,16 669:3
672:9 679:16
**bags** 658:6
**Bank** 539:5
**based** 562:16 577:4
594:17 630:19
635:19 644:4,8
721:5 737:15
763:22 775:1
789:14 810:9
**BASF** 539:6 542:17
546:18,21 547:2
548:11 550:12
556:12 585:4

587:8 590:12
604:3,17 688:22
705:20 706:17
714:6 716:15
717:2 718:22
720:13 722:6
724:12 725:1
738:9 739:20
745:2,17 746:17
751:18 752:13
777:20 782:2,6
783:17 784:17
786:14,22 787:3
789:3 792:14,16
**BASF's** 549:5,12
561:7,9 583:19
585:1
**BASF_SAMPSON**
792:5
**BASF_SAMPSO...**
544:12 693:3
**basic** 603:2 632:17
632:18 633:22
735:13
**basically** 642:10
**Bates** 542:16
544:11 565:19
587:8 693:1 695:1
784:2 792:5
**becoming** 621:12
**Beg** 607:12
**beginning** 687:17
**begins** 545:3
795:12
**behalf** 539:2,6,12
539:17 540:2,8,13
540:18 541:2
546:20 604:3,17
720:12,16 756:12
784:17
**behold** 775:7
**believe** 559:1 560:7
606:5 615:17
618:18 622:8
627:21 658:17
659:17 662:21

663:1 679:9 686:8
721:18 730:3,15
733:8 760:11
763:13 765:12
791:9 792:3,20
**benefit** 802:17
**BENJAMIN**
540:18
**berated** 792:21
**best** 818:9
**better** 641:1,5
**beyond** 585:13,22
586:11,19 588:15
589:15 594:8,21
595:19 596:21
614:19 615:6
631:7,14 633:8
634:18 635:7
639:6 642:11,12
642:15 647:10
648:14 652:3
657:5 667:21
687:22 690:3
698:13,18 699:8
699:19 700:8
708:9 709:11,20
712:21 714:10,16
715:3,14 727:13
730:18,19 731:9
736:19 738:14
739:3,17 740:19
757:10 758:3,17
759:8 760:17
764:15 767:15
768:5,12 770:4,22
771:9,16 772:8,22
783:22 784:12,19
785:6,18 786:4
813:20 814:8,13
814:22
**big** 613:17 697:6
**bigger** 697:11
**billing** 735:17
**binder** 609:5,7
618:12 619:11
623:22 624:20



**bit** 557:21 564:22 616:10 630:9
**black** 618:12 632:21
**body** 627:3 633:13 655:12 677:3,6 678:19 684:22 689:20 808:17 809:15 813:9,18 813:22
**book** 607:6 786:21
**booklet** 572:21
**boss** 641:4
**bother** 794:16
**bottom** 566:21 615:19 745:17 783:15
**bought** 585:4
**Boulevard** 540:10
**box** 539:19 551:7,7 551:10 553:19 555:22 556:10 717:20 718:6
**boxes** 548:6 715:20 726:9 777:20
**brannerite** 814:12 814:16
**break** 553:7 557:18 595:9 617:15 618:2 652:8 660:21 682:2 690:20 691:10,16 728:22 729:8,12 754:11,14,16 762:19
**breaking** 801:10
**brief** 599:10 763:7
**briefs** 794:17 795:5
**bring** 592:2 613:22 663:18 728:18 729:4 775:11,13 775:22 776:6,10 778:3,8,11 779:4
**bringing** 616:11 728:10
**broad** 612:8

**broader** 602:12,18
**broke** 694:12 755:1
**broken** 558:10
**BROMBERG** 540:4
**brought** 587:12 605:16 728:7,13 728:20
**Brunswick** 539:19
**building** 706:12
**bullet** 648:16
**bullying** 749:15
**bundle** 618:13
**bundled** 632:5
**burden** 616:14
**business** 654:17

---
**C**
---
**C** 539:1 540:1 541:1 542:1,15 587:7 673:20 674:22,22 675:11 675:18
**Cahill** 542:14 549:18 550:1,7,9 557:3 562:19,22 576:7 584:16,20 585:5 587:6 593:19 642:13 658:4,9 659:6,9 660:4 663:2 679:17 703:19 706:8 709:16 710:2,3 712:18 713:1,7,22 757:2 792:2,7 795:11
**Cahill's** 663:4
**calculate** 637:21
**calculated** 697:21
**calculation** 636:3 637:8 639:3,9
**calculations** 638:20 639:17
**call** 554:10 575:4 673:1
**called** 545:20

559:10 616:18 708:13 732:3 761:5 763:6
**calling** 801:11
**calls** 564:18 565:7 572:14 573:21 581:17 585:22 596:21 626:16 627:12 630:2 633:8,16 634:7,18 639:20 654:4 656:18 657:5 667:3 668:15 669:5 671:2 698:13 700:8 713:10 814:14
**cap** 697:11
**caption** 818:6
**CARBIDE** 539:12
**carbonate** 602:17 632:20
**care** 735:12,15
**Carol** 538:8 545:14 818:2,16
**CARPENTER** 540:19
**CARUSO** 539:14 539:14
**case** 544:16 550:18 558:4,15,20 559:14 586:8 597:10 614:22 637:17 710:18 714:7 723:22,22 725:22 730:7 731:3,20 732:4,14 733:4 734:4 735:10 738:12 739:10,12 741:15 741:16 745:2,14 746:18 750:20 756:1 758:1,22 759:1,6,22 760:7 760:14 761:2,4,5 761:11,14,15 762:5,6,20,20

763:8,12,21,22 764:4,10 765:1,21 766:2,14,15 767:6 767:12,22 768:2 769:9 770:3,10,19 770:20 771:3,7,14 771:14 772:6,6,12 772:19 773:9,18 773:22 774:4 775:6,8,12,14 776:1,5,8,9,11,11 776:21 778:19 782:10 784:16 785:11,14 786:1 787:20 800:12
**cases** 585:9,18 586:22 594:19 642:14 783:9 787:12
**catalog** 641:18
**CATALYSTS** 539:6
**categories** 569:20
**cause** 818:3
**cc'd** 593:20
**Cedar** 541:4
**certain** 721:18 732:3 745:18 747:10 748:1,9 751:1,8,15,18 753:8 758:9,9 764:9 766:20
**certainly** 572:18 574:17 576:7
**CERTAINTEED** 539:13
**CERTIFICATE** 818:1
**certify** 818:4 819:2
**cetera** 569:10
**chain** 548:3 658:3 662:9 669:14,18 671:10 673:22 687:17 688:10 690:14 727:4
**chance** 589:6

**change** 582:21
**changes** 819:6
**changing** 754:13
**characterization** 653:3
**charge** 710:21
**chat** 763:7
**check** 579:20
**Chemicals** 636:2 637:8
**chlorate** 668:12
**chlorite** 602:18
**chloritic** 632:21
**chose** 607:14
**Chris** 546:12 552:19 694:18
**Christopher** 539:3 544:21 782:19
**chronological** 805:5
**chrysotile** 635:5 727:8 730:8,13
**circled** 580:17
**circumstances** 675:20
**clarify** 551:6 646:5 652:17
**Clark** 539:17 544:17 765:2 776:22 782:11
**cleaned** 558:10
**clear** 553:14 555:1 608:7 609:9 612:8 613:14 636:22 640:12 643:18 705:7 711:16 735:3 750:13 791:12,22 793:1
**clearly** 642:12
**clips** 553:14
**close** 717:7 788:11 788:22
**closely** 790:3
**code** 811:8
**coded** 800:14
**coding** 811:16



**Cohen** 539:3
545:12
**collected** 726:12
733:13 745:15,18
747:11,12 755:4,4
807:20
**collection** 637:6
**collections** 553:15
**Columbia** 538:10
818:18
**column** 800:17
**Comandini** 783:9
**come** 550:9 658:21
659:21 666:12
714:19 743:11
746:16 759:19
803:15
**comfortable** 549:16
568:3 590:16
**coming** 610:15
**commission** 818:19
**communication**
763:4
**company** 537:8,9
545:5 566:3
665:19 798:17
**comparative** 569:4
569:5
**compendium** 702:4
719:7
**compilation** 557:3
557:4 703:19
719:7,8 721:2
792:2,8 795:11
**complaint** 728:18
**complete** 564:4,11
578:16
**completed** 649:21
**completeness**
590:10,17 595:11
705:18 723:17
**completes** 817:13
**completing** 570:9
**complicated** 621:12
**comply** 742:4
**concern** 565:6

**concerning** 548:9
549:11 558:2
561:6 607:8 656:2
693:9 704:3
719:17 742:13
769:7 814:5
**concerns** 567:20
695:15
**conclude** 546:6
596:12 600:7
**concluded** 566:1
577:6 717:13
817:17
**conclusion** 574:5
591:6 593:6
594:13 648:12
738:11 745:14
756:22
**conclusions** 599:10
648:11 656:3,8,12
656:14,15 657:1
814:4
**condition** 731:19
**conduct** 759:5
**conducted** 604:2,17
605:4,14 606:11
607:4 710:18
711:19,19,20
715:20 716:15
717:2 770:1 794:5
**confidential** 785:10
**confidentiality**
544:10 693:1
751:21 756:1
**confirm** 727:17
**confirmation**
649:15
**confusion** 616:6
**Connecticut** 569:19
573:1
**connection** 733:6
**constituent** 667:18
**constituents** 602:14
612:10
**contact** 616:17
**contacted** 675:22

**contacts** 686:14
**contain** 593:10
**contained** 629:12
630:12 730:8,10
730:12 736:5
795:9
**contains** 792:10
**contaminant**
649:15 653:7
**contaminants**
695:16
**content** 602:7,16,17
**contents** 645:12
650:15 702:20
805:4
**context** 577:4
595:21 612:12
646:13 647:4
700:14 709:17
723:14 772:16
800:5
**continue** 814:19
**continued** 540:1
541:1 543:1 544:1
585:5
**continues** 627:17
**continuing** 627:22
**contrary** 774:3,7
**control** 558:3 708:6
709:1 718:22
727:4 744:13
**convenience** 728:17
**conversation** 763:9
**copied** 558:14
**copies** 552:7,21
578:11,12 579:4
592:2,3 618:14
728:10,18,21
729:1,4 735:18
**copy** 552:10 562:20
567:7,8,14 570:19
582:16 587:12
591:10,14,20
593:2 679:10
728:5 729:15

755:17 777:6
782:22 783:1,3
785:15
**COREN** 539:4
**CORP** 539:13
**corporation** 728:15
**correct** 546:15
548:8,20,22 549:6
549:12 555:11
556:7 560:11,14
565:20 566:15
572:12,18,19
578:6 583:6,13,20
584:2,4,11 585:1
585:5,7,11,20
586:9,17 595:17
597:10,13 602:8
603:18 609:12,15
609:21 610:12,13
610:15 613:4
615:4,4 623:21
624:17,20 625:17
625:19,21 626:3,9
626:21 627:4,14
627:19 628:6,22
629:3,22 630:12
630:19 631:5,13
632:2 633:5,14,22
634:6,16 635:15
636:8,11 639:4,11
639:18 643:21
648:3 649:3
654:18 661:13
662:6 663:6,8
677:17,18 680:9
680:10,16 681:3
687:14 695:22
699:6,10 702:18
703:19 708:7
709:2,9,18 710:13
710:19,22 711:13
712:3,6,19 713:8
715:2,12 724:20
728:4 731:19
732:12 737:19
740:13,17 741:16

747:13,18,20
748:6 761:6 762:6
764:13 766:6,7
767:7 770:11
773:18 778:4,9,20
781:2 782:8,12
790:4 793:21
797:10,19 798:22
805:21 806:21
807:9,16 808:3,11
808:18 809:6,7,9
809:15 810:2,10
810:19 811:4,20
811:21 812:3,12
814:6 819:4
**corrections** 819:6
**correctly** 593:12
603:21 649:17
760:11
**correspond** 811:8
**corresponded**
791:8
**correspondence**
735:16
**corresponds**
783:19
**cosmetic** 566:2,22
**counsel** 545:16
547:19 549:5
563:17 575:9
587:12 618:11
660:15 687:11
709:22 723:2
729:9 743:1,3,3
744:5 745:16,19
745:22 748:6
751:19 752:9,12
759:14 760:20
761:3 769:15
771:13 773:13
818:9,12
**count** 800:17
**counting** 802:2
**counts** 645:4,8
804:18 811:3
**County** 537:2



545:6
**couple** 547:19
  551:21 566:9
  600:6 729:21
  761:21 777:13
**course** 616:8
  625:13 629:5
  640:20 642:7
  791:1 792:21
**court** 537:1 545:5
  545:14,17 546:14
  546:18 589:21
  595:6 622:19
  641:20 642:17
  643:1,16 705:17
  708:15 712:14
  729:4,7 742:4,12
  743:10 748:22
  749:11 759:19
  769:6 774:20
  776:16 794:18
  795:5 801:10
**courtesy** 749:13
**courts** 715:1,1
**Court's** 547:8,15
  561:17 605:13
  619:11 728:9
**cover** 595:1 641:12
  641:22,22 747:6
**covered** 588:11
  641:16 642:7
  731:10 747:3
  749:7
**covering** 588:11,14
  588:19 641:13
  749:10
**create** 565:6
**criteria** 677:10
  689:14
**criterion** 668:4
**cross-section** 807:6
  807:21 809:1,19
**crushed** 649:11
  650:20 651:4
  700:21 701:13
  796:1

**crushing** 793:20
**current** 550:12
  706:21 769:8
  773:7 775:15
**currently** 543:14
  673:21 674:15
  683:2
**custodian** 706:21
**custody** 543:14
  548:4 558:3 658:4
  662:10 669:14,18
  671:10 673:22
  674:16 687:17
  688:10 690:14
  708:6 709:1
  718:22 727:4
**customer** 557:2
**Cuzzone** 761:5,11
  761:14 762:4,21
  763:2,5,10,20
  764:8 765:12,17
  766:14 767:5,13
  770:19 771:4
**Cuzzone's** 761:21

**D**

**D** 540:19 542:4
  543:1 544:1
  674:22,22 675:15
**DALMUT** 539:9
**Dan** 552:11
**Daniel** 537:14
  538:1 542:2 545:4
  545:19 817:13,17
  819:2
**Daniels** 539:17
  544:17 765:3
  776:22 782:11
**Dankwerth** 556:16
**DAP** 540:13
**data** 600:15 618:19
  619:2 639:14
  645:3 648:11
  696:22 700:2,12
  704:9,10 718:8
  731:21 732:15

734:3,7,11 735:13
  739:21 741:8
  744:13 779:16,19
  804:9,16 815:2
  816:13
**database** 715:12
  770:2
**date** 583:6 625:15
  768:6 819:11
**dated** 542:8,10,12
  542:13 544:5,19
  554:3,7 555:7,16
  555:18,20 556:16
  557:1,2,10 587:5
  607:6 620:11
  621:6 624:16
  628:2,12 631:21
  632:6 692:13
  765:6 782:18
  787:7
**dates** 651:14
**David** 544:16
  776:21 782:10
**day** 588:7 598:8
  629:6 640:21
  641:16,17,21
  642:8,10,17
  699:21 706:5
  717:5 723:15
  731:15 747:4,4
  749:12 772:2
  788:14 819:14
**days** 547:20 588:12
  649:21 739:5
  749:8 752:22
  791:1 792:22
**DE** 540:2
**deal** 672:12
**dealing** 672:8 674:6
**dealt** 719:9
**debated** 585:18
**decide** 566:3
  621:19 776:16
**decided** 728:16
  792:12
**declaration** 544:4

676:17,20 677:5,7
  678:12,13 679:5
  681:22 691:4,6
  692:13
**Decof** 544:15
  776:20 782:10
**dedicated** 601:7
**Defendant** 539:12
  540:2,8,13,18
  541:2 765:2
**Defendants** 537:10
  539:6
**deferring** 621:17
**defining** 621:11
**degree** 620:8
**Delaware** 653:6
**demanded** 641:20
**demanding** 594:18
**Dembrow** 542:14
  587:6
**DENARO** 540:14
**density** 697:12,14
**dep** 762:13 764:20
**department** 568:22
  597:19 601:10,16
  603:12,15 612:7
  612:20 613:1
  614:17 615:3,4
**depends** 657:7
  697:12 708:2
  714:11 715:6
**DEPONENT** 819:1
**deposit** 601:21
  602:13 603:3
  612:10
**deposition** 537:14
  538:1 544:7 545:3
  545:10 546:7
  549:21 550:4,15
  551:20 553:4
  556:18 561:8
  563:6 564:14
  565:3 567:5,12,16
  568:7,14 574:18
  575:11,14 576:4,9
  578:19 580:10

582:4 583:6,11,20
  584:11 585:8
  597:10,19 598:22
  604:4 606:13
  615:11 616:22
  624:1 628:4,6
  629:6 634:5,21
  641:21 642:8,18
  643:8,20 650:15
  655:2 671:11
  692:18 693:18
  699:22 703:12,13
  706:6 724:19,20
  725:1 728:3 729:1
  729:19 732:22
  746:1 750:12,13
  752:20 759:15
  764:22 766:6,17
  767:18 769:16
  772:11 779:7
  789:3 799:6 806:7
  808:22 817:13,16
**depositions** 547:19
  547:21 586:14,21
  642:7 659:15
  704:5 725:18
  756:10
**derivative** 665:19
**derivatives** 680:9
  680:22
**describe** 555:13
  603:13 733:5,6
**described** 612:20
  628:10
**describes** 632:4
**description** 542:6
  543:3 544:3 633:6
  635:13
**designated** 675:6,9
**despite** 749:11
**destroy** 597:2
  757:17 758:1,14
**destroyed** 596:17
  597:7 716:16
  717:4,13 740:11
  741:19 743:21



750:18 751:2,7,12
751:20 752:6,13
753:5,14 755:4,5
757:16 758:10
**destroying** 740:9
**destruction** 741:13
760:6 775:19
787:11
**detail** 615:16
702:12 703:8
727:2 796:8
**details** 610:18
660:9 662:11
**determination**
810:15
**determinations**
742:5
**determine** 602:7
604:12 610:8
653:7 716:16
717:3 737:9 752:5
774:20 816:9
**Detroit** 578:21
**DEUTSCH** 540:19
**Development**
787:22
**Dfaverell@pbnla...**
540:6
**DIANE** 540:4
**difference** 562:1
**differences** 702:14
**different** 553:1
580:11 667:15
691:1 725:18
749:8 767:2 791:3
**differently** 767:1
**diffraction** 569:5
649:16,20
**directed** 592:1
**direction** 565:2
**directly** 549:12
796:6
**disadvantage** 729:9
**disappointing**
795:2
**disclosed** 567:4,10

