

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

JEFFREY M. POLLOCK
Certified by the Supreme Court of New Jersey
    as a Civil Trial Attorney
Direct Dial:  (609) 896-7660
Email Address:  JMPollock@foxrothschild.com

May 9, 2018

**VIA ECF**
The Honorable Justice Roberto A. Rivera-Soto (ret.)
Special Discovery Master
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1163

RE:   ***Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.***
      **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

Plaintiffs submit this reply to Engelhard/BASF's Motion for a Protective Order precluding the depositions of Leo Lippens, John Poling, Sandy Noble and Jesse Pagonis. *See* ECF 507. For months, BASF has known of Plaintiffs' intent to depose individuals with knowledge relating to the company's insurance program and insurance claims, particularly Mr. Lippens and Mr. Pagonis. BASF failed to object

A Pennsylvania Limited Liability Partnership

California    Colorado    Connecticut    Delaware    District of Columbia    Florida
    Illinois       Nevada     New Jersey    New York    Pennsylvania    Texas



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 2

to the depositions of Mr. Lippens and Mr. Pagonis until this Motion for a Protective Order.

All of these witnesses were involved in the relationship between Engelhard/BASF ("BASF") and its insurers, and have relevant and important information about what the company told its broker and insurers about its operations and Emtal talc, how and who reported claims to the insurers, what the company and Cahill told the insurers about the claims filed by members of the putative class, and positions taken by the company and Cahill in the defense, dismissal or settlement of claims.

Mr. Lippens was the senior representative of Marsh & Co, BASF's insurance broker, which represented the company in the placement of its insurance and its relationships with its insurance carriers. He knows the details of how Cahill provided notices of claims to insurers and its relationship with Mr. Pagonis. Mr. Lippens will also testify that Mr. Pagonis played a unique and active role in the process by which Cahill gave notice of claims to the carriers. Messrs. Poling and Noble were, at different times, the relationship managers at Marsh. A relationship manager is the



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 3

individual assigned by Marsh to address issues, problems, handling procedures, and critically to shepherd BASF through the annual insurance policy application and/or renewal process.

As such, the three Marsh representatives have knowledge of what representations the company made to its existing and expected insurers in applying for insurance, including information about its products and operations, the risks to be insured by the carriers, the company's loss history including past and present asbestos claims, and incurred but not reported (IBNR) claims. The broker also usually interfaces with the carriers on behalf of the company in the claims process. The depositions of these Marsh employees are relevant and reasonably calculated to lead to the discovery of admissible evidence about the disclosures the company made to Marsh about known or expected risks during the insurance underwriting and claims process.

As the company's risk manager, Mr. Pagonis was intimately involved in the insurance underwriting and renewal process from the company side and worked with Cahill in providing Claims Notices to insurers. Mr. Pagonis knows the details of



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 4

what BASF told its brokers and insurers regarding Emtal talc. Mr. Lippens also knows the details of how Cahill Gordon—provided notices of claim and its relationship with Mr. Pagonis. Mr. Lippens will also testify about the nature of the relationship between Mr. Pagonis and Cahill with respect to communications with the insurers. Mr. Pagonis and the Marsh witnesses are also expected to have knowledge of the insurers' inspection of the Johnson Mine and other company facilities, and specifically the test performed by Royal Insurance in 1972 that found fibrous material in Johnson Mine dust samples.

Defendant utterly fails to meet its burden of providing a particular factual basis showing "extraordinary circumstances" that necessitate the prevention of these depositions.[1] Plaintiffs are well within their rights to take these depositions before the end of discovery.

---

[1] The Third Circuit requires that a party seeking a protective order show a **specific factual basis for the order.** *Gutierrez v. Johnson & Johnson*, 2002 U.S. Dist. LEXIS 15418, *8 (D.N.J. Aug. 12, 2002) (emphasis added). When a protective order is sought to prevent a deposition, a heightened showing is required. *Id.* at *8–*9. "Indeed, absent extraordinary circumstances, it is an error for a court to prevent the taking of a deposition." *Id.*



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 5

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, particularly at the discovery stage. *National Union Fire Insurance Company of Pittsburgh, PA v. Becton Dickinson*, 2018 U.S. Dist. LEXIS 14558, *11 (D.N.J. Jan. 30, 2018). The court may limit the frequency or extent of discovery otherwise allowed by this rule if it determines: (1) the discovery sought is unreasonably cumulative or duplicative; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(c).



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 6

The purpose of the rule of proportionality is to guard against redundant or disproportionate discovery. *Campbell v. Detert*, 2013 U.S. Dist. LEXIS 45981, *2 (D.N.J. 2013) (internal citations omitted). A party seeking a protective order bears the burden of proving that good cause exists to limit or foreclose discovery. Fed. R. Civ. P. 26(c). The moving party may show "good cause by demonstrating that disclosure will cause a clearly defined and serious injury." *Campbell v. Detert*, 2013 U.S. Dist. LEXIS 45981 at *23. However, "broad allegations of harm do not support a showing of good cause, so the alleged injury must be supported by specific examples and reasons." *Id.* at *24.

