

One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: 973.690.5400 Fax: 973.466.2761
www.rwmlegal.com

May 11, 2018

**VIA ECF**

The Honorable Roberto A. Rivera-Soto
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002

Re:   *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*
      **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

In their opposition to BASF's request for a protective order, plaintiffs fail to demonstrate that their requests meet the relevance and proportionality standards governing all discovery under Rule 26.  This case is not an insurance coverage dispute.  The insurance issues on which plaintiffs seek four depositions are not relevant to their claims and are especially disproportionate to the needs of the case at this very late phase of discovery.  Plaintiffs' position is all the more problematic given that they are responsible for the delays in seeking these depositions and have refused to consider a factual stipulation on the issues that may be covered in them.  For these reasons and those that follow, plaintiffs' demand to depose four third-party witnesses on the eve of discovery's closure—when all counsel have more pressing depositions to schedule, take, and defend on relevant issues—is inappropriate under Rule 26.  BASF's request for a protective order should therefore be granted.

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 11, 2018
Page 2

# ARGUMENT

As a preliminary matter, plaintiffs misstate the legal standards governing this motion. BASF does not need to show "extraordinary circumstances," 5/9/18 Pls.' Ltr. to SDM (ECF No. 511) 4 ("Pls.' Br."), to prevent plaintiffs' irrelevant depositions. The Federal Rules were amended in December 2015 to incorporate a proportionality standard as an express limit on all discovery permitted by Rule 26(b)(1). *See Mylan Pharms. Inc. v. Celgene Corp.*, 2016 WL 2943813, at *6 (D.N.J. May 20, 2016) ("New Rule 26(b)(1) . . . fix[es] the scope of all discovery demands in the first instance."); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and proportional to the needs of the case*** . . . ") (emphasis added). And it is plaintiffs—not BASF—who bear the burden of proving that their requested discovery is relevant and proportional. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, 2018 WL 627378, at *4 (D.N.J. Jan. 30, 2018) ("[T]he burden remains on the party seeking discovery to show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence.").

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 11, 2018
Page 3

Plaintiffs' arguments only demonstrate the extent to which relevance is lacking. For Mr. Pagonis, plaintiffs speculate that he "knows the details of what BASF told its brokers . . . regarding Emtal talc," Pls.' Br. 3-4, that he may know about the "test performed by Royal Insurance in 1972," *id*. at 4, and that he was "involved in the insurance underwriting and renewal process from the company side." *Id*. at 3. For Mr. Lippens, plaintiffs claim that "[h]e knows the details of how Cahill provided notices of claims to insurers." *Id*. at 2. And for Ms. Noble and Mr. Polling, plaintiffs indicate only that they were the Engelhard "relationship managers" at the Marsh insurance brokerage firm and were responsible for "shepherd[ing] BASF through the annual insurance policy application." *Id*. at 3.

Such issues are not relevant to plaintiffs' claims of fraud and fraudulent concealment, nor do plaintiffs provide any reason to believe that these witnesses will be able to provide this information decades after the fact. Plaintiffs allege that Engelhard and Cahill misled plaintiffs—not insurance carriers—in litigation. To explore that claim, plaintiffs have taken or noticed multiple depositions of Cahill attorneys who represented Engelhard, local counsel who represented Engelhard, internal lawyers at Engelhard, and other fact witnesses. Matters such as "the annual insurance policy application and/or renewal process," *id*., are not relevant and do not

3

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 11, 2018
Page 4

meaningfully add to this factual record—let alone justify four depositions in the last week of discovery. *See* Fed. R. Civ. P. 26(b)(2) (requiring courts to limit "unreasonably cumulative or duplicative" discovery).

