# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **KIMBERLEE WILLIAMS**, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; **NANCY PEASE**, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; **MARILYN L. HOLLEY**, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; **DONNA WARE**, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; and **DONNETTE WENGERD**, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate, and as representative of others similarly situated, and **ROSANNE CHERNICK**, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated, | : | No. 11-cv-1754 (JLL) (JAD)  <br><br>  CIVIL ACTION  <br><br>  **DEFENDANT BASF CATALYSTS LLC'S BRIEF IN SUPPORT OF ITS APPEAL OF THE SPECIAL DISCOVERY MASTER'S MAY 3, 2018 ORDER [ECF NO. 501]**  <br><br>  **[REDACTED FOR PRIVILEGED INFORMATION]** |
| Plaintiffs, | : |  |
| v. | : |  |
| **BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, CAHILL GORDON & REINDEL**, a partnership including a professional corporation, **THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, GLEN HEMSTOCK, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, JOHN DOE BUSINESS ENTITIES 1 to 100; JOHN DOE BUSINESS ENTITIES 101 to 200; JOHN DOE LAWYERS 1 to 500**; and, **JOHN DOE 1 to 500**, | : |  |
| Defendants. | : |  |

Eugene F. Assaf, P.C. (*pro hac vice*)
Michael F. Williams
Daniel A. Bress (*pro hac vice*)
Peter A. Farrell (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

Justin T. Quinn
Robinson Miller LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
Phone: (973) 690-5400
Facsimile: (973) 466-2760

*Counsel for Defendant BASF Catalysts LLC*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..............................3

    A.    Plaintiffs' Motion to Compel The May 2, 1979 and May 14, 1979 Attorney-Client Communications ..................................3

    B.    The SDM's Orders ..............................................................7

ARGUMENT .........................................................................................9

I.    THE MAY 14, 1979 MEMORANDUM IS PRIVILEGED AND SHOULD NOT HAVE BEEN ORDERED DISCLOSED ...........................................10

    A.    The May 14, 1979 Memo Is Not A Communication Between Two Scientists ....................................................................10

    B.    The SDM Failed To Consider That When Viewed In Context, The May 14, 1979 Memo Is Privileged ..............................12

II.    BASF HAS ALREADY PRODUCED THE "FACTS" CONTAINED IN THE MAY 14, 1979 TRIGLIA MEMO......................................................20

CONCLUSION ...................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT Sec. Servs., Inc. v. Swenson*,
   2010 WL 2954545 (D. Minn. July 26, 2010) .....................................................13

*Amersham Biosciences Corp. v. PerkinElmer, Inc.*,
   2007 WL 329290 (D.N.J. Jan. 31, 2007) ............................................................9

*In re Chevron Corp.*,
   650 F.3d 276 (3d Cir. 2011) ...............................................................................28

*Costco Wholesale Corp. v. Superior Court*,
   219 P.3d 736 (Cal. 2009) ....................................................................................21

*Hepburn v. Workplace Benefits, LLC*,
   2014 WL 12623294 (E.D.N.C. Apr. 18. 2014) ..................................................12

*Jewitt v. IDT Corp.*,
   2004 WL 7321367 (D.N.J. Aug. 9, 2004) ..........................................................10

*Le v. City of Wilmington*,
   480 F. App'x 678 (3d Cir. 2012) ..........................................................................9

*Montgomery Cty. v. MicroVote Corp.*,
   175 F.3d 296 (3d Cir. 1999) .................................................................................9

*In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*,
   2008 WL 2338552 (D.S.C. May 8, 2008) ..........................................................12

*Nanticoke Lenni-Lenape Tribal Nation v. Porrino*,
   2017 WL 4155368 (D.N.J. Sept. 19, 2017) ........................................................19

*In re Niaspan Antitrust Litig.*,
   2017 WL 3668907 (E.D. Pa. Aug. 24, 2017) .....................................................19

*Santrade Ltd. v. Gen. Elec. Co.*,
   150 F.R.D. 539 (E.D.N.C. 1993) ........................................................................12

*SmithKline Beecham Corp. v. Apotex Corp.*,
   232 F.R.D. 467 (E.D. Pa. 2005) ....................................................................11, 12

