# EXHIBIT A

Case 2:11-cv-01754-BRM-AME   Document 521-3   Filed 05/17/18   Page 2 of 8 PageID: 30525

| USBC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Monday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Oral Argument | April 2, 2018 |

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
 2           CIVIL ACTION NO. 2:11-cv-01754-JLL-JAD

 3

     KIMBERLEE WILLIAMS, et al.,
 4            Plaintiffs,

 5         vs.

 6   BASF CATALYSTS, LLC, et al.,
              Defendants.
 7

 8                       ------------
                     Monday, April 2, 2018
 9                       ------------

10

               Stenographic Transcript of Oral
11   Argument, taken at the law offices of Ballard Spahr,
     1735 Market Street, 48th Floor, Philadelphia, PA,
12   before Robert J. Boccolini, Certified Court Reporter,
     on the above date, commencing at 2:00 p.m., there
13   being present:

14
             BALLARD SPAHR, LLP
15           Woodland Falls Corporate Park
             210 Lake Drive East, Suite 200
16           Cherry Hill, NJ  08002
             BY:  ROBERTO RIVERA-SOTO, ESQ.
17                SPECIAL MASTER
                  WILLIAM P. REILEY, ESQ.
18

19

20

21                       - - - - - -

22                       TATE & TATE
                    Certified Court Reporters
23                    The Ironstone Village
                    520 Stokes Road, Suite C-1
24                   Medford, New Jersey  08055
                  (856) 983-8484 - (800) 636-8283
25                      www.tate-tate.com
```

Case 2:11-cv-01754-BRM-AME   Document 521-3   Filed 05/17/18   Page 3 of 8 PageID: 30526

| USBC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Monday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Oral Argument | April 2, 2018 |

Page 158

1  who's involved? The in-house counsel, Hassett's
2  involved, the lawyers at Cahill Gordon are involved,
3  Mr. Dornbusch is involved.
4      And so what happens after this?
5      **SPECIAL MASTER:** Well, what would you
6  expect?
7      **MR. PLACITELLA:** That's what I would
8  expect, that they would have --
9      **SPECIAL MASTER:** That they have a piece
10 of litigation that came in that seems to track a
11 prior piece of litigation. I would think that the
12 lawyers would want to talk to each other in respect
13 of it.
14     **MR. PLACITELLA:** Absolutely. I agree
15 with you 100 percent.
16     **SPECIAL MASTER:** Okay. So why is this
17 proof of anything --
18     **MR. PLACITELLA:** Because --
19     **SPECIAL MASTER:** -- other than lawyers
20 acting like lawyers should be acting?
21     **MR. PLACITELLA:** Because this is what
22 happened. The case was quietly settled. They got
23 the Glassley evidence back from Elizabeth Quizone.
24     And from 2005 when this information was
25 found until it was produced to me in 2010, it was

Page 159

1  never produced again.
2      And the same letters went out to counsel
3  saying there was no evidence of asbestos in the Emtal
4  talc.
5      Summary judgment motions were granted
6  and made based upon at least in part on those
7  statements.
8      And at this point in time they can't say
9  we have no idea that that file existed anymore. They
10 had the file. They had discussions. They discussed
11 a strategy.
12     There is no I submit excuse from 2005
13 until 2010 for letters to have gone out to
14 plaintiffs' lawyers and briefs to be filed with
15 courts and interrogatories to be answered to say that
16 there's no evidence of asbestos in the talc.
17     **SPECIAL MASTER:** Okay. Tell me what is
18 the time period in your updated Appendix C between
19 the oldest and the most recent document that you are
20 requesting be subject to the crime fraud exception?
21     **MR. PLACITELLA:** The time period --
22 there are documents from the early 80s. And then
23 there are documents from --
24     **SPECIAL MASTER:** Early 80s when?
25     **MR. PLACITELLA:** I'm assuming 1982, '83.

Page 160

1      **SPECIAL MASTER:** Okay. Because
2  remember, we know that Westfall was settled in May --
3  or May or June of 1983. And as we talked earlier --
4      **MR. PLACITELLA:** Actually I made a
5  mistake.
6      **SPECIAL MASTER:** Okay.
