# EXHIBIT AA

# CRIME FRAUD HEARING

Case 2:11-cv-01754-BRM-AME   Document 521-29   Filed 05/17/18   Page 3 of 130 PageID: 43552

Is there "a **reasonable basis** to suspect that the privilege holder (Engelhard/BASF) was committing or intending to commit a crime or fraud"**\*\*** in violation of 2A:84A-20(2)?

**\*\***_In Re Grand Jury,_ 705 F.3d 133 (3d. Cir. 2012)

# N.J. Substantive Crime Fraud Law Applies

"Rule 501, as it applies to federal civil cases, incorporates the doctrine of *Erie R.R. Co. v. Tompkins*, and requires deference to any applicable state law governing privileges."

"In this diversity case [Rule] 501 refers the district court, on questions of privilege, to state law." *In re Grand Jury Investigation*, 918 F.2d 374, 379 n.6 (3d Cir. 1990)  *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 964 (3d Cir. 1998).

*Newman v. GM*, No. 02-135, at pp. 60 (D.N.J. 2005) applying *NJSA* 2A:84A-20 and citing *Fellerman v. Bradley* & *Jadlowski v. OCF*

3

# What Standard Applies For Crime Fraud In N.J.?

## 2A:84A-20. Lawyer-client privilege.

(2) Exceptions. Such privilege shall not extend (a) to a **communication in the course** of legal service sought or **obtained** in aid of the commission of a crime or a fraud.

4

# *Fellerman v. Bradley*



**"Confederating with clients to allow court and counsel to labor under a misapprehension as to the true state of affairs"** is a fraud that comes within the bounds of the exception.†

"Acts constituting fraud are as broad and as varied as the human mind can invent. Deception and deceit in any form universally connote fraud. **Public policy demands that the 'fraud' exception to the attorney-client privilege** as used in in Evidence Rule 26 [now N.J.R.E. 504] **be given the broadest interpretation."**

† Fellerman v. Bradley, 99 N.J. 493, 503 (1985) (quoting In re Callan, 122 N.J. Super. 479, 496 (Ch.Div. 1973))

5

Case 2:11-cv-01256-RBM-AME  Document 521-29  Filed 05/17/16  Page 7 of 130 PageID:
[illegible]

**"The burden is not a particularly heavy one"**

**\*\*In Re Grand Jury**, 705 F.3d 133 (3d Cir. 2012)

Case 7:11-cv-01784-RDM-AME Document E21-29 Filed 05/17/18 Page 8 of 130 PageID #1084

**Not required** to introduce evidence sufficient to **support a verdict** of crime or fraud.

**Not required** even to show that it is **more likely than not** that the crime or fraud occurred.

*In re Grand Jury*, 705 F.3d at 152–54 (citing *Zolin*, 491 U.S. at 574–75)

7

1. **New Jersey Superior Court Judges**

2. **Former Appellate Division Judge**

3. **Former New Jersey Supreme Court Justice.**





The crime-fraud exception applies to "communications in the course of legal service sought or obtained in aid of the commission of a crime or a fraud." N.J.R.E. 504 (2). This, of course, would include communications establishing an intentional cover-up or concealment. See Ocean Spray Cranberries, Inc. v. Holt Cargo Systems Inc., 345 N.J. Super. 515, 521 (Law Div. 2000). Here, during the hearing on plaintiffs' motion to amend, **Judge McCormick specifically noted there was evidence that documents reflecting asbestos content in EMTAL's talc were not produced over a period of twenty years and, as a result, plaintiffs' cases were dismissed**. In determining that plaintiff had pled a prima facie case of fraudulent concealment, **Judge McCormick intimated that plaintiffs should be able to pursue discovery as to why those documents had been concealed and not produced over the twenty-year period.**

# Ocean Spray





"Where an attorney-client privileged memo contains **evidence or suggestions of false information**, the crime/fraud exception applies. *Nat. Utility Service, Inc. v. Sunshine Biscuits, Inc.*, 301 N.J. Super. 610, 618,App. Div. 1997)."†

"Its **campaign to hide the** truth includes Holt's **refusal to disclose the truth** and its **continued denial of any knowledge** of cranberry spoilage at its warehouse, in both interrogatory answers and the certification of its in house counsel. The "fraud exception to the attorney–client privilege is clearly established."†

† *Ocean Spray Cranberries, Inc. v. Holt Cargo Systems, Inc.*, 345 N.J. Super. 515, 525-526 (Law Div. 2000)

10

# Jadlowski v OCF





"In the case before us, [Owen-Corning's in-house attorney] answered later interrogatories as a representative of the corporation. **These later answers may have served as evidence of a fraud by Owens-Corning.** One way to prove plaintiff's claim of fraud was to **show that the corporation indeed had contrary information** six years before the interrogatory answers were rendered."

*Jadlowski v. Owens-Corning Fiberglas Corp.*, 661 A.2d 814 (N.J. App. Div. 1995), *certif. denied*, 670 A.2d 1066 (N.J. 1996).

# Judge Linares found BASF had a duty to preserve evidence

[T]he Court finds that **Defendants had a duty to preserve**. At issue is whether Defendants had a "legal obligation to disclose evidence in connection with an *existing or pending* litigation" at the time of the alleged spoliation. *Rosenblit*, 166 N.J. at 406 (emphasis added). Cahill and Halket, in essence, argue that the fraudulent concealment claim fails because the evidence was allegedly destroyed at an opportune time: after the "existing" *Westfall* case settled but prior to "pending" (*i.e.*, imminent) litigation. In the Court's view, this misses the mark. The Court declines to delineate the precise contours of the duty to preserve as it existed in 1984, but finds that: **in 1984, a party had a duty to preserve evidence** when it was relevant in a prior lawsuit, and where it was reasonably foreseeable that the evidence would be relevant to anticipated lawsuits of nearly identical subject ."

*Williams v. BASF Catalysts LLC* (ECF 190), *slip. op. at 12 –13 (D.N.J. Apr. 5, 2016)*

12

# All of BASF's responses fail to rebut Plaintiffs' case.

1. **No documents at issue identified.**

   *BASF wrong because:*

   - **Plaintiffs' CFE motion asked the Court to make the prima facie finding based upon the public record necessary to conduct an** *in camera* **review. No documents were needed to establish the prima facie case requisite given the public record evidence of BASF's and Cahill's fraud.**

   - **Plaintiff's opening motion brief identified withheld documents at pp.37: all of the transcripts and documents produced or developed before Justice Stein in the** *Sampson* **case.** *BASF is fully aware of these documents.*

   - **Plaintiffs also asked for documents withheld in Cahill Compilation (Ex. 3).**

   - **Plaintiffs provided a list of documents to clarify what those documents were (Appendix C).**

## 2. "In furtherance" standard does not apply.

### *BASF wrong because*:

- **Not the applicable standard under New Jersey law.**

- **NJ statute provides the standard: Communications in the course of legal services in aid of clients' commission of a fraud.**

  - **Phrase "in furtherance of" does not appear in New Jersey's crime-fraud statute's text.**

  - **New Jersey precedent does not mandate "in furtherance" nexus in determining whether a particular document should be released after in camera review under the crime-fraud exception.**

# 5. No evidence to support the CFE

*BASF wrong because the public evidentiary record is clear*:

- Surviving testing records in BASF's possession it now touts **show asbestos was found in numerous samples and BASF and Cahill knew this**.

- BASF's own scientists – Hemstock, Triglia and Gale – in 1983 testified under oath **in the presence of BASF's attorneys** that asbestos fibers were found in Emtal talc.

- Testimony of Swanson and Hemstock and analysis of *Westfall* transcripts **establish internal documents discarded** pursuant to the March 7, 1984 Hemstock "Purge" Memo.

- Copies of Hemstock, Triglia and Gale *Westfall* **transcripts suppressed**.

# What Must The Court Ultimately Decide?

Is there "a **reasonable basis** to suspect  that the privilege holder ( Engelhard/BASF) was committing or intending to commit a crime or fraud"** in violation of **2A:84A-20(2)**?

**_In Re Grand Jury,_ 705 F.3d 133 (3d Cir. 2012)**

22

Case 4:24-cv-00698-SDJ-BD   Document 108-2   Filed 06/17/25   Page 18 of 130 PageID #: 31028

Have the plaintiffs presented "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies"?

*In Re Grand Jury,* 745 F.3d at 689

# What Crime Or Fraud Did BASF Commit?

**Misrepresenting to Litigants no evidence of asbestos in Emtal**

**Misrepresenting to Courts no evidence of asbestos in Emtal**

**Misrepresenting to Courts and Litigants no prior cases or testimony relating to Emtal**

**Securing dismissals based upon misrepresentations**

**Wrongful destruction and withholding of evidence**

**BASF**
Crime-Fraud

24

# Who Was Involved In The Fraud?



Engelhard Corporation



Cahill Gordon & Reindel



BASF Catalysts LLC

# What Does Your Honor <u>NOT</u> Have To Decide?

**Who is correct on the science of whether Emtal testing was state of the art?**

> Defendants now admit evidence of asbestos was not disclosed.

# What Evidence Supports Prima Facie Evidence of Crime Fraud?

The strategy to misrepresent information about the asbestos in Emtal originated With Engelhard

Engelhard had repeated analysis finding asbestos in Emtal talc

Litigation lies and incriminating evidence concealed

Securing dismissals based upon misrepresentations

Wrongful destruction and withholding of documents

**BASF**

Crime-Fraud

# What Misrepresentations Were Made to Customers, Courts & Litigants?

Beginning no later than 1972, customers were told **no trace** of asbestos in Emtal talc

Courts and Litigants told Emtal talc did not contain **any** asbestos

Courts and Litigants told there was **no evidence** of asbestos in Emtal talc

Courts and Litigants told **no Engelhard employee ever testified** concerning asbestos in Emtal talc

Courts and Litigants told of prior fraudulent dismissals as precedent to obtain even further dismissals



Crime-Fraud
MISREPRESENTATIONS

28

# The Strategy to Misrepresent Information About The Asbestos In Emtal Originated With <u>Engelhard</u>

# Engelhard Purchased the Johnson Mine in 1967



Acquisition of the Johnson, Vermont talc operation of Eastern Magnesia Talc Company, Inc. by Engelhard Minerals & Chemicals Corporation became effective September 30, 1967. The Johnson plant will be operated by Eastern Magnesia Talc Company under the supervision of Minerals & Chemicals Division ₹ Menlo Park, Edison, New Jersey.

Johnson Mine and Mill

# Customers Made Clear They Did Not Want Asbestos Contaminated Talc

January 18, 1973

Eastern Magnesium Talc Company
206 Bank Street
Johnson, Vermont 05656

Gentlemen:

The following talc compounds produced by your concern are used in some of our plants:  #40 Talc, #41 Talc and Grade 44 Talc and Emtal XT-1.  Recent publicity has called attention to the hazard of exposure to fibrous forms of talc. We have received several inquiries as to whether the talc used in our plants is of the fibrous type and in particular whether it contains asbestos fibers.

So that we may properly answer these inquiries and ensure that we are taking the necessary control measures if exposure to fibrous type talc is occurring, we would appreciate receiving information on the fibrous content of the above talc.

