# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|

**KIMBERLEE WILLIAMS**, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; **NANCY PEASE**, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; **MARILYN L. HOLLEY**, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; **DONNA WARE**, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; and **DONNETTE WENGERD**, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate, and as representative of others similarly situated, and **ROSANNE CHERNICK**, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated,

Plaintiffs,

v.

**BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, CAHILL GORDON & REINDEL**, a partnership including a professional corporation, **THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, GLEN HEMSTOCK, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, JOHN DOE BUSINESS ENTITIES 1 to 100; JOHN DOE BUSINESS ENTITIES 101 to 200; JOHN DOE LAWYERS 1 to 500**; and, **JOHN DOE 1 to 500**,

Defendants.

No.  11-cv-1754 (JLL) (JAD)


CIVIL ACTION


**DEFENDANT BASF CATALYSTS LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES [ECF NO. 516]**

---

Eugene F. Assaf, P.C. (*pro hac vice*)
Michael F. Williams
Daniel A. Bress (*pro hac vice*)
Peter A. Farrell (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

Justin T. Quinn
Robinson Miller LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
Phone: (973) 690-5400
Facsimile: (973) 466-2760

*Counsel for Defendant BASF Catalysts LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................1

      A.     Plaintiffs' First and Second Sets of Interrogatories .............................2

      B.     Plaintiffs' Third Set of Interrogatories ..................................................6

      C.     BASF's Objections and Meet and Confer Efforts ..............................11

ARGUMENT ......................................................................................................13

I.     PLAINTIFFS' THIRD SET OF INTERROGATORIES
      EXCEEDS THE 25-INTERROGATORY LIMIT ........................................13

II.    INTERROGATORIES NOS. 9, 10, AND 11 CALL FOR
      INFORMATION THAT IS IRRELEVANT OR THAT
      PLAINTIFFS HAD AMPLE OPPORTUNITY TO DEVELOP .................17

III.   INTERROGATORIES 9, 10, AND 11 ARE UNDULY
      BURDENSOME.........................................................................................23

CONCLUSION ...................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avago Techs. U.S., Inc v. IPtronics Inc*,
  309 F.R.D. 294 (E.D. Pa. 2015) ......................................................................... 21

*Doe v. Methacton Sch. Dist.*,
  164 F.R.D. 175 (E.D. Pa. 1995) ......................................................................... 21

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
  2012 WL 628320 (D.N.J. Feb. 27, 2012) ........................................................... 22

*Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*,
  2017 WL 2371834 (D.N.J. Feb. 10, 2017) ......................................................... 14

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*,
  2011 WL 13199148 (M.D. Pa. Dec. 21, 2011) ................................................... 20

*Kleinman v. Merck & Co.*,
  8 A.3d 851 (N.J. Law Div. 2009) ....................................................................... 20

*Knit With v. Knitting Fever, Inc.*,
  2010 WL 11474937 (E.D. Pa. Jan. 22, 2010) ..................................................... 14

*Kokesh v. S.E.C.*,
  137 S. Ct. 1635 (2017) ........................................................................................ 20

*Makaeff v. Trump Univ., LLC*,
  2014 WL 3490356 (S.D. Cal. July 11, 2014) ..................................................... 17

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Becton, Dickinson & Co.*,
  2018 WL 627378 (D.N.J. Jan. 30, 2018) ............................................................ 18

*Pulchalski v. Franklin Cty.*,
  2017 WL 57143 (M.D. Pa. Jan. 5, 2017) ...................................................... 14, 15

*Rosenblit v. Zimmerman*,
  766 A.2d 749 (N.J. 2001) ................................................................................... 19

*S.E.C. v. Teo*,
  746 F.3d 90 (3d Cir. 2014) ................................................................................. 20

*Tartaglia v. UBS PaineWebber Inc.*,
    961 A.2d 1167 (N.J. 2008) .................................................................19

*Travillion v. Allegheny Cty. Bureau of Corr.*,
    2009 WL 1457720 (W.D. Pa. May 22, 2009) ....................................21

*Trevino v. ACB American, Inc.*,
    232 F.R.D. 612 (N.D. Cal. 2006)........................................................17

*Waterbury v. Scribner*,
    2008 WL 2018432 (E.D. Cal. May 8, 2008) ......................................15

*Williams v. BASF Catalysts LLC*,
    765 F.3d 306 (3d Cir. 2014) ...............................................................19

*Younes v. 7-Eleven, Inc.*,
    2015 WL 12843883 (D.N.J. Aug. 19, 2015) ......................................22

**Rules**

Fed. R. Civ. P. 26 ....................................................................................18, 22

Fed. R. Civ. P. 33(a)....................................................................................13

## INTRODUCTION

BASF opposes plaintiffs' motion to compel further responses to Interrogatories 9, 10, and 11 in plaintiffs' Third Set of Interrogatories. ECF No. 516. Those three interrogatories each call for extensive information about past legal fees and claims in thousands of cases spanning 1979 to 2017. And they in each case require BASF to prepare discrete calculations for massive grids spanning decades. The grid in Interrogatory No. 9 alone, for example, calls for 234 independent calculations.

