

One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: 973.690.5400 Fax: 973.466.2761
www.rwmlegal.com

May 21, 2018

**VIA ECF**

The Honorable Roberto A. Rivera-Soto
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002

Re:   *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.*
      **Civil Action No. 11-cv-01754 (JLL) (JAD)**

Dear Justice Rivera-Soto:

Pursuant to this Court's May 12, 2018 Order (ECF No. 513), BASF respectfully renews its motion to compel the agreements and correspondence between Thomas Bevan and the Bevan Firm, and class counsel at Cohen, Placitella & Roth. While BASF believed it had previously made a sufficient showing to obtain these materials, the deposition of Mr. Bevan on May 15, 2018 confirmed that these materials should be provided, or at the very least reviewed by the Court *in camera*.

Mr. Bevan, plaintiffs' key fact witness, has a compensation agreement with plaintiffs' counsel at Cohen, Placitella & Roth and has exchanged numerous emails with plaintiffs' counsel regarding the basis for this litigation. Mr. Bevan revealed during his May 15, 2018 deposition that he has, in fact, exchanged numerous emails—amounting to a four- or five-inch printed stack of paper—with plaintiffs' counsel and others regarding the *Williams* case. Mr. Bevan does not now recall those

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 2

communications or the information that he supplied to plaintiffs' counsel. But, according to Mr. Bevan, these emails contain the information, and these records were created at a time closer to the events in question. These emails are not subject to heightened protection from discovery because they contain information that plaintiffs' counsel is using on behalf of the named plaintiffs to support their claims. The emails also contain communications with a third party regarding this litigation that are clearly not privileged, namely an email exchange with a reporter writing about this case (and quoting Mr. Bevan in the article).

BASF does not believe it was required to make a showing of "particularized need" to obtain these communications. But Mr. Bevan's recent testimony confirms that standard is established in any event, because BASF has no other way to know the information Mr. Bevan provided that apparently forms the basis for this lawsuit, or the information provided to him from class counsel, which apparently forms the basis for his testimony. This information cannot be obtained from the class representatives, who have little or no personal knowledge and who have responded to interrogatories only "on information and belief," relying on information to be provided by Mr. Bevan. The only way to determine what plaintiffs are relying upon

2

ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 3

for their allegations and Mr. Bevan's own knowledge is to know the information exchanged between Mr. Bevan and class counsel.

Mr. Bevan's recent testimony also confirms that his agreement or agreements with class counsel are discoverable. In its May 12, 2018 Order, the Court cited case law holding that fee agreements between class counsel and named plaintiffs are not subject to discovery before class certification. *See* 5/12/18 Order (ECF No. 513) at 2 n.1. But Mr. Bevan testified that he does not serve as class counsel. This confirms that Bevan's agreements with Cohen, Placitella & Roth are discoverable.

For these reasons and the reasons that follow, in accordance with the Court's May 12, 2018 Order, BASF now renews its motion to compel and seeks *in camera* review and production of all email correspondence between Bevan and Cohen, Placitella & Roth, as well as any written agreements that exist between them.

## PROCEDURAL BACKGROUND

### A.   Mr. Bevan's Role in Plaintiffs' Underlying Cases

Mr. Bevan, counsel for five of the six named plaintiffs in their underlying cases against Engelhard, brought some of the earliest talc and asbestos injury cases in Ohio, suing on behalf of scores of tire and rubber industry workers through the National Tireworker Litigation Project ("NTWLP"). *See* Ex. A (5/15/18 Bevan Dep. Tr. 332:25 - 333:7). Federal courts addressing fraud claims against NTWLP lawyers

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 4

and doctors found that "many, if not most, of the tire worker cases are without merit" and "could not pass Rule 11 muster." *Raymark Indus., Inc. v. Stemple*, 1990 WL 72588, at *22 (D. Kan. May 30, 1990). Bevan & Economus, the effective predecessor of the current Bevan Firm, was sued in the *Raymark* litigation, *see Raymark Indus. v. Stemple*, 1988 WL 142123, at *1 (D. Kan. Dec. 21, 1988), used some of the same doctors as the NTWLP, and has internal documents indicating that putative class members were referred to the Bevan Firm by the NTWLP.

