# EXHIBIT D

**Cohen, Placitella & Roth, P.C.**
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**Fox Rothschild LLP**
Jeffrey M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, et al., | HONORABLE JOSE L. LINARES |
| Plaintiffs, | CIVIL ACTION NO. 11-1754 (JLL) (JAD) |
| vs. | |
| **BASF CATALYSTS, LLC**, et al., | |
| Defendants. | |

### PLAINTIFF MARILYN L. HOLLEY'S SUPPLEMENTAL ANSWERS TO BASF CATALYSTS LLC'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Marilyn L. Holley, objects and responds to Defendant BASF Catalysts LLC's Special Interrogatories, Set One, as follows. In addition, Plaintiff notes that:

1. That Plaintiff is responding subject to, without intending to waive, and expressly preserving: (a) any objections as to relevance, privilege, and admissibility of documents or information provided; and (b) the right to object to other discovery procedures involving or relating to the subject matter of BASF's requests.

2. That Plaintiff objects based on Plaintiff's attorneys' understanding of Defendant's language. Where it may be found that something was intended to be construed different from their interpretation, Plaintiff reserves the right to amend these objections. As Plaintiff's factual investigation and legal analysis is ongoing, these objections are without prejudice to later amendment and supplementation.

3. That Plaintiff incorporates herein her deposition testimony provided in this matter on April 5, 2017.

## GENERAL OBJECTIONS

All of the General Objections below are incorporated into each of the individual responses and have the same force and effect as if fully set forth therein. Plaintiff objects to Defendant's interrogatories to the extent that:

1. The definitions and instructions seek to impose obligations that exceed or differ from the requirements of the Federal Rules of Civil Procedure.

2. They seek to require responses or supplemental responses beyond the scope and/or requirements of the Federal Rules of Civil Procedure.

3. They seek to establish or imply a waiver of Plaintiff's right to challenge the relevancy, materiality, or admissibility of the documents or information provided by Plaintiffs, or to object to the use of documents or information in any subsequent proceeding or trial. In responding, Plaintiff does not waive the right to challenge the relevancy, materiality, and/or admissibility of the documents or information provided by her or her Co-plaintiffs, or to object to the use of the documents or information in any later proceeding or trial.

4. They call for legal conclusions, non-testifying expert discovery or premature expert discovery.

5. They seek disclosure of documents, communications, information, and things protected by the attorney-client privilege or that constitute attorney work-product/trial preparation materials or any other privileged documents or information, as well as documents or information that were compiled or prepared at the request and direction of counsel in anticipation of, or in conjunction with, litigation that are protected by the attorney work product doctrine; items and information obtained by Plaintiff's attorneys that involve their professional skill and experience; legal research, including delegated research — which includes research or investigation by Plaintiff's attorneys, or by persons hired by Plaintiff's attorneys and acting under their supervision; strategic litigation planning, mental impressions (or documents reflecting such planning or impressions); and documents gathered by Plaintiff's attorneys while researching issues in this case.  Further, it would also be unduly burdensome and oppressive to search for, compile, and make a description of the nature of each such document, communication, etc.

6. The inadvertent provision of information or the production by Plaintiff of documents pursuant to Fed. R. Civ. P. 33(d) containing information protected from discovery by the attorney-client privilege, work product doctrine or any other applicable privilege, shall not constitute a waiver of such privileges with respect to that information or those or any other documents.  In the event that inadvertent production occurs, Defendant shall return all inadvertently produced documents to Plaintiff upon request, and/or shall make no use of the contents of such information or documents nor premise any further discovery on information learned therefrom.

7. None of the objections or responses contained herein is an admission concerning the existence of any documents or materials, the relevance or admissibility of any documents, materials or information, or the truth or accuracy of any statement or

characterization contained in Defendant's First Set of Interrogatories. Plaintiff's written responses are made without waiving, but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy, materiality or any other proper grounds, to the use of the information provided herein, in whole or in part, in any subsequent proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other discovery requests involving or relating to the subject matter of these requests; and (c) the right at any time to revise, correct, add or clarify any of the responses provided herein.

