# EXHIBIT A

THOMAS W. BEVAN, ESQ. - 04/05/2018

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF NEW JERSEY

 3

 4    KIMBERLEE WILLIAMS,        ) CASE NO. 2:11-CV-01754
      et al.,                    ) (JLL)(JAD)
 5                               )
              Plaintiffs,        )
 6                               )
      versus                     )
 7                               ) CONTINUED DEPOSITION OF
      BASF CATALYSTS, LLC,       )
 8    et al.,                    ) THOMAS W. BEVAN, ESQ.
                                 )
 9            Defendants.        )

10
                            - - - - - - -
11                            VOLUME II
                            - - - - - - -
12

13        Continued Deposition of THOMAS W. BEVAN, ESQ., a

14   Witness herein, called by the Defendants for

15   Cross-Examination pursuant to the Federal Rules of

16   Civil Procedure, taken before me, the undersigned,

17   Anika W. Patrick, a Registered Merit Reporter,

18   Certified Realtime Reporter and Notary Public in and

19   for the State of Ohio, at the offices of Thompson Hine,

20   LLP, 3900 Key Center, 127 Public Square, Cleveland,

21   Ohio, on Thursday, April 5, 2018, at 1:15 p.m.

22

23

24

25
```

THOMAS W. BEVAN, ESQ. - 04/05/2018        Pages 96..99

Page 96

1    my question from last time.  I don't need to
2    debate it with you.
3  A.  I understood it very well, and I read it again and
4    I understood it when I read it again, and you said
5    it wasn't produced and you asked me why it wasn't
6    produced.
7  Q.  Sir --
8         MR. McDERMOTT:  Objection to this line of
9      questioning.
10        MR. ROTH:  Just move on.
11        MR. McDERMOTT:  Move to strike.
12 Q.  I'm not here to argue with you.  I wasn't
13    dishonest with you last time.  Who else was in
14    your conversation with Mr. Roth last night?
15        MR. McDERMOTT:  Continuing objection.
16 A.  Mr. Walsh was there.
17 Q.  What did Mr. Walsh say?
18 A.  I introduced him or he introduced himself to
19    Mr. Roth.
20 Q.  So you, Mr. Roth, Mr. Walsh.  Anybody else?
21 A.  Mr. Placitella.  Jared Placitella.
22 Q.  Anybody else?
23 A.  Maybe Erin Clark.  I'm not sure if she was still
24    in the room or not.
25 Q.  Was this a phone conversation or in person?

Page 97

1  A.  It was an in-person meeting.
2  Q.  Did you ever review any documents to prepare for
3    today?
4  A.  The deposition, I reviewed.
5  Q.  Anything else?
6  A.  I don't think so.
7  Q.  Did you review any of the documents that your firm
8    produced in the Williams case?
9  A.  I have not reviewed them a second time.  I
10    reviewed them originally, but I have not reviewed
11    them again.
12 Q.  Have you had any communications with the Cohen
13    Placitella firm since your last deposition other
14    than the discussion last night?
15 A.  I am -- yes, I have.
16 Q.  When?
17 A.  At various times.  I couldn't give you the days.
18 Q.  So you've had multiple communications with the
19    Cohen Placitella firm since your February 21st
20    deposition?
21        MR. McDERMOTT:  Objection.
22        MR. ROTH:  Objection.
23        MR. McDERMOTT:  Mischaracterization.
24      Move to strike.
25 A.  I have had -- certainly have had multiple

Page 98

1    conversations with somebody from the Placitella
2    firm.
3  Q.  Who?
4  A.  I know I've talked to Jared Placitella and I know
5    I've talked to Chris Placitella and I know I've
6    talked to Harry Roth.
7  Q.  Have you communicated -- withdrawn.
8         Have you personally communicated with
9    attorneys from the Cohen Placitella firm in
10    writing?
11 A.  By e-mail.
12 Q.  So you've --
13 A.  Yes.
14 Q.  -- exchanged -- are you finished?
15 A.  Yes.
16 Q.  You've exchanged e-mail correspondence with Cohen,
17    Placitella & Roth?
18 A.  Yes.
19 Q.  Do those e-mails appear on the Bevan Law Firm's
20    privilege log?
21 A.  I don't know.
22 Q.  Who would know that?
23 A.  I assume either people from the Placitella firm or
24    people from Mr. Little's office.
25 Q.  How many e-mails have you exchanged with Cohen,

Page 99

1    Placitella & Roth?
2  A.  Many dozens, probably.
3  Q.  Going back to early 2011?
4  A.  I don't know when I first communicated with them
5    by e-mail.
6  Q.  It's fair to say over the course of multiple
7    years, though?
8  A.  Yes.
9  Q.  Has anyone else from the Bevan firm communicated
10    with Cohen, Placitella & Roth via e-mail?
