# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**KIMBERLEE WILLIAMS, et al.**

                   Plaintiffs,

vs.

**BASF CATALYSTS LLC, et al.**

                   Defendants.

No. 2:11-cv-01754 (JLL) (JAD)
CIVIL ACTION

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THE APPEAL OF THE MAY 25, 2018 ORDER
MANDATING COST-SHIFTING (CM/ECF # 534) AND THE JUNE 12,
2018 "SUPERSEDING ORDER" (CM/ECF # 565)**

**FOX ROTHSCHILD LLP**

Jeffrey M. Pollock, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648
(Tel): (609) 896-3600
(Fax): (609) 896-1469

**COHEN, PLACITELLA & ROTH, P.C.**

Christopher M. Placitella, Esq.
Michael Coren, Esq.
Jared M. Placitella, Esq.
Eric S. Pasternack, Esq.
127 Maple Ave
Red Bank, New Jersey 07701
(Tel): (732) 747-9003
(Fax): (732) 747-9004

*Attorneys for Plaintiffs and the
Proposed Class*

Dated: June 25, 2018

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ........................................................................1

II.  STATEMENT OF THE CASE ........................................................................3

III. STANDARD OF REVIEW ............................................................................7

IV.  ARGUMENT ..................................................................................................8

   A.   The Order allowing cost-shifting is contrary to law and clearly erroneous
   because the Special Discovery Master did not find that the data necessary for
   BASF to respond to Interrogatory Nos. 9-11 is "inaccessible" and would have
   had no basis to do so. ..........................................................................................8

   B.   Even if BASF could prove that data sought is "inaccessible," the
   consideration of the Zubulake factors weighs against cost-shifting....................13

   C.   The filing of the June 8th appeal divested the Special Discovery Master of
   jurisdiction to enter the Superseding Order. ......................................................19

V.  CONCLUSION ..............................................................................................21

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Control Screening, LLC v. Integrated Trade Sys.*,
　　Civil Action No. 10-499 2011 U.S. Dist. LEXIS 85202 (D.N.J. Aug. 3, 2011)....7

*Haines v. Liggett Group, Inc.*,
　　974 F.2d 81 (3d Cir. 1992) ...................................................................................7

*MacNaughton v. Equity Res. Mgmt.*,
　　Civil Action No. 10-4807,
　　2011 U.S. Dist. LEXIS 129532 (D.N.J. Nov. 9, 2011).........................................7

*McPeek v. Ashcroft*,
　　202 F.R.D. 31 (D.D.C. 2001) .............................................................................14

*Venen v. Sweet*,
　　758 F.2d 117 (3d Cir. 1985) ...............................................................................19

*Williams v. BASF Catalysts, LLC*,
　　Civil Action No. 11-1754,
　　2017 U.S. Dist. LEXIS 122053 (D.N.J. Aug. 3, 2017).......................................15

*Young v. Lukens Steel Co.*,
　　Civil Action No. 92-6490,
　　1994 U.S. Dist. LEXIS 1462 (E.D. Pa. 1994)....................................................15

*Zabulake v. UBS Warburg LLC*,
　　216 F.R.D. 280 (S.D.N.Y. 2003)....................................................... 8, 14, 16, 18

*Zabulake v. UBS Warburg LLC*,
　　217 F.R.D. 309 (S.D.N.Y. 2003).........................................................................8

## Rules

Fed. R. Civ. P 60 ...................................................................................................20

Fed. R. Evid. 401 ..................................................................................................15

Local Civil Rule 72.1(c)(1)(A) ...........................................................................7, 20

# I.    PRELIMINARY STATEMENT

This case seeks remedies, including disgorgement of ill-gotten gains for those defrauded from the right to fairly litigate asbestos injury claims because Defendants falsely claimed there was no evidence of asbestos in BASF's talc. To fully develop that remedy, Plaintiffs have sought all data from Defendants identifying the plaintiffs who sued Engelhard and the outcome of those cases. Plaintiffs' first efforts to obtain the data through an electronic database provided by BASF were met with frustration because certain keys and "forms" in the so called "Cahill database" had been removed in the copy BASF gave Plaintiffs, which are necessary to search the database and aggregate information for each plaintiff. The database is also incomplete as to claimants and information concerning them. Plaintiffs then sought the information, in alternative ways, including the interrogatories before the Court. Defendants refusal again to respond to these requests led to motions to produce. CM/ECF # 516, 525.

