Exhibit 7

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **KIMBERLEE WILLIAMS**, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; **NANCY PEASE**, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; **MARILYN L. HOLLEY**, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; **DONNA WARE**, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; and **DONNETTE WENGERD**, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate, and as representative of others similarly situated, and **ROSANNE CHERNICK**, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated, | : : : : : : : : : : : : : : : : : : : : : : : : | No. 11-cv-1754 (JLL) (JAD)  CIVIL ACTION  **DEFENDANT BASF CATALYSTS LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES [ECF NO. 516]** |
| Plaintiffs, | : : : | |
| v. | : : : | |
| **BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, CAHILL GORDON & REINDEL**, a partnership including a professional corporation, **THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, GLEN HEMSTOCK, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, JOHN DOE BUSINESS ENTITIES 1 to 100; JOHN DOE BUSINESS ENTITIES 101 to 200; JOHN DOE LAWYERS 1 to 500**; and, **JOHN DOE 1 to 500**, | : : : : : : : : : : : | |
| Defendants. | : : | |

Eugene F. Assaf, P.C. (*pro hac vice*)
Michael F. Williams
Daniel A. Bress (*pro hac vice*)
Peter A. Farrell (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

Justin T. Quinn
Robinson Miller LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
Phone: (973) 690-5400
Facsimile: (973) 466-2760

*Counsel for Defendant BASF Catalysts LLC*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................1

    A.    Plaintiffs' First and Second Sets of Interrogatories ............................2

    B.    Plaintiffs' Third Set of Interrogatories ..................................................6

    C.    BASF's Objections and Meet and Confer Efforts ..............................11

ARGUMENT ......................................................................................................13

I.     PLAINTIFFS' THIRD SET OF INTERROGATORIES
      EXCEEDS THE 25-INTERROGATORY LIMIT .......................................13

II.    INTERROGATORIES NOS. 9, 10, AND 11 CALL FOR
      INFORMATION THAT IS IRRELEVANT OR THAT
      PLAINTIFFS HAD AMPLE OPPORTUNITY TO DEVELOP .................17

III.   INTERROGATORIES 9, 10, AND 11 ARE UNDULY
      BURDENSOME .........................................................................................23

CONCLUSION ..................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avago Techs. U.S., Inc v. IPtronics Inc*,
  309 F.R.D. 294 (E.D. Pa. 2015)..........................................................21

*Doe v. Methacton Sch. Dist.*,
  164 F.R.D. 175 (E.D. Pa. 1995)..........................................................21

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
  2012 WL 628320 (D.N.J. Feb. 27, 2012)..........................................22

*Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*,
  2017 WL 2371834 (D.N.J. Feb. 10, 2017)..........................................14

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*,
  2011 WL 13199148 (M.D. Pa. Dec. 21, 2011)..................................20

*Kleinman v. Merck & Co.*,
  8 A.3d 851 (N.J. Law Div. 2009) ......................................................20

*Knit With v. Knitting Fever, Inc.*,
  2010 WL 11474937 (E.D. Pa. Jan. 22, 2010)....................................14

*Kokesh v. S.E.C.*,
  137 S. Ct. 1635 (2017)........................................................................20

*Makaeff v. Trump Univ., LLC*,
  2014 WL 3490356 (S.D. Cal. July 11, 2014)....................................17

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Becton, Dickinson & Co.*,
  2018 WL 627378 (D.N.J. Jan. 30, 2018)............................................18

*Pulchalski v. Franklin Cty.*,
  2017 WL 57143 (M.D. Pa. Jan. 5, 2017)....................................14, 15

*Rosenblit v. Zimmerman*,
  766 A.2d 749 (N.J. 2001) ..................................................................19

*S.E.C. v. Teo*,
  746 F.3d 90 (3d Cir. 2014) ................................................................20

*Tartaglia v. UBS PaineWebber Inc.*,
    961 A.2d 1167 (N.J. 2008) ................................................................19

*Travillion v. Allegheny Cty. Bureau of Corr.*,
    2009 WL 1457720 (W.D. Pa. May 22, 2009) ...................................21

*Trevino v. ACB American, Inc.*,
    232 F.R.D. 612 (N.D. Cal. 2006) ......................................................17

*Waterbury v. Scribner*,
    2008 WL 2018432 (E.D. Cal. May 8, 2008) .....................................15

*Williams v. BASF Catalysts LLC*,
    765 F.3d 306 (3d Cir. 2014) .............................................................19

*Younes v. 7-Eleven, Inc.*,
    2015 WL 12843883 (D.N.J. Aug. 19, 2015) ....................................22

## Rules

Fed. R. Civ. P. 26 .................................................................................18, 22

Fed. R. Civ. P. 33(a) ...............................................................................13

III

# INTRODUCTION

BASF opposes plaintiffs' motion to compel further responses to Interrogatories 9, 10, and 11 in plaintiffs' Third Set of Interrogatories. ECF No. 516. Those three interrogatories each call for extensive information about past legal fees and claims in thousands of cases spanning 1979 to 2017. And they in each case require BASF to prepare discrete calculations for massive grids spanning decades. The grid in Interrogatory No. 9 alone, for example, calls for 234 independent calculations.

It is hard to know where to begin in explaining why these three interrogatories are so improper, and why plaintiffs' motion to compel should thus be denied. Plaintiffs have vastly exceeded their 25-interrogatory limit, and plaintiffs' motion can be denied on that basis alone. The interrogatories also call for information that is either not relevant to this case, such as itemized calculations of the amounts of legal fees Engelhard and BASF paid, including since 2009, when plaintiffs' counsel first raised the fraud allegations at issue here. The interrogatories otherwise call for information about past settlements that either does not exist, is not readily accessible, or that plaintiffs could attempt to prepare themselves.

Although plaintiffs claim BASF has at the ready the information they are requesting, plaintiffs offer no record support for that assertion, and it is untrue. What is really going on here is that, years into this case, plaintiffs did nothing to build a

record on damages and are now asking BASF to do their work for them, even as much of the information requested has no plausible connection to any permissible damages theory.  It only adds to the prejudice that plaintiffs substantially delayed in moving to compel this information and are only doing so now, in the twilight of the discovery period.  Plaintiffs' motion is improper, prejudicial, and should be denied.

## BACKGROUND

### A.    Plaintiffs' First and Second Sets of Interrogatories

Plaintiffs motion to compel responses to their Third Set of Interrogatories leaves out important background information, namely, plaintiffs' First and Second Set of Interrogatories.  Ex. A (10/23/15 Pls.' Interrogs., Set 1); Ex. B (1/22/18 Pls.' Interrogs., Set 2).  Under this Court's Scheduling Order, 10/17/16 Order (ECF No. 221), each party was allowed 25 additional interrogatories following entry of the scheduling order.  That limitation was imposed against the backdrop of Federal Rule of Civil Procedure 33(a), which provides a default limit of 25 interrogatories.  Plaintiffs had already served a first set of interrogatories prior to entry of the scheduling order and served a second set shortly afterward.  Collectively, plaintiffs' first two sets of interrogatories—which were all served on behalf of all plaintiffs— contained 21 interrogatories, although with subparts and other requests, the number was vastly higher, as discussed below.  Indeed, the Second Set of Interrogatories itself exceeded the 25-interrogatory limit.

In both their First and Second Sets of Interrogatories, plaintiffs requested information about past Emtal talc settlements, fees, and claims. *See, e.g.*, Ex. A (10/23/15 Pls.' Interrogs., Set 1, Nos. 2, 6, 17). On December 23, 2016, BASF served extensive responses to Plaintiffs' First Set of Interrogatories, Ex. C (12/23/16 BASF Resps. to Pls.' Interrogs., Set 1), including by referencing and providing the Cahill database, which Cahill had prepared while it was defending Emtal-related cases. Plaintiffs had asked BASF to provide the amounts of fees it had paid Cahill, but BASF objected to this as irrelevant and unduly burdensome. (12/23/16 BASF Resps. to Pls.' Interrogs., Set 1, Resp. to No. 17). Plaintiffs never moved to compel on any of these responses.

On January 18, 2018, plaintiffs served a Second Set of Interrogatories that also requested extensive information about past cases and settlements. Ex. B (1/22/18 Pls.' Interrogs., Set 2). For example, plaintiffs' first interrogatory in their Second Set requested the following:

### <u>INTERROGATORY NO. 1:</u>

Please identify all settlements You entered into between January 1, 1983 and December 31, 2009, inclusive, where the plaintiff or claimant (or his/her personal representative) claimed an injury due to alleged exposure to EMTAL talc. For each such settlement please include in your answer:

a. The asbestos related disease the plaintiff or claimant alleged he or she suffered from;

b. Whether You contested the diagnosis of the asbestos related disease alleged by the plaintiff or claimant;

3

c. The nature of the alleged exposure to EMTAL talc, including whether exposure allegedly occurred with EMTAL talc itself or as an ingredient of another product using EMTAL talc, such as Bondo;

d. The jurisdiction where the case was filed;

e. The amount of the settlement;

f. The name of the plaintiff or claimant's lawyer;

g. The amount paid by Your insurance carriers to settle the case;

h. The amount paid directly by You to settle the case;

i. The amount paid by or on behalf of You to Your attorneys prior to the dismissal of the plaintiff's claim;

j. Whether any attorney for You ever represented to the lawyer for the plaintiff or claimant that there was no asbestos in EMTAL talc, including the Attorney's name who made the representation;

k. Whether You ever represented to the lawyer for the plaintiff or claimant that there was no evidence of asbestos in EMTAL talc, including the name of the person who made the representation and his or her authority;

l. Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's affidavit and if so by whom and why;

m. Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed by Mr. Charles Carter as affiant, and if so by whom and why;

n. Whether You had in Your possession at the time of dismissal any evidence indicating EMTAL talc was sold to plaintiff or claimant's employer; and

o. Whether the reason for the amount of the settlement was reported to the insurance carrier for You

*Id.*, Interrog. No. 1.

BASF objected that plaintiffs' Second Set of Interrogatories as "exceed[ed] the limit on interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1)," but nevertheless served a substantial response to Interrogatory No. 1 that also referenced various documents, including the Cahill database.  Ex. D (3/7/18 BASF Resps. to Pls.' Interrogs., Set 2).  BASF also "refer[red] plaintiffs to the documents, databases, and other information in the possession, custody, or control of the lawyers who represented plaintiffs in past litigation matters," noting that "lawyers for past plaintiffs possess substantial information that is responsive to this interrogatory but have asserted objections and refused to produce responsive information, particularly as to members of the putative class."  *Id.* at Resp. to Interrog. No. 1.

Plaintiffs had also requested various information about the lawyers who had worked on the Emtal cases, including fees paid to each.  Ex. B (1/22/18 Pls.' Interrogs., Set 2, No. 4).  BASF again provided an extensive response, but objected to providing information on legal fees, as irrelevant and unduly burdensome.  Ex. D (3/7/18 BASF Resps. to Pls.' Interrogs., Set 2, No. 4).  Plaintiffs once again did not move to compel on any responses.

In addition to these interrogatories, plaintiffs had ample opportunity to gather information relating to the past asbestos cases.  In addition to the Cahill database, BASF has produced thousands of other documents based on plaintiffs' own search terms.  Plaintiffs also served subpoenas on various insurance companies and

received documents in response.  They further had the opportunity to depose numerous witnesses, including four witnesses on insurance issues.

### B.  Plaintiffs' Third Set of Interrogatories

On March 15, 2018, plaintiffs (again, collectively) served a Third Set of Interrogatories on BASF.  *See* Ex. E (3/15/18 Pls.' Interrogs., Set 3).  This Third Set included 11 more interrogatories calling for a massive amount of additional information about the underlying asbestos claims.  Interrogatories Nos. 9, 10, and 11 are the only ones at issue in the instant motion.  Each of those three interrogatories contains numerous subparts, and then contains yet further subparts through their request that BASF provide information responsive to massive grids.  Interrogatory No. 9 requires BASF to prepare calculations for a 234-cell matrix concerning past legal fees, Interrogatory No. 10 requires BASF to prepare calculations for a 351-cell matrix concerning the resolution of past cases, and Interrogatory No. 11 requires BASF to prepare calculations for a 144-cell matrix concerning past settlements.  *Id.*

It is necessary to quote these three interrogatories in full as part of later demonstrating why they are excessive and improper[1]:

**<u>INTERROGATORY NO. 9:</u>** For each year during the Time Period, and excluding expenditures relating solely to the defense of the present *Williams* case,

---

[1] All text for the remainder of this subsection B are quotes of Interrogatories Nos. 9 to 11.

state: (a) the total aggregate amount of Defense Costs You or anyone on Your Behalf, including without limitation any insurance company, paid to defend EMTAL Claims asserted against You during any portion of the year; (b) the total number of EMTAL Claim Claimants with actions pending against You during any portion of the year; (c) the highest total amount of Defense Costs paid by You or on Your behalf during the year in defending a single EMTAL Claim Claimant's EMTAL Claim; (d) the lowest total amount of Defense Costs paid by You or on Your behalf during the year in defending a single EMTAL Claim Claimant's EMTAL Claim; (e) the arithmetic average (mean) total expenditure amount paid by You or on Your behalf in defending a single EMTAL Claim Claimant's EMTAL Claim during the year; and (f) the median expenditure paid by You or on Your behalf for defending a single EMTAL Claim Claimant's EMTAL Claims during the year

Please use the following matrix to supply this data:

| Year | (a) Total Defense Expenditures | (b) Number of EMTAL Claim Claimants Pending | (c) Highest single Emtal Claim Defense Cost expenditure during period | (d) Lowest single EMTAL claim Defense Cost expenditure | (e) Arithmetic Average (mean) Defense Cost expenditure | (f) Median Defense Cost expenditure |
|---|---|---|---|---|---|---|
| 1979 | $ | | $ | $ | $ | $ |
| 1980 | | | | | | |
| 1981 | | | | | | |
| 1982 | | | | | | |
| 1983 | | | | | | |
| 1984 | | | | | | |
| 1985 | | | | | | |
| 1986 | | | | | | |
| 1987 | | | | | | |
| 1988 | | | | | | |

| 1989 | | | | | | |
| ---- | --- | --- | --- | --- | --- | --- |
| 1990 | | | | | | |
| 1991 | | | | | | |
| 1992 | | | | | | |
| 1993 | | | | | | |
| 1994 | | | | | | |
| 1995 | | | | | | |
| 1996 | | | | | | |
| 1997 | | | | | | |
| 1998 | | | | | | |
| 1999 | | | | | | |
| 2000 | | | | | | |
| 2001 | | | | | | |
| 2002 | | | | | | |
| 2003 | | | | | | |
| 2004 | | | | | | |
| 2005 | | | | | | |
| 2006 | | | | | | |
| 2007 | | | | | | |
| 2008 | | | | | | |
| 2009 | | | | | | |
| 2010 | | | | | | |
| 2011 | | | | | | |
| 2012 | | | | | | |
| 2013 | | | | | | |
| 2014 | | | | | | |
| 2015 | | | | | | |
| 2016 | | | | | | |
| 2017 | | | | | | |

**INTERROGATORY NO. 10:** For each year during the Time Period, and excluding the present *Williams* case, state the number of Emtal Claim Claimants' Emtal Claims that resolved or terminated at or during each of the following claim or litigation stages:

a. Prior to filing of suit or adjudicative claim.

b. At or upon filing of suit or adjudicative claim

c. Filing of Motion to dismiss complaint.

d. The close of the pleadings if no motion to dismiss filed or if filed was not granted in full as to Engelhard or BASF.

e. During discovery but prior to dispositive motions or pretrial conference.

f. Motion for Summary Judgment or similar dispositive motions

g. Pretrial proceedings

h. Trial

i. During Appeal

Please use the following matrix to supply this data:

| Year | a | b | c | d | e | f | g | h | i |
|------|---|---|---|---|---|---|---|---|---|
| 1979 |   |   |   |   |   |   |   |   |   |
| 1980 |   |   |   |   |   |   |   |   |   |
| 1981 |   |   |   |   |   |   |   |   |   |
| 1982 |   |   |   |   |   |   |   |   |   |
| 1983 |   |   |   |   |   |   |   |   |   |
| 1984 |   |   |   |   |   |   |   |   |   |
| 1985 |   |   |   |   |   |   |   |   |   |
| 1986 |   |   |   |   |   |   |   |   |   |
| 1987 |   |   |   |   |   |   |   |   |   |
| 1988 |   |   |   |   |   |   |   |   |   |
| 1989 |   |   |   |   |   |   |   |   |   |
| 1990 |   |   |   |   |   |   |   |   |   |
| 1991 |   |   |   |   |   |   |   |   |   |
| 1992 |   |   |   |   |   |   |   |   |   |
| 1993 |   |   |   |   |   |   |   |   |   |
| 1994 |   |   |   |   |   |   |   |   |   |
| 1995 |   |   |   |   |   |   |   |   |   |
| 1996 |   |   |   |   |   |   |   |   |   |
| 1997 |   |   |   |   |   |   |   |   |   |
| 1998 |   |   |   |   |   |   |   |   |   |
| 1999 |   |   |   |   |   |   |   |   |   |
| 2000 |   |   |   |   |   |   |   |   |   |
| 2001 |   |   |   |   |   |   |   |   |   |
| 2002 |   |   |   |   |   |   |   |   |   |
| 2003 |   |   |   |   |   |   |   |   |   |
| 2004 |   |   |   |   |   |   |   |   |   |
| 2005 |   |   |   |   |   |   |   |   |   |
| 2006 |   |   |   |   |   |   |   |   |   |

| | | | | | | | | |
|------|--|--|--|--|--|--|--|--|
| 2007 | | | | | | | | |
| 2008 | | | | | | | | |
| 2009 | | | | | | | | |
| 2010 | | | | | | | | |
| 2011 | | | | | | | | |
| 2012 | | | | | | | | |
| 2013 | | | | | | | | |
| 2014 | | | | | | | | |
| 2015 | | | | | | | | |
| 2016 | | | | | | | | |
| 2017 | | | | | | | | |

**INTERROGATORY NO. 11:** For each year during the Time Period please state the total amount of Claim Payments You or anyone on Your Behalf, including without limitation any insurance company, paid relating to Emtal Claims; (b) the number of EMTAL Claim Claimants whose Emtal Claims were terminated or resolved by the Claim Payments made during the year; (c) the highest Claim Payment amount paid during the year in relation to a single Emtal Claim Claimant; and (d) the lowest Claim Payment amount paid during the year in relation to a single Emtal Claim Claimant.

Please use the following matrix to supply this data:

| Year | (a)<br>Total Amount of Claim Payments Paid During Year | (b)<br>Number of EMTAL Claim Claimants Claim Payments resolved | (c)<br>Highest Claim Payment to a Single EMTAL Claim Claimant during period | (d)<br>Lowest Claim Payment to a Single EMTAL Claim Claimant during period |
|------|------|------|------|------|
| 1979 | $ | | $ | $ |
| 1980 | | | | |
| 1981 | | | | |
| 1982 | | | | |
| 1983 | | | | |

10

| 1984 | | | |
|------|--|--|--|
| 1985 | | | |
| 1986 | | | |
| 1987 | | | |
| 1988 | | | |
| 1989 | | | |
| 1990 | | | |
| 1991 | | | |
| 1992 | | | |
| 1993 | | | |
| 1994 | | | |
| 1995 | | | |
| 1996 | | | |
| 1997 | | | |
| 1998 | | | |
| 1999 | | | |
| 2000 | | | |
| 2001 | | | |
| 2002 | | | |
| 2003 | | | |
| 2004 | | | |
| 2005 | | | |
| 2006 | | | |
| 2007 | | | |
| 2008 | | | |
| 2009 | | | |
| 2010 | | | |
| 2011 | | | |
| 2012 | | | |
| 2013 | | | |
| 2014 | | | |
| 2015 | | | |
| 2016 | | | |
| 2017 | | | |

## C.    BASF's Objections and Meet and Confer Efforts

On April 16, 2018, BASF served timely responses and objections to plaintiffs'

third set of interrogatories.  *See* Ex. F (4/16/18 BASF Resps. & Objs.).  BASF

objected to all of plaintiffs' Third Interrogatories because plaintiffs "exceeded their

number of interrogatories allowable" under the Federal Rules and this Court's

11

October 17, 2016 Order.  *Id.* at 2.  BASF further objected because "responding to these interrogatories and their subparts would require an enormous investment of resources which is disproportionate to the issues in this case.  This is especially true where, as here, the plaintiffs have waited until the waning weeks of discovery to serve these interrogatories."  *Id.*

Plaintiffs on April 18, 2018 sent an email to BASF asking to meet and confer regarding BASF's interrogatory responses.  *See* Ex. G (4/18/18 R. Pratter Email to P. Farrell).  BASF responded the next day, April 19, and attempted to schedule a meet-and-confer the following day, April 20.  *See* Ex. H (4/19/18 P. Farrell Email to R. Pratter).  Plaintiffs took more than a week to respond and eventually offered to speak on April 29.  *See* Ex. I (4/27/18 R. Pratter Email to P. Farrell).  Because BASF was fully engaged preparing its experts for the Science Day hearing then scheduled for May 2, BASF offered to meet and confer with plaintiffs in person in Philadelphia either before or after the hearing.  Ex. J (4/27/18 P. Farrell Email to R. Pratter).  Plaintiffs declined this request.  *See* Ex. K (4/30/18 P. Farrell Email to H. Roth).

The parties finally met and conferred by telephone on May 8.  BASF reiterated what it had already produced in response to plaintiffs' prior document requests and interrogatories, including the Cahill database, tens of thousands of pages of documents that were identified using search terms plaintiffs themselves crafted, and documents produced by Engelhard's insurers.  BASF also explained that

Engelhard's defense costs are not relevant and unduly burdensome to calculate in the manner plaintiffs have requested.  BASF also noted that plaintiffs exceeded the number of interrogatories permitted.  On May 15, 2018, plaintiffs filed a motion to compel on only 3 of the 11 interrogatories in Set Three.  This opposition follows.

## ARGUMENT

Plaintiffs' motion to compel further responses to Interrogatories Nos. 9, 10, and 11 is improper and should be denied.  Those interrogatories far exceed the permissible 25-interrogatory limit; call for information, such as legal fees, that is not relevant or proportional to the case; and request other information that would be unduly burdensome for BASF to prepare, that plaintiffs could try to prepare on their own, and that plaintiffs had many opportunities to develop in discovery.  All of this also comes far too late in the discovery process.  It was plaintiffs' obligation to build a record under a permissible damages theory.  They cannot now foist that work upon BASF at the eleventh hour.

## I.    PLAINTIFFS' THIRD SET OF INTERROGATORIES EXCEEDS THE 25-INTERROGATORY LIMIT

Plaintiffs' motion to compel should be denied at the outset because plaintiffs have vastly exceeded the 25-interrogatory limit.  Under Federal Rule of Civil Procedure 33(a)(1), "a party may serve on any other party no more than 25 written interrogatories, *including all discrete subparts*."  (Emphasis added).  By the same token, it is also "well settled that the question whether an interrogatory contains more

than one 'discrete separate subject' does not turn on whether the interrogatory has separately enumerated subparts. The subparts can be explicit or implicit; the number of subparts does not turn on the formalism of labeling." *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 2371834, at *3 (D.N.J. Feb. 10, 2017) (quotations omitted). A sub-part or portion of an interrogatory is deemed a separate request when it is not "logically or factually subsumed within and necessarily related to the primary question." *Id.* (quotations omitted); *see also Pulchalski v. Franklin Cty.*, 2017 WL 57143, at *4 (M.D. Pa. Jan. 5, 2017) (finding party exceeded 25-interrogatory limit under this standard); *Knit With v. Knitting Fever, Inc.*, 2010 WL 11474937, at *1 (E.D. Pa. Jan. 22, 2010) (same).

The pretrial scheduling order in this case clarified that each party was permitted to serve 25 additional interrogatories from the time that order was entered, which occurred after plaintiffs and BASF had each served a first set of interrogatories. A review of plaintiffs' First and Second Set of Interrogatories demonstrates that they each easily exceed the 25-interrogatory limit. By BASF's count, and counting conservatively, plaintiffs' First Set of Interrogatories, although styled as 17 interrogatories, is in fact closer to 26 separate questions. And plaintiffs' Second Set of Interrogatories, although styled as 4 interrogatories, is in fact closer to 52 separate questions. For example, Interrogatory No. 1 in the Second Set, which

BASF quoted in full above, contains 15 unique subparts alone, which would have to be answered for every past Emtal talc settlement.

By any measure, plaintiffs had thus easily exceeded the applicable 25-interrogatory limit by the time they served their Third Set of Interrogatories. But that Third Set, if anything, contains even more true subparts. In fact, the three interrogatories at issue in this motion to compel themselves exceed the 25-interrogatory limit on their own. Interrogatory No. 9 contains six subparts, which must each be answered for every year between 1979 and 2017. This is hundreds of independent questions alone, and the same is true of Interrogatories Nos. 10 and 11.

