Exhibit 12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

- - -

KIMBERLEE WILLIAMS,  :  CIVIL ACTION
et al.,              :

      Plaintiffs, :

             :

      vs.          :

             :

BASF CATALYSTS, LLC,  :
et al.,              :

      Defendants :  NO. 2:11-CV-1754

- - -

MONDAY, MAY 14, 2018

- - -

Videotaped deposition of
ARTHUR DORNBUSCH, was held at the law offices
of Littleton, Park, Joyce, Ughetta & Kelly,
141 West Front Street, Suite 120, Red Bank,
New Jersey, commencing at 9:06 a.m., on the
above date, before Deborah A. Brazukas, a
Registered Professional Reporter, Certified
Shorthand Reporter of New Jersey, License No.
XI 01938, and Notary Public.

MAGNA LEGAL SERVICES

(866) 624-6221

www.MagnaLS.com



```
 1   APPEARANCES:
 2        COHEN, PLACITELLA & ROTH, P.C.
          BY: CHRISTOPHER M. PLACITELLA, ESQUIRE
 3            MICHAEL COREN, ESQUIRE
          127 Maple Avenue
 4        Red Bank, New Jersey  07701
          732.747.9003
 5        cplacitella@cprlaw.com
          mcoren@cprlaw.com
 6            Counsel for Plaintiffs
 7
 8        KIRKLAND & ELLIS, LLP
          BY:  PETER FARRELL, ESQUIRE
 9        655 Fifteenth Street, N.W.
          Washington, D.C.  20005
10        202.879.5959
          peter.farrell@kirkland.com
11            Counsel for BASF Catalysts, LLC
12
13        PEPPER HAMILTON, LLP
          BY:  BARRY BOISE, ESQUIRE
14        3000 Two Logan Square
          18th and Arch Streets
15        Philadelphia, Pennsylvania  19103
          215.981.4591
16        boiseb@pepperlaw.com
              Counsel for Cahill, Gordon; Peter
17            Sloane; Ira Dembrow
18
19        MARINO, TORTORELLA & BOYLE, P.C.
          BY:  KEVIN MARINO, ESQUIRE
20            JOHN BOYLE, ESQUIRE
          437 Southern Boulevard
21        Chatham Township, New Jersey  07928
          973.824.9300
22        khmarino@khmarino.com
          jboyle@khmarino.com
23            Counsel for Arthur Dornbusch
24
```



Page 3

```
 1    APPEARANCES (Continued):

 2

 3         HEROLD LAW, P.A.
           BY:  ERIC TUNIS, ESQUIRE
 4         25 Independence Boulevard
           Warren, New Jersey  07059
 5         908.484.1153
           etunis@herold.com
 6            Counsel for Thomas Halket
 7    ALSO PRESENT:
 8         Sneha Desai, Esquire
           Robert Pratter, Esquire (via telephone)
 9         Lea Callahan
           Ray Moore, The Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```



Page 4

```
 1                       INDEX
 2                      -  -  -
 3  TESTIMONY OF:                        PAGE
 4  ARTHUR DORNBUSCH
 5           BY MR. PLACITELLA            11
 6
 7                      -  -  -
 8                     EXHIBITS
 9                      -  -  -
10  NO.                DESCRIPTION        PAGE
11  Dornbusch1  United States Securities
                and Exchange Commission,
12              Washington, D.C.,
                Schedule 14A                  *
13
    Dornbusch2  Excerpt from BASF Privilege
14              Log - Dornbusch              *
15  Dornbusch3  Excerpt from BASF Privilege
                Log - O'Shaughnessy Ashton
16              Entries                      *
17      1       Cahill Collection of Testing
                Document (Excluding
18              Privileged Documents)        *
19      3       Transcript of deposition of
                Glenn Hemstock, March 16,
20              1983, Re:  Westfall vs.
                Whittaker, Clark & Daniels,
21              et al.                       *
22
23
24
```



Page 5

```
 1    EXHIBITS (Continued):
 2                     -   -   -
 3    NO.                DESCRIPTION            PAGE
 4       4         Transcript of deposition of
                   Peter Gale, April 26, 1983,
 5                 Re:  Westfall vs. Wittacker,
                   Clark & Daniels, et al.        *
 6
         5         Affidavit of William H.
 7                 Ashton                         *
 8       6         Affidavit of Charles D.
                   Carter                         *
 9
        13         Excerpt of transcript of
10                 deposition of Daniel
                   Steinmetz, July 18, 2017,
11                 Re:  Sampson vs. 3M Company,
                    et al.                        *
12
        14         Summary of Activities
13                 Related to Servives Rendered
                   for Decof & Grimm in the case
14                 of David H. Westfall vs.
                   Whittaker, Clark & Daniels,
15                 et al.                         *
16      15         Inter-Department Memorandum,
                   Minerals & Chemical Division,
17                 Document Retrieval -
                   Discontinued Operations,
18                 March 7, 1984                  *
19      41         Answers of BASF Catalysts
                   LLC ton Interrogatories
20                 Propounded by the Plaintiffs,
                   Re:  Williams, et al. vs.
21                 BASF Catalysts, LLC, et al.    *
22
23
24
```



```
 1    EXHIBITS (Continued)
 2                     -  -  -
 3    NO.              DESCRIPTION              PAGE
 4
      50          Answers, Objections and
 5                Responses of Pita Realty
                  Limited, Formerly Known as
 6                Eastern Magnesia Talc Company,
                  and Engelhard Corporation to
 7                Owens-Corning Fiberglas
                  Corporation's Interrogatories
 8                and Request for Production,
                  Re:  Asbestos Products
 9                Liability Litigation          *
10    57          Responses by Engelhard
                  Corporation to Plaintiffs'
11                First Standard Set of
                  Liability Interrogatories,
12                Re:  Chernick vs. ABB Lummus
                  Global, Inc., et al.          *
13
      108         Letter from Eric S. Sarner
14                to Mr. Hobson, January 22,
                  1990                          *
15
      121         Letter from Eric S. Sarner
16                to Dear Jim, April 23, 1990   *
17    123         Letter from Sarner to Dear
                  Peter, April 24, 1990         *
18
      148         Letter from Francis Patrick
19                Newell to Signe O'Brien
                  Rudberg, Esquire, November
20                18, 2003                      *
21    176         BASF Catalysts LLC's
                  Responses and Objections to
22                Plaintiffs' First Request for
                  Admissions, Re:  Williams,
23                et al. vs. BASF Catalysts,
                  LLC, et al.                   *
24
```



Page 7

```
 1   EXHIBITS (Continued):

 2                        -  -  -

 3   NO.              DESCRIPTION              PAGE

 4    203        Defendant Arthur A. Dornbusch
                 II's Disclosures Under Rule
 5               26(a)(1), Re:  Williams, et
                 al. vs. BASF Catalysts, LLC,
 6               et al.                         *

 7    210        Letter from Eric S. Sarner
                 to Dear David, July 16, 1991  *

 8
      214        "Englehard Corp. William
 9               Salling" with attachments     *

10    215        Letter from Harriet
                 Vasilopoulos to Ms. Nancy
11               Remundo, January 24, 1985,
                 with attachment               *

12

13   (* Exhibit marked prior to start of

14   deposition.)

15

16

17

18

19

20

21

22

23

24
```



Page 8

```
 1                      -  -  -

 2           DEPOSITION SUPPORT INDEX

 3                      -  -  -

 4    Direction to Witness Not to Answer

 5     Page Line     Page Line     Page Line     Page Line

 6     16    14     118    2     238    9     267   19

 7     35     5     121   23     239   15     272   20

 8     35    11     125    1     242    9     274   20

 9     35    17     126   16     245    6     275    3

10     36     1     127    2     246    5     276   10

11     36    14     127   15     246   13     278    3

12     41    12     130   17     250   11     280    7

13     42    12     132    1     252   18     286   17

14     43    14     132    6     253    3     287    6

15     45     2     146   22     253   12     288    9

16     46     6     191    2     256   12     289    1

17     51    24     207    1     257    7

18     55    17     208    4     257   17

19     56    22     219   13     258   10

20    114    10     228    6     258   20

21    116    10     230   11     259    5

22    117    10     237   21     263    7

23

24
```



Page 9

```
 1   DEPOSITION SUPPORT INDEX (Continued):

 2                     -  -

 3

 4   Request for Production of Document

 5   Page  Line

 6   None

 7

 8   Stipulations

 9   Page  Line

10   None

11

12   Question Marked

13   Page  Line

14   None

15

16

17

18

19

20

21

22

23

24
```



Page 10

```
 1                    THE VIDEOGRAPHER:  We are now

 2        on the record.  This begins DVD No. 1 in

 3        the deposition of Arthur Dornbusch in the

 4        matter of Kimberlee Williams, et al.

 5        versus BASF Catalysts, LLC, et al., in

 6        the United States District Court for the

 7        District of New Jersey, Civil Action No.

 8        2:11-cv-1754.

 9                    Today is May 14th, 2018, and

10        the time is 9:06 a.m.  This deposition

11        is being taken at 141 West Front Street,

12        Red Bank, New Jersey, at the request of

13        Cohen, Placitella and Roth.

14                    The videographer is Ray Moore

15        of Magna Legal Services and the court

16        reporter is Debbie Brazukas of Magna

17        Legal Services.  Counsel will be noted

18        on the stenographic record.

19                    Will the court reporter please

20        swear in the witness.

21                       -   -   -

22                    ARTHUR DORNBUSCH, after having

23          been duly sworn, was examined and

24          testified as follows:
```



```
 1                    -  -  -

 2                  EXAMINATION

 3                    -  -  -

 4  BY MR. PLACITELLA:

 5       Q.    Good morning, Mr. Dornbusch.  How

 6  are you?

 7       A.    Good morning.

 8       Q.    I can make you a promise before

 9  we start.  This will be a lot shorter than

10  the last time we were together.

11       A.    That would be good.

12       Q.    As you know, I'm Chris

13  Placitella, and I'm here to get your

14  testimony today.

15              You currently reside where?

16       A.    Six Harbor Drive in Rumson, New

17  Jersey.

18       Q.    And you went to Yale to get your

19  bachelor of arts?

20       A.    I did.

21       Q.    And then University of

22  Pennsylvania Law School?

23       A.    Yes.

24       Q.    All right.  Did you ever sit for
```



Page 12

```
 1    any -- the New Jersey bar?

 2         A.      No.

 3         Q.      Okay.  Am I correct that your --

 4    that you started with Engelhard in 1976?

 5         A.      Yes, December '96.

 6         Q.      And your first job was

 7    assistant --

 8         A.      '76.

 9         Q.      -- general counsel?

10         A.      Yes.

11         Q.      Okay.  At that time, what were

12    your job responsibilities?

13         A.      I was responsible for the general

14    legal support of certain of the business --

15    sub business groups.  I don't recall

16    specifically which ones.  I know that one of

17    them was the systems, air -- air and systems

18    water group located in Union, New Jersey.

19    And there were other groups too, but at that

20    time, I'm not sure what they were.

21         Q.      Okay.  And am I -- in 1980, you

22    became the vice president and general counsel

23    of Minerals and Chemicals --

24         A.      Yes.
```



1      Q.      -- is that fair?

2              And what were your

3   responsibilities as vice president and

4   general counsel for Mineral and Chemicals?

5      A.      I was responsible for all of the

6   legal affairs of that division.  That was one

7   of three divisions of Engelhard, Minerals and

8   Chemicals Corporation.

9      Q.      Okay.  In that capacity, did you

10  do work on the talc litigation?

11              MR. FARRELL:  Objection to

12      form.

13              THE WITNESS:  Yes.  I'm not

14      sure at what point talc litigation

15      ensued, but yes.

16  BY MR. PLACITELLA:

17      Q.      Okay.  And in 1984, did you

18  become the corporate secretary for Engelhard?

19      A.      Yes.

20      Q.      All right.  And as corporate

21  secretary, did you attend board meetings?

22      A.      Yes, I did.

23      Q.      Okay.  In 1984, did you become

24  vice president and general counsel for the



Page 14

1    entire Engelhard Corporation?

2         A.    Yes.

3         Q.    Okay.  In 1984, did you become

4    responsible for the legal affairs of the

5    company?

6         A.    Yes.

7         Q.    Okay.  Did that include reviewing

8    financial disclosures?

9         A.    Yes.

10        Q.    Were you considered an officer of

11   the corporation at that point?

12        A.    Yes.

13        Q.    From -- when -- in 1984, were you

14   in charge of supervising litigation relate --

15   related to Engelhard?

16        A.    Yes.

17        Q.    Okay.  And did that include the

18   Emtal talc litigation?

19                  MR. FARRELL:  Objection to

20        form.

21                  THE WITNESS:  Yes.

22   BY MR. PLACITELLA:

23        Q.    Okay.  Did you keep that title

24   into 2006, when you retired?



Page 15

1       A.      Yes.

2       Q.      Okay.  And did your

3   responsibilities change at all from 1984 to

4   2006, when you retired?

5       A.      No.

6       Q.      Okay.  So, you know, we're here

7   to talk about the -- the talc litigation, so

8   I want to just ask you some questions.

9               When is the first time that

10  you learned there were reports indicating

11  that there was asbestos in Emtal talc?

12              MR. MARINO:  Objection to form.

13  BY MR. PLACITELLA:

14      Q.      You can answer.

15      A.      It was probably in 1981.

16      Q.      And what were the circumstances?

17              MR. FARRELL:  Objection to

18      form.

19              THE WITNESS:  The person who

20      preceded me in that position, Joe Brush,

21      was going over some of the items that

22      were of current interest.  And I recall

23      him saying -- tell -- telling me --

24              MR. FARRELL:  Mr. --



1        Mr. Dornbusch --

2                    THE WITNESS:  Yes.

3                    MR. FARRELL:  -- one moment.

4        When it comes to a conversation between

5        you and Mr. Brush, who, as I understand

6        it, was also a lawyer for the company --

7                    THE WITNESS:  Yes.

8                    MR. FARRELL:  -- I would

9        caution you on the disclosure of

10       information or communications that would

11       be covered by the attorney-client

12       privilege or, depending on the time

13       period, the work product doctrine.

14                    So I didn't mean to interrupt

15       your answer, but it sounded like you

16       were heading in that direction.  I would

17       instruct you not to answer questions or

18       to disclose information covered by

19       privilege or work product.

20                    If you can continue your

21       answer without disclosing such

22       information, that's fine.  But if you're

23       about to disclose the substance of a

24       communication with Mr. Brush, I'd



```
 1        instruct you not to do so and would

 2        object to the question on that basis.

 3               MR. MARINO:  Could I have the

 4        question back, please.

 5               (Whereupon, the court reporter

 6          read back the record as requested.)

 7               MR. PLACITELLA:  The first

 8        question is when is the first time that

 9        you learned there were reports indicating

10        there was asbestos in Ental talc.  And

11        the second -- next question was, what

12        were the circumstances.

13               MR. FARRELL:  The question --

14               MR. MARINO:  That -- that --

15        that question does not call for the

16        disclosure of any statements --

17               THE WITNESS:  Yeah.

18               MR. MARINO:  -- made to you by

19        anyone.  I -- I think Mr. Farrell's

20        objection was because you began to

21        volunteer such testimony.

22               THE WITNESS:  Yes, I spoke to

23        my predecessor.

24     BY MR. PLACITELLA:
```



Page 18

```
 1       Q.      Okay.  And that was information
 2   already in his possession?
 3                    MR. FARRELL:  Objection to
 4       form.
 5                    MR. MARINO:  Same objection.
 6                    THE WITNESS:  Well, I assume it
 7       was.  He knew.
 8   BY MR. PLACITELLA:
 9       Q.      Okay.  When is the first time
10   that you learned there was testing data
11   concerning the asbestos content of Emtal
12   talc?
13       A.      I don't recall.
14       Q.      Okay.  When is the first time you
15   learned there was testing data -- that
16   testing data existed indicating there was
17   asbestos in Emtal talc?
18                    MR. FARRELL:  Objection to
19       form; foundation.
20                    THE WITNESS:  I don't recall.
21   BY MR. PLACITELLA:
22       Q.      Okay.  When is the first time, if
23   ever, that you learned that consultants hired
24   by Engelhard found asbestos in Emtal talc?
```



1                    MR. FARRELL:  Objection to

2      form.

3                    THE WITNESS:  I don't recall.

4  BY MR. PLACITELLA:

5      Q.     When is the first time that you

6  learned that Em -- that Engelhard scientists

7  testified under oath about the testing of

8  Emtal talc for asbestos?

9                    MR. MARINO:  I just object to

10      the form of the question and ask if you

11      could ask the question -- the

12      foundational question first, please.

13  BY MR. PLACITELLA:

14      Q.     Can you answer my question?

15      A.     I'm not sure what it was.

16      Q.     Did you ever -- did you ever

17  learn that Engelhard scientists testified

18  under oath concerning the testing of Emtal

19  talc for asbestos?

20      A.     Yes.

21      Q.     And when was the first time you

22  learned that?

23      A.     I don't know.

24      Q.     Okay.  Did you, at some point,



Page 20

1    learn that Engelhard scientists testified

2    under oath that there were testing results

3    indicating that there was, in fact, asbestos

4    in Emtal talc?

5              MR. FARRELL:  Objection to form

6         and foundation.

7              THE WITNESS:  Was this a when

8         question, or did?

9    BY MR. PLACITELLA:

10        Q.    Did.  Did first?

11        A.    What was the question, did I...

12        Q.    Did there come a time when you

13   learned that Engelhard scientists testified

14   under oath that there were testing results

15   indicating that there was asbestos in Emtal

16   talc?

17             MR. FARRELL:  Objection to form

18        and foundation.

19   BY MR. PLACITELLA:

20        Q.    You can answer it.

21        A.    I believe there -- I believe

22   there was such a time, yes.

23        Q.    And when was that?

24        A.    I don't recall.



1      Q.     Do you not remember?  Was it in

2  the early '80s, the late '80s, the '90s?

3                 MR. FARRELL:  Objection to

4      form.

5  BY MR. PLACITELLA:

6      Q.     Do you have an estimate?

7      A.     Not -- no, I don't.

8      Q.     Okay.  Do you know who David Hyde

9  is or was?

10     A.     Yes.

11     Q.     And who was he?

12     A.     He was a senior partner at Cahill

13  Gordon and Reindel.

14     Q.     All right.  And what -- what

15  was -- did you have dealings with him in your

16  capacity as general counsel?

17     A.     I did, yes.

18     Q.     And what was the nature of those

19  dealings?

20     A.     Well, he represented Engelhard in

21  a number of matters.  And in support of the

22  litigation, I talked to him frequently.

23     Q.     Okay.  And do you recall when --

24  if there was a time when he supplied you with



Page 22

```
 1    a memo related to the testing of Emtal talc?

 2                    MR. FARRELL:  Objection to

 3         form.

 4                    MR. MARINO:  Is the question

 5         did he ever provide Mr. Dornbusch with --

 6                    MR. PLACITELLA:  Right.

 7                    MR. MARINO:  -- with such a

 8         memo?

 9                    MR. PLACITELLA:  Yeah.

10                    THE WITNESS:  Yes.

11    BY MR. PLACITELLA:

12         Q.    Okay.  And do you remember the

13    context of when and why you got that memo?

14                    MR. FARRELL:  Objection to

15         form.

16                    THE WITNESS:  No, I -- I had

17         completely forgotten until our previous

18         depositions revealed it.

19    BY MR. PLACITELLA:

20         Q.    Okay.  What recollection do you

21    have about getting that memo?

22                    MR. FARRELL:  Objection to form

23         and foundation; attorney-client privilege

24         to the extent it actually gets into the
```



Page 23

1        substance of the memo, the substance of

2        your commun -- the question is a bit

3        broad.  So if it's a circumstances or

4        subject matter answer, that's acceptable.

5        But if it gets into the content of

6        communications between you and Mr. Hyde

7        or anybody at Cahill or the substance of

8        the memo itself, I would object on

9        privilege grounds.

10                   MR. MARINO:  And for clarity of

11        the record, that's a continuing objection

12        and continuing direction.

13                   MR. PLACITELLA:  Okay.

14                   THE WITNESS:  My recollection

15        of the -- my earliest recollection of

16        seeing it is when you showed it to me at

17        a previous deposition in the state

18        matter.

19   BY MR. PLACITELLA:

20        Q.    Okay.  And do you recall that --

21   have you seen it since then?

22        A.    No.

23        Q.    Okay.  Do you -- do you remember

24   the circumstances under which you received



Page 24

1    that memo?

2        A.    You mean originally?

3        Q.    Yes.

4        A.    No, I don't.

5            MR. PLACITELLA:  Okay.  Can you

6    give me P-1.

7            MR. FARRELL:  While

8    Mr. Placitella is pulling that out,

9    Mr. Dornbusch, I would just remind you

10   that the deposition in the state matter

11   that you alluded to is protected by a

12   sealing order, which I think you

13   understand.

14           THE WITNESS:  Uh-huh.

15           MR. FARRELL:  So I just caution

16   you about speaking about the contents of

17   that deposition and the substance of it.

18   It is all under seal and cannot be

19   disclosed here, or anywhere else for that

20   matter.  So I would just remind you of

21   the fact that your prior testimony is

22   covered by that sealing order.

23           MR. MARINO:  Do you wish to

24   place on the record a statement



1          indicating that to the extent there is

2          any disclosure during this deposition of

3          materials that would be covered by that

4          sealing order that they should be subject

5          to the sealing order?

6                    MR. FARRELL:  Yes.  And I -- I

7          would hope we would not even go down that

8          road and that it would be inadvertent,

9          and that was part of why I thought it

10          would be useful just to remind everybody

11          of the ground rules.

12     BY MR. PLACITELLA:

13          Q.    I put in front of you what's P --

14     been marked previous -- at previous

15     depositions as Exhibit 1, which is a copy of

16     a compilation that's represented to be what

17     was attached to the memo from Mr. Hyde to

18     yourself, minus the documents that are being

19     withheld on grounds of privilege.  I ask if

20     you can just look at that for a second.

21          A.    Okay.

22          Q.    Does any of that look familiar to

23     you?

24          A.    It looks familiar as -- as what



Page 26

1    you -- what I previously saw, yes.

2         Q.    Okay.  It was --

3              MR. TUNIS:  Excuse me,

4         Mr. Dornbusch, could you keep your voice

5         up just a little bit.

6              THE WITNESS:  Oh, I'm sorry.

7         Yes.

8    BY MR. PLACITELLA:

9         Q.    Do you know how that memo was

10   constructed?

11             MR. FARRELL:  Objection to

12        form.

13   BY MR. PLACITELLA:

14        Q.    The circumstances under which it

15   was constructed?

16        A.    I do not, no.

17        Q.    All right.  Do you know whether

18   someone from Cahill Gordon came to Engelhard

19   and looked at the records or whether the

20   records were sent to Cahill Gordon that are

21   the subject of that memo?

22             MR. FARRELL:  Objection to

23        form.

24             THE WITNESS:  I don't know.



Page 27

```
 1   BY MR. PLACITELLA:

 2        Q.    Okay.  Do you know whether, when

 3   you received that memo, it contained all of

 4   the asbestos testing records or some of the

 5   records?

 6                    MR. FARRELL:  Objection to the

 7        form.

 8                    THE WITNESS:  I don't know.

 9   BY MR. PLACITELLA:

10        Q.    Okay.  Do you -- do you know who

11   requested that that memo be prepared?

12        A.    No.

13        Q.    Was it requested by you?  Do you

14   recall?

15        A.    I don't recall.

16        Q.    Okay.  It's been represented from

17   the representative of BASF that that full

18   memo was found in your files.

19                    Do you have any recollection

20   of that memo being in your files?

21                    MR. MARINO:  Objection to the

22        question.  Can you show him what you're

23        talking about, please.

24                    MR. PLACITELLA:  Sure.
```



Page 28

```
 1                    MR. FARRELL:  Object to form

 2        and foundation.

 3                    MR. PLACITELLA:  Give me

 4        Exhibit 13.

 5                    This is Exhibit 13, excerpts

 6        from the deposition of Daniel Steinmetz.

 7                    MR. FARRELL:  Do you have the

 8        full testimony?

 9                    MR. PLACITELLA:  No.

10    BY MR. PLACITELLA:

11        Q.    And I'm going to refer you to

12    page 130 of the deposition.

13        A.    130?

14        Q.    Yeah.

15        A.    Mine -- mine just goes to

16    page 93.

17        Q.    That's not good.

18                    All right.  Let's go to

19    page 82 then.  It's the same thing.

20                    On page 82, I asked a

21    corporate representative of BASF, Daniel

22    Steinmetz, about this document.  And I -- and

23    I said, "That was found in -- when I say the

24    original version, the one you say you found
```



1    in Mr. Dornbusch's file, correct?"

2                    Answer:  "Yes."

3                    "Do you know the source of the

4    documents that are located in the original

5    version of P-15?"

6                    Answer:  "And by source, you

7    mean what?"

8                    "Where they got the documents

9    from."

10                   Answer:  "Where Cahill

11   obtained the documents?"

12                   Answer:  "Yes."

13                   "It was put together 40 years

14   ago.  I don't know exactly what the source of

15   those documents were.  I might" -- "I might

16   be able to tell you whether it was an

17   original document or a copy of an original or

18   what.  I just don't know in every case."

19                   Do you recall that document

20   being placed in your file at any point in

21   time?

22                   MR. FARRELL:  Objection to form

23      and foundation.

24                   THE WITNESS:  No.



Page 30

```
 1   BY MR. PLACITELLA:

 2        Q.     Okay.  If you had that document

 3   in your file, where would you keep it?

 4               MR. FARRELL:  Objection to

 5        form; foundation.

 6               THE WITNESS:  Well, I -- it

 7        would depend.  If I -- if it was

 8        something that I anticipated having an

 9        ongoing need to refer to it, I would keep

10        it in my office files.  I probably -- I

11        might write something in the upper corner

12        to indicate to my secretary what I

13        intended to call it.  Or she might.  I

14        might just give it to her -- I had a very

15        capable secretary -- and tell her that

16        I'm going to need this from time to time;

17        put it some place where you can find it.

18   BY MR. PLACITELLA:

19        Q.     Well, what was her name?

20        A.     Her name was Terry, Terry

21   Richards.

22        Q.     Okay.  Now, do you know -- so you

23   -- as you sit here today, you don't have a

24   present recollection of what you did with
```



MAGNA
LEGAL SERVICES

Page 31

1    this memo when you received it; is that fair?

2         A.    Correct.  Yes.

3              MR. FARRELL:  Objection to

4         form.

5              MR. MARINO:  Objection to the

6         form of the question.

7    BY MR. PLACITELLA:

8         Q.    Would that memo have been

9    transferred to BASF at the time that you

10   stopped working for Engelhard and went to

11   work for BASF?

12             MR. MARINO:  Objection to

13        "would that."  Is the question was it?

14             MR. FARRELL:  Objection.

15             MR. PLACITELLA:  You can

16        answer.

17             MR. FARRELL:  Objection to form

18        and foundation.

19             THE WITNESS:  I can't see any

20        reason why it wouldn't have been.  I --

21        all -- all of the -- the intent was, they

22        -- they bought the company, they were

23        entitled to all of its files.

24             MR. PLACITELLA:  Okay.  Can you



Page 32

```
 1        give me Exhibit 203.

 2                 MR. MARINO:   Thank you.

 3                 MR. FARRELL:   Thank you.

 4   BY MR. PLACITELLA:

 5        Q.     I'm giving you Exhibit 203.

 6   These are your disclosures in this case for

 7   what you deem to be discoverable information.

 8   And in your disclosures, you list Vernon

 9   Hurst, and you -- and you say that his area

10   of knowledge is tests and inspections of the

11   mine in Johnson, Vermont; asbestos tests

12   and/or studies of Engelhard/BASF talc.

13                 Do you see that?

14        A.     I don't see what you just quoted

15   but --

16        Q.     It's on page 8.

17        A.     Oh.

18        Q.     And I put it up there.   Just...

19        A.     Oh, yes, I see, Vernon Hurst.

20        Q.     Okay.   Now, this was supplied to

21   us by your counsel.   Who was Vernon Hurst?

22        A.     Vernon Hurst was the head of the

23   department of geology at the University of

24   Georgia.   In fact, I believe he founded the
```



Page 33

1    department.  And we had retained his services

2    as an expert witness in a patent litigation.

3    And so I knew -- I knew him and knew that he

4    had credentials as an expert in the area.

5         Q.    Okay.  And you say that he was

6    knowledgeable about tests and inspections of

7    the mine in Johnson, Vermont.

8              Did he make an inspection of

9    the Johnson, Vermont mine, to your knowledge?

10        A.    Yes.

11        Q.    Okay.  And when was that?

12        A.    I don't recall.

13        Q.    Do you remember what -- what

14   decade it was?  Was it the '80s, the '90s?

15        A.    Not even that.  I -- I really

16   don't know.  I'd be guessing.

17        Q.    Okay.  And do you -- and it

18   further says, his -- I guess his tests and

19   inspections were about asbestos tests and/or

20   studies.

21              Do you know whether he ran any

22   tests related to the Johnson mine concerning

23   asbestos?

24        A.    I don't know.



Page 34

```
 1                    MR. FARRELL:  Objection to --
 2          objection to form.  It was an, I don't
 3          know?
 4                    MR. MARINO:  If you could just
 5          -- I'm sorry.  If you could just leave a
 6          little space after Mr. Placitella's
 7          question to give counsel and --
 8                    THE WITNESS:  Right.
 9                    MR. MARINO:  -- myself an
10          opportunity to object.
11                    THE WITNESS:  Sorry.
12                    MR. MARINO:  It's all right.
13                    THE WITNESS:  I'm accustomed to
14          the previous deposition where there was
15          no privilege.
16                    MR. FARRELL:  Not a -- not a
17          problem.
18     BY MR. PLACITELLA:
19          Q.    Okay.  Do you know --
20                    MR. FARRELL:  And the answer
21          was "I don't know;" is that correct?
22     BY MR. PLACITELLA:
23          Q.    Do you know whether Vernon Hurst
24     ever found that the Johnson mine was
```



Page 35

1    contaminated with asbestos?

2                    MR. FARRELL:  Objection to

3         form; foundation; privilege; work

4         product.

5                    Mr. Dornbusch, I instruct you

6         not to answer the question.

7    BY MR. PLACITELLA:

8         Q.    Could you answer that question,

9    sir, but for your instruction not to answer

10   it?

11                   MR. MARINO:  That's an improper

12        question.  He's been instructed not to

13        answer.  Next question.

14   BY MR. PLACITELLA:

15        Q.    Okay.  Could you answer that

16   question, sir?

17                   MR. MARINO:  Direction not to

18        answer that question.

19   BY MR. PLACITELLA:

20        Q.    Sir, you've listed Mr. Hurst as

21   somebody with discoverable information

22   concerning asbestos tests.

23                   What discoverable information

24   are you referring to?



Page 36

```
 1                    MR. MARINO:  Mr. Dornbusch has
 2          been directed not to answer the question
 3          on the grounds of attorney-client
 4          privilege.
 5                    He's now respecting that
 6          direction.
 7     BY MR. PLACITELLA:
 8          Q.    Different question.  You've
 9     listed in your Rule 26 disclosure the fact
10     that Vernon Hurst was knowledgeable about
11     asbestos testing.
12                    What -- what was the -- what
13     was his knowledge?
14                    MR. FARRELL:  Objection to
15          form; foundation.  Same instruction on
16          privilege and work product.
17                    MR. PLACITELLA:  How is it
18          privileged?
19                    MR. FARRELL:  You just asked
20          the witness what Vernon Hurst's knowledge
21          was regarding the testing of talc for
22          asbestos.  That's the same question I
23          just instructed him to answer (sic) 30
24          seconds ago.
```



Page 37

```
 1                    MR. PLACITELLA:  How is that
 2         privileged?
 3                    MR. FARRELL:  Because he would
 4         need to disclose the answer to the
 5         question that I instructed him not to
 6         answer.
 7                    MR. PLACITELLA:  How is --
 8         how's -- how is that?  What's the basis
 9         for that assertion?
10                    MR. MARINO:  He's being asked
11         to disclose information that exists by
12         virtue of the attorney-client
13         relationship.  It's a confidential
14         relationship.  You understand the
15         direction not to answer the question.
16                    MR. PLACITELLA:  No.  I'm
17         asking Mr. Farrell what is the basis for
18         your assertion that that information is
19         privileged, given the fact that it was
20         disclosed as discoverable information by
21         Mr. Dornbusch in his Rule 26 disclosure.
22                    MR. FARRELL:  Well, first of
23         all, Mr. Dornbusch doesn't control this
24         privilege.  BASF controls the privilege.
```



Page 38

```
 1          And BASF has not waived the privilege

 2          over the substance of Mr. Hurst's work or

 3          his communications with anybody at

 4          Engelhard or Cahill regarding the

 5          analysis he did.

 6                    So I can't speak to why

 7          Mr. Dornbusch listed Mr. Hurst in his

 8          initial disclosure.  I can tell you he's

 9          not capable of waiving that privilege.

10          He didn't waive the privilege.  I've

11          asserted privilege over the substance of

12          Mr. Hurst's work and his communications

13          with Engelhard and Cahill.

14                    I've instructed the witness

15          not to answer the question.  So if you

16          have another question for the witness,

17          we can move to that question.  But I

18          think I've addressed this issue.

19                    MR. PLACITELLA:  No.  I want to

20          tease this out, because I need to go to

21          the Court.

22     BY MR. PLACITELLA:

23          Q.    Can you show me where on your

24     privilege log Mr. Hurst is mentioned
```



Page 39

1    anywhere, because I couldn't find it.

2                    MR. FARRELL:  I don't have our

3           privilege log here today, Mr. Placitella.

4                    Do you have a question for

5           Mr. Dornbusch?

6                    MR. PLACITELLA:  No.  I want to

7           flesh this out, because this is an

8           important area.

9                    MR. FARRELL:  I'm not here to

10          flesh it out for you, sir.  I've

11          explained the basis for my privilege

12          objection.

13                   MR. PLACITELLA:  No, I don't

14          really --

15                   MR. FARRELL:  Did you have a

16          question for the witness?

17                   MR. PLACITELLA:  No.  I have a

18          question for you.  What is the basis for

19          your asserting privilege over what

20          Mr. Hurst found about asbestos in the

21          Johnson mine?

22                   MR. FARRELL:  I've just

23          explained it to you.

24                   MR. PLACITELLA:  What's that?



Page 40

```
 1                    MR. FARRELL:  I've just
 2         explained it to you.  Do you have a
 3         question for the witness?
 4                    MR. PLACITELLA:  No, you didn't
 5         explain it.
 6                    What is the basis for your
 7         privilege?
 8                    MR. FARRELL:  I've explained it
 9         to you.  Do you have a question for the
10         witness.  I'm not the witness.  Do you
11         have a question for Mr. Dornbusch?
12    BY MR. PLACITELLA:
13         Q.    Mr. Dornbusch, was Dr. Hurst --
14    he is -- it was Dr. Hurst, correct?
15         A.    Yes.
16         Q.    Okay.  And he was one of the
17    foremost authorities in the world in this
18    area of asbestos testing and geology?
19         A.    I don't know that.
20         Q.    Okay.
21         A.    I -- I had retained him
22    originally for something very different.
23         Q.    And what was the purpose of your
24    retainer of Dr. Hurst as related to Johnson
```


MAGNA
LEGAL SERVICES

Page 41

1   mine?

2                    MR. FARRELL:  Objection to form

3        and foundation.

4                    Are -- are you able to answer

5        that question, Mr. Dornbusch, without

6        getting into the substance of

7        communications between you and

8        Mr. Hurst -- anybody at Engelhard and

9        Mr. Hurst for that matter -- or Cahill

10       and Mr. Hurst?

11                   THE WITNESS:  No.

12                   MR. FARRELL:  Then I instruct

13       you not to answer the question on

14       privilege grounds.

15  BY MR. PLACITELLA:

16       Q.    Was he retained as -- in

17  connection with litigation?

18                   MR. FARRELL:  Objection to form

19       and foundation.

20                   THE WITNESS:  I believe so.

21  BY MR. PLACITELLA:

22       Q.    Okay.  And when was that?

23       A.    I don't recall.

24                   MR. MARINO:  Speak up a little



Page 42

 1      bit, please.

 2                  THE WITNESS:  I don't recall.

 3                  MR. MARINO:  Thank you.

 4   BY MR. PLACITELLA:

 5      Q.      And do you know why --

 6                  MR. FARRELL:  Objection to --

 7   BY MR. PLACITELLA:

 8      Q.      -- he was retained?

 9                  MR. FARRELL:  Objection to

10      form; foundation; privilege; work

11      product.

12                  I instruct you not to answer

13      the question.

14                  MR. MARINO:  It's a continuing

15      instruction not to answer questions that

16      would disclose confidential

17      communications between attorney and

18      client.

19   BY MR. PLACITELLA:

20      Q.      Okay.  Let me just go to the

21   record.  Can you go to the first page of the

22   disclosure -- actually, page 2, under

23   identity of witnesses it says, "Pursuant to

24   Rule 26(a)(1)(A)(i) of the Federal Rules of



Page 43

1    Civil Procedure, subject to and without

2    waiving the limitations set forth above,

3    Dornbusch is presently aware of the

4    individuals set forth below who may have

5    discoverable information that he may use to

6    support his defenses in this lawsuit."

7              Do you see that?

8         A.    I do.

9         Q.    Do you know, after you submitted

10   this in this case, whether BASF ever took the

11   position before today that any of the

12   information that you were disclosing was

13   privileged?

14             MR. MARINO:  Please do not

15        answer the question.

16             If you will, in drawing the

17        witness's attention to specified

18        information as you have highlighted on

19        the screen, if you could just scroll up

20        a little bit --

21             MR. PLACITELLA:  Well --

22             MR. MARINO:  -- and show him

23        the information that begins at the

24        paragraph immediately preceding.  These



Page 44

1          disclosures are made subject to the

2          reservation of all privileges and

3          protections.  Dornbusch's initial

4          disclosures are made without, in any way,

5          waiving the right to object to any

6          discovery request or to the admissibility

7          of any evidence on the grounds of

8          privilege, work product, et cetera, et

9          cetera.

10    BY MR. PLACITELLA:

11         Q.     Okay.  My question to you was,

12    before today, were you ever notified by BASF

13    that your disclosure of Dr. Hurst implicates

14    any kind of privilege.

15                    MR. FARRELL:  Objection.

16                    MR. MARINO:  How would -- how

17          would he learn that information?  Do you

18          think he is in direct contact with BASF,

19          or do you think that would have been

20          information that he would have learned

21          from counsel.

22    BY MR. PLACITELLA:

23         Q.     You can answer the question.

24                    MR. MARINO:  He cannot answer



Page 45

1          the question.

2                     I direct you not to answer the

3          question.

4                     MR. PLACITELLA:  Okay.

5                     MR. MARINO:  That question

6          seeks the disclosure of information

7          between Mr. Dornbusch and myself.  That

8          is a privilege that he controls.  And

9          that is -- this is, based upon that

10         privilege, a direction not to answer that

11         inquiry.

12    BY MR. PLACITELLA:

13         Q.    Okay.  Where did the information

14    come from that you listed Vernon Hurst for on

15    page 8?

16                     MR. FARRELL:  Objection to form

17         and foundation.

18                     Are you asking for the

19         identity of a person?

20                     MR. PLACITELLA:  No.

21    BY MR. PLACITELLA:

22         Q.    What was the source of this?  Is

23    this from your personal knowledge?

24         A.    I -- I don't -- I don't know.



Page 46

```
 1        Q.     Okay.  Do you know why you
 2   disclosed Mr. Hurst as somebody with
 3   discoverable information?
 4              MR. FARRELL:  Objection to form
 5         and foundation.
 6              MR. MARINO:  Again, when -- in
 7         my experience, Mr. Placitella, when
 8         initial disclosures are made pursuant to
 9         the Federal Rules of Civil Procedure,
10         they are typically made subject to the
11         applicable privileges.  Probing
12         Mr. Dornbusch with respect to the source
13         of this information threatens to invade
14         that privilege.  And he's directed not to
15         answer.
16   BY MR. PLACITELLA:
17        Q.     Do you have personal -- did this
18   information come from your personal
19   knowledge?
20              MR. FARRELL:  Objection to form
21         and foundation.
22              MR. MARINO:  Can you clarify
23         what you mean by "this information,"
24         please.
```



Page 47

1    BY MR. PLACITELLA:

2        Q.     The information listed Vernon

3    Hurst knows about testing and/or inspections

4    of the mine in Johnson, Vermont, asbestos

5    tests and/or studies of Engelhard/BASF's

6    talc.

7                    MR. MARINO:  Mr. Dornbusch has

8           disclosed his knowledge that Mr. Hurst

9           may be knowledgeable -- and I highlight

10          the words "may be knowledgeable" -- as to

11          tests and/or inspections of the mine in

12          Johnson, Vermont, asbestos tests and/or

13          studies of Engelhard/BASF's talc.

14                   I don't want to burden the

15          record with this sort of back and forth.

16          But I think we know the purpose of Rule

17          26 disclosures.  Mr. Dornbusch has

18          disclosed this information so that you

19          can take discovery with respect to

20          Mr. Hurst if you wish to do so; not so

21          that you can probe Mr. Dornbusch on

22          attorney-client privileged information.

23    BY MR. PLACITELLA:

24        Q.     Do you know if Mr. Hurst --



Page 48

1    Dr. Hurst is still alive?

2          A.     I don't know.

3          Q.     No.

4                 And if Dr. Hurst is, in fact,

5    dead, the only person who would have the

6    information would be yourself, correct?

7                      MR. FARRELL:  Objection to form

8          and foundation.

9                      MR. MARINO:  Same objection.

10                     THE WITNESS:  I don't know that

11         either.

12   BY MR. PLACITELLA:

13         Q.     Do you know whether Dr. Hurst

14   authored any reports related to the

15   inspection of the Johnson mine or asbestos

16   testing?

17                     MR. FARRELL:  Objection to

18         form.

19                     THE WITNESS:  I'm not aware of

20         any, no.

21   BY MR. PLACITELLA:

22         Q.     So whatever conversations you had

23   with Dr. Hurst were verbal?

24                     MR. FARRELL:  Objection to form



Page 49

1        and foundation.

2                    THE WITNESS:  Yes.

3    BY MR. PLACITELLA:

4        Q.    Okay.  And do you know why

5    those -- whatever report he gave you was only

6    verbal and never reduced to writing?

7                    MR. FARRELL:  Objection to form

8        and foundation.

9                    Do you know the answer to that

10        question, Mr. Dornbusch?

11                    THE WITNESS:  I don't know.

12        I'd have to speculate.

13                    MR. MARINO:  Do not speculate.

14                    THE WITNESS:  Right.

15    BY MR. PLACITELLA:

16        Q.    Okay.  So if Dr. Hurst is, in

17    fact, dead and he provided you information

18    concerning asbestos testing of the Johnson

19    mine, and it wasn't in writing, the only

20    person -- the only source left to get that

21    information would be from you?

22                    MR. FARRELL:  Objection to form

23        and foundation.

24    BY MR. PLACITELLA:



Page 50

1        Q.      Correct?

2                MR. FARRELL:  Assumes facts.

3                THE WITNESS:  I don't think

4        that's correct, no.

5   BY MR. PLACITELLA:

6        Q.      What other source?

7        A.      There would probably be people at

8   Cahill.

9        Q.      And who would that be?

10       A.      Probably Peter Sloane would know.

11       Q.      Okay.

12       A.      He may also have had personal

13   notes or records that would be part of his

14   files.  I don't -- I don't recall.

15       Q.      Okay.  I'm sorry if I asked -- I

16   asked you this.  I'm not sure.  Do you know

17   whether he physically went to the Johnson

18   mine, Dr. Hurst?

19       A.      I know, yes.

20       Q.      And did he?

21               MR. FARRELL:  Objection to

22       form.  It's a -- just a yes or a no.

23               THE WITNESS:  Yes.

24   BY MR. PLACITELLA:



Page 51

1          Q.      Okay.   And do you know what he

2     did at the Johnson mine?

3                          MR. FARRELL:  Objection to form

4          and foundation.

5                          Is this something that you can

6          speak to at a high level subject matter?

7          Because as soon as we get into the

8          details, it implicates the privilege.

9                          THE WITNESS:  Uh-huh.   I don't

10         know in detail what he did, no.

11    BY MR. PLACITELLA:

12         Q.      Do you know generally what he

13    did?

14         A.      I don't know everything that he

15    did.   I know some of the things he did,

16    but...

17         Q.      Which were what?

18         A.      They would be covered by the

19    privilege.

20                          MR. FARRELL:  Objection to form

21         and --

22                          MR. MARINO:  Hold on a second,

23         please.

24                          MR. FARRELL:  The witness has



Page 52

```
 1        indicated the answer would be covered by

 2        privilege, so I instruct him not to

 3        answer the question further.

 4   BY MR. PLACITELLA:

 5        Q.     Do you know whether he went to

 6   the Johnson mine with anybody but himself?

 7        A.     I don't know.

 8        Q.     Do you know whether he interacted

 9   with anybody at the Johnson mine when he was

10   there?

11        A.     I don't know.

12        Q.     When he returned from the Johnson

13   mine, he provided you with a report; is that

14   fair?

15               MR. FARRELL:  Objection to

16        form.

17               MR. MARINO:  You're asking him

18        for a yes or no --

19               MR. PLACITELLA:  Yeah.

20               MR. MARINO:  -- response?

21               THE WITNESS:  Yes.

22               MR. MARINO:  Okay.

23               THE WITNESS:  Yes.

24   BY MR. PLACITELLA:
```



Page 53

```
 1        Q.       Was any of the information that

 2   you obtained from Dr. Hurst used in the

 3   defense of an Emtal talc litigation?

 4                  MR. FARRELL:  Objection to form

 5        and foundation.

 6                  It's a yes or a no, I think,

 7        Mr. Dornbusch.

 8                  THE WITNESS:  I actually don't

 9        know.

10   BY MR. PLACITELLA:

11        Q.       Who would know that?

12                  MR. FARRELL:  Objection to

13        form; foundation.

14                  THE WITNESS:  The people

15        responsible for the defense of the talc

16        litigations.

17   BY MR. PLACITELLA:

18        Q.       And who would that be?

19        A.       The people at Cahill Gordon.

20        Q.       Okay.  Is it your belief that

21   Dr. Hurst also provided reports to people at

22   Cahill Gordon?

23                  MR. FARRELL:  Objection to

24        form.
```



Page 54

1                      THE WITNESS:  Yes.

2    BY MR. PLACITELLA:

3        Q.      Okay.   And what's the basis for

4    that belief?

5                      MR. FARRELL:  Objection to

6        form.

7                      THE WITNESS:  Cahill was the

8        counsel coordinating our defense against

9        talc litigation in general.  And this

10       would have been certainly part of the

11       overall facts regarding talc that they

12       would have needed to know.

13   BY MR. PLACITELLA:

14       Q.      And do you understand that part

15   of the defense that was being asserted by

16   Cahill Gordon was that there was no evidence

17   of asbestos contamination in the Johnson

18   mine?

19                      MR. FARRELL:  Objection to

20       form.

21                      MR. BOISE:  Objection to form.

22                      MR. FARRELL:  Objection to form

23       and foundation.

24                      MR. MARINO:  Also, can you --



Page 55

1           can you put a time frame into the

2           question, please.

3                     MR. PLACITELLA:  At any point

4           in time.

5                     MR. FARRELL:  Same objections.

6                     THE WITNESS:  No, I did not.

7       BY MR. PLACITELLA:

8           Q.    You never knew that?

9           A.    I -- if I did, I've since

10      forgotten.  I don't recall --

11          Q.    Is the information --

12          A.    -- all of that.

13          Q.    -- obtained from Dr. Hurst

14      consistent with a position that there was no

15      evidence of asbestos contamination in the

16      Johnson mine?

17                    MR. FARRELL:  Objection to

18          form; foundation; privilege; work

19          product.  I instruct him not to answer

20          the question.

21      BY MR. PLACITELLA:

22          Q.    If Dr. Hurst provided you

23      information that was inconsistent with the

24      positions that were being asserted by your



Page 56

1    counsel, do you believe you had an obligation

2    to reveal that information?

3                      MR. MARINO:  Objection to the

4         form of the question.

5                      MR. FARRELL:  Objection to

6         form; foundation.

7                      The -- you're asking him a

8         hypothetical about this?

9                      MR. PLACITELLA:  Yes, sir.

10                     MR. FARRELL:  Can you answer

11        the question, Mr. Dornbusch, without

12        implicating the content of Mr. Hurst --

13        Dr. Hurst's testing or any communications

14        between you and Cahill or other lawyers

15        for Engelhard in connection with the talc

16        litigation?

17                     MR. MARINO:  And without

18        speculating, if I may add that.

19                     MR. FARRELL:  Yeah, in my

20        question.

21                     THE WITNESS:  No.

22                     MR. FARRELL:  Then I instruct

23        you not to answer the question on

24        privilege grounds.



Page 57

1  BY MR. PLACITELLA:

2      Q.     So is it your understanding that

3  if Dr. Hurst provided you information that

4  was inconsistent with the position that you

5  were taking factually in litigation, that you

6  had no duty to disclose that?

7              MR. MARINO:  The -- the

8         question has been -- the -- you -- you

9         understand that Mr. Dornbusch, in his

10        capacity as the general counsel of

11        Engelhard, is now asserting a privilege

12        at the direction of Engelhard's successor

13        in interest.  You've asked the same

14        question that he's been directed not to

15        answer.

16             MR. PLACITELLA:  I don't think

17        so.  Can you answer that question?

18             MR. FARRELL:  It was the same

19        question I had just instructed the

20        witness not to answer.

21             MR. PLACITELLA:  That's fine.

22  BY MR. PLACITELLA:

23      Q.     Do you know who Georgia Tech was?

24      A.     The institution, yes.



Page 58

1          Q.      Okay.  Do you know whether they

2     ever did any work for Engelhard concerning

3     the testing of Emtal talc?

4          A.      I don't know.

5          Q.      Okay.  What was your first

6     involvement that you can recall with lawsuits

7     related to the talc at the Johnson mine?

8                    MR. FARRELL:  Objection to

9          form.

10                   THE WITNESS:  I'm not sure if

11         it was the first or not.  But I was

12         aware -- the earliest recollection I have

13         today is of litigation in Rhode Island.

14    BY MR. PLACITELLA:

15         Q.      Okay.  And when was that?

16         A.      That was pretty early on.

17    Probably in the '80s, mid -- early or mid

18    '80s.

19         Q.      And were there cases -- do you

20    remember that being called the Westfall case?

21         A.      I think that's right, yes.

22         Q.      You filed Affidavits in that

23    case?

24         A.      I don't know.



Page 59

```
 1        Q.     Okay.  And do you recall whether
 2   there were cases filed against Engelhard
 3   related to talc prior to Westfall?
 4                MR. FARRELL:  Objection to
 5        form; foundation.
 6                THE WITNESS:  I do not recall.
 7   BY MR. PLACITELLA:
 8        Q.     Okay.  Do you know whether there
 9   was ever any Workers' Compensation claims
10   related to talc filed against Engelhard?
11                MR. FARRELL:  Objection to
12        form.
13                THE WITNESS:  I don't know.
14                MR. PLACITELLA:  Okay.  Can you
15        give me 214 and 215.
16   BY MR. PLACITELLA:
17        Q.     You have in front of you what's
18   been marked P-214, the first page is -- says
19   Engelhard Corporation, William Salling.  Do
20   you see that?
21        A.     Yes.
22        Q.     Okay.  And if you go to the third
23   page --
24                MR. TUNIS:  Excuse me, Chris,
```



Page 60

```
 1        do you intend to show it on the screen?

 2                 MR. PLACITELLA:  Oh, I'm sorry.

 3   BY MR. PLACITELLA:

 4        Q.    The third page -- I'll just do it

 5   this way.  There's a letter to a Mr. Lockman,

 6   from the Royal Insurance Company dated

 7   July 15th, 1985.  Do you see that?

 8        A.    I do.

 9        Q.    Do you know -- do -- what was the

10   relationship between the Royal Insurance

11   Company and Engelhard in 1985, if you know?

12                 MR. FARRELL:  Objection to

13        form.

14                 THE WITNESS:  I -- I do not

15        know.

16   BY MR. PLACITELLA:

17        Q.    Okay.  Do you see where it says,

18   Re:  File number, various versus Engelhard

19   Minerals and Chemical Corp.?

20        A.    Yes.

21        Q.    Okay.  Do you know who

22   Mr. Lockman was?

23        A.    No.

24        Q.    Okay.  Do you recall a
```



1    relationship with Alexander and Alexander and

2    Engelhard while you were at Engelhard?

3         A.    No.

4         Q.    Okay.  This letter -- do you know

5    who H.A. Rhule is, who authored the letter?

6         A.    No.

7         Q.    Okay.  Here it says, Attached is

8    a copy of my April 1, 1985, letter to you.  I

9    attach also a copy of April 11, 1985, letter

10   from Kenneth Brockman of Alexander and

11   Alexander.  Your company was primary either

12   for the entire period of coverage under our

13   umbrella or your shared -- or you shared that

14   coverage with Aetna.  I will write to them

15   for information about their coverage.

16              It says, Please advise on what

17   coverage is afforded by Royal Insurance

18   Company to Engelhard and also what action you

19   have taken to defend the insured.  The

20   plaintiff's names are Leroy Kangas, Walter B.

21   Smith --

22              MR. MARINO:  Weldon B. Smith.

23   BY MR. PLACITELLA:

24        Q.    -- Weldon B. Smith, and William



Page 62

1   L. Salling.

2                    Do you see that?

3       A.     I do.

4       Q.     A reference is made that Eastern

5   Magnesium Talc Company is a subsidiary of

6   Engelhard.

7                    Do you see that?

8       A.     Yes.

9       Q.     All right.  Does that refresh

10  your memory as to whether you were involved

11  in litigation involving Engelhard and talc

12  other than the Westfall case in the early

13  1980s?

14                   MR. MARINO:  You're asking if

15        this refreshes his recollection of that?

16                   MR. PLACITELLA:  Yeah.

17                   MR. FARRELL:  Objection to form

18        and foundation.

19                   MR. MARINO:  You may answer the

20        question.

21                   THE WITNESS:  No.

22  BY MR. PLACITELLA:

23      Q.     Okay.  And can you go to -- I'll

24  put it up here -- the page that's -- that's



Page 63

1    entitled May 20th, 1985.

2                    MR. FARRELL:  Which Bates page

3        is that, Chris?

4    BY MR. PLACITELLA:

5        Q.    It's -- okay.  It's 49428.  This

6    one says, Dear Bob:  Please refer to the

7    subject litigation.  We've recently received

8    the request from one of the excess carriers

9    relevant to the status of the subject matter.

10   You will note that the matter was being

11   coordinated by the insured's counsel, Cahill

12   Gordon & Reindel, with -- and then it gives

13   you the address.  And it says, We believe

14   Mr. Howard G. Sloane is the person familiar

15   with this litigation.

16                    Do you see that?

17       A.    Yes.

18       Q.    Is that the Howard Sloane that

19   was in charge of the Engelhard litigation in

20   the early 1980s that you testified about?

21                    MR. FARRELL:  Objection to

22       form.

23                    MR. TUNIS:  Objection to form.

24                    MR. MARINO:  When you ask him,



Page 64

```
 1          is that the Howard Sloane --
 2                    MR. PLACITELLA:  Yeah.
 3                    MR. MARINO:  -- could -- could
 4          I ask you to observe the convention, when
 5          refreshing one's recollection with a
 6          document, which is to show that person
 7          the document, to ask him to review the
 8          document, and then to ask him if it
 9          refreshes his recollection, rather than
10          simply reading the document into the
11          record before we've established whether
12          it does, in fact, refresh his
13          recollection.
14     BY MR. PLACITELLA:
15          Q.    Is that the Howard -- the same
16     Howard Sloane that you testified to before?
17                    MR. MARINO:  You're asking if
18          Mr. Brockman is referring to the same
19          Howard Sloane?  You're asking
20          Mr. Dornbusch if Mr. Brockman is
21          referring to the same Howard Sloane
22          Mr. Dornbusch referred to?
23                    MR. PLACITELLA:  You can
24          answer.
```



Page 65

1              MR. FARRELL:  Objection to form

2        and foundation.

3              MR. MARINO:  Same objection.

4              THE WITNESS:  I don't know who

5        Mr. Brockman is -- is referring to.  I

6        know a Howard G. Sloane, we called him

7        Peter, at Cahill Gordon, who was

8        generally involved in defending Engelhard

9        from -- in talc litigation.

10              MR. PLACITELLA:  Okay.  Give me

11        215.

12              MR. MARINO:  Thank you.

13  BY MR. PLACITELLA:

14        Q.    I'm going to show you what's been

15  marked 215.  It's Bates No. 50872.

16              MR. BOISE:  Prefix Arrowood?

17              MR. PLACITELLA:  Yeah.

18  BY MR. PLACITELLA:

19        Q.    It's a January 24, 1985 letter

20  from Harriet Vasilopoulos.

21              Do you know who she is?

22        A.    No.

23        Q.    To Nancy Remundo.

24              Do you know who she was?



Page 66

1        A.       No.

2        Q.       Okay.  And it's cc Paulette

3   Bynoe.

4                    Do you see that?

5        A.       Yes.

6        Q.       Do you know who -- who she was?

7        A.       No.

8        Q.       What about Jesse Pagonis?

9        A.       Jesse Pagonis was the Engelhard

10   employee who was responsible for risk

11   management.

12       Q.       So when a claim came in, that was

13   under his purview?

14       A.       Yeah.  He --

15                MR. FARRELL:  Objection to

16        form.

17                THE WITNESS:  Yeah.  He -- he

18        was responsible for all coordination with

19        the insurance carriers.

20   BY MR. PLACITELLA:

21       Q.       Okay.  And specifically, what was

22   his day-to-day responsibilities?

23       A.       I'm not sure.  He was responsible

24   to have an appropriate level of insurance in



Page 67

1   effect for the company.

2       Q.    When a claim was -- when a case

3   was filed related to the Emtal talc

4   litigation, would he receive notice of that?

5       A.    Yes.

6             MR. FARRELL:  Objection to

7       form.

8   BY MR. PLACITELLA:

9       Q.    And would he then communicate

10  that to the insurance carrier as part of his

11  job?

12      A.    I -- I --

13            MR. FARRELL:  Objection to

14      form.

15            THE WITNESS:  -- I don't know.

16  BY MR. PLACITELLA:

17      Q.    Do you know whether it was his

18  responsibility to communicate all lawsuits to

19  the insurance carrier related to Emtal talc?

20            MR. FARRELL:  Objection to

21      form.

22            THE WITNESS:  I would think so.

23      I don't know.

24  BY MR. PLACITELLA:



Page 68

```
 1        Q.      Now, do you see the -- the next

 2   page, I've highlighted the third and fourth

 3   names down.  Leroy Kangas and Willia Salling.

 4                  Do you see that?

 5        A.      I do.

 6        Q.      Okay.  Do you see where it talks

 7   about ACC year all the way at the -- at the

 8   end?  Do you see the column, ACC --

 9        A.      Oh.

10        Q.      -- YR?  I'm sorry.

11        A.      Yes.  Yes.

12        Q.      Okay.  Do you know what that

13   stands for?

14        A.      No.

15        Q.      Is that something we'd have to

16   ask Jesse Pagonis?

17                  MR. FARRELL:  Objection to form

18        and foundation.

19                  THE WITNESS:  He -- he would

20        know more than I do on how to read this.

21   BY MR. PLACITELLA:

22        Q.      Okay.  Do you know whether the

23   findings of Dr. Hurst were ever communicated

24   to Jesse Pagonis?
```



Page 69

```
 1                    MR. FARRELL:  Objection to form
 2        and foundation.
 3                    THE WITNESS:  I do not know.
 4   BY MR. PLACITELLA:
 5        Q.    Should they have been in a normal
 6   course of business?
 7                    MR. FARRELL:  Objection to form
 8        and foundation.
 9                    THE WITNESS:  I'm -- I'm not
10        sure.
11   BY MR. PLACITELLA:
12        Q.    Do you know whether the findings
13   of Dr. Hurst were ever communicated to
14   Engelhard's insurance carrier?
15                    MR. FARRELL:  Objection to form
16        and foundation.
17                    THE WITNESS:  I do not know.
18   BY MR. PLACITELLA:
19        Q.    Should they have been in the
20   normal course of business?
21                    MR. FARRELL:  Same objections.
22                    THE WITNESS:  I don't know.
23                    MR. PLACITELLA:  Okay.  Give me
24        Dornbusch-2.
```



Page 70

```
 1    BY MR. PLACITELLA:

 2         Q.     I'm going to show you what's been

 3    marked -- pre-marked as Dornbusch-2.  I

 4    represent to you these are excerpts from the

 5    BASF privilege log in this case.  And I want

 6    to just ask you some questions about that.

 7    And if you can go to page --

 8              MR. FARRELL:  This is -- this

 9         is something you made, Chris?

10              MR. PLACITELLA:  Yes.  I culled

11         it and made it.

12    BY MR. PLACITELLA:

13         Q.     -- page 11.  Oh, sorry.  Page 11,

14    the entry --

15              MR. BOISE:  Chris, is this -- I

16         don't have a copy of this.  Is this

17         page 11 of the log or page 11 of your

18         culling?

19              MR. PLACITELLA:  The culling,

20         right.  What we did is we just sifted for

21         names, okay.  But it's all the original

22         information.

23              MR. COREN:  Actually, it's

24         page 1 of the exhibit.  The numbers on
```



Page 71

```
 1        the bottom all say 11.

 2                    MR. TUNIS:  I'm sorry, it's

 3        page 1 of.

 4                    MR. COREN:  It's actually the

 5        first page of the exhibit.

 6                    MR. MARINO:  These are not

 7        numbered pages.

 8                    MR. PLACITELLA:  Correct.

 9                    MR. MARINO:  I mean, they're

10        all -- they all are numbered 11.

11                    MR. PLACITELLA:  Well, that's

12        not good.  So blame -- blame Mr. Coren.

13                    MR. BOISE:  You.

14    BY MR. PLACITELLA:

15        Q.    So you see where it says

16    privilege number 873?

17                    MR. MARINO:  We'll make a note

18        of that.

19                    MR. PLACITELLA:  873.  He gave

20        me a --

21                    MR. COREN:  I actually sent him

22        the replacement that has the -- has the

23        data.

24    BY MR. PLACITELLA:
```



Page 72

```
 1      Q.     Do you want me to find it for
 2  you?
 3      A.     No.  I found it.
 4      Q.     Okay.
 5             MR. FARRELL:  So where -- where
 6      are we then?
 7  BY MR. PLACITELLA:
 8      Q.     Where it says privilege 873,
 9  4/30/1984.
10             Do you see that?
11      A.     I do, yes.
12      Q.     And that's an exchange between --
13             MR. FARRELL:  One -- one
14      moment, please.  Would you give me the
15      priv entry again, please.
16             MR. PLACITELLA:  873.
17             MR. FARRELL:  Are they -- are
18      these sorted by priv numbers?
19             MR. COREN:  No.  They're sorted
20      by date.
21             MR. BOYLE:  It's 4/30/84.
22             MR. COREN:  It's a tad easier
23      to read them and make sense of them.
24             MR. FARRELL:  Okay.  Thank you.
```



Page 73

1    BY MR. PLACITELLA:

2        Q.    This is an entry reflecting a

3    communication between Mr. Sloane, yourself,

4    and Mr. Halket.

5                    Do you see that?

6        A.    Yes.

7        Q.    And it says, memo and attachment

8    relating to status report regarding Schwartz

9    litigation?

10                   MR. MARINO:   Transmitting

11        status.

12   BY MR. PLACITELLA:

13       Q.    Transmitting.   Do you see that?

14       A.    Yes.

15                   MR. MARINO:   Regarding Schwartz

16        litigation.

17   BY MR. PLACITELLA:

18       Q.    What's a status report, if you

19   know?

20                   MR. FARRELL:   Objection to

21        form.

22                   THE WITNESS:   A status report

23        would be a memorandum or a document of

24        some sort containing the current status



Page 74

1          of some matter.

2     BY MR. PLACITELLA:

3          Q.     So can we glean from this entry

4     that as of April 30th, 1984, there was a case

5     pending relate -- called Swartz?

6                    MR. FARRELL:  Objection to

7          form.

8                    THE WITNESS:  It -- it would

9          appear that way.

10    BY MR. PLACITELLA:

11         Q.     Okay.  And underneath that, with

12    privilege entry 1516, there is an -- it

13    represents an exchange between yourself and

14    an L. Friedman.  Who's L. Friedman?

15                   MR. FARRELL:  I think that's a

16         J. Friedman.

17                   THE WITNESS:  Yeah, I think --

18                   MR. PLACITELLA:  A J. Friedman.

19                   THE WITNESS:  I think it looks

20         like a J.  But I don't recall any

21         Friedman.

22    BY MR. PLACITELLA:

23         Q.     Okay.  And it talks about

24    Dynatron/Bondo talc litigation.



Page 75

1                    Do you see that?

2         A.    Yes.

3         Q.    Were you involved in litigation,

4    to your recollection, in 1984 with Dynatron

5    corporation over the product Bondo?

6               MR. FARRELL:  Objection to form

7         and foundation.

8               THE WITNESS:  I have no

9         recollection of that.

10   BY MR. PLACITELLA:

11        Q.    Does that appear to represent to

12   you that there were cases pending in 1984

13   related to the Dynatron Bondo talc

14   litigation?

15              MR. MARINO:  Objection to the

16        form of the question.

17              MR. FARRELL:  Objection.

18        Objection to form and foundation; calls

19        for speculation.

20              THE WITNESS:  I mean, that --

21        all I can do is read what's here.  It --

22              MR. MARINO:  Right.

23              THE WITNESS:  It says, Letter

24        regarding Dynatron/Bondo talc



Page 76

 1      litigations.

 2   BY MR. PLACITELLA:

 3      Q.    Right.

 4            That wasn't the Westfall case,

 5   correct?

 6            MR. FARRELL:  Objection to form

 7      and foundation.

 8            THE WITNESS:  I don't know.

 9   BY MR. PLACITELLA:

10      Q.    Can you go down to entry 1561.

11            MR. TUNIS:  Chris, if you could

12      put it back on the screen.

13            MR. PLACITELLA:  Uh-huh.  It's

14      up.

15            THE WITNESS:  Yes.

16   BY MR. PLACITELLA:

17      Q.    Do you see where it says

18   12/13/1985?

19      A.    Yes.

20      Q.    Okay.  See where it says, Letter

21   containing attorney-client communications

22   regarding Smith versus Emtal litigation?

23      A.    Yes.

24      Q.    Does that indicate to you there



Page 77

1    was a case pending in 1985 called Smith?

2                    MR. FARRELL:  Objection to form

3        and foundation.

4                    THE WITNESS:  It would -- would

5        appear to do that, yes.

6    BY MR. PLACITELLA:

7        Q.    And there was an exchange

8    concerning the Smith case between yourself

9    and Mr. Sloane, according to this, in

10   December 1985, correct?

11                   MR. FARRELL:  Objection to form

12       and foundation.

13                   MR. MARINO:  That's what the

14       privilege log says.

15   BY MR. PLACITELLA:

16       Q.    Right?

17       A.    That's what it says, yes.

18       Q.    Okay.  And if a representation

19   was -- do you know when the Westfall case

20   settled?

21       A.    I don't know.

22       Q.    Okay.  Assume that's -- that it

23   settled in late 1983.  Okay?

24       A.    Okay.



Page 78

1      Q.     Does that entry indicate to you

2  that there was a case that was pending after

3  the Westfall case settled before 1987?

4      A.     No.

5              MR. FARRELL:  Objection to form

6         and foundation; calls for speculation.

7              MR. MARINO:  I join in those

8         objections; and, in fact, to the entire

9         line of questioning about this.  You're

10        just showing Mr. Dornbusch a privilege

11        log and reading him entries from the

12        privilege log.

13             THE WITNESS:  Well, all I can

14        say is what's on the piece of paper.  It

15        has a date, 12/13/85, and it refers to

16        litigation Smith versus Emtal.

17  BY MR. PLACITELLA:

18      Q.     Okay.  Now, in terms of your

19  responsibilities for the Emtal litigation,

20  were you in -- were you in charge of

21  overseeing and managing the litigation?

22             MR. FARRELL:  Objection to

23        form.

24             THE WITNESS:  I had delegated



```
1        that responsibility to Cahill Gordon.  I

2        was the company contact.  I mean

3        eventually, I would -- ultimately, I

4        would receive reports from them on an

5        exception basis or I might ask for a -- a

6        routine report or an update.  But I

7        wouldn't say that I was directly involved

8        in supervising the litigation.

9  BY MR. PLACITELLA:

10       Q.     What -- when you say routine

11  report, what do you mean by that?

12                MR. FARRELL:  Objection to

13       form.

14                THE WITNESS:  Well, once -- I

15       don't know, maybe several times a year, I

16       might ask for an updated status report.

17  BY MR. PLACITELLA:

18       Q.     Okay.  And what would be the

19  subject of a status report?  What would be

20  included, without divulging any privileged

21  communications?

22       A.     Well, how many cases there were,

23  where they were, what the status -- how far

24  advanced they were, whether there had been
```



Page 80

1    any settlements made, that sort of thing.

2         Q.    And did Cahill Gordon keep a

3    running account of that kind of information?

4    Do you know?

5              MR. FARRELL:  Objection to

6         form.

7              THE WITNESS:  I don't know what

8         they kept.  They were generally on top of

9         all that.

10   BY MR. PLACITELLA:

11        Q.    Okay.  So if you asked them at

12   any point in time, for example, tell -- tell

13   me how many cases settled and for what, they

14   would be able to tell you that?

15             MR. FARRELL:  Objection to form

16        and foundation.

17             THE WITNESS:  They might have

18        to do a little work, but -- to pull it

19        together, but yes.

20   BY MR. PLACITELLA:

21        Q.    Okay.  So -- and who would be the

22   person in charge at Cahill Gordon who would

23   assemble that kind of information for you?

24             MR. FARRELL:  Objection to



Page 81

```
 1    form.
 2                 THE WITNESS:  Well, I would
 3          direct my request, probably, to Peter
 4          Sloane.
 5                 MR. PLACITELLA:  Okay.
 6                 THE WITNESS:  But there was a
 7          paralegal who was -- did a lot of that
 8          sort of routine handling of data who
 9          would probably have actually done the
10          work.
11    BY MR. PLACITELLA:
12          Q.    Is that Michael Sullivan?
13          A.    Yes.
14          Q.    Okay.  And would you, in your
15    reports, also receive information on cases
16    that were dismissed and the reason for
17    dismissals?
18                 MR. FARRELL:  Objection to
19          form; foundation.
20                 THE WITNESS:  Yes.
21    BY MR. PLACITELLA:
22          Q.    Okay.  And is that the kind of
23    information that Cahill Gordon would keep
24    record of --
```



Page 82

```
 1                  MR. FARRELL:  Objection.
 2   BY MR. PLACITELLA:
 3       Q.     -- and that you could access if
 4   you needed it?
 5                  MR. FARRELL:  Objection to form
 6       and foundation.
 7                  THE WITNESS:  Yes.
 8   BY MR. PLACITELLA:
 9       Q.    Okay.  Now, when you received
10   these status reports, what was done with them
11   physically after you read them?
12                  MR. FARRELL:  Objection to
13       form.
14                  THE WITNESS:  I'm not -- not
15       sure.  I imagine I filed them.
16   BY MR. PLACITELLA:
17       Q.    Okay.  And where would you file
18   them?
19       A.    I'd give them to my secretary and
20   she probably had a file called talc
21   litigation status reports, something like
22   that.
23       Q.    Okay.  And I'm sorry if you told
24   me this, but how often would you get them?
```



Page 83

1               MR. FARRELL:  Objection to

2        form.

3               THE WITNESS:  Probably two,

4        maybe three times a year.

5   BY MR. PLACITELLA:

6        Q.    Okay.  Would Engelhard keep its

7   own record of the cases that were settled or

8   dismissed?

9               MR. FARRELL:  Objection to

10       form.

11              THE WITNESS:  I don't think so.

12              MR. PLACITELLA:  Okay.

13              MR. MARINO:  Chris, we've been

14       going a little bit more than an hour.  Do

15       you think Mr. Dornbusch might have a

16       five-minute break?

17              MR. PLACITELLA:  Absolutely.

18       Any time you want.

19              MR. MARINO:  Thank you very

20       much.

21              MR. PLACITELLA:  Any time you

22       want.

23              MR. MARINO:  Thank you.

24              THE VIDEOGRAPHER:  The time is



Page 84

```
 1          now 10:12 a.m.  We're going off the

 2          record.

 3                    (Whereupon, there was a

 4               discussion held off the record.)

 5                    (Whereupon, a brief recess was

 6               taken.)

 7                    THE VIDEOGRAPHER:  The time is

 8          now 10:20 a.m.  We are back on the

 9          record.

10     BY MR. PLACITELLA:

11          Q.     Do you have a general

12     recollection of other cases in addition to

13     Westfall being -- pending around that time?

14                    MR. FARRELL:  Objection to

15          form; foundation.

16                    THE WITNESS:  No, not really.

17     BY MR. PLACITELLA:

18          Q.     Okay.  And other than receiving

19     status reports from Cahill, what other

20     interaction did you have with Cahill related

21     to the Emtal litigation generally?

22                    MR. FARRELL:  Objection to

23          form.  I think Mr. Dornbusch should just

24          be limited to category subject matter,
```



Page 85

1         something high level, while preserving

2         any applicable privileges.

3                  THE WITNESS:  Uh-huh.  Nothing

4         specific.  Cahill Gordon represented us

5         in a number of matters.  And with

6         litigation, it would be the same team of

7         lawyers, so it was not uncommon for me to

8         have a meeting with somebody like Peter

9         Sloane and go over everything they were

10        doing for us at that time.

11   BY MR. PLACITELLA:

12        Q.    Okay.  In the context of the talc

13   litigation, would you receive copies of

14   depositions of Engelhard executives when they

15   were deposed --

16                  MR. FARRELL:  Objection to

17        form.

18   BY MR. PLACITELLA:

19        Q.    -- as a matter of course?

20        A.    Either I would or -- or someone

21   on my staff would.

22        Q.    Okay.  And would you receive

23   copies of Engelhard -- signed deposition of

24   copies -- strike that.



Page 86

1              Would you receive copies of

2    depositions of Engelhard scientists who were

3    deposed?

4                   MR. FARRELL:  Objection to

5         form.

6                   THE WITNESS:  Someone at

7         Engelhard would, yes.

8    BY MR. PLACITELLA:

9         Q.     Okay.  I want to just ask you

10   some questions about the lawyers at -- in the

11   legal department who worked on the talc

12   litigation.  Were there lawyers that worked

13   under you at some point that were assigned to

14   the Emtal talc litigation at Engelhard?

15        A.     Well, not to the litigation per

16   se, but to the general talc business.  I know

17   Tom Halket was involved.  I don't know if

18   anyone -- if there was someone before or

19   after Tom.  But I know Tom -- Tom was

20   involved.

21        Q.     And what were -- as it related to

22   the talc litigation, what were his

23   responsibilities?

24        A.     Well, to ensure that Cahill had



Page 87

1    everything they needed from us to conduct the

2    defense and to -- well, that was basically

3    it, make sure that they didn't -- if -- if

4    they needed anything, that they got it.

5           Q.     Did he attend depositions?

6                  MR. FARRELL:  Objection to

7           form.

8                  THE WITNESS:  I think he did.

9    BY MR. PLACITELLA:

10          Q.     Okay.  And do you remember

11   when -- at what point in time Tom Halket left

12   Engelhard?

13          A.     I -- I remember that it was early

14   in January of some year.  Which year, I don't

15   know.  But the reason I remember, we -- there

16   was a discussion about his bonus for the

17   previous year.

18          Q.     Did you give him a good one?

19                 You don't have to answer that.

20          A.     No.  We gave him whatever we

21   would have given him.  He worked for the full

22   year.

23          Q.     Okay.  And who is Lester Fliegel?

24          A.     Les was an associate general



Page 88

1    counsel under me.  He was probably -- I think

2    he was the most senior lawyer, other than

3    myself, in the legal department.

4         Q.    And did he work on the Emtal talc

5    litigation?

6         A.    Not to my recollection.

7         Q.    Okay.  Do you know whether Tom

8    Halket, when he worked at Engelhard, was

9    aware of the findings of Dr. Hurst?

10                  MR. FARRELL:  Objection to

11        form.

12                  THE WITNESS:  I don't know.

13   BY MR. PLACITELLA:

14        Q.    Okay.  What about a Mr. Hassett,

15   do you recall him?

16        A.    Oh, yes.

17        Q.    Okay.  And did he work on the

18   talc litigations?

19        A.    I don't think so.

20        Q.    Okay.  Was there a paralegal who

21   was assigned to the talc litigation inside of

22   Engelhard?

23        A.    No.

24        Q.    Who was physically in charge of



Page 89

1    the talc litigation files at Engelhard?

2                    MR. FARRELL:  Objection to

3         form; foundation.

4                    THE WITNESS:  Well, it assumes

5         that there were talc litigations files as

6         such.  Halket would have kept his own

7         files related to the business.  I would

8         have done the same.  At -- at some point,

9         as it became more and more dated, those

10        files would have gone to off-site

11        storage.

12   BY MR. PLACITELLA:

13        Q.    So let's assume, for example, a

14   deposition is transferred from Cahill to

15   your -- your offices -- and when I say your

16   offices, I mean the legal department at

17   Engelhard --

18        A.    Uh-huh.

19        Q.    -- what typically would be done

20   with that deposition?

21                    MR. TUNIS:  Objection to form.

22                    MR. FARRELL:  Objection to form

23        and foundation.

24                    THE WITNESS:  Well, I can tell



Page 90

```
 1        you what I would do.  I don't know -- I
 2        imagine what Tom would do would have been
 3        very similar.  I just put it in a file,
 4        labeled Hemstock deposition or whoever it
 5        was.  And it would be a subfile of the
 6        Emtal talc litigation.
 7   BY MR. PLACITELLA:
 8        Q.    Okay.  And where would that be
 9   physically located?
10        A.    It would have been in the -- the
11   legal department for a time.  And as it got
12   older, it would have gone to off-site
13   storage.
14        Q.    Okay.  And where in the legal
15   department physically?
16             MR. FARRELL:  Objection to
17        form.
18             THE WITNESS:  Well, my office
19        was on the tenth floor of the building.
20        I shared a file room with the HR people.
21        And it would have been in there, in our
22        files.  In the legal department, they had
23        their own files in the wall, you know,
24        lining the halls.
```



Page 91

BY MR. PLACITELLA:

    Q.    Okay.  I want to talk to you a
little bit about the responsibilities of
Cahill.

            Now, you hired them as
national counsel; is that fair?

    A.    I don't think I used that title,
but yes.

    Q.    Okay.

    A.    I mean, that's the role they
played.

    Q.    And what was their -- what were
their responsibilities generally as national
counsel in the Emtal talc litigation?

            MR. FARRELL:  Objection to
    form.

            THE WITNESS:  Well, to
    coordinate our defense in cases that came
    up, wherever -- wherever they came up in
    different states.

BY MR. PLACITELLA:

    Q.    If discovery responses were
prepared in a particular case, would they be
reviewed by in-house legal department, excuse



Page 92

1    me, at Engelhard before they went out?

2                    MR. FARRELL:  Objection to

3          form; foundation.

4                    THE WITNESS:  Probably not.

5          Not in the latter stages, when it be --

6          at the point where it became fairly

7          routine, I would think not.

8    BY MR. PLACITELLA:

9          Q.    So at what point was that, where

10   it became fairly routine?

11         A.    When there --

12                    MR. FARRELL:  Objection to form

13         and foundation.

14                    THE WITNESS:  Yeah.  I'm sorry.

15         When there were more than just a handful.

16   BY MR. PLACITELLA:

17         Q.    So at that point, if some -- if

18   Answers to Interrogatories were prepared, for

19   example, in a case, they would not be

20   reviewed by any -- how -- anyone in-house, in

21   the in-house legal department?  Is that what

22   you're saying?

23                    MR. FARRELL:  Objection to form

24         and foundation.



Page 93

```
 1                      THE WITNESS:  Not unless there
 2          was something that was unique about them.
 3   BY MR. PLACITELLA:
 4          Q.    Okay.  And who developed the
 5   defense strategy for the Emtal talc
 6   litigation?
 7                      MR. FARRELL:  Objection to
 8          form.
 9                      THE WITNESS:  Well, to the
10          extent that there was an overall
11          strategy, I guess you would say it
12          would -- would have been me, working in
13          conjunction with Cahill.
14   BY MR. PLACITELLA:
15          Q.    Okay.  And who made the selection
16   of local counsel to work on the Emtal talc
17   litigation?
18          A.    Cahill Gordon.
19          Q.    Okay.
20          A.    With -- with my blessing.
21          Q.    Okay.  Was local counsel able to
22   take a position in litigation about facts --
23   factual information without your approval?
24                      MR. FARRELL:  Objection to form
```



Page 94

```
 1        and foundation.

 2                  THE WITNESS:  Yes.

 3    BY MR. PLACITELLA:

 4        Q.    Were they able to take a position

 5    in litigation concerning factual information

 6    without approval from Cahill Gordon?

 7                  MR. FARRELL:  Same objections.

 8                  THE WITNESS:  I would think

 9        not.

10                  MR. PLACITELLA:  Okay.

11                  THE WITNESS:  I hope not.

12    BY MR. PLACITELLA:

13        Q.    Did you authorize Cahill Gordon

14    to send letters to plaintiffs' counsel

15    related to the Emtal talc litigation?

16                  MR. FARRELL:  Objection to form

17        and foundation.

18                  MR. MARINO:  Are you asking as

19        a general matter?

20                  MR. PLACITELLA:  Yes.

21                  THE WITNESS:  In general, I

22        would consider that part of defending the

23        company, yes.

24    BY MR. PLACITELLA:
```



Page 95

1  Q.  Okay.  Would you authorize, in

2 general, letters sent by Cahill Gordon,

3 making representation concerning the

4 availability of evidence in the Emtal talc

5 litigation?

6      MR. FARRELL:  Objection to form

7   and foundation.

8      THE WITNESS:  Only as part of

9   their general representation of the

10   company.

11 BY MR. PLACITELLA:

12  Q.  Okay.  Would they make you aware

13 of representations they were making

14 concerning the availability of evidence in

15 the Emtal talc litigation?

16      MR. FARRELL:  Same objections.

17      Can I have the question,

18   please.

19      (Whereupon, the court reporter

20    read back the record as requested.)

21      MR. FARRELL:  This is just a

22   generic subject-matter-type question,

23   Mr. Dornbusch, not anything specific or

24   specific communications.



Page 96

1                    THE WITNESS:  Uh-huh.  Probably

2       not, unless there was something unique.

3    BY MR. PLACITELLA:

4       Q.     When you say "unique," what do

5    you mean by that?

6       A.     Something different, something

7    out of the ordinary.

8       Q.     I'm not sure what you mean by

9    "out of the ordinary."  Could you explain?

10                   MR. FARRELL:  Objection to

11      form.

12   BY MR. PLACITELLA:

13      Q.     Give me an example if you can

14   or --

15      A.     Well, there were literally

16   hundreds of cases.  If there was something

17   that appeared in one but not in 99 others, I

18   would expect them to make me aware of it.

19      Q.     Okay.

20      A.     But if it just fell into the same

21   pattern, I wouldn't.

22      Q.     Were they authorized to serve

23   responses to written discovery on behalf of

24   Engelhard?  When I say "they," I mean Cahill



Page 97

1   Gordon.

2       A.     Yes.

3               MR. FARRELL:  Objection to

4       form.

5   BY MR. PLACITELLA:

6       Q.     Okay.  Were they permitted to

7   serve answers to written discovery without

8   your approval?

9               MR. FARRELL:  Objection to form

10      and foundation.

11  BY MR. PLACITELLA:

12      Q.     Your expressed approval on a

13  specific case.

14              MR. FARRELL:  Objection to form

15      and foundation.

16              THE WITNESS:  Yes.

17  BY MR. PLACITELLA:

18      Q.     Did they have direct access --

19  when I say "they," I mean Cahill Gordon.  Did

20  they have direct access to Engelhard

21  executives or research scientists in order to

22  respond to discovery in the Engelhard talc

23  litigation?

24              MR. FARRELL:  Objection to



Page 98

```
 1        form; foundation.

 2                THE WITNESS:  To -- to the

 3        extent they needed it, yes.

 4   BY MR. PLACITELLA:

 5        Q.     Okay.  And that's not something

 6   they would have to go through the legal

 7   department for?

 8                MR. FARRELL:  Objection to form

 9        and foundation.

10                THE WITNESS:  They wouldn't

11        have to go through the legal department,

12        especially once they had established who

13        the right people were to -- to give them

14        the information they required.  But as a

15        practical matter, they probably would.

16   BY MR. PLACITELLA:

17        Q.     Okay.  Who made the

18   recommendations to Cahill Gordon as to the

19   source of information that was required to

20   answer discovery in the talc litigation?  Who

21   at Engelhard?

22                MR. FARRELL:  Objection to form

23        and foundation.

24                THE WITNESS:  Well, initially,
```



Page 99

1          either I would or Tom Halket.  It would

2          have been a lawyer who would have

3          directed them to the right person,

4          probably in -- in research.

5     BY MR. PLACITELLA:

6          Q.    Okay.  Did you ever direct, for

7     example -- scratch that.

8                You have a recollection that

9     Dr. Hemstock testified in the Westfall case?

10                    MR. FARRELL:  Objection to

11          form.

12                    THE WITNESS:  I don't have a

13          recollection.  I'm not surprised to hear

14          it, yes.

15     BY MR. PLACITELLA:

16          Q.    All right.  And he was the head

17     of research and development?

18          A.    Yes.  Yes, he was.

19          Q.    Okay.  And did you know who on

20     Emil Triglia was?

21          A.    Yes.

22          Q.    And who was he?

23          A.    He, I think, was -- had a senior

24     position with the unit in research that did



Page 100

1    testing and that kind of thing.

2         Q.    Okay.  And Peter Gale, do you

3    know who he is?

4         A.    I know the name, but I don't

5    know -- and I think he was a former employee.

6    But I don't know what he did when he was

7    there.

8         Q.    Okay.  Do you have a recollection

9    of making Dr. Hemstock or Dr. Triglia

10   available to the Cahill Gordon firm to

11   provide information to respond to discovery

12   in the Emtal talc litigation?

13              MR. FARRELL:  Objection to form

14        and foundation.

15              THE WITNESS:  No.

16   BY MR. PLACITELLA:

17        Q.    Okay.  Would that have been

18   something -- well, strike that.

19              Did Dr. Hemstock have

20   information relevant to the testing of Emtal

21   talc to your knowledge?

22              MR. FARRELL:  Objection to form

23        and foundation.

24              THE WITNESS:  I believe he did.



Page 101

1    BY MR. PLACITELLA:

2         Q.    What about Dr. Triglia?

3              MR. FARRELL:  Same objections.

4              THE WITNESS:  I think he

5         probably did.

6    BY MR. PLACITELLA:

7         Q.    Okay.  Was -- was the information

8    that was in the possession of Dr. Hemstock

9    and Dr. Triglia concerning the testing of

10   Emtal talc made available to Cahill Gordon in

11   order to respond to discovery requests?

12             MR. BOISE:  Object to the form

13        of the question; foundation.

14             THE WITNESS:  I would -- I

15        would assume that it was.

16   BY MR. PLACITELLA:

17        Q.    All right.  And how would that

18   information be made available?

19             MR. BOISE:  Same objections.

20             THE WITNESS:  Well, I -- I

21        don't know.  It would depend.  They would

22        probably come out, meet with the person,

23        talk to him.  If there was a paper copy

24        of something that they had done, they'd



Page 102

1          give a copy of it to Cahill.

2                    MR. TUNIS:  I'm going to object

3          to the answer to the extent that it seems

4          clear the witness's answer is based on

5          assumptions rather than on a

6          recollection.

7                    THE WITNESS:  That's true.

8     BY MR. PLACITELLA:

9          Q.    Do you have any evidence that

10    after the Westfall case the identity of

11    either Dr. Hemstock or Dr. Triglia were ever

12    made known in any case involving Engelhard

13    talc?

14                    MR. FARRELL:  Objection to form

15          and foundation.

16                    THE WITNESS:  I -- I have no --

17          no such information.

18    BY MR. PLACITELLA:

19          Q.    Okay.  I want to ask you some

20    questions about -- some additional questions

21    about the reporting requirements that you

22    imposed on the Cahill Gordon firm as it

23    relates to the talc litigation.

24                    Did they have any direct --



Page 103

```
 1    when I say "they," I mean Cahill Gordon --

 2    direct contact with your insurance carriers

 3    related to the talc litigation?

 4                      MR. FARRELL:  Objection to

 5         form.

 6                      THE WITNESS:  I'm not sure.

 7    BY MR. PLACITELLA:

 8         Q.    Okay.  Did they have any direct

 9    contact with the auditors for Engelhard

10    related to the talc litigation?

11                      MR. FARRELL:  Objection to

12         form.

13                      THE WITNESS:  They would be

14         made available to the auditors on a

15         regular basis.  And the auditors would --

16         were free to ask them whatever questions

17         they wanted.  I believe they did that

18         without me present, at their request,

19         probably.

20    BY MR. PLACITELLA:

21         Q.    Do you have a name of a person

22    who -- at the auditor who they would interact

23    with?

24         A.    That changed from time to time.
```



Page 104

```
 1    We had Arthur Anderson at the beginning of my

 2    tenure.  They had a conflict.  And we then

 3    had -- I think we may have had

 4    Pricewaterhouse.  Later we had Coopers &

 5    Lybrand.  And I'm not very good with names.

 6    I don't remember who the person was.  There

 7    was a Robin Amesbury at one of point who was

 8    our contact.  But I -- I'm not sure what

 9    company he was with.

10         Q.     What kind of information,

11    generally, would they be required to provide

12    the auditors as related to the talc

13    litigation?

14              MR. FARRELL:  Objection to form

15         and foundation.

16              THE WITNESS:  I don't know.

17         I -- they were -- their instructions were

18         to answer any questions they were asked.

19         The auditors were generally interested in

20         litigation that could have a significant

21         financial impact on the corporation and

22         on the defenses that were being asserted.

23         And they'd always try to get a likelihood

24         of success prognosis, that sort of thing.
```



Page 105

```
 1    BY MR. PLACITELLA:

 2         Q.     And who at Cahill Gordon would be

 3    the person, if you know, that was the point

 4    on that exchange with your auditors?

 5         A.     Certainly Peter Sloane in later

 6    years.  At the beginning of the period, when

 7    people was more junior, I don't know.  It

 8    might have been Ike Cohen himself or possibly

 9    David Hyde.

10         Q.     Okay.  And was the likelihood of

11    future similar Engel -- Emtal cases something

12    that would have been required to be disclosed

13    by Cahill to the auditors?

14              MR. FARRELL:  Objection to form

15         and foundation.

16              MR. BOISE:  Objection to form.

17              THE WITNESS:  I don't know.

18    BY MR. PLACITELLA:

19         Q.     Before a case was settled, did

20    Cahill Gordon have to get authorization from

21    somebody in-house at Engelhard?

22              MR. FARRELL:  Objection to form

23         and foundation.

24    BY MR. PLACITELLA:
```



Page 106

```
 1        Q.      If you know.

 2        A.      Yes.

 3        Q.      Okay.  And who would that person

 4   be?  Who would they get the authorization

 5   from?

 6                MR. FARRELL:  Objection to form

 7        and foundation.

 8                THE WITNESS:  They'd get it

 9        from me.

10   BY MR. PLACITELLA:

11        Q.      Okay.  Would they have to provide

12   you with a reason for their recommendation

13   for a particular settlement amount?

14                MR. FARRELL:  Objection to form

15        and foundation.

16                THE WITNESS:  We'd have a

17        discussion about it.

18   BY MR. PLACITELLA:

19        Q.      Okay.  And were records kept

20   concerning the settlements and the reasons

21   for the settlements --

22                MR. FARRELL:  Objection to form

23        and foundation.

24   BY MR. PLACITELLA:
```



Page 107

1      Q.      -- as it relates specifically to

2   the Engelhard talc litigation?

3                  MR. FARRELL:  Same objections.

4                  THE WITNESS:  Not to my

5       knowledge.

6   BY MR. PLACITELLA:

7      Q.      Okay.  Did Cahill Gordon have a

8   defense budget for their -- for the defense

9   of the talc litigation?

10                  MR. FARRELL:  Objection to

11       form.

12                  THE WITNESS:  No.

13   BY MR. PLACITELLA:

14      Q.      So their budget was unlimited?

15                  MR. PLACITELLA:  Objection to

16       form.

17                  THE WITNESS:  Yes.

18   BY MR. PLACITELLA:

19      Q.      Okay.  In terms of -- how did the

20   billing occur, just for the talc litigation?

21                  MR. FARRELL:  Objection to form

22       and foundation.

23   BY MR. PLACITELLA:

24      Q.      If you know.



Page 108

1        A.        Well, we would receive a bill

2     monthly.  And there would be -- when I say a

3     bill, there would be actually a series of

4     bills, a separate one for each matter.  And

5     there would be a general memorandum that

6     would summarize the work that was done for

7     each matter.  Talc -- the talc litigation

8     would be one of them.

9                     And I would review those.  If

10     I had any questions, I would discuss it with

11     Cahill and then approve it for payment.

12        Q.        Okay.  And when that bill was

13     approved for payment, where did it physically

14     go?

15                     MR. FARRELL:  Objection to form

16          and foundation.

17                     THE WITNESS:  To accounts

18          payable, I guess.

19     BY MR. PLACITELLA:

20        Q.        Okay.  And who was that person in

21     charge, if you remember?

22        A.        I don't know.

23        Q.        Okay.  And do you know what

24     ultimately happened to the bills that were



Page 109

1    submitted?

2                    MR. FARRELL:  Objection to

3         form.

4                    THE WITNESS:  No, I don't.

5    BY MR. PLACITELLA:

6         Q.    Did the counts -- the accounts

7    payable have a separate ledger for the

8    defense of the Emtal talc litigation?

9                    MR. FARRELL:  Objection to

10        form; foundation.

11                   THE WITNESS:  I don't know.

12   BY MR. PLACITELLA:

13        Q.    Did accounts payable ever provide

14   you with summaries of what the legal defense

15   costs were for the defense of the Emtal talc

16   litigation?

17                   MR. FARRELL:  Objection to

18        form.

19                   THE WITNESS:  I received a

20        number of things from our finance people

21        that consisted of the -- I call them IBM

22        printouts, but it was -- in those days,

23        you got things on paper with perforations

24        on both margins.  And it would have an



Page 110

1          analysis of legal department

2          expenditures.  I believe it was probably

3          broken down, litigation costs were

4          probably broken down by matter.

5                    I didn't pay much attention to

6          it because I had reviewed it in more

7          detail on a monthly basis.

8     BY MR. PLACITELLA:

9          Q.    Were they permanent business

10    records that -- reports that you're referring

11    to?

12                    MR. FARRELL:  Objection to form

13          and foundation.

14                    THE WITNESS:  Well, they would

15          have been covered by the document

16          retention policy.  I -- I'm not sure how

17          permanent you would be.  Probably after a

18          year or so, they wouldn't be required to

19          be retained.

20    BY MR. PLACITELLA:

21          Q.    Now, in terms of the accounts

22    payable records, how did they figure into

23    the -- the accounts -- accounts payable

24    ledgers, how did they figure into the



Page 111

1   document retention policy?

2              MR. FARRELL:  Objection to

3        form.

4              THE WITNESS:  I don't -- I

5        don't recall.

6   BY MR. PLACITELLA:

7        Q.   Okay.  If -- when you were there

8   in, say, 2005, and you wanted to know how

9   much Cahill Gordon billed you from two --

10  2003 to 2005, could you get that information?

11             MR. FARRELL:  Objection to form

12       and foundation.

13             THE WITNESS:  I'm sure I could.

14  BY MR. PLACITELLA:

15       Q.   Okay.  And if you were there in

16  2005 and you wanted to know how much Cahill

17  Gordon billed you from 2000 to 2005, could

18  you secure that information?

19             MR. FARRELL:  Objection to form

20       foundation.

21             THE WITNESS:  I would think I

22       could.  I -- but I don't know for a fact.

23             MR. PLACITELLA:  Okay.

24             THE WITNESS:  I never -- never



Page 112

```
 1        had occasion to find out.

 2   BY MR. PLACITELLA:

 3        Q.     And how -- who would you ask or

 4   what would you -- if you had to make that

 5   request, what would you do?

 6                MR. FARRELL:  Same objections.

 7                THE WITNESS:  Well, in the

 8        first instance, I would ask Mike

 9        Sperduto, who was our chief financial

10        officer.  And he would put me in touch

11        with somebody in his finance organization

12        who could give me the answer.

13   BY MR. PLACITELLA:

14        Q.     Okay.  Now, as corporate

15   secretary and general counsel, were you

16   required to keep the board of directors

17   apprized of what was going on in the Emtal

18   talc litigation?

19                MR. FARRELL:  Objection to

20        form.

21                THE WITNESS:  I don't know that

22        I was required to.  I did on an

23        occasional basis.

24   BY MR. PLACITELLA:
```



Page 113

1        Q.      Okay.  And what sort of

2   information would you be reporting to the

3   board of directors about the Engelhard talc

4   litigation?

5                MR. FARRELL:  Objection to

6        form; foundation.  And I'd also caution

7        you, Mr. Dornbusch, not to reveal the

8        substance of any communications that

9        preserve privileges and work product that

10       would apply to such communications with

11       the board.

12               THE WITNESS:  I would give them

13       an overview of where we stood.

14   BY MR. PLACITELLA:

15       Q.      And when you say "overview," what

16   do you mean by that?

17       A.      Well, I'd tell them how many

18   cases, how many since the last period had

19   been settled; if they were settled for money,

20   how much.  That sort of thing.

21       Q.      And if they were dismissed with

22   no money, would you tell them that?

23       A.      Yes.

24       Q.      Okay.  Would you tell them the



Page 114

1    reasons?

2                    MR. FARRELL:  Objection to

3        form; foundation; privilege, to the

4        extent this gets into the substance of

5        such communications.

6                    Can you answer that question

7        without revealing the substance of

8        communications?

9                    THE WITNESS:  No.

10                   MR. FARRELL:  Then I instruct

11       you not to answer the question.

12   BY MR. PLACITELLA:

13       Q.    What's the purpose -- what was

14   the purpose of reporting to the board of

15   directors concerning the Emtal talc

16   litigation?

17                   MR. FARRELL:  Objection to form

18       and foundation.

19                   THE WITNESS:  It was to keep

20       them apprized of the current status.

21   BY MR. PLACITELLA:

22       Q.    Would they use that information

23   in making decisions and deciding what they

24   had to report to their auditors, for example?



Page 115

1           MR. FARRELL:  Objection to

2      form; foundation; calls for speculation.

3           THE WITNESS:  Yeah, I don't --

4      I don't know what they did with the

5      information.

6   BY MR. PLACITELLA:

7      Q.    What was the format of your

8   reports?  Were they oral, written, both?

9           MR. FARRELL:  Objection.

10     Objection to form.

11          THE WITNESS:  Oral.

12  BY MR. PLACITELLA:

13     Q.    Okay.  And I'm sorry, you might

14  have said this, but how often did you make

15  those reports?

16          MR. FARRELL:  Objection to

17     form.

18          THE WITNESS:  Perhaps once or

19     twice a year.

20  BY MR. PLACITELLA:

21     Q.    Okay.  And if there -- something

22  significant happened in the litigation that

23  had the potential to adversely affect the

24  company, would you report that?



Page 116

```
 1                    MR. FARRELL:  Objection to form

 2        and foundation.

 3                    THE WITNESS:  Yes.

 4   BY MR. PLACITELLA:

 5        Q.     And did you ever make such a

 6   report in the Emtal talc litigation?

 7                    MR. FARRELL:  Objection to

 8        form; foundation; attorney-client

 9        privilege.

10                    I instruct you not to answer

11        the question.

12   BY MR. PLACITELLA:

13        Q.     Was the board -- board of

14   directors aware of the asbestos testing

15   evidence concerning Emtal talc?

16                    MR. FARRELL:  Objection to form

17        and foundation; calls for speculation.

18                    MR. MARINO:  Are you asking

19        Mr. Dornbusch if he advised the board of

20        directors?

21                    MR. PLACITELLA:  No.  I'm

22        asking if they know -- they knew, to his

23        knowledge.

24                    MR. MARINO:  You're asking him
```



1      if he knows what they know?

2                  MR. PLACITELLA:  Right.

3                  MR. FARRELL:  Without -- can

4      you answer that question without

5      revealing the substance of communications

6      between a lawyer for the company,

7      including yourself, and the board of

8      directors?

9                  THE WITNESS:  No.

10                 MR. FARRELL:  Then I instruct

11     you not to answer on privilege grounds.

12                 MR. PLACITELLA:  Can you read

13     that question back, please.

14                 (Whereupon, the court reporter

15         read back the record as requested.)

16  BY MR. PLACITELLA:

17     Q.    So to be clear, did you -- do you

18  know whether the board of directors was aware

19  of the asbestos testing evidence related to

20  Emtal talc?

21                 MR. FARRELL:  Objection to form

22     and foundation.

23                 Can you answer that with a yes

24     or no, Mr. Dornbusch?



Page 118

1                THE WITNESS:  No.

2                MR. FARRELL:  Then I instruct

3         you not to answer the question on

4         privilege grounds.

5    BY MR. PLACITELLA:

6         Q.    Do you know whether the board of

7    directors was aware of the testimony by

8    Engelhard scientists under oath concerning

9    the asbestos testing of Emtal talc?

10               MR. FARRELL:  Same objections;

11        same instruction.

12               Can you answer that

13        question -- let me take a step back.  Do

14        you know the answer to that question?

15               THE WITNESS:  No.

16   BY MR. PLACITELLA:

17        Q.    Do you know whether the -- can

18   you -- can you distinguish for me your duties

19   as the corporate secretary versus the general

20   counsel?

21               MR. FARRELL:  Objection to

22        form.

23               MR. MARINO:  Is the question

24        whether one of those duties entailed --



Page 119

```
 1                    MR. PLACITELLA:  No.

 2                    MR. MARINO:  -- his role as a

 3      lawyer versus the other?

 4                    MR. PLACITELLA:  Yeah.  I want

 5      to know if there was a difference.

 6  BY MR. PLACITELLA:

 7      Q.     Was there a difference between

 8  being corporate secretary and general

 9  counsel?  You had two different positions.

10      A.     There was.  As corporate

11  secretary, I was, of course, responsible for

12  maintaining the minutes, reporting the

13  meetings -- the minutes of the meetings of

14  the board and I think one of the committees

15  too.  I think I -- I served as secretary to

16  the finance committee.

17                    I -- and as -- as the company

18  lawyer, I would advise them on legal matters

19  that involved the corporation as needed.

20      Q.     Okay.  Now, when you say "the

21  minutes," what do you mean by that?

22      A.     The minutes of the meeting.

23      Q.     That you attended?

24      A.     Yes.
```



Page 120

```
 1        Q.      And you would physically write
 2   them up?
 3        A.      Yes.
 4        Q.      And what would happen with those
 5   minutes?
 6        A.      They --
 7                MR. FARRELL:  Objection to form
 8        and foundation.
 9                THE WITNESS:  They would be
10        circulated with the rest of the board
11        materials prior to the next meeting.  And
12        if approved, without any amendment, they
13        would be put in the minute books.  If
14        there was a -- a change or something that
15        I had gotten wrong, it would be corrected
16        and then put in the minute books.
17   BY MR. PLACITELLA:
18        Q.      And the -- were the minute books
19   kept as permanent records?
20        A.      Yes.
21        Q.      Okay.  And who was in charge of
22   keeping those?
23        A.      Well, I was, as secretary.
24        Q.      And when you left -- ultimately
```



Page 121

1    left Engelhard, did you turn those minute

2    books over to BASF?

3         A.    Yes.

4         Q.    Okay.  And in those -- in those

5    minutes, Did you ever incorporate information

6    related to the Emtal talc litigation?

7              MR. FARRELL:  Objection to form

8         foundation.

9              Can you answer that with a yes

10        or a no?

11             THE WITNESS:  I can.  I --

12             MR. FARRELL:  Go ahead.

13             THE WITNESS:  Yes.

14   BY MR. PLACITELLA:

15        Q.    Okay.  And in those minutes, did

16   you ever incorporate information concerning

17   the events that happened in the Emtal talc

18   litigation that had the potential to

19   adversely affect the company?

20             MR. FARRELL:  Objection to

21        form; foundation; attorney-client

22        privilege.

23             I instruct you not to answer

24        the question.



Page 122

```
 1                    MR. PLACITELLA:  So just so
 2          we're clear, your position is that the
 3          board minutes are privileged?
 4                    MR. FARRELL:  Not the entirety
 5          of board minutes.  But certainly with
 6          respect to that question, asking the
 7          general counsel of a corporation whether
 8          he advised the board of directors about
 9          an adverse event in litigation that would
10          have an impact on the company, yes, I'm
11          asserting privilege over that
12          communication and whether it's in the
13          document.  And I've instructed him not to
14          answer the question.
15                    MR. PLACITELLA:  Okay.
16                    MR. FARRELL:  You're deposing
17          the former general counsel of a
18          corporation about his communications --
19                    MR. PLACITELLA:  I don't need a
20          lecture from you.  I don't need a lecture
21          from you.
22                    MR. MARINO:  No, let's --
23                    MR. FARRELL:  You asked me a
24          question.
```



MAGNA ▶
LEGAL SERVICES

Page 123

```
 1                    MR. PLACITELLA:  Okay.  You
 2        already -- you already did --
 3                    MR. FARRELL:  You're deposing
 4        the former general counsel of a
 5        corporation about his communications and
 6        updates on litigation with the board of
 7        directors of a company.
 8                    MR. PLACITELLA:  Let me know
 9        when you're done.
10                    MR. FARRELL:  I'm finished.
11                    MR. PLACITELLA:  Thank you.
12                    MR. MARINO:  Chris, it's not
13        improper for him to make a clarifying
14        statement on the record.  There's --
15        there's nothing -- there's nothing
16        objectionable about that.
17   BY MR. PLACITELLA:
18        Q.    Did you ever have to provide
19   information to your -- you personally have to
20   provide information to the auditors for
21   Engelhard concerning the talc litigation?
22                    MR. FARRELL:  Objection to
23        form.
24                    THE WITNESS:  Yes.
```



Page 124

1    BY MR. PLACITELLA:

2        Q.    Okay.  And was that information

3    required in order to comply with the SEC

4    rules?

5                MR. FARRELL:  Objection to form

6         and foundation.

7                THE WITNESS:  I don't know what

8         it was require --

9    BY MR. PLACITELLA:

10       Q.    Did you -- go ahead.  I'm sorry.

11       A.    It was -- they -- they would

12   frequently meet with me to talk about

13   litigation.  And they'd have a checklist of

14   things they wanted to talk about.  And if

15   there was something I thought they should

16   know that wasn't on their list, I would tell

17   them about it.  We had a very open policy

18   with our auditors.

19       Q.    Okay.  And did you ever provide

20   information to your auditors related to Emtal

21   talc litigation that you thought could impact

22   negatively the corporation?

23                MR. FARRELL:  Objection to

24         form; foundation; privilege.



Page 125

```
 1                    I instruct you not to answer

 2        the question.

 3                    MR. PLACITELLA:  So we're

 4        clear, your position is information

 5        provided to the auditors, who were there

 6        for purposes of SEC compliance, is

 7        privileged?

 8                    MR. FARRELL:  You're asking the

 9        former general counsel of a corporation

10        for his opinion regarding the disclosure

11        of information related to litigation.

12        It's work product, and it's privileged.

13                    MR. PLACITELLA:  Okay.

14                    MR. FARRELL:  I've asserted an

15        objection.

16                    MR. PLACITELLA:  All right.  So

17        just so we're clear before the Court,

18        it's your position that information

19        provided by Mr. Dornbusch to the

20        corporate auditors, who are not employees

21        or officers of the corporation, is

22        privileged?

23                    MR. FARRELL:  I didn't say that

24        Mr. Placitella.  I was responding to your
```



Page 126

```
 1          specific question, which called for

 2          Mr. Dornbusch's mental impressions and

 3          opinion about facts related to litigation

 4          and whether or why they were communicated

 5          to somebody.  That is work product and it

 6          is privileged.  I've asserted an

 7          objection, and I've instructed the

 8          witness not to answer the question.

 9     BY MR. PLACITELLA:

10          Q.    Did you ever provide information

11     to the auditors concerning information you

12     thought was important that they should know

13     as part of their reporting requirements to

14     the SEC related to the Engelhard talc

15     litigation?

16               MR. FARRELL:  Same objections;

17          same instruction not to answer.  It's

18          frankly the same question you just asked

19          that I just instructed on.

20     BY MR. PLACITELLA:

21          Q.    Did you ever provide -- well, let

22     me ask you this question:  Would an accurate

23     disclosure to your auditors include

24     information that you had about the existence
```



Page 127

1     or a lack thereof of asbestos in Emtal talc?

2                    MR. FARRELL:  Same objections;

3          same instruction not to answer.

4     BY MR. PLACITELLA:

5          Q.     What specifically did you tell

6     the -- your auditors about the Emtal talc

7     litigation, to your recollection?

8                    MR. FARRELL:  Objection to form

9          and foundation.

10                   I need to confer with the

11         witness before he can respond to this

12         question.

13                   MR. PLACITELLA:  I don't think

14         so.

15                   MR. FARRELL:  Well, then I need

16         to instruct him not to answer the

17         question on privilege grounds --

18                   MR. PLACITELLA:  Okay.

19                   MR. FARRELL:  -- if you're not

20         going to allow me to confer with him.

21                   MR. MARINO:  Can we go off the

22         record for a moment?

23                   MR. PLACITELLA:  Uh-huh.

24                   THE VIDEOGRAPHER:  The time is



Page 128

```
 1        now 11 o'clock a.m.  We're going off the
 2        record.
 3                  (Whereupon, there was a
 4             discussion held off the record.)
 5                  (Whereupon, a brief recess was
 6             taken.)
 7                  THE VIDEOGRAPHER:  The time is
 8        now 11:10 a.m.  We are back on the
 9        record.
10   BY MR. PLACITELLA:
11        Q.    Okay.  What information did you
12   provide to Engelhard's auditors concerning
13   the Emtal talc litigation?
14                  MR. FARRELL:  Objection to form
15        and foundation.
16                  THE WITNESS:  I don't remember.
17   BY MR. PLACITELLA:
18        Q.    Was there a record kept of what
19   information you provided to the auditors?
20        A.    No.
21        Q.    Okay.  Did the auditors keep
22   notes of what you told them?
23                  MR. FARRELL:  Object --
24        objection to form and foundation.
```



Page 129

```
 1                    THE WITNESS:  I saw them

 2       writing on paper.  I -- yeah.

 3  BY MR. PLACITELLA:

 4       Q.    Do you have a recollection of

 5  ever telling the auditors that Engelhard was

 6  in possession of evidence indicating there

 7  was asbestos in the Emtal talc?

 8                    MR. FARRELL:  Objection to form

 9       and foundation.

10                    THE WITNESS:  I have no

11       specific recollection of what I told them

12       about anything.

13  BY MR. PLACITELLA:

14       Q.    Would that information have been

15  required to be provided, if you know?

16       A.    I --

17                    MR. FARRELL:  Objection to

18       form; foundation.

19                    Are you asking him for his

20       opinion on this?

21                    MR. PLACITELLA:  I'm asking him

22       his experience.

23                    MR. FARRELL:  You're asking the

24       general counsel of the company whether it
```



Page 130

```
 1          would have been required to do something.

 2          Are you asking for his opinion?

 3                    MR. PLACITELLA:  I'm asking him

 4          in terms of their business practices and

 5          his dealing with the auditor, would that

 6          information have been required for

 7          disclosure.

 8                    MR. FARRELL:  Those are two

 9          different questions.

10   BY MR. PLACITELLA:

11          Q.    You can answer it.

12                    MR. FARRELL:  Mr. Dornbusch,

13          can you respond to that question without

14          getting into your personal assessment of

15          legal issues?

16                    THE WITNESS:  No.

17                    MR. FARRELL:  Then I instruct

18          you not to answer the question.

19   BY MR. PLACITELLA:

20          Q.    Do you know whether the reasons

21   why Emtal cases were dismissed were ever

22   communicated to your auditors?

23                    MR. FARRELL:  Objection to form

24          and foundation.
```



Page 131

```
 1                    Can you answer that with a yes
 2        or a no?
 3                    THE WITNESS:  No, I can't.
 4                    MR. FARRELL:  Do you know the
 5        answer to the question?
 6                    THE WITNESS:  No.
 7   BY MR. PLACITELLA:
 8        Q.    What was your understanding of
 9   the type of information you were required to
10   disclose to the auditors of Engelhard related
11   to the Emtal talc litigation?
12                    MR. FARRELL:  Objection to form
13        and foundation.
14                    THE WITNESS:  Just a general
15        understanding that anything that could
16        have a material financial impact on the
17        corporation.
18   BY MR. PLACITELLA:
19        Q.    Did you ever come to the
20   conclusion that evidence of asbestos in Emtal
21   talc could have a material impact on the
22   corporation?
23                    MR. FARRELL:  Objection to
24        form; foundation; work product.
```



Page 132

```
 1                    Instruct you not to answer the

 2        question.

 3  BY MR. PLACITELLA:

 4        Q.    Do you have a recollection of

 5  ever coming to that conclusion?

 6                    MR. FARRELL:  Same objections;

 7        same instruction on privilege grounds.

 8  BY MR. PLACITELLA:

 9        Q.    I'm not asking you for what you

10  concluded.  I'm asking you if you have a

11  recollection.

12        A.    I do not.

13                    MR. FARRELL:  I've already

14        instructed the witness on this question.

15  BY MR. PLACITELLA:

16        Q.    Okay.  Did you ever -- whose

17  decision was it to disclose evidence in

18  possession of Engelhard related to the Emtal

19  talc litigation?  Whose decision was that?

20                    MR. FARRELL:  Objection to

21        form; foundation; vague.

22                    THE WITNESS:  Disclose it to

23        whom?

24  BY MR. PLACITELLA:
```



Page 133

```
 1        Q.      In the -- to the adverse side in
 2    the context of -- good question.
 3        A.      Uh-huh.
 4        Q.      Let me rephrase it.
 5                Whose decision was it to
 6    disclose information or disclose evidence
 7    pertinent to the litigation in the Emtal talc
 8    litigation to the other side?
 9                MR. FARRELL:  Objection to form
10           and foundation.
11                THE WITNESS:  Well, I guess
12           ultimately, it would have been my
13           decision.
14                MR. PLACITELLA:  Okay.
15                THE WITNESS:  It would have
16           been -- it would come about through
17           outside counsel, through Cahill.  And
18           they would come to me, and we'd talk
19           about it.
20    BY MR. PLACITELLA:
21        Q.      Did you ever make a decision --
22    well, scratch that.
23                Do you know whether the
24    information contained in P-1 was ever
```



Page 134

1    disclosed in the --

2         A.    Oh, that's the big --

3         Q.    -- Emtal talc litigation?

4              MR. FARRELL:  Objection to form

5         and foundation; vague as to time.

6              THE WITNESS:  No, I don't know.

7    BY MR. PLACITELLA:

8         Q.    So would it have been your

9    decision, ultimately, whether the information

10   contained in P-1 would be disclosed to

11   litigants in the Emtal talc litigation?

12             MR. FARRELL:  Same objections;

13        assumes facts.

14             THE WITNESS:  If it came up,

15        yes, I -- I was not aware of the

16        existence of what's been identified as

17        P-1 until my deposition in the state

18        matter.

19   BY MR. PLACITELLA:

20        Q.    Well, you were aware of it when

21   the memo was sent to you by Mr. Hyde in 1982,

22   weren't you?

23        A.    Oh, yes.

24        Q.    Okay.



Page 135

1                    MR. FARRELL:  Objection to

2         form.

3    BY MR. PLACITELLA:

4         Q.    So once you were aware of it in

5    1982, when you received it from Mr. Hyde,

6    whose decision was it whether to disclose

7    that information to litigants in the Emtal

8    talc litigation?

9                    MR. FARRELL:  Objection to

10        form; foundation; vague; assumes facts.

11                   THE WITNESS:  I don't recall it

12        ever being discussed.

13   BY MR. PLACITELLA:

14        Q.    My question was, whose decision

15   was it whether to disclose that information

16   to the other side?

17                   MR. FARRELL:  Same objections.

18                   THE WITNESS:  There was no

19        decision about it.  It wasn't discussed.

20   BY MR. PLACITELLA:

21        Q.    So no one -- the subject of

22   whether you should disclose asbestos testing

23   to litigants in the Emtal talc litigation

24   never came up?



Page 136

1          A.     I don't re --

2                 MR. FARRELL:  Objection to

3          form; foundation; asked and answered.

4                 Go ahead, Mr. Dornbusch.

5                 THE WITNESS:  I don't recall.

6     BY MR. PLACITELLA:

7          Q.     You don't recall what?

8          A.     I don't recall discussing or

9     considering that issue.

10         Q.     Well, whose responsibility would

11    it have been to make sure that relevant

12    testing evidence for asbestos in Emtal talc

13    would have been disclosed in litigation

14    involving asbestos in Emtal talc?

15                MR. FARRELL:  Objection to

16         form; foundation; assumes facts; vague as

17         to time.

18                THE WITNESS:  The disclosure

19         vehicle would have been something that

20         would have been put together by Cahill

21         Gordon.  They -- they would not need my

22         approval to -- and they -- they were

23         given this information.  This was coming

24         back from them.  Having this information,



Page 137

```
 1          if they felt it was appropriate to

 2          disclose it, I would assume they would

 3          have disclosed it.

 4     BY MR. PLACITELLA:

 5          Q.     So you had no role whatsoever in

 6     making the determination as to whether this

 7     information be -- should be disclosed to

 8     people who were suing Engelhard for

 9     asbestos-related injuries?

10               MR. FARRELL:  Objection to

11          form.

12     BY MR. PLACITELLA:

13          Q.     Is that what you're saying?

14               MR. FARRELL:  Objection to form

15          and foundation.

16               MR. BOISE:  Also

17          mischaracterizes testimony.

18               THE WITNESS:  I -- I explained

19          that I relied upon Cahill to respond to

20          discovery requests appropriately.  I gave

21          them whatever I had, whatever the company

22          had, and counted upon them to draft an

23          appropriate response.

24     BY MR. PLACITELLA:
```



Page 138

```
 1        Q.      So you basically just outsourced

 2   to them whatever was required in order to

 3   respond to discovery?

 4                  MR. FARRELL:  Objection to

 5        form.

 6                  THE WITNESS:  But -- yeah.

 7        Yes.

 8   BY MR. PLACITELLA:

 9        Q.      Okay.  Before you -- we mentioned

10   briefly the Westfall case.  Can you tell me

11   what were the circumstances that you learned

12   of the Westfall case?

13        A.      I don't -- I don't recall.  We

14   were sued, and I -- I reserved -- I would

15   have reserved the service papers.

16        Q.      Okay.  You were involved in that

17   case, correct, yourself?

18                  MR. FARRELL:  Objection to

19        form.

20                  THE WITNESS:  No, not really.

21   BY MR. PLACITELLA:

22        Q.      You didn't file Affidavits in

23   that case?

24        A.      Well, if I did, I did.  I -- I
```



Page 139

1    don't recall doing it.

2        Q.    Now, you left -- can you give me

3    Dornbusch-1.

4                Dornbusch-1 is a report for

5    Engelhard Corporation for the Securities and

6    Exchange Commission.

7                Do you see that?

8        A.    Yes.

9        Q.    And that report was issued at the

10   time -- at or about the time that you left?

11               MR. FARRELL:  Objection to

12       form.

13               THE WITNESS:  May of 2006, yes.

14   BY MR. PLACITELLA:

15       Q.    Okay.  And if I go to page 17, it

16   talks about shares of ownership.

17               Do you see that?

18       A.    Yes.

19       Q.    Okay.  And at the time of -- at

20   the time you left, you owned 754,787 shares?

21       A.    That's what it says, yes.

22       Q.    And that there was a tender offer

23   for, do you recall, $45 a share?

24       A.    I didn't recall that that was the



Page 140

1    price of the tender, but yes, I see it.

2          Q.      Okay.

3                  MR. TUNIS:  I'm sorry,

4    Mr. Dornbusch --

5                  THE WITNESS:  Yeah, I -- I see

6          that that's what it says here.  I didn't

7          recall that that was the price.

8    BY MR. PLACITELLA:

9          Q.      Do you recall, if I did the math,

10   that when you left, you received about

11   $33 million?

12         A.      It wasn't that much, but...

13         Q.      It was pretty close?

14         A.      I received -- yeah, it was my

15   life savings.

16         Q.      Okay.  And at the time you left,

17   you were making, what, about a million

18   dollars a year with benefits?

19         A.      I don't remember.

20         Q.      Okay.  Now, can you give me

21   Exhibit 3.

22                 MS. CALLAHAN:  Dornbusch-3?

23                 MR. PLACITELLA:  No.  Just

24         Exhibit 3.



Page 141

```
 1                    THE WITNESS:  Oh.

 2    BY MR. PLACITELLA:

 3         Q.    Exhibit 3 is the deposition of

 4    Dr. Glenn Hemstock given on March 16th, 1983,

 5    in the Westfall case.

 6                    Do you see that?

 7         A.    Uh-huh.

 8                    MR. BOISE:  This is an excerpt?

 9                    MR. PLACITELLA:  Yes.  Well, he

10         has the full.  I gave you the excerpts

11         I'm asking questions about.

12                    MR. BOISE:  I don't even have

13         the excerpts.  That's why I'm asking.

14    BY MR. PLACITELLA:

15         Q.    Okay.  And on the next page, it

16    indicates that Mr. Sloane and Mr. Halket were

17    there on behalf of your corporation, correct?

18         A.    Yes.

19         Q.    And it -- if you go to page 17 --

20         A.    Yes.

21         Q.    -- Dr. Halket is asked the

22    following question and answer -- I'm sorry,

23    Dr. Hemstock:  "Now, you testified that your

24    department has tested both processed talc and
```



Page 142

1    raw talc ore from the Emtal mine for the

2    presence of chrysotile asbestos; is that

3    correct?"

4              Answer:  "Yes."

5              "Has your department in its

6    research found chrysotile asbestos in both

7    processed talc and raw ore from the Emtal

8    mine?"

9              And the answer is "Yes."

10             Do you see that?

11    A.    Yes.

12    Q.    Okay.  And when is the first time

13   that you learned about this testimony?

14    A.    I don't know.

15    Q.    Would you have learned it at or

16   about the time the case was pending?

17             MR. TUNIS:  Objection to form.

18             MR. FARRELL:  Objection to

19        form.

20             THE WITNESS:  I don't know.

21   BY MR. PLACITELLA:

22    Q.    Certainly your department was

23   aware of the testimony, correct?

24             MR. FARRELL:  Objection to form



Page 143

1       and foundation.

2              THE WITNESS:  Mr. Halket was

3       present, so he -- he would have known.

4              MR. PLACITELLA:  Okay.

5              MR. MARINO:  Can I -- Chris,

6       can I ask you to show Mr. Dornbusch the

7       complete testimony on this subject?  It's

8       a little difficult to see the page

9       numbers.  But what appears -- what you've

10      identified as page 17, could you -- could

11      you please show him pages 17 and 18?

12      Does he have that in front of him?

13             MR. PLACITELLA:  He's got it in

14      front of him.

15             MR. BOYLE:  Well, no.  No.

16      Your excerpt actually excludes page 18.

17      So if you'd like, I can -- we can read

18      it.

19             MR. MARINO:  Well, I -- I --

20      well, yeah.  Why don't I do that.

21             MR. PLACITELLA:  Well, no.

22      He's got 18 in front of him.

23             MR. MARINO:  Does he?

24             MR. PLACITELLA:  Yes.



Page 144

 1                    THE WITNESS:  I have the whole

 2        thing, yeah.

 3                    MR. PLACITELLA:  He's got the

 4        whole thing.

 5                    MR. MARINO:  Okay.  So let's

 6        take a moment to just look --

 7                    MR. PLACITELLA:  So why don't

 8        you read it, Mr. Dornbusch.

 9                    MR. MARINO:  Yeah.  Let's take

10        a moment to do that.  That's great.

11        Thank you.

12                    THE WITNESS:  Okay.

13    BY MR. PLACITELLA:

14        Q.    In reading page 18, does that

15    refresh your memory in any way of what

16    Dr. Halket -- Dr. Hemstock testified to?

17                    MR. FARRELL:  Objection to form

18        and foundation.

19                    THE WITNESS:  It doesn't

20        refresh my recollection.  It -- it -- it

21        states that the amounts of chrysotile

22        found by Dr. Hemstock were trace

23        quantities.

24    BY MR. PLACITELLA:



Page 145

```
 1        Q.     Okay.  And then can you go to

 2    page 103.  I put that up.

 3               Does he also testify there

 4    about more than trace quantities?

 5               MR. FARRELL:  Objection to form

 6        and foundation; misstates his testimony.

 7    BY MR. PLACITELLA:

 8        Q.     Well let me read it to you.  Does

 9    Dr. Hemstock provide a response to the

10    following question:  "Dr. Hemstock, in the

11    first full paragraph of page two of this

12    memorandum, there is a statement from

13    Mr. Triglia" -- he was the scientist you

14    talked about before, right, Mr. Dornbusch?

15        A.     Yes.  Yes.

16        Q.     -- "that, 'The results showed

17    that although there was a variability in the

18    number of fibers counted from week to week,

19    there were, nevertheless, fibers present in

20    every sample of Emtal 42 tested.  A few of

21    the Emtal 42 samples showed relatively high

22    fiber counts.'  Do you know to what fiber

23    Mr. Triglia is referring in that sentence?"

24               Answer:  "Those would be
```



Page 146

1    fibers observed in the electron microscope

2    evaluation of those samples."

3                    Did I read that correctly?

4    A.    Yes.

5                    MR. PLACITELLA:  Okay.  Now,

6        can you give me Exhibit 4, please.

7    BY MR. PLACITELLA:

8        Q.    By the way, was -- after the

9    Westfall case, was Dr. Hemstock's deposition

10   ever disclosed to any other litigant

11   before -- during the time that you worked at

12   Engelhard?

13                   MR. FARRELL:  Objection to

14       form.

15                   THE WITNESS:  I do not know.  I

16       don't know.

17   BY MR. PLACITELLA:

18       Q.    Should it have been?

19                   MR. FARRELL:  Objection to

20       form; foundation; work product; and

21       privilege.

22                   I instruct you not to answer

23       the question.

24   BY MR. PLACITELLA:



Page 147

1      Q.     I'm going to show you what's been

2  marked as Exhibit 4.  Exhibit 4 is the

3  deposition of Peter Gale taken on April 26th,

4  1983, in the Westfall case.

5                 Have you seen this before?

6      A.     Not that I recall.

7      Q.     Do you recall actually suing

8  Peter Gale for giving testimony in the

9  Westfall case?

10                 MR. FARRELL:  Objection to

11       form; foundation.

12                 THE WITNESS:  Yes, I do.

13  BY MR. PLACITELLA:

14      Q.     Okay.  And can you go to page 19.

15  In page 19, Peter Gale talks about tests that

16  were performed with an electron microscope at

17  Georgia Tech in 1979.

18                 Do you see that?

19      A.     I see -- yes, I see the

20  highlighted material.

21      Q.     Okay.

22      A.     And the date, yes.

23      Q.     All right.  And on the next page,

24  he indicates, does he not, that the testing



Page 148

1   showed chrysotile fibers in the Emtal talc?

2                    MR. FARRELL:  Objection to

3        form; foundation; misstates his

4        testimony.

5                    THE WITNESS:  I see his

6        testimony, yes.

7   BY MR. PLACITELLA:

8        Q.    Okay.  Now, if you go back to the

9   second page, you had two lawyers there -- or

10  you had -- I'm sorry, you had Howard Sloane

11  there on behalf of your corporation?

12       A.    Yes.

13       Q.    Okay.  And was the information --

14  was this deposition ever disclosed to any

15  litigant after the Westfall case at any point

16  in time?

17                   MR. FARRELL:  Objection to form

18       and foundation; assumes facts.

19                   THE WITNESS:  I don't know.

20  BY MR. PLACITELLA:

21       Q.    Do you know who Dr. William

22  Glassley is?

23       A.    No.

24       Q.    Okay.  You don't -- do you have



Page 149

1    any recollection of any point in time

2    learning that Dr. Glassley found asbestos

3    at -- at the Johnson mine?

4                    MR. FARRELL:  Objection to form

5         and foundation.

6                    THE WITNESS:  No.

7    BY MR. PLACITELLA:

8         Q.    Okay.  After the Westfall case

9    was concluded, what physically happened, if

10   you know, to the physical transcripts of the

11   Engelhard scientists that testified in those

12   cases -- in that case?

13                   MR. FARRELL:  Objection to form

14        and foundation.

15                   THE WITNESS:  I do not know.

16   BY MR. PLACITELLA:

17        Q.    Who would know that?

18                   MR. FARRELL:  Objection to form

19        and foundation.

20                   THE WITNESS:  Peter Sloane

21        would probably know.

22   BY MR. PLACITELLA:

23        Q.    And do you know what happened to

24   the exhibits that were attached to the



Page 150

1  transcripts?

2          MR. FARRELL:  Same objections.

3          THE WITNESS:  No.

4  BY MR. PLACITELLA:

5     Q.    Okay.  Do you know whether the

6  original transcripts were ever returned to

7  Engelhard?

8          MR. FARRELL:  Same objections.

9          THE WITNESS:  I don't know.

10 BY MR. PLACITELLA:

11    Q.    Okay.  Do you know whether

12 in-house counsel -- and I mean your --

13 your -- your department -- maintained copies

14 of the Westfall file?

15         MR. FARRELL:  Objection to form

16     and foundation.

17         THE WITNESS:  I don't know.

18 BY MR. PLACITELLA:

19    Q.    Okay.  Do you know whether it was

20 a matter of procedure or policy that

21 Mr. Halket would have received copies of the

22 transcripts and exhibits?

23         MR. FARRELL:  Objection to

24     form.



Page 151

```
 1                    MR. TUNIS:  Objection to form.

 2                    THE WITNESS:  I don't know.

 3   BY MR. PLACITELLA:

 4        Q.    Okay.  Did you have an

 5   expectation that Cahill Gordon would be

 6   keeping a permanent copy of the Westfall

 7   file?

 8                    MR. FARRELL:  Objection to form

 9        and foundation.

10                    MR. TUNIS:  Objection.

11                    THE WITNESS:  I never thought

12        of it.  I don't know.

13   BY MR. PLACITELLA:

14        Q.    Okay.  Did you have an

15   expectation that that file would be destroyed

16   at the conclusion of the Westfall case?

17                    MR. FARRELL:  Objection to form

18        and foundation.

19                    MR. TUNIS:  Objection to form.

20                    THE WITNESS:  I don't know.

21   BY MR. PLACITELLA:

22        Q.    Well, what was your policy

23   concerning the -- destruction of evidence

24   that was created during the course of the
```



Page 152

1    Engelhard talc litigation?

2                    MR. MARINO:  Are you asking

3        about a document retention policy?

4                    MR. TUNIS:  Form and

5        foundation.

6                    MR. PLACITELLA:  No.

7                    MR. MARINO:  Is that your

8        question.

9                    MR. PLACITELLA:  No.

10                    MR. MARINO:  What was the

11        policy about the destruction of evidence?

12        Is that your question?

13                    MR. PLACITELLA:  Yes.  Yeah.

14                    MR. FARRELL:  Objection to form

15        and foundation.

16                    MR. TUNIS:  Same.

17                    THE WITNESS:  There -- there

18        was no policy that I'm aware of.

19    BY MR. PLACITELLA:

20        Q.    Was it your understanding that

21    you had a responsibility to retain evidence

22    that was created during the course of the

23    Engelhard talc litigation?

24                    MR. MARINO:  Can I have a time



Page 153

1          frame, please.

2                    MR. PLACITELLA:  At any time.

3                    MR. FARRELL:  Objection to form

4          foundation.

5                    MR. TUNIS:  Objection; time

6          frame.

7                    THE WITNESS:  So what -- what

8          is the question as it stands?

9                    MR. PLACITELLA:  Can you read

10         it back, please.

11                   (Whereupon, the court reporter

12              read back the record as requested.)

13                   MR. FARRELL:  Objection to

14         form; foundation; vague.

15                   THE WITNESS:  I don't have any

16         current understanding.

17    BY MR. PLACITELLA:

18         Q.     What do you mean by that?

19         A.     I -- I don't -- I don't recall

20    that issue at all.

21         Q.     Well, did you understand, as

22    general counsel, that you had a

23    responsibility to maintain evidence when

24    there were other case -- similar cases



Page 154

1   pending?

2                    MR. FARRELL:  Objection to

3        form --

4                    MR. TUNIS:  Objection.

5                    MR. FARRELL:  -- and

6        foundation.

7                    MR. TUNIS:  And vague as to

8        time frame.

9   BY MR. PLACITELLA:

10       Q.    At any point in time.

11       A.    Yes.

12       Q.    Okay.  Now, I want to talk to you

13  about document retention policy in general.

14                    Prior to 1984, did Engelhard

15  have a document retention policy, if you

16  remember?

17                    MR. FARRELL:  Objection to

18       form.

19                    THE WITNESS:  I believe we had

20       several.

21                    MR. PLACITELLA:  Give me 176,

22       please.  176.

23  BY MR. PLACITELLA:

24       Q.    Okay.  If you look at -- what you



Page 155

1    have in front of you are responses to

2    discovery by BASF in this case.  And if you

3    look at request No. 21, the request is:

4    "After Engelhard was sued in an asbestos

5    mesothelioma case in Rhode Island known as

6    the Westfall case, Engelhard changed its

7    Research And Development's document retention

8    policy."  Do you see that?

9         A.    Yes.

10         Q.    And underneath that, after the

11    objections, it says, "BASF admits that

12    Engelhard finalized a new document retention

13    policy in 1984."

14              Do you see that?

15         A.    Yes.

16         Q.    What was the document retention

17    policy before that, if you know?

18              MR. FARRELL:  Objection to

19         form; foundation; vague.

20    BY MR. PLACITELLA:

21         Q.    Well, let me ask you a question,

22    so maybe this will be easier.

23         A.    Okay.

24         Q.    Do you have a recollection of a



Page 156

1     new document retention policy being arrived

2     at after the Westfall case was filed?

3                    MR. FARRELL:  Objection to

4          form.

5                    THE WITNESS:  I -- I don't know

6          about it with respect to after the

7          Westfall case was filed.  I know that we

8          had an ongoing undertaking that took some

9          time to formulate a comprehensive

10         document retention policy for both

11         divisions of the company.  My answer to

12         your previous question, I believe both

13         the Engelhard industry's division and the

14         minerals and chemicals division had their

15         own, not necessarily consistent policies.

16         And whatever policies those were, were

17         not enforced.  Our recommend -- document

18         retention facility was basically a great

19         big wastebasket.

20                    And under my instruction -- at

21         my instructions, Cahill prepared a

22         document retention policy that would be

23         consistent with all applicable laws and

24         regulations.  It took some time.  It was



Page 157

1          also reviewed by Fish & Neave to ensure

2          that we were giving adequate protection

3          to intellectual property matters.  And

4          it was finalized sometime in 1984.

5     BY MR. PLACITELLA:

6          Q.    Okay.  Do you have a recollection

7     that you did not come up with this document

8     retention policy, a final version, until

9     after the Westfall case was terminated?

10                   MR. FARRELL:  Objection to

11          form; foundation; asked and answered.

12                   THE WITNESS:  Well, I think you

13          told me it was -- that the Westfall

14          litigation was settled in '83, and this

15          was in '84, so I guess the answer is yes.

16    BY MR. PLACITELLA:

17         Q.    What was the document retention

18    policy for the evidence in the Engelhard

19    research and development department

20    specifically related to the department that

21    was headed by Dr. Hemstock prior to 1984?

22                   MR. FARRELL:  Objection to form

23          and foundation.

24                   THE WITNESS:  Yeah, I don't



Page 158

```
 1      recall.
 2  BY MR. PLACITELLA:
 3      Q.    And what was the document
 4  retention policy that was arrived at
 5  concerning the R&D department headed by
 6  Dr. Hemstock in 1984?
 7              MR. FARRELL:  Same objections,
 8          form and foundation.
 9              THE WITNESS:  I don't recall
10          the whole policy, but it was -- can
11          you -- if you can be more specific,
12          perhaps I can respond.
13  BY MR. PLACITELLA:
14      Q.    Prior to 1984, was -- did your
15  policy permit the destruction of R and -- the
16  R&D files that were in Dr. Hemstock's
17  department?
18              MR. FARRELL:  Objection to form
19          and foundation.
20              THE WITNESS:  I don't know.
21  BY MR. PLACITELLA:
22      Q.    Who would know that?
23              MR. FARRELL:  Objection to form
24          and foundation.
```



Page 159

```
 1                    THE WITNESS:  You'd have to
 2        look at the -- the -- the old policy for
 3        the minerals and chemicals division.
 4   BY MR. PLACITELLA:
 5        Q.     And with the new policy that was
 6   arrived at in 1984, did it permit the
 7   research and development information related
 8   to Emtal talc to be destroyed that was in the
 9   department of Dr. Hemstock?
10                    MR. FARRELL:  Objection to form
11        and foundation.
12                    THE WITNESS:  It called for the
13        destruction of files related to
14        discontinued operations of the company.
15   BY MR. PLACITELLA:
16        Q.     All right.  You -- but you didn't
17   answer my question.  Did it permit you to
18   destroy the R&D files in Dr. Hemstock's
19   department related to Emtal talc?
20                    MR. FARRELL:  Objection to
21        form; foundation; asked and answered.
22                    THE WITNESS:  As a discontinued
23        operation, yes.
24   BY MR. PLACITELLA:
```



Page 160

1      Q.     Even if there were other cases

2   pending at the time?

3              MR. FARRELL:  Objection.

4   BY MR. PLACITELLA:

5      Q.     Even if there was litigation

6   pending at the time related to Emtal talc?

7              MR. FARRELL:  Objection to form

8      and foundation.

9              THE WITNESS:  There was a

10      general exception for pending litigation.

11   BY MR. PLACITELLA:

12      Q.     So if there were cases pending in

13   1984, am I correct, in 1985, you would not be

14   permitted to destroy Engelhard Emtal talc

15   research and development files?  True?

16              MR. TUNIS:  Objection to form.

17              MR. FARRELL:  Objection to

18      form; foundation; vague.

19              THE WITNESS:  True.

20   BY MR. PLACITELLA:

21      Q.     Did -- do you -- did you have an

22   understanding, as general counsel, of what

23   the concept of a litigation hold was?

24      A.     A litigation hold is something



Page 161

1    that we would institute upon the commencement

2    of a lawsuit, either by or against the

3    company, whereby we would suspend the

4    application of the new document retention

5    policy with respect to that subject area.

6         Q.    Did you ever issue a litigation

7    hold as it related to the testing evidence

8    that was in the possession of the R&D

9    department headed by Dr. Hemstock concerning

10   Emtal talc?

11                MR. FARRELL:  Objection to

12        form; foundation; vague as to time;

13        assumes facts.

14                THE WITNESS:  I'm not aware of

15        any.

16   BY MR. PLACITELLA:

17        Q.    What was your understanding of

18   the purpose of a litigation hold directive --

19                MR. TUNIS:  Objection.

20   BY MR. PLACITELLA:

21        Q.    -- in terms of a -- the policy at

22   your corporation?

23                MR. FARRELL:  Objection to

24        form.



Page 162

```
 1                    MR. TUNIS:  Are -- are you
 2       asking with respect to the specific 1984
 3       policy?
 4  BY MR. PLACITELLA:
 5       Q.    I'm asking what your
 6  understanding was of the purpose of issuing a
 7  litigation hold directive, generally?
 8       A.    It was to prevent the destruction
 9  of documents that would be relevant to the
10  litigation in question.
11                    MR. PLACITELLA:  Okay.  Okay.
12       Can you give me Exhibit 15.  I have lots
13       of these, so...
14  BY MR. PLACITELLA:
15       Q.    Okay.  You have in front of you
16  Exhibit 15, which is a March 7th, 1984 memo
17  from G.A. Hemstock to all R&D personnel.
18                    Do you see that?
19       A.    Yes.
20       Q.    Okay.  And it talks about
21  document retrieval - discontinued operations,
22  correct?
23       A.    Correct.
24       Q.    Okay.  This was issued prior to a
```



Page 163

```
 1   final document retention policy being arrived
 2   at, correct?
 3                   MR. FARRELL:  Objection to
 4         form; foundation; misstates his
 5         testimony.
 6                   THE WITNESS:  I don't know what
 7         the official date of implementation of
 8         the document retention policy was.
 9   BY MR. PLACITELLA:
10         Q.    Did you have a role in drafting
11   this memo?
12                   MR. MARINO:  The document
13         retention policy?
14                   MR. PLACITELLA:  The doc --
15         this memo right here, document
16         retrieval - discontinued operations.
17                   MR. MARINO:  Thank you.
18                   THE WITNESS:  I don't recall.
19   BY MR. PLACITELLA:
20         Q.    Okay.  So if Dr. Hemstock
21   testified that you were the author of the
22   memo, does that refresh your recollection?
23                   MR. MARINO:  Objection to the
24         form of the question.  Can you show him
```



Page 164

1          that testimony by Dr. Hemstock?

2                    MR. PLACITELLA:  I can go dig

3          it out at lunchtime.

4                    MR. MARINO:  Well, I -- you

5          don't need to.

6                    MR. BOYLE:  We have it right

7          here.

8                    MR. MARINO:  I have it right

9          here.

10                    MR. PLACITELLA:  Okay.

11                    MR. MARINO:  So I'm looking at

12          page 34, lines -- line -- the question

13          begins on line 6.

14                    MR. PLACITELLA:  Well, hold on

15          for a second.  Is this -- because let me

16          pull -- let me find it.

17                    MR. MARINO:  Yeah, please.

18                    MR. PLACITELLA:  Okay.  What?

19                    MS. CALLAHAN:  Is that the tab?

20          Is that the tab?

21                    MR. PLACITELLA:  Uh-huh.

22                    MS. CALLAHAN:  Right there.

23                    MR. PLACITELLA:  Okay.  No,

24          it's not the one.  It's a different one.



Page 165

```
1          Give me a second.
2               Why don't you give me your
3      page.  I'm happy to read it.
4               MR. MARINO:  You -- would you
5      like to read it?
6               MR. PLACITELLA:  Well, I'm
7      happy to read it.  Just tell me what you
8      want me to read.
9               MR. MARINO:  It's highlighted.
10              MR. PLACITELLA:  Just to cut
11      things shorter.
12  BY MR. PLACITELLA:
13      Q.    Okay.  Had you ever seen the
14  testimony from the Sampson case of
15  Dr. Hemstock?
16              MR. MARINO:  Would you -- stop.
17              MR. PLACITELLA:  I'm just --
18      I'm just asking --
19              MR. MARINO:  Either -- either
20      do as I was going to do, which is what
21      you said you were going to do, or let me
22      do it.  But don't go off into another --
23              MR. PLACITELLA:  It's my
24      question, with all due respect to you,
```



Page 166

```
 1      okay.
 2                  MR. MARINO:  I just -- I just
 3      want you to ask him, because you made a
 4      representation to him in a hypothetical
 5      fashion that I think misstates the
 6      testimony.
 7                  MR. PLACITELLA:  I'm happy to
 8      read it.
 9                  MR. MARINO:  Please do.
10                  MR. PLACITELLA:  I'm just
11      asking him if he's ever seen it before.
12                  MR. MARINO:  Okay.  Then
13      let's --
14  BY MR. PLACITELLA:
15      Q.    Have you ever seen a deposition
16  of Dr. Hemstock in the Sampson case?
17      A.    I -- I don't recall it.
18      Q.    Okay.
19      A.    I may have in the course of this.
20      Q.    Okay.  Now -- and I'll go back
21  and pull mine at -- at lunchtime but Mr. --
22                  MR. MARINO:  Well, I'm happy
23      to -- we -- we can -- we can let --
24      Chris, just --
```



Page 167

```
 1                    MR. PLACITELLA:  Let me just
 2         read it.
 3                    MR. MARINO:  If you want to
 4         delay, you can do that.  I'm not --
 5                    MR. PLACITELLA:  Let me just
 6         read it.
 7                    MR. MARINO:  All right.
 8                    MR. PLACITELLA:  Okay.
 9                    MR. MARINO:  If you want to
10         delay and do it when you pull it out, do
11         it when you pull it out.
12    BY MR. PLACITELLA:
13         Q.    Okay.  Do you have any
14    recollection of having a role in drafting the
15    March 7th, 1984, memo?
16         A.    No, I don't -- do not.
17         Q.    Okay.  Do you have any
18    recollection of anybody in your department
19    having a role --
20                    MR. FARRELL:  Objection to
21         form.
22    BY MR. PLACITELLA:
23         Q.    -- in drafting that memo?
24         A.    No.
```



Page 168

1      Q.     Okay.  In the memo, did you --

2   let me ask this question, did you see this

3   memo before it went out?

4                MR. FARRELL:  Objection to

5        form.

6                THE WITNESS:  I don't know.

7   BY MR. PLACITELLA:

8      Q.     Would a memo like this be able to

9   go out without your approval?

10                MR. FARRELL:  Objection to

11        form.

12                MR. TUNIS:  Objection.

13                MR. FARRELL:  Foundation and

14        calls for speculation.

15                THE WITNESS:  Glenn Hemstock

16        did not report to me and could issue a

17        memo to his people whenever he wanted to.

18   BY MR. PLACITELLA:

19      Q.     So your -- your testimony is,

20   just to be clear, that Glenn Hemstock would

21   have been authorized to send a memo like this

22   without your approval?

23      A.     I didn't say he would have been

24   authorized.  I said he could have done it.



Page 169

1      Q.      Okay.

2      A.      A memo like this, one would think

3   would be authorized by somebody in the legal

4   department.

5      Q.      Okay.  Is it your recollection

6   that a memo like this, as a matter of

7   practice and policy at Engelhard, could be

8   issued by Dr. Hemstock without approval from

9   the legal department?

10              MR. FARRELL:  Objection to form

11        and foundation.

12              THE WITNESS:  I think the key

13        is "as a matter of practice and policy."

14        It should not -- it would not be in

15        accordance with our policy for that to

16        happen.  However, it is possible that a

17        department head would do something

18        without checking with the legal

19        department.

20   BY MR. PLACITELLA:

21      Q.      Do you have any idea why the

22   department head would issue a memo like this

23   without checking with the legal department?

24              MR. FARRELL:  Objection; form;



Page 170

```
 1      foundation.

 2                  MR. MARINO:  Calls for

 3      speculation.

 4                  MR. TUNIS:  Mischaracterizes

 5      testimony.

 6  BY MR. PLACITELLA:

 7      Q.     Do you have any idea?

 8                  MR. FARRELL:  Misstates his

 9      testimony.

10                  THE WITNESS:  Oh, no.

11  BY MR. PLACITELLA:

12      Q.     Okay.  Now, in the second

13  paragraph, it says, "All information

14  contained in your files" -- and this was sent

15  to R&D, right -- "pertaining to these

16  operations," which included the Emtal talc

17  operation, correct?

18      A.     Yes.

19      Q.     Okay.

20      A.     It says Emtal.

21      Q.     -- "should be withdrawn and

22  placed in file boxes for discard.

23  Appropriate file boxes can be obtained from

24  Chuck Hachat at extension 5072."
```



Page 171

1                    Do you see that?

2        A.     Yes.

3        Q.     Who is Chuck Hachat.

4        A.     Hachat.

5        Q.     Hachat.

6        A.     He was sort of the office

7   manager.

8        Q.     Okay.  And it says, "Please keep

9   these boxes in your office area, available

10   for pick up on March 16th, 1984."

11                    Do you see that?

12        A.     Yes.

13        Q.     Okay.  And then it talks about

14   the intent to retain copies.

15                    Do you see that?

16        A.     Yes.

17        Q.     Okay.  Now, do you have a

18   recollection of this happening, that the

19   documents were gathered up from the R&D

20   department pursuant to this memo?

21                    MR. FARRELL:  Objection to

22        form.

23                    THE WITNESS:  I don't have a

24        recollection specific to the R&D



Page 172

```
 1        department.  I just know that there was a

 2        corporate-wide effort to implement the

 3        new policy.  And to the extent that any

 4        of the business groups required

 5        assistance or help in understanding the

 6        new policy, that they could call upon

 7        the -- the help of the attorney assigned

 8        to their group.

 9   BY MR. PLACITELLA:

10        Q.    Okay.  It says here, "Please

11   understand that it is our intent to retain

12   copies of those documents to be preserved

13   from discontinued operations only in our

14   central files and can be accessed there

15   should the need arise."

16              Do you see that?

17        A.    I see that.

18        Q.    Who was in charge of central

19   files?

20              MR. FARRELL:  Objection to

21        form; foundation.

22              THE WITNESS:  I think, although

23        I'm not sure about at the time, but it

24        was probably a man named Al Viner,
```



Page 173

```
 1          V-I-N-E-R.

 2     BY MR. PLACITELLA:

 3          Q.     Okay.  And who did he work for?

 4     Who was his direct -- what department was he

 5     in?

 6          A.     He probably worked for Chuck

 7     Hachat as part of the general office

 8     administration group.

 9          Q.     And do you have a -- and did --

10     was he part of legal?

11          A.     No.

12          Q.     Do you have a recollection of any

13     of the R&D files collected in 1984 being

14     transferred to your department?

15               MR. FARRELL:  Objection to form

16          and foundation.

17               THE WITNESS:  I do not.

18     BY MR. PLACITELLA:

19          Q.     Okay.  Do you recall whether,

20     before a document could be discarded,

21     pursuant to your document retention policy,

22     whether those documents had to be reviewed by

23     anybody in legal?

24               MR. FARRELL:  Objection to
```



Page 174

```
 1       form; foundation.
 2                  THE WITNESS:  No.
 3  BY MR. PLACITELLA:
 4       Q.      Okay.  Before documents related
 5  to research and development could be
 6  discarded that were the subject of pending
 7  litigation, would they have to be reviewed by
 8  legal?
 9                  MR. FARRELL:  Objection to form
10       and foundation.
11                  MR. TUNIS:  Objection; form.
12       Same.
13                  THE WITNESS:  If they were a
14       subject of pending litigation, they would
15       have been subject to a hold.  And legal
16       would be involved in lifting that hold.
17  BY MR. PLACITELLA:
18       Q.      So if there were cases pending
19  when this memo was issued, would the
20  documents first have to go to legal?  If
21  there were -- let me rephrase the question.
22                  If there were Emtal litigation
23  cases pending at the time of Dr. Hemstock's
24  memo, would those documents have to be first
```



Page 175

1    sent to legal before that they could be

2    discarded?

3                    MR. FARRELL:  Objection to

4        form --

5                    MR. TUNIS:  Objection to form.

6                    MR. FARRELL:  -- foundation;

7        misstates Dr. Hemstock's memo.

8                    THE WITNESS:  I -- I can't

9        answer.

10                   MR. PLACITELLA:  Okay.

11                   THE WITNESS:  I -- I don't

12       know.

13                   MR. PLACITELLA:  Okay.  What do

14       you -- how do you want to handle lunch?

15                   MR. MARINO:  Do you want to go

16       off?

17                   MR. PLACITELLA:  Yeah.  Go

18       ahead.

19                   THE VIDEOGRAPHER:  The time is

20       now 12:01 p.m.  We're going off the

21       record.

22                   (Whereupon, there was a

23            discussion held off the record.)

24                   (Whereupon, a lunch recess was



Page 176

```
 1              taken.)

 2                   THE VIDEOGRAPHER:  The time is

 3        now 1:07 p.m.  We are back on the record.

 4                   MR. PLACITELLA:  We're ready.

 5        Kevin, are you ready?

 6                   MR. MARINO:  I'm ready.

 7    BY MR. PLACITELLA:

 8        Q.    Okay.  So Mr. Marino was correct

 9    before, that it -- it was actually BASF who

10    identified you.

11                   Could you go to -- you have in

12    front of you Exhibit 41.

13        A.    Uh-huh.

14        Q.    And could you go to response No.

15    10 on page 11.

16        A.    All right.

17        Q.    Do you see where it says,

18    "Identify all persons and participants

19    involved in the development, drafting,

20    revising, dissemination, and execution of the

21    March 7, 1984 memorandum by Dr. Glen

22    Hemstock."

23                   Do you see that?

24        A.    Uh-huh.  Yes.
```



Page 177

1       Q.      And do you see the response is --

2    BA -- after an objection, "BASF identifies:

3    Glen Hemstock; Arthur Dornbusch; Tom Halket;

4    and attorneys from Cahill Gordon."

5               Do you see that?

6       A.      Yes.

7       Q.      All right.  Does that refresh

8    your recollection as to whether you were

9    involved in the drafting of the March 7th,

10   1984 memo we went over this morning?

11      A.      No, it doesn't.

12      Q.      It should have been marked

13   Exhibit 15.

14      A.      No.

15      Q.      All right.  As you sit here

16   today, what is your testimony, were you

17   involved in -- I want to go through each one

18   specifically.

19              Did you have any role in the

20   development of the March 7th, 1984 memo?

21              MR. FARRELL:  Objection to form

22         and foundation.

23              THE WITNESS:  Not that I

24         recall.



Page 178

1    BY MR. PLACITELLA:

2         Q.     Okay.  How about next, drafting?

3                MR. FARRELL:  Same objections.

4                THE WITNESS:  Same answer.

5    BY MR. PLACITELLA:

6         Q.     Revising?

7                MR. FARRELL:  Same objections.

8                THE WITNESS:  No.

9    BY MR. PLACITELLA:

10        Q.     Dissemination?

11               MR. FARRELL:  Same objections.

12               THE WITNESS:  No.

13               MR. MARINO:  Please speak up

14    just a little bit, okay.

15               THE WITNESS:  Yeah.  Okay.

16    I -- I don't recall any of this.

17    BY MR. PLACITELLA:

18        Q.     Or execution?

19               MR. FARRELL:  Same objections.

20               THE WITNESS:  No.

21    BY MR. PLACITELLA:

22        Q.     Okay.  Now, as it relates to

23    Dr. Hemstock, I think this is where

24    Mr. Marino was before, on page 35, he's



Page 179

1   asked:  "And Mr. Dornbusch was who?"

2                    "He was head of the legal

3   department at the time."

4                    "And he worked at Menlo Park?"

5                    "He did."

6                    "Do you know who physically

7   drafted this memo?"

8                    "No I can't tell you who

9   physically drafted.  I don't know."

10                   "But the legal department

11  basically told you to send this memo out,

12  right?"

13                   Answer:  "Yes."

14                   Now, I think before that, he

15  actually asked you something -- a question

16  about Mr. Dornbusch.  Hold on for a second.

17  I got it.  Hold on.

18                   MR. FARRELL:  What are you

19      reading from Chris?  Is this Sampson?

20                   MR. PLACITELLA:  Yeah.

21                   MR. FARRELL:  This is Hemstock

22      in Sampson?

23                   MR. PLACITELLA:  Yeah.  Well, I

24      don't have the page.



Page 180

```
 1    BY MR. PLACITELLA:

 2         Q.    So Mr. -- Mr. Marino was correct.

 3         A.    Uh-huh.

 4         Q.    Do you have any recollection of

 5    legal telling you to send that -- legal

 6    telling Dr. Hemstock to send out this memo?

 7              MR. FARRELL:  Objection to form

 8         and foundation.

 9              THE WITNESS:  No.

10    BY MR. PLACITELLA:

11         Q.    Okay.  Now, do you have any

12    recollection of reviewing any of the

13    materials that were retrieved pursuant to the

14    March 7, 1984 memo?

15              MR. FARRELL:  Objection to

16         form.

17              THE WITNESS:  No.

18    BY MR. PLACITELLA:

19         Q.    Did you -- or -- is it you don't

20    remember, it didn't happen, or what?

21              MR. FARRELL:  Objection to

22         form.

23              THE WITNESS:  I don't remember.

24    BY MR. PLACITELLA:
```



Page 181

```
 1        Q.     Okay.  And Dr. Hemstock, on

 2   page 62 -- do you have that, Kevin?

 3                   MR. MARINO:  I do.

 4   BY MR. PLACITELLA:

 5        Q.     Okay.  He's asked the following

 6   question --

 7                   MR. BOYLE:  What line?

 8                   MR. PLACITELLA:  Fifteen.

 9   BY MR. PLACITELLA:

10        Q.     "After these documents were

11   retrieved pursuant to the March 7, 1984 memo,

12   where did they physically go?"

13                   Answer:  "I can't answer the

14   question except that they were sent to the

15   central storage, central storage repository

16   in the legal department, as best I know."

17                   Question:  "Who became the

18   custodian of those documents?"

19                   Answer:  "I would assume it

20   would be Mr. Dornbusch."

21                   Do you see that?

22        A.     I see it.

23                   MR. PLACITELLA:  All right.  Is

24        there anything else you want me to read
```



Page 182

```
1          that's connected to that?  Because I see

2          you flipping through the pages furiously,

3          Kevin?

4                    MR. MARINO:  No.  You know that

5          when I flip furiously --

6                    MR. PLACITELLA:  Okay.

7                    MR. MARINO:  -- it's a much

8          different look than this.

9    BY MR. PLACITELLA:

10        Q.    Okay.  So does that refresh your

11   memory as to whether you took possession of

12   the documents that were retrieved pursuant to

13   the March 7, 1984 memo?

14        A.    No.

15        Q.    Okay.  Now -- fifty -- 57.

16                   MR. MARINO:  Thank you.

17                   MR. FARRELL:  Thank you.

18   BY MR. PLACITELLA:

19        Q.    I've given you -- let me put it

20   up here for everybody to see -- Answers to

21   Interrogatories served on behalf of Engelhard

22   Corporation in the United States District

23   Court for the Eastern District of

24   Pennsylvania.
```



Page 183

1              Do you see that?

2      A.    Yes.

3      Q.    Okay.  And if you look at the

4  second to last page, do you see they're

5  certified by Charles Carter?

6      A.    Yes.

7      Q.    Okay.  And he was an executive at

8  Engelhard, correct?

9              MR. FARRELL:  Objection to

10        form.

11              THE WITNESS:  Yes.

12  BY MR. PLACITELLA:

13      Q.    Who selected Charles Carter to

14  verify the discovery responses?

15      A.    I don't know.  I don't recall.

16      Q.    Okay.  Now, if you go to No. 12,

17  which I believe is on page 11, it says,

18  "Identify all past and present officers,

19  agents, servants, employees, representatives,

20  consultants, expert witnesses, or independent

21  contractors of this defendant who have ever

22  testified or been deposed in connection with

23  any claim or a lawsuit for asbestos-related

24  disease or exposure."



Page 184

```
 1                  Do you see that?

 2      A.     I see it, yes.

 3      Q.     And then it asks for copies of

 4  the transcripts, et cetera.

 5                  Do you see that?

 6      A.     Yes.

 7      Q.     Do you see underneath that,

 8  what's the answer?

 9      A.     None.

10      Q.     Is that truthful?

11             MR. BOISE:  Objection; form.

12             MR. FARRELL:  Objection to form

13      and foundation.

14  BY MR. PLACITELLA:

15      Q.     Is that accurate?

16             MR. BOISE:  Same objections.

17             MR. MARINO:  Wait.  Can we

18      allow Mr. Dornbusch the opportunity to

19      review these.

20             MR. PLACITELLA:  Absolutely.

21             MR. MARINO:  Thank you.

22             THE WITNESS:  I don't know.

23  BY MR. PLACITELLA:

24      Q.     Do you --
```



Page 185

```
 1        A.      I don't know.

 2        Q.      So here, the representation

 3   that's being made by Engelhard, that no one

 4   was ever deposed in any asbestos case,

 5   correct?

 6                    MR. FARRELL:  Objection to

 7          form; foundation.

 8                    MR. MARINO:  Just take your

 9          time and review the document.

10                    MR. FARRELL:  It misstates the

11          document.

12                    MR. MARINO:  Please take your

13          time and review the document.

14                    MR. FARRELL:  Can I have the

15          question again, please.

16                    THE WITNESS:  Yeah.  The

17          question was?

18                    MR. PLACITELLA:  I'll -- I'll

19          reframe it.

20                    THE WITNESS:  Okay.

21   BY MR. PLACITELLA:

22        Q.      This does not mention the

23   depositions taken of the Engelhard

24   scientists, correct?
```



Page 186

1        A.      That --

2                MR. FARRELL:  Objection to

3        form.

4                THE WITNESS:  That is correct,

5        yes.

6   BY MR. PLACITELLA:

7        Q.      All right.  And they were clearly

8   known that they were taken to Engelhard at

9   the time that these Interrogatories were

10  answered, weren't they?

11               MR. FARRELL:  Objection to

12       form.

13  BY MR. PLACITELLA:

14       Q.      Engelhard knew that they were

15  deposed?

16               MR. FARRELL:  Objection to

17       form; foundation.

18               MR. MARINO:  It's -- and also

19       object to the form.

20               Can you clarify the question,

21       please, Chris.

22  BY MR. PLACITELLA:

23       Q.      Engelhard was aware that

24  Dr. Hemstock, Dr. Triglia and Dr. Gale were



Page 187

1    deposed and gave testimony under oath,

2    correct, at the time that these

3    Interrogatories were answered?

4                    MR. FARRELL:  Objection to form

5        and foundation.

6                    THE WITNESS:  Okay.  Well, the

7        date of these was September 12, 1995.

8                    MR. PLACITELLA:  Right.

9                    THE WITNESS:  And the testimony

10       of Dr. Hemstock and Triglia was in 1984.

11       So it would appear to be inaccurate.

12   BY MR. PLACITELLA:

13       Q.    Okay.  Now, I'm going to show you

14   what's been marked Exhibit 57.  Take your

15   time and take a look at it.  And I --

16                   MR. TUNIS:  Chris, is this a

17       different set of Interrogatories?

18                   MR. PLACITELLA:  Yes, it is.

19       Let me identify them for the record.

20                   MR. TUNIS:  Yeah.  Could you do

21       that, please.

22                   MR. PLACITELLA:  Sure.  Good

23       point.

24   BY MR. PLACITELLA:



Page 188

```
 1      Q.     These are Responses to

 2  Interrogatories submitted to the Supreme

 3  Court of the State of New York, in -- in Re:

 4  New York City Asbestos Litigation, and

 5  underneath that, the caption of Steven

 6  Chernick.

 7              Do you see that?

 8              And if you go to No. 63 --

 9  this was in 2002, correct?

10      A.     This was apparently in April of

11  2002.  And I see Interrogatory No. 63 and the

12  response to it appear to be similar to the

13  previous Interrogatory.

14      Q.     And that's not accurate, is it?

15              MR. FARRELL:  Objection to

16          form; foundation.

17  BY MR. PLACITELLA:

18      Q.     It says here, "If any of your

19  employees or officers have testified" --

20              MR. FARRELL:  Are you

21          withdrawing the last question?

22              MR. PLACITELLA:  No.  But he

23          already answered.

24              MR. FARRELL:  He hasn't
```



Page 189

```
 1        answered the question.  I was in the

 2        middle of serving an objection.

 3                   MR. PLACITELLA:  I'll withdraw

 4        and ask that -- this question.

 5   BY MR. PLACITELLA:

 6        Q.    It says, "If any of your

 7   employees or officers have testified at trial

 8   or by deposition or before any Congressional

 9   Committee or administration agency concerning

10   asbestos exposure, pulmonary or

11   asbestos-related disease or industrial

12   hygiene relating to asbestos use."

13                   Do you see that?  And it says

14   if none -- no, right?

15                   MR. FARRELL:  Objection.

16                   Which question are you on?

17                   MR. PLACITELLA:  Sixty-three.

18                   THE WITNESS:  Well, this

19        question talks about asbestos.

20                   So before -- go ahead.

21                   MR. PLACITELLA:  He's answering

22        a question.  Let him answer the question.

23                   MR. FARRELL:  No, I.

24                   MR. PLACITELLA:  You can't --
```



Page 190

1       you can't interrupt in the middle of his

2       answer.  Let him finish answering the

3       question.

4              MR. MARINO:  He can interrupt

5       in the middle of his answer --

6              MR. FARRELL:  I -- I --

7              MR. MARINO:  -- to the extent

8       he wants to caution him --

9              MR. FARRELL:  Not to waive --

10             MR. MARINO:  Privileged

11      information.

12             MR. FARRELL:  -- work product,

13      exactly.

14             Mr. Dornbusch is giving you

15      his opinion about a document that he's

16      never seen before in his former capacity

17      as general counsel for the company,

18      about whether information is or is not

19      responsive to requests, is calling for

20      the lawyer's opinion about responses to

21      requests in the context of litigation

22      and implicates work product.  And that

23      was why I interrupted, because he was

24      about to offer his opinion as opposed to



Page 191

1           factual information.

2                       So I would instruct

3           Mr. Dornbusch not to offer his opinions

4           on these subjects because they are

5           protected by privilege and work product.

6    BY MR. PLACITELLA:

7           Q.    I'll ask the question this way.

8    There's no mention in response to this

9    question about the deposition of Dr. Hemstock

10   where he talked about asbestos testing,

11   correct?

12                      MR. FARRELL:  Objection to form

13          and foundation.

14                      MR. MARINO:  You're just asking

15          him to read the answer and say what it

16          says?

17   BY MR. PLACITELLA:

18          Q.    There's no mention in response to

19   the Interrogatory about Dr. Hemstock,

20   correct, and his testimony?

21          A.    Correct.

22          Q.    There's no mention about the

23   testimony given by Peter Gale and about how

24   his testing found asbestos in the Emtal talc,



Page 192

1    correct?

2                        MR. TUNIS:  Objection.

3                        MR. FARRELL:  Objection to form

4         and foundation.

5                        THE WITNESS:  That's correct.

6    BY MR. PLACITELLA:

7         Q.    There's no mention about the

8    deposition of Mr. -- Dr. Triglia, correct?

9         A.    Correct.

10                       MR. FARRELL:  Same objections.

11   BY MR. PLACITELLA:

12        Q.    Okay.  Now, can you go to the

13   second page of the document.

14                       Do you see under question one,

15   where it asks for the people answering the

16   Interrogatories?

17        A.    I do.

18        Q.    And who does it say answered the

19   Interrogatories?

20        A.    Michael J. Hassett, associate

21   general counsel.

22        Q.    He worked for you, correct?

23        A.    Yes, he did.

24        Q.    And Mr. Hassett would have had



Page 193

```
 1    access to the testing evidence, correct --
 2                    MR. FARRELL:  Objection to
 3         form; foundation.
 4    BY MR. PLACITELLA:
 5         Q.     -- for asbestos in Emtal talc?
 6                    MR. FARRELL:  Objection to
 7         form; foundation; misstates the record;
 8         assumes facts.
 9                    THE WITNESS:  I do not recall
10         Mike Hassett being involved in connection
11         with the talc litigation or the talc
12         business.  It's possible that he became
13         involved later at -- at the time of this
14         matter and was not aware of the
15         previous -- previous litigation.
16    BY MR. PLACITELLA:
17         Q.    So Mr. Hassett -- who authorized
18    him at the corporation to answer the
19    Interrogatories on behalf of the corporation?
20                    MR. FARRELL:  Objection to form
21         and foundation.  The witness has
22         testified he doesn't even recall Hassett
23         being involved in the litigation.  How
24         would he know who authorized him to do
```



Page 194

1        something in the litigation?

2                    MR. PLACITELLA:  That's a

3        speaking objection and not permitted

4        under the rules.

5                    MR. FARRELL:  We've been doing

6        this now for three hours.

7                    MR. PLACITELLA:  So could you

8        please -- could you please not do that.

9                    MR. FARRELL:  Objection to form

10       and foundation.

11                   MR. PLACITELLA:  Okay.  Okay.

12       Because I will --

13                   MR. FARRELL:  Lacks foundation.

14                   MR. PLACITELLA:  -- take that

15       to the Court, okay.  So I'd ask you to

16       comply with the rules and don't do that.

17       Okay?  Apparently --

18                   MR. FARRELL:  I'd ask that you

19       lay a proper foundation for your

20       questions.

21   BY MR. PLACITELLA:

22       Q.    Here's my foundation,

23   Mr. Dornbusch.  Does the Interrogatory

24   answers that were submitted on behalf of your



Page 195

1    corporation in fact indicate that Mr. Hassett

2    was supplying the information?

3                    MR. FARRELL:  Objection to form

4           and foundation.

5                    MR. MARINO:  Can you direct him

6           to the page of the Interrogatories where

7           it indicates that Mr. Hassett is

8           providing the information, please.

9                    MR. PLACITELLA:  Page 2.

10                    MR. MARINO:  Okay.

11                    MR. PLACITELLA:  State the full

12           name, address, telephone number, and

13           position of the corporate officer

14           answering these Interrogatories.

15                    MR. MARINO:  Right.

16                    MR. PLACITELLA:  Michael J.

17           Hassett, Esquire, associate general

18           counsel for Engelhard Corporation,

19           coordinated Engelhard's responses to the

20           standard set.

21                    MR. MARINO:  Right.

22    BY MR. PLACITELLA:

23           Q.     Do you see that?

24                    MR. MARINO:  And everybody sees



Page 196

```
 1      it.

 2              MR. PLACITELLA:  I'm going --

 3      I'm going --

 4              MR. MARINO:  My question to you

 5      is, what are you gaining from asking

 6      Mr. Dornbusch for hours to tell you what

 7      these documents say?  What is it -- what

 8      does it -- how does it advance the ball

 9      for you to ask this witness if, in fact,

10      where it says in an Interrogatory answer

11      that Mr. X provided the answers, it says

12      that Mr. X provided the answers.  That's

13      my only -- I don't want to -- it's not a

14      speaking objection, just to add -- I'm

15      just trying to give you my --

16              MR. PLACITELLA:  Is that

17      objection to form?

18              MR. MARINO:  I'm trying to have

19      you understand the reason for it, because

20      maybe that could streamline things a

21      little.

22              MR. PLACITELLA:  Right.

23              MR. MARINO:  That's all.

24              And ask him the question.
```



Page 197

```
 1          It's not -- you know, he'll -- it will

 2          be objected to or not objected to

 3          according to form.  He'll either be

 4          directed to answer or not to answer, as

 5          BASF determines.

 6                    But believe it or not, I'm --

 7          I'm actually trying to facilitate rather

 8          than impede.  I just don't understand

 9          what it adds.

10   BY MR. PLACITELLA:

11          Q.    Do you know who Mr. Hassett -- so

12   today's -- well, let me ask you this

13   question.  Today's the first day you ever

14   learned that Mr. Hassett, who worked for you

15   in the legal department, was involved in the

16   defense of the Emtal talc litigation?

17                    MR. FARRELL:  Objection to form

18          and foundation; misstates his testimony.

19                    THE WITNESS:  No.  I -- I -- I

20          was not aware of today.  I don't -- just

21          don't remember.  Obviously, at the time,

22          I probably knew that he -- he was

23          involved.  And I should also -- well,

24          okay.  I'll just leave it at that.
```



Page 198

```
 1    BY MR. PLACITELLA:

 2        Q.     What -- do you understand what

 3    his role was, his authorized role, for

 4    coordinating Engelhard's responses to

 5    standard discovery in the New York City

 6    litigation?

 7                    MR. FARRELL:  Objection to form

 8            and foundation.

 9                    THE WITNESS:  Well, other

10            than -- I mean, I would -- what you just

11            said, he was coordinating, pulling

12            together the facts to answer these

13            Interrogatories.

14    BY MR. PLACITELLA:

15        Q.     Well, do you know what facts were

16    made available to him or what sources of

17    information were made available to him in

18    order to provide sworn answers to discovery?

19                    MR. FARRELL:  Objection to

20            form; foundation; calls for speculation.

21                    THE WITNESS:  And I don't know.

22    BY MR. PLACITELLA:

23        Q.     Were the depositions of the

24    former Engelhard scientists who testified in
```



Page 199

1    the Westfall case made available to him?

2                    MR. FARRELL:  Same objections;

3        calls for speculation.

4                    THE WITNESS:  I don't know.

5    BY MR. PLACITELLA:

6        Q.    Did you understand that a

7    corporate off -- a lawyer working in your

8    department, when helping respond to

9    discovery, had an obligation to do a

10   reasonable investigation of the information

11   that was available to the corporation before

12   providing sworn answers?

13                   MR. FARRELL:  Objection to

14       form.

15                   THE WITNESS:  Yes.

16   BY MR. PLACITELLA:

17       Q.    Okay.  And do you know whether

18   either Cahill Gordon or yourself made the

19   Hem -- the Westfall file available to

20   Mr. Hassett in responding to these answers?

21                   MR. FARRELL:  Objection to form

22       and foundation; assumes facts; misstates

23       the record.

24                   THE WITNESS:  I don't know.



Page 200

```
 1   BY MR. PLACITELLA:

 2        Q.    Did you make available to

 3   Mr. Hassett the testing evidence that was

 4   found in your files that were -- that was the

 5   subject of the Hyde memo?

 6                  MR. MARINO:  Objection to that

 7        question.  That misstates the record.

 8                  MR. FARRELL:  Objection to form

 9        and foundation; misstates the record.

10   BY MR. PLACITELLA:

11        Q.    I'll ask the question a different

12   way.  You have P-1 here in front of you.

13                  Did you make available to

14   Mr. Hassett any of the information that's

15   contained in P-1 which was the memo -- or

16   attached to the memo written to you by

17   Mr. Hyde concerning the testing evidence in

18   Emtal talc?

19                  MR. MARINO:  Objection to form;

20        misleading.

21                  MR. FARRELL:  Objection to form

22        and foundation; misstates the record and

23        assumes facts.

24                  MR. PLACITELLA:  Why don't you
```



Page 201

```
 1        state what the record is so we know.

 2                   MR. FARRELL:   I'm happy to

 3        state what the record is.  This record is

 4        that the witness so far has testified to

 5        having no present recollection of Michael

 6        Hassett being involved in the case at all

 7        and no present recollection of the

 8        document you've labeled P-1 being in his

 9        file at any point in time, has never

10        before seen.  And you haven't laid any

11        foundation for the witness having before

12        seen the Chernick Interrogatory

13        responses.

14                   Moreover, we've been over and

15        over again on the fact that the document

16        was not in Mr. Dornbusch's possession at

17        this point in time.  And you're now

18        asking layer upon layer of speculation

19        and assumed facts to a witness who

20        said -- you've -- you still have not

21        established any foundation for a single

22        question you've asked about this

23        document, that the witness has never

24        seen before, apparently.
```



Page 202

```
 1                     MR. PLACITELLA:  Okay.

 2                     MR. FARRELL:  So that is what

 3         the record is.

 4                     MR. PLACITELLA:  Okay.

 5                     MR. FARRELL:  You're now asking

 6         misleading questions that are contrary to

 7         the record to a witness who has no

 8         personal knowledge of the answers you're

 9         trying to elicit.

10                     MR. PLACITELLA:  Okay.  Thank

11         you.

12    BY MR. PLACITELLA:

13         Q.     Now, did you make this document

14    available to Mr. Hassett when he was

15    coordinating discovery responses in the New

16    York City litigation?

17                     MR. FARRELL:  Objection to

18         form; foundation; misstates the record;

19         assumes facts.

20                     MR. MARINO:  I join in all

21         those objections.  That's not -- that's

22         not what the testimony has been, Chris,

23         in fairness.

24                     MR. PLACITELLA:  Okay.  The
```



Page 203

1          testimony will speak for itself.

2                    MR. MARINO:  Yes.

3     BY MR. PLACITELLA:

4          Q.    Did you make this document

5     available to him?

6                    MR. FARRELL:  Same objections.

7                    THE WITNESS:  I don't know.

8     BY MR. PLACITELLA:

9          Q.    Okay.  Did you make any of the

10    testing evidence concerning asbestos in Emtal

11    talc available to Mr. Hassett in coordinating

12    discovery responses in the New York City

13    litigation?

14                   MR. FARRELL:  Same objections;

15         assumes facts.

16                   THE WITNESS:  I don't -- I

17         don't know.  I don't -- I didn't even

18         recall, until you showed me this Exhibit

19         57, that there was a New York City

20         litigation.

21                   MR. PLACITELLA:  Can you give

22         me -- what was -- give me these.

23    BY MR. PLACITELLA:

24         Q.    For the record, I'm just going to



Page 204

1    identify them, and then I'll hand them to

2    everyone.  Exhibit 108 is a January 22nd,

3    1990 letter to a Mr. Hobson from Eric Sarner.

4    Exhibit 121 is an April 23rd, 1990 letter

5    from Eric Sarner to Jim LaFevor.  Exhibit 210

6    is a January (sic) 16th, 1991 letter from

7    Eric Sarner to David Shroyer.  Exhibit 148 is

8    a November 18th, 2003 letter from Patrick

9    Newell to a Mr. Rudberg.  I ask you to take a

10   look at these.

11        A.    (The witness complies.)  Okay.

12        Q.    Okay.  And all of those letters

13   talk about requesting dismissals of cases; is

14   that fair?

15        A.    Yes.

16             MR. FARRELL:  Objection to

17        form.

18   BY MR. PLACITELLA:

19        Q.    Okay.  And in all of those

20   letters, Mr. Fliegel, is cc'd, correct?

21             MR. FARRELL:  Objection to

22        form; misstates the letters.

23             THE WITNESS:  I did not -- I

24        did not check.  The first one, Exhibit



Page 205

```
 1        148, does not name Fliegel.  It names

 2        Hassett, Peter Sloane and Mike Sullivan.

 3   BY MR. PLACITELLA:

 4        Q.    You're correct about that.

 5        A.    He's named in Exhibit 210 and

 6   123.

 7               MR. MARINO:  Just for clarity,

 8        named, you mean copied on, right?

 9               THE WITNESS:  Copied on, yeah.

10        Copied in -- on 121 and 108.

11   BY MR. PLACITELLA:

12        Q.    Okay.  Now, do these letters

13   indicate to you that Cahill Gordon was

14   keeping Mr. Fliegel in -- up to speed in

15   terms of what was going on in the litigation?

16               MR. FARRELL:  Objection to

17        form; foundation; calls for speculation.

18               MR. MARINO:  Are -- just for

19        clarity, are you asking him if he has

20        some independent knowledge of that, or

21        are you asking him to read these letters,

22        see that Mr. Fliegel is copied on them,

23        and -- and into it -- the conclusion

24        that you suggested?
```



Page 206

1          MR. PLACITELLA:  Well, I'll ask

2      the first question.

3          MR. MARINO:  Please.

4  BY MR. PLACITELLA:

5      Q.    Do you know that -- are you aware

6  that Cahill Gordon was keeping Mr. Fliegel

7  informed as to what was going on in the

8  litigation?

9          MR. TUNIS:  Objection to the

10     form.

11         THE WITNESS:  I was not aware

12     of it until I -- I saw these exhibits.

13  BY MR. PLACITELLA:

14     Q.    Okay.  Did you -- Did you ever

15  authorize either one of your lawyers or

16  Cahill Gordon to seek dismissals on the basis

17  that there -- Emtal talc was asbestos free?

18         MR. FARRELL:  Objection to

19     form; foundation.

20         Are you asking him whether

21     weather he gave that specific

22     instruction?

23         MR. PLACITELLA:  The question

24     stands.



Page 207

1                          MR. FARRELL:  Then I need to

2          assert attorney-client privilege and

3          instruct you not to answer it.

4                          THE WITNESS:  I'm not --

5                          MR. FARRELL:  You've been

6          instructed not to answer the question.

7                          THE WITNESS:  -- I'm going

8          to answer --

9                          MR. MARINO:  Just no response.

10   BY MR. PLACITELLA:

11        Q.     Were you aware that the lawyers

12   who worked for you and Cahill Gordon were

13   seeking dismissal of talc cases based upon a

14   representation than there was no asbestos in

15   the Emtal talc?

16                          MR. FARRELL:  Objection to

17          form; foundation; assumes facts.

18                          MR. BOISE:  Misstates the

19          record.

20                          THE WITNESS:  I'm -- I don't

21          recall if I was or was not.

22   BY MR. PLACITELLA:

23        Q.     Would that have been an accurate

24   representation?



Page 208

```
 1                    MR. FARRELL:  Objection to

 2         form; foundation; work product; and

 3         attorney-client privilege.

 4                    I instruct you not to answer

 5         the question.

 6    BY MR. PLACITELLA:

 7         Q.    I'm going to show you what's been

 8    marked as Exhibit 5.

 9                    MR. MARINO:  Thank you.

10    BY MR. PLACITELLA:

11         Q.    Exhibit 5 is a -- an Affidavit

12    executed by William Ashton.

13                    Have you ever seen that

14    Affidavit before?

15                    MR. TUNIS:  Chris, are you

16         going to flash this on the screen,

17         please.

18                    MR. PLACITELLA:  Okay.

19    BY MR. PLACITELLA:

20         Q.    Do you see that?

21         A.    Yes.

22         Q.    Have you ever seen this before?

23         A.    I don't know.

24         Q.    Do you know who William Ashton
```



Page 209

1    was?

2        A.    I -- I wouldn't off the top of my

3    head.  I see in the Affidavit that he was

4    employed by the Johnson & Johnson company.

5        Q.    Do you have a recollection

6    whether you ever authorized your attorneys to

7    use the Ashton Affidavit to secure dismissals

8    of cases around the country?

9              MR. FARRELL:  Objection to form

10       and foundation.

11             Can you answer that with a yes

12       or no, Mr. Dornbusch?

13             THE WITNESS:  No.

14             MR. FARRELL:  Do you know the

15       answer to the question?

16             THE WITNESS:  No, I don't.

17   BY MR. PLACITELLA:

18       Q.    Okay.  I'm going to show you --

19   you have Dornbusch-2 in front of you?  Are we

20   keeping these straight?

21             MR. BOISE:  Is this log

22       excerpts?

23             MR. PLACITELLA:  Yes.

24   BY MR. PLACITELLA:



Page 210

1      Q.     I'm going to -- I put in front of

2   you the Dornbusch-2, which was the privilege

3   log.  And specifically, I'm looking at entry

4   195 and it looks like 572.

5              MR. MARINO:  Can you give us

6         the date, by date, please.

7              MR. PLACITELLA:  4/28/89,

8         5/18/89, respectively.  It's at the very

9         top of the page.

10             MR. MARINO:  4/28, and what's

11        the second one?

12             MR. PLACITELLA:  5/18.

13             MR. MARINO:  Got it.

14   BY MR. PLACITELLA:

15     Q.     This log addresses an exchange

16   between -- the first one, between yourself

17   and Mr. Sloane.

18             Do you see that?

19     A.     Yes.

20     Q.     And it talks about a letter

21   transmitting attorney-client communication

22   regarding the Ashton Affidavit?

23     A.     I see that.

24     Q.     And then 572 is an exchange



Page 211

1  between Mr. Dembrow -- he worked for Cahill

2  Gordon?

3       A.     Yes.

4       Q.     -- okay, yourself, Mr. Fliegel

5  and Mr. Sloane.

6              Do you see that?

7       A.     I do.

8       Q.     And it's memo and attachments

9  transmitting the Ashton Affidavit.

10             Do you see that?

11      A.     I do, yes.

12      Q.     Does that refresh your

13  recollection as to whether you had ever seen

14  or known about the Ashton Affidavit being

15  used in litigation?

16             MR. FARRELL:  Objection to form

17      and foundation.

18             THE WITNESS:  No.

19  BY MR. PLACITELLA:

20      Q.     Okay.  Do you have Exhibit 41 in

21  front of you?

22      A.     Yes.

23      Q.     It's your Answers to

24  Interrogatories.  Interrogatory No. 11 --



Page 212

```
 1                    MR. TUNIS:  Could you flash it
 2        on the screen, please.
 3                    MR. PLACITELLA:  I'm sorry.  I
 4        thought I did that.
 5   BY MR. PLACITELLA:
 6        Q.     -- asks, "Identify all persons
 7   and participants involved in the development,
 8   drafting, revising, dissemination and
 9   execution of the May 8th, 1989 affidavit of
10   Mr. William H. Ashton, (Attached as Ex. 4 to
11   Plaintiffs' Second Amended Class Action
12   Complaint)."
13                    Do you see that?
14        A.     Yes, I do.
15        Q.     It says, after the objections,
16   "BASF states that Cahill attorneys, including
17   Peter Sloane and Ira Dembrow, drafted,
18   revised, and worked with William Ashton to
19   finalize and sign the May 8, 1989 affidavit
20   of William H. Ashton.  Attorneys for Johnson
21   & Johnson also were involved.  BASF further
22   states that, in addition to various other
23   materials that vary by case, Cahill attorneys
24   disseminated Mr. Ashton's May 8, 1989 at
```



Page 213

1    various points in time while Cahill served as

2    national counsel in Engelhard personal injury

3    litigation from 1989 until the 2000s.

4                      Did I read that correct so

5    far?

6         A.    Yes.

7         Q.    Okay.  Now, I have some questions

8    about that.

9                      Do you know -- were you aware

10   this was going on?

11                     MR. MARINO:  Objection to the

12        form of the question.

13   BY MR. PLACITELLA:

14        Q.     That that -- were you aware that

15   this Affidavit was being drafted in

16   conjunction with Johnson & Johnson and then

17   being disseminated around the country?

18                     MR. FARRELL:  Objection to

19        form.

20                     THE WITNESS:  I don't remember.

21   BY MR. PLACITELLA:

22        Q.     Do you know why Johnson & Johnson

23   was involved in drafting an Affidavit related

24   to the defense of your cases?



Page 214

```
 1                    MR. FARRELL:  Objection to the
 2         form; foundation.
 3                    You may give a yes or no
 4         answer to that.
 5                    THE WITNESS:  No.
 6  BY MR. PLACITELLA:
 7      Q.    Is this the first time that
 8  you've learned that Johnson & Johnson was
 9  involved in the defense of Emtal talc cases
10  on behalf of Engelhard?
11                    MR. FARRELL:  Objection to form
12         and foundation; misstates the record.
13                    MR. MARINO:  Join in that
14         objection.
15                    THE WITNESS:  I knew that the
16         mine had been purchased from Johnson &
17         Johnson.  So I'm not surprised that they
18         might -- that they would have been
19         involved in the defense, but I don't
20         recall working with them.
21  BY MR. PLACITELLA:
22      Q.    Okay.  Can you go back to
23  Dornbusch-3.  Oh, you don't have it.  I'm
24  sorry.
```



Page 215

1              Do you know who -- let me

2      just -- take a second to take a look at it.

3          A.    (The witness complies.)

4              MR. FARRELL:  What are we

5          looking at here?

6              MR. PLACITELLA:  We are -- what

7          we have is an excerpt of the BASF

8          privilege log.

9      BY MR. PLACITELLA:

10         Q.    So let me refer your -- you to

11     directly to the last two entries on the page.

12     Do you see where it states 7/18/1995, and

13     there's an exchange between yourself and a

14     Mr. O'Shaughnessy?

15         A.    Well, there's -- O'Shaughnessy is

16     the author and it's -- the recipients are

17     listed as Les Fliegel, myself, and Peter

18     Sloane.

19         Q.    Correct.

20              Do you know who

21     Mr. O'Shaughnessy was?

22         A.    No.

23         Q.    Okay.  Do you know whether he was

24     counsel to Johnson & Johnson.



Page 216

```
 1                    MR. FARRELL:  Objection to form

 2        and foundation.

 3                    THE WITNESS:  I have no idea --

 4        no information about that.

 5                    MR. PLACITELLA:  Okay.

 6                    THE WITNESS:  I would have

 7        guessed he was a Cahill lawyer, but --

 8   BY MR. PLACITELLA:

 9        Q.    Okay.  So you don't know who he

10   is?

11        A.    No.

12        Q.    Okay.  Do you know you -- well, I

13   want to go up to the third and -- to the

14   fourth -- the third and fourth entry.  The

15   first date is 4/4/1989.  And then there's

16   another entry from 4/4/89.

17                    Do you see that?

18        A.    Yes.

19        Q.    Okay.  And it -- and the subject

20   is, Memo providing legal analysis regarding

21   preparation of the Ashton Affidavit.

22                    Do you see that?

23        A.    Yes.

24        Q.    Okay.  And there is an exchange
```



Page 217

1    between Mr. Dembrow and Mr. Sloane,

2    Mr. Sarner, and Mr. O'Shaughnessy.

3               Do you see that?

4         A.    Yes.

5         Q.    All right.  Do you have any idea

6    what his role was, Mr. O'Shaughnessy, in --

7    in drafting of the Ashton Affidavit?

8               MR. FARRELL:  Objection to

9         form; foundation.

10              THE WITNESS:  No.

11   BY MR. PLACITELLA:

12        Q.    Okay.  Can you go back to

13   Dornbusch-2, please.

14              MR. FARRELL:  Is that the other

15        priv log?

16              MR. PLACITELLA:  Uh-huh.  Yes.

17   BY MR. PLACITELLA:

18        Q.    Can you go down to --

19              MR. TUNIS:  That's on the

20        screen?

21              MR. PLACITELLA:  Yep.

22   BY MR. PLACITELLA:

23        Q.    -- the entry for 7/1/83.

24              MR. FARRELL:  That's the date,



Page 218

```
 1      Chris?

 2                  MR. PLACITELLA:  Yes.

 3   BY MR. PLACITELLA:

 4      Q.    And that's --

 5      A.    On --

 6      Q.    -- it talks about --

 7                  MR. MARINO:  On the second

 8      page?

 9                  MR. PLACITELLA:  Yes.

10                  THE WITNESS:  Okay.

11   BY MR. PLACITELLA:

12      Q.    It talks about a letter and

13   attachment containing legal strategy

14   regarding tolling agreement in Westfall

15   litigation.  And it's from Mr. Sloane to

16   yourself, Mr. Halket, Mr. Hyde, and Mr. Kohn.

17                  Do you see that?

18      A.    I do, yes.

19      Q.    Do you have a recollection of

20   entering into a tolling agreement in the

21   context of the Westfall litigation?

22                  MR. FARRELL:  Objection to

23      form.

24                  THE WITNESS:  No.
```



Page 219

1    BY MR. PLACITELLA:

2         Q.     Okay.  Did you ever enter into a

3    tolling agreement at any point in time with

4    Johnson & Johnson?

5                   MR. FARRELL:  Same objection.

6                   THE WITNESS:  I'm not aware of

7         it.

8    BY MR. PLACITELLA:

9         Q.     Okay.  Did you ever have any kind

10   of arrangement with Johnson & Johnson whereby

11   they would assist you with the defense if you

12   agreed not to sue them?

13                  MR. FARRELL:  Objection to the

14        form; foundation; privilege; common

15        interest privilege.  I instruct him not

16        to answer the question.

17                  MR. PLACITELLA:  Okay.  Give me

18        Exhibit 6.

19   BY MR. PLACITELLA:

20        Q.     Exhibit 6 is an August 18th, 1989

21   Affidavit drafted by Charles Carter -- or

22   signed by Charles Carter?

23        A.     Yes.

24        Q.     And he was an Engelhard



Page 220

1   executive?

2              MR. FARRELL:  Object to the

3        form.

4              THE WITNESS:  He was an

5        employee of Engelhard.

6   BY MR. PLACITELLA:

7        Q.    Okay.  And do you know who

8   authorized Charles Carter to sign this

9   Affidavit on behalf of Engelhard?

10             MR. FARRELL:  Objection to form

11       and foundation.

12             THE WITNESS:  No.

13  BY MR. PLACITELLA:

14       Q.    Okay.  Do you see on the -- do

15  you see where he says he does it based on his

16  personal knowledge under penalty of perjury?

17       A.    Yes.

18       Q.    Okay.  And do you see the third

19  paragraph, where it says, "In addition,

20  Engelhard does not currently possess any

21  testing data other than the data provided to

22  you by way of the Ashton Affidavit and the

23  report of Dr. Pooley"?

24             Do you see that?



Page 221

```
 1        A.     Yes.

 2        Q.     Is that an accurate statement --

 3               MR. FARRELL:  Objection.

 4   BY MR. PLACITELLA:

 5        Q.     -- from your knowledge of what

 6   was available to Engelhard --

 7               MR. FARRELL:  Objection to

 8        form.

 9   BY MR. PLACITELLA:

10        Q.     -- in terms of testing data?

11               MR. FARRELL:  Are you finished?

12               MR. PLACITELLA:  Yeah.

13               MR. FARRELL:  Object --

14        objection to form; foundation; calls for

15        speculation.

16               THE WITNESS:  I don't know.

17   BY MR. PLACITELLA:

18        Q.     Well, you had the testing data in

19   your possession, didn't you?

20        A.     In 1989, I don't know.

21               MR. FARRELL:  Same.

22   BY MR. PLACITELLA:

23        Q.     Okay.  So you don't know whether

24   this is an accurate statement or not?
```



Page 222

1          A.      I do not.

2                      MR. FARRELL:  Objection to

3          form; foundation; misstates the witness's

4          testimony.

5                      MR. MARINO:  The question also

6          misstates the record and is, in that

7          regard, a representation.

8    BY MR. PLACITELLA:

9          Q.      I'm just asking you --

10         A.      I -- I don't know.

11         Q.      Okay.  Based on what you knew

12   about the testing data that was in the

13   possession of Engelhard, would you have

14   authorized this Affidavit?

15                     MR. FARRELL:  Objection to

16         form; foundation; calls for speculation;

17         and misstates the record.

18                     MR. MARINO:  Objection;

19         misstates the record.

20   BY MR. PLACITELLA:

21         Q.      You can answer.

22         A.      It would depend on what -- what I

23   knew at the time.  If I -- and what I had in

24   my possession at the time.



Page 223

1      Q.      Okay.  Do you recall receiving a

2  copy of this Affidavit before it was sent

3  out?

4                  MR. FARRELL:  Objection to form

5      and foundation.

6                  THE WITNESS:  No.

7  BY MR. PLACITELLA:

8      Q.      Okay.  Can you go to Dornbusch-2

9  again, please.  Let me direct your attention

10  to the entry on the privilege log, Number

11  1472, 8/18/89.

12              Do you see that?

13      A.      Yes.

14      Q.      That's the date that the

15  Affidavit was signed, correct?

16      A.      Well, it was signed by that date.

17      Q.      Well, it indicates on the

18  Affidavit that it was signed on 8/18/89,

19  correct?

20      A.      No.  It says it -- it's

21  transmitting this signed Affidavit.

22      Q.      No.  I'm sorry.  We're talking --

23      A.      It was signed on or before that

24  date.



Page 224

```
 1       Q.      Do you see Mr. Carter's

 2   signature?

 3       A.      Yes.

 4       Q.      That was what date?

 5       A.      August 18.

 6       Q.      1989?

 7       A.      Yes.

 8       Q.      And this is -- according to this,

 9   this is a letter, an attachment, transmitting

10   the signed Affidavit by Mr. Carter to you on

11   the exact same date, correct?

12       A.      Correct.

13       Q.      Did there ever come a time

14   shortly before you retired where you became

15   aware of evidence --

16       A.      It's an ambulance.

17       Q.      -- related to the Westfall case?

18              MR. FARRELL:  Objection to form

19          and foundation.

20              Can you answer this with a yes

21          or no, Mr. Dornbusch, without getting

22          into the substance of any

23          communications?

24              THE WITNESS:  Yes.
```



Page 225

1                    MR. FARRELL:  Okay.  What is

2          the answer?

3                    THE WITNESS:  The answer is

4          yes.

5                    MR. FARRELL:  Okay.

6     BY MR. PLACITELLA:

7          Q.    And do you recall a case called

8     Martin?

9          A.    No.

10         Q.    Okay.  If you go to Exhibit 41

11    and go to question No. 14.  I'm sorry, it's

12    the wrong one.

13                   MR. TUNIS:  Chris, could you

14         identify or have the witness --

15                   MR. PLACITELLA:  Yeah, sure.

16                   MR. TUNIS:  -- identify what 41

17         is?

18                   MR. PLACITELLA:  Yeah,

19         absolutely.

20                   MR. TUNIS:  And put on the

21         screen the question that you are

22         referring to.  Thank you.

23    BY MR. PLACITELLA:

24         Q.    Okay.  The -- Exhibit No. 41,



Page 226

1   again, is the Interrogatory answers submitted

2   by BASF in this case.  And Interrogatory No.

3   12 indicates, Identify all BASF personnel

4   knowledgeable about, or involved in, the

5   matter captioned as Martin vs. Uniroyal,

6   filed in the Superior Court of the State of

7   Rhode Island.

8              Do you see that?

9   A.     No. 12?

10            MR. MARINO:  Thirteen.

11            MR. PLACITELLA:  Thirteen, my

12   fault.

13            THE WITNESS:  Oh, 13.

14            MR. PLACITELLA:  Yeah.

15            THE WITNESS:  I see that, yeah.

16   Yes.

17  BY MR. PLACITELLA:

18     Q.     Okay.  And then, if you go to the

19  next page, after the objection it states that

20  BASF states that Engelhard employees Arthur

21  Dornbusch and Michael Hassett were aware of

22  the Martin case and communicated with the

23  Cahill attorneys who defended the case in the

24  Martin case.



Page 227

1              Do you see that?

2     A.     Yes.

3     Q.     All right.  Does that refresh

4     your memory as to whether you had knowledge

5     about the Martin case?

6              MR. FARRELL:  Objection to form

7         and foundation.

8              THE WITNESS:  It does -- no, it

9         does not --

10             MR. PLACITELLA:  Okay.

11             THE WITNESS:  -- refresh my

12        recollection.

13    BY MR. PLACITELLA:

14    Q.     Had you ever learned from

15    Mr. Hassett that in the context of the case

16    that was pending in the 2004, 2005 time

17    frame, that a report of Dr. Glassley, who was

18    the plaintiff's expert in the Westfall case,

19    had surfaced?

20             MR. FARRELL:  Objection to

21        form; foundation.

22             You're asking -- can I have

23        the question again, please.

24             (Whereupon, the court reporter



MAGNA ▶
LEGAL SERVICES

Page 228

```
 1              read back the record as requested.)

 2              MR. FARRELL:  Attorney-client

 3         privilege, given that you're asking about

 4         a communication between Mr. Dornbusch and

 5         Mr. Hassett.

 6              I instruct you not to answer

 7         the question.

 8    BY MR. PLACITELLA:

 9         Q.    Were you aware, in the 2004, 2005

10    time frame, that an expert who was prepared

11    to testify that there was asbestos in the

12    Johnson mine existed?

13              MR. FARRELL:  Objection to form

14         and foundation.

15              THE WITNESS:  I'm -- I don't

16         recall that.

17    BY MR. PLACITELLA:

18         Q.    Okay.  Do you recall at some

19    point in time Mr. Sullivan, at the Cahill

20    Gordon firm, locating copies of the

21    transcripts from the Westfall case?

22              MR. FARRELL:  Objection to

23         form; foundation.

24              THE WITNESS:  No.
```



Page 229

1    BY MR. PLACITELLA:

2         Q.     Okay.  Were you ever made aware

3    that Engelhard settled the Martin case for

4    $400,000 and required the report of

5    Dr. Glassley, where he indicated there was

6    asbestos found in the samples that he tested,

7    were required to be returned in exchange for

8    the $400,000 payment?

9         A.     No.

10                  MR. FARRELL:  Objection to

11           form; foundation; misstates the record.

12                  Can you specify, made aware by

13           whom?

14                  MR. PLACITELLA:  Any source.

15           He said no.

16                  MR. FARRELL:  Are you including

17           lawyers in that source?  Because the

18           question then implicates privilege

19           issues.  Or do you want to rephrase it in

20           a way to get out of the communications?

21                  MR. PLACITELLA:  I think he

22           already answered it, frankly.

23                  MR. FARRELL:  Was it a no?

24                  THE WITNESS:  No.



Page 230

```
 1                    MR. MARINO:  Yes.

 2                    MR. PLACITELLA:  Okay.

 3                    MR. FARRELL:  Done.

 4   BY MR. PLACITELLA:

 5        Q.     What information concerning the

 6   Westfall case did you become aware of shortly

 7   before you retired?

 8                    MR. FARRELL:  Objection to

 9           form; foundation; attorney-client

10           privilege; and work product.

11                    I instruct you not to answer

12           the question.

13   BY MR. PLACITELLA:

14        Q.     Okay.  Did there come a point in

15   time --

16                    (Whereupon, there was a brief

17           interruption.)

18                    MR. PLACITELLA:  Sorry.  My

19           mother.

20                    MR. MARINO:  Do you want to

21           take a break?

22                    MR. PLACITELLA:  That's all

23           right.

24                    MR. MARINO:  Are you sure?
```



MAGNA
LEGAL SERVICES

Page 231

1               MR. PLACITELLA:  Yeah.

2               MR. MARINO:  For the record, I

3       just want to say that when my mother

4       calls, I take a break.

5               MR. PLACITELLA:  Yeah.  Well, I

6       will take a break in a second, because

7       it -- off the record.

8               (Whereupon, there was a

9          discussion held off the record.)

10  BY MR. PLACITELLA:

11      Q.    At some point in time, there was

12  a hostile takeover bid for Engelhard by BASF;

13  is that correct?

14      A.    Yes.

15      Q.    Okay.  And when was that?

16      A.    I think it -- it began in

17  December of 2005.

18      Q.    Okay.  And what, if any, role did

19  you have in that circumstance?

20              MR. FARRELL:  Objection to

21      form.

22              THE WITNESS:  As company

23      counsel, I provided legal services and

24      advised to our management in responding



Page 232

1        to the proposal.

2    BY MR. PLACITELLA:

3        Q.    Okay.  And did Engel -- did BASF

4    have its own representation in that

5    transaction?

6                    MR. FARRELL:  Objection to

7        form.

8                    THE WITNESS:  I'm -- I'm sure

9        they did.  I --

10                    MR. PLACITELLA:  Okay.

11                    THE WITNESS:  -- don't recall

12        who it was.

13    BY MR. PLACITELLA:

14        Q.    Did there ever come a time when

15    you had a face-to-face meeting with BASF

16    concerning the takeover?

17                    MR. FARRELL:  Objection to

18        form.

19                    THE WITNESS:  There were

20        several meetings, I believe.

21    BY MR. PLACITELLA:

22        Q.    All right.  And who was present

23    at those meetings?

24                    MR. FARRELL:  Objection to form



Page 233

```
 1      and foundation.

 2              THE WITNESS:  There were a lot

 3      of people.  I couldn't tell you -- begin

 4      to tell you everybody.

 5  BY MR. PLACITELLA:

 6      Q.    Well, give me the people you

 7  remember.

 8      A.    Well, there was our senior

 9  management, Barry Perry, Mike Sperduto, our

10  CFO, myself, counsel -- we had outside -- we

11  had counsel from Cahill Gordon and also

12  counsel from -- oh, the -- we had retained

13  special counsel for the acquisition.  Marty

14  Lipton's firm.

15      Q.    Okay.

16      A.    And I forget the name of his

17  partner who was working with us.  And there

18  was also an associate whose name I don't

19  recall.  That was on our side.

20              Then on -- on the BASF side,

21  there were a number of senior people from

22  Germany.  I don't remember their names.  But

23  all together, there were, I'd say, a couple

24  dozen people in the room.
```



Page 234

```
 1        Q.      Okay.  Any names you remember?

 2        A.      I know -- I remember Stryker.

 3   And I always get his name confused with the

 4   golf player.  It wasn't Steve Stryker.  What

 5   was -- his first name --

 6        Q.      Was it David Stryker?

 7        A.      Yeah, David Stryker.  He was

 8   there.  He was the lawyer.  I don't -- I just

 9   don't remember.  I'm not very good with

10   names.

11        Q.      Okay.  Was this an arm's length

12   negotiation that was going on?

13                MR. MARINO:  Objection.

14                MR. FARRELL:  Objection; form

15        foundation.

16                THE WITNESS:  Yes.

17                MR. PLACITELLA:  Okay.

18                THE WITNESS:  Yes.

19   BY MR. PLACITELLA:

20        Q.      And the -- did you understand

21   that as part of the takeover, that you, as

22   corporate counsel, had an obligation to

23   disclose any significant litigation risks

24   that the company was facing at the time?
```



Page 235

```
 1                    MR. FARRELL:  Objection to

 2       form.

 3                    THE WITNESS:  Yes.

 4  BY MR. PLACITELLA:

 5       Q.    Okay.  And did you, in fact,

 6  disclose any significant litigation risks

 7  that the company was disclosing at the time?

 8                    MR. FARRELL:  Objection to form

 9       and foundation.  If you can answer that

10       without disclosing the substance of any

11       such communications, if there were any.

12       So I think a yes or a no or I don't know.

13                    THE WITNESS:  Yes.

14  BY MR. PLACITELLA:

15       Q.    You did disclose?

16       A.    Yes.

17       Q.    Did the subject of the Emtal tank

18  talc litigation come up?

19                    MR. MARINO:  Objection to form

20       and foundation.

21  BY MR. PLACITELLA:

22       Q.    You can answer it.

23       A.    Yes.

24       Q.    Okay.  And what was the context
```



Page 236

1    of that coming up?

2                    MR. FARRELL:  Objection to form

3         and foundation.  You mean the nature of a

4         meeting or something?

5                    MR. MARINO:  Could you rephrase

6         the question, please.

7    BY MR. PLACITELLA:

8         Q.    Did you provide information

9    concerning the Emtal talc litigation?

10                   MR. FARRELL:  Objection to form

11        and foundation.

12                   THE WITNESS:  Yes.

13   BY MR. PLACITELLA:

14        Q.    Okay.  After the takeover

15   occurred, did BASF have the same information

16   in their possession as you had before the

17   takeover?

18                   MR. FARRELL:  Objection to form

19        and foundation.

20   BY MR. PLACITELLA:

21        Q.    Concerning the Emtal talc

22   litigation?

23                   MR. FARRELL:  Same objections.

24                   THE WITNESS:  Yes.



Page 237

```
 1   BY MR. PLACITELLA:

 2        Q.    Did BASF understand the risks

 3   that they were facing as it related to the

 4   Emtal talc litigation prior to the actual

 5   take over?

 6                    MR. MARINO:  Oh, that -- that's

 7            an improper question, Chris.  How can you

 8            ask him what someone else knew or

 9            understood?

10                    MR. PLACITELLA:  To your

11            knowledge.

12                    MR. FARRELL:  Objection to form

13            and foundation.

14                    The only way he could answer

15            the question is to implicitly disclose

16            the content of communications between

17            Engelhard and BASF about the litigation.

18            And it would reveal privileged

19            information for him to respond to the

20            question.

21                    So I'm going to instruct him

22            not to answer the question because the

23            only other answer he can give is

24            speculative anyway.
```



Page 238

1  BY MR. PLACITELLA:

2      Q.    Did you, at the time, recognize

3  that there was a significant litigation risk

4  to Engelhard because of information relating

5  to asbestos in Emtal talc?

6              MR. FARRELL:  Objection to

7        form; foundation; privilege; and work

8        product.

9              I instruct you not to answer

10       the question.

11 BY MR. PLACITELLA:

12     Q.    At the time of the takeover, you

13 certainly had historical knowledge that

14 Engelhard scientists were deposed and gave

15 testimony about asbestos in Emtal talc,

16 correct?

17             MR. FARRELL:  Objection to form

18       and foundation; vague as to time.

19             Is it -- can you answer that

20       with a yes or a no?

21             THE WITNESS:  Yes.

22             MR. PLACITELLA:  Okay.

23             THE WITNESS:  Yes.

24 BY MR. PLACITELLA:



Page 239

1      Q.     Okay.   And -- and at the time of

2   the takeover, you certainly had historical

3   knowledge about the information concerning

4   asbestos testing that was transmitted to you,

5   correct?

6                    MR. FARRELL:   Same objections

7        and same caution.

8                    THE WITNESS:   Yes.

9   BY MR. PLACITELLA:

10     Q.     Okay.   And after the takeover,

11  did BASF have that same knowledge?

12                   MR. FARRELL:   Objection to

13       form; foundation; calls for speculation;

14       privilege; and work product.

15                   I instruct you not to answer

16       the question.

17  BY MR. PLACITELLA:

18     Q.     After the takeover, were you

19  still an employee of BASF?

20                   MR. FARRELL:   Objection to

21       form.

22                   THE WITNESS:   I was.   There was

23       a transition period of a month or so when

24       I was, I guess, an employee of BASF, yes.



Page 240

1    BY MR. PLACITELLA:

2         Q.    Okay.  Now, do you know whether

3    Cahill Gordon at the time of the takeover --

4    who was there, by -- by the way, with you at

5    these negotiations from Cahill Gordon?

6                    MR. FARRELL:  Objection to

7         form.

8                    MR. BOISE:  And foundation.

9                    THE WITNESS:  The principal

10        lawyer was a man named Duffy.  I -- I

11        want to say his first name was Phil.  But

12        I may be confusing him with another Duffy

13        that I know.  And I -- I'm sure there

14        were associates involved.  I don't

15        recall.

16   BY MR. PLACITELLA:

17        Q.    Okay.  Am I correct that at the

18   time of the takeover, Cahill Gordon had

19   historical knowledge concerning the asbestos

20   testing of Emtal talc?

21                   MR. BOISE:  Object to the form;

22        foundation.

23                   THE WITNESS:  Yes.

24   BY MR. PLACITELLA:



Page 241

```
 1      Q.      And am I correct that at the time

 2   of the takeover, Cahill Gordon had historical

 3   knowledge concerning the testimony provided

 4   by Engelhard scientists under oath about the

 5   asbestos testing of Emtal talc?

 6                  MR. BOISE:  Object to the form

 7        and foundation.

 8                  THE WITNESS:  Yes.

 9   BY MR. PLACITELLA:

10      Q.      Am I correct that after the

11   takeover, Cahill Gordon continued to

12   represent BASF in the Emtal talc litigation?

13                  MR. FARRELL:  Objection to

14        form.

15                  THE WITNESS:  I don't know.

16        I've seen something, somewhere in the

17        paper you've shown me today that suggest

18        that that is so.  But I don't -- didn't

19        know of my own knowledge.

20   BY MR. PLACITELLA:

21      Q.      Okay.  What is it that you told

22   BASF about the risks related to the Emtal

23   talc litigation at the time of the

24   takeover --
```



Page 242

1              MR. FARRELL:  Objection to

2         form.

3    BY MR. PLACITELLA:

4         Q.     -- but before you went to work

5    for them?

6              MR. FARRELL:  Objection to

7         form; foundation; privilege; work

8         product.

9              I instruct you not to answer

10        the question; common interest privilege.

11             MR. PLACITELLA:  What is the

12        basis for the work product assertion?

13             MR. FARRELL:  You're asking a

14        lawyer for the company to talk about his

15        assessment of active and pending

16        litigation and communications between him

17        and BASF, which then came to acquire the

18        same company, about the status and his

19        assessment of that litigation.  So I've

20        asserted objections based on work

21        product, attorney-client privilege, and

22        the common interest privilege.  And I've

23        instructed him not to answer the

24        question.



Page 243

1    BY MR. PLACITELLA:

2         Q.     Okay.  During the time that you

3    worked for Engelhard, was the board of

4    directors aware of the testimony of Engelhard

5    scientists under oath in the Westfall case?

6                   MR. FARRELL:  Objection to form

7         and foundation.

8                   THE WITNESS:  I don't know.

9    BY MR. PLACITELLA:

10        Q.     Okay.  When the conversations

11   occurred concerning the litigation risks

12   related to Emtal talc, who was present?

13                  MR. FARRELL:  Objection to form

14        and foundation.

15   BY MR. PLACITELLA:

16        Q.     I'm talking about at the time of

17   the takeover.

18                  MR. FARRELL:  Same objections.

19                  THE WITNESS:  There were

20        several conversations.  One was the large

21        group that I mentioned before.  There was

22        then a smaller meeting consisting of only

23        attorneys and the control group people to

24        talk specifically about litigation.



Page 244

1          Present at that meeting were Mr. Stryker,

2          a member of his staff, whose name I don't

3          recall, someone from my staff, I'm not --

4          I don't recall who it was, David Wexler,

5          who was our -- in charge of mergers and

6          acquisitions for the company.  We -- our

7          CFO may or may not have been there.  I

8          don't recall.

9     BY MR. PLACITELLA:

10         Q.    Did the historic information you

11    had on the asbestos in Emtal talc impact your

12    assessment of the litigation risk associated

13    with that litigation?

14              MR. FARRELL:  Objection to form

15         and foundation.

16              THE WITNESS:  I -- I don't

17         understand your question.

18    BY MR. PLACITELLA:

19         Q.    Sure.

20              Did the historical information

21    that you had in the -- concerning the testing

22    of asbestos enter into your risk assessment

23    when communicating as part of the takeover

24    what the risks were related to litigation



Page 245

1    involving Engelhard?

2              MR. FARRELL:  Objection to

3         form; foundation; misstates the record;

4         privileged; work product; common interest

5         privilege.

6              I instruct you not to answer

7         the question.

8    BY MR. PLACITELLA:

9         Q.    Okay.  Did you believe that after

10   the takeover was complete, you had exercised

11   your duty to disclose to BASF all of the

12   litigation risks that you thought would

13   materially -- could materially affect the

14   corporation?

15             MR. MARINO:  Objection to the

16        form of the question.

17             MR. FARRELL:  Objection to form

18        and foundation.

19             Can you answer that?

20             THE WITNESS:  Yes.

21   BY MR. PLACITELLA:

22        Q.    Did you ever reach the conclusion

23   that the information concerning the asbestos

24   content in Emtal talc created a material risk



Page 246

1    to the corporation?

2                    MR. FARRELL:  Objection to

3          form; foundation; privilege; work

4          product.

5                    I instruct you not to answer

6          the question.

7    BY MR. PLACITELLA:

8          Q.    Did you ever come to the

9    conclusion that the deposition testimony of

10   the Engelhard scientists given under oath

11   concerning the asbestos in Emtal talc created

12   a material risk to the corporation?

13                   MR. FARRELL:  Same objection;

14         same instruction not to answer.

15   BY MR. PLACITELLA:

16         Q.    And who did you meet with in

17   order to prep for today's deposition?

18         A.    My counsel.

19         Q.    The ever good-looking Mr. Marino?

20         A.    And --

21         Q.    Mr. Boyle?

22         A.    And Mr. Boyle, yes.

23         Q.    Okay.  Did you review any

24   materials or documents in preparation?



Page 247

1        A.      No.

2                    MR. PLACITELLA:   Okay.   Can you

3        give me Exhibit No. 14.

4                    Kevin.

5        BY MR. PLACITELLA:

6        Q.      Exhibit No. 14 is a report

7        authored by Dr. William Glassley entitled

8        Summary of Activities Related to Services

9        rendered for Decof and Grimm in the case of

10       David H. Westfall versus Whittaker, Clark and

11       Daniels, et al.

12                    Do you see that?

13       A.      Yes.

14       Q.      Okay.   Can you go to the fifth

15       page of the report, where it says conclusion.

16       It states, Asbestiform chrysotile occurs in

17       serpentine intermingled with the talc at the

18       Johnson mine.   Its overall abundance could

19       not be established.

20                    Do you see that?

21       A.      Yes.

22       Q.      Were you ever -- were you aware

23       of this report at any point in time?

24                    MR. FARRELL:   Objection to



Page 248

 1     form.

 2               THE WITNESS:  Not that I

 3          recall.

 4     BY MR. PLACITELLA:

 5          Q.    Okay.  Did anybody -- if a report

 6     like this came in in the context of a case,

 7     did it have to be, as a matter of practice,

 8     disclosed to you?

 9               MR. FARRELL:  Objection to form

10          and foundation; calls for speculation.

11               THE WITNESS:  Well, the -- I --

12          I think the technical answer to your

13          question is no.  But a lot would depend

14          upon the circumstances under which the --

15          the report was compiled.

16     BY MR. PLACITELLA:

17          Q.    Okay.  Such -- such as what?

18          A.    If it was done at the request of

19     somebody in the legal department or outside

20     counsel, then I would expect that when it

21     came to the company, I would be on the

22     distribution.

23          Q.    Okay.  And if it came from an

24     expert on the plaintiff's side in a



Page 249

1    litigation, this is something that you would

2    be apprized of?

3                    MR. FARRELL:  Same objections;

4         calls for speculation.

5                    THE WITNESS:  Yeah.  If it were

6         deemed by counsel to be of significance,

7         I would -- would expect that I would be

8         told about it.

9    BY MR. PLACITELLA:

10        Q.    Okay.  And here it talks about

11   chrysotile being found in the Johnson mine.

12                    Do you see that?

13        A.    Yes.

14        Q.    Did you have an understanding

15   whether that was, in fact, the case, that

16   there was chrysotile asbestos in the Johnson

17   mine?

18                    MR. FARRELL:  Objection; form

19        and foundation.

20                    THE WITNESS:  I had no -- no

21        information about that.

22   BY MR. PLACITELLA:

23        Q.    At any point in time?

24                    MR. FARRELL:  Same objections.



Page 250

```
 1                    THE WITNESS:  In 2000 -- in

 2       1982, I did not.

 3  BY MR. PLACITELLA:

 4       Q.    Okay.  At some point in time, did

 5  you learn that there was chrysotile asbestos

 6  in the Johnson mine?

 7                    MR. FARRELL:  Same objections.

 8                    THE WITNESS:  I can't answer

 9       that question without breaching the

10       attorney-client privilege.

11                    MR. FARRELL:  I instruct you

12       not to answer further.

13                    THE WITNESS:  Okay.

14                    MR. FARRELL:  Can we take a

15       break at some point?

16                    MR. PLACITELLA:  Yeah.  Sure.

17       Now's fine.

18                    THE VIDEOGRAPHER:  The time is

19       now 2:31 p.m.  We're going off the

20       record.

21                    (Whereupon, there was a

22          discussion held off the record.)

23                    (Whereupon, a brief recess was

24          taken.)
```



Page 251

1                    THE VIDEOGRAPHER:  The time is

2       now 2:53 p.m.  We are back on the record.

3    BY MR. PLACITELLA:

4       Q.    Okay.  During the time that you

5    were general counsel and corporate secretary

6    to Engelhard, did you know that there were

7    cases being dismissed based upon the

8    representation that there was no asbestos in

9    Emtal talc?

10                   MR. FARRELL:  Objection to form

11       and foundation; misstates the record.

12                   MR. MARINO:  Are you

13       representing to him that that was the

14       basis for dismissals?

15                   MR. PLACITELLA:  I'm asking him

16       a question.

17                   MR. MARINO:  Thank you.

18                   THE WITNESS:  No.

19    BY MR. PLACITELLA:

20       Q.    Okay.  During the time that you

21    were general counsel and corporate secretary,

22    were -- did you ever become aware that cases

23    were being dismissed based upon the

24    representation that there was no evidence of



Page 252

1    asbestos in Emtal talc?

2              MR. MARINO:  Are you making the

3         representation to him?

4              MR. PLACITELLA:  I'm just

5         asking him a question.

6              MR. FARRELL:  Same -- same

7         objections.

8              Can you answer these questions

9         without accessing the content of

10        communications between yourself and

11        Cahill Gordon?  In other words, do you

12        have firsthand knowledge of these

13        questions at all, or would you have to

14        draw on the content of communications

15        between yourself and other lawyers for

16        the company?

17             THE WITNESS:  The latter.

18             MR. FARRELL:  Then I need to

19        instruct you not to answer the questions

20        on privilege grounds.

21   BY MR. PLACITELLA:

22        Q.    Okay.  Do you have any

23   information that cases brought against

24   Engelhard for exposure to Emtal talc were



Page 253

```
 1    settled under value based upon assertions

 2    that there was no asbestos in Emtal talc?

 3                    MR. FARRELL:  Same objection;

 4        same instruction not to answer the

 5        question.

 6    BY MR. PLACITELLA:

 7        Q.    Do you know whether Engelhard,

 8    the company, was aware that cases were being

 9    dismissed based upon the assertion by

10    Engelhard's lawyers that there was not

11    asbestos in Emtal talc?

12                    MR. FARRELL:  Same objection;

13        same instruction not to answer.

14    BY MR. PLACITELLA:

15        Q.    Do you know whether the Johnson

16    mine, which was owned by Engelhard, contained

17    asbestos?

18                    MR. FARRELL:  Objection to form

19        and foundation.

20                    I believe you said a few

21        minutes ago, Mr. Dornbusch, in response

22        to a similar question that you couldn't

23        answer that question without disclosing

24        privileged information.  So I want to
```



Page 254

```
 1        confirm whether you can answer that

 2        question without revealing privileged

 3        information as opposed to something you

 4        would know from independent knowledge.

 5                  THE WITNESS:  No, your

 6        recollection is correct.  Any information

 7        of that kind was privileged.

 8   BY MR. PLACITELLA:

 9        Q.     Okay.  Do you know whether the

10   Johnson mine, which was owned by Engelhard,

11   was contaminated with asbestos?

12                  MR. FARRELL:  Same objection

13        and same caution to you, Mr. Dornbusch.

14                  THE WITNESS:  Right.  And the

15        same answer.

16   BY MR. PLACITELLA:

17        Q.     Do you know the answer to the

18   question?

19                  MR. FARRELL:  Can you answer it

20        one way or the other?  Do you know the

21        answer?

22                  THE WITNESS:  I'm not sure --

23        I -- I can't -- I can't answer it without

24        relying upon attorney-client privileged
```



Page 255

```
 1        information.  And I would -- I would need

 2        to -- to seek further clarification of

 3        the question.

 4   BY MR. PLACITELLA:

 5        Q.     Were you ever made aware or do

 6   you know whether Engelhard had a program of

 7   x-raying the employee -- its employees at the

 8   Johnson mine, having x-rays of their lungs

 9   done?

10        A.     I do not know that.

11        Q.     Do you know whether the evidence

12   of x-rays of Johnson mine employees was ever

13   disclosed to Engelhard's insurance carriers?

14               MR. FARRELL:  Objection to

15        form; foundation.

16               THE WITNESS:  No.

17   BY MR. PLACITELLA:

18        Q.     Okay.  Were executives -- or

19   strike that.

20               Was management at Engelhard

21   aware that the Johnson mine owned by

22   Engelhard contained asbestos?

23               MR. FARRELL:  Objection to form

24        and foundation.
```



Page 256

 1    BY MR. PLACITELLA:

 2         Q.    If you know.

 3               MR. FARRELL:  Mr. Dornbusch,

 4         can you answer this question without

 5         revealing the substance of

 6         attorney-client communications --

 7               THE WITNESS:  No.

 8               MR. FARRELL:  -- communications

 9         you've had with management or some other

10         lawyers had with management?

11               THE WITNESS:  No.

12               MR. FARRELL:  Then I instruct

13         you not to answer the question on

14         privilege grounds.

15    BY MR. PLACITELLA:

16         Q.    Would you be able to answer the

17    question but for privilege?

18         A.    I'm not sure.

19         Q.    Okay.

20         A.    I'd have to hear the question

21    again.

22         Q.    Okay.  Was Engelhard management

23    aware that the Ental products made from the

24    Johnson mine contained asbestos?



Page 257

```
 1                  MR. FARRELL:  Same objection
 2         and same caution.
 3                  Can you answer this without
 4         revealing the substance of
 5         attorney-client communications?
 6                  THE WITNESS:  No.
 7                  MR. FARRELL:  I instruct you
 8         not to answer the question.
 9    BY MR. PLACITELLA:
10         Q.    While the Westfall case was
11    pending, did Engelhard's management have
12    reason to believe that other similar cases
13    would be filed in the future?
14                  MR. FARRELL:  Objection to
15         form; foundation; privilege; work
16         product.
17                  I instruct you not to answer
18         the question.
19    BY MR. PLACITELLA:
20         Q.    Do you know whether Engelhard
21    management had reason to believe, while the
22    Westfall case was pending, whether future
23    similar cases were likely?
24                  MR. FARRELL:  Are you just
```



Page 258

1         asking whether he knows the answer to the

2         question?

3                     MR. PLACITELLA:  Yeah.

4                     THE WITNESS:  I don't know.

5    BY MR. PLACITELLA:

6         Q.    Okay.  During the pendency of the

7    Westfall case, were you aware that the

8    Johnson mine owned by Engelhard contained

9    asbestos?

10                    MR. FARRELL:  Same objections;

11        same instruction.  We just had this

12        question a few minutes ago.

13                    MR. PLACITELLA:  Different

14        question.

15                    MR. FARRELL:  Can you answer

16        this question without revealing the

17        substance were attorney-client

18        communications, Mr. Dornbusch?

19                    THE WITNESS:  No.

20                    MR. FARRELL:  I instruct you

21        not to answer.

22   BY MR. PLACITELLA:

23        Q.    Did you ever form the

24   understanding that Engelhard would be



Page 259

```
1    repeatedly sued in Emtal talc litigation?

2                    MR. FARRELL:  Objection to

3         form; foundation; work product;

4         privilege.

5                    I instruct you not to answer

6         the question.

7    BY MR. PLACITELLA:

8         Q.    At any point in time, did you

9    make sure that the information concerning the

10   testimony of Engelhard scientists concerning

11   asbestos in Emtal talc was disclosed to

12   litigants who had sued Engelhard claiming

13   personal injury from Emtal talc?

14                   MR. FARRELL:  Can you repeat

15        the question, please.

16                   (Whereupon, the court reporter

17            read back the record as requested.)

18                   MR. FARRELL:  Objection to

19        form; foundation; assumes facts;

20        misstates the record.

21   BY MR. PLACITELLA:

22        Q.    You can answer.

23        A.    No.

24        Q.    Okay.  At any point in time,
```



Page 260

```
 1   did -- as general counsel in charge of all

 2   litigation, did you do anything to ensure

 3   that litigants who were suing Engelhard

 4   alleging personal injury from Emtal talc were

 5   made aware of the testing information in

 6   possession of Engelhard concerning asbestos

 7   in Emtal talc?

 8                   MR. MARINO:  Objection to the

 9        form of the question.

10                   MR. FARRELL:  Objection to

11        form; foundation; assumes facts;

12        misstates the record.

13                   THE WITNESS:  No.

14   BY MR. PLACITELLA:

15        Q.    Okay.  What was your

16   understanding of the obligation of Thomas

17   Halket to disclose the information that he

18   had concerning the testimony of Engelhard

19   scientists in cases that he was involved in?

20                   MR. BOISE:  Objection to form.

21                   MR. FARRELL:  Objection to form

22        and foundation.

23                   THE WITNESS:  I -- I don't --

24        yeah, I don't -- don't recall what it
```



Page 261

```
 1      was.
 2  BY MR. PLACITELLA:
 3      Q.      You don't recall what it was?
 4      A.      What -- right.
 5      Q.      I'm sorry?
 6      A.      I don't recall what my
 7  understanding was as to Mr. Halket's
 8  obligations at that time.
 9      Q.      Okay.  Did you have an
10  expectation that if the lawyers who were
11  working for you had information indicating
12  there was asbestos in Emtal talc, that that
13  would be disclosed to litigants who were
14  requesting that information?
15                  MR. TUNIS:  Objection to form.
16                  MR. FARRELL:  Objection to form
17      and foundation; calls for speculation.
18                  THE WITNESS:  I don't -- I
19      don't recall thinking about that issue.
20  BY MR. PLACITELLA:
21      Q.      Okay.  Would you have ever
22  countenanced the destruction of samples used
23  for testing Emtal talc while cases were
24  pending involving exposure to Emtal talc?
```



Page 262

```
 1                    MR. TUNIS:  Objection to form.

 2                    MR. FARRELL:  Objection to form

 3        and foundation.

 4                    MR. BOISE:  Incomplete

 5        hypothetical.

 6                    THE WITNESS:  Would I have

 7        countenanced?

 8                    MR. PLACITELLA:  Yes.

 9                    THE WITNESS:  No.

10   BY MR. PLACITELLA:

11        Q.    Would you have ever authorized

12   the destruction of evidence related --

13   underlying evidence relating to the testing

14   of Emtal talc during the time when cases were

15   pending, alleging exposure to Emtal talc?

16                    MR. FARRELL:  Objection to form

17        and foundation.

18                    MR. TUNIS:  Objection to form.

19                    THE WITNESS:  No.

20   BY MR. PLACITELLA:

21        Q.    Okay.  Do you know whether Cahill

22   Gordon was aware that the Johnson mine owned

23   by Engelhard contained asbestos?

24                    MR. FARRELL:  Objection to
```



Page 263

1      form; foundation.

2                  Can you answer this question

3        without getting into the substance of

4        communications between yourself and

5        Cahill Gordon?

6                  THE WITNESS:  No.

7                  MR. FARRELL:  Then I instruct

8        you not to answer the question on

9        privilege grounds.

10   BY MR. PLACITELLA:

11        Q.    Do you agree with me that during

12   the pendency of the Westfall case, Cahill

13   Gordon would have received full and complete

14   copies of the depositions of Hemstock,

15   Triglia, and Gale?

16                  MR. FARRELL:  Objection to

17        form; foundation.

18                  THE WITNESS:  I would expect

19        that they would have, yes.

20   BY MR. PLACITELLA:

21        Q.    Okay.  And did you have an

22   expectation that Cahill Gordon, whom you

23   indicated you outsourced the defense of the

24   Emtal litigation to, would have disclosed the



Page 264

1    information they had concerning the asbestos

2    testing in Emtal talc to litigants who were

3    suing Engelhard alleging injury from that

4    exposure?

5                    MR. TUNIS:  Objection.

6                    MR. FARRELL:  Objection to

7         form; foundation; misstates the record;

8         calls for speculation.

9                    THE WITNESS:  I don't recall if

10        I had such an expectation or not.

11   BY MR. PLACITELLA:

12        Q.    Did you understand that the rules

13   of professional conduct required candor in

14   the disclosure of evidence to litigants in

15   possession of Engelhard?

16                    MR. FARRELL:  Objection to form

17        and foundation.

18                    THE WITNESS:  I don't recall

19        what I understood about -- at that time.

20   BY MR. PLACITELLA:

21        Q.    Okay.  Did -- do you have an

22   understanding of what the duty of candor is?

23        A.    Yes, I do.

24        Q.    And what is that?



Page 265

1          A.      Well, I -- I would say it's

2     basically honesty.

3          Q.      Okay.  And do you believe that

4     the lawyers for Engelhard had a duty of

5     honesty to provide the people who they were

6     litigating against with the information

7     concerning the testing of asbestos of Emtal

8     talc if it was requested?

9               MR. FARRELL:  Objection to

10          form; foundation; misstates the record;

11          calls for speculation.

12               MR. BOISE:  Incomplete

13          hypothetical.

14               THE WITNESS:  I --

15               MR. MARINO:  And what would be

16          the significance if he said no?

17     BY MR. PLACITELLA:

18          Q.      You can answer.

19          A.      I had an expectation that the

20     lawyers at Cahill, as the -- as with the

21     other lawyers that Engelhard had retained

22     from time to time, would conduct themselves

23     strictly in accordance with the code of

24     professional responsibility.



Page 266

1      Q.      And would that be -- include

2   being honest about what information was

3   available concerning the asbestos content of

4   Emtal talc?

5                MR. FARRELL:  Objection to

6         form; foundation; misstates the record;

7         calls for speculation.

8                MR. BOISE:  It's an incomplete

9         hypothetical.

10               THE WITNESS:  I -- I believe

11        so.

12   BY MR. PLACITELLA:

13      Q.      Okay.  Did you have an

14   understanding that when the document

15   retention policy was finalized in 1984, that

16   if research and development evidence was

17   disposed of concerning -- in accordance with

18   that policy, that information would not be

19   available to litigants?

20               MR. TUNIS:  Objection to form.

21               MR. FARRELL:  Objection.  Can I

22        have the question again, please.

23               (Whereupon, the court reporter

24         read back the record as requested.)



Page 267

```
 1                    MR. FARRELL:  Are you asking,

 2          Chris, whether he had that specific

 3          thought in 1984?

 4                    MR. PLACITELLA:  I'm ask -- my

 5          question stands.

 6                    MR. FARRELL:  Well, I'm trying

 7          to understand the question, because one

 8          interpretation of it calls for privileged

 9          and work product information --

10                    MR. PLACITELLA:  Okay.

11                    MR. FARRELL:  -- I would need

12          to instruct him not to answer.  So I'm

13          asking you to clarify the question.

14                    MR. PLACITELLA:  No.  My

15          question stands.  Can you read it back,

16          please.

17                    (Whereupon, the court reporter

18              read back the record as requested.)

19                    MR. FARRELL:  Well, in light of

20          plaintiff's refusal to clarify the

21          question as requested, I need to instruct

22          you not to answer the question based on

23          privilege and work product grounds.

24     BY MR. PLACITELLA:
```



Page 268

1      Q.      Okay.  Am I correct that you have

2   no evidence, as you sit here today, that

3   after the document retention policy was

4   arrived at in 1984, as you testified to, that

5   the research and development information

6   concerning the testing of Emtal talc was ever

7   disclosed to a single litigant?

8                  MR. TUNIS:  Objection to form.

9                  MR. FARRELL:  Objection to form

10       and foundation.

11                  THE WITNESS:  I have no

12       information about that.

13   BY MR. PLACITELLA:

14      Q.      Okay.  You have no such evidence,

15   correct?

16                  MR. FARRELL:  Same objections.

17                  THE WITNESS:  Correct.

18   BY MR. PLACITELLA:

19      Q.      Am I correct that from 1984 until

20   2006 there was never a period exceeding three

21   years where Engelhard was not sued in an

22   Emtal talc case?

23                  MR. FARRELL:  Objection to form

24       and foundation.



Page 269

```
 1                    THE WITNESS:  I have no
 2         information that would allow me to answer
 3         that.
 4    BY MR. PLACITELLA:
 5         Q.     Okay.  In terms of the document
 6    retention policy that you finalized in 1984,
 7    how long did you have to retain evidence that
 8    was generated in a lawsuit?
 9                    MR. FARRELL:  Objection to form
10         and foundation; assumes facts; misstates
11         the policy.
12                    THE WITNESS:  I don't know.
13    BY MR. PLACITELLA:
14         Q.     Did you know who Howard Shafer
15    was?
16         A.     Yes.
17         Q.     Who was he?
18         A.     He ran the Johnson, Vermont talc
19    operations.  He was our general manager.
20         Q.     Okay.  And did you ever have any
21    interaction with him?
22         A.     I'm -- I think I probably met
23    him, but either at a -- a meeting in this
24    area or a -- a business meeting somewhere off
```



1   site.  I never -- I never visited Johnson,

2   Vermont.

3        Q.     Would he be somebody who would be

4   knowledgeable concerning the testing that

5   went on at the Johnson mine?

6                MR. FARRELL:  Objection to form

7        and foundation and calls for speculation.

8   BY MR. PLACITELLA:

9        Q.     If you know.

10       A.     If testing took place on site, he

11  probably would know.  If samples were

12  collected and tested elsewhere, he may or may

13  not know.  I don't...

14       Q.     He would know, though, who

15  visited the site for purposes of extracting

16  samples, correct?

17                MR. FARRELL:  Objection to

18       foundation and form; calls for

19       speculation.

20                THE WITNESS:  I would think so.

21  BY MR. PLACITELLA:

22       Q.     If I was to ask for the person,

23  assuming he was alive, with the most

24  knowledge concerning the day-to-day



Page 271

```
 1    operations of the Johnson mine, would it be

 2    Howard Shafer?

 3                    MR. FARRELL:  Same objections.

 4                    THE WITNESS:  It would during

 5        the period of time when he was general

 6        manager.

 7    BY MR. PLACITELLA:

 8        Q.    Okay.  Did there ever come a

 9    point in time when Engelhard sold the Johnson

10    mine to another entity?

11        A.    I don't think so.

12        Q.    Okay.  So I just want to be clear

13    on something you said before.  Were you

14    actually involved in the due diligence

15    investigation being conducted by BASF before

16    the takeover of Engelhard?

17                    MR. FARRELL:  Objection to form

18        and foundation.

19                    THE WITNESS:  Yes.

20    BY MR. PLACITELLA:

21        Q.    Okay.  And did you understand

22    that the -- that due diligence investigation

23    required BASF to learn whatever significant

24    litigation risks faced them before the
```



Page 272

1    takeover?

2                    MR. FARRELL:  Same objection.

3                    THE WITNESS:  Yes.

4    BY MR. PLACITELLA:

5        Q.    Okay.  And did you understand

6    that BASF's due diligence required them to

7    know any material information related to the

8    Emtal talc litigation?

9                    MR. FARRELL:  Objection to form

10        and foundation.

11                    THE WITNESS:  Yes.

12    BY MR. PLACITELLA:

13        Q.    And were they actually made aware

14    of material information related to the Emtal

15    talc litigation as part of their due

16    diligence?

17                    MR. FARRELL:  Objection to

18        form; foundation; privileged; work

19        product; and common interest privilege.

20                    I instruct you not to answer

21        the question.

22                    MR. PLACITELLA:  So let me just

23        break this down.  I understand common

24        interest.  That's a fight for another



Page 273

1      day.

2                    What is the work product and

3      what is the work -- and what is the

4      privilege?

5                    MR. FARRELL:  The work product

6      is that you're asking the general counsel

7      of a corporation for his assessment of

8      legal issues that were pending at the

9      time, and I take it we're in early -- or

10     spring of 2006, while there were cases

11     pending, and would also require him to

12     draw on the substance of communications

13     between himself and his client and

14     himself and Cahill Gordon.

15                   So the question necessarily

16     asks for both his opinion, work product,

17     and for attorney-client communications

18     concerning active and pending litigation

19     at the time.

20                   MR. PLACITELLA:  Okay.  Well, I

21     don't agree with that.  What's the next

22     one?  What's the privilege issue?

23                   MR. FARRELL:  I just covered

24     that one.



Page 274

```
 1                    To answer these questions,

 2          Mr. Dornbusch, I take it you would need

 3          to draw on the substance of

 4          communications between yourself and

 5          Cahill or yourself and others at

 6          Engelhard concerning the status of

 7          pending litigation as of the spring of

 8          2006, give or take, correct?

 9                    THE WITNESS:  Yes.

10                    MR. FARRELL:  That was the

11          basis --

12                    MR. PLACITELLA:  Okay.

13                    MR. FARRELL:  -- for the

14          objection and instruction.

15   BY MR. PLACITELLA:

16          Q.    The -- was BASF informed by

17   Engelhard prior to the acquisition in

18   June 2006 that there was evidence indicating

19   there was asbestos in Emtal talc?

20                    MR. FARRELL:  Same objections;

21          same instructions not to answer.

22   BY MR. PLACITELLA:

23          Q.    Was BASF made aware that Emtal

24   talc cases were being defended, at least in
```



Page 275

```
 1   part, on the assertion that the Emtal talc
 2   was asbestos free?
 3                   MR. FARRELL:  Same objections;
 4        same instruction not to answer.
 5   BY MR. PLACITELLA:
 6        Q.    Do you know the answer to that
 7   question?
 8        A.    I don't know.
 9        Q.    Okay.  To what extent, if any,
10   was Engelhard management involved in the
11   construction of litigation strategies for
12   cases alleging exposure to Emtal talc?
13                   MR. FARRELL:  Objection to form
14        and foundation.
15                   Am I correct, Chris, this --
16        you're just asking about roles --
17                   MR. PLACITELLA:  Uh-huh.
18                   MR. FARRELL:  -- roles people
19        had?
20                   MR. PLACITELLA:  Uh-huh.
21                   THE WITNESS:  I informed the
22        control group, senior management of the
23        company, and before that, the division,
24        of all litigation, and the talc
```



Page 276

```
 1          litigation, and my strategy for dealing

 2          with it.

 3    BY MR. PLACITELLA:

 4          Q.     Okay.  And did that strategy

 5    include assertions that the Emtal talc was

 6    asbestos free?

 7                    MR. FARRELL:  Objection to

 8          form; foundation; privilege; work

 9          product.

10                    I instruct you not to answer

11          the question.

12    BY MR. PLACITELLA:

13          Q.     Okay.  Do you know whether any

14    non-lawyers ever provided information to BASF

15    concerning the issue of asbestos in Emtal

16    talc?

17                    MR. FARRELL:  Objection to form

18          and foundation.

19                    THE WITNESS:  I don't know of

20          any.

21    BY MR. PLACITELLA:

22          Q.     Okay.  Do you -- do you know

23    whether Jesse Pagonis ever had any meetings

24    with BASF concerning what he knew about the
```



Page 277

1    asbestos content of Emtal talc?

2              MR. FARRELL:  Objection to form

3         and foundation.

4              THE WITNESS:  I'm pretty

5         certain that he did not.  I believe he

6         retired sometime before this.

7    BY MR. PLACITELLA:

8         Q.    That would have made it harder

9    then, wouldn't it?

10        A.    Yes.

11        Q.    Okay.

12        A.    He's still around, but...

13        Q.    Okay.  Do you know what, if any

14   information Jesse Pagonis knew about the

15   asbestos content of Emtal talc as it related

16   to his job in risk management?

17             MR. FARRELL:  Objection to

18        form; foundation; calls for speculation.

19             Can you answer this question

20        without drawing on the substance of

21        communications between yourself and

22        Mr. Pagonis --

23             THE WITNESS:  No.

24             MR. FARRELL:  -- concerning the



Page 278

1          Emtal talc litigation?

2                    THE WITNESS:  No.

3                    MR. FARRELL:  Then I instruct

4          you not to answer on privilege grounds.

5                    THE WITNESS:  Mr. Pagonis is

6          also an attorney.

7                    MR. PLACITELLA:  Okay.  The --

8          thank you for telling me that.

9     BY MR. PLACITELLA:

10         Q.    At any point in time, after you

11    left Engelhard -- scratch that.

12                    Did you ever undertake an

13    investigation yourself concerning what

14    happened to the research and development

15    documents related to Emtal talc?

16                    MR. FARRELL:  Objection to form

17         and foundation; assumes facts.

18                    THE WITNESS:  No.

19    BY MR. PLACITELLA:

20         Q.    Okay.  Did you ever form a

21    conclusion that the asbestos testing evidence

22    concerning Emtal talc no longer existed?

23                    MR. FARRELL:  Objection to form

24         and foundation.



Page 279

```
 1                    THE WITNESS:  I assumed that it
 2        was disposed of in accordance with the
 3        document retention policy of 1984.
 4   BY MR. PLACITELLA:
 5        Q.    And when did that happen, in
 6   1984?
 7        A.    Yes.
 8                    MR. FARRELL:  Objection to
 9        form.
10   BY MR. PLACITELLA:
11        Q.    Do you know whether Engelhard
12   ever informed its insurance carriers or
13   insurance brokers that it was foreseeable
14   that they would be sued in asbestos cases
15   related to talc?
16                    MR. FARRELL:  Objection to form
17        and foundation.
18                    Can you answer that with a yes
19        or no as to whether you know the answer
20        to that question?
21                    THE WITNESS:  Yes.
22                    MR. FARRELL:  Do you know the
23        answer to it?
24                    THE WITNESS:  Yes.  The answer
```



Page 280

```
 1        is yes.

 2                  MR. PLACITELLA:  Okay.  Can you

 3        just read back the question.  I want to

 4        make sure I got it right.

 5                  (Whereupon, the court reporter

 6             read back the record as requested.)

 7                  MR. FARRELL:  And,

 8        Mr. Dornbusch, I understood you to say

 9        yes, you know the answer to the question.

10        In terms of the substance of

11        communications on this subject matter

12        between Engelhard and the insurer, I want

13        to caution you not to disclose the

14        content of privileged or work product

15        information.  I think the answer to --

16        the substantive answer to that question

17        would be covered by privileges and I

18        would instruct you not to answer them.

19                  MR. PLACITELLA:  So we're

20        clear, it's your position that

21        disclosures to insurance carriers by

22        Engelhard is protected by privilege

23        concerning the subject matter we just

24        went -- went over?
```



Page 281

```
 1                    MR. FARRELL:  Not all
 2      disclosures.  You asked about a very
 3      specific disclosure.  And the specific
 4      disclosure you asked about would be
 5      protected by privilege, the common
 6      interest privilege, and work product.
 7      And that was why I objected as I did.
 8                    MR. PLACITELLA:  So it's your
 9      position that there's a common interest
10      privilege between Engelhard and its
11      insurance carrier, and that's why he's
12      not allowed to answer the question?
13                    MR. FARRELL:  In this context,
14      yes.
15                    MR. PLACITELLA:  Okay.
16                    MR. MARINO:  Chris, do you have
17      a lot more?
18                    MR. PLACITELLA:  I have some.
19                    MR. MARINO:  Let me take five
20      minutes.
21                    THE VIDEOGRAPHER:  The time is
22      now 3:27 p.m.  We're going off the
23      record.
24                    (Whereupon, there was a
```



Page 282

```
 1              discussion held off the record.)

 2                  (Whereupon, a brief recess was

 3         taken.)

 4                  THE VIDEOGRAPHER:  The time is

 5         now 3:42 p.m.  We are back on the record.

 6  BY MR. PLACITELLA:

 7      Q.     Mr. Dornbusch, at the time of the

 8  takeover by BASF, who was working on the

 9  Emtal talc litigation who stayed on with BASF

10  after the takeover?

11                  MR. FARRELL:  Objection to form

12         and foundation.

13  BY MR. PLACITELLA:

14      Q.     If you know.

15      A.     I'm not -- I don't have an

16  independent recollection.  Based on documents

17  that I've seen here today, I -- I would be

18  tempted to say Mike Hassett.  But I don't

19  know that of my own recollection.

20      Q.     Okay.  Do you know whether

21  Engelhard's management took any risk control

22  or management steps relating to the asbestos

23  content of Emtal talc?

24                  MR. FARRELL:  Objection to form
```



Page 283

```
 1      and foundation.

 2                THE WITNESS:  I'm not --

 3                MR. FARRELL:  In what context

 4      and time?

 5  BY MR. PLACITELLA:

 6      Q.    Well, during the time that you

 7  served as general counsel and corporate

 8  secretary, did Engelhard's management take

 9  any risk control measures to address the

10  issue of asbestos in Emtal talc?

11      A.    I'm not --

12                MR. FARRELL:  Objection to form

13      and foundation.

14                THE WITNESS:  I was going to

15      say, I'm not sure what you mean by risk

16      control measures.

17  BY MR. PLACITELLA:

18      Q.    Okay.  Any measures taken in

19  terms of -- well, wait.  Let me -- I'll

20  rephrase it.

21                During the time you were

22  general counsel and corporate secretary, did

23  Engelhard's management ever take any steps in

24  terms of minimizing the risk of financial
```



Page 284

```
 1    loss related to the issue of asbestos in

 2    Emtal talc?

 3                    MR. FARRELL:  Objection to form

 4         and foundation.

 5                    THE WITNESS:  No.

 6    BY MR. PLACITELLA:

 7         Q.     Okay.  Did you ever provide to

 8    the board facts concerning -- not legal

 9    advice, but facts concerning the results of

10    asbestos testing of Emtal talc?

11                    MR. FARRELL:  Can you answer

12         that with a yes or no as to whether that

13         subject matter was addressed between you

14         and the board without getting into the

15         substance of it?

16                    THE WITNESS:  No, I cannot.

17    BY MR. PLACITELLA:

18         Q.     You can't say whether you

19    provided facts concerning the asbestos

20    content of Emtal talc versus legal advice?

21         A.     I can't differentiate, no.

22         Q.     Okay.  Am I correct that your

23    testimony here today has been that the

24    discovery responses that were provided became
```



Page 285

1   such a matter of routine that -- that Cahill

2   was basically allowed to submit those

3   responses without them running them by you?

4                    MR. FARRELL:  Objection to

5       form.

6                    MR. BOYLE:  Join in that

7       objection.

8                    THE WITNESS:  Yes.

9   BY MR. PLACITELLA:

10      Q.    Okay.  And when I say a matter of

11  routine, the information that was contained

12  in there, they were pretty much the same in

13  any case; is that fair?

14                   MR. FARRELL:  Objection to form

15      and foundation.

16                   MR. BOYLE:  Join.

17                   MR. BOISE:  Mischaracterizes

18      the record.

19                   MR. BOYLE:  Join in those

20      objections.

21  BY MR. PLACITELLA:

22      Q.    You answer it.

23      A.    Yes.

24      Q.    Okay.  And am I correct, based on



Page 286

1    your testimony, that the correspondence, like

2    you saw today, became such a matter of

3    routine that Cahill would send correspondence

4    out like that to plaintiffs' lawyers without

5    getting your prior approval?

6                    MR. FARRELL:  Objection to

7           form; foundation; calls for speculation.

8                    THE WITNESS:  Yes.

9    BY MR. PLACITELLA:

10        Q.    Okay.  Now, if BASF asserted that

11   it was unaware of the evidence of the

12   Westfall case prior to 2009, would that be a

13   correct assertion?

14                   MR. FARRELL:  Objection to

15          form; foundation; attorney-client

16          privilege; work product.

17                   I instruct you not to answer

18          the question.

19   BY MR. PLACITELLA:

20        Q.    Could you answer that question?

21        A.    Could I?

22        Q.    Yeah.

23        A.    Yes.

24        Q.    Okay.  If BASF asserted that it



Page 287

1    was unaware of any evidence indicating there

2    was asbestos in Emtal talc prior to 2009,

3    would that be accurate?  I'm not representing

4    to you that's what they said.  I'm asking

5    you, would that be accurate?

6                    MR. FARRELL:  Same objections;

7         same instruction not to answer.

8    BY MR. PLACITELLA:

9         Q.    Could you answer that question?

10                   MR. BOYLE:  Could you repeat

11        the question, please.

12                   (Whereupon, the court reporter

13           read back the record as requested.)

14                   MR. BOYLE:  And you're just

15        asking if he could answer?

16                   MR. PLACITELLA:  Uh-huh.

17                   THE WITNESS:  I could answer

18        that, yes.

19    BY MR. PLACITELLA:

20        Q.    To your knowledge, was

21    Engelhard's management aware of the

22    litigation defense strategies that were being

23    executed by Cahill Gordon in the defense of

24    the Emtal talc litigation?



Page 288

```
 1              MR. FARRELL:  Objection to

 2       form, foundation.  I think this has

 3       already been asked and addressed through

 4       a privilege instruction and instruction

 5       not to answer in light of Mr. Dornbusch

 6       indicating he would need to disclose the

 7       contents of such communications to answer

 8       the question.

 9              So I'll instruct him not to

10       answer it again.

11  BY MR. PLACITELLA:

12       Q.    Can you answer that question?

13              MR. BOYLE:  He's been

14       instructed not to answer.

15              MR. FARRELL:  Well, he's been

16       instructed not to answer.

17  BY MR. PLACITELLA:

18       Q.    Are you able to answer that

19  question but for the instruction?

20       A.    Yes.

21       Q.    Okay.  Did Engelhard's management

22  authorize the litigation strategies executed

23  by Cahill Gordon in the defense of the Emtal

24  talc litigation?
```



```
 1                    MR. FARRELL:  Same objections;

 2          same instructions not to answer the

 3          question.

 4                    MR. PLACITELLA:  Okay.  Just,

 5          what's the basis?

 6                    MR. FARRELL:  Privilege and

 7          work product.

 8                    MR. PLACITELLA:  It's

 9          privileged whether the management had

10          authorized the information -- the

11          strategies?  That's privileged?

12                    MR. FARRELL:  Well, I think

13          that Mr. Dornbusch was in management and

14          had already indicated that he was

15          involved in the strategy.

16                    I understood your question to

17          be more referring to other members of

18          management.  And I do not know how

19          Mr. Dornbusch would answer what they did

20          or did not authorize without revealing

21          the content of communications between

22          himself and management about the

23          strategy for handling litigation.

24                    So yes, I'm asserting
```



Page 290

```
 1        privilege and work product over the

 2        question -- in response to the question.

 3   BY MR. PLACITELLA:

 4        Q.     All right.  Do you know whether

 5   management, other than yourself, was aware of

 6   the strategy in defending Emtal talc

 7   litigation to assert that Emtal talc was

 8   asbestos free?

 9              MR. FARRELL:  Objection to

10        form; foundation; asked and answered.

11              He -- he's asking you whether

12        you know the answer to that question.  I

13        believe you've already testified that

14        you know the answer to the question, but

15        I've instructed you not to answer it.

16              THE WITNESS:  Okay.

17   BY MR. PLACITELLA:

18        Q.     Do you know the answer to the

19   question?

20        A.     I'm afraid I've lost track of the

21   question.

22        Q.     Okay.  Am I correct that

23   Engelhard's employees were involved in -- in

24   implementing the litigation strategies that
```



Page 291

1   were being employed by Cahill Gordon?

2                    MR. TUNIS:   Objection to form.

3                    MR. BOYLE:   Objection to form.

4                    MR. FARRELL:   Form and

5         foundation.

6   BY MR. PLACITELLA:

7         Q.     You can answer it.

8         A.     Yes.

9         Q.     Okay.   During the time that

10  Engelhard was involved in litigation

11  concerning Emtal talc claims, was it aware of

12  the litigation strategies being used to

13  defend those cases?

14                   MR. BOYLE:   Are you -- you're

15        asking about the entire corporation, his

16        knowledge --

17                   MR. PLACITELLA:   Generally

18        speaking --

19                   MR. BOYLE:   He's not a

20        corporate representative.

21                   MR. PLACITELLA:   -- speaking.

22        I'll ask him what he knows.

23                   MR. FARRELL:   Objection to form

24        and foundation; asked and answered.



Page 292

 1                    MR. PLACITELLA:  You can

 2        answer.

 3                    THE WITNESS:  Could I have the

 4        question, please.

 5                    (Whereupon, the court reporter

 6             read back the record as requested.)

 7                    MR. PLACITELLA:  No.  You

 8        didn't get it right.  Let me ask it

 9        again.

10   BY MR. PLACITELLA:

11        Q.    During the time that Engelhard

12   was involved in the litigation concerning

13   Emtal talc cases, were -- was its insurance

14   carriers aware of the defense strategies that

15   were being used to defend those cases?

16                    MR. FARRELL:  Objection to

17        form; foundation.  That's a different

18        question than the one that was just

19        asked.

20                    But do you know the answer to

21        the question?

22                    THE WITNESS:  I -- I don't -- I

23        don't know the answer.

24   BY MR. PLACITELLA:



Page 293

1        Q.     Okay.  That obviates my last --

2    next two questions.

3                    During the time that Engelhard

4    was involved in the litigation of Emtal

5    claims, do you know whether its insurance

6    carriers were aware of evidence indicating

7    there was asbestos in Emtal talc?

8                    MR. FARRELL:  Objection to form

9        and foundation.

10                   Do you know the answer to the

11       question?

12                   THE WITNESS:  I don't know.

13   BY MR. PLACITELLA:

14       Q.     Do you know, during the time that

15   Engelhard was litigating the Emtal talc

16   cases, whether its insurance carriers were

17   aware that litigants were being told that

18   Emtal talc was asbestos free?

19                   MR. FARRELL:  Objection to form

20       and foundation.

21                   Again, do you know the answer

22       to the question?

23                   THE WITNESS:  I do not know.

24   BY MR. PLACITELLA:



Page 294

```
 1        Q.     As you sit here today, are you
 2   aware of any claim or demand being made upon
 3   you relating to the facts asserted in this
 4   case by either BASF, Cahill, or Mr. Halket?
 5                    MR. BOYLE:  Objection.
 6                    MR. FARRELL:  Objection; form.
 7                    THE WITNESS:  No.
 8   BY MR. PLACITELLA:
 9        Q.     Okay.  Have you or anyone on your
10   behalf asserted a claim or demand upon BASF
11   relating to the facts in the Williams case?
12                    MR. BOYLE:  Objection.
13                    MR. FARRELL:  Objection to
14        form.
15                    THE WITNESS:  No.  No.
16                    MR. PLACITELLA:  When lawyers
17        flip through pages, that's good.
18                    Oh, Marino's here; I'm done.
19                    No.  No.  Okay.  I'm going to
20        take five and look, but I think I'm
21        there, okay.
22                    THE VIDEOGRAPHER:  The time is
23        now 3:56 p.m.  We're going off the
24        record.
```



Page 295

1              (Whereupon, there was a

2           discussion held off the record.)

3              (Whereupon, a brief recess was

4           taken.)

5              THE VIDEOGRAPHER:  The time is

6       now 3:59 p.m.  We are back on the record.

7    BY MR. PLACITELLA:

8       Q.    I assume that if I spent an hour

9    going through P-1, one document at a time,

10   you'd basically say whatever's in there is in

11   there and you have no independent

12   recollection; is that fair?

13      A.    Yes.

14              MR. PLACITELLA:  Okay.  Now,

15       other than my challenging privilege

16       issues and subject to any other

17       questions, I appreciate your time.

18              THE WITNESS:  Thank you.

19              MR. FARRELL:  No questions from

20       BASF at this time.

21              MR. MARINO:  I have no

22       questions for Mr. Dornbusch at this time.

23              MR. PLACITELLA:  Okay.

24              MR. BOISE:  No questions at



Page 296

```
 1        this time.
 2                MR. TUNIS:  No questions for
 3        Halket.
 4                MR. PLACITELLA:  Wait a second.
 5        Wait a second.  You cut -- off the
 6        record.
 7                (Whereupon, there was a
 8          discussion held off the record.)
 9                THE VIDEOGRAPHER:  The time is
10        now 4 o'clock p.m.  This conclude's
11        today's deposition.  We're going off the
12        record.
13                (Whereupon, there was a
14          discussion held off the record.)
15
16
17
18
19
20
21
22
23
24
```



Page 297

1

2                    CERTIFICATE

3

4

5    I hereby certify that the proceedings and

6    evidence noted are contained fully and

7    accurately in the notes in the deposition of

8    of the above matter, and that this is a

9    correct transcript of the same.

10

11

12          *Deborah A. Brazukas*

13          ----------------------

14                DEBORAH A. BRAZUKAS, RPR

                  NJ CSR LICENSE #XI 01938

15

16

17

18   (The foregoing certification of this

19   transcript does not apply to any reproduction

20   of the same by any means, unless under the

21   direct control and/or supervision of the

22   certifying reporter.)

23

24



Page 298

1                    CERTIFICATE OF DEPONENT

2

3

4                    I, ARTHUR DORNBUSCH, have read

5    the entire transcript of my testimony taken

6    on Monday, May 14, 2018, contained within

7    Pages 1 through 296, and it is true, correct

8    and complete to the best of my knowledge,

9    recollection and belief, except for the list

10   of corrections, if any, attached on a

11   separate sheet herewith.

12

13   _____    _____

14   ARTHUR DORNBUSCH                    DATE

15

16   SUBSCRIBED AND SWORN to before me this

17   _____ day of  _____, 2018,

18   in the jurisdiction aforesaid.

19

20   _____   _____

21   My commission expires     Notary Public

22

23

24



Page 299

```
 1                    ERRATA SHEET

 2   CASE CAPTION:  WILLIAMS, ET AL. VS.

                    BASF CATALYSTS, LLC, ET AL.

 3

     DEPONENT:  ARTHUR DORNBUSCH

 4

 5   PAGE   LINE         CORRECTION

 6   _____  _____  _____

 7   _____  _____  _____

 8   _____  _____  _____

 9   _____  _____  _____

10   _____  _____  _____

11   _____  _____  _____

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   SIGNATURE:_____DATE:_____

24           ARTHUR DORNBUSCH
```



**A**

**ABB** 6:12
**able** 29:16 41:4
  80:14 93:21 94:4
  168:8 256:16
  288:18
**absolutely** 83:17
  184:20 225:19
**abundance** 247:18
**ACC** 68:7,8
**acceptable** 23:4
**access** 82:3 97:18
  97:20 193:1
**accessed** 172:14
**accessing** 252:9
**account** 80:3
**accounts** 108:17
  109:6,13 110:21
  110:23,23
**accurate** 126:22
  184:15 188:14
  207:23 221:2,24
  287:3,5
**accurately** 297:7
**accustomed** 34:13
**acquire** 242:17
**acquisition** 233:13
  274:17
**acquisitions** 244:6
**action** 1:3 10:7
  61:18 212:11
**active** 242:15
  273:18
**Activities** 5:12
  247:8
**actual** 237:4
**add** 56:18 196:14
**addition** 84:12
  212:22 220:19
**additional** 102:20
**address** 63:13
  195:12 283:9
**addressed** 38:18
  284:13 288:3
**addresses** 210:15

**adds** 197:9
**adequate** 157:2
**administration**
  173:8 189:9
**admissibility** 44:6
**Admissions** 6:22
**admits** 155:11
**advance** 196:8
**advanced** 79:24
**adverse** 122:9
  133:1
**adversely** 115:23
  121:19
**advice** 284:9,20
**advise** 61:16
  119:18
**advised** 116:19
  122:8 231:24
**Aetna** 61:14
**affairs** 13:6 14:4
**affect** 115:23
  121:19 245:13
**affidavit** 5:6,8
  208:11,14 209:3,7
  210:22 211:9,14
  212:9,19 213:15
  213:23 216:21
  217:7 219:21
  220:9,22 222:14
  223:2,15,18,21
  224:10
**Affidavits** 58:22
  138:22
**afforded** 61:17
**aforesaid** 298:18
**afraid** 290:20
**agency** 189:9
**agents** 183:19
**ago** 29:14 36:24
  253:21 258:12
**agree** 263:11
  273:21
**agreed** 219:12
**agreement** 218:14
  218:20 219:3
**ahead** 121:12

  124:10 136:4
  175:18 189:20
**air** 12:17,17
**al** 1:3,6 4:21 5:5,11
  5:15,20,21 6:12
  6:23,23 7:5,6 10:4
  10:5 172:24
  247:11 299:2,2
**Alexander** 61:1,1
  61:10,11
**alive** 48:1 270:23
**alleging** 260:4
  262:15 264:3
  275:12
**allow** 127:20
  184:18 269:2
**allowed** 281:12
  285:2
**alluded** 24:11
**ambulance** 224:16
**Amended** 212:11
**amendment** 120:12
**Amesbury** 104:7
**amount** 106:13
**amounts** 144:21
**analysis** 38:5 110:1
  216:20
**Anderson** 104:1
**and/or** 32:12 33:19
  47:3,5,11,12
  297:21
**answer** 8:4 15:14
  16:15,17,21 19:14
  20:20 23:4 29:2,6
  29:10,12 31:16
  34:20 35:6,8,9,13
  35:15,18 36:2,23
  37:4,6,15 38:15
  41:4,13 42:12,15
  43:15 44:23,24
  45:2,10 46:15
  49:9 52:1,3 55:19
  56:10,23 57:15,17
  57:20 62:19 64:24
  87:19 98:20 102:3
  102:4 104:18

  112:12 114:6,11
  116:10 117:4,11
  117:23 118:3,12
  118:14 121:9,23
  122:14 125:1
  126:8,17 127:3,16
  130:11,18 131:1,5
  132:1 141:22
  142:4,9 145:24
  146:22 156:11
  157:15 159:17
  175:9 178:4
  179:13 181:13,13
  181:19 184:8
  189:22 190:2,5
  191:15 193:18
  196:10 197:4,4
  198:12 207:3,6,8
  208:4 209:11,15
  214:4 219:16
  222:21 224:20
  225:2,3 228:6
  230:11 235:9,22
  237:14,22,23
  238:9,19 239:15
  242:9,23 245:6,19
  246:5,14 248:12
  250:8,12 252:8,19
  253:4,13,23 254:1
  254:15,17,19,21
  254:23 256:4,13
  256:16 257:3,8,17
  258:1,15,21 259:5
  259:22 263:2,8
  265:18 267:12,22
  269:2 272:20
  274:1,21 275:4,6
  276:10 277:19
  278:4 279:18,19
  279:23,24 280:9
  280:15,16,18
  281:12 284:11
  285:22 286:17,20
  287:7,9,15,17
  288:5,7,10,12,14
  288:16,18 289:2

  289:19 290:12,14
  290:15,18 291:7
  292:2,20,23
  293:10,21
**answered** 136:3
  157:11 159:21
  186:10 187:3
  188:23 189:1
  192:18 229:22
  290:10 291:24
**answering** 189:21
  190:2 192:15
  195:14
**answers** 5:19 6:4
  92:18 97:7 182:20
  194:24 196:11,12
  198:18 199:12,20
  202:8 211:23
  226:1
**anticipated** 30:8
**anybody** 23:7 38:3
  41:8 52:6,9
  167:18 173:23
  248:5
**anyway** 237:24
**apparently** 188:10
  194:17 201:24
**appear** 74:9 75:11
  77:5 187:11
  188:12
**APPEARANCES**
  2:1 3:1
**appeared** 96:17
**appears** 143:9
**applicable** 46:11
  85:2 156:23
**application** 161:4
**apply** 113:10
  297:19
**appreciate** 295:17
**apprized** 112:17
  114:20 249:2
**appropriate** 66:24
  137:1,23 170:23
**appropriately**
  137:20



**approval** 93:23
94:6 97:8,12
136:22 168:9,22
169:8 286:5
**approve** 108:11
**approved** 108:13
120:12
**April** 5:4 6:16,17
61:8,9 74:4 147:3
188:10 204:4
**Arch** 2:14
**area** 32:9 33:4 39:8
40:18 161:5 171:9
269:24
**arm's** 234:11
**arrangement**
219:10
**arrived** 156:1
158:4 159:6 163:1
268:4
**Arrowood** 65:16
**Arthur** 1:13 2:23
4:4 7:4 10:3,22
104:1 177:3
226:20 298:4,14
299:3,24
**arts** 11:19
**Asbestiform**
247:16
**asbestos** 6:8 15:11
17:10 18:11,17,24
19:8,19 20:3,15
27:4 32:11 33:19
33:23 35:1,22
36:11,22 39:20
40:18 47:4,12
48:15 49:18 54:17
55:15 116:14
117:19 118:9
127:1 129:7
131:20 135:22
136:12,14 142:2,6
149:2 155:4 185:4
188:4 189:10,12
189:19 191:10,24
193:5 203:10

206:17 207:14
228:11 229:6
238:5,15 239:4
240:19 241:5
244:11,22 245:23
246:11 249:16
250:5 251:8 252:1
253:2,11,17
254:11 255:22
256:24 258:9
259:11 260:6
261:12 262:23
264:1 265:7 266:3
274:19 275:2
276:6,15 277:1,15
278:21 279:14
282:22 283:10
284:1,10,19 287:2
290:8 293:7,18
**asbestos-related**
137:9 183:23
189:11
**Ashton** 4:15 5:7
208:12,24 209:7
210:22 211:9,14
212:10,18,20
216:21 217:7
220:22
**Ashton's** 212:24
**asked** 28:20 36:19
37:10 50:15,16
57:13 80:11
104:18 122:23
126:18 136:3
141:21 157:11
159:21 179:1,15
181:5 201:22
281:2,4 288:3
290:10 291:24
292:19
**asking** 37:17 45:18
52:17 56:7 62:14
64:17,19 94:18
116:18,22,24
122:6 125:8
129:19,21,23

130:2,3 132:9,10
141:11,13 152:2
162:2,5 165:18
166:11 191:14
196:5 201:18
202:5 205:19,21
206:20 222:9
227:22 228:3
242:13 251:15
252:5 258:1 267:1
267:13 273:6
275:16 287:4,15
290:11 291:15
**asks** 184:3 192:15
212:6 273:16
**assemble** 80:23
**assert** 207:2 290:7
**asserted** 38:11
54:15 55:24
104:22 125:14
126:6 242:20
286:10,24 294:3
294:10
**asserting** 39:19
57:11 122:11
289:24
**assertion** 37:9,18
242:12 253:9
275:1 286:13
**assertions** 253:1
276:5
**assessment** 130:14
242:15,19 244:12
244:22 273:7
**assigned** 86:13
88:21 172:7
**assist** 219:11
**assistance** 172:5
**assistant** 12:7
**associate** 87:24
192:20 195:17
233:18
**associated** 244:12
**associates** 240:14
**assume** 18:6 77:22
89:13 101:15

137:2 181:19
295:8
**assumed** 201:19
279:1
**assumes** 50:2 89:4
134:13 135:10
136:16 148:18
161:13 193:8
199:22 200:23
202:19 203:15
207:17 259:19
260:11 269:10
278:17
**assuming** 270:23
**assumptions** 102:5
**attach** 61:9
**attached** 25:17
61:7 149:24
200:16 212:10
298:10
**attachment** 7:11
73:7 218:13 224:9
**attachments** 7:9
211:8
**attend** 13:21 87:5
**attended** 119:23
**attention** 43:17
110:5 223:9
**attorney** 42:17
172:7 278:6
**attorneys** 177:4
209:6 212:16,20
212:23 226:23
243:23
**attorney-client**
16:11 22:23 36:3
37:12 47:22 76:21
116:8 121:21
207:2 208:3
210:21 228:2
230:9 242:21
250:10 254:24
256:6 257:5
258:17 273:17
286:15
**auditor** 103:22

130:5
**auditors** 103:9,14
103:15 104:12,19
105:4,13 114:24
123:20 124:18,20
125:5,20 126:11
126:23 127:6
128:12,19,21
129:5 130:22
131:10
**August** 219:20
224:5
**author** 163:21
215:16
**authored** 48:14
61:5 247:7
**authorities** 40:17
**authorization**
105:20 106:4
**authorize** 94:13
95:1 206:15
288:22 289:20
**authorized** 96:22
168:21,24 169:3
193:17,24 198:3
209:6 220:8
222:14 262:11
289:10
**availability** 95:4,14
**available** 100:10
101:10,18 103:14
171:9 198:16,17
199:1,11,19 200:2
200:13 202:14
203:5,11 221:6
266:3,19
**Avenue** 2:3
**aware** 43:3 48:19
58:12 88:9 95:12
96:18 116:14
117:18 118:7
134:15,20 135:4
142:23 152:18
161:14 186:23
193:14 197:20
206:5,11 207:11



213:9,14 219:6
224:15 226:21
228:9 229:2,12
230:6 243:4
247:22 251:22
253:8 255:5,21
256:23 258:7
260:5 262:22
272:13 274:23
287:21 290:5
291:11 292:14
293:6,17 294:2
**a.m** 1:16 10:10 84:1
84:8 128:1,8

**B**

**B** 61:20,22,24
**BA** 177:2
**bachelor** 11:19
**back** 17:4,6 47:15
76:12 84:8 95:20
117:13,15 118:13
128:8 136:24
148:8 153:10,12
166:20 176:3
214:22 217:12
228:1 251:2
259:17 266:24
267:15,18 280:3,6
282:5 287:13
292:6 295:6
**ball** 196:8
**Bank** 1:15 2:4
10:12
**bar** 12:1
**Barry** 2:13 233:9
**based** 45:9 102:4
207:13 220:15
222:11 242:20
251:7,23 253:1,9
267:22 282:16
285:24
**BASF** 1:6 2:11 4:13
4:15 5:19,21 6:21
6:23 7:5 10:5
27:17 28:21 31:9

31:11 37:24 38:1
43:10 44:12,18
70:5 121:2 155:2
155:11 176:9
177:2 197:5
212:16,21 215:7
226:2,3,20 231:12
232:3,15 233:20
236:15 237:2,17
239:11,19,24
241:12,22 242:17
245:11 271:15,23
274:16,23 276:14
276:24 282:8,9
286:10,24 294:4
294:10 295:20
299:2
**BASF's** 272:6
**basically** 87:2
138:1 156:18
179:11 265:2
285:2 295:10
**basis** 17:2 37:8,17
39:11,18 40:6
54:3 79:5 103:15
110:7 112:23
206:16 242:12
251:14 274:11
289:5
**Bates** 63:2 65:15
**began** 17:20 231:16
**beginning** 104:1
105:6
**begins** 10:2 43:23
164:13
**behalf** 96:23
141:17 148:11
182:21 193:19
194:24 214:10
220:9 294:10
**belief** 53:20 54:4
298:9
**believe** 20:21,21
32:24 41:20 56:1
63:13 100:24
103:17 110:2

154:19 156:12
183:17 197:6
232:20 245:9
253:20 257:12,21
265:3 266:10
277:5 290:13
**benefits** 140:18
**best** 181:16 298:8
**bid** 231:12
**big** 134:2 156:19
**bill** 108:1,3,12
**billed** 111:9,17
**billing** 107:20
**bills** 108:4,24
**bit** 23:2 26:5 42:1
43:20 83:14 91:3
178:14
**blame** 71:12,12
**blessing** 93:20
**board** 13:21 112:16
113:3,11 114:14
116:13,13,19
117:7,18 118:6
119:14 120:10
122:3,5,8 123:6
243:3 284:8,14
**Bob** 63:6
**BOISE** 2:13 54:21
65:16 70:15 71:13
101:12,19 105:16
137:16 141:8,12
184:11,16 207:18
209:21 240:8,21
241:6 260:20
262:4 265:12
266:8 285:17
295:24
**boiseb@pepperl...**
2:16
**Bondo** 75:5,13
**bonus** 87:16
**books** 120:13,16,18
121:2
**bottom** 71:1
**bought** 31:22
**Boulevard** 2:20 3:4

**boxes** 170:22,23
171:9
**Boyle** 2:19,20 72:21
143:15 164:6
181:7 246:21,22
285:6,16,19
287:10,14 288:13
291:3,14,19 294:5
294:12
**Brazukas** 1:17
10:16 297:14
**breaching** 250:9
**break** 83:16 230:21
231:4,6 250:15
272:23
**brief** 84:5 128:5
230:16 250:23
282:2 295:3
**briefly** 138:10
**broad** 23:3
**Brockman** 61:10
64:18,20 65:5
**broken** 110:3,4
**brokers** 279:13
**brought** 252:23
**Brush** 15:20 16:5
16:24
**budget** 107:8,14
**building** 90:19
**burden** 47:14
**business** 12:14,15
69:6,20 86:16
89:7 110:9 130:4
172:4 193:12
269:24
**Bynoe** 66:3

**C**

**Cahill** 2:16 4:17
21:12 23:7 26:18
26:20 29:10 38:4
38:13 41:9 50:8
53:19,22 54:7,16
56:14 63:11 65:7
79:1 80:2,22
81:23 84:19,20

85:4 86:24 89:14
91:4 93:13,18
94:6,13 95:2
96:24 97:19 98:18
100:10 101:10
102:1,22 103:1
105:2,13,20 107:7
108:11 111:9,16
133:17 136:20
137:19 151:5
156:21 177:4
199:18 205:13
206:6,16 207:12
211:1 212:16,23
213:1 216:7
226:23 228:19
233:11 240:3,5,18
241:2,11 252:11
262:21 263:5,12
263:22 265:20
273:14 274:5
285:1 286:3
287:23 288:23
291:1 294:4
**call** 17:15 30:13
109:21 172:6
**Callahan** 3:9
140:22 164:19,22
**called** 58:20 65:6
74:5 77:1 82:20
126:1 159:12
225:7
**calling** 190:19
**calls** 75:18 78:6
115:2 116:17
168:14 170:2
198:20 199:3
205:17 221:14
222:16 231:4
239:13 248:10
249:4 261:17
264:8 265:11
266:7 267:8 270:7
270:18 277:18
286:7
**candor** 264:13,22



**capable** 30:15 38:9
**capacity** 13:9 21:16
  57:10 190:16
**caption** 188:5
  299:2
**captioned** 226:5
**carrier** 67:10,19
  69:14 281:11
**carriers** 63:8 66:19
  103:2 255:13
  279:12 280:21
  292:14 293:6,16
**Carter** 5:8 183:5,13
  219:21,22 220:8
  224:10
**Carter's** 224:1
**case** 5:13 29:18
  32:6 43:10 58:20
  58:23 62:12 67:2
  70:5 74:4 76:4
  77:1,8,19 78:2,3
  91:23 92:19 97:13
  99:9 102:10,12
  105:19 138:10,12
  138:17,23 141:5
  142:16 146:9
  147:4,9 148:15
  149:8,12 151:16
  153:24 155:2,5,6
  156:2,7 157:9
  165:14 166:16
  185:4 199:1 201:6
  212:23 224:17
  225:7 226:2,22,23
  226:24 227:5,15
  227:18 228:21
  229:3 230:6 243:5
  247:9 248:6
  249:15 257:10,22
  258:7 263:12
  268:22 285:13
  286:12 294:4,11
  299:2
**cases** 58:19 59:2
  75:12 79:22 80:13
  81:15 83:7 84:12

91:18 96:16
  105:11 113:18
  130:21 149:12
  153:24 160:1,12
  174:18,23 204:13
  207:13 209:8
  213:24 214:9
  251:7,22 252:23
  253:8 257:12,23
  260:19 261:23
  262:14 273:10
  274:24 275:12
  279:14 291:13
  292:13,15 293:16
**Catalysts** 1:6 2:11
  5:19,21 6:21,23
  7:5 10:5 299:2
**category** 84:24
**caution** 16:9 24:15
  113:6 190:8 239:7
  254:13 257:2
  280:13
**cc** 66:2
**cc'd** 204:20
**central** 172:14,18
  181:15,15
**certain** 12:14 277:5
**certainly** 54:10
  105:5 122:5
  142:22 238:13
  239:2
**CERTIFICATE**
  297:2 298:1
**certification** 297:18
**certified** 1:18 183:5
**certify** 297:5
**certifying** 297:22
**cetera** 44:8,9 184:4
**CFO** 233:10 244:7
**challenging** 295:15
**change** 15:3 120:14
**changed** 103:24
  155:6
**charge** 14:14 63:19
  78:20 80:22 88:24
  108:21 120:21

172:18 244:5
  260:1
**Charles** 5:8 183:5
  183:13 219:21,22
  220:8
**Chatham** 2:21
**check** 204:24
**checking** 169:18,23
**checklist** 124:13
**Chemical** 5:16
  60:19
**chemicals** 12:23
  13:4,8 156:14
  159:3
**Chernick** 6:12
  188:6 201:12
**chief** 112:9
**Chris** 11:12 59:24
  63:3 70:9,15
  76:11 83:13
  123:12 143:5
  166:24 179:19
  186:21 187:16
  202:22 208:15
  218:1 225:13
  237:7 267:2
  275:15 281:16
**CHRISTOPHER**
  2:2
**chrysotile** 142:2,6
  144:21 148:1
  247:16 249:11,16
  250:5
**Chuck** 170:24
  171:3 173:6
**circulated** 120:10
**circumstance**
  231:19
**circumstances**
  15:16 17:12 23:3
  23:24 26:14
  138:11 248:14
**City** 188:4 198:5
  202:16 203:12,19
**Civil** 1:3 10:7 43:1
  46:9

**claim** 66:12 67:2
  183:23 294:2,10
**claiming** 259:12
**claims** 59:9 291:11
  293:5
**clarification** 255:2
**clarify** 46:22
  186:20 267:13,20
**clarifying** 123:13
**clarity** 23:10 205:7
  205:19
**Clark** 4:20 5:5,14
  247:10
**Class** 212:11
**clear** 102:4 117:17
  122:2 125:4,17
  168:20 271:12
  280:20
**clearly** 186:7
**client** 42:18 273:13
**close** 140:13
**code** 265:23
**Cohen** 2:2 10:13
  105:8
**collected** 173:13
  270:12
**Collection** 4:17
**column** 68:8
**come** 20:12 45:14
  46:18 101:22
  131:19 133:16,18
  157:7 224:13
  230:14 232:14
  235:18 246:8
  271:8
**comes** 16:4
**coming** 132:5
  136:23 236:1
**commencement**
  161:1
**commencing** 1:16
**commission** 4:11
  139:6 298:21
**committee** 119:16
  189:9
**committees** 119:14

**common** 219:14
  242:10,22 245:4
  272:19,23 281:5,9
**commun** 23:2
**communicate** 67:9
  67:18
**communicated**
  68:23 69:13 126:4
  130:22 226:22
**communicating**
  244:23
**communication**
  16:24 73:3 122:12
  210:21 228:4
**communications**
  16:10 23:6 38:3
  38:12 41:7 42:17
  56:13 76:21 79:21
  95:24 113:8,10
  114:5,8 117:5
  122:18 123:5
  224:23 229:20
  235:11 237:16
  242:16 252:10,14
  256:6,8 257:5
  258:18 263:4
  273:12,17 274:4
  277:21 280:11
  288:7 289:21
**company** 5:11 6:6
  14:5 16:6 31:22
  60:6,11 61:11,18
  62:5 67:1 79:2
  94:23 95:10 104:9
  115:24 117:6
  119:17 121:19
  122:10 123:7
  129:24 137:21
  156:11 159:14
  161:3 190:17
  209:4 231:22
  234:24 235:7
  242:14,18 244:6
  248:21 252:16
  253:8 275:23
**Compensation** 59:9



**compilation** 25:16
**compiled** 248:15
**Complaint** 212:12
**complete** 143:7
  245:10 263:13
  298:8
**completely** 22:17
**compliance** 125:6
**complies** 204:11
  215:3
**comply** 124:3
  194:16
**comprehensive**
  156:9
**concept** 160:23
**concerning** 18:11
  19:18 33:22 35:22
  49:18 58:2 77:8
  94:5 95:3,14
  101:9 106:20
  114:15 116:15
  118:8 121:16
  123:21 126:11
  128:12 151:23
  158:5 161:9 189:9
  200:17 203:10
  230:5 232:16
  236:9,21 239:3
  240:19 241:3
  243:11 244:21
  245:23 246:11
  259:9,10 260:6,18
  264:1 265:7 266:3
  266:17 268:6
  270:4,24 273:18
  274:6 276:15,24
  277:24 278:13,22
  280:23 284:8,9,19
  291:11 292:12
**concluded** 132:10
  149:9
**conclude's** 296:10
**conclusion** 131:20
  132:5 151:16
  205:23 245:22
  246:9 247:15

278:21
**conduct** 87:1
  264:13 265:22
**conducted** 271:15
**confer** 127:10,20
**confidential** 37:13
  42:16
**confirm** 254:1
**conflict** 104:2
**confused** 234:3
**confusing** 240:12
**Congressional**
  189:8
**conjunction** 93:13
  213:16
**connected** 182:1
**connection** 41:17
  56:15 183:22
  193:10
**consider** 94:22
**considered** 14:10
**considering** 136:9
**consisted** 109:21
**consistent** 55:14
  156:15,23
**consisting** 243:22
**constructed** 26:10
  26:15
**construction**
  275:11
**consultants** 18:23
  183:20
**contact** 44:18 79:2
  103:2,9 104:8
**contained** 27:3
  133:24 134:10
  170:14 200:15
  253:16 255:22
  256:24 258:8
  262:23 285:11
  297:6 298:6
**containing** 73:24
  76:21 218:13
**contaminated** 35:1
  254:11
**contamination**

54:17 55:15
**content** 18:11 23:5
  56:12 237:16
  245:24 252:9,14
  266:3 277:1,15
  280:14 282:23
  284:20 289:21
**contents** 24:16
  288:7
**context** 22:13 85:12
  133:2 190:21
  218:21 227:15
  235:24 248:6
  281:13 283:3
**continue** 16:20
**continued** 3:1 5:1
  6:1 7:1 9:1 241:11
**continuing** 23:11
  23:12 42:14
**contractors** 183:21
**contrary** 202:6
**control** 37:23
  243:23 275:22
  282:21 283:9,16
  297:21
**controls** 37:24 45:8
**convention** 64:4
**conversation** 16:4
**conversations**
  48:22 243:10,20
**Coopers** 104:4
**coordinate** 91:18
**coordinated** 63:11
  195:19
**coordinating** 54:8
  198:4,11 202:15
  203:11
**coordination** 66:18
**copied** 205:8,9,10
  205:22
**copies** 85:13,23,24
  86:1 150:13,21
  171:14 172:12
  184:3 228:20
  263:14
**copy** 25:15 29:17

61:8,9 70:16
  101:23 102:1
  151:6 223:2
**Coren** 2:3 70:23
  71:4,12,21 72:19
  72:22
**corner** 30:11
**Corp** 7:8 60:19
**corporate** 13:18,20
  28:21 112:14
  118:19 119:8,10
  125:20 195:13
  199:7 234:22
  251:5,21 283:7,22
  291:20
**corporate-wide**
  172:2
**corporation** 6:6,10
  13:8 14:1,11
  59:19 75:5 104:21
  119:19 122:7,18
  123:5 124:22
  125:9,21 131:17
  131:22 139:5
  141:17 148:11
  161:22 182:22
  193:18,19 195:1
  195:18 199:11
  245:14 246:1,12
  273:7 291:15
**Corporation's** 6:7
**correct** 12:3 29:1
  31:2 34:21 40:14
  48:6 50:1,4 71:8
  76:5 77:10 138:17
  141:17 142:3,23
  160:13 162:22,23
  163:2 170:17
  176:8 180:2 183:8
  185:5,24 186:4
  187:2 188:9
  191:11,20,21
  192:1,5,8,9,22
  193:1 204:20
  205:4 213:4
  215:19 223:15,19

224:11,12 231:13
  238:16 239:5
  240:17 241:1,10
  254:6 268:1,15,17
  268:19 270:16
  274:8 275:15
  284:22 285:24
  286:13 290:22
  297:9 298:7
**corrected** 120:15
**CORRECTION**
  299:5
**corrections** 298:10
**correctly** 146:3
**correspondence**
  286:1,3
**costs** 109:15 110:3
**counsel** 2:6,11,16
  2:23 3:6 10:17
  12:9,22 13:4,24
  21:16 32:21 34:7
  44:21 54:8 56:1
  57:10 63:11 88:1
  91:6,14 93:16,21
  94:14 112:15
  118:20 119:9
  122:7,17 123:4
  125:9 129:24
  133:17 150:12
  153:22 160:22
  190:17 192:21
  195:18 213:2
  215:24 231:23
  233:10,11,12,13
  234:22 246:18
  248:20 249:6
  251:5,21 260:1
  273:6 283:7,22
**counted** 137:22
  145:18
**countenanced**
  261:22 262:7
**country** 209:8
  213:17
**counts** 109:6
  145:22



couple 233:23
course 69:6,20
  85:19 119:11
  151:24 152:22
  166:19
court 1:1 10:6,15
  10:19 17:5 38:21
  95:19 117:14
  125:17 153:11
  182:23 188:3
  194:15 226:6
  227:24 259:16
  266:23 267:17
  280:5 287:12
  292:5
coverage 61:12,14
  61:15,17
covered 16:11,18
  24:22 25:3 51:18
  52:1 110:15
  273:23 280:17
cplacitella@cprl...
  2:5
created 151:24
  152:22 245:24
  246:11
credentials 33:4
CSR 297:14
culled 70:10
culling 70:18,19
current 15:22
  73:24 114:20
  153:16
currently 11:15
  220:20
custodian 181:18
cut 165:10 296:5

_____ D _____

D 5:8
Daniel 5:10 28:6,21
Daniels 4:20 5:5,14
  247:11
data 18:10,15,16
  71:23 81:8 220:21
  220:21 221:10,18

222:12
date 1:17 72:20
  78:15 147:22
  163:7 187:7 210:6
  210:6 216:15
  217:24 223:14,16
  223:24 224:4,11
  298:14 299:23
dated 60:6 89:9
David 5:14 7:7 21:8
  105:9 204:7 234:6
  234:7 244:4
  247:10
day 197:13 273:1
  298:17
days 109:22
day-to-day 66:22
  270:24
dead 48:5 49:17
dealing 130:5 276:1
dealings 21:15,19
Dear 6:16,17 7:7
  63:6
Debbie 10:16
Deborah 1:17
  297:14
decade 33:14
December 12:5
  77:10 231:17
deciding 114:23
decision 132:17,19
  133:5,13,21 134:9
  135:6,14,19
decisions 114:23
Decof 5:13 247:9
deem 32:7
deemed 249:6
defend 61:19
  291:13 292:15
defendant 7:4
  183:21
Defendants 1:7
defended 226:23
  274:24
defending 65:8
  94:22 290:6

defense 53:3,15
  54:8,15 87:2
  91:18 93:5 107:8
  107:8 109:8,14,15
  197:16 213:24
  214:9,19 219:11
  263:23 287:22,23
  288:23 292:14
defenses 43:6
  104:22
delay 167:4,10
delegated 78:24
demand 294:2,10
Dembrow 2:17
  211:1 212:17
  217:1
department 32:23
  33:1 86:11 88:3
  89:16 90:11,15,22
  91:24 92:21 98:7
  98:11 110:1
  141:24 142:5,22
  150:13 157:19,20
  158:5,17 159:9,19
  161:9 167:18
  169:4,9,17,19,22
  169:23 171:20
  172:1 173:4,14
  179:3,10 181:16
  197:15 199:8
  248:19
depend 30:7 101:21
  222:22 248:13
depending 16:12
DEPONENT 298:1
  299:3
deposed 85:15 86:3
  183:22 185:4
  186:15 187:1
  238:14
deposing 122:16
  123:3
deposition 1:12
  4:19 5:4,10 7:14
  8:2 9:1 10:3,10
  23:17 24:10,17

25:2 28:6,12
  34:14 85:23 89:14
  89:20 90:4 134:17
  141:3 146:9 147:3
  148:14 166:15
  189:8 191:9 192:8
  246:9,17 296:11
  297:7
depositions 22:18
  25:15 85:14 86:2
  87:5 185:23
  198:23 263:14
Desai 3:8
DESCRIPTION
  4:10 5:3 6:3 7:3
destroy 159:18
  160:14
destroyed 151:15
  159:8
destruction 151:23
  152:11 158:15
  159:13 162:8
  261:22 262:12
detail 51:10 110:7
details 51:8
determination
  137:6
determines 197:5
developed 93:4
development 99:17
  157:19 159:7
  160:15 174:5
  176:19 177:20
  212:7 266:16
  268:5 278:14
Development's
  155:7
difference 119:5,7
different 36:8
  40:22 91:20 96:6
  119:9 130:9
  164:24 182:8
  187:17 200:11
  258:13 292:17
differentiate
  284:21

difficult 143:8
dig 164:2
diligence 271:14,22
  272:6,16
direct 44:18 45:2
  81:3 97:18,20
  99:6 102:24 103:2
  103:8 173:4 195:5
  223:9 297:21
directed 36:2 46:14
  57:14 99:3 197:4
direction 8:4 16:16
  23:12 35:17 36:6
  37:15 45:10 57:12
directive 161:18
  162:7
directly 79:7
  215:11
directors 112:16
  113:3 114:15
  116:14,20 117:8
  117:18 118:7
  122:8 123:7 243:4
discard 170:22
discarded 173:10
  174:6 175:2
disclose 16:18,23
  37:4,11 42:16
  57:6 131:10
  132:17,22 133:6,6
  135:6,15,22 137:2
  234:23 235:6,15
  237:15 245:11
  260:17 280:13
  288:6
disclosed 24:19
  37:20 46:2 47:8
  47:18 105:12
  134:1,10 136:13
  137:3,7 146:10
  148:14 248:8
  255:13 259:11
  261:13 263:24
  268:7
disclosing 16:21
  43:12 235:7,10



253:23
**disclosure** 16:9
  17:16 25:2 36:9
  37:21 38:8 42:22
  44:13 45:6 125:10
  126:23 130:7
  136:18 264:14
  281:3,4
**disclosures** 7:4
  14:8 32:6,8 44:1,4
  46:8 47:17 280:21
  281:2
**discontinued** 5:17
  159:14,22 162:21
  163:16 172:13
**discoverable** 32:7
  35:21,23 37:20
  43:5 46:3
**discovery** 44:6
  47:19 91:22 96:23
  97:7,22 98:20
  100:11 101:11
  137:20 138:3
  155:2 183:14
  198:5,18 199:9
  202:15 203:12
  284:24
**discuss** 108:10
**discussed** 135:12
  135:19
**discussing** 136:8
**discussion** 84:4
  87:16 106:17
  128:4 175:23
  231:9 250:22
  282:1 295:2 296:8
  296:14
**disease** 183:24
  189:11
**dismissal** 207:13
**dismissals** 81:17
  204:13 206:16
  209:7 251:14
**dismissed** 81:16
  83:8 113:21
  130:21 251:7,23

253:9
**disposed** 266:17
  279:2
**disseminated**
  212:24 213:17
**dissemination**
  176:20 178:10
  212:8
**distinguish** 118:18
**distribution** 248:22
**District** 1:1,1 10:6
  10:7 182:22,23
**division** 5:16 13:6
  156:13,14 159:3
  275:23
**divisions** 13:7
  156:11
**divulging** 79:20
**doc** 163:14
**doctrine** 16:13
**document** 4:17
  5:17 9:4 28:22
  29:17,19 30:2
  64:6,7,8,10 73:23
  110:15 111:1
  122:13 152:3
  154:13,15 155:7
  155:12,16 156:1
  156:10,17,22
  157:7,17 158:3
  161:4 162:21
  163:1,8,12,15
  173:20,21 185:9
  185:11,13 190:15
  192:13 201:8,15
  201:23 202:13
  203:4 266:14
  268:3 269:5 279:3
  295:9
**documents** 4:18
  25:18 29:4,8,11
  29:15 162:9
  171:19 172:12
  173:22 174:4,20
  174:24 181:10,18
  182:12 196:7

246:24 278:15
  282:16
**doing** 85:10 139:1
  194:5
**dollars** 140:18
**Dornbusch** 1:13
  2:23 4:4,14 7:4
  10:3,22 11:5 16:1
  22:5 24:9 26:4
  35:5 36:1 37:21
  37:23 38:7 39:5
  40:11,13 41:5
  43:3 45:7 46:12
  47:7,17,21 49:10
  53:7 56:11 57:9
  64:20,22 78:10
  83:15 84:23 95:23
  113:7 116:19
  117:24 125:19
  130:12 136:4
  140:4 143:6 144:8
  145:14 177:3
  179:1,16 181:20
  184:18 190:14
  191:3 194:23
  196:6 209:12
  224:21 226:21
  228:4 253:21
  254:13 256:3
  258:18 274:2
  280:8 282:7 288:5
  289:13,19 295:22
  298:4,14 299:3,24
**Dornbusch's** 29:1
  44:3 126:2 201:16
**Dornbusch-1** 139:3
  139:4
**Dornbusch-2** 69:24
  70:3 209:19 210:2
  217:13 223:8
**Dornbusch-3**
  140:22 214:23
**Dornbusch1** 4:11
**Dornbusch2** 4:13
**Dornbusch3** 4:15
**dozen** 233:24

**Dr** 40:13,14,24
  44:13 48:1,4,13
  48:23 49:16 50:18
  53:2,21 55:13,22
  56:13 57:3 68:23
  69:13 88:9 99:9
  100:9,9,19 101:2
  101:8,9 102:11,11
  141:4,21,23
  144:16,16,22
  145:9,10 146:9
  148:21 149:2
  157:21 158:6,16
  159:9,18 161:9
  163:20 164:1
  165:15 166:16
  169:8 174:23
  175:7 176:21
  178:23 180:6
  181:1 186:24,24
  186:24 187:10
  191:9,19 192:8
  220:23 227:17
  229:5 247:7
**draft** 137:22
**drafted** 179:7,9
  212:17 213:15
  219:21
**drafting** 163:10
  167:14,23 176:19
  177:9 178:2 212:8
  213:23 217:7
**draw** 252:14
  273:12 274:3
**drawing** 43:16
  277:20
**Drive** 11:16
**due** 165:24 271:14
  271:22 272:6,15
**Duffy** 240:10,12
**duly** 10:23
**duties** 118:18,24
**duty** 57:6 245:11
  264:22 265:4
**DVD** 10:2
**Dynatron** 75:4,13

**Dynatron/Bondo**
  74:24 75:24
**D.C** 2:9 4:12

─────────
**E**
**earliest** 23:15 58:12
**early** 21:2 58:16,17
  62:12 63:20 87:13
  273:9
**easier** 72:22 155:22
**Eastern** 6:6 62:4
  182:23
**effect** 67:1
**effort** 172:2
**either** 48:11 61:11
  85:20 99:1 102:11
  161:2 165:19,19
  197:3 199:18
  206:15 269:23
  294:4
**electron** 146:1
  147:16
**elicit** 202:9
**ELLIS** 2:8
**Em** 19:6
**Emil** 99:20
**employed** 209:4
  291:1
**employee** 66:10
  100:5 220:5
  239:19,24 255:7
**employees** 125:20
  183:19 188:19
  189:7 226:20
  255:7,12 290:23
**Emtal** 14:18 15:11
  18:11,17,24 19:8
  19:18 20:4,15
  22:1 53:3 58:3
  67:3,19 76:22
  78:16,19 84:21
  86:14 88:4 90:6
  91:14 93:5,16
  94:15 95:4,15
  100:12,20 101:10
  105:11 109:8,15



112:17 114:15
116:6,15 117:20
118:9 121:6,17
124:20 127:1,6
128:13 129:7
130:21 131:11,20
132:18 133:7
134:3,11 135:7,23
136:12,14 142:1,7
145:20,21 148:1
159:8,19 160:6,14
161:10 170:16,20
174:22 191:24
193:5 197:16
200:18 203:10
206:17 207:15
214:9 235:17
236:9,21 237:4
238:5,15 240:20
241:5,12,22
243:12 244:11
245:24 246:11
251:9 252:1,24
253:2,11 259:1,11
259:13 260:4,7
261:12,23,24
262:14,15 263:24
264:2 265:7 266:4
268:6,22 272:8,14
274:19,23 275:1
275:12 276:5,15
277:1,15 278:1,15
278:22 282:9,23
283:10 284:2,10
284:20 287:2,24
288:23 290:6,7
291:11 292:13
293:4,7,15,18
**enforced** 156:17
**Engel** 105:11 232:3
**Engelhard** 6:6,10
12:4 13:7,18 14:1
14:15 18:24 19:6
19:17 20:1,13
21:20 26:18 31:10
38:4,13 41:8

56:15 57:11 58:2
59:2,10,19 60:11
60:18 61:2,2,18
62:6,11 63:19
65:8 66:9 83:6
85:14,23 86:2,7
86:14 87:12 88:8
88:22 89:1,17
92:1 96:24 97:20
97:22 98:21
102:12 103:9
105:21 107:2
113:3 118:8 121:1
123:21 126:14
129:5 131:10
132:18 137:8
139:5 146:12
149:11 150:7
152:1,23 154:14
155:4,6,12 156:13
157:18 160:14
169:7 182:21
183:8 185:3,23
186:8,14,23
195:18 198:24
213:2 214:10
219:24 220:5,9,20
221:6 222:13
226:20 229:3
231:12 237:17
238:4,14 241:4
243:3,4 245:1
246:10 251:6
252:24 253:7,16
254:10 255:6,20
255:22 256:22
257:20 258:8,24
259:10,12 260:3,6
260:18 262:23
264:3,15 265:4,21
268:21 271:9,16
274:6,17 275:10
278:11 279:11
280:12,22 281:10
291:10 292:11
293:3,15

**Engelhard's** 57:12
69:14 128:12
195:19 198:4
253:10 255:13
257:11 282:21
283:8,23 287:21
288:21 290:23
**Engelhard/BASF**
32:12
**Engelhard/BASF's**
47:5,13
**Englehard** 7:8
**ensued** 13:15
**ensure** 86:24 157:1
260:2
**entailed** 118:24
**Ental** 17:10 256:23
**enter** 219:2 244:22
**entering** 218:20
**entire** 14:1 61:12
78:8 291:15 298:5
**entirety** 122:4
**entitled** 31:23 63:1
247:7
**entity** 271:10
**entries** 4:16 78:11
215:11
**entry** 70:14 72:15
73:2 74:3,12
76:10 78:1 210:3
216:14,16 217:23
223:10
**Eric** 3:3 6:13,15 7:7
204:3,5,7
**ERRATA** 299:1
**especially** 98:12
**Esquire** 2:2,3,8,13
2:19,20 3:3,8,8
6:19 195:17
**established** 64:11
98:12 201:21
247:19
**estimate** 21:6
**et** 1:3,6 4:21 5:5,11
5:15,20,21 6:12
6:23,23 7:5,6 10:4

10:5 44:8,8 184:4
247:11 299:2,2
**etunis@herold.c...**
3:5
**evaluation** 146:2
**event** 122:9
**events** 121:17
**eventually** 79:3
**everybody** 25:10
182:20 195:24
233:4
**evidence** 44:7
54:16 55:15 95:4
95:14 102:9
116:15 117:19
129:6 131:20
132:17 133:6
136:12 151:23
152:11,21 153:23
157:18 161:7
193:1 200:3,17
203:10 224:15
251:24 255:11
262:12,13 264:14
266:16 268:2,14
269:7 274:18
278:21 286:11
287:1 293:6 297:6
**Ex** 212:10
**exact** 224:11
**exactly** 29:14
190:13
**EXAMINATION**
11:2
**examined** 10:23
**example** 80:12
89:13 92:19 96:13
99:7 114:24
**exceeding** 268:20
**exception** 79:5
160:10
**excerpt** 4:13,15 5:9
141:8 143:16
215:7
**excerpts** 28:5 70:4
141:10,13 209:22

**excess** 63:8
**exchange** 4:11
72:12 74:13 77:7
105:4 139:6
210:15,24 215:13
216:24 229:7
**excludes** 143:16
**Excluding** 4:17
**excuse** 26:3 59:24
91:24
**executed** 208:12
287:23 288:22
**execution** 176:20
178:18 212:9
**executive** 183:7
220:1
**executives** 85:14
97:21 255:18
**exercised** 245:10
**exhibit** 7:13 25:15
28:4,5 32:1,5
70:24 71:5 140:21
140:24 141:3
146:6 147:2,2
162:12,16 176:12
177:13 187:14
203:18 204:2,4,5
204:7,24 205:5
208:8,11 211:20
219:18,20 225:10
225:24 247:3,6
**exhibits** 4:8 5:1 6:1
7:1 149:24 150:22
206:12
**existed** 18:16
228:12 278:22
**existence** 126:24
134:16
**exists** 37:11
**expect** 96:18
248:20 249:7
263:18
**expectation** 151:5
151:15 261:10
263:22 264:10
265:19



**expenditures** 110:2
**experience** 46:7
   129:22
**expert** 33:2,4
   183:20 227:18
   228:10 248:24
**expires** 298:21
**explain** 40:5 96:9
**explained** 39:11,23
   40:2,8 137:18
**exposure** 183:24
   189:10 252:24
   261:24 262:15
   264:4 275:12
**expressed** 97:12
**extension** 170:24
**extent** 22:24 25:1
   93:10 98:3 102:3
   114:4 172:3 190:7
   275:9
**extracting** 270:15

---

**F**

**faced** 271:24
**face-to-face** 232:15
**facilitate** 197:7
**facility** 156:18
**facing** 234:24 237:3
**fact** 20:3 24:21
   32:24 36:9 37:19
   48:4 49:17 64:12
   78:8 111:22 195:1
   196:9 201:15
   235:5 249:15
**facts** 50:2 54:11
   93:22 126:3
   134:13 135:10
   136:16 148:18
   161:13 193:8
   198:12,15 199:22
   200:23 201:19
   202:19 203:15
   207:17 259:19
   260:11 269:10
   278:17 284:8,9,19
   294:3,11

**factual** 93:23 94:5
   191:1
**factually** 57:5
**fair** 13:1 31:1 52:14
   91:6 204:14
   285:13 295:12
**fairly** 92:6,10
**fairness** 202:23
**familiar** 25:22,24
   63:14
**far** 79:23 201:4
   213:5
**Farrell** 2:8 13:11
   14:19 15:17,24
   16:3,8 17:13 18:3
   18:18 19:1 20:5
   20:17 21:3 22:2
   22:14,22 24:7,15
   25:6 26:11,22
   27:6 28:1,7 29:22
   30:4 31:3,14,17
   32:3 34:1,16,20
   35:2 36:14,19
   37:3,17,22 39:2,9
   39:15,22 40:1,8
   41:2,12,18 42:6,9
   44:15 45:16 46:4
   46:20 48:7,17,24
   49:7,22 50:2,21
   51:3,20,24 52:15
   53:4,12,23 54:5
   54:19,22 55:5,17
   56:5,10,19,22
   57:18 58:8 59:4
   59:11 60:12 62:17
   63:2,21 65:1
   66:15 67:6,13,20
   68:17 69:1,7,15
   69:21 70:8 72:5
   72:13,17,24 73:20
   74:6,15 75:6,17
   76:6 77:2,11 78:5
   78:22 79:12 80:5
   80:15,24 81:18
   82:1,5,12 83:1,9
   84:14,22 85:16

86:4 87:6 88:10
   89:2,22 90:16
   91:15 92:2,12,23
   93:7,24 94:7,16
   95:6,16,21 96:10
   97:3,9,14,24 98:8
   98:22 99:10
   100:13,22 101:3
   102:14 103:4,11
   104:14 105:14,22
   106:6,14,22 107:3
   107:10,21 108:15
   109:2,9,17 110:12
   111:2,11,19 112:6
   112:19 113:5
   114:2,10,17 115:1
   115:9,16 116:1,7
   116:16 117:3,10
   117:21 118:2,10
   118:21 120:7
   121:7,12,20 122:4
   122:16,23 123:3
   123:10,22 124:5
   124:23 125:8,14
   125:23 126:16
   127:2,8,15,19
   128:14,23 129:8
   129:17,23 130:8
   130:12,17,23
   131:4,12,23 132:6
   132:13,20 133:9
   134:4,12 135:1,9
   135:17 136:2,15
   137:10,14 138:4
   138:18 139:11
   142:18,24 144:17
   145:5 146:13,19
   147:10 148:2,17
   149:4,13,18 150:2
   150:8,15,23 151:8
   151:17 152:14
   153:3,13 154:2,5
   154:17 155:18
   156:3 157:10,22
   158:7,18,23
   159:10,20 160:3,7

160:17 161:11,23
   163:3 167:20
   168:4,10,13
   169:10,24 170:8
   171:21 172:20
   173:15,24 174:9
   175:3,6 177:21
   178:3,7,11,19
   179:18,21 180:7
   180:15,21 182:17
   183:9 184:12
   185:6,10,14 186:2
   186:11,16 187:4
   188:15,20,24
   189:15,23 190:6,9
   190:12 191:12
   192:3,10 193:2,6
   193:20 194:5,9,13
   194:18 195:3
   197:17 198:7,19
   199:2,13,21 200:8
   200:21 201:2
   202:2,5,17 203:6
   203:14 204:16,21
   205:16 206:18
   207:1,5,16 208:1
   209:9,14 211:16
   213:18 214:1,11
   215:4 216:1 217:8
   217:14,24 218:22
   219:5,13 220:2,10
   221:3,7,11,13,21
   222:2,15 223:4
   224:18 225:1,5
   227:6,20 228:2,13
   228:22 229:10,16
   229:23 230:3,8
   231:20 232:6,17
   232:24 234:14
   235:1,8 236:2,10
   236:18,23 237:12
   238:6,17 239:6,12
   239:20 240:6
   241:13 242:1,6,13
   243:6,13,18
   244:14 245:2,17

246:2,13 247:24
   248:9 249:3,18,24
   250:7,11,14
   251:10 252:6,18
   253:3,12,18
   254:12,19 255:14
   255:23 256:3,8,12
   257:1,7,14,24
   258:10,15,20
   259:2,14,18
   260:10,21 261:16
   262:2,16,24 263:7
   263:16 264:6,16
   265:9 266:5,21
   267:1,6,11,19
   268:9,16,23 269:9
   270:6,17 271:3,17
   272:2,9,17 273:5
   273:23 274:10,13
   274:20 275:3,13
   275:18 276:7,17
   277:2,17,24 278:3
   278:16,23 279:8
   279:16,22 280:7
   281:1,13 282:11
   282:24 283:3,12
   284:3,11 285:4,14
   286:6,14 287:6
   288:1,15 289:1,6
   289:12 290:9
   291:4,23 292:16
   293:8,19 294:6,13
   295:19

**Farrell's** 17:19
**fashion** 166:5
**fault** 226:12
**Federal** 42:24 46:9
**fell** 96:20
**felt** 137:1
**fiber** 145:22,22
**Fiberglas** 6:7
**fibers** 145:18,19
   146:1 148:1
**Fifteen** 2:9
**Fifteenth** 2:9
**fifth** 247:14



MAGNA
LEGAL SERVICES

**fifty** 182:15
**fight** 272:24
**figure** 110:22,24
**file** 29:1,20 30:3
  60:18 82:17,20
  90:3,20 138:22
  150:14 151:7,15
  170:22,23 199:19
  201:9
**filed** 58:22 59:2,10
  67:3 82:15 156:2
  156:7 226:6
  257:13
**files** 27:18,20 30:10
  31:23 50:14 89:1
  89:5,7,10 90:22
  90:23 158:16
  159:13,18 160:15
  170:14 172:14,19
  173:13 200:4
**final** 157:8 163:1
**finalize** 212:19
**finalized** 155:12
  157:4 266:15
  269:6
**finance** 109:20
  112:11 119:16
**financial** 14:8
  104:21 112:9
  131:16 283:24
**find** 30:17 39:1
  72:1 112:1 164:16
**findings** 68:23
  69:12 88:9
**fine** 16:22 57:21
  250:17
**finish** 190:2
**finished** 123:10
  221:11
**firm** 100:10 102:22
  228:20 233:14
**first** 6:11,22 12:6
  15:9 17:7,8 18:9
  18:14,22 19:5,12
  19:21 20:10 37:22
  42:21 58:5,11

59:18 71:5 112:8
  142:12 145:11
  174:20,24 197:13
  204:24 206:2
  210:16 214:7
  216:15 234:5
  240:11
**firsthand** 252:12
**Fish** 157:1
**five** 281:19 294:20
**five-minute** 83:16
**flash** 208:16 212:1
**flesh** 39:7,10
**Fliegel** 87:23
  204:20 205:1,14
  205:22 206:6
  211:4 215:17
**flip** 182:5 294:17
**flipping** 182:2
**floor** 90:19
**following** 141:22
  145:10 181:5
**follows** 10:24
**foregoing** 297:18
**foremost** 40:17
**foreseeable** 279:13
**forget** 233:16
**forgotten** 22:17
  55:10
**form** 13:12 14:20
  15:12,18 18:4,19
  19:2,10 20:5,17
  21:4 22:3,15,22
  26:12,23 27:7
  28:1 29:22 30:5
  31:4,6,17 34:2
  35:3 36:15 41:2
  41:18 42:10 45:16
  46:4,20 48:7,18
  48:24 49:7,22
  50:22 51:3,20
  52:16 53:4,13,24
  54:6,20,21,22
  55:18 56:4,6 58:9
  59:5,12 60:13
  62:17 63:22,23

65:1 66:16 67:7
  67:14,21 68:17
  69:1,7,15 73:21
  74:7 75:6,16,18
  76:6 77:2,11 78:5
  78:23 79:13 80:6
  80:15 81:1,19
  82:5,13 83:2,10
  84:15,23 85:17
  86:5 87:7 88:11
  89:3,21,22 90:17
  91:16 92:3,12,23
  93:8,24 94:16
  95:6 96:11 97:4,9
  97:14 98:1,8,22
  99:11 100:13,22
  101:12 102:14
  103:5,12 104:14
  105:14,16,22
  106:6,14,22
  107:11,16,21
  108:15 109:3,10
  109:18 110:12
  111:3,11,19
  112:20 113:6
  114:3,17 115:2,10
  115:17 116:1,8,16
  117:21 118:22
  120:7 121:7,21
  123:23 124:5,24
  127:8 128:14,24
  129:8,18 130:23
  131:12,24 132:21
  133:9 134:4 135:2
  135:10 136:3,16
  137:11,14 138:5
  138:19 139:12
  142:17,19,24
  144:17 145:5
  146:14,20 147:11
  148:3,17 149:4,13
  149:18 150:15,24
  151:1,8,17,19
  152:4,14 153:3,14
  154:3,18 155:19
  156:4 157:11,22

158:8,18,23
  159:10,21 160:7
  160:16,18 161:12
  161:24 163:4,24
  167:21 168:5,11
  169:10,24 171:22
  172:21 173:15
  174:1,9,11 175:4
  175:5 177:21
  180:7,16,22
  183:10 184:11,12
  185:7 186:3,12,17
  186:19 187:4
  188:16 191:12
  192:3 193:3,7,20
  194:9 195:3
  196:17 197:3,17
  198:7,20 199:14
  199:21 200:8,19
  200:21 202:18
  204:17,22 205:17
  206:10,19 207:17
  208:2 209:9
  211:16 213:12,19
  214:2,11 216:1
  217:9 218:23
  219:14 220:3,10
  221:8,14 222:3,16
  223:4 224:18
  227:6,21 228:13
  228:23 229:11
  230:9 231:21
  232:7,18,24
  234:14 235:2,8,19
  236:2,10,18
  237:12 238:7,17
  239:13,21 240:7
  240:21 241:6,14
  242:2,7 243:6,13
  244:14 245:3,16
  245:17 246:3
  248:1,9 249:18
  251:10 253:18
  255:15,23 257:15
  258:23 259:3,19
  260:9,11,20,21

261:15,16 262:1,2
  262:16,18 263:1
  263:17 264:7,16
  265:10 266:6,20
  268:8,9,23 269:9
  270:6,18 271:17
  272:9,18 275:13
  276:8,17 277:2,18
  278:16,20,23
  279:9,16 282:11
  282:24 283:12
  284:3 285:5,14
  286:7,15 288:2
  290:10 291:2,3,4
  291:23 292:17
  293:8,19 294:6,14
**format** 115:7
**former** 100:5
  122:17 123:4
  125:9 190:16
  198:24
**Formerly** 6:5
**formulate** 156:9
**forth** 43:2,4 47:15
**found** 18:24 27:18
  28:23,24 34:24
  39:20 72:3 142:6
  144:22 149:2
  191:24 200:4
  229:6 249:11
**foundation** 18:19
  20:6,18 22:23
  28:2 29:23 30:5
  31:18 35:3 36:15
  41:3,19 42:10
  45:17 46:5,21
  48:8 49:1,8,23
  51:4 53:5,13
  54:23 55:18 56:6
  59:5 62:18 65:2
  68:18 69:2,8,16
  75:7,18 76:7 77:3
  77:12 78:6 80:16
  81:19 82:6 84:15
  89:3,23 92:3,13
  92:24 94:1,17

95:7 97:10,15
98:1,9,23 100:14
100:23 101:13
102:15 104:15
105:15,23 106:7
106:15,23 107:22
108:16 109:10
110:13 111:12,20
113:6 114:3,18
115:2 116:2,8,17
117:22 120:8
121:8,21 124:6,24
127:9 128:15,24
129:9,18 130:24
131:13,24 132:21
133:10 134:5
135:10 136:3,16
137:15 143:1
144:18 145:6
146:20 147:11
148:3,18 149:5,14
149:19 150:16
151:9,18 152:5,15
153:4,14 154:6
155:19 157:11,23
158:8,19,24
159:11,21 160:8
160:18 161:12
163:4 168:13
169:11 170:1
172:21 173:16
174:1,10 175:6
177:22 180:8
184:13 185:7
186:17 187:5
188:16 191:13
192:4 193:3,7,21
194:10,13,19,22
195:4 197:18
198:8,20 199:22
200:9,22 201:11
201:21 202:18
205:17 206:19
207:17 208:2
209:10 211:17
214:2,12 216:2

217:9 219:14
220:11 221:14
222:3,16 223:5
224:19 227:7,21
228:14,23 229:11
230:9 233:1
234:15 235:9,20
236:3,11,19
237:13 238:7,18
239:13 240:8,22
241:7 242:7 243:7
243:14 244:15
245:3,18 246:3
248:10 249:19
251:11 253:19
255:15,24 257:15
259:3,19 260:11
260:22 261:17
262:3,17 263:1,17
264:7,17 265:10
266:6 268:10,24
269:10 270:7,18
271:18 272:10,18
275:14 276:8,18
277:3,18 278:17
278:24 279:17
282:12 283:1,13
284:4 285:15
286:7,15 288:2
290:10 291:5,24
292:17 293:9,20
**foundational** 19:12
**founded** 32:24
**fourth** 68:2 216:14
  216:14
**frame** 55:1 153:1,6
  154:8 227:17
  228:10
**Francis** 6:18
**frankly** 126:18
  229:22
**free** 103:16 206:17
  275:2 276:6 290:8
  293:18
**frequently** 21:22
  124:12

**Friedman** 74:14,14
  74:16,18,21
**front** 1:15 10:11
  25:13 59:17
  143:12,14,22
  155:1 162:15
  176:12 200:12
  209:19 210:1
  211:21
**full** 27:17 28:8
  87:21 141:10
  145:11 195:11
  263:13
**fully** 297:6
**furiously** 182:2,5
**further** 33:18 52:3
  212:21 250:12
  255:2
**future** 105:11
  257:13,22

---

### G

**G** 63:14 65:6
**gaining** 196:5
**Gale** 5:4 100:2
  147:3,8,15 186:24
  191:23 263:15
**gathered** 171:19
**general** 12:9,13,22
  13:4,24 21:16
  54:9 57:10 84:11
  86:16 87:24 94:19
  94:21 95:2,9
  108:5 112:15
  118:19 119:8
  122:7,17 123:4
  125:9 129:24
  131:14 153:22
  154:13 160:10,22
  173:7 190:17
  192:21 195:17
  251:5,21 260:1
  269:19 271:5
  273:6 283:7,22
**generally** 51:12
  65:8 80:8 84:21

91:13 104:11,19
  162:7 291:17
**generated** 269:8
**generic** 95:22
**geology** 32:23
  40:18
**Georgia** 32:24
  57:23 147:17
**Germany** 233:22
**getting** 22:21 41:6
  130:14 224:21
  263:3 284:14
  286:5
**give** 24:6 28:3
  30:14 32:1 34:7
  59:15 65:10 69:23
  72:14 82:19 87:18
  96:13 98:13 102:1
  112:12 113:12
  139:2 140:20
  146:6 154:21
  162:12 165:1,2
  196:15 203:21,22
  210:5 214:3
  219:17 233:6
  237:23 247:3
  274:8
**given** 37:19 87:21
  136:23 141:4
  182:19 191:23
  228:3 246:10
**gives** 63:12
**giving** 32:5 147:8
  157:2 190:14
**Glassley** 148:22
  149:2 227:17
  229:5 247:7
**glean** 74:3
**Glen** 176:21 177:3
**Glenn** 4:19 141:4
  168:15,20
**Global** 6:12
**go** 25:7 28:18 38:20
  42:20,21 59:22
  62:23 70:7 76:10
  85:9 98:6,11

108:14 121:12
124:10 127:21
136:4 139:15
141:19 145:1
147:14 148:8
164:2 165:22
166:20 168:9
174:20 175:15,17
176:11,14 177:17
181:12 183:16
188:8 189:20
192:12 214:22
216:13 217:12,18
223:8 225:10,11
226:18 247:14
**goes** 28:15
**going** 15:21 28:11
30:16 65:14 70:2
83:14 84:1 102:2
112:17 127:20
128:1 147:1
165:20,21 175:20
187:13 196:2,3
203:24 205:15
206:7 207:7 208:7
208:16 209:18
210:1 213:10
234:12 237:21
250:19 281:22
283:14 294:19,23
295:9 296:11
**golf** 234:4
**good** 11:5,7,11
28:17 71:12 87:18
104:5 133:2
187:22 234:9
294:17
**good-looking**
246:19
**Gordon** 2:16 21:13
26:18,20 53:19,22
54:16 63:12 65:7
79:1 80:2,22
81:23 85:4 93:18
94:6,13 95:2 97:1
97:19 98:18



100:10 101:10
102:22 103:1
105:2,20 107:7
111:9,17 136:21
151:5 177:4
199:18 205:13
206:6,16 207:12
211:2 228:20
233:11 240:3,5,18
241:2,11 252:11
262:22 263:5,13
263:22 273:14
287:23 288:23
291:1
**gotten** 120:15
**great** 144:10
  156:18
**Grimm** 5:13 247:9
**ground** 25:11
**grounds** 23:9 25:19
  36:3 41:14 44:7
  56:24 117:11
  118:4 127:17
  132:7 252:20
  256:14 263:9
  267:23 278:4
**group** 12:18 172:8
  173:8 243:21,23
  275:22
**groups** 12:15,19
  172:4
**guess** 33:18 93:11
  108:18 133:11
  157:15 239:24
**guessed** 216:7
**guessing** 33:16
**G.A** 162:17

**H**

**H** 5:6,14 212:10,20
  247:10
**Hachat** 170:24
  171:3,4,5 173:7
**Halket** 3:6 73:4
  86:17 87:11 88:8
  89:6 99:1 141:16

141:21 143:2
144:16 150:21
177:3 218:16
260:17 294:4
296:3
**Halket's** 261:7
**halls** 90:24
**HAMILTON** 2:13
**hand** 204:1
**handful** 92:15
**handle** 175:14
**handling** 81:8
  289:23
**happen** 120:4
  169:16 180:20
  279:5
**happened** 108:24
  115:22 121:17
  149:9,23 278:14
**happening** 171:18
**happy** 165:3,7
  166:7,22 201:2
**Harbor** 11:16
**harder** 277:8
**Harriet** 7:10 65:20
**Hassett** 88:14
  192:20,24 193:10
  193:17,22 195:1,7
  195:17 197:11,14
  199:20 200:3,14
  201:6 202:14
  203:11 205:2
  226:21 227:15
  228:5 282:18
**head** 32:22 99:16
  169:17,22 179:2
  209:3
**headed** 157:21
  158:5 161:9
**heading** 16:16
**hear** 99:13 256:20
**held** 1:13 84:4
  128:4 175:23
  231:9 250:22
  282:1 295:2 296:8
  296:14

**help** 172:5,7
**helping** 199:8
**Hem** 199:19
**Hemstock** 4:19
  90:4 99:9 100:9
  100:19 101:8
  102:11 141:4,23
  144:16,22 145:9
  145:10 157:21
  158:6 159:9 161:9
  162:17 163:20
  164:1 165:15
  166:16 168:15,20
  169:8 176:22
  177:3 178:23
  179:21 180:6
  181:1 186:24
  187:10 191:9,19
  263:14
**Hemstock's** 146:9
  158:16 159:18
  174:23 175:7
**herewith** 298:11
**HEROLD** 3:3
**he'll** 197:1,3
**high** 51:6 85:1
  145:21
**highlight** 47:9
**highlighted** 43:18
  68:2 147:20 165:9
**hired** 18:23 91:5
**historic** 244:10
**historical** 238:13
  239:2 240:19
  241:2 244:20
**Hobson** 6:14 204:3
**hold** 51:22 160:23
  160:24 161:7,18
  162:7 164:14
  174:15,16 179:16
  179:17
**honest** 266:2
**honesty** 265:2,5
**hope** 25:7 94:11
**hostile** 231:12
**hour** 83:14 295:8

**hours** 194:6 196:6
**Howard** 63:14,18
  64:1,15,16,19,21
  65:6 148:10
  269:14 271:2
**how's** 37:8
**HR** 90:20
**hundreds** 96:16
**Hurst** 32:9,19,21
  32:22 34:23 35:20
  36:10 38:7,24
  39:20 40:13,14,24
  41:8,9,10 44:13
  45:14 46:2 47:3,8
  47:20,24 48:1,4
  48:13,23 49:16
  50:18 53:2,21
  55:13,22 56:12
  57:3 68:23 69:13
  88:9
**Hurst's** 36:20 38:2
  38:12 56:13
**Hyde** 21:8 23:6
  25:17 105:9
  134:21 135:5
  200:5,17 218:16
**hygiene** 189:12
**hypothetical** 56:8
  166:4 262:5
  265:13 266:9
**H.A** 61:5

**I**

**IBM** 109:21
**idea** 169:21 170:7
  216:3 217:5
**identified** 134:16
  143:10 176:10
**identifies** 177:2
**identify** 176:18
  183:18 187:19
  204:1 212:6
  225:14,16 226:3
**identity** 42:23
  45:19 102:10
**II's** 7:4

**Ike** 105:8
**imagine** 82:15 90:2
**immediately** 43:24
**impact** 104:21
  122:10 124:21
  131:16,21 244:11
**impede** 197:8
**implement** 172:2
**implementation**
  163:7
**implementing**
  290:24
**implicates** 44:13
  51:8 190:22
  229:18
**implicating** 56:12
**implicitly** 237:15
**important** 39:8
  126:12
**imposed** 102:22
**impressions** 126:2
**improper** 35:11
  123:13 237:7
**inaccurate** 187:11
**inadvertent** 25:8
**include** 14:7,17
  126:23 266:1
  276:5
**included** 79:20
  170:16
**including** 117:7
  212:16 229:16
**incomplete** 262:4
  265:12 266:8
**inconsistent** 55:23
  57:4
**incorporate** 121:5
  121:16
**Independence** 3:4
**independent**
  183:20 205:20
  254:4 282:16
  295:11
**INDEX** 4:1 8:2 9:1
**indicate** 30:12
  76:24 78:1 195:1



205:13
**indicated** 52:1
229:5 263:23
289:14
**indicates** 141:16
147:24 195:7
223:17 226:3
**indicating** 15:10
17:9 18:16 20:3
20:15 25:1 129:6
261:11 274:18
287:1 288:6 293:6
**individuals** 43:4
**industrial** 189:11
**industry's** 156:13
**information** 16:10
16:18,22 18:1
32:7 35:21,23
37:11,18,20 43:5
43:12,18,23 44:17
44:20 45:6,13
46:3,13,18,23
47:2,18,22 48:6
49:17,21 53:1
55:11,23 56:2
57:3 61:15 70:22
80:3,23 81:15,23
93:23 94:5 98:14
98:19 100:11,20
101:7,18 102:17
104:10 111:10,18
113:2 114:22
115:5 121:5,16
123:19,20 124:2
124:20 125:4,11
125:18 126:10,11
126:24 128:11,19
129:14 130:6
131:9 133:6,24
134:9 135:7,15
136:23,24 137:7
148:13 159:7
170:13 190:11,18
191:1 195:2,6
198:17 199:10
200:14 216:4

230:5 236:8,15
237:19 238:4
239:3 244:10,20
245:23 249:21
252:23 253:24
254:3,6 255:1
259:9 260:5,17
261:11,14 264:1
265:6 266:2,18
267:9 268:5,12
269:2 272:7,14
276:14 277:14
280:15 285:11
289:10
**informed** 206:7
274:16 275:21
279:12
**initial** 38:8 44:3
46:8
**initially** 98:24
**injuries** 137:9
**injury** 213:2
259:13 260:4
264:3
**inquiry** 45:11
**inside** 88:21
**inspection** 33:8
48:15
**inspections** 32:10
33:6,19 47:3,11
**instance** 112:8
**institute** 161:1
**institution** 57:24
**instruct** 16:17 17:1
35:5 41:12 42:12
52:2 55:19 56:22
114:10 116:10
117:10 118:2
121:23 125:1
127:16 130:17
132:1 146:22
191:2 207:3 208:4
219:15 228:6
230:11 237:21
238:9 239:15
242:9 245:6 246:5

250:11 252:19
256:12 257:7,17
258:20 259:5
263:7 267:12,21
272:20 276:10
278:3 280:18
286:17 288:9
**instructed** 35:12
36:23 37:5 38:14
57:19 122:13
126:7,19 132:14
207:6 242:23
288:14,16 290:15
**instruction** 35:9
36:15 42:15
118:11 126:17
127:3 132:7
156:20 206:22
246:14 253:4,13
258:11 274:14
275:4 287:7 288:4
288:4,19
**instructions** 104:17
156:21 274:21
289:2
**insurance** 60:6,10
61:17 66:19,24
67:10,19 69:14
103:2 255:13
279:12,13 280:21
281:11 292:13
293:5,16
**insured** 61:19
**insured's** 63:11
**insurer** 280:12
**intellectual** 157:3
**intend** 60:1
**intended** 30:13
**intent** 31:21 171:14
172:11
**interact** 103:22
**interacted** 52:8
**interaction** 84:20
269:21
**interest** 15:22
57:13 219:15

242:10,22 245:4
272:19,24 281:6,9
**interested** 104:19
**intermingled**
247:17
**interpretation**
267:8
**Interrogatories**
5:19 6:7,11 92:18
182:21 186:9
187:3,17 188:2
192:16,19 193:19
195:6,14 198:13
211:24
**Interrogatory**
188:11,13 191:19
194:23 196:10
201:12 211:24
226:1,2
**interrupt** 16:14
190:1,4
**interrupted** 190:23
**interruption**
230:17
**Inter-Department**
5:16
**invade** 46:13
**investigation**
199:10 271:15,22
278:13
**involved** 62:10 65:8
75:3 79:7 86:17
86:20 119:19
138:16 174:16
176:19 177:9,17
193:10,13,23
197:15,23 201:6
212:7,21 213:23
214:9,19 226:4
240:14 260:19
271:14 275:10
289:15 290:23
291:10 292:12
293:4
**involvement** 58:6
**involving** 62:11

102:12 136:14
245:1 261:24
**in-house** 91:24
92:20,21 105:21
150:12
**Ira** 2:17 212:17
**Island** 58:13 155:5
226:7
**issue** 38:18 136:9
153:20 161:6
168:16 169:22
261:19 273:22
276:15 283:10
284:1
**issued** 139:9 162:24
169:8 174:19
**issues** 130:15
229:19 273:8
295:16
**issuing** 162:6
**items** 15:21

────────────
**J**

**J** 74:16,18,20
192:20 195:16
**January** 6:14 7:11
65:19 87:14 204:2
204:6
**jboyle@khmarin...**
2:22
**Jersey** 1:1,16,19
2:4,21 3:4 10:7,12
11:17 12:1,18
**Jesse** 66:8,9 68:16
68:24 276:23
277:14
**Jim** 6:16 204:5
**job** 12:6,12 67:11
277:16
**Joe** 15:20
**JOHN** 2:20
**Johnson** 32:11 33:7
33:9,22 34:24
39:21 40:24 47:4
47:12 48:15 49:18
50:17 51:2 52:6,9



52:12 54:17 55:16
58:7 149:3 209:4
209:4 212:20,21
213:16,16,22,22
214:8,8,16,17
215:24,24 219:4,4
219:10,10 228:12
247:18 249:11,16
250:6 253:15
254:10 255:8,12
255:21 256:24
258:8 262:22
269:18 270:1,5
271:1,9
**join** 78:7 202:20
214:13 285:6,16
285:19
**Joyce** 1:14
**July** 5:10 7:7 60:7
**June** 274:18
**junior** 105:7
**jurisdiction** 298:18

**K**

**Kangas** 61:20 68:3
**keep** 14:23 26:4
30:3,9 80:2 81:23
83:6 112:16
114:19 128:21
171:8
**keeping** 120:22
151:6 205:14
206:6 209:20
**Kelly** 1:14
**Kenneth** 61:10
**kept** 80:8 89:6
106:19 120:19
128:18
**Kevin** 2:19 176:5
181:2 182:3 247:4
**key** 169:12
**khmarino@khm...**
2:22
**Kimberlee** 1:3 10:4
**kind** 44:14 80:3,23
81:22 100:1

104:10 219:9
254:7
**KIRKLAND** 2:8
**knew** 18:7 33:3,3,3
55:8 116:22
186:14 197:22
214:15 222:11,23
237:8 276:24
277:14
**know** 11:12 12:16
15:6 19:23 21:8
26:9,17,24 27:2,8
27:10 29:3,14,18
30:22 33:16,21,24
34:3,19,21,23
40:19 42:5 43:9
45:24 46:1 47:16
47:24 48:2,10,13
49:4,9,11 50:10
50:16,19 51:1,10
51:12,14,15 52:5
52:7,8,11 53:9,11
54:12 57:23 58:1
58:4,24 59:8,13
60:9,11,15,21
61:4 65:4,6,21,24
66:6 67:15,17,23
68:12,20,22 69:3
69:12,17,22 73:19
76:8 77:19,21
79:15 80:4,7
86:16,17,19 87:15
88:7,12 90:1,23
99:19 100:3,4,5,6
101:21 104:16
105:3,7,17 106:1
107:24 108:22,23
109:11 111:8,16
111:22 112:21
115:4 116:22
117:1,18 118:6,14
118:17 119:5
123:8 124:7,16
126:12 129:15
130:20 131:4
133:23 134:6

142:14,20 145:22
146:15,16 148:19
148:21 149:10,15
149:17,21,23
150:5,9,11,17,19
151:2,12,20
155:17 156:5,7
158:20,22 163:6
168:6 172:1
175:12 179:6,9
181:16 182:4
183:15 184:22
185:1 193:24
197:1,11 198:15
198:21 199:4,17
199:24 201:1
203:7,17 206:5
208:23,24 209:14
213:9,22 215:1,20
215:23 216:9,12
220:7 221:16,20
221:23 222:10
234:2 235:12
240:2,13 241:15
241:19 243:8
251:6 253:7,15
254:4,9,17,20
255:6,10,11 256:2
257:20 258:4
262:21 269:12,14
270:9,11,13,14
272:7 275:6,8
276:13,19,22
277:13 279:11,19
279:22 280:9
282:14,19,20
289:18 290:4,12
290:14,18 292:20
292:23 293:5,10
293:12,14,21,23
**knowledge** 32:10
33:9 36:13,20
45:23 46:19 47:8
100:21 107:5
116:23 202:8
205:20 220:16

221:5 227:4
237:11 238:13
239:3,11 240:19
241:3,19 252:12
254:4 270:24
287:20 291:16
298:8
**knowledgeable**
33:6 36:10 47:9
47:10 226:4 270:4
**known** 6:5 102:12
143:3 155:5 186:8
211:14
**knows** 47:3 117:1
258:1 291:22
**Kohn** 218:16

**L**

**L** 62:1 74:14,14
**labeled** 90:4 201:8
**lack** 127:1
**Lacks** 194:13
**LaFevor** 204:5
**laid** 201:10
**large** 243:20
**late** 21:2 77:23
**law** 1:13 3:3 11:22
**laws** 156:23
**lawsuit** 43:6 161:2
183:23 269:8
**lawsuits** 58:6 67:18
**lawyer** 16:6 88:2
99:2 117:6 119:3
119:18 199:7
216:7 234:8
240:10 242:14
**lawyers** 56:14 85:7
86:10,12 148:9
206:15 207:11
229:17 252:15
253:10 256:10
261:10 265:4,20
265:21 286:4
294:16
**lawyer's** 190:20
**lay** 194:19

**layer** 201:18,18
**Lea** 3:9
**learn** 19:17 20:1
44:17 250:5
271:23
**learned** 15:10 17:9
18:10,15,23 19:6
19:22 20:13 44:20
138:11 142:13,15
197:14 214:8
227:14
**learning** 149:2
**leave** 34:5 197:24
**lecture** 122:20,20
**ledger** 109:7
**ledgers** 110:24
**left** 49:20 87:11
120:24 121:1
139:2,10,20
140:10,16 278:11
**legal** 1:23 10:15,17
12:14 13:6 14:4
86:11 88:3 89:16
90:11,14,22 91:24
92:21 98:6,11
109:14 110:1
119:18 130:15
169:3,9,18,23
173:10,23 174:8
174:15,20 175:1
179:2,10 180:5,5
181:16 197:15
216:20 218:13
231:23 248:19
273:8 284:8,20
**length** 234:11
**Leroy** 61:20 68:3
**Les** 87:24 215:17
**Lester** 87:23
**letter** 6:13,15,17,18
7:7,10 60:5 61:4,5
61:8,9 65:19
75:23 76:20 204:3
204:4,6,8 210:20
218:12 224:9
**letters** 94:14 95:2



204:12,20,22
205:12,21
**let's** 28:18 89:13
  122:22 144:5,9
  166:13
**level** 51:6 66:24
  85:1
**Liability** 6:9,11
**License** 1:19
  297:14
**life** 140:15
**lifting** 174:16
**light** 267:19 288:5
**likelihood** 104:23
  105:10
**limitations** 43:2
**limited** 6:5 84:24
**line** 8:5,5,5,5 9:5,9
  9:13 78:9 164:12
  164:13 181:7
  299:5
**lines** 164:12
**lining** 90:24
**Lipton's** 233:14
**list** 32:8 124:16
  298:9
**listed** 35:20 36:9
  38:7 45:14 47:2
  215:17
**literally** 96:15
**litigant** 146:10
  148:15 268:7
**litigants** 134:11
  135:7,23 259:12
  260:3 261:13
  264:2,14 266:19
  293:17
**litigating** 265:6
  293:15
**litigation** 6:9 13:10
  13:14 14:14,18
  15:7 21:22 33:2
  41:17 53:3 54:9
  56:16 57:5 58:13
  62:11 63:7,15,19
  65:9 67:4 73:9,16

74:24 75:3,14
76:22 78:16,19,21
79:8 82:21 84:21
85:6,13 86:12,14
86:15,22 88:5,21
89:1 90:6 91:14
93:6,17,22 94:5
94:15 95:5,15
97:23 98:20
100:12 102:23
103:3,10 104:13
104:20 107:2,9,20
108:7 109:8,16
110:3 112:18
113:4 114:16
115:22 116:6
121:6,18 122:9
123:6,21 124:13
124:21 125:11
126:3,15 127:7
128:13 131:11
132:19 133:7,8
134:3,11 135:8,23
136:13 152:1,23
157:14 160:5,10
160:23,24 161:6
161:18 162:7,10
174:7,14,22 188:4
190:21 193:11,15
193:23 194:1
197:16 198:6
202:16 203:13,20
205:15 206:8
211:15 213:3
218:15,21 234:23
235:6,18 236:9,22
237:4,17 238:3
241:12,23 242:16
242:19 243:11,24
244:12,13,24
245:12 249:1
259:1 260:2
263:24 271:24
272:8,15 273:18
274:7 275:11,24
276:1 278:1 282:9

287:22,24 288:22
288:24 289:23
290:7,24 291:10
291:12 292:12
293:4
**litigations** 53:16
  76:1 88:18 89:5
**little** 26:5 34:6
  41:24 43:20 80:18
  83:14 91:3 143:8
  178:14 196:21
**Littleton** 1:14
**LLC** 1:6 2:11 5:19
  5:21 6:23 7:5 10:5
  299:2
**LLC's** 6:21
**LLP** 2:8,13
**local** 93:16,21
**located** 12:18 29:4
  90:9
**locating** 228:20
**Lockman** 60:5,22
**log** 4:14,15 38:24
  39:3 70:5,17
  77:14 78:11,12
  209:21 210:3,15
  215:8 217:15
  223:10
**Logan** 2:14
**long** 269:7
**longer** 278:22
**look** 25:20,22 144:6
  154:24 155:3
  159:2 182:8 183:3
  187:15 204:10
  215:2 294:20
**looked** 26:19
**looking** 164:11
  210:3 215:5
**looks** 25:24 74:19
  210:4
**loss** 284:1
**lost** 290:20
**lot** 11:9 81:7 233:2
  248:13 281:17
**lots** 162:12

**Lummus** 6:12
**lunch** 175:14,24
**lunchtime** 164:3
  166:21
**lungs** 255:8
**Lybrand** 104:5

——————

**M**

**M** 2:2
**Magna** 1:23 10:15
  10:16
**Magnesia** 6:6
**Magnesium** 62:5
**maintain** 153:23
**maintained** 150:13
**maintaining** 119:12
**making** 95:3,13
  100:9 114:23
  137:6 140:17
  252:2
**man** 172:24 240:10
**management** 66:11
  231:24 233:9
  255:20 256:9,10
  256:22 257:11,21
  275:10,22 277:16
  282:21,22 283:8
  283:23 287:21
  288:21 289:9,13
  289:18,22 290:5
**manager** 171:7
  269:19 271:6
**managing** 78:21
**Maple** 2:3
**March** 4:19 5:18
  141:4 162:16
  167:15 171:10
  176:21 177:9,20
  180:14 181:11
  182:13
**margins** 109:24
**Marino** 2:19,19
  15:12 17:3,14,18
  18:5 19:9 22:4,7
  23:10 24:23 27:21
  31:5,12 32:2 34:4

34:9,12 35:11,17
36:1 37:10 41:24
42:3,14 43:14,22
44:16,24 45:5
46:6,22 47:7 48:9
49:13 51:22 52:17
52:20,22 54:24
56:3,17 57:7
61:22 62:14,19
63:24 64:3,17
65:3,12 71:6,9,17
73:10,15 75:15,22
77:13 78:7 83:13
83:19,23 94:18
116:18,24 118:23
119:2 122:22
123:12 127:21
143:5,19,23 144:5
144:9 152:2,7,10
152:24 163:12,17
163:23 164:4,8,11
164:17 165:4,9,16
165:19 166:2,9,12
166:22 167:3,7,9
170:2 175:15
176:6,8 178:13,24
180:2 181:3 182:4
182:7,16 184:17
184:21 185:8,12
186:18 190:4,7,10
191:14 195:5,10
195:15,21,24
196:4,18,23 200:6
200:19 202:20
203:2 205:7,18
206:3 207:9 208:9
210:5,10,13
213:11 214:13
218:7 222:5,18
226:10 230:1,20
230:24 231:2
234:13 235:19
236:5 237:6
245:15 246:19
251:12,17 252:2
260:8 265:15



281:16,19 295:21
**Marino's** 294:18
**marked** 7:13 9:12
25:14 59:18 65:15
70:3 147:2 177:12
187:14 208:8
**Martin** 225:8 226:5
226:22,24 227:5
229:3
**Marty** 233:13
**material** 131:16,21
147:20 245:24
246:12 272:7,14
**materially** 245:13
245:13
**materials** 25:3
120:11 180:13
212:23 246:24
**math** 140:9
**matter** 10:4 23:4,18
24:10,20 41:9
51:6 63:9,10 74:1
84:24 85:19 94:19
98:15 108:4,7
110:4 134:18
150:20 169:6,13
193:14 226:5
248:7 280:11,23
284:13 285:1,10
286:2 297:8
**matters** 21:21 85:5
119:18 157:3
**mcoren@cprlaw....**
2:5
**mean** 16:14 24:2
29:7 46:23 71:9
75:20 79:2,11
89:16 91:10 96:5
96:8,24 97:19
103:1 113:16
119:21 150:12
153:18 198:10
205:8 236:3
283:15
**means** 297:20
**measures** 283:9,16

283:18
**meet** 101:22 124:12
246:16
**meeting** 85:8
119:22 120:11
232:15 236:4
243:22 244:1
269:23,24
**meetings** 13:21
119:13,13 232:20
232:23 276:23
**member** 244:2
**members** 289:17
**memo** 22:1,8,13,21
23:1,8 24:1 25:17
26:9,21 27:3,11
27:18,20 31:1,8
73:7 134:21
162:16 163:11,15
163:22 167:15,23
168:1,3,8,17,21
169:2,6,22 171:20
174:19,24 175:7
177:10,20 179:7
179:11 180:6,14
181:11 182:13
200:5,15,16 211:8
216:20
**memorandum** 5:16
73:23 108:5
145:12 176:21
**memory** 62:10
144:15 182:11
227:4
**Menlo** 179:4
**mental** 126:2
**mention** 185:22
191:8,18,22 192:7
**mentioned** 38:24
138:9 243:21
**mergers** 244:5
**mesothelioma**
155:5
**met** 269:22
**Michael** 2:3 81:12
192:20 195:16

201:5 226:21
**microscope** 146:1
147:16
**mid** 58:17,17
**middle** 189:2 190:1
190:5
**Mike** 112:8 193:10
205:2 233:9
282:18
**million** 140:11,17
**mine** 28:15,15
32:11 33:7,9,22
34:24 39:21 41:1
47:4,11 48:15
49:19 50:18 51:2
52:6,9,13 54:18
55:16 58:7 142:1
142:8 149:3
166:21 214:16
228:12 247:18
249:11,17 250:6
253:16 254:10
255:8,12,21
256:24 258:8
262:22 270:5
271:1,10
**Mineral** 13:4
**minerals** 5:16
12:23 13:7 60:19
156:14 159:3
**minimizing** 283:24
**minus** 25:18
**minute** 120:13,16
120:18 121:1
**minutes** 119:12,13
119:21,22 120:5
121:5,15 122:3,5
253:21 258:12
281:20
**mischaracterizes**
137:17 170:4
285:17
**misleading** 200:20
202:6
**misstates** 145:6
148:3 163:4 166:5

170:8 175:7
185:10 193:7
197:18 199:22
200:7,9,22 202:18
204:22 207:18
214:12 222:3,6,17
222:19 229:11
245:3 251:11
259:20 260:12
264:7 265:10
266:6 269:10
**moment** 16:3 72:14
127:22 144:6,10
**Monday** 1:9 298:6
**money** 113:19,22
**month** 239:23
**monthly** 108:2
110:7
**Moore** 3:9 10:14
**morning** 11:5,7
177:10
**mother** 230:19
231:3
**move** 38:17

**N**

**name** 30:19,20
100:4 103:21
195:12 205:1
233:16,18 234:3,5
240:11 244:2
**named** 172:24
205:5,8 240:10
**names** 61:20 68:3
70:21 104:5 205:1
233:22 234:1,10
**Nancy** 7:10 65:23
**national** 91:6,13
213:2
**nature** 21:18 236:3
**Neave** 157:1
**necessarily** 156:15
273:15
**need** 30:9,16 37:4
38:20 122:19,20
127:10,15 136:21

164:5 172:15
207:1 252:18
255:1 267:11,21
274:2 288:6
**needed** 54:12 82:4
87:1,4 98:3
119:19
**negatively** 124:22
**negotiation** 234:12
**negotiations** 240:5
**never** 49:6 55:8
111:24,24 135:24
151:11 190:16
201:9,23 268:20
270:1,1
**nevertheless**
145:19
**new** 1:1,16,19 2:4
2:21 3:4 10:7,12
11:16 12:1,18
155:12 156:1
159:5 161:4 172:3
172:6 188:3,4
198:5 202:15
203:12,19
**Newell** 6:19 204:9
**NJ** 297:14
**non-lawyers**
276:14
**normal** 69:5,20
**Notary** 1:20 298:21
**note** 63:10 71:17
**noted** 10:17 297:6
**notes** 50:13 128:22
297:7
**notice** 67:4
**notified** 44:12
**November** 6:19
204:8
**Now's** 250:17
**number** 21:21
60:18 71:16 85:5
109:20 145:18
195:12 223:10
233:21
**numbered** 71:7,10



numbers 70:24
72:18 143:9
N.W 2:9

**O**

oath 19:7,18 20:2
20:14 118:8 187:1
241:4 243:5
246:10
object 17:2 19:9
23:8 28:1 34:10
44:5 101:12 102:2
128:23 186:19
220:2 221:13
240:21 241:6
objected 197:2,2
281:7
objection 13:11
14:19 15:12,17
17:20 18:3,5,18
19:1 20:5,17 21:3
22:2,14,22 23:11
26:11,22 27:6,21
29:22 30:4 31:3,5
31:12,14,17 34:1
34:2 35:2 36:14
39:12 41:2,18
42:6,9 44:15
45:16 46:4,20
48:7,9,17,24 49:7
49:22 50:21 51:3
51:20 52:15 53:4
53:12,23 54:5,19
54:21,22 55:17
56:3,5 58:8 59:4
59:11 60:12 62:17
63:21,23 65:1,3
66:15 67:6,13,20
68:17 69:1,7,15
73:20 74:6 75:6
75:15,17,18 76:6
77:2,11 78:5,22
79:12 80:5,15,24
81:18 82:1,5,12
83:1,9 84:14,22
85:16 86:4 87:6

88:10 89:2,21,22
90:16 91:15 92:2
92:12,23 93:7,24
94:16 95:6 96:10
97:3,9,14,24 98:8
98:22 99:10
100:13,22 102:14
103:4,11 104:14
105:14,16,22
106:6,14,22
107:10,15,21
108:15 109:2,9,17
110:12 111:2,11
111:19 112:19
113:5 114:2,17
115:1,9,10,16
116:1,7,16 117:21
118:21 120:7
121:7,20 123:22
124:5,23 125:15
126:7 127:8
128:14,24 129:8
129:17 130:23
131:12,23 132:20
133:9 134:4 135:1
135:9 136:2,15
137:10,14 138:4
138:18 139:11
142:17,18,24
144:17 145:5
146:13,19 147:10
148:2,17 149:4,13
149:18 150:15,23
151:1,8,10,17,19
152:14 153:3,5,13
154:2,4,17 155:18
156:3 157:10,22
158:18,23 159:10
159:20 160:3,7,16
160:17 161:11,19
161:23 163:3,23
167:20 168:4,10
168:12 169:10,24
171:21 172:20
173:15,24 174:9
174:11 175:3,5

177:2,21 180:7,15
180:21 183:9
184:11,12 185:6
186:2,11,16 187:4
188:15 189:2,15
191:12 192:2,3
193:2,6,20 194:3
194:9 195:3
196:14,17 197:17
198:7,19 199:13
199:21 200:6,8,19
200:21 202:17
204:16,21 205:16
206:9,18 207:16
208:1 209:9
211:16 213:11,18
214:1,11,14 216:1
217:8 218:22
219:5,13 220:10
221:3,7,14 222:2
222:15,18 223:4
224:18 226:19
227:6,20 228:13
228:22 229:10
230:8 231:20
232:6,17,24
234:13,14 235:1,8
235:19 236:2,10
236:18 237:12
238:6,17 239:12
239:20 240:6
241:13 242:1,6
243:6,13 244:14
245:2,15,17 246:2
246:13 247:24
248:9 249:18
251:10 253:3,12
253:18 254:12
255:14,23 257:1
257:14 259:2,18
260:8,10,20,21
261:15,16 262:1,2
262:16,18,24
263:16 264:5,6,16
265:9 266:5,20,21
268:8,9,23 269:9

270:6,17 271:17
272:2,9,17 274:14
275:13 276:7,17
277:2,17 278:16
278:23 279:8,16
282:11,24 283:12
284:3 285:4,7,14
286:6,14 288:1
290:9 291:2,3,23
292:16 293:8,19
294:5,6,12,13
objectionable
123:16
objections 6:4,21
55:5 69:21 78:8
94:7 95:16 101:3
101:19 107:3
112:6 118:10
126:16 127:2
132:6 134:12
135:17 150:2,8
155:11 158:7
178:3,7,11,19
184:16 192:10
199:2 202:21
203:6,14 212:15
236:23 239:6
242:20 243:18
249:3,24 250:7
252:7 258:10
268:16 271:3
274:20 275:3
285:20 287:6
289:1
obligation 56:1
199:9 234:22
260:16
obligations 261:8
observe 64:4
observed 146:1
obtained 29:11
53:2 55:13 170:23
obviates 293:1
Obviously 197:21
occasion 112:1
occasional 112:23

occur 107:20
occurred 236:15
243:11
occurs 247:16
offer 139:22 190:24
191:3
office 30:10 90:18
171:6,9 173:7
officer 14:10
112:10 195:13
officers 125:21
183:18 188:19
189:7
offices 1:13 89:15
89:16
official 163:7
off-site 89:10 90:12
oh 26:6 32:17,19
60:2 68:9 70:13
88:16 134:2,23
141:1 170:10
214:23 226:13
233:12 237:6
294:18
okay 12:3,11,21
13:9,17,23 14:3,7
14:17,23 15:2,6
18:1,9,14,22
19:24 21:8,23
22:12,20 23:13,20
23:23 24:5 25:21
26:2 27:2,10,16
30:2,22 31:24
32:20 33:5,11,17
34:19 35:15 40:16
40:20 41:22 42:20
44:11 45:4,13
46:1 49:4,16
50:11,15 51:1
52:22 53:20 54:3
58:1,5,15 59:1,8
59:14,22 60:17,21
60:24 61:4,7
62:23 63:5 65:10
66:2,21 68:6,12
68:22 69:23 70:21



72:4,24 74:11,23
76:20 77:18,22,23
77:24 78:18 79:18
80:11,21 81:5,14
81:22 82:9,17,23
83:6,12 84:18
85:12,22 86:9
87:10,23 88:7,14
88:17,20 90:8,14
91:2,9 93:4,15,19
93:21 94:10 95:1
95:12 96:19 97:6
98:5,17 99:6,19
100:2,8,17 101:7
102:19 103:8
105:10 106:3,11
106:19 107:7,19
108:12,20,23
111:7,15,23
112:14 113:1,24
115:13,21 119:20
120:21 121:4,15
122:15 123:1
124:2,19 125:13
127:18 128:11,21
132:16 133:14
134:24 138:9,16
139:15,19 140:2
140:16,20 141:15
142:12 143:4
144:5,12 145:1
146:5 147:14,21
148:8,13,24 149:8
150:5,11,19 151:4
151:14 154:12,24
155:23 157:6
162:11,11,15,20
162:24 163:20
164:10,18,23
165:13 166:1,12
166:18,20 167:8
167:13,17 168:1
169:1,5 170:12,19
171:8,13,17
172:10 173:3,19
174:4 175:10,13

176:8 178:2,14,15
178:22 180:11
181:1,5 182:6,10
182:15 183:3,7,16
185:20 187:6,13
192:12 194:11,11
194:15,17 195:10
197:24 199:17
202:1,4,10,24
203:9 204:11,12
204:19 205:12
206:14 208:18
209:18 211:4,20
213:7 214:22
215:23 216:5,9,12
216:19,24 217:12
218:10 219:2,9,17
220:7,14,18
221:23 222:11
223:1,8 225:1,5
225:10,24 226:18
227:10 228:18
229:2 230:2,14
231:15,18 232:3
232:10 233:15
234:1,11,17 235:5
235:24 236:14
238:22 239:1,10
240:2,17 241:21
243:2,10 245:9
246:23 247:2,14
248:5,17,23
249:10 250:4,13
251:4,20 252:22
254:9 255:18
256:19,22 258:6
259:24 260:15
261:9,21 262:21
263:21 264:21
265:3 266:13
267:10 268:1,14
269:5,20 271:8,12
271:21 272:5
273:20 274:12
275:9 276:4,13,22
277:11,13 278:7

278:20 280:2
281:15 282:20
283:18 284:7,22
285:10,24 286:10
286:24 288:21
289:4 290:16,22
291:9 293:1 294:9
294:19,21 295:14
295:23
**old** 159:2
**older** 90:12
**once** 79:14 98:12
115:18 135:4
**ones** 12:16
**one's** 64:5
**ongoing** 30:9 156:8
**open** 124:17
**operation** 159:23
170:17
**operations** 5:17
159:14 162:21
163:16 170:16
172:13 269:19
271:1
**opinion** 125:10
126:3 129:20
130:2 190:15,20
190:24 273:16
**opinions** 191:3
**opportunity** 34:10
184:18
**opposed** 190:24
254:3
**oral** 115:8,11
**order** 24:12,22 25:4
25:5 97:21 101:11
124:3 138:2
198:18 246:17
**ordinary** 96:7,9
**ore** 142:1,7
**organization**
112:11
**original** 28:24 29:4
29:17,17 70:21
150:6
**originally** 24:2

40:22
**outside** 133:17
233:10 248:19
**outsourced** 138:1
263:23
**overall** 54:11 93:10
247:18
**overseeing** 78:21
**overview** 113:13,15
**Owens-Corning**
6:7
**owned** 139:20
253:16 254:10
255:21 258:8
262:22
**ownership** 139:16
**O'Brien** 6:19
**o'clock** 128:1
296:10
**O'Shaughnessy**
4:15 215:14,15,21
217:2,6

--- **P** ---

**P** 25:13
**page** 4:3,10 5:3 6:3
7:3 8:5,5,5,5 9:5,9
9:13 28:12,16,19
28:20 32:16 42:21
42:22 45:15 59:18
59:23 60:4 62:24
63:2 68:2 70:7,13
70:13,17,17,24
71:3,5 139:15
141:15,19 143:8
143:10,16 144:14
145:2,11 147:14
147:15,23 148:9
164:12 165:3
176:15 178:24
179:24 181:2
183:4,17 192:13
195:6,9 210:9
215:11 218:8
226:19 247:15
299:5

**pages** 71:7 143:11
182:2 294:17
298:7
**Pagonis** 66:8,9
68:16,24 276:23
277:14,22 278:5
**paper** 78:14 101:23
109:23 129:2
241:17
**papers** 138:15
**paragraph** 43:24
145:11 170:13
220:19
**paralegal** 81:7
88:20
**Park** 1:14 179:4
**part** 25:9 50:13
54:10,14 67:10
94:22 95:8 126:13
173:7,10 234:21
244:23 272:15
275:1
**participants** 176:18
212:7
**particular** 91:23
106:13
**partner** 21:12
233:17
**patent** 33:2
**Patrick** 6:18 204:8
**pattern** 96:21
**Paulette** 66:2
**pay** 110:5
**payable** 108:18
109:7,13 110:22
110:23
**payment** 108:11,13
229:8
**penalty** 220:16
**pendency** 258:6
263:12
**pending** 74:5 75:12
77:1 78:2 84:13
142:16 154:1
160:2,6,10,12
174:6,14,18,23



227:16 242:15
257:11,22 261:24
262:15 273:8,11
273:18 274:7
**Pennsylvania** 2:15
11:22 182:24
**people** 50:7 53:14
53:19,21 90:20
98:13 105:7
109:20 137:8
168:17 192:15
233:3,6,21,24
243:23 265:5
275:18
**PEPPER** 2:13
**perforations**
109:23
**performed** 147:16
**period** 16:13 61:12
105:6 113:18
239:23 268:20
271:5
**perjury** 220:16
**permanent** 110:9
110:17 120:19
151:6
**permit** 158:15
159:6,17
**permitted** 97:6
160:14 194:3
**Perry** 233:9
**person** 15:19 45:19
48:5 49:20 63:14
64:6 80:22 99:3
101:22 103:21
104:6 105:3 106:3
108:20 270:22
**personal** 45:23
46:17,18 50:12
130:14 202:8
213:2 220:16
259:13 260:4
**personally** 123:19
**personnel** 162:17
226:3
**persons** 176:18

212:6
**pertaining** 170:15
**pertinent** 133:7
**Peter** 2:8,16 5:4
6:17 50:10 65:7
81:3 85:8 100:2
105:5 147:3,8,15
149:20 191:23
205:2 212:17
215:17
**peter.farrell@ki...**
2:10
**Phil** 240:11
**Philadelphia** 2:15
**physical** 149:10
**physically** 50:17
82:11 88:24 90:9
90:15 108:13
120:1 149:9 179:6
179:9 181:12
**pick** 171:10
**piece** 78:14
**Pita** 6:5
**place** 24:24 30:17
270:10
**placed** 29:20
170:22
**Placitella** 2:2,2 4:5
10:13 11:4,13
13:16 14:22 15:13
17:7,24 18:8,21
19:4,13 20:9,19
21:5 22:6,9,11,19
23:13,19 24:5,8
25:12 26:8,13
27:1,9,24 28:3,9
28:10 30:1,18
31:7,15,24 32:4
34:18,22 35:7,14
35:19 36:7,17
37:1,7,16 38:19
38:22 39:3,6,13
39:17,24 40:4,12
41:15,21 42:4,7
42:19 43:21 44:10
44:22 45:4,12,20

45:21 46:7,16
47:1,23 48:12,21
49:3,15,24 50:5
50:24 51:11 52:4
52:19,24 53:10,17
54:2,13 55:3,7,21
56:9 57:1,16,21
57:22 58:14 59:7
59:14,16 60:2,3
60:16 61:23 62:16
62:22 63:4 64:2
64:14,23 65:10,13
65:17,18 66:20
67:8,16,24 68:21
69:4,11,18,23
70:1,10,12,19
71:8,11,14,19,24
72:7,16 73:1,12
73:17 74:2,10,18
74:22 75:10 76:2
76:9,13,16 77:6
77:15 78:17 79:9
79:17 80:10,20
81:5,11,21 82:2,8
82:16 83:5,12,17
83:21 84:10,17
85:11,18 86:8
87:9 88:13 89:12
90:7 91:1,21 92:8
92:16 93:3,14
94:3,10,12,20,24
95:11 96:3,12
97:5,11,17 98:4
98:16 99:5,15
100:16 101:1,6,16
102:8,18 103:7,20
105:1,18,24
106:10,18,24
107:6,13,15,18,23
108:19 109:5,12
110:8,20 111:6,14
111:23 112:2,13
112:24 113:14
114:12,21 115:6
115:12,20 116:4
116:12,21 117:2

117:12,16 118:5
118:16 119:1,4,6
120:17 121:14
122:1,15,19 123:1
123:8,11,17 124:1
124:9 125:3,13,16
125:24 126:9,20
127:4,13,18,23
128:10,17 129:3
129:13,21 130:3
130:10,19 131:7
131:18 132:3,8,15
132:24 133:14,20
134:7,19 135:3,13
135:20 136:6
137:4,12,24 138:8
138:21 139:14
140:8,23 141:2,9
141:14 142:21
143:4,13,21,24
144:3,7,13,24
145:7 146:5,7,17
146:24 147:13
148:7,20 149:7,16
149:22 150:4,10
150:18 151:3,13
151:21 152:6,9,13
152:19 153:2,9,17
154:9,21,23
155:20 157:5,16
158:2,13,21 159:4
159:15,24 160:4
160:11,20 161:16
161:20 162:4,11
162:14 163:9,14
163:19 164:2,10
164:14,18,21,23
165:6,10,12,17,23
166:7,10,14 167:1
167:5,8,12,22
168:7,18 169:20
170:6,11 172:9
173:2,18 174:3,17
175:10,13,17
176:4,7 178:1,5,9
178:17,21 179:20

179:23 180:1,10
180:18,24 181:4,8
181:9,23 182:6,9
182:18 183:12
184:14,20,23
185:18,21 186:6
186:13,22 187:8
187:12,18,22,24
188:17,22 189:3,5
189:17,21,24
191:6,17 192:6,11
193:4,16 194:2,7
194:11,14,21
195:9,11,16,22
196:2,16,22
197:10 198:1,14
198:22 199:5,16
200:1,10,24 202:1
202:4,10,12,24
203:3,8,21,23
204:18 205:3,11
206:1,4,13,23
207:10,22 208:6
208:10,18,19
209:17,23,24
210:7,12,14
211:19 212:3,5
213:13,21 214:6
214:21 215:6,9
216:5,8 217:11,16
217:17,21,22
218:2,3,9,11
219:1,8,17,19
220:6,13 221:4,9
221:12,17,22
222:8,20 223:7
225:6,15,18,23
226:11,14,17
227:10,13 228:8
228:17 229:1,14
229:21 230:2,4,13
230:18,22 231:1,5
231:10 232:2,10
232:13,21 233:5
234:17,19 235:4
235:14,21 236:7



236:13,20 237:1
237:10 238:1,11
238:22,24 239:9
239:17 240:1,16
240:24 241:9,20
242:3,11 243:1,9
243:15 244:9,18
245:8,21 246:7,15
247:2,5 248:4,16
249:9,22 250:3,16
251:3,15,19 252:4
252:21 253:6,14
254:8,16 255:4,17
256:1,15 257:9,19
258:3,5,13,22
259:7,21 260:14
261:2,20 262:8,10
262:20 263:10,20
264:11,20 265:17
266:12 267:4,10
267:14,24 268:13
268:18 269:4,13
270:8,21 271:7,20
272:4,12,22
273:20 274:12,15
274:22 275:5,17
275:20 276:3,12
276:21 277:7
278:7,9,19 279:4
279:10 280:2,19
281:8,15,18 282:6
282:13 283:5,17
284:6,17 285:9,21
286:9,19 287:8,16
287:19 288:11,17
289:4,8 290:3,17
291:6,17,21 292:1
292:7,10,24
293:13,24 294:8
294:16 295:7,14
295:23 296:4
**Placitella's** 34:6
**plaintiffs** 1:4 2:6
5:20 6:10,22
94:14 212:11
286:4

**plaintiff's** 61:20
227:18 248:24
267:20
**played** 91:11
**player** 234:4
**please** 10:19 17:4
19:12 27:23 42:1
43:14 46:24 51:23
55:2 61:16 63:6
72:14,15 95:18
117:13 143:11
146:6 153:1,10
154:22 164:17
166:9 171:8
172:10 178:13
185:12,15 186:21
187:21 194:8,8
195:8 206:3
208:17 210:6
212:2 217:13
223:9 227:23
236:6 259:15
266:22 267:16
287:11 292:4
**point** 13:14 14:11
19:24 29:20 55:3
80:12 86:13 87:11
89:8 92:6,9,17
104:7 105:3
148:15 149:1
154:10 187:23
201:9,17 219:3
228:19 230:14
231:11 247:23
249:23 250:4,15
259:8,24 271:9
278:10
**points** 213:1
**policies** 156:15,16
**policy** 110:16 111:1
124:17 150:20
151:22 152:3,11
152:18 154:13,15
155:8,13,17 156:1
156:10,22 157:8
157:18 158:4,10

158:15 159:2,5
161:5,21 162:3
163:1,8,13 169:7
169:13,15 172:3,6
173:21 266:15,18
268:3 269:6,11
279:3
**Pooley** 220:23
**position** 15:20
43:11 55:14 57:4
93:22 94:4 99:24
122:2 125:4,18
195:13 280:20
281:9
**positions** 55:24
119:9
**possess** 220:20
**possession** 18:2
101:8 129:6
132:18 161:8
182:11 201:16
221:19 222:13,24
236:16 260:6
264:15
**possible** 169:16
193:12
**possibly** 105:8
**potential** 115:23
121:18
**practical** 98:15
**practice** 169:7,13
248:7
**practices** 130:4
**Pratter** 3:8
**preceded** 15:20
**preceding** 43:24
**predecessor** 17:23
**Prefix** 65:16
**prep** 246:17
**preparation** 216:21
246:24
**prepared** 27:11
91:23 92:18
156:21 228:10
**presence** 142:2
**present** 3:7 30:24

103:18 143:3
145:19 183:18
201:5,7 232:22
243:12 244:1
**presently** 43:3
**preserve** 113:9
**preserved** 172:12
**preserving** 85:1
**president** 12:22
13:3,24
**pretty** 58:16 140:13
277:4 285:12
**prevent** 162:8
**previous** 22:17
23:17 25:14,14
34:14 87:17
156:12 188:13
193:15,15
**previously** 26:1
**pre-marked** 70:3
**price** 140:1,7
**Pricewaterhouse**
104:4
**primary** 61:11
**principal** 240:9
**printouts** 109:22
**prior** 7:13 24:21
59:3 120:11
154:14 157:21
158:14 162:24
237:4 274:17
286:5,12 287:2
**priv** 72:15,18
217:15
**privilege** 4:13,15
16:12,19 22:23
23:9 25:19 34:15
35:3 36:4,16
37:24,24 38:1,9
38:10,11,24 39:3
39:11,19 40:7
41:14 42:10 44:8
44:14 45:8,10
46:14 51:8,19
52:2 55:18 56:24
57:11 70:5 71:16

72:8 74:12 77:14
78:10,12 114:3
116:9 117:11
118:4 121:22
122:11 124:24
127:17 132:7
146:21 191:5
207:2 208:3 210:2
215:8 219:14,15
223:10 228:3
229:18 230:10
238:7 239:14
242:7,10,21,22
245:5 246:3
250:10 252:20
256:14,17 257:15
259:4 263:9
267:23 272:19
273:4,22 276:8
278:4 280:22
281:5,6,10 286:16
288:4 289:6 290:1
295:15
**privileged** 4:18
36:18 37:2,19
43:13 47:22 79:20
122:3 125:7,12,22
126:6 190:10
237:18 245:4
253:24 254:2,7,24
267:8 272:18
280:14 289:9,11
**privileges** 44:2
46:11 85:2 113:9
280:17
**probably** 15:15
30:10 50:7,10
58:17 81:3,9
82:20 83:3 88:1
92:4 96:1 98:15
99:4 101:5,22
103:19 110:2,4,17
149:21 172:24
173:6 197:22
269:22 270:11
**probe** 47:21



**Probing** 46:11
**problem** 34:17
**procedure** 43:1
  46:9 150:20
**proceedings** 297:5
**processed** 141:24
  142:7
**product** 16:13,19
  35:4 36:16 42:11
  44:8 55:19 75:5
  113:9 125:12
  126:5 131:24
  146:20 190:12,22
  191:5 208:2
  230:10 238:8
  239:14 242:8,12
  242:21 245:4
  246:4 257:16
  259:3 267:9,23
  272:19 273:2,5,16
  276:9 280:14
  281:6 286:16
  289:7 290:1
**Production** 6:8 9:4
**products** 6:8
  256:23
**professional** 1:18
  264:13 265:24
**prognosis** 104:24
**program** 255:6
**promise** 11:8
**proper** 194:19
**property** 157:3
**proposal** 232:1
**Propounded** 5:20
**protected** 24:11
  191:5 280:22
  281:5
**protection** 157:2
**protections** 44:3
**provide** 22:5
  100:11 104:11
  106:11 109:13
  123:18,20 124:19
  126:10,21 128:12
  145:9 198:18

236:8 265:5 284:7
**provided** 49:17
  52:13 53:21 55:22
  57:3 125:5,19
  128:19 129:15
  196:11,12 220:21
  231:23 241:3
  276:14 284:19,24
**providing** 195:8
  199:12 216:20
**Public** 1:20 298:21
**pull** 80:18 164:16
  166:21 167:10,11
**pulling** 24:8 198:11
**pulmonary** 189:10
**purchased** 214:16
**purpose** 40:23
  47:16 114:13,14
  161:18 162:6
**purposes** 125:6
  270:15
**pursuant** 42:23
  46:8 171:20
  173:21 180:13
  181:11 182:12
**purview** 66:13
**put** 25:13 29:13
  30:17 32:18 55:1
  62:24 76:12 90:3
  112:10 120:13,16
  136:20 145:2
  182:19 210:1
  225:20
**P-1** 24:6 133:24
  134:10,17 200:12
  200:15 201:8
  295:9
**P-15** 29:5
**P-214** 59:18
**P.A** 3:3
**P.C** 2:2,19
**p.m** 175:20 176:3
  250:19 251:2
  281:22 282:5
  294:23 295:6
  296:10

---

**Q**

**quantities** 144:23
  145:4
**question** 9:12 17:2
  17:4,8,11,13,15
  19:10,11,12,14
  20:8,11 22:4 23:2
  27:22 31:6,13
  34:7 35:6,8,12,13
  35:16,18 36:2,8
  36:22 37:5,15
  38:15,16,17 39:4
  39:16,18 40:3,9
  40:11 41:5,13
  42:13 43:15 44:11
  44:23 45:1,3,5
  49:10 52:3 55:2
  55:20 56:4,11,20
  56:23 57:8,14,17
  57:19 62:20 75:16
  95:17,22 101:13
  114:6,11 116:11
  117:4,13 118:3,13
  118:14,23 121:24
  122:6,14,24 125:2
  126:1,8,18,22
  127:12,17 130:13
  130:18 131:5
  132:2,14 133:2
  135:14 141:22
  145:10 146:23
  152:8,12 153:8
  155:21 156:12
  159:17 162:10
  163:24 164:12
  165:24 168:2
  174:21 179:15
  181:6,14,17
  185:15,17 186:20
  188:21 189:1,4,16
  189:19,22,22
  190:3 191:7,9
  192:14 196:4,24
  197:13 200:7,11
  201:22 206:2,23

207:6 208:5
209:15 213:12
219:16 222:5
225:11,21 227:23
228:7 229:18
230:12 236:6
237:7,15,20,22
238:10 239:16
242:10,24 244:17
245:7,16 246:6
248:13 250:9
251:16 252:5
253:5,22,23 254:2
254:18 255:3
256:4,13,17,20
257:8,18 258:2,12
258:14,16 259:6
259:15 260:9
263:2,8 266:22
267:5,7,13,15,21
267:22 272:21
273:15 275:7
276:11 277:19
279:20 280:3,9,16
281:12 286:18,20
287:9,11 288:8,12
288:19 289:3,16
290:2,2,12,14,19
290:21 292:4,18
292:21 293:11,22
**questioning** 78:9
**questions** 15:8
  16:17 42:15 70:6
  86:10 102:20,20
  103:16 104:18
  108:10 130:9
  141:11 194:20
  202:6 213:7 252:8
  252:13,19 274:1
  293:2 295:17,19
  295:22,24 296:2
**quoted** 32:14

---

**R**

**R** 158:15
**ran** 33:21 269:18

**raw** 142:1,7
**Ray** 3:9 10:14
**reach** 245:22
**read** 17:6 68:20
  72:23 75:21 82:11
  95:20 117:12,15
  143:17 144:8
  145:8 146:3 153:9
  153:12 165:3,5,7
  165:8 166:8 167:2
  167:6 181:24
  191:15 205:21
  213:4 228:1
  259:17 266:24
  267:15,18 280:3,6
  287:13 292:6
  298:4
**reading** 64:10
  78:11 144:14
  179:19
**ready** 176:4,5,6
**really** 33:15 39:14
  84:16 138:20
**Realty** 6:5
**reason** 31:20 81:16
  87:15 106:12
  196:19 257:12,21
**reasonable** 199:10
**reasons** 106:20
  114:1 130:20
**recall** 12:15 15:22
  18:13,20 19:3
  20:24 21:23 23:20
  27:14,15 29:19
  33:12 41:23 42:2
  50:14 55:10 58:6
  59:1,6 60:24
  74:20 88:15 111:5
  135:11 136:5,7,8
  138:13 139:1,23
  139:24 140:7,9
  147:6,7 153:19
  158:1,9 163:18
  166:17 173:19
  177:24 178:16
  183:15 193:9,22



203:18 207:21
214:20 223:1
225:7 228:16,18
232:11 233:19
240:15 244:3,4,8
248:3 260:24
261:3,6,19 264:9
264:18
**receive** 67:4 79:4
81:15 85:13,22
86:1 108:1
**received** 23:24 27:3
31:1 63:7 82:9
109:19 135:5
140:10,14 150:21
263:13
**receiving** 84:18
223:1
**recess** 84:5 128:5
175:24 250:23
282:2 295:3
**recipients** 215:16
**recognize** 238:2
**recollection** 22:20
23:14,15 27:19
30:24 58:12 62:15
64:5,9,13 75:4,9
84:12 88:6 99:8
99:13 100:8 102:6
127:7 129:4,11
132:4,11 144:20
149:1 155:24
157:6 163:22
167:14,18 169:5
171:18,24 173:12
177:8 180:4,12
201:5,7 209:5
211:13 218:19
227:12 254:6
282:16,19 295:12
298:9
**recommend** 156:17
**recommendation**
106:12
**recommendations**
98:18

**record** 10:2,18 17:6
23:11 24:24 42:21
47:15 64:11 81:24
83:7 84:2,4,9
95:20 117:15
123:14 127:22
128:2,4,9,18
153:12 175:21,23
176:3 187:19
193:7 199:23
200:7,9,22 201:1
201:3,3 202:3,7
202:18 203:24
207:19 214:12
222:6,17,19 228:1
229:11 231:2,7,9
245:3 250:20,22
251:2,11 259:17
259:20 260:12
264:7 265:10
266:6,24 267:18
280:6 281:23
282:1,5 285:18
287:13 292:6
294:24 295:2,6
296:6,8,12,14
**records** 26:19,20
27:4,5 50:13
106:19 110:10,22
120:19
**Red** 1:15 2:4 10:12
**reduced** 49:6
**refer** 28:11 30:9
63:6 215:10
**reference** 62:4
**referred** 64:22
**referring** 35:24
64:18,21 65:5
110:10 145:23
225:22 289:17
**refers** 78:15
**reflecting** 73:2
**reframe** 185:19
**refresh** 62:9 64:12
144:15,20 163:22
177:7 182:10

211:12 227:3,11
**refreshes** 62:15
64:9
**refreshing** 64:5
**refusal** 267:20
**regard** 222:7
**regarding** 36:21
38:4 54:11 73:8
73:15 75:24 76:22
125:10 210:22
216:20 218:14
**Registered** 1:18
**regular** 103:15
**regulations** 156:24
**Reindel** 21:13
63:12
**relate** 14:14 74:5
**related** 5:13 14:15
22:1 33:22 40:24
48:14 58:7 59:3
59:10 67:3,19
75:13 84:20 86:21
89:7 94:15 103:3
103:10 104:12
117:19 121:6
124:20 125:11
126:3,14 131:10
132:18 157:20
159:7,13,19 160:6
161:7 174:4
213:23 224:17
237:3 241:22
243:12 244:24
247:8 262:12
272:7,14 277:15
278:15 279:15
284:1
**relates** 102:23
107:1 178:22
**relating** 73:8
189:12 238:4
262:13 282:22
294:3,11
**relationship** 37:13
37:14 60:10 61:1
**relatively** 145:21

**relevant** 63:9
100:20 136:11
162:9
**relied** 137:19
**relying** 254:24
**remember** 21:1
22:12 23:23 33:13
58:20 87:10,13,15
104:6 108:21
128:16 140:19
154:16 180:20,23
197:21 213:20
233:7,22 234:1,2
234:9
**remind** 24:9,20
25:10
**Remundo** 7:11
65:23
**rendered** 5:13
247:9
**repeat** 259:14
287:10
**repeatedly** 259:1
**rephrase** 133:4
174:21 229:19
236:5 283:20
**replacement** 71:22
**report** 49:5 52:13
73:8,18,22 79:6
79:11,16,19
114:24 115:24
116:6 139:4,9
168:16 220:23
227:17 229:4
247:6,15,23 248:5
248:15
**reporter** 1:18,19
10:16,19 17:5
95:19 117:14
153:11 227:24
259:16 266:23
267:17 280:5
287:12 292:5
297:22
**reporting** 102:21
113:2 114:14

119:12 126:13
**reports** 15:10 17:9
48:14 53:21 79:4
81:15 82:10,21
84:19 110:10
115:8,15
**repository** 181:15
**represent** 70:4
75:11 241:12
**representation**
77:18 95:3,9
166:4 185:2
207:14,24 222:7
232:4 251:8,24
252:3
**representations**
95:13
**representative**
27:17 28:21
291:20
**representatives**
183:19
**represented** 21:20
25:16 27:16 85:4
**representing**
251:13 287:3
**represents** 74:13
**reproduction**
297:19
**request** 6:8,22 9:4
10:12 44:6 63:8
81:3 103:18 112:5
155:3,3 248:18
**requested** 17:6
27:11,13 95:20
117:15 153:12
228:1 259:17
265:8 266:24
267:18,21 280:6
287:13 292:6
**requesting** 204:13
261:14
**requests** 101:11
137:20 190:19,21
**require** 124:8
273:11



**required** 98:14,19
  104:11 105:12
  110:18 112:16,22
  124:3 129:15
  130:1,6 131:9
  138:2 172:4 229:4
  229:7 264:13
  271:23 272:6
**requirements**
  102:21 126:13
**research** 97:21
  99:4,17,24 142:6
  155:7 157:19
  159:7 160:15
  174:5 266:16
  268:5 278:14
**reservation** 44:2
**reserved** 138:14,15
**reside** 11:15
**respect** 46:12 47:19
  122:6 156:6 161:5
  162:2 165:24
**respecting** 36:5
**respectively** 210:8
**respond** 97:22
  100:11 101:11
  127:11 130:13
  137:19 138:3
  158:12 199:8
  237:19
**responding** 125:24
  199:20 231:24
**response** 52:20
  137:23 145:9
  176:14 177:1
  188:12 191:8,18
  207:9 253:21
  290:2
**responses** 6:5,10,21
  91:22 96:23 155:1
  183:14 188:1
  190:20 195:19
  198:4 201:13
  202:15 203:12
  284:24 285:3
**responsibilities**

12:12 13:3 15:3
  66:22 78:19 86:23
  91:3,13
**responsibility**
  67:18 79:1 136:10
  152:21 153:23
  265:24
**responsible** 12:13
  13:5 14:4 53:15
  66:10,18,23
  119:11
**responsive** 190:19
**rest** 120:10
**results** 20:2,14
  145:16 284:9
**retain** 152:21
  171:14 172:11
  269:7
**retained** 33:1 40:21
  41:16 42:8 110:19
  233:12 265:21
**retainer** 40:24
**retention** 110:16
  111:1 152:3
  154:13,15 155:7
  155:12,16 156:1
  156:10,18,22
  157:8,17 158:4
  161:4 163:1,8,13
  173:21 266:15
  268:3 269:6 279:3
**retired** 14:24 15:4
  224:14 230:7
  277:6
**retrieval** 5:17
  162:21 163:16
**retrieved** 180:13
  181:11 182:12
**returned** 52:12
  150:6 229:7
**reveal** 56:2 113:7
  237:18
**revealed** 22:18
**revealing** 14:7
  117:5 254:2 256:5
  257:4 258:16

289:20
**review** 64:7 108:9
  184:19 185:9,13
  246:23
**reviewed** 91:24
  92:20 110:6 157:1
  173:22 174:7
**reviewing** 14:7
  180:12
**revised** 212:18
**revising** 176:20
  178:6 212:8
**Rhode** 58:13 155:5
  226:7
**Rhule** 61:5
**Richards** 30:21
**right** 11:24 13:20
  21:14 22:6 26:17
  28:18 34:8,12
  44:5 49:14 58:21
  62:9 70:20 75:22
  76:3 77:16 98:13
  99:3,16 101:17
  117:2 125:16
  145:14 147:23
  159:16 163:15
  164:6,8,22 167:7
  170:15 176:16
  177:7,15 179:12
  181:23 186:7
  187:8 189:14
  195:15,21 196:22
  205:8 217:5 227:3
  230:23 232:22
  254:14 261:4
  280:4 290:4 292:8
**risk** 66:10 238:3
  244:12,22 245:24
  246:12 277:16
  282:21 283:9,15
  283:24
**risks** 234:23 235:6
  237:2 241:22
  243:11 244:24
  245:12 271:24
**road** 25:8

**Robert** 3:8
**Robin** 104:7
**role** 91:10 119:2
  137:5 163:10
  167:14,19 177:19
  198:3,3 217:6
  231:18
**roles** 275:16,18
**room** 90:20 233:24
**Roth** 2:2 10:13
**routine** 79:6,10
  81:8 92:7,10
  285:1,11 286:3
**Royal** 60:6,10
  61:17
**RPR** 297:14
**Rudberg** 6:19
  204:9
**Rule** 7:4 36:9 37:21
  42:24 47:16
**rules** 25:11 42:24
  46:9 124:4 194:4
  194:16 264:12
**Rumson** 11:16
**running** 80:3 285:3
**R&D** 158:5,16
  159:18 161:8
  162:17 170:15
  171:19,24 173:13

---
**S**
---

**S** 6:13,15 7:7
**Salling** 7:9 59:19
  62:1 68:3
**sample** 145:20
**samples** 145:21
  146:2 229:6
  261:22 270:11,16
**Sampson** 5:11
  165:14 166:16
  179:19,22
**Sarner** 6:13,15,17
  7:7 204:3,5,7
  217:2
**savings** 140:15
**saw** 26:1 129:1

206:12 286:2
**saying** 15:23 92:22
  137:13
**says** 33:18 42:23
  59:18 60:17 61:7
  61:16 63:6,13
  71:15 72:8 73:7
  75:23 76:17,20
  77:14,17 139:21
  140:6 155:11
  170:13,20 171:8
  172:10 176:17
  183:17 188:18
  189:6,13 191:16
  196:10,11 212:15
  220:15,19 223:20
  247:15
**Schedule** 4:12
**School** 11:22
**Schwartz** 73:8,15
**scientist** 145:13
**scientists** 19:6,17
  20:1,13 86:2
  97:21 118:8
  149:11 185:24
  198:24 238:14
  241:4 243:5
  246:10 259:10
  260:19
**scratch** 99:7 133:22
  278:11
**screen** 43:19 60:1
  76:12 208:16
  212:2 217:20
  225:21
**scroll** 43:19
**se** 86:16
**seal** 24:18
**sealing** 24:12,22
  25:4,5
**SEC** 124:3 125:6
  126:14
**second** 17:11 25:20
  51:22 148:9
  164:15 165:1
  170:12 179:16



183:4 192:13
210:11 212:11
215:2 218:7 231:6
296:4,5
**seconds** 36:24
**secretary** 13:18,21
30:12,15 82:19
112:15 118:19
119:8,11,15
120:23 251:5,21
283:8,22
**secure** 111:18
209:7
**Securities** 4:11
139:5
**see** 31:19 32:13,14
32:19 43:7 59:20
60:7,17 62:2,7
63:16 66:4 68:1,4
68:6,8 71:15
72:10 73:5,13
75:1 76:17,20
139:7,17 140:1,5
141:6 142:10
143:8 147:18,19
147:19 148:5
155:8,14 162:18
168:2 171:1,11,15
172:16,17 176:17
176:23 177:1,5
181:21,22 182:1
182:20 183:1,4
184:1,2,5,7 188:7
188:11 189:13
192:14 195:23
205:22 208:20
209:3 210:18,23
211:6,10 212:13
215:12 216:17,22
217:3 218:17
220:14,15,18,24
223:12 224:1
226:8,15 227:1
247:12,20 249:12
**seeing** 23:16
**seek** 206:16 255:2

**seeking** 207:13
**seeks** 45:6
**seen** 23:21 147:5
165:13 166:11,15
190:16 201:10,12
201:24 208:13,22
211:13 241:16
282:17
**sees** 195:24
**selected** 183:13
**selection** 93:15
**send** 94:14 168:21
179:11 180:5,6
286:3
**senior** 21:12 88:2
99:23 233:8,21
275:22
**sense** 72:23
**sent** 26:20 71:21
95:2 134:21
170:14 175:1
181:14 223:2
**sentence** 145:23
**separate** 108:4
109:7 298:11
**September** 187:7
**series** 108:3
**serpentine** 247:17
**servants** 183:19
**serve** 96:22 97:7
**served** 119:15
182:21 213:1
283:7
**service** 138:15
**services** 1:23 10:15
10:17 33:1 231:23
247:8
**serving** 189:2
**Servives** 5:13
**set** 6:11 43:2,4
187:17 195:20
**settled** 77:20,23
78:3 80:13 83:7
105:19 113:19,19
157:14 229:3
253:1

**settlement** 106:13
**settlements** 80:1
106:20,21
**Shafer** 269:14
271:2
**share** 139:23
**shared** 61:13,13
90:20
**shares** 139:16,20
**sheet** 298:11 299:1
**shorter** 11:9 165:11
**Shorthand** 1:19
**shortly** 224:14
230:6
**show** 27:22 38:23
43:22 60:1 64:6
65:14 70:2 143:6
143:11 147:1
163:24 187:13
208:7 209:18
**showed** 23:16
145:16,21 148:1
203:18
**showing** 78:10
**shown** 241:17
**Shroyer** 204:7
**sic** 36:23 204:6
**side** 133:1,8 135:16
233:19,20 248:24
**sifted** 70:20
**sign** 212:19 220:8
**signature** 224:2
299:23
**Signe** 6:19
**signed** 85:23
219:22 223:15,16
223:18,21,23
224:10
**significance** 249:6
265:16
**significant** 104:20
115:22 234:23
235:6 238:3
271:23
**similar** 90:3 105:11
153:24 188:12

253:22 257:12,23
**simply** 64:10
**single** 201:21 268:7
**sir** 35:9,16,20 39:10
56:9
**sit** 11:24 30:23
177:15 268:2
294:1
**site** 270:1,10,15
**Six** 11:16
**Sixty-three** 189:17
**Sloane** 2:17 50:10
63:14,18 64:1,16
64:19,21 65:6
73:3 77:9 81:4
85:9 105:5 141:16
148:10 149:20
205:2 210:17
211:5 212:17
215:18 217:1
218:15
**smaller** 243:22
**Smith** 61:21,22,24
76:22 77:1,8
78:16
**Sneha** 3:8
**sold** 271:9
**somebody** 35:21
46:2 85:8 105:21
112:11 126:5
169:3 248:19
270:3
**soon** 51:7
**sorry** 26:6 34:5,11
50:15 60:2 68:10
70:13 71:2 82:23
92:14 115:13
124:10 140:3
141:22 148:10
212:3 214:24
223:22 225:11
230:18 261:5
**sort** 47:15 73:24
80:1 81:8 104:24
113:1,20 171:6
**sorted** 72:18,19

**sounded** 16:15
**source** 29:3,6,14
45:22 46:12 49:20
50:6 98:19 229:14
229:17
**sources** 198:16
**Southern** 2:20
**space** 34:6
**speak** 38:6 41:24
51:6 178:13 203:1
**speaking** 24:16
194:3 196:14
291:18,21
**special** 233:13
**specific** 85:4 95:23
95:24 97:13 126:1
129:11 158:11
162:2 171:24
206:21 267:2
281:3,3
**specifically** 12:16
66:21 107:1 127:5
157:20 177:18
210:3 243:24
**specified** 43:17
**specify** 229:12
**speculate** 49:12,13
**speculating** 56:18
**speculation** 75:19
78:6 115:2 116:17
168:14 170:3
198:20 199:3
201:18 205:17
221:15 222:16
239:13 248:10
249:4 261:17
264:8 265:11
266:7 270:7,19
277:18 286:7
**speculative** 237:24
**speed** 205:14
**spent** 295:8
**Sperduto** 112:9
233:9
**spoke** 17:22
**spring** 273:10



274:7
**Square** 2:14
**staff** 85:21 244:2,3
**stages** 92:5
**standard** 6:11
　195:20 198:5
**stands** 68:13 153:8
　206:24 267:5,15
**start** 7:13 11:9
**started** 12:4
**state** 23:17 24:10
　134:17 188:3
　195:11 201:1,3
　226:6
**statement** 24:24
　123:14 145:12
　221:2,24
**statements** 17:16
**states** 1:1 4:11 10:6
　91:20 144:21
　182:22 212:16,22
　215:12 226:19,20
　247:16
**status** 63:9 73:8,11
　73:18,22,24 79:16
　79:19,23 82:10,21
　84:19 114:20
　242:18 274:6
**stayed** 282:9
**Steinmetz** 5:10
　28:6,22
**stenographic** 10:18
**step** 118:13
**steps** 282:22 283:23
**Steve** 234:4
**Steven** 188:5
**Stipulations** 9:8
**stood** 113:13
**stop** 165:16
**stopped** 31:10
**storage** 89:11 90:13
　181:15,15
**straight** 209:20
**strategies** 275:11
　287:22 288:22
　289:11 290:24

291:12 292:14
**strategy** 93:5,11
　218:13 276:1,4
　289:15,23 290:6
**streamline** 196:20
**Street** 1:15 2:9
　10:11
**Streets** 2:14
**strictly** 265:23
**strike** 85:24 100:18
　255:19
**Stryker** 234:2,4,6,7
　244:1
**studies** 32:12 33:20
　47:5,13
**sub** 12:15
**subfile** 90:5
**subject** 23:4 25:4
　26:21 43:1 44:1
　46:10 51:6 63:7,9
　79:19 84:24
　135:21 143:7
　161:5 174:6,14,15
　200:5 216:19
　235:17 280:11,23
　284:13 295:16
**subjects** 191:4
**subject-matter-t...**
　95:22
**submit** 285:2
**submitted** 43:9
　109:1 188:2
　194:24 226:1
**SUBSCRIBED**
　298:16
**subsidiary** 62:5
**substance** 16:23
　23:1,1,7 24:17
　38:2,11 41:6
　113:8 114:4,7
　117:5 224:22
　235:10 256:5
　257:4 258:17
　263:3 273:12
　274:3 277:20
　280:10 284:15

**substantive** 280:16
**success** 104:24
**successor** 57:12
**sue** 219:12
**sued** 138:14 155:4
　259:1,12 268:21
　279:14
**suggest** 241:17
**suggested** 205:24
**suing** 137:8 147:7
　260:3 264:3
**Suite** 1:15
**Sullivan** 81:12
　205:2 228:19
**summaries** 109:14
**summarize** 108:6
**Summary** 5:12
　247:8
**Superior** 226:6
**supervising** 14:14
　79:8
**supervision** 297:21
**supplied** 21:24
　32:20
**supplying** 195:2
**support** 8:2 9:1
　12:14 21:21 43:6
**Supreme** 188:2
**sure** 12:20 13:14
　19:15 27:24 50:16
　58:10 66:23 69:10
　82:15 87:3 96:8
　103:6 104:8
　110:16 111:13
　136:11 172:23
　187:22 225:15
　230:24 232:8
　240:13 244:19
　250:16 254:22
　256:18 259:9
　280:4 283:15
**surfaced** 227:19
**surprised** 99:13
　214:17
**suspend** 161:3
**Swartz** 74:5

**swear** 10:20
**sworn** 10:23 198:18
　199:12 298:16
**systems** 12:17,17

---

**T**

**tab** 164:19,20
**tad** 72:22
**take** 47:19 93:22
　94:4 118:13 144:6
　144:9 185:8,12
　187:14,15 194:14
　204:9 215:2,2
　230:21 231:4,6
　237:5 250:14
　273:9 274:2,8
　281:19 283:8,23
　294:20
**taken** 10:11 61:19
　84:6 128:6 147:3
　176:1 185:23
　186:8 250:24
　282:3 283:18
　295:4 298:5
**takeover** 231:12
　232:16 234:21
　236:14,17 238:12
　239:2,10,18 240:3
　240:18 241:2,11
　241:24 243:17
　244:23 245:10
　271:16 272:1
　282:8,10
**talc** 6:6 13:10,14
　14:18 15:7,11
　17:10 18:12,17,24
　19:8,19 20:4,16
　22:1 32:12 36:21
　47:6,13 53:3,15
　54:9,11 56:15
　58:3,7 59:3,10
　62:5,11 65:9 67:3
　67:19 74:24 75:13
　75:24 82:20 85:12
　86:11,14,16,22
　88:4,18,21 89:1,5

90:6 91:14 93:5
　93:16 94:15 95:4
　95:15 97:22 98:20
　100:12,21 101:10
　102:13,23 103:3
　103:10 104:12
　107:2,9,20 108:7
　108:7 109:8,15
　112:18 113:3
　114:15 116:6,15
　117:20 118:9
　121:6,17 123:21
　124:21 126:14
　127:1,6 128:13
　129:7 131:11,21
　132:19 133:7
　134:3,11 135:8,23
　136:12,14 141:24
　142:1,7 148:1
　152:1,23 159:8,19
　160:6,14 161:10
　170:16 191:24
　193:5,11,11
　197:16 200:18
　203:11 206:17
　207:13,15 214:9
　235:18 236:9,21
　237:4 238:5,15
　240:20 241:5,12
　241:23 243:12
　244:11 245:24
　246:11 247:17
　251:9 252:1,24
　253:2,11 259:1,11
　259:13 260:4,7
　261:12,23,24
　262:14,15 264:2
　265:8 266:4 268:6
　268:22 269:18
　272:8,15 274:19
　274:24 275:1,12
　275:24 276:5,16
　277:1,15 278:1,15
　278:22 279:15
　282:9,23 283:10
　284:2,10,20 287:2



MAGNA ▸
LEGAL SERVICES

287:24 288:24
290:6,7 291:11
292:13 293:7,15
293:18
**talk** 15:7 91:2
101:23 124:12,14
133:18 154:12
204:13 242:14
243:24
**talked** 21:22
145:14 191:10
**talking** 27:23
223:22 243:16
**talks** 68:6 74:23
139:16 147:15
162:20 171:13
189:19 210:20
218:6,12 249:10
**tank** 235:17
**team** 85:6
**tease** 38:20
**Tech** 57:23 147:17
**technical** 248:12
**telephone** 3:8
195:12
**tell** 15:23 29:16
30:15 38:8 80:12
80:12,14 89:24
113:17,22,24
124:16 127:5
138:10 165:7
179:8 196:6 233:3
233:4
**telling** 15:23 129:5
180:5,6 278:8
**tempted** 282:18
**tender** 139:22
140:1
**tenth** 90:19
**tenure** 104:2
**terminated** 157:9
**terms** 78:18 107:19
110:21 130:4
161:21 205:15
221:10 269:5
280:10 283:19,24

**Terry** 30:20,20
**tested** 141:24
145:20 229:6
270:12
**testified** 10:24 19:7
19:17 20:1,13
63:20 64:16 99:9
141:23 144:16
149:11 163:21
183:22 188:19
189:7 193:22
198:24 201:4
268:4 290:13
**testify** 145:3 228:11
**testimony** 4:3
11:14 17:21 24:21
28:8 118:7 137:17
142:13,23 143:7
145:6 147:8 148:4
148:6 163:5 164:1
165:14 166:6
168:19 170:5,9
177:16 187:1,9
191:20,23 197:18
202:22 203:1
222:4 238:15
241:3 243:4 246:9
259:10 260:18
284:23 286:1
298:5
**testing** 4:17 18:10
18:15,16 19:7,18
20:2,14 22:1 27:4
36:11,21 40:18
47:3 48:16 49:18
56:13 58:3 100:1
100:20 101:9
116:14 117:19
118:9 135:22
136:12 147:24
161:7 191:10,24
193:1 200:3,17
203:10 220:21
221:10,18 222:12
239:4 240:20
241:5 244:21

260:5 261:23
262:13 264:2
265:7 268:6 270:4
270:10 278:21
284:10
**tests** 32:10,11 33:6
33:18,19,22 35:22
47:5,11,12 147:15
**thank** 32:2,3 42:3
65:12 72:24 83:19
83:23 123:11
144:11 163:17
182:16,17 184:21
202:10 208:9
225:22 251:17
278:8 295:18
**thereof** 127:1
**they'd** 101:24
104:23 106:8
124:13
**thing** 28:19 80:1
100:1 104:24
113:20 144:2,4
**things** 51:15 109:20
109:23 124:14
165:11 196:20
**think** 17:19 24:12
38:18 44:18,19
47:16 50:3 53:6
57:16 58:21 67:22
74:15,17,19 83:11
83:15 84:23 87:8
88:1,19 91:7 92:7
94:8 99:23 100:5
101:4 104:3
111:21 119:14,15
127:13 157:12
166:5 169:2,12
172:22 178:23
179:14 229:21
231:16 235:12
248:12 269:22
270:20 271:11
280:15 288:2
289:12 294:20
**thinking** 261:19

**third** 59:22 60:4
68:2 216:13,14
220:18
**Thirteen** 226:10,11
**Thomas** 3:6 260:16
**thought** 25:9
124:15,21 126:12
151:11 212:4
245:12 267:3
**threatens** 46:13
**three** 13:7 83:4
194:6 268:20
**time** 10:10 11:10
12:11,20 15:9
16:12 17:8 18:9
18:14,22 19:5,21
20:12,22 21:24
29:21 30:16,16
31:9 55:1,4 80:12
83:18,21,24 84:7
84:13 85:10 87:11
90:11 103:24,24
127:24 128:7
134:5 136:17
139:10,10,19,20
140:16 142:12,16
146:11 148:16
149:1 152:24
153:2,5 154:8,10
156:9,24 160:2,6
161:12 172:23
174:23 175:19
176:2 179:3 185:9
185:13 186:9
187:2,15 193:13
197:21 201:9,17
213:1 214:7 219:3
222:23,24 224:13
227:16 228:10,19
230:15 231:11
232:14 234:24
235:7 238:2,12,18
239:1 240:3,18
241:1,23 243:2,16
247:23 249:23
250:4,18 251:1,4

251:20 259:8,24
261:8 262:14
264:19 265:22,22
271:5,9 273:9,19
278:10 281:21
282:4,7 283:4,6
283:21 291:9
292:11 293:3,14
294:22 295:5,9,17
295:20,22 296:1,9
**times** 79:15 83:4
**title** 14:23 91:7
**today** 10:9 11:14
30:23 39:3 43:11
44:12 58:13
177:16 197:20
241:17 268:2
282:17 284:23
286:2 294:1
**today's** 197:12,13
246:17 296:11
**told** 82:23 128:22
129:11 157:13
179:11 241:21
249:8 293:17
**tolling** 218:14,20
219:3
**Tom** 86:17,19,19
86:19 87:11 88:7
90:2 99:1 177:3
**ton** 5:19
**top** 80:8 209:2
210:9
**TORTORELLA**
2:19
**touch** 112:10
**Township** 2:21
**trace** 144:22 145:4
**track** 290:20
**transaction** 232:5
**transcript** 4:19 5:4
5:9 297:9,19
298:5
**transcripts** 149:10
150:1,6,22 184:4
228:21



**transferred** 31:9
89:14 173:14
**transition** 239:23
**transmitted** 239:4
**transmitting** 73:10
73:13 210:21
211:9 223:21
224:9
**trial** 189:7
**Triglia** 99:20 100:9
101:2,9 102:11
145:13,23 186:24
187:10 192:8
263:15
**true** 102:7 160:15
160:19 298:7
**truthful** 184:10
**try** 104:23
**trying** 196:15,18
197:7 202:9 267:6
**TUNIS** 3:3 26:3
59:24 63:23 71:2
76:11 89:21 102:2
140:3 142:17
151:1,10,19 152:4
152:16 153:5
154:4,7 160:16
161:19 162:1
168:12 170:4
174:11 175:5
187:16,20 192:2
206:9 208:15
212:1 217:19
225:13,16,20
261:15 262:1,18
264:5 266:20
268:8 291:2 296:2
**turn** 121:1
**twice** 115:19
**two** 2:14 83:3 111:9
119:9 130:8
145:11 148:9
215:11 293:2
**type** 131:9
**typically** 46:10
89:19

## U

**Ughetta** 1:14
**Uh-huh** 24:14 51:9
76:13 85:3 89:18
96:1 127:23 133:3
141:7 164:21
176:13,24 180:3
217:16 275:17,20
287:16
**ultimately** 79:3
108:24 120:24
133:12 134:9
**umbrella** 61:13
**unaware** 286:11
287:1
**uncommon** 85:7
**underlying** 262:13
**underneath** 74:11
155:10 184:7
188:5
**understand** 16:5
24:13 37:14 54:14
57:9 153:21
172:11 196:19
197:8 198:2 199:6
234:20 237:2
244:17 264:12
267:7 271:21
272:5,23
**understanding**
57:2 131:8,15
152:20 153:16
160:22 161:17
162:6 172:5
249:14 258:24
260:16 261:7
264:22 266:14
**understood** 237:9
264:19 280:8
289:16
**undertake** 278:12
**undertaking** 156:8
**Union** 12:18
**unique** 93:2 96:2,4
**Uniroyal** 226:5

**unit** 99:24
**United** 1:1 4:11
10:6 182:22
**University** 11:21
32:23
**unlimited** 107:14
**update** 79:6
**updated** 79:16
**updates** 123:6
**upper** 30:11
**use** 43:5 114:22
189:12 209:7
**useful** 25:10

## V

**vague** 132:21 134:5
135:10 136:16
153:14 154:7
155:19 160:18
161:12 238:18
**value** 253:1
**variability** 145:17
**various** 60:18
212:22 213:1
**vary** 212:23
**Vasilopoulos** 7:10
65:20
**vehicle** 136:19
**verbal** 48:23 49:6
**verify** 183:14
**Vermont** 32:11
33:7,9 47:4,12
269:18 270:2
**Vernon** 32:8,19,21
32:22 34:23 36:10
36:20 45:14 47:2
**version** 28:24 29:5
157:8
**versus** 10:5 60:18
76:22 78:16
118:19 119:3
247:10 284:20
**vice** 12:22 13:3,24
**videographer** 3:9
10:1,14 83:24
84:7 127:24 128:7

175:19 176:2
250:18 251:1
281:21 282:4
294:22 295:5
296:9
**Videotaped** 1:12
**Viner** 172:24
**virtue** 37:12
**visited** 270:1,15
**voice** 26:4
**volunteer** 17:21
**vs** 1:5 4:20 5:5,11
5:14,20 6:12,23
7:5 226:5 299:2
**V-I-N-E-R** 173:1

## W

**wait** 184:17 283:19
296:4,5
**waive** 38:10 190:9
**waived** 38:1
**waiving** 38:9 43:2
44:5
**wall** 90:23
**Walter** 61:20
**want** 15:8 38:19
39:6 47:14 70:5
72:1 83:18,22
86:9 91:2 102:19
119:4 154:12
165:8 166:3 167:3
167:9 175:14,15
177:17 181:24
196:13 216:13
229:19 230:20
231:3 240:11
253:24 271:12
280:3,12
**wanted** 103:17
111:8,16 124:14
168:17
**wants** 190:8
**Warren** 3:4
**Washington** 2:9
4:12
**wasn't** 49:19 76:4

124:16 135:19
140:12 234:4
**wastebasket** 156:19
**water** 12:18
**way** 44:4 60:5 68:7
74:9 144:15 146:8
191:7 200:12
220:22 229:20
237:14 240:4
254:20
**weather** 206:21
**week** 145:18,18
**Weldon** 61:22,24
**went** 11:18 31:10
50:17 52:5 92:1
168:3 177:10
242:4 270:5
280:24,24
**weren't** 134:22
186:10
**West** 1:15 10:11
**Westfall** 4:20 5:5
5:14 58:20 59:3
62:12 76:4 77:19
78:3 84:13 99:9
102:10 138:10,12
141:5 146:9 147:4
147:9 148:15
149:8 150:14
151:6,16 155:6
156:2,7 157:9,13
199:1,19 218:14
218:21 224:17
227:18 228:21
230:6 243:5
247:10 257:10,22
258:7 263:12
286:12
**Wexler** 244:4
**We'll** 71:17
**we're** 15:6 84:1
122:2 125:3,17
128:1 175:20
176:4 223:22
250:19 273:9
280:19 281:22



294:23 296:11
**we've** 63:7 64:11
 83:13 194:5
 201:14
**whatever's** 295:10
**whatsoever** 137:5
**Whittaker** 4:20
 5:14 247:10
**Willia** 68:3
**William** 5:6 7:8
 59:19 61:24
 148:21 208:12,24
 212:10,18,20
 247:7
**Williams** 1:3 5:20
 6:22 7:5 10:4
 294:11 299:2
**wish** 24:23 47:20
**withdraw** 189:3
**withdrawing**
 188:21
**withdrawn** 170:21
**withheld** 25:19
**witness** 8:4 10:20
 13:13 14:21 15:19
 16:2,7 17:17,22
 18:6,20 19:3 20:7
 22:10,16 23:14
 24:14 26:6,24
 27:8 29:24 30:6
 31:19 33:2 34:8
 34:11,13 36:20
 38:14,16 39:16
 40:3,10,10 41:11
 41:20 42:2 48:10
 48:19 49:2,11,14
 50:3,23 51:9,24
 52:21,23 53:8,14
 54:1,7 55:6 56:21
 57:20 58:10 59:6
 59:13 60:14 62:21
 65:4 66:17 67:15
 67:22 68:19 69:3
 69:9,17,22 73:22
 74:8,17,19 75:8
 75:20,23 76:8,15

77:4 78:13,24
 79:14 80:7,17
 81:2,6,20 82:7,14
 83:3,11 84:16
 85:3 86:6 87:8
 88:12 89:4,24
 90:18 91:17 92:4
 92:14 93:1,9 94:2
 94:8,11,21 95:8
 96:1 97:16 98:2
 98:10,24 99:12
 100:15,24 101:4
 101:14,20 102:7
 102:16 103:6,13
 104:16 105:17
 106:8,16 107:4,12
 107:17 108:17
 109:4,11,19
 110:14 111:4,13
 111:21,24 112:7
 112:21 113:12
 114:9,19 115:3,11
 115:18 116:3
 117:9 118:1,15
 120:9 121:11,13
 123:24 124:7
 126:8 127:11
 128:16 129:1,10
 130:16 131:3,6,14
 132:14,22 133:11
 133:15 134:6,14
 135:11,18 136:5
 136:18 137:18
 138:6,20 139:13
 140:5 141:1
 142:20 143:2
 144:1,12,19
 146:15 147:12
 148:5,19 149:6,15
 149:20 150:3,9,17
 151:2,11,20
 152:17 153:7,15
 154:19 156:5
 157:12,24 158:9
 158:20 159:1,12
 159:22 160:9,19

161:14 163:6,18
 168:6,15 169:12
 170:10 171:23
 172:22 173:17
 174:2,13 175:8,11
 177:23 178:4,8,12
 178:15,20 180:9
 180:17,23 183:11
 184:22 185:16,20
 186:4 187:6,9
 189:18 192:5
 193:9,21 196:9
 197:19 198:9,21
 199:4,15,24 201:4
 201:11,19,23
 202:7 203:7,16
 204:11,23 205:9
 206:11 207:4,7,20
 209:13,16 211:18
 213:20 214:5,15
 215:3 216:3,6
 217:10 218:10,24
 219:6 220:4,12
 221:16 223:6
 224:24 225:3,14
 226:13,15 227:8
 227:11 228:15,24
 229:24 231:22
 232:8,11,19 233:2
 234:16,18 235:3
 235:13 236:12,24
 238:21,23 239:8
 239:22 240:9,23
 241:8,15 243:8,19
 244:16 245:20
 248:2,11 249:5,20
 250:1,8,13 251:18
 252:17 254:5,14
 254:22 255:16
 256:7,11 257:6
 258:4,19 260:13
 260:23 261:18
 262:6,9,19 263:6
 263:18 264:9,18
 265:14 266:10
 268:11,17 269:1

269:12 270:20
 271:4,19 272:3,11
 274:9 275:21
 276:19 277:4,23
 278:2,5,18 279:1
 279:21,24 283:2
 283:14 284:5,16
 285:8 286:8
 287:17 290:16
 292:3,22 293:12
 293:23 294:7,15
 295:18
**witnesses** 42:23
 183:20
**witness's** 43:17
 102:4 222:3
**Wittacker** 5:5
**words** 47:10 252:11
**work** 13:10 16:13
 16:19 31:11 35:3
 36:16 38:2,12
 42:10 44:8 55:18
 58:2 80:18 81:10
 88:4,17 93:16
 108:6 113:9
 125:12 126:5
 131:24 146:20
 173:3 190:12,22
 191:5 208:2
 230:10 238:7
 239:14 242:4,7,12
 242:20 245:4
 246:3 257:15
 259:3 267:9,23
 272:18 273:2,3,5
 273:16 276:8
 280:14 281:6
 286:16 289:7
 290:1
**worked** 86:11,12
 87:21 88:8 146:11
 173:6 179:4
 192:22 197:14
 207:12 211:1
 212:18 243:3
**Workers** 59:9

**working** 31:10
 93:12 199:7
 214:20 233:17
 261:11 282:8
**world** 40:17
**wouldn't** 31:20
 79:7 96:21 98:10
 110:18 209:2
 277:9
**write** 30:11 61:14
 120:1
**writing** 49:6,19
 129:2
**written** 96:23 97:7
 115:8 200:16
**wrong** 120:15
 225:12
**www.MagnaLS.c...**
 1:24

---

|  **X**  |
| X 196:11,12 |
| **XI** 1:20 297:14 |
| **x-raying** 255:7 |
| **x-rays** 255:8,12 |

---

|  **Y**  |
**Yale** 11:18
**yeah** 17:17 22:9
 28:14 52:19 56:19
 62:16 64:2 65:17
 66:14,17 74:17
 92:14 115:3 119:4
 129:2 138:6 140:5
 140:14 143:20
 144:2,9 152:13
 157:24 164:17
 175:17 178:15
 179:20,23 185:16
 187:20 205:9
 221:12 225:15,18
 226:14,15 231:1,5
 234:7 249:5
 250:16 258:3
 260:24 286:22
**year** 68:7 79:15



83:4 87:14,14,17
87:22 110:18
115:19 140:18
**years** 29:13 105:6
268:21
**Yep** 217:21
**York** 188:3,4 198:5
202:16 203:12,19
**YR** 68:10

_____

**$**

**$33** 140:11
**$400,000** 229:4,8
**$45** 139:23

_____

**0**

**01938** 1:20 297:14
**07059** 3:4
**07701** 2:4
**07928** 2:21

_____

**1**

**1** 4:17 8:8,10,13,16
8:17 10:2 25:15
61:8 70:24 71:3
298:7
**1:07** 176:3
**10** 8:10,19,20,21,22
176:15
**10:12** 84:1
**10:20** 84:8
**103** 145:2
**108** 6:13 204:2
205:10
**11** 4:5 8:8,12,21
61:9 70:13,13,17
70:17 71:1,10
128:1 176:15
183:17 211:24
**11:10** 128:8
**114** 8:20
**116** 8:21
**117** 8:22
**118** 8:6
**12** 8:12,13,15,16
183:16 187:7

226:3,9
**12/13/1985** 76:18
**12/13/85** 78:15
**12:01** 175:20
**120** 1:15
**121** 6:15 8:7 204:4
205:10
**123** 6:17 205:6
**125** 8:8
**126** 8:9
**127** 2:3 8:10,11
**13** 5:9 8:11,19 28:4
28:5 226:13
**130** 8:12 28:12,13
**132** 8:13,14
**14** 1:9 5:12 8:6,11
8:14 225:11 247:3
247:6 298:6
**14A** 4:12
**14th** 10:9
**141** 1:15 10:11
**146** 8:15
**1472** 223:11
**148** 6:18 204:7
205:1
**15** 5:16 8:7,11
162:12,16 177:13
**15th** 60:7
**1516** 74:12
**1561** 76:10
**16** 4:19 7:7 8:6,9
**16th** 141:4 171:10
204:6
**17** 8:9,12,13,18,18
139:15 141:19
143:10,11
**176** 6:21 154:21,22
**18** 5:10 6:20 8:13
143:11,16,22
144:14 224:5
**18th** 2:14 204:8
219:20
**19** 8:6 147:14,15
**191** 8:16
**19103** 2:15
**195** 210:4

**1976** 12:4
**1979** 147:17
**1980** 12:21
**1980s** 62:13 63:20
**1981** 15:15
**1982** 134:21 135:5
250:2
**1983** 4:20 5:4 77:23
141:4 147:4
**1984** 5:18 13:17,23
14:3,13 15:3 74:4
75:4,12 154:14
155:13 157:4,21
158:6,14 159:6
160:13 162:2,16
167:15 171:10
173:13 176:21
177:10,20 180:14
181:11 182:13
187:10 266:15
267:3 268:4,19
269:6 279:3,6
**1985** 7:11 60:7,11
61:8,9 63:1 65:19
77:1,10 160:13
**1987** 78:3
**1989** 212:9,19,24
213:3 219:20
221:20 224:6
**1990** 6:14,16,17
204:3,4
**1991** 7:7 204:6
**1995** 187:7

_____

**2**

**2** 8:6,10,15,16
42:22 195:9
**2:11-cv-1754** 1:7
10:8
**2:31** 250:19
**2:53** 251:2
**20** 8:7,8,20
**20th** 63:1
**2000** 111:17 250:1
**2000s** 213:3
**20005** 2:9

**2002** 188:9,11
**2003** 6:20 111:10
204:8
**2004** 227:16 228:9
**2005** 111:8,10,16
111:17 227:16
228:9 231:17
**2006** 14:24 15:4
139:13 268:20
273:10 274:8,18
**2009** 286:12 287:2
**2017** 5:10
**2018** 1:9 10:9 298:6
298:17
**202.879.5959** 2:10
**203** 7:4 32:1,5
**207** 8:17
**208** 8:18
**21** 8:22 155:3
**210** 7:7 204:5 205:5
**214** 7:8 59:15
**215** 7:10 59:15
65:11,15
**215.981.4591** 2:15
**219** 8:19
**22** 6:14 8:15,19
**22nd** 204:2
**228** 8:20
**23** 6:16 8:7
**23rd** 204:4
**230** 8:21
**237** 8:22
**238** 8:6
**239** 8:7
**24** 6:17 7:11 8:17
65:19
**242** 8:8
**245** 8:9
**246** 8:10,11
**25** 3:4
**250** 8:12
**252** 8:13
**253** 8:14,15
**256** 8:16
**257** 8:17,18
**258** 8:19,20

**259** 8:21
**26** 5:4 36:9 37:21
47:17
**26th** 147:3
**26(a)(1)** 7:5
**26(a)(1)(A)(i)** 42:24
**263** 8:22
**267** 8:6
**272** 8:7
**274** 8:8
**275** 8:9
**276** 8:10
**278** 8:11
**280** 8:12
**286** 8:13
**287** 8:14
**288** 8:15
**289** 8:16
**296** 298:7

_____

**3**

**3** 4:19 8:9,11,14
140:21,24 141:3
**3M** 5:11
**3:27** 281:22
**3:42** 282:5
**3:56** 294:23
**3:59** 295:6
**30** 36:23
**30th** 74:4
**3000** 2:14
**34** 164:12
**35** 8:7,8,9 178:24
**36** 8:10,11

_____

**4**

**4** 5:4 8:18 146:6
147:2,2 212:10
296:10
**4/28** 210:10
**4/28/89** 210:7
**4/30/1984** 72:9
**4/30/84** 72:21
**4/4/1989** 216:15
**4/4/89** 216:16
**40** 29:13



**41** 5:19 8:12 176:12
211:20 225:10,16
225:24
**42** 8:13 145:20,21
**43** 8:14
**437** 2:20
**45** 8:15
**46** 8:16
**49428** 63:5

---
**5**

**5** 5:6 8:7,10,21
208:8,11
**5/18** 210:12
**5/18/89** 210:8
**50** 6:4
**5072** 170:24
**50872** 65:15
**51** 8:17
**55** 8:18
**56** 8:19
**57** 6:10 182:15
187:14 203:19
**572** 210:4,24

---
**6**

**6** 5:8 8:9,14,14,16
8:20 164:13
219:18,20
**62** 181:2
**624-6221** 1:23
**63** 188:8,11
**655** 2:9

---
**7**

**7** 5:18 8:12,17,22
176:21 180:14
181:11 182:13
**7th** 162:16 167:15
177:9,20
**7/1/83** 217:23
**7/18/1995** 215:12
**732.747.9003** 2:4
**754,787** 139:20
**76** 12:8

---
**8**

**8** 32:16 45:15
212:19,24
**8th** 212:9
**8/18/89** 223:11,18
**80s** 21:2,2 33:14
58:17,18
**82** 28:19,20
**83** 157:14
**84** 157:15
**866** 1:23
**873** 71:16,19 72:8
72:16

---
**9**

**9** 8:6,8,15
**9:06** 1:16 10:10
**90s** 21:2 33:14
**908.484.1153** 3:5
**93** 28:16
**96** 12:5
**973.824.9300** 2:21
**99** 96:17

