Exhibit 14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY


KlMBERLEE WILLIAMS, et al., :

     Plaintiffs,           : Civil Action No.

     v.                     : 11-1754 (JLL) (JAD)

BASF CATALYSTS LLC, et al., :

     Defendants.         :



Video Deposition of DANIEL STEINMETZ,

30(b)(6) designee of BASF CATALYSTS LLC


Kirkland & Ellis LLP

655 Fifteenth Street, N.W.

Washington, D.C.


Wednesday, June 6, 2018

10:05 a.m.


Reported by:

Adam D. Miller

Registered Professional Reporter

Job no. 408210


MAGNA LEGAL SERVICES

866-624-6221

www.MagnaLS.com



```
 1   APPEARANCES:

 2   On Behalf of Plaintiffs,:

 3           CHRISTOPER M. PLACITELLA, ESQUIRE

 4           cplacitella@cprlaw.com

 5           MICHAEL COREN, ESQUIRE

 6           mcoren@cprlaw.com

 7           COHEN, PLACITELLA & ROTH, P.C.

 8              127 Maple Avenue

 9              Red Bank, New Jersey 07701

10              888.702.8276

11

12   On Behalf of BASF Catalysts LLC:

13           PETER A. FARRELL, ESQUIRE

14           pfarrell@kirkland.com

15           ELIZABETH DALMUT, ESQUIRE

16           elizabeth.dalmut@kirkland.com

17           SARAH SMITH, ESQUIRE

18           sarah.smith@kirkland.com

19           KIRKLAND & ELLIS LLP

20              655 Fifteenth Street, N.W.

21              Washington, D.C. 20005-5793

22              202.879.5000

23

24

25
```



```
 1   On Behalf of the Cahill defendants:

 2             BARRY H. BOISE, ESQUIRE

 3             boiseb@pepperlaw.com

 4             PEPPER HAMILTON LLP

 5               3000 Two Logan Square

 6               18th & Arch Streets

 7               Philadelphia, Pennsylvania 19103-2799

 8               215.981.4000

 9   TELEPHONIC APPEARANCES:

10   On Behalf of Arthur Dornbusch:

11             JOHN A. BOYLE, ESQUIRE

12             jboyle@khmarino.com

13             MARINO, TORTORELLA & BOYLE P.C.

14               437 Southern Boulevard

15               Chatham, New Jersey 07928-1488

16               973.824.9300

17

18   On Behalf of Thomas Halket:

19             ERIC TUNIS, ESQUIRE

20             etunis@heroldlaw.com

21             HEROLD LAW, P.A.

22               25 Independence Boulevard

23               Warren, New Jersey 07059-6747

24               908.647.1022

25   ALSO PRESENT:  RAY MOORE, VIDEOGRAPHER
```



```
 1                      INDEX

 2   DEPONENT:  DANIEL STEINMETZ

 3   EXAMINATION BY:            PAGE

 4   MR. PLACITELLA             10

 5                    EXHIBITS

 6   STEINMETZ       DESCRIPTION        PAGE

 7   Exhibit 3   6/1/16 Steinmetz Deposition   462

 8               Transcript

 9   Exhibit 4   3/14/18 Carter Deposition   268

10               Transcript

11   Exhibit 5   Excerpted Privilege Log    300

12   Exhibit 8   8/20/02 Letter to Sullivan   348

13               from Lynn, with attachments,

14               BASF_WILLIAMS000390446

15               to '60

16   Exhibit 10  BASF Catalysts LLC's        8

17               Responses and Objections to

18               Plaintiffs' Amended Notice

19               to Take Deposition Pursuant

20               to Fed.R.Civ.P. 30(b)(6)

21   Exhibit 11  Plaintiffs' Amended Notice   8

22               to Take Videotaped

23               Deposition Pursuant to

24               Fed.R.Civ.P. 30(b)(6) to

25               Defendant BASF Catalysts LLC
```



Page 5

1                    PREVIOUS EXHIBITS

2     NAME             DESCRIPTION              PAGE

3     1        "The Cahill Compilation"        111

4     3        Excerpt of the 3/16/83          210

5              Deposition of Glenn Hemstock

6     6        8/18/19 Carter Affidavit        288

7     63       Answers of BASF Catalysts        54

8              LLC to Interrogatories

9              Propounded by the Plaintiffs

10    64       Answers of Defendant Pita       251

11             Realty Limited to

12             Plaintiffs' Standard

13             Interrogatories,

14             BASF_WILLIAMS000169159

15             to '223

16    129      6/6/91 Letter to Schroyer       327

17             from Sarner,

18             BASF_WILLIAMS000108387

19             to '88

20    131      7/24/96 Letter to Bevan         231

21             from Martin,

22             BASF_WILLIAMS000109391 to

23             '92, with attachments

24

25



```
                                                    Page 6

 1   134        8/29/91 Letter to Colley      332

 2              from Sloane,

 3              BASF_WILLIAMS000104905

 4              to '06

 5   214        Arrowood Production re        376

 6              Salling, ARROWOOD049377 to

 7              '78, ARROWOOD049418 to '20,

 8              and ARROWOOD049428 and '29

 9   215        1/24/85 Letter to Remundo     383

10              from Vasilopoulos, with

11              attachment, ARROWOOD050872

12              to '74

13   219        1/25/06 Letter to Verderami   351

14              from Ernst & Young,

15              CAHILL-000010 to '24

16   221        BASF Catalysts LLC's          307

17              Responses and Objections

18              to Plaintiffs' Second Set

19              of Interrogatories

20   225        8/84 Engelhard Corporation    139

21              Record Retention Manual,

22              BASF_SAMPSON000039717 to '58

23

24

25
```



```
                                              Page 7
 1   227        3/19/91 Letter to Carter      257

 2              from Fliegel, with

 3              attachments, CAHILL-001156

 4              to '70

 5   228        3/2/90 Letter to Smith from   239

 6              Sarner,

 7              BASF_WILLIAMS000108295

 8              to '96

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Page 8

```
 1                    (Steinmetz Exhibit 10 and Exhibit

 2        11 were premarked for identification.)

 3                    THE VIDEOGRAPHER:  We are now on

 4            the record.  This is begins DVD No. 1

 5            in the deposition of Daniel Steinmetz,

 6            in the matter of Kimberlee Williams,

 7            et al., versus BASF Catalysts, LLC, et

 8            al., in the United States District

 9            Court in the District of New Jersey,

10            Civil Action No. 11-1754.

11                    Today is June 6th, 2018, and the

12            time is 10:05 a.m.  This deposition is

13            being taken at 655 15th Street,

14            Northwest, Washington, DC, at the

15            request of Cohen, Placitella & Roth.

16                    The videographer is Ray Moore of

17            Magna Legal Services, and the court

18            reporter is Adam Miller of Magna Legal

19            Services.

20                    Will counsel and all parties

21            present state their appearances and

22            whom they represent.

23                    MR. PLACITELLA:  Chris Placitella

24            on behalf of plaintiff.  Good morning.

25            Nice to see you again.
```



Page 9

```
1              THE WITNESS:  Good morning.

2              MR. COREN:  Hi.  Nice to see you

3        again, Mr. Steinmetz.

4              Mike Coren on behalf of

5        plaintiffs.

6              MR. FARRELL:  Peter Farrell of

7        Kirkland & Ellis on behalf of

8        Defendant BASF.

9              MS. DALMUT:  Elizabeth Dalmut,

10       Kirkland & Ellis, on behalf of BASF.

11             MR. BOISE:  Good morning.

12       Barry Boise on behalf of the Cahill

13       defendants.

14             MS. SMITH:  Sarah Smith on behalf

15       of BASF.

16             THE VIDEOGRAPHER:  On the phone?

17             MR. BOYLE:  Hi.  John Boyle of

18       Marino, Tortorella & Boyle on behalf

19       of Defendant Arthur Dornbusch.  And

20       just to avoid interrupting, I'm

21       joining in all objections during the

22       deposition.

23             MR. PLACITELLA:  How do you know

24       there's going to be any?

25             MR. BOISE:  Objection.
```



Page 10

1           MR. BOYLE:  The past is prologue,

2       I think.

3           THE VIDEOGRAPHER:  Please

4       proceed.

5               - - - - -

6           DANIEL STEINMETZ, having first

7  been duly sworn according to law, was

8  examined and testified as follows:

9               - - - - -

10                  EXAMINATION

11  BY MR. PLACITELLA:

12      Q.   Good morning, Mr. Steinmetz.  How

13  are you?  Nice to see you again.

14      A.   I'm fine.  Good to see you.

15      Q.   Where do you currently live?

16      A.   I live in Bloomfield Hills,

17  Michigan.

18      Q.   And who do you currently work

19  for?

20      A.   I'm retired, but I work as a

21  consultant to BASF Catalysts.

22      Q.   Okay.  Do you work for anybody

23  other than BASF Catalysts?

24      A.   No, I don't.

25      Q.   And do you work for any -- for



```
 1    BASF in any capacity other than as a

 2    corporate representative in a talc

 3    litigation?

 4              MR. FARRELL:  Objection to form.

 5              THE WITNESS:  I don't currently.

 6         A couple of years ago I did a little

 7         bit of other work for other

 8         departments within BASF, but I don't

 9         anymore.

10    BY MR. PLACITELLA:

11         Q.    So your sole job right now is to

12    appear as a corporate representative for

13    BASF in a talc litigation; correct?

14              MR. FARRELL:  Objection to form

15         and foundation.

16              THE WITNESS:  Yes, generally.

17    BY MR. PLACITELLA:

18         Q.    But you never when you were at

19    BASF had anything to do with talc; correct?

20         A.    That's correct.

21         Q.    And you are being paid to be a

22    corporate witness; correct?

23              MR. FARRELL:  Objection to form

24         and foundation.

25              THE WITNESS:  Yes.
```



Page 12

```
 1   BY MR. PLACITELLA:

 2        Q.   Okay.  Do you know whether

 3   there's anybody at BASF or Engelhard who

 4   actually worked on the talc litigation that

 5   would know more than you that could testify

 6   today?

 7             MR. FARRELL:  Objection to form

 8        and foundation.

 9             THE WITNESS:  In the topics that

10        I'm covering, I don't know of anybody,

11        no.

12   BY MR. PLACITELLA:

13        Q.   Okay.  And how much are you being

14   paid?

15             MR. FARRELL:  Objection to form.

16             THE WITNESS:  $250 an hour.

17   BY MR. PLACITELLA:

18        Q.   And how much have you made so far

19   as a corporate representative for BASF in

20   talc litigation?

21             MR. FARRELL:  Objection to form.

22             THE WITNESS:  In this year or --

23   BY MR. PLACITELLA:

24        Q.   Total.

25        A.   Total over -- excuse me -- over
```



Page 13

1    the last three years, it's probably sixty to

2    seventy thousand dollars.

3         Q.   Okay.  And you are here today to

4    speak on behalf of the corporation; correct?

5              MR. FARRELL:  Objection to form.

6              THE WITNESS:  Yes.

7    BY MR. PLACITELLA:

8         Q.   Okay.  And you understand that

9    what you say here today will bind the

10   corporation at the time of trial?

11             MR. FARRELL:  Objection to form

12        and foundation.

13             THE WITNESS:  I'm not a lawyer

14        and I don't understand all the legal

15        implications for that.  I understand

16        I'm speaking for the company.

17   BY MR. PLACITELLA:

18        Q.   Okay.  And I wanted to show you

19   what's been marked as Steinmetz 11, which is

20   a notice for today.

21             I'm sure you have a copy.

22             You've seen Steinmetz 11 before?

23        A.   I have.

24        Q.   When's the first time you saw it?

25        A.   I saw a previous copy of this



Page 14

1    about two weeks ago, and then I saw -- I

2    believe this is the updated one or the newer

3    one that was sent to us about a week ago.

4         Q.   Okay.  And you understand that

5    those are the topics that you're here to

6    testify about?

7              MR. FARRELL:  Objection to form.

8              THE WITNESS:  Yes.

9    BY MR. PLACITELLA:

10        Q.   Okay.  Now, did BASF or does

11   BASF, as a matter of principle, recognize

12   the mandates of the 7th Amendment?

13             MR. FARRELL:  Objection to form

14        and foundation, beyond the scope of

15        the notice.

16             THE WITNESS:  You'd have to

17        refresh me on the 7th Amendment.  I

18        don't --

19   BY MR. PLACITELLA:

20        Q.   Does BASF recognize that, quote,

21   In suits at common law where the value in

22   controversy shall exceed $20, the right of

23   trial by jury should be preserved?

24             MR. FARRELL:  Objection to form,

25        foundation, beyond the scope of the



Page 15

```
 1           notice, calls for a legal conclusion.
 2                THE WITNESS:  I don't know.  I
 3           didn't prepare for this, and I'm not a
 4           lawyer.
 5   BY MR. PLACITELLA:
 6           Q.   So you don't know as a matter of
 7   principle whether BASF adheres to the
 8   mandate of the US Constitution?
 9                MR. FARRELL:  Objection to form,
10           foundation, beyond the scope of the
11           notice.
12                Which topic does this relate to
13           in your notice, Mr. Placitella?
14                MR. PLACITELLA:  Is that a form
15           objection?
16                MR. FARRELL:  It's a question for
17           you as to which of the --
18                MR. PLACITELLA:  Okay.  I'm not
19           answering any of your questions, so
20           please don't ask them.
21                So can you read my question back.
22                (The court reporter read back as
23   follows:
24                "Q   So you don't know as a
25           matter of principle whether BASF
```



Page 16

```
 1          adheres to the mandate of the US

 2          Constitution?")

 3               MR. FARRELL:  Objection to form,

 4          foundation, beyond the scope of the

 5          notice, calls for a legal conclusion.

 6               THE WITNESS:  I was, I was

 7          prepared to answer the, to the issues

 8          in this document.  I don't know the

 9          official BASF position regarding these

10          things, and I would have to talk to

11          BASF.

12  BY MR. PLACITELLA:

13          Q.   So as you sit here as the

14  representative to bind BASF, you don't know

15  whether BASF adheres to the mandates of the

16  Constitution concerning the preservation of

17  trial by jury?

18               MR. FARRELL:  Objection to --

19  BY MR. PLACITELLA:

20          Q.   Is that what you're saying?

21               MR. FARRELL:  Objection to form,

22          foundation, beyond the scope of the

23          notice, calls for a legal conclusion,

24          argumentative.

25               THE WITNESS:  I'm not a lawyer.
```



Page 17

```
 1   BY MR. PLACITELLA:
 2        Q.   So the answer is you don't know?
 3             MR. FARRELL:  Same objections.
 4             THE WITNESS:  The answer is I'm
 5        not a lawyer.
 6   BY MR. PLACITELLA:
 7        Q.   That wasn't my question.  You
 8   either know or you don't know.
 9             MR. FARRELL:  Same objections,
10        argumentative.
11             THE WITNESS:  I don't know.
12   BY MR. PLACITELLA:
13        Q.   Okay.  Does BASF recognize that
14   the right to trial by jury shall not be
15   taken away from a citizen by way of
16   deception?
17             MR. FARRELL:  Objection to form,
18        foundation, beyond the scope of the
19        notice.
20             Which topic in your notice does
21        this question relate to?
22   BY MR. PLACITELLA:
23        Q.   Let me ask the question again.
24             Does BASF recognize the right to
25   trial by jury shall not be taken away from a
```



Page 18

1   citizen through deception?

2            MR. FARRELL:  Same objections,

3        beyond the scope of the notice.

4            Can you state which topic in the

5        notice this question relates to?

6            MR. PLACITELLA:  I'm not

7        answering your questions today, Mr.

8        Farrell.

9   BY MR. PLACITELLA:

10       Q.   Can you answer my question,

11  please, Mr. Steinmetz.

12       A.   I'm, I'm sorry.  I just didn't

13  prepare for this, so I really can't speak to

14  that.

15       Q.   So you don't know today whether

16  BASF recognizes that a trial by jury should

17  not be taken away through deception?

18            MR. FARRELL:  Objection to form,

19        foundation, beyond the scope of the

20        notice, calls for a legal conclusion.

21            THE WITNESS:  I'm not a lawyer,

22        and I don't know all the implications

23        of the question you just asked, so I

24        can't answer that.

25  BY MR. PLACITELLA:



```
 1          Q.   Okay.  Does BASF recognize the
 2     duty of candor when supplying information
 3     during the discovery phase of a lawsuit?
 4               MR. FARRELL:  Objection to form,
 5          foundation, beyond the scope of the
 6          notice.
 7               THE WITNESS:  Once again, I
 8          didn't prepare to answer a question
 9          like that.  I'm not a lawyer.  So I'm
10          just not prepared to --
11     BY MR. PLACITELLA:
12          Q.   Well, you're here to testify
13     during the discovery phase of a lawsuit;
14     correct?
15               MR. FARRELL:  Objection to form,
16          foundation.  He's here as the person
17          to testify about topics that you
18          provided notice of.  This isn't one of
19          those topics.
20               MR. PLACITELLA:  Is that a
21          speaking objection, sir?
22               MR. FARRELL:  No.  It is a --
23               MR. PLACITELLA:  Okay.
24               MR. FARRELL:  -- beyond-the-scope
25          objection.
```



Page 20

```
 1   BY MR. PLACITELLA:

 2         Q.   Let me ask you a question, sir.

 3              MR. FARRELL:  Which topic in the

 4         notice --

 5   BY MR. PLACITELLA:

 6         Q.   You are here to testify --

 7              MR. FARRELL:  -- does your

 8         question relate to?

 9   BY MR. PLACITELLA:

10         Q.   You are here to testify in

11   connection with discovery in this case;

12   correct?

13              MR. FARRELL:  Objection to form,

14         foundation.  The witness is here to

15         testify concerning the notice that you

16         served and the objections stated in

17         that notice.

18              MR. PLACITELLA:  Could you keep

19         track of all of the time that's used

20         in the objections while I'm asking my

21         questions, please.

22              THE VIDEOGRAPHER:  Sure.

23              MR. FARRELL:  Thank you.

24   BY MR. PLACITELLA:

25         Q.   Sir, you're here to respond to
```



Page 21

1    questions in the discovery phase of this

2    lawsuit; correct?

3              MR. FARRELL:  Objection to form,

4         foundation, beyond the scope of the

5         notice, misstates why Mr. Steinmetz is

6         here.

7    BY MR. PLACITELLA:

8         Q.   You can answer it.

9         A.   My understanding is that I'm here

10   to respond and to testify regarding the

11   issues that were outlined in the document in

12   front of me.

13        Q.   And you are testifying today

14   during -- as part of discovery in this case;

15   correct?

16             MR. FARRELL:  Objection to form,

17        foundation.

18             THE WITNESS:  I'm not a lawyer;

19        and I don't know what the official

20        phase of this is called, if it is

21        discovery or not.  So I can't respond

22        to that.

23   BY MR. PLACITELLA:

24        Q.   Do you recognize that you have a

25   duty of candor when supplying information in



Page 22

1    the context of your deposition?

2              MR. FARRELL:  Objection to form

3         and foundation.

4              THE WITNESS:  I realize that I

5         have to tell the truth.

6    BY MR. PLACITELLA:

7         Q.   Okay.  And did you know that BASF

8    had a duty of candor when supplying

9    information during and defending the Emtal

10   talc lawsuits?

11             MR. FARRELL:  Objection to form,

12        foundation, beyond the scope of the

13        notice.

14             THE WITNESS:  Again, there are a

15        lot of legal terms in here.  I'm, I'm

16        not a lawyer, and I'm just not

17        prepared to answer that type of a

18        question.

19   BY MR. PLACITELLA:

20        Q.   Well, let me ask you a question

21   this way:  Do you have an understanding that

22   BASF when it was responding to discovery in

23   the talc litigation had a duty to tell the

24   truth?

25             MR. FARRELL:  Objection to form



Page 23

```
 1        and foundation.
 2             THE WITNESS:  Again, I'm not a
 3        lawyer and I -- that could be a loaded
 4        question.  I just don't know the
 5        answer because I'm not a lawyer.
 6  BY MR. PLACITELLA:
 7        Q.   Sir, what's loaded about "duty to
 8  tell the truth"?  You don't understand those
 9  words?
10             MR. FARRELL:  Objection to form
11        and foundation, argumentative.
12             THE WITNESS:  I'm sorry.  I'm not
13        a lawyer.  And when a nonlawyer hears
14        lawyers speak, you know, we worry
15        about whether we understand everything
16        that you're saying.
17  BY MR. PLACITELLA:
18        Q.   What's your understanding of "the
19  truth," sir?
20             MR. FARRELL:  Objection to form,
21        argumentative.
22             THE WITNESS:  "The truth" is
23        to -- to me, in lay terms, is to tell
24        facts as you understand them and to
25        not deceive.
```



Page 24

1    BY MR. PLACITELLA:

2         Q.   All right.  Do you understand

3    that when BASF was answering discovery in

4    the talc cases that they had an obligation

5    not to deceive, using your terminology?

6              MR. FARRELL:  Objection to form,

7         foundation, beyond the scope of the

8         notice.

9              THE WITNESS:  Again, I, I don't

10        disagree with you.  I just don't know

11        the legal requirements of that, that a

12        defendant -- or a plaintiff, for that

13        matter -- is required to follow.  I

14        just don't know the law that well.

15   BY MR. PLACITELLA:

16        Q.   You don't know as you sit here as

17   speaking on behalf of the corporation

18   whether or not the corporation had a duty

19   not to deceive litigants?

20             MR. FARRELL:  Objection to form,

21        foundation, beyond the scope of the

22        notice.

23             THE WITNESS:  I know that BASF

24        would always tell the truth.  I just

25        don't know what the law says about it.



Page 25

```
  1    BY MR. PLACITELLA:

  2         Q.    I'm not talking about the law,

  3    sir.  I'm talking about your understanding

  4    of what's right and wrong.

  5              Did BASF have the -- the

  6    obligation to tell the truth when responding

  7    to discovery and providing information in

  8    the Emtal lawsuits?

  9              MR. FARRELL:  Objection to form,

 10         foundation, beyond the scope of the

 11         notice, asked and answered.

 12              THE WITNESS:  I'm sorry.  Could

 13         you repeat that one.

 14              MR. PLACITELLA:  Could you read

 15         the question back, please.

 16              (The court reporter read back as

 17    follows:

 18                   "Q   I'm not talking about

 19         the law, sir.  I'm talking about

 20         your understanding of what's right

 21         and wrong.

 22                   "Did BASF have the -- the

 23         obligation to tell the truth when

 24         responding to discovery and

 25         providing information in the Emtal
```



```
 1          lawsuits?")

 2              THE WITNESS:  I understand that

 3          you're not talking about the law.  But

 4          I'm, I'm sitting here representing

 5          BASF.  And you're asking questions of

 6          me that could have legal implications.

 7              And I'm not prepared to answer

 8          them because I don't know the legal

 9          implications of the questions.  They

10          may be -- it may be a very

11          straightforward question, but I don't

12          understand that.  I don't know what it

13          means.

14      BY MR. PLACITELLA:

15          Q.   Tell me what you don't

16      understand.

17          A.   And I haven't prepared to talk

18      about these things.

19          Q.   You're not here to talk about

20      what's true and not true?

21              MR. FARRELL:  Objection to form,

22          foundation, beyond the scope of the

23          notice, misstates the notice.

24      BY MR. PLACITELLA:

25          Q.   Sir, you're not here to talk
```



1    about what's true and not true?

2            MR. FARRELL:  Same objections.

3            THE WITNESS:  I'm here to talk

4        truthfully about what the topics are

5        in this deposition notice.

6    BY MR. PLACITELLA:

7        Q.    You know the difference between a

8    true statement and a false statement, do you

9    not?

10           MR. FARRELL:  Objection to form.

11           THE WITNESS:  Again, it depends

12       what -- how you're defining true and

13       false.  But I, in a lay sense, yes, I

14       do understand.

15   BY MR. PLACITELLA:

16       Q.    And you know the difference

17   between a true statement and a misleading

18   statement, do you not?

19           MR. FARRELL:  Objection to form,

20       foundation.

21           THE WITNESS:  Again, it would

22       depend on context and how you're

23       defining each term.  But I have my

24       understanding, yes.

25   BY MR. PLACITELLA:



Page 28

1          Q.    Okay.  What's your understanding
2     of a misleading statement?
3               MR. FARRELL:  Objection to form.
4               THE WITNESS:  A misleading
5          statement is a statement that's
6          intended to mislead, to misinform.
7     BY MR. PLACITELLA:
8          Q.    Okay.  Does BASF recognize that
9     it's wrong to mislead litigants and Courts
10    concerning facts relevant to a lawsuit that
11    are in possession of BASF?
12              MR. FARRELL:  Objection to form,
13         foundation, beyond the scope of the
14         notice.
15              THE WITNESS:  I would believe
16         that BASF understands that.  I, again,
17         I don't know the legal implications of
18         your question and what it means.
19    BY MR. PLACITELLA:
20         Q.    Okay.  Does BASF recognize its
21    obligation to conduct an investigation of
22    the facts and information available to the
23    corporation when responding to discovery in
24    a talc litigation?
25              MR. FARRELL:  Objection to form,



Page 29

```
 1            foundation, beyond the scope of the

 2            notice.

 3                 THE WITNESS:  I'm not a lawyer.

 4            I don't understand the obligations

 5            under the law.  So my -- I don't know.

 6    BY MR. PLACITELLA:

 7        Q.   So you don't know as you sit here

 8    as the corporate representative whether you

 9    had an obligation to investigate the facts

10    that were available to BASF when preparing

11    for this deposition?

12                 MR. FARRELL:  Objection to form,

13            foundation, beyond the scope of the

14            notice, misstates the witness'

15            testimony.

16                 THE WITNESS:  Once again, I'm a

17            lawyer [sic].  I don't understand what

18            exactly is incorporated in the term

19            "obligation."  I just don't know.

20    BY MR. PLACITELLA:

21        Q.   Well, what did you understand

22    your obligation was to prepare yourself to

23    testify today?

24                 MR. FARRELL:  Objection to form,

25            foundation, misstates the witness'
```



1          testimony.

2                You're now asking a different

3          question.

4                THE WITNESS:  My obligation as I

5          understand it was to research and

6          learn enough about the material

7          included in these deposition topics

8          that I would be able to answer

9          truthfully here today.

10   BY MR. PLACITELLA:

11        Q.   And does that include the

12   information that's available to BASF

13   concerning these topics?

14                MR. FARRELL:  Objection to form

15          and foundation.

16                THE WITNESS:  As I understand it,

17          yes.

18   BY MR. PLACITELLA:

19        Q.   So you do agree with me that you

20   recognize the obligation to investigate the

21   facts and information available to BASF when

22   preparing for today's deposition?

23                MR. FARRELL:  Objection to form,

24          foundation, beyond the scope of the

25          notice.



Page 31

1                    THE WITNESS:  Again, I'm not a

2          lawyer.  I hear a sentence, and it

3          could mean a lot of things.  I

4          understand that it was my role to

5          prepare for this deposition and these

6          deposition topics using the

7          information available to me through

8          counsel and through BASF.

9    BY MR. PLACITELLA:

10         Q.   Does -- do you understand that --

11   or do you recognize that facts known to BASF

12   are required to respond in this case or to

13   be provided by BASF and not its lawyers?

14                    Do you know that?

15                    MR. FARRELL:  Objection to form,

16         foundation, beyond the scope of the

17         notice, calls for a legal conclusion.

18   BY MR. PLACITELLA:

19         Q.   Sir, let me phrase it a different

20   way.

21                    You understand this is not a

22   deposition of BASF's lawyers; correct?

23                    MR. FARRELL:  Same objections.

24                    THE WITNESS:  I'm truly not

25         trying to be difficult here.  I



Page 32

1        understand.

2    BY MR. PLACITELLA:

3        Q.   It sounds that way, but that's

4    okay.

5        A.   I'll truly not --

6             MR. FARRELL:  Objection.

7    BY MR. PLACITELLA:

8        Q.   Somebody else will decide that at

9    another point in time.  Let me ask you a

10   question.

11            MR. FARRELL:  Excuse me.

12            MR. PLACITELLA:  I withdraw the

13        last question.

14            MR. FARRELL:  It was

15        argumentative.

16            MR. PLACITELLA:  I withdraw the

17        last question.

18            MR. FARRELL:  It wasn't a

19        question.  It was argument.

20            MR. PLACITELLA:  Mr. Steinmetz --

21            MR. FARRELL:  Great.

22            Court reporter, could you also

23        track the number of times that

24        Mr. Placitella asks questions that are

25        beyond the scope of the notice and



Page 33

```
 1              argumentative.  Thank you.
 2     BY MR. PLACITELLA:
 3          Q.   You understand that you're here
 4     to provide information about what is known
 5     to BASF, not its lawyers; correct?
 6              MR. FARRELL:  Objection to form,
 7          foundation, beyond the scope of the
 8          notice, calls for a legal conclusion.
 9              THE WITNESS:  Again, I'm not a
10          lawyer.  I understand that I'm here to
11          testify regarding information that
12          BASF knows.  But much of what BASF
13          knows also comes through preparation
14          with the counsel that I've worked
15          with.
16     BY MR. PLACITELLA:
17          Q.   So what you're going to testify
18     to comes from the lawyers and not from BASF
19     itself?
20              MR. FARRELL:  Objection to --
21     BY MR. PLACITELLA:
22          Q.   Is that what you're saying?
23              MR. FARRELL:  Objection to form,
24          foundation, misstates his testimony.
25              THE WITNESS:  No.
```



Page 34

```
 1    BY MR. PLACITELLA:
 2        Q.   Okay.  So as you sit here today,
 3    you understand that the information that
 4    you're to be provided comes exclusively from
 5    BASF and not its lawyers; right?
 6             MR. FARRELL:  Objection to form,
 7        foundation.
 8             THE WITNESS:  I understand that
 9        the information comes from BASF.  I
10        was prepared by lawyers.
11    BY MR. PLACITELLA:
12        Q.   Okay.  That's fair.
13             You understand that lawyers
14    representing BASF rely upon facts that are
15    provided by the client -- that is, BASF;
16    correct?
17             MR. FARRELL:  Objection to form,
18        foundation, beyond the scope of the
19        notice.
20             THE WITNESS:  I'm sorry.  Could
21        you repeat that.
22    BY MR. PLACITELLA:
23        Q.   The lawyers, when they're
24    responding to discovery or making
25    statements, you understand that that
```



1    information comes from the client; correct?

2            MR. FARRELL:  Objection to form,

3        foundation.

4            THE WITNESS:  I understand that a

5        lot of the information -- that the

6        original information comes from the

7        client.  But obviously, when a client

8        hires a law firm to litigate for it,

9        it depends on that, on that law firm

10       to do a lot of the day-to-day

11       activities -- prepare documents, send

12       documents out -- and not necessarily

13       everything is coming directly from

14       BASF, for example.

15   BY MR. PLACITELLA:

16       Q.   Okay.  I'm not talking about the

17   physical paper that's sent out in a case.

18   I'm saying the factual basis for a defense

19   comes from the client, not the lawyers;

20   correct?

21           MR. FARRELL:  Objection to form,

22       foundation, beyond the scope of the

23       notice.

24           THE WITNESS:  Again, I agree that

25       the factual basis are the facts.  The



1          original information would come from

2          the company.  But the -- a lot of the

3          analysis and analytical work would

4          come from the law firm that you've

5          hired.

6     BY MR. PLACITELLA:

7          Q.   Okay.  You understand that it's

8     your company's obligation to ensure that the

9     representations that are made by the lawyers

10    on behalf of the company are accurate,

11    truthful, and not misleading; correct?

12         MR. FARRELL:  Objection to form,

13         foundation.

14         THE WITNESS:  Again, I don't

15         understand the legalities of

16         client/attorney relationships.  I know

17         that companies hire and retain counsel

18         to represent them appropriately.  And

19         the company has to be comfortable that

20         it's been done in the way that you

21         mentioned.

22    BY MR. PLACITELLA:

23         Q.   So you agree with me that it,

24    it's the company's responsibility ultimately

25    to make sure that the information that's



Page 37

1   used in a lawsuit by its lawyers is

2   accurate, truthful, and not misleading;

3   correct?

4          MR. FARRELL:  Objection to form,

5      foundation.

6          THE WITNESS:  It may be the

7      responsibility.  I'm not a lawyer, and

8      I just don't know the legalities of

9      it.

10  BY MR. PLACITELLA:

11      Q.   Okay.  Does BASF recognize that

12  the lawyers that are representing it in the

13  talc litigation are, in fact, your agents,

14  BASF agents?

15         MR. FARRELL:  Objection to form,

16     foundation, beyond the scope of the

17     notice.

18         THE WITNESS:  I'm sorry.  Again,

19     I'm not trying to be difficult.  I

20     don't know the legal definition of

21     "agent," so I don't know.

22  BY MR. PLACITELLA:

23      Q.   They're working for you; correct?

24         MR. FARRELL:  Same objections.

25         THE WITNESS:  They are working



Page 38

```
 1          for BASF.  I don't know if they're

 2          agents.  I don't know what the, what

 3          the legal ramifications of that are.

 4   BY MR. PLACITELLA:

 5          Q.   So, for example, Mr. Farrell in

 6   essence works for you because you are the

 7   company; correct?

 8               MR. FARRELL:  Objection to form

 9          and foundation.

10               THE WITNESS:  That may be true.

11          I don't know.  I, I don't know.

12   BY MR. PLACITELLA:

13          Q.   Well, he's -- you're working for

14   him?

15               MR. FARRELL:  Objection to

16          form --

17   BY MR. PLACITELLA:

18          Q.   I'm trying to understand that.

19               MR. FARRELL:  Objection to form,

20          foundation, beyond the scope of the

21          notice, argumentative.

22               THE WITNESS:  No, I don't think

23          he works for me -- I don't, I don't

24          think I work for him.  I just don't

25          know the legal definition of, of the
```



```
 1        relationship.  So I just -- I'm not

 2        qualified to talk about this.

 3   BY MR. PLACITELLA:

 4        Q.   So as the representative for BASF

 5   to answer questions on its behalf, you do

 6   not know whether the lawyers are working for

 7   the company?

 8             MR. FARRELL:  Objection to form,

 9        foundation, beyond the scope of the

10        notice.  Kirkland and Ellis'

11        relationship with BASF is not a

12        subject for testimony today,

13        Mr. Placitella.

14             Do you have any questions, now

15        that we're 30 minutes in and you

16        haven't yet asked a question within

17        the scope of your notice?  Do you have

18        a question that's actually covered by

19        your notice?

20             MR. PLACITELLA:  Can you read my

21        question back, please.

22             (The court reporter read back as

23   follows:

24             "Q   So as the

25        representative for BASF to answer
```



Page 40

1          questions on its behalf, you do not

2          know whether the lawyers are working

3          for the company?")

4               MR. FARRELL:  Same objections.

5     BY MR. PLACITELLA:

6          Q.   You can answer it.

7          A.   So I'll say it again.  I'm not a

8     lawyer.  I didn't prepare for answering

9     questions like this.  In the, in the, in a

10    very -- in a layperson's sense, yes, the,

11    the, the law firm that the client hires does

12    work for them.  I don't know the legal, the

13    legal definitions or the legal ramifications

14    of what that relationship is.

15         Q.   And you depend on your lawyers,

16    historically, to provide accurate, truthful,

17    and not misleading information when giving

18    information in a lawsuit; correct?

19              MR. FARRELL:  Objection to form,

20         foundation.

21              THE WITNESS:  Again, from a

22         nonlawyer perspective, I, I'm not

23         qualified to make legal arguments here

24         or legal statements.  But I think that

25         would be a reasonable thing to



Page 41

```
 1        expect --
 2   BY MR. PLACITELLA:
 3        Q.    Okay.
 4        A.    -- of anything that works for
 5   you.
 6        Q.    Okay.  Can you tell me what
 7   documents specifically you reviewed in
 8   preparation for today's deposition?
 9        A.    I reviewed a large number.  I
10   reviewed a lot of the depositions from, from
11   this case, depositions from both Engelhard
12   employees or past employees as well as
13   Cahill employees or past employees.
14             I looked at documents involving
15   some of the plaintiffs in this case and
16   their past cases.
17             I reviewed -- or should say that
18   I was given a demonstration of the Cahill
19   databases, the Access databases that were
20   used to track some of the cases that they
21   were handling for Engelhard.
22        Q.    When did you get the
23   demonstration of the Cahill databases?
24             MR. FARRELL:  Objection to form.
25             Go ahead, sir.
```



Page 42

```
 1              THE WITNESS:  I'm trying to
 2         remember if that was yesterday or late
 3         last week.  It was, it was within the
 4         last week.  I'm -- I've been doing a
 5         lot, so I just can't remember exactly
 6         when I saw it.  I believe it was last
 7         week that I saw it.
 8    BY MR. PLACITELLA:
 9         Q.   Okay.  And who gave that
10    demonstration?
11         A.   That was given by Elizabeth
12    Dalmut.
13         Q.   And why did you ask for -- have
14    that demonstration done?
15         A.   Because I knew it was included
16    in -- the information surrounding that was
17    included in one of the topics of the
18    deposition notice, and I wanted to see how
19    it worked and what it, what it looked like.
20         Q.   And what were you able to see?
21    What were you able to find out?
22              MR. FARRELL:  Objection to form.
23              THE WITNESS:  Again, I didn't do
24         it myself.  But Elizabeth went through
25         it and generated some reports from the
```



Page 43

1          information and tables that are

2          included in that.

3    BY MR. PLACITELLA:

4          Q.   And what kind of reports?

5          A.   Summary reports regarding

6    litigation that was handled by Cahill for

7    Engelhard.  And it listed -- that included

8    columns showing different pieces of

9    information related to the, to each of those

10   lawsuits.

11         Q.   And you looked at that in

12   preparation for today?

13         A.   Yes.  I looked at them to get an

14   idea of what the database looked like.  I

15   didn't use it specifically to pull out

16   specific information but just to get a

17   general idea of what the database looks like

18   and how it works.

19         Q.   Well, did you look at hard copy

20   of reports?

21         A.   No.

22         Q.   So you looked at it on the screen

23   only?

24         A.   Yes.

25         Q.   Okay.  And if you were asked



1    today, you could actually show me what you

2    looked at if you had the database in front

3    of you?

4              MR. FARRELL:  Objection to form.

5              THE WITNESS:  I last used Access

6         about 15 years ago.  I wasn't very

7         good at it then.  I probably -- if

8         Elizabeth did it, I could look at it,

9         but I couldn't do it myself.

10   BY MR. PLACITELLA:

11        Q.   So what information did you see?

12   What kind of reports?  What was the

13   information that was extracted?

14             MR. FARRELL:  Objection to form.

15             THE WITNESS:  It was information

16        that included, for example, in

17        the first column the name of a case.

18        And, and then several columns to the

19        right of that that included

20        information regarding the reason for

21        resolution, the claim, what the

22        material was that was being claimed

23        as, as, as being harmful, information

24        on personnel, names of people -- those

25        kinds of things.  I don't remember



Page 45

```
 1        much more.

 2   BY MR. PLACITELLA:

 3        Q.   Did you ever see anything that

 4   had the name of the plaintiff and the injury

 5   that was alleged?

 6        A.   I, I -- you know, I believe it

 7   was there but I can't remember it

 8   specifically.

 9        Q.   Okay.

10        A.   I should also note that a lot of

11   the cells in the report are blank because it

12   wasn't uniformly filled out and not

13   everything was in there.

14        Q.   Did you look at any of the --

15   well, scratch that.

16             So you also saw reports that had

17   the plaintiff's name and the reason for the,

18   whatever happened to the case?

19             MR. FARRELL:  Objection to form

20        and foundation.

21             THE WITNESS:  I believe that may

22        have been there.  Again, it was -- I

23        think it was last week.  I wasn't

24        looking at it for specific details

25        like that.  I was just trying to get a
```



Page 46

```
 1         big-picture view of it.  And as I

 2         mentioned, much of the database was

 3         incomplete.

 4    BY MR. PLACITELLA:

 5         Q.   Okay.  So you said you looked at

 6    depositions taken in this case.  Did you

 7    look at all of them?

 8         A.   I don't think I've looked at

 9    everything.  I've looked at -- to my

10    understanding, I've looked at the

11    depositions from BASF and Cahill personnel.

12         Q.   Okay.  And did you look at any

13    other documents besides depositions and the

14    database?

15         A.   I looked at a few examples of

16    interrogatories that I believe you've used

17    as exhibits.  I may have looked at some

18    depositions from other cases that were

19    involved in this litigation.

20         Q.   Which depositions?

21         A.   Partial depositions from some of

22    the plaintiffs -- for example, Kimberlee

23    Williams and Gale Williams, maybe Jennifer

24    Graham, Danette Wenger and some of those

25    people; but not the entire depositions.
```



Page 47

1          Q.    Okay.  Did you speak with anybody
2    other than counsel in preparation for
3    today's deposition?
4          A.    No.
5          Q.    Did you ask to speak to
6    Mr. Halket?
7          A.    No.
8          Q.    Why not?
9          A.    I didn't think I needed to.
10         Q.    Didn't you list him as people
11   with knowledge in certifying answers to
12   interrogatories in this case?
13              MR. FARRELL:  Objection to form
14         and foundation.
15              THE WITNESS:  I didn't see a need
16         to talk to him.
17   BY MR. PLACITELLA:
18         Q.    Do you know what he knows?
19         A.    I can't put myself in his mind,
20   so I don't know what he knows.
21         Q.    Why did you list him as somebody
22   with pertinent knowledge and not speak with
23   him?
24              MR. FARRELL:  Objection to form,
25         foundation, beyond the scope of the



Page 48

```
 1        notice.
 2              THE WITNESS:  I didn't think it
 3        was necessary.
 4   BY MR. PLACITELLA:
 5        Q.   Why?
 6        A.   I just didn't.
 7              MR. FARRELL:  Same objections.
 8   BY MR. PLACITELLA:
 9        Q.   Why?
10        A.   No specific reason.  I just felt
11   that I could get the information I needed
12   from the documents that counsel could supply
13   me.
14        Q.   Well, you knew, you knew he
15   worked for Engelhard and he was alive and
16   accessible.  Did you ask to speak with him?
17              MR. FARRELL:  Objection to form,
18        foundation.
19              THE WITNESS:  No.
20   BY MR. PLACITELLA:
21        Q.   Did you speak with Mr. Dornbusch?
22        A.   No.
23        Q.   Did you speak with Lester
24   Fliegel?
25        A.   No.
```



Page 49

1          Q.   You listed him as somebody with

2     knowledge in answer to interrogatories.   Why

3     didn't you speak with him?

4               MR. FARRELL:   Objection to form

5          and foundation.

6               THE WITNESS:   I guess I felt --

7          again, I was getting the information I

8          needed from counsel.   I knew you

9          didn't depose him.   So I didn't feel

10         it was necessary.

11    BY MR. PLACITELLA:

12         Q.   So if I didn't depose him, then

13    he didn't know anything?   Is that what you

14    concluded?

15              MR. FARRELL:   Objection to form,

16         foundation, argumentative.

17              THE WITNESS:   No.   I just felt

18         that I could get the information I

19         needed from counsel and prepare for

20         this --

21    BY MR. PLACITELLA:

22         Q.   And counsel told you all about

23    what Mr. Fliegel knows or doesn't know?

24              MR. FARRELL:   Objection to form,

25         foundation.



1           THE WITNESS:  No.  Counsel, I

2       think, prepared me pretty well,

3       considering the time constraints, for

4       the questions that are in the

5       deposition.

6   BY MR. PLACITELLA:

7       Q.   Well, you've listed these

8   people -- Mr. Halket, Mr. Fliegel -- as

9   people with knowledge in this case for more

10  than a year.  But you never spoke to them to

11  find out what they know as part of your

12  obligation to be prepared to answer

13  questions today?

14          MR. FARRELL:  Objection to form,

15      foundation, beyond the scope of the

16      notice.

17          THE WITNESS:  Again, I felt

18      counsel could prepare me.  I knew that

19      you didn't depose them.  So you could

20      have also talked to them, and you

21      decided it wasn't worth it.  And the

22      information I would have gotten from

23      them would have been secondhand for

24      you anyway.

25          So I guess I felt comfortable



Page 51

```
 1          that I could prepare for these
 2          questions with counsel.
 3     BY MR. PLACITELLA:
 4          Q.   So you don't think you have an
 5     obligation as a corporate witness in
 6     informing yourself to speak to former
 7     employees that you have access to, to see
 8     what they know?
 9              MR. FARRELL:  Objection to form,
10          foundation.
11              THE WITNESS:  I'm very
12          comfortable that counsel can prepare
13          me for these depositions.
14     BY MR. PLACITELLA:
15          Q.   Okay.  You listed Mr. Fliegel as
16     somebody with knowledge.  What did he know?
17              MR. FARRELL:  Objection to form,
18          foundation, beyond the scope of the
19          notice, also calls for privileged
20          information.
21              Mr. Steinmetz, you don't need to
22          answer that question.
23     BY MR. PLACITELLA:
24          Q.   What factual information did
25     Mr. Fliegel have that, that required you to
```



Page 52

1    list him as somebody with knowledge in your

2    answers to interrogatories in this case?

3              MR. FARRELL:  Same objections,

4         calls for privileged information.

5              Mr. Steinmetz, you don't need to

6         answer the question.

7    BY MR. PLACITELLA:

8         Q.   Who's Mr. Peters?

9         A.   Mr. Peters, I believe, was a, I

10   believe he was an attorney with Engelhard.

11        Q.   Okay.  And what, what -- do you

12   know what he knows about this case?

13             MR. FARRELL:  Objection to form,

14        foundation, beyond the scope of the

15        notice.

16             THE WITNESS:  I didn't speak to

17        him.

18   BY MR. PLACITELLA:

19        Q.   So you have no idea what he knows

20   or does not know?

21        A.   I don't know.

22        Q.   But you certified interrogatories

23   listing him as somebody with knowledge?

24             MR. FARRELL:  Objection --

25   BY MR. PLACITELLA:



Page 53

1       Q.    Correct?

2             MR. FARRELL:  Objection to form,

3       foundation, and beyond the scope of

4       the notice.

5             Do you have a document you want

6       to show him that you're referring to?

7             MR. PLACITELLA:  Is that a form

8       objection?  If not, I'd ask you to

9       keep your comments to yourself

10      today --

11            MR. FARRELL:  They're not

12      comments.

13            MR. PLACITELLA:  -- okay?

14            Sir --

15            MR. FARRELL:  Excuse me.  Excuse

16      me.  You made a statement.  I would

17      like to respond to it.  I asserted --

18            MR. PLACITELLA:  You're not the

19      one answering the question.

20            MR. FARRELL:  I asserted a proper

21      objection.  You're referring to a

22      document that you claim that the

23      witness verified, and you're making a

24      statement that it said something.

25            I've asked whether you can hand



Page 54

```
 1          the witness a copy of the document
 2          that you've made reference to, as
 3          would be appropriate in a deposition
 4          such as this.
 5     BY MR. PLACITELLA:
 6          Q.   Okay.  I want to show you what's
 7     been marked Exhibit 63.
 8               MR. FARRELL:  Can I have a copy,
 9          please.
10               MR. BOISE:  Chris, if you don't
11          have another copy, can you just
12          identify it.
13               MR. PLACITELLA:  Yeah, I will.
14               (A document previously marked as
15     Exhibit 63 was introduced.)
16     BY MR. PLACITELLA:
17          Q.   Exhibit 63 -- which I'll put up
18     on the screen so everyone can see it -- are
19     answers of BASF Catalysts to interrogatories
20     propounded by plaintiffs in this case.  Do
21     you see that?
22          A.   Yes.
23          Q.   Okay.  And you certified these
24     answers; correct?
25          A.   Yes.
```



1          Q.    Okay.  And if you go to

2     interrogatory number 3, you list certain

3     people; correct?

4          A.    Yes.

5          Q.    You list Arthur Dornbusch,

6     correct --

7          A.    Yes.

8          Q.    -- as somebody with knowledge;

9     correct?

10               MR. FARRELL:  One moment.

11               Objection to form, foundation,

12          misstates the interrogatory and the

13          interrogatory response.

14     BY MR. PLACITELLA:

15          Q.    You list Arthur Dornbusch;

16     correct?

17          A.    I'm sorry.  Could you repeat the

18     question again.

19          Q.    You -- in this answer you list

20     Arthur Dornbusch; correct?

21          A.    He is listed in the response to

22     interrogatory 3, yes.

23          Q.    But you did not speak to him?

24               MR. FARRELL:  Objection to

25          form --



Page 56

1    BY MR. PLACITELLA:

2         Q.   And you did not ask to speak to

3    him; correct?

4              MR. FARRELL:  Objection to form,

5         foundation, misstates Mr. Steinmetz's

6         testimony.

7              THE WITNESS:  I did not speak to

8         him.  But he has provided a great deal

9         of testimony in this case.

10   BY MR. PLACITELLA:

11        Q.   Okay.  You did not speak with him

12   nor ask to speak with him; correct?

13             MR. FARRELL:  Objection to form,

14        foundation, asked and answered.

15             THE WITNESS:  I did not.

16   BY MR. PLACITELLA:

17        Q.   Okay.  You list Mr. Halket.  You

18   did not speak with him nor ask to speak with

19   him; correct?

20             MR. FARRELL:  Objection to form,

21        foundation, asked and answered.

22             THE WITNESS:  That's correct.

23   BY MR. PLACITELLA:

24        Q.   Okay.  You list Mr. Peters.  You

25   did not speak with him nor ask to speak with



Page 57

1    him; correct?

2              MR. FARRELL:  Objection to form,

3         foundation, asked and answered.

4              THE WITNESS:  That's correct.

5    BY MR. PLACITELLA:

6         Q.   You list Michael Hassett.  You

7    did not speak with him or ask to speak with

8    him; correct?

9              MR. FARRELL:  Objection to form

10        and foundation.

11             THE WITNESS:  That's correct.

12   BY MR. PLACITELLA:

13        Q.   You list Jonathan Greenberg.  You

14   did not speak with him or ask to speak with

15   him; correct?

16             MR. FARRELL:  Same objections.

17             THE WITNESS:  Not regarding this

18        case; that's correct.

19   BY MR. PLACITELLA:

20        Q.   You are aware that Dr. Glenn

21   Hemstock is alive.  Do you know who he is?

22        A.   I do.

23        Q.   And you're aware he's alive?

24        A.   Yes.

25        Q.   Did you ask to speak with him?



Page 58

```
 1                    MR. FARRELL:  Object to the form.
 2                    THE WITNESS:  No.
 3        BY MR. PLACITELLA:
 4             Q.    You understand that he was head
 5        of research and development?
 6             A.    I understand that.  And he's
 7        provided a lot of deposition testimony over
 8        the last few years; yes.
 9             Q.    And one of the topics that you
10        are here to talk about today was the
11        transfer of information related to research
12        and development; correct?
13                    MR. FARRELL:  Objection to form,
14               foundation, misstates the notice.
15                    THE WITNESS:  I'd have to look at
16               the notice if that's a specific part
17               of the question.  I -- so I'd have to
18               look at detail on the -- in the
19               notice.
20        BY MR. PLACITELLA:
21             Q.    And how long have you been
22        serving as a corporate representative for
23        BASF?
24             A.    This is the third year I've been
25        doing it, I believe.
```



Page 59

1       Q.   In any of the three years did you
2   ever speak with Dr. Hemstock?
3       A.   No.
4       Q.   Did you ever ask to speak with
5   Dr. Hemstock?
6       A.   No.
7       Q.   Have you ever been prevented from
8   speaking to Dr. Hemstock?
9       A.   No.
10       Q.   Do you know who Peter Gale is?
11       A.   Yes.
12       Q.   And who is he?
13       A.   He was a scientist that worked
14   for -- or who worked for BASF -- or for
15   Engelhard; I'm sorry.
16       Q.   And you know he's alive?
17       A.   Yes.
18       Q.   And have you ever asked to speak
19   with him?
20       A.   No.
21       Q.   Have you ever spoken with him?
22       A.   No.
23       Q.   Okay.  Do you know who Charles
24   Carter is?
25       A.   I know who Charles Carter is,



Page 60

```
 1   yes.

 2        Q.   You actually answered

 3   interrogatories referencing Charles Carter;

 4   correct?

 5        A.   Yes.

 6        Q.   Did you speak to Charles Carter

 7   in preparation for your deposition?

 8        A.   No; but he has provided testimony

 9   in this case.

10        Q.   Did you ask to speak to Charles

11   Carter?

12        A.   No.

13        Q.   Okay.  Was there anything that

14   was not in his deposition that you would

15   want to know from Charles Carter?

16             MR. FARRELL:  Objection to form,

17        foundation, calls for speculation.

18             THE WITNESS:  Not that I know of.

19        I think that everything I could

20        possibly tell about Charles Carter,

21        he's already talked about in his own

22        words.

23   BY MR. PLACITELLA:

24        Q.   Okay.  You under -- you also list

25   in interrogatory answers Craig Stoneback.
```



Page 61

1    Do you know who he is?

2         A.    Yes.

3         Q.    And who is he?

4         A.    I believe he was also a person

5    who acted as a, as the person verifying

6    documents.

7         Q.    Okay.  And he's alive, isn't he?

8         A.    I don't know.

9         Q.    Okay.  Did you ask to speak with

10   him?

11        A.    No.

12        Q.    So in preparation for this

13   deposition, just to be clear, you didn't ask

14   to speak to a single person who would have

15   personal knowledge of what went on in the

16   Emtal talc litigation before you were paid

17   as a consultant to testify on behalf of

18   BASF; correct?

19             MR. FARRELL:  Objection to form,

20        foundation, misstates Mr. Steinmetz's

21        testimony.

22             THE WITNESS:  Again, I didn't

23        speak to the people that, that you've

24        mentioned; but a large number of them

25        have already provided a lot of



Page 62

```
 1            information in their own words through
 2            depositions.
 3       Q.   Did you speak to any person with
 4   personal knowledge concerning the facts and
 5   circumstances of the Emtal talc litigation
 6   that you're here to testify about?
 7            MR. FARRELL:  Same objections,
 8        asked and answered.
 9            THE WITNESS:  I did not speak to
10        any of the people from Engelhard or
11        Cahill.
12   BY MR. PLACITELLA:
13       Q.   Anybody, I'm asking.
14       A.   No.
15       Q.   Did you ask to speak to any of
16   them and have permission refused?
17            MR. FARRELL:  Same objections,
18        asked and answered.
19            THE WITNESS:  No.
20   BY MR. PLACITELLA:
21       Q.   How many times have you testified
22   as a corporate witness for BASF in the talc
23   litigation?
24       A.   I believe it's five or six times
25   now.  I, I'd have to think about it, but I
```



Page 63

```
 1   think it's about that.
 2        Q.   Okay.  And other than the
 3   deposition questions I asked you -- which
 4   I'm sure you don't want to remember -- what
 5   other subject matters did you cover as a
 6   corporate witness?
 7        A.   I think, I think that's generally
 8   it.  I've -- most of the testimony I've
 9   given has been regarding documents and where
10   they came from, how they were stored, those
11   types of things.
12        Q.   Do you recall testifying in the
13   Fields case?
14        A.   Yes.
15        Q.   Do you recall that you were asked
16   questions about the testing documents that
17   you reviewed?
18        A.   Yes.
19        Q.   Okay.  Do you recall that you
20   were asked questions about what was in the
21   Ashton affidavit?
22        A.   I have been asked questions about
23   the Ashton affidavit, yes.
24        Q.   And, in fact, you reviewed the
25   Ashton affidavit in preparation for your
```



Page 64

1    various testimonies?

2         A.   I have.  I didn't read it in a

3    lot of detail this time, but I have read it

4    before; yes.

5         Q.   Okay.  Now, you have previously

6    certified discovery responses concerning

7    what information was in the Cahill database;

8    correct?

9              MR. FARRELL:  Objection to form.

10             THE WITNESS:  I'm not sure I

11        have -- I'm sorry.  What was the

12        question again?

13   BY MR. PLACITELLA:

14        Q.   You have previously certified

15   discovery responses on behalf of BASF

16   concerning what information was in the

17   Cahill database; correct?

18             MR. FARRELL:  Objection to form.

19             THE WITNESS:  Yes.  I haven't, I

20        haven't testified regarding it before.

21   BY MR. PLACITELLA:

22        Q.   I'm just asking what you

23   certified.

24             You have certified discovery

25   responses concerning information that was in



Page 65

1   possession of other lawyers concerning the

2   talc litigation; correct?

3           MR. FARRELL:  Objection to form,

4       foundation.

5           THE WITNESS:  And by "other

6       lawyers," I'm not sure who you're

7       referring to.

8   BY MR. PLACITELLA:

9       Q.   Well, they're your words, "other

10  lawyers."

11      A.   I --

12          MR. FARRELL:  Objection to form

13      and foundation.

14          THE WITNESS:  I believe I'd have

15      to look at -- I'd have to look at the

16      discovery again to, to confirm that.

17  BY MR. PLACITELLA:

18      Q.   You have certified interrogatory

19  answers that discuss injury prevalence rates

20  for the various people who sued Engelhard

21  and BASF; correct?

22          MR. FARRELL:  Objection to form,

23      foundation.

24          THE WITNESS:  Again, I'd have to

25      see the specific document that you're



Page 66

```
 1          talking about.  I don't remember
 2          talking about injury prevalence rates.
 3          They might be there; I just don't
 4          remember it in those terms.
 5     BY MR. PLACITELLA:
 6          Q.   You have certified interrogatory
 7     answers concerning the reasons why people
 8     chose to settle or dismiss their cases
 9     against Engelhard; correct?
10              MR. FARRELL:  Objection to form
11          and foundation.
12              THE WITNESS:  I think in the
13          context of how difficult it is to look
14          at all of these cases in one bucket
15          because they're all so different from
16          each other; but yes.
17     BY MR. PLACITELLA:
18          Q.   Okay.  You have certified
19     interrogatory answers concerning the amounts
20     people pay -- were paid in settlements in
21     the Emtal talc litigation; correct?
22              MR. FARRELL:  Objection to form
23          and foundation.
24              THE WITNESS:  There may have been
25          references in some of our responses to
```



Page 67

```
 1          that.  But I don't have a lot of
 2          information and there's not a lot of
 3          information available right now
 4          regarding that kind of information --
 5          regarding that kind of data.
 6     BY MR. PLACITELLA:
 7          Q.   So the answer to my question is
 8     yes?
 9               MR. FARRELL:  Objection to form,
10          foundation, asked and answered,
11          argumentative.
12               THE WITNESS:  If you could repeat
13          the question again --
14     BY MR. PLACITELLA:
15          Q.   Yes.
16          A.   -- I'll answer it.
17          Q.   You have certified discovery
18     responses considering the amount of money
19     people were paid in settlements in the talc
20     litigation?
21               MR. FARRELL:  Objection to form,
22          foundation, asked and answered.
23               THE WITNESS:  We have referred to
24          that -- or I have referred to that
25          topic.  But I don't know that I can
```



Page 68

```
1          give you a lot of specific information
2          on it.
3   BY MR. PLACITELLA:
4          Q.   So the answer is yes?
5               MR. FARRELL:  Same objections,
6          argumentative, asked and answered.
7               THE WITNESS:  Again, I'd have to
8          see the specific wording that we used.
9          I don't disagree with you.  I just
10         don't know.
11  BY MR. PLACITELLA:
12         Q.   Okay.  You have certified
13  interrogatory or discovery responses
14  concerning how members of the class in this
15  case were exposed or not exposed to Emtal
16  talc; correct?
17              MR. FARRELL:  Objection to form,
18         foundation.
19              THE WITNESS:  Again, I'm not sure
20         whether it's a class or not at this
21         point.  I don't know --
22  BY MR. PLACITELLA:
23         Q.   Fair enough.
24         A.   -- what the definition is.
25              But we have talked about those
```



Page 69

1    types of issues in, in responses.

2          Q.   Okay.  You have certified

3    discovery responses concerning the defense

4    that was asserted by Engelhard and BASF

5    using the Ashton affidavit; correct?

6                MR. FARRELL:  Objection to form,

7          foundation.

8                THE WITNESS:  We've responded to

9          questions about the defense used by

10         Cahill, not just in terms of the

11         Ashton affidavit but of other

12         strategies that were used.

13   BY MR. PLACITELLA:

14         Q.   So the answer to my question is

15   yes?

16               MR. FARRELL:  Objection to form,

17         foundation, argumentative.

18               THE WITNESS:  Yes.  Among other

19         things; yes.

20   BY MR. PLACITELLA:

21         Q.   Okay.  You have certified

22   discovery responses concerning who the

23   Ashton affidavit was served on and why;

24   correct?

25               MR. FARRELL:  Objection to form,



Page 70

```
 1            foundation, misstates the record.
 2                 THE WITNESS:  I'm not sure what
 3            the term "served on" means in a legal
 4            sense.
 5   BY MR. PLACITELLA:
 6        Q.   Who was sent copies of the Ashton
 7   affidavit and why they were sent it.
 8                 MR. FARRELL:  Objection to form,
 9            foundation, misstates the record.
10                 THE WITNESS:  Could you repeat
11            the question.
12   BY MR. PLACITELLA:
13        Q.   You certified interrogatory
14   responses on the subject of who was sent the
15   Ashton affidavit and why; correct?
16                 MR. FARRELL:  Objection to form,
17            foundation, misstates the record.
18                 THE WITNESS:  I'd have to look at
19            the question that we answered again to
20            see if that's completely accurate.  I,
21            I know we have answered questions
22            regarding that subject.  I just don't
23            know if, if it would be characterized
24            the same way as you did.
25   BY MR. PLACITELLA:
```



Page 71

1        Q.    Okay.  You have responded to

2    interrogatory answers concerning the Carter

3    affidavit, what was said in the affidavits,

4    and who they were sent to; correct?

5             MR. FARRELL:  Objection to form,

6        foundation.

7             Which topics in your notice do

8        these questions relate to,

9        Mr. Placitella?

10   BY MR. PLACITELLA:

11       Q.    Can you answer my question,

12   please.

13            MR. FARRELL:  Can you tell me

14       which topic in your notes these

15       questions related to?

16   BY MR. PLACITELLA:

17       Q.    Can you answer my question,

18   please.

19            MR. PLACITELLA:  I'm not

20       answering your questions here.  So you

21       can keep doing it.  I'm not answering

22       your questions today.

23            Can you read my question back.

24   BY MR. PLACITELLA:

25       Q.    And can you please answer it.



Page 72

```
 1              MR. FARRELL:  Then please let the
 2         record reflect that the last ten
 3         minutes of questions have been beyond
 4         the scope of the notice, have nothing
 5         to do with the notice.  The witness is
 6         doing his best to answer these
 7         questions, being asked about documents
 8         that haven't been shown to the
 9         witness, that he hasn't prepared to
10         answer; and that I'm allowing the
11         witness to answer the questions,
12         notwithstanding the fact that they're
13         beyond the scope of the notice and
14         Mr. Placitella is not showing the
15         witness copies of documents that he's
16         referring to.
17              Go ahead, Mr. Steinmetz.
18              THE WITNESS:  If I could see the
19         document, I could answer that a lot
20         better.
21    BY MR. PLACITELLA:
22         Q.  Sir, all I'm asking you:  Do you
23    recall answering interrogatories concerning
24    what was in the Carter affidavit and who it
25    was sent to?
```



Page 73

1           MR. FARRELL:  Same objections.

2           THE WITNESS:  I recall affidavit

3       questions regarding Carter.  I'd have

4       to look at the document to see if your

5       characterization is correct.

6   BY MR. PLACITELLA:

7       Q.   You have answered interrogatory

8   questions about why cases were dismissed in

9   the past against Engelhard involving talc

10  litigation without being paid a penny;

11  correct?

12          MR. FARRELL:  Objection to form,

13      foundation, misstates the report.

14          The witness has asked to see a

15      copy of the responses you're

16      referencing.  Can you provide them to

17      the witness.

18  BY MR. PLACITELLA:

19      Q.   You can answer my question, sir.

20          MR. FARRELL:  One moment,

21      Mr. Steinmetz.

22          The witness has asked for a copy

23      of the document about which you're

24      asking him questions.  Are you going

25      to provide him with a copy of the



1        document?

2             MR. PLACITELLA:  Could you read

3        my question back, please.

4             MR. FARRELL:  Is that a yes or a

5        no, Mr. Placitella?

6             MR. PLACITELLA:  Could you read

7        my question back, please.

8             (The court reporter read back as

9   follows:

10             "Q   You have answered

11        interrogatory questions about why

12        cases were dismissed in the past

13        against Engelhard involving talc

14        litigation without being paid a

15        penny; correct?")

16             MR. FARRELL:  One moment,

17        Mr. Steinmetz.

18             Let the record reflect, please,

19        that the witness has asked to see a

20        copy of the document about which

21        Mr. Placitella is asking questions and

22        plaintiff's counsel has refused to

23        provide a copy to the witness.

24             Objection to form and foundation.

25             Go ahead, Mr. Steinmetz.



```
 1            THE WITNESS:  So this is a good

 2        example of why I'm having trouble

 3        answering some of these questions and

 4        what I feel aren't good

 5        characterizations; because I know we

 6        have talked about those types of

 7        subjects, but I know I've never used

 8        the terms "without paying a penny,"

 9        for example.

10   BY MR. PLACITELLA:

11        Q.   Fair enough.

12        A.   So these are all

13   characterizations that you're, that you're

14   putting on the table and asking me to

15   answer, but I -- without the document in

16   front of me, I just don't know if your

17   characterization is the way it was intended

18   or the way it was written.

19        Q.   Sir, have you answered questions

20   about why people dismissed their cases

21   without getting paid any money --

22            MR. FARRELL:  Object --

23   BY MR. PLACITELLA:

24        Q.   -- when they were the talc case?

25            MR. FARRELL:  Objection to form,
```



Page 76

```
 1        foundation, still beyond the scope of
 2        the notice.
 3             THE WITNESS:  I think my answer's
 4        exactly the same.  Again, I never used
 5        the term "without being paid any
 6        money."  Again, it's characterization
 7        here; and whether the way you're
 8        saying it is the way it was answered
 9        or the way it was worded I don't know
10        because I don't have it in front of
11        me.
12   BY MR. PLACITELLA:
13        Q.   Do you recall answering questions
14   about people being -- dismissing cases
15   without payment?
16             MR. FARRELL:  Objection to form,
17        foundation, beyond the scope of the
18        notice, asked and answered.
19             The witness has asked to see a
20        copy of the document you're
21        referencing.
22             THE WITNESS:  The same answer.
23        We've talked about -- we've answered
24        questions regarding that topic.  I
25        don't know if the characterization is,
```



```
 1          is the same, is that same as we meant

 2          it because I don't have it in front of

 3          me.

 4   BY MR. PLACITELLA:

 5          Q.   Okay.  Have you provided

 6   interrogatories answers and certified them,

 7   concerning insurance information?

 8               MR. FARRELL:  Objection to form,

 9          foundation, beyond the scope of the

10          notice.

11               THE WITNESS:  I'd have to look at

12          them again.  We may have used the word

13          "insurance" before.  I know that I

14          don't have any insurance information,

15          so I couldn't have answered any

16          detailed questions regarding that.

17          Again, I'd have to see the document.

18   BY MR. PLACITELLA:

19          Q.   Okay.  Have you provided

20   discovery responses concerning who at

21   Engelhard was aware of the information that

22   was provided in the Westfall case?

23               MR. FARRELL:  Objection to form,

24          foundation, beyond the scope of the

25          notice.
```



Page 78

```
 1                 THE WITNESS:  Again, we have
 2          provided answers related to that
 3          topic.  Again, I don't know what
 4          you're characterizing, so I don't -- I
 5          just can't answer whether or not your
 6          characterization is correct.
 7     BY MR. PLACITELLA:
 8          Q.   I'm just asking a question, sir;
 9     okay?  If you remember, you do.  If you
10     don't, you don't; okay?
11                 Did you provide information in
12     answer to interrogatories concerning
13     Engelhard's document-retention policy?
14                 MR. FARRELL:  Objection to form,
15          foundation, beyond the scope of the
16          notice.
17                 THE WITNESS:  Again, we answered
18          questions or included
19          document-retention policy in some of
20          the answers that we've provided.  I
21          just don't know if it, if it's the --
22          if it -- if it's the same as the way
23          you're characterizing it.
24                 It's really hard to answer these
25          questions without it in front of me.
```



Page 79

1   BY MR. PLACITELLA:

2        Q.   In preparation for today's

3   deposition, did you go back and look at the

4   discovery responses that you certified in

5   this case?

6              MR. FARRELL:  Objection to form.

7              THE WITNESS:  Yes.

8   BY MR. PLACITELLA:

9        Q.   Okay.  So you know what's in

10  there.  When did you do that?

11             MR. FARRELL:  Objection to form,

12        argumentative.

13             THE WITNESS:  I've read them over

14        several times.  I didn't memorize

15        them.  And as I mentioned, you know,

16        just a couple questions back, the

17        example of some of the words that

18        you've used that mischaracterized, I

19        think, what our answers were and I

20        just -- again, without having it in

21        front of me, I don't know if you're

22        characterizing it the way we wrote it.

23        I didn't memorize it by, you know --

24  BY MR. PLACITELLA:

25        Q.   When's the last time you looked



Page 80

1    at your discovery responses that you

2    certified as true and accurate in these

3    cases?

4              MR. FARRELL:  Objection to form,

5         foundation, argumentative.

6              THE WITNESS:  I reviewed them

7         last week, two nights ago, and last

8         night.

9    BY MR. PLACITELLA:

10        Q.   Okay.  Do you recall that your

11   discovery responses included information

12   about the chronological listings of lawsuits

13   file against Engelhard and BASF?

14             MR. FARRELL:  Objection to form,

15        foundation, beyond the scope of the

16        notice.

17             THE WITNESS:  We did answer

18        questions regarding that.

19   BY MR. PLACITELLA:

20        Q.   Okay.  Did you answer questions

21   concerning what people -- who at Cahill and

22   BASF interacted with concerning document,

23   document destruction?

24             MR. FARRELL:  Same objections.

25             THE WITNESS:  Again, I'd have to



Page 81

1          look at the document.  I don't recall

2          that.  We may have.  I just don't

3          recall the specific words.

4    BY MR. PLACITELLA:

5          Q.   Do you recall certifying answers

6    to interrogatories under oath concerning how

7    document -- discovery responses were drafted

8    by Engelhard and BASF?

9          MR. FARRELL:  Objection to form,

10         foundation, beyond the scope of the

11         notice.

12         THE WITNESS:  Same answer.  We --

13         I don't disagree that we may have done

14         that.  I just don't recall those

15         specific words, and I don't have the

16         document in front of me.

17   BY MR. PLACITELLA:

18         Q.   Okay.  Do you recall providing

19   answers to interrogatories concerning what

20   information was provided to the Engelhard

21   board of directors concerning Emtal talc?

22         MR. FARRELL:  Objection to form,

23         foundation, beyond the scope of the

24         notice.

25         THE WITNESS:  The same answer.



Page 82

```
 1                I don't disagree that we have.  I
 2         don't have it in front of me, and I
 3         can't remember the exact words.
 4                MR. PLACITELLA:  Okay.  Do you
 5         want to take a couple minutes now?
 6                MR. FARRELL:  Sure.
 7                THE VIDEOGRAPHER:  The time is
 8         now 11:01 a.m.  We're going off the
 9         record.
10                (Recess.)
11                THE VIDEOGRAPHER:  The time is
12         now 11:15 a.m.  We are back on the
13         record.
14    BY MR. PLACITELLA:
15         Q.   Okay.  Ready to proceed?
16         A.   Yes.
17         Q.   Okay.  I want to focus my
18    questions at this point on the time period
19    1980 to 1987, that general timeframe; okay?
20         A.   Yes.
21         Q.   Okay.  Can you tell me what
22    general records were provided by Engelhard
23    to Cahill for review in connection with the
24    Emtal talc litigation?
25                MR. FARRELL:  Objection to form.
```



Page 83

```
 1              THE WITNESS:  That's a very broad
 2         question.  And, I mean, if you have
 3         specific cases you'd want to talk
 4         about or specific instances, it would
 5         be easier.  There were just several
 6         cases during that time period, and
 7         I --
 8  BY MR. PLACITELLA:
 9         Q.   I'm not focusing on any case.
10  I'm saying from the years 1980 to 1987, what
11  records related to the litigation in general
12  were transferred from Engelhard to Cahill
13  Gordon, if you know?
14              MR. FARRELL:  Objection to form.
15              THE WITNESS:  Again, it's a
16         really broad question.  I can give you
17         some examples of things I know.
18              I know, for example, that during
19         the 1980s, at the end of the Westfall
20         litigation, most of -- most or all of
21         the records were, or copies of the
22         records in the Westfall litigation
23         were returned to Engelhard.
24              MR. FARRELL:  Sorry.  Can I have
25         the question again?
```



Page 84

1            THE WITNESS:  I was -- yeah, I

2        was wondering if, if it was -- which

3        way you were talking about.

4   BY MR. PLACITELLA:

5        Q.   I'll try to be a little more

6   specific.  Let me start this way:  What is

7   your understanding of the first lawsuit

8   involving Emtal talc that was filed against

9   Engelhard?

10       A.   It was a case filed in 1979.  It

11  was the Westfall case.  And Engelhard wasn't

12  involved in that case until 1983.

13       Q.   1983.  And prior to 1983, were

14  any records concerning Emtal talc sent to

15  Cahill Gordon for review?

16            MR. FARRELL:  Objection to form.

17            THE WITNESS:  In late 1982, in

18        preparation for a subpoena that had

19        been received by Engelhard, Cahill was

20        hired to prepare information regarding

21        Emtal talc.  And so they were given

22        access to all records that Engelhard

23        had at the time regarding Emtal talc.

24  BY MR. PLACITELLA:

25       Q.   So sometime in 1982, in order to



Page 85

1    respond to a subpoena -- is that what you

2    said?

3         A.   Yes.  That's my understanding.

4         Q.   Okay.

5              -- Cahill Gordon was provided

6    access to all of the records related to

7    Emtal talc that were in possession of

8    Engelhard?  Is that, is that what you're

9    saying?

10             MR. FARRELL:  Objection to form.

11             THE WITNESS:  Yes.  And, and it

12        may have been all those that were

13        pertinent to the Emtal health record.

14        I -- or to the Emtal testing record.

15        I'm not sure if it was every single

16        sales record.  But my understanding is

17        that, from testimony, is that all the

18        records were available to Cahill.

19    BY MR. PLACITELLA:

20         Q.   Now -- so would that include R&D

21    records?

22         A.   My understanding is that it did,

23    yes.

24         Q.   Sales records?

25         A.   Yes, I understand that.  I



Page 86

1   believe so.

2          Q.   Okay.  Marketing records?

3              MR. FARRELL:  Objection to form.

4              THE WITNESS:  I don't know

5          specifically.  I'm not sure that we

6          have any record of all the specifics

7          that were supplied.

8   BY MR. PLACITELLA:

9          Q.   Okay.  Insurance records?

10         A.   I don't know.

11         Q.   Auditors' records?

12         A.   And --

13             MR. FARRELL:  Objection to form.

14             THE WITNESS:  I'm sorry.  And

15         you're talking about in the lead-up to

16         Westfall?

17  BY MR. PLACITELLA:

18         Q.   Correct.

19         A.   I don't know.  I don't know that

20  anybody knows all of this because this

21  occurred, as you know, 40 to 50 years ago.

22  So I'm just not sure that all of that was

23  available.

24         Q.   Well, that's all I want to do.  I

25  want to be very specific about what you know



Page 87

```
 1    Cahill was given access to; okay?  So you

 2    know for sure R&D records; is that fair?

 3         A.   Yes, as I understand it.

 4         Q.   And sales records; is that fair?

 5         A.   I believe so.

 6         Q.   You don't know about insurance

 7    records?

 8         A.   I do not know.

 9         Q.   Okay.  You don't know about

10    auditor reports or anything like that?

11              MR. FARRELL:  Objection to form.

12              THE WITNESS:  I don't know.

13    BY MR. PLACITELLA:

14         Q.   Okay.

15         A.   I don't know that they would have

16    been relevant at that point.

17         Q.   And what about information from

18    the insurance companies related to Emtal

19    talc?

20         A.   I don't know.

21         Q.   So the two things that you do

22    know -- and if there are others I want to

23    just be clear -- are R&D records and sales

24    records.  Anything else that you do know for

25    a fact that Cahill was given access to --
```



Page 88

```
 1              MR. FARRELL:  Objection to form.
 2   BY MR. PLACITELLA:
 3        Q.    -- in the early 1980s?
 4              MR. FARRELL:  Objection to form.
 5              MR. BOISE:  Also foundation.
 6              THE WITNESS:  I don't know.
 7   BY MR. PLACITELLA:
 8        Q.    Okay.  Now, you would say that
 9   they were given access to, to R&D and the
10   sales records.  How did that happen?  Did
11   somebody from Cahill -- did the records ever
12   physically leave -- the original records,
13   did they ever physically leave possession of
14   Engelhard and be transferred to Cahill?
15              MR. FARRELL:  Objection to form.
16              THE WITNESS:  I'm not sure I know
17         the answer to that.  I know that you
18         deposed other -- Mr. Dornbusch, who
19         was involved in, in those early
20         stages.  So I would refer you to his
21         testimony.  I don't know the exact
22         nature.
23              My understanding is that at some
24         point the records were also
25         transferred.  Whether they were
```



Page 89

1        original or not, I'm not sure what

2        your definition of "original" is.  But

3        my understanding is that records were

4        sent -- that records did go to Cahill.

5    BY MR. PLACITELLA:

6        Q.   I know we had this debate before,

7    so let's try to not spend a lot of time on

8    it; okay?  When I'm saying "original

9    records," I'm saying the records that are in

10   the possession of the R&D department that

11   are relied upon by the research scientists

12   in their day-to-day work that they referred

13   to, were those records themselves that were

14   in their files in original form transferred

15   to Cahill or were copies transferred to

16   Cahill?

17            MR. FARRELL:  Objection to form

18        and foundation.

19            THE WITNESS:  I don't know that

20        anybody knows that.  It was 50 years

21        ago.

22   BY MR. PLACITELLA:

23        Q.   Well, who did you ask to find

24   out?

25        A.   I reviewed the testimony of



Page 90

1   people.  If anybody knew, it would have been

2   Mr. Dornbusch.  And if it wasn't in his

3   testimony, I don't know that anybody would

4   know.  It was 50 years ago.

5        Q.    Did you ask to speak to

6   Mr. Dornbusch and find out?

7        A.    No.

8        Q.    Why not?  You said he would know.

9             MR. FARRELL:  Objection to form,

10            foundation.

11            BASF has already stated in its

12            objections and in meet-and-confer

13            discussions with plaintiffs that we

14            were not preparing the witness on

15            privileged information.  And that is

16            part of the reason he did not have

17            discussions with in-house or outside

18            lawyers for discussion.

19            So all of your questions about

20            "Why did you or did you not speak with

21            lawyers for the company?" are subject

22            to those objections.

23   BY MR. PLACITELLA:

24        Q.    Okay.  Mr. Hemstock --

25   Dr. Hemstock was not a lawyer; right?



Page 91

```
1          A.    That's correct.

2          Q.    He ran the R&D department; right?

3          A.    Right.

4          Q.    He was there in 1983 and 1984;

5     correct?

6          A.    Yes.

7          Q.    He would know what records left

8     his possession, wouldn't he?

9                MR. FARRELL:  Objection to form

10          and foundation, calls for speculation.

11               THE WITNESS:  I think -- he's

12          been deposed extensively on this.  And

13          I think he was asked -- and I'd have

14          to look at his deposition testimony.

15          I don't know that he recalls whether

16          the originals were sent or whether

17          copies.

18               I don't know that it matters

19          whether they were, whether they were

20          original or copy.  But he, he would be

21          the best person to speak to that.  But

22          I'm not sure he remembered in his

23          testimony.

24     BY MR. PLACITELLA:

25          Q.    Why didn't you just call him up
```



Page 92

1    and ask him?  You knew this was a topic for

2    today.

3              MR. FARRELL:  Objection to form

4         and foundation, argumentative.

5              THE WITNESS:  I guess I'm not

6         sure why it matters if it was an

7         original or a copy.

8    BY MR. PLACITELLA:

9         Q.   Because that's part of the notice

10   today.  We want to know what was transferred

11   and when.

12             Why didn't you call up

13   Dr. Hemstock, who you say is the best person

14   to know, and ask him what happened --

15             MR. FARRELL:  Objection --

16   BY MR. PLACITELLA:

17        Q.   -- did the records ever leave his

18   possession?

19             MR. FARRELL:  Objection to form,

20        foundation, argumentative.

21             THE WITNESS:  Again, I'd have to

22        look at the deposition notice to see

23        whether it says specifically original

24        from the file of Dr. Hemstock.  I

25        don't think that's in the deposition



Page 93

```
 1          notice.
 2               And again, I just don't see why
 3          it's important whether it was a copy
 4          of the original or the original
 5          itself.  I think we've had this
 6          discussion before, but -- I don't know
 7          the difference.  I don't know why it's
 8          significant.
 9   BY MR. PLACITELLA:
10          Q.   You're -- that's not your job.
11   Your job is to answer my questions; okay?
12               My question is:  The original
13   scientific records that were in possession
14   of research and development in the early
15   1980s, as you sit here today, you don't know
16   whether they ever left possession of
17   Engelhard; correct?
18               MR. FARRELL:  Objection to form,
19          foundation, beyond the scope,
20          argumentative.
21               THE WITNESS:  Again, I don't know
22          why it matters whether they were
23          originals.  We know that Cahill got
24          the information that they needed to
25          defend the cases with.
```



Page 94

1           MR. PLACITELLA:  Can you read my

2       question back again.

3           (The court reporter read back as

4   follows:

5               "Q  You're -- that's not

6       your job.  Your job is to answer my

7       questions; okay?

8               "My question is:  The

9       original scientific records that

10      were in possession of research and

11      development in the early 1980s, as

12      you sit here today, you don't know

13      whether they ever left possession of

14      Engelhard; correct?")

15          MR. FARRELL:  Same objections.

16          THE WITNESS:  Again, it's a

17      really broad question.  I guess if we

18      looked at individual documents, I

19      could tell you whether I thought they

20      were original or not.  I'm not sure in

21      every case what you mean by

22      "original."

23          But once again, I'll say I don't

24      know in exactly what form of what

25      documents was sent to Cahill.  This



Page 95

```
 1          was 50 years ago.
 2     BY MR. PLACITELLA:
 3          Q.    And you had access to the former
 4     head of research and development.  And in
 5     preparation for the deposition, you never
 6     asked to speak with him.  You never even
 7     picked up the phone to find out.  Correct?
 8               MR. FARRELL:  Objection to form,
 9          foundation, misstates the record,
10          argumentative.
11               THE WITNESS:  I didn't call him
12          because I saw -- I didn't see any need
13          to determine whether or not a document
14          that was sent to Cahill was an
15          original -- whatever that means -- or
16          a copy of the original.
17     BY MR. PLACITELLA:
18          Q.    Where did Cahill review the
19     documents, the R&D documents?  Were they
20     reviewed at Engelhard, or were they reviewed
21     at the Cahill offices?
22               MR. FARRELL:  Objection to form.
23               THE WITNESS:  I, I can't answer
24          that.  I'd have to look through the
25          testimony and see if that was included
```



Page 96

```
 1          in the testimony from other people.
 2     BY MR. PLACITELLA:
 3          Q.   So that's why I'm asking.  Why
 4     didn't you ask somebody?  Why did you rely
 5     only on depositions?
 6               MR. FARRELL:  Objection;
 7          argumentative.
 8               THE WITNESS:  Again, because, you
 9          know, in the week that we had to
10          prepare for this deposition notice, I
11          didn't think that was a significant
12          issue to look into.
13     BY MR. PLACITELLA:
14          Q.   You've been a rep for three
15     years, and you never had a conversation with
16     Dr. Hemstock.  You've been asked questions
17     about these documents over and over, and
18     you've never had a conversation with him.
19     Correct?
20               MR. FARRELL:  Objection to form,
21          foundation, misstates the record.
22               THE WITNESS:  I haven't spoken to
23          him; that's correct.
24     BY MR. PLACITELLA:
25          Q.   Now -- so as you sit here, you do
```



Page 97

1    not know whether Cahill Gordon went to

2    Engelhard to look at documents or whether

3    documents were shipped out of Engelhard and

4    sent to Cahill Gordon; correct?

5         A.   I understand that at some point

6    Cahill Gordon had possession of the

7    documents.

8         Q.   When the original review was done

9    by the Cahill Gordon lawyers of the R&D

10   documents, as you sit here today, you do not

11   know whether that review occurred at the

12   offices of Cahill Gordon or in Menlo Park

13   Terrace, New Jersey, at the corporate

14   headquarters; correct?

15              MR. FARRELL:  Objection to form.

16              THE WITNESS:  Again, this was one

17         incident that occurred 50 years ago.

18         I don't know if anybody knows that.  I

19         don't.

20   BY MR. PLACITELLA:

21         Q.   So the answer to my question is

22   you do not know where Cahill Gordon reviewed

23   the records that are the subject of this

24   deposition notice; correct?

25         A.   As I mentioned, this is one



Page 98

1    incident that occurred 50 years ago.

2    Somebody may know.  I don't know.  I don't

3    know that anybody does know.

4         Q.   Well, you didn't ask anybody, so

5    you don't really -- you can't really answer

6    the question; correct?

7              MR. FARRELL:  Objection to form,

8         foundation, misstates the witness'

9         testimony, argumentative.

10             THE WITNESS:  I'm sorry.  What

11        was the question again?

12   BY MR. PLACITELLA:

13        Q.   You didn't ask anybody, so you

14   don't have -- you don't know the answer to

15   the question; correct?

16             MR. FARRELL:  Objection to form,

17        foundation, argumentative, misstates

18        the witness' testimony.

19             THE WITNESS:  Again, I've spoken

20        with counsel, and I've looked at

21        testimony from depositions of other

22        people.

23   BY MR. PLACITELLA:

24        Q.   Well, I can't rely on what your

25   lawyers told you.  I have to rely upon your



Page 99

 1   duty to prepare yourself to testify here

 2   today to provide information, the subject of

 3   the notice.  And one of the base questions

 4   here is:  What was reviewed of -- in the R&D

 5   department and where?

 6              And you can't answer that

 7   question, can you?

 8              MR. FARRELL:  Objection to form,

 9         foundation, asked and answered.

10              Where in your notice does it say

11         where?

12   BY MR. PLACITELLA:

13         Q.   You can't answer that; right?

14         A.   Again, I --

15              MR. FARRELL:  One moment, please.

16              MR. PLACITELLA:  I'm not

17         answering your questions, Peter.

18         Please don't do this.  It's not a form

19         question.

20   BY MR. PLACITELLA:

21         Q.   You can't answer my question;

22   correct, sir?

23              MR. FARRELL:  I object -- excuse

24         me.  Excuse me.

25              Objection to form, foundation,



```
 1          beyond the scope of the notice,

 2          misstates your own notice,

 3          argumentative.

 4     BY MR. PLACITELLA:

 5          Q.   Sir, you can't answer as you sit

 6     here today where and when Cahill Gordon

 7     reviewed the R&D documents concerning Emtal

 8     talc; correct?

 9               MR. FARRELL:  Same objections.

10               THE WITNESS:  Once again, this is

11          an incident that occurred 50 years

12          ago.  I don't know if anybody knows.

13          Someone may.  I don't know that.

14               Look, I, I could look through

15          this, through the document, the

16          topics, and see whether that was even

17          something that I should have been

18          prepared for, because I didn't see it

19          as something worth looking into.

20     BY MR. PLACITELLA:

21          Q.   Okay.  When were the R&D

22     documents -- well, let me ask you -- I'm

23     going to cut to the chase.

24               You previously testified to

25     something called "the Cahill compilation."
```



1    Do you recall that?

2         A.   Yes, I do.

3         Q.   And what is the Cahill

4    compilation?

5         A.   This was an aggregation,

6    compilation of the testing data that had

7    been generated by Engelhard -- and there

8    were other documents involved in that too,

9    published documents that had been

10   accumulated, I guess, by either Engelhard or

11   Cahill -- that was pulled together in

12   October of 1982 by Cahill.

13        Q.   Okay.  And what information was

14   made available to Cahill when they put that

15   compilation together?

16             MR. FARRELL:  Objection to form,

17        asked and answered.

18             MR. BOISE:  Also foundation.

19             THE WITNESS:  According to what I

20        understand, all of the testing record

21        that was necessary to respond to the

22        subpoena that had been received by

23        Engelhard.

24   BY MR. PLACITELLA:

25        Q.   And you say "according to what I



1   understand."   What is the basis of your

2   understanding?

3            MR. FARRELL:  Objection to form.

4            THE WITNESS:  The basis of my

5        understanding is the testimony that

6        I've read from Dornbusch and the first

7        page of the March 19 -- or -- yeah --

8        March 1983 Hemstock deposition, in

9        which on the first page the attorney

10       present describes the information that

11       was collected and what was held as

12       privileged.

13   BY MR. PLACITELLA:

14       Q.   So your testimony is that

15   whatever was described in the Hemstock

16   deposition is what was made available to

17   Cahill Gordon from the R&D department?

18            MR. FARRELL:  Can I have the

19       question again, please.

20            (The court reporter read back the

21   pending question.)

22            MR. FARRELL:  Objection to form,

23       foundation, misstates the witness'

24       testimony.

25            THE WITNESS:  So my testimony was



```
 1        that that first page of the document

 2        describes at a high level the

 3        information that was supplied.

 4             It doesn't go into detail about

 5        specific testing or studies.  But it

 6        describes the information that was

 7        provided and states that some of the

 8        documents, a few of the documents,

 9        were being held as privileged.

10             I'd have to look at the document

11        itself again to get into much more

12        detail.

13   BY MR. PLACITELLA:

14        Q.   So all of the information that

15   was referenced in the Hemstock deposition

16   was made available by Engelhard, and that is

17   the subject of the Cahill compilation?

18             MR. FARRELL:  Objection to

19        form --

20   BY MR. PLACITELLA:

21        Q.   Is that what you're saying?

22             MR. FARRELL:  Objection to form

23        and foundation.

24             THE WITNESS:  No, I'm -- my

25        testimony was that all of the testing
```



Page 104

```
1            information was supplied to Cahill,
2            and that was described on the first
3            page of the deposition.
4    BY MR. PLACITELLA:
5        Q.   Okay.  Well, we'll look at that
6    at lunchtime.
7            Where -- who did the review?
8        A.   The review was -- the
9    compilation?
10       Q.   Yes.
11       A.   Was put together by Cahill.
12       Q.   Who?
13       A.   I believe testimony is that
14   Mr. Sloane and maybe Mr. Hyde were involved
15   in it.
16       Q.   And where was that review done?
17           MR. FARRELL:  Objection to form,
18           foundation, asked and answered, beyond
19           the scope of the notice.
20           THE WITNESS:  It was done at
21           Cahill, wherever that is.  Again, I'm
22           not sure whether they started at
23           Engelhard and moved to Cahill, whether
24           the documents were started at Cahill
25           and moved to Engelhard -- or started
```



1           at Engelhard and moved to Cahill after

2           the first meeting.  I don't know the

3           very detailed specifics of the

4           process.  I know that it was conducted

5           by Cahill.

6    BY MR. PLACITELLA:

7           Q.   Do you know whether the review of

8    the documents that ended up in the Cahill

9    compilation was conducted at Engelhard or

10   not?

11          MR. FARRELL:  Objection to form.

12          THE WITNESS:  I think you asked

13          me that question before, and I'm not

14          sure physically how it occurred.

15          Somebody may know.  I don't know

16          physically.  My understanding is that

17          it occurred at Cahill.

18   BY MR. PLACITELLA:

19          Q.   So is it your understanding,

20   then, that all of the research and

21   development documents that were in

22   possession of Engelhard concerning the

23   testing of Emtal talc was transferred by

24   Engelhard to Cahill Gordon and then reviewed

25   at the offices of Cahill Gordon?



```
 1              MR. FARRELL:  Objection to form

 2         and foundation, misstates his

 3         testimony.

 4              THE WITNESS:  The extent of my

 5         knowledge is that all of the data were

 6         made available to Cahill Gordon.  I

 7         don't know the details of the

 8         logistics of the process and how and

 9         when everything occurred.

10    BY MR. PLACITELLA:

11         Q.   So as you sit here today, you

12    don't know whether all of the R&D documents

13    related to Emtal talc were, in fact,

14    transferred to Cahill Gordon for review;

15    correct?

16              MR. FARRELL:  Objection to form,

17         foundation, misstates the witness'

18         testimony.

19              THE WITNESS:  No.  My -- no, my

20         understanding is that based on the

21         context in which the compilation was

22         put together -- getting ready for a

23         subpoena and the fact that Cahill had

24         just been brought in as outside

25         counsel -- and based on testimony
```



Page 107

1           from, I believe, Mr. Dornbusch, all

2           the data was made available.

3    BY MR. PLACITELLA:

4        Q.   Okay.  So to be clear, all of the

5    R&D data related to Emtal talc is your

6    understanding was transferred by Engelhard

7    to Cahill Gordon for Mr. Hyde and

8    Mr. Steinmetz to review; correct?

9               MR. BOISE:  Objection.

10              MR. FARRELL:  Objection to form.

11              THE WITNESS:  The data that were

12          available at the time, in 1979.

13   BY MR. PLACITELLA:

14       Q.   So the answer's yes?

15              MR. FARRELL:  Objection to form.

16              THE WITNESS:  Yes.

17   BY MR. PLACITELLA:

18       Q.   Okay.  So nobody at Engelhard

19   made some type of review to determine what

20   R&D contaminate was going to be sent;

21   everything was sent.  Correct?

22              MR. FARRELL:  Objection to form,

23          foundation, misstates the witness'

24          testimony.

25              THE WITNESS:  I don't know.  This



1           is -- these are things that occurred

2           50 years ago.  These are actions and

3           activities that I don't have any

4           information on.

5    BY MR. PLACITELLA:

6           Q.   So you don't know whether anybody

7    did any kind of screening to determine what

8    was going to be sent to Cahill for review of

9    the R&D documents; correct?

10          MR. FARRELL:  Objection to form,

11          foundation, misstates the witness'

12          testimony.

13          THE WITNESS:  There may be

14          something in the record.  I don't

15          know.

16   BY MR. PLACITELLA:

17          Q.   Do you know whether copies were

18   made of records and sent to Cahill for

19   review by Sloane and Hyde or original

20   documents?

21          MR. FARRELL:  Objection to form,

22          foundation, asked and answered, beyond

23          the scope of the notice.

24          THE WITNESS:  I do think that we

25          talked about this earlier.  And I



```
 1          don't know whether copies or originals
 2          were sent.  I'm actually not even sure
 3          what the definition of an "original"
 4          is in some cases, so I don't know.
 5     BY MR. PLACITELLA:
 6          Q.   Here's the definition:  It's in
 7     Mr. Hemstock's file.  He says, I want to
 8     keep it; make a photocopy and send it.
 9          Did you get that?
10          MR. FARRELL:  Objection,
11          argumentative.
12     BY MR. PLACITELLA:
13          Q.   Did that ever happen?
14          MR. FARRELL:  Objection to form,
15          argumentative.
16     BY MR. PLACITELLA:
17          Q.   Did that ever happen?
18          A.   I don't know.
19          Q.   Okay.  Do you know -- so the
20     Cahill compilation that was constructed,
21     what can you tell me about what you know
22     about that?
23          MR. FARRELL:  Objection to form.
24          THE WITNESS:  Essentially what I
25          said before:  It was a compilation of
```



1          the test results that had been

2          generated by Engelhard or for

3          Engelhard.  It also included some

4          documents that Engelhard had prepared

5          for distribution.  And I believe it

6          also included some publicly available

7          and published reports.

8     BY MR. PLACITELLA:

9          Q.   Okay.  So -- and I know we did a

10    lot of this the last time, so I'm not asking

11    those questions all over again.  I'm sure

12    you're happy about that.

13          Let me -- so after the R&D

14    documents were sent by Engelhard to Cahill,

15    a compilation was created by whom?

16          MR. FARRELL:  Objection to form,

17          foundation, mis- --

18    BY MR. PLACITELLA:

19          Q.   After the review, who, who

20    created it?

21          MR. FARRELL:  Objection to form,

22          foundation, misstates his testimony.

23          THE WITNESS:  Okay.  Once again,

24          I don't know whether it was sent to

25          them or where they actually conducted



Page 111

1          this review.

2                But my understanding is that the,

3          that the review was overseen by

4          Mr. Sloane and maybe Mr. Hyde at

5          Cahill.

6    BY MR. PLACITELLA:

7          Q.   Now, when you say "overseen,"

8    what do you mean by that?  Other people

9    looked at it too?

10         A.   I don't know of anybody else.  I

11   just -- we may have responded to this in an

12   interrogatory.  I'd have to look at it.  But

13   I know that they were involved.

14         Q.   And then a memo was put together?

15               MR. FARRELL:  Objection to form.

16               THE WITNESS:  There wasn't -- I'm

17          not sure what you're referring to when

18          you say a "memo."

19   BY MR. PLACITELLA:

20         Q.   Well, you have a compilation that

21   you've produced.  So -- so we know that

22   we're all talking about the same thing,

23   here's Exhibit 1.

24               (A document previously marked as

25   Exhibit 1 was introduced.)



1    BY MR. PLACITELLA:

2         Q.   Do you recognize that?

3         A.   Yes.

4         Q.   Okay.  Is that the compilation

5    we're talking about?

6         A.   Yes --

7              MR. FARRELL:  Object --

8              THE WITNESS:  -- this --

9              MR. FARRELL:  Objection to form.

10             THE WITNESS:  This is the

11        compilation that I've seen.  It

12        contains spacers for privileged

13        documents, which I haven't seen.

14   BY MR. PLACITELLA:

15        Q.   And is it your understanding that

16   there was a cover memo that went with the

17   compilation?

18        A.   My understanding is that the

19   privilege log does list a cover memo that

20   was sent with this.

21        Q.   Okay.  And the cover memo was

22   from whom to whom?

23        A.   My understanding, it was from

24   Hyde to Dornbusch.

25        Q.   Okay.  And when -- and is it your



Page 113

```
 1    understanding, then, that this compilation

 2    with the cover memo was sent back to Arthur

 3    Dornbusch?

 4            MR. FARRELL:  Objection to form.

 5            THE WITNESS:  I'm not sure what

 6        you mean by "back to."  My

 7        understanding is that the memo and

 8        this accompanying it were sent to

 9        Mr. Dornbusch.

10    BY MR. PLACITELLA:

11        Q.   Right.  And did Cahill Gordon

12    retain a copy?

13            MR. BOISE:  Object to form,

14        foundation.

15            THE WITNESS:  I don't know.  I'd

16        have to review all the testimony.  I

17        don't recall.  Probably the person

18        that would know would be either Sloane

19        or Hyde.  I know you didn't depose

20        them, but they would probably know.

21    BY MR. PLACITELLA:

22        Q.   Were you prevented from speaking

23    to them?

24            MR. FARRELL:  Objection to form,

25        foundation.
```



Page 114

```
 1               THE WITNESS:  No.  I guess I
 2          figured that if you want to know, you
 3          would have deposed them.  And so I
 4          didn't see it as that important.
 5   BY MR. PLACITELLA:
 6          Q.  Well, I'm asking you.  That's why
 7   we're here.
 8               MR. FARRELL:  Objection;
 9          argumentative.
10   BY MR. PLACITELLA:
11          Q.  Did you ask to speak to him?
12               MR. FARRELL:  Objection,
13          argumentative.
14               THE WITNESS:  No, I didn't.
15               MR. FARRELL:  I'll also note for
16          the record that our objections and
17          responses to the notice which
18          addresses the questions Mr. Placitella
19          was asking on privilege issues have
20          been attached as Exhibit 10, Steinmetz
21          Exhibit 10 to this deposition.
22   BY MR. PLACITELLA:
23          Q.  Do you know -- do you recall that
24   a number of those exhibits refer to
25   attachments that aren't part of the Cahill
```



1    compilation?  Do you recall that?

2              MR. FARRELL:  Objection to form

3         and foundation.

4              THE WITNESS:  I'm sorry.  Could

5         you repeat that.

6    BY MR. PLACITELLA:

7         Q.   Do you recall that a number of

8    those exhibits refer to attachments that

9    aren't part of that compilation?

10             MR. FARRELL:  Same objections.

11             THE WITNESS:  Yes.  I think, I

12        think we have talked about that in the

13        past.  And, of course, the problem in

14        trying to recreate what happened 50

15        years ago is that we're trying to,

16        we're trying to understand why

17        something went into the compilation

18        and why it didn't.

19             So, for example, there may have

20        been a photograph that was referred to

21        in a document, but there's -- it's

22        very possible that that photograph no

23        longer existed when the, when the

24        information was collected in 1979.

25             There were other examples where



```
 1        people had left the company and

 2        retired and we don't know what

 3        happened to their files.  So parts of

 4        the file -- you know, attachments to

 5        some of the documents may have been

 6        lost.

 7            So we're not sure what exactly,

 8        what exactly existed in 1979.  So

 9        we're not sure whether attachments

10        that weren't attached to documents in

11        this compellation were actually ever

12        available in 1979 when it was

13        prepared.

14   BY MR. PLACITELLA:

15        Q.   Okay.  What was my question?

16            MR. FARRELL:  Objection,

17        argumentative.

18            THE WITNESS:  I -- if you could

19        ask it again, I'll -- I can -- I think

20        I answered it.  But if you could

21        repeat it, I could --

22   BY MR. PLACITELLA:

23        Q.   Do you have any idea what my

24   question was?

25            MR. FARRELL:  Objection,
```



```
 1        argumentative.
 2             THE WITNESS:  I thought I did
 3        when I answered.  But if you could
 4        repeat it, I could try again.
 5   BY MR. PLACITELLA:
 6        Q.   Do you know, when these documents
 7   were reviewed by Mr. Hyde and Mr. Sloane,
 8   whether they actually contained the
 9   attachments that are missing today?
10             MR. FARRELL:  Objection to form,
11        foundation.
12             THE WITNESS:  Yeah, again, we
13        don't know.  Like I said, this was 50
14        years ago.  A lot of things happened
15        between the time that those
16        attachments were prepared and 1979.
17        And they may have been available; they
18        may not have been available.  We just
19        don't know.
20             What we do know is they had an
21        awful lot of information that they to
22        put in the compilation and it included
23        the full testing records that were
24        both beneficial and potentially
25        negative for Engelhard.  So they -- it
```



1            appears that they had everything

2            available.

3    BY MR. PLACITELLA:

4            Q.    What was my question?

5                 MR. FARRELL:  Objection,

6            argumentative.

7                 THE WITNESS:  I think it had --

8            again, I think I answered it in the,

9            in the first part of my answer.  You

10           were asking about the general presence

11           of some of the attachments and whether

12           they were available.

13   BY MR. PLACITELLA:

14           Q.    And the answer to my question is

15   you don't know, when Hyde and Sloane

16   reviewed the documents to prepare this

17   compilation, whether they were available or

18   not; correct?

19                MR. FARRELL:  Objection to form

20           and foundation.

21                THE WITNESS:  That's right.  We

22           don't know whether they existed; yes.

23   BY MR. PLACITELLA:

24           Q.    Okay.  Now, these memos and the

25   compilation, they, they reference many



Page 119

1    former employees, correct, of Engelhard?

2         A.   I'm sorry, you mean the memos

3    within the compilation?

4         Q.   Yes.

5         A.   Yes, there are several people

6    included in them.

7         Q.   Did you ever ask to speak to any

8    of the people that are mentioned in any of

9    these memos?

10             MR. FARRELL:   Objection to form

11        and foundation.

12             THE WITNESS:   No.

13   BY MR. PLACITELLA:

14        Q.   They -- these memos also refer to

15   outside consultants that were hired by

16   Engelhard to do testing; correct?

17        A.   Yes, in some cases.

18        Q.   Did you ever ask to speak to any

19   of those consultants?

20        A.   I did not.  I know that our

21   counsel has contacted them for information

22   over the past few years, but I did not.

23        Q.   Which consultants did they

24   contact over -- for information over the

25   past few years that are contained in the



Page 120

```
 1    Cahill compilation?
 2         A.   Again, this is going back to
 3    testimony from a year ago.  I didn't prepare
 4    for this.  But I know that we have contacted
 5    some of the outside testing laboratories in
 6    the past for samples that they've maybe
 7    retained, that kind of a thing.
 8         Q.   Okay.  The -- it's my
 9    understanding that the compilation was found
10    in a file that was once maintained by Arthur
11    Dornbusch; is that fair?
12              MR. FARRELL:  Objection to form,
13         foundation, misstates the record --
14              THE WITNESS:  I know --
15              MR. BOYLE:  Objection.
16              MR. FARRELL:  -- beyond the scope
17         of the notice.
18              MR. BOYLE:  Hold on a second.
19         This is John Boyle.
20              Objection to form.
21              Chris, could you please point him
22         to the testimony where that
23         understanding comes from?
24              MR. PLACITELLA:  Just asking him
25         a question.
```



Page 121

```
 1            MR. BOYLE:  I'm sorry, Chris?  I
 2        couldn't hear what you said.
 3            MR. PLACITELLA:  I'm just asking
 4        him a question:  Is that understanding
 5        correct?
 6            MR. FARRELL:  Objection to form,
 7        foundation, misstates the record,
 8        beyond the scope of the notice.
 9  BY MR. PLACITELLA:
10        Q.  Well, let me ask the question
11  this way:  What is your understanding where
12  that document was found?
13            MR. FARRELL:  Same objections,
14        beyond the scope.
15            THE WITNESS:  So I know I've
16        testified to this in the past.  And I
17        believe I did say it was in a file
18        with "Dornbusch" on it.
19            Talking to counsel, it appears
20        that we know it was found off-site, in
21        off-site storage.  And my
22        understanding is that the reason we
23        believe it's Dornbusch is because the
24        memo, the privileged memo that I
25        haven't seen, was addressed to
```



Page 122

```
 1        Dornbusch.  So that's my
 2        understanding.
 3   BY MR. PLACITELLA:
 4        Q.   So the basis for your testimony
 5   is information you received from your
 6   lawyers?
 7             MR. FARRELL:  Objection to form,
 8        foundation, misstates his testimony.
 9             THE WITNESS:  It's information
10        that I received from counsel in
11        preparing for, you know, these
12        questions.
13   BY MR. PLACITELLA:
14        Q.   Okay.  Now, do you know whether
15   the file with the memo and all the things
16   that are withheld, was that an original
17   document or a copy of the document?  Was
18   that the original document that Dornbusch
19   was sent, or was it a photocopy?
20             MR. FARRELL:  Objection to form,
21        foundation, beyond the scope of the
22        notice.
23             THE WITNESS:  I don't know.  I
24        haven't seen the copy that -- I don't
25        believe I've seen the copy with
```



```
1              privileged documents.  I know I

2              haven't seen any of the document,

3              but -- I don't recall if I have.  So

4              if I have seen it, I don't recall

5              whether it was an original or not.

6     BY MR. PLACITELLA:

7         Q.   So as you sit here today, you do

8     not know whether the document that's in the

9     possession of your attorneys is an original

10    or a photocopy of the document that was sent

11    to Arthur Dornbusch; fair?

12             MR. FARRELL:  Objection to form,

13             foundation, beyond the scope of the

14             notice.

15             THE WITNESS:  I'm just not sure.

16    BY MR. PLACITELLA:

17        Q.   So the answer is you don't know?

18        A.   I don't know.  I'm not sure.

19             MR. FARRELL:  Same objections.

20    BY MR. PLACITELLA:

21        Q.   Okay.  How do you know it's a

22    complete copy if you've never seen the full

23    thing?

24             MR. FARRELL:  Objection to form,

25             foundation, asked and answered.
```



Page 124

```
 1                THE WITNESS:  I can only go by

 2          what I see.  And I see that this

 3          includes a number, a large number of

 4          documents.  And then there a large

 5          number of spacers with tabs showing --

 6          or spacers showing that there's

 7          privileged information not included.

 8   BY MR. PLACITELLA:

 9          Q.   How do you know whether this

10   document that was found in the files of BASF

11   was a complete and accurate copy?

12                MR. FARRELL:  Same objections.

13                THE WITNESS:  I have no reason to

14          think it wasn't.

15   BY MR. PLACITELLA:

16          Q.   How do you know that it wasn't?

17                MR. FARRELL:  Objection.

18   BY MR. PLACITELLA:

19          Q.   How do you know that it was?

20          A.   I have no reason to think --

21                MR. FARRELL:  One moment.  Which

22          question are you asking?

23   BY MR. PLACITELLA:

24          Q.   I'm asking:  As you sit here

25   today, can you testify that the document
```



Page 125

1    that was found in the BASF files was a

2    complete and accurate document --

3             MR. FARRELL:  Objection --

4    BY MR. PLACITELLA:

5         Q.   -- compilation?

6             MR. FARRELL:  Objection to form

7         and foundation.

8             THE WITNESS:  And I'm not sure

9         what you mean by "complete and

10        accurate compilation."

11   BY MR. PLACITELLA:

12        Q.   It had everything that was in

13   there the day it was signed and sent to

14   Mr. Dornbusch?

15            MR. FARRELL:  Same objections.

16            THE WITNESS:  Again, I haven't

17        seen the original.  I have no reason

18        to think it wasn't.

19   BY MR. PLACITELLA:

20        Q.   As you sit here today, you cannot

21   testify under oath that the document that

22   was found in the BASF files was a true and

23   accurate copy of the exact document that was

24   sent to Mr. Dornbusch by Mr. Hyde in 1982;

25   correct?



Page 126

```
 1              MR. FARRELL:  Objection to form,
 2         foundation, asked and answered.
 3              You're now harassing the witness.
 4              THE WITNESS:  I haven't seen it.
 5         It contains privileged information
 6         that I'm not allowed to see, so I
 7         can't answer that question.  I don't
 8         know if it's, if it's complete or not.
 9         I have no reason to think it's not.
10    BY MR. PLACITELLA:
11         Q.   Was it a bound document?
12              MR. FARRELL:  Same objections,
13         asked and answered.
14              THE WITNESS:  I, I don't know.  I
15         believe.  I don't know.
16    BY MR. PLACITELLA:
17         Q.   Okay.  The -- so after these
18    documents were, these R&D documents were
19    sent by Engelhard to Cahill Gordon, someone
20    reviewed the documents.  And to your
21    understanding, that was Hyde and Sloane;
22    correct?
23              MR. FARRELL:  Objection to form
24         and foundation.
25              THE WITNESS:  Somebody at Cahill
```



Page 127

```
 1          would have had to have reviewed them
 2          and prepared the document.  I don't
 3          work at Cahill.  I never did.  I would
 4          think that would be a question better
 5          presented to Sloane or Hyde.
 6   BY MR. PLACITELLA:
 7       Q.   Okay.  Well, do you know whether
 8   all of the R&D documents ended up in that
 9   compilation or somebody made a selection
10   from what was provided and they ended up in
11   the compilation?
12          MR. FARRELL:  Objection to form
13          and foundation.
14          THE WITNESS:  There's a pretty
15          broad range of information in here.
16          It appears to me that it would be
17          everything.  Again, that would be a
18          question that would be better put to
19          Sloane or Hyde.
20   BY MR. PLACITELLA:
21       Q.   Well, Engelhard would know if
22   everything that was in their testing
23   documents was in that compilation; correct?
24          MR. FARRELL:  Objection to form.
25          THE WITNESS:  Again, I don't know
```



Page 128

```
 1          exactly what was available in 1979.  I

 2          know that there's a broad range of

 3          information in here.

 4   BY MR. PLACITELLA:

 5        Q.   Did you ever ask Dr. Hemstock if

 6   all the testing documents that were in the

 7   R&D department ended up in the Cahill

 8   compilation?

 9          MR. FARRELL:  Objection to form

10          and foundation, asked and answered.

11          THE WITNESS:  I did not ask him

12          that.  It may be in his testimony.

13          And I would have to look at all his

14          testimony to see whether he addressed

15          that issue.

16   BY MR. PLACITELLA:

17        Q.   So as you sit here today, you

18   don't know whether everything that was sent

19   from Engelhard to Cahill Gordon concerning

20   the Emtal talc testing ended up in P1;

21   correct?

22          MR. FARRELL:  Objection to form,

23          foundation, asked and answered,

24          misstates Mr. Steinmetz's testimony.

25          THE WITNESS:  I'm sorry --
```



Page 129

```
 1             MR. FARRELL:  He's now answered
 2        this question three or four times.
 3             THE WITNESS:  Could, could you
 4        repeat it.
 5   BY MR. PLACITELLA:
 6        Q.   Yes, sir.  As you sit here today,
 7   you don't know whether all of the
 8   information that was transferred by
 9   Engelhard to Cahill from the R&D department
10   relating to the testing of Emtal talc ended
11   up in the Cahill compilation known as P1?
12   You can't testify to that under oath;
13   correct?
14             MR. FARRELL:  Objection to form,
15        foundation, asked and answered,
16        misstates Mr. Steinmetz's testimony.
17             THE WITNESS:  As I mentioned, my
18        understanding is that testimony
19        indicates that all the information was
20        provided, access to all the
21        information was provided to Cahill.
22        They took the information, prepared
23        the compilation.  I have no reason to
24        think that they didn't put it all in
25        here.  I don't know everything that
```



Page 130

```
 1          was available at the time, so I can't
 2          answer that.
 3     BY MR. PLACITELLA:
 4          Q.   So you don't know?
 5              MR. FARRELL:  Objection to form,
 6          foundation, asked and answered,
 7          misstates the witness' testimony.
 8              THE WITNESS:  I can't answer what
 9          was available or wasn't available --
10          what was not available 50 years ago if
11          there was no inventory taken, for
12          example.
13     BY MR. PLACITELLA:
14          Q.   And as far as you know, there was
15     no inventory of exactly what was sent by
16     Engelhard to Cahill related to the testing
17     of Emtal talc; fair?
18              MR. FARRELL:  Objection to form,
19          foundation, misstates the witness'
20          testimony, asked and answered.
21              THE WITNESS:  There may have
22          been.  This was something that
23          happened 50 years ago.  I'm not aware
24          of it.
25     BY MR. PLACITELLA:
```



Page 131

```
 1        Q.   As you sit here today, you cannot

 2   testify under oath that there is any

 3   evidence of an inventory of what was being

 4   sent by Engelhard to Cahill Gordon related

 5   to the talc testing from the R&D department

 6   of Engelhard; correct?

 7             MR. FARRELL:  Objection to form,

 8        foundation, misstates the witness'

 9        testimony, asked and answered.

10             THE WITNESS:  This was 50 years

11        ago.  There may be something

12        available.  I don't know of it, so I

13        can't comment on it.

14   BY MR. PLACITELLA:

15        Q.   Did you ask whether it was

16   available?

17        A.   No.

18        Q.   Why not?

19             MR. FARRELL:  Objection --

20   BY MR. PLACITELLA:

21        Q.    It was part of the notice.

22             MR. FARRELL:  Objection to form,

23        argumentative.

24   BY MR. PLACITELLA:

25        Q.   Why not?
```



1        A.    Because we had one week from the

2    time we got the deposition notice, and you

3    can only do so much in a week and you have

4    to prioritize where you put your time.

5        Q.    So who would you call to find out

6    now?

7            MR. FARRELL:  Objection to form.

8            THE WITNESS:  I don't know.

9    BY MR. PLACITELLA:

10       Q.    Okay.  After the review of the

11   R&D information was done at Cahill that was

12   provided by Engelhard, what happened to

13   those documents, the documents that were

14   reviewed by Hyde and Sloane?

15            MR. BOISE:  Object to the form

16        and foundation.

17            THE WITNESS:  Once again, these

18        are internal Cahill activities that

19        you're asking about.  I think it would

20        probably be better directed towards

21        Sloane or Hyde.  I can't speak to what

22        they did with every piece of paper

23        that they had.

24   BY MR. PLACITELLA:

25       Q.    Well, was -- were the documents,



Page 133

```
 1    the R&D documents that were sent by

 2    Engelhard to Cahill ever returned to

 3    Engelhard?

 4              MR. FARRELL:  Objection to form.

 5              THE WITNESS:  I believe

 6         Mr. Dornbusch testified that Westfall

 7         documents were returned to Engelhard.

 8    BY MR. PLACITELLA:

 9         Q.   I'm not asking about Westfall

10    documents yet.  I'm asking about the R&D

11    documents that were sent by Cahill -- I mean

12    by Engelhard to Cahill.  Were all of those

13    documents re- -- sent back to Engelhard?

14              MR. FARRELL:  Objection to form.

15              THE WITNESS:  I'm trying to

16         remember what you asked Mr. Dornbusch.

17         I'm not sure if you asked him that

18         question.  If you did, then he would

19         have answered it.

20         I, I don't recall the testimony.

21         And again, Mr. Sloane or Hyde probably

22         could answer that.

23    BY MR. PLACITELLA:

24         Q.   Okay.  So as you sit here today,

25    you don't know what physically happened to
```



Page 134

```
 1    the documents that were reviewed by the
 2    Cahill, the R&D documents that were reviewed
 3    by Cahill that were sent to Cahill by
 4    Engelhard; correct?
 5            MR. FARRELL:  Objection to form,
 6        foundation, misstates his testimony.
 7            THE WITNESS:  Correct.  I think
 8        it would be better -- a question
 9        better put to one of the principal
10        players in that activity, either
11        Sloane or Dornbusch or Hyde.
12    BY MR. PLACITELLA:
13        Q.   Okay.  Now, you have referred on
14    a number of occasions to materials in the
15    Westfall case.  Do you recall that?
16            MR. FARRELL:  Objection to form.
17            THE WITNESS:  Not specifically
18        in, in detail.  I -- we have talked
19        about the Westfall case.
20    BY MR. PLACITELLA:
21        Q.   Okay.  It's my understanding --
22    I'm trying to understand your testimony --
23    that in conjunction with the Westfall case
24    certain information was provided by
25    Engelhard, the client, to the Cahill Gordon
```



Page 135

```
 1    law firm in order to respond to discovery.
 2    Fair?
 3          A.   Yes, I believe it was for
 4    discovery.  Again, I'm not familiar with all
 5    the legal aspects of the process.  But I
 6    believe it was for discovery, yes.
 7          Q.   And you understand that in the
 8    Westfall case depositions were taken of
 9    Engelhard scientists; correct?
10          A.   Yes.
11          Q.   Okay.  And you understand that
12    the deposition was taken of Mr. Hemstock --
13    Dr. Hemstock; correct?
14          A.   Yes.
15          Q.   And Dr. Triglia?
16          A.   Yes.  It might have been
17    Mr. Triglia.  I'm not sure if he was a
18    doctor.
19          Q.   And Peter Gale?
20          A.   Yes.
21          Q.   Who else was deposed from
22    Engelhard that you're aware of?
23          A.   I believe Howard Shafer was
24    deposed, although we don't have a copy of
25    the transcript.
```



Page 136

1          Q.    Now -- and at their depositions,

2    various exhibits were marked; correct?

3          A.    Yes.

4          Q.    And many of those exhibits

5    pertain to the testing of Emtal talc for

6    asbestos; correct?

7          A.    Yes.  I haven't reviewed these

8    deposition transcripts recently; but, yes,

9    as I recall.

10         Q.    Okay.  And at the conclusion of

11   that case, what happened to the original

12   transcripts that were taken in those cases?

13             MR. FARRELL:  Objection to form.

14             THE WITNESS:  I haven't seen any

15         specific information regarding when or

16         who or how, how they were sent.  My

17         understanding from testimony is that

18         they were returned to Engelhard.

19   BY MR. PLACITELLA:

20         Q.    Okay.  And what happened to the

21   original exhibits that were marked at those

22   depositions?

23             MR. FARRELL:  Objection to form.

24             THE WITNESS:  My understanding is

25         that those would have been returned to



```
 1        Engelhard.
 2   BY MR. PLACITELLA:
 3        Q.   Okay.  And after the original
 4   depositions and original exhibits were
 5   returned to Engelhard, what happened to
 6   them?
 7             MR. FARRELL:  Objection to form.
 8             THE WITNESS:  According to the --
 9             I'm sorry.  You're referring to the
10             documents that Engelhard had, then, at
11             that point?
12   BY MR. PLACITELLA:
13        Q.   Correct.
14        A.   My understanding from
15   Mr. Dornbusch's testimony is that they were
16   discarded at some point pursuant to the
17   Engelhard document-retention policy.
18        Q.   Okay.  So your understanding is
19   that those original depositions and original
20   exhibits were destroyed by Engelhard; fair?
21             MR. FARRELL:  Objection to form.
22             THE WITNESS:  That's my
23             understanding.  I know that in the
24             testimony they weren't specifically
25             enumerated like that.  But I believe
```



Page 138

1          that, in general, Dornbusch said that

2          the documents were, documents were

3          discarded.

4     BY MR. PLACITELLA:

5          Q.   Now, do you know that --

6     whether -- when the documents were marked at

7     the depositions, whether they were the

8     actual original scientific records or not?

9               MR. FARRELL:  Objection to form

10          and foundation, beyond the scope of

11          the notice.

12              THE WITNESS:  I believe we've

13          discussed this before.  I don't know

14          in each case whether everything was an

15          original, whether it was a copy of an

16          original, or whether it was an

17          original copy that was sent out.

18    BY MR. PLACITELLA:

19         Q.   You're aware that at least some

20    original scientific documents were marked at

21    those depositions; correct?

22              MR. FARRELL:  Objection to form

23          and foundation, beyond the scope of

24          the notice.

25              THE WITNESS:  I'm not aware of



Page 139

1          that.  I'd have to go back and, and

2          look at the notice -- at the

3          transcripts again and at the

4          information that we have regarding

5          that.  I don't remember that.

6    BY MR. PLACITELLA:

7          Q.   Okay.  The...

8               (A document previously marked as

9    Exhibit 225 was introduced.)

10   BY MR. PLACITELLA:

11         Q.   Let me show you what's been

12   marked Exhibit 225.  I want you to take a

13   look at that and tell me if you're familiar

14   with it.

15         A.   Yes, I've seen this.

16         Q.   Okay.  And can you describe for

17   the jury what this is.

18         A.    This is the Engelhard Corporation

19   record retention manual dated August of

20   1984.  And it indicates that it's the final

21   version of it.

22         Q.   Do you know whether documents

23   related to the Westfall case were destroyed

24   before this final retention manual was

25   constructed?



Page 140

```
1              MR. FARRELL:  Objection to form,
2         foundation, beyond the scope of the
3         notice.
4              THE WITNESS:  This topic was
5         covered in your deposition of
6         Mr. Dornbusch.  And his comment was, I
7         believe, limited to the statement that
8         documents in the Westfall case were
9         discarded pursuant to this policy.  I
10        don't know the specifics of when they
11        were discarded or how they were
12        discarded.
13   BY MR. PLACITELLA:
14        Q.   So you don't know whether they
15   were discarded when the policy was in draft
16   or in final; correct?
17             MR. FARRELL:  Objection to form
18        and foundation.
19             THE WITNESS:  I know that
20        Dornbusch said that when it was in
21        effect.  So I would assume it was
22        final.
23   BY MR. PLACITELLA:
24        Q.   Okay.  But you don't know?
25             MR. FARRELL:  Objection.
```



Page 141

1   BY MR. PLACITELLA:

2        Q.   You're only going from what

3   Mr. Dornbusch said?

4            MR. FARRELL:  Objection to form,

5            foundation, beyond the scope of the

6            notice.

7            THE WITNESS:  I go by what he

8            says because he was there.  He was the

9            primary person.

10  BY MR. PLACITELLA:

11       Q.   Okay.  So I just have some

12  questions about this.

13           In the first page, which is Bates

14  Number 720, it states, under Record

15  Retention Manual [reading]:  Accordingly,

16  it's the policy of Engelhard Corporation to

17  retain in its files only those records which

18  are likely to be needed in our business

19  operations.

20           Do you see that?

21       A.   Yes.

22           MR. FARRELL:  Object --

23           one second.

24           Objection to form, foundation,

25           beyond the scope of the notice.



Page 142

```
 1              Which topic in your notice does
 2         this relate to?  Mr. Placitella, can
 3         you answer my question.
 4   BY MR. PLACITELLA:
 5         Q.   Can you answer my question,
 6   Mr. Steinmetz.
 7              MR. FARRELL:  One moment,
 8         Mr. Steinmetz.
 9              MR. PLACITELLA:  I'm not
10         answering your question today, Peter.
11         I'm sorry.
12   BY MR. PLACITELLA:
13         Q.   Can you answer my question,
14   please.
15              MR. FARRELL:  Mr. Placitella --
16              MR. PLACITELLA:  I'm not
17         answering your question today.
18   BY MR. PLACITELLA:
19         Q.   Can you answer my question
20   please.
21              MR. FARRELL:  If you're refusing
22         to answer my questions, that is fine.
23         Then I will make the statement on the
24         record that this was a topic that the
25         plaintiffs designated and then
```



Page 143

1          withdrew.

2               And you are now asking the

3          witness questions about a topic you

4          have withdrawn.  Your question is

5          beyond the scope of the notice, and it

6          is not appropriate.  You've been

7          asking questions beyond the scope of

8          your notice for much of the morning,

9          and these questions are not proper.

10              MR. PLACITELLA:  Thank you.

11     BY MR. PLACITELLA:

12          Q.   Can you answer my question,

13     please.

14          A.   Yes, that's what it says.

15          Q.   Do you know what they mean by

16     that?

17              MR. FARRELL:  Objection to form,

18          foundation, beyond the scope of the

19          notice.

20              THE WITNESS:  I think they mean

21          that they're going to retain files, in

22          their files, records that are needed

23          for business operations.

24     BY MR. PLACITELLA:

25          Q.   And what is "needed for business



Page 144

1    operations"?  That's my question.

2              MR. FARRELL:  Objection to form,

3         foundation, beyond the scope of the

4         notice.

5              THE WITNESS:  Again, I didn't

6         prepare for this.  I haven't looked at

7         this in a long time.  I'm not sure --

8    BY MR. PLACITELLA:

9         Q.   Okay.

10        A.   -- what you mean by "needed for

11   business operations."  To me it would be

12   those records that are required in order for

13   them to do business.

14        Q.   All right.  So can you go to

15   page 2.

16             See where it gives Index to

17   Terms?

18        A.   Yes.

19        Q.   You see where it says "P" is

20   permanent?

21        A.   Yes.

22        Q.   Okay.  And if you go to page 3,

23   talks about audit reports.

24             Do you see that?

25        A.   Yes.



Page 145

```
 1        Q.    Okay.  And that says "permanent";
 2   correct?
 3              MR. FARRELL:  Objection to form,
 4         foundation, beyond the scope of the
 5         notice.
 6              THE WITNESS:  It says that, yes.
 7   BY MR. PLACITELLA:
 8        Q.    So you were asked to provide
 9   today audit reports that the
10   record-retention policy manual says were
11   kept permanently.  Did you provide them?
12              MR. FARRELL:  Objection to form,
13         foundation, misstates the notice.
14              THE WITNESS:  Again, I don't know
15         that it was in the notice -- what was
16         in this notice.  But I, I'd have to
17         read this whole, this whole document;
18         because while it says audit reports
19         have to be kept permanently, I'm not
20         sure that would apply to discontinued
21         businesses.
22              So I'd have to read the whole
23         thing and see how that might apply to
24         a discontinued business.
25   BY MR. PLACITELLA:
```



Page 146

1          Q.    Do you want to skip this and

2     you'll look at it at lunchtime and come back

3     to it?

4          A.    I'll look at it if I have time at

5     lunch.

6          Q.    Okay.  Why don't we do that.

7               MR. FARRELL:  We're not going to

8          review documents in pursuit of

9          questions that are beyond the scope

10         your notice.

11              MR. PLACITELLA:  Okay.  Then

12         we'll keep going.  I'm sorry.  I'm

13         trying to make it easier.

14              MR. FARRELL:  We're not going to

15         keep going on the questions that are

16         beyond the scope of the notice.  We're

17         going to get the judge on the phone,

18         and we're going to address the issue.

19    BY MR. PLACITELLA:

20         Q.    Okay.  Sir, you didn't provide

21    today in response to my notice anything

22    having to do with reports made or to or by

23    auditors; correct?

24              MR. FARRELL:  Objection to form

25         and foundation.



1            THE WITNESS:  Would it be okay if

2       I read through the document --

3  BY MR. PLACITELLA:

4       Q.   Sure.

5       A.   -- and --

6       Q.   Absolutely.

7       A.   Okay.

8            (Discussion held off the

9  stenographic record.)

10           THE WITNESS:  Okay.  Skimmed

11      through it quickly.

12  BY MR. PLACITELLA:

13      Q.   Okay.

14      A.   Again, I didn't prepare for this.

15  It wasn't on the list of -- on the notice.

16  So I'll answer to the extent that I can from

17  reading the document but --

18      Q.   Fair enough.

19      A.   -- I'm not prepared for it.

20      Q.   Here's why I'm asking the

21  questions.  Topic number 6 says that one of

22  the topics you're supposed to address is the

23  information provided to the auditors of

24  Engelhard and BASF AG and all reports issued

25  by the auditors.  Do you see that?



Page 148

1          A.    Yes, I do see that.

2          Q.    Okay.  Now, according to the

3   document-retention policy, auditors' reports

4   are something that are kept permanently;

5   correct?

6                MR. FARRELL:  Objection to form,

7          foundation, beyond the scope of the

8          notice.

9                THE WITNESS:  Again, I -- this

10         says "permanent."  I don't know -- I

11         haven't reviewed this.  I haven't

12         analyzed it.  I've just looked at it

13         briefly, so I can't really answer the

14         question.

15   BY MR. PLACITELLA:

16         Q.    I'm just doing it as a

17   foundation.  Did you look at any audit

18   reports that were kept permanently in

19   preparation for today's deposition?

20               MR. FARRELL:  Objection to form,

21         foundation.

22               THE WITNESS:  No.  My

23         understanding was that one of the

24         objections, we objected to this one

25         because we received the notice just a



Page 149

1          week ago and we just didn't have time

2          to prepare for it.

3     BY MR. PLACITELLA:

4          Q.   Well, did you make a phone call

5     and see, "Do you have them all in one place?

6     Can I see them"?

7               MR. FARRELL:  Objection.

8     BY MR. PLACITELLA:

9          Q.   What efforts did you make to

10    comply with this?

11              MR. FARRELL:  Objection to form,

12         foundation, argumentative, asked and

13         answered.

14              THE WITNESS:  Again, to my

15         knowledge, I don't know whether they

16         exist.  I don't know that we've looked

17         for them.  The reason I didn't was

18         because we only received this a week

19         ago and I only had a week to prepare

20         for the issues that were on the

21         previous one that we received the week

22         before that.  So I didn't do -- we

23         didn't do anything other than --

24    BY MR. PLACITELLA:

25         Q.   Object.



Page 150

1          A.   -- prepare me to talk about this
2     on a very high level.
3          Q.   The only thing you did was
4     object.  You didn't even make a phone call
5     to see if they were available; correct?
6               MR. FARRELL:  Objection to form,
7          foundation, argumentative.
8     BY MR. PLACITELLA:
9          Q.   You have no idea how easy it
10    would be or not to produce these documents;
11    correct?
12              MR. FARRELL:  Objection to form,
13         foundation, argumentative.
14              THE WITNESS:  To answer your
15         question, I did not make a phone call.
16         And I don't know hard it would be to
17         obtain these.
18         Q.   Okay.  Can you go to page 7.
19              MR. FARRELL:  Page 7 of what?
20              MR. PLACITELLA:  The same
21         document-retention policy.
22    BY MR. PLACITELLA:
23         Q.   That lists board minutes;
24    correct?
25         A.   Yes.



Page 151

1          Q.   And that says they're to be kept

2     permanently; correct?

3                    MR. FARRELL:  Objection to form,

4          foundation, beyond the scope of the

5          notice.

6                    THE WITNESS:  Yes, it says that.

7     BY MR. PLACITELLA:

8          Q.   And the notice here says

9     [reading]:  The information provided to the

10    Engelhard and BASF board of directors

11    concerning the evidence of asbestos in Emtal

12    talc and the risks posed.

13                   Do you see that, number 7?

14         A.   Yes, I do.

15         Q.   Now, you have actually

16    testified -- you have actually certified

17    answers to interrogatories about what was in

18    board minutes; correct?

19                   MR. FARRELL:  Objection to form,

20         foundation, beyond the scope of the

21         notice.

22                   THE WITNESS:  Could I look at the

23         interrogatories and I'll answer that.

24    BY MR. PLACITELLA:

25         Q.   Can you recall that?



Page 152

```
 1        A.   I'd have to look at the
 2   interrogatory.
 3        Q.   Do you have Exhibit 63 in front
 4   of you?
 5        A.   Yes.
 6        Q.   Okay.  And can you look at
 7   interrogatory number 15.
 8        A.   Yes.
 9        Q.   And that asks for information
10   concerning reports to the board of
11   directors?
12             MR. FARRELL:  Objection to form.
13             THE WITNESS:  It requests whether
14        the board of directors were ever given
15        reports on Emtal claims.
16   BY MR. PLACITELLA:
17        Q.   And these were certified by you,
18   correct --
19             MR. FARRELL:  Objection to
20        form --
21   BY MR. PLACITELLA:
22        Q.   -- these interrogatories?
23             MR. FARRELL:  Objection to form
24        and foundation.
25             THE WITNESS:  Yes, I did certify
```



Page 153

```
 1        these.
 2   BY MR. PLACITELLA:
 3        Q.   Okay.  And you say that -- and
 4   you talk about what BASF was provided.
 5        A.   And -- yes.  And then I also say
 6   at the end that these were likely protected
 7   by client/attorney privilege.
 8        Q.   Okay.  Well, did you ever look at
 9   a board of directors meeting to see if there
10   was any facts in there that weren't
11   protected?
12        A.   If it's privileged, I can't look
13   at it.
14        Q.   Did you ever look at -- how did
15   you answer these interrogatories without
16   looking at a board of directors minutes?
17             MR. FARRELL:  Objection to form,
18        foundation, beyond the scope of the
19        notice.
20   BY MR. PLACITELLA:
21        Q.   Well, you have an, you have an
22   answer.  How did you answer this without
23   looking at anything?
24             MR. FARRELL:  Objection to form,
25        foundation, beyond the scope of the
```



Page 154

1          notice.

2               THE WITNESS:  As is usually the

3          case, counsel prepared this; and I

4          read it and reviewed it.  And if I had

5          questions, I asked them about it.

6    BY MR. PLACITELLA:

7          Q.   So these aren't your answers?

8    They're your lawyer's answers?

9               MR. FARRELL:  Objection to form,

10         foundation, beyond the scope of the

11         notice argumentative.

12   BY MR. PLACITELLA:

13         Q.   Well, did you certify that these

14   information was true and accurate to the

15   best of your knowledge?

16              MR. FARRELL:  Objection --

17   BY MR. PLACITELLA:

18         Q.   Under oath did you do that?

19              MR. FARRELL:  Objection to form

20         and foundation, misstates

21         Mr. Steinmetz's verification.

22              THE WITNESS:  I'm sorry.  Could

23         you repeat the question.

24   BY MR. PLACITELLA:

25         Q.   Did you certify these



Page 155

1    interrogatories to be true and accurate to

2    your best of your knowledge?

3         A.   Yes.

4         Q.   But you did nothing to verify

5    whether this statement about what was given

6    to the board of directors was correct or

7    not; correct?

8              MR. FARRELL:  Objection to form,

9         foundation, beyond the scope of the

10        notice, misstates Mr. Steinmetz's

11        testimony.

12             THE WITNESS:  Could you repeat

13        it.

14   BY MR. PLACITELLA:

15        Q.   You did nothing to verify whether

16   the information concerning what was provided

17   to the board of directors in the

18   interrogatories you signed was true or not?

19             MR. FARRELL:  Same objections,

20        asked and answered, beyond the scope

21        of the notice.

22             THE WITNESS:  I'm sorry.  So

23        you're asking whether I -- I'm --

24        could you repeat it one more time.

25   BY MR. PLACITELLA:



Page 156

1        Q.   You did nothing to verify what
2   you were answering was true or not.  You
3   simply took the word of your lawyers and
4   then signed the verification; right?
5             MR. FARRELL:  Objection to form,
6        foundation, beyond the scope of the
7        notice, misstates Mr. Steinmetz's
8        testimony.
9             THE WITNESS:  In this specific
10        question I didn't ask them any
11        questions about it.  I didn't verify
12        it specifically with them.  But I'm
13        very confident in, in the responses
14        that they provide, and I'm very
15        confident that this is accurate.
16   BY MR. PLACITELLA:
17        Q.   Remember when we started this dep
18   and I said that the information that is
19   provided from discovery comes from the
20   client?  That's you, correct --
21             MR. FARRELL:  Objection --
22   BY MR. PLACITELLA:
23        Q.   -- not the lawyers.
24             MR. FARRELL:  Objection to form,
25        argumentative.



Page 157

```
 1   BY MR. PLACITELLA:

 2        Q.    Right?

 3        A.    Yes.  But as I also mentioned,

 4   the client depends on the, on the law firm

 5   representing it to put together information,

 6   prepare it, and, and trust that it's

 7   correct.

 8        Q.    But the basic information has to

 9   come from you, BASF; correct?

10             MR. FARRELL:  Objection to form,

11        beyond the scope of the notice,

12        argumentative.

13             THE WITNESS:  Again, the basic

14        information would have come from BASF

15        files, from Engelhard files that were

16        searched by our counsel.

17   BY MR. PLACITELLA:

18        Q.    Fine, so now go back to the -- my

19   question:  You were asked to come prepared

20   to talk about information that was provided

21   to the board of directors; correct?

22             MR. FARRELL:  Objection to form.

23             THE WITNESS:  I'm sorry.  And

24        this is issue number...?

25   BY MR. PLACITELLA:
```



Page 158

```
1        Q.   7.

2        A.   7.

3        Q.   Very similar to the interrogatory

4   that you certified; true?

5             MR. FARRELL:  Objection to form,

6        foundation, misstates the

7        interrogatory and misstates the

8        designated issue.

9             THE WITNESS:  So as we mentioned

10       in our objection to the interrogatory,

11       it does seek information that's

12       attorney/client privileged and I

13       wouldn't be able to see it, so there

14       would be little that I could talk

15       about in this area.

16   BY MR. PLACITELLA:

17       Q.   What was my question, sir?

18            MR. FARRELL:  Objection,

19       argumentative.

20            THE WITNESS:  I'm not sure.

21       Could you repeat it.

22   BY MR. PLACITELLA:

23       Q.   Do you have any idea what my

24   question was, sir?

25            MR. FARRELL:  Objection,
```



1        argumentative.

2             Mr. Steinmetz, you don't need to

3        respond further.

4             Do you have a question for the

5        witness, Mr. Placitella, that's not --

6    BY MR. PLACITELLA:

7        Q.   Do you have any idea what my

8    question was, sir?

9             MR. FARRELL:  You don't need to

10       respond to that, Mr. Steinmetz.

11            MR. PLACITELLA:  Are you

12       directing him not to answer?

13            MR. FARRELL:  I'm directing

14       him --

15            MR. PLACITELLA:  Are you

16       directing him not to answer the

17       question?

18            MR. FARRELL:  I'm directing him

19       not to answer --

20            MR. PLACITELLA:  Okay.

21            MR. FARRELL:  -- your

22       argumentative question.

23            MR. PLACITELLA:  Okay.

24   BY MR. PLACITELLA:

25       Q.   Sir, you answered interrogatories



Page 160

1    about information that was provided to the

2    board of directors; correct?

3              MR. FARRELL:  Objection to form,

4         foundation, misstates the

5         interrogatory, misstates the

6         interrogatory response, beyond the

7         scope of the notice, asked and

8         answered, harassing the witness.

9    BY MR. PLACITELLA:

10        Q.   Sir?

11        A.   I can read what the response was

12   if you want me to.

13        Q.   You answered interrogatories

14   about information that was provided to the

15   board of directors; true?

16             MR. FARRELL:  Same objections.

17   BY MR. PLACITELLA:

18        Q.   It's still up on the screen.

19        A.   I answered a question that stated

20   the board of directors received general

21   litigation updates from Cahill attorneys

22   and/or from Arthur Dornbusch from time to

23   time.

24        Q.   Okay.  And then you were asked

25   here to be -- to respond to similar



Page 161

1    questions in preparation for today's

2    deposition; correct?

3              MR. FARRELL:  Objection to form,

4         foundation, misstates the notice.

5              THE WITNESS:  Unfortunately, I

6         can't respond to questions because of

7         privilege and I don't know the

8         information.

9    BY MR. PLACITELLA:

10        Q.   Well, did you look at a single

11   board of directors minute that have been

12   kept permanently in order to respond to

13   today's deposition?

14             MR. FARRELL:  Objection to form,

15        foundation, assumes facts, beyond the

16        scope of the notice, asked and

17        answered.

18   BY MR. PLACITELLA:

19        Q.   Sir, the truth of the matter is,

20   even though you swore under oath about

21   information that was provided to the board

22   of directors in answers to interrogatories

23   in this case and you were noticed on this

24   topic, you did nothing to prepare yourself

25   for that topic; true?



Page 162

```
 1              MR. FARRELL:  Objection to form,
 2         foundation.
 3              You're now arguing with the
 4         witness.  You're harassing the
 5         witness.  You've asked these questions
 6         multiple times.  It's beyond the scope
 7         of the notice.
 8    BY MR. PLACITELLA:
 9         Q.   Sir --
10              MR. FARRELL:  There are --
11    BY MR. PLACITELLA:
12         Q.   Please answer my question.
13              MR. FARRELL:  Excuse me.  I
14         wasn't finished.
15              MR. PLACITELLA:  Are you taking
16         down all this time, all his
17         objections?
18              Thank you.
19              MR. FARRELL:  The time that I'm
20         spending right now is because of your
21         improper questions, your harassing of
22         the witness, your persistence in
23         asking questions that are beyond the
24         scope of the notice, your deliberate
25         disregard for the objections that have
```



Page 163

```
 1          been asserted in response to the
 2          notice, and the fact that the witness
 3          has now responded to your question
 4          multiple times.
 5               So the reason that I need to take
 6          up time to object to these questions
 7          is because you persist in asking the
 8          same improper question over and over
 9          and over again, despite getting the
10          same answer from the witness.
11               Your question is improper; my
12     objections are not.
13               MR. PLACITELLA:  Can you read my
14          question back, please.
15               (The court reporter read back as
16     follows:
17               "Q   Sir, the truth of the
18          matter is, even though you've sworn
19          under oath about information that
20          was provided to the board of
21          directors in answers to
22          interrogatories in this case and you
23          were noticed on this topic, you did
24          nothing to prepare yourself for that
25          topic; true?")
```



Page 164

```
 1              MR. FARRELL:  Same objections.
 2              THE WITNESS:  So my answer is I'm
 3         completely comfortable with the answer
 4         and the fact that I verified this
 5         response.  It came from counsel.  I
 6         very much trust counsel.  I know that
 7         they reviewed the documents necessary
 8         to answer this question.  I didn't see
 9         any need to take it any further
10         because it's a very basic high-level
11         question.
12              Regarding preparation for today,
13         looking at this designated issue,
14         number 7, again I'll go back to the
15         fact that we just received this
16         document a week ago.  There was a lot
17         of information to review, a lot of
18         information to look at.  You have to
19         prioritize your time when you're
20         getting ready for something like this.
21              I wanted to be able to answer as
22         many questions as possible.  The
23         problem in this case is that it was
24         given to us at the last minute, so I
25         didn't prioritize it myself as being
```



Page 165

```
 1           one of the most important things to

 2           look at.  And further, I've been

 3           informed by my counsel that most of

 4           the information is probably privileged

 5           and I wouldn't be able to look at it

 6           or respond to it.

 7  BY MR. PLACITELLA:

 8      Q.   Respectfully, sir, move to strike

 9  your answer.  So let me ask the question

10  again.

11           Did you do anything to prepare

12  yourself to answer area number 6 in your

13  deposition notice, yes or no?

14           MR. FARRELL:  The same objections

15           I've stated.  You're harassing the

16           witness.  It's been asked and answered

17           multiple times.

18           THE WITNESS:  Yes.

19  BY MR. PLACITELLA:

20      Q.   And what did you do?

21      A.   I reviewed it with counsel.

22      Q.   So the only thing you did to

23  prepare to answer this question is to go

24  over the topic with counsel?

25           MR. FARRELL:  Objection to form,
```



Page 166

```
 1          foundation, asked and answered.
 2          You're harassing the witness.
 3               THE WITNESS:  I'm not sure what
 4          you mean by "go over."  I reviewed the
 5          topic with counsel, and I reviewed the
 6          objections that we filed.
 7  BY MR. PLACITELLA:
 8          Q.   Did you conduct any investigation
 9  in order to respond to topic number 6 in the
10  deposition notice to prepare for today's
11  deposition, any investigation whatsoever?
12               MR. FARRELL:  We're done.  We're
13          going to call the Judge.
14               MR. PLACITELLA:  Okay.
15  BY MR. PLACITELLA:
16          Q.   Can you answer my question?
17               MR. FARRELL:  I'm sorry, sir.  I
18          have said we're calling the Judge.
19               MR. PLACITELLA:  Call the Judge.
20               THE VIDEOGRAPHER:  The time is
21          now 12:33 p.m.  We're going off the
22          record.
23               (The witness left the room.)
24               (A call was placed.)
25               MR. FARRELL:  So, Your Honor,
```



1           you're now on --

2                THE COURT:  Are we on the record

3           also?

4                MR. FARRELL:  We are on the

5           record.  The court reporter is here.

6           I think we're off the video record.

7           The witness has left the room.  We are

8           now approximately two and a half hours

9           into the deposition.

10               I'm here.  Mr. Placitella's here

11          for the plaintiffs.  And Mr. Boise is

12          here for Cahill.  And then the other

13          parties are dialed in by telephone.

14               THE COURT:  Okay.

15               MR. FARRELL:  We've been going

16          approximately two and a half hours.

17          I'd say more than half the time so far

18          has been dedicated to questions that

19          are beyond the scope of the notice.

20               We started out with a number of

21          questions regarding what BASF viewed

22          its obligations under the 7th

23          Amendment to the Constitution to be.

24          We've now gone through all sorts of

25          irrelevant and beyond-the-scope



Page 168

```
 1          subject matter.

 2               And we're now on to harassing

 3          questions from plaintiff's counsel

 4          concerning the efforts that BASF took

 5          to prepare for the notice.

 6               The particular topic that's at

 7          issue was a new topic that was

 8          designated for the first time a week

 9          ago concerning updates that

10          Mr. Dornbusch or counsel for the

11          company gave to BASF's and Engelhard's

12          board of directors concerning the

13          risks of Emtal litigation.

14               Given that the topic was

15          designated after the discovery cutoff,

16          a week before the deposition, and that

17          it expressly calls for information

18          protected by the attorney-client

19          privilege, we objected to the topic on

20          timeliness, on privilege grounds, and

21          other grounds.

22               Our witness has now been here for

23          the last 20 minutes being harassed by

24          plaintiffs' counsel about why he

25          didn't take additional steps to
```



```
 1          prepare to respond to a topic that

 2          wasn't timely served and calls for

 3          privileged information.

 4               The witness has answered at this

 5          point, I would say, ten questions

 6          about what he did to respond, why he

 7          wasn't able to look into the matter

 8          more fully, including because it

 9          called for privileged information.

10          And plaintiff's counsel are persisting

11          in harassing the witness with repeated

12          questions that have been answered

13          multiple times about the witness'

14          preparation and his response to these

15          questions.

16               So in light of all of that, after

17          allowing the witness to answer the

18          questions numerous times, reminding

19          plaintiffs' counsel that we had

20          objected to the topic and that the

21          witness had already asked and answered

22          the question multiple times and was

23          being harassed, I excused the witness

24          from the room and I called Your Honor

25          so that Your Honor can put a stop to
```



Page 170

```
 1        this.
 2             THE VIDEOGRAPHER:  Who is the
 3        witness?
 4             MR. FARRELL:  His name is Daniel
 5        Steinmetz.  He is the corporate
 6        representative of BASF Catalyst.
 7             THE COURT:  And why does that
 8        name sort of ring a bell with me?
 9             MR. FARRELL:  Because he was also
10        the corporate representative for BASF
11        in the Sampson case and provided three
12        days of testimony to plaintiff's
13        counsel in Sampson, which, as Your
14        Honor knows, is also the Cohen
15        Placitella firm.  So I think you've
16        seen his transcripts in the briefing
17        in our case.
18             THE COURT:  That's why.  Thank
19        you.
20             Before we hear from
21        Mr. Placitella, remind me,
22        Mr. Farrell, if you would, there is a
23        time limitation on this deposition, is
24        there not?
25             MR. FARRELL:  Yes; seven hours,
```



Page 171

```
 1          Your Honor.
 2              THE COURT:  Okay.  Why did I
 3          think it was less than that?
 4              MR. PLACITELLA:  It's not.
 5              THE COURT:  I thought we had gone
 6          through this discussion before.
 7              MR. PLACITELLA:  No.
 8              THE COURT:  I could be wrong.
 9          I've been wrong before.  But if it's,
10          if it's a full seven-hour one, then
11          that's fine.
12              I assume you agree with that,
13          Mr. Placitella?
14              MR. PLACITELLA:  My understanding
15          is it's seven hours, and that's the --
16          what we're operating under; yes.
17              THE COURT:  Okay.  Okay.  Well,
18          Mr. Placitella, why are you engaging
19          in all of these dastardly deeds?
20              MR. PLACITELLA:  Well, Your
21          Honor, I will leave the transcript for
22          you to draw your own judgments.  I
23          won't characterize the objections.
24              I will say I'm keeping track of
25          the time spent on objections, and a
```



Page 172

```
 1        significant portion of that has been
 2        taken up by objections.
 3            This man was asked to speak to
 4        this topic.  He signed an
 5        interrogatory -- he swore under oath
 6        an interrogatory response related to
 7        the topic in this case.
 8            And the response from counsel to
 9        the topic was, after they said we
10        don't have enough time and how bad we
11        are, they, said [reading]:  Subject to
12        and without waiving our objections,
13        BASF will produce a representative to
14        testify regarding this topic, to the
15        extent that it is possible given the
16        untimely nature.
17            THE COURT:  Okay.
18            MR. PLACITELLA:  I asked the
19        client, Mr. Steinmetz, what he did to
20        prepare himself.  And the answer is he
21        did nothing, zero.  He didn't make a
22        phone call; he didn't look at a single
23        document.  The only thing he did was
24        discuss the topic with counsel.
25            Now, if there was an issue
```



Page 173

```
 1          under -- and they didn't think they
 2          had enough time, they could came back;
 3          they could have asked for more time;
 4          they could have filed a proper motion.
 5              But I just decided we'll just let
 6          it go and let everybody do the best
 7          job they can.  They said the man would
 8          be prepared to the -- to answer the
 9          question given the timeframe.  I was
10          willing to live with that.
11              But the truth of the matter is,
12          if you read the record, he did
13          absolutely nothing to prepare himself
14          for this topic, as I'm sure is going
15          to be proven on other topics.
16              So all I asked him was in the
17          last -- we can find it and read it
18          back -- was:  Am I correct that you
19          did absolutely nothing to prepare
20          yourself to answer this question?
21              And then I would bring it to Your
22          Honor to make a ruling subsequent.
23              That was the question on which
24          Mr. Farrell would not let him answer
25          the question.
```



Page 174

1              MR. FARRELL:  Your Honor, if I

2       could respond.

3              That question was asked in

4       different formulations a half dozen

5       times or more.  I let the witness

6       answer it the first five-plus times.

7       It was when we got to instance six or

8       eight or whatever we're up to when I

9       called the Court.

10             Let me also say that BASF's

11      interrogatory responses are not a

12      topic for the deposition.  The

13      interrogatory that Mr. Placitella's

14      referring to simply asks:  Was your

15      board of directors ever given reports

16      on Emtal claims?

17             The response that BASF gave and

18      that Mr. Steinmetz verified said:

19      Yes, from time to time Mr. Dornbusch

20      gave updates to the board of

21      directors.

22             As Your Honor might imagine, BASF

23      is asserting privilege over the

24      substance of what those updates might

25      have been.  We're talking about --



```
 1            THE COURT:  Well, if they were
 2       updates from Mr. Dornbusch, then
 3       clearly those are privileged.
 4            MR. FARRELL:  Exactly, Your
 5       Honor.  And we said --
 6            THE COURT:  So --
 7            MR. FARRELL:  Exactly, Your
 8       Honor.  And we said as much --
 9            THE COURT:  I don't think
10       Mr. Placitella has much argument with
11       that.
12            Do you, Mr. Placitella?
13            MR. PLACITELLA:  No.  I was
14       laying a foundation for how often --
15       that I wanted to ask general
16       questions, not specific
17       communications.  And I have been
18       precluded from doing that.  They have
19       thwarted --
20            THE COURT:  But help me
21       understand what I need to know, which
22       is:  If you're talking about the topic
23       of Mr. Dornbusch's reports to the
24       board of directors on ongoing
25       litigation, you do agree with me that
```



1          that would be privileged?

2                 MR. PLACITELLA:  That would be

3          privileged.  Information, however --

4                 THE COURT:  Okay.

5                 MR. PLACITELLA:  Yes.  But my

6          questions are information provided to

7          the board of directors, not by

8          Mr. Dornbusch.

9                 Mr. Dornbusch is how they

10         answered the question in the answers

11         to interrogatories.  I was asking a

12         very basic question.  I wanted to see

13         the board of director minutes.  Their

14         document-retention policies say that

15         they were kept permanently.

16                And I asked them to produce the

17         minutes.  They refused to produce the

18         minutes.  I was laying a foundation.

19         They did nothing.  They did absolutely

20         nothing.

21                THE COURT:  Take -- work with me

22         here; because, remember, you're asking

23         me to parachute into the middle of

24         this without a whole lot of the

25         history.



Page 177

```
 1              You made a request for the board
 2        of directors minutes.  And they were
 3        not produced, either in a redacted or
 4        unredacted form?
 5              MR. PLACITELLA:  I will pull them
 6        out right here.  Hold on.
 7              THE COURT:  Well, if you can pull
 8        them out --
 9              MR. PLACITELLA:  No, no.  I'm
10        looking for the request so we have it.
11        So I don't want to speak...
12              THE COURT:  Well, Mr. Farrell,
13        was a request made and was the request
14        complied with, at least in part?
15              MR. FARRELL:  I do not --
16              MR. PLACITELLA:  I'm looking at
17        it, Judge, and I don't see the minutes
18        specifically here.  Just give me a
19        second.
20              MR. FARRELL:  That is what I was
21        going to say, Your Honor, is there is
22        no request for the production of board
23        minutes attached to the notice, to my
24        knowledge.  If I'm mistaken about
25        that, then I am.
```



Page 178

1          What we were really -- the reason
2     we called Your Honor -- and I don't
3     want us to get sidetracked -- is what
4     I perceived to be the harassing
5     questions from Mr. Placitella
6     repeatedly asking the witness over and
7     over again why he supposedly did
8     nothing to prepare for a topic.
9          That question has been answered
10     multiple times.  And the reason that
11     the witness did not prepare in certain
12     ways was already explained, including
13     the fact that the information sought
14     is privileged.
15          BASF explained in its responses
16     to the deposition notice that it would
17     not be preparing its witness on
18     privileged information because we
19     would not be waiving the
20     attorney/client privilege.
21          So what the witness has indicated
22     is that he did review the topic; he
23     met with counsel to prepare.
24          I'll tell Your Honor the witness
25     has spent five or more full days



1    preparing for this deposition.  So the

2    suggestion that he's inadequately

3    prepared or hasn't made a good-faith

4    effort to prepare for this deposition

5    is groundless.

6           The issue is the topic that is

7    calling for privileged --

8           THE COURT:  Well, let's, let's,

9    let's do this by the numbers, because

10   it seems to me that we need to address

11   what needs to be addressed in order

12   for this deposition to be concluded.

13          Now, if Mr. Placitella has asked

14   "Why didn't you prepare on X subject?"

15   and a response has been given, then it

16   is inappropriate to ask that same

17   question over and over again.

18          This is a deposition.  So the

19   proper objection would be an objection

20   to the form of the question; the

21   objection, substantive objection

22   behind that being that this question

23   was asked and answered.

24          So I assume that you're making an

25   objection to the form of the question



Page 180

1           when that question is being asked for
2           more than the first time.  And if
3           you're kind enough to let it be asked
4           three or four times before you object
5           to it, that's perfectly fine.  I think
6           that's probably the better route for
7           lawyers to follow.
8                But it is inappropriate to ask
9           the same question over and over again,
10          especially when you've already gotten
11          answers.  And what I would suggest to
12          you is that the easy thing to do is
13          to -- if this is going to be a problem
14          on a going-forward basis today, is,
15          Mr. Farrell, when you make your
16          objection, your objection should be to
17          the form of the question; but you
18          should add "it's been asked and
19          answered."
20               Because then I'm going to assume
21          you will move to strike any responses
22          that are subject to those objections,
23          and it'll make it a lot easier for me
24          to be able to make those
25          determinations.



Page 181

```
 1            But at the same time,

 2       Mr. Placitella, I would urge you to

 3       please not ask the same question over

 4       and over again; because if you do,

 5       you're wasting time.  And if it

 6       becomes something that is as endemic

 7       as Mr. Farrell seems to be explaining,

 8       it may also be grounds for sanctions

 9       that I don't think we want to go near

10       at this stage of the game.

11            So you're both very good, very

12       experienced lawyers.  I am very

13       confident you'll be able to work that

14       out.

15            MR. FARRELL:  Understood, your

16       Honor.  We appreciate the time.

17            THE COURT:  Okay.  But just --

18       you know, if it's an

19       asked-and-answered issue, just after

20       you say "objection to the form," add

21       in it's because it's been asked and

22       answered.  And that's going to make it

23       easier on review if that ever becomes

24       necessary to look at it and say, Okay,

25       I can track the asked-and-answereds
```



```
1          here; and, you know what, asking the
2          question three times is two times too
3          many.  So --
4               MR. FARRELL:  Thank you, Your
5          Honor.
6               MR. PLACITELLA:  Well, Judge, I
7          would just say this:  I don't agree
8          with the characterization of anything
9          that Mr. Farrell has said.  If the
10         witness -- half the time I ask the
11         witness questions, he has no idea even
12         what I asked him because he's all
13         wound up about what he's going to say.
14         And the record will speak for itself.
15              THE COURT:  Okay.  Well, that's
16         fine.  I don't have a problem with
17         that.  But I'm addressing what
18         Mr. Farrell is raising, which is his
19         concern that the witness is being
20         asked the same question over and over
21         again and that that has to end at some
22         point.
23              And the way for me to -- if
24         that's the problem, whether anybody
25         agrees with that characterization or
```



Page 183

```
1          not, if that's the problem, I just
2          gave you a cure to the problem --
3                MR. PLACITELLA:  And that's fine.
4          I'm happy to --
5                THE COURT:  -- and the deposition
6          can go forward; right?
7                MR. PLACITELLA:  I'm happy to do
8          that.  And if he doesn't answer the
9          question and you determine that he did
10         not answer the question and it wasn't
11         asked and answered, then we'll make a
12         motion for sanctions to bring him
13         back.
14               THE COURT:  And, believe me, it
15         will be well-received; because what's
16         sauce for the goose is sauce for the
17         gander.
18               MR. PLACITELLA:  Fine by me.
19               MR. FARRELL:  I appreciate that,
20         Your Honor.  I have been noting along
21         the way "asked and answered" as the
22         basis for form objections, and I will
23         continue to do so as Your Honor has
24         advised.
25               THE COURT:  Just make it easier
```



Page 184

```
 1        for me -- I mean, this is purely
 2        selfish.  It'll make it easier for me
 3        to be able to track that if motion
 4        practice results from this deposition,
 5        which it sounds like it might, but I
 6        kind of hope that it will not.
 7             MR. PLACITELLA:  We're guided
 8        accordingly.
 9             THE COURT:  Is that the sum and
10        substance of the reason for this phone
11        call?
12             MR. FARRELL:  It is, Your Honor.
13        We've had similar issues on questions
14        that I've perceived to be beyond the
15        scope.  But I think we'll take the
16        guidance Your Honor had given on
17        making objections and motions after
18        the fact, and we'll apply it to those
19        issues as well.
20             THE COURT:  Yeah.  The only thing
21        that is easier is that, you know, even
22        though technically all you have to say
23        is "objection to the form," if you
24        make it a slightly more speaking
25        objection -- and I don't mean go on a
```



Page 185

```
 1          30-minute diatribe -- but, you know,

 2          "objection to the form, beyond the

 3          scope," that's all you need to do.

 4               There's now a Third Circuit judge

 5          who, when he was a US District Court

 6          judge; at trial he would only allow

 7          you to -- you stand up; you say

 8          "objection"; and then you had to then

 9          cite the rule that you were objecting

10          on the basis of.

11               MR. FARRELL:  Yes.

12               THE COURT:  And that's it.  No

13          more words.  "Objection; rule blank."

14          That's all he did.

15               And believe me, that was very

16          helpful to both the Court as well as

17          to the lawyers.  It made them really

18          think about what it was they were

19          objecting about and whether there was

20          a proper basis for it.

21               And I'm just suggesting we apply

22          a modification of that in these

23          circumstances because I think it will

24          be easier for everyone.

25               MR. PLACITELLA:  That's fine,
```



Page 186

1          Your Honor.

2               MR. FARRELL:  Understood, Your

3          Honor.

4               I think a lot of this we can, we

5          can work through ourselves.  I've been

6          asking Mr. Placitella along the way to

7          tell me which topic --

8               MR. PLACITELLA:  I'm not going to

9          do that.

10              MR. FARRELL:  -- he believes the

11         question relates to, and he's refused

12         to answer my questions.

13              So I was waiting to hear "Oh,

14         this relates to topic 3"; and then I

15         would have said "Okay."  But every

16         time I have asked, he has refused to

17         respond.  So that is why I'm making

18         these beyond-the-scope objections.

19              THE COURT:  Well, Mr. Placitella

20         is a very good and very experienced

21         lawyer.  And he understands that if he

22         is given the opportunity to help you

23         further refine your objection or

24         determine whether the objection even

25         is necessary and he doesn't take



Page 187

1          advantage of it, he'll be in a bad --

2          in a worse position later on.

3               So I don't think -- I think

4          that's a judgment that Mr. Placitella

5          has to make for himself; and I'm, you

6          know, a million percent confident that

7          he will do so in the best interest of

8          his client.  So, you know, we'll -- if

9          we have to litigate the issue

10         afterwards, we will.  I hope we don't;

11         but if we do, we will.

12              Now, the other thing I want to

13         suggest to people is just because the

14         rule allows for a deposition to be

15         seven hours in one day doesn't mean

16         that a deposition has to go for seven

17         hours in one day.  And that's to both

18         sides.  You know, let's, let's be a

19         little bit more sparse in how we go

20         about asking the questions also, a

21         little more sparse in how we go about

22         objecting to questions.

23              Let's try to do this to get

24         information that is needed in order to

25         move the case along.  I will say to



Page 188

```
1        you folks what I've said before, which
2        is:  You may not get what you want,
3        but you're going to get what you need.
4        Use the need as your standard.  Okay?
5            MR. FARRELL:  We appreciate the
6        guidance, and we appreciate the time,
7        Your Honor.  Thank you very much.
8            THE COURT:  It's my pleasure.
9        That's what I'm here for.  Is there
10       anything else I can help you on today?
11           MR. FARRELL:  Not at this point.
12           THE COURT:  Mr. Placitella?
13           MR. PLACITELLA:  I'm fine, Your
14       Honor.  Thank you for your time.
15           THE COURT:  Well, I know you're
16       always fine.  I expect nothing less
17       from you.  But I'm happy to help
18       wherever I can.  And, of course, I'm
19       assuming a fact not in evidence, and
20       that is I'm actually being of some
21       help under the circumstances.
22           But, you know, I should be here
23       the remainder of the day.  If
24       something else comes up, please call
25       me.  But as much as I like talking to
```



Page 189

1          you guys, I hope you don't.  Okay?

2                MR. FARRELL:  Understood.

3                MR. PLACITELLA:  Thank you, Your

4          Honor.

5                MR. FARRELL:  Thank you very

6          much.

7                THE COURT:  Take care now.

8          Bye-bye.

9                MR. PLACITELLA:  Is this a good

10         time?  Do you want to break?

11                MR. FARRELL:  Yeah, I do.

12                (Discussion held off the record.)

13                (Luncheon recess.)

14                THE VIDEOGRAPHER:  The time is

15         now 1:50 p.m.  We are back on the

16         record.

17   BY MR. PLACITELLA:

18         Q.   Okay.  So finishing designated

19   issue number 7, the information provided to

20   Engelhard and BASF boards of directors

21   concerning the evidence of asbestos in Emtal

22   talc and risks posed to corporation related

23   to lawsuits alleging injury from asbestos to

24   Emtal talc.  You with me?

25         A.   I'm sorry.  I have to find it.



Page 190

```
 1        Q.   Sure.

 2             MR. FARRELL:  What are you

 3        looking for?

 4             MR. PLACITELLA:  The notice.

 5             THE WITNESS:  The notice that you

 6        put into --

 7             MR. FARRELL:  Oh, the objections?

 8             THE WITNESS:  The objections.

 9   BY MR. PLACITELLA:

10        Q.   Do you have the regular notice in

11   front of you?

12             MR. FARRELL:  Here's my copy of

13        objections.  I don't know where the

14        marked one is.

15             THE WITNESS:  Yeah, it was here

16        and it's not.

17   BY MR. PLACITELLA:

18        Q.   I think it's the page 10.

19        A.   Okay.  I'm --

20        Q.   You with me?

21        A.   -- on designated issue 7.

22        Q.   Yes.

23        A.   Okay.

24        Q.   Do you know whether any Engelhard

25   or BASF scientists ever provided information
```



1   to the board of directors related to this

2   topic?

3           MR. FARRELL:  Objection to form.

4           THE WITNESS:  Again, this is

5       another one where there were privilege

6       issues.  I didn't prepare for this

7       one.  This one, I believe, was one of

8       the later issues designated.  My

9       understanding is that -- I have to

10      find this one.

11          My understanding is that there

12      was information provided.  I think

13      Mr. Dornbusch testified to that fact

14      also.

15  BY MR. PLACITELLA:

16      Q.   Okay.  Maybe you didn't hear my

17  question.  Do you know whether information

18  was ever provided to the board of directors

19  related to this topic by Engelhard

20  scientists, not lawyers?

21          MR. FARRELL:  Objection to form.

22          THE WITNESS:  Not that I know of.

23  BY MR. PLACITELLA:

24      Q.   Okay.  What's the basis for that

25  statement?



Page 192

```
 1              MR. FARRELL:  Objection to form.
 2              THE WITNESS:  I don't know.
 3   BY MR. PLACITELLA:
 4        Q.   You don't know whether it
 5   happened one way or the other?
 6        A.   Yes.  The basis is I just don't
 7   know.
 8        Q.   Okay.  Did you ever try to find
 9   out?
10        A.   Just through the normal course of
11   preparation and discussing these on a high
12   level with counsel.  I didn't do anything
13   else.
14        Q.   Okay.  Do you know whether any,
15   any risk managers who worked for Engelhard
16   made it -- ever made any presentations or
17   provided any information to the board of
18   directors related to topic number 7?
19              MR. FARRELL:  Objection to form,
20         foundation.
21              THE WITNESS:  I know that you
22         took Pagonis' deposition.  He may have
23         spoken to that.  I read parts of the
24         deposition; and I, I don't know
25         whether he addressed that directly.
```



Page 193

1          So I would refer to the deposition,

2          but I don't know right now.

3    BY MR. PLACITELLA:

4          Q.   So as you sit here today you

5    didn't make any independent evaluation as to

6    whether -- well, I'll ask a summary

7    question.

8               Do you know whether any

9    executives other than lawyers ever made any

10   presentations to the board of directors or

11   ever provided information to the board of

12   directors concerning topic number 7?

13              MR. FARRELL:  Objection to form

14        and foundation.

15              THE WITNESS:  I don't know that.

16   BY MR. PLACITELLA:

17         Q.   Okay.  And did you ever review

18   any board minutes whatsoever to see whether

19   the topic of Emtal talc was ever even

20   mentioned?

21              MR. FARRELL:  Objection to form

22        and foundation.

23              THE WITNESS:  Within the last

24        week I haven't reviewed any.  I may

25        have seen some in the past.  I, I



Page 194

```
 1         don't recall.
 2    BY MR. PLACITELLA:
 3         Q.   So in preparation for today's
 4    deposition, you never reviewed any board of
 5    directors minutes; fair?
 6              MR. FARRELL:  Objection to form,
 7         foundation.
 8              THE WITNESS:  I did not.
 9    BY MR. PLACITELLA:
10         Q.   Okay.  So as we sit here today,
11    in preparation for today's deposition, you
12    didn't conduct any investigation to
13    determine what information was communicated
14    to the board of directors concerning the
15    testing of Emtal talc or the litigation of
16    Emtal talc by anybody other than a lawyer;
17    correct?
18              MR. FARRELL:  Objection to form,
19         foundation, misstates his testimony,
20         asked and answered.
21              THE WITNESS:  I did speak with
22         counsel about this.  And one of the
23         issues again in this case was the
24         issue of attorney/client privilege.
25    BY MR. PLACITELLA:
```



Page 195

1           Q.   And that's why I'm saying to you

2    "other than lawyers."  You never conducted

3    any investigation to see if anybody other

4    than a lawyer provided information to the

5    board of directors relevant to topic

6    number 7; correct?

7                MR. FARRELL:  Objection to form,

8           foundation, asked and answered.

9                THE WITNESS:  I didn't.

10   BY MR. PLACITELLA:

11          Q.   Okay.  Now, going back to

12   Exhibit 225...?

13                MR. FARRELL:  Do you want to give

14          me -- that one, yep.

15   BY MR. PLACITELLA:

16          Q.   If you go to page 8.

17                MR. FARRELL:  Sorry.  You said

18          225?

19                MR. PLACITELLA:  Correct.

20   BY MR. PLACITELLA:

21          Q.   You go to page 8.  Do you see

22   that?

23          A.   Yes.

24          Q.   Okay.  There's a topic under 1E

25   that says:  Lawsuit, slash, claims, AS plus



Page 196

1    3, with the exception of precedent; then it

2    has a P for "permanent."  Do you see that?

3         A.   Yes.

4         Q.   Do you know what that means?

5             MR. FARRELL:  Objection to form,

6         foundation, beyond the scope of the

7         deposition notice.

8             THE WITNESS:  No.  I didn't

9         prepare this, and I didn't get a

10        chance to question anything about

11        this.  So, no, I don't.

12   BY MR. PLACITELLA:

13        Q.   Okay.  On page 12 there's a

14   section on insurance, number 3.  Do you see

15   that?

16        A.   I do.

17        Q.   Okay.  And there's a section

18   under 3A called Liability, and it says P for

19   "permanent."  Do you see that?

20        A.   Yes.

21        Q.   And one of the topics you were

22   asked to prepare for today were on issues of

23   insurance; correct?

24            MR. FARRELL:  Objection to form,

25        foundation, misstates the deposition



```
 1        notice topic.
 2             THE WITNESS:  I -- can I look at
 3        the deposition notice --
 4   BY MR. PLACITELLA:
 5        Q.   Sure.
 6        A.   -- again and see precisely what
 7   it said?
 8        Q.   Sure.
 9        A.   So insurance records falls under
10   3A in the designated list.
11        Q.   Right.  And my question is:  Did
12   you look at any of the insurance files that
13   were in the possession of BASF in
14   preparation for today's deposition?
15             MR. FARRELL:  Objection to form,
16        foundation.
17             THE WITNESS:  No.
18   BY MR. PLACITELLA:
19        Q.   Okay.  Do you know whether
20   Engelhard ever had a litigation hold
21   directive go out after being sued in the
22   Westfall case to preserve any and all
23   documents relating to Emtal talc?
24             MR. FARRELL:  Objection to form,
25        foundation, beyond the scope of the
```



1          notice.

2                THE WITNESS:  I understand from

3          Mr. Dornbusch's testimony that, that

4          he understood and that the corporation

5          understood the need for litigation

6          hold.  I'm not sure what his exact

7          words were.  But there was discussion

8          of that in his testimony.

9     BY MR. PLACITELLA:

10         Q.   Okay.  Other than whatever

11    Mr. Dornbusch said, did you have any other

12    knowledge in preparation or all the

13    background work that you've done on the, the

14    issue of litigation hold post Westfall?

15               MR. FARRELL:  Objection to form,

16         foundation, beyond the scope of the

17         notice.

18               THE WITNESS:  No, I haven't.

19    BY MR. PLACITELLA:

20         Q.   Okay.  I want to spend some time

21    now talking to you about topic number 2 and

22    topic number 1.

23               Topic number 1 is [reading]:  The

24    reasons recorded, written, or represented as

25    to why claims or lawsuits alleging injury



Page 199

1    to, due to exposure to Emtal were settled,

2    dropped, or dismissed and the amounts paid

3    to settle each of such cases.

4              Do you see that?

5         A.   Yes, I do.

6         Q.   And topic number 2 is [reading]:

7    The factual basis for an authority to issue

8    on behalf BASF/Engelhard.

9              And then it talks about letters,

10   responses, and representations.  Do you see

11   that?

12        A.   Yes, I do.

13        Q.   Okay.  Since they are

14   interrelated, I'll try to do them together

15   and make this a little shorter; okay?

16        A.   Yes.  And can I make one comment

17   on these two?  Again, these are really

18   broad, broadly worded topics; and they could

19   cover, as you know, hundreds or even

20   thousands of cases.  So I'm not prepared to

21   talk about every case in every detail of

22   every case or dates.  But I can talk to

23   specific ones if you want to talk about --

24        Q.   I appreciate that.

25        A.   -- specific ones.



Page 200

1          Q.   And then topic number 8, which is

2     interrelated, talks about the nature,

3     extent, and limits of Cahill's role in

4     defending the cases.  Do you see that?

5          A.   Yes, I do.

6          Q.   All right.  So do you know where

7     the general defense of asserting that there

8     was no asbestos in Emtal talc originated?

9               MR. FARRELL:  Objection --

10    BY MR. PLACITELLA:

11         Q.   Where did that come from?

12              MR. FARRELL:  Objection to form,

13         foundation.

14    BY MR. PLACITELLA:

15         Q.   You can answer.

16         A.   I'm sorry, regarding the absence

17    of asbestos in talc --

18         Q.   Correct.

19         A.   -- specifically?

20         Q.   In a Emtal talc specifically,

21    where that defense originated.

22         A.   Well, that.

23              MR. FARRELL:  One second.

24              Are you asking the identity of a

25         person or a party or -- I'm not



1          following your question.  I'm trying

2          to figure out if there's a privilege

3          objection here or not.

4   BY MR. PLACITELLA:

5          Q.   Well, I'll ask the question this

6   way:  Do you know what the factual basis was

7   for the defense that was asserted in the

8   talc cases, the Emtal talc cases, that there

9   was no evidence of asbestos in Emtal talc?

10             MR. FARRELL:  Objection to form,

11         foundation, misstates the record.

12  BY MR. PLACITELLA:

13         Q.   You can answer.

14         A.   So I can speak to some extent

15  about this.  It was obviously the defense.

16  And the specific topic that you're speaking

17  of, the absence of asbestos in talc, was

18  only part of that defense, that strategy

19  that was developed.  But it was developed by

20  Cahill.  So I can only speak to some extent

21  about that.

22             Part of the factual basis was the

23  Ashton affidavit.  There are -- parts of the

24  defense are part of the privileged record

25  that I haven't been able to see.  So I can



Page 202

1    only speak to the part that I know about.

2         Q.   What was the source of the

3    information for the defense that there was

4    no evidence of asbestos in Emtal talc?

5              MR. FARRELL:  Objection to form,

6         foundation, misstates the record.

7              THE WITNESS:  Again, this was

8         done at Cahill, so I can only speak to

9         it to a certain extent.  One of the

10        sources was the information in the

11        Ashton document.  Those were published

12        articles and studies regarding the

13        historical record related to asbestos

14        in talc.  It also included some

15        studies in and analyses that had been

16        done specifically on Emtal talc.

17             My understanding, I believe from

18        testimony that, that Cahill people

19        provided, was that they had other

20        information and other analyses that

21        went into the development of that

22        defense.  I haven't seen it because I

23        haven't seen the privileged documents.

24   BY MR. PLACITELLA:

25        Q.   You understand that Ashton was an



Page 203

1    expert hired by Cahill?

2              MR. FARRELL:  Objection to form,

3         foundation, misstates the record.

4              THE WITNESS:  I don't know who

5         hired him.  I know he worked for J&J.

6         He was part of the group that put

7         together that document.  I'm not sure

8         exactly what their relationship with

9         him was.

10   BY MR. PLACITELLA:

11        Q.   Okay.  He never worked for

12   Engelhard; correct?

13        A.   Not that I know.

14        Q.   Never worked for BASF?

15        A.   Not that I know.

16        Q.   The information he provided that

17   you said was part of the factual foundation

18   for the "no asbestos" did not originate with

19   an Engelhard employee; is that fair?

20             MR. FARRELL:  Objection to form,

21        foundation, misstates Mr. Steinmetz's

22        testimony.

23             THE WITNESS:  My understanding

24        about him was that he was a J&J

25        employee who had knowledge of the



Page 204

1          Johnson mine because Johnson had

2          previously owned that.  I don't have

3          any information that he was ever a

4          BASF or an Engelhard employee.

5     BY MR. PLACITELLA:

6          Q.   Was -- do you know of a basis for

7     the assertion that there was no evidence of

8     asbestos in Emtal talc other than -- well,

9     scratch that.

10          What is your understanding of

11    the first time that defense was asserted,

12    that there was no evidence of asbestos in

13    Emtal talc?

14          MR. FARRELL:  Objection to form,

15          foundation.

16          THE WITNESS:  And, I'm sorry,

17          you're talking about the assertion

18          from the, from the perspective of the

19          defense, the legal defense team at

20          Cahill?

21    BY MR. PLACITELLA:

22          Q.   Well, they're -- they were your

23    lawyers; right?  I mean, it was Engelhard

24    and BASF's lawyers; right?

25          A.   But as I mentioned, it was Cahill



Page 205

1    that developed the defense strategy.  So I'm

2    just trying to figure out, when you talk

3    about the assertions, whether you're talking

4    about the assertions --

5          Q.    Okay.

6          A.    -- that Cahill made.

7          Q.    You authorized Cahill to develop

8    that strategy; correct?

9               MR. FARRELL:  Objection to form,

10         foundation.

11              THE WITNESS:  My understanding is

12         yes.

13   BY MR. PLACITELLA:

14         Q.    Okay.  Was there anyone who

15   worked for Engelhard with firsthand

16   knowledge who was able to provide facts to

17   support the defense that there was no

18   asbestos in Emtal talc?

19              MR. FARRELL:  Objection to form,

20         foundation, misstates the record.

21              THE WITNESS:  Could you repeat

22         that again.

23   BY MR. PLACITELLA:

24         Q.    Sure.  Was there anyone who

25   worked for Engelhard with firsthand



Page 206

```
 1    knowledge who was able to provide facts to
 2    support the defense there was no asbestos in
 3    Emtal talc?
 4              MR. FARRELL:  Same objections.
 5              THE WITNESS:  I presume you're
 6         talking about Engelhard employees when
 7         you say "who worked for Engelhard."
 8    BY MR. PLACITELLA:
 9         Q.   Correct.
10         A.   My -- from what I've read, I, I
11    would, I believe that there were people who
12    were available.  How they were used or if
13    they were used I don't know because I don't
14    have any information regarding the
15    development of the, of the defense strategy
16    other than the fact that there was a
17    development within Cahill and that that
18    development is in privileged documents.
19         Q.   I don't want to know about --
20         A.   So I don't know the process that
21    they used, so I don't know who they might
22    have contacted.
23         Q.   My question to you is:  Based on
24    your investigation, are you aware of any
25    Engelhard employee who had firsthand
```



Page 207

```
 1    knowledge/information/facts to support the

 2    defense there was no asbestos in Emtal talc?

 3              MR. FARRELL:  Objection to form,

 4         foundation, misstates the record.

 5              THE WITNESS:  There may have

 6         been.  I don't know what went into the

 7         report or what went into their

 8         strategy, so I can't say whether there

 9         were Engelhard people involved.

10    BY MR. PLACITELLA:

11         Q.   As you sit here today, are you

12    able to identify a single Engelhard or BASF

13    employee that was able to provide facts,

14    scientific facts to support the defense

15    there was no asbestos in Emtal talc?

16              MR. FARRELL:  Objection to form

17         and foundation.

18              THE WITNESS:  And, I'm sorry,

19         when you say "was able to," you mean

20         did they?  Or were they -- did they

21         have the capability?

22    BY MR. PLACITELLA:

23         Q.   Did they have information to

24    support the defense.  Do you want me to

25    rephrase it?
```



Page 208

1                 As you sit here today, are you

2    able to point to a single Engelhard employee

3    who could come forward with firsthand

4    knowledge of the testing that was done and

5    say there was no evidence of asbestos in

6    Emtal talc?

7                 MR. FARRELL:  Objection to form,

8           foundation, misstates the record.

9                 THE WITNESS:  I don't know who

10          was working for the company in 1987,

11          and I'd have to -- I don't know is the

12          answer.

13   BY MR. PLACITELLA:

14        Q.   If -- you've read the transcripts

15   of Dr. Hemstock?

16        A.   Yes.

17        Q.   Okay.  And you've read the

18   transcripts he's given after the Westfall

19   case?

20                MR. FARRELL:  Objection to form.

21                THE WITNESS:  Yes.

22   BY MR. PLACITELLA:

23        Q.   Is he a person who would have

24   come forward, based on his testimony, and

25   provide a factual basis to indicate that


MAGNA
LEGAL SERVICES

Page 209

1    there was no asbestos in Emtal talc, no

2    evidence of asbestos in Emtal talc?

3              MR. FARRELL:  Objection to form,

4         foundation, misstates the record.

5              THE WITNESS:  I'm not sure.  I'd

6         have to go back.  I'm not sure what --

7         when he left the company, if he was

8         still with Engelhard in 1987.  If he

9         was, he would have information

10        regarding Emtal talc.

11   BY MR. PLACITELLA:

12        Q.   But his testimony, was it not,

13   that he found both asbestos in the talc and

14   in the ore; correct?

15             MR. FARRELL:  Objection to form,

16        foundation, misstates Dr. Hemstock's

17        testimony.

18             THE WITNESS:  That's a pretty

19        complex question.  His testimony was

20        that in certain samples they had

21        detected trace amounts of chrysotile

22        asbestos.

23   BY MR. PLACITELLA:

24        Q.   Okay.  I'm going to show you --

25   I'll give you a partial transcript of



Page 210

1    Dr. Hemstock.  You've had the opportunity to

2    review -- it's marked, by the way,

3    Exhibit 3.

4              (A document previously marked as

5    Exhibit 3 was introduced.)

6    BY MR. PLACITELLA:

7        Q.   You've read the whole transcript

8    before; correct?

9              MR. FARRELL:  Do you have a

10        complete copy?

11             MR. PLACITELLA:  No, I don't.  I

12        had to bring a huge box of stuff on

13        the train to accommodate you and the

14        witness.  But I did bring the pages

15        that I want to ask him about.

16             If you want to take a break --

17        we're at your office -- and you want

18        to bring a complete copy in, we can do

19        that.

20             MR. FARRELL:  Let me do that.

21             MR. PLACITELLA:  Okay.

22             THE VIDEOGRAPHER:  The time is

23        now 2:11 p.m.  We're going off the

24        record.

25             MR. PLACITELLA:  Why don't we do



Page 211

```
 1          that on a break and I'll keep asking

 2          questions.  And we'll come back to it.

 3          Okay?

 4                 MR. FARRELL:  You'll move off of

 5          this?

 6                 MR. PLACITELLA:  Well, I'll ask

 7          other questions.  And when we take a

 8          break, you can do it, so we can keep

 9          the deposition moving.

10                 (Discussion held off the record.)

11                 THE VIDEOGRAPHER:  The time is

12          now 2:12 p.m.  We are back on the

13          record.

14   BY MR. PLACITELLA:

15          Q.   So I want to be careful how I ask

16   it so I don't ask it too many times.

17                 As you sit here today, are you

18   aware of any Engelhard scientist who

19   provided information to support the defense

20   that there was no evidence of asbestos in

21   Emtal talc?

22                 MR. FARRELL:  Objection to form,

23          foundation, misstates the record,

24          asked and answered.

25                 THE WITNESS:  Again, the defense
```



```
 1          was developed by Cahill.  It was --
 2          and it was a defense that incorporated
 3          legal, regulatory and, and science
 4          issues.  I don't know of any Engelhard
 5          employees who had input into it.
 6   BY MR. PLACITELLA:
 7          Q.   Okay.  Before Engelhard asserted
 8   or gave Cahill authorization to assert this
 9   defense, did they make the Engelhard R&D
10   scientists available to Cahill to determine
11   whether that defense would be valid?
12               MR. FARRELL:  Objection to form,
13          foundation, misstates the record.
14               THE WITNESS:  And, I'm sorry,
15          what timeframe are you speaking about
16          the...?
17   BY MR. PLACITELLA:
18          Q.   At any point in time.
19               MR. FARRELL:  Same objections.
20               THE WITNESS:  Well, they
21          certainly made those people available
22          in 1982; yes.
23   BY MR. PLACITELLA:
24          Q.   That wasn't the defense in 1982,
25   though, was it?
```



Page 213

```
 1              MR. FARRELL:  Objection to form
 2         and foundation.
 3              THE WITNESS:  It was the initial
 4         preparation where the information was
 5         initially transferred to Cahill.
 6   BY MR. PLACITELLA:
 7         Q.   Right.  But the Westfall case
 8   wasn't defended on the basis that there was
 9   no evidence of asbestos in Emtal talc;
10   correct?
11              MR. FARRELL:  Objection to form
12         and foundation.
13              THE WITNESS:  I'm not very
14         familiar with the defense in that
15         case.
16   BY MR. PLACITELLA:
17         Q.   Okay.  So before authorizing
18   Cahill to assert the defense that there was
19   no evidence of asbestos in Emtal talc, did
20   Engelhard or BASF make sure that that
21   defense was consistent with what was known
22   by the Engelhard scientists about the
23   presence of asbestos in the talc?
24              MR. FARRELL:  Objection to form,
25         foundation, asked and answered.
```



```
 1              THE WITNESS:  I'm sorry.  Could
 2         you repeat it.
 3              MR. PLACITELLA:  Yeah, can you
 4         repeat it.
 5              (The court reporter read back the
 6    pending question.)
 7              MR. FARRELL:  Same objections.
 8              THE WITNESS:  My general, my
 9         general feeling here is that Engelhard
10         had -- was relying on Cahill to
11         develop an appropriate defense.
12         Cahill developed that defense.  I'm
13         not sure that -- of everything that
14         went into it because of the fact that
15         much of it is privileged.  So I don't
16         know exactly what input the Engelhard
17         people might have had into that.  So I
18         don't know.
19    BY MR. PLACITELLA:
20         Q.   Okay.  So you don't know?
21              MR. FARRELL:  Objection to form,
22         foundation, asked and answered.
23    BY MR. PLACITELLA:
24         Q.   Before Engelhard and BASF
25    authorized Cahill to assert the defense that
```



Page 215

1    there's no evidence of asbestos in Emtal

2    talc, did they require Cahill to review the

3    testing records and make sure that they were

4    consistent with the representations that

5    were being made?

6                MR. FARRELL:  Objection to form,

7           foundation, calls for privileged

8           information to the extent you're

9           asking him about a communication

10          between Engelhard and Cahill Gordon.

11               Do you want to rephrase your

12          question to sidestep the communication

13          part of that?

14   BY MR. PLACITELLA:

15       Q.   You are aware that Engelhard and

16   BASF employees signed discovery responses

17   asserting -- well, signed discovery

18   responses in the Emtal talc litigation on

19   behalf of Engelhard and BASF; correct?

20               MR. FARRELL:  Objection to form.

21   BY MR. PLACITELLA:

22       Q.   You're aware that happened?

23       A.   And you're talking about what

24   timeframe, just --

25       Q.   In general.



Page 216

```
 1        A.    Since --
 2              MR. FARRELL:  Objection to form
 3        and foundation.
 4              THE WITNESS:  Clearly, that --
 5        Engelhard employees did sign those.
 6        It's over a long period of time.  And
 7        that's about as much as I can say
 8        without seeing a specific instance in
 9        front of me.
10   BY MR. PLACITELLA:
11        Q.    Okay.  You're aware that in
12   discovery responses both Engelhard and BASF
13   asserted that there was no evidence of
14   asbestos in Emtal talc; correct?
15              MR. FARRELL:  Objection to form,
16        foundation, misstates the record.
17              THE WITNESS:  I'm sorry.  Could
18        you repeat it.
19   BY MR. PLACITELLA:
20        Q.    You're aware that in discovery
21   responses both Engelhard and BASF took the
22   position that there was no asbestos in Emtal
23   talc; correct?
24              MR. FARRELL:  Objection to form,
25        foundation, misstates the record,
```



Page 217

```
 1          vague as to which interrogatory

 2          response you're talking about.

 3               THE WITNESS:  Again, it would

 4          depend on which one we're talking

 5          about specifically.  Some may have;

 6          some may not have.

 7               In general, these cases were all

 8          very different.  They had different

 9          complaints; they were settled in

10          different ways; they had different

11          facts associated with each case.

12          There may have been different types of

13          interrogatories; there may have been

14          different types of depositions.

15               In some cases, whether or not

16          there was asbestos in the talc may not

17          have even been an issue and may not

18          have even been involved in the

19          defense.

20               So to answer that, I'd have to

21          look, like I said, at the individual

22          documents and comment.

23     BY MR. PLACITELLA:

24          Q.   That's fine.  I was just trying

25     to make it a shorter deposition.  But we'll
```



Page 218

1    go through them.  Okay.

2              Am I correct that Engelhard was

3    aware that plaintiffs were being asked to

4    dismiss their cases on the basis of the

5    assertion that there was no asbestos in

6    Emtal talc?

7              MR. FARRELL:  Objection to form

8         and foundation.

9              THE WITNESS:  I've seen a few

10        examples of letters where that type

11        of, of information was included in a

12        letter.  Often it was included with

13        other parts of the Emtal defense, such

14        as product-ID issues and other things.

15             In general, though, again, I'd

16        have to look at each case

17        independently because they're all

18        different, they all had different

19        outcomes for different reasons, just

20        so many different types of issues that

21        were raised that you can't make a

22        blanket statement for all of them.

23   BY MR. PLACITELLA:

24        Q.   What was my question, sir?

25             MR. FARRELL:  Objection,



```
 1          argumentative.
 2               THE WITNESS:  I'm sorry, I
 3          thought I answered it.
 4     BY MR. PLACITELLA:
 5          Q.   What was it?
 6          A.   I don't -- could you repeat it.
 7               MR. FARRELL:  Objection,
 8          argumentative.
 9     BY MR. PLACITELLA:
10          Q.   Okay.  Sir, I'm asking you:
11     Engelhard was aware that plaintiffs were
12     being asked to dismiss their cases on the
13     basis that there was no asbestos in Emtal
14     talc; correct?
15               MR. FARRELL:  Objection to form,
16          foundation, asked and answered.
17               THE WITNESS:  And the reason I
18          answered it the way I did was because
19          your question was that they were
20          asking plaintiffs to do that.  And my
21          answer was that in some case that may
22          have part of the communication between
23          Cahill and plaintiffs, but not in
24          every case.
25               In fact, in most cases there were
```



Page 220

```
 1          probably other reasons that they were

 2          communicating and asking and bringing

 3          in other defense strategies.

 4  BY MR. PLACITELLA:

 5          Q.   With all due respect, sir, I'll

 6  move to strike your answer because it's not

 7  responsive to my question.

 8               Sir, was the letters and the

 9  representations concerning the absence of

10  asbestos in Emtal talc authorized by

11  Engelhard?

12               MR. FARRELL:  Objection to form,

13          foundation, asked and answered now for

14          a third time.

15               THE WITNESS:  So that's a

16          slightly different question.

17               Engelhard obviously signed off on

18          many of those documents, if they were

19          interrogatories or responses or

20          something like that.  In many cases

21          letters may have been sent that the,

22          that the Engelhard people didn't see

23          because they were depending on Cahill

24          to provide the defense; and so not

25          every piece of information or paper
```



Page 221

```
 1          went across an Engelhard desk for

 2          approval.

 3               So in some cases they may have,

 4          to answer your question.  But in many

 5          cases, maybe most cases, I don't know

 6          that they were.

 7   BY MR. PLACITELLA:

 8        Q.   Sir, I didn't ask you whether

 9   each piece of paper was being approved.  I

10   said:  Did Engelhard and BASF authorize

11   Cahill to make representations that there

12   was no asbestos in Emtal talc?

13               MR. FARRELL:  Objection to

14          form --

15   BY MR. PLACITELLA:

16        Q.   Authorize.

17               MR. FARRELL:  Objection to form,

18          foundation, asked and answered.

19               THE WITNESS:  Again, BASF

20          authorized them to put together a

21          defense strategy.  That defense

22          strategy included many elements.  It

23          included, first and foremost, product

24          ID.  That was as testified by

25          Mr. Joslyn.
```



```
 1                They also included jurisdictional

 2          issues that may or may not have been

 3          important in settling a case.

 4                And then they also included the

 5          absence of asbestos in the talc.  So

 6          they were all parts of the defense.

 7                Different letters contained

 8          different information.  It depends on

 9          what the case was, what the facts of

10          the case was -- were.  And so there

11          may have been different documents sent

12          at different times that may or may not

13          have been approved or part of the

14          approved defense strategy that Cahill

15          put together.

16                So it's, it's impossible to

17          answer that as a blanket yes or no.

18     Q.    What was my question, sir?

19                MR. FARRELL:  Objection,

20          argumentative.

21                THE WITNESS:  I guess if you

22          repeat it again, I'll try again.

23   BY MR. PLACITELLA:

24     Q.    Do you have any idea what my

25   question was?
```



Page 223

```
 1              MR. FARRELL:  Objection,

 2        argumentative.

 3              THE WITNESS:  I thought I did.

 4        But if I got it wrong, I'll try again.

 5   BY MR. PLACITELLA:

 6        Q.   Do you know what my question was?

 7              MR. FARRELL:  Objection,

 8        argumentative.

 9   BY MR. PLACITELLA:

10        Q.   You don't; right.

11              Next question:  Was Cahill, BASF,

12   and Engelhard aware that cases or some cases

13   were being settled at low values based upon

14   the representation that there was no

15   asbestos in Emtal talc?

16              MR. FARRELL:  Objection to form,

17        foundation.

18              THE WITNESS:  So I guess my first

19        question about this is where you

20        mention low valves.  I'm not sure what

21        you mean by that because the value is

22        what the plaintiff puts on the

23        settlement.

24              So I don't know that you would

25        call something a low settlement if
```



Page 224

```
 1          that's what the plaintiff thought was

 2          fair.

 3   BY MR. PLACITELLA:

 4       Q.   Okay.  That's a fair question.

 5   So what the plaintiff put on the settlement,

 6   that would include whether they could prove

 7   their case; right?

 8              MR. FARRELL:  Objection to form.

 9              THE WITNESS:  Yes.  It would

10          include things like was there a

11          product- identification issue, were

12          there statute-of-limitations issues.

13          I mean, we've seen many of these

14          issues, even in the case that were a

15          part of the one that we're discussing

16          today.

17              Were there issues related to

18          personal jurisdiction?  Were there

19          issues related to medical fraud?

20              There were a lot of things that

21          went into this.  So those all would

22          have a bearing on what type of

23          settlement, obviously, that would be

24          appropriate and acceptable to the

25          plaintiff or -- and to the, to the
```



Page 225

```
 1          defense.
 2               So I guess in order to answer
 3          these questions, it really has to be
 4          on a case-specific basis because it's
 5          difficult to talk across all of these
 6          hundreds or thousands of cases are all
 7          so very different.
 8    BY MR. PLACITELLA:
 9          Q.   Sir, if you can't prove there was
10    asbestos in the talc, your case is over;
11    correct?
12               MR. FARRELL:  Objection to --
13    BY MR. PLACITELLA:
14          Q.   There's nothing else to worry
15    about; right?
16               MR. FARRELL:  Objection to form,
17          foundation, assumes facts.
18               THE WITNESS:  The first thing I
19          would look at is was the product even
20          in the, in the facility?  Was there a
21          product-identification issue.
22               We have one of the cases in, one
23          of the cases that were in this, in
24          this case, for example, was a Harshaw
25          case where it was dismissed because
```



Page 226

```
 1          Harshaw wasn't selling Emtal talc, for

 2          example.

 3   BY MR. PLACITELLA:

 4          Q.   Did I ask you anything about

 5   product identification, sir?

 6          A.   No, but --

 7               MR. FARRELL:  Object -- one

 8          moment.

 9   BY MR. PLACITELLA:

10          Q.   Sir --

11               MR. FARRELL:  Objection,

12          argumentative.

13   BY MR. PLACITELLA:

14          Q.   Sir, let me ask the question

15   again.

16               If you can't prove there was

17   asbestos in the talc, you don't have to get

18   to any other issue; correct?

19               MR. FARRELL:  Objection to form,

20          foundation.

21               THE WITNESS:  And if you could

22          prove more easily that there was never

23          a product in the, in the facility,

24          that's easier to do; and you don't

25          have to go any further either.  So it
```



Page 227

```
 1           depends on the case.
 2      BY MR. PLACITELLA:
 3           Q.   Sir, if you can't prove there was
 4      asbestos in the talc, there's no reason to
 5      even look at product identification;
 6      correct?
 7                MR. FARRELL:  Objection to form,
 8                foundation, asked and answered.
 9                THE WITNESS:  Except that we know
10                that some cases were settled whether
11                or not companies claimed to have
12                asbestos in their talc or not, and
13                they were settled in the identical
14                same ways for all talc manufacturers.
15                So all I'm saying is that I'm --
16                I'm not a lawyer.  I just know that
17                there are a lot of things that go into
18                this.  And it's not just a matter of
19                whether or not there's asbestos in the
20                talc.
21      BY MR. PLACITELLA:
22           Q.   Sir, have you had any media
23      training?
24                MR. FARRELL:  Objection to form,
25                argumentative.
```



1             THE WITNESS:  Never.

2    BY MR. PLACITELLA:

3         Q.    Have you ever practiced

4    depositions on videotapes?

5         A.    Never.

6         Q.    Okay.  Can you prove a case

7    alleging exposure to -- asbestos exposure

8    involving Em- -- talc without proving

9    there's asbestos in the talc?  Can you prove

10   it?

11            MR. FARRELL:  Objection to form,

12        foundation, calls for a legal

13        conclusion, asked and answered three

14        or four times now.

15            THE WITNESS:  I'm -- I really

16        have no idea.  I'm not a lawyer.

17   BY MR. PLACITELLA:

18        Q.    Okay.

19        A.    I just don't know if you could or

20   not.

21        Q.    Okay.  Am I correct that

22   Engelhard and BASF was aware and constantly

23   updated concerning the status of legal

24   strategies being used to defend the Emtal

25   talc cases?



Page 229

```
 1              MR. FARRELL:  Object --
 2              THE WITNESS:  Excuse me.
 3              MR. FARRELL:  Objection to form,
 4         foundation.
 5              THE WITNESS:  I'm not sure if the
 6         word "constantly" is accurate.  I,
 7         I -- my understanding is there were
 8         regular updates.  I just don't know
 9         what the term "constant" means.
10    BY MR. PLACITELLA:
11         Q.   Do you know what products the
12    Emtal talc was used in as a constituent?
13              MR. FARRELL:  Object -- objection
14         to form, foundation, beyond the scope
15         of the notice.
16              MR. PLACITELLA:  Well, with all
17         due respect, he's the one that brought
18         up product ID, not me.
19              MR. FARRELL:  I'm sorry.  I've
20         stated an objection.  Which topic in
21         your notice does that relate to?
22              MR. PLACITELLA:  I'm following up
23         on the witness' answer.
24    BY MR. PLACITELLA:
25         Q.   Do you know --
```



```
 1              MR. FARRELL:  Objection to form,
 2         foundation, beyond the scope of the
 3         notice.
 4    BY MR. PLACITELLA:
 5         Q.   Go ahead.
 6         A.   I've seen a lot of this in the
 7    past, and I know some of the uses and
 8    applications.  I just don't remember
 9    everything, obviously.
10         Q.   Well, tell me what you remember.
11         A.   Emtal talc was used in the rubber
12    industry; tire-and-rubber industry, it was
13    fairly commonly used.  It was used to some
14    extent in auto-body fillers.  I believe
15    there were uses in paints and other types of
16    coatings.
17         Q.   Was it even used in children's
18    balloons; right?
19              MR. FARRELL:  Objection to form,
20         foundation, beyond the scope of the
21         notice.
22              THE WITNESS:  There may have been
23         some used at some point; yes.
24    BY MR. PLACITELLA:
25         Q.   Now...
```



Page 231

```
 1                (A document previously marked as

 2    Exhibit 131 was introduced.)

 3    BY MR. PLACITELLA:

 4         Q.   You have in front of you

 5    Exhibit 131, which is a letter from Cahill

 6    Gordon dated November 24th -- I'm sorry

 7    July 24th, 1996.  Do you see that?

 8         A.   I do, yes.

 9         Q.   And you've seen this before;

10    correct?

11         A.   I believe.  I've seen a lot of

12    these.  I think I've seen this one.

13         Q.   Okay.  In this letter, Cahill

14    Gordon writes to Mr. Bevan; correct?

15         A.   Yes.

16         Q.   And he -- and they write

17    requesting dismissal of Mr. Bevan's Emtal

18    talc cases; correct?

19              MR. FARRELL:  Objection to form.

20              THE WITNESS:  Is it okay if I

21         read through it real quickly.

22    BY MR. PLACITELLA:

23         Q.   Please.  Take your time.

24         A.   Okay.  I've read it.

25         Q.   He states -- and I highlighted
```



Page 232

1    the part I want to talk to you about --

2    [reading]:  Simply, the basis for this

3    request is the same reason that you and

4    Mr. Economus have dismissed certain other

5    plaintiffs' actions against Emtal.

6              Do you see that?

7         A.   Yes, I do.

8         Q.   [Reading]:  Namely, this action

9    is an asbestos case and there is no evidence

10   whatsoever that talc mined and milled by

11   Emtal contained asbestos.

12             Do you see that?

13        A.   Yes.

14        Q.   What's the factual basis for that

15   statement?

16             MR. FARRELL:  Objection to form

17        and foundation.

18             THE WITNESS:  Well, first, a

19        couple of comments.  This was one

20        document out of maybe a dozen or so of

21        who knows how many documents and

22        back-and-forths there were between

23        these, between these attorneys.

24             But I would -- reading this,

25        the -- it doesn't say what -- he



Page 233

```
 1          doesn't describe what the factual

 2          basis is.  But we know that Cahill had

 3          developed this legal strategy and that

 4          the factual basis was both science and

 5          nature, that the science of what the

 6          data showed, what analyses showed, as

 7          well as a regulatory and legal

 8          analysis.

 9               Again, I don't know everything

10          that went into that.  But I would

11          think that the factual basis of this

12          was the legal strategy and analysis

13          that Cahill developed.

14     BY MR. PLACITELLA:

15          Q.   And this letter was authorized by

16     Engelhard; correct?

17               MR. FARRELL:  Objection to form

18          and foundation.

19               THE WITNESS:  I don't know that

20          this was authorized by Engelhard.

21     BY MR. PLACITELLA:

22          Q.   Well, Cahill couldn't send a

23     letter like this without authorization from,

24     from Engelhard; correct?

25               MR. FARRELL:  Objection to form
```



Page 234

1          and foundation, asked and answered.

2              THE WITNESS:  I would imagine

3          they could.  I don't know if they did

4          in this case, but I think they could;

5          yes.

6    BY MR. PLACITELLA:

7          Q.   So are you aware of instances

8    where representations are made like this --

9    do you have -- let me strike that.

10             What evidence do you have as you

11   sit here today that this letter was not

12   authorized?

13         A.   I don't see evidence that it was

14   authorized.

15         Q.   Didn't you give Cahill Gordon a

16   general authorization to represent you and

17   to write letters like this?

18             MR. FARRELL:  Objection to form,

19         foundation.

20             THE WITNESS:  My understanding is

21         the authorization was to develop and

22         implement an appropriate legal

23         strategy.

24   BY MR. PLACITELLA:

25         Q.   So are you sitting here today



Page 235

1    saying this letter was not authorized?

2              MR. FARRELL:  Objection to form,

3         foundation, asked and answered.

4              THE WITNESS:  I'm just saying

5         that I don't know that it was

6         specifically authorized in this case

7         by anybody at Engelhard.

8    BY MR. PLACITELLA:

9         Q.   That wasn't my question.  My

10   question wasn't whether this piece of paper.

11             The representation that was made

12   in this document that there's no evidence

13   whatsoever, is that a representation that

14   was authorized by Engelhard?

15             MR. FARRELL:  Objection to form,

16        foundation, asked and answered several

17        times now.

18             THE WITNESS:  As I mentioned, the

19        legal strategy was known to Engelhard.

20        They had worked -- they had hired

21        Cahill to development and implement an

22        appropriate strategy.

23             To say that every word in this

24        letter was authorized is not -- it

25        probably wasn't.  So if you're



Page 236

1           wondering about the term "absolutely

2           no" or "no evidence whatsoever," was

3           that specifically authorized, I doubt

4           it.  I don't think that anybody at

5           Engelhard reviewed this letter for

6           that type of thing.

7     BY MR. PLACITELLA:

8           Q.   Well, sir, you've read the Cahill

9     compilation; correct?

10               MR. FARRELL:  Objection to form.

11               THE WITNESS:  I have seen those

12          parts that aren't -- I haven't read

13          it.  I've seen most of the documents

14          in there that aren't privileged.

15    BY MR. PLACITELLA:

16          Q.   Right.  You've looked at the

17    nonprivileged documents and you've given, in

18    fact, in the Fields case almost a whole day

19    of deposition about those documents; right?

20          A.   About some of them.

21          Q.   Yeah.  Do those documents support

22    the assertion that there is no evidence

23    whatsoever?

24               MR. FARRELL:  Objection to form,

25          foundation.



Page 237

```
 1              THE WITNESS:  So we're getting to
 2         the question of whether or not there
 3         was asbestos in the talc.  And --
 4    BY MR. PLACITELLA:
 5         Q.  No.  I'll -- with all due
 6    respect, I don't want to stop you.  What I'm
 7    asking you is --
 8              MR. FARRELL:  He's in the middle
 9         of answering a question.
10    BY MR. PLACITELLA:
11         Q.  I'm asking you --
12              MR. FARRELL:  Mr. Placitella, you
13         cannot cut off a witness in the middle
14         of a responding to your question.
15              MR. PLACITELLA:  All right.  I'll
16         withdraw the question.  I'll ask it a
17         different way.
18    BY MR. PLACITELLA:
19         Q.  Yes or no, do the documents in
20    the Cahill compilation support the assertion
21    that there was no evidence whatsoever that
22    the talc, the Emtal talc contained asbestos?
23              MR. FARRELL:  That was the
24         question he just started answering.
25              MR. PLACITELLA:  No, it wasn't.
```



Page 238

```
 1              MR. FARRELL:  You cut him off and

 2         withdrew the question.

 3    BY MR. PLACITELLA:

 4         Q.   Yes or no?

 5              MR. FARRELL:  Objection to form,

 6         foundation, calls for expert

 7         testimony.

 8              THE WITNESS:  The -- this isn't a

 9         yes-or-no answer.

10    BY MR. PLACITELLA:

11         Q.   All right.  Fine.

12         A.   I'm sorry.  It's just very

13    complicated, and it deserves more than a yes

14    or no.

15         Q.   You don't have to apologize.  If

16    you don't understand "no evidence

17    whatsoever," that's fine.

18              MR. FARRELL:  Objection,

19         argumentative, misstates his

20         testimony.

21              MR. PLACITELLA:  Okay.

22              THE WITNESS:  One other comment I

23         would make about --

24    BY MR. PLACITELLA:

25         Q.   There's no question pending, sir.
```



1           MR. FARRELL:  Go ahead,

2      Mr. Steinmetz.

3           MR. PLACITELLA:  There is no

4      question pending.

5           MR. FARRELL:  The witness has

6      just asked --

7           MR. PLACITELLA:  No.

8           MR. FARRELL:  -- asked for an

9      opportunity to amplify his testimony.

10          MR. PLACITELLA:  No.  There's no

11     question pending.

12          MR. FARRELL:  Go ahead,

13     Mr. Steinmetz.

14          MR. PLACITELLA:  Here is

15     Exhibit 228.  I want you to take a

16     look at it.

17          (A document previously marked as

18  Exhibit 228 was introduced.)

19          THE WITNESS:  Yeah, I was just

20     going to say the, the one comment I

21     have is the next paragraph down, the

22     writer does talk about the fact that

23     they've disagreed concerning

24     particular issues of liability and

25     causation.  So there was obviously a



Page 240

```
 1        great deal -- or there were more than

 2        just this communication between the

 3        people.  So there may have been other

 4        issues that came up.  That's all I've

 5        got to say.

 6  BY MR. PLACITELLA:

 7        Q.   What's that got to do with "no

 8  evidence whatsoever"?

 9             MR. FARRELL:  Objection,

10        argumentative.

11             THE WITNESS:  It, it just goes to

12        my point that in every one of these

13        cases there's more than just one issue

14        as part of the, as part of the

15        defense.  That's all.

16  BY MR. PLACITELLA:

17        Q.   Move to strike, sir, with all due

18  respect.

19             MR. FARRELL:  Not liking, not

20        liking a witness' answer is not --

21             MR. PLACITELLA:  Please, that's

22        not --

23             MR. FARRELL:  -- grounds to

24        strike --

25             MR. PLACITELLA:  That's not a
```



```
 1          proper objection.  Please don't do

 2          that.  Please don't do it.

 3                MR. FARRELL:  Well, please don't

 4          make baseless --

 5                MR. PLACITELLA:  Please don't do

 6          it.

 7                MR. FARRELL:  -- baseless motions

 8          to strike --

 9                MR. PLACITELLA:  Please don't do

10          it.

11                MR. FARRELL:  -- please don't

12          interrupt the witness in the middle of

13          his answer.  Please don't direct the

14          witness not to amplify his testimony

15          when he's permitted to do so.

16                MR. PLACITELLA:  Okay.

17    BY MR. PLACITELLA:

18          Q.   You have in front of you

19    Exhibit 228.  Do you see that?

20          A.   Yes.

21          Q.   This is a letter, March 2nd,

22    1990, to Mr. Smith.  Do you see that?

23          A.   I do.

24          Q.   Okay.  And in this letter

25    Engelhard asks Mr. Smith to dismiss his
```



Page 242

1    cases on the basis that the Emtal talc did

2    not contain asbestos; correct?

3              MR. FARRELL:  Objection to form

4         and foundation.

5              THE WITNESS:  May I read it real

6         quickly?

7              MR. BOISE:  Mischaracterizes the

8         letter as well.

9              THE WITNESS:  Okay.  I've read

10        through it.

11   BY MR. PLACITELLA:

12        Q.   Okay.  In this letter, Mr. Smith

13   is asking -- being asked to dismiss his

14   cases on the basis that the Emtal talc did

15   not contained asbestos; correct?

16             MR. FARRELL:  Objection to form,

17        foundation, misstates the letter.

18             THE WITNESS:  Well, it does say

19        that there is an affidavit prepared by

20        Ashton indicating that the mine --

21        that the talc mined by Emtal did not

22        contain asbestos.

23             It does ask for dismissal; but it

24        doesn't necessarily say that they want

25        dismissal just because of that, as I



Page 243

```
 1          read it.
 2                 And there may have been other
 3          issues here too.
 4   BY MR. PLACITELLA:
 5          Q.   Well, show them to me, sir.  What
 6   other issues are in this letter other than
 7   the fact that Engelhard is telling this
 8   lawyer that there's no asbestos in the Emtal
 9   talc?  What other issues are in this letter?
10               MR. FARRELL:  Objection to form,
11          foundation, misstates Mr. Steinmetz's
12          testimony, and misstates the letter.
13               THE WITNESS:  I, I can't -- I
14          don't necessarily -- I can read
15          through this and see what other things
16          are referred to.  I'm just -- in
17          general, so many tire worker cases
18          were, were settled because of reasons
19          other than asbestos, as we know.
20   BY MR. PLACITELLA:
21          Q.   Sir, you told me we had to go
22   through each individual letter.  So that's
23   what I'm doing.  And I'm asking you where in
24   this letter does it talk about anything
25   other than you're asking for a dismissal
```



Page 244

1    based on the fact -- on your assertion that

2    there was no asbestos in the Emtal talc?

3             MR. FARRELL:  Objection --

4    BY MR. PLACITELLA:

5        Q.   Show me in the letter.

6             MR. FARRELL:  Objection to form,

7        foundation, misstates Mr. Steinmetz's

8        testimony, misstates the letter, asked

9        and answered.

10            THE WITNESS:  I guess my problem

11       with this letter is that this is part

12       of a bigger picture.  And there's the

13       sentence right before that second

14       paragraph says [reading]:  The purpose

15       of the letter is to obtain a response

16       to the request previously made by

17       local counsel that you dismiss Emtal.

18            And then it goes on to say:

19       Here's some information regarding

20       whether or not there was material --

21       whether there was asbestos in the

22       Emtal.

23            But that previous paragraph to me

24       means that I need to look at the

25       letter that came before this to see



Page 245

```
 1          what other claims or what other

 2          reasons they might have had for

 3          wanting to dismiss.

 4   BY MR. PLACITELLA:

 5          Q.   And so -- did you see this letter

 6   in preparation for your deposition?

 7          A.   I don't recall this one.  I may

 8   have.  I just don't recall seeing it.

 9          Q.   Did you look at all the letters

10   that were to Mr. Smith?

11               MR. FARRELL:  Objection to form.

12               THE WITNESS:  No.  I think, as I

13          mentioned, it would have -- there's no

14          way in a week I could have looked at

15          thousands of cases, each of which

16          might have thousand -- 10, 15, 20

17          letters.  There's no way I could do

18          it.

19   BY MR. PLACITELLA:

20          Q.   Is there any doubt that this

21   letter was authorized by Engelhard?

22               MR. FARRELL:  Objection to form

23          and foundation.

24               THE WITNESS:  Again, what do you

25          mean by "authorized"?
```



Page 246

1    BY MR. PLACITELLA:

2         Q.   That Engelhard knew it was being

3    sent and it was being sent with Engelhard's

4    permission.

5              MR. FARRELL:  Objection to form

6         and foundation.

7              THE WITNESS:  I know that they

8         were copied on the letter.  I don't

9         know if they were -- authorized it

10        before it was sent.

11   BY MR. PLACITELLA:

12        Q.   Oh, so you think that they were

13   copied on the letter and that they didn't --

14   that that meant that Cahill didn't have

15   authorization to send it?

16             MR. FARRELL:  Objection to form,

17        foundation, argumentative.

18             THE WITNESS:  Again, I guess

19        I'm -- it goes back to what you mean

20        by "authorization."  I -- yes, I agree

21        that, that Cahill -- that Engelhard

22        understood the defense that Cahill had

23        developed; they depended on them to

24        implement it appropriately.

25             Whether or not they looked at



Page 247

1          every letter and every piece of

2          information before it was sent out, if

3          that's what we mean by "authorize," I

4          don't think that occurred.  In this

5          case, I don't know if it did or not.

6     BY MR. PLACITELLA:

7          Q.   No, I'm not saying that they

8     looked at every letter.  I'm saying that

9     Cahill had the permission of Engelhard to

10    send letters like this out asserting that

11    there was no asbestos in Emtal talc and

12    asking for dismissals based on that basis?

13          MR. FARRELL:  Objection to form,

14          foundation, asked and answered.

15          MR. BOISE:  Mischaracterizes the

16          letters.

17          THE WITNESS:  Again, once again,

18          yes, I, I agree that Cahill had

19          authorization to implement its

20          strategy.

21    BY MR. PLACITELLA:

22          Q.   Okay.  And here we have the

23    general counsel, the assistant general

24    counsel for Engelhard getting copied on the

25    letter, asking this lawyer to dismiss all



Page 248

1    his cases on the premise that there's no

2    asbestos in Emtal talc; correct?

3              MR. FARRELL:  Objection to form,

4         foundation, misstates the letter.

5              THE WITNESS:  Again, it doesn't

6         say:  Please dismiss this based just

7         on the fact that there's no asbestos

8         in the Emtal.

9              It requests that they dismiss it

10        in response -- and they're doing this

11        in response to a request previously

12        made by local counsel that it be

13        dismissed.

14             That previous letter may have

15        listed several other things.  It may

16        have gone into a lot of other issues

17        that aren't covered in this letter.

18        This is just a follow-up letter.

19   BY MR. PLACITELLA:

20        Q.   So the answer to my question is

21   what?

22             MR. FARRELL:  Objection to form,

23        foundation, asked and answered

24        multiple times.

25             THE WITNESS:  The answer from my



Page 249

1           perspective, reading this, is that

2           they weren't necessarily asking to

3           dismiss Emtal based solely on the fact

4           that talc mined by Emtal didn't

5           contain asbestos.

6    BY MR. PLACITELLA:

7           Q.   All right.  I'm not going to

8    fight.  We'll let a jury decide; okay?

9           A.   Yes.

10          Q.   Okay.  By the way, in -- on

11   March 2nd, 1990, when this letter was

12   written and it was copied to Mr. Fliegel,

13   who was in-house counsel, was Engelhard

14   aware of the depositions that were taken in

15   the Westfall case?

16          MR. FARRELL:  Objection to form

17          and foundation.

18          THE WITNESS:  My understanding is

19          that in 19 -- I'm sorry.  Do you mean

20          Engelhard legal personnel?

21   BY MR. PLACITELLA:

22          Q.   Yeah.  The head of Englehard

23   still at that time legal was Arthur

24   Dornbusch; correct?

25          A.   That's correct, yes.



Page 250

1        Q.   He ran the legal department;

2   right?

3        A.   That's correct.  He was the

4   general counsel.

5        Q.   Was he aware of the depositions

6   that took place in the Westfall case?

7        A.   Yes, he was.

8        Q.   Okay.  Was Howard Sloane aware of

9   the depositions that took place in the

10  Westfall case?

11       A.   Yes, he was.

12            MR. PLACITELLA:  Only one copy of

13       this, so I'll wait till a break.

14            THE WITNESS:  Can I make one

15       additional comment regarding the

16       question that you just asked about

17       Mr. Sloane -- about Mr. Dornbusch?  I

18       don't know about Mr. Sloane.

19            But I believe in his testimony

20       Dornbusch indicated that he really

21       wasn't following the litigation very

22       closely, didn't remember much about

23       the depositions in Westfall.  So he

24       may or may not have even received a

25       copy of this letter, since it was sent



```
 1          to Mr. Fliegel.
 2              MR. PLACITELLA:  Respectfully
 3          move to strike your answer -- your
 4          statement.
 5              (A document previously marked as
 6      Exhibit 64 was introduced.)
 7      BY MR. PLACITELLA:
 8          Q.   You have in front of you
 9      interrogatory number 60 -- I'm sorry --
10      Exhibit number 64; correct?
11          A.   Yes.
12          Q.   And these are answers to
13      interrogatories provided in Michigan cases
14      by Engelhard; correct?
15          A.   Yes.  By Pita Realty Limited;
16      yes.
17          Q.   And you've seen these before;
18      correct?
19          A.   I -- yes, I think I do remember
20      these.  Again, they all tend to look the
21      same after you've seen a lot of them.  But I
22      think I've seen these; yes.
23          Q.   And these interrogatories were
24      certified on behalf of Engelhard by Charles
25      Carter.  Do you see that?
```



Page 252

1          MR. FARRELL:  Objection to form.

2          THE WITNESS:  He did sign off on

3      it, yes, on the next-to-last page,

4      yes.

5  BY MR. PLACITELLA:

6      Q.   And he states [reading]:  The

7  information set forth in these responses was

8  collected by others, and such information is

9  not necessarily within my personal

10  knowledge.  However, on behalf of the

11  corporation, I affirm the foregoing are true

12  to the best of my knowledge, information,

13  and belief.

14          Do you see that?

15      A.   Yes.

16      Q.   Okay.  And in these interrogatory

17  answers -- could you go to page 2.

18      A.   Yes.

19      Q.   It starts out [reading]:  Pita

20  did not mine, mill, manufacture, or process,

21  market, distribute or sell asbestos or

22  asbestos-containing products.

23          Do you see that?

24      A.   I do.

25      Q.   Do you know what the factual



Page 253

1    basis is for that statement?

2              MR. FARRELL:  Objection to form.

3              THE WITNESS:  Again, the

4         factual -- this would have been

5         prepared by Cahill.  And the factual

6         basis would be the assessment and the

7         analysis that they did incorporating

8         science, regulatory, and legal

9         information as part of their defense

10        strategy.

11   BY MR. PLACITELLA:

12        Q.   What facts are we talking about?

13   What facts, specific facts?

14             MR. FARRELL:  Objection to form,

15        foundation, asked and answered.

16             THE WITNESS:  Facts regarding the

17        published and testing record that was,

18        for example, included in the Ashton

19        affidavit.  There may have been other

20        information that they looked at that I

21        haven't seen because of privilege.

22   BY MR. PLACITELLA:

23        Q.   Did they include any of the

24   information that's in the Cahill

25   compilation?



Page 254

```
 1                MR. FARRELL:  Objection to form

 2          and foundation.

 3                THE WITNESS:  Again, I don't know

 4          because I haven't seen the privileged

 5          documents.

 6    BY MR. PLACITELLA:

 7          Q.   No, any of the information that

 8    was provided to you.  Is that referenced

 9    anywhere in these interrogatory answers?

10                MR. FARRELL:  Objection to form

11          and foundation.

12                THE WITNESS:  I don't know.  I'd

13          have to read through the whole thing.

14          I, I don't recall it, but I don't

15          know.

16    BY MR. PLACITELLA:

17          Q.   Well, take me at my word; it's

18    not there.

19                MR. FARRELL:  Objection to form,

20          argumentative.

21                MR. PLACITELLA:  Okay.

22    BY MR. PLACITELLA:

23          Q.   Can you go to question 104 on

24    page 56.  Question 104 says [reading]:

25    Please identify each present or past
```



Page 255

1    employee of defendant, defendant's

2    predecessors, or defendant's subsidiaries

3    who has ever testified under oath or been

4    deposed.

5              Do you see that?

6         A.   I do, yes.

7         Q.   Then going to the next page it

8    asks for all the details.  Do you see that?

9         A.   Yes, I do.

10        Q.   And the answer is "none";

11   correct?

12        A.   Yes.

13        Q.   That's false; correct?

14             MR. FARRELL:  Objection to form

15        and foundation.

16             THE WITNESS:  I guess I would --

17        again, looking at this in retrospect,

18        I know Charles Carter testified in his

19        deposition regarding this.  And, and

20        what, what his deposition essentially

21        said was that he didn't know about any

22        of that previous testimony.  He didn't

23        know about Westfall.  And so when he

24        signed this, it was true and accurate.

25             So to the extent that "false"



Page 256

```
 1            implies that he was trying to mislead,
 2            I don't agree with it, that it was
 3            false.  It was incorrect.  It was a
 4            mistake.  In hindsight, it obviously
 5            isn't correct because there were
 6            previous depositions.  But he didn't
 7            know about it at the time.
 8    BY MR. PLACITELLA:
 9        Q.   Sir, what steps did Engelhard
10    take to make sure that documents like this
11    signed by people with no knowledge
12    whatsoever about what happened in the past
13    provided true and accurate information?
14            MR. FARRELL:  Objection to form,
15            foundation.
16            THE WITNESS:  I guess, once
17            again, Engelhard personnel were
18            depending on Cahill to provide the
19            appropriate information to be
20            truthful.  And Charles Carter was,
21            based on his testimony, was
22            comfortable that this was accurate and
23            correct; and so he signed off on it
24            thinking it was true.
25    BY MR. PLACITELLA:
```



Page 257

```
 1          Q.    But it was Engelhard who
 2   recruited Charles Carter to sign these
 3   interrogatories; correct?
 4               MR. FARRELL:  Objection to form,
 5          foundation, misstates the record.
 6               THE WITNESS:  I don't know if
 7          "recruited" is the word.  I know he
 8          was an Engelhard employee.
 9   BY MR. PLACITELLA:
10          Q.    Well, no, he wasn't an Engelhard
11   employee when this was signed.  He had
12   already retired, didn't he?
13               MR. FARRELL:  Objection to form,
14          foundation, beyond the scope.
15               THE WITNESS:  I'm not sure of the
16          exact years of his employ.  I believe
17          you're right.  I believe I read that
18          he wasn't currently working at
19          Engelhard at the time that he did
20          this, but I'm not sure.
21   BY MR. PLACITELLA:
22          Q.    Here's Exhibit 227.
23               (A document previously marked as
24   Exhibit 227 was introduced.)
25   BY MR. PLACITELLA:
```



```
 1          Q.   This is Exhibit 227, is a letter

 2   written to Charles Carter from Lester

 3   Fliegel; correct?

 4          A.   Yes.

 5          Q.   He was an in-house lawyer.

 6               And cc'd Mr. Dornbusch; correct?

 7          A.   Correct.

 8          Q.   And this was about the consulting

 9   agreement that they were going to pay

10   Charles Carter to certify interrogatories

11   and other responses, just like you're doing

12   here; correct?

13               MR. FARRELL:  Objection to form,

14          foundation, argumentative.

15               THE WITNESS:  Yes.  And I won't

16          argue with it at all.  I just wasn't

17          sure if -- whether he was still

18          working with the company when he did

19          it.  That's all.

20   BY MR. PLACITELLA:

21          Q.   So we're clear that it's a

22   Engelhard legal department who was in charge

23   of recruiting Mr. Carter to sign the

24   interrogatory answers; correct?

25               MR. FARRELL:  Objection to form,
```



Page 259

1            foundation, misstates the record.

2                 THE WITNESS:  Again, I don't know

3            about the word "recruit."  I know they

4            hired him to do it as a consultant.

5            That's what it says.

6     BY MR. PLACITELLA:

7            Q.   And those same legal department

8     was aware that people testified under oath

9     in the Westfall case that there was asbestos

10    in Emtal talc; right?

11                MR. FARRELL:  Objection to form,

12           foundation, misstates the record.

13                THE WITNESS:  Mr. Dornbusch

14           testified that -- obviously he was

15           involved in the initial Westfall

16           deposition work.  But he testified

17           that he was busy being general counsel

18           and he just didn't get involved in all

19           the details day-to-day with each type

20           of litigation and that, and that in

21           general he didn't remember a lot of

22           what had happened in the Westfall

23           case.

24    BY MR. PLACITELLA:

25           Q.   He actually signed affidavits in



Page 260

1    the Westfall case, didn't he?

2             MR. FARRELL:  Objection to form,

3         foundation --

4    BY MR. PLACITELLA:

5         Q.   I mean, he wasn't just

6    overlooking it.  He was involved; correct?

7             MR. FARRELL:  Are you finished?

8             Objection to form, foundation,

9         beyond the scope of the notice.

10            THE WITNESS:  No, I agree he was

11        involved in the Westfall.  What I said

12        was he wasn't highly involved in

13        litigation after that because he was

14        general counsel.

15   BY MR. PLACITELLA:

16        Q.   He was involved enough to be

17   copied on the letter recruiting Charles

18   Carter to certify the interrogatory answers;

19   correct?

20            MR. FARRELL:  Objection to form,

21        foundation.

22            THE WITNESS:  And again, he's

23        obviously copied on this.  I don't

24        know that that's any measure of how

25        involved he was.  It may have just



```
 1         been that when you hired somebody in

 2         that department you had to copy the,

 3         the manager.  I don't know.

 4              And I'd also have to look at

 5         this -- I'm not saying he didn't, but

 6         I'm not sure that he only acted in

 7         this capacity for Emtal cases.  He

 8         might have done others.  I don't know.

 9  BY MR. PLACITELLA:

10         Q.  Can you tell me why you would

11  have somebody certifying answers to

12  interrogatories as true and they never

13  looked at a single document to determine

14  whether what was putting in there was true?

15  Why would you do that?

16              MR. FARRELL:  Objection to form,

17         foundation, argumentative.

18              THE WITNESS:  I really can't get

19         into somebody's mind and try to figure

20         out why they would hire him to do

21         this.  They hired him at -- maybe it

22         was standard practice; maybe it still

23         is.  I don't know.  I can't put myself

24         in their head and figure out why they

25         would do that.
```



Page 262

```
 1   BY MR. PLACITELLA:

 2        Q.   Well, you read Mr. Carter's

 3   deposition where he said he made no

 4   independent investigation to find out what

 5   he was signing was true.  You remember that;

 6   correct?

 7             MR. FARRELL:  Objection to form,

 8        foundation.

 9             THE WITNESS:  I, I think he

10        stated at some point that he depended

11        on Cahill to get the information

12        correct, which was probably

13        reasonable.

14   BY MR. PLACITELLA:

15        Q.   He stated that he -- did he not

16   state that he made no -- despite his

17   certification, he made no effort himself to

18   determine whether the information that he

19   was swearing to was true; correct?

20             MR. FARRELL:  Objection to form,

21        foundation; misstates Mr. Carter's

22        verification, which states the

23        opposite of what you just said.

24             THE WITNESS:  Without having it

25        in front of me, I really wouldn't want
```



Page 263

```
 1       to --
 2   BY MR. PLACITELLA:
 3       Q.   Okay.
 4       A.   -- debate what he did or didn't
 5   say.  You have his testimony, so I would
 6   defer to that.
 7       Q.   Okay.
 8            MR. FARRELL:  We've been going a
 9       bit over a hour.  If we're going to a
10       different document, can we take a
11       break?
12            MR. PLACITELLA:  Sure.
13            THE VIDEOGRAPHER:  The time is
14       now 3:00 p.m. we are going off the
15       record.
16            (Recess.)
17            THE VIDEOGRAPHER:  The time is
18       now 3:14 p.m.  We are back on the
19       record.
20   BY MR. PLACITELLA:
21       Q.   Okay.  So can we go back to
22   Exhibit 64 and go to question number 1.  So
23   just to be -- and question number 1, it says
24   identify the person who provided the
25   information answering the interrogatories.
```



Page 264

1           Do you see that?

2      A.   Yes.

3      Q.   And it lists Charles Carter;

4  correct?

5      A.   Yes.

6      Q.   And then go to page 58, answer

7  107.

8           You see under A it says

9  [reading]:  Charles D. Carter participated

10 in the gathering of records for this

11 litigation which have been turned over to

12 counsel?

13     A.   Yes.

14     Q.   That's not true, though, was it?

15          MR. FARRELL:  Objection to form,

16     foundation, argumentative.

17          THE WITNESS:  I don't know.  You

18     know, I know you spoke with Charles

19     Carter.  I assume that you asked him

20     questions.  I don't remember

21     specifically how he answered that.

22 BY MR. PLACITELLA:

23     Q.   Well, he was answering these

24 questions on behalf of your company;

25 correct?



Page 265

```
 1              MR. FARRELL:  Objection to
 2         form --
 3    BY MR. PLACITELLA:
 4         Q.   He was certifying these on behalf
 5    of your company?
 6              MR. FARRELL:  Objection to form
 7         and foundation.
 8              THE WITNESS:  On behalf of
 9         Engelhard, yes.
10    BY MR. PLACITELLA:
11         Q.   Which turned into BASF.  They're
12    one and the same, you understand that, under
13    the law; correct?
14              MR. FARRELL:  Objection to form
15         and foundation.
16              THE WITNESS:  I understand that
17         they're the same.  I don't know --
18    BY MR. PLACITELLA:
19         Q.   Okay.
20         A.   -- how they -- what that means
21    legally; but yes.
22         Q.   And then he certified at the end
23    that the information is true and accurate to
24    the best of his knowledge.  And that
25    included the fact that he supplied the
```



Page 266

1    information for the interrogatories; right?

2              MR. FARRELL:  Objection to form,

3         foundation, misstates the verification

4         that Mr. Carter signed.

5              THE WITNESS:  That's not what it

6         says at all to me.  It says that he

7         participated in the gathering of

8         records.  That could mean he was told

9         what was being gathered; he may have

10        been there when they pulled things

11        together; they may have talked about

12        it.  I don't know that that means that

13        he was personally responsible for

14        pulling every record.

15   BY MR. PLACITELLA:

16        Q.   Says [reading]:  Charles D.

17   Carter has participated in the gathering of

18   this -- of records for this litigation which

19   have been turned over to counsel; correct?

20        A.   Yes, that's what it says.

21        Q.   Meaning he must have looked at

22   the records; right?

23             MR. FARRELL:  Objection to

24        form --

25   BY MR. PLACITELLA:



Page  267

```
 1          Q.   He must have known what they
 2     were?
 3               MR. FARRELL:  Objection to form
 4          and foundation, assumes facts.
 5               THE WITNESS:  Reading this, it
 6          says he's participated in the
 7          gathering of records.  That to me does
 8          not imply that he's look at every
 9          record or seen every piece of
10          information.  He may have looked at
11          one record in this case.  There may be
12          others where he looked at one.  I just
13          don't know specifically.  I think --
14     BY MR. PLACITELLA:
15          Q.   Okay.
16          A.   -- if you asked him, then he
17     could have told you that.  I don't know.
18          Q.   And what did he say when he
19     testified under oath about that?
20               MR. FARRELL:  Objection to form,
21          foundation.
22               THE WITNESS:  I'm sorry, I just
23          don't remember.  I mean, there was so
24          much to read.  And I probably read it.
25          I just don't remember it.  I would
```



```
1          have to look at his deposition.
2               (Steinmetz Exhibit 4 was marked
3     for identification.)
4     BY MR. PLACITELLA:
5          Q.   Yes.  You have in front of you,
6     Steinmetz number 4, his deposition.
7               MR. BOISE:  Is that the full
8          testimony?
9               MR. PLACITELLA:  Yes.
10              MR. BOISE:  Do you have a copy?
11              MR. PLACITELLA:  I've got one
12         copy.  But I'm happy to pass it around
13         and put up what I'm asking.
14    BY MR. PLACITELLA:
15         Q.   Can you go to page 94.
16              94 of the deposition.
17         A.   Okay.  I'm just looking to see
18    what else is in here too, if that's okay.
19         Q.   Let me know when you're at 94.
20         A.   Okay.
21         Q.   Starting on line 6 [reading]:
22              You have in front of you Exhibit
23         Number 64, which for the record are
24         answers of defendant Pita Realty
25         Limited to plaintiff's standard
```



Page 269

```
1              interrogatories submitted in the State

2              of Michigan in the Circuit County for

3              the County of Wayne.  Do you see that?

4                   He says:  Yes.

5                   And you see the very last page, a

6              verification signed by you?

7                   Answer:  Yes.

8                   Question:  And than signed,

9              according to the verification, on

10             December 10th, 1992; correct?

11                  Answer:  Yes.

12                  You see that?

13       A.    Yes.

14       Q.    That's the same Exhibit 64 that's

15   in front of you; correct?

16       A.    Yes.

17       Q.    It matches up; right?

18       A.    Yes.

19       Q.    Okay.  And the next page he's

20   asked [reading]:  It says Charles Carter --

21   D. Carter, I'm an agent of Pita Realty

22   Limited and duly authorized by the

23   corporation to execute these answers to

24   interrogatories under oath on its behalf.

25                  The information set forth in this
```



Page 270

1    response was collected by others, and such

2    information is not necessarily within my

3    personal knowledge.  However, on behalf of

4    the corporation, I affirm the foregoing are

5    true to the best of my knowledge,

6    information, and belief.

7              Right?  That tracks what we just

8    went over; right?

9         A.   Yes.

10        Q.   So going to the next -- 96.

11             So he's asked [reading]:

12             So the information that is the

13        basis for the answers came from

14        Engelhard attorneys?

15             There's an objection by

16   Mr. Farrell, as usual.

17             The Witness:  It came --

18             That was supposed to be a joke;

19   you can laugh a little bit.

20             It came from counsel.  I've told

21        you before I don't know what was

22        Engelhard and what was Cahill.

23             Question:  Okay.

24             Answer:  Okay.

25             It came through counsel from



Page 271

```
 1          either Engelhard or Cahill?
 2               Yes.
 3               It was information that you knew
 4          personally?
 5               Answer -- after objection:  No.
 6               That was Mr. Boise.
 7               Question:  By Mr. -- and in
 8          answering these interrogatories, were
 9          you ever shown any documents?
10               Answer:  Not to my recollection.
11               Question:  Were you ever given
12          any access to witnesses to talk to
13          yourself?
14               Answer:  Not to my recollection,
15          no.
16               So in essence, the information
17          that is in here, these sworn answers
18          were provided entirely by the lawyers?
19               Objection, objection, objection.
20               Answer:  That seems to be
21          correct, yes.
22               Did I read that correctly?
23          A.   Yes.
24          Q.   So when Mr. Carter executed these
25     answers on behalf of Engelhard, he had not
```



Page 272

1    reviewed a single document or spoke to a

2    single witness to verify what was in there;

3    correct?

4             MR. FARRELL:  Objection to form,

5         foundation, misstates Mr. Carter's

6         testimony.

7             THE WITNESS:  I'd have to look at

8         all his testimony.  I don't disagree

9         with anything that you've read here.

10        I just haven't -- I don't have the

11        entire testimony memorized, so I, I

12        just can't speak to it.

13   BY MR. PLACITELLA:

14        Q.   So Mr. Carter was authorized by

15   Engelhard to sign off on sworn interrogatory

16   answers to attest to the truth of what was

17   in there, without speaking to a single

18   witness or reviewing a single document;

19   correct?

20            MR. FARRELL:  Objection to form,

21        foundation, misstates Mr. Carter's

22        testimony.

23            THE WITNESS:  He, he was saying

24        for these interrogatories he was never

25        shown a document.  I don't know that



Page 273

```
 1          he didn't look at other documents in

 2          the past, that he had seen documents

 3          in the past, he just hadn't looked at

 4          them in this case.  So, you know, this

 5          is one point in time.  But he may have

 6          seen documents that he knew related to

 7          some of these other -- to some of

 8          these categories, and he had already

 9          seen them in the past.

10  BY MR. PLACITELLA:

11          Q.   But the answers he signed said

12  that he provided the information, didn't

13  they?

14          MR. FARRELL:  Objection to form,

15          foundation, misstates Mr. Carter's

16          verification.

17          THE WITNESS:  Yeah, he didn't say

18          he provided them.  He said he had

19          participated.  So to him participating

20          may have been:  Yes, I, I remember

21          three cases ago I saw this answer and

22          we looked at something and I'm

23          comfortable with it because I've seen

24          it before.

25                I don't know that.
```



Page 274

```
 1    BY MR. PLACITELLA:

 2         Q.   Well, that's total speculation on

 3    your part; correct?

 4              MR. FARRELL:  Objection to

 5         form --

 6    BY MR. PLACITELLA:

 7         Q.   His testimony was that he

 8    verified these answers without looking at a

 9    single document or speaking to a single

10    witness; correct?

11              MR. FARRELL:  Objection to form,

12         foundation, asked and answers,

13         misstates Mr. Carter's testimony.

14              THE WITNESS:  Again, once again,

15         what he said was he participated in

16         the gathering of records.  That to me

17         is a pretty broad statement that could

18         mean a lot of things.

19    BY MR. PLACITELLA:

20         Q.   As you sit here today, do you

21    have any evidence that he ever looked at a

22    single document or spoke to a single witness

23    before he signed interrogatory answers on

24    behalf of Engelhard?

25              MR. FARRELL:  Objection to form,
```



Page 275

```
 1          foundation.
 2                THE WITNESS:  I haven't talked to
 3          him.  I don't know if that's in his
 4          testimony.  There were a lot of cases,
 5          a lot of documents.  The
 6          interrogatories may have been
 7          different from case to case.  I just
 8          don't know that he did or didn't.
 9   BY MR. PLACITELLA:
10        Q.  Well, the same thing happened
11   with the certifications; right?  He signed
12   them without looking at anything either --
13                MR. FARRELL:  Objection --
14   BY MR. PLACITELLA:
15        Q.   -- under oath and under penalty
16   of perjury; right?
17                MR. FARRELL:  Objection to form,
18          foundation, misstates the
19          certifications, argumentative.
20                MR. BOISE:  Misstates his
21          testimony.
22   BY MR. PLACITELLA:
23        Q.  Okay.
24        A.   I guess I don't know.  I guess --
25   you know, I've seen even in this case, you
```



Page 276

1    know, some of the documents signed by

2    plaintiffs in this case were inconsistent

3    with their testimony.  And, for example,

4    Kimberlee Williams --

5          Q.   Sir, what's my question?  Did I

6    ask you anything about Kimberlee Williams?

7               MR. FARRELL:  Excuse me.

8          Mr. Placitella, he's responding to

9          your question.

10              MR. PLACITELLA:  No, he's not.

11   BY MR. PLACITELLA:

12         Q.   What was my question, sir?

13              MR. FARRELL:  Sir, the witness

14         has the opportunity --

15              MR. PLACITELLA:  When you're

16         done, I'm going to ask my question.

17         So keep going.

18              MR. FARRELL:  Go ahead,

19         Mr. Steinmetz.

20   BY MR. PLACITELLA:

21         Q.   Go ahead.

22         A.   So all I'm saying, the only

23   reason I bring that up is because these

24   kinds of things, I think, happen when you're

25   writing documents.  People look at this



Page 277

1    information, maybe -- again, you're right,

2    this may be speculation.  But I know when I

3    look at these documents, I see a question

4    and I've answered it before, I've certified

5    it before, I don't see a need to go back and

6    ask for the document again from counsel.  I

7    sign it because I know I've seen it.

8    BY MR. PLACITELLA:

9        Q.   Okay.  Well, you answered

10   interrogatories in this case, twice;

11   correct?

12       A.   I believe twice, yes.

13       Q.   Did you look at any documents

14   before you signed the interrogatory answers?

15           MR. FARRELL:  Objection to form,

16       foundation.

17           THE WITNESS:  Honestly, I don't

18       remember.  I may have, but I don't

19       remember.  I, I --

20   BY MR. PLACITELLA:

21       Q.   Well, shouldn't you have?

22           MR. FARRELL:  Objection to form,

23       foundation, beyond the scope of the

24       notice.

25           THE WITNESS:  If it's something



1          that I hadn't seen before, possibly.

2          If it's something where I don't think

3          a document is necessary to certify it,

4          no.

5   BY MR. PLACITELLA:

6          Q.   Okay.  So when you answered

7   interrogatories in this case, did you speak

8   to any witnesses before you certified them

9   as true and accurate?

10         MR. FARRELL:  Objection to form,

11         foundation, asked and answered, beyond

12         the scope of the notice.

13         MR. PLACITELLA:  Oh, no.  It's

14         not been asked and answered.

15         MR. FARRELL:  It has been asked

16         and answered.

17         MR. PLACITELLA:  No, it hasn't.

18         MR. FARRELL:  You spent the first

19         hour --

20         MR. PLACITELLA:  No.

21         MR. FARRELL:  -- of this

22         deposition on what he did in verifying

23         interrogatories in this response.  And

24         it's beyond the scope of the notice.

25   BY MR. PLACITELLA:



Page 279

```
 1        Q.   Sir, you certified
 2  interrogatories in this case.  Did you speak
 3  to any witnesses?
 4             MR. FARRELL:  Objection to form,
 5        foundation, beyond the scope of the
 6        notice, asked and answered.
 7  BY MR. PLACITELLA:
 8        Q.   Well, let me ask you the question
 9  this way:  Are you any different than
10  Mr. Carter?
11             MR. FARRELL:  Objection to form,
12        foundation, beyond the scope of the
13        notice, argumentative.
14  BY MR. PLACITELLA:
15        Q.   Did you review any documents
16  before you certified the interrogatories in
17  this case?
18             MR. FARRELL:  Same objections.
19             THE WITNESS:  In this case, no.
20  BY MR. PLACITELLA:
21        Q.   Okay.  So all the information you
22  got when you verified the interrogatories
23  came from the lawyers; correct?
24             MR. FARRELL:  Objection to form,
25        foundation.
```



Page 280

```
 1              THE WITNESS:  Again, they were
 2         prepared by lawyers, by our counsel.
 3         A lot of the interrogatories I've seen
 4         before.  I have seen records
 5         associated with it or related to those
 6         questions, so I feel comfortable, very
 7         comfortable in signing documents.  If
 8         I have any questions, I call them and
 9         ask them about it.
10    BY MR. PLACITELLA:
11         Q.    Okay.  We'll get to that later.
12              Your answers to interrogatories
13    in these cases, you referenced the
14    affidavits signed by Charles Carter;
15    correct?
16              MR. FARRELL:  Objection to form,
17         beyond the scope of the notice.
18              THE WITNESS:  Interrogatory 12,
19         for example, there was a question
20         relating to -- what was the
21         question -- to the development,
22         drafting, revising, dissemination of
23         affidavits.  Yes, so there was, there
24         were answers related to Charles
25         Carter.
```



Page 281

1   BY MR. PLACITELLA:

2        Q.   Okay.  And you stated what?

3        A.   I can read it for you.

4        Q.   Go ahead.

5             MR. FARRELL:  Objection to form.

6             Go ahead.

7   BY MR. PLACITELLA:

8        Q.   Let me -- before this.  Part of

9   the factual basis for assertions in some of

10  these letters that are involved in this case

11  were from the Carter affidavits; correct?

12            MR. FARRELL:  Objection to form,

13        foundation --

14  BY MR. PLACITELLA:

15       Q.   You put that in interrogatory

16  answers?

17            MR. FARRELL:  Objection to form,

18        foundation, misstates the

19        interrogatory answers.

20            THE WITNESS:  So, I'm sorry, your

21        question is?

22  BY MR. PLACITELLA:

23       Q.   Part of the factual basis for

24  many of the statements in letters that were

25  written on behalf of Engelhard arose from



Page 282

1    affidavits signed by Charles Carter;

2    correct?

3              MR. FARRELL:  Objection to form,

4         foundation.

5              THE WITNESS:  I'm sorry.  I

6         forgot the first part again.  I know

7         that Charles Carter did sign and

8         verify several documents.

9    BY MR. PLACITELLA:

10        Q.   Fair enough.

11        A.   I just don't remember the whole

12   question.

13        Q.   Now, you answered and you --

14   what's that, interrogatory what? number

15   what?

16        A.   Number 12.

17        Q.   And you state what?

18        A.   That Cahill attorneys -- there's

19   an introduction to the sentence in there, or

20   to the paragraph.  And it says [reading]:

21   That Cahill attorneys, including Peter

22   Sloane and Ira Dembrow, drafted, revised,

23   and worked with Charles Carter to finalize

24   and sign affidavits regarding Emtal talc and

25   the Johnson talc mine.



Page 283

1          Q.    Okay.  Where did that information

2     come from?

3               MR. FARRELL:  Objection to form,

4          beyond the scope of the notice.

5               THE WITNESS:  Again, I didn't

6          prepare for answering this type of

7          question.  But this was prepared by

8          counsel.

9     BY MR. PLACITELLA:

10         Q.   Well, where did that information

11    come from?

12              MR. FARRELL:  Objection to form,

13         foundation, beyond the scope of the

14         notice, asked and answered.

15              THE WITNESS:  I presume from

16         Charles Carter's testimony.  I don't

17         know specifically.

18    BY MR. PLACITELLA:

19         Q.   Well, what did you do to verify

20    that that information that you just provided

21    that you swore to was true and accurate to

22    the best of your knowledge?

23              MR. FARRELL:  Objection to form,

24         foundation, beyond the scope of the

25         notice, asked and answered.



```
 1              THE WITNESS:  At the time I

 2        signed this and now, I'm very

 3        comfortable that it was accurate.  So

 4        I didn't see a need to do that.

 5   BY MR. PLACITELLA:

 6        Q.   You're very comfortable it's

 7   accurate, but you did nothing independently

 8   to determine whether that was true or not;

 9   fair?

10              MR. FARRELL:  Objection to form,

11        foundation, beyond the scope, asked

12        and answered, misstates

13        Mr. Steinmetz's testimony.

14              THE WITNESS:  I saw no need to do

15        it.

16   BY MR. PLACITELLA:

17        Q.   The total basis for your signing

18   that interrogatory was information provided

19   by counsel; correct?

20              MR. FARRELL:  Object -- same

21        objections.

22              THE WITNESS:  I -- the basis --

23        it came from counsel.  But counsel

24        used something as the basis, and it

25        would have been his testimony or other
```



Page 285

```
 1          things.  I'm not sure of what it was,
 2          but I'm very comfortable with it.
 3  BY MR. PLACITELLA:
 4      Q.   Well, you're comfortable.  But
 5  you made no independent investigation.  You
 6  didn't look at a single document and you
 7  never spoke to Mr. Carter.  You never read
 8  anything to verify that that information is
 9  correct when you signed the certification
10  saying that it was.
11          MR. FARRELL:  Objection to form,
12          foundation, beyond the scope of the
13          notice, misstates the witness'
14          testimony.
15          THE WITNESS:  The fact that I was
16          comfortable with it was the reason I
17          didn't do those other things.
18  BY MR. PLACITELLA:
19      Q.   Because your lawyers told you
20  that's what it was?
21          MR. FARRELL:  Same objections.
22          THE WITNESS:  Because I'm very
23          comfortable with the work that they
24          do.
25  BY MR. PLACITELLA:
```



Page 286

1          Q.    That's fine.  So you're really no

2     different than Mr. Carter?

3                    MR. FARRELL:  Objection to form,

4          argumentative.

5                    THE WITNESS:  I don't know

6          Mr. Carter, so I don't know what he's

7          like, so I don't know how different I

8          am.

9     BY MR. PLACITELLA:

10         Q.    Well, he didn't look at the

11    information either.  He just took the

12    lawyers' word for it.  So you're just like

13    him; right?

14                   MR. FARRELL:  Objection to form,

15         argumentative.

16                   THE WITNESS:  As I mentioned, I,

17         I've done this in my way.  If I need

18         information, I go to counsel.  I've

19         looked at a lot of records over the

20         last three years now.  And if I'm

21         comfortable, I don't need to ask them.

22    BY MR. PLACITELLA:

23         Q.    Okay.  So you indicate that --

24    sorry -- Dornbusch and Fliegel were directly

25    involved in the Carter affidavits; correct?



Page 287

```
 1              MR. FARRELL:  Objection to form,
 2         foundation, misstates the record.
 3              THE WITNESS:  It didn't say
 4         directly.  It says Arthur Dornbusch
 5         and Lester Fliegel were at times
 6         involved in facilitating
 7         communications.  I don't know the
 8         depth of that.
 9    BY MR. PLACITELLA:
10         Q.   Okay.  Certainly they knew what
11    was going on with Carter --
12              MR. FARRELL:  Objection --
13    BY MR. PLACITELLA:
14         Q.   -- and the affidavits?
15              MR. FARRELL:  Objection to form,
16         foundation, beyond the scope of the
17         notice.
18              THE WITNESS:  From my
19         recollection of Dornbusch's testimony,
20         I, I wouldn't say that that's a given.
21         I'm not sure that he did remember or
22         remember being that involved at that
23         point in time.
24    BY MR. PLACITELLA:
25         Q.   So why didn't you put it in the
```



Page 288

```
 1    answers to interrogatories?
 2              MR. FARRELL:  Objection to form,
 3         argumentative, beyond the scope of the
 4         notice.
 5              THE WITNESS:  I, I guess because
 6         it wasn't asked.
 7    BY MR. PLACITELLA:
 8         Q.   Okay.  I'm going to show you
 9    what's been marked as Exhibit 6.
10              (A document previously marked as
11    Exhibit 6 was introduced.)
12    BY MR. PLACITELLA:
13         Q.   This is an affidavit by Charles
14    Carter.  You've seen this before; correct?
15         A.   I've seen an affidavit.  It may
16    have been this one.  It probably was, but I
17    wouldn't swear to it.  But, yes, I probably
18    have seen it.
19         Q.   I think I saw interrogatories
20    where you reference this specifically.
21              So Mr. Carter states in 4 and 5
22    [reading]:  I know the foregoing from my own
23    personal knowledge and from a search of
24    corporate records.  And if called as a
25    witness, I could and would competently
```



1    testify thereto under oath.

2              I declare under penalty of

3    perjury under the laws of the State of New

4    Jersey the foregoing is true and correct.

5              Do you see that?

6         A.   Yes.

7         Q.   That's pretty serious, right --

8              MR. FARRELL:  Objection --

9    BY MR. PLACITELLA:

10        Q.   -- penalty of perjury?

11             MR. FARRELL:  Objection to form,

12        foundation, argumentative.

13             THE WITNESS:  It does say penalty

14        of perjury.

15   BY MR. PLACITELLA:

16        Q.   And the paragraph before, Carter

17   states [reading]:  As previously indicated

18   in the affidavit of Charles Carter sworn and

19   subscribed June 19, 1989, Engelhard does not

20   currently possess any samples of the talc

21   produced by this mine.

22             Do you see that?

23        A.   Yes.

24        Q.   And then he goes on to say

25   [reading]:  In addition, Engelhard does not



Page 290

1    currently possess any testing data other

2    than the data provided to you by way of the

3    Ashton affidavit and the report of

4    Dr. Cooley -- Pooley.

5            Did I read that correctly?

6    A.   Yes.

7    Q.   Okay.  Now, can you go back to

8    Steinmetz 4, please.

9    A.   Okay.

10   Q.   Okay.

11           MR. FARRELL:  Which one is that

12       one?

13           MR. PLACITELLA:  That's the

14       Carter deposition.

15           MR. FARRELL:  Oh, the one that --

16       you didn't have a copy of that; right?

17           MR. PLACITELLA:  Right.  Take

18       your time.  I'll tell you what page it

19       is.  And you can look at it before I

20       ask him any questions if you want.

21       I'm going to start on page 89.

22           Let me know when you're ready.

23           MR. FARRELL:  Go ahead.

24           THE WITNESS:  Oh, I'm ready.

25           MR. FARRELL:  Sorry.  I thought



Page 291

1          you were waiting for the witness.

2                    MR. PLACITELLA:  I am.

3      BY MR. PLACITELLA:

4          Q.   So page 89, Mr. Carter's asked

5      about this affidavit.  Do you see that?  It

6      starts --

7          A.   Yes.  I'm presuming it's this

8      affidavit.

9                    MR. BOISE:  Which affidavit,

10         Chris?

11                   MR. PLACITELLA:  The -- number 6.

12     BY MR. PLACITELLA:

13         Q.   [Reading]:

14              You indicate Engelhard does not

15         currently possess any testing data.

16              Answer:  That's correct.

17              What's the source of that -- what

18         is the source of that information?

19              Counsel.

20              Answer -- question:  Not

21         yourself?

22              Answer:  Not myself.

23              Question:  That's not something

24         you had personal knowledge of?

25              Answer:  That's correct.



Page 292

1             You relied on counsel who told

2        you that there was no testing data

3        available; correct?

4             Objection -- Mr. Farrell and

5        Mr. Boise this time.

6             Answer:  I relied on counsel

7        to -- I don't know how to say it -- I

8        had, you know, I had no reason to

9        challenge them.

10            Do you see that?

11       A.   Yes.  The only thing I --

12       Q.   Okay.

13       A.   -- comment on is that you say

14   they don't possess any current testing data.

15   And what the affidavit says is it doesn't

16   contain any other data other than that data

17   provided to you by way of Ashton and report

18   of Dr Pooley.

19       Q.   No problem.

20            Then he goes on to say [reading]:

21            Was it the inside and outside

22       lawyer --

23            When I asked him what counsel, he

24       says:  I have no recollection.

25            I said:  Was it the inside and



Page 293

1          outside lawyers, both?

2               He says:  I'm not sure.  Like I

3          say, most of this my belief is that

4          was transpiring was inside and outside

5          counsel had the request and they took

6          care of it.  Who did what part of

7          what, together they worked through the

8          process.

9               And when it was presented to me,

10         it was a consensus of inside and

11         outside counsel.  I had no, no --

12         specifically can't say to you, to you

13         this was Cahill, this was Dornbusch's

14         staff, because to me it was all

15         interwoven.

16              Question:  But they asked you to

17         sign this?

18              Answer:  Yes.

19              To help them defend cases?

20              Objection.

21              Answer:  They asked me to sign

22         them for whatever legal purposes they

23         had for it.

24              Do you see that?

25         A.   Yes.



Page 294

```
 1       Q.   So according to Mr. Carter's
 2  deposition, he signed this affidavit under
 3  oath without ever looking at anything;
 4  correct?
 5            MR. FARRELL:  Objection to form,
 6       foundation, misstates Mr. Carter's
 7       testimony.
 8  BY MR. PLACITELLA:
 9       Q.   He never, he never did an
10  investigation to see if there was testing
11  data available; correct?
12            MR. FARRELL:  Objection to form,
13       foundation, misstates Mr. Carter's
14       testimony.
15            THE WITNESS:  I think what he
16       says here speaks for itself.  I can't
17       speak for him.
18  BY MR. PLACITELLA:
19       Q.   So based upon your interrogatory
20  answer that says Mr. Dornbusch and
21  Mr. Fliegel were involved in drafting the
22  affidavits, they allowed Mr. Carter to sign
23  an affidavit telling lawyers there was no
24  testing data, knowing full well that he
25  never looked at a single piece of paper
```



Page 295

1   before he signed that affidavit; correct?

2            MR. FARRELL:  Objection to form,

3        foundation, misstates the affidavit.

4            THE WITNESS:  Two things:  I

5        don't know if they approved this

6        personally.  The second thing I would

7        say is, whether they did or not, it's

8        absolutely true that everybody at that

9        time believed there was no testing

10       data anymore because it had been

11       discarded.

12  BY MR. PLACITELLA:

13       Q.  Oh, so you think that's the

14  justification; you got rid of it, so now you

15  can say you didn't have it?

16            MR. FARRELL:  Object -- objection

17       to form, argumentative.

18            THE WITNESS:  I'm not saying it's

19       justification.  I'm just saying it's a

20       fact that Mr. Carter has testified,

21       the people -- the person from Cahill

22       and the people from Engelhard all

23       testified in the depositions that they

24       had not seen any of the data from

25       Westfall.  They didn't know it



```
 1        existed.
 2   BY MR. PLACITELLA:
 3        Q.   Except it was in Mr. Dornbusch's
 4   file, wasn't it?
 5             MR. FARRELL:  Objection to form,
 6        foundation, misstates the record.
 7             THE WITNESS:  I think --
 8   BY MR. PLACITELLA:
 9        Q.   Wasn't it?
10        A.   I think Mr. Dornbusch's testimony
11   was that it was sent back to him.  At some
12   point it ended up in the files.  He didn't,
13   he didn't have a good chain-of-custody
14   record for it.  As far as he was concerned,
15   from my reading of his testimony, it ended
16   up in a file somewhere.  And we know that it
17   ended up, that it ended up ultimately
18   off-site in some file and that he had no
19   recollection of it existing.
20        Q.   So you think this was okay, that
21   you get rid of the documents that you know
22   once existed and then you have somebody who
23   knows nothing sign an affidavit saying that
24   there was no testing data to mislead people
25   into believing that there was no testing
```



Page 297

1    data to analyze?  You think that was okay?

2                MR. FARRELL:  Objection to form,

3         foundation, argumentative, misstates

4         Mr. Carter's affidavit.

5                THE WITNESS:  I guess I'm not

6         sure what you mean by "okay."  But

7         remember, in this affidavit there's --

8         they are providing information from

9         the, from the Ashton affidavit and

10        from Dr. Pooley's report.

11   BY MR. PLACITELLA:

12        Q.   I get that, sir.  My question is:

13   You think it was okay to ask Mr. Carter to

14   sign this affidavit, knowing full well that

15   the people who were involved were involved

16   in the Westfall case, heard the scientists

17   testify under oath that they found asbestos

18   in the talc, and have him execute this

19   affidavit?  You think that was okay --

20               MR. FARRELL:  Objection --

21   BY MR. PLACITELLA:

22        Q.   -- of behalf of BASF?

23               MR. FARRELL:  Objection to form,

24        foundation, argumentative, misstates

25        Mr. Carter's affidavit, misstates the



Page 298

```
 1        record.
 2             THE WITNESS:  Okay.  I'm not sure
 3        what you mean by "okay."  But there
 4        were so many things you said in there,
 5        I'd have to take it apart piece by
 6        piece and address each part of what
 7        you said.  It's just there was so
 8        much, I can't even --
 9   BY MR. PLACITELLA:
10        Q.   Well, let me ask you a question.
11        A.   -- comment on it.
12        Q.   Do you think it was fair to
13   provide this affidavit to lawyers and lead
14   them to believe that there was no testing
15   data under all the circumstances that we've
16   gone through today?  You think that was
17   fair?
18             MR. FARRELL:  Objection to form,
19        foundation, misstates Mr. Carter's
20        affidavit, misstates the record.
21             THE WITNESS:  I'm sorry --
22             MR. BOISE:  Argumentative.
23             THE WITNESS:  And I'm sorry, who
24        are you saying provided?  You said
25        it's unfair to provide.  I'm not sure
```



1         what you mean by that.

2    BY MR. PLACITELLA:

3         Q.   It was unfair for Engelhard to

4    give this affidavit to other lawyers,

5    implying that there was no evidence to test,

6    when Engelhard knew that they had the

7    evidence, they destroyed it, their own

8    witnesses testified under oath with their

9    hand on the Bible that they found

10   asbestos -- you think this was a fair

11   affidavit and the right thing to do on

12   behalf of Engelhard and BASF?

13             MR. FARRELL:  Objection to form,

14        foundation, misstates the record,

15        misstates Mr. Carter's affidavit,

16        argumentative.

17             THE WITNESS:  Again, there was so

18        much in what you just said that I'd

19        have to look at each part of it, and I

20        could have comments on almost

21        everything you said.

22             But my understanding is that --

23        your first statement was that

24        Engelhard provided this.  And my

25        understanding is that affidavits were



```
1            developed by Cahill attorneys in

2            conjunction with Carter.  I don't know

3            that there's any proof that anybody

4            from, from BASF legal saw this.  They

5            may have.  I don't know.

6      BY MR. PLACITELLA:

7            Q.   Okay.

8            A.   But it was prepared by Cahill,

9      generally.

10           Q.   Okay.  Can you -- I'm going to

11     show you what's been marked as Steinmetz 5,

12     which is an excerpt of the privilege logs in

13     this case.

14                (Cahill Exhibit 5 was marked for

15     identification.)

16     BY MR. PLACITELLA:

17           Q.   By the way, was Cahill authorized

18     to send this affidavit out?

19                MR. FARRELL:  Objection to form

20           and foundation.

21                THE WITNESS:  I guess it's the

22           same thing we've being talking about,

23           you know, most of the morning and

24           afternoon.  And that is that Cahill

25           was authorized to implement a strategy
```



1           of defense and to do it appropriately.

2    BY MR. PLACITELLA:

3           Q.   And by your own interrogatory

4    answer, Mr. Dornbusch and Mr. Fliegel had a

5    hand in the certifications; right?

6                MR. FARRELL:  Objection to form.

7                THE WITNESS:  I'd have to look at

8           that again.  I thought it was

9           Mr. Sloane and Mr. --

10   BY MR. PLACITELLA:

11          Q.   Why don't you look at it again.

12          A.   But I can check that.

13          Q.   Yeah, why don't you look?

14          A.   It says Peter Sloane and Ira

15   Dembrow drafted, revised, and worked with

16   Charles Carter.

17          Q.   There's no mention in there

18   about --

19          A.   It says that Arthur Dornbusch and

20   Lester Fliegel were at times involved in

21   facilitating Cahill's communications.  It

22   didn't say with respect to the affidavits

23   and because -- keep in mind that this

24   interrogatory is really broad in scope and

25   it's talking about all kinds of information.



Page 302

1          Q.   Do you have any information as

2     you sit here today, any proof that

3     Mr. Dornbusch and Mr. Fliegel were not aware

4     that this affidavit was executed and signed

5     and sent out?

6               MR. FARRELL:  Objection to

7          form --

8     BY MR. PLACITELLA:

9          Q.   Do you have any evidence?

10              MR. FARRELL:  Are you finished?

11              MR. PLACITELLA:  Yes.

12              MR. FARRELL:  Objection to form

13         and foundation.

14              THE WITNESS:  I have absolutely

15         no evidence that they did see it.  And

16         based on Mr. Dornbusch's testimony,

17         I'd be amazed if they did.

18    BY MR. PLACITELLA:

19         Q.   Okay.  Can you go to -- what was

20    the date of this affidavit, by the way?

21         A.   It was 1990, I believe, sometime.

22    It was November 7, 1990.

23         Q.   I'm sorry.  Could I have it?

24              MR. FARRELL:  I think you're

25         talking about two different



1          affidavits.

2               MR. PLACITELLA:  Yeah, that's

3          what I want to make sure, we're on the

4          same page.

5     BY MR. PLACITELLA:

6          Q.   It's August 18th, 1989, is it

7     not, the --

8          A.   Oh, I'm sorry.  Yes, you're

9     right.  That's the date on -- it's -- the

10    notary public date is -- yes, I was looking

11    at the notary public expiration date.  Yes.

12         Q.   And do you have the document

13    Steinmetz 5?

14         A.   I do.

15         Q.   And can you go to page 5, please.

16         A.   Yes.

17         Q.   You see the entry for 8/18/1989?

18         A.   Yes.

19         Q.   And that's the same exact day as

20    that affidavit was executed; correct?

21         A.   Yes.

22         Q.   And it's from Charles Carter;

23    correct?  See that?

24         A.   I'd have to look at the first --

25    yes.



1        Q.    Okay.   To Arthur Dornbusch; do

2   you see that?

3        A.    Yes.

4        Q.    [Reading]:  Letter trans- --

5   letter and attachment transmitting signed C.

6   Carter affidavit.

7             Do you see that?

8        A.    Yes.

9        Q.    Doesn't that contradict your

10  statement, sir, that Mr. Dornbusch had no

11  idea what was going on with the Carter

12  affidavit, when it was sent to him by

13  Mr. Carter on the same day it was executed?

14             MR. FARRELL:  Objection to form,

15        foundation, argumentative.

16  BY MR. PLACITELLA:

17        Q.    How come every time I ask a

18  question, you look at Mr. Farrell?

19        A.    Because he --

20             MR. FARRELL:  Because he's

21        waiting for me to object to your

22        objectionable questions.

23             MR. PLACITELLA:  Okay.

24             THE WITNESS:  That's the only

25        reason --



Page 305

```
1              MR. PLACITELLA:  Okay.

2              THE WITNESS:  -- because I know

3         that there are objections quite often.

4    BY MR. PLACITELLA:

5         Q.   Does this, does this reflect --

6    I'll withdraw my last question.

7              Does this reflect that on the

8    exact date that the affidavit was signed,

9    Charles Carter sent a signed affidavit to

10   Arthur Dornbusch?

11             MR. FARRELL:  Objection to form.

12             THE WITNESS:  This is one line.

13        I've never seen this document.  I have

14        no idea what's in the document.  I see

15        one line that gives a date.  You're

16        correct; it's the same date.  It's

17        from Charles Carter, according to the

18        heading.  And the recipients include

19        LaTorre and Dornbusch.

20   BY MR. PLACITELLA:

21        Q.   Who LaTorre?

22        A.   I don't know.  But I have no

23   idea -- and it says letter and attachment

24   transmitting signed affidavit.  That's all I

25   can say.  I have no idea what's in that
```



Page 306

1   letter.  I've never seen it.  And I don't

2   know that Dornbusch ever saw that

3   attachment.

4           Q.   Okay.  So you think that --

5           A.   In fact, it may be that he sent

6   it to LaTorre and Dornbusch just got a copy

7   of the cover letter.  I don't know.

8           Q.   You think that's a coincidence?

9           MR. FARRELL:  Objection to form.

10  BY MR. PLACITELLA:

11          Q.   You think that's a coincidence,

12  on the exact day he signed the affidavit

13  it's a privilege log for the exact date

14  being -- and it says Carter affidavit was

15  sent to Mr. Dornbusch, who you put in the

16  interrogatory answers, were involved with

17  the affidavit?  You think that's a

18  coincidence?

19          MR. FARRELL:  Objection to form,

20          foundation, argumentative.

21          THE WITNESS:  I'm just trying to

22          answer without speculating.  I just

23          don't know.

24  BY MR. PLACITELLA:

25          Q.   Okay.  We'll let the jury decide.



Page 307

```
 1              Topic number 1, I want to talk to

 2     you about, are reasons for dismissal.  You

 3     with me?

 4          A.   Yes.

 5              (A document previously marked as

 6     Exhibit 221 was introduced.)

 7     BY MR. PLACITELLA:

 8          Q.   Okay.  And Exhibit 221 are

 9     answers to interrogatories submitted in this

10     case certified by you; correct?

11          A.   Yes.

12              MR. FARRELL:  Objection to form.

13     BY MR. PLACITELLA:

14          Q.   Okay.  Interrogatory number 1

15     asks you to identify all the settlements

16     entered into -- do you see that part?  I'll

17     put it up here.  And I'm paraphrasing.

18          A.   I do, yes.

19          Q.   Okay.  And it asks for a lot of

20     information concerning these settlements,

21     correct -- how much, the reason for

22     dismissal, et cetera?

23          A.   That's correct.

24          Q.   Okay.  And you begin your answer

25     by saying -- after you make objections --
```



Page 308

```
 1    that you refer the plaintiffs to a database
 2    produced at -- and then it gives a number,
 3    and the final number ends in a 3.  It's FRE
 4    48, a whole bunch of zeros -- 408, a whole
 5    bunch of zeros, then 3.  Do you see that?
 6         A.   I do.
 7         Q.   Okay.  And where did you get that
 8    information?
 9              MR. FARRELL:  Objection to form.
10              THE WITNESS:  I'm sorry.  What
11         information?  And what did you mean by
12         "you"?  Do you mean --
13    BY MR. PLACITELLA:
14         Q.   You, when you verified these
15    interrogatories and you said in response to
16    settlement information and A through O, you
17    refer the plaintiffs to the database
18    produced for information that's responsive
19    to the interrogatories; right?
20         A.   Correct.
21         Q.   Okay.  So where did you get that?
22         A.   So --
23              MR. FARRELL:  Objection to form.
24              THE WITNESS:  So once again,
25         this -- these interrogatories were
```



1           drafted by counsel and sent to me.  So

2           they would have come from counsel.

3    BY MR. PLACITELLA:

4        Q.   So before you signed them, did

5    you do anything to verify the information

6    that was in there?  Did you look at the

7    database before you signed them?

8                MR. FARRELL:  Objection to form

9           and foundation, beyond the scope of

10          the notice.

11               THE WITNESS:  No.  I was

12          comfortable it was accurate.

13   BY MR. PLACITELLA:

14       Q.   Well, did you look to see if it

15   was accurate?

16               MR. FARRELL:  Same objections,

17          beyond the scope of the notice.

18               THE WITNESS:  No, I was

19          comfortable that it was accurate.

20   BY MR. PLACITELLA:

21       Q.   So you relied totally on

22   counsel's representation to you as to what

23   was in the database when you signed it under

24   oath that it was responsive to this

25   question?



Page 310

```
 1                MR. FARRELL:  Objection to form,
 2          foundation, argumentative, beyond the
 3          scope of the notice, asked and
 4          answered.
 5                THE WITNESS:  I was comfortable
 6          that counsel had responded in an
 7          appropriate way and that it was giving
 8          you the information that they had to
 9          give you.
10  BY MR. PLACITELLA:
11          Q.   Topic number one today [reading]:
12  The reasons recorded, written, or
13  represented as to why claims or lawsuits
14  alleging injury to -- due to exposure to
15  Emtal talc were settled, dropped, dismissed,
16  and the amounts paid to settle each of such
17  cases.
18                Do you see that?
19          A.   I'm sorry.  I'm not sure where we
20  are.
21          Q.   Topic number 1 in the notice, the
22  notice for today's deposition.
23          A.   Oh, I'm sorry, for today's --
24  yes, okay.
25          Q.   Yes.  So I'm --
```



Page 311

 1          A.   Yes, I'm there.  Yep.

 2          Q.   Okay.  And interrogatory

 3     number 1, for 221, asks a lot of the same

 4     information; correct?

 5               MR. FARRELL:  Objection to form,

 6          misstates the interrogatory and the

 7          designated issue.

 8               THE WITNESS:  They're both very

 9          broadly written, as I mentioned

10          before, encompassing thousands of

11          lawsuits.  There are -- there's more

12          detail in interrogatory 1.  And I, I

13          don't know if your characterization is

14          completely accurate.

15               They ask for the same types of

16          questions -- information on apparently

17          all lawsuits, which, as I mentioned

18          before, could be hundreds or

19          thousands.

20     BY MR. PLACITELLA:

21          Q.   I got no problem with that.  I'm

22     just trying to get on the same page with

23     you.

24               And in response you referred us

25     to a database; correct?



Page 312

```
 1              MR. FARRELL:  Objection to form.
 2    BY MR. PLACITELLA:
 3         Q.   What's in that database that's
 4    responsive to that question?
 5              MR. FARRELL:  Objection to form,
 6         foundation, beyond the scope of the
 7         deposition notice.
 8              MR. PLACITELLA:  I don't think it
 9         is.
10              MR. FARRELL:  I'm sorry.  Which
11         designated issue --
12              MR. PLACITELLA:  Topic number 1.
13              MR. FARRELL:  No.  You're asking
14         a question about BASF's responses to
15         interrogatories that were served
16         months ago and the basis for those
17         responses.  Which topic covers BASF's
18         responses to interrogatories?
19              MR. PLACITELLA:  Well, I'm not
20         going to fight with you over it.  It's
21         covered by 1.  That's my position.
22         We'll let the Judge decide; okay?
23              MR. FARRELL:  My objection has
24         been noted:  form, foundation, beyond
25         the scope of the notice.
```



1              MR. PLACITELLA:  Okay.

2     BY MR. PLACITELLA:

3         Q.   What's in the database that's

4     responsive to interrogatory number 1 --

5              MR. FARRELL:  Same objections.

6     BY MR. PLACITELLA:

7         Q.   -- since you verified them as

8     true?

9         A.   Well, I -- when we verify these,

10    we don't say that everything in here is what

11    you want and that it all exists.  In fact,

12    we know it doesn't exist because there are

13    so many lawsuits, they're all so different,

14    they're in so many places.

15        Q.   So --

16        A.   There's just no way to answer

17    every question about every lawsuit without

18    going to each one and digging into it.

19             Furthermore, some of these

20    questions ask for information on why

21    something was settled or resolved, and we

22    can't know because that's really in the head

23    of the plaintiffs' attorneys.  So there's

24    some things we can answer in here.

25             The answer to interrogatory 1



Page 314

1  was:  This is a database we have.  It's

2  responsive -- we didn't say it gave the

3  answer and every answer that you needed

4  that's responsive to the interrogatories.

5      Q.    That wasn't my question.  My

6  question is:  What's in the database that's

7  responsive?

8      A.    I --

9      Q.    What's in the database?

10          MR. FARRELL:  Objection to form.

11          THE WITNESS:  As I mentioned, I

12      saw it briefly.  I'd have to look at

13      it again in detail and see -- you

14      know, and match up specifically what

15      goes to where.  But there is

16      information on the individual -- on

17      many of the individual cases that

18      Cahill litigated for Engelhard.

19          And among the, among the things

20      that are included in that database

21      include names of plaintiffs, names

22      of -- types of -- information on the

23      complaints, some information on

24      settlement, some information on

25      chemicals or products involved.



Page 315

```
 1              So there's various types of
 2         information in there.  There's several
 3         tables.  I just don't have them all
 4         memorized.
 5    BY MR. PLACITELLA:
 6         Q.  Well, can you look at the
 7    database and look for a person's name and
 8    see what his injury was and what happened to
 9    his case?
10              MR. FARRELL:  Objection to form.
11              THE WITNESS:  I don't know
12         whether specific information on the
13         Cahill attorney is in there.  I -- it
14         might be.  I just don't know.
15    BY MR. PLACITELLA:
16         Q.  What do you mean "Cahill
17    attorney"?
18         A.  Well, you said would you be able
19    to look for something and his case and find
20    it.
21         Q.  Well, my question is:  Can I go
22    to the database -- well, I'll ask it -- can
23    I get a list in the database from -- of all
24    the people in the database, what their
25    injury were, and what happened to their
```



Page 316

```
 1   case?  Can you generate that list?
 2              MR. FARRELL:  Objection to form,
 3         foundation.
 4              THE WITNESS:  I guess I -- my
 5         understanding is you have the database
 6         and you could try to do those things
 7         yourself.
 8              I also understand that our
 9         counsel has offered to do searches for
10         you if you, if you can't get that
11         information out.  I don't know if
12         everything you want is in there or
13         not.
14   BY MR. PLACITELLA:
15         Q.   That wasn't my question.  My
16   question is:  In the database can you
17   generate the claimant's name, the injury
18   they alleged, and what happened to the case?
19              MR. FARRELL:  Objection to form,
20         asked and answered.
21              THE WITNESS:  I guess it all
22         depends on what you mean by "what
23         happened" and "the injury they
24         claimed."  But that type of
25         information is in there.
```



Page 317

1              It's not necessarily in there for

2          all cases because, as was, as was

3          detailed by Sullivan in his

4          deposition, the database was

5          incomplete.  It wasn't meant to

6          collect data from every single

7          litigation case that was conducted by

8          Cahill.  There may have been some

9          Emtal cases that aren't in there.

10         There may have been some other cases

11         that weren't Emtal.

12              So some of that information can

13         be provided in a report from the

14         database.  I don't know Access that

15         well.  Some of it can be provided, but

16         I don't know that everything you want

17         here can be.

18     BY MR. PLACITELLA:

19         Q.   Okay.  So let me narrow it down a

20     little bit.

21              Accepting your representation

22     that not every plaintiff is in there --

23     okay?  We're on the same page?

24         A.   That's my understanding, yes.

25         Q.   Okay.  For the people who are in



Page 318

1    the database, can you generate a report that

2    indicates the plaintiff's name, the injury

3    they alleged, and whatever information you

4    have on what happened to the case?

5                MR. FARRELL:  Object --

6    BY MR. PLACITELLA:

7         Q.   Whether it was settled?

8    dismissed? settled and dismissed?  Can you

9    do that?

10               MR. FARRELL:  Objection to form.

11               THE WITNESS:  As I mentioned

12          earlier, in some cases.  But when the

13          database was developed -- remember, it

14          wasn't developed for purposes of what

15          we're looking at today.  It was

16          developed for other purposes within

17          Cahill 20 years ago or whenever it was

18          done.

19               And so in some cases some of the

20          information is there; in other cases

21          it's not.  What information was put in

22          was at the discretion of the attorney

23          who was handling that case.  So if the

24          attorney thought information on the

25          settlement was important, it might



Page 319

1         have been put into a table or not --

2         to multiple tables.  If that attorney

3         didn't think it was important, then it

4         wouldn't have been.

5              So it may, it may have

6         information for some but not for all.

7    BY MR. PLACITELLA:

8         Q.   Okay.  I'm really trying to be a

9    lot more simple than that.  So maybe I'll

10   get even more simple.

11             Are you able to generate a report

12   that shows the client or the claimant's name

13   and the injury -- whoever is in there -- and

14   the injury they alleged, whatever is in

15   there?  Can you link them up?  Can you match

16   them?

17        A.   Again, I'm not an expert in

18   Access.  I believe you can do that.

19        Q.   Okay.

20        A.   But like I said, not all the

21   tables are populated for all of the

22   reference numbers.

23        Q.   Okay.  So -- do you have -- still

24   have 131 in front of you?

25        A.   Yes.



Page 320

1       Q.    Okay.

2             MR. FARRELL:  I'm sorry.  Which

3       one is that?  Is that the letter?

4             MR. PLACITELLA:  Yeah.

5             MR. BOISE:  Chris, can I see

6       the second page real quick?

7             MR. PLACITELLA:  Uh-huh.

8             MR. BOISE:  Okay.  Thank you.

9  BY MR. PLACITELLA:

10      Q.    In the first paragraph Engelhard

11  states [reading]:  Simply, the basis for

12  this request is the same reason that you and

13  Mr. Economus had dismissed certain other

14  plaintiffs' actions against Emtal; namely,

15  the action is an asbestos case and there is

16  no evidence whatsoever that the talc mined

17  and milled by Emtal contained asbestos.  I

18  enclose for your reference copies of your

19  correspondence regarding such actions, the

20  Brown, Compton, Gonzales, James, and

21  Williams cases, and the dismissals in those

22  cases.

23            Do you see that?

24      A.    I do see it.

25      Q.    Do you have any reason to



Page 321

1    disbelieve the information that was

2    transmitted about the reasons for dismissal

3    in this letter?

4              MR. FARRELL:  Objection to form,

5         foundation, misstates the letter.

6              THE WITNESS:  I do have some

7         basis; because in his testimony Joslyn

8         was asked about this type of statement

9         where the attorney writing the letter

10        was advocating -- because that's what

11        attorneys do -- and made references to

12        settlements for one reason or another

13        in trying to say that something was

14        settled for that reason.

15             And what he said in essence was:

16        If you really want to know why

17        Brown -- he didn't say this

18        specifically, but, you know, in

19        essence, if you want to know why Brown

20        or Compton on Gonzales or James and

21        Williams were settled, you need to

22        look at the case file, you need to

23        talk the plaintiffs' attorneys, you

24        need to look at all the details

25        associated with it; because there's no



Page 322

```
 1           way of saying that every one of those

 2           was settled only on the basis of there

 3           being no asbestos in Emtal.

 4      Q.   Sir, your lawyer, as an officer

 5   of the court, made this representation.  Did

 6   he not?

 7           MR. FARRELL:  Objection to form,

 8           foundation, argumentative.

 9           THE WITNESS:  I, I don't know

10           what you mean by "as an officer of the

11           court."  I have no idea what that

12           means from a legal perspective.  I

13           know that he wrote a letter.  I know

14           that lawyers write letters.  They

15           advocate.  And they write things in

16           letters because they want to effect an

17           outcome.  I just don't know what

18           that --

19   BY MR. PLACITELLA:

20      Q.   So he was telling stories to

21   Mr. Bevan to try to get him to dismiss

22   cases?  Is that what you're saying?

23           MR. FARRELL:  Objection to form.

24   BY MR. PLACITELLA:

25      Q.   He was just advocating a
```



Page 323

1    nontruth?  Is that what you're saying?

2              MR. FARRELL:  Objection to form,

3         foundation, argumentative, asked and

4         answered.

5              THE WITNESS:  My feeling is he

6         was advocating.  I think you'd have to

7         ask him, you know, what he meant when

8         he wrote this.  But I just see it as a

9         letter referencing other settlements

10        in -- and I know that Joslyn, in his

11        testimony, stated that for these types

12        of statements, the lawyers would have

13        to look at the case files to make

14        those kinds of calls.

15   BY MR. PLACITELLA:

16        Q.   Do you have any proof as you sit

17   here today that the information in the

18   letter is untrue -- any independent proof

19   based on your investigation?

20             I don't want to know what

21   Mr. Joslyn said.  Do you have any

22   information to indicate that what's said in

23   this letter is not true?

24             MR. FARRELL:  Objection to form,

25        foundation.



1           THE WITNESS:  Again, in
2     preparation for this, I haven't looked
3     at the files or the information for
4     these cases.  What I do know -- unless
5     it's the Williams case and -- that
6     we're talking about here.
7           But I do know that in looking at
8     so many cases over the last week that
9     they're all so different, that it
10     would be impossible to say that every
11     case was settled because we made the
12     claim that there was no asbestos in
13     the Emtal.  I know that they're all
14     different.
15           Even the ones where we made that
16     claim, there were other elements to
17     the defense such as, as I mentioned
18     before, product-ID issues, issues
19     related to exposure, issues related to
20     courts, court deadlines, medical
21     fraud, all these other things that
22     I've talked about before.
23           So do I have any proof that this
24     isn't true?  No.  I -- just from
25     looking at so many cases over the



```
 1          course of the last week, I doubt that

 2          you could make a case like that --

 3   BY MR. PLACITELLA:

 4          Q.   So are you --

 5          A.   -- without looking at the files.

 6          Q.   So are you saying we can't

 7   believe anything Cahill puts in letters?

 8               MR. FARRELL:  Objection to form,

 9          foundation, argumentative, misstates

10          his testimony.

11   BY MR. PLACITELLA:

12          Q.   Well, I'm trying to understand

13   your testimony, sir.

14               MR. FARRELL:  He's just --

15   BY MR. PLACITELLA:

16          Q.   Are you saying we can't believe

17   anything they put in letters?

18          A.   No.

19               MR. FARRELL:  Objection to form,

20          foundation, argumentative, asked and

21          answered.

22               THE WITNESS:  No, not at all.

23          It's like I said before, even the

24          cases -- in this case, for the

25          Williams case, there are inaccuracies;
```



Page 326

```
 1          there are claims made that people

 2          write when they're writing letters.

 3          I'm not saying that it's not true or

 4          that people are trying to mislead.

 5          It's just the way people write.

 6               I don't think at all that Cahill

 7          was lying.

 8   BY MR. PLACITELLA:

 9        Q.   Do you have an understanding of

10   what a lawyer's obligation is as an officer

11   of the court when they write letters making

12   these kinds of assertions?

13        A.   I'm not a lawyer.  So I don't

14   know.  Sorry.

15        Q.   Do you under- -- do you know what

16   the consequences are to a lawyer who would

17   make statements like this in a letter --

18          MR. FARRELL:  Objection to

19          form --

20   BY MR. PLACITELLA:

21        Q.   -- if they were not true?

22          MR. FARRELL:  Objection to form,

23          foundation, beyond the scope of the

24          notice, calls for a legal conclusion.

25          THE WITNESS:  I'm not a lawyer.
```



Page 327

```
 1          And I don't know, and I don't know
 2          what was in this person's mind when he
 3          wrote it.  So I really don't know.
 4              MR. FARRELL:  You okay to keep
 5          going or...?
 6              THE WITNESS:  I'm fine, yes.
 7              (Discussion held off the
 8      stenographic record.)
 9              (A document previously marked as
10      Exhibit 129 was introduced.)
11      BY MR. PLACITELLA:
12          Q.   Exhibit 129 is a letter from
13      Mr. Sarner to a David Shroyer.  Do you see
14      that?
15          A.   I do, yes.
16          Q.   And it's June 6th, 1991.  Do you
17      see that?
18          A.   Yes.
19          Q.   And he talks about dismissals of
20      lawsuits that Mr. Shroyer has filed;
21      correct?
22          A.   Yes.
23          Q.   Okay.  And he talks about the
24      fact that he provided Mr. Shroyer with
25      evidence to help convince him to dismiss
```



Page 328

```
 1    Engelhard from the case; correct?
 2              MR. FARRELL:  Objection to form.
 3              I'm sorry, where are you -- are
 4         you referring to something in the
 5         letter?
 6              MR. PLACITELLA:  Just generally.
 7         I can read the whole thing.  I'm
 8         trying to to move things along.
 9              MR. FARRELL:  Objection to form,
10         misstates the letter.
11              THE WITNESS:  I'm sorry.  So your
12         question was?
13    BY MR. PLACITELLA:
14         Q.   Generally, he's talking about
15    getting him to dismiss cases; correct?
16              MR. FARRELL:  Objection to form,
17         foundation, assumes facts.
18              THE WITNESS:  I mean, I can read
19         the letter.  But what he's doing is
20         he's sending additional information --
21         it looks like they've been talking
22         about this back and forth, from what I
23         read into this, and that he's, that
24         he's -- that at some point -- I don't
25         know if it's with this letter or at
```



1          another time -- materials have been

2          supplied to counsel as part of the

3          process of settling the case.

4     BY MR. PLACITELLA:

5          Q.   And that included the Ashton

6     affidavit; correct?

7          A.   He does refer to it, yes.

8          Q.   All right.  Which was like the

9     central piece of this litigation strategy on

10    the no-asbestos assertions; correct?

11              MR. FARRELL:  Objection to form,

12         foundation, misstates the record.

13              THE WITNESS:  The Ashton

14         affidavit was part of the analysis

15         that Cahill performed to come to the

16         conclusion about the question of

17         whether there was asbestos in the

18         talc.  But that was, as we mentioned

19         before, only part of their strategy.

20    BY MR. PLACITELLA:

21         Q.   Okay.  And he says [reading]:  I

22    trust that once you've had the opportunity

23    to review these materials and the Ashton

24    affidavit and supporting materials

25    previously provided to you, your conclusion



1    will be the same as that reached by tire

2    worker counsel in other jurisdictions who

3    have dismissed Eastern Magnesia Talc

4    Company.

5              Do you see that?

6         A.   Yes, he does.

7         Q.   And, of course, Engelhard was

8    aware this letter was sent; right?

9              MR. FARRELL:  Objection to form,

10         foundation.

11             THE WITNESS:  There are copies to

12         Engelhard people on it; yes.

13   BY MR. PLACITELLA:

14        Q.   Okay.  And do you know what the

15   factual basis was for the representation

16   that dismissal was reached by tire worker

17   counsel in other jurisdictions?  Do you know

18   what the factual basis for that was?

19             MR. FARRELL:  Objection to form,

20         foundation.

21             THE WITNESS:  No, I guess that's

22         the problem with this letter if that's

23         what we're looking for; because all it

24         says is that they wanted to reach the

25         same conclusion, which is dismissal.



Page 331

1            They're not saying why.  They're

2       not saying what other information

3       was -- what other materials were

4       provided besides the Ashton affidavit.

5       They don't talk about what was

6       supplied in the other cases.

7            So this doesn't tell me anything

8       about the factual basis.

9  BY MR. PLACITELLA:

10      Q.   Well, do you know where they got

11  the facts to make this statement?

12           MR. FARRELL:  Objection to

13      form --

14  BY MR. PLACITELLA:

15      Q.   That's my question.

16           MR. FARRELL:  Objection to form

17      and foundation.

18           THE WITNESS:  This is a

19      three-paragraph letter written over 30

20      years ago; no, I don't.

21  BY MR. PLACITELLA:

22      Q.   Well, it's -- okay.  Did you ever

23  see anything in the files that Engelhard

24  objected to the letter?

25           MR. FARRELL:  Objection to form



Page 332

```
 1        and foundation.
 2             THE WITNESS:  Yeah, once again, I
 3        mean, there were, as I mentioned,
 4        thousands of cases.  There's no way I
 5        could look at every single -- that
 6        anybody would look at every single
 7        piece of paper in a week and, and try
 8        to find that kind of information.
 9             MR. PLACITELLA:  Okay.  134.
10             (A document previously marked as
11   Exhibit 134 was introduced.)
12   BY MR. PLACITELLA:
13        Q.   This is a letter written to
14   Cahill Gordon -- by Cahill Gordon to Michael
15   Colley; correct?
16             MR. FARRELL:  Object to the form.
17             THE WITNESS:  I'm sorry.  Could
18        you repeat it.
19   BY MR. PLACITELLA:
20        Q.   This is a letter written by
21   Howard Sloane of Cahill Gordon to Michael
22   Colley; correct?
23        A.   Yes.
24        Q.   Okay.  And it's dated August 29,
25   1991.
```



Page 333

1          A.    Yes.

2          Q.    See that?

3                And this is the same Howard

4     Sloane who sat in the depositions while the

5     Engelhard scientists had their hand on a

6     bible and swore that they found asbestos in

7     the Emtal talc; correct?

8                MR. FARRELL:  Objection to form,

9          foundation, and argumentative,

10         misstates the record.

11               THE WITNESS:  I -- the

12         characterization of what the testimony

13         was is complicated, and I'm not sure

14         that is necessarily a real good

15         characterization.  But he did sit in

16         on Hemstock's deposition; yes.

17    BY MR. PLACITELLA:

18         Q.    Okay.  And what he does here is

19    he recounts the number of times he went to

20    Mr. Colley to try to get him to dismiss his

21    cases; correct?

22               MR. FARRELL:  Objection to form.

23               THE WITNESS:  Yes, is it --

24               MR. BOISE:  And foundation,

25         misstates the letter.



Page 334

```
 1                THE WITNESS:  Is it okay if I
 2        read through this?
 3                MR. FARRELL:  Yes.
 4   BY MR. PLACITELLA:
 5        Q.   Please.  Happy to go slower, but
 6   I'm trying to save time.
 7                I'll blow it up so the jury can
 8   read it along with you.
 9                MR. PLACITELLA:  How much time do
10        I have left over there?
11                THE VIDEOGRAPHER:  We are at 4
12        hour and 31 minutes, so that --
13                MR. PLACITELLA:  Got it.
14                THE WITNESS:  Okay.  I've read
15        through it.
16   BY MR. PLACITELLA:
17        Q.   What he does here is he recounts
18   the number of times he's asked him to
19   dismiss his case on the assertion that
20   there's no asbestos in the talc; correct?
21                MR. BOISE:  Object to form.
22                MR. FARRELL:  Objection to form.
23                THE WITNESS:  The first part of
24        your statement is correct.  I'm not
25        sure that -- if it's necessarily
```



1           related to the, the assertion of no

2           asbestos in the talc.

3    BY MR. PLACITELLA:

4           Q.   It says [reading]:  1, on

5    January 2nd, 1990, our local counsel, Jack

6    Kluznik, forwarded to you the affidavit of

7    William Ashton and supporting materials and

8    requested a dismissal based on these

9    materials, which indicate the talc mined

10   from the sole mine owned by Emtal in

11   Johnson, Vermont did not contain asbestos.

12          A.   Correct.

13          Q.   Do you see that?

14          A.   Yes.

15          Q.   Okay.  And then the second line

16   he's complaining he didn't get a response;

17   correct?

18               MR. FARRELL:  Objection to form.

19               THE WITNESS:  He says they

20          received no reply; yes.

21   BY MR. PLACITELLA:

22          Q.   And then the third thing he said

23   is:  We wrote to you again and -- based on

24   the Ashton materials and renewed the request

25   for dismissal; correct?



1          A.    Yes, they say that.

2          Q.    Okay.  And then he keeps going to

3     4, 5, 6 and 7; I'm going to go through it

4     now.  We'll let the jury read.

5          A.    I think they're important,

6     though.

7          Q.    You want me to read them all?

8          A.    I'd like to --

9          Q.    Okay.

10         A.    -- read number --

11         Q.    [Reading]:  On June 6th, 1991, we

12    sent you depositions of Dr. Rohl and

13    Chidester, and as well as 1977 NIOSH study,

14    and again renewed our request for dismissal.

15              Do you see that?

16         A.    Yes.

17         Q.    Did you know what was in these

18    depositions --

19              MR. FARRELL:  Objection to form.

20    BY MR. PLACITELLA:

21         Q.    -- that material?  Do you know

22    what was in there?

23         A.    I, I haven't read those.

24         Q.    Okay.

25         A.    I may have seen parts of



Page 337

1    Chidester's, but I don't know if I've read

2    everything.

3         Q.   The Chidester came from the

4    Westfall case; right?

5              MR. FARRELL:  Objection to form.

6              THE WITNESS:  I'm assuming that's

7         the deposition -- I don't know.  I

8         don't know what deposition this is and

9         which one they're talking about.  I'd

10        have to look and see --

11   BY MR. PLACITELLA:

12        Q.   Right.  The Chidester came from

13   the Westfall case.  It's the only one I'm

14   aware of.  And that's the case where they

15   here talk about the Chidester dep but never

16   mention the Hemstock or Gale dep; right?

17             MR. FARRELL:  Objection to form,

18        argumentative.

19   BY MR. PLACITELLA:

20        Q.   Right?

21        A.   Again, my understanding is the

22   Chidester dep would have come from Johnson

23   and Johnson, because they were also involved

24   in that case.

25        Q.   Oh, you don't think that



1    Engelhard had the Chidester dep because they

2    were involved in the case?

3              MR. FARRELL:  Objection to form.

4              THE WITNESS:  Remember, at this

5         point everybody at Engelhard thought

6         that they had been discarded under

7         the --

8    BY MR. PLACITELLA:

9         Q.   Oh, everything --

10        A.   -- policy.

11        Q.   -- was destroyed.  Okay.  I

12   forgot.  Okay.

13        A.   Under, under the, you know,

14   document-retention policy.

15        Q.   Okay.  All the way down at the

16   bottom it says:  If contrary to

17   virtually every --

18        A.   No, the next one, though.  Could

19   we go through the next one?

20        Q.   Sure.

21             [Reading]:  On July 21 [sic] Eric

22   met with Mr. Shroyer of your office, as well

23   as with you, and discussed at length these

24   cases and our request for dismissal.

25             Did I read that correctly?



Page 339

```
 1        A.    Yeah.  So my point is here they
 2   talked at length on these cases.  We don't
 3   know whether they were talking just about
 4   Ashton, whether they were talking about
 5   other issues such as:  You don't have any
 6   proof that our product was in the, in the,
 7   in the location; you know, we don't agree
 8   necessarily with the fact that you're saying
 9   there was harm and injury; we don't agree
10   with that.  There may have been a lot of
11   other things that they were talking about.
12        Q.   Is that mentioned anywhere in
13   this letter?
14        A.    Yeah, they do.  Actually, they
15   say later, in that last paragraph [reading]:
16   Our proposal will thus give you three years
17   in which, should you -- the facts change and
18   your experts somehow conclude your clients
19   would have been injured by Emtal talc
20   products, you can bring us back.  So --
21        Q.   Right.  Obviously you told them
22   that there was no asbestos in the product.
23             MR. FARRELL:  You are
24             interrupting the witness in the middle
25             of his answer.
```



Page 340

```
 1   BY MR. PLACITELLA:

 2        Q.   I'll withdraw my last question,

 3   so you don't have to answer it.

 4             MR. FARRELL:  You don't, you

 5        don't get to withdraw --

 6             MR. PLACITELLA:  Yeah, I get to

 7        withdraw it --

 8             MR. FARRELL:  You don't get to

 9        withdraw it --

10             MR. PLACITELLA:  -- because he's

11        not being responsive and I've got a

12        lot of material to cover.

13             MR. FARRELL:  He's responding to

14        your question.

15             MR. PLACITELLA:  Okay.

16             MR. FARRELL:  You do not get to

17        interrupt the witness in the middle of

18        an answer because you don't like the

19        answer that you're getting, try to

20        withdraw your question and cut off the

21        witness' testimony.

22             He is entitled to an opportunity

23        to respond fully to your question.

24        The fact you don't like the answers

25        you're getting because the facts of
```



Page 341

1          this case aren't what you think they

2          are --

3                  MR. PLACITELLA:  Oh, come on.

4                  MR. FARRELL:  -- is not a basis

5          to withdraw your question --

6                  MR. PLACITELLA:  Don't do that.

7                  MR. FARRELL:  -- or cut off a

8          witness.

9                  MR. PLACITELLA:  Please don't do

10          that.  I don't do that to you in a

11          dep, and I don't expect you to do it

12          to me.  Please don't do it.

13   BY MR. PLACITELLA:

14          Q.   If you have something you want to

15   say Mr. -- so we can move this along?

16          A.   The only reason I'm digging in

17   like this is because these documents are so

18   old they're -- again they're 30 or 40 years

19   old.  And trying to reconstruct what people

20   were saying in them is difficult.  And you

21   have to look at all parts of it.  That's why

22   I was referring to that.

23                  And when they say that your

24   client -- you know, if you can somehow

25   conclude that they were injured by Emtal,



Page 342

```
 1    we'll let you back into the cases.
 2              I have no idea what the entire
 3    defense was in this case and, and what the
 4    claims were.
 5         Q.   You have no idea?
 6         A.   You'd have to look at the case
 7    file itself.
 8         Q.   Okay.  And then it says
 9    [reading]:  If contrary to virtually every
10    other plaintiff's tire worker counsel you
11    will not voluntary dismiss us with a
12    three-year toll, we will get back to
13    seriously litigating these cases.
14              Do you see that?
15         A.   I do.
16         Q.   My question to you is:  What was
17    the factual basis for this statement?  Where
18    did the information come from that virtually
19    every other counsel dismissed the case?
20    Where did that come from?  What records?
21              MR. FARRELL:  Objection to form,
22         foundation, misstates the letter.
23              THE WITNESS:  I think that's the
24         problem here is because this is so
25         old.  And it's a pretty broad
```



Page 343

1          statement.  We don't know the factual

2          basis.  And you'd have to look at each

3          one of those cases and, and look at

4          what the facts were and why the -- why

5          and how it was resolved.

6    BY MR. PLACITELLA:

7          Q.   So as you sit here today, your

8    statement is that the cases with so old that

9    there's no way we can reconstruct what

10   happened.  Is that your statement?

11              MR. FARRELL:  Objection to form,

12         foundation, misstates Mr. Steinmetz's

13         testimony.

14              THE WITNESS:  No.  I'm saying

15         that we'd have to go back and find

16         those files as, as -- to the extent

17         that they exist and look at each one

18         and pull out all the information and

19         analyze it to see why and how they

20         were resolved.

21   BY MR. PLACITELLA:

22         Q.   But that's not my question, sir.

23   My question is:  At the time this letter was

24   written, what information were they relying

25   upon to make this assertion?



Page 344

```
 1              MR. FARRELL:  Objection --
 2         objection to form, foundation, asked
 3         and answered.
 4              THE WITNESS:  I just don't know.
 5         And I know you didn't talk to Howard
 6         Sloane.  But if anybody could answer
 7         it, I would think he could because
 8         it's coming from his head.  I don't
 9         know if he'd remember, but --
10    BY MR. PLACITELLA:
11         Q.   Well, sir, you keep saying that.
12    But you, BASF, you could have deposed Howard
13    Sloane if you thought it was necessary;
14    right?
15              MR. FARRELL:  Objection to form,
16         argumentative.
17              THE WITNESS:  I guess I don't
18         feel it was necessary.  I'm
19         comfortable stating that you have to
20         look at each of these and determine
21         them individually.
22    BY MR. PLACITELLA:
23         Q.   So you didn't think it was
24    necessary to depose Howard Sloane; we'd take
25    him at his word.  Correct?
```



Page 345

```
 1              MR. FARRELL:  Objection to form,
 2         foundation, argumentative, asked and
 3         answered.
 4              THE WITNESS:  I think it's just
 5         the opposite.  I'm not taking him at
 6         his word.  I'm looking at this and
 7         saying there's no way we can know that
 8         without looking.
 9    BY MR. PLACITELLA:
10         Q.   Sir, you, BASF, never deposed
11    Howard Sloane in this case; correct?
12         A.   Not to my knowledge, no.
13         Q.   Okay.  Now -- and as you sit here
14    today, you do not know -- it's just so we're
15    clear and I'll move off this -- what the
16    factual basis was for the statement made in
17    the last paragraph of this letter, which I
18    have highlighted and up on the screen?
19              MR. FARRELL:  Objection to form,
20         asked and answered.
21    BY MR. PLACITELLA:
22         Q.   That's all I need to know.
23         A.   That's exactly what I'm saying.
24         Q.   Okay.
25         A.   The only way to get to the
```



Page 346

1  factual basis would be to look, would be to

2  look at each individual case file.

3       Q.   Is that what they did back then?

4  Or did they have some other kind of record?

5            MR. FARRELL:  Objection to form,

6       asked and answered.

7            THE WITNESS:  My recollection

8       from the Joslyn deposition is that

9       they had no data -- no way and no

10      database of generating this

11      information automatically.  It would

12      have been from their heads that they

13      made these kinds of statements.

14  BY MR. PLACITELLA:

15       Q.   Do you think they were making it

16  up?

17            MR. FARRELL:  Objection to form,

18      foundation.

19            THE WITNESS:  I, I don't see

20      anything here that's not necessarily

21      true.  All he's saying is, you know,

22      virtually ever other tire worker

23      counsel has agreed to dismiss -- he

24      doesn't say why; he doesn't say it's

25      because of any particular reason --



Page 347

```
1        and we hope you'll -- we expect you'll

2        do the same thing or we'll have to

3        litigate.

4            (Discussion held off the

5    stenographic record.)

6            THE VIDEOGRAPHER:  The time is

7        now 4:29 p.m.  We're going off the

8        record.

9            (Recess.)

10           THE VIDEOGRAPHER:  The time is

11       now 4:42 p.m.  We are back on the

12       record.

13   BY MR. PLACITELLA:

14       Q.   Did Cahill Gordon, to your

15   knowledge, attempt to keep Engelhard and

16   BASF up to speed in terms of the settlements

17   that were reached in the talc litigation and

18   the amounts?

19           MR. FARRELL:  Objection to form.

20           THE WITNESS:  My understanding is

21       that there were updates and

22       communications regarding those types

23       of issues.

24       Q.   Okay.  So I want to show you

25   Steinmetz 8.
```



Page 348

1              (Steinmetz Exhibit 8 was marked

2       for identification.)

3       BY MR. PLACITELLA:

4           Q.    This is a letter from Bevan &

5       Associates to Michael Sullivan.  Do you see

6       that?

7           A.    I do, yes.

8           Q.    And there's a bunch of

9       attachments?

10          A.    Yes.

11          Q.    Okay.  In this letter there's a

12      listing of the cases that were settled and

13      the amounts.  Do you see that?

14          A.    Yes.

15          Q.    And on average, with some

16      exceptions, it was a thousand dollars a

17      case; correct?

18          A.    Yes.

19          Q.    Okay.

20          A.    For the most part.

21          Q.    And copied on all this, if you

22      look at the very end, was Howard Sloane and

23      Michael Hassett.  Do you see that, the last

24      page?

25              MR. FARRELL:  Objection to form.



```
 1              Is this, is this two different

 2         documents that you've attached

 3         together or --

 4              MR. PLACITELLA:  They were

 5         produced that way together.

 6              MR. FARRELL:  Well, we didn't

 7         produce documents with staples in

 8         them.  Are these two documents that

 9         you stapled together or...?

10              MR. PLACITELLA:  My understanding

11         is that they were sequential.

12              MR. FARRELL:  Okay.  But I see a

13         cc -- well, I see bcc line on what

14         appears to be a separate document from

15         the first document.  So I'm just

16         trying to understand whether you're

17         saying this is one document or two

18         documents, given your question about

19         who was copied on something.

20              MR. PLACITELLA:  Fair enough.  I

21         believed it was one document.  But I

22         don't know for sure; okay?  It's

23         sequentially Bates numbered.

24    BY MR. PLACITELLA:

25         Q.   Is this consistent with your
```



Page 350

1    understanding that Engelhard was being kept

2    up-to-date on what was going on with

3    settlements?

4            MR. FARRELL:  Objection to form,

5        foundation.

6            THE WITNESS:  So one comment

7        before the question, then.  I don't

8        know that -- for example, looking at

9        this, I don't know that Hassett and

10       Sloane were copied on this first

11       document from Bevan & Associates.

12   BY MR. PLACITELLA:

13       Q.   Okay.  You don't know one way --

14       A.   Correct.  I just don't know.

15            So you had a question.  I'm

16   sorry.

17       Q.   That's fine.  Did you see

18   information like this in the database that

19   you reviewed?

20            MR. FARRELL:  Objection to form.

21   BY MR. PLACITELLA:

22       Q.   When I say "information like

23   this," I mean the client's name and the

24   amounts.

25            MR. FARRELL:  Objection to form.



Page 351

```
 1              THE WITNESS:  I don't
 2         specifically remember it.  I, I could
 3         imagine it being in there because in
 4         some cases it might have been in
 5         there.
 6              This is not the type of list you
 7         could get from that Access database,
 8         though.  It would never give you this
 9         much information for everybody.  But
10         some of it could be in there --
11    BY MR. PLACITELLA:
12         Q.   Okay.
13         A.   -- for some cases.
14         Q.   I'll show you Exhibit 219.
15              (A document previously marked as
16    Exhibit 219 was introduced.)
17    BY MR. PLACITELLA:
18         Q.   Exhibit 219 is a January 25th,
19    2006 letter from Ernst & Young to Cahill
20    Gordon.  Do you see that?
21              I'm sorry from --
22         A.   It's on Cahill Gordon --
23         Q.   Cahill Gordon to Ernst & Young,
24    Mr. Verderami.  I'm Italian, I should be
25    able to say that.
```



Page 352

```
 1         A.    Yes.

 2         Q.    And have you ever seen this

 3    before?

 4         A.    I don't recall seeing this.

 5         Q.    Okay.  This is -- did you know

 6    that Ernst & Young was an auditor for

 7    Engelhard or BASF?

 8         A.    I, I believe I was aware of that,

 9    yes.

10         Q.    Okay.  And in preparing for

11    today's deposition, did you review any other

12    letters to or from auditors from Engelhard

13    or BASF?

14         A.    No, I did not.

15         Q.    Okay.  Why not?

16              MR. FARRELL:  Objection to form

17         and foundation.

18              THE WITNESS:  Again, I'd have to

19         go back to the, to the list of topics.

20         I believe a significant or a major

21         reason there was because of issues

22         surrounding privilege.  But I would

23         have to look at it and see.

24    BY MR. PLACITELLA:

25         Q.    Well --
```



Page 353

```
 1          A.    It was not one that we prepared

 2    for in much detail.

 3          Q.    Well, topic number 6 says

 4    [reading]:  The information provided to

 5    auditors of Engelhard and BASF AG regarding

 6    Emtal claims and all reports issued by those

 7    auditors concerning Emtal claims.

 8                What did you do to prepare

 9    yourself?  And this was number 6.

10                MR. FARRELL:  Objection to form.

11                THE WITNESS:  I believe this was

12          one that was -- I don't have my

13          objection sheet in front of me -- oh.

14          Here they are.  But I believe --

15    BY MR. PLACITELLA:

16          Q.    Are they your objections, sir, or

17    your lawyers' objections?

18                MR. FARRELL:  Objection to form,

19          argumentative.

20                THE WITNESS:  I meant my copy --

21    BY MR. PLACITELLA:

22          Q.    Okay.

23          A.    -- that I brought in.  But it's

24    not here now, so...

25                Yeah, this was the one where we
```



Page 354

1    only received it one week ago.  And, you

2    know, again, focusing on priorities and, and

3    what you can and have time to look at, this

4    was not one that we spent a lot of time on.

5         Q.   So you didn't do anything to

6    prepare to answer questions regarding this

7    topic?

8              MR. FARRELL:  Objection to form,

9         foundation, misstates the witness'

10        testimony.

11   BY MR. PLACITELLA:

12        Q.   Well, I'm asking:  What did you

13   do?

14        A.   I spoke at a high level with

15   counsel regarding designated issue number 6.

16   And my general knowledge with respect to

17   this is that, you know, there were auditors,

18   reports were issued.  We haven't had time to

19   look for all those audit reports because it

20   was only served a week.  So I just didn't

21   have a lot of information to work with.

22        Q.   Well, what do you mean "high

23   level"?

24        A.   What I just said, that, that's

25   what I mean by "high level."  Not -- in not



Page 355

1    a lot of detail is what it meant.

2         Q.   Well, do you know where the audit

3    reports are?

4              MR. FARRELL:  Objection to form,

5         foundation.

6              THE WITNESS:  I don't personally

7         know.  If, if they exist, they would

8         be in our database, I presume.  But we

9         haven't had a chance to look, as I

10        understand it.

11   BY MR. PLACITELLA:

12        Q.   Did you ask for them?

13             MR. FARRELL:  Objection to form.

14             THE WITNESS:  No.

15   BY MR. PLACITELLA:

16        Q.   How do you know you can't just

17   press a button and hand them to you?

18             MR. FARRELL:  Objection to form,

19        foundation.

20             THE WITNESS:  I don't.

21   BY MR. PLACITELLA:

22        Q.   So other than having a

23   conversation with your lawyer, you did

24   nothing to prepare for this dep- -- this

25   topic for this deposition?



Page 356

1              MR. FARRELL:  Objection to form

2         and foundation.

3              THE WITNESS:  Yes.  Again, my

4         understanding is this was a late

5         entry.  We haven't had it for very

6         long.  Apparently, it was designated

7         at the close of fact discovery.  So we

8         just didn't have time to look into it.

9    BY MR. PLACITELLA:

10        Q.   Well, it says BASF will produce a

11   representative to testify regarding this

12   topic.  And then it talks about it being

13   untimely.  But you're not prepared to talk

14   about anything, are you?

15             MR. FARRELL:  Objection to form,

16        foundation, argumentative, misstates

17        BASF's objections and response to the

18        deposition notice.

19             THE WITNESS:  To the extent that

20        I've talked about it to this, as much

21        as I have, that's the best I can do.

22   BY MR. PLACITELLA:

23        Q.   So let's just be clear:  Did you

24   speak to anybody at BASF about whether the

25   reports were available for you to review?



1                  MR. FARRELL:  Objection to form.

2                  THE WITNESS:  No.

3       BY MR. PLACITELLA:

4            Q.   Did you speak to any witness to

5       determine how hard it would be for you to

6       get these reports?

7                  MR. FARRELL:  Objection to form.

8                  THE WITNESS:  No.

9       BY MR. PLACITELLA:

10           Q.   Did you speak to anyone to

11      determine whether the reports even exist?

12                 MR. FARRELL:  Objection to form

13            and foundation.

14                 THE WITNESS:  Excuse me.  No, I,

15            I -- I believe that in the discussions

16            with counsel we discussed that fact

17            that we think some do exist.  We just

18            haven't been able to look for them.  I

19            would have to go back and talk some

20            more because I don't remember that

21            specifically.

22      BY MR. PLACITELLA:

23           Q.   Do you have any idea how

24      burdensome it would be to pull up the

25      reports?



Page 358

1            MR. FARRELL:  Objection to form,

2       foundation.

3            THE WITNESS:  No; because I

4       wouldn't be pulling them up.

5   BY MR. PLACITELLA:

6       Q.   Didn't you tell me in a prior

7   deposition that all this stuff was

8   electronic and you could word-search it?

9            MR. FARRELL:  Objection to form,

10      foundation, misstates the witness'

11      prior testimony.

12  BY MR. PLACITELLA:

13      Q.   Just asking.

14      A.   The information is in a database.

15  You have to be able to find it.

16      Q.   You just search for --

17  word-search it; right?

18           MR. FARRELL:  Objection to

19      form --

20  BY MR. PLACITELLA:

21      Q.   How hard is that?

22           MR. FARRELL:  Objection to form

23      and foundation.

24           THE WITNESS:  And that's also

25      assuming that the audit reports that



Page 359

```
 1          we're talking about specifically had

 2          the word "Emtal" in them because

 3          that's the information that's been put

 4          into the database.

 5    BY MR. PLACITELLA:

 6          Q.   Sure.

 7          A.   There's a lot of other records,

 8    boxes and boxes of records --

 9          Q.   Fair enough.

10          A.   -- from Engelhard that haven't

11    been put into the database.

12               So if those audit reports are in

13    a different place, they might not be in this

14    one.  I just don't know.

15          Q.   But you never even asked for a

16    search to be done to see if they exist --

17               MR. FARRELL:  Objection to

18          form --

19    BY MR. PLACITELLA:

20          Q.   -- fair?

21               MR. FARRELL:  -- and foundation.

22               THE WITNESS:  I did not.

23    BY MR. PLACITELLA:

24          Q.   Okay.  Topic number 9 asks for

25    you to provide information for specific
```



Page 360

```
 1   cases, correct --
 2        A.   Yes.
 3        Q.   -- be able to testify to it --
 4        A.   Yes.
 5        Q.   -- correct?
 6             One is Schwartz versus Eastern
 7   Magnesia; correct?
 8        A.   Yes.
 9        Q.   Dynatron/Bondo talc litigation;
10   correct?
11        A.   Yes.
12        Q.   Smith versus Emtal; correct?
13        A.   Yes.
14        Q.   The Kangas case?
15        A.   Yes.
16        Q.   The Weldon B. Smith case?
17        A.   Yes.
18        Q.   And that William L. Salling case;
19   correct?
20        A.   Yes.
21        Q.   Okay.  What information did you
22   pull about these cases?
23             MR. FARRELL:  Objection to form
24        and foundation.
25             THE WITNESS:  So some of this
```



Page 361

1           information is privileged.  But I did

2           discuss each of the cases.  I got

3           information on each of them from

4           counsel.  And I feel like I can speak

5           to these reasonably well and answer

6           your questions.

7    BY MR. PLACITELLA:

8           Q.    Okay.  So do you have the -- did

9    you actually look at documents in order to

10   answer these questions?

11          A.    In some cases, yes.  In other

12   cases the documents are privileged, so no.

13          Q.    Well, what documents did you look

14   at that aren't privileged?

15          A.    I look at documents and mainly

16   documents --

17               MR. FARRELL:  I'm sorry.  You're

18          talking about on the topic; yes?

19               MR. PLACITELLA:  Yes.

20               THE WITNESS:  I mainly looked at

21          documents that identify start dates

22          and end dates for the case in

23          question.  For most of them, in the

24          case of the Dynatron/Bondo talc

25          litigation, much of it is privileged;



Page 362

```
 1          and so my information in those cases
 2          came from counsel.
 3     BY MR. PLACITELLA:
 4          Q.   Did you pull each of these files?
 5     Did you ask that the files for each of these
 6     cases be pulled so you could review them?
 7               MR. FARRELL:  Objection -- excuse
 8          me.  Objection to form and foundation.
 9               THE WITNESS:  No, there's no way
10          I would have had time to do all that.
11          I mean, there was so much information.
12     BY MR. PLACITELLA:
13          Q.   Well, you could just word-search
14     your database for these case names and pull
15     the files; right?
16               MR. FARRELL:  Objection to form,
17          foundation.
18               THE WITNESS:  I guess
19          word-searching and pulling files takes
20          time.  But the big problem for me
21          would be trying to review everything.
22          I feel I have enough information to
23          talk fairly well regarding the
24          chronology of those claims.
25     BY MR. PLACITELLA:
```



Page 363

```
 1        Q.   Sir, you were asked to produce
 2   these files today for the deposition.  Where
 3   are they?
 4            MR. FARRELL:  Objection to form,
 5        foundation.
 6            Which request are you referring
 7        to?
 8   BY MR. PLACITELLA:
 9        Q.   All documents relating to claims
10   or lawsuits filed against BASF, including
11   Eastern Magnesia Talc, from before Westfall
12   to January 1, 1988.
13            That would have covered these
14   files; correct?
15            MR. FARRELL:  And what does the
16        response say?
17   BY MR. PLACITELLA:
18        Q.   That would have covered these
19   cases; correct?
20            MR. FARRELL:  Objection to --
21   BY MR. PLACITELLA:
22        Q.   Sir, all these case were filed
23   before 1988; correct?
24            MR. FARRELL:  I'm sorry.  Which
25        request, sir?
```



Page 364

1              MR. PLACITELLA:  Number 10.

2              MR. FARRELL:  Objection to form

3         and foundation.  I note our objection

4         in response to the notice.

5              THE WITNESS:  I'm sorry, sir.

6         Your question was?

7    BY MR. PLACITELLA:

8         Q.   All of these cases that are

9    mentioned in the topic we're addressing now

10   that we just went through are covered in my

11   request number 10 for documents; correct?

12   They all occurred before 1988?

13        A.   Yes.

14        Q.   Okay.

15        A.   One comment, though, I have is

16   that Weldon Smith I recognize.  I'm not sure

17   that we recognize Smith versus Emtal as

18   being different from Weldon Smith or if it

19   was a different Smith case.

20        Q.   Okay.  And although you were

21   asked to bring those documents with you

22   today, you didn't bring anything; correct?

23              MR. FARRELL:  Objection to form,

24         foundation, misstates the record.

25              THE WITNESS:  I, I didn't realize



Page 365

1         that I was asked to bring them.  I

2         didn't bring them.

3    BY MR. PLACITELLA:'

4         Q.   But you looked at them?

5         A.   As I, as I mentioned, I didn't

6    look at the full cases.  I looked at

7    information regarding litigation initiation

8    and, and resolution.  But I didn't look at

9    the full files.

10         Q.   Are they here in this office?

11         A.   I don't know.

12              MR. FARRELL:  Objection to form.

13              MR. PLACITELLA:  Are they here in

14         this office, Mr. Farrell, the files

15         relating to this case?

16              MR. FARRELL:  You want my

17         response to this question?

18              MR. PLACITELLA:  All I want to

19         know is are they here in this office.

20              MR. FARRELL:  I'll be happy to

21         explain.  We have already produced

22         thousands of pages of documents.  We

23         stated in the response to this notice

24         that we had produced documents.  We

25         ran the search terms that the



1          plaintiffs asked us to run, produced

2          those nonprivileged documents.  You

3          received thousands of pages of

4          documents.  And BASF has asserted

5          objections in response to these

6          requests, stating that it wouldn't be

7          producing further documents since the

8          requests overlapped with prior

9          requests that plaintiffs have served.

10              I would also further note that

11     you have used documents from the

12     Schwartz case, from the Kangas case,

13     from the Bondo case in prior

14     depositions in discovery in this case.

15     So you have these documents.  So any

16     suggestion that --

17          MR. PLACITELLA:  That's not true.

18          MR. FARRELL:  Excuse me.  Any

19     suggestion that documents on Westfall

20     or Schwartz or Kangas have been

21     withheld from you in some way, other

22     than privileged documents, is not

23     correct.  We've run the search terms

24     you've asked us to run.  We've

25     produced thousands of pages of



Page 367

1          documents to you.  And those documents

2          have been received by plaintiff's

3          counsel six months ago.

4               MR. PLACITELLA:  Sir, you never

5          produced --

6               MR. FARRELL:  We asserted an

7          objection in response to this notice.

8               MR. PLACITELLA:  Sir --

9               MR. FARRELL:  You never raised

10         any dispute with that objection.

11              MR. PLACITELLA:  Sir, that's not

12         our obligation under the law.  The law

13         is very clear.  I can cite you chapter

14         and verse.  We'll fight it later with

15         the Judge.

16              This man said he reviewed

17         documents that were nonprivileged

18         related to these files, and I'm asking

19         you to produce them here.

20              MR. FARRELL:  They have been

21         produced to plaintiff's counsel

22         previously.  The documents that

23         Mr. Steinmetz looked at, I recall

24         seeing several of them used as

25         exhibits by plaintiff's counsel, by



1          Mr. Pollack, for example, and by you

2          at the deposition of Mr. Dornbusch.

3               MR. PLACITELLA:  Okay.

4               MR. FARRELL:  So you have the

5          documents that Mr. Steinmetz looked at

6          concerning the Schwartz case and the

7          Kangas case and the several others

8          mentioned in that topic.

9               MR. PLACITELLA:  We asked for the

10         files.  The only documents that we

11         have that I understand came from the

12         insurance production -- which I'm

13         happy to go over and I plan on going

14         over.

15              My question is:  There was

16         specific files we asked for.  We laid

17         them out; all right?  We tried to keep

18         it narrow after our meet-and-confer.

19         And I'm asking you to produce whatever

20         files you have related to these five

21         cases.  It's not a lot.

22              MR. FARRELL:  First of all, it is

23         a lot.

24              MR. PLACITELLA:  Okay.

25              MR. FARRELL:  And second of



Page 369

```
 1      all --
 2            MR. PLACITELLA:  It is a lot?
 3            MR. FARRELL:  -- we've previously
 4      produced documents.  You served a new
 5      request for production a week before
 6      this deposition, after the fact
 7      discovery cutoff in this case.  Your
 8      request was improper.  We noted that
 9      it was improper in our responses and
10      objections.  We've objected to the
11      request.  We've previously produced
12      documents, including using search
13      terms and a protocol that the
14      plaintiffs agreed too.
15            MR. PLACITELLA:  Okay.
16            MR. FARRELL:  You have documents
17      regarding these cases.  And we stand
18      by our objections.
19            MR. PLACITELLA:  Okay.  So just
20      so we're clear, although the documents
21      were called for, you did not produce
22      them here today?
23            MR. FARRELL:  That is not
24      correct.
25            MR. PLACITELLA:  Okay.  Do you
```



Page 370

```
 1          have -- then show me the ones you have
 2          with you here today.
 3               MR. FARRELL:  I didn't -- I don't
 4          have them with me here today --
 5               MR. PLACITELLA:  That's all I
 6          wanted to ask.
 7               MR. FARRELL:  -- Mr. Placitella,
 8          because they've been produced to you
 9          in the past, as evidenced by the fact
10          that you've used them as exhibits to
11          depositions in this case.
12               MR. PLACITELLA:  So you've
13          produced to us -- not the insurance
14          companies -- you've produced to us
15          documents on the Kangas case?  Is that
16          what you're saying?
17               MR. FARRELL:  You have documents
18          on the Kangas case.
19               MR. PLACITELLA:  You have
20          produced to us, yes or no, documents
21          on the Kangas case?
22               MR. FARRELL:  If they were
23          responsive to the search terms that
24          plaintiffs proposed and they were not
25          privileged, they would have been
```



Page 371

```
1              produced to you six months ago.

2                   MR. PLACITELLA:  Okay.  Have you

3              produced documents -- the file on the

4              Kangas case?

5                   MR. FARRELL:  We have done the

6              search protocol that the plaintiffs --

7                   MR. PLACITELLA:  Okay, you're not

8              going to answer.  And I'm not going to

9              fight with you.

10                  MR. FARRELL:  Are you saying you

11             have no documents on the Kangas case?

12             Are you making that representation?

13                  MR. PLACITELLA:  I'm not getting

14             into it with you.  We'll let the Judge

15             decide.

16                  MR. FARRELL:  Okay.  You don't

17             want to respond to my question.

18                  MR. PLACITELLA:  I'm not here to

19             answer your questions.

20        BY MR. PLACITELLA:

21             Q.   Okay.  So you looked at documents

22        in preparation for today's deposition

23        relating to these cases listed, A through F;

24        correct?

25             A.   Yes.
```



1        Q.    Where are those documents?

2        A.    They're back at the hotel where

3    I'm staying.

4        Q.    Okay.  Is there a reason you

5    didn't bring them with you?

6        A.    I had a lot of documents; they're

7    really heavy.  I didn't want to carry them

8    around if I didn't have to.

9        Q.    Okay.  What documents did you

10   look at related to the Schwartz versus

11   Eastern Magnesia Talc case?

12       A.    I'm trying to remember exactly

13   what the documents were.  I don't remember

14   them specifically.  I can give you the

15   dates, the start and finish dates for

16   Schwartz.  I'm just not sure exactly what I

17   looked at in that case.

18       Q.    So why don't you give me the

19   start and finish dates for Schwartz versus

20   Eastern Magnesia Talc?

21            MR. FARRELL:  Objection to form.

22   BY MR. PLACITELLA:

23       Q.    Go ahead.

24       A.    So Schwartz began around June of

25   1983 and finished around June of 1984, in



Page 373

1    the first couple of weeks.  I don't remember

2    the exact date in June.

3           Q.   Am I correct the final settlement

4    agreement wasn't signed until July?

5                MR. FARRELL:  Objection to form.

6                THE WITNESS:  I don't know.  It

7           may be, it may be, may be true.

8    BY MR. PLACITELLA:

9           Q.   Okay.  The Dynatron/Bondo talc

10   litigation, what are the dates for that?

11               MR. FARRELL:  Objection to form

12          and foundation.

13               THE WITNESS:  So the

14          Dynatron/Bondo talc litigation

15          involved Kangas and Weldon and

16          Salling.  A lot of the information

17          involved in this is unclear because

18          the litigation was originally made

19          against Bondo.  So there's a lot of, a

20          lot of work in trying to reconstruct

21          when Engelhard, for example, became

22          involved in it; what they knew, when

23          they knew it.  This was, as, as I

24          mentioned before, so many years ago.

25               So the best that I can tell you



Page 374

```
1         for the start of the Dynatron/Bondo

2         litigation is that it began around

3         June of 1984, towards the end of June

4         of 1984.

5              Again, we don't know exactly when

6         Engelhard became involved as a

7         participant in the litigation exactly.

8    BY MR. PLACITELLA:

9         Q.   Uh-huh.

10        A.   And we know from privileged

11   documents that that litigation ended around

12   the middle -- around June of 1986.  Again, I

13   haven't seen documents related to that

14   because they're privileged.  But that's the

15   information that I have.

16        Q.   Okay.  And the Smith versus

17   Emtal, you think that's the same as Weldon

18   Smith?

19        A.   We couldn't identify -- I asked

20   counsel, and they couldn't identify a

21   different.  So I'm assuming that Weldon

22   Smith is the same as Smith.

23        Q.   Okay.

24        A.   The dates for that is, are --

25   Weldon Smith, they first tried to serve
```



Page 375

```
 1    Engelhard in January of 1985.  But we know
 2    from the dismissal that it wasn't served
 3    correctly.  So again, we're trying to
 4    reconstruct what was known by whom, you
 5    know, 20, 25 years ago.
 6         Q.    Uh-huh.
 7         A.    So we haven't been able to
 8    completely reconstruct when Engelhard knew
 9    that they had been served because it was
10    done incorrectly.  We know that in December
11    of 1985 it was dismissed because it hadn't
12    been served correctly.
13         Q.    Uh-huh.
14         A.    So sometime during 1985 Engelhard
15    learned about this.  We just don't know when
16    from the records that we've been able to dig
17    up.
18         Q.    Okay.  What about Kangas?
19         A.    And then --
20              MR. FARRELL:  Objection to form,
21         asked and answered.
22              MR. PLACITELLA:  No.
23              THE WITNESS:  So Kangas and
24         Salling, from my understanding, were
25         part of the Dynatron/Bondo litigation.
```



 1          And again, as I mentioned, we haven't

 2          be able to identify precisely when

 3          they were brought in; although we know

 4          that the litigation ended around the

 5          middle of 1986, from privileged

 6          documents.

 7   BY MR. PLACITELLA:

 8          Q.   Okay.  So I want to show you

 9   what's been marked as 214.  And these are

10   documents that were not produced by -- at

11   least not to my knowledge -- BASF but

12   produced by Arrowood.

13          (A document previously marked as

14   Exhibit 214 was introduced.)

15   BY MR. PLACITELLA:

16          Q.   Ask you if you've ever seen that

17   before.

18          A.   I don't recall seeing -- I've

19   seen a letter from C&F Underwriters Group

20   because I recognize the logo.  I don't

21   remember these specifically.  And I only

22   remember one letter.  There may have been

23   others, but I don't remember them.

24          Q.   So you've never seen this

25   particular file before?



```
 1              MR. FARRELL:  Objection to form

 2         and foundation.

 3              THE WITNESS:  By "file" you mean

 4         all of these?

 5    BY MR. PLACITELLA:

 6         Q.   Yes.

 7         A.   Correct; I haven't seen every one

 8    of these.

 9         Q.   If you go to the Bates Number

10    49418 -- do you see that?

11         A.   Yes.

12         Q.   Okay.  And that's --

13              MR. FARRELL:  The documents that

14         you have here are not consecutively

15         Bates numbered.  They're stapled

16         together.  Are these different

17         documents?

18              MR. PLACITELLA:  I thought they

19         were all together.

20              MR. FARRELL:  Well, the Bates

21         numbers are not consecutive.  Is it

22         one document or is it multiple

23         documents?

24              MR. PLACITELLA:  It might be

25         multiple documents, which is fine.
```



Page 378

1           I'll go through each one.  It's not a

2           problem.

3     BY MR. PLACITELLA:

4           Q.   Looking at Bates Number 49418,

5     from -- you see that, July 15th, 1985?

6           A.   Yes, I do.

7           Q.   Okay.  Have you seen this one

8     before?

9           A.   I don't recall it.

10          Q.   Okay.  This -- the re is:

11    Various versus Engelhard Minerals and

12    Chemical Corp.

13               Do you see that?

14          A.   Yes.

15          Q.   And you know that Royal Insurance

16    was the insurance carrier for Engelhard?

17          A.   Yes, it was.

18               MR. FARRELL:  Objection to form.

19               THE WITNESS:  It was one of them,

20          yes.

21    BY MR. PLACITELLA:

22          Q.   And that Alexander & Alexander

23    was the agent that Engelhard used?

24               MR. FARRELL:  Objection to form.

25               THE WITNESS:  I don't recall



1          that, but I don't disagree with you.

2     BY MR. PLACITELLA:

3          Q.    Okay.  And the re here is:

4     Various versus Engelhard Minerals &

5     Chemicals.

6               Do you see that?

7          A.    Yes.

8          Q.    Okay.  And it talks about

9     [reading]:  The plaintiffs' names are Leroy

10    Kangas, Weldon B. Smith, and William

11    Salling.  A reference is made that Engelhard

12    Mineral -- Magnesium Talc is a subsidiary of

13    Engelhard.

14              Do you see that?

15         A.    Yes.

16         Q.    And this occurred in 1985;

17    correct?

18              MR. FARRELL:  Objection to form.

19              THE WITNESS:  The -- all the

20         dates in here are for 1985; yes.

21    BY MR. PLACITELLA:

22         Q.    Okay.  Can you go to Bates Number

23    49428.

24              (Discussion held off the

25    stenographic record.)



Page 380

 1    BY MR. PLACITELLA:

 2         Q.    This was a May 20th, 1985 letter.

 3    And the insured is Engelhard Corporation;

 4    correct?

 5         A.    Yes.

 6         Q.    And the venue is Superior Court,

 7    State of California?

 8         A.    Yes.

 9         Q.    And this talks about the Salling

10    and Kangas lawsuits; correct?

11              MR. FARRELL:   Objection to form.

12              THE WITNESS:   It does refer to

13         them, yes.

14    BY MR. PLACITELLA:

15         Q.    So at least by virtue of this

16    document, Engelhard's insurance carriers

17    were aware that these cases were alive and

18    existed; correct?

19              MR. FARRELL:   Objection to form

20         and foundation.

21              THE WITNESS:   It indicates that

22         the insurance carriers had heard about

23         them.  I'm not sure that these reports

24         would necessarily reflect that they

25         were ongoing; but that they had been



```
 1          advised of the possibility or maybe --
 2          that there was a chance that these
 3          would be entered.
 4               But the information does agree
 5          with the information I have regarding
 6          these cases.
 7   BY MR. PLACITELLA:
 8        Q.   It indicates, does it not, that
 9   Howard Sloane is already handling the
10   litigation?
11               MR. FARRELL:  Objection to form.
12               THE WITNESS:  It says:  We
13          believe Mr. Howard Sloane is the
14          person familiar.
15   BY MR. PLACITELLA:
16        Q.   Right.  And he was your lawyer
17   handling the talc cases; right?
18               MR. FARRELL:  Objection to form.
19               THE WITNESS:  Yes.  I don't know
20          if he was personally handling these at
21          the time.  I -- you would have to ask
22          him.  I don't know.
23   BY MR. PLACITELLA:
24        Q.   Okay.  And --
25        A.   It may be that he was the contact
```



Page 382

1    person there or the point person --

2        Q.    Fair enough.

3        A.    -- at Cahill.

4        Q.    And in discussing these lawsuits,

5    Englehard Corporation was cc'd; correct?

6            MR. FARRELL:  Objection to form.

7    BY MR. PLACITELLA:

8        Q.    Jesse Pagonis was cc'd; correct?

9        A.    Yes.  That's on the next page;

10   yes.

11       Q.    He was a risk manager for

12   Engelhard at the time?

13       A.    Yes.

14       Q.    Okay.  Ray Devine was cc'd;

15   correct?

16       A.    Yes.

17       Q.    What was his job?

18       A.    I've seen his name.  I'm not sure

19   what his role was.  I think he was involved

20   possibly in insurance or claims, but I don't

21   know that.

22       Q.    And Howard Sloane was cc'd;

23   correct?

24       A.    Yes.

25       Q.    So clearly at this point in time,



Page 383

1    1985, Engelhard was aware of these cases?

2             MR. FARRELL:  Objection to form.

3    BY MR. PLACITELLA:

4        Q.    Fair?

5        A.    Yes.

6        Q.    Okay.  By the way, there's two

7    pages at the end that shouldn't be there.

8    We can rip them off; a mistake.  I saw that

9    on the train on the way in.

10            (Discussion held off the

11   stenographic record.)

12   BY MR. PLACITELLA:

13       Q.    Now, I want to show you what's

14   been marked 215.

15            (A document previously marked as

16   Exhibit 215 was introduced.)

17   BY MR. PLACITELLA:

18       Q.    215 is a January 24, 1985 letter

19   from Anistics to Royal Insurance Company

20   with the cc -- sorry -- to Paulette Bynoe,

21   Jesse Pagonis, and Michael Singer.  Do you

22   see that?

23       A.    Yes.

24       Q.    And who -- do you know who

25   Anistics is?



Page 384

1            First of all, have you ever seen
2    this before?
3          A.    I believe I have seen this.
4          Q.    Okay.  Do you know who Anistics
5    is?
6          A.    It looks, it looks like this is a
7    loss run.  So it would be from an insurer or
8    possibly from a broker.  I'm not sure who
9    Anistics is, though.
10          Q.    What's a loss run?
11               MR. FARRELL:  Objection to form.
12               THE WITNESS:  My understanding of
13          a loss run, it's a, a regular printout
14          of information regarding cases that
15          are ongoing --
16    BY MR. PLACITELLA:
17          Q.    Okay.
18          A.    -- insurance claims that are
19    ongoing.
20          Q.    Okay.  And we discussed Jesse
21    Pagonis.  Do you know who any of these other
22    ccs are, Singer or Bynoe?
23          A.    I'm not familiar with them, I may
24    have seen them, but I don't really remember
25    them right now.



Page 385

```
 1         Q.   Okay.  And if you go to the next
 2    page...
 3              MR. BOISE:  What's the Bates
 4         Number?
 5              MR. PLACITELLA:  873.
 6    BY MR. PLACITELLA:
 7         Q.   There is the name Leroy Kangas.
 8    And it say "Willia" -- I'm assuming that's
 9    "William" -- Salling.  Do you see that?
10         A.   I do.
11         Q.   Okay.  And do you understand what
12    the various columns are and what they stand
13    for in this loss run?
14              MR. FARRELL:  Objection to form
15         and foundation.
16              THE WITNESS:  I don't understand.
17         We talked about this -- I talked about
18         this with counsel.  And I believe they
19         had a theory, and I don't remember
20         what it was.  But it wasn't clear
21         because we were saying we weren't sure
22         what those -- obviously, the last
23         three columns look like a date.  But
24         I'm not sure what they represented.
25         I -- counsel may have a better idea,
```



Page 386

```
 1        but I don't know.
 2   BY MR. PLACITELLA:
 3        Q.    Okay.  Now, in -- sorry about
 4   that.
 5             Did you review any other loss
 6   runs in preparation for today's deposition?
 7             MR. FARRELL:  Objection to form.
 8             THE WITNESS:  I'm trying to
 9        remember.  There may have been one
10        other, and I just don't remember the
11        details of it.  It was a different --
12        it was from a different company, so it
13        didn't look like this one.  But I
14        don't remember much about it, so I
15        can't answer many questions about it.
16   BY MR. PLACITELLA:
17        Q.    Okay.
18        A.    I would, I would recognize it if
19   I saw it; I'm sure.  I just don't remember
20   it.
21        Q.    Okay.  In, in designated issue
22   number 11 you were asked to come testify
23   about loss runs reflecting notice of claims
24   for alleged asbestos-related injury and any
25   communications with persons other than
```



1  Engelhard attorneys concerning the renewal

2  of insurance for asbestos-related claims.

3           Do you see that?

4       A.   Yes, I do see it.

5       Q.   Okay.  Can you tell me what you

6  did to prepare yourself to respond to that

7  area of inquiry?

8       A.   This is similar to some of the

9  others that were brought to our attention at

10  the last minute last week.  And so I talked

11  at a high level again with counsel regarding

12  this one.  And you can see, I did look at a

13  couple of loss runs so that I could at least

14  talk about it with you.  But I didn't do a

15  lot -- any independent research into this.

16      Q.   Did you ask BASF to provide you

17  with the loss runs that were in their

18  possession so that you could review them and

19  be prepared to testify today?

20           MR. FARRELL:  Objection to form,

21           foundation, assumes facts.

22           THE WITNESS:  I, I believe they

23           may have shown me what they have.

24           Keep in mind that the loss runs were

25           generated by the insurers, not by



Page 388

```
1              Engelhard.  So the best place to go

2              for those, obviously, would be with

3              the insurers.

4                   I may have seen everything that

5              we have.  I just don't know that we

6              have that much information.

7    BY MR. PLACITELLA:

8         Q.   Okay.  Well, what did you see

9    other than this one document I gave you on

10   loss runs?

11        A.   I mentioned I saw one other, and

12   I don't know if it was a loss run related to

13   this or not.

14        Q.   Did you ask whether there were

15   loss runs in the possession of BASF for you

16   to review in order to come testify?

17              MR. FARRELL:  Objection to form,

18        foundation, assumes facts.

19              THE WITNESS:  I didn't ask for

20        them because they showed them to me.

21   BY MR. PLACITELLA:

22        Q.   Well, do you know whether you

23   were shown all the loss runs that are in the

24   possession of BASF?

25              MR. FARRELL:  Objection to form,
```



1          foundation, assumes facts.

2               THE WITNESS:  I know that counsel

3          was trying to prepare me as best they

4          could.  I, I'm confident that if they

5          had had more, they would have shown

6          me.

7               The discussion we had was that

8          the loss runs would have come from

9          insurers, not from Engelhard.  So the

10         chances are that we don't have any

11         more is my impression.

12         Q.   Well, weren't they permanent

13    records that were kept by BASF?  When the

14    loss run was sent to Jesse Pagonis, what

15    happens to it?

16              MR. FARRELL:  Objection to form,

17         foundation, assumes facts, calls for

18         speculation.

19              THE WITNESS:  I don't know if we

20         even received them.  I don't know what

21         happened to them.  And I'm not sure

22         what the policy regarding, regarding

23         document retention called for with

24         respect to these.  So I don't know.

25    BY MR. PLACITELLA:



Page 390

```
 1        Q.   Well, this one document that the

 2   insurance carriers gave us, they show that

 3   the loss runs were sent to Jesse Pagonis;

 4   correct?

 5             MR. FARRELL:  Objection to form

 6        and foundation.

 7             THE WITNESS:  In this one case it

 8        was.

 9   BY MR. PLACITELLA:

10        Q.   Yeah.  So did you ask to see what

11   else was in Jesse Pagonis' files or the

12   person who succeeded him, in terms of loss

13   runs related to asbestos-related claims?

14             MR. FARRELL:  Objection to form,

15        foundation, assumes facts.

16             THE WITNESS:  No, I didn't.  I

17        worked with what we had -- what was

18        provided to me.

19   BY MR. PLACITELLA:

20        Q.   So in preparation for today's

21   deposition, other than what the lawyers told

22   you, you made no independent investigation

23   to determine what loss runs were in the

24   possession of BASF related to the Emtal talc

25   litigation; correct?
```



Page 391

```
 1              MR. FARRELL:  Objection to form
 2         and foundation.
 3              THE WITNESS:  That's correct.  I
 4         was depending on counsel and what they
 5         provided me with.
 6    BY MR. PLACITELLA:
 7         Q.   And as you sit here today, you
 8    don't know one way or the other whether
 9    counsel ever made a request of BASF for all
10    of the loss runs related to Emtal talc
11    litigation; correct?
12              MR. FARRELL:  Objection to form
13         and foundation.
14              THE WITNESS:  I don't know that
15         they did, and I don't know that
16         Engelhard would have kept them all,
17         so...
18    BY MR. PLACITELLA:
19         Q.   You don't know one way or the
20    other?
21         A.   Correct.
22         Q.   Okay.  Going back to -- let's
23    sidetrack for a second.  Going back to topic
24    number 9...
25         A.   Yes.
```



```
1        Q.    Am I correct that the digital

2   database has the capacity for you to search

3   for a case name and see if it will come up

4   and what files relate to that case in the

5   digital database?

6              MR. FARRELL:  Objection to form,

7         foundation, misstates the record.

8              THE WITNESS:  We can do searches

9         in the database.

10  BY MR. PLACITELLA:

11       Q.    Okay.  Did you, did you run a

12  search for the Kangas case?

13             MR. FARRELL:  Objection to form

14        and foundation.

15             THE WITNESS:  I didn't.  My

16        understanding from the discussion

17        earlier is that, in responding to your

18        requests for data and documents, we

19        have done that type of thing.  I don't

20        know if it was done again in

21        preparation for me coming in to

22        prepare for this.  But I didn't do it.

23  BY MR. PLACITELLA:

24       Q.    So you never requested, in

25  preparing for today's deposition, that a
```



Page 393

1    search of the database be done to see what

2    is in there on the Kangas case; right?

3              MR. FARRELL:  Objection to form,

4         foundation, misstates the record.

5              THE WITNESS:  I did not request

6         anything specific.

7    BY MR. PLACITELLA:

8         Q.   So as you sit here today, you do

9    not know whether there is anything in the

10   database related to the Kangas case;

11   correct?

12             MR. FARRELL:  Objection to form

13        and foundation.

14             THE WITNESS:  I know to the

15        extent that our counsel has said today

16        that you've used some of the Kangas

17        documents in other depositions.  But

18        that's all -- that's what I know about

19        it.

20   BY MR. PLACITELLA:

21        Q.   As you sit here today, you do not

22   know whether there is anything in the

23   database related to the Kangas case;

24   correct?

25             MR. FARRELL:  Same objections.



```
 1                THE WITNESS:  Same answer.  To

 2          the extent that I know that counsel

 3          has said that you've used some of them

 4          in depositions, then it, it appears

 5          that some of them have been produced

 6          to you.  But I don't know that

 7          personally.

 8  BY MR. PLACITELLA:

 9          Q.   Well, we'll do that on another

10  day.

11                Did you ask for --

12                MR. FARRELL:  There's not going

13          to be another day.  So if you have a

14          question about the Kangas case, you

15          should ask it now.

16                MR. PLACITELLA:  Okay.

17          Respectfully, that will be for the

18          Court to decide.

19                MR. FARRELL:  Well, no.

20          Respectfully, Rule 30, Rule 30 states

21          a deposition of one day.  We're here.

22          If you have a question about the

23          Kangas --

24                MR. PLACITELLA:  I'm going to ask

25          all the questions I can, but I will
```



Page 395

1           reserve my right to go to the Court.

2    BY MR. PLACITELLA:

3           Q.   Did you request --

4               MR. FARRELL:  We can get the

5           Judge on the phone now.

6               MR. PLACITELLA:  No, I'm not

7           going to do that.  I want to finish my

8           questions.

9    BY MR. PLACITELLA:

10          Q.   Did you --

11              MR. FARRELL:  Well, you will

12          finish them today in the seven hours

13          and one day allotted.

14              MR. PLACITELLA:  Okay.

15   BY MR. PLACITELLA:

16          Q.   Did you request a search be done

17   for the Weldon Smith case in the database?

18          A.   I didn't --

19              MR. FARRELL:  Objection.

20          Objection to form and foundation.

21              THE WITNESS:  I did not request a

22          search.  But I, as I mentioned, I have

23          information on the initiation of the

24          case and the final disposition and why

25          it was, why it was decided.



Page 396

1    BY MR. PLACITELLA:

2        Q.   Did you request that a search be

3    done of the database for the Salling case?

4            MR. FARRELL:  Objection to form

5        and foundation.

6            THE WITNESS:  That's the same

7        situation as Kangas.  It was part of

8        the same litigation.  I didn't ask for

9        anything specific.  Counsel brought me

10       up to speed on, on the start dates or,

11       or the issues surrounding when the

12       start date was for that litigation and

13       also informed me that there is

14       privileged information regarding the

15       end of that -- of Engelhard's

16       involvement in that litigation.

17   BY MR. PLACITELLA:

18       Q.   So am I correct, then, based upon

19   your testimony, that between 1982 and

20   1988 -- or 1987, okay -- Engelhard was

21   involved in the Westfall case; correct?

22           MR. FARRELL:  Objection to form

23       and foundation, misstates the witness'

24       testimony.

25           THE WITNESS:  Well, not for that



Page 397

```
 1          entire period.  I mean --
 2     BY MR. PLACITELLA:
 3          Q.   Well, no.  During that time
 4     period, not the entire time period.
 5          A.   Yes.
 6          Q.   Well, let me ask the question
 7     this way:  Prior to 1987, Engelhard was
 8     involved in the Westfall case; correct?
 9          A.   That occurred before 1987.
10          Q.   That's one.
11               They were involved in the
12     Schwartz case?
13               MR. FARRELL:  Objection --
14     BY MR. PLACITELLA:
15          Q.   Correct?
16               MR. FARRELL:  Objection to form.
17               THE WITNESS:  Yes; from June of
18          1983 until June of 1984.
19     BY MR. PLACITELLA:
20          Q.   So that's two.
21          A.   Yeah.
22          Q.   They were involved in the Smith
23     versus Emtal case?
24               MR. FARRELL:  Objection to form
25          and foundation, assumes facts.
```



Page 398

1              THE WITNESS:  From some point in

2         1985.  We're not sure when it started.

3         It could have been at the beginning of

4         the year, the middle of the year,

5         towards the end; we don't know.  But

6         it ended in December of 1985.

7    BY MR. PLACITELLA:

8         Q.   So that's three.

9              They were involved in the Kangas

10   case?

11             MR. FARRELL:  Objection to form,

12        foundation, assumes facts.

13             THE WITNESS:  My understanding is

14        that at some point Engelhard was

15        involved in the Kangas case.  Again,

16        we don't know whether it started in

17        the middle of 1984 or the end of 1984

18        or at some other point.  But we know

19        at some point Engelhard became aware

20        and was part of it.

21   BY MR. PLACITELLA:

22        Q.   Okay.  So that's four.

23             And they were involved in the

24   Weldon Smith case?

25             MR. FARRELL:  Objection to form



Page 399

```
 1        and foundation.
 2              THE WITNESS:  Yes.  That was
 3        1985.
 4   BY MR. PLACITELLA:
 5        Q.   Okay.  So that's five.
 6              And then the William Salling
 7   case; correct?
 8        A.   That was part of the --
 9              MR. FARRELL:  One moment.
10              Objection to form and foundation.
11        I --
12              MR. PLACITELLA:  Please don't
13        testify.
14              MR. FARRELL:  You've counted the
15        Smith case twice.  I'm sure it was
16        inadvertent, but you counted it twice.
17        If you're trying to make some list,
18        you've counted the case twice.
19              THE WITNESS:  Yeah, thank you.  I
20        was going to -- I noticed that too,
21        yes.
22   BY MR. PLACITELLA:
23        Q.   So there was only one Smith case?
24        A.   As far as I understand --
25        Q.   Okay.
```



Page 400

1        A.    -- yes.

2        Q.    And then the Salling case.  So

3    that's five; correct?

4             MR. FARRELL:  Objection to form

5         and foundation, assumes facts.

6             THE WITNESS:  Which was linked to

7         the Kangas Dynatron/Bondo litigation.

8    BY MR. PLACITELLA:

9        Q.   So between 1982 and 1987,

10   Engelhard was involved in five separate

11   cases; correct?

12            MR. FARRELL:  Objection to form,

13        foundation --

14   BY MR. PLACITELLA:

15       Q.   Five separate plaintiffs?

16            MR. FARRELL:  Objection to form,

17        foundation, misstates the record.

18            THE WITNESS:  They were involved

19        in litigation.  Of course, there were

20        times when there was no active or

21        pending litigation during that period.

22   BY MR. PLACITELLA:

23       Q.   Right.  But during that time

24   period they were involved in five different

25   cases; correct?



```
 1              MR. FARRELL:  Objection to form,

 2         foundation, misstates the record.

 3              THE WITNESS:  We went through the

 4         cases and when they were involved.

 5         And as I mentioned, we know that

 6         probably the last half of 1986 there

 7         were no cases at all; and quite

 8         possibly parts of 1984 there were no

 9         cases.

10  BY MR. PLACITELLA:

11         Q.   Okay.  Am I correct that between

12  1982 and 1987 there was never a three-year

13  period when Engelhard was not involved in

14  litigation over talc?

15              MR. FARRELL:  Objection to form

16         and foundation.

17              THE WITNESS:  That's my

18         understanding.  I don't think there --

19         I don't know the relevance of three

20         years, but I don't know of a

21         three-year period.

22  BY MR. PLACITELLA:

23         Q.   Well, because your

24  document-retention policy says that you have

25  to maintain all the documents for three
```



Page 402

1    years -- do you recall that --

2              MR. FARRELL:  Objection to

3         form --

4    BY MR. PLACITELLA:

5         Q.    -- after the case is over.

6              MR. FARRELL:  Objection to form,

7         found- --

8    BY MR. PLACITELLA:

9         Q.   So you violated your own

10   document-retention policy?

11             MR. FARRELL:  Objection to form,

12        foundation, misstates the

13        document-retention policy, beyond the

14        scope of the notice.

15   BY MR. PLACITELLA:

16        Q.   Do you recall the

17   document-retention policy that says you have

18   to keep the cases for three years --

19             MR. FARRELL:  Objection --

20   BY MR. PLACITELLA:

21        Q.    -- after it's over?

22             MR. FARRELL:  Objection to form,

23        foundation, misstates the document --

24             MR. PLACITELLA:  Files; sorry.

25        But...



Page 403

```
 1              MR. FARRELL:  Objection to form,
 2         foundation, misstates the
 3         document-retention policy, beyond the
 4         scope of the notice.
 5              THE WITNESS:  To me, that's not
 6         at all what it says.
 7    BY MR. PLACITELLA:
 8         Q.   What does it say?
 9         A.   To me it says that if a document
10    is three years old, it can be discarded.  If
11    there's a litigation hold, then you don't
12    discard it.
13              But you don't start the, the hold
14    period again after the litigation.  If the
15    document's three years old, you discard it
16    if there's no hold.
17         Q.   Well, certainly between 1983 and
18    1987 Engelhard was aware that it was sued on
19    multiple occasions; correct?
20              MR. FARRELL:  Objection to form
21         and foundation.
22              THE WITNESS:  We know that there
23         was litigation.  We also know that
24         there was at least one significant
25         period in 1986 when there was nothing
```



Page 404

```
 1          going on.  There may have been times

 2          in 1984 when there was nothing going

 3          on.

 4      Q.    During this entire period, have

 5   you seen anything in the files to indicate

 6   that a litigation hold was put on any of the

 7   evidence related to Emtal talc?

 8              MR. FARRELL:  Objection to form

 9          and foundation.

10              THE WITNESS:  I haven't seen

11          anything like that.  I have no reason

12          to believe that there wasn't a hold

13          put on.  I know that Arthur Dornbusch

14          testified to that and said that he --

15          that at the time they recognized and

16          understood the need for litigation

17          holds.  I have no reason to believe

18          that they didn't.

19      Q.    Well, I think his testimony may

20   be different, but we'll let that speak for

21   itself.

22              MR. FARRELL:  Objection;

23          argumentative.

24   BY MR. PLACITELLA:

25      Q.    The -- so between 1982 and 1987,
```



Page 405

1    you think that there might have been a

2    couple of gaps, one in '84 and one the '86,

3    were you weren't involved in any talc

4    lawsuits?  Is that fair?

5            MR. FARRELL:  Objection to form,

6        foundation, misstates the record.

7            THE WITNESS:  My understanding is

8        that we know that in the last half of

9        1986 there was nothing pending or

10       active.  And as I mentioned, there may

11       have been times in 1984.  Again, we

12       just don't know a lot of details about

13       what Engelhard knew and when they knew

14       it with respect to the Bondo

15       litigation.

16       Q.   And the Bondo litigation was

17   because people were suing Engelhard because

18   Emtal talc was allegedly in the Bondo

19   product; correct?

20           MR. FARRELL:  Objection to form,

21       foundation, misstates the record.

22           THE WITNESS:  I don't know that

23       much detail at that litigation.  I

24       know the, the basic information around

25       it that I've discussed.  But I don't



```
 1            know all the details of what, what the
 2            claims were and what the --
 3            Q.   I'm just saying generally.   The
 4   reason that Engelhard was in the Bondo
 5   litigation was because that -- the
 6   allegation was it was Emtal talc in the
 7   Bondo that the people used; correct?
 8                 MR. FARRELL:   Objection to form,
 9            foundation, misstates the record.
10                 THE WITNESS:   Again, I don't
11            know.   I haven't read it in detail.   I
12            do know that after looking at all
13            these cases over the last couple of
14            weeks, there's all kinds of reasons
15            that companies were in litigation.
16            You're -- I agree completely that it
17            was a, an Emtal issue.   But I don't
18            know specifically the details.   I
19            don't argue with you about it; I just
20            don't know.
21            Q.   Okay.   Fair enough.
22                 So it would be wrong to state
23   that Engelhard was not involved in any
24   talc-related litigation after the Schwartz
25   case and before 1987 -- up to 1987; correct?
```



Page 407

```
 1              MR. FARRELL:  Objection to form,
 2         foundation, misstates the record.
 3              THE WITNESS:  There was -- it was
 4         a double-negative statement.
 5    BY MR. PLACITELLA:
 6         Q.   I'll try, I'll try to do better.
 7         A.   What -- that's okay.  What I
 8    would say is that there, there, there was
 9    litigation between the Westfall case and
10    1987.
11         Q.   All right.  And it was in
12    multiple cases, even after the Schwartz case
13    was resolved; correct?
14              MR. FARRELL:  Objection to form,
15         foundation, assumes facts, misstates
16         the record.
17              THE WITNESS:  We think at
18         least -- or at least I think at least
19         Schwartz and, and the persons in the
20         Dynatron/Bondo.  Regarding Weldon
21         Smith, I don't know whether that was
22         ever a case because it was incorrectly
23         served and we just don't have a lot of
24         information with what happened with
25         that one.
```



Page 408

```
1           Q.    Okay.  Can you -- do you have in
2      front of you -- I forgot if I gave it to
3      you -- Steinmetz 5?  Do you have that, the
4      privilege log?
5           A.    I believe, yes.
6           Q.    Can you pull that out, please.
7           A.    I do have it.
8           Q.    Okay.  And can you go --
9                 MR. FARRELL:  One moment, please.
10                MR. PLACITELLA:  Sure.
11                MR. FARRELL:  This is the subset
12      that you --
13                MR. PLACITELLA:  Yes.
14                MR. FARRELL:  -- you created?
15                MR. PLACITELLA:  Yeah.
16                MR. FARRELL:  Okay.
17      BY MR. PLACITELLA:
18           Q.    And can you go to page 4, please.
19           A.    Yes.
20           Q.    Okay.  You see there's an entry
21      for 9/20/84?
22           A.    I do, yes.
23           Q.    Okay.  And it talks -- and it's
24      an entry from a J. Friedman.  Do you know
25      who he is -- or she is?  I don't mean to be
```



Page 409

1   presumptuous.

2        A.   I don't know.

3        Q.   -- to Arthur Dornbusch?

4        A.   Yes.

5        Q.   Okay.  And it talks about "letter

6   regarding Dynatron/Bondo talc litigations";

7   do you see that?

8        A.   Yes.

9        Q.   So from a review of this, at

10  least as of September 1984, Mr. Dornbusch

11  was aware of Dynatron/Bondo talc

12  litigations; correct?

13            MR. FARRELL:  Objection to form

14       and foundation.

15            THE WITNESS:  Yes.  My

16       understanding that the Dynatron/Bondo

17       was talking to Engelhard about some of

18       these cases.  But that's all I can

19       glean from this information.

20  BY MR. PLACITELLA:

21       Q.   So when is the first time that

22  Dynatron/Bondo talked to Engelhard about

23  this litigation -- about the litigation, the

24  talc litigation?

25            MR. FARRELL:  Objection to form



Page 410

```
 1            and foundation.
 2                 THE WITNESS:  My understanding is
 3            that we don't know, that that's one of
 4            the things we're -- that we tried to
 5            find.  And I'm not sure that that
 6            information exists.  It may be in the
 7            privileged information and I
 8            misunderstood.
 9                 But my understanding is that we
10            know that this Bondo litigation began
11            in June of 2004 [sic].  But it's not
12            clear when Engelhard became aware that
13            they were going to be a party to
14            litigation.
15            Q.   But this would indicate that at
16       least in 1984 Mr. Dornbusch was aware of the
17       litigations; correct?
18                 MR. FARRELL:  Objection to form,
19            foundation, calls for speculation.
20                 THE WITNESS:  I don't know what
21            it tells him.  It may be that.  But it
22            doesn't tell me anything regarding
23            whether Mr. Dornbusch was expecting
24            Engelhard to be part of that
25            litigation.
```



Page 411

```
1        Q.   Well, if you go down a little
2   further, you see where for 12/13/85 there's
3   correspondence between Peter Sloane and
4   Arthur Dornbusch related to the Smith versus
5   Emtal litigation?
6        A.   Yes.
7        Q.   So what I'm trying to do is fill
8   in the gap here.  Assuming that the Schwartz
9   final settlement was finalized in July 1984
10  and this entry is from September 1984, do
11  you know when in that gap between July and
12  September, if at all -- well, strike that.
13  Do you know whether in that gap between July
14  and September is when the documents were all
15  destroyed?
16            MR. FARRELL:  Objection to form,
17       foundation, misstates the record.
18            THE WITNESS:  I'm sorry.  So you
19       referred me to the Sloane line.  But
20       you're going back, I presume, to the
21       Friedman to Dornbusch,
22       Dynatron/Bondo --
23       Q.   Correct.
24       A.   -- is that correct?
25       Q.   Correct.
```



Page 412

```
 1        A.   So, I'm sorry, what was your

 2   question?

 3        Q.   Well, we know the Schwartz case

 4   settled around 19 -- July of 1984 are the

 5   final documents.  We've seen them.  You've

 6   seen them; correct?

 7             MR. FARRELL:  Objection to form,

 8        foundation, misstates the record.

 9             THE WITNESS:  I'm sorry.  Could

10        you repeat it.

11   BY MR. PLACITELLA:

12        Q.   We know that the Schwartz case,

13   the final settlement documents were around

14   July 1984; correct?

15             MR. FARRELL:  Same objections,

16        misstates the record.

17             THE WITNESS:  I don't know the

18        exact date.  I know it was around that

19        time.  I thought it was June of 1984.

20        I don't know for sure.

21   BY MR. PLACITELLA:

22        Q.   Okay.  And we know that Arthur

23   Dornbusch was at least corresponding on the

24   issue of the Dynatron/Bondo litigations in

25   September of 1984; correct?
```



Page 413

```
 1                MR. FARRELL:  Objection --
 2    BY MR. PLACITELLA:
 3         Q.    -- according to the privilege
 4    log?
 5                MR. FARRELL:  Objection to form,
 6          foundation.
 7                THE WITNESS:  We know there was a
 8          letter regarding that.
 9                MR. BOYLE:  Hold on.
10                Objection to form and foundation.
11    BY MR. PLACITELLA:
12         Q.    Okay.  So do you know whether
13    that gap between July and September is when
14    all the evidence was destroyed --
15                MR. FARRELL:  Objection --
16    BY MR. PLACITELLA:
17         Q.    -- from the Westfall case?
18                MR. FARRELL:  Objection to form,
19          foundation, misstates the record.
20                THE WITNESS:  So I -- first of
21          all, I wouldn't call it destroying
22          evidence.  It was -- these were
23          documents that were being handled
24          pursuant to a document-retention
25          policy.
```



Page 414

```
 1              I -- first of all, I don't know
 2         what that timeframe -- I don't know
 3         what the timeframe in 1984 was, if
 4         there was a gap.  I don't know if it
 5         was from June to September or June to
 6         December.  I have no idea.  I'm not
 7         sure that we have that information or
 8         that it exists.
 9    BY MR. PLACITELLA:
10         Q.   So --
11         A.   So I can't say that documents
12    were discarded per the policy in that time
13    period; no, I can't.
14         Q.   Well, the final
15    document-retention policy's from late
16    August 1984; is that correct?
17         A.   Yes.
18         Q.   Okay.  So are you saying that
19    they used that document-retention policy
20    between late August 1984 and when
21    Mr. Dornbusch was -- had notice of the Bondo
22    talc litigation?  That's when the documents
23    were destroyed?
24              MR. FARRELL:  Objection to form,
25         foundation, calls for speculation,
```



Page 415

```
 1              misstates the witness' testimony.
 2                   THE WITNESS:  No, I'm not saying
 3              that.
 4    BY MR. PLACITELLA:
 5         Q.   Was it done before the final
 6    document-retention policy was arrived at?
 7                   MR. FARRELL:  Same objections.
 8                   THE WITNESS:  What I can say is
 9              my recollection of Dornbusch's
10              testimony was that he recalled it
11              being that -- the information being
12              discarded pursuant to that policy
13              and -- whenever that policy was.  But
14              I'm not saying that it was necessarily
15              in 1984 that it happened.
16    BY MR. PLACITELLA:
17         Q.   Sometime after that?
18                   MR. FARRELL:  Objection to form,
19              foundation.
20                   THE WITNESS:  It could have been.
21              There was a period in 1986 when there
22              was no litigation.  There was a
23              significant gap in the last half of
24              1986, for example.
25    BY MR. PLACITELLA:
```



Page 416

```
 1        Q.   Oh, so you think he waited until

 2   1986 when there were no cases; then he got

 3   rid of it all?

 4             MR. FARRELL:  Objection to form,

 5        foundation, argumentative.

 6             THE WITNESS:  I don't know.  But

 7        that would be a time period when you

 8        would -- if you were trying to follow

 9        your policy, it would be a time when

10        that could happen; yes.

11        Q.   Because you couldn't do it before

12   then, right --

13             MR. FARRELL:  Objection --

14   BY MR. PLACITELLA:

15        Q.   -- because there were cases

16   pending?

17             MR. FARRELL:  Objection to form,

18        foundation, misstates the record.

19             THE WITNESS:  I'm sorry.  Could

20        you repeat.

21   BY MR. PLACITELLA:

22        Q.   Couldn't destroy it before then

23   according to the policy because there were

24   cases pending; right?

25             MR. FARRELL:  Objection to form,
```



```
 1          foundation, misstates the record.
 2               THE WITNESS:  Again, it could
 3          have happened in 1984 at some period,
 4          at the end of 1984.  Again, we don't
 5          know when Engelhard knew it was going
 6          to be a party to litigation.
 7               I, I -- again, going back to that
 8          letter in the privilege log, I haven't
 9          seen what's in it.  And I don't know
10          that that letter said we're going to
11          be part of litigation.  I have no idea
12          what it says.
13     BY MR. PLACITELLA:
14          Q.   Do you believe that a review of
15     the actual files might be able to fill in
16     some of the gaps?
17               MR. FARRELL:  Objection to form,
18          foundation, calls for speculation.
19               THE WITNESS:  I'm sorry.  Which
20          files and which gaps?
21     BY MR. PLACITELLA:
22          Q.   The files of Mr. Salling,
23     Mr. Smith, the Dynatron/Bondo files.  Do you
24     think a review of those files might fill in
25     some of the gaps, in terms of when
```



Page 418

1    Engelhard first had notice of those files --

2    claims and what their involvement was?

3           MR. FARRELL:  Objection to form,

4           foundation, asked and answered.

5           THE WITNESS:  Regarding the files

6           at the end of that case, a review

7           clearly would show when the case ended

8           or when Engelhard's involvement in the

9           case ended.  But those are privileged.

10          I haven't seen them, but counsel has

11          told me that they clearly show that.

12                Regarding the beginning of the

13          Bondo case, my understanding is that

14          counsel had looked at all the files --

15          they're still looking -- but they

16          haven't been able to pin down exactly

17          when Engelhard knew that it was going

18          to be involved.

19                And that's one of the difficult

20          things, is that in reconstructing

21          these decades later, you're trying to

22          figure out when somebody knew

23          something; not necessarily -- there's

24          not necessarily always a letter that

25          says "this is the date when we knew we



Page 419

```
 1          were going to be in, in litigation";
 2          so it's hard to reconstruct some of
 3          this, is my understanding.
 4  BY MR. PLACITELLA:
 5          Q.   Well, my only question was:
 6  Would it -- don't you think it would be
 7  helpful to actually go into the database,
 8  pull the documents, and see what's in there
 9  in terms of when Engelhard had first notice
10  of the cases?
11              Don't you think that would be
12  helpful?
13          MR. FARRELL:  Objection to form,
14          foundation, asked and answered, calls
15          for speculation.
16          THE WITNESS:  My understanding is
17          that that's what counsel has done.
18          And those aren't -- documents that
19          clearly state when everything started
20          haven't been --
21  BY MR. PLACITELLA:
22          Q.   So your understanding is that the
23  counsel already went into the database and
24  searched for these case and pulled the
25  documents related to these cases?
```



1              MR. FARRELL:  Objection --

2    BY MR. PLACITELLA:

3         Q.    That's your understanding?

4              MR. FARRELL:  Objection to form,

5         foundation, misstates the witness'

6         testimony.

7              THE WITNESS:  My understanding is

8         that they've looked.  I don't know

9         whether they've pulled documents or

10        what they've done.

11             My preparation in this case was

12        talking to them about this case and

13        them informing me what they know and

14        what we know as a company.

15   BY MR. PLACITELLA:

16        Q.    So you didn't do an independent

17   analysis?  You depended on what your lawyers

18   told you?

19             MR. FARRELL:  Objection to form,

20        foundation, misstates his testimony,

21        asked and answered.

22             THE WITNESS:  I don't have access

23        to the database myself, so I couldn't

24        do that.  But I do feel I had a good

25        conversation with them, and I'm



Page 421

1          comfortable that I got the information

2          that's available.

3     BY MR. PLACITELLA:

4          Q.   And that's in your -- well, some

5     of that's in your hotel room that you didn't

6     bring with you?

7               MR. FARRELL:  Objection to form.

8               THE WITNESS:  Regarding

9          Dynatron/Bondo, as I mentioned, I

10         don't have information on that --

11    BY MR. PLACITELLA:

12         Q.   Okay.

13         A.   -- in writing.

14              MR. PLACITELLA:  Okay.  Why don't

15         we take five, and I'll try to move

16         things -- how much time do I have left

17         on the record?

18              THE VIDEOGRAPHER:  An hour and 11

19         minutes.

20              The time is now 5:51 p.m.  We're

21         going off the record.

22              (Recess.)

23              THE VIDEOGRAPHER:  The time is

24         now 6:05 p.m.  We are back on the

25         record.



Page 422

1    BY MR. PLACITELLA:

2         Q.   Okay.  In a document request,

3    number 9, it asks for [reading]:  All

4    documents pertaining to Englehard's x-ray

5    screening program of its Johnson mine

6    employees, including but not limited to any

7    document superseding or changing the program

8    in or around 1979 and thereafter.

9              Do you see that?  Let me know

10   when you've caught up.

11        A.   I do see that, yes.

12        Q.   All right.  Did you bring those

13   documents with you today?

14             MR. FARRELL:  Objection to form,

15        foundation.

16             I would further note again that

17        BASF has objected to the document

18        request as being untimely served after

19        the fact discovery cutoff in this case

20        and only a week before the deposition.

21        And we've objected to producing the

22        documents.

23   BY MR. PLACITELLA:

24        Q.   Okay.  Did you bring the

25   documents with you today?



Page 423

```
 1        A.   No.

 2        Q.   Did you make a search for the

 3   documents?

 4             MR. FARRELL:  Objection to form,

 5        foundation, and the same objections I

 6        noted earlier.

 7             THE WITNESS:  No.

 8   BY MR. PLACITELLA:

 9        Q.   Okay.  Do you know how burdensome

10   it would be for you to look for the

11   document?

12             MR. FARRELL:  Same objections.

13             THE WITNESS:  No, I wouldn't do

14        it.  Counsel would, but I don't know.

15   BY MR. PLACITELLA:

16        Q.   You could just search the

17   database, couldn't you, and see if it's in

18   there?

19             MR. FARRELL:  Objection to form,

20        foundation, assumes facts, misstates

21        the record.

22             THE WITNESS:  I don't know.  I

23        don't even know if they exist, so I

24        don't know what would be involved.

25   BY MR. PLACITELLA:
```



Page 424

```
 1          Q.   Well, what would you do if you
 2     wanted to actually see if it was there?
 3               MR. FARRELL:  Same objections.
 4               THE WITNESS:  I would depend on
 5          counsel to do it.  I don't know where
 6          it would be.
 7     BY MR. PLACITELLA:
 8          Q.   Okay.  Do you know -- do you have
 9     any information about the screening program
10     for Johnson mine employees being suspended
11     in 1979?
12               MR. FARRELL:  Objection to form,
13          foundation, beyond the scope of the
14          notice.
15               THE WITNESS:  I don't know.  I
16          did nothing to prepare for that today.
17     BY MR. PLACITELLA:
18          Q.   Topic number 5 asks for
19     [reading]:  Information provided to BASF AG
20     or its investment bankers regarding Emtal
21     claims in relation to BASF AG's takeover of
22     Engelhard.
23               Do you see that?
24          A.   I do see it, yes.
25          Q.   What do you know about that?
```



Page 425

1           MR. FARRELL:  Objection to form,

2      foundation.

3           I would note further our

4      objections stated in the response to

5      the notice based on the

6      attorney/client privilege, the

7      work-product doctrine, and similar

8      privileges.

9           THE WITNESS:  Again, my -- in

10     preparing for this, I was informed

11     that there would be a great deal of

12     privileged information in here.  I

13     don't have anything much to add to

14     this after discussions with the

15     counsel.

16   BY MR. PLACITELLA:

17     Q.   Well, what did you do to prepare

18   yourself to answer this line of questions?

19          MR. FARRELL:  Same objections.

20          THE WITNESS:  Again, I, I talked

21     to counsel.  My impression is that the

22     discussion of those claims would have

23     been between attorneys within

24     Engelhard and BASF and that they would

25     be privileged.  There's nothing that I



Page 426

```
 1          would be able to see.
 2    BY MR. PLACITELLA:
 3          Q.   How do you know that?
 4               MR. FARRELL:  Objection to form,
 5          foundation.
 6    BY MR. PLACITELLA:
 7          Q.   How do you know it was just
 8    between lawyers?
 9               MR. FARRELL:  Objection to form,
10          foundation.
11               THE WITNESS:  That's what -- I --
12          this is what I learned from
13          discussions with counsel.
14    BY MR. PLACITELLA:
15          Q.   So you didn't do anything to
16    prepare yourself to answer this topic; fair?
17               MR. FARRELL:  Objection to form,
18          foundation, misstates Mr. Steinmetz's
19          testimony.
20               THE WITNESS:  I, I spoke with
21          counsel about it.
22    BY MR. PLACITELLA:
23          Q.   Okay.  Well, it says you were
24    going to testify regarding this topic.  What
25    are you going to testify about?  What do you
```



Page 427

1    know?

2            MR. FARRELL:  Objection to form,

3        foundation, misstates the response to

4        plaintiff's notice.

5    BY MR. PLACITELLA:

6        Q.   Says [reading]:  BASF will

7    produce a representative to testify

8    regarding this topic to the extent that the

9    information is not privileged.

10           Do you see that?

11       A.   I see it, yes.

12       Q.   So what did you do to prepare

13   yourself to respond to this topics?

14           MR. FARRELL:  Objection to form,

15       foundation, asked and answered.

16           THE WITNESS:  I spoke with

17       counsel.

18   BY MR. PLACITELLA:

19       Q.   Did you ask to look at any

20   documents that might be relevant?

21           MR. FARRELL:  Objection to form,

22       foundation.  It's also subject to

23       privilege objection.

24           THE WITNESS:  No.  I spoke with

25       counsel.  My understanding is that the



Page 428

1            documents are privileged and I

2            wouldn't be able to see them anyway.

3       BY MR. PLACITELLA:

4            Q.   Well, it says you're ready to

5       testify about the subject.  Do you see that?

6            A.   Yes.

7            Q.   Subject to -- so what

8       nonprivileged information did you

9       investigate in order to testify about the

10      subject?

11               MR. FARRELL:  Objection to form,

12           foundation, asked and answered,

13           argumentative.

14               THE WITNESS:  I don't have

15           anything nonprivileged to discuss.

16      BY MR. PLACITELLA:

17           Q.   Did you speak to any witnesses to

18      see if there was information in possession

19      of BASF that was not privileged?

20               MR. FARRELL:  Objection to form,

21           foundation, asked and answered.

22               THE WITNESS:  No.

23      BY MR. PLACITELLA:

24           Q.   So just so we're clear, other

25      than talking to your lawyer, even though the



Page 429

```
 1    response is that you'll be here to talk
 2    about the topic, you know nothing and you
 3    did nothing to prepare; correct?
 4              MR. FARRELL:  Objection to form,
 5         foundation, misstates Mr. Steinmetz's
 6         testimony, argumentative, harassing
 7         the witness, asked and answered.
 8              THE WITNESS:  What I did to
 9         prepare was I spoke with counsel about
10         that topic and determined that there's
11         nothing that I can add to this.
12    BY MR. PLACITELLA:
13         Q.   Can you take out Exhibit 221,
14    please.
15         A.   Yes.
16         Q.   Okay.  And --
17              MR. FARRELL:  One moment, please.
18         What is that?
19              MR. PLACITELLA:  221 is the
20         interrogatory answers he certified.
21              THE WITNESS:  This.
22    BY MR. PLACITELLA:
23         Q.   Okay.  In, in 221, just for a
24    frame of reference, interrogatory
25    number 1 -- which we talked about a little
```



Page 430

1   bit before -- is about settlements with

2   Emtal claimants; correct?

3            MR. FARRELL:  Objection to form.

4            THE WITNESS:  It is asking to

5       identify settlements, yes.

6   BY MR. PLACITELLA:

7       Q.   Okay.  And in -- on page 3 you

8   state [reading]:  The prevalence of alleged

9   injuries varied by jurisdiction, by lawyer,

10  by time, and based on other factors.  A

11  portion of the plaintiffs alleged they

12  developed lung cancer or mesothelioma due to

13  asbestos or asbestos-containing products

14  distributed or used by dozens of different

15  entities.

16           Do you see that?

17      A.   I'm sorry.  I'm not sure where

18  you are.

19      Q.   Page 3.

20      A.   Yes.

21      Q.   Where it says -- you see the

22  paragraph says "further responding"?

23      A.   Oh, okay.  Yes, I see that.

24      Q.   You see the highlighted section?

25      A.   Okay.  And you began a little bit



Page 431

1    above that.  Yes, okay.

2         Q.   What's the factual basis for that

3    information --

4              MR. FARRELL:  Objection --

5    BY MR. PLACITELLA:

6         Q.   -- that you -- where did you get

7    those facts?

8              MR. FARRELL:  Objection to form,

9         foundation, beyond the scope of the

10        notice.

11             THE WITNESS:  As I mentioned,

12        I've looked at not the case files but

13        dozens of instances of litigation over

14        the course of the past two weeks in

15        preparing for this.  And, you know

16        we've looked at specific cases

17        involved in this litigation, the six

18        plaintiffs that were named in this

19        litigation; looking at the Bevan 30,

20        that, that printout, that database

21        summary or, or condensation or the

22        random selection of databases pulled

23        out of the Bevan database.

24             I've looked at other information

25        regarding the National Tire Workers



```
1          Litigation Project.  So I've looked at
2          a lot of different cases over the
3          course of the last two weeks.
4    BY MR. PLACITELLA:
5          Q.   But when you answered the
6    interrogatories, what was the factual basis
7    for providing that information?  Where did
8    you get that?
9               MR. FARRELL:  Objection to form,
10         foundation, beyond the scope of the
11         notice, asked and answered.
12              THE WITNESS:  Oh, well, in
13         addition to that, of course, over the
14         course of the last two or three years,
15         we've talked about a lot of cases.
16         And my understanding from those is
17         that each case is different and
18         there's always a different set of
19         claims and defenses and ways of
20         settling cases.
21    BY MR. PLACITELLA:
22         Q.   Well, you say the prevalence
23    alleged -- of alleged injuries varied by
24    jurisdiction and by lawyer and by time,
25    where did you get that?
```



```
1            MR. FARRELL:  Objection to form,
2        foundation, beyond the scope, asked
3        and answered.
4            THE WITNESS:  As I mentioned,
5        it's obviously something I've learned
6        over the last couple of weeks.  And I
7        can't name them case-for-case; but
8        over the last couple of years, just
9        the Fields case and the Sampson case
10       are a good example of how they're very
11       different from each other in these
12       aspects.
13   BY MR. PLACITELLA:
14       Q.   On page 5 you indicate that
15   information about the amounts paid in
16   settlement is available in the database
17   produced -- and you give me the number.
18            Do you see that?
19       A.   Yes.
20       Q.   So is it your testimony today
21   that I should be able to go into that
22   database and it will tell me how much each
23   client settled for if they settled?
24            MR. FARRELL:  Objection to form,
25        foundation, misstates the
```



Page 434

```
 1          interrogatory response.  You only read

 2          part of a sentence in an interrogatory

 3          response and misstated it.  It's also

 4          beyond the scope of the notice.

 5               MR. PLACITELLA:  It's not.

 6   BY MR. PLACITELLA:

 7          Q.   Go ahead.

 8          A.   So as I've testified a couple of

 9   times today, some of that information is in

10   the database.  As I've mentioned earlier,

11   the database isn't complete.  That kind of

12   information does not exist for every case.

13               So in order to get that

14   information for every case, you'd have to go

15   to the files, to records, to any number of

16   places to try to pull that information out.

17   I'm not sure where it would all exist.  It

18   would take work to find it all.

19          Q.   You say in the last sentence

20   [reading]:  Overall, Engelhard and BASF paid

21   more than 1.5 million in settlements to past

22   plaintiffs.  Most settlements were paid or

23   reimbursed by Engelhard's insurers.

24               Do you see that?

25          A.   I do.
```



Page 435

```
 1        Q.   Where did that come from?

 2             MR. FARRELL:  Objection to form,

 3        foundation, beyond the scope of the

 4        notice.

 5             THE WITNESS:  That was prepared

 6        by counsel.  And I'm sure that they

 7        did research into their records to

 8        find what they could on that.  I don't

 9        know the source of that.

10   BY MR. PLACITELLA:

11        Q.   So you didn't do anything to

12   independently verify the accuracy of that

13   statement?

14             MR. FARRELL:  Objection to form,

15        foundation, misstates Mr. Steinmetz's

16        testimony, argumentative, beyond the

17        scope of the notice.

18             THE WITNESS:  No.  I was

19        comfortable that counsel was accurate

20        in what they wrote.

21   BY MR. PLACITELLA:

22        Q.   Do you know where they got it

23   from?

24             MR. FARRELL:  Same objections.

25             THE WITNESS:  No.
```



Page 436

```
 1    BY MR. PLACITELLA:

 2          Q.   Did you ask?

 3                MR. FARRELL:  Same objections,

 4          beyond the scope of the notice.

 5                THE WITNESS:  No.

 6    BY MR. PLACITELLA:

 7          Q.   So you certified answers to

 8    interrogatories in this case, you provided

 9    information that you got only from your

10    lawyers, and you never asked where it came

11    from?

12                MR. FARRELL:  Objection to form,

13          foundation, beyond the scope of the

14          notice, argumentative, asked and

15          answered, misstates Mr. Steinmetz's

16          testimony.

17                THE WITNESS:  I didn't ask them.

18          I'm comfortable with the responses

19          that they gave me.  If I had had

20          concerns about it or had questions

21          about it, I would have asked them.

22    BY MR. PLACITELLA:

23          Q.   Well, how do you know if it's

24    true if you don't check yourself?

25                MR. FARRELL:  Objection to form,
```



1          foundation, asked and answered,

2          argumentative, beyond the scope of the

3          notice.

4               THE WITNESS:  Because I trust

5          them.

6    BY MR. PLACITELLA:

7       Q.   Well, weren't you the one to tell

8    me before that lawyers advocate all the time

9    and the stuff in the letters you can't

10   necessarily depend upon?  So why didn't you

11   just look and verify it yourself?

12              MR. FARRELL:  Objection to form,

13         foundation, beyond the scope,

14         argumentative, harassing the witness,

15         asked and answered.

16              MR. PLACITELLA:  Withdraw the

17         last question.

18   BY MR. PLACITELLA:

19      Q.   Top of page 6.  You state with

20   respect to the Ashton affidavit [reading]:

21   Engelhard's counsel sent Ashton's expert

22   affidavit to the plaintiff's counsel in some

23   but not all cases.

24              Do you see that?

25      A.   Yes.



Page 438

```
 1        Q.   What's the basis for that
 2   statement?
 3             MR. FARRELL:  Objection to form.
 4             THE WITNESS:  Talking to counsel
 5        on this -- first of all, there are
 6        thousands of cases.  And my
 7        understanding is we don't have
 8        thousands of letters.  So...
 9             In addition, the only -- with
10        respect to these specifically -- for
11        example, we know that a letter was
12        sent to Mr. Bevan.  We also know that
13        Mr. Bevan continued to initiate
14        litigation.  There were hundreds of
15        cases from him, but we don't have
16        hundreds -- examples of hundreds of
17        letters that were sent to him.
18             So intuitively it makes sense
19        that we didn't send one every single
20        time.  We have -- I have no reason to
21        believe that we did.  I don't --
22        haven't seen any, any proof that we
23        had, did send one in every case.
24   BY MR. PLACITELLA:
25        Q.   So do you believe that you've
```



Page 439

```
 1    reviewed all of the letters that were sent

 2    to all the lawyers asking for dismissal

 3    based upon the Ashton affidavit?

 4              MR. FARRELL:  Objection to form

 5         and foundation.

 6              THE WITNESS:  No, not at all.  In

 7         fact, I don't even know how many there

 8         were like that because there are so

 9         many we have to -- as I mentioned

10         before, we'd have to look at every

11         single one.

12    BY MR. PLACITELLA:

13         Q.   So just so we're clear, as you

14    sit here today, you've not seen all the

15    letters referencing the Ashton affidavit nor

16    did you request them; fair?

17              MR. FARRELL:  Objection to form,

18         foundation, misstates Mr. Steinmetz's

19         testimony.

20              THE WITNESS:  I haven't seen all

21         the letters.  I don't know how many

22         were written.  I don't know that

23         anybody knows how many were written

24         for sure, but I haven't seen them all.

25    BY MR. PLACITELLA:
```



Page 440

```
 1          Q.   Did you ask to see them all?

 2               MR. FARRELL:  Same objections.

 3               THE WITNESS:  No.

 4    BY MR. PLACITELLA:

 5          Q.   In interrogatory number 3 it asks

 6    that you [reading]:  Identify all cases

 7    against Engelhard or BASF where the

 8    plaintiff or claimant or her/his

 9    representative alleged exposure to Emtal

10    talc prior to 2010 that were dismissed

11    without payment.

12               Do you see that?

13          A.   Yes.

14          Q.   And in your response to that, you

15    refer the plaintiffs to the database;

16    correct?

17               MR. FARRELL:  Objection to form,

18          foundation, misstates the response.

19               THE WITNESS:  That's one of the

20          things that we refer to; yes.

21    BY MR. PLACITELLA:

22          Q.   And did you actually look at the

23    database and see a listing of all the

24    plaintiffs that were, that were -- brought

25    cases that were dismissed without payment?
```



Page 441

1                MR. FARRELL:  Objection to form,

2          foundation, asked and answered.

3                THE WITNESS:  I didn't do that.

4          And I was under the understanding, of

5          course, that you have the database and

6          could have generated that as well.

7   BY MR. PLACITELLA:

8          Q.   Well, ours doesn't work.  That's

9   why I'm asking the question.

10               MR. FARRELL:  Objection to form,

11         foundation.  Misstates the record,

12         argumentative.

13  BY MR. PLACITELLA:

14         Q.   Okay.  So do you know that this

15  database actually works to do that?  Have

16  you seen it done?

17               MR. FARRELL:  Same objections.

18               THE WITNESS:  I, I saw in the, in

19         the demonstration I saw the generation

20         of a list of plaintiffs and using

21         different records and putting

22         different things together; yes.

23  BY MR. PLACITELLA:

24         Q.   Oh, so you've actually seen a

25  list of plaintiffs and whether they were



Page 442

1   paid or not?

2           MR. FARRELL:  Objection to form,

3       foundation.

4           THE WITNESS:  No.  I said I've

5       looked at, at a report where we listed

6       a group of, of plaintiffs and then

7       looked at other information related to

8       that.  I don't know specifically that

9       we looked for this one thing.

10  BY MR. PLACITELLA:

11      Q.   Well, does -- can you look at the

12  database -- because that's what you're

13  saying here.  Can you look at the database

14  and get the plaintiffs, a list of plaintiffs

15  and whether they were paid or not?

16          MR. FARRELL:  Objection to form,

17      foundation, asked and answered.

18          THE WITNESS:  I think I've talked

19      about this a couple of times earlier.

20      But that kind of information is in

21      there in some of the tables.  Again, I

22      don't know it by heart and I don't

23      know everything.

24          But to the extent that that kind

25      of information is in the database, it



Page 443

1          could be done.

2     BY MR. PLACITELLA:

3          Q.    Okay.

4          A.    As I mentioned before, much of

5     the database isn't completed because it

6     depended -- its completion depended on who

7     was working on the case.

8          Q.    I'm not trying to harass you on

9     this.  I'm just trying to understand what's

10    there, okay --

11         A.    I understand.

12         Q.    -- because we're having a hard

13    time; okay?

14         A.    I understand.

15         Q.    Okay.  Can you look at

16    Exhibit 63?  Did I give you that?  I think I

17    did.  Yes, I did.

18         A.    Yes, I have it.

19         Q.    Okay.

20              MR. FARRELL:  Which one is that?

21              THE WITNESS:  The, the

22         interrogatory answers.

23              MR. FARRELL:  Is that the one we

24         were just looking at or...?

25              MR. PLACITELLA:  No, it's a



Page 444

```
 1            different one, Exhibit 63.
 2                 THE WITNESS:  I believe the first
 3            one.
 4     BY MR. PLACITELLA:
 5            Q.   Do you have that in front of you?
 6            A.   I do.
 7            Q.   So interrogatory number 1 asks
 8     that you [reading]:  Identify all the
 9     documents in your possession, custody, or
10     control that identify or can be used to
11     identify members of or potential members of
12     the proposed classes.
13                 Do you see that?
14            A.   Yes, I do.
15            Q.   And one of the references that
16     you supply is the Cahill -- the databases
17     that Cahill Gordon prepared in connection
18     with prior litigation.  Do you see that?
19                 Right down below.
20            A.   Yes, I see that.
21            Q.   Is that the same database that
22     we've been just talking about, the one that
23     start FR and has a bunch of zeros and ends
24     with three?
25                 MR. FARRELL:  Objection to form.
```



Page 445

1              THE WITNESS:  I'm not sure of

2         that.  My understanding is that

3         it's -- the databases that we

4         supplied, the EC database, which was a

5         database of Cahill litigation related

6         to Engelhard Corporation and then

7         a second smaller database related to

8         the Bevan litigation.

9    BY MR. PLACITELLA:

10        Q.   Okay.  But I'm not asking about

11   the Bevan litigation.  This database, is it

12   the same that you're referring here?  Is it

13   the same database we've been talking

14   about --

15        A.   Yes.

16        Q.   -- all day?

17             MR. FARRELL:  Objection to form.

18             THE WITNESS:  Yes.  It says

19        "databases" so --

20   BY MR. PLACITELLA:

21        Q.   Okay.

22        A.   -- I imagine we're referring to

23   both when we prepared this.

24        Q.   Okay.  And it's your

25   understanding that you can actually run a



Page 446

1    query in that database and get a list of all

2    the potential class members in this case?

3                MR. FARRELL:  Objection to form,

4        foundation, misstates the database and

5        the record and Mr. Steinmetz's

6        testimony.

7    BY MR. PLACITELLA:

8        Q.   I'm just looking at your answer.

9        A.   Yeah, I think the problem with

10   your question is that all the members of the

11   class, we don't know who they are.  There

12   could be thousands.  There could be ten.  We

13   don't know.  All the, all that information

14   isn't in the database.  It's not in any one

15   database.

16              And that's why it's so hard to

17   provide all this information because you

18   have to go to each file to see what the,

19   what that facts were in each case.

20       Q.   All right.  You've made that

21   clear.  What I'm trying to find out is:  Of

22   the information that's in that database, you

23   should be able to run a query and you should

24   get a list of all the plaintiffs, whoever

25   sued Engelhard in a talc case.  That's in



Page 447

1    the database --

2            MR. FARRELL:  Objection --

3    BY MR. PLACITELLA:

4        Q.    -- correct?

5            MR. FARRELL:  Objection to form,

6        foundation, misstates the record and

7        the database.

8            THE WITNESS:  Whatever's in the

9        database, if you know how to use

10        Access and use the reporting function,

11        you can pull out the records that are

12        in the database, yes --

13    BY MR. PLACITELLA:

14        Q.    Okay.

15        A.    -- whatever they may be, whatever

16    records they may be associated with.

17            My point is that it won't tell

18    you what the class is because the database

19    is incomplete --

20        Q.    Fair enough.

21        A.    -- and the information in the

22    database wouldn't tell you whether or not

23    something belonged in any kind of a class.

24        Q.    Is it your understanding that all

25    of the data in the database concerning the



1    plaintiffs are linked?  So in other words,

2    if you go to Mr. Jones' file, you should be

3    able to see everything in the database on

4    Mr. Jones' file?

5            MR. FARRELL:  Objection to form,

6        foundation.

7            THE WITNESS:  My understanding is

8        that's how Access works.  I don't know

9        whether what you said is absolutely

10       correct.  I would have to defer to

11       somebody who's familiar with Access

12       and the database to answer that.

13   BY MR. PLACITELLA:

14       Q.   But your understanding is I could

15   figure -- I could -- if I wanted to see

16   everything in the database on Daniel

17   Steinmetz, assuming you were a claimant, I

18   should be able to search "Daniel Steinmetz"

19   and get all the information that's in the

20   database related to Daniel Steinmetz;

21   correct?

22           MR. FARRELL:  Objection to form

23       and foundation.

24           THE WITNESS:  I believe that's

25       how I understand Access, but I'm not



Page 449

```
 1          an expert in Access.  That's...
 2   BY MR. PLACITELLA:
 3          Q.   Okay.  Now, in interrogatory
 4   number 4...
 5               MR. FARRELL:  Which -- I'm sorry.
 6          I think there were two sets we were
 7          talking about.  Which --
 8               MR. PLACITELLA:  Same one,
 9          Exhibit 63.  That's what I'm on now.
10   BY MR. PLACITELLA:
11          Q.   You list various people and
12   whether they were aware of the evidence in
13   the Westfall case.  Do you see that?
14          A.   Yes.
15          Q.   Okay.  What's the factual basis
16   for that?
17               MR. FARRELL:  Objection to form,
18          foundation, beyond the scope of the
19          notice.
20               THE WITNESS:  The factual basis
21          that these were internal lawyers for
22          Engelhard or BASF whose work during
23          certain periods of time related to
24          personal-injury litigation based on
25          alleged exposure to talc.
```



Page 450

```
 1    BY MR. PLACITELLA:

 2         Q.   Right.  But you said, for

 3    example, Dornbusch knew, Halket knew,

 4    Hemstock knew, Triglia knew -- or, I'm

 5    sorry, Halket and Dornbusch knew; but you

 6    say that Hassett, Fliegel, and Greenberg and

 7    Peters didn't know.  Where -- what's the

 8    basis for that?

 9              MR. FARRELL:  Objection to form,

10         foundation, beyond the scope of the

11         notice.

12              THE WITNESS:  I'm sorry.  Aware

13         of what?  I'm sorry, what your

14         question -- I'm not even sure what

15         your question is.

16    BY MR. PLACITELLA:

17         Q.   Okay.  So the interrogatory asks

18    what BASF personnel was aware of the

19    testimony from the Westfall case and the

20    documents produced in the Westfall case.  Do

21    you see that, right before it on number

22    four?

23         A.   Yes.

24         Q.   Okay.  And your response --

25         A.   Okay.
```



```
 1        Q.   -- on the next page is some
 2   people were and some people weren't?
 3        A.   Oh, I understand.  Yes, that's
 4   correct.
 5        Q.   My question is:  What is the
 6   factual basis for that?
 7             MR. FARRELL:  Objection to form,
 8        foundation, beyond the scope of the
 9        notice.
10             THE WITNESS:  The factual basis
11        would come from a -- again, I didn't
12        write this myself.  It came from an
13        overall review of all of the
14        information available and a knowledge
15        of all the information available as
16        well as from testimony and
17        depositions.
18             Dornbusch knew, obviously,
19        because he was present in the
20        depositions.  Halket would have known
21        because he was also present at some of
22        the depositions, as I understand it.
23             With respect to Hassett, he
24        testified that he didn't know anything
25        about it, had never seen it.
```



Page 452

```
1              Fliegel, I have -- we have no
2         reason to believe that he had ever
3         seen it.
4              Jonathan Greenberg and John
5         Peters, these were people who came
6         after the information was allegedly or
7         was presumably discarded pursuant to
8         the document-control policy.
9    BY MR. PLACITELLA:
10        Q.   Well, you remember Mr. Hassett
11   testifying that he, in fact, did see the
12   Westfall transcripts, that they dug them up
13   in 2004?
14             MR. FARRELL:  Objection to form,
15        foundation, misstates Mr. Hassett's
16        testimony.
17             THE WITNESS:  I believe
18        Mr. Hassett's testimony was that he
19        had not seen them until the recent
20        Third Circuit Court opinion.
21             My, my recollection is that
22        Sullivan, when he recovered that
23        information, said -- in his deposition
24        said that when he recovered that
25        information, he sent it to directly to
```



Page 453

```
 1        Mr. Dembrow.
 2   BY MR. PLACITELLA:
 3        Q.   So you -- as you sit here today,
 4   your testimony is that Mr. Hassett was never
 5   aware of the Westfall depositions until he
 6   read the Third Circuit decision?  That's
 7   your testimony?
 8             MR. FARRELL:  Objection to form,
 9        foundation, asked and answered, beyond
10        the scope.
11             THE WITNESS:  That's my
12        understanding -- that's my
13        recollection of his testimony.  I
14        don't know if it was the Third Circuit
15        or at some other point that he learned
16        of it.  But my understanding is that
17        he didn't know about it until after
18        2009.
19   BY MR. PLACITELLA:
20        Q.   Okay.  So when you say that
21   Fliegel/Greenberg/Peters didn't know about
22   it, that's based on an assumption or based
23   on an actual investigation?
24             MR. FARRELL:  Objection to form,
25        foundation, argumentative, asked and
```



Page 454

1              answered, beyond the scope of the

2              notice.

3                      THE WITNESS:  Well, this is based

4              on Dornbusch's testimony as well as

5              Hassett's testimony; Dornbusch saying

6              that the information was discarded per

7              the policy; the fact that these people

8              were involved after that time period;

9              and as well as Michael Hassett's

10             testimony that people at Engelhard

11             other than Dornbusch just didn't know

12             about the information.

13      BY MR. PLACITELLA:

14             Q.   Okay.  Go to 13.  Number 13 asks

15      for who at BASF was aware of the Martin

16      case.  And you indicate that Arthur

17      Dornbusch and Michael Hassett were aware;

18      correct?

19                      MR. FARRELL:  Objection to form.

20                      THE WITNESS:  Yes, we state that.

21      BY MR. PLACITELLA:

22             Q.   Okay.  And what's, what's the

23      basis for that?

24                      MR. FARRELL:  Objection to form,

25              foundation, beyond the scope of the



Page 455

1          notice.

2                  THE WITNESS:  Again, I didn't

3          necessarily prepare to answer all

4          these questions regarding this.  I

5          don't remember everything that I've

6          seen over the last two weeks.

7                  My recollection is that both

8          Dornbusch and Hassett testified that

9          they were aware of the Martin case.

10   BY MR. PLACITELLA:

11          Q.   But you answered these before

12   they testified.  When you answered these,

13   what was the basis for that statement?

14                 MR. FARRELL:  Same objections,

15          beyond the scope of the notice.

16                 THE WITNESS:  As I mentioned,

17          this was prepared -- I -- as I

18          mentioned -- or as I have mentioned,

19          this, this was put together by

20          counsel.

21                 MR. BOYLE:  Chris, could you

22          clarify for me, what's the documents

23          you're showing this witness right now?

24                 MR. PLACITELLA:  Answers to

25          interrogatories sworn to by the



Page 456

1          witness.

2               MR. BOYLE:  In this case?

3               MR. PLACITELLA:  Correct.

4               MR. FARRELL:  Objection;

5          misstates what the interrogatories are

6          and the witness' verification.

7               THE WITNESS:  And, I'm sorry,

8          I've lost my train of thought.  Could

9          you repeat the question because I just

10         kind of lost --

11     BY MR. PLACITELLA:

12         Q.   Where'd you get the information

13     that you verified in response to this

14     interrogatory answer?  Where did you get it?

15              MR. FARRELL:  Objection to form,

16         foundation, beyond the scope of the

17         notice, asked and answered.

18              THE WITNESS:  This information

19         would have come from counsel.  What I

20         was going to say is -- as I was going

21         to say, so much information came in

22         the last couple of weeks, I don't know

23         if I talked specifically with counsel

24         what the basis for this was or where

25         it came from.  So I just don't



Page 457

1           remember that.

2                 I do know that both of them

3           testified, but I don't know where that

4           came from originally.

5    BY MR. PLACITELLA:

6           Q.   Okay.  It didn't come from you?

7                 MR. FARRELL:  Objection to form,

8           argumentative.

9                 THE WITNESS:  That's correct.  I

10          did not write this; yes.

11   BY MR. PLACITELLA:

12          Q.   And you didn't do anything to

13   verify whether it was accurate or not before

14   signing the interrogatories; correct?

15                MR. FARRELL:  Objection to form,

16          foundation, misstates the record, and

17          misstates Mr. Steinmetz's testimony.

18                THE WITNESS:  As I've said, if I

19          had been concerned, I would have

20          contacted counsel.  I have faith that

21          they're preparing these accurately.

22   BY MR. PLACITELLA:

23          Q.   So basically you just signed the

24   verification when you answered these

25   interrogatories and conducted no independent



Page 458

1    investigation yourself to verify what was in

2    there was true; true?

3              MR. FARRELL:  Objection to form,

4         foundation, argumentative, asked and

5         answered, beyond the scope of the

6         notice.

7              THE WITNESS:  In the case of

8         these, I don't think I contacted them

9         to ask any question.

10   BY MR. PLACITELLA:

11        Q.   Well, is there a single

12   interrogatory response that you swore to

13   here that you did your own investigation to

14   verify whether the information was true?

15             MR. FARRELL:  Same objections.

16             THE WITNESS:  You mean both of

17        the interrogatories involved in

18        this --

19   BY MR. PLACITELLA:

20        Q.   Yeah.

21        A.   No, I did not.

22        Q.   So when you state that the facts

23   set forth in said responses are true and

24   correct to the best of my knowledge,

25   information, and belief, that's not based



Page 459

1  upon anything other than what the lawyers

2  put in the interrogatory answers; correct?

3              MR. FARRELL:  Objection to form,

4         foundation, asked and answered, beyond

5         the scope of the notice, harassing the

6         witness.

7              THE WITNESS:  I'm, I'm completely

8         comfortable with this verification.

9         Yes, that was my belief, that it was

10        accurate and truthful, I have no

11        problem with that.

12  BY MR. PLACITELLA:

13        Q.   But you didn't know -- just so

14  we're clear, and then I'll stop.

15             The sole basis for your providing

16  these answers was based on what the lawyers

17  told you and put in the responses; correct?

18             MR. FARRELL:  Objection to form,

19        foundation, beyond the scope of the

20        notice.  You're harassing the witness.

21        The question has been asked and

22        answered approximately a half dozen

23        times, if not more.

24             THE WITNESS:  So I've worked with

25        this group for a long time.  I have



Page 460

```
 1          complete confidence in what they
 2          write.  In, in this case I was
 3          completely comfortable.
 4   BY MR. PLACITELLA:
 5          Q.   So the answer is what?
 6          A.   I'm completely comfortable with
 7   what they wrote, and I signed it comfortably
 8   and, and believing that it was all true and
 9   accurate.
10          Q.   Okay.  Now, have you testified
11   before under oath that you don't know what
12   happened to the R&D documents after
13   Dr. Hemstock sent out his March 7th, 1984
14   memo?
15          MR. FARRELL:  Objection to form,
16          foundation, misstates' Mr. Steinmetz's
17          prior testimony, beyond the scope of
18          the notice.
19          THE WITNESS:  I, I don't remember
20          all my prior testimony.  I'm sure
21          you've got some example of it.
22          I've evolved -- you know, this is all
23          evolving.  I learn things from each
24          new case.  I don't know what you're
25          referring to, but I'll be happy to
```



Page 461

1        address it.

2             MR. PLACITELLA:  Transcript from

3        the Fields case.

4             MR. FARRELL:  Do you have a copy

5        for me?

6             MR. PLACITELLA:  I don't; sorry.

7        You can take time.  I'll tell you what

8        page I'm going to ask him about.  It's

9        a lot to carry.

10            MR. FARRELL:  Can I have it,

11       please.

12            THE WITNESS:  Sure.

13            MR. FARRELL:  Thanks.

14            Which pages would you like me to

15       look at?

16            MR. PLACITELLA:  I'll tell you

17       right now, try to shortcut it.

18            Let's see if we can short-circuit

19       it.  I'm going to ask him about 208

20       and 209.

21            MR. BOISE:  Are you going to

22       publish it?

23            MR. PLACITELLA:  I am.  I'm going

24       to give Peter a chance to look at

25       it first.



Page 462

1             MR. BOISE:  You're not going to

2        give me a chance to look at it?

3             MR. PLACITELLA:  I'm sorry.  I

4        just didn't want to put it up until he

5        had a chance to look at it.  But sure.

6             (Discussion held off the

7    stenographic record.)

8             MR. PLACITELLA:  I'll try to blow

9        it up for you, Barry.

10            MR. FARRELL:  Is it just the

11       stuff you highlighted in this?

12            MR. PLACITELLA:  Yeah.  If

13       there's something else.  I'm happy to

14       do it.

15            (Discussion held off the

16   stenographic record.)

17            (Steinmetz Exhibit 3 was marked

18   for identification.)

19   BY MR. PLACITELLA:

20       Q.   I'm going to show you -- because

21   I want to be fair about this -- 208 and 209.

22   If you can just take a look and that and

23   anything you want to look at around it, and

24   I want to check one other thing while you're

25   doing that.



Page 463

```
 1        A.    I've pretty much read it on the
 2   screen.
 3        Q.    Okay.  I want to make sure I'm
 4   right about this.
 5              So, yeah, look at page 181 as
 6   well, and whatever you want to look at
 7   around that.  And I'll put it up for
 8   everybody else.
 9              Did you look at it?
10        A.    Yes.
11        Q.    Okay.  So in the Fields case you
12   were questioned for like a whole day about
13   the various testing documents that were
14   produced; do you recall that?
15              MR. FARRELL:  Objection to form.
16              THE WITNESS:  This was two years
17        ago.  But I generally recall that,
18        yes.
19   BY MR. PLACITELLA:
20        Q.    Okay.  And when -- Mr. Bosl, on
21   page 181, asked you [reading]:  Are you able
22   to testify or do you have any knowledge
23   about whether all the documents collected in
24   March of 1984 are still available today?
25              And your answer is [reading]:
```



Page 464

1    Since I don't know what was collected in

2    1984, I don't know whether they're

3    available.

4            Do you see that?

5            MR. FARRELL:  Objection to form,

6        foundation, beyond the scope of

7        today's notice.  This topic and

8        subject matter had been designated and

9        was withdrawn as a topic by the

10       plaintiffs.

11           MR. PLACITELLA:  Okay.

12           MR. FARRELL:  Beyond the scope.

13           THE WITNESS:  I, I see that.  And

14       this is a -- like you said, this is a

15       three- or four-hour deposition

16       testimony transcript.

17   BY MR. PLACITELLA:

18       Q.   Right.

19       A.   I'd have to read the whole thing

20   to comment.  I mean, you're right; that's

21   what I said there.

22       Q.   Okay.

23       A.   I don't disagree at all.

24       Q.   And then you were asked about it

25   again on page 208; correct?



Page 465

```
 1        A.   Yes.  And I'd even have to look

 2   back and see what they were referring to

 3   when they talked about the document

 4   retrieval in 1984.

 5        Q.   Says:

 6             Am I correct that we looked at

 7             the memorandum earlier regarding the

 8             document retrieval in 1984, you don't

 9             know what happened to the documents

10             that were obtained at that time until

11             the documents have now been produced

12             to the present; correct?

13             Your answer:

14             We don't know where they were

15             ultimately retrieved from, but I don't

16             know the chain of custody of those

17             documents.

18             Question:  You can't say as you

19             sit here today that every single

20             document that was collected in 1984

21             was part of the production in this

22             case, can you?

23             You asked him to repeat it.

24             And he says:

25             Yeah.  Are you able to say that
```



Page 466

1            the documents, that all of the

2            documents collected in 1984 were part

3            of the collection that was produced in

4            this case?

5                    And your answer was:

6                    I can't say what was collected in

7            1984, so I don't know.

8                    Do you recall giving that

9       testimony?

10                   MR. FARRELL:  Objection to form,

11           foundation.  As I noted earlier, this

12           topic was withdrawn by the plaintiffs

13           in this notice.  It is therefore

14           beyond the scope of this notice.  It

15           may well have been beyond the scope of

16           the notice in the Fields case from two

17           years ago.  And I would further note

18           that Mr. Steinmetz has subsequently

19           given testimony --

20                   MR. PLACITELLA:  Please don't do

21           this.

22                   MR. FARRELL:  -- to the

23           plaintiff's counsel in this case over

24           the course of the three days in the

25           Sampson matter on this subject matter



Page 467

```
 1        after his Fields testimony --
 2        testimony in the Fields case.
 3             MR. PLACITELLA:  Okay.  I'm not
 4        acquiescing to any of the things you
 5        state.
 6   BY MR. PLACITELLA:
 7        Q.   Do you recall providing that
 8   testimony?
 9             MR. FARRELL:  Mr. Placitella, are
10        you disputing --
11             MR. PLACITELLA:  I'm not
12        answering your questions.
13             MR. FARRELL:  -- that you and I
14        personally met-and-conferred about the
15        designated issues for this deposition,
16        discussed the documents collected
17        pursuant to the March 7th, 1984 memo?
18             You stated during that
19        meet-and-confer discussion that if
20        Mr. Steinmetz testified about the
21        subject in his Sampson deposition last
22        summer, that you wouldn't ask him
23        about those questions again.
24        Plaintiff subsequently withdrew that
25        topic from their notice.  And now
```



Page 468

```
 1         we're here at the deposition and
 2         you're asking him questions on the
 3         subject matter.
 4   BY MR. PLACITELLA:
 5         Q.   Is that an accurate statement,
 6   sir?
 7              MR. FARRELL:  Same objections as
 8         I've noted.
 9              THE WITNESS:  I'm sorry.  Is what
10         an accurate statement?
11   BY MR. PLACITELLA:
12         Q.   That you don't know what was
13   collected in 1984, so you don't know if it
14   was all produced?
15              MR. FARRELL:  Objection to form,
16         foundation, beyond the scope of the
17         notice.  The witness has previously
18         testified on this subject matter in
19         the Sampson case.
20              THE WITNESS:  So this was --
21         first of all, I don't even recall
22         this.  I don't dispute it because it's
23         in front of me.  This was two years
24         ago.
25              I was prepared differently for
```



```
 1        that case.  As counsel said, I don't
 2        even know if this was in the scope of
 3        the notice at that time.  I don't know
 4        if I was even prepared to answer that.
 5        And it was true that I didn't know at
 6        this time.
 7             Obviously, I've prepared a lot
 8        more for different cases since then
 9        and I know more now.  So I'm not at
10        all surprised that I've evolved and I
11        know things differently than I did
12        then.
13        Q.   So I'm going to make this very
14   short.  Do you still adopt all of the
15   testimony that you provided in the Sampson
16   case while we were here for three days?
17             MR. FARRELL:  Can I have the
18        question again, please.
19             (The court reporter read back the
20   pending question.)
21             MR. FARRELL:  Objection to form,
22        foundation, beyond the scope of
23        today's notice.
24             THE WITNESS:  I, I would have to
25        look at it all.  I know that I've even
```



Page 470

1          learned more in the last year since

2          that Sampson case.  So I'd have to

3          look at it all.

4               MR. PLACITELLA:  Okay.  How much

5          time have I got there?

6               THE VIDEOGRAPHER:  24 minutes.

7               MR. PLACITELLA:  Okay.  I'm going

8          to finish in enough time to give Barry

9          his shot.

10              MR. BOISE:  I cede my time back

11         to you, Chris.

12              MR. PLACITELLA:  Okay.

13    BY MR. PLACITELLA:

14         Q.   Have you examined the issue about

15    what Engelhard and BASF paid to their

16    outside lawyers to defend the talc

17    litigation?

18              MR. FARRELL:  Objection to form,

19         foundation.  I'll further note that

20         BASF has asserted an objection and a

21         response to this subject matter based

22         on an order that has already been

23         issued by the Court on this subject

24         matter.

25              THE WITNESS:  I can't -- I



Page 471

```
 1              realize it was one of the designated
 2              issues.  I can't add anything to what
 3              counsel has said.  That was the
 4              discussion that we had, that there's
 5              currently a court order requiring the
 6              development of an estimate of what it
 7              would take and cost to do that.
 8   BY MR. PLACITELLA:
 9         Q.   All right.  Do you have any
10   information on the -- how burdensome that
11   would be?
12              MR. FARRELL:  Objection to form,
13              foundation, beyond the scope.
14              THE WITNESS:  Right now, I don't.
15              I know -- again, I've talked to
16              counsel about it.  And they're just at
17              the point where they're starting to
18              consider the, you know, the IT costs
19              and the costs of looking into files
20              and pulling information, trying to
21              pull together information.
22              So I have no information to add
23              to that.
24   BY MR. PLACITELLA:
25         Q.   Do you have information that some
```



Page 472

1    of that information would be in electronic

2    form versus going into individual files?

3              MR. FARRELL:  Objection to form,

4         foundation, beyond the scope.

5              THE WITNESS:  I don't know that

6         we know enough about it yet to be able

7         to answer it.  I don't know enough.

8    BY MR. PLACITELLA:

9         Q.   Have you asked?

10        A.   Yes.

11        Q.   Okay.  And you don't know whether

12   it's in a database of some form, or

13   accounting program or anything like that?

14             MR. FARRELL:  Objection to form,

15        foundation, asked and answered.

16             THE WITNESS:  There, there is the

17        Kevin Woods affidavit where he talks

18        about the issues associated with

19        trying to pull that information

20        together.

21             There have been electronic

22        databases in the past.  But I don't

23        know that we know enough yet to know

24        whether the information is even in

25        there, whether it can be accessed.  I


MAGNA
LEGAL SERVICES

1          think there's a lot of unknowns still.

2    BY MR. PLACITELLA:

3          Q.   Okay.  It's good when lawyers are

4    flipping the pages.  That means they're

5    usually pretty close to done.

6               In your interrogatory answers you

7    mention that Johnson and Johnson was

8    involved in constructing the Ashton

9    affidavit.  Do you have any information

10   under the circumstances -- of those

11   circumstances?

12             MR. FARRELL:  Objection to form,

13        foundation, beyond the scope of the

14        notice.

15             THE WITNESS:  I don't personally

16        recall at this point.  I think that

17        would be better directed toward Cahill

18        employees since they were the people

19        involved.  I don't remember any

20        specific information.

21   BY MR. PLACITELLA:

22        Q.   Okay.  I assume you're not the

23   person to ask -- although part of this was

24   about a factual basis -- but assume you're

25   not the person to ask of, about the



Page 474

1   specifics of what was included in the Ashton

2   affidavit and why?

3               MR. FARRELL:  Objection to

4         form --

5   BY MR. PLACITELLA:

6         Q.   That's not something you have

7   knowledge of?

8               MR. FARRELL:  Objection to form,

9         foundation.

10              THE WITNESS:  Well, that was,

11        that was a legal analysis that is

12        privileged that I don't have access

13        to.  It was a legal analysis that

14        looked at scientific information,

15        analytical information, as well as

16        other issues that they would have to

17        incorporate into a legal analysis.

18              I don't know what was in it, so I

19        wouldn't be able to answer questions.

20  BY MR. PLACITELLA:

21        Q.   Well, that's what I'm asking you.

22  So you're not the person to ask those

23  questions to on behalf of the corporation,

24  why and if certain information was included

25  in the Ashton affidavit?



Page 475

```
 1              MR. FARRELL:  Objection to form,
 2         foundation, beyond the scope of the
 3         notice.
 4              THE WITNESS:  My understanding is
 5         it's privileged.
 6    BY MR. PLACITELLA:
 7         Q.   Your understanding is why certain
 8    information was included in the Ashton
 9    affidavit is privileged?
10              MR. FARRELL:  Same objections,
11         form, foundation, beyond the scope of
12         the notice.
13    BY MR. PLACITELLA:
14         Q.   I just want to make sure I've got
15    that right.
16         A.   My understanding, that
17    whenever -- whatever went into the legal
18    analysis is privileged.
19         Q.   Just so -- I want to be clear
20    because when we come to trial, I don't -- I
21    want to make sure questions I don't ask you.
22              You don't have any information
23    about why Ashton included the information in
24    his affidavit and excluded other; correct?
25              MR. FARRELL:  Objection to form,
```



Page 476

```
 1          foundation, beyond the scope of the
 2          notice, asked and answered.
 3                  THE WITNESS:  I was not there.  I
 4          don't have any detailed information on
 5          why or how that was done.
 6                  MR. PLACITELLA:  Okay.  Well, I
 7          think subject to other people asking
 8          you questions, which may resurrect
 9          something in my mind, I'm done; and I
10          appreciate your time.
11                  THE WITNESS:  Thank you.
12                  MR. FARRELL:  No questions for
13          BASF.
14                  MR. BOISE:  No questions.  No
15          resurrection.
16                  THE VIDEOGRAPHER:  The time is --
17                  MR. PLACITELLA:  Hold on.
18          There's people on the phone.
19                  MR. BOYLE:  No questions for
20          Dornbusch.
21                  MR. PLACITELLA:  Okay.  Eric, you
22          still there?
23                  THE VIDEOGRAPHER:  The time is
24          now 6:58 p.m.  This concludes the
25          deposition of Daniel Steinmetz.  We're
```



going off the record.

(Deposition concluded at 6:58 p.m.)

1          C E R T I F I C A T I O N

2

3

4               I, ADAM D. MILLER, Registered

5    Professional Reporter, certify that the

6    foregoing is a true and accurate transcript

7    of the foregoing deposition, that the

8    witness was first sworn by me at the time,

9    place and on the date herein before set

10   forth.

11              I further certify that I am

12   neither attorney nor counsel for, not

13   related to nor employed by any of the

14   parties to the action in which this

15   deposition was taken; further, that I am not

16   a relative or employee of any attorney or

17   counsel employed in this case, nor am I

18   financially interested in this action.

19

20

21   _____

22   Adam D. Miller

23   Registered Professional Reporter

24   and Notary Public

25



| | | | | |
|---|---|---|---|---|
| **A** | **accuracy** 435:12 | 364:9 | **agents** 37:13,14 | 432:23,23 440:9 |
| **able** 30:8 42:20,21 | **accurate** 36:10 | **adheres** 15:7 16:1 | 38:2 | 449:25 |
| 158:13 164:21 | 37:2 40:16 70:20 | 16:15 | **aggregation** 101:5 | **allegedly** 405:18 |
| 165:5 169:7 | 80:2 124:11 125:2 | **adopt** 469:14 | **ago** 11:6 14:1,3 | 452:6 |
| 180:24 181:13 | 125:10,23 154:14 | **advantage** 187:1 | 44:6 80:7 86:21 | **alleging** 189:23 |
| 184:3 201:25 | 155:1 156:15 | **advised** 183:24 | 89:21 90:4 95:1 | 198:25 228:7 |
| 205:16 206:1 | 229:6 255:24 | 381:1 | 97:17 98:1 100:12 | 310:14 |
| 207:12,13,19 | 256:13,22 265:23 | **advocate** 322:15 | 108:2 115:15 | **allotted** 395:13 |
| 208:2 315:18 | 278:9 283:21 | 437:8 | 117:14 120:3 | **allow** 185:6 |
| 319:11 351:25 | 284:3,7 309:12,15 | **advocating** 321:10 | 130:10,23 131:11 | **allowed** 126:6 |
| 357:18 358:15 | 309:19 311:14 | 322:25 323:6 | 149:1,19 164:16 | 294:22 |
| 360:3 375:7,16 | 435:19 457:13 | **affidavit** 5:6 63:21 | 168:9 273:21 | **allowing** 72:10 |
| 376:2 417:15 | 459:10 460:9 | 63:23,25 69:5,11 | 312:16 318:17 | 169:17 |
| 418:16 426:1 | 468:5,10 478:6 | 69:23 70:7,15 | 331:20 354:1 | **allows** 187:14 |
| 428:2 433:21 | **accurately** 457:21 | 71:3 72:24 73:2 | 367:3 371:1 | **amazed** 302:17 |
| 446:23 448:3,18 | **acquiescing** 467:4 | 201:23 242:19 | 373:24 375:5 | **Amended** 4:18,21 |
| 463:21 465:25 | **acted** 61:5 261:6 | 253:19 288:13,15 | 463:17 466:17 | **Amendment** 14:12 |
| 472:6 474:19 | **action** 1:5 8:10 | 289:18 290:3 | 468:24 | 14:17 167:23 |
| **absence** 200:16 | 232:8 320:15 | 291:5,8,9 292:15 | **agree** 30:19 35:24 | **amount** 67:18 |
| 201:17 220:9 | 478:14,18 | 294:2,23 295:1,3 | 36:23 171:12 | **amounts** 66:19 |
| 222:5 | **actions** 108:2 232:5 | 296:23 297:4,7,9 | 175:25 182:7 | 199:2 209:21 |
| **absolutely** 147:6 | 320:14,19 | 297:14,19,25 | 246:20 247:18 | 310:16 347:18 |
| 173:13,19 176:19 | **active** 400:20 | 298:13,20 299:4 | 256:2 260:10 | 348:13 350:24 |
| 236:1 295:8 | 405:10 | 299:11,15 300:18 | 339:7,9 381:4 | 433:15 |
| 302:14 448:9 | **activities** 35:11 | 302:4,20 303:20 | 406:16 | **amplify** 239:9 |
| **acceptable** 224:24 | 108:3 132:18 | 304:6,12 305:8,9 | **agreed** 346:23 | 241:14 |
| **Accepting** 317:21 | **activity** 134:10 | 305:24 306:12,14 | 369:14 | **analyses** 202:15,20 |
| **access** 41:19 44:5 | **actual** 138:8 417:15 | 306:17 329:6,14 | **agreement** 258:9 | 233:6 |
| 51:7 84:22 85:6 | 453:23 | 329:24 331:4 | 373:4 | **analysis** 36:3 233:8 |
| 87:1,25 88:9 95:3 | **Adam** 1:21 8:18 | 335:6 437:20,22 | **agrees** 182:25 | 233:12 253:7 |
| 129:20 271:12 | 478:4,22 | 439:3,15 472:17 | **AG's** 424:21 | 329:14 420:17 |
| 317:14 319:18 | **add** 180:18 181:20 | 473:9 474:2,25 | **ahead** 41:25 72:17 | 474:11,13,17 |
| 351:7 420:22 | 425:13 429:11 | 475:9,24 | 74:25 230:5 239:1 | 475:18 |
| 447:10 448:8,11 | 471:2,22 | **affidavits** 71:3 | 239:12 276:18,21 | **analytical** 36:3 |
| 448:25 449:1 | **addition** 289:25 | 259:25 280:14,23 | 281:4,6 290:23 | 474:15 |
| 474:12 | 432:13 438:9 | 281:11 282:1,24 | 372:23 434:7 | **analyze** 297:1 |
| **accessed** 472:25 | **additional** 168:25 | 286:25 287:14 | **al** 1:4,7 8:7,8 | 343:19 |
| **accessible** 48:16 | 250:15 328:20 | 294:22 299:25 | **Alexander** 378:22 | **analyzed** 148:12 |
| **accommodate** | **address** 146:18 | 301:22 303:1 | 378:22 | **and/or** 160:22 |
| 210:13 | 147:22 179:10 | **affirm** 252:11 | **alive** 48:15 57:21 | **Anistics** 383:19,25 |
| **accompanying** | 298:6 461:1 | 270:4 | 57:23 59:16 61:7 | 384:4,9 |
| 113:8 | **addressed** 121:25 | **afternoon** 300:24 | 380:17 | **answer** 16:7 17:2,4 |
| **accounting** 472:13 | 128:14 179:11 | **AG** 147:24 353:5 | **allegation** 406:6 | 18:10,24 19:8 |
| **accumulated** | 192:25 | 424:19 | **alleged** 45:5 316:18 | 21:8 22:17 23:5 |
| 101:10 | **addresses** 114:18 | **agent** 37:21 269:21 | 318:3 319:14 | 26:7 30:8 39:5,25 |
| | **addressing** 182:17 | 378:23 | 386:24 430:8,11 | 40:6 49:2 50:12 |



51:22 52:6 55:19
67:7,16 68:4
69:14 71:11,17,25
72:6,10,11,19
73:19 75:15 76:22
78:5,12,24 80:17
80:20 81:12,25
88:17 93:11 94:6
95:23 97:21 98:5
98:14 99:6,13,21
100:5 118:9,14
123:17 126:7
130:2,8 133:22
142:3,5,13,19,22
143:12 147:16
148:13 150:14
151:23 153:15,22
153:22 159:12,16
159:19 162:12
163:10 164:2,3,8
164:21 165:9,12
165:23 166:16
169:17 172:20
173:8,20,24 174:6
183:8,10 186:12
200:15 201:13
208:12 217:20
219:21 220:6
221:4 222:17
225:2 229:23
238:9 240:20
241:13 248:20,25
251:3 255:10
264:6 269:7,11
270:24 271:5,10
271:14,20 273:21
291:16,20,22,25
292:6 293:18,21
294:20 301:4
306:22 307:24
313:16,24,25
314:3,3 339:25
340:3,18,19 344:6
354:6 361:5,10
371:8,19 386:15
394:1 425:18

426:16 446:8
448:12 455:3
456:14 460:5
463:25 465:13
466:5 469:4 472:7
474:19
**answered** 25:11
56:14,21 57:3
60:2 62:8,18
67:10,22 68:6
70:19,21 73:7
74:10 75:19 76:8
76:18,23 77:15
78:17 99:9 101:17
104:18 108:22
116:20 117:3
118:8 123:25
126:2,13 128:10
128:23 129:1,15
130:6,20 131:9
133:19 149:13
155:20 159:25
160:8,13,19
161:17 165:16
166:1 169:4,12,21
176:10 178:9
179:23 180:19
181:22 183:11,21
194:20 195:8
211:24 213:25
214:22 219:3,16
219:18 220:13
221:18 227:8
228:13 234:1
235:3,16 244:9
247:14 248:23
253:15 264:21
277:4,9 278:6,11
278:14,16 279:6
282:13 283:14,25
284:12 310:4
316:20 323:4
325:21 344:3
345:3,20 346:6
375:21 418:4
419:14 420:21

427:15 428:12,21
429:7 432:5,11
433:3 436:15
437:1,15 441:2
442:17 453:9
454:1 455:11,12
456:17 457:24
458:5 459:4,22
472:15 476:2
**answering** 15:19
18:7 24:3 40:8
53:19 71:20,21
72:23 75:3 76:13
99:17 142:10,17
156:2 237:9,24
263:25 264:23
271:8 283:6
467:12
**answers** 5:7,10
47:11 52:2 54:19
54:24 60:25 65:19
66:7,19 71:2 77:6
78:2,20 79:19
81:5,19 151:17
154:7,8 161:22
163:21 176:10
180:11 251:12
252:17 254:9
258:24 260:18
261:11 268:24
269:23 270:13
271:17,25 272:16
273:11 274:8,12
274:23 277:14
280:12,24 281:16
281:19 288:1
306:16 307:9
340:24 429:20
436:7 443:22
455:24 459:2,16
473:6
**answer's** 76:3
107:14
**anybody** 10:22
12:3,10 47:1
62:13 86:20 89:20

90:1,3 97:18 98:3
98:4,13 100:12
108:6 111:10
182:24 194:16
195:3 235:7 236:4
300:3 332:6 344:6
356:24 439:23
**anymore** 11:9
295:10
**anyway** 50:24
428:2
**apart** 298:5
**apologize** 238:15
**apparently** 311:16
356:6
**appear** 11:12
**appearances** 2:1
3:9 8:21
**appears** 118:1
121:19 127:16
349:14 394:4
**applications** 230:8
**apply** 145:20,23
184:18 185:21
**appreciate** 181:16
183:19 188:5,6
199:24 476:10
**appropriate** 54:3
143:6 214:11
224:24 234:22
235:22 256:19
310:7
**appropriately**
36:18 246:24
301:1
**approval** 221:2
**approved** 221:9
222:13,14 295:5
**approximately**
167:8,16 459:22
**Arch** 3:6
**area** 158:15 165:12
387:7
**argue** 258:16
406:19
**arguing** 162:3

**argument** 32:19
175:10
**argumentative**
16:24 17:10 23:11
23:21 32:15 33:1
38:21 49:16 67:11
68:6 69:17 79:12
80:5 92:4,20
93:20 95:10 96:7
98:9,17 100:3
109:11,15 114:9
114:13 116:17
117:1 118:6
131:23 149:12
150:7,13 154:11
156:25 157:12
158:19 159:1,22
219:1,8 222:20
223:2,8 226:12
227:25 238:19
240:10 246:17
254:20 258:14
261:17 264:16
275:19 279:13
286:4,15 288:3
289:12 295:17
297:3,24 298:22
299:16 304:15
306:20 310:2
322:8 323:3 325:9
325:20 333:9
337:18 344:16
345:2 353:19
356:16 404:23
416:5 428:13
429:6 435:16
436:14 437:2,14
441:12 453:25
457:8 458:4
**arguments** 40:23
**arose** 281:25
**arrived** 415:6
**Arrowood** 6:5
376:12
**ARROWOOD04...**
6:6



**ARROWOOD04...**
6:7
**ARROWOOD04...**
6:8
**ARROWOOD05...**
6:11
**Arthur** 3:10 9:19
55:5,15,20 113:2
120:10 123:11
160:22 249:23
287:4 301:19
304:1 305:10
404:13 409:3
411:4 412:22
454:16
**articles** 202:12
**asbestos** 136:6
151:11 189:21,23
200:8,17 201:9,17
202:4,13 203:18
204:8,12 205:18
206:2 207:2,15
208:5 209:1,2,13
209:22 211:20
213:9,19,23 215:1
216:14,22 217:16
218:5 219:13
220:10 221:12
222:5 223:15
225:10 226:17
227:4,12,19 228:7
228:9 232:9,11
237:3,22 242:2,15
242:22 243:8,19
244:2,21 247:11
248:2,7 249:5
252:21 259:9
297:17 299:10
320:15,17 322:3
324:12 329:17
333:6 334:20
335:2,11 339:22
430:13
**asbestos-containi...**
252:22 430:13
**asbestos-related**

386:24 387:2
390:13
**Ashton** 63:21,23,25
69:5,11,23 70:6
70:15 201:23
202:11,25 242:20
253:18 290:3
292:17 297:9
329:5,13,23 331:4
335:7,24 339:4
437:20 439:3,15
473:8 474:1,25
475:8,23
**Ashton's** 437:21
**asked** 18:23 25:11
39:16 43:25 53:25
56:14,21 57:3
59:18 62:8,18
63:3,15,20,22
67:10,22 68:6
72:7 73:14,22
74:19 76:18,19
91:13 95:6 96:16
99:9 101:17
104:18 105:12
108:22 123:25
126:2,13 128:10
128:23 129:15
130:6,20 131:9
133:16,17 145:8
149:12 154:5
155:20 157:19
160:7,24 161:16
162:5 165:16
166:1 169:21
172:3,18 173:3,16
174:3 176:16
179:13,23 180:1,3
180:18 181:21
182:12,20 183:11
183:21 186:16
194:20 195:8
196:22 211:24
213:25 214:22
218:3 219:12,16
220:13 221:18

227:8 228:13
234:1 235:3,16
239:6,8 242:13
244:8 247:14
248:23 250:16
253:15 264:19
267:16 269:20
270:11 274:12
278:11,14,15
279:6 283:14,25
284:11 288:6
291:4 292:23
293:16,21 310:3
316:20 321:8
323:3 325:20
334:18 344:2
345:2,20 346:6
359:15 363:1
364:21 365:1
366:1,24 368:9,16
374:19 375:21
386:22 418:4
419:14 420:21
427:15 428:12,21
429:7 432:11
433:2 436:10,14
436:21 437:1,15
441:2 442:17
453:9,25 456:17
458:4 459:4,21
463:21 464:24
465:23 472:9,15
476:2
**asked-and-answe...**
181:19
**asked-and-answe...**
181:25
**asking** 20:20 26:5
30:2 62:13 64:22
72:22 73:24 74:21
75:14 78:8 96:3
110:10 114:6,19
118:10 120:24
121:3 124:22,24
132:19 133:9,10
143:2,7 147:20

155:23 162:23
163:7 176:11,22
178:6 182:1 186:6
187:20 200:24
211:1 215:9
219:10,20 220:2
237:7,11 242:13
243:23,25 247:12
247:25 249:2
268:13 312:13
354:12 358:13
367:18 368:19
430:4 439:2 441:9
445:10 468:2
474:21 476:7
**asks** 32:24 152:9
174:14 241:25
255:8 307:15,19
311:3 359:24
422:3 424:18
440:5 444:7
450:17 454:14
**aspects** 135:5
433:12
**assert** 212:8 213:18
214:25
**asserted** 53:17,20
69:4 163:1 201:7
204:11 212:7
216:13 366:4
367:6 470:20
**asserting** 174:23
200:7 215:17
247:10
**assertion** 204:7,17
218:5 236:22
237:20 244:1
334:19 335:1
343:25
**assertions** 205:3,4
281:9 326:12
329:10
**assessment** 253:6
**assistant** 247:23
**associated** 217:11
280:5 321:25

447:16 472:18
**Associates** 348:5
350:11
**assume** 140:21
171:12 179:24
180:20 264:19
473:22,24
**assumes** 161:15
225:17 267:4
328:17 387:21
388:18 389:1,17
390:15 397:25
398:12 400:5
407:15 423:20
**assuming** 188:19
337:6 358:25
374:21 385:8
411:8 448:17
**assumption** 453:22
**attached** 114:20
116:10 177:23
349:2
**attachment** 6:11
304:5 305:23
306:3
**attachments** 4:13
5:23 7:3 114:25
115:8 116:4,9
117:9,16 118:11
348:9
**attempt** 347:15
**attention** 387:9
**attest** 272:16
**attorney** 52:10
102:9 315:13,17
318:22,24 319:2
321:9 478:12,16
**attorneys** 123:9
160:21 232:23
270:14 282:18,21
300:1 313:23
321:11,23 387:1
425:23
**attorney-client**
168:18
**attorney/client**



158:12 178:20
194:24 425:6
**audit** 144:23 145:9
145:18 148:17
354:19 355:2
358:25 359:12
**auditor** 87:10
352:6
**auditors** 86:11
146:23 147:23,25
148:3 352:12
353:5,7 354:17
**August** 139:19
303:6 332:24
414:16,20
**authority** 199:7
**authorization**
212:8 233:23
234:16,21 246:15
246:20 247:19
**authorize** 221:10
221:16 247:3
**authorized** 205:7
214:25 220:10
221:20 233:15,20
234:12,14 235:1,6
235:14,24 236:3
245:21,25 246:9
269:22 272:14
300:17,25
**authorizing** 213:17
**automatically**
346:11
**auto-body** 230:14
**available** 28:22
29:10 30:12,21
31:7 67:3 85:18
86:23 101:14
102:16 103:16
106:6 107:2,12
110:6 116:12
117:17,18 118:2
118:12,17 128:1
130:1,9,9,10
131:12,16 150:5
206:12 212:10,21

292:3 294:11
356:25 421:2
433:16 451:14,15
463:24 464:3
**Avenue** 2:8
**average** 348:15
**avoid** 9:20
**aware** 57:20,23
77:21 130:23
135:22 138:19,25
206:24 211:18
215:15,22 216:11
216:20 218:3
219:11 223:12
228:22 234:7
249:14 250:5,8
259:8 302:3 330:8
337:14 352:8
380:17 383:1
398:19 403:18
409:11 410:12,16
449:12 450:12,18
453:5 454:15,17
455:9
**awful** 117:21
**a.m** 1:19 8:12 82:8
82:12

───────────

**B**
**B** 360:16 379:10
**back** 15:21,22
25:15,16 39:21,22
71:23 74:3,7,8
79:3,16 82:12
94:2,3 102:20
113:2,6 120:2
133:13 139:1
146:2 157:18
163:14,15 164:14
173:2,18 183:13
189:15 195:11
209:6 211:2,12
214:5 246:19
263:18,21 277:5
290:7 296:11
328:22 339:20

342:1,12 343:15
346:3 347:11
352:19 357:19
372:2 391:22,23
411:20 417:7
421:24 465:2
469:19 470:10
**background** 198:13
**back-and-forths**
232:22
**bad** 172:10 187:1
**balloons** 230:18
**Bank** 2:9
**bankers** 424:20
**Barry** 3:2 9:12
462:9 470:8
**base** 99:3
**based** 106:20,25
206:23 208:24
223:13 244:1
247:12 248:6
249:3 256:21
294:19 302:16
323:19 335:8,23
396:18 425:5
430:10 439:3
449:24 453:22,22
454:3 458:25
459:16 470:21
**baseless** 241:4,7
**BASF** 1:7,12 2:12
4:16,25 5:7 6:16
8:7 9:8,10,15
10:21,23 11:1,8
11:13,19 12:3,19
14:10,11,20 15:7
15:25 16:9,11,14
16:15 17:13,24
18:16 19:1 22:7
22:22 24:3,23
25:5,22 26:5 28:8
28:11,16,20 29:10
30:12,21 31:8,11
31:13 33:5,12,12
33:18 34:5,9,14
34:15 35:14 37:11

37:14 38:1 39:4
39:11,25 46:11
54:19 58:23 59:14
61:18 62:22 64:15
65:21 69:4 80:13
80:22 81:8 90:11
124:10 125:1,22
147:24 151:10
153:4 157:9,14
167:21 168:4
170:6,10 172:13
174:17,22 178:15
189:20 190:25
197:13 203:14
204:4 207:12
213:20 214:24
215:16,19 216:12
216:21 221:10,19
223:11 228:22
265:11 297:22
299:12 300:4
344:12 345:10
347:16 352:7,13
353:5 356:10,24
363:10 366:4
376:11 387:16
388:15,24 389:13
390:24 391:9
422:17 424:19,21
425:24 427:6
428:19 434:20
440:7 449:22
450:18 454:15
470:15,20 476:13
**BASF's** 31:22
168:11 174:10
204:24 312:14,17
356:17
**BASF/Engelhard**
199:8
**BASF_SAMPSO...**
6:22
**BASF_WILLIA...**
6:3
**BASF_WILLIA...**
7:7

**BASF_WILLIA...**
5:18
**BASF_WILLIA...**
5:22
**BASF_WILLIA...**
5:14
**BASF_WILLIA...**
4:14
**basic** 157:8,13
164:10 176:12
405:24
**basically** 457:23
**basis** 35:18,25
102:1,4 122:4
180:14 183:22
185:10,20 191:24
192:6 199:7 201:6
201:22 204:6
208:25 213:8
218:4 219:13
225:4 232:2,14
233:2,4,11 242:1
242:14 247:12
253:1,6 270:13
281:9,23 284:17
284:22,24 312:16
320:11 321:7
322:2 330:15,18
331:8 341:4
342:17 343:2
345:16 346:1
431:2 432:6 438:1
449:15,20 450:8
451:6,10 454:23
455:13 456:24
459:15 473:24
**Bates** 141:13
349:23 377:9,15
377:20 378:4
379:22 385:3
**bcc** 349:13
**bearing** 224:22
**began** 372:24 374:2
410:10 430:25
**beginning** 398:3
418:12



**begins** 8:4
**behalf** 2:2,12 3:1
  3:10,18 8:24 9:4,7
  9:10,12,14,18
  13:4 24:17 36:10
  39:5 40:1 61:17
  64:15 199:8
  215:19 251:24
  252:10 264:24
  265:4,8 269:24
  270:3 271:25
  274:24 281:25
  297:22 299:12
  474:23
**belief** 252:13 270:6
  293:3 458:25
  459:9
**believe** 14:2 28:15
  42:6 45:6,21
  46:16 52:9,10
  58:25 61:4 62:24
  65:14 86:1 87:5
  104:13 107:1
  110:5 121:17,23
  122:25 126:15
  133:5 135:3,6,23
  137:25 138:12
  140:7 183:14
  185:15 191:7
  202:17 206:11
  230:14 231:11
  250:19 257:16,17
  277:12 298:14
  302:21 319:18
  325:7,16 352:8,20
  353:11,14 357:15
  381:13 384:3
  385:18 387:22
  404:12,17 408:5
  417:14 438:21,25
  444:2 448:24
  452:2,17
**believed** 295:9
  349:21
**believes** 186:10
**believing** 296:25

  460:8
**bell** 170:8
**belonged** 447:23
**beneficial** 117:24
**best** 72:6 91:21
  92:13 154:15
  155:2 173:6 187:7
  252:12 265:24
  270:5 283:22
  356:21 373:25
  388:1 389:3
  458:24
**better** 72:20 127:4
  127:18 132:20
  134:8,9 180:6
  385:25 407:6
  473:17
**Bevan** 5:20 231:14
  322:21 348:4
  350:11 431:19,23
  438:12,13 445:8
  445:11
**Bevan's** 231:17
**beyond** 14:14,25
  15:10 16:4,22
  17:18 18:3,19
  19:5 21:4 22:12
  24:7,21 25:10
  26:22 28:13 29:1
  29:13 30:24 31:16
  32:25 33:7 34:18
  35:22 37:16 38:20
  39:9 47:25 50:15
  51:18 52:14 53:3
  72:3,13 76:1,17
  77:9,24 78:15
  80:15 81:10,23
  93:19 100:1
  104:18 108:22
  120:16 121:8,14
  122:21 123:13
  138:10,23 140:2
  141:5,25 143:5,7
  143:18 144:3
  145:4 146:9,16
  148:7 151:4,20

  153:18,25 154:10
  155:9,20 156:6
  157:11 160:6
  161:15 162:6,23
  167:19 184:14
  185:2 196:6
  197:25 198:16
  229:14 230:2,20
  257:14 260:9
  277:23 278:11,24
  279:5,12 280:17
  283:4,13,24
  284:11 285:12
  287:16 288:3
  309:9,17 310:2
  312:6,24 326:23
  402:13 403:3
  424:13 431:9
  432:10 433:2
  434:4 435:3,16
  436:4,13 437:2,13
  449:18 450:10
  451:8 453:9 454:1
  454:25 455:15
  456:16 458:5
  459:4,19 460:17
  464:6,12 466:14
  466:15 468:16
  469:22 471:13
  472:4 473:13
  475:2,11 476:1
**beyond-the-scope**
  19:24 167:25
  186:18
**bible** 299:9 333:6
**big** 362:20
**bigger** 244:12
**big-picture** 46:1
**bind** 13:9 16:14
**bit** 11:7 187:19
  263:9 270:19
  317:20 430:1,25
**blank** 45:11 185:13
**blanket** 218:22
  222:17
**Bloomfield** 10:16

**blow** 334:7 462:8
**board** 81:21 150:23
  151:10,18 152:10
  152:14 153:9,16
  155:6,17 157:21
  160:2,15,20
  161:11,21 163:20
  168:12 174:15,20
  175:24 176:7,13
  177:1,22 191:1,18
  192:17 193:10,11
  193:18 194:4,14
  195:5
**boards** 189:20
**Boise** 3:2 9:11,12
  9:25 54:10 88:5
  101:18 107:9
  113:13 132:15
  167:11 242:7
  247:15 268:7,10
  271:6 275:20
  291:9 292:5
  298:22 320:5,8
  333:24 334:21
  385:3 461:21
  462:1 470:10
  476:14
**boiseb@pepperl...**
  3:3
**Bondo** 366:13
  373:19 405:14,16
  405:18 406:4,7
  410:10 414:21
  418:13
**Bosl** 463:20
**bottom** 338:16
**Boulevard** 3:14,22
**bound** 126:11
**box** 210:12
**boxes** 359:8,8
**Boyle** 3:11,13 9:17
  9:17,18 10:1
  120:15,18,19
  121:1 413:9
  455:21 456:2
  476:19

**break** 189:10
  210:16 211:1,8
  250:13 263:11
**briefing** 170:16
**briefly** 148:13
  314:12
**bring** 173:21
  183:12 210:12,14
  210:18 276:23
  339:20 364:21,22
  365:1,2 372:5
  421:6 422:12,24
**bringing** 220:2
**broad** 83:1,16
  94:17 127:15
  128:2 199:18
  274:17 301:24
  342:25
**broadly** 199:18
  311:9
**broker** 384:8
**brought** 106:24
  229:17 353:23
  376:3 387:9 396:9
  440:24
**Brown** 320:20
  321:17,19
**bucket** 66:14
**bunch** 308:4,5
  348:8 444:23
**burdensome**
  357:24 423:9
  471:10
**business** 141:18
  143:23,25 144:11
  144:13 145:24
**businesses** 145:21
**busy** 259:17
**button** 355:17
**Bye-bye** 189:8
**Bynoe** 383:20
  384:22

---

**C**

**C** 304:5 478:1,1
**Cahill** 3:1 5:3 9:12



41:13,18,23 43:6
46:11 62:11 64:7
64:17 69:10 80:21
82:23 83:12 84:15
84:19 85:5,18
87:1,25 88:11,14
89:4,15,16 93:23
94:25 95:14,18,21
97:1,4,6,9,12,22
100:6,25 101:3,11
101:12,14 102:17
103:17 104:1,11
104:21,23,24
105:1,5,8,17,24
105:25 106:6,14
106:23 107:7
108:8,18 109:20
110:14 111:5
113:11 114:25
120:1 126:19,25
127:3 128:7,19
129:9,11,21
130:16 131:4
132:11,18 133:2
133:11,12 134:2,3
134:3,25 160:21
167:12 201:20
202:8,18 203:1
204:20,25 205:6,7
206:17 212:1,8,10
213:5,18 214:10
214:12,25 215:2
215:10 219:23
220:23 221:11
222:14 223:11
231:5,13 233:2,13
233:22 234:15
235:21 236:8
237:20 246:14,21
246:22 247:9,18
253:5,24 256:18
262:11 270:22
271:1 282:18,21
293:13 295:21
300:1,8,14,17,24
314:18 315:13,16

317:8 318:17
325:7 326:6
329:15 332:14,14
332:21 347:14
351:19,22,23
382:3 444:16,17
445:5 473:17
**Cahill's** 200:3
301:21
**CAHILL-000010**
6:15
**CAHILL-001156**
7:3
**California** 380:7
**call** 91:25 92:12
95:11 132:5 149:4
150:4,15 166:13
166:19,24 172:22
184:11 188:24
223:25 280:8
413:21
**called** 21:20 100:25
169:9,24 174:9
178:2 196:18
288:24 369:21
389:23
**calling** 166:18
179:7
**calls** 15:1 16:5,23
18:20 31:17 33:8
51:19 52:4 60:17
91:10 168:17
169:2 215:7
228:12 238:6
323:14 326:24
389:17 410:19
414:25 417:18
419:14
**cancer** 430:12
**candor** 19:2 21:25
22:8
**capability** 207:21
**capacity** 11:1 261:7
392:2
**care** 189:7 293:6
**careful** 211:15

**carrier** 378:16
**carriers** 380:16,22
390:2
**carry** 372:7 461:9
**Carter** 4:9 5:6 7:1
59:24,25 60:3,6
60:11,15,20 71:2
72:24 73:3 251:25
255:18 256:20
257:2 258:2,10,23
260:18 264:3,9,19
266:4,17 269:20
269:21 271:24
272:14 279:10
280:14,25 281:11
282:1,7,23 285:7
286:2,6,25 287:11
288:14,21 289:16
289:18 290:14
294:22 295:20
297:13 300:2
301:16 303:22
304:6,11,13 305:9
305:17 306:14
**Carter's** 262:2,21
272:5,21 273:15
274:13 283:16
291:4 294:1,6,13
297:4,25 298:19
299:15
**case** 20:11 21:14
31:12 35:17 41:11
41:15 44:17 45:18
46:6 47:12 50:9
52:2,12 54:20
56:9 57:18 60:9
63:13 68:15 75:24
77:22 79:5 83:9
84:10,11,12 94:21
134:15,19,23
135:8 136:11
138:14 139:23
140:8 154:3
161:23 163:22
164:23 170:11,17
172:7 187:25

194:23 197:22
199:21,22 208:19
213:7,15 217:11
218:16 219:21,24
222:3,9,10 224:7
224:14 225:10,24
225:25 227:1
228:6 232:9 234:4
235:6 236:18
247:5 249:15
250:6,10 259:9,23
260:1 267:11
273:4 275:7,7,25
276:2 277:10
278:7 279:2,17,19
281:10 297:16
300:13 307:10
315:9,19 316:1,18
317:7 318:4,23
320:15 321:22
323:13 324:5,11
325:2,24,25 328:1
329:3 334:19
337:4,13,14,24
338:2 341:1 342:3
342:6,19 345:11
346:2 348:17
360:14,16,18
361:22,24 362:14
363:22 364:19
365:15 366:12,12
366:13,14 368:6,7
369:7 370:11,15
370:18,21 371:4
371:11 372:11,17
390:7 392:3,4,12
393:2,10,23
394:14 395:17,24
396:3,21 397:8,12
397:23 398:10,15
398:24 399:7,15
399:18,23 400:2
402:5 406:25
407:9,12,22 412:3
412:12 413:17
418:6,7,9,13

419:24 420:11,12
422:19 431:12
432:17 433:9,9
434:12,14 436:8
438:23 443:7
446:2,19,25
449:13 450:19,20
454:16 455:9
456:2 458:7 460:2
460:24 461:3
463:11 465:22
466:4,16,23 467:2
468:19 469:1,16
470:2 478:17
**cases** 24:4 41:16,20
46:18 66:8,14
73:8 74:12 75:20
76:14 80:3 83:3,6
93:25 109:4
119:17 136:12
199:3,20 200:4
201:8,8 217:7,15
218:4 219:12,25
220:20 221:3,5,5
223:12,12 225:6
225:22,23 227:10
228:25 231:18
240:13 242:1,14
243:17 245:15
248:1 251:13
261:7 273:21
275:4 280:13
293:19 310:17
314:17 317:2,9,10
318:12,19,20
320:21,22 322:22
324:4,8,25 325:24
328:15 331:6
332:4 333:21
338:24 339:2
342:1,13 343:3,8
348:12 351:4,13
360:1,22 361:2,11
361:12 362:1,6
363:19 364:8
365:6 368:21



369:17 371:23
380:17 381:6,17
383:1 384:14
400:11,25 401:4,7
401:9 402:18
406:13 407:12
409:18 416:2,15
416:24 419:10,25
431:16 432:2,15
432:20 437:23
438:6,15 440:6,25
469:8
**case-for-case** 433:7
**case-specific** 225:4
**Catalyst** 170:6
**Catalysts** 1:7,12
2:12 4:16,25 5:7
6:16 8:7 10:21,23
54:19
**categories** 273:8
**caught** 422:10
**causation** 239:25
**cc** 349:13 383:20
**ccs** 384:22
**cc'd** 258:6 382:5,8
382:14,22
**cede** 470:10
**cells** 45:11
**central** 329:9
**certain** 55:2 134:24
178:11 202:9
209:20 232:4
320:13 449:23
474:24 475:7
**certainly** 212:21
287:10 403:17
**certification** 262:17
285:9
**certifications**
275:11,19 301:5
**certified** 52:22
54:23 64:6,14,23
64:24 65:18 66:6
66:18 67:17 68:12
69:2,21 70:13
77:6 79:4 80:2

151:16 152:17
158:4 251:24
265:22 277:4
278:8 279:1,16
307:10 429:20
436:7
**certify** 152:25
154:13,25 258:10
260:18 278:3
478:5,11
**certifying** 47:11
81:5 261:11 265:4
**cetera** 307:22
**chain** 465:16
**chain-of-custody**
296:13
**challenge** 292:9
**chance** 196:10
355:9 381:2
461:24 462:2,5
**chances** 389:10
**change** 339:17
**changing** 422:7
**chapter** 367:13
**characterization**
73:5 75:17 76:6
76:25 78:6 182:8
182:25 311:13
333:12,15
**characterizations**
75:5,13
**characterize**
171:23
**characterized**
70:23
**characterizing** 78:4
78:23 79:22
**charge** 258:22
**Charles** 59:23,25
60:3,6,10,15,20
251:24 255:18
256:20 257:2
258:2,10 260:17
264:3,9,18 266:16
269:20 280:14,24
282:1,7,23 283:16

288:13 289:18
301:16 303:22
305:9,17
**chase** 100:23
**Chatham** 3:15
**check** 301:12
436:24 462:24
**Chemical** 378:12
**chemicals** 314:25
379:5
**Chidester** 336:13
337:3,12,15,22
338:1
**Chidester's** 337:1
**children's** 230:17
**chose** 66:8
**Chris** 8:23 54:10
120:21 121:1
291:10 320:5
455:21 470:11
**CHRISTOPER** 2:3
**chronological**
80:12
**chronology** 362:24
**chrysotile** 209:21
**Circuit** 185:4 269:2
452:20 453:6,14
**circumstances** 62:5
185:23 188:21
298:15 473:10,11
**cite** 185:9 367:13
**citizen** 17:15 18:1
**Civil** 1:5 8:10
**claim** 44:21 53:22
324:12,16
**claimant** 440:8
448:17
**claimants** 430:2
**claimant's** 316:17
319:12
**claimed** 44:22
227:11 316:24
**claims** 152:15
174:16 195:25
198:25 245:1
310:13 326:1

342:4 353:6,7
362:24 363:9
382:20 384:18
386:23 387:2
390:13 406:2
418:2 424:21
425:22 432:19
**clarify** 455:22
**class** 68:14,20
446:2,11 447:18
447:23
**classes** 444:12
**clear** 61:13 87:23
107:4 258:21
345:15 356:23
367:13 369:20
385:20 410:12
428:24 439:13
446:21 459:14
475:19
**clearly** 175:3 216:4
382:25 418:7,11
419:19
**client** 34:15 35:1,7
35:7,19 40:11
134:25 156:20
157:4 172:19
187:8 319:12
341:24 433:23
**clients** 339:18
**client's** 350:23
**client/attorney**
36:16 153:7
**close** 356:7 473:5
**closely** 250:22
**coatings** 230:16
**Cohen** 2:7 8:15
170:14
**coincidence** 306:8
306:11,18
**collect** 317:6
**collected** 102:11
115:24 252:8
270:1 463:23
464:1 465:20
466:2,6 467:16

468:13
**collection** 466:3
**Colley** 6:1 332:15
332:22 333:20
**column** 44:17
**columns** 43:8 44:18
385:12,23
**come** 36:1,4 146:2
157:9,14,19
200:11 208:3,24
211:2 283:2,11
304:17 309:2
329:15 337:22
341:3 342:18,20
386:22 388:16
389:8 392:3 435:1
451:11 456:19
457:6 475:20
**comes** 33:13,18
34:4,9 35:1,6,19
120:23 156:19
188:24
**comfortable** 36:19
50:25 51:12 164:3
256:22 273:23
280:6,7 284:3,6
285:2,4,16,23
286:21 309:12,19
310:5 344:19
421:1 435:19
436:18 459:8
460:3,6
**comfortably** 460:7
**coming** 35:13 344:8
392:21
**comment** 131:13
140:6 199:16
217:22 238:22
239:20 250:15
292:13 298:11
350:6 364:15
464:20
**comments** 53:9,12
232:19 299:20
**common** 14:21
**commonly** 230:13



communicated 194:13
communicating 220:2
communication 215:9,12 219:22 240:2
communications 175:17 287:7 301:21 347:22 386:25
companies 36:17 87:18 227:11 370:14 406:15
company 13:16 36:2,10,19 38:7 39:7 40:3 90:21 116:1 168:11 208:10 209:7 258:18 264:24 265:5 330:4 383:19 386:12 420:14
company's 36:8,24
compellation 116:11
competently 288:25
compilation 5:3 100:25 101:4,6,15 103:17 104:9 105:9 106:21 109:20,25 110:15 111:20 112:4,11 112:17 113:1 115:1,9,17 117:22 118:17,25 119:3 120:1,9 125:5,10 127:9,11,23 128:8 129:11,23 236:9 237:20 253:25
complaining 335:16
complaints 217:9 314:23
complete 123:22

124:11 125:2,9 126:8 210:10,18 434:11 460:1
completed 443:5
completely 70:20 164:3 311:14 375:8 406:16 459:7 460:3,6
completion 443:6
complex 209:19
complicated 238:13 333:13
complied 177:14
comply 149:10
Compton 320:20 321:20
concern 182:19
concerned 296:14 457:19
concerning 16:16 20:15 28:10 30:13 62:4 64:6,16,25 65:1 66:7,19 68:14 69:3,22 71:2 72:23 77:7 77:20 78:12 80:21 80:22 81:6,19,21 84:14 100:7 105:22 128:19 151:11 152:10 155:16 168:4,9,12 189:21 193:12 194:14 220:9 228:23 239:23 307:20 353:7 368:6 387:1 447:25
concerns 436:20
conclude 339:18 341:25
concluded 49:14 179:12 477:2
concludes 476:24
conclusion 15:1 16:5,23 18:20 31:17 33:8 136:10

228:13 326:24 329:16,25 330:25
condensation 431:21
conduct 28:21 166:8 194:12
conducted 105:4,9 110:25 195:2 317:7 457:25
confidence 460:1
confident 156:13 156:15 181:13 187:6 389:4
confirm 65:16
conjunction 134:23 300:2
connection 20:11 82:23 444:17
consecutive 377:21
consecutively 377:14
consensus 293:10
consequences 326:16
consider 471:18
considering 50:3 67:18
consistent 213:21 215:4 349:25
constant 229:9
constantly 228:22 229:6
constituent 229:12
Constitution 15:8 16:2,16 167:23
constraints 50:3
constructed 109:20 139:25
constructing 473:8
consultant 10:21 61:17 259:4
consultants 119:15 119:19,23
consulting 258:8
contact 119:24 381:25

contacted 119:21 120:4 206:22 457:20 458:8
contain 242:2,22 249:5 292:16 335:11
contained 117:8 119:25 222:7 232:11 237:22 242:15 320:17
contains 112:12 126:5
contaminate 107:20
context 22:1 27:22 66:13 106:21
continue 183:23
continued 438:13
contradict 304:9
contrary 338:16 342:9
control 444:10
controversy 14:22
conversation 96:15 96:18 355:23 420:25
convince 327:25
Cooley 290:4
copied 246:8,13 247:24 249:12 260:17,23 348:21 349:19 350:10
copies 70:6 72:15 83:21 89:15 91:17 108:17 109:1 320:18 330:11
copy 13:21,25 43:19 54:1,8,11 73:15,22,25 74:20 74:23 76:20 91:20 92:7 93:3 95:16 113:12 122:17,24 122:25 123:22 124:11 125:23 135:24 138:15,17 190:12 210:10,18

250:12,25 261:2 268:10,12 290:16 306:6 353:20 461:4
Coren 2:5 9:2,4
Corp 378:12
corporate 11:2,12 11:22 12:19 29:8 51:5 58:22 62:22 63:6 97:13 170:5 170:10 288:24
corporation 6:20 13:4,10 24:17,18 28:23 139:18 141:16 189:22 198:4 252:11 269:23 270:4 380:3 382:5 445:6 474:23
correct 11:13,19,20 11:22 13:4 19:14 20:12 21:2,15 31:22 33:5 34:16 35:1,20 36:11 37:3,23 38:7 40:18 53:1 54:24 55:3,6,9,16,20 56:3,12,19,22 57:1,4,8,11,15,18 58:12 60:4 61:18 64:8,17 65:2,21 66:9,21 68:16 69:5,24 70:15 71:4 73:5,11 74:15 78:6 86:18 91:1,5 93:17 94:14 95:7 96:19 96:23 97:4,14,24 98:6,15 99:22 100:8 106:15 107:8,21 108:9 118:18 119:1,16 121:5 125:25 126:22 127:23 128:21 129:13 131:6 134:4,7



135:9,13 136:2,6
137:13 138:21
140:16 145:2
146:23 148:5
150:5,11,24 151:2
151:18 152:18
155:6,7 156:20
157:7,9,21 160:2
161:2 173:18
194:17 195:6,19
196:23 200:18
203:12 205:8
206:9 209:14
210:8 213:10
215:19 216:14,23
218:2 219:14
225:11 226:18
227:6 228:21
231:10,14,18
233:16,24 236:9
242:2,15 248:2
249:24,25 250:3
251:10,14,18
255:11,13 256:5
256:23 257:3
258:3,6,7,12,24
260:6,19 262:6,12
262:19 264:4,25
265:13 266:19
269:10,15 271:21
272:3,19 274:3,10
277:11 279:23
280:15 281:11
282:2 284:19
285:9 286:25
288:14 289:4
291:16,25 292:3
294:4,11 295:1
303:20,23 305:16
307:10,21,23
308:20 311:4,25
327:21 328:1,15
329:6,10 332:15
332:22 333:7,21
334:20,24 335:12
335:17,25 344:25

345:11 348:17
350:14 360:1,5,7
360:10,12,19
363:14,19,23
364:11,22 366:23
369:24 371:24
373:3 377:7
379:17 380:4,10
380:18 382:5,8,15
382:23 390:4,25
391:3,11,21 392:1
393:11,24 396:18
396:21 397:8,15
399:7 400:3,11,25
401:11 403:19
405:19 406:7,25
407:13 409:12
410:17 411:23,24
411:25 412:6,14
412:25 414:16
429:3 430:2
440:16 447:4
448:10,21 451:4
454:18 456:3
457:9,14 458:24
459:2,17 464:25
465:6,12 475:24
**correctly** 271:22
290:5 338:25
375:3,12
**correspondence**
320:19 411:3
**corresponding**
412:23
**cost** 471:7
**costs** 471:18,19
**counsel** 8:20 31:8
33:14 36:17 47:2
48:12 49:8,19,22
50:1,18 51:2,12
74:22 98:20
106:25 119:21
121:19 122:10
154:3 157:16
164:5,6 165:3,21
165:24 166:5

168:3,10,24
169:10,19 170:13
172:8,24 178:23
192:12 194:22
244:17 247:23,24
248:12 249:13
250:4 259:17
260:14 264:12
266:19 270:20,25
277:6 280:2 283:8
284:19,23,23
286:18 291:19
292:1,6,23 293:5
293:11 309:1,2
310:6 316:9 329:2
330:2,17 335:5
342:10,19 346:23
354:15 357:16
361:4 362:2 367:3
367:21,25 374:20
385:18,25 387:11
389:2 391:4,9
393:15 394:2
396:9 418:10,14
419:17,23 423:14
424:5 425:15,21
426:13,21 427:17
427:25 429:9
435:6,19 437:21
437:22 438:4
455:20 456:19,23
457:20 466:23
469:1 471:3,16
478:12,17
**counsel's** 309:22
**counted** 399:14,16
399:18
**County** 269:2,3
**couple** 11:6 79:16
82:5 232:19 373:1
387:13 405:2
406:13 433:6,8
434:8 442:19
456:22
**course** 115:13
188:18 192:10

325:1 330:7
400:19 431:14
432:3,13,14 441:5
466:24
**court** 1:1 8:9,17
15:22 25:16 32:22
39:22 74:8 94:3
102:20 163:15
167:2,5,14 170:7
170:18 171:2,5,8
171:17 172:17
174:9 175:1,6,9
175:20 176:4,21
177:7,12 179:8
181:17 182:15
183:5,14,25 184:9
184:20 185:5,12
185:16 186:19
188:8,12,15 189:7
214:5 322:5,11
324:20 326:11
380:6 394:18
395:1 452:20
469:19 470:23
471:5
**courts** 28:9 324:20
**cover** 63:5 112:16
112:19,21 113:2
199:19 306:7
340:12
**covered** 39:18
140:5 248:17
312:21 363:13,18
364:10
**covering** 12:10
**covers** 312:17
**cplacitella@cprl...**
2:4
**Craig** 60:25
**created** 110:15,20
408:14
**cure** 183:2
**current** 292:14
**currently** 10:15,18
11:5 257:18
289:20 290:1

291:15 471:5
**custody** 444:9
465:16
**cut** 100:23 237:13
238:1 340:20
341:7
**cutoff** 168:15 369:7
422:19
**C&F** 376:19

**D**

**D** 1:21 264:9
266:16 269:21
478:4,22
**Dalmut** 2:15 9:9,9
42:12
**Danette** 46:24
**Daniel** 1:11 4:2 8:5
10:6 170:4 448:16
448:18,20 476:25
**dastardly** 171:19
**data** 67:5 101:6
106:5 107:2,5,11
233:6 290:1,2
291:15 292:2,14
292:16,16 294:11
294:24 295:10,24
296:24 297:1
298:15 317:6
346:9 392:18
447:25
**database** 43:14,17
44:2 46:2,14 64:7
64:17 308:1,17
309:7,23 311:25
312:3 313:3 314:1
314:6,9,20 315:7
315:22,23,24
316:5,16 317:4,14
318:1,13 346:10
350:18 351:7
355:8 358:14
359:4,11 362:14
392:2,5,9 393:1
393:10,23 395:17
396:3 419:7,23



420:23 423:17
431:20,23 433:16
433:22 434:10,11
440:15,23 441:5
441:15 442:12,13
442:25 443:5
444:21 445:4,5,7
445:11,13 446:1,4
446:14,15,22
447:1,7,9,12,18
447:22,25 448:3
448:12,16,20
472:12
**databases** 41:19,19
41:23 431:22
444:16 445:3,19
472:22
**date** 302:20 303:9
303:10,11 305:8
305:15,16 306:13
373:2 385:23
396:12 412:18
418:25 478:9
**dated** 139:19 231:6
332:24
**dates** 199:22
361:21,22 372:15
372:15,19 373:10
374:24 379:20
396:10
**David** 327:13
**day** 125:13 187:15
187:17 188:23
236:18 303:19
304:13 306:12
394:10,13,21
395:13 445:16
463:12
**days** 170:12 178:25
466:24 469:16
**day-to-day** 35:10
89:12 259:19
**DC** 8:14
**deadlines** 324:20
**deal** 56:8 240:1
425:11

**debate** 89:6 263:4
**decades** 418:21
**deceive** 23:25 24:5
24:19
**December** 269:10
375:10 398:6
414:6
**deception** 17:16
18:1,17
**decide** 32:8 249:8
306:25 312:22
371:15 394:18
**decided** 50:21
173:5 395:25
**decision** 453:6
**declare** 289:2
**dedicated** 167:18
**deeds** 171:19
**defend** 93:25
228:24 293:19
470:16
**defendant** 4:25
5:10 9:8,19 24:12
255:1 268:24
**defendants** 1:8 3:1
9:13
**defendant's** 255:1
255:2
**defended** 213:8
**defending** 22:9
200:4
**defense** 35:18 69:3
69:9 200:7,21
201:7,15,18,24
202:3,22 204:11
204:19,19 205:1
205:17 206:2,15
207:2,14,24
211:19,25 212:2,9
212:11,24 213:14
213:18,21 214:11
214:12,25 217:19
218:13 220:3,24
221:21,21 222:6
222:14 225:1
240:15 246:22

253:9 301:1
324:17 342:3
**defenses** 432:19
**defer** 263:6 448:10
**defining** 27:12,23
**definition** 37:20
38:25 68:24 89:2
109:3,6
**definitions** 40:13
**deliberate** 162:24
**Dembrow** 282:22
301:15 453:1
**demonstration**
41:18,23 42:10,14
441:19
**dep** 156:17 337:15
337:16,22 338:1
341:11 355:24
**department** 89:10
91:2 99:5 102:17
128:7 129:9 131:5
250:1 258:22
259:7 261:2
**departments** 11:8
**depend** 27:22 40:15
217:4 424:4
437:10
**depended** 246:23
262:10 420:17
443:6,6
**depending** 220:23
256:18 391:4
**depends** 27:11 35:9
157:4 222:8 227:1
316:22
**DEPONENT** 4:2
**depose** 49:9,12
50:19 113:19
344:24
**deposed** 88:18
91:12 114:3
135:21,24 255:4
344:12 345:10
**deposition** 1:11 4:7
4:9,19,23 5:5 8:5
8:12 9:22 22:1

27:5 29:11 30:7
30:22 31:5,6,22
41:8 42:18 47:3
50:5 54:3 58:7
60:7,14 61:13
63:3 79:3 91:14
92:22,25 95:5
96:10 97:24 102:8
102:16 103:15
104:3 114:21
132:2 135:12
136:8 140:5
148:19 161:2,3
165:13 166:10,11
167:9 168:16
170:23 174:12
178:16 179:1,4,12
179:18 183:5
184:4 187:14,16
192:22,24 193:1
194:4,11 196:7,25
197:3,14 211:9
217:25 236:19
245:6 255:19,20
259:16 262:3
268:1,6,16 278:22
290:14 294:2
310:22 312:7
317:4 333:16
337:7,8 346:8
352:11 355:25
356:18 358:7
363:2 368:2 369:6
371:22 386:6
390:21 392:25
394:21 422:20
452:23 464:15
467:15,21 468:1
476:25 477:2
478:7,15
**depositions** 41:10
41:11 46:6,11,13
46:18,20,21,25
51:13 62:2 96:5
98:21 135:8 136:1
136:22 137:4,19

138:7,21 217:14
228:4 249:14
250:5,9,23 256:6
295:23 333:4
336:12,18 366:14
370:11 393:17
394:4 451:17,20
451:22 453:5
**depth** 287:8
**describe** 139:16
233:1
**described** 102:15
104:2
**describes** 102:10
103:2,6
**DESCRIPTION**
4:6 5:2
**deserves** 238:13
**designated** 142:25
158:8 164:13
168:8,15 189:18
190:21 191:8
197:10 311:7
312:11 354:15
356:6 386:21
464:8 467:15
471:1
**designee** 1:12
**desk** 221:1
**despite** 163:9
262:16
**destroy** 416:22
**destroyed** 137:20
139:23 299:7
338:11 411:15
413:14 414:23
**destroying** 413:21
**destruction** 80:23
**detail** 58:18 64:3
103:4,12 134:18
199:21 311:12
314:13 353:2
355:1 405:23
406:11
**detailed** 77:16
105:3 317:3 476:4



**details** 45:24 106:7
255:8 259:19
321:24 386:11
405:12 406:1,18
**detected** 209:21
**determinations**
180:25
**determine** 95:13
107:19 108:7
183:9 186:24
194:13 212:10
261:13 262:18
284:8 344:20
357:5,11 390:23
**determined** 429:10
**develop** 205:7
214:11 234:21
**developed** 201:19
201:19 205:1
212:1 214:12
233:3,13 246:23
300:1 318:13,14
318:16 430:12
**development** 58:5
58:12 93:14 94:11
95:4 105:21
202:21 206:15,17
206:18 235:21
280:21 471:6
**Devine** 382:14
**dialed** 167:13
**diatribe** 185:1
**difference** 27:7,16
93:7
**different** 30:2
31:19 43:8 66:15
174:4 217:8,8,10
217:10,12,14
218:18,18,19,20
220:16 222:7,8,11
222:12 225:7
237:17 263:10
275:7 279:9 286:2
286:7 302:25
313:13 324:9,14
349:1 359:13

364:18,19 374:21
377:16 386:11,12
400:24 404:20
430:14 432:2,17
432:18 433:11
441:21,22 444:1
469:8
**differently** 468:25
469:11
**difficult** 31:25
37:19 66:13 225:5
341:20 418:19
**dig** 375:16
**digging** 313:18
341:16
**digital** 392:1,5
**direct** 241:13
**directed** 132:20
473:17
**directing** 159:12,13
159:16,18
**directive** 197:21
**directly** 35:13
192:25 286:24
287:4 452:25
**director** 176:13
**directors** 81:21
151:10 152:11,14
153:9,16 155:6,17
157:21 160:2,15
160:20 161:11,22
163:21 168:12
174:15,21 175:24
176:7 177:2
189:20 191:1,18
192:18 193:10,12
194:5,14 195:5
**disagree** 24:10 68:9
81:13 82:1 272:8
379:1 464:23
**disagreed** 239:23
**disbelieve** 321:1
**discard** 403:12,15
**discarded** 137:16
138:3 140:9,11,12
140:15 295:11

338:6 403:10
414:12 415:12
452:7 454:6
**discontinued**
145:20,24
**discovery** 19:3,13
20:11 21:1,14,21
22:22 24:3 25:7
25:24 28:23 34:24
64:6,15,24 65:16
67:17 68:13 69:3
69:22 77:20 79:4
80:1,11 81:7
135:1,4,6 156:19
168:15 215:16,17
216:12,20 356:7
366:14 369:7
422:19
**discretion** 318:22
**discuss** 65:19
172:24 361:2
428:15
**discussed** 138:13
338:23 357:16
384:20 405:25
467:16
**discussing** 192:11
224:15 382:4
**discussion** 90:18
93:6 147:8 171:6
189:12 198:7
211:10 327:7
347:4 379:24
383:10 389:7
392:16 425:22
462:6,15 467:19
471:4
**discussions** 90:13
90:17 357:15
425:14 426:13
**dismiss** 66:8 218:4
219:12 241:25
242:13 244:17
245:3 247:25
248:6,9 249:3
322:21 327:25

328:15 333:20
334:19 342:11
346:23
**dismissal** 231:17
242:23,25 243:25
307:2,22 321:2
330:16,25 335:8
335:25 336:14
338:24 375:2
439:2
**dismissals** 247:12
320:21 327:19
**dismissed** 73:8
74:12 75:20 199:2
225:25 232:4
248:13 310:15
318:8,8 320:13
330:3 342:19
375:11 440:10,25
**dismissing** 76:14
**disposition** 395:24
**dispute** 367:10
468:22
**disputing** 467:10
**disregard** 162:25
**dissemination**
280:22
**distribute** 252:21
**distributed** 430:14
**distribution** 110:5
**District** 1:1,2 8:8,9
185:5
**doctor** 135:18
**doctrine** 425:7
**document** 16:8
21:11 53:5,22
54:1,14 65:25
72:19 73:4,23
74:1,20 75:15
76:20 77:17 80:22
80:23 81:1,7,16
95:13 100:15
103:1,10 111:24
115:21 121:12
122:17,17,18
123:2,8,10 124:10

124:25 125:2,21
125:23 126:11
127:2 139:8
145:17 147:2,17
164:16 172:23
202:11 203:7
210:4 231:1
232:20 235:12
239:17 251:5
257:23 261:13
263:10 272:1,18
272:25 274:9,22
277:6 278:3 285:6
288:10 303:12
305:13,14 307:5
327:9 332:10
349:14,15,17,21
350:11 351:15
376:13 377:22
380:16 383:15
388:9 389:23
390:1 402:23
403:9 422:2,7,17
423:11 465:3,8,20
**documents** 35:11
35:12 41:7,14
46:13 48:12 61:6
63:9,16 72:7,15
94:18,25 95:19,19
96:17 97:2,3,7,10
100:7,22 101:8,9
103:8,8 104:24
105:8,21 106:12
108:9,20 110:4,14
112:13 116:5,10
117:6 118:16
123:1 124:4
126:18,18,20
127:8,23 128:6
132:13,13,25
133:1,7,10,11,13
134:1,2 137:10
138:2,2,6,20
139:22 140:8
146:8 150:10
164:7 197:23



| | | | | |
|---|---|---|---|---|
| 202:23 206:18 | 415:6 | **dozen** 174:4 232:20 | 442:19 465:7 | 41:13,13 51:7 |
| 217:22 220:18 | **doing** 42:4 58:25 | 459:22 | 466:11 | 119:1 206:6 212:5 |
| 222:11 232:21 | 71:21 72:6 148:16 | **dozens** 430:14 | **early** 88:3,19 93:14 | 215:16 216:5 |
| 236:13,17,19,21 | 175:18 243:23 | 431:13 | 94:11 | 422:6 424:10 |
| 237:19 254:5 | 248:10 258:11 | **Dr** 57:20 59:2,5,8 | **easier** 83:5 146:13 | 473:18 |
| 256:10 271:9 | 328:19 462:25 | 90:25 92:13,24 | 180:23 181:23 | **Emtal** 22:9 25:8,25 |
| 273:1,2,6 275:5 | **dollars** 13:2 348:16 | 96:16 128:5 | 183:25 184:2,21 | 61:16 62:5 66:21 |
| 276:1,25 277:3,13 | **Dornbusch** 3:10 | 135:13,15 208:15 | 185:24 226:24 | 68:15 81:21 82:24 |
| 279:15 280:7 | 9:19 48:21 55:5 | 209:16 210:1 | **easily** 226:22 | 84:8,14,21,23 |
| 282:8 296:21 | 55:15,20 88:18 | 290:4 292:18 | **Eastern** 330:3 | 85:7,13,14 87:18 |
| 341:17 349:2,7,8 | 90:2,6 102:6 | 297:10 336:12 | 360:6 363:11 | 100:7 105:23 |
| 349:18 361:9,12 | 107:1 112:24 | 460:13 | 372:11,20 | 106:13 107:5 |
| 361:13,15,16,21 | 113:3,9 120:11 | **draft** 140:15 | **easy** 150:9 180:12 | 128:20 129:10 |
| 363:9 364:11,21 | 121:18,23 122:1 | **drafted** 81:7 | **EC** 445:4 | 130:17 136:5 |
| 365:22,24 366:2,4 | 122:18 123:11 | 282:22 301:15 | **Economus** 232:4 | 151:11 152:15 |
| 366:7,11,15,19,22 | 125:14,24 133:6 | 309:1 | 320:13 | 168:13 174:16 |
| 367:1,1,17,22 | 133:16 134:11 | **drafting** 280:22 | **effect** 140:21 | 189:21,24 193:19 |
| 368:5,10 369:4,12 | 138:1 140:6,20 | 294:21 | 322:16 | 194:15,16 197:23 |
| 369:16,20 370:15 | 141:3 160:22 | **draw** 171:22 | **effort** 179:4 262:17 | 199:1 200:8,20 |
| 370:17,20 371:3 | 168:10 174:19 | **dropped** 199:2 | **efforts** 149:9 168:4 | 201:8,9 202:4,16 |
| 371:11,21 372:1,6 | 175:2 176:8,9 | 310:15 | **eight** 174:8 | 204:8,13 205:18 |
| 372:9,13 374:11 | 191:13 198:11 | **due** 199:1 220:5 | **either** 17:8 101:10 | 206:3 207:2,15 |
| 374:13 376:6,10 | 249:24 250:17,20 | 229:17 237:5 | 113:18 134:10 | 208:6 209:1,2,10 |
| 377:13,17,23,25 | 258:6 259:13 | 240:17 310:14 | 177:3 226:25 | 211:21 213:9,19 |
| 392:18 393:17 | 286:24 287:4 | 430:12 | 271:1 275:12 | 215:1,18 216:14 |
| 401:25 411:14 | 294:20 301:4,19 | **dug** 452:12 | 286:11 | 216:22 218:6,13 |
| 412:5,13 413:23 | 302:3 304:1,10 | **duly** 10:7 269:22 | **electronic** 358:8 | 219:13 220:10 |
| 414:11,22 419:8 | 305:10,19 306:2,6 | **duty** 19:2 21:25 | 472:1,21 | 221:12 223:15 |
| 419:18,25 420:9 | 306:15 368:2 | 22:8,23 23:7 | **elements** 221:22 | 226:1 228:24 |
| 422:4,13,22,25 | 404:13 409:3,10 | 24:18 99:1 | 324:16 | 229:12 230:11 |
| 423:3 427:20 | 410:16,23 411:4 | **DVD** 8:4 | **Elizabeth** 2:15 9:9 | 231:17 232:5,11 |
| 428:1 444:9 | 411:21 412:23 | **Dynatron/Bondo** | 42:11,24 44:8 | 237:22 242:1,14 |
| 450:20 455:22 | 414:21 450:3,5 | 360:9 361:24 | **elizabeth.dalmut...** | 242:21 243:8 |
| 460:12 463:13,23 | 451:18 454:5,11 | 373:9,14 374:1 | 2:16 | 244:2,17,22 |
| 465:9,11,17 466:1 | 454:17 455:8 | 375:25 400:7 | **Ellis** 1:14 2:19 9:7 | 247:11 248:2,8 |
| 466:2 467:16 | 476:20 | 407:20 409:6,11 | 9:10 39:10 | 249:3,4 259:10 |
| **document's** 403:15 | **Dornbusch's** | 409:16,22 411:22 | **Em** 228:8 | 261:7 282:24 |
| **document-control** | 137:15 175:23 | 412:24 417:23 | **employ** 257:16 | 310:15 317:9,11 |
| 452:8 | 198:3 287:19 | 421:9 | **employed** 478:13 | 320:14,17 322:3 |
| **document-retenti...** | 293:13 296:3,10 | **D.C** 1:16 2:21 | 478:17 | 324:13 333:7 |
| 78:13,19 137:17 | 302:16 415:9 | | **employee** 203:19 | 335:10 339:19 |
| 148:3 150:21 | 454:4 | **E** | 203:25 204:4 | 341:25 353:6,7 |
| 176:14 338:14 | **double-negative** | **E** 478:1 | 206:25 207:13 | 359:2 360:12 |
| 401:24 402:10,13 | 407:4 | **earlier** 108:25 | 208:2 255:1 257:8 | 364:17 374:17 |
| 402:17 403:3 | **doubt** 236:3 245:20 | 318:12 392:17 | 257:11 478:16 | 390:24 391:10 |
| 413:24 414:15,19 | 325:1 | 423:6 434:10 | **employees** 41:12,12 | 397:23 404:7 |



405:18 406:6,17
411:5 424:20
430:2 440:9
**enclose** 320:18
**encompassing**
311:10
**ended** 105:8 127:8
127:10 128:7,20
129:10 296:12,15
296:17,17 374:11
376:4 398:6 418:7
418:9
**endemic** 181:6
**ends** 308:3 444:23
**engaging** 171:18
**Engelhard** 6:20
12:3 41:11,21
43:7 48:15 52:10
59:15 62:10 65:20
66:9 69:4 73:9
74:13 77:21 80:13
81:8,20 82:22
83:12,23 84:9,11
84:19,22 85:8
88:14 93:17 94:14
95:20 97:2,3
101:7,10,23
103:16 104:23,25
105:1,9,22,24
107:6,18 110:2,3
110:4,14 117:25
119:1,16 126:19
127:21 128:19
129:9 130:16
131:4,6 132:12
133:2,3,7,12,13
134:4,25 135:9,22
136:18 137:1,5,10
137:17,20 139:18
141:16 147:24
151:10 157:15
189:20 190:24
191:19 192:15
197:20 203:12,19
204:4,23 205:15
205:25 206:6,7,25

207:9,12 208:2
209:8 211:18
212:4,7,9 213:20
213:22 214:9,16
214:24 215:10,15
215:19 216:5,12
216:21 218:2
219:11 220:11,17
220:22 221:1,10
223:12 228:22
233:16,20,24
235:7,14,19 236:5
241:25 243:7
245:21 246:2,21
247:9,24 249:13
249:20 251:14,24
256:9,17 257:1,8
257:10,19 258:22
265:9 270:14,22
271:1,25 272:15
274:24 281:25
289:19,25 291:14
295:22 299:3,6,12
299:24 314:18
320:10 328:1
330:7,12 331:23
333:5 338:1,5
347:15 350:1
352:7,12 353:5
359:10 373:21
374:6 375:1,8,14
378:11,16,23
379:4,11,13 380:3
382:12 383:1
387:1 388:1 389:9
391:16 396:20
397:7 398:14,19
400:10 401:13
403:18 405:13,17
406:4,23 409:17
409:22 410:12,24
417:5 418:1,17
419:9 424:22
425:24 434:20
440:7 445:6
446:25 449:22

454:10 470:15
**Engelhard's** 78:13
168:11 380:16
396:15 418:8
434:23 437:21
**Engelhard** 249:22
382:5
**Engelhard's** 246:3
422:4
**ensure** 36:8
**entered** 307:16
381:3
**entire** 46:25 272:11
342:2 397:1,4
404:4
**entirely** 271:18
**entities** 430:15
**entitled** 340:22
**entry** 303:17 356:5
408:20,24 411:10
**enumerated** 137:25
**Eric** 3:19 338:21
476:21
**Ernst** 6:14 351:19
351:23 352:6
**especially** 180:10
**ESQUIRE** 2:3,5,13
2:15,17 3:2,11,19
**essence** 38:6 271:16
321:15,19
**essentially** 109:24
255:20
**estimate** 471:6
**et** 1:4,7 8:7,7
307:22
**etunis@heroldla...**
3:20
**evaluation** 193:5
**everybody** 173:6
295:8 338:5 351:9
463:8
**evidence** 131:3
151:11 188:19
189:21 201:9
202:4 204:7,12
208:5 209:2

211:20 213:9,19
215:1 216:13
232:9 234:10,13
235:12 236:2,22
237:21 238:16
240:8 274:21
299:5,7 302:9,15
320:16 327:25
404:7 413:14,22
449:12
**evidenced** 370:9
**evolved** 460:22
469:10
**evolving** 460:23
**exact** 82:3 88:21
125:23 198:6
257:16 303:19
305:8 306:12,13
373:2 412:18
**exactly** 29:18 42:5
76:4 94:24 116:7
116:8 128:1
130:15 175:4,7
203:8 214:16
345:23 372:12,16
374:5,7 418:16
**EXAMINATION**
4:3 10:10
**examined** 10:8
470:14
**example** 35:14 38:5
44:16 46:22 75:2
75:9 79:17 83:18
115:19 130:12
225:24 226:2
253:18 276:3
280:19 350:8
368:1 373:21
415:24 433:10
438:11 450:3
460:21
**examples** 46:15
83:17 115:25
218:10 438:16
**exceed** 14:22
**exception** 196:1

**exceptions** 348:16
**excerpt** 5:4 300:12
**Excerpted** 4:11
**excluded** 475:24
**exclusively** 34:4
**excuse** 12:25 32:11
53:15,15 99:23,24
162:13 229:2
276:7 357:14
362:7 366:18
**excused** 169:23
**execute** 269:23
297:18
**executed** 271:24
302:4 303:20
304:13
**executives** 193:9
**Exhibit** 4:7,9,11,12
4:16,21 8:1,1 54:7
54:15,17 111:23
111:25 114:20,21
139:9,12 152:3
195:12 210:3,5
231:2,5 239:15,18
241:19 251:6,10
257:22,24 258:1
263:22 268:2,22
269:14 288:9,11
300:14 307:6,8
327:10,12 332:11
348:1 351:14,16
351:18 376:14
383:16 429:13
443:16 444:1
449:9 462:17
**exhibits** 4:5 5:1
46:17 114:24
115:8 136:2,4,21
137:4,20 367:25
370:10
**exist** 149:16 313:12
343:17 355:7
357:11,17 359:16
423:23 434:12,17
**existed** 115:23
116:8 118:22



296:1,22 380:18
**existing** 296:19
**exists** 313:11 410:6
  414:8
**expect** 41:1 188:16
  341:11 347:1
**expecting** 410:23
**experienced** 181:12
  186:20
**expert** 203:1 238:6
  319:17 437:21
  449:1
**experts** 339:18
**expiration** 303:11
**explain** 365:21
**explained** 178:12
  178:15
**explaining** 181:7
**exposed** 68:15,15
**exposure** 199:1
  228:7,7 310:14
  324:19 440:9
  449:25
**expressly** 168:17
**extensively** 91:12
**extent** 106:4 147:16
  172:15 200:3
  201:14,20 202:9
  215:8 230:14
  255:25 343:16
  356:19 393:15
  394:2 427:8
  442:24
**extracted** 44:13

———————
**F**
**F** 371:23 478:1
**facilitating** 287:6
  301:21
**facility** 225:20
  226:23
**fact** 37:13 63:24
  72:12 87:25
  106:13,23 163:2
  164:4,15 178:13
  184:18 188:19

191:13 206:16
214:14 219:25
236:18 239:22
243:7 244:1 248:7
249:3 265:25
285:15 295:20
306:5 313:11
327:24 339:8
340:24 356:7
357:16 369:6
370:9 422:19
439:7 452:11
454:7
**factors** 430:10
**facts** 23:24 28:10
  28:22 29:9 30:21
  31:11 34:14 35:25
  62:4 153:10
  161:15 205:16
  206:1 207:13,14
  217:11 222:9
  225:17 253:12,13
  253:13,16 267:4
  328:17 331:11
  339:17 340:25
  343:4 387:21
  388:18 389:1,17
  390:15 397:25
  398:12 400:5
  407:15 423:20
  431:7 446:19
  458:22
**factual** 35:18,25
  51:24 199:7 201:6
  201:22 203:17
  208:25 232:14
  233:1,4,11 252:25
  253:4,5 281:9,23
  330:15,18 331:8
  342:17 343:1
  345:16 346:1
  431:2 432:6
  449:15,20 451:6
  451:10 473:24
**fair** 34:12 68:23
  75:11 87:2,4

120:11 123:11
130:17 135:2
137:20 147:18
194:5 203:19
224:2,4 282:10
284:9 298:12,17
299:10 349:20
359:9,20 382:2
383:4 405:4
406:21 426:16
439:16 447:20
462:21
**fairly** 230:13
  362:23
**faith** 457:20
**falls** 197:9
**false** 27:8,13
  255:13,25 256:3
**familiar** 135:4
  139:13 213:14
  381:14 384:23
  448:11
**far** 12:18 130:14
  167:17 296:14
  399:24
**Farrell** 2:13 9:6,6
  11:4,14,23 12:7
  12:15,21 13:5,11
  14:7,13,24 15:9
  15:16 16:3,18,21
  17:3,9,17 18:2,8
  18:18 19:4,15,22
  19:24 20:3,7,13
  20:23 21:3,16
  22:2,11,25 23:10
  23:20 24:6,20
  25:9 26:21 27:2
  27:10,19 28:3,12
  28:25 29:12,24
  30:14,23 31:15,23
  32:6,11,14,18,21
  33:6,20,23 34:6
  34:17 35:2,21
  36:12 37:4,15,24
  38:5,8,15,19 39:8
  40:4,19 41:24

42:22 44:4,14
45:19 47:13,24
48:7,17 49:4,15
49:24 50:14 51:9
51:17 52:3,13,24
53:2,11,15,20
54:8 55:10,24
56:4,13,20 57:2,9
57:16 58:1,13
60:16 61:19 62:7
62:17 64:9,18
65:3,12,22 66:10
66:22 67:9,21
68:5,17 69:6,16
69:25 70:8,16
71:5,13 72:1 73:1
73:12,20 74:4,16
75:22,25 76:16
77:8,23 78:14
79:6,11 80:4,14
80:24 81:9,22
82:6,25 83:14,24
84:16 85:10 86:3
86:13 87:11 88:1
88:4,15 89:17
90:9 91:9 92:3,15
92:19 93:18 94:15
95:8,22 96:6,20
97:15 98:7,16
99:8,15,23 100:9
101:16 102:3,18
102:22 103:18,22
104:17 105:11
106:1,16 107:10
107:15,22 108:10
108:21 109:10,14
109:23 110:16,21
111:15 112:7,9
113:4,24 114:8,12
114:15 115:2,10
116:16,25 117:10
118:5,19 119:10
120:12,16 121:6
121:13 122:7,20
123:12,19,24
124:12,17,21

125:3,6,15 126:1
126:12,23 127:12
127:24 128:9,22
129:1,14 130:5,18
131:7,19,22 132:7
133:4,14 134:5,16
136:13,23 137:7
137:21 138:9,22
140:1,17,25 141:4
141:22 142:7,15
142:21 143:17
144:2 145:3,12
146:7,14,24 148:6
148:20 149:7,11
150:6,12,19 151:3
151:19 152:12,19
152:23 153:17,24
154:9,16,19 155:8
155:19 156:5,21
156:24 157:10,22
158:5,18,25 159:9
159:13,18,21
160:3,16 161:3,14
162:1,10,13,19
164:1 165:14,25
166:12,17,25
167:4,15 170:4,9
170:22,25 173:24
174:1 175:4,7
177:12,15,20
180:15 181:7,15
182:4,9,18 183:19
184:12 185:11
186:2,10 188:5,11
189:2,5,11 190:2
190:7,12 191:3,21
192:1,19 193:13
193:21 194:6,18
195:7,13,17 196:5
196:24 197:15,24
198:15 200:9,12
200:23 201:10
202:5 203:2,20
204:14 205:9,19
206:4 207:3,16
208:7,20 209:3,15

210:9,20 211:4,22
212:12,19 213:1
213:11,24 214:7
214:21 215:6,20
216:2,15,24 218:7
218:25 219:7,15
220:12 221:13,17
222:19 223:1,7,16
224:8 225:12,16
226:7,11,19 227:7
227:24 228:11
229:1,3,13,19
230:1,19 231:19
232:16 233:17,25
234:18 235:2,15
236:10,24 237:8
237:12,23 238:1,5
238:18 239:1,5,8
239:12 240:9,19
240:23 241:3,7,11
242:3,16 243:10
244:3,6 245:11,22
246:5,16 247:13
248:3,22 249:16
252:1 253:2,14
254:1,10,19
255:14 256:14
257:4,13 258:13
258:25 259:11
260:2,7,20 261:16
262:7,20 263:8
264:15 265:1,6,14
266:2,23 267:3,20
270:16 272:4,20
273:14 274:4,11
274:25 275:13,17
276:7,13,18
277:15,22 278:10
278:15,18,21
279:4,11,18,24
280:16 281:5,12
281:17 282:3
283:3,12,23
284:10,20 285:11
285:21 286:3,14
287:1,12,15 288:2

289:8,11 290:11
290:15,23,25
292:4 294:5,12
295:2,16 296:5
297:2,20,23
298:18 299:13
300:19 301:6
302:6,10,12,24
304:14,18,20
305:11 306:9,19
307:12 308:9,23
309:8,16 310:11
311:5 312:1,5,10
312:13,23 313:5
314:10 315:10
316:2,19 318:5,10
320:2 321:4 322:7
322:23 323:2,24
325:8,14,19
326:18,22 327:4
328:2,9,16 329:11
330:9,19 331:12
331:16,25 332:16
333:8,22 334:3,22
335:18 336:19
337:5,17 338:3
339:23 340:4,8,13
340:16 341:4,7
342:21 343:11
344:1,15 345:1,19
346:5,17 347:19
348:25 349:6,12
350:4,20,25
352:16 353:10,18
354:8 355:4,13,18
356:1,15 357:1,7
357:12 358:1,9,18
358:22 359:17,21
360:23 361:17
362:7,16 363:4,15
363:20,24 364:2
364:23 365:12,14
365:16,20 366:18
367:6,9,20 368:4
368:22,25 369:3
369:16,23 370:3,7

370:17,22 371:5
371:10,16 372:21
373:5,11 375:20
377:1,13,20
378:18,24 379:18
380:11,19 381:11
381:18 382:6
383:2 384:11
385:14 386:7
387:20 388:17,25
389:16 390:5,14
391:1,12 392:6,13
393:3,12,25
394:12,19 395:4
395:11,19 396:4
396:22 397:13,16
397:24 398:11,25
399:9,14 400:4,12
400:16 401:1,15
402:2,6,11,19,22
403:1,20 404:8,22
405:5,20 406:8
407:1,14 408:9,11
408:14,16 409:13
409:25 410:18
411:16 412:7,15
413:1,5,15,18
414:24 415:7,18
416:4,13,17,25
417:17 418:3
419:13 420:1,4,19
421:7 422:14
423:4,12,19 424:3
424:12 425:1,19
426:4,9,17 427:2
427:14,21 428:11
428:20 429:4,17
430:3 431:4,8
432:9 433:1,24
435:2,14,24 436:3
436:12,25 437:12
438:3 439:4,17
440:2,17 441:1,10
441:17 442:2,16
443:20,23 444:25
445:17 446:3

447:2,5 448:5,22
449:5,17 450:9
451:7 452:14
453:8,24 454:19
454:24 455:14
456:4,15 457:7,15
458:3,15 459:3,18
460:15 461:4,10
461:13 462:10
463:15 464:5,12
466:10,22 467:9
467:13 468:7,15
469:17,21 470:18
471:12 472:3,14
473:12 474:3,8
475:1,10,25
476:12
**Fed.R.Civ.P** 4:20
4:24
**feel** 49:9 75:4 280:6
344:18 361:4
362:22 420:24
**feeling** 214:9 323:5
**felt** 48:10 49:6,17
50:17,25
**Fields** 63:13 236:18
433:9 461:3
463:11 466:16
467:1,2
**Fifteenth** 1:15 2:20
**fight** 249:8 312:20
367:14 371:9
**figure** 201:2 205:2
261:19,24 418:22
448:15
**figured** 114:2
**file** 80:13 92:24
109:7 116:4
120:10 121:17
122:15 296:4,16
296:18 321:22
342:7 346:2 371:3
376:25 377:3
446:18 448:2,4
**filed** 84:8,10 166:6
173:4 327:20

363:10,22
**files** 89:14 116:3
124:10 125:1,22
141:17 143:21,22
157:15,15 197:12
296:12 323:13
324:3 325:5
331:23 343:16
362:4,5,15,19
363:2,14 365:9,14
367:18 368:10,16
368:20 390:11
392:4 402:24
404:5 417:15,20
417:22,23,24
418:1,5,14 431:12
434:15 471:19
472:2
**fill** 411:7 417:15,24
**filled** 45:12
**fillers** 230:14
**final** 139:20,24
140:16,22 308:3
373:3 395:24
411:9 412:5,13
414:14 415:5
**finalize** 282:23
**finalized** 411:9
**financially** 478:18
**find** 42:21 50:11
89:23 90:6 95:7
132:5 173:17
189:25 191:10
192:8 262:4
315:19 332:8
343:15 358:15
410:5 434:18
435:8 446:21
**fine** 10:14 142:22
157:18 171:11
180:5 182:16
183:3,18 185:25
188:13,16 217:24
238:11,17 286:1
327:6 350:17
377:25



**finish** 372:15,19
395:7,12 470:8
**finished** 162:14
260:7 302:10
372:25
**finishing** 189:18
**firm** 35:8,9 36:4
40:11 135:1 157:4
170:15
**first** 10:6 13:24
44:17 84:7 102:6
102:9 103:1 104:2
105:2 118:9
141:13 168:8
174:6 180:2
204:11 221:23
223:18 225:18
232:18 278:18
282:6 299:23
303:24 320:10
334:23 349:15
350:10 368:22
373:1 374:25
384:1 409:21
413:20 414:1
418:1 419:9 438:5
444:2 461:25
468:21 478:8
**firsthand** 205:15
205:25 206:25
208:3
**five** 62:24 178:25
368:20 399:5
400:3,10,15,24
421:15
**five-plus** 174:6
**Fliegel** 7:2 48:24
49:23 50:8 51:15
51:25 249:12
251:1 258:3
286:24 287:5
294:21 301:4,20
302:3 450:6 452:1
**Fliegel/Greenber...**
453:21
**flipping** 473:4

**focus** 82:17
**focusing** 83:9 354:2
**folks** 188:1
**follow** 24:13 180:7
416:8
**following** 201:1
229:22 250:21
**follows** 10:8 15:23
25:17 39:23 74:9
94:4 163:16
**follow-up** 248:18
**foregoing** 252:11
270:4 288:22
289:4 478:6,7
**foremost** 221:23
**forgot** 282:6 338:12
408:2
**form** 11:4,14,23
12:7,15,21 13:5
13:11 14:7,13,24
15:9,14 16:3,21
17:17 18:18 19:4
19:15 20:13 21:3
21:16 22:2,11,25
23:10,20 24:6,20
25:9 26:21 27:10
27:19 28:3,12,25
29:12,24 30:14,23
31:15 33:6,23
34:6,17 35:2,21
36:12 37:4,15
38:8,16,19 39:8
40:19 41:24 42:22
44:4,14 45:19
47:13,24 48:17
49:4,15,24 50:14
51:9,17 52:13
53:2,7 55:11,25
56:4,13,20 57:2,9
58:1,13 60:16
61:19 64:9,18
65:3,12,22 66:10
66:22 67:9,21
68:17 69:6,16,25
70:8,16 71:5
73:12 74:24 75:25

76:16 77:8,23
78:14 79:6,11
80:4,14 81:9,22
82:25 83:14 84:16
85:10 86:3,13
87:11 88:1,4,15
89:14,17 90:9
91:9 92:3,19
93:18 94:24 95:8
95:22 96:20 97:15
98:7,16 99:8,18
99:25 101:16
102:3,22 103:19
103:22 104:17
105:11 106:1,16
107:10,15,22
108:10,21 109:14
109:23 110:16,21
111:15 112:9
113:4,13,24 115:2
117:10 118:19
119:10 120:12,20
121:6 122:7,20
123:12,24 125:6
126:1,23 127:12
127:24 128:9,22
129:14 130:5,18
131:7,22 132:7,15
133:4,14 134:5,16
136:13,23 137:7
137:21 138:9,22
140:1,17 141:4,24
143:17 144:2
145:3,12 146:24
148:6,20 149:11
150:6,12 151:3,19
152:12,20,23
153:17,24 154:9
154:19 155:8
156:5,24 157:10
157:22 158:5
160:3 161:3,14
162:1 165:25
177:4 179:20,25
180:17 181:20
183:22 184:23

185:2 191:3,21
192:1,19 193:13
193:21 194:6,18
195:7 196:5,24
197:15,24 198:15
200:12 201:10
202:5 203:2,20
204:14 205:9,19
207:3,16 208:7,20
209:3,15 211:22
212:12 213:1,11
213:24 214:21
215:6,20 216:2,15
216:24 218:7
219:15 220:12
221:14,17 223:16
224:8 225:16
226:19 227:7,24
228:11 229:3,14
230:1,19 231:19
232:16 233:17,25
234:18 235:2,15
236:10,24 238:5
242:3,16 243:10
244:6 245:11,22
246:5,16 247:13
248:3,22 249:16
252:1 253:2,14
254:1,10,19
255:14 256:14
257:4,13 258:13
258:25 259:11
260:2,8,20 261:16
262:7,20 264:15
265:2,6,14 266:2
266:24 267:3,20
272:4,20 273:14
274:5,11,25
275:17 277:15,22
278:10 279:4,11
279:24 280:16
281:5,12,17 282:3
283:3,12,23
284:10 285:11
286:3,14 287:1,15
288:2 289:11

294:5,12 295:2,17
296:5 297:2,23
298:18 299:13
300:19 301:6
302:7,12 304:14
305:11 306:9,19
307:12 308:9,23
309:8 310:1 311:5
312:1,5,24 314:10
315:10 316:2,19
318:10 321:4
322:7,23 323:2,24
325:8,19 326:19
326:22 328:2,9,16
329:11 330:9,19
331:13,16,25
332:16 333:8,22
334:21,22 335:18
336:19 337:5,17
338:3 342:21
343:11 344:2,15
345:1,19 346:5,17
347:19 348:25
350:4,20,25
352:16 353:10,18
354:8 355:4,13,18
356:1,15 357:1,7
357:12 358:1,9,19
358:22 359:18
360:23 362:8,16
363:4 364:2,23
365:12 372:21
373:5,11 375:20
377:1 378:18,24
379:18 380:11,19
381:11,18 382:6
383:2 384:11
385:14 386:7
387:20 388:17,25
389:16 390:5,14
391:1,12 392:6,13
393:3,12 395:20
396:4,22 397:16
397:24 398:11,25
399:10 400:4,12
400:16 401:1,15



402:3,6,11,22
403:1,20 404:8
405:5,20 406:8
407:1,14 409:13
409:25 410:18
411:16 412:7
413:5,10,18
414:24 415:18
416:4,17,25
417:17 418:3
419:13 420:4,19
421:7 422:14
423:4,19 424:12
425:1 426:4,9,17
427:2,14,21
428:11,20 429:4
430:3 431:8 432:9
433:1,24 435:2,14
436:12,25 437:12
438:3 439:4,17
440:17 441:1,10
442:2,16 444:25
445:17 446:3
447:5 448:5,22
449:17 450:9
451:7 452:14
453:8,24 454:19
454:24 456:15
457:7,15 458:3
459:3,18 460:15
463:15 464:5
466:10 468:15
469:21 470:18
471:12 472:2,3,12
472:14 473:12
474:4,8 475:1,11
475:25
**former** 51:6 95:3
119:1
**formulations** 174:4
**forth** 252:7 269:25
328:22 458:23
478:10
**forward** 183:6
208:3,24
**forwarded** 335:6

**found** 120:9 121:12
121:20 124:10
125:1,22 209:13
297:17 299:19
333:6 402:7
**foundation** 11:15
11:24 12:8 13:12
14:14,25 15:10
16:4,22 17:18
18:19 19:5,16
20:14 21:4,17
22:3,12 23:1,11
24:7,21 25:10
26:22 27:20 28:13
29:1,13,25 30:15
30:24 31:16 33:7
33:24 34:7,18
35:3,22 36:13
37:5,16 38:9,20
39:9 40:20 45:20
47:14,25 48:18
49:5,16,25 50:15
51:10,18 52:14
53:3 55:11 56:5
56:14,21 57:3,10
58:14 60:17 61:20
65:4,13,23 66:11
66:23 67:10,22
68:18 69:7,17
70:1,9,17 71:6
73:13 74:24 76:1
76:17 77:9,24
78:15 80:5,15
81:10,23 88:5
89:18 90:10 91:10
92:4,20 93:19
95:9 96:21 98:8
98:17 99:9,25
101:18 102:23
103:23 104:18
106:2,17 107:23
108:11,22 110:17
110:22 113:14,25
115:3 117:11
118:20 119:11
120:13 121:7

122:8,21 123:13
123:25 125:7
126:2,24 127:13
128:10,23 129:15
130:6,19 131:8
132:16 134:6
138:10,23 140:2
140:18 141:5,24
143:18 144:3
145:4,13 146:25
148:7,17,21
149:12 150:7,13
151:4,20 152:24
153:18,25 154:10
154:20 155:9
156:6 158:6 160:4
161:4,15 162:2
166:1 175:14
176:18 192:20
193:14,22 194:7
194:19 195:8
196:6,25 197:16
197:25 198:16
200:13 201:11
202:6 203:3,17,21
204:15 205:10,20
207:4,17 208:8
209:4,16 211:23
212:13 213:2,12
213:25 214:22
215:7 216:3,16,25
218:8 219:16
220:13 221:18
223:17 225:17
226:20 227:8
228:12 229:4,14
230:2,20 232:17
233:18 234:1,19
235:3,16 236:25
238:6 242:4,17
243:11 244:7
245:23 246:6,17
247:14 248:4,23
249:17 253:15
254:2,11 255:15
256:15 257:5,14

258:14 259:1,12
260:3,8,21 261:17
262:8,21 264:16
265:7,15 266:3
267:4,21 272:5,21
273:15 274:12
275:1,18 277:16
277:23 278:11
279:5,12,25
281:13,18 282:4
283:13,24 284:11
285:12 287:2,16
289:12 294:6,13
295:3 296:6 297:3
297:24 298:19
299:14 300:20
302:13 304:15
306:20 309:9
310:2 312:6,24
316:3 321:5 322:8
323:3,25 325:9,20
326:23 328:17
329:12 330:10,20
331:17 332:1
333:9,24 342:22
343:12 344:2
345:2 346:18
350:5 352:17
354:9 355:5,19
356:2,16 357:13
358:2,10,23
359:21 360:24
362:8,17 363:5
364:3,24 373:12
377:2 380:20
385:15 387:21
388:18 389:1,17
390:6,15 391:2,13
392:7,14 393:4,13
395:20 396:5,23
397:25 398:12
399:1,10 400:5,13
400:17 401:2,16
402:12,23 403:2
403:21 404:9
405:6,21 406:9

407:2,15 409:14
410:1,19 411:17
412:8 413:6,10,19
414:25 415:19
416:5,18 417:1,18
418:4 419:14
420:5,20 422:15
423:5,20 424:13
425:2 426:5,10,18
427:3,15,22
428:12,21 429:5
431:9 432:10
433:2,25 435:3,15
436:13 437:1,13
439:5,18 440:18
441:2,11 442:3,17
446:4 447:6 448:6
448:23 449:18
450:10 451:8
452:15 453:9,25
454:25 456:16
457:16 458:4
459:4,19 460:16
464:6 466:11
468:16 469:22
470:19 471:13
472:4,15 473:13
474:9 475:2,11
476:1
**four** 129:2 180:4
228:14 398:22
450:22
**four-hour** 464:15
**FR** 444:23
**frame** 429:24
**fraud** 224:19
324:21
**FRE** 308:3
**Friedman** 408:24
411:21
**front** 21:12 44:2
75:16 76:10 77:2
78:25 79:21 81:16
82:2 152:3 190:11
216:9 231:4
241:18 251:8



262:25 268:5,22
269:15 319:24
353:13 408:2
444:5 468:23
**full** 117:23 123:22
171:10 178:25
268:7 294:24
297:14 365:6,9
**fully** 169:8 340:23
**function** 447:10
**further** 159:3 164:9
165:2 186:23
226:25 366:7,10
411:2 422:16
425:3 430:22
466:17 470:19
478:11,15
**Furthermore**
313:19

### G

**Gale** 46:23 59:10
135:19 337:16
**game** 181:10
**gander** 183:17
**gap** 411:8,11,13
413:13 414:4
415:23
**gaps** 405:2 417:16
417:20,25
**gathered** 266:9
**gathering** 264:10
266:7,17 267:7
274:16
**general** 43:17
82:19,22 83:11
118:10 138:1
160:20 175:15
200:7 214:8,9
215:25 217:7
218:15 234:16
243:17 247:23,23
250:4 259:17,21
260:14 354:16
**generally** 11:16
63:7 300:9 328:6

328:14 406:3
463:17
**generate** 316:1,17
318:1 319:11
**generated** 42:25
101:7 110:2
387:25 441:6
**generating** 346:10
**generation** 441:19
**getting** 49:7 75:21
106:22 163:9
164:20 237:1
247:24 328:15
340:19,25 371:13
**give** 68:1 83:16
177:18 195:13
209:25 234:15
299:4 310:9
339:16 351:8
372:14,18 433:17
443:16 461:24
462:2 470:8
**given** 41:18 42:11
63:9 84:21 87:1
87:25 88:9 152:14
155:5 164:24
168:14 172:15
173:9 174:15
179:15 184:16
186:22 208:18
236:17 271:11
287:20 349:18
466:19
**gives** 144:16 305:15
308:2
**giving** 40:17 310:7
466:8
**glean** 409:19
**Glenn** 5:5 57:20
**go** 41:25 55:1 72:17
74:25 79:3 89:4
103:4 124:1 139:1
141:7 144:14,22
150:18 157:18
164:14 165:23
166:4 173:6 181:9

183:6 184:25
187:16,19,21
195:16,21 197:21
209:6 218:1
226:25 227:17
230:5 239:1,12
243:21 252:17
254:23 263:21,22
264:6 268:15
276:18,21 277:5
281:4,6 286:18
290:7,23 302:19
303:15 315:21
334:5 336:3
338:19 343:15
352:19 357:19
368:13 372:23
377:9 378:1
379:22 385:1
388:1 395:1 408:8
408:18 411:1
419:7 433:21
434:7,14 446:18
448:2 454:14
**goes** 240:11 244:18
246:19 289:24
292:20 314:15
**going** 9:24 33:17
73:24 82:8 100:23
107:20 108:8
120:2 141:2
143:21 146:7,12
146:14,15,17,18
166:13,21 167:15
173:14 177:21
180:13,20 181:22
182:13 186:8
188:3 195:11
209:24 210:23
239:20 249:7
255:7 258:9 263:8
263:9,14 270:10
276:16,17 287:11
288:8 290:21
300:10 304:11
312:20 313:18

327:5 336:2,3
347:7 350:2
368:13 371:8,8
391:22,23 394:12
394:24 395:7
399:20 404:1,2
410:13 411:20
417:5,7,10 418:17
419:1 421:21
426:24,25 456:20
456:20 461:8,19
461:21,23 462:1
462:20 469:13
470:7 472:2 477:1
**going-forward**
180:14
**Gonzales** 320:20
321:20
**good** 8:24 9:1,11
10:12,14 44:7
75:1,4 181:11
186:20 189:9
296:13 333:14
420:24 433:10
473:3
**good-faith** 179:3
**goose** 183:16
**Gordon** 83:13
84:15 85:5 97:1,4
97:6,9,12,22
100:6 102:17
105:24,25 106:6
106:14 107:7
113:11 126:19
128:19 131:4
134:25 215:10
231:6,14 234:15
332:14,14,21
347:14 351:20,22
351:23 444:17
**gotten** 50:22
180:10
**Graham** 46:24
**great** 32:21 56:8
240:1 425:11
**Greenberg** 57:13

450:6 452:4
**groundless** 179:5
**grounds** 168:20,21
181:8 240:23
**group** 203:6 376:19
442:6 459:25
**guess** 49:6 50:25
92:5 94:17 101:10
114:1 222:21
223:18 225:2
244:10 246:18
255:16 256:16
275:24,24 288:5
297:5 300:21
316:4,21 330:21
344:17 362:18
**guidance** 184:16
188:6
**guided** 184:7
**guys** 189:1

### H

**H** 3:2
**half** 167:8,16,17
174:4 182:10
401:6 405:8
415:23 459:22
**Halket** 3:18 47:6
50:8 56:17 450:3
450:5 451:20
**HAMILTON** 3:4
**hand** 53:25 299:9
301:5 333:5
355:17
**handled** 43:6
413:23
**handling** 41:21
318:23 381:9,17
381:20
**happen** 88:10
109:13,17 276:24
416:10
**happened** 45:18
92:14 115:14
116:3 117:14
130:23 132:12



133:25 136:11,20
137:5 192:5
215:22 256:12
259:22 275:10
315:8,25 316:18
316:23 318:4
343:10 389:21
407:24 415:15
417:3 460:12
465:9
**happens** 389:15
**happy** 110:12
183:4,7 188:17
268:12 334:5
365:20 368:13
460:25 462:13
**harass** 443:8
**harassed** 168:23
169:23
**harassing** 126:3
160:8 162:4,21
165:15 166:2
168:2 169:11
178:4 429:6
437:14 459:5,20
**hard** 43:19 78:24
150:16 357:5
358:21 419:2
443:12 446:16
**harm** 339:9
**harmful** 44:23
**Harshaw** 225:24
226:1
**Hassett** 57:6
348:23 350:9
450:6 451:23
452:10 453:4
454:17 455:8
**Hassett's** 452:15,18
454:5,9
**head** 58:4 95:4
249:22 261:24
313:22 344:8
**heading** 305:18
**headquarters**
97:14

**heads** 346:12
**health** 85:13
**hear** 31:2 121:2
170:20 186:13
191:16
**heard** 297:16
380:22
**hears** 23:13
**heart** 442:22
**heavy** 372:7
**held** 102:11 103:9
147:8 189:12
211:10 327:7
347:4 379:24
383:10 462:6,15
**help** 175:20 186:22
188:10,17,21
293:19 327:25
**helpful** 185:16
419:7,12
**Hemstock** 5:5
57:21 59:2,5,8
90:24,25 92:13,24
96:16 102:8,15
103:15 128:5
135:12,13 208:15
210:1 337:16
450:4 460:13
**Hemstock's** 109:7
209:16 333:16
**HEROLD** 3:21
**her/his** 440:8
**he'll** 187:1
**Hi** 9:2,17
**high** 103:2 150:2
192:11 354:14,22
354:25 387:11
**highlighted** 231:25
345:18 430:24
462:11
**highly** 260:12
**high-level** 164:10
**Hills** 10:16
**hindsight** 256:4
**hire** 36:17 261:20
**hired** 36:5 84:20

119:15 203:1,5
235:20 259:4
261:1,21
**hires** 35:8 40:11
**historical** 202:13
**historically** 40:16
**history** 176:25
**hold** 120:18 177:6
197:20 198:6,14
403:11,13,16
404:6,12 413:9
476:17
**holds** 404:17
**Honestly** 277:17
**Honor** 166:25
169:24,25 170:14
171:1,21 173:22
174:1,22 175:5,8
177:21 178:2,24
181:16 182:5
183:20,23 184:12
184:16 186:1,3
188:7,14 189:4
**hope** 184:6 187:10
189:1 347:1
**hotel** 372:2 421:5
**hour** 12:16 263:9
278:19 334:12
421:18
**hours** 167:8,16
170:25 171:15
187:15,17 395:12
**Howard** 135:23
250:8 332:21
333:3 344:5,12,24
345:11 348:22
381:9,13 382:22
**huge** 210:12
**hundreds** 199:19
225:6 311:18
438:14,16,16
**Hyde** 104:14 107:7
108:19 111:4
112:24 113:19
117:7 118:15
125:24 126:21

127:5,19 132:14
132:21 133:21
134:11

**I**

**ID** 221:24 229:18
**idea** 43:14,17 52:19
116:23 150:9
158:23 159:7
182:11 222:24
228:16 304:11
305:14,23,25
322:11 342:2,5
357:23 385:25
414:6 417:11
**identical** 227:13
**identification** 8:2
224:11 226:5
227:5 268:3
300:15 348:2
462:18
**identify** 54:12
207:12 254:25
263:24 307:15
361:21 374:19,20
376:2 430:5 440:6
444:8,10,11
**identity** 200:24
**imagine** 174:22
234:2 351:3
445:22
**implement** 234:22
235:21 246:24
247:19 300:25
**implications** 13:15
18:22 26:6,9
28:17
**implies** 256:1
**imply** 267:8
**implying** 299:5
**important** 93:3
114:4 165:1 222:3
318:25 319:3
336:5
**impossible** 222:16
324:10

**impression** 389:11
425:21
**improper** 162:21
163:8,11 369:8,9
**inaccuracies**
325:25
**inadequately** 179:2
**inadvertent** 399:16
**inappropriate**
179:16 180:8
**incident** 97:17 98:1
100:11
**include** 30:11 85:20
224:6,10 253:23
305:18 314:21
**included** 30:7
42:15,17 43:2,7
44:16,19 78:18
80:11 95:25 110:3
110:6 117:22
119:6 124:7
202:14 218:11,12
221:22,23 222:1,4
253:18 265:25
314:20 329:5
474:1,24 475:8,23
**includes** 124:3
**including** 169:8
178:12 282:21
363:10 369:12
422:6
**incomplete** 46:3
317:5 447:19
**inconsistent** 276:2
**incorporate** 474:17
**incorporated** 29:18
212:2
**incorporating**
253:7
**incorrect** 256:3
**incorrectly** 375:10
407:22
**Independence** 3:22
**independent** 193:5
262:4 285:5
323:18 387:15



390:22 420:16
457:25
**independently**
218:17 284:7
435:12
**Index** 4:1 144:16
**indicate** 208:25
286:23 291:14
323:22 335:9
404:5 410:15
433:14 454:16
**indicated** 178:21
250:20 289:17
**indicates** 129:19
139:20 318:2
380:21 381:8
**indicating** 242:20
**individual** 94:18
217:21 243:22
314:16,17 346:2
472:2
**individually** 344:21
**industry** 230:12,12
**information** 19:2
21:25 22:9 25:7
25:25 28:22 30:12
30:21 31:7 33:4
33:11 34:3,9 35:1
35:5,6 36:1,25
40:17,18 42:16
43:1,9,16 44:11
44:13,15,20,23
48:11 49:7,18
50:22 51:20,24
52:4 58:11 62:1
64:7,16,25 67:2,3
67:4 68:1 77:7,14
77:21 78:11 80:11
81:20 84:20 87:17
90:15 93:24 99:2
101:13 102:10
103:3,6,14 104:1
108:4 115:24
117:21 119:21,24
122:5,9 124:7
126:5 127:15

128:3 129:8,19,21
129:22 132:11
134:24 136:15
139:4 147:23
151:9 152:9
154:14 155:16
156:18 157:5,8,14
157:20 158:11
160:1,14 161:8,21
163:19 164:17,18
165:4 168:17
169:3,9 176:3,6
178:13,18 187:24
189:19 190:25
191:12,17 192:17
193:11 194:13
195:4 202:3,10,20
203:16 204:3
206:14 207:23
209:9 211:19
213:4 215:8
218:11 220:25
222:8 244:19
247:2 252:7,8,12
253:9,20,24 254:7
256:13,19 262:11
262:18 263:25
265:23 266:1
267:10 269:25
270:2,6,12 271:3
271:16 273:12
277:1 279:21
283:1,10,20
284:18 285:8
286:11,18 291:18
297:8 301:25
302:1 307:20
308:8,11,16,18
309:5 310:8 311:4
311:16 313:20
314:16,22,23,24
315:2,12 316:11
316:25 317:12
318:3,20,21,24
319:6 321:1
323:17,22 324:3

328:20 331:2
332:8 342:18
343:18,24 346:11
350:18,22 351:9
353:4 354:21
358:14 359:3,25
360:21 361:1,3
362:1,11,22 365:7
373:16 374:15
381:4,5 384:14
388:6 395:23
396:14 405:24
407:24 409:19
410:6,7 414:7
415:11 421:1,10
424:9,19 425:12
427:9 428:8,18
431:3,24 432:7
433:15 434:9,12
434:14,16 436:9
442:7,20,25
446:13,17,22
447:21 448:19
451:14,15 452:6
452:23,25 454:6
454:12 456:12,18
456:21 458:14,25
471:10,20,21,22
471:25 472:1,19
472:24 473:9,20
474:14,15,24
475:8,22,23 476:4
**informed** 165:3
396:13 425:10
**informing** 51:6
420:13
**initial** 213:3 259:15
**initially** 213:5
**initiate** 438:13
**initiation** 365:7
395:23
**injured** 339:19
341:25
**injuries** 430:9
432:23
**injury** 45:4 65:19

66:2 189:23
198:25 310:14
315:8,25 316:17
316:23 318:2
319:13,14 339:9
386:24
**input** 212:5 214:16
**inquiry** 387:7
**inside** 292:21,25
293:4,10
**instance** 174:7
216:8
**instances** 83:4
234:7 431:13
**insurance** 77:7,13
77:14 86:9 87:6
87:18 196:14,23
197:9,12 368:12
370:13 378:15,16
380:16,22 382:20
383:19 384:18
387:2 390:2
**insured** 380:3
**insurer** 384:7
**insurers** 387:25
388:3 389:9
434:23
**intended** 28:6
75:17
**interacted** 80:22
**interest** 187:7
**interested** 478:18
**internal** 132:18
449:21
**interrelated** 199:14
200:2
**interrogatories** 5:8
5:13 6:19 46:16
47:12 49:2 52:2
52:22 54:19 60:3
72:23 77:6 78:12
81:6,19 151:17,23
152:22 153:15
155:1,18 159:25
160:13 161:22
163:22 176:11

217:13 220:19
251:13,23 257:3
258:10 261:12
263:25 266:1
269:1,24 271:8
272:24 275:6
277:10 278:7,23
279:2,16,22 280:3
280:12 288:1,19
307:9 308:15,19
308:25 312:15,18
314:4 432:6 436:8
455:25 456:5
457:14,25 458:17
**interrogatory** 55:2
55:12,13,22 60:25
65:18 66:6,19
68:13 70:13 71:2
73:7 74:11 111:12
152:2,7 158:3,7
158:10 160:5,6
172:5,6 174:11,13
217:1 251:9
252:16 254:9
258:24 260:18
272:15 274:23
277:14 280:18
281:15,19 282:14
284:18 294:19
301:3,24 306:16
307:14 311:2,6,12
313:4,25 429:20
429:24 434:1,2
440:5 443:22
444:7 449:3
450:17 456:14
458:12 459:2
473:6
**interrupt** 241:12
340:17
**interrupting** 9:20
339:24
**interwoven** 293:15
**introduced** 54:15
111:25 139:9
210:5 231:2



239:18 251:6
257:24 288:11
307:6 327:10
332:11 351:16
376:14 383:16
**introduction**
282:19
**intuitively** 438:18
**inventory** 130:11
130:15 131:3
**investigate** 29:9
30:20 428:9
**investigation** 28:21
166:8,11 194:12
195:3 206:24
262:4 285:5
294:10 323:19
390:22 453:23
458:1,13
**investment** 424:20
**involved** 46:19
84:12 88:19 101:8
104:14 111:13
207:9 217:18
259:15,18 260:6
260:11,12,16,25
281:10 286:25
287:6,22 294:21
297:15,15 301:20
306:16 314:25
337:23 338:2
373:15,17,22
374:6 382:19
396:21 397:8,11
397:22 398:9,15
398:23 400:10,18
400:24 401:4,13
405:3 406:23
418:18 423:24
431:17 454:8
458:17 473:8,19
**involvement**
396:16 418:2,8
**involving** 41:14
73:9 74:13 84:8
228:8

**in-house** 90:17
249:13 258:5
**Ira** 282:22 301:14
**irrelevant** 167:25
**issue** 96:12 128:15
146:18 157:24
158:8 164:13
168:7 172:25
179:6 181:19
187:9 189:19
190:21 194:24
198:14 199:7
217:17 224:11
225:21 226:18
240:13 311:7
312:11 354:15
386:21 406:17
412:24 470:14
**issued** 147:24 353:6
354:18 470:23
**issues** 16:7 21:11
69:1 114:19
149:20 184:13,19
191:6,8 194:23
196:22 212:4
218:14,20 222:2
224:12,14,17,19
239:24 240:4
243:3,6,9 248:16
324:18,18,19
339:5 347:23
352:21 396:11
467:15 471:2
472:18 474:16
**Italian** 351:24
**it'll** 180:23 184:2

_____ J _____
**J** 408:24
**Jack** 335:5
**JAD** 1:6
**James** 320:20
321:20
**January** 335:5
351:18 363:12
375:1 383:18

jboyle@khmarin...
3:12
**Jennifer** 46:23
**Jersey** 1:2 2:9 3:15
3:23 8:9 97:13
289:4
**Jesse** 382:8 383:21
384:20 389:14
390:3,11
**JLL** 1:6
**job** 1:22 11:11
93:10,11 94:6,6
173:7 382:17
**John** 3:11 9:17
120:19 452:4
**Johnson** 204:1,1
282:25 335:11
337:22,23 422:5
424:10 473:7,7
**joining** 9:21
**joke** 270:18
**Jonathan** 57:13
452:4
**Jones** 448:2,4
**Joslyn** 221:25
321:7 323:10,21
346:8
**judge** 146:17
166:13,18,19
177:17 182:6
185:4,6 312:22
367:15 371:14
395:5
**judgment** 187:4
**judgments** 171:22
**July** 231:7 338:21
373:4 378:5 411:9
411:11,13 412:4
412:14 413:13
**June** 1:18 8:11
289:19 327:16
336:11 372:24,25
373:2 374:3,3,12
397:17,18 410:11
412:19 414:5,5
**jurisdiction** 224:18

430:9 432:24
**jurisdictional**
222:1
**jurisdictions** 330:2
330:17
**jury** 14:23 16:17
17:14,25 18:16
139:17 249:8
306:25 334:7
336:4
**justification** 295:14
295:19
**J&J** 203:5,24

_____ K _____
**Kangas** 360:14
366:12,20 368:7
370:15,18,21
371:4,11 373:15
375:18,23 379:10
380:10 385:7
392:12 393:2,10
393:16,23 394:14
394:23 396:7
398:9,15 400:7
**keep** 20:18 53:9
71:21 109:8
146:12,15 211:1,8
276:17 301:23
327:4 344:11
347:15 368:17
387:24 402:18
**keeping** 171:24
**keeps** 336:2
**kept** 145:11,19
148:4,18 151:1
161:12 176:15
350:1 389:13
391:16
**Kevin** 472:17
**Kimberlee** 8:6
46:22 276:4,6
**kind** 43:4 44:12
67:4,5 108:7
120:7 180:3 184:6
332:8 346:4

434:11 442:20,24
447:23 456:10
**kinds** 44:25 276:24
301:25 323:14
326:12 346:13
406:14
**Kirkland** 1:14 2:19
9:7,10 39:10
**KIMBERLEE** 1:4
**Kluznik** 335:6
**knew** 42:15 48:14
48:14 49:8 50:18
90:1 92:1 246:2
271:3 273:6
287:10 299:6
373:22,23 375:8
405:13,13 417:5
418:17,22,25
450:3,3,4,4,5
451:18
**know** 9:23 12:2,5
12:10 15:2,6,24
16:8,14 17:2,8,8
17:11 18:15,22
21:19 22:7 23:4
23:14 24:10,14,16
24:23,25 26:8,12
27:7,16 28:17
29:5,7,19 31:14
36:16 37:8,20,21
38:1,2,11,11,25
39:6 40:2,12 45:6
47:18,20 49:13,23
50:11 51:8,16
52:12,20,21 57:21
59:10,16,23,25
60:15,18 61:1,8
67:25 68:10,21
70:21,23 75:5,7
75:16 76:9,25
77:13 78:3,21
79:9,15,21,23
83:13,17,18 86:4
86:10,19,19,21,25
87:2,6,8,9,12,15
87:20,22,24 88:6



88:16,17,21 89:6
89:19 90:3,4,8
91:7,15,18 92:10
92:14 93:6,7,15
93:21,23 94:12,24
96:9 97:1,11,18
97:22 98:2,2,3,3
98:14 100:12,13
105:2,4,7,15,15
106:7,12 107:25
108:6,15,17 109:1
109:4,18,19,21
110:9,24 111:10
111:13,21 113:15
113:18,19,20
114:2,23 116:2,4
117:6,13,19,20
118:15,22 119:20
120:4,14 121:15
121:20 122:11,14
122:23 123:1,8,17
123:18,21 124:9
124:16,19 126:8
126:14,15 127:7
127:21,25 128:2
128:18 129:7,25
130:4,14 131:12
132:8 133:25
137:23 138:5,13
139:22 140:10,14
140:19,24 143:15
145:14 148:10
149:15,16 150:16
161:7 164:6
175:21 181:18
182:1 184:21
185:1 187:6,8,18
188:15,22 190:13
190:24 191:17,22
192:2,4,7,14,21
192:24 193:2,8,15
196:4 197:19
199:19 200:6
201:6 202:1 203:4
203:5,13,15 204:6
206:13,19,20,21

207:6 208:9,11
212:4 214:16,18
214:20 221:5
223:6,24 227:9,16
228:19 229:8,11
229:25 230:7
233:2,9,19 234:3
235:5 243:19
246:7,9 247:5
250:18 252:25
254:3,12,15
255:18,21,23
256:7 257:6,7
259:2,3 260:24
261:3,8,23 264:17
264:18,18 265:17
266:12 267:13,17
268:19 270:21
272:25 273:4,25
275:3,8,24,25
276:1 277:2,7
282:6 283:17
286:5,6,7 287:7
288:22 290:22
292:7,8 295:5,25
296:16,21 300:2,5
300:23 305:2,22
306:2,7,23 311:13
313:12,22 314:14
315:11,14 316:11
317:14,16 321:16
321:18,19 322:9
322:13,13,17
323:7,10,20 324:4
324:7,13 326:14
326:15 327:1,1,3
328:25 330:14,17
331:10 336:17,21
337:1,7,8 338:13
339:3,7 341:24
343:1 344:4,5,9
345:7,14,22
346:21 349:22
350:8,9,13,14
352:5 354:2,17
355:2,7,16 359:14

365:11,19 373:6
374:5,10 375:1,5
375:10,15 376:3
378:15 381:19,22
382:21 383:24
384:4,21 386:1
388:5,12,22 389:2
389:19,20,24
391:8,14,15,19
392:20 393:9,14
393:18,22 394:2,6
398:5,16,18 401:5
401:19,20 403:22
403:23 404:13
405:8,12,22,24
406:1,11,12,18,20
407:21 408:24
409:2 410:3,10,20
411:11,13 412:3
412:12,17,18,20
412:22 413:7,12
414:1,2,4 416:6
417:5,9 420:8,13
420:14 422:9
423:9,14,22,23,24
424:5,8,15,25
426:3,7 427:1
429:2 431:15
435:9,22 436:23
438:11,12 439:7
439:21,22 441:14
442:8,22,23
446:11,13 447:9
448:8 450:7
451:24 453:14,17
453:21 454:11
456:22 457:2,3
459:13 460:11,22
460:24 464:1,2
465:9,14,16 466:7
468:12,13 469:2,3
469:5,9,11,25
471:15,18 472:5,6
472:7,11,23,23,23
474:18
**knowing** 294:24

297:14
**knowledge** 47:11
47:22 49:2 50:9
51:16 52:1,23
55:8 61:15 62:4
106:5 149:15
154:15 155:2
177:24 198:12
203:25 205:16
206:1 208:4
252:10,12 256:11
265:24 270:3,5
283:22 288:23
291:24 345:12
347:15 354:16
376:11 451:14
458:24 463:22
474:7
**knowledge/infor...**
207:1
**known** 31:11 33:4
129:11 213:21
235:19 267:1
375:4 451:20
**knows** 33:12,13
47:18,20 49:23
52:12,19 86:20
89:20 97:18
100:12 170:14
232:21 296:23
439:23

_____
**L**
**L** 360:18
**laboratories** 120:5
**laid** 368:16
**large** 41:9 61:24
124:3,4
**late** 42:2 84:17
356:4 414:15,20
**LaTorre** 305:19,21
306:6
**laugh** 270:19
**law** 3:21 10:7 14:21
24:14,25 25:2,19
26:3 29:5 35:8,9

36:4 40:11 135:1
157:4 265:13
367:12,12
**laws** 289:3
**lawsuit** 19:3,13
21:2 28:10 37:1
40:18 84:7 195:25
313:17
**lawsuits** 22:10 25:8
26:1 43:10 80:12
189:23 198:25
310:13 311:11,17
313:13 327:20
363:10 380:10
382:4 405:4
**lawyer** 13:13 15:4
16:25 17:5 18:21
19:9 21:18 22:16
23:3,5,13 29:3,17
31:2 33:10 37:7
40:8 90:25 186:21
194:16 195:4
227:16 228:16
243:8 247:25
258:5 292:22
322:4 326:13,16
326:25 355:23
381:16 428:25
430:9 432:24
**lawyers** 23:14
31:13,22 33:5,18
34:5,10,13,23
35:19 36:9 37:1
37:12 39:6 40:2
40:15 65:1,6,10
90:18,21 97:9
98:25 122:6 156:3
156:23 180:7
181:12 185:17
191:20 193:9
195:2 204:23,24
271:18 279:23
280:2 285:19
286:12 293:1
294:23 298:13
299:4 322:14



323:12 353:17
390:21 420:17
426:8 436:10
437:8 439:2
449:21 459:1,16
470:16 473:3
**lawyer's** 154:8
326:10
**lay** 23:23 27:13
**laying** 175:14
176:18
**layperson's** 40:10
**lead** 298:13
**lead-up** 86:15
**learn** 30:6 460:23
**learned** 375:15
426:12 433:5
453:15 470:1
**leave** 88:12,13
92:17 171:21
**left** 91:7 93:16
94:13 116:1
166:23 167:7
209:7 334:10
421:16
**legal** 1:24 8:17,18
13:14 15:1 16:5
16:23 18:20 22:15
24:11 26:6,8
28:17 31:17 33:8
37:20 38:3,25
40:12,13,13,23,24
70:3 135:5 204:19
212:3 228:12,23
233:3,7,12 234:22
235:19 249:20,23
250:1 253:8
258:22 259:7
293:22 300:4
322:12 326:24
474:11,13,17
475:17
**legalities** 36:15
37:8
**legally** 265:21
**length** 338:23

339:2
**Leroy** 379:9 385:7
**Lester** 48:23 258:2
287:5 301:20
**letter** 4:12 5:16,20
6:1,9,13 7:1,5
218:12 231:5,13
233:15,23 234:11
235:1,24 236:5
241:21,24 242:8
242:12,17 243:6,9
243:12,22,24
244:5,8,11,15,25
245:5,21 246:8,13
247:1,8,25 248:4
248:14,17,18
249:11 250:25
258:1 260:17
304:4,5 305:23
306:1,7 320:3
321:3,5,9 322:13
323:9,18,23
326:17 327:12
328:5,10,19,25
330:8,22 331:19
331:24 332:13,20
333:25 339:13
342:22 343:23
345:17 348:4,11
351:19 376:19,22
380:2 383:18
409:5 413:8 417:8
417:10 418:24
438:11
**letters** 199:9
218:10 220:8,21
222:7 234:17
245:9,17 247:10
247:16 281:10,24
322:14,16 325:7
325:17 326:2,11
352:12 437:9
438:8,17 439:1,15
439:21
**let's** 89:7 179:8,8,9
187:18,18,23

356:23 391:22
461:18
**level** 103:2 150:2
192:12 354:14,23
354:25 387:11
**liability** 196:18
239:24
**light** 169:16
**liking** 240:19,20
**limitation** 170:23
**limited** 5:11 140:7
251:15 268:25
269:22 422:6
**limits** 200:3
**line** 268:21 305:12
305:15 335:15
349:13 411:19
425:18
**link** 319:15
**linked** 400:6 448:1
**list** 47:10,21 52:1
55:2,5,15,19
56:17,24 57:6,13
60:24 112:19
147:15 197:10
315:23 316:1
351:6 352:19
399:17 441:20,25
442:14 446:1,24
449:11
**listed** 43:7 49:1
50:7 51:15 55:21
248:15 371:23
442:5
**listing** 52:23 348:12
440:23
**listings** 80:12
**lists** 150:23 264:3
**litigants** 24:19 28:9
**litigate** 35:8 187:9
347:3
**litigated** 314:18
**litigating** 342:13
**litigation** 11:3,13
12:4,20 22:23
28:24 37:13 43:6

46:19 61:16 62:5
62:23 65:2 66:21
67:20 73:10 74:14
82:24 83:11,20,22
160:21 168:13
175:25 194:15
197:20 198:5,14
215:18 250:21
259:20 260:13
264:11 266:18
317:7 329:9
347:17 360:9
361:25 365:7
373:10,14,18
374:2,7,11 375:25
376:4 381:10
390:25 391:11
396:8,12,16 400:7
400:19,21 401:14
403:11,14,23
404:6,16 405:15
405:16,23 406:5
406:15,24 407:9
409:23,23,24
410:10,14,25
411:5 414:22
415:22 417:6,11
419:1 431:13,17
431:19 432:1
438:14 444:18
445:5,8,11 449:24
470:17
**litigations** 409:6,12
410:17 412:24
**little** 11:6 84:5
158:14 187:19,21
199:15 270:19
317:20 411:1
429:25 430:25
**live** 10:15,16
173:10
**LLC** 1:7,12 2:12
4:25 5:8 8:7
**LLC's** 4:16 6:16
**LLP** 1:14 2:19 3:4
**loaded** 23:3,7

**local** 244:17 248:12
335:5
**location** 339:7
**log** 4:11 112:19
306:13 408:4
413:4 417:8
**Logan** 3:5
**logistics** 106:8
**logo** 376:20
**logs** 300:12
**long** 58:21 144:7
216:6 356:6
459:25
**longer** 115:23
**look** 43:19 44:8
45:14 46:7,12
58:15,18 65:15,15
66:13 70:18 73:4
77:11 79:3 81:1
91:14 92:22 95:24
96:12 97:2 100:14
100:14 103:10
104:5 111:12
128:13 139:2,13
146:2,4 148:17
151:22 152:1,6
153:8,12,14
161:10 164:18
165:2,5 169:7
172:22 181:24
197:2,12 217:21
218:16 225:19
227:5 239:16
244:24 245:9
251:20 261:4
267:8 268:1 272:7
273:1 276:25
277:3,13 285:6
286:10 290:19
299:19 301:7,11
301:13 303:24
304:18 309:6,14
314:12 315:6,7,19
321:22,24 323:13
332:5,6 337:10
341:21 342:6



343:2,3,17 344:20
346:1,2 348:22
352:23 354:3,19
355:9 356:8
357:18 361:9,13
361:15 365:6,8
372:10 385:23
386:13 387:12
423:10 427:19
437:11 439:10
440:22 442:11,13
443:15 461:15,24
462:2,5,22,23
463:5,6,9 465:1
469:25 470:3
**looked** 41:14 42:19
43:11,13,14,22
44:2 46:5,8,9,10
46:15,17 79:25
94:18 98:20 111:9
144:6 148:12
149:16 236:16
245:14 246:25
247:8 253:20
261:13 266:21
267:10,12 273:3
273:22 274:21
286:19 294:25
324:2 361:20
365:4,6 367:23
368:5 371:21
372:17 418:14
420:8 431:12,16
431:24 432:1
442:5,7,9 465:6
474:14
**looking** 45:24
100:19 153:16,23
164:13 177:10,16
190:3 255:17
268:17 274:8
275:12 294:3
303:10 318:15
324:7,25 325:5
330:23 345:6,8
350:8 378:4

406:12 418:15
431:19 443:24
446:8 471:19
**looks** 43:17 328:21
384:6,6
**loss** 384:7,10,13
385:13 386:5,23
387:13,17,24
388:10,12,15,23
389:8,14 390:3,12
390:23 391:10
**lost** 116:6 456:8,10
**lot** 22:15 31:3 35:5
35:10 36:2 41:10
42:5 45:10 58:7
61:25 64:3 67:1,2
68:1 72:19 89:7
110:10 117:14,21
164:16,17 176:24
180:23 186:4
224:20 227:17
230:6 231:11
248:16 251:21
259:21 274:18
275:4,5 280:3
286:19 307:19
311:3 319:9
339:10 340:12
354:4,21 355:1
359:7 368:21,23
369:2 372:6
373:16,19,20
387:15 405:12
407:23 432:2,15
461:9 469:7 473:1
**low** 223:13,20,25
**lunch** 146:5
**Luncheon** 189:13
**lunchtime** 104:6
146:2
**lung** 430:12
**lying** 326:7
**Lynn** 4:13

———————
**M**
———————
**M** 2:3

**Magna** 1:24 8:17
8:18
**Magnesia** 330:3
360:7 363:11
372:11,20
**Magnesium** 379:12
**maintain** 401:25
**maintained** 120:10
**major** 352:20
**making** 34:24
53:23 179:24
184:17 186:17
326:11 346:15
371:12
**man** 172:3 173:7
367:16
**manager** 261:3
382:11
**managers** 192:15
**mandate** 15:8 16:1
16:15
**mandates** 14:12
16:15
**manual** 6:21
139:19,24 141:15
145:10
**manufacture**
252:20
**manufacturers**
227:14
**Maple** 2:8
**March** 102:7,8
241:21 249:11
460:13 463:24
467:17
**Marino** 3:13 9:18
**marked** 13:19 54:7
54:14 111:24
136:2,21 138:6,20
139:8,12 190:14
210:2,4 231:1
239:17 251:5
257:23 268:2
288:9,10 300:11
300:14 307:5
327:9 332:10
348:1 351:15

376:9,13 383:14
383:15 462:17
**market** 252:21
**Marketing** 86:2
**Martin** 5:21 454:15
455:9
**match** 314:14
319:15
**matches** 269:17
**material** 30:6 44:22
244:20 336:21
340:12
**materials** 134:14
329:1,23,24 331:3
335:7,9,24
**matter** 8:6 14:11
15:6,25 24:13
161:19 163:18
168:1 169:7
173:11 227:18
464:8 466:25,25
468:3,18 470:21
470:24
**matters** 63:5 91:18
92:6 93:22
**mcoren@cprlaw....**
2:6
**mean** 31:3 83:2
94:21 111:8 113:6
119:2 125:9
133:11 143:15,20
144:10 166:4
184:1,25 187:15
204:23 207:19
223:21 224:13
245:25 246:19
247:3 249:19
260:5 266:8
267:23 274:18
297:6 298:3 299:1
308:11,12 315:16
316:22 322:10
328:18 332:3
350:23 354:22,25
362:11 377:3
397:1 408:25

458:16 464:20
**Meaning** 266:21
**means** 26:13 28:18
70:3 95:15 196:4
229:9 244:24
265:20 266:12
322:12 473:4
**meant** 77:1 246:14
317:5 323:7
353:20 355:1
**measure** 260:24
**media** 227:22
**medical** 224:19
324:20
**meeting** 105:2
153:9
**meet-and-confer**
90:12 368:18
467:19
**members** 68:14
444:11,11 446:2
446:10
**memo** 111:14,18
112:16,19,21
113:2,7 121:24,24
122:15 460:14
467:17
**memorandum**
465:7
**memorize** 79:14,23
**memorized** 272:11
315:4
**memos** 118:24
119:2,9,14
**Menlo** 97:12
**mention** 223:20
301:17 337:16
473:7
**mentioned** 36:21
46:2 61:24 79:15
97:25 119:8
129:17 157:3
158:9 193:20
204:25 235:18
245:13 286:16
311:9,17 314:11



318:11 324:17
329:18 332:3
339:12 364:9
365:5 368:8
373:24 376:1
388:11 395:22
401:5 405:10
421:9 431:11
433:4 434:10
439:9 443:4
455:16,18,18
**mesothelioma**
430:12
**met** 178:23 338:22
**met-and-conferred**
467:14
**Michael** 2:5 57:6
332:14,21 348:5
348:23 383:21
454:9,17
**Michigan** 10:17
251:13 269:2
**middle** 176:23
237:8,13 241:12
339:24 340:17
374:12 376:5
398:4,17
**Mike** 9:4
**mill** 252:20
**milled** 232:10
320:17
**Miller** 1:21 8:18
478:4,22
**million** 187:6
434:21
**mind** 47:19 261:19
301:23 327:2
387:24 476:9
**mine** 204:1 242:20
252:20 282:25
289:21 335:10
422:5 424:10
**mined** 232:10
242:21 249:4
320:16 335:9
**Mineral** 379:12

**Minerals** 378:11
379:4
**minute** 161:11
164:24 387:10
**minutes** 39:15 72:3
82:5 150:23
151:18 153:16
168:23 176:13,17
176:18 177:2,17
177:23 193:18
194:5 334:12
421:19 470:6
**mis** 110:17
**mischaracterized**
79:18
**Mischaracterizes**
242:7 247:15
**misinform** 28:6
**mislead** 28:6,9
256:1 296:24
326:4
**misleading** 27:17
28:2,4 36:11 37:2
40:17
**missing** 117:9
**misstated** 434:3
**misstates** 21:5
26:23 29:14,25
33:24 55:12 56:5
58:14 61:20 70:1
70:9,17 73:13
95:9 96:21 98:8
98:17 100:2
102:23 106:2,17
107:23 108:11
110:22 120:13
121:7 122:8
128:24 129:16
130:7,19 131:8
134:6 145:13
154:20 155:10
156:7 158:6,7
160:4,5 161:4
194:19 196:25
201:11 202:6
203:3,21 205:20

207:4 208:8 209:4
209:16 211:23
212:13 216:16,25
238:19 242:17
243:11,12 244:7,8
248:4 257:5 259:1
259:12 262:21
266:3 272:5,21
273:15 274:13
275:18,20 281:18
284:12 285:13
287:2 294:6,13
295:3 296:6 297:3
297:24,25 298:19
298:20 299:14,15
311:6 321:5 325:9
328:10 329:12
333:10,25 342:22
343:12 354:9
356:16 358:10
364:24 392:7
393:4 396:23
400:17 401:2
402:12,23 403:2
405:6,21 406:9
407:2,15 411:17
412:8,16 413:19
415:1 416:18
417:1 420:5,20
423:20 426:18
427:3 429:5
433:25 435:15
436:15 439:18
440:18 441:11
446:4 447:6
452:15 456:5
457:16,17 460:16
**mistake** 256:4
383:8
**mistaken** 177:24
**misunderstood**
410:8
**modification**
185:22
**moment** 55:10
73:20 74:16 99:15

124:21 142:7
226:8 399:9 408:9
429:17
**money** 67:18 75:21
76:6
**months** 312:16
367:3 371:1
**Moore** 3:25 8:16
**morning** 8:24 9:1
9:11 10:12 143:8
300:23
**motion** 173:4
183:12 184:3
**motions** 184:17
241:7
**move** 165:8 180:21
187:25 211:4
220:6 240:17
251:3 328:8
341:15 345:15
421:15
**moved** 104:23,25
105:1
**moving** 211:9
**multiple** 162:6
163:4 165:17
169:13,22 178:10
248:24 319:2
377:22,25 403:19
407:12

---

## N

**N** 478:1
**name** 5:2 44:17
45:4,17 170:4,8
315:7 316:17
318:2 319:12
350:23 382:18
385:7 392:3 433:7
**named** 431:18
**names** 44:24
314:21,21 362:14
379:9
**narrow** 317:19
368:18
**National** 431:25

**nature** 88:22
172:16 200:2
233:5
**near** 181:9
**necessarily** 35:12
242:24 243:14
249:2 252:9 270:2
317:1 333:14
334:25 339:8
346:20 380:24
415:14 418:23,24
437:10 455:3
**necessary** 48:3
49:10 101:21
164:7 181:24
186:25 278:3
344:13,18,24
**need** 47:15 51:21
52:5 95:12 159:2
159:9 163:5 164:9
175:21 179:10
185:3 188:3,4
198:5 244:24
277:5 284:4,14
286:17,21 321:21
321:22,24 345:22
404:16
**needed** 47:9 48:11
49:8,19 93:24
141:18 143:22,25
144:10 187:24
314:3
**needs** 179:11
**negative** 117:25
**neither** 478:12
**never** 11:18 50:10
75:7 76:4 95:5,6
96:15,18 123:22
127:3 194:4 195:2
203:11,14 226:22
228:1,5 261:12
272:24 285:7,7
294:9,9,25 305:13
306:1 337:15
345:10 351:8
359:15 367:4,9



376:24 392:24
401:12 436:10
451:25 453:4
**new** 1:2 2:9 3:15,23
8:9 97:13 168:7
289:3 369:4
460:24
**newer** 14:2
**next-to-last** 252:3
**Nice** 8:25 9:2 10:13
**night** 80:8
**nights** 80:7
**NIOSH** 336:13
**nonlawyer** 23:13
40:22
**nonprivileged**
236:17 366:2
367:17 428:8,15
**nontruth** 323:1
**normal** 192:10
**Northwest** 8:14
**notary** 303:10,11
478:24
**note** 45:10 114:15
364:3 366:10
422:16 425:3
466:17 470:19
**noted** 312:24 369:8
423:6 466:11
468:8
**notes** 71:14
**notice** 4:18,21
13:20 14:15 15:1
15:11,13 16:5,23
17:19,20 18:3,5
18:20 19:6,18
20:4,15,17 21:5
22:13 24:8,22
25:11 26:23,23
27:5 28:14 29:2
29:14 30:25 31:17
32:25 33:8 34:19
35:23 37:17 38:21
39:10,17,19 42:18
48:1 50:16 51:19
52:15 53:4 58:14

58:16,19 71:7
72:4,5,13 76:2,18
77:10,25 78:16
80:16 81:11,24
92:9,22 93:1
96:10 97:24 99:3
99:10 100:1,2
104:19 108:23
114:17 120:17
121:8 122:22
123:14 131:21
132:2 138:11,24
139:2 140:3 141:6
141:25 142:1
143:5,8,19 144:4
145:5,13,15,16
146:10,16,21
147:15 148:8,25
151:5,8,21 153:19
154:1,11 155:10
155:21 156:7
157:11 160:7
161:4,16 162:7,24
163:2 165:13
166:10 167:19
168:5 177:23
178:16 190:4,5,10
196:7 197:1,3
198:1,17 229:15
229:21 230:3,21
260:9 277:24
278:12,24 279:6
279:13 280:17
283:4,14,25
285:13 287:17
288:4 309:10,17
310:3,21,22 312:7
312:25 326:24
356:18 364:4
365:23 367:7
386:23 402:14
403:4 414:21
418:1 419:9
424:14 425:5
427:4 431:10
432:11 434:4

435:4,17 436:4,14
437:3 449:19
450:11 451:9
454:2 455:1,15
456:17 458:6
459:5,20 460:18
464:7 466:13,14
466:16 467:25
468:17 469:3,23
473:14 475:3,12
476:2
**noticed** 161:23
163:23 399:20
**noting** 183:20
**notwithstanding**
72:12
**November** 231:6
302:22
**no-asbestos** 329:10
**number** 32:23 41:9
55:2 61:24 114:24
115:7 124:3,3,5
134:14 141:14
147:21 151:13
152:7 157:24
164:14 165:12
166:9 167:20
189:19 192:18
193:12 195:6
196:14 198:21,22
198:23 199:6
200:1 251:9,10
263:22,23 268:6
268:23 282:14,16
291:11 307:1,14
308:2,3 310:11,21
311:3 312:12
313:4 333:19
334:18 336:10
353:3,9 354:15
359:24 364:1,11
377:9 378:4
379:22 385:4
386:22 391:24
422:3 424:18
429:25 433:17

434:15 440:5
444:7 449:4
450:21 454:14
**numbered** 349:23
377:15
**numbers** 179:9
319:22 377:21
**numerous** 169:18
**N.W** 1:15 2:20

---

## O

**O** 308:16 478:1
**oath** 81:6 125:21
129:12 131:2
154:18 161:20
163:19 172:5
255:3 259:8
267:19 269:24
275:15 289:1
294:3 297:17
299:8 309:24
460:11
**object** 58:1 75:22
99:23 112:7
113:13 132:15
141:22 149:25
150:4 163:6 180:4
226:7 229:1,13
284:20 295:16
304:21 318:5
332:16 334:21
**objected** 148:24
168:19 169:20
331:24 369:10
422:17,21
**objecting** 185:9,19
187:22
**objection** 9:25 11:4
11:14,23 12:7,15
12:21 13:5,11
14:7,13,24 15:9
15:15 16:3,18,21
17:17 18:18 19:4
19:15,21,25 20:13
21:3,16 22:2,11
22:25 23:10,20

24:6,20 25:9
26:21 27:10,19
28:3,12,25 29:12
29:24 30:14,23
31:15 32:6 33:6
33:20,23 34:6,17
35:2,21 36:12
37:4,15 38:8,15
38:19 39:8 40:19
41:24 42:22 44:4
44:14 45:19 47:13
47:24 48:17 49:4
49:15,24 50:14
51:9,17 52:13,24
53:2,8,21 55:11
55:24 56:4,13,20
57:2,9 58:13
60:16 61:19 64:9
64:18 65:3,12,22
66:10,22 67:9,21
68:17 69:6,16,25
70:8,16 71:5
73:12 74:24 75:25
76:16 77:8,23
78:14 79:6,11
80:4,14 81:9,22
82:25 83:14 84:16
85:10 86:3,13
87:11 88:1,4,15
89:17 90:9 91:9
92:3,15,19 93:18
95:8,22 96:6,20
97:15 98:7,16
99:8,25 101:16
102:3,22 103:18
103:22 104:17
105:11 106:1,16
107:9,10,15,22
108:10,21 109:10
109:14,23 110:16
110:21 111:15
112:9 113:4,24
114:8,12 115:2
116:16,25 117:10
118:5,19 119:10
120:12,15,20



| | | | | |
|---|---|---|---|---|
| 121:6 122:7,20 | 226:19 227:7,24 | 318:10 321:4 | 414:24 415:18 | 163:12 164:1 |
| 123:12,24 124:17 | 228:11 229:3,13 | 322:7,23 323:2,24 | 416:4,13,17,25 | 165:14 166:6 |
| 125:3,6 126:1,23 | 229:20 230:1,19 | 325:8,19 326:18 | 417:17 418:3 | 171:23,25 172:2 |
| 127:12,24 128:9 | 231:19 232:16 | 326:22 328:2,9,16 | 419:13 420:1,4,19 | 172:12 180:22 |
| 128:22 129:14 | 233:17,25 234:18 | 329:11 330:9,19 | 421:7 422:14 | 183:22 184:17 |
| 130:5,18 131:7,19 | 235:2,15 236:10 | 331:12,16,25 | 423:4,19 424:12 | 186:18 190:7,8,13 |
| 131:22 132:7 | 236:24 238:5,18 | 333:8,22 334:22 | 425:1 426:4,9,17 | 206:4 212:19 |
| 133:4,14 134:5,16 | 240:9 241:1 242:3 | 335:18 336:19 | 427:2,14,21,23 | 214:7 279:18 |
| 136:13,23 137:7 | 242:16 243:10 | 337:5,17 338:3 | 428:11,20 429:4 | 284:21 285:21 |
| 137:21 138:9,22 | 244:3,6 245:11,22 | 342:21 343:11 | 430:3 431:4,8 | 305:3 307:25 |
| 140:1,17,25 141:4 | 246:5,16 247:13 | 344:1,2,15 345:1 | 432:9 433:1,24 | 309:16 313:5 |
| 141:24 143:17 | 248:3,22 249:16 | 345:19 346:5,17 | 435:2,14 436:12 | 353:16,17 356:17 |
| 144:2 145:3,12 | 252:1 253:2,14 | 347:19 348:25 | 436:25 437:12 | 366:5 369:10,18 |
| 146:24 148:6,20 | 254:1,10,19 | 350:4,20,25 | 438:3 439:4,17 | 393:25 412:15 |
| 149:7,11 150:6,12 | 255:14 256:14 | 352:16 353:10,13 | 440:17 441:1,10 | 415:7 423:5,12 |
| 151:3,19 152:12 | 257:4,13 258:13 | 353:18 354:8 | 442:2,16 444:25 | 424:3 425:4,19 |
| 152:19,23 153:17 | 258:25 259:11 | 355:4,13,18 356:1 | 445:17 446:3 | 435:24 436:3 |
| 153:24 154:9,16 | 260:2,8,20 261:16 | 356:15 357:1,7,12 | 447:2,5 448:5,22 | 440:2 441:17 |
| 154:19 155:8 | 262:7,20 264:15 | 358:1,9,18,22 | 449:17 450:9 | 455:14 458:15 |
| 156:5,21,24 | 265:1,6,14 266:2 | 359:17 360:23 | 451:7 452:14 | 468:7 475:10 |
| 157:10,22 158:5 | 266:23 267:3,20 | 362:7,8,16 363:4 | 453:8,24 454:19 | **obligation** 24:4 |
| 158:10,18,25 | 270:15 271:5,19 | 363:20 364:2,3,23 | 454:24 456:4,15 | 25:6,23 28:21 |
| 160:3 161:3,14 | 271:19,19 272:4 | 365:12 367:7,10 | 457:7,15 458:3 | 29:9,19,22 30:4 |
| 162:1 165:25 | 272:20 273:14 | 372:21 373:5,11 | 459:3,18 460:15 | 30:20 36:8 50:12 |
| 179:19,19,21,21 | 274:4,11,25 | 375:20 377:1 | 463:15 464:5 | 51:5 326:10 |
| 179:25 180:16,16 | 275:13,17 277:15 | 378:18,24 379:18 | 466:10 468:15 | 367:12 |
| 181:20 184:23,25 | 277:22 278:10 | 380:11,19 381:11 | 469:21 470:18,20 | **obligations** 29:4 |
| 185:2,8,13 186:23 | 279:4,11,24 | 381:18 382:6 | 471:12 472:3,14 | 167:22 |
| 186:24 191:3,21 | 280:16 281:5,12 | 383:2 384:11 | 473:12 474:3,8 | **obtain** 150:17 |
| 192:1,19 193:13 | 281:17 282:3 | 385:14 386:7 | 475:1,25 | 244:15 |
| 193:21 194:6,18 | 283:3,12,23 | 387:20 388:17,25 | **objectionable** | **obtained** 465:10 |
| 195:7 196:5,24 | 284:10 285:11 | 389:16 390:5,14 | 304:22 | **obviously** 35:7 |
| 197:15,24 198:15 | 286:3,14 287:1,12 | 391:1,12 392:6,13 | **objections** 4:17 | 201:15 220:17 |
| 200:9,12 201:3,10 | 287:15 288:2 | 393:3,12 395:19 | 6:17 9:21 17:3,9 | 224:23 230:9 |
| 202:5 203:2,20 | 289:8,11 292:4 | 395:20 396:4,22 | 18:2 20:16,20 | 239:25 256:4 |
| 204:14 205:9,19 | 293:20 294:5,12 | 397:13,16,24 | 27:2 31:23 37:24 | 259:14 260:23 |
| 207:3,16 208:7,20 | 295:2,16 296:5 | 398:11,25 399:10 | 40:4 48:7 52:3 | 339:21 385:22 |
| 209:3,15 211:22 | 297:2,20,23 | 400:4,12,16 401:1 | 57:16 62:7,17 | 388:2 433:5 |
| 212:12 213:1,11 | 298:18 299:13 | 401:15 402:2,6,11 | 68:5 73:1 80:24 | 451:18 469:7 |
| 213:24 214:21 | 300:19 301:6 | 402:19,22 403:1 | 90:12,22 94:15 | **occasions** 134:14 |
| 215:6,20 216:2,15 | 302:6,12 304:14 | 403:20 404:8,22 | 100:9 114:16 | 403:19 |
| 216:24 218:7,25 | 305:11 306:9,19 | 405:5,20 406:8 | 115:10 121:13 | **occurred** 86:21 |
| 219:7,15 220:12 | 307:12 308:9,23 | 407:1,14 409:13 | 123:19 124:12 | 97:11,17 98:1 |
| 221:13,17 222:19 | 309:8 310:1 311:5 | 409:25 410:18 | 125:15 126:12 | 100:11 105:14,17 |
| 223:1,7,16 224:8 | 312:1,5,23 314:10 | 411:16 412:7 | 148:24 155:19 | 106:9 108:1 247:4 |
| 225:12,16 226:11 | 315:10 316:2,19 | 413:1,5,10,15,18 | 160:16 162:17,25 | 364:12 379:16 |



397:9
**October** 101:12
**offered** 316:9
**office** 210:17
338:22 365:10,14
365:19
**officer** 322:4,10
326:10
**offices** 95:21 97:12
105:25
**official** 16:9 21:19
**off-site** 121:20,21
296:18
**oh** 186:13 190:7
246:12 278:13
290:15,24 295:13
303:8 310:23
337:25 338:9
341:3 353:13
416:1 430:23
432:12 441:24
451:3
**okay** 10:22 12:2,13
13:3,8,18 14:4,10
15:18 17:13 19:1
19:23 22:7 28:1,8
28:20 32:4 34:2
34:12 35:16 36:7
37:11 41:3,6 42:9
43:25 45:9 46:5
46:12 47:1 51:15
52:11 53:13 54:6
54:23 55:1 56:11
56:17,24 59:23
60:13,24 61:7,9
63:2,19 64:5
66:18 68:12 69:2
69:21 71:1 77:5
77:19 78:9,10
79:9 80:10,20
81:18 82:4,15,17
82:19,21 85:4
86:2,9 87:1,9,14
88:8 89:8 90:24
93:11 94:7 100:21
101:13 104:5

107:4,18 109:19
110:9,23 112:4,21
112:25 116:15
118:24 120:8
122:14 123:21
126:17 127:7
132:10 133:24
134:13,21 135:11
136:10,20 137:3
137:18 139:7,16
140:24 141:11
144:9,22 145:1
146:6,11,20 147:1
147:7,10,13 148:2
150:18 152:6
153:3,8 159:20,23
160:24 166:14
167:14 171:2,17
171:17 172:17
176:4 181:17,24
182:15 186:15
188:4 189:1,18
190:19,23 191:16
191:24 192:8,14
193:17 194:10
195:11,24 196:13
196:17 197:19
198:10,20 199:13
199:15 203:11
205:5,14 208:17
209:24 210:21
211:3 212:7
213:17 214:20
216:11 218:1
219:10 224:4
228:6,18,21
231:13,20,24
238:21 241:16,24
242:9,12 247:22
249:8,10 250:8
252:16 254:21
263:3,7,21 265:19
267:15 268:17,18
268:20 269:19
270:23,24 275:23
277:9 278:6

279:21 280:11
281:2 283:1
286:23 287:10
288:8 290:7,9,10
292:12 296:20
297:1,6,13,19
298:2,3 300:7,10
302:19 304:1,23
305:1 306:4,25
307:8,14,19,24
308:7,21 310:24
311:2 312:22
313:1 317:19,23
317:25 319:8,19
319:23 320:1,8
327:4,23 329:21
330:14 331:22
332:9,24 333:18
334:1,14 335:15
336:2,9,24 338:11
338:12,15 340:15
342:8 345:13,24
347:24 348:11,19
349:12,22 350:13
351:12 352:5,10
352:15 353:22
359:24 360:21
361:8 364:14,20
368:3,24 369:15
369:19,25 371:2,7
371:16,21 372:4,9
373:9 374:16,23
375:18 376:8
377:12 378:7,10
379:3,8,22 381:24
382:14 383:6
384:4,17,20 385:1
385:11 386:3,17
386:21 387:5
388:8 391:22
392:11 394:16
395:14 396:20
398:22 399:5,25
401:11 406:21
407:7 408:1,8,16
408:20,23 409:5

412:22 413:12
414:18 421:12,14
422:2,24 423:9
424:8 426:23
429:16,23 430:7
430:23,25 431:1
441:14 443:3,10
443:13,15,19
445:10,21,24
447:14 449:3,15
450:17,24,25
453:20 454:14,22
457:6 460:10
463:3,11,20
464:11,22 467:3
470:4,7,12 472:11
473:3,22 476:6,21
**old** 341:18,19
342:25 343:8
403:10,15
**once** 19:7 29:16
94:23 100:10
110:23 120:10
132:17 247:17
256:16 274:14
296:22 308:24
329:22 332:2
**ones** 199:23,25
324:15 370:1
**ongoing** 175:24
380:25 384:15,19
**operating** 171:16
**operations** 141:19
143:23 144:1,11
**opinion** 452:20
**opportunity** 186:22
210:1 239:9
276:14 329:22
340:22
**opposite** 262:23
345:5
**order** 84:25 135:1
144:12 161:12
166:9 179:11
187:24 225:2
361:9 388:16

428:9 434:13
470:22 471:5
**ore** 209:14
**original** 35:6 36:1
88:12 89:1,2,8,14
91:20 92:7,23
93:4,4,12 94:9,20
94:22 95:15,16
97:8 108:19 109:3
122:16,18 123:5,9
125:17 136:11,21
137:3,4,19,19
138:8,15,16,17,20
**originally** 373:18
457:4
**originals** 91:16
93:23 109:1
**originate** 203:18
**originated** 200:8,21
**outcome** 322:17
**outcomes** 218:19
**outlined** 21:11
**outside** 90:17
106:24 119:15
120:5 292:21
293:1,4,11 470:16
**overall** 434:20
451:13
**overlapped** 366:8
**overlooking** 260:6
**overseen** 111:3,7
**owned** 204:2
335:10

---

**P**

**P** 144:19 196:2,18
**page** 4:3,6 5:2
102:7,9 103:1
104:3 141:13
144:15,22 150:18
150:19 190:18
195:16,21 196:13
252:3,17 254:24
255:7 264:6
268:15 269:5,19
290:18,21 291:4



303:4,15 311:22
317:23 320:6
348:24 382:9
385:2 408:18
430:7,19 433:14
437:19 451:1
461:8 463:5,21
464:25
**pages** 210:14
365:22 366:3,25
383:7 461:14
473:4
**Pagonis** 192:22
382:8 383:21
384:21 389:14
390:3,11
**paid** 11:21 12:14
61:16 66:20 67:19
73:10 74:14 75:21
76:5 199:2 310:16
433:15 434:20,22
442:1,15 470:15
**paints** 230:15
**paper** 35:17 132:22
220:25 221:9
235:10 294:25
332:7
**parachute** 176:23
**paragraph** 239:21
244:14,23 282:20
289:16 320:10
339:15 345:17
430:22
**paraphrasing**
307:17
**Park** 97:12
**part** 21:14 50:11
58:16 90:16 92:9
114:25 115:9
118:9 131:21
177:14 201:18,22
201:24 202:1
203:6,17 215:13
219:22 222:13
224:15 232:1
240:14,14 244:11

253:9 274:3 281:8
281:23 282:6
293:6 298:6
299:19 307:16
329:2,14,19
334:23 348:20
375:25 396:7
398:20 399:8
410:24 417:11
434:2 465:21
466:2 473:23
**partial** 46:21
209:25
**participant** 374:7
**participated** 264:9
266:7,17 267:6
273:19 274:15
**participating**
273:19
**particular** 168:6
239:24 346:25
376:25
**parties** 8:20 167:13
478:14
**parts** 116:3 192:23
201:23 218:13
222:6 236:12
336:25 341:21
401:8
**party** 200:25
410:13 417:6
**pass** 268:12
**Paulette** 383:20
**pay** 66:20 258:9
**paying** 75:8
**payment** 76:15
440:11,25
**penalty** 275:15
289:2,10,13
**pending** 102:21
214:6 238:25
239:4,11 400:21
405:9 416:16,24
469:20
**Pennsylvania** 3:7
**penny** 73:10 74:15

75:8
**people** 44:24 46:25
47:10 50:8,9 55:3
61:23 62:10 65:20
66:7,20 67:19
75:20 76:14 80:21
90:1 96:1 98:22
111:8 116:1 119:5
119:8 187:13
202:18 206:11
207:9 212:21
214:17 220:22
240:3 256:11
259:8 276:25
295:21,22 296:24
297:15 315:24
317:25 326:1,4,5
330:12 341:19
405:17 406:7
449:11 451:2,2
452:5 454:7,10
473:18 476:7,18
**PEPPER** 3:4
**perceived** 178:4
184:14
**percent** 187:6
**perfectly** 180:5
**performed** 329:15
**period** 82:18 83:6
216:6 397:1,4,4
400:21,24 401:13
401:21 403:14,25
404:4 414:13
415:21 416:7
417:3 454:8
**periods** 449:23
**perjury** 275:16
289:3,10,14
**permanent** 144:20
145:1 148:10
196:2,19 389:12
**permanently**
145:11,19 148:4
148:18 151:2
161:12 176:15
**permission** 62:16

246:4 247:9
**permitted** 241:15
**persist** 163:7
**persistence** 162:22
**persisting** 169:10
**person** 19:16 61:4,5
61:14 62:3 91:21
92:13 113:17
141:9 200:25
208:23 263:24
295:21 381:14
382:1,1 390:12
473:23,25 474:22
**personal** 61:15
62:4 224:18 252:9
270:3 288:23
291:24
**personally** 266:13
271:4 295:6 355:6
381:20 394:7
467:14 473:15
**personal-injury**
449:24
**personnel** 44:24
46:11 249:20
256:17 450:18
**persons** 386:25
407:19
**person's** 315:7
327:2
**perspective** 40:22
204:18 249:1
322:12
**pertain** 136:5
**pertaining** 422:4
**pertinent** 47:22
85:13
**Peter** 2:13 9:6
59:10 99:17
135:19 142:10
282:21 301:14
411:3 461:24
**Peters** 52:8,9 56:24
450:7 452:5
**pfarrell@kirklan...**
2:14

**phase** 19:3,13 21:1
21:20
**Philadelphia** 3:7
**phone** 9:16 95:7
146:17 149:4
150:4,15 172:22
184:10 395:5
476:18
**photocopy** 109:8
122:19 123:10
**photograph** 115:20
115:22
**phrase** 31:19
**physical** 35:17
**physically** 88:12,13
105:14,16 133:25
**picked** 95:7
**picture** 244:12
**piece** 132:22
220:25 221:9
235:10 247:1
267:9 294:25
298:5,6 329:9
332:7
**pieces** 43:8
**pin** 418:16
**Pita** 5:10 251:15
252:19 268:24
269:21
**place** 149:5 250:6,9
359:13 388:1
478:9
**placed** 166:24
**places** 313:14
434:16
**Placitella** 2:3,7 4:4
8:15,23,23 9:23
10:11 11:10,17
12:1,12,17,23
13:7,17 14:9,19
15:5,13,14,18
16:12,19 17:1,6
17:12,22 18:6,9
18:25 19:11,20,23
20:1,5,9,18,24
21:7,23 22:6,19



23:6,17 24:1,15
25:1,14 26:14,24
27:6,15,25 28:7
28:19 29:6,20
30:10,18 31:9,18
32:2,7,12,16,20
32:24 33:2,16,21
34:1,11,22 35:15
36:6,22 37:10,22
38:4,12,17 39:3
39:13,20 40:5
41:2 42:8 43:3
44:10 45:2 46:4
47:17 48:4,8,20
49:11,21 50:6
51:3,14,23 52:7
52:18,25 53:7,13
53:18 54:5,13,16
55:14 56:1,10,16
56:23 57:5,12,19
58:3,20 60:23
62:12,20 64:13,21
65:8,17 66:5,17
67:6,14 68:3,11
68:22 69:13,20
70:5,12,25 71:9
71:10,16,19,24
72:14,21 73:6,18
74:2,5,6,21 75:10
75:23 76:12 77:4
77:18 78:7 79:1,8
79:24 80:9,19
81:4,17 82:4,14
83:8 84:4,24
85:19 86:8,17
87:13 88:2,7 89:5
89:22 90:23 91:24
92:8,16 93:9 94:1
95:2,17 96:2,13
96:24 97:20 98:12
98:23 99:12,16,20
100:4,20 101:24
102:13 103:13,20
104:4 105:6,18
106:10 107:3,13
107:17 108:5,16

109:5,12,16 110:8
110:18 111:6,19
112:1,14 113:10
113:21 114:5,10
114:18,22 115:6
116:14,22 117:5
118:3,13,23
119:13 120:24
121:3,9 122:3,13
123:6,16,20 124:8
124:15,18,23
125:4,11,19
126:10,16 127:6
127:20 128:4,16
129:5 130:3,13,25
131:14,20,24
132:9,24 133:8,23
134:12,20 136:19
137:2,12 138:4,18
139:6,10 140:13
140:23 141:1,10
142:2,4,9,12,15
142:16,18 143:10
143:11,24 144:8
145:7,25 146:11
146:19 147:3,12
148:15 149:3,8,24
150:8,20,22 151:7
151:24 152:16,21
153:2,20 154:6,12
154:17,24 155:14
155:25 156:16,22
157:1,17,25
158:16,22 159:5,6
159:11,15,20,23
159:24 160:9,17
161:9,18 162:8,11
162:15 163:13
165:7,19 166:7,14
166:15,19 170:15
170:21 171:4,7,13
171:14,18,20
172:18 175:10,12
175:13 176:2,5
177:5,9,16 178:5
179:13 181:2

182:6 183:3,7,18
184:7 185:25
186:6,8,19 187:4
188:12,13 189:3,9
189:17 190:4,9,17
191:15,23 192:3
193:3,16 194:2,9
194:25 195:10,15
195:19,20 196:12
197:4,18 198:9,19
200:10,14 201:4
201:12 202:24
203:10 204:5,21
205:13,23 206:8
207:10,22 208:13
208:22 209:11,23
210:6,11,21,25
211:6,14 212:6,17
212:23 213:6,16
214:3,19,23
215:14,21 216:10
216:19 217:23
218:23 219:4,9
220:4 221:7,15
222:23 223:5,9
224:3 225:8,13
226:3,9,13 227:2
227:21 228:2,17
229:10,16,22,24
230:4,24 231:3,22
233:14,21 234:6
234:24 235:8
236:7,15 237:4,10
237:12,15,18,25
238:3,10,21,24
239:3,7,10,14
240:6,16,21,25
241:5,9,16,17
242:11 243:4,20
244:4 245:4,19
246:1,11 247:6,21
248:19 249:6,21
250:12 251:2,7
252:5 253:11,22
254:6,16,21,22
256:8,25 257:9,21

257:25 258:20
259:6,24 260:4,15
261:9 262:1,14
263:2,12,20
264:22 265:3,10
265:18 266:15,25
267:14 268:4,9,11
268:14 272:13
273:10 274:1,6,19
275:9,14,22 276:8
276:10,11,15,20
277:8,20 278:5,13
278:17,20,25
279:7,14,20
280:10 281:1,7,14
281:22 282:9
283:9,18 284:5,16
285:3,18,25 286:9
286:22 287:9,13
287:24 288:7,12
289:9,15 290:13
290:17 291:2,3,11
291:12 294:8,18
295:12 296:2,8
297:11,21 298:9
299:2 300:6,16
301:2,10 302:8,11
302:18 303:2,5
304:16,23 305:1,4
305:20 306:10,24
307:7,13 308:13
309:3,13,20
310:10 311:20
312:2,8,12,19
313:1,2,6 315:5
315:15 316:14
317:18 318:6
319:7 320:4,7,9
322:19,24 323:15
325:3,11,15 326:8
326:20 327:11
328:6,13 329:4,20
330:13 331:9,14
331:21 332:9,12
332:19 333:17
334:4,9,13,16

335:3,21 336:20
337:11,19 338:8
340:1,6,10,15
341:3,6,9,13
343:6,21 344:10
344:22 345:9,21
346:14 347:13
348:3 349:4,10,20
349:24 350:12,21
351:11,17 352:24
353:15,21 354:11
355:11,15,21
356:9,22 357:3,9
357:22 358:5,12
358:20 359:5,19
359:23 361:7,19
362:3,12,25 363:8
363:17,21 364:1,7
365:3,13,18
366:17 367:4,8,11
368:3,9,24 369:2
369:15,19,25
370:5,7,12,19
371:2,7,13,18,20
372:22 373:8
374:8 375:22
376:7,15 377:5,18
377:24 378:3,21
379:2,21 380:1,14
381:7,15,23 382:7
383:3,12,17
384:16 385:5,6
386:2,16 388:7,21
389:25 390:9,19
391:6,18 392:10
392:23 393:7,20
394:8,16,24 395:2
395:6,9,14,15
396:1,17 397:2,14
397:19 398:7,21
399:4,12,22 400:8
400:14,22 401:10
401:22 402:4,8,15
402:20,24 403:7
404:24 407:5
408:10,13,15,17



409:20 412:11,21
413:2,11,16 414:9
415:4,16,25
416:14,21 417:13
417:21 419:4,21
420:2,15 421:3,11
421:14 422:1,23
423:8,15,25 424:7
424:17 425:16
426:2,6,14,22
427:5,18 428:3,16
428:23 429:12,19
429:22 430:6
431:5 432:4,21
433:13 434:5,6
435:10,21 436:1,6
436:22 437:6,16
437:18 438:24
439:12,25 440:4
440:21 441:7,13
441:23 442:10
443:2,25 444:4
445:9,20 446:7
447:3,13 448:13
449:2,8,10 450:1
450:16 452:9
453:2,19 454:13
454:21 455:10,24
456:3,11 457:5,11
457:22 458:10,19
459:12 460:4
461:2,6,16,23
462:3,8,12,19
463:19 464:11,17
466:20 467:3,6,9
467:11 468:4,11
470:4,7,12,13
471:8,24 472:8
473:2,21 474:5,20
475:6,13 476:6,17
476:21
**Placitella's** 167:10
174:13
**plaintiff** 8:24 24:12
45:4 223:22 224:1
224:5,25 317:22

**plaintiffs** 1:5 2:2
4:18,21 5:9,12
6:18 9:5 41:15
46:22 54:20 90:13
142:25 167:11
168:24 169:19
218:3 219:11,20
219:23 232:5
276:2 308:1,17
313:23 314:21
320:14 321:23
366:1,9 369:14
370:24 371:6
379:9 400:15
430:11 431:18
434:22 440:15,24
441:20,25 442:6
442:14,14 446:24
448:1 464:10
466:12
**plaintiff's** 45:17
74:22 168:3
169:10 170:12
268:25 318:2
342:10 367:2,21
367:25 427:4
437:22 466:23
**plan** 368:13
**players** 134:10
**please** 10:3 15:20
18:11 20:21 25:15
39:21 54:9 71:12
71:18,25 72:1
74:3,7,18 99:15
99:18 102:19
120:21 142:14,20
143:13 162:12
163:14 181:3
188:24 231:23
240:21 241:1,2,3
241:5,9,11,13
248:6 254:25
290:8 303:15
334:5 341:9,12
399:12 408:6,9,18

429:14,17 461:11
466:20 469:18
**pleasure** 188:8
**plus** 195:25
**point** 32:9 68:21
82:18 87:16 88:24
97:5 120:21
137:11,16 169:5
182:22 188:11
208:2 212:18
230:23 240:12
262:10 273:5
287:23 296:12
328:24 338:5
339:1 382:1,25
398:1,14,18,19
447:17 453:15
471:17 473:16
**policies** 176:14
**policy** 78:13,19
137:17 140:9,15
141:16 145:10
148:3 150:21
338:10,14 389:22
401:24 402:10,13
402:17 403:3
413:25 414:12,19
415:6,12,13 416:9
416:23 452:8
454:7
**policy's** 414:15
**Pollack** 368:1
**Pooley** 290:4
292:18
**Pooley's** 297:10
**populated** 319:21
**portion** 172:1
430:11
**posed** 151:12
189:22
**position** 16:9 187:2
216:22 312:21
**possess** 289:20
290:1 291:15
292:14
**possession** 28:11

65:1 85:7 88:13
89:10 91:8 92:18
93:13,16 94:10,13
97:6 105:22 123:9
197:13 387:18
388:15,24 390:24
428:18 444:9
**possibility** 381:1
**possible** 115:22
164:22 172:15
**possibly** 60:20
278:1 382:20
384:8 401:8
**post** 198:14
**potential** 444:11
446:2
**potentially** 117:24
**practice** 184:4
261:22
**practiced** 228:3
**precedent** 196:1
**precisely** 197:6
376:2
**precluded** 175:18
**predecessors** 255:2
**premarked** 8:2
**premise** 248:1
**preparation** 33:13
41:8 43:12 47:2
60:7 61:12 63:25
79:2 84:18 95:5
148:19 161:1
164:12 169:14
192:11 194:3,11
197:14 198:12
213:4 245:6 324:2
371:22 386:6
390:20 392:21
420:11
**prepare** 15:3 18:13
19:8 29:22 31:5
35:11 40:8 49:19
50:18 51:1,12
84:20 96:10 99:1
118:16 120:3
144:6 147:14

149:2,19 150:1
157:6 161:24
163:24 165:11,23
166:10 168:5
169:1 172:20
173:13,19 178:8
178:11,23 179:4
179:14 191:6
196:9,22 283:6
353:8 354:6
355:24 387:6
389:3 392:22
424:16 425:17
426:16 427:12
429:3,9 455:3
**prepared** 16:7
19:10 22:17 26:7
26:17 34:10 50:2
50:12 72:9 100:18
110:4 116:13
117:16 127:2
129:22 147:19
154:3 157:19
173:8 179:3
199:20 242:19
253:5 280:2 283:7
300:8 353:1
356:13 387:19
435:5 444:17
445:23 455:17
468:25 469:4,7
**preparing** 29:10
30:22 90:14
122:11 178:17
179:1 352:10
392:25 425:10
431:15 457:21
**presence** 118:10
213:23
**present** 3:25 8:21
102:10 254:25
451:19,21 465:12
**presentations**
192:16 193:10
**presented** 127:5
293:9



**preservation** 16:16
**preserve** 197:22
**preserved** 14:23
**press** 355:17
**presumably** 452:7
**presume** 206:5
  283:15 355:8
  411:20
**presuming** 291:7
**presumptuous**
  409:1
**pretty** 50:2 127:14
  209:18 274:17
  289:7 342:25
  463:1 473:5
**prevalence** 65:19
  66:2 430:8 432:22
**prevented** 59:7
  113:22
**previous** 5:1 13:25
  149:21 244:23
  248:14 255:22
  256:6
**previously** 54:14
  64:5,14 100:24
  111:24 139:8
  204:2 210:4 231:1
  239:17 244:16
  248:11 251:5
  257:23 288:10
  289:17 307:5
  327:9 329:25
  332:10 351:15
  367:22 369:3,11
  376:13 383:15
  468:17
**primary** 141:9
**principal** 134:9
**principle** 14:11
  15:7,25
**printout** 384:13
  431:20
**prior** 84:13 358:6
  358:11 366:8,13
  397:7 440:10
  444:18 460:17,20

**priorities** 354:2
**prioritize** 132:4
  164:19,25
**privilege** 4:11
  112:19 114:19
  153:7 161:7
  168:19,20 174:23
  178:20 191:5
  194:24 201:2
  253:21 300:12
  306:13 352:22
  408:4 413:3 417:8
  425:6 427:23
**privileged** 51:19
  52:4 90:15 102:12
  103:9 112:12
  121:24 123:1
  124:7 126:5
  153:12 158:12
  165:4 169:3,9
  175:3 176:1,3
  178:14,18 179:7
  201:24 202:23
  206:18 214:15
  215:7 236:14
  254:4 361:1,12,14
  361:25 366:22
  370:25 374:10,14
  376:5 396:14
  410:7 418:9
  425:12,25 427:9
  428:1,19 474:12
  475:5,9,18
**privileges** 425:8
**probably** 13:1 44:7
  113:17,20 132:20
  133:21 165:4
  180:6 220:1
  235:25 262:12
  267:24 288:16,17
  401:6
**problem** 115:13
  164:23 180:13
  182:16,24 183:1,2
  244:10 292:19
  311:21 330:22

342:24 362:20
  378:2 446:9
  459:11
**proceed** 10:4 82:15
**process** 105:4
  106:8 135:5
  206:20 252:20
  293:8 329:3
**produce** 150:10
  172:13 176:16,17
  349:7 356:10
  363:1 367:19
  368:19 369:21
  427:7
**produced** 111:21
  177:3 289:21
  308:2,18 349:5
  365:21,24 366:1
  366:25 367:5,21
  369:4,11 370:8,13
  370:14,20 371:1,3
  376:10,12 394:5
  433:17 450:20
  463:14 465:11
  466:3 468:14
**producing** 366:7
  422:21
**product** 221:23
  224:11 225:19
  226:5,23 227:5
  229:18 339:6,22
  405:19
**production** 6:5
  177:22 368:12
  369:5 465:21
**products** 229:11
  252:22 314:25
  339:20 430:13
**product-ID** 218:14
  324:18
**product-identific...**
  225:21
**Professional** 1:22
  478:5,23
**program** 422:5,7
  424:9 472:13

**Project** 432:1
**prologue** 10:1
**proof** 300:3 302:2
  323:16,18 324:23
  339:6 438:22
**proper** 53:20 143:9
  173:4 179:19
  185:20 241:1
**proposal** 339:16
**proposed** 370:24
  444:12
**propounded** 5:9
  54:20
**protected** 153:6,11
  168:18
**protocol** 369:13
  371:6
**prove** 224:6 225:9
  226:16,22 227:3
  228:6,9
**proven** 173:15
**provide** 33:4 40:16
  73:16,25 74:23
  78:11 99:2 145:8
  145:11 146:20
  156:14 205:16
  206:1 207:13
  208:25 220:24
  256:18 298:13,25
  359:25 387:16
  446:17
**provided** 19:18
  31:13 34:4,15
  56:8 58:7 60:8
  61:25 77:5,19,22
  78:2,20 81:20
  82:22 85:5 103:7
  127:10 129:20,21
  132:12 134:24
  147:23 151:9
  153:4 155:16
  156:19 157:20
  160:1,14 161:21
  163:20 170:11
  176:6 189:19
  190:25 191:12,18

192:17 193:11
  195:4 202:19
  203:16 211:19
  251:13 254:8
  256:13 263:24
  271:18 273:12,18
  283:20 284:18
  290:2 292:17
  298:24 299:24
  317:13,15 327:24
  329:25 331:4
  353:4 390:18
  391:5 424:19
  436:8 469:15
**providing** 25:7,25
  81:18 297:8 432:7
  459:15 467:7
**proving** 228:8
**public** 303:10,11
  478:24
**publicly** 110:6
**publish** 461:22
**published** 101:9
  110:7 202:11
  253:17
**pull** 43:15 177:5,7
  343:18 357:24
  360:22 362:4,14
  408:6 419:8
  434:16 447:11
  471:21 472:19
**pulled** 101:11
  266:10 362:6
  419:24 420:9
  431:22
**pulling** 266:14
  358:4 362:19
  471:20
**purely** 184:1
**purpose** 244:14
**purposes** 293:22
  318:14,16
**pursuant** 4:19,23
  137:16 140:9
  413:24 415:12
  452:7 467:17



**pursuit** 146:8
**put** 47:19 54:17
  101:14 104:11
  106:22 111:14
  117:22 127:18
  129:24 132:4
  134:9 157:5
  169:25 190:6
  203:6 221:20
  222:15 224:5
  261:23 268:13
  281:15 287:25
  306:15 307:17
  318:21 319:1
  325:17 359:3,11
  404:6,13 455:19
  459:2,17 462:4
  463:7
**puts** 223:22 325:7
**putting** 75:14
  261:14 441:21
**P.A** 3:21
**P.C** 2:7 3:13
**p.m** 166:21 189:15
  210:23 211:12
  263:14,18 347:7
  347:11 421:20,24
  476:24 477:3
**P1** 128:20 129:11

**Q**

**qualified** 39:2
  40:23
**query** 446:1,23
**question** 15:16,21
  17:7,21,23 18:5
  18:10,23 19:8
  20:2,8 22:18,20
  23:4 25:15 26:11
  28:18 30:3 32:10
  32:13,17,19 39:16
  39:18,21 51:22
  52:6 53:19 55:18
  58:17 64:12 67:7
  67:13 69:14 70:11
  70:19 71:11,17,23

73:19 74:3,7 78:8
  83:2,16,25 93:12
  94:2,8,17 97:21
  98:6,11,15 99:7
  99:19,21 102:19
  102:21 105:13
  116:15,24 118:4
  118:14 120:25
  121:4,10 124:22
  126:7 127:4,18
  129:2 133:18
  134:8 142:3,5,10
  142:13,17,19
  143:4,12 144:1
  148:14 150:15
  154:23 156:10
  157:19 158:17,24
  159:4,8,17,22
  160:19 162:12
  163:3,8,11,14
  164:8,11 165:9,23
  166:16 169:22
  173:9,20,23,25
  174:3 176:10,12
  178:9 179:17,20
  179:22,25 180:1,9
  180:17 181:3
  182:2,20 183:9,10
  186:11 191:17
  193:7 196:10
  197:11 201:1,5
  206:23 209:19
  214:6 215:12
  218:24 219:19
  220:7,16 221:4
  222:18,25 223:6
  223:11,19 224:4
  226:14 235:9,10
  237:2,9,14,16,24
  238:2,25 239:4,11
  248:20 250:16
  254:23,24 263:22
  263:23 269:8
  270:23 271:7,11
  276:5,9,12,16
  277:3 279:8

280:19,21 281:21
  282:12 283:7
  291:20,23 293:16
  297:12 298:10
  304:18 305:6
  309:25 312:4,14
  313:17 314:5,6
  315:21 316:15,16
  328:12 329:16
  331:15 340:2,14
  340:20,23 341:5
  342:16 343:22,23
  349:18 350:7,15
  361:23 364:6
  365:17 368:15
  371:17 394:14,22
  397:6 412:2 419:5
  437:17 441:9
  446:10 450:14,15
  451:5 456:9 458:9
  459:21 465:18
  469:18,20
**questioned** 463:12
**questions** 15:19
  18:7 20:21 21:1
  26:5,9 32:24 39:5
  39:14 40:1,9 50:4
  50:13 51:2 63:3
  63:16,20,22 69:9
  70:21 71:8,15,20
  71:22 72:3,7,11
  73:3,8,24 74:11
  74:21 75:3,19
  76:13,24 77:16
  78:18,25 79:16
  80:18,20 82:18
  90:19 93:11 94:7
  96:16 99:3,17
  110:11 114:18
  122:12 141:12
  142:22 143:3,7,9
  146:9,15 147:21
  154:5 156:11
  161:1,6 162:5,21
  162:23 163:6
  164:22 167:18,21

168:3 169:5,12,15
  169:18 175:16
  176:6 178:5
  182:11 184:13
  186:12 187:20,22
  211:2,7 225:3
  264:20,24 280:6,8
  290:20 304:22
  311:16 313:20
  354:6 361:6,10
  371:19 386:15
  394:25 395:8
  425:18 436:20
  455:4 467:12,23
  468:2 474:19,23
  475:21 476:8,12
  476:14,19
**quick** 320:6
**quickly** 147:11
  231:21 242:6
**quite** 305:3 401:7
**quote** 14:20

**R**

**R** 478:1
**raised** 218:21 367:9
**raising** 182:18
**ramifications** 38:3
  40:13
**ran** 91:2 250:1
  365:25
**random** 431:22
**range** 127:15 128:2
**rates** 65:19 66:2
**Ray** 3:25 8:16
  382:14
**reach** 330:24
**reached** 330:1,16
  347:17
**read** 15:21,22
  25:14,16 39:20,22
  64:2,3 71:23 74:2
  74:6,8 79:13 94:1
  94:3 102:6,20
  145:17,22 147:2
  154:4 160:11

163:13,15 173:12
  173:17 192:23
  206:10 208:14,17
  210:7 214:5
  231:21,24 236:8
  236:12 242:5,9
  243:1,14 254:13
  257:17 262:2
  267:24,24 271:22
  272:9 281:3 285:7
  290:5 328:7,18,23
  334:2,8,14 336:4
  336:7,10,23 337:1
  338:25 406:11
  434:1 453:6 463:1
  464:19 469:19
**reading** 141:15
  147:17 151:9
  172:11 198:23
  199:6 232:2,8,24
  244:14 249:1
  252:6,19 254:24
  264:9 266:16
  267:5 268:21
  269:20 270:11
  282:20 288:22
  289:17,25 291:13
  292:20 296:15
  304:4 310:11
  320:11 329:21
  335:4 336:11
  338:21 339:15
  342:9 353:4 379:9
  422:3 424:19
  427:6 430:8
  434:20 437:20
  440:6 444:8
  463:21,25
**ready** 82:15 106:22
  164:20 290:22,24
  428:4
**real** 231:21 242:5
  320:6 333:14
**realize** 22:4 364:25
  471:1
**really** 18:13 78:24



83:16 94:17 98:5
98:5 148:13 178:1
185:17 199:17
225:3 228:15
250:20 261:18
262:25 286:1
301:24 313:22
319:8 321:16
327:3 372:7
384:24
**Realty** 5:11 251:15
268:24 269:21
**reason** 44:20 45:17
48:10 90:16
121:22 124:13,20
125:17 126:9
129:23 149:17
163:5 178:1,10
184:10 219:17
227:4 232:3
276:23 285:16
292:8 304:25
307:21 320:12,25
321:12,14 341:16
346:25 352:21
372:4 404:11,17
406:4 438:20
452:2
**reasonable** 40:25
262:13
**reasonably** 361:5
**reasons** 66:7
198:24 218:19
220:1 243:18
245:2 307:2
310:12 321:2
406:14
**recall** 63:12,15,19
72:23 73:2 76:13
80:10 81:1,3,5,14
81:18 101:1
113:17 114:23
115:1,7 123:3,4
133:20 134:15
136:9 151:25
194:1 245:7,8

254:14 352:4
367:23 376:18
378:9,25 402:1,16
463:14,17 466:8
467:7 468:21
473:16
**recalled** 415:10
**recalls** 91:15
**received** 84:19
101:22 122:5,10
148:25 149:18,21
160:20 164:15
250:24 335:20
354:1 366:3 367:2
389:20
**recess** 82:10 189:13
263:16 347:9
421:22
**recipients** 305:18
**recognize** 14:11,20
17:13,24 19:1
21:24 28:8,20
30:20 31:11 37:11
112:2 364:16,17
376:20 386:18
**recognized** 404:15
**recognizes** 18:16
**recollection** 271:10
271:14 287:19
292:24 296:19
346:7 415:9
452:21 453:13
455:7
**reconstruct** 341:19
343:9 373:20
375:4,8 419:22
**reconstructing**
418:20
**record** 6:21 8:4
70:1,9,17 72:2
74:18 82:9,13
85:13,14,16 86:6
95:9 96:21 101:20
108:14 114:16
120:13 121:7
139:19 141:14

142:24 147:9
166:22 167:2,5,6
173:12 182:14
189:12,16 201:11
201:24 202:6,13
203:3 205:20
207:4 208:8 209:4
210:24 211:10,13
211:23 212:13
216:16,25 253:17
257:5 259:1,12
263:15,19 266:14
267:9,11 268:23
287:2 296:6,14
298:1,20 299:14
327:8 329:12
333:10 346:4
347:5,8,12 364:24
379:25 383:11
392:7 393:4
400:17 401:2
405:6,21 406:9
407:2,16 411:17
412:8,16 413:19
416:18 417:1
421:17,21,25
423:21 441:11
446:5 447:6
457:16 462:7,16
477:1
**recorded** 198:24
310:12
**records** 82:22
83:11,21,22 84:14
84:22 85:6,18,21
85:24 86:2,9,11
87:2,4,7,23,24
88:10,11,12,24
89:3,4,9,9,13 91:7
92:17 93:13 94:9
97:23 108:18
117:23 138:8
141:17 143:22
144:12 197:9
215:3 264:10
266:8,18,22 267:7

274:16 280:4
286:19 288:24
342:20 359:7,8
375:16 389:13
434:15 435:7
441:21 447:11,16
**record-retention**
145:10
**recounts** 333:19
334:17
**recovered** 452:22
452:24
**recreate** 115:14
**recruit** 259:3
**recruited** 257:2,7
**recruiting** 258:23
260:17
**Red** 2:9
**redacted** 177:3
**refer** 88:20 114:24
115:8 119:14
193:1 308:1,17
329:7 380:12
440:15,20
**reference** 54:2
118:25 288:20
319:22 320:18
379:11 429:24
**referenced** 103:15
254:8 280:13
**references** 66:25
321:11 444:15
**referencing** 60:3
73:16 76:21 323:9
439:15
**referred** 67:23,24
89:12 115:20
134:13 243:16
311:24 411:19
**referring** 53:6,21
65:7 72:16 111:17
137:9 174:14
328:4 341:22
363:6 445:12,22
460:25 465:2
**refine** 186:23

**reflect** 72:2 74:18
305:5,7 380:24
**reflecting** 386:23
**refresh** 14:17
**refused** 62:16
74:22 176:17
186:11,16
**refusing** 142:21
**regarding** 16:9
21:10 33:11 43:5
44:20 57:17 63:9
64:20 67:4,5
70:22 73:3 76:24
77:16 80:18 84:20
84:23 136:15
139:4 164:12
167:21 172:14
200:16 202:12
206:14 209:10
244:19 250:15
253:16 255:19
282:24 320:19
347:22 353:5
354:6,15 356:11
362:23 365:7
369:17 381:5
384:14 387:11
389:22,22 396:14
407:20 409:6
410:22 413:8
418:5,12 421:8
424:20 426:24
427:8 431:25
455:4 465:7
**Registered** 1:22
478:4,23
**regular** 190:10
229:8 384:13
**regulatory** 212:3
233:7 253:8
**reimbursed** 434:23
**relate** 15:12 17:21
20:8 71:8 142:2
229:21 392:4
**related** 43:9 58:11
71:15 78:2 83:11



85:6 87:18 106:13
107:5 130:16
131:4 139:23
172:6 189:22
191:1,19 192:18
202:13 224:17,19
273:6 280:5,24
324:19,19 335:1
367:18 368:20
372:10 374:13
388:12 390:13,24
391:10 393:10,23
404:7 411:4
419:25 442:7
445:5,7 448:20
449:23 478:13
**relates** 18:5 186:11
186:14
**relating** 129:10
197:23 280:20
363:9 365:15
371:23
**relation** 424:21
**relationship** 39:1
39:11 40:14 203:8
**relationships** 36:16
**relative** 478:16
**relevance** 401:19
**relevant** 28:10
87:16 195:5
427:20
**relied** 89:11 292:1
292:6 309:21
**rely** 34:14 96:4
98:24,25
**relying** 214:10
343:24
**remainder** 188:23
**remember** 42:2,5
44:25 45:7 63:4
66:1,4 78:9 82:3
133:16 139:5
156:17 176:22
230:8,10 250:22
251:19 259:21
262:5 264:20

267:23,25 273:20
277:18,19 282:11
287:21,22 297:7
318:13 338:4
344:9 351:2
357:20 372:12,13
373:1 376:21,22
376:23 384:24
385:19 386:9,10
386:14,19 452:10
455:5 457:1
460:19 473:19
**remembered** 91:22
**remind** 170:21
**reminding** 169:18
**Remundo** 6:9
**renewal** 387:1
**renewed** 335:24
336:14
**rep** 96:14
**repeat** 25:13 34:21
55:17 67:12 70:10
115:5 116:21
117:4 129:4
154:23 155:12,24
158:21 205:21
214:2,4 216:18
219:6 222:22
332:18 412:10
416:20 456:9
465:23
**repeated** 169:11
**repeatedly** 178:6
**rephrase** 207:25
215:11
**reply** 335:20
**report** 45:11 73:13
207:7 290:3
292:17 297:10
317:13 318:1
319:11 442:5
**Reported** 1:21
**reporter** 1:22 8:18
15:22 25:16 32:22
39:22 74:8 94:3
102:20 163:15

167:5 214:5
469:19 478:5,23
**reporting** 447:10
**reports** 42:25 43:4
43:5,20 44:12
45:16 87:10 110:7
144:23 145:9,18
146:22 147:24
148:3,18 152:10
152:15 174:15
175:23 353:6
354:18,19 355:3
356:25 357:6,11
357:25 358:25
359:12 380:23
**represent** 8:22
36:18 234:16
**representation**
223:14 235:11,13
309:22 317:21
322:5 330:15
371:12
**representations**
36:9 199:10 215:4
220:9 221:11
234:8
**representative** 11:2
11:12 12:19 16:14
29:8 39:4,25
58:22 170:6,10
172:13 356:11
427:7 440:9
**represented** 198:24
310:13 385:24
**representing** 26:4
34:14 37:12 157:5
**request** 8:15 177:1
177:10,13,13,22
232:3 244:16
248:11 293:5
320:12 335:24
336:14 338:24
363:6,25 364:11
369:5,8,11 391:9
393:5 395:3,16,21
396:2 422:2,18

439:16
**requested** 335:8
392:24
**requesting** 231:17
**requests** 152:13
248:9 366:6,8,9
392:18
**require** 215:2
**required** 24:13
31:12 51:25
144:12
**requirements**
24:11
**requiring** 471:5
**research** 30:5 58:5
58:11 89:11 93:14
94:10 95:4 105:20
387:15 435:7
**reserve** 395:1
**resolution** 44:21
365:8
**resolved** 313:21
343:5,20 407:13
**respect** 220:5
229:17 237:6
240:18 301:22
354:16 389:24
405:14 437:20
438:10 451:23
**Respectfully** 165:8
251:2 394:17,20
**respond** 20:25
21:10,21 31:12
53:17 85:1 101:21
135:1 159:3,10
160:25 161:6,12
165:6 166:9 169:1
169:6 174:2
186:17 340:23
371:17 387:6
427:13
**responded** 69:8
71:1 111:11 163:3
310:6
**responding** 22:22
25:6,24 28:23

34:24 237:14
276:8 340:13
392:17 430:22
**response** 55:13,21
146:21 160:6,11
163:1 164:5
169:14 172:6,8
174:17 179:15
217:2 244:15
248:10,11 270:1
278:23 308:15
311:24 335:16
356:17 363:16
364:4 365:17,23
366:5 367:7 425:4
427:3 429:1 434:1
434:3 440:14,18
450:24 456:13
458:12 470:21
**responses** 4:17 6:17
64:6,15,25 66:25
67:18 68:13 69:1
69:3,22 70:14
73:15 77:20 79:4
80:1,11 81:7
114:17 156:13
174:11 178:15
180:21 199:10
215:16,18 216:12
216:21 220:19
252:7 258:11
312:14,17,18
369:9 436:18
458:23 459:17
**responsibility**
36:24 37:7
**responsible** 266:13
**responsive** 220:7
308:18 309:24
312:4 313:4 314:2
314:4,7 340:11
370:23
**results** 110:1 184:4
**resurrect** 476:8
**resurrection**
476:15



**retain** 36:17 113:12
141:17 143:21
**retained** 120:7
**retention** 6:21
139:19,24 141:15
389:23
**retired** 10:20 116:2
257:12
**retrieval** 465:4,8
**retrieved** 465:15
**retrospect** 255:17
**returned** 83:23
133:2,7 136:18,25
137:5
**review** 82:23 84:15
95:18 97:8,11
104:7,8,16 105:7
106:14 107:8,19
108:8,19 110:19
111:1,3 113:16
132:10 146:8
164:17 178:22
181:23 193:17
210:2 215:2
279:15 329:23
352:11 356:25
362:6,21 386:5
387:18 388:16
409:9 417:14,24
418:6 451:13
**reviewed** 41:7,9,10
41:17 63:17,24
80:6 89:25 95:20
95:20 97:22 99:4
100:7 105:24
117:7 118:16
126:20 127:1
132:14 134:1,2
136:7 148:11
154:4 164:7
165:21 166:4,5
193:24 194:4
236:5 272:1
350:19 367:16
439:1
**reviewing** 272:18

**revised** 282:22
301:15
**revising** 280:22
**rid** 295:14 296:21
416:3
**right** 11:11 14:22
17:14,24 24:2
25:4,20 34:5
44:19 67:3 90:25
91:2,3 99:13
113:11 118:21
144:14 156:4
157:2 162:20
177:6 183:6 193:2
197:11 200:6
204:23,24 213:7
223:10 224:7
225:15 230:18
236:16,19 237:15
238:11 244:13
249:7 250:2
257:17 259:10
266:1,22 269:17
270:7,8 275:11,16
277:1 286:13
289:7 290:16,17
299:11 301:5
303:9 308:19
329:8 330:8 337:4
337:12,16,20
339:21 344:14
358:17 362:15
368:17 381:16,17
384:25 393:2
395:1 400:23
407:11 416:12,24
422:12 444:19
446:20 450:2,21
455:23 461:17
463:4 464:18,20
471:9,14 475:15
**ring** 170:8
**rip** 383:8
**risk** 192:15 382:11
**risks** 151:12 168:13
189:22

**Rohl** 336:12
**role** 31:4 200:3
382:19
**room** 166:23 167:7
169:24 421:5
**Roth** 2:7 8:15
**route** 180:6
**Royal** 378:15
383:19
**rubber** 230:11
**rule** 185:9,13
187:14 394:20,20
**ruling** 173:22
**run** 366:1,23,24
384:7,10,13
385:13 388:12
389:14 392:11
445:25 446:23
**runs** 386:6,23
387:13,17,24
388:10,15,23
389:8 390:3,13,23
391:10
**R&D** 85:20 87:2,23
88:9 89:10 91:2
95:19 97:9 99:4
100:7,21 102:17
106:12 107:5,20
108:9 110:13
126:18 127:8
128:7 129:9 131:5
132:11 133:1,10
134:2 212:9
460:12

---

**S**

**sales** 85:16,24 87:4
87:23 88:10
**Salling** 6:6 360:18
373:16 375:24
379:11 380:9
385:9 396:3 399:6
400:2 417:22
**samples** 120:6
209:20 289:20
**Sampson** 170:11,13

433:9 466:25
467:21 468:19
469:15 470:2
**sanctions** 181:8
183:12
**Sarah** 2:17 9:14
**sarah.smith@kir...**
2:18
**Sarner** 5:17 7:6
327:13
**sat** 333:4
**sauce** 183:16,16
**save** 334:6
**saw** 13:24,25 14:1
42:6,7 45:16
95:12 273:21
284:14 288:19
300:4 306:2
314:12 383:8
386:19 388:11
441:18,19
**saying** 16:20 23:16
33:22 35:18 76:8
83:10 85:9 89:8,9
103:21 195:1
227:15 235:1,4
247:7,8 261:5
272:23 276:22
285:10 295:18,19
296:23 298:24
307:25 322:1,22
323:1 325:6,16
326:3 331:1,2
339:8 341:20
343:14 344:11
345:7,23 346:21
349:17 370:16
371:10 385:21
406:3 414:18
415:2,14 442:13
454:5
**says** 24:25 92:23
109:7 141:8
143:14 144:19
145:1,6,10,18
147:21 148:10

151:1,6,8 195:25
196:18 244:14
254:24 259:5
263:23 264:8
266:6,6,16,20
267:6 269:4,20
282:20 287:4
292:15,24 293:2
294:16,20 301:14
301:19 305:23
306:14 329:21
330:24 335:4,19
338:16 342:8
353:3 356:10
381:12 401:24
402:17 403:6,9
417:12 418:25
426:23 427:6
428:4 430:21,22
445:18 465:5,24
**Schroyer** 5:16
**Schwartz** 360:6
366:12,20 368:6
372:10,16,19,24
397:12 406:24
407:12,19 411:8
412:3,12
**science** 212:3 233:4
233:5 253:8
**scientific** 93:13
94:9 138:8,20
207:14 474:14
**scientist** 59:13
211:18
**scientists** 89:11
135:9 190:25
191:20 212:10
213:22 297:16
333:5
**scope** 14:14,25
15:10 16:4,22
17:18 18:3,19
19:5 21:4 22:12
24:7,21 25:10
26:22 28:13 29:1
29:13 30:24 31:16



32:25 33:7 34:18
35:22 37:16 38:20
39:9,17 47:25
50:15 51:18 52:14
53:3 72:4,13 76:1
76:17 77:9,24
78:15 80:15 81:10
81:23 93:19 100:1
104:19 108:23
120:16 121:8,14
122:21 123:13
138:10,23 140:2
141:5,25 143:5,7
143:18 144:3
145:4 146:9,16
148:7 151:4,20
153:18,25 154:10
155:9,20 156:6
157:11 160:7
161:16 162:6,24
167:19 184:15
185:3 196:6
197:25 198:16
229:14 230:2,20
257:14 260:9
277:23 278:12,24
279:5,12 280:17
283:4,13,24
284:11 285:12
287:16 288:3
301:24 309:9,17
310:3 312:6,25
326:23 402:14
403:4 424:13
431:9 432:10
433:2 434:4 435:3
435:17 436:4,13
437:2,13 449:18
450:10 451:8
453:10 454:1,25
455:15 456:16
458:5 459:5,19
460:17 464:6,12
466:14,15 468:16
469:2,22 471:13
472:4 473:13

475:2,11 476:1
**scratch** 45:15 204:9
**screen** 43:22 54:18
160:18 345:18
463:2
**screening** 108:7
422:5 424:9
**search** 288:23
358:16 359:16
365:25 366:23
369:12 370:23
371:6 392:2,12
393:1 395:16,22
396:2 423:2,16
448:18
**searched** 157:16
419:24
**searches** 316:9
392:8
**second** 6:18 120:18
141:23 177:19
200:23 244:13
295:6 320:6
335:15 368:25
391:23 445:7
**secondhand** 50:23
**section** 196:14,17
430:24
**see** 8:25 9:2 10:13
10:14 42:18,20
44:11 45:3 47:15
51:7 54:18,21
65:25 68:8 70:20
72:18 73:4,14
74:19 76:19 77:17
92:22 93:2 95:12
95:25 100:16,18
114:4 124:2,2
126:6 128:14
141:20 144:16,19
144:24 145:23
147:25 148:1
149:5,6 150:5
151:13 153:9
158:13 164:8
176:12 177:17

193:18 195:3,21
196:2,14,19 197:6
199:4,10 200:4
201:25 220:22
231:7 232:6,12
234:13 241:19,22
243:15 244:25
245:5 251:25
252:14,23 255:5,8
264:1,8 268:17
269:3,5,12 277:3
277:5 284:4 289:5
289:22 291:5
292:10 293:24
294:10 302:15
303:17,23 304:2,7
305:14 307:16
308:5 309:14
310:18 314:13
315:8 320:5,23,24
323:8 327:13,17
330:5 331:23
333:2 335:13
336:15 337:10
342:14 343:19
346:19 348:5,13
348:23 349:12,13
350:17 351:20
352:23 359:16
377:10 378:5,13
379:6,14 383:22
385:9 387:3,4,12
388:8 390:10
392:3 393:1
408:20 409:7
411:2 419:8 422:9
422:11 423:17
424:2,23,24 426:1
427:10,11 428:2,5
428:18 430:16,21
430:23,24 433:18
434:24 437:24
440:1,12,23
444:13,18,20
446:18 448:3,15
449:13 450:21

452:11 461:18
464:4,13 465:2
**seeing** 216:8 245:8
352:4 367:24
376:18
**seek** 158:11
**seen** 13:22 112:11
112:13 121:25
122:24,25 123:2,4
123:22 125:17
126:4 136:14
139:15 170:16
193:25 202:22,23
218:9 224:13
230:6 231:9,11,12
236:11,13 251:17
251:21,22 253:21
254:4 267:9 273:2
273:6,9,23 275:25
277:7 278:1 280:3
280:4 288:14,15
288:18 295:24
305:13 306:1
336:25 352:2
374:13 376:16,19
376:24 377:7
378:7 382:18
384:1,3,24 388:4
404:5,10 412:5,6
417:9 418:10
438:22 439:14,20
439:24 441:16,24
451:25 452:3,19
455:6
**selection** 127:9
431:22
**selfish** 184:2
**sell** 252:21
**selling** 226:1
**send** 35:11 109:8
233:22 246:15
247:10 300:18
438:19,23
**sending** 328:20
**sense** 27:13 40:10
70:4 438:18

**sent** 14:3 35:17
70:6,7,14 71:4
72:25 84:14 89:4
91:16 94:25 95:14
97:4 107:20,21
108:8,18 109:2
110:14,24 112:20
113:2,8 122:19
123:10 125:13,24
126:19 128:18
130:15 131:4
133:1,11,13 134:3
136:16 138:17
220:21 222:11
246:3,3,10 247:2
250:25 296:11
302:5 304:12
305:9 306:5,15
309:1 330:8
336:12 389:14
390:3 437:21
438:12,17 439:1
452:25 460:13
**sentence** 31:2
244:13 282:19
434:2,19
**separate** 349:14
400:10,15
**September** 409:10
411:10,12,14
412:25 413:13
414:5
**sequential** 349:11
**sequentially** 349:23
**serious** 289:7
**seriously** 342:13
**serve** 374:25
**served** 20:16 69:23
70:3 169:2 312:15
354:20 366:9
369:4 375:2,9,12
407:23 422:18
**Services** 1:24 8:17
8:19
**serving** 58:22
**set** 6:18 252:7



269:25 432:18
458:23 478:9
**sets** 449:6
**settle** 66:8 199:3
310:16
**settled** 199:1 217:9
223:13 227:10,13
243:18 310:15
313:21 318:7,8
321:14,21 322:2
324:11 348:12
412:4 433:23,23
**settlement** 223:23
223:25 224:5,23
308:16 314:24
318:25 373:3
411:9 412:13
433:16
**settlements** 66:20
67:19 307:15,20
321:12 323:9
347:16 350:3
430:1,5 434:21,22
**settling** 222:3 329:3
432:20
**seven** 170:25
171:15 187:15,16
395:12
**seventy** 13:2
**seven-hour** 171:10
**Shafer** 135:23
**sheet** 353:13
**shipped** 97:3
**short** 469:14
**shortcut** 461:17
**shorter** 199:15
217:25
**short-circuit**
461:18
**shot** 470:9
**show** 13:18 44:1
53:6 54:6 139:11
209:24 243:5
244:5 288:8
300:11 347:24
351:14 370:1

376:8 383:13
390:2 418:7,11
462:20
**showed** 233:6,6
388:20
**showing** 43:8 72:14
124:5,6 455:23
**shown** 72:8 271:9
272:25 387:23
388:23 389:5
**shows** 319:12
**Shroyer** 327:13,20
327:24 338:22
**sic** 29:17 338:21
410:11
**sides** 187:18
**sidestep** 215:12
**sidetrack** 391:23
**sidetracked** 178:3
**sign** 216:5 252:2
257:2 258:23
272:15 277:7
282:7,24 293:17
293:21 294:22
296:23 297:14
**signed** 125:13
155:18 156:4
172:4 215:16,17
220:17 255:24
256:11,23 257:11
259:25 266:4
269:6,8 273:11
274:23 275:11
276:1 277:14
280:14 282:1
284:2 285:9 294:2
295:1 302:4 304:5
305:8,9,24 306:12
309:4,7,23 373:4
457:23 460:7
**significant** 93:8
96:11 172:1
352:20 403:24
415:23
**signing** 262:5 280:7
284:17 457:14

**similar** 158:3
160:25 184:13
387:8 425:7
**simple** 319:9,10
**simply** 156:3
174:14 232:2
320:11
**Singer** 383:21
384:22
**single** 61:14 85:15
161:10 172:22
207:12 208:2
261:13 272:1,2,17
272:18 274:9,9,22
274:22 285:6
294:25 317:6
332:5,6 438:19
439:11 458:11
465:19
**sir** 19:21 20:2,25
23:7,19 25:3,19
26:25 31:19 41:25
53:14 72:22 73:19
75:19 78:8 99:22
100:5 129:6
146:20 158:17,24
159:8,25 160:10
161:19 162:9
163:17 165:8
166:17 218:24
219:10 220:5,8
221:8 222:18
225:9 226:5,10,14
227:3,22 236:8
238:25 240:17
243:5,21 256:9
276:5,12,13 279:1
297:12 304:10
322:4 325:13
343:22 344:11
345:10 353:16
363:1,22,25 364:5
367:4,8,11 468:6
**sit** 16:13 24:16 29:7
34:2 93:15 94:12
96:25 97:10 100:5

106:11 123:7
124:24 125:20
128:17 129:6
131:1 133:24
193:4 194:10
207:11 208:1
211:17 234:11
274:20 302:2
323:16 333:15
343:7 345:13
391:7 393:8,21
439:14 453:3
465:19
**sitting** 26:4 234:25
**situation** 396:7
**six** 62:24 174:7
367:3 371:1
431:17
**sixty** 13:1
**Skimmed** 147:10
**skip** 146:1
**slash** 195:25
**slightly** 184:24
220:16
**Sloane** 6:2 104:14
108:19 111:4
113:18 117:7
118:15 126:21
127:5,19 132:14
132:21 133:21
134:11 250:8,17
250:18 282:22
301:9,14 332:21
333:4 344:6,13,24
345:11 348:22
350:10 381:9,13
382:22 411:3,19
**slower** 334:5
**smaller** 445:7
**Smith** 2:17 7:5 9:14
9:14 241:22,25
242:12 245:10
360:12,16 364:16
364:17,18,19
374:16,18,22,22
374:25 379:10

395:17 397:22
398:24 399:15,23
407:21 411:4
417:23
**sole** 11:11 335:10
459:15
**solely** 249:3
**somebody** 32:8
47:21 49:1 51:16
52:1,23 55:8
88:11 96:4 98:2
105:15 126:25
127:9 261:1,11
296:22 418:22
448:11
**somebody's** 261:19
**sorry** 18:12 23:12
25:12 34:20 37:18
55:17 59:15 64:11
83:24 86:14 98:10
115:4 119:2 121:1
128:25 137:9
142:11 146:12
154:22 155:22
157:23 166:17
189:25 195:17
200:16 204:16
207:18 212:14
214:1 216:17
219:2 229:19
231:6 238:12
249:19 251:9
267:22 281:20
282:5 286:24
290:25 298:21,23
302:23 303:8
308:10 310:19,23
312:10 320:2
326:14 328:3,11
332:17 350:16
351:21 361:17
363:24 364:5
383:20 386:3
402:24 411:18
412:1,9 416:19
417:19 430:17



449:5 450:5,12,13
456:7 461:6 462:3
468:9
**sort** 170:8
**sorts** 167:24
**sought** 178:13
**sounds** 32:3 184:5
**source** 202:2
291:17,18 435:9
**sources** 202:10
**Southern** 3:14
**spacers** 112:12
124:5,6
**sparse** 187:19,21
**speak** 13:4 18:13
23:14 47:1,5,22
48:16,21,23 49:3
51:6 52:16 55:23
56:2,7,11,12,18
56:18,25,25 57:7
57:7,14,14,25
59:2,4,18 60:6,10
61:9,14,23 62:3,9
62:15 90:5,20
91:21 95:6 114:11
119:7,18 132:21
172:3 177:11
182:14 194:21
201:14,20 202:1,8
272:12 278:7
279:2 294:17
356:24 357:4,10
361:4 404:20
428:17
**speaking** 13:16
19:21 24:17 59:8
113:22 184:24
201:16 212:15
272:17 274:9
**speaks** 294:16
**specific** 43:16
45:24 48:10 58:16
65:25 68:1,8 81:3
81:15 83:3,4 84:6
86:25 103:5
136:15 156:9

175:16 199:23,25
201:16 216:8
253:13 315:12
359:25 368:16
393:6 396:9
431:16 473:20
**specifically** 41:7
43:15 45:8 86:5
92:23 134:17
137:24 156:12
177:18 200:19,20
202:16 217:5
235:6 236:3
264:21 267:13
283:17 288:20
293:12 314:14
321:18 351:2
357:21 359:1
372:14 376:21
406:18 438:10
442:8 456:23
**specifics** 86:6 105:3
140:10 474:1
**speculating** 306:22
**speculation** 60:17
91:10 274:2 277:2
389:18 410:19
414:25 417:18
419:15
**speed** 347:16
396:10
**spend** 89:7 198:20
**spending** 162:20
**spent** 171:25
178:25 278:18
354:4
**spoke** 50:10 264:18
272:1 274:22
285:7 354:14
426:20 427:16,24
429:9
**spoken** 59:21 96:22
98:19 192:23
**Square** 3:5
**staff** 293:14
**stage** 181:10

**stages** 88:20
**stand** 185:7 369:17
385:12
**standard** 5:12
188:4 261:22
268:25
**stapled** 349:9
377:15
**staples** 349:7
**start** 84:6 290:21
361:21 372:15,19
374:1 396:10,12
403:13 444:23
**started** 104:22,24
104:25 156:17
167:20 237:24
398:2,16 419:19
**starting** 268:21
471:17
**starts** 252:19 291:6
**state** 8:21 18:4
262:16 269:1
282:17 289:3
380:7 406:22
419:19 430:8
437:19 454:20
458:22 467:5
**stated** 20:16 90:11
160:19 165:15
229:20 262:10,15
281:2 323:11
365:23 425:4
467:18
**statement** 27:8,8,17
27:18 28:2,5,5
53:16,24 140:7
142:23 155:5
191:25 218:22
232:15 251:4
253:1 274:17
299:23 304:10
321:8 331:11
334:24 342:17
343:1,8,10 345:16
407:4 435:13
438:2 455:13

468:5,10
**statements** 34:25
40:24 281:24
323:12 326:17
346:13
**states** 1:1 8:8 103:7
141:14 231:25
252:6 262:22
288:21 289:17
320:11 394:20
**stating** 344:19
366:6
**status** 228:23
**statute-of-limitat...**
224:12
**staying** 372:3
**Steinmetz** 1:11 4:2
4:6,7 8:1,5 9:3
10:6,12 13:19,22
18:11 21:5 32:20
51:21 52:5 72:17
73:21 74:17,25
107:8 114:20
142:6,8 159:2,10
170:5 172:19
174:18 239:2,13
268:2,6 276:19
290:8 300:11
303:13 347:25
348:1 367:23
368:5 408:3
448:17,18,20
462:17 466:18
467:20 476:25
**Steinmetz's** 56:5
61:20 128:24
129:16 154:21
155:10 156:7
203:21 243:11
244:7 284:13
343:12 426:18
429:5 435:15
436:15 439:18
446:5 457:17
460:16
**stenographic** 147:9

327:8 347:5
379:25 383:11
462:7,16
**steps** 168:25 256:9
**Stoneback** 60:25
**stop** 169:25 237:6
459:14
**storage** 121:21
**stored** 63:10
**stories** 322:20
**straightforward**
26:11
**strategies** 69:12
220:3 228:24
**strategy** 201:18
205:1,8 206:15
207:8 221:21,22
222:14 233:3,12
234:23 235:19,22
247:20 253:10
300:25 329:9,19
**Street** 1:15 2:20
8:13
**Streets** 3:6
**strike** 165:8 180:21
220:6 234:9
240:17,24 241:8
251:3 411:12
**studies** 103:5
202:12,15
**study** 336:13
**stuff** 210:12 358:7
437:9 462:11
**subject** 39:12 63:5
70:14,22 90:21
97:23 99:2 103:17
168:1 172:11
179:14 180:22
427:22 428:5,7,10
464:8 466:25
467:21 468:3,18
470:21,23 476:7
**subjects** 75:7
**submitted** 269:1
307:9
**subpoena** 84:18



85:1 101:22
106:23
**subscribed** 289:19
**subsequent** 173:22
**subsequently**
466:18 467:24
**subset** 408:11
**subsidiaries** 255:2
**subsidiary** 379:12
**substance** 174:24
184:10
**substantive** 179:21
**succeeded** 390:12
**sued** 65:20 197:21
403:18 446:25
**suggest** 180:11
187:13
**suggesting** 185:21
**suggestion** 179:2
366:16,19
**suing** 405:17
**suits** 14:21
**Sullivan** 4:12 317:3
348:5 452:22
**sum** 184:9
**summary** 43:5
193:6 431:21
**summer** 467:22
**Superior** 380:6
**superseding** 422:7
**supplied** 86:7 103:3
104:1 265:25
329:2 331:6 445:4
**supply** 48:12
444:16
**supplying** 19:2
21:25 22:8
**support** 205:17
206:2 207:1,14,24
211:19 236:21
237:20
**supporting** 329:24
335:7
**supposed** 147:22
270:18
**supposedly** 178:7

**sure** 13:21 20:22
36:25 63:4 64:10
65:6 68:19 70:2
82:6 85:15 86:5
86:22 87:2 88:16
89:1 91:22 92:6
94:20 104:22
105:14 109:2
110:11 111:17
113:5 116:7,9
123:15,18 125:8
133:17 135:17
144:7 145:20
147:4 158:20
166:3 173:14
190:1 197:5,8
198:6 203:7
205:24 209:5,6
213:20 214:13
215:3 223:20
229:5 256:10
257:15,20 258:17
261:6 263:12
285:1 287:21
293:2 297:6 298:2
298:25 303:3
310:19 333:13
334:25 338:20
349:22 359:6
364:16 372:16
380:23 382:18
384:8 385:21,24
386:19 389:21
398:2 399:15
408:10 410:5
412:20 414:7
430:17 434:17
435:6 439:24
445:1 450:14
460:20 461:12
462:5 463:3
475:14,21
**surprised** 469:10
**surrounding** 42:16
352:22 396:11
**suspended** 424:10

**swear** 288:17
**swearing** 262:19
**swore** 161:20 172:5
283:21 333:6
458:12
**sworn** 10:7 163:18
271:17 272:15
289:18 455:25
478:8

---

**T**

T 478:1,1
**table** 75:14 319:1
**tables** 43:1 315:3
319:2,21 442:21
**tabs** 124:5
**take** 4:19,22 82:5
139:12 163:5
164:9 168:25
176:21 184:15
186:25 189:7
210:16 211:7
231:23 239:15
254:17 256:10
263:10 290:17
298:5 344:24
421:15 429:13
434:18 461:7
462:22 471:7
**taken** 8:13 17:15,25
18:17 46:6 130:11
135:8,12 136:12
172:2 249:14
478:15
**takeover** 424:21
**takes** 362:19
**talc** 11:2,13,19 12:4
12:20 22:10,23
24:4 28:24 37:13
61:16 62:5,22
65:2 66:21 67:19
68:16 73:9 74:13
75:24 81:21 82:24
84:8,14,21,23
85:7 87:19 100:8
105:23 106:13

107:5 128:20
129:10 130:17
131:5 136:5
151:12 189:22,24
193:19 194:15,16
197:23 200:8,17
200:20 201:8,8,9
201:17 202:4,14
202:16 204:8,13
205:18 206:3
207:2,15 208:6
209:1,2,10,13
211:21 213:9,19
213:23 215:2,18
216:14,23 217:16
218:6 219:14
220:10 221:12
222:5 223:15
225:10 226:1,17
227:4,12,14,20
228:8,9,25 229:12
230:11 231:18
232:10 237:3,22
237:22 242:1,14
242:21 243:9
244:2 247:11
248:2 249:4
259:10 282:24,25
289:20 297:18
310:15 320:16
329:18 330:3
333:7 334:20
335:2,9 339:19
347:17 360:9
361:24 363:11
372:11,20 373:9
373:14 379:12
381:17 390:24
391:10 401:14
404:7 405:3,18
406:6 409:6,11,24
414:22 440:10
446:25 449:25
470:16
**talc-related** 406:24
**talk** 16:10 26:17,19

26:25 27:3 39:2
47:16 58:10 83:3
150:1 153:4
157:20 158:14
199:21,22,23
205:2 225:5 232:1
239:22 243:24
271:12 307:1
321:23 331:5
337:15 344:5
356:13 357:19
362:23 387:14
429:1
**talked** 50:20 60:21
68:25 75:6 76:23
108:25 115:12
134:18 266:11
275:2 324:22
339:2 356:20
385:17,17 387:10
409:22 425:20
429:25 432:15
442:18 456:23
465:3 471:15
**talking** 25:2,3,18
25:19 26:3 35:16
66:1,2 84:3 86:15
111:22 112:5
121:19 174:25
175:22 188:25
198:21 204:17
205:3 206:6
215:23 217:2,4
253:12 300:22
301:25 302:25
324:6 328:14,21
337:9 339:3,4,11
359:1 361:18
409:17 420:12
428:25 438:4
444:22 445:13
449:7
**talks** 144:23 199:9
200:2 327:19,23
356:12 379:8
380:9 408:23



409:5 472:17
**team** 204:19
**technically** 184:22
**telephone** 167:13
**TELEPHONIC** 3:9
**tell** 22:5,23 23:8,23
24:24 25:6,23
26:15 41:6 60:20
71:13 82:21 94:19
109:21 139:13
178:24 186:7
230:10 261:10
290:18 331:7
358:6 373:25
387:5 410:22
433:22 437:7
447:17,22 461:7
461:16
**telling** 243:7
294:23 322:20
**tells** 410:21
**ten** 72:2 169:5
446:12
**tend** 251:20
**term** 27:23 29:18
70:3 76:5 229:9
236:1
**terminology** 24:5
**terms** 22:15 23:23
66:4 69:10 75:8
144:17 347:16
365:25 366:23
369:13 370:23
390:12 417:25
419:9
**Terrace** 97:13
**test** 110:1 299:5
**testified** 10:8 62:21
64:20 100:24
121:16 133:6
151:16 191:13
221:24 255:3,18
259:8,14,16
267:19 295:20,23
299:8 404:14
434:8 451:24

455:8,12 457:3
460:10 467:20
468:18
**testify** 12:5 14:6
19:12,17 20:6,10
20:15 21:10 29:23
33:11,17 61:17
62:6 99:1 124:25
125:21 129:12
131:2 172:14
289:1 297:17
356:11 360:3
386:22 387:19
388:16 399:13
426:24,25 427:7
428:5,9 463:22
**testifying** 21:13
63:12 452:11
**testimonies** 64:1
**testimony** 29:15
30:1 33:24 39:12
56:6,9 58:7 60:8
61:21 63:8 85:17
88:21 89:25 90:3
91:14,23 95:25
96:1 98:9,18,21
102:5,14,24,25
103:25 104:13
106:3,18,25
107:24 108:12
110:22 113:16
120:3,22 122:4,8
128:12,14,24
129:16,18 130:7
130:20 131:9
133:20 134:6,22
136:17 137:15,24
155:11 156:8
170:12 194:19
198:3,8 202:18
203:22 208:24
209:12,17,19
238:7,20 239:9
241:14 243:12
244:8 250:19
255:22 256:21

263:5 268:8 272:6
272:8,11,22 274:7
274:13 275:4,21
276:3 283:16
284:13,25 285:14
287:19 294:7,14
296:10,15 302:16
321:7 323:11
325:10,13 333:12
340:21 343:13
354:10 358:11
396:19,24 404:19
415:1,10 420:6,20
426:19 429:6
433:20 435:16
436:16 439:19
446:6 450:19
451:16 452:16,18
453:4,7,13 454:4
454:5,10 457:17
460:17,20 464:16
466:9,19 467:1,2
467:8 469:15
**testing** 63:16 85:14
101:6,20 103:5,25
105:23 117:23
119:16 120:5
127:22 128:6,20
129:10 130:16
131:5 136:5
194:15 208:4
215:3 253:17
290:1 291:15
292:2,14 294:10
294:24 295:9
296:24,25 298:14
463:13
**thank** 20:23 33:1
143:10 162:18
170:18 182:4
188:7,14 189:3,5
320:8 399:19
476:11
**Thanks** 461:13
**theory** 385:19
**thereto** 289:1

**thing** 40:25 111:22
120:7 123:23
145:23 150:3
165:22 172:23
180:12 184:20
187:12 225:18
236:6 254:13
275:10 292:11
295:6 299:11
300:22 328:7
335:22 347:2
392:19 442:9
462:24 464:19
**things** 16:10 26:18
31:3 44:25 63:11
69:19 83:17 87:21
108:1 117:14
122:15 165:1
218:14 224:10,20
227:17 243:15
248:15 266:10
274:18 276:24
285:1,17 295:4
298:4 313:24
314:19 316:6
322:15 324:21
328:8 339:11
410:4 418:20
421:16 440:20
441:22 460:23
467:4 469:11
**think** 10:2 38:22,24
40:24 45:23 46:8
47:9 48:2 50:2
51:4 60:19 62:25
63:1,7,7 66:12
76:3 79:19 91:11
91:13 92:25 93:5
96:11 105:12
108:24 115:11,12
116:19 118:7,8
124:14,20 125:18
126:9 127:4
129:24 132:19
134:7 143:20
167:6 170:15

171:3 173:1 175:9
180:5 181:9
184:15 185:18,23
186:4 187:3,3
190:18 191:12
231:12 233:11
234:4 236:4
245:12 246:12
247:4 251:19,22
262:9 267:13
276:24 278:2
288:19 294:15
295:13 296:7,10
296:20 297:1,13
297:19 298:12,16
299:10 302:24
306:4,8,11,17
312:8 319:3 323:6
326:6 336:5
337:25 341:1
342:23 344:7,23
345:4 346:15
357:17 374:17
382:19 401:18
404:19 405:1
407:17,18 416:1
417:24 419:6,11
442:18 443:16
446:9 449:6 458:8
473:1,16 476:7
**thinking** 256:24
**third** 58:24 185:4
220:14 335:22
452:20 453:6,14
**Thomas** 3:18
**thought** 94:19
117:2 171:5 219:3
223:3 224:1
290:25 301:8
318:24 338:5
344:13 377:18
412:19 456:8
**thousand** 13:2
245:16 348:16
**thousands** 199:20
225:6 245:15



311:10,19 332:4
365:22 366:3,25
438:6,8 446:12
**three** 13:1 59:1
96:14 129:2
170:11 180:4
182:2 228:13
273:21 286:20
339:16 385:23
398:8 401:19,25
402:18 403:10,15
432:14 444:24
464:15 466:24
469:16
**three-paragraph**
331:19
**three-year** 342:12
401:12,21
**thwarted** 175:19
**till** 250:13
**time** 8:12 13:10,24
20:19 32:9 50:3
64:3 79:25 82:7
82:11,18 83:6
84:23 89:7 107:12
110:10 117:15
130:1 132:2,4
144:7 146:4 149:1
155:24 160:22,23
162:16,19 163:6
164:19 166:20
167:17 168:8
170:23 171:25
172:10 173:2,3
174:19,19 180:2
181:1,5,16 182:10
186:16 188:6,14
189:10,14 198:20
204:11 210:22
211:11 212:18
216:6 220:14
231:23 249:23
256:7 257:19
263:13,17 273:5
284:1 287:23
290:18 292:5

295:9 304:17
329:1 334:6,9
343:23 347:6,10
354:3,4,18 356:8
362:10,20 381:21
382:12,25 397:3,4
400:23 404:15
409:21 412:19
414:12 416:7,9
421:16,20,23
430:10 432:24
437:8 438:20
443:13 449:23
454:8 459:25
461:7 465:10
469:3,6 470:5,8
470:10 476:10,16
476:23 478:8
**timeframe** 82:19
173:9 212:15
215:24 414:2,3
**timeliness** 168:20
**timely** 169:2
**times** 32:23 62:21
62:24 79:14 129:2
162:6 163:4
165:17 169:13,18
169:22 174:5,6
178:10 180:4
182:2,2 211:16
222:12 228:14
235:17 248:24
287:5 301:20
333:19 334:18
400:20 404:1
405:11 434:9
442:19 459:23
**tire** 243:17 330:1
330:16 342:10
346:22 431:25
**tire-and-rubber**
230:12
**today** 8:11 12:6
13:3,9,20 18:7,15
21:13 29:23 30:9
34:2 39:12 43:12

44:1 50:13 53:10
58:10 71:22 92:2
92:10 93:15 94:12
97:10 99:2 100:6
106:11 117:9
123:7 124:25
125:20 128:17
129:6 131:1
133:24 142:10,17
145:9 146:21
164:12 180:14
188:10 193:4
194:10 196:22
207:11 208:1
211:17 224:16
234:11,25 274:20
298:16 302:2
310:11 318:15
323:17 343:7
345:14 363:2
364:22 369:22
370:2,4 387:19
391:7 393:8,15,21
395:12 422:13,25
424:16 433:20
434:9 439:14
453:3 463:24
465:19
**today's** 30:22 41:8
47:3 79:2 148:19
161:1,13 166:10
194:3,11 197:14
310:22,23 352:11
371:22 386:6
390:20 392:25
464:7 469:23
**told** 49:22 98:25
243:21 266:8
267:17 270:20
285:19 292:1
339:21 390:21
418:11 420:18
459:17
**toll** 342:12
**Top** 437:19
**topic** 15:12 17:20

18:4 20:3 67:25
71:14 76:24 78:3
92:1 140:4 142:1
142:24 143:3
147:21 161:24,25
163:23,25 165:24
166:5,9 168:6,7
168:14,19 169:1
169:20 172:4,7,9
172:14,24 173:14
174:12 175:22
178:8,22 179:6
186:7,14 191:2,19
192:18 193:12,19
195:5,24 197:1
198:21,22,23
199:6 200:1
201:16 229:20
307:1 310:11,21
312:12,17 353:3
354:7 355:25
356:12 359:24
361:18 364:9
368:8 391:23
424:18 426:16,24
427:8 429:2,10
464:7,9 466:12
467:25
**topics** 12:9 14:5
19:17,19 27:4
30:7,13 31:6
42:17 58:9 71:7
100:16 147:22
173:15 196:21
199:18 352:19
427:13
**Tortorella** 3:13
9:18
**total** 12:24,25
274:2 284:17
**totally** 309:21
**trace** 209:21
**track** 20:19 32:23
41:20 171:24
181:25 184:3
**tracks** 270:7

**train** 210:13 383:9
456:8
**training** 227:23
**trans** 304:4
**transcript** 4:8,10
135:25 171:21
209:25 210:7
461:2 464:16
478:6
**transcripts** 136:8
136:12 139:3
170:16 208:14,18
452:12
**transfer** 58:11
**transferred** 83:12
88:14,25 89:14,15
92:10 105:23
106:14 107:6
129:8 213:5
**transmitted** 321:2
**transmitting** 304:5
305:24
**transpiring** 293:4
**trial** 13:10 14:23
16:17 17:14,25
18:16 185:6
475:20
**tried** 368:17 374:25
410:4
**Triglia** 135:15,17
450:4
**trouble** 75:2
**true** 26:20,20 27:1
27:1,8,12,17
38:10 80:2 125:22
154:14 155:1,18
156:2 158:4
160:15 161:25
163:25 252:11
255:24 256:13,24
261:12,14 262:5
262:19 264:14
265:23 270:5
278:9 283:21
284:8 289:4 295:8
313:8 323:23



324:24 326:3,21
346:21 366:17
373:7 436:24
458:2,2,14,23
460:8 469:5 478:6
**truly** 31:24 32:5
**trust** 157:6 164:6
329:22 437:4
**truth** 22:5,24 23:8
23:19,22 24:24
25:6,23 161:19
163:17 173:11
272:16
**truthful** 36:11 37:2
40:16 256:20
459:10
**truthfully** 27:4
30:9
**try** 84:5 89:7 117:4
187:23 192:8
199:14 222:22
223:4 261:19
316:6 322:21
332:7 333:20
340:19 407:6,6
421:15 434:16
461:17 462:8
**trying** 31:25 37:19
38:18 42:1 45:25
115:14,15,16
133:15 134:22
146:13 201:1
205:2 217:24
256:1 306:21
311:22 319:8
321:13 325:12
326:4 328:8 334:6
341:19 349:16
362:21 372:12
373:20 375:3
386:8 389:3
399:17 411:7
416:8 418:21
443:8,9 446:21
471:20 472:19
**TUNIS** 3:19

**turned** 264:11
265:11 266:19
**twice** 277:10,12
399:15,16,18
**two** 3:5 14:1 80:7
87:21 167:8,16
182:2 199:17
295:4 302:25
349:1,8,17 383:6
397:20 431:14
432:3,14 449:6
455:6 463:16
466:16 468:23
**type** 22:17 107:19
218:10 224:22
236:6 259:19
283:6 316:24
321:8 351:6
392:19
**types** 63:11 69:1
75:6 217:12,14
218:20 230:15
311:15 314:22
315:1 323:11
347:22

_____

**U**

**Uh-huh** 320:7
374:9 375:6,13
**ultimately** 36:24
296:17 465:15
**unclear** 373:17
**understand** 13:8,14
13:15 14:4 23:8
23:15,24 24:2
26:2,12,16 27:14
29:4,17,21 30:5
30:16 31:4,10,21
32:1 33:3,10 34:3
34:8,13,25 35:4
36:7,15 38:18
58:4,6 85:25 87:3
97:5 101:20 102:1
115:16 134:22
135:7,11 175:21
198:2 202:25

238:16 265:12,16
316:8 325:12
349:16 355:10
368:11 385:11,16
399:24 443:9,11
443:14 448:25
451:3,22
**understanding**
21:9 22:21 23:18
25:3,20 27:24
28:1 46:10 84:7
85:3,16,22 88:23
89:3 102:2,5
105:16,19 106:20
107:6 111:2
112:15,18,23
113:1,7 120:9,23
121:4,11,22 122:2
126:21 129:18
134:21 136:17,24
137:14,18,23
148:23 171:14
191:9,11 202:17
203:23 204:10
205:11 229:7
234:20 249:18
299:22,25 316:5
317:24 326:9
337:21 347:20
349:10 350:1
356:4 375:24
384:12 392:16
398:13 401:18
405:7 409:16
410:2,9 418:13
419:3,16,22 420:3
420:7 427:25
432:16 438:7
441:4 445:2,25
447:24 448:7,14
453:12,16 475:4,7
475:16
**understands** 28:16
186:21
**understood** 181:15
186:2 189:2 198:4

198:5 246:22
404:16
**Underwriters**
376:19
**unfair** 298:25
299:3
**Unfortunately**
161:5
**uniformly** 45:12
**United** 1:1 8:8
**unknowns** 473:1
**unredacted** 177:4
**untimely** 172:16
356:13 422:18
**untrue** 323:18
**updated** 14:2
228:23
**updates** 160:21
168:9 174:20,24
175:2 229:8
347:21
**up-to-date** 350:2
**urge** 181:2
**use** 43:15 188:4
447:9,10
**uses** 230:7,15
**usual** 270:16
**usually** 154:2 473:5

_____

**V**

**v** 1:6
**vague** 217:1
**valid** 212:11
**value** 14:21 223:21
**values** 223:13
**valves** 223:20
**varied** 430:9
432:23
**various** 64:1 65:20
136:2 315:1
378:11 379:4
385:12 449:11
463:13
**Vasilopoulos** 6:10
**venue** 380:6
**Verderami** 6:13

351:24
**verification** 154:21
156:4 262:22
266:3 269:6,9
273:16 456:6
457:24 459:8
**verified** 53:23
164:4 174:18
274:8 279:22
308:14 313:7
456:13
**verify** 155:4,15
156:1,11 272:2
282:8 283:19
285:8 309:5 313:9
435:12 437:11
457:13 458:1,14
**verifying** 61:5
278:22
**Vermont** 335:11
**verse** 367:14
**version** 139:21
**versus** 8:7 360:6,12
364:17 372:10,19
374:16 378:11
379:4 397:23
411:4 472:2
**video** 1:11 167:6
**videographer** 3:25
8:3,16 9:16 10:3
20:22 82:7,11
166:20 170:2
189:14 210:22
211:11 263:13,17
334:11 347:6,10
421:18,23 470:6
476:16,23
**Videotaped** 4:22
**videotapes** 228:4
**view** 46:1
**viewed** 167:21
**violated** 402:9
**virtually** 338:17
342:9,18 346:22
**virtue** 380:15
**voluntary** 342:11



| W | | | | |
|---|---|---|---|---|
| **wait** 250:13 | 44:6 45:12,23 | 168:8,16 193:24 | 413:17 449:13 | **Whatever's** 447:8 |
| **waited** 416:1 | 50:21 84:11 90:2 | 245:14 324:8 | 450:19,20 452:12 | **whatsoever** 166:11 |
| **waiting** 186:13 | 111:16 124:14,16 | 325:1 332:7 354:1 | 453:5 | 193:18 232:10 |
| 291:1 304:21 | 125:18 130:9 | 354:20 369:5 | **we'll** 104:5 146:12 | 235:13 236:2,23 |
| **waiving** 172:12 | 147:15 162:14 | 387:10 422:20 | 173:5 183:11 | 237:21 238:17 |
| 178:19 | 169:2,7 183:10 | **weeks** 14:1 373:1 | 184:15,18 187:8 | 240:8 256:12 |
| **want** 53:5 54:6 | 212:24 213:8 | 406:14 431:14 | 211:2 217:25 | 320:16 |
| 60:15 63:4 82:5 | 226:1 235:9,10,25 | 432:3 433:6 455:6 | 249:8 280:11 | **When's** 13:24 |
| 82:17 83:3 86:24 | 237:25 250:21 | 456:22 | 306:25 312:22 | 79:25 |
| 86:25 87:22 92:10 | 257:10,18 258:16 | **Weldon** 360:16 | 336:4 342:1 347:2 | **Where'd** 456:12 |
| 109:7 114:2 | 260:5,12 288:6 | 364:16,18 373:15 | 367:14 371:14 | **Willia** 385:8 |
| 139:12 146:1 | 296:4,9 314:5 | 374:17,21,25 | 394:9 404:20 | **William** 335:7 |
| 160:12 177:11 | 316:15 317:5 | 379:10 395:17 | **we're** 39:15 82:8 | 360:18 379:10 |
| 178:3 181:9 | 318:14 373:4 | 398:24 407:20 | 111:22 112:5 | 385:9 399:6 |
| 187:12 188:2 | 375:2 385:20 | **well-received** | 114:7 115:15,16 | **Williams** 1:4 8:6 |
| 189:10 195:13 | 404:12 | 183:15 | 116:7,9 146:7,14 | 46:23,23 276:4,6 |
| 198:20 199:23 | **wasting** 181:5 | **Wenger** 46:24 | 146:16,18 166:12 | 320:21 321:21 |
| 206:19 207:24 | **way** 17:15 22:21 | **went** 42:24 61:15 | 166:12,18,21 | 324:5 325:25 |
| 210:15,16,17 | 31:20 32:3 36:20 | 97:1 112:16 | 167:6 168:2 | **willing** 173:10 |
| 211:15 215:11 | 70:24 75:17,18 | 115:17 202:21 | 171:16 174:8,25 | **withdraw** 32:12,16 |
| 232:1 237:6 | 76:7,8,9 78:22 | 207:6,7 214:14 | 184:7 210:17,23 | 237:16 305:6 |
| 239:15 242:24 | 79:22 84:3,6 | 221:1 224:21 | 217:4 224:15 | 340:2,5,7,9,20 |
| 262:25 290:20 | 121:11 182:23 | 233:10 270:8 | 237:1 258:21 | 341:5 437:16 |
| 303:3 307:1 | 183:21 186:6 | 333:19 364:10 | 263:9 303:3 | **withdrawn** 143:4 |
| 313:11 316:12 | 192:5 201:6 210:2 | 401:3 419:23 | 317:23 318:15 | 464:9 466:12 |
| 317:16 321:16,19 | 219:18 237:17 | 475:17 | 324:6 330:23 | **withdrew** 143:1 |
| 322:16 323:20 | 245:14,17 249:10 | **weren't** 116:10 | 345:14 347:7 | 238:2 467:24 |
| 336:7 341:14 | 279:9 286:17 | 137:24 153:10 | 359:1 364:9 | **withheld** 122:16 |
| 347:24 365:16,18 | 290:2 292:17 | 249:2 317:11 | 369:20 375:3 | 366:21 |
| 371:17 372:7 | 300:17 302:20 | 385:21 389:12 | 394:21 398:2 | **witness** 9:1 11:5,16 |
| 376:8 383:13 | 310:7 313:16 | 405:3 437:7 451:2 | 410:4 417:10 | 11:22,25 12:9,16 |
| 395:7 462:4,21,23 | 322:1 326:5 332:4 | **Westfall** 77:22 | 421:20 428:24 | 12:22 13:6,13 |
| 462:24 463:3,6 | 338:15 343:9 | 83:19,22 84:11 | 439:13 443:12 | 14:8,16 15:2 16:6 |
| 475:14,19,21 | 345:7,25 346:9 | 86:16 133:6,9 | 445:22 459:14 | 16:25 17:4,11 |
| **wanted** 13:18 42:18 | 349:5 350:13 | 134:15,19,23 | 468:1 476:25 | 18:21 19:7 20:14 |
| 164:21 175:15 | 362:9 366:21 | 135:8 139:23 | **we've** 69:8 76:23,23 | 21:18 22:4,14 |
| 176:12 330:24 | 383:6,9 391:8,19 | 140:8 197:22 | 78:20 93:5 138:12 | 23:2,12,22 24:9 |
| 370:6 424:2 | 397:7 | 198:14 208:18 | 149:16 167:15,24 | 24:23 25:12 26:2 |
| 448:15 | **Wayne** 269:3 | 213:7 249:15 | 184:13 224:13 | 27:3,11,21 28:4 |
| **wanting** 245:3 | **ways** 178:12 217:10 | 250:6,10,23 | 263:8 298:15 | 28:15 29:3,14,16 |
| **Warren** 3:23 | 227:14 432:19 | 255:23 259:9,15 | 300:22 366:23,24 | 29:25 30:4,16 |
| **Washington** 1:16 | **Wednesday** 1:18 | 259:22 260:1,11 | 369:3,10,11 | 31:1,24 33:9,25 |
| 2:21 8:14 | **week** 14:3 42:3,4,7 | 295:25 297:16 | 375:16 412:5 | 34:8,20 35:4,24 |
| **wasn't** 17:7 32:18 | 45:23 80:7 96:9 | 337:4,13 363:11 | 422:21 431:16 | 36:14 37:6,18,25 |
| | 132:1,3 149:1,18 | 366:19 396:21 | 432:15 444:22 | 38:10,22 40:21 |
| | 149:19,21 164:16 | 397:8 407:9 | 445:13 | 42:1,23 44:5,15 |



45:21 47:15 48:2
48:19 49:6,17
50:1,17 51:5,11
52:16 53:23 54:1
56:7,15,22 57:4
57:11,17 58:2,15
60:18 61:22 62:9
62:19,22 63:6
64:10,19 65:5,14
65:24 66:12,24
67:12,23 68:7,19
69:8,18 70:2,10
70:18 72:5,9,11
72:15,18 73:2,14
73:17,22 74:19,23
75:1 76:3,19,22
77:11 78:1,17
79:7,13 80:6,17
80:25 81:12,25
83:1,15 84:1,17
85:11 86:4,14
87:12 88:6,16
89:19 90:14 91:11
92:5,21 93:21
94:16 95:11,23
96:8,22 97:16
98:8,10,18,19
100:10 101:19
102:4,23,25
103:24 104:20
105:12 106:4,17
106:19 107:11,16
107:23,25 108:11
108:13,24 109:24
110:23 111:16
112:8,10 113:5,15
114:1,14 115:4,11
116:18 117:2,12
118:7,21 119:12
120:14 121:15
122:9,23 123:15
124:1,13 125:8,16
126:3,4,14,25
127:14,25 128:11
128:25 129:3,17
130:7,8,19,21

131:8,10 132:8,17
133:5,15 134:7,17
136:14,24 137:8
137:22 138:12,25
140:4,19 141:7
143:3,20 144:5
145:6,14 147:1,10
148:9,22 149:14
150:14 151:6,22
152:13,25 154:2
154:22 155:12,22
156:9 157:13,23
158:9,20 159:5
160:8 161:5 162:4
162:5,22 163:2,10
164:2 165:16,18
166:2,3,23 167:7
168:22 169:4,11
169:13,17,21,23
170:3 174:5 178:6
178:11,17,21,24
182:10,11,19
190:5,8,15 191:4
191:22 192:2,21
193:15,23 194:8
194:21 195:9
196:8 197:2,17
198:2,18 202:7
203:4,23 204:16
205:11,21 206:5
207:5,18 208:9,21
209:5,18 210:14
211:25 212:14,20
213:3,13 214:1,8
216:4,17 217:3
218:9 219:2,17
220:15 221:19
222:21 223:3,18
224:9 225:18
226:21 227:9
228:1,15 229:2,5
229:23 230:22
231:20 232:18
233:19 234:2,20
235:4,18 236:11
237:1,13 238:8,22

239:5,19 240:11
240:20 241:12,14
242:5,9,18 243:13
244:10 245:12,24
246:7,18 247:17
248:5,25 249:18
250:14 252:2
253:3,16 254:3,12
255:16 256:16
257:6,15 258:15
259:2,13 260:10
260:22 261:18
262:9,24 264:17
265:8,16 266:5
267:5,22 270:17
272:2,7,18,23
273:17 274:10,14
274:22 275:2
276:13 277:17,25
279:19 280:1,18
281:20 282:5
283:5,15 284:1,14
284:22 285:13,15
285:22 286:5,16
287:3,18 288:5,25
289:13 290:24
291:1 294:15
295:4,18 296:7
297:5 298:2,21,23
299:17 300:21
301:7 302:14
304:24 305:2,12
306:21 308:10,24
309:11,18 310:5
311:8 314:11
315:11 316:4,21
318:11 321:6
322:9 323:5 324:1
325:22 326:25
327:6 328:11,18
329:13 330:11,21
331:18 332:2,17
333:11,23 334:1
334:14,23 335:19
337:6 338:4
339:24 340:17,21

341:8 342:23
343:14 344:4,17
345:4 346:7,19
347:20 350:6
351:1 352:18
353:11,20 354:9
355:6,14,20 356:3
356:19 357:2,4,8
357:14 358:3,10
358:24 359:22
360:25 361:20
362:9,18 364:5,25
373:6,13 375:23
377:3 378:19,25
379:19 380:12,21
381:12,19 384:12
385:16 386:8
387:22 388:19
389:2,19 390:7,16
391:3,14 392:8,15
393:5,14 394:1
395:21 396:6,23
396:25 397:17
398:1,13 399:2,19
400:6,18 401:3,17
403:5,22 404:10
405:7,22 406:10
407:3,17 409:15
410:2,20 411:18
412:9,17 413:7,20
415:1,2,8,20
416:6,19 417:2,19
418:5 419:16
420:5,7,22 421:8
423:7,13,22 424:4
424:15 425:9,20
426:11,20 427:16
427:24 428:14,22
429:7,8,21 430:4
431:11 432:12
433:4 435:5,18,25
436:5,17 437:4,14
438:4 439:6,20
440:3,19 441:3,18
442:4,18 443:21
444:2 445:1,18

447:8 448:7,24
449:20 450:12
451:10 452:17
453:11 454:3,20
455:2,16,23 456:1
456:6,7,18 457:9
457:18 458:7,16
459:6,7,20,24
460:19 461:12
463:16 464:13
468:9,17,20
469:24 470:25
471:14 472:5,16
473:15 474:10
475:4 476:3,11
478:8
**witnesses** 271:12
278:8 279:3 299:8
428:17
**wondering** 84:2
236:1
**Woods** 472:17
**word** 77:12 156:3
229:6 235:23
254:17 257:7
259:3 286:12
344:25 345:6
359:2
**worded** 76:9
199:18
**wording** 68:8
**words** 23:9 60:22
62:1 65:9 79:17
81:3,15 82:3
185:13 198:7
448:1
**word-search** 358:8
358:17 362:13
**word-searching**
362:19
**work** 10:18,20,22
10:25 11:7 36:3
38:24 40:12 89:12
127:3 176:21
181:13 186:5
198:13 259:16



285:23 354:21
373:20 434:18
441:8 449:22
**worked** 12:4 33:14
42:19 48:15 59:13
59:14 192:15
203:5,11,14
205:15,25 206:7
235:20 282:23
293:7 301:15
390:17 459:24
**worker** 243:17
330:2,16 342:10
346:22
**Workers** 431:25
**working** 37:23,25
38:13 39:6 40:2
208:10 257:18
258:18 443:7
**works** 38:6,23 41:4
43:18 441:15
448:8
**work-product**
425:7
**worry** 23:14 225:14
**worse** 187:2
**worth** 50:21 100:19
**wouldn't** 91:8
158:13 165:5
262:25 287:20
288:17 319:4
358:4 366:6
413:21 423:13
428:2 447:22
467:22 474:19
**wound** 182:13
**write** 231:16
234:17 322:14,15
326:2,5,11 451:12
457:10 460:2
**writer** 239:22
**writes** 231:14
**writing** 276:25
321:9 326:2
421:13
**written** 75:18

198:24 249:12
258:2 281:25
310:12 311:9
331:19 332:13,20
343:24 439:22,23
**wrong** 25:4,21 28:9
171:8,9 223:4
406:22
**wrote** 79:22 322:13
323:8 327:3
335:23 435:20
460:7
**www.MagnaLS.c...**
1:25

_____

## X

**X** 179:14
**x-ray** 422:4

_____

## Y

**yeah** 54:13 84:1
102:7 117:12
184:20 189:11
190:15 214:3
236:21 239:19
249:22 273:17
301:13 303:2
320:4 332:2 339:1
339:14 340:6
353:25 390:10
397:21 399:19
408:15 446:9
458:20 462:12
463:5 465:25
**year** 12:22 50:10
58:24 120:3 398:4
398:4 470:1
**years** 11:6 13:1
44:6 58:8 59:1
83:10 86:21 89:20
90:4 95:1 96:15
97:17 98:1 100:11
108:2 115:15
117:14 119:22,25
130:10,23 131:10
257:16 286:20

318:17 331:20
339:16 341:18
373:24 375:5
401:20 402:1,18
403:10,15 432:14
433:8 463:16
466:17 468:23
**yep** 195:14 311:1
**yesterday** 42:2
**yes-or-no** 238:9
**Young** 6:14 351:19
351:23 352:6

_____

## Z

**zero** 172:21
**zeros** 308:4,5
444:23

_____

## $

**$20** 14:22
**$250** 12:16

_____

## 0

**06** 6:4
**07059-6747** 3:23
**07701** 2:9
**07928-1488** 3:15

_____

## 1

**1** 5:3 8:4 111:23,25
198:22,23 263:22
263:23 307:1,14
310:21 311:3,12
312:12,21 313:4
313:25 335:4
363:12 429:25
444:7
**1E** 195:24
**1.5** 434:21
**1/24/85** 6:9
**1/25/06** 6:13
**1:50** 189:15
**10** 4:4,16 8:1
114:20,21 190:18
245:16 364:1,11
**10th** 269:10

**10:05** 1:19 8:12
**104** 254:23,24
**107** 264:7
**11** 4:21 8:2 13:19
13:22 386:22
421:18
**11-1754** 1:6 8:10
**11:01** 82:8
**11:15** 82:12
**111** 5:3
**12** 196:13 280:18
282:16
**12/13/85** 411:2
**12:33** 166:21
**127** 2:8
**129** 5:16 327:10,12
**13** 454:14,14
**131** 5:20 231:2,5
319:24
**134** 6:1 332:9,11
**139** 6:20
**15** 44:6 152:7
245:16
**15th** 8:13 378:5
**18th** 3:6 303:6
**181** 463:5,21
**19** 102:7 249:19
289:19 412:4
**19103-2799** 3:7
**1977** 336:13
**1979** 84:10 107:12
115:24 116:8,12
117:16 128:1
422:8 424:11
**1980** 82:19 83:10
**1980s** 83:19 88:3
93:15 94:11
**1982** 84:17,25
101:12 125:24
212:22,24 396:19
400:9 401:12
404:25
**1983** 84:12,13,13
91:4 102:8 372:25
397:18 403:17
**1984** 91:4 139:20

372:25 374:3,4
397:18 398:17,17
401:8 404:2
405:11 409:10
410:16 411:9,10
412:4,14,19,25
414:3,16,20
415:15 417:3,4
460:13 463:24
464:2 465:4,8,20
466:2,7 467:17
468:13
**1985** 375:1,11,14
378:5 379:16,20
380:2 383:1,18
398:2,6 399:3
**1986** 374:12 376:5
401:6 403:25
405:9 415:21,24
416:2
**1987** 82:19 83:10
208:10 209:8
396:20 397:7,9
400:9 401:12
403:18 404:25
406:25,25 407:10
**1988** 363:12,23
364:12 396:20
**1989** 289:19 303:6
**1990** 241:22 249:11
302:21,22 335:5
**1991** 327:16 332:25
336:11
**1992** 269:10
**1996** 231:7

_____

## 2

**2** 144:15 198:21
199:6 252:17
**2nd** 241:21 249:11
335:5
**2:11** 210:23
**2:12** 211:12
**20** 6:7 168:23
245:16 318:17
375:5



**20th** 380:2
**20005-5793** 2:21
**2004** 410:11 452:13
**2006** 351:19
**2009** 453:18
**2010** 440:10
**2018** 1:18 8:11
**202.879.5000** 2:22
**208** 461:19 462:21
 464:25
**209** 461:20 462:21
**21** 338:21
**210** 5:4
**214** 6:5 376:9,14
**215** 6:9 383:14,16
 383:18
**215.981.4000** 3:8
**219** 6:13 351:14,16
 351:18
**221** 6:16 307:6,8
 311:3 429:13,19
 429:23
**223** 5:15
**225** 6:20 139:9,12
 195:12,18
**227** 7:1 257:22,24
 258:1
**228** 7:5 239:15,18
 241:19
**231** 5:20
**239** 7:5
**24** 6:15 383:18
 470:6
**24th** 231:6,7
**25** 3:22 375:5
**25th** 351:18
**251** 5:10
**257** 7:1
**268** 4:9
**288** 5:6
**29** 6:8 332:24

---
**3**
---

**3** 4:7 5:4 55:2,22
 144:22 186:14
 196:1,14 210:3,5

 308:3,5 430:7,19
 440:5 462:17
**3A** 196:18 197:10
**3/14/18** 4:9
**3/16/83** 5:4
**3/19/91** 7:1
**3/2/90** 7:5
**3:00** 263:14
**3:14** 263:18
**30** 39:15 331:19
 341:18 394:20,20
 431:19
**30(b)(6)** 1:12 4:20
 4:24
**30-minute** 185:1
**300** 4:11
**3000** 3:5
**307** 6:16
**31** 334:12
**327** 5:16
**332** 6:1
**348** 4:12
**351** 6:13
**376** 6:5
**383** 6:9

---
**4**
---

**4** 4:9 268:2,6
 288:21 290:8
 334:11 336:3
 408:18 449:4
**4:29** 347:7
**4:42** 347:11
**40** 86:21 341:18
**408** 308:4
**408210** 1:22
**437** 3:14
**462** 4:7
**48** 308:4
**49418** 377:10 378:4
**49428** 379:23

---
**5**
---

**5** 4:11 288:21
 300:11,14 303:13
 303:15 336:3

 408:3 424:18
 433:14
**5:51** 421:20
**50** 86:21 89:20 90:4
 95:1 97:17 98:1
 100:11 108:2
 115:14 117:13
 130:10,23 131:10
**54** 5:7
**56** 254:24
**58** 6:22 264:6

---
**6**
---

**6** 1:18 5:6 147:21
 165:12 166:9
 268:21 288:9,11
 291:11 336:3
 353:3,9 354:15
 437:19
**6th** 8:11 327:16
 336:11
**6/1/16** 4:7
**6/6/91** 5:16
**6:05** 421:24
**6:58** 476:24 477:2
**60** 4:15 251:9
**63** 5:7 54:7,15,17
 152:3 443:16
 444:1 449:9
**64** 5:10 251:6,10
 263:22 268:23
 269:14
**655** 1:15 2:20 8:13

---
**7**
---

**7** 150:18,19 151:13
 158:1,2 164:14
 189:19 190:21
 192:18 193:12
 195:6 302:22
 336:3
**7th** 14:12,17 167:22
 460:13 467:17
**7/24/96** 5:20
**70** 7:4
**720** 141:14

**74** 6:12
**78** 6:7

---
**8**
---

**8** 4:12,16,21 195:16
 195:21 200:1
 347:25 348:1
**8/18/19** 5:6
**8/18/1989** 303:17
**8/20/02** 4:12
**8/29/91** 6:1
**8/84** 6:20
**84** 405:2
**86** 405:2
**866-624-6221** 1:24
**873** 385:5
**88** 5:19
**888.702.8276** 2:10
**89** 290:21 291:4

---
**9**
---

**9** 359:24 391:24
 422:3
**9/20/84** 408:21
**908.647.1022** 3:24
**92** 5:23
**94** 268:15,16,19
**96** 7:8 270:10
**973.824.9300** 3:16

