Exhibit C

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIMBERLEE WILLIAMS, et al.** | No. 2:11-cv-01754 (ES) (JAD) |
| | CIVIL ACTION |
| Plaintiffs, | |
| vs. | |
| **BASF CATALYSTS LLC, et al.** | |
| | |
| Defendants. | |

**[Proposed]**
**Williams Emtal Talc Settlement Fund**
# Plan of Distribution

*Williams* **Emtal Talc Settlement Fund**

# Plan of Distribution

This document sets forth the Plan of Distribution ("**Plan**") for implementing the provisions of the *Williams* Class Action Settlement Agreement ("**Settlement Agreement**") relating to the allocation and distribution of the Williams Emtal Class Action Settlement Fund ("**Settlement Fund**") established therein in trust for the use and benefit of eligible Class Members, along with the processes, procedures, presumptions, rights, rules and deadlines (referred to as "**Plan Distribution Procedures**" or "**PDPs**") for determining and resolving all claims and rights relating to the allocation and distribution of the Settlement Fund to eligible Class Members. The Settlement Trustee, the Administrator and the Lien Administrator appointed by the Court will execute this Plan consistent with its terms as well as the terms of the Settlement Agreement, the Preliminary Approval Order, the Final Order and Judgment, the *Williams* Emtal Settlement Fund Trust Escrow Agreement and any Court Approved Procedure ("**CAP**") amendment the Court may enter regarding the administration of the Plan and distributions made pursuant to it.

## Table of Contents

1. Definitions............................................................................................................................. 3
2. Summary of Plan.................................................................................................................. 3
3. Settlement Fund Distribution Programs............................................................................... 4
    3.1. Part A – Base Compensation Payments........................................................................ 4
        3.1.1.    Description.......................................................................................................... 4
        3.1.2.    Eligibility. .......................................................................................................... 4
        3.1.3.    Part A Plan Distribution Procedures (PDPs). ..................................................... 5
        3.1.7.    Part A Distributions. ......................................................................................... 13
        3.1.8.    Reallocation. ..................................................................................................... 15
    3.2. Part B – Supplemental Injury Severity Based Compensation Program........................... 15
        3.2.1.    Description........................................................................................................ 15
        3.2.2.    Eligibility. ........................................................................................................ 16
        3.2.3.    Part B Claim Levels, Qualifying Points and Qualifying Asbestos Trusts. ............. 16
        3.2.4.    Part B PDPs....................................................................................................... 18
        3.2.5.    Part B Distribution Formula................................................................................ 23

3.3. Part C – Extraordinary Injury Fund (EIF) Compensation Program................................... 25

    3.3.1.   Description............................................................................................................ 25

    3.3.2.   Eligibility. ........................................................................................................... 26

    3.3.3.   Reallocation. ....................................................................................................... 27

4. Claim Administration Procedures and Policies. ........................................................................ 27

    4.1. Claim Form and Eligibility Proof Requirements. ............................................................... 27

    4.2. Claim Initiation and Claim Support Submission Requirements and Procedures. ............ 29

    4.3. Claim Submission Supporting Documentation Deadline. .................................................. 31

    4.4. Claim Submission Reviews. ............................................................................................... 32

    4.5. Claim Substantive Review Processes and Procedures....................................................... 32

    4.6. Claim Determination Notice, Cure and Contest Processes and Procedures. .................... 34

5. Rules, Processes and Procedures Relating to Attorney Representation of Claimants............. 37

6. Filing Fees and Settlement Trustee's Costs and Sanction Assessment Authority................... 39

7. Lien Resolution Requirements and Procedures. ....................................................................... 39

8. Settlement Fund Claim Audits and Anti-Fraud Plan; Settlement Agreement § 3.10.3 Claim Reviews....................................................................................................................................... 44

9. Settlement Fund Allocations, Adjudication Schedules, Payments and Distributions. ............ 47

    9.1. Allocation of the Settlement Funds. .................................................................................. 47

    9.2. Payment of Unfunded Administration Costs and Expenses and Class Representative Service Awards................................................................................................................... 48

    9.3. Compensation Parts Sub-Funds and Sub-Fund Allocations. ............................................ 48

    9.6. Residual Settlement Funds................................................................................................. 53

10. Governance and operation of the Settlement Fund................................................................. 53

11. Settlement Trustee's Adjudicative Powers. ............................................................................ 56

Appendix A .................................................................................................................................... 1

**1. Definitions.**

In addition to the terms defined above and in the body of the Plan below, the Plan incorporates by reference the definitions of the Settlement Agreement and capitalized terms appearing herein shall have the same meanings. Whenever context so requires, the masculine gender includes the feminine and neutral gender, and the singular includes the plural and vice versa.

**2. Summary of Plan.**

*This Summary is intended for convenience only and is qualified in its entirety by the full description of the Plan of Distribution beginning on page 4. In the event of any discrepancy between this Summary and the Plan, the Plan's provision will govern.*

The goal of the Plan is to fairly and equitably distribute the Settlement Fund to eligible Class Members who were alleged to have been deprived of the fair opportunity to pursue their claims for asbestos physical injuries in the Underlying Lawsuits.

The Plan establishes three compensation programs to which Settlement Class Members meeting defined eligibility criteria may apply for compensation award payments (each program being referred to as a "**Part**"). The Settlement Fund's Part A program provides Base Compensation Payments to Settlement Class Members who can establish that the claimant or claimant's decedent filed an Underlying Lawsuit against Engelhard/BASF during the Class Period which asserted in good faith an asbestos injury caused by alleged exposure to Emtal Talc ("**Base Payments**"). The Plan's Part B program provides compensation payments to Settlement Class Members who satisfy Part A and also present sufficient evidence of an asbestos bodily injury sustained by them (or if applicable, their decedent). The Plan's Part C program establishes an Extraordinary Injury Fund or "EIF" from which the Settlement Trustee may, in exceptional

3

cases, make a discretionary supplemental compensation payment to mesothelioma injury Claimants subject to eligibility guidelines and limitations as set forth in this Plan.

The Plan has requirements concerning resolution of certain health care provider liens. While the Lien Administrator appointed by the Court will aid a Claimant in determining and negotiating the amount needed to clear liens related to a payment from the Fund, the satisfaction or clearance of liens relating to a Claimant's payment is the Claimant's sole responsibility.

**3. Settlement Fund Distribution Programs.**

**3.1. Part A – Base Compensation Payments.**

    3.1.1.  **Description.**

        3.1.1.1. The Settlement Fund provides base compensation payments (referred to as "**Base Compensation Payments**" or "**Part A" Payments**") to Settlement Class Members who in accordance with the Plan's PDPs timely submit a complete Claim Submission that satisfies the Plan's Part A eligibility requirements. Eligibility for compensation under Part A is also an eligibility prerequisite under the Plan's Parts B and C compensation programs.

    3.1.2.  **Eligibility.**

        3.1.2.1.  To be eligible for Part A Payments, the Claimant, or the Claimant's decedent where applicable, must have during the Class Period: (a) filed and Served an Underlying Lawsuit against Engelhard/BASF (b) which lawsuit credibly asserted at the time, and in good faith, an asbestos injury caused by alleged exposure to Emtal Talc and (c) which lawsuit was dismissed as to Engelhard/BASF voluntarily or involuntarily ("**Part A Eligibility Requirements**"). For avoidance of doubt, all three elements, (a), (b) and (c), must have occurred during the Class Period.

### 3.1.3.   **Part A Plan Distribution Procedures (PDPs).**

3.1.3.1. All Part A claims require establishing class membership through (a) submitting documents and materials that establish all of the Part A Eligibility Requirements, or (b) providing proof the Claimant can rely upon the Settlement Fund's administrative presumption lists described in this Plan. Where it is established that a Claimant is a person identified on the Presumed Class Member List, or the personal representative, spouse or heir of a person identified on the Presumed Class Member List, Class membership will be presumed to exist.

3.1.3.2. **Part A Documentation Requirement**. A copy of a pleading, an interrogatory answer, or a deposition testimony excerpt describing the Injured Person's alleged exposure to Emtal Talc must be supplied to the Settlement Administrator as part of every Claim Submission unless no supporting document exists or can be found after Claimant has conducted a reasonable search and inquiry. Where documentation is not available the Claimant must then certify under oath that no supporting document is available. Claimants may use the certification form available on the Settlement's Website form page for this purpose. For avoidance of doubt, this documentation requirement applies to Claimants appearing on the Presumed Class Member List as well as to claimants who do not.

3.1.3.3. The date on which a voluntary dismissal or termination occurred for purposes of determining Class membership and Part A Payment eligibility is the earlier of either (a) the date on which the agreement or consent by the plaintiff or his/her counsel in the Underlying Lawsuit to dismiss or terminate the lawsuit occurred; or (b) the date on which the dismissal or termination of the Underlying Lawsuit was entered by or in the court in which it was pending.

3.1.3.4. "**Served**" with respect to an Underlying Lawsuit's complaint or similar initial pleading shall include, in addition to the means of process service provided by the suit's forum's applicable court rules, the acceptance of service or other notice or acknowledgement of the suit's existence by Engelhard/BASF attorneys, including, but not limited to the identification of the suit or action in the materials obtained in discovery by Plaintiffs and provided to the Settlement Administrator.

3.1.3.5. **Primary Claimant Rule.**

3.1.3.5.1.  A claim for compensation to the Settlement Fund may be submitted only by or on behalf of the Injured Person in an Underlying Lawsuit. Where the Injured Person in an Underlying Lawsuit is deceased, or the Underlying Lawsuit asserted a survival or wrongful death claim on behalf of the estate of an Injured Person, the claim may then be submitted only by the Injured Person's personal representative, such as its executor or administrator, subject to the exception in §3.1.3.5.3, which person is referred as a "**Primary Claimant**". This PDP is referred to as the "**Primary Claimant Rule**".

3.1.3.5.2. Except as provided in §3.1.3.5.3, any claim submitted by a spouse, child or parent of an Injured Person in an Underlying Lawsuit who has died, or where the Underlying Lawsuit asserted a wrongful death claim on behalf of the estate of an Injured Person, will be denied and not processed by the Settlement Fund and a Notice of Claim Determination will be sent to that Claimant by the Administrator. On request to the Administrator by a denied Claimant under this PDP, and assuming the information is readily available to the Administrator, the Settlement Fund will provide the denied Claimant with the contact information for the Primary Claimant and either the attorney representing the Primary Claimant in a pending claim to the

Settlement Fund or the attorney and/or law firm representing the Injured Person or their Estate in the Underlying Lawsuit.

3.1.3.5.3.  **Exception for Part A only claims where Primary Claimant is deceased and no estate open**. Where the Injured Person is deceased and has no estate open, the spouse of the deceased Injured Person, if living, or if such spouse is deceased, then a child (which includes a child who is adopted) of the deceased Injured Person acting with written unanimous consent of all other living children of the deceased Injured Person, may apply for the deceased Primary Claimant's Part A share along with any Derivative Claimant's Part A Share that may be due. The claim to the Settlement Fund under this exception must be limited by the Claimant to a request only for Part A compensation. Where the claim is otherwise determined eligible for Part A payments the claim may be allowed and paid by the Settlement Fund to the applicant upon such further terms and conditions the Settlement Trustee establishes to protect the Settlement Fund against any liability or claims relating to the direct payment of the compensation payment to the spouse or child. The Settlement Fund shall establish a special claim form for such applications.

3.1.3.6. **Presumed Qualified Class Members**.

3.1.3.6.1. Eligibility for Part A Payments will be presumed by the Settlement Fund where the Primary Claimant establishes to the Settlement Fund's satisfaction that he or his decedent is the person on the Settlement Fund's Presumed Class Members List. Where the presumption applies to a Claimant, no additional proof of Class Membership is required. The documentation requirement of §3.1.3.2 however applies and must be satisfied.

3.1.3.6.2.  A confidential "**Presumed Class Member List**" available only to the Court, the Settlement Administrator, the Settlement Trustee, Defendants, and Class Counsel, of

those individuals who filed lawsuits against Engelhard/BASF alleging bodily injuries resulting from exposure to Emtal Talc was compiled based upon discovery undertaken by Plaintiffs in the *Williams* Action. A person or Estate on that list satisfies all of the Plan's Part A Eligibility Requirements as to known and identified Primary and Derivative Claimants. In addition to discovery the following sources were used to develop this list:

(A) Bevan Law Firm's client data produced by the Bevan Law Firm during discovery in the Class Action;

(B) The Qualified Occupation Location Sites List;

(C) The contents of Underlying Lawsuits' complaints and/or other litigation documents identified to the Administrator for consideration by Class Counsel and Defendants; and.

(D) The Class Action Complaint. All named plaintiffs in the Complaint shall be included on the Presumed Class Member List.

