Exhibit F

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**KIMBERLEE WILLIAMS, et al.**

Plaintiffs,

vs.

**BASF CATALYSTS LLC, et al.**

Defendants.

No. 2:11-cv-01754 (ES) (JAD)

CIVIL ACTION

## DECLARATION OF THE HONORABLE MARINA CORODEMUS, J.S.C. (RETIRED) IN SUPPORT OF APPOINTMENT AS SETTLEMENT TRUSTEE AND SPECIAL MASTER

MARINA CORODEMUS, being of majority age does pursuant to 28 USCS §1746 declare as follows:

1. I submit this declaration in support of the application by Class Counsel, Cohen Placitella & Roth, P.C., for my appointment as the Court's Special Master and Settlement Trustee responsible for administering a Settlement Fund, a Cost Fund and other matters specified under the Plan of Distribution ("POD") that is being presented for preliminary approval by the Court under and pursuant to the terms of the Settlement Agreement dated March 13, 2020 in the *Williams*

Action".[1] The information I set forth herein is based on my first-hand knowledge except for where I indicate that I am relying on a different source, in which case I believe the source cited to be credible and trustworthy and the information true.

2. I am familiar with *Williams* Action from my review of the Second Amended Complaint and the published opinions by the Third Circuit and Court in this matter.

3. I am also familiar with and understand the terms and provisions of the proposed *Williams* Action's Settlement Agreement and the POD distributing the Settlement's Settlement Fund if the proposed settlement is approved by the Court based upon: (a) my review of the Settlement Agreement, the POD, the proposed Settlement Fund and Cost Fund escrow agreements and the Notice Plan; and (b) my discussions of their respective terms of these which pertain to the duties and responsibilities of the Settlement Trustee/Special Master with (1) Class Counsel, (2) Verus LLC (who I understand assisted Class Counsel in the design of the POD and is being nominated to serve as the

---

[1] For consistency I incorporate the definitions of the proposed Settlement Agreement and POD by reference. Capitalized terms appearing herein therefore shall have the same meanings as defined in these documents.

Settlement Administrator), and (3) Edward Gentle, Esquire (who together with his law firm is being nominated for appointment as the Settlement Lien Administrator).

4. I believe, as I will elaborate on below, that I possess the credentials, experience, ability and reputation for fairness and practicality among asbestos and mass tort practitioners—and courts as well—to successfully carry out the duties of Settlement Trustee/ Settlement Master under the Settlement Agreement and POD, including:

(a) Participating in the creation and then overseeing the Qualified Settlement Funds holding the Settlement Fund and Cost Fund as provided for in the Settlement Agreement, POD, fund escrow agreements and Court Orders;

(b) Retaining and then overseeing the Administrator and Lien Administrator appointed by the Court;

(c) Overseeing execution of the settlement's Notice Plan;

3

(d) Executing the Plan of Distribution, including performing the adjudications under the Plan entrusted to the Special Master/Settlement Trustee and making disbursements;

(e) Retaining independent auditors of the Settlement and Cost Funds as required or needed and thereafter taking appropriate action as the audit results indicate;

(f) Conducting Special Master/Settlement Trustee's audits and administrative reviews required by the Settlement Agreement and POD;

(g) Compiling and submitting the Special Master/Settlement Trustee budgets claim schedules and reports required by the Settlement Agreement and POD, and

(h) Performing such other tasks or assignments as the Court may direct relating to the administration and oversite of the Settlement Agreement and POD.

## Qualifications

5. I am an attorney at law, duly licensed and admitted to practice in the States of New Jersey and New York. I am in good standing before both Bars.

6. I was admitted to the Bar of New Jersey in 1981 and to the New York Bar in 1989. I am also duly admitted to the Roll of Attorneys of this District Court.

7. Between 1981 and 1993 I worked at the law firm of Corodemus and Corodemus, Perth Amboy, New Jersey, where I was a partner. Among other matters I handled products and environmental litigation matters.

8. In 1993, I was appointed to the New Jersey Superior Court where I served in New Brunswick, Middlesex County. Prior to the conclusion of my initial term I was reappointed to the Superior Court with life tenure. I retired from the bench in 2004.

9. In 1997 the Superior Court's administration appointed me to develop and implement a litigation program for management of mass tort cases which became known as the *New Jersey Mass Tort Court*.

This specialized Court's mission over the years was expanded to encompass many other types of aggregate or multiple cases litigation beyond tort matters and as a result is now called the "New Jersey Multi-County Litigation Court".

