Exhibit H

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 2:11-cv-01754-JLL-JAD


KIMBERLEE WILLIAMS, et al.,
          Plaintiffs,

     vs.

BASF CATALYSTS, LLC, et al.,
          Defendants.


------------
Monday, January 15, 2018
------------


          Stenographic Transcript of Oral
Argument, taken at the law offices of Ballard Spahr,
1735 Market Street, 48th Floor, Philadelphia, PA,
before Robert J. Boccolini, Certified Court Reporter,
on the above date, commencing at 10:30 a.m., there
being present:


          BALLARD SPAHR, LLP
          Woodland Falls Corporate Park
          210 Lake Drive East, Suite 200
          Cherry Hill, NJ  08002
          BY:  ROBERTO RIVERA-SOTO, ESQ.
               SPECIAL MASTER
               WILLIAM P. REILEY, ESQ.


          - - - - - -

          TATE & TATE
          Certified Court Reporters
          The Ironstone Village
          520 Stokes Road, Suite C-1
          Medford, New Jersey  08055
          (856) 983-8484 - (800) 636-8283
          www.tate-tate.com

| USDC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Monday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Oral Argument | January 15, 2018 |

Page 2

```
 1    APPEARANCES CONTINUED:
 2

              COHEN, PLACITELLA & ROTH, PC
 3            Two Commerce Square, Suite 2900
              2001 Market Street
 4            Philadelphia, PA  19103
              BY:  CHRISTOPHER M. PLACITELLA, ESQ.
 5                 HARRY M. ROTH, ESQ.
                   MICHAEL COREN, ESQ.
 6            Attorneys for Plaintiffs
 7

              KIRKLAND & ELLIS, LLP
 8            655 Fifteenth Street, N.W.
              Washington, D.C.  20005-5793
 9            BY:  PETER A. FARRELL, ESQ.
                   EUGENE F. ASSAF, P.C.
10            Attorneys for Defendant BASF Catalysts, LLC
11

              CONNELL FOLEY, LLP
12            56 Livingston Avenue
              Roseland, NJ  07068
13            BY:  ROBERT E RYAN, ESQ.
              Attorneys for Cahill Defendants
14
15            LEVY KONIGSBERG, LLP
              800 Third Avenue, 11th Floor
16            New York, NY  10022
              BY:  BRENDAN E. LITTLE, ESQ.
17            Attorneys for Defendants Thomas W. Bevan and
              Bevan & Associates LPA, Inc.,
18            and James F. Early
19
     TELEPHONIC PARTICIPANTS:
20
              ROBINSON MILLER, LLC
21            One Newark Center, 19th Floor
              Newark, NJ  07102
22            BY:  JUSTIN T. QUINN, ESQ.
              Attorneys for Defendant BASF Catalysts, LLC
23
24            VINCENT MONTALTO, ESQ.
              Senior Litigation Counsel
25            BASF Catalysts, LLC
```

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 3

```
 1    TELEPHONIC PARTICIPANTS CONTINUED:

 2
          KIRKLAND & ELLIS, LLP
 3        655 Fifteenth Street, N.W.
          Washington, D.C.  20005-5793
 4        BY:  DANIEL A. BRESS, ESQ.
          Attorneys for Defendant BASF Catalysts, LLC
 5
 6        WILLIAMS & CONNOLLY, LP
          725 12th Street N.W.
 7        Washington, DC  20005
          BY:  CASSANDRA B. FIELDS, ESQ.
 8        Attorneys for Cahill Defendants
 9
          MARINO, TORTORELLA & BOYLE, PC
10        437 Southern Boulevard
          Chatham, NJ  07929
11        BY:  JOHN A. BOYLE, ESQ.
          Attorneys for Defendant Arthur A. Dornbusch
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 4

1              **SPECIAL MASTER:**  Good morning, everyone.

2    Happy Martin Luther King Day to everybody.

3              Could I get the appearances of counsel,

4    starting with the plaintiffs, please.

5              **MR. PLACITELLA:**  Christopher Placitella

6    on behalf of the plaintiffs.

7              **MR. COREN:**  Michael Coren on behalf of

8    the plaintiffs.

9              **MR. ROTH:**  Harry Roth on behalf of the

10   plaintiffs.

11             **MR. FARRELL:**  Peter Farrell on behalf of

12   defendant BASF.

13             **MR. ASSAF:**  Gene Assaf for BASF.

14             **MR. RYAN:**  Robert Ryan for the Cahill

15   defendants.

16             **MS. FIELDS:**  Cassandra Fields, Williams

17   & Connolly, on behalf of the Cahill defendants.

18             **MR. LITTLE:**  Brendan Little on behalf of

19   the Bevan firm.

20             **SPECIAL MASTER:**  Okay.  Miss Fields,

21   you got a little bit ahead of us, but that's okay.

22             Anyone else who's on the own phone?

23             **MR. BOYLE:**  John Boyle for defendant

24   Arthur Dornbusch.

25             **SPECIAL MASTER:**  Welcome, Mr. Boyle.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.              Monday
C.A. No. 2:11-cv-01754-JLL-JAD              Oral Argument                        January 15, 2018

Page 5

1              **MR. BOYLE:**  Thank you.

2              **MR. BRESS:**  Dan Bress for BASF, your

3    Honor.

4              **SPECIAL MASTER:**  You're the one I can

5    thank for the e-mail yesterday afternoon.

6              **MR. PLACITELLA:**  Yes, thank you.

7              **SPECIAL MASTER:**  Anyone else?

8              **MR. QUINN:**  Good morning, your Honor.

9    This is Justin Quinn for BASF.

10             **SPECIAL MASTER:**  Good morning, Mr.

11   Quinn.

12             Anyone else?

13             **MR. MONTALTO:**  Your Honor, Vince

14   Montalto, in-house counsel for BASF.

15             **SPECIAL MASTER:**  I'm sorry, can you give

16   me your name again, please?

17             **MR. MONTALTO:**  Sure.  It's Vince

18   Montalto.  I'm senior litigation counsel at BASF.

19             **SPECIAL MASTER:**  Anyone else?  Okay.

20   Going once.  Going twice.

21             All right.  We have what are two

22   motions.  And then we also have a little bit of a

23   controversy concerning the proposed submissions that

24   BASF and/or the Cahill Gordon defendants wish to make

25   in response to plaintiffs' motion concerning the

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD            Oral Argument            January 15, 2018

Page 6

1    crime fraud exception and/or Kozlov exceptions to the

2    attorney/client privilege.

3                I'm going to do this a little bit out of

4    order and I'm going to start with the BASF motion to

5    compel the production of what's now being called the

6    Bevan database.   And let me start with that.

7                On December 15, 2017, BASF filed a

8    motion to compel what is now called the Bevan

9    database that was docketed at ECF number 383.   There

10   are three things in specific that BASF is asking that

11   the database contain.

12               The first one is the identity of the

13   referring attorney.   Second is whether the Bevan

14   plaintiffs qualified for or received payment from any

15   asbestos settlement trust.   And number three, any

16   compensation that was received by the Bevan

17   plaintiffs

18               BASF asserts that in this motion the

19   plaintiffs in this case were interlopers when Bevan

20   had already agreed to produce the databases.

21               BASF wants the database entries produced

22   unredacted save for personal identifiers, social

23   numbers, addresses, the like.

24               On December the 20th, ECF number 390, a

25   scheduling order was entered in respect of the

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 7

1    opposition and replies.

2              On December 27, 2017, under ECF number

3    394, the plaintiffs filed an opposition saying that

4    they had only -- that the agreement in respect of the

5    Bevan database was only as to a process, not as to

6    the result, that much of what it was being requested

7    was barred by one of the October 26, 2017, orders,

8    and that the Ohio disclosure statute is inapplicable,

9    that the probate information is irrelevant, and that

10   the prior ruling that was made in respect of how many

11   files from the Bevan files were to be produced was

12   not based on burdens

13             The plaintiffs also assert that the BASF

14   defendants are not entitled to the identity of the

15   referring lawyers because it is a trade secret and

16   that the motion prematurely assumes the nature of the

17   putative class.

18             On December 27, under ECF number 395,

19   Bevan filed its opposition -- and when I say Bevan, I

20   mean both the firm and Mr. Bevan -- that incorporates

21   the objections that were filed by plaintiffs, that

22   ask that the production be defined by the class

23   certification motion that has not yet been filed, and

24   that the production be subject to a Rule 502(d)

25   order.

Page 8

1          According to Bevan, the agreement only

2     was to discuss the production, that the limitations

3     they're proposing are reasonable, that

4     confidentiality, proprietary business information,

5     information about parties who are not part of the

6     class should not be subject to disclosure, that the

7     entire database is an attorney work product, and that

8     it is a, quote, relational database containing

9     approximately 350 data fields, unquote.

10          I wish I knew what that meant, which is

11     why I wrote it down verbatim.

12          Bevan also says that the referral

13     sources are proprietary and not relevant and that, 2,

14     it was barred by the prior October 26, 2017, order

15     that is at ECF number 367.

16          On January the 3rd, 2018, under ECF 398,

17     BASF filed its reply.  And it basically says that

18     what's sauce for the goose is sauce for the gander.

19     If BASF was required to and did produce its database,

20     likewise the Bevan database should be presented.  It

21     basically repeats the arguments that are set forth in

22     its initial submission and says that an appropriate

23     protective order cures any trade secret claim.

24          Normally I would then move to the movant

25     and say:  What do you think?

Page 9

1          But I'm going to do things a little bit

2     differently today.

3          Mr. Little, you're here representing

4     Bevan.

5          **MR. LITTLE:**  Correct.

6          **SPECIAL MASTER:**  What do you want us to

7     do?

8          **MR. LITTLE:**  Well, first of all, I want

9     to correct I think what you recited about our

10    position.

11         I mean, first of all, we're taking the

12    position that the entire database, regardless of what

13    was offered in the meet and confer process, is work

14    product and should not be produced and that really

15    the burden is on BASF to show why they need it.  And

16    they haven't met that burden.   So --

17         **SPECIAL MASTER:**  Well, get past that,

18    because I'm going to find that they have.

19         So do how do we go about curing your

20    concerns?

21         **MR. LITTLE:**  Well, I mean, the proposal

22    that was made by the plaintiffs with the Bevan firm's

23    input I think gives BASF everything that they need.

24    And I think that the three categories of fields that

25    they have a dispute -- that there's a dispute about,

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                       Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                          January 15, 2018

Page 10

 1   and they're covered by prior rulings of the Court,

 2   nothing has changed to alter that ruling regarding

 3   settlement information.

 4              There's no relevance or need for the

 5   referring attorney.  I don't see how that relates

 6   either to the merits of the underlying case or the

 7   issues or elements in the claims made by plaintiffs

 8   in this case.

 9              And in regard to the last category of

10   information, I mean, the fact that some of those

11   trust documents may be public under a 2011 law, I

12   don't see how that puts that information in a

13   different category than the other settlement

14   information the Court's previously ruled on.

15              So in summary, I think that the proposal

16   that was made by the plaintiffs was reasonable.

17              However, we still take the position for

18   the record that the entire database is work product.

19              And I think it's important to look at

20   what this is, because we are all attorneys and we can

21   all appreciate that a database containing information

22   about that firm's clients that was largely derived

23   from information provided by those clients and

24   medical practitioners, to order that to be produced,

25   especially without the presence of those clients in

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                  Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                          January 15, 2018

Page 11

1    this lawsuit at this time is really an unprecedented

2    and scary thought.

3           I mean, every law firm maintains

4    databases.  It's how in modern litigation information

5    is organized and exchanged.  And it's no different

6    than an internal memorandum about a case.

7           This is information that was selected by

8    the attorneys at the Bevan firm or at the direction

9    of the Bevan firm because of its importance to all of

10   its asbestos cases.

11          So we're not unfortunately giving up any

12   ground on the position that the entire database is

13   work product and is protected and that it also

14   contains significant attorney/client privilege

15   information.

16          **SPECIAL MASTER:**  Now, tell me more about

17   this database.  I assume it's some form of

18   spreadsheet that has categories and has information

19   in respect of each category.  Is that correct?

20          **MR. LITTLE:**  I'm glad that you asked.

21   My understanding is that that is not correct.  When

22   I say that it is a relational database, it is a

23   proprietary software that is similar to Microsoft

24   Access in that it contains database -- several

25   different databases and is able to present that

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 12

1    information through an interface and produce reports

2    that are then essentially in spreadsheet form.

3              **SPECIAL MASTER:**  Okay.  But the net

4    result of what would be produced, if it's ordered to

5    be produced, would be some form of spreadsheet,

6    correct?

7              **MR. LITTLE:**  Correct.  That is an

8    output option.

9              And one other point about the database

10   that I want to emphasize, that it contains

11   information for current and former clients, including

12   clients that are not part of the class even as it's

13   broadly pled in the current operative complaint.

14             And so, you know, to be able to do what

15   BASF asks, which is essentially to provide a copy or

16   access to the database, is simply not possible.

17             **SPECIAL MASTER:**  I don't understand the

18   not possible part.

19             **MR. LITTLE:**  Well, because as far as I

20   know, there's no way to limit access to just the

21   clients that are part of this litigation.

22             **SPECIAL MASTER:**  Are you telling me that

23   someone can't produce a spreadsheet and then take out

24   from that spreadsheet the names of people who are not

25   part of this class and would never be part of this

Page 13

1   class, regardless of how it's defined?

2               **MR. LITTLE:**  That is possible.

3               **SPECIAL MASTER:**  Okay.

4               **MR. LITTLE:**  But in terms of providing a

5   copy -- and this may be a misunderstanding about what

6   was contained in the database when we were having our

7   meet and confer discussion, but the comparison is I

8   think the Cahill database, an entire copy was

9   provided or will be provided for the plaintiffs to

10   use or to peruse at their will.

11               In this case, providing a copy of the

12   software that allows the Bevan firm to access

13   information in the database is not possible.  But

14   producing some sort of spreadsheet report from the

15   database that contains a limited subset of that

16   information is a possibility.

17               **SPECIAL MASTER:**  Okay.  Mr. Placitella,

18   we're going backwards today.

19               **MR. PLACITELLA:**  Okay.  Well, I'll ask

20   for your patience because I heard your preliminary

21   thoughts and I feel compelled to make a record for

22   appeal.

23               **SPECIAL MASTER:**  Please.

24               **MR. PLACITELLA:**  In terms of our being

25   an interloper --

Page 14

1          **SPECIAL MASTER:**  I didn't -- those

2     weren't my words.

3          **MR. PLACITELLA:**  I understand.

4          **SPECIAL MASTER:**  I try to be as honest

5     in saying what the parties' positions are as -- I try

6     to tone them down a little bit, but other than

7     that...

8          **MR. PLACITELLA:**  In our position as

9     class counsel we have the duty and a right to protect

10    the rights of the putative class members.

11         **SPECIAL MASTER:**  Granted.  You don't

12    have to spend any more time on that point.

13         **MR. PLACITELLA:**  So a number of points

14    for the record.

15              There is no right to discovery

16    concerning absent class members and certainly not

17    putative class members.

18              Bevan's clients are not parties to this

19    case at this point.   They are putative class

20    members.   They're not even absent class members as

21    certification has not been granted.

22              Putative class members have not even

23    availed themselves at this point and don't even know

24    that the case exists.  The request is premature.

25              So let's say for example the case gets

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.              Monday
C.A. No. 2:11-cv-01754-JLL-JAD                 Oral Argument                          January 15, 2018

Page 15

1    certified and it's only certified on a C4 basis on an

2    issues class.   That individual damage information

3    would only become relevant at the time the people --

4    if they decide to avail themselves of that.

5              So really, until they even see what the

6    certification brief looks like, their request is

7    premature.

8              There's also no right to confidential

9    information of putative class members.   Filing of a

10   class does not waive the privilege of a putative

11   class member.

12             Suppose somebody decides to opt out.

13   They're a putative class member or an absent class

14   member.   There's no law that says that just by being

15   a potential member of a class that you're waiving

16   your right to privilege.

17             We did not agree with this Court's order

18   concerning the production of the 30 files, the Bevan

19   files.   And in order to move the case forward, it was

20   our belief and it's still our belief that Bevan is

21   not ethically permitted to turn over those files

22   without the clients' permission.   That is supported

23   by an ethics opinion that Rothenberg provided to the

24   Court.   I believe it's also supported by RPC 1.6(a).

25   Bevan, in order to --

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD            Oral Argument            January 15, 2018

Page 16

1            **SPECIAL MASTER:**  But bear with me for a

2      moment, Mr. Placitella, because I'm having a little

3      bit of a Groundhog Day moment.   Okay.

4            Haven't we been through this before?

5      And wasn't that decision made in October, which means

6      the time for review of it is long past.

7            **MR. PLACITELLA:**  I'm not asking for a

8      review of that decision.

9            **SPECIAL MASTER:**  Okay.

10            **MR. PLACITELLA:**  I'm saying I didn't

11      agree with it.

12            **SPECIAL MASTER:**  I understand you didn't

13      agree with it.  But you made your record then.  And

14      believe me, you want to make a record, you can have

15      all the time in the world to make your own record

16      today.  I will never infringe on that.   But that's

17      plowed over ground.

18            **MR. PLACITELLA:**  I understand.  But

19      here's my point.   The point is in order to move the

20      case forward, Mr. Bevan went and got permission and

21      decided for the 30 files that's how we'll handle it.

22            Now, if he's forced to turn over his

23      database, then he arguably has to go get permission

24      under the ethical rules from everybody in that

25      database pursuant to RPC 1.6(a), from his own ethics

Page 17

1   advice.  And I don't think that he's willing to do

2   that and I don't think he should be compelled to do

3   that.

4        **SPECIAL MASTER:**  Is that true even if a

5   Federal Rule of Evidence 502(d) order is entered?

6        **MR. PLACITELLA:**  I don't think the

7   502(d) order trumps RPC 1.6(a).

8        But there's also no right to law firm

9   work product where that law firm is not a party.

10   And the database for --

11        **SPECIAL MASTER:**  I'm sorry, I don't

12   understand.

13        **MR. PLACITELLA:**  Mr. Bevan --

14        **SPECIAL MASTER:**  Stop for a moment.

15        **MR. PLACITELLA:**  Sure.

16        **SPECIAL MASTER:**  Help me understand.  I

17   don't understand the basis upon which you say that a

18   law firm that is not a party cannot be compelled to

19   produce its work product.  What's the authority for

20   that proposition?

21        **MR. PLACITELLA:**  Well, we looked high

22   and low for a case that was like this where a

23   non-party law firm was compelled to turn over its

24   database of client information that was the product

25   of a lot of analysis and synthesis.

Page 18

1          In this case this database is

2 comprised --  I checked -- of 415 separate fields

3 that are the product of analysis and synthesis by the

4 people at the Bevan law firm.  I could not find a

5 single case anywhere where a court had ordered that

6 kind of discovery.

7          **SPECIAL MASTER:**  Well, you have me at a

8 disadvantage, because I don't know what's in this

9 database.  Okay.  All I know is what I've been told.

10          And I assumed, and maybe that's my

11 mistake, that it was going to be something that was

12 akin to the BASF database, which was simply a

13 spreadsheet.  Did I get that wrong or --

14          **MR. PLACITELLA:**  Probably on both

15 accounts.  BASF's was not simply a spreadsheet.

16          **SPECIAL MASTER:**  Well, that's what was

17 shown to me.

18          **MR. PLACITELLA:**  It was a relational

19 database.  And it was not BASF's database.  It was

20 Cahill's.

21          **SPECIAL MASTER:**  Well, whoever it was,

22 the simple fact of the matter is that I was shown a

23 spreadsheet and I assumed that I was being shown that

24 for a reason.

25          **MR. PLACITELLA:**  But there is a

Page 19

1    significant difference, I submit, between the

2    database that Cahill turned over, who is a party, and

3    Mr. Bevan's position representing putative class

4    members and the information that's in there.  That

5    is clear work product.

6              And I haven't found a case anywhere that

7    would require that, especially given the issues of

8    privilege at stake.

9              I also read that somehow we were getting

10   in the way of a deal that was made with Mr. Bevan.

11   And that's not --

12             **SPECIAL MASTER:**  Just ignore that.

13   Okay.  I ignored it.  You'd do well to ignore it too.

14             **MR. PLACITELLA:**  But on the base that

15   was something that Bevan and BASF was trying to work

16   out.

17             It's not a place where we start from.

18   BASF rejected that offer of compromise.  From our

19   perspective, they start from ground zero.  They

20   don't have a right to any of it, absent some kind of

21   fair compromise by Mr. Bevan.

22             BASF overreached and now they should be

23   stuck with overreaching.

24             Now, here's the important part.  The

25   discovery that's sought here by BASF and Cahill is

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 20

1   totally not necessary and redundant.   BASF already

2   has virtually all of the information except for

3   settlement information and referring counsel

4   information that's in the Bevan database.   BASF has

5   scanned and it's word searchable every single case

6   that they were involved with.   That includes for

7   every case.   And I wrote it down.   It's far more

8   complete than actually what Bevan has.

9               For each client they have all of the

10  pleadings, they have the letters between themselves

11  and Mr. Bevan, they have the clients' medical

12  records, they have expert reports that were submitted

13  by Bevan, they have depositions that were taken of

14  the Bevan clients, they have the motions that were

15  filed in the case.

16              And the database that they have for

17  purposes of what they've categorized and what they've

18  extracted, their database includes the following

19  information:   The disease that each plaintiff sued

20  for, not just Bevan but every plaintiff in the United

21  States, the date of the diagnosis, the docket number

22  and case name for each, every cause of action that

23  was asserted --

24              **SPECIAL MASTER:**   I don't mean to cut you

25  short, but what you're telling me is that they

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 21

1    already have the information and it's not necessary

2    to require that somebody else produce it because they

3    already have it?

4          **MR. PLACITELLA:**  That's exactly right.

5    But let me just finish for the record.

6          **SPECIAL MASTER:**  All right.  Please.

7          **MR. PLACITELLA:**  Okay.

8          **SPECIAL MASTER:**  I just want to make

9    sure I'm getting your point.

10          **MR. PLACITELLA:**  Absolutely correct.

11   They have the plaintiffs' employer, the claimed root

12   of exposure, every hospital where the plaintiff went,

13   a list of all the plaintiffs' doctors, the

14   plaintiffs' smoking history, the plaintiffs' family

15   members, the plaintiffs' military history.

16          They have a list of every other

17   defendant in the case.  They have a list of every

18   product sold by every other defendant in the case.

19   They have every doctor who was ever deposed in the

20   cases.  They have every brief that was filed in the

21   case, whether it was filed by them, the plaintiff, or

22   a co-defendant.  They have every plaintiff and every

23   witness that was deposed.  And they have a review

24   that was done by their own experts of the medical

25   information supplied by the plaintiff.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 22

1          So before we even think about making Mr.

2     Bevan have to go through what he needs to go through

3     to order in order to comply with his ethical

4     responsibilities and the burden that would take, I

5     submit that the Court should take a hard look at the

6     Cahill database and see what is in there, because

7     it's everything you could ever think of.  It is very,

8     very thorough.

9          **SPECIAL MASTER:**  But see, you have to

10    help me on that, because I may get the numbers wrong.

11          But I thought the last time we were here

12    and we talked about the Cahill Gordon database, what

13    I was told was that it was incomplete.  And we

14    weren't talking about the substantive entries.  We

15    were talking about actual number of participants in

16    it that, even though we were talking about -- and I

17    think the number I was given was between 15 and

18    18,000 potential plaintiffs, that the list only had

19    300 names on it or something like that.

20          Did I get that wrong, Mr. Roth?

21          **MR. ROTH:**  I think, your Honor, and Mr.

22    Farrell can correct me, we were talking about the --

23    there was a number of Rothenberg clients that I

24    believe was 1,800, and there are 300 who show up on

25    the Cahill database.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 23

1          **SPECIAL MASTER:**  Okay.  So the Cahill

2     database was greater than 300.  It was just the

3     Rothenberg?

4          **MR. PLACITELLA:**  There's a reason for

5     that.

6          **MR. ASSAF:**  It's reversed.  The Cahill

7     database has 300 and Rothenberg says it's 1,800.

8          **MR. PLACITELLA:**  There's a reason for

9     that.

10          **MR. ROTH:**  Let me finish.

11          **SPECIAL MASTER:**  So I just want to

12     understand and make sure we're talking apples to

13     apples, okay?

14          **MR. ROTH:**  We are.  And I think, your

15     Honor, there was also some discussion, because nobody

16     was really clear where the 1,800 number came from in

17     terms of the number of Rothenberg files.

18          So it was not clear when we left whether

19     the 1,800 was an accurate number or the 300 or so

20     that's in the Cahill database was an accurate number.

21          **SPECIAL MASTER:**  Okay.  But can somebody

22     tell me whether the Cahill Gordon database contains

23     information in respect of all of the potential

24     plaintiffs in this case?

25          **MR. PLACITELLA:**  Everybody except the

Page 24

1    non-filers.   And that's a whole issue about whether

2    they'll actually be in this case.

3                    SPECIAL MASTER:   Who's a non-filer?

4                    MR. PLACITELLA:   People who never filed.

5                    SPECIAL MASTER:   Everybody who never

6    filed a complaint?

7                    MR. PLACITELLA:   As I understand, it

8    there are close to 16,000 people.

9                    SPECIAL MASTER:   Who filed lawsuits of

10   some sort?

11                   MR. PLACITELLA:   Who are in the Cahill

12   database.

13                   SPECIAL MASTER:   Either filed a lawsuit

14   or submitted a claim of some sort?

15                   MR. PLACITELLA:   Correct.

16                   MR. FARRELL:   That's not correct.

17                   SPECIAL MASTER:   Okay.   Straighten me

18   out, please.

19                   MR. FARRELL:   There are not 16,000

20   entries in the database.   I don't have the exact

21   number, but it's well under that.   I think it's 11

22   or 12,000.

23                   SPECIAL MASTER:   Okay.

24                   MR. FARRELL:   And then for those 11 or

25   12,000, the actual amount of information contained

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD      Oral Argument      January 15, 2018

Page 25

1    for each individual person varies.

2           So the litany that Mr. Placitella was

3    reading off, you may find examples of each of those

4    categories, but I don't believe it would be

5    comprehensive for every individual.

6    **SPECIAL MASTER:**  Okay.  But I think the

7    point that Mr. Placitella is trying to make, and if I

8    do a terrible job at it, straighten me out, but I

9    think the point that he's trying to make is that you

10    already have sufficient information to make a

11    judgment in those areas that you need it for, and

12    that if after you've done that you still need more,

13    there is the ability to seek additional discovery

14    during the pendency of the class certification

15    motion.  Did I get --

16    **MR. PLACITELLA:**  That's a fair

17    characterization.

18    **SPECIAL MASTER:**  Okay.  I'm trying to

19    get to the end point here.

20    **MR. PLACITELLA:**  Yes.  But we're not

21    just talking about the Cahill database.  We're

22    talking about that they scanned every file and they

23    have all of that in word search.

24           I took the corporate rep.  That's what

25    he said.  Every case they had.

Page 26

1          So even when they went to Mrs. Holley's

2     dep and took her deposition, they had the entire

3     file.

4               **SPECIAL MASTER:**  I understand that.  But

5     I think what I'm being told is that they have

6     everything that they have, but everything that they

7     have may not be everything that there is.  That's

8     what I'm being told, right?

9               **MR. FARRELL:**  Yes, your Honor.

10              **SPECIAL MASTER:**  Mr. Farrell, did I get

11     that right?

12              **MR. FARRELL:**  The critical thing we do

13     not have is what was on the plaintiffs' side of the

14     equation in terms of deciding to dismiss or settle

15     cases.

16              All of the information that Mr.

17     Placitella just rattled off are things from the

18     defense side of the equation to the extent we have

19     them.

20              But your Honor is right, this is

21     Groundhog Day.  We addressed it at the October

22     hearing.

23              The key inquiry at this point is what

24     was in the plaintiffs' mind?  What was in the

25     plaintiffs' --

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 27

1          **MR. PLACITELLA:**  Well, none of that's in

2     the database.

3          **SPECIAL MASTER:**  We can't --

4          **MR. PLACITELLA:**  If that's what they say

5     they want, none of it's in the database.  It's not in

6     the database.  If this is about the database, it's

7     not in the database.

8          **SPECIAL MASTER:**  Okay.  Mr. Boccolini,

9     who I've known for a number of years, is a superb

10    court reporter, but he cannot take down two people at

11    once.

12          So I understand that people feel

13    strongly about this.  It is not a milquetoast issue.

14    I understand that.

15          But if for no reason other than my being

16    able to read a non-garbled transcript sometime later

17    on, please work with me on this.

18          Okay.  Mr. Placitella, Mr. Roth is

19    being very patient, having shaved his beard, waiting

20    to speak.

21          So I think your partner's not happy that

22    you're going to speak, but go right ahead.

23          **MR. ROTH:**  I just want to make sure that

24    your Honor has a picture of the universe of

25    information that we're talking about here.

Page 28

1          One, with respect to Mr. Farrell's point

2     about what's on our side of the equation and in the

3     heads of the plaintiffs, we're going to argue about

4     that later.  That's not the database issue.

5          Two, those things that Mr. Placitella is

6     describing --

7          **SPECIAL MASTER:**  Well, we're going to

8     argue about that in respect of the interrogatories.

9          **MR. ROTH:**  Yes, your Honor.

10          **SPECIAL MASTER:**  But those are your

11     interrogatories.  Right now we're talking about the

12     Bevan database --

13          **MR. ROTH:**  That's correct, your Honor.

14          **SPECIAL MASTER:**  -- and its production.

15          **MR. ROTH:**  And that's what I was

16     referring to.  The issue that Mr. Farrell raises

17     addresses the responses to interrogatories that we'll

18     address later.

19          **SPECIAL MASTER:**  I didn't understand Mr.

20     Farrell's response to be so limited.

21          **MR. FARRELL:**  It was not.

22          **SPECIAL MASTER:**  Okay.

23          **MR. ROTH:**  I guess the point being that

24     there is nothing with respect to the plaintiffs'

25     thought processes that is in the database, as counsel

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 29

 1    knows because they have seen all of the fields.

 2                    **SPECIAL MASTER:**  Okay.

 3            **MR. ROTH:**  And we have spoken -- Mr.

 4    Placitella spoke about the Cahill databases and then

 5    just mentioned the corporate rep deposition that was

 6    taken.

 7                    And I mentioned this at our last

 8    argument.  Mr. Steinmetz was deposed about data

 9    Kirkland & Ellis working with BASF collected after

10    they were engaged in this case where they have filed

11    and scanned all of the case files that were pending.

12                    So when we talk about databases, that is

13    included in this.   That's a word searchable

14    proprietary database that Kirkland has created that

15    provides them with all of the information that Mr.

16    Placitella was describing in his response.

17                    And with that, I yield the floor so that

18    Chris doesn't --

19                    **SPECIAL MASTER:**  Doesn't hit you, yes.

20            **MR. PLACITELLA:**  So the point being if

21    you're going to come forward and ask for this kind of

22    information and ask for people's work product and to

23    invade privilege issues, then you have to make some

24    showing that you don't have it already.

25                    They have not made that showing.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                        Monday
C.A. No. 2:11-cv-01754-JLL-JAD                 Oral Argument                          January 15, 2018

Page 30

1          **SPECIAL MASTER:**  Well, I think what you

2     really mean is you have to make some showing that

3     it's not otherwise available by less onerous means.

4          **MR. PLACITELLA:**  Exactly.  That's

5     exactly right.  Thank you.

6          **SPECIAL MASTER:**  That's my

7     English-to-English translation.

8          **MR. PLACITELLA:**  Yes.

9          **SPECIAL MASTER:**  Okay.

10          **MR. PLACITELLA:**  And then on the

11     specifics, for example, as it relates to -- let's

12     take the referral orders.

13          Again, I looked pretty hard and we

14     looked pretty hard.  I haven't seen any case where a

15     lawyer was compelled to turn over his or her business

16     sources.  That goes to the very heart of how law

17     firms survive.

18          **SPECIAL MASTER:**  Well, I understand

19     that.  But it is the allegation that there was this

20     organization that referred cases.  Calling it an

21     organization might be giving it a dignity it doesn't

22     have.  But there was this grouping of lawyers who

23     referred cases out to other people and that the

24     behavior of that group was called into question by

25     one or more courts, and certainly by the American Bar

Page 31

1    Association, and that having that information would

2    assist the defense in saying whether a plaintiff's

3    claim is somehow questionable or the like.

4              I mean, what do we do in the face of

5    that?

6              MR. PLACITELLA:  Well, Judge, there's no

7    evidence whatsoever in the record that Mr. Bevan did

8    anything wrong or was part of any --

9              SPECIAL MASTER:  Nobody's saying that he

10   did.

11             MR. PLACITELLA:  But this is a total

12   fishing expedition without any basis whatsoever.

13   Just because some lawyers in some other state at some

14   other point in time also had tire worker cases and

15   did things that, you know --

16             SPECIAL MASTER:  They shouldn't have.

17             MR. PLACITELLA:  -- we shouldn't have

18   done or they -- doesn't mean Mr. Bevan was involved.

19   There's no prima facie showing of that.  And it

20   certainly doesn't justify it.

21             Let's talk about that for a second.

22   The defendants in this case reviewed and received

23   already all of the underlying medical reports from

24   the Bevan cases.   They got them in the context of

25   those cases.

Page 32

1            In the context of the Bevan cases, they

2    had their own experts look at those reports.   In the

3    context of the Bevan cases, they never --

4            **SPECIAL MASTER:**  But that doesn't answer

5    the question about the referring attorney.

6            **MR. PLACITELLA:**  It does.  It does.

7            **SPECIAL MASTER:**  How so?

8            **MR. PLACITELLA:**  Because the bottom of

9    their allegation is that somehow the cases that were

10   referred to Bevan, if in fact they were referred, did

11   not have reasonable medical support and were the

12   product of doctors who weren't doing things properly

13   and as a result --

14           **SPECIAL MASTER:**  Well, the way I

15   understand what the defendants are saying is that

16   there was this group of lawyers who were referring

17   cases out.   They behaved in an improper way and that

18   may very well have tainted whatever referrals they

19   sent out.   So we, the defendants, are entitled to

20   trace the genesis of that action, because if it came

21   from what some courts and certainly the American Bar

22   Association have said was a tainted source, the case

23   itself may not be tainted.

24           But we ought to be able to test that,

25   no?

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD      Oral Argument      January 15, 2018

Page 33

1          **MR. PLACITELLA:** Why?

2          **SPECIAL MASTER:** Why not?

3          **MR. PLACITELLA:** I'll tell you why not.

4          **SPECIAL MASTER:** Why not?

5          **MR. PLACITELLA:** Because they --

6          **SPECIAL MASTER:** It's discovery.

7          **MR. PLACITELLA:** No. Judge, with all

8 due respect, those cases --

9          **SPECIAL MASTER:** It's not discovery?

10          **MR. PLACITELLA:** There was discovery in

11 the underlying case. Those medicals were given to

12 Engelhard and BASF. They were reviewed by their

13 experts --

14          **SPECIAL MASTER:** Right.

15          **MR. PLACITELLA:** -- in those cases.

16 They were not challenged in those cases.

17          In fact, Engelhard and BASF settled

18 cases after they reviewed those medicals for cheap.

19 They did not challenge those medicals. They did not

20 challenge those medical reports in the underlying

21 case or they got people to dismiss their cases.

22          By the Third Circuit, that ship has

23 sailed. They have lost their right to challenge the

24 medical causation in that underlying case.

25          They reviewed those medicals, your

Page 34

1    Honor.   They had their experts review those

2    medicals.   And they were not challenged.   If they

3    had a problem--

4              **SPECIAL MASTER:**   Well, work with me on

5    this.   Let us assume that the facts are the way you

6    just described them.   BASF, either in its current

7    iteration or when it was Engelhard, received the

8    medical reports.   They looked at them at face value

9    and made a decision in respect of settlement or

10   non-settlement based upon those reports.

11              And it later turns out that those

12   reporters were not credible.

13              And I'm not saying anything that should

14   come as a surprise to anybody here, because my

15   information in respect of that is anecdotal.

16              I remember when within the legal

17   profession it became painfully known that there was

18   something not right going on in respect of the

19   asbestos cases that were being sent through a mill to

20   doctors who really were not doing their job and it

21   literally came on the hills -- on the heels, I'm

22   sorry, of a different large case, the fen-phen case,

23   where the same allegations were being made.   That's

24   why I remember it from 20 plus years ago.

25              And so whether BASF accepted those

Page 35

1    reports at face value back then, now they have

2    knowledge that says:  Well, maybe we ought not to

3    have and maybe we should explore that a little bit

4    further.

5              Are you saying that that's not fair game

6    here?

7              MR. PLACITELLA:  It's not fair game.

8    They had those cases dismissed fraudulently.  This

9    case is about what they did.  They made a decision to

10   do what they did independent of whatever those

11   medical reports said.  They did what they did

12   independent of what those medical reports said.

13             There is no showing in this case that

14   Mr. Bevan did anything wrong.  There were --

15             SPECIAL MASTER:  I don't think there's

16   been any allegation that Mr. Bevan did anything

17   wrong.

18             MR. ASSAF:  Correct.

19             SPECIAL MASTER:  There certainly hasn't

20   been any that I have seen.  And certainly nothing

21   that occurs here is to be viewed as any kind of

22   aspersion on Mr. Bevan and his firm.   Okay.

23             So you can put that -- throw that whole

24   notion in the trash heap, because that's where it

25   belongs as far as I'm concerned.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 36

1          But the difficulty that I'm having is

2     that you properly so are arguing your clients'

3     position as a fact accomplished.  That's exactly what

4     you should be arguing.

5          My problem is I can't accept that

6     ultimate conclusion, because all we have right now

7     are a complaint and an answer.  So the facts have

8     not been established.

9          I have to say to myself:  I understand

10    what the plaintiffs are alleging.  And I think you've

11    figured out by now that I do understand what the

12    plaintiffs are alleging.

13          But by the same token, the defendants

14    have their defense.  And nothing has been proven as

15    of yet.

16          And the whole purpose of the exercise in

17    which we find ourselves is to get facts to support

18    either side when the issues are finally teed up and

19    ready for disposition.

20          So that's the perspective that I'm

21    looking it from.  I'm looking at it from the fact

22    that everybody who is in this room, including the

23    folks who are on the phone, are entitled to get a

24    fair shot at discovering facts that may help their

25    ultimate position when it's being advanced.   That's

Page 37

1     all.

2                    **MR. PLACITELLA:**  I understand that.  So

3     let's take it from the proposition.  They have the

4     medical report to for Mrs. Holley.  It's a Dr. X.

5     They have no evidence that Dr. X did anything wrong.

6     They've had that for decades.

7                    What difference does it make where Mrs.

8     Holley's case came from?  You know, there's a danger

9     here.

10                   **SPECIAL MASTER:**  Well, let me ask you

11    this.  Where that case came from, how is that

12    protectable information?

13                   **MR. PLACITELLA:**  It's a business

14    interest.  It's a trade secret.

15                   **SPECIAL MASTER:**  It's not a trade

16    secret.  Okay.  I know you argued that.  I know it

17    was advanced.  I think I know what a trade secret

18    is.  That's not a trade secret.  Okay.

19                   So the fact that John Doe refers a case

20    to me is not a trade secret.  The fact that John Doe

21    referred to case to me is not a trade secret.

22                   **MR. PLACITELLA:**  Your Honor, it's

23    business proprietary information.

24                   **SPECIAL MASTER:**  I understand.  How is

25    it confidential?

Page 38

1          **MR. PLACITELLA:**  It's confidential, it

2      has the potential to hurt people.

3          **SPECIAL MASTER:**  How?

4          **MR. PLACITELLA:**  Let's say you're a

5      defense lawyer and you refer a case to Roth and you

6      make that referral --

7          **SPECIAL MASTER:**  Not after he shaved his

8      beard.

9          **MR. PLACITELLA:**  Maybe you don't want

10     the world and all your other potential business

11     sources to know that you have a relationship with

12     Roth.   I mean, that's up to -- you know, that's

13     between you and Roth.

14         **SPECIAL MASTER:**  But what I want or

15     don't want is irrelevant to the question of whether

16     the law protects it.

17             Mr. Roth, you're going come to your own

18     defense here.  Tell me.

19         **MR. ROTH:**  Well, first of all, whoever's

20     referring a case to me is making a wise decision.

21             But first of all, viewed in the context

22     of discovery of a non-party lawyer, the defendants

23     have argued that the source of the case may

24     demonstrate that a particular case is tainted.

25         **SPECIAL MASTER:**  That's what I

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD      Oral Argument      January 15, 2018

Page 39

1  understand them to be saying.

2  **MR. ROTH:**  So that's their argument.

3  And yet, you know, one, we are not at the issue of

4  whether a case is tainted, your Honor.   We don't yet

5  know what the class is going to look like and whether

6  that matters.

7  And second, Engelhard/BASF has had these

8  medical records not just reviewed at face value, your

9  Honor, these were vetted by experts.   And that in

10  and of itself demonstrates -- you know, they didn't

11  make an argument then that these are tainted cases.

12  And I think that that's the point, that

13  in terms of the --  if the idea is that the referral

14  source equals proof that the case is tainted, well,

15  the actual proof of whether the case is tainted is

16  going to come from the medical records that BASF and

17  Engelhard have.

18  **SPECIAL MASTER:**  Well, that's not

19  necessarily so.  As you well know, for example, in

20  the fen-phen cases, they settled thousands of those

21  cases, until somebody finally said:  Wait a minute,

22  look at these three or four doctors who are looking

23  at thousands of patients and look at their reports.

24  All they're doing is changing the name.

25  But you can't do that in the first one

Page 40

1    or the second one or the third one.  You do that

2    when you get to the five-thousandth and go:  Okay,

3    that's now a pattern.

4              So I understand your concern.  The

5    problem is it doesn't arise from the first instance.

6    It arises after you see a pattern of behavior that

7    allows to you then say:  Okay, there may be a problem

8    in respect of where this is coming from.

9          MR. ROTH:  With respect to that, your

10   Honor, one, it is fair to argue after the Williams

11   Court -- Williams opinion in the Third Circuit and

12   Judge Litner's opinion, we're not relitigating these

13   cases.

14          SPECIAL MASTER:  Well, Judge Litner is

15   not in my chain.  You mean Judge Linares?

16          MR. ROTH:  Yes.  Thank you, your Honor.

17          SPECIAL MASTER:  Okay.

18          MR. ROTH:  But we're not relitigating

19   the cases.  And the opportunity to have done so --

20          SPECIAL MASTER:  I will tell you as an

21   aside, Judge Litner once told me -- he has two small,

22   very nice dogs.  And he once told me that he would

23   write his opinions at home with one of the dogs on

24   his lap and that's what helped him write opinions.

25   And my response to him was he needed more dogs.

Page 41

1          So go ahead.   You brought Judge Litner

2     up, okay.

3          **MR. ROTH:**  There's a lot about that that

4     I have to unpack, your Honor.

5               In any event, we're not relitigating

6     these cases.   And this really does begin a long line

7     of discovery on what if that we're not at yet and

8     that frankly much of the record --

9          **SPECIAL MASTER:**  But we are going to be

10    there shortly, because under my earlier order, the

11    class cert motion was supposed to be filed today.

12              Mr. Placitella requested an additional

13    two weeks.   And over Mr. Assaf's very strong

14    objection:  I said fine, take the time.  I'd rather

15    have it done right than done quickly.

16              So two weeks from today we will all know

17    what the class is supposed to look like, at least

18    according to plaintiffs' counsel, and whether we're

19    going to get a request for full class certification

20    or an issues class only or even under that a limited

21    issues class only.   That's in your ballpark.  And we

22    will know that when you're ready to tell us, no later

23    than two weeks from today.

24              But be that as it may, that's when we're

25    going to get to it.

Page 42

1          Now, I will tell you I'm fairly

2     comfortable that there is enough firepower in this

3     case and enough room between the filing of the motion

4     and whether we're ultimately going to have to deal

5     with the motion to allow for appropriate discovery to

6     occur and people to get done what needs to be done.

7          And I hope that everyone here is fairly

8     confident that you get something to me, you get a

9     response fairly quickly, including those who sent me

10    e-mails during the football games yesterday,

11    violating a holy day of obligation.

12         Be that as it may, we'll get to that

13    later.  You're going to get a quick response.  So

14    nothing's going to sit.

15         And I said before and I will say it

16    again.  My charter is clear.  I got to get this case

17    trial ready as quickly as I can.

18         So I will remind everybody here that

19    within two months this case will be seven years old.

20    Okay.  That in my religion is the age of reason.

21    So at seven years old, it's beginning to grow a

22    little bit of whiskers.  And we can't have that.

23         Mr. Placitella, I'm sorry.

24         **MR. PLACITELLA:**  I appreciate that.

25    With respect to the Court, some of those whiskers are

Page 43

1   the product of it taking a long time through the

2   appellate process and back.  It wasn't --

3           **SPECIAL MASTER:**  I didn't blame anybody.

4   I didn't blame anybody.  And I will say right now

5   there's enough blame to go around for everybody.

6           But what I will say is that since I was

7   asked to take this over, no moss has grown on any

8   stone here.

9           **MR. PLACITELLA:**  Right.  So let me

10   address your issue directly.

11           In fen-phen, which I'm intimately

12   familiar with, you had a bad circumstance, one lawyer

13   out of many great lawyers.  And that challenge was

14   made in the underlying case, okay, not in a

15   fraudulent concealment case later.

16           If BASF thought there was a problem --

17           **SPECIAL MASTER:**  Actually, I'm not sure

18   that that is correct.

19           **MR. PLACITELLA:**  It is correct.

20           **MR. COHEN:**  It is correct.

21           **SPECIAL MASTER:**  Well, I will tell you

22   that I was in private practice at the time and one of

23   my partners was representing one of the physicians

24   who was separately sued.  And the allegation was

25   made in that separate case, not in the underlying

Page 44

1  fen-phen litigation.

2           **MR. PLACITELLA:**  But the --  I don't

3  want to go there.  I was involved in it.  I was class

4  counsel.  I know what happened, okay, in the fen-phen

5  cases.

6           **SPECIAL MASTER:**  Okay.

7           **MR. PLACITELLA:**  That was in the

8  underlying case.

9           Here, BASF had the right and probably

10  still has the right if they believe so to go back to

11  court in Ohio and challenge any settlement that they

12  believe that they made under false information.  The

13  Rooker-Feldman doctrine --

14           **SPECIAL MASTER:**  25 years after the

15  fact?

16           **MR. PLACITELLA:**  Absolutely.  We were

17  told that's the only thing we could do.  Okay.

18  Under Rooker-Feldman, if we wanted to upset the

19  judgment of the earlier court, our only remedy was to

20  go back to that state or federal court who had the

21  original case.  That's what Rooker-Feldman says.

22  That's what the Third Circuit said.

23           So if they had a problem because they

24  thought they were somehow defrauded in paying

25  whatever measly amount they paid, they had a remedy.

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 45

1    That remedy has been available to them since the

2    early 90s.  And certainly they've known for decades

3    of the issue about the National Tire Workers Project

4    that they throw into every brief.

5                    They chose to do nothing.   They can't

6    now try to use that as a defense in a case that has

7    been extinguished.  And that's exactly what they're

8    trying to do.   That's exactly what the Third Circuit

9    said none of us can do.  We cannot relitigate the

10   merits.

11                   So if they believe that somehow the

12   doctors' reports do not support the settlement that

13   they -- they can go back to that court and ask that

14   court to reopen that case.

15                   They can't come here and ask to litigate

16   that here.  That's not what the law says, with all

17   due respect.   And that's clearly beyond the dictates

18   of the Third Circuit.

19                   Going to the other arguments, the issue

20   of settlements, this Court has already ordered that

21   BASF is not entitled to the discovery of any other

22   settlement information but for the 30 that have been

23   provided.

24                   And now what BASF wants to do is say:

25   Okay.  Well, that order didn't mean anything.  Now we

Page 46

1    want the settlement information for everybody else,

2    whether or not those settlements were confidential.

3              And now the problem here is as follows.

4    Some of them may not have been confidential.   I

5    don't know.  Many of them I know from pattern and

6    practice were confidential.   That means that under

7    the Rules of Professional Responsibility, Mr. Bevan

8    has obligations concerning the disclosure of

9    confidential settlement information that frankly has

10   no place here.  I understand their argument.   But it

11   has no place here.

12             The fact that these people were

13   defrauded has --  what they got from Owens Corning

14   Fiberglass in a settlement under seal or under

15   confidentiality should not be subject to discovery

16   here.

17             **SPECIAL MASTER:**  Okay.   What they got.

18   But how about the fact of the settlement?

19             **MR. PLACITELLA:**  The fact --

20             **SPECIAL MASTER:**  Not the amount.   The

21   fact of the settlement.

22             **MR. PLACITELLA:**  It is known -- it is

23   not -- they know who settled.   And that's not a

24   confidential -- I mean, the fact that a settlement

25   took place is not confidential.

Page 47

1              **SPECIAL MASTER:**  Okay.   And so --

2              **MR. PLACITELLA:**  The fact that the

3    settlement took place is not confidential.

4              **SPECIAL MASTER:**  Okay.  So let me take

5    that a little bit further along the way.   The fact

6    that somebody qualified for or received payment,

7    without disclosing the amount, from an asbestos

8    settlement trust, is that confidential?

9              **MR. PLACITELLA:**  It is not confidential.

10             **SPECIAL MASTER:**  Okay.   So including

11   that on the database would not make anybody crazy,

12   except for Mr. Roth who has his hand up.

13             **MR. ROTH:**  The only question I have,

14   your Honor, and I don't know what the answer is, but

15   I believe it is not simply a yes/no, there's not a

16   yes/no field, did you qualify or didn't you.   It may

17   just have a number.

18             **SPECIAL MASTER:**  Well, I'm sure that's

19   easily remediable.

20             **MR. ASSAF:**  If it's confidential.

21             **MR. PLACITELLA:**  Well, how --  there are

22   some trusts that say it's confidential.  There are

23   others that don't speak to it directly.  This is a

24   sideshow, frankly, that is totally unnecessary.

25             **SPECIAL MASTER:**  Well --

Page 48

1        **MR. PLACITELLA:** What does this have to

2  do with the plaintiffs' allegations in this case?

3  Nothing.   Nothing.

4        **SPECIAL MASTER:** I don't agree with you

5  on that.  But you have a position to advance.  And I

6  appreciate not only the cogency but also the passion

7  with which you present it.

8        You keep making Mr. Assaf write notes to

9  poor Mr. Farrell, who will according to those notes

10  have to speak for two and a half hours, which he's

11  not going to get.

12        **MR. FARRELL:** It might be three, your

13  Honor.

14        **SPECIAL MASTER:** Well, okay.  If you're

15  not getting two and a half, you're not getting three.

16        Mr. Little, you've been so patient over

17  here and you have everybody picking at the carcass of

18  your client.  So anything you want to add?

19        **MR. LITTLE:** Thank you, your Honor.

20  Yes, I just want to make a point about your summary

21  of the referral source and why it may be important.

22        You mentioned several times the doctors.

23  The doctors, the experts are the evidence.   And if

24  there is some part of the underlying case that is to

25  be impugned, it's the experts and not the referral

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Monday
C.A. No. 2:11-cv-01754-JLL-JAD    Oral Argument    January 15, 2018

Page 49

1    source.

2    **SPECIAL MASTER:** But correct me if I'm

3    wrong, I understood that the doctors sort of came

4    from the referral source, that they were

5    hand-in-hand. Were they not?

6    **MR. ASSAF:** Correct.

7    **MR. LITTLE:** In some cases they may have

8    been. In some cases they may not have been. But

9    what -- using the referral source --

10    **SPECIAL MASTER:** But to use Mr.

11    Placitella's term, isn't the custom and practice that

12    when those cases were sent from the referral source

13    to, for example, your client, Mr. Bevan, it came as a

14    completed package, it would have the plaintiff, it

15    would have the medical records, it would have the

16    experts' reports, so that your client would then only

17    have to file a complaint and move on from there.

18    **MR. LITTLE:** Not necessarily. That's

19    not my understanding.

20    **SPECIAL MASTER:** Not necessarily, okay.

21    **MR. LITTLE:** And even if that were the

22    case, Mr. Bevan could engage his own experts.

23    **SPECIAL MASTER:** Well, he could have.

24    But did he?

25    **MR. PLACITELLA:** Yes.

Page 50

1              **MR. LITTLE:**  And --

2              **SPECIAL MASTER:**  Mr. Placitella?

3              **MR. PLACITELLA:**  As I understood it,

4    every case got an independent expert that was

5    ultimately accepted and audited by numerous asbestos

6    trusts.

7              **SPECIAL MASTER:**  Okay.  So when you say

8    every case, you mean every Bevan case?

9              **MR. PLACITELLA:**  Every Bevan case.

10             **SPECIAL MASTER:**  Is that true

11   across-the-board?

12             **MR. PLACITELLA:**  I have no idea.

13             **SPECIAL MASTER:**  At least the --

14             **MR. PLACITELLA:**  We're talking about

15   Bevan's cases, right.

16             **SPECIAL MASTER:**  Okay.

17             **MR. ASSAF:**  And, your Honor, so -- and I

18   certainly believe what Mr. Placitella says.

19                  But there also came a time where,

20   because of federal courts both in the Grace trust and

21   in the Raymark case, excluding the doctors that came

22   with the package, okay, and what I've read is it was

23   a package, because that's what the ABA refers to.

24             **SPECIAL MASTER:**  That's what I thought.

25             **MR. ASSAF:**  So there came a time where

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Monday
C.A. No. 2:11-cv-01754-JLL-JAD  Oral Argument  January 15, 2018

Page 51

1 it would have been malpractice not to try to get

2 another doctor because these doctors were being

3 excluded.

4    **MR. PLACITELLA:**  So he has them.  He's

5 had cases approved by the trust way after all this by

6 independent experts.   These are valid cases.

7    **SPECIAL MASTER:**  We're not being kind to

8 Mr. Little, who's been very patient.

9    **MR. LITTLE:**  Your Honor, the analogy is

10 if in a case a party were to seek information about

11 the attorney's sanction history and try to admit that

12 as evidence as to whether the underlying claims are

13 or are not valid, it simply is not something that

14 would ever be admissible in the underlying case.

15    If you want to impugn the credibility of

16 the evidence, it is the experts.  And that is

17 information that not only my understanding is that

18 BASF already has, but that's not reflected in the

19 field that is in dispute.   It's reflected in a

20 different field that was part of a proposal that was

21 made during the meet and confer process.

22    **SPECIAL MASTER:**  When this database is

23 reduced to a spreadsheet, how many columns does it

24 have?

25    **MR. LITTLE:**  My understanding is that

Page 52

1    it's not 350, but 415.

2              MR. FARRELL:  I have a copy here, your

3    Honor, if you'd like to see it.

4              SPECIAL MASTER:  Okay.

5              MR. LITTLE:  Yeah, 415 I believe.

6              MR. PLACITELLA:  415.

7              MR. FARRELL:  That is the entry just for

8    one of the putative class representatives.

9              SPECIAL MASTER:  For William Clark?

10             MR. FARRELL:  Correct.

11             SPECIAL MASTER:  Well, Nancy Pease, did

12   I pronounce that correctly?  P-E-A-S-E.

13             MR. FARRELL:  Yes.  What I don't think

14   is --

15             SPECIAL MASTER:  There's a lot of

16   information here that I frankly don't think is all

17   that important.  I think it would have been

18   important under the underlying case, but not in this

19   case.

20             Okay.  Can I hold onto this for a

21   minute?

22             MR. FARRELL:  Yes, your Honor.

23             SPECIAL MASTER:   Thank you.

24             I'm sorry, Mr. Little, we keep

25   interrupting you.

Page 53

```
 1              MR. LITTLE:  That's okay.   I finished
 2   on that point.
 3              The only other thing that I want to
 4   differentiate is the difference between what I
 5   understand the Cahill database to be and the
 6   authority that might govern its production and the
 7   Bevan database.   You asked about authority
 8   previously.
 9              And unlike -- with the Cahill database,
10   and this is only my own understanding from reading
11   the parties' briefing on the issue, is that it
12   reflected information that Cahill received on behalf
13   of BASF from the parties that had filed or submitted
14   claims against it.   So that information by its very
15   nature is not privileged.
16              In addition, the work product protection
17   over that database is owned by two parties to this
18   lawsuit and so it's not subject to Rule 45.
19              The difference with the Bevan database
20   is that Rule 45 contains mandatory language that work
21   product -- and in this case I don't think that
22   there's a dispute that this is information that was
23   compiled and arranged by attorneys in anticipation of
24   litigation.
25              Rule 45 contains mandatory language,
```

Page 54

1    Rule 45(d)(2), that says that the Court must protect

2    that information from disclosure.

3                There is a second category below that, I

4    believe that's paragraph 3 of that same rule, that

5    says that the Court may limit or impose restrictions

6    on production of trade secret and proprietary

7    information and several other categories.

8                So there is authority that puts the

9    Bevan database in a different position than the

10   Cahill database, and that is that the information in

11   that database is received in part from the firm's own

12   clients.  And it is an internal database that

13   contains the information that that law firm felt to

14   be crucial to that case.

15               And it is the privilege, whether it's

16   work product or attorney/client, is owned by a

17   non-party that is subject to this additional

18   protection under Rule 45.

19               And so I just want to make clear that

20   that's what distinguishes the Cahill database.

21               **SPECIAL MASTER:**  What part of Rule 45

22   are you relying on?  Because I don't see it.  And I

23   just looked at it.  I don't see it providing the kind

24   of expansive protection that you seem to be reading.

25   And I'm happy to hand it to you.

Page 55

1              MR. LITTLE:  Sure, that would be --

2              SPECIAL MASTER:  And I think you want to

3    be looking at the lefthand side page.  No, the other

4    lefthand.  There you go.

5              MR. LITTLE:  I'm referring to (d)(3).

6              SPECIAL MASTER:  Okay.

7              MR. LITTLE:  On a timely motion, the

8    Court must quash or modify a subpoena that requires

9    disclosure of privileged or other protected matter if

10   no exception or waiver applies.

11             And so with regard to the named

12   plaintiffs, I understand that the Court has ruled

13   that there's been some sort of limited waiver.

14             With regard to --

15             SPECIAL MASTER:  That was --

16             MR. LITTLE:  -- the putative class

17   members --

18             SPECIAL MASTER:  -- Chief Judge Linares

19   decided that.

20             MR. LITTLE:  Right, some amount of

21   waiver.  It's unclear to me how extensive that is or

22   what that applies to.

23             But that's not the issue presented in

24   this motion.  In this motion we're dealing with

25   non-parties who have not had an opportunity to retain

Page 56

1    their own counsel, to opt out of this litigation, and

2    should not be bound by a decision that essentially

3    opens the door on their work product and privileged

4    information.

5              SPECIAL MASTER:  Now, tell me a little

6    bit more about your work product argument.  Because

7    when I look at these databases, when they are

8    produced in a format that human beings can read, they

9    really very much look like summaries under the

10   Federal Rules of Evidence, where the summary is

11   admissible if the information that is set forth in

12   the summary is too voluminous to use.

13             The creation of a summary doesn't make

14   it work product.  It just makes it a summary.

15             How is this a work product?

16             MR. LITTLE:  Correct.

17             SPECIAL MASTER:  I mean, when you as a

18   lawyer decide that you're going to make stuff more

19   easily digestible to you, how is that work product,

20   just because you happen to be a lawyer?

21             It's just like not every conversation

22   that you have as a lawyer is attorney/client

23   privileged.  Not everything that you do is work

24   product protected.

25             So tell me how this database, and I'm

Page 57

1    waving what Mr. Farrell let me look at, how this

2    database somehow is work product for you.

3              **MR. LITTLE:**  Correct.  And there's two

4    bases for that.

5              And the first basis is that the

6    information that is being summarized is itself work

7    product or privileged either because it was received

8    from the client or from a consulting expert as

9    opposed to a testifying expert or somebody working on

10   behalf of the lawyer.  And much of that

11   information --

12             **SPECIAL MASTER:**  Well, that doesn't make

13   it work product.  That makes --

14             **MR. LITTLE:**  That makes it privileged.

15             **SPECIAL MASTER:**  -- it privileged.

16   Correct.

17             **MR. LITTLE:**  And in the other category

18   is the fact that the information that was chosen and

19   selected for this database reflects the attorney's

20   decision about what information is crucial to that

21   client's case.

22             And so there is in the Third Circuit a

23   selection and incorporation doctrine that I believe

24   applies to this database.

25             But some of the information contained in

Page 58

1    this also is the same kind of information that would

2    be reflected in any case memorandum that an attorney

3    would prepare for the file in any of our cases.

4              The fact that it's arranged in

5    relational databases that can be sort of called upon

6    to produce reports containing, you know, specific

7    information, doesn't make it any different than any

8    other internal document that's prepared for

9    litigation.

10             **SPECIAL MASTER:**  And correct me if I'm

11   wrong, but is what Mr. Farrell handed over to me, is

12   that typical of the categories and of the fields in

13   this database?

14             **MR. LITTLE:**  I believe that reflects all

15   of the possible fields.

16             **SPECIAL MASTER:**  Okay.  So if I said to

17   Mr. Farrell, Mr. Farrell, identify for me the six

18   fields that you really want by way of information,

19   and we narrow everything down to the point where some

20   if not all of your concerns go away, would that plus

21   a 502(d) order satisfy your concerns?

22             **MR. LITTLE:**  Well, I don't think that I

23   can --

24             **SPECIAL MASTER:**  It's hard -- I'm asking

25   you a question in the abstract.

Page 59

1              MR. LITTLE:  -- walk back from the --

2    from the position we're taking on the database.   It

3    would obviously be better than --

4              SPECIAL MASTER:  Than a full-blown --

5              MR. LITTLE:  -- producing the whole

6    thing.

7              SPECIAL MASTER:  Okay.

8              MR. LITTLE:  But, you know, for the

9    record --

10             SPECIAL MASTER:  So amputation is better

11   than just capital punishment?

12             MR. LITTLE:  We'll take anything we can

13   get.

14             SPECIAL MASTER:  Okay.  Mr. Farrell,

15   you only get to use one sheet of comments from Mr.

16   Assaf, okay, so pick the better one.

17             MR. FARRELL:  I will do my best, your

18   Honor.

19             And I came in this morning and I was

20   going to say that the theme of the day was going to

21   be the sauce for the goose, sauce for the gander that

22   you identified from our brief, but I think your Honor

23   actually --

24             SPECIAL MASTER:  I stole your thunder.

25             MR. FARRELL:  You actually came up with

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 60

1    a better theme than I did, which was the Groundhog

2    Day point, because I think much of what we've heard

3    over the last hour plus is material that's already

4    been argued for months and rejected.

5              We heard scope of discovery and

6    forfeiture of discovery, which has been rejected

7    multiple times by Chief Judge Linares and by your

8    Honor.

9              We heard Rule 1.6 confidentiality, which

10   has been rejected by the Court I think at least twice

11   at this point.

12             **SPECIAL MASTER:**  The last time I said

13   it's a court order and therefore under New Jersey

14   law, which is what applies, you need to disclose.

15             **MR. FARRELL:**  Exactly.  And we've heard

16   arguments about prematurity and so on and so forth.

17             What I think would be helpful is exactly

18   where I think the Court was heading, which is how do

19   we resolve this?

20             And I think much of what we heard this

21   morning was really off base from what the dispute

22   we're actually talking about is.

23             And so I want to just try to make three

24   points, because I think it brings us back to what the

25   actual dispute is.

Page 61

1            First, the plaintiffs you'll remember

2    vigorously demanded the Cahill databases.   When they

3    demanded them, there were no limitations imposed.

4    They didn't say I only want the entries for the six

5    putative class reps, I only want the entries for the

6    30 Bevan people that the Court ordered.   It was

7    everything.

8            **SPECIAL MASTER:**  That's okay, because

9    lawyers are entitled to say do I what I say, not what

10   I do.  So, okay, that's -- I understand that.

11           **MR. FARRELL:**  So the plaintiffs set the

12   scope when it comes to the databases.  All we're

13   asking is that they live by the scope they

14   established.

15           Point two, most of the information in

16   the database both the plaintiffs and Bevan have

17   agreed to produce.

18           The dispute here is really about three

19   categories of information.  Most of the argument you

20   heard about work product and this and that, we've

21   already passed it because there's already been

22   agreement to produce multiple categories of

23   information out of the database for all of the Bevan

24   clients.  And when I say all of the Bevan clients --

25           **SPECIAL MASTER:**  Okay.  So there's been

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD      Oral Argument      January 15, 2018

Page 62

1    agreement to produce certain categories of

2    information.

3                MR. PLACITELLA:  No.

4                SPECIAL MASTER:  What are they?

5                MR. PLACITELLA:  There's no agreement.

6                SPECIAL MASTER:  Well, there may not be

7    with you, Mr. Placitella.

8                MR. PLACITELLA:  There was no agreement

9    with him either.  There was a proposal made that was

10   reached --

11               SPECIAL MASTER:  Wait.  Fine.  He says

12   there was.  You say there weren't.

13               MR. ASSAF:  What does Mr. Roth say?

14               SPECIAL MASTER:  Mr. Roth, somebody's

15   putting you on the spot.

16               MR. ROTH:  And I'm happy to be on the

17   spot, your Honor.

18               We were -- what we discussed was

19   those --  produce the e-mails, that there were areas

20   in this database that would be privileged and that we

21   would not produce.  That's what was discussed.

22               MR. ASSAF:  And that everything else

23   would be produced.

24               MR. ROTH:  Well -- and that's what I

25   wrote, that we wouldn't have a problem with that,

Page 63

1    your Honor.

2                    **SPECIAL MASTER:**  Okay.  And what are

3    those areas?

4                    **MR. ROTH:**  I'm sorry?

5                    **SPECIAL MASTER:**  What are those areas

6    that would be produced?

7                    **MR. ROTH:**  Well, it's actually the

8    ones that --  oh.  It's easier to go with ones that

9    are not going to be produced.

10                   **SPECIAL MASTER:**  No, no.  For me it's

11   easier to go with the ones that would be produced,

12   because my order is going to say:  You're going to

13   produce X, Y, and Z.   So I'm going to need to know

14   what it is that you agree on.   Think about it for a

15   moment.

16                   Mr. Assaf is going to play with his

17   machine --

18                   **MR. ASSAF:**  I'm just --

19                   **SPECIAL MASTER:**  -- and Mr. Farrell's

20   going to continue his --

21                   **MR. ASSAF:**  I'm just going to pull up

22   Mr. Roth's e-mail.

23                   **SPECIAL MASTER:**  That's all right.   If

24   that's helpful, that's fine.  But you can do that

25   while Mr. Farrell continues.

Page 64

1          **MR. ROTH:**  Gene, why don't you just

2     forward it to me?

3          **SPECIAL MASTER:**  Okay.  So you guys can

4     play electronics while Mr. Farrell speaks.

5          **MR. FARRELL:**  There were multiple

6     discussions and agreements.  One example that we

7     noted in our brief, because we had to change our

8     brief at the last minute because we reached an

9     agreement, was on whether the plaintiffs had been in

10    silica litigation and were they going to keep that

11    information out or not.  Mr. Roth agreed to include

12    it.

13          So the reason our brief focused on three

14    areas, three key areas, but three areas nonetheless,

15    is because there had been agreement on everything

16    else.

17          I'm now hearing for the first time that

18    that agreement supposedly didn't exist.  But be that

19    as it may.

20          Now let's talk about the three areas,

21    because I think they illustrate the problem here.

22          I appreciate that neither plaintiffs nor

23    Bevan wants to produce the information.  But as your

24    Honor correctly recognized, unless there's a basis

25    for withholding it, which it's their burden to

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 65

1    satisfy, they can't withhold it just because it's bad

2    for them or they don't feel like producing it.

3            So let's talk about each of the three

4    things.  The referring attorney.  Well, Mr. Little

5    tried to draw a distinction between information

6    received from a client as opposed to received from a

7    third party and argued that, well, information that

8    comes from the clients is special.

9            Well, the identity of the referring

10   attorney certainly didn't come from Mr. Bevan's

11   clients.  That came from a third party.  And I don't

12   see how it could be privileged or confidential.  It's

13   certainly not a trade secret, as your Honor

14   mentioned.

15           So if I walk through all of the examples

16   that I've heard this morning about basis for

17   withholding, none of them apply to the referring

18   attorney.  And that's all the more true given the

19   discovery confidentiality order we have here.

20           To the extent that Mr. Placitella is

21   even concerned about reputational harm, the example

22   he gave about a defense lawyer referring Mr. Roth a

23   case, I'm sure they will designate this information

24   confidential or attorneys' eyes only under the

25   discovery confidentiality order.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 66

1          And I assume that would address all of

2     the concerns they have about reputational issues or

3     whatever may flow from it.

4          The key point is there's no privilege

5     basis or work product basis for withholding referring

6     attorney.

7          Two, settlements, and I think these

8     actually fall into two categories, so let me take

9     them in two stages because I think it matters.

10         One, are the settlements in the claims

11    made on bankruptcy trusts?

12         We met and conferred on this with Mr.

13    Roth and with Mr. Little.  They both acknowledged

14    that bankruptcy trusts are not confidential.

15         The reason we cited the Ohio statute

16    that we cited was not to say that it applies here and

17    that this is a personal injury case, but to

18    illustrate the fact that these trusts are not deemed

19    confidential by anybody.

20         And in fact, if the federal bankruptcy

21    court had said they're confidential and they can't be

22    produced, I very much doubt that the Ohio state could

23    then say I now demand that you produce it.  It

24    doesn't work that way.

25         These bankruptcy trusts are not

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 67

1    confidential submissions.  They're communications

2    with third parties, both the submission to the trust

3    and the information received from the trust, so it's

4    also not privileged.

5              So you have no confidentiality, you have

6    no privilege, and you have no work product.

7              I don't see any basis for withholding

8    any of the information related to the bankruptcy

9    trusts, including the amounts that have been received

10   from those trusts, because there's no confidentiality

11   in place.

12             So then that leaves category three,

13   which is the other settlements, the settlements with

14   non-bankruptcy entities.

15             **SPECIAL MASTER:**  Well, was there any

16   other compensation received by the Bevan plaintiffs?

17             **MR. FARRELL:**  Essentially yes, which I

18   presume that most --  looking at the database

19   entries, I presume that most of them would be

20   entities other than bankruptcy trusts, such as other

21   defendants from the litigation.

22             Now, we heard extensive argument from

23   Mr. Placitella this morning that somehow BASF already

24   has this information.

25             I don't see how it can both be true that

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 68

1    the information is subject to a confidentiality

2    agreement but BASF already has it from 25 years ago.

3    One of those two things is not correct.   I don't

4    know why --

5            SPECIAL MASTER:  Well, the argument that

6    Mr. Placitella advances in respect of that is really

7    a proportionality argument, if I can put it in our

8    new terms as of a year and a half ago.   You know,

9    whether getting that information is proportional to

10   the needs of the case because, says Mr. Placitella,

11   you already have that information somewhere along the

12   way.  And that's how I understood his argument.

13           MR. FARRELL:  And I don't believe --

14           SPECIAL MASTER:  And he's shaking his

15   head up and down, meaning that I finally got one

16   right.

17           MR. PLACITELLA:  You got many things

18   right.

19           SPECIAL MASTER:  Thank you.

20           MR. PLACITELLA:  Just not everything

21   here so far.

22           SPECIAL MASTER:  Stick with me.   We're

23   not done yet, Mr. Placitella.

24           MR. FARRELL:  With the exception of some

25   of the talc co-defendants, which your Honor may

Page 69

1    remember us discussing at the October hearing, where

2    BASF may have had some information about what other

3    talc companies were paying in those cases, I don't

4    think it's correct that we have information about

5    what non-talc non-bankruptcy entities would have been

6    paying to the plaintiffs in those cases.

7              We have asked now for a year for the

8    plaintiffs to identify even one confidentiality

9    agreement that would restrict the production of the

10   information or that couldn't be addressed through the

11   discovery confidentiality order we have.  And we've

12   seen none.

13             And in fact, your Honor just heard again

14   this morning Mr. Placitella acknowledging that some

15   of those settlements at a minimum are not subject to

16   confidentiality.

17             Given that it is their burden to prove

18   up some basis for withholding the information, they

19   haven't met the burden and in fact have acknowledged

20   that the argument doesn't apply to the chunk of the

21   information that we're after.

22             The last point I would make is the point

23   that I made to your Honor in December when we were

24   here discussing the Rothenberg issues.

25             And I thought one of the most important

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 70

1    pieces of the plaintiffs' opposition on the Bevan

2    database actually was on the last page of their brief

3    where they told the Court:  Hey, none of this should

4    preclude us from later relying on this very same

5    information.  And I thought that was a pretty telling

6    statement.

7               It seems pretty clear, your Honor, that

8    the plaintiffs are planning to use this sort of

9    information.  And they need to.  The reason they need

10   to, as we explained in our motion, is that the six

11   class representatives have either mesothelioma and

12   lung cancer, but 90 plus percent of the putative

13   class does not.

14              It will be the non-malignant claims that

15   were at issue with the National Tire Worker

16   Litigation Project that are the subject of all of the

17   discussion the Court has seen about fraudulent

18   doctors, diagnoses with no actual basis, and most

19   importantly I think for the present dispute, the

20   amount of compensation that would have been received

21   in those cases.

22              **SPECIAL MASTER:**  But aren't we really

23   being told by plaintiffs' counsel:  Read between the

24   lines, wait until you get our class cert motion,

25   that's going to define what the class is that we're

Page 71

1    seeking and may in fact moot many of the issues that

2    are before us.   Isn't that really sort of the

3    subtext of what plaintiffs' counsel are saying?

4              MR. FARRELL:  Well, we're two weeks away

5    at this point, your Honor.   And I would think that

6    Mr. Placitella would be in a position to tell us

7    today are the non-malignant claims out of the class.

8    If they are, then we're happy --

9              SPECIAL MASTER:  Well, I'm not going to

10   ask him to do that today, because he has until the

11   29th.

12             MR. FARRELL:  Okay.  Well, then we're

13   left in the position of needing to seek the

14   information, because as of today they're supposedly

15   in the class.   And as of today, we have only three

16   and a half months of fact discovery to go and we need

17   to get this information.

18             Otherwise, we're going to have no

19   discovery in this case at all on potential damages

20   and the sorts of reliance and causation issues with

21   respect to the non-malignant claims that we're

22   talking about.

23             SPECIAL MASTER:  I understand your

24   concern.   But hopefully you also understand at least

25   from the way that this matter has been handled up

Page 72

1    until now, that if there is a deferral for two weeks

2    to allow all of us to know what plaintiffs' counsel

3    will be proposing in the way of a class, that I will

4    not allow that to prejudice the defense.   You're

5    going to get your opportunity to get what you need

6    and you're going to get it quickly.

7              And it frankly might be easier to do

8    then because then we really will know what the

9    contours of the ballpark that we're going to be

10   playing in are.

11             And I hope that you're fairly confident

12   on your side that even though you have a limited time

13   period within which to do to conduct your discovery,

14   discovery will move quickly and delays are not going

15   to be acceptable from anybody.   And I mean that.

16   Anybody.

17             I will tell you that at the last time

18   that we discussed this issue, we deferred it because

19   I was told by counsel that you were going to work it

20   out.   If I had -- and it didn't work out.   That's

21   fine.   We address it now.

22             But I will tell you that if I had

23   ordered the discovery and it had not been produced, I

24   am perfectly ready, willing, and able to start

25   imposing sanctions, because I've said it before, I

Page 73

1    will say it again.   This case needs to move.   And

2    I'm not going to brook delays based upon folks'

3    recalcitrance with complying with orders that are

4    issued after a matter has been briefed and argued and

5    you've been heard.

6              You can disagree with me all you want.

7    That's perfectly fine.   And if you disagree with me

8    enough, there is a methodology for you to get review

9    of my decisions.   Good luck on that.   But there is a

10   methodology.

11             And that's what we're going to follow.

12   Otherwise we're going to move this case along.   And

13   it's not going to be at anybody's prejudice.

14             This case is almost seven years old.

15   Everybody in this case is entitled to know what the

16   other side's case is going to be about, specifically

17   in respect of class certification.

18             Plaintiffs have a heavy burden to

19   satisfy class cert requirements, particularly in this

20   circuit.

21             And defendants have every right to poke

22   holes into that.   That's what makes it a lawsuit.

23             The fact that the complaint was filed is

24   not an invitation for the other side to lay down.

25   You got to expect that the other side is going to

Page 74

1    fight you back and that everybody has their burden to

2    prove.   So we're going to keep moving on this as

3    best we can.

4              Let me make this suggestion.   Putting

5    aside --  Mr. Assaf is going to have a heart attack

6    if I don't let him speak, so --

7              **MR. ASSAF:**  Well, I --

8              **SPECIAL MASTER:**  So to avoid the heart

9    attack --

10             **MR. ASSAF:**  Well, I'd like the Roth

11   exception to multiple people raising points, because,

12   your Honor, if Mr. Placitella is going to sit there

13   in silence, it's inconceivable that this class is not

14   going to include the Bevan people and the Bevan

15   database.   This is their case.

16             And so to just --  so two weeks of delay

17   so that we could come back here and then negotiate

18   how it's going to be produced --

19             **SPECIAL MASTER:**  That's not going to

20   happen.

21             **MR. ASSAF:**  Because I would like to say,

22   your Honor, they know Bevan is their case.   Okay.

23   We've seen Rothenberg.   It's Rothenberg and Bevan.

24   And Rothenberg, I don't know what's going to happen

25   there.   Bevan is their case.

Page 75

1           And so they're sitting there knowing,

2    okay, that that's going to be part of their case.

3    And now we're just going to wait until we get this

4    database.

5           And the point I wanted to pick up, Mr.

6    Farrell did a great job as usual, but I did want to

7    say when they agreed -- Mr. Roth and I have just been

8    exchanging e-mails.  When they've agreed to produce

9    the database save three key issues, okay, that's

10   really inconsistent with the notion that the database

11   can't somehow be reformed to produce it without

12   whatever fields.

13           **SPECIAL MASTER:**  If it's computer

14   information, it can be manipulated --

15           **MR. ASSAF:**  Correct.

16           **SPECIAL MASTER:**  -- every which way

17   possible.

18           **MR. ASSAF:**  Correct.

19           **SPECIAL MASTER:**  So --

20           **MR. ASSAF:**  And so on the National Tire

21   litigation -- the National Tire Workers Litigation

22   Project, I'm not trying to oversell that, but I

23   just -- I get my shot to test the parameters of what

24   these people are and whether they in fact had valid

25   claims.

Page 76

1          **SPECIAL MASTER:**  No question.  The

2     question that is presently at issue is whether now is

3     the right time for that.

4          **MR. ASSAF:**  And here's why --

5          **SPECIAL MASTER:**  Okay.  That's the only

6     issue as far as I'm concerned.

7               If the case gets certified or in the

8     process of that, you're going to get the right to

9     look at that and take your shot.

10               The question is are you going to get

11    that today or some day after today?

12          **MR. ASSAF:**  So that's what --  so maybe

13    I'm just misunderstanding again.   I think I get that

14    shot before certification.   I don't --  not after --

15    Mr. Placitella is suggesting I get it after.

16          **SPECIAL MASTER:**  That's not the

17    question.  The question is do you get it before the

18    motion for certification is even filed.

19          **MR. ASSAF:**  Okay.  Because it's not

20    going to come as any surprise, in the Widener case,

21    which you're familiar with --

22          **SPECIAL MASTER:**  I'm sure that this

23    issue is not going to go away.

24          **MR. ASSAF:**  Correct.

25          **SPECIAL MASTER:**  Okay.   It's the

Page 77

1    Heimlich case.  You called it Widener.

2              **MR. ASSAF:**  Correct.

3              **SPECIAL MASTER:**  It's Widener Law

4    School.  Judge Walsh put the brakes on that and the

5    Third Circuit agreed, so...

6              **MR. ASSAF:**  Correct.  And again, I

7    don't have to lay it all the out now for your Honor.

8    But if it turned out that a large number of that

9    putative class were part of a scheme to submit false

10   LSAT scores, that would be relevant to the class cert

11   hydrogen peroxide analysis.

12             And so all I'm saying is -- and I know

13   we're going to get to this on the interrogatories, we

14   have -- I think it's May 10th or May 15th.  And I

15   hear what your Honor's saying about things set in

16   stone.

17             I don't understand the burden to start

18   producing this, because I can tell you on February

19   1st when we come back here, there's going to be a

20   long story about how long it takes to get it to us.

21             **SPECIAL MASTER:**  But if that's the case,

22   they may not get my normally sympathetic ear, so --

23   look, I'm trying --

24             **MR. ASSAF:**  I know.

25             **SPECIAL MASTER:**  -- to get the case

Page 78

1    moving, okay.  I'm not carrying water for anybody

2    except for Chief Judge Linares, okay, because he's

3    the only one who can get cranky at me, and that

4    matters, okay.

5              You can all get cranky at me, but it

6    really doesn't matter.  So that's what I'm trying to

7    do.

8              MR. ASSAF:  I understand.

9              SPECIAL MASTER:  And I think everyone

10   understands that.  And so work with me.  Help me

11   get you where you need to be.  I've said that

12   before.  I'm going to say it again.  Work with me.

13   Help me get you what you need.  And I will try to do

14   that.

15              Anyone else?  Mr. Roth?

16              MR. ROTH:  Just two things.  One, to

17   respond to -- I didn't get an e-mail from you, but I

18   sent you an e-mail from me --

19              MR. ASSAF:  Correct.

20              MR. ROTH:  -- where I identified those

21   databases that -- or those fields that we said were

22   not discoverable.

23              SPECIAL MASTER:  Okay.

24              MR. ROTH:  And I'm happy to send that to

25   your Honor.

Page 79

1          **SPECIAL MASTER:**  No.  What I want you to

2     do -- we're going to take a short break.  And what I

3     want you, Mr. Roth, either one of you, Mr. Assaf or

4     Mr. Farrell, and Mr. Little, because again, you're

5     picking at his client's carcass, to go through this

6     list and tell me specifically which fields you agree

7     to produce, okay, knowing full well that you disagree

8     on the three fields that are at issue here.

9               I'm going to tell you right now I'm not

10    going to order the production of 450 fields of

11    information.  That's not going to happen.

12          **MR. FARRELL:**  Well, can I speak to just

13    that point, your Honor?  Because I think there's a

14    bit of a misconception about the number 450.

15          **SPECIAL MASTER:**  It doesn't matter what

16    the number is.  You're going to look through this

17    list and you're going to highlight -- and I'm to give

18    you the list and I'm going to give you a highlighter.

19    Okay.  You're going to highlight the fields that you

20    guys agree can be produced.  I'm sure you can

21    modify -- since this is a relational database, I'm

22    sure you can modify what the net result is when you

23    produce the spreadsheet.

24               And once we define what the categories

25    are, I know that there are three categories you're

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                 Monday
C.A. No. 2:11-cv-01754-JLL-JAD                      Oral Argument                       January 15, 2018

Page 80

1    not going to agree on, so I'm going to have to rule

2    on them, and we'll work off of that.

3              But first let's try to make sure that we

4    define what the scope is of what's being requested

5    here, try to get agreement on that as much as

6    possible, and then I'll address the three areas.

7              And if people want to talk more after

8    that, that's fine.  But for now, why don't we try to

9    use that time profitably.

10             **MR. PLACITELLA:**  I just want to correct

11   the record on one thing --

12             **SPECIAL MASTER:**  Yes.

13             **MR. PLACITELLA:**  -- about the Cahill

14   database.  The Cahill database was supposed to have

15   been produced in response to my request for give me

16   the records that you have as to why cases were

17   dismissed.  That was why it --  am I wrong?

18             **MR. ASSAF:**  Yes, you are wrong.

19             **MR. PLACITELLA:**  Okay.  Well, tell me

20   why it wasn't produced then.

21             **SPECIAL MASTER:**  I'm sorry.  Before we

22   get into that, I have a feeling that that's what a

23   friend of mine who likes the ballet would call a

24   lateral arabesque.  It's not central to the dance.

25             I don't know how that helps us here, Mr.

Page 81

1   Placitella.   So maybe you can tell me that first.

2            **MR. PLACITELLA:**  We'll have our break

3   and then we'll come back.

4            **SPECIAL MASTER:**  Okay.  Thank you.

5   Here's the list that you gave me.  I'm going to find

6   you a highlighter -- well, that's a blue one.  Those

7   are horrible.  Can we get a yellow one?  There

8   should be one down there.

9            **MR. ASSAF:**  And, your Honor, so it's not

10  going to surprise you, the point on the 450, if they

11  sued 120 defendants, each defendant could have three

12  categories:  Date complaint filed, check received,

13  check sent, check cashed.

14           **SPECIAL MASTER:**  Okay.

15           **MR. ASSAF:**  So that's why it gets up

16  into the hundreds so quickly.

17           **SPECIAL MASTER:**  All right.  Well, I

18  looked at it.  And they seemed pretty --  pretty --

19  what's the word I'm searching for?  Pretty granular

20  in the information.  So that's kind of where we were.

21           But let's use this time profitably.

22           (Break.)

23           **SPECIAL MASTER:**  I just want to confirm

24  that the categories are correct.

25           **MR. ROTH:**  Well, actually, your Honor,

Page 82

1    there are a couple things that are -- that were

2    changed after this.  So let me --

3              SPECIAL MASTER:  Okay.  So why don't you

4    tell me what the categories are.

5              MR. ROTH:  Right.  Let me just say --

6    and what you have asked us to do and what I had done

7    with Mr. -- I'm sorry, what I had done with Mr. Assaf

8    and with Mr. Farrell after our November conference

9    with your Honor was essentially some E-electronic and

10   telephone meet and confers.

11              We objected in front of your Honor to

12   producing the database.  We said perhaps there was a

13   way to work this out.   These are putative class

14   members.   And we went down into the woods on certain

15   things.

16              So we said for purposes of reaching an

17   agreement, which we never did, here is what we will

18   not produce.   I've said it that way, your Honor,

19   because the version that you now have has factors

20   that are -- or fields that are highlighted with red.

21   Those are the fields we believe are not discoverable

22   from the Bevan database.

23              SPECIAL MASTER:   Okay.  But make my

24   life easier.

25              MR. ROTH:  Yes, sir.

Page 83

1              **SPECIAL MASTER:**  Tell me which fields

2    you've agreed to produce.

3              **MR. ROTH:**  Okay.

4              **SPECIAL MASTER:**  Because those are what

5    are going to appear in the order.

6              **MR. ROTH:**  Okay.

7              **SPECIAL MASTER:**  Mr. Reiley's going to

8    take notes, and what he puts in the way of notes is

9    what's going to be in the order, so slowly and

10   patiently.  Please.

11             **MR. ROTH:**  Yes, sir.  For the record,

12   what we would have been willing to produce, even

13   though we dispute its discoverability --

14             **SPECIAL MASTER:**  I assume that you

15   dispute the discoverability of everything.  But at my

16   request, you're kindly agreeing to produce the

17   following.

18             **MR. ROTH:**  Well, subject to your Honor's

19   order, we would produce -- we were willing to agree

20   to the following:   NS, AA --

21             **SPECIAL MASTER:**  What is NS?

22             **MR. ROTH:**  I don't remember.  And I was

23   told that they're not really filled, the fields

24   aren't really filled.

25             **SPECIAL MASTER:**  Well, let me try this,

Page 84

1    okay, because I'm going to look at this and maybe get

2    some sense out of it.

3                We're going to get the first and last

4    name of the original claimant?

5                **MR. ROTH:**  Yes.

6                **SPECIAL MASTER:**  We're going to get the

7    first and last name of whoever their representative

8    plaintiff is.   Right?

9                **MR. ROTH:**  Yes, sir.

10               **SPECIAL MASTER:**  Okay.   We're going to

11   get the address for the -- and I say representative

12   plaintiff, not in the sense of class representative,

13   but in the sense of somebody standing in the shoes of

14   a decedent.

15               Okay.   So we're going to get the

16   address for that.   We're going to get the cause of

17   death.   We're going to get alternate contact, the

18   primary employer and the location of the primary

19   employer, the year they started employment, the year

20   their employment ended, their occupation, their

21   primary and/or secondary diagnoses.

22               **MR. ASSAF:**  Film quality.

23               **SPECIAL MASTER:**  I'm sorry?

24               **MR. FARRELL:**  Yes, film quality and ILO

25   are going to be important fields for non-malignant

Page 85

1    claims, your Honor.

2              **SPECIAL MASTER:**  Okay.  Film quality and

3    ILO, whatever ILO may be.

4              **MR. FARRELL:**  It's an organization that

5    has standards for reading chest x-rays to determine

6    whether they show markings or indicia of asbestos.

7              **SPECIAL MASTER:**  Okay.  And what's the

8    state number?  What is that?

9              **MR. ROTH:**  That's the docket number.

10   There's a claim number.

11             **SPECIAL MASTER:**  Okay.   And then the

12   date filed for that claim number and whether there

13   was a worker's comp. claim filed and a settlement,

14   the primary diagnosis date, secondary diagnosis date,

15   the doctor or secondary doctor.

16             I don't know what product ID means.

17             **MR. ROTH:**  How you prove that they

18   were -- what the product was that they were exposed

19   to.

20             **SPECIAL MASTER:**  Okay.  And memo, what

21   does that mean?

22             **MR. ROTH:**  I don't know, your Honor.

23   Probably related to the product ID.

24             **SPECIAL MASTER:**  Okay.  PFT?

25             **MR. FARRELL:**  It's probably pulmonary

Page 86

1   function test.  The next several fields, PFT,

2   physical exam, SVC, SEV, 1, TLC --

3            **THE REPORTER:**  Mr. Farrell, excuse me,

4   when you read the letters like that -- if you'd start

5   again, I'd appreciate it.

6            **MR. FARRELL:**  Let me take them slower.

7            **THE REPORTER:**  Just because they're

8   letters, I don't know if they're separated or all

9   together.

10           **MR. FARRELL:**  These again are all going

11  to be relevant to the non-malignant claims,

12  presumably.

13           PFT is probably pulmonary function test.

14  Physical exam presumably is just physical exam.   FVC

15  is again a lung function reading.   FEV 1 to FVC

16  ratio is again a lung function reading, as is TLC and

17  DLCO.

18           So if that information is available,

19  which it should be for anybody who's claiming

20  asbestosis or a similar non-malignant condition, the

21  plaintiffs have indicated they will produce it.

22           **MR. PLACITELLA:**  It's not available for

23  everybody.

24           **SPECIAL MASTER:**  Okay.

25           **MR. PLACITELLA:**  Nor should it be.   I'm

Page 87

1    just telling you as a matter of medical science, they

2    don't do a reading for PFTs for everybody.

3              **SPECIAL MASTER:**  Okay.   And then we go

4    to the next page where we have CUY, underscore CTY,

5    underscore date, underscore PD.

6              So it's Cuyahoga County, date of what?

7    What's PD stand for?  Is that probate?

8              **MR. ROTH:**  I believe these are the

9    probate filings, your Honor, yes.

10             **SPECIAL MASTER:**  Okay.  Because

11   underneath it's got probate approval, probate amount,

12   probate fee paid, probate fee description, Medicare

13   lien resolved, Medicare lien paid, Medicare lien I

14   assume it's decision.

15             **MR. ROTH:**  Right.

16             **SPECIAL MASTER:**  Medicare lien --

17   Medicare underscore PLRP, Medicare underscore PLRP

18   underscore PD, Medicare underscore PLRP underscore

19   DESCR, I assume that's description.  Group, I don't

20   know what group that is, but it's group.   Unfiled

21   POA, is that power of attorney or something else?

22             **MR. ROTH:**  I believe that's power of

23   attorney, your Honor.

24             **SPECIAL MASTER:**  Okay.  Medicare

25   underscore SBMT.   Probate, that's I assume whether a

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                      January 15, 2018

Page 88

1    claim was submitted to Medicare.   Probate attorney,

2    meds underscore received, secondary underscore

3    employer, secondary underscore years underscore EMP

4    underscore.   I assume that's years employed.   Then

5    we go through a lot of deletions.

6              **MR. FARRELL:**   In the middle of the

7    deletions --

8              **SPECIAL MASTER:**   Did I miss something?

9              **MR. FARRELL:**   -- are the two fields talc

10   check number and talc check amount.

11             **SPECIAL MASTER:**   Okay.

12             **MR. FARRELL:**   There's no page numbers,

13   unfortunately, but in the mass of a bunch of redacted

14   fields.

15             **MR. REILEY:**   It's the second to last one

16   I think.

17             **SPECIAL MASTER:**   Okay.   I didn't get

18   that far I don't think.   There they are.   Okay.

19             We have talc underscore CHK underscore

20   no, which is talc check number.   And then talc

21   underscore CHK underscore amount, which I guess is

22   talc check amount.

23             And then we get into other information,

24   packs underscore per underscore day, which I assume

25   is how many packs a day somebody smoked cigarettes.

USDC, District of NJ                   Williams, et al. v. BASF Catalysts, LLC, et al.                   Monday
C.A. No. 2:11-cv-01754-JLL-JAD                   Oral Argument                   January 15, 2018

Page 89

1    Year underscore began, I assume the year they started

2    smoking.  Year underscore stopped.  Year they

3    stopped smoking.  VA underscore lien.  Is that

4    Veterans Administration?

5                **MR. FARRELL:**  That is, your Honor.

6                **SPECIAL MASTER:**  Then military

7    underscore quest, underscore received, which I guess

8    an inquiry from the military.  That's what quest

9    means, question or --

10                **MR. ROTH:**  It may be a questionnaire

11   that was sent to the client from the firm.

12                **SPECIAL MASTER:**  Okay.  Well, whatever

13   it is, you've agreed to include it.

14                **MR. ROTH:**  Let me be clear about agreed

15   to include it, because I don't want -- again, your

16   Honor, I think you understand our position, but you

17   know --

18                **SPECIAL MASTER:**  But assuming that I

19   order it, you're going to produce this, of course

20   subject to a Federal Rule of Evidence 502(d) order.

21                **MR. ROTH:**  Yes, your Honor.  We don't

22   want this transcript floating around that plaintiffs'

23   counsel has agreed to give putative class members'

24   discovery information to the defendants in this case

25   now or ever.

Page 90

1          **SPECIAL MASTER:**  You're being very

2     accommodating because I twisted your arm.

3          **MR. ROTH:**  Okay.

4          **SPECIAL MASTER:**  Military underscore

5     service.  Branch underscore of underscore service.

6     Service underscore start underscore date.   These

7     seem self-evident.   Service underscore end

8     underscore date.   Basic underscore training

9     underscore site.   Basic underscore training

10    underscore city.   Basic underscore training

11    underscore state.   Basic underscore started.  Basic

12    underscore ended.   Military underscore base.

13    Location underscore of underscore military underscore

14    base.   Base underscore started.  Base underscore

15    ended.   Location underscore of.  Underscore military

16    underscore base, 2.   And then the same thing,

17    started and ended.   Same thing in regard to military

18    base 3.   Ship underscore service.  Name of ship.

19    Years underscore on underscore ship.  And then the

20    same thing for ship number 2.   Name underscore of

21    underscore transport underscore ship.   That's for

22    those people in the poor Army who get shipped around

23    by the Navy.   Transport underscore ship underscore

24    years.   Search underscore last, last name, search

25    underscore first, first name.   Post underscore 1980.

Page 91

 1    I don't know what that means.    And apparently

 2    neither does anyone else.    And then filing sheets,

 3    whatever that may be.

 4              **MR. FARRELL:**  Post 1980 is presumably

 5    whether Medicare can assert a lien or not against

 6    settlements.

 7              **SPECIAL MASTER:**  Okay.  And that then

 8    leaves us with the three categories that were at

 9    issue here today.  And those are the identity of the

10    referring attorney, whether any of the Bevan

11    plaintiffs qualified for or received payments from an

12    asbestos settlement trust, and compensation received

13    by the Bevan plaintiffs regardless.

14              In respect of those three, nothing has

15    been presented that would justify withholding the

16    information concerning the referral attorney.

17              As I said very early on, I do not

18    believe that that is a trade secret.  I do not

19    believe that it is confidential.

20              But in order to protect whatever

21    concerns may be, any production made of the database

22    will be done pursuant -- for attorneys' eyes only

23    pursuant to the confidentiality disclosure order.

24    And that should resolve any concerns as to that.  So

25    that will be produced.

Page 92

1           The second category is whether the Bevan

2    plaintiffs qualified for or received payment from an

3    asbestos settlement trust.

4           The fact of having qualified or received

5    payment is not confidential in my view.   The amount

6    may be.   But the fact is not.

7           So disclosure of the fact of having

8    qualified for or received payment from an asbestos

9    settlement trust will be produced, again, subject to

10   a confidentiality discovery order.

11          And finally, whether the Bevan

12   plaintiffs received any compensation other than from

13   the settlement trust.  And again, the fact of that

14   will be produced, not the amount.

15          Now, that said, this entire order will

16   be subject to Federal Rule of Evidence 502(d), which

17   specifically will say, and the order will contain the

18   language, that the privilege or protection that has

19   been asserted is not waived by disclosure connected

20   with the litigation pending before this Court, in

21   which event the disclosure is also not a waiver in

22   any other federal or state proceeding.

23          So no one's waived anything here.

24          **MR. PLACITELLA:**  And is not precedent

25   for any other application, because they've already

Page 93

1    announced that once they get the information here,

2    they intend to go to Kansas and California and do the

3    exact same thing.   And that's the slippery slope

4    that we're on.

5              **SPECIAL MASTER:**  You need to help me

6    with that, Mr. Placitella, because I don't understand

7    what that --

8              **MR. PLACITELLA:**  BASF is taking the

9    position that they're entitled to this information.

10             It's our position they're entitled to

11   none of it from putative chase members.  And we

12   preserve our right to appeal as if it was ordered.

13             They've taken the further position that

14   once they get the information here, they're going to

15   seek similar information as relates to other

16   plaintiffs around the country.

17             **SPECIAL MASTER:**  Well, they can do that

18   in other cases, subject to --

19             **MR. PLACITELLA:**  No, I'm talking about

20   in this case.

21             **SPECIAL MASTER:**  Well --

22             **MR. PLACITELLA:**  In this case.   They've

23   announced in briefing --

24             **SPECIAL MASTER:**  Let us jump up off that

25   bridge if and when we get to it.

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Monday
C.A. No. 2:11-cv-01754-JLL-JAD    Oral Argument    January 15, 2018

Page 94

1            But I will tell you that my decision is

2 limited to what is in front of me right now.   If

3 something else happens in respect of it later on, I

4 will address it then.

5            But I want everybody to understand that

6 what I tried to do was to come up with a compromise

7 that respected everybody's rights while still moving

8 the case forward.   So that's going to be my order.

9            If the plaintiffs think that they need

10 to seek review of that order, that's up to you.

11            **MR. PLACITELLA:**  Thank you, your Honor.

12            **MR. FARRELL:**  Can I raise one minor

13 point, your Honor --

14            **SPECIAL MASTER:**  Sure.

15            **MR. FARRELL:**  -- that I think falls

16 within the compromise you just outlined, but I just

17 wanted to be clear on it.

18            On the very last page of the database

19 entries document you were just reading from, the

20 third to last field is settlements underscore total.

21 And then there's a number provided there.

22            I think that that field could be

23 produced respecting the compromise your Honor laid

24 out since it does not identify the party that the

25 settlement came from or any individual defendant.

Page 95

1    It's just giving a total amount for the plaintiff as

2    opposed to parties who may be on the other side of

3    confidentiality agreements.

4            **SPECIAL MASTER:**  That may become

5    relevant later on.  Not right now.

6            **MR. ASSAF:**  And following up on that

7    comment, your Honor, I don't -- I won't say I know

8    where you're going with this, but let me put this on

9    the record because I think there's going to be an

10   issue from the meet and confer.

11           On the individual amounts of the various

12   settlements, at the meet and confer just now that you

13   ordered, we said okay, but you are to be then

14   precluded from having an expert or anybody else now

15   rely on those individual amounts since you've

16   prevented us from getting them.

17           And they --  and I think there's some

18   uncertainty.  And all I'd like is just some clarity

19   that if they're going to use the settlement amounts

20   through their experts, I actually get them when they

21   start looking at them as opposed to getting an expert

22   report that says:  Oh, I've been churning this data

23   for four months and here's what I found.

24           **SPECIAL MASTER:**  Mr. Assaf, you know as

25   well as I do that if they rely on an expert, you're

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 96

1   entitled to everything that that expert relied on.

2   Basic discovery.  So if an expert relied upon

3   something that has not been disclosed, you're

4   entitled to that.

5        And you'll make arguments then that not

6   only go to the substance but also the process.  And

7   we'll entertain those when and if they occur.

8        **MR. ROTH:**  There's one other point, your

9   Honor, to raise about our meet and confer, which was

10   to the extent that your Honor was going to order

11   production of part of the fields of the database for

12   putative class members, that we want it to be clear,

13   and I believe we are, I just wanted to report to your

14   Honor.

15        I don't know how many of the Bevan firm

16   clients are run through this database.  And I'm not

17   suggesting that any of us do.

18        I wanted it to be clear because it's

19   something that we had talked about producing all of

20   the clients.  And a lot of that was just because I

21   don't know that anybody was thinking about it.  I

22   don't think anybody was trying to gain unfair

23   advantage or any of that kind of thing.

24        But given your Honor's order, it relates

25   to putative class members, not every asbestos client

Page 97

1    that's ever been in the Bevan firm, only people who

2    may be part of this class.

3              SPECIAL MASTER:  Well, as currently

4    defined --

5              MR. ROTH:  Yes your Honor.

6              SPECIAL MASTER:  -- which is pretty much

7    anybody who was within the neighborhood of some

8    asbestos at any time in the last 40 years.

9              MR. ROTH:  Well, that's not true.

10             MR. PLACITELLA:  That's not true.

11             MR. ROTH:  It's actually related to

12   people who may have had talc claims.

13             SPECIAL MASTER:  Okay.

14             MR. ROTH:  I mean, we pled a pretty

15   broad complaint --

16             SPECIAL MASTER:  You did.

17             MR. ROTH:  -- but it's not that broad,

18   your Honor.

19             SPECIAL MASTER:  You did.  I thought it

20   was --  but, you know, I have the number ingrained in

21   my head.  It's paragraph 278.

22             MR. PLACITELLA:  It will be more focused

23   in two weeks.

24             MR. ROTH:  Well, we also agree that it's

25   related to talc.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 98

1          **SPECIAL MASTER:**  No, I lied.   I did not

2     get that right.  I thought it was 278.   Where's the

3     definition?  Oh, here it is.  286.   All persons in

4     the United States and its territories who were

5     exposed to BASF's talc and/or talc products sustained

6     asbestos related injury and prior to the commencement

7     of this litigation either (A) filed a lawsuit or

8     other claim for compensation against BASF and by

9     reason of BASF's statements that its talc and talc

10    products did not contain asbestos or that there was

11    no evidence its talc and talc products contained

12    asbestos settled, withdrew, voluntarily dismissed, or

13    suffered an involuntary dismissal of such lawsuit or

14    claim for compensation; or (B) by reason of BASF's

15    statements that its talc and talc products did not

16    contain asbestos or that there was no evidence it

17    contained asbestos did not file a lawsuit or other

18    claim for compensation against BASF.   Period.

19               The class shall also include those who

20    have had or had the right to claim damages

21    derivatively based upon such exposed person's

22    asbestos related injury.

23               Okay.  That's the class definition that

24    we operate on until Mr. Placitella is going to

25    surprise all of us two weeks from today with a far

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                  Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 99

1    more limited class.

2                   Right, Mr. Placitella?  Don't answer

3    that.

4                   Anything else on that application?

5    Good.

6                   Let's go to the motion concerning the

7    interrogatories.  On December 15, 2017, under ECF

8    285, BASF filed a motion to compel answers to

9    interrogatories -- I'm sorry, Mr. Little, I didn't

10   see you.

11                  **MR. LITTLE:**  Your Honor, if the Bevan

12   firm's presence is no longer required.

13                  **SPECIAL MASTER:**  Does that mean you're

14   going to deny us the joy of your presence?

15                  **MR. LITTLE:**  With your permission of

16   course.

17                  **SPECIAL MASTER:**  Of course.

18                  **MR. LITTLE:**  Thank you very much.

19                  **SPECIAL MASTER:**  You're going to work

20   with these folks in getting --

21                  **MR. LITTLE:**  Absolutely.

22                  **SPECIAL MASTER:**  -- the information?

23   Thank you very much.  I appreciate you coming down.

24   Have a safe a trip home.

25                  **MR. LITTLE:**  Yeah.  Thanks for

Page 100

1    accommodating my trial schedule.

2            **SPECIAL MASTER:**  That's why I wanted to

3    take you first, because you don't have a dog in the

4    fight for the rest of this.

5            **MR. LITTLE:**  Thank you, your Honor.  I

6    appreciate that.

7            **SPECIAL MASTER:**  We have two sets of

8    interrogatories that are at issue.

9            The first set of interrogatories was

10   propounded on October 23rd, 2015.  And the second set

11   of interrogatories was propounded on November 7,

12   2017.

13           In respect of the first set of

14   interrogatories, BASF states that the plaintiffs have

15   failed to supplement their answers after subsequent

16   discovery rulings and that the August 3, 2017,

17   decision by Chief Judge Linares re a waiver had the

18   result that answers were to be provided pursuant to

19   the proposed form of order that was submitted.

20           We can do very short work of that.

21   Everyone consents to the entry of that proposed form

22   of order.  So we're not going to spend a whole lot

23   of time talking about the first set of

24   interrogatories.

25           **MR. FARRELL:**  I think the proposed order

Page 101

1    was overtaken by the amended interrogatories that

2    were provided by the plaintiffs, which in our view

3    were still deficient and were the subject of the

4    e-mail that we sent to your Honor.

5              **SPECIAL MASTER:**  Okay.  We'll come back

6    to that.

7              **MR. FARRELL:**  Okay.

8              **SPECIAL MASTER:**  You guys and your

9    e-mails.

10             In respect of the second set of

11   interrogatories, BASF states that they are seeking

12   what plaintiffs' alleged damages are, plaintiffs'

13   alleged, quote, original, unquote, documents, and

14   third, facts in support of plaintiffs' class action

15   or class certification motion, which has not yet been

16   filed.

17             As to damages, which are addressed in

18   interrogatory 1 of the second set, BASF seeks the

19   amount of damages, the method of calculating damages,

20   the basis for calculating damages, and how the

21   damages here differed from damages sought in the

22   underlying cases.

23             In respect of the original documents,

24   which is interrogatory number 4 of the second set,

25   basically BASF says that we were required to produce

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 102

1    originals, they should be required to produce

2    originals.  And their complaints as to originals

3    we're just repeating, which may not have been the

4    best thing for you guys to say.

5              The third category is class

6    certification.  And those are interrogatories 2, 3,

7    5, 6, 7, and 8 of the second set of interrogatories

8    that seeks information about the putative class and

9    class certification.

10             And BASF says we're fine if that

11   information gets produced contemporaneous with the

12   filing of the class certification motion.

13             Now, you said that at the time when you

14   thought that was happening today.  But I'm sure that

15   you'd be happy to get it two weeks from today also.

16             On December the 20th under ECF 390,

17   scheduling order number 4 set forth the schedule for

18   the filing of oppositions and replies.

19             On December 27, 2017, under ECF 396 the

20   plaintiffs filed their opposition where they agreed

21   to the entry of the proposed consent order, which was

22   docketed under ECF 384-12.

23             Therefore, the motion in respect of the

24   first set of interrogatories was moot.

25             The problem is I have since then

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 103

1   received an e-mail dated January 5, 2018, from Mr.

2   Farrell that basically says we got non-answers.   I

3   think that was more kindly said than you said it.

4           In respect of the second set of

5   interrogatories, the plaintiffs allege that the

6   second set of interrogatories are premature and the

7   current responses are sufficient and proper.

8           In respect of interrogatory number 1,

9   again we're talking about the second set of

10   interrogatories, that they are unnecessary and

11   premature, that they deal with damages and we're not

12   there yet.

13           And in respect of interrogatories 2, 3,

14   5, 6, 7, and 8, those too are premature.  These deal

15   with the Rule 23 certification requirements.

16   According to plaintiffs, these are beyond the mandate

17   of hydrogen peroxide, that there will be ample

18   opportunity for discovery once the class

19   certification motion is filed, that the allegations

20   of the inadequacy of the class reps is not supported

21   by law and has nothing to do with pre-certification

22   motion discovery.

23           The plaintiffs state that the request

24   that they serve verified responses with their class

25   certification motion should be denied, that

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 104

1    interrogatory number 4 about original documents seeks

2    information that's not relevant to claims or

3    defenses.

4                On January 3, 2018, under ECF 397, BASF

5    in reply says the information sought is not

6    premature, and again, this is as to the second set of

7    interrogatories, that interrogatory number 1 is not

8    premature and seeks basic damages information that

9    should already have been disclosed, that

10   interrogatories 2, 3, 5, 6, 7, and 8 seek basic Rule

11   23 information, that interrogatory 4, which deals

12   with original documents, response to or is prevented

13   by further discovery concerning BASF's original

14   documents, and in respect of the first set of

15   interrogatories it suggests that the order should be

16   supplemented.

17               Now, to go to Mr. Farrell's January 5,

18   2018, e-mail, where BASF comments on plaintiffs'

19   supplemental/amended answers to the first set of

20   interrogatories.  And he lists seven problems with

21   them.   First, that the general objections remain

22   unchanged.

23               Second, in respect of interrogatory

24   number 1, not a single person is in fact named.

25               Third, that in respect of interrogatory

Page 105

1    number 4, the settlement with other entities without

2    details is not helpful.

3              Number 4, interrogatory number 12, there

4    was no change in the response whether there was a

5    decision to settle with Engelhard.

6              In respect to number 5 in respect of

7    interrogatory number 13, the efforts re the

8    prosecution of claims against Engelhard, nothing

9    substantive was changed in the answers.

10             Number 6, that there were no amended

11   responses or answers to interrogatories concerning

12   plaintiff Wengerd.

13             And number 7, that the Pease and Ware

14   responses were verified by non-parties without any

15   substitution of parties having occurred.

16             It's your motion.  If you want to tell

17   me something I don't already know, please feel free.

18             **MR. FARRELL:**  I think your Honor

19   accurately summarized what our position is, so I

20   won't go back through the whole thing.

21             You did initially note that when we said

22   that for the second set of interrogatories we said

23   that January 15th would be acceptable.  Here we are

24   on January 15th.  I assume we're not getting a second

25   set of interrogatories today.  The point --

Page 106

1          **SPECIAL MASTER:**  No, because I think the

2   discussion was we'll give it to you when we file our

3   motion for class cert.

4          **MR. ASSAF:**  Correct.

5          **SPECIAL MASTER:**  And since that moved

6   two weeks, I assume that plaintiffs also would move

7   that response date two weeks.

8          **MR. FARRELL:**  Well, that was the point I

9   wanted to make is that plaintiffs' opposition

10  actually said they won't even give us the responses

11  with their class motion, that the responses would

12  come at some undefined point later in time.

13         **SPECIAL MASTER:**  Well, okay, that date's

14  not going to be undefined, so you can get past that.

15         **MR. FARRELL:**  Okay.  So the crux of the

16  issue is there's no factual information provided at

17  all and no timeline for provided providing it.

18         Your Honor correctly noted that it falls

19  into three categories.  And let me speak to each of

20  the three briefly because I think some of them are

21  easier to knock out than others.

22         First, on plaintiffs' damages, which is

23  interrogatory number 1 in the second set, it's really

24  not a class related interrogatory.  It's about the

25  six plaintiffs' individual damages.  There's no

Page 107

1    prematurity issue or any other issue that turns on

2    the class motion.

3            In fact, Rule 26(a) calls for the

4    disclosure of damages information as one of the very

5    first things that is supposed to occur in discovery

6    in a case.

7            That hasn't occurred here.  And we did

8    get initial disclosures, but no damages information

9    was provided.

10           Your Honor raised this issue as well at

11   the October 2017 hearing.  And plaintiffs couldn't

12   answer the Court's questions about what their theory

13   of damages was.

14           All we're saying is here we are several

15   months into the discovery, regardless of whether a

16   class could be or would be certified in this case,

17   we're entitled to the plaintiffs' theory and basis

18   for their individual damages claim.  And that hasn't

19   been provided.

20           So I don't think that one turns on the

21   timing of the class motion at all.  It should just be

22   ordered to provide the information to the defendants

23   since it's long overdue given what Rule 26(a) says.

24           **SPECIAL MASTER:**  Okay.  Are you done

25   with interrogatory 1?

Page 108

1      **MR. FARRELL:**  Yes.

2      **SPECIAL MASTER:**  Who's responding on

3  plaintiffs' behalf?

4      **MR. ROTH:**  Mr. Coren.

5      **SPECIAL MASTER:**  Whoa.  I think you just

6  got thrown under the bus there, Mr. Coren.

7      **MR. ROTH:**  No, I'm kidding, your Honor.

8  I just wanted to see --

9      **SPECIAL MASTER:**  See if he was still

10  awake.

11      **MR. ROTH:**  See that reaction.

12      Your Honor, we do view it as part of the

13  class issue here.  And the reason being that --

14      **SPECIAL MASTER:**  Let me ask you this

15  question.

16      **MR. ROTH:**  Yes, sir.

17      **SPECIAL MASTER:**  Are you going to

18  respond to interrogatory number 1 in the second set

19  in a meaningful way on the 29th of this month?

20      **MR. ROTH:**  All of the information

21  regarding the class and how we intend to prove it I

22  believe is --

23      **SPECIAL MASTER:**  That's not my question

24  to you.  My question to you is --

25      **MR. ROTH:**  Do you mean in addition to --

Page 109

1          **SPECIAL MASTER:**  My question to you is I

2     was given one representative set of interrogatories

3     which were as to plaintiff Kimberlee Williams.  And I

4     assume that identical --

5          **MR. ROTH:**  Correct.

6          **SPECIAL MASTER:**  -- were issued as to

7     each one of the named representative plaintiffs.

8               And interrogatory number 1 says, and I

9     quote:  Describe all damages, losses, harm, or other

10    relief which you, it's capital Y, which is defined as

11    Miss Williams, contend BASF is responsible, including

12    but not limited to:  (A) the amount of damages, loss,

13    harm, or other relief, (B) the method for calculating

14    that damage, loss, harm, or other relief, (C) the

15    basis for calculating that damage, loss, harm, or

16    other relief, and (D) how that damage, loss, harm, or

17    other relief differs if at all from the damages

18    decedent claimed in his original complaint in the

19    underlying action.  And decedent is a defined term

20    and underlying action is a defined term.

21               Are you going to produce responses in

22    respect of all six of the named representative

23    plaintiffs that answer interrogatory number 1 on

24    January 29th?

25          **MR. ROTH:**  I don't know, your Honor.

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Monday
C.A. No. 2:11-cv-01754-JLL-JAD  Oral Argument  January 15, 2018

Page 110

1 And I don't think so.

2    **SPECIAL MASTER:**  Okay.

3    **MR. ROTH:**  I mean, unless there's an

4 order obviously.

5    **SPECIAL MASTER:**  Okay.

6    **MR. ROTH:**  But --

7    **SPECIAL MASTER:**  If there's an order

8 will you provide it?

9    **MR. ROTH:**  Let the record reflect I'm

10 smiling, your Honor.

11    And if there's an order, I would.  But I

12 would submit to your Honor that it remains premature

13 given what the nature of this class may be and --

14    **SPECIAL MASTER:**  Well, but you're going

15 to be able to define that --  I mean, regardless of

16 how the class is defined, you have six representative

17 plaintiffs who are named.   Okay.

18    Interrogatories have been propounded to

19 each one of those representative plaintiffs.   And

20 the answer is:  Are those representative plaintiffs

21 whose case goes on with or without a class

22 certification motion, whether you're going respond in

23 respect of those six?

24    And don't answer, because you did answer

25 already.  You said:  If I get ordered to I will.

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 111

1          So I guess the ball is now in my court.

2          **MR. ROTH:**  Well, my hesitation, your

3     Honor, was only one with respect to timing.  Will we

4     answer those?  Yes, we will.

5          But I am not certain, your Honor, that

6     we will have the trial expert testimony, which would

7     be part of a damage -- a response to damages

8     interrogatories prepared for these individual

9     plaintiffs.

10          **SPECIAL MASTER:**  Okay.

11          **MR. ROTH:**  And that's really what my

12     hesitation was.  Not if, but when.

13          **SPECIAL MASTER:**  All right.  Well,

14     you're going to do the best you can, I'm sure.

15          But I will note for the record that

16     these interrogatories were originally propounded on

17     November the 7th of 2017.  So they have been out

18     there for over two months.

19          **MR. ROTH:**  Yes, your Honor.

20          **SPECIAL MASTER:**   All right.   That

21     deals with interrogatory number 1 of the second set.

22          Talk to me about, Mr. Farrell, about

23     interrogatory number 4.

24          **MR. FARRELL:**  So this deals with the

25     question of original documents.  And on this one we

Page 112

1    tried to explain the background for the issue in the

2    brief.

3                    But if I could just expand on that

4    briefly, our view, the defendant's view or BASF's

5    view is that the original documents issue is frankly

6    a red herring.  It's one that the plaintiffs have

7    created.  And they created it because they initially

8    alleged in this case that BASF had destroyed all

9    sorts of relevant information, all sorts of documents

10   concerning the talc business.

11                   BASF then found hundreds of those

12   documents and produced them.  And so plaintiffs then

13   shifted their position and said:  Well, you found

14   copies but you didn't find originals, where originals

15   they mean I want the actual blue ink version of this

16   document from 1975, not the copy that you found.  So

17   we have --

18           SPECIAL MASTER:  Okay.  You can stop

19   there.

20                   Mr. Roth, tell me the basis of your

21   argument based on Federal Rule of Evidence 1003.

22           MR. ROTH:  For which part, your Honor?

23   We have produced --

24           SPECIAL MASTER:  Demanding -- the whole

25   business about producing documents that are either

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD            Oral Argument            January 15, 2018

Page 113

1    originals or copies.

2                  **MR. ROTH:**  That we demanded?

3                  **SPECIAL MASTER:**  No.  They've demanded

4    it from you.

5                  **MR. ROTH:**  Right.  We've produced

6    copies, your Honor.  They're talking about

7    originals.

8                  **SPECIAL MASTER:**  They're saying if you

9    have originals --

10                  **MR. ROTH:**  They're upset that we had

11   sought original documents like micrographs.  They're

12   upset that we had reason to question when original

13   documents were produced, for instance, learning about

14   a piece of correspondence months after depositions

15   were done.

16                  They're upset that we made a defendant

17   or the successor to a defendant search for original

18   evidence and now have sought from the victims of a

19   fraud perpetrated originals, not copies.

20                  **SPECIAL MASTER:**  Alleged fraud.  Fraud

21   hasn't been proven yet.

22                  **MR. ROTH:**  I'm sorry, I thought I -- it

23   is an alleged fraud, your Honor.  You're correct.

24                  And so they're upset that we have sought

25   that information, particularly where some of these

Page 114

1    original documents are relevant.

2                    We have -- or may be relevant, your

3    Honor, in the form of actual scientific results from

4    studies that are done.

5                    The quality is different if it is an

6    original or a copy.  And I'll let Mr. Placitella

7    speak to that if you need more information.

8                    There is no basis for --  so now they

9    have sought to have these people who are not the

10   original plaintiffs in the underlying cases go look

11   for originals because the copies that we produced are

12   apparently not adequate.

13                   It is disproportional.  It is for the

14   purpose of, you know, getting back at the lawyers who

15   have sought information.

16                   **SPECIAL MASTER:**  So they're just being

17   cranky is what you're saying?

18                   **MR. ROTH:**  Okay.

19                   **MR. FARRELL:**  It's not function of being

20   cranky and it's not a function of being upset, your

21   Honor.  The issue --

22                   **SPECIAL MASTER:**  I know you're never

23   cranky.  But Mr. Assaf gets cranky every so often.

24                   **MR. FARRELL:**  Well, he's not even cranky

25   about this one.

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD            Oral Argument            January 15, 2018

Page 115

1            **MR. ASSAF:**  No, I'm not, because it's

2      just -- believe me.

3            **MR. FARRELL:**  This is again in the

4      category of goose and gander.   The plaintiffs'

5      demands of BASF were not limited as just described by

6      Mr. Roth to photomicrographs and so on.

7                  The deposition that Mr. Placitella

8      referred to of the BASF corporate representative that

9      lasted for three days, a notice that has been served

10     in this case too on identical grounds calls for

11     things like the original, quote/unquote, deposition

12     transcripts from 1983.

13            **SPECIAL MASTER:**  Help me out here, Mr.

14     Farrell.   None of that has occurred in this case.

15            **MR. FARRELL:**  It has occurred in this

16     case.

17            **SPECIAL MASTER:**  Okay.  Has it occurred

18     since I've been appointed?

19            **MR. FARRELL:**  No.

20            **SPECIAL MASTER:**  Okay.   Because my

21     answer would have been very simple.  Those of us who

22     learned evidence from Irving Younger, and there are

23     few of us old enough in this room to say that, know

24     about the best evidence rule, okay, which is codified

25     in the federal rules, Rule 1002, 1003.

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Monday
C.A. No. 2:11-cv-01754-JLL-JAD  Oral Argument  January 15, 2018

Page 116

1    And it basically says that unless you

2 are attacking the authenticity of the copy, a copy is

3 just as good as an original.

4    And I haven't heard anybody attack the

5 authenticity of a copy, that it somehow was marked up

6 in a way that changed it from the original or

7 something goofy happened in respect of it.

8    So I would have said:  Why are you

9 arguing about originals, unless you're telling me

10 that something awful happened to the original and

11 therefore there's a problem.

12    So if the sauce is good for the goose

13 and the gander, I would say to you what I would have

14 said to them had the application been before me,

15 which is:  Come on, guys, it's the year of our Lord

16 2018.  We are well past documents being done by

17 scriveners using quill pens.  Copies are used all the

18 time.

19    I can tell you at this firm as well as

20 I'm sure all of the firms involved in this lawsuit,

21 you know, nobody keeps paper copies anymore.

22 Everything's electronic.  And when you need it, you

23 print it out.

24    So let's not get too crazed about that.

25    **MR. FARRELL:**  I couldn't agree more,

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 117

1    your Honor.  And I think we said as much in our

2    papers.  If the original, quote/unquote, documents

3    issue is removed from the case and the copies are as

4    good as originals, we are more than happy with that.

5            SPECIAL MASTER:  Well, why don't we wait

6    to see what Mr. Placitella and Mr. Roth produce.  If

7    there's a problem in respect of the authenticity of

8    the copies, we'll deal with those.

9            MR. ROTH:  Your Honor, we've been

10   producing documents.  We've identified the documents

11   we've produced.

12           The dispute here is originals.  And

13   let's be clear.  And I don't -- only because Mr.

14   Farrell has raised it.  We haven't filed a motion on

15   this.  It is not before your Honor.

16           This is not a goose/gander situation.

17   Number 1, we've got clients who were told their cases

18   were meaningless or nonexistent.   It's the Rosenblit

19   situation.  What they have, they have.  We've

20   produced it.

21           Number 2 -- and again, I don't want to

22   get into -- I forget the ballet phrase that you used.

23           SPECIAL MASTER:  Lateral arabesque.

24           MR. ROTH:  Okay.  I don't want to --

25   I'm throwing a little bit of a lateral arabesque.

Page 118

1    But the difference is --

2              SPECIAL MASTER:  You don't look well

3    doing it.

4              MR. ROTH:  With or without a beard.

5    The --

6              SPECIAL MASTER:  Did I throw you off?

7    Sorry.

8              MR. ROTH:  Again, there's so much to

9    unpack here, your Honor.

10             SPECIAL MASTER:  I know.

11             MR. ROTH:  I have myself in tights.  I

12   used to be able to --

13             SPECIAL MASTER:  Oh, please.  That's

14   way -- that's a hundred thousand dollars right there

15   of psychiatric treatment.  So let's not go there.

16             MR. COHEN:  It will take weeks to get

17   that image out of my head.

18             MR. ROTH:  Some of the discovery

19   depositions, for instance, that had been at issue

20   that were taken in the 80s, we haven't gotten all the

21   exhibits.  There have been pages missing.  That's a

22   fight for another day.

23             But I highlight for your Honor and I

24   appreciate your reminder about the best evidence

25   rule, which should have been number one in my

Page 119

1    response.

2                    **SPECIAL MASTER:**  I wondered why no one

3    raised it.  And I figured that just those of us who

4    had the benefit of Irving Younger as our teacher

5    would know that.

6                    **MR. FARRELL:**  BASF, your Honor, last

7    been raising it for approximately five years in

8    response to Mr. Placitella's demand for original,

9    quote/unquote, documents from 40 years ago that we

10   have copies and copies are as good as originals.

11                   That is what gave rise to our

12   interrogatory was the fact that Mr. Placitella was

13   not satisfied by the copies and has claimed to have a

14   standard for spoliation that rises and falls on

15   having the blue inked original documents as opposed

16   to copies is what brought us to the goose/gander

17   issue of if that's the standard for spoliation, then

18   Mr. Placitella needs to live by it as well.

19                   **MR. ROTH:**  And our clients have not been

20   accused of spoliating evidence.

21                   **SPECIAL MASTER:**  Well, they don't know

22   yet.  And that's their point.  They don't know enough

23   to be able to say that.

24                   **MR. ROTH:**  As we sit here now, your

25   Honor, they have not been, nor do they have the same

Page 120

1    duty that BASF has.  And I think --

2             **SPECIAL MASTER:**  Well, all parties have

3    a duty to preserve evidence that they intend to rely

4    on or that the other side should have been able to

5    rely on.  We all agree to that.

6             We also need to all agree that we need

7    to stop this tit-for-tat stuff.  Okay.   It's

8    unbecoming to everybody.  It's just unbecoming.

9             And I understand, believe me, I

10    understand that when you're in the middle of a swamp

11    and you're up to your rear end in alligators, it's

12    hard to remember that your purpose was to drain the

13    swamp.

14             But we're trying to drain the swamp

15    here, guys.  So let's try to keep our eye on that

16    prize and make sure we get to where we need to go.

17             I think I've made it clear enough what I

18    think is the standard for admissibility of documents.

19    I don't think that Chief Judge Linares has a

20    different view of that.   So how about we stick to

21    that.

22             If you get a copy -- and I'm telling

23    this to everybody.  If you get a copy and you have a

24    legitimate reason to think that there is something

25    wrong with that copy, then absolutely you have the

Page 121

1    right to demand the original.

2              But short of that, in this day and age,

3    I will tell you I have tried entire cases where every

4    document that was produced in the courtroom, and

5    there were hundreds of thousands of them, were done

6    electronically.  There wasn't a piece of paper in the

7    courtroom.

8              And if you could do that at trial, you

9    certainly ought to be able to do that in discovery.

10             Yes, Mr. Placitella?

11             **MR. PLACITELLA:**  I agree with what your

12   Honor said.

13             Mr. Farrell as an advocate does not

14   accurately state my position.   And that is not an

15   accurate characterization of my position.

16             And when he files his motion for summary

17   judgment on spoliation, I will articulate my position

18   adequately.  And I will tell you that it will be

19   consonant and consistent with what you've articulated

20   here.

21             **SPECIAL MASTER:**  Well, that means that

22   you're a very smart guy.   Okay.

23             So now that we have resolved -- and

24   we're going to come back to these -- but

25   interrogatories 2, 3, 5, 6, 7, and 8 of the second

Page 122

1    set.  These are class cert interrogatories.  What's

2    the problem with those?

3              MR. ROTH:  I'm sorry?

4              SPECIAL MASTER:  What's the problem with

5    responding to those?

6              MR. ROTH:  We'll respond to those, your

7    Honor.  But it's all going to be information that's

8    going to be in our class cert motion.

9              SPECIAL MASTER:  Okay.  But you're going

10   to file amended answers to interrogatories 2, 3, 5,

11   6, 7, and 8 of the second set of interrogatories on

12   the 29th of this month?

13             MR. ROTH:  No, your Honor.  There

14   are --

15             SPECIAL MASTER:  Yes, you are.

16             MR. ROTH:  Well, what I meant, your

17   Honor, was --

18             SPECIAL MASTER:  I tried to say that

19   politely, but you're not letting me.

20             MR. ROTH:  Not withstanding --

21             SPECIAL MASTER:  This is like having a

22   discussion with your wife.  You're not going to win,

23   okay.

24             MR. ROTH:  Right.  And you know what

25   the challenge is, your Honor.  It's the same thing I

Page 123

1    have when I have a conversation with my wife.  I

2    think it's actually a conversation.  Right.   I

3    understand that now, your Honor.  It's not.  But --

4              **SPECIAL MASTER:**  It's like when my wife

5    says to me:  You don't want dessert, do you?

6              **MR. ROTH:**  Right.

7              **SPECIAL MASTER:**  Okay.

8              **MR. PLACITELLA:**  I'm going to just jump

9    in here and try to save the both of you --

10             **SPECIAL MASTER:**  Okay.

11             **MR. PLACITELLA:**  -- on the wife issue

12   and move on.

13             **SPECIAL MASTER:**  Okay.   Thank you.

14             **MR. ROTH:**  Each and every person who

15   filed an action against BASF based upon their

16   exposure to Amtal talc, at this point, your Honor,

17   that's information that we do not yet have.   What we

18   do --

19             **SPECIAL MASTER:**  Do the best you can.

20             **MR. ROTH:**  Well, what we know is that's

21   information that Kirkland & Ellis and BASF have.

22             **SPECIAL MASTER:**  But they're entitled to

23   test that information based upon your information.

24             The mere fact that they already have

25   that information does not relieve you as a party to

Page 124

1   this lawsuit to producing information that's in your

2   control.

3           **MR. ROTH:**  The information that we

4   have -- well, that's fine, your Honor.  I submit to

5   you -- because I can tell you now without a plaintiff

6   who doesn't know and will be relying on counsel's

7   advice that we're not going to be able to answer the

8   question of who each and every person is who filed a

9   lawsuit against BASF.

10          **SPECIAL MASTER:**  But what I do know is

11  that you're going do the best you can.

12          **MR. FARRELL:**  As your Honor might have

13  guessed, part of the reason we asked the question is

14  because we thought the answer would be they don't

15  know.

16          **SPECIAL MASTER:**  They don't know.

17  Listen, everything --

18          **MR. ROTH:**  And that's right.  And that's

19  going to be the answer for some of these -- for

20  these.  And that isn't relevant to the issue of

21  whether or not we can get the class we seek certified

22  at this point in time.

23          **SPECIAL MASTER:**  All right.

24          **MR. ROTH:**  Is it possible for us to

25  learn that?  Yes, it is.  Do we need to know it to

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD            Oral Argument            January 15, 2018

Page 125

1    get class certification or for the case to move

2    forward?  Respectfully, no, we don't.

3            **SPECIAL MASTER:**  Okay.  Well, I'll make

4    this clear again --

5            **MR. ROTH:**  Oh, no, I got it.

6            **SPECIAL MASTER:**  -- when I issue the

7    decision.  But I'm not asking anybody to make things

8    up.  I'm asking you to do the best you can to give

9    us meaningful responses to the interrogatories.

10            And candidly, I think the rule of thumb

11    everybody should follow is think if I were

12    propounding these interrogatories, what kind of

13    response, what caliber of response would I like to

14    see back?  Okay.  It's a variant of the golden rule.

15    Use that as your standard and you'll be fine with me

16    as far as --  I'm not going to ask you to produce

17    what you don't have.  I'm not going to ask you to

18    produce something there's no way you can know it.

19            But what I am going to ask you to do is

20    to do the best you can under the circumstances.  And

21    if you can't, you can't.  Tell us that.  And we'll

22    deal with it.

23            And if you can produce 50 percent but

24    not 100 percent, tell us that too.

25            But what I want to see is a legitimate,

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD      Oral Argument      January 15, 2018

Page 126

1   bona fide effort by people to respond to

2   interrogatories.  I want to see answers that are

3   responsive.  And I'm going to get to that in one

4   moment.  But they need to be responsive, because to

5   give everybody fair notice, if we have to revisit

6   these issues, they will come with sanctions.  Okay.

7   I don't want to do that.

8           I think you've gotten a sense already

9   from me that that's not the way I like to operate.

10          But at some point or another, and it

11   applies to everybody in this lawsuit, at some point

12   or another people got to do what they've got to do

13   and that which they are obliged to do under the

14   rules.  And that is provide meaningful answers.  And

15   in doing so, do the best that you can.  And if you

16   can't respond to something, say why you can't.

17          But using amorphous language, to put in

18   a lot of words and say nothing is not helpful.  It's

19   just not helpful.

20          Just like I find people do general

21   objections and they throw everything and the kitchen

22   sink in.  There are courts, federal courts in this

23   country that will sanction you if you do that.  They

24   won't give you a second chance.  You're going to get

25   sanctioned.

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD            Oral Argument            January 15, 2018

Page 127

1             And in fact, there are some judges I

2     know that if you use any general objections, they

3     will sanction you because they don't think that

4     that's satisfactory based upon a party's obligations

5     to disclosure under the rules.

6             Now, I'm not going to be that crazed, at

7     least not in respect of that point.

8             But we need to get answers.  They

9     propounded interrogatories properly.  It's the

10    obligation of the responding party to respond.   And

11    if you want to object, you can object.   But unless

12    you have a legitimate objection, you have to respond.

13            And frankly, I'm of the view that even

14    if you have an objection, you state your objection,

15    but then you say without waiving the objection,

16    here's the answer.   And do the best that you can.

17            **MR. ROTH:**  Which we have done in some of

18    these responses, your Honor.  And I point to

19    interrogatory number 6.

20            But I understand your Honor's comments

21    and look forward to hearing your Honor's order.

22            **SPECIAL MASTER:**  Okay.  Now, in respect

23    of the original interrogatories, one of the questions

24    that I had as I was going through all of this was:

25    Have the answers been provided?

USDC, District of NJ              Williams, et al. v. BASF Catalysts, LLC, et al.              Monday
C.A. No. 2:11-cv-01754-JLL-JAD              Oral Argument              January 15, 2018

Page 128

1          And Mr. Farrell's January 5th e-mail

2     answers answered that for me.   And I printed out the

3     marked up versions that Mr. Farrell was kind enough

4     to provide me.   And I printed them out in color

5     because I wanted to see what the differences were in

6     a stark way.

7          And I will tell you that my conclusion

8     was that all of the changes that were made were

9     non-substantive.   They were changing from active

10    voice to passive voice or vice versa.   It was an

11    exercise in grammar and not an exercise in responding

12    to interrogatories.

13          So I will tell you that in respect of

14    the answers to interrogatories that were provided and

15    the amended answers to interrogatories that were

16    provided, they are both deficient in my view.

17          And I'm going to ask you to go back and

18    take a hard look.   And the only thing that's being

19    pressed in respect of the first set of

20    interrogatories is interrogatory number 1.   Okay.

21    I want you to go back, take a real hard look at

22    interrogatory number 1 from the first set of

23    interrogatories, which is the damages calculation.   I

24    think that's correct.

25          **MR. ROTH:**  It's the second set, your

Page 129

1    Honor.

2              **SPECIAL MASTER:**  Oh, that's the second

3    set.  Let me make sure that I've got --

4              **MR. FARRELL:**  In the first set of

5    interrogatories, there were three or four of them.

6    It was number 1 on the identity of individuals.

7              **SPECIAL MASTER:**  I'm sorry.  We got

8    this -- you put the second set first in your

9    submission.   Now why do you have to do that to me?

10             **MR. ASSAF:**  That was a debate actually.

11             **MR. FARRELL:**  Because we --

12             **SPECIAL MASTER:**  Whoever said put the

13   second set first lost.  Don't tell me who it was.

14             **MR. FARRELL:**  We thought the first set

15   was going to be resolved by agreement is part of the

16   reason.

17             But as to the first set, the ones that

18   were the problems were number 1 with regard to

19   identifying individuals.

20             **SPECIAL MASTER:**  I have it in front of

21   me.  Just give me the numbers.

22             **MR. FARRELL:**  Okay.  Number 1, number 4,

23   number 12, and number 13.

24             **SPECIAL MASTER:**  Number 1, 4, okay.

25   Let's deal with number 1.   I mean, that's an

USDC, District of NJ             Williams, et al. v. BASF Catalysts, LLC, et al.             Monday
C.A. No. 2:11-cv-01754-JLL-JAD             Oral Argument             January 15, 2018

Page 130

1    incredibly -- do you have those, Mr. Roth?

2             **MR. ROTH:**  I do, your Honor.

3             **SPECIAL MASTER:**  Okay.  Number 1 is

4    about as typical an interrogatory as they come.

5             Do the best you can.  I understand

6    you're dealing with lay people who were not involved

7    in it in the first place.  You know, just do the

8    best you can.

9             **MR. ROTH:**  So just generally, your

10   Honor, and I'm happy to go through these with you,

11   but let's be clear what we're dealing with.

12            Because of the success of the fraudulent

13   scheme that we allege in the second amended

14   complaint, the people with direct knowledge who were

15   directly involved in decision making are dead in

16   these cases.  We've said that in these responses,

17   that I don't have personal information.

18            **SPECIAL MASTER:**  Okay.

19            **MR. ROTH:**  And so I was listening to

20   your comment about what response I would want if I

21   propounded interrogatories.

22            I've told defense counsel what they

23   already presumably know, that the representative

24   plaintiffs were not directly involved in the decision

25   making regarding their case and provided them with

Page 131

1    the information and documents upon which counsel

2    would have relied.

3                  They don't have direct information.  And

4    so it is upon information and belief.

5                  And in response to interrogatory number

6    1, it is her counsel, which is Mr. Bevan in this

7    case, and people identified in the Rule 26

8    disclosure, which would have been other lawyers.

9                  But I cannot create an answer and

10   provide answers to information that plaintiffs here,

11   who sometimes are not a surviving spouse but are a

12   child or in the case of the substituted -- the people

13   who we are going to substitute, are even further down

14   the line, do not have that information.

15                 And we were clear in our responses that

16   I don't have personal information.  I was not

17   involved in the decision making pertaining to my

18   husband's case.   That's the response from Miss

19   Chernick.

20                 But in an effort to provide defendants

21   with some of the information that we could, that as

22   lawyers have, because they're going to be verified by

23   a client and it's not direct, upon information and

24   belief here are the documents that were relied upon.

25                 So I understand that you want us to take

Page 132

1   a look at these and that your view was that these are

2   sub --  not responsive.  And I want to push back on

3   that a bit, your Honor, and I'm happy to look at

4   these.

5           But I will tell you that these women,

6   because of the passage of time of a family that was

7   told you have no claim against us, or if you do, it's

8   worth nothing because there is no asbestos in our

9   talc, are justifiably saying I don't know, because I

10  didn't make those decisions.  I don't know who the

11  witnesses were.  I was a child.

12          And they're going to have a chance to

13  depose Mr. Bevan or other counsel.

14          But we were very clear in those

15  responses.

16          **SPECIAL MASTER:**  Here's the problem,

17  okay.  And, you know, discovery doesn't exist in a

18  vacuum.  Discovery exists for purposes of defining

19  proofs at trial.

20          **MR. ROTH:**  Yes, your Honor.

21          **SPECIAL MASTER:**  What are you going to

22  do at trial, produce a plaintiff that says I don't

23  know?

24          **MR. ROTH:**  Yes.

25          **MR. PLACITELLA:**  Yeah.  And they're

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Monday
C.A. No. 2:11-cv-01754-JLL-JAD            Oral Argument            January 15, 2018

Page 133

1    going to say I don't know because I was defrauded.

2              **MR. ROTH:**  And we're going to have their

3    family's lawyer testify and describe what happened.

4              **SPECIAL MASTER:**  I was defrauded and no

5    one spoke to me?  No one made any reference to me?

6    Nobody made any representations to me?  How were you

7    defrauded when nobody made any misrepresentation to

8    you?

9              **MR. ROTH:**  These are the representatives

10   of the decedents' estates that we're talking about

11   here.

12             **SPECIAL MASTER:**  Bingo.

13             **MR. ROTH:**  That's right.

14             **SPECIAL MASTER:**  And they as

15   representatives don't get it both ways.  They don't

16   get to say:  I know nothing, but I can make the

17   claim.

18             They as representatives are obliged, as

19   far as I am concerned, to do as much as they can to

20   act in the stead of the decedent.

21             And if that means that they have to

22   search a little bit further and they have to make

23   additional inquiries, that's their job.  But they

24   don't get to sit there and say:  I'm like Sergeant

25   Schultz, I know nothing, and yet still present a

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 134

1   claim.

2           **MR. ROTH:** And with respect, your Honor,

3   that's not what they said here. And they get to rely

4   on their lawyers, which is us who are doing the

5   investigation, and their lawyers who informed their

6   family.

7           And in that regard, it's no different

8   than a wrongful death case where the representative

9   can't testify about what a physician or a product

10   manufacturer warned their decedent about, but they

11   have the right to go forward despite their not having

12   that same firsthand knowledge. And here --

13           **SPECIAL MASTER:** But they have the

14   obligation to produce something more than just I

15   don't know, because then they don't make out their

16   case.

17           **MR. ROTH:** And so they went beyond

18   saying I don't have personal knowledge, your Honor.

19           But in these responses we've said upon

20   information and belief, here's what was done to

21   prosecute the case against Engelhard, and here's what

22   I understand was the basis for that decision.

23           Don't forget, these are interrogatories

24   addressed to individuals who are being -- you know,

25   they're asked to verify those. So they cannot say

Page 135

1    I've learned this, nor are they as individuals

2    expected to do the investigation.  That's what

3    they've hired lawyers like us for.

4              And so in responding to the

5    interrogatories, where we've gone beyond just

6    claiming a general objection or an attorney/client

7    privilege, forget for a moment that -- and we've had

8    this discussion, I'm not retreading over it, our

9    disagreement about what causation means in this case.

10   Right.  Did it cause the underlying case or did the

11   alleged lie cause them to make decisions?

12             We've gone further in the answers to

13   interrogatories to say upon information and belief,

14   here are the litany of documents, here's the

15   correspondence that our counsel relied upon that they

16   would have reviewed with our family.

17             But they cannot say I know this is what

18   happened when they didn't know what happened.

19   That's the tension here where we -- because of what

20   happened when these cases existed, the original

21   plaintiffs do not exist.

22             **MR. FARRELL:**  Your Honor, frankly, I

23   think that the information and belief formulation

24   that Mr. Roth is just describing is even worse than

25   just getting a response that says I don't know,

Page 136

1   because then you enter the scenario that we had in

2   the two plaintiffs who were deposed last year, which

3   is that they say I don't know, but I know that the

4   complaint says X, Y, and Z, and I know something

5   really bad happened here supposedly.

6          And there's no way for the defendants to

7   test those facts because you're dealing with somebody

8   who is essentially just spouting hearsay from a

9   complaint instead of factual information within their

10   possession, custody, or control.

11         **SPECIAL MASTER:** Well, except that by

12   testifying that way, they're bound to it at trial.

13   They can't come up with something else at trial.

14          So when they take the stand, I assume

15   that you or some other equally fine lawyer at

16   Kirkland is going to say, as soon as the witness is

17   tendered, you're going to say: Your Honor, may I

18   voir dire the witness on competence? Competence.

19          And if they're not competent to testify

20   because they either had no perception, had no memory

21   of the perception, or had no ability to communicate

22   the memory of the perception, they're not competent.

23   So I don't know, but I assume because a complaint was

24   filed something awful happened.

25         **MR. FARRELL:** I completely agree.

Page 137

1            **SPECIAL MASTER:**  Okay.  So that's not a

2  bad answer for you.

3            **MR. FARRELL:**  So then there's a second

4  category of information, however, and I'm glad that

5  Mr. Roth cited Mr. Bevan as an example of somebody

6  who would know.

7            Why is Mr. Bevan's name not in the

8  response?

9            **SPECIAL MASTER:**  Okay.   Well --

10           **MR. FARRELL:**  Why is -- Mr. Bevan is

11  communicating with a lawyer on the other side.

12           **SPECIAL MASTER:**  Well, Mr. Bevan's name

13  is not in the response, because if they put him in

14  there, that's a waiver of the attorney/client

15  privilege.

16           **MR. ASSAF:**  But you've already

17  determined there's a full waiver.

18           **SPECIAL MASTER:**  Well, I didn't

19  determine that.

20           **MR. ASSAF:**  Chief Judge Linares did.

21           **SPECIAL MASTER:**  Chief Judge Linares

22  did.  Okay.

23           **MR. FARRELL:**  I think that deals with

24  number 1.  The next one --

25           **SPECIAL MASTER:**  Number 4.

Page 138

1           **MR. FARRELL:**  -- was number 4.   This

2   addressed -- and again, we're speaking about the six

3   class representatives here.   Identify all of your

4   claims and dispositions, meaning all of your

5   settlements, and provide information about them.

6           **SPECIAL MASTER:**  Okay.

7           **MR. FARRELL:**  No response has been -- no

8   factual response has been provided to this, even

9   though your Honor has in fact already ordered

10   documents related to this to be produced.

11           **SPECIAL MASTER:**  Except for the amount.

12           **MR. FARRELL:**  That was for putative

13   class members, not for the class representatives.

14           **MR. ASSAF:**  The class reps will get the

15   most.

16           **SPECIAL MASTER:**  Well, do you?

17           **MR. ASSAF:**  I think so.   I think

18   we're --

19           **MR. FARRELL:**  From the October 26th

20   hearing --

21           **SPECIAL MASTER:**  Did I say -- I said

22   back then that you'd get the amounts for the class

23   reps?

24           **MR. FARRELL:**  Your Honor drew a

25   distinction for the six class representatives and

Page 139

1      said for them everything goes.

2                   You did draw a distinction based on the

3      30 Bevan select people.  And then for other

4      putative --

5                   **SPECIAL MASTER:**  The Rothenberg numbers.

6                   **MR. FARRELL:**  Correct.  But for the six

7      class reps we were to get everything with respect to

8      documents.

9                   The interrogatory is essentially the

10     corollary of the document request.  We haven't gotten

11     the information.

12                  **SPECIAL MASTER:**  Okay.  What's the next

13     one?

14                  **MR. FARRELL:**  Number 12.  And I should

15     explain.  For one of the plaintiffs I think the

16     numbering is slightly different because they had one

17     fewer interrogatory.  But I'll explain that number 12

18     is the interrogatory that asks for them to describe

19     the process behind decedent's decision to settle with

20     or dismiss Engelhard, obviously a key issue in the

21     case since that's the whole crux of the allegation.

22     There's been no change -- no substantive change to

23     this response.

24                  After Chief Judge Linares' ruling that

25     the privilege had been waived and that the scope of

Page 140

1    discovery arguments had been rejected, we presume

2    information had been withheld on privilege and other

3    grounds.  Nothing more has come.

4            The other thing I would note is we see

5    again the continued references to the second amended

6    complaint and to information in the possession of

7    former counsel.

8            That information is within the

9    possession, custody, or control of these six

10    individuals and needs to be provided.   There needs

11    to be some explanation that says:  I, Kimberlee

12    Williams, don't know the answer to this, but Tom

13    Bevan does, and here's the information he has.

14            **SPECIAL MASTER:**  Okay.   And that was

15    it?

16            **MR. FARRELL:**  And 13 is the last one.

17            **SPECIAL MASTER:**  Okay.

18            **MR. FARRELL:**  Again, similar to number

19    12, all efforts made by decedent or her counsel in

20    the underlying case to develop and prosecute these

21    claims.

22            Mr. Placitella was just telling us this

23    morning about all of this discovery that's supposedly

24    happened in these cases.   My understanding is a bit

25    different.  But if that's the case --

Page 141

```
 1                    SPECIAL MASTER:  That's what makes

 2      lawsuits.

 3                    MR. FARRELL:  -- it needs to be

 4      described in this answer, again, not by saying the

 5      second amended complaint says X, Y, and Z, but saying

 6      I may not personally know, but Tom Bevan or somebody

 7      else does and here's the information they have.

 8                    SPECIAL MASTER:  Okay.

 9                    MR. ASSAF:  May I have 30 seconds, your

10      Honor?

11                    SPECIAL MASTER:  Tick-tock.

12                    MR. ASSAF:  Okay.  Number 11 slash 12 on

13      the reasons to settle, that's where the rubber hits

14      the road.

15                    And going back to the old school

16      approach of people like Irving Younger, my big

17      beef --

18                    SPECIAL MASTER:  Are you calling me old

19      school?

20                    MR. ASSAF:  My concern --

21                    SPECIAL MASTER:  Notice, he's finessing

22      that answer.

23                    MR. ASSAF:  My concern is that when you

24      put forward an objection that says I object on

25      attorney/client privilege grounds, and then that
```

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 142

```
 1   objection is overruled, presumably when they put it

 2   forward, they had to have some basis to say I'm

 3   withholding information on attorney/client privilege.

 4   Because otherwise --

 5            SPECIAL MASTER:  Not necessarily.  It

 6   could very well be that their view was if this

 7   information exists, it would be within the four

 8   corners of what my attorney has and therefore it's

 9   privileged.

10            You know, you've done that, I've done

11   that, everybody's done that.

12            MR. ASSAF:  But on this issue which was

13   so central to the debate over the last year, that's

14   the thing -- once the Bevan waiver is found by Chief

15   Judge Linares, it's hard to think what -- why isn't

16   that answer amended, because Bevan clearly knows

17   things that he could talk about to the people.

18            Again, that's their decision.  Or they

19   could say I'm not doing it.

20            SPECIAL MASTER:  Okay.  That was 32

21   seconds.

22            MR. ROTH:  So I'm looking at two

23   pages -- two and a half pages of blue print in

24   response to interrogatory 12.

25            SPECIAL MASTER:  Of whose, whose
```

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 143

1    responses?

2              **MR. ROTH:**  I'm getting there.

3              **MR. FARRELL:**  In the Kimberlee Williams

4    example that we submitted to the Court --

5              **SPECIAL MASTER:**  Let Mr. Roth speak.

6              **MR. FARRELL:**  It would be number 13.

7              **SPECIAL MASTER:**  Well, whatever Mr. Roth

8    is looking I want to look at.

9              **MR. ROTH:**  So I'm looking at Ware, which

10   is number 12.

11             **SPECIAL MASTER:**  Who are you looking at?

12             **MR. ROTH:**  Ware, the supplemental

13   responses.

14             **SPECIAL MASTER:**  Donna Ware.  Okay.

15   That I have.  And you want me to look at which?

16             **MR. ROTH:**  I'm looking at response

17   number 12.  It begins on page 9.

18             **SPECIAL MASTER:**  Okay.

19             **MR. ROTH:**  Miss Ware said she was not

20   generally involved -- she was not involved in the

21   decision making with respect to Ralph's case.  That's

22   her husband.  My understanding of what happened

23   comes from the second amended complaint.  Okay.

24             But we'll deal with all these issues.

25             **SPECIAL MASTER:**  And the privileged

Page 144

1    communications with my attorneys --

2                 **MR. ROTH:**  Correct.

3                 **SPECIAL MASTER:**  -- which Chief Judge

4    Linares has said have been waived.

5                 **MR. ROTH:**  Well, I think that's us.

6    And I don't know that our conversations have been

7    waived, your Honor.

8                 **SPECIAL MASTER:**  Well, how do we know

9    that?  How do we know it's with you and not somebody

10   else?

11                **MR. ROTH:**  Well, I know the guy who

12   wrote them, your Honor.  But that's fair.

13                **SPECIAL MASTER:**  Okay.

14                **MR. ROTH:**  And then it goes on to list

15   the documents and information that her lawyer would

16   have relied upon.

17                So with respect to the notion that these

18   responses were not amended, it's just not true.

19                With respect to the notion that we've

20   not provided information regarding these issues in

21   the interrogatory answers, that's not so.  There's a

22   similar answer for each of these defendants from Miss

23   Williams' interrogatories.  For Miss Williams it's

24   number 13.

25                **MR. FARRELL:**  We're talking about two

Page 145

1    different interrogatories, your Honor.  That's what

2    the disconnect is.  The interrogatory that Mr. Roth

3    is currently discussing, and so the record is clear,

4    we're talking about plaintiff Ware, and for plaintiff

5    Ware we're talking about interrogatory number 12.

6    That actually corresponds to interrogatory 13 for

7    Miss Williams.  And I apologize for the confusion,

8    but they're the same.  It is the interrogatory --

9              **SPECIAL MASTER:**  That's all right.

10             **MR. FARRELL:**  It is the interrogatory

11   for Miss Ware, number 12, which asks them to explain

12   all efforts made to develop and prosecute claims.

13             When I said no substantive change had

14   been made, I was talking about the previous

15   interrogatory regarding the process of settling the

16   claim.

17             Now, the point that Mr. Roth just raised

18   is actually a separate issue and an additional

19   deficiency, which is that interrogatory number 12 for

20   plaintiff Ware asks the plaintiff to describe all

21   efforts made to develop and prosecute claims.

22             And instead of getting an explanation of

23   the steps they took to develop and prosecute claims

24   against Engelhard, we got a two page long list of

25   correspondence received from Engelhard's counsel,

Page 146

1   which is not responsive to the interrogatory.

2            **MR. ROTH:**  Well, again, if you look at

3   page 10, while I have no firsthand knowledge, upon

4   information and belief records --

5            **SPECIAL MASTER:**  Page 10 of whose?

6            **MR. ROTH:**  I'm sorry, of the Ware

7   interrogatory.

8            **SPECIAL MASTER:**  Of the Ware --  okay.

9   Because I got a pile of them here.

10           **MR. ROTH:**  Yes, your Honor.

11           **SPECIAL MASTER:**  You got to work with

12   me.  All right.  And of course -- page 10, I'm

13   looking at it.

14           **MR. ROTH:**  Right.   The first full

15   paragraph which is in blue, which means it was

16   amended after the -- describes:  While I have no

17   firsthand knowledge, upon information and belief,

18   records and information obtained by my attorneys

19   indicate that when prosecuting Ralph's case, the

20   Bevan law firm was able to document sales of Amtal

21   talc to the Goodyear aerospace facility where Ralph

22   worked, and that the lawyers were also aware from

23   testimony of witnesses in the facility that

24   whitish/gray talc was used by employees in Goodyear's

25   plant.   However, upon receiving Engelhard/Cahill's

Page 147

1    representations and information that the talc did not

2    contain asbestos, this was not specifically explored

3    in every case.   It is also my understanding that

4    Ralph's lawyers retained experts in support -- to

5    support his lawsuit.

6                    And that's a response to what was done

7    to prosecute the claim, your Honor.

8                    And if with respect to the written

9    communications about why the case was settled that

10   piece should be in interrogatory -- or one of these

11   is in the wrong response, I'm sorry if one of these

12   is responsive to the wrong interrogatory number,

13   shame on me.

14                   But the information has been -- you

15   know, the prosecution is acknowledged.

16                   **SPECIAL MASTER:**  Well, in respect of

17   Miss Ware, it should be 11 and 12 instead of 12 and

18   13.

19                   **MR. ROTH:**  Right.

20                   **MR. FARRELL:**  Correct, your Honor.

21                   **SPECIAL MASTER:**  Finally figured that

22   out.

23                   **MR. FARRELL:**  There's just a bit of

24   apples and oranges going on, your Honor.   The

25   paragraph Mr. Roth just talked about suffers from the

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 148

1    problem related to upon information and belief and

2    information in my attorney's knowledge.

3          **SPECIAL MASTER:**  I understand your

4    concern.  But we have to be a little practical about

5    this.  Okay.  And that is I don't know how they can

6    unscramble this omelette at this point.

7               You have decisions that were made by

8    someone who has been dead for some time now.  We

9    don't know what they said or didn't say to the person

10   who's now their personal representative.  The person

11   who's now their personal representative is filing

12   verified responses saying:  I didn't know about this

13   stuff, but I've read A, B, and C, and if you really

14   want answers, you got to go to my decedent's lawyer

15   at the time who might be able to provide this

16   information for you.

17              And since it's already been determined

18   that whatever attorney/client privilege may have

19   existed between the decedent and his lawyer is now

20   waived based upon the allegations made in the

21   complaint, that information should be produced to

22   you.

23              I read these, the answers in respect of

24   interrogatory 12 and to a certain degree 13 as to

25   everybody except Miss Ware, who's 11 and 12, as in

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 149

1    many respects a good faith effort to respond to the

2    interrogatory.

3         Is it as complete as I would like it to

4    be?  Not necessarily so.  But it is a good faith

5    effort and it gives you something to start with.

6         So I understand what you want.  And I

7    understand why you want it.  But the problem is I

8    don't know that they can give you what they don't

9    have.

10    **MR. FARRELL:**  I appreciate what your

11    Honor is saying.

12         What we're trying to avoid is the swords

13    and shields issue.  And you've heard Mr. Roth already

14    allude to Mr. Bevan and the fact that he will be a

15    witness for the plaintiffs in this case and in fact

16    is on plaintiffs' initial disclosures as a witness in

17    this case.

18    **SPECIAL MASTER:**  Then subpoena him for

19    deposition.

20    **MR. FARRELL:**  But we are also entitled,

21    your Honor, to serve an interrogatory on the

22    plaintiff and ask for information in their

23    possession, custody, or control so that we have the

24    written answer and the information before the

25    deposition that your Honor is alluding to.  And

Page 150

1   that's the issue.

2          **SPECIAL MASTER:**  Well, let me make

3   painfully clear that if Mr. Bevan has information,

4   that is information that is in the possession,

5   custody, or control of the plaintiffs.

6          **MR. ROTH:**  Well, we have provided not

7   only the files of the six and the files of the 30

8   that your Honor directed us to, we also in the course

9   of doing that found -- and I don't know that he

10   called it any -- you know, there was a discussion

11   about the Rothenberg files and whether there's some

12   kind of central file about Amtal.

13          But Mr. Bevan did find a file that was

14   unrelated to any particular client, and we produced

15   that as well, of just general, you know,

16   correspondence, your Honor.

17          We have in fact made a -- I was mindful

18   of what your Honor said before about what kind of

19   response would I want.

20          I can't put words in my clients' mouths.

21   I know there's information.  And we made an

22   investigation to provide a more fulsome response than

23   just I don't know, trying to be mindful of your

24   Honor's directives from other hearings that we've had

25   and our obligation under the rules and at the same

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 151

1   time knowing that we're not dealing with the people

2   who have firsthand information.

3           MR. FARRELL:  If this response contains

4   what Mr. Bevan knows, so be it.  That's all we

5   wanted, to be clear.

6           SPECIAL MASTER:  Okay.

7           MR. PLACITELLA:  Well, take Mr. Bevan's

8   deposition.

9           MR. ASSAF:  No.

10          SPECIAL MASTER:  Well, no, no.  They're

11  entitled to know that it is from Mr. Bevan, which it

12  doesn't say.  Right?  Did I misread it?  It does not

13  say this is the information from Mr. Bevan.

14          MR. ROTH:  Well, it does talk about

15  information that my counsel relied upon and what my

16  counsel did.  And if you're --

17          SPECIAL MASTER:  Which really --

18          MR. ROTH:  Well, that's Mr. Bevan.

19          SPECIAL MASTER:  Right.  But I'm not

20  sure that that person can say, you know, whoever it

21  is, Ware or whatever, can say this is what my counsel

22  relied on.

23          MR. ROTH:  Which is why the responses

24  say upon information and belief, your Honor, because

25  the plaintiff to whom the interrogatories are

Page 152

1    directed cannot say what Mr. Bevan said or relied

2    upon.  And if you are saying that that's what has

3    to --  what the responses are, okay.

4                    **MR. ASSAF:**  But there's a difference

5    between information and belief and what I am being

6    told by my --  that's my -- my quarrel is I don't

7    want to show up at a Bevan deposition and just have

8    this vague language about information and belief.

9                    I was much more aligned with the

10   question before that said I want to make sure that

11   this is -- they're saying I relied or I heard this

12   from Mr. Bevan who told me X, Y, and Z.   That's what

13   I need for the deposition.

14                   And I heard Mr. Roth just say in

15   response to your Honor's question that these answers

16   incorporate what Mr. Bevan knows.

17                   **SPECIAL MASTER:**  Why don't we do this.

18   Let's make it clear who the source of the information

19   is, because if BASF takes Mr. Bevan's deposition,

20   they ought to be able to tie him back to specific

21   representations made by the plaintiff as to what Mr.

22   Bevan said or didn't say, because if your client

23   says:  Well, Mr. Bevan told me A, B, C, and D, and

24   Mr. Bevan under oath says:  I said no such thing,

25   you're going to have a problem.

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 153

1          **MR. ROTH:**  Understood, your Honor.   The

2    person to whom Mr. Bevan would have given advice in

3    these cases is dead.

4          **SPECIAL MASTER:**  Is the decedent.

5          **MR. ROTH:**  Right.  So I got a little

6    problem with getting an answer that says:  Here's

7    what Mr. Bevan told me.

8               Now, I'm not being glib, but --

9          **SPECIAL MASTER:**  But you're going to do

10   the best you can.

11         **MR. ROTH:**  I will do the best I can,

12   your Honor.  But here's the thing.  We've gone back

13   to provide information about how the decision was

14   made.  The clients don't know.

15              I get you want something that says Mr.

16   Bevan did bah, bah, bah, bah, bah.

17              Clients verifying such a response are

18   not going to have firsthand knowledge of that.   Just

19   so we're clear, that's going to come from a lawyer.

20         **SPECIAL MASTER:**  Then just put that in

21   the verification.

22         **MR. ROTH:**  Okay.

23         **SPECIAL MASTER:**  That's the way I cure

24   that problem, you know, everything in here is to the

25   best of my personal knowledge, and to the extent it

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 154

1    is not within my personal knowledge, it's within

2    information and belief.

3                    MR. ROTH:  Okay.

4                    SPECIAL MASTER:  Put that in every --

5    pretty much every verification just in case.

6                    MR. ROTH:  Which is what we've put in

7    the interrogatory answers, your Honor.  But I

8    understand.

9                    SPECIAL MASTER:  I think the answer's --

10   it's got to be in the verification, because that's

11   what -- that's where your client is putting their

12   stake in the ground in respect of this.

13                   MR. ROTH:  Well, when they say it in the

14   interrogatory responses, they have also said to

15   whoever is reading it, right, upon information and

16   belief, here's what happened, because I don't -- and

17   they have said in those responses:  I'm not the guy

18   with firsthand knowledge.

19                   SPECIAL MASTER:  Well, but if they say

20   it on information and belief, they have to have to

21   identify the source of that information and belief.

22                   MR. ASSAF:  Correct.

23                   SPECIAL MASTER:  And that's where I

24   think the disconnects lies.

25                   MR. ROTH:  Okay.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 155

1          **SPECIAL MASTER:**  Now, you can do that in

2    the interrogatory answer or you can do that in your

3    verification.

4                But to the extent that I don't know it,

5    it's based on information and belief from information

6    provided to me by A, B, C, you can do it either way.

7    I don't care.  Whatever's more comfortable to you.

8                But it goes to the basic underlying

9    obligation to respond to interrogatories.

10                Now, I will tell you that if I've

11    learned something in 40 years of practicing law is

12    that interrogatories are generally a huge waste of

13    time, because what you get are the lawyer's answers

14    and not the client's answers.

15                I'm a big believer in requests for

16    production of documents and in requests for

17    admissions.  Interrogatories don't do it for me.

18                But it is a method of discovery you're

19    entitled to use.  But they always give rise to these

20    kinds of discussions.

21                But be that as it may, I think you know

22    where I'm going with this.  And I think everybody

23    knows that what I want folks to do in the overarching

24    purpose is let's try to get the information, as much

25    information transmitted from one side to the other as

Page 156

1   we possibly can with a minimum amount of fuss so that

2   we can address the important stuff.

3            I'm looking at my watch.  It's 2:15.

4   We've been at this since 10:30 this morning.   We

5   took a break because you guys needed to go through a

6   list that took more than the five minutes that I had

7   very optimistically allowed.

8            **MR. ROTH:**  Well, part of that was a

9   technical problem, your Honor.

10           **SPECIAL MASTER:**  Now you're blaming Mr.

11  Reiley, who is sitting here very quiet.

12           **MR. ROTH:**  I wasn't going to name him.

13           **SPECIAL MASTER:**  Well, but be that as it

14  may, you know, we need to --  you know, I hate

15  wasting you guys' time.

16           **MR. ASSAF:**  And I generally agree with

17  you on interrogatories, your Honor.

18           Just to be clear though, Mr. Bevan's an

19  attorney, a very skilled and capable one.  I don't

20  want to show up for his deposition and learn for the

21  first time what he was telling his clients as to the

22  reasons to settle.  And I think I'm entitled to that

23  beforehand.

24           **MR. ROTH:**  Well, I don't know that Mr.

25  Assaf having read the first set of responses is going

Page 157

1  to be particularly surprised by what Mr. Bevan says.

2          Our effort was to provide responsive

3  information so that he could take his deposition.

4          What I don't want, your Honor, and it

5  seems to happen every time, is we come back and do

6  make a good faith effort given the fact that these

7  are people who were not the original plaintiffs, and

8  I will be told again I've moved the ball down the

9  line or I've changed the rules or I've done some

10  other thing in response to the next set of discovery.

11          **SPECIAL MASTER:**  Well, you just need to

12  stop being such a bad guy.

13          **MR. ROTH:**  I never should have shaved

14  the beard, your Honor.

15          **SPECIAL MASTER:**  The beard should have

16  stayed.  What can I tell you?

17          Actually, on a serious note, I'm going

18  to ask everybody again, attacks on opposing counsel

19  don't work for me.  They don't.  They actually hurt

20  you when you make them.  So let's try to --  I know

21  they're in your drafts because they're in my drafts

22  of everything that I write.  But they're not in the

23  final product.  Okay.  Get it out of your system.

24  Exercise the demon and go on.

25          Every lawyer in this case is a very good

Page 158

1   lawyer who's trying the very best they can for their

2   clients.  I assume that for everyone.  And pointing

3   fingers at somebody's not going to change my view of

4   that.  It's just not.

5           So when you have a problem that is a

6   lawyer problem, just tell me and I will address it.

7   We had one, which was the slew of the objections at a

8   deposition.  I addressed it.  I addressed it

9   hopefully without pointing fingers at anybody and

10   said it's just not going to happen again.

11           And I hope in my heart of hearts that it

12   never happens again.

13           But we need to focus on what this case

14   is about.  There's more than enough here to occupy

15   everybody who's in this room.  So let's try to stay

16   on that.

17           And on that note, in respect of BASF's

18   motion to compel answers to interrogatories, I'm

19   going to ask plaintiffs to please go back and look at

20   their responses, of the first set of interrogatories

21   to interrogatories 1, 4, 12, and 13, with the

22   exception of Miss Ware's, where it would be 1, 4, 11,

23   and 12, check your responses.  Please re-respond to

24   them as best you can.

25           In respect of the responses due from

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD      Oral Argument      January 15, 2018

Page 159

1    plaintiff Wengerd, the instructions in respect of not

2    talking to her about substance until she gets

3    re-deposed, I'm surprised it hasn't happened yet, but

4    that you're to treat her as if she were on

5    cross-examination.  That does not apply to getting

6    her to sign a verification.   So submit them to her.

7    If she's willing to sign it, fine.   If she's not

8    willing to sign it as you've prepared it, ask her to

9    mark it up and send it back to you.   Just do not

10   discuss the substance with her.

11              You're looking at meet strangely.

12              **MR. ROTH:**  I am happy to do that, your

13   Honor.  I'm happy to do that.

14              **SPECIAL MASTER:**  Okay.  Thank you.

15              As to the second set of interrogatories,

16   I'm going to ask for responsive answers as to

17   interrogatory number 1.

18              I am not going to address interrogatory

19   number 4.  Frankly, I think that's something we need

20   not spend any time on.

21              On interrogatories 2, 3, 5, 6, 7, and 8,

22   I'm going to ask you to respond to those and that the

23   response in respect of those be contemporaneous with

24   the filing of your class cert motion.

25              And as to the responses that are being

Page 160

1    requested, which is again 1, 4, 12, and 13 as to the

2    first set of interrogatories, save for Miss Ware,

3    who's 1, 4, 11, and 12, and interrogatory number 1 of

4    the second set, that those two be provided to counsel

5    for BASF by the 29th of this month.

6                Is there anything else on this

7    application that we need to address?

8                **MR. FARRELL:**  There's only the brief

9    procedural issue that the two plaintiffs who

10   apparently are going to be substituted but have not

11   yet been substituted, it's frankly a function not

12   just of verification but also we're going to have

13   depositions commencing as early as early February,

14   and as we sit here today we don't apparently have two

15   plaintiffs to depose, so...

16               **SPECIAL MASTER:**  Okay.  When can you

17   file your substitution of parties?

18               **MR. ROTH:**  There is an estate question

19   in Ohio, your Honor, the only thing that we were

20   waiting for.

21               **SPECIAL MASTER:**  Is the estate question

22   being somebody being named as a representative?

23               **MR. ROTH:**  That's right, your Honor,

24   somebody being substituted as a representative.

25               **MR. PLACITELLA:**  And the surrogate

Page 161

1    signing off or something.

2                    SPECIAL MASTER:  Right.  Has the

3    surrogate -- do they call them that in Ohio?

4                    MR. PLACITELLA:  I don't know the exact

5    issue, but it's an estate issue.

6                    SPECIAL MASTER:  Surrogate's a New

7    Jersey term, so --

8                    MR. COHEN:  It's the registrar of wills.

9                    MR. ROTH:  I believe it's the registrar

10   of wills.

11                    SPECIAL MASTER:  Okay.

12                    MR. ROTH:  And we're waiting for the

13   signing off of the new representatives of the estate

14   to substitute.  It's not a function -- it's only a

15   function of --

16                    SPECIAL MASTER:  It's ministerial, isn't

17   it?

18                    MR. ROTH:  Yes, your Honor.  We can't

19   control the registrar of wills.

20                    SPECIAL MASTER:  Right.

21                    MR. ROTH:  But we know who it's going to

22   be.

23                    SPECIAL MASTER:  But since you know who

24   it's going to be, do your substitution as soon as you

25   can.

Page 162

1              **MR. ROTH:**  Yes, your honor.

2              **SPECIAL MASTER:**  I wouldn't -- if it's

3     just going to be a ministerial act, I wouldn't wait

4     for that.

5              **MR. ROTH:**  As long as there would be no

6     objection.

7              **SPECIAL MASTER:**  Right.  And if there's

8     a problem later on, we'll fix it.

9              **MR. ROTH:**  Okay.  Thank you, your Honor.

10             **SPECIAL MASTER:**  I don't think anybody's

11    going to have any trouble with that.

12             Now, just so you know, your filings are

13    limited to what a large binder clip can grab, because

14    that's as far as my ability the understand goes.   I

15    much prefer the smaller clips.

16             But before we go into that, can I please

17    remind everybody, please double-space everything.   I

18    have enough trouble reading Times New Roman 12 point

19    than having to read it in single-space.

20             I don't know if you noticed, but I have

21    trifocals, and it gets really bad when I actually

22    have to take my glasses off to read it.

23             Single-spaced letters are nice, but

24    they're hard to read.  So if you could do

25    double-space, please, that would be nice.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                        Monday
C.A. No. 2:11-cv-01754-JLL-JAD                  Oral Argument                              January 15, 2018

Page 163

1              **MR. COHEN:**  Still want the 14 font?

2              **SPECIAL MASTER:**  As long as it's

3    double-spaced --

4              **MR. COHEN:**  12 is okay?

5              **SPECIAL MASTER:**  -- 14 -- yeah, 14 is

6    nice, but 12 I can live with.  Either, you know, 14

7    proportional or 12 non-proportional.   So I'm big fan

8    of Courier.   It's easier to read for old people like

9    me.

10             Anyway that was the original one.

11             The last thing that I have is something

12   that has not been filed of record that was triggered

13   by Mr. Assaf's original e-mail saying that -- is it

14   today?

15             **MR. ASSAF:**  Today.

16             **SPECIAL MASTER:**  Today.   Oh, big day

17   today.

18             That today BASF was going to be filing

19   their opposition to plaintiffs' motion to determine

20   the crime fraud exception and Kozlov exception to

21   defendant's assertions of attorney/client privilege.

22             In that e-mail Mr. Assaf noted that

23   there were two filings that they intended to make.

24   One was an unrestricted filing of an opposition brief

25   that they requested, if memory serves me, a 65 page

Page 164

1    limitation on it.

2              Mr. Ryan on behalf of the Cahill Gordon

3    defendants had asked for a 70 page.

4              Both of those applications were granted.

5    Just make sure they're a good 65 and 70 pages.

6              But in his e-mail Mr. Assaf further

7    advised that there was a separate submission he

8    intended to make, about 220 pages' worth, that he

9    intended to submit on an ex parte basis for review in

10   camera.

11             That triggered a letter dated January

12   the 12th, 2018, from Mr. Placitella objecting to the

13   filing of the ex parte and under seal submission,

14   stating first that a secret brief, I like that term,

15   that's really nice, secret brief is unnecessary and

16   that it would only become relevant if there's a

17   determination that plaintiffs have met the prima

18   facie threshold.

19             I would have said when the Court

20   determines that you've met it.  But I'm a little more

21   forward than you are.

22             And that there should be a hearing for

23   the parties to be heard on the procedure and that in

24   any event you receive a copy of this brief.

25             Let me specifically go to my notes where

Page 165

1    I wrote that your letter provides that the secret

2    brief, I'm going to use that term because I like it,

3    not because it aptly describes it, but because it's

4    colorful, is not relevant, it is unnecessary, and it

5    violates plaintiffs' due process and fair trial

6    rights.

7              Mr. Placitella suggests that we consider

8    the state court's special discovery master's reports

9    and the state crime fraud evidentiary record, that

10   plaintiffs be provided with specific documents in the

11   ex parte submission, and that plaintiffs be allowed

12   to review and oppose BASF's submission or file their

13   own documents in rebuttal.

14             On January the 14th, which I will point

15   out once again was Sunday, January the 14th, during

16   playoff games, BASF filed its letter in opposition

17   that stated as follows.   Number 1, that the Court

18   had already rejected the request to review the crime

19   fraud decisions in the Samson case, that the request

20   of the plaintiffs to review the ex parte submission

21   is inappropriate, that the request for BASF's

22   specific documents or a list thereof or be allowed to

23   submit their own document list in opposition has no

24   basis, and talked about the timing of the BASF ex

25   parte brief.

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 166

1          By letter dated January 14, 2018,

2    reminding again it was a Sunday during -- I think

3    this one arrived just as the Vikings were scoring

4    their last touchdown, that Cahill Gordon opposes it,

5    they join in BASF's opposition, and said that they

6    would withhold filing their opposition due today

7    until they get additional guidance.

8          Let me just tell you sort of where I

9    come out on it because I think it would help

10   everybody.

11         Attorney/client privilege issues are

12   tricky to handle, because once the horse is out of

13   the barn, the horse is out of the barn.   And so they

14   have to be dealt with, with a little bit of tact and

15   consideration for the issues that are at play.

16         As a result, the judiciary, both federal

17   and state, have developed pretty much a template on

18   how they are to be handled.

19         You have a party that asserts that

20   they're entitled to discovery for a certain reason,

21   an opposition that says no, they're not because it's

22   privileged for the following reasons.

23         And at some point or another somebody's

24   got to look at documents and say they are or they are

25   not privileged, number 1, and number 2, if they are

Page 167

1    privileged, does the privilege bar their disclosure.

2              So it's really a two-step process.   And

3    the way that it is normally done, or at least in my

4    experience the way that it's normally done is that

5    somebody requests the discovery.  The possessor of

6    the privileged document says:  No, you can't have

7    them because they're privileged, and then submits at

8    the same time an ex parte submission for the decision

9    maker to decide, number 1, are they privileged in the

10   first instance, and if they are, has that privilege

11   been waived by either operation of law or by fact.

12             And the allegation here is that the

13   privilege has been waived because of the crime fraud

14   exception and/or the Kozlov considerations.

15             In those circumstances, the person

16   seeking the information doesn't get to see the

17   privileged documents because that kind of lets the

18   cat out of the bag.

19             There are other ways of handling it that

20   I've seen and actually done that get a lot more

21   complicated, and that is, for example in this

22   instance, plaintiffs retaining a special conflicts

23   counsel who is then allowed to look at the documents

24   but cannot report on them back to you.   I mean,

25   that's one way of doing it.   I don't know if that's

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 168

1   what you want to do.

2              **MR. PLACITELLA:**  So let me just try

3   to --

4              **MR. ASSAF:**  I think you are that person.

5              **SPECIAL MASTER:**  Well, I am the decider.

6   I'm not the advocate.  Okay.  But normally, whoever

7   the decision maker is tries to occupy both.

8              But if you've got a party who says

9   basically I really don't trust you to make the right

10  decision, we'd like to have a dog in that fight,

11  there are ways of organizing that in such a way where

12  it's insulated, whoever is performing the role

13  understands that they have what us old guys used to

14  call a Chinese wall, now is called a screening device

15  or mechanism that is not to be pierced.  That's

16  another way of doing things.

17             **MR. ASSAF:**  So my experience doing these

18  several times over -- more than I care to imagine

19  over 25 years, I haven't done the special master --

20             **SPECIAL MASTER:**  You should stop getting

21  into these messes.

22             **MR. ASSAF:**  Is pretty much aligned with

23  how you laid out it, that there's an in camera

24  process -- especially in federal court, there's an in

25  camera process and the judge or magistrate or special

Page 169

1    discovery master reviews it.  And that I actually

2    think goes back to Chief Judge Linares' view in terms

3    of appointing you --

4                 **SPECIAL MASTER:**  Yes.

5                 **MR. ASSAF:**  -- and the characteristics

6    he was looking for.  And I think it's even in his

7    order.

8                 So I hesitate to add yet another person

9    to this as opposed to your Honor, who --

10                **SPECIAL MASTER:**  I'm not recommending

11   it.

12                **MR. ASSAF:**  Okay.

13                **SPECIAL MASTER:**  I'm just saying if the

14   plaintiffs are really going to get crazed about it,

15   there's another way of providing another step of

16   comfort.

17                **MR. PLACITELLA:**  That's not my issue.

18                **SPECIAL MASTER:**  I don't think you need

19   it.

20                **MR. PLACITELLA:**  That's not my issue.

21                **SPECIAL MASTER:**  Okay.

22                **MR. PLACITELLA:**  As I understand it,

23   just so we're on the same page, and maybe we're all

24   on the same page, we were to provide and submit our

25   crime fraud brief to make out a prima facie case.

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 170

1    And in that brief we had to refer only to stuff that

2    was in the public record.   Right?

3              **SPECIAL MASTER:**  Well, because we're in

4    the bizarre set of circumstances --

5              **MR. PLACITELLA:**  Yes.

6              **SPECIAL MASTER:**  -- that in parallel

7    proceedings --

8              **MR. PLACITELLA:**  Right.

9              **SPECIAL MASTER:**  -- you've had access to

10   stuff that you haven't had access to in this case and

11   that I haven't had access to in this case.

12             **MR. PLACITELLA:**  Yeah, I'm not --  and

13   the purpose --

14             **SPECIAL MASTER:**  It's a unique set of

15   circumstances, we all agree.

16             **MR. PLACITELLA:**  Right.  And the purpose

17   of that submission and response was for you to

18   determine whether there was a prima facia case made

19   of crime fraud.

20             If there was -- if you find that there

21   is, then a couple of things -- a few things become in

22   play.  One, at that point you get to review the

23   documents at issue in camera.

24             And I'm not looking to inject another

25   individual into the process.

Page 171

 1                   **SPECIAL MASTER:**  Okay.

 2                   **MR. PLACITELLA:**  Or you also have the

 3      issue of, if we make out a prima facia case of a

 4      crime fraud, do we get to take depositions of the

 5      defendants under a 502(d) order to ask them certain

 6      questions to fill it out?  That's what I thought was

 7      at issue.   Now, because --

 8                   **SPECIAL MASTER:**  Well, the only

 9      thing that is at issue --

10                   **MR. ASSAF:**  That's never been an issue.

11                   **SPECIAL MASTER:**  The only thing that is

12      at issue right now based on your January 12th letter

13      is the submission of the ex parte provision --

14                   **MR. PLACITELLA:**  Yes.

15                   **SPECIAL MASTER:**  -- that Mr. Assaf

16      referred to, about 220 pages, which I assume is

17      pretty much all documents.

18                   **MR. PLACITELLA:**  Well, that's what I

19      want to address.

20                   **SPECIAL MASTER:**  Okay.

21                   **MR. PLACITELLA:**  If it's just documents,

22      that's one thing.   If there is advocacy attached to

23      that submission, that's wrong.  They shouldn't be

24      able to --

25                   **SPECIAL MASTER:**  Okay.  Is it all

Page 172

1    documents or advocacy?

2              MR. PLACITELLA:  Let me just -- if

3    there's advocacy attached to that submission, then we

4    need to participate.  And frankly, I thought the

5    easier way to do it would be, if you find a prima

6    facie case, we'll identify for you the documents we

7    think you should look at.  We don't think you need to

8    look at a thousand documents.  You may only have to

9    look at 75 documents.

10             If they believe that there are another

11   10 documents that you should look at to round out the

12   picture, so be it.

13             But it shouldn't be that they give you a

14   220 page set of documents, many of which we don't

15   care about or are not challenging, and it shouldn't

16   be that they have a chance to advocate in absentia

17   that issue.

18             SPECIAL MASTER:  You're saying that

19   because you're in the sort of odd position where

20   you've already gotten this discovery in a different

21   case --

22             MR. PLACITELLA:  I know what the

23   documents say.

24             SPECIAL MASTER:  Well --

25             MR. ASSAF:  Some of them.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 173

1        SPECIAL MASTER:  Okay.

2        MR. PLACITELLA:  Well, if I don't

3   know what they all say, then that's a concern.

4        SPECIAL MASTER:  You're not answering my

5   question.  My question is do you know what the

6   documents -- have you seen the documents that you

7   want me to rule on?

8        MR. PLACITELLA:  Yes.

9        SPECIAL MASTER:  You have copies of

10  those?

11        MR. PLACITELLA:  Not in the context of

12  this case.

13        SPECIAL MASTER:  No, no.  But you have

14  copies of those?

15        MR. PLACITELLA:  Yes.

16        SPECIAL MASTER:  Okay.  And they are

17  subject to whatever the state court proceedings in

18  the Samson case have put in the way of restrictions?

19        MR. PLACITELLA:  I'm not sure what I'm

20  allowed to say here or not say, so I want to be very

21  careful.

22        I didn't want to get to I read the

23  document, this is what it says.  All I wanted to do

24  was go to the privilege log and say to you, I only

25  want you to -- I want you to look at the following

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 174

1    documents on the privilege log, like I would do in

2    any other case, pretending as best I can that I don't

3    know anything.

4              SPECIAL MASTER:  Okay.

5              MR. ASSAF:  May I respond?

6              SPECIAL MASTER:  That is a lot more

7    helpful than honestly I thought.

8              MR. PLACITELLA:  Okay.  My concern is

9    that they give you the documents they want you to

10   look at, they're not even the documents --

11             SPECIAL MASTER:  That you're interested

12   in.

13             MR. PLACITELLA:  -- that I care about

14   and it's attached to some piece of advocacy that I

15   can't rebut and I can't get the left side of my brain

16   away from my right side, knowing that if I knew what

17   documents they gave you, then I could kind of get a

18   sense of where things were going.  It's an issue.

19             SPECIAL MASTER:  Okay.  Just so that I

20   understand, I understand that your motion for the

21   application of the crime fraud exception and/or the

22   Kozlov exceptions is going to be limited to a finite

23   number of documents that you already know which ones

24   they are?

25             MR. PLACITELLA:  I'm assuming --  yes.

Page 175

1    Yes.

2                   **SPECIAL MASTER:**  Okay.  What's wrong

3    with that procedure?

4                   **MR. ASSAF:**  So --

5                   **MR. PLACITELLA:**  And the ability if you

6    find crime fraud then to take -- you know, I have to

7    take the depositions at some point.

8                   **SPECIAL MASTER:**  Right.  We'll jump off

9    that bridge when we get to it.

10                   **MR. ASSAF:**  Here's what wrong with that

11   procedure, your Honor.  And you're going to see this

12   when you look even at our public brief tonight or

13   tomorrow now, that the well-established case law

14   within the Third Circuit and virtually every other

15   federal court I know of says when -- it's beyond

16   dispute when a challenging party moves to challenge

17   attorney/client privilege on crime fraud grounds, and

18   Mr. Placitella's partially right, they have an

19   obligation to identify the 20 to 40 documents on the

20   privilege log that they would like your Honor to do

21   so.   Okay.   Court after court --

22                   **SPECIAL MASTER:**  Just let me stop you

23   for one moment.

24                   Did you do that --

25                   **MR. ASSAF:**  No.

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD      Oral Argument      January 15, 2018

Page 176

1              SPECIAL MASTER -- on your initial

2      submission?

3              **MR. PLACITELLA:**  I didn't because I

4      didn't think that's what you wanted.  I thought what

5      you wanted was how do we make a prima facie case of

6      crime fraud?  And if you make that determination,

7      then we'll go to the step of me telling you what

8      documents to look at.

9              **SPECIAL MASTER:**  Okay.

10              **MR. ASSAF:**  But, your Honor, from the

11      very first time at the October 25th hearing that you

12      brought this up --

13              **SPECIAL MASTER:**  26th.

14              **MR. ASSAF:**  26th hearing that you

15      brought this up, you talked about the fact that we're

16      in the Third Circuit, the Third Circuit laws control.

17              And the Third Circuit is pretty clear.

18      You as a charging party has an obligation.

19              Now, Mr. Placitella's been at this a

20      long time.  He failed -- there's an abject failure of

21      proof on that.  So where are we?  So --

22              **SPECIAL MASTER:**  Which I assume is going

23      to be amply briefed in your submission.

24              **MR. ASSAF:**  Correct.  It will be in our

25      submission.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Monday
C.A. No. 2:11-cv-01754-JLL-JAD          Oral Argument          January 15, 2018

Page 177

1          But I also heard your Honor, including

2    today, say:  Yeah, I think there's probably going to

3    be a prima facie case.

4          So I was going to submit everything,

5    because I thought you'd want to kick the tires.

6          **SPECIAL MASTER:**  I hope I didn't say

7    that.  I hope I never said I think there's going to

8    be a prima facie case, because I will tell you right

9    now, I try very hard not to prejudge anything.

10          **MR. ASSAF:**  Fair enough, your Honor.

11          **SPECIAL MASTER:**  And so for me what's

12    important is to give all of you the opportunity to

13    have your say.  And I think today is more evidence

14    of that.

15          **MR. ASSAF:**  Correct.

16          **SPECIAL MASTER:**  You're going to get the

17    opportunity to have your say.  And at some point I'm

18    going to decide, for no other reason than somebody's

19    got to decide something along the way.

20          **MR. ASSAF:**  Agree completely.

21          **SPECIAL MASTER:**  So putting that to the

22    side, we just heard from Mr. Placitella that what he

23    would like to have happen is you file your opposition

24    brief, he files his reply brief, I make a

25    determination on whether a prima facie case has been

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 178

1    made.

2              If I find that a prima facie case --

3    sorry.  If I conclude that a prima facie case has

4    been made, then Mr. Placitella is going to give me a

5    finite number of documents that he -- and he's not

6    going to ask for anything else.  He's going to give

7    me a finite number of documents, that he's going to

8    say:  Since you found a prima facie case, please

9    determine these.

10             You're going to then respond:  -- this

11   is what he's proposing.  You're going to then

12   respond.  And your response doesn't have to be

13   limited to those.  You can say there are these other

14   privileged documents that he's not asking for that

15   give a different view of what that document is all

16   about.   And if it's privileged, you're going to be

17   able to submit it ex parte.

18             And that's a risk that Mr. Placitella

19   runs, that you're going to be able to rebut with

20   something that he hasn't seen.

21             Although my guess is that by this point

22   in this case, pretty much everyone has seen a lot of

23   everything.

24             I'm going to tell you right up front the

25   proposal that I review, the special master's reports

Page 179

1   and those decisions, until somebody tells me that the

2   Supreme Court has lifted the stay, I don't want to

3   see any of that.

4              MR. PLACITELLA:  I figured you would say

5   that.

6              SPECIAL MASTER:  Until the Court lifts

7   the stay, I don't want to be there.

8              MR. PLACITELLA:  I understand.

9              SPECIAL MASTER:  Okay.

10             MR. ASSAF:  So your Honor, my biggest

11  point is coming back to I'm going to live with

12  whatever the standard is with the Third Circuit.  And

13  the Third Circuit standard says when he moves, he has

14  to identify the documents.

15             Now, he didn't do so, your Honor.

16  Okay.  And we're now months down the road from when

17  he was supposed to.   Okay.   That's not how this

18  works.   Okay.  If we're going to play by the

19  rules --

20             SPECIAL MASTER:  So you're going to put

21  it in your opposition.  And he's going to put it in

22  his reply.

23             MR. ASSAF:  But not with the document --

24  but not -- he can't --  in other words --

25             SPECIAL MASTER:  If you want --

Page 180

1          **MR. ASSAF:**  -- the last three months

2    would have been much different for me.

3          **SPECIAL MASTER:**  I'm sure that that is

4    the case.

5          **MR. ASSAF:**  I can't on the eve of my

6    opposition, your Honor, find out that now he's going

7    to get to start over again.

8          **SPECIAL MASTER:**  It's not the eve.  It's

9    the day of your opposition.

10          **MR. ASSAF:**  Correct.  But, your Honor,

11   that's fundamentally unfair.  He knows what the

12   standard is and he didn't do it.  And now on Friday

13   night --

14          **SPECIAL MASTER:**  But I can fix that.   I

15   mean, I can fix that by giving you the opportunity to

16   file a sur-reply.  So I can fix that.   That's not

17   that big of a problem.

18          If that is the procedure that Mr.

19   Placitella follows and in his reply he identifies the

20   documents that he wants, then you can -- the whole

21   purpose of a reply is to fix problems that have been

22   brought up in an opposition.

23          And you want to be able to respond to

24   that.   I'll give you leave to file a sur-reply,

25   which as those of you who have practiced before the

Page 181

1    District of New Jersey know, that's not granted

2    often.

3              But you're not going to be prejudiced.

4    I'm telling you that right now.  It's not going to

5    happen.

6              **MR. ASSAF:**  Well, your Honor, I kind of

7    feel like I am, so I'm sorry.  But on Friday night I

8    get a piece from Mr. Placitella saying:  Well, here's

9    what I want to do.

10             And then on Monday we come in here and

11   we argue it.  And for the very first time he now

12   comes to grips with he failed to follow a Third

13   Circuit law.  And I'm being told:  Well, it's kind

14   of -- don't worry, you'll get another brief on it.

15   Okay.

16             I've strategized this with co-counsel,

17   with my client, and I'm being told now:  Well, you'll

18   get another shot at it, when if anything, again, I

19   followed what the Third Circuit told me.  And I

20   shouldn't have that changed.

21             Under the rights standard, with all due

22   respect, your Honor, I'm going to win this.

23             And so -- but I just want the rights

24   standard.  I don't think Mr. Placitella should get to

25   change the procedure the day I file my brief.

Page 182

1              **SPECIAL MASTER:**  Okay.

2              **MR. PLACITELLA:**  It's my understanding

3    this is how you wanted to do it.

4              **MR. ASSAF:**  Under what case?

5              **SPECIAL MASTER:**  Well, I don't --

6              **MR. PLACITELLA:**  I could have been

7    wrong.

8              **SPECIAL MASTER:**  I don't know where you

9    got that from.

10             But be that as it may, Mr. Ryan, who's

11   been here all day long listening to us go on and on

12   and on, what have you to add?

13             **MR. RYAN:**  On behalf of the Cahill

14   defendants, your Honor, I think that we're maybe

15   over-thinking this issue a little bit.

16             I appreciate that Mr. Placitella was

17   involved in the Samson matter, but we all need to

18   remember that Cahill was not a party in the Samson

19   matter.

20             The reality of life is that Mr. Assaf is

21   correct, that there's a well set of established law

22   in the Third Circuit with regard to how this process

23   is supposed to play out.  Mr. Placitella files his

24   motion, the defendants get to file a reply, and your

25   Honor gets to decide the issue before we even get to

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 183

1    in camera.  So that's my concern.

2                And as counsel for Cahill, obviously we

3    have other issues because we have to respect the

4    privilege.

5                **SPECIAL MASTER:**  Well, work this out

6    with me, Mr. Ryan, if you would.  The objection that

7    is being interposed right now is a purely procedural

8    one.  It's one that says this is the process that

9    should have been followed, it was not followed, and

10   therefore the application should be denied.

11               What if the procedural problem is cured?

12   Am I to ignore that and simply decide on the

13   procedural issue?  Or should I say the procedural

14   issue can give way to a determination of the

15   substance, particularly in a case like this where the

16   substance is pretty serious.

17               I say that only because that's what's

18   being alleged.  I'm not making a determination one

19   way or the other that that's the end result.

20               And the fact that I'm here and doing

21   this, you know, it's not the typical case that gets a

22   special master assigned.  And it's not the typical

23   case that gets somebody like me appointed as special

24   master.

25               **MR. ASSAF:**  Correct.

Page 184

 1              **SPECIAL MASTER:**  Because there are

 2      important considerations that are at play here that

 3      are important to everybody.  And they are

 4      considerations that go to the heart of what we do as

 5      lawyers.

 6              And I've said it before and I will say

 7      it again.  I have nothing but the utmost respect for

 8      our profession.  I jokingly say that if you want

 9      proof of that is the fact that I married a lawyer and

10      38 years later we'll still married.   So it is

11      something that is very near and dear to my heart.

12              The allegations in this case, I think if

13      anybody looks at them objectively, they are

14      troubling, but they're just allegations.

15              So I have to make sure that everybody in

16      this room and everybody, you know, on the telephone

17      gets a fair shake in this case.

18              And under those circumstances, don't you

19      think I absolutely have to?

20              **MR. RYAN:**  Respectfully, I don't, and

21      it's for this reason, your Honor.  One, this case has

22      been bubbling around for six or seven years.  Mr.

23      Placitella and his firm are fine lawyers.

24              By the pure magnitude of the motion that

25      was filed, you can tell it was well researched, well

Page 185

1   thought out.  If it's fatally flawed, I don't think

2   you get to do a do-over.

3            I think Mr. Assaf and his clients are

4   here today apparently ready to file their brief

5   today.  And I don't think it's fair to say, okay,

6   well, there's a, you know, a little procedural

7   misstep here and we're going to flip out the process

8   that the Third Circuit has used, flip out the process

9   that New Jersey has used, and we're going to add

10  another step.  After BASF and Cahill submit their

11  briefs, now plaintiff can backfill and fix a fatal

12  flaw in their submission.

13           This isn't the case I think, candidly,

14  Judge, where you have a minor procedural misstep that

15  your Honor with his equity powers can fix and bring

16  us all back.  This one isn't like that.

17           We've all been litigating this

18  particular case way too long.  The issue is teed up.

19           And I think your Honor should candidly

20  follow the procedure that the courts have set,

21  because I think when you do, you're going to find

22  there was no prima facie case.

23           **SPECIAL MASTER:**  I don't disagree with

24  you, Mr. Ryan.

25           But when I look at it, there are to

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 186

1    me -- and I think I've mentioned this before, there

2    are two other than that, Mrs. Lincoln, how did you

3    like the play issues in this case.   One is this

4    motion.   The second one is class cert.

5              I think either of those -- the

6    determination in respect of either of those will have

7    a fundamental effect on this case and how it goes

8    forward.

9              I'm just being very candid with you that

10   I am a little troubled, at least at the first

11   instance, with deciding a motion of such gravity

12   solely on a procedural shortcoming.

13             But if I understood your response

14   yesterday, Mr. Assaf, it was:  Listen, the only time

15   you're going to need to reach my ex parte brief is if

16   you find that a prima facie case has been made.

17             So I'm going to ask you -- and I think

18   I've paraphrased exactly what you said.

19             So I'm going to ask you to do me this

20   favor.   File your public brief.   Hold the other one

21   in abeyance until there's a determination on whether

22   a prima facie case has been made.

23             And then we can go from there, unless

24   you need it as part of your opposition to the prima

25   facie case, which is not what you told me in your

Page 187

1   letter.

2            **MR. ASSAF:**  I'm sorry, say that again,

3   your Honor.

4            **SPECIAL MASTER:**  Well, unless you need

5   your 220 page ex parte brief to argue --

6            **MR. ASSAF:**  Oh, yeah.  Okay.  I hear

7   you.

8            **SPECIAL MASTER:**  Unless you need that,

9   but that's not what you told me.  But unless you need

10   that, I would ask you to just hold off on it, let me

11   make a determination on the prima facie case first,

12   and then we'll see where that takes us.

13            **MR. ASSAF:**  So a couple reactions, your

14   Honor.  First of all, I want to be clear, I know

15   we've been talking about a procedural issue.  I think

16   it's more than procedural, just to be fair, and it's

17   going to be raised in our brief.

18            There are substantive deficiencies, as

19   your Honor I think pointed out in the first hearing.

20   Okay.  Law's well settled that they have to make a

21   prima facie in showing activity in furtherance of a

22   crime or a fraud.

23            So it's not just procedural of

24   identifying the documents.  It has to be then the

25   substantive arguments in furtherance of.  Okay.

Page 188

1          And again, it's not -- since the brief

2 is done I'll tell you.  Mr. Placitella doesn't want

3 to engage on the in furtherance of.  He's trying to

4 say, well, it could be a different standard, it might

5 be a different standard.

6          And there are reasons for that.  I think

7 your Honor will figure it out.  Doesn't like the

8 standard.  Okay.  But the Third Circuit does.

9          **SPECIAL MASTER:**  I'll do my best.

10          **MR. ASSAF:**  But the Third Circuit does

11 like the standard.

12          So now, in terms of then the public

13 brief and the prima facie case, again, your Honor, I

14 think I just -- I'd like to have a break of about

15 five minutes to talk to Mr. Farrell about it and get

16 back to you.

17          **SPECIAL MASTER:**  Sure.  You may want to

18 talk to Mr. Ryan also.

19          **MR. ASSAF:**  And Mr. Ryan as well.

20          **SPECIAL MASTER:**  He seems to be in your

21 camp.

22          **MR. ASSAF:**  But I'm just trying to --

23          **SPECIAL MASTER:**  Unless, Mr. Ryan, you

24 don't want to talk to these guys, which I wouldn't

25 blame you.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 189

1          **MR. ASSAF:**  So I'm just to trying to

2    figure out then what the process would be, that we

3    would file our public brief and Mr. Placitella would

4    file a reply as to why he thinks either the standard

5    isn't in furtherance of or why he didn't have to

6    review -- identify the documents as opposed to start

7    over.

8          **SPECIAL MASTER:**  If he files a reply

9    that goes outside the four corners of your

10   opposition, you will get the right to file a

11   sur-reply.  How's that?

12         **MR. ASSAF:**  Okay.  Let me talk to Mr.

13   Farrell about that, if that's okay.

14         **SPECIAL MASTER:**  Talk to Mr. Farrell.

15         **MR. ASSAF:**  And Mr. Ryan.

16         **SPECIAL MASTER:**  Okay.  Let's take a

17   couple minute break.

18              (Break.)

19         **SPECIAL MASTER:**  Mr. Placitella?

20         **MR. PLACITELLA:**  So maybe there's a

21   different way to approach this that works for

22   everybody.

23              It was truly our understanding that we

24   were to approach it the way we did.  And out of the

25   abundance of caution and great concern not to tread

Page 190

1    on the sealing orders in Samson, maybe we went

2    overboard and did not even mention a document under

3    seal, only information that was outside -- you know,

4    on the record.

5              **SPECIAL MASTER:**  That's your reply,

6    isn't it?

7              **MR. PLACITELLA:**  Right.  Well, but there

8    might be an easier way to shortcut all this.

9              **SPECIAL MASTER:**  Okay.

10             **MR. PLACITELLA:**  And the simple way I

11   think to handle it is give us three days.  We'll give

12   them the list of documents before they make their

13   submission.  And then they can make -- you know, give

14   them some extra time to make their submission.  And

15   they can make their submission.  And then we don't

16   have to, you know, do the extra dance, because we can

17   do it very quickly, if that's what the Court wants.

18             **SPECIAL MASTER:**  Mr. Assaf, you want to

19   think about that for a moment or just reject it out

20   of hand?

21             **MR. ASSAF:**  Well, I think I'm going to

22   reject it out of hand because -- so, you know, I

23   think what you're hearing -- again, now I will put my

24   advocacy hat on.

25             I think Mr. Placitella realizes he's in

Page 191

1    a boatload of trouble under Haines and Liggett in the

2    Third Circuit and that by failing to identify -- he's

3    familiar with the California cases that have ruled on

4    this very issue.

5              So we will submit our brief.  I think,

6    your Honor, we've heard about what you said.

7              I've now been looking at e-mails.  Mr.

8    Placitella's brief is pretty clear that they think it

9    was just a broad, you know, you get to examine all

10   communications.

11             **SPECIAL MASTER:**  Don't tell me what your

12   brief is going to say that hasn't yet been filed.

13             **MR. ASSAF:**  So in terms -- we'll see

14   what Mr. Placitella's reply says.  And then we'll

15   take up your sur-reply, your Honor.  But to be

16   clear --

17             **SPECIAL MASTER:**  You're going to look at

18   his reply and you're going to let me know whether you

19   want to file --

20             **MR. ASSAF:**  Correct.

21             **SPECIAL MASTER:**  -- more importantly,

22   whether you need to file --

23             **MR. ASSAF:**  Correct.

24             SPECIAL MASTER -- a sur-reply.  And I'll

25   deal with it.

Page 192

1              I'll tell you right now, if the reply

2      goes outside the four corners of the opposition,

3      you're going to have time to file a sur-reply.

4              **MR. ASSAF:**  And then, your Honor, I

5      didn't answer a question that you posed to me before

6      and I want to answer it because I don't want to --

7              **SPECIAL MASTER:**  That's why we took the

8      break.

9              **MR. ASSAF:**  Correct.

10             **SPECIAL MASTER:**  Okay.

11             **MR. ASSAF:**  There's another question

12     that came up about whether it was advocacy or just

13     non-advocacy.

14             And again, your Honor, this is going to

15     be in our public brief.  But the Third Circuit in

16     Haines v. Liggett says, quote, that there's an

17     absolutely right to have evidence and argument in

18     camera.

19             So I don't want you to think that I'm

20     not going to be an advocate.

21             **SPECIAL MASTER:**  In camera.  Not ex

22     parte.  In camera.  There's a difference.

23             **MR. ASSAF:**  There is a difference, your

24     Honor.  But I think, again, the cases are going to be

25     in our public brief and you'll rule on this.  But we

Page 193

1    have a chance to make this -- it doesn't have --  I'm

2    going to be an advocate, whether it be in camera or

3    under seal or just privileged.

4              SPECIAL MASTER:  I expect nothing less

5    from you, Mr. Assaf.

6              MR. ASSAF:  Okay.

7              SPECIAL MASTER:  You would disappoint me

8    gravely if you weren't.

9              MR. ASSAF:  And then --

10             SPECIAL MASTER:  There's one thing that

11   you do know, and that is whatever you submit, I will

12   read it from cover to cover, including all the cases

13   that you cite.

14             MR. ASSAF:  That I know.

15             SPECIAL MASTER:  So you're going to get

16   your fair shot.

17             MR. ASSAF:  That I know.  And I will

18   also picked up more data today.  The Irving Younger

19   piece explains a lot.

20             SPECIAL MASTER:  That's another hundred

21   thousand dollars worth of psychiatric treatment.

22             MR. ASSAF:  So your Honor, but the

23   one -- the other thing that you mentioned because of

24   now the prima facie determination, I would ask your

25   Honor to consider the following, that to the extent

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 194

```
 1   your Honor after a full briefing determines that

 2   there is a prima facie case and then we go to the

 3   next step in the crime fraud, I would ask that that

 4   ruling be held just to the parties until your final

 5   ruling on the crime fraud.  And then that would be

 6   made as part of the public record.

 7              SPECIAL MASTER:  Okay.

 8              MR. PLACITELLA:  I have to think about

 9   that, our position on that.

10              SPECIAL MASTER:  Why would you object to

11   that?

12              MR. PLACITELLA:  I want to think about

13   it.

14              SPECIAL MASTER:  Okay.  You're going to

15   think about it and then agree that you're not going

16   to object.  All right.

17              MR. ASSAF:  And then finally, your

18   Honor, I'm sorry about this, but it is --

19              SPECIAL MASTER:  I'm trying to help you

20   out.

21              MR. ASSAF:  It is three o'clock, and so

22   I would ask for another 24 hours to submit our public

23   brief, because I would like a chance to now review it

24   again.  It's gone through some changes over the

25   weekend given the uncertainty of how we're going to
```

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                          Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                           January 15, 2018

Page 195

1    file.

2                    **SPECIAL MASTER:**  Is 24 hours enough for

3    you?

4                    **MR. ASSAF:**  Yes, it is.

5                    **SPECIAL MASTER:**  Mr. Ryan?

6                    **MR. RYAN:**  I would ask the same thing,

7    your Honor.  And I would just reiterate that to the

8    extent that this process goes any further, it is my

9    view candidly that the in camera process does permit

10   submissions both on behalf of BASF and Cahill which

11   are ex parte, because we have to protect the

12   privilege.  And my position will be that Mr.

13   Placitella and his clients are not entitled to those.

14                   **SPECIAL MASTER:**  Well, and not to tell

15   tales out of school, but you're right, because what's

16   the alternative?

17                   **MR. RYAN:**  Correct.

18                   **SPECIAL MASTER:**  You let the cat out of

19   the bag.  And clearly it can't be that.

20                   So are you going to hold off on the --

21   that was my request of you.  You haven't answered my

22   request.

23                   **MR. ASSAF:**  Hold off on?

24                   **SPECIAL MASTER:**  Hold off on your -- I

25   love the term secret brief.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 196

1           **MR. ASSAF:** Yes. And yes, I anticipate

2 that that would be part of any --

3           **SPECIAL MASTER:** Phase 2.

4           **MR. ASSAF:** Phase 2, correct, your

5 Honor.

6           **SPECIAL MASTER:** If we ever got to phase

7 2.

8           **MR. ASSAF:** Correct.

9           **MR. ROTH:** Just so we're clear over

10 here, I understand you're going to be an advocate.

11 But are you saying that this secret brief is not just

12 a compilation of documents, but also an advocacy

13 piece in there as well?

14           **MR. ASSAF:** Well, just to be clear, your

15 Honor, it's an advocacy piece, but it's also factual

16 support from -- by the form of affidavits.

17           **SPECIAL MASTER:** And that's the 220

18 pages in the aggregate. So you've got a brief with

19 certifications that total 220 pages.

20           **MR. ASSAF:** We have 220 pages of

21 briefing supported by -- because every time we make a

22 citation --

23           **SPECIAL MASTER:** Now, you just know that

24 my heart stopped when you said 220 pages of briefing.

25           **MR. ASSAF:** That's why I was glad when

Page 197

1    you were saying that you read everything and you're

2    hard-working.  I was like:  This is perfect for it.

3              **SPECIAL MASTER:**  Well, we all have

4    limits.  The word brief means more than just a

5    filing.  It means it ought to be brief.

6              **MR. ASSAF:**  It does, but --

7              **SPECIAL MASTER:**  Do you know why they're

8    called briefs?

9              **MR. ASSAF:**  No.

10             **SPECIAL MASTER:**  Because at common law

11   lawyers were paid by the word.  That's why they were

12   called briefs.  They were supposed to be brief,

13   which I guess that meaning has been lost.  220 pages

14   is not brief.

15             **MR. COHEN:**  I had a professor that I

16   couldn't call them briefs, I had to call them

17   memorandum.

18             **MR. PLACITELLA:**  At the right time we'll

19   be heard about the length and the court rule.

20             **SPECIAL MASTER:**  Well, we'll address all

21   of this.  As I said before, this is one of the two

22   other than that, Mrs. Lincoln, how did you like the

23   play issues in this case.  It's going to define in

24   large measure the contours of this case, where it

25   goes and how it's handled.

Page 198

1          So as you can see from the liberality

2  with which I quickly granted your request for longer

3  briefs, I'm not going to limit anybody.

4          I will tell you that as a consumer of

5  briefs, once a brief exceeds a certain page

6  limitation, you start to lose your reader.

7          But that's your call to make.  And I

8  will honor whatever way you want to do it.  That's

9  perfectly fine with me.  But please do take some

10  pity on this poor soul.

11         **MR. ASSAF:**  Thank you, your Honor.

12         **SPECIAL MASTER:**  At some point they may

13  have to respond to that, you know.  And then it just

14  gets on and on and on.

15         So I'm not saying no.  But please give

16  it some thought.

17         **MR. ASSAF:**  Okay.

18         **SPECIAL MASTER:**  And I'm sure you

19  understand that in addition to whatever -- this is a

20  big issue.  Let me start from there.  It's a big

21  issue.

22         So you can rest assured that in addition

23  to whatever you submit to me, I'm going to do my own

24  research, because I have to get this right.  And

25  I've already pulled the ABA single volume on

USDC, District of NJ       Williams, et al. v. BASF Catalysts, LLC, et al.      Monday
C.A. No. 2:11-cv-01754-JLL-JAD       Oral Argument      January 15, 2018

Page 199

1   attorney/client privilege.  It's a three volume set.

2   But the first volume deals with just the

3   attorney/client privilege.  I already pulled that to

4   the side.  And I intend to read that from cover to

5   cover before I start determining the application.

6              So that's just one of the things, the

7   source materials that I intend to look at.

8              Again, it's a big issue.  And it's

9   going to be given the dignity it deserves.

10             **MR. ASSAF:**  Thank you, your Honor.

11  That's all we can ask.

12             **MR. RYAN:**  I just want to make sure I

13  understand, your Honor.

14             So BASF is going to file its public

15  brief, non-privileged information.  We're permitted

16  to do the same?

17             **SPECIAL MASTER:**  Tomorrow.

18             **MR. RYAN:**  Tomorrow.  And then Chris

19  will submit his --

20             **SPECIAL MASTER:**  His reply.

21             **MR. RYAN:**  Just from a pure housekeeping

22  standpoint, there's no sealing order as far I'm aware

23  in place right now.

24             **SPECIAL MASTER:**  No.

25             **MR. RYAN:**  I presume BASF is going to

Page 200

1    file on ECF.  I don't know.

2              **MR. ASSAF:**  Yeah.

3              **MR. RYAN:**  But we should probably have a

4    conversation about the logistics of this, because

5    right now there's no sealing order.

6              And my view of the world would have been

7    candidly to file some kind of bookmarks that just

8    indicate that the submissions have been made to your

9    Honor as part of the process rather than filing them

10   on the ECF now.

11             **SPECIAL MASTER:**  If you prefer to do

12   that, that's fine.  As you well know, you can just

13   file a bookmark that takes a docket entry and sort of

14   reserves it for you.  And then you file whatever

15   you're filing directly.

16             Normally that's the process you follow

17   when something's being filed under seal, because

18   normally what the clerk's office does is the clerk's

19   office makes that entry for you.

20             **MR. RYAN:**  Right.

21             **SPECIAL MASTER:**  But since electronic

22   filing, we've kind of made the clerk's office a

23   little irrelevant in that respect.  And it then

24   becomes the obligation of the lawyers to do it.

25             If you think that there is material in

Page 201

1    your opposition briefs that you don't want the world

2    at large to see, I'm okay with you docketing a

3    bookmark and just sending the brief to me.   I'm okay

4    with that.

5                 At some point it's going to have to

6    become part of the public record at some point,

7    because if whoever is aggrieved by whatever decision

8    I make is going to seek review, and the only way for

9    it to be reviewed is for it to become part of the

10   public record.  So, you know, that's -- but that's

11   for a different day.

12                If your preference is to file a bookmark

13   and file the brief itself privately, I don't have any

14   problem with that.   That's perfectly fine with me.

15                If you read your opposition brief and

16   it's not one that deserves to be, you know, put on

17   double secret probation, then that's fine.  That's

18   your call to make.   I'm okay either way.

19                However you think is best for you works

20   fine with me, as long as I've got a docket entry,

21   which I don't have for this letter, and the

22   responses.  But that's okay.   We'll finesse that.

23                But as long as I have a docket entry

24   that I can make reference to later on so that people

25   who review it know that this stuff didn't just fly in

Page 202

1    over the transom, and I have the ability to complete

2    the record if necessary for review, I'm fine with

3    whatever works for you guys.   You don't need to air

4    your laundry in public.   It's not necessary as far as

5    I'm concerned.

6                    MR. RYAN:   Thank you.

7                    SPECIAL MASTER:   Have we heard anything

8    at all from the Supreme Court on the pending motion?

9                    MR. PLACITELLA:   It's pending.   They

10   only got all the briefing I think in mid to late

11   December.

12                   SPECIAL MASTER:   Oh, then it's going to

13   be a while.

14                   MR. PLACITELLA:   I don't know what their

15   first conference date is.

16                   SPECIAL MASTER:   Doesn't matter, because

17   that's not what determines it.   What determines it is

18   motions -- I think I know a little bit about this.

19                   Motions before the Supreme Court are

20   actually reviewed by the Supreme Court Clerk's

21   Office.   They don't go to the Justices for a law

22   clerk to create a memo.   There are staff lawyers in

23   the clerk's office who review all of the motions.

24   And they actually prepare what is in essence the

25   bench memo in respect of that motion.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Monday
C.A. No. 2:11-cv-01754-JLL-JAD     Oral Argument     January 15, 2018

Page 203

1             And when that process is completed, then

2    the clerk of the court calendars it before the Court

3    during a conference.

4             And it's all a function of how much work

5    the staff lawyers have.  More importantly, how much

6    work that particular staff lawyer has as to when it's

7    going to be percolated up.

8             I've seen them take several months to

9    come up, because obviously the moment that an

10   emergent application comes in, everything else has to

11   get put to the side.  And you would be surprised how

12   many of those there are.

13            **MR. ASSAF:**  Well, the emergent

14   application was granted, right, the stay?

15            **MR. PLACITELLA:**  Well, it was consented

16   to, wasn't it?

17            **MR. ASSAF:**  Yeah, but a Justice signed

18   it.

19            **SPECIAL MASTER:**  Well, normally an

20   emergent application is through a single Justice,

21   even if it's --

22            **MR. PLACITELLA:**  Well, it was consented

23   to.

24            **SPECIAL MASTER:**  Even if it's consented

25   to, it still has to be entered by a single Justice.

Page 204

1        It's actually the only thing you do by

2  yourself when you're on the Supreme Court is emergent

3  applications.  Everything else is done as a body.

4        And I would always give people the

5  opportunity to argue.  Come to my chambers and we'll

6  talk.  And I'd enter an order right after, so --

7  which was generally drafted ahead of time.  I can

8  say that now.  I couldn't say that then.

9        **MR. PLACITELLA:**  We figured that's what

10  was going to happen, so...

11        **SPECIAL MASTER:**  Well, you know, I was

12  then of the view and still remain of the view that if

13  really good lawyers say they need this quickly, then

14  they need it quickly.  And you need to respond to it

15  quickly.  Not an issue view shared by everyone.  So

16  in any event...

17        **MR. ASSAF:**  I once had -- Bill McGuire,

18  who I was working with, and he --

19        **SPECIAL MASTER:**  Great guy.

20        **MR. ASSAF:**  -- said the same thing to

21  me.  We needed an emergent application from the

22  Appellate Division.  And he said:  I'm going to write

23  a letter and the Judge is going to call me.  I said:

24  Really?  He said:  Yeah.  And it's exactly what

25  happened.

Page 205

1              **SPECIAL MASTER:**  Huge loss to the

2     profession.  What a great, great guy.  Excellent

3     lawyer and just a wonderful human being.   Big loss.

4                    Anything else, counsel?

5                    Well, thank you very much.   I've kept

6     you way too long today.   And that's partly my fault

7     for being too polite to you.

8              **MR. ASSAF:**  We got a lot done.

9              **SPECIAL MASTER:**  Especially to Mr.

10    Placitella, but that's okay.

11                    (The matter concluded at 3:20 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 206

1                    CERTIFICATE OF OFFICER

2

3

4          I, ROBERT J. BOCCOLINI, a Certified Court

5    Reporter, do hereby certify that the foregoing is a

6    true and accurate transcript of the stenographic

7    notes taken by me at the time, place and on the date

8    hereinbefore set forth.

9          I do further certify that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel

13   and that I am not financially interested in this

14   action.

15

16

17

18   _____
     ROBERT J. BOCCOLINI, C.C.R.
19   Certificate No. XI01040
     Date:  January 16, 2018
20

21

22

23

24

25

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 208 of 233 PageID: 48243

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 207

**A**

**a.m** 1:12
**AA** 83:20
**ABA** 50:23 198:25
**abeyance** 186:21
**ability** 25:13 136:21
  162:14 175:5
  202:1
**abject** 176:20
**able** 11:25 12:14
  27:16 32:24 72:24
  110:15 118:12
  119:23 120:4
  121:9 124:7
  146:20 148:15
  152:20 171:24
  178:17,19 180:23
**absent** 14:16,20
  15:13 19:20
**absentia** 172:16
**absolutely** 21:10
  44:16 99:21
  120:25 184:19
  192:17
**abstract** 58:25
**abundance** 189:25
**accept** 36:5
**acceptable** 72:15
  105:23
**accepted** 34:25 50:5
**access** 11:24 12:16
  12:20 13:12 170:9
  170:10,11
**accommodating**
  90:2 100:1
**accomplished** 36:3
**accounts** 18:15
**accurate** 23:19,20
  121:15 206:6
**accurately** 105:19
  121:14
**accused** 119:20
**acknowledged**
  66:13 69:19
  147:15
**acknowledging**
  69:14
**across-the-board**
  50:11
**act** 133:20 162:3
**action** 1:2 20:22
  32:20 101:14
  109:19,20 123:15
  206:11,14
**active** 128:9

**activity** 187:21
**actual** 22:15 24:25
  39:15 60:25 70:18
  112:15 114:3
**add** 48:18 169:8
  182:12 185:9
**addition** 53:16
  108:25 198:19,22
**additional** 25:13
  41:12 54:17
  133:23 145:18
  166:7
**address** 28:18 43:10
  66:1 72:21 80:6
  84:11,16 94:4
  156:2 158:6
  159:18 160:7
  171:19 197:20
**addressed** 26:21
  69:10 101:17
  134:24 138:2
  158:8,8
**addresses** 6:23
  28:17
**adequate** 114:12
**adequately** 121:18
**Administration**
  89:4
**admissibility** 120:18
**admissible** 51:14
  56:11
**admissions** 155:17
**admit** 51:11
**advance** 48:5
**advanced** 36:25
  37:17
**advances** 68:6
**advantage** 96:23
**advice** 17:1 124:7
  153:2
**advised** 164:7
**advocacy** 171:22
  172:1,3 174:14
  190:24 192:12
  196:12,15
**advocate** 121:13
  168:6 172:16
  192:20 193:2
  196:10
**aerospace** 146:21
**affidavits** 196:16
**afternoon** 5:5
**age** 42:20 121:2
**aggregate** 196:18
**aggrieved** 201:7

**ago** 34:24 68:2,8
  119:9
**agree** 15:17 16:11
  16:13 48:4 63:14
  79:6,20 80:1
  83:19 97:24
  116:25 120:5,6
  121:11 136:25
  156:16 170:15
  177:20 194:15
**agreed** 6:20 61:17
  64:11 75:7,8 77:5
  83:2 89:13,14,23
  102:20
**agreeing** 83:16
**agreement** 7:4 8:1
  61:22 62:1,5,8
  64:9,15,18 68:2
  69:9 80:5 82:17
  129:15
**agreements** 64:6
  95:3
**ahead** 4:21 27:22
  41:1 204:7
**air** 202:3
**akin** 18:12
**al** 1:3,6
**aligned** 152:9
  168:22
**allegation** 30:19
  32:9 35:16 43:24
  139:21 167:12
**allegations** 34:23
  48:2 103:19
  148:20 184:12,14
**allege** 103:5 130:13
**alleged** 101:12,13
  112:8 113:20,23
  135:11 183:18
**alleging** 36:10,12
**alligators** 120:11
**allow** 42:5 72:2,4
**allowed** 156:7
  165:11,22 167:23
  173:20
**allows** 13:12 40:7
**allude** 149:14
**alluding** 149:25
**alter** 10:2
**alternate** 84:17
**alternative** 195:16
**amended** 101:1
  105:10 122:10
  128:15 130:13
  140:5 141:5

**142:16 143:23
  144:18 146:16
**American** 30:25
  32:21
**amorphous** 126:17
**amount** 24:25 44:25
  46:20 47:7 55:20
  70:20 87:11 88:10
  88:21,22 92:5,14
  95:1 101:19
  109:12 138:11
  156:1
**amounts** 67:9 95:11
  95:15,19 138:22
**ample** 103:17
**amply** 176:23
**amputation** 59:10
**Amtal** 123:16
  146:20 150:12
**analogy** 51:9
**analysis** 17:25 18:3
  77:11
**and/or** 5:24 6:1
  84:21 98:5 167:14
  174:21
**anecdotal** 34:15
**announced** 93:1,23
**answer** 32:4 36:7
  47:14 99:2 107:12
  109:23 110:20,24
  110:24 111:4
  115:21 124:7,14
  124:19 127:16
  131:9 137:2
  140:12 141:4,22
  142:16 144:22
  149:24 153:6
  155:2 192:5,6
**answer's** 154:9
**answered** 128:2
  195:21
**answering** 173:4
**answers** 99:8 100:15
  100:18 104:19
  105:9,11 122:10
  126:2,14 127:8,25
  128:2,14,15
  131:10 135:12
  144:21 148:14,23
  152:15 154:7
  155:13,14 158:18
  159:16
**anticipate** 196:1
**anticipation** 53:23
**anybody** 34:14 43:3

**43:4 47:11 66:19
  72:15,16 78:1
  86:19 95:14 96:21
  96:22 97:7 116:4
  125:7 158:9
  184:13 198:3
**anybody's** 73:13
  162:10
**anymore** 116:21
**Anyway** 163:10
**apologize** 145:7
**apparently** 91:1
  114:12 160:10,14
  185:4
**appeal** 13:22 93:12
**appear** 83:5
**appearances** 2:1 4:3
**appellate** 43:2
  204:22
**apples** 23:12,13
  147:24
**application** 92:25
  99:4 116:14 160:7
  174:21 183:10
  199:5 203:10,14
  203:20 204:21
**applications** 164:4
  204:3
**applies** 55:10,22
  57:24 60:14 66:16
  126:11
**apply** 65:17 69:20
  159:5
**appointed** 115:18
  183:23
**appointing** 169:3
**appreciate** 10:21
  42:24 48:6 64:22
  86:5 99:23 100:6
  118:24 149:10
  182:16
**approach** 141:16
  189:21,24
**appropriate** 8:22
  42:5
**approval** 87:11
**approved** 51:5
**approximately** 8:9
  119:7
**aptly** 165:3
**arabesque** 80:24
  117:23,25
**areas** 25:11 62:19
  63:3,5 64:14,14
  64:14,20 80:6

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 209 of 233 PageID: 48244

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 208

**arguably** 16:23
**argue** 28:3,8 40:10
  181:11 187:5
  204:5
**argued** 37:16 38:23
  60:4 65:7 73:4
**arguing** 36:2,4
  116:9
**argument** 1:11 29:8
  39:2,11 46:10
  56:6 61:19 67:22
  68:5,7,12 69:20
  112:21 192:17
**arguments** 8:21
  45:19 60:16 96:5
  140:1 187:25
**arises** 40:6
**arm** 90:2
**Army** 90:22
**arranged** 53:23
  58:4
**arrived** 166:3
**Arthur** 3:11 4:24
**articulate** 121:17
**articulated** 121:19
**asbestos** 6:15 11:10
  34:19 47:7 50:5
  85:6 91:12 92:3,8
  96:25 97:8 98:6
  98:10,12,16,17,22
  132:8 147:2
**asbestosis** 86:20
**aside** 40:21 74:5
**asked** 11:20 43:7
  53:7 69:7 82:6
  124:13 134:25
  164:3
**asking** 6:10 16:7
  58:24 61:13 125:7
  125:8 178:14
**asks** 12:15 139:18
  145:11,20
**aspersion** 35:22
**Assaf** 2:9 4:13,13
  23:6 35:18 47:20
  48:8 49:6 50:17
  50:25 59:16 62:13
  62:22 63:16,18,21
  74:5,7,10,21
  75:15,18,20 76:4
  76:12,19,24 77:2
  77:6,24 78:8,19
  79:3 80:18 81:9
  81:15 82:7 84:22
  95:6,24 106:4

114:23 115:1
129:10 137:16,20
138:14,17 141:9
141:12,20,23
142:12 151:9
152:4 154:22
156:16,25 163:15
163:22 164:6
168:4,17,22 169:5
169:12 171:10,15
172:25 174:5
175:4,10,25
176:10,14,24
177:10,15,20
179:10,23 180:1,5
180:10 181:6
182:4,20 183:25
185:3 186:14
187:2,6,13 188:10
188:19,22 189:1
189:12,15 190:18
190:21 191:13,20
191:23 192:4,9,11
192:23 193:5,6,9
193:14,17,22
194:17,21 195:4
195:23 196:1,4,8
196:14,20,25
197:6,9 198:11,17
199:10 200:2
203:13,17 204:17
204:20 205:8
**Assaf's** 41:13
  163:13
**assert** 7:13 91:5
**asserted** 20:23
  92:19
**assertions** 163:21
**asserts** 6:18 166:19
**assigned** 183:22
**assist** 31:2
**Associates** 2:17
**Association** 31:1
  32:22
**assume** 11:17 34:5
  66:1 83:14 87:14
  87:19,25 88:4,24
  89:1 105:24 106:6
  109:4 136:14,23
  158:2 171:16
  176:22
**assumed** 18:10,23
**assumes** 7:16
**assuming** 89:18
  174:25

**assured** 198:22
**attached** 171:22
  172:3 174:14
**attack** 74:5,9 116:4
**attacking** 116:2
**attacks** 157:18
**attorney** 6:13 8:7
  10:5 32:5 58:2
  65:4,10,18 66:6
  87:21,23 88:1
  91:10,16 142:8
  156:19 206:10,12
**attorney's** 51:11
  57:19 148:2
**attorney/client** 6:2
  11:14 54:16 56:22
  135:6 137:14
  141:25 142:3
  148:18 163:21
  166:11 175:17
  199:1,3
**attorneys** 2:6,10,13
  2:17,22 3:4,8,11
  10:20 11:8 53:23
  144:1 146:18
**attorneys'** 65:24
  91:22
**audited** 50:5
**August** 100:16
**authenticity** 116:2,5
  117:7
**authority** 17:19
  53:6,7 54:8
**avail** 15:4
**available** 30:3 45:1
  86:18,22
**availed** 14:23
**Avenue** 2:12,15
**avoid** 74:8 149:12
**awake** 108:10
**aware** 146:22
  199:22
**awful** 116:10 136:24

**B**

**B** 3:7 98:14 109:13
  148:13 152:23
  155:6
**back** 35:1 43:2
  44:10,20 45:13
  59:1 60:24 74:1
  74:17 77:19 81:3
  101:5 105:20
  114:14 121:24
  125:14 128:17,21

132:2 138:22
141:15 152:20
153:12 157:5
158:19 159:9
167:24 169:2
179:11 185:16
188:16
**backfill** 185:11
**background** 112:1
**backwards** 13:18
**bad** 43:12 65:1
  136:5 137:2
  157:12 162:21
**bag** 167:18 195:19
**bah** 153:16,16,16,16
  153:16
**ball** 111:1 157:8
**Ballard** 1:11,14
**ballet** 80:23 117:22
**ballpark** 41:21 72:9
**bankruptcy** 66:11
  66:14,20,25 67:8
  67:20
**bar** 30:25 32:21
  167:1
**barn** 166:13,13
**barred** 7:7 8:14
**base** 19:14 60:21
  90:12,14,14,14,16
  90:18
**based** 7:12 34:10
  73:2 98:21 112:21
  123:15,23 127:4
  139:2 148:20
  155:5 171:12
**bases** 57:4
**BASF** 1:6 2:10,22
  2:25 3:4 4:12,13
  5:2,9,14,18,24 6:4
  6:7,10,18,21 7:13
  8:17,19 9:15,23
  12:15 18:12 19:15
  19:18,22,25 20:1
  20:4 29:9 33:12
  33:17 34:6,25
  39:16 43:16 44:9
  45:21,24 51:18
  53:13 67:23 68:2
  69:2 93:8 98:8,18
  99:8 100:14
  101:11,18,25
  102:10 104:4,18
  109:11 112:8,11
  115:5,8 119:6
  120:1 123:15,21

124:9 152:19
160:5 163:18
165:16,24 185:10
195:10 199:14,25
**BASF's** 18:15,19
  98:5,9,14 104:13
  112:4 158:17
  165:12,21 166:5
**basic** 90:8,9,10,11
  90:11 96:2 104:8
  104:10 155:8
**basically** 8:17,21
  101:25 103:2
  116:1 168:9
**basis** 15:1 17:17
  31:12 57:5 64:24
  65:16 66:5,5 67:7
  69:18 70:18
  101:20 107:17
  109:15 112:20
  114:8 134:22
  142:2 164:9
  165:24
**bear** 16:1
**beard** 27:19 38:8
  118:4 157:14,15
**beef** 141:17
**began** 89:1
**beginning** 42:21
**begins** 143:17
**behalf** 4:6,7,9,11,17
  4:18 53:12 57:10
  108:3 164:2
  182:13 195:10
**behaved** 32:17
**behavior** 30:24 40:6
**beings** 56:8
**belief** 15:20,20
  131:4,24 134:20
  135:13,23 146:4
  146:17 148:1
  151:24 152:5,8
  154:2,16,20,21
  155:5
**believe** 15:24 16:14
  22:24 25:4 44:10
  44:12 45:11 47:15
  50:18 52:5 54:4
  57:23 58:14 68:13
  82:21 87:8,22
  91:18,19 96:13
  108:22 115:2
  120:9 161:9
  172:10
**believer** 155:15

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 210 of 233 PageID: 48245

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 209

belongs 35:25
bench 202:25
benefit 119:4
best 59:17 74:3
  102:4 111:14
  115:24 118:24
  123:19 124:11
  125:8,20 126:15
  127:16 130:5,8
  153:10,11,25
  158:1,24 174:2
  188:9 201:19
better 59:3,10,16
  60:1
Bevan 2:17,17 4:19
  6:6,8,13,16,19 7:5
  7:11,19,19,20 8:1
  8:12,20 9:4,22
  11:8,9 13:12
  15:18,20,25 16:20
  17:13 18:4 19:10
  19:15,21 20:4,8
  20:11,13,14,20
  22:2 28:12 31:7
  31:18,24 32:1,3
  32:10 35:14,16,22
  46:7 49:13,22
  50:8,9 53:7,19
  54:9 61:6,16,23
  61:24 64:23 67:16
  70:1 74:14,14,22
  74:23,25 82:22
  91:10,13 92:1,11
  96:15 97:1 99:11
  131:6 132:13
  137:5,10 139:3
  140:13 141:6
  142:14,16 146:20
  149:14 150:3,13
  151:4,11,13,18
  152:1,7,12,16,22
  152:23,24 153:2,7
  153:16 157:1
Bevan's 14:18 19:3
  50:15 65:10 137:7
  137:12 151:7
  152:19 156:18
beyond 45:17
  103:16 134:17
  135:5 175:15
big 141:16 155:15
  163:7,16 180:17
  198:20,20 199:8
  205:3
biggest 179:10

Bill 204:17
binder 162:13
Bingo 133:12
bit 4:21 5:22 6:3 9:1
  14:6 16:3 35:3
  42:22 47:5 56:6
  79:14 117:25
  132:3 133:22
  140:24 147:23
  166:14 182:15
  202:18
bizarre 170:4
blame 43:3,4,5
  188:25
blaming 156:10
blue 81:6 112:15
  119:15 142:23
  146:15
boatload 191:1
Boccolini 1:12 27:8
  206:4,18
body 204:3
bona 126:1
bookmark 200:13
  201:3,12
bookmarks 200:7
bottom 32:8
Boulevard 3:10
bound 56:2 136:12
Boyle 3:9,11 4:23,23
  4:25 5:1
brain 174:15
brakes 77:4
Branch 90:5
break 79:2 81:2,22
  156:5 188:14
  189:17,18 192:8
Brendan 2:16 4:18
Bress 3:4 5:2,2
bridge 93:25 175:9
brief 15:6 21:20
  45:4 59:22 64:7,8
  64:13 70:2 112:2
  160:8 163:24
  164:14,15,24
  165:2,25 169:25
  170:1 175:12
  177:24,24 181:14
  181:25 185:4
  186:15,20 187:5
  187:17 188:1,13
  189:3 191:5,8,12
  192:15,25 194:23
  195:25 196:11,18
  197:4,5,12,14

198:5 199:15
  201:3,13,15
briefed 73:4 176:23
briefing 53:11 93:23
  194:1 196:21,24
  202:10
briefly 106:20 112:4
briefs 185:11 197:8
  197:12,16 198:3,5
  201:1
bring 185:15
brings 60:24
broad 97:15,17
  191:9
broadly 12:13
brook 73:2
brought 41:1
  119:16 176:12,15
  180:22
bubbling 184:22
bunch 88:13
burden 9:15,16 22:4
  64:25 69:17,19
  73:18 74:1 77:17
burdens 7:12
bus 108:6
business 8:4 30:15
  37:13,23 38:10
  112:10,25

_____
C
_____

C 109:14 148:13
  152:23 155:6
C-1 1:23
C.C.R 206:18
C4 15:1
Cahill 2:13 3:8 4:14
  4:17 5:24 13:8
  19:2,25 22:6,12
  22:25 23:1,6,20
  23:22 24:11 25:21
  29:4 53:5,9,12
  54:10,20 61:2
  80:13,14 164:2
  166:4 182:13,18
  183:2 185:10
  195:10
Cahill's 18:20
calculating 101:19
  101:20 109:13,15
calculation 128:23
calendars 203:2
caliber 125:13
California 93:2
  191:3

call 80:23 161:3
  168:14 197:16,16
  198:7 201:18
  204:23
called 6:5,8 30:24
  58:5 77:1 150:10
  168:14 197:8,12
calling 30:20 141:18
calls 107:3 115:10
camera 164:10
  168:23,25 170:23
  183:1 192:18,21
  192:22 193:2
  195:9
camp 188:21
cancer 70:12
candid 186:9
candidly 125:10
  185:13,19 195:9
  200:7
capable 156:19
capital 59:11 109:10
carcass 48:17 79:5
care 155:7 168:18
  172:15 174:13
careful 173:21
carrying 78:1
case 6:19 10:6,8
  11:6 13:11 14:19
  14:24,25 15:19
  16:20 17:22 18:1
  18:5 19:6 20:5,7
  20:15,22 21:17,18
  21:21 23:24 24:2
  25:25 29:10,11
  30:14 31:22 32:22
  33:11,21,24 34:22
  34:22 35:9,13
  37:8,11,19,21
  38:5,20,23,24
  39:4,14,15 42:3
  42:16,19 43:14,15
  43:25 44:8,21
  45:6,14 48:2,24
  49:22 50:4,8,8,9
  50:21 51:10,14
  52:18,19 53:21
  54:14 57:21 58:2
  65:23 66:17 68:10
  71:19 73:1,12,14
  73:15,16 74:15,22
  74:25 75:2 76:7
  76:20 77:1,21,25
  89:24 93:20,22
  94:8 107:6,16

110:21 112:8
  115:10,14,16
  117:3 125:1
  130:25 131:7,12
  131:18 134:8,16
  134:21 135:9,10
  139:21 140:20,25
  143:21 146:19
  147:3,9 149:15,17
  154:5 157:25
  158:13 165:19
  169:25 170:10,11
  170:18 171:3
  172:6,21 173:12
  173:18 174:2
  175:13 176:5
  177:3,8,25 178:2
  178:3,8,22 180:4
  182:4 183:15,21
  183:23 184:12,17
  184:21 185:13,18
  185:22 186:3,7,16
  186:22,25 187:11
  188:13 194:2
  197:23,24
cases 11:10 21:20
  26:15 30:20,23
  31:14,24,25 32:1
  32:3,9,17 33:8,15
  33:16,18,21 34:19
  35:8 39:11,20,21
  40:13,19 41:6
  44:5 49:7,8,12
  50:15 51:5,6 58:3
  69:3,6 70:21
  80:16 93:18
  101:22 114:10
  117:17 121:3
  130:16 135:20
  140:24 153:3
  191:3 192:24
  193:12
cashed 81:13
Cassandra 3:4 7:16
cat 167:18 195:18
Catalysts 1:6 2:10
  2:22,25 3:4
categories 9:24
  11:18 25:4 54:7
  58:12 61:19,22
  62:1 66:8 79:24
  79:25 81:12,24
  82:4 91:8 106:19
categorized 20:17
category 10:9,13

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 211 of 233 PageID: 48246

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                      January 15, 2018

Page 210

11:19 54:3 57:17
67:12 92:1 102:5
115:4 137:4
**causation** 33:24
71:20 135:9
**cause** 20:22 84:16
135:10,11
**caution** 189:25
**Center** 2:21
**central** 80:24
142:13 150:12
**cert** 41:11 70:24
73:19 77:10 106:3
122:1,8 159:24
186:4
**certain** 62:1 82:14
111:5 148:24
166:20 171:5
198:5
**certainly** 14:16
30:25 31:20 32:21
35:19,20 45:2
50:18 65:10,13
121:9
**Certificate** 206:1,19
**certification** 7:23
14:21 15:6 25:14
41:19 73:17 76:14
76:18 101:15
102:6,9,12 103:15
103:19,25 110:22
125:1
**certifications**
196:19
**certified** 1:12,22
15:1,1 76:7
107:16 124:21
206:4
**certify** 206:5,9
**chain** 40:15
**challenge** 33:19,20
33:23 43:13 44:11
122:25 175:16
**challenged** 33:16
34:2
**challenging** 172:15
175:16
**chambers** 204:5
**chance** 126:24
132:12 172:16
193:1 194:23
**change** 64:7 105:4
139:22,22 145:13
158:3 181:25
**changed** 10:2 82:2

105:9 116:6 157:9
181:20
**changes** 128:8
194:24
**changing** 39:24
128:9
**characteristics**
169:5
**characterization**
25:17 121:15
**charging** 176:18
**charter** 42:16
**chase** 93:11
**Chatham** 3:10
**cheap** 33:18
**check** 81:12,13,13
88:10,10,20,22
158:23
**checked** 18:2
**Chernick** 131:19
**Cherry** 1:16
**chest** 85:5
**Chief** 55:18 60:7
78:2 100:17
120:19 137:20,21
139:24 142:14
144:3 169:2
**child** 131:12 132:11
**Chinese** 168:14
**CHK** 88:19,21
**chose** 45:5
**chosen** 57:18
**Chris** 29:18 199:18
**Christopher** 2:4 4:5
**chunk** 69:20
**churning** 95:22
**cigarettes** 88:25
**circuit** 33:22 40:11
44:22 45:8,18
57:22 73:20 77:5
175:14 176:16,16
176:17 179:12,13
181:13,19 182:22
185:8 188:8,10
191:2 192:15
**circumstance** 43:12
**circumstances**
125:20 167:15
170:4,15 184:18
**citation** 196:22
**cite** 193:13
**cited** 66:15,16 137:5
**city** 90:10
**CIVIL** 1:2
**claim** 8:23 24:14

31:3 85:10,12,13
88:1 98:8,14,18
98:20 107:18
132:7 133:17
134:1 145:16
147:7
**claimant** 84:4
**claimed** 21:11
109:18 119:13
**claiming** 86:19
135:6
**claims** 10:7 51:12
53:14 66:10 70:14
71:7,21 75:25
85:1 86:11 97:12
104:2 105:8 138:4
140:21 145:12,21
145:23
**clarity** 95:18
**Clark** 52:9
**class** 7:17,22 8:6
12:12,25 13:1
14:9,10,16,17,19
14:20,22 15:2,9
15:10,11,13,13,15
19:3 25:14 39:5
41:11,17,19,20,21
44:3 52:8 55:16
61:5 70:11,13,24
70:25 71:7,15
72:3 73:17,19
74:13 77:9,10
82:13 84:12 89:23
96:12,25 97:2
98:19,23 99:1
101:14,15 102:5,8
102:9,12 103:18
103:20,24 106:3
106:11,24 107:2
107:16,21 108:13
108:21 110:13,16
110:21 122:1,8
124:21 125:1
138:3,13,13,14,22
138:25 139:7
159:24 186:4
**clear** 19:5 23:16,18
42:16 54:19 70:7
89:14 94:17 96:12
96:18 117:13
120:17 125:4
130:11 131:15
132:14 145:3
150:3 151:5
152:18 153:19

156:18 176:17
187:14 191:8,16
196:9,14
**clearly** 45:17 142:16
195:19
**clerk** 202:22 203:2
**clerk's** 200:18,22
202:20,23
**client** 17:24 20:9
48:18 49:13,16
57:8 65:6 89:11
96:25 131:23
150:14 152:22
154:11 181:17
**client's** 57:21 79:5
155:14
**clients** 10:22,23,25
12:11,12,21 14:18
20:14 22:23 54:12
61:24,24 65:8,11
96:16,20 117:17
119:19 153:14,17
156:21 158:2
185:3 195:13
**clients'** 15:22 20:11
36:2 150:20
**clip** 162:13
**clips** 162:15
**close** 24:8
**co-counsel** 181:16
**co-defendant** 21:22
**co-defendants** 68:25
**codified** 115:24
**cogency** 48:6
**COHEN** 2:2 43:20
118:16 161:8
163:1,4 197:15
**collected** 29:9
**color** 128:4
**colorful** 165:4
**columns** 51:23
**come** 29:21 34:14
38:17 39:16 45:15
65:10 74:17 76:20
77:19 81:3 94:6
101:5 106:12
116:15 121:24
126:6 130:4
136:13 140:3
153:19 157:5
166:9 181:10
203:9 204:5
**comes** 61:12 65:8
143:23 181:12
203:10

**comfort** 169:16
**comfortable** 42:2
155:7
**coming** 40:8 99:23
179:11
**commencement**
98:6
**commencing** 1:12
160:13
**comment** 95:7
130:20
**comments** 59:15
104:18 127:20
**Commerce** 2:3
**common** 197:10
**communicate**
136:21
**communicating**
137:11
**communications**
67:1 144:1 147:9
191:10
**comp** 85:13
**companies** 69:3
**comparison** 13:7
**compel** 6:5,8 99:8
158:18
**compelled** 13:21
17:2,18,23 30:15
**compensation** 6:16
67:16 70:20 91:12
92:12 98:8,14,18
**competence** 136:18
136:18
**competent** 136:19
136:22
**compilation** 196:12
**compiled** 53:23
**complaint** 12:13
24:6 36:7 49:17
73:23 81:12 97:15
109:18 130:14
136:4,9,23 140:6
141:5 143:23
148:21
**complaints** 102:2
**complete** 20:8 149:3
202:1
**completed** 49:14
203:1
**completely** 136:25
177:20
**complicated** 167:21
**comply** 22:3
**complying** 73:3

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 212 of 233 PageID: 48247

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Monday
C.A. No. 2:11-cv-01754-JLL-JAD    Oral Argument    January 15, 2018

Page 211

comprehensive 25:5
comprised 18:2
compromise 19:18
19:21 94:6,16,23
computer 75:13
concealment 43:15
concern 40:4 71:24
141:20,23 148:4
173:3 174:8 183:1
189:25
concerned 35:25
65:21 76:6 133:19
202:5
concerning 5:23,25
14:16 15:18 46:8
91:16 99:6 104:13
105:11 112:10
concerns 9:20 58:20
58:21 66:2 91:21
91:24
conclude 178:3
concluded 205:11
conclusion 36:6
128:7
condition 86:20
conduct 72:13
confer 9:13 13:7
51:21 95:10,12
96:9
conference 82:8
202:15 203:3
conferred 66:12
confers 82:10
confident 42:8
72:11
confidential 15:8
37:25 38:1 46:2,4
46:6,9,24,25 47:3
47:8,9,20,22
65:12,24 66:14,19
66:21 67:1 91:19
92:5
confidentiality 8:4
46:15 60:9 65:19
65:25 67:5,10
68:1 69:8,11,16
91:23 92:10 95:3
confirm 81:23
conflicts 167:22
confusion 145:7
connected 92:19
CONNELL 2:11
Connolly 3:6 4:17
consent 102:21
consented 203:15

203:22,24
consents 100:21
consider 165:7
193:25
consideration
166:15
considerations
167:14 184:2,4
consistent 121:19
consonant 121:19
consulting 57:8
consumer 198:4
contact 84:17
contain 6:11 92:17
98:10,16 147:2
contained 13:6
24:25 57:25 98:11
98:17
containing 8:8
10:21 58:6
contains 11:14,24
12:10 13:15 23:22
53:20,25 54:13
151:3
contemporaneous
102:11 159:23
contend 109:11
context 31:24 32:1,3
38:21 173:11
continue 63:20
continued 2:1 3:1
140:5
continues 63:25
contours 72:9
197:24
control 124:2
136:10 140:9
149:23 150:5
161:19 176:16
controversy 5:23
conversation 56:21
123:1,2 200:4
conversations 144:6
copies 112:14 113:1
113:6,19 114:11
116:17,21 117:3,8
119:10,10,13,16
173:9,14
copy 12:15 13:5,8
13:11 52:2 112:16
114:6 116:2,2,5
120:22,23,25
164:24
Coren 2:5 4:7,7
108:4,6

corners 142:8 189:9
192:2
Corning 46:13
corollary 139:10
corporate 1:15
25:24 29:5 115:8
correct 9:5,9 11:19
11:21 12:6,7
21:10 22:22 24:15
24:16 28:13 35:18
43:18,19,20 49:2
49:6 52:10 56:16
57:3,16 58:10
68:3 69:4 75:15
75:18 76:24 77:2
77:6 78:19 80:10
81:24 106:4 109:5
113:23 128:24
139:6 144:2
147:20 154:22
176:24 177:15
180:10 182:21
183:25 191:20,23
192:9 195:17
196:4,8
correctly 52:12
64:24 106:18
correspondence
113:14 135:15
145:25 150:16
corresponds 145:6
counsel 2:24 4:3
5:14,18 14:9 20:3
28:25 41:18 44:4
56:1 70:23 71:3
72:2,19 89:23
130:22 131:1,6
132:13 135:15
140:7,19 145:25
151:15,16,21
157:18 160:4
167:23 183:2
205:4 206:10,12
counsel's 124:6
country 93:16
126:23
County 87:6
couple 82:1 170:21
187:13 189:17
Courier 163:8
course 89:19 99:16
99:17 146:12
150:8
court 1:1,12,22 10:1
15:24 18:5 22:5

27:10 40:11 42:25
44:11,19,20 45:13
45:14,20 54:1,5
55:8,12 60:10,13
60:18 61:6 66:21
70:3,17 92:20
111:1 143:4
164:19 165:17
168:24 173:17
175:15,21,21
179:2,6 190:17
197:19 202:8,19
202:20 203:2,2
204:2 206:4
court's 10:14 15:17
107:12 165:8
courtroom 121:4,7
courts 30:25 32:21
50:20 126:22,22
185:20
cover 193:12,12
199:4,5
covered 10:1
cranky 78:3,5
114:17,20,23,23
114:24
crazed 116:24 127:6
169:14
crazy 47:11
create 131:9 202:22
created 29:14 112:7
112:7
creation 56:13
credibility 51:15
credible 34:12
crime 6:1 163:20
165:9,18 167:13
169:25 170:19
171:4 174:21
175:6,17 176:6
187:22 194:3,5
critical 26:12
cross-examination
159:5
crucial 54:14 57:20
crux 106:15 139:21
CTY 87:4
cure 153:23
cured 183:11
cures 8:23
curing 9:19
current 12:11,13
34:6 103:7
currently 97:3
145:3

custody 136:10
140:9 149:23
150:5
custom 49:11
cut 20:24
CUY 87:4
Cuyahoga 87:6

**D**

d 55:5 109:16
152:23
D.C 2:8 3:3
damage 15:2 109:14
109:15,16 111:7
damages 71:19
98:20 101:12,17
101:19,19,20,21
101:21 103:11
104:8 106:22,25
107:4,8,13,18
109:9,12,17 111:7
128:23
Dan 5:2
dance 80:24 190:16
danger 37:8
DANIEL 3:4
data 8:9 29:8 95:22
193:18
database 6:6,9,11
6:21 7:5 8:7,8,19
8:20 9:12 10:18
10:21 11:12,17,22
11:24 12:9,16
13:6,8,13,15
16:23,25 17:10,24
18:1,9,12,19,19
19:2 20:4,16,18
22:6,12,25 23:2,7
23:20,22 24:12,20
25:21 27:2,5,6,6,7
28:4,12,25 29:14
47:11 51:22 53:5
53:7,9,17,19 54:9
54:10,11,12,20
56:25 57:2,19,24
58:13 59:2 61:16
61:23 62:20 67:18
70:2 74:15 75:4,9
75:10 79:21 80:14
80:14 82:12,22
91:21 94:18 96:11
96:16
databases 6:20 11:4
11:25 29:4,12
56:7 58:5 61:2,12

Case 2:11-cv-01754-BRM-AME    Document 621-11    Filed 07/23/20    Page 213 of 233 PageID: 48248

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 212

78:21
**date** 1:12 20:21
  81:12 85:12,14,14
  87:5,6 90:6,8
  106:7 202:15
  206:7,19
**date's** 106:13
**dated** 103:1 164:11
  166:1
**day** 4:2 16:3 26:21
  42:11 59:20 60:2
  76:11 88:24,25
  118:22 121:2
  163:16 180:9
  181:25 182:11
  201:11
**days** 115:9 190:11
**DC** 3:7
**dead** 130:15 148:8
  153:3
**deal** 19:10 42:4
  103:11,14 117:8
  125:22 129:25
  143:24 191:25
**dealing** 55:24 130:6
  130:11 136:7
  151:1
**deals** 104:11 111:21
  111:24 137:23
  199:2
**dealt** 166:14
**dear** 184:11
**death** 84:17 134:8
**debate** 129:10
  142:13
**decades** 37:6 45:2
**decedent** 84:14
  109:18,19 133:20
  134:10 140:19
  148:19 153:4
**decedent's** 139:19
  148:14
**decedents'** 133:10
**December** 6:7,24
  7:2,18 69:23 99:7
  102:16,19 202:11
**decide** 15:4 56:18
  167:9 177:18,19
  182:25 183:12
**decided** 16:21 55:19
**decider** 168:5
**decides** 15:12
**deciding** 26:14
  186:11
**decision** 16:5,8 34:9

35:9 38:20 56:2
  57:20 87:14 94:1
  100:17 105:5
  125:7 130:15,24
  131:17 134:22
  139:19 142:18
  143:21 153:13
  167:8 168:7,10
  201:7
**decisions** 73:9
  132:10 135:11
  148:7 165:19
  179:1
**deemed** 66:18
**defendant** 2:10,22
  3:4,11 4:12,23
  21:17,18 81:11
  94:25 113:16,17
**defendant's** 112:4
  163:21
**defendants** 1:6 2:13
  2:17 3:8 4:15,17
  5:24 7:14 31:22
  32:15,19 36:13
  38:22 67:21 73:21
  81:11 89:24
  107:22 131:20
  136:6 144:22
  164:3 171:5
  182:14,24
**defense** 26:18 31:2
  36:14 38:5,18
  45:6 65:22 72:4
  130:22
**defenses** 104:3
**deferral** 72:1
**deferred** 72:18
**deficiencies** 187:18
**deficiency** 145:19
**deficient** 101:3
  128:16
**define** 70:25 79:24
  80:4 110:15
  197:23
**defined** 7:22 13:1
  97:4 109:10,19,20
  110:16
**defining** 132:18
**definition** 89:2,5
**defrauded** 44:24
  46:13 133:1,4,7
**degree** 148:24
**delay** 74:16
**delays** 72:14 73:2
**deletions** 88:5,7

**demand** 66:23
  119:8 121:1
**demanded** 61:2,3
  113:2,3
**Demanding** 112:24
**demands** 115:5
**demon** 157:24
**demonstrate** 38:24
**demonstrates** 39:10
**denied** 103:25
  183:10
**deny** 99:14
**dep** 26:2
**depose** 132:13
  160:15
**deposed** 21:19,23
  29:8 136:2
**deposition** 26:2 29:5
  115:7,11 149:19
  149:25 151:8
  152:7,13,19
  156:20 157:3
  158:8
**depositions** 20:13
  113:14 118:19
  160:13 171:4
  175:7
**derivatively** 98:21
**derived** 10:22
**DESCR** 87:19
**describe** 109:9
  133:3 139:18
  145:20
**described** 34:6
  115:5 141:4
**describes** 146:16
  165:3
**describing** 28:6
  29:16 135:24
**description** 87:12
  87:19
**deserves** 199:9
  201:16
**designate** 65:23
**despite** 134:11
**dessert** 123:5
**destroyed** 112:8
**details** 105:2
**determination**
  164:17 176:6
  177:25 183:14,18
  186:6,21 187:11
  193:24
**determine** 85:5
  137:19 163:19

170:18 178:9
**determined** 137:17
  148:17
**determines** 164:20
  194:1 202:17,17
**determining** 199:5
**develop** 140:20
  145:12,21,23
**developed** 166:17
**device** 168:14
**diagnoses** 70:18
  84:21
**diagnosis** 20:21
  85:14,14
**dictates** 45:17
**differed** 101:21
**difference** 19:1 37:7
  53:4,19 118:1
  152:4 192:22,23
**differences** 128:5
**different** 10:13 11:5
  11:25 34:22 51:20
  54:9 58:7 114:5
  120:20 134:7
  139:16 140:25
  145:1 172:20
  178:15 180:2
  188:4,5 189:21
  201:11
**differentiate** 53:4
**differently** 9:2
**differs** 109:17
**difficulty** 36:1
**digestible** 56:19
**dignity** 30:21 199:9
**dire** 136:18
**direct** 130:14 131:3
  131:23
**directed** 150:8
  152:1
**direction** 11:8
**directives** 150:24
**directly** 43:10 47:23
  130:15,24 200:15
**disadvantage** 18:8
**disagree** 73:6,7 79:7
  185:23
**disagreement** 135:9
**disappoint** 193:7
**disclose** 60:14
**disclosed** 96:3 104:9
**disclosing** 47:7
**disclosure** 7:8 8:6
  46:8 54:2 55:9
  91:23 92:7,19,21

107:4 127:5 131:8
  167:1
**disclosures** 107:8
  149:16
**disconnect** 145:2
**disconnects** 154:24
**discoverability**
  83:13,15
**discoverable** 78:22
  82:21
**discovering** 36:24
**discovery** 14:15
  18:6 19:25 25:13
  33:6,9,10 38:22
  41:7 42:5 45:21
  46:15 60:5,6
  65:19,25 69:11
  71:16,19 72:13,14
  72:23 89:24 92:10
  96:2 100:16
  103:18,22 104:13
  107:5,15 118:18
  121:9 132:17,18
  140:1,23 155:18
  157:10 165:8
  166:20 167:5
  169:1 172:20
**discuss** 8:2 159:10
**discussed** 62:18,21
  72:18
**discussing** 69:1,24
  145:3
**discussion** 13:7
  23:15 70:17 106:2
  122:22 135:8
  150:10
**discussions** 64:6
  155:20
**disease** 20:19
**dismiss** 26:14 33:21
  139:20
**dismissal** 98:13
**dismissed** 35:8
  80:17 98:12
**disposition** 36:19
**dispositions** 138:4
**disproportional**
  114:13
**dispute** 9:25,25
  51:19 53:22 60:21
  60:25 61:18 70:19
  83:13,15 117:12
  175:16
**distinction** 65:5
  138:25 139:2

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Monday
C.A. No. 2:11-cv-01754-JLL-JAD  Oral Argument  January 15, 2018

Page 213

**distinguishes** 54:20
**District** 1:1,1 181:1
**Division** 204:22
**DLCO** 86:17
**do-over** 185:2
**docket** 20:21 85:9
 200:13 201:20,23
**docketed** 6:9 102:22
**docketing** 201:2
**doctor** 21:19 51:2
 85:15,15
**doctors** 21:13 32:12
 34:20 39:22 48:22
 48:23 49:3 50:21
 51:2 70:18
**doctors'** 45:12
**doctrine** 44:13
 57:23
**document** 58:8
 94:19 112:16
 121:4 139:10
 146:20 165:23
 167:6 173:23
 178:15 179:23
 190:2
**documents** 10:11
 101:13,23 104:1
 104:12,14 111:25
 112:5,9,12,25
 113:11,13 114:1
 116:16 117:2,10
 117:10 119:9,15
 120:18 131:1,24
 135:14 138:10
 139:8 144:15
 155:16 165:10,13
 165:22 166:24
 167:17,23 170:23
 171:17,21 172:1,6
 172:8,9,11,14,23
 173:6,6 174:1,9
 174:10,17,23
 175:19 176:8
 178:5,7,14 179:14
 180:20 187:24
 189:6 190:12
 196:12
**Doe** 37:19,20
**dog** 100:3 168:10
**dogs** 40:22,23,25
**doing** 32:12 34:20
 39:24 118:3
 126:15 134:4
 142:19 150:9
 167:25 168:16,17

183:20
**dollars** 118:14
 193:21
**Donna** 143:14
**door** 56:3
**Dornbusch** 3:11
 4:24
**double** 201:17
**double-space**
 162:17,25
**double-spaced**
 163:3
**doubt** 66:22
**Dr** 37:4,5
**drafted** 204:7
**drafts** 157:21,21
**drain** 120:12,14
**draw** 65:5 139:2
**drew** 138:24
**Drive** 1:15
**due** 33:8 45:17
 158:25 165:5
 166:6 181:21
**duty** 14:9 120:1,3

   **E**

**E** 2:13,16
**E-electronic** 82:9
**e-mail** 5:5 63:22
 78:17,18 101:4
 103:1 104:18
 128:1 163:13,22
 164:6
**e-mails** 42:10 62:19
 75:8 101:9 191:7
**ear** 77:22
**earlier** 41:10 44:19
**early** 2:18 45:2
 91:17 160:13,13
**easier** 63:8,11 72:7
 82:24 106:21
 163:8 172:5 190:8
**easily** 47:19 56:19
**East** 1:15
**ECF** 6:9,24 7:2,18
 8:15,16 99:7
 102:16,19,22
 104:2 200:1,10
**effect** 186:7
**effort** 126:1 131:20
 149:1,5 157:2,6
**efforts** 105:7 140:19
 145:12,21
**either** 10:6 24:13
 34:6 36:18 57:7

62:9 70:11 79:3
 98:7 112:25
 136:20 155:6
 163:6 167:11
 186:5,6 189:4
 201:18
**electronic** 116:22
 200:21
**electronically** 121:6
**electronics** 64:4
**elements** 10:7
**Ellis** 2:7 3:2 29:9
 123:21
**emergent** 203:10,13
 203:20 204:2,21
**EMP** 88:3
**emphasize** 12:10
**employed** 88:4
**employee** 206:10,12
**employees** 146:24
**employer** 21:11
 84:18,19 88:3
**employment** 84:19
 84:20
**ended** 84:20 90:12
 90:15,17
**engage** 49:22 188:3
**engaged** 29:10
**Engelhard** 33:12,17
 34:7 39:17 105:5
 105:8 134:21
 139:20 145:24
**Engelhard's** 145:25
**Engelhard/BASF**
 39:7
**Engelhard/Cahill's**
 146:25
**English-to-English**
 30:7
**enter** 136:1 204:6
**entered** 6:25 17:5
 203:25
**entertain** 96:7
**entire** 8:7 9:22
 10:18 11:12 13:8
 26:2 92:15 121:3
**entities** 67:14,20
 69:5 105:1
**entitled** 7:14 32:19
 36:23 45:21 61:9
 73:15 93:9,10
 96:1,4 107:17
 123:22 149:20
 151:11 155:19
 156:22 166:20

195:13
**entries** 6:21 22:14
 24:20 61:4,5
 67:19 94:19
**entry** 52:7 100:21
 102:21 200:13,19
 201:20,23
**equally** 136:15
**equals** 39:14
**equation** 26:14,18
 28:2
**equity** 185:15
**especially** 10:25
 19:7 168:24 205:9
**ESQ** 1:16,17 2:4,5,5
 2:9,13,16,22,24
 3:4,7,11
**essence** 202:24
**essentially** 12:2,15
 56:2 67:17 82:9
 136:8 139:9
**established** 36:8
 61:14 182:21
**estate** 160:18,21
 161:5,13
**estates** 133:10
**et** 1:3,6
**ethical** 16:24 22:3
**ethically** 15:21
**ethics** 15:23 16:25
**EUGENE** 2:9
**eve** 180:5,8
**event** 41:5 92:21
 164:24 204:16
**everybody** 4:2
 16:24 23:25 24:5
 36:22 42:18 43:5
 46:1 48:17 73:15
 74:1 86:23 87:2
 94:5 120:8,23
 125:11 126:5,11
 148:25 155:22
 157:18 158:15
 162:17 166:10
 184:3,15,16
 189:22
**everybody's** 94:7
 142:11
**Everything's** 116:22
**evidence** 17:5 31:7
 37:5 48:23 51:12
 51:16 56:10 89:20
 92:16 98:11,16
 112:21 113:18
 115:22,24 118:24

119:20 120:3
 177:13 192:17
**evidentiary** 165:9
**ex** 164:9,13 165:11
 165:20,24 167:8
 171:13 178:17
 186:15 187:5
 192:21 195:11
**exact** 24:20 93:3
 161:4
**exactly** 21:4 30:4,5
 36:3 45:7,8 60:15
 60:17 186:18
 204:24
**exam** 86:2,14,14
**examine** 191:9
**example** 14:25
 30:11 39:19 49:13
 64:6 65:21 137:5
 143:4 167:21
**examples** 25:3 65:15
**exceeds** 198:5
**Excellent** 205:2
**exception** 6:1 55:10
 68:24 74:11
 158:22 163:20,20
 167:14 174:21
**exceptions** 6:1
 174:22
**exchanged** 11:5
**exchanging** 75:8
**excluded** 51:3
**excluding** 50:21
**excuse** 86:3
**exercise** 36:16
 128:11,11 157:24
**exhibits** 118:21
**exist** 64:18 132:17
 135:21
**existed** 135:20
 148:19
**exists** 14:24 132:18
 142:7
**expand** 112:3
**expansive** 54:24
**expect** 73:25 193:4
**expected** 135:2
**expedition** 31:12
**experience** 167:4
 168:17
**expert** 20:12 50:4
 57:8,9 95:14,21
 95:25 96:1,2
 111:6
**experts** 21:24 32:2

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 215 of 233 PageID: 48250

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                      January 15, 2018

Page 214

33:13 34:1 39:9
48:23,25 49:22
51:6,16 95:20
147:4
**experts'** 49:16
**explain** 112:1
139:15,17 145:11
**explained** 70:10
**explains** 193:19
**explanation** 140:11
145:22
**explore** 35:3
**explored** 147:2
**exposed** 85:18 98:5
98:21
**exposure** 21:12
123:16
**extensive** 55:21
67:22
**extent** 26:18 65:20
96:10 153:25
155:4 193:25
195:8
**extinguished** 45:7
**extra** 190:14,16
**extracted** 20:18
**eye** 120:15
**eyes** 65:24 91:22

**F**

**F** 2:9,18
**face** 31:4 34:8 35:1
39:8
**facia** 170:18 171:3
**facie** 31:19 164:18
169:25 172:6
176:5 177:3,8,25
178:2,3,8 185:22
186:16,22,25
187:11,21 188:13
193:24 194:2
**facility** 146:21,23
**fact** 10:10 18:22
32:10 33:17 36:3
36:21 37:19,20
44:15 46:12,18,19
46:21,24 47:2,5
57:18 58:4 66:18
66:20 69:13,19
71:1,16 73:23
75:24 92:4,6,7,13
104:24 107:3
119:12 123:24
127:1 138:9
149:14,15 150:17

157:6 167:11
176:15 183:20
184:9
**factors** 82:19
**facts** 34:5 36:7,17
36:24 101:14
136:7
**factual** 106:16
136:9 138:8
196:15
**failed** 100:15 176:20
181:12
**failing** 191:2
**failure** 176:20
**fair** 19:21 25:16
35:5,7 36:24
40:10 126:5
144:12 165:5
177:10 184:17
185:5 187:16
193:16
**fairly** 42:1,7,9 72:11
**faith** 149:1,4 157:6
**fall** 66:8
**falls** 1:15 94:15
106:18 119:14
**false** 44:12 77:9
**familiar** 43:12 76:21
191:3
**family** 21:14 132:6
134:6 135:16
**family's** 133:3
**fan** 163:7
**far** 12:19 20:7 35:25
68:21 76:6 88:18
98:25 125:16
133:19 162:14
199:22 202:4
**Farrell** 2:9 4:11,11
22:22 24:16,19,24
26:9,10,12 28:16
28:21 48:9,12
52:2,7,10,13,22
57:1 58:11,17,17
59:14,17,25 60:15
61:11 63:25 64:4
64:5 67:17 68:13
68:24 71:4,12
75:6 79:4,12 82:8
84:24 85:4,25
86:3,6,10 88:6,9
88:12 89:5 91:4
94:12,15 100:25
101:7 103:2
105:18 106:8,15

108:1 111:22,24
114:19,24 115:3
115:14,15,19
116:25 117:14
119:6 121:13
124:12 128:3
129:4,11,14,22
135:22 136:25
137:3,10,23 138:1
138:7,12,19,24
139:6,14 140:16
140:18 141:3
143:3,6 144:25
145:10 147:20,23
149:10,20 151:3
160:8 188:15
189:13,14
**Farrell's** 28:1,20
63:19 104:17
128:1
**fatal** 185:11
**fatally** 185:1
**fault** 205:6
**favor** 186:20
**February** 77:18
160:13
**federal** 17:5 44:20
50:20 56:10 66:20
89:20 92:16,22
112:21 115:25
126:22 166:16
168:24 175:15
**fee** 87:12,12
**feel** 13:21 27:12
65:2 105:17 181:7
**feeling** 80:22
**felt** 54:13
**fen-phen** 34:22
39:20 43:11 44:1
44:4
**FEV** 86:15
**fewer** 139:17
**Fiberglass** 46:14
**fide** 126:1
**field** 47:16 51:19,20
94:20,22
**fields** 3:7 4:16,16,20
8:9 9:24 18:2 29:1
58:12,15,18 75:12
78:21 79:6,8,10
79:19 82:20,21
83:1,23 84:25
86:1 88:9,14
96:11
**Fifteenth** 2:8 3:3

**fight** 74:1 100:4
118:22 168:10
**figure** 188:7 189:2
**figured** 36:11 119:3
147:21 179:4
204:9
**file** 25:22 26:3 49:17
58:3 98:17 106:2
122:10 150:12,13
160:17 165:12
177:23 180:16,24
181:25 182:24
185:4 186:20
189:3,4,10 191:19
191:22 192:3
195:1 199:14
200:1,7,13,14
201:12,13
**filed** 6:7 7:3,19,21
7:23 8:17 20:15
21:20,21 24:4,6,9
24:13 29:10 41:11
53:13 73:23 76:18
81:12 85:12,13
98:7 99:8 101:16
102:20 103:19
117:14 123:15
124:8 136:24
163:12 165:16
184:25 191:12
200:17
**files** 7:11,11 15:18
15:19,21 16:21
23:17 29:11
121:16 150:7,7,11
177:24 182:23
189:8
**filing** 15:9 42:3 91:2
102:12,18 148:11
159:24 163:18,24
164:13 166:6
197:5 200:9,15,22
**filings** 87:9 162:12
163:23
**fill** 171:6
**filled** 83:23,24
**film** 84:22,24 85:2
**final** 157:23 194:4
**finally** 36:18 39:21
68:15 92:11
147:21 194:17
**financially** 206:13
**find** 9:18 18:4 25:3
36:17 81:5 112:14
126:20 150:13

170:20 172:5
175:6 178:2 180:6
185:21 186:16
**fine** 41:14 62:11
63:24 72:21 73:7
80:8 102:10 124:4
125:15 136:15
159:7 184:23
198:9 200:12
201:14,17,20
202:2
**finesse** 201:22
**finessing** 141:21
**fingers** 158:3,9
**finish** 21:5 23:10
**finished** 53:1
**finite** 174:22 178:5
178:7
**firepower** 42:2
**firm** 4:19 7:20 11:3
11:8,9 13:12 17:8
17:9,18,23 18:4
35:22 54:13 89:11
96:15 97:1 116:19
146:20 184:23
**firm's** 9:22 10:22
54:11 99:12
**firms** 30:17 116:20
**first** 6:12 9:8,11
38:19,21 39:25
40:5 57:5 61:1
64:17 80:3 81:1
84:3,7 90:25,25
100:3,9,13,23
102:24 104:14,19
104:21 106:22
107:5 128:19,22
129:4,8,13,14,17
130:7 146:14
156:21,25 158:20
160:2 164:14
167:10 176:11
181:11 186:10
187:11,11,19
199:2 202:15
**firsthand** 134:12
146:3,17 151:2
153:18 154:18
**fishing** 31:12
**five** 119:7 156:6
188:15
**five-thousandth**
40:2
**fix** 162:8 180:14,15
180:16,21 185:11

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 216 of 233 PageID: 48251

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 215

185:15
**flaw** 185:12
**flawed** 185:1
**flip** 185:7,8
**floating** 89:22
**floor** 1:11 2:15,21
  29:17
**flow** 66:3
**fly** 201:25
**focus** 158:13
**focused** 64:13 97:22
**FOLEY** 2:11
**folks** 36:23 99:20
  155:23
**folks'** 73:2
**follow** 73:11 125:11
  181:12 185:20
  200:16
**followed** 181:19
  183:9,9
**following** 20:18
  83:17,20 95:6
  166:22 173:25
  193:25
**follows** 46:3 165:17
  180:19
**font** 163:1
**football** 42:10
**forced** 16:22
**foregoing** 206:5
**forfeiture** 60:6
**forget** 117:22
  134:23 135:7
**form** 11:17 12:2,5
  100:19,21 114:3
  196:16
**format** 56:8
**former** 12:11 140:7
**formulation** 135:23
**forth** 8:21 56:11
  60:16 102:17
  206:8
**forward** 15:19
  16:20 29:21 64:2
  94:8 125:2 127:21
  134:11 141:24
  142:2 164:21
  186:8
**found** 19:6 95:23
  112:11,13,16
  142:14 150:9
  178:8
**four** 39:22 95:23
  129:5 142:7 189:9
  192:2

**frankly** 41:8 46:9
  47:24 52:16 72:7
  112:5 127:13
  135:22 159:19
  160:11 172:4
**fraud** 6:1 113:19,20
  113:20,23 163:20
  165:9,19 167:13
  169:25 170:19
  171:4 174:21
  175:6,17 176:6
  187:22 194:3,5
**fraudulent** 43:15
  70:17 130:12
**fraudulently** 35:8
**free** 105:17
**Friday** 180:12 181:7
**friend** 80:23
**front** 82:11 94:2
  129:20 178:24
**full** 41:19 79:7
  137:17 146:14
  194:1
**full-blown** 59:4
**fulsome** 150:22
**function** 86:1,13,15
  86:16 114:19,20
  160:11 161:14,15
  203:4
**fundamental** 186:7
**fundamentally**
  180:11
**further** 35:4 47:5
  93:13 104:13
  131:13 133:22
  135:12 164:6
  195:8 206:9
**furtherance** 187:21
  187:25 188:3
  189:5
**fuss** 156:1
**FVC** 86:14,15

_____
**G**
**gain** 96:22
**game** 35:5,7
**games** 42:10 165:16
  115:4 116:13
**gander** 8:18 59:21
**Gene** 4:13 64:1
**general** 104:21
  126:20 127:2
  135:6 150:15
**generally** 130:9
  143:20 155:12

156:16 204:7
**genesis** 32:20
**getting** 19:9 21:9
  48:15,15 68:9
  95:16,21 99:20
  105:24 114:14
  135:25 143:2
  145:22 153:6
  159:5 168:20
**give** 5:15 79:17,18
  80:15 89:23 106:2
  106:10 125:8
  126:5,24 129:21
  149:8 155:19
  172:13 174:9
  177:12 178:4,6,15
  180:24 183:14
  190:11,11,13
  198:15 204:4
**given** 19:7 22:17
  33:11 65:18 69:17
  96:24 107:23
  109:2 110:13
  153:2 157:6
  194:25 199:9
**gives** 9:23 149:5
**giving** 11:11 30:21
  95:1 180:15
**glad** 11:20 137:4
  196:25
**glasses** 162:22
**glib** 153:8
**go** 9:19 16:23 22:2,2
  27:22 40:2 41:1
  43:5 44:3,10,20
  45:13 55:4 58:20
  63:8,11 71:16
  76:23 79:5 87:3
  88:5 93:2 96:6
  99:6 104:17
  105:20 114:10
  118:15 120:16
  128:17,21 130:10
  134:11 148:14
  156:5 157:24
  158:19 162:16
  164:25 173:24
  176:7 182:11
  184:4 186:23
  194:2 202:21
**goes** 30:16 110:21
  139:1 144:14
  155:8 162:14
  169:2 186:7 189:9
  192:1 195:8

197:25
**going** 5:20,20 6:3,4
  9:1,18 13:18
  18:11 27:22 28:3
  28:7 29:21 34:18
  38:17 39:5,16
  41:9,19,25 42:4
  42:13,14 45:19
  48:11 56:18 59:20
  59:20 63:9,12,12
  63:13,16,20,21
  64:10 70:25 71:9
  71:18 72:5,6,9,14
  72:19 73:2,11,12
  73:13,16,25 74:2
  74:5,12,14,18,19
  74:24 75:2,3 76:8
  76:10,20,23 77:13
  77:19 78:12 79:2
  79:9,10,11,16,17
  79:18,19 80:1,1
  81:5,10 83:5,7,9
  84:1,3,6,10,15,16
  84:17,25 86:10
  89:19 93:14 94:8
  95:8,9,19 96:10
  98:24 99:14,19
  100:22 106:14
  108:17 109:21
  110:14,22 111:14
  121:24 122:7,8,9
  122:22 123:8
  124:7,11,19
  125:16,17,19
  126:3,24 127:6,24
  128:17 129:15
  131:13,22 132:12
  132:21 133:1,2
  136:16,17 141:15
  147:24 152:25
  153:9,18,19
  155:22 156:12,25
  157:17 158:3,10
  158:19 159:16,18
  159:22 160:10,12
  161:21,24 162:3
  162:11 163:18
  165:2 169:14
  174:18,22 175:11
  176:22 177:2,4,7
  177:16,18 178:4,6
  178:6,7,10,11,16
  178:19,24 179:11
  179:18,20,21
  180:6 181:3,4,22

185:7,9,21 186:15
  186:17,19 187:17
  190:21 191:12,17
  191:18 192:3,14
  192:20,24 193:2
  193:15 194:14,15
  194:25 195:20
  196:10 197:23
  198:3,23 199:9,14
  199:25 201:5,8
  202:12 203:7
  204:10,22,23
**golden** 125:14
**good** 4:1 5:8,10 73:9
  99:5 116:3,12
  117:4 119:10
  149:1,4 157:6,25
  164:5 204:13
**Goodyear** 146:21
**Goodyear's** 146:24
**goofy** 116:7
**goose** 8:18 59:21
  115:4 116:12
**goose/gander**
  117:16 119:16
**Gordon** 5:24 22:12
  23:22 164:2 166:4
**gotten** 118:20 126:8
  139:10 172:20
**govern** 53:6
**grab** 162:13
**Grace** 50:20
**grammar** 128:11
**granted** 14:11,21
  164:4 181:1 198:2
  203:14
**granular** 81:19
**gravely** 193:8
**gravity** 186:11
**great** 43:13 75:6
  189:25 204:19
  205:2,2
**greater** 23:2
**grips** 181:12
**ground** 11:12 16:17
  19:19 154:12
**Groundhog** 16:3
  26:21 60:1
**grounds** 115:10
  140:3 141:25
  175:17
**group** 30:24 32:16
  87:19,20,20
**grouping** 30:22
**grow** 42:21

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 217 of 233 PageID: 48252

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                        Oral Argument                              January 15, 2018

Page 216

grown 43:7
guess 28:23 88:21
  89:7 111:1 178:21
  197:13
guessed 124:13
guidance 166:7
guy 121:22 144:11
  154:17 157:12
  204:19 205:2
guys 64:3 79:20
  101:8 102:4
  116:15 120:15
  156:5 168:13
  188:24 202:3
guys' 156:15

H

Haines 191:1
  192:16
half 48:10,15 68:8
  71:16 142:23
hand 47:12 54:25
  190:20,22
hand-in-hand 49:5
handed 58:11
handle 16:21 166:12
  190:11
handled 71:25
  166:18 197:25
handling 167:19
happen 56:20 74:20
  74:24 79:11 157:5
  158:10 177:23
  181:5 204:10
happened 44:4
  116:7,10 133:3
  135:18,18,20
  136:5,24 140:24
  143:22 154:16
  159:3 204:25
happening 102:14
happens 94:3
  158:12
happy 4:2 27:21
  54:25 62:16 71:8
  78:24 102:15
  117:4 130:10
  132:3 159:12,13
hard 22:5 30:13,14
  58:24 120:12
  128:18,21 142:15
  162:24 177:9
hard-working 197:2
harm 65:21 109:9
  109:13,14,15,16

Harry 2:5 4:9
hat 190:24
hate 156:14
head 68:15 97:21
  118:17
heading 60:18
heads 28:3
heap 35:24
hear 77:15 187:6
heard 13:20 60:2,5
  60:9,15,20 61:20
  65:16 67:22 69:13
  73:5 116:4 149:13
  152:11,14 164:23
  177:1,22 191:6
  197:19 202:7
hearing 26:22 64:17
  69:1 107:11
  127:21 138:20
  164:22 176:11,14
  187:19 190:23
hearings 150:24
hearsay 136:8
heart 30:16 74:5,8
  158:11 184:4,11
  196:24
hearts 158:11
heavy 73:18
heels 34:21
Heimlich 77:1
held 194:4
help 17:16 22:10
  36:24 78:10,13
  93:5 115:13 166:9
  194:19
helped 40:24
helpful 60:17 63:24
  105:2 126:18,19
  174:7
helps 80:25
hereinbefore 206:8
herring 112:6
hesitate 169:8
hesitation 111:2,12
Hey 70:3
high 17:21
highlight 79:17,19
  118:23
highlighted 82:20
highlighter 79:18
  81:6
Hill 1:16
hills 34:21
hired 135:3
history 21:14,15

51:11
hit 29:19
hits 141:13
hold 52:20 186:20
  187:10 195:20,23
  195:24
holes 73:22
Holley 37:4
Holley's 26:1 37:8
holy 42:11
home 40:23 99:24
honest 14:4
honestly 174:7
honor 5:3,8,13
  22:21 23:15 26:9
  26:20 27:24 28:9
  28:13 34:1 37:22
  39:4,9 40:10,16
  41:4 47:14 48:13
  48:19 50:17 51:9
  52:3,22 59:18,22
  60:8 62:17 63:1
  64:24 65:13 68:25
  69:13,23 70:7
  71:5 74:12,22
  77:7 78:25 79:13
  81:9,25 82:9,11
  82:18 85:1,22
  87:9,23 89:5,16
  89:21 94:11,13,23
  95:7 96:9,10,14
  97:5,18 99:11
  100:5 101:4
  105:18 106:18
  107:10 108:7,12
  109:25 110:10,12
  111:3,5,19 112:22
  113:6,23 114:3,21
  117:1,9,15 118:9
  118:23 119:6,25
  121:12 122:7,13
  122:17,25 123:3
  123:16 124:4,12
  127:18 129:1
  130:2,10 132:3,20
  134:2,18 135:22
  136:17 138:9,24
  141:10 144:7,12
  145:1 146:10
  147:7,20,24
  149:11,21,25
  150:8,16,18
  151:24 153:1,12
  154:7 156:9,17
  157:4,14 159:13

160:19,23 161:18
  162:1,9 169:9
  175:11,20 176:10
  177:1,10 179:10
  179:15 180:6,10
  181:6,22 182:14
  182:25 184:21
  185:15,19 187:3
  187:14,19 188:7
  188:13 191:6,15
  192:4,14,24
  193:22,25 194:1
  194:18 195:7
  196:5,15 198:8,11
  199:10,13 200:9
Honor's 77:15 83:18
  96:24 127:20,21
  150:24 152:15
hope 42:7 72:11
  158:11 177:6,7
hopefully 71:24
  158:9
horrible 81:7
horse 166:12,13
hospital 21:12
hour 60:3
hours 48:10 194:22
  195:2
housekeeping
  199:21
How's 189:11
huge 155:12 205:1
human 56:8 205:3
hundred 118:14
  193:20
hundreds 81:16
  112:11 121:5
hurt 38:2 157:19
husband 143:22
husband's 131:18
hydrogen 77:11
  103:17

I

ID 85:16,23
idea 39:13 50:12
identical 109:4
  115:10
identified 59:22
  78:20 117:10
  131:7
identifiers 6:22
identifies 180:19
identify 58:17 69:8
  94:24 138:3

154:21 172:6
  175:19 179:14
  189:6 191:2
identifying 129:19
  187:24
identity 6:12 7:14
  65:9 91:9 129:6
ignore 19:12,13
  183:12
ignored 19:13
illustrate 64:21
  66:18
ILO 84:24 85:3,3
image 118:17
imagine 168:18
importance 11:9
important 10:19
  19:24 48:21 52:17
  52:18 69:25 84:25
  156:2 177:12
  184:2,3
importantly 70:19
  191:21 203:5
impose 54:5
imposed 61:3
imposing 72:25
improper 32:17
impugn 51:15
impugned 48:25
in-house 5:14
inadequacy 103:20
inapplicable 7:8
inappropriate
  165:21
include 64:11 74:14
  89:13,15 98:19
included 29:13
includes 20:6,18
including 12:11
  36:22 42:9 47:10
  67:9 109:11 177:1
  193:12
incomplete 22:13
inconceivable 74:13
inconsistent 75:10
incorporate 152:16
incorporates 7:20
incorporation 57:23
incredibly 130:1
independent 35:10
  35:12 50:4 51:6
indicate 146:19
  200:8
indicated 86:21
indicia 85:6

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 217

**individual** 15:2 25:1
25:5 94:25 95:11
95:15 106:25
107:18 111:8
170:25
**individuals** 129:6
129:19 134:24
135:1 140:10
**information** 7:9 8:4
8:5 10:3,10,12,14
10:21,23 11:4,7
11:15,18 12:1,11
13:13,16 15:2,9
17:24 19:4 20:2,3
20:4,19 21:1,25
23:23 24:25 25:10
26:16 27:25 29:15
29:22 31:1 34:15
37:12,23 44:12
45:22 46:1,9
51:10,17 52:16
53:12,14,22 54:2
54:7,10,13 56:4
56:11 57:6,11,18
57:20,25 58:1,7
58:18 61:15,19,23
62:2 64:11,23
65:5,7,23 67:3,8
67:24 68:1,9,11
69:2,4,10,18,21
70:5,9 71:14,17
75:14 79:11 81:20
86:18 88:23 89:24
91:16 93:1,9,14
93:15 99:22 102:8
102:11 104:2,5,8
104:11 106:16
107:4,8,22 108:20
112:9 113:25
114:7,15 122:7
123:17,21,23,23
123:25 124:1,3
130:17 131:1,3,4
131:10,14,16,21
131:23 134:20
135:13,23 136:9
137:4 138:5
139:11 140:2,6,8
140:13 141:7
142:3,7 144:15,20
146:4,17,18 147:1
147:14 148:1,2,16
148:21 149:22,24
150:3,4,21 151:2
151:13,15,24

152:5,8,18 153:13
154:2,15,20,21
155:5,5,24,25
157:3 167:16
190:3 199:15
**informed** 134:5
**infringe** 16:16
**ingrained** 97:20
**initial** 8:22 107:8
149:16 176:1
**initially** 105:21
112:7
**inject** 170:24
**injury** 66:17 98:6
98:22
**ink** 112:15
**inked** 119:15
**input** 9:23
**inquiries** 133:23
**inquiry** 26:23 89:8
**instance** 40:5
113:13 118:19
167:10,22 186:11
**instructions** 159:1
**insulated** 168:12
**intend** 93:2 108:21
120:3 199:4,7
**intended** 163:23
164:8,9
**interest** 37:14
**interested** 174:11
206:13
**interface** 12:1
**interloper** 13:25
**interlopers** 6:19
**internal** 11:6 54:12
58:8
**interposed** 183:7
**interrogatories** 28:8
28:11,17 77:13
99:7,9 100:8,9,11
100:14,24 101:1
101:11 102:6,7,24
103:5,6,10,13
104:7,10,15,20
105:11,22,25
109:2 110:18
111:8,16 121:25
122:1,10,11 125:9
125:12 126:2
127:9,23 128:12
128:14,15,20,23
129:5 130:21
134:23 135:5,13
144:23 145:1

151:25 155:9,12
155:17 156:17
158:18,20,21
159:15,21 160:2
**interrogatory**
101:18,24 103:8
104:1,7,11,23,25
105:3,7 106:23,24
107:25 108:18
109:8,23 111:21
111:23 119:12
127:19 128:20,22
130:4 131:5 139:9
139:17,18 142:24
144:21 145:2,5,6
145:8,10,15,19
146:1,7 147:10,12
148:24 149:2,21
154:7,14 155:2
159:17,18 160:3
**interrupting** 52:25
**intimately** 43:11
**invade** 29:23
**investigation** 134:5
135:2 150:22
**invitation** 73:24
**involuntary** 98:13
**involved** 8:6 31:18
44:3 116:20 130:6
130:15,24 131:17
143:20,20 182:17
**Ironstone** 1:23
**irrelevant** 7:9 38:15
200:23
**Irving** 115:22 119:4
141:16 193:18
**issue** 24:1 27:13
28:4,16 39:3
43:10 45:3,19
53:11 55:23 70:15
72:18 76:2,6,23
79:8 91:9 95:10
100:8 106:16
107:1,1,10 108:13
112:1,5 114:21
117:3 118:19
119:17 123:11
124:20 125:6
139:20 142:12
145:18 149:13
150:1 160:9 161:5
161:5 169:17,20
170:23 171:3,7,9
171:10,12 172:17
174:18 182:15,25

183:13,14 185:18
187:15 191:4
198:20,21 199:8
204:15
**issued** 73:4 109:6
**issues** 10:7 15:2
19:7 29:23 36:18
41:20,21 66:2
69:24 71:1,20
75:9 126:6 143:24
144:20 166:11,15
183:3 186:3
197:23
**iteration** 34:7

**J**

**J** 1:12 206:4,18
**James** 2:18
**January** 1:8 8:16
103:1 104:4,17
105:23,24 109:24
128:1 164:11
165:14,15 166:1
171:12 206:19
**Jersey** 1:1,24 60:13
161:7 181:1 185:9
**job** 25:8 34:20 75:6
133:23
**John** 3:11 4:23
37:19,20
**join** 166:5
**jokingly** 184:8
**joy** 99:14
**judge** 31:6 33:7
40:12,14,15,21
41:1 55:18 60:7
77:4 78:2 100:17
120:19 137:20,21
139:24 142:15
144:3 168:25
169:2 185:14
204:23
**judges** 127:1
**judgment** 25:11
44:19 121:17
**judiciary** 166:16
**jump** 93:24 123:8
175:8
**Justice** 203:17,20
203:25
**Justices** 202:21
**justifiably** 132:9
**justify** 31:20 91:15
**Justin** 2:22 5:9

**K**

**Kansas** 93:2
**keep** 48:8 52:24
64:10 74:2 120:15
**keeps** 116:21
**kept** 205:5
**key** 26:23 64:14
66:4 75:9 139:20
**kick** 177:5
**kidding** 108:7
**Kimberlee** 1:3
109:3 140:11
143:3
**kind** 18:6 19:20
29:21 35:21 51:7
54:23 58:1 81:20
96:23 125:12
128:3 150:12,18
167:17 174:17
181:6,13 200:7,22
**kindly** 83:16 103:3
**kinds** 155:20
**King** 4:2
**Kirkland** 2:7 3:2
29:9,14 123:21
136:16
**kitchen** 126:21
**knew** 8:10 174:16
**knock** 106:21
**know** 12:14,20
14:23 18:8,9
31:15 37:8,16,16
37:17 38:11,12
39:3,5,10,19
41:16,22 44:4
46:5,5,23 47:14
58:6 59:8 63:13
68:4,8 72:2,8
73:15 74:22,24
77:12,24 79:25
80:25 85:16,22
86:8 87:20 89:17
91:1 95:7,24
96:15,21 97:20
105:17 109:25
114:14,22 115:23
116:21 118:10
119:5,21,22
122:24 123:20
124:6,10,15,16,25
125:18 127:2
130:7,23 132:9,10
132:17,23 133:1
133:16,25 134:15
134:24 135:17,18

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 219 of 233 PageID: 48254

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 218

135:25 136:3,3,4
136:23 137:6
140:12 141:6
142:10 144:6,8,9
144:11 147:15
148:5,9,12 149:8
150:9,10,15,21,23
151:11,20 153:14
153:24 155:4,21
156:14,14,24
157:20 161:4,21
161:23 162:12,20
163:6 167:25
172:22 173:3,5
174:3,23 175:6,15
181:1 182:8
183:21 184:16
185:6 187:14
190:3,13,16,22
191:9,18 193:11
193:14,17 196:23
197:7 198:13
200:1,12 201:10
201:16,25 202:14
202:18 204:11
**knowing** 75:1 79:7
151:1 174:16
**knowledge** 35:2
130:14 134:12,18
146:3,17 148:2
153:18,25 154:1
154:18
**known** 27:9 34:17
45:2 46:22
**knows** 29:1 142:16
151:4 152:16
155:23 180:11
**KONIGSBERG**
2:15
**Kozlov** 6:1 163:20
167:14 174:22

_____
**L**
**laid** 94:23 168:23
**Lake** 1:15
**language** 53:20,25
92:18 126:17
152:8
**lap** 40:24
**large** 34:22 77:8
162:13 197:24
201:2
**largely** 10:22
**lasted** 115:9
**late** 202:10

**lateral** 80:24 117:23
117:25
**laundry** 202:4
**law** 1:11 10:11 11:3
15:14 17:8,9,18
17:23 18:4 30:16
38:16 45:16 54:13
60:14 77:3 103:21
146:20 155:11
167:11 175:13
181:13 182:21
197:10 202:21
**Law's** 187:20
**laws** 176:16
**lawsuit** 11:1 24:13
53:18 73:22 98:7
98:13,17 116:20
124:1,9 126:11
147:5
**lawsuits** 24:9 141:2
**lawyer** 30:15 38:5
38:22 43:12 56:18
56:20,22 57:10
65:22 133:3
136:15 137:11
144:15 148:14,19
153:19 157:25
158:1,6 184:9
203:6 205:3
**lawyer's** 155:13
**lawyers** 7:15 30:22
31:13 32:16 43:13
61:9 114:14 131:8
131:22 134:4,5
135:3 146:22
147:4 184:5,23
197:11 200:24
202:22 203:5
204:13
**lay** 73:24 77:7 130:6
**learn** 124:25 156:20
**learned** 115:22
135:1 155:11
**learning** 113:13
**leave** 180:24
**leaves** 67:12 91:8
**left** 23:18 71:13
174:15
**lefthand** 55:3,4
**legal** 34:16
**legitimate** 120:24
125:25 127:12
**length** 197:19
**let's** 14:25 30:11
31:21 37:3 38:4

64:20 65:3 80:3
81:21 99:6 116:24
117:13 118:15
120:15 129:25
130:11 152:18
155:24 157:20
158:15 189:16
**letter** 164:11 165:1
165:16 166:1
171:12 187:1
201:21 204:23
**letters** 20:10 86:4,8
162:23
**letting** 122:19
**LEVY** 2:1
**liberality** 198:1
**lie** 135:11
**lied** 98:1
**lien** 87:13,13,13,16
89:3 91:5
**lies** 154:24
**life** 82:24 182:20
**lifted** 179:2
**lifts** 179:6
**Liggett** 191:1
192:16
**likes** 80:23
**likewise** 8:20
**limit** 12:20 54:5
198:3
**limitation** 164:1
198:6
**limitations** 8:2 61:3
**limited** 13:15 28:20
41:20 55:13 72:12
94:2 99:1 109:12
115:5 162:13
174:22 178:13
**limits** 197:4
**Linares** 40:15 55:18
60:7 78:2 100:17
120:19 137:20,21
142:15 144:4
**Linares'** 139:24
169:2
**Lincoln** 186:2
197:22
**line** 41:6 131:14
157:9
**lines** 70:24
**list** 21:13,16,17
22:18 79:6,17,18
81:5 144:14
145:24 156:6
165:22,23 190:12

**Listen** 124:17
186:14
**listening** 130:19
182:11
**lists** 104:20
**litany** 25:2 135:14
**literally** 34:21
**litigate** 45:15
**litigating** 185:17
**litigation** 2:24 5:18
11:4 12:21 44:1
53:24 56:1 58:9
64:10 67:21 70:16
75:21,21 92:20
98:7
**Litner** 40:14,21
41:1
**Litner's** 40:12
**little** 2:16 4:18,18
4:21 5:22 6:3 9:1
9:3,5,8,21 11:20
12:7,19 13:2,4
14:6 16:2 35:3
42:22 47:5 48:16
48:19 49:7,18,21
50:1 51:8,9,25
52:5,24 53:1 55:1
55:5,7,16,20 56:5
56:16 57:3,14,17
58:14,22 59:1,5,8
59:12 65:4 66:13
79:4 99:9,11,15
99:18,21,25 100:5
117:25 133:22
148:4 153:5
164:20 166:14
182:15 185:6
186:10 200:23
202:18
**live** 61:13 119:18
163:6 179:11
**Livingston** 2:12
**LLC** 1:6 2:10,20,22
2:25 3:4
**LLP** 1:14 2:7,11,15
3:2
**location** 84:18 90:13
90:15
**log** 173:24 174:1
175:20
**logistics** 200:4
**long** 16:6 41:6 43:1
77:20,20 107:23
145:24 162:5
163:2 176:20

182:11 185:18
201:20,23 205:6
**longer** 99:12 198:2
**look** 10:19 22:5 32:2
39:5,22,23 41:17
56:7,9 57:1 76:9
77:23 79:16 84:1
114:10 118:2
127:21 128:18,21
132:1,3 143:8,15
146:2 158:19
166:24 167:23
172:7,8,9,11
173:25 174:10
175:12 176:8
185:25 191:17
199:7
**looked** 17:21 30:13
30:14 34:8 54:23
81:18
**looking** 36:21,21
39:22 55:3 67:18
95:21 142:22
143:8,9,11,16
146:13 156:3
159:11 169:6
170:24 191:7
**looks** 15:6 184:13
**Lord** 116:15
**lose** 198:6
**loss** 109:12,14,15,16
205:1,3
**losses** 109:9
**lost** 33:23 129:13
197:13
**lot** 17:25 41:3 52:15
88:5 96:20 100:22
126:18 167:20
174:6 178:22
193:19 205:8
**love** 195:25
**low** 17:22
**LP** 3:6
**LPA** 2:17
**LSAT** 77:10
**luck** 73:9
**lung** 70:12 86:15,16
**Luther** 4:2

_____
**M**
**M** 2:4,5
**machine** 63:17
**magistrate** 168:25
**magnitude** 184:24
**maintains** 11:3

USDC, District of NJ  
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.  
Oral Argument

Monday  
January 15, 2018

Page 219

maker 167:9 168:7
making 22:1 38:20
    48:8 130:15,25
    131:17 143:21
    183:18
malpractice 51:1
mandate 103:16
mandatory 53:20
    53:25
manipulated 75:14
manufacturer
    134:10
MARINO 3:9
mark 159:9
marked 116:5 128:3
Market 1:11 2:3
markings 85:6
married 184:9,10
Martin 4:2
mass 88:13
master 1:17 4:1,20
    4:25 5:4,7,10,15
    5:19 9:6,17 11:16
    12:3,17,22 13:3
    13:17,23 14:1,4
    14:11 16:1,9,12
    17:4,11,14,16
    18:7,16,21 19:12
    20:24 21:6,8 22:9
    23:1,11,21 24:3,5
    24:9,13,17,23
    25:6,18 26:4,10
    27:3,8 28:7,10,14
    28:19,22 29:2,19
    30:1,6,9,18 31:9
    31:16 32:4,7,14
    33:2,4,6,9,14 34:4
    35:15,19 37:10,15
    37:24 38:3,7,14
    38:25 39:18 40:14
    40:17,20 41:9
    43:3,17,21 44:6
    44:14 46:17,20
    47:1,4,10,18,25
    48:4,14 49:2,10
    49:20,23 50:2,7
    50:10,13,16,24
    51:7,22 52:4,9,11
    52:15,23 54:21
    55:2,6,15,18 56:5
    56:17 57:12,15
    58:10,16,24 59:4
    59:7,10,14,24
    60:12 61:8,25
    62:4,6,11,14 63:2

63:5,10,19,23
64:3 67:15 68:5
68:14,19,22 70:22
71:9,23 74:8,19
75:13,16,19 76:1
76:5,16,22,25
77:3,21,25 78:9
78:23 79:1,15
80:12,21 81:4,14
81:17,23 82:3,23
83:1,4,7,14,21,25
84:6,10,23 85:2,7
85:11,20,24 86:24
87:3,10,16,24
88:8,11,17 89:6
89:12,18 90:1,4
91:7 93:5,17,21
93:24 94:14 95:4
95:24 97:3,6,13
97:16,19 98:1
99:13,17,19,22
100:2,7 101:5,8
106:1,5,13 107:24
108:2,5,9,14,17
108:23 109:1,6
110:2,5,7,14
111:10,13,20
112:18,24 113:3,8
113:20 114:16,22
115:13,17,20
117:5,23 118:2,6
118:10,13 119:2
119:21 120:2
121:21 122:4,9,15
122:18,21 123:4,7
123:10,13,19,22
124:10,16,23
125:3,6 127:22
129:2,7,12,20,24
130:3,18 132:16
132:21 133:4,12
133:14 134:13
136:11 137:1,9,12
137:18,21,25
138:6,11,16,21
139:5,12 140:14
140:17 141:1,8,11
141:18,21 142:5
142:20,25 143:5,7
143:11,14,18,25
144:3,8,13 145:9
146:5,8,11 147:16
147:21 148:3
149:18 150:2
151:6,10,17,19

152:17 153:4,9,20
153:23 154:4,9,19
154:23 155:1
156:10,13 157:11
157:15 159:14
160:16,21 161:2,6
161:11,16,20,23
162:2,7,10 163:2
163:5,16 168:5,19
168:20 169:1,4,10
169:13,18,21
170:3,6,9,14
171:1,8,11,15,20
171:25 172:18,24
173:1,4,9,13,16
174:4,6,11,19
175:2,8,22 176:1
176:9,13,22 177:6
177:11,16,21
179:6,9,20,25
180:3,8,14 182:1
182:5,8 183:5,22
183:24 184:1
185:23 187:4,8
188:9,17,20,23
189:8,14,16,19
190:5,9,18 191:11
191:17,21,24
192:7,10,21 193:4
193:7,10,15,20
194:7,10,14,19
195:2,5,14,18,24
196:3,6,17,23
197:3,7,10,20
198:12,18 199:17
199:20,24 200:11
200:21 202:7,12
202:16 203:19,24
204:11,19 205:1,9
master's 165:8
    178:25
material 60:3
    200:25
materials 199:7
matter 18:22 55:9
    71:25 73:4 78:6
    79:15 87:1 182:17
    182:19 202:16
    205:11
matters 39:6 66:9
    78:4
McGuire 204:17
mean 7:20 9:11,21
    10:10 11:3 20:24
    30:2 31:4,18

38:12 40:15 45:25
46:24 50:8 56:17
72:15 85:21 97:14
99:13 108:25
110:3,15 112:15
129:25 167:24
180:15
meaning 68:15
    138:4 197:13
meaningful 108:19
    125:9 126:14
meaningless 117:18
means 16:5 30:3
    46:6 85:16 89:9
    91:1 121:21
    133:21 135:9
    146:15 197:4,5
meant 8:10 122:16
measly 44:25
measure 197:24
mechanism 168:15
Medford 1:24
medical 10:24 20:11
    21:24 31:23 32:11
    33:20,24 34:8
    35:11,12 37:4
    39:8,16 49:15
    87:1
medicals 33:11,18
    33:19,25 34:2
Medicare 87:12,13
    87:13,16,17,17,18
    87:24 88:1 91:5
meds 88:2
meet 9:13 13:7
    51:21 82:10 95:10
    95:12 96:9 159:11
member 15:11,13
    15:14,15
members 14:10,16
    14:17,20,20,22
    15:9 19:4 21:15
    55:17 82:14 93:11
    96:12,25 138:13
members' 89:23
memo 85:20 202:22
    202:25
memorandum 11:6
    58:2 197:17
memory 136:20,22
    163:25
mention 190:2
mentioned 29:5,7
    48:22 65:14 186:1
    193:23

mere 123:24
merits 10:6 45:10
mesothelioma 70:11
messes 168:21
met 9:16 66:12
    69:19 164:17,20
method 101:19
    109:13 155:18
methodology 73:8
    73:10
Michael 2:5 4:7
micrographs 113:11
Microsoft 11:23
mid 202:10
middle 88:6 120:10
military 21:15 89:6
    89:8 90:4,12,13
    90:15,17
mill 34:19
MILLER 2:20
milquetoast 27:13
mind 26:24
mindful 150:17,23
mine 80:23
minimum 69:15
    156:1
ministerial 161:16
    162:3
minor 94:12 185:14
minute 39:21 52:21
    64:8 189:17
minutes 156:6
    188:15
misconception
    79:14
misread 151:12
misrepresentation
    133:7
missing 118:21
misstep 185:7,14
mistake 18:11
misunderstanding
    13:5 76:13
modern 11:4
modify 55:8 79:21
    79:22
moment 16:2,3
    17:14 63:15 126:4
    135:7 175:23
    190:19 203:9
Monday 1:8 181:10
Montalto 2:24 5:13
    5:14,17,18
month 108:19
    122:12 160:5

Case 2:11-cv-01754-BRM-AME Document 621-11 Filed 07/23/20 Page 221 of 233 PageID: 48256

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 220

**months** 42:19 60:4
71:16 95:23
107:15 111:18
113:14 179:16
180:1 203:8
**moot** 71:1 102:24
**morning** 4:1 5:8,10
59:19 60:21 65:16
67:23 69:14
140:23 156:4
**moss** 43:7
**motion** 5:25 6:4,8
6:18 7:16,23
25:15 41:11 42:3
42:5 55:7,24,24
70:10,24 76:18
99:6,8 101:15
102:12,23 103:19
103:22,25 105:16
106:3,11 107:2,21
110:22 117:14
121:16 122:8
158:18 159:24
163:19 174:20
182:24 184:24
186:4,11 202:8,25
**motions** 5:22 20:14
202:18,19,23
**mouths** 150:20
**movant** 8:24
**move** 8:24 15:19
16:19 49:17 72:14
73:1,12 106:6
123:12 125:1
**moved** 106:5 157:8
**moves** 175:16
179:13
**moving** 74:2 78:1
94:7
**multiple** 60:7 61:22
64:5 74:11

———————————
**N**

**N.W** 2:8 3:3,6
**name** 5:16 20:22
39:24 84:4,7
90:18,20,24,25
137:7,12 156:12
**named** 55:11 104:24
109:7,22 110:17
160:22
**names** 12:24 22:19
**Nancy** 52:11
**narrow** 58:19
**National** 45:3 70:15

75:20,21
**nature** 7:16 53:15
110:13
**Navy** 90:23
**near** 184:11
**necessarily** 39:19
49:18,20 142:5
149:4
**necessary** 20:1 21:1
202:2,4
**need** 9:15,23 10:4
25:11,12 60:14
63:13 70:9,9
71:16 72:5 78:11
78:13 93:5 94:9
114:7 116:22
120:6,6,16 124:25
126:4 127:8
152:13 156:14
157:11 158:13
159:19 160:7
169:18 172:4,7
182:17 186:15,24
187:4,8,9 191:22
202:3 204:13,14
204:14
**needed** 40:25 156:5
204:21
**needing** 71:13
**needs** 22:2 42:6
68:10 73:1 119:18
140:10,10 141:3
**negotiate** 74:17
**neighborhood** 97:7
**neither** 64:22 91:2
206:9,11
**net** 12:3 79:22
**never** 12:25 16:16
24:4,5 32:3 82:17
114:22 157:13
158:12 171:10
177:7
**new** 1:1,24 2:16
60:13 68:8 161:6
161:13 162:18
181:1 185:9
**Newark** 2:21,21
**nice** 40:22 162:23
162:25 163:6
164:15
**night** 180:13 181:7
**NJ** 1:16 2:12,21
3:10
**Nobody's** 31:9
**non-advocacy**

192:13
**non-answers** 103:2
**non-bankruptcy**
67:14 69:5
**non-filer** 24:3
**non-filers** 24:1
**non-garbled** 27:16
**non-malignant**
70:14 71:7,21
84:25 86:11,20
**non-parties** 55:25
105:14
**non-party** 17:23
38:22 54:17
**non-privileged**
199:15
**non-proportional**
163:7
**non-settlement**
34:10
**non-substantive**
128:9
**non-talc** 69:5
**nonexistent** 117:18
**normally** 8:24 77:22
167:3,4 168:6
200:16,18 203:19
**note** 105:21 111:15
140:4 157:17
158:17
**noted** 64:7 106:18
163:22
**notes** 48:8,9 83:8,8
164:25 206:7
**nothing's** 42:14
**notice** 115:9 126:5
141:21
**noticed** 162:20
**notion** 35:24 75:10
144:17,19
**November** 82:8
100:11 111:17
**NS** 83:20,21
**number** 6:9,15,24
7:2,18 8:15 14:13
20:21 22:15,17,23
23:16,17,19,20
24:21 27:9 47:17
77:8 79:14,16
85:8,9,10,12
88:10,20 90:20
94:21 97:20
101:24 102:17
103:8 104:1,7,24
105:1,3,3,6,7,10

105:13 106:23
108:18 109:8,23
111:21,23 117:17
117:21 118:25
127:19 128:20,22
129:6,18,22,22,23
129:23,24,25
130:3 131:5
137:24,25 138:1
139:14,17 140:18
141:12 143:6,10
143:17 144:24
145:5,11,19
147:12 159:17,19
160:3 165:17
166:25,25 167:9
174:23 178:5,7
**numbering** 139:16
**numbers** 6:23 22:10
88:12 129:21
139:5
**numerous** 50:5
**NY** 2:16

———————————
**O**

**o'clock** 194:21
**oath** 152:24
**object** 127:11,11
141:24 194:10,16
**objected** 82:11
**objecting** 164:12
**objection** 41:14
127:12,14,14,15
135:6 141:24
142:1 162:6 183:6
**objections** 7:21
104:21 126:21
127:2 158:7
**objectively** 184:13
**obligation** 42:11
127:10 134:14
150:25 155:9
175:19 176:18
200:24
**obligations** 46:8
127:4
**obliged** 126:13
133:18
**obtained** 146:18
**obviously** 59:3
110:4 139:20
183:2 203:9
**occupation** 84:20
**occupy** 158:14
168:7

**occur** 42:6 96:7
107:5
**occurred** 105:15
107:7 115:14,15
115:17
**occurs** 35:21
**October** 7:7 8:14
16:5 26:21 69:1
100:10 107:11
138:19 176:11
**odd** 172:19
**offer** 19:18
**offered** 9:13
**office** 200:18,19,22
202:21,23
**OFFICER** 206:1
**offices** 1:11
**oh** 63:8 95:22 98:3
118:13 125:5
129:2 163:16
187:6 202:12
**Ohio** 7:8 44:11
66:15,22 160:19
161:3
**okay** 4:20,21 5:19
12:3 13:3,17,19
16:3,9 18:9 19:13
21:7 23:1,13,21
24:17,23 25:6,18
27:8,18 28:22
29:2 30:9 35:22
37:16,18 40:2,7
40:17 41:2 42:20
43:14 44:4,6,17
45:25 46:17 47:1
47:4,10 48:14
49:20 50:7,16,22
52:4,20 53:1 55:6
58:16 59:7,14,16
61:8,10,25 63:2
64:3 71:12 74:22
75:2,9 76:5,19,25
78:1,2,4,23 79:7
79:19 80:19 81:4
81:14 82:3,23
83:3,6 84:1,10,15
85:2,7,11,20,24
86:24 87:3,10,24
88:11,17,18 89:12
90:3 91:7 95:13
97:13 98:23 101:5
101:7 106:13,15
107:24 110:2,5,17
111:10 112:18
114:18 115:17,20

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 222 of 233 PageID: 48257

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                  Monday
C.A. No. 2:11-cv-01754-JLL-JAD                      Oral Argument                              January 15, 2018

Page 221

oppose 165:12
opposed 57:9 65:6
  95:2,21 119:15
  169:9 189:6
opposes 166:4
opposing 157:18
opposition 7:1,3,19
  70:1 102:20 106:9
  163:19,24 165:16
  165:23 166:5,6,21
  177:23 179:21
  180:6,9,22 186:24
  189:10 192:2
  201:1,15
oppositions 102:18
opt 15:12 56:1
optimistically 156:7
option 12:8
Oral 1:10
oranges 147:24
order 6:4,25 7:25
  8:14,23 10:24
  15:17,19,25 16:19
  17:5,7 22:3,3
  41:10 45:25 58:21
  60:13 63:12 65:19
  65:25 69:11 79:10
  83:5,9,19 89:19
  89:20 91:20,23
  92:10,15,17 94:8
  94:10 96:10,24
  100:19,22,25
  102:17,21 104:15
  110:4,7,11 127:21
  169:7 171:5
  199:22 200:5
  204:6
ordered 12:4 18:5
  45:20 61:6 72:23
  93:12 95:13
  107:22 110:25
  138:9
orders 7:7 30:12
  73:3 190:11
organization 30:20
  30:21 85:4
organized 11:5
organizing 168:11
original 44:21 84:4
  101:13,23 104:1
  104:12,13 109:18
  111:25 112:5
  113:11,12,17
  114:1,6,10 115:11
  116:3,6,10 117:2

115:24 117:24
120:7 121:22
122:9,23 123:7,10
123:13 125:3,14
126:6 127:22
128:20 129:22,24
130:3,18 132:17
137:1,9,22 138:6
139:12 140:14,17
141:8,12 142:20
143:14,18,23
144:13 146:8
148:5 151:6 152:3
153:22 154:3,25
157:23 159:14
160:16 161:11
162:9 163:4 168:6
169:12,21 171:1
171:20,25 173:1
173:16 174:4,8,19
175:2,21 176:9
179:9,16,17,18
181:15 182:1
185:5 187:6,20,25
188:8 189:12,13
189:16 190:9
192:10 193:6
194:7,14 198:17
201:2,3,18,22
205:10
old 42:19,21 73:14
  115:23 141:15,18
  163:8 168:13
omelette 148:6
once 5:20 27:11
  40:21,22 79:24
  93:1,14 103:18
  142:14 165:15
  166:12 198:5
  204:17
one's 92:23
onerous 30:3
ones 63:8,8,11
  129:17 174:23
opens 56:3
operate 98:24 126:9
operation 167:11
operative 12:13
opinion 15:23 40:11
  40:12
opinions 40:23,24
opportunity 40:19
  55:25 72:5 103:18
  177:12,17 180:15
  204:5

119:8,15 121:1
127:23 135:20
157:7 163:10,13
originally 111:16
originals 102:1,2,2
  112:14,14 113:1,7
  113:9,19 114:11
  116:9 117:4,12
  119:10
ought 32:24 35:2
  121:9 152:20
  197:5
outlined 94:16
output 12:8
outside 189:9 190:3
  192:2
over-thinking
  182:15
overarching 155:23
overboard 190:2
overdue 107:23
overreached 19:22
overreaching 19:23
overruled 142:1
oversell 75:22
overtaken 101:1
Owens 46:13
owned 53:17 54:16

——— P ———
P 1:17
P-E-A-S-E 52:12
P.C 2:9
p.m 205:11
PA 1:11 2:4
package 49:14
  50:22,23
packs 88:24,25
page 55:3 70:2 87:4
  88:12 94:18
  143:17 145:24
  146:3,5,12 163:25
  164:3 169:23,24
  172:14 187:5
  198:5
pages 118:21
  142:23,23 164:5
  171:16 196:18,19
  196:20,24 197:13
pages' 164:8
paid 44:25 87:12,13
  197:11
painfully 34:17
  150:3
paper 116:21 121:6

papers 117:2
paragraph 54:4
  97:21 146:15
  147:25
parallel 170:6
parameters 75:23
paraphrased
  186:18
Park 1:15
part 8:5 12:12,18,21
  12:25,25 19:24
  31:8 48:24 51:20
  54:11,21 75:2
  77:9 96:11 97:2
  108:12 111:7
  112:22 124:13
  129:15 156:8
  186:24 194:6
  196:2 200:9 201:6
  201:9
parte 164:9,13
  165:11,20,25
  167:8 171:13
  178:17 186:15
  187:5 192:22
  195:11
partially 175:18
participants 2:19
  3:1 22:15
participate 172:4
particular 38:24
  150:14 185:18
  203:6
particularly 73:19
  113:25 157:1
  183:15
parties 8:5 14:18
  53:13,17 67:2
  95:2 105:15 120:2
  160:17 164:23
  194:4 206:11
parties' 14:5 53:11
partly 205:6
partner's 27:21
partners 43:23
party 17:9,18 19:2
  51:10 65:7,11
  94:24 123:25
  127:10 166:19
  168:8 175:16
  176:18 182:18
party's 127:4
passage 132:6
passed 61:21
passion 48:6

passive 128:10
patience 13:20
patient 27:19 48:16
  51:8
patiently 83:10
patients 39:23
pattern 40:3,6 46:5
paying 44:24 69:3,6
payment 6:14 47:6
  92:2,5,8
payments 91:11
PC 2:2 3:9
PD 87:5,7,18
Pease 52:11 105:13
pendency 25:14
pending 29:11
  92:20 202:8,9
pens 116:17
people 12:24 15:3
  18:4 24:4,8 27:10
  27:12 30:23 33:21
  38:2 42:6 46:12
  61:6 74:11,14
  75:24 80:7 90:22
  97:1,12 114:9
  126:1,12,20 130:6
  130:14 131:7,12
  139:3 141:16
  142:17 151:1
  157:7 163:8
  201:24 204:4
people's 29:22
percent 70:12
  125:23,24
perception 136:20
  136:21,22
percolated 203:7
perfect 197:2
perfectly 72:24 73:7
  198:9 201:14
performing 168:12
period 72:13 98:18
permission 15:22
  16:20,23 99:15
permit 195:9
permitted 15:21
  199:15
peroxide 77:11
  103:17
perpetrated 113:19
person 25:1 104:24
  123:14 124:8
  148:9,10 151:20
  153:2 167:15
  168:4 169:8

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 222

person's 98:21
personal 6:22 66:17
  130:17 131:16
  134:18 148:10,11
  153:25 154:1
personally 141:6
persons 98:3
perspective 19:19
  36:20
pertaining 131:17
peruse 13:10
Peter 2:9 4:11
PFT 85:24 86:1,13
PFTs 87:2
phase 196:3,4,6
Philadelphia 1:11
  2:4
phone 4:22 36:23
photomicrographs
  115:6
phrase 117:22
physical 86:2,14,14
physician 134:9
physicians 43:23
pick 59:16 75:5
picked 193:18
picking 48:17 79:5
picture 27:24
  172:12
piece 113:14 121:6
  147:10 174:14
  181:8 193:19
  196:13,15
pieces 70:1
pierced 168:15
pile 146:9
pity 198:10
place 19:17 46:10
  46:11,25 47:3
  67:11 130:7
  199:23 206:7
Placitella 2:2,4 4:5,5
  5:6 13:17,19,24
  14:3,8,13 16:2,7
  16:10,18 17:6,13
  17:15,21 18:14,18
  18:25 19:14 21:4
  21:7,10 23:4,8,25
  24:4,7,11,15 25:2
  25:7,16,20 26:17
  27:1,4,18 28:5
  29:4,16,20 30:4,8
  30:10 31:6,11,17
  32:6,8 33:1,3,5,7
  33:10,15 35:7

37:2,13,22 38:1,4
38:9 41:12 42:23
42:24 43:9,19
44:2,7,16 46:19
46:22 47:2,9,21
48:1 49:25 50:2,3
50:9,12,14,18
51:4 52:6 62:3,5,7
62:8 65:20 67:23
68:6,10,17,20,23
69:14 71:6 74:12
76:15 80:10,13,19
81:1,2 86:22,25
92:24 93:6,8,19
93:22 94:11 97:10
97:22 98:24 99:2
114:6 115:7 117:6
119:12,18 121:10
121:11 123:8,11
132:25 140:22
151:7 160:25
161:4 164:12
165:7 168:2
169:17,20,22
170:5,8,12,16
171:2,14,18,21
172:2,22 173:2,8
173:11,15,19
174:8,13,25 175:5
176:3 177:22
178:4,18 179:4,8
180:19 181:8,24
182:2,6,16,23
184:23 188:2
189:3,19,20 190:7
190:10,25 194:8
194:12 195:13
197:18 202:9,14
203:15,22 204:9
205:10
Placitella's 49:11
  119:8 175:18
  176:19 191:8,14
plaintiff 20:19,20
  21:12,21,22,25
  49:14 84:8,12
  95:1 105:12 109:3
  124:5 132:22
  145:4,4,20,20
  149:22 151:25
  152:21 159:1
  185:11
plaintiff's 31:2
plaintiffs 1:4 2:6 4:4
  4:6,8,10 6:14,17

6:19 7:3,13,21
9:22 10:7,16 13:9
22:18 23:24 28:3
36:10,12 55:12
61:1,11,16 64:9
64:22 67:16 69:6
69:8 70:8 73:18
86:21 91:11,13
92:2,12 93:16
94:9 100:14 101:2
102:20 103:5,16
103:23 106:6
107:11 109:7,23
110:17,19,20
111:9 112:6,12
114:10 130:24
131:10 135:21
136:2 139:15
149:15 150:5
157:7 158:19
160:9,15 164:17
165:10,11,20
167:22 169:14
plaintiffs' 5:25
  21:11,13,14,14,15
  26:13,24,25 28:24
  41:18 48:2 70:1
  70:23 71:3 72:2
  89:22 101:1,12
  101:14 104:18
  106:9,22,25
  107:17 108:3
  115:4 149:16
  163:19 165:5
planning 70:8
plant 146:25
play 63:16 64:4
  166:15 170:22
  179:18 182:23
  184:2 186:3
  197:23
playing 72:10
playoff 165:16
pleadings 20:10
please 4:4 5:16
  13:23 21:6 24:18
  27:17 83:10
  105:17 118:13
  158:19,23 162:16
  162:17,25 178:8
  198:9,15
pled 12:13 97:14
plowed 16:17
PLRP 87:17,17,18
plus 34:24 58:20

60:3 70:12
POA 87:21
point 12:9 14:12,19
  14:23 16:19,19
  21:9 25:7,9,19
  26:23 28:1,23
  29:20 31:14 39:12
  48:20 53:2 58:19
  60:2,11 61:15
  66:4 69:22,22
  71:5 75:5 79:13
  81:10 94:13 96:8
  105:25 106:8,12
  119:22 123:16
  124:22 126:10,11
  127:7,18 145:17
  148:6 162:18
  165:14 166:23
  170:22 175:7
  177:17 178:21
  179:11 198:12
  201:5,6
pointed 187:19
pointing 158:2,9
points 14:13 60:24
  74:11
poke 73:21
polite 205:7
politely 122:19
poor 48:9 90:22
  198:10
posed 192:5
position 9:10,12
  10:17 11:12 14:8
  19:3 36:3,25 48:5
  54:9 59:2 71:6,13
  89:16 93:9,10,13
  105:19 112:13
  121:14,15,17
  172:19 194:9
  195:12
positions 14:5
possession 136:10
  140:6,9 149:23
  150:4
possessor 167:5
possibility 13:16
possible 12:16,18
  13:2,13 58:15
  75:17 80:6 124:24
possibly 156:1
Post 90:25 91:4
potential 15:15
  22:18 23:23 38:2
  38:10 71:19

power 87:21,22
powers 185:15
practical 148:4
practice 43:22 46:6
  49:11
practiced 180:25
practicing 155:11
practitioners 10:24
pre-certification
  103:21
precedent 92:24
preclude 70:4
precluded 95:14
prefer 162:15
  200:11
preference 201:12
prejudge 177:9
prejudice 72:4
  73:13
prejudiced 181:3
preliminary 13:20
premature 14:24
  15:7 103:6,11,14
  104:6,8 110:12
prematurely 7:16
prematurity 60:16
  107:1
prepare 58:3 202:24
prepared 58:8
  111:8 159:8
presence 10:25
  99:12,14
present 1:13 11:25
  48:7 70:19 133:25
presented 8:20
  55:23 91:15
presently 76:2
preserve 93:12
  120:3
pressed 128:19
presumably 86:12
  86:14 91:4 130:23
  142:1
presume 67:18,19
  140:1 199:25
pretending 174:2
pretty 30:13,14 70:5
  70:7 81:18,18,19
  97:6,14 154:5
  166:17 168:22
  171:17 176:17
  178:22 183:16
  191:8
prevented 95:16
  104:12

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 223

**previous** 145:14
**previously** 10:14
 53:8
**prima** 31:19 164:17
 169:25 170:18
 171:3 172:5 176:5
 177:3,8,25 178:2
 178:3,8 185:22
 186:16,22,24
 187:11,21 188:13
 193:24 194:2
**primary** 84:18,18
 84:21 85:14
**print** 116:23 142:23
**printed** 128:2,4
**prior** 7:10 8:14 10:1
 98:6
**private** 43:22
**privately** 201:13
**privilege** 6:2 11:14
 15:10,16 19:8
 29:23 54:15 66:4
 67:6 92:18 135:7
 137:15 139:25
 140:2 141:25
 142:3 148:18
 163:21 166:11
 167:1,10,13
 173:24 174:1
 175:17,20 183:4
 195:12 199:1,3
**privileged** 53:15
 55:9 56:3,23 57:7
 57:14,15 62:20
 65:12 67:4 142:9
 143:25 166:22,25
 167:1,6,7,9,17
 178:14,16 193:3
**prize** 120:16
**probably** 18:14 44:9
 85:23,25 86:13
 177:2 200:3
**probate** 7:9 87:7,9
 87:11,11,12,12,25
 88:1
**probation** 201:17
**problem** 36:5 40:5,7
 43:16 44:23 46:3
 62:25 64:21
 102:25 116:11
 117:7 122:2,4
 132:16 148:1
 149:7 152:25
 153:6,24 156:9
 158:5,6 162:8

180:17 183:11
 201:14
**problem--** 34:3
**problems** 104:20
 129:18 180:21
**procedural** 160:9
 183:7,11,13,13
 185:6,14 186:12
 187:15,16,23
**procedure** 164:23
 175:3,11 180:18
 181:25 185:20
**proceeding** 92:22
**proceedings** 170:7
 173:17
**process** 7:5 9:13
 43:2 51:21 76:8
 96:6 139:19
 145:15 165:5
 167:2 168:24,25
 170:25 182:22
 183:8 185:7,8
 189:2 195:8,9
 200:9,16 203:1
**processes** 28:25
**produce** 6:20 8:19
 12:1,23 17:19
 21:2 58:6 61:17
 61:22 62:1,19,21
 63:13 64:23 66:23
 75:8,11 79:7,23
 82:18 83:2,12,16
 83:19 86:21 89:19
 101:25 102:1
 109:21 117:6
 125:16,18,23
 132:22 134:14
**produced** 6:21 7:11
 9:14 10:24 12:4,5
 56:8 62:23 63:6,9
 63:11 66:22 72:23
 74:18 79:20 80:15
 80:20 91:25 92:9
 92:14 94:23
 102:11 112:12,23
 113:5,13 114:11
 117:11,20 121:4
 138:10 148:21
 150:14
**producing** 13:14
 59:5 65:2 77:18
 82:12 96:19
 112:25 117:10
 124:1
**product** 8:7 9:14

10:18 11:13 17:9
 17:19,24 18:3
 19:5 21:18 29:22
 32:12 43:1 53:16
 53:21 54:16 56:3
 56:6,14,15,19,24
 57:2,7,13 61:20
 66:5 67:6 85:16
 85:18,23 134:9
 157:23
**production** 6:5 7:22
 7:24 8:2 15:18
 28:14 53:6 54:6
 69:9 79:10 91:21
 96:11 155:16
**products** 98:5,10,11
 98:15
**profession** 34:17
 184:8 205:2
**Professional** 46:7
**professor** 197:15
**profitably** 80:9
 81:21
**Project** 45:3 70:16
 75:22
**pronounce** 52:12
**proof** 39:14,15
 176:21 184:9
**proofs** 132:19
**proper** 103:7
**properly** 32:12 36:2
 127:9
**proportional** 68:9
 163:7
**proportionality**
 68:7
**proposal** 9:21 10:15
 51:20 62:9 178:25
**proposed** 5:23
 100:19,21,25
 102:21
**proposing** 8:3 72:3
 178:11
**proposition** 17:20
 37:3
**propounded** 100:10
 100:11 110:18
 111:16 127:9
 130:21
**propounding**
 125:12
**proprietary** 8:4,13
 11:23 29:14 37:23
 54:6
**prosecute** 134:21

140:20 145:12,21
 145:23 147:7
**prosecuting** 146:19
**prosecution** 105:8
 147:15
**protect** 14:9 54:1
 91:20 195:11
**protectable** 37:12
**protected** 11:13
 55:9 56:24
**protection** 53:16
 54:18,24 92:18
**protective** 8:23
**protects** 38:16
**prove** 69:17 74:2
 85:17 108:21
**proven** 36:14
 113:21
**provide** 12:15
 107:22 110:8
 126:14 128:4
 131:10,20 138:5
 148:15 150:22
 153:13 157:2
 169:24
**provided** 10:23 13:9
 13:9 15:23 45:23
 94:21 100:18
 101:2 106:16,17
 107:9,19 127:25
 128:14,16 130:25
 138:8 140:10
 144:20 150:6
 155:6 160:4
 165:10
**provides** 29:15
 165:1
**providing** 13:4,11
 54:23 106:17
 169:15
**provision** 171:13
**psychiatric** 118:15
 193:21
**public** 10:11 170:2
 175:12 186:20
 188:12 189:3
 192:15,25 194:6
 194:22 199:14
 201:6,10 202:4
**pull** 63:21
**pulled** 198:25 199:3
**pulmonary** 85:25
 86:13
**punishment** 59:11
**pure** 184:24 199:21

**purely** 183:7
**purpose** 36:16
 114:14 120:12
 155:24 170:13,16
 180:21
**purposes** 20:17
 82:16 132:18
**pursuant** 16:25
 91:22,23 100:18
**push** 132:2
**put** 35:23 68:7 77:4
 95:8 126:17 129:8
 129:12 137:13
 141:24 142:1
 150:20 153:20
 154:4,6 173:18
 179:20,21 190:23
 201:16 203:11
**putative** 7:17 14:10
 14:17,19,22 15:9
 15:10,13 19:3
 52:8 55:16 61:5
 70:12 77:9 82:13
 89:23 93:11 96:12
 96:25 102:8
 138:12 139:4
**puts** 10:12 54:8 83:8
**putting** 62:15 74:4
 154:11 177:21

_____

**Q**

**qualified** 6:14 47:6
 91:11 92:2,4,8
**qualify** 47:16
**quality** 84:22,24
 85:2 114:5
**quarrel** 152:6
**quash** 55:8
**quest** 89:7,8
**question** 30:24 32:5
 38:15 47:13 58:25
 76:1,2,10,17,17
 89:9 108:15,23,24
 109:1 111:25
 113:12 124:8,13
 152:10,15 160:18
 160:21 173:5,5
 192:5,11
**questionable** 31:3
**questionnaire** 89:10
**questions** 107:12
 127:23 171:6
**quick** 42:13
**quickly** 41:15 42:9
 42:17 72:6,14

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 225 of 233 PageID: 48260

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Monday
C.A. No. 2:11-cv-01754-JLL-JAD                Oral Argument                January 15, 2018

Page 224

81:16 190:17
198:2 204:13,14
204:15
quiet 156:11
quill 116:17
Quinn 2:22 5:8,9,11
quote 8:8 101:13
109:9 192:16
quote/unquote
115:11 117:2
119:9

_____ R _____
raise 94:12 96:9
raised 107:10
117:14 119:3
145:17 187:17
raises 28:16
raising 74:11 119:7
Ralph 146:21
Ralph's 143:21
146:19 147:4
ratio 86:16
rattled 26:17
Raymark 50:21
re-deposed 159:3
re-respond 158:23
reach 186:15
reached 62:10 64:8
reaching 82:16
reaction 108:11
reactions 187:13
read 19:9 27:16
50:22 56:8 70:23
86:4 148:13,23
156:25 162:19,22
162:24 163:8
173:22 193:12
197:1 199:4
201:15
reader 198:6
reading 25:3 53:10
54:24 85:5 86:15
86:16 87:2 94:19
154:15 162:18
ready 36:19 41:22
42:17 72:24 185:4
real 128:21
reality 182:20
realizes 190:25
really 9:14 11:1
15:5 23:16 30:2
34:20 41:6 56:9
58:18 60:21 61:18
68:6 70:22 71:2

72:8 75:10 78:6
83:23,24 106:23
111:11 136:5
148:13 151:17
162:21 164:15
167:2 168:9
169:14 204:13,24
rear 120:11
reason 18:24 23:4,8
27:15 42:20 64:13
66:15 70:9 98:9
98:14 108:13
113:12 120:24
124:13 129:16
166:20 177:18
184:21
reasonable 8:3
10:16 32:11
reasons 141:13
156:22 166:22
188:6
rebut 174:15 178:19
rebuttal 165:13
recalcitrance 73:3
receive 164:24
received 6:14,16
31:22 34:7 47:6
53:12 54:11 57:7
65:6,6 67:3,9,16
70:20 81:12 88:2
89:7 91:11,12
92:2,4,8,12 103:1
145:25
receiving 146:25
recited 9:9
recognized 64:24
recommending
169:10
record 10:18 13:21
14:14 16:13,14,15
21:5 31:7 41:8
59:9 80:11 83:11
95:9 110:9 111:15
145:3 163:12
165:9 170:2 190:4
194:6 201:6,10
202:5
records 20:12 39:8
39:16 49:15 80:16
146:4,18
red 82:20 112:6
redacted 88:13
reduced 51:23
redundant 20:1
refer 38:5 170:1

reference 133:5
201:24
references 140:5
referral 8:12 30:12
38:6 39:13 48:21
48:25 49:4,9,12
91:16
referrals 32:18
referred 30:20,23
32:10,10 37:21
115:8 171:16
referring 6:13 7:15
10:5 20:3 28:16
32:5,16 38:20
55:5 65:4,9,17,22
66:5 91:10
refers 37:19 50:23
reflect 110:9
reflected 51:18,19
53:12 58:2
reflects 57:19 58:14
reformed 75:11
regard 10:9 55:11
55:14 90:17
129:18 134:7
182:22
regarding 10:2
108:21 130:25
144:20 145:15
regardless 9:12 13:1
91:13 107:15
110:15
registrar 161:8,9,19
Reiley 1:17 88:15
156:11
Reiley's 83:7
reiterate 195:7
reject 190:19,22
rejected 19:18 60:4
60:6,10 140:1
165:18
related 67:8 85:23
97:11,25 98:6,22
106:24 138:10
148:1
relates 10:5 30:11
93:15 96:24
relational 8:8 11:22
18:18 58:5 79:21
relationship 38:11
relative 206:10,12
relevance 10:4
relevant 8:13 15:3
77:10 86:11 95:5
104:2 112:9 114:1

114:2 124:20
164:16 165:4
reliance 71:20
relied 96:1,2 131:2
131:24 135:15
144:16 151:15,22
152:1,11
relief 109:10,13,14
109:16,17
relieve 123:25
religion 42:20
relitigate 45:9
relitigating 40:12
40:18 41:5
rely 95:15,25 120:3
120:5 134:3
relying 54:22 70:4
124:6
remain 104:21
204:12
remains 110:12
remediable 47:19
remedy 44:19,25
45:1
remember 34:16,24
61:1 69:1 83:22
120:12 182:18
remind 42:18
162:17
reminder 118:24
reminding 166:2
removed 117:3
reopen 45:14
rep 25:24 29:5
repeating 102:3
repeats 8:21
replies 7:1 102:18
reply 8:17 104:5
177:24 179:22
180:19,21 182:24
189:4,8 190:5
191:14,18 192:1
199:20
report 13:14 37:4
95:22 96:13
167:24
reporter 1:12 27:10
86:3,7 206:5
reporters 1:22
34:12
reports 12:1 20:12
31:23 32:2 33:20
34:8,10 35:1,11
35:12 39:23 45:12
49:16 58:6 165:8

178:25
representations
133:6 147:1
152:21
representative 84:7
84:11,12 109:2,7
109:22 110:16,19
110:20 115:8
130:23 134:8
148:10,11 160:22
160:24
representatives
52:8 70:11 133:9
133:15,18 138:3
138:13,25 161:13
representing 9:3
19:3 43:23
reps 61:5 103:20
138:14,23 139:7
reputational 65:21
66:2
request 14:24 15:6
41:19 80:15 83:16
103:23 139:10
165:18,19,21
195:21,22 198:2
requested 7:6 41:12
80:4 160:1 163:25
requests 155:15,16
167:5
require 19:7 21:2
required 8:19 99:12
101:25 102:1
requirements 73:19
103:15
requires 55:8
research 198:24
researched 184:25
reserves 200:14
resolve 60:19 91:24
resolved 87:13
121:23 129:15
respect 6:25 7:4,10
11:19 23:23 28:1
28:8,24 33:8 34:9
34:15,18 40:8,9
42:25 45:17 68:6
71:21 73:17 91:14
94:3 100:13
101:10,23 102:23
103:4,8,13 104:14
104:23,25 105:6,6
109:22 110:23
111:3 116:7 117:7
127:7,22 128:13

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 226 of 233 PageID: 48261

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Monday
C.A. No. 2:11-cv-01754-JLL-JAD                    Oral Argument                    January 15, 2018

Page 225

128:19 134:2
139:7 143:21
144:17,19 147:8
147:16 148:23
154:12 158:17,25
159:1,23 181:22
183:3 184:7 186:6
200:23 202:25
respected 94:7
Respectfully 125:2
184:20
respecting 94:23
respects 149:1
respond 78:17
108:18 110:22
122:6 126:1,16
127:10,12 149:1
155:9 159:22
174:5 178:10,12
180:23 198:13
204:14
responding 108:2
122:5 127:10
128:11 135:4
response 5:25 28:20
29:16 40:25 42:9
42:13 80:15
104:12 105:4
106:7 111:7 119:1
119:8 125:13,13
130:20 131:5,18
135:25 137:8,13
138:7,8 139:23
142:24 143:16
147:6,11 150:19
150:22 151:3
152:15 153:17
157:10 159:23
170:17 178:12
186:13
responses 28:17
103:7,24 105:11
105:14 106:10,11
109:21 125:9
127:18 130:16
131:15 132:15
134:19 143:1,13
144:18 148:12
151:23 152:3
154:14,17 156:25
158:20,23,25
159:25 201:22
responsibilities 22:4
Responsibility 46:7
responsible 109:11

responsive 126:3,4
132:2 146:1
147:12 157:2
159:16
rest 100:4 198:22
restrict 69:9
restrictions 54:5
173:18
result 7:6 12:4
32:13 79:22
100:18 166:16
183:19
results 114:3
retain 55:25
retained 147:4
retaining 167:22
retreading 135:8
reversed 23:6
review 16:6,8 21:23
34:1 73:8 94:10
164:9 165:12,18
165:20 170:22
178:25 189:6
194:23 201:8,25
202:2,23
reviewed 31:22
33:12,18,25 39:8
135:16 201:9
202:20
reviews 169:1
revisit 126:5
right 5:21 14:9,15
15:8,16 17:8
19:20 21:4,6 26:8
26:11,20 27:22
28:11 30:5 33:14
33:23 34:18 36:6
41:15 43:4,9 44:9
44:10 50:15 55:20
63:23 68:16,18
73:21 76:3,8 79:9
81:17 82:5 84:8
87:15 93:12 94:2
95:5 98:2,20 99:2
111:13,20 113:5
118:14 121:1
122:24 123:2,6
124:18,23 133:13
134:11 135:10
145:9 146:12,14
147:19 151:12,19
153:5 154:15
160:23 161:2,20
162:7 168:9 170:2
170:8,16 171:12

174:16 175:8,18
177:8 178:24
181:4 183:7
189:10 190:7
192:1,17 194:16
195:15 197:18
198:24 199:23
200:5,20 203:14
204:6
rights 14:10 94:7
165:6 181:21,23
rise 119:11 155:19
rises 119:14
risk 178:18
RIVERA-SOTO
1:16
road 1:23 141:14
179:16
Robert 1:12 2:13
4:14 206:4,18
ROBERTO 1:16
ROBINSON 2:20
role 168:12
Roman 162:18
Rooker-Feldman
44:13,18,21
room 36:22 42:3
115:23 158:15
184:16
root 21:11
Roseland 2:12
Rosenblit 117:18
Roth 2:2,5 4:9,9
22:20,21 23:10,14
27:18,23 28:9,13
28:15,23 29:3
38:5,12,13,17,19
39:2 40:9,16,18
41:3 47:12,13
62:13,14,16,24
63:4,7 64:1,11
65:22 66:13 74:10
75:7 78:15,16,20
78:24 79:3 81:25
82:5,25 83:3,6,11
83:18,22 84:5,9
85:9,17,22 87:8
87:15,22 89:10,14
89:21 90:3 96:8
97:5,9,11,14,17
97:24 108:4,7,11
108:16,20,25
109:5,25 110:3,6
110:9 111:2,11,19
112:20,22 113:2,5

113:10,22 114:18
115:6 117:6,9,24
118:4,8,11,18
119:19,24 122:3,6
122:13,16,20,24
123:6,14,20 124:3
124:18,24 125:5
127:17 128:25
130:1,2,9,19
132:20,24 133:2,9
133:13 134:2,17
135:24 137:5
142:22 143:2,5,7
143:9,12,16,19
144:2,5,11,14
145:2,17 146:2,6
146:10,14 147:19
147:25 149:13
150:6 151:14,18
151:23 152:14
153:1,5,11,22
154:3,6,13,25
156:8,12,24
157:13 159:12
160:18,23 161:9
161:12,18,21
162:1,5,9 196:9
Roth's 63:22
Rothenberg 15:23
22:23 23:3,7,17
69:24 74:23,23,24
139:5 150:11
round 172:11
RPC 15:24 16:25
17:7
rubber 141:13
rule 7:24 17:5 53:18
53:20,25 54:1,4
54:18,21 60:9
80:1 89:20 92:16
103:15 104:10
107:3,23 112:21
115:24,25 118:25
125:10,14 131:7
173:7 192:25
197:19
ruled 10:14 55:12
191:3
rules 16:24 46:7
56:10 115:25
126:14 127:5
150:25 157:9
179:19
ruling 7:10 10:2
139:24 194:4,5

rulings 10:1 100:16
run 96:16
runs 178:19
Ryan 2:13 4:14,14
164:2 182:10,13
183:6 184:20
185:24 188:18,19
188:23 189:15
195:5,6,17 199:12
199:18,21,25
200:3,20 202:6

————————
S
safe 99:24
sailed 33:23
sales 146:20
Samson 165:19
173:18 182:17,18
190:1
sanction 51:11
126:23 127:3
sanctioned 126:25
sanctions 72:25
126:6
satisfactory 127:4
satisfied 119:13
satisfy 58:21 65:1
73:19
sauce 8:18,18 59:21
59:21 116:12
save 6:22 75:9 123:9
160:2
saying 7:3 14:5
16:10 31:2,9
32:15 34:13 35:5
39:1 71:3 77:12
77:15 107:14
113:8 114:17
132:9 134:18
141:4,5 148:12
149:11 152:2,11
163:13 169:13
172:18 181:8
196:11 197:1
198:15
says 8:12,17,22
15:14 23:7 35:2
44:21 45:16 50:18
54:1,5 61:11
68:10 95:22
101:25 102:10
103:2 104:5
107:23 109:8
116:1 123:5
132:22 135:25

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 226

136:4 140:11
141:5,24 152:23
152:24 153:6,15
157:1 166:21
167:6 168:8
173:23 175:15
179:13 183:8
191:14 192:16
**SBMT** 87:25
**scanned** 20:5 25:22
29:11
**scary** 11:2
**scenario** 136:1
**schedule** 100:1
102:17
**scheduling** 6:25
102:17
**scheme** 77:9 130:13
**school** 77:4 141:15
141:19 195:15
**Schultz** 133:25
**science** 87:1
**scientific** 114:3
**scope** 60:5 61:12,13
80:4 139:25
**scores** 77:10
**scoring** 166:3
**screening** 168:14
**scriveners** 116:17
**seal** 46:14 164:13
190:3 193:3
200:17
**sealing** 190:1
199:22 200:5
**search** 25:23 90:24
90:24 113:17
133:22
**searchable** 20:5
29:13
**searching** 81:19
**second** 6:13 31:21
39:7 40:1 54:3
88:15 92:1 100:10
101:10,18,24
102:7 103:4,6,9
104:6,23 105:22
105:24 106:23
108:18 111:21
121:25 122:11
126:24 128:25
129:2,8,13 130:13
137:3 140:5 141:5
143:23 159:15
160:4 186:4
**secondary** 84:21

85:14,15 88:2,3
**seconds** 141:9
142:21
**secret** 7:15 8:23
37:14,16,17,18,20
37:21 54:6 65:13
91:18 164:14,15
165:1 195:25
196:11 201:17
**see** 10:5,12 15:5
22:6,9 40:6 52:3
54:22,23 65:12
67:7,25 99:10
108:8,9,11 117:6
125:14,25 126:2
128:5 140:4
167:16 175:11
179:3 187:12
191:13 198:1
201:2
**seek** 25:13 51:10
71:13 93:15 94:10
104:10 124:21
201:8
**seeking** 71:1 101:11
167:16
**seeks** 101:18 102:8
104:1,8
**seen** 29:1 30:14
35:20 69:12 70:17
74:23 167:20
173:6 178:20,22
203:8
**select** 139:3
**selected** 11:7 57:19
**selection** 57:23
**self-evident** 90:7
**send** 78:24 159:9
**sending** 201:3
**senior** 2:24 5:18
**sense** 84:2,12,13
126:8 174:18
**sent** 32:19 34:19
42:9 49:12 78:18
81:13 89:11 101:4
**separate** 18:2 43:25
145:18 164:7
**separated** 86:8
**separately** 43:24
**Sergeant** 133:24
**serious** 157:17
183:16
**serve** 103:24 149:21
**served** 115:9
**serves** 163:25

**service** 90:5,5,6,7,18
**set** 8:21 56:11 61:11
77:15 100:9,10,13
100:23 101:10,18
101:24 102:7,17
102:24 103:4,6,9
104:6,14,19
105:22,25 106:23
108:18 109:2
111:21 122:1,11
128:19,22,25
129:3,4,8,13,14
129:17 156:25
157:10 158:20
159:15 160:2,4
170:4,14 172:14
182:21 185:20
199:1 206:8
**sets** 100:7
**settle** 26:14 105:5
139:19 141:13
156:22
**settled** 33:17 39:20
46:23 98:12 147:9
187:20
**settlement** 6:15 10:3
10:13 20:3 34:9
44:11 45:12,22
46:1,9,14,18,21
46:24 47:3,8
85:13 91:12 92:3
92:9,13 94:25
95:19 105:1
**settlements** 45:20
46:2 66:7,10
67:13,13 69:15
91:6 94:20 95:12
138:5
**settling** 145:15
**SEV** 86:2
**seven** 42:19,21
73:14 104:20
184:22
**shake** 184:17
**shaking** 68:14
**shame** 147:13
**shared** 204:15
**shaved** 27:19 38:7
157:13
**sheet** 59:15
**sheets** 91:2
**shields** 149:13
**shifted** 112:13
**ship** 33:22 90:18,18
90:19,20,21,23

**shipped** 90:22
**shoes** 84:13
**short** 20:25 79:2
100:20 121:2
**shortcoming** 186:12
**shortcut** 190:8
**shortly** 41:10
**shot** 36:24 75:23
76:9,14 181:18
193:16
**show** 9:15 22:24
85:6 152:7 156:20
**showing** 29:24,25
30:2 31:19 35:13
187:21
**shown** 18:17,22,23
**side** 26:13,18 28:2
36:18 55:3 72:12
73:24,25 95:2
120:4 137:11
155:25 174:15,16
177:22 199:4
203:11
**side's** 73:16
**sideshow** 47:24
**sign** 159:6,7,8
**signed** 203:17
**significant** 11:14
19:1
**signing** 161:1,13
**silence** 74:13
**silica** 64:10
**similar** 11:23 86:20
93:15 140:18
144:22
**simple** 18:22 115:21
190:10
**simply** 12:16 18:12
18:15 47:15 51:13
183:12
**single** 18:5 20:5
104:24 198:25
203:20,25
**single-space** 162:19
**Single-spaced**
162:23
**sink** 126:22
**sir** 82:25 83:11 84:9
108:16
**sit** 42:14 74:12
119:24 133:24
160:14
**site** 90:9
**sitting** 75:1 156:11
**situation** 117:16,19

**six** 58:17 61:4 70:10
106:25 109:22
110:16,23 138:2
138:25 139:6
140:9 150:7
184:22
**skilled** 156:19
**slash** 141:12
**slew** 158:7
**slightly** 139:16
**slippery** 93:3
**slope** 93:3
**slower** 86:6
**slowly** 83:9
**small** 40:21
**smaller** 162:15
**smart** 121:22
**smiling** 110:10
**smoked** 88:25
**smoking** 21:14 89:2
89:3
**social** 6:22
**software** 11:23
13:12
**sold** 21:18
**solely** 186:12
**somebody** 15:12
21:2 23:21 39:21
47:6 57:9 84:13
88:25 136:7 137:5
141:6 144:9
160:22,24 167:5
179:1 183:23
**somebody's** 62:14
158:3 166:23
177:18
**something's** 200:17
**soon** 136:16 161:24
**sorry** 5:15 17:11
34:22 42:23 52:24
63:4 80:21 82:7
84:23 99:9 113:22
118:7 122:3 129:7
146:6 147:11
178:3 181:7 187:2
194:18
**sort** 13:14 24:10,14
49:3 55:13 58:5
70:8 71:2 166:8
172:19 200:13
**sorts** 71:20 112:9,9
**sought** 19:25 101:21
104:5 113:11,18
113:24 114:9,15
**soul** 198:10

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 228 of 233 PageID: 48263

USDC, District of NJ       Williams, et al. v. BASF Catalysts, LLC, et al.       Monday
C.A. No. 2:11-cv-01754-JLL-JAD       Oral Argument       January 15, 2018

Page 227

**source** 32:22 38:23
39:14 48:21 49:1
49:4,9,12 152:18
154:21 199:7
**sources** 8:13 30:16
38:11
**Southern** 3:10
**Spahr** 1:11,14
**speak** 27:20,22
47:23 48:10 74:6
79:12 106:19
114:7 143:5
**speaking** 138:2
**speaks** 64:4
**special** 1:17 4:1,20
4:25 5:4,7,10,15
5:19 9:6,17 11:16
12:3,17,22 13:3
13:17,23 14:1,4
14:11 16:1,9,12
17:4,11,14,16
18:7,16,21 19:12
20:24 21:6,8 22:9
23:1,11,21 24:3,5
24:9,13,17,23
25:6,18 26:4,10
27:3,8 28:7,10,14
28:19,22 29:2,19
30:1,6,9,18 31:9
31:16 32:4,7,14
33:2,4,6,9,14 34:4
35:15,19 37:10,15
37:24 38:3,7,14
38:25 39:18 40:14
40:17,20 41:9
43:3,17,21 44:6
44:14 46:17,20
47:1,4,10,18,25
48:4,14 49:2,10
49:20,23 50:2,7
50:10,13,16,24
51:7,22 52:4,9,11
52:15,23 54:21
55:2,6,15,18 56:5
56:17 57:12,15
58:10,16,24 59:4
59:7,10,14,24
60:12 61:8,25
62:4,6,11,14 63:2
63:5,10,19,23
64:3 65:8 67:15
68:5,14,19,22
70:22 71:9,23
74:8,19 75:13,16
75:19 76:1,5,16

76:22,25 77:3,21
77:25 78:9,23
79:1,15 80:12,21
81:4,14,17,23
82:3,23 83:1,4,7
83:14,21,25 84:6
84:10,23 85:2,7
85:11,20,24 86:24
87:3,10,16,24
88:8,11,17 89:6
89:12,18 90:1,4
91:7 93:5,17,21
93:24 94:14 95:4
95:24 97:3,6,13
97:16,19 98:1
99:13,17,19,22
100:2,7 101:5,8
106:1,5,13 107:24
108:2,5,9,14,17
108:23 109:1,6
110:2,5,7,14
111:10,13,20
112:18,24 113:3,8
113:20 114:16,22
115:13,17,20
117:5,23 118:2,6
118:10,13 119:2
119:21 120:2
121:21 122:4,9,15
122:18,21 123:4,7
123:10,13,19,22
124:10,16,23
125:3,6 127:22
129:2,7,12,20,24
130:3,18 132:16
132:21 133:4,12
133:14 134:13
136:11 137:1,9,12
137:18,21,25
138:6,11,16,21
139:5,12 140:14
140:17 141:1,8,11
141:18,21 142:5
142:20,25 143:5,7
143:11,14,18,25
144:3,8,13 145:9
146:5,8,11 147:16
147:21 148:3
149:18 150:2
151:6,10,17,19
152:17 153:4,9,20
153:23 154:4,9,19
154:23 155:1
156:10,13 157:11
157:15 159:14

160:16,21 161:2,6
161:11,16,20,23
162:2,7,10 163:2
163:5,16 165:8
167:22 168:5,19
168:20,25 169:4
169:10,13,18,21
170:3,6,9,14
171:1,8,11,15,20
171:25 172:18,24
173:1,4,9,13,16
174:4,6,11,19
175:2,8,22 176:1
176:9,13,22 177:6
177:11,16,21
178:25 179:6,9,20
179:25 180:3,8,14
182:1,5,8 183:5
183:22,23 184:1
185:23 187:4,8
188:9,17,20,23
189:8,14,16,19
190:5,9,18 191:11
191:17,21,24
192:7,10,21 193:4
193:7,10,15,20
194:7,10,14,19
195:2,5,14,18,24
196:3,6,17,23
197:3,7,10,20
198:12,18 199:17
199:20,24 200:11
200:21 202:7,12
202:16 203:19,24
204:11,19 205:1,9
**specific** 6:10 58:6
152:20 165:10,22
**specifically** 73:16
79:6 92:17 147:2
164:25
**specifics** 30:11
**spend** 14:12 100:22
159:20
**spoke** 29:4 133:5
**spoken** 29:3
**spoliating** 119:20
**spoliation** 119:14,17
121:17
**spot** 62:15,17
**spouse** 131:11
**spouting** 136:8
**spreadsheet** 11:18
12:2,5,23,24
13:14 18:13,15,23
51:23 79:23

**Square** 2:3
**staff** 202:22 203:5,6
**stages** 66:9
**stake** 19:8 154:12
**stand** 87:7 136:14
**standard** 119:14,17
120:18 125:15
179:12,13 180:12
181:21,24 188:4,5
188:8,11 189:4
**standards** 85:5
**standing** 84:13
**standpoint** 199:22
**stark** 128:6
**start** 6:4,6 19:17,19
72:24 77:17 86:4
90:6 95:21 149:5
180:7 189:6 198:6
198:20 199:5
**started** 84:19 89:1
90:11,14,17
**starting** 4:4
**state** 31:13 44:20
66:22 85:8 90:11
92:22 103:23
121:14 127:14
165:8,9 166:17
173:17
**stated** 165:17
**statement** 70:6
**statements** 98:9,15
**states** 1:1 20:21
98:4 100:14
101:11
**stating** 164:14
**statute** 7:8 66:15
**stay** 158:15 179:2,7
203:14
**stayed** 157:16
**stead** 133:20
**Steinmetz** 29:8
**stenographic** 1:10
206:6
**step** 169:15 176:7
185:10 194:3
**steps** 145:23
**stick** 68:22 120:20
**Stokes** 1:23
**stole** 59:24
**stone** 43:8 77:16
**stop** 17:14 112:18
120:7 157:12
168:20 175:22
**stopped** 89:2,3
196:24

**story** 77:20
**straighten** 24:17
25:8
**strangely** 159:11
**strategized** 181:16
**Street** 1:11 2:3,8 3:3
3:6
**strong** 41:13
**strongly** 27:13
**stuck** 19:23
**studies** 114:4
**stuff** 56:18 120:7
148:13 156:2
170:1,10 201:25
**sub** 132:2
**subject** 7:24 8:6
46:15 53:18 54:17
68:1 69:15 70:16
83:18 89:20 92:9
92:16 93:18 101:3
173:17
**submission** 8:22
67:2 129:9 164:7
164:13 165:11,12
165:20 167:8
170:17 171:13,23
172:3 176:2,23,25
185:12 190:13,14
190:15
**submissions** 5:23
67:1 195:10 200:8
**submit** 19:1 22:5
77:9 110:12 124:4
159:6 164:9
165:23 169:24
177:4 178:17
185:10 191:5
193:11 194:22
198:23 199:19
**submits** 167:7
**submitted** 20:12
24:14 53:13 88:1
100:19 143:4
**subpoena** 55:8
149:18
**subsequent** 100:15
**subset** 13:15
**substance** 96:6
159:2,10 183:15
183:16
**substantive** 22:14
105:9 139:22
145:13 187:18,25
**substitute** 131:13
161:14

Case 2:11-cv-01754-BRM-AME   Document 621-11   Filed 07/23/20   Page 229 of 233 PageID: 48264

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 228

**substituted** 131:12
160:10,11,24
**substitution** 105:15
160:17 161:24
**subtext** 71:3
**success** 130:12
**successor** 113:17
**sued** 20:19 43:24
81:11
**suffered** 98:13
**suffers** 147:25
**sufficient** 25:10
103:7
**suggesting** 76:15
96:17
**suggestion** 74:4
**suggests** 104:15
165:7
**Suite** 1:15,23 2:3
**summaries** 56:9
**summarized** 57:6
105:19
**summary** 10:15
48:20 56:10,12,13
56:14 121:16
**Sunday** 165:15
166:2
**superb** 27:9
**supplement** 100:15
**supplemental**
143:12
**supplemental/ame...**
104:19
**supplemented**
104:16
**supplied** 21:25
**support** 32:11 36:17
45:12 101:14
147:4,5 196:16
**supported** 15:22,24
103:20 196:21
**Suppose** 15:12
**supposed** 41:11,17
80:14 107:5
179:17 182:23
197:12
**supposedly** 64:18
71:14 136:5
140:23
**Supreme** 179:2
202:8,19,20 204:2
**sur-reply** 180:16,24
189:11 191:15,24
192:3
**sure** 5:17 17:15 21:9

23:12 27:23 43:17
47:18 55:1 65:23
76:22 79:20,22
80:3 94:14 102:14
111:14 116:20
120:16 129:3
151:20 152:10
164:5 173:19
180:3 184:15
188:17 198:18
199:12
**surprise** 34:14
76:20 81:10 98:25
**surprised** 157:1
159:3 203:11
**surrogate** 160:25
161:3
**Surrogate's** 161:6
**survive** 30:17
**surviving** 131:11
**sustained** 98:5
**SVC** 86:2
**swamp** 120:10,13
120:14
**swords** 149:12
**sympathetic** 77:22
**synthesis** 17:25 18:3
**system** 157:23

**— T —**

**T** 2:22
**tact** 166:14
**tainted** 32:18,22,23
38:24 39:4,11,14
39:15
**take** 10:17 12:23
22:4,5 27:10
30:12 37:3 41:14
43:7 47:4 59:12
66:8 76:9 79:2
83:8 86:6 100:3
118:16 128:18,21
131:25 136:14
151:7 157:3
162:22 171:4
175:6,7 189:16
191:15 198:9
203:8
**taken** 1:11 20:13
29:6 93:13 118:20
206:7
**takes** 77:20 152:19
187:12 200:13
**talc** 68:25 69:3 88:9
88:10,19,20,22

97:12,25 98:5,5,9
98:9,11,11,15,15
112:10 123:16
132:9 146:21,24
147:1
**tales** 195:15
**talk** 29:12 31:21
64:20 65:3 80:7
111:22 142:17
151:14 188:15,18
188:24 189:12,14
204:6
**talked** 22:12 96:19
147:25 165:24
176:15
**talking** 22:14,15,16
22:22 23:12 25:21
25:22 27:25 28:11
50:14 60:22 71:22
93:19 100:23
103:9 113:6
133:10 144:25
145:4,5,14 159:2
187:15
**TATE** 1:22,22
**teacher** 119:4
**technical** 156:9
**teed** 36:18 185:18
**telephone** 82:10
184:16
**TELEPHONIC**
2:19 3:1
**tell** 11:16 23:22 33:3
38:18 40:20 41:22
42:1 43:21 56:5
56:25 71:16 72:17
72:22 77:18 79:6
79:9 80:19 81:1
82:4 83:1 94:1
105:16 112:20
116:19 121:3,18
124:5 125:21,24
128:7,13 129:13
132:5 155:10
157:16 158:6
166:8 177:8
178:24 184:25
188:2 191:11
192:1 195:14
198:4
**telling** 12:22 20:25
70:5 87:1 116:9
120:22 140:22
156:21 176:7
181:4

**tells** 179:1
**template** 166:17
**tendered** 136:17
**tension** 135:19
**term** 49:11 109:19
109:20 161:7
164:14 165:2
195:25
**terms** 13:4,24 23:17
26:14 39:13 68:8
169:2 188:12
191:13
**terrible** 25:8
**territories** 98:4
**test** 32:24 75:23
86:1,13 123:23
136:7
**testify** 133:3 134:9
136:19
**testifying** 57:9
136:12
**testimony** 111:6
146:23
**thank** 5:1,5,6 30:5
40:16 48:19 52:23
68:19 81:4 94:11
99:18,23 100:5
123:13 159:14
162:9 198:11
199:10 202:6
205:5
**Thanks** 99:25
**theme** 59:20 60:1
**theory** 107:12,17
**thereof** 165:22
**thing** 26:12 44:17
53:3 59:6 80:11
90:16,17,20 93:3
96:23 102:4
105:20 122:25
128:18 140:4
142:14 152:24
153:12 157:10
160:19 163:11
171:9,11,22
193:10,23 195:6
204:1,20
**things** 6:10 9:1
26:17 28:5 31:15
32:12 65:4 68:3
68:17 77:15 78:16
82:1,15 107:5
115:11 125:7
142:17 168:16
170:21,21 174:18

199:6
**think** 8:25 9:9,23,24
10:15,19 13:8
17:1,2,6 22:1,7,17
22:21 23:14 24:21
25:6,9 26:5 27:21
30:1 35:15 36:10
37:17 39:12 52:13
52:16,17 53:21
55:2 58:22 59:22
60:2,10,17,18,20
60:24 63:14 64:21
66:7,9 69:4 70:19
71:5 76:13 77:14
78:9 79:13 88:16
88:18 89:16 94:9
94:15,22 95:9,17
96:22 100:25
103:3 105:18
106:1,20 107:20
108:5 110:1 117:1
120:1,17,18,19,24
123:2 125:10,11
126:8 127:3
128:24 135:23
137:23 138:17,17
139:15 142:15
144:5 154:9,24
155:21,22 156:22
159:19 162:10
166:2,9 168:4
169:2,6,18 172:7
172:7 176:4 177:2
177:7,13 181:24
182:14 184:12,19
185:1,3,5,13,19
185:21 186:1,5,17
187:15,19 188:6
188:14 190:11,19
190:21,23,25
191:5,8 192:19,24
194:8,12,15
200:25 201:19
202:10,18
**thinking** 96:21
**thinks** 189:4
**third** 2:15 33:22
40:1,11 44:22
45:8,18 57:22
65:7,11 67:2 77:5
94:20 101:14
102:5 104:25
175:14 176:16,16
176:17 179:12,13
181:12,19 182:22

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 229

185:8 188:8,10
191:2 192:15
**Thomas** 2:17
**thorough** 22:8
**thought** 11:2 22:11
28:25 43:16 44:24
50:24 69:25 70:5
97:19 98:2 102:14
113:22 124:14
129:14 171:6
172:4 174:7 176:4
177:5 185:1
198:16
**thoughts** 13:21
**thousand** 118:14
172:8 193:21
**thousands** 39:20,23
121:5
**three** 6:10,15 9:24
39:22 48:12,15
60:23 61:18 64:13
64:14,14,20 65:3
67:12 71:15 75:9
79:8,25 80:6
81:11 91:8,14
106:19,20 115:9
129:5 180:1
190:11 194:21
199:1
**threshold** 164:18
**throw** 35:23 45:4
118:6 126:21
**throwing** 117:25
**thrown** 108:6
**thumb** 125:10
**thunder** 59:24
**Tick-tock** 141:11
**tie** 152:20
**tights** 118:11
**time** 11:1 14:12 15:3
16:6,15 22:11
31:14 41:14 43:1
43:22 50:19,25
60:12 64:17 72:12
72:17 76:3 80:9
81:21 97:8 100:23
102:13 106:12
116:18 124:22
132:6 148:8,15
151:1 155:13
156:15,21 157:5
159:20 167:8
176:11,20 181:11
186:14 190:14
192:3 196:21

197:18 204:7
206:7
**timeline** 106:17
**timely** 55:7
**times** 48:22 60:7
162:18 168:18
**timing** 107:21 111:3
165:24
**tire** 31:14 45:3
70:15 75:20,21
**tires** 177:5
**tit-for-tat** 120:7
**TLC** 86:2,16
**today** 9:2 13:18
16:16 41:11,16,23
71:7,10,14,15
76:11,11 91:9
98:25 102:14,15
105:25 160:14
163:14,15,16,17
163:18 166:6
177:2,13 185:4,5
183:18 205:6
**token** 36:13
**told** 18:9 22:13 26:5
26:8 40:21,22
44:17 70:3,23
72:19 83:23
117:17 130:22
132:7 152:6,12,23
153:7 157:8
181:13,17,19
186:25 187:9
**Tom** 140:12 141:6
**tomorrow** 175:13
197:17,18
**tone** 14:6
**tonight** 175:12
**TORTORELLA**
3:9
**total** 31:11 94:20
95:1 196:19
**totally** 20:1 47:24
**touchdown** 166:4
**trace** 32:20
**trade** 7:15 8:23
37:14,15,17,18,20
37:21 54:6 65:13
91:18
**training** 90:8,9,10
**transcript** 1:10
27:16 89:22 206:6
**transcripts** 115:12
**translation** 30:7
**transmitted** 155:25

**transom** 202:1
**transport** 90:21,23
**trash** 35:24
**tread** 189:25
**treat** 159:4
**treatment** 118:15
193:21
**trial** 42:17 100:1
111:6 121:8
132:19,22 136:12
136:13 165:5
**tricky** 166:12
**tried** 65:5 94:6
112:1 121:3
122:18
**tries** 168:7
**trifocals** 162:21
**triggered** 163:12
164:11
**trip** 99:24
**trouble** 162:11,18
191:1
**troubled** 186:10
**troubling** 184:14
**true** 17:4 50:10
65:18 67:25 97:9
97:10 144:18
206:6
**truly** 189:23
**trumps** 17:7
**trust** 6:15 10:11
47:8 50:20 51:5
67:2,3 91:12 92:3
92:9,13 168:9
**trusts** 47:22 50:6
66:11,14,18,25
67:9,10,20
**try** 14:4,5 45:6 51:1
51:11 60:23 78:13
80:3,5,8 83:25
120:15 123:9
155:24 157:20
158:15 168:2
177:9
**trying** 19:15 25:7,9
25:18 45:8 75:22
77:23 78:6 96:22
120:14 149:12
150:23 158:1
188:3,22 189:1
194:19
**turn** 15:21 16:22
17:23 30:15
**turned** 19:2 77:8
**turns** 34:11 107:1

107:20
**twice** 5:20 60:10
**twisted** 90:2
**two** 2:3 5:21 27:10
28:5 40:21 41:13
41:16,23 42:19
48:10,15 53:17
57:3 61:15 66:7,8
66:9 68:3 71:4
72:1 74:16 78:16
88:9 97:23 98:25
100:7 102:15
106:6,7 111:18
136:2 142:22,23
144:25 145:24
160:4,9,14 163:23
186:2 197:21
**two-step** 167:2
**typical** 58:12 130:4
183:21,22

_____
**U**

**ultimate** 36:6,25
**ultimately** 42:4 50:5
**unbecoming** 120:8,8
**uncertainty** 95:18
194:25
**unchanged** 104:22
**unclear** 55:21
**undefined** 106:12
106:14
**underlying** 10:6
31:23 33:11,20,24
43:14,25 44:8
48:24 51:12,14
52:18 101:22
109:19,20 114:10
135:10 140:20
155:8
**underneath** 87:11
**underscore** 87:4,5,5
87:17,17,18,18,18
87:25 88:2,2,3,3,4
88:19,19,21,21,24
88:24 89:1,2,3,7,7
90:4,5,5,6,6,7,8,8
90:9,9,10,10,11
90:11,12,12,13,13
90:13,14,14,15,15
90:16,18,19,19,20
90:21,21,23,23,24
90:25,25 94:20
**understand** 12:17
14:3 16:12,18
17:12,16,17 23:12

24:7 26:4 27:12
27:14 28:19 30:18
32:15 36:9,11
37:2,24 39:1 40:4
46:10 53:5 55:12
61:10 71:23,24
77:17 78:8 89:16
93:6 94:5 120:9
120:10 123:3
127:20 130:5
131:25 134:22
148:3 149:6,7
154:8 162:14
169:22 174:20,20
179:8 196:10
198:19 199:13
**understanding**
11:21 49:19 51:17
51:25 53:10
140:24 143:22
147:3 182:2
189:23
**understands** 78:10
168:13
**understood** 49:3
50:3 68:12 153:1
186:13
**unfair** 96:22 180:11
**Unfiled** 87:20
**unfortunately** 11:11
88:13
**unique** 170:14
**United** 1:1 20:20
98:4
**universe** 27:24
**unnecessary** 47:24
103:10 164:15
165:4
**unpack** 41:4 118:9
**unprecedented** 11:1
**unquote** 8:9 101:13
**unredacted** 6:22
**unrelated** 150:14
**unrestricted** 163:24
**unscramble** 148:6
**upset** 44:18 113:10
113:12,16,24
114:20
**use** 13:10 45:6
49:10 56:12 59:15
70:8 80:9 81:21
95:19 125:15
127:2 155:19
165:2
**usual** 75:6

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 230

**utmost** 184:7

---

**V**

**v** 192:16
**VA** 89:3
**vacuum** 132:18
**vague** 152:8
**valid** 51:6,13 75:24
**value** 34:8 35:1 39:8
**variant** 125:14
**varies** 25:1
**various** 95:11
**verbatim** 8:11
**verification** 153:21
  154:5,10 155:3
  159:6 160:12
**verified** 103:24
  105:14 131:22
  148:12
**verify** 134:25
**verifying** 153:17
**versa** 128:10
**version** 82:19
  112:15
**versions** 128:3
**Veterans** 89:4
**vetted** 39:9
**vice** 128:10
**victims** 113:18
**view** 92:5 101:2
  108:12 112:4,4,5
  120:20 127:13
  128:16 132:1
  142:6 158:3 169:2
  178:15 195:9
  200:6 204:12,12
  204:15
**viewed** 35:21 38:21
**vigorously** 61:2
**Vikings** 166:3
**Village** 1:23
**Vince** 5:13,17
**VINCENT** 2:24
**violates** 165:5
**violating** 42:11
**virtually** 20:2
  175:14
**voice** 128:10,10
**voir** 136:18
**volume** 198:25
  199:1,2
**voluminous** 56:12
**voluntarily** 98:12
**vs** 1:5

---

**W**

**W** 2:17
**wait** 39:21 62:11
  70:24 75:3 117:5
  162:3
**waiting** 27:19
  160:20 161:12
**waive** 15:10
**waived** 92:19,23
  139:25 144:4,7
  148:20 167:11,13
**waiver** 55:10,13,21
  92:21 100:17
  137:14,17 142:14
**waiving** 15:15
  127:15
**walk** 59:1 65:15
**wall** 168:14
**Walsh** 77:4
**want** 9:6,8 12:10
  16:14 21:8 23:11
  27:5,23 38:9,14
  38:15 44:3 46:1
  48:18,20 51:15
  53:3 54:19 55:2
  58:18 60:23 61:4
  61:5 73:6 75:6
  79:1,3 80:7,10
  81:23 89:15,22
  94:5 96:12 105:16
  112:15 117:21,24
  123:5 125:25
  126:2,7 127:11
  128:21 130:20
  131:25 132:2
  143:8,15 148:14
  149:6,7 150:19
  152:7,10 153:15
  155:23 156:20
  157:4 163:1 168:1
  171:19 173:7,20
  173:22,25,25
  174:9 177:5 179:2
  179:7,25 180:23
  181:9,23 184:8
  187:14 188:2,17
  188:24 190:18
  191:19 192:6,6,19
  194:12 198:8
  199:12 201:1
**wanted** 44:18 75:5
  94:17 96:13,18
  100:2 106:9 108:8
  128:5 151:5
  173:23 176:4,5

---

182:3
**wants** 6:21 45:24
  64:23 180:20
  190:17
**Ware** 105:13 143:9
  143:12,14,19
  145:4,5,11,20
  146:6,8 147:17
  148:25 151:21
  160:2
**Ware's** 158:22
**warned** 134:10
**Washington** 2:8 3:3
  3:7
**wasn't** 16:5 43:2
  80:20 121:6
  156:12 203:16
**waste** 155:12
**wasting** 156:15
**watch** 156:3
**water** 78:1
**waving** 57:1
**way** 12:20 19:10
  32:14,17 34:5
  47:5 51:5 58:18
  66:24 68:12 71:25
  72:3 75:16 82:13
  82:18 83:8 108:19
  116:6 118:14
  125:18 126:9
  128:6 136:6,12
  153:23 155:6
  167:3,4,25 168:11
  168:16 169:15
  172:5 173:18
  177:19 183:14,19
  185:18 189:21,24
  190:8,10 198:8
  201:8,18 205:6
**ways** 133:15 167:19
  168:11
**we'll** 16:21 28:17
  42:12 59:12 80:2
  81:2,3 96:7 101:5
  106:2 117:8 122:6
  125:21 143:24
  162:8 172:6 175:8
  176:7 184:10
  187:12 190:11
  191:13,14 197:18
  197:20 201:22
  204:5
**we're** 9:11 11:11
  13:18 23:12 25:20
  25:21 27:25 28:3

---

28:7,11 40:12,18
  41:5,7,18,24 42:4
  50:14 51:7 55:24
  59:2 60:22 61:12
  68:22 69:21 70:25
  71:4,8,12,18,21
  72:9 73:11,12
  74:2 75:3 77:13
  79:2 84:3,6,10,15
  84:16,17 93:4
  100:22 102:3,10
  103:9,11 105:24
  107:14,17 120:14
  121:24 124:7
  130:11 133:2,10
  138:2,18 144:25
  145:4,5 149:12
  151:1 153:19
  160:12 161:12
  169:23,23 170:3
  176:15 179:16,18
  182:14 185:7,9
  194:25 196:9
  199:15
**we've** 60:2,15 61:20
  69:11 74:23 113:5
  117:9,10,11,17,19
  130:16 134:19
  135:5,7,12 144:19
  150:24 153:12
  154:6 156:4
  185:17 187:15
  191:6 200:22
**weekend** 194:25
**weeks** 41:13,16,23
  71:4 72:1 74:16
  97:23 98:25
  102:15 106:6,7
  118:16
**Welcome** 4:25
**well-established**
  175:13
**Wengerd** 105:12
  159:1
**went** 16:20 21:12
  26:1 82:14 134:17
  190:1
**weren't** 14:2 22:14
  32:12 62:12 193:8
**Whatever's** 155:7
**whatsoever** 31:7,12
**whiskers** 42:22,25
**whitish/gray** 146:24
**Whoa** 108:5
**whoever's** 38:19

---

**Widener** 76:20 77:1
  77:3
**wife** 122:22 123:1,4
  123:11
**William** 1:17 52:9
**Williams** 1:3 3:6
  4:16 40:10,11
  109:3,11 140:12
  143:3 144:23
  145:7
**Williams'** 144:23
**willing** 17:1 72:24
  83:12,19 159:7,8
**wills** 161:8,10,19
**win** 122:22 181:22
**wise** 38:20
**wish** 5:24 8:10
**withdrew** 98:12
**withheld** 140:2
**withhold** 65:1 166:6
**withholding** 64:25
  65:17 66:5 67:7
  69:18 91:15 142:3
**withstanding**
  122:20
**witness** 21:23
  136:16,18 149:15
  149:16
**witnesses** 132:11
  146:23
**women** 132:5
**wondered** 119:2
**wonderful** 205:3
**Woodland** 1:15
**woods** 82:14
**word** 20:5 25:23
  29:13 81:19 197:4
  197:11
**words** 14:2 126:18
  150:20 179:24
**work** 8:7 9:13 10:18
  11:13 17:9,19
  19:5,15 27:17
  29:22 34:4 53:16
  53:20 54:16 56:3
  56:6,14,15,19,23
  57:2,6,13 61:20
  66:5,24 67:6
  72:19,20 78:10,12
  80:2 82:13 99:19
  100:20 146:11
  157:19 183:5
  203:4,6
**worked** 146:22
**worker** 31:14 70:15

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Oral Argument

Monday
January 15, 2018

Page 231

worker's 85:13
Workers 45:3 75:21
working 29:9 57:9
  204:18
works 179:18
  189:21 201:19
  202:3
world 16:15 38:10
  200:6 201:1
worry 181:14
worse 135:24
worth 132:8 164:8
  193:21
wouldn't 62:25
  162:2,3 188:24
write 40:23,24 48:8
  157:22 204:22
written 147:8
  149:24
wrong 18:13 22:10
  22:20 31:8 35:14
  35:17 37:5 49:3
  58:11 80:17,18
  120:25 147:11,12
  171:23 175:2,10
  182:7
wrongful 134:8
wrote 8:11 20:7
  62:25 144:12
  165:1
www.tate-tate.com
  1:25

X

X 37:4,5 63:13
  136:4 141:5
  152:12
x-rays 85:5
XI01040 206:19

Y

Y 63:13 109:10
  136:4 141:5
  152:12
yeah 52:5 99:25
  132:25 163:5
  170:12 177:2
  187:6 200:2
  203:17 204:24
year 68:8 69:7
  84:19,19 89:1,1,2
  89:2 116:15 136:2
  142:13
years 27:9 34:24
  42:19,21 44:14

68:2 73:14 88:3,4
  90:19,24 97:8
  119:7,9 155:11
  168:19 184:10,22
yellow 81:7
yes/no 47:15,16
yesterday 5:5 42:10
  186:14
yield 29:17
York 2:16
Younger 115:22
  119:4 141:16
  193:18

Z

Z 63:13 136:4 141:5
  152:12
zero 19:19

0

07068 2:12
07102 2:21
07929 3:10
08002 1:16
08055 1:24

1

1 86:2,15 101:18
  103:8 104:7,24
  106:23 107:25
  108:18 109:8,23
  111:21 117:17
  128:20,22 129:6
  129:18,22,24,25
  130:3 131:6
  137:24 158:21,22
  159:17 160:1,3,3
  165:17 166:25
  167:9
1,800 22:24 23:7,16
  23:19
1.6 60:9
1.6(a) 15:24 16:25
  17:7
10 146:3,5,12
  172:11
10:30 1:12 156:4
100 125:24
1002 115:25
10022 2:16
1003 112:21 115:25
  10th 77:14
11 24:21,24 141:12
  147:17 148:25
  158:22 160:3

11th 2:15
12 105:3 129:23
  139:14,17 140:19
  141:12 142:24
  143:10,17 145:5
  145:11,19 147:17
  147:17 148:24,25
  158:21,23 160:1,3
  162:18 163:4,6,7
12,000 24:22,25
120 81:11
12th 3:6 164:12
  171:12
13 105:7 129:23
  140:16 143:6
  144:24 145:6
  147:18 148:24
  158:21 160:1
14 163:1,5,5,6 166:1
14th 165:14,15
15 1:8 6:7 22:17
  99:7
15th 77:14 105:23
  105:24
16 206:19
16,000 24:8,19
1735 1:11
18,000 22:18
19103 2:4
1975 112:16
1980 90:25 91:4
1983 115:12
19th 2:21
1st 77:19

2

2 8:13 90:16,20
  102:6 103:13
  104:10 117:21
  121:25 122:10
  159:21 166:25
  196:3,4,7
2:11-cv-01754-JL....
  1:2
2:15 156:3
20 34:24 175:19
200 1:15
20005 3:7
20005-5793 2:8 3:3
2001 2:3
2011 10:11
2015 100:10
2017 6:7 7:2,7 8:14
  99:7 100:12,16
  102:19 107:11

111:17
2018 1:8 8:16 103:1
  104:4,18 116:16
  164:12 166:1
  206:19
20th 6:24 102:16
210 1:15
220 164:8 171:16
  172:14 187:5
  196:17,19,20,24
  197:13
23 103:15 104:11
23rd 100:10
24 194:22 195:2
25 44:14 68:2
  168:19
25th 176:11
26 7:7 8:14 131:7
26(a) 107:3,23
26th 138:19 176:13
  176:14
27 7:2,18 102:19
278 97:21 98:2
285 99:8
286 98:3
2900 2:3
29th 71:11 108:19
  109:24 122:12
  160:5

3

3 54:4 55:9 90:18
  100:16 102:6
  103:13 104:4,10
  121:25 122:10
  159:21
3:20 205:11
30 15:18 16:21
  45:22 61:6 139:3
  141:9 150:7
300 22:19,24 23:2,7
  23:19
32 142:20
350 8:9 52:1
367 8:15
38 184:10
383 6:9
384-12 102:22
390 6:24 102:16
394 7:3
395 7:18
396 102:19
397 104:4
398 8:16
3rd 8:16

4

4 101:24 102:17
  104:1,11 105:1,3
  111:23 129:22,24
  137:25 138:1
  158:21,22 159:19
  160:1,3
40 97:8 119:9
  155:11 175:19
415 18:2 52:1,5,6
437 3:10
45 53:18,20,25
  54:18,21
45(d)(2) 54:1
450 79:10,14 81:10
48th 1:11

5

5 102:7 103:1,14
  104:10,17 105:6
  121:25 122:10
  159:21
50 125:23
502(d) 7:24 17:5,7
  58:21 89:20 92:16
  171:5
520 1:23
56 2:12
5th 128:1

6

6 102:7 103:14
  104:10 105:10
  121:25 122:11
  127:19 159:21
636-8283 1:24
65 163:25 164:5
655 2:8 3:3

7

7 100:11 102:7
  103:14 104:10
  105:13 121:25
  122:11 159:21
70 164:3,5
725 3:6
75 172:9
7th 111:17

8

8 102:7 103:14
  104:10 121:25
  122:11 159:21
800 1:24 2:15
80s 118:20

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                  Monday
C.A. No. 2:11-cv-01754-JLL-JAD                        Oral Argument                        January 15, 2018

Page 232

**856** 1:24

--------------------

**9**

**9** 143:17
**90** 70:12
**90s** 45:2
**983-8484** 1:24