Exhibit K

# UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

*Williams v. BASF Catalysts LLC, et al, C.A. No. 2:11-cv-01754.*

# If you or a close relative were ever a plaintiff in a lawsuit against Eastern Magnesia Talc Company, Engelhard Corporation or BASF Catalysts, LLC based on an asbestos-related personal injury or wrongful death due to exposure to Emtal Talc, you could receive a payment from a proposed Class Action Settlement.

*A Federal Court has authorized this Notice. This is not a solicitation from a lawyer.*

- A proposed Class Action Settlement ("the Settlement") will provide a Settlement Fund of $72.5 million to pay claims submitted by asbestos-related personal injury claimants or their surviving heirs, if deceased, who are Class Members. The fund will be established by the Court authorizing this Notice.

- To qualify for monetary compensation, a person must:

  - at any time between March 8, 1984 and March 29, 2011, have filed and served a lawsuit against Engelhard Corporation ("Engelhard"), or one of its subsidiaries (such as Eastern Magnesia Talc Company), or BASF Catalysts, LLC ("BASF"), which acquired Engelhard and its subsidiaries in June 2006, seeking asbestos bodily injury compensation or other relief arising from exposure to Emtal Talc, and

  - before March 30, 2011, have either:

    (A) voluntarily dismissed or terminated the lawsuit as to Engelhard/BASF after the suit was filed, including any voluntary dismissal or release of claims due to settlement; **OR**

    (B) had their lawsuit as to Engelhard/BASF involuntarily dismissed by the presiding Court.

  "Person" includes any individual or entity who has or had the right to claim damages relating to Emtal Talc exposure either in their own right because of an asbestos bodily injury allegedly sustained as result of claimed exposure to Emtal Talc in any form or

manner, or as an individual who may had have a right to damages based on an asbestos injured person's injury or death such as, spouses, heirs, legatees, personal representatives, or wrongful death beneficiaries.

Authorized representatives of deceased, legally incapacitated or incompetent person qualifying as a Class Member and family members of deceased persons qualifying as a Class Member who meet certain criteria may also file claims for monetary awards.

- Engelhard mined, milled, and marketed Emtal talc in the United States from 1967 through 1984, and sold and distributed it to companies for various industrial and commercial applications. Exposure to Emtal Talc may have happened in a variety of manners and occurred occupationally.  This lawsuit, however, *does not* involve exposure to any personal cosmetic product such as baby, body, or talcum powder.

- Your or your family member's asbestos personal injury claim lawyer or law firm may have information to assist you in determining if you qualify as class member.

- Your legal rights are affected whether you act or don't act. **Read this Notice carefully**.

- These rights and options—and the deadlines within which to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made only if the Court approves the Settlement and after any appeals are resolved. Please be patient.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS AND SUBMIT A CLAIM BY** _____ | **The only way to get a payment**.<br><br>To receive monetary benefits, you will need to timely submit a claim to the Settlement Fund's Administrator. However, if the Court approves the Settlement you will be bound by the terms and release contained in the Settlement even if you do not submit a claim, unless you exclude yourself as described below. |
| **EXCLUDE YOURSELF** | **Get no payment.**<br><br>This option allows you to pursue a lawsuit against defendant BASF, defendant Cahill Gordon & Reindel LLP and any of their co-defendants about the legal claims in this case. It also is the only option that allows you to ever be part of any other lawsuit against BASF or the other parties being released under the Settlement Agreement for any asbestos-related personal injury or wrongful death claim, whether the injury or claim is known or unknown, including any potential subsequent asbestos-related personal injury or wrongful death claim that may arise in the future. |
| **OBJECT** | Write to the Court if you do not like the Settlement. |

2

| GO TO A HEARING | Ask to speak in Court about the fairness of the Settlement. |
|---|---|
| DO NOTHING | If you do nothing you will remain in the Class Action as a Class Member and will not, in the future, be able to pursue any other lawsuit against BASF, Cahill or the other parties being released under the Settlement Agreement for any asbestos injury or wrongful death claim, known, unknown or potential, including any possible secondary disease or second asbestos injury claim that may arise in the future.  **If you do not timely file a complete Claim Submission with the Administrator, you will not receive compensation.**<br><br>**The deadline to file a Claim Submission is _____.** |

| Important dates and deadlines: | |
|---|---|
| **Class Membership Exclusion (opt-out) Deadline** | (To be added) |
| **Claim Submission Deadline** | (To be added) |
| | |
| Objection and Intervention Submission Deadline | (To be added) |
| Fairness Hearing | (To be added) |

This Notice is only a summary of the Settlement Agreement, the Plan of Distribution and your rights. You are encouraged to carefully review the complete Settlement Agreement and Plan of Distribution at www.EmtalTalcSettlement.com. The Settlement Agreement and Plan of Distribution are also on file in the office of the Clerk of the Court for the U.S. District Court for the District of New Jersey in Newark, New Jersey (see Question __for the address). You can also get this information by calling 1-8XX-000-0000 and requesting copies.

*Please do not write, email or call the Court or Clerk of Court for additional information.*

## What This Notice Contains

1. Why did I get this Notice? ................................................... 5
2. What is this lawsuit? ........................................................ 5
3. What is a class action? ..................................................... 6
4. What are the claims, issues and defenses in this class action? ........... 7

3

5.   How many class members are there?............................................................... 8

6.   Why is there a settlement? ............................................................................ 9

**WHO IS INCLUDED IN THE SETTLEMENT?** ................................................................ 10

7.   How do I know I am a class member? ........................................................... 10

8.   What if I am not sure whether I am included in the Settlement Class? ............ 11

9.   Do I need to hire a lawyer to represent me in the Settlement? ....................... 12

**THE SETTLEMENT'S BENEFITS—WHAT YOU GET AND WHAT YOU GIVE UP** ........................... 12

10.   What does the Settlement provide?............................................................... 12

11.   When and how will the Settlement Fund be distributed to Settlement Class Members?. 12

12.   How much money will I receive in the Settlement? ....................................... 13

13.   What am I surrendering by staying in the Settlement Class?........................... 19

**HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM**................................................ 19

14.   What must be done to get a monetary payment from the Settlement Fund?................... 19

15.   How can I submit a claim to get a monetary payment? ................................... 20

16.   Is there a time limit to file claims for monetary awards or to complete Claim Submissions?................................................................................................... 20

17.   When would I get my payment if eligible? ..................................................... 21

18.   Can I challenge or dispute the Administrator's determination of my monetary award claim?21

19.   How do I get out, or exclude myself (opt out) of the Settlement? ................... 21

20.   If I do not exclude myself (opt out), can I sue BASF, Cahill and the other released Parties for the same thing later?.......................................................................... 22

21.   If I exclude myself, can I still get a payment?................................................ 22

**THE LAWYERS REPRESENTING YOU** ...................................................................... 22

22.   Do I have a lawyer in this case? ................................................................... 22

23.   How will the lawyers be paid? ..................................................................... 23

24.   Are the class representatives being paid any compensation for their services?.............. 24

25.   What's the difference been objecting to the Settlement and excluding yourself from the Settlement?................................................................................................... 25

**THE COURT'S FAIRNESS HEARING** ....................................................................... 25

26.   When and where will the Court decide whether to approve the Settlement?................... 25

27.   Do I need to come to the hearing?................................................................ 25

28.   May I speak at the hearing?......................................................................... 26

**IF YOU DO NOTHING** ........................................................................................ 26

**GETTING MORE INFORMATION** ............................................................................ 27

29.    Are there more details about this Settlement?.................................................. 27

30.    How do I get more information? ...................................................................... 27

**BASIC INFORMATION**

1.    **Why did I get this Notice?**

You, someone in your family, or someone for whom you were a personal representative may have been a party in an asbestos injury or wrongful death lawsuit filed between March 8, 1984 and March 29, 2011, that named as a defendant Engelhard Corporation ("**Engelhard**") or BASF Catalysts, LLC ("**BASF**") or one of their subsidiary or affiliated companies (identified later on in this document), which lawsuit was voluntarily or involuntarily dismissed. BASF acquired Engelhard Corporation in June 2006 through a merger transaction. (Collectively Engelhard, BASF and its subsidiary/affiliates are referred to as "**Engelhard/BASF**"). During this period of time, numerous lawsuits were filed against Engelhard/BASF alleging that asbestos injuries were caused through exposure to Emtal Talc, the brand name under which Engelhard's subsidiaries marketed the talc it produced.  These now-dismissed lawsuits together involved thousands of individuals- and are referred to as the "**Underlying Lawsuits**."

