Exhibit M

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KIMBERLEE WILLIAMS,** *et al.* | No. 2:11-cv-01754 (ES) (JAD) |
| Plaintiffs, | |
| vs. | CIVIL ACTION |
| **BASF CATALYSTS LLC,** *et al.* | |
| Defendants. | |

**DECLARATION OF ORRAN L. BROWN, SR.**
**IN SUPPORT OF NOTICE PLAN**

I, ORRAN L. BROWN, SR., hereby declare and state as follows:

### I.    INTRODUCTION

1.    *Personal Information.*  My name is Orran L. Brown, Sr.  I am the Chairman and a founding partner of BrownGreer PLC, located at 250 Rocketts Way, Richmond, Virginia 23231.

2.    *The Capacity and Basis of this Declaration.*  I am over the age of 21.  Unless otherwise noted, the matters set forth in this Declaration are based upon my personal knowledge, information received from the parties in this proceeding (the "Parties"), and information provided by my colleagues at BrownGreer.  The opinions presented and recommendations made in this Declaration rest on my training and experience.

3.    *The Purpose of this Declaration.*  I submit this Declaration to describe my experience, the notice plan being developed for the proposed class action settlement of this litigation (the "Notice Plan"), and why my professional opinion is that the Notice Plan will be effective and will constitute the best notice that is practicable under the circumstances to the members of the class involved in this settlement, pursuant to Fed. R. Civ. P. 23(c)(2)(B).

1

## II.    BACKGROUND AND EXPERIENCE

**4.**     *Summary of My Personal Experience.*   I have worked in the mass claims area, including class actions, for over 30 years.  I have extensive experience as a lawyer handling class action proceedings, settlements and notices; as a claims administrator designing and implementing class action settlements, notice plans and notices to claimants and counsel; as a notice administrator; as a trustee or special master involved in multiple claim proceedings; and as an educator on class actions and other complex litigation.  My personal biography is attached to this Declaration as Exhibit 1.

**5.**     *General Description of BrownGreer.*   BrownGreer has specialized in notice administration and settlement administration since my partner, Lynn Greer, and I founded the firm in 2002.  We are experts in the legal and administrative aspects of the design, approval, and implementation of notice plans, settlement programs and the design, staffing and operation of claims facilities to provide damages payments, medical monitoring, or other benefits for the resolution of multiple claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles. We have played major roles in many of the largest and most complex multiple claim proceedings and multiple claim settlement programs in history, serving as administrators, special masters, trustees, or settlement counsel.  The BrownGreer summary attached as Exhibit 2 to this Declaration provides detail on our firm.

**6.**     *Summary of Experience with Notices and Notice Programs.*   BrownGreer has performed crucial administration or review roles in more than 75 major programs involving the disposition of over $33 billion in payments to qualifying claimants.  In the course of the implementation of claims programs, BrownGreer has designed, written and issued over 14 million notices to claimants and counsel on the outcome of the review of their claims.  My work

as a lawyer and claims administrator regularly involves drafting the text of notices to known and unknown claimants or members of a class or settlement group, designing the appearance of such notices to make them concise, clear and understandable, and designing and implementing the method of distributing such notices in the best practicable manner to the persons or entities affected by them.  In its capacity as a notice administrator, BrownGreer has sent more than 41 million direct notices by mail and email and has designed and implemented print and internet publication notice campaigns achieving hundreds of millions of exposures.  We have extensive experience in all aspects of notice and settlement design and implementation, including:

(a)     On countless occasions, I have drafted and overseen the implementation of specific campaigns to certain groups of claimants before an existing claims facility to accelerate the disposition of stalled claims, to alert claimants to information and materials needed to complete their claims to be reviewed for eligibility determinations, and to advise claimants of the results of processing steps on their claims.

(b)     I have designed, and we have programmed, tested, hosted and maintained, many settlement websites to provide information on programs and containing complex functionality permitting claimants and their counsel to submit claims materials, receive notices on claim outcomes, take action on claims, and request materials.

(c)     We have designed, staffed, trained and operated call center systems and automated call systems for claimants and counsel to hear information on settlement programs, request information on notices and programs, or speak with specialists in the programs.

(d)     I have advised and participated in the implementation of notice programs to known and unknown potential claimants or class members, assessed the reasonableness and sufficiency of such notice programs, from both practical and legal perspectives, and worked with marketing consultants to place public notice in written and broadcast media.

(e)     I regularly advise companies and claims administrators and draft individual group notices to conform to applicable legal requirements and to make the text and instructions provided in such notices comprehensible and as simple as possible.

7.     ***Highlights of Major Notice Plan Projects.***  Here are some of our more extensive projects regarding notice programs:

(a) **Notice of Final Dalkon Shield Claim Filing Deadline**:  I drafted the notices and designed the entire notice campaign issued by the Dalkon Shield Claimants Trust to provide public notice of the final deadline for the submission of any claim relating to the Dalkon Shield device to the claims facility.  This campaign included a publication in mid-April 1994, in sixty-eight newspapers in the United States and internationally, of a quarter-page notice explaining the final claims deadline and the steps necessary to submit a claim before the deadline.  The supervisory court found this notice to be sufficient to advise potential claimants, whose identities could not be determined through due diligence, of the deadline and the opportunity to receive compensation through the claims resolution process.  *See In re A.H. Robins Co. (Smith v. Dalkon Shield Claimants Trust)*, 197 B.R 495 (E.D. Va.1995); *In re A.H. Robins Co. (Allen v. Dalkon Shield Claimants Trust)*, 197 B.R 501 (E.D. Va. 1995); *In re A.H. Robins Co. (Warren v. Dalkon Shield Claimants Trust)*, 197 B.R 503 (E.D. Va. 1995); *In re A.H. Robins Co. (Rothbard v. Dalkon Shield Claimants Trust)*, 197 B.R 509 (E.D. Va. 1996); *In re A.H. Robins Co. (Bennett v. Dalkon Shield Claimants Trust)*, 204 B.R 194 (E.D. Va. 1996).

(b) **Initial Notice of Diet Drug Settlement**:  I participated in the implementation of the notice campaign to provide notice of the preliminary approval of the national class action settlement of the diet drug litigation in 2000.  This campaign included a television commercial broadcast 106 times over a period of five weeks on network television and 781 times, for six consecutive weeks, on various cable networks.  It also included a summary notice that appeared repeatedly in several magazines between January and March 2000, and as a one-third page black and white advertisement in four national newspapers, 77 local newspapers, three newspapers distributed throughout the United States territories and four newspapers targeted to the Hispanic market.  This summary notice was also published in a variety of publications targeted to health care providers and pharmacists.  The notice was mailed to all pharmacists in the United States, physicians who were likely to have prescribed the diet drug to patients, and to a mailing list of known diet drug users.  The actual notice was an extensive packet of materials that included an Official Court Notice, a simpler Guide to Class Members, and claim forms that were all mailed to over 1,175,750 known class members.  This notice campaign was approved by the supervisory court as sufficient in *Brown v. American Home Products Corporation, (In re Diet Drugs Products Liability Litigation)*, MDL No.1203, 2000 WL 1222042 (E.D. Pa. 2000).

(c) **Notice of Final Judicial Approval of the Diet Drug Settlement**:  As required by the Settlement Agreement in the diet drug litigation, I, along with Class Counsel and other parties, drafted the Official Court Notice mailed in February 2002 to over 830,500 persons on the official notice list, of the final judicial approval of the settlement, the claims filing and medical diagnosis deadline dates affected by the date of final approval, the terms of the Settlement Agreement and benefits available, the steps required to seek benefits or opt out of the settlement, and the consequences of failing to act by the deadlines.

**(d)** **Notice of Nextel Communications Settlement:**  In January of 2004, I served as an expert witness in the class action field and advisor to the court on the adequacy of notification procedures in a large consumer class action involving alleged improper monthly billing by Nextel Communications.  The notice campaign included a combination of print publication and direct mail notice and reached nearly five million class members.

**(e)** **Notice of Seventh Amendment to the Diet Drug Settlement:**  In June 2004 through September 2004, I, Class Counsel, and other counsel drafted and designed the Official Court Notice of the Seventh Amendment to the Settlement Agreement, which required new notice to all known Diet Drug class members.  This notice described the terms of the Seventh Amendment, explained what benefits were available to class members under the agreement and provided direction to class members intending to object to or opt out of the new agreement, and consisted of both a detailed notice and a concise summary notice.  I testified regarding the Seventh Amendment and the notice plan during the fairness hearing on the Seventh Amendment before the United States District Court for the Eastern District of Pennsylvania on January 19, 2005.  The United States District Court for the Eastern District of Pennsylvania approved this notice plan as compliant with due process and Rule 23 in PTO 3880 - Preliminarily Approving the Seventh Amendment to the Nationwide Class Action Settlement Agreement with American Home Products Corporation, Approving the Form of Notice, and Scheduling a Hearing Regarding the Amendment (Document No. 104343), (August 26, 2004).  BrownGreer mailed these notices from September – November 2004 to over 525,000 class members in the Trust's claims database and handled all aspects of returned and re-issued mail.  The United States District Court for the Eastern District of Pennsylvania approved the Seventh Amendment in PTO 4567 (Document No. 105062) (March 15, 2005).

**(f)** **Notice of NFL Concussion Settlement.**  In June 2014, my firm produced the notice mailing list of the NFL Concussion Settlement Program.  The goals of this effort were to identify and include on the list: (1) as many living NFL Football Players as possible, whether currently playing or not playing at that time; (2) as many deceased NFL Football Players as possible; (3) the family members of deceased NFL Football Players; and (4) the best known mailing address of living NFL Football Players and the family members of deceased NFL Football Players.  As part of this analysis, we identified 7,126 deceased NFL Football Players.  To obtain the most current list of family relations of deceased players, BrownGreer coordinated with a commercial data curator to identify known first degree relatives based upon their association with the player in national address lists, credit applications, and other data sources, and to obtain best known addresses for those relatives.  Through this effort, we identified 10,987 family members with available mailing addresses, which we used in compiling the final mailing list for the program.  The supervisory court approved the notice campaign as sufficient on April 22, 2015 in *In re: National Football League Players' Concussion Injury Litigation*, MDL No. 2323, No. 14-cv-00029 (E.D. Pa. 2015).

(g) **Notice of Telephone Consumer Protection Act Class Action Settlement.** In July 2014, my firm and I were appointed by the United States District Court for the Northern District of Illinois to serve as the Notice and Claims Administrator for the $75,455,098.74 nationwide settlement program for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. We advised the parties on the notice plan for that action, and I submitted a Declaration in support of the Motion for Preliminary Approval regarding the settlement. BrownGreer implemented the notice campaign to provide notice of the class action settlement to users of approximately 21,200,000 unique cell phone numbers. This campaign primarily occurred in August 2014 through September 2014 and included individual emails, direct mailing of postcards, internet banner notice, and paid search terms. To inform the internet notice campaign, BrownGreer developed a comprehensive target audience profile for the class and designed a program tailored to that profile. BrownGreer sent over 16,500,000 notices, and the banner notice campaign enjoyed over 19,000,000 impressions throughout the display period. BrownGreer successfully reached over 96% of the known Settlement Class and nearly 92% of the estimated total Settlement Class. The supervisory court approved the notice campaign as sufficient on February 12, 2015 in *In re Capital One Telephone Consumer Protection Act Litigation*, MDL No.2416, 12 C 10064 (N.D. Ill. 2015).

(h) **Notice of Court Ordered Victim Compensation Program.** On August 19, 2016, my firm and I were appointed by the United States District Court for the District of Arizona in the Court's Order Re Victim Compensation (*Melendres v. Arpaio*, Case No 2:06-cv-02513-GMS (D. Ariz)) to serve as the Third-Party Administrator managing a mass Notice and Claims Processing Plan. The Maricopa County Board of Supervisors created a fund of $500,000 to compensate individuals who claimed that their constitutional rights were violated as a result of detention by the Maricopa County Sheriff's Office. For that matter, we designed a multi-faceted notice plan in Spanish and English that includes (1) letters mailed directly to known potential class members; (2) outreach to local and international community organizations and government consulate offices; (3) print publication notice in relevant periodicals; (4) radio advertisements on regional stations; (5) a dedicated settlement website; (6) internet banner ads; (7) paid search terms; (8) Facebook ads; and (9) a national press release.

(i) **Notice of Nationwide Consumer Product Settlement.** In September 2017, my firm and I were appointed by the United States District Court for the Eastern District of Washington to serve as the Notice and Claims Administrator for a $3,800,000 nationwide class settlement related to allegedly defective instant hot water filters sold and installed throughout the United States. For that matter, we designed a multi-faceted notice plan that included (1) letters mailed directly to known potential class members; (2) postcards mailed to businesses that may have sold, installed, or serviced the subject product; (3) print publication notice in a national consumer magazine, a national newspaper, a national newspaper supplement, and a national trade magazine; (4) a dedicated settlement website; (5) internet banner ads; (6) paid search terms; (7) Facebook ads; and (8) a national press release. On September 8, 2017, the supervisory court approved the notice campaign in *Desio v. Emerson Electric Co. d/b/a InSinkErator*, No. 2:15-cv-00346-SJM (E.D. Wash. 2017).

**(j)**    **Notice of Nationwide Corn Seed Settlement.**  In April 2018, my firm and I were appointed by the United States District Court of Kansas to serve as the Notice and Claims Administrator for a $1.51 billion nationwide class settlement related to the sale and marketing of Syngenta's genetically modified corn seeds and the alleged harm that Syngenta's conduct caused corn producers, grain handling facilities, and ethanol production facilities.  We designed, executed, and managed a comprehensive notice plan that included (1) letters mailed directly to known potential class members; (2) two reminder postcard notices mailed to known potential class members who had not yet filed a claim; (3) print publication notice in several national and regional trade magazines; (4) a dedicated settlement website; (5) initial and reminder radio advertisements on regional and nationally syndicated radio programs; (6) Facebook ads; (7) fliers sent to state and national organizations relevant to corn production; and (8) three national press releases.  BrownGreer successfully reached over 99% of the known Settlement Class and over 94% of the estimated total Settlement Class.  The supervisory court approved the notice campaign on April 10, 2018 in *In re Syngenta AG MIR 162 Corn Litigation*, MDL No.2491, 2:14-MD-02591 (D. Kan. 2018).

**8.**    *Other Relevant Experience.*  In addition to the notice plan projects highlighted in

Paragraph 7, BrownGreer has administered, served as experts, and/or otherwise consulted with

settled parties on many other notice programs approved as sufficient by the overseeing court,

such as the programs implemented in these cases:

(1) *Acosta v. Tyson Foods, Inc.*, No. 8:08-cv-86 (D. Neb.) (direct mail notice);

(2) *Bartell, et al. v. LTF Club Operations Company, Inc.*, Case No. 2:14-cv-00401 (S.D. Ohio) (direct mail notice);

(3) *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-0095 (W.D. Mich.) (direct mail notice);

(4) *Beecroft v. Altisource Business Solutions Pvt. Ltd.*, No. 0:15-cv-02184 (D. Minn.) (direct mail notice; social media ads);

(5) *Betts v. National Cash Advance/Advance America*, Nos. 502001CA000320OCAI-MB and 502004CA008164XXXXI-MB (Palm Beach County Cir. Ct.) (direct mail notice)

(6) *Brown & Szaller, Co., L.P.A., et al., v. Waste Management of Ohio, Inc.,* Case No. CV-16-859588.

(7) *Churchill v. Farmland Foods, Inc.*, No. 4:06-cv-4023 (C.D. Ill.) (direct mail notice);

(8) *Clark v. Grp. Hosp. & Med. Servs., Inc.*, No. 3:10-CIV-00333-BEN-BLM (S.D. Cal.) (direct mail notice);

(9) *Cohen v. Foothill/E. Transp. Corridor Agency, et al.*, No. SACV 15-01698 (C.D. Cal.) (direct mail and email notice);

(10)    *Cohen v. Warner Chilcott Pub. Ltd. Co.*, No. 1:06-cv-00401-CKK (D.D.C) (national print publications, internet banner ads, and paid internet search);

(11)    *Collins v. Sanderson Farms, Inc.*, No. 2:06-cv-02946 (E.D. La.) (direct mail notice);

(12)    *Conerly v. Marshall Durbin Food Corp.*, No. 2:06-cv-205 (N.D. Ala.) (direct mail notice);

(13)    *Contreras v. PM Beef Holdings, LLC*, No. 07-CV-3087 (D. Minn.) (direct mail notice);

(14)    *Cook v. Columbia Freightliner, LLC*, No. 10-CP-02-1987 (Aiken County S.C. Jud. Dist.) (direct mail notice);

(15)    *Flores v. Zorbalas*, No. 27-CB-16-14225 (Hennepin County District Court, Fourth Judicial District of Minnesota) (direct mail notice);

(16)    *Ene v. Maxim Healthcare Servs., Inc.*, No. 4:09-cv-02453 (S.D. Tex.) (direct mail notice);

(17)    *Ferguson v. Food Lion, LLC*, No. 12-C-861 (Cir. Ct., Berkeley Cnty., W. Va.) (regional print publications and direct mail notice);

(18)    *Gales v. Capital One, N.A.*, No. 8:13-cv-01624 (D. Md.) (direct mail notice);

(19)    *Gregorio v. Premier Nutrition Corp.*, No. 17-cv-05987-AT (S.D.N.Y.) (direct mail and email notice and internet banner ads);

(20)    *Gomez v. Tyson Foods, Inc.*, No. 08-021 (D. Neb.) (direct mail notice);

(21)    *Graham v. Capital One Bank (USA), N.A.*, 8:13-cv-00743 (C.D. Cal.) (direct mail notice);

(22)    *Gray, Ritter & Graham P.C. v. Goldmann Phipps PLLC*, No. 4:13-cv-00206-CDP (E.D. Mo.) (direct mail notice);

(23)    *Hall v. Capital One Auto Fin., Inc.*, No. 1:08-cv-01181 (N.D. Ohio) (direct mail notice);

(24)    *Hankins v. Carmax Inc.*, No. 03-C-07-005893 CN (Baltimore County Md. Cir. Ct.) (direct mail notice);

(25)    *Hanna v. Agape Senior, LLC*, No. 12-CP-40-5950 (S.C. St. Ct., Richland Cnty., S.C.) (direct mail notice and print publications);

(26)    *Herron v. Carmax Auto Superstores, Inc.*, No. 2006-CP-02-1230 (Aiken County S.C. Jud. Dist.) (direct mail notice);

(27)    *In re Bhatia v. 3M Co.*, No. 0:16-cv-01304 (D. Minn.) (direct mail notice and calling campaign);

(28)     *In Re Children's Ibuprofen Oral Suspension Antitrust Litig.-Indirect Purchaser Action*, No. 1:04-mc-0535-ESH (D.D.C.) (national print publications, internet banner ads, and paid internet search);

(29)     *In Re De Bernardi v. City and County of San Francisco.*, No. 4:2018-cv-04597 (N.D. Ca) (direct mail notice and email notice);

(30)     *In Re Moyer Packing Co.*, P. & S. Docket No. D-07-0053 (U.S. Dep't Agric.) (direct mail notice);

(31)     *In Re Oxycontin Litig.*, No. 02-CP-18-1756 (S.C. Eq., Dorchester Cnty., S.C.) (regional print publications and direct mail notice);

(32)     *In Re Wazwaz v. City and County of San Francisco.*, No. 3:2018-cv-05580 (N.D. Ca) (direct mail notice and email);

(33)     *Lycan, et. al., v. City of Cleveland*, No. CV 09686044 (Ct. of C.P., Cuyahoga County, OH) (direct mail notice, print publication)

(34)     *McCoy v. North State Aviation, LLC*, Case No. 1:17-cv-00346-CCE-LPA (M.D.N.C.).  (direct mail notice);

(35)     *Morales v. Greater Omaha Packing Co. Inc.*, No. 8:08-cv-0161 (D. Neb.) (direct mail notice);

(36)     *Morgan v. Richmond Sch. of Health & Tech.*, No. 3:12-cv-00373-JAG (E.D. Va.) (regional print publications and direct mail notice);

(37)     *Nader v. Capital One Bank (U.S.A.), N.A.*, No. 2:12-cv-01265-DSF-RZ (C.D. Cal.) (national print publication and direct mail and email notice);

(38)     *Orrin S. Anderson v. Capital One Bank*, No. 7:19-cv-03981 (S.D. NY) (direct mail notice);

(39)     *Polanco v. Moyer Packing Co.*, No. C.P., 1852 (Philadelphia County Pa.) (direct mail notice);

(40)     *Rubenstein v. The Neiman Marcus Group LLC*, No. 2:14-cv-07155-SJO-JPR (C.D. Ca.).  (direct mail notice, digital notice, print publication notice);

(41)     *Runton et al. v. Brookdale Senior Living, Inc.,* No. 0:17-cv-60664-CMA (S.D. Fla.) (direct mail notice)

(42)     *Samuel v. EquiCredit Corp.*, No. 00-cs-6196 (E.D. Pa.) (direct mail notice);

(43)     *Santiago v. GMAC Mortg. Grp.*, Inc., No. 784574 (E.D. Pa.) (direct mail notice);

(44)     *Spinelli v. Capital One Bank (USA)*, No. 8:08-cv-132 (M.D. Fla.) (direct mail notice);

(45)   *Stout v. JELD-WEN, Inc.*, No. 1:08-cv-0652 (N.D. Ohio) (national and regional print publications, internet banner ads, paid internet search, and direct mail notice);

(46)   Travel Insurance Refund Program in the matter of Jefferson Insurance Company NAIC #11630 and in the matter of BCS Insurance Company NAIC #38245 (direct mail notice);

(47)   *United States v. Capital One, N.A.*, No. 1:12-cv-828 (E.D. Va.) (direct mail notice);

(48)   *United States v. Chevy Chase Bank, F.S.B.*, No. 1:13-cv-1214 (E.D. Va.) (direct mail notice);

(49)   *United States v. National Treasury Employees Union*, No. 93-1170 (D.C. App.) (direct mail notice)

(50)   *Watts v. Capital One Auto Finance, Inc.*, No. CCB-07-03477 (D. Md.) (direct mail notice); and

(51)   *Wilder v. Triad Fin. Corp.*, No. 3:03-cv-863 (E.D. Va.) (direct mail notice).

### III.   THE GOALS OF A SUCCESSFUL NOTICE PLAN

**9.   *Required Notice to the Class.*** As advised in the Manual for Complex Litigation, "[n]otice is a critical part of class action practice," for it "provides the structural assurance of fairness that permits representative parties to bind absent class members." *See Manual for Complex Litigation*, § 21.31 (4th ed. 2010). The proposed settlement in this proceeding involves a common issues class under Fed. R. Civ. P 23(b)(3). For any matter certified as a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." For the settlement of such a class, Rule 23(e)(1) requires the court to examine at the notice stage whether it would be likely to approve the proposed settlement after considering many of the same procedural and substantive factors that it will consider at the final approval stage. If after "frontloading" its examination the court determines it would be likely to (1) approve the proposed settlement and (2) certify the class, it must then "direct notice in a reasonable manner to all class members who would be bound by the proposal." The Advisory Committee notes that

it is standard practice to send one combined notice to the class under both Rule 23(e)(1) and Rule 23(c)(2)(B). Fed. R. Civ. P. 23 advisory committee's note. This combined notice should adhere to the "best notice practicable" standard of Rule 23(c)(2)(B), thereby satisfying both these provisions.

10.   ***How the Notice is to be Delivered to the Class.***  The delivery methods selected for the notice must fulfill the essential requisites of due process by alerting affected parties to the pendency of the resolution and affording them the opportunity to be heard. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Indeed, as the Advisory Committee acknowledges, "[t]he ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims." Fed. R. Civ. P. 23 advisory committee's note. Rule 23 and due process mandate individual notice to known and reasonably knowable class members. "[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176-77 (1974). There is, however, no one preferred means of delivering notice when considering what is the "best notice practicable." In 2018, Rule 23(c)(2)(B) was amended to permit notice to be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means." As explained in the Advisory Committee Notes, while the rule continues to call for "the best notice

that is practicable," the court should consider whether a certain method of giving notice is "appropriate" in light of the nature of the case and characteristics of the class.  "Instead of preferring any one means of notice, [] the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court.  The court should exercise its discretion to select appropriate means of giving notice."  Fed. R. Civ. P. 23 advisory committee's note.  In making those selections, courts should be conscious of the Supreme Court's reminder in *Mullane* that "process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  *Id.* at 315.

     **11.**    ***The Content and Format of the Notice.***  The Advisory Committee Notes instruct that, "[i]n determining whether the proposed means of giving notice is appropriate, the court should also give careful attention to the content and format of the notice[.]"  Fed. R. Civ. P. 23 advisory committee's note.  Rule 23(c)(2)(B) requires that the notice of a Rule 23(b)(3) class action "must clearly and concisely state in plain, easily understood language" these seven messages:

> (1) the nature of the action;
> (2) the definition of the class certified;
> (3) the class claims, issues, or defenses;
> (4) that a class member may enter an appearance through an attorney if the member so desires;
> (5) that the court will exclude from the class any member who requests exclusion;
> (6) the time and manner for requesting exclusion; and
> (7) the binding effect of a class judgment on members under Rule 23(c)(3).

According to the Court in *Mullane:*

> The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance . . . .  But if, with due regard for the practicalities and peculiarities of the case, these conditions are reasonably met, the constitutional requirements are satisfied.

339 U.S. at 314-15.  "The notice should describe the action and the plaintiffs' rights in it."  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Two of the four Major Checkpoints in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (the "FJC Checklist") address the need to make the notices themselves both noticeable and understandable:

> ***Will the notices come to the attention of the class?***  Notices should be designed using page-layout techniques (e.g., headlines) to command class members' attention when the notices arrive in the mail or appear on the Internet or in printed media.

> ***Are the notices informative and easy to understand?***  Notices should carry all of the information required by Rule 23 and should be written in clear, concise, easily understood language.

A notice plan must ensure that each notice sent to a class member individually or by publication conveys in clear, non-legalistic words and a reader-friendly format the information that the class member needs to make an informed decision about whether to accept, opt out, or object to the proposed settlement, how to effect any such decision, the deadlines by which to act, and the consequences of taking or not taking action.  The Advisory Committee notes that it is "important to include details about the proposed method of giving notice and to provide the court with a copy of each notice the parties propose to use."  Fed. R. Civ. P. 23 advisory committee's note.

   **12.**     ***Timing of the Notice.***  The notice must be transmitted on dates that allow potential class members sufficient time to receive the notice, realize a need to react to it, and take the actions necessary to, if they so choose, participate in the settlement, be excluded from it, or object to it.  The assessment and significance of these criteria vary depending upon the nature of the claims involved in the settlement, the sophistication of potential class members, the information available on known class members, and the complexity of the actions required to seek benefits under the settlement.

## IV.   THE SETTLEMENT CLASS

**13.**   ***The Proposed Settlement Class.***  The Parties' March 13, 2020 Settlement

Agreement defines the proposed Settlement Class as the following:

> [A]ll Persons within the United States and its territories who after March 7, 1984 and before March 30, 2011 filed and Served a lawsuit against Engelhard/BASF seeking asbestos-related bodily injury compensation or other relief arising from exposure to Emtal Talc products, and who before March 30, 2011 either: (A) had voluntarily dismissed or terminated the lawsuit as to Engelhard/BASF after the suit was filed, including any voluntary dismissal or release of claims due to settlement; or (B) had their lawsuit as to Engelhard/BASF involuntarily dismissed.

(Agreement § 1.2.1.)  The "Persons" are comprised of two groups of people: (1) the Class

Members with a right to claim damages related to their own Emtal Talc exposure (the "Injured

Persons"); and (2) the Derivative Claimants with a right to damages based on an Injured Person's

injury or death, including such groups as spouses, heirs, legatees, personal representatives, and

wrongful death beneficiaries and assignees (the "Derivative Claimants"). (Agreement § 1.3.60.)

**14.**   ***The Class Data***.  The Parties gave the Settlement Administrator in this matter,

Verus LLC ("Verus"), access to a number of data sources, including databases and spreadsheets

of plaintiff data from several plaintiff law firms, copies of complaints containing plaintiff names

as well as addresses and/or Social Security Numbers ("SSNs") for some of these plaintiffs,

copies of pleadings, interrogatories, depositions and other documents from the underlying

lawsuits, and other non-privileged material discovered in the *Williams v. BASF Catalysts, LLC*,

No. 2:11-cv-01754, litigation (the *Williams* matter) (collectively, the "Class Data").  Verus

provided BrownGreer with an aggregated list of unique series of different Class Member lists

extracted from the Class Data, and where such information was available, also provided details

about whether the Class Members were deceased, relatives of those deceased Class Members,

recent contact information for these relatives and Class Members who are presumed to be living,

14

through TransUnion proprietary database searches, and the names and addresses of certain Class Members' attorneys from the underlying lawsuits.  We consulted with Verus and the Parties to develop a final Class Member list  and updated information for a number of Class Members in collaboration with LexisNexis, a global provider of information and analytics.  We ran the names and additional data points available for the Class Members through LexisNexis' proprietary database of over 83 billion public records to further identify deceased Class Members, their first-degree relatives, and a last known address for these relatives and the Class Members presumed to be living.  After we incorporated the results from LexisNexis, we created two distinct lists: (1) the Class Member List containing 18,721 Class Members, 7,055 of whom LexisNexis and/or Verus' data source(s) identified as deceased (the "Deceased") and 11,666 of whom are presumed to living (the "Presumed Living"); and (2) the Relative List containing 30,350 known first-degree relatives[1], grandparents, and grandchildren of deceased Class Members (the "Relatives"). We further culled the Relative List to include only those 27,803 Relatives for whom there was no indication of being deceased, belonging to 5,525 of the Deceased Class Members, forming the "Presumed Living Relative List."

Having identified the Class Members and the above identified cohorts of Deceased, Presumed Living, and Relatives, our next task was to compile addresses or other contact information to be able to provide direct notice to Class Members.  Through the material provided regarding the underlying lawsuits, we were initially able to identify addresses for all but 5,371 of the potential Class Members.

15.  ***Additional Efforts to Obtain Class Data from Asbestos Trusts.***  We understood from discussions with Verus and the Parties that there is a high likelihood that the Class

---

[1] First-Degree Relatives includes spouses, siblings, children, and parents.

Members in this case may have filed claims with one or more asbestos bankruptcy trusts established under 11 U.S.C. § 524(g) (the "Trusts").  After numerous discussions with the Parties on possible steps to find contact information for known Class Members, on February 14, 2020, BrownGreer emailed 10 Trust Counsel and Trustees who collectively represent and serve 38 of the largest Trusts, 20 of which are administered by Verus, and invited a phone conversation to discuss conceptually how the Trusts might be able to assist in effecting direct notice to potential class members who match to a name in their claimant databases.

Between February 17 and March 3, 2020, we had calls with the eight Trusts Counsel and Trustees, representing and serving 34 Trusts, who had responded to our initial email and agreed to speak with us over the phone.  We explained on those calls that there are approximately 5,000 potential Class Members for whom we have no information from which we can ascertain a mailing address for the Class Member or contact information for a relative, making us hopeful that the Trusts would be willing to help us and the Parties here by disclosing such data to us, or disseminating the class notice themselves to such persons.

The Trusts tended to take the same position in response to our entreaties, though the level of support they were willing to provide varied.  No Trust was willing to disclose claimant data voluntarily, citing to Trust claimant rights of confidentiality.  All Trust Counsel and Trustees with whom we spoke also indicated that the addresses they maintained were of claimants' counsel and not the Trust claimants.  Many expressed concerns about the unreliability of matches based on only a full name.  However, while several Trust Counsel and Trustees were less amenable to supporting the notice process in any way because of concerns with confidentiality, Trust resources, and false name matches, a number of them indicated an initial potential willingness to send the notice to matching claimants' attorneys on behalf of this settlement.

Between March 13, 2020 and March 31, 2020, we engaged the Trusts in several follow-up discussions over phone and email, during which we shared more information about the potential settlement, and in a few instances, a copy of the complaint and the draft class notice. Ultimately, Trust Counsel and Trustees with whom we spoke declined to assist in the notice process.  It was around this time that we learned that Class Counsel and Verus had discovered an alternative approach to identifying Class Member contact information and reaching those potential Class Members.  Accordingly, we terminated our pursuit of potential Class Member data from the Trust databases or any additional support in providing notice to these 5,371 persons for whom we had no address and instead relied on the Class Data provided by the Parties and Verus and the efforts they undertook to supplement the Class Data to develop the Notice Plan.

16.     ***Additional Efforts to Obtain Class Data from Discovery Documents.***  While communication with the Trusts was on-going, Class Counsel's data management vendor forwarded to Verus the document images produced by defendants in the *Williams* matter and third parties in response to subpoenas relating to the underlying cases in anticipation of preparing them for use as outlined in the Plan of Distribution.  Verus and Class Counsel reviewed these documents using data science name matching techniques and other technology assisted document search and review techniques to further identify class members identities and location information, and by doing so, identified mailing addresses for 2,871 of the 5,371 persons for whom we previously had no address.  The documents also revealed that 241 persons on the original Class List were lay or expert witnesses, and accordingly, we removed them from the Class List.  As a result, we have narrowed it down to 2,500 Class Members whom we are unable

to attempt to notice directly or through a relative because of a lack of address or other identifying information.

## V.     THE NOTICE PLAN

17.     *Direct Notice.*  The first goal of this Notice Plan is to provide direct notice to all Settlement Class Members who can be identified through reasonable effort.  Indeed, the Parties, Verus, and BrownGreer have undertaken considerable effort to identify as many known Settlement Class Members as reasonably possible.  We will mail the long-form Notice substantially in the form of Exhibit K to the plaintiff's motion for preliminary approval in the following manner:

(1) *Presumed Living Class Members.*  We will mail the long-form Notice to every Presumed Living Class Member for whom we have a name and address.  We will attempt to verify and update all addresses against the United States Postal Service's ("USPS") National Change of Address ("NCOA")[2] database prior to mailing.  If a Notice is returned by the USPS as undeliverable but with a forwarding address, we will re-mail the Notice to the updated address provided by the USPS.  If the returned Notice does not identify any updated address from the USPS, we will submit the Class Member's mailing information to the LexisNexis compendium of domestic addresses for updated address information, if available.  In addition, we will update addresses based on requests received from Class Members.  We estimate that we will target through direct notice approximately 9,356 (80%) of the Presumed Living Class Members directly, representing 50.0% of the total Settlement Class.

(2) *Presumed Living Relatives of Deceased Class Members.*  We have names and addresses for 27,803 Relatives in the Presumed Living Relative List associated with 5,525 distinct Deceased Class Members.  The Settlement Agreement permits a personal representative to submit a claim on behalf of a deceased Class Member and such personal representatives release their claims against the defendants regardless of whether they file a claim.  (Agreement § 1.3.63, § 1.3.70)  We will mail notice to these known Presumed Living Relatives who may be or may know deceased Class Members' personal representatives.  We estimate that we will target directly

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS from individuals and businesses. The Settlement Potential Claimant list is submitted against the database, and a Potential Claimant's address is automatically updated with the new address from USPS data based on a comparison with the Potential Claimant's name and last known address.

approximately 27,803 known Presumed Living Relatives belonging to 5,525 (78.3% of) total deceased Class Members, or 25% of the total Settlement Class.

(3) ***Deceased Class Members.***  Of the 7,055 Class Members who are deceased, we have a name and mailing address for 6,825 (96.7%).  While notices mailed to these persons' last known addresses, of course, will not reach the actual Class Members, they may, at minimal cost, reach family members or other persons who are or may know personal representatives of the Deceased.

(4) ***Attorneys and Law Firms in Underlying Lawsuits.***  As described above, Verus provided to us the names and mailing addresses of 50 attorneys and law firms who collectively represented 4,929 Class Members in their underlying lawsuits, 2,212 for whom search efforts did not yield direct contact or other identifying information.  We understand from Verus and the Parties that the majority of these attorneys or their successors are still active and, we believe it is reasonable to conclude that many are in active communication with the living Class Members who they represented during the class period or may be a reliable source from whom we can update contact information for these clients.  Therefore, we will mail a long-form Notice to every attorney and law firm for whom we have an address in the same manner described above for Presumed Living Class Members and Relatives.  We will provide the lawyers with a list of potential Class Members for whom our research suggests they filed underlying lawsuits, and we will enclose a letter prepared by Class Counsel substantially in the form of Exhibit 3 to this Declaration that will provide background about the matter, request that the recipient mail the Notice to his or her clients who were plaintiffs in the underlying lawsuits, and ask the attorneys to respond to BrownGreer with confirmation that they mailed the Notice to their clients.

18.      ***Estimated Direct Notice Reach.***  Through direct notice alone, we feel we can target through mailed notice nearly 80% of the Settlement Class either directly or through at least one relative of the Deceased, and just over 90% after including notice through plaintiffs' firms.  Because of anticipated undeliverable notices, which we estimate will be no more than 15% of notices sent, we project that we can reach at least 77.5% of Class Members and their Relatives directly.  We understand from defense and plaintiffs' counsel that the attorneys for whom we have information in this case from depositions and other discovery documents are highly engaged with their clients, and therefore, the attorneys are likely to disseminate the message to their former and current clients.  Accordingly, we believe the 77.5% estimated reach percentage may be conservative.  Under the circumstances, and thanks to the considerable data culling,

cleansing, and enhancing efforts undertaken, we expect to achieve a meaningful and important reach percentage that rises above the 70% reach target suggested by the FJC Checklist.

19.    ***Need for Publication Notice***.   Although a reach percentage of at least 70% is probable in this matter, there are a few unpredictable factors that could reduce the reach of Class Members, such as the strength of addresses we received for this aging population of Class Members from various data sources and the fact that the Relatives to whom we are sending Notice may not be or notify the personal representatives of the Deceased.   Accordingly, we plan to supplement the direct notice efforts with a carefully planned public notice campaign to target those Class Members, Relatives, and other potential personal representatives we cannot reach by mail because their identities are unknown, mailing addresses of those persons are unavailable, or mailed notices are returned to us by USPS as undeliverable.   This public notice will also reach Presumed Living Class Members and Relatives already notified by direct mail.   By reaching these persons again, the public notice will serve alternative goals of strengthening Class Member and Relative awareness of the Settlement and engaging those persons to become more likely to participate in the settlement program.

20.    ***Developing a Publication Notice Plan.***   Notice by publication in the class settlement context refers to the practice of exposing potential members of a Settlement Class whom you cannot contact directly to a class settlement notice by strategically placing the notice in places where the Settlement Class Members will have the opportunity to see, read and react to the notice.   A publication notice campaign is effectively an advertising campaign for the proposed class settlement.   A publication notice strategy, therefore, must consider characteristics of the audience and how those audience members are most likely to see and respond to the notice.   The publication notice strategy in the Notice Plan proposed for this case

obviously must target the Settlement Class.  We will also aim to reach Relatives of the Deceased for the reasons described in Paragraph 17(b) of this Declaration.  Based on our analysis of the available last known addresses for Class Members and known Presumed Living Relatives, we estimate that nearly 82% of the Presumed Living Class Members and 72.5% of the Presumed Living Relatives reside in Ohio, Mississippi, Georgia, and Alabama.  An analysis of available dates of birth for the Presumed Living Relatives reveals that more than 50% are ages 45-70.  While there is limited date of birth information available for the Presumed Living Class Members, we know from the high percentage of deceased Class Members and representations of the Parties nearly all Presumed Living Class Members are over 55.  Therefore, the publication notice strategy will use geographic, age, and other industry standard targeting techniques to try to reach potential Settlement Class Members.

    **(1)** ***Print Publication.***  We will adapt the long-form Notice into a summary notice format, substantially in the form of Exhibit L to the plaintiff's motion for preliminary approval that can be placed as ads in various print publications.  We will implement a regional print publication campaign focused on the four states where the vast majority of Presumed Living Class Members and Presumed Living Relatives reside.  We will supplement that campaign with three carefully selected national print ads chosen to reach Class Members and Relatives outside these four states.  The table below shows the print publications where we will place summary versions of the long-form Notice.

| Print Publications | | | |
|---|---|---|---|
| **National** | | | |
| | **Publication** | **Description** | **Circulation** |
| 1. | *AARP Bulletin* | Provides timely insights and in-depth analysis important to Americans 50-plus on topics including health, Medicare, Social Security, finances, and consumer protection. | 23,109,129 |
| 2. | *Conquer* | Magazine that is the forum for patients with cancer initiated by the Academy of Oncology Nurse & Patient Navigators. It features articles written by and for patients with cancer, survivors, nurse navigators, and other oncology team members. The magazine addresses the issues that patients, their family members, and caregivers face every day in an easy-to-read format. Issues include interviews with patients with cancer, information on access to care, and articles on lifestyle topics such as nutrition, stress management, personal finance, and legal and employer issues. | 90,000 |

| 3. | *Coping with Cancer* | Magazine is edited for people whose lives have been touched by cancer. It provides the knowledge patients, survivors or professionals need to cope with the many issues confronting their daily lives, including assuming greater responsibility for, and participation in, the many facets of the disease. It includes information on research, treatment, survivor profiles, and latest news. | 285,000 |
|---|---|---|---|

| Regional | | |
|---|---|---|
| | **Publication** | **Location** | **Circulation** |
| 1. | *Akron Beacon Journal* | Akron, OH | 56,951 |
| 2. | *Albany Herald* | Albany, GA | 14,526 |
| 3. | *Columbus Ledger-Enquirer* | Columbus, GA | 12,359 |
| 4. | *Delta Democrat Times* | Greenville, MS | 9,722 |
| 5. | *East Liverpool Review* | East Liverpool, OH | 3,514 |
| 6. | *Montgomery Advertiser* | Montgomery, AL | 12,013 |
| 7. | *Northeast Mississippi Daily Journal* | Tulepo, MS | 18,348 |
| 8. | *Portsmouth Daily Times* | Portsmouth, OH | 8,574 |
| 9. | *Savannah Morning News* | Savannah, GA | 16,799 |
| 10. | *Sun Herald* | Gulfport, MS | 12,655 |
| 11. | *The Anniston Star* | Anniston, AL | 8,985 |
| 12. | *The Atlanta Journal-Constitution* | Atlanta, GA | 238,343 |
| 13. | *The Augusta Chronicle* | Augusta, GA | 16,418 |
| 14. | *The Cincinnati Enquirer* | Cincinnati, OH | 79,440 |
| 15. | *The Clarion-Ledger & Hattiesburg American* | Jackson, MS/Hattiesburg, MS | 106,422 |
| 16. | *The Commercial Dispatch* | Columbus, MS | 13,500 |
| 17. | *The Decatur Daily* | Decatur, AL | 10,980 |
| 18. | *The Dothan Eagle* | Dothan, AL | 12,357 |
| 19. | *The Greenwood Commonwealth* | Greenwood, MS | 3,005 |
| 20. | *The Marietta Times* | Marietta, OH | 5,730 |
| 21. | *The Meridian Star* | Meridian, MS | 7,691 |
| 22. | *The Plain Dealer* | Cleveland, OH | 138,938 |
| 23. | *The Selma Times-Journal* | Selma, AL | 10,043 |
| 24. | *The Telegraph* | Macon, GA | 16,759 |
| 25. | *The Tuscaloosa News* | Tuscaloosa, AL | 12,169 |
| 26. | *Times Daily* | Florence, AL | 12,271 |
| 27. | *Delta Democrat Times* | Greenville, MS | 9,722 |
| 28. | *East Liverpool Review* | East Liverpool, OH | 3,514 |
| 29. | *Montgomery Advertiser* | Montgomery, AL | 12,013 |
| 30. | *Northeast Mississippi Daily Journal* | Tulepo, MS | 18,348 |

| 31. | *Portsmouth Daily Times* | Portsmouth, OH | 8,574 |
|---|---|---|---|
| 32. | *Savannah Morning News* | Savannah, GA | 16,799 |
| 33. | *Sun Herald* | Gulfport, MS | 12,655 |
| 34. | *The Anniston Star* | Anniston, AL | 8,985 |
| 35. | *The Atlanta Journal-Constitution* | Atlanta, GA | 238,343 |
| 36. | *The Augusta Chronicle* | Augusta, GA | 16,418 |
| 37. | *The Cincinnati Enquirer* | Cincinnati, OH | 79,440 |
| 38. | *The Clarion-Ledger & Hattiesburg American* | Jackson, MS/Hattiesburg, MS | 106,422 |
| 39. | *The Commercial Dispatch* | Columbus, MS | 13,500 |
| 40. | *The Decatur Daily* | Decatur, AL | 10,980 |
| 41. | *The Dothan Eagle* | Dothan, AL | 12,357 |

**(2)** *Digital Advertising.*  In addition to the print media publications listed above, we will incorporate a digital notice component into the Notice Plan.

**(a) Banner Advertisements.**  In fashioning the components of the public notice program, we have taken into account the changes in media consumption as a result of the COVID-19 pandemic, during which far fewer people are traveling, staying in hotels, and visiting physician and other offices where magazines are often read, as well as the reality that many such locations, even though partially re-opened, have removed high-touch items like newspapers and magazines from their lounge and waiting areas.  To accommodate such changes, we will adapt the long-form Notice into a banner ad that can be placed on the online version of *People* magazine.  The banner ad will expose the notice to Class Members, and importantly some of the younger Relatives, who may prefer to consume media electronically or have less opportunity now to consume print media.  Viewers of the ad can click on the ad and be routed directly to the Settlement Website, where they are able to download a copy of the long-form Notice.

**(b) Paid Internet Search Terms.**  The paid search component of the Notice campaign involves the use of targeted keywords on top Internet search engines, such as Google.  We will purchase terms that are narrowly related to the subject matter and Parties to this settlement for at least a period of thirty days following the date the class notice commences.  A link to the Settlement Website will appear when there is high relevance between the search and our selected keywords, and is then ranked by a computed value based on the dollar amount of the bid.  When Internet visitors search for these keywords or keyword combinations, the Settlement Website will be displayed at the top of the list of results for the search query.  The internet search terms aspect of the Notice Plan aims to achieve approximately 10,000 impressions and 300 click-throughs to the Settlement Website each month.

**(3)** *Press Release.*  We will issue a joint press release substantially in the form of Exhibit 4 through Cision/PR Newswire, a leading provider of multimedia platforms

and distribution.  The press release will explain the core aspects of the proposed settlement and provide the address for the Settlement Website, as well as the toll-free number.  We expect that the press release will be picked-up by hundreds of media outlets with a combined potential audience of tens of millions of people.

## VI.     CONCLUSION

21.     *The Notice Plan is the Best Notice Practicable Under the Circumstances.*

The Notice Plan provides direct, individual notice by mail to potential Class Members and their known Relatives to the extent reasonably possible.  The proposed Notice Plan satisfies due process and Rule 23's requirement of the best notice practicable under the circumstances, including giving individual notice to all Class Members who can be identified with reasonable effort and supplementing those efforts with notice to persons associated with the Class Members and paid media elements.  With an estimated direct notice reach exceeding 77% of Presumed Living Class Members or their attorneys of underlying lawsuits and at least one Relative of deceased Class Members, a regional public notice campaign that targets Presumed Living Class Members and Presumed Living Relatives, national print publication ads that will expose Presumed Living Class Members and Relatives outside of the four primary states of residence to the notice, and a digital media component targeting those Class Members and their Relatives who consume media electronically and actively search for information relevant to this matter, the Notice Plan is likely to provide the same or better reach than courts have approved in other similar class matters.  The Notice Plan is also generally consistent with the aims of the FJC Checklist.

I, Orran L. Brown, Sr., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.  Executed on this 2nd day of July, 2020.


_____

Orran L. Brown, Sr.

25

# Exhibit 1

**Orran Brown Sr. Biography**

**BROWN GREER**

*Founding Partner*

# ORRAN L. BROWN, SR.



Orran develops and implements the best practices and strategies for the negotiation and drafting of resolution plans, legal proceedings to obtain court approval, the efficient design and operation of group claims facilities and compliance with the agreements and court orders governing the claims resolution process to provide a program a successful start and timely and efficient progress to a successful completion.  He has served as a claims administrator, as a trustee directing the implementation of a settlement program and as a Special Master presiding over discovery, records collection and deposition scheduling and calendaring in coordinated multidistrict proceedings.

Orran has served in these fields since 1990.  He and Lynn Greer founded BrownGreer in September 2002 to devote themselves to providing these services and to assist parties and the courts in handling the information and issues presented in management and resolution of multidistrict litigation and multiple claim situations.

## Education & Honors

- Harvard Law School, Cambridge, Massachusetts, J. D. *cum laude*, 1981
- Hampden-Sydney College, Hampden Sydney, Virginia, B.A., Government and Foreign Affairs, *summa cum laude*, 1978 (GPA 4.0 out of 4.0; Phi Beta Kappa; Omicron Delta Kappa; Eta Sigma Phi; Pi Sigma Alpha; Chairman of the Student Court)
- Law Clerk to the Hon. Robert R. Merhige, Jr., United States District Court for the Eastern District of Virginia, Richmond, Virginia, 1981-1982
- *Super Lawyers Magazine's* 2007 - 2019 Annual List of Top Attorneys in Virginia
- AV Preeminent™ Rating, Martindale-Hubbell® 2016-2017

## Professional Activities

- Wheat Professor, Hampden Sydney College 2018-Present; Leadership and Ethics Class
- Adjunct Professor, University of Richmond School of Law 1997-2005 (Taught trial and appellate practice and an upper-level course on mass torts, MDL class actions, and complex litigation)
- Frequent speaker at conferences and continuing legal education events
- Permanent Member, Fourth Circuit Judicial Conference

## Service Activities

- Board of Trustees, Hampden-Sydney College
- Board of Trustees, Roller-Bottimore Foundation
- Board of Visitors, St. Christopher's School
- Vestry, St. Stephen's Episcopal Church
- City of Richmond Charter Review Commission
- Boy Scouts Troop 444, Assistant Scout Master

## Bar Admissions

- Virginia, 1986
- Texas, 1983

# Exhibit 2

**BrownGreer Summary of Experience**



# FIRM EXPERIENCE

**BROWNGREER PLC**

250 Rocketts Way

Richmond, VA 23231

(8040 521-7200

information@BrownGreer.com

WWW.BROWNGREER.COM

## PERSONAL INJURY SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 1. | *In re National Football League Players' Concussion Injury Litigation,* **MDL Docket No. 2323 (E.D. Pa).** Class action settlement to resolve claims by retired National Football League players relating to repetitive head impacts. | Claims Administrator | TBD | Fund Uncapped |
| 2. | *Confidential.* Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 12,000 Claimants | Fund Uncapped; $1.4 Billion Disbursed |
| 3. | *Confidential.* Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 2,700 Claimants | Fund Uncapped; $279 Million Disbursed |
| 4. | *Catholic Diocese of Richmond Independent Reconciliation Program.* Private Settlement to resolve sexual abuse claims in the Richmond Catholic Diocese. | Claims Administrator | TBD | TBD |
| 5. | *In re: Just For Men® Mass Tort Litigation,* Case No. 3:16 cv-00638-SMY (S.D. IIL.). Private Settlement to resolve cases arising out of the use of a male-oriented hair coloring product designed to cover grey hair. | Claims Administrator | TBD | TBD |
| 6. | *In re Vioxx Products Liability Litigation,* **MDL Docket No. 1657 (E.D. La.).** Voluntary settlement program to resolve claims arising from the use of prescription painkillers. | Claims Administrator | 60,000 Claimants | $4.85 Billion |
| 7. | *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation,* **MDL Docket No. 1203 (E.D. Pa.).** Class action settlement to resolve claims arising from the use of "Fen-Phen" diet drugs. | Liaison for the Defendant to the Settlement Trust | 600,000 Claimants | $3.55 Billion |
| 8. | *In re A.H. Robins Company Inc., Debtor (In re Dalkon Shield Claimants Trust),* **MDL Docket No. 211 (Bankr. E.D. Va.).** Settlement program created in the Chapter 11 bankruptcy proceeding of the A.H. Robins Company to resolve claims arising from use of the Dalkon Shield intrauterine device. | Counsel to the Settlement Trust | 400,000 Claimants | $3 Billion |
| 9. | *In re DePuy Orthopaedics, Inc., ASR Hip Implant Products,* **MDL Docket No. 2197 (N.D. Ohio).** Voluntary settlement program for claims relating to metal-on-metal hip implant devices. | Claims Administrator | 9,300 Claimants | $2.8 Billion |



## PERSONAL INJURY SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 10. | *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Products Liability Litigation,* MDL Docket No. 1203 (E.D. Pa.).  Voluntary settlement program to resolve opt outs from the class action settlement of claims arising from use of "Fen-Phen" diet drugs. | Claims Administrator | 66,000 Claimants | $2.63 Billion |
| 11. | *In re Actos (Pioglitazone) Products Liability Litigation,* MDL Docket No. 2299 (W.D. La).  Voluntary settlement program to resolve claims arising from the use of a diabetes medication. | Claims Administrator | 10,800 Claimants | $2.37 Billion |
| 12. | *In re Sulzer Orthopedics and Knee Prosthesis Products Liability Litigation,* MDL Docket No. 1401 (N.D. Ohio).  Class action settlement of claims relating to hip and knee implants. | Claims Administrator | 27,000 Claimants | $1.15 Billion |
| 13. | *October 1 Fund.* Private Settlement to resolve cases arising from the October 1, 2017 Las Vegas shooting at Mandalay Bay during an outdoor concert. | Claims Processor | 4,300 | $800 Million |
| 14. | *In Re Xarelto® Litigation Settlement Program.*  Private settlement to resolve cases arising out of the use of a prescription blood thinner. | Claims Administrator | 33,000 | $775 Million |
| 15. | *In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation,* MDL Docket No. 2385 (S.D. Illinois).  Voluntary settlement program to resolve claims arising from the use of a blood thinning medication. | Claims Administrator | 4,800 Claimants | $650 Million |
| 16. | *In re: Benicar (Olmesartan) Products Liability Litigation,* MDL No. 2606 (N.J.).  Voluntary settlement program to resolve claims arising from the use of prescription hypertension medication. | Claims Administrator | 8,500 Claimants | $358 Million |
| 17. | *In re Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation,* MDL Docket No. 2329, (N.D. Ga.).  Private settlement program established to resolve claims related to CONSERVE®, DYNASTY®, and LINEAGE® metal-on-metal hip replacement devices. | Claims Administrator | 1,233 Claimants | $249 Million |
| 18. | *In re Reglan®/Metoclopramide Mass Tort Litigation,* No. 01997 (Philadelphia County Ct. of C.P.); *In re Reglan® Litigation,* Case No. ATL-L-3865-10 (Super Ct. NJ); *Reglan®/Metoclopramide Cases,* CJC-10-004631 (Cal. Super Ct.).  Private settlement program consolidating PA, NJ, and CA class action settlements to resolve claims arising out of the use of a prescription medication. | Notice and Claims Administrator | 5,263 Claimants | $240 Million |



## PERSONAL INJURY SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 19. | *In re Guidant Implantable Defibrillators Products Liability Litigation Settlement,* MDL Docket No. 1708 (D. Minn.). Voluntary settlement program to resolve claims related to a medical device company's cardiac resynchronization therapy devices, implantable cardiac defibrillators and pacemakers. | Advised Defendant and Defense Counsel | 26,000 Class Members | $240 Million |
| 20. | *In re Nuvaring Products Liability Litigation,* MDL Docket No. 1964 (W.D. Mo.). Voluntary settlement program to resolve claims related to the use of a contraceptive device. | Claims Administrator | 3,800 Claimants | $100 Million |
| 21. | *In re: Abilify (Aripiprazole) Products Liability Litigation,* MDL No. 2734 Settlement Program. Private settlement program to resolve cases arising out of the use of a prescription medication. | Claims Processor | 3,955 Claimants | $60 Million |
| 22. | *In re Phenylpropanolamine (PPA) Products Liability Litigation,* MDL Docket No. 1407 (W.D. Wash.). Class action settlement trust established to resolve claims related to an over-the-counter weight loss product. | Claims Administrator | 500 Claimants | $60 Million |
| 23. | *In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL Docket No. 2100 (S.D. Ill.). Private voluntary settlement program to resolve claims alleging an arterial thromboembolism ("ATE"), either alone or in combination with some other injury, resulting from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by Barr Laboratories, Inc., or Teva Pharmaceuticals USA, Inc. | Claims Administrator | 1,275 Claimants | $57 Million |
| 24. | *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL Docket No. 2100 (S.D. Ill.). Private settlement program to resolve claims alleging gallbladder disease or a gallbladder injury from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by BarrTeva. | Claims Administrator | 9,000 Claimants | $24 Million |
| 25. | *In re OxyContin Litigation - All Cases,* No. 2002-CP-18-1756 (Cir. Ct. Dorchester County, S.C.). Class action settlement by a pharmaceutical company regarding a prescription pain killer. | Notice and Claims Administrator | 3,600 Class Members | $4.25 Million |
| 26. | *In re Seroquel Products Liability Litigation,* MDL Docket No. 1769 (M.D. Fla.). Multidistrict litigation proceedings involving the antipsychotic prescription drug Seroquel. | Special Master; Project Manager | Not Disclosed | $150,000 |



| PERSONAL INJURY SETTLEMENT PROGRAMS | | | |
|---|---|---|---|
| PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
| **27.** *In re Pittsburgh Corning Corporation*, No. 00-22876-TPA **(Bankr. W.D. Pa.).** Class action settlement to resolve personal injury claims relating to exposure to asbestos made by refinery and chemical plant workers with individual asbestos cases pending in the Eastern District of Texas. | Notice Administrator | 2,272 Class Members | Not Applicable |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 1. | *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL Docket No. 2179 (E.D. La). Class action settlement to resolve economic loss and property damage claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administration Services | 260,000 Claimants | Uncapped Fund; $11.6 Billion Disbursed |
| 2. | *Gulf Coast Claims Facility.* Voluntary claims program to resolve economic loss and physical injury claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administration Services; Transition Coordinator | 600,000 Claimants | $20 Billion cap; $6.5 Billion Disbursed |
| 3. | *Ortega Melendres, et. al., v. Paul Penzone, et. al.,* No. CV-07-2513-PHX-GMS (D. Az.). Voluntary program to resolve claims that individuals were stopped or held by the Maricopa County Sheriff's Office in violation of a court order. | Notice and Claims Administrator | 200 Class Members | Uncapped Fund |
| 4. | *Hanna v. Agape Senior, LLC,* No. 12-CP-40-5950 (S.C. St. Ct., Richland Cnty., S.C.). Class action settlement resolving claims of certain residents of senior and assisted living facilities related to alleged improper delivery of medical treatment. | Notice and Claims Administrator | 600 | Uncapped Fund; ~$480,000 Disbursed |
| 5. | *Confidential.* Conciliation agreement between a financial institution and the U.S. Department of Housing & Urban Development related to alleged discriminatory acts in mortgage loan application handling. | Notice and Claims Administrator | Class Size Unknown | Fund Uncapped |
| 6. | *In re Syngenta AG MIR 162 Corn Litigation,* MDL Docket No. 2591, (D. Kansas). Class action settlement to resolve claims concerning genetically modified corn and crop values. | Notice and Claims Administrator | Estimated more than 600,000 Class Members | $1.51 Billion |
| 7. | *Travel Insurance Refund Program in the matter of Jefferson Insurance Company NAIC #11630 and in the matter of BCS Insurance Company NAIC #38245.* Regulatory settlement program between certain travel insurance companies and State regulators to issue refunds to policy holders who purchased travel insurance through an Opt-Out Marketing Plan. | Program Administrator | 504,927 | To Be Determined |
| 8. | *In re Black Farmer's Discrimination Litigation,* No. 08-mc-0511 PLF (D.D.C.). Class action settlement to resolve claims of discrimination against African-American farmers by the U.S. Department of Agriculture regarding farm loans and loan servicing for claimants who had missed deadlines in a prior settlement. | Claims Review and Evaluation | 40,000 Claimants | $1.25 Billion |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 9. | *United States Securities and Exchange Commission v. American International Group, Inc.*, No. 06-Civ. 100-LAP (S.D.N.Y.).  Securities enforcement action settlement between the SEC and a multinational insurance corporation over allegations of accounting fraud and related shareholder litigation. | Audited the Claims Administrator | 260,000 Class Members | $843 Million |
| 10. | *In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo.).  Voluntary claims program to resolve claims concerning genetically modified rice and crop values. | Claims Administrator | 12,000 Claimants | $750 Million |
| 11. | *In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL Docket No. 2047 (E.D. La.).  Class action settlement for the remediation of homes containing defective drywall manufactured in China. | Claims Administrator; Lynn Greer, Special Master | 25,000 Claimants | Blend of Uncapped and Capped Funds; $610 Million Disbursed |
| 12. | *Confidential.*  Settlement program reached by the Department of Homeland Security, U.S. Customs and Border Protection (CBP) and the National Treasury Employees Union (NTEU) to resolve certain grievances filed by NTEU. | Settlement Administrator | 25,000 Class Members | $184.1 Million |
| 13. | *United States v. National Treasury Employees Union*, No. 93-1170 (D.C. App.).  Class action settlement between a federal employees' union and the U.S. Government for back payment of wages. | Trustee of Settlement Trust | 212,000 Class Members | $173 Million |
| 14. | *Blando v. Nextel West Corp.*, No. 02-0921-FJG (W.D. Mo.).  Class action settlement by a wireless telecommunications provider to resolve claims under Missouri law involving "cost recovery fees" charged to customers. | Advisor to the Court | 5,000,000 Class Members | $165 Million |
| 15. | *Wildfire Assistance Program.*  Voluntary program providing financial assistance to individuals experiencing urgent needs as a result of the 2017 and 2018 California Wildfires. | Claims Administrator | To Be Determined | $100 Million |
| 16. | *In re Capital One Telephone Consumer Protection Act Litigation*, MDL Docket No. 2416 (N.D. Ill.).  Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 17,500,000 Class Members | $75.4 Million |
| 17. | *In re Vioxx MDL Settlement Agreement Related to Consumer Class Actions*, MDL Docket No. 1657 (E.D. La.).  Class action settlement to resolve consumer protection claims arising from the marketing of prescription painkillers. | Claims Administrator | 8,000 Claimants | $23 Million |



250 ROCKETTS WAY, RICHMOND, VA 23231   |   (804) 521-7200
INFORMATION@BROWNGREER.COM   |   WWW.BROWNGREER.COM

© 2020 BROWNGREER PLC

## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 18. | *Yarger v. ING Bank, FSB*, No. 11-154-LPS (D. Del.). Class action settlement to resolve claims related to advertising fixed rate mortgages under Delaware consumer law. | Notice and Claims Administrator | 115,000 Class Members | $20 Million |
| 19. | *Acosta v. Tyson Foods, Inc.*, No. 8:08-cv-86 (D. Neb.). Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 3,700 Class Members | $19 Million |
| 20. | *Flores v. Zorbalas*, No. 27-CV-16-14225 (Minn. St. Ct., Hennepin Cnty., Minn.). Class certification notice program and subsequent class action settlement program resolving claims of tenants of certain apartments in Minneapolis, MN whose landlords allegedly rented out the properties without proper licenses and failed to maintain the properties as required by health and safety laws. | Notice and Claims Administrator | 5,500 Class Members | $18.5 Million |
| 21. | *United States of America v. Capital One, N.A.*, No. 1:12-cv-828 (E.D. Va.). Consent decrees between a financial services company and the Department of Justice and Office of Comptroller of the Currency to resolve alleged violations of the Servicemembers Civil Relief Act. | Notice and Claims Administrator | 44,000 Claimants | $15 Million |
| 22. | *Ene v. Maxim Healthcare Services, Inc.*, No. 4:09-cv-02453 (S.D. Tex.). Class action settlement by a healthcare provider to resolve claims under the Fair Labor Standards Act concerning the classification of healthcare recruiters as exempt from overtime pay. | Notice Administrator | 1,600 Class Members | $12.3 Million |
| 23. | *Gregorio v. Premier Nutrition Corporation*, Civil Action No: 17-cv-05987 (S.D.N.Y.). Class action settlement to resolve claims concerning the misleading advertising of protein shake products. | Notice and Claims Administrator | 9,360,000 Class Members | $9 Million |
| 24. | *Spinelli v. Capital One Bank (USA)*, No. 8:08-cv-132 (M.D. Fla.). Class action settlement by a financial services company with credit card holders to resolve claims under the Truth in Lending Act. | Notice and Claims Administrator | 9,000,000 Class Members | $5 Million |
| 25. | *Hankins v. Carmax Inc.*, No. 03-C-07-005893 CN (Baltimore County Md. Cir. Ct.). Class action settlement to resolve claims that a retail car company sold used vehicles without disclosing that the vehicles had been used previously as short-term rentals. | Notice and Claims Administrator | 7,300 Class Members | $8 Million |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 26. | *Cohen v. Warner Chilcott Public Ltd. Co.,* No. 1:06-cv-00401-CKK (D.D.C). Class action settlement to resolve antitrust claims against two pharmaceutical companies regarding the sale of an oral contraceptive. | Notice Administrator | 2,000,000 Class Members | $6 Million |
| 27. | *Peg Bouaphekeo, et. al., v. Tyson Foods, Inc.,* No. 5:07-cv-04009-JAJ (N.D. Iowa Western Division). Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Iowa law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 2,523 Class Members | $5.78 Million |
| 28. | *Morgan v. Richmond School of Health and Technology, Inc.,* No. 3:12-cv-00373-JAG (E.D. Va.). Class action settlement by a for-profit vocational college to resolve claims under the Equal Credit Opportunity Act, Title VI of the Civil Rights Act of 1964 and the Virginia Consumer Protection Act. | Notice and Claims Administrator | 4,200 Class Members | $5 Million |
| 29. | *Gomez v. Tyson Foods, Inc.,* No. 08-021 (D. Neb.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 5,300 Class Members | $5 Million |
| 30. | *Rogers v. City of Richmond, Virginia,* No. 3:11-cv-00620 (E.D. Va.). Class action settlement under the Fair Labor Standards Act and Virginia law involving current and former city police officers alleging unpaid overtime wages. | Claims Administrator | 600 Claimants | $4.6 Million |
| 31. | *Gales v. Capital One, N.A.,* No. 8:13-cv-01624 (D. Md). Class action settlement by a financial services company to resolve claims related to the sale of certain repossessed motor vehicles. | Claims Administrator | 9,000 Class Members | $4.4 million |
| 32. | *Betts v. National Cash Advance/Advance America,* Nos. 502001CA0003200CAI-MB and 502004CA008164XXXXI-MB (Palm Beach County Cir. Ct.). Class action settlement to resolve claims alleging violates of the Florida Lending Practices Act, the Florida Consumer Finance Act, the Florida Deceptive and Unfair Trade Practices Act, and the Civil Remedies for Criminal Practices Act. | Notice and Claims Administrator | 18,500 Class Members | $4.32 Million |
| 33. | *Llewellyn v. Big Lots Stores, Inc.,* No. 09-cv-5085 (E.D. La.). Class action settlement by a retailer to resolve claims under the Fair Labor Standards Act regarding the classification of assistant store managers. | Claims Administrator | 200 Class Members | $4 Million |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 34. | *Desio v. Emerson Electric Co. d/b/a InSinkErator,* No. 2:15-cv-00346 (E.D. Wa.).  Class action settlement to resolve claims that certain filters used in water filtration systems could crack and leak water, causing property damage. | Notice and Claims Administrator | Estimated 455,000 or fewer Class Members | $3.8 Million |
| 35. | *Herron v. CarMax Auto Superstores, Inc.,* No. 2006-CP-02-1230 (Aiken County S.C. Jud. Dist.).  Class action settlement to resolve claims related to document processing fees charged to customers by a car dealer. | Notice and Claims Administrator | 27,000 Class Members | $3.8 Million |
| 36. | *Collins v. Sanderson Farms, Inc.,* No. 2:06-cv-02946 (E.D. La.).  Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 21,000 Class Members | $3.1 Million |
| 37. | *Nader v. Capital One Bank (USA),* No. CV-12-01265-DSF (RZx) (C.D. Cal.).  Class action settlement by a financial institution to resolve claims under state privacy and wiretapping laws concerning the alleged recording of outbound customer service calls. | Settlement Administrator | 1,800,000 Class Members | $3 Million |
| 38. | *In re Children's Ibuprofen Oral Suspension Antitrust Litigation,* No. 1:04-mc-0535 (D.D.C.).  Class action settlement to resolve claims of antitrust violations by two manufacturers of over-the-counter children's pain relievers. | Notice Administrator | 10,000 Class Members | $3 Million |
| 39. | *Rubenstein v. The Neiman Marcus Group LLC,* No. 2:14-cv-07155-SJO-JPR (C.D. Ca.).  Proposed settlement program to resolve allegations that consumers were misled by the "Compared To" price tags on merchandise sold by the Defendant. | Notice and Claims Administrator | To Be Determined | $2.9 Million |
| 40. | *United States of America v. Chevy Chase Bank, F.S.B.,* No. 1:13-cv-1214 (E.D. Va.).  Consent decree between a financial services company and a federal regulatory agency involving allegations under the Equal Credit Opportunity and Fair Housing Acts. | Notice and Claims Administrator | 3,500 Class Members | $2.85 Million |
| 41. | *Samuel v. EquiCredit Corp.,* No. 00-cs-6196 (E.D. Pa.).  Class action settlement by a financial services institution to resolve claims under the Real Estate Settlement Procedures Act regarding the application of loan proceeds to pay mortgage broker fees. | Notice and Claims Administrator | 13,000 Class Members | $2.5 Million |



# ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 42. | *Beecroft v. Altisource Business Solutions PVT LTD.*, No. 0:15-cv-02184 (D. Minn).  Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 56,104 Class Members | $1.8 Million |
| 43. | *Hall v. Capital One Auto Finance, Inc.*, No. 1:08-cv-01181 (N.D. Ohio).  Class action settlement by a financial services company to resolve claims related to automobile repossession under Ohio consumer statutes. | Notice and Claims Administrator | 3,400 Class Members | $1.5 Million |
| 44. | *McCoy v. North State Aviation, LLC*, Case No. 1:17-cv-00346-CCE-LPA (M.D.N.C).  Class action settlement to resolve claims that Defendant violated the federal Worker Adjustment and Retraining Notification Act (the WARN Act), which requires certain employers to give 60-day advance notification of plant closings and mass layoffs. | Settlement Administrator | 339 | $1.5 Million |
| 45. | *Watts v. Capital One Auto Finance, Inc.*, No. CCB-07-03477 (D. Md.).  Class action settlement by a financial services company to resolve claims related to automobile repossession under Maryland consumer statutes. | Notice and Claims Administrator | 2,700 Class Members | $990,000 |
| 46. | *Churchill v. Farmland Foods, Inc.*, No. 4:06-cv-4023 (C.D. Ill.).  Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Illinois law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 2,300 Class Members | $980,000 |
| 47. | *Polanco v. Moyer Packing Company*, No. C.P., 1852 (Philadelphia County Pa.).  Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Pennsylvania law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,500 Class Members | $850,000 |
| 48. | *Cohen v. Foothill/Eastern Transportation Corridor Agency, et. al.*, No. SACV 15-01698 DDP (C.D. Ca.).  Class action settlement to resolve alleged violations of the Fair and Accurate Credit Transactions Act (FACTA) by a toll-road operator. | Notice and Claims Administrator | 25,762 Class Members | $850,000 |
| 49. | *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-0095 (W.D. Mich.).  Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Michigan law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $700,000 |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 50. | *Santiago v. GMAC Mortgage Group, Inc.*, No. 784574 (E.D. Pa.).  Class action settlement by a financial services company to resolve claims under the Real Estate Settlement Procedures Act concerning charges for mortgage settlement services. | Notice and Claims Administrator | 84,000 Class Members | $650,000 |
| 51. | *Contreras v. PM Beef Holdings, LLC*, No. 07-CV-3087 (D. Minn.).  Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Minnesota law for employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $500,000 |
| 52. | *Morales v. Greater Omaha Packing Co. Inc.*, No. 8:08-cv-0161 (D. Neb.).  Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Nebraska law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,000 Class Members | $490,000 |
| 53. | *Graham v. Capital One Bank* (USA), N.A., 8:13-cv-00743 (C.D. Cal.).  Class action settlement related to claims under the California Unfair Competition Law regarding alleged improper disclosures and charges assessed on credit card accounts. | Notice and Claims Administrator | 22,500 Class Members | $460,000 |
| 54. | *In re Moyer Packing Co., P. & S.* Docket No. D-07-0053 (U.S. Dep't Agric.).  Consent decision involving a beef processing company to compensate cattle producers for goods sold based on weights derived using an allegedly malfunctioning weight calculation system. | Notice and Claims Administrator | 1,100 Claimants | $325,000 |
| 55. | *Confidential.*  Voluntary payment program by a city government to compensate current and former city police officers for unpaid overtime wages. | Claims Administrator | 175 Class Members | $300,000 |
| 56. | *Dapice v. Capital One Bank* (USA), N.A. No. 14-cv-6961 GW (AGRx). Class action settlement by a financial institution to resolve claims related to interest rates charged on balance transfers for certain credit card accounts. | Settlement Administrator | 2,564 Class Members | $350,000 |
| 57. | *Confidential.*  Voluntary program by a financial institution to refund customers for payments subsequently discharged in bankruptcy. | Program Administrator | 457 payees | $233,000 |
| 58. | *Wilder v. Triad Financial Corp.*, No. 3:03-cv-863 (E.D. Va.). Class action settlement by a financial services company to resolve claims associated with automobile loan applications under the Fair Credit Reporting Act. | Notice and Claims Administrator | 80,000 Class Members | $200,000 |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 59. | *Conerly v. Marshall Durbin Food Corp.*, No. 2:06-cv-205 (N.D. Ala.).  Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 1,900 Class Members | $150,000 |
| 60. | *Ferguson v. Food Lion, LLC*, No. 12-c-861 (Berkeley County W. Va. Cir. Ct.).  Class action settlement by a retail company to resolve claims under the West Virginia Wage Payment and Collection Act regarding timing of paychecks issued to discharged employees. | Notice and Claims Administrator | 185 Class Members | $150,000 |
| 61. | *Confidential.*  Voluntary settlement by a food processing company to resolve claims regarding employee compensation for donning/doffing protective equipment. | Notice Administrator | 670 Class Members | $125,000 |
| 62. | *Confidential.*  Voluntary check remittance program by an investment fund to distribute proceeds from numerous settlements to beneficiaries of the fund. | Settlement Administrator | 1,049 | $117,000 |
| 63. | *Confidential HUD Compensation Program.*  Compensation fund established to pay damages to persons allegedly discriminated against by financial institution on basis of pregnancy or parental leave. | Notice and Claims Administrator | <100 Class Members | $50,000 |
| 64. | *Cook v. Columbia Freightliner, LLC*, No. 10-CP-02-1987 (Aiken County S.C. Jud. Dist.).  Class action settlement to resolve claims regarding a trucking company and the collection of administrative fees in the sale of motor vehicles. | Notice and Claims Administrator | 380 Class Members | $17,000 |
| 65. | *Confidential.* Voluntary payments by a financial institution to reimburse fees charged to the credit card accounts of small business owners. | Payment Administrator | 656 Class Members | $16,000 |
| 66. | *Clark v. Group Hospitalization and Medical Services, Inc.*, No. 3:10-CIV-00333-BEN-BLM (S.D. Cal.).  Class action settlement by a health insurance provider to resolve claims under the Employee Retirement Income Security Act and California's Unfair Competition Law. | Notice and Claims Administrator | 80 Class Members | $1,300 Disbursed |
| 67. | *Quinn v. BJC Health System*, No. 052-00821A (City of St. Louis Mo. Cir. Ct.).  Class action settlement by a healthcare system to resolve claims associated with hospital fees charged to uninsured patients. | Claims Administrator | 26,000 Class Members | Debt Reduction/ Forgiveness to Qualifying Class Members |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 68. | *In re Record Company Infringement Litigation,* No. 6:15-cv-00708 (M. D. Fla.).  Consolidated proceedings involving 65+ parties and alleged violations of copyrights and contracts. | Orran Brown, Special Master; Project Manager | Not Applicable | Not Applicable |
| 69. | *Gray, Ritter & Graham P.C., et al. v. Goldman Phipps PLLC, et al.,* No. 4:13-cv-00206-CDP (E.D. Mo.).  Three separate but related claims programs (Watts Group Settlement, Banks Group Settlement, and GP/Murray Group Settlement), established to resolve a class action lawsuit involving claimants who settled claims against Bayer arising out of the presence of Bayer's genetically-modified rice seed in the United States rice supply or lawyers who were paid common-benefit attorneys' fees or paid common-benefit expenses in that litigation. | Notice Administrator | 27,000 Class Members | Not Applicable |
| 70. | *In re Lehman Brothers Holdings Inc.,* No. 08-13555-JMP **(Bankr. S.D.N.Y.).**  Program to track, monitor and evaluate fees being charged by bankruptcy lawyers in the Lehman Brothers Chapter 11 bankruptcy proceeding. | Fee Committee Assistant | Not Applicable | Not Applicable |
| 71. | *Jerry Parker, et al. vs. Smithfield Packing Company, Inc.,* No. 7:07-cv-00176-H.  Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Clinton, North Carolina. | Notice Administrator | 2,656 Class Members | Not Applicable |
| 72. | *Lee Lewis, et al. vs. Smithfield Packing Company, Inc.,* No. 7:07-cv-00166-H.  Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Tarheel, North Carolina. | Notice Administrator | 12,136 Class Members | Not Applicable |
| 73. | *Lycan, et. al., v. City of Cleveland,* No. CV 09686044 (Court of Common Pleas, Cuyahoga County, OH).  Class action lawsuit to resolve claims that the City of Cleveland, Ohio, assessed traffic fines against non-vehicle owners (including lessees and renters) whose vehicles were photographed by automatic enforcement cameras operating in city limits, in violation of a city ordinance. | Notice and Claims Administrator | 31,937 | To Be Determined |
| 74. | *Mercier, et al v. The United States,* No. 12-920C.  Class action to resolve alleged claims of unpaid wages for nurses and physician assistants. | Notice and Claims Administrator | To Be Determined | To Be Determined |
| 75. | *In Re De Bernardi v. City and County of San Francisco.*  Served as Court-approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 26,000 | Not Applicable |



## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 76. | *In Re Wazwaz v. City and County of San Francisco.* Served as Court-approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 1,000 | Not Applicable |
| 77. | *In Re Donofrio v. IKEA,* No. 2:2018-cv-00599. Served as Court-appointed Third-Party Administrator, responsible for tracking and maintaining Opt-in Consent Forms for a collective action lawsuit involving alleged age-discrimination in the workplace. | Third Party Administrator | 500 | Not Applicable |
| 78. | *Runton et al. v. Brookdale Senior Living, Inc.,* No. 0:17-cv-60664-CMA (S.D. Fla.). Class action settlement resolving claims of certain residents of senior and assisted living facilities related to staffing determinations. | Notice and Claims Administrator | 29,760 | To Be Determined |



# Exhibit 3

**Letter to Underlying Attorneys**

Template Letter to Underlying Counsel Pursuant to Preliminary Approval Order ¶ 11(c)

Dear Counsel,

BrownGreer has been appointed by the United States District Court for the District of New Jersey to serve as the Class Action Notice Agent in the captioned above class action matter (the "*Williams Action*") There is a class action settlement pending in the *Williams Action* and the attached long form notice explains the case, the settlement and  relevant deadlines.

Based on underlying litigation records provided to Verus, LLC, the Court-appointed Claims Administrator, we believe that you, your firm or predecessors to your current law practice either currently represent or previously represented clients who may be members of the *Williams Action* class. Since the settlement may afford these clients the opportunity to receive monetary compensation and otherwise affect their rights  the Court  has ordered that we send you this letter and the long-form notice and request you  to notify your living clients who are class members or their heirs/personal representative if deceased about the settlement.

To assist you, we have enclosed a list prepared by the Claims Administrator of potential Class Members associated with you or whom we believe is a predecessor to your current law practice. To assist Class Members, we ask that you (1) provide us with any known  corrections to the list and provide the names and

addresses of other clients (or personal representatives or next of kin of clients who are deceased) that are not on the list who may be Class Members for purposes of further disseminating class notice, and (2) inform your clients who may be potential Class Members of the pendency of the Class and the proposed settlement and that they may obtain information concerning the proposed settlement from the Claims Administrator and how to do so, all of which is explained in the attached long form notice.

If you prefer to send copies of the long form notice under your own cover letter, we will provide you with enough copies of the notice on request. We will also reimburse you for the cost of U.S. mail postage incurred if you agree to provide us the names and addresses of the persons you sent copies of the notice and the date of mailing

If you have any questions, please feel free to contact the undersigned, or Verus at 800-XXX-YYY, or Class Counsel, Christopher M. Placitella, Harry M. Roth or Michael Coren, Cohen Placitella and Roth, P.C. at 888-375-7600.


Thank you for your anticipated cooperation in this effort.

# Exhibit 4

**Press Release**

## $72.5 Million Class Action Settlement Fund Announced Covering Past Emtal Industrial Talc Litigation For Up To 19,000 Potential Claimants

NEWS PROVIDED BY
Emtal Talc Settlement Notice Agent
__, 2020

RICHMOND, Va., __, 2020 /PRNewswire/ -- The Notice Agent of the settlement reached in *Williams v. BASF Catalysts LLC, et al.*, C.A. No. 2:11-cv-01754 (D.N.J.) releases this information about the settlement.

Defendants BASF Catalysts, LLC ("BASF") and Cahill Gordon & Reindel LLP ("Cahill") and Plaintiffs have announced a class action settlement to resolve claims relating to prior Emtal Talc litigation by creating a non-reversionary fund of $72.5 million to pay up to 19,000 potential claimants  and agreeing to pay fees and other expenses as described in the Settlement Agreement.

Emtal Talc was used in the manufacturing of industrial products. **This settlement does not involve any kind of personal cosmetic product such as baby, body, or talcum powder.** The settlement resolves a class action lawsuit in which Plaintiffs claim that from 1984 until 2009 Engelhard (BASF acquired Engelhard in 2006), its former national law firm Cahill, and employees of the two companies, made misstatements or concealed evidence about the existence of alleged asbestos in Emtal Talc and failed to disclose related information to plaintiffs, their lawyers, and courts in the Underlying Lawsuits. Plaintiffs claim that due to these misstatements and omissions, Plaintiffs in the Underlying Lawsuits either (1) voluntarily agreed to dismiss or settle their cases for less than they otherwise would have accepted or (2) had their cases involuntarily dismissed by court order upon motions filed by the Defendants. Defendants deny Plaintiffs' allegations and dispute that any statements about Emtal Talc affected the outcome of the Underlying Lawsuits because Defendants contend that (1) the claims in the Underlying Lawsuits were without merit, (2) the amount of asbestos in Emtal Talc, as reported in historical documents, could not have caused harm to human health and (3) many of the Underlying Lawsuits were resolved for fixed amounts irrespective of the alleged asbestos content of the talc or the number of talc defendants. Defendants further contend that many of the complaints merely named Engelhard without any specific allegations regarding product identification, exposure, or damages. Plaintiffs dispute these arguments.

BASF also claims that it was not aware of the facts alleged by the Plaintiffs in this case when it bought Engelhard in 2006 and that BASF did not learn of the circumstances giving rise to Plaintiffs' allegations in this case until 2009.

BASF and Cahill have nevertheless agreed to settle this lawsuit in the interest of avoiding further costs and the uncertainty of litigation.

If the United States District Court for the District of New Jersey approves the settlement, then BASF and Cahill will pay $72.5 million into a Settlement Fund to pay Class Members as follows: (a) $6.25 million to those who prove they are Class Members; (b) $59.75 million to those who sustained an asbestos-related injury; and (c) $6.5 million to those who experienced an

extraordinary physical injury and/or economic loss allegedly as a result of exposure to Emtal Talc, as well as an incentive award of $300,000  to six  plaintiffs who helped bring the case.  BASF and Cahill have also agreed to pay court-approved attorneys' fees up to $22.5 million, court-approved attorneys' expenses up to $1.2 million, and up to $3.5 million in notice and settlement administration costs.

Class Members may submit claims online at www.EmtalTalcSettlement.com.  The website also provides instructions for how to file a claim in hard copy through the mail.  All claim forms must be filed by _____, 2020.

The Court will hold a hearing on _____, 2020 to consider whether to approve the settlement. Class Members have until _____, 2020 to exclude themselves from, or object to, the settlement.

For more information, visit www.EmtalTalcSettlement.com or call 1-888-401-1920.