Exhibit Y

GAYLE WILLIAMS – 04/05/2018

1       IN THE UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF NEW JERSEY

3

4  KIMBERLEE WILLIAMS,    ) CASE NO. 2:11-CV-01754
   et al.,         ) (JLL)(JAD)
5             )
      Plaintiffs,  )
6             )
   versus        )
7          ) DEPOSITION OF
   BASF CATALYSTS, LLC,   )
8  et al.,        ) GAYLE WILLIAMS
            )
9     Defendants.   )

10       - - - - - - -

11

12    Deposition of GAYLE WILLIAMS, a Plaintiff herein,

13  called by the Defendants for Cross-Examination pursuant

14  to the Federal Rules of Civil Procedure, taken before

15  me, the undersigned, Anika W. Patrick, a Registered

16  Merit Reporter, Certified Realtime Reporter and Notary

17  Public in and for the State of Ohio, at the offices of

18  Thompson Hine, LLP, 3900 Key Center, 127 Public Square,

19  Cleveland, Ohio, on Thursday, April 5, 2018, at

20  9:00 a.m.

21

22

23

24

25

GAYLE WILLIAMS – 04/05/2018          Pages 2..5

**Page 2**

1  APPEARANCES:
2
3     On Behalf of the Plaintiffs:
4        Harry M. Roth, Esq.
          Cohen, Placitella & Roth
          Two Commerce Square
5        2001 Market Street, Suite 2900
          Philadelphia, Pennsylvania 19103
6        215.567.3500
          hroth@cprlaw.com
7        - - - and - - -
8        Jared M. Placitella, Esq.
          Cohen, Placitella & Roth
          127 Maple Avenue
9        Red Bank, New Jersey 07701
          732.747.9003
10       jmplacitella@cprlaw.com
11
      On Behalf of the Defendant BASF Catalysts, LLC:
12
         Eugene F. Assaf, Esq.
13       Peter A. Farrell, Esq.
          Brandon Stone, Esq.
14       Kirkland & Ellis, LLP
          655 Fifteenth Street, Northwest, Suite 1200
15       Washington, D.C. 20005
          202.879.5000
16       Eugene.assaf@kirkland.com
          Peter.farrell@kirkland.com
17       Brandon.stone@kirkland.com
18
      On Behalf of the Defendants Cahill Gordon &
19    Reindel, LLP, Howard G. (Peter) Sloane, and Ira J.
      Dembrow:
20
         Kyle A. Dolinsky, Esq.
21       Pepper Hamilton, LLP
          3000 Two Logan Square
22       Eighteenth and Arch Streets
          Philadelphia, Pennsylvania 19103-4750
23       215.981.4000
          dolinskyk@pepperlaw.com
24
25

**Page 3**

1  APPEARANCES (Continued):
2
3     On Behalf of the Defendant Thomas D. Halket: (Via
      Telephone):
4        Eric Tunis, Esq.
          Herold Law, PA
5        25 Independence Boulevard
          Warren, New Jersey 07059
6        908.647.1022
          Etunis@heroldlaw.com
7
8     On Behalf of the Defendant Arthur Dornbusch (Via
      Telephone):
9
         John A. Boyle, Esq.
10       Marino, Tortorella & Boyle, PC
          437 Southern Boulevard
11       Chatham Township, New Jersey 07928
          973.824.9300
12       Jboyle@khmarino.com
13
14          - - - - - - -
15
16
17
18
19
20
21
22
23
24
25

**Page 4**

1              I N D E X
2
3  EXAMINATION BY                        PAGE
4  Mr. Assaf                      5
5
6  PLAINTIFF'S EXHIBITS MARKED
7  None
8
9  DEFENDANT'S EXHIBITS FIRST REFERENCE          PAGE
10   1,  Second Amended Class Action Complaint      20
11  12,  Plaintiff's Responses to Motions for
        Summary Judgment Filed on Behalf of the
12       BFGoodrich Company                62
13 131, Plaintiff Nancy Pease's Supplemental
        Answers to BASF Catalysts LLC's First Set
14       of Interrogatories              25
15 133, Clark v. Owens Complaint         37
16 134, Order in Clark v. Owens Case        37
17 135, Memorandum in Support of Motion for
        Summary Judgment for Lack of Product
18       Identification on Behalf of Eastern
        Magnesia Talc Company           38
19 136, Notice of Dismissal, Clark v. Owens      46
20 137, Nancy Pease v. Owens Complaint       46
21 138, Pease v. Owens Motion for Summary Judgment
        and to Dismiss on Behalf of Eastern
22       Magnesia Talc Company          46
23 139, Summary Judgment withdrawn as Moot      64
24 141, Release                   53
25 142, Redacted Bevan Document          51

**Page 5**

1  WHEREUPON,
2            GAYLE WILLIAMS,
3      after being first duly sworn, as hereinafter
4      certified, testified as follows:
5            CROSS-EXAMINATION
6  BY MR. ASSAF:
7  Q.  Good morning, Ms. Williams.
8  A.  Good morning.
9  Q.  Have you ever been involved in a lawsuit before
10     this one?
11 A.  Yes.
12 Q.  Could you tell me about that?
13 A.  I had a swimming pool installed that I had paid
14     full price for that the gentleman never finished.
15     So we had taken him to court.
16 Q.  Okay.  Other than that, have you been involved in
17     any lawsuits?
18 A.  Not -- no, not that I remember.
19 Q.  Okay.  Have you ever testified before?
20 A.  No.
21 Q.  Okay.  So I'm going to ask you some questions.  If
22     you don't understand them, just tell me and I'll
23     try again.  And I want to make sure you understand
24     the question --
25 A.  Okay.

GAYLE WILLIAMS - 04/05/2018          Pages 6..9

Page 6

1  Q.  – before you answer it.  Okay?
2  A.  Yes.
3  Q.  The lawsuit that you're here for today, do you
4      have any understanding of the facts?  In other
5      words, were you involved in the underlying cases
6      with your parents?
7  A.  As far as, like, being in meetings?
8  Q.  Yeah.
9  A.  No.
10 Q.  Okay.
11 A.  I read -- since my sister -- my sister was the
12     point person, and since she can no longer do it,
13     since then I have read things, but --
14 Q.  When you say "since then," what time are you
15     talking about?
16 A.  I think it was a year ago Thanksgiving that my
17     brother-in-law, my other sister asked if I would
18     take over as the point person for the family.  So
19     it was sometime after that.
20 Q.  So late 2016, early 2017?
21 A.  Yes.
22 Q.  Okay.  So prior to late 2016 --
23 A.  Uh-huh.
24 Q.  – did you have any personal knowledge of the
25     events in the 1990s and 2000s regarding the

Page 7

1      litigation against Engelhard?  Or did you --
2  A.  Just from what I've heard from my sister and
3      brother-in-law, yes.
4  Q.  Okay.  Just from what you've heard from your
5      sister and brother-in-law?
6  A.  Right.
7  Q.  Okay.  You --
8  A.  I didn't see any documents or anything like that.
9  Q.  And you weren't -- withdrawn.
10     Do you know Mr. Bevan?
11 A.  I met Mr. Bevan for the first time yesterday.
12 Q.  Okay.
13 A.  But I had never met or spoke to Mr. Bevan before
14     that.
15 Q.  Okay.  So your knowledge of this lawsuit and the
16     facts in this lawsuit all come from reading things
17     over the last year.  Fair?
18     MR. ROTH:  Objection.  Form.  You can
19     answer.
20 A.  It comes from reading things.  I've had
21     conversations with my attorneys and talking to my
22     brother-in-law.
23 Q.  Okay.
24 A.  So that's where my facts have come from.
25 Q.  Okay.  And what about from conversations with

Page 8

1      Mr. Bevan?
2  A.  No.  I never had a conversation with Mr. Bevan.
3  Q.  Okay.  You met Mr. Bevan yesterday?
4  A.  Yes.
5  Q.  Could you tell me about that?
6  A.  I had a meeting there to meet Harry and Jared, and
7      Mr. Bevan came and introduced himself to me.  But
8      I had never met him before.
9  Q.  Had you met Mr. Roth and Mr. Placitella before
10     that?
11 A.  In person?
12 Q.  Yes.
13 A.  No.
14 Q.  Okay.  Had you met any of the Plaintiffs' lawyers
15     in person?
16 A.  No.
17 Q.  Okay.  Had you talked to them on the phone?
18 A.  Yes.
19 Q.  Okay.  And when is the first time you talked to a
20     Plaintiffs' lawyer in this case, Mr. Roth or
21     Mr. Placitella or a gentleman named Mr. Coren?
22     When is the first time you talked to them?
23 A.  Well, it would have been after that Thanksgiving.
24     I think it was after the first of the year, so
25     early 2017?

Page 9

1  Q.  Okay.
2      MR. ROTH:  When you end with a question
3      mark, we all understand that you're giving an
4      approximation.
5      THE WITNESS:  Okay.
6      MR. ROTH:  But for the court reporter
7      you've just got to say --
8  A.  Sometime earlier in 2017.
9      MR. ROTH:  It's a difference between a
10     transcript, a deposition and a real
11     conversation.
12     THE WITNESS:  Uh-huh.
13 Q.  And what --
14     THE WITNESS:  Bless you.
15     MR. ROTH:  That doesn't happen much,
16     either.
17 Q.  And best you can, can you tell me what your
18     brother or sister-in-law said to you regarding you
19     getting involved in the case?
20     MR. ROTH:  Objection to the form.
21 A.  Okay.  It's my sister and brother-in-law.
22 Q.  Sorry.
23 A.  That's okay.  I know Gary and my sister Nancy,
24     Nancy was the point person and she passed away,
25     but in November when they asked me, he had gone to

GAYLE WILLIAMS - 04/05/2018          Pages 10..13

Page 10

1   my sister Karen, who is next oldest from Nancy –
2  Q.  Right.
3  A.  – and asked her if she wanted to take over and
4       said no, and she said that I would be a better
5       candidate.  And I'm the next oldest, so I think we
6       just went down.  So that's – so Gary came to me,
7       my brother-in-law, and said, "I talked to Karen,
8       Karen thinks we should ask you.  Are you willing
9       to take over?"  And I said yes.
10 Q.  And what is your understanding of what your role
11      is in this case?
12 A.  As far as the whole overlying case?
13 Q.  Yes.
14 A.  Or just from my family's role?
15 Q.  Let's do – let's break that apart.
16 A.  Okay.
17 Q.  So what do you think your role is as a class
18      representative?
19 A.  Well, to answer any questions you ask me to the
20      best of my ability and honestly, and represent the
21      class for the betterment of the class and not take
22      my personal interests into it.  Do what's best for
23      everyone, not just myself.
24 Q.  And what's your understanding of what input, if
25      any, you have on how the litigation's conducted?

Page 11

1       Strategic decisions about trial and whether to
2       settle, things like that?
3  A.  Can you ask me that again?  I'm sorry.
4  Q.  Sure.  What role do you think you have in terms
5       of, for example, a decision to settle the class
6       action?
7  A.  I think my role is to listen to all the input and
8       relying on my lawyers, because I'm no specialist
9       or anything, and just rely on their expert
10      knowledge of, you know, how to proceed or, you
11      know, whether the settlement is fair, not fair or
12      reasonable or not reasonable.  I mean, I would not
13      have any idea what would be a
14      reasonable – because I've never been in anything
15      like this or – so I guess that's my role, is to
16      pay attention, listen, answer the best as I can
17      and rely on my counsel to help me make those
18      decisions and then go from there.
19 Q.  Okay.  Do you know if a mediation had been
20      conducted in this case?
21      MR. ROTH: Objection.  Privilege.  You
22      can answer under – excuse me, under 502(d).
23      Is that an agreement?
24      MR. ASSAF:  Sure.
25 A.  No, I don't know if there was a mediation.

Page 12

1  Q.  Do you know whether there were settlement
2       discussions in this case?
3  A.  In –
4       MR. ROTH: Objection.
5  Q.  The class action.
6  A.  Oh.  Was there a settlement offered?
7  Q.  Was there settlement discussions?
8  A.  I don't know.
9  Q.  Okay.  As a class representative, do you view your
10      role as being entitled to know whether there are
11      settlement discussions taking place?  Or is that a
12      lawyer thing?
13 A.  I would – well, I would think if there's
14      settlement discussions – I'm not sure because of
15      the class action.  I'm thinking if I was just me
16      in a suit, then definitely I would need to know if
17      there was a settlement.  But I think if I'm
18      representing the class, one of the representatives
19      representing the class as a whole and there's a
20      settlement discussion, I guess yes.
21 Q.  And so if, taking your last example, in your case,
22      your personal case –
23 A.  If it was just me, uh-huh.
24 Q.  Yeah, if it was just you and there was a defendant
25      who had, for example, put money on the table, said

Page 13

1       we will pay you –
2  A.  Right.
3  Q.  – $10,000, do you think as a client you should
4       hear about that offer?
5       MR. ROTH: Objection.  Form, foundation.
6       You may answer.
7  A.  Yes.
8  Q.  And similarly in a class action –
9  A.  Uh-huh.
10 Q.  – if somebody put money on the table, say
11      $100,000 –
12 A.  Uh-huh.
13 Q.  – do you think as a class representative you
14      should hear that that was, in fact, put on the
15      table?
16      MR. ROTH: Objection.  Form, foundation.
17 A.  I think I would say yes.
18 Q.  I think you would be right.
19 A.  Okay.
20 Q.  So –
21      MR. ROTH: Move to strike.
22 Q.  So – and as a class representative, what have you
23      done to prepare yourself for this lawsuit and for
24      acting as a class representative?
25 A.  Over the course of the last – since we started in

GAYLE WILLIAMS - 04/05/2018        Pages 14..17

Page 14

1    early – I have read any documentation that I've
2    been sent regarding the case.
3  Q.  And do you have that documentation?
4  A.  With me?
5  Q.  Yes.
6  A.  No.
7  Q.  Okay.  Do you have it at home?
8  A.  Well, I have some in an e-mail on my phone.
9  Q.  Okay.
10  A.  But as far as a printed out, I do have it at home,
11    yes.
12  Q.  Okay.  By the way, and I apologize again, it's
13    your --
14  A.  Brother-in-law.
15  Q.  Brother-in-law and sister?
16  A.  My brother-in-law.
17  Q.  Your brother-in-law?
18  A.  Yes.  My brother-in-law Gary was married to my
19    sister Nancy who passed away.
20  Q.  Got it.
21  A.  Then I have a sister Karen.  When I refer to
22    my – so I've referred to my sister twice and
23    there's two sisters.  If I'm confusing you, I
24    apologize.
25  Q.  And the one sister was Ms. Nancy Pease; is that

Page 15

1    right?
2  A.  Yes.  Yes.
3  Q.  And the other sister's name, did you say Kathy?
4  A.  Karen.
5  Q.  Karen, okay.  Did Nancy – withdrawn.
6        You mentioned that you have things by
7    e-mail.  Is that how you've communicated with your
8    lawyers?
9  A.  Most – yes.
10  Q.  Mostly?
11  A.  Yes.
12  Q.  Okay.  And you keep those e-mails?
13  A.  Yes.
14  Q.  Have you communicated with Mr. Bevan by e-mail?
15  A.  No.
16  Q.  Okay.  Do you know whether your sister Nancy,
17    Ms. Nancy Pease --
18  A.  Uh-huh.
19  Q.  – had e-mail?
20  A.  From anybody?
21  Q.  Yeah.  Well, yeah, just an e-mail account.
22  A.  No, she did not.
23  Q.  Okay.  Do you know how she communicated with the
24    lawyers?
25  A.  No.

Page 16

1  Q.  Do you know how she communicated with Mr. Bevan,
2    if at all?
3  A.  Well, I know she had met with Mr. Bevan.  I would
4    just be guessing to say by phone, but –
5  Q.  Okay.  Do you know whether she had any documents
6    related to either the class action lawsuit or your
7    father's lawsuit, you know, that was handled by
8    Mr. Bevan?
9  A.  I mean, I didn't see her have any documents.
10  Q.  Okay.  And do you know a woman named Ms. Erin
11    Clark who works with Mr. Bevan?
12  A.  Yes.  I met her yesterday also.
13  Q.  Okay.  In the same meeting with Mr. Bevan?
14      MR. ROTH:  Objection to form.
15  A.  Well, it wasn't really a meeting with Mr. Bevan.
16    When I got there, she's the one who came out to
17    the lobby to introduce herself to me, and so I
18    just talked briefly with her.
19  Q.  Okay.  What did she say to you?
20  A.  Well, she had paperwork for me that she wanted to
21    know if I wanted a copy of that made me executor
22    or executrix of my parents, all the other stuff
23    that goes on with my parents.
24  Q.  The other lawsuits and litigation?
25  A.  Whatever, yes.

Page 17

1  Q.  Okay.  So do you have an attorney-client
2    relationship with Mr. Bevan and his firm for other
3    litigation matters?
4  A.  Yes.
5      MR. ROTH:  Objection to form and
6      foundation.
7  A.  I would say yes.
8  Q.  Okay.  Do you have any understanding with
9    Mr. Bevan regarding whether he will be compensated
10    for this lawsuit, the class action?
11  A.  I have no idea.
12  Q.  Have you ever discussed it with him?
13  A.  No.
14  Q.  Do you know what --
15  A.  I've never had a discussion with Mr. Bevan about
16    any of these cases.
17  Q.  Okay.  Do you have a signed retainer agreement
18    with Mr. Bevan's law firm?
19  A.  I do not.
20  Q.  Okay.  Does the estate?
21  A.  I would think so.
22  Q.  Okay.
23  A.  I don't –
24  Q.  All right.
25  A.  I don't know.

GAYLE WILLIAMS - 04/05/2018          Pages 18..21

Page 18

1  Q.  With respect to Mr. Bevan or Ms. Clark, did they
2      tell you anything about the class action and –
3  A.  No.
4  Q.  No? Okay. Did you have any discussions with your
5      sister, Ms. Nancy Pease, regarding the class
6      action that you're now a class representative for?
7  A.  Not with Nancy.
8  Q.  Okay. With whom?
9  A.  Gary.
10 Q.  With Gary?
11 A.  Right.
12 Q.  Your brother-in-law?
13 A.  Yes.
14 Q.  Okay. These are discussions regarding we need
15     somebody to take Nancy's place?
16 A.  Yes.
17 Q.  And were there any discussions of the underlying
18     facts of the lawsuit?
19 A.  Early on, and I couldn't tell you when, he did
20     tell me, my sister, my brother about the case,
21     that there was a class action that he and Nancy
22     were our spokespersons for, and he kind of gave us
23     a little background of what was going on. But
24     that was several years ago.
25 Q.  And did he tell you how he learned about the case?

Page 19

1  A.  No. If he did, I don't remember.
2  Q.  Okay. Did he tell you anything about compensation
3      in the case?
4  A.  No.
5  Q.  Did he tell you anything about the original
6      lawsuit that your father had against Engelhard?
7  A.  The only thing that I knew was when he told us
8      that there was a company that we either settled
9      with or dismissed because they said there was no
10     asbestos in their talc and came to – it came to
11     find out that there was and now there was a new
12     suit. That's the gist of what he told us.
13 Q.  Did he tell you how he learned that?
14 A.  No.
15 Q.  Do you – was he involved in the underlying
16     lawsuit against Engelhard regarding talc?
17 A.  You mean the very original one?
18 Q.  Yeah.
19 A.  He and my sister have always been the point person
20     from the very beginning when my dad first got
21     sick, or when these things first started. So
22     I – I don't know what he knew, when he knew it or
23     how he knew it.
24 A.  All right. Okay. So you don't know whether he
25     heard that from Mr. Bevan or he heard that from

Page 20

1      Mr. Roth or –
2  A.  I have no idea who contacted him about it.
3  Q.  Or he learned it from somebody else?
4  A.  Right.
5  Q.  And does your brother-in-law Gary, as far as you
6      know, keep documents related to all of these
7      litigation matters that he's been involved in?
8  A.  I – I don't know what he's kept or not kept.
9  Q.  Okay. As the point person, did – when he was the
10     point person –
11 A.  Uh-huh.
12 Q.  – did you expect him to keep his documents
13     related to the settlements and the lawsuits?
14         MR. ROTH:  Objection. Form, foundation.
15 A.  I honestly had no expectations of him doing
16     anything.
17 Q.  Okay.
18         MR. ROTH:  There are people on the phone.
19         THE WITNESS:  Uh-huh.
20         MR. ROTH:  Okay.
21 Q.  Let me show you, this is the second amended
22     complaint in this case.
23 A.  Uh-huh.
24 Q.  Have you seen this before?
25 A.  I have seen this, yes.

Page 21

1  Q.  Have you reviewed it?
2  A.  I have reviewed some of it.
3  Q.  Not all of it?
4  A.  No.
5  Q.  Okay. When did you review it?
6  A.  I reviewed it, let's see, earlier this week.
7  Q.  Okay. Is that the first time you reviewed it?
8  A.  Yes. I've gotten a lot of things that I've looked
9      at and sometimes they – but this, yes.
10 Q.  Okay. First time you reviewed the complaint in
11     this case was last week?
12 A.  Earlier this week.
13 Q.  Earlier this week, sorry.
14 A.  Uh-huh.
15 Q.  First time you reviewed the complaint in this case
16     was earlier this week, the week of –
17 A.  April 1st.
18 Q.  April 1st?
19 A.  Yes.
20 Q.  2018?
21 A.  Yes.
22 Q.  Could you turn your attention to page 21,
23     Ms. Williams?
24 A.  Uh-huh.
25 Q.  Paragraphs 20, 21, and 22 talk about Ms. Nancy

GAYLE WILLIAMS - 04/05/2018          Pages 22..25

Page 22

1    Pease. Do you see that –
2  A.  Yes.
3  Q.  – in paragraph 20?
4  A.  Uh-huh.
5  Q.  Have you read these paragraphs before?
6  A.  No.
7  Q.  No?
8  A.  (Witness shaking head from side to side.)
9  Q.  Okay. So as we sit here, you and I today – this
10   might short-circuit a lot of things – do you have
11   any personal knowledge of anything that's said in
12   the complaint? Do you know something from being
13   around the witnesses or the meetings or the
14   litigation? Do you have any knowledge or do you
15   just know what you've learned over the last week?
16  A.  Well, I know my dad worked at the rubber company.
17   I know he had mesothelioma.
18  Q.  Right.
19  A.  I know he passed away from it at a pretty young
20   age for a man. Yes, I know some things about the
21   case.
22  Q.  Okay. Do you know about the Engelhard case?
23  A.  Through conversations with my brother-in-law and
24   my counsel.
25  Q.  Okay. And these conversations with your

Page 23

1    brother-in-law, these are recent conversations?
2       MR. ROTH: Objection to form and
3    foundation.
4  A.  In the last year or two, yes.
5  Q.  Okay. These were the conversations where he said
6    there was a prior lawsuit on talc and we had
7    settled or dismissed it?
8  A.  That was the first conversation, yes. And then it
9    was probably another year or two after that that
10   it came back up.
11  Q.  Okay. Prior to that conversation with your
12   brother-in-law –
13  A.  Uh-huh.
14  Q.  – which was a year ago or so –
15  A.  Uh-huh.
16  Q.  – did you have any knowledge from any source,
17   your sister or your brother-in-law, regarding your
18   father's lawsuit against Engelhard?
19  A.  Not Engelhard specifically.
20  Q.  Okay. Against the talc companies?
21  A.  I knew we had lawsuits against several talc
22   companies.
23  Q.  Okay. And other than knowing there were lawsuits
24   against talc companies, did you know anything else
25   about them?

Page 24

1  A.  I was not involved in any conversations.
2  Q.  Okay. Do you have any understanding – withdrawn.
3       Prior to a year ago when having a
4    discussion with your brother-in-law –
5  A.  Uh-huh.
6  Q.  – did you have any understanding of how the talc
7    lawsuits were resolved? Whether they were
8    settled? Whether they were dismissed? Whether
9    you received any money?
10  A.  We did receive settlements from different suits.
11  Q.  And how do you know about that?
12  A.  Because I received a settlement.
13  Q.  Okay. From whom?
14  A.  The correspondence came from Bevan's office. Are
15   you asking me from what talc companies from whom
16   the settlements were from?
17  Q.  Yes.
18  A.  I couldn't give you – I couldn't tell you that
19   right now.
20  Q.  And do you – did you have any discussions with
21   Mr. Bevan or anybody else regarding why the cases
22   were being settled?
23  A.  No.
24  Q.  Did you have any discussions with your
25   brother-in-law or anybody in your family at the

Page 25

1    time regarding why the cases were being settled?
2  A.  No.
3  Q.  After receiving the money –
4  A.  Uh-huh.
5  Q.  – from the talc settlement, have you had any
6    discussions with Mr. Bevan regarding why the cases
7    were settled?
8  A.  No.
9  Q.  After receiving the money from the talc
10   settlements, have you had any discussions with
11   your brother-in-law regarding why the lawsuits
12   were settled?
13       MR. ROTH: Objection. Form and
14    foundation.
15  A.  No.
16  Q.  As we sit here today, do you have any
17   understanding of why the talc cases were settled?
18       MR. ROTH: Objection. Form, foundation.
19  A.  No. I mean, I have no – I wasn't involved in any
20   conversations on any of the settlements.
21  Q.  So I'm going to show you now what's been marked as
22   Defendant's Exhibit 131.
23  A.  I got it. Thank you.
24  Q.  It's entitled "Plaintiff Nancy Pease's
25   Supplemental Answers to BASF Catalysts' First Set

GAYLE WILLIAMS - 04/05/2018          Pages 26..29

Page 26

1  of Interrogatories." And I'd like to ask you to
2  take a moment and look through these and see if
3  they're familiar to you. Okay, Ms. Williams?
4  A. Uh-huh. Okay.
5  Q. Have you seen these interrogatory responses
6  before?
7  A. Yes.
8  Q. When did you see them?
9  A. Oh, I honestly couldn't tell you when I saw them.
10  I've seen different interrogatories at different
11  times, so I think the first time I got any was,
12  like, after October of last year. So most
13  recently in the last -- earlier this week I was
14  given copies, e-mailed copies.
15  Q. Okay.
16  A. But I didn't look at them then. But I have seen
17  these interrogatories earlier. Sorry.
18      MR. ROTH: It's Jerry who will be mad.
19      THE WITNESS: I'm sorry, Jerry.
20  Q. Regarding the last page, the verification.
21  A. Uh-huh.
22  Q. Where were you when you signed that?
23  A. I was at my home.
24  Q. Okay. Were there any attorneys with you?
25  A. No.

Page 27

1  Q. Okay. Did you discuss any of these with
2  Mr. Bevan, any of these interrogatory responses?
3  A. No.
4  Q. Okay. Do you -- let's go through them. Regarding
5  interrogatory 4, which is on -- the pages aren't
6  numbered, but I'd like to turn your attention to
7  interrogatory number 4.
8  A. Okay. Okay.
9  Q. Okay. It says, identify all resolutions of claims
10  or dispositions with any Defendant named in the
11  underlying action, parties to settlement, amount
12  of settlement, dates of the settlement and why the
13  claim was settled.
14  A. Uh-huh.
15  Q. And there's a listing of settlements. Do you see
16  that?
17  A. Uh-huh. Yes. I'm sorry.
18  Q. Does that strike you as the right list of the
19  settlements of your father's litigations over the
20  years?
21  A. I mean, I don't know all these by heart, but yes,
22  it looks good.
23  Q. Okay.
24      MR. ROTH: And then there's --
25  Q. And in the middle of the page there's a reference

Page 28

1  to talc defendants.
2  A. Uh-huh.
3  Q. A consortium of defendants including Georgia Talc,
4  Harwick Chemical, Eastern Magnesia Talc, also
5  referred to as EMTAL, International Talc, R.T.
6  Vanderbilt, Johnson & Johnson, Cyprus Industrial
7  Mineral, Southern Talc, Akrochem, and Milwhite.
8  Do you see that?
9  A. Uh-huh. Yes.
10  Q. It says 9/9/1997.
11  A. Yes.
12  Q. Does that refresh your recollection as to whether
13  there was a settlement with talc companies and the
14  dates of those -- of that settlement?
15      MR. ROTH: Objection. Sorry. Objection.
16      Form, foundation.
17  A. Yes.
18  Q. But regarding that settlement now, those talc
19  settlements --
20  A. Uh-huh.
21  Q. -- do you have any memory regarding any of the
22  circumstances regarding those talc settlements?
23  A. No.
24      MR. ASSAF: Let's go off the record a
25      second.

Page 29

1      (Discussion off the record.)
2      MR. ASSAF: Go back on the record.
3  BY MR. ASSAF:
4  Q. Ms. Williams, did you discuss with your
5  brother-in-law or anybody else in your family
6  whether there was a mediation or whether there
7  were settlement discussions in this case?
8  A. No.
9  Q. Your brother-in-law or your sister, Ms. Pease,
10  never mentioned to you anything about a mediation?
11  A. I don't remember anything about that.
12  Q. Do you know that -- have you ever
13  heard -- withdrawn.
14      Have you ever heard the term "aggregate
15      settlements"?
16  A. I don't recall.
17  Q. Okay.
18  A. It sounds familiar, but --
19  Q. All right. Could you open the complaint back up
20  to paragraph 227?
21  A. Okay.
22  Q. Okay. Have you read this portion of the complaint
23  before regarding aggregate settlements?
24  A. No.
25  Q. Okay. During the 1990s, did you have any

GAYLE WILLIAMS - 04/05/2018          Pages 30..33

Page 30

1    discussions with anybody in your family or
2    Mr. Bevan or anyone regarding aggregate
3    settlements?
4    A.  I don't recall any discussion about aggregate
5    settlements.
6    Q.  Okay.  And from the 1990s until today, have you
7    ever discussed with anybody aggregate settlements?
8        MR. ROTH:  Objection to form, foundation,
9        privilege.
10   A.  If I did, the term aggregate settlements was
11   not -- I'm going to say no.
12   Q.  If I wanted to talk to somebody who knew about
13   aggregate settlements, would it be better for me
14   to talk to your brother-in-law or Mr. Bevan or
15   somebody else?  Or you don't know?
16       MR. ROTH:  Object to the form and
17       foundation.
18   A.  Gary was the one -- Gary and Nancy were always in
19   the meetings.  If anybody knows anything, Gary and
20   Nancy would have -- would have known.  Does he
21   know about it?  I don't know.
22   Q.  Okay.
23   A.  I'm sorry.  That was a long way to go for "I don't
24   know," but --
25   Q.  It's okay.  When you said Gary was always in the

Page 31

1    meetings, you mean the meetings with Mr. Bevan and
2    your father or your sister-in-law?
3    A.  My sister.
4    Q.  Okay.
5    A.  I just know that Nancy was the executor.  Gary did
6    all the communicating.  I'm -- I know that anytime
7    Nancy had a meeting, Gary was with her.  I don't
8    know who talked in these meetings or who knew
9    what, actually.  But Gary was always our -- he
10   always disseminated all the information to us, was
11   Gary.
12   Q.  So could you turn back into the interrogatories?
13   I'm sorry.
14   A.  I could.  Where do you want me?
15   Q.  The first one, interrogatory 1.
16   A.  Okay.
17   Q.  It says "Identify all persons with knowledge
18   relating to your claims against BASF."
19   A.  Uh-huh.
20   Q.  Do you see that?
21   A.  Uh-huh.
22   Q.  Do you think that -- and I'm sorry.  What's Gary's
23   last name?  Is it Pease?
24   A.  Pease, uh-huh.
25   Q.  Should Gary Pease be listed as somebody with

Page 32

1    knowledge about the underlying claims against
2    BASF?
3        MR. ROTH:  Objection.  Form, foundation.
4    A.  I would -- he is aware, so I would say yes.
5        MR. ROTH:  Just to be clear --
6        THE WITNESS:  Okay.
7        MR. ROTH:  -- the interrogatory is asking
8    about the underlying claims versus the
9    Williams' claims.  The class action.
10       THE WITNESS:  Oh.
11       MR. ASSAF:  I think she said that Gary
12   was involved in all sorts of meetings with
13   Mr. Bevan regarding any --
14       MR. ROTH:  I don't know that -- I'm not
15   going to --
16   Q.  Well, let's take it this way.  Hold on.
17   A.  And I'm assuming he was.
18   Q.  Correct.  Let's take it this way:  You don't have
19   any knowledge of Gary Pease -- withdrawn.
20       You don't have any knowledge of Mr. Bevan
21   being involved with any meetings with anybody in
22   your family regarding this class action, correct?
23   A.  Correct.
24       MR. ROTH:  Objection to form and
25       foundation.

Page 33

1    A.  Ask me that again.
2    Q.  Sure.  Mr. Bevan is your family's attorney for
3    asbestos cases?
4    A.  Yes.
5    Q.  Mr. Bevan is not your family's attorney for this
6    Williams class action, correct?
7        MR. ROTH:  Objection.  Form, foundation.
8    A.  As I understand it, yes.
9    Q.  And when you talk about Gary Pease being involved
10   in meetings --
11   A.  Uh-huh.
12   Q.  -- those meetings are with Mr. Bevan to discuss
13   the family's asbestos litigation, correct?
14       MR. ROTH:  Objection.  Form, foundation.
15   A.  Yes.
16   Q.  The family's asbestos litigation includes
17   litigation against talc companies, correct?
18   A.  Yes.
19   Q.  And Mr. Bevan represented your family in the
20   asbestos litigation against talc companies,
21   correct?
22   A.  Yes.
23   Q.  And if anybody from your family were to have
24   involvement with Mr. Bevan and the resolution of
25   the talc asbestos suits, based upon what you know,

Page 34

1  it would probably be your brother-in-law Gary
2  Pease? Fair?
3       MR. ROTH: Objection. Objection. Form,
4       foundation.
5  A.  Well, let me clarify this.
6  Q.  Okay.
7  A.  Gary is the one who disseminated information to
8       us, the rest of us kids. For all I know, though,
9       Nancy could have been meeting with Bevan and then
10      told Gary and Gary told us. I don't know for a
11      fact that my brother-in-law sat in with meetings
12      with Mr. Bevan.
13  Q.  But I thought just earlier you said Gary was the
14      point person and would have attended --
15  A.  Gary --
16  Q.  -- attended all of the meetings?
17       MR. ROTH: Objection. Form, foundation.
18       Now you can answer.
19  A.  Okay. Gary and Nancy went to all the meetings.
20      Whether Gary sat in the room or was in the actual
21      meeting, I don't know. I assumed he was, but --
22  Q.  Well, you know your family.
23  A.  I could be wrong. Right.
24  Q.  I've never met Gary.
25  A.  Right.

Page 35

1  Q.  So you just have to know -- drawing upon all of
2       your knowledge of Gary, I think you described him
3       as the point person, right?
4  A.  Well, him and Nancy were -- are -- yes.
5  Q.  And based upon your family dynamic that you know
6       of --
7  A.  Uh-huh.
8  Q.  -- it -- would Gary drive your sister to
9       Mr. Bevan's office and then wait outside for her
10      to go to the meeting with Mr. Bevan --
11       MR. ROTH: Objection.
12  Q.  -- and then hear about it?
13       MR. ROTH: Objection. Form.
14  Q.  Or would he likely attend the meeting?
15       MR. ROTH: Objection. Form, foundation.
16  A.  I don't know. I mean, I don't know if he
17      was invited into the meeting or not. I mean, he
18      could have very well just taken her and she had
19      the meeting. I don't know how -- I don't know.
20  Q.  Would you be able to find out?
21  A.  Could I call Gary and ask him if he was in the
22      meetings?
23  Q.  Yeah.
24  A.  Yeah, that's --
25  Q.  Okay. Could you do that at the break?

Page 36

1       MR. ROTH: No, I don't think so.
2       MR. ASSAF: Why not?
3       MR. ROTH: Because I'm saying no.
4       MR. ASSAF: Well, I think it should have
5       been in the interrogatories to begin with.
6       MR. ROTH: Maybe, maybe not. Or maybe
7       she's wrong.
8       MR. ASSAF: Okay. Interesting.
9       MR. ROTH: Yeah.
10  Q.  When you said that Gary Pease would disseminate
11      the information to the other --
12  A.  Uh-huh.
13  Q.  -- children, would he disseminate it by mail? By
14      e-mail? By dropping materials off? How did it
15      happen?
16  A.  A lot of times we have a -- we have a family
17      meeting twice a year and he would always kind of
18      keep us posted on -- update what's going on.
19      Phone calls.
20  Q.  Family meeting, did the family meeting also
21      discuss asbestos litigation?
22  A.  Only if there was -- he knew that we were -- a
23      settlement might be coming or something, he might
24      have said.
25  Q.  Did you talk to Gary Pease this week in

Page 37

1       preparation for your deposition?
2  A.  I talked to Gary this week. Not in preparation
3       for this.
4  Q.  Did you talk about the lawsuit?
5  A.  I talked to -- I told him I was coming here.
6  Q.  And what did he say?
7  A.  He said, "Good luck with that."
8  Q.  Is that it?
9  A.  Pretty much. We were at a funeral, so --
10  Q.  Did you talk to him -- withdrawn.
11       Did you talk to Mr. Bevan about today's
12       deposition?
13  A.  No.
14  Q.  133, 134, 135. Let me show you what's been marked
15      as Defendant's Exhibit 133. Defendant's Exhibit
16      133 is the original complaint from 19 -- April
17      4th, 1994 against a number of defendants,
18      including Eastern Magnesia Talc, subsidiary of
19      Engelhard. Have you seen the complaint, including
20      in preparation for today's deposition?
21  A.  This?
22  Q.  Yeah.
23  A.  No.
24  Q.  No? Okay. Let me show you Exhibit 134.
25      Exhibit 134 -- sorry.

GAYLE WILLIAMS - 04/05/2018          Pages 38..41

Page 38

1  A.  That's all right.
2  Q.  Is a four-page document bearing Bates numbers BASF
3     Williams 46197 through 46200.  And it's an order
4     by Judge Victor dismissing the William Clark case
5     because of a failure to provide a witness list.
6     Have you seen this document before?
7  A.  No.
8  Q.  Do you have any understanding that Mr. Bevan
9     caused your father's case to be dismissed because
10    he failed to provide the requirements to the
11    court?
12       MR. ROTH:  Objection.  Form, foundation.
13 A.  No.
14 Q.  Did you ever hear of that from Gary or from
15    Mr. Bevan?
16 A.  No.
17 Q.  Is that something that you would have expected to
18    hear?
19 A.  No.
20 Q.  Let me show you what's been marked as Defendant's
21    Exhibit 135.  Exhibit 135 is a multiple-page
22    document.  It's a memorandum in support of the
23    motion for summary judgment for lack of product
24    identification on behalf of EMTAL, bearing Bates
25    numbers BASF Williams 51891 through 897.  Have you

Page 39

1     heard the term "product identification"?
2  A.  In general?
3  Q.  Yeah.
4  A.  Sure.
5  Q.  Within the asbestos litigation that's been -- that
6     your family's been involved in, do you have an
7     understanding that product identification relates
8     to being able to identify that a certain company's
9     product was involved with a plaintiff?  In other
10    words, that your father was exposed to a certain
11    company's talc.  Have you heard that?
12 A.  Yes.
13 Q.  Okay.  And from your involvement with asbestos
14    litigation over the years, you understand that
15    product identification is a significant issue for
16    a plaintiff?  In other words, a plaintiff has to
17    be able to show that they were exposed to a
18    certain company's product, right?
19       MR. ROTH:  Objection.  Form and
20    foundation.
21 A.  Ask me again.
22 Q.  Sure.  Do you know whether your father worked with
23    talc?
24 A.  Yes.
25 Q.  Okay.  Did he work with talc?

Page 40

1  A.  I know he worked -- when you say he worked with
2     talc, I mean, I -- I don't know to what exposure,
3     what extent.  It's not like I knew he -- I know he
4     worked in maintenance and -- I mean, my dad never
5     said, "Oh, my gosh, I worked with talc."
6  Q.  Right.
7  A.  So I guess I'm kind of in a gray area of -- I
8     mean, I -- yes, I know he cleaned different things
9     that they used talc with, like when he was in the
10    tank lining process -- you know, cleaned out the
11    tank linings.  I couldn't tell you specifically
12    where he came in contact with the talc in the
13    rubber plant.
14 Q.  Okay.  You know he worked with asbestos, too,
15    right?
16 A.  No.
17 Q.  No?
18 A.  Well, when you say "asbestos," I was thinking the
19    talc with asbestos in it.
20 Q.  You don't think he -- based upon your involvement
21    with the talc -- withdrawn.
22       Based upon your involvement with the
23    asbestos litigation over the years on behalf of
24    your family --
25 A.  Uh-huh.

Page 41

1  Q.  -- you don't have any understanding that your
2     father was exposed to raw asbestos?
3        MR. ROTH:  Objection.  Form and
4     foundation.
5  A.  Right.
6  Q.  Okay.  So Exhibit 135 -- withdrawn.
7        On the talc, do you have any
8     understanding of whether your father was exposed
9     to talc from Southern Talc or Georgia Talc or
10    Vanderbilt talc or EMTAL talc?
11 A.  No.
12 Q.  You would agree with me that if your father was
13    exposed to talc from, say, Southern Talc and not
14    talc from my client, that my client shouldn't have
15    to pay?  Fair?
16       MR. ROTH:  Objection.  Form, foundation.
17 A.  If he was never exposed to your client's talc,
18    ever, then I would say no.
19 Q.  He shouldn't receive compensation, correct?
20 A.  If he --
21       MR. ROTH:  Objection.  Form, foundation.
22    You can answer.
23 Q.  If he was never exposed to your client's talc?
24 Q.  Then he should not get compensation, correct?
25 A.  Correct.

GAYLE WILLIAMS - 04/05/2018          Pages 42..45

Page 42

1   Q.  Okay.  So over the years of working with
2       Mr. Bevan, you have come to trust Mr. Bevan as a
3       lawyer, correct?
4           MR. ROTH:  Objection.  Form, foundation.
5       From all those conversations you've had.
6   A.  I have -- I trust my brother-in-law.  I've never
7       had any contact with Mr. Bevan to know whether to
8       trust, but I trust my sister and my brother-in-law
9       in their dealings.
10  Q.  In their dealings?
11  A.  Right.  Or my sister's dealings.
12  Q.  And you don't know whether your brother-in-law had
13      dealings?
14  A.  I assumed he did.  I don't know.  I can't tell you
15      for sure.
16  Q.  Okay.  Exhibit 135 is a motion for summary
17      judgment on behalf of EMTAL for product
18      identification.  And do you see it in front of
19      you?
20  A.  Uh-huh.  Yes.
21  Q.  And do you see on page 2, the top of it, it says,
22      "EMTAL talc has not been identified as having been
23      used at any specific work site of any Plaintiff in
24      this action"?
25  A.  Uh-huh.

Page 43

1   Q.  Do you see that?
2   A.  Uh-huh.
3   Q.  And it says, "No Plaintiff or representative has
4       testified that he has worked with or was exposed
5       to EMTAL talc."
6   A.  Uh-huh.
7   Q.  Do you see that?
8   A.  Uh-huh.
9   Q.  Then it says, "No co-worker or other witness
10      testified that EMTAL talc was present at any of
11      the Plaintiffs' specific work sites."  Do you see
12      that?
13  A.  Yeah.
14  Q.  "Not one of Plaintiffs' supposed product
15      identification witnesses was able to place EMTAL
16      talc within proximity of any of the Plaintiffs
17      during the relevant time period."  Do you see
18      that?
19  A.  Yep.
20  Q.  In the mid-1990s, did you hear from any source
21      that your father was unable to show that he was
22      exposed to EMTAL talc?
23          MR. ROTH:  Objection.  Form, foundation.
24      What happened to this motion?
25  Q.  You can answer the question.

Page 44

1           MR. ROTH:  Okay.
2   A.  What question am I answering?
3           MR. ROTH:  You don't know what the ruling
4       of this motion was.  Somebody else does.
5       THE WITNESS:  Right.
6           MR. ROTH:  Repeat your question.
7           MR. ASSAF:  Mr. Roth is trying to testify
8       now.
9           MR. ROTH:  No, I'm not trying to testify.
10      I'm trying to point out the unfairness of
11      this question.
12          MR. ASSAF:  Do you have anything else,
13      Mr. Roth?
14          MR. ROTH:  Yeah, I repeat my objection to
15      the form and foundation.
16          MR. ASSAF:  Would you like to say
17      anything else?  Please do.
18          MR. ROTH:  I would like to say more, but
19      I will not.
20  Q.  In the mid-1990s, do you recall hearing that your
21      father was unable to show that he was exposed to
22      EMTAL talc?
23          MR. ROTH:  Objection to form and
24      foundation.
25  A.  I did not hear that.

Page 45

1   Q.  Now, in this motion for summary judgment there is
2       nothing, and you can look through it, about
3       whether EMTAL talc contains or doesn't contain
4       asbestos.
5   A.  In this?
6   Q.  Correct.
7   A.  Well, I haven't read all of this.
8   Q.  All right.  You can take your time and look
9       through it, if you'd like.
10  A.  Well, all of this was -- is previous, though, to
11      when it was discovered that it did have it.
12  Q.  Okay.  And how do you know that?
13  A.  Because I -- I knew when Gary and Nancy told us
14      that there was this suit because it was discovered
15      that one of the companies had given information
16      that there was no asbestos in their talc and it
17      was later found out that there was.  So --
18  Q.  And do you know whether Mr. Gary Pease or
19      Ms. Nancy Pease or William Clark or your mother
20      were ever told that there was no asbestos in
21      Engelhard's talc?  Do you know that?
22  A.  No, I don't know that.
23  Q.  Okay.
24  A.  If they were ever told.
25  Q.  Okay.  Now I'm going to show you Defendant's

Page 46

1    Exhibit 136. Defendant's Exhibit 136 is a notice
2    of dismissal filed by Tom Bevan –
3  A. Uh-huh.
4  Q. – on behalf of William F. Clark.
5  A. Uh-huh.
6  Q. It says, "Please take notice that the above-titled
7    action is dismissed pursuant to Civil Rule 41(A)1
8    with respect to Plaintiffs William F. Clark and
9    Norma Clark only." Do you see that?
10 A. Uh-huh.
11 Q. Do you have any recollection in 1995 of hearing
12   that Mr. Bevan decided to dismiss your father's
13   case?
14 A. No.
15 Q. Let me show you Exhibit 137. Defendant's Exhibit
16   137 is a new complaint, this one filed in Cuyahoga
17   County, Ohio. The previous lawsuit was filed in
18   Summit County, Ohio.
19 A. Okay.
20 Q. And this is a lawsuit against various defendants,
21   including a number of talc companies. Have you
22   seen this complaint before?
23 A. (Witness shaking head from side to side.) No.
24 Q. Okay. Let me show you Exhibit 138.
25 A. Thank you.

Page 47

1  Q. In 19 – withdrawn.
2    Exhibit 138 is June 18th, 1997, motion
3    for summary judgment and to dismiss EMTAL or
4    Eastern Magnesia Talc Company filed in Cuyahoga
5    County. I'd like to take a minute to look at this
6    document.
7    MR. ROTH: Is there a Bates number?
8    MR. ASSAF: I don't have a Bates number
9    on this.
10   MR. ROTH: Was this produced to the
11   Plaintiffs?
12   MR. ASSAF: Sure it was. I don't know.
13   I assume it's from Bevan's files, but I'm not
14   sure.
15   MR. ROTH: Well, if it came from us and
16   Bevan's file, it would be marked.
17   MR. ASSAF: Anyway, it's a public record,
18   public document. I'm sure it's been produced
19   either through Bevan or through us.
20   MR. ROTH: Well, if it came from Bevan,
21   it would have a stamp on it. If it came from
22   you, it would have a stamp on it.
23   MR. ASSAF: Are you saying it's –
24   MR. ROTH: I'm asking whether it's been
25   produced to us?

Page 48

1    MR. ASSAF: I don't know. I assume it's
2    been produced. We'll check on that.
3    MR. ROTH: Thank you.
4  Q. Okay. Turning your attention to the first page,
5    it says, "EMTAL moves for summary judgment in its
6    favor pursuant to Rule 56 of the Ohio Rules of
7    Civil Procedure on the grounds that the statute of
8    limitations has run on claims by the Estate of
9    William Clark and any wrongful death claim against
10   EMTAL or to dismiss the consortium claim for
11   insufficient service and lack of personal
12   jurisdiction." Do you see that?
13 A. Yes.
14 Q. Do you have any recollection of hearing in 1997
15   that EMTAL moved to dismiss your father and
16   mother's cases for insufficient service, statute
17   of limitations and lack of personal jurisdiction?
18 A. No.
19 Q. Okay. Mr. Bevan's never told you or your family
20   that, as far as you know?
21   MR. ROTH: Objection. Form, foundation.
22 A. Correct.
23 Q. Okay. Now, you mentioned earlier that you heard
24   from your brother-in-law, Mr. Gary Pease, that
25   something came up showing that one of the talc

Page 49

1    companies had asbestos in the talc and that was
2    significant. When Mr. Pease talked to you about
3    this class action –
4  A. Okay.
5  Q. – he told you that this company Engelhard had
6    asbestos in its talc?
7  A. Yes.
8  Q. Okay. And was it your understanding that if
9    there's asbestos in the talc, then the
10   compensation for a lawsuit should be more
11   significant than if the talc has no asbestos?
12   MR. ROTH: Objection to form and
13   foundation.
14 A. You're saying if the talc had absolutely no
15   asbestos in it?
16 Q. Correct.
17 Q. Should there be compensation for an asbestos
18   claim?
19 A. Yes.
20 A. I wouldn't think so, but I'm no expert.
21 Q. Okay. Now, take the other side of that. If a
22   talc company had asbestos in its talc –
23 A. Yes.
24 Q. – would you, as a plaintiff, think you're
25   entitled to more money for an asbestos injury?

Page 50

1      MR. ROTH: Objection to form and
2    foundation.
3 A. More money than -- what do you mean, "more money"?
4 Q. Than a company that doesn't have asbestos in the
5    talc.
6      Step back. Let's take it this way: You
7    know that there were talc settlements. You and I
8    talked about that earlier.
9 A. Yes.
10 Q. Against a number of talc companies, correct?
11 A. Yes.
12 Q. Do you have any understanding of whether those
13    talc companies had asbestos in their talc?
14 A. No.
15 Q. Okay. Do you believe that they did not have
16    asbestos in their talc?
17 A. No.
18      MR. ROTH: Object.
19 Q. Why?
20 A. I -- because I assumed if my dad died due to
21    asbestos exposure, that the companies that
22    settled, whether -- that were in the case were
23    companies that had asbestos in their talc.
24 Q. Okay. Yeah, because of the thing. So let me show
25    you --

Page 51

1      MR. ASSAF: And I think this might answer
2    your prior question, Mr. Roth.
3      MR. ROTH: Thank you.
4      MR. ASSAF: Defendant's Exhibit 142,
5    which does not bear Bates numbers and is, I'm
6    sure, not produced by us because it's from
7    the files of Tom Bevan and it's highly
8    redacted. So I guess that there are
9    documents being produced from Mr. Bevan
10    without Bates-stamped numbers. Because I can
11    assure you we would not have had Mr. Bevan's
12    internal talc files for the Tire Workers
13    Litigation Project, too, and we would not
14    have redacted the information.
15    Mr. Placitella, am I wrong on that?
16      MR. PLACITELLA: I don't know. I'll have
17    to check that, Gene.
18      MR. ASSAF: You think that this is coming
19    from us?
20      MR. PLACITELLA: I don't know where this
21    is coming from.
22      MR. ASSAF: Okay. Well, maybe you could
23    check that.
24      MR. PLACITELLA: Sure. And you could
25    check where 138 comes from?

Page 52

1      MR. ASSAF: I will.
2      MR. PLACITELLA: Okay. What was
3    the -- this -- 142. Is this the original or
4    is that an extra?
5 Q. Okay. Exhibit 142 is what we have received from
6    Mr. Bevan. In the upper left-hand corner is
7    handwritten "Talc." In the upper right-hand
8    corner is "TWLP2," and then there are a bunch of
9    what we call redactions.
10 A. Uh-huh.
11 Q. I didn't do that. I think your lawyers or
12    Mr. Bevan did that. So I know it's hard to read,
13    but up top it says "Nancy Pease," and handwritten
14    there is "$7,500." Do you see that?
15 A. I see 7,500, uh-huh.
16 Q. Yep, you see 7,500. And then there's a voluntary
17    dismissal at the end of a number of companies that
18    are talc companies. If you go to the very --
19 A. Okay.
20 Q. The second-to-last page, it's a dismissal with
21    prejudice against Akrochem, Cyprus Industrial,
22    Milwhite, Georgia Talc, Harwick Chemical, Eastern
23    Magnesia Talc, International Talc,
24    R.T. Vanderbilt, J&J and Southern Talc. Do you
25    see that?

Page 53

1 A. Sorry. No, I don't. Where are you?
2      MR. ROTH: It goes on to the next page.
3      THE WITNESS: Oh, up here. Sorry.
4 Q. Do you have any understanding of -- I think we
5    started off with the interrogatories. If you can
6    pull those back out, the ones that you signed,
7    showing that on 9/9/1997 there was a settlement
8    with talc companies?
9      THE WITNESS: I have some in my lap, too.
10      MR. ROTH: No, that's not the
11    interrogatories.
12 Q. Interrogatory number 4. You got it?
13 A. Okay. Yes.
14 Q. Do you see where -- and these are the
15    interrogatories you signed?
16 A. Yes.
17 Q. And 9/9/1997 is listed as a settlement with a
18    consortium of defendants.
19 A. Uh-huh.
20 Q. Okay. And then there's a dismissal here in 1998
21    against a number of defendants. They seem to be
22    the same defendants. And to put it all together,
23    here's Exhibit 141, which is the release signed by
24    your sister against all of these talc defendants
25    who were dismissed: Georgia Talc, Harwick Talc,

GAYLE WILLIAMS - 04/05/2018          Pages 54..57

Page 54

1    EMTAL, International Talc, R.T. Vanderbilt, J&J,
2    and Southern Talc. Okay. Do you have an
3    understanding that at some point in 1997, 1998,
4    your sister, on behalf of your father and
5    mother --
6  A. Uh-huh.
7  Q. -- settled with a consortium of talc defendants?
8  A. I understand that from you giving me this.
9  Q. Yes. Okay. Now, did she ever tell you, in words
10    or in substance, that she was settling because the
11    talc companies had no asbestos in their talc?
12 A. No.
13       MR. ROTH: Objection to form and
14    foundation.
15       THE WITNESS: Sorry.
16 A. No.
17 Q. Okay. Did you ever hear that they were -- that
18    your sister settled because she was told, in words
19    or in substance, there was no asbestos in the talc
20    of the defendants?
21       MR. ROTH: Objection. Form, foundation.
22 A. Are you asking me if I was told in 19 -- when
23    these were signed?
24 Q. Correct.
25 A. No.

Page 55

1  Q. Okay. So now let's go fast-forward.
2  A. Okay.
3  Q. Have you been told at any time that the reason
4    that your sister settled was because she was told
5    there was no asbestos in the talc of any of the
6    talc defendants?
7  A. Yes.
8  Q. Okay. When did you learn that?
9  A. When she told me about the class action suit.
10    That that was the reason for the class action
11    suit.
12 Q. Okay. I understand the reason for the class
13    action, but did she tell you at that time that she
14    settled because there was no asbestos in the
15    products of any of the talc companies?
16 A. I don't remember her using those exact words.
17 Q. Did she use words like that?
18 A. I re -- I remember being told that this class
19    action came about because they had -- because they
20    had settled, and I don't know for money or no
21    money, but that they had settled because the
22    companies showed they had no talc in their
23    asbestos and that subsequently was found that they
24    did.
25 Q. All right.

Page 56

1  A. So that's the gist of the conversation that I had.
2  Q. With your sister?
3  A. With Gary.
4  Q. With Gary, sorry.
5  A. Sorry.
6  Q. I keep forgetting about Gary.
7  A. Gary's been my brother-in-law since I was seven
8    years old. He's like a dad almost.
9  Q. So you had that --
10 A. He was the man in the relationship.
11 Q. And I think you said he's the -- as far as you
12    recalled, he was the point person on a lot of this
13    litigation?
14 A. Nancy was the executor. I don't know -- he's the
15    one who disseminated information to us. If he had
16    meetings with -- if he was in all the other
17    meetings, I really don't know. But he is the one
18    who told us kids, this is what's going on.
19 Q. And he told you about the reason for the class
20    action?
21 A. Yes.
22 Q. Okay. Now, did he tell you that --
23 A. Sorry. I can't read with them and I can't see you
24    without them.
25 Q. Okay. Sorry. Did Gary or anyone tell you at the

Page 57

1    time of this class action that your sister would
2    have wanted more money to settle if she had known
3    there was asbestos in the talc?
4  A. No.
5  Q. Because she was going to settle with all the
6    defendants whether there was asbestos in their
7    talc or not. True?
8       MR. ROTH: Objection. Form, foundation.
9  A. I don't know what her intentions were.
10 Q. Gary didn't tell you that she and Mr. Bevan knew
11    there was asbestos in the talc of some defendants
12    but wanted to settle anyway?
13       MR. ROTH: Object.
14 A. No.
15 Q. Would that surprise you?
16       MR. ROTH: Objection. Form, foundation.
17 A. Would what surprise me? That they didn't discuss
18    that with us?
19 Q. No, that -- we've established that there is a
20    settlement with a number of talc companies,
21    correct?
22 A. Right. Yes.
23 Q. And let's say it was for $7,500.
24 A. Okay.
25 Q. Okay? Mr. Bevan and your sister, Nancy Pease,

GAYLE WILLIAMS - 04/05/2018          Pages 58..61

Page 58

1    knew that some of these talc companies had
2    asbestos in the talc.
3  A.  Okay.
4  Q.  True?
5        MR. ROTH:  Object.
6  A.  I don't know what they knew.
7        MR. ROTH:  Objection to form and
8    foundation.
9  Q.  We'll, would you have -- if there was asbestos in
10   the talc of any of these talc defendants --
11 A.  Uh-huh.
12 Q.    -- would you have expected more money than $7,500?
13       MR. ROTH:  Objection.  Form, foundation.
14 A.  I wouldn't know how much money to expect.
15 Q.  Well, we know that your sister accepted $7,500.
16 A.  Okay.
17 Q.  On behalf of several talc companies, correct?
18 A.  Okay.
19 Q.  And with respect to those talc companies --
20 A.  Uh-huh.
21 Q.    -- did Gary or anybody tell you that those talc
22   companies, some of them, had asbestos in their
23   talc?
24 A.  No, I -- we never had a conversation about this,
25   period.

Page 59

1  Q.  Okay.  Even when he told you that one of the
2    reasons the case settled was that you were told
3    there was asbestos -- withdrawn.
4        When you found out about the class
5    action --
6  A.  Uh-huh.
7  Q.    -- Gary told you --
8  A.  Uh-huh.
9  Q.    -- that somebody had been told there was no
10   asbestos in the talc, correct?
11 A.  Yes.
12 Q.  Okay.  And I think you testified that it would
13   matter to you to know whether a company had
14   asbestos in its talc?
15       MR. ROTH:  Objection.
16 Q.  Correct?
17       MR. ROTH:  Objection.  Form, foundation.
18 A.  Yes.
19 Q.  So let me show you what's been
20   marked -- withdrawn.
21       At the time of the talc settlement with
22   all the talc defendants --
23 A.  These group -- this group here?
24 Q.  Correct.
25 A.  Okay.

Page 60

1  Q.  Mr. Bevan knew that there was asbestos in the
2    product of some talc companies.  True?
3  A.  In some of these?
4  Q.  Yes.
5  A.  I don't know --
6        MR. ROTH:  Objection.  Form, foundation.
7    You can answer.
8  A.  I don't know what Mr. Bevan knew.
9  Q.  Okay.  Well, if Mr. Bevan knew there was asbestos
10   in the talc of one of the Defendants and he was
11   still recommending that you take this group
12   settlement for $7,500, you would think that's
13   still a fair settlement, correct?
14       MR. ROTH:  Objection.  Form, foundation.
15 Q.  Withdrawn.  Do you have any reason to believe that
16   the $7,500 settlement was not fair with the talc
17   defendants?
18 A.  I have no basis of knowing whether that was fair
19   or not fair.
20 Q.  Okay.  And if I'm able to show you that Mr. Bevan
21   knew that the talc defendants, at least one of
22   them, had asbestos in their talc, would you agree
23   with me that if another company had asbestos in
24   its talc, too, that would be up to Mr. Bevan to
25   decide to settle?

Page 61

1        MR. ROTH:  I'm sorry?
2  Q.  Withdrawn.  Bad question.  With respect to the
3    talc consortium settlement --
4  A.  Uh-huh.
5  Q.    -- if Mr. Bevan knew there was asbestos in the
6    talc of one of the defendants, would that matter
7    to you?
8        MR. ROTH:  Objection to form.
9  A.  Would it matter to me if Mr. Bevan knew that some
10   of these -- any of these had talc in their --
11       MR. ROTH:  Asbestos in their talc.
12 A.  Yeah, asbestos in their talc?  I don't know.
13 Q.  Okay.  Well, because when Gary tells you, oh, we
14   settled this case years ago and we've now found
15   out that one of the companies we settled with had
16   asbestos in the talc, did he seem surprised to
17   you?
18 A.  Did he seem -- to find out that one of the
19   companies that said they had no talc ended up -- I
20   mean had no asbestos ended up that they did?
21 Q.  Yeah.
22 A.  Yeah, I would say he was -- I don't know if he was
23   surprised, but --
24 Q.  Did he think that he or the family should have
25   been entitled to more money because of that?

GAYLE WILLIAMS - 04/05/2018          Pages 62..65

Page 62

1  A. I don't know what he thought as far as whether
2     there should be more money or no more money or –
3  Q. Let me show you what's been marked as – do we
4     have a DX on this?  Oh, it was previously marked
5     Defendant's Exhibit 12.  Previously marked as
6     Defendant's Exhibit 12.  And Defendant's
7     Exhibit 12 is Plaintiffs' Responses to Motions for
8     Summary Judgment on Behalf of the BFGoodrich
9     Company.  And I'd like to turn your attention to
10    page 15.
11 A. I'm on page 15.
12 Q. Okay.  At the bottom.  Number 2, "Plaintiffs refer
13    the court to a September 10th, 1971 Harwick
14    document in which Plaintiffs have highlighted a
15    barely legible note written by Harwick personnel
16    which states:  Jan Scotland has informed us that
17    BFGoodrich is discontinuing the purchase of
18    Code 26, A-White Talc, due to the asbestos
19    content.  He indicated that this is not a new
20    problem."  Do you see that?
21 A. Yes.
22 Q. And it goes on to say, "BFGoodrich, however, did
23    not create a 'no asbestos' talc specification
24    until seven years later.  See Exhibit 25.  Also,
25    BFGoodrich did not remove asbestos-containing

Page 63

1     'White Talc' from Southern Talc from its supplier
2     list until 1980.  See Exhibit 26."  Do you see
3     that?
4  A. Yes.
5  Q. And this is submitted, if you turn to the page 18,
6     it's submitted by your attorney, Tom Bevan.  Do
7     you see that?
8  A. Yes.
9  Q. And then if you turn to the end, Mr. Bevan informs
10    the court – I'll show you.  It's entitled "Raw
11    Materials Department Technical Confirmation Sheet
12    June 11th, 1980."  I'll just hand this to you.
13    Mr. Bevan includes for the court in Exhibit 26 to
14    his motion a document showing that there was an
15    indication of asbestos in Southern Talc.  Do you
16    see that?
17 A. Uh-huh.
18 Q. And then you now know Mr. Bevan recommended that
19    you settled with Southern Talc, correct?
20 A. Uh-huh.
21 Q. And Southern Talc was part of this $7,500
22    consortium settlement, correct?
23 A. Yes.
24 Q. Even though Mr. Bevan knew that Southern Talc had
25    asbestos in it, correct?

Page 64

1  A. Yes.
2  Q. And do you have any problem with Mr. Bevan
3     recommending that settlement even though he knew
4     there was asbestos in the talc?
5     MR. ROTH:  Objection to form, foundation.
6  A. I have to rely on Mr. Bevan's expertise on what's
7     reasonable or not reasonable.
8     MR. ASSAF:  Let's take a break.
9     THE WITNESS:  Thank you.
10    (Recess was taken.)
11    MR. ROTH:  If we go back on the record,
12    I'm going to ask and we'll follow it up with
13    a note that you check, confirm that the
14    motion for summary judgment –
15    MR. PLACITELLA:  Twelve?
16    MR. ROTH:  Yeah.  We couldn't recall
17    where it had been previously marked.
18    MR. FARRELL:  In the Holley deposition.
19    MR. ROTH:  In the first or second?
20    MR. ASSAF:  First one.
21 BY MR. ASSAF:
22 Q. Let me show you what's been marked as Defendant's
23    Exhibit 139, just to fill out these documents.
24    This is a signed order that the motion for summary
25    judgment is withdrawn as moot – I'm sorry.  The

Page 65

1     motion by EMTAL for summary judgment is withdrawn
2     as moot, September 28, 1997 by Judge Hanna, Nancy
3     Pease versus Owens-Corning, et al.  Do you see
4     this document?
5  A. Yes, I do.
6  Q. In 1997, did you have any understanding that the
7     EMTAL motion was withdrawn?  That's the EMTAL
8     motion for product identification, statute of
9     limitations, all these procedural issues, that
10    that was being withdrawn?
11 A. No.
12 Q. Okay.
13    MR. PLACITELLA:  Gene, quick question.
14    Was that Exhibit 139, you said?
15    MR. ASSAF:  139.
16    MR. PLACITELLA:  Okay.  Thanks.
17 Q. Have you asked your brother-in-law Gary Pease
18    whether he has any documents related to the
19    underlying litigation?
20 A. No, I have not asked him.
21 Q. Okay.  Could you?
22 A. Yes, I'm capable of that.
23 Q. All right.  Would you?
24 A. Yes.
25 Q. Okay.  Do you know if your attorneys have asked

GAYLE WILLIAMS – 04/05/2018          Pages 66..69

Page 66

1   him?
2   A.  I don't know if my attorneys have asked him for
3       documents.
4   Q.  Do you know if your attorneys have ever met with
5       Gary Pease?
6   A.  I don't know for a fact that they've met with Gary
7       Pease, no.
8   Q.  Do you know whether they've talked to him?
9   A.  Yes.
10  Q.  Do you know whether they talked to him before
11      January 29th, 2018?  The day you signed the
12      verification –
13  A.  Oh.
14  Q.  – for the interrogatories.  So did they talk to
15      him before January of 2018?
16  A.  I know – I think my sister had.
17          MR. ROTH:  No, the question is
18      whether –
19          THE WITNESS:  Gary did?
20  A.  I don't know if Gary did.
21  Q.  Okay.  Do you know whether, as the point person,
22      Gary keeps files on the litigation?
23  A.  I don't know.
24  Q.  You don't know one way or the other?
25  A.  I don't know one way or another.

Page 67

1   Q.  You don't know whether anybody's ever checked with
2       him on that?
3   A.  I don't know.
4          MR. ROTH:  Objection.  Form, foundation.
5   Q.  In terms of your deposition preparation yesterday,
6       where did it occur again?  At the Bevan office?
7   A.  At Bevan's office.
8   Q.  And how long did it occur?
9   A.  A couple hours.
10  Q.  Okay.  Who was there?
11  A.  In the deposition – in the –
12  Q.  Yes.
13  A.  Just myself and Jared and –
14  Q.  Harry?
15  A.  Yeah, Harry.  Sorry.
16  Q.  And were you shown documents?
17  A.  What – no.
18          THE WITNESS:  You didn't show me
19      documents, did you?  No.
20  Q.  No documents, okay.  Were you –
21  A.  I know it was just yesterday, but –
22  Q.  Were you shown anything up on a television or
23      computer screen?
24  A.  No.
25  Q.  Okay.  It was just discussion?

Page 68

1   A.  Conversation.
2   Q.  Okay.  All right.  Thanks very much for your time.
3       We're done.
4   A.  We are?
5   Q.  Yeah.
6   A.  Oh, thank you.
7   Q.  You're welcome.
8          MR. ASSAF:  Any cross?
9          MR. ROTH:  No, I'm good.
10         MR. DOLINSKY:  No questions.
11         MR. BOYLE:  John Boyle.  No questions for
12      me.
13         MR. TUNIS:  And this is Eric Tunis.  No
14      questions for me, either.
15  -------
16  (Signature was not waived by the Witness.)
17  -------
18  (The deposition was concluded at 10:41 a.m.)
19  -------
20
21
22
23
24
25

Page 69

1   W I T N E S S  C E R T I F I C A T E
2
3       I, GAYLE WILLIAMS, do hereby certify that I have
4   read my deposition taken on April 5, 2018, in the case
5   of Kimberlee Williams, et al. Versus BASF Catalysts,
6   LLC, et al., consisting of 71 pages, and that said
7   deposition is a true and correct transcription of my
8   testimony with changes as noted on the errata sheet.
9
10  _____
        Gayle Williams
11
12  Dated this _____ day of _____, 2018.
13
14
15
        Sworn to and subscribed before me this _____
16
17  day of _____, 2018.
18
19
        _____
20          Notary Public
21
    My commission expires _____.
22
23
24
25
    AP

Page 70

1        ERRATA SHEET

2    Witness Name:  Gayle Williams

3    Date of Deposition:  April 5, 2018

4    Case:  Kimberlee Williams, et al. Versus BASF

     Catalysts, LLC, et al.

5

6    Page  Line  Change and Reason for Change

7    _____  _____  _____

8    _____  _____  _____

9    _____  _____  _____

10   _____  _____  _____

11   _____  _____  _____

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   _____  _____  _____

24   _____  _____  _____

25   _____  _____  _____

     AP

Page 71

1        C E R T I F I C A T E

2    STATE OF OHIO, )
                   ) SS:
3    SUMMIT COUNTY. )

4       I, Anika W. Patrick, a Registered Merit Reporter,
     Certified Realtime Reporter and Notary Public within

5    and for the State of Ohio, duly commissioned and
     qualified, do hereby certify that the within-named

6    Witness, GAYLE WILLIAMS, was by me first duly sworn to
     testify the truth, the whole truth and nothing but the

7    truth in the cause aforesaid; that the testimony so
     given by her was by me reduced to Stenotypy in the

8    presence of said witness; afterwards prepared and
     produced by means of Computer-Aided Transcription, and

9    that the foregoing is a true and correct transcription
     of the testimony so given by her as aforesaid.

10
        I do further certify that this deposition was

11   taken at the time and place in the foregoing caption
     specified, and was completed without adjournment.

12
        I do further certify that I am not a relative,

13   employee of or attorney for any party or counsel, or
     otherwise financially interested in this action.

14
        I do further certify that I am not, nor is the

15   court reporting firm with which I am affiliated, under
     a contract as defined in Civil Rule 28(D).

16

17      IN WITNESS WHEREOF, I have hereunto set my hand
     and affixed my seal of office at Akron, Ohio, this 6th

18   day of April, 2018.

19

20
     _____

21      Anika W. Patrick, RMR, CRR & Notary Public
        My commission expires March 13, 2020

22

23

24

25

**$**

**$10,000**
13:3

**$100,000**
13:11

**$7,500**
52:14 57:23 58:12,15
60:12,16 63:21

**1**

**1**
31:15

**10:41**
68:18

**10th**
62:13

**11th**
63:12

**12**
62:5,6,7

**131**
25:22

**133**
37:14,15,16

**134**
37:14,24,25

**135**
37:14 38:21 41:6 42:16

**136**
46:1

**137**
46:15,16

**138**
46:24 47:2 51:25

**139**
64:23 65:14,15

**141**
53:23

**142**
51:4 52:3,5

**15**
62:10,11

**18**
63:5

**18th**
47:2

**19**
37:16 47:1 54:22

**1971**
62:13

**1980**
63:2,12

**1990s**
6:25 29:25 30:6

**1994**
37:17

**1995**
46:11

**1997**
47:2 48:14 54:3 65:2,6

**1998**
53:20 54:3

**1st**
21:17,18

**2**

**2**
42:21 62:12

**20**
21:25 22:3

**2000s**
6:25

**2016**
6:20,22

**2017**
6:20 8:25 9:8

**2018**
21:20 66:11,15

**21**
21:22,25

**22**
21:25

**227**
29:20

**25**
62:24

**26**
62:18 63:2,13

**28**
65:2

**29th**
66:11

**4**

**4**
27:5,7 53:12

**41(A)1**
46:7

**46197**
38:3

**46200**
38:3

**4th**
37:17

**5**

**502(d)**
11:22

**51891**
38:25

**56**
48:6

**7**

**7,500**
52:15,16

**8**

**897**
38:25

**9**

**9/9/1997**
28:10 53:7,17

**A**

**A-WHITE**

**62:18**

**a.m.**
68:18

**ability**
10:20

**able**
35:20 39:8,17 43:15
60:20

**above-titled**
46:6

**absolutely**
49:14

**accepted**
58:15

**account**
15:21

**acting**
13:24

**action**
11:6 12:5,15 13:8 16:6
17:10 18:2,6,21 27:11
32:9,22 33:6 42:24 46:7
49:3 55:9,10,13,19 56:20
57:1 59:5

**actual**
34:20

**age**
22:20

**aggregate**
29:14,23 30:2,4,7,10,13

**ago**
6:16 18:24 23:14 24:3
61:14

**agree**
41:12 60:22

**agreement**
11:23 17:17

**Akrochem**
28:7 52:21

**amended**
20:21

**amount**
27:11

**answer**
6:1 7:19 10:19 11:16,22

13:6 34:18 41:22 43:25
51:1 60:7

**answering**
44:2

**Answers**
25:25

**anybody**
15:20 24:21,25 29:5
30:1,7,19 32:21 33:23
58:21

**anybody's**
67:1

**anytime**
31:6

**anyway**
47:17 57:12

**apart**
10:15

**apologize**
14:12,24

**approximation**
9:4

**April**
21:17,18 37:16

**area**
40:7

**aren't**
27:5

**asbestos**
19:10 33:3,13,16,20,25
36:21 39:5,13 40:14,18,
19,23 41:2 45:4,16,20
49:1,6,9,11,15,17,22,25
50:4,13,16,21,23 54:11,
19 55:5,14,23 57:3,6,11
58:2,9,22 59:3,10,14
60:1,9,22,23 61:5,11,12,
16,20 62:18,23 63:15,25
64:4

**asbestos-containing**
62:25

**asked**
6:17 9:25 10:3 65:17,20,
25 66:2

**asking**
24:15 32:7 47:24 54:22

**ASSAF**
5:6 11:24 28:24 29:2,3
32:11 36:2,4,8 44:7,12,
16 47:8,12,17,23 48:1
51:1,4,18,22 52:1 64:8,
20,21 65:15 68:8

**assume**
47:13 48:1

**assumed**
34:21 42:14 50:20

**assuming**
32:17

**assure**
51:11

**attend**
35:14

**attended**
34:14,16

**attention**
11:16 21:22 27:6 48:4
62:9

**attorney**
33:2,5 63:6

**attorney-client**
17:1

**attorneys**
7:21 26:24 65:25 66:2,4

**aware**
32:4

---

**B**

**back**
23:10 29:2,19 31:12 50:6
53:6 64:11

**background**
18:23

**Bad**
61:2

**barely**
62:15

**based**
33:25 35:5 40:20,22

**BASF**
25:25 31:18 32:2 38:2,25

**basis**
60:18

**Bates**
38:2,24 47:7,8 51:5

**Bates-stamped**
51:10

**bear**
51:5

**bearing**
38:2,24

**beginning**
19:20

**behalf**
38:24 40:23 42:17 46:4
54:4 58:17 62:8

**believe**
50:15 60:15

**best**
9:17 10:20,22 11:16

**better**
10:4 30:13

**betterment**
10:21

**Bevan**
7:10,11,13 8:1,2,3,7
15:14 16:1,3,8,11,13,15
17:2,9,15 18:1 19:25
24:21 25:6 27:2 30:2,14
31:1 32:13,20 33:2,5,12,
19,24 34:9,12 35:10
37:11 38:8,15 42:2,7
46:2,12 47:19,20 51:7,9
52:6,12 57:10,25 60:1,8,
9,20,24 61:5,9 63:6,9,13,
18,24 64:2 67:6

**Bevan's**
17:18 24:14 35:9 47:13,
16 48:19 51:11 64:6 67:7

**BFGOODRICH**
62:8,17,22,25

**Bless**
9:14

**bottom**
62:12

**Boyle**
68:11

**break**
10:15 35:25 64:8

**briefly**
16:18

**brother**
9:18 18:20

**brother-in-law**
6:17 7:3,5,22 9:21 10:7
14:14,15,16,17,18 18:12
20:5 22:23 23:1,12,17
24:4,25 25:11 29:5,9
30:14 34:1,11 42:6,8,12
48:24 56:7 65:17

**bunch**
52:8

---

**C**

**call**
35:21 52:9

**calls**
36:19

**can't**
42:14 56:23

**candidate**
10:5

**capable**
65:22

**case**
8:20 9:19 10:11,12 11:20
12:2,21,22 14:2 18:20,25
19:3 20:22 21:11,15
22:21,22 29:7 38:4,9
46:13 50:22 59:2 61:14

**cases**
6:5 17:16 24:21 25:1,6,
17 33:3 48:16

**Catalysts'**
25:25

**caused**
38:9

**certain**
39:8,10,18

**certified**
5:4

**check**
48:2 51:17,23,25 64:13

i3

**checked**
67:1

**Chemical**
28:4 52:22

**children**
36:13

**circumstances**
28:22

**Civil**
46:7 48:7

**claim**
27:13 48:9,10 49:18

**claims**
27:9 31:18 32:1,8,9 48:8

**clarify**
34:5

**Clark**
16:11 18:1 38:4 45:19
46:4,8,9 48:9

**class**
10:17,21 11:5 12:5,9,15,
18,19 13:8,13,22,24 16:6
17:10 18:2,5,6,21 32:9,
22 33:6 49:3 55:9,10,12,
18 56:19 57:1 59:4

**cleaned**
40:8,10

**clear**
32:5

**client**
13:3 41:14

**client's**
41:17,23

**co-worker**
43:9

**Code**
62:18

**come**
7:16,24 42:2

**comes**
7:20 51:25

**coming**
36:23 37:5 51:18,21

**communicated**
15:7,14,23 16:1

**communicating**
31:6

**companies**
23:20,22,24 24:15 28:13
33:17,20 45:15 46:21
49:1 50:10,13,21,23
52:17,18 53:8 54:11
55:15,22 57:20 58:1,17,
19,22 60:2 61:15,19

**company**
19:8 22:16 47:4 49:5,22
50:4 59:13 60:23 62:9

**company's**
39:8,11,18

**compensated**
17:9

**compensation**
19:2 41:19,24 49:10,17

**complaint**
20:22 21:10,15 22:12
29:19,22 37:16,19 46:16,
22

**computer**
67:23

**concluded**
68:18

**conducted**
10:25 11:20

**confirm**
64:13

**Confirmation**
63:11

**confusing**
14:23

**consortium**
28:3 48:10 53:18 54:7
61:3 63:22

**contact**
40:12 42:7

**contacted**
20:2

**contain**
45:3

**contains**
45:3

**content**
62:19

**conversation**
8:2 9:11 23:8,11 56:1
58:24 68:1

**conversations**
7:21,25 22:23,25 23:1,5
24:1 25:20 42:5

**copies**
26:14

**copy**
16:21

**Coren**
8:21

**corner**
52:6,8

**correct**
32:18,22,23 33:6,13,17,
21 41:19,24,25 42:3 45:6
48:22 49:16 50:10 54:24
57:21 58:17 59:10,16,24
60:13 63:19,22,25

**correspondence**
24:14

**couldn't**
18:19 24:18 26:9 40:11
64:16

**counsel**
11:17 22:24

**County**
46:17,18 47:5

**couple**
67:9

**course**
13:25

**court**
5:15 9:6 38:11 62:13
63:10,13

**create**
62:23

**cross**
68:8

**CROSS-EXAMINATION**
5:5

**Cuyahoga**
46:16 47:4

**Cyprus**
28:6 52:21

———

**D**

**dad**
19:20 22:16 40:4 50:20
56:8

**dates**
27:12 28:14

**day**
66:11

**dealings**
42:9,10,11,13

**death**
48:9

**decide**
60:25

**decided**
46:12

**decision**
11:5

**decisions**
11:1,18

**defendant**
12:24 27:10

**Defendant's**
25:22 37:15 38:20 45:25
46:1,15 51:4 62:5,6
64:22

**defendants**
28:1,3 37:17 46:20
53:18,21,22,24 54:7,20
55:6 57:6,11 58:10 59:22
60:10,17,21 61:6

**definitely**
12:16

**Department**
63:11

**deposition**
9:10 37:1,12,20 64:18
67:5,11 68:18

**described**
35:2

**didn't**
7:8 16:9 26:16 52:11
57:10,17 67:18

**died**
50:20

**difference**
9:9

**different**
24:10 26:12 40:8

**discontinuing**
62:17

**discovered**
45:11,14

**discuss**
27:1 29:4 33:12 36:21
57:17

**discussed**
17:12 30:7

**discussion**
12:20 17:15 24:4 29:1
30:4 67:25

**discussions**
12:2,7,11,14 18:4,14,17
24:20,24 25:6,10 29:7
30:1

**dismiss**
46:12 47:3 48:10,15

**dismissal**
46:2 52:17,20 53:20

**dismissed**
19:9 23:7 24:8 38:9 46:7
53:25

**dismissing**
38:4

**dispositions**
27:10

**disseminate**
36:10,13

**disseminated**
31:10 34:7 56:15

**document**
38:2,6,22 47:6,18 62:14
63:14 65:4

**documentation**
14:1,3

**documents**
7:8 16:5,9 20:6,12 51:9
64:23 65:18 66:3 67:16,
19,20

**doesn't**
9:15 45:3 50:4

**doing**
20:15

**DOLINSKY**
68:10

**don't**
5:22 11:25 12:8 17:23,25
19:1,22,24 20:8 27:21
29:11,16 30:4,15,21,23
31:7 32:14,18,20 34:10,
21 35:16,19 36:1 40:2,20
41:1 42:12,14 44:3 45:22
47:8,12 48:1 51:16,20
53:1 55:16,20 56:14,17
57:9 58:6 60:5,8 61:12,
22 62:1 66:2,6,20,23,24,
25 67:1,3

**drawing**
35:1

**drive**
35:8

**dropping**
36:14

**due**
50:20 62:18

**duly**
5:3

**DX**
62:4

**dynamic**
35:5

---

**E**

**e-mail**
14:8 15:7,14,19,21 36:14

**e-mailed**
26:14

**e-mails**
15:12

**earlier**
9:8 21:6,12,13,16 26:13,

17 34:13 48:23 50:8

**early**
6:20 8:25 14:1 18:19

**Eastern**
28:4 37:18 47:4 52:22

**either**
9:16 16:6 19:8 47:19
68:14

**EMTAL**
28:5 38:24 41:10 42:17,
22 43:5,10,15,22 44:22
45:3 47:3 48:5,10,15
54:1 65:1,7

**ended**
61:19,20

**Engelhard**
7:1 19:6,16 22:22 23:18,
19 37:19 49:5

**Engelhard's**
45:21

**entitled**
12:10 25:24 49:25 61:25
63:10

**Eric**
68:13

**Erin**
16:10

**established**
57:19

**estate**
17:20 48:8

**et al**
65:3

**events**
6:25

**exact**
55:16

**example**
11:5 12:21,25

**excuse**
11:22

**executor**
16:21 31:5 56:14

**executrix**
16:22

**Exhibit**
25:22 37:15,24,25 38:21
41:6 42:16 46:1,15,24
47:2 51:4 52:5 53:23
62:5,6,7,24 63:2,13
64:23 65:14

**expect**
20:12 58:14

**expectations**
20:15

**expected**
38:17 58:12

**expert**
11:9 49:20

**expertise**
64:6

**exposed**
39:10,17 41:2,8,13,17,23
43:4,22 44:21

**exposure**
40:2 50:21

**extent**
40:3

**extra**
52:4

---

**F**

**fact**
13:14 34:11 66:6

**facts**
6:4 7:16,24 18:18

**failed**
38:10

**failure**
38:5

**fair**
7:17 11:11 34:2 41:15
60:13,16,18,19

**familiar**
26:3 29:18

**family**
6:18 24:25 29:5 30:1
32:22 33:19,23 34:22
35:5 36:16,20 40:24
48:19 61:24

GAYLE WILLIAMS - 04/05/2018                    i5

**family's**
10:14 33:2,5,13,16 39:6

**far**
6:7 10:12 14:10 20:5
48:20 56:11 62:1

**FARRELL**
64:18

**fast-forward**
55:1

**father**
19:6 31:2 39:10,22 41:2,
8,12 43:21 44:21 48:15
54:4

**father's**
16:7 23:18 27:19 38:9
46:12

**favor**
48:6

**file**
47:16

**filed**
46:2,16,17 47:4

**files**
47:13 51:7,12 66:22

**fill**
64:23

**find**
19:11 35:20 61:18

**finished**
5:14

**firm**
17:2,18

**first**
5:3 7:11 8:19,22,24
19:20,21 21:7,10,15 23:8
25:25 26:11 31:15 48:4
64:19,20

**follow**
64:12

**follows**
5:4

**forgetting**
56:6

**form**
7:18 9:20 13:5,16 16:14
17:5 20:14 23:2 25:13,18

28:16 30:8,16 32:3,24
33:7,14 34:3,17 35:13,15
38:12 39:19 41:3,16,21
42:4 43:23 44:15,23
48:21 49:12 50:1 54:13,
21 57:8,16 58:7,13 59:17
60:6,14 61:8 64:5 67:4

**found**
45:17 55:23 59:4 61:14

**foundation**
13:5,16 17:6 20:14 23:3
25:14,18 28:16 30:8,17
32:3,25 33:7,14 34:4,17
35:15 38:12 39:20 41:4,
16,21 42:4 43:23 44:15,
24 48:21 49:13 50:2
54:14,21 57:8,16 58:8,13
59:17 60:6,14 64:5 67:4

**four-page**
38:2

**front**
42:18

**full**
5:14

**funeral**
37:9

---

**G**

---

**Gary**
9:23 10:6 14:18 18:9,10
20:5 30:18,19,25 31:5,7,
9,11,25 32:11,19 33:9
34:1,7,10,13,15,19,20,24
35:2,8,21 36:10,25 37:2
38:14 45:13,18 48:24
56:3,4,6,25 57:10 58:21
59:7 61:13 65:17 66:5,6,
19,20,22

**Gary's**
31:22 56:7

**GAYLE**
5:2

**Gene**
51:17 65:13

**general**
39:2

**gentleman**
5:14 8:21

**Georgia**
28:3 41:9 52:22 53:25

**getting**
9:19

**gist**
19:12 56:1

**give**
24:18

**given**
26:14 45:15

**giving**
9:3 54:8

**go**
11:18 27:4 28:24 29:2
30:23 35:10 52:18 55:1
64:11

**goes**
16:23 53:2 62:22

**going**
5:21 18:23 25:21 30:11
32:15 36:18 45:25 56:18
57:5 64:12

**good**
5:7,8 27:22 37:7 68:9

**gosh**
40:5

**gotten**
21:8

**gray**
40:7

**grounds**
48:7

**group**
59:23 60:11

**guess**
11:15 12:20 40:7 51:8

**guessing**
16:4

---

**H**

---

**hand**
63:12

**handled**
16:7

**handwritten**
52:7,13

**Hanna**
65:2

**happen**
9:15 36:15

**happened**
43:24

**hard**
52:12

**Harry**
8:6 67:14,15

**Harwick**
28:4 52:22 53:25 62:13,
15

**haven't**
45:7

**he's**
20:7,8 56:8,11,14

**head**
22:8 46:23

**hear**
13:4,14 35:12 38:14,18
43:20 44:25 54:17

**heard**
7:2,4 19:25 29:13,14
39:1,11 48:23

**hearing**
44:20 46:11 48:14

**heart**
27:21

**help**
11:17

**here's**
53:23

**hereinafter**
5:3

**highlighted**
62:14

**highly**
51:7

**Hold**
32:16

**Holley**
64:18

**home**
14:7,10 26:23

**honestly**
10:20 20:15 26:9

**hours**
67:9

---

**I**

**I'D**
26:1 27:6 47:5 62:9

**I'LL**
5:22 51:16 63:10,12

**I'M**
5:21 10:5 11:3,8 12:14,
15,17 14:23 25:21 26:19
27:17 30:11,23 31:6,13,
22 32:14,17 36:3 40:7
44:9,10 45:25 47:13,18,
24 49:20 51:5 60:20 61:1
62:11 64:12,25 65:22
68:9

**I'VE**
7:2,20 11:14 14:1,22
17:15 21:8 26:10 34:24
42:6

**idea**
11:13 17:11 20:2

**identification**
38:24 39:1,7,15 42:18
43:15 65:8

**identified**
42:22

**identify**
27:9 31:17 39:8

**includes**
33:16 63:13

**including**
28:3 37:18,19 46:21

**indicated**
62:19

**indication**
63:15

**Industrial**
28:6 52:21

**information**
31:10 34:7 36:11 45:15

51:14 56:15

**informed**
62:16

**informs**
63:9

**injury**
49:25

**input**
10:24 11:7

**installed**
5:13

**insufficient**
48:11,16

**intentions**
57:9

**Interesting**
36:8

**interests**
10:22

**internal**
51:12

**International**
28:5 52:23 54:1

**interrogatories**
26:1,10,17 31:12 36:5
53:5,11,15 66:14

**interrogatory**
26:5 27:2,5,7 31:15 32:7
53:12

**introduce**
16:17

**introduced**
8:7

**invited**
35:17

**involved**
5:9,16 6:5 9:19 19:15
20:7 24:1 25:19 32:12,21
33:9 39:6,9

**involvement**
33:24 39:13 40:20,22

**issue**
39:15

**issues**
65:9

**it's**
9:9,21 14:12 25:24 26:18
30:25 38:3,22 40:3
47:13,17,18,23,24 48:1
51:6,7 52:12,20 63:6,10

**its**
48:5 49:6,22 59:14 60:24
63:1

---

**J**

**J&j**
52:24 54:1

**Jan**
62:16

**January**
66:11,15

**Jared**
8:6 67:13

**Jerry**
26:18,19

**John**
68:11

**Johnson**
28:6

**Judge**
38:4 65:2

**judgment**
38:23 42:17 45:1 47:3
48:5 62:8 64:14,25 65:1

**June**
47:2 63:12

**jurisdiction**
48:12,17

---

**K**

**Karen**
10:1,7,8 14:21 15:4,5

**Kathy**
15:3

**keep**
15:12 20:6,12 36:18 56:6

**keeps**
66:22

**kept**
20:8

**kids**
34:8 56:18

**kind**
18:22 36:17 40:7

**knew**
19:7,22,23 23:21 30:12
31:8 36:22 40:3 45:13
57:10 58:1,6 60:1,8,9,21
61:5,9 63:24 64:3

**know**
7:10 9:23 11:10,11,19,25
12:1,8,10,16 15:16,23
16:1,3,5,7,10,21 17:14,
25 19:22,24 20:6,8
22:12,15,16,17,19,20,22
23:24 24:11 27:21 29:12
30:15,21,24 31:5,6,8
32:14 33:25 34:8,10,21,
22 35:1,5,16,19 39:22
40:1,2,3,8,10,14 42:7,12,
14 44:3 45:12,18,21,22
47:12 48:1,20 50:7
51:16,20 52:12 55:20
56:14,17 57:9 58:6,14,15
59:13 60:5,8 61:12,22
62:1 63:18 65:25 66:2,4,
6,8,10,16,20,21,23,24,25
67:1,3,21

**knowing**
23:23 60:18

**knowledge**
6:24 7:15 11:10 22:11,14
23:16 31:17 32:1,19,20
35:2

**known**
30:20 57:2

**knows**
30:19

---

**L**

**lack**
38:23 48:11,17

**lap**
53:9

**late**
6:20,22

law
17:18

lawsuit
5:9 6:3 7:15,16 13:23
16:6,7 17:10 18:18 19:6,
16 23:6,18 37:4 46:17,20
49:10

lawsuits
5:17 16:24 20:13 23:21,
23 24:7 25:11

lawyer
8:20 12:12 42:3

lawyers
8:14 11:8 15:8,24 52:11

learn
55:8

learned
18:25 19:13 20:3 22:15

left-hand
52:6

legible
62:15

let's
10:15 21:6 27:4 28:24
32:16,18 50:6 55:1 57:23
64:8

limitations
48:8,17 65:9

lining
40:10

linings
40:11

list
27:18 38:5 63:2

listed
31:25 53:17

listen
11:7,16

listing
27:15

litigation
7:1 16:24 17:3 20:7
22:14 33:13,16,17,20
36:21 39:5,14 40:23
51:13 56:13 65:19 66:22

litigation's
10:25

litigations
27:19

little
18:23

lobby
16:17

long
30:23 67:8

longer
6:12

look
26:2,16 45:2,8 47:5

looked
21:8

looks
27:22

lot
21:8 22:10 36:16 56:12

luck
37:7

---

**M**

mad
26:18

Magnesia
28:4 37:18 47:4 52:23

mail
36:13

maintenance
40:4

man
22:20 56:10

mark
9:3

marked
25:21 37:14 38:20 47:16
59:20 62:3,4,5 64:17,22

married
14:18

materials
36:14 63:11

matter
59:13 61:6,9

matters
17:3 20:7

mean
11:12 16:9 19:17 25:19
27:21 31:1 35:16,17
40:2,4,8 50:3 61:20

mediation
11:19,25 29:6,10

meet
8:6

meeting
8:6 16:13,15 31:7 34:9,
21 35:10,14,17,19 36:17,
20

meetings
6:7 22:13 30:19 31:1,8
32:12,21 33:10,12 34:11,
16,19 35:22 56:16,17

memorandum
38:22

memory
28:21

mentioned
15:6 29:10 48:23

mesothelioma
22:17

met
7:11,13 8:3,8,9,14 16:3,
12 34:24 66:4,6

mid-1990s
43:20 44:20

middle
27:25

Milwhite
28:7 52:22

Mineral
28:7

minute
47:5

moment
26:2

money
12:25 13:10 24:9 25:3,9
49:25 50:3 55:20,21 57:2

58:12,14 61:25 62:2

moot
64:25 65:2

morning
5:7,8

mother
45:19 54:5

mother's
48:16

motion
38:23 42:16 43:24 44:4
45:1 47:2 63:14 64:14,24
65:1,7,8

Motions
62:7

Move
13:21

moved
48:15

moves
48:5

multiple-page
38:21

---

**N**

name
15:3 31:23

named
8:21 16:10 27:10

Nancy
9:23,24 10:1 14:19,25
15:5,16,17 18:5,7,21
21:25 25:24 30:18,20
31:5,7 34:9,19 35:4
45:13,19 52:13 56:14
57:25 65:2

Nancy's
18:15

need
12:16 18:14

never
5:14 7:13 8:2,8 11:14
17:15 29:10 34:24 40:4
41:17,23 42:6 48:19
58:24

**new**
19:11 46:16 62:19

**Norma**
46:9

**note**
62:15 64:13

**notice**
46:1,6

**November**
9:25

**number**
27:7 37:17 46:21 47:7,8
50:10 52:17 53:12,21
57:20 62:12

**numbered**
27:6

**numbers**
38:2,25 51:5,10

---

**O**

**Object**
30:16 50:18 57:13 58:5

**objection**
7:18 9:20 11:21 12:4
13:5,16 16:14 17:5 20:14
23:2 25:13,18 28:15 30:8
32:3,24 33:7,14 34:3,17
35:11,13,15 38:12 39:19
41:3,16,21 42:4 43:23
44:14,23 48:21 49:12
50:1 54:13,21 57:8,16
58:7,13 59:15,17 60:6,14
61:8 64:5 67:4

**occur**
67:6,8

**October**
26:12

**offer**
13:4

**offered**
12:6

**office**
24:14 35:9 67:6,7

**oh**
12:6 26:9 32:10 40:5
53:3 61:13 62:4 66:13

68:6

**Ohio**
46:17,18 48:6

**okay**
5:16,19,21,25 6:1,10,22
7:4,7,12,15,23,25 8:3,14,
17,19 9:1,5,21,23 10:16
11:19 12:9 13:19 14:7,9,
12 15:5,12,16,23 16:5,
10,13,19 17:1,8,17,20,22
18:4,8,14 19:2,24 20:9,
17,20 21:5,7,10 22:9,22,
25 23:5,11,20,23 24:2,13
26:3,4,15,24 27:1,4,8,9,
23 29:17,21,22,25 30:6,
22,25 31:4,16 32:6 34:6,
19 35:25 36:8 37:24
39:13,25 40:14 41:6
42:1,16 44:1 45:12,23,25
46:19,24 48:4,19,23
49:4,8,21 50:15,24 51:22
52:2,5,19 53:13,20 54:2,
9,17 55:1,2,8,12 56:22,
25 57:24,25 58:3,16,18
59:1,12,25 60:9,20 61:13
62:12 65:12,16,21,25
66:21 67:10,20,25 68:2

**old**
56:8

**oldest**
10:1,5

**ones**
53:6

**open**
29:19

**order**
38:3 64:24

**original**
19:5,17 37:16 52:3

**outside**
35:9

**overlying**
10:12

**Owens-corning**
65:3

---

**P**

**page**

21:22 26:20 27:25 42:21
48:4 52:20 53:2 62:10,11
63:5

**pages**
27:5

**paid**
5:13

**paperwork**
16:20

**paragraph**
22:3 29:20

**paragraphs**
21:25 22:5

**parents**
6:6 16:22,23

**part**
63:21

**parties**
27:11

**passed**
9:24 14:19 22:19

**pay**
11:16 13:1 41:15

**Pease**
14:25 15:17 18:5 22:1
29:9 31:23,24,25 32:19
33:9 34:2 36:10,25
45:18,19 48:24 49:2
52:13 57:25 65:3,17
66:5,7

**Pease's**
25:24

**people**
20:18

**period**
43:17 58:25

**person**
6:12,18 8:11,15 9:24
19:19 20:9,10 34:14 35:3
56:12 66:21

**personal**
6:24 10:22 12:22 22:11
48:11,17

**personnel**
62:15

**persons**
31:17

**phone**
8:17 14:8 16:4 20:18
36:19

**place**
12:11 18:15 43:15

**Placitella**
8:9,21 51:15,16,20,24
52:2 64:15 65:13,16

**plaintiff**
25:24 39:9,16 42:23 43:3
49:24

**Plaintiffs**
43:16 46:8 47:11 62:12,
14

**Plaintiffs'**
8:14,20 43:11,14 62:7

**plant**
40:13

**Please**
44:17 46:6

**point**
6:12,18 9:24 19:19 20:9,
10 34:14 35:3 44:10 54:3
56:12 66:21

**pool**
5:13

**portion**
29:22

**posted**
36:18

**prejudice**
52:21

**preparation**
37:1,2,20 67:5

**prepare**
13:23

**present**
43:10

**pretty**
22:19 37:9

**previous**
45:10 46:17

**previously**

62:4,5 64:17

**price**
5:14

**printed**
14:10

**prior**
6:22 23:6,11 24:3 51:2

**privilege**
11:21 30:9

**probably**
23:9 34:1

**problem**
62:20 64:2

**procedural**
65:9

**Procedure**
48:7

**proceed**
11:10

**process**
40:10

**produced**
47:10,18,25 48:2 51:6,9

**product**
38:23 39:1,7,9,15,18
42:17 43:14 60:2 65:8

**products**
55:15

**Project**
51:13

**provide**
38:5,10

**proximity**
43:16

**public**
47:17,18

**pull**
53:6

**purchase**
62:17

**pursuant**
46:7 48:6

**put**
12:25 13:10,14 53:22

---

**Q**

**question**
5:24 9:2 43:25 44:2,6,11
51:2 61:2 65:13 66:17

**questions**
5:21 10:19 68:10,11,14

**quick**
65:13

---

**R**

**R.T.**
28:5 52:24 54:1

**raw**
41:2 63:10

**read**
6:11,13 14:1 22:5 29:22
45:7 52:12 56:23

**reading**
7:16,20

**real**
9:10

**really**
16:15 35:16 56:17

**reason**
55:3,10,12 56:19 60:15

**reasonable**
11:12,14 64:7

**reasons**
59:2

**recall**
29:16 30:4 44:20 64:16

**recalled**
56:12

**receive**
24:10 41:19

**received**
24:9,12 52:5

**receiving**
25:3,9

**recess**
64:10

**recollection**

---

28:12 46:11 48:14

**recommended**
63:18

**recommending**
60:11 64:3

**record**
28:24 29:1,2 47:17 64:11

**redacted**
51:8,14

**redactions**
52:9

**refer**
14:21 62:12

**reference**
27:25

**referred**
14:22 28:5

**refresh**
28:12

**regarding**
6:25 9:18 14:2 17:9 18:5,
14 19:16 23:17 24:21
25:1,6,11 26:20 27:4
28:18,21,22 29:23 30:2
32:13,22

**related**
16:6 20:6,13 65:18

**relates**
39:7

**relating**
31:18

**relationship**
17:2 56:10

**release**
53:23

**relevant**
43:17

**rely**
11:9,17 64:6

**relying**
11:8

**remember**
5:18 19:1 29:11 55:16,18

**remove**
62:25

---

**repeat**
44:6,14

**reporter**
9:6

**represent**
10:20

**representative**
10:18 12:9 13:13,22,24
18:6 43:3

**representatives**
12:18

**represented**
33:19

**representing**
12:18,19

**requirements**
38:10

**resolution**
33:24

**resolutions**
27:9

**resolved**
24:7

**respect**
18:1 46:8 58:19 61:2

**responses**
26:5 27:2 62:7

**rest**
34:8

**retainer**
17:17

**review**
21:5

**reviewed**
21:1,2,6,7,10,15

**right**
7:6 10:2 13:2,18 15:1
17:24 18:11 19:24 20:4
22:18 24:19 27:18 29:19
34:23,25 35:3 38:1 39:18
40:6,15 41:5 42:11 44:5
45:8 55:25 57:22 65:23
68:2

**right-hand**
52:7

**role**
10:10,14,17 11:4,7,15
12:10

**room**
34:20

**Roth**
7:18 8:9,20 9:2,6,9,15,20
11:21 12:4 13:5,16,21
16:14 17:5 20:1,14,18,20
23:2 25:13,18 26:18
27:24 28:15 30:8,16
32:3,5,7,14,24 33:7,14
34:3,17 35:11,13,15
36:1,3,6,9 38:12 39:19
41:3,16,21 42:4 43:23
44:1,3,6,7,9,13,14,18,23
47:7,10,15,20,24 48:3,21
49:12 50:1,18 51:2,3
53:2,10 54:13,21 57:8,
13,16 58:5,7,13 59:15,17
60:6,14 61:1,8,11 64:5,
11,16,19 66:17 67:4 68:9

**rubber**
22:16 40:13

**Rule**
46:7 48:6

**Rules**
48:6

**ruling**
44:3

**run**
48:8

---

**S**

**sat**
34:11,20

**saw**
26:9

**saying**
36:3 47:23 49:14

**says**
27:9 28:10 31:17 42:21
43:3,9 46:6 48:5 52:13

**Scotland**
62:16

**screen**
67:23

**second**
20:21 28:25 64:19

**second-to-last**
52:20

**see**
7:8 16:9 21:6 22:1 26:2,8
27:15 28:8 31:20 42:18,
21 43:1,7,11,17 46:9
48:12 52:14,15,16,25
53:14 56:23 62:20,24
63:2,7,16 65:3

**seen**
20:24,25 26:5,10,16
37:19 38:6 46:22

**sent**
14:2

**September**
62:13 65:2

**service**
48:11,16

**Set**
25:25

**settle**
11:2,5 57:2,5,12 60:25

**settled**
19:8 23:7 24:8,22 25:1,7,
12,17 27:13 50:22 54:7,
18 55:4,14,20,21 59:2
61:14,15 63:19

**settlement**
11:11 12:1,6,7,11,14,17,
20 24:12 25:5 27:11,12
28:13,14,18 29:7 36:23
53:7,17 57:20 59:21
60:12,13,16 61:3 63:22
64:3

**settlements**
20:13 24:10,16 25:10,20
27:15,19 28:19,22 29:15,
23 30:3,5,7,10,13 50:7

**settling**
54:10

**seven**
56:7 62:24

**shaking**
22:8 46:23

**she's**

16:16 36:7

**Sheet**
63:11

**short-circuit**
22:10

**shouldn't**
41:14,19

**show**
20:21 25:21 37:14,24
38:20 39:17 43:21 44:21
45:25 46:15,24 50:24
59:19 60:20 62:3 63:10
64:22 67:18

**showed**
55:22

**showing**
48:25 53:7 63:14

**shown**
67:16,22

**sick**
19:21

**side**
22:8 46:23 49:21

**signature**
68:16

**signed**
17:17 26:22 53:6,15,23
54:23 64:24 66:11

**significant**
39:15 49:2,11

**similarly**
13:8

**sister**
6:11,17 7:2,5 9:21,23
10:1 14:15,19,21,22,25
15:16 18:5,20 19:19
23:17 29:9 31:3 35:8
42:8 53:24 54:4,18 55:4
56:2 57:1,25 58:15 66:16

**sister's**
15:3 42:11

**sister-in-law**
9:18 31:2

**sisters**
14:23

**sit**
22:9 25:16

**site**
42:23

**sites**
43:11

**somebody**
13:10 18:15 20:3 30:12,
15 31:25 44:4 59:9

**sorry**
9:22 11:3 21:13 26:17,19
27:17 28:15 30:23 31:13,
22 37:25 53:1,3 54:15
56:4,5,23,25 61:1 64:25
67:15

**sorts**
32:12

**sounds**
29:18

**source**
23:16 43:20

**Southern**
28:7 41:9,13 52:24 54:2
63:1,15,19,21,24

**specialist**
11:8

**specific**
42:23 43:11

**specifically**
23:19 40:11

**specification**
62:23

**spoke**
7:13

**spokespersons**
18:22

**stamp**
47:21,22

**started**
13:25 19:21 53:5

**states**
62:16

**statute**
48:7,16 65:8

**Step**

50:6

**Strategic**
11:1

**strike**
13:21 27:18

**stuff**
16:22

**submitted**
63:5,6

**subsequently**
55:23

**subsidiary**
37:18

**substance**
54:10,19

**suit**
12:16 19:12 45:14 55:9,
11

**suits**
24:10 33:25

**summary**
38:23 42:16 45:1 47:3
48:5 62:8 64:14,24 65:1

**Summit**
46:18

**Supplemental**
25:25

**supplier**
63:1

**support**
38:22

**supposed**
43:14

**sure**
5:23 11:4,24 12:14 33:2
39:4,22 42:15 47:12,14,
18 51:6,24

**surprise**
57:15,17

**surprised**
61:16,23

**swimming**
5:13

**sworn**
5:3

**T**
————————

**table**
12:25 13:10,15

**take**
6:18 10:3,9,21 18:15
26:2 32:16,18 45:8 46:6
47:5 49:21 50:6 60:11
64:8

**taken**
5:15 35:18 64:10

**talc**
19:10,16 23:6,20,21,24
24:6,15 25:5,9,17 28:1,3,
4,5,7,13,18,22 33:17,20,
25 37:18 39:11,23,25
40:2,5,9,12,19,21 41:7,9,
10,13,14,17,23 42:22
43:5,10,16,22 44:22
45:3,16,21 46:21 47:4
48:25 49:1,6,9,11,14,22
50:5,7,10,13,16,23 51:12
52:7,18,22,23,24 53:8,
24,25 54:1,2,7,11,19
55:5,6,15,22 57:3,7,11,
20 58:1,2,10,17,19,21,23
59:10,14,21,22 60:2,10,
16,21,22,24 61:3,6,10,
11,12,16,19 62:18,23
63:1,15,19,21,24 64:4

**talk**
21:25 30:12,14 33:9
36:25 37:4,10,11 66:14

**talked**
8:17,19,22 10:7 16:18
31:8 37:2,5 49:2 50:8
66:8,10

**talking**
6:15 7:21

**tank**
40:10,11

**Technical**
63:11

**television**
67:22

**tell**
5:12,22 8:5 9:17 18:2,19,
20,25 19:2,5,13 24:18
26:9 40:11 42:14 54:9

55:13 56:22,25 57:10
58:21

**tells**
61:13

**term**
29:14 30:10 39:1

**terms**
11:4 67:5

**testified**
5:4,19 43:4,10 59:12

**testify**
44:7,9

**thank**
25:23 46:25 48:3 51:3
64:9 68:6

**Thanks**
65:16 68:2

**Thanksgiving**
6:16 8:23

**there's**
12:13,19 14:23 27:15,24,
25 49:9 52:16 53:20

**they're**
26:3

**they've**
66:6,8

**thing**
12:12 19:7 50:24

**things**
6:13 7:16,20 11:2 15:6
19:21 21:8 22:10,20 40:8

**think**
6:16 8:24 10:5,17 11:4,7
12:13,17 13:3,13,17,18
17:21 26:11 31:22 32:11
35:2 36:1,4 40:20 49:20,
24 51:1,18 52:11 53:4
56:11 59:12 60:12 61:24
66:16

**thinking**
12:15 40:18

**thinks**
10:8

**thought**
34:13 62:1

**time**
6:14 7:11 8:19,22 21:7,
10,15 25:1 26:11 43:17
45:8 55:3,13 57:1 59:21
68:2

**times**
26:11 36:16

**Tire**
51:12

**today**
6:3 22:9 25:16 30:6

**today's**
37:11,20

**told**
19:7,12 34:10 37:5
45:13,20,24 48:19 49:5
54:18,22 55:3,4,9,18
56:18,19 59:1,2,7,9

**Tom**
46:2 51:7 63:6

**top**
42:21 52:13

**transcript**
9:10

**trial**
11:1

**True**
57:7 58:4 60:2

**trust**
42:2,6,8

**try**
5:23

**trying**
44:7,9,10

**Tunis**
68:13

**turn**
21:22 27:6 31:12 62:9
63:5,9

**Turning**
48:4

**Twelve**
64:15

**twice**
14:22 36:17

**TWLP2**
52:8

**two**
14:23 23:4,9

---

**U**

**uh-huh**
6:23 9:12 12:23 13:9,12
15:18 20:11,19,23 21:14,
24 22:4 23:13,15 24:5
25:4 26:4,21 27:14,17
28:2,9,20 31:19,21,24
33:11 35:7 36:12 40:25
42:20,25 43:2,6,8 46:3,5,
10 52:10,15 53:19 54:6
58:11,20 59:6,8 61:4
63:17,20

**unable**
43:21 44:21

**underlying**
6:5 18:17 19:15 27:11
32:1,8 65:19

**understand**
5:22,23 9:3 33:8 39:14
54:8 55:12

**understanding**
6:4 10:10,24 17:8 24:2,6
25:17 38:8 39:7 41:1,8
49:8 50:12 53:4 54:3
65:6

**unfairness**
44:10

**update**
36:18

**upper**
52:6,7

**use**
55:17

---

**V**

**Vanderbilt**
28:6 41:10 52:24 54:1

**various**
46:20

**verification**
26:20 66:12

**versus**
32:8 65:3

**Victor**
38:4

**view**
12:9

**voluntary**
52:16

---

**W**

**wait**
35:9

**waived**
68:16

**want**
5:23 31:14

**wanted**
10:3 16:20,21 30:12
57:2,12

**wasn't**
16:15 25:19

**way**
14:12 30:23 32:16,18
50:6 66:24,25

**we'll**
48:2 58:9 64:12

**We're**
68:3

**we've**
57:19 61:14

**week**
21:6,11,12,13,16 22:15
26:13 36:25 37:2

**welcome**
68:7

**went**
10:6 34:19

**weren't**
7:9

**what's**
10:22,24 25:21 31:22
36:18 37:14 38:20 56:18
59:19 62:3 64:6,22

**White**
63:1

**William**
38:4 45:19 46:4,8 48:9

**Williams**
5:2,7 21:23 26:3 29:4
33:6 38:3,25

**Williams'**
32:9

**willing**
10:8

**withdrawn**
7:9 15:5 24:2 29:13
32:19 37:10 40:21 41:6
47:1 59:3,20 60:15 61:2
64:25 65:1,7,10

**witness**
9:5,12,14 20:19 22:8
26:19 32:6,10 38:5 43:9
44:5 46:23 53:3,9 54:15
64:9 66:19 67:18 68:16

**witnesses**
22:13 43:15

**woman**
16:10

**words**
6:5 39:10,16 54:9,18
55:16,17

**work**
39:25 42:23 43:11

**worked**
22:16 39:22 40:1,4,5,14
43:4

**Workers**
51:12

**working**
42:1

**works**
16:11

**wouldn't**
49:20 58:14

**written**
62:15

**wrong**
34:23 36:7 51:15

**wrongful**
48:9

---

**Y**

**yeah**
6:8 12:24 15:21 19:18
35:23,24 36:9 37:22 39:3
43:13 44:14 50:24 61:12,
21,22 64:16 67:15 68:5

**year**
6:16 7:17 8:24 23:4,9,14
24:3 26:12 36:17

**years**
18:24 27:20 39:14 40:23
42:1 56:8 61:14 62:24

**Yep**
43:19 52:16

**yesterday**
7:11 8:3 16:12 67:5,21

**you'd**
45:9

**you're**
6:3 9:3 18:6 49:14,24
68:7

**you've**
7:4 9:7 15:7 22:15 42:5

**young**
22:19