567:15
**discovery** 746:18
**discuss** 550:7,17
572:10 660:20
730:9 762:19
**discussed** 573:7
575:16 616:22
622:6 624:1
638:18 640:10
679:16 704:5
717:5 799:16
814:1
**discusses** 566:17
792:6
**discussing** 616:7
705:9
**discussion** 575:17
703:15 806:12
**disingenuous**
801:14
**dismiss** 594:19
**disposed** 750:18
**dispute** 788:6,10
**disputing** 747:11
774:10,13 778:14
793:8 794:19,20
**distinction** 608:17
**District** 538:10
818:18
**Division** 537:2
545:6
**Docket** 537:3 545:6
**document** 544:9,13
551:11 553:19
554:11,13 566:12
578:21 579:1,6,20
591:2,15,20
593:13,16 611:1
620:21 621:1,17
622:11 623:2
627:9,16 630:11
630:12,16,19
631:1 636:10,14
638:4,13,17
639:15,22 645:12
645:18,22 646:18

646:20 647:22
650:12 672:6
692:22 694:4,20
694:22 701:11
703:2 705:8 708:2
709:9 710:18
711:9,11,18
728:19 730:2
732:3 733:5
741:18 746:4
751:6 757:12,13
758:8,13 765:6,8
765:18 775:7
776:18 784:4
786:21 787:2,10
792:4 795:10,13
795:21 797:11,14
797:17,21 799:9
800:5 802:6,19
803:1 809:20
811:6 812:3,11
813:10
**documentation**
570:14 670:13
**documents** 548:2,5
548:9 549:4,11,20
550:8,15 551:8,17
553:15,16,20
555:4,21 556:9,10
556:13 558:6,13
561:3,6 563:5
571:21 572:3,9
578:15,15 592:2
597:4,12 599:1,1
605:10 606:19
610:17,19 617:2
618:13,14,17
624:5 642:3
645:14 646:4,5,13
647:4 650:16
651:18 654:2,6
655:2 656:11,14
656:22 664:22
669:21 693:9,11
696:7 702:9
705:10 708:5

710:3,22 713:6,6
717:19 718:4,18
718:22 719:6,9,16
721:7 722:1
724:10,18,22
725:2,7,9,10,13
725:18 728:10,14
728:14 729:5
730:9 732:4
736:15 737:6,9
742:9 755:3
756:10,16 757:1
758:9 766:5,15
767:3 774:4,14
775:6 787:16
789:2,4,9,11,17
790:5 791:3,22
794:19 805:4,7
812:20 816:4,8
**doing** 580:2 588:5
609:9 616:9 651:7
651:8 669:20
694:3 712:2 736:7
736:8 775:2,3
**doodling** 637:20
**doubt** 746:11
802:17
**DOUKAS** 539:18
**dozen** 721:6 742:19
773:11
**dozens** 605:1
606:19 791:2,2,3
791:3,6 792:13,21
792:22 816:8
**Dr** 569:18 573:1,4
574:4 575:13,21
597:9,19 598:5,12
598:18 599:15
600:22 604:10
606:13 607:4,4
611:6 614:15
615:11 617:12
628:20 632:14
634:5 640:17
644:7 655:4,4
693:10 703:12,13

704:4,4 716:17
717:5 724:12,19
725:3,22 726:5
727:6 728:4 730:5
731:2,20 733:19
734:19 736:15,18
738:10 739:22
740:13 741:8
745:18 748:4
750:7,19 751:1,11
751:19 753:4
761:3,16 762:13
762:18 766:11
767:11 768:17
771:5 776:8
780:13 783:20
784:15 785:2,4,16
787:19 788:2
789:3,5 797:22
806:7 815:9,9,9
816:14
**dried** 649:11 651:4
**drying** 793:20
**due** 606:9
**duly** 545:20
**DUNST** 539:18
**DUPONT** 540:2
**duties** 546:19
**DVD** 545:3
**D.C** 537:12 538:6
545:11 691:22
728:17
**D.M** 653:6

---

### E

**E** 539:1,1 540:1,1
541:1,1 542:1,4,4
543:1,1 544:1,1
674:22 675:1
**earlier** 570:11
720:8 731:12
734:4,19 746:10
746:11 802:12
803:20
**early** 543:12
673:16 674:10



**Earroyo@oslaw....**
541:5
**East** 539:15
**EASTERN** 539:7
**easy** 715:10
**eat** 692:2
**Ed** 543:10 625:6
673:15 674:9
675:6
**EDELL** 539:14
**Edward** 544:4
692:13
**effort** 601:8
**either** 558:13 593:1
629:2 636:11
671:13 676:9,15
676:22 731:9
803:4 810:9
**electro** 780:14
**electron** 603:4
649:14,20 651:8
695:17 697:1
701:2 734:10
**electronic** 708:22
709:1
**electronically**
707:19
**Elias** 541:3 817:10
**Elizabeth** 539:9
762:20 765:11
**elizabeth.dalmut...**
539:11
**Ellis** 538:3 539:8
706:10,17,22
708:7 709:2
**Elmo** 563:21
**embarking** 615:20
**employ** 569:14
615:13
**employed** 818:10
818:12
**employee** 818:12
**employees** 550:12
550:13,17 616:1
**employment**
625:13

**EMTAL** 543:6,6
551:11,18 558:2
563:3 566:15
567:11 576:22
577:16 585:10,11
585:19 586:4,7,17
589:13 590:13
592:17 594:2
596:4,8,18 597:4
597:20 601:18,21
605:2 607:18,19
608:2,3 619:19
621:7,11 628:21
658:1,10,17 659:3
659:7,11 661:12
662:3,17 663:3
666:16,17 667:14
673:8,9 679:16
690:1 697:6 698:2
698:6 699:5,14,14
702:22 703:1,14
705:20 715:11
718:5 719:1,17
720:17 721:20
730:8,10 759:2
789:4 794:6
796:11 797:18
798:16,21 799:11
800:1,7 814:12,20
816:5
**Enclosed** 591:9,18
591:22 592:5
**encountering**
814:20
**ended** 762:5
**Engelhard** 543:8
548:2,2 550:12
556:12 558:4,19
559:14 584:3,15
585:4,20 586:15
590:12 594:18
604:3,17 605:14
606:12 610:3
611:8 614:2
615:13 616:1
625:13 636:2

637:8 666:4
669:10,15,22
670:6 673:10
705:19 706:9
714:6 716:14
717:2,12 719:8,16
720:1,2,13,16
730:9 737:11
738:9 739:20
740:17 744:12
745:16,19 747:17
748:6 750:17
751:20 752:13
753:14 756:11,12
756:16 757:19
761:4 770:18
771:12 786:22
787:7 792:4,10,13
799:22 814:5
**Engelhard's** 584:4
584:10 593:9
**engineer** 625:5
**Engineering** 792:9
**entered** 756:1
**entire** 619:11,14
**entirely** 810:16
**entitled** 544:9,13
636:2 647:22
649:5 692:22
700:2 765:1
776:18
**entrance** 726:13
803:7,15
**entries** 718:16
**entry** 783:14 785:3
**equivocal** 594:13
**Errata** 819:8
**Esq** 539:3,4,8,9,9
539:14,18 540:4,9
540:14,19 541:3
542:16 587:8
**Estate** 537:5
**et** 537:9 544:18
545:5 569:10
776:22 782:11
**eventually** 584:22

**evidence** 569:8
571:3,7 572:1,6,8
572:10 585:8
586:16 594:1
595:15 596:7,17
597:2,7 604:2
670:22 716:16
717:3,13 718:3
724:11 752:13
753:15 754:3
755:4 758:1,14
760:7,14 764:9
768:16 770:19
772:5 775:11,14
775:22 776:10
787:11
**evolved** 737:1
**exact** 811:20 812:2
812:7,11
**exactly** 633:4
634:14 657:1
662:10 677:16
679:5 729:6 732:8
735:3 746:12
750:13 802:7
803:3 808:7
**examination** 542:2
546:1 569:5
**examinations** 697:2
**examine** 628:21
790:1
**examined** 545:22
**example** 581:7
697:5 709:15
718:9,16 725:8,17
759:18 812:10
**examples** 549:1
716:12
**exams** 569:6
**excluding** 789:8
**exclusively** 549:5
**Excuse** 608:6
641:19 712:12
749:1 791:15
815:16
**Executrix** 537:4

**exhibit** 542:7,9,11
542:13 543:4,9,13
543:16,19 544:4,6
544:9,13,19 551:7
551:17 552:12,13
553:8 554:1,5
555:5,15,17
556:15 563:13,16
587:3,4 591:5
607:16 618:13
619:15 623:19
624:17,18,19
625:1,19,22 626:3
628:3 629:2 632:1
636:8,17 637:9
657:17 671:21,22
672:3,9,14 673:6
674:7,13 675:4,5
681:15,17 686:20
692:12,16,21
693:18 694:6,9
718:6 727:20
733:2,3 755:10,16
755:22 764:22
765:19 766:16
767:4 776:17
782:17 783:7
789:2 796:18
801:19,21 802:8
803:10 809:4
**exhibits** 553:12
555:10 556:17
557:12 560:6
573:9 575:17
580:10 607:6
642:6 705:1,4
718:9 719:14
761:21 766:5,12
777:21 806:7,8
**exist** 574:15 653:22
780:11 782:5
792:18 794:19,20
795:4,17,18
812:11
**existed** 559:20
561:2 574:17,19



574:21 576:4
627:7 715:11
768:16
**existence** 549:19
550:13 558:3
559:7 560:17
611:17
**exists** 670:21
**expansive** 613:14
613:15,17 614:9
**expected** 649:20
**Experiment** 792:9
**expert** 577:20
578:2 667:22
698:14,20 700:9
725:22 757:8
758:15 796:10
810:8,15 814:14
**expertise** 616:16
**experts** 577:22
**expires** 818:19
**explain** 634:6
**exponential** 698:10
**extensively** 704:5
**extent** 811:16
**extracted** 689:2
**extraneous** 602:17
**E.A** 540:2

**F**

**F** 674:22 675:1
756:20
**facility** 619:20
**fact** 550:17 576:21
585:19 600:6
646:17 647:9
696:4 729:3 795:4
801:7 805:21
808:3
**facts** 574:13 576:1
577:2,19 585:9,17
594:9 595:20
627:12 753:22
774:3,6 775:1
810:21
**fair** 617:9 646:6

677:14 680:4
683:19 719:12
726:5 744:6 790:3
**Fairfield** 539:15
**fairly** 676:7
**familiar** 618:16
700:13
**far** 616:15 725:9
766:13 780:10
**Farrell** 539:8
546:12,22 547:9
547:17 548:12,21
549:8,13 550:5,22
551:13 552:10,15
552:19 553:2,13
553:18 554:9,17
554:21 555:1
556:1 558:5,21
559:16 560:3,13
560:19 561:11,19
562:5,15 563:11
563:15 564:6,17
565:7,13 566:16
567:17,22 568:8
568:15 570:6,16
571:8,16 572:13
573:5,13,20
574:12 575:2,6,15
575:22 576:10,16
577:1,11,18 578:7
578:17 579:1,3,7
579:10,15,19
580:5,18 581:2,15
582:7,18 583:7,21
584:5,12 585:12
585:21 586:10,18
587:13,17,20
588:2,6,10,14,18
588:22 589:14
590:1 591:10,14
591:19 592:1
593:1,14,15 594:4
594:7,20 595:5,10
595:18 596:5,10
596:20 597:14,22
600:2,12,20 602:2

604:5,20 605:18
605:22 606:14
607:21 608:11,14
608:18 609:2,5
610:6 611:10,13
614:3,18 615:5
617:5,11,14 619:4
619:12 622:7,17
622:21 623:9
624:2,8 625:20
626:4,10,16,22
627:5,11 628:7
629:4,13 630:1,13
630:20 631:6,14
633:7,15 634:1,7
634:17 635:6,16
636:12,20 638:15
638:22 639:5,12
639:19 640:5,9,19
641:8,11,14,15,19
642:20 643:4,9,13
643:22 644:10,16
645:9,20 646:10
646:22 647:10,16
648:13 650:6
651:10 652:2,12
652:17 653:13
654:3,11,19 655:6
655:14,19 656:5
656:17 657:4
658:2,11,14 659:4
659:12 660:1,7,20
661:3,7,14,22
662:7,19 663:7,15
664:21 666:8,15
667:3,10,20
668:15 669:1,5,17
670:8,15 671:1,12
672:4,10 677:19
678:6,12 679:9
680:5,19 681:21
682:3,6,9 683:10
683:17,20 684:15
685:3,7,21 686:7
687:9,21 688:12
689:7,16 690:2,8

690:21 691:6,11
692:1 693:14,20
694:7,18 695:3
696:1 697:8 698:7
698:12,18 699:7
699:18 700:7
701:6,9 703:4,20
704:6,19 705:4,8
706:4,13 707:1,6
707:13 708:8,16
709:3,10,19 711:1
711:14 712:7,12
712:20 713:9,17
714:1,9,15 715:3
715:13,19 716:2,7
716:18 717:6,15
718:12 719:3,18
720:3,21 721:12
721:21 722:8,15
722:22 724:13
725:4 726:15,21
727:9,12 728:5,9
728:12 729:3,14
730:5,17 731:1,7
731:14,22 732:16
733:3,18 734:22
736:17 737:12,20
738:2,13,18 739:2
739:13,17 740:2
740:14,18 741:9
742:6,18 743:6,13
743:22 744:7,14
746:3,19,22
747:21 748:7,16
749:1,5,17,20
750:3,9 751:3,13
752:2,7,14,21
753:6,16,21 754:5
754:8,12,16 755:7
755:17 756:17
757:9 758:2,16
759:7,12 760:2,8
760:15 761:7,17
762:7,16 763:15
764:1,11,14
766:12 767:1,14

768:4,11,18 769:3
769:11,20 770:4
770:11,12,21
771:8,15 772:1,7
772:13,20,21
773:10,19 774:1
774:10,13,18,22
775:5,13,18,21
776:7,14 777:6
778:5,13 779:11
779:18 780:5,16
781:6,12,18 782:3
782:22 783:3,21
784:11,18 785:5
785:17 786:3,9,16
787:5,13 788:1,8
789:6,13 790:8,16
790:20 791:15,18
793:3,8,12,16
794:2,10,14,17
795:1,7,8,16
796:13,19 797:5
797:12,17,20
798:9,14 799:1,13
800:2 801:7,13,22
802:9,21 803:12
804:3,11,22
805:12,22 806:11
806:22 807:10,17
808:5,9,12,19
809:10,16 810:3
810:11,20 811:5
811:13,22 812:4
812:13,22 813:11
813:19 814:7,13
814:21 815:11,16
815:20,22 816:15
816:20 817:1,5
**Farwell** 569:18
573:1 574:4
575:13,21
**Farwell's** 573:4
**fast** 691:20
**faster** 663:19
**fate** 549:19 550:14
**fault** 623:20



**FC** 542:17 587:8
**February** 557:11
  695:15
**feel** 641:10
**feeling** 582:9
  596:11
**fell** 616:14
**FERNANDEZ**
  541:3
**fiber** 648:8,12,16
**fibers** 602:22 603:3
  613:13 614:8
  697:21 698:5,10
  699:5,17 700:6
  702:22 703:1
  796:11 798:21
  802:3
**field** 736:3,4,10,22
  767:12
**fighting** 682:4
**figure** 651:18
  662:15 688:10
  691:22 785:2
**file** 558:17 559:2,6
  559:10,10,13,19
  560:2,5,8,16
  561:2,10 562:11
  562:20,22 563:2
  726:3,4 768:9,16
  768:17 769:19
**filed** 590:11 705:19
  714:6,22 715:1
  761:4 768:1 771:3
**files** 557:21 558:2,9
  589:12 590:11,17
  591:1 705:19
  706:3,7,8,21
  707:2,4,8,11
  708:10,13,22
  709:8 712:6
  724:12 725:2,11
  768:10 769:15
**filled** 618:12
**final** 599:11,22
  600:4,8,11 611:21
**finally** 614:13

**financially** 818:13
**find** 571:21 574:4
  575:4 602:13
  622:14 653:20
  660:13 667:17
  668:14 692:2
  703:18 704:2
  708:1 709:7,18
  712:19 713:7
  714:5 715:2,10,11
  724:11 742:22
  759:5,5 760:13
  771:6 787:2
**finding** 573:1 698:5
  698:10 750:6
  798:21
**findings** 621:18
  622:15 641:6
**fine** 546:5 580:1
  617:16 663:20,21
  691:17 729:11
**finish** 731:11
**finished** 574:1
  588:22 605:15
  608:10 610:5,10
  731:14 749:20
  750:3 790:16,19
  812:4 816:20
  817:2
**finishing** 570:19
**firm** 593:20
**first** 545:20 547:18
  552:12 553:3
  555:2 556:2,5
  561:1 578:4
  584:19 587:11
  588:12 645:7,14
  648:16 651:1
  663:14,14 665:15
  665:16 723:15
  750:6 763:2,4,10
  777:11
**fit** 581:10,21
**five** 565:12 629:6
  642:7 663:17
  733:12 811:17

**five-page** 635:22
**flip-flopped** 569:21
**Floor** 538:5
**Florham** 540:15
**fluorescence** 569:6
**folder** 563:5
**following** 695:13
**follows** 545:22
**follow-up** 657:12
  706:20
**forced** 731:21
  732:13
**foregoing** 818:3,5
  819:3
**form** 542:8,9,12
  546:22 547:9,17
  548:12,21 549:8
  549:13 550:5,22
  551:13 554:3,6
  555:7,16,18,20
  556:1 557:1,9
  558:5,21 559:16
  560:3,13,19
  561:11,19 562:5
  563:11 564:6,17
  565:7 566:16
  568:15 570:6,16
  571:8,16 572:13
  573:5,13,20
  574:12 575:2,6,15
  575:22 576:10
  577:1,11,18 578:7
  578:17 580:18
  581:2,17 582:7,18
  583:7,21 584:5
  585:12,21 586:10
  586:18 589:14
  594:7,20 595:18
  596:20 597:14,22
  600:2,12 602:2
  604:5,20 605:18
  605:22 606:14
  607:21 608:14
  610:6 611:13
  614:3,18 615:5
  617:5 619:4,12

622:7,17,21 623:9
624:2 625:20
626:10 627:11
628:7 629:4,13
630:1,13,20 631:6
633:7,15 634:17
635:6 636:12,20
638:15,22 639:5
639:19 640:9,19
641:8 644:10
645:9,20 646:10
646:22 647:16
648:13 650:6
651:10 652:2
653:13 654:3,11
654:19 655:6
656:5,17 657:4
658:2,11,14 659:4
659:12 660:1,7
661:14 662:1,19
663:7 666:8 667:3
667:10,20 668:15
669:1,5,17 670:8
670:15 671:1
680:5,19 683:10
683:17,20 684:15
685:3,7,21 686:7
687:9,21 688:12
689:7,16 690:2,8
693:14,20 694:7
696:1 698:12
699:7,18 700:7
701:9 703:4,20
704:6,19 706:4,13
707:1,6,13 708:2
708:8,16 709:1,3
709:10,19 711:1
711:14 712:7,20
713:9,17 714:1,9
714:15 715:13
716:18 717:15
718:12 719:3,18
720:3,21 721:12
721:21 722:8,15
722:22 724:13
725:4 726:15,21

727:9,12 730:17
731:22 732:16
733:18 734:22
736:17 737:12,20
738:2,13 739:2,13
740:2,18 741:9
742:6,18 743:7,13
743:22 744:14
746:3,19,22
747:21 748:7,16
750:9 751:3,13
752:2,14 753:6,16
753:21 754:5
755:7 756:17
757:9 758:2,16
759:7,12 760:2,8
760:15 761:7,17
762:7 763:15
764:1,14 767:14
768:4,11,18
769:11 770:12,21
771:8,15 772:7,13
772:21 773:10,19
779:11,18 780:5
780:16 781:6,12
782:3 783:21
784:11,18 785:5
785:17 786:3,16
787:5,13 788:1
789:6 790:8 797:5
797:12,20 798:9
799:1,13 800:2
801:22 802:9,21
803:12 804:3,11
804:22 805:12,22
806:22 807:17
808:12,19 810:4
810:11,20 811:5
811:13 812:5,13
812:22 813:11,19
814:7,13,21
815:11 816:15
819:7
**format** 813:6
**former** 550:12,17
**forth** 593:7



**forward** 720:6
785:15
**found** 557:16 570:1
570:20 573:9,11
573:15,18 574:3,9
574:10 575:21
576:2,21 577:7
578:4 579:12
602:15 603:3
604:1,15 619:14
625:22 629:9,19
629:22 630:15,22
631:4,9,12 633:21
636:13 637:21
638:21 639:7,10
639:13,15 644:8
645:7 647:17
653:21 656:15
657:1 696:8 699:4
699:14 702:22
703:1 704:22
725:11 727:2,3,7
727:16 742:9
743:17 790:9
805:16
**foundation** 548:13
558:22 559:17
560:20 561:12,20
562:6 564:18
568:16 570:7
571:9,17 572:14
573:6,14,21
574:13 575:7
576:1,11 577:2,12
577:19 580:19
581:3,17 582:8,19
583:8 584:6
585:13,22 586:11
586:19 589:15
594:8,21 595:19
596:21 600:3,13
604:6,21 605:19
606:1,15 607:22
608:15 614:4,19
615:6 619:5
622:22 626:11

627:12 629:5,14
630:2,14,21 631:7
633:8,16 634:18
635:7 636:21
638:16 639:1,6,20
640:20 641:9
645:10,21 646:11
647:1 648:14
650:7 651:11
652:3 653:14
654:4,12,20 655:7
656:6,18 657:5
658:15 659:13
661:15 662:1
666:9 667:21
671:2 683:21
684:16 685:22
687:22 690:3,9
693:21 694:8
696:2 697:8
698:13 699:8,19
700:8 701:10
703:5 704:7,20
706:5,14 707:2,7
707:14 708:9,17
709:4,11,20 711:2
711:15 712:8,21
713:10 714:10,16
715:14 716:19
717:16 718:13
719:4,19 720:4,22
721:13 722:9,16
723:1 724:14
725:5 727:13
730:18 732:1,17
733:19 735:1
736:18 737:13,21
738:3,14 739:3,14
740:3,19 742:7,19
743:7,14 744:1,15
746:4 747:1,22
748:8,17 750:10
751:4,14 752:3,15
753:7,17,22 754:6
757:10 758:3,17
759:8,13 760:9,16

761:8,18 762:8
763:16 764:2,15
767:15 768:5,12
768:19 769:12
770:13,22 771:9
771:16 772:8,14
772:22 773:11,20
779:12,19 780:6
780:17 781:7,13
782:4 783:22
784:12,19 785:6
785:18 786:4,17
787:14 788:2
789:7 797:6,13,21
798:10 799:2,14
800:3 802:10,22
803:13 804:4,12
805:1,13 806:1
807:1,18 808:13
808:20 810:4,12
810:21 811:6,14
812:5,14 813:1,12
813:20 814:8,22
815:12 816:16
**four** 565:12 632:18
731:8
**fourth** 783:14
**Friday** 649:10
**front** 555:10
563:21 588:1
589:4 598:9
665:16 695:7,8
729:10 744:21
760:10 777:21
778:21 800:11
801:3
**fully** 547:15 710:17
711:18
**fundamental**
735:13
**furnished** 756:11
756:16
**further** 591:8
696:16 765:16
818:11
**Fuschino** 783:9

**f/k/a** 537:8 539:7

---

**G**

**G** 632:20
**Gale** 598:19 601:4
601:17,18,18
604:11 607:4
613:10,11 615:12
615:13 616:9
618:19 619:2,19
620:5,11,16 623:2
624:16 625:6
627:19 628:2,11
628:19 629:17,17
629:19 630:4,7
637:20 643:19
644:7 655:4 656:9
664:8 665:3,9
693:10 694:3,12
694:13 695:10
704:4 794:5
796:22 797:18,22
798:7 815:9
816:14
**Gale's** 622:15
638:4,20 640:3
644:4,8
**gathered** 726:19
**general** 548:4
565:2 569:20
574:5 575:17
602:13 612:9
613:12,17 759:15
**generalized** 612:13
**generally** 555:13
566:8,14 598:21
601:19 604:14
711:21
**generated** 600:15
611:22 719:16
734:3 740:17
815:3
**geologic** 604:13
**geologist** 569:14
616:9 668:2,13
690:11 790:6

813:21
**geology** 602:13
612:9 613:12
614:8 667:22
**Georgia** 616:11
644:20 649:14
650:17 651:13
652:1,5 696:5
697:2 700:15,17
700:22 701:1,15
701:19 702:7
704:11,14 792:9
796:2 799:17
810:18 813:5,5
**germane** 722:21
**getting** 679:9 717:6
788:11
**give** 547:7 552:20
587:11 593:4,11
671:5,17 672:2
712:12 724:1
727:1 731:21
736:11 737:10
749:12 793:21
802:17 810:19
**given** 572:20
578:16 583:11
605:9 649:19
686:16 785:15
818:8 819:5
**gives** 565:2 629:18
**Glassley** 723:21
724:12 725:1,3,22
726:5,10 727:6
728:4 730:5
731:20 732:4,12
734:19 736:15
739:22 741:8,15
742:15 745:15,18
747:17 750:7,21
752:9 753:4 759:3
759:22 761:16,20
762:5,18 763:21
764:10,20 766:11
767:11 768:17
771:5 773:8 776:7



778:4,19 780:9,13
783:20 784:15
785:4 786:5 789:1
789:5 803:2
**Glassley's** 724:19
729:1 731:2
736:18 738:10
740:13 742:8
744:13 748:4
751:1,11,19 761:3
762:13 769:16
776:8 785:2,9,16
789:3
**go** 552:15 565:16
568:20 580:4
581:19 598:11
606:17 607:5
608:1,3 611:12
615:18 618:8
619:17 624:11,12
631:18 635:21
636:16 637:4
647:20 648:21
653:1 657:13
660:19 663:12
671:5 691:3,20
694:15 700:20
712:15 724:5
726:6 734:1 735:7
736:20 745:6,10
746:8 750:16
756:20 758:5
762:14 764:19
783:12 796:8
799:19 800:22
801:6
**goes** 569:13 621:4
631:18 718:9
766:10 795:12
**going** 555:2 588:8
594:22 595:1,12
599:3 608:20
616:10 617:14,18
635:22 642:16
643:5,15 654:8,17
660:19 663:17

664:1,16 671:16
672:10 684:13
690:20 691:20,21
692:7 694:19
720:5 724:5
728:13 731:3,13
732:11 736:10
737:5 739:15
749:10 754:18
755:15 774:11
778:15 788:16
789:10 792:19
793:7,11,15
794:21 795:18
798:3 799:5 801:5
802:4 816:22
817:15
**good** 546:3 561:18
565:2 566:22
569:15 583:11
690:19 691:19
693:6 698:9 807:6
807:21 809:1,18
**GOODLOE** 539:18
**Gordon** 542:14
550:2,7,9 562:19
576:8 584:20
587:6 593:20
642:13 709:16
710:2,3 712:18
713:1,7,22 757:3
**gotten** 764:9
**govern** 756:9
**grab** 657:17
**graph** 636:1 637:6
637:7
**Grassley** 544:7
692:18 776:4
**Grassley's** 733:19
**gravity** 697:14
**Great** 794:9
**greater** 811:17
**grid** 802:3
**grids** 781:10
**Grimm** 544:15
776:20 782:10

**grit** 632:20
**ground** 673:20
674:21 679:18
731:8
**Grove** 541:4
**GTEES** 644:20
**guess** 560:21 574:4
596:11,16 608:20
647:2 659:14
696:20 711:16
715:7 728:11
748:18 778:10
779:3 791:17
793:5 810:16
814:1
**Gunter** 543:15,17
543:21 672:20
673:4,22 674:16
675:13 679:20
680:3 681:9,19
682:14 683:8,14
685:13,17,19
686:13 687:1,8
688:8,9 689:9
690:13

---

### H

**H** 542:4 543:1
544:1,16 592:5
776:21
**half** 731:12 742:19
773:11
**halfway** 616:12
**hand** 590:8 681:14
**handed** 798:7
**handful** 767:2
**handled** 665:18
**handling** 637:7
**hands** 593:13
**handwriting** 560:7
638:3,5 710:11
**handwritten** 636:1
637:6 708:4
711:13
**happen** 713:2
**happened** 558:8

561:9 575:12
582:3 583:17
609:21 610:1
617:3 657:2 660:2
671:10 733:12,17
735:4 737:9 743:4
744:5,10 760:14
761:1,14 762:3
786:1
**happy** 729:1 795:9
799:6
**harassing** 568:8
606:15 619:5
635:16 640:21
644:1 662:1 670:9
704:20 721:13
739:3 742:7,20
743:14 744:1,8
748:17 749:7
769:12 805:13
806:1 807:18
809:11 816:17
**harassment** 749:14
**hard** 583:17
**head** 605:8 617:7
**heading** 637:7
**hear** 746:6
**Hearing** 817:5
**Held** 538:2
**helpful** 562:4,7
**helping** 692:5
**Hemstock** 556:16
556:17,18 557:11
560:17 597:19
598:12,18 599:15
600:22 604:10
606:13 607:4
609:3,7 611:6
623:19,22 624:19
627:19 628:5,20
631:21 632:2,14
634:5 640:17
641:1 642:6
643:20 644:7
649:3 655:4 664:8
664:11,18 693:10

693:18 694:3
695:1 701:21
702:2,17 704:4
716:17 717:5,14
787:19 794:5
796:22 797:18,22
798:7 815:9
816:14
**Hemstock's** 597:9
598:5 614:15
616:22 617:12
703:12 788:2
808:22
**hereof** 818:6
**hereto** 756:11
818:13
**Hi** 693:7
**highlighted** 620:8
696:13 700:21
701:13
**hired** 725:22
761:16
**hiring** 762:5
**historical** 589:12
708:13 725:2
768:10
**HOAGLAND**
539:18
**holding** 776:8
**home** 578:10,18,20
578:21
**hopefully** 546:6
788:13
**hour** 617:15 663:17
731:13 791:17
795:2
**hours** 547:20 629:6
640:21 642:8
731:8
**house** 676:3
**How's** 660:17
**Huene** 734:17
**hundred** 559:5
**hundreds** 721:6,6
815:2 816:4,7
**hypothetical**



565:10 596:16

**I**

**idea** 561:9,18 565:2
565:9 580:20
582:5 621:13,21
784:21 785:21
807:15
**identification** 554:4
554:8 555:8
587:10 628:13
649:15 653:5
673:11 674:12,17
681:20 687:3
692:15,20 693:4
695:16 728:1
755:13 777:2
782:21
**identified** 546:18
551:10,16,22
558:18 623:22
655:1 657:16
675:11 681:6
721:11 789:2
**identify** 662:10,12
663:11 675:3
746:12
**II** 539:18
**III** 537:16
**imply** 700:11
**important** 564:15
572:11 585:9,17
595:22 605:12
657:3,6 662:12,15
670:21 696:8
702:13 754:4
810:18
**improperly** 815:17
**include** 720:5
**included** 580:10
586:4 606:4
702:10 719:6
**including** 569:7
620:12 642:12
726:19 756:10
789:8 795:11

**independent**
548:19
**independently**
549:16
**indicate** 611:16
**indicated** 602:19
620:9 755:3
**indicates** 597:3
799:21
**indicating** 655:3,17
**individual** 553:15
590:19
**individually** 537:4
563:1
**individuals** 628:3
628:11
**industry** 592:7
**information** 547:22
548:5,8 549:10,14
549:19 550:2,3,13
559:9,21 561:6
562:3,10 563:17
564:22 567:4,21
571:19 575:5
586:22 595:22
627:7 629:16,19
650:14,16 655:22
656:9 660:9 663:5
670:1 676:1 687:7
690:15 694:2
696:9 697:18
704:14,15,17
717:7 718:15
721:3,18 736:5,6
737:2 740:16
747:9 767:13,19
770:10,15 771:4,6
771:13 774:16
779:21 780:19
800:11 813:6
815:4,17 816:3
**initiate** 603:12
612:20
**initiated** 597:20
601:10,15 603:13
612:21 614:2,16

695:14
**injuries** 590:12
705:20
**Inlet** 694:20
**inside** 803:16
**insignificance**
814:6
**insists** 621:12
**insofar** 562:8
**inspection** 671:14
672:6
**Institute** 616:11
644:20 665:18
697:2 700:22
701:1,16 796:2
**instruction** 728:9
**intended** 612:9
**intent** 602:12
645:12
**interested** 601:20
602:4 603:1,1
818:14
**interesting** 800:20
**internal** 716:15
717:2 730:9
**interrogatories**
714:6 765:2
**interrogatory**
714:14,18
**interrupt** 677:19
**interrupting** 749:6
749:14
**investigate** 742:16
746:15
**investigating** 592:6
**investigation**
616:12 617:1,3
620:14,15,17
623:3 629:18
630:4,7 649:5
656:10 665:3
685:16 695:14,15
716:15 717:3
737:8 742:3 759:4
759:9 771:5
791:19 792:4

**investigations**
591:7 593:7
594:12,14,15
681:10 700:15
701:2
**involve** 653:4
**involved** 592:6
616:1 759:3 797:1
**involving** 585:10
**Ira** 542:14 587:6
**iron** 556:11 557:16
602:16
**irrelevant** 642:14
**Island** 761:4
**Islands** 736:8
**issue** 586:4 621:11
661:1,6 672:11
677:22 799:7
**issued** 600:1 640:13
717:5
**issues** 546:18 547:3
547:12 585:18
735:17 742:17
**i.e** 649:11 651:4

**J**

**J** 538:8 542:14
544:20 587:6
782:19 818:2,16
**James** 539:18
817:9
**jandris@rjm-la...**
540:12
**JANICZEK** 540:9
**Jared** 671:13
**Jeffrey** 542:15
587:7
**Jersey** 537:1
540:20 545:6
728:15,15
**jgoodloe@hoagla...**
539:20
**JOHN** 537:5
**Johnson** 543:5,11
543:20 592:16
593:9 605:14,15

606:12,20 649:9
666:5 667:14
673:8 674:9
682:15,22 686:17
686:22 689:12
719:10 726:12
730:12 733:9,13
736:6 748:5
750:18 800:7
802:13,15
**joined** 601:19
**JOSEPH** 540:19
**jrasnek@mdmc-...**
540:21
**Juan** 736:7
**judge** 592:1 672:13
710:10,15 711:17
711:17 731:17
801:12,14
**judge's** 711:12
**judgment** 643:2
715:10
**July** 557:2 701:20
702:1,16 819:14
**June** 542:10 544:8
554:7 555:18
692:19
**jury** 641:7
**justified** 642:17

**K**

**K** 542:4 543:1
544:1
**Karen** 569:15
571:13,19
**keep** 583:14 690:20
691:20 731:13
732:8 734:5,7,9
735:9,11 736:1
**Kelly** 544:20
782:19 783:8
**Kemble** 540:20
**kept** 618:19 641:2,6
727:4 732:7
734:20 735:4
736:15 738:5,6



787:22
**key** 647:7 734:12
**kind** 569:21 590:20
613:15 615:16
626:20 634:14
668:7 690:6 759:4
808:10 809:8
**kinds** 561:3 798:15
**Kirkland** 538:3
539:8 706:9,17,22
708:6 709:2
**KLUGER** 540:14
**knew** 549:1 574:20
576:13 611:18,18
751:2 763:11
**know** 552:20
554:10,13 558:1,8
558:11,12,18
559:3,6,8,9,13,15
559:19,19,20
560:8,10,12,16
561:1,1,2,3
562:11,19,21,22
563:4,7 565:14
567:7 568:13
569:19,20 570:8
571:6,10 572:15
572:16 573:11,15
573:19 574:9,19
574:21 575:1,8,9
576:5,8,12 577:9
578:1,11 579:7
581:4,20 582:21
583:9 584:15
586:3,12,14
588:16,20 591:1
592:11 596:1,1
598:22 599:22
605:12 610:16
612:11,12 616:18
618:11 620:16
624:12 625:1
626:7,8,12,14,18
626:20 627:1,3,6
627:7,10,15,17
628:14 629:11,15

629:21 630:3,3,11
630:18 631:3,8,9
631:12,16 633:10
633:19 634:2,20
635:4,18 637:19
637:21 639:3,9,17
639:22 640:22
641:1,1,5 644:4,9
645:15 646:3,7,14
647:3,7,12,17
648:10,15,17,18
650:13,21 652:4
652:16 653:16,17
653:21 654:1,5,6
654:6,14 655:9,15
655:21 656:8
657:7,18 658:9,22
660:8,9,10,10
661:1,17,19 662:5
663:4 666:19,22
667:1,2,5,8 668:1
668:4,7,10,11,17
668:22 669:3,7,13
670:7,11,17,17
671:3 672:8 674:5
675:20 676:3,5,13
676:16,19 677:2,4
677:5,9,13,15,16
677:18 678:5,9,11
678:17,20 679:1,2
679:3,4 683:6,7,8
683:8 684:1,4,6,6
684:8,10,10,12,17
684:21 685:4,6,8
685:12,13,14,19
685:20 686:1,2,5
687:15 688:2,3,3
688:4,6,7,8,8,16
688:19,21,22
689:1,2,4,5,10,14
689:17,19,21,22
690:4,6,10,13,16
691:8,9,13 697:7
697:18,19 698:20
698:21 702:13,19
702:19 703:6

705:10 706:15
709:21,22 710:6,6
710:21 711:11,19
713:1,2,3,11,13
713:18 714:2,3,20
715:5 716:11
717:8,10,12,17
721:1,3,5,22
722:10,20 725:6,7
725:8,10,19
727:15 729:6
732:2 737:15
738:6,15,17,19
740:1,4,7,8,10,20
740:21 741:18,19
742:2 743:16,17
743:20 744:3,9,12
744:16,17,19
746:13,16 747:9
748:10 753:9,18
754:3,7 757:11,13
758:21 760:4
761:1,20 762:1,3
764:6,16 766:13
766:18 770:14,20
771:1,10,22 772:9
773:2,3,21 774:1
774:3,3,5,22
775:1 777:22
778:1 779:16
780:3,7,8,10,11
781:8,14,19,20,22
782:2,5,6 785:7
785:13,19 786:5
786:10 788:10
790:9 792:12,15
795:4 796:5,18
800:5,9,16 802:12
802:16 803:2,3,4
803:14,15,19
804:1 805:3,6
806:13 807:4,8,14
807:20 808:2,6,7
808:10,14,16,22
810:8,14,22 811:3
811:11 812:7,19

813:2,22 814:9,11
814:15,18 815:1
816:12,18 817:3
**knowing** 603:2
616:16 645:13
688:9
**knowledgable**
547:2
**knowledge** 560:2
564:5 603:16
613:2 621:21
707:12 758:7
**known** 549:20
550:14 562:17
761:10
**knows** 667:6
685:12,13,15
782:6 789:15,17
792:15 801:8

---

# L

**lab** 718:16,21
719:15 720:19
790:7
**laboratory** 542:7,9
542:11 554:2,6
555:6,16,18,20
556:20,22 557:8
638:7 726:20
**larger** 697:17
**lastly** 647:14
**late** 543:11 673:16
674:10
**launched** 771:5
**Law** 537:2 545:6
**lawsuits** 590:11
705:19
**lawyer** 594:18
722:11 732:14
757:7 758:18
784:20
**lawyers** 548:11
549:12,18 550:2
561:7,9 562:3
576:7 583:19
584:4,10,15,22

585:1,5 586:16
600:10 712:19
720:13 740:1
**lead** 596:12 648:11
**learn** 711:20
**learned** 548:2
562:17
**learning** 547:21
601:20
**leave** 682:6
**Lee** 657:18,22
658:4 659:6 660:4
679:17,21 680:2
680:10
**left** 578:21 615:13
616:12 726:3
736:2 788:13
801:10
**legal** 545:14,15
586:2 614:16
615:4 661:16
757:12 787:16,21
**legwork** 616:10
**length** 641:16
**lengthy** 732:9
**Leslie** 543:17
681:19 682:15,20
683:4,11,14
685:14 686:5
**letter** 542:13
544:19 587:5
658:4,17 669:21
740:9 782:18
783:7 792:8 799:4
**letters** 642:13
709:16 712:18
735:16
**let's** 553:5 568:20
609:9 624:11
636:16 637:4
674:1,4 700:20
731:13 732:21
735:7 754:16
799:9,19 802:16
802:18
**level** 667:8,18



684:9 807:15,15
807:15,15 808:2
**levels** 667:15
676:15 677:14,21
811:9
**LIEU** 541:3
**light** 594:6 748:14
755:20
**Likewise** 572:1
**limited** 713:15
**line** 568:21 580:8
598:11 616:15
619:18 621:5
631:19 635:21
637:4 651:15
717:7 764:21
**lines** 691:7
**link** 702:9
**list** 580:9 628:3
725:18 798:17
**listed** 789:19 800:8
800:9
**listing** 632:15
**litigated** 585:9
**litigation** 589:8,12
590:19 707:4
708:13 709:17
712:6 720:11
725:2 726:3
768:10
**little** 557:20 564:22
630:9 672:16
696:16 759:1,2
765:16
**lived** 682:15,21
**LLC** 539:6 541:2,3
**LLP** 539:18 540:19
**lo** 775:7
**located** 606:11
642:9,9 703:18
706:9 725:1
779:17 790:6
804:13
**location** 590:10,16
595:11 705:18
731:2 742:13

743:17 759:20
769:8 773:7
775:15
**log** 723:10,10,12
783:8 785:22
789:19,20 790:2
**Lomas** 543:10
544:4 624:16
625:6,6,12 626:8
631:22 632:14
673:15 674:9
675:6,9,11,21
679:4 680:15
681:22 691:4
692:13
**long** 620:7 645:2
676:5 804:9,16
**longer** 581:21
670:21 805:19
**look** 552:22 553:6
557:17 560:7
564:9 578:12
579:20 584:16
586:22 589:6,7
590:2 598:2 611:1
611:12 612:9
615:17 617:6,10
621:4 622:9,10
637:13 640:7
644:13 645:11
650:13 651:14
652:8,15,20
658:16 664:17
665:12 679:11
682:1,5 691:3
696:12,19 703:8
711:4,4,6 723:13
724:5 727:17
729:14 732:21
745:7 758:12
765:22 766:11
785:1 787:15
790:12 794:7
800:21 802:6
803:21 805:3,6
810:8

**looked** 548:15
549:15 589:8
597:3 602:21,22
603:7 610:19
612:5,17 613:11
613:12,13 614:7,8
637:18 655:18
700:12 702:8
726:2,8 727:7
742:22 746:5
770:15 773:9
790:13 816:4
**looking** 563:20
582:9 586:14
602:16 603:4
607:9,11,13 611:1
612:2,10 631:9
645:17 650:19,21
697:6 701:22
702:17 714:12
729:15,20 760:3
785:2 800:4,10
802:16,19 804:8
805:9 813:10
814:18
**looks** 574:1 637:15
**loop** 788:22
**looseleaf** 618:12
624:20
**lose** 597:1 786:8
**loss** 741:13 760:6
775:20
**lost** 596:17 735:5
767:19 780:10,13
786:6,12
**lot** 549:15 550:8
553:7 558:12
559:8,21 571:18
572:2 590:18
597:2 639:14
650:14,16 679:12
694:2 702:7,11
703:11 731:12
739:8 797:13
799:20 800:16
815:4

**lots** 641:13
**lunch** 557:18 652:8
660:21 690:20,21
691:14
**lunchtime** 660:17
679:12

_____

**M**

**M** 539:3 542:4
543:1 544:1 668:6
668:6
**MA** 666:1
**Magna** 545:13,15
**magnesite** 602:16
**MAGNESIUM**
539:7
**mailed** 625:8
**main** 633:13
655:12 677:6
678:18 684:22
689:19 808:17
809:15 813:9,18
813:22
**making** 638:9
815:17
**man** 774:13,15
**manageable** 649:12
651:5
**manual** 712:2
**manufacture**
609:12
**Manufacturing**
537:9
**map** 635:12 647:7
**Maple** 539:4
**mapped** 806:4
**mapping** 806:14
**maps** 632:7 633:4
805:18 806:8,13
**March** 560:17
620:11 621:1,6
622:5 624:16
628:2 631:21
632:6 649:2,10
664:18 716:17
717:4 765:7

787:20 791:18
818:20
**Marchetti** 607:8
**mark** 552:17 553:6
553:11 554:11,13
554:15,19 587:2
636:3 671:17
672:7,13 673:17
681:12,14 686:18
723:16 727:18
774:21 776:12
782:15
**marked** 554:4,8
555:8 587:9
624:22 628:12
632:16 671:7,9,11
671:13 673:11
674:11,17 681:20
687:2 692:15,20
693:4 717:20
728:1 755:13,15
764:22 765:18
766:5,13,16 767:2
767:4 777:1,4
782:20 789:1
792:3
**marking** 671:17
672:9
**markings** 671:19
**marks** 637:9
**Martin** 723:22
739:10 741:16
758:21 759:6,22
760:7,14 761:5,11
761:14 762:19
763:21 764:9
766:14 767:6,12
768:9,16 769:9,19
770:2,10,18 771:3
771:14 772:6,12
772:19 773:9,18
774:4 775:6,8,12
775:14,22 776:5,8
776:9,11 778:19
784:15
**material** 578:20



588:11,15 641:15
672:20,21 697:13
697:14 731:8
732:7 734:20
735:12 743:21
765:11 766:19,19
772:2
**materials** 649:16
650:19 735:9,22
761:3,15 762:4
765:21 766:2
777:16 786:1,6
**math** 698:16
**matter** 545:4
693:17 694:1
**matters** 562:10
**MC** 801:1
**McClellan** 540:10
**McCrone** 543:7
665:18,18,22
666:1,3,5 669:11
669:15,16 670:1,1
670:2 673:10
680:12
**MCDEVITT** 540:9
**MCELROY**
540:19
**MCGIVNEY**
540:14
**mean** 548:14 583:9
585:3 594:11
595:21 596:1
609:16,22 613:13
614:5 655:20
656:20 659:9
661:17 671:11
677:19 700:10,13
711:17 723:5
757:11 777:17
779:20 790:3
803:2 812:7
**means** 577:10,13
648:16,18 684:14
698:22 749:9
**meant** 648:17
681:1 711:17

782:14 812:16
**meeting** 561:8
647:22
**memento** 677:12
**memo** 560:17 622:5
624:16 625:5,16
626:14 628:18
632:6,7,14 633:3
633:12,21 634:4
634:12 644:19
649:2 664:18
695:9 702:1,16
716:17 717:4,14
787:21 791:19
**memoranda** 599:7
599:9,10 628:2
**memorandum**
620:10,13 621:5
621:11 628:11
631:20 632:8
665:1,3
**memorized** 651:15
**memorizing** 650:15
**memory** 730:14
733:16 736:14
763:14
**mention** 725:7,9
796:1
**mentioned** 551:20
558:7 559:2,18
562:9 568:1,10
570:11 573:8,22
590:18 597:2
629:17 680:22
696:3,6 700:16
726:6 734:4 739:7
746:10,11 752:8
760:19 761:21
769:14 780:8
818:6
**Merchantville**
540:11
**met** 547:19 752:22
**methodologies**
566:18
**methods** 547:22

**Michael** 539:4
660:3 661:12
**Mickey** 673:22
**Micky** 543:15,17
543:21 672:20
674:16 675:13
679:20 681:9,18
682:14 683:8,14
685:13,17,19
686:13 687:1,8
688:8,9 689:9
**micrographs** 645:3
647:15,18 780:15
804:9,10,15,17
**microprobe** 734:11
**microscope** 603:4
651:9
**microscopic** 569:6
569:16 572:22
653:7
**microscopist**
569:15
**microscopy** 695:18
697:1 701:2
**Microtrace** 665:19
672:10
**Middlesex** 537:2
545:6
**MID-L-5384-11**
537:3
**MID-L-5384-11AS**
545:7
**milligram** 697:7,10
697:21 698:11
699:5,15,17 700:6
**milligrams** 798:21
**mind** 583:14
654:10 790:18
**mine** 543:5,11,20
580:16,17 581:8
581:12 592:16
593:9,10 594:2,14
595:16,22 596:4,8
596:13,19 597:5
597:20 601:4,18
604:2,11,18 605:5

605:14,15,16
606:12,20 607:18
607:19 608:3,9
609:15,18 610:4
610:15 611:9
613:8,8 614:1,6,7
616:10 617:3
619:3,7 623:6
627:18 628:20
635:14 636:18
641:5 646:8,18,20
647:9 649:9 653:4
655:3,13 659:16
664:9 665:8 666:5
666:6,12,20 667:8
667:15 668:8,10
673:8,16 674:10
676:11,13 677:13
678:21 679:6
682:22 684:7,9,22
685:2 686:17,22
688:17,20 689:3,6
689:12 690:1
693:10 695:21
703:14 704:4
726:12,13 727:11
730:12 733:13
736:6,16 748:5
750:19 794:6
797:1,18 799:11
800:1,7 802:13,15
802:20 803:4,7,16
803:22 805:10,16
805:20,21 806:8
806:13,20,20
807:5,9,21,22
808:2,4,8,11
809:2,5,19 810:2
813:17 814:12,19
814:20 815:9
816:6,14
**mined** 633:14
808:17 816:10
**mineral** 570:2
602:14 612:10
653:5

**mineralogic** 569:6
616:15 653:3
**mineralogical**
569:9
**mineralogist**
569:18
**mineralogy** 613:12
614:8 621:12
**minerals** 541:2
569:10 602:17,21
603:7,10 612:16
612:18 636:2
637:8 653:8
**Mining** 537:8
**Minnesota** 537:8
**minute** 758:12
**minutes** 566:9
663:17 728:22
731:7 747:2 772:1
788:12
**misinterpreted**
791:13
**misnumbered**
564:21
**missing** 564:8
565:1,5 567:21
575:21 576:3
578:5 579:6 583:3
641:18 693:11
795:4
**misspoke** 792:20
**misspoken** 677:20
**misstates** 559:17
576:1 577:2,19
583:22 584:6,12
589:15 661:15
680:20 693:21
694:8 708:17
733:19 741:10
750:10 751:4
758:3 760:9,16,16
770:13 772:22
773:20 779:12
808:13,20 811:6
813:1
**mistake** 564:20



mistaken 694:16
moment 581:15
  608:18
months 601:7
Moore 540:18
  541:9 545:13
MORAN 539:18
morning 546:3
  588:11 693:8
  717:21 806:10
morphology 603:1
  603:3
Morristown 540:5
  540:20
motions 714:22
Mountain 556:11
  557:16
move 643:18
  767:20
moving 691:1
  705:7 754:8
mow 801:15
Mt 540:20
multiple 644:1
  664:21 792:22
  816:16
multi-page 637:5
MULVANEY
  540:19

**N**

N 539:1 540:1
  541:1 542:1,1
name 561:4 636:3
  683:9,11,16 684:1
  725:7,9,14,19
  761:9,11,22
named 761:5
nationals 618:5
nature 601:20
necessarily 761:10
necessary 662:10
  723:7
need 729:12 748:19
  748:21 749:12
  754:10

needed 699:21
  723:6 772:2
neither 818:9
NEMOURS 540:2
never 550:19 570:1
  570:20 573:19
  574:2,9 577:6
  597:1 600:7
  601:17 663:5
  712:22 713:3
  745:22 748:14
  751:2 769:18
  773:9 802:4
new 537:1 539:19
  540:20 545:5
  641:11,13 642:16
  643:9,16 728:15
  728:15 731:8
  736:9 747:6
  749:17,21
Newger 569:15
  571:13,19 790:6
Newger's 790:7
NEWMAN 540:4
NIOSH 605:4
  606:3,10
NJ 539:5,15,19
  540:5,11,15 541:4
Northwest 545:11
Nos 673:6 674:7,13
Notary 538:9 818:1
  818:17
notations 638:10
note 553:21 751:19
notebook 556:20
  557:6,13,14,14
  638:10 640:2,3,8
  640:12,18,18
  641:2,6 643:19
  644:5,6 670:20
  718:16 736:3,4,22
  738:10 790:7
notebooks 557:15
  718:21 719:15
  720:20 737:19
noted 545:16

632:19 819:7
notes 636:1 637:6
  638:7 723:20
  731:2 736:10
  741:13 742:13
  748:4,10 750:8
  751:12 759:20
  767:12 769:8
  773:7 775:16
  776:2 778:17
notice 538:8 568:17
  585:13,22 586:11
  586:19 587:13
  588:15 589:15,16
  590:3 594:8,21
  595:7,19 596:21
  614:19 615:6
  631:7 633:9
  634:18 635:7
  639:6 642:12,15
  648:14 652:3
  657:6 667:21
  698:13,19 699:8
  699:19 700:8
  708:17 710:17
  712:21 714:10,16
  715:4 723:19
  727:13 730:18
  731:9 738:14
  741:10 760:9,16
  760:18 768:12
  770:22 771:9,16
  771:18 772:8,22
  773:1 779:12
  783:22 784:12,19
  785:6,18 786:4
  813:20 814:8,14
  814:22
noticed 691:11
noting 729:3
number 542:6
  543:3 544:3 545:3
  545:6 553:8 563:4
  565:19 587:21
  588:3 590:6
  592:14 657:17

671:21,22 672:3,9
  672:14 673:1
  674:2 675:4
  682:11 687:5
  695:16 697:20
  756:20 778:17
  779:2 790:5
numbers 579:13,14
  784:2,4 795:12
  800:8 802:3 811:8
  812:11 814:6
numerous 792:10
N.W 538:4

**O**

O 542:1
oath 641:7
object 712:13
objection 546:22
  547:9,17 548:12
  548:21 549:8,13
  550:5,22 551:13
  556:1 558:5,21
  559:16 560:3,13
  560:19 561:11,19
  562:5,15 563:11
  563:15 564:6,17
  565:7,13 566:16
  567:17,22 568:8
  568:15 570:6,16
  571:8,16 572:13
  573:5,13,20
  574:12 575:2,6,15
  575:22 576:10
  577:1,11,18 578:7
  578:17 580:18
  581:2,15,17 582:7
  582:18 583:7,21
  584:5,12 585:12
  585:21 586:10,18
  589:14 594:4,7,20
  595:18 596:20
  597:14,22 600:2
  600:12,20 602:2
  604:5,20 605:18
  605:22 606:14

607:21 608:11,14
  610:6 611:10,13
  614:3,18 615:5
  616:3 617:5 619:4
  619:12 622:7,17
  622:21 623:9
  624:2,8 625:20
  626:4,10,16
  627:11 628:7
  629:4,13 630:1,13
  630:20 631:6,14
  633:7,15 634:17
  635:6 636:12,20
  638:15,22 639:5
  639:19 640:5,9,19
  641:8 643:22
  644:10 645:9,20
  646:10,22 647:16
  648:13 650:6
  651:10 652:2
  653:13 654:3,11
  654:19 655:6
  656:5,17 657:4
  658:2,11,14 659:4
  659:12 660:1,7
  661:14,22,22
  662:19 663:7
  666:8 667:3,10,20
  668:15 669:1,5,17
  670:8,15 671:1
  680:5,19 683:10
  683:17,20 684:15
  685:3,7,21 686:7
  687:9,21 688:12
  689:7,16 690:2,8
  693:14,20 694:7
  696:1 697:8 698:7
  698:12 699:7,18
  700:7 701:6,9
  703:4,20 704:6,19
  706:4,13 707:1,6
  707:13 708:8,16
  709:3,10,19 711:1
  711:14 712:7,20
  713:9,17 714:1,9
  714:15 715:3,13



716:18 717:15
718:12 719:3,18
720:3,21 721:12
721:21 722:8,15
722:22 724:13
725:4 726:15,21
727:9,12 730:17
731:22 732:13,16
732:18 733:18
734:22 736:17
737:12,20 738:2
738:13 739:2,13
740:2,14,18 741:9
742:6,18 743:6,6
743:13,22 744:14
746:3,19,22
747:21 748:7,16
750:9 751:3,13
752:2,14 753:6,16
753:21 754:5
755:7 756:17
757:9 758:2,16
759:7,12 760:2,8
760:15 761:7,17
762:7 763:15
764:1,11,14
767:14 768:4,11
768:18 769:11
770:12,21 771:8
771:15 772:7,13
772:21 773:10,19
779:11,18 780:5
780:16 781:6,12
782:3 783:21
784:11,18 785:5
785:17 786:3,16
787:5,13 788:1
789:6 790:8
796:13 797:5,12
797:20 798:9
799:1,13 800:2
801:22 802:9,21
803:12 804:3,11
804:22 805:12,22
806:22 807:17
808:12,19 809:10

810:3,11,20 811:5
811:13,22 812:5
812:13,22 813:11
813:19 814:7,13
814:21 815:11
816:15
**objections** 576:16
590:1 596:10
626:22 627:5
634:1,7 635:16
639:12 647:10
655:14,19 662:7
698:18 738:18
744:7 752:7,21
769:3,20 770:4
781:18 786:9
788:8 798:14
806:11 807:10
808:5 809:16
810:3
**obligation** 561:16
**obligations** 546:20
547:6
**observations** 569:9
**obtained** 543:10,16
543:21 606:7
673:15 674:9
675:6,8,11,12
676:7 679:20
681:10,18 682:15
682:16,16,18,19
682:22 686:13,22
687:15 688:5
690:14 701:19
706:8
**obtaining** 689:15
**obviously** 720:6
731:17 751:5
**occurred** 601:6
**OCR'd** 707:12,15
**office** 724:11,19,22
**officer** 818:2
**Oh** 572:5 623:16,18
757:15
**okay** 551:5 552:6
553:2,5,17 556:5

556:8,21 557:7
558:1 563:9,20
565:16,18 566:13
567:6,10 578:4
579:5,9 583:13
590:22 592:20
593:17,22 596:15
597:9 598:16
599:19 601:14
604:1,15 609:10
611:5 614:13
615:10 616:21
617:9 623:21
624:15,22 626:7
627:16 628:10
629:11 630:18
632:4 633:3 634:4
636:10,16 637:4
637:12 638:13
643:18 644:13
647:20 648:10,21
655:1 657:10,14
657:21 660:16
663:10 664:14
665:6,20 666:2,15
666:19 671:5
673:13,17 675:19
676:5,13,16 677:2
678:2 680:1,12,15
682:11 684:21
686:11,18 687:19
688:4 690:13,19
694:15 696:22
697:5,15,20
700:20 716:9
717:19 718:20
719:12 721:17
723:15 725:21
729:16 730:1,4
731:13 732:21
734:1,15 747:15
756:4 758:14
761:13 762:16
763:20 764:8
765:16 766:10
775:20 777:11,15

782:8,15 787:2
791:16 794:1,7
795:14 799:19
801:5 802:17
805:10 808:10
**old** 548:2 666:22
781:21
**omitted** 623:17
**once** 646:3 740:20
**ones** 548:15 552:1
578:10 611:17
652:6,9 680:21
681:5 748:10
753:10 781:21
**one-of-a-kind**
613:7,20
**one-page** 624:15
**ONGO** 539:18
**opening** 802:3
**operated** 592:17
**operation** 602:5
628:21
**opinion** 562:14
**opportunity** 621:18
637:16 724:5
**opposed** 601:10
**optional** 728:10
**order** 544:10
546:14,18 547:3,6
547:8,15,16
561:17 605:13
619:11 649:19
653:2 663:10
693:1 705:17
708:15 711:13
737:2 742:4,4,16
743:10 748:15
751:21 756:1
757:16,17,21
759:19 760:21
769:6
**ordered** 742:12
774:15 778:2
**orders** 552:11
**ore** 602:7 609:15
610:15 611:8

627:3 632:20
633:13 646:8
655:12 666:20
677:3,6 678:18
684:22,22 689:20
695:21 703:3,14
719:1 720:17
726:12 733:9
750:19 799:11
808:17 809:15
813:9,18,22
**Organist** 653:6
**organization**
601:19
**origin** 676:18
**original** 556:8
557:15 578:12
582:16 590:3,11
590:17 672:4
705:18 716:16
717:3,13
**originally** 556:11
639:22 665:22
724:8
**originated** 611:8
615:3 658:5
728:14
**Oulton** 558:13
559:9,21 561:10
562:10,20 563:2
**Oulton's** 557:21
558:1,9,17 561:4
**outcome** 818:14
**outcroppings** 685:1
**outlined** 547:3
**outside** 685:1
726:13,20 728:16
803:15
**overbroad** 720:4
720:22 721:13
**owned** 592:16
610:3
**O'TOOLE** 541:3

---
**P**
---

**P** 539:1,1 540:1,1



541:1,1
**package** 672:1
**packet** 554:12
**packets** 553:19
**Paduamo** 783:9
**page** 542:2,6 543:3
544:3 555:2 556:2
556:5,19 557:5,13
557:14,14 564:8,9
564:10,21 565:1,1
565:16 566:7,14
567:4,6,11,16
568:7,20,21
570:10,15 573:19
579:13,14 580:4,5
580:6 584:19
591:6 593:19
598:11,14 612:1
612:15 614:14
615:19 617:10
619:17 621:4
622:16 624:12
627:17,20 628:1
631:19 637:4,15
648:5 652:11
653:1 665:6
696:14 700:20
726:7,8 730:4
732:21 734:1,15
735:7 745:10
756:4,20 762:14
764:19 765:7
766:22 783:12
785:3 795:22
805:10 807:3
**pages** 555:21
564:15 565:5
567:13 568:10
578:5,9 579:1,6
579:18 583:3
614:20 632:6
638:4 642:4 819:3
**pair** 543:4 665:17
673:7
**Palenik** 636:4
**paper** 553:14 559:5

559:6 636:1 637:6
637:7
**papers** 715:1
**paper-clipped**
555:4
**Paragraph** 756:7
**pardon** 607:12
**Park** 540:15 541:4
**Parkway** 540:5
**part** 557:2 575:16
598:19 601:8
623:10,15 626:2
627:3 638:18
658:3 661:5
662:12 665:22
666:19 672:6
677:2,13 678:16
678:21 679:20
684:7,11 685:16
689:22 694:9
710:21 725:20
746:5 777:16
809:5
**participated** 763:8
**particle** 570:2
**particular** 630:11
704:15
**particulate** 611:2
**particulates** 816:6
**parties** 756:13
818:11
**parts** 625:22 655:3
736:9 810:2
**Paterson** 539:19
**people** 547:21
549:5 550:21
577:21,22 582:14
609:18 614:10
620:12 660:10
**perceiving** 612:13
**percentage** 631:3
809:22 813:8,17
**perception** 582:22
**performed** 606:3
748:5
**period** 616:7

619:22 620:1,7
**periods** 600:16
**permanently**
787:22
**persist** 774:5 775:2
**person** 547:2
682:21
**personal** 758:6
**personally** 602:4
689:10 740:10
744:3
**person's** 683:22
**perspective** 577:17
586:3 661:16
698:22 812:6
**pertain** 816:13
**perusing** 622:11
**Peter** 539:8 616:9
620:11 622:15
625:6 628:11,18
637:20 638:4
**Peter's** 621:18
**peter.farrell@ki...**
539:10
**phone** 595:6 763:6
817:4,8
**phoned** 649:22
**photographic**
569:8 571:3,7
572:1,5,7,10
734:10
**photographs**
723:20 741:14
742:14 747:16
748:1 750:7 753:4
753:9 759:21
769:9 773:8
775:16 776:3
778:18 780:2,14
**photomicrographs**
718:10,15 737:19
738:11 746:14
810:7,10,14
**physical** 542:7,11
551:7,8 554:2
555:6,15,19

717:19
**physically** 728:19
**PICINI** 539:14
**pick** 660:18 663:12
**picked** 625:8 626:8
727:2
**pieces** 815:2
**place** 598:18 620:2
691:19 751:21
**places** 692:1 700:18
**Placitella** 539:3,3
542:3 544:21
545:12 546:2,13
547:4,13 548:7,16
549:3,9,17 550:10
551:4,15 552:5,16
552:17,22 553:5
553:11,17 554:10
554:15,19,22
555:9 556:4
558:16 559:11
560:1,9,15 561:15
562:2,13,18
563:12,19 564:12
565:4,11,15
566:19 567:19
568:5,12,19
570:12 571:1,11
572:4,17 573:10
573:17 574:7,16
575:3,10,19 576:6
576:14,18 577:8
577:15 578:3,13
578:22 579:5,9,12
579:17,21 580:1,3
580:6,7,21 581:5
582:1,12 583:2,12
584:1,9,18 585:16
586:6,13 587:2,11
587:15,18,22
588:2,4,8,13,16
588:20 589:2,3,17
589:20 590:4
591:12,16,19,21
592:4 593:3,18
594:5,16 595:3,8

595:10,12,14
596:3,6,14 597:8
597:17 598:4
600:9,17,21 602:3
604:9 605:11,20
606:8,21 608:5,12
608:16,22 609:8
610:7 611:11,19
614:12 615:1,9
617:8,12,16,22
619:9,16 622:13
623:5,13 624:4,10
626:1,6,13,19
627:2,8,13 628:9
629:7,10,20 630:6
630:17 631:2,11
631:17 633:11,20
634:3,11,22
635:11,20 636:15
637:3 638:19
639:2,8,16 640:1
640:6,15 641:3,12
641:13,17 642:19
642:21 643:5,11
643:14,17 644:2
644:12,17,18
645:16 646:1,16
647:5,13,19
648:20 650:8
651:16 652:7,14
652:19,22 653:19
654:7,15,22
655:10,16 656:1
656:13,21 657:9
658:7,12,19 659:8
659:19 660:5,12
660:22 661:5,9,18
662:4,14,22 663:9
663:20 664:5
665:5 666:13,18
667:7,13 668:3,18
669:2,8 670:4,12
670:19 671:4,15
671:20 672:2,7,12
672:16,22 673:3
673:12,17 674:1,4



674:18 675:2
678:1,2,3,10,15
679:8,11,13 680:7
681:2,21 682:1,4
682:8,10 683:13
683:18 684:2,20
685:5,9 686:3,10
686:18 687:4,12
688:1,15 689:13
689:18 690:5,12
690:19 691:2,8,12
691:19 692:4
693:5,15 694:5,10
694:21 695:5,6
696:11 697:9
698:8,15 699:1,9
700:1,4,19 701:7
701:12,14 703:9
704:1,16 705:2,6
705:12,14 706:11
706:18 707:3,10
707:16 708:12,20
709:6,14 710:1,7
710:9 711:5,22
712:10,15,16
713:3,14,20 714:4
714:13,21 715:8
715:17,22 716:4,9
716:13,22 717:11
717:18 718:19
719:11,22 720:9
721:9,16 722:2,12
722:19 723:4,18
724:17 725:12
726:17 727:5,10
727:18 728:2,6,7
728:12 729:6,16
729:17 730:19,21
731:4,5,11,16,18
732:10,20 733:22
735:6 737:4,17,22
738:8,16,21 739:9
739:15,19 740:5
740:15 741:1,3,11
742:11 743:2,9,19
744:4,11,20 746:6

746:7,20 747:7
748:3,11,20 749:2
749:16,19,22
750:4,5,15 751:10
751:17 752:4,11
752:18 753:2,11
753:19 754:2,9,10
754:14,22 755:2
755:14,18,19,21
756:19 757:14
758:11,20 759:10
759:17 760:5,12
760:22 761:12
762:2,12 763:19
764:7,12,18
767:21 768:8,14
769:1,5,17,22
770:8,17 771:2,11
771:19,20 772:4
772:10,17 773:5
773:16 774:2,8,11
774:15,19 775:4,9
775:15,19 776:2
776:12,15 777:3,7
777:8 778:7,13,15
778:16 779:15,22
780:12,22 781:9
781:15 782:1,7,15
782:20 783:1,5,6
784:1,13,22 785:8
785:20 786:7,13
786:19 787:8,18
788:5,11,20
789:10,16,22
790:11,14,17
791:1,14,16,20
792:12,17 793:2,4
793:9,10,14
794:11,12,15,21
795:2,6,14,19
796:3,17 797:9,15
798:2,11,19 799:5
799:8,18 800:13
801:7,9,16,18
802:1,14 803:5,18
804:7,14 805:8,17

806:5,16,18 807:7
807:13 808:1,15
809:3,13,21 810:6
810:17 811:2,10
812:1,9,18 813:7
813:15 814:3,10
814:17 815:6,14
815:15,19,21
816:1,11,19,21
817:3,7
**plaintiff** 537:6
539:2 586:8
725:21
**plaintiffs** 642:14
**plaintiff's** 554:1,5
555:5 587:4
594:18 637:17
673:6 674:7,13
681:17 686:20
692:12,16,21
712:18 732:6,13
757:7,18 758:15
765:1 776:17
777:5 782:17
**plant** 601:18 625:6
**plates** 734:10
**please** 545:17 580:4
581:16 622:18
644:3 648:6 653:1
671:6 672:17
681:12,15 686:19
692:9 710:8 741:2
750:16 756:5
764:19 771:21
774:21 776:13
782:16 783:12
794:8 801:9,16,17
803:9
**plenty** 692:1
**plus** 767:12
**point** 570:10
574:21 642:11
724:9 736:21
745:8 749:9
773:12 790:19,21
793:22 797:8

798:18 799:17
807:22
**pointed** 664:7
695:2 797:17
**policies** 786:21
**policy** 787:3
**popped** 739:11
**PORZIO** 540:4
**positive** 810:1
813:9,18
**possession** 558:3
559:13 706:16
736:15 738:10
741:8 767:3 772:5
794:20
**possible** 586:4
667:19 814:19
**potential** 605:2
761:22
**potentially** 623:17
**pounds** 728:13
**powder** 543:13
674:14 675:12,13
675:15,17 679:19
681:1
**precisely** 730:6
**precluded** 634:13
**precursor** 635:5
**preliminary** 599:4
**Prentiss** 733:15
735:9 737:7,10
765:13
**preparation** 547:14
568:14 569:8
578:9,20 589:9
597:3 653:6 746:1
746:5 752:9
777:14 793:19
**preparations** 638:9
**preparatory** 638:9
**prepare** 547:7
590:20 615:15
646:4 650:14
699:12 734:17
748:15,21 759:15
760:21 767:11

**prepared** 547:11
561:21 589:11
598:21 625:12,15
635:8 642:3
646:14 656:9
699:11 723:3
730:7 741:12
742:12,17 746:21
769:7 773:6,14
774:16 778:12
779:7,9,14
**preparing** 546:20
562:17 575:13
582:10 604:3
703:7 745:6
752:19 772:11
**preselected** 632:16
**presence** 586:5
605:2,6 606:4
**present** 541:9
569:10 648:8,12
648:17 707:5
**presented** 606:18
767:5
**presumably** 633:4
713:5 715:1
**presume** 652:5
744:18
**presupposes** 795:3
**pretend** 795:16,17
795:18
**pretty** 591:13
613:13 638:6
732:9 807:6
**previously** 558:8
560:6
**printouts** 718:10
723:21 734:11
776:3 778:18
**prior** 547:20 585:8
628:4
**priority** 649:20
653:2,17
**privilege** 723:9,10
723:12 783:8
785:22 789:20



790:2
**privileged** 717:7
721:3 722:1
785:10 789:8,11
789:17
**probably** 551:2
566:1 571:22
572:2,8 584:15
599:4 600:7 601:6
723:16 729:10
731:11
**probing** 700:1
**problem** 583:1
600:18 611:4
672:9 691:12
741:20 778:6
**proceed** 643:7
**proceeding** 815:18
**proceedings** 757:1
**process** 793:20
**processed** 609:20
649:11,13 651:4
666:7
**processing** 602:5
**produce** 619:10
622:5 629:17
690:1 705:16
774:16 777:15,18
777:19 779:1,6
**produced** 548:10
549:21 550:3
561:7 578:14
579:11,21 592:15
597:13,15 605:1,7
605:9 606:7 608:3
617:1 623:1 630:5
651:21 652:5
653:11,15 656:11
678:22 700:17
701:8,19 704:12
721:7 724:4,8,9
724:19 725:1
726:2 770:19
771:4 772:12,15
772:18 773:3,4,17
773:22 774:5,14

775:6,8,10 778:1
778:6,14 779:5
785:11 792:17
813:5
**producing** 655:1
**product** 605:16
608:10 609:12
610:5,10 611:2
614:1 633:14
678:22 784:9,16
808:17
**production** 579:21
581:11,21 623:7
633:14 646:8,19
666:7,11,12
695:17 696:13,17
696:22 698:6
702:17 779:5
796:9 798:22
**products** 605:2
816:5
**Professional** 538:9
**profitably** 566:2
**program** 615:20
616:2
**Project** 666:1
**proof** 657:21 659:1
659:3,5,11 661:11
661:17 662:17
**properly** 621:11
**propounded** 819:6
**prove** 586:9 659:9
659:17
**proven** 596:18
**provide** 766:1,19
**provided** 550:21
579:2,3 604:16
675:21 696:7
746:2 766:20
767:13 770:9,11
**provides** 623:3
794:4 796:20
**providing** 549:10
690:15 696:9
765:21
**Public** 538:10

818:1,17
**publications** 735:18
**published** 605:5
606:3 719:6,9,9
**pull** 660:6 775:7
**pulled** 624:5
659:16,20 660:10
662:11
**pulverized** 649:11
651:4
**pulverizing** 651:7
793:20
**pure** 632:19
**purifies** 632:19
**purportedly** 686:17
**purpose** 615:2
**purposes** 566:2,3
566:22 602:6
**pursuant** 538:8
547:7 605:13
716:17 717:4,14
746:9 751:20
755:5 757:16
759:18 769:6
**put** 557:3 559:4
563:17,20 581:12
590:8 643:6
646:13 647:4
654:16 658:6
672:16 705:17
710:11 715:20
731:7 785:22
794:1
**P-R-O-C-E-E-D-...**
545:1
**P-12** 723:19 741:1
**P-13** 546:9,14
710:7,10
**P-15** 571:21 572:3
572:6 624:22
644:14 648:1
664:7 703:19
704:3 718:21
719:14 720:19
723:11 793:7

**P-16** 628:12,14
632:8,11
**P-17** 552:13 553:4
554:11 555:3
**P-19** 609:6 792:3,7
**P-25** 744:21
**P-32** 555:15,22
556:19 557:5
718:3 720:19
**P-33** 555:17 556:22
**P-34** 555:19 557:8
**P-38** 682:12
**P-5** 555:22 556:6
642:3,4
**P-50** 624:1 664:11
664:12,14,15,17
**P.C** 539:14 540:4
540:14
**p.m** 664:1,4 692:6
692:10 754:18,21
755:1 788:16,19
817:13,16
**P.O** 539:19

—————————
**Q**
—————————
**qualitative** 649:14
701:1 802:5 811:7
**quantification**
801:20
**quantitation**
811:19
**quantitative** 802:5
811:11,15 812:16
**quantitatively**
812:17
**question** 547:5
559:12 562:8
565:22 570:21
584:8 588:17,21
589:18 591:4
601:1,5 602:10,20
603:6,6,11,17
609:17 612:14,16
613:21 616:6
618:16 620:16
621:16 638:7

642:5,20 643:4,9
643:14 652:18
654:10 656:20
657:12 661:4,8,8
666:10 695:4
700:11 703:11
708:19 711:7,10
716:5,21 719:13
729:13 734:6
747:8 749:6,13,18
749:21 750:2
763:10 771:21
794:22 798:3
803:9 807:8
**questioner** 632:5
**questioning** 615:16
**questions** 547:11
557:19 575:12
588:5 595:2,13
599:5 624:6
634:13 642:11,22
643:6,12 651:19
661:4 680:1
685:17 691:5
699:20 705:13
706:1,19 715:15
723:8 749:9
762:17 771:17
774:2,6,12 775:1
788:13,21 790:15
790:18,18,21
791:2,4,6,20
792:13,22 793:5
793:11,13 794:13
794:16 795:3
799:20 801:14
815:13 816:22
817:4,8,9,11
819:5
**quick** 691:20
**quickly** 622:9,10
**quite** 616:10 807:5

—————————
**R**
—————————
**R** 539:1,18 540:1
541:1 542:4 543:1



544:1
**raise** 654:9 677:22
**ran** 569:3 726:18
**random** 607:14
**ranges** 811:21
812:8
**RASNEK** 540:19
**raw** 618:19 619:1
814:6
**Ray** 541:9 545:13
**reached** 591:6
593:6 656:3
**read** 566:10,13
568:2 575:11
589:10,20,21
591:11,15 592:11
593:12,17 597:11
603:21 610:17,22
613:6 614:20
622:18,19 649:17
650:10 671:13
672:5 677:7 679:7
691:4 702:20
703:7 710:13
724:20 727:14
732:19 733:21
742:8,21 750:11
750:12 752:9
757:12 760:4,11
760:20 767:16
769:15 778:10
779:4 781:3
791:13 808:21
819:3
**reading** 547:20
566:12 574:1
582:10 593:16
621:16 650:12
735:3 741:21
750:12 751:6
757:19 758:8
763:17 794:10
795:21 810:9
**readings** 812:2
**reads** 711:9
**ready** 624:13,14

749:3
**real** 622:9,10
**reality** 774:7
**really** 559:3 594:22
600:18 635:8
648:18 699:11
736:3 790:1 795:1
815:13
**REALTY** 539:7
**reason** 564:19
703:10 788:6,9
**reasonable** 697:15
**reasons** 666:14
699:21
**recall** 551:12
557:21 597:18,20
599:15,20,21
600:5 614:21
615:13,17 616:21
617:4,7 624:3,7
693:8,12,16,19
725:21 726:1,11
727:6 735:21
755:6 761:13
762:21 763:6,9,20
764:3,4,8,17
766:18 767:17
769:4 786:22
787:19 790:10
803:7 806:9,12
**receipt** 649:22
**received** 556:9
628:12 649:10
670:1 702:11
704:12 815:3
**receiving** 621:8
**Recess** 617:19
664:2 692:8
754:19 788:17
**recipient** 558:13,14
**recognize** 625:3
637:14 638:3
**recollection** 621:7
621:22 765:20
767:10
**recommendations**

621:19 622:15
**record** 545:3,17
553:13 555:1,14
576:1 577:2,19
583:22 584:6,13
589:21 617:18,21
618:18 622:19
654:17 664:1,4
672:5 680:20
692:3,7,11 705:6
729:7 735:17
754:18,21,22
770:13 773:20
788:16,19 790:22
791:11,22 792:20
793:1 796:19
806:16 808:13,20
813:1 817:15
818:8
**records** 655:2,11
655:17 656:2
**recovered** 556:10
606:6
**Red** 539:5
**redoing** 642:10
**reference** 560:4,5
797:4,7
**referenced** 606:13
632:7 643:20
644:6 646:18
681:22 786:2
**referred** 622:16
694:11,22 779:17
780:3 793:15
794:2
**referring** 559:2
620:4,17,22
621:14,22 640:3
720:15 730:4
766:4
**refers** 646:7 781:1
781:10,16,20
**refresh** 730:14
733:16 736:14
763:14 767:10
**regard** 710:17

711:18
**regarding** 547:3,12
548:5 550:18
599:12 676:17
**regards** 548:1
**Registered** 538:9
**regularly** 614:10
**REILLY** 540:9
**Reindel** 542:15
584:20 587:7
**relate** 571:22 572:8
587:14 595:11
605:10 656:11
699:20 715:16,17
715:18,19 721:19
731:1 787:9
800:11 801:3
**related** 544:14
563:3 571:19
572:2 589:13
590:11,12 597:4
604:18 705:19,20
706:9 718:17
724:12 725:3
736:15 759:21
769:9 770:9 771:7
773:8,17 774:4
775:11 776:19
778:3 782:9,13
784:6 786:21
789:4 791:4 796:6
797:17 798:16,16
799:16,22 812:20
815:7 818:10
**relates** 595:7 718:3
**relating** 551:11,17
617:2 718:4 719:1
720:16 723:21
726:4 741:14
742:14 747:16
748:5 776:3
778:18 798:5
799:11
**relative** 818:11
**relatively** 601:8
**relevant** 790:3

**rely** 577:21 597:13
684:13,17 689:8
**remarkable** 597:6
**remember** 557:20
655:8 726:16,22
732:8 751:6 753:1
762:9,11 763:1,17
765:17 770:7
786:11 788:3
789:21 796:12,15
805:18 806:3,6
**remembered** 735:2
**rendered** 544:15
776:20 782:10
784:6
**repeat** 549:22
584:8 585:15
589:19 708:18
716:21 724:16
813:14
**rephrase** 720:14
**report** 557:2
569:21 575:21
577:10,14 599:11
600:1,5,8,11
603:13 611:22
612:21 629:12,21
646:7 648:10
657:8 694:12
701:20 732:9
733:3 737:3 738:5
742:2 763:21
764:4 767:11
776:9 778:14
779:10,17 781:1
782:8 783:20
784:14 785:2,3,10
785:16 786:2,8,14
789:1 812:17
**reported** 670:2
727:15 812:8
813:3
**reportedly** 543:19
686:21
**reporter** 538:9
545:14,17 553:10



589:22 622:20
672:15 673:2
674:3 712:14
**reporting** 628:19
**reports** 592:14
  700:17 701:18
  702:10,12 704:13
  723:20 741:7,14
  742:14 759:21
  769:8 773:7
  775:16 776:3
  778:18 816:13
**represent** 582:2
  767:22
**representation**
  583:11 594:17
**representations**
  586:15 594:6,11
**representative**
  546:17 583:5
  722:5 777:19
**represented** 582:15
  582:21
**representing** 547:2
**reproduce** 735:19
**request** 545:12
  745:1,10 768:20
  769:18 775:13
  779:5
**requested** 601:11
  625:7 719:16
  764:5 777:16
**research** 568:22
  787:22
**respect** 569:10
  606:9 662:9 696:4
**respond** 547:15
  561:17 589:10
  728:13 774:11
**responded** 661:7
**response** 619:11
**responses** 745:2
  746:17
**rest** 570:5,9 804:21
**result** 656:3
**results** 569:19

571:15 573:4
574:11,15 575:12
599:7,11 608:9
613:22 617:1,2
629:22 630:11
649:22 650:4
651:13,22 652:5
653:12 664:8
670:3 693:17
696:20 700:17
701:5,15,18,21
702:7,11 703:18
704:3,10,11 757:8
791:8,10 792:10
792:14,16,17
793:9,17,18,21
794:4,18 795:3,9
796:4,5,21 797:3
797:10,13,16,21
798:4,13,16,20
799:3,10,22 800:8
800:9 801:20
802:5 813:4,16
815:8
**resurfaced** 771:14
**retention** 786:21
  787:3,10
**retired** 558:9
**return** 732:3,13
**returned** 757:2
**returning** 647:15
**review** 585:7
  621:18 637:17
  643:1 665:4
  695:13 792:4
**reviewed** 594:12
  597:9 723:9
  729:19 745:8
  769:14 813:4
**reviewing** 642:6
**reviews** 623:3
  730:2
**RFA** 747:3,5 749:8
**Rhode** 761:4
**right** 562:14 564:4
  574:11 576:8

590:5 591:17
594:19 601:5
632:13 638:14
640:18 651:20
654:2 661:10
665:14 670:10
672:22 674:1
676:21 677:9
682:9 694:12
695:12 696:12
698:1,3 701:12
702:15 705:11
710:4 712:1,4
714:8 720:13
721:15 736:21
739:11 757:19,22
760:7 761:16
786:8 800:19
801:11 810:9
812:21
**RJ** 657:18,22 658:4
  659:6 660:4
  679:17,21 680:2
  680:10
**Road** 540:15 541:4
**Robert** 544:20
  782:19
**Robinson** 538:9
  545:15 818:2,16
**rock** 543:4,9,16,19
  606:4,6 609:19
  611:1 612:6
  623:12 626:20
  632:17,18 633:22
  634:15 649:8
  650:9,19,22 651:2
  651:22 653:3
  655:18,21 659:16
  668:7,12,12 673:7
  673:15 674:8,20
  675:5,8,10 676:1
  676:11 681:18
  682:14,17,22
  684:11 686:4,21
  690:6 700:22
  701:13 791:20

792:6,15 793:17
794:6 796:1 798:5
798:6 808:10
809:8 814:12,16
**rocks** 651:6
**room** 715:21
  777:22
**Roth** 539:3 545:12
**roughly** 768:1
**Route** 539:15
**row** 795:13
**RPR** 818:2
**Rudolph** 734:16
**rules** 801:10
**run** 569:4 707:22
  708:7 716:12
**running** 618:6
**runs** 734:11

───────────
**S**

**S** 539:1 540:1 541:1
  542:1,4 543:1
  544:1 632:21
  635:1
**sample** 543:16,19
  633:5 646:19
  657:22 658:9,20
  660:18 661:11,19
  662:3,5,11,13,16
  663:10,14 669:19
  673:15 675:5,8,10
  675:12,13,15,17
  681:9,11,18
  682:14,17,18,22
  684:13,18 685:10
  686:12,13,17,21
  687:16,20 688:5
  689:15 697:21
  698:6 795:12
  800:8,21
**sampled** 609:19
  659:2
**samples** 543:4,9,13
  548:3,4 569:17
  580:9,16 581:11
  581:12,13 588:7

605:10 606:5,6,19
607:10,19,20
608:2,9 609:11,14
610:10,11,14
611:2,2,3 612:6
616:11,16 623:7
623:11,12 625:7
626:8,9,21 627:4
630:18 631:4
632:15 633:13
634:14 639:18
641:22 642:1
645:18 646:8,9,17
646:20 647:8
649:8,9,13,22
650:4,9,19,20,22
651:2,22 653:3
655:13 657:11,13
658:5 663:18
664:6 665:17,21
666:5,6,16,21
668:5,6,8,19
669:9,15 670:5
671:6,7 672:5,19
672:19 673:7,14
673:15,21 674:8
674:15,20,21
675:21 676:1,6,11
676:18 677:10,11
679:14,15,16,19
679:19,21 680:2,3
680:8,10,12,15
681:4 686:11
690:17,22 695:3
695:17,21 696:5
696:14,17 697:1
700:22 701:13
702:9,18 705:9
720:7,11 723:20
726:13,19,19
727:1,7,11 730:12
732:14 733:9,12
733:17 734:16
737:19 738:10
739:22 740:13
741:7,14 742:10



742:14 745:14,18
746:14 747:10,12
750:8,19 751:1,9
758:10 759:20
769:8 773:7
775:16 776:2
778:17 780:2,14
781:16 791:5,6,8
791:21 792:6,15
793:18 794:6
796:1,6,9 798:5,6
798:18,22 799:16
800:14 801:1,1
802:3,7,12,16,20
803:2,11,21 804:2
804:6 805:10,19
805:21 806:9,15
807:5 809:5 810:1
811:4 812:17
813:8,16 814:11
**sampling** 606:5
610:5,9
**Sampson** 537:4,5
545:4
**San** 736:7
**sane** 614:13
**saw** 577:5 725:13
745:4 761:19
777:11
**saying** 570:19
574:2 608:8,13
624:18 678:6
684:18 696:8
702:6,10 741:22
762:10 791:7
816:2,3
**says** 560:7 565:22
569:3 571:12
574:8 580:8
584:20 591:22
599:15 600:22
611:21 612:6,15
615:8 618:10
619:18,21 620:10
621:5 622:1
624:15 625:1,17

626:8 628:1 632:5
635:22 636:7
637:5,12,16
640:17 645:2,2
648:7,16 649:8
650:19 651:2
653:2,16 654:8
662:3 682:16
689:11 696:22
697:20 698:1
699:13 700:6,21
710:15,20 711:17
711:19 735:8,21
736:22 737:18
738:1,4 745:13,17
747:10,12,15,16
748:1,4,9 750:17
751:7,15,18
752:16 753:8
756:8,22 757:7,17
757:18,22 758:13
759:18 762:18
767:2 775:13
776:9 778:17
779:4,6 782:13
783:17 784:5
804:9,16
**scanned** 707:12,18
707:21
**Schafer** 557:10
**schist** 632:21
**Schwarts** 542:16
587:7
**science** 812:6
**scientific** 731:21
732:15 739:21
744:13
**scientist** 814:4
**scope** 585:13,22
586:11,19 588:15
589:15 594:8,21
595:19 596:21
614:9,19 615:6
631:7,15 633:8
634:18 635:7
639:6 642:12,15

647:11 648:14
652:3 657:5
667:21 687:22
690:3 698:13,19
699:8,19 700:8
708:9 709:11,20
712:21 714:10,16
715:4,14 727:13
730:18 731:9
736:19 738:14
739:3,17 740:19
757:10 758:3,17
759:8 760:17
764:15 767:15
768:5,12 770:5,22
771:9,16,18 772:8
772:22 783:22
784:12,19 785:6
785:18 786:4
813:20 814:8,14
814:22
**screen** 591:17
592:22
**SCRIVO** 541:3
**sdenaro@mklaw...**
540:16
**seal** 785:11
**sealed** 815:18
**search** 708:3 709:8
709:12,13,15
712:17 713:16,21
714:8,19 768:9,15
768:20 770:1
**searched** 563:1
710:22 713:1
**searches** 548:19
549:1 707:18,22
708:7 710:18
711:12,18 712:2,3
712:5 713:2,12
715:20 716:11
**searching** 547:22
715:7
**second** 578:14
587:16,19 591:5
598:8 649:19

696:14 712:13
795:13,22
**seconds** 595:13
**section** 653:5
**sections** 734:17
**see** 553:14 557:18
566:5,7,22 568:21
568:22 569:11
570:3 571:2,12,13
573:2 580:8,13,15
580:17 584:19
590:5,7,14,15
591:5,16 592:21
593:1,11,19
598:11 599:13,17
600:18 601:12,22
602:12 603:5,5,19
609:19 610:19
611:6 613:5,6
614:15,21 615:19
616:19 618:10,21
620:19,21 622:2,3
625:10 632:9
633:1 635:2,21
636:5 637:10
638:1,2,11 640:7
644:22 645:5
647:21 648:7,9,22
649:6 650:2,13
651:1,9,14 652:9
653:9 658:13,20
691:4 694:13,16
695:12,19 696:14
696:17,20 697:3
697:20 700:21
701:3 705:21
710:10 722:3,4,6
722:6,13 723:10
723:13 732:22
734:13,14,15,17
734:18 735:8
736:12,13 745:13
745:19 750:17
751:11,22 753:3
756:2,8,15,18
757:4,16 758:15

759:22 764:21
765:4,7,14 766:8
767:8 768:16
783:10,14,17,19
784:2,5,9 785:9
785:12 790:2
800:17 804:8,19
804:20
**seeing** 577:10 602:5
722:18 730:15
789:21
**seen** 560:5 592:9,11
592:12 599:7,9
600:4,8 607:1
613:22 614:10
633:18 654:9,13
656:2 686:9 705:9
716:11 723:12
725:15,16 726:9
728:3 730:9 761:9
761:11 765:8,10
777:9 779:13
**selected** 549:12
625:8 626:21
649:16
**selecting** 668:5
**selection** 548:9
549:4
**sell** 566:4
**SEM** 780:1 781:2
**send** 616:16
**sending** 669:19,22
726:19
**sense** 554:22
637:22
**sent** 560:18 569:17
659:6 660:3
661:12 666:4
679:17 696:5
700:22 733:14
734:16 764:10
765:12,13 787:20
796:2 813:2
**sentences** 583:4
**September** 607:7
644:19 792:8



795:10 799:4
**series** 599:12
618:16
**serpentine** 632:22
635:1,4,14 668:12
**serve** 585:5
**services** 544:14
545:14,15 776:19
782:9 784:6
**set** 547:18 593:7
636:1 642:4 671:6
673:14 774:6
**sets** 645:4,7,14
680:8 804:17
**settled** 761:2
**settlement** 731:20
**seven** 565:12 578:5
578:9
**sheet** 559:4 819:8
**sheets** 559:5
**shipped** 649:13
**shorthand** 818:5
**show** 593:5 606:19
606:22 624:15
628:1 631:20
635:22 664:9
755:15 757:21
776:9 777:4
**showed** 594:1
595:16 596:8
605:6 606:4 639:4
639:10 700:17
702:15 705:8
**showing** 718:2
**side** 678:22
**SIGNATURE**
819:11
**significance** 814:5
**significant** 570:1
570:20 574:3,9
576:20,22 577:4,6
577:9,13,14,16
578:1 581:6
582:11,13,17
594:3 595:17
596:9,19 656:16

**signifies** 632:19,20
632:21,21 635:1
**simply** 613:21
**single** 551:10 642:5
643:14 699:17
726:8
**sir** 562:14 583:16
588:1 589:4,18
595:15 598:8,20
604:8 606:22
608:17 621:2
642:22 643:6
644:17 650:11
654:8 695:5
701:22 704:18
708:21 738:9
739:20 747:8
749:4 775:4,9,21
779:7 780:1 781:1
791:15 793:6
794:8,17,22
795:20 796:8
797:16 798:3,20
799:6 801:19
803:8,19 804:8
807:8 809:4
815:20,22
**sit** 575:20 578:6
647:6 651:21
661:10 680:9
704:2 772:18
**SITA** 539:7
**site** 719:10
**sitting** 669:4 685:1
688:11
**six** 565:12
**size** 649:12 651:5
**slight** 569:22
**slow** 691:9
**small** 601:8 697:10
**smaller** 697:10,11
697:17
**SMITH** 539:14
**sold** 585:19
**somebody** 572:11
576:21 580:15

613:8 659:15,16
669:10 670:6
683:1,4,15 685:13
686:6 689:12
744:18 790:17
**soon** 595:8
**sorry** 549:22
552:19 584:7
585:2,14 589:19
590:2,7 591:21
598:14 604:7
610:2 612:1
623:18,20 638:17
650:10 694:18
700:10 704:8
711:8,10 716:20
719:20 724:15
728:8 772:15
777:17 778:21
779:20 783:5
804:5 813:13
**sounds** 570:9
573:22
**source** 548:9
549:11 550:2,8
556:9 561:5
563:10,13,14,16
610:20 687:7,11
761:22
**sources** 721:8
779:21
**SOUTHERN** 540:8
**Southgate** 540:5
**speak** 687:13
806:17
**speaking** 641:19
**speaks** 598:1 735:1
736:18 739:7
**specific** 547:14
559:10 587:1
590:19 620:3
656:7,8 661:1
666:13 676:22
697:14 759:9,16
810:1
**specifically** 550:7

550:16 561:14
562:22 573:12,16
573:18 575:18
596:1 626:5 655:4
675:4 676:4
677:15 694:11
714:18 720:15
732:19 740:7
741:7 743:8 753:1
762:10,11 798:5
798:17 803:11
806:14
**specifics** 590:19
635:9 764:4
**speculation** 564:18
565:8 572:14
573:21 581:18
586:1 596:22
626:17 627:12
630:2 633:8,16
634:8,19 639:20
654:4 656:18
657:5 667:4,11
668:16 669:6
671:2 713:10
725:20
**spend** 664:16
665:12
**spending** 588:10
**spent** 547:20
735:17 772:1
**sphere** 602:18
**split** 649:12 651:5
**spoke** 687:11 743:1
743:3
**spoken** 550:18
560:6
**spot** 609:3
**spurs** 790:18
**stamped** 542:16
544:11 587:8
693:2
**Stand** 692:9
**start** 565:5 591:7
**started** 741:21
**starting** 619:18

621:5 631:19
**starts** 615:19
669:19 694:17
695:12 767:18
**state** 728:16 736:8
736:9 758:6
809:19
**stated** 659:6
**statement** 577:5
594:11 662:2
663:2 796:19
**statements** 587:1
**states** 741:18
**stating** 658:5
669:22
**Station** 792:9
**steams** 613:19
**Steinmetz** 537:14
538:1 542:2 545:4
545:19 546:3,17
553:20 554:12
581:19 606:17
608:19 681:22
717:9 729:15
749:13 791:2,7,9
792:20 793:11
817:14,17 819:2
**Steinmetz's** 661:15
750:10 751:4
758:4 760:17
**stenographic**
545:16
**STEPHEN** 540:14
**stipulation** 544:9
692:22 740:9,12
747:14 751:20
755:5,22 756:9
757:2,6 758:7,10
**stipulations** 746:10
**stood** 723:13
**stop** 595:4 775:3
801:9,16,17
**stopped** 643:13
**strategy** 621:19,22
**Street** 538:4 539:19
545:11



**strong** 671:9
**studied** 655:3,12
  791:21
**studies** 592:14
  603:11 604:2,15
  604:16,21 605:1,4
  605:7,9,14,21
  606:3,11 612:5,7
  612:8,19 614:1,6
  619:3 656:12
  665:9,11 670:3
  780:1 781:2 816:8
  816:9
**study** 569:8 597:20
  598:12,17,20
  599:2,2 601:1,4,6
  601:9 602:6,19
  603:13 604:10
  606:12,16 607:3,6
  611:7 612:8,12,21
  613:7,14,16,17,20
  614:16 615:2,12
  620:1,4,13 627:18
  636:18 639:14
  641:5 656:4,7
  664:8 665:8 693:9
  703:13 704:3,15
  704:18 736:16
  794:4 796:21
  807:22 815:8
  816:13
**studying** 592:7
  611:8
**stuff** 641:14 735:12
  735:15 743:5
  757:15,18,20
**subject** 620:12
  621:6 757:1
  791:19
**submit** 736:4
**submitted** 543:7
  665:22 669:11
  673:9 795:5
**Subscribed** 819:13
**subsequent** 620:5
  672:21

**subsequently** 670:2
**substance** 819:7
**substantiate** 569:9
**sudden** 621:13
**suggesting** 792:13
**Suite** 540:10,15
**Sullivan** 660:3
  661:12
**summaries** 599:10
  629:18 718:14
**summarized** 656:10
**summarizes** 592:13
**summary** 544:13
  630:4,7 665:7,8
  694:2 715:9 733:4
  733:5 776:18
  782:9 784:5
**Superior** 537:1
  545:5
**support** 640:16
  788:10
**suppose** 775:3
  795:17
**supposed** 589:11
  708:14 711:11
  743:11 746:15
  775:11,17 776:5
  776:10 779:6
**sure** 549:16 550:1,6
  550:16 554:21
  564:9 570:17
  574:14 578:8
  579:11 582:20
  586:2 589:9
  594:10 608:6
  609:2,16 611:16
  611:21 618:7
  619:6 622:9
  623:11,14 636:22
  638:6 639:21
  655:20 656:19
  657:16 664:14,15
  665:7 668:22
  671:16 673:5
  677:8 678:7,9

681:16 691:18
692:2 693:22
703:21 707:15
711:3,6 717:1
724:4 725:8 728:8
728:20 729:21
730:1 734:20
745:8 770:16
777:17 787:16
791:7 805:2 806:3
807:2 812:16
813:16
**surprised** 696:10
**surrounding** 586:4
**survey** 604:13
**surveys** 719:10
**survived** 597:5
**survives** 782:14
**suspect** 571:20
  801:2,3 807:6
**swear** 545:17
**sworn** 545:20
  819:13

_____
**T**
**T** 539:9 542:1,1,4
  543:1 544:1
  632:19
**tab** 557:4 607:9,11
  607:13,15 608:4
  608:19,21 609:3
  623:7,10,14,15,16
  623:19 644:14
  647:21 648:21
  664:7,9,22 665:2
  694:22 702:3,4,15
  791:18 792:2,7
  793:7,15,16 794:1
  794:3 795:11
  796:20 798:4
  799:21
**Table** 696:19 796:9
  801:21
**tables** 623:4
**take** 557:17,19
  566:9 595:8

617:15 620:2
623:12 663:10,17
677:6,11 689:10
690:21 691:16
716:2,4 728:16
729:8,12,14 738:9
754:10,14,16
757:22 758:12
762:13 766:11
788:12 794:7
799:6
**taken** 543:4,20
  544:8 545:10
  574:18,20 576:4
  606:20 609:11
  617:19 626:9
  627:4 630:19
  633:5,13 634:14
  645:19 649:8
  653:4 661:12
  662:3 663:3 664:2
  667:9 668:19,20
  669:10 673:7,21
  676:11,14,18
  677:17 679:6
  685:11 686:21
  688:16,19 692:8
  692:19 696:5
  725:19 754:19
  757:15 788:17
  798:6 802:20
  803:11,17 805:11
  805:19,20 806:9
  806:15,20 807:9
  808:3,7,11,16
  809:5,9 818:3,5
**takes** 691:9
**talc** 540:8 543:9,16
  543:19 551:11,18
  558:2 563:3 566:1
  566:4,8,15,21
  567:11 570:14
  576:22 577:17
  585:10,11,19
  586:4,8,17 588:7
  589:13 590:13

592:7,7,15,16
593:8,10 594:2,14
602:7 603:2,2,3,8
609:15 612:17
620:13,13,13,15
620:17 621:7,11
623:3 625:6
629:17 630:4,7
632:19,20 641:22
642:1 647:22
649:5 656:10,12
658:1,10 659:3,20
660:6 662:17
665:3,9 666:7,12
668:9 674:8 675:5
675:7,9,11,13,15
675:18 681:10,17
690:1 694:3,20
695:14,16 696:22
697:19 700:15
705:9,20 718:5
719:1,17 720:17
721:20 730:8,10
730:12 733:10
751:1,8 759:2
789:4 791:5,19
792:4 796:12
814:12,15
**talcs** 798:16,17
**talk** 566:8 588:7
  590:18 595:6
  600:19 627:17,22
  635:9 642:3
  652:12,20 695:21
  699:11 705:16,16
  708:14 741:12
  743:11 749:3
  752:9 759:20
  773:6 778:12
  779:7,9,14 781:4
  801:13
**talked** 551:6
  552:13 557:20
  560:20 604:22
  685:14 720:7,11
  740:8 760:20



769:15 773:13
790:5 796:12
802:11 806:8
**talking** 570:13
583:15 590:16
595:4 596:4
598:12,17 601:3
604:11 610:2
612:11 616:4
618:2,5 623:7,18
624:19 627:18
630:10 636:17
637:1,2 657:19
664:19,20 681:13
694:20,21 696:5
696:13 700:15
705:5,10 708:11
719:21 720:10,12
737:6 764:21
767:18 770:7
781:21 791:22
796:15 802:8
**talks** 566:14,21
568:21 572:22
615:20 635:1
636:16 647:14
696:16 756:15
793:19 796:9
**TDO** 559:2,10,13
560:2,5,7,16
**Tech** 649:14 650:17
651:14 652:1,5
696:6 700:15,18
701:19 702:7
704:11,14 792:9
799:17 810:19
813:5,5
**technical** 635:10
**techniques** 569:7
**technology** 592:7
644:20 701:1,16
796:2
**telephone** 539:14
539:18 540:4,9,14
540:19 541:3
**tell** 545:21 566:20

567:3,10,15 568:6
587:20 588:3,18
610:16 630:8
633:4,12,21
635:13,19 637:13
645:17 646:19
647:8 652:16,20
660:22 661:1
664:9 670:14
691:19 702:11
716:3 734:6 735:8
743:4 744:5 750:1
758:13 763:4
784:14 795:6,8
796:10 802:7,20
805:10,15 806:19
809:4,8,14,22
811:16 813:10
**telling** 625:7 641:7
669:15
**tells** 803:10
**TEM** 701:16
734:10 780:2
781:10
**ten** 649:9,21 691:7
732:9 788:12
**terminated** 772:6
**terms** 558:17
561:16 564:13
629:22 757:2
**test** 571:15 574:10
575:12 636:18
637:22 651:8,22
657:18 791:8,10
792:10,16,17
793:9 794:18
795:3,9 796:4,5
796:21 797:2,10
797:13,16,21
798:4,12,20 799:3
799:10,22 801:20
815:8
**tested** 631:4 634:15
634:15 635:14
646:8 657:22
720:6 733:9

750:19 781:16,21
781:22 791:5
797:8 813:8,17
**testified** 545:22
568:4,6 598:13,18
726:11,18 727:1,6
732:5 738:22
787:19
**testify** 546:20
710:17 711:18
730:7,11 731:12
741:6 742:13,17
746:16,21 769:7
774:17 775:17
791:14
**testifying** 710:16
801:10
**testimony** 547:7,20
559:17 561:5
598:1 614:16
618:3 629:8
640:11 644:4,9
661:15 662:18
686:2,4 693:21
694:8 698:14
700:9 703:12
722:21 727:15
731:2 733:19
734:21 735:1
736:18 737:1,16
739:8 741:21
742:9,21 748:15
750:10 751:4
752:10 758:4
759:21 760:17,20
760:21 761:20
762:1,4 764:5
774:9 776:16
780:9,13,15,18
788:2,4,7 793:3
793:10 795:15,20
814:14 818:4,8
**testing** 542:7,11
551:8,11,17 554:2
555:6,15,19 557:9
558:2 566:8,15

567:11 570:13,14
597:4 608:8
615:20 616:2
657:2 703:3,18
704:3 717:20
718:5 719:1,8,17
720:12,15,17
721:19 723:21
741:15 742:15
747:16 748:5
750:8 773:8 776:4
778:3,19 787:12
789:4 791:3
792:11,14 797:18
797:22 812:20
**tests** 569:4 599:11
599:12 726:18
813:17
**text** 691:7
**texture** 569:10
**thank** 546:5 552:6
589:2 593:15
629:7 643:11,12
675:19 692:4
705:13 724:2
750:4 774:8
776:15,15 790:15
795:14,19 816:19
**thin** 653:5
**thing** 564:2 590:21
681:13 711:6
736:2 767:17
811:18
**things** 558:11 582:5
582:14 602:16
619:7 691:10
705:15 708:1
734:12,12 735:17
735:19 738:5,6
739:8,11 740:21
742:22 778:11
780:3
**think** 551:19 558:8
561:16,21,22
562:4,10 564:14
564:20,22 568:2

573:8 576:20
577:3,22 580:11
581:9,14,21
582:11,13,17
583:4,10 588:13
594:3 596:19
599:7 605:7 614:9
620:7 622:9
625:14,17 627:21
637:21 638:8
640:10 647:18
651:12 654:14
664:11,21 667:22
670:22 671:12,12
677:11,12,15,20
678:14 680:6,22
691:2,3 696:3
700:2 703:17
704:9 705:6,12
714:3,19 721:14
724:7 725:17
729:9 731:16,17
735:18 736:22
770:6 781:4 789:1
790:14 791:10
800:20,21,22
802:11
**Thinkpad** 729:10
**thin-section** 569:7
**third** 538:5 588:6
641:21 642:17
675:10 699:21
749:12 772:2
**thought** 570:10,19
572:11 574:2
577:21
**thousands** 798:21
**three** 543:9,13
552:20,21 565:12
632:6 645:3,7
651:1 669:4
673:14,20 674:8
674:14,20,21
679:16 680:8
728:18 749:7
770:15 791:1



804:17
**thrown** 558:11
**TIA** 539:9
**time** 545:8 551:5,16
552:14 553:7
557:19,20 558:18
559:20 569:14
573:8 574:20
577:22 578:4
600:5 603:14
606:7 610:13
612:22 616:7,9
617:17,20 619:21
620:1,7 621:20
632:14 640:11
648:17 652:10
657:11,12 663:22
664:3,16 665:13
669:11 679:12
683:3 690:20
691:15 692:6,10
699:14 720:1,2
724:3 726:6
733:10 734:4
735:17 745:4
749:10 750:6
754:15,17,20
766:14 767:6
771:3 777:11
785:22 786:20
788:15,18 817:12
818:6
**timeframe** 610:2
616:4 719:20
**times** 562:9 644:1
698:2,21 699:2,15
728:17 742:20
773:12 800:19
816:16
**title** 782:8
**today** 545:8 546:7
548:10 568:13
575:20 578:6
588:5 595:1
605:17 618:11
642:22 647:6

651:21 653:12
660:14 661:10
680:9 704:2 720:8
720:11 731:8
739:4 742:17
745:6 747:4 751:2
772:2 774:16
775:10,10,12
777:15,18 778:1,4
778:8 779:1
**today's** 575:13
604:4 655:2
748:15 752:19
772:11
**told** 621:10 626:15
639:18 642:17
643:16 658:13
670:20 700:2
703:17 722:4,17
735:11 736:3
745:22 749:11
765:17 769:2
778:2 796:10
805:20
**tolerating** 801:11
**top** 546:10 605:8
617:7 618:10
636:3 648:7 785:9
**topic** 587:13,17,20
588:3,19 775:18
775:21
**topics** 754:13
**totality** 568:3
610:19
**trace** 569:22,22
653:8
**traces** 570:2
**train** 728:20
**transcribed** 818:7
**transcript** 544:6
563:22 564:15
565:17 572:12
578:6 579:4,8,16
582:15,16 598:5
615:8,18 617:13
623:22 632:2

643:1 692:17
693:12 695:1
729:8 730:5
791:12 818:5,7
**transcription** 582:3
819:4
**transcripts** 756:10
**transferred** 662:12
**transmission**
649:14 695:17
697:1 701:2
**transpired** 583:5
**traveled** 726:12
728:17
**tremolite** 607:10
**tried** 704:11
**Triglia** 557:10
563:6,22 564:14
579:4,8 615:11
623:2 624:1,6
632:12 635:22
637:13,16 642:6
644:21 649:3
664:18 665:3
693:11 694:13
695:10 701:20
702:1,16 796:22
797:19 798:1,8
810:19 815:9
**Triglia's** 615:18
703:13 806:7
**trip** 628:19
**trips** 619:2
**TROUT-PEREZ**
539:9
**true** 582:15 730:10
762:10 775:2
801:8
**trust** 723:2,6
**truth** 545:21,21,22
**try** 566:3 575:4
637:22 691:22
702:9 703:8
**trying** 651:17,19
652:17 659:1,10
659:21 700:14

789:14 809:1,18
**TSR** 556:15 557:10
568:22 601:9
607:7
**TSR-type** 620:6
**ttrout-perez@kir...**
539:10
**turn** 648:5 664:6
691:21 756:4
757:7
**turned** 650:20
737:6,10,15,18
738:20,22 739:21
739:22 740:21
741:20,22 742:1
744:17,17 745:15
745:19 746:11,13
746:13 747:17,17
748:2,6 750:7,13
751:19 753:9
761:3 785:14
**twice** 813:3
**two** 551:22 552:20
553:6,12,20
565:12 588:12
629:6 640:21
641:16,17 642:8
642:10 649:21
665:21 672:18,19
678:14 699:13
706:5 728:7,17,22
731:15 734:12
739:5,5 747:4
**two-page** 800:4
**type** 632:17 633:22
655:18,21,21
686:16 710:2
718:17 723:9
771:5 811:18
**typed** 580:16 581:1
582:5 715:9
785:10
**types** 589:8 629:16
632:18
**typewritten** 708:3
708:5 709:9

**typically** 669:19
**typing** 582:14
**typo** 782:13

**U**

**ultimately** 733:14
785:13 791:9
796:22
**unclear** 640:14
**underlined** 571:2,5
572:12,16,16
**underlying** 718:8
732:15
**understand** 585:2
599:3 605:13
608:17 609:11,20
609:22 610:1,4
619:1 628:5
651:17 658:8
659:1,10,22
667:17 694:19
709:5 741:6
789:13,14
**understanding**
546:19 547:1,6,10
584:14 610:4
676:10 706:22
707:9,20 730:22
**understood** 667:14
700:12
**undertake** 547:15
742:4
**undertook** 628:20
**unequivocal** 591:6
593:6 594:13
**UNION** 539:12
**university** 543:22
686:14,15 687:1
687:20 688:5
690:14
**update** 623:3 665:4
665:11 695:13
792:5
**updates** 696:6,9
**use** 542:8,9,11
554:2,6 555:6,16



555:18,20 557:1,9
563:18 578:9
714:12 715:6
815:17

**V**

**vague** 558:5 560:20
563:11 604:6,21
606:1,16 657:6
707:2,7 779:19
**value** 582:22
**VAN** 541:3
**VANDERBILT**
541:2
**various** 650:16
669:21
**Vermont** 543:22
592:16 593:9
628:20 686:14,15
687:2 736:9,16
**version** 579:8,10,12
579:16
**versus** 631:5
646:18 659:3
**videographer**
541:9 545:2,13
617:17,20 663:22
664:3 692:6,9
754:17,20 788:15
788:18 817:12
**videotape** 544:6
692:17
**Videotaped** 537:14
**Village** 541:4
**visit** 619:19 620:4
655:5 736:5
**visited** 601:4
**Volk** 783:9
**VOLUME** 537:16
**von** 734:17
**Vreeland** 540:15
**vs** 537:7 544:17
545:5 776:21
782:11

**W**

**w** 727:22 755:12
**wait** 578:14 729:2
**waiting** 588:22
**walk** 663:18
**wall** 678:18,22
**want** 551:6 554:10
554:13 597:1
600:19 608:6
609:2 611:12
630:8 657:10,12
660:20 663:15,16
663:16 664:15
665:15 671:15
672:10 681:14
682:3,6 690:20
691:4,16 694:15
706:1 716:6
728:22 729:7,21
736:4 754:15
775:2 777:4
789:14 791:12,16
791:21 795:8,16
796:18 801:13
807:2 816:12
**wanted** 551:1
602:12,13 634:10
642:2 668:6
677:11,22 709:7
709:15 712:11,17
714:5 734:5,7,9
735:9,11,14
765:22 793:1
**Washington** 537:12
538:6 545:11
691:22 736:8
**wasn't** 564:10
570:18 572:18
611:16 613:15,16
640:11 657:3
703:7,7 734:20
735:3,13 739:11
791:7
**waste** 553:7 679:12
691:14 749:10
**wasting** 747:2
**watched** 549:1

**Waterbury** 694:20
**way** 598:22 603:12
612:20 613:6
614:17 646:4,14
646:19 651:15
652:15 654:1
663:21 671:8
672:19 697:6
701:17 717:8
719:13 767:2
784:16 785:1
802:7 804:10
**Wednesday** 537:13
**weeks** 649:21
729:21 739:5
770:16 777:13
**weight** 697:13
**WEINER** 541:3
**went** 564:13 571:20
604:11 609:18
613:7,8,8 614:7
616:16 620:7
639:10 641:4,20
693:8,10 726:2
763:9 806:6
**weren't** 589:11
612:4 696:8 719:6
724:4 796:10
**Westfall** 544:16
558:4,15,20
559:14 563:6
597:10 723:22
725:22 726:3
730:7 731:20
732:14 733:4,7
734:4,8 735:10
738:11 739:12
741:15 745:14
750:8,20 756:1
761:2,15 762:5
763:8,11,22
764:22 765:21
766:2,15 768:2
770:20 771:7,14
776:4,11,21
782:11

**we'll** 595:6 621:19
663:11 672:12,22
728:22 730:19
776:16 806:16
**we're** 580:2 583:14
588:8 594:22
609:9 614:13
617:18 624:18
627:20 642:5
660:19 664:1,4
665:6 705:10
739:15 791:22
805:9
**we've** 560:6 599:9
604:22 606:18
614:20 617:14
656:10 720:7
721:7 724:8 740:8
772:1
**whereabouts**
549:20 550:14
**White** 543:18
681:19 682:15,20
683:12 685:14
**whited** 580:15,22
580:22 581:12
**whited-out** 583:4
**white-outs** 582:4
**whiting** 582:14
**Whittaker** 539:17
544:17 765:2
776:22 782:11
**William** 544:7
591:9 592:5
692:18 723:21
741:15 742:15
745:15 750:19
759:22 776:4,7
778:3,19
**willing** 730:11
**Windham** 736:6
**withheld** 623:17
721:18 723:11
784:8,16
**witness** 545:18,20
547:1,10,18

548:14,22 549:14
550:6 551:1,14
552:12 553:3
556:2 558:7 559:1
559:18 560:4,14
560:21 561:13,21
562:7,16 563:16
564:7,19 565:9,14
566:12,17 567:18
568:1,9,10,17
570:8,17 571:10
571:18 572:15
573:7,15,22
574:14 575:8,16
576:2,12,17 577:3
577:13,20 578:8
578:18 580:20
581:4,20 582:9,20
583:9 584:7,14
585:14 586:2,12
586:20 590:2
593:13,16,17
594:10 595:21
596:11 597:1,15
598:2 600:4,14
604:7,22 606:2,15
606:18 608:2,20
609:4,6 611:15
614:5,20 615:7
617:6 619:5,6,14
622:8,11 623:1,10
624:3,9 625:21
626:5,12,18 627:1
627:6 628:8 629:9
629:15 630:3,15
630:22 631:8,16
633:10,18 634:2,9
634:20 635:8,17
635:18 636:13,22
638:17 639:7,13
639:21 640:10,21
640:22 641:10
643:10 644:1
645:11,22 646:12
647:2,12,17
648:15 650:12



651:12 652:4
653:15 654:5,13
654:21 655:8,15
655:20 656:7,19
657:7 658:3,16
659:5,14 660:2,8
661:16 662:1,2,9
662:21 663:8
665:1 666:16
667:5,11 668:1,17
669:7,18 670:9,10
670:17 671:3,19
672:18 673:5,19
678:8,13 680:6,21
683:11,22 684:17
685:4,8 686:1,8
687:10 688:14
689:8,17 690:4,10
691:18 693:22
694:9 696:3
698:20 700:10
703:6,21 704:8,21
704:22 705:12
706:7,15 707:9,15
708:10,18 709:5
709:12,21 711:3,9
711:16 712:9,22
713:11,18 714:2
714:11,17 715:5
716:10,20 717:10
717:17 718:14
719:5,20 720:5
721:1,13,14,22
722:10,17 723:2
724:15 725:6
726:16,22 727:14
730:2 732:2,18
733:20 735:2
736:21 737:14
738:4,15,19 739:3
739:6 740:4,20
742:7,8,20,21
743:8,14,16 744:1
744:3,8,9,16
748:1,9,17,18
749:5,18 750:11

751:5,15 752:8,16
752:22 753:8,18
754:1,7 755:8
756:18 757:11
758:6,18 759:9,14
760:3,10,19 761:9
761:19 762:9
763:17 764:3,16
767:16 768:6,13
768:20 769:4,12
769:14,21 770:6
770:14 771:1,10
772:9,15 773:2,13
773:21 775:1
779:13,20 780:7
780:18 781:8,14
781:19 782:5
784:20 785:7,19
786:5,10,18 787:6
787:15 788:3,9
789:18 790:9
795:21,22 796:15
797:7 798:15
799:15 800:4
801:15 802:11
803:1,14 804:5,13
805:2,14,15 806:1
806:3,12 807:2,11
807:19,20 808:6
808:14,21 809:11
809:12,17 810:5
810:13,22 811:7
811:15 812:6,15
813:2,13,21 814:9
814:15 815:1
816:2,17,18 818:4
818:8
**woman** 761:5
**wondering** 643:15
**word** 581:7,10,21
707:17,22 708:7
709:8,13 712:2,5
713:2,12 714:7,19
715:6,9 716:11
**words** 581:9 651:1
707:17 713:15

714:12 715:11
**word-searchable**
713:6 770:2
**work** 569:16
571:12,21 572:22
629:16 649:19,21
669:20 677:12
684:3 726:4
734:10 736:7,8
762:20 784:8,16
**worked** 673:16
683:1,3 686:6
759:14
**working** 549:5
649:9 665:9
**works** 657:13 683:2
**wouldn't** 566:1,2
614:9 641:5
722:18 743:12
757:13 758:19
761:10
**write** 732:9 737:3
738:5 742:2
**written** 599:12
628:18 709:16
712:18 787:21
794:14,17
**wrong** 678:4 810:9
**wrote** 676:17 737:3
780:20

**X**

**X** 542:4 543:1
544:1
**Xerox** 735:18
**x-ray** 569:4,5 653:4
718:10,10

**Y**

**Yeah** 691:12 746:9
**years** 548:1 583:15
583:18 592:8
597:5 600:6 663:3
666:22 669:4
732:9 768:2,7
**yes-or-no** 717:8

**York** 736:9
**Yunko** 621:6,10
622:5

**Z**

**zero** 811:17
**Zimmermann**
607:7

**0**

**0010055-57** 542:17
587:9
**07004** 539:15
**07009** 541:4
**07701** 539:5
**07932** 540:15
**07962** 540:5
**07962-2075** 540:20
**08109** 540:11
**08903** 539:19

**1**

**1** 545:3 556:16
557:4 621:6 622:5
696:19 796:9
800:17 801:21
818:20
**1:38** 692:10
**10** 544:19 621:5
698:2,21 699:2,15
699:15 782:18
783:7 800:18
**10th** 650:1,5
**10:02** 537:15 545:9
**100** 540:5
**102** 753:3
**11** 664:20 665:2
694:12 695:9
792:3 800:18
**11:08** 617:18
**11:20** 617:21
**117** 565:1 617:10
618:8
**119** 598:15 612:3
762:14
**12** 800:18

**12:03** 664:1
**12:13** 664:4
**12:41** 692:6
**121** 612:3,15
**126** 619:17
**127** 539:4 622:16
**13** 566:7,14 590:6
708:14 800:18
**1300** 540:20
**13154** 695:1 792:5
**14** 541:4 542:8
554:3 555:16
556:19 557:13
565:16 566:15,21
624:16 635:21
637:4 800:18
**15** 565:16 567:4,6
567:13 568:11
580:10 607:16
625:1 660:3 731:7
747:2 800:18
811:17
**15th** 538:4 545:11
**16** 567:11 631:21
764:21 800:18
**16th** 632:6 649:10
**17** 542:13 544:8
557:14 567:16
580:10 587:5
692:19 701:20
702:1,16 800:18
**18** 636:17 800:18
**19** 557:5 568:7
637:9,17 644:19
792:8 795:10
799:4 800:18
**1940s** 592:15
**1960s** 787:7
**1967** 592:17
**1970s** 605:5
**1971** 542:10 554:7
555:18 557:2
**1972** 542:8 554:3
555:16 556:16
**1973** 542:12 543:8
555:7,20 557:9,11



665:22 666:4
668:21 673:10
**1976** 676:9
**1977** 558:9 607:7
**1978** 598:18 655:5
**1978-79** 619:21
**1979** 598:19 620:11
621:1,6 622:5
623:2 624:16
628:2 631:21
644:19 649:2
655:5 664:18
665:2 694:13
695:9,15 701:20
702:1,16 791:5,18
791:21 792:3,8,11
795:10 799:4
815:10 816:14
**1980s** 592:15
642:13
**1982** 557:3
**1983** 556:17 559:7
576:4 592:17
598:7 676:9 765:7
768:7
**1984** 560:17 582:3
583:6 707:4
716:17 717:4,14
787:4,21
**1989** 542:13 587:5
**1990s** 759:2
**1992** 737:3
**1993** 657:18 679:17
679:21 680:10,11

_____
**2**
**2** 537:13 542:12
545:8 555:7,20
557:9 598:11
700:20 756:7
765:7 800:17
807:15
**2:36** 754:18 755:1
**2:58** 754:21 755:1
**20** 563:6,8,9 567:13
568:11 620:11

621:1 628:2 768:2
768:7 772:1
800:18
**200** 728:13
**20005** 538:6
**2004** 768:1 785:15
**2006** 556:12 785:15
**2010** 544:19 782:18
783:7
**2012** 682:19
**2013** 544:5 692:14
**2014** 544:8 692:19
**2017** 537:13 545:8
819:14
**202-879-5959**
539:11
**2020** 818:20
**21** 563:6 648:21
791:18 793:7,15
793:16 800:19
**2139** 557:6
**22** 800:19
**220** 540:15
**23** 540:15 649:2
664:18 791:18
800:19
**2333** 556:20
**24** 800:19
**240** 540:10
**25** 792:2 794:1,3
796:20 798:4
800:19 801:6,21
812:10
**2500** 540:10
**26th** 819:14
**28** 557:11 647:21

_____
**3**
**3** 756:4 766:5
800:17,19
**3M** 537:8 545:5
**3-20-79** 628:12
**3:29** 788:16
**3:45** 788:19
**30** 595:13 702:4,15
794:1

**3014** 557:15
**3057** 557:13
**3104** 557:14
**32** 542:7 553:10,12
554:1 555:10
556:5,14,15
644:14,16 718:2
718:20 719:14
792:7 795:11
799:19,21 801:19
802:8 803:10
809:4,12
**33** 542:9 553:12
554:5 555:10,22
556:5,14 718:2,20
719:14 720:19
**33355** 565:19
**3360** 666:1
**34** 542:11 554:20
555:2,3,5,11,22
556:6,14 718:2,4
718:21 719:14
720:19
**35** 542:13 587:4
591:5 592:8
**36** 568:20,21
672:15,16 673:2
**36A** 673:3,6
**36A-B** 543:4
**36B** 673:7
**37** 564:10,21
570:10,15,18
573:19 673:18
674:3
**37A** 674:4,7,22
675:5,14
**37A-C** 543:9
**37B** 674:8 675:8,16
**37C** 674:8 675:10
675:18
**37D** 674:13 675:12
**37D-F** 543:13
**37E** 674:14 675:15
**37F** 674:14 675:17
**38** 543:16 625:7
649:8 651:2,22

653:3 681:17
695:3 700:21
701:13 705:9
735:7 791:4,6,20
792:6,15 793:17
793:17 796:1
798:6,18 799:16
800:21 801:3
802:12 807:4
812:17
**39** 543:19 686:20
687:6

_____
**4**
**4** 544:5 619:18
676:15,19,22
677:14 678:6,7,8
692:14 698:21
699:2 766:5
800:17 807:15
**4A** 756:15
**4th** 699:15
**4-17-2012** 687:18
**4.1** 698:1
**4.14** 698:2
**4:11** 817:13,16
**40** 539:19 544:4
583:15,17 597:5
666:22 692:12
800:8
**40,000** 699:3,4,5
**4026** 801:1
**41** 544:6 692:16
**42** 543:6 544:9
666:17 668:6
673:8 692:21
697:6 698:2,6
699:5,14,14
702:22 755:16,22
**43** 544:13 776:17
777:5
**44** 544:19 782:17
783:7
**45** 789:2
**46** 539:15
**47** 557:14

**480** 539:19
**49** 745:10

_____
**5**
**5** 551:7,17 653:2
676:15,19,22
677:14 678:6,7,8
678:9,14,14,16
718:6 733:3 748:4
756:20 800:17
807:15 811:17
**5th** 698:2,21 699:2
**5-17-79** 647:22
**50** 618:13 623:10
623:14,15,16,19
624:17,18,19
628:3 632:1 636:8
693:18 694:6,9,22
764:20 800:15,16
**500** 543:6 666:17
668:6 673:9 703:1
**51** 764:19
**546** 542:3
**55** 615:19 811:17
**554** 542:7,9
**555** 542:11
**58** 624:12
**587** 542:13

_____
**6**
**6** 607:7,15 608:21
609:3 678:9,14,14
678:16 764:22
765:19 767:4
800:17 807:15
**6B** 795:12 800:21
**6th** 699:16
**6-7-71** 557:1
**6.7** 699:15
**60** 539:15 631:19
**600,000** 699:16
700:5 796:11
**611-1626** 783:17
**63** 637:4
**655** 538:4 545:11
**67** 580:4,6



**673** 543:4
**674** 543:9,13
**681** 543:16
**686** 543:19
**692** 544:4,6,9

---
**7**

**7** 542:10 554:7
555:18 560:17
568:21 608:4
716:17 717:4
783:12 785:3
787:20 800:18
**70s** 543:12 673:16
674:10
**72** 680:13
**73** 680:13
**732-545-4717**
539:20
**74** 730:4
**74PS** 800:21
**75** 800:19
**76** 677:18
**776** 544:13
**782** 544:19
**79** 616:4

---
**8**

**8** 557:2 580:8
723:19 778:17
779:2 800:18
**80s** 543:12 673:16
674:11
**83** 677:18
**856-317-7180**
540:11
**888-394-0962** 539:5
**89** 732:21

---
**9**

**9** 631:19 800:18
**93** 745:11,13
**94** 734:1 747:15
**96** 734:16 750:16
**973-239-54700**
541:5

**973-425-8774**
540:21
**973-667-6000**
539:16
**973-822-1110**
540:16
**973-889-34150**
540:6
**99** 751:11