## ARGUMENT

**The Depositions of Insurance Witnesses are Relevant and Proportional.**

BASF, who has known about the Pagonis and Lippens depositions for months, cannot belatedly show "extraordinary circumstances" necessary to prevent these depositions. Engelhard/BASF had a number of insurers for risks in its business, including bodily injury caused by its products. Information about the communications among the company, Cahill, and the insurers with respect to the



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 7

content of Emtal talc, the Johnson Mine, and the manner in which claims were reported, defended, dismissed or settled are all relevant to and lie at the heart of the Plaintiffs' claims and damages. However, Engelhard/BASF claims to have very few of its own historic insurance files. Engelhard/BASF's insurers to date have produced to Plaintiffs only a small smattering of their claims files and have produced almost no underwriting files. Notably, the underwriting files are most important as the underwriting process requires the policyholder to completely disclose all known or suspected risks to insurance carriers.

The discovery sought is not unreasonably cumulative or duplicative. Engelhard/BASF and Cahill witnesses have testified that Jesse Pagonis was the internal risk manager for Engelhard/BASF during the class period. See Michael Sullivan Transcript, March 23, 2018, 55:19–57:7, attached hereto as Exhibit "A." Michael Hassett, the company's associate general counsel, testified that Engelhard had essentially outsourced the legal defense of asbestos claims to Cahill as its national defense counsel. See Michael Hassett Transcript, April 24, 2018, 83:20–84:5, attached hereto as Exhibit "B." Michael Sullivan, a Cahill paralegal, testified



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 8

that claims handling and defense vis-á-vis insurers was generally discussed between Cahill and Engelhard's insurance broker, Marsh & Co ("Marsh"), and specifically Leo Lippens. See Ex. A, Sullivan Transcript at 55:19–57:7. Further, according to Mr. Sullivan, Mr. Pagonis would have the most knowledge about Engelhard's insurance programs and how claims were reported to the carriers. Id. Given that these other company and Cahill witnesses have identified Mr. Lippens and Mr. Pagonis as the persons with the most knowledge of the company's risk management and insurance claims process, Plaintiffs are entitled to directly ask Mr. Lippens and Mr. Pagonis what they knew and did.

Following the discovery on March 23 of Mr. Pagonis and Mr. Lippens' role in the processing of insurance claims, Plaintiffs forwarded the Notice and Subpoena directed to Leo Lippens and the Notice of Videotaped Deposition directed to Jesse Pagonis to counsel for BASF on April 3, 2018. See April 3, 2018 e-mail to Defense Counsel, attached hereto as Exhibit "C." On April 25, 2018, Plaintiffs were also advised by Mr. Lippens that Sandy Noble, and later John Poling, were the relationship managers for Marsh managing the insurance coverage for



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 9

Engelhard/BASF. After speaking with Mr. Lippens on April 25, 2018, Plaintiffs issued a subpoena for Mr. Noble and Mr. Poling, and forwarded the same to defense counsel on May 3, 2018. See May 3, 2018 E-mail to Defense Counsel, attached hereto as Exhibit "D."

Plaintiffs never had the opportunity to obtain the information sought from the Marsh witnesses and Mr. Pagonis elsewhere. Plaintiffs wish to depose these witnesses to discover information with respect to the placement and underwriting of Engelhard/BASF's insurance and what information it supplied to and received from its insurers with respect to Emtal talc and the operation of the Johnson Mine, including test samples of talc, loss prevention, safety engineering, estimated losses and defense costs, settlement of claims, and incurred but not reported (INBR) claims. Plaintiffs also want the complete "loss runs," which are compendious reports listing by date or name all claimants against BASF.

Plaintiffs' right to this discovery is also necessitated by the fact that Engelhard/BASF has failed to provide substantive responses on these issues to



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 10

Plaintiffs' Third Set of Interrogatories, which will be the subject of a forthcoming Motion to Compel.

### Defendants Suffer No Undue Burden from Two Days of Depositions Before the End of Discovery

Engelhard/BASF has no basis to argue that these depositions are untimely or would cause undue burden, particularly considering BASF's role in delaying production of insurance information necessary to this case, and specifically these depositions. Engelhard/BASF's blanket assertions of general harm and expense are not sufficient to meet their burden of showing "extraordinary circumstances." *Campbell v. Detert*, 2013 U.S. Dist. LEXIS 45981 at *24. Furthermore, Engelhard/BASF never provides a specific factual basis to show that Plaintiffs should be prevented from taking these timely and completely relevant depositions. *Gutierrez v. Johnson & Johnson*, 2002 U.S. Dist. LEXIS 15418, *8 (D.N.J. Aug. 12, 2002). Contrary to their assertions, the facts show that Plaintiffs are entirely within their right to depose the witnesses.

...



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 11

Plaintiffs are requesting just two days to depose four witnesses. Engelhard/BASF has known for months of Plaintiffs' intent to depose individuals who can testify as to coverage issues. On November 27, 2017, Plaintiffs issued subpoenas to various insurance carriers related to this case. On December 8, 2017, Plaintiffs, BASF and insurance counsel had a meet and confer dealing with objections and concerns regarding Plaintiffs subpoenas. See Pollock letter to Insurance Counsel for BASF, December 11, 2017, attached hereto as Exhibit "E." Plaintiffs emphasized that they are not seeking the insurer's financial information. Further, Plaintiffs agreed to postpone discussions of any assertion of attorney-client privilege or the work product doctrine. Id. Plaintiffs and BASF have had two subsequent meet and confers on February 6, 2018, and April 27, 2018. We began to receive the insurance production on a rolling basis after months of delay by the carriers and then by BASF, which further delayed production by requiring an opportunity to review and produce a privilege log. See E-mail chain regarding



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 12

insurance production, attached hereto as Exhibit "F."[2]  To date, Plaintiffs have not received all insurance documents responsive to their request.  Plaintiffs finally began to receive some insurance materials on April 9th, but were required to get a vendor to produce the thousands of individual PDFs, none of which were indexed or organized by topic, and then read and review the documents.

Following Mr. Sullivan's testimony on March 23 about Mr. Pagonis' and Mr. Lippens' role in the processing of insurance claims, Plaintiffs forwarded the Notice and Subpoena directed to Leo Lippens and the Notice of Videotaped Deposition directed to Jesse Pagonis to counsel for BASF on April 3, 2018.  See Ex. C.  On April 19, 2018, Plaintiffs' counsel e-mailed Mr. Farrell discussing the scheduling of Jesse Pagonis' and Leo Lippens' deposition on May 7.  See April 19, 2018, E-mail exchange, attached hereto as Exhibit "G."  On May 2, after engaging with Plaintiffs' counsel in a number of e-mails concerning the slow pace of the Carriers' production, Mr. Farrell again acknowledged the ongoing discussions regarding scheduling Mr.

_____

[2] Plaintiffs will be filing a separate briefing objecting to this claim of privilege.



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 13

Pagonis' and Mr. Lippens' depositions. *See* May 2, 2018 E-mail Exchange, attached hereto as Exhibit "H."

**We are not asking for additional time. We are asking for what BASF knew all along was coming–two days of depositions.** BASF cites to several cases wherein a protective order was granted when subpoenas were issued close to the end of discovery. However, none of the facts of those cases are on point. *See, e.g., FLOORgraphics, Inc. v. News A. Mktg. In-Store Servs., Inc.*, 2007 WL 1613217, at *7 (D.N.J. 2007) (quashing Plaintiffs' subpoenas where Plaintiffs were seeking discovery outside the scope of that permitted in two of the Court's previous orders and the case was set for final resolution within weeks); *Nowell v. Reilly*, 437 F. App'x 122, 125 (affirming denial of motion to compel as Plaintiff did not provide Defendants with thirty days to answer interrogatories, and provided no proof that "more diligent discovery was impossible"); *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2011 WL 13238414, *1 (D.N.J. Nov. 7, 2011) (denying plaintiffs request for production of documents **because Defendants had already provided them within their first production in a searchable format—which has not**



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 14

occurred here—and Plaintiffs only raised issues with the production after the expiration of fact discovery).

These depositions are relevant and proportional to the needs of this case. More importantly, given Engelhard/BASF's failure to produce all insurance materials and that both INA and Arrowood did not maintain complete files, the information garnered from these depositions would not be duplicative. Plaintiffs are entitled to these depositions in order to obtain discovery they should have been able to receive from BASF.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that Your Honor deny Defendants' Motion for a Protective Order.

Respectfully Submitted,

**COHEN, PLACITELLA & ROTH, P.C.**        **FOX ROTHSCHILD LLP**

/s/ *Christopher M. Placitella*              Jeffrey M. Pollock, Esq.
Christopher M. Placitella, Esq.              (NJ Atty #: 015751987)
                                             997 Lennox Drive,



Justice Robert A. Rivera-Soto (ret.)
May 9, 2018
Page 15

(NJ Atty #: 027781981)
Michael Coren, Esq.
(NJ Atty #: 024871979)
Jared M. Placitella, Esq.
(NJ Atty #: 068272013)
Eric S. Pasternack, Esq.
(NJ Atty #: 015132011)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

Lawrenceville, NJ 08648
(609) 896-7660

**Attorneys for Plaintiffs and the Putative Class**

cc:   All Counsel of Record (via ECF)