That these third-party witnesses are irrelevant is underscored by the fact that plaintiffs listed none of them (or even the Marsh insurance brokerage firm, at which three of them work) in their initial disclosures. BASF did not "kn[ow] all along," Pls.' Br. 13, that these depositions were coming. Plaintiffs concede that Mr. Pagonis and Mr. Lippens were first identified in this litigation on March 23, 2018 in the deposition of Michael Sullivan, a Cahill paralegal. *Id*. at 7. Mr. Sullivan testified that Mr. Pagonis was responsible for preparing Engelhard's insurance claim forms and "would notify appropriate insurers of the claim itself under their policies." Ex. A (M. Sullivan Dep. Tr. 55:8-11). Plaintiffs subsequently sought to take Mr. Pagonis's and Mr. Lippens's depositions and requested that they bring with them documents covering a period of several decades, but plaintiffs then removed both of those depositions from the calendar after having trouble serving the witnesses. *See* Ex. B (4/19/18 J. Pollock Email to P. Farrell). Plaintiffs succeeded in serving Mr. Pagonis only on April 20. Ms. Noble and Mr. Polling, meanwhile, were not identified to BASF as potential witnesses until May 2, 2018, were served with

4

deposition subpoenas and accompanying document requests only on May 4, 2018, and have not been identified by any other witness in the nearly ten-year history of this case.

Plaintiffs attempt to excuse their delay in seeking these depositions by blaming BASF for separate supposed delays in the production of insurer documents. *See* Pls.' Br. 11-12. These arguments are not correct. Plaintiffs chose to serve eight broad subpoenas on Engelhard's insurance carriers, seeking irrelevant documents such as "[a]ll communications between [the insurer] and Engelhard or BASF with respect to loss deductibles, self-insured retention, retrospective rating or other loss sensitive plans, gap coverage, excess coverage, umbrella coverage . . . to insure asbestos liability claims," and "[a]ny Underwriting Files You possess for Engelhard or BASF regarding insurance coverage." Ex. C (11/9/17 Pls.' Subpoena to Arrowpoint Capital at 7).

BASF cooperated in that process and asserted objections only to protect privileges. After one of the insurers identified historical files, that insurer asked plaintiffs and BASF to split the cost of scanning documents for production. Although BASF had no obligation to do so, BASF promptly agreed to help expedite the process. Plaintiffs, however, did not respond to the insurer's request for almost

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 11, 2018
Page 6

a month, substantially delaying the review and production of documents. Ex. D (2/5/18 R. Blanton Email to J. Pollock) ("BASF has agreed to pay half the cost of scanning the documents up to $12,500. Please advise if plaintiffs are willing to bear the other half of the costs to have the documents scanned."); Ex. E (3/5/18 P. Farrell Email to J. Pollock at 3) ("[I]n view of finally receiving your response agreeing to pay half of the costs of scanning on February 28, 2018 Arrowood has now turned to that process.").

Plaintiffs have since received thousands of pages of documents from the insurers' files, with production beginning soon after plaintiffs finally responded to one insurer's request for reimbursement. Plaintiffs still have not responded to another insurer's request for agreement to cover scanning costs, which is the primary reason that insurer has not completed its document review and production. *See* Ex. F (4/16/18 P. Briganti email to J. Pollock). All of those delays are attributable to plaintiffs, not BASF.

In any event, plaintiffs have already received substantial discovery regarding insurance issues, including thousands of pages of documents from Engelhard's insurers. They have also taken or noticed multiple depositions regarding Engelhard and Cahill's defense of Emtal cases, statements made in the litigation of those cases,

6

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 11, 2018
Page 7

and so on. The factual issues described in plaintiffs' brief—such as the purportedly "critical[]" annual insurance policy application or renewal process, *see* Pls.' Br. 3—are not relevant or important here, nor have plaintiffs ever previously suggested that they were. *See In re Benicar Prod. Liab. Litig.*, 2016 WL 5817262, at *6 (D.N.J. Oct. 4, 2016) ("If the Court permitted depositions to be taken to answer every conceivable question litigants raise . . . discovery would never end.").

As a result, plaintiffs have not met their burden of showing that these four depositions are relevant, proportional, and not burdensome—particularly in light of the other depositions scheduled for the upcoming last few days of discovery. BASF's motion for a protective order therefore should be granted.

                                        Respectfully Submitted,

                                        s/ Justin T. Quinn
                                            Justin T. Quinn
                                        Counsel for BASF Catalysts LLC

cc:    All counsel of record (via ECF)