*Travelers Prop. Cas. Co. v. USA Container Co.*,
2012 WL 12898823 (D.N.J. Oct. 25, 2012) ......................................................10

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) ...............................................................................10

*United States v. Ghailani*,
751 F. Supp. 2d 498 (S.D.N.Y. 2010) ...............................................................21

*United States v. Keystone Sanitation Co.*,
899 F. Supp. 206 (M.D. Pa. 1995)......................................................................28

*Upjohn Co. v. United States*,
449 U.S. 383 (1981)....................................................................................13, 20

## INTRODUCTION

Defendant BASF Catalysts LLC appeals the Special Discovery Master's May 3, 2018 Order, ECF No. 501, requiring the release of a May 14, 1979 privileged communication. Although the SDM determined this document was not privileged, BASF respectfully submits that decision was in error.

The May 14, 1979 memorandum is privileged because it is a communication between Engelhard personnel and Engelhard's then-General Counsel Joseph Brush concerning a request for legal advice regarding the results of certain talc tests. This document is part of a broader set of privileged communications in which Engelhard Corporation, BASF's predecessor, was seeking and receiving legal advice from Mr. Brush concerning the legal implications of tests purporting to identify trace levels of asbestos in Emtal talc. The SDM concluded that the May 14, 1979 memo was not privileged because it was "neither authored by nor addressed to counsel" and was "a communication between in-house scientists."

That determination was incorrect. The memo was not solely between scientists, because Mr. Brush, an attorney, was the first person copied. The SDM also failed to address BASF's central argument, namely, that the May 14, 1979 document was privileged because it was but one communication within a broader set of privileged communications involving Mr. Brush on these same issues. Plaintiffs' same counsel has in other proceedings argued that the May 14, 1979

document is not privileged, but no court has previously accepted that argument, including after substantial proceedings of a type that did not occur here.  In this case, moreover, the SDM released the May 14, 1979 memo even though it was part of the same course of communications as an earlier May 2, 1979 memorandum that the SDM agreed was "subject in its entirety to an appropriately asserted attorney-client privilege."  5/3/18 Order at 3 (ECF No. 501).

The SDM further erred to the extent he concluded that the May 14, 1979 memo should be released because it contains "discoverable facts subject to production."  *Id*. at 4.  BASF has already produced the "discoverable facts" contained in the May 14, 1979 memorandum—certain scientific test results on Emtal talc—in non-privileged documents.  Nor is BASF otherwise seeking to shield the "facts" from discovery.  In this case, any "facts" in the May 14, 1979 were part of a privileged communication, rendering the whole document privileged.  The earlier May 2, 1979 memo also could be said to contain "facts," but the SDM found that memo "as a whole constitutes a request for legal advice" and could not be disclosed. *Id.*  That same reasoning applied to the later May 14, 1979 memo as well.

Finally, the SDM erred in denying BASF's repeated requests for oral argument on plaintiffs' motion to compel these documents.  Given the age of the documents and the importance of BASF's attorney-client privilege, BASF believed it imperative that oral argument take place, and the SDM has held lengthy oral

2

arguments on far less important issues.  Oral argument could have also clarified whether any questions about the May 14, 1979 document could be addressed through redactions rather than a wholesale breaching of BASF's privilege.

BASF thus requests that this Court conduct the *ex parte* oral argument that the SDM did not conduct below.  BASF further requests that the SDM's May 3, 2018 Order be set aside and the May 14, 1979 memo remain privileged.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiffs' Motion to Compel The May 2, 1979 and May 14, 1979 Attorney-Client Communications

By way of background, and more than six years into this litigation, plaintiffs filed a motion to compel production of BASF's privileged documents under the crime-fraud exception to the attorney-client privilege.  *See* 11/2/17 Pls.' Crime-Fraud Mot. (ECF No. 370-1).  In that motion, which remains pending, plaintiffs sought the production of privileged materials spanning the 1970s—before plaintiffs allege any purported litigation fraud ever took place—through 2010, after BASF acquired Engelhard and after plaintiffs concede the purported fraud ceased.

As proceedings on the crime-fraud motion wore on, however, it became apparent that the SDM had (and has) serious questions whether plaintiffs have established a *prima facie* case under the crime-fraud exception.  Ex. A (4/2/18 Hr'g Tr. 203:23-25) ("SPECIAL MASTER: … So the question is, is there enough here to satisfy that burden? And that's the one trouble that I'm having.").   The SDM

3

expressed particular concern as to how plaintiffs could seek privileged documents under the crime-fraud exception from the 1970s, when by plaintiffs' own allegations the alleged fraud did not begin until the mid-1980s. *See id.* at 160:22 - 161:1 (SDM questioning how plaintiffs could "bootstrap back to the documents that were made when there was no proof of any wrongdoing going on").[1]

Perhaps recognizing the difficulties they faced in obtaining documents from prior to 1983 under the crime-fraud exception, plaintiffs filed a separate motion to compel the production of two privileged memoranda authored in May 1979. *See* 3/28/18 Pls.' Mot. to Compel (ECF No. 477). These memos were prepared by Engelhard scientist Emil Triglia and sent to, among others at Engelhard, Joseph Brush, then the General Counsel of the Minerals & Chemicals Division of Engelhard Minerals & Chemicals Corp. Both Mr. Triglia and Mr. Brush are now deceased. Plaintiffs had already sought production of these two memoranda—one dated May 2, 1979 and the other dated May 14, 1979—under the crime-fraud exception. But in their separate motion to compel, plaintiffs took the position that the two documents were not privileged in the first place. *See id.*[2]

---

[1] Plaintiffs' separate appeal of the SDM's "Science Day" Order, ECF No. 506, relates to their pending crime-fraud motion.

[2] Plaintiffs' motion in fact sought production of three documents identified on BASF's privilege log as PRIV001633, PRIV001672, and PRIV001786. 3/28/18 Pls.' Ltr. Br. 3 (ECF No. 477). However, PRIV001633 and PRIV001786 are the same underlying document: a May 2, 1979 memorandum from Engelhard scientist

BASF opposed plaintiffs' motion to compel and, in an *ex parte* and *in camera* submission, laid out the basis for its privilege claims over the two May 1979 memoranda.  As BASF explained, the testing record on Emtal talc spans decades and involves a complex web of legal and regulatory standards that Engelhard scientists navigated together with Engelhard in-house lawyers.  Beginning in the 1950s, tests by Engelhard, government agencies, Harvard University, and others found no asbestos in samples of Emtal talc.  Exs. B-H.  Throughout the 1970s, Engelhard conducted further tests on Emtal talc, and did not detect asbestos in the samples tested.  *See, e.g.*, Exs. I-P.  Although some tests from this time period purported to detect asbestos fibers, those tests were deemed unreliable because they used a lower-power Phase Contrast Microscopy technique that could not determine whether a particle shaped as a fiber was an asbestos fiber, and/or because the samples in question were not Emtal talc.  Ex. P (Van Orden Report ¶¶ 39-49).[3]

This changed in 1979 when Engelhard for the first time became aware of tests in which trace levels of chrysotile asbestos were purportedly detected in some

---

Emil Triglia to Engelhard in-house lawyer Joseph Brush and others at Engelhard.  Plaintiffs' motion therefore seeks only two unique documents, this May 2, 1979 memorandum and a separate May 14, 1979 memorandum also authored by Mr. Triglia.

[3] These various exhibits were attached to BASF's opposition to plaintiffs' crime-fraud motion.  In its opposition to the motion to compel now on review here, BASF incorporated by reference this prior crime-fraud opposition brief.

samples of Emtal talc, where the results could not be immediately explained.  *Id.*; *see also* Ex. Q (4/11/79 Gale Memo to Triglia).  ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████  Both the May 2, 1979 and May 14, 1979 memoranda at issue here relate to this particular time period and period of legal inquiry, and contain requests for legal advice from Mr. Brush on these issues.

On April 24, 2018, BASF filed its opposition to plaintiffs' motion to compel the May 2, 1979 and May 14, 1979 memoranda.  BASF submitted to the SDM an *ex parte* opposition brief that discussed privileged information.  Ex. R (4/24/18 BASF *Ex Parte* Br.).  BASF also submitted for *in camera* review the May 2, 1979 and May 14, 1979 memoranda themselves, as well as a June 18, 1979 privileged memorandum that provided context to the earlier memoranda (plaintiffs had not moved to compel the June 18, 1979 memorandum).  BASF also filed a public version of its opposition brief that did not contain privileged information. 4/24/18 BASF Opp. to Pls.' Mot. to Compel (ECF No. 486).  BASF requested oral argument on plaintiffs' motion to compel and requested that at least part of the oral argument take place *in camera* and *ex parte*.  Ex. S (5/1/18 J. Quinn Email to SDM).  Plaintiffs

6

opposed BASF's request for oral argument, claiming that oral argument was "unnecessary."  Ex. T (5/1/18 J. Placitella Email to SDM).

## B.    The SDM's Orders

On May 3, 2018, the SDM entered an order finding that the May 2, 1979 memo was privileged, that the May 14, 1979 memo was not privileged, and denying BASF's request for oral argument.  *See* 5/3/18 Order (ECF No. 501).  With respect to the May 2, 1979 memo, the SDM concluded it "as a whole constitutes a request for legal advice" and was therefore "subject in its entirety to an appropriately asserted attorney-client … privilege."  *Id.* at 3.  Accordingly, this document could only be disclosed, "if at all," as a result of plaintiffs' separate crime-fraud motion, which remains pending.  *Id.* at 3-4.

With respect to the May 14, 1979 memo, however, the SDM concluded it "is neither authored by nor addressed to counsel but, instead, constitutes a communication between in-house scientists not subject to the attorney-client privilege."  *Id.* at 3.  The SDM also determined that the May 14, 1979 memorandum "contain[s] discoverable facts subject to production."  *Id.* at 4.  For these reasons, the SDM held that this memorandum "shall be disclosed in its entirety."  *Id.*[4]

---

[4] The SDM initially entered an order compelling the disclosure of the May 2, 1979 memorandum and affirming BASF's assertion of privilege with respect to the May 14, 1979 memorandum.  *See* 5/3/18 Order (ECF No. 500).  Shortly after that order was entered on the docket, plaintiffs' counsel wrote to the SDM explaining that the order contained "a typographical mistake as to the Bates numbers of the referenced

Because the SDM's order compelled production of the May 14, 1979 memorandum within two business days, BASF the next morning sought a stay of that order pending appeal and again requested oral argument.  5/4/18 BASF Ltr. to SDM (ECF No. 502).  BASF explained that "*ex parte* oral argument was critically necessary for the Court's evaluation of this issue," and that BASF "would be prepared to meet with Your Honor this weekend or early next week in Cherry Hill, or at any other time and place convenient to the Court."  *Id.* at 1.  Oral argument was further necessary, BASF went on, because it "would provide further context for BASF's assertion of privilege and would enable BASF to understand whether any concerns the Court might have could be more appropriately addressed through redactions."  *Id.* at 2-3; *see also id.* at 2 (oral argument was warranted because "BASF's privilege has been the subject of litigation for nearly ten years and despite significant efforts by plaintiffs … to argue otherwise, no court has agreed that any of the documents on BASF's privilege log are not privileged in the first place").

Later that day, the SDM granted BASF's request for a stay pending appeal but again denied BASF's request to present oral argument.  *See* 5/4/18 Order (ECF No.

---

documents."  Ex. U (5/3/18 J. Placitella Email to SDM).  The SDM subsequently entered a corrected order substituting the Bates numbers at issue, ultimately compelling the disclosure of the May 14, 1979 memorandum, while affirming BASF's assertion of privilege over the May 2, 1979 memorandum. *See* 5/3/18 Order (ECF No. 501).

503).  The SDM ruled that oral argument was "unnecessary" and that he had already

determined that the May 14, 1979 memorandum is not privileged because: "(a) it is

an internal, not otherwise privileged communication between two scientists, (b) it is

neither addressed from or to a lawyer, and (c) does not seek or provide any legal

advice."  *Id.* at 5.  The SDM did not address BASF's request for an opportunity to

discuss redactions to the document.

BASF now appeals the SDM's May 3, 2018 Order compelling the production

of the May 14, 1979 memorandum.

## ARGUMENT

The SDM's determination whether the May 14, 1979 document is privileged

is a question of law that is reviewed *de novo*.   *See, e.g.*, *Le v. City of Wilmington*,

480 F. App'x 678, 682 (3d Cir. 2012); *Montgomery Cty. v. MicroVote Corp.*, 175

F.3d 296, 301 (3d Cir. 1999); *Amersham Biosciences Corp. v. PerkinElmer, Inc.*,

2007 WL 329290, at *4 (D.N.J. Jan. 31, 2007).

The SDM erred in holding that the May 14, 1979 memorandum is not

privileged.  Although the SDM concluded that the document "constitutes a

communication between in-house scientists" that was "neither authored by nor

addressed to counsel," 5/4/18 Order at 3, 5 (ECF No. 503), Engelhard General

Counsel Joseph Brush was copied on the memo.  And although the SDM concluded

that the May 14, 1979 memorandum "does not seek or provide any legal advice,"

*id.*, the SDM failed to confront BASF's core argument, namely, that the document is privileged because it is part of a broader set of privileged correspondence between Engelhard lawyers and scientists about the legal and regulatory implications of scientific test results on Emtal talc, including the earlier May 2, 1979 memo that the SDM agreed was privileged. The decision below—entered without oral argument—is incorrect as a matter of law, inconsistent on its own terms, and should be reversed.

## I.   THE MAY 14, 1979 MEMORANDUM IS PRIVILEGED AND SHOULD NOT HAVE BEEN ORDERED DISCLOSED

It is well-established that communications within a company seeking and receiving legal advice from an in-house lawyer are protected by the attorney-client privilege. *See, e.g.*, *Jewitt v. IDT Corp.*, 2004 WL 7321367, at *4 (D.N.J. Aug. 9, 2004) ("Confidential communications between a corporation's employees and in-house counsel are protected by the privilege."); *see also Tucker v. Fischbein*, 237 F.3d 275, 288 (3d Cir. 2001); *Travelers Prop. Cas. Co. v. USA Container Co.*, 2012 WL 12898823, at *20 (D.N.J. Oct. 25, 2012). Because the May 14, 1979 memorandum is such a document, it should not have been ordered released.

### A.   The May 14, 1979 Memo Is Not A Communication Between Two Scientists

The May 14, 1979 memo was not simply a communication "between in-house scientists," as the SDM determined. 5/3/18 Order at 3 (ECF No. 501). The SDM failed to acknowledge that Mr. Brush, an Engelhard General Counsel, is listed as the

first copyholder on the document.  *See* Ex. V (5/14/79 Triglia Memo) (███████████

██████████████████████████████████████); *compare* Ex. W (5/2/79 Triglia Memo)

(████████████████████████).  The May 14, 1979 memorandum was thus

not just a "communication between two scientists" 5/4/18 Order at 5 (ECF No. 503),

as the SDM concluded, but a communication involving scientists *and* an Engelhard

General Counsel.  Although not dispositive of the privilege claim, the fact that an

in-house lawyer is copied—and is listed as the first copyholder—is certainly an

indicia of a privileged communication.  *See, e.g.*, *SmithKline Beecham Corp. v.

Apotex Corp.*, 232 F.R.D. 467, 478 (E.D. Pa. 2005) (rejecting challenge to privilege

where attorneys were copied because "[n]owhere is it clear that a communication

was primarily between non-attorney employees or that counsel was merely 'copied

in'").

The SDM appeared to find it significant that the May 14, 1979 memorandum

was "neither authored by nor addressed to counsel."  5/3/18 Order at 3 (ECF No.

501).  But the memorandum was of course "addressed to" counsel, because Mr.

Brush was the first copyholder.  In any event, courts have made clear that "[a]

document need not be authored or addressed to an attorney in order to be properly

withheld on attorney-client privilege grounds."  *SmithKline Beecham*, 232 F.R.D. at

467; *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)

(same).  Neither the SDM nor plaintiffs identified authority requiring an attorney to

be the first addressee, rather than the first copyholder, in order to maintain a claim of privilege.  Nor would there be any reason for that technical distinction to be dispositive.  As courts have repeatedly recognized, "the fact that a corporate attorney is copied on an email, rather than appearing as a direct recipient, is not fatal to a claim of privilege."  *Hepburn v. Workplace Benefits, LLC*, 2014 WL 12623294, at *4 (E.D.N.C. Apr. 18. 2014); *see also In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*, 2008 WL 2338552, at *10 (D.S.C. May 8, 2008) ("Plaintiffs argue that emails cannot be privileged if the lawyer is only 'cc:d' on the email, as opposed to a direct recipient. Such a limitation would be inconsistent with the way that emails are sent. Sending an email by 'cc' is usually a question of convenience rather than an expression of some intent to delineate priorities.").

### B.   The SDM Failed To Consider That When Viewed In Context, The May 14, 1979 Memo Is Privileged

In light of the foregoing, "[t]he ultimate question is not how the [document] is addressed but whether the substance of the communication involves receiving or acting upon legal advice, or otherwise providing information necessary to securing legal advice."  *Hepburn*, 2014 WL 12623294, at *4.  Thus, "communications between counsel and company employees remain privileged 'so long as the information is relayed for the purpose of obtaining legal counsel.'"  *SmithKline*, 232 F.R.D. at 478 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981)). In this regard, courts have held that communications copying in-house counsel can

12

"contain an implicit request for legal advice" and "therefore they are protected by the attorney-client privilege." *ADT Sec. Servs., Inc. v. Swenson*, 2010 WL 2954545, at *5 (D. Minn. July 26, 2010). That is the case here.

It is necessary to consider the May 14, 1979 memorandum in the context of other privileged documents from this period, which the SDM did not do. *See, e.g.*, *id.* (finding documents on which company's in-house counsel were copied privileged because "[t]he context of these emails demonstrates that these communications contain an implicit request for legal advice"). As discussed above, decades of testing by Engelhard, government agencies, and others had long found no asbestos in samples of Emtal talc. In 1979, however, Engelhard became aware of tests in which trace levels of chrysotile asbestos were detected in some samples of Emtal talc, where the results could not be immediately explained as unreliable.

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

13





███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████    The  SDM

concluded that this May 2, 1979 memorandum is "subject in its entirety to an

appropriately asserted attorney-client [] privilege" because it "as a whole constitutes

a request for legal advice" on these matters.  5/3/18 Order at 3 (ECF No. 501).

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████







Because the May 14, 1979 memo is part of an overall request for legal advice, the SDM erred in ordering its disclosure.  *See, e.g.*, *Nanticoke Lenni-Lenape Tribal Nation v. Porrino*, 2017 WL 4155368, at *11 (D.N.J. Sept. 19, 2017) ("This memo is protected by the attorney-client privilege because it seeks legal advice on an issue of concern."); *In re Niaspan Antitrust Litig.*, 2017 WL 3668907, at *3 (E.D. Pa. Aug. 24, 2017) (holding that documents "were properly withheld under the attorney-client privilege because those entries consist of communications in which attorneys request or are provided with information for the purpose of providing legal advice").

Oral argument would have enabled BASF to further explain this context to the SDM and to address any questions the SDM may have had regarding the basis for BASF's privilege assertion.  The documents in questions are old, interrelated,

and involve technical legal issues; oral argument could have only improved the Court's understanding of the motion before it.  That is particularly the case when no court—despite plaintiffs' counsel's persistent efforts elsewhere—has ever agreed that documents BASF is withholding are not privileged in the first place, including with respect to the May 14, 1979 memo in particular.

This Court should not affirm the first decision finding a document on BASF's privilege log not privileged, which no court has ordered in the nearly ten years in which BASF has been fending off challenges to its attorney-client privilege.

## II.  BASF HAS ALREADY PRODUCED THE "FACTS" CONTAINED IN THE MAY 14, 1979 TRIGLIA MEMO

The SDM also erred to the extent he concluded that the May 14, 1979 Triglia memorandum contains "discoverable facts subject to production."  5/3/18 Order at 4 (ECF No. 501).  BASF is not trying to block discovery into the underlying facts of the Emtal talc testing, which plaintiffs have pursued and obtained from BASF in discovery for nearly a decade.   Rather, BASF is withholding attorney-client communications, which are entitled to protection.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("Protection of the privilege extends only to *communications* and not to facts.   A fact is one thing and a communication concerning that fact is an entirely different thing.") (emphasis in original).

There is thus no support for the SDM's apparent conclusion that all or certain portions of a privileged communication could be released on the theory that they

contain "discoverable facts."  *See, e.g.*, *Costco Wholesale Corp. v. Superior Court*, 219 P.3d 736, 765 (Cal. 2009) ("[A]s we have explained, because the privilege protects the *transmission* of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means.") (emphasis in original); *United States v. Ghailani*, 751 F. Supp. 2d 498, 501 (S.D.N.Y. 2010) ("To illustrate that point, there is no privilege preventing a litigant in a motor vehicle accident case from compelling his or her adversary to testify as to whether a traffic light was red when the adversary went through an intersection.  But the attorney-client privilege prevents a litigant from asking his or her adversary or the adversary's lawyer from inquiring what the adversary confided to his or her lawyer on the subject of the color of the light. That is a protected attorney-client communication.").  Information included in an attorney-client communication is not discoverable, regardless of whether that information is characterized as "facts" or something else.

The SDM's May 3, 2018 order is also inconsistent on this point, because the May 2, 1979 memorandum, which the SDM found was privileged, could be said to contain "facts" as well.  Ex. W (5/2/79 Triglia Memo).  But the SDM found that this memorandum "*as a whole* constitutes a request for legal advice" and is "subject *in its entirety* to an appropriately asserted attorney-client [] privilege."  5/3/18 Order at 3 (ECF No. 501) (emphases added).  That analysis was entirely correct, and it should

have applied to the May 14, 1979 memorandum, too.  At most, the May 14, 1979 memorandum could possibly be subject to redactions, but BASF had no opportunity to raise this issue and understand any specific concerns the SDM might have had because the SDM twice rejected BASF's requests for oral argument.

In all events, BASF has already produced the "discoverable facts" contained in the May 14, 1979 memorandum at issue here.  Plaintiffs argued before the SDM that "no test results have been produced specifically referencing the 1979 Engelhard study of the Johnson mine's ore," Pls.' Ltr. Br. 5 (ECF No. 477), ███████████████

██████████████████████████████████████████████  But as BASF explained at the recent April 2, 2018 hearing before the SDM (and as BASF has explained to plaintiffs many times before), the test results concerning the 38 rock samples are contained in a non-privileged September 19, 1979 document, Ex. Z (9/19/79 Hubbard Ltr. to Triglia), which BASF produced to plaintiffs.  *See* Ex. A (4/2/18 Hr'g Tr. 199:11-24).  BASF further stated it was willing to stipulate to this point.  *Id.* at 189:19-22.  For avoidance of doubt, however, BASF wishes to explain how the September 19, 1979 memo contains the test data on the 38 rock samples referenced in the May 14, 1979 memo.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████





It also bears emphasis that plaintiffs' counsel is aware of and has used the non-privileged September 19, 1979 letter in these and other proceedings, belying plaintiffs' suggestion that they did not know whether this document reflected testing on Emtal talc.  Just two months ago, for example, plaintiffs included excerpts from the document in their PowerPoint slides presented to the SDM.  *See* Ex. AA (Pls.' 2/23/18 Hr'g Presentation 36 (Slide 42)).  Plaintiffs' affirmative use of these testing results confirms there is no lack of awareness that the September 19, 1979 document reflects testing on Emtal talc.  Nor could there be given BASF's offered stipulation.







**CONCLUSION**

BASF respectfully requests that the Court reverse the SDM's May 3, 2018 order with respect to disclosure of the May 14, 1979 memorandum.  Because the loss of the attorney-client privilege is irreversible, BASF also requests that the Court conduct *ex parte* oral argument on this motion.  To the extent the Court affirms the compelled disclosure of the May 14, 1979 memorandum, that decision should be stayed to allow BASF time to consider further appellate options.  *See, e.g.*, *In re Chevron Corp.*, 650 F.3d 276, 286 (3d Cir. 2011);*United States v. Keystone Sanitation Co.*, 899 F. Supp. 206, 208-09 (M.D. Pa. 1995).

Date:  May 17, 2018                        Respectfully submitted,

                                           */s/ Justin T. Quinn*

Eugene F. Assaf, P.C. (*pro hac vice*)     Justin T. Quinn
Michael F. Williams                        Robinson Miller LLC
Daniel A. Bress (*pro hac vice*)           One Newark Center, 19th Floor
Peter A. Farrell (*pro hac vice*)          Newark, New Jersey 07102
KIRKLAND & ELLIS LLP                       Phone: (973) 690-5400
655 15th St., N.W.                         Facsimile: (973) 466-2760
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200