7      **MR. PLACITELLA:** There are documents
8  that we've requested that go back to 1978 and 1979.
9  So I made a mistake.
10     **SPECIAL MASTER:** Okay. And what's your
11 basis for asking for those documents?
12     **MR. PLACITELLA:** Our basis is that they
13 are documents that we believe that were authored by
14 scientists, not lawyers.
15     One, we'll get into it later, we don't
16 think they're privileged at all. But if they are
17 privileged and they are about talc testing, which is
18 what they say, and they make the representation that
19 the documents did not exist, then that's fraud. If
20 they had the documents -- if they had documents in
21 their possession about talc testing --
22     **SPECIAL MASTER:** So you're saying
23 basically that based upon the representations made
24 later on, you're able to bootstrap back to the
25 documents that were made when there was no proof of

Page 161

1  any wrongdoing going on for their disclosure?
2      **MR. PLACITELLA:** I wouldn't phrase it
3  that way. What I would say is --
4      **SPECIAL MASTER:** Well, tell me how what
5  I just said is wrong? Whether you'd phrase it in a
6  different way or not, how is what I said wrong?
7      **MR. PLACITELLA:** Because if
8  representations were made that there was no evidence
9  of asbestos in the talc and they had evidence and
10 they're keeping that evidence -- and they're putting
11 that evidence behind a privilege, that's fraud.
12     **SPECIAL MASTER:** Do me a favor. Can you
13 repeat the question?
14     Mr. Placitella, pay attention to the
15 question, please.
16     **THE REPORTER:** So you're saying
17 basically that based upon the representations made
18 later on, you're able to bootstrap back to the
19 documents that were made when there was no proof of
20 any wrongdoing going on for their disclosure?
21     **SPECIAL MASTER:** Yes or no?
22     **MR. PLACITELLA:** Yes. But I have to
23 qualify it because --
24     **SPECIAL MASTER:** Okay. Qualify it. But
25 at least I've got an answer.

Case 2:11-cv-01754-BRM-AME   Document 521-3   Filed 05/17/18   Page 4 of 8 PageID: 30527

USBC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Monday
C.A. No. 2:11-cv-01754-JLL-JAD  Oral Argument  April 2, 2018

Page 162

1  **MR. PLACITELLA:** Yes, because I'm
2  putting aside whether they were doing anything wrong
3  with respect to their customers at the time.
4  **SPECIAL MASTER:** Well, you're not
5  representing customers in this case.
6  **MR. PLACITELLA:** Okay.
7  **SPECIAL MASTER:** You're not representing
8  customers in this case. Customers are not parties to
9  this case.
10  If you want to amend your complaint and
11  you can find yourself a representative customer
12  plaintiff, that's a different story altogether. I
13  doubt you're going to get leave to do that at this
14  point.
15  **MR. PLACITELLA:** I'm sure I wouldn't.
16  **SPECIAL MASTER:** But be that as it may,
17  I'm pretty sure you wouldn't either. But I'm not
18  telling you what to do.
19  So we're talking about the people who
20  you do represent and the class of people that they
21  would like to be representative of. And those are
22  all folks who had claims that were either not
23  brought, were dismissed, or were settled for token
24  amounts based upon the representations made.
25  And you would agree with me that the

Page 163

1  representations up until the settlement of the
2  Westfall case were accurate, they did produce the
3  information that they had?
4  **MR. PLACITELLA:** In the context of
5  litigation.
6  **SPECIAL MASTER:** In the context of
7  litigation. That it was only after the Westfall case
8  was settled that someone decided that they needed to
9  put all this under a very -- in a very deep, dark
10  hole and not produce it.
11  So I don't understand your qualification
12  to the answer to my question.
13  **MR. PLACITELLA:** I'll answer it more --
14  the answer is -- I believe the answer is yes, that I
15  do not have information that I can think of as I'm
16  sitting here right now.
17  **SPECIAL MASTER:** That's the only time
18  that matters.
19  **MR. PLACITELLA:** In the context of what
20  happened in Westfall, they were withholding
21  information. And the only reason I say that --
22  **SPECIAL MASTER:** No one's made any claim
23  that information was withheld in Westfall, have they?
24  You have haven't. Westfall hasn't. No
25  one's claimed that information was withheld in the

Page 164

1  Westfall case.
2  **MR. PLACITELLA:** I'm not aware if
3  that -- but the problem is -- the following problem
4  exists, however, because so much of what was in the
5  Westfall case doesn't exist anymore, it's hard to
6  give an unqualified answer to that, because so much
7  of the file is gone, because so many of the
8  scientific exhibits that are addressed in the
9  depositions are gone, because some of the exhibits
10  were binders full of exhibits without a lot of
11  delineation, it's hard to say whether they produced
12  everything.
13  As I sit here, I'm not aware of any
14  affirmative act by the lawyers in the Westfall case
15  to withhold evidence.
16  **SPECIAL MASTER:** Let me ask you that
17  question more directly. Do you have anything to
18  support the notion that anything was improperly
19  withheld from disclosure in the Westfall case? Not
20  surmise. Not I have an itch that needs to be
21  scratched.
22  Do you have something you can put on the
23  table that tells me that something untoward occurred
24  in the Westfall case? My sense is no, but...
25  **MR. PLACITELLA:** I want to tell you why

Page 165

1  I hedge on -- I hedge with the response. Let me
2  explain it to you.
3  **SPECIAL MASTER:** Either you have it or
4  you don't.
5  **MR. PLACITELLA:** In the Hemstock
6  deposition, the lawyer stated to the plaintiff's
7  lawyer: You have everything that exists. We've
8  produced everything to you that's called for in the
9  subpoena.
10  **SPECIAL MASTER:** I'm not following what
11  you just said. In the Hemstock deposition?
12  **MR. PLACITELLA:** Yeah. What happened
13  was Hemstock -- there was a subpoena issued for the
14  Hemstock deposition.
15  **SPECIAL MASTER:** In which case?
16  **MR. PLACITELLA:** In the Westfall case.
17  **SPECIAL MASTER:** In Westfall, okay.
18  **MR. PLACITELLA:** And it called for all
19  testing related data. Okay.
20  And in the deposition, the lawyer for
21  Engelhard made a statement. The statement was: We
22  have produced to you all relevant data. You have --
23  he basically said you have everything.
24  **SPECIAL MASTER:** Do you have any reason
25  to believe that was untrue?

Case 2:11-cv-01754-BRM-AME   Document 521-3   Filed 05/17/18   Page 5 of 8 PageID: 30528

| USBC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Monday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Oral Argument | April 2, 2018 |

Page 186

1  non-privileged documents to you.
2      MR. PLACITELLA: None of which indicate
3  that they are test results from the test of the mine
4  samples at Georgia Tech.
5      SPECIAL MASTER: Okay.
6      MR. PLACITELLA: Okay. So if you look
7  at the very last document that they rely upon, okay,
8  this is the document that Mr. Farrell states -- I'll
9  blow it up so you don't have to -- this is the
10 document that Mr. Farrell states contains the record
11 of the Georgia Tech samples from 1979.
12     Georgia Tech sampled 38 rock samples.
13 38, okay.
14     If you look on this first page, there is
15 no reference whatsoever to samples from the mine.
16 It's just a general key. And it attaches a chart.
17     SPECIAL MASTER: Okay.
18     MR. PLACITELLA: Okay. So you go to
19 the next page. This is the entire document. It's
20 entitled asbestos analysis.
21     SPECIAL MASTER: Okay.
22     MR. PLACITELLA: And it has codes for
23 results and codes for samples. There is no
24 reference here to anything that was done at the mine.
25 There are some 68 samples here.

Page 187

1      Assuming that what Mr. Farrell says is
2  correct that somehow the samples are contained
3  herein, there's no way for me to prove this in a
4  trial.
5      SPECIAL MASTER: Go back to the prior
6  document.
7      Is Mr. Hubbard still with us?
8      MR. PLACITELLA: I have no idea.
9      SPECIAL MASTER: Well, have you asked?
10     MR. PLACITELLA: No. I have no idea.
11 All I know is it's been represented that these are
12 the -- these include the tests that were done on the
13 ore.
14     SPECIAL MASTER: I understand that. But
15 you're challenging that. And the way for you to
16 challenge that would be for you to take the
17 deposition of Mr. Hubbard to find out if he's still
18 around and find out from the next page --
19     MR. PLACITELLA: Here's the problem --
20     SPECIAL MASTER: -- which ones of them
21 are -- if he knows or if he's kept records, which
22 ones of them are from the Johnson mine and to tell
23 you what they mean. That's what I would do.
24     I mean, if that's the source and the
25 problem is what is this guy saying, well, go to the

Page 188

1  source.
2      And if he doesn't have it, then go back
3  to Georgia Tech and say: Well, do you have the
4  backup documentation to the schedule of samples
5  that's on the next page?
6      MR. PLACITELLA: Well, they don't, your
7  Honor, because you see where it says that micrographs
8  were taken of samples which showed more than trace
9  fibers and he -- they turned them over. Those
10 samples to -- those micrographs don't exist. That's
11 the backup data.
12     SPECIAL MASTER: Where does it say there
13 that the micrographs have been turned over? Is that
14 at the top?
15     MR. PLACITELLA: At long last here's the
16 data and micrographs of the last three sets of tests
17 of asbestos counts.
18     SPECIAL MASTER: Does that mean that
19 they didn't keep copies of the micrographs?
20     MR. PLACITELLA: I don't know. They say
21 they don't have anything, so I'm assuming the answer
22 is no.
23     SPECIAL MASTER: No, no, not them.
24 Georgia Tech.
25     MR. PLACITELLA: Georgia Tech. They

Page 189

1  said they asked Georgia Tech. Georgia Tech doesn't
2  have anything.
3      So they say they gave the micrographs to
4  Engelhard.
5      Now, if you look at -- they say that
6  these are the results. How am I going to prove this
7  in a trial that these are the results? I can't.
8  Right. There are --
9      SPECIAL MASTER: Well, how are they
10 going to prove that they are the results?
11     MR. PLACITELLA: That's a good question.
12 That's why I'm saying -- that's why I'm saying --
13     SPECIAL MASTER: I'm sure they have an
14 idea.
15     MR. PLACITELLA: That's why I'm
16 saying --
17     SPECIAL MASTER: Well, let me change
18 that. I hope you have an idea.
19     MR. FARRELL: I'm confused myself,
20 because if all the request is for a stipulation that
21 38 rock samples were in the document, I'll stipulate
22 that now and he can use that to prove it at trial.
23     MR. PLACITELLA: I don't want a
24 stipulation. I want the backup. Where did the
25 samples come from?

Case 2:11-cv-01754-BRM-AME   Document 521-3   Filed 05/17/18   Page 6 of 8 PageID: 30529

| USBC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Monday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Oral Argument | April 2, 2018 |

Page 190

1  **SPECIAL MASTER:** You know, you don't --
2  **MR. PLACITELLA:** No, no. It's
3  important. It's important.
4  **SPECIAL MASTER:** I understand it's
5  important. But you don't get to play both sides.
6  Okay.
7  If complained complaint is I don't know
8  what's in here and counsel is willing to stipulate
9  that what you're looking for is in there --
10  **MR. PLACITELLA:** How do they know that,
11  your Honor?
12  **SPECIAL MASTER:** Well, I don't know.
13  They may have a Ouija board that they consult that
14  tells them these things. I don't know that.
15  **MR. PLACITELLA:** Well, if they're
16  consulting something that's not in the record, I have
17  a right to know that.
18  **SPECIAL MASTER:** Well, isn't that a
19  conversation you should be having with Mr. Farrell
20  and not with me, who seems to be, all things
21  considered, a pretty nice guy. Notice I qualified
22  that, okay.
23  **MR. FARRELL:** I wouldn't expect anything
24  else.
25  **SPECIAL MASTER:** Okay. So I mean, I

Page 191

1  don't --
2  **MR. PLACITELLA:** Here's where we are.
3  You said what evidence is there of missing material
4  evidence?
5  Right now we know the only study that
6  was ever done by Engelhard of its own mine, the only
7  study ever done initiated by Engelhard of its own
8  mine by virtue of its own scientist's testimony, we
9  don't have the results of that study.
10  **SPECIAL MASTER:** No, you have the
11  results. You just don't have the backup on it.
12  **MR. PLACITELLA:** No. We don't know from
13  looking at this document where the samples were taken
14  from.
15  **SPECIAL MASTER:** No, Mr. Placitella.
16  You have received the representation of reputable
17  counsel that that information is included in this
18  document.
19  Now, you can say: I'd like to see the
20  backup, and if you don't have the backup, I have a
21  problem with it.
22  But you can't just discard the
23  representation of counsel. It means something.
24  **MR. PLACITELLA:** It does, your Honor.
25  **SPECIAL MASTER:** It certainly does to

Page 192

1  me.
2  **MR. PLACITELLA:** But that's kind of my
3  point. If the representation of counsel is that the
4  38 are in the 68, that's all well and good. That
5  still doesn't --
6  **SPECIAL MASTER:** Which he's willing to
7  stipulate today.
8  **MR. PLACITELLA:** That still doesn't tell
9  us where the samples from, what level of the mine,
10  was it in the main ore body, was it on the side. It
11  all matters. It's very important information to
12  know.
13  **SPECIAL MASTER:** But if they're unable
14  to give you that kind of detail, then it strikes me
15  that that, to use a well hackneyed phrase, that goes
16  to the weight of the evidence, not to its
17  admissibility.
18  **MR. PLACITELLA:** But for the fact that
19  there were maps of the mine indicating where the
20  samples were taken from. They were identified in
21  Mr. Gale's deposition. And they no longer exist.
22  **SPECIAL MASTER:** But if they no longer
23  exist, I can't un-ring that bell for you and I can't
24  say to you that because they no longer exist in the
25  absence of you demonstrating an intentional act to

Page 193

1  deceive, that you are now entitled to a negative
2  horribleness in respect of it.
3  **MR. PLACITELLA:** But we have 20 years of
4  an intentional act to deceive, your Honor. We have
5  them telling courts and litigants that there is no
6  evidence other than the Ashton affidavit.
7  **SPECIAL MASTER:** Okay. We're retreading
8  well trod land. And I thought I heard you say --
9  might be wishful thinking on my part -- that that was
10  your final point.
11  **MR. PLACITELLA:** The rest we've gone
12  through. It's in our brief. They actually admit in
13  their briefs about what exhibits are missing. They
14  do say --
15  **SPECIAL MASTER:** Mr. Placitella, you
16  want to take a moment to talk to Mr. Pratter before
17  you sum up? I'm happy to allow you that. I mean, if
18  you want to step outside, we'll stay right here.
19  **MR. PRATTER:** Yeah, I would like to do
20  that.
21  **SPECIAL MASTER:** Mr. Pratter, would like
22  it, so let's do that.
23  **MR. PLACITELLA:** That's fine.
24  (Break.)
25  **SPECIAL MASTER:** Mr. Placitella.

Case 2:11-cv-01754-BRM-AME   Document 521-3   Filed 05/17/18   Page 7 of 8 PageID: 30530

| USBC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Monday |
| --- | --- | --- |
| C.A. No. 2:11-cv-01754-JLL-JAD | Oral Argument | April 2, 2018 |

Page 198

1  factual points because there were a couple of things
2  that Mr. Placitella said that I wanted to clarify.
3  And I do want to preface --
4          SPECIAL MASTER: Something that
5  plaintiffs said.
6          MR. FARRELL: Thank you. I was just
7  going to say it wasn't meant to be taken any other
8  way than trying to clarify the record.
9          Let me start where he finished on the
10 study of the mine and the 38 samples.
11         First, I think plaintiffs submitted that
12 it was the only test ever done of the mine. It's
13 just not correct.
14         SPECIAL MASTER: I know that. I've put
15 that down to rhetoric.
16         MR. FARRELL: Fair enough. And in
17 fact, the other point I was going make is there are
18 multiple documents from 1979 alone and that study,
19 including documents authored by Peter Gale, Dr.
20 Hemstock, Mr. Triglia that have been produced to the
21 plaintiffs because they're not privileged.
22         SPECIAL MASTER: We know that the U. S.
23 Geological Survey conducted a survey of the mine.
24         MR. FARRELL: Exactly.
25         SPECIAL MASTER: We also know that

Page 199

1  somebody else went and get some samples from the
2  outside of the mine. Whoever that was I don't know.
3  I don't think that was the same fellow as the
4  U.S.G.S. fellow.
5          But the record is what the record is.
6  And as I think everyone is beginning to realize, I do
7  read this stuff.
8          MR. FARRELL: You do, your Honor.
9          SPECIAL MASTER: And I tend to retain
10 some of it, not all of if.
11         MR. FARRELL: Point 2 I wanted to make
12 about the 38 samples, I would ask your Honor to look
13 back at plaintiffs' slides from the February 23rd
14 hearing, because today I heard them argue that they
15 have no way of knowing whether those 38 -- the
16 document that was up on the screen, the September
17 1979 Georgia Tech document, whether the test results
18 in there were related to the mine and Emtal talc.
19         Well, slide 42 from plaintiffs'
20 presentation is that exact document called out in
21 plaintiffs' deck with the very test results that
22 correspond to the 1979 study highlighted with the
23 heading saying millions of asbestos fibers were
24 confirmed.
25         I point this out only to say there's a

Page 200

1  lot of inconsistencies and internal contradictions in
2  the arguments being submitted to the Court. It can't
3  both be that that document proves there were millions
4  of fibers in Emtal talc, but plaintiffs also have no
5  idea whether that test data relates to Emtal talc.
6          Point 3 on the 38 samples, you heard
7  argument about the micrographs that are referenced in
8  the document.
9          And I think this highlights a critical
10 point your Honor made, which is about trying to
11 connect the dots, which I would put another way,
12 being having actual foundation for the sort of
13 evidentiary conclusions the Court would have to
14 reach.
15         SPECIAL MASTER: See, you're a lot
16 fancier than I am. I like to stick with connecting
17 the dots.
18         MR. FARRELL: Let us assume that there
19 were micrographs attached to that document from
20 September of 1979. Were they discarded on October
21 1st of 1979? Because if they were --
22         SPECIAL MASTER: Well, if I recall your
23 brief, you had an illustration of a micrograph that,
24 unless I'm Jackson Pollock, doesn't tell me anything
25 because it's an abstract painting as far as I'm

Page 201

1  concerned.
2          MR. FARRELL: That too is correct, your
3  Honor.
4          SPECIAL MASTER: Okay.
5          MR. FARRELL: The point here is the lack
6  of evidentiary foundation from the plaintiffs showing
7  that things like missing photomicrographs, to the
8  extent they're even missing at all, were still in
9  existence at the time there was a duty to preserve.
10         SPECIAL MASTER: But that's really not
11 their point.
12         The point is a cumulative one, because I
13 don't think that the plaintiffs are saying if you
14 look at this, this proves the case.
15         I think what plaintiffs are saying, and
16 correct me if I'm wrong, is that if you look at the
17 aggregate of all of these things, there is enough
18 smoke here to conclude that there has to be fire
19 somewhere.
20         And if you conclude that there has to be
21 fire somewhere, we have satisfied our prima facie
22 burden, and you really ought to look at the actual
23 documents and determine if they are privileged.
24         Now, that is a grotesque simplification
25 of what plaintiffs are arguing. But that's what I

Case 2:11-cv-01754-BRM-AME   Document 521-3   Filed 05/17/18   Page 8 of 8 PageID: 30531

| USBC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Monday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Oral Argument | April 2, 2018 |

Page 202

1  understand them to say.
2      **MR. FARRELL:** To continue the Court's
3  analogy, the problem is that for much of the facts
4  cited to your Honor, there isn't even smoke.
5      That is the point I was trying to make
6  is that let us say that the photomicrographs from a
7  document in 1979 are part of the proof, because I
8  agree with you it's not the one thing they point to,
9  how is it smoke suggesting fire if the
10 photomicrographs have absolutely no evidentiary value
11 with respect to the spoliation and/or crime fraud?
12     There's no evidence in the record that
13 those documents existed at a time there was a duty to
14 preserve.
15     Plaintiffs certainly haven't argued
16 there was a duty to preserve as early as 1979.
17     This also I think takes us to the
18 second --
19     **SPECIAL MASTER:** No. But what they're
20 saying is that by 1983 -- actually before then,
21 really 1982, when the Westfall case was filed, that
22 triggered your obligation to preserve. And your
23 obligation to preserve has continued pretty much
24 unabated from then until now. That is what I think
25 they are saying.

Page 203

1      And when you're talking about 1982 and
2  you're talking about test results in 1979, you're
3  talking about a three year period of time that it's
4  entirely reasonable to expect that Engelhard would
5  have retained those test results during that period,
6  and once the obligation to preserve ripened, once the
7  Westfall case was filed, you should have kept all
8  that stuff.
9      Now, are there explanations for why it
10 wasn't kept? I'm certain that from among all these
11 papers here there are a lot of those explanations.
12     But that's really the crux of what I
13 hear plaintiffs saying.
14     Bearing in mind that, you know, I'm very
15 much aware that plaintiffs have the burden of
16 demonstrating that the crime fraud exception in the
17 statute and the rule applies here, they have to do
18 it -- they have to satisfy that burden on a prima
19 facie basis. That's their burden of proof.
20     I think we all recognize that prima
21 facie is about as low a burden of proof as one can
22 ever come up with.
23     So the question is, is there enough here
24 to satisfy that burden? And that's the one trouble
25 that I'm having.

Page 204

1      Candidly, I will say to you that I've
2  very reluctantly come to the conclusion that I don't
3  know enough to know. And it tells me that maybe
4  there is some worth to the science day that you guys
5  keep wanting to have.
6      I will tell you that it was my now
7  unreasonable expectation to have a decision out
8  before next Monday. But I'm pretty sure I'm not
9  going to be able to do that. And I'm pretty sure
10 I'm not going to be able to do that because of my
11 ever-growing concern that I just don't know enough to
12 know that when plaintiffs say look at this report,
13 this report says there was asbestos in the talc and
14 they should have reported that as a fact to the world
15 at large, and defendants say look at that same
16 report, that does not prove that there was asbestos
17 in the talc and therefore our representations were
18 all correct, that I know enough from a scientific
19 point of view to be able to figure out who's right
20 and who's wrong.
21     But anyway, I didn't mean to interrupt
22 you. I'm going to come back to that later on.
23     **MR. FARRELL:** Not at all. Let me make
24 two other brief points just in the interest of time.
25     **SPECIAL MASTER:** Take as much time as

Page 205

1  you want. But I'll be home by nine o'clock, so...
2      **MR. FARRELL:** You had asked Mr.
3  Placitella a pretty straightforward question earlier,
4  which is --
5      **SPECIAL MASTER:** Hopefully all my
6  questions are straightforward.
7      **MR. FARRELL:** Well, this one was
8  particularly straightforward.
9      **SPECIAL MASTER:** Okay.
10     **MR. FARRELL:** Do you have any evidence
11 that information, documents were improperly withheld
12 in the Westfall case?
13     And you first got a yes and then you got
14 a -- with a caveat and so on and so forth. And then
15 I heard him say -- I heard plaintiff say there's
16 nothing in the record showing that there was a basis
17 for withholding certain documents.
18     And this is the point I wanted to
19 clarify. The very first page of Dr. Hemstock's
20 March 1983 deposition begins with a statement from
21 Engelhard's counsel. And on the first page of the
22 deposition he explains: We have withheld very, very
23 few documents which we consider privileged. Those
24 are documents which are between counsel and the
25 client and at sometime later we will provide you with

52 (Pages 202 to 205)