Sincerely,

L. F. Dieringer
Corporate Industrial Hygienist

LFD:rg

300006

BASF_SAMPSON000012417

## 1970 to 1980s

**"Recent publicity has called attention to the hazard of exposure to fibrous forms of talc. We have received several inquiries as to whether the talc used in our plants …contains asbestos fibers."**

*See* examples as Ex. 7

31

# Customers Made Clear They Did Not Want Asbestos Contaminated Talc



**GE 1973**

**BF GOODRICH 1978**

**GAF 1980**

*See* **examples as Ex. 7**



**Technical Data**

EVALUATION OF OUR EMTAL® TALCS FOR ASBESTOS

"The commercial product grades (Emtal® platy tales) shipped from the Johnson, Vermont plant have been examined by the most appropriate and sensitive mineralogical diagnostic methods available; **and it can be stated with confidence that <u>no trace of any of the asbestos minerals</u>**; namely, Chrysotile; Amosite, Anthophylite, Tremolite, ActInolite, or Crocidolite, and be detected by standard x-ray powder diffraction methods or by Scanning Electron Microscope methods at the highest magnification."

*See* examples as Ex. 8–9

33

# Entire Industries Were Promised Emtal Was Asbestos Free



Prepared for Presentation
To The Autobody Filler
Manufacturer's Association

SAFE USE OF EMTAL® TALCS IN AUTOBODY FILLER

We at Engelhard are pleased to report that the platy, asbestos-free Emtal® Talcs can be used safely if the controls and precautions necessary with any "nuisance dust" are observed.



11/28/1978

34

## Engelhard Representations to Customers

**"The commercial product grades (the EMTALS) shipped from the Johnson, Vermont plant have been examined by the <span style="color:red">most</span> appropriate and <span style="color:red">sensitive mineralogical diagnostic methods available and it can be stated</span> <span style="color:red">With confidence that <u>no trace</u> of any of the asbestos minerals</span>; namely, Chrysotile, Amosite, Anthophyllite, Tremolite, Actinolite or Crocidolite can be detected by standard X-ray powder diffraction methods or by Scanning Electron Microscope methods at the highest magnification."**



MSDS 1978

*See* examples as Ex. 8–9

# Engelhard Received Repeated Analysis Finding Asbestos in Emtal Talc

# Engelhard's Insurance Carriers Found Asbestos in Emtal



**1972**

Sample  #206  =  0    fibres  per  c.c.
Sample  #109  =  3.5  fibres  per  c.c.
Sample  #113  =  0.9  fibres  per  c.c.
Sample  #110  =  1.1  fibres  per  c.c.

*See* Ex. 4(a)

37

# Asbestos Was Found in the Waste Rock from the Johnson Mine

RESULTS OF TESTS ON EMTAL MINE WASTE ROCK SAMPLES

| Sample No. | 73-J-1 | 73-J-2 | 73-J-3 | 73-J-4 |
|---|---|---|---|---|
| Sampling Site | West Side "A" | West | East | East Side "A" |
| Identification | Chlorite-Schist | Footwall | Hanging-Wall | Chlorite-Schist |
| X-Ray Analysis | Chlorite | Chlorite | Chlorite+ some quartz | Chlorite |
| % Free Silica | 0.26 | 0.10 | 3.25 | 0.18 |
| No. Asbestos Fibers counted* | 3 | 4 | 3 | 8 |

**06/12/1973**

3/16/83 Hemstock Dep. Ex. 3

38

# Asbestos Was Found in Air Samples

Notes and Specific Instructions:

Respirable Dust Samples.

Sample No.: The samples were received on millipor filters in cassettes. The millipore filter was cut in half, one half was forwarded to Emil Triglia for shipment to MC crone.

From the second half of the filter, two slides were prepared and evaluated XXX by the NIOSH procedure, counting particles with a 3 to 1 aspect ratio.

Emil Triglia stated that these samples were collected in five minutes using a flow rate of 1.4 1/min. This amounts to 7,000 cc of air beeing used to collect the sample on a 37 mm filter.

The particles (3 to 1) counted and calculated for these samples are as follows:

| Sample No. | particles with ratio of 3/1 / filter | Partides with ratio 3/1/cc a |
|------------|--------------------------------------|------------------------------|
| Emt 1 | 3292 | 0.5 |
| Emt 2 | 16,460 | 2.3 |

**02/03/1977**

Case 2:11-cv-01754-PBM-AME   Document 631-29   Filed 05/17/19   Page 35 of 130 PageID: 5865

**Tremolite**
**09/05/1972**

**Fibrous tremolite found**
**05/18/1977**

Ex. 4(c)

BASF00028

40

# Multiple Forms of Asbestos Were Confirmed

Samples I and J were examined by the OSHA Phase Contrast method for fiber counts. **Sample I showed a fiber count of 7.08 fibers/cc and sample J 10.2 fibers/cc.** The samples were then examined by dispersion staining. **Samples I and J both showed the presence of chrysotile asbestos in trace quantities.** Microscopical examination revealed the fibers detected by phase contrast were actually glass fibers.

Using selected area diffraction and transmission electron microscopy we have analyzed a series of three bulk mineral samples. These three samples were designated as E-68-79, E-69-79 and E-70-79. Two of these samples were found to be extremely clean and free from asbesti-form minerals by our analysis. The third, however, **Sample E-70-79, contained extremely high levels of chrysotile asbestos, probably in the range of 0.10% to 1% of the sample.**

The method of analysis was to take approximately 20 mg and disperse it in 10 cc of isopropyl alcohol and then ultrasonerate the mixture. The larger and heavier particles in general settle at the bottom and the extremely fine particles, such as the asbestos are concentrated in the suspension of the liquid.

**The results of our analysis indicated that in counting 10 grid squares we found 96 fibers or approximately 9.6 fibers per grid square opening.**

**Chrysotile 3/18/1977**

**Chrysotile 4/30/1979**

BASF00053

Ex. 4(d)

41



**Millions of Chrysotile fibers found 9/19/1979**

ASBESTOS ANALYSIS

Quantitative

| Sample No. | Amount |
|---|---|
| 31379-500 | $2.98 \times 10^8$ fibers/gram |
| 31379-41 | $1.15 \times 10^9$ fibers/gram |
| 10578-500 | 0 |
| 101078-41 | $9.45 \times 10^8$ fibers/gram |

Qualitative

| Sample No. | Code No. | Sample No. | Code No. | Sample No. | Code No. |
|---|---|---|---|---|---|
| 6B | 0 | 70T | CD | MD465-2 | 0 |
| 6T | 0 | 72T | CE | MW6-1 | 0 |
| 6G | 0 | 72B | CD | MW6-2 | 0 |
| 20T | 0 | 72G | CE | 4026-1 | 0 |
| 20G | BF | 72S | 0 | 4026-2 | 0 |
| 20B | BF | 74T | CF | 4026-3 | 0 |
| 36S1 | BG | 74B | 0 | 4026-4 | BF |
| 36G | CG | 74G | 0 | 4026-5 | BF |
| 36B | CE | 74S | 0 | 4026-6 | CD |
| 36S2 | BE | 74PT | 0 | 4026-7 | CD |
| 37G | CG | 74PG | 0 | 4026-8 | 0 |
| 37T | CD | 74PS | BE | 4026-9 | CF |
| 48G | CG | 68G | CD | 4026-10 | CD |
| 60T | 0 | 68S | BF | 4026-11 | 0 |
| 60B | CF | 68B | 0 | 4026-12 | 0 |
| 60G | CE | MC-1 | 0 | 4026-13 | 0 |
| 60S | BE | MC-2 | 0 | 4026-14 | CE |
| 64S1 | CE | MC-3 | 0 | 4026-15 | 0 |
| 64G | CD | MCX-1 | 0 | 4026-16 | BF |
| 64S2 | 0 | MCX-2 | CD | 4026-17 | 0 |
| 64T | 0 | MCX-3 | 0 | 4026-18 | 0 |
| 70B | CE | MCX-4 | 0 | 4026-19 | 0 |
| 70G | 0 | MD461-1 | 0 | | |

A. Many fibers greater than five microns.
B. Few fibers greater than five microns.
C. No fibers greater than five microns.

D. Trace amounts (0 to 5 fibers per 15 grid openings)
E. Minor amounts (5 to 15 fibers per 15 grid openings)
F. Many fibers (15 to 50 fibers per 15 grid openings)
G. Abundant (greater than 50 fibers per 15 grid openings)

Ex. 3, Tab 32

42

Case 3:11-cv-01754-PRM-AMF Document 531-28 Filed 05/13/15 Page 38 of 130 PageID 1428

The Emtal grades chosen for comparison were those that had been assayed earlier by Engelhard Industries. The sample code used for these products and the asbestos fibers found by E.I. is as follows:

PCM-4      Emtal 42, abundant fibers
PCM-12      Emtal 42, many fibers
PCM-7      Emtal 500, many fibers

## TABLE II

### ANALYSIS OF 19 BULK SAMPLES FOR ASBESTOS FIBERS
### BY TEM-SAED

| Sample Code | Sample I.D. | Sample No. | Asbestos Total | Fiber/15 Grid Opening >5 microns |
|---|---|---|---|---|
| PCM-4[1] | Emtal 42 | 4026-6 | Trace, 0-5 | None |
| PCM-4[2] | Emtal 42 | 4026-14 | Minor, 5-15 | None |
| PCM-12[1] | Emtal 42 | 4026-4 | Many, 15-50 | Few |
| PCM-12[2] | Emtal 42 | 4026-12 | Many, 15-50 | Few |
| PCM-7[1] | Emtal 500 | 4026-5 | Many, 15-50 | Few |
| PCM-7[2] | Emtal 500 | 4026-9 | Many, 15-50 | 0 |

**07/17/1979**

Ex. 4(f)

43

TABLE V

COMPARISON OF REPETITIVE SAMPLES OF EMTAL PRODUCTS

| Sample Code | Sample I.D. | Date Analyzed | Laboratory Used | Asbestos Fiber/15 Grid Open. Total | >5µ |
|---|---|---|---|---|---|
| PCM-4 (1) | Emtal 42 | 7/12/79 | Ga. Tech. | trace, 0-5 | none |
| -4 (2) | Emtal 42 | 7/12/79 | Ga. Tech. | minor, 5-15 | none |
| -4 | Emtal 42 | 4/20/79 | E.I. Inst. | abundant >50 | abundant >50 |
| PCM-12 (1) | Emtal 42 | 7/12/79 | Ga. Tech. | many, 15-50 | few |
| -12 (2) | Emtal 42 | 7/12/79 | Ga. Tech. | many, 15-50 | few |
| -12 | Emtal 42 | 4/20/79 | E.I. Inst. | many, 15-50 | few |
| PCM-7 (1) | Emtal 500 | 7/12/79 | Ga. Tech. | many | few |
| -7 (2) | Emtal 500 | 7/12/79 | Ga. Tech. | many | 0 |
| -7 | Emtal 500 | 4/20/79 | E.I. Inst. | many | 0 |

"There is good agreement between Georgia Tech and Engelhard that the asbestos fiber count in EMTAL varied from trace to abundant"

07/17/1979

Ex. 4(f)

44

# Three Independent Laboratories Confirm Asbestos in Emtal

**Three separate laboratories plus Engelhard find chrysotile asbestos in EMTAL 42 from 1977, 1978 and 1979.**

"The results showed that although there was a variability in the number of fibers counted from week to week, there were nevertheless fibers present in every sample of Emtal 42 tested. A few of the Emtal 42 samples showed relatively high fiber counts."

05/22/1979

Ex. 4(e)

45

The following is a review and update on the talc investigation which was initiated in February 1979. The investigation itself concerns the identification of contaminants in a number of talc production samples using transmission electron microscopy.

\*\*\*

Thirty-eight mine crushed rock samples have been sent to the Georgia Institute of Technology for qualitative transmission electron microscopy investigations.

VOLK

BASF_SAMP

BASF 00105

BASF_SAMPSON000013155

Ex. 3, Tab 25

# What was the purpose of the asbestos in mine study?



"A new Raymond Mill is needed at Johnson to support and grow this business."

"Approved construction of the new Raymond Mill has been delayed pending the assessment of a **newly recognized risk.**"

05/17/1979

Ex. 3, Tab 28

# Engelhard & Georgia Tech Agree Johnson Mine Contaminated With Asbestos



Glenn Hemstock

Emil Triglia

**Johnson Mine Contaminated with Asbestos**

Peter Gale

Georgia Tech

1979



PADUANO
BASF02557
BASF_LOPEZ000012490

## TALC MEETING 5/17/79

**MEETING TOPICS:**

1. Have we yet been able to define and evaluate the risk?
   - Technical
   - Environmental
   - Legal
   - Sales/Marketing

**05/17/1979**

Ex. 3, Tab 28

# "Asbestos Fiber is Present"



**TALC MEETING 5/17/79**

1. **Asbestos fiber is present.**
2. Legal/Environmental position is not yet defined.
3. <u>Asbestos Standard</u> States:
   a. Fiber is:  3/1 aspect ration, $\geq$  5μ in length.
   b. Asbestos is:  Chrysotile, etc.
   c. Requires:

## 05/17/1979

Ex. 3, Tab 28

# Why was the Johnson Mine closed?

46
15   Q      If I understood your testimony from
16   earlier today, you told us that -- which employer was
17   it that owned the talc mine in Vermont?
18      A      It was Engelhard Minerals & Chemicals.
19      Q      Engelhard Minerals & Chemicals.
20            At some point they did tell you that you
21   would not be working with talc anymore, correct?
22      A      That's right, yes.
23      Q      And that was because of a possible
24   asbestos contamination?
25      A      Yes.
47
1      Q      What information at that time did they
2   give you with regards to asbestos?
3      A      Well, that was after the Selikoff study
4   had made the headlines, so they just said that
5   asbestos in trace amounts was found in talc, and I
6   think they said that there's no talc in the world
7   that doesn't have a trace of asbestos with it.
8            So that's about all they said, but they
9   closed their mine -- the mine down, they sealed it
10   off, and told us to purge our records.

116
1      Q      Okay.  And do you recall who sent that
2   memo?
3      A      I believe it was the president of the
4   company.
5      Q      Do you know who the president of the
6   company was at that time?
7      A   Irving Isko.  I-S-K-O.
8      Q      And do you recall the contents of that
9   memo, what it had said?
10      A      Simply we're closing the mine because --
11   I think I recall it said "For the fear of
12   contamination of asbestos, we're closing that mine.
13   We'll seal it up immediately."

Swanson Dep. 46:15–47:10, 115:21–116:13

# Engelhard Considered the Emtal Asbestos Findings Reliable





| Positive + | Negative − | Problem NOT Reliable |
|---|---|---|
| P-003 – 8/18/72 | P-001 – 7-8-71 | P-010 – 10/12/73 |
| P-88 – 6/12/73 | P-002 – 8/1/72 | P-129 – 3/15/77 |
| P-92 – 5/25/73 | P-188 – 4/25/79 | P-116 – 3/25/77 |
| 2-006 – 9/5/72 | | P-135 – 5/2/77 |
| P-126 – 2/23/77 | | P-136 – 5/18/77 |
| P-138 – 4/27/77 | | P-141 – 7/1/77 |
| P-178 – 10/27/78 | | P-18 – 8/18/77 |
| P-194 – 1/29/79 | | P-198 – 3/28/79 |
| 2-197 – 3/23/79 | | P-40 – 8/3/79 |
| P-201 – 4/11/79 | | P-234 – 10/28/80 |
| P-203 – 4/30/79 | | P-235 – 10/30/80 |
| P-206 – 5/17/79 | | P-411 – 4/24/82 |
| P-207 – 5/22/79 | | P-251 – 7/29/82 |
| P-214 – 7/17/79 | | |
| P-217 – 7/20/79 | | |
| P-249 – 3/11/82 | | |
| 2-219 – 9/18/79 | | |

EXHIBIT
P-422

6/27/12 Hemstock Dep. 602:12–603:9, 658:1–659:8

54

# What is a "trace" amount of asbestos?

Case 2:11-cv-01754-BRM-AME   Document 531-29   Filed 05/12/18   Page 49 of 130 PageID: 31059



"Trace" amounts of asbestos is in the order of a couple of percent by weight more or less

6/27/12 Hemstock Dep. 668:14–669:10

# What Do Engelhard, BASF, & Cahill Say Is The "Safe" Amount Of Exposure To Asbestos?

Case 2:10-cv-07675-DMC-MF Document 129-4 Filed 03/12/12 Page 43 of 57 PageID: 3100



**Dr. Hemstock, in looking at the sales of Emtal over a three-year period to just one customer, Congoleum of Trenton, N.J., there were 1,800,000 pounds of asbestos fiber introduced into the workplace even if there were only "trace" amounts of asbestos contained in Emtal talc.**

600,000 lbs of asbestiform material in 1 year

6/27/12 Hemstock Dep. 677:16–679:14, 679:15-22, 681:19–683:20

56

# Personal Injury Litigation Begins

Oct. 21, 1982

BASF_SAMPSON000038167

58

# Engelhard Also Sued in *Schwartz* Case

SERVICE OF PROCESS TRANSMITTAL FORM

OFFICE COPY

C T Corporation System
The Corporation Trust Company

Trenton, New Jersey
(City)                    (State)
JUNE 27, 1983
(Date)

TO: Arthur A. Dornbusch, II, V.P. & Gen. Csl.
Engelhard Corporation
Menlo Park CN 40
Edison, N.J. 08818

( xxx )  Via Certified First Class Mail
(     )  Via Messenger

RECEIVED

RE: PROCESS SERVED IN _____ NEW JERSEY _____
(Jurisdiction)

FOR _____ EASTERN MAGNESIA TALC COMPANY _____ DELAWARE
(Name of Company)                    (Domestic State)

Enclosed are copies of legal process served upon the statutory agent of the above company as follows:

1. Title of Action: JACQUELINE M. SCHWARTZ, Plaintiff
vs
UNION CARBIDE CORPORATION, John Doe, Defendants

2. Document(s) ☐ Summons, Complaint, Second Amended, Letter from attys dated 6/21/83

3. Court: ☐ Superior Court of New Jersey:
☒ SUPERIOR COURT OF CALIFORNIA  LOS ANGELES, COUNTY  Division _____ County
Docket # C 327 521

4. Nature of Action: Plaintiffs prays judgment for general, medical, punitive damages, costs
etc. Alleges plntf sustained injuries due to exposure to talc containing products dis-
tributed by defts. Breach of Warranties.

5. ☐ Process Served on: THE CORPORATION TRUST COMPANY in New Jersey.
☐ Process Received By: THE CORPORATION TRUST COMPANY in New Jersey by mail.
From: plntf's atty
Envelope Post Marked  6/21/83 _____ enclosed.

6. Date and Hour of Service or Receipt: June 27, 1983

7. Appearance or Answer Due: ☐ Within 20 days of service, exclusive of day of service.
☒ within 30 days

8. Plaintiff's Attorney(s): Greene, O'Reilly, Agnew & Broillet
1122 Wilshire Blvd.
Los Angeles, Ca. 90017

9. Remarks:
☐ This confirms our telephone call to your office.
☐ Above telephoned to C T _____ office and is sent to you per their instructions.
Service was made by mail under Section 415.30 of the California Code of Civil Procedure.
IMPORTANT: Please note the enclosed Memorandum regarding California Service of Process
by Mail, and the enclosed unsigned copies of acknowledgement of receipt of summons.

According to atty service is to be made upon Eastern Magnesia Talc Company as
described as one of the John Does. Envelope addressed to Above company also.
KINDLY ACKNOWLEDGE RECEIPT BY SIGNING
THE CARBON COPY AND RETURNING IT TO          Signed  C T CORPORATION SYSTEM

Per CLAIRE PICKUP (gb)

BASF_SAMPSON000035806

## June 27, 1983

## Engelhard is sued in the *Schwartz* case in California

BASF_SAMPSON000035806

59

United States District Court document — C.A. No. 79-0269

## March 16, 1983

**Doctor Hemstock testifies about tests showing trace to abundant asbestos fibers in Emtal talc.**

*See, e.g.,* 3/16/83 Hemstock Dep. 17:16-24, 46:11-17 (finding 1.6% asbestos, which Hemstock testified is greater than trace), 103:8-19 (relatively higher fiber counts)

60



BASF_SAMPSON000033339

**April 7, 1983**

**Dr. Triglia testifies that asbestos found in Emtal talc**

*4/7/83 Triglia Dep. 55:24–56:17*

61

April 26, 1983

**Gale testifies that chrysotile asbestos found in Johnson Mine**

# Engelhard Geologist Testified He Found Asbestos in Emtal Mine



"I recall that there were fibers found in the talc, yes . . . I determined those fibers were chrysotile fibers."

**Deposition of Peter Gale in the *Westfall* case taken April 26, 1983**

4/26/83 Gale Dep. 19:24–20:9



**Westfall** case settles.

Ex. 24

64

# All Incriminating Evidence Returned As Condition of *Westfall* Settlement

CF-10

# Even the Plaintiff's Evidence Was Destroyed

**No. 97: "BASF admits that at least certain of Dr. Glassley's talc samples were destroyed pursuant to the Stipulation and Order of Confidentiality in place in the *Westfall* case."**

**No. 99: "BASF admits that certain of Dr. Glassley's notes were turned over to counsel for Engelhard and destroyed pursuant to the Stipulation and Order of Confidentiality in place in the *Westfall* case …."**

**No. 102: "BASF admits that certain of Dr. Glassley's photographs were turned over to counsel for Engelhard and destroyed pursuant to the Stipulation and Order of Confidentiality in place in the *Westfall* case …."**

Ex. 30 BASF RFAs

67

# Engelhard Legal Department Ordered Evidence Be Discarded



**March 7, 1984**

**Purge memo calls for "discard" of Emtal related documents for R&D operations. Scientists told to put research outside their doors for pickup. Lab notebooks to be picked up on March 16, and retuned on March 19, after Emtal information removed.**

Ex. 22

68

# Engelhard Legal Department Ordered Evidence Be Discarded



**Ex. 22**

**Hemstock in his *Sampson* case deposition:**

- **Explained that the document purge was not limited to the R&D department, but included other departments, such as production, marketing, etc.**

- **That while the memo went out under his name, it was prepared by the Legal Department and was likely drafted by General Counsel Dornbusch.**

6/25/12 Hemstock Dep. 565:23 –566:7; 5/9/12 Hemstock Dep. 33:8–35:13

69

# Document Destruction Ordered While *Schwartz* Case Still Pending



BASF_SAMPSON000028739

### July 10, 1984

## *Schwartz* case settles

BASF_SAMPSON000028739

70

# Fraudulent Misrepresentations to Litigants and Courts

**Ashton Affidavit**

**INTERROGATORY NO. 11:**

Identify all persons and participants involved in the development, drafting, revising, dissemination, and execution of the May 8, 1989 affidavit of Mr. William H. Ashton (attached as Ex. 4 to Plaintiffs' Second Amended Class Action Complaint).

**RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving its objections, BASF states that Cahill attorneys, including Peter Sloane and Ira Dembrow, drafted, revised, and worked with William Ashton to finalize and sign the May 8, 1989 affidavit of William H. Ashton. Attorneys for Johnson & Johnson also were involved. BASF further states that, in addition to various other materials that varied by case, Cahill attorneys disseminated Mr. Ashton's May 8, 1989 at various points in time while Cahill served as national counsel in Emtal-related personal-injury litigation from 1989 until the 2000s. In addition to various other materials that varied by case, local counsel acting at Cahill's direction also disseminated Mr. Ashton's affidavit at various points in time from 1989 until the 2000s.

BASF objects that Interrogatory No. 11 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweigh its likely benefit, as it asks BASF to identify "all persons and participants" who were "involved in" any aspect of preparing, signing, or disseminating an affidavit that was prepared multiple decades ago. BASF further objects that Interrogatory No. 11 calls for information in the possession of other parties.

> "**Cahill attorneys**, including Peter Sloane and Ira Dembrow, **drafted, revised, and worked with William Ashton** to finalize and sign the May 8, 1989 affidavit of William H. Ashton. **Attorneys for Johnson & Johnson also were involved…**"

BASF Interrogs. Ex. 6

72

**Ashton Affidavit**

"**From the 1940s through the 1980s, talc mined in Vermont and specifically the talc mined by Engelhard Corporation (and its predecessors) from the talc mine located in Johnson Vermont the "Johnson Mine") has been considered to be talc free from contamination by asbestos**"

Ex. 10

73

AFFIDAVIT

STATE OF NEW JERSEY )
                     ) ss.:
COUNTY OF SOMERSET )

WILLIAM H. ASHTON, being dul[y]
says:

1. For thirty-five years,
in investigating and studying the dome[stic]
talc industry and talc technology whil[e at]
Johnson. In the course of this work,
in the United States and throughout th[e world]
from the University of Pennsylvania in
Science degree. My major field of stu[dy]
minor fields of study were geology and
uate work at Louisiana State Universit[y and]
training in talc minerals at the Batte[lle]
Columbus, Ohio, which included consult[ation]
Department of Ohio State University.
1984, but have remained an active memb[er of]
mineral committees of the American Soc[iety for Testing]
Materials and the International Standa[rds]

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - - - - - x

DAVID HOWARD WESTFALL IN HIS          :
CAPACITY AS ADMINISTRATOR OF THE      :
ESTATE OF THOMAS HOWARD WESTFALL      :
AND HIS CAPACITY AS ADMINISTRATOR     :
OF THE ESTATE OF BETTY E. WESTFALL,   :
                          Plaintiff,  :
                                      :
          v.                          :
                                      :         Civil Ac[tion]
WHITTAKER, CLARK & DANIELS,           :         No. 79-[    ]
METROPOLITAN TALC COMPANY, INC.,      :
PFIZER, INC., WINDSOR MINERALS, INC., :
ITSELF AND AS SUCCESSOR TO EASTERN    :
MAGNESIA TALC COMPANY, INC., AND      :
OMYA, INC., ITSELF AND AS SUCCESSOR   :
TO VERMONT TALC COMPANY, INC.,        :
                          Defendants. :

- - - - - - - - - - - - - - - - - - - - x

VIDEOTAPE DEPOSITION of ALFRED H. CHIDESTER, a witness
called on behalf of the Defendants, taken pursuant to the
Federal Rules of Civil Procedure, before Doris M. Jones,
Registered Professional Reporter and Notary Public in and

"8. In sworn testimony in 1983 **[in the *Westfall* case]** (relevant portions of which are attached as Exhibit G), Dr. Chidester stated that he never found veins of chrysotile asbestos in talc located in Vermont."

# No mention of Hemstock, Triglia or Gale Depositions and Emtal/Johnson Mine Testing Results

74

**Carter Affidavit**
**8/181989**

"In addition, Engelhard **does not currently possess any testing data** other than the data provided to you by way of the Ashton Affidavit and the report of Dr. Pooley."

Ex. 20(c)

75

Case 2:13-cv-20000 Document 3319-1 Filed 09/17/17 Page 1 of 1 PageID: 31677



**Kansas**



**Mississippi**



**Ohio**

# Same "No Asbestos" Lies Told Over & Over

**Michigan**

**Arkansas**

**Massachusetts**

*See* examples as App'x A

77

**03/28/2008**

"[I]t has been conclusively established that the talc from the Johnson Mine does not contain asbestos. As such, there is no reasonable basis to support proceeding with the plaintiffs' claims against EMTAL and BASF. Pursuant to R. 1:4-8 and N.J.S.A. 2A:15-59.1 we hereby demand that the complaints be voluntarily dismissed because, based upon the forgoing, the allegations against EMTAL and BASF are frivolous."

App'x A, Tab BB

# Engelhard Witnesses Swore to Fraudulent Discovery Responses

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN NEW YORK CITY
------------------------------------X
In re: NEW YORK CITY ASBESTOS LITIGATION :

ESTATE OF STEVEN CHERNICK and ROSANNE
CHERNICK,

Plaintiffs,

-against-

ABB LUMMUS GLOBAL, INC., et al.,

Defendants.
------------------------------------X

RESPONSES BY ENGELHARD CORPORATION
STANDARD SET OF LIABILITY IN

Defendant Engelhard Corporation ("

Engelhard Minerals and Chemical Corporation) here

Standard Set of Liability Interrogatories ("Standard

Steven and Rosanne Chernick:

GENERAL OBJECT

1.    Engelhard objects to the Standa

relevant, not reasonably calculated to lead to the d

trial, overly broad, and unduly burdensome.

2.    Engelhard objects to the Standa

ambiguous and unintelligible.

3.    Engelhard objects to the Standa

information protected from disclosure by the att

to this Interrogatory on the ground that it is neither relevant nor reasonably calculated

to lead to the discovery of admissible evidence. Notwithstanding and without waiving

the foregoing objection, Engelhard responds that it has no particular knowledge

regarding any of the Subparts of this Interrogatory, other than (j). As to (j), Engelhard

neither manufactured nor sold any of the listed asbestos products. Engelhard does

contend that its products are not harmful. More specifically, with reference to the

instant litigation, Engelhard contends that the talc it supplied to Bondo was asbestos-

free. The facts upon which Engelhard bases this contention include the following:

The talc that Engelhard sold to Bondo was sold through Engelhard's

former subsidiary EMTal (later known as Pita). The only talc mine operated by EMTal

(and accordingly Engelhard was located in Johnson, Vermont. EMTal produced talc

from that mine from October 1967 (when EMTal acquired the mine) until 1983 (when

the mine was closed for economic reasons). A number of analyses of the Johnson

mine have been conducted, and all of them have concluded that the talc produced

from this mine did not contain asbestos. For example, a 1977 study for NIOSH

analyzed 100 talc samples, including a sample of EMTal talc, by Polarized Light

Microscopy, Dispersion Staining, x-ray diffraction, Transmission Electron Microscopy

("TEM"), and Electron Microprobe. The analysis of the sample of EMTal talc found no

asbestos. A 1982 study of a sample from the Johnson mine also found no asbestos

in the talc. This study used Scanning Electron Microscopy, Energy Dispersive

Spectroscopy, x-ray diffraction analysis, and TEM. The absence of asbestos from the

37

**2002**

> **"A number of analysis of the Johnson mine have been conducted, <u>all of them have concluded</u> that the talc produced from this mine did not contain asbestos."**

**Submitted in New York in *Chernick* case.**

App'x , Tab J

7

**Interrogatory No. 63:**

If any of your employees or officers have testified at trial or by deposition or before any Congressional Committee or administrative agency concerning asbestos exposure, pulmonary or asbestos-related diseases or industrial hygiene relating to asbestos use, state:

 a. The name, address and title of each person who testified;
 b. The date, location and forum of such testimony;
 c. Whether the defendant has a copy of such testimony;
 d. Whether the defendant will voluntarily produce a copy of such testimony.

**Response to Interrogatory No. 63:**

No.

**No Prior Testimony**

**Submitted in New York in *Chernick* case.**

2002

App'x , Tab J

**Pita did not mine, mill, manufacture, market, distribute, or rebrand asbestos or asbestos containing products.**

2002

App'x B, Tab I

81

# Sworn Ohio Answers to Interrogatories in *Graham* case

**2008**

> "Additionally, plaintiff has provided no evidence that EMT's talc is an asbestos containing product. On the other hand, EMT filed numerous materials in response to plaintiff's discovery requests that indicate that the talc mined by EMT was asbestos free…These materials included:
>
> 1. A copy of an affidavit prepared by William H. Ashton…
> 2. A copy of a report prepared by Dr. F. D. Pooley"

# Engelhard's Ohio Interrogatory Responses

**2007**

# Engelhard's Ohio Interrogatory Responses

a. the name of the entity involved in the placing of asbestos products into the stream of commerce;

b. the manner in which the entity was involved in the placing of asbestos containing products into the stream of commerce (i.e., mining, milling, manufacturing, distributing, installing, rebranding, etc.);

c. the specific products placed into the stream of commerce by the entity year by year and by brand or trade name;

d. the name, positions and a brief description of the responsibilities of the person or persons serving the answering defendant and the entity simultaneously including the positions held with the entity and with the answering defendant.

## EVER SELL ASBESTOS

5.    Has Defendant ever engaged in the mining, manufacturing, selling, marketing, installation or distribution of asbestos-containing products (including equipment of any kind containing asbestos in any form)?

3.    The time period it was manufactured, mined, marketed, distributed or sold.

4.    Its physical description including color, general composition, and form.

5.    A detailed description of its intended use and purpose.

6

**2007**

BASF_LOPEZ000012499

**App'x B, Tab M**

# Engelhard's Ohio Interrogatory Responses

6. A detailed description of the type package in which it was sold, listing the dates of each type of package used, a physical description of the package, and a description of any printed material or trademarks that appeared thereon.

7. The percent of asbestos which it contained.

8. The percent of asbestos by asbestos type (amosite, crocidolite, tremolite, anthophyllite).

(c) The time period during which each of these products were on the market;

(d) The material components/ingredients of each such product, giving specific or approximate percentage both by weight and by volume of each material component/ingredient (this interrogatory is not limited to the asbestos component of the product but seeks information as to the nature, weight and volume of non-asbestos ingredients, as well) of each such product;

**ANSWER:** No.

(a) The date of each patent;

(b) The date same was issued;

(c) The number of each patent application that is pending.

ANSWER: Not applicable; see response to Interrogatory No. 5.

7

BASF_LOPEZ000012500

**2007**

**App'x B, Tab M**

# Misrepresentations Were Made Directly to Judges Charged with Administering Justice



> "There was **no asbestos in our talc…Mr. Ashton concludes that our client's talc did not contain asbestos.**"
>
> ***
>
> **Disregarding the forgoing, plaintiffs' counsel have failed and refused to dismiss our client from this litigation to the great expense and detriment of our client…"**

**To the Federal MDL Judge Charles Weiner**

**08/14/1989**

Ex. 18

**"EMTAL TALC DID NOT CONTAIN ASBESTOS"**

**"While talc from other geographic locations may contain asbestos, it is undeniable that EmTal talc which came from a single mine in Johnson Vermont — did not contain asbestos."**

To the Judge Presiding Over Michigan Cases

Representative examples in App'x B

"EMT filed numerous materials in response to plaintiff's discovery request that indicate that the talc mined by EMT was asbestos-free."

SJ Brief filed in *Graham* case 2/09/09

App'x B, Tab N

> "The plaintiff will not be able to prove the Emtal talc contained asbestos.
>
> ***
>
> The plaintiff has no reasonable expectation of proving that Mrs. Kramers alleged death was substantially caused by exposure to asbestos containing talc allegedly manufactured by Emtal"

### SJ Brief filed in Massachusetts 03/29/2009

App'x B, Tab O

# Admissions Lies Told

Case 2:11-cv-01754-BRM-AME   Document 631-39   Filed 05/03/19   Page 85 of 130 PageID: 31655

Hemstock Testifies About Ashton Aff.



Poole Testifies That Ashton Aff. Is Untrue And Misleading



Q. From everything you know and the studies you were in charge of, is that an accurate statement?

A. **No, it is not an accurate statement.**

Q. Based upon . . . all the tests that you conducted . . . is this a true statement that it's "free from contamination by asbestos"?

A. **There were tests that showed there was contamination by asbestos.**

5/29/12 Hemstock Dep. 101:19–103:23

5/25/10 Poole Dep. 208:15–210:9



Q. In addition, Engelhard does not currently possess any testing data, other than the data provided to you by way of the Ashton affidavit and the report of Dr. Pooley.

Was that a true statement made by Mr. Carter under oath under penalty of perjury in 1989?

A. I don't know what was in Mr. Carter's mind at the time, but it appears not to be true on the surface of it, on the face of it."

6/27/12 Hemstock Dep. 709:9–710:15

# Admissions Lies Worked

Downloaded from... Chambers of Michael F. Colley... 31088



**Kansas & PA cases dismissed**

BASF_WILLIAMS000324156



**Arkansas cases dismissed**

---

## Ohio cases dismissed

CAHILL GORDON & REINDEL
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
1990 K STREET, N.W.
WASHINGTON, D.C. 20006
TELEPHONE 202 862-8900

EIGHTY PINE STREET
NEW YORK, N Y 10005

19 RUE FRANÇOIS IER
75008 PARIS, FRANCE

RADIO AND CABLE ADDRESSES
"COTTOMARK WASHINGTON"
"COTTOMARK NEWYORK"
"COTTOMARK PARIS"

WRITER'S DIRECT DIAL NUMBER

(202) 862-8964

June 25, 1991

Re: Montgomery/Summit County
Tireworker Litigation

Dear David:

This letter will confirm our conversations and understanding to date concerning my client, Eastern Magnesia Talc Company.

Based on your review of the materials previously forwarded, you have agreed, on behalf of the former tire and rubber workers represented by your firm, to dismiss my client from all of the cases pending in Montgomery and Summit Counties brought by your firm.

I am in the process of drafting a dismissal agreement that reflects your stated need to refile should you be able to demonstrate that the talc sold by my client contained asbestos. I will be forwarding a draft to you in the next few days.

Please contact me immediately if the above does not accurately reflect our understanding.

Sincerely yours,

Eric S. Sarner

David I. Shroyer, Esq.
Michael F. Colley Co., L.P.A.
536 S. High Street
Columbus, Ohio 43215

VIA FEDERAL EXPRESS

cc: Lester Fliegel, Esq.
Howard G. Sloane, Esq.
Allen S. Joslyn, Esq.

BASF FC 0012052

**Representative samples in App'x A**

103

**Michigan cases dismissed**

**California & Oklahoma cases dismissed**

App'x B, Tab D



CAHILL GORDON & REINDEL
A PARTNERSHIP INCLUDING A PROFESSIONAL CORPORATION
1990 K STREET, N.W.
WASHINGTON, D.C. 20006
TELEPHONE 202-862-8900

EIGHTY PINE STREET
NEW YORK, N.Y. 10005

10 RUE FRANÇOIS 1er
75008 PARIS, FRANCE

RADIO AND CABLE ADDRESSES
"COTTOFRANK WASHINGTON"
"COTTOFRANK NEWYORK"
"COTTOFRANK PARIS"

FACSIMILE 202-862-0888

WRITER'S DIRECT DIAL NUMBER
202-862-8941

February 4, 1993

Re: Cuyahoga County Tireworker Actions

Dear Tom:

As you requested last month, I have prepared and am enclosing notices of dismissal for your signature and filing regarding the dismissal of Engelhard Minerals & Chemicals Company from five recently-filed tireworker actions in Cuyahoga County, on the basis of our correspondence demonstrating that talc produced by Engelhard's former subsididary, Eastern Magnesia Talc Company ("EMTal"), contained no asbestos. I apologize for the delay in getting these documents to you, but I have been caught up in a trial out of town for the last four weeks.

As you probably already know, four of the five actions have been removed to federal court by Canadian defendants. The dismissals for these four actions should be filed with the clerk of the United States District Court for the Northern District of Ohio (the federal docket numbers are noted on the notices of dismissal) for entry by Judge Lambros, and a copy should be sent to Judge Charles R. Weiner of the United States District Court for the Eastern District of Pennsylvania, as the cases have now entered the Multidistrict Litigation. I am informed by the clerk for the Cuyahoga County Court of Common Pleas that no notice of removal has been filed for the most recent case, Anthony James, and accordingly the notice of dismissal for that case should be filed in state court.

Finally, I note that EMTal's former distributor, C.P. Hall Company, is named in these actions as well. If C.P. Hall is named only as a distributor of EMTal talc, then C.P. Hall should be dismissed as well. To the extent, however, that C.P. Hall is also named as a defendant for having sold or distributed other products to the plants at issue, I will understand C.P. Hall's continued presence in the litigation not to be attributable to sales or distribution of EMTal talc. Please let me know which of the above is the case.

Thank you again for your attention to these matters. Please return copies of the signed notices of dismissal in the

**1993**

As you requested last month, I have prepared and am **enclosing notices of dismissal of Engelhard**…from five recently filed tireworker cases in Cuyahoga County **on the basis** of our correspondence demonstrating that **talc produced by Engelhard**'s former subsidiary, Eastern Magesia Talc Co ("EMTal") **contained no asbestos**.

## Bevan Cases Dismissed

App'x A, Tab U

Lets stop wasting each other's time…If contrary to **virtually every other** plaintiffs' tireworker counsel you will not voluntarily dismiss us …

08/29/1991

RASF WILLIAMS000104906

"The **talc from this mine did not contain asbestos** … Pita states that as to its talc, it has been named in tireworker suits involving numerous plaintiffs and multiple defendants which have been filed in various state and federal courts **in Arkansas, California, Kansas, Michigan, Mississippi, Ohio, Oklahoma, and Pennsylvania**. Many of these cases were voluntarily dismissed by the plaintiffs after they were presented with information similar to that which is contained in these interrogatory answers. **All of the cases were ultimately dismissed prior to trial,** except that two actions in the Court of Common Pleas for Cuyahoga County, Ohio

1995

*App'x B, Tab F*

# BASF Corporate Representative Admits
## Cases Dismissed Based Upon No Asbestos Representation

BASF Corporate Representative Deposition Transcript Excerpt - Page 93 of 130 Document 31108



**Q     And does the lawyer actually keep score in the second to last full paragraph of all the plaintiffs that your company got to dismiss their case based upon a representation that there was no asbestos in their talc?**

**A     Yes.**

**Q     It actually goes through all the people who relied upon that representation, does it not, in various jurisdictions throughout the United States?**

**A     Yes.**

5/25/10 Poole Dep.

110

# BASF Suppresses Troublesome Evidence that Resurfaces

# How did Glassley get involved in the *Martin* case?

Case 2:11-cv-01754-BRM-AME   Document 521-29   Filed 06/01/18   Page 95 of 130 PageID: 41031



Q. Tell me about your first communication with Miss Cuzzone?
A. As I recall, she called me on the phone, we had a brief chat, she asked me if I participated in the Westfall case.  Other than that, I don't recall [where] the conversation [went].. . .
Q. Did she say that she wanted you to offer in the Martin case the same opinions you had reached in the Westfall case?
A. I don't recall that it was that specific.  My recollection is that it was more providing expert opinion about related issues similar to the Westfall case, but I don't . . . recall anything else.

**Glassley Dep. 119:9–18, 120:14–120:20**

What did Cuzzone provide Dr. Glassley with in the *Martin* case?

Case 2:11-cv-01754-BRM-AME   Document 631-29   Filed 06/17/19   Page 98 of 130 PageID: 51847



Glassley Dep. 123:6–124:15

113

# What did Dr. Glassley find when he examined the ore from the Johnson mine?

Case 3:16-md-02738-MAS-RLS Document 21135 Filed 01/23/22 Page 97 of 130 PageID: 131107



"I would have said [that] serpentine and talc from the Johnson Vermont Talc Mine contains asbestiform chrysotile."

**Glassley Dep. 77:19–78:6**

114

# What report did Dr. Glassley issue in the *Martin* case?



# Fraud Continued After BASF Was in Control

| BASF FC 0001504 | Motion in pending litigation. | | | | |
|---|---|---|---|---|---|
| BASF FC 0001513 | Letter re: draft of memorandum and affidavit in support of motion in pending litigation. | Howard G. Sloane, Esq. | Peter L. Kennedy, Esq., Arthur A. Dornbusch, II, Esq. | 2/1/1983 | Work Product/Attorney Client Privilege |
| BASF FC 0001514-BASF FC 0001522 | Draft of Memorandum of Law in Support stipulation in pending litigation. | — | | 2/1/1983 | Work Product |
| BASF FC 0001531-BASF FC 0001534 | Draft of Affidavit in pending litigation. | — | — | 2/1/1983 | Work Product |
| BASF FC 0001536-BASF FC 0001545 | Draft of Memorandum of Law in Support of Motion in pending litigation. | — | — | 1/31/1983 | Work Product |
| BASF FC 0001546-BASF FC 0001557 | Draft of Stipulation in pending litigation. | — | — | | Work Product |
| BASF FC 0001562 | Memorandum re: Engelhard Tales | A.A. Dornbusch, Esq., T. Halket, Esq. | D.R. Hyde, Esq. | 10/27/1982 | Work Product/Attorney Client Privilege |
| BASF FC 0001611-BASF FC 0001626 | Summary of Activities Related to Services Rendered | — | — | undated | Work Product |
| BASF FC 0001712-BASF FC 0001744 | Draft Discovery Responses | — | | 3/20/1991 | Work Product |
| BASF FC 0001745-BASF FC 0001758 | Draft Discovery Responses | — | — | 5/28/1986 | Work Product |
| BASF FC 0002635-BASF FC 0002719 | Letter and enclosures re: corporate documents for pending litigation. | Arthur A. Dornbusch, II, Esq. | T. Richards | 11/19/1982 | Work Product/Attorney Client Privilege |



**Paduano Privilege Log**

| BASF FC 0001611-<br>BASF FC 0001626 | Summary of Activities Related to Services Rendered | — | — | undated | Work Product |

# Engelhard & BASF Knowledge

# Did Engelhard know about the lies and demands for dismissals?

App'x A, Tab I

**1990**

"**I must insist on** a response to our request for a dismissal based on the Ashton Affidavit and materials."

"[P]laintiffs' counsel in Pennsylvania voluntarily dismissed EmTal from the Pennsylvania litigation. The same result has been obtained in the tireworker litigation in Kansas. On January 16, 1990 plaintiffs' counsel filed a notice voluntarily dismissing a number of defendants, including EmTal. Plaintiffs' counsel in Kansas also had been provided with the Ashton materials. A copy of this notice of dismissal is attached."

CC Peter Sloane & Lester Fliegel
(Engelhard in-house legal)

# Did Engelhard know about the lies and demands for dismissals?



2003

BASF_SAMPSON000015047

> "As we discussed at some length, based upon the extensive materials that have been sent to you, EMTal believes that, as in many previous cases, it should be dismissed from the litigation, and plaintiffs have agreed to continue to take that request under consideration."

**CC Peter Sloane & Michael Hassett (Engelhard in-house legal)**

App'x A, Tab AA

126

# Did Engelhard Executives Certify False Discovery Responses?

> "**Engelhard does not currently possess any testing data** other than the data provided to you by way of the Ashton Affidavit and the report of Dr. Pooley."

> "I know the foregoing from my own personal knowledge and from a search of corporate records…"

## Charles Carter

Ex. 16

# Did Engelhard executives certify false discovery responses?



## In response to question about prior lawsuits

sible evidence. Without waiving such objections, Pita states that it has been named in tireworker suits filed in numerous states. Plaintiffs voluntarily dismissed Pita from tireworker suits filed in Arkansas, California, Kansas, Mississippi, Oklahoma and Pennsylvania. Pita was voluntarily dismissed from all but 23 cases in Michigan, and those 23 cases remain pending. The only other state in which any suits were brought against Pita is Ohio.

## In response to question about prior deposition testimony by employees etc..

sible evidence. Without waiving such objections, Pita states that it has been named in tireworker suits filed in numerous states. Plaintiffs voluntarily dismissed Pita from tireworker suits filed in Arkansas, California, Kansas, Mississippi, Oklahoma and Pennsylvania. Pita was voluntarily dismissed from all but 23 cases in Michigan, and those 23 cases remain pending. The only other state in which any suits were brought against Pita is Ohio.

App'x B, Tab E

# Was Engelhard Involved In Providing Fraudulent Discovery Responses?

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN NEW YORK CITY
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re: NEW YORK CITY ASBESTOS LITIGATION :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ESTATE OF STEVEN CHERNICK and ROSANNE
CHERNICK,                                    :

                    Plaintiffs,           :

            -against-                     :

ABB LUMMUS GLOBAL, INC., et al.,          :

                    Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**RESPONSES BY ENGELHARD CORPORATION**
**STANDARD SET OF LIABILITY IN**

Defendant Engelhard Corporation ("

Engelhard Minerals and Chemical Corporation here

Standard Set of Liability Interrogatories ("Standar

Steven and Rosanne Chernick:

**GENERAL OBJECTION**

1.    Engelhard objects to the Standa

relevant, not reasonably calculated to lead to the d

trial, overly broad, and unduly burdensome.

2.    Engelhard objects to the Standa

ambiguous and unintelligible.

3.    Engelhard objects to the Stand

information protected from disclosure by the atto

work product doctrine, or any other applicable privilege or protection.

4.    Engelhard objects to the Standard Set to the extent that it purports to require Engelhard to conduct discovery against third parties or attempts to require it to seek and furnish information from, and to reply on behalf, persons or corporations over whom Engelhard exercises no control or on whose behalf Engelhard has no actual or apparent authority to respond. This requirement is unduly burdensome, the information is equally available to plaintiffs under the New York Civil Practice Law and Rules, and Engelhard's compliance is not required by law. - - - -

5.    Engelhard's trial preparation and factual investigation are on-going. Accordingly, Engelhard's Responses to the Standard Set are based solely on information known to it at the time of the service of these Responses. Engelhard reserves the right, therefore, to make reference at trial, or in any other hearings in this action, to facts and/or documents not identified in these Responses, the existence or relevance of which is subsequently discovered by Engelhard or its counsel.

**LIABILITY INTERROGATORIES AND RESPONSES**

**Interrogatory No. 1:**

State the full name, address, telephone number and position of the corporate officer answering these interrogatories.

**Response to Interrogatory No. 1:**

Michael J. Hassett, Esq., Associate General Counsel for Engelhard Corporation, 101 Wood Avenue, Iselin, New Jersey 088830-0770, (732) 205-6000, coordinated Engelhard's Responses to the Standard Set.

2

**Interrogatory No. 1:**

State the full name, address, telephone number and position of the corporate officer answering these interrogatories.

**Response to Interrogatory No. 1:**

Michael J. Hassett, Esq., Associate General Counsel for Engelhard Corporation, 101 Wood Avenue, Iselin, New Jersey 088830-0770, (732) 205-5000, coordinated Engelhard's Responses to the Standard Set.

**Michael Hassett**
**Associate General Counsel**

2002

App'x B, Tab J

129

# Spoliation

# What Evidence Is Still Missing?

All original asbestos testing reports with 3 exceptions

Dr. Hemstock's & Dr. Oulton's Emtal files

All original Westfall depositions & majority of exhibits

All original scientific backup and testing data

Results from Engelhard's Study of the Johnson Mine

**□ ▪ BASF**
Crime-Fraud

133

# What complete documents are available from **Hemstock's** Deposition?



**Out of the 51 exhibits marked at Dr. Hemstock's <u>Westfall</u> deposition, BASF has been able to produce complete copies of <span style="color:yellow"><u>only ten (10)</u></span> exhibits.**

5/23/10 Poole Dep. 98:15–100:5

134

# What evidence is missing from *Hemstock's* Westfall deposition?





## 26 out of 51 (51%)

# What evidence is missing from Dr. Hemstock's *Westfall* deposition?



**Steinmetz**

## 26 out of 51 (51%)







## 19 of 31 Exhibits (61%) missing

140

# What evidence is missing from Mr. Triglia's *Westfall* deposition?





**19 out of 31 (61%)**

**Steinmetz**

# What evidence is missing from Mr. Gale's *Westfall* deposition?

| GALE EXHIBIT NUMBER | PREVIOUSLY MARKED AS EXHIBIT | DESCRIPTION |
|---|---|---|
| Gale Exhibit 15 | Triglia Exhibit 15 | A memorandum from Peter Gale to R.E. Lomas dated 3-14-79 |
| Gale Exhibit 16 | Triglia Exhibit 16 | A memorandum from Peter Gale to several individuals dated 3-20-79 |
| Gale Exhibit 17 | Triglia Exhibit 17 | A memorandum to Mr. Hemstock from Mr. Lomas dated 3-16-79 |
| Gale Exhibit 18 | Triglia Exhibit 18 | The Engelhard Minerals and Chemicals Calculation |
| Gale Exhibit 19 | Triglia Exhibit 19 | The Engelhard Minerals and Chemicals Calculation consisting of 21 pages |
| Gale Exhibit 20 | Hemstock Exhibit 50 | Engelhard Minerals and Chemicals Calculation flow sheet |
| Gale Exhibit 23 | Triglia Exhibit 23; Hemstock Exhibit 50 | Engelhard Minerals and Chemicals Division letter to John Brown from Peter Gale dated 3-21-79 |
| Gale Exhibit 24 | Triglia Exhibit 24 | A memorandum from Mr. Gale to Mr. Triglia and other individuals dated 4-4-79 |
| Gale Exhibit 25 | Triglia Exhibit 25 | A memorandum from Peter Gale to Mr. Triglia dated 4-11-79 |
| Gale Exhibit 26 | Triglia Exhibit 26 | An interdepartmental memorandum from Mr. Gale to several individuals dated 4-9-79 |
| Gale Exhibit 27 | Triglia Exhibit 27 | A letter on Walter C. McCrone letterhead to Mr. Gale dated 4-30-79 |
| Gale Exhibit 28 | Hemstock Exhibit 23; Triglia Exhibit 28 | A talc investigation – Engelhard Minerals and Chemicals Calculation |
| Gale Exhibit 29 | Hemstock Exhibit 36; Triglia Exhibit 29 | A memorandum from Mr. Triglia to Mr. Hemstock dated 5-22-79 |
| Gale Exhibit 31 | Hemstock Exhibit 45; Triglia Exhibit 31 | A memorandum to Mr. Hemstock from Mr. Triglia dated 7-17-79 |
| Gale Exhibit 50 | Hemstock Exhibit 50 | Copies of Publications, raw data and reports contained in a binder |

## 11 out of 15 (73%)

Case 2:11-cv-01754-RRM-AMF   Document 521-29   Filed 05/17/12   Page 116 of 130 PageID-3129





5/9/12 Hemstock Dep. 49:3–52:12

143

# Documents Justice Rivera Soto Should Examine

# The Documents Withheld from the Cahill Compilation (Ex. 3)



CAHILL COLLECTION OF TESTING DOCUMENT
[EXCLUDING PRIVILEGED DOCUMENTS]

PRIVILEGED DOCUMENT
INTENTIONALLY OMITTED

*Sampson* Privilege Log Entry: Volk BASF 00001

"According to BASF the compilation contains additional documents that BASF continues to withhold under a claim of privilege."

7/18/17 Steinmetz Dep. 58:17– 62:4, 80:12–82:2; ECF 370 (Pl's Br.) at 6

166

# All Documents Reviewed by Justice Stein



**The full evidentiary record developed in the *Sampson* matter, should be received and considered.**



SUPERIOR COURT OF NEW JERSEY

CHAMBERS OF
ANA C. VISCOMI J.S.C.
JUDGE

MIDDLESEX COUNTY COURT HOUSE
P.O. BOX 964
New Brunswick, New Jersey 08903-0964

**AUDREY SAMPSON**, individually and as
Executrix of the Estate of John Sampson

*Plaintiffs*,

v.

**3M COMPANY**, f/k/a Minnesota Mining &
Manufacturing Company;
**ASBESTOS CORPORATION LTD.**, in itself
and as successor to Johnson's Company;
**BASF CATALYSTS LLC.**, individually and
as Successor to Engelhard Minerals and
Chemical Corp.;
**BELL ASBESTOS MINES LTD;**
**BENJAMIN MOORE PAINT COMPANY;**
**CARBOLA CHEMICAL COMPANY;**
**CERTAINTEED CORPORATION;**
**CSR LIMITED**, individually as successor to
Colonial Sugar & Refinery Company;
**DANA COMPANIES, LLC.**, f/k/a Dana
Corporation;
**DAP PRODUCTS, INC.;**
**EASTERN MAGNESIA TALC
COMPANY;**
**E.I. DuPONT de NEMOURS;**
**GEORGIA PACIFIC CORPORATION;**
**GOUVERNEUR TALC COMPANY INC.;**
**INTERNATIONAL PAPER COMPANY,**
Individually and as successor to Strathmore
Paper Co.;
**INTERNATIONAL TALC COMPANY;**
**KAISER GYPSUM CORPORATION;**
**KELLY-MOORE PAINT COMPANY;**
**KENTILE FLOORS INC.;**
**OWENS-ILLINOIS, INC.;**
**METROPOLITAN LIFE INSURANCE
CO.;**
**R.T. VANDERBILT COMPANY, INC.;**
**RAPID AMERICAN CORPORATION**, in
itself and successor to Philip Carey
Manufacturing Company, Carey Canadian
Mines, Ltd and Quebec Asbestos Corporation
Ltd.;

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:MIDDLESEX COUNTY
DOCKET NO. MID-L-5384-11AS

Civil Action

**ORDER**

**FILED**

JUL -7 2017

ANA C. VISCOMI, J.S.C.

"[Plaintiffs] also respectfully submit that the Court should be provided with all of the transcripts and documents produced or developed before Justice Stein in *Sampson*"

**ECF 370 (Pl.'s Br.) at 37**

168

# All Documents Related to Creation and Distribution of Ashton Affidavit

**Ashton Affidavit**
**5/8/1989**

| | | | |
|---|---|---|---|
| 3/16/1989 | O'Shaughnessy, J.* | Dembrow, I.* | Memo and attachment reflecting joint defense communication regarding talc litigation. |
| 4/4/1989 | Dembrow, I.* | O'Shaughnessy, J.*; Sloane, P.*; Sarner, E.* | Memo providing legal analysis regarding preparation of Ashton affidavit. |
| 4/4/1989 | Dembrow, I.* | O'Shaughnessy, J.*; Sloane, P.*; Sarner, E.* | Letter containing attorney-client communication regarding Engelhard talc litigation. |
| 4/17/1989 | Friedman, J.*; Fliegel, L.*; Sloane, P.* | Dombusch, A.*; Corbean, M.; Mueller, M. | Letter containing legal strategy regarding pending litigation and handwritten notes. |
| 4/24/1989 | Sloane, P.*; Silverman, L.*; Dembrow, I.*; Finnegan, K.*; Sarner, E.* | Dombusch, A.*; Fliegel, L.* | Memo containing legal analysis regarding talc litigation case status and mental impressions of counsel. |
| 4/25/1989 | Dembrow, I.* | Dombusch, A.*; Fliegel, L.*; Sloane, P.*; Silverman, L.*; | Memo and attachments transmitting status report and mental impressions of counsel regarding pending litigation. |
| 4/26/1989 | O'Shaughnessy, J.* | Dembrow, I.* | Status report transmitting attorney-client communication regarding Engelhard talc litigation. |
| 4/28/1989 | Sloane, P.* | Dombusch, A.* | Letter transmitting attorney-client communication regarding Ashton affidavit. |
| 4/28/1989 | Sloane, P.*; Silverman, L.*; Dembrow, I.*; Finnegan, K.*; | Insurers | Status report containing legal analysis regarding talc litigation. |
| 5/1/1989 | Dembrow, I.* | O'Shaughnessy, J.*; Sloane, P.*; Sarner, E.* | Letter and attachment containing attorney-client communication regarding Ashton affidavit. |
| 5/5/1989 | Dembrow, I.* | Ashton, W.; O'Shaughnessy, J.*; Sloane, P.* | Letter and attachment containing attorney-client communication regarding Aston affidavit. |
| 5/8/1989 | Ashton, W. | Dembrow, I.*; O'Shaughnessy, J.*; Semple, B. | Letter containing attorney-client communication regarding Ashton affidavit. |
| 5/16/1989 | Sloane, P.* | DeVries, S.* | Letter seeking legal analysis regarding California talc litigation. |
| 5/18/1989 | Dembrow, I.* | Dombusch, A.*; Fliegel, L.*; Sloane, P.* | Memo and attachments transmitting W. Ashton affidavit. |

169

**Carter Affidavit**
**8/18/1989**

| Date | From | To | Description |
|---|---|---|---|
| 7/27/1989 | Komarnicki, V.* | Dembrow, I.*; Sarner, E.* | Letter transmitting correspondence and discovery responses in Pennsylvania talc litigation. |
| 8/16/1989 | Sloane, P.* | Dornbusch, A.*; Fliegel, L.* | Letter and attachment containing attorney-client communication regarding Pennsylvania talc litigation strategy. |
| 8/16/1989 | Sarner, E.* | Sloane, P.* | Memo and attachments containing impressions of counsel regarding Pennsylvania talc litigation strategy. |
| 8/16/1989 | Sloane, P.* | Dornbusch, A.*; Fliegel, L.* | Letter and attachments containing attorney-client communication regarding Pennsylvania talc litigation strategy. |
| 8/17/1989 | Sarner, E.* | Sloane, P.* | Fax with attachments containing mental impressions of counsel regarding Pennsylvania talc litigation. |
| 8/18/1989 | Carter, C. | LaTorre, L; Dornbusch, A.* | Letter and attachment transmitting signed C. Carter affidavit. |
| 8/22/1989 | Sarner, E.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.*; Dembrow, I.* | Letter containing attorney-client communication regarding Pennsylvania tireworkers' litigation. |
| 8/22/1989 | Sarner, E.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.*; Dembrow, I.*; MH; | Letter containing attorney-client communication regarding Pennsylvania tireworkers' litigation. |
| 8/22/1989 | Sarner, E.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.*; Dembrow, I.* | Letter containing attorney-client communication regarding Pennsylvania talc litigation. |

# Documents Related in Time to Asbestos in Mine Study



The following is a review and update on the talc investigation which was initiated in February 1979. The investigation itself concerns the identification of contaminants in a number of talc production samples using transmission electron microscopy.

**\* \* \***

Thirty-eight mine crushed rock samples have been sent to the Georgia Institute of Technology for qualitative transmission electron microscopy investigations.

| | | | | | |
|---|---|---|---|---|---|
| PRIV000321 | 3/28/1979 | Yunko, A. | Brush, J.M.*; Hemstock, G. | Attorney-Client | Memo reflecting legal advice regarding talc testing. |
| PRIV001685 | 3/28/1979 | Yunko, A. | Brush, J.*; Hemstock, G. | Attorney-Client | Memo reflecting request for legal advice from J. Brush* regarding talc testing. |
| PRIV001633 | 5/2/1979 | Triglia, E. | Brush, J.M.*; Clarke, C.C.; Dzierzanowski, F.; Gale, P.; | Attorney-Client | Memo and attachments reflecting request for legal advice regarding talc testing. |
| PRIV001786 | 5/2/1979 | Triglia, E. | Brush, J.*; Clark, C.; Dzierzanowski, F.; Gale, P.; Hemstock, G.; Jacobs, | Attorney-Client | Memo and attachments reflecting request for legal advice from J. Brush* regarding talc testing and product labeling. |
| PRIV001672 | 5/14/1979 | Triglia, E. | Brush, J.*; Hemstock, G.; ALY; CCC; DAJ; FJD; JVK; MJZ; PNG | Attorney-Client | Memo reflecting request for legal advice from J. Brush* regarding talc testing. |

See p. 22 of Plaintiffs' Brief.

# Documents From the *Westfall* Settlement to Purge Memo



March 7, 1984
Purge Memo

| 1/31/1984 | Cahill, Gordon, & Reindel LLP* | Campo, B.*; Dornbusch, A.* | Draft letter containing impressions of counsel regarding auditor requests. |
|---|---|---|---|
| 2/22/1984 | Sloane, P.* | Kohn, I.* | Memo reflecting mental impressions of counsel regarding draft file preservation policy. |
| 2/23/1984 | Devine, R. | Dornbusch, A.*; Halket, T.*; Pagonis, J.; Sloane, P.* | Memo reflecting attorney-client communications regarding Westfall settlement payment. |
| 2/24/1984 | Cahill, Gordon, & Reindel LLP* | Dornbusch, A.* | Memo containing attorney-client communication regarding talc litigations |
| 3/7/1984 | Sloane, P.* | Kempko | Memo reflecting attorney-client communications and mental impressions of counsel regarding file preservation. |
| 3/7/1984 | Sloane, P.* | Kempko | Memo reflecting attorney-client communications and mental impressions of counsel regarding Engelhard talc file preservation. |
| 3/7/1984 | Sloane, P.* | Kempko | Memo reflecting attorney-client communications and mental impressions of counsel regarding file preservation. |
| 3/7/1984 | Sloane, P.* | Kempko | Memo reflecting attorney-client communications and mental impressions of counsel regarding file preservation. |
| 3/7/1984 | Sloane, P.* | Kempko | Memo reflecting attorney-client communications and mental impressions of counsel regarding file preservation. |

# Documents From the *Westfall* Settlement to Purge Memo



| Date | From | To | Description |
|---|---|---|---|
| 10/28/1983 | Sloane, P.* | Ilardi, J. | Letter containing communications with insurer, mental impressions of counsel and legal strategy regarding settlement in Westfall litigation. |
| 10/28/1983 | Orce, K.* | Dornbusch, A.*; Kohn, I.*; Halket, T.* | Letter to client reflecting legal advice and mental impressions of counsel regarding mine acquisition. |
| 10/28/1983 | Sloane, P.* | Ilardi, J. | Letter containing communications with insurer, mental impressions of counsel and legal strategy regarding settlement in Westfall litigation. |
| 11/14/1983 | Wiest, E.* | N/A | Memo to file providing legal advice regarding material safety data sheets. |
| 11/14/1983 | Wiest, E.* | N/A | Memo to file providing legal advice regarding material safety data sheets. |
| 11/30/1983 | Wiest, E.* | N/A | Memo to file containing legal research and analysis regarding government regulatory standards. |
| 11/30/1983 | Wiest, E.* | N/A | Memo to file containing legal research and analysis regarding government regulatory standards. |
| 12/4/1983 | Sloane, P.* | Dornbusch, A.*; Hyde, D.*; Kohn, I.* | Letter and attachments transmitting legal advice regarding government regulatory standards. |
| 12/7/1983 | Kennedy, P.* | Sloane, P.* | Letter reflecting mental impressions of counsel regarding documents in Westfall litigation. |
| 12/7/1983 | Kennedy, P.* | Sloane, P.* | Letter reflecting mental impressions of counsel regarding documents in Westfall litigation. |
| 12/28/1983 | Cahill, Gordon, & Reindel LLP* | N/A | Draft report reflecting mental impressions of counsel regarding draft records retention policy of Engelhard files. |
| 12/29/1983 | Wiest, E.* | N/A | Memo reflecting mental impressions of counsel regarding talc specifications and advertising. |
| 1/4/1984 | Cangelosi, M. | Sloane, P.* | Letter reflecting legal strategy and transmitting documents at the request of T. Halket regarding expert in Westfall litigation. |
| 1/4/1984 | Cangelosi, M. | Sloane, P.* | Letter reflecting legal strategy and transmitting documents at the request of T. Halket* regarding expert in Westfall litigation. |
| 1/9/1984 | Sloane, P.* | N/A | Memo to file reflecting attorney-client communications and mental impressions of counsel regarding Westfall litigation documents. |
| 1/9/1984 | Sloane, P.* | N/A | Memo to file reflecting attorney-client communications and mental impressions of counsel regarding Westfall litigation documents. |
| 1/9/1984 | Sloane, P.* | N/A | Memo to file reflecting attorney-client communications and mental impressions of counsel regarding Westfall litigation documents. |
| 1/13/1984 | Cahill, Gordon, & Reindel LLP* | N/A | Memo regarding legal services rendered in talc litigation. |
| 1/30/1984 | Sloane, P.* | Orce, K.* | Memo containing impressions of counsel regarding auditor requests. |

# Documents Related Directly to Fraudulent Misrepresentations



| 5/18/1989 | Dembrow, I.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.* | Memo and attachments transmitting W. Ashton affidavit. |
|---|---|---|---|
| 5/18/1989 | Dembrow, I.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.* | Letter containing attorney-client communication regarding Engelhard talc Pennsylvania case. |
| 5/24/1989 | Dornbusch, A.* | Friedman, J.*; Sloane, P.*; Dembrow, I.*; Fliegel, L.* | Letter seeking legal advice regarding pending California litigation. |
| 6/2/1989 | Dembrow, I.* | DeVries, S.*; Sloane, P.* | Letter and attachment seeking legal advice regarding California litigation. |
| 6/7/1989 | Dembrow, I.* | N/A | Memo seeking legal analysis regarding requests by plaintiffs' counsel in Pennsylvania talc case. |
| 6/14/1989 | Schwartz, J.*; Rothenberg, A.* | Komarnicki, V.*; Dembrow, I.* | Handwritten notes reflecting mental impressions of counsel regarding talc litigation strategy. |
| 6/16/1989 | Dembrow, I.* | Carter, C.; Sloane, P.* | Letter and attachments containing draft pleadings in Pennsylvania talc litigation. |
| 6/20/1989 | Komarnicki, V.* | Dembrow, I.*; Sarner, E.* | Letter containing mental impressions of counsel regarding Pennsylvania talc litigation. |
| 6/20/1989 | Sloane, P.*; Silverman, L.*; Dembrow, I.*; Finnegan, K.*; | Dornbusch, A.*; Fliegel, L.* | Status report transmitting mental impressions of counsel regarding pending litigation. |
| 6/20/1989 | Sloane, P.*; Silverman, L.*; Dembrow, I.*; Finnegan, K.*; | Dornbusch, A.*; Fliegel, L.* | Status report transmitting mental impressions of counsel regarding pending litigation. |
| 7/12/1989 | Sarner, E.* | Sloane, P.*; Dembrow, I.*; Komarnicki, V.* | Memo seeking legal analysis regarding requests by plaintiffs' counsel in Pennsylvania talc case. |
| 7/17/1989 | Cahill, Gordon, & Reindel LLP* | N/A | Memo regarding legal services rendered. |
| 7/19/1989 | Schwartz, J.* | Sarner, E.*; Komarnicki, V.*; Dembrow, I.* | Handwritten notes reflecting mental impressions of counsel regarding talc litigation. |
| 7/27/1989 | Komarnicki, V.* | Dembrow, I.*; Sarner, E.* | Letter transmitting correspondence and discovery responses in Pennsylvania talc litigation. |
| 8/16/1989 | Sloane, P.* | Dornbusch, A.*; Fliegel, L.* | Letter and attachment containing attorney-client communication regarding Pennsylvania talc litigation strategy. |
| 8/16/1989 | Sarner, E.* | Sloane, P.* | Memo and attachments containing impressions of counsel regarding Pennsylvania talc litigation strategy. |
| 8/16/1989 | Sloane, P.* | Dornbusch, A.*; Fliegel, L.* | Letter and attachments containing attorney-client communication regarding Pennsylvania talc litigation strategy. |

Ex. 21(b)

# Documents Related in Time to Fraudulent Misrepresentations

| 12/28/2007 | Greenberg, J.* | Stryker, D.*; Brophy, M.* | Email transmitting legal strategy regarding New Jersey talc litigation. |
|---|---|---|---|
| 1/4/2008 | Sullivan, M.* | Dembrow, I.* | Email and attachments transmitting mental impressions of counsel regarding pending litigation. |
| 1/22/2008 | Dembrow, I.* | Sullivan, M.*; Sloane, P.* | Email and attachment containing mental impressions of counsel regarding Fuschino matter. |
| 3/13/2008 | Garcia, G. | Brophy, M.* | Email and attachment containing indices regarding pending and anticipated litigation. |
| 3/13/2008 | Brophy, M.* | N/A | Email and attachment containing legal analysis regarding defense of Emtal claims. |

**App'x A, Tab BB**

# Documents Related to Martin Case



| | | | |
|---|---|---|---|
| 7/22/2005 | Dembrow, I.* | Sullivan, M.* | Email containing legal strategy regarding Cahill, Gordon, & Reindel LLP's review of Westfall depositions. |
| 8/1/2005 | Sloane, P.* | Spivak, L.* | Email containing legal strategy regarding Engelhard Martin case. |
| 8/4/2005 | Sullivan, M.* | Hassett, M.*; Spivak, L.*; Sloane, P.* | Email containing attorney-client communication regarding California and Rhode Island talc litigation. |
| 8/10/2005 | Merten, H.* | Spivak, L.*; Hassett, M.*; Sloane, P.*; Sullivan, M.* | Email containing attorney-client communication regarding discovery in Martin litigation. |
| 9/1/2005 | Merten, H.* | Spivak, L.*; Sloane, P.*; Sullivan, M.*; Hassett, M.* | Email containing attorney-client communication regarding Martin deposition exchange and strategy. |
| 9/1/2005 | Spivak, L.* | Merten, H.*; Sloane, P.*; Sullivan, M.*; Silver, E.* | Email containing mental impression of counsel regarding Rhode Island talc litigation. |
| 9/7/2005 | Cahill, Gordon, & Reindel LLP* | N/A | Report reflecting legal services rendered in defense of Emtal claims. |
| 11/4/2005 | Dembrow, I.* | Spivak, L.*; Sloane, P.*; Silver, E.*; Sullivan, M.* | Email containing mental impressions of counsel regarding interview with R. Miller. |
| 11/9/2005 | Spivak, L.* | Merten, H.*; Sloane, P.*; Sullivan, M.*; Dembrow, I.* | Email containing mental impressions of counsel regarding Engelhard Martin (Rhode Island) litigation. |
| 12/14/2005 | Cahill, Gordon, & Reindel LLP* | N/A | Status Report containing legal analysis regarding pending litigations. |
| 12/16/2005 | Spivak, L.* | Hassett, M.*; Merten, H.*; Sullivan, M.*; Sloane, P.*; | Email containing attorney-client communication regarding Martin talc litigation. |
| 12/16/2005 | Sullivan, M.* | Spivak, L.*; Hassett, M.*; Merten, H.*; Sloane, P.*; Dornbusch, A.*; | Email reflecting attorney-client communication regarding pending Emtal litigation. |
| 12/19/2005 | Spivak, L.* | Sullivan, M.*; Dembrow, I.* | Email chain containing attorney-client communication regarding legal strategy in the Martin litigation. |
| 12/19/2005 | Spivak, L.* | Sullivan, M.*; Dembrow, I.* | Email chain containing attorney-client communication regarding legal strategy in the Martin litigation. |
| 1/3/2006 | Sullivan, M.* | Spivak, L.*; Dembrow, I.* | Email and attachment regarding status of former Emtal employees. |

178



| 7/27/1989 | Komarnicki, V.* | Dembrow, I.*; Sarner, E.* | Letter transmitting correspondence and discovery responses in Pennsylvania talc litigation. |
|---|---|---|---|
| 8/16/1989 | Sloane, P.* | Dornbusch, A.*; Fliegel, L.* | Letter and attachment containing attorney-client communication regarding Pennsylvania talc litigation strategy. |
| 8/16/1989 | Sarner, E.* | Sloane, P.* | Memo and attachments containing impressions of counsel regarding Pennsylvania talc litigation strategy. |
| 8/16/1989 | Sloane, P.* | Dornbusch, A.*; Fliegel, L.* | Letter and attachments containing attorney-client communication regarding Pennsylvania talc litigation strategy. |
| 8/17/1989 | Sarner, E.* | Sloane, P.* | Fax with attachments containing mental impressions of counsel regarding Pennsylvania talc litigation. |
| 8/18/1989 | Carter, C. | LaTorre, L.; Dornbusch, A.* | Letter and attachment transmitting signed C. Carter affidavit. |
| 8/22/1989 | Sarner, E.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.*; Dembrow, I.* | Letter containing attorney-client communication regarding Pennsylvania tireworkers' litigation. |
| 8/22/1989 | Sarner, E.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.*; Dembrow, I.*; MH; | Letter containing attorney-client communication regarding Pennsylvania tireworkers' litigation. |
| 8/22/1989 | Sarner, E.* | Dornbusch, A.*; Fliegel, L.*; Sloane, P.*; Dembrow, I.* | Letter containing attorney-client communication regarding Pennsylvania talc litigation. |

**To the Federal MDL Judge Charles Weiner**

**Ex. 18**

# Documents Related in Time to Fraud Discovery in 2009

| | | | |
|---|---|---|---|
| 6/16/2009 | Sloane, P.* | Dembrow, I.*; Sullivan, M* | Email containing attorney-client communication regarding deposition of D. Swanson in Paduano case. |
| 6/16/2009 | Kelly, R.* | Greenberg, J.*; Egler, T.*; Delaney, C.* | Email containing attorney-client communication regarding deposition of D. Swanson in Paduano case. |
| 6/16/2009 | Greenberg, J.* | Delaney, C.*; Behm, E. | Email containing attorney-client communication regarding talc litigation strategy in Paduano case. |
| 6/16/2009 | Sloane, P.* | Dembrow, I.*; Sullivan, M* | Email containing attorney-client communication regarding deposition of D. Swanson in Paduano case. |
| 6/18/2009 | Stryker, D.* | Delaney, C.*; Dembrow, I.*; Sloane, P.*; Kelly, R.*; Littleton, | Email containing attorney-client communica_____ Paduano case. |
| 6/18/2009 | Dembrow, I.* | Sloane, P.*; Sullivan, M.* | Email and attachment containing legal analy_____o talc litigation. |
| 6/22/2009 | Kelly, R.* | Delaney, C.* | Email containing attorney-client communica_____ Paduano case. |
| 7/7/2009 | Dembrow, I.* | Kelly, R.*; Delaney, C.*; Coleman, L.* | Email containing attorney-client communication regarding disco___y in New Jersey talc cases. |
| 7/13/2009 | Littleton, R.* | Stryker, D.*; Sloan. P.*; Egler, T.* | Email reflecting mental impressions of counsel regarding discussion with A. Dornbusch* regarding Paduano case. |
| 7/16/2009 | Bernardi, S.* | Barron, S. | Email and attachments containing mental impressions of counsel regarding pending silica and talc litigation. |
| 7/22/2009 | Prevete, J.* | McCloud, C.*; Desai, S.* | Email and attachment transmitting legal analysis regarding summaries of claims and mental impressions of counsel. |
| 8/3/2009 | Bernardi, S.* | Coppola, M.; Greenberg, J.*; Bernardi, S.*; Bernardi, S.* | Email and attachment containing attorney-client communication regarding status of talc litigation. |

**"discussion with A. Dornbusch regarding Paduano case"**