It is hard to know where to begin in explaining why these three interrogatories are so improper, and why plaintiffs' motion to compel should thus be denied. Plaintiffs have vastly exceeded their 25-interrogatory limit, and plaintiffs' motion can be denied on that basis alone. The interrogatories also call for information that is either not relevant to this case, such as itemized calculations of the amounts of legal fees Engelhard and BASF paid, including since 2009, when plaintiffs' counsel first raised the fraud allegations at issue here. The interrogatories otherwise call for information about past settlements that either does not exist, is not readily accessible, or that plaintiffs could attempt to prepare themselves.

Although plaintiffs claim BASF has at the ready the information they are requesting, plaintiffs offer no record support for that assertion, and it is untrue. What is really going on here is that, years into this case, plaintiffs did nothing to build a

record on damages and are now asking BASF to do their work for them, even as much of the information requested has no plausible connection to any permissible damages theory.  It only adds to the prejudice that plaintiffs substantially delayed in moving to compel this information and are only doing so now, in the twilight of the discovery period.  Plaintiffs' motion is improper, prejudicial, and should be denied.

## BACKGROUND

### A.    Plaintiffs' First and Second Sets of Interrogatories

Plaintiffs motion to compel responses to their Third Set of Interrogatories leaves out important background information, namely, plaintiffs' First and Second Set of Interrogatories.  Ex. A (10/23/15 Pls.' Interrogs., Set 1); Ex. B (1/22/18 Pls.' Interrogs., Set 2).  Under this Court's Scheduling Order, 10/17/16 Order (ECF No. 221), each party was allowed 25 additional interrogatories following entry of the scheduling order.  That limitation was imposed against the backdrop of Federal Rule of Civil Procedure 33(a), which provides a default limit of 25 interrogatories. Plaintiffs had already served a first set of interrogatories prior to entry of the scheduling order and served a second set shortly afterward.  Collectively, plaintiffs' first two sets of interrogatories—which were all served on behalf of all plaintiffs— contained 21 interrogatories, although with subparts and other requests, the number was vastly higher, as discussed below.  Indeed, the Second Set of Interrogatories itself exceeded the 25-interrogatory limit.

In both their First and Second Sets of Interrogatories, plaintiffs requested information about past Emtal talc settlements, fees, and claims. *See, e.g.*, Ex. A (10/23/15 Pls.' Interrogs., Set 1, Nos. 2, 6, 17). On December 23, 2016, BASF served extensive responses to Plaintiffs' First Set of Interrogatories, Ex. C (12/23/16 BASF Resps. to Pls.' Interrogs., Set 1), including by referencing and providing the Cahill database, which Cahill had prepared while it was defending Emtal-related cases. Plaintiffs had asked BASF to provide the amounts of fees it had paid Cahill, but BASF objected to this as irrelevant and unduly burdensome. (12/23/16 BASF Resps. to Pls.' Interrogs., Set 1, Resp. to No. 17). Plaintiffs never moved to compel on any of these responses.

On January 18, 2018, plaintiffs served a Second Set of Interrogatories that also requested extensive information about past cases and settlements. Ex. B (1/22/18 Pls.' Interrogs., Set 2). For example, plaintiffs' first interrogatory in their Second Set requested the following:

**<u>INTERROGATORY NO. 1:</u>**

Please identify all settlements You entered into between January 1, 1983 and December 31, 2009, inclusive, where the plaintiff or claimant (or his/her personal representative) claimed an injury due to alleged exposure to EMTAL talc. For each such settlement please include in your answer:

a. The asbestos related disease the plaintiff or claimant alleged he or she suffered from;

b. Whether You contested the diagnosis of the asbestos related disease alleged by the plaintiff or claimant;

c. The nature of the alleged exposure to EMTAL talc, including whether exposure allegedly occurred with EMTAL talc itself or as an ingredient of another product using EMTAL talc, such as Bondo;

d. The jurisdiction where the case was filed;

e. The amount of the settlement;

f. The name of the plaintiff or claimant's lawyer;

g. The amount paid by Your insurance carriers to settle the case;

h. The amount paid directly by You to settle the case;

i. The amount paid by or on behalf of You to Your attorneys prior to the dismissal of the plaintiff's claim;

j. Whether any attorney for You ever represented to the lawyer for the plaintiff or claimant that there was no asbestos in EMTAL talc, including the Attorney's name who made the representation;

k. Whether You ever represented to the lawyer for the plaintiff or claimant that there was no evidence of asbestos in EMTAL talc, including the name of the person who made the representation and his or her authority;

l. Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's affidavit and if so by whom and why;

m. Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed by Mr. Charles Carter as affiant, and if so by whom and why;

n. Whether You had in Your possession at the time of dismissal any evidence indicating EMTAL talc was sold to plaintiff or claimant's employer; and

o. Whether the reason for the amount of the settlement was reported to the insurance carrier for You

*Id.*, Interrog. No. 1.

BASF objected that plaintiffs' Second Set of Interrogatories as "exceed[ed] the limit on interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1)," but nevertheless served a substantial response to Interrogatory No. 1 that also referenced various documents, including the Cahill database. Ex. D (3/7/18 BASF Resps. to Pls.' Interrogs., Set 2). BASF also "refer[red] plaintiffs to the documents, databases, and other information in the possession, custody, or control of the lawyers who represented plaintiffs in past litigation matters," noting that "lawyers for past plaintiffs possess substantial information that is responsive to this interrogatory but have asserted objections and refused to produce responsive information, particularly as to members of the putative class." *Id.* at Resp. to Interrog. No. 1.

Plaintiffs had also requested various information about the lawyers who had worked on the Emtal cases, including fees paid to each. Ex. B (1/22/18 Pls.' Interrogs., Set 2, No. 4). BASF again provided an extensive response, but objected to providing information on legal fees, as irrelevant and unduly burdensome. Ex. D (3/7/18 BASF Resps. to Pls.' Interrogs., Set 2, No. 4). Plaintiffs once again did not move to compel on any responses.

In addition to these interrogatories, plaintiffs had ample opportunity to gather information relating to the past asbestos cases. In addition to the Cahill database, BASF has produced thousands of other documents based on plaintiffs' own search terms. Plaintiffs also served subpoenas on various insurance companies and

received documents in response.  They further had the opportunity to depose numerous witnesses, including four witnesses on insurance issues.

### B.    Plaintiffs' Third Set of Interrogatories

On March 15, 2018, plaintiffs (again, collectively) served a Third Set of Interrogatories on BASF.  *See* Ex. E (3/15/18 Pls.' Interrogs., Set 3).  This Third Set included 11 more interrogatories calling for a massive amount of additional information about the underlying asbestos claims.  Interrogatories Nos. 9, 10, and 11 are the only ones at issue in the instant motion.  Each of those three interrogatories contains numerous subparts, and then contains yet further subparts through their request that BASF provide information responsive to massive grids.  Interrogatory No. 9 requires BASF to prepare calculations for a 234-cell matrix concerning past legal fees, Interrogatory No. 10 requires BASF to prepare calculations for a 351-cell matrix concerning the resolution of past cases, and Interrogatory No. 11 requires BASF to prepare calculations for a 144-cell matrix concerning past settlements.  *Id.*

It is necessary to quote these three interrogatories in full as part of later demonstrating why they are excessive and improper[1]:

**INTERROGATORY NO. 9:** For each year during the Time Period, and excluding expenditures relating solely to the defense of the present *Williams* case,

---

[1] All text for the remainder of this subsection B are quotes of Interrogatories Nos. 9 to 11.

state: (a) the total aggregate amount of Defense Costs You or anyone on Your Behalf, including without limitation any insurance company, paid to defend EMTAL Claims asserted against You during any portion of the year; (b) the total number of EMTAL Claim Claimants with actions pending against You during any portion of the year; (c) the highest total amount of Defense Costs paid by You or on Your behalf during the year in defending a single EMTAL Claim Claimant's EMTAL Claim; (d) the lowest total amount of Defense Costs paid by You or on Your behalf during the year in defending a single EMTAL Claim Claimant's EMTAL Claim; (e) the arithmetic average (mean) total expenditure amount paid by You or on Your behalf in defending a single EMTAL Claim Claimant's EMTAL Claim during the year; and (f) the median expenditure paid by You or on Your behalf for defending a single EMTAL Claim Claimant's EMTAL Claims during the year

Please use the following matrix to supply this data:

| Year | (a) Total Defense Expenditures | (b) Number of EMTAL Claim Claimants Pending | (c) Highest single Emtal Claim Defense Cost expenditure during period | (d) Lowest single EMTAL claim Defense Cost expenditure | (e) Arithmetic Average (mean) Defense Cost expenditure | (f) Median Defense Cost expenditure |
|------|------|------|------|------|------|------|
| 1979 | $ | | $ | $ | $ | $ |
| 1980 | | | | | | |
| 1981 | | | | | | |
| 1982 | | | | | | |
| 1983 | | | | | | |
| 1984 | | | | | | |
| 1985 | | | | | | |
| 1986 | | | | | | |
| 1987 | | | | | | |
| 1988 | | | | | | |

| 1989 | | | | | |
|------|--|--|--|--|--|
| 1990 | | | | | |
| 1991 | | | | | |
| 1992 | | | | | |
| 1993 | | | | | |
| 1994 | | | | | |
| 1995 | | | | | |
| 1996 | | | | | |
| 1997 | | | | | |
| 1998 | | | | | |
| 1999 | | | | | |
| 2000 | | | | | |
| 2001 | | | | | |
| 2002 | | | | | |
| 2003 | | | | | |
| 2004 | | | | | |
| 2005 | | | | | |
| 2006 | | | | | |
| 2007 | | | | | |
| 2008 | | | | | |
| 2009 | | | | | |
| 2010 | | | | | |
| 2011 | | | | | |
| 2012 | | | | | |
| 2013 | | | | | |
| 2014 | | | | | |
| 2015 | | | | | |
| 2016 | | | | | |
| 2017 | | | | | |

**INTERROGATORY NO. 10:** For each year during the Time Period, and excluding the present *Williams* case, state the number of Emtal Claim Claimants' Emtal Claims that resolved or terminated at or during each of the following claim or litigation stages:

    a. Prior to filing of suit or adjudicative claim.

    b. At or upon filing of suit or adjudicative claim

    c. Filing of Motion to dismiss complaint.

d. The close of the pleadings if no motion to dismiss filed or if filed was not granted in full as to Engelhard or BASF.

e. During discovery but prior to dispositive motions or pretrial conference.

f. Motion for Summary Judgment or similar dispositive motions

g. Pretrial proceedings

h. Trial

i. During Appeal

Please use the following matrix to supply this data:

| Year | a | b | c | d | e | f | g | h | i |
|------|---|---|---|---|---|---|---|---|---|
| 1979 | | | | | | | | | |
| 1980 | | | | | | | | | |
| 1981 | | | | | | | | | |
| 1982 | | | | | | | | | |
| 1983 | | | | | | | | | |
| 1984 | | | | | | | | | |
| 1985 | | | | | | | | | |
| 1986 | | | | | | | | | |
| 1987 | | | | | | | | | |
| 1988 | | | | | | | | | |
| 1989 | | | | | | | | | |
| 1990 | | | | | | | | | |
| 1991 | | | | | | | | | |
| 1992 | | | | | | | | | |
| 1993 | | | | | | | | | |
| 1994 | | | | | | | | | |
| 1995 | | | | | | | | | |
| 1996 | | | | | | | | | |
| 1997 | | | | | | | | | |
| 1998 | | | | | | | | | |
| 1999 | | | | | | | | | |
| 2000 | | | | | | | | | |
| 2001 | | | | | | | | | |
| 2002 | | | | | | | | | |
| 2003 | | | | | | | | | |
| 2004 | | | | | | | | | |
| 2005 | | | | | | | | | |
| 2006 | | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2007 | | | | | | | | | |
| 2008 | | | | | | | | | |
| 2009 | | | | | | | | | |
| 2010 | | | | | | | | | |
| 2011 | | | | | | | | | |
| 2012 | | | | | | | | | |
| 2013 | | | | | | | | | |
| 2014 | | | | | | | | | |
| 2015 | | | | | | | | | |
| 2016 | | | | | | | | | |
| 2017 | | | | | | | | | |

**INTERROGATORY NO. 11:** For each year during the Time Period please state the total amount of Claim Payments You or anyone on Your Behalf, including without limitation any insurance company, paid relating to Emtal Claims; (b) the number of EMTAL Claim Claimants whose Emtal Claims were terminated or resolved by the Claim Payments made during the year; (c) the highest Claim Payment amount paid during the year in relation to a single Emtal Claim Claimant; and (d) the lowest Claim Payment amount paid during the year in relation to a single Emtal Claim Claimant.

Please use the following matrix to supply this data:

| Year | (a) Total Amount of Claim Payments Paid During Year | (b) Number of EMTAL Claim Claimants Claim Payments resolved | (c) Highest Claim Payment to a Single EMTAL Claim Claimant during period | (d) Lowest Claim Payment to a Single EMTAL Claim Claimant during period |
|---|---|---|---|---|
| 1979 | $ | | $ | $ |
| 1980 | | | | |
| 1981 | | | | |
| 1982 | | | | |
| 1983 | | | | |

| 1984 | | | |
|------|--|--|--|
| 1985 | | | |
| 1986 | | | |
| 1987 | | | |
| 1988 | | | |
| 1989 | | | |
| 1990 | | | |
| 1991 | | | |
| 1992 | | | |
| 1993 | | | |
| 1994 | | | |
| 1995 | | | |
| 1996 | | | |
| 1997 | | | |
| 1998 | | | |
| 1999 | | | |
| 2000 | | | |
| 2001 | | | |
| 2002 | | | |
| 2003 | | | |
| 2004 | | | |
| 2005 | | | |
| 2006 | | | |
| 2007 | | | |
| 2008 | | | |
| 2009 | | | |
| 2010 | | | |
| 2011 | | | |
| 2012 | | | |
| 2013 | | | |
| 2014 | | | |
| 2015 | | | |
| 2016 | | | |
| 2017 | | | |

## C.    BASF's Objections and Meet and Confer Efforts

On April 16, 2018, BASF served timely responses and objections to plaintiffs'

third set of interrogatories.  *See* Ex. F (4/16/18 BASF Resps. & Objs.).  BASF

objected to all of plaintiffs' Third Interrogatories because plaintiffs "exceeded their

number of interrogatories allowable" under the Federal Rules and this Court's

October 17, 2016 Order. *Id.* at 2. BASF further objected because "responding to these interrogatories and their subparts would require an enormous investment of resources which is disproportionate to the issues in this case. This is especially true where, as here, the plaintiffs have waited until the waning weeks of discovery to serve these interrogatories." *Id.*

Plaintiffs on April 18, 2018 sent an email to BASF asking to meet and confer regarding BASF's interrogatory responses. *See* Ex. G (4/18/18 R. Pratter Email to P. Farrell). BASF responded the next day, April 19, and attempted to schedule a meet-and-confer the following day, April 20. *See* Ex. H (4/19/18 P. Farrell Email to R. Pratter). Plaintiffs took more than a week to respond and eventually offered to speak on April 29. *See* Ex. I (4/27/18 R. Pratter Email to P. Farrell). Because BASF was fully engaged preparing its experts for the Science Day hearing then scheduled for May 2, BASF offered to meet and confer with plaintiffs in person in Philadelphia either before or after the hearing. Ex. J (4/27/18 P. Farrell Email to R. Pratter). Plaintiffs declined this request. *See* Ex. K (4/30/18 P. Farrell Email to H. Roth).

The parties finally met and conferred by telephone on May 8. BASF reiterated what it had already produced in response to plaintiffs' prior document requests and interrogatories, including the Cahill database, tens of thousands of pages of documents that were identified using search terms plaintiffs themselves crafted, and documents produced by Engelhard's insurers. BASF also explained that

12

Engelhard's defense costs are not relevant and unduly burdensome to calculate in the manner plaintiffs have requested.  BASF also noted that plaintiffs exceeded the number of interrogatories permitted.  On May 15, 2018, plaintiffs filed a motion to compel on only 3 of the 11 interrogatories in Set Three.  This opposition follows.

## ARGUMENT

Plaintiffs' motion to compel further responses to Interrogatories Nos. 9, 10, and 11 is improper and should be denied.  Those interrogatories far exceed the permissible 25-interrogatory limit; call for information, such as legal fees, that is not relevant or proportional to the case; and request other information that would be unduly burdensome for BASF to prepare, that plaintiffs could try to prepare on their own, and that plaintiffs had many opportunities to develop in discovery.  All of this also comes far too late in the discovery process.  It was plaintiffs' obligation to build a record under a permissible damages theory.  They cannot now foist that work upon BASF at the eleventh hour.

## I.   PLAINTIFFS' THIRD SET OF INTERROGATORIES EXCEEDS THE 25-INTERROGATORY LIMIT

Plaintiffs' motion to compel should be denied at the outset because plaintiffs have vastly exceeded the 25-interrogatory limit.   Under Federal Rule of Civil Procedure 33(a)(1), "a party may serve on any other party no more than 25 written interrogatories, *including all discrete subparts*."  (Emphasis added).  By the same token, it is also "well settled that the question whether an interrogatory contains more

than one 'discrete separate subject' does not turn on whether the interrogatory has separately enumerated subparts.  The subparts can be explicit or implicit; the number of subparts does not turn on the formalism of labeling." *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 2371834, at *3 (D.N.J. Feb. 10, 2017) (quotations omitted).  A sub-part or portion of an interrogatory is deemed a separate request when it is not "logically or factually subsumed within and necessarily related to the primary question." *Id.* (quotations omitted); *see also Pulchalski v. Franklin Cty.*, 2017 WL 57143, at *4 (M.D. Pa. Jan. 5, 2017) (finding party exceeded 25-interrogatory limit under this standard); *Knit With v. Knitting Fever, Inc.*, 2010 WL 11474937, at *1 (E.D. Pa. Jan. 22, 2010) (same).

The pretrial scheduling order in this case clarified that each party was permitted to serve 25 additional interrogatories from the time that order was entered, which occurred after plaintiffs and BASF had each served a first set of interrogatories.  A review of plaintiffs' First and Second Set of Interrogatories demonstrates that they each easily exceed the 25-interrogatory limit.  By BASF's count, and counting conservatively, plaintiffs' First Set of Interrogatories, although styled as 17 interrogatories, is in fact closer to 26 separate questions.  And plaintiffs' Second Set of Interrogatories, although styled as 4 interrogatories, is in fact closer to 52 separate questions.  For example, Interrogatory No. 1 in the Second Set, which

BASF quoted in full above, contains 15 unique subparts alone, which would have to be answered for every past Emtal talc settlement.

By any measure, plaintiffs had thus easily exceeded the applicable 25-interrogatory limit by the time they served their Third Set of Interrogatories. But that Third Set, if anything, contains even more true subparts. In fact, the three interrogatories at issue in this motion to compel themselves exceed the 25-interrogatory limit on their own. Interrogatory No. 9 contains six subparts, which must each be answered for every year between 1979 and 2017. This is hundreds of independent questions alone, and the same is true of Interrogatories Nos. 10 and 11.

Such questions requiring various discrete pieces of information for multiple years easily put plaintiffs over the interrogatory limit, as courts have recognized. *See Pulchalski*, 2017 WL 57143, at *4 ("We find that the interrogatories propounded by the plaintiff exceed the 25 interrogatory limit set by Rule 33(a)(1). In particular, we note that a number of these interrogatories are framed in multiple sub-parts asking a series of discrete inquiries about multiple events, spanning several years."); *Waterbury v. Scribner*, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) ("Plaintiff's requests for the separate years from 2004 through to the present are separate and distinct. Interrogatories 2, 3 and 4 will each be treated as five separate interrogatories, for a total of fifteen (15) interrogatories.").

During the meet-and-confer process, plaintiffs provided no basis for exceeding the 25-interrogatory limit. Instead, Mr. Coren for plaintiffs informed BASF that plaintiffs were entitled to additional interrogatories because the Court's appointment of a Special Discovery Master signified an expansion of available discovery (which is not the case). In their motion to compel, plaintiffs now make a completely different argument (and one they never made before) that, in fact, *each named plaintiff* is entitled to serve 25 interrogatories on BASF. Pls.' Br. 3-4.

That *post hoc* justification is not correct. When the parties were discussing the discovery limits with Judge Dickson, there was no suggestion that each named plaintiff would be able to serve 25 additional interrogatories on BASF. Ex. L (10/14/16 Hr'g Tr. 15:6-15). Nor would BASF have ever agreed to a world of lopsided discovery in which plaintiffs could serve 150 interrogatories on BASF, in addition to those served before entry of the scheduling order. Confirming this is not what the parties or Court intended, plaintiffs have never proceeded as though each plaintiff had 25 separate interrogatories to serve. Plaintiffs served all three sets of interrogatories on behalf of "plaintiffs" collectively, not any one plaintiff individually. Ex. A (10/23/15 Pls.' Interrogs., Set 1); Ex. B (1/22/18 Pls.' Interrogs., Set 2); Ex. E (3/15/18 Pls.' Interrogs., Set 3). And even if each plaintiff had 25 interrogatories, each plaintiff has already exceeded that amount by joining in the service of the second set interrogatories, to say nothing of the third.

The sole case plaintiffs' cite, *Trevino v. ACB American, Inc.*, 232 F.R.D. 612 (N.D. Cal. 2006), does not support them.  There, the Court recognized that plaintiffs, like plaintiffs here, had in fact exceeded the interrogatory limit because some of their interrogatories contained multiple independent questions.  *Id.* at 614.  Counting those separate subparts as separate interrogatories, the plaintiffs had exceeded the limits by 7 interrogatories as to one defendant, and 12 as to another, which the Court permitted them to do.  *Id.*  That is a far cry from this case, where plaintiffs are seeking to serve dozens if not hundreds more interrogatories, following a multi-year course of dealing in which plaintiffs never suggested or acted as though they could serve any more than the 25 interrogatories the parties had agreed to before Judge Dickson. *See also Makaeff v. Trump Univ., LLC*, 2014 WL 3490356, at *6 (S.D. Cal. July 11, 2014) (explaining how given overall context of case, plaintiffs were not each allowed 50 interrogatories, contrary to language suggesting that in scheduling order).

## II.   INTERROGATORIES NOS. 9, 10, AND 11 CALL FOR INFORMATION THAT IS IRRELEVANT OR THAT PLAINTIFFS HAD AMPLE OPPORTUNITY TO DEVELOP

Even if plaintiffs could exceed the 25-interrogatory limit, Interrogatories Nos. 9, 10, and 11 would still be impermissible.  Under Rule 26, discovery must be "relevant" and "proportional to the needs of the case," considering factors such as "the importance of the issues at stake," "the importance of the discovery in resolving the issues," "the parties' relative access to relevant information," and "whether the

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of establishing it is subject to production under Rule 26. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Becton, Dickinson & Co.*, 2018 WL 627378, at *4 (D.N.J. Jan. 30, 2018). Plaintiffs cannot meet that burden for Interrogatories 9 to 11. In this section, BASF will explain why the information requested is either irrelevant or information plaintiffs could have prepared on their own, to the extent it exists. In the following section, BASF will explain why these requests are unduly burdensome.

*Interrogatory No. 9*: Interrogatory No. 9 asks for extensive information about defense costs and fees paid to defend Emtal talc cases, from 1979 to 2017, including preparation of a grid requiring 234 independent calculations, such as "the arithmetic average (mean) total expenditure amount paid by You or on Your behalf in defending a single EMTAL Claim Claimant's" for each year in a 38-year period. Ex. E (3/15/18 Pls.' Interrogs., Set 3, No. 9). This includes the period 2009 to 2017, the more modern litigation that post-dates plaintiffs' counsel's raising their fraud allegations in New Jersey state court. Plaintiffs in their brief offer only a single line justifying the enormous amount of information requested in Interrogatory No. 9: "Interrogatory No. 9 would yield information on BASF's knowledge and motive, as well as data that will inform Plaintiffs' expert on damages." Pls.' Br. 9. Neither of these justifications passes muster.

Plaintiffs offer no explanation as to what "knowledge or motive" they are referring to, or how extensive information about legal fees would be relevant to this unidentified "knowledge and motive." Nor do plaintiffs explain the basis for any request for information post-dating 2009, when plaintiffs' counsel "uncovered" the alleged fraud, 7/16/15 2nd Am. Compl. ¶ 7 (ECF No. 158), after which Kirkland & Ellis LLP and other new firms became involved in BASF's defense. Plaintiffs have previously agreed that these later time periods were off limits for discovery purposes. That this time period is part of plaintiffs' Third Set of Interrogatories underscores the overbreadth of the requests. Regardless, plaintiffs have had ample opportunity through other means—other interrogatories, documents, depositions, and so on—to develop evidence going to "knowledge and motive," however defined.

Nor do plaintiffs explain how legal fees Engelhard and BASF paid in defending talc cases would be relevant to plaintiffs' own damages. In the meet-and-confer process, plaintiffs claimed that amounts Engelhard and BASF paid to defend itself in talc cases would be relevant to a "disgorgement" theory. The argument is nonsensical. As the Third Circuit opinion indicates, plaintiffs may attempt to seek damages with reference to their underlying cases and how much they incurred to litigate them without the alleging missing evidence. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 321 (3d Cir. 2014) (citing *Rosenblit v. Zimmerman*, 766 A.2d 749, 758 (N.J. 2001), and *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1190

19

(N.J. 2008)).  Plaintiffs have either failed to develop this evidence in discovery, have refused to produce the information that would allow such calculations, or cannot get around the fact that in the underlying cases, other talc defendants whose products were known to contain asbestos participated in aggregate settlements and paid the same or similar amounts as did Engelhard.

While those difficulties may be the origins of plaintiffs' new "disgorgement" theory, that theory makes no sense in the context of this case.   "Generally, disgorgement is a form of [r]estitution measured by the defendant's wrongful gain. Disgorgement requires that the defendant give up those gains ... properly attributable to the defendant's interference with the claimant's legally protected rights." *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1640 (2017) (quotations omitted); *see also S.E.C. v. Teo*, 746 F.3d 90, 110 (3d Cir. 2014) (purpose of disgorgement is for "wrongdoers to disgorge their fraudulently obtained profits") (quotations omitted); *Kleinman v. Merck & Co.*, 8 A.3d 851, 863 (N.J. Super. Ct. Law Div. 2009) ("The intent of an unjust enrichment cause of action is to receive a 'disgorgement' of the profits retained by the defendant.").

Here, a disgorgement remedy has no conceptual relationship to the amounts Engelhard or BASF *paid* to outside counsel to litigate talc cases, and plaintiffs cite no authority suggesting one.   These legal fees are not "gains" or "profits" for Engelhard or BASF; they are, if anything, losses.  They likewise were not taken from

plaintiffs in any relevant sense, and therefore have no relationship to any damages plaintiffs could claim they sustained, making Interrogatory No. 9 irrelevant here. *See, e.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, 2011 WL 13199148, at *1 (M.D. Pa. Dec. 21, 2011) ("KC now raises another argument concerning damages, but fails to explain (or cite authority explaining) the measure of damages to which the requested information is allegedly relevant.  KC's assertions of relevance are unsupported, and as such, they are not sufficient to convince us that the requested documents are relevant.").

*Interrogatories Nos. 10 and 11***:**  Interrogatories Nos. 10 and 11 request extensive information about past asbestos cases, including the stage of the proceeding in which every case litigated between 1979 and 2017 concluded (Interrogatory 10) and settlement figures and other related data for every year from 1982 to 2017 (Interrogatory No. 11).  Plaintiffs attempt to justify these substantial and burdensome requests by arguing that they would "provide valuable information to Plaintiffs' expert in creating a damages model" and would be "pertinent to a number of issues such as numerosity and ascertainability."  Pls.' Br. 9-10.

These thin justifications are not sufficient, especially given the amount of information sought.  Vague and generic allegations of relevance do not satisfy plaintiffs' burden under Rule 26.  *See, e.g.*, *Avago Techs. U.S., Inc v. IPtronics Inc*, 309 F.R.D. 294, 298–99 (E.D. Pa. 2015); *Travillion v. Allegheny Cty. Bureau of*

*Corr.*, 2009 WL 1457720, at *1 (W.D. Pa. May 22, 2009); *Doe v. Methacton Sch. Dist.*, 164 F.R.D. 175, 176-77 (E.D. Pa. 1995). The requests again call for information from 2009 to 2017, which is improper and problematic for the reasons stated above. And for information prior to 2009, plaintiffs neglect to explain how such information would be relevant to damages or to ascertainability (neither Interrogatory No. 10 nor No. 11 requests the identity of any putative class members).

At bottom, if this is information plaintiffs wanted, they had ample opportunity to gather it during this litigation, both through the documents produced (responsive to plaintiffs' own search terms), the Cahill database, insurers, and so on. Much of the information in question is also in possession of counsel for putative class members. *See* Ex. D (3/7/18 BASF Resps. to Pls.' Interrogs., Set 2 at 3) (noting that "lawyers for past plaintiffs possess substantial information that is responsive to this interrogatory but have asserted objections and refused to produce responsive information, particularly as to members of the putative class"). What plaintiffs cannot do is force BASF to do the work of plaintiffs and their experts. *See, e.g.*, *Younes v. 7-Eleven, Inc.*, 2015 WL 12843883, at *3 (D.N.J. Aug. 19, 2015) (denying discovery because, *inter alia*, material sought was "unnecessarily cumulative" and "resource intensive").

### III. INTERROGATORIES 9, 10, AND 11 ARE UNDULY BURDENSOME

Discovery requests may also "be denied if, after assessing the needs of the case … there exists a likelihood that the resulting benefits would be outweighed by the [consequent] burden or expenses imposed." *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012); *see also* Fed. R. Civ. P. 26(b)(1). Even assuming plaintiffs could exceed the 25-interrogatory limit and their requests were deemed relevant, plaintiffs' motion to compel should be denied in light of the obvious burden that Interrogatories 9 to 11 would impose on BASF.

The breadth of these three interrogatories is remarkable and confirms the burden. For a nearly 40-year period involving what plaintiffs allege are thousands of past asbestos cases in courts around the country, plaintiffs ask BASF to prepare extensive information and calculations about legal fees across decades (Interrogatory No. 9), the point in the litigation at which every past case resolved (Interrogatory No. 10), and settlement figures, including information relating to claims paid by insurers (Interrogatory No. 11). All told, plaintiffs ask BASF to fill in 729 individual cells in three grid matrices, each requiring its own calculation. It is difficult to imagine a more onerous set of interrogatories.

Plaintiffs argue "[i]t is simply inconceivable that BASF does not have the information responsive to Interrogatory Nos. 9, 10 and 11 readily available to it and its counsel who filed these objections." Pls.' Br. 11. But plaintiffs have no record

evidence to support these assertions and took no discovery that would support them. It is also not "simply inconceivable" that BASF would not have at the ready voluminous information about thousands of past cases, in the form plaintiffs desire, going back 40 years for litigation involving the long-discontinued talc operation of a company it acquired 12 years ago. Plaintiffs' contention that Interrogatories 9, 10, and 11 are not burdensome is based on speculation and ignores the obvious burdens associated with their request.

For avoidance of doubt, however, the information plaintiffs seek is, in fact, not readily accessible, to the extent it exists at all. Attached hereto is the declaration of Kevin Wood, the Manager of Catalyst Information Management at BASF. Ex M (Wood Decl.). Mr. Wood is "generally familiar with BASF's current and historical accounting and accounts payable systems used to record expenses and payments to outside vendors, including outside law firms." *Id.* ¶ 2. As Mr. Wood explains, with respect to legal fee spend and settlement information (Interrogatories 9 and 11),

> I am not aware of any reporting capability that would generate the information requested in the form that plaintiffs seek in an automated fashion for any portion of the time period covered by plaintiffs' requests. As a result, assembling the information that plaintiffs requested in the form that they seek it would require a manual review of historical documents, such as periodic invoices and associated correspondence regarding Emtal litigation and settlements from 1979 through 2017 for each law firm that BASF and Engelhard retained in each personal injury case related to Emtal talc.

*Id.* ¶ 4.

Specifically, legacy Engelhard legal spend and settlement amounts "are not maintained in current systems and, if they are maintained at all, they would be maintained in applications that are no longer supported commercially and reside on an offsite server from which information would need to be extracted and reviewed." *Id.* ¶ 5; *see also id.* ¶ 6 ("The versions of the applications provided by McCormack & Dodge and J.D. Edwards used by Engelhard are no longer supported commercially and would require specialized hardware and software to operate.").  And while spending and settlement amounts after 2006 (post-acquisition) are maintained in online systems, those systems "do not maintain that information in the form that plaintiffs seek," and so "manual review of periodic invoices and related correspondence would still be necessary." *Id.* ¶ 7.

The information sought by Interrogatory No. 10—the number of claims resolved at nine specified points in litigation over nearly 40 years—is also not readily accessible and does not exist in the form plaintiffs request.  BASF has already produced information responsive to plaintiffs' requests that could potentially be used to generate such information, such as the Cahill database.  But this request would effectively ask BASF to do plaintiffs' work for them and laboriously examine records of past cases, including court records, to ascertain the point when the cases may have resolved.  BASF does not believe this undertaking is even possible across

all past cases, or even a critical mass of them. But in all events, there is no basis for plaintiffs to ask BASF to do work that they could attempt to undertake themselves.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel further responses to Interrogatories 9, 10, and 11 in Plaintiffs' Third Set of Interrogatories should be denied.

Date:  May 21, 2018                              Respectfully submitted,

                                                 s/ Justin T. Quinn
Eugene F. Assaf, P.C. (*pro hac vice*)           Justin T. Quinn
Michael F. Williams                              Robinson Miller LLC
Daniel A. Bress (*pro hac vice*)                 One Newark Center, 19th Floor
Peter A. Farrell (*pro hac vice*)                Newark, New Jersey 07102
KIRKLAND & ELLIS LLP                             Phone: (973) 690-5400
655 15th St., N.W.                               Facsimile: (973) 466-2760
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200