Mr. Bevan also testified that Dr. Ray Harron was "quite honest and competent," *See* Ex. A (5/15/18 Bevan Dep. Tr 213:14-16), even though, in 2005, a federal court found that Dr. Harron was "paid … $125 per person" to perform thousands of fraudulent diagnoses in support of silicosis litigation. *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 596-97, 603-08, 630-40 (S.D. Tex. 2005). The Claim Resolution Management Corporation, which processes claims against asbestos injury trusts, announced shortly thereafter that it would no longer accept medical reports prepared by Dr. Harron. *See* Ex. B (9/12/2005 CRMC Memorandum).

Contrary to his earlier testimony, Mr. Bevan recently clarified that he did, in fact, handle cases that originated from the NTWLP. *See* Ex. A (5/15/18 Bevan Dep.

4

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 5

Tr. 333:5-7) ("And the TWLP1s were actually cases that came originally from the National Tire Workers Litigation Project."). In the course of litigating asbestos mass actions in Ohio, Mr. Bevan routinely settled cases based on alleged exposure to asbestos in talc for low dollar amounts: $3,000 on behalf of plaintiffs with mesothelioma, $2,000 on behalf of plaintiffs with lung cancer, and $1,000 on behalf of plaintiffs with asbestosis. *See* Ex. A (5/15/18 Bevan Dep. Tr. 303:6-22). These settlements were typically made in the aggregate with Engelhard and eight other talc defendants, at least two of which—R.T. Vanderbilt and Southern Talc—Mr. Bevan understood had asbestos in their talc products. *Id.* at 90:21 - 91:1, 103:21 - 104:3.

Mr. Bevan explained that he settled cases with Engelhard for only small payments because, in 1992, he received correspondence and affidavits from Engelhard's counsel at Cahill Gordon indicating that there was no asbestos in Engelhard's talc. *Id.* at 253:9-16. Mr. Bevan stated that he would have read these materials, including the Ashton Affidavit, but he cannot recall how he reacted to or used any specific document. *Id.* at 292:2-7.

Even though Mr. Bevan testified that he believed Cahill's representations in 1992 regarding Emtal talc, he continued to pursue cases against Engelhard for more than fifteen years, through at least 2008. *Id.* at 241:11 - 242:21. Mr. Bevan appeared

5

RM|ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 6

to acknowledge that he had no good-faith factual belief to file lawsuits against Engelhard, but claimed he still did so for "strategic reasons" because he believed that (1) raw asbestos manufacturers were trying to allocate some responsibility to the talc industry; and (2) other talc defendants who were known to have asbestos in their products wanted Engelhard to be part of the cases so as to help fund the low-dollar settlements of between $1,000 and $3,000 per plaintiff. *Id.* at 142:1 - 144:17.

### B. Mr. Bevan's Role in the *Williams* Case

Mr. Bevan features prominently in plaintiffs' operative complaint, *see* 2d Am. Comp. (ECF No. 158) ¶¶ 204-43, and, as plaintiffs' former counsel in the underlying cases, has been the subject of numerous discovery orders in this case—including Chief Judge Linares's August 3, 2017 decision finding that plaintiffs waived their attorney-client privilege and several other decisions by the SDM. *See* ECF Nos. 360, 381, 382, 403, 406, 411, 471.

Mr. Bevan was originally deposed on February 21, 2018 as his firm's record custodian, and was deposed again on April 5, 2018 after BASF filed a motion to compel further testimony. In this second day of testimony, Mr. Bevan revealed the existence of a written compensation agreement and communications between the Bevan Firm and Cohen, Placitella & Roth. BASF then moved to compel production of those materials. *See* ECF No. 493. On May 12, 2018, the Court denied BASF's

motion without prejudice.  *See* ECF No. 513.  In finding that the agreements were not discoverable, the Court applied the general precept that fee agreements between class counsel and the named plaintiffs in a class action are typically not discoverable prior to class certification.  *Id.* at 2 n.1.  With respect to the communications between Bevan and class counsel, the Court held that BASF had not made "a showing of particularized need," but allowed that BASF could "re-file[] this application based on a proper record of particularized need."  *Id.* at 3-4.

On May 15, 2018, following the Court's decision on BASF's motion, BASF and plaintiffs both deposed Mr. Bevan in his personal capacity.  Mr. Bevan testified that he has very little recollection of the facts of this case other than what he was told by Mr. Placitella and what he read in plaintiffs' complaint.  *See, e.g.*, Ex. A (5/15/18 Bevan Dep. Tr. 193:21 - 194:5) ("Q. What's your understanding from? A. My understanding is that Eastern Magnesia Talc tested their talc in the 1970s, found that it contained asbestos, and destroyed any documents related to that. Q. What's your understanding from?  What source? A. From what I've heard from Mr. Placitella and what I read in the complaint.  I'm not sure if I've seen any documents to that extent but that's what I've been told.").  He confirmed that, although he is a

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 8

fact witness and represented five of the named plaintiffs in their underlying cases in state court, he is "not handling the federal case in any way." *Id.* at 84:13-16.

Mr. Bevan also testified that he has "a four-inch, five-inch stack of emails" that he exchanged with "Mr. Placitella and his colleagues" regarding this litigation and the facts of plaintiffs' underlying cases. *Id.* at 115:12-17. Mr. Bevan has not reviewed these materials, but he "think[s]" that they contain the facts he conveyed to Mr. Placitella on which plaintiffs are relying to prove their claims. *Id.* at 114:10-21. Mr. Bevan had printed these emails "in case I was going to have to turn them over." *Id.* at 115:6. Mr. Bevan also testified that he had email correspondence with a reporter regarding the *Williams* litigation but has neither logged nor produced that correspondence in response to BASF's subpoena. *Id.* at 64:22 - 65:2, 67:1-5.

In light of Mr. Bevan's May 15, 2018 testimony, BASF now renews its motion to compel the *in camera* review and production of Bevan's non-privileged correspondence with plaintiffs' counsel regarding this litigation, as well as any written agreements between Bevan and plaintiffs' counsel.

## ARGUMENT

8

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 9

## I.  THE COURT SHOULD ORDER *IN CAMERA* REVIEW AND PRODUCTION OF BEVAN'S CORRESPONDENCE WITH COHEN, PLACITELLA & ROTH

In its May 12, 2018 Order, the Court denied without prejudice BASF's request for communications between Bevan and class counsel "in the absence of a showing of particularized need." 5/12/18 Order at 3 (ECF No. 513). BASF respectfully submits that it was not required to make such a heightened showing, because the "particularized need" standard applies only to motions seeking to compel settlement agreements, in light of the unique considerations that apply in that context. *See, e.g.*, *Duncan v. Black*, 2018 WL 317957, at *3 (W.D. Pa. Jan. 8, 2018); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2011 WL 5416334, at *7 (D.N.J. Nov. 7, 2011); *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009).

The communications between Bevan and class counsel are not settlement agreements and so are subject to the usual and more lenient relevancy standards of Rule 26. Regardless, Mr. Bevan's recent testimony confirms that the particularized need standard is met because Mr. Bevan had exchanges with class counsel about this case and there is no other way to access the basis for plaintiffs' allegations or Mr. Bevan's testimony without these communications.

Plaintiffs' counsel has made clear that the named plaintiffs themselves have very little, if any, factual knowledge to support their claims in this case, and that the

9

"facts" plaintiffs will rely on come from Mr. Bevan. *See, e.g.,* 1/15/18 Hr'g Tr. 132:21 - 133:3 ("SPECIAL MASTER: What are you going to do at trial, produce a plaintiff that says I don't know? MR. ROTH: Yes. MR. PLACITELLA: Yeah. And they're going to say I don't know because I was defrauded. MR. ROTH: And we're going to have their family's lawyer testify and describe what happened."); Ex. C (10/23/15 Pls.' Initial Disclosures) ("[Mr. Bevan] has knowledge of the involuntary dismissal of his clients' claims due to defendants' misrepresentations, half-truth statements and material omissions concerning Emtal talc."); Ex. D (1/29/18 M. Holley Supplemental Resp. to BASF Interrog. No. 12, Set 1) ("The Bevan Law Firm would likely know more about this evidence."). Because Mr. Bevan is plaintiffs' key fact witness, his communications with plaintiffs' counsel are discoverable and should be produced or, at the very least, subject to *in camera* review.

During his recent deposition, Mr. Bevan revealed that he has approximately 800 pages of email correspondence with Cohen, Placitella & Roth—roughly a four- or five-inch stack, not including attachments—conveying and discussing the basis for plaintiffs' claims. *See,* Ex. A (5/15/18 Bevan Dep. Tr. 112:25 - 123:2) ("Q. … Did you convey facts to Mr. Placitella in these emails? A. I believe that I probably conveyed some facts."); *id.* at 114:10-22 ("Q. And in providing these facts, some of

the facts were in emails, correct? A. I think. I'm not positive, but I think."). These emails have neither been reviewed by Mr. Bevan nor produced to BASF. Although Mr. Bevan now claims he cannot recall many of the key facts underlying plaintiffs' claims (for instance, how he reacted to the Ashton Affidavit, *id.* at 292:2-7), it is clear that Mr. Bevan at one time conveyed this information to plaintiffs' counsel. *See* 7/6/15 2d Am. Compl. ¶ 19 (ECF No. 158) ("Plaintiff Williams … was first informed [of the alleged fraud] by her attorney, Thomas W. Bevan, Esquire after he was informed of the Fraudulent Asbestos Defense Scheme by the Paduano case's counsel.").

Based on Mr. Bevan's recent testimony, BASF understands that these communications are memorialized in the emails that Mr. Bevan is withholding, and they should be produced or reviewed *in camera* as a result. BASF is not seeking discovery of plaintiffs' case assessments or legal strategy in the *Williams* litigation (even though BASF believes that plaintiffs would have waived any privilege or work-product protection over that information by disclosing it to Mr. Bevan, a third-party fact witness). At this time BASF is simply seeking non-privileged information transmitted between Bevan and Cohen, Placitella & Roth regarding the basis supporting plaintiffs' claims and the basis for Mr. Bevan's testimony. This

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 12

information is particularly necessary because Mr. Bevan is apparently the only person who has knowledge of the facts underlying the allegations in this case.

*In camera* review here is all the more necessary in light of Mr. Bevan's testimony that he is withholding correspondence he exchanged with a third-party reporter at *Bloomberg* regarding Mr. Bevan's role in this litigation. Ex. A (5/15/18 Bevan Dep. Tr. 67:8-68:18). Specifically, in 2015, *Bloomberg* published an article entitled "Scientist's Testimony for Dying Daughter Roils Chemical Giant." *See* Ex. E. This article, which discussed this case and the Third Circuit's remand, described Mr. Bevan as a lawyer involved in the case. *Id.* ("This has really opened a Pandora's Box,' said Tom Bevan, a lawyer in Boston Heights, Ohio, who represented hundreds of people who sued Engelhard in the 1990s and is involved in a current federal case against BASF."). Mr. Bevan was quoted in the article, saying: "I wouldn't want to be a BASF shareholder right now with potentially billions of dollars in liability coming down the pike because of the lies of a company it bought." *Id.*

At his deposition, Mr. Bevan testified that he spoke with a *Bloomberg* reporter regarding this article and exchanged at least one email with the reporter, which has not been produced. Ex. A (5/15/18 Bevan Dep. Tr. 67:8-68:18). When asked why that email was not produced or logged, Mr. Bevan said it was unclear to him whether

12

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 13

the article related to this litigation, *id.* at 65:1 - 66:11, even though the article refers to a class action in New Jersey federal court with six named plaintiffs suing BASF and Cahill, which is obviously this case.

It also bears mention that the Court-ordered document production from the Bevan files continues to raise questions regarding its reliability. As the Court will recall, the Bevan Firm was required to produce 30 randomly selected files from unnamed class members. *See* 10/27/17 Order (ECF No. 360). It turns out roughly half of the 30 files have nothing to do with talc litigation. Ex. A (5/15/18 Bevan Dep. Tr. 304:13-22) ("Q. As you recall from your custodian deposition in discovery in this case 30 files were selected from the talc cases for the defendants to review, correct? A. No. Q. Oh. A. 30 files reviewed from my cases you added talc to it. Q. Oh, it was just any case? A. It was -- yeah, it was any case."). There is a dispute between plaintiffs' counsel and Bevan as to how the files were produced, but this only underscores the need for the Court to review *in camera* the communications between Bevan and class counsel.

Given all of this evidence, BASF and the other defendants in this litigation should be able to determine whether Mr. Bevan provided to plaintiffs' counsel exculpatory information that tends to support the defendants' case, information that

13

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 14

Mr. Bevan says he cannot now recall. These communications are also the only way to understand the basis for Mr. Bevan's testimony. *See, e.g.*, Ex. A (5/15/18 Bevan Dep. Tr. 194:1-5) ("Q. What's your understanding from? What source? A. From what I've heard from Mr. Placitella and what I read in the complaint. I'm not sure if I've seen any documents to that extent but that's what I've been told."). In these circumstances, BASF believes the Court should review *in camera* the emails Bevan is withholding to determine whether they contain discoverable and non-privileged information that should be provided to BASF.

**II. THE COURT SHOULD ORDER *IN CAMERA* REVIEW AND PRODUCTION OF BEVAN'S AGREEMENTS WITH COHEN, PLACITELLA & ROTH**

At his prior deposition as the Bevan Firm's records custodian, Mr. Bevan testified that his firm has referral and compensation agreements with Cohen, Placitella & Roth. Ex. F (4/5/18 Bevan Dep. Tr. 101:22 - 102:13). When BASF moved to compel production of those agreements as relevant to show Mr. Bevan's potential bias, the Court concluded that disclosure of the agreements was, "at this juncture, unnecessary and premature" given that "[t]he majority of federal courts considering this issue have ruled that fee agreements are not discoverable before [class] certification." 5/12/18 Order (ECF No. 513) at 2 n.1. Mr. Bevan's May 15,

14

RM | ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 15

2018 testimony confirms that his agreements with Cohen, Placitella & Roth should be produced.

In reaching its conclusion, the Court relied on *In re Riddell Concussion Reduction Litigation*, 2016 WL 7325512 (D.N.J. Jan. 19, 2016), which addresses the discoverability of "fee arrangement[s] between plaintiffs' class counsel and plaintiffs' named class representatives." *Id.* at *1. That line of authority is limited to fee agreements between plaintiffs and their class counsel. *See also In re Front Loading Washing Mach. Class Action Litig.*, 2010 WL 3025141, at *4 (D.N.J. July 29, 2010); *Ft. Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 2013 WL 1896934, at *2 (S.D.N.Y. May 7, 2013); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009).

Mr. Bevan's recent deposition testimony makes clear that he is not "plaintiffs' class counsel" here. Indeed, Mr. Bevan testified that he is "not handling the federal case in any way." Ex. A (5/15/18 Bevan Dep. Tr. 84:13-16). As a result, the principles set forth in *Riddell* do not govern here, and Bevan's fee agreements with Cohen, Placitella & Roth are not subject to any heightened protection from discovery. As BASF explained in its prior motion, Mr. Bevan is a critical witness in this case who has a financial relationship with plaintiffs' class counsel. The fact

RM ROBINSON MILLER LLC

The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 16

that Mr. Bevan refers clients to Cohen, Placitella & Roth, and that he may stand to profit if the *Williams* plaintiffs recover damages, is centrally relevant to Mr. Bevan's credibility and bias, making the fee and referral agreements discoverable. *See, e.g., United States v. Abel*, 469 U.S. 45, 52 (1984). Although the Court had indicated that BASF could show this bias and economic incentive based on the testimony it has obtained, *see* 5/12/18 Order at 3 (ECF No. 513), BASF respectfully submits that having the agreement itself would allow BASF to demonstrate these points even further. At the very least, the Court should review the agreement *in camera* to determine if some or all of it should be ordered produced.

\*     \*     \*     \*

Mr. Bevan is a critical fact witness. He has testified that he wants plaintiffs to prevail in this litigation. Ex. A (5/15/18 Bevan Dep. Tr. 395:25 - 396:2) ("Q. You'd like to see the plaintiffs win this case? A. The plaintiffs should win with this case [Objection] -- yes. Absolutely."). Particularly in light of this history, Mr. Bevan's recent testimony makes clear that his communications and agreements with plaintiffs' counsel materials are discoverable, not subject to any heightened protections, and should, at the very least, be subject to *in camera* review.

We thank the Court for its consideration of this submission.

16



The Honorable Roberto A. Rivera-Soto
May 21, 2018
Page 17

                                        Respectfully Submitted,

                                        <u>s/ Justin T. Quinn</u>
                                            Justin T. Quinn
                                      Counsel for BASF Catalysts LLC

cc:    All counsel of record (via ECF)