8. Plaintiff objects to any interrogatory as unduly and unnecessarily burdensome to the extent that it seeks information that is a matter of public record, already in the Defendant's possession, or otherwise readily available to Defendant, and, therefore, may be accessed and obtained by Defendant with less burden than Plaintiff can identify and provide requested information.

9. They seek documents or information contained in the pleadings and other papers filed in this action.

10. They are "contention" type discovery relating to claims, allegations contentions of pleadings, counts or claims.

11. They seek to impose investigation, review, and production expense burdens that outweigh any likely benefits.

12. They are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

13. They may cause or require Plaintiff to violate any protective or confidentiality order, or confidentiality agreement.

14. They may cause or require Plaintiff to violate any confidentiality or non-disclosure provision of a Bankruptcy or Settlement Trust.

15. They are vague, ambiguous, oppressive, not susceptible to a reasoned interpretation, require speculation to determine their meaning, or use imprecise specifications of the information sought.

16. Unless otherwise indicated, Plaintiff will not provide information encompassed by their general responses and objections or by their specific objections set forth below. Plaintiffs, however, are willing to meet and confer with counsel for BASF and other defendants to discuss the parties entering a consent order under F.R.E. 502(d) regarding limited waiver of certain privileged communications and information relating to the dismissal or resolution of the claims against BASF (Engelhard) in the Underlying Actions, as well as BASF's and other Defendants' limited waiver of certain privileged communications and information relating to the issues in this case as outlined in the Second Amended Complaint.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all Persons with knowledge Relating to Your claims against BASF and the subject matter of their knowledge.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this interrogatory as vague and ambiguous. Plaintiff further objects on grounds information responsive to this interrogatory is in possession of the Defendants in this action. To the extent that it seeks the identity of "all persons", the interrogatory is premature as discovery is ongoing. The question is also disproportionately burdensome. The following response is provided subject to and without waiving the foregoing Objections.

I am personally unaware of anyone with knowledge of my claims against BASF in the matter of *Williams, et al. v. BASF Catalysts, LLC, et al.*, No. 11-cv-1754 (D.N.J.) other than my attorneys and presumably my other co-plaintiffs.

Plaintiff reserves the right to supplement her response as discovery continues.

**INTERROGATORY NO. 2:**

Identify all Persons with knowledge Relating to the Underlying Action against Engelhard or its subsidiaries and the subject matter of their knowledge.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as vague, ambiguous, and unduly burdensome. Plaintiff further objects that information responsive to this interrogatory is in possession of the Defendants in this action. The following response is provided subject to and without waiving the foregoing Objections.

The attorneys that represented my mother and her Estate in the Underlying Action, may have knowledge relating to claims against Engelhard or its subsidiaries in that case. I, as well as possibly my brother, have some knowledge of our mother's work at B.F. Goodrich, as well as of her pain and suffering from her asbestos disease. Linda Neal, a former co-worker of my mother at B.F. Goodrich may also have knowledge of her work and responsibilities at the tire plant. Medical providers may have knowledge concerning their care and treatment of my mother.

I am not personally aware of anyone with information responsive to this request, but those who may have known about my mother's Underlying Action may include my mother's other former co-workers who at the time when the original case was filed may have attested to my mother's exposure to EMTAL talc. Others with knowledge may have been experts that were retained in my mother's Underlying Action, and those people identified in the Second Amended Complaint, as well as identified in documents produced by Defendants, or other defendants in this and related cases.

Plaintiff reserves the right to supplement her response as discovery continues.

**INTERROGATORY NO. 3:**

Identify each Communication that occurred between You and Any other Person Relating to the facts and circumstances alleged in the Underlying Action, including any Communication Relating to Your or Decedent's preparation for litigation in the Underlying Action.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as overbroad and unduly burdensome. Plaintiff specifically objects to the terms "any other person", "facts and circumstances" and "preparation for litigation" as these terms are vague, ambiguous, and undefined. The following response is provided subject to and without waiving the foregoing Objections.

  I recall accompanying my mother to a health screening, and later receiving a letter from what may have been the Bevan Law Firm confirming that a doctor had found asbestos scarring in my mother's lungs.

  Plaintiff reserves the right to supplement her response as discovery continues.

**INTERROGATORY NO. 4:**

  Identify all resolutions of claims or dispositions with Any Defendant named in the Underlying Action and/or any party who was not named in the Underlying Action, including for each settlement: the parties to the settlement, the amount of the settlement, the date of the settlement, and the reason why the claim was settled.

  **RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as vague, ambiguous, and unduly burdensome. Moreover, settlements reached with entities other than Engelhard are not relevant to the claims asserted herein. The following response is provided subject to and without waiving the foregoing Objections.

  I have no personal recollection of information responsive to this request beyond that which I have already testified to. BASF is referred to documents produced regarding the individual settlement amounts.

**INTERROGATORY NO. 5:**

  Identify all evidence, including any Documents (and excluding Your own Testimony) that support Your contention that Decedent was exposed to Emtal Talc.

  **RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as overbroad, beyond the scope of relevant discovery and unduly burdensome. The following response is provided subject to and without waiving the foregoing Objections.

  I have no personal knowledge of information responsive to this request beyond that which I have already testified to. BASF is referred to documents that have been produced regarding the Underlying Case. Further, BASF may already possess the information responsive to this request, including sales records, depositions and the identification of people with knowledge concerning my mother's exposure to EMTAL talc. As Defendants are aware there is also evidence that they are withholding under a claim of privilege which may or may not be relevant to this request. BASF is referred to documents from the file of the Underlying Action that has been produced in this litigation.

  Plaintiff reserves the right to supplement her response as discovery continues.

**INTERROGATORY NO. 6:**

If any of Decedent's blood relatives (*i.e.* parents, grandparents, siblings, aunts, uncles, or cousins) had cancer of any type, Describe the circumstances of the disease, including the name and relationship with each such Person and the type of cancer.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as irrelevant, overbroad and not calculated to lead to the discovery of admissible evidence. The following response is provided subject to and without waiving the foregoing Objections.

However, one of my mother's sisters passed away from blood cancer; another one of my mother's sisters passed away from lung cancer; and my mother's brother passed away from mesothelioma.

Plaintiff reserves the right to supplement her response as discovery continues.

**INTERROGATORY NO. 7:**

Identify all Asbestos-containing Products to which Decedent was Exposed, including for each Product: the name of the Product, the dates of Exposure, the quantum of Exposure, and the places where the Exposure took place.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome.  Plaintiff further objects that information responsive to this interrogatory is in possession of the Defendants in this action.  The following response is provided subject to and without waiving the foregoing Objections.

I have no personal knowledge of information responsive to this request beyond that which I have already testified to BASF is referred to documents produced regarding the Underlying Action. BASF also may already possess the information responsive to this request, including sales records, depositions and the identification of people with knowledge concerning my mother's exposure to EMTAL talc.  As Defendants are aware there is also evidence that they are withholding under a claim of privilege which may or may not be relevant to this request. BASF is referred to documents from the file of the Underlying Action that has been produced in this litigation.

Plaintiff reserves the right to supplement her response as discovery continues.

**INTERROGATORY NO. 8:**

Identify every workplace where Decedent was employed during her lifetime.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as vague and ambiguous. The following response is provided subject to and without waiving the foregoing Objections.

Prior to my mother's employment and subsequent retirement from B.F. Goodrich Co., she performed domestic day work and worked for the local Board of Education.

Plaintiff reserves the right to supplement her response as discovery continues.

### INTERROGATORY NO. 9:

Identify all locations where Decedent lived during her lifetime, including the specific address and dates of residence.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as irrelevant, and not calculated to the lead to the discovery of admissible evidence. The following response is provided subject to and without waiving the foregoing Objections.

Although I cannot recall all the specific dates and addresses of where my mother lived, but below is a list of her residences in chronological order.
- Barberton, Ohio (specific address and dates unknown);
- 235 Abel Street, Akron, OH 44311 (specific dates unknown);
- E Voris & Miami Streets, Akron, OH (specific address and dates unknown);
- Manchester, Ohio (specific address and dates unknown);
- Stoner Avenue in Ohio (specific address and dates unknown);
- 1000 Moeller Avenue, Akron Ohio 44307.

### INTERROGATORY NO. 10:

Identify all information provided to Decedent and her counsel by counsel for Engelhard in Decedent's Underlying Action.

**RESPONSE:** Plaintiff objects that information responsive to this interrogatory is in possession of the Defendants in this action, and accordingly, this interrogatory is unduly burdensome. The following response is provided subject to and without waiving the foregoing Objections.

I have no personal knowledge of information responsive to this request beyond that which I have already testified to.

Plaintiff reserves the right to supplement this response as discovery continues.

**INTERROGATORY NO. 11:**

Describe in detail the process behind Decedent's decision to settle with or dismiss Engelhard or its subsidiaries in the Underlying Action, including the Persons involved, the information reviewed, and the basis for the decision.

**RESPONSE:** In addition to the General Objections set forth above, including but not limited to Objection No. 16, Plaintiff objects to this Interrogatory as overbroad and unduly burdensome. The following response is provided subject to and without waiving the foregoing Objections.

I have no personal knowledge of information responsive to this request beyond that which I have already testified to as I was not part of that process and thus have no personal knowledge in response to this request.

Upon information and belief, and my reading of the Second Amended Complaint, there is evidence that my mother's claim against Engelhard/BASF was resolved cheaply and without just compensation based upon Engelhard/BASF's and Cahill's representations to my mother's attorneys in the Underlying Action that there was no asbestos in EMTAL talc and there was no evidence that there was any asbestos in EMTAL talc. My attorneys from the Underlying Case may have more information responsive to this request.

The information that I have is based on my reading of the complaints filed in this matter and is being developed by the lawyers who represent me in this case.

Plaintiff reserves the right to supplement her response as discovery in this and related matters such as the *Sampson* case continue.

**INTERROGATORY NO. 12:**

Describe all efforts made by Decedent and her counsel in the Underlying Action to develop and prosecute claims against Engelhard and its subsidiaries.

**RESPONSE:** In addition to the General Objections set forth above, Plaintiff objects to this Interrogatory as overbroad and unduly burdensome. Plaintiff specifically objects to the term "develop" as this term is vague, ambiguous, and undefined. The following response is provided subject to and without waiving the foregoing Objections.

I have no personal knowledge of information responsive to this request beyond that which I have already testified to. I was not part of that process and thus have no personal knowledge in response to this request.

I, however, am generally aware that there was discovery in my mother's lawsuit as set out in the Second Amended Complaint, which sought out information about EMTAL talc. Based on the Second Amended Complaint and referenced exhibits, as well as the documents

described below, it is my understanding that Engelhard/BASF through its attorneys represented to the Bevan Law Firm (my mother's attorneys in the Underlying Action) that Defendant's EMTAL talc does not contain asbestos and that there was no evidence that EMTAL talc contained asbestos.

While I have no first-hand knowledge, upon information and belief, records and information obtained by my attorneys indicate that my attorneys from the Underlying Case may be able to attest to the following:

Plaintiff does not have first-hand knowledge, upon which to respond to this interrogatory. The Bevan Law Firm when prosecuting my mother's case was able to document substantial sales of EMTAL talc, both directly from Engelhard/BASF and through its distributor C.P. Hall, to the Goodyear facility where my mother worked, that the lawyers were also aware from testimony of witnesses in the facility that whitish/gray talc was used by employees in Goodyear's plant. However, upon receiving Engelhard/Cahill's representations and information that the talc did not contain asbestos, this was not specifically explored in every case. The Bevan Law Firm retained expert witnesses to support my mother's lawsuit. The Bevan Law Firm would likely know more about this evidence.

The Bevan Law Firm could not prove that EMTAL talc contained asbestos. Through various correspondence and conversations with attorneys Scott Martin and Allen Joslyn of the Cahill Gordon Law Firm, the Bevan Law Firm was informed that EMTAL talc does not contain asbestos and that there is no evidence that EMTAL talc contains asbestos. Some, but not all, of the written communications relaying those representations as produced in this case are as follows:

- **1992/04/23:** a letter from Scott Martin, Esq. (Cahill) to Dale Economus, Esq. (Bevan) where Mr. Martin requested that Engelhard be voluntarily dismissed from the <u>Williams</u>, <u>Compton</u>, and <u>Brown</u> actions "on the basis that talc produced by EMTAL contained no asbestos." In support of that request, Mr. Martin enclosed (1) the Affidavit of William H. Ashton, (2) two affidavits of Mr. Charles Carter, (3) a report by Dr. Fred Pooley, and (4) a B.F. Goodrich specification for EMTAL talc. Based upon these documents, Mr. Martin explained that "there appears to be no basis for maintaining Engelhard as a named defendant in these actions." Mr. Martin further explained that there was "substantial precedent" for his request as plaintiff's counsel in Pennsylvania voluntarily dismissed Engelhard from other asbestos-related cases based upon his review, and his expert's review of the enclosed documents. So too did attorneys in the federal district court of Kansas and Michigan state court.

- **1992/5/18:** a letter from Scott Martin, Esq. (Cahill) to Dale Economus, Esq. (Bevan) stating that he had previously sent "various documents demonstrating that talc produced by EMTAL from its sole mine and mill in Johnson, Vermont contained no asbestos." Mr. Martin then notes that he had received a complaint in the <u>Gonzalez</u> matter that named Engelhard as a defendant. To avoid "incurring additional expenses in defense of the four actions" for which "there appears to be no basis in fact for maintaining Engelhard as a defendant", Mr. Martin requested that Mr. Economus give "serious and prompt consideration to our dismissal request."

- **1992/12/21:** a letter from Scott Martin, Esq. (Cahill) to Dale Economus, Esq. (Bevan) where Mr. Martin requested that Engelhard be dismissed from the James v. Abex litigation because the talc sold to plaintiffs' employers "contained no asbestos". Mr. Martin stated that this fact was "demonstrated in the various affidavits and other documents forwarded to you with my previous correspondence." Because the "diagnosis of the plaintiff in each of the [James] actions in which Engelhard is named as a defendant is an asbestos-related disease, [the plaintiffs' diseases] which cannot be attributed to EMTAL talc."

- **1993/02/04:** a letter from Scott Martin, Esq. (Cahill) to Thomas Bevan, Esq. (Bevan) stating that at Mr. Bevan's request, Mr. Martin has prepared notices of dismissal for Mr. Bevan's signature from the five recently-filed actions "on the basis of our correspondence demonstrating that talc produced by Engelhard's former subsidiary, Eastern Magnesia Talc Company ("EMTAL"), contained no asbestos." Mr. Martin instructs that the dismissal notices for four of the five actions should be sent to Judge Weiner of the U.S. District Court for the Eastern District of Pennsylvania and the dismissal for the James action should be filed in state court.  Mr. Martin finally requests that C.P. Hall be dismissed from these actions as well if it is "named only as the distributor of EMTAL talc".

- **1993/02/11:** a letter from Thomas Bevan, Esq. (Bevan) to Scott Martin, Esq. (Cahill) indicates that "in light of new information" Mr. Bevan was "reconsidering [its] decision to dismiss Engelhard Minerals & Chemicals Company."  Mr. Bevan explains that correspondence dated February 24, 1950 from the State of Vermont Department of Health discusses the propensity of EMTAL employees to develop pneumoconiosis and refers to future x-rays of Johnson employees and a future publication. Based on that correspondence, Mr. Bevan requests "to review the results of the studies at Waterbury and Johnson as well as the publication that was alluded to" as well as sales records to Goodyear Tire & Rubber, B.F. Goodrich, and Goodyear Aerospace plans in Akron.

- **1993/02/22:** a letter from Scott Martin, Esq. (Cahill) to Thomas Bevan, Esq. (Bevan) in response to Mr. Bevan's Feb. 11, 1993 letter where Mr. Martin states that the 1950 correspondence "should in no way alter your previously expressed decision to dismiss Engelhard from these cases." Mr. Martin explains that he was not aware of any follow-up study or publication of Johnson employees, and that the company the correspondence referred to was "long since defunct." Mr. Martin then recounts the "voluminous materials" that he had sent to the Bevan Law Firm last April with his request for a dismissal that demonstrated that "the talc produced from [the Johnson] mine did not contain asbestos." Mr. Martin adds that the R.J. Lee Group had just completed an analysis that showed no evidence of asbestos minerals, and that Engelhard had retained the "leading geologist in Vermont, who will also confirm these facts." Mr. Martin concludes by asserting that there is "no basis for maintaining Engelhard as a named defendant in these actions" because "plaintiffs allege injuries as a result of exposure to asbestos" which cannot be attributed "to talc uncontaminated by asbestos." "Accordingly," Mr. Martin states, "EMTAL talc is not a cause of plaintiffs' alleged injuries."

- **1996/07/24**: a letter from Scott Martin, Esq. (Cahill) to Thomas Bevan, Esq. (Bevan), where Mr. Martin requests a voluntary dismissal of the Stricklin case because "this action is an asbestos case and there is no evidence whatsoever that talc mined and milled by EMTAL contained asbestos." In support of that request, Mr. Martin encloses his correspondence with the Bevan Law Firm pertaining to the Brown, Compton, Gonzales, James, and Williams, and the dismissals from those cases. Mr. Martin goes on to say, "there has never been any room for argument that EMTAL talc could cause an asbestos-related disease." Mr. Martin concludes by stating "as there is no evidence whatsoever that EMTAL talc could have caused Mr. Stricklin's alleged injuries, there can be no basis in law or fact for this action to continue against EMTAL."

Plaintiff reserves the right to supplement her response as discovery continues.

Dated: January 29, 2018                      **COHEN, PLACITELLA & ROTH, P.C.**

/s/  *Jared M. Placitella*
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
*As to Objections*

**Fox Rothschild LLP**
Jeffrey M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

## VERIFICATION

I, Marilyn Holley, being of full age, upon her verification states the following:

1. I am the Plaintiff in the within action.

2. I have read the foregoing Supplemental Answers to BASF Catalysts LLC's First Set of Interrogatories, and these responses are true to my own personal knowledge. I am aware that if any of the foregoing responses are willfully false, I am subject to punishment.

*Marilyn Holley*

Dated: 1-29-18

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2018, I served the foregoing *Plaintiff's Supplemental Responses to Defendant's First Set of Interrogatories* on the following attorneys via Email:

| | |
|---|---|
| Eugene F. Assaf, P.C.<br>Kirkland & Ellis, LLP<br>655 15th St., N.W.<br>Washington, D.C. 20005<br>eassaf@kirkland.com | John K. Villa, Esq.<br>Williams & Connolly, LLP<br>725 12th Street, N.W.<br>Washington, D.C. 20005<br>jvilla@wc.com |
| Michael F. Williams, Esq.<br>Kirkland & Ellis, LLP<br>655 15th St., N.W.<br>Facsimile: (202) 879-5200<br>mwilliams@kirkland.com | Grant A. Geyerman, Esq.<br>Williams & Connolly, LLP<br>725 12th Street, N.W.<br>Washington, D.C. 20005<br>ggeyerman@wc.com |
| Justin T. Quinn, Esq.<br>Robinson Miller LLC<br>One Newark Center, 19th Floor<br>Newark, New Jersey 07102<br>jquinn@rwmlegal.com | Robert E. Ryan, Esq.<br>Connell Foley, LLP<br>85 Livingston Avenue<br>Roseland, New Jersey 07068<br>rryan@connellfoley.com |
| *Attorneys for Defendant, BASF Catalysts, LLC* | *Attorneys for Cahill Defendants* |
| Kevin H. Marino, Esq.<br>Marino, Tortorella & Boyle, P.C.<br>437 Southern Boulevard<br>Chatham, New Jersey 07928<br>kmarino@khmarino.com | Eric Tunis, Esq.<br>Herold Law, P.A.<br>25 Independence Boulevard<br>Warren, New Jersey 07059<br>etunis@heroldlaw.com |
| John A. Boyle, Esq.<br>Marino, Tortorella & Boyle, P.C.<br>437 Southern Boulevard<br>Chatham, New Jersey 07928<br>jboyle@khmarino.com | *Attorneys for Defendant Thomas Halket* |
| *Attorneys for Defendant Arthur Dornbusch* | |

Dated: January 29, 2018                    **COHEN, PLACITELLA & ROTH, P.C.**

                                           */s/ Jared M. Placitella*
                                           Jared M. Placitella