11 A.  I am -- Mr. Walsh would have.
12 Q.  Are Mr. Walsh's communications with the Cohen
13    Placitella firm on any privilege log that have
14    been produced to the defendants?
15 A.  I don't know.  I haven't seen any privilege logs.
16 Q.  Have you collected Mr. Walsh's communications with
17    the Cohen Placitella firm?
18 A.  I -- yes, I believe so.
19 Q.  What did you do with Mr. Walsh's e-mail
20    communications with the Cohen Placitella firm?
21 A.  They would have been turned over to our counsel.
22 Q.  So Mr. Little has Mr. Walsh's e-mail
23    communications with the Cohen Placitella firm?
24 A.  I believe so.
25 Q.  Who has your e-mail communications with the

THOMAS W. BEVAN, ESQ. - 04/05/2018    Pages 100..103

Page 100

1 Placitella firm?
2 A. I believe counsel does.
3 Q. Mr. Little?
4 A. I believe so.
5 Q. Anyone else -- withdrawn.
6     Has anyone else from the Bevan Law Firm
7 had e-mail communications with Cohen, Placitella &
8 Roth?
9 A. Probably Erin Clark.
10 Q. Anyone other than Erin Clark?
11 A. I don't think so.
12 Q. Have Ms. Clark's e-mail communications with Cohen
13 Placitella been provided to Mr. Little?
14 A. I believe so.
15 Q. Do you have any agreements -- withdrawn.
16     Does your law firm have any agreements
17 with the Cohen Placitella firm regarding the
18 referral of clients to Cohen Placitella?
19     MR. ROTH: Objection. Form, foundation,
20   privilege.
21     MR. McDERMOTT: Objection. I instruct
22   you not to answer that, Tom.
23     THE WITNESS: Okay.
24 Q. I'm not asking you for the substance of the
25 agreements, Mr. Bevan. I'm just asking whether

Page 101

1 they exist. Can you tell me "yes" or "no" whether
2 your firm has agreements with the Cohen Placitella
3 firm regarding the referral of clients?
4     MR. ROTH: Same objection.
5     MR. McDERMOTT: Same objection.
6     THE WITNESS: Same instruction?
7     MR. FARRELL: Are you instructing him not
8   to answer that question?
9     MR. McDERMOTT: Let's take a minute.
10     THE WITNESS: Okay.
11     MR. McDERMOTT: Let's walk out.
12     MR. FARRELL: We're off the record.
13     (Discussion off the record.)
14     MR. FARRELL: Back on.
15     MR. McDERMOTT: I'll withdraw my last
16   objection.
17     MR. FARRELL: Back on the record. So I'm
18   sorry, Counsel, you were withdrawing the last
19   objection?
20     MR. McDERMOTT: Last objection.
21 BY MR. FARRELL:
22 Q. Okay. So my question to you, Mr. Bevan, was, does
23 your law firm have agreements with the Cohen
24 Placitella firm regarding the referral of clients?
25 A. Yes.

Page 102

1 Q. Are any of those agreements reflected on a
2 privilege log that has been prepared on behalf of
3 the Bevan Law Firm?
4 A. I don't know.
5 Q. Does the Bevan Law Firm have any agreements with
6 the Cohen Placitella firm regarding compensation
7 that might be paid to your firm if the plaintiffs
8 in the Williams case receive compensation?
9     MR. ROTH: Objection. Form and
10   foundation.
11     MR. McDERMOTT: Same objection. You can
12   go ahead and answer, Tom.
13 A. Yes.
14 Q. Are those agreements reflected on a privilege log
15 that has been produced to the defendants in the
16 Williams case?
17 A. I don't know.
18 Q. Are your law firm's agreements with the Cohen
19 Placitella firm regarding compensation that might
20 be paid to your firm in writing?
21     MR. ROTH: Objection.
22     MR. McDERMOTT: Same objection. You can
23   go ahead and answer, Tom.
24 A. Yes.
25 Q. Does the Bevan Law Firm have agreements with the

Page 103

1 Cohen Placitella firm regarding apportionment of
2 attorneys' fees that might be paid in the Williams
3 case?
4     MR. ROTH: Objection. Move to strike.
5     MR. McDERMOTT: Same objection.
6     MR. ROTH: We're way beyond a --
7     MR. McDERMOTT: 30(B)(5).
8     MR. ROTH: -- records custodian
9   deposition. This is the subject of a motion
10   that's been disputed and I'm going to ask
11   that he be instructed not to answer.
12     MR. FARRELL: You're instructing him not
13   to answer on the basis of scope?
14     MR. ROTH: I asked his counsel to
15   instruct him not to answer.
16     MR. McDERMOTT: Repeat the question,
17   please.
18     (Whereupon, the Reporter read the record
19   as requested.)
20     MR. McDERMOTT: I'm going to object to
21   that. It's privileged material. Don't
22   answer it.
23     THE WITNESS: Okay.
24 Q. You're following the instruction not to answer?
25 A. Yes.