There are two Orders of the Special Discovery Master being appealed here.

First, on May 25, 2018, the Special Discovery Master entered an Order, granting Plaintiffs' motion to compel BASF to respond to three interrogatories, seeking information on the defense costs BASF paid to defend Emtal talc claims, (Interrogatory No. 9), the number of cases settled or dismissed, (Interrogatory No. 10), and the total amount of payments BASF made to claimants from 1979 to

2017. (Interrogatory No. 11). Exhibit 1, CM/ECF # 534. In so concluding, the

Order found that the information requested is relevant and proportional but also

unduly burdensome. *Id.* The Order did not however find that the information

sought in Interrogatory Nos. 9-11 is "inaccessible." And for that reason alone, the

May 25th Order is contrary to law and clearly erroneous because cost-shifting is

appropriate only when "inaccessible" data is sought. In any event, even if the

requested data is "inaccessible," cost-shifting remains inappropriate given the

importance of this information to these proceedings, the stakes here, and the lack

of functionality/content of the so-called Cahill database produced by BASF to

Plaintiffs to address the issue, which Plaintiffs had hoped could have provided a

large portion of the data necessary to respond to these interrogatories.[1]

Second, on June 8, 2018, Plaintiffs timely appealed the May 25th Order.

Exhibit 2, CM/ECF # 560. Four days later, the Special Discovery Master entered a

"Superseding Order," which purports to supersede the May 25th Order that is now

(and then) on appeal to this Court. Exhibit 3, CM/ECF # 565. This Court should

strike that Order as being improvidently granted given that at the time the Special

Discovery Master entered it, Plaintiffs had already filed the June 8th appeal, which

---

[1]      On June 21, 2018, the SDM directed the parties to meet-and-confer about
the operability of the Cahill databases. CM/ECF # 593.

divested the Special Discovery Master of jurisdiction to modify the May 25th Order.

For these reasons, this Court should reverse the Special Discovery Master's May 25th Order to the extent that it mandates cost-shifting, and the June 12th Order as that Order was entered without jurisdiction.

## II.    STATEMENT OF THE CASE

On March 15, 2018, Plaintiffs served the Third Set of Interrogatories and Fifth Requests for Production on BASF. Exhibit 4. Among other areas of inquiry, Plaintiffs' interrogatories sought information relating to defense costs BASF paid to defend EMTAL talc claims from 1979 through 2017, (Interrogatory No. 9), the number of Emtal claims that BASF resolved or terminated between 1979-2017, (Interrogatory No. 10), and the total amount of claim payments BASF paid relating to Emtal claims for those years, (Interrogatory No. 11). *Id.*

On April 16, 2018, BASF served numerous objections to Plaintiffs' interrogatories. Exhibit 5. In response, Plaintiffs moved to compel on May 15, 2018, Exhibit 6, CM/ECF # 516, to which BASF responded on May 21, 2018. Exhibit 7, CM/ECF # 529. In opposition to the motion to compel, BASF submitted a Declaration of Kevin Wood, a manager with BASF. Exhibit 8, CM/ECF # 529-14. Plaintiffs thereafter submitted their reply brief on May 24, 2018. Exhibit 9, CM/ECF # 533.

Mr. Wood certified that he is "not aware of any reporting capability that would generate the information requested in the ***form*** that plaintiffs seek in an automated fashion for any portion of the time period covered by plaintiffs' requests." Exhibit 8, ¶ 4 (emphasis added). Mr. Wood also explained that "[a]s a result, assembling the information that plaintiffs requested in the form they seek would require a manual review of historical documents, such as periodic invoices and associated correspondence regarding Emtal litigation and settlements from 1979 through 2017 for each law firm that BASF and Engelhard retained in each personal injury case related to Emtal talc." *Id.* Mr. Wood further certified that "[b]ecause Emtal talc was a legacy Engelhard business, the annual legal spending and settlement amounts prior to 2006[2] for matters related to Emtal talc are not maintained in current systems and, if they are maintained at all, they would be maintained in applications that are no longer supported commercially and reside on an offsite server from which information would need to be extracted and reviewed." *Id.* at ¶ 5.

On May 25, 2018, the Special Discovery Master granted Plaintiffs' motion to compel BASF to respond to Interrogatory Nos. 9-11. Exhibit 1, CM/ECF # 534. However, the Special Discovery Master made no findings relating to whether the documents necessary for BASF to respond to the subject interrogatories are

---

[2]      The interrogatories spanned the time-period ending in 2017.

"inaccessible." Instead, the Special Discovery Master observed "that any concerns in respect of relevance, proportionality to the needs of the case, and undue burden may be cured by allowing the requested discovery to go forward but, at the same time and as a condition precedent thereto, by shifting from BASF to plaintiffs the cost of responding to interrogatories 9, 10 and 11." *Id.* The Special Discovery Master thus ordered that Plaintiffs are "solely responsible for all reasonable costs and expenses, including reasonable counsel fees, incurred by BASF in responding to interrogatories 9, 10, and 11." *Id.*

Following the entry of the Special Discovery Master's May 25th Order, the parties had an informal meet-and-confer by telephone, wherein there was a general discussion of the costs with the expectation of a more fulsome discussion to follow. A second meet-and-confer thereafter took place on June 7, 2018. During that discussion, BASF—for the first time—indicated, without specifying which interrogatory they were referring to, that to respond to the interrogatories, BASF would need to restore legacy computer systems and examine paper documents. As to the former, BASF estimated that the cost of restoring the electronic information would be in the range of $ 65,000 to $ 165,000, with another $ 30,000 added on for attorney review, for a total cost of $ 95,000 to $ 195,000.[3] And as to the latter,

---

[3]   BASF noted during the meet and confer that this was only an estimate and the final cost could not be determined until after the start of the restoration efforts.

BASF indicated that it has approximately 11,000 outside counsel invoices (information responsive to Interrogatory No. 9), and 5,000 settlement-related documents (information relevant to Interrogatory No. 11), in its possession that may be responsive, and that it anticipates that it would take approximately 300-400 hours to review those documents by either lawyers from Kirkland & Ellis LLP for approximately $ 110,00 or contract lawyers for $ 60,000, with additional time needed for training the reviewers. So in sum, the total estimated cost for both portions of the project would range from approximately $ 155,000 to $ 305,000. BASF also expressed no opinion on what the computer data or paper documents would contain. That left Plaintiffs in the position of having to commit substantial resources to obtain the requested discovery with no ability to control the costs associated with the production or any assurance of the relevance of the documents to be restored.

During the meet-and-confer, Plaintiffs voiced the concern that these costs are not reasonable. Plaintiffs as a result inquired about possible alternative methods to retrieve more generalized information responsive to the interrogatories, as opposed to the information in the stratified grids requested. For example, Plaintiffs asked about producing the aggregate fees paid to outside defense counsel in Emtal talc cases year by year. Plaintiffs also inquired about sampling the information or

obtaining just the bills or amounts paid to certain firms, such as the ones in Ohio and Pennsylvania. BASF rejected all of these suggestions.

On June 8, 2018, Plaintiffs appealed the May 25th Order. Exhibit 2, CM/ECF # 560. The Special Discovery Master then—four days later—entered a "Superseding Order" on June 12, 2018, which purports to supersede the May 25th Order, even though the filing of the appeal divested the Special Discovery Master of jurisdiction to modify the May 25th Order.

## III.   STANDARD OF REVIEW

Under Local Civil Rule 72.1(c)(1)(A), the District Court "shall consider the appeal . . . and set aside any portion of the [Special Discovery Master's] order found to be clearly erroneous or contrary to law." *MacNaughton v. Equity Res. Mgmt.*, Civil Action No. 10-4807, 2011 U.S. Dist. LEXIS 129532, *6 (D.N.J. Nov. 9, 2011) (Linares, C.J.); *see also* (CM/ECF # 335) (appointing Special Discovery Master). "A ruling is 'contrary to law' if the [Special Discovery Master] has misinterpreted or misapplied applicable law." *Id.* at *7 (quoting *Control Screening, LLC v. Integrated Trade Sys.*, Civil Action No. 10-499 2011 U.S. Dist. LEXIS 85202, *16 (D.N.J. Aug. 3, 2011)). The Special Discovery Master's legal conclusions on a non-dispositive motion such as the one here are reviewed "de novo." *Id.* (citing *Haines v. Liggett Group, Inc.*, 974 F.2d 81, 91 (3d Cir. 1992)). "A finding is 'clearly erroneous' when, 'although there is no evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed.'" *Id.*

## IV.   ARGUMENT

**A. The May 25th Order allowing cost-shifting is contrary to law and clearly erroneous because the Special Discovery Master did not find that the data necessary for BASF to respond to Interrogatory Nos. 9-11 is "inaccessible" and would have had no basis to do so.**

There is a presumption that "the responding party must bear the expense of

complying with discovery requests." *Zubulake v. UBS Warburg LLC*, 216 F.R.D.

280, 283 (S.D.N.Y. 2003). The responding party accordingly "has the burden of

proof on a motion for cost-shifting." *Id.* As a result, courts only consider cost-

shifting when discovery imposes an undue burden or expense on the responding

party, meaning that "[c]ost-shifting is potentially appropriate only when

*inaccessible* data is sought." *Id.* at 284 (emphasis added).

Even though a court may enter a cost-shifting protective order only upon

motion of the responding party to a discovery request and "for good cause shown,"

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 315-16 (S.D.N.Y. 2003), the

Special Discovery Master *sua sponte* ordered cost-shifting here.[4] CM/ECF # 534.

---

[4]     This stands in sharp contrast to the Special Discovery Master's denial of the motions filed by *non-parties* to this matter for cost-shifting in response to burdensome discovery requests by BASF. Exhibit 10, CM/ECF # 362; Exhibit 11, 10/26/2017 Hr'g Tr., T151:19-24.

The Special Discovery Master's May 2th Order is also contrary to the law in that it orders cost-shifting without first making a finding that the discovery sought is "inaccessible." The record moreover supports no finding that the information necessary for BASF to respond to Interrogatory Nos. 9-11 is "inaccessible."

In support of its opposition to Plaintiffs' Motion to Compel, BASF submitted a Declaration of Kevin Wood. Exhibit 8, CM/ECF # 529-14. He certified that he is "not aware of any reporting capability that would generate the information requested in the form that plaintiffs seek in an automated fashion for any portion of the time period covered by plaintiffs' requests." *Id.* at ¶ 4. Mr. Wood continued, explaining that "[a]s a result, assembling the information that plaintiffs requested in the form they seek it would require a manual review of historical documents, such as periodic invoices and associated correspondence regarding Emtal litigation and settlements from 1979 through 2017 for each law firm that BASF and Engelhard retained in each personal injury case related to Emtal talc." *Id.*

While the declaration provides that the information cannot be automated in the "*form*" Plaintiffs seek, it does not state that the information needed to complete a good faith response to the interrogatories cannot be automated at all or at the very least obtained through manual review. *Id.* at ¶¶ 4-7. Mr. Wood thus does not claim

that the information is "inaccessible." To the contrary, he suggests that the information is available.

Further, Mr. Wood's statement, which is the only evidence BASF offered in opposition to the Motion to Compel, did not address Interrogatory Nos. 10 and 11 with any specificity, which asked, respectively, about the number of claims resolved or terminated by year from 1979 -2017 and the claim payments in each of those years. BASF offered no evidentiary support that such information is unavailable, burdensome or inaccessible. In fact, BASF's corporate representative testified on June 6, 2018, to exactly the opposite—that BASF's counsel had demonstrated to him only a week or so before the deposition that the Cahill database in its possession is operable. *See* Exhibit 14, T42:14-18 ("Elizabeth went through it . . . and generated some reports from the information and tables that are included in that."); *id.*, T42:21 to T43:1 (testifying that the database generated "summary reports regarding litigation that was handled by Cahill for Engelhard and it listed [and] included columns showing different pieces of information related to . . . each of those lawsuits."), *id.*, T306:10 to T306:23 (testifying that the Cahill database could generate reports linking the client to the injury alleged). BASF offers no explanation why it cannot use the same database it used to prepare Mr. Steinmetz for the BASF30 (b)(6) deposition to answer Interrogatory Nos. 10

and 11 for sure, and even perhaps Interrogatory No. 9, with a minimum of fuss and expense.

Addressing only in particular Interrogatory Nos. 9 and 11, Mr. Wood states that "[b]ecause Emtal talc was a legacy Engelhard business, the annual legal spending, (Interrogatory No. 9), and settlement amounts, (Interrogatory No. 11), prior to 2006[5] for matters related to Emtal talc are not maintained in current systems and, if they are maintained at all, they would be maintained in applications that are no longer supported commercially and reside on an offsite server from which information would need to be extracted and reviewed." *Id.* at ¶ 5. Again though, even though some of Engelhard's accounts payable records are saved in applications that "are no longer supported commercially and would require specialized hardware and software to operate," *id.* at ¶ 6, that does not mean the records necessary to respond to Interrogatory No. 9 are "inaccessible." That is because the information necessary to respond to these interrogatories is available for the period from 2006 to 2017 or available elsewhere. Mr. Wood made no such statement about any difficulties identifying claims and closures in answer to Interrogatory No. 10.

---

[5]     Mr. Wood did not indicate in his Declaration that information from 2006 to 2017 is not readily accessible in BASF's current computer systems.

Arthur Dornbusch, former general counsel of Engelhard, testified at his deposition that Engelhard received separate monthly bills for each legal matter and a general memorandum of the work done for each matter that he would review and approve for payment. *See* Exhibit 12, 5/14/2018 Dornbusch Tr., T107:19-108:11; *see* Exhibit 13, 4/24/2018 Hasset Tr., T52:8-18 ("[Engelhard] in general maintained records of legal expenses and all expenses. It's, you know, a big company with good financial statements…."). The bill would then go to accounts payable. Exhibit 12, Dornbush Tr., T108:12-17. The financial department at Engelhard would also give Mr. Dornbusch sheets with analysis of legal expenditures broken down by matter. *Id.* at T109:13-110:7. Mr. Dornbusch also testified that if he wanted to know how much Cahill Gordon billed Engelhard from 2003 to 2005 he could obtain that information. *Id.* at T111:7-13. Mr. Dornbusch's testimony thus confirms the undeniable fact that corporations the size of, and with the sophistication and resources of BASF and its predecessors, including Engelhard, have many accounting, financial, and budgetary procedures and controls to know what they are spending on legal defense costs, and especially the fees charged by outside law firms. In the end, BASF has only claimed that one means of retrieving the data necessary to respond to Interrogatory No. 9 is inaccessible; it does not suggest that it lacks other ways to retrieve the data, just that it would be inconvenient for it to do so.

The Special Discovery Master's May 25th Order directing cost-shifting is contrary to law and clearly erroneous as the Order does not find that the documents necessary to respond to Interrogatory Nos. 9-11 are "inaccessible," or that the responses to Interrogatory Nos. 10 and 11 are burdensome or unavailable, and would have had no basis in the record to do so.

**B. Even if BASF could prove that data sought is "inaccessible," the consideration of the *Zubulake* factors weighs against cost-shifting.**

Because the May 25th Order did not find that the documents necessary to respond to Interrogatory Nos. 9-11 are "inaccessible," the Order should be reversed to the extent that it mandates cost-shifting. All the same, even if the data is "inaccessible," cost-shifting would still be inappropriate.

In *Zubulake*, the seminal decision on cost-shifting, the district court found that "to determine whether cost-shifting is appropriate for the discovery of inaccessible data, 'the following factors should be considered, weighted more-or-less in the following order'":

1. The extent to which the request is specifically tailored to discover relevant information;

2. The availability of such information from other sources;

3. The total cost of production, compared to the amount in controversy;

4.  The total cost of production, compared to the resources available to each party;

5.  The relative ability of each party to control costs and its incentive to do so;

6.  The importance of the issues at stake in the litigation;

7.  The relative benefits to the parties of obtaining the information.

*Zubulake*, 216 F.R.D. at 284 (quoting *Zubulake*, 217 F.R.D. at 322); *see also Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 620 (D.N.J. 2010); *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, Civil Action No. 12-3427, 2013 U.S. Dist. LEXIS 18372, *9 (D.N.J. 2013).

Together, the first two factors compromise what is called the "marginal utility test":

The more likely it is that the [discovery] contains information that is relevant to a claim or defense, the fairer it is that the [responding party] search at its own expense. The less likely it is, the more unjust it would be to make the [responding party] search at its own expense. The difference is "at the margin."

*Zubulake*, 216 F.R.D. at 284 (quoting *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001)). These two factors are weighted the most heavily, *id.*, and here, compel a determination that cost-shifting is not appropriate.

14

There can be no question that the information sought in Interrogatory Nos. 9-11 is pertinent to the parties' claims and defenses here. In determining whether evidence is relevant, the Court considers whether the evidence has "a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." *See Williams v. BASF Catalysts, LLC*, Civil Action No. 11-1754, 2017 U.S. Dist. LEXIS 122053, at *10 (D.N.J. Aug. 3, 2017) (citing Fed. R. Evid. 401) (internal quotations omitted). Federal Rule of Civil Procedure 26 "is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at trial." *See Williams,* 2017 U.S. Dist. LEXIS 122053, at *10 (citations omitted); *Young v. Lukens Steel Co.*, Civil Action No. 92-6490, 1994 U.S. Dist. LEXIS 1462, *3 (E.D. Pa. 1994) (recognizing that because of the Rule 26's purpose of allowing the parties to obtain the fullest possible knowledge of the issues and facts before trial, wide latitude should be afforded to the party seeking discovery).

In the Brief in Support of their Motion for Class Certification, Plaintiffs explain the remedies they seek, including disgorgement of monies saved by BASF in defense costs and liability payments not paid to the Plaintiffs and putative Class Members because of the dismissals and settlement of claims based on fraudulent concealment, fraud, and conspiracy, as well as why disgorgement is a proper remedy here. ECF # 418-1. The information sought by Interrogatories Nos. 9, 10 and 11

15

specifically relate to the amount of monies Defendants should disgorge if Plaintiffs are successful. The information is also relevant as to BASF's intent and motive in employing the fraudulent asbestos defense scheme.

Factors three, four and five address cost issues with those focusing on "how expensive will the production be?" and "who can handle that expense?" *Zubulake*, 216 F.R.D. at 287. "In an ordinary case, a responding party should not be required to pay for the restoration of inaccessible data if the cost of that restoration is significantly disproportionate to the value of the case." *Id.* at 288. So in a "multi-million dollar case, the cost of restoration is surely not 'significantly disproportionate' to the projected value of [the] case," which "weighs against cost-shifting." *Id.*

In its opposition below, BASF did not provide an estimate of what it expects the total cost of production necessary to respond to Interrogatory No. 9 to be, which BASF provided for the first time on June 7, 2018, in a meet-and-confer with Plaintiffs. Their presentation was focused on information about defense costs in financial records and paper copies of legal bills and payments responsive to Interrogatory 9; they estimated (1) the costs of restoring the electronic information for defense costs responsive to Interrogatory 9 would be in the range of $ 65,000 to $ 165,000, with another $ 30,000 for attorney review; and (2) that it would take approximately 300-400 hours to review the paper records of legal bills and

16

payments with additional time to train the reviewers. BASF further estimated that it would cost $ 60,000 for contract attorneys and $ 110,00 for attorneys from Kirkland & Ellis to review the paper documents. They also cautioned that the costs for the electronic information could range higher depending on what was discovered once the restoration process began. That said, given the stakes in this litigation with there being approximately 13,000 class members, the cost of responding to Interrogatory Nos. 9-11 is not disproportionate to the value of this case, which weighs against cost-shifting.

As to factor four, BASF is a multi-national company and the largest chemical producer in the world. Under such circumstances, BASF is not without sufficient resources to respond to the subject interrogatories.

As for factor five, Defendants alone can control costs of production. As BASF indicated during the meet-and-confer on June 7, 2018, it has identified three vendors to restore the electronic documents, and that it would be responsible for training the reviewers on the project. So, too, the fifth factor weighs in favor of having BASF bear the costs of responding to the subject interrogatories as it has the exclusive ability to control costs.

The sixth factor, which concerns the importance of the issues at stake in the litigation, also weighs against cost-shifting. The central issue in this class action is whether BASF and its national asbestos defense counsel, Cahill Gordon, as well as

17

the individual defendants, conspired to deceive some 13,000 putative Class Members who brought asbestos claims against BASF by denying them access to the single most important piece of evidence in an asbestos case: evidence of asbestos. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 322 (3d Cir. 2014) (asking "[w]hat could be more important to a claim that talc caused asbestos disease than proof that talc contained asbestos?"). Resolving this case would accordingly end this fraud on the courts and litigants; and so, the issues involved here are of sufficient import that cost-shifting should not be allowed with respect to BASF's responses to Interrogatory Nos. 9-11.

By any measure then, all the factors weigh against cost-shifting here, and the Special Discovery Master's May 25th Order should be reversed to the extent that it mandates cost-shifting. [6]

---

[6] "As a general rule, where cost-shifting is appropriate, only the costs of restoration and searching should be shifted." *Zubulake*, 216 F.R.D. at 290. The responding party consequently "***should always bear the costs of reviewing and producing electronic data once it has been converted into an accessible form***." *Id.* (emphasis added). So for that reason too, the Special Discovery Master's Order is also contrary to the law as it mandates that Plaintiffs are responsible not just for the costs associated with restoring the electronic information, but all "costs and expenses, including reasonable counsel fees, incurred by BASF in responding to interrogatories 9, 10, and 11." Exhibit 1, CM/ECF # 534.

**C. The filing of the June 8th appeal divested the Special Discovery Master of jurisdiction to enter the Superseding Order.**

Following the docketing of the June 8th appeal in accordance with the Local Civil Rules, the Special Discovery Master entered the "Superseding Order" on June 12, 2018, in which the Special Discovery found that because Plaintiffs had exercised their right to appeal the May 25th Order, that Order should be vacated and the motion to compel answers to the three interrogatories at issue should now be denied. Exhibit 3, CM/ECF # 565.

At the time then that the SDM entered the June 12th "Superseding Order," Plaintiffs had already filed their appeal. CM/ECF # 560. Upon the filing of that appeal, the SDM no longer had jurisdiction over the May 25th Order. *See Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir. 1985) ("As a general rule, the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on [the appellate court] and divesting [the] court of its control over those aspects of the case involved in the appeal"). As the Third Circuit has explained, "divest" means exactly "what it says—the power to act, in all but a limited number of circumstances, has been taken away and placed elsewhere." *Id.* at 120-121. "This judge-made rule has the salutary purpose of preventing confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously." *Id.* at 121.

19

The June 12th "Superseding Order" has caused the very sort of confusion and inefficiency that the Third Circuit warned of in *Venen*. *See* CM/ECF # 573 (BASF: "it is BASF's understanding that plaintiffs' appeal of that earlier May 25, 2018 Order is now moot."). The filing of the appeal divested the Special Discovery Master of any control over the May 25th Order. Indeed, once the Special Discovery Master entered the May 25th Order and Plaintiffs appealed that decision, the Special Discovery Master's responsibilities and authority were at their end. Moreover, the "Superseding Order" cannot be justified under Fed. R. Civ. P 60 because (1) it was not a "clerical mistake or a mistake arising from oversight or omission," but even if it were, (2) such a mistake can be "corrected only with the appellate court's leave" "after an appeal has been docketed in the appellate court and while it is pending."

Finally, the June 12th "Superseding Order" is also contrary to law and clearly erroneous as it purports to divest this Court of jurisdiction to hear Plaintiffs' appeal of the May 25th Order. Local Civil Rule 72.1(c)(1)(A) provides that "[a]ny party may appeal from a Magistrate Judge's determination of a non-dispositive matter" and that a "Judge shall consider the appeal . . . and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." Since these provisions use mandatory language, the June 12th "Superseding Order" cannot deprive Plaintiffs of their right to appeal the challenged May 25th Order.

## V.    CONCLUSION

For all these reasons, the Special Discovery Master's May 25th Order

mandating cost-shifting is contrary to law and clearly erroneous as it did not find

that the documents necessary to respond to Interrogatory Nos. 9-11 are

"inaccessible," and would have had no basis to do so in any event. The Special

Discovery Master's June 12th "Superseding Order" is likewise contrary to law and

clearly erroneous as the filing of the June 8th appeal divested the Special Discovery

Master of jurisdiction to supersede the May 25th Order as it was then (and now) on

appeal to this Court.

Respectfully Submitted,

**COHEN, PLACITELLA & ROTH, P.C.**

_/s/ Christopher M. Placitella_
Christopher M. Placitella, Esq.
(NJ Atty #: 027781981)
Michael Coren, Esq.
(NJ Atty #: 024871979)
Jared M. Placitella, Esq.
(NJ Atty #: 068272013)
Eric S. Pasternack, Esq.
(NJ Atty #: 015132011)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**FOX ROTHSCHILD LLP**

Jeffrey M. Pollock, Esq.
(NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive,
Building 3
Lawrenceville, NJ 08648
(609) 896-7660

*Attorneys for Plaintiffs and the Putative Class*