Such questions requiring various discrete pieces of information for multiple years easily put plaintiffs over the interrogatory limit, as courts have recognized. *See Pulchalski*, 2017 WL 57143, at *4 ("We find that the interrogatories propounded by the plaintiff exceed the 25 interrogatory limit set by Rule 33(a)(1). In particular, we note that a number of these interrogatories are framed in multiple sub-parts asking a series of discrete inquiries about multiple events, spanning several years."); *Waterbury v. Scribner*, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) ("Plaintiff's requests for the separate years from 2004 through to the present are separate and distinct. Interrogatories 2, 3 and 4 will each be treated as five separate interrogatories, for a total of fifteen (15) interrogatories.").

During the meet-and-confer process, plaintiffs provided no basis for exceeding the 25-interrogatory limit. Instead, Mr. Coren for plaintiffs informed BASF that plaintiffs were entitled to additional interrogatories because the Court's appointment of a Special Discovery Master signified an expansion of available discovery (which is not the case). In their motion to compel, plaintiffs now make a completely different argument (and one they never made before) that, in fact, *each named plaintiff* is entitled to serve 25 interrogatories on BASF. Pls.' Br. 3-4.

That *post hoc* justification is not correct. When the parties were discussing the discovery limits with Judge Dickson, there was no suggestion that each named plaintiff would be able to serve 25 additional interrogatories on BASF. Ex. L (10/14/16 Hr'g Tr. 15:6-15). Nor would BASF have ever agreed to a world of lop-sided discovery in which plaintiffs could serve 150 interrogatories on BASF, in addition to those served before entry of the scheduling order. Confirming this is not what the parties or Court intended, plaintiffs have never proceeded as though each plaintiff had 25 separate interrogatories to serve. Plaintiffs served all three sets of interrogatories on behalf of "plaintiffs" collectively, not any one plaintiff individually. Ex. A (10/23/15 Pls.' Interrogs., Set 1); Ex. B (1/22/18 Pls.' Interrogs., Set 2); Ex. E (3/15/18 Pls.' Interrogs., Set 3). And even if each plaintiff had 25 interrogatories, each plaintiff has already exceeded that amount by joining in the service of the second set interrogatories, to say nothing of the third.

16

The sole case plaintiffs' cite, *Trevino v. ACB American, Inc.*, 232 F.R.D. 612 (N.D. Cal. 2006), does not support them.  There, the Court recognized that plaintiffs, like plaintiffs here, had in fact exceeded the interrogatory limit because some of their interrogatories contained multiple independent questions.  *Id.* at 614.  Counting those separate subparts as separate interrogatories, the plaintiffs had exceeded the limits by 7 interrogatories as to one defendant, and 12 as to another, which the Court permitted them to do.  *Id.*  That is a far cry from this case, where plaintiffs are seeking to serve dozens if not hundreds more interrogatories, following a multi-year course of dealing in which plaintiffs never suggested or acted as though they could serve any more than the 25 interrogatories the parties had agreed to before Judge Dickson. *See also Makaeff v. Trump Univ., LLC*, 2014 WL 3490356, at *6 (S.D. Cal. July 11, 2014) (explaining how given overall context of case, plaintiffs were not each allowed 50 interrogatories, contrary to language suggesting that in scheduling order).

## II.  INTERROGATORIES NOS. 9, 10, AND 11 CALL FOR INFORMATION THAT IS IRRELEVANT OR THAT PLAINTIFFS HAD AMPLE OPPORTUNITY TO DEVELOP

Even if plaintiffs could exceed the 25-interrogatory limit, Interrogatories Nos. 9, 10, and 11 would still be impermissible.  Under Rule 26, discovery must be "relevant" and "proportional to the needs of the case," considering factors such as "the importance of the issues at stake," "the importance of the discovery in resolving the issues," "the parties' relative access to relevant information," and "whether the

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The party seeking discovery bears the burden of establishing it is subject to production under Rule 26. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Becton, Dickinson & Co.*, 2018 WL 627378, at *4 (D.N.J. Jan. 30, 2018). Plaintiffs cannot meet that burden for Interrogatories 9 to 11. In this section, BASF will explain why the information requested is either irrelevant or information plaintiffs could have prepared on their own, to the extent it exists. In the following section, BASF will explain why these requests are unduly burdensome.

*Interrogatory No. 9*: Interrogatory No. 9 asks for extensive information about defense costs and fees paid to defend Emtal talc cases, from 1979 to 2017, including preparation of a grid requiring 234 independent calculations, such as "the arithmetic average (mean) total expenditure amount paid by You or on Your behalf in defending a single EMTAL Claim Claimant's" for each year in a 38-year period. Ex. E (3/15/18 Pls.' Interrogs., Set 3, No. 9). This includes the period 2009 to 2017, the more modern litigation that post-dates plaintiffs' counsel's raising their fraud allegations in New Jersey state court. Plaintiffs in their brief offer only a single line justifying the enormous amount of information requested in Interrogatory No. 9: "Interrogatory No. 9 would yield information on BASF's knowledge and motive, as well as data that will inform Plaintiffs' expert on damages." Pls.' Br. 9. Neither of these justifications passes muster.

Plaintiffs offer no explanation as to what "knowledge or motive" they are referring to, or how extensive information about legal fees would be relevant to this unidentified "knowledge and motive."  Nor do plaintiffs explain the basis for any request for information post-dating 2009, when plaintiffs' counsel "uncovered" the alleged fraud, 7/16/15 2nd Am. Compl. ¶ 7 (ECF No. 158), after which Kirkland & Ellis LLP and other new firms became involved in BASF's defense.  Plaintiffs have previously agreed that these later time periods were off limits for discovery purposes.  That this time period is part of plaintiffs' Third Set of Interrogatories underscores the overbreadth of the requests.  Regardless, plaintiffs have had ample opportunity through other means—other interrogatories, documents, depositions, and so on—to develop evidence going to "knowledge and motive," however defined.

Nor do plaintiffs explain how legal fees Engelhard and BASF paid in defending talc cases would be relevant to plaintiffs' own damages.  In the meet-and-confer process, plaintiffs claimed that amounts Engelhard and BASF paid to defend itself in talc cases would be relevant to a "disgorgement" theory.  The argument is nonsensical.  As the Third Circuit opinion indicates, plaintiffs may attempt to seek damages with reference to their underlying cases and how much they incurred to litigate them without the alleging missing evidence.  *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 321 (3d Cir. 2014) (citing *Rosenblit v. Zimmerman*, 766 A.2d 749, 758 (N.J. 2001), and *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1190

(N.J. 2008)).  Plaintiffs have either failed to develop this evidence in discovery, have refused to produce the information that would allow such calculations, or cannot get around the fact that in the underlying cases, other talc defendants whose products were known to contain asbestos participated in aggregate settlements and paid the same or similar amounts as did Engelhard.

While those difficulties may be the origins of plaintiffs' new "disgorgement" theory, that theory makes no sense in the context of this case.   "Generally, disgorgement is a form of [r]estitution measured by the defendant's wrongful gain. Disgorgement requires that the defendant give up those gains ... properly attributable to the defendant's interference with the claimant's legally protected rights." *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1640 (2017) (quotations omitted); *see also S.E.C. v. Teo*, 746 F.3d 90, 110 (3d Cir. 2014) (purpose of disgorgement is for "wrongdoers to disgorge their fraudulently obtained profits") (quotations omitted); *Kleinman v. Merck & Co.*, 8 A.3d 851, 863 (N.J. Super. Ct. Law Div. 2009) ("The intent of an unjust enrichment cause of action is to receive a 'disgorgement' of the profits retained by the defendant.").

Here, a disgorgement remedy has no conceptual relationship to the amounts Engelhard or BASF *paid* to outside counsel to litigate talc cases, and plaintiffs cite no authority suggesting one.   These legal fees are not "gains" or "profits" for Engelhard or BASF; they are, if anything, losses.  They likewise were not taken from

20

plaintiffs in any relevant sense, and therefore have no relationship to any damages plaintiffs could claim they sustained, making Interrogatory No. 9 irrelevant here. *See, e.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, 2011 WL 13199148, at *1 (M.D. Pa. Dec. 21, 2011) ("KC now raises another argument concerning damages, but fails to explain (or cite authority explaining) the measure of damages to which the requested information is allegedly relevant. KC's assertions of relevance are unsupported, and as such, they are not sufficient to convince us that the requested documents are relevant.").

***Interrogatories Nos. 10 and 11***:  Interrogatories Nos. 10 and 11 request extensive information about past asbestos cases, including the stage of the proceeding in which every case litigated between 1979 and 2017 concluded (Interrogatory 10) and settlement figures and other related data for every year from 1982 to 2017 (Interrogatory No. 11).  Plaintiffs attempt to justify these substantial and burdensome requests by arguing that they would "provide valuable information to Plaintiffs' expert in creating a damages model" and would be "pertinent to a number of issues such as numerosity and ascertainability."  Pls.' Br. 9-10.

These thin justifications are not sufficient, especially given the amount of information sought.  Vague and generic allegations of relevance do not satisfy plaintiffs' burden under Rule 26.  *See, e.g.*, *Avago Techs. U.S., Inc v. IPtronics Inc*, 309 F.R.D. 294, 298–99 (E.D. Pa. 2015); *Travillion v. Allegheny Cty. Bureau of*

*Corr.*, 2009 WL 1457720, at *1 (W.D. Pa. May 22, 2009); *Doe v. Methacton Sch. Dist.*, 164 F.R.D. 175, 176-77 (E.D. Pa. 1995). The requests again call for information from 2009 to 2017, which is improper and problematic for the reasons stated above. And for information prior to 2009, plaintiffs neglect to explain how such information would be relevant to damages or to ascertainability (neither Interrogatory No. 10 nor No. 11 requests the identity of any putative class members).

At bottom, if this is information plaintiffs wanted, they had ample opportunity to gather it during this litigation, both through the documents produced (responsive to plaintiffs' own search terms), the Cahill database, insurers, and so on. Much of the information in question is also in possession of counsel for putative class members. *See* Ex. D (3/7/18 BASF Resps. to Pls.' Interrogs., Set 2 at 3) (noting that "lawyers for past plaintiffs possess substantial information that is responsive to this interrogatory but have asserted objections and refused to produce responsive information, particularly as to members of the putative class"). What plaintiffs cannot do is force BASF to do the work of plaintiffs and their experts. *See, e.g.*, *Younes v. 7-Eleven, Inc.*, 2015 WL 12843883, at *3 (D.N.J. Aug. 19, 2015) (denying discovery because, *inter alia*, material sought was "unnecessarily cumulative" and "resource intensive").

## III.    INTERROGATORIES 9, 10, AND 11 ARE UNDULY BURDENSOME

Discovery requests may also "be denied if, after assessing the needs of the case … there exists a likelihood that the resulting benefits would be outweighed by the [consequent] burden or expenses imposed." *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012); *see also* Fed. R. Civ. P. 26(b)(1).  Even assuming plaintiffs could exceed the 25-interrogatory limit and their requests were deemed relevant, plaintiffs' motion to compel should be denied in light of the obvious burden that Interrogatories 9 to 11 would impose on BASF.

The breadth of these three interrogatories is remarkable and confirms the burden.  For a nearly 40-year period involving what plaintiffs allege are thousands of past asbestos cases in courts around the country, plaintiffs ask BASF to prepare extensive information and calculations about legal fees across decades (Interrogatory No. 9), the point in the litigation at which every past case resolved (Interrogatory No. 10), and settlement figures, including information relating to claims paid by insurers (Interrogatory No. 11).  All told, plaintiffs ask BASF to fill in 729 individual cells in three grid matrices, each requiring its own calculation.  It is difficult to imagine a more onerous set of interrogatories.

Plaintiffs argue "[i]t is simply inconceivable that BASF does not have the information responsive to Interrogatory Nos. 9, 10 and 11 readily available to it and its counsel who filed these objections."  Pls.' Br. 11.  But plaintiffs have no record

evidence to support these assertions and took no discovery that would support them. It is also not "simply inconceivable" that BASF would not have at the ready voluminous information about thousands of past cases, in the form plaintiffs desire, going back 40 years for litigation involving the long-discontinued talc operation of a company it acquired 12 years ago. Plaintiffs' contention that Interrogatories 9, 10, and 11 are not burdensome is based on speculation and ignores the obvious burdens associated with their request.

For avoidance of doubt, however, the information plaintiffs seek is, in fact, not readily accessible, to the extent it exists at all. Attached hereto is the declaration of Kevin Wood, the Manager of Catalyst Information Management at BASF. Ex M (Wood Decl.). Mr. Wood is "generally familiar with BASF's current and historical accounting and accounts payable systems used to record expenses and payments to outside vendors, including outside law firms." *Id.* ¶ 2. As Mr. Wood explains, with respect to legal fee spend and settlement information (Interrogatories 9 and 11),

> I am not aware of any reporting capability that would generate the information requested in the form that plaintiffs seek in an automated fashion for any portion of the time period covered by plaintiffs' requests. As a result, assembling the information that plaintiffs requested in the form that they seek it would require a manual review of historical documents, such as periodic invoices and associated correspondence regarding Emtal litigation and settlements from 1979 through 2017 for each law firm that BASF and Engelhard retained in each personal injury case related to Emtal talc.

24

*Id.* ¶ 4.

Specifically, legacy Engelhard legal spend and settlement amounts "are not maintained in current systems and, if they are maintained at all, they would be maintained in applications that are no longer supported commercially and reside on an offsite server from which information would need to be extracted and reviewed." *Id.* ¶ 5; *see also id.* ¶ 6 ("The versions of the applications provided by McCormack & Dodge and J.D. Edwards used by Engelhard are no longer supported commercially and would require specialized hardware and software to operate."). And while spending and settlement amounts after 2006 (post-acquisition) are maintained in online systems, those systems "do not maintain that information in the form that plaintiffs seek," and so "manual review of periodic invoices and related correspondence would still be necessary." *Id.* ¶ 7.

The information sought by Interrogatory No. 10—the number of claims resolved at nine specified points in litigation over nearly 40 years—is also not readily accessible and does not exist in the form plaintiffs request. BASF has already produced information responsive to plaintiffs' requests that could potentially be used to generate such information, such as the Cahill database. But this request would effectively ask BASF to do plaintiffs' work for them and laboriously examine records of past cases, including court records, to ascertain the point when the cases may have resolved. BASF does not believe this undertaking is even possible across

all past cases, or even a critical mass of them. But in all events, there is no basis for plaintiffs to ask BASF to do work that they could attempt to undertake themselves.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel further responses to Interrogatories 9, 10, and 11 in Plaintiffs' Third Set of Interrogatories should be denied.

Date: May 21, 2018                    Respectfully submitted,

                                      s/ Justin T. Quinn
Eugene F. Assaf, P.C. (*pro hac vice*)   Justin T. Quinn
Michael F. Williams                   Robinson Miller LLC
Daniel A. Bress (*pro hac vice*)         One Newark Center, 19th Floor
Peter A. Farrell (*pro hac vice*)        Newark, New Jersey 07102
KIRKLAND & ELLIS LLP                  Phone: (973) 690-5400
655 15th St., N.W.                    Facsimile: (973) 466-2760
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

Eugene F. Assaf, P.C. (*pro hac vice*)
Michael F. Williams
Daniel A. Bress (*pro hac vice*)
Peter A. Farrell (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
655 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Facsimile: (202) 879-5200

Justin T. Quinn
**ROBINSON MILLER LLC**
One Newark Center, 19th Floor
Newark, New Jersey 07102
Phone: (973) 690-5400
Facsimile: (973) 466-2761

*Counsel for Defendant BASF Catalysts LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **KIMBERLEE WILLIAMS, ET AL.,** | : | No. 2:11-cv-01754 (JLL) (JAD) |
|  | : |  |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : |  |
|  | : | **DECLARATION OF** |
| **BASF CATALYSTS LLC, ET AL.,** | : | **JUSTIN T. QUINN, ESQ.** |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
|  | : |  |

I, Justin T. Quinn, of full age, hereby declare as follows:

1.  I am an attorney at law and a partner with the law firm of Robinson Miller LLC in Newark, New Jersey.

2.  I am one of the counsel of record for Defendant BASF Catalysts LLC in this action.

3.  Attached hereto as **Exhibit A** is a true and correct copy of Plaintiffs' first set of Interrogatories to Defendant BASF Catalysts, LLC in this matter dated October 23, 2015.

4.  Attached hereto as **Exhibit B** is a true and correct copy of Plaintiffs' second set of Interrogatories and fourth set of Document Requests to Defendant BASF Catalysts, LLC in this matter dated January 22, 2018.

5.  Attached hereto as **Exhibit C** is a true and correct copy of BASF Catalysts' Answers to Plaintiffs' first set of Interrogatories in this matter dated December 23, 2016.

6.  Attached hereto as **Exhibit D** is a true and correct copy of BASF Catalysts' Answers to Plaintiffs' second set of Interrogatories in this matter dated March 7, 2018.

7.  Attached hereto as **Exhibit E** is a true and correct copy of Plaintiffs' third set of Interrogatories and fifth set of Document Requests to Defendant BASF Catalysts, LLC in this matter dated March 15, 2018.

8.    Attached hereto as **Exhibit F** is a true and correct copy of BASF Catalysts' Objections and Responses to Plaintiffs' third set of Interrogatories in this matter dated April 16, 2018.

9.    Attached hereto as **Exhibit G** is a true and correct copy of an email from Robert Pratter of Cohen, Placitella & Roth, P.C. to Peter Farrell and Eugene Assaf of Kirkland and Ellis LLP dated April 18, 2018, 2:10 PM.

10.    Attached hereto as **Exhibit H** is a true and correct copy of an email from Peter Farrell of Kirkland and Ellis LLP to Robert Pratter of Cohen, Placitella & Roth, P.C. and Eugene Assaf of Kirkland and Ellis LLP dated April 19, 2018, 4:08 PM.

11.    Attached hereto as **Exhibit I** is a true and correct copy of an email from Harry Roth of Cohen, Placitella & Roth, P.C. to Eugene Assaf and Peter Farrell of Kirkland and Ellis LLP dated April 27, 2018, 5:00 PM.

12.    Attached hereto as **Exhibit J** is a true and correct copy of an email from Peter Farrell of Kirkland and Ellis LLP to Harry Roth of Cohen, Placitella & Roth, P.C. dated April 27, 2018, 5:20 PM.

13.    Attached hereto as **Exhibit K** is a true and correct copy of an email from Peter Farrell of Kirkland and Ellis LLP to Harry Roth of Cohen, Placitella & Roth, P.C. dated April 30, 2018, 7:33 AM.

14.     Attached hereto as **Exhibit L** is a true and correct excerpt of the Transcript from a Status Conference before the Honorable Joseph A. Dickson, Unites States Magistrate Judge dated October 14, 2016.

15.     Attached hereto as **Exhibit M** is a true and correct copy of the Declaration of Kevin Wood dated May 21, 2018.

I declare under penalty of perjury that the above statements are true and correct to the best of my knowledge and belief.

s/ Justin T. Quinn
Justin T. Quinn

Dated: May 21, 2018

Case 2:11-cv-01754-BRM-AME   Document 600-9   Filed 06/25/18   Page 36 of 173 PageID:
Case 2:11-cv-01754-JLL-JAD   Document 329-2   Filed 09/21/15   Page 9 of 14 PageID: 24503
43131

# EXHIBIT A

**Cohen, Placitella & Roth, P.C.**
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**Fox Rothschild LLP**
Jeffrey M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, et al., | HONORABLE JOSE L. LINARES |
| Plaintiffs, | CIVIL ACTION NO. 11-1754 (JLL) (JAD) |
| vs. | **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT BASF CATALYSTS, LLC** |
| **BASF CATALYSTS, LLC**, et al., | |
| Defendants. | |

Plaintiffs propound the following interrogatories upon BASF Catalysts, LLC ("BASF") and requests that they be answered separately, fully and under oath within thirty (30) days of service pursuant to Fed. R. Civ. P. 33.

**DEFINITIONS**

1.     "You" and/or "your" means and refers to any and all corporate entities in the chain leading from Engelhard Corporation to BASF Catalysts, LLC, the wholly owned American subsidiary of the Germany-based international corporation, BASF SE.  These entities include, but

are not limited to, Engelhard Corporation, Engelhard Industries, Engelhard Minerals & Chemicals Corporation, Minerals & Chemicals Phillip Corporation, Eastern Magnesia Talc Company, Porocel Corporation and Pita Realty Limited. "You" and/or "your" also means and refers to any current and former officers, directors, employees, attorneys, agents and representatives, and any affiliated entities, of the above-mentioned companies, including but not limited to, any non-profit entities devoted in whole or in part to the development, design, production, manufacturing, marketing, advertising, distribution and sale of EMTAL talc. "BASF" shall also mean and refer to any division or subsidiary of the above-named entities.

2.     "Advertisement" shall mean and refer to any description or presentation of BASF intended to induce Consumers to buy, support, or approve of EMTAL, regardless of the format or the medium used. It includes brochures, product specifications publications, and Material Safety Data Sheets (MSDS).

3.     "Asbestos", "asbestos fibers", "asbestiform" and/or "fibers" shall mean and refer to all types or forms of asbestos, including, but not limited to chrysotile, actinolite, amosite, crocidolite, tremolite, and anthophyllite.

4.     "Cahill" shall mean and refer to Cahill, Gordon & Reindel, and its successor, Cahill Gordon & Reindel, LLP. "Cahill" shall also mean and refer to any current and former officers, directors, employees, attorneys, agents and representatives, and any affiliated entities, of Cahill, Gordon & Reindel, and its successor, Cahill Gordon & Reindel, LLP.

5.     "Communication" means any information sent or received, including, without limitation, any correspondence, memoranda, letters, notes, e-mails, transcripts of voicemail, transcripts of telephone conversations, transcripts of meetings, press releases, speeches, public statements, sound or video recordings, electronic media, and graphic representations.

2

6.    "Consumer" refers to any person to whom BASF has marketed to, advertised to, distributed to and/or sold to, excluding persons to whom EMTAL was marketed, advertised and/or sold solely for the purposes of resale.

7.    "Distributors" or "Retailers" refer to all persons or entities to which EMTAL has been marketed to, advertised to, distributed to and/or sold to for the purposes of resale to consumers.

8.    "Documents" means any tangible thing, writing, recording or reproduction in any manner, any visual or auditory data in your possession, custody or control, including without limitation, electronically stored information as defined by Rules 26 and 34, computer data bases, hard drives, storage tapes or disks, all email data (including attachments thereto), any digital version of any requested information, and any papers or other format on which words have been written, printed, typed, digitally embedded or otherwise affixed, correspondence, memoranda, transcripts, stenographic or handwritten notes, telegrams, telexes, facsimiles, letters, reports, budgets, forecasts, presentations, analyses, training or instructional handbooks or manuals, graphs or charts, ledgers, invoices, diaries or calendars, minute books, meeting minutes, computer print-outs, prospectuses, financial statements, checks, bank statements, annual, quarterly or other filings with any governmental agency or department, annual reports (including schedules thereto), statistical studies, articles appearing in publications, press releases, video or audio tapes, and shall mean originals or a copy where the original is not in your possession, custody or control, and every copy of every document where such copy is not an identical copy of an original (whether different from the original by reason of any notation made on such copy or for any other reason).

9.    Unless otherwise indicated, "EMTAL" or "product" as used herein shall mean and refer to all BASF talc products sold under the brand name "EMTAL".

10. Unless otherwise indicated, "EMTAL ore "or "talc ore" as used herein shall mean and refer to all talc ore mined and processed at the Johnson Mine in Johnson, Vermont.

11. "EMTAL Claim" shall mean and refer to any claim, notice of claim, lawsuit, administrative action, arbitration, demand or request for indemnification or contribution, which involves, arises from, or is related to alleged harmful exposure to EMTAL talc ore or finished product.

12. "Johnson Mine" shall mean and refer to the talc mine located in Johnson, Vermont owned and operated by BASF, from which EMTAL talc products were processed and manufactured.

13. "Test results" shall mean and refer to any and all measurement, investigation, analytical or assay findings of one or more items, persons, samples or environments, as well as documents relating to or embodying such findings. It also shall mean and include physical things relating to or concerning the findings such as photographs, micrographs, maps, diagrams, graphics, tables, and analytical apparatus or machine hardcopy output.

14. "*Westfall*" or the "*Westfall* case" shall mean and refer to the litigation captioned *Westfall v. Whittaker, Clark & Daniels, et al.*, C.A. No. 79-0269 (U.S. Dist. Ct. R.I.).

15. As used herein, the words "concerning," "pertaining to," "regarding," "reflecting," or "relating to" shall mean: alluding to, relating to, referring to, containing, connected with, discussing, describing, involving, incorporating, identifying, mentioning, constituting, supporting, corroborating, demonstrating, proving, evidencing, refuting, disputing, rebutting, controverting and/or contradicting.

16. Words in the singular include the plural, and vice versa, and the words "and" and "or" include "and/or." The past tense includes the present tense when the clear meaning is not

4

distorted by the change of tense.

## **INSTRUCTIONS**

1.      These interrogatories shall be deemed to be continuing, and You are required to supplement your answers based upon any information of which you become aware after you serve your initial responses to these interrogatories, in accordance with Fed. R. Civ. P. 26(e).

2.      To the extent any interrogatory is objected to, set forth all reasons therefore.  If you claim privilege as a ground for not answering any interrogatory in whole or in part, describe the factual basis for your claim of privilege in sufficient detail so as to permit the Court to adjudicate the validity of the claim.   If you object in part to any interrogatory, answer the remainder completely.

3.      In answering each interrogatory, state whether the information furnished is within the personal knowledge of the person answering and, if not, the name of each person to whom the information is a matter of personal knowledge.

4.      In answering each interrogatory, identify each person who assisted or participated in preparing or supplying any of the information in the answer to or relied on in preparing answers to that interrogatory.

5.      "Identify" shall mean that for each person identified in response to an interrogatory that asks to identify persons, state the following:

(a) whether the person is a current or former employee of BASF;

(b) the dates of each such person's employment with BASF;

(c) the employment position(s) held by the person during the relevant time period;

(d) the nature of any other relationship the person does or has maintained with BASF;

(e) the person's current or last known home and business addresses; and

(f) the person's current or last known home and business telephone numbers.

6.     If any information responsive to these interrogatories is withheld based upon a claim or privilege, state separately the specific interrogatory to which it is responsive, the privilege claimed, and the identity of the persons involved in such communication. If you claim attorney-work product, also identify the matter in connection with which the information it contains was obtained and/or prepared.

7.     If the answer to all or any part of the interrogatory is not presently known or available, include a statement to the effect, furnish the information now known or otherwise available, and respond to the entire interrogatory by supplemental answer, in writing and under oath, within ten (10) days from the time the entire answer becomes known or available, but in no event less than five (5) days prior to trial.

**INTERROGATORY NO. 1:**

Identify all documents in Your possession, custody, or control that identify, or can be used to identify, members or potential members of the proposed classes.

**RESPONSE:**

**INTERROGATORY NO. 2:**

Identify all insurance and excess policies covering the claims set forth against You in Plaintiffs' Second Amended Class Action Complaint, the limits of those policies, and whether any disclaimers or reservations of rights have been received by You regarding such claims.

**RESPONSE:**

6

**INTERROGATORY NO. 3:**

Identify all BASF personnel who worked on matters related to EMTAL Claims, including in your answer the time period(s) they worked on the claims, and their roles and responsibilities.

**RESPONSE:**

**INTERROGATORY NO. 4:**

State if, and when, each BASF personnel identified in Answer to Interrogatory #3 were aware of the following:

(a) The testimony of Dr. Hemstock, Mr. Triglia, and/or Mr. Gale given in the *Westfall* case;

(b) Any or all of the documents produced or developed in connection with the discovery in the *Westfall* case;

(c) The existence of documents showing the presence of asbestos or asbestos fibers in EMTAL talc finished products or talc ore samples taken from the Johnson Mine;

(d) Cahill Gordon's and/or local counsel's answers to discovery on BASF's behalf in EMTAL claim litigation matters.

**RESPONSE:**

**INTERROGATORY NO. 5:**

Identify all BASF personnel who worked on matters related to Your document retention policies, including in your answer the time period(s) that they worked on such matters and their roles and responsibilities.

**RESPONSE:**

**INTERROGATORY NO. 6:**

Identify and list in chronological order every EMTAL claimant and the date on which BASF was first on notice of the claimant's EMTAL Claim.

**RESPONSE:**


**INTERROGATORY NO. 7:**

Identify all Cahill personnel that BASF personnel interacted with in connection with:

(a) EMTAL Claims;

(b) Insurance coverage matters relating to EMTAL Claims;

(c) BASF document retention policies, including, but not limited to, the preservation, storage, location, disposition, destruction or determination of fate of documents and discovery related to the *Westfall* case;

(d) BASF financial and accounting matters.

(e) The preservation, storage, location, disposition, destruction or determination of fate of BASF's internal documents relating to EMTAL talc products or talc ore.

Include in your answer the time period(s) of the interaction and the description of the interaction.

**RESPONSE:**


**INTERROGATORY NO. 8:**

Identify all physical and electronic locations where You stored or maintained records and documents relating to EMTAL talc products or ore and/or EMTAL claims.

**RESPONSE:**

8

**INTERROGATORY NO. 9:**

Describe the process or procedure by which You answered and verified discovery in EMTAL Claims, including in your answer, the identity of all persons involved in that process or procedure and the sources of information relied upon.

**RESPONSE:**

**INTERROGATORY NO. 10:**

Identify all persons and participants involved in the involved in the development, drafting, revising, dissemination, and execution of the March 7, 1984 memorandum issued by Dr. Glenn Hemstock (attached as Ex. 3 to Plaintiffs' Second Amended Class Action Complaint).

**RESPONSE:**

**INTERROGATORY NO. 11:**

Identify all persons and participants involved in the involved in the development, drafting, revising, dissemination, and execution of the May 8, 1989 affidavit of Mr. William H. Ashton (attached as Ex. 4 to Plaintiffs' Second Amended Class Action Complaint).

**RESPONSE:**

**INTERROGATORY NO. 12:**

Identify all persons and participants involved in the researching, development, drafting, revising, dissemination, and execution of any affidavit verified by Mr. Charles D. Carter (such as those attached as Exhibits 6, 7, and 8 to Plaintiffs' Second Amended Class Action Complaint) submitted to claimants and/or their counsel in connection with EMTAL Claims.

**RESPONSE:**

**INTERROGATORY NO. 13:**

Identify all BASF personnel knowledgeable about, or involved in, the matter captioned as *Martin v. Uniroyal, Inc., et al.*, P.C. No. 01-3753 ("*Martin*") filed in the Superior Court of the State of Rhode Island.

**RESPONSE:**

**INTERROGATORY NO. 14:**

Identify all BASF personnel knowledgeable about the EMTAL talc product samples tested by the R.J. Lee Group in 1993.

**RESPONSE:**

**INTERROGATORY NO. 15:**

Was your Board of Directors ever given reports on EMTAL Claims? If so, state when your Board of Directors were advised, by whom, and the nature and substance of the information reported.

**RESPONSE:**

**INTERROGATORY NO. 16:**

State why You discharged Cahill as your attorneys.

**RESPONSE:**

**INTERROGATORY NO. 17:**

How much did You pay Cahill for its legal services throughout the tenure of Cahill's representation of BASF?

**RESPONSE:**

Dated: October 23, 2015      Respectfully Submitted,

        **COHEN, PLACITELLA & ROTH, P.C.**

        Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
        Michael Coren, Esq. (NJ Atty #: 024871979)
        Jared M. Placitella, Esq. (NJ Atty #: 068272013)
        127 Maple Avenue
        Red Bank, NJ 07701
        (732) 747-9003

**Fox Rothschild LLP**
Jeffrey M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, et al., | HONORABLE JOSE L. LINARES |
| Plaintiffs, | CIVIL ACTION NO. 11-1754 (JLL) (JAD) |
| vs. | **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT BASF CATALYSTS, LLC** |
| **BASF CATALYSTS, LLC**, et al., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, I served the foregoing PLAINTIFFS' FIRST

SET OF INTERROGATORIES TO DEFENDANT BASF CATALYSTS, LLC on the following

attorneys via Email:

Eugene F. Assaf, P.C.
Kirkland & Ellis, LLP
655 15th St., N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
eassaf@kirkland.com

Michael F. Williams, Esq.
Kirkland & Ellis, LLP
655 15th St., N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
mwilliams@kirkland.com

Stephen M. Orlofsky
Blank Rome LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540

Telephone: (609) 750-2646
Facsimile: (609) 750-7701
orlofsky@blankrome.com

David C. Kistler
Blank Rome LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 750-7701
kistler@blankrome.com

*Attorneys for Defendant, BASF Catalysts, LLC*

### COHEN, PLACITELLA & ROTH, P.C.

_____ /JMP

Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**Fox Rothschild LLP**
Jeffery M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

Case 2:11-cv-01754-BRM-AME   Document 600-9   Filed 06/25/18   Page 50 of 173 PageID:
43145
Case 2:11-cv-01754-JLL-JAD   Document 82-99   Filed 09/21/15   Page 9 of 15 PageID: 3517

# EXHIBIT B

**Cohen, Placitella & Roth, P.C.**
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**Fox Rothschild LLP**
Jeffrey M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, et al., | HONORABLE JOSE L. LINARES |
| Plaintiffs, | CIVIL ACTION NO. 11-1754 (JLL) (JAD) |
| vs. | **PLAINTIFFS' SECOND SET OF INTERROGATORIES AND FOURTH SET OF DOCUMENT REQUESTS ADDRESSED TO DEFENDANT BASF CATALYSTS, LLC** |
| **BASF CATALYSTS, LLC**, et al., | |
| Defendants. | |

Plaintiffs propound the following interrogatories and document requests upon BASF

Catalysts, LLC ("BASF") and requests that they be answered separately, fully and under oath

within thirty (30) days of service pursuant to Fed. R. Civ. P. 33.

**DEFINITIONS**

1.      "You" and/or "Your" means and refers to any and all corporate entities in the chain

leading from Engelhard Corporation to BASF Catalysts, LLC, the wholly owned American

subsidiary of the Germany-based international corporation, BASF SE. These entities include, but are not limited to, Engelhard Corporation, Engelhard Industries, Engelhard Minerals & Chemicals Corporation, Minerals & Chemicals Phillip Corporation, Eastern Magnesia Talc Company, Porocel Corporation and Pita Realty Limited. "You" and/or "your" also means and refers to any current and former officers, directors, employees, attorneys, agents and representatives, and any affiliated entities, of the above-mentioned companies, including but not limited to, any non-profit entities devoted in whole or in part to the development, design, production, manufacturing, marketing, advertising, distribution and sale of EMTAL talc. "BASF" shall also mean and refer to any division or subsidiary of the above-named entities.

2.      "Advertisement" shall mean and refer to any description or presentation of BASF intended to induce Consumers to buy, support, or approve of EMTAL, regardless of the format or the medium used. It includes brochures, product specifications publications, and Material Safety Data Sheets (MSDS).

3.      "Asbestos", "asbestos fibers", "asbestiform" and/or "fibers" shall mean and refer to all types or forms of asbestos, including, but not limited to chrysotile, actinolite, amosite, crocidolite, tremolite, and anthophyllite.

4.      "Cahill" shall mean and refer to Cahill, Gordon & Reindel, and its successor, Cahill Gordon & Reindel, LLP. "Cahill" shall also mean and refer to any current and former officers, directors, employees, attorneys, agents and representatives, and any affiliated entities, of Cahill, Gordon & Reindel, and its successor, Cahill Gordon & Reindel, LLP.

5.      "Communication" means any information sent or received, including, without limitation, any correspondence, memoranda, letters, notes, e-mails, transcripts of voicemail, transcripts of telephone conversations, transcripts of meetings, press releases, speeches, public

statements, sound or video recordings, electronic media, and graphic representations.

6. "Consumer" refers to any person to whom BASF has marketed to, advertised to, distributed to and/or sold to, excluding persons to whom EMTAL was marketed, advertised and/or sold solely for the purposes of resale.

7. "Distributors" or "Retailers" refer to all persons or entities to which EMTAL has been marketed to, advertised to, distributed to and/or sold to for the purposes of resale to consumers.

8. "Documents" means any tangible thing, writing, recording or reproduction in any manner, any visual or auditory data in your possession, custody or control, including without limitation, electronically stored information as defined by Rules 26 and 34, computer data bases, hard drives, storage tapes or disks, all email data (including attachments thereto), any digital version of any requested information, and any papers or other format on which words have been written, printed, typed, digitally embedded or otherwise affixed, correspondence, memoranda, transcripts, stenographic or handwritten notes, telegrams, telexes, facsimiles, letters, reports, budgets, forecasts, presentations, analyses, training or instructional handbooks or manuals, graphs or charts, ledgers, invoices, diaries or calendars, minute books, meeting minutes, computer print-outs, prospectuses, financial statements, checks, bank statements, annual, quarterly or other filings with any governmental agency or department, annual reports (including schedules thereto), statistical studies, articles appearing in publications, press releases, video or audio tapes, and shall mean originals or a copy where the original is not in your possession, custody or control, and every copy of every document where such copy is not an identical copy of an original (whether different from the original by reason of any notation made on such copy or for any other reason).

9. Unless otherwise indicated, "EMTAL" or "product" as used herein shall mean and

refer to all BASF talc products sold under the brand name "EMTAL".

10.     Unless otherwise indicated, "EMTAL ore "or "talc ore" as used herein shall mean and refer to all talc ore mined and processed at the Johnson Mine in Johnson, Vermont.

11.     "EMTAL Claim" shall mean and refer to any claim, notice of claim, lawsuit, administrative action, arbitration, demand or request for indemnification or contribution, which involves, arises from, or is related to alleged harmful exposure to EMTAL talc ore or finished product.

12.     "Johnson Mine" shall mean and refer to the talc mine located in Johnson, Vermont owned and operated by BASF, from which EMTAL talc products were processed and manufactured.

13.     "Test results" shall mean and refer to any and all measurement, investigation, analytical or assay findings of one or more items, persons, samples or environments, as well as documents relating to or embodying such findings. It also shall mean and include physical things relating to or concerning the findings such as photographs, micrographs, maps, diagrams, graphics, tables, and analytical apparatus or machine hardcopy output.

14.     "*Westfall*" or the "*Westfall* case" shall mean and refer to the litigation captioned *Westfall v. Whittaker, Clark & Daniels, et al.*, C.A. No. 79-0269 (U.S. Dist. Ct. R.I.).

15.     As used herein, the words "concerning," "pertaining to," "regarding," "reflecting," or "relating to" shall mean: alluding to, relating to, referring to, containing, connected with, discussing, describing, involving, incorporating, identifying, mentioning, constituting, supporting, corroborating, demonstrating, proving, evidencing, refuting, disputing, rebutting, controverting and/or contradicting.

16.     Words in the singular include the plural, and vice versa, and the words "and" and

4

"or" include "and/or." The past tense includes the present tense when the clear meaning is not distorted by the change of tense.

## **INSTRUCTIONS**

1.      These interrogatories shall be deemed to be continuing, and You are required to supplement your answers based upon any information of which you become aware after you serve your initial responses to these interrogatories, in accordance with Fed. R. Civ. P. 26(e).

2.      To the extent any interrogatory is objected to, set forth all reasons therefore. If you claim privilege as a ground for not answering any interrogatory in whole or in part, describe the factual basis for your claim of privilege in sufficient detail so as to permit the Court to adjudicate the validity of the claim. If you object in part to any interrogatory, answer the remainder completely.

3.      In answering each interrogatory, state whether the information furnished is within the personal knowledge of the person answering and, if not, the name of each person to whom the information is a matter of personal knowledge.

4.      In answering each interrogatory, identify each person who assisted or participated in preparing or supplying any of the information in the answer to or relied on in preparing answers to that interrogatory.

5.      "Identify" shall mean that for each person identified in response to an interrogatory that asks to identify persons, state the following:

(a) whether the person is a current or former employee of BASF;

(b) the dates of each such person's employment with BASF;

(c) the employment position(s) held by the person during the relevant time period;

(d) the nature of any other relationship the person does or has maintained with BASF;

5

(e) the person's current or last known home and business addresses; and

(f) the person's current or last known home and business telephone numbers.

6.      If any information responsive to these interrogatories is withheld based upon a claim or privilege, state separately the specific interrogatory to which it is responsive, the privilege claimed, and the identity of the persons involved in such communication. If you claim attorney-work product, also identify the matter in connection with which the information it contains was obtained and/or prepared.

7.      If the answer to all or any part of the interrogatory is not presently known or available, include a statement to the effect, furnish the information now known or otherwise available, and respond to the entire interrogatory by supplemental answer, in writing and under oath, within ten (10) days from the time the entire answer becomes known or available, but in no event less than five (5) days prior to trial.

## INTERROGATORY NO. 1:

Please identify all settlements You entered into between January 1, 1983 and December 31, 2009, inclusive, where the plaintiff or claimant (or his/her personal representative) claimed an injury due to alleged exposure to EMTAL talc. For each such settlement please include in your answer:

  a.   The asbestos related disease the plaintiff or claimant alleged he or she suffered from;

  b.   Whether You contested the diagnosis of the asbestos related disease alleged by the plaintiff or claimant;

c. The nature of the alleged exposure to EMTAL talc, including whether exposure allegedly occurred with EMTAL talc itself or as an ingredient of another product using EMTAL talc, such as Bondo;

d. The jurisdiction where the case was filed;

e. The amount of the settlement;

f. The name of the plaintiff or claimant's lawyer;

g. The amount paid by Your insurance carriers to settle the case;

h. The amount paid directly by You to settle the case;

i. The amount paid by or on behalf of You to Your attorneys prior to the dismissal of the plaintiff's claim;

j. Whether any attorney for You ever represented to the lawyer for the plaintiff or claimant that there was no asbestos in EMTAL talc, including the Attorney's name who made the representation;

k. Whether You ever represented to the lawyer for the plaintiff or claimant that there was no evidence of asbestos in EMTAL talc, including the name of the person who made the representation and his or her authority;

l. Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's affidavit and if so by whom and why;

m. Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed by Mr. Charles Carter as affiant, and if so by whom and why;

n. Whether You had in Your possession at the time of dismissal any evidence indicating EMTAL talc was sold to plaintiff or claimant's employer; and

o.  Whether the reason for the amount of the settlement was reported to the insurance carrier for You;

**RESPONSE:**

**INTERROGATORY NO. 2:**

Please identify all settlements by You entered into on or after January 1, 2010 where the plaintiff or claimant (or his/her personal representative) claimed an injury due to alleged exposure to EMTAL talc. For each such settlement please include in your answer:

a.  The asbestos related disease the plaintiff or claimant alleged he or she suffered from;

b.  Whether You contested the diagnosis of the asbestos related disease alleged by the plaintiff or claimant;

c.  The nature of the alleged exposure to EMTAL talc including whether exposure allegedly occurred with EMTAL talc itself or as an ingredient of another product using EMTAL talc, such as Bondo;

d.  The jurisdiction where the case was filed;

e.  The amount of the settlement;

f.  The name of the plaintiff or claimant's lawyer;

g.  The amount paid by Your insurance carriers to settle the case;

h.  The amount paid directly by You to settle the case;

i.  The amount paid by or on behalf of You to Your attorneys prior to the dismissal of the plaintiff's claim;

j.  Whether any attorney for You ever represented to the lawyer for the plaintiff or claimant that there was no asbestos in EMTAL talc, including the Attorney's name who made the representation;

k.  Whether You ever represented to the lawyer for the plaintiff there was no evidence of asbestos in EMTAL talc, including the name of the person who made the representation and his or her authority;

l.  Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's affidavit and if so by whom and why;

m.  Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed by Mr. Charles Carter as affiant, and if so by whom and why;

n.  Whether You had in Your possession at the time of dismissal any evidence indicating EMTAL talc was sold to the plaintiff or claimant's employer; and

o.  Whether the reason for the amount of the settlement was ever reported to the insurance carrier for You;

**RESPONSE:**

**INTERROGATORY NO. 3:**

      Please identify all cases against Engelhard or BASF where the plaintiff or claimant (or his/her personal representative) alleged exposure to EMTAL talc prior to 2010 that were dismissed without payment. For each such case please also specify:

    a.  The name of the plaintiff or claimant;

    b.  The asbestos related disease the plaintiff or claimant alleged he or she suffered from;

    c.  Whether You contested the diagnosis of the asbestos related disease alleged by the plaintiff or claimant, and if so how;

    d.  The nature of the alleged exposure to EMTAL talc including whether exposure allegedly occurred to EMTAL talc itself or as an ingredient of a product using EMTAL talc such as Bondo;

    e.  The jurisdiction where the case was filed;

    f.  The reason for the dismissal if known or documented;

    g.  The name of the plaintiff or claimant's lawyer;

    h.  The amount paid by or on behalf of You to Your attorneys prior to the dismissal of the plaintiff's claim;

    i.  Whether You ever represented to the lawyer for the plaintiff or claimant that there was no asbestos in EMTAL talc;

    j.  Whether any attorney for You ever represented to the lawyer for the plaintiff or claimant that there was no asbestos in EMTAL talc, including the Attorney's name who did;

    k.   Whether You ever represented to the lawyer for the plaintiff or claimant that there was no evidence of asbestos in EMTAL talc, including the Attorney's name who did;

    l.   Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's affidavit and if so by whom and why;

    m.  Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed by Mr. Charles Carter as affiant, and if so by whom and why;

    n.   Whether You had in Your possession at the time of dismissal any evidence indicating EMTAL talc was sold to the plaintiff or claimant's employer; and

    o.   Whether the reason for dismissal was ever reported to the insurance carrier for You;

**RESPONSE:**

**<u>INTERROGATORY NO. 4:</u>**

    List separately by year, starting with 1988 to the present, all law firms, including Cahill, and lawyers within those firms whom Engelhard and/or BASF retained to represent, defend or otherwise advise it with respect to the defense or other response to Emtal Claims asserted against You, and please include in Your response the amount of legal fees and costs paid each year to each such firm, the basis upon which such fees were computed (e.g. hourly rates, fixed fee per case or other basis), and the hourly rates and time expended by each lawyer or other person for whom you were billed. To the extent an insurer or a third party paid the fee in whole or in part, or reimbursed BASF in whole or in part, please identify who made such payment, how much was paid or

11

reimbursed, whether the payment was made under reservation or rights or any other reservation or condition.

**RESPONSE:**

### DOCUMENT REQUEST

1.     Please provide a copy of all documents relating to or containing any information requested in the above interrogatories, including their subparts.

Dated:  January 22, 2018         Respectfully Submitted,

**COHEN, PLACITELLA & ROTH, P.C.**

/s/ Christopher M. Placitella
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**Fox Rothschild LLP**
Jeffrey M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, et al., | HONORABLE JOSE L. LINARES |
| Plaintiffs, | CIVIL ACTION NO. 11-1754 (JLL) (JAD) |
| vs. | **PLAINTIFFS' SECOND SET OF INTERROGATORIES AND FOURTH SET OF DOCUMENT REQUESTS ADDRESSED TO DEFENDANT BASF CATALYSTS, LLC** |
| **BASF CATALYSTS, LLC**, et al., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, I served the foregoing on the following attorneys

via Email:

Eugene F. Assaf, P.C.
Peter Farrell, Esq.
Kirkland & Ellis, LLP
655 15th St., N.W.
Washington, D.C. 20005
eassaf@kirkland.com

Justin T. Quinn, Esq.
Robinson Miller LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
jquinn@rwmlegal.com

*Attorneys for Defendant, BASF Catalysts, LLC*

John K. Villa, Esq.
David Blatt, Esq.
Grant A. Geyerman, Esq.
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, D.C. 20005
jvilla@wc.com
ggeyerman@wc.com

Robert E. Ryan, Esq.
Jennifer C. Critchley, Esq.
Connell Foley, LLP
85 Livingston Avenue
Roseland, New Jersey 07068
rryan@connellfoley.com

*Attorneys for Cahill Defendants*

13

Kevin H. Marino, Esq.
John A. Boyle, Esq
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928
kmarino@khmarino.com
jboyle@khmarino.com

*Attorneys for Defendant Arthur Dornbusch*

Eric Tunis, Esq.
Herold Law, P.A.
25 Independence Boulevard
Warren, New Jersey 07059
etunis@heroldlaw.com

*Attorneys for Defendant Thomas Halket*


### COHEN, PLACITELLA & ROTH, P.C.


/s/ Michael Coren
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003


**Fox Rothschild LLP**
Jeffery M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **KIMBERLEE WILLIAMS**, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; **NANCY PEASE**, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; **MARILYN L. HOLLEY**, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; **DONNA WARE**, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; and **DONNETTE WENGERD**, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate, and as representative of others similarly situated, and **ROSANNE CHERNICK**, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, CAHILL GORDON & REINDEL**, a partnership including a professional corporation, **THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, GLENN HEMSTOCK, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, JOHN DOE BUSINESS ENTITIES 1 to 100**; **JOHN DOE BUSINESS ENTITIES 101 to 200**; **JOHN DOE LAWYERS 1 to 500**; and, **JOHN DOE 1 to 500**,<br><br>Defendants. | Civil Action No. 11-cv-1754 (JLL) (JAD)<br><br><br>CIVIL ACTION |

## ANSWERS OF BASF CATALYSTS LLC TO INTERROGATORIES PROPOUNDED BY THE PLAINTIFFS

Defendant BASF Catalysts LLC ("BASF"), through its counsel, Robinson Miller LLC and Kirkland & Ellis LLP, answers the Interrogatories propounded by the Plaintiffs as follows:

## PRELIMINARY STATEMENT

BASF's answers to Plaintiffs' interrogatories reflect information currently known and reasonably available to BASF. Many of the interrogatories seek information about events that took place over a span of decades related to a subsidiary of Engelhard Corporation that ceased operation in 1983, nearly twenty-five years before a BASF entity acquired Engelhard Corporation in 2006. BASF has used its best efforts and attempted in good faith to investigate and obtain the information required to answer Plaintiffs' interrogatories. The following answers are based upon that investigation and the information obtained. Although BASF has made a reasonable effort to answer these interrogatories to the best of its present knowledge, information, and belief, under the circumstances, BASF cannot exclude the potential that further information may reveal additional information, in which case BASF reserves the right to supplement its answer.

## ANSWER TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all documents in Your possession, custody, or control that identify, or can be used to identify, members or potential members of the proposed classes.

### RESPONSE TO INTERROGATORY NO. 1:

Subject to and without waiving its objections, BASF states that a variety of documents identify individuals who previously filed Emtal-related claims against Engelhard and BASF, including but not limited to pleadings from the prior litigation, discovery requests and responses from the prior litigation, correspondence from the prior litigation, and databases that Cahill Gordon prepared in connection with the prior litigation.

BASF objects that Interrogatory No. 1 is overly broad and unduly burdensome, as it asks BASF to identify "all documents" from an unlimited period of time that might be used to identify

unspecified individuals. BASF further objects that Interrogatory No. 1 seeks information not in the possession, custody, or control of BASF. BASF further objects that Interrogatory No. 1 seeks information that can be more readily obtained from other sources that are more convenient, including Plaintiffs' current or former counsel. BASF further objects to the extent it seeks information protected by the attorney-client privilege or work product doctrine. BASF further objects that any proposed class certification would be improper.

## INTERROGATORY NO. 2:

Identify all insurance and excess policies covering the claims set forth against You in Plaintiffs' Second Amended Class Action Complaint, the limits of those policies, and whether any disclaimers or reservations of rights have been received by You regarding such claims.

## RESPONSE TO INTERROGATORY NO. 2:

Subject to and without waiving its objections, BASF states that Engelhard's potentially applicable primary general liability insurance policies were issued by Royal Insurance Company, Royal Globe Insurance Company, Royal Insurance Company of America, Newark Insurance Company, and Commercial Union Insurance Company, with a combined bodily injury coverage limit of $13.4 million. The effective dates of these policies range from 1967-1986. However, the products bodily injury coverage limits for certain of these policies have been exhausted, thereby triggering certain excess layer insurance policies. BASF further states that each of the potentially applicable insurance policies includes certain exclusions. BASF will continue to review whether coverage is available.

BASF objects that Interrogatory No. 2 seeks information that is not relevant to the claims and defenses in this case and that it is overly broad and unduly burdensome, as (i) it is not limited to any relevant time period; and (ii) it seeks information spanning a period of several

decades. BASF objects to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

## INTERROGATORY NO. 3:

Identify all BASF personnel who worked on matters related to EMTAL Claims, including in your answer the time period(s) they worked on the claims, and their roles and responsibilities.

## INTERROGATORY RESPONSE NO. 3:

Subject to and without waiving its objections, BASF identifies the following individuals who were internal lawyers for Engelhard or BASF and whose work during certain periods of time related to personal-injury litigation based on alleged exposure to Emtal talc:

- Arthur Dornbusch (Vice President, General Counsel, & Secretary, Engelhard Corporation)

- Thomas Halket (Counsel, Engelhard Corporation)

- Lester Fliegel (counsel, Engelhard Corporation)

- John Peters (counsel, Engelhard Corporation)

- Michael Hassett (counsel, Engelhard Corporation)

- Jonathan Greenberg (counsel, Engelhard Corporation and BASF Corporation)

BASF objects that Interrogatory No. 3 is vague, ambiguous, overly broad, and unduly burdensome as (i) it is not limited to any relevant time period; (ii) it is not limited to matters that are relevant to the claims or defenses in this case; and (iii) it uses the phrase "worked on matters related to." BASF further objects that any proposed class certification would be improper.

## INTERROGATORY NO. 4:

State if, and when, each BASF personnel identified in Answer to Interrogatory #3 were aware of the following:

(a)   The testimony of Dr. Hemstock, Mr. Triglia, and/or Mr. Gale given in the *Westfall* case;

(b)   Any or all of the documents produced or developed in connection with the discovery in the *Westfall* case;

4

(c)     The existence of documents showing the presence of asbestos or asbestos fibers in EMTAL talc finished products or talc ore samples taken from the Johnson Mine;

(d)     Cahill Gordon's and/or local counsel's answers to discovery on BASF's behalf in EMTAL claim litigation matters.

## RESPONSE TO INTERROGATORY NO. 4:

Subject to and without waiving its objections, BASF states:

(a)     Arthur Dornbusch and Thomas Halket became aware of the testimony of Dr. Hemstock, Mr. Triglia, and/or Mr. Gale during the *Westfall* case. With respect to Michael Hassett, Lester Fliegel, Jonathan Greenberg, and John Peters, these individuals either were not aware of the testimony of Dr. Hemstock, Mr. Triglia, and/or Mr. Gale, or learned about the testimony in or after October 2009.

(b)     BASF objects that Interrogatory No. 4(b) is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as it is not limited to (i) any relevant time period, (ii) uses the phrase "developed in connection with," (iii) asks about "any or all" documents from a Rhode Island case from 30 years ago, and (iv) asks about documents regardless of their nature or the party who produced and/or produced or prepared them. BASF further objects to the extent Interrogatory No. 4(b) seeks information protected by the attorney-client privilege or work product doctrine.

(c)     By way of response, BASF refers to its Response to Interrogatory No. 4(a).

(d)     BASF objects that Interrogatory No. 4(d) is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense

of the proposed discovery outweighs its likely benefit, as it (i) asks about unspecified discovery responses over the span of decades, (ii) asks when multiple individuals may have been aware of those unidentified responses, regardless of when they were issued and when the person may have worked for Engelhard or BASF, and (iii) is not limited to any relevant time period. BASF further objects to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

BASF incorporates its objections to Interrogatory No. 3. BASF further objects that Plaintiffs' use of subparts and reference to individuals identified in Interrogatory No. 3 comprise separate and discrete interrogatories under Fed. R. Civ. P. 33(a)(1).

## INTERROGATORY NO. 5:

Identify all BASF personnel who worked on matters related to Your document retention policies, including in your answer the time period(s) that they worked on such matters and their roles and responsibilities.

## RESPONSE TO INTERROGATORY NO. 5:

Subject to and without waiving its objections, BASF states that in or around 1983 to 1984, Engelhard engaged Cahill to research and draft an appropriate document retention policy for Engelhard. Certain Engelhard employees were involved in that process, including:

- Arthur Dornbusch;

- Thomas Halket.

BASF objects that Interrogatory No. 5 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) it asks for identification of "all personnel" over the span of multiple decades; (iii) it asks about

unspecified document retention policies issued by multiple corporate entities; and (iv) uses the phrase "worked on matters related to."

## INTERROGATORY NO. 6:

Identify and list in chronological order every EMTAL claimant and the date on which BASF was first on notice of the claimant's EMTAL claim.

## RESPONSE TO INTERROGATORY NO. 6:

Subject to and without waiving its objections, BASF states that Plaintiffs' and/or their decedents filed their underlying actions on the following dates:

| Claimant | Date |
|---|---|
| Charles L. Williams | March 19, 1992 |
| William F. Clark | April 4, 1994 |
| Nancy Pease | June 21, 1995 |
| Kathryn Darnell | November 14, 2000 |
| Ralph Ware | May 29, 2002 |
| Jennifer Graham | April 9, 2008 |
| Steven Chernick | August 30, 2001 |

BASF further states that, subject to an appropriate order under Fed. R. Evid. 502(d), it will produce the litigation database that Cahill prepared while it was defending Emtal-related cases.

BASF objects that Interrogatory No. 6 is vague, ambiguous, overly broad, unduly burdensome, and that the burden or expense of the proposed discovery outweighs its likely benefit, as it asks BASF to list in chronological order every "claimant" over the course of multiple decades in multiple jurisdictions and asks BASF to determine when it or a corporate predecessor was on "notice" of each "claimant's" claim. BASF further objects that Interrogatory No. 6 seeks information not in the possession, custody, or control of BASF. BASF further objects that Interrogatory No. 6 seeks information that can be more readily obtained from other sources that are more convenient, including the former counsel for individuals who previously filed Emtal-related claims. BASF further objects that Interrogatory No. 6 requests publicly available information already in the possession, custody, or control of Plaintiffs, Plaintiffs' agents, and/or counsel. BASF further objects that class certification would be improper.

## INTERROGATORY NO. 7:

Identify all Cahill personnel that BASF personnel interacted with in connection with:

      (a)     EMTAL claims;

      (b)     Insurance coverage matters relating to EMTAL Claims;

      (c)     BASF document retention policies, including, but not limited to, the preservation, storage, location, disposition, destruction or determination of fate of documents and discovery related to the *Westfall* case;

      (d)     BASF financial and accounting matters;

      (e)     The preservation, storage, location, disposition, destruction or determination of fate of BASF's internal documents relating to EMTAL talc products or talc ore.

Include in your answer the time period(s) of the interaction and the description of the interaction.

## RESPONSE TO INTERROGATORY NO. 7:

Subject to and without waiving its objections, BASF states that multiple Cahill partners, associates, and other personnel interacted with BASF and its predecessor's employees over the course of decades on a variety of matters, including the following individuals:

- Howard G. Sloane;
- Ira Dembrow;
- Allen Joslyn;
- Thomas Kavaler;
- Immanuel Kohn;
- Eric Sarner;
- David Hyde;
- Leonard Spivak;
- Michael Sullivan.

BASF objects that Interrogatory No. 7's subparts comprise separate and discrete interrogatories under Fed. R. Civ. P. 33(a)(1).  BASF further objects that Interrogatory No. 7 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) seeks information about unspecified "financial and accounting matters," (iii) seeks information about "insurance coverage matters," (iv) uses vague terms like "determination of fate," (v) asks about unspecified document retention policies of multiple corporate entities, and (vi) references unspecified "BASF personnel."  BASF further objects that Interrogatory No. 7 seeks information not in the possession, custody, or control of BASF.  BASF further objects that Interrogatory No. 7 seeks information that can be more readily obtained from other sources that are more convenient.  BASF further objects to the extent that Interrogatory

9

No. 7 calls for information protected by the attorney-client privilege and/or the work product doctrine.  BASF objects that any proposed class certification would be improper.

## INTERROGATORY NO. 8:

Identify all physical and electronic locations where You stored or maintained records and documents relating to EMTAL talc products or ore and/or EMTAL claims.

## RESPONSE TO INTERROGATORY NO. 8:

Subject to and without waiving its objections, BASF states that documents concerning Emtal talc and litigation based on alleged Emtal talc exposure were stored in different locations, including off-site storage maintained by Cahill Gordon & Reindel, Engelhard facilities, and BASF off-site storage.

BASF objects that Interrogatory No. 8 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) it seeks information spanning a period of several decades, (iii) it asks BASF to identify "all locations" where documents were kept by multiple corporate entities and employees, and (iv) it asks about unspecified documents "relating to" products and "claims."

## INTERROGATORY NO. 9:

Describe the process or procedure by which You answered and verified discovery in EMTAL Claims, including in your answer, the identity of all persons involved in that process or procedure and the sources of information relied upon.

## RESPONSE TO INTERROGATORY NO. 9:

Subject to and without waiving its objections, BASF states that Cahill, as national counsel for Engelhard and later BASF in personal-injury litigation related to Emtal talc, was responsible from the 1980s until 2009 for managing discovery, for drafting responses to discovery requests, for providing information to local counsel that would form the basis for

Case 2:11-cv-01754-BRM-AME    Document 600-9    Filed 06/25/18    Page 76 of 173 PageID:
43171
Case 2:11-cv-01754-JLL-JAD    Document 529-4    Filed 05/30/18    Page 12 of 22 PageID: 9843

discovery responses, and for reviewing and approving responses to discovery requests drafted by local counsel.    In consultation with Cahill and based on Cahill's review of documents, the discovery requests, and other materials, Charles Carter and Craig Stoneback verified discovery responses prepared by Cahill at various points of time.    By way of further response, BASF refers to its response to Interrogatory No. 3.

BASF objects that Interrogatory No. 9 is vague, ambiguous, overly broad, unduly burdensome, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) it seeks information spanning a period of several decades; (iii) seeks information about unspecified "discovery" in dozens of cases in multiple jurisdictions over the course of decades; and (iv) asks about the process that multiple corporate entities, employees, and others may have undertaken to respond to unspecified "discovery."    BASF further objects to the extent that Interrogatory No. 9 asks for information that is protected by the attorney-client privilege and/or the work product doctrine. BASF further objects that any proposed class certification would be improper.

**INTERROGATORY NO. 10:**

Identify all persons and participants involved in the development, drafting, revising, dissemination, and execution of the March 7, 1984 memorandum issued by Dr. Glen Hemstock (attached as Ex. 3 to Plaintiffs' Second Amended Class Action Complaint).

**RESPONSE TO INTERROGATORY NO. 10:**

Subject to and without waiving its objections, BASF identifies: Glen Hemstock; Arthur Dornbusch; Thomas Halket; and attorneys from Cahill Gordon.

BASF objects that Interrogatory No. 10 is vague, ambiguous, overly broad, unduly burdensome, and the burden or expense of the proposed discovery outweighs its likely benefit, as it asks BASF to identify "all persons and participants" who were "involved in" any aspect of preparing, disseminating, or responding to a memorandum that was sent multiple decades ago by

11

employees of a corporate predecessor. BASF further objects to the extent that Interrogatory No. 10 calls for information in the possession of other parties.

## INTERROGATORY NO. 11:

Identify all persons and participants involved in the development, drafting, revising, dissemination, and execution of the May 8, 1989 affidavit of Mr. William H. Ashton (attached as Ex. 4 to Plaintiffs' Second Amended Class Action Complaint).

## RESPONSE TO INTERROGATORY NO. 11:

Subject to and without waiving its objections, BASF states that Cahill attorneys, including Peter Sloane and Ira Dembrow, drafted, revised, and worked with William Ashton to finalize and sign the May 8, 1989 affidavit of William H. Ashton. Attorneys for Johnson & Johnson also were involved. BASF further states that, in addition to various other materials that varied by case, Cahill attorneys disseminated Mr. Ashton's May 8, 1989 at various points in time while Cahill served as national counsel in Emtal-related personal-injury litigation from 1989 until the 2000s. In addition to various other materials that varied by case, local counsel acting at Cahill's direction also disseminated Mr. Ashton's affidavit at various points in time from 1989 until the 2000s.

BASF objects that Interrogatory No. 11 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweigh its likely benefit, as it asks BASF to identify "all persons and participants" who were "involved in" any aspect of preparing, signing, or disseminating an affidavit that was prepared multiple decades ago. BASF further objects that Interrogatory No. 11 calls for information in the possession of other parties.

## INTERROGATORY NO. 12:

Identify all persons and participants involved in the researching, development, drafting, revising, dissemination, and execution of any affidavit verified by Mr. Charles D. Carter (such as those

attached as Exhibits 6, 7, and 8 to Plaintiffs' Second Amended Class Action Complaint) submitted to claimants and/or their counsel in connection with EMTAL Claims.

## RESPONSE TO INTERROGATORY NO. 12:

Subject to and without waiving its objections, BASF states that Cahill attorneys, including Peter Sloane and Ira Dembrow, drafted, revised, and worked with Charles Carter to finalize and sign affidavits regarding Emtal talc and the Johnson talc mine. Arthur Dornbusch and Lester Fliegel were at times involved in facilitating Cahill's communications with Mr. Carter. BASF further states that, in addition to various other materials that varied by case, Cahill attorneys disseminated affidavits signed by Mr. Carter at various points in time while Cahill served as national counsel in Emtal-related personal-injury litigation from 1989 until the 2000s. In addition to various other materials that varied by case, local counsel acting at Cahill's direction may also have disseminated some or all of Mr. Carter's Emtal-related affidavits at various points in time from the late 1980s until the 2000s.

BASF objects that Interrogatory No. 12 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweigh its likely benefit, as it asks BASF to identify "all persons and participants" who were "involved in" any aspect of preparing, signing, or disseminating an affidavit that was prepared multiple decades ago. BASF further objects that Interrogatory No. 12 calls for information in the possession of other parties.

## INTERROGATORY NO. 13:

Identify all BASF personnel knowledgeable about, or involved in, the matter captioned as *Martin v. Uniroyal, Inc., et al.,* P.C. No. 01-3735 ("*Martin*") filed in the Superior Court of the State of Rhode Island.

## RESPONSE TO INTERROGATORY NO. 13:

Subject to and without waiving its objections, BASF states that Engelhard employees Arthur Dornbusch and Michael Hassett were aware of the *Martin* case and communicated with the Cahill attorneys who defended Engelhard in the *Martin* case.

BASF objects that Interrogatory No. 13 is vague, ambiguous, overly broad, unduly burdensome, and that the burden or expense of the proposed discovery outweighs its likely benefit as it asks BASF to identify "all personnel" who were "knowledgeable about" or were "involved in" a litigation matter that was filed and settled years ago by a corporate predecessor.

## INTERROGATORY NO. 14:

Identify all BASF personnel knowledgeable about the EMTAL talc product samples tested by the R.J. Lee Group in 1993.

## RESPONSE TO INTERROGATORY NO. 14:

Subject to and without waiving its objections, BASF states that it presently does not know which Engelhard employees, if any, were aware in 1993 of the testing that R.J. Lee Group conducted on Emtal talc samples.

BASF objects that Interrogatory No. 14 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as it asks BASF to identify "all personnel" who were "knowledgeable about" a test conducted by a third party several decades ago.

## INTERROGATORY NO. 15:

Was your Board of Directors ever given reports on EMTAL Claims? If so, state when your Board of Directors were advised, by whom, and the nature and substance of the information reported.

## RESPONSE TO INTERROGATORY NO. 15:

Subject to and without waiving its objections, BASF states that Engelhard's Board of Directors received general litigation updates from Cahill attorneys and/or from Arthur Dornbusch from time to time.

BASF objects that Interrogatory No. 15 is vague, ambiguous, overly broad, and unduly burdensome, as (i) it is not limited to any time period; (ii) asks about unspecified "reports," and (iii) asks about updates to the Board of Directors of multiple corporate entities over a period of decades. BASF further objects that Interrogatory No. 15 calls for information protected from disclosure by the attorney-client privilege and work-product doctrines.

## INTERROGATORY NO. 16:

State why You discharged Cahill as your attorneys.

## RESPONSE TO INTERROGATORY NO. 16:

BASF objects that Interrogatory No. 16 calls for information protected from disclosure by the attorney-client and work-product privileges.

## INTERROGATORY NO. 17:

How much did You pay Cahill for its legal services throughout the tenure of Cahill's representation of BASF?

## RESPONSE TO INTERROGATORY NO. 17:

BASF objects that Interrogatory No. 17 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit as it asks BASF to identify amounts that it or a corporate predecessor paid to Cahill during an unlimited period of time to handle unspecified legal matters, regardless of their subject or nature.

## GENERAL OBJECTIONS

1.      BASF objects that the definitions of "You," "Your," and "BASF" are overly broad, vague, ambiguous, and speculative by encompassing "affiliated entities."

2.      BASF objects that the definition of "asbestos," "asbestos fibers," "asbestiform," and "fibers" are overly broad, vague, ambiguous, uncertain, and speculative.  BASF further objects that certain interrogatories incorrectly suggest that all Emtal talc contained asbestos.

3.      BASF objects that the definition of "Cahill" is overly broad, vague, ambiguous, uncertain and speculative by encompassing "affiliated entities."

4.      BASF objects that the definition of "EMTAL Claim" is overly broad, vague, ambiguous, uncertain and speculative by encompassing alleged litigation beyond Plaintiffs' specific claims.

5.      BASF objects that Instruction No. 3 calls for corporate knowledge of any and all individuals employed by a corporate entity spanning a period of several decades.

6.      BASF objects that the definitions and instructions call upon BASF to: (a)  create documents not presently existing; (b) describe unsuccessful efforts to respond to particular interrogatories; (c) interpret, alter, modify, or change the meaning of any interrogatory from the plain meaning thereof; (d) respond in all ways to interrogatories susceptible of multiple interpretations; (e) respond to any aspect of an interrogatory not described with reasonable particularity; (f) locate or interview former employees or any other non-BASF employee; or (g) identify any custodian or records no longer known to BASF.

16

7.     BASF objects that the definitions and instructions impose upon BASF requirements exceeding those set forth in the Federal Rules of Civil Procedure.

8.     BASF objects that the interrogatories are overly broad and impose an unreasonably burden of inquiry.

9.     BASF objects that the interrogatories are vague, ambiguous, and not susceptible to a reasoned interpretation.

10.     BASF objects that the interrogatories seek information that the burden or expense of the proposed discovery outweighs its likely benefit.

11.     BASF objects that the interrogatories are redundant, not reasonably particular, not limited to a relevant period of time and the interrogatory seeks information spanning a period of several decades or that relates to decades-old information that has no bearing on Plaintiffs' claims.

12.     To the extent that any interrogatory inquires about "all," "each," "any," or "every," BASF objects that the interrogatory is overly broad and unduly burdensome, as it would be unreasonable to expect, even after a reasonably diligent search, that "all," "each," "any," or "every" individual, document, or thing falling within a description can or has been located.

13.     BASF objects that the interrogatories request information already in the possession, custody, or control of Plaintiffs, Plaintiffs' agents, and/or Plaintiffs' counsel.

14.     BASF objects that the interrogatories purport to impose a duty on it to undertake a search for documents and individuals beyond a diligent search of the files where it would reasonably expect to find documents responsive to these interrogatories.

15.     BASF objects that the interrogatories call for BASF to gather and summarize information contained in voluminous papers or papers that are a matter of public record.

16.     BASF objects that the interrogatories seek information equally available to Plaintiffs, previously produced to Plaintiffs, in the public record, or which may be readily obtainable by less burdensome or less invasive means.

17.     BASF objects that the interrogatories seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, and other privileges and immunities recognized by law.  BASF expressly states that any and all inadvertent disclosures of protected information is not a waiver of any privilege.

18.     BASF objects that the interrogatories seek confidential and private information about individuals who are not parties to this action, the disclosure of which would violate their right to privacy as established and protected by the federal and state Constitutions.

19.     BASF objects that the interrogatories seek proprietary business information, trade secrets, or other confidential business information.

20.     BASF objects that the number of interrogatories propounded by the Plaintiffs exceed the number allowed by the Federal Rule of Civil Procedure.

21.     BASF does not concede that any of its answers are or will be admissible evidence at trial.  BASF does not waive any objection, on any ground, whether or not asserted, at the time

18

of trial. Where BASF has answered any of the interrogatories without objection, BASF does not

agree to the relevancy, materiality, or admissibility of any information sought.

BASF expressly incorporates its General Objections into each of its answers above.

Case 2:11-cv-01754-BRM-AME Document 600-9 Filed 06/25/18 Page 85 of 173 PageID:
43180
Case 2:11-cv-01754-JLL-JAD Document 520-9 Filed 05/26/15 Page 21 of 22 PageID: 9385

**CERTIFICATION OF SERVICE**

I certify that on this day counsel for the following parties were served electronically with

Defendant BASF Catalysts LLC's Answers to Interrogatories Propounded by Plaintiffs:

Christopher M. Placitella, Esquire
Micheal Coren, Esquire
Cohen Placitella & Roth PC
127 Maple Avenue
Red Bank, NJ 07701
*Attorneys for Plaintiffs*

John K. Villa, Esquire
David S. Blatt, Esquire
Grant A. Geyerman, Esquire
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Robert E. Ryan, Esquire
Marc D. Haefner, Esquire
Craig Demareski, Esquire
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068
*Attorneys for Defendants Cahill Gordon & Reindel LLP,*
*Cahill Gordon & Reindel, Howard Sloane, and Ira J. Dembrow*

Eric Tunis, Esquire
Oliver Salvagno, Esquire
Greenbaum Rowe Smith & Davis LLP
99 Wood Avenue South
Iselin, NJ 08830
*Attorneys for Defendant Thomas D. Halket*

Kevin Marino, Esquire
John A. Boyle, Esquire
Marino, Tortorella & Boyle PC
437 Southern Blvd.
Chatham, NJ 07928
*Attorneys for Defendant Arthur A. Dornbusch II*

__s/ Justin T. Quinn_____
Justin Quinn

Dated: December 23, 2016

20

Case 2:11-cv-01754-JLL-JAD Document 529-9 Filed 05/20/15 Page 22 of 22 PageID: 9953

## VERIFICATION

I, Daniel Steinmetz, state under penalty of perjury that I have read the Answer of Defendant BASF Catalysts LLC to Plaintiffs' First Set of Interrogatories and am duly authorized to attest hereto on behalf of BASF Catalysts LLC that matters stated in the above and foregoing Responses are not solely within my personal knowledge, but there is no single officer of the company who has personal knowledge of all such matters; that the facts stated in said Responses have been assembled with the assistance of counsel for BASF Catalysts LLC; and that the facts set forth in said Responses are true and correct to the best of my knowledge, information, and belief.

Daniel Steinmetz
For BASF Catalysts LLC

Case 2:11-cv-01754-BRM-AME   Document 600-9   Filed 06/25/18   Page 87 of 173 PageID:
43182
Case 2:11-cv-01754-JLL-JAD   Document 329-40   Filed 09/26/16   Page 1 of 22 PageID: 34532

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**KIMBERLEE WILLIAMS**, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; **NANCY PEASE**, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; **MARILYN L. HOLLEY**, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; **DONNA WARE**, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; and **DONNETTE WENGERD**, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate, and as representative of others similarly situated, and **ROSANNE CHERNICK**, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated,

Plaintiffs,

v.

**BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, CAHILL GORDON & REINDEL**, a partnership including a professional corporation, **THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, GLENN HEMSTOCK, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, JOHN DOE BUSINESS ENTITIES 1 to 100; JOHN DOE BUSINESS ENTITIES 101 to 200; JOHN DOE LAWYERS 1 to 500**; and, **JOHN DOE 1 to 500**,

Defendants.

Civil Action No. 11-cv-1754 (JLL) (JAD)

CIVIL ACTION

## ANSWERS OF BASF CATALYSTS LLC TO INTERROGATORIES PROPOUNDED BY THE PLAINTIFFS

Defendant BASF Catalysts LLC ("BASF"), through its counsel, Robinson Miller LLC and Kirkland & Ellis LLP, answers the Interrogatories propounded by the Plaintiffs as follows:

## PRELIMINARY STATEMENT

BASF's answers to Plaintiffs' interrogatories reflect information currently known and reasonably available to BASF. Many of the interrogatories seek information about events that took place over a span of decades related to a subsidiary of Engelhard Corporation that ceased operation in 1983, nearly twenty-five years before a BASF entity acquired Engelhard Corporation in 2006. BASF has used its best efforts and attempted in good faith to investigate and obtain the information required to answer Plaintiffs' interrogatories. The following answers are based upon that investigation and the information obtained. Although BASF has made a reasonable effort to answer these interrogatories to the best of its present knowledge, information, and belief, under the circumstances, BASF cannot exclude the potential that further information may reveal additional information, in which case BASF reserves the right to supplement its answer.

## ANSWER TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all documents in Your possession, custody, or control that identify, or can be used to identify, members or potential members of the proposed classes.

### RESPONSE TO INTERROGATORY NO. 1:

Subject to and without waiving its objections, BASF states that a variety of documents identify individuals who previously filed Emtal-related claims against Engelhard and BASF, including but not limited to pleadings from the prior litigation, discovery requests and responses from the prior litigation, correspondence from the prior litigation, and databases that Cahill Gordon prepared in connection with the prior litigation.

BASF objects that Interrogatory No. 1 is overly broad and unduly burdensome, as it asks BASF to identify "all documents" from an unlimited period of time that might be used to identify

2

unspecified individuals. BASF further objects that Interrogatory No. 1 seeks information not in the possession, custody, or control of BASF. BASF further objects that Interrogatory No. 1 seeks information that can be more readily obtained from other sources that are more convenient, including Plaintiffs' current or former counsel. BASF further objects to the extent it seeks information protected by the attorney-client privilege or work product doctrine. BASF further objects that any proposed class certification would be improper.

## INTERROGATORY NO. 2:

Identify all insurance and excess policies covering the claims set forth against You in Plaintiffs' Second Amended Class Action Complaint, the limits of those policies, and whether any disclaimers or reservations of rights have been received by You regarding such claims.

## RESPONSE TO INTERROGATORY NO. 2:

Subject to and without waiving its objections, BASF states that Engelhard's potentially applicable primary general liability insurance policies were issued by Royal Insurance Company, Royal Globe Insurance Company, Royal Insurance Company of America, Newark Insurance Company, and Commercial Union Insurance Company, with a combined bodily injury coverage limit of $13.4 million. The effective dates of these policies range from 1967-1986. However, the products bodily injury coverage limits for certain of these policies have been exhausted, thereby triggering certain excess layer insurance policies. BASF further states that each of the potentially applicable insurance policies includes certain exclusions. BASF will continue to review whether coverage is available.

BASF objects that Interrogatory No. 2 seeks information that is not relevant to the claims and defenses in this case and that it is overly broad and unduly burdensome, as (i) it is not limited to any relevant time period; and (ii) it seeks information spanning a period of several

decades. BASF objects to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

## INTERROGATORY NO. 3:

Identify all BASF personnel who worked on matters related to EMTAL Claims, including in your answer the time period(s) they worked on the claims, and their roles and responsibilities.

## INTERROGATORY RESPONSE NO. 3:

Subject to and without waiving its objections, BASF identifies the following individuals who were internal lawyers for Engelhard or BASF and whose work during certain periods of time related to personal-injury litigation based on alleged exposure to Emtal talc:

- Arthur Dornbusch (Vice President, General Counsel, & Secretary, Engelhard Corporation)

- Thomas Halket (Counsel, Engelhard Corporation)

- Lester Fliegel (counsel, Engelhard Corporation)

- John Peters (counsel, Engelhard Corporation)

- Michael Hassett (counsel, Engelhard Corporation)

- Jonathan Greenberg (counsel, Engelhard Corporation and BASF Corporation)

BASF objects that Interrogatory No. 3 is vague, ambiguous, overly broad, and unduly burdensome as (i) it is not limited to any relevant time period; (ii) it is not limited to matters that are relevant to the claims or defenses in this case; and (iii) it uses the phrase "worked on matters related to." BASF further objects that any proposed class certification would be improper.

## INTERROGATORY NO. 4:

State if, and when, each BASF personnel identified in Answer to Interrogatory #3 were aware of the following:

(a)     The testimony of Dr. Hemstock, Mr. Triglia, and/or Mr. Gale given in the *Westfall* case;

(b)     Any or all of the documents produced or developed in connection with the discovery in the *Westfall* case;

4

(c)     The existence of documents showing the presence of asbestos or asbestos fibers in EMTAL talc finished products or talc ore samples taken from the Johnson Mine;

(d)     Cahill Gordon's and/or local counsel's answers to discovery on BASF's behalf in EMTAL claim litigation matters.

## RESPONSE TO INTERROGATORY NO. 4:

Subject to and without waiving its objections, BASF states:

(a)     Arthur Dornbusch and Thomas Halket became aware of the testimony of Dr. Hemstock, Mr. Triglia, and/or Mr. Gale during the *Westfall* case.   With respect to Michael Hassett, Lester Fliegel, Jonathan Greenberg, and John Peters, these individuals either were not aware of the testimony of Dr. Hemstock, Mr. Triglia, and/or Mr. Gale, or learned about the testimony in or after October 2009.

(b)     BASF objects that Interrogatory No. 4(b) is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as it is not limited to (i) any relevant time period, (ii) uses the phrase "developed in connection with," (iii) asks about "any or all" documents from a Rhode Island case from 30 years ago, and (iv) asks about documents regardless of their nature or the party who produced and/or produced or prepared them.   BASF further objects to the extent Interrogatory No. 4(b) seeks information protected by the attorney-client privilege or work product doctrine.

(c)     By way of response, BASF refers to its Response to Interrogatory No. 4(a).

(d)     BASF objects that Interrogatory No. 4(d) is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense

of the proposed discovery outweighs its likely benefit, as it (i) asks about unspecified discovery responses over the span of decades, (ii) asks when multiple individuals may have been aware of those unidentified responses, regardless of when they were issued and when the person may have worked for Engelhard or BASF, and (iii) is not limited to any relevant time period. BASF further objects to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

BASF incorporates its objections to Interrogatory No. 3. BASF further objects that Plaintiffs' use of subparts and reference to individuals identified in Interrogatory No. 3 comprise separate and discrete interrogatories under Fed. R. Civ. P. 33(a)(1).

## INTERROGATORY NO. 5:

Identify all BASF personnel who worked on matters related to Your document retention policies, including in your answer the time period(s) that they worked on such matters and their roles and responsibilities.

## RESPONSE TO INTERROGATORY NO. 5:

Subject to and without waiving its objections, BASF states that in or around 1983 to 1984, Engelhard engaged Cahill to research and draft an appropriate document retention policy for Engelhard. Certain Engelhard employees were involved in that process, including:

- Arthur Dornbusch;

- Thomas Halket.

BASF objects that Interrogatory No. 5 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) it asks for identification of "all personnel" over the span of multiple decades; (iii) it asks about

unspecified document retention policies issued by multiple corporate entities; and (iv) uses the phrase "worked on matters related to."

**INTERROGATORY NO. 6:**

Identify and list in chronological order every EMTAL claimant and the date on which BASF was first on notice of the claimant's EMTAL claim.

**RESPONSE TO INTERROGATORY NO. 6:**

Subject to and without waiving its objections, BASF states that Plaintiffs' and/or their decedents filed their underlying actions on the following dates:

| Claimant | Date |
|----------|------|
| Charles L. Williams | March 19, 1992 |
| William F. Clark | April 4, 1994 |
| Nancy Pease | June 21, 1995 |
| Kathryn Darnell | November 14, 2000 |
| Ralph Ware | May 29, 2002 |
| Jennifer Graham | April 9, 2008 |
| Steven Chernick | August 30, 2001 |

BASF further states that, subject to an appropriate order under Fed. R. Evid. 502(d), it will produce the litigation database that Cahill prepared while it was defending Emtal-related cases.

BASF objects that Interrogatory No. 6 is vague, ambiguous, overly broad, unduly burdensome, and that the burden or expense of the proposed discovery outweighs its likely benefit, as it asks BASF to list in chronological order every "claimant" over the course of multiple decades in multiple jurisdictions and asks BASF to determine when it or a corporate predecessor was on "notice" of each "claimant's" claim. BASF further objects that Interrogatory No. 6 seeks information not in the possession, custody, or control of BASF. BASF further objects that Interrogatory No. 6 seeks information that can be more readily obtained from other sources that are more convenient, including the former counsel for individuals who previously filed Emtal-related claims. BASF further objects that Interrogatory No. 6 requests publicly available information already in the possession, custody, or control of Plaintiffs, Plaintiffs' agents, and/or counsel. BASF further objects that class certification would be improper.

**INTERROGATORY NO. 7:**

Identify all Cahill personnel that BASF personnel interacted with in connection with:

     (a)     EMTAL claims;

     (b)     Insurance coverage matters relating to EMTAL Claims;

     (c)     BASF document retention policies, including, but not limited to, the preservation, storage, location, disposition, destruction or determination of fate of documents and discovery related to the *Westfall* case;

     (d)     BASF financial and accounting matters;

     (e)     The preservation, storage, location, disposition, destruction or determination of fate of BASF's internal documents relating to EMTAL talc products or talc ore.

Include in your answer the time period(s) of the interaction and the description of the interaction.

**RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving its objections, BASF states that multiple Cahill partners, associates, and other personnel interacted with BASF and its predecessor's employees over the course of decades on a variety of matters, including the following individuals:

- Howard G. Sloane;
- Ira Dembrow;
- Allen Joslyn;
- Thomas Kavaler;
- Immanuel Kohn;
- Eric Sarner;
- David Hyde;
- Leonard Spivak;
- Michael Sullivan.

BASF objects that Interrogatory No. 7's subparts comprise separate and discrete interrogatories under Fed. R. Civ. P. 33(a)(1). BASF further objects that Interrogatory No. 7 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) seeks information about unspecified "financial and accounting matters," (iii) seeks information about "insurance coverage matters," (iv) uses vague terms like "determination of fate," (v) asks about unspecified document retention policies of multiple corporate entities, and (vi) references unspecified "BASF personnel." BASF further objects that Interrogatory No. 7 seeks information not in the possession, custody, or control of BASF. BASF further objects that Interrogatory No. 7 seeks information that can be more readily obtained from other sources that are more convenient. BASF further objects to the extent that Interrogatory

No. 7 calls for information protected by the attorney-client privilege and/or the work product doctrine.  BASF objects that any proposed class certification would be improper.

## INTERROGATORY NO. 8:

Identify all physical and electronic locations where You stored or maintained records and documents relating to EMTAL talc products or ore and/or EMTAL claims.

## RESPONSE TO INTERROGATORY NO. 8:

Subject to and without waiving its objections, BASF states that documents concerning Emtal talc and litigation based on alleged Emtal talc exposure were stored in different locations, including off-site storage maintained by Cahill Gordon & Reindel, Engelhard facilities, and BASF off-site storage.

BASF objects that Interrogatory No. 8 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) it seeks information spanning a period of several decades, (iii) it asks BASF to identify "all locations" where documents were kept by multiple corporate entities and employees, and (iv) it asks about unspecified documents "relating to" products and "claims."

## INTERROGATORY NO. 9:

Describe the process or procedure by which You answered and verified discovery in EMTAL Claims, including in your answer, the identity of all persons involved in that process or procedure and the sources of information relied upon.

## RESPONSE TO INTERROGATORY NO. 9:

Subject to and without waiving its objections, BASF states that Cahill, as national counsel for Engelhard and later BASF in personal-injury litigation related to Emtal talc, was responsible from the 1980s until 2009 for managing discovery, for drafting responses to discovery requests, for providing information to local counsel that would form the basis for

discovery responses, and for reviewing and approving responses to discovery requests drafted by local counsel. In consultation with Cahill and based on Cahill's review of documents, the discovery requests, and other materials, Charles Carter and Craig Stoneback verified discovery responses prepared by Cahill at various points of time. By way of further response, BASF refers to its response to Interrogatory No. 3.

BASF objects that Interrogatory No. 9 is vague, ambiguous, overly broad, unduly burdensome, and that the burden or expense of the proposed discovery outweighs its likely benefit, as (i) it is not limited to any relevant time period; (ii) it seeks information spanning a period of several decades; (iii) seeks information about unspecified "discovery" in dozens of cases in multiple jurisdictions over the course of decades; and (iv) asks about the process that multiple corporate entities, employees, and others may have undertaken to respond to unspecified "discovery." BASF further objects to the extent that Interrogatory No. 9 asks for information that is protected by the attorney-client privilege and/or the work product doctrine. BASF further objects that any proposed class certification would be improper.

## INTERROGATORY NO. 10:

Identify all persons and participants involved in the development, drafting, revising, dissemination, and execution of the March 7, 1984 memorandum issued by Dr. Glen Hemstock (attached as Ex. 3 to Plaintiffs' Second Amended Class Action Complaint).

## RESPONSE TO INTERROGATORY NO. 10:

Subject to and without waiving its objections, BASF identifies: Glen Hemstock; Arthur Dornbusch; Thomas Halket; and attorneys from Cahill Gordon.

BASF objects that Interrogatory No. 10 is vague, ambiguous, overly broad, unduly burdensome, and the burden or expense of the proposed discovery outweighs its likely benefit, as it asks BASF to identify "all persons and participants" who were "involved in" any aspect of preparing, disseminating, or responding to a memorandum that was sent multiple decades ago by

11

employees of a corporate predecessor.  BASF further objects to the extent that Interrogatory No. 10 calls for information in the possession of other parties.

**INTERROGATORY NO. 11:**

Identify all persons and participants involved in the development, drafting, revising, dissemination, and execution of the May 8, 1989 affidavit of Mr. William H. Ashton (attached as Ex. 4 to Plaintiffs' Second Amended Class Action Complaint).

**RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving its objections, BASF states that Cahill attorneys, including Peter Sloane and Ira Dembrow, drafted, revised, and worked with William Ashton to finalize and sign the May 8, 1989 affidavit of William H. Ashton.  Attorneys for Johnson & Johnson also were involved.  BASF further states that, in addition to various other materials that varied by case, Cahill attorneys disseminated Mr. Ashton's May 8, 1989 at various points in time while Cahill served as national counsel in Emtal-related personal-injury litigation from 1989 until the 2000s.  In addition to various other materials that varied by case, local counsel acting at Cahill's direction also disseminated Mr. Ashton's affidavit at various points in time from 1989 until the 2000s.

BASF objects that Interrogatory No. 11 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweigh its likely benefit, as it asks BASF to identify "all persons and participants" who were "involved in" any aspect of preparing, signing, or disseminating an affidavit that was prepared multiple decades ago.  BASF further objects that Interrogatory No. 11 calls for information in the possession of other parties.

**INTERROGATORY NO. 12:**

Identify all persons and participants involved in the researching, development, drafting, revising, dissemination, and execution of any affidavit verified by Mr. Charles D. Carter (such as those

attached as Exhibits 6, 7, and 8 to Plaintiffs' Second Amended Class Action Complaint) submitted to claimants and/or their counsel in connection with EMTAL Claims.

## RESPONSE TO INTERROGATORY NO. 12:

Subject to and without waiving its objections, BASF states that Cahill attorneys, including Peter Sloane and Ira Dembrow, drafted, revised, and worked with Charles Carter to finalize and sign affidavits regarding Emtal talc and the Johnson talc mine. Arthur Dornbusch and Lester Fliegel were at times involved in facilitating Cahill's communications with Mr. Carter. BASF further states that, in addition to various other materials that varied by case, Cahill attorneys disseminated affidavits signed by Mr. Carter at various points in time while Cahill served as national counsel in Emtal-related personal-injury litigation from 1989 until the 2000s. In addition to various other materials that varied by case, local counsel acting at Cahill's direction may also have disseminated some or all of Mr. Carter's Emtal-related affidavits at various points in time from the late 1980s until the 2000s.

BASF objects that Interrogatory No. 12 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweigh its likely benefit, as it asks BASF to identify "all persons and participants" who were "involved in" any aspect of preparing, signing, or disseminating an affidavit that was prepared multiple decades ago. BASF further objects that Interrogatory No. 12 calls for information in the possession of other parties.

## INTERROGATORY NO. 13:

Identify all BASF personnel knowledgeable about, or involved in, the matter captioned as *Martin v. Uniroyal, Inc., et al.,* P.C. No. 01-3735 ("*Martin*") filed in the Superior Court of the State of Rhode Island.

## RESPONSE TO INTERROGATORY NO. 13:

Subject to and without waiving its objections, BASF states that Engelhard employees Arthur Dornbusch and Michael Hassett were aware of the *Martin* case and communicated with the Cahill attorneys who defended Engelhard in the *Martin* case.

BASF objects that Interrogatory No. 13 is vague, ambiguous, overly broad, unduly burdensome, and that the burden or expense of the proposed discovery outweighs its likely benefit as it asks BASF to identify "all personnel" who were "knowledgeable about" or were "involved in" a litigation matter that was filed and settled years ago by a corporate predecessor.

## INTERROGATORY NO. 14:

Identify all BASF personnel knowledgeable about the EMTAL talc product samples tested by the R.J. Lee Group in 1993.

## RESPONSE TO INTERROGATORY NO. 14:

Subject to and without waiving its objections, BASF states that it presently does not know which Engelhard employees, if any, were aware in 1993 of the testing that R.J. Lee Group conducted on Emtal talc samples.

BASF objects that Interrogatory No. 14 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit, as it asks BASF to identify "all personnel" who were "knowledgeable about" a test conducted by a third party several decades ago.

## INTERROGATORY NO. 15:

Was your Board of Directors ever given reports on EMTAL Claims? If so, state when your Board of Directors were advised, by whom, and the nature and substance of the information reported.

## RESPONSE TO INTERROGATORY NO. 15:

14

Subject to and without waiving its objections, BASF states that Engelhard's Board of Directors received general litigation updates from Cahill attorneys and/or from Arthur Dornbusch from time to time.

BASF objects that Interrogatory No. 15 is vague, ambiguous, overly broad, and unduly burdensome, as (i) it is not limited to any time period; (ii) asks about unspecified "reports," and (iii) asks about updates to the Board of Directors of multiple corporate entities over a period of decades. BASF further objects that Interrogatory No. 15 calls for information protected from disclosure by the attorney-client privilege and work-product doctrines.

## INTERROGATORY NO. 16:

State why You discharged Cahill as your attorneys.

## RESPONSE TO INTERROGATORY NO. 16:

BASF objects that Interrogatory No. 16 calls for information protected from disclosure by the attorney-client and work-product privileges.

## INTERROGATORY NO. 17:

How much did You pay Cahill for its legal services throughout the tenure of Cahill's representation of BASF?

## RESPONSE TO INTERROGATORY NO. 17:

BASF objects that Interrogatory No. 17 is vague, ambiguous, overly broad, unduly burdensome, seeks irrelevant information, and that the burden or expense of the proposed discovery outweighs its likely benefit as it asks BASF to identify amounts that it or a corporate predecessor paid to Cahill during an unlimited period of time to handle unspecified legal matters, regardless of their subject or nature.

## GENERAL OBJECTIONS

1.     BASF objects that the definitions of "You," "Your," and "BASF" are overly broad, vague, ambiguous, and speculative by encompassing "affiliated entities."

2.     BASF objects that the definition of "asbestos," "asbestos fibers," "asbestiform," and "fibers" are overly broad, vague, ambiguous, uncertain, and speculative.  BASF further objects that certain interrogatories incorrectly suggest that all Emtal talc contained asbestos.

3.     BASF objects that the definition of "Cahill" is overly broad, vague, ambiguous, uncertain and speculative by encompassing "affiliated entities."

4.     BASF objects that the definition of "EMTAL Claim" is overly broad, vague, ambiguous, uncertain and speculative by encompassing alleged litigation beyond Plaintiffs' specific claims.

5.     BASF objects that Instruction No. 3 calls for corporate knowledge of any and all individuals employed by a corporate entity spanning a period of several decades.

6.     BASF objects that the definitions and instructions call upon BASF to: (a)  create documents not presently existing; (b) describe unsuccessful efforts to respond to particular interrogatories; (c) interpret, alter, modify, or change the meaning of any interrogatory from the plain meaning thereof; (d) respond in all ways to interrogatories susceptible of multiple interpretations; (e) respond to any aspect of an interrogatory not described with reasonable particularity; (f) locate or interview former employees or any other non-BASF employee; or (g) identify any custodian or records no longer known to BASF.

7.     BASF objects that the definitions and instructions impose upon BASF requirements exceeding those set forth in the Federal Rules of Civil Procedure.

8.     BASF objects that the interrogatories are overly broad and impose an unreasonably burden of inquiry.

9.     BASF objects that the interrogatories are vague, ambiguous, and not susceptible to a reasoned interpretation.

10.     BASF objects that the interrogatories seek information that the burden or expense of the proposed discovery outweighs its likely benefit.

11.     BASF objects that the interrogatories are redundant, not reasonably particular, not limited to a relevant period of time and the interrogatory seeks information spanning a period of several decades or that relates to decades-old information that has no bearing on Plaintiffs' claims.

12.     To the extent that any interrogatory inquires about "all," "each," "any," or "every," BASF objects that the interrogatory is overly broad and unduly burdensome, as it would be unreasonable to expect, even after a reasonably diligent search, that "all," "each," "any," or "every" individual, document, or thing falling within a description can or has been located.

13.     BASF objects that the interrogatories request information already in the possession, custody, or control of Plaintiffs, Plaintiffs' agents, and/or Plaintiffs' counsel.

14.     BASF objects that the interrogatories purport to impose a duty on it to undertake a search for documents and individuals beyond a diligent search of the files where it would reasonably expect to find documents responsive to these interrogatories.

15.     BASF objects that the interrogatories call for BASF to gather and summarize information contained in voluminous papers or papers that are a matter of public record.

16.     BASF objects that the interrogatories seek information equally available to Plaintiffs, previously produced to Plaintiffs, in the public record, or which may be readily obtainable by less burdensome or less invasive means.

17.     BASF objects that the interrogatories seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, and other privileges and immunities recognized by law.  BASF expressly states that any and all inadvertent disclosures of protected information is not a waiver of any privilege.

18.     BASF objects that the interrogatories seek confidential and private information about individuals who are not parties to this action, the disclosure of which would violate their right to privacy as established and protected by the federal and state Constitutions.

19.     BASF objects that the interrogatories seek proprietary business information, trade secrets, or other confidential business information.

20.     BASF objects that the number of interrogatories propounded by the Plaintiffs exceed the number allowed by the Federal Rule of Civil Procedure.

21.     BASF does not concede that any of its answers are or will be admissible evidence at trial.  BASF does not waive any objection, on any ground, whether or not asserted, at the time

of trial.  Where BASF has answered any of the interrogatories without objection, BASF does not agree to the relevancy, materiality, or admissibility of any information sought.

BASF expressly incorporates its General Objections into each of its answers above.

## CERTIFICATION OF SERVICE

I certify that on this day counsel for the following parties were served electronically with Defendant BASF Catalysts LLC's Answers to Interrogatories Propounded by Plaintiffs:

Christopher M. Placitella, Esquire
Micheal Coren, Esquire
Cohen Placitella & Roth PC
127 Maple Avenue
Red Bank, NJ 07701
*Attorneys for Plaintiffs*

John K. Villa, Esquire
David S. Blatt, Esquire
Grant A. Geyerman, Esquire
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Robert E. Ryan, Esquire
Marc D. Haefner, Esquire
Craig Demareski, Esquire
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068
*Attorneys for Defendants Cahill Gordon & Reindel LLP,*
*Cahill Gordon & Reindel, Howard Sloane, and Ira J. Dembrow*

Eric Tunis, Esquire
Oliver Salvagno, Esquire
Greenbaum Rowe Smith & Davis LLP
99 Wood Avenue South
Iselin, NJ 08830
*Attorneys for Defendant Thomas D. Halket*

Kevin Marino, Esquire
John A. Boyle, Esquire
Marino, Tortorella & Boyle PC
437 Southern Blvd.
Chatham, NJ 07928
*Attorneys for Defendant Arthur A. Dornbusch II*

__s/ Justin T. Quinn_____
Justin Quinn

Dated: December 23, 2016

## VERIFICATION

I, Daniel Steinmetz, state under penalty of perjury that I have read the Answer of Defendant BASF Catalysts LLC to Plaintiffs' First Set of Interrogatories and am duly authorized to attest hereto on behalf of BASF Catalysts LLC that matters stated in the above and foregoing Responses are not solely within my personal knowledge, but there is no single officer of the company who has personal knowledge of all such matters; that the facts stated in said Responses have been assembled with the assistance of counsel for BASF Catalysts LLC; and that the facts set forth in said Responses are true and correct to the best of my knowledge, information, and belief.

Daniel Steinmetz
For BASF Catalysts LLC

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; **NANCY PEASE**, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; **MARILYN L. HOLLEY**, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; **DONNA WARE**, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; and **DONNETTE WENGERD**, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate, and as representative of others similarly situated, and **ROSANNE CHERNICK**, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated, | Civil Action No. 11-cv-1754 (JLL) (JAD) |
| Plaintiffs, | CIVIL ACTION |
| v. | |
| **BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, CAHILL GORDON & REINDEL**, a partnership including a professional corporation, **THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, GLENN HEMSTOCK, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, JOHN DOE BUSINESS ENTITIES 1 to 100; JOHN DOE BUSINESS ENTITIES 101 to 200; JOHN DOE LAWYERS 1 to 500**; and, **JOHN DOE 1 to 500**, | |
| Defendants. | |

## BASF CATALYSTS LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

Defendant BASF Catalysts LLC ("BASF"), through its counsel, Robinson Miller LLC and

Kirkland & Ellis LLP, answers the Interrogatories propounded by the Plaintiffs as follows:

1

# PRELIMINARY STATEMENT

BASF's answers to Plaintiffs' interrogatories reflect information currently known and reasonably available to BASF. Many of the interrogatories seek information about events that took place over a span of decades related to a subsidiary of Engelhard Corporation that ceased operation in 1983, nearly twenty-five years before a BASF entity acquired Engelhard Corporation in 2006. BASF has used its best efforts and attempted in good faith to investigate and obtain the information required to answer Plaintiffs' interrogatories. The following answers are based upon that investigation and the information obtained. Although BASF has made a reasonable effort to answer these interrogatories to the best of its present knowledge, information, and belief, under the circumstances, BASF cannot exclude the potential that further information may reveal additional information, in which case BASF reserves the right to supplement its answers.

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Please identify all settlements You entered into between January 1, 1983 and December 31, 2009, inclusive, where the plaintiff or claimant (or his/her personal representative) claimed an injury due to alleged exposure to EMTAL talc. For each such settlement please include in your answer:

    a. The asbestos related disease the plaintiff or claimant alleged he or she suffered from;

    b. Whether You contested the diagnosis of the asbestos related disease alleged by the plaintiff or claimant;

    c. The nature of the alleged exposure to EMTAL talc, including whether exposure allegedly occurred with EMTAL talc itself or as an ingredient of another product using EMTAL talc, such as Bondo;

    d. The jurisdiction where the case was filed;

    e. The amount of the settlement;

    f. The name of the plaintiff or claimant's lawyer;

    g. The amount paid by Your insurance carriers to settle the case;

    h. The amount paid directly by You to settle the case;

    i. The amount paid by or on behalf of You to Your attorneys prior to the dismissal of the plaintiffs claim;

    j. Whether any attorney for You ever represented to the lawyer for the plaintiff or

claimant that there was no asbestos in EMTAL talc, including the Attorney's name
who made the representation;

k. Whether You ever represented to the lawyer for the plaintiff or claimant that there
was no evidence of asbestos in EMTAL talc, including the name of the person who
made the representation and his or her authority;

l. Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's
affidavit and if so by whom and why;

m. Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed
by Mr. Charles Carter as affiant, and if so by whom and why;

n. Whether You had in Your possession at the time of dismissal any evidence
indicating EMTAL talc was sold to plaintiff or claimant's employer; and

o. Whether the reason for the amount of the settlement was reported to the insurance
carrier for You

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving its General and Specific Objections, pursuant to Federal

Rule of Civil Procedure 33(d), BASF refers plaintiffs to the database produced at

FRE_408_00000003 for information responsive to these interrogatories. BASF further refers

plaintiffs to the documents, databases, and other information in the possession, custody, or control

of the lawyers who represented plaintiffs in past litigation matters. Based on discovery to date,

lawyers for past plaintiffs possess substantial information that is responsive to this interrogatory

but have asserted objections and refused to produce responsive information, particularly as to

members of the putative class.

Further responding, BASF states that the plaintiffs in past cases claimed that the asbestos

or asbestos-containing products distributed or used by dozens of entities allegedly caused them to

develop a variety of asbestos-related conditions. The prevalence of the alleged injuries varied by

jurisdiction, by lawyer, by time, and based on other factors. A portion of the plaintiffs alleged they

developed lung cancer or mesothelioma due to asbestos or asbestos-containing products distributed

or used by dozens of different entities. Some other plaintiffs claimed that they developed pleural

effusions or varying levels of asbestosis. The vast majority of the plaintiffs alleged that they

developed pleural plaques or similar non-malignant conditions that were generally asymptomatic and not progressive.

Defendants, courts, and others contested and/or raised questions about many of the diagnoses and/or injuries claimed by past plaintiffs. For example, the United States District Court for the District of Kansas concluded in 1990 that "many, if not most, of the tire worker cases are in fact without merit." *Raymark Indus. v. Stemple*, No. 88-1014-K, 1990 WL 72588, at *63-64 (D. Kan. May 30, 1990). In addition, in 1991, Judge Carl B. Rubin of the United States District Court for the Southern District of Ohio published a paper concluding that the majority of tireworker plaintiffs did not have an asbestos-related condition. *The Use of Court Experts in Asbestos Litigation*, 137 F.R.D. 35, 39 (1991). The American Bar Association also reviewed many such claims and concluded that the majority of plaintiffs "did not have, and probably would never get an impairing asbestos-related disease" and would therefore settle their claims for minimal amounts that were "arguably a windfall." *Am. Bar Ass'n, Comm'n on Asbestos Litig*., Report to the House of Delegates, at 6, 10 (Feb. 2003). Plaintiffs and their lawyers did not properly disclose these issues. More information became available over time, as courts and others questioned the medical basis for thousands of claims. As a result, Engelhard and other defendants may or may not have contested each plaintiff's alleged diagnosis in any particular case, relying instead on other defenses.

The decision to settle cases involved "an individualized question, requiring case-by-case determinations." *See Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 309–10 (3d Cir. 2016). Because many plaintiffs did not have asbestos-related injuries or had weak claims overall, their settlements demands to Engelhard and other talc defendants often were low, ranging from a few hundred dollars to a few thousand dollars. As a result, from time to time, Engelhard and other defendants opted to settle cases instead of fully contesting the plaintiffs' diagnoses, claims of

product identification, and other aspects of the plaintiffs' burden of proof. Information about the amounts paid in settlement is available in the database produced at FRE_408_00000003, in documents produced by BASF (*see, e.g.*, 5/25/01 S. Martillotta Ltr. to T. Bevan, BASF_WILLIAMS000022010; 1/7/02 T. Bevan Ltr. to S. Martillotta, BASF_WILLIAMS000022006, 1/10/02 S. Martillotta Ltr. to T. Bevan, BASF_WILLIAMS000044069), and from the lawyers who represented plaintiffs in past cases. Overall, Engelhard and BASF paid more than $1.5 million in settlements to past plaintiffs. Most settlements were paid or reimbursed by Engelhard's insurers.

Many plaintiffs did not identify Emtal talc as a product they used or were exposed to and thus may not have resolved their claim through settlement. For example, when asked which brands of talc she used, plaintiff Wengerd's relative Jennifer Graham identified "Vanderbilt." (7/3/08 J. Graham Dep. at 35:18-25.) Similarly, documents produced by the Rothenberg Law Firm show that many plaintiffs did not identify Emtal talc as one of the products they used. (*See, e.g.*, A. Hawkins Client Questionnaire, P-ROTH-0000436, at 464, 468; P. Hlavac Client Questionnaire, P-ROTH-0001547, at 1575, 1579.) For plaintiffs who did claim exposure to Emtal talc, the nature of the claimed exposure varied by plaintiff, with some claiming direct exposure to raw talc, others claiming indirect exposure to raw talc, others claiming exposure to talc as an ingredient in other products, and so on. The dose, duration, frequency, and circumstances of exposure also varied. For some plaintiffs, Engelhard possessed evidence of Emtal sales to the plaintiff's employer. For other plaintiffs, Engelhard did not have evidence of Emtal sales to the plaintiff's employer. Because many plaintiffs did not identify Emtal talc or lacked evidence of product identification, many past cases against Engelhard or BASF were defended and/or dismissed based on the lack of product exposure.

In addition to the foregoing, Engelhard asserted a variety of other defenses in response to asbestos claims, including defenses based on the expert opinion of William Ashton. Engelhard's counsel sent Dr. Ashton's expert affidavit to the plaintiff's counsel in some but not all cases. For example, because some lawyers who represented plaintiffs continued to file dozens or hundreds of additional cases against Engelhard even after receiving Dr. Ashton's expert opinion, Engelhard's counsel may or may not have sent Dr. Ashton's expert affidavit to those lawyers again. Similarly, some past asbestos cases were resolved or dismissed based on the plaintiff's failure to comply with the statute of limitations, with court standing orders, and other reasons. *See, e.g.*, BASF_WILLIAMS000391400 (order in *Poth, et al. v. A.C.&S*, No. AC 92-09-351 (Summit Cnty., Ohio), granting Emtal's motion to dismiss wrongful death claim on statute of limitations grounds and motion to dismiss for failure to comply with court's Standing Order); BASF_WILLIAMS000391417 (order in *Johnson v. A. C. & S., Inc.*, No. AC 92-05-1855 (Summit Cnty., Ohio) granting Emtal's motion to dismiss three plaintiffs' claims for failure to comply with the court's Standing Order). In those circumstances, Dr. Ashton's opinions may not have been called for since the plaintiff's claims failed for other reasons. Because of the individualized nature and number of past cases, it would be unduly burdensome to try to identify on a case-by-case basis whether Dr. Ashton's expert affidavit was sent to a plaintiff's lawyer and which lawyer for Engelhard sent it.

Subpart m of Plaintiffs' Interrogatory No. 1 asks about "any affidavit signed by Mr. Charles Carter as affiant" but does not identify a particular affidavit or affidavits. In connection with Engelhard's defense of past cases, Mr. Carter signed multiple affidavits. Several affidavits addressed whether and to what extent Engelhard had evidence of Emtal sales to particular customers. (*See, e.g.*, 10/5/1988 Carter Aff. (BASF_WILLIAMS000215386); 12/14/1990 Carter

Aff. (BASF_WILLIAMS000226456).) Another affidavit addressed whether, at the time Mr. Carter signed the affidavit, Engelhard currently possessed testing data regarding Emtal talc. (*See* 8/18/1989 Carter Aff. (BASF_WILLIAMS000087087).) Other affidavits addressed whether Engelhard owned one or more than one talc mine, the location of the mine, and Engelhard's years of ownership. (*See, e.g.*, 9/20/1988 Carter Aff. (BASF_WILLIAMS000063589); 6/19/1989 Carter Aff. (BASF_WILLIAMS000063599).) Because of the individualized nature and number of past cases, it would be unduly burdensome to identify on a case-by-case basis in response to an interrogatory whether and which of Mr. Carter's other affidavits were sent to a plaintiff's lawyer and which lawyer for Engelhard sent it. Documents concerning these topics have been produced to plaintiffs, including documents identified using plaintiffs' search terms.

BASF objects to Plaintiffs' Interrogatory No. 1 on the grounds that it is overbroad, vague, and unduly burdensome. BASF further objects to Interrogatory No. 1 on the grounds that it seeks information already in the possession, custody, or control of plaintiffs or putative class members. BASF also objects to Interrogatory No. 1 on the grounds that it contains 15 subparts and exceeds the limit on interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1). BASF further objects to Interrogatory No. 1 to the extent it seeks information that is protected by the attorney-client privilege, work product doctrine, or other privileges and protections from discovery. Finally, BASF incorporates its Response to Interrogatory No. 4.

## INTERROGATORY NO. 2:

Please identify all settlements by You entered into on or after January 1, 2010 where the plaintiff or claimant (or his/her personal representative) claimed an injury due to alleged exposure to EMTAL talc. For each such settlement please include in your answer:

    a. The asbestos related disease the plaintiff or claimant alleged he or she suffered from;

    b. Whether You contested the diagnosis of the asbestos related disease alleged by the plaintiff or claimant;

    c. The nature of the alleged exposure to EMTAL talc including whether exposure

allegedly occurred with EMTAL talc itself or as an ingredient of another product using EMTAL talc, such as Bondo;

 d. The jurisdiction where the case was filed;

 e. The amount of the settlement;

 f. The name of the plaintiff or claimant's lawyer;

 g. The amount paid by Your insurance carriers to settle the case;

 h. The amount paid directly by You to settle the case;

 i. The amount paid by or on behalf of You to Your attorneys prior to the dismissal of the plaintiffs claim;

 j. Whether any attorney for You ever represented to the lawyer for the plaintiff or claimant that there was no asbestos in EMTAL talc, including the Attorney's name who made the representation;

 k. Whether You ever represented to the lawyer for the plaintiff there was no evidence of asbestos in EMTAL talc, including the name of the person who made the representation and his or her authority;

 l. Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's affidavit and if so by whom and why;

 m. Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed by Mr. Charles Carter as affiant, and if so by whom and why;

 n. Whether You had in Your possession at the time of dismissal any evidence indicating EMTAL talc was sold to the plaintiff or claimant's employer; and

 o. Whether the reason for the amount of the settlement was ever reported to the insurance carrier for You.

**RESPONSE:** BASF objects to Interrogatory No. 2 on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case. BASF also objects to Interrogatory No. 2 on the grounds that it contains 15 subparts and exceeds the limit on interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1). In addition, BASF objects to Interrogatory No. 2 on the grounds that it seeks confidential settlement information protected from disclosure in the absence of a showing of particularized need. *See, e.g.*, *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009) (party seeking discovery of settlement agreements "must make a heightened, more particularized showing of relevance"). BASF further objects to Interrogatory No. 2 on the grounds that it seeks irrelevant information about individuals who are not part of the putative class. Plaintiff's counsel has acknowledged that cases defended by BASF after January 1, 2010 were defended appropriately. Interrogatory No. 2 therefore seeks irrelevant information

because it is limited to only those settlements BASF "entered into on or after January 1, 2010."
BASF further objects to Interrogatory No. 2 to the extent it seeks information that is protected by
the attorney-client privilege, work product doctrine, or other privileges and protections from
discovery.

## INTERROGATORY NO. 3:

Please identify all cases against Engelhard or BASF where the plaintiff or claimant (or
his/her personal representative) alleged exposure to EMTAL talc prior to 2010 that were dismissed
without payment. For each such case please also specify:

a. The name of the plaintiff or claimant;
b. The asbestos related disease the plaintiff or claimant alleged he or she suffered from;
c. Whether You contested the diagnosis of the asbestos related disease alleged by the
   plaintiff or claimant, and if so how;
d. The nature of the alleged exposure to EMTAL talc including whether exposure
   allegedly occurred to EMTAL talc itself or as an ingredient of a product using
   EMTAL talc such as Bondo;
e. The jurisdiction where the case was filed;
f. The reason for the dismissal if known or documented;
g. The name of the plaintiff or claimant's lawyer;
h. The amount paid by or on behalf of You to Your attorneys prior to the dismissal of
   the plaintiffs claim;
i. Whether You ever represented to the lawyer for the plaintiff or claimant that there
   was no asbestos in EMTAL talc;
j. Whether any attorney For You ever represented to the lawyer for the plaintiff or
   claimant that there was no asbestos in EMTAL talc, including the Attorney's name
   who did;
k. Whether You ever represented to the lawyer for the plaintiff or claimant that there
   was no evidence of asbestos in EMTAL talc, including the Attorney's name who
   did;
l. Whether the plaintiff or claimant's lawyer was given a copy of Mr. Ashton's
   affidavit and if so by whom and why;
m. Whether the plaintiff or claimant's lawyer was given a copy of any affidavit signed
   by Mr. Charles Carter as affiant, and if so by whom and why;
n. Whether You had in Your possession at the time of dismissal any evidence
   indicating EMTAL talc was sold to the plaintiff or claimant's employer; and
o. Whether the reason for dismissal was ever reported to the insurance carrier for You;

## RESPONSE TO INTERROGATORY NO. 3:

Subject to and without waiving its General and Specific Objections, pursuant to Federal

Rule of Civil Procedure 33(d), BASF refers plaintiffs to the database produced at FRE_408_00000003 for information responsive to these interrogatories. BASF further refers plaintiffs to the documents, databases, and other information in the possession, custody, or control of the lawyers who represented plaintiffs in past litigation matters. Based on discovery to date, lawyers for past plaintiffs possess substantial information that is responsive to this interrogatory but have asserted objections and refused to produce responsive information, particularly as to members of the putative class.

Further responding, BASF states that the plaintiffs in past cases claimed that the asbestos or asbestos-containing products distributed or used by dozens of entities allegedly caused them to develop a variety of asbestos-related conditions. The prevalence of the alleged injuries varied by jurisdiction, by lawyer, by time, and based on other factors. A portion of the plaintiffs alleged they developed lung cancer or mesothelioma due to asbestos or asbestos-containing products distributed or used by dozens of different entities. Some other plaintiffs claimed that they developed pleural effusions or varying levels of asbestosis. The vast majority of the plaintiffs alleged that they developed pleural plaques or similar non-malignant conditions that were generally asymptomatic and not progressive.

Defendants, courts, and others contested and/or raised questions about many of the diagnoses and/or injuries claimed by past plaintiffs. For example, the United States District Court for the District of Kansas concluded in 1990 that "many, if not most, of the tire worker cases are in fact without merit." *Raymark Indus. v. Stemple*, No. 88-1014-K, 1990 WL 72588, at *63-64 (D. Kan. May 30, 1990). In addition, in 1991, Judge Carl B. Rubin of the United States District Court for the Southern District of Ohio published a paper concluding that the majority of tireworker plaintiffs did not have an asbestos-related condition. *The Use of Court Experts in Asbestos*

*Litigation*, 137 F.R.D. 35, 39 (1991). The American Bar Association also reviewed many such claims and concluded that the majority of plaintiffs "did not have, and probably would never get an impairing asbestos-related disease" and would therefore settle their claims for minimal amounts that were "arguably a windfall." *Am. Bar Ass'n, Comm'n on Asbestos Litig.*, Report to the House of Delegates, at 6, 10 (Feb. 2003). Plaintiffs and their lawyers did not properly disclose these issues. More information became available over time, as courts and others questioned the medical basis for thousands of claims. As a result, Engelhard and other defendants may or may not have contested each plaintiff's alleged diagnosis in any particular case, relying instead on other defenses.

The decision to resolve cases involved "an individualized question, requiring case-by-case determinations." *See Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 309–10 (3d Cir. 2016). Many plaintiffs did not identify Emtal talc as a product they used or were exposed to and thus chose to dismiss their claims. For example, when asked which brands of talc she used, plaintiff Wengerd's relative Jennifer Graham identified "Vanderbilt." (7/3/08 J. Graham Dep. at 35:18-25.) Similarly, documents produced by the Rothenberg Law Firm show that many plaintiffs did not identify Emtal talc as one of the products they used. (*See, e.g.*, A. Hawkins Client Questionnaire, P-ROTH-0000436, at 464, 468; P. Hlavac Client Questionnaire, P-ROTH-0001547, at 1575, 1579.) For plaintiffs who did claim exposure to Emtal talc, the nature of the claimed exposure varied by plaintiff, with some claiming direct exposure to raw talc, others claiming indirect exposure to raw talc, others claiming exposure to talc as an ingredient in other products, and so on. The dose, duration, frequency, and circumstances of exposure also varied. For some plaintiffs, Engelhard possessed evidence of Emtal sales to the plaintiff's employer. For other plaintiffs, Engelhard did not have evidence of Emtal sales to the plaintiff's employer. Because many plaintiffs did not identify Emtal talc or lacked evidence of product identification, many past

11

cases against Engelhard or BASF were defended and/or dismissed based on the lack of product exposure.

In addition to the foregoing, Engelhard asserted a variety of other defenses in response to asbestos claims, including defenses based on the expert opinion of William Ashton. Engelhard's counsel sent Dr. Ashton's expert affidavit to the plaintiff's counsel in some but not all cases. For example, because some lawyers who represented plaintiffs continued to file dozens or hundreds of additional cases against Engelhard even after receiving Dr. Ashton's expert opinion, Engelhard's counsel may or may not have sent Dr. Ashton's expert affidavit to those lawyers again. Similarly, some past asbestos cases were resolved or dismissed based on the plaintiff's failure to comply with the statute of limitations, with court standing orders, and other reasons. *See, e.g.*, BASF_WILLIAMS000391400 (order in *Poth, et al. v. A.C.&S*, No. AC 92-09-351 (Summit Cnty., Ohio), granting Emtal's motion to dismiss wrongful death claim on statute of limitations grounds and motion to dismiss for failure to comply with court's Standing Order); BASF_WILLIAMS000391417 (order in *Johnson v. A. C. & S., Inc.*, No. AC 92-05-1855 (Summit Cnty., Ohio) granting Emtal's motion to dismiss three plaintiffs' claims for failure to comply with the court's Standing Order). In those circumstances, Dr. Ashton's opinions may not have been called for since the plaintiff's claims failed for other reasons. Because of the individualized nature and number of past cases, it would be unduly burdensome to try to identify on a case-by-case basis whether Dr. Ashton's expert affidavit was sent to a plaintiff's lawyer and which lawyer for Engelhard sent it.

Subpart m of Plaintiffs' Interrogatory No. 3 asks about "any affidavit signed by Mr. Charles Carter as affiant" but does not identify a particular affidavit or affidavits. In connection with Engelhard's defense of past cases, Mr. Carter signed multiple affidavits. Several affidavits

addressed whether and to what extent Engelhard had evidence of Emtal sales to particular customers. (*See, e.g.*, 10/5/1988 Carter Aff. (BASF_WILLIAMS000215386); 12/14/1990 Carter Aff. (BASF_WILLIAMS000226456).) Another affidavit addressed whether, at the time Mr. Carter signed the affidavit, Engelhard currently possessed testing data regarding Emtal talc. (*See* 8/18/1989 Carter Aff. (BASF_WILLIAMS000087087).) Other affidavits addressed whether Engelhard owned one or more than one talc mine, the location of the mine, and Engelhard's years of ownership. (*See, e.g.*, 9/20/1988 Carter Aff. (BASF_WILLIAMS000063589); 6/19/1989 Carter Aff. (BASF_WILLIAMS000063599).) Because of the individualized nature and number of past cases, it would be unduly burdensome to try to identify on a case-by-case basis in response to an interrogatory whether and which of Mr. Carter's other affidavits were sent to a plaintiff's lawyer and which lawyer for Engelhard sent it. Documents concerning these topics have been produced to plaintiffs, including documents identified using plaintiffs' search terms.

BASF objects to Plaintiffs' Interrogatory No. 3 on the grounds that it is overbroad, vague, and unduly burdensome. BASF further objects to Interrogatory No. 3 on the grounds that it seeks information already in the possession, custody, or control of plaintiffs or putative class members. BASF also objects to Interrogatory No. 3 on the grounds that it contains 15 subparts and exceeds the limit on interrogatories set forth in Federal Rule of Civil Procedure 33(a)(1). BASF further objects to Interrogatory No. 3 to the extent it seeks information that is protected by the attorney-client privilege, work product doctrine, or other privileges and protections from discovery. Finally, BASF incorporates its Response to Interrogatory No. 4.

**<u>INTERROGATORY NO. 4 :</u>**

List separately by year, starting with 1988 to the present, all law firms, including Cahill, and lawyers within those firms whom Engelhard and/or BASF retained to represent, defend or otherwise advise it with respect to the defense or other response to Emtal Claims asserted against

You, and please include in Your response the amount of legal fees and costs paid each year to each such firm, the basis upon which such fees were computed (e.g. hourly rates, fixed fee per case or other basis), and the hourly rates and time expended by each lawyer or other person for whom you were billed. To the extent an insurer or a third party paid the fee in whole or in part, or reimbursed BASF in whole or in part, please identify who made such payment, how much was paid or reimbursed, whether the payment was made under reservation or rights or any other reservation or condition.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving its General and Specific Objections, BASF states that Cahill Gordon & Reindel LLP represented Engelhard and BASF with respect to the defense of Emtal Claims during the period from 1988 through much of 2009. Various lawyers at Cahill worked on the Emtal cases at varying times. Those lawyers included Ira Dembrow, Allen Joslyn, Scott Martin, Eric Sarner, Howard G. Sloane, and Leonard Spivak.

From time to time, and in varying cases and jurisdictions, numerous other law firms represented Engelhard and/or BASF with respect to the defense of Emtal claims during the period from 1988 through December 31, 2009. Those firms, which typically served as local counsel working with Cahill, included:

- Bennett Bricklin & Saltzburg LLC
- Blackwell Sanders Matheny Weary & Lombardi L.C.
- Boyle, Morrissey & Campo, P.C.
- Bradley Arant Boult Cummings LLP
- Buty & Curliano LLP
- Butzel Long
- Conroy Simberg & Ganon, P.A.
- Faruki Ireland Cox Rhinehart & Dusing PLL
- Forman, Watkins & Krutz LLP

- Harkins Cunningham LLP

- Hilburn, Calhoun, Harper, Pruniski & Calhoun, Ltd.

- Hinshaw & Culbertson LLP

- Kasiborski, Ronayne & Flaska PC

- Lasky, Haas, Cohler & Munter

- Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP

- Littleton Park Joyce Ughetta & Kelly LLP

- McCutchen, Black, Verleger & Shea (n/k/a Baker & Hostetler LLP)

- Montgomery, McCracken, Walker & Rhoads, LLP

- Ott & Purdy

- Paduano & Weintraub LLP

- Partridge, Snow & Hahn LLP

- Portnoy, Leader, Pidgeon & Roth, P.C.

- Roberts, Carroll, Feldstein & Peirce Inc.

- Ropes & Gray LLP

- Vetter & White

- Weston Hurd LLP

- Wise & Marsac (n/k/a Williams Mullen)

BASF objects to Interrogatory No. 4 on the grounds that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. BASF further objects to Interrogatory No. 4 on the grounds that it seeks irrelevant information, including but not limited to information about billing rates, fees paid, and information about law firms which represented BASF in connection with cases that are not part of the putative class. BASF further objects to

Interrogatory No. 4 on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of this case.

## DOCUMENT REQUEST

1.     Please provide a copy of all documents relating to or containing any information requested in the above interrogatories, including their subparts.

**RESPONSE:**  Subject to and without waiving the Specific and General Objections below, BASF answers that it has conducted an extensive and reasonable search, and to date has produced thousands of non-privileged documents responsive to this Request, including the database at FRE_408_00000003 and documents identified through the parties' agreed-upon search protocol. Together with these Responses and Objections, BASF is supplementing its production with additional documents located in the course of preparing its responses to these interrogatories. Under the circumstances, BASF cannot exclude the potential that further investigation may reveal additional information, in which case BASF reserves the right to supplement its production.

BASF objects to this request for the production of documents on the grounds that it is vague, overly broad, and unduly burdensome, including because it seeks "all documents" "relating to" or "containing" a wide array of information from a period of several decades.  BASF further objects to this request on the grounds that it seeks documents that are protected by the attorney-client privilege, work product doctrine, and other protections from disclosure.  BASF further objects on the grounds that this request seeks confidential settlement information protected from disclosure in the absence of a showing of particularized need.  *See, e.g.*, *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009) (party seeking discovery of settlement agreements "must make a heightened, more particularized showing of relevance").

# GENERAL OBJECTIONS

1.      BASF objects that the definitions of "You," "Your," and "BASF" are overly broad, vague, ambiguous, and speculative by encompassing "affiliated entities."

2.      BASF objects that the definition of "Cahill" is overly broad, vague, ambiguous, uncertain and speculative by encompassing "affiliated entities."

3.      BASF objects that the definition of "EMTAL Claim" is overly broad, vague, ambiguous, uncertain and speculative by encompassing alleged litigation beyond Plaintiffs' specific claims.

4.      BASF objects that the definitions and instructions call upon BASF to: (a) create documents not presently existing; (b) interpret, alter, modify, or change the meaning of any interrogatory from the plain meaning thereof; (c) respond in all ways to interrogatories susceptible of multiple interpretations; and (d) respond to any aspect of an interrogatory not described with reasonable particularity.

5.      BASF objects that the definitions and instructions impose upon BASF requirements exceeding those set forth in the Federal Rules of Civil Procedure.

6.      BASF objects that the interrogatories are overly broad and impose an unreasonably burden of inquiry.

7.      BASF objects that the interrogatories are vague, ambiguous, and not susceptible to a reasoned interpretation.

8.      BASF objects that the interrogatories seek information that the burden or expense of the proposed discovery outweighs its likely benefit.

9.      BASF objects that the interrogatories are redundant, not reasonably particular, not limited to a relevant period of time and the interrogatory seeks information spanning a period of

several decades or that relates to decades-old information that has no bearing on Plaintiffs' claims.

10.    To the extent that any interrogatory inquires about "all," "each," "any," or "every," BASF objects that the interrogatory is overly broad and unduly burdensome, as it would be unreasonable to expect, even after a reasonably diligent search, that "all," "each," "any," or "every" individual, document, or thing falling within a description can or has been located.

11.    BASF objects that the interrogatories request information already in the possession, custody, or control of Plaintiffs, Plaintiffs' agents, and/or Plaintiffs' counsel.

12.    BASF objects that the interrogatories purport to impose a duty on it to undertake a search for documents and individuals beyond a diligent search of the files where it would reasonably expect to find documents responsive to these interrogatories.

13.    BASF objects that the interrogatories call for BASF to gather and summarize information contained in voluminous papers or papers that are a matter of public record.

14.    BASF objects that the interrogatories seek information equally available to Plaintiffs, previously produced to Plaintiffs, in the public record, or which may be readily obtainable by less burdensome or less invasive means.

15.    BASF objects that the interrogatories seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, and other privileges and immunities recognized by law.  BASF expressly states that any and all inadvertent disclosures of protected information is not a waiver of any privilege.

16.    BASF objects that the interrogatories seek confidential and private information about individuals who are not parties to this action, the disclosure of which would violate their right to privacy as established and protected by the federal and state Constitutions.

17.    BASF objects that the interrogatories seek proprietary business information, trade

secrets, or other confidential business information.

18.    BASF objects that the number of interrogatories propounded by the Plaintiffs exceed the number allowed by Federal Rule of Civil Procedure 33(a)(1), which states that each party "may serve on any other party no more than 25 written interrogatories, including all discrete subparts."

19.    BASF does not concede that any of its answers are or will be admissible evidence at trial.  BASF does not waive any objection, on any ground, whether or not asserted, at the time of trial.  Where BASF has answered any of the interrogatories without objection, BASF does not agree to the relevancy, materiality, or admissibility of any information sought.

20.    BASF expressly incorporates its General Objections into each of its answers above.

**VERIFICATION**

I, Daniel Steinmetz, state under penalty of perjury that I have read the Answer of Defendant BASF Catalysts LLC to Plaintiffs' Second Set of Interrogatories and am duly authorized to attest hereto on behalf of BASF Catalysts LLC that matters stated in the above and foregoing Responses are not solely within my personal knowledge, but there is no single officer of the company who has personal knowledge of all such matters; that the facts stated in said Responses have been assembled with the assistance of counsel for BASF Catalysts LLC; and that the facts set forth in said Responses are true and correct to the best of my knowledge, information, and belief.

Daniel Steinmetz
For BASF Catalysts LLC

## CERTIFICATE OF SERVICE

I certify that, on this 7th day of March 2018, the following counsel were served electronically with BASF Catalysts LLC's Responses and Objections to Plaintiffs' Second Set of Interrogatories:

Christopher M. Placitella
Michael Coren
Jared Placitella
Cohen Placitella & Roth PC
127 Maple Avenue
Red Bank, NJ 07701
*Attorneys for Plaintiffs*

Nina M. Gussack
Barry H. Boise
Pepper Hamilton LLP
3000 Two Logan Square
Philadelphia, PA 19103

Angelo A. Stio, III
Pepper Hamilton LLP
301 Carnegie Center
Princeton, NJ 08543
*Attorneys for Defendants Cahill Gordon & Reindel LLP,*
*Cahill Gordon & Reindel, Howard Sloane, and Ira J. Dembrow*

Eric Tunis
Herold Law
25 Independence Blvd.
Warren, NJ 07059-6747
*Attorney for Defendant Thomas D. Halket*

Kevin Marino
John A. Boyle
Marino, Tortorella & Boyle PC
437 Southern Blvd.
Chatham, NJ 07928
*Attorneys for Defendant Arthur A. Dornbusch II*

March 7, 2018                                    */s/  Justin T. Quinn*
                                                        Justin T. Quinn

# EXHIBIT E

**Cohen, Placitella & Roth, P.C.**
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

**Fox Rothschild LLP**
Jeffrey M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **KIMBERLEE WILLIAMS**, et al., | HONORABLE JOSE L. LINARES |
| Plaintiffs, | CIVIL ACTION NO. 11-1754 (JLL) (JAD) |
| vs. | PLAINTIFFS' THIRD SET OF INTERROGATORIES AND FIFTH SET OF DOCUMENT REQUESTS ADDRESSED TO DEFENDANT BASF CATALYSTS, LLC, |
| **BASF CATALYSTS, LLC**, et al., |  |
| Defendants. |  |

Plaintiffs propound the following interrogatories and document requests upon BASF

Catalysts, LLC ("BASF") and requests that they be answered fully and under oath by defendant

within thirty (30) days of service pursuant to Fed. R. Civ. P. 33 and 34.

## DEFINITIONS

1.      "You" and/or "Your" means and refers to any and all corporate entities in the

leading from Engelhard Corporation to BASF Catalysts, LLC, the wholly owned American

subsidiary of the Germany-based international corporation, BASF SE. These entities include, but are not limited to, Engelhard Corporation, Engelhard Industries, Engelhard Minerals & Chemicals Corporation, Minerals & Chemicals Phillip Corporation, Eastern Magnesia Talc Company, Porocel Corporation and Pita Realty Limited. "You" and/or "your" also means and refers to any current and former officers, directors, employees, attorneys, agents and representatives, and any affiliated entities, of the above-mentioned companies, including but not limited to, any non-profit entities devoted in whole or in part to the development, design, production, manufacturing, marketing, advertising, distribution and sale of EMTAL talc. "BASF" shall also mean and refer to any division or subsidiary of the above-named entities.

2.        "Asbestos", "asbestos fibers", "asbestiform" and/or "fibers" shall mean and refer to all types or forms of asbestos, including, but not limited to chrysotile, actinolite, amosite, crocidolite, tremolite, and anthophyllite.

3.        "Cahill" shall mean and refer to Cahill, Gordon & Reindel, and its successor, Cahill Gordon & Reindel, LLP. "Cahill" shall also mean and refer to any current and former officers, directors, employees, attorneys, agents and representatives, and any affiliated entities, of Cahill, Gordon & Reindel, and its successor, Cahill Gordon & Reindel, LLP.

4.        "Communication" means any information sent or received, including, without limitation, any correspondence, memoranda, letters, notes, e-mails, transcripts of voicemail, transcripts of telephone conversations, transcripts of meetings, press releases, speeches, public statements, sound or video recordings, electronic media, and graphic representations.

5.        "Defense Costs" means and refers to any and all costs, expenses or expenditures incurred or paid in connection with or relating to defending against EMTAL Claims whether or not (a) paid or incurred directly by You or indirectly on Your behalf by any insurer or any Third

Party; and (b) whether or not You were reimbursed or indemnified by anyone for it. By way of illustration, and not limitation, Defense Costs include in-house legal staffing and overhead costs; outside national counsel legal fees, costs and expenses; local counsel legal fees, costs and expenses; outside specialty counsel fees, costs and expenses; claims administration expenses, loss adjustment expenses; service or material vendor charges; document or electronically stored information management charges; computer or data management charges; contract labor charges; medical record acquisition charges; expert consultant and witness fees and expenses; investigator costs, filings fees, transcript fees,

6. "Documents" means any tangible thing, writing, recording or reproduction in any manner, any visual or auditory data in your possession, custody or control, including without limitation, electronically stored information as defined by Rules 26 and 34, computer data bases, hard drives, storage tapes or disks, all email data (including attachments thereto), any digital version of any requested information, and any papers or other format on which words have been written, printed, typed, digitally embedded or otherwise affixed, correspondence, memoranda, transcripts, stenographic or handwritten notes, telegrams, telexes, facsimiles, letters, reports, budgets, forecasts, presentations, analyses, training or instructional handbooks or manuals, graphs or charts, ledgers, invoices, diaries or calendars, minute books, meeting minutes, computer print-outs, prospectuses, financial statements, checks, bank statements, annual, quarterly or other filings with any governmental agency or department, annual reports (including schedules thereto), statistical studies, articles appearing in publications, press releases, video or audio tapes, and shall mean originals or a copy where the original is not in your possession, custody or control, and every copy of every document where such copy is not an identical copy of an original (whether different from the original by reason of any notation made on such copy or for any other reason).

7.      Unless otherwise indicated, "EMTAL" or "product" as used herein shall mean and refer to all BASF talc products sold under the brand name "EMTAL".

8.      Unless otherwise indicated, "EMTAL ore "or "talc ore" as used herein shall mean and refer to all talc ore mined and processed at the Johnson Mine.

9.      "EMTAL Claim" shall mean and refer to any claim, notice of claim, lawsuit, administrative action, arbitration, demand or request for indemnification or contribution, which involves, arises from, or is related to alleged harmful exposure to EMTAL talc ore or finished product.

10.     "EMTAL Claim Claimant" as used herein is a data unit for counting personal injury tort and wrongful death claims and is comprised of the alleged physically injured party underlying an alleged EMTAL Claim and, if applicable to the EMTAL Claim asserted, the injured party's spouse and family members. For purposes of this counting rule it does not matter that the alleged injured party is one of a number of alleged physically injured parties joined as plaintiffs in a single suit under a particular docket or court number. As example, a wrongful death act case involving an exposed worker who is survived by a spouse and two dependent children are counted all together as a one (1) "Emtal Claim Claimant". If there are five such deceased injured parties and families joined in one suit, there are five (5) "Emtal Claim Claimants" counted.

11.      "Johnson Mine" shall mean and refer to the talc mine located in  or around Johnson, Vermont owned and operated by BASF, from which EMTAL talc products were processed and manufactured.

12.     "Claim Payment" shall mean any payment made by You or on Your behalf to, extinguish, resolve, satisfy, settle, discharge, compromise or terminate any liability, claim, demand, complaint, judgment, requirement order, or penalty relating to one or more EMTAL

4

Claims.

13.     "Time Period" is defined in Instruction ¶8 below.

14.      "*Westfall*" or the "*Westfall* case" shall mean and refer to the litigation captioned *Westfall v. Whittaker, Clark & Daniels, et al.*, C.A. No. 79-0269 (U.S. Dist. Ct. R.I.).

15.     As used herein, the words "concerning," "pertaining to," "regarding," "reflecting," or "relating to" shall mean: alluding to, relating to, referring to, containing, connected with, discussing, describing, involving, incorporating, identifying, mentioning, constituting, supporting, corroborating, demonstrating, proving, evidencing, refuting, disputing, rebutting, controverting and/or contradicting.

16.     Words in the singular include the plural, and vice versa, and the words "and" and "or" include "and/or." The past tense includes the present tense when the change of tense does not distort the clear meaning.

## **INSTRUCTIONS**

1.     These interrogatories shall be deemed to be continuing, and You are required to supplement your answers based upon any information of which you become aware after you serve your initial responses to these interrogatories, in accordance with Fed. R. Civ. P. 26(e).

2.     To the extent any interrogatory is objected to, set forth all reasons therefore. If you claim privilege as a ground for not answering any interrogatory in whole or in part, describe the factual basis for your claim of privilege in sufficient detail so as to permit the Court to adjudicate the validity of the claim. If you object in part to any interrogatory, answer the remainder completely.

3.     In answering each interrogatory, state whether the information furnished is within the personal knowledge of the person answering and, if not, the name of each person to whom the information is a matter of personal knowledge.

4.     In answering each interrogatory, identify each person who assisted or participated in preparing or supplying any of the information in the answer to or relied on in preparing answers to that interrogatory.

5.     "Identify" shall mean that for each person identified in response to an interrogatory that asks to identify persons, state the following:

(a) whether the person is a current or former employee of BASF;

(b) the dates of each such person's employment with BASF;

(c) the employment position(s) held by the person during the relevant time period;

(d) the nature of any other relationship the person does or has maintained with BASF;

(e) the person's current or last known home and business addresses; and

(f) the person's current or last known home and business telephone numbers.

6.     If any information responsive to these interrogatories is withheld based upon a claim or privilege, state separately the specific interrogatory to which it is responsive, the privilege claimed, and the identity of the persons involved in such communication. If you claim attorney-work product, also identify the matter in connection with which the information it contains was obtained and/or prepared.

7.     If the answer to all or any part of the interrogatory is not presently known or available, include a statement to the effect, furnish the information now known or otherwise available, and respond to the entire interrogatory by supplemental answer, in writing and under

oath, within ten (10) days from the time the entire answer becomes known or available, but in no event less than five (5) days prior to trial.

    8.    **Time Period.** These questions seek information in BASF's possession, custody and control from January 1, 1979 to present. However, if an EMTAL Claim predates January 1, 1979, then the earliest date of an Emtal Claim should be used as the beginning date in responding.

## **INTERROGATORIES**

**INTERROGATORY NO. 1**:  Identify every BASF or Engelhard department and each person in Your organization who has or who ever had a role in, or were assigned responsibility for, reviewing, approving, auditing, paying, budgeting, coordinating, controlling, managing, monitoring, or recovering reimbursement of Defense Costs that You or anyone on Your behalf, including without limitation any insurance companies, incurred or paid relating to EMTAL Claims.

**INTERROGATORY NO. 2:**  Were any policies, procedures or guidelines established, adopted or otherwise utilized by You or anyone acting on Your behalf to review, manage, pay, control or track Defense Costs that You or anyone on Your behalf, including without limitation any insurance   companies, incurred or paid relating to EMTAL Claims? If so please identify and describe each one and identify all documents relating to same.

**INTERROGATORY NO. 3:**  Were any accounting records, accounts, ledgers, internal controls or internal control procedures used or maintained to review, pay, manage, control or track Defense Costs You or anyone on Your behalf, including without limitation any insurance

companies, incurred or paid relating to EMTAL Claims? If so please identify and describe each one and identify all documents relating to same.

**INTERROGATORY NO. 4:** Did You maintain records, summaries or other numerical or statistical data with respect to the amount of Defense Costs and Claim Payments relating to EMTAL Claims either on a case, claim, aggregate or some other basis? If so, by whom were they maintained, how, when and for what purpose(s). Please include in your response the identity of all documents relating to such records along with the identity of the person who is the document's currently custodian.

.

**INTERROGATORY NO. 5:** Were any management reports, internal or external accounting reports, auditing or financial reports or budgets prepared with respect to or relating to EMTAL Claims? If so please identify each report, its author and recipients and its current custodian.

**INTERROGATORY NO. 6:** Were any management reports, internal or external accounting reports, auditing or financial reports or budgets prepared with respect to or relating to Defense Costs of Emtal Claims? If so please identify each report, its author and recipients and its current custodian.

**INTERROGATORY NO. 7:**  Were any management reports, internal or external accounting reports, auditing or financial reports, or budgets prepared with respect to or relating to Claim Payments on Emtal Claims? If so please identify each report, its author and recipients and its current custodian.

**INTERROGATORY NO. 8:**   Identify by specific type, element or category all Defense Costs You or anyone on Your behalf incurred or paid in defending Emtal Claims, including without limitation any insurance companies.

**INTERROGATORY NO. 9:** For each year during the Time Period, and excluding expenditures relating solely to the defense of the present *Williams*  case, state: (a) the total aggregate amount of Defense Costs You or anyone on Your Behalf, including without limitation any insurance company, paid to defend EMTAL Claims asserted against You during the year; (b) the total number of EMTAL Claim Claimants with actions pending against You during any portion of the year; (c) the highest total amount of Defense Costs paid by You or on Your behalf during the year in defending  a single EMTAL Claim Claimant's EMTAL Claim; (d)  the lowest total amount of Defense Costs paid by You or on Your behalf during the year in defending  a single EMTAL Claim Claimant's EMTAL Claim; (e) the  arithmetic

average (mean) total expenditure amount paid by You or on Your behalf in defending a single EMTAL Claim Claimant's EMTAL Claim during the year; and (f) the median expenditure paid by You or on Your behalf for defending a single EMTAL Claim Claimant's EMTAL Claims during the year

Please use the following matrix to supply this data:

Interrogatory No. 9 Table

| Year | (a)<br>Total Defense Expenditures | (b)<br>Number of EMTAL Claim Claimants Pending | (c)<br>Highest single EMTAL Claim Defense Cost expenditure during period | (d)<br>Lowest single EMTAL claim Defense Cost expenditure | (e)<br>Arithmetic Average (mean) Defense Cost expenditure | (F)<br>Median Defense Cost expenditure |
|------|------|------|------|------|------|------|
| 1979 | $ | | $ | $ | $ | $ |
| 1980 | | | | | | |
| 1981 | | | | | | |
| 1982 | | | | | | |
| 1983 | | | | | | |
| 1984 | | | | | | |
| 1985 | | | | | | |
| 1986 | | | | | | |
| 1987 | | | | | | |
| 1988 | | | | | | |
| 1989 | | | | | | |
| 1990 | | | | | | |
| 1991 | | | | | | |
| 1992 | | | | | | |
| 1993 | | | | | | |
| 1994 | | | | | | |
| 1995 | | | | | | |

| Year | (a) Total Defense Expenditures | (b) Number of EMTAL Claim Claimants Pending | (c) Highest single EMTAL Claim Defense Cost expenditure during period | (d) Lowest single EMTAL claim Defense Cost expenditure | (e) Arithmetic Average (mean) Defense Cost expenditure | (F) Median Defense Cost expenditure |
|------|------|------|------|------|------|------|
| 1996 | | | | | | |
| 1997 | | | | | | |
| 1998 | | | | | | |
| 1999 | | | | | | |
| 2000 | | | | | | |
| 2001 | | | | | | |
| 2002 | | | | | | |
| 2003 | | | | | | |
| 2004 | | | | | | |
| 2005 | | | | | | |
| 2006 | | | | | | |
| 2007 | | | | | | |
| 2008 | | | | | | |
| 2009 | | | | | | |
| 2010 | | | | | | |
| 2011 | | | | | | |
| 2012 | | | | | | |
| 2013 | | | | | | |
| 2014 | | | | | | |
| 2015 | | | | | | |
| 2016 | | | | | | |
| 2017 | | | | | | |

**INTERROGATORY NO. 10:** For each year during the Time Period, and excluding the present *Williams* case, state the number of Emtal Claim Claimants' Emtal Claims that resolved or terminated at or during each of the following claim or litigation stages:

a.   Prior to filing of suit or adjudicative claim.

b.   At or upon filing of suit or adjudicative claim

c.    Filing of Motion to dismiss complaint.

d.   The close of the pleadings if no motion to dismiss filed or if filed was not granted in full as to Engelhard or BASF.

e.   During discovery but prior to dispositive motions or pretrial conference.

f.   Motion for Summary Judgment or similar dispositive motions

g.   Pretrial proceedings

h.   Trial

i.   During Appeal

Please use the following matrix to supply this data:

Interrogatory No. 10 Table

| Year | a | b | c | d | e | f | g | h | i |
|------|---|---|---|---|---|---|---|---|---|
| 1979 | | | | | | | | | |
| 1980 | | | | | | | | | |
| 1981 | | | | | | | | | |
| 1982 | | | | | | | | | |
| 1983 | | | | | | | | | |
| 1984 | | | | | | | | | |
| 1985 | | | | | | | | | |

| Year | a | b | c | d | e | f | g | h | i |
|------|---|---|---|---|---|---|---|---|---|
| 1986 | | | | | | | | | |
| 1987 | | | | | | | | | |
| 1988 | | | | | | | | | |
| 1989 | | | | | | | | | |
| 1990 | | | | | | | | | |
| 1991 | | | | | | | | | |
| 1992 | | | | | | | | | |
| 1993 | | | | | | | | | |
| 1994 | | | | | | | | | |
| 1995 | | | | | | | | | |
| 1996 | | | | | | | | | |
| 1997 | | | | | | | | | |
| 1998 | | | | | | | | | |
| 1999 | | | | | | | | | |
| 2000 | | | | | | | | | |
| 2001 | | | | | | | | | |
| 2002 | | | | | | | | | |
| 2003 | | | | | | | | | |
| 2004 | | | | | | | | | |
| 2005 | | | | | | | | | |
| 2006 | | | | | | | | | |
| 2007 | | | | | | | | | |

| Year | a | b | c | d | e | f | g | h | i |
|------|---|---|---|---|---|---|---|---|---|
| 2008 | | | | | | | | | |
| 2009 | | | | | | | | | |
| 2010 | | | | | | | | | |
| 2011 | | | | | | | | | |
| 2012 | | | | | | | | | |
| 2013 | | | | | | | | | |
| 2014 | | | | | | | | | |
| 2015 | | | | | | | | | |
| 2016 | | | | | | | | | |
| 2017 | | | | | | | | | |

**INTERROGATORY NO. 11:** For each year during the Time Period please state the total amount of Claim Payments You or anyone on Your Behalf, including without limitation any insurance company, paid relating to Emtal Claims; (b) the number of EMTAL Claim Claimants whose EMTAL Claims were terminated or resolved by the Claim Payments made during the year; (c) the highest Claim Payment amount paid during the year in relation to a single Emtal Claim Claimant; and (d) the lowest Claim Payment amount paid during the year in relation to a single Emtal Claim Claimant.

Please use the following matrix to supply this data:

Interrogatory No. 11 Table

| Year | (a)<br>Total Amount of Claim Payments Paid During Year | (b)<br>Number of Emtal Claim Claimants Claim Payments resolved | (c)<br>Highest Claim Payment to a Single EMTAL Claim Claimant during period | (d)<br>Lowest Claim Payment to a Single EMTAL Claim Claimant during period |
|---|---|---|---|---|
| 1982 | $ | | $ | $ |
| 1983 | | | | |
| 1984 | | | | |
| 1985 | | | | |
| 1986 | | | | |
| 1987 | | | | |
| 1988 | | | | |
| 1989 | | | | |
| 1990 | | | | |
| 1991 | | | | |
| 1992 | | | | |
| 1993 | | | | |
| 1994 | | | | |
| 1995 | | | | |
| 1996 | | | | |
| 1997 | | | | |
| 1998 | | | | |
| 1999 | | | | |
| 2000 | | | | |

15

| Year | (a)<br>Total Amount of Claim Payments Paid During Year | (b)<br>Number of Emtal Claim Claimants Claim Payments resolved | (c)<br>Highest Claim Payment to a Single EMTAL Claim Claimant during period | (d)<br>Lowest Claim Payment to a Single EMTAL Claim Claimant during period |
|------|---|---|---|---|
| 2001 | | | | |
| 2002 | | | | |
| 2003 | | | | |
| 2004 | | | | |
| 2005 | | | | |
| 2006 | | | | |
| 2007 | | | | |
| 2008 | | | | |
| 2009 | | | | |
| 2010 | | | | |
| 2011 | | | | |
| 2012 | | | | |
| 2013 | | | | |
| 2014 | | | | |
| 2015 | | | | |
| 2016 | | | | |
| 2017 | | | | |

## DOCUMENT REQUESTS.

Pursuant to Fed. R. Civ. Pro. No. 34, please provide copies of the following documents:

16

1.      A copy of all documents You identify or refer in response to the above

interrogatories.

2.      A copy of all documents relating to or containing any information requested in the

above interrogatories.

3.      A copy of all documents You based your responses to above interrogatories upon,

including any data or information you provide.


Dated:  March 15, 2018                Respectfully Submitted,

**COHEN, PLACITELLA & ROTH, P.C.**


/s/ Michael Coren
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
Of Counsel:         (732) 747-9003
Harry M. Roth, Esq.
(Admitted *Pro Hac Vice*)
Robert L. Pratter, Esq.
(Admitted *Pro Hac Vice*)


**Fox Rothschild LLP**
Jeffery M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS**, et al., | HONORABLE JOSE L. LINARES |
| Plaintiffs, | CIVIL ACTION NO. 11-1754 (JLL) (JAD) |
| vs. | |
| **BASF CATALYSTS, LLC**, et al., | **PLAINTIFFS' SECOND SET OF INTERROGATORIES AND FOURTH SET OF DOCUMENT REQUESTS ADDRESSED TO DEFENDANT BASF CATALYSTS, LLC** |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2018, I served the foregoing on the following attorneys via Email:

Eugene F. Assaf, P.C.
Peter Farrell, Esq.
Kirkland & Ellis, LLP
655 15th St., N.W.
Washington, D.C. 20005
eassaf@kirkland.com

Justin T. Quinn, Esq.
Robinson Miller LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
jquinn@rwmlegal.com

*Attorneys for Defendant, BASF Catalysts, LLC*

John K. Villa, Esq.
David Blatt, Esq.
Grant A. Geyerman, Esq.
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, D.C. 20005
jvilla@wc.com
ggeyerman@wc.com

Robert E. Ryan, Esq.
Jennifer C. Critchley, Esq.
Connell Foley, LLP
85 Livingston Avenue
Roseland, New Jersey 07068
rryan@connellfoley.com

*Attorneys for Cahill Defendants*

Kevin H. Marino, Esq.
John A. Boyle, Esq
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928
kmarino@khmarino.com
jboyle@khmarino.com

*Attorneys for Defendant Arthur Dornbusch*

Eric Tunis, Esq.
Herold Law, P.A.
25 Independence Boulevard
Warren, New Jersey 07059
etunis@heroldlaw.com

*Attorneys for Defendant Thomas Halket*


### COHEN, PLACITELLA & ROTH, P.C.


/s/ Michael Coren
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003

Of Counsel:
Harry M. Roth, Esq.
(Admitted *Pro Hac Vice*)
Robert L. Pratter, Esq.
(Admitted *Pro Hac Vice*)

**Fox Rothschild LLP**
Jeffery M. Pollock, Esq. (NJ Atty #: 015751987)
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660
**Attorneys for Plaintiffs and the Putative Class**

# EXHIBIT G

**From:** Robert Pratter <RPratter@cprlaw.com>
**Date:** April 18, 2018 at 2:10:11 PM EDT
**To:** pfarrell <pfarrell@kirkland.com>, eassaf <eassaf@kirkland.com>
**Cc:** "Harry M. Roth" <HRoth@cprlaw.com>, Michael Coren <MCoren@cprlaw.com>
**Subject: Third Set of Interrogatories- BASF Objections and Responses**


Peter, We have received your Objections and Responses to Plaintiffs' Third Set of Interrogatories.  We want to schedule a time to meet and confer  promptly in an effort to address your position  before we take the matter to the  Discovery Master. Please address your response to Harry or Mike, as I will be out of town  for the next several days on family matters.

Thank you for your attention.


Robert L Pratter
C / P / R
Cohen, Placitella & Roth, P.C.
Two Commerce Square
2001 Market Street, Suite 2900 / Philadelphia, PA 19103
215.567.3500 / 215.567.6019 (fax)
rpratter@cprlaw.com

IMPORTANT CONFIDENTIALITY NOTICE

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (215) 567-3500 or by email reply; and permanently delete all copies. Any tax advice contained in this message and attachments may not be used for purposes of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Case 2:11-cv-01754-BRM-AME   Document 600-9   Filed 06/25/18   Page 153 of 173 PageID:
43248
Case 2:11-cv-01754-JLL-JAD   Document 529-9   Filed 05/21/18   Page 1 of 2 PageID: 34022

# EXHIBIT H

**From:** Farrell, Peter A.
**Sent:** Thursday, April 19, 2018 4:08 PM
**To:** 'Robert Pratter' <RPratter@cprlaw.com>; Assaf, Eugene F. <eassaf@kirkland.com>
**Cc:** Harry M. Roth <HRoth@cprlaw.com>; Michael Coren <MCoren@cprlaw.com>
**Subject:** RE: Third Set of Interrogatories- BASF Objections and Responses

Bob -- We're happy to schedule a time to talk, as there are issues we're waiting to hear back on too -- Bevan emails/agreements, Science Day, and dep scheduling, to name three.  If Harry or Mike want to discuss those issues tomorrow, we can find a time and add BASF's interrogatory responses to the agenda.  Harry/Mike -- please let us know.

Peter A. Farrell

**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W., Washington, D.C. 20005
**T** +1 202 879 5959  **F** +1 202 879 5200

peter.farrell@kirkland.com

**From:** Robert Pratter <RPratter@cprlaw.com>
**Sent:** Wednesday, April 18, 2018 2:10 PM
**To:** Farrell, Peter A. <pfarrell@kirkland.com>; Assaf, Eugene F. <eassaf@kirkland.com>
**Cc:** Harry M. Roth <HRoth@cprlaw.com>; Michael Coren <MCoren@cprlaw.com>
**Subject:** Third Set of Interrogatories- BASF Objections and Responses

Peter, We have received your Objections and Responses to Plaintiffs' Third Set of Interrogatories.  We want to schedule a time to meet and confer  promptly in an effort to address your position  before we take the matter to the  Discovery Master. Please address your response to Harry or Mike, as I will be out of town  for the next several days on family matters.

Thank you for your attention.


Robert L Pratter
C / P / R
Cohen, Placitella & Roth, P.C.
Two Commerce Square
2001 Market Street, Suite 2900 / Philadelphia, PA 19103
215.567.3500 / 215.567.6019 (fax)
rpratter@cprlaw.com

IMPORTANT CONFIDENTIALITY NOTICE

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (215) 567-3500 or by email reply; and permanently delete all copies. Any tax advice contained in this message and attachments may not be used for purposes of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Case 2:11-cv-01754-JLL-MAH Document 529-10 Filed 09/21/18 Page 1 of 2 PageID: 43250

# EXHIBIT I

Case 2:11-cv-01754-BRM-AME Document 600-9 Filed 06/25/18 Page 156 of 173 PageID: 34625
Case 2:11-cv-01754-JLL-MAH Document 529-19 Filed 09/22/18 Page 2 of 2 PageID: 34625
43251

**From:** Harry M. Roth <HRoth@cprlaw.com>
**Sent:** Friday, April 27, 2018 5:00 PM
**To:** Assaf, Eugene F. <eassaf@kirkland.com>; Farrell, Peter A. <pfarrell@kirkland.com>
**Cc:** Robert Pratter <RPratter@cprlaw.com>; Barbara Driscoll <bdriscoll@cprlaw.com>
**Subject:** Meet and confer

Will you have time sometime Monday to discuss our view regarding defendant's responses to plaintiffs' third interrogatories and 5th requests for production of documents. Included are the following we want to discuss:

Listing of what BASF paid in settlements (rog answers re: economics) (see attached Interrog. No. 4, 7, 11)

Listing of what BASF paid in defense costs (rog answers re: economics) (see attached Interrog. No. 4, 6, 9)

Reasons why cases were dismissed (data re: source of the dismissal count and reasons for dismissal)

Sorry for the late in the day note – I was supposed to send around noon. That kind of day. Let us know whether you have time on Monday to talk. Best, Harry

Harry M. Roth, Esquire

C / P / R
Cohen, Placitella & Roth, P.C.
Two Commerce Square
2001 Market Street, Suite 2900 / Philadelphia, PA 19103
(215) 567-3500/ 215.567.6019 (fax)
http://www.cprlaw.com/

**PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT.** This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (215) 567-3500 or by email reply; and permanently delete all copies.

# EXHIBIT J

**From:** Farrell, Peter A.
**Sent:** Friday, April 27, 2018 5:20 PM
**To:** 'Harry M. Roth' <HRoth@cprlaw.com>; Assaf, Eugene F. <eassaf@kirkland.com>
**Cc:** Robert Pratter <RPratter@cprlaw.com>; Barbara Driscoll <bdriscoll@cprlaw.com>
**Subject:** RE: Meet and confer

On Monday, we will be preparing our court-ordered summaries and working with witnesses for the science day hearing on Wednesday. So we would suggest that we find time on a break at the hearing on Wednesday.

Peter A. Farrell

**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W., Washington, D.C. 20005
**T** +1 202 879 5959 **F** +1 202 879 5200

peter.farrell@kirkland.com

**From:** Harry M. Roth <HRoth@cprlaw.com>
**Sent:** Friday, April 27, 2018 5:00 PM
**To:** Assaf, Eugene F. <eassaf@kirkland.com>; Farrell, Peter A. <pfarrell@kirkland.com>
**Cc:** Robert Pratter <RPratter@cprlaw.com>; Barbara Driscoll <bdriscoll@cprlaw.com>
**Subject:** Meet and confer

Will you have time sometime Monday to discuss our view regarding defendant's responses to plaintiffs' third interrogatories and 5th requests for production of documents. Included are the following we want to discuss:

    Listing of what BASF paid in settlements (rog answers re: economics) (see attached Interrog. No. 4, 7, 11)

    Listing of what BASF paid in defense costs (rog answers re: economics) (see attached Interrog. No. 4, 6, 9)

    Reasons why cases were dismissed (data re: source of the dismissal count and reasons for dismissal)

Sorry for the late in the day note – I was supposed to send around noon. That kind of day. Let us know whether you have time on Monday to talk. Best, Harry

Harry M. Roth, Esquire

C / P / R
Cohen, Placitella & Roth, P.C.
Two Commerce Square
2001 Market Street, Suite 2900 / Philadelphia, PA 19103
(215) 567-3500/ 215.567.6019 (fax)
http://www.cprlaw.com/

**PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT.** This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify

Cohen, Placitella & Roth, P.C. immediately at (215) 567-3500 or by email reply; and permanently delete all copies.

Case 2:11-cv-01754-BRM-AME   Document 600-9   Filed 06/25/18   Page 160 of 173 PageID:
43255
Case 2:11-cv-01754-JLL-JAD   Document 529-12   Filed 09/21/18   Page 1 of 3 PageID: 34629

# EXHIBIT K

**From:** Farrell, Peter A.
**Sent:** Monday, April 30, 2018 7:33 AM
**To:** 'Harry M. Roth' <HRoth@cprlaw.com>; Assaf, Eugene F. <eassaf@kirkland.com>
**Cc:** Robert Pratter <RPratter@cprlaw.com>; Barbara Driscoll <bdriscoll@cprlaw.com>
**Subject:** RE: Meet and confer

Harry -- I sent an email on April 19 offering to speak to you and Michael about the interrogatories (and other issues) on April 20.  Plaintiffs never responded and let more than a week pass.  I could've done the call on April 20 or on other days last week (when we spoke on other issues).  I just can't do it today or tomorrow, when we will be expending considerable time preparing for the science day hearing, including meeting with witnesses who have flown in for the hearing.  As I said in my earlier email, I would be happy to discuss the interrogatories on Wednesday during a break at the hearing (or later in the week, if you would prefer).

Peter A. Farrell

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Washington, D.C. 20005
T +1 202 879 5959  F +1 202 879 5200

peter.farrell@kirkland.com

**From:** Harry M. Roth <HRoth@cprlaw.com>
**Sent:** Friday, April 27, 2018 7:12 PM
**To:** Farrell, Peter A. <pfarrell@kirkland.com>; Assaf, Eugene F. <eassaf@kirkland.com>
**Cc:** Robert Pratter <RPratter@cprlaw.com>; Barbara Driscoll <bdriscoll@cprlaw.com>
**Subject:** RE: Meet and confer

Peter, Thanks for the reply. I would have imagined you'd be able to find some time on Monday notwithstanding your preparation. I wouldn't expect the meet and confer to take very long. Maybe if you take a break to eat?

**From:** Farrell, Peter A. [mailto:pfarrell@kirkland.com]
**Sent:** Friday, April 27, 2018 5:20 PM
**To:** Harry M. Roth <HRoth@cprlaw.com>; eassaf <eassaf@kirkland.com>
**Cc:** Robert Pratter <RPratter@cprlaw.com>; Barbara Driscoll <bdriscoll@cprlaw.com>
**Subject:** RE: Meet and confer

On Monday, we will be preparing our court-ordered summaries and working with witnesses for the science day hearing on Wednesday.  So we would suggest that we find time on a break at the hearing on Wednesday.

Peter A. Farrell

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Washington, D.C. 20005
T +1 202 879 5959  F +1 202 879 5200

peter.farrell@kirkland.com

**From:** Harry M. Roth <HRoth@cprlaw.com>
**Sent:** Friday, April 27, 2018 5:00 PM
**To:** Assaf, Eugene F. <eassaf@kirkland.com>; Farrell, Peter A. <pfarrell@kirkland.com>
**Cc:** Robert Pratter <RPratter@cprlaw.com>; Barbara Driscoll <bdriscoll@cprlaw.com>
**Subject:** Meet and confer

Will you have time sometime Monday to discuss our view regarding defendant's responses to plaintiffs' third interrogatories and 5th requests for production of documents. Included are the following we want to discuss:

　　Listing of what BASF paid in settlements (rog answers re: economics) (see attached Interrog. No. 4, 7, 11)
　　Listing of what BASF paid in defense costs (rog answers re: economics) (see attached Interrog. No. 4, 6, 9)
　　Reasons why cases were dismissed (data re: source of the dismissal count and reasons for dismissal)

Sorry for the late in the day note – I was supposed to send around noon. That kind of day. Let us know whether you have time on Monday to talk. Best, Harry


Harry M. Roth, Esquire

C / P / R
Cohen, Placitella & Roth, P.C.
Two Commerce Square
2001 Market Street, Suite 2900  /  Philadelphia, PA 19103
(215) 567-3500/  215.567.6019 (fax)
http://www.cprlaw.com/

**PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT.**  This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (215) 567-3500 or by email reply; and permanently delete all copies.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT L

1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
2

3    KIMBERLEE WILLIAMS, et al.,   :   Civil Action No.
                                   :   2:11-cv-01754-JLL-JAD
4               Plaintiffs,        :
                                   :
5       vs.                        :   Newark, New Jersey
                                   :   Friday, October 14, 2016
6    BASF CATALYSTS LLC, et al.,   :   10:40 a.m.
                                   :
7               Defendants.        :
                                   :
8
                    TRANSCRIPT OF STATUS CONFERENCE
9            BEFORE THE HONORABLE JOSEPH A. DICKSON
                  UNITED STATES MAGISTRATE JUDGE
10

11   APPEARANCES:

12   For the Plaintiffs:        Cohen, Placitella & Roth, P.C.
                                By:  CHRISTOPHER M. PLACITELLA, ESQ.
13                              127 Maple Avenue
                                Red Bank, NJ  08801
14
                                Cohen, Placitella & Roth, P.C.
15                              By:  JARED M. PLACITELLA, ESQ.
                                     MICHAEL COREN, ESQ.
16                              Two Commerce Square
                                2001 Market Street, Suite 2900
17                              Philadelphia, PA  19103

18

19

20

21   Transcription Company:     KLJ Transcription Service, LLC
                                P.O. Box 8627
22                              Saddle Brook, NJ  07663
                                (201)703-1670 - Fax (201)703-5623
23

24   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
25

```
1    APPEARANCES (Cont.):

2    For Defendant
     BASF Catalysts, LLC:        Robinson Miller, LLC
3                                By:  JUSTIN T. QUINN, ESQ.
                                 One Newark Center
4                                Newark, NJ  07102

5                                Kirkland & Ellis, LLP
                                 By:  EUGENE F. ASSAF, ESQ.
6                                     PETER A. FARRELL, ESQ.
                                 655 15th Street, N.W.
7                                Washington, D.C.  20005

8
     For Defendant
9    Arthur A. Dornbusch, II:    Marino, Tortorella & Boyle, P.C.
                                 By:  KEVIN H. MARINO, ESQ.
10                                    JOHN A. BOYLE, ESQ.
                                 437 Southern Boulevard
11                               Chatham, NJ  07928

12

13   For Defendant Cahill,
     Gordon & Reindel:           Connell Foley, LLP
14                               By:  ROBERT F. RYAN, ESQ.
                                 85 Livingston Avenue
15                               Roseland, NJ   07068

16                               Williams & Connolly, LLP
                                 By:  JON K. VILLA, ESQ.
17                                    GRANT A. GEYERMAN, ESQ.
                                 725 Twelfth Street, N.W.
18                               Washington, D.C.  20005

19   APPEARANCES (Telephonically):

20   For Defendant
     Thomas D. Halket:           Herold Law, P.A.
21                               By:  ERIC TUNIS, ESQ.
                                 25 Independence Boulevard
22                               Warren, NJ 07059

23

24

25
```

1                        I N D E X

2

3                                                            PAGE

4   Colloquy re Scheduling Order. . . . . . . . . . . . . 5, 42

5   Colloquy re Spoliation Issue. . . . . . . . . . . . .  31

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:11-cv-01754-BRM-AME   Document 600-9   Filed 06/25/18   Page 167 of 173 PageID: 34636
Case 2:11-cv-01754-JLL-MAH   Document 529-3   Filed 09/22/18   Page 5 of 6 PageID: 34636
43262

Colloquy                                                        15

 1          THE COURT:  I accept your apology on behalf of the

 2   Court.  I cannot speak for your co-counsel.

 3          MR. TUNIS:  I'll have to make it up to them.

 4          THE COURT:  Well, I think they're okay.

 5          MR. TUNIS:  Okay.

 6          THE COURT:  Now, we're all in agreement that -- make

 7   sure I'm reading both of these correctly -- that we're not

 8   having any fights over the -- well, I don't know if we're in

 9   agreement or not.  I don't think -- again, if I miss this, Mr.

10   Assaf, you'll tell me.  But the plaintiffs suggest 20 -- no

11   more than 25 additional or supplemental -- or they say

12   additional interrogatories by each party to each other party.

13   Everybody in agreement with that?

14          (Discussion among counsel, off the record.)

15          MR. ASSAF:  That's fine, Your Honor.

16          THE COURT:  Okay.  Then they also have language on

17   the -- on how many fact discovery depositions to be taken by

18   each side.  All defendants together being considered as one

19   side.  Do we have agreement on that?  That's number 8 on page

20   6 of their order.

21          (Discussion among counsel, off the record.)

22          MR. ASSAF:  Yeah.  Your Honor, I -- that, I don't

23   think that we're going to be able to agree  to.  And we may

24   have to do this in stages, but here we have a class of -- a

25   putative class of 10 to 16,000 people.  As Your Honor asked

Case 2:11-cv-01754-BRM-AME Document 600-9 Filed 06/25/18 Page 168 of 173 PageID: 43263
Case 2:11-cv-01754-JLL-MAH Document 529-13 Filed 09/22/18 Page 6 of 8 PageID: 34637

44

1                    C E R T I F I C A T I O N

2          I, TERRY L. DeMARCO, court-approved transcriber,

3    certify that the foregoing is a correct transcript from the

4    electronic sound recording of the proceedings in the above-

5    entitled matter recorded on October 14, 2016 from 10:40:45 a.m.

6    to 11:34:22 a.m.

7

8    _____10/18/16_____          *S / Terry L. DeMarco*_____

9          Date                      Terry L. DeMarco, AD/T 566

10                                   KLJ Transcription Service

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT M

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **KIMBERLEE WILLIAMS, ET AL.,** | : | No. 2:11-cv-01754 (JLL) (JAD) |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | **DECLARATION OF** |
| | : | **KEVIN WOOD** |
| **BASF CATALYSTS LLC, ET AL.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

I hereby declare as follows:

1.     My name is Kevin Wood.  I am the Manager, Catalyst Information Management at BASF Corporation.  I have worked at BASF Corporation since 2006, when BASF Corporation acquired Engelhard Corporation.

2.     I am generally familiar with BASF's current and historical accounting and accounts payable systems used to record expenses and payments to outside vendors, including outside law firms.

3.     I understand that the plaintiffs in *Kimberlee Williams, et al. v. BASF Catalysts LLC, et al.* have asked BASF Catalysts LLC to produce by year for the period from 1979 to 2017 the amount that Engelhard and BASF spent on attorney's fees in defense of personal injury claims related to Emtal talc, as well as the settlement amounts for those claims.  The plaintiffs have also asked for additional

information including the number of Emtal claimants with claims pending in a given year, the highest defense cost for any Emtal case in a given year, the lowest defense cost for any Emtal case in a given year, the average defense cost for any Emtal case in a given year, the median defense cost for any Emtal case in a given year, and the number of Emtal cases settled each year at various phases of legal proceedings.

4.      I am not aware of any reporting capability that would generate the information requested in the form that plaintiffs seek in an automated fashion for any portion of the time period covered by plaintiffs' requests.   As a result, assembling the information that plaintiffs requested in the form that they seek it would require a manual review of historical documents, such as periodic invoices and associated correspondence regarding Emtal litigation and settlements from 1979 through 2017 for each law firm that BASF and Engelhard retained in each personal injury case related to Emtal talc.

5.      BASF acquired Engelhard Corporation in 2006.  Because Emtal talc was a legacy Engelhard business, the annual legal spending and settlement amounts prior to 2006 for matters related to Emtal talc are not maintained in current systems and, if they are maintained at all, they would be maintained in applications that are no longer supported commercially and reside on an offsite server from which information would need to be extracted and reviewed.

2

6.    Specifically, from 1979 through approximately 1997, Engelhard maintained its accounts payable records in a mainframe application provided by an outside vendor called McCormack & Dodge. From approximately 1997 through 2006, Engelhard maintained its accounts payable records in a finance application provided by an outside vendor called J.D. Edwards. The versions of the applications provided by McCormack & Dodge and J.D. Edwards used by Engelhard are no longer supported commercially and would require specialized hardware and software to operate.

7.    Annual legal spending and settlement amounts after 2006 for matters related to Emtal talc are maintained in current BASF online systems. However, because BASF's current systems do not maintain that information in the form that plaintiffs seek, manual review of periodic invoices and related correspondence would still be necessary.

I declare under penalty of perjury that the above statements are true and correct to the best of my knowledge and belief.

Kevin Wood

Dated: May 21, 2018

3

Case 2:11-cv-01754-JLL-JAD Document 529-5 Filed 09/22/18 Page 1 of 1 PageID: 34842

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing documents to be served via ECF upon all counsel of record.

Dated: May 21, 2018             By: <u>s/ Justin T. Quinn</u>
                                         Justin T. Quinn