3.1.3.7. **Supporting Documentary Proof Requirement where Claimant or Claimant's decedent is Not Listed on Presumed Class Member List.**

3.1.3.7.1. Where an Injured Person (or his/her estate) whom a claim is based upon is not listed on the Presumed Class Member List, the following documentary proof is required in support of the Claim Submission:

(A) A legible copy of pleadings, other litigation document or court records from the Underlying Lawsuit which satisfactorily establishes that the Claimant (or his decedent) filed and Served an asbestos injury lawsuit against Engelhard/BASF arising out of Emtal Talc exposure within the Class Period and the suit was thereafter terminated by a voluntary or involuntary dismissal within the Class Period. A copy of the subject suit's pertinent docket entries or a copy of a timestamped order or pleading will suffice to establish the dismissal of the lawsuit; and

(B) Documentary proof satisfactorily establishing that the Claimant (or his decedent) is the Injured Person in the underlying lawsuit satisfying §3.1.4 along with, if applicable, claimant's standing proof such as a death certificate, appropriate estate papers and/or proof of marriage or kinship relating to a decedent; and

(C) Documentary proof satisfactorily establishing that the Underlying Lawsuit was asserting a good faith, credible injury claim based on an injury believed to be caused by exposure Emtal Talc.

8

3.1.3.7.2. For avoidance of doubt, if a Claimant submits any or all of the items listed above in §3.1.3.7.1 , the Administrator and Settlement Trustee may still deny the Claim Submission if, in the exercise of their discretion and judgment, they determine that the Claimant is not eligible for payment from the Settlement Fund.

3.1.3.8. **Good Faith Credible Emtal Talc Claim Requirement.**

3.1.3.8.1. Where a Claimant is not on the Presumed Class Member List, in order for a claim to be eligible to receive compensation under the Plan, the Injured Person's Underlying Lawsuit (or that brought by an Injured Person's estate where applicable) must have asserted a good faith, credible asbestos injury claim based on an injury believed to be caused by exposure to Emtal Talc. In making this determination the following PDPs of §3.1.3.8 will apply to determining that the Injured Person's Underlying Lawsuit (or that brought by an Injured Person's estate where applicable) was asserting a good faith, credible asbestos injury claim based on an injury believed to be caused by exposure to Emtal Talc.

3.1.3.8.2. The basis of the claimed talc exposure involved in the Underlying Litigation may be to Emtal Talc in either or both its raw form—such as its use as an ingredient for a product, as a processing agent, or as a detackifier—or in the form of dust generated in or by the use, application, alteration, cutting, sanding, scraping, removal or cleanup of a product manufactured with Emtal Talc.

3.1.3.8.3. The "*good faith, credible asbestos injury claim*" element may be satisfied through any of the following:

> (A) Meaningful and credible proof that, after 1966, and prior to commencing the Underlying Lawsuit, the Injured Party had meaningful employment or occupational related presence at a facility or company appearing on the Administration's Qualified Occupation Location Sites List or was

employed at that facility or company in a role identified on the Plan's Qualified Occupation List. Based on information provided in the Claims Submission the Administrator will determine if an identified occupation or occupational location of the Injured Person appears on one or both of these lists;

(B) Providing a competent and meaningful affidavit or sworn statement from the Underlying Lawsuit's attorney attesting that the subject suit was based on a good faith, credible claim of the Injured Person's exposure to Emtal Talc;

(C) Providing a competent and meaningful affidavit or sworn statement of a co-worker which specifically names the Injured Person and provides the basis for a good faith claim or a competent and meaningful affidavit or sworn statement of a family member in the case of a deceased Injured Person (providing the Administrator or Settlement Trustee finds such evidence reasonably reliable);

(D) Employment or occupational related presence in a facility or company where credible records show EMTAL talc was sold, shipped or delivered; or

(E) Providing credible evidence generated before the conclusion of the Underlying Lawsuit of meaningful exposure to Emtal Talc after 1966, including but not limited to invoices, employment records, construction records, or interrogatory responses.

3.1.3.8.4. The Administrator or Settlement Trustee can require submission of other or additional evidence of a Claimant's qualifying good faith credible Emtal Talc Claim when it deems such to be necessary, including for purposes of audits or claims reviews under § 8 of this Plan.

3.1.3.8.5. Evidence submitted and/or accepted to establish proof of a good faith credible Emtal Talc claim is for the sole benefit of the Settlement Trustee and Administrator, and not third parties or defendants in the tort system.

3.1.3.9. **Qualified Occupations and Qualified Occupation Location Sites Lists.**

3.1.3.9.1. Class Counsel will compile and provide to the Administrator a list of occupations ("**Qualified Occupations List**") which the Settlement Fund may, for purposes of determining Part A eligibility, and solely for this purpose, presume there was exposure to Emtal

Talc where there is meaningful and credible evidence provided to the Administrator, including but not limited to pleadings and discovery in the Underlying Lawsuits, that the Injured Person was employed in the occupation after 1966. This shall be a confidential list, available only to the Court, the Settlement Administrator, the Settlement Trustee, Defendants and Class Counsel. By way of illustration, the list may include such occupations where EMTAL marketing documents show that EMTAL was marketed to and used, such as, by way of illustration and not limitation: workers employed in the tire and rubber industry, auto body repair, or the manufacture or application/finishing of drywall joint or patching compound.

      3.1.3.9.2. Class Counsel will compile and provide to the Administrator a list of specific companies, facilities or job sites ("**Qualified Occupation Location Sites List**") which the Settlement Fund may, for purposes of determining Part A eligibility, and solely for this purpose, presume there was exposure to Emtal Talc where there is meaningful and credible evidence provided to the Administrator, including pleadings and discovery in the Underlying Lawsuits, that the Injured Person was meaningfully employed or occupationally present at the site, facility or location.

      3.1.3.9.3. The Qualified Occupations and Qualified Occupation Location Sites Lists are deemed to be confidential internal administrative and Special Master adjudicative and Class Counsel work product materials which will be held by the Administrator and Settlement Trustee in strict confidence, will not be published, and be deemed subject to Court protective order prohibiting their or their contents disclosure by the Administrator or Settlement Trustee as privileged and non-discoverable documents unless disclosure is ordered by the Court.

      3.1.3.9.4. For avoidance of doubt, other than for purposes of satisfying the prerequisite requirement of Part A Eligibility, the Qualified Occupations List and Qualified

11

Occupation Location Sites List, shall not be offered or used by a Claimant as evidence or support of any of the EIF Eligibility Requirement set forth in §3.3.2., nor shall the lists be used as evidence in connection with any other lawsuit or claim against the Defendants.

     3.1.4.  **Identity Validation**: A Claimant must establish to the Settlement Fund's satisfaction its identity and relationship to an Underlying Lawsuit by meaningful and credible evidence that (a) the Claimant (and Claimant's decedent if applicable) is the person or is the personal representative or heir of the person named in the Underlying Lawsuit the claim is based upon; or (b) is the person, personal representative or heir of a person listed on the Presumed Class Member List. The identity of a Claimant will be presumed by the Settlement Fund where the Claimant is on the Presumed Class Member List and establishes it is the person to whom a class action Notice was addressed, and that it was received at the address to which it was sent or forwarded to the Claimant by the U.S. Post Office. Examples of possible satisfactory evidence when and where this mailed notice presumption does not apply include: (a) a meaningful and credible declaration from the law firm or a lawyer who handled the Underlying Lawsuit vouching for the claimant's identity; or (b) a meaningful and credible declaration by the Claimant attesting to the fact that Claimant (or his decedent) is the referenced person on the presumption list along with some accompanying form of documentary corroborating proof. During the Settlement Fund's claims review process the Settlement Fund will be applying identity validation techniques for which Claimants are required to cooperate and comply with. An inability or failure to cooperate or comply with the Settlement Fund's identity validation efforts will result in the denial and termination of the Claim Submission.

     3.1.5.  **Class Membership Qualification Searches.** Where prior to the Claim Filing Deadline a member of the public has a credible good faith reason to believe that he may be a

Class Member but is reasonably unable to secure necessary information to establish he is a Class Member, on request to the Administrator certifying such fact along with stating the basis for the good faith belief he is a class member and providing appropriate identification information, including pertinent social security numbers, the Administrator will make a reasonable computer word search of the information it possesses to see if there is match. If so, the Administrator may allow the person limited time access and download capability to the Restricted Collection to search for documents supporting the person's claim to class membership. A request for a Class Membership Qualification Search does not constitute initiation of a Claim Submission with the Settlement Fund and does not toll any time deadlines relating to the initiation a claim. <u>For avoidance of doubt, the Claim Filing Deadline is not, and will not be, extended by a qualification search request, by the results of the request or by any inability of the Administrator to complete a search or searches prior to the deadline.</u>

   3.1.6. **Claimant Standing documentation**. Where a Claimant is the personal representative of a Class Member, it must provide to the Administrator a copy of authority to act, such as a copy of a probate short certificate, estate administration letters or a power of attorney, in the Claim Submission.

   3.1.7. **Part A Distributions.**

    3.1.7.1. ***Primary Claimant Shares***. Each Primary Claimant (or other claimant pursuant to Plan §3.1.3.5.3) timely submitting an approved Claim is entitled to receive one (1) Part A Base Compensation payment of up to $500 from the Part A Allocation, referred to as a "**Primary Claimant Part A Share**".

    3.1.7.2. ***Derivative Claimant Shares***.

3.1.7.2.1. Where a Primary Claimant (or other claimant pursuant to Plan §3.1.3.5.3) timely submits a claim determined to be eligible for Part A Base Compensation and there exists one or more Settlement Class Members who are a Derivative Claimant associated with the Underlying Lawsuit, then in addition to the Primary Claimant Part A Share awarded in §3.1.7.1, the Primary Claimant is entitled to claim one (1) additional Part A share of equal amount to the Primary Claimant Part A Share with respect to any and all such Derivative Claimants, for a total Part A Base Compensation award of up to $1,000. This PDP is referred to as the "**One Derivative Share Rule.**"

3.1.7.2.2. The Settlement Fund will pay the Part A Compensation Derivative Claimant Share to the Primary Claimant (or if deceased, to his or her Personal Representative or the other claimant pursuant to §3.1.3.5.3). The Claimant receiving the payment shall be solely responsible for any allocation and distribution of the Derivative Claimant Share to all associated Derivative Claimants. The Settlement Fund shall have no further responsibility or liability whatsoever to any Derivative Claimants as to the payment or distribution of this share once payment is distributed to the Claimant receiving it.

3.1.7.2.3. *Examples*: The following illustrate the operation of the *One Derivative Share Rule*. If an Underlying Lawsuit was a bodily injury claim in which the Primary Claimant's spouse was also named as a plaintiff in the Underlying Lawsuit with a claim for consortium loss or similar derivative damages, the spouse of the Primary Claimant would qualify for a Derivative Claimant Part A compensation share. The share would be paid by the Settlement Fund to the Primary Claimant as part of his distribution. If the Underlying Lawsuit was a wrongful death and survival action and the deceased Injured Person was survived by a spouse and two children who at the time of the litigation were all entitled to claim derivative wrongful death damages, there

14

would be a single Part A compensation share paid on account of this family group. The single share would be paid by the Settlement Fund to the Primary Claimant as part the claim distribution for the benefit of the Derivative Claimants as their interests may appear.

        3.1.7.3. **Proration:** The amount of compensation paid to Qualified Class Members under Part A may be reduced on a *prorated* basis if there are more than 12,500 Part A compensation shares, including both Primary Claimant Part A Shares and Derivative Claimant Part A Shares, determined to be eligible for payment.

        3.1.8.   **Reallocation.**

        3.1.8.1. Any funds remaining in the Part A sub-fund after payments are determined will be reallocated by the Settlement Trustee as follows: first to the Part C sub-fund to pay allowed EIF claims, if any, or used otherwise in the Settlement Trustee's reasonable discretion to augment Part C awards, if needed and then to the Part B sub-fund.  Such reallocation being referred to as a "**spillover**".

## 3.2. **Part B – Supplemental Injury Severity Based Compensation Program.**

        3.2.1.   **Description.**

        3.2.1.1.  The Plan's Part B program provides additional compensation to eligible Claimants who establish in accordance with the Plan's PDPs the Plan's Part B eligibility requirements which are based on, and on account of, defined physical asbestos injuries sustained by the Injured Person on which a claim is based. Part B payments are made out of a Settlement Fund sub-fund with an initial allocation of $59.75 Million. Class Members who meet the requirements for a Plan B Supplemental Compensation award will receive a proportionate share of the entire Part B sub-fund based upon a system of points awarded for the asbestos disease sustained and diagnosed. The amount of the Part B points and compensation payments vary

based upon the type and severity level of asbestos disease injury sustained and medically diagnosed. The Part B sub-fund's monetary amount may change in the course of the Settlement Fund's administration based on any spillovers from the Part A or Part C sub-funds, to pay Class Representative service awards or to pay administration costs and expenses that either are ineligible to be paid from the Settlement's Cost Fund or, if eligible, cannot be fully paid from the Settlement Cost Fund.

    3.2.2.  **Eligibility**.

        3.2.2.1.  To be eligible for a Part B Supplemental Compensation share payment, a Claimant must (a) qualify for Part A Compensation; (b) timely make a claim for Part B compensation in his Claims Submission; and (c) establish by credible, competent proof that the Injured Person sustained an asbestos disease injury falling into one of four defined categories of asbestos disease levels described in Table 1 of §3.2.3. Proof of asbestos disease and level may be satisfied through a certification of prior asbestos disease adjudication by a Qualified Asbestos Trust.

    3.2.3.  **Part B Claim Levels, Qualifying Points and Qualifying Asbestos Trusts.**

        3.2.3.1. Part B's Claim Levels along with Qualifying Points are defined in the following Table 1 and accompanying notes.

[Balance of Page is Intentionally Blank]

16

| Table 1<br>Part B Claim Levels | Qualifying Claim Points[1] |
|---|---|
| **Level 1 Claim**<br><br>Non-Malignant Asbestos disease.[2]<br><br>(Bilateral Asbestos-Related Nonmalignant Disease Injuries other than Severe Asbestosis) | 1 |
| **Level 2 Claim**<br>Malignant Asbestos Disease Other Than Mesothelioma or Level 3 Claim Lung Cancer.[3] | 9 |
| **Level 3 Claim**<br>Either: (a) Primary lung cancer with evidence of underlying Bilateral Asbestos-Related Nonmalignant Disease; or (b) Severe Asbestosis.[4] | 20 |
| **Level 4 Claim**<br>Mesothelioma | 86 |

---

[1] The number of qualifying points for each claim Level was determined by Verus LLC based on an analysis of compensation payment levels paid for typical and generally accepted asbestos disease categories by eighteen asbestos compensation trusts.

[2] "**Non-Malignant Asbestos Disease**" means what is commonly referred to as "Bilateral Asbestos-Related Nonmalignant Disease" and is defined as a disease evidenced by either: (a) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale, or (b) (i) a chest X-ray read by a qualified B reader or other Qualified Physician, (ii) a CT scan read by a Qualified Physician, or (iii) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. A "Qualified Physician" is (a) a physician who is board-certified in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine; and (b) where claimant is not relying on a disease certification from a Qualified Asbestos Trust not on the Administrator's Ineligible Diagnostician List published on the Settlement Website.

[3] "**Malignant Asbestos Diseases Other than Mesothelioma and Level 3 Claim Cancer**" means the following:

- A diagnosis of a primary lung cancer without evidence of evidence of underlying Bilateral Asbestos-Related Nonmalignant Disease and supporting medical documentation; or

- A diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus (a) evidence of underlying Bilateral Asbestos-Related Nonmalignant Disease; and (b) supporting medical documentation.

[4] "**Severe Asbestosis**" means by a disease evidenced by (a) a diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos, plus (i) TLC less than 65%, or (ii) FVC less than 65% and FEV1/FVC ratio greater than 65%; and (b) supporting medical documentation.

3.2.3.2. "**Qualified Asbestos Trusts**" are the following asbestos claims trusts or claims resolution facilities which are categorized as either "Preferred Qualified Asbestos Trusts" and "Alternative Qualified Asbestos Trusts".

3.2.3.3. "**Preferred Qualified Asbestos Trusts.**" The following asbestos trusts are Preferred Qualified Asbestos Trusts:

    (A)  AC&S Asbestos Settlement Trust.

    (B)  ASARCO Asbestos Personal Injury Settlement Trust.

    (C)  Combustion Engineering Trust.

    (D)  G-I Holdings Inc. Asbestos Personal Injury Settlement Trust.

    (E)  KACC Asbestos PI Trust.

    (F)  TH Agriculture and Nutrition, L.L.C. Asbestos Personal Injury Trust.

3.2.3.3.1. **Alternative Qualified Asbestos Trusts**. The following asbestos trusts are alternative Qualified Asbestos Trusts:

    (G)  The Manville Personal Injury Settlement Trust dated as of November 28, 1988.

    (H)  The Travelers Common Law Direct Action Settlement Fund.

3.2.4.  **Part B PDPs.**

3.2.4.1. **Highest Provable Asbestos Disease Progression Rule**. A Claimant may claim and be awarded compensation based upon the highest level of asbestos disease progression actually suffered by the Injured Person that can be established by either credible medical proof submitted to the Administrator or by a certification of disease award adjudication from a Qualified Asbestos Trust. Where such proof establishes a higher category of disease than claimed in the Claim Submission, the higher proven level will apply to the claim.

3.2.4.2.   **Part B required Documentation.** All Claims for Part B Supplemental Compensation must supply a medical record or a medical report that documents the Injured

18

Person's asbestos injury to the Settlement Administrator as part of the Claim Submission unless no supporting document exists or can be found after Claimant has conducted a reasonable search and inquiry. Where documentation is not available the Claimant must then certify under oath that no supporting medical record or report document is available. Claimants may use the certification form for this purpose available on the Settlement's Website form page. For avoidance of doubt, this medical document or report submission requirement applies even where the Qualifying Asbestos Disease Level is being established through a certified adjudication from one of the Qualified Asbestos Trusts.

### 3.2.4.3. **Establishing Part B Asbestos Disease Level**

3.2.4.3.1.  The Claimant has the burden of establishing the existence and level of a qualifying asbestos disease's existence and severity level by meaningful and credible medical proof.

3.2.4.3.2. A Claimant who otherwise meets the requirements of this Plan for payment of a Part B Claim shall be paid irrespective of the results in any litigation at any time between the Injured Person (or their estate where applicable) and any defendant in the judicial tort system.

### 3.2.4.4.  **Establishing Qualifying Asbestos Disease and Claim Level through a Certification of Prior Qualified Asbestos Trust Disease Adjudication.**

3.2.4.4.1.  A Claimant may establish the existence and level of a qualifying asbestos disease through a certified prior Qualified Asbestos Trust adjudication that supports the Part B claim. The Settlement Fund will accept and apply the certification of highest disease level adjudication received from the Qualified Asbestos Trusts, even if higher than what the Claimant requested in his/her Claim Submission.

3.2.4.4.2. The Administrator will first attempt to obtain and use an adjudicated disease level certified by one of the Preferred Qualified Asbestos Trusts to support a claim unless a qualifying prior disease level adjudication is not available from one of the Preferred Qualified Asbestos Trusts, in which case the Administrator will then request and accept an adjudication certification from one of the Alternative Qualified Asbestos Trusts to support the claim.

3.2.4.4.3.   Where a Claimant elects to rely on a Qualified Asbestos Trust Adjudication it must in its Claims Submission: (a) identify for the Administrator, if requested, a specific Qualified Asbestos Trust to be contacted; (b) provide sufficient claim identification information to enable the Administrator to obtain certification of the disease adjudication; and (c) provide such written release authorization as necessary (including executing a multi-trust information release authorization form) to enable the Administrator to obtain certification of the disease adjudication from a Qualified Asbestos Trust.

3.2.4.4.4.   Where the Administrator is unable to obtain a certified adjudication from a designated trust, or the certified adjudication received fails to support the Part B Level claimed on the Claim Submission, the Administrator will notify the Claimant of such fact. The Claimant may then:

(A)     accept a lower level of prior adjudicated disease certified to the Administrator if there is one; or

(B)     request an alternative trust certification, from one or more other specified Qualified Asbestos Trust along with providing the Administrator with any required information and release authorization (including executing a multi-trust information release authorization form) to enable it to request a certification, in which case the Administrator will request certification from the alternative specific trust;

20

(C)     amend the Claim Submission to state it will attempt to establish the medical injury element by submitting medical evidence to the Administrator and proceed accordingly; or

(D)     withdraw the Part B claim, which will be deemed the default election if one of the preceding alternatives is not timely taken and implemented.

3.2.4.4.5. The Settlement Fund will not dispute or reject any adjudication of disease level certified and provided to it from a Qualified Asbestos Trust.

3.2.4.4.6.  Where the disease level certified from a Qualified Asbestos Trust is higher than what is claimed in the Claimant's Claim Submission form, the Administrator will notify the Claimant and the Claim Submission will be automatically deemed amended by the Claimant to request the higher established disease Claim level and the claim processed on that basis.

3.2.4.5. **Qualified Asbestos Trust Polling Assistance.** Prior to the Claims Filing Deadline, a Claimant who satisfies Part A Eligibility but lacks sufficient information and means to support the medical proof element of a Part B Claim may request the Administrator to poll the Qualified Asbestos Trusts on Claimant's behalf to determine if any possesses information or documents relating to the Injured Person which can support a Part B claim. If a positive response is received, the Claimant may authorize the Administrator to obtain the information from the Trust in support of the Claim. The Claimant must provide appropriate authorizations and identification information, including social security numbers. For avoidance of doubt, the Claim Filing Deadline is not, and will not be, extended by a polling request, by the results of a polling request or by any inability of the Administrator to complete a polling request or requests prior to the deadline.

### 3.2.4.6. **Establishing Qualifying Asbestos Disease and Claim Level by submitting medical proof.**

3.2.4.6.1. Where a Claimant either chooses not to rely on a prior Qualified Asbestos Trust adjudication to support their Part B claim or is unable to, the existence and level of the Qualifying Asbestos Disease must be established through submission of meaningful and credible medical proof of the asbestos disease claimed. If a claimant wants to seek a higher level of disease than prior asbestos trust adjudications, it may establish the level through submission of meaningful and credible medical proof of the higher asbestos disease claimed.

3.2.4.6.2.  Medical proof supporting a Part B claim must be submitted along with the Claim Form in order for a Claim Submission to be complete and eligible for adjudication by the Settlement Fund. (*See* § 4.2 of this Plan.)

3.2.4.7. The Settlement Fund will consider medical proof evidence submitted to it in support of a claim for evaluation from only Qualified Physicians and diagnosticians and will not accept and consider as medical proof submitted to it in support of a claim for evaluation by or from anyone appearing on the Administrator's Ineligible Diagnostician List published on the Settlement Website. A Qualified Physician is a physician who is board-certified in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine and is not on the Administrator's Ineligible Diagnostician List published on the Settlement Website. Medical evidence (a) that is of a kind shown to have been received in evidence by a state or federal judge at trial, or (b) that is a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the Settlement Fund may seek to rebut the presumption.

3.2.4.8. In reviewing and weighing medical proof submitted in support of a Part B claim the Settlement Fund will consider and take into account evidence that the dismissal of the Underlying cases and the passage of time may have hampered, impaired or diverted the Injured Person or the Underlying Lawsuit's attorneys developing or preserving medical causation proof.

3.2.4.9. Medical proof provided in support of a Part B Claim from a Qualified Physician or other competent diagnostician will be viewed in a light favorable to the Claimant when and where the Settlement Fund has reasonable confidence that it is credible and consistent with recognized medical standards.

3.2.4.10. As to any Part B Level 2, Level 3 or Level 4 claim based upon submission of medical proof, the Settlement Fund claim may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence and will require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedures to assure that such evidence is reliable.

3.2.5. **Part B Distribution Formula.**

3.2.5.1. The Settlement Fund's Part B sub-fund will be distributed to those eligible Part B Claimants according to their severity level of asbestos disease. The amount of eligible Part B Claimants' share of the Part B sub-fund distribution will be calculated according to the formula $X/Y$ x $Z$, where $X$ represents the number of the individual eligible Claimant's adjudicated Qualifying Claim Points awarded; $Y$ represents the aggregate of all eligible Claimants' adjudicated Qualifying Claim Points, and $Z$ represents the Part B sub-fund.

3.2.5.1.1. **Illustration:** The following table of hypothetical claims distribution calculations illustrates the application of the formula. They hypothetical distributions assume: (a)

23

that 7,500, 8,000 or 8,500 Primary Claimants submit Part B claims and are found eligible; (b) that the disease rate distribution for the adjudicated Part B claimants is the same as the Johns Manville Asbestos Trust's disease rate experience (*i.e.* – mesothelioma – 4.3%; Malignant Asbestos Diseases Other Than Mesothelioma or Claim Level 3 Lung Cancer and Severe Asbestosis - 2.1 %; Claim Level 3 Lung Cancer and Severe Asbestosis – 7.3 %, and non-malignant asbestos disease 86.3%); and (c) that the amount of the Part B sub-fund available for distribution is $59,750,000. Applying the formula to these parameters yields the results stated in Table 2.

| Table 2 Hypothetical Part B Payment Share Estimates* | | | | |
|---|---|---|---|---|
| **Part B Claim Levels** | **Qualifying Claim Points** (Assumed disease rate %) | **Estimated Payments** (Estimated number of claims) | | |
| | | **7,500 approved claimants** | **8,000 approved claimants** | **8,500 approved claimants** |
| **Level 1 Claim** Non-Malignant Asbestos disease other than Severe Asbestosis. (Bilateral Asbestos-Related Nonmalignant Disease Injuries other than Severe Asbestosis) | **1** (86.3 %) | $1,283 (6,473) | $1,203 (6,904) | $1,132 (7,336) |
| **Level 2 Claim** Malignant Asbestos Disease Other Than Mesothelioma or Level 3 Claim Lung Cancer. | **9** (2.1 %) | $11,546 (158) | $10,824 (168) | $10,188 (179) |
| **Level 3 Claim** Either: (a) Primary lung cancer with evidence of underlying Bilateral Asbestos-Related Nonmalignant Disease; or (b) Severe Asbestosis. | **20** (7.3 %) | $25,658 (548) | $24,054 (584) | $22,639 (621) |
| **Level 4 Claim** Mesothelioma | **86** (4.3 %) | $110,327 (323) | $103,432 (344) | $97,348 (366) |
| * Due to rounding, the numbers presented may not add up precisely to the totals indicated and payment estimates may not precisely reflect the absolute figures. | | | | |

3.2.5.1.2. **Caveats**:

(A)      Table 2 is for illustration purposes only. The actual Part B payment amounts to Settlement Class Members will likely be different than any of the estimated hypothetical payments appearing in the table based upon the Settlement Fund's actual claim experience.

(B)      The hypothetical payment share estimates shown on Table 2 do not reflect deductions for any liens or fees charged by personal attorneys hired by class members. Class members eligible for a settlement payment are responsible for paying from that settlement payment any liens or any fees charged by personal attorneys should they have hired one.

3.3. **Part C – Extraordinary Injury Fund (EIF) Compensation Program.**

3.3.1.   **Description.**

3.3.1.1. The Plan's Part C compensation program provides a discretionary Extraordinary Injury Fund ("EIF") from which the Settlement Trustee may award a Level 4 (mesothelioma) Primary Claimant who proves extraordinary and exceptional circumstances, and who meets the EIF's Eligibility Criteria set forth in § 3.3.2, an additional compensation payment of up to $175,000. For avoidance of doubt, an EIF payment is over and above any Part A and Part B Payments awarded a Claimant. EIF payments are made from the Settlement Fund's Part C EIF sub-fund, which has an initial Settlement Fund allocation of $6.5 Million. The Part C EIF sub-fund's size may change in the course of the Settlement Fund's administration based on the Settlement Trustee's application of a spillover from the Part A sub-fund to it. Any unused EIF allocation shall be used in accordance with § 3.1.8 above.

3.3.1.2. **Limit on EIF individual awards.** No EIF award shall exceed $175,000.

25

3.3.2.   **Eligibility.**

3.3.2.1.   A Claimant who (a) qualifies under Part B for a Level 4 (mesothelioma) award (the "**EIF Mesothelioma Requiremen**t") and (b) meets all of the following additional eligibility requirements (the "**EIF Eligibility Criteria**") may apply for and submit evidentiary proof for consideration by the Settlement Fund for a discretionary Part C EIF award:

(A) The Injured Person (or their estate where applicable) together with any Derivative Claimants associated with the Underlying Lawsuit received in the aggregate less than $250,000 from all other potentially responsible asbestos defendant settlements, including any asbestos trust or other outside of litigation payments; and

(B) The Claimant has competent, meaningful and credible evidence establishing the Injured Person had significant exposure to Emtal Talc, either in raw form and/or in the form of dust emitted from a product containing Emtal Talc as an ingredient, that was a substantial factor in causing the asbestos injury. This may be established by an affidavit or sworn statement of the Claimant; by an affidavit or sworn statement of a co-worker or the affidavit or sworn statement of a family member in the case of a deceased Injured Person (providing the Settlement Fund finds such evidence reasonably reliable); by depositions, photographs, interrogatories, invoices, shipping records, employment, construction or similar records; or by other credible evidence; and

(C) The Claimant has competent, meaningful and credible evidence through one or more Qualified Physicians establishing the Injured Person's exposure to Emtal Talc was a substantial contributing factor to causing the mesothelioma; and

(D) The Claimant has competent, meaningful and credible evidence the Injured Person's lawyer in the Underlying Litigation was the recipient of discovery, correspondence, motion papers or affidavits served or sent to him or his law firm, by an attorney or agent of Engelhard/BASF that stated or represented in words or substance that Emtal talc ore or products did not contain asbestos and/or there was no evidence it contained asbestos (including any representation or statement there were no depositions of Engelhard/BASF personnel relating to asbestos in Emtal talc); and

(E) The Claimant is able to credibly establish extraordinary loss or injury circumstances that meaningfully distinguish Claimant's situation and circumstances from the general population of successful Part B claimants to the Settlement Fund warranting an equitable adjustment award.

3.3.2.2. **Relaxation of EIF Eligibility Criteria:** The Settlement Trustee in her sole, absolute and unfettered discretion may equitably relax or dispense with an EIF Eligibility Criteria

requirement where she finds exceptional extraordinary circumstances present in the EIF claim that provide good cause for such relief.

      3.3.3.  **Reallocation.**

          3.3.3.1.  The Settlement Trustee is not required to make any EIF awards or awards sufficient to exhaust the EIF fund. Any unused funds in the Part C sub-fund shall be used in accordance with to § 3.1.8 above.

## 4. Claim Administration Procedures and Policies.

 4.1. **Claim Form and Eligibility Proof Requirements.**

      4.1.1.   In order to obtain a compensation award from the Settlement Fund a Class Member must do each of the following: (a) initiate a timely Claim Submission with the Settlement Fund prior to the Claims Filing Deadline by completing and submitting under penalty of perjury, either on-line or in paper form, a Claim Form provided by the Administrator bearing the Class Member's handwritten signature either on the Claims Submission Form itself or on a separate form available from the Administrator (which manually signed document may be submitted by mail, fax or in the form of a pdf uploaded to the Claims Administration Website); (b) along with the Claim Form, timely and completely provide all supporting certifications, authorizations, information and documentation required by the Plan to adjudicate the compensation requests made in the Claim Form; and (c) meet the eligibility requirements of the Plan for the compensation program Part or Parts applied for.

      4.1.2.   A Claimant must identify in their Claim Submission Form each Settlement Fund program Part under which compensation is sought other than a request for Part A Primary Claimant Shares. A Part A Primary Share request will be automatic upon making a Claim Submission. For clarity, if a claimant wants to apply for and receive a Part A Derivative Claimant Share, a Part B

Supplement Compensation Award and/or a Part C EIF Discretionary Compensation award, then the claim for such compensation must be specifically made in the Claim Submission form where indicated and supporting information and documentation relating to the application for such compensation provided in the Claim Submission.

4.1.3.   Where Part B Supplemental Compensation is requested, the Claimant must also state in the Claims Submission form the Part B Claim Level claimed to be applicable. Alternatively, Claimant can indicate it requires Qualified Asbestos Trust Polling Assistance to determine disease and disease level under §3.2.4.5.

4.1.4.   All Part A Claimants must satisfy the Part A documentation requirement of §3.1.3.2, and all Part B Claimants must satisfy the Part B documentation requirement of § 3.2.4.2.

4.1.5.   Claim Submissions by or on behalf of individual Class Members may be submitted to the Settlement Fund either electronically through the Settlement Fund's secured claims administration portal located on the Settlement Fund's official website or in paper form. Claims on behalf of multiple Claimants represented by a Registered Law Firm may be submitted to the Administrator thorough a Claims Submission spreadsheet option. For avoidance of doubt, every Claim Submission must include a Claim verification under penalty of perjury manually signed the Claimant on the form provided by the Administrator to be deemed Complete. The Claim Verification may be separately submitted to the Administrator.

4.1.6.   If a claim form or supporting evidence is submitted in paper form, it must be mailed to the Settlement Fund Administrator's claims processing facility at Verus LLC ("Verus"), 3967 Princeton Pike, Princeton, NJ 08540. For deadline purposes, a physically mailed item will be deemed received by the Settlement Fund on the date it is actually received by the Administrator and not on the date mailed.

4.1.7.   Any Claim Submission Form or electronic equivalent submitted to initiate a Claim that is received by the Settlement Fund after the expiration of the Claims Filing Deadline will not be processed and a Notice of Claim Determination issued denying the claim as untimely.

4.1.8.   Information, documents and certifications supplied to cure Parts A, B or C deficiencies received by the Administrator after the Claims Filing Deadline has expired but prior to the Documents Submission Deadline will not affect the timeliness of the claim.[5] For avoidance of doubt, submission of lien administration information and materials required by the Lien Administrator in connection with an individual Claimant's distribution payment(s) is not subject to the Documents Submission Deadline. A separate Lien Administration Document Deadline applies to lien administration information and materials, which deadline occurs on the first business day 45 days after the Effective Date.

 4.2. **Claim Initiation and Claim Support Submission Requirements and Procedures.**

4.2.1.   **Required Claim Information for a Claim to be Considered "Complete"**.

4.2.1.1. To be deemed complete for purposes of § 4.1.1, all of the items of information set forth in § 4.2.1.2 below are required to be supplied to the Settlement Fund on the Claimant's Claims Submission Form ("**Required Claim Information**") along with timely submission of all necessary supporting documents, certifications, and verification required by the Plan's PDPs.

---

[5] The Settlement's Preliminary Approval Order provides a "**Claims Filing Deadline**" by which a Claim Form and all other required Claim Submission documents and items must be filed by a Claimant with the Administrator in order to timely initiate a claim. The proposed deadline date is  120 days from when the Notice is first published to the Class pursuant to the Notice Plan unless otherwise modified by the Court. The Preliminary Approval Order also provides a "**Documents Submission Deadline**" by which a Claimant must submit all documents necessary to cure any deficiency in its Claims Submission. This deadline is 155 days from when the Notice is first published to the Class pursuant to the Notice Plan unless otherwise modified by the Court.

4.2.1.2. **Required Claim Information** are all of the following items:

(A) Name, current mailing address and Email of Claimant and the law firm (if any) representing claimant in connection with claim to the Settlement Fund;

(B) Court and docket number of the Underlying Lawsuit on which the claim is based;

(C) The date of birth, date of death (if applicable), residence addresses during the Class Period (if known), and social security number of the Injured Person in the Underlying Lawsuit on which the claim is based.

(D) A certification on the form, under penalty of perjury, that the Claimant qualifies based upon one of the following:

    (1)  Claimant is the Injured Person who was named in the Underlying Lawsuit identified on the form; or

    (2)  Claimant is the personal representative of the Injured Person named in the Underlying Lawsuit identified on the form and that the Claimant's decedent was the Injured Person referred to or named in the Underlying Lawsuit identified on the form; or

    (3) The Claimant (a) is applying for Part A Base Compensation based upon being an eligible surviving spouse or the surviving child of a deceased Injured Person eligible to make the claim for Part A Base Compensation Benefits; (b) the claim is based upon the Injured Person identified in the Underlying Lawsuit listed and that the Claimant's decedent was the Injured Person referred to or named in the Underlying Lawsuit; (d) that no estate was ever created for the deceased Injured Person and (c) the claim is limited to a request for only Part A Base Compensation;

(E) An election on the form where indicated on whether Part A Derivative Claimant Base Compensation is being requested and if so, the name(s) of the Class Member(s) who are Derivative Claimant(s) related to the Injured Person the claim is based upon;

(F) An election on the form where indicated on whether Claimant is requesting Part B compensation. If Claimant requests Part B compensation it must further:

    (1) Indicate where provided on the form that Claimant will be submitting medical proof supporting the Part B Claim;

    (2) Indicate where provided on the form if Claimant will be relying on a certification of prior asbestos disease adjudication by one of the Qualified Asbestos Trusts; or

(3) Indicate where provided on the form that Claimant requires Administrator assistance.

(G) An election on the form where provided whether Claimant is requesting Part C EIF compensation. If a Claimant is requesting Part C EIF compensation, a statement of the basis for the EIF claim, certification that eligibility requirements are or will be met, and if requesting waiver of an EIF Eligibility Requirement, identification of the requirement and the reasons why the Settlement Trustee should waive the requirement.

(H) Completion of a Written Release Authorization Form enabling the Administrator to obtain certification of the disease adjudication from one of the specified Preferred Qualified Asbestos Trusts or if necessary, one of the Alternative Qualified Asbestos Trusts.

(I) , Certification that Claimant has not opted out and is not opting out of Class Membership.

(J) Where applicable certification that after a diligent search was made for documents satisfying the required Part A documentation requirement of § 3.1.3.2. and the Part B documentation requirement of § 3.2.4.2 no documents could be located; and

(K) Written certification electronically or manually signed by the Claimant under penalty of perjury that all information provided in and in support of the Claim Submissions is true, accurate, and complete to best of their knowledge and belief.

4.3. **Claim Submission Supporting Documentation Deadline.**

4.3.1.  Claim Submission supporting documentation, certifications and authorizations should be submitted along with the Claim Submission Form and must be submitted to the Settlement Fund no later than the earlier of: (a) 20 days from the date the Claimant is given Notice of Deficiency or Notice of Administrator's Claim Adjudication which identifies curable missing or deficient supporting documentation; or (b) the Documents Submission Deadline.

4.3.2.   A Claim Submission will not be deemed Complete and eligible for processing, review and adjudication by the Settlement Fund Administrator until all Required Claim Information is provided, including all required or applicable supporting certifications, verifications, elections, required Part A documentation/certification, required Part B

31

documentation/certification, medical records (if applicable to supporting claim), employment records (if applicable to supporting a claim), and Qualified Asbestos Trust authorizations. Incomplete claims will not be processed.

4.3.3. Lien Information. For avoidance of doubt, completion of the Lien Administration questionnaire or providing lien information to resolve lien obligations is not part of a claim's Required Claim Information and non-completion of or missing lien information/documents will not render a Claim Submission incomplete for claim adjudication purposes. It will however, delay payment and distribution of a Claimant's individual claim until required Lien Resolution Requirements are satisfied. A separate Lien Administration deadline will be set by the Settlement Trustee, which generally will be 45 days following the Effective Date of the Settlement.

4.4. **Claim Submission Reviews.**

4.4.1. Generally, Claim Submission reviews will occur in the order they are received, and the review will determine if the Required Claim Information and supporting documentation and certifications have been supplied. Where the Claim Submission is determined to be incomplete the Administrator will identify each deficiency in a Notice of Deficiency sent to Claimant or Claimant's Registered Law Firm. A Claimant or Claimant's Registered Law Firm will have 20 days from the date of notice to cure deficiencies identified in the Notice of Deficiency. Failure to cure the deficiencies identified in the Notice of Deficiency shall result in no further processing of claim and an administrative denial of claim.

4.5. **Claim Substantive Review Processes and Procedures.**

4.5.1. The Administrator will perform all substantive claim reviews. During the substantive claim review the Administrator will determine eligibility of Claimant under each Plan Part for which compensation is requested in the Claimant's Claim Submission form.

4.5.2.   The Administrator will generally process complete Claims Submissions on a first in, first out (FIFO) basis as they are determined to be complete for review. Claim Submissions requesting Part C EIF compensation may be placed into a separate processing queue by the Settlement Fund for administrative convenience.

4.5.3.   The Settlement Fund implements both automated and manual quality control steps that are implemented prior to any claim being processed for review and payment. The quality control program assures that no duplicate claims are processed and that claims meet all applicable criteria before payment.

4.5.4.   Claim Submissions which do not request Part C EIF compensation (referred to as a "**Standard Claim**") will be processed as follows:

4.5.4.1. When a Standard Claim's Claim Submission is determined to be eligible for compensation with respect to each of the program Parts requested in the Claims Submission form, including, if applicable, eligible for Part B compensation at the Part B Claim Level disease claimed in the form, the claim will then be deemed a "**Qualified Standard Claim**" and a Notice of Administrator's Claim Adjudication sent to the Claimant or Claimant's Registered Law Firm informing it of the Administrator's claim determinations. The claim will thereafter be processed and paid in accordance with applicable Plan provisions to the qualified claims.

4.5.4.2. When a Standard Claim's Claim Submission is determined to be eligible for compensation for some of the Plan Parts requested but not eligible as to others requested in the Claim Submission form, including if applicable, determined to be eligible for Part B compensation but at a lower Part B Claim Level claim than requested in the form, the claim will be deemed a "**Partially Qualified Standard Claim**" and the Settlement Fund will then follow the applicable Claim Determination Notice, Cure and Contest Processes and Procedures in § 4.6.

33

4.5.5.   When a Standard Claim's Claim Submission is determined to be not eligible for compensation under any Plan Part requested in the Claim Submission form, the claim will be deemed a "**Non-Qualified Standard Claim**" and the Settlement Fund will then follow the applicable Claim Determination Notice, Cure and Contest Processes and Procedures in § 4.6. A Claim Submission that contains a request for Part C EIF compensation (referred to as an "**EIF Claimant Claim**"), will not be reviewed for EIF eligibility until it has been determined that the Claimant is eligible under Parts A and under Part B as a Claim Level 4 (mesothelioma) claim pursuant to 4.5.4 above. Once the EIF Claimants' Claim Submission is determined to meet the eligibility requirements of Part A and a Part B, Claim Level 4 claim, the Administrator will then proceed to determine the EIF claims eligibility, and if determined eligible, the Administrator will make an EIF award amount recommendation to the Settlement Trustee based upon the circumstances presented in the Claim Submission, which recommendation will be conveyed to the Claimant or Claimant's Registered Law Firm as provided in § 4.6.2. Where the EIF Claimant requests an EIF Eligibility Criteria waiver or relaxation, the Settlement Trustee will be notified and asked by the Administrator to rule upon the waiver/relaxation request and the Administrator will apply the Settlement Trustee's ruling on the waiver or relaxation request in determining eligibility. Once the EIF and Claim Submission adjudication is complete the Settlement Fund will follow the Claim Determination Notice, Cure and Contest Processes and Procedures in § 4.6 applicable to the circumstances.

4.6. **Claim Determination Notice, Cure and Contest Processes and Procedures.**

4.6.1.   Where the Administrator determines a Standard Claim is either a **Partially Qualified Standard Claim** or **Non-Qualified Standard Claim**, or determines that an EIF Claimant claim should be processed as a **Qualified Standard Claim** or **Non-Qualified Standard**

**Claim**, or modifies an approved claim pursuant to any of the provisions of § 8 relating to claim audits and claim reviews, the Administrator will send Claimant or Claimant's Registered Law firm a Notice of Administrator's Claim Adjudication informing it or them of the determination and the reason(s) for such determination and of applicable cure or contest rights the Claimant has. Within 20 days of the date of the notice, a Claimant or Claimant's Registered Law Firm may either (a) attempt to cure any deficiencies in the Claim Submission identified in the notice or provide additional information, documentation or certifications to be reviewed by the Settlement Fund for a reconsideration; or (b) inform the Settlement Fund that the Claimant is requesting review and determination of any contested issue(s) before the Settlement Trustee and submit a Settlement Trustee Adjudication request which request shall specify the reasons for the appeal or challenge. To the extent that any Claimant or law firm fails to make one of the two available elections in clauses (a) or (b) in this paragraph within 20 days of the date of the Settlement Fund's Notice of Administrator's Claim Adjudication, the Claimant's Claim Submission shall be deemed to be finally adjudicated as stated in the notice and the claim further processed for payment or terminated accordingly.

4.6.2.   Where the Administrator determines an EIF Claim Submission is eligible it will send Claimant or Claimant's Registered Law Firm a Notice of Administrator's Claim Adjudication informing it or them of the Settlement Fund's determinations as to the Parts A, B and C claims and the reason(s) for such determination along with the Administrator's recommended EIF award amount. Within 20 days of the date of the notice, a Claimant or Claimant's Registered Law Firm may either (a) attempt to cure any deficiencies in the Claim Submission identified in the notice or provide additional information, documentation or certifications to be reviewed by the Settlement Fund for a reconsideration; or (b) inform the Settlement Fund that the Claimant is requesting

review and determination of any contested issue(s) before the Settlement Trustee and submit a Settlement Trustee Adjudication Request which specifies the reasons for the appeal or challenge. To the extent that any Claimant or law firm fails to make one of the two available elections in clauses (a) or (b) in this section within 20 days of the date of the Settlement Fund's Notice of Administrator's Claim Adjudication, the Claimant's Claim Submission shall be deemed to be provisionally adjudicated as stated in the notice and the claim further processed for payment accordingly.

    4.6.3.   Where a Claimant elects under §§ 4.6.1(a) or 4.6.2(a) to provide additional reasons, information or documents in response the Notice of Administrator's Claim Adjudication the Administrator will review the material and determine whether it changes the Administrator's prior determination(s). The Administrator will inform the Claimant or the Claimant's Registered Law Firm of the outcome of this review and its reasons for such determination(s). The Claimant shall, within 10 days of such notice, inform the Settlement Fund that the Claimant is requesting an adjudication of the issue or claim by and submit a Settlement Trustee Adjudication Request, specifying the issue(s) and the reasons for the appeal to her for an adjudication. The adjudication by the Settlement Trustee in response to the request shall be final, binding and non-appealable. To the extent that no Settlement Trustee Adjudication Request is timely served on the Settlement Fund, the Claimant's Claim Submission shall then be deemed by the Settlement Fund to be fully and finally adjudicated as stated in the reconsideration notice (which may incorporate the prior notice by reference) and the Claim Submission further processed for payment or terminated accordingly.

    4.6.4.   **Settlement Trustee's power and discretion to modify or reject award determinations**. Prior to the submission of the Settlement Fund's proposed distribution schedules

to the Court for approval under § 9.4.2 of this Plan, the Settlement Trustee upon notice to the Claimant or Claimant's Registered Law Firm, and affording Claimant a reasonable opportunity to be heard, may for good cause modify, rescind or decline to ratify any Part A or Part B award determination that is mistaken or fraudulent or in her sole discretion modify, rescind or decline to ratify any EIF award determination.

**5. Rules, Processes and Procedures Relating to Attorney Representation of Claimants.**

5.1.1.   Each Class Member has the right to representation by their own retained attorney to represent their claim to the Settlement Fund for compensation. The Claimant is solely responsible for the fees and expenses of their attorney. Any attorney licensed in a United States jurisdiction may represent a Class Member in connection with their claim submission to the Settlement Fund.

5.1.2.    To be eligible and recognized as a Claimant's attorney and representative, the attorney's law firm must register with the Settlement Fund by submission of a registration form (in which it will consent in writing to the Court's jurisdiction over it), an electronic filer agreement (EFA) if submitting electronically, a W-9 form and an Automated Clearing House (ACH) form if receiving funds electronically. Once these are submitted and accepted by the Settlement Fund, the firm and all of its attorneys associated with it will be deemed (and referred to as) a "Registered Law Firm." The Settlement Fund will provide a spreadsheet form or other means for a Registered Law Firm to submit multiple claimants' claims.

5.1.3.   Registered Law Firms must fully assist and comply with the Settlement Fund's claim and financial audits procedures. A Registered Law Firm must provide the Settlement Fund with an email address and in so doing consents to service of notices from the Settlement Fund by email sent to such address.

5.1.4.   **Law Firm Electronic Access.**

5.1.4.1. A law firm may request the Administrator to register and allow it to access its online filing system by executing an EFA. Once a Registered Law Firm has been granted access to the electronic filing system, the Registered Law Firm may simultaneously file claims. The Settlement Fund strongly recommends that law firms use the online filing system.

5.1.4.2. For all claims filed with the Settlement Trust, each Registered Law Firm is obligated to maintain copies of any document relied upon in connection with the claims.

5.1.5.   **Recognition of Attorney Fee Agreements and resolution of any disputes over attorney's fees and cost reimbursement.**

5.1.5.1. The Settlement Funds policy is to recognize individual attorney fee agreements that apply to a claim payment being awarded from the Settlement Fund and therefore allow a Claimant's Registered Attorney to receive and distribute the claimants' compensation payments in order to expedite distributions.

5.1.5.2. In the event there is a dispute concerning attorney fees or cost reimbursement relating to a Settlement Fund payment in which the Settlement Fund is on notice, no distribution will be made by the Settlement Fund to the parties connected with the dispute until they agree to resolve the dispute and provide the Settlement Fund with written confirmation of the resolution of the dispute. The Settlement Trustee may also enter a Special Master's Fed. Rule Civ. P. 53 Recommendation providing for the deposit of any Settlement Funds in dispute into an escrow account or into Court in order to facilitate the Settlement Fund's administration or winding up and closure, any costs or expenses of which shall be borne solely by the parties involved in the dispute.

**6. Filing Fees and Settlement Trustee's Costs and Sanction Assessment Authority.**

6.1. The Settlement Fund does not require a filing fee in order to submit a claim.

6.2. The Settlement Trustee may assess charges for any administration costs incurred by the Settlement Fund, including the Settlement Trustee's hourly fees, against any portion of a Claimant's award where the Trustee finds a claim or appeal demand to be in whole or in part fraudulent or frivolous.

6.3. The Settlement Trustee may assess (through a Special Masters' Fed. Rule Civ. P. 53 Recommendation) sanctions against a Claimant or Claimant's attorney, including but not limited to any administration costs incurred by the Settlement Fund and/or the Settlement Trustee's hourly fees, where the Trustee finds a claim or an appeal demand to be fraudulent or frivolous.

**7. Lien Resolution Requirements and Procedures.**

7.1.  The Settlement Fund will not make any payment awards to a Claimant until all Liens related to the Claimant's Settlement Fund award are resolved and/or provided for to the satisfaction of the Settlement Trustee where there exists a legal obligation on the Defendants, the Settlement Trustees, Class Counsel, or the Settlement Fund to withhold payment of a monetary award or settlement payment, or some portion thereof to a Settlement Class Member under applicable federal or state law. By way of illustration and not limitation, it will not pay any monetary award to a Claimant who is or was entitled to benefits under a Governmental Payer program, Other Governmental Payer program, or Medicare Part C or D Program prior to either (i) the Lien Administrator's determination of the final amount needed to satisfy the reimbursement obligation that any Government Payer or Medicare Part C or Part D Program sponsor states is due and owing (as reflected in a final demand letter or other formal written communication), and satisfaction and discharge of that reimbursement obligation as evidenced

by the Lien Administrator's receipt of a written satisfaction and discharge from the applicable Governmental Payer, Other Governmental Payer, or Medicare Part C and Part D program sponsor or other written proof of satisfaction reasonably acceptable to the Defendants (such as correspondence from each lienholder with the Settlement Class Member's final lien amount and proof of payment); or (ii) the Lien Administrator's determination of the "holdback" amount to be deducted from the monetary award under which such reimbursement obligation will be resolved.

## 7.2. **Court Appointed Lien Administrator**

7.2.1.   The Court has appointed _____ [6] as the Plan's Lien Administrator to perform certain functions in connection with Liens that may be asserted by certain healthcare payers in order to protect the Plan and the Parties to the Settlement Agreement establishing the Plan.

## 7.3. **Duties of the Lien Administrator**

7.3.1.   The Lien Administrator will perform certain functions in connection with Liens that may be asserted to assure these Liens, if any, are properly addressed prior to the Settlement Fund making a payment to a Claimant.

7.3.2.   The Lien Administrator's general duties include acting on behalf of Claimants, the Settlement Fund, the Settlement Trustees, the Defendants, and/or their respective counsel for purposes of: (1) establishing processes to identify Liens that may be held or asserted by Governmental Payers and Other Governmental Payers (collectively "Government Payer Liens); (2) satisfying certain Government Payer Lien obligations, including any relevant reporting

---

[6] The Court is being asked to appoint Edgar C. Gentle, III, Esq. and his law firm, Gentle, Turner, Sexton & Harbison, LLC, to serve as Lien Administrator.

obligations (whether Medicare Secondary Payer Act ("MSP") or otherwise) under an alternative aggregate (global/mass management) lien resolution approach or assisting the Defendants with reporting obligations under a traditional (claim-by-claim) lien resolution approach by providing them with all necessary reporting information required to comply with reporting obligations; and (3) resolving Government Payer Liens related to medical items and/or services whether through a traditional (claim-by-claim) and/or alternative aggregate (global/mass management) process in each case associated with the Class Action Settlement and/or this Plan.

7.4. **Claimant Lien Identification Obligation**.

7.4.1.  Each Claimant, on his or her own behalf, and on behalf of his or her estate, predecessors, successors, assigns, representatives, heirs, beneficiaries, executors, and administrators, in return for the benefits and consideration provided in the Settlement Agreement and this Plan of Distribution, will indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities, including the costs of defense and attorneys' fees of, the Released Parties against any and all claims by Other Parties arising from, relating to, or resulting from (A) compensation or benefits received by a Settlement Class Member pursuant to this Settlement Agreement or the Plan of Distribution; (B) any undisclosed Lien relating to, or resulting from, compensation or benefits received by a Claimant pursuant to the Settlement Agreement or this Plan of Distribution and/or (C) the failure of a Claimant timely and accurately to report or provide information that is necessary for compliance with MSP, or for the Lien Administrator to identify and/or satisfy all Governmental Payers or Medicare Part C or Part D Program sponsors who may hold or assert a reimbursement right. The amount of indemnification will not exceed the total compensation awarded to the Claimant under this Plan of Distribution for the Claimant's claim. CLAIMANTS

41

ACKNOWLEDGE THAT THIS SECTION COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.

7.5. **Governmental Payer Procedures**

7.5.1. **Identification of Governmental Payers**

7.5.1.1. The Lien Administrator will affirmatively verify whether each Claimant (or his decedent if applicable) who will be paid a benefit under Part B and/or Part C of the Plan is or was entitled to benefits pursuant to the Medicare Program and/or the Medicaid Program. Claimants will cooperate with the Lien Administrator by providing information necessary to make these determinations by the Lien Administration Document Deadline, which is on the first Business Day 45 days after the Effective Date.

7.5.2. **Satisfaction of Governmental Payer Obligations**

7.5.2.1. The Lien Administrator shall verify and resolve all liens, claims, and or reimbursement interests of all Governmental Payers identified pursuant to § 7.5.1.1 for medical items and/or services which are related to or arise from each Claimant's compensable injury.

7.5.2.2. **Medicare Program Specific Rules**: With respect to liens and/or reimbursement claims of the Medicare Program, each Claimant and such Claimant's counsel agree to comply with the Lien Administrator's protocols for resolution of the Medicare Program's MSP claims, which specify that every Claimant is bound to the terms of those resolution agreements with the agency.

7.6. **Other Governmental Payer Procedures**

42

### 7.6.1.   **Identification of Other Governmental Payers**

7.6.1.1. Claimants and Claimants' counsel will be solely responsible for self-identifying to the Lien Administrator through the use of a Lien Administrator Questionnaire or otherwise all known Other Governmental Payers from which they are entitled to benefits that may have made any payments on behalf of such Claimant in relation to Claimant's compensable injury. Claimants are required to complete and provide the Lien Administrator Questionnaire as part of their Claims Submission.

### 7.6.2.   **Satisfaction of Other Governmental Payers**

7.6.2.1. For all Other Governmental Payers Identified pursuant to § 7.6.1.1, the Lien Administrator shall work with the applicable Claimant of Claimant's Counsel to verify the resolution of all liens or reimbursement claims related to a Claimant's compensable injury. Any Other Governmental Payers which are not identified as required pursuant to § 7.6.1.1 (Undisclosed Healthcare Payers Liens) are the sole responsibility of Claimant and such Claimant's counsel to resolve and the Claimant shall defend indemnity and hold harmless (including attorneys' fees) the Plan, the Settlement Trustees, the Parties to the Settlement Agreement, the Administrator and Lien Administrator against any claims or liability relating to Undisclosed Healthcare Payers Liens.

### 7.7. **Cooperation**

7.7.1.   Claimants and Claimant's counsel agree to cooperate with procedures and protocols established by the Lien Administrator, including, but not limited to, providing the requested information and authorizations to the Lien Administrator in the timeframe specified for doing so, as a prerequisite to receiving compensation and/or settlement benefits.

7.8. **Distribution Holdbacks for Liens**

7.8.1.   If requested by the Settlement Trustee, the Lien Administrator will provide instructions to the Administrator regarding the amounts of Claimant's Settlement Fund Awards the Settlement Fund should hold back from distributions until such time as the Lien Administrator determines: (A) the amount to resolve any and all reimbursement interests of Governmental Payers, or (B) the "holdback" amount under which such Governmental Payers and Other Healthcare Payers claims shall be resolved ("Holdback Amount") to allow for the partial release of Settlement Fund award payments to Claimants.

7.9. **Scope of Lien Administrator Engagement**

7.9.1.   The Lien Administrator shall be responsible for identifying and resolving only the Government Payer Liens described in §7.3.2. Any other Liens not described in §7.3.2, including Private Third Party Payer/Provider liens, shall be the sole responsibility of the Claimant and/or Claimant's counsel to resolve and provide sufficient proof to the Settlement Trustee thereof.

7.10. **Language Does Not Expand/Create Rights**

7.10.1. Nothing in this Plan or in the Settlement Agreement or Final Order in the Williams Action shall be construed as expanding the legal rights of any claim or lien holder for reimbursement of any lien, assignment, or claim or any portion of same thereof asserted against a Claimant and a Claimant's counsel beyond those rights currently provided under applicable law.

## 8. Settlement Fund Claim Audits and Anti-Fraud Plan; Settlement Agreement § 3.10.3 Claim Reviews.

8.1. The Settlement Fund shall adopt and maintain policies, procedures and protocols for auditing the integrity of the claims process. The Settlement Fund's initial Anti-Fraud Plan is

annexed to this Plan and will be published on the Settlement Fund's website. The Anti-Fraud Plan will be implemented fairly, fully and without deviation.

8.2. The Settlement Trustee and/or the Administrator, after consultation with Class Counsel, may in their respective discretion request that the Court permit modification of, or additions to the Anti-Fraud Plan in order to protect the integrity of the Settlement Fund and the Claims Process. Class Counsel shall have a right to be heard by the Court regarding any modifications. Court approved modifications to the Anti-Fraud Plan will be published on the Settlement Fund's website.

8.3. The Settlement Trustee and/or the Administrator may suspend the processing of one or more individual or categories of Claims Submissions during audits or during its consideration of whether to implement or take action pursuant to the Settlement Fund's audit rights. If either the Settlement Trustee or Administrator determines that a claim submission is fraudulent, the Settlement Trustee and/or Administrator, as the case may be, shall report the finding to the District Judge and/or Magistrate Judge presiding over the *Williams* Action. Further, in the event the Settlement Trustee and/or Administrator determines that fraudulent claims, information or evidence has been provided to the Settlement Fund, the Settlement Trustee may, in addition to other sanctions or remedies available under law, and after giving the subject Claimant and claimant's attorney notice and opportunity to be heard, penalize the subject Claimant or the claimant attorney by any or all of the following actions: (A) disallow the Claim Submission or Claim Submissions submitted by subject Claimant or the claimant attorney; (B) impose the costs associated with the audit and any future audit or audits of such Claimant or claimant attorney's Claim submissions; (C) refuse to accept additional claims, information or evidence from the subject Claimant or claimant attorney; (D) recommend or seek the prosecution of the Claimant or

claimant's attorney for presenting a fraudulent declaration in violation of 18 U.S.C. §§ 1621, 1746; and/or (E) seek sanctions from the Court.

8.4. Defendants will have no role in nor any responsibility for the administration of the Plan's Fraud Prevention Provisions. However, pursuant to § 3.10.3 of the Settlement Agreement Defendants may during the claims review process ask the Administrator to review a specific approved claim or claims other than EIF claims based upon assertions of fraud in the claim submission or mistake in the adjudication of the claim. Such requests to the Administrator by Defendants must be in writing, with a copy to Class Counsel, and provide a good faith basis stating with particularity the circumstances constituting fraud or mistake. The number of review requests is limited to no more than ten percent (10%) of the total number approved claims by the Settlement Administrator during the Plan's entire administration, with any fraudulent claims found in audits conducted pursuant to a request or requests not counting towards the ten percent (10%) limit. A disagreement by Defendant or any insurer of a Defendant with an approved claim's qualifying injury level diagnosis that is correctly based upon a source allowed by the Plan shall not be grounds for requesting that a specific claim be reviewed. All requests by Defendants for a review under this Section shall be submitted to the Settlement Administrator no later than 60 days after the Claims Determination Deadline. Valid, substantiated review requests will be processed according to its type as follows:

8.4.1. **Alleged Mistake Reviews**: The Administrator shall review the claim of mistake in the subject adjudication including, if in its discretion such is necessary, requesting additional information about or auditing the claim to make a determination of claim eligibility. The Settlement Administrator will report its finding to the Settlement Trustee, Defendants, and Class Counsel. Where the Claimant or Claimant's Registered Law Firm was requested to provide

46

information in connection with the review and/or the claim adjudication is modified as a result of the review, the Claimant or Claimant's Registered Law firm will also be informed of the finding. The review determination of the Administrator under this section of the Plan is final and non-appealable as to Defendants. Any modification of adjudication of an approved claim will proceed in accordance with § 4.6.1 of this Plan.

8.4.2.   **Alleged Fraud Reviews**: The Administrator shall review claims of fraud in the claims submission, including, if in its discretion such is necessary, requesting additional information about, or auditing the claim, and report its finding to the Settlement Trustee. The Settlement Trustee upon review of the claim material and report of the Administrator, will make a determination of eligibility of the claim. The Settlement Trustee will report her finding to the Defendants and Class Counsel. Where the Claimant or Claimant's Registered Law Firm was requested to provide information in connection with the review and/or the claim adjudication is modified as a result of the review, the Claimant or Claimant's Registered Law firm will also be informed of the finding. This determination by the Settlement Trustee is final and non-appealable as to the Defendants.

8.4.2.1. The results of all audits under this section shall be reported to all Parties.

# 9. Settlement Fund Allocations, Adjudication Schedules, Payments and Distributions.

9.1. **Allocation of the Settlement Funds.**

9.1.1.   The Settlement Fund will be held and used for the benefit of Settlement Class Members and distributed to them under the provisions of this Plan. The Settlement Fund will make the allocations in the order they are listed below. The Settlement Trustee will make payments to eligible Claimants from the Settlement Fund and Sub-Funds in accordance with the provisions of this Plan.

9.1.2.   In executing the provisions of the Plan, references to "Settlement Fund" shall refer to the Settlement Fund net of the reserves for expense payments, the reserves for payment of Class Representative service awards, and the respective payments thereof, and shall include any net income earned on investment of the Settlement Fund.

9.2.  **Payment of Unfunded Administration Costs and Expenses and Class Representative Service Awards.**

9.2.1.   Prior to making any compensation payments to Settlement Class Members as provided in this Plan, the Settlement Trustee shall create a reserve allocation from the Settlement Fund sufficient to pay Class Representative service awards as approved by the Court and all known or forecasted unfunded liabilities and expenses of the Settlement Fund and its administration which were not paid or reserved for from the Settlement Cost Fund ("**Unfunded expense/liability**").

9.2.2.   The Settlement Trustee shall pay all unfunded liabilities and expenses of the Settlement Fund and Administration out of the Settlement Fund.

9.2.3.   Prior to the submission of the Settlement Fund's proposed distribution schedules to the Court for approval under § 9.4.2 of this Plan, the Settlement Trustee will make provision for payment of the Class Representative service awards granted by the Court in accordance with § 9.2.1. above.

9.3.  **Compensation Parts Sub-Funds and Sub-Fund Allocations.**

9.3.1.   **Part A Base Compensation Payments Allocation:** The sum of $6.25 million is allocated from the Settlement Fund for payment of Part A Payments Base Compensation Payments. This allocation shall be the "**Part A Sub-Fund**".

9.3.2. **Part B Supplemental Compensation Payments Allocation:** The sum of $59.75 million is allocated from the Settlement Fund for payment of Part B Payments Supplemental Compensation Payments. This allocation shall be the "**Part B Sub-Fund initial allocation**". In determining the amount of the Part B Sub-Fund available for Part B awards, the Settlement Fund will deduct from the Part B Sub-Fund initial allocation the aggregate amount of payments or reserves for Class Representative service awards as approved by the Court and unfunded administration expenses required in § 9.2.1 above.

9.3.3. **Part C Supplemental Compensation Payments Allocation:** The sum of $6.5 million is allocated from the Settlement Fund for the Plan's Extraordinary Injury Fund ("EIF"). This allocation shall be the "**Part C EIF Sub-Fund initial allocation**". In determining the amount of the Part C Sub-fund available for Part C awards, the Settlement Fund will add any spillover reallocations of the Part A Sub-fund under § 3.1.8 to the Part C Sub-fund.

9.4. **Schedules of Approved and Disapproved Claimants.**

9.4.1. **Master Claims Adjudication Report**.

9.4.1.1. Following the Effective Date and completion of claims processing and prior to the submission of any application to the Court under the Plan for approval of proposed claim distributions, the Settlement Administrator will prepare and submit to the Settlement Trustee a confidential report of payments to be made from the Settlement Fund and claims for payment from the Settlement Fund that were denied (the "Master Claims Adjudication Report"). The report will include, for each claim to be paid or denied upon Court Approval of the schedules of distributions: (a) the date the Claim Submission was received; (b) the name and address of the Claimant; (c) the name and address of counsel for the Claimant on the Claim, if any; (d) the name and date of birth of the Injured Person associated with the Claim Submission; (e) the

49

disease or diagnosis of the Injured Person on which the Claim Submission is based; (f) the name and address of all physicians or medical professionals whose reports or documentation were included in the Claim Submission; (g) the dates of the Injured Person's alleged exposure to Emtal Talc; and (h) the amount of the payment to be made to the Claimant or, if payment was denied, the reason for the denial.

9.4.1.2. The Master Claims Adjudication Report is an internal administrative report for the Settlement Trustee's administrative use, shall be deemed and maintained a Confidential document under the Court's Discovery Confidentiality Order, and shall not be publicly available or disclosed. The Settlement Trustee, however, will provide a copy of the report to Class Counsel and Defendants pursuant to Settlement Agreement § 3.10.4, which copies or contents Defendants may use or disclose only as provided in Settlement Agreement § 3.10.5.

9.4.2. **Distribution Schedules.**

9.4.2.1. Following the Effective Date and completion of claims processing and adjudication of all claims, the Administrator shall compile and provide to Settlement Trustee, with a copy to Class Counsel:

(A)   A schedule of approved Part A Claimants including the number of Part A shares awarded each;

(B)   A schedule of disallowed Part A Claimants;

(C)   A statistical summary of the number of Part A claims approved and disallowed and the amount of a Part A shares;

(D)   A schedule of approved Part B Claimants and claims including the Part B Claim Level awarded their claim;

(E)   A schedule of disallowed Part B claims;

(F)   A statistical summary of the number of Part B claims approved and disallowed and the dollar amount applicable to each Part B Level;

(G)   A schedule of approved Part C EIF Claimants including the amount of EIF compensation awarded each;

(H)   A schedule of disallowed Part C claims; and

(I)   A statistical summary of the number of Part C EIF claims approved and disallowed and the range and average of the EIF payments.

9.5.  **Court Distribution Authorization and Payment of Approved Claims.**

9.5.1.   **Court Distribution Authorization Process**

9.5.1.1. Following the Settlement Trustee's review and approval of the Administrator's claim schedules and statistical summaries she will publicly file copies of the statistical summaries identified in § 9.4.2.1 with the Court along with entering on the *Williams* Action's record one or more Settlement Trustee's Recommendations under Fed. R. Civ Pro. 53 relating to Court approval of each Plan Parts' respective distribution and disallowed claims schedules ("**Distribution Recommendations**"). The Distribution Recommendation(s) shall be filed under seal to the extent necessary to protect Class Members' and Claimants' personally identifiable information from disclosure. The Settlement Trustee in her discretion may make separate Distribution Recommendations and/or disbursements as to each Part in order to expedite payments as to Parts that are administratively ready to make distribution.

9.5.2.   **Payment of Approved Claims.**

9.5.2.1. **Payment of Approved Part A Claims:** Upon the Court's approval and adoption of the Settlement Trustee's Part A Distribution Recommendation, the Settlement Fund shall pay each approved Part A Claimant his or her Base Compensation Award(s) in accordance with the approved distribution schedule as soon as practicable. The payment may be aggregated and paid along with a Claimants' other Plan Part claim awards. No payments will be made prior

to the Settlement's Effective Date. Individual claims will not be paid until cleared for payment by the Lien Administrator.

9.5.2.2. **Payment of Approved Part B Claims:** Upon the Court's approval and adoption of the Settlement Trustee's Part B Distribution Recommendation, the Settlement Fund shall pay each approved Part B Claimant his or her Part B Part Supplemental Compensation share award in accordance with the approved distribution schedule as soon as practicable. In the Settlement Trustee's discretion, the Part B payments may be in multiple or partial disbursements and/or aggregated and paid along with a Claimants' other Plan Part claim awards. No payments will be made prior to the Settlement's Effective Date. Individual claims will not be paid until cleared for payment by the Lien Administrator.

9.5.2.3. **Payment of Approved Part C Claims.** Upon the Court's acceptance and adoption of the Settlement Trustee's Part C EIF awards Recommendation, the Settlement Fund shall pay each approved Part C Claimant his or her EIF award as soon as practicable. In the Settlement Trustee's discretion, the Part C payments may be in multiple or partial disbursements and/or aggregated and paid along with a Claimants' other Plan Part claim awards. No payments will be made prior to the Settlement's Effective Date. Individual claims will not be paid until cleared for payment by the Lien Administrator.

9.5.2.4. Where a Claimant is represented by a Registered Law Firm, the claims payment will remitted to Claimant's Registered Law Firm through either electronic funds transfer into the law firm's trust or escrow account or a check drawn to both Claimant and Claimant's Registered Law Firm as the Administrator is instructed by Claimant's Registered Law Firm.

9.6. **Residual Settlement Funds.**

9.6.1.   Should there be residual money left in the Settlement Fund following distributions or attempted distribution according to the Court approved Claimant lists, including any investment income or uncashed distribution remittances, which in the Trustee's sole, unfettered and complete discretion believes would be uneconomical or impracticable to further distribute to Class Members under Part B, the funds shall be  donated to an educational, research or medical institution or organization dedicated to the advancement of treating, reducing or eradicating asbestos or talc disease selected jointly by the Settlement Trustee and Class Counsel.

**10. Governance and operation of the Settlement Fund.**

10.1. The Settlement Fund together with the income earned thereon shall be held in trust by the Settlement Trustee for the use and benefit of the Settlement Class Members as provided in this Plan.

10.2. The Settlement Trustee is authorized and directed to distribute the Settlement Fund's assets in accordance with the provisions of the Settlement Agreement, this Plan and any CAP entered by the Court. In addition to the powers expressly stated in this Plan, the Settlement Agreement, the Preliminary Approval Order and The Final Approval Order, the Settlement Trustee shall have all powers, authorities and rights reasonably necessary or appropriate to carry out the provisions of this Plan.

10.3. The Settlement Trustee, Administrator and Lien Administrator shall administer the provisions of the Plan, as well as perform their respective duties, in favor of Settlement Class Members with the goal of achieving the fair, timely, equitable and efficient determination of claims submitted to the Settlement Fund. In adjudicating claims, all reasonable inferences of

evidence and/or any reasonable doubt will be resolved in favor of allowing a claim or increasing an injury category.

10.4. The Settlement Trustee may delegate to the Administrator and the Lien Administrator such powers and authorities permitted to the Settlement Trustee which the Settlement Trustee, in the Settlement Trustee's discretion, deems advisable or necessary in order to carry out the terms and purposes of the Plan.

10.5. Subject to the limitations set forth in this Plan, the Administrator is authorized, empowered and directed to perform all administrative and ministerial activities and functions of the Settlement Fund necessary to carry out the Plan, including the authority to make in the first instance all adjudications on a claimant's eligibility for and/or the amount of compensation to be awarded for an injury where determinations of eligibility and/or a claim level or monetary amount is required to determine a claim (referred to as "**Administrator Adjudications**").

10.6. Unless and until the Trustee directs otherwise, or the Plan assigns the function to another entity, all ministerial and administrative functions, including accounting, information technology and implementation of internal controls necessary to carry out the Plan, are delegated to the Administrator and shall be its responsibility to perform, implement or maintain.

10.7. The Settlement Trustee, the Administrator, or Class Counsel may not offer or provide Claimants, Claimants' attorneys or Class Members with any advice or guidance on tax, probate or benefit matters, including eligibility for future Medicare, Medicaid or state welfare programs, or workers compensation other than to advise Claimants that they should discuss and consider tax, probate and benefits matters in connection with the Claim and seek appropriate expert advice.

10.8.    The Settlement Trustee or Administrator may not extend the Claim Filing Deadline, the Documents Submission Deadline, Opt-out Deadline or any other deadlines set by the Court relating to the Settlement or POD, time being of the essence for these deadlines. The Settlement Trustee may for good cause modify the deadline for Lien Administration matters by Recommendation entered of Record and published on the Settlement Website.

10.9.    All Claim submission, documents, authorizations, communications, notices or evidence submitted to the Administrator are submitted in confidence and pursuant to settlement negotiations and are deemed confidential and privileged. They shall not be released to any party or entity without approval of the Court, except as provided in the Settlement Agreement. Nothing herein shall be construed to entitle any party or entity to discovery of any Claim Submission or group of claim submissions; nor shall any provision herein be cited in support of any request for discovery in any proceeding. Absent consent or authorization of a Claimant or its Registered Attorney or Law Firm, or direction from the Court, the Settlement Trustee and the Administrator will reasonably contest and resist any effort to subpoena records, documents or information in the Settlement Fund's possession, custody or control.

10.10. Class Counsel has the exclusive right to nominate to the Court for approval the Settlement Trustee, the Administrator, the Lien Administrator and any successor of these should one be necessary.

10.11.  Class Counsel may offer or provide advice to the Settlement Trustee and Administrator on general administration matters and processes and may take positions they deem proper before the Court on any administration matters where Court action is requested or involved.

10.12. Where necessary to address Plan distribution issues that arise and are not provided for in the Plan's terms, the Settlement Trustee, with the advice and consent of Class Counsel, may enter a recommendation to the Court for a Court Approved Procedure (CAP) addressing the issue.

10.13. **Consent and Consultation Procedures:** Where advice, consultation or consent of Class Counsel is required under the Plan or Settlement Agreement, the Settlement Trustee shall provide notice to Class Counsel of the specific action, policy or amendment that is proposed. The Trustee shall not take any action on the proposal unless and until the Settlement Trustee and Class Counsel have engaged in the advice, consultation or consent process. Any disagreements shall be brought to the Court's attention by either requesting a CAP, and the Court shall summarily determine the issue or refer the issue to a Magistrate Judge for determination.

10.14. All Settlement Class Members, Claimants Law Firms and their attorneys or any person making a claim against any part of the Settlement Fund or Cost Fund, shall be deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of, or relating to this Settlement Agreement or the Plan of Distribution.

## 11. Settlement Trustee's Adjudicative Powers.

11.1. **Claim and claim dispute and challenge adjudications:** The Settlement Trustee shall have the full and complete, and non-reviewable authority and power to determine any and all issues, disputes, contests, disagreements or challenges of Claimants relating to the Administrator determination, adjudication or any action relating to one or more claims, including but not limited to the determining any dispute or disagreement on the eligibility of Claimant to participate in the Plan, a Claimant's compensation entitlement (including an Administrator's EIF claim recommendation) or the Administrator's valuation or categorization of claim. The Parties

to the dispute proceeding shall be only the aggrieved Claimant and the Administrator. The Settlement Trustee determinations shall be final, conclusive and not appealable.

11.2. **Individual Claimant's Attorneys' Representation, Fees and Cost Issues**: The Settlement Trustee shall also have the power and authority as a Special Master to hear, determine and resolve any and all controversies or disputes concerning individual claimants' attorney's representation of claimants or claims that are connected to or arising out of claim payments from the Settlement Fund, including but not limited to the power to determine any dispute, disagreement or controversy as to entitlement to an attorneys fee, which attorney represents an individual claim or claimant where multiple attorneys claim to represent an particular claimant or claim; the amount of fee or the allocation of the among competing counsel representing a Claimant. The Parties to the proceeding shall be only the subject Claimant if aggrieved, and the attorney or attorneys involved in the controversy or dispute. The Special Master and the Court will have jurisdiction over such parties and the claim. The Settlement Trustee will enter a Recommendation award on matters submitted to it which unless the parties appeal to the District Court in accordance with the Rules of Court shall be final and conclusive.

11.3. The Settlement Trustee shall determine, set and inform the parties before it on the process and record for any dispute or contest proceedings. Hearings, if any, may be conducted in person, telephonically or through videoconferencing. The Trustee shall decide each dispute with a written award served upon the parties to the proceeding and, if not a party, the Administrator.

11.4. The Settlement Trustee in addition to its authority under § 6 of this Plan, may in its discretion establish and require payment of a reasonable filing fee should the number or nature of

disputes, challenges or controversies brought to it warrant imposition of such fees to protect the Settlement Fund.

11.5. Notwithstanding anything to the contrary in this Plan, the Settlement Trustee shall not have the authority nor any responsibility to hear, determine or adjudicate in any way the allocation among family members, heirs, personal representatives, or any other persons relating to Derivative Claim Shares paid in accordance with the Plan. That obligation and responsibility is solely the Primary Claimant's and Claimant's attorneys.

[Balance of Page Intentionally Blank]

# Appendix A

## to

## Williams Emtal Talc Settlement Fund Trust Plan of Distribution

## ANTI-FRAUD CLAIMS AUDIT PROGRAM

**Settlement Fund Claims Audit Program**

Pursuant to Section 8.1 of the Williams Emtal Talc Settlement Fund Trust Plan of Distribution (the **"Plan"**), the Settlement Trustee of the Williams Emtal Class Action Settlement Fund Trust (the **"Settlement Fund"**) authorizes and adopts the following "Settlement Fund Claim Audit Program" setting forth the procedures and protocols for auditing the integrity of the claims and/or claims procedures application process ") in order to ensure that claims to the Settlement Fund are legitimate and in compliance with all terms and conditions of the Plan, Plan PDPs and the Electronic Filer Agreement ("EFA").

**Purpose, General Description and timing of the Audit Program**

The purpose of the Audit Program is to ensure (1) that the Settlement Fund accepts and pays only legitimate claims presented by or on behalf of legitimate claimants that are eligible to share in the Settlement Fund under the Plan; and (2) that each claimant or law firm representing a claimant maintains during and through the claims administration process any documentation they possess that supports the claim submitted electronically or via hard copy claim form. The audit of claims will be performed prior to distribution to claimants.

**Audit Sample Selection**

The Settlement Administrator, Verus LLC ("Verus"), will randomly select from the population of reviewed and qualified claims filed with the Settlement Fund a sample of claims for audit. The sample size will be based achieving a confidence level of 95% and a maximum margin of error (ME) of 5%.

Each Claimant and Claimant's Law Firm, if any, of each claim selected for inclusion in the audit sample will be informed that their claim has been selected for audit under this PDP as part of the Settlement's Fund's claim integrity program. Law Firms will be afforded a twenty (20) day opportunity from the date of notice to satisfactorily provide any requested claim documentation for each claimant selected. If a claimant or Law Firm fails to comply with the audit request, the Settlement Trustee may at her discretion direct Verus to reject the claim, or if a Law Firm is involved and represents more than one claimant before the Settlement Fund, suspend payment of all claims filed by such non-responsive Law Firm, or take such other action as the Settlement Trustee deems appropriate, including, but not limited to, recommending imposition of any sanctions available under Rule 11 of the Federal Rules of Civil Procedure. Verus will complete the audit of a selected claim within thirty (30) days following submission by the claimant or Law Firm of all requested claim information to Verus.

**Documentation Requirements**

For each claim sampled, the claimant or Law Firm as the case may be will be required to provide any or all non-privileged documents of the types listed below, as may be specified by the Settlement Administrator, that the claimant or law firm possesses and relied upon in submitting the subject claim to the Settlement Fund:

2

1. Complaint or Amended Complaint showing Underlying Lawsuit filed and served against Engelhard/BASF (b) which lawsuit credibly asserted in good faith an asbestos injury caused by alleged exposure to Emtal Talc and (c) which lawsuit was dismissed as to Engelhard/BASF voluntarily or involuntarily

2. Answers to interrogatories

3. Transcripts of depositions of the claimant and/or co-workers

4. Verified work histories

5. Social Security records

6. All exposure affidavits executed by the claimant, co-workers, or family members related to the claim.

7. All B-reading interpretations and ILO forms (except for mesothelioma claims).

8. All chest x-ray/chest CT scan reports (except for mesothelioma claims).

9. All pulmonary function tests (including tracings and flow volume loops) for Severe Asbestosis and Asbestosis/Pleural Disease with reduced pulmonary function claims only.

10. All pathology or autopsy reports documenting asbestosis, asbestos-related pleural disease, malignant mesothelioma or a primary carcinoma of the lung, colon, esophagus, larynx, pharynx or stomach.

11. Admission, history and physical and discharge summaries of any hospitalizations for asbestos-related disease and/or any malignant disease which is recognized as compensable under the Plan.

12. All physical examination or pulmonary consultation reports.

13. All non-privileged interpretive reports provided by experts retained by counsel or the claimant to review tests, x-rays, or diagnostic reports in order to render an opinion.

The Settlement Fund will not require the production of original x-ray films and will not be re-reading such films or retesting claimants in the normal course of the claims audit. However, the Settlement Fund will reserve the right to request such original evidence and to expand the scope of the audit for targeted populations of claims in the event a pattern of submitting misleading or potentially fraudulent information is found. The standard of analysis for such a pattern shall not be based on the existence of questions of fact among the various testimonial sources, but rather on evidence of an actual intent to deceive or defraud the Settlement Fund. Both the Settlement Fund and the claimant/attorney shall be afforded all due process by the Settlement Trustee in resolving any merits issues on existence of such evidence.

**Review**

Verus will review all documentation provided by the claimant or law firms in a timely manner in order to answer the following questions relative to each claim:

1. Is there documentation in the Claimant's, Claimant's Law Firm's or Settlement Fund's database, including the archive documents referred to in the *Williams* Action Settlement Agreement, to support the legitimacy of the claim submitted to the Settlement Fund,

3

including proof that the Claimant is either the Injured Person in the Underlying Lawsuit on which class membership is based or the personal representative or heir of such Injured Person?

2.  Where applicable, is the medical documentation submitted consistent with established medical guidelines for establishing a diagnosis of an asbestos-related disease and supportive of the disease level submitted to the Settlement Fund?

**Issue Resolution**

In the event of any findings of concern, Verus will communicate the details of the findings to the Claimant and Claimant's Law Firm and request additional information, explanation or response. If the Claimant or Claimant's Law Firm fails to provide additional information, or successfully dispute the findings within a twenty (20) day period, Verus will inform the Settlement Trustee and obtain instruction on the appropriate course of action to be followed to resolve the issue.

Audit processing and status and any issues observed or encountered will be discussed with the Settlement Trustee on a regular basis throughout the course of the audit. If any patterns of particular concern are discovered, the scope of the audit may be expanded and/or focused through additional targeted sampling to determine the extent of the issue.

*The Trustee reserves the right to adopt any other reasonable, or generally accepted audit procedures that the Trustee deems appropriate and warranted as circumstances may dictate.*

**Management Representation Requirement**

Upon conclusion of the audit, each Law Firm will be required to sign a law firm management representation letter in the form attached hereto as Exhibit A.

**Reporting of Results**

Upon the conclusion of the audit, Verus will produce a confidential report to the Settlement Trustee summarizing the findings and recommending specific actions to be taken as a result of any systemic issues identified or adverse findings that require corrective and/or disciplinary action. Depending on the nature of the issue to be addressed, such action may involve revisions to claims materials, filing requirements or the electronic filing system, or possible sanctions in the event of findings of fraud or abuse. Verus will communicate any potentially adverse findings to the Law Firm and the Settlement Trustee, and the firm will be given an opportunity to resolve any concerns before any follow-up actions or imposition of sanctions are taken by the Settlement Trustee. The particular nature of any sanctions to be imposed will be discussed as the need arises.

Date

Via Regular Mail or E-mail (_____@verusllc.com)

Verus Claims Services, LLC
3967 Princeton Pike
Princeton, NJ 08540

Attention: _____

      **Re:**    **Verus Claims Audit, Claimant (Insert Claimant Name, Claim ID)**

To Verus Claims Services, LLC:

On behalf of the law firm of _____ the we are providing this management representation letter in connection with the claims audit performed by Verus Claims Services, LLC ("Verus") covering **Claim ID # (INSERT CLAIM ID NUMBER)** for **(INSERT CLAIMANT NAME)**.

The undersigned is competent and authorized to make the representations set forth herein.

We understand that the claims audit was to be conducted pursuant to the claims audit program adopted by the Settlement Fund pursuant to the Williams Emtal Talc Settlement Fund Trust Plan of Distribution. We further understand that the Williams Emtal Talc Settlement Fund (Settlement Fund) has conducted this audit through Verus to ensure (1) that the Settlement Fund accepts and pays only legitimate claims presented by or on behalf of legitimate claimants that are eligible to share in the Settlement Fund under the Plan; and (2) that each claimant or law firm representing a claimant maintains during and through the claims administration process any documentation they possess that grounds or supports the claim submitted electronically or via hard copy claim form.

We acknowledge our responsibility, as the filing law firm, to comply with the requirements of Rule 11(b) of the Federal Rules of Civil Procedure in presenting information to the Settlement Fund and to provide all non-privileged documentation required by the Settlement Fund's claims audit programs.

We confirm that all of the claimants to the Settlement Fund we are representing, including the Claimants selected for audit that we represent, are either the Injured person in the Underlying Lawsuit on which class membership is based or the personal representative or heir of such Injured Person. In making this representation we have either first-hand knowledge of the Claimant's identity and relationship to the Injured Person in the Underlying Lawsuit or have taken sufficient and appropriate investigatory measures to verify their identity and relationship of the Claimant to the Injured Person in the Underlying Lawsuit.

We confirm, to the best of our knowledge and belief, as of the date of this letter, that we have provided the Settlement Fund with complete and accurate copies of all of the non-privileged documents requested and required by the audit of the above-named claimant(s) pursuant to the terms of the claims audit program.

We acknowledge that Verus on behalf of and at the direction of the Settlement Fund may, to the extent permitted by the Settlement Fund's claims audit program, request additional non-privileged information or explanations.

Yours truly,

_____
(Signature)

_____
(Title)