10.     During the Mass Tort Court's initial ten years I was the sole "Mass Tort" state judge in New Jersey, in which I presided over a wide variety of mass tort and class action litigation cases. The cases included environmental, pharmaceutical, general products liability and asbestos matters (which were assigned to and part of the Mass Tort Court when I was on the bench). Several of the matters that came before me have been recognized as landmark "mass tort" cases, including:

- **The Ciba-Geigy Toms River Plant Superfund Site Litigation**. This complex matter involved a large number of individual Superior Court personal injury suits—many claiming that a child developed a cancer disease—as well as several class actions seeking medical monitoring and property damages. All of the cases stemmed from alleged toxic chemical waste releases from waste storage lagoons and deteriorating buried drums located on the Ciba-Geigy chemical plant site in Toms River, New

Jersey. The environmental condition of the plant and surrounding community led to the plant complex and surrounding residential neighborhoods being placed on the National Contingency Plan (a/k/a/ "Superfund Site") List. The Plaintiffs contended that the released hazardous chemicals included trichloroethylene, tetrachloroethylene, benzene and chloroform, and their release and migration into their neighborhood environments caused among other things, a documented (and widely publicized) cluster of malignant disease occurrences among neighboring residential communities' children; significant public and private nuisance interfering with their lives, and substantial property value diminishment.

- **New Jersey's Fen-Phen Diet Drug Litigation**. American Home Products (AHP) (later known as Wyeth Pharmaceuticals) in the 1990s was located and headquartered in New Jersey and had manufactured Pondimin and Redux, both drugs comprising the "Fen" component in the widely used "Fen-Phen" diet drug combination that was popular in the late 1990s. When the two drugs were recalled and taken off the market in 1997 due to being

7

associated with causing heart valve damage and a fatal pulmonary disease, thousands of personal injury suits were filed in New Jersey's Superior Court alone and the New Jersey Mass Tort Court had one of the largest dockets of diet drug personal injury cases in the United States. During the original phase of this vast, long-lived litigation, *i.e.,* up to the time of its national settlement, I managed the New Jersey cases which had a highly active State Plaintiffs Steering Committee (PSC) prosecuting the cases separate and apart from the federal Diet Drug MDL litigation's PSC. In the summer of 1999, I presided over a two month long medical monitoring – consumer fraud class action trial. The trial, which was eventually stayed towards the conclusion of the Class Plaintiffs' case in chief, is recognized for being highly instrumental in fostering agreement among the many, highly combative factions involved in the cases to meet and negotiate a $3.75 billion national settlement. The settlement was eventually executed in the related Diet Drug MDL, venued in the Eastern District of Pennsylvania, which was coordinated with the Superior Court's Diet Drug litigation. On my watch thousands of

individual New Jersey Superior Court cases were resolved both in and outside of the national settlement.

- **New Jersey's Tobacco Litigation**. New Jersey tobacco cases were in the vanguard of the nation's tobacco litigation, and during my tenure on the bench tobacco litigation in various contexts and forms were continually before me.

- **Asbestos Litigation**. New Jersey's "Asbestos Case Program" was one of the Mass Tort Court's parts throughout my tenure as presiding judge of the Mass Tort Court. Under this program each and every asbestos case filed in New Jersey State court was centralized and assigned to this court. To help me administer this program's massive docket I had two full time Special Masters along with a team of support staff assigned to me which I was responsible for managing in addition to my other judicial activities.

11. As I approached the end of my career on the bench, the New Jersey Mass Tort Court program's docket grew to such size that more than one judge was needed to handle the wide array and volume of cases constantly being assigned to the court. Before retiring I trained several judges to take on the duties of presiding over New Jersey's Mass

9

Tort Court. Upon my retirement the court's docket was then divided and spread over three New Jersey Superior Court vicinages: Bergen, Middlesex and Atlantic counties.

12. Among my major accomplishments in implementing and presiding over New Jersey's Mass Tort Court are the results of my work on Federal-State Court cooperation/coordination initiatives, including ones that I was involved in under the auspices of the Association of Chief Justices and the Federal Rules Committee. The judicial system coordination methods that I and my colleagues developed during these efforts have become routine measures employed today where both federal MDL and State Court Mass Tort programs are proceeding simultaneously. For my work in this area, in 2014 I received of the Middlesex County Bar's Robert T. Wilentz lifetime achievement award. In presenting me with the award New Jersey Supreme Court Associate Justice Barry Albin praised my work "as having set the standard for how the State conducts Mass Torts cases."

13. Both on and off the bench I have been active in many legal academic and educational activities. I have served as an adjunct law professor at Rutgers Law School. I have and still do frequently lecture

10

before professional society and organization meetings and conferences on mass tort litigation topics, including techniques and best practices for managing aggregate claims and mass tort settlement administration. I annually chair a national level seminar on mass torts in which many eminent state and federal jurists and mass tort practitioners make presentations and numerous mass torts practitioners (both plaintiffs and defense) from across the country attend. I also have authored several of the original chapters of the New Jersey Mass Tort Handbook published by the New Jersey Administrative Office of the Courts.

14. I am and have been active in a number of professional societies and organizations over my legal career. Currently I am member of the New Jersey State Bar Association. I am also an elected Member of the American Law Institute and have been appointed to its Aggregate Litigation Advisory Committee. Previously I served as an officer and section leader of the Sedona Conference, a premier national organization noted for its work on developing best practices and procedures for electronic discovery and mass tort and complex litigation tasks and procedures. I am a former Chair of the Middlesex County

Vicinage Ethics Committee. I was also president of the New Jersey Trial Lawyers Association (now known as the New Jersey Association of Justice).

15. I have been recognized by the New Jersey Bar Association as a *Women Trail Blazer* for my work and accomplishments as a lawyer and jurist.

16. On my retirement from the bench, I returned to legal practice, which I have limited to alternative dispute resolution engagements as a neutral and to serving various courts as a Special Master, Settlement Trustee, mediator or auditor.

17. I am a certified arbitrator for the American Association of Arbitrators (AAA) and the American Health Lawyers Association and am admitted into the International Institute for Conflict Resolution. I am also a past President of the Academy of Court Appointed Masters.

## Judicial Appointments

18. Since 2004 I have been appointed by courts or by parties to serve as a special master, settlement trustee or mediator in a number of federal and state court matters. In addition to numerous assignments

12

regarding relatively small-scale consumer fraud and aggregate litigation matters, I have substantial experience in handling large-scale master/trustee assignments such as involved here in this *Williams* Action 's proposed Settlement Agreement and POD. Some of the noteworthy of these include:

### A. Federal Court Appointments

- **MDL No. 1567** (*Vioxx Products Liab. Actions*). Appointed Special Master by Judge Fallon, U.S. District Court for Eastern District of Louisiana to handle settlement issues.

- **MDL No. 1297** (*DuPuy Orthopedic Devices Products Liab. Actions*). Appointed by Judge Katz, U.S. District Court for Northern District of Ohio, to handle settlement appeal issues.

- **MDL No. 1335** (*Propulsid Products Liab. Actions*). Appointed Special Master by Judge Fallon to handle settlement issues.

- **MDL No. 2235** (American Medical Systems TVM Products Liab. Actions) Appointed Special Master by Judge Goodwin U.S. District Court for Southern District of West Virginia to handle settlement issues relating to private settlement agreements.

- **MDL No. 2602** (Benicar (Olmesartan) Products Liab. Litig. Appointed Special Master on August 1, 2017 by Judge Kugler, U.S. District Court of New Jersey with responsibility for handling and adjudicating applications to dismiss claims for failure to comply with the terms of a settlement agreement and making recommendation to the Court on the resolution of other motions related to the settlement specified in the agreement. The subject national settlement agreement covered 2,000 MDL cases from across the country as well as another 100 cases pending in New Jersey Superior Court in Atlantic County.

- **MDL No. 2641** (*Bard IVC Products Liab. Actions*). Appointed Special Master by Judge Campbell, U.S. District Court for District of Arizona, to handle settlement issues.

- *Fitzgerald v. Gann Law Books, Inc*., CA:11-cv-04287. Appointed mediator by New Jersey District Court Judge Cox-Arleo in 2013 to mediate and resolve TCPA class action case. Matter successfully settled and concluded.

- **Ephedra bankruptcy.** Appointed Special Master by Judge Wolin, U.S. District Court of New Jersey.

- **GAF G1 §524(g) Bankruptcy Trust Trustee.** Appointed by Judge Gambardella, U.S. Bankruptcy Judge, District of New Jersey, to serve as one of several court appointed trustees with responsibility for ongoing asbestos claims resolution trust, I oversee the work of Verus LLC who is that 524(g) trust's third-party claims administrator.

### B. State Court Appointments

- **New Jersey Department of Environmental Protection v. Occidental,** *et al.* I was commissioned by presiding Judge Goldman to assist the parties' effort to voluntarily resolve a massive environmental injury case involving chemical pollution of the Passaic River by Diamond Shamrock Chemicals Co. and others. My efforts helped foster a $355.4 million settlement agreement which was approved by the court in late 2014.

- **Mirena IUD Products Liability Litig.** Bergen County MCL Case 297. I was appointed Settlement Master by Judge Harz to adjudicate claimant appeals in the case's private mass tort settlement program.

- *In Re Corey Lidle* **Litigation.** On October 11, 2006 a small private airplane owned by the famed former Yankee pitcher Cory Lidle crashed into upper floors of a skyscraper located along the East River, killing Mr. Lidle along with a flight instructor in the plane with him. Numerous other people in the building were also injured. Among the issues in the ensuing litigation was who was

actually piloting the plane at the time of the crash. I was jointly appointed by the courts in New York, New Jersey and California to mediate multiple, multi-million dollar lawsuits pending before the several courts following the crash. The cases all resolved with settlements.

- **Jersey City water pipes-asbestos litigation.** Appointed by New Jersey Superior Court to work with New Jersey Department of Environmental Protection and other parties to reach settlement of the matter. Case resolved in settlement.

- **Hurricane Sandy Claims.** Appointed by presiding New Jersey Superior Courts to mediate disputed insurance coverage and payment claims broght following the massive property damage within New Jersey caused by Superstorm Sandy.

## Rule 53 and 28 USC §455 Certifications

19.     Pursuant to Fed R. Civ. P. 53(a)(2), I certify that I do not have a relationship to the parties, attorneys, action, or court in this matter that would require disqualification of a judge under 28 U.S.C. § 455.

20.     Pursuant to 28 U.S.C. § 455(a), I certify that my impartiality cannot be and has not been reasonably questioned in this matter.

21.     Pursuant to 28 U.S.C. § 455(b)(1), I certify that I have no personal bias or prejudice concerning a party or counsel in this matter, nor do I have any personal knowledge of disputed evidentiary facts concerning these proceedings.

22. Pursuant to 28 U.S.C. § 455(b)(2), I certify that I have not served as a lawyer in the matter in controversy or the Underlying Lawsuits at issue in *Williams*. Nor has a lawyer with whom I previously practiced law served during such association as a lawyer concerning this matter or in the Underlying Lawsuits at issue in *Williams*. Neither I nor any such lawyer have been a material witness concerning this matter or in the Underlying Lawsuits at issue in *Williams*.

23. Pursuant to 28 U.S.C. § 455(b)(3), I certify that, although I served in governmental employment -- as a Judge of the Supreme Court of New Jersey -- I never participated as counsel, adviser or material witness concerning this proceeding nor have I expressed an opinion concerning the merits of this particular case.

24. Pursuant to 28 U.S.C. § 455(b)(4) and (5), I certify that I individually or as a fiduciary, do not have a financial interest in the subject matter in controversy or in a party to this proceeding, or any other interest that could be substantially affected by the outcome of this proceeding. I do not have a spouse or children.

25. Pursuant to 28 U.S.C. § 455(b) (5), I certify that I do not have a spouse and that neither I or any person within the third degree

16

of relationship to me (i) is a party to this proceeding, or an officer, director, or trustee of a party; (ii) is acting as a lawyer in this proceeding; (iii) is known by me to have an interest that could be substantially affected by the outcome of this proceeding; or (iv) is to my knowledge likely to be a material witness in this proceeding.

## Compensation

26.     The parties and I have tentatively agreed upon, and subject to the Court's approval, a fee and terms of compensation for my services as Settlement Master and Trustee, which will be paid from the Cost Fund to the extent there are available funds and otherwise from the Settlement Fund. The amount agreed upon is an annualized fee of $125,000 payable in equal monthly installments on the last day of each calendar month, with the fee prorated as to any period in which I cease or no longer are required to serve. I will also receive reimbursement for any travel, necessary out-of-pocket, secretarial or clerical costs and expenses I incur in performing my work, which will be invoiced without any mark-up and shall be paid on a monthly basis along with payment of my fee.

27. Where my time for services rendered in this matter under the POD or Order of Court are not to be paid from the Cost Fund but, rather, are to be paid or taxed against a claimant or other person, my hourly fee is $600 per hour.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 17, 2020

_____
Marina Corodemus