After the Underlying Lawsuits were dismissed or resolved, a dispute developed about whether information concerning the existence of asbestos in Emtal Talc was concealed or misrepresented by Engelhard/BASF and its national defense coordination law firm, Cahill Gordon & Reindel ("**Cahill**"), which in turn may have led to the unfair dismissal of asbestos lawsuits against Engelhard/BASF. The dismissals of these Underlying Lawsuits as to Engelhard/BASF are presently the subject of a proposed class action lawsuit pending in the United States District Court for the District of New Jersey (the "**Court**"). The case is known as *Williams, et al v BASF Catalysts, LLC, et. al*, C.A. No. 2:11-cv-01754.

The people who sued are called the **Plaintiffs**. The people or companies they sued are called the **Defendants**. They are more fully identified below.

The Court sent you this Notice because you have a right to know about a proposed settlement of a class action lawsuit and about your options before the Court decides whether to give final approval of the Settlement. If the Court approves the Settlement and after any objections and appeals are resolved, an Administrator appointed by the Court will make the payments that the Settlement allows.

This package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them, along with what claims and rights you would surrender in exchange if the Settlement is approved by the Court and implemented.

2.    **What is this lawsuit?**

This is a federal court class action pending in the United States District Court for the District of New Jersey since 2011. The Plaintiffs contend that the Defendants named in the lawsuit

misled the attorneys representing them or their respective deceased family members in Underlying Lawsuits against Engelhard/BASF about the existence of asbestos in Emtal Talc to support Engelhard/BASF's defense that Emtal Talc did not contain asbestos. Plaintiffs contend these actions led to unfair settlements and/or dismissals of their or their deceased relatives' Underlying Lawsuits as to Engelhard/BASF, as well as to unfair settlements and dismissals of other asbestos claimants' lawsuits against Engelhard/BASF similar to theirs.

"**Emtal Talc**," was a brand of industrial talc sold by a subsidiary of Engelhard that was used in the manufacturing of various industrial products, such as tires and other rubber goods, paints, plaster, caulking, and auto-body repair compounds. <u>This lawsuit **does not** involve exposure to any personal cosmetic product such as baby, body or talcum powder</u>.

Engelhard was a chemical company that closed its talc mine in 1984. The Emtal Talc business was a small business within Engelhard, itself a large mining and minerals trading company. BASF bought Engelhard in June 2006.

Plaintiffs claim that from 1984 until 2009, Engelhard (BASF acquired Engelhard in 2006), its former national law firm Cahill, and employees of the two companies, made misstatements or concealed evidence about the existence of alleged asbestos in Emtal Talc and failed to disclose related information to plaintiffs, their lawyers, and courts in the Underlying Lawsuits. Plaintiffs claim that due to these misstatements and omissions, the plaintiffs in the Underlying Lawsuits either (1) voluntarily agreed to dismiss or settle their cases for less than they otherwise would have accepted or (2) had their cases involuntarily dismissed by court order upon motions filed by the Defendants. Defendants deny Plaintiffs' allegations and dispute that any statements about Emtal Talc affected the outcome of the Underlying Lawsuits because (1) the claims in the Underlying Lawsuits were without merit, (2) the amount of asbestos in Emtal Talc, as reported in historical documents, could not have caused harm to human health, and (3) many of the Underlying Lawsuits were resolved for fixed amounts irrespective of the alleged asbestos content of the talc or the number of talc defendants. Defendants further contend that many of the complaints merely named Engelhard without any specific allegation**s** regarding product identification, exposure, or damages. Plaintiffs dispute these arguments.

**3.     What is a class action?**

In a class action, one or more persons, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other persons with similar claims. All of these people together are the proposed "Class" or "Class Members." When a class action is settled, one Court resolves the issues for all Class Members (in the settlement context, "Settlement Class Members"), except for those who exclude themselves (opt out) from the Settlement. U.S. Magistrate Judge Joseph A. Dickson is in charge of this class action. In this case, the proposed class representatives are Kimberlee Williams, Gayle Williams, Marilyn L. Holley, Sheila Ware, Donnette Wengerd, and Rosanne Chernick, who are heirs to the persons who originally sued Engelhard in the Underlying Lawsuits. Excluding yourself (opting out) means that you will not receive any benefits from the Settlement. The process for excluding yourself (opting out) is described in Question 19.

**4.      What are the claims, issues and defenses in this class action?**

Plaintiffs claim that the Defendants caused harm to Class Members through misstatements or concealing evidence in connection with the Underlying Lawsuits brought against Engelhard/BASF after March 7, 1984 and before March 29, 2011. Plaintiffs allege that, in defending these cases, Defendants claimed through communications to courts and plaintiffs' lawyers, discovery responses, affidavits, and pleadings that:

- Emtal Talc did not contain asbestos;

- No evidence existed that Emtal Talc contained asbestos; and

- No Engelhard employee had ever testified about whether Emtal Talc contained asbestos.

Through discovery in this lawsuit, Class Counsel obtained documents that purported to identify asbestos in some samples of Emtal Talc as well as testimony from former Engelhard scientists and reports from outside laboratories that purported to show asbestos in Emtal Talc. Plaintiffs claim that this information and the documents identified were wrongly concealed from plaintiffs in the Underlying Lawsuits in answers to discovery, in communications with Engelhard's lawyers, and in motions filed with courts seeking dismissal of the Underlying Lawsuits. Plaintiffs further claim that Defendants supported these statements with affidavits they drafted and disseminated to convince plaintiffs in the Underlying Lawsuits and courts that Emtal Talc did not contain asbestos. Plaintiffs claim that, as a result of these misstatements and Defendants' failure to disclose this evidence, plaintiffs in the Underlying Lawsuits (1) agreed to dismiss their personal injury claims against Engelhard (and later BASF); (2) settled them for less than they otherwise would have accepted; or (3) had their cases dismissed by court order for lack of proof that Emtal Talc contained asbestos.

For their part, BASF and Cahill deny these contentions. They claim that the amount of asbestos reported to be found in the documents identified by class counsel are insufficient to cause harm to human health, dispute the merit of the Underlying Lawsuits, dispute the validity of some tests that Plaintiffs claim identify asbestos in certain samples of Emtal Talc, and dispute that any statements about Emtal Talc affected the outcome or settlement amounts of the Underlying Lawsuits. BASF also claims that it was not aware of the facts alleged by the Plaintiffs in this case when it bought Engelhard in 2006 and that BASF did not learn of the circumstances giving rise to Plaintiffs' allegations in this case until 2009. Upon discovery of certain documents and information concerning Emtal Talc in 2009, BASF and its former counsel separated, and BASF retained new counsel which has represented it since 2009. BASF also states that it no longer defends Emtal Talc cases on the basis that there is no evidence that Emtal Talc contained asbestos. Nevertheless, BASF believes and continues to defend these cases on various grounds, including that there is no evidence that the reported levels of asbestos in Emtal Talc could cause harm to human health.

The *Williams* Plaintiffs acknowledge the challenges to succeeding in this litigation. For instance, Class Members would need to prove that plaintiffs in the Underlying Lawsuits were damaged by an evidential record in those cases that did not contain the evidence Defendants are alleged to have concealed or made misstatements about. In addition, the District Court has ruled

that plaintiffs would be required to waive their attorney-client privilege to allow for discovery of otherwise confidential communications with their counsel in their Underlying Lawsuits as to what effect, if any, the alleged misrepresentations had on the plaintiffs or their lawyers in deciding to dismiss or settle with Engelhard in the Underlying Lawsuits. The District Court in *Williams* has already ordered discovery and disclosure by the named Plaintiffs and certain other class members of these types of attorney-client communications.

Defendants also point to evidence developed during discovery in this case of modest settlements amounts (including in the hundreds of dollars) that some plaintiffs accepted in Underlying Lawsuits from other talc manufacturers despite evidence that their talc contained asbestos. These modest settlement amounts accepted from defendants for whom there was proof that their products contained asbestos were similar to what Engelhard paid some plaintiffs. Defendants also claim that case files from the Underlying Lawsuits produced during discovery give rise to other defenses that they could assert to support their contention that Defendants' actions did not cause the settlement or dismissal of the Underlying Lawsuits, such as (1) the absence of evidence of a plaintiff's exposure to Emtal Talc; (2) that some claims were dismissed as untimely filed; (3) that other claims were filed in the wrong jurisdiction; or (4) claims were dismissed due to some other procedural or substantive reason not related to the asbestos content of Emtal Talc.

Earlier in this litigation, Plaintiffs also claimed that Engelhard and Cahill had destroyed documents relating to Emtal Talc. This assertion was made on Plaintiffs' good-faith belief at the time that documents that should have existed no longer exist. However, Plaintiffs acknowledge that, through BASF's efforts to address Plaintiffs' allegations, BASF has since located thousands of documents relating to Emtal Talc, including testing documents that Plaintiffs believe show there was asbestos in Emtal Talc, documents that Plaintiffs claim were not provided to the plaintiffs in the Underlying Lawsuits. BASF has also located various other documents that Plaintiffs had believed were destroyed. Plaintiffs acknowledge that if they were to continue to allege document destruction, they would have to contend with the fact that BASF has located many additional documents since this litigation began. Plaintiffs further acknowledge that the essential key facts are now in the public domain from discovery in *Williams* and other litigation. On the other hand, BASF would have to contend with Plaintiffs' assertion that some number of documents still have not been located and, therefore, were not produced in the Underlying Lawsuits.

**5.      How many class members are there?**

A precise number of potential Class Members is not known due to the passage of time since the Underlying Lawsuits were first filed and dismissed, the deaths of many plaintiffs and their lawyers in the Underlying Lawsuits and the state or loss of records. Based on case census information obtained in discovery in *Williams*, case information provided by some of the law firms that represented claimants in the Underlying Lawsuits, and the review of other lawsuit complaints in which hundreds or thousands of purported asbestos claimants were joined into one lawsuit, Verus LLC, the asbestos claims administration firm that is advising Class Counsel, has estimated that there are 18,721 potential class members. This estimated number includes both the individuals who were the persons in the Underlying Lawsuits claiming to have suffered an asbestos-related personal injury or death ("**Injured Persons**") as well as persons who sued

Engelhard/BASF derivatively based upon the Injured Person's asbestos-related personal injury or death, such as a spouse or the children or personal representative a deceased Injured Person (these are defined as "**Derivative Claimants**"). Based on an analysis of information produced in discovery, social security numbers and claim records of potential class members who have filed asbestos bodily injury claims against defendants other than Engelhard/BASF, Verus estimates the number of class members who are Injured Persons is in the range of 7,500 to 8,500 persons.

6.     **Why is there a settlement?**

After extensive litigation spanning more than eight years, which included an appeal to the Third Circuit Court of Appeals, extensive discovery (including the production of hundreds of thousands of pages of documents), many depositions, several protracted discovery disputes, and previously failed settlement initiatives, the Plaintiffs and Defendants have agreed to this Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the litigation between the Settlement Class Members and the Defendants is concluded. Only Settlement Class Members are eligible for the benefits summarized in this Notice. The Defendants will no longer be legally responsible to defend against the claims by Settlement Class Members made in this litigation.

The Court has not and will not decide in favor of the Plaintiffs or the Defendants. By reviewing this Settlement, the Court is not making and will not make any findings that any law was broken or that the Defendants did anything wrong. By entering into the Settlement Defendants are not admitting any of the claims made against them, which they continue to completely deny. Conversely, the Plaintiffs are not conceding that any of their claims against Defendants are invalid or without merit.

Under the Settlement, BASF and Cahill will contribute a total of $72.5 million to a Settlement Fund for the benefit of the class identified in Question 7. The monetary awards to Settlement Class Members will vary based on the type of asbestos-related injury that the individual claimant developed. Details on how this Settlement Fund will be allocated and disbursed is described in a proposed Plan of Distribution that has been submitted to the Court in connection with the Settlement. In addition to funding the Settlement Fund, BASF and Cahill will pay the costs of providing notice to the class up to certain limits stated in Settlement Agreement, administration of the claims process, incentive awards to the Class Representatives, and will pay Class Counsel's attorneys' fees and cost reimbursement allowed by the Court.

The Class Representatives and Class Counsel (see Question 22) believe that the proposed Settlement is best for everyone involved. The factors that Class Counsel considered included the uncertainty and delay associated with continued litigation, including trial and appeals, as well as the uncertainty of particular legal issues that are yet to be determined by the Court. Class Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

**WHO IS INCLUDED IN THE SETTLEMENT?**

To get money from the Settlement, you must first qualify as a Class Member.

**7.      How do I know I am a class member?**

For settlement purposes the Court has defined the Class in this case to consist of the following:

> All Persons within the United States and its territories who after March 7, 1984 and before March 30, 2011 filed and served a lawsuit against Engelhard/BASF seeking asbestos bodily injury or other relief arising from its Emtal Talc products, and who before March 30, 2011 either: (A) had voluntarily dismissed or terminated the lawsuit as to Engelhard/BASF either before or after the suit was filed, including any voluntary dismissal or release of claims due to settlement; or (B) had their lawsuit as to Engelhard/BASF involuntarily dismissed.

The date on which a voluntary dismissal or termination occurred for purposes of determining class membership is the earlier of either (i) the date on which the agreement or consent by the plaintiff or his/her counsel to dismiss or terminate the lawsuit occurred; or (ii) the date on which the dismissal or termination of the lawsuit was entered by or in the court in which it was pending.

**A.   Which Engelhard/BASF companies had to be named in the Underlying Lawsuits in order to qualify as a Class Member?**

In determining if a prior asbestos lawsuit qualifies  a person as a Class Member, "Engelhard/BASF" means and includes the following companies: BASF Catalysts LLC, BASF Corporation, BASF CE, BASF SE, Engelhard Corporation, Engelhard Industries, Engelhard Minerals & Chemicals Corporation, Minerals & Chemicals Philip Corporation, Eastern Magnesia Talc Co., Porocel Corporation and Pita Realty Ltd.

**B.   What if the injured claimant named in the Underlying Lawsuit is dead?**

The word "Person" in the definition includes any individual (or their estate if deceased) who claimed damages relating to an asbestos bodily injury allegedly sustained from exposure to Emtal Talc in any form or matter. This exposed, injured party (or his or her estate) is referred to in the Settlement as the "Injured Party" and in the Plan of Distributions as the "Primary Claimant".

Where the Injured Party is deceased, his or her personal representative--e.g.- Executor(trix) or Administrator(trix)--is a Class Member and is authorized to submit a claim submission for monetary compensation to the Settlement Fund.

**C.   Do parties who sued Engelhard/BASF in Underlying Lawsuits as spouses or wrongful death claim beneficiaries qualify as class members?**

Yes. The word "Person" in the class definition includes the spouse, personal representative and wrongful death beneficiaries of the individual in the Underlying Lawsuits who is claimed to

have developed an asbestos-related injury where the person was named in the Underlying Lawsuit or the suit brought on his behalf in such capacity. Such parties are referred to as Derivative Claimants in the Settlement and there is a compensation component provided in the proposed Plan of Distribution for Derivative Claimants.

For claims administration purposes all Derivative Claimants of an Injured Person who is the subject of an Underlying Lawsuit are treated as a group under the proposed Plan of Distribution.

### D. Are the attorneys who represented the claimants in the Underlying Lawsuits also class members?

No. The word "Person" in the class definition does not include any attorney or law firm represented plaintiffs in Underlying Lawsuits against Engelhard/BASF.

### 8. What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included, you can obtain information or assistance in a number of ways.

You may contact the attorneys who represented you or your family member in the Underlying Lawsuit and see if they can assist you. Where the Settlement's Administrator, Verus LLC, has information that a lawyer or law firm which filed Emtal Talc asbestos suits is still in practice or has a known and confirmed successor, the Administrator has taken steps to notify the lawyer and law firm (or known successors) of this class action lawsuit and proposed Settlement. Verus has taken steps to provide these lawyers with details on the Settlement and, where known, which of the lawyer's or law firm's clients may qualify as a class member.

You can contact Verus LLC free of charge with questions or for more information by calling 1-888-401-1929 and asking for help regarding the Emtal Talc Settlement. You may also write with questions to Emtal Talc Settlement c/o Verus LLC, 3967 Princeton Pike, Princeton, NJ 08540. During the time period that claims may be submitted to the Administrator, if a member of the public has a credible and good faith reason and belief that he or she may be a class member but is reasonably unable to secure necessary information to determine if he or she is, on written request to the Administrator providing and certifying these facts, along with appropriate identification information, including social security numbers, the Administrator, in turn, will make a reasonable computer word search of a searchable set of Underlying Lawsuit documents provided by the Defendants during discovery in the class action to determine if a possible match exists. If there is a match, the Administrator will provide the person requesting assistance with access for a limited amount of time to search and download documents supporting the person's claim to class membership. There is a form for making such requests available on the Settlement's website or that can be obtained by calling or writing the Administrator.

For more information you can also visit the Settlement's website, www.EmtalTalcSettlement.com.

You also may fill out and submit the Settlement claim submission form described at Questions 14 and 15, to see if you qualify.

**9.      Do I need to hire a lawyer to represent me in the Settlement?**

Class Counsel who are identified at Question 22 below are responsible for all of the common interests of the Class Members. Class Counsel filed and prosecuted this lawsuit, negotiated the Settlement and represent all of the common interests of the Class. However, Class Counsel are **not** responsible for and will not represent you individually in the class action or in making your individual claim to the Settlement Fund for the monetary payments that are described below.

You have the right but are not required to hire your own lawyer to represent you in this class action or in making your individual claim to the Settlement Fund for monetary payments that are described below. Should you hire a lawyer you will be responsible for paying the fee you agree upon with that lawyer which may reduce the amount of any payment to which you may be entitled from the Settlement Fund. For more information on compensation to be paid to lawyers please refer to Question 23 below.

THE SETTLEMENT'S BENEFITS—WHAT YOU GET AND WHAT YOU GIVE UP

**10.      What does the Settlement provide?**

Defendants BASF and Cahill have agreed to create and fully fund a non-reversionary Settlement Fund of $72.5 million for use and benefit of Settlement Class Members which will be used for the payment of claims to Settlement Class Members pursuant to, and in accordance with a Plan of Distribution approved by the Court. (See Question 11 for a summary of the Plan.) In addition to the Settlement Amount, these two Defendants have agreed to pay up to $3.5 million to cover the reasonable and necessary costs of designing, establishing and carrying out the Plan of Notice and the Plan of Administration. BASF and Cahill have further agreed for the benefit of the Settlement Class Members to pay Class Counsel's attorneys' fees as approved by Court up to $22.5 million together with reimbursement of Class Counsel's litigation costs approved by the Court up to the sum of $1.2 million.

Defendants BASF and Cahill have additionally agreed as part of the Settlement that copies of the following Emtal Talc litigation materials are and will remain in the public domain: (a) the *Williams Action's* pleadings; (b) the *Williams Action's* non-privileged depositions (including non-privileged exhibits); (c) non-privileged documents produced or subpoenaed during discovery in the *Williams Action* and (d) copies of the public non-privileged depositions (including non-privileged exhibits) taken in the New Jersey Superior Court Asbestos Program's *Sampson, Comandini, Fuschino, Paduano* and *Volk* lawsuits. Such documents may be made available by Class Counsel or their designee to any person, except as limited by any operative sealing orders or confidentiality orders.

**11.      When and how will the Settlement Fund be distributed to Settlement Class Members?**

If the Settlement is approved and becomes final, the Settlement Fund will be distributed according to a Plan of Distribution approved by the Court. As part of the class action settlement approval proceedings, the Court is considering a proposed Plan of Distribution which is described in this Notice. A copy of the Proposed Plan is available on the Settlement's website or can be

obtained from the Administrator by calling or writing it to request a copy. The Plan of Distribution was designed by Class Counsel with the assistance of consultants on asbestos claims facility design and operations, including Verus LLC. The Defendants are not responsible for the Settlement Fund's distribution design, allocations, adjudications or payments and will have no role in the Settlement Fund's distribution once the Settlement is approved.

The Settlement Fund's claims facility and allocation and distribution processes will be managed by a Settlement Trustee appointed by the Court who will also be appointed to serve as a Special Master with adjudicatory powers regarding the fund's awards and payments as is necessary to carry out the Plan. The Court has been asked to appoint the Honorable Marina Corodemus, J.S.C (Retired) to fill this position. She is a former New Jersey Superior Court judge who presided over New Jersey's Mass Tort Program. A biography of Judge Corodemus is available on the Settlement's website. Currently Judge Corodemus is serving as the Court's Interim Settlement Trustee. In this capacity, she is setting up and conducting the interim claim administration operations and performing the duties required to be performed under the parties Settlement Agreement and the Court's Preliminary Approval Order during the time the Court is considering the pending request for final approval of the Settlement.

The Settlement Trustee will be assisted in its execution of the Plan of Distribution by a third-party claims administration company appointed by the Court. The Court has been asked to appoint Verus LLC of Princeton, New Jersey, as the Administrator. Verus LLC has served as a consultant to Class Counsel in designing the Plan of Distribution. The Settlement Fund's administrator is authorized to receive, process and make provisional determinations of claims to the Fund (which are all subject to review, modification or approval by the Settlement Trustee), establish and maintain the Settlement Fund's claims processes, books, records and internal controls, handle the Fund's routine inquiries and communications, and make claim disbursements once claim distribution schedules are approved by the Court. Verus is currently serving as the Interim Administrator to perform certain administration operations and duties relating to the proposed Settlement that are required to be performed under the parties' Settlement Agreement and the Court's Preliminary Approval Order.

The Settlement Trustee under the Plan and Settlement Agreement is authorized, subject to Court approval, to retain a lien resolution company ("Lien Administrator"). The Lien Administrator will, as a settlement benefit, assist each Settling Class Member claimant to determine the existence of Government Liens and the amounts needed to clear and resolve such liens. The terms of the Settlement Agreement require that a claimant to the Fund must clear these Government Liens. The Court has been asked to appoint Edgar C. Gentle, III, Esq. and his law firm, Gentle, Turner, Sexton & Harbison, LLC, to serve as Lien Administrator.

The Settlement Trustee, Administrator and Lien Administrator are each required to at all times administer the Plan and distribute the Settlement Fund according to its terms under the auspices of the Court.

**12.     How much money will I receive in the Settlement?**

The following sections summarize the Plan of Distribution, but you should read and refer to the Plan for details as that is the controlling document. A copy of the proposed plan is available

on the Settlement Fund's website or a hard copy may be obtained from the Administrator on request by writing or calling.

### A. How will Settlement Fund payment award amounts be determined?

The Plan establishes three compensation programs to which Settlement Class Members meeting defined eligibility criteria may apply for compensation award payments (each program being referred to as a "Part"). The Settlement Fund's Part A program provides Base Compensation Payments to Settlement Class Members who can establish that the claimant or claimant's decedent during the Class Period filed an Underlying Lawsuit against Engelhard/BASF which credibly asserted in good faith an asbestos injury caused by alleged exposure to Emtal Talc ("**Base Payments**"). The Plan's Part B program provides compensation payments to Settlement Class Members who satisfy Part A and also present sufficient evidence of an asbestos bodily injury sustained by them (or if applicable, their decedent). The Plan's Part C program establishes an Extraordinary Injury Fund or "EIF" from which the Settlement Trustee may, in exceptional cases, make a discretionary supplemental compensation payment to mesothelioma injury claimants subject to eligibility guidelines and limitations as set forth in this Plan.

There are criteria and rules in the Plan as to who can make a claim and how. You should read the Plan for the details on these compensation programs and Settlement Class Members' rights under the Plan.

### B. How Much Money will I receive under the Plan?

The Settlement's Plan of Distribution has three parts for allocating the Settlement Fund which are described below. The amount of money a Settlement Class Member will receive depends upon which parts he or she qualifies for and the total number of claims that are approved under each part.

### 1. Payments under the Plan's Part A program.

The Plan's Part A program provides Base Payments from a $6.25 million sub-fund allocation of the Settlement Fund Amount to Settlement Class Members whose Underlying Lawsuits were dismissed and who are releasing all claims related to the Underlying Lawsuits, including the *Williams* Class Action Claims, against the Released Parties. Settlement Class Members who were Injured Persons (which includes the personal representatives of a deceased Injured Person) in the Underlying Lawsuits are referred to as "Primary Claimants". Each Primary Claimant who timely submits a claim for Part A compensation and establishes that his or her subject Underlying Lawsuit presented a good faith credible claim for injuries allegedly caused by exposure to Emtal Talc will receive a payment of up to $500 from the Part A sub-fund. Generally speaking, claims on behalf of a deceased Injured Person must be filed by the deceased person's estate representative (who is considered to be a "Primary Claimant" under the Plan).  However, where the only claim to the Settlement Fund being applied for with respect to a deceased Injured Person are Part A compensation shares and no claims are made for compensation under Parts B or C, the claim may be submitted by the Injured Person's surviving spouse if any, or if none, by an Injured Person's surviving child with the written consent of all other surviving children, if any.

14

Where there are one or more Settlement Class Members associated with a Primary Claimant as a Derivative Claimant, that is, the Settlement Class Member's claim in the Underlying Lawsuit was based upon the Primary Claimant's asbestos injury and not theirs, then the Primary Claimant (or in the limited circumstances where a Derivative Claimant is making only the Part A Claim) will also be eligible to receive one additional Part A payment of up to $500, for a total Part A award of up to $1,000.

Part A Base Payments are subject to proration downward if more than 12,500 Part A Base payments are awarded, counting each Primary and Derivative Claimant Base Payment award separately. Any funds in the Part A sub-fund remaining after payment of all eligible Part A share claims will be reallocated by the Settlement Trustee first to Part C to pay allowed EIF claims, if any, or otherwise to Part B . (Such reallocation being referred to as a "spillover").

### 2. Payments under the Plan's Part B program.

The Plan's Part B program provides additional compensation to the Injured Persons in the Underlying Lawsuits (or their estates if deceased) out of an initial sub-fund allocation from the Settlement Fund of $59.75 million. The Part B sub-fund will be distributed in its entirety among the Part B Claimants adjudicated during the claims process to be eligible to share in Part B distributions. The amount of the Part B sub-fund may change during the course of the Settlement Fund's administration based on the Settlement Trustee's application of a spillover of unused allocations of the Part A or Part C programs' sub-funds, accrued interest earned on the Settlement Fund's assets, payment of Class Representative service awards,  or the need to pay administration costs and expenses that cannot be paid or fully paid from the Settlement Cost Fund. The amount a Primary Claimant will receive depends upon the nature of the disease allegedly sustained from exposure to Emtal Talc and the number of other persons who make Part B claims and the nature of their diseases.

Part B compensation claims may be submitted only by Primary Claimants, including the Injured Person in the Underlying Lawsuit or by the Injured Person's estate if such person is deceased. Class Members who apply and meet the eligibility requirements for a Plan B program award will receive a proportionate share of the Part B sub-fund based upon a system of points awarded for the asbestos disease the Injured Person sustained and was diagnosed.

Eligibility for Part B compensation requires a Primary Claimant establish (a) entitlement to Part A compensation; and (b) through credible, competent proof that the Injured Person sustained an asbestos-related injury falling into one of four defined categories of asbestos disease levels: (1) Non-malignant asbestos pulmonary disease (a "**Part B Level 1 claim**"); (2) Malignant Asbestos Disease Other Than Mesothelioma or Level 3 Claim Lung Cancer ( a "**Part B Level 2 claim**"); (3) either: (i) Primary Lung Cancer with evidence of underlying Bilateral Asbestos-Related Nonmalignant Disease; or (ii) Severe Asbestosis ( a "**Part B Level 3 claim**"); or (4) Mesothelioma (a "**Part B Level 4 claim**"). A Part B claim may be based on the highest degree of the Injured Person's disease progression provable as of the time of the claim submission to the Plan. Claimants may establish proof of medical injury through a certification of a prior equivalent asbestos disease level adjudication by one of several designated Qualified Asbestos Trusts or through individual adjudication of satisfactory medical evidence provided by the Claimant to the

15

Administrator.  Please review the Plan of Distribution for details as this Notice is only a summary of the Plan's Distribution Procedures.

The Part B sub-fund will be allocated among and paid to those Part B Claimants adjudicated to be eligible according to the disease level sustained using an assigned number of "Qualifying Claim Points" based on whether they have a Part B Level 1, 2, 3 or 4 disease.  Part B sub-fund compensation will be the claimant's *pro rata* share of the Part B sub-fund calculated according to the formula $X/Y$ x $Z$, where $X$ represents the number of the individual eligible Claimant's adjudicated Qualifying Claim Points; $Y$ represents the aggregate of all eligible Claimants' adjudicated Qualifying Claim Points, and $Z$ represents the Part B sub-fund dollar amount (including any spillovers from Part A or Part C sub-funds). The number of Qualifying Claim Points for each Part B claim level is set forth in the following Table 1. The number of Qualifying Claim Points assigned to each asbestos disease category in Table 1 is based upon a survey and analysis conducted by Verus LLC of compensation programs employed by eighteen relatively comparable bankruptcy asbestos trust claims facilities to allocate their asbestos claim trust funds among claimants suffering from different levels of asbestos disease.

Precise amounts of compensation for each Part B Claim Level cannot be determined presently because a number of key factors are not yet known, including the number and disease level distribution of Part B claims, whether there will be spillover from Parts A and C, and other variables in the Plan of Distribution. Table 1 below, however, provides a range of hypothetical Part B payment estimates based on (a) receipt and approval by the Settlement Fund of 7,500, 8,000 and 8,500 Part B claims; and (b) an asbestos disease distribution rate equal to the historical asbestos disease rates experienced by the Johns Manville Asbestos Trust (which rates are stated for each disease level in the table).

[Balance of page intentionally blank]

| Table 1 Hypothetical Part B Payment Share Estimates* | | | | |
|---|---|---|---|---|
| **Part B Claim Levels** | **Qualifying Claim Points** (Assumed disease rate %) | **Estimated Payments** (Estimated number of claims) | | |
| | | **7,500** approved claimants | **8,000** approved claimants | **8,500** approved claimants |
| **Level 1 Claim** Non-Malignant Asbestos disease other than Severe Asbestosis. (Bilateral Asbestos-Related Nonmalignant Disease Injuries other than Severe Asbestosis) | **1** (86.3 %) | $1,283 (6,473) | $1,203 (6,904) | $1,132 (7,336) |
| **Level 2 Claim** Malignant Asbestos Disease Other Than Mesothelioma or Level 3 Claim Lung Cancer. | **9** (2.1 %) | $11,546 (158) | $10,824 (168) | $10,188 (179) |
| **Level 3 Claim** Either: (a) Primary lung cancer with evidence of underlying Bilateral Asbestos-Related Nonmalignant Disease; or (b) Severe Asbestosis. | **20** (7.3 %) | $25,658 (548) | $24,054 (584) | $22,639 (621) |
| **Level 4 Claim** Mesothelioma | **86** (4.3 %) | $110,327 (323) | $103,432 (344) | $97,348 (366) |
| **\*** Due to rounding, the numbers presented may not add up precisely to the totals indicated and payment estimates may not precisely reflect the absolute figures. | | | | |

*Caveats:*

Table 1 is for illustration purposes only. The actual Part B payment amounts to Settlement Class Members will likely be different than any of the estimated hypothetical payments appearing in the table based upon the Settlement Fund's actual claim experience.

The hypothetical payment share estimates shown on Table 1 do not reflect deductions for any liens or fees charged by personal attorneys hired by class members described in Question 12(3)(C) (liens) and Question 23 (individually retained attorney's fees) below. As described in those Questions, class members eligible for a settlement payment are responsible for paying from that settlement payment any liens or any fees charged by personal attorneys should they hire one.

### 3. Payments under the Plan's Part C Discretionary EIF program.

The Plan's Part C EIF program allocates $6.5 million of the Settlement Fund for an Extraordinary Injury Fund under which the Settlement Trustee has discretionary authority to award bounded supplemental compensation payments to a Primary Claimant with mesothelioma who establishes to the Settlement Trustee's satisfaction that the Primary Claimant sustained an extraordinary physical injury and/or economic loss allegedly as a result of exposure to Emtal Talc mined, milled, sold or distributed by Engelhard/BASF that is materially and substantially beyond that sustained by typical other Part B mesothelioma Primary Claimants.

To qualify for an EIF award, a Primary Claimant, in addition to establishing Class Membership under Part A and Part B, must satisfy specific eligibility requirements that: (1) the subject Injured Person developed mesothelioma; (2) the Primary Claimant has not received appropriate and sufficient compensation for the subject mesothelioma injury; (3) the subject mesothelioma injury and resulting losses were allegedly a result of frequent, regular and proximate exposure to Emtal Talc; and (4) the Underlying Lawsuit's plaintiff lawyer or firm received direct representations from an Engelhard/BASF attorney regarding the absence of asbestos in Emtal Talc. No Part C award made pursuant to the discretionary EIF program may exceed $175,000. The Part C EIF sub-fund may be increased by unallocated or unclaimed fund spillovers from the Part A fund. The Settlement Trustee is not required to make any EIF awards or to make awards sufficient to exhaust the EIF fund. The Settlement Trustee shall re-allocate the unused portion of the Part C sub-fund to the Part B sub-fund.

### C. Are there any individual filing fees, case fees, administration charges or liens that could reduce my specific individual claim awards?

- There is no filing fee or charge to submit a claim to the Settlement Fund for compensation.

- Any and all liens relating to a claimant's settlement distribution are the sole responsibility of the claimant. The Plan of Distribution requires that certain liens imposed by a government entity, such as those relating to Social Security Medicare payments, be determined, resolved and, where existing, fully paid (or payment secured through deductions or withholdings from the claim proceeds by the Administrator) prior to the Administrator paying the claimant's claim. The Settlement Trustee as part of its administration will retain a lien resolution company (Lien Administrator) who, as a settlement benefit, will assist each Settling Class Members claimant in determining the existence of a Government Lien and the amounts to clear and resolve the lien. Government Lien resolution services assigned to the Lien Administrator under the Settlement shall be at the expense of the Settlement administration.

- The Lien Administrator may also assist claimants as to other medical or other benefit lien resolution with the claimant to pay the reasonable cost of such additional services out of his monetary award. Payment of such lien amounts, are the claimant's sole responsibility, will not be paid by the Settlement Fund, and may reduce the amount of the claimant's monetary award.

- Any attorneys' fees due to claimant's or claimant's decedent's attorneys in the Underlying Lawsuits with respect to monetary award distributions from the settlement are the sole responsibility of the claimant. While liens against a claimant's monetary award may also include a claim for attorneys' fees by the lawyers or law firms that had represented the claimant or the claimant's decedent in the Underlying Lawsuit, the determination and resolution of this lien is the individual Settlement Class Member claimant's sole responsibility. This will not be the responsibility of the Lien Administrator to negotiate or resolve and will not be paid or satisfied by the Settlement Fund.

**13.     What am I surrendering by staying in the Settlement Class?**

Unless you exclude yourself (opt out) from the Settlement (see Question 19), you cannot sue BASF, Cahill, any of the other named Defendants in the *Williams* Action, or any party that is a Released Party as defined in the Settlement Agreement, which includes related individuals and entities to BASF, Cahill and the other named defendants, or be part of any other lawsuit against these persons and companies, about the issues and factual matters alleged in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time. If you stay in the Class and presently have a non-malignant asbestos‑related injury (such as asbestosis or pleural disease), you cannot in the future sue any of these released persons and companies for compensation or damages should you later develop a malignant asbestos‑related injury such as cancer or mesothelioma, even if the law of your jurisdiction permits such claims.

The Settlement does not release or end any claims a Settlement Class Member may have now or in the future against Johnson and Johnson or any other talc company relating to talc or asbestos personal injuries. They are not parties to this Settlement nor are they Released Parties as that term is defined in the Settlement Agreement and claims against them are expressly not released by this Settlement.

Section 12 of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves (opt out) from the Settlement, including who and what are included as Released Parties, so please read it carefully.  The Settlement Agreement is available at www.emtaltalcsettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the District of New Jersey (see Question 28 for the address).  You can also get this information by calling 1-8XX-000-0000.  If you have any questions you can talk to the law firms listed in the chart at the end of this Notice for free or you can talk to your own lawyer if you have questions about what this means.

**HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM**

**14.     What must be done to get a monetary payment from the Settlement Fund?**

To be eligible to receive a payment from the Settlement Fund, you must complete and submit a valid and timely Claim Submission to commence a claim. If you do not submit a valid Claim Submission Form by the deadline of _____, you will not receive a payment. All proofs and forms must be submitted by this deadline.

**15.     How can I submit a claim to get a monetary payment?**

You can complete and submit your Claim Submission Form online at the Settlement Website, www.EmtalTalcSettlement.com. The Claim Submission Forms along with related certification and authorization forms, can be downloaded from the Settlement Website and submitted via mail, as well. You can request the Claim Submission certification form and authorization forms be sent to you by sending a written request to the Administrator by mail or by email or calling the Administrator to request these forms. A registered personal lawyer authorized by you to represent you and your family may complete and file the claim. There are, however, required verification forms and possible authorization forms that will be required to be signed by hand or electronically on the Settlement Website claims portal.

Please read the claim instructions carefully, and fully fill out the Claim Form. If you are submitting the Claim Submission Form in paper format, please mail it postmarked no later than 11:59 P.M. _____, 2020 to: Emtal Talc Settlement c/o Verus LLC, Administrator, 3967 Princeton Pike, Princeton, NJ 08540. If you are submitting your Claim Submission Form online at the Settlement Website's claim portal, _____, you must complete and submit the electronic claims by 11:59 P.M. (Eastern Standard Time), _____ 2020.

All claimants must provide a copy of a pleading, an interrogatory answer, or a deposition testimony excerpt describing the Injured Person's alleged exposure to Emtal Talc unless no supporting document exists or can be found after Claimant has conducted a reasonable search and inquiry, in which case a certification under oath of diligent search must be provided instead. Claimants wanting to receive compensation under the Plan's Part B and/or Part C programs will also be required to submit documents or other acceptable forms of proof described in the Plan to establish (1) the existence and level of an eligible asbestos disease and, (2) the Injured Person's Underlying Lawsuit (or that brought by an Injured Person's estate where applicable) must have asserted a good faith, credible asbestos injury claim based on an injury believed to be caused by exposure to Emtal Talc. Please follow all the instructions on the claim form relating to that claim. You may be asked for additional documentation and certifications. Claims are subject to audits and you may be asked to provide additional documentation and certifications related to the audit.

**16.     Is there a time limit to file claims for monetary awards or to complete Claim Submissions?**

Yes. The Court has set a deadline date to file a claim of _____ 2020.  If you do not submit a valid Claim Submission (which includes a completed claim form and necessary supporting documents) by both this date and one of the times listed below, you will not receive a payment:

(1) If submitted by mail, express mail or hand delivery, the Claims Submission must actually be received by the Administrator in its offices by no later than 5 P.M., prevailing Eastern time in effect; or

(2) If submitted electronically submitted through the Settlement Fund's website or other electronic portal established by the Administrator, the Claims Submission

must actually be received by the Administrator's system by no later than 11:59 P.M., prevailing Eastern time in effect.

**17.    When would I get my payment if eligible?**

The Administrator intends to complete its adjudication of claims before the Court grants "final approval" of the Settlement. Payment, however, will not be made until after the Court grants "final approval" of the Settlement and after any appeals are resolved. All Claims must be adjudicated and any disputes or challenges regarding a claim determination resolved in accordance with the dispute and contest procedures in the Plan of Distribution. Required lien resolutions must also be completed before an individual claimant's funds can be distributed. This may take a substantial amount of time to accomplish. Additionally, if the Court approves the Settlement after a hearing on _____, there may be appeals. This will delay payment awards. It is always uncertain whether these appeals can be resolved and resolving them can take time.  Everyone who submits a Claim Submission Form will be kept informed of the progress of the Settlement through the Settlement website or other means as appropriate. Please be patient.

**18.    Can I challenge or dispute the Administrator's determination of my monetary award claim?**

Yes. The Settlement's Plan of Distribution procedures establishes a process for a Settlement Class Member to challenge or dispute the denial of a monetary award claim or the amount of the monetary award to the Settlement Trustee who will adjudicate the dispute.

**19.    How do I get out, or exclude myself (opt out) of the Settlement?**

If you don't want a payment from the Settlement, but you want to keep the right to sue or continue to sue BASF, Cahill or any of the other defendants in the *Williams* Action on your own about the legal and factual issues and claims in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

On or before ____, 2020, you must mail a letter or other written document to the Administrator (Verus LLC) requesting exclusion from the Settlement Class. Your request must include:

- Your name, address, telephone number, Social Security or Tax Identifier Number and date of birth;

- A copy of your driver's license, other government issued identification and if applicable to a deceased or incompetent person, documentation establishing authority to act such estate letters or power of attorney;

- A statement that "I wish to exclude myself from the Settlement Class in Williams v BASF Catalysts LLC, C.A. No. 2:11-cv-01754" (or substantially similar clear and unambiguous language); and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney at law).

You must mail your exclusion (opt out) request, postmarked on or before _____, addressed to:

Emtal Talc Settlement
c/o Verus LLC
3967 Princeton Pike
Princeton, NJ 08540

A husband and wife or entire family of heirs where applicable, can opt-out on one form provided all sign the form and provide the information and documents set out above.

Your request to exclude yourself (opt out) is not effective unless and until the District Court grants Final Approval and the order approving the Settlement becomes Final.

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) BASF, Cahill and the other defendants named in the *Williams* Action in the future.

**20.     If I do not exclude myself (opt out), can I sue BASF, Cahill and the other released Parties for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue BASF, Cahill or any other Released Person as defined in the Settlement Agreement for the claims that this Settlement resolves. If you have a pending asbestos lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Settlement Class to pursue or continue your own lawsuit against BASF, Cahill, the other Defendants in the *Williams* Action or any other Released Person concerning the labeling, marketing, composition, or advertising of Emtal Talc or the defense or resolution of asbestos injury claims relating to Emtal Talc. If you properly exclude yourself from the Settlement Class, you shall not be bound by any orders or judgments entered in the *Williams* Action relating to the Settlement. Remember, the exclusion (opt-out) deadline is _____, **2020**.

**21.     If I exclude myself, can I still get a payment?**

No. You will not get any money from the Settlement if you exclude yourself. If you exclude yourself from the Settlement, do not complete on-line or send in a Claim Submission Form asking for benefits. You may, however, sue, continue to sue, or be part of a different lawsuit against BASF, Cahill or the other Released Parties in the Settlement.

THE LAWYERS REPRESENTING YOU

**22.     Do I have a lawyer in this case?**

Yes. "Class Counsel" are listed below, represent all of the common interests of the Class Members. They are the lawyers who filed and prosecuted the lawsuit and negotiated the Settlement. You will not be charged any fee for the services provided by these lawyers. See Question 23 below.

| | |
|---|---|
| Christopher M. Placitella | Stewart L. Cohen |
| Michael Coren | Harry M. Roth |
| Jared M. Placitella | Robert L. Pratter |
| Eric S. Pasternack | **Cohen Placitella & Roth, P.C.** |
| **Cohen Placitella & Roth, P.C.** | 2001 Market Street |
| 127 Maple Ave | Philadelphia, PA 19103 |
| Red Bank, NJ 07701 | scohen@cprlaw.com |
| cplacitella@cprlaw.com | hroth@cprlaw.com |
| mcoren@cprlaw.com | rpratter@cprlaw.com. |
| jmplacitella@cprlaw.com | |
| epasternack@cprlaw.com. | |

To be clear, however, Class Counsel listed above, **are not** responsible for and will not represent you in your individual claim to the Settlement Fund for monetary payments.

You are not obligated to hire your own lawyer. However, if you want to be represented by your own lawyer, you may hire one at your own expense.  See Question 23 below.

### 23.    How will the lawyers be paid?

There are three groups of lawyers who may seek compensation.

The first is Class Counsel. Class counsel will ask the Court for an award of attorneys' fees and reasonable costs.  BASF and Cahill have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the requests does not exceed $22.5 million for attorneys' fees and $1.2 million for cost reimbursement. These fees and incurred costs will be paid separately by the BASF and Cahill and not from the $72.5 million Settlement Fund. Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time. Ultimately, the award of attorneys' fees and reasonable costs to be paid by BASF and Cahill is subject to the approval of the Court. BASF and Cahill will also separately pay the reasonable and necessary costs of administering the Settlement, including notice costs up to a limit of $3.5 million. Class Counsel's fee, if approved, is 22.5% of the total amount paid by the Defendants to the Settlement Fund, Cost Fund and Attorneys' Fee Fund, all of which benefit the Class.

The second group ("Second Group") of lawyers are those who may be retained by you to represent you individually in this class action or submit your claim to the Claims Administrator. YOU DO NOT NEED TO HIRE A LAWYER.  However, if you decide to do so, that lawyer will likely seek compensation for his or her services.

The third group of lawyers ("Third Group") are those who may claim an entitlement to a fee based upon agreements entered with Class Members or their decedents in the Underlying Lawsuits.

The fees, if any, for the Second and Third Group of lawyers are separate and district from the fees that will be paid to Class Counsel. The Second and Third Group of lawyers are also referred to as Non-Class Counsel. Typically, these fees are paid on a percentage of the recovery basis.

A fee paid to the Second or Third Group of lawyers referenced above would be the sole responsibility of the Class Member.  By way of example only, should an attorney charge a class member a 33.3% contingency fee, and the class member is eligible for a Part A payment of $500 and a Level 2 Part B Claim payment of $10,824 as provided in Table 1 above (this example assumes there are 8,000 approved claims) for a total amount of $11,324, the net recovery to the class member after payment of personal attorneys' fees would be $7,550 ($11,324 – $3,774). The net recovery for the Class member in this example would vary depending on the fee percentage the attorney would charge and whether the Class Member is obligated to pay any liens (See Question 12 (3)(C). This example is for illustrative purposes only; the Court has not made any determination regarding fees charged by non-Class Counsel. And, as noted below, the Court will decide any fee to be awarded to the Second and Third Group of lawyers.

In recent years, courts in class action cases have considered the extent to which fees may be charged by non-Class Counsel. The Court in this case has retained jurisdiction to consider and will make a determination about the fees and the amounts which may be charged to Class Members by non-Class Counsel, individual counsel and former counsel.

### 24.      Are the class representatives being paid any compensation for their services?

Class Counsel will ask the Court to award each of the six named Plaintiffs $50,000 each for or their class representative service in view of their efforts in bringing the *Williams* Action and helping the lawyers on behalf of the whole Class over the eight years of hard-fought litigation leading to the Settlement. The awards will be paid from the Settlement Fund as provided in the Plan of Distribution. The award of class representative service awards is subject to the approval of the Court. Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time.

#### OBJECTING TO THE SETTLEMENT

If you're a Class Member, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter saying that you object to *Williams v. BASF Catalysts LLC*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the Settlement. Mail the objection to the addresses listed below. Objections must be postmarked no later than ____ ___, **2020**:

Office of the Clerk
U.S. District Court, District of New Jersey
MLK Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07102

Michael Coren, Esq.
Cohen, Placitella & Roth, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103


Peter Farrell, Esq.
Kirkland & Ellis LLP
1301 Pennsylvania Ave. N.W.
Washington, DC 20004


Nina Gussack, Esq.
Troutman Pepper Hamilton
Sanders LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

**25.    What's the difference been objecting to the Settlement and excluding yourself from the Settlement?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you don't have to.

**26.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at _____ A.M. on _____, ____ ___, 2020, at the United States District Court for the District of New Jersey, 50 Walnut Street, Newark, N.J., in Courtroom MLK 2D. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Magistrate Judge Dickson will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel and determine the Class Representatives application for Service Fee awards. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**27.    Do I need to come to the hearing?**

No. Class Counsel will answer questions Judge Dickson may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk

about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**28.     May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Williams v. BASF Catalysts LLC*." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than <mark>Month __, 2020,</mark> and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the addresses listed below. You cannot speak at the hearing if you excluded yourself.

Office of the Clerk
U.S. District Court, District of New Jersey
MLK Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07102

Michael Coren, Esq.
Cohen, Placitella & Roth, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103

Peter Farrell, Esq.
Kirkland & Ellis LLP
1301 Pennsylvania Ave. N.W.
Washington, DC 20004

Nina Gussack, Esq.
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

**IF YOU DO NOTHING**

If you do nothing and do not file a claim, you will be deemed a Settlement Class Member, but you'll get no money from this Settlement. If you are a Settlement Class Member and do not exclude yourself, then you won't be able to start a lawsuit against the Defendants (BASF and Cahill) for asbestos injuries ever again.

GETTING MORE INFORMATION

**29.   Are there more details about this Settlement?**

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Michael Coren, Esq., Cohen, Placitella & Roth, P.C., Philadelphia, PA 19103, or by visiting www.EmtalTalcSettlement.com.

**30.   How do I get more information?**

You can call 1-1-888-401-1929 toll free; write to Emtal Talc Settlement, c/o Verus LLC, 3967 Princeton Pike, Princeton, NJ 08540; or visit the website at www.EmtalTalcSettlement.com. where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

| IMPORTANT DATES & CONTACT INFORMATION | | |
|---|---|---|
| **EXCLUSION (OPT OUT DEADLINE)** | TBD | |
| **OBJECTION DEADLINE** | TBD | |
| **DEADLINE TO REQUEST TO SPEAK AT THE FAIRNESS HEARING** | TBD | |
| **START OF THE CLAIMS PERIOD** | TBD | |
| **DEADLINE TO SUBMIT A CLAIM** | TBD | |
| **CLAIMS ADMINISTRATOR** | Emtal Talc Settlement<br>c/o Verus LLC<br>3967 Princeton Pike<br>Princeton, NJ 08540 | |
| **COURT** | Clerk of the District Court<br>U.S. District Court for the District of New Jersey<br>MLK Building & U.S. Courthouse<br>50 Walnut Street<br>Newark, NJ 07102 | |
| **CLASS COUNSEL** | Christopher M. Placitella<br>Michael Coren<br>Jared M. Placitella<br>Eric S. Pasternack<br>**Cohen Placitella & Roth, P.C.**<br>127 Maple Ave<br>Red Bank, NJ 07701 | Harry M. Roth<br>Robert L. Pratter<br>**Cohen Placitella & Roth, P.C.**<br>2001 Market Street<br>Suite 2900<br>Philadelphia, PA 19103 |

**QUESTIONS? CALL 1-888-401-1929 TOLL FREE, OR VISIT EMTALTALCSETTLEMENT.COM**