Exhibit AA

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 2:11-cv-01754-JLL-JAD


KIMBERLEE WILLIAMS, et al.,
        Plaintiffs,

    vs.

BASF CATALYSTS, LLC, et al.,
        Defendants.


------------
Friday, February 23, 2018
------------


Stenographic Transcript of Special
Master Conference, taken at the law offices
of Ballard Spahr, 1735 Market Street, 48th Floor,
Philadelphia, PA, before Robert J. Boccolini,
Certified Court Reporter, on the above date,
commencing at 10:05 a.m., there being present:


BALLARD SPAHR, LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002
BY:  ROBERTO RIVERA-SOTO, ESQ.
     SPECIAL MASTER
     WILLIAM P. REILEY, ESQ.


- - - - - -

TATE & TATE
Certified Court Reporters
The Ironstone Village
520 Stokes Road, Suite C-1
Medford, New Jersey  08055
(856) 983-8484 - (800) 636-8283
www.tate-tate.com

| USDC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Friday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Special Master Conference | February 23, 2018 |

Page 2

```
 1    APPEARANCES CONTINUED:
 2

            COHEN, PLACITELLA & ROTH, PC
 3          Two Commerce Square, Suite 2900
            2001 Market Street
 4          Philadelphia, PA  19103
            BY:  CHRISTOPHER M. PLACITELLA, ESQ.
 5               HARRY M. ROTH, ESQ.
                 MICHAEL COREN, ESQ.
 6               ROBERT PRATTER, ESQ.
                 JARED M. PLACITELLA, ESQ.
 7               ERIC S. PASTERNACK, ESQ.
            Attorneys for Plaintiffs
 8
 9          KIRKLAND & ELLIS, LLP
            655 Fifteenth Street, N.W.
10          Washington, D.C.  20005-5793
            BY:  PETER A. FARRELL, ESQ.
11               EUGENE F. ASSAF, P.C.
                 DANIEL A. BRESS, ESQ.
12               ELIZABETH DALMET, ESQ.
                 RONALD ANGUAS, ESQ.
13          Attorneys for Defendant BASF Catalysts, LLC
14
            PEPPER HAMILTON, LLC
15          3000 Two Logan Square
            18th and Arch Streets
16          Philadelphia, PA  19103
            BY:  BARRY H. BOISE, ESQ.
17               NINA M. GUSSACK, ESQ.
                 ROBERT L. HICKOK, ESQ.
18          Attorneys for the Cahill Defendants
19
            CAHILL, GORDON & REINDEL, LLP
20          80 Pine Street, #17
            New York, NY  10005
21          BY:  THORN ROSENTHAL, ESQ.
22
            SNEHA DESAI, ESQ.
23          VINCENT J. MONTALTO, ESQ.
            MATTHEW LEPORE, ESQ.
24          BASF Catalysts, LLC
25
```

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Friday
C.A. No. 2:11-cv-01754-JLL-JAD      Special Master Conference      February 23, 2018

Page 3

```
 1    TELEPHONIC PARTICIPANTS:

 2

            ROBINSON MILLER, LLC
 3          One Newark Center, 19th Floor
            Newark, NJ  07102
 4          BY:  JUSTIN T. QUINN, ESQ.
            Attorneys for Defendant BASF Catalysts, LLC
 5

 6          HEROLD LAW
            25 Independence Boulevard
 7          Warren, NJ  07059
            BY:  ERIC TUNIS, ESQ.
 8          Attorneys for Defendant Thomas D. Halket

 9

            MARINO, TORTORELLA & BOYLE, PC
10          437 Southern Boulevard
            Chatham, NJ  07929
11          BY:  JOHN A. BOYLE, ESQ.
            Attorneys for Defendant Arthur A. Dornbusch

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| USDC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Friday |
|---|---|---|
| C.A. No. 2:11-cv-01754-JLL-JAD | Special Master Conference | February 23, 2018 |

Page 4

```
 1              SPECIAL MASTER:  Good morning, everyone.

 2   Let me welcome you all to the home of the Superbowl

 3   champion Philadelphia Eagles.  If anybody has

 4   something bad to say about them, don't.

 5              Let's get the appearances of counsel on

 6   the record, starting with the plaintiffs.

 7              MR. PASTERNACK:  Eric Pasternack, Cohen,

 8   Placitella & Roth.

 9              SPECIAL MASTER:  You're going to have to

10   speak up.  The room is a little --

11              MR. PASTERNACK:  Eric Pasternack, Cohen,

12   Placitella & Roth.

13              MR. PLACITELLA:  Chris Placitella.

14              MR. JARED PLACITELLA:  Jared Placitella

15   for plaintiffs.

16              MR. COREN:  Michael Coren for

17   plaintiffs.

18              MR. ROTH:  Harry Roth.

19              MR. PRATTER:  Robert Pratter,

20   P-R-A-T-T-E-R, for plaintiffs.

21              MR. ASSAF:  Gene Assaf for the

22   defendant, BASF.

23              MR. BRESS:  Dan Bress for BASF.

24              MR. FARRELL:  Peter Farrell for BASF.

25              MS. DALMET:  Elizabeth Dalmet for BASF.
```

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                  Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference                  February 23, 2018

Page 5

1              **MR. ANGUAS:**  Ronald Anguas for BASF.

2              **MR. LEPORE:**  Matt Lepore, BASF.

3              **MS. DESAI:**  Sneha Desai, BASF.

4              **MR. MONTALTO:**  Vince Montalto, BASF.

5              **MR. HICKOK:**  Robert Hickok for Cahill.

6              **MS. GUSSACK:**  Nina Gussack for the

7      Cahill defendants.

8              **MR. BOISE:**  Barry Boise for the Cahill

9      defendants.

10             **MR. ROSENTHAL:**  Thorn Rosenthal from

11     Cahill.

12             **SPECIAL MASTER:**  Okay.  And also

13     present is Will Reiley from our firm, as you already

14     know is the one who keeps me organized.   That is

15     whenever Mr. Assaf allows him to do that, which

16     segues into Mr. Assaf's letter of February 22nd --

17             **MR. TUNIS:**  I'm sorry, your Honor, there

18     are also counsel on the phone.  Eric Tunis on behalf

19     of Tom Halket.

20             **MR. BOYLE:**  John Boyle from Marino,

21     Tortorella & Boyle, on behalf of Arthur Dornbusch.

22             **SPECIAL MASTER:**  Anyone else?

23             **MR. QUINN:**  Jeffrey Quinn for BASF.

24     Good morning, your Honor.

25             **SPECIAL MASTER:**  Good morning.   My

Page 6

1    apologies.  I did not mean to forget you, but I did.

2                    In any event, I assume everyone has seen

3    Mr. Assaf's letter of yesterday where he lists the

4    items that he thinks should be discussed, which are

5    the four motions that are actually before me, and

6    then he has a list of six other items that he thinks

7    we should discuss.

8                    I'm happy to do this in whatever order

9    you want.  But I had proposed doing the motions,

10   leaving the crime fraud slash Kozlov motion for last

11   and at that point address the items that are in Mr.

12   Assaf's letter of yesterday, if that's okay with

13   everybody, the idea being that by the end of doing

14   all the motions, everybody's going to be so tired

15   they'll be more agreeable about the last items in the

16   letter.  So if that's okay with everyone, why don't

17   we do that.

18                    Let us start with an easy one, which is

19   plaintiffs' motion for leave to supplement the

20   record.

21                    On February 20th, 2018, under ECF number

22   443, plaintiffs filed a motion for leave to

23   supplement the record to add the April 16, 1983,

24   deposition transcript of Peter N. Gale, G-A-L-E.

25   They claim that the Gale deposition presents, one,

USDC, District of NJ             Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference                February 23, 2018

Page 7

 1    that Mr. Gale was the third Engelhard scientist

 2    saying that Engelhard and Cahill knew of evidence

 3    that the Emtal talc contained asbestos fibers;

 4    second, that it shows that the evidence existed when

 5    the Ashton affidavit attested that Johnson mine ore

 6    did not contain asbestos; third, it proves that BASF

 7    and Cahill sought to erase all record of Gale's

 8    testimony; fourth, proves BASF and Cahill attempted

 9    to destroy or suppress evidence; and five, it proved

10    that BASF and Cahill have not produced the documents

11    identified in the Gale deposition.

12              On February 21, 2018, under ECF number

13    445, BASF filed its opposition.  They first suggest

14    that the motion to supplement the record is improper,

15    that plaintiffs have had the Gale transcript for a

16    long period of time, and also adds on for good

17    measure that the reply brief that plaintiffs filed

18    should be suppressed.

19              Mr. Placitella, who is going to speak to

20    this?

21              MR. PLACITELLA:  I will, your Honor.

22              SPECIAL MASTER:  Thank you.

23              MR. PLACITELLA:  In our original brief

24    to the Court that was filed in November and then in

25    our supplemental brief we had indicated that it was

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                    February 23, 2018

Page 8

1    our understanding that the Gale deposition did not

2    exist.  And after filing our supplemental brief, we

3    discovered in the production of Johnson & Johnson,

4    which was made I think on November 17th, which is

5    after our initial brief was filed --

6              SPECIAL MASTER:  But before your reply

7    brief was filed.

8              MR. PLACITELLA:  But before the reply

9    brief was filed, that the deposition was there.

10             SPECIAL MASTER:  Well, answer me this

11   then.  If you didn't have the Gale deposition in

12   hand until 15 days after you filed your initial

13   moving brief on the crime fraud exception, how do you

14   account for the two separate references to the Gale

15   deposition that appear in your brief?

16             MR. PLACITELLA:  Well, we believe that

17   it was taken.  We just didn't have the brief itself

18   and --

19             SPECIAL MASTER:  I'm sorry, you didn't

20   have the transcript.

21             MR. PLACITELLA:  The transcript itself.

22             SPECIAL MASTER:  Well then how do you

23   make a representation as to what the transcript stood

24   for, which you did twice again on pages 11 and 16 of

25   your initial brief?

Page 9

1          **MR. PLACITELLA:**  Well, he was deposed on

2    two separate occasions inside the Westfall case.

3    Once he was deposed because he was listed as an

4    expert and there was a squabble between the

5    plaintiffs' lawyers and Engelhard, so he was deposed

6    then.  And then he was deposed a second time.

7          We knew -- or we believed he was deposed

8    based upon documents where he was copied on things.

9          And if you look in the transcripts of

10   Hemstock and Triglia, they talk about information

11   that Mr. Gale had in his files.  But we believed

12   that deposition no longer existed.

13          In fact, when I took Mr. Steinmetz's

14   deposition in August, he in fact indicated that BASF

15   did not have a copy of the transcript.  He questioned

16   whether the transcript was ever --

17          **SPECIAL MASTER:**  Ordered.

18          **MR. PLACITELLA:**  -- whether the

19   deposition was ever even taken based upon the

20   information he had.  He actually said that.

21          So frankly, we've been running pretty

22   hard on this case trying to keep the schedule that

23   the Court has allotted to us and that we've imposed

24   on ourselves.

25          There's hundreds of thousands of pages

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 10

1    of production that were made on an ongoing basis.   In

2    the perfect world, we would have seen it on November

3    17th.  But it's not a perfect world.   And we

4    discovered it recently.

5          And frankly, we thought we had a duty of

6    candor to the Court to tell you that we were wrong,

7    because we were wrong.   And we had made the

8    allegation that the deposition no longer existed,

9    when in fact it did exist.

10         It didn't exist in the files of BASF.

11    It didn't exist in the files of Cahill.  But it did

12    exist in the files of Johnson & Johnson.

13         It's significant because in 1979, in the

14    early part of the 1979, after getting a lot of

15    information and lot of testing results, Engelhard

16    decided to do a thorough assessment of its own mine.

17    Mr. Gale traveled to the mine, along with Dr.

18    Hemstock.  Dr. Hemstock says that it was at his

19    insistence that they did that.   They wanted to

20    characterize what was in the mine.

21         And what happened then was they went up

22    and they took rock samples from two levels of the

23    mine that they were currently exploring.  There were

24    multiple levels of the mine.

25         They then brought those rock samples

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.              Friday
C.A. No. 2:11-cv-01754-JLL-JAD           Special Master Conference           February 23, 2018

Page 11

1    back.  Mr. Gale then went to Georgia Tech, actually

2    used their equipment because it was very

3    sophisticated, and he made notes, he drew

4    conclusions, he determined that there was in fact

5    asbestos in the mine.

6                That's significant for a number of

7    reasons, which we'll spend some more time on in crime

8    fraud.

9                But there were representations made by

10   Engelhard through Mr. Ashton and others that there

11   was no evidence of asbestos in the mine.  Yet we had

12   Mr. Gale, the geologist and the head scientist,

13   finding asbestos in the mine.

14               It's significant because -- and we'll

15   talk about it a little more later -- in Ashton's

16   affidavit he cites to a deposition transcript from

17   the Westfall case.  That is the deposition

18   transcript of their expert, Chidester.

19               So clearly Engelhard and Ashton were

20   referring to stuff that went on inside the Westfall

21   proceedings.  They cited to Chidester's deposition

22   and completely ignored or did not include depositions

23   of their own scientists that came to opposite

24   conclusions.

25               **SPECIAL MASTER:**  So to -- I don't mean

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Friday
C.A. No. 2:11-cv-01754-JLL-JAD      Special Master Conference      February 23, 2018

Page 12

```
 1   to short-circuit you, but I'm going to.

 2             MR. PLACITELLA:  Please.

 3             SPECIAL MASTER:  Your argument basically

 4   is the information is relevant and material.

 5             MR. PLACITELLA:  Yes.

 6             SPECIAL MASTER:  There are, if not

 7   necessarily exceptional circumstances, at least

 8   sufficient circumstances to justify the delay in

 9   presenting it as part of the application.

10             MR. PLACITELLA:  Yes.

11             SPECIAL MASTER:  And that it should be

12   considered and given whatever weight is appropriate

13   to it.

14             MR. PLACITELLA:  That's absolutely

15   correct.  And Jared reminds me that we actually

16   didn't locate it until after we filed the reply

17   brief.  Whether we should have seen it sooner, that's

18   on us.

19             Now, I do want to address a couple of

20   things as relates to this.  BASF in their

21   reply indicated that --

22             SPECIAL MASTER:  You mean their

23   opposition.

24             MR. PLACITELLA:  Their opposition

25   indicated that, well, it kind of proves that the --
```

Page 13

1    it goes against the plaintiffs' statements that

2    spoliation and destruction of documents happened.

3              But actually, if you look at the

4    transcript itself, it actually proves the point.

5              SPECIAL MASTER:  You're now going to the

6    weight of the evidence.

7              MR. PLACITELLA:  I'm happy to stop

8    there.   I was just responding --

9              SPECIAL MASTER:  I'm happy for you to

10   stop there.

11             MR. PLACITELLA:  Okay.  And I won't

12   respond to that unless Mr. Assaf addresses it.

13             MR. FARRELL:  Thank you, your Honor.

14   Peter Farrell for BASF.

15             SPECIAL MASTER:  Good morning, Mr.

16   Farrell.

17             MR. FARRELL:  Good morning.  So a

18   couple of points in response.   We obviously have no

19   objection to the plaintiffs correcting the mistake in

20   their brief.  And we appreciate the fact that they

21   brought their mistake to the Court's attention.

22             Our concern is with the effort to

23   supplement reply materials which were themselves

24   improper.

25             SPECIAL MASTER:  Well, we're going to

Page 14

1 get to that later.

2     **MR. FARRELL:** I understand that. But

3 that was the real heart of our objection is that the

4 reply itself was improper. And so an effort to

5 supplement something that was improper is now into

6 two layers of improper additions to the record in our

7 view.

8     **SPECIAL MASTER:** But isn't it fair to

9 say, Mr. Farrell, that if they had had this

10 information before they filed their crime fraud

11 motion on November the 2nd of 2017, they would have

12 included it? Certainly given the amount of paper I

13 have in front of me, no one felt shy about adding

14 exhibits to this record.

15     **MR. FARRELL:** It's not a function of

16 adding exhibits to the record. Plaintiffs used

17 exhibits in their opening brief. Maybe they would

18 have used it if they had known about it at the time.

19     And BASF properly used exhibits in its

20 opposition brief.

21     **SPECIAL MASTER:** But I think you're

22 conflating -- and maybe you need to. But I think

23 you're conflating two different issues. One is the

24 propriety of a motion for leave to supplement the

25 record as opposed to your objection to the reply

Page 15

1   brief in and of itself in whatever format, whether

2   supplemented or unsupplemented.

3        **MR. FARRELL:**  I think that raises your

4   Honor's point earlier about whether there's an

5   explanation or excuse here that justifies the late

6   notice of this transcript.

7        And on that score, I would note that the

8   production from Johnson & Johnson still has not been

9   produced to BASF by the plaintiffs.  If it had been

10  produced by the plaintiffs to BASF on I believe

11  November 17th was the date Mr. Placitella cited, we

12  would have cited the Gale deposition in our

13  opposition brief.

14       And I'm not certainly not suggesting

15  that anything intentionally was withheld or done

16  improperly.

17       But the point is we're now hearing

18  there's an explanation that justifies supplementation

19  after the reply brief when we were denied the

20  opportunity to address materials that the plaintiffs

21  had weeks before our opposition brief was due.

22       I also obviously disagree with Mr.

23  Placitella on the import of the document.  And I

24  don't want to get ahead of ourselves and start

25  talking about the merits.

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                   Special Master Conference                    February 23, 2018

Page 16

1          I would note that we did explain in our

2     papers why we think that this deposition transcript

3     certainly helps BASF in further proving that there

4     was no improper spoliation.  But I don't see how it

5     carries any weight for the plaintiffs.  And the one

6     example we cited --

7               SPECIAL MASTER:  Well then why are you

8     objecting to supplementing the record if you think it

9     helps you and hurts them?  I don't understand the

10    logic of that.

11              MR. FARRELL:  The issue is the argument

12    that is included in their supplementation papers and

13    the fact that it is being packaged with the Appendix

14    E and frankly the Appendix D that were included with

15    plaintiffs' reply brief, both of which we thought

16    were themselves improper.   And that is really the

17    heart of the objection that we have.

18              SPECIAL MASTER:  You're not alone in

19    thinking that.  But we'll get to that later.

20              MR. FARRELL:  Thank you, your Honor.

21              SPECIAL MASTER:  Anything else, Mr.

22    Placitella?

23              MR. PLACITELLA:  No, your Honor.

24              SPECIAL MASTER:  I understand the

25    procedural objections that BASF has propounded in

Page 17

1    respect of this application.

2                      However, as I've told counsel before, it

3    seems to me that the determination of plaintiffs'

4    crime fraud slash Kozlov exceptions motion is one

5    that goes to the very core of this case, and that is

6    going to be given a fair amount of attention.  And

7    anything that is out there that might be helpful to

8    the determination of that motion is something I'm

9    going to want to hear.

10                     So I'm going to grant the motion to

11   supplement the record.  But that's it.   The record

12   is now supplemented by it.  You don't get to file

13   another brief arguing what it says.

14                     And while we're on the topic of briefs,

15   I want every lawyer in this room to remind me the

16   next time that somebody asks for leave to file an

17   over-length brief that it's denied presumptively.

18                     Having gone through all of these papers,

19   and when my wife called last night at 11 o'clock

20   wanting to know where I was, and I was still

21   preparing for today, it doesn't help your cause.

22                     I will remind you of Mark Twain's line

23   where he said:  Please forgive the length of this

24   letter.  I didn't have the time to write you a short

25   one.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD           Special Master Conference              February 23, 2018

Page 18

```
 1              Find the time to write a shorter one,

 2      please.

 3              So the motion for leave to supplement is

 4      granted limited solely to the acceptance of the Gale

 5      deposition, which is marked as Exhibit A to the

 6      moving papers.

 7              MR. FARRELL:  Your Honor, if I could

 8      just raise one issue, I'd appreciate the Court's

 9      ruling.

10              SPECIAL MASTER:  Sure.

11              MR. FARRELL:  It would just would be if

12      we could add to the Court's order that the materials

13      that have in fact been produced by Johnson & Johnson

14      or frankly any other party that's received a subpoena

15      by the plaintiffs, that those documents be produced

16      to the defendants as soon as possible.

17              SPECIAL MASTER:  This is the first I've

18      heard of that.  I don't think it should be necessary

19      for me to remind the very good lawyers who are in

20      this room that if you issue a third party subpoena

21      and you get documents in response that it's your

22      obligation to get copies of those documents to all

23      the other parties in the case.

24              MR. FARRELL:  Thank you, your Honor.

25              SPECIAL MASTER:  That is not an
```

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                              Friday
C.A. No. 2:11-cv-01754-JLL-JAD                   Special Master Conference                          February 23, 2018

Page 19

1    earth-shattering proposition.   So if there is a

2    problem with that, please bring it to my attention.

3    But that's pretty much pretty standard fare, guys.

4              One down.   Three to go.   How about we

5    turn to plaintiffs' motion for reconsideration.   Let

6    me start that one by setting it up, as I normally do.

7              On October 27, 2017, under ECF number

8    368, an order was entered that required the review of

9    the transcript of the Wengerd deposition to ascertain

10   what objections if any plaintiffs would continue to

11   press at the continued deposition of representative

12   plaintiff Wengerd that was ordered as part of the

13   that order.

14             The order specifically provided that at

15   least 10 days before the continued deposition that

16   list of objections was to be provided to counsel for

17   BASF and to me.

18             By an e-mail dated February the 9th,

19   2017, from Mr. Roth, he enclosed a copy of the letter

20   he had sent to Messrs. Assaf and Farrell listing 24

21   objections that plaintiffs would continue to press in

22   respect of the continued deposition of representative

23   plaintiff Wengerd and also attached a copy of the

24   transcript.

25             On February the 12th, 2017, BASF's

Page 20

1    counsel e-mailed a letter objection to 18 of the 24

2    assertions of privilege made by the plaintiffs.

3         On February the 14th, under ECF number

4    434, an order was entered overruling plaintiffs'

5    objections and ordering that representative plaintiff

6    Wengerd answer all 18 questions and advising that,

7    and I quote, any failure to abide by the terms of

8    this order shall be punishable as contempt, unquote.

9         On February 16, 2017 -- I'm sorry.

10    We're in 2018. All these dates starting with

11    February 9th are in 2018.

12         Under ECF number 442, plaintiff filed

13    this reconsideration motion raising four points.

14    First, that questions about the Williams case and not

15    the underlying case are subject of proper privilege.

16    And those would be questions 1, 2, 4, 7, and 22.

17    And the numbering is from Mr. Roth's original

18    February 9, 2018, letter.

19         Second, that question 5 is moot, as Miss

20    Wengerd actually answered it later on.

21         Third, the questions as to the mediation

22    that had been in this case before, questions 15 and

23    16, are privileged.

24         And fourth, that the questions as to

25    damages, which are questions 8, 12, 20, 21, and 23,

Page 21

1    also are privileged

2              That same day -- and I remind everyone

3    that February the 16th was a Friday -- I sent an

4    e-mail to everyone asking that any opposition to

5    plaintiffs' reconsideration application be filed by

6    February 21st, quote, so that it can be argued with

7    the other pending motions on Friday, February 23,

8    2018, unquote.

9              On February 17th, Mr. Roth impressed

10   everyone by telling us he was working on a Saturday,

11   and he requested that I, quote, modify the response

12   schedule so we can have a ruling before plaintiff

13   Wengerd's February 21, 2018, deposition.

14             I will note that that was the first time

15   I was advised that the deposition was occurring on

16   February 21.

17             **MR. ROTH:**  Actually, I hate to disagree

18   with your Honor --

19             **SPECIAL MASTER:**  I know you want to

20   disagree we me.  But I will tell you that I have with

21   me your February 9 e-mail with your letter, neither

22   of which says the deposition is occurring on February

23   21.

24             **MR. ROTH:**  Your Honor e-mailed me back

25   about 20 minutes later to ask when the deposition was

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                  Special Master Conference                              February 23, 2018

Page 22

1    taking place.   And I responded with an apology,

2    saying I apologize for not mentioning it in my

3    initial letter, the deposition is taking place on

4    February 21st.

5                    And that happened on February 9th, your

6    Honor.

7                    **SPECIAL MASTER:**  Okay.

8                    **MR. ROTH:**  I think as we work our way

9    through this, and I hope the blood is not showing,

10   but there's been a lot that's happened since then.

11                   **SPECIAL MASTER:**  You redeemed yourself

12   later on, Mr. Roth.   I'm getting there.

13                   **MR. ROTH:**  Okay.

14                   **SPECIAL MASTER:**  On that same day, I

15   sent an e-mail to Mr. Roth denying the modification

16   of the response schedule.

17                   Again that same day Mr. Roth sent an

18   e-mail saying that they would just simply reschedule

19   the Wengerd deposition.

20                   That evening Mr. Farrell sent an e-mail

21   objecting to the rescheduling of the deposition of

22   representative plaintiff Wengerd.

23                   I note all of this is on a Saturday.

24   And let me also say that in those e-mails everybody

25   was apologizing for interfering with my weekend.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 23

1              Let me repeat again what I've said

2    before.   I am here to help you get to where you need

3    to be.   And as you can tell, I do read your stuff in

4    real time and I try to respond in real time.   So you

5    don't need to apologize for doing your job.

6              So in the future, just assume that I'm

7    going to add words at the beginning of whatever

8    communication you have that say I'm really sorry for

9    being a pain and just skip that and just go on to the

10   subject matter.

11             The next day I got an e-mail from Mr.

12   Roth responding to Mr. Farrell's objections.

13             I then sent an e-mail to both Messrs.

14   Roth and Farrell explaining the procedural posture of

15   this matter.

16             On the 20th I received an e-mail from

17   Mr. Roth advising that the parties have agreed to

18   adjourn the Wengerd deposition.

19             Quite frankly, that's exactly what the

20   parties should have done without any intervention.

21             That same day I sent an e-mail to Mr.

22   Roth talking about what the limited issues were and

23   discussing his proposal for a Federal Rule of

24   Evidence 502(d) order.

25             On February 21, under ECF 444, BASF

Page 24

1    filed its response, advising that the plaintiffs had

2    agreed to withdraw most of their motion for

3    reconsideration.  The only issues that remained were

4    questions 1 and 5 and 9 and 22.  And basically

5    BASF's objection is that plaintiffs had failed to

6    meet the reconsideration standard that is in local

7    Civil Rule 7.1(i).

8                    Mr. Roth, are you going to be speaking

9    to this?

10                   **MR. ROTH:**  Yes, your Honor.  I was

11   going to say Mr. Coren will, but we did that the last

12   time.

13                   **SPECIAL MASTER:**  He took a beating over

14   this before.

15                   **MR. PLACITELLA:**  I thought I took the

16   beating.

17                   **SPECIAL MASTER:**  You deserved the

18   beating.  There's a difference.

19                   **MR. PLACITELLA:**  Not the first time.

20                   **MR. ROTH:**  I think your Honor's sized up

21   where the parties are in you are e-mail of February

22   22nd.

23                   And to the extent there are issues with

24   respect to privilege, it is regarding communications

25   in the Williams case.

Page 25

1          Mr. Assaf actually summarized where we

2    were pretty well I think in his February 22nd letter.

3    When Miss Wengerd's deposition was adjourned, we did

4    take the deposition of another class

5    representative --

6          **SPECIAL MASTER:**  Miss Holley.

7          **MR. ROTH:**  -- Miss Holley that

8    continued.  Mr. Assaf and I had, without the Court's

9    intervention and any e-mails over any long holiday

10   weekends that I'm no longer apologizing to, although

11   I thought my last e-mail apologized to everybody, not

12   just your Honor, were able I think to navigate the

13   issues of the privilege.

14          Our position is that any communication

15   between a class representative and their lawyers in

16   the Williams case, which would be Cohen, Placitella &

17   Roth, or Jeff Pollock from Fox Rothschild, is

18   privileged.

19          **SPECIAL MASTER:**  I got that.  But my

20   problem is what about those instances where Mr. Bevan

21   was also present?  He's not acting as counsel.

22   Doesn't that destroy the privilege?

23          **MR. ROTH:**  In our view it does not

24   destroy the privilege.

25          **SPECIAL MASTER:**  Why not?

Page 26

1        **MR. ROTH:**  Because there's two -- I

2  mean, he's still their counsel in certain ways, your

3  Honor.  And the divide that Judge Linares recognized,

4  the limited waiver, relates to communications with

5  Mr. Bevan and his clients and the facts he was told,

6  decisions and recommendations he made in the

7  underlying cases.

8        We agree to the -- the issues -- or the

9  conversations that have been put in issue is what he

10  knew, what he told his clients, and what

11  recommendations he made to his clients in the

12  underlying cases.

13        **SPECIAL MASTER:**  In respect of the

14  disclosure or non-disclosure of documents or

15  information by BASF.

16        **MR. ROTH:**  At that point he would not

17  have known whether things were not disclosed.

18        **SPECIAL MASTER:**  Right.  But he now

19  does, since your client had put that matter at issue.

20        **MR. ROTH:**  Right.

21        **SPECIAL MASTER:**  Chief Judge Linares has

22  said very clearly that because it is at issue, you

23  cannot claim privilege.

24        So if you've got somebody in the room in

25  respect of whom you cannot claim privilege, doesn't

Page 27

1    he serve to destroy the privilege because he is an

2    outsider?

3              **MR. ROTH:**  With respect to the

4    underlying claims, we cannot prove privilege -- we

5    cannot claim privilege.

6              With respect to counsel, he may have

7    given them about -- you know, they say to him:  Mr.

8    Bevan, you know, Placitella, Coren and Roth, you

9    know, should I do something here?

10             That, your Honor, is privileged.

11   That's legal advice that they are seeking.  They

12   still have a legal relationship with him.  That is

13   not --

14             **SPECIAL MASTER:**  I don't know how that's

15   legal advice.  Should I do something with them?  That

16   doesn't help.

17             **MR. ROTH:**  Fair enough, your Honor.

18   Should I go forward in a class action arising from

19   what they describe occurred here?  Mr. Bevan, how

20   long will this case go?  Mr. Bevan, is there -- you

21   know, what do I do as a class representative?

22             I don't know that he's had any of those

23   conversations.  But to the extent that he has had

24   them, those are privileged and those are not waived.

25             **SPECIAL MASTER:**  I agree with you --

Page 28

1          **MR. ROTH:**  Right.

2          **SPECIAL MASTER:**  -- to a degree.   My

3    problem is I'm dealing with a very truncated record,

4    because I have a question, for example, question

5    number 1, and the colloquy appears on the deposition

6    transcript at page 12, lines 5 to 23.

7                     Question:  And what was the nature of

8    that communication?

9                     That's subject matter.   And

10   attorney/client privilege was interposed.

11                    Then the question became:  Did you speak

12   to Mr. Bevan on Tuesday about the Williams case or

13   something else?

14                    That's not privileged.   Okay.   That's

15   not asking for advice.   Did you discuss a certain

16   subject matter?  That's not privileged.

17                    But you got an attorney/client

18   privilege.

19          **MR. ROTH:**  Well, because what was the

20   substance of that -- what was the nature of that

21   conversation, your Honor, is a question that could

22   yield an answer that is attorney/client privilege.

23          **SPECIAL MASTER:**  Only if you go further,

24   because if the answer is we discussed the Williams

25   case, then you've got a privilege.  But if the answer

Page 29

1    is we discussed my original claim that I settled or

2    otherwise disposed of based upon the information that

3    I got, that's been waived.   So I don't know enough.

4              **MR. ROTH:**   And I think this is why --

5    one of the challenges in looking at the questions

6    that are listed here and even in the letter attaching

7    the appendix, there's ambiguity in terms of the way

8    the questions are asked.   There is agreement about

9    the nature of information that can be revealed.

10             If my client is asked what was the

11   nature of the communication, I think all of us know,

12   it's not always clear what a client -- how a client

13   is going to answer a question, in my view that risks

14   revealing attorney/client communication.

15             Did you speak with Mr. Bevan on Tuesday

16   about the Williams case or something else, you know,

17   that question is not attorney/client privilege.

18             **SPECIAL MASTER:**   But an assertion was

19   made.

20             **MR. ROTH:**   Well, I'm moving past these

21   four questions, which I don't expect would be

22   repeated in this way, your Honor.

23             And the example of the Holley deposition

24   that we took on the 21st, you know, I think reflects

25   the success of how we were able to work this out.

Page 30

 1   The issue is not so much --

 2            SPECIAL MASTER:  So let me just make

 3   sure I understand.

 4            MR. ROTH:  Yeah.

 5            SPECIAL MASTER:  What you're telling me

 6   is, without telling me, that if we get to the

 7   continued deposition of representative plaintiff

 8   Wengerd and a more artful question is presented on

 9   this subject matter, she will be allowed to answer

10   it?

11            MR. ROTH:  Yes, your Honor.

12            SPECIAL MASTER:  Okay.

13            MR. ROTH:  We spent a fair amount of

14   time on this, Mr. Assaf and I.  And, you know, again,

15   the questions which we've used here, because we had

16   to identify 10 questions, really are a reflection.

17   The issue is what's the --  because there may be a

18   question that we object to because it is inartful or

19   we think it's --

20            SPECIAL MASTER:  Because it is what?

21            MR. ROTH:  Inartful or raises the

22   prospect of revealing an attorney/client privilege.

23   What we know and what we are not --  well --

24            SPECIAL MASTER:  Well then isn't it your

25   objection an objection to the form of the question

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                         Friday
C.A. No. 2:11-cv-01754-JLL-JAD                 Special Master Conference                          February 23, 2018

Page 31

1    instead of asserting the privilege?

2                **MR. ROTH:**  If the question is -- in my

3    view, if the question is what was the nature of that

4    communication, I'll object and say that raises the

5    risk of attorney/client privilege.   If the question

6    is did you speak to Mr. Bevan --

7                **SPECIAL MASTER:**  See, I don't agree with

8    you on that.   I don't agree.   I even think that as

9    open-ended a question as what was the nature of that

10   communication is asking for the topic, not for what

11   was discussed.

12               **MR. ROTH:**  To me that question is what

13   did you talk about with Mr. Bevan.

14               **SPECIAL MASTER:**  What did you talk

15   about, yeah.

16               **MR. ROTH:**  Well, so what did you talk

17   about is --

18               **SPECIAL MASTER:**  We talked about the

19   Williams case, period.

20               **MR. ROTH:**  Okay.

21               **SPECIAL MASTER:**  And at that point

22   that's a hard stop.   But if the answer is we talked

23   about what happened in my prior case --

24               **MR. ROTH:**  There's no dispute about

25   that.

Page 32

1              **SPECIAL MASTER:**  How do we know that

2  unless the witness is allowed to answer?

3              **MR. ROTH:**  So I'm agreeing with you,

4  your Honor.

5              **SPECIAL MASTER:**  Okay.

6              **MR. ROTH:**  And I agree with Mr. Assaf

7  about that.  And that's the substance of it.

8              I mean, the testimony that we --  the

9  questions that we would object to are those that

10  impugn the attorney/client privilege that exists in

11  the Williams case, period.

12              To the extent that it's the underlying

13  case, to the extent it's conversations or why did you

14  make a decision about -- you know, why did your

15  mother make a decision to settle her underlying case,

16  there is no objection.

17              When it was close, one of two things

18  happened in the Holley deposition.  Mr. Assaf

19  rephrased his question or I objected, advised the

20  client that this is something I would not allow you

21  to answer, and we agreed on a 502 -- that it would be

22  under a 502 order if the issue had to be resolved.

23              So, you know, I think in large measure

24  we have worked out --

25              **SPECIAL MASTER:**  We have detente here.

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Friday
C.A. No. 2:11-cv-01754-JLL-JAD    Special Master Conference    February 23, 2018

Page 33

1   You've agreed on the rules on which you're going to

2   proceed --

3          **MR. ROTH:**  I think we've agreed on the

4   rules on the road, your Honor.

5          **SPECIAL MASTER:**  -- short of mutually

6   assured destruction.

7          **MR. ROTH:**  Well, when you're sitting

8   there with an order that tells you you're going to

9   run the risk of contempt --

10          **SPECIAL MASTER:**  It does have a salutary

11   effect, doesn't it?

12          **MR. ROTH:**  And I don't want to find

13   myself in the middle of a deposition where I'm in

14   good faith asserting an attorney/client privilege on

15   Williams communication to come back and be told I've

16   wasted their time and money going to Cleveland to

17   take Miss Wengerd's deposition, I've wasted your

18   Honor's time, and I'm writing all of these from

19   some -- I don't know where you put people in civil

20   contempt these days.

21          But I wanted to avoid all of that.  So

22   I think we've worked out the process.

23          With respect to the other questions,

24   your Honor, there are questions about damages for

25   which we will make our objection, we will not

Page 34

1    instruct witnesses not to answer.  Frankly, some of

2    these just seem improper.

3              **SPECIAL MASTER:**  But I'm sure that if

4    the question is improper because of form, you would

5    say I object to the form, it's misleading, this is

6    what I would suggest, because that's what good

7    lawyers do.

8              **MR. ROTH:**  Right.

9              **SPECIAL MASTER:**  And the good lawyer on

10   the other side is going to say thank you, let me ask

11   that question.

12             And they're going to do it not

13   necessarily because they agree with you, but because

14   that moves the deposition along.

15             **MR. ROTH:**  Right.

16             **SPECIAL MASTER:**  It's practical.

17             **MR. ROTH:**  Well, I try not to make a

18   speaking objection.  And then they're going to ask

19   the question that they want to ask.

20             And I think that we see the world

21   differently on the propriety of these questions, your

22   Honor, but some of them asking -- you know, the

23   example I gave in the letter, what would your mother

24   have been paid if there been an honest record,

25   there's no purpose in my view to that.

Page 35

1        **SPECIAL MASTER:**  I can see the purpose

2    to it.   But an answer of I have no idea would be

3    perfectly proper, too.

4        **MR. ROTH:**  Right.  But we're not seeking

5    reconsideration on those.

6        **SPECIAL MASTER:**  Well, let me just give

7    you a sense of where I'm coming from and maybe we can

8    reach agreement on how to do this.

9        As you've said, discussions by any of

10    the representative plaintiffs with Mr. Bevan about

11    the original cases, those are fair game.   That

12    privilege has been waived.

13        Discussions with Mr. Bevan about this

14    case are a little more problematical because Mr.

15    Bevan is not representing those plaintiffs in this

16    case.  So I don't know what the attorney/client

17    relationship is in respect of this case.  Somebody's

18    going to have to flesh that out for me at some point

19    if it becomes an issue.

20        Because of that, I'm troubled by

21    discussions between the Cohen, Placitella & Roth firm

22    and the representative plaintiffs where Mr. Bevan is

23    also a party to those discussions, because he is not

24    there to provide legal advice.  Cohen, Placitella &

25    Roth, counsel of record, are there to do that, which

Page 36

1    means he's a stranger to that conversation, which in

2    my book destroys the privilege, because you've

3    allowed a third party in.

4              I'm just telling you where I'm coming

5    from, okay, so that when you folks sit down and

6    retake this deposition, you understand that if you

7    get to a juncture where you reach an impasse and you

8    say:  Well, let's call the Special Master and have

9    him call the question, you understand where I'm going

10   to be coming from.

11             **MR. ROTH:**  The issue that you're

12   raising, your Honor, has not come up in the

13   questions.  It hasn't been briefed.

14             Frankly, we would demonstrate to you

15   that there's a common interest that applies here

16   under New Jersey law.  And when the time comes,

17   we'll brief that.

18             **SPECIAL MASTER:**  Mr. Bevan has no common

19   interest with anybody here.

20             **MR. ROTH:**  Well, I think that because

21   you and -- you know, and I've read Mr. Assaf's papers

22   where he is a fact witness in some regard --

23             **MR. ASSAF:**  A critical fact witness.

24             **MR. ROTH:**  Where he is, as Mr. Bevan

25   says, a critical fact witness --

Page 37

1                    **SPECIAL MASTER:**  Mr. Assaf says.

2                    **MR. ROTH:**  As Mr. Assaf says.  And Mr.

3        Bevan may say it too.

4                    But that does not eliminate the fact

5        that he also serves as their counsel in cases that

6        are going forward here.  And so --

7                    **SPECIAL MASTER:**  I'm sorry, I need you

8        to say that last little piece, in cases that are

9        going forward.

10                   **MR. ROTH:**  He is --

11                   **SPECIAL MASTER:**  Is he the counsel of

12       record for any cases on behalf of any of the

13       representative plaintiffs that are still going

14       forward?

15                   **MR. ROTH:**  Yes, your Honor.

16                   **SPECIAL MASTER:**  Which one?

17                   **MR. ROTH:**  Miss Holley.

18                   **SPECIAL MASTER:**  Miss Holley?

19                   **MR. ROTH:**  Yeah.  And I'm not sure about

20       others where there are bankruptcy claims that have

21       been filed that --

22                   **SPECIAL MASTER:**  Well, don't we need to

23       know that?

24                   **MR. ROTH:**  Sure.

25                   **SPECIAL MASTER:**  Okay.  And I think

Page 38

1    counsel for BASF is entitled to know that too in

2    order that they could properly gauge what objections,

3    if any, they can fight.

4              The net result of all of this -- and I

5    honestly don't think this merits that long of a

6    discussion.  And I don't think we really need to hear

7    from BASF in respect of this.

8              You know where I'm coming from.  I have

9    no doubt that now that everyone kind of understands

10   what the rules of game are, that you'll be able to

11   work these things out in the continued deposition of

12   Miss Wengerd and of anybody else, frankly, in this

13   case who might have similar claims.

14             When is her continued deposition going

15   to be taken?

16             **MR. ROTH:**  We've talked about March 6th.

17   I have some dates for Mr. Assaf for some other

18   clients.  But it's going to be lined up pretty

19   promptly.

20             **SPECIAL MASTER:**  Okay.  Good.  Well,

21   what I'm going to do is I'm going to deny the motion

22   for reconsideration without prejudice based on what

23   I've described here today.

24             But I fully expect counsel to work

25   cooperatively to work out any privilege objections

Page 39

```
 1   that may still exist in respect of the continued

 2   deposition of representative plaintiff Wengerd.

 3            If you get to an impasse, and I hope you

 4   don't, but if you do, you all have my phone number,

 5   so give me a call.  And if you get the voicemail, one

 6   of the bad things about the year of our Lord 2018 is

 7   that we're not untethered anymore.  Our system sends

 8   me an e-mail that tells me I have a voicemail that I

 9   can listen to from wherever I am.  So I can run from

10   you, but I cannot hide.

11            And again, do not be shy.  If you need

12   help getting through something, call me.   And don't

13   apologize for it.   That's what I'm here for.

14            MR. ROTH:  Thank you, your Honor.   As I

15   said, I think the example of the Holley deposition

16   proves that we can work this stuff out.

17            SPECIAL MASTER:  I have no doubt.   I

18   have no doubt.   You're all really fine lawyers.

19   This can be an acrimonious case.  But I'm hoping that

20   most of the acrimony has been expended in the prior

21   seven years and we can move on without it, since this

22   case next month will be seven years old.

23            MR. ASSAF:  Your Honor, I appreciate

24   your order.  And I'm not going to -- I've learned

25   enough that I'm not going to say anything.
```

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD           Special Master Conference           February 23, 2018

Page 40

1              But I do want to put a marker down.  I

2       don't want you to think that the Bevan issues are

3       going away.

4              I think the collateral issues that we've

5       already identified, I think five of the six of them

6       have to do with Mr. Bevan.  And so I think we're

7       going to come back to this issue because there are

8       complex issues regarding Mr. Bevan, what he knows and

9       when we're going to find it out.

10             **SPECIAL MASTER:**  I appreciate that, Mr.

11      Assaf.  But I guess my hope is that if we get to that

12      juncture, we get to it further down the pike, because

13      the evolution of this application was 24 assertions

14      of privilege, 18 objections, which meant that you

15      conceded that six of those were proper or perhaps you

16      didn't think they were worth the fight.  But either

17      way --

18             **MR. ROTH:**  I'll take the concessions,

19      your Honor.

20             **MR. ASSAF:**  It's the latter, your Honor.

21             **MR. ROTH:**  I think it's the first one

22      from Kirkland & Ellis.  I'll take them right now.

23             **MR. ASSAF:**  The first one since 2011.

24             **SPECIAL MASTER:**  Cherish it.  I don't

25      think you'll get many more.

Page 41

1          But it went from 24 to 18.  And it's now

2     four and -- not really four.

3          So if you guys could work your way to

4     that before you kind of throw your hands up and say,

5     okay, we can't really resolve it among ourselves,

6     that would be what I would be looking for.

7          **MR. ASSAF:**  Fair enough, your Honor.  I

8     appreciate that.  And I think we're aligned.  One of

9     the points in the letter and one of the points that

10    Mr. Roth and I discussed was actually getting a

11    little more of a record so that your Honor has a full

12    record and understands all the issues.

13          And so that's what we're trying to do.

14    And I think we're all aligned on that.

15          **SPECIAL MASTER:**  Okay.  And as you know

16    by now, if you send me something, I read it.

17    Sometimes I actually understand it.  So I'm here to

18    try to help you get there.

19          **MR. ASSAF:**  Thank you.

20          **MR. ROTH:**  Thank you, your Honor.

21          **SPECIAL MASTER:**  Two down.  Two to go.

22          Let's talk about plaintiffs' motion to

23    compel.  I'm going start a little bit differently

24    than the motion itself because this is a motion that

25    really refers back to an order that was entered on

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 42

1    October 27, 2017, under ECF 365, where the

2    application by plaintiffs seeking an order to compel

3    BASF to produce, and I quote, any indemnification,

4    forbearance, standstill, settlement, arbitration,

5    joint defense, or like agreements related to this

6    litigation or to this and similar litigations by and

7    between BASF and any or all of BASF's codefendants

8    was denied without prejudice, specifically because

9    the application was made in the absence of a showing

10   of particularized need.

11             Now, with that as backdrop, on January

12   24, 2018, plaintiffs filed ECF 414, which was their

13   motion to compel first a declaration by defendants as

14   to whether they will seek allocation of fault at

15   trial and the production of all documents regarding

16   any settlement or other agreement among defendants

17   that affect their liability to one another for claims

18   arising from the case.

19             Plaintiffs recognize that there are no

20   cross-claims asserted between the defendants.

21             They state that the denial in ECF 365

22   was based on a lack of knowledge as to the existence

23   of the agreements.

24             I'm not altogether sure that is correct.

25   I just read what the order provides.  And it says

Page 43

 1    that it's in the absence of a showing of

 2    particularized need.

 3              Plaintiffs ask that defendants be

 4    required to advise whether those agreements exist

 5    and, if so, to produce them.

 6              They say the agreements are probative of

 7    bias or motive.  They claim that, quote, if

 8    defendants have reached a settlement between them

 9    where they have agreed they will not seek

10    apportionment of fault at trial or will not point the

11    finger at one another, plaintiffs have a right to

12    know that, unquote.

13              Plaintiffs claim a particularized need,

14    saying that the settlements among defendants, quote,

15    could influence the record testimony being developed

16    and must be disclosed, unquote.

17              They assert that the documents are

18    needed for breach of duty claims.  I'm not sure what

19    claims are referred to there.

20              Specifically, plaintiffs argue four

21    separate things.

22              First, that the New Jersey Joint

23    Tortfeasor Contribution Act gives, quote, plaintiffs

24    the right to know whether defendants have agreed not

25    to blame one another at trial for the torts alleged

Page 44

1    or if they are not seeking contribution.

2                    And in support thereof, the plaintiffs

3    cite to Young versus Latta and Jones versus Morey's

4    Pier, Inc.

5                    Plaintiffs assert that, quote, BASF must

6    disclose any settlement releases or similar covenants

7    with its codefendants because plaintiffs have the

8    right to know whether it will seek apportionment at

9    trial, unquote.

10                   Second, they argue that the production

11   of settlement agreements should be compelled because

12   they may prevent BASF from invoking attorney/client

13   privilege and are probative of each defendant's bias.

14   They claim that it may lead to abolishing the

15   privilege under New Jersey Statute 2A:84A-20(2)(c).

16                   For those of you not in the know, that

17   is the New Jersey attorney/client privilege statute.

18   We're going to talk a little bit more about that

19   later.

20                   They say that the settlement agreements

21   are probative of bias and therefore there's a

22   particularized need because of the bias or are

23   necessary to establish some other material issue in

24   the case and that at the very least the settlement

25   agreements, if they exist, should be produced for in

Page 45

1    camera inspection.

2              On January 24, 2018, under ECF 415, BASF

3    filed a letter saying that the plaintiffs had failed

4    to satisfy the requirements of local Civil Rule 37.1

5    in respect of conducting a meet and confer.

6              And on February 5, 2018, under ECF 424,

7    BASF filed its formal opposition to plaintiffs'

8    motion to compel, asserting the following:  First,

9    plaintiffs' request was denied earlier and nothing

10   had changed, that the motion is really nothing more

11   than a request for reconsideration without satisfying

12   the reconsideration standards, and there was no

13   showing of particularized need.

14             Second, there is no waiver of the

15   attorney/client privilege, and they say that the

16   statute I just cited applies only in conflicts

17   between lawyers and their clients, not third parties.

18             And it's probably helpful to

19   specifically read that section into the record.  And

20   that is that the attorney/client privilege, quote,

21   shall not extend to a communication relevant to an

22   issue of breach of duty by the lawyer to his client

23   or by the client to his lawyer.

24             Third, they argue that defendants are

25   not required to disclose now whether they intend to

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Friday
C.A. No. 2:11-cv-01754-JLL-JAD      Special Master Conference      February 23, 2018

Page 46

1    argue allocation of fault at trial.  They say that

2    New Jersey Court Rule 4:7-5(c) on which plaintiffs

3    relied does not apply in federal court.

4            Made me remember my first year of civil

5    procedure class with Professor Schlesinger.

6            They also say that that Rule applies

7    only to settlements between plaintiffs and

8    defendants, not settlements among defendants, that

9    plaintiffs identify no other requirement that BASF

10   disclose any allocation of fault agreements now.

11   Therefore, the application is premature and that

12   allocation of fault does not equal waiver of the

13   attorney/client privilege.

14           On February 5, 2018, under ECF number

15   425, Cahill Gordon filed their opposition to

16   plaintiffs' motion to compel.  They state that

17   plaintiffs' request is not required by law and in any

18   event is premature, that plaintiffs again failed to

19   make a showing of particularized need.

20           They distinguish Young versus Latta, one

21   of the cases relied on by the plaintiffs, and that

22   there should be no in camera review without a prior

23   showing of particularized need.

24           On February 12 under ECF number 430,

25   plaintiffs filed their reply, essentially saying that

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 47

1    the local Civil Rule 37.1 meet and confer requirement

2    would have been futile under the circumstances, that

3    it is not reconsideration because of the prior motion

4    was denied without prejudice, so it's a brand new

5    motion, that plaintiffs are entitled to know if

6    defendants will seek apportionment at trial, that the

7    Comparative Negligence Act, not the Joint Tortfeasor

8    Act, allows disclosure, that the disclosure

9    encourages settlement, that these agreements would be

10   proof of bias, motive, or scienter, and they are

11   probative of whether BASF waived the attorney/client

12   privilege, finally, that the disclosure is required

13   under Federal Rule of Civil Procedure 34(b)(2)(C),

14   which requires disclosure of whether responsive

15   documents to a request for production are being

16   withheld.

17          And my final notation on this page is

18   Groundhog Day.  I'm referring not to the special

19   event that happens in February in Punxsutawney,

20   Pennsylvania, but to the movie of that title.

21          **MR. COREN:**  Your Honor, if you're asking

22   who's going to be speaking to it on the plaintiffs'

23   side, I'm going to speak.

24          **SPECIAL MASTER:**  I was waiting to see

25   who was going to volunteer.

Page 48

1              **MR. COREN:**  Me.

2              **SPECIAL MASTER:**  Good.  Mr. Coren, the

3    floor is yours.

4              **MR. COREN:**  Thank you.  Your Honor, it's

5    not groundhog's day.  We're here because we're at a

6    point where we're entering into discovery and, quite

7    candidly, we have a right to know what positions are

8    going to line up by the defendants amongst

9    themselves.

10             **SPECIAL MASTER:**  What's the basis of

11   that right?

12             **MR. COREN:**  The basis -- and, you know,

13   we got chastised for citing a New Jersey Rule.  I went

14   back and looked at the section where we cite to that

15   and actually we're citing to the rule, meaning the

16   rule of law.   And that's the rule in Young versus

17   Latta.

18             And that rule states, and I'm going to

19   quote the Court:  A plaintiff should know as early in

20   the case as possible whether a defendant will seek to

21   prove the fault of a codefendant.  Plaintiff should

22   conduct their discovery accordingly.

23             Now, your Honor, we got the answers.

24   And the answers didn't have a cross-claim.

25             **SPECIAL MASTER:**  Doesn't that tell you

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 49

1   that they're not going to be seeking something

2   against the other codefendants?

3             **MR. COREN:**  No, it doesn't, your Honor.

4             **SPECIAL MASTER:**  On what basis can they

5   make that assertion if there's no cross-claim?

6             **MR. COREN:**  Well, your Honor, Young

7   versus Latta said you don't need to file a

8   cross-claim because down the road somebody could

9   settle and that they could pursue their cross-claim.

10           That is what happened actually in Young

11   versus Latta.

12           And then if we skip to the most recent

13   decision, Morey --

14             **SPECIAL MASTER:**  But stay with me, okay.

15   Let's stay with Young versus Latta, because in the

16   Young versus Latta circumstance where you had an

17   agreement --  well, you had a question of

18   contribution between a non-settling defendant and a

19   settling defendant.  But that settling defendant

20   settled with the plaintiff, not with the codefendant.

21             **MR. COREN:**  That is the fact pattern.

22   But as from Young -- that was the first instance.

23   But Young is the starting point of a series of cases

24   from the 90s going up to as most recently 2017, your

25   Honor.

Page 50

1          SPECIAL MASTER:  Well, before we get to

2     Morey's Pier, let's talk about Young versus Latta,

3     because that is the starting point.  And doesn't

4     Young versus Latta also say that a non-settling

5     defendant is entitled to a credit for the settlement

6     paid by the settling defendant equal to the

7     allocation made by the jury?

8          MR. COREN:  Yes.

9          SPECIAL MASTER:  So it's a question of

10    the non-settling defendant getting a credit for what

11    the settling defendant paid to the plaintiff.

12         MR. COREN:  Yes.

13         SPECIAL MASTER:  And it's based upon the

14    allocation that is made by the jury, who may or may

15    not be told that the empty chair defendant settled

16    with the plaintiff.

17              And in fact, under New Jersey law, when

18    that jury verdict form is given to the jury, there is

19    a list of every defendant and it's the jury's

20    obligation to outline percentages of fault, because

21    it may have an effect on whether the plaintiff

22    recovers at all.   Right?

23         MR. COREN:  Understood, your Honor.

24         SPECIAL MASTER:  Okay.

25         MR. COREN:  Okay.  But before there was

Page 51

1    Young versus Latta, there were did two statutes, the

2    Tortfeasors Contribution Act and the comparative,

3    which gives us those percentages.  So there were the

4    statutes.

5              **SPECIAL MASTER:**  Right.  The statutes

6    have to be applied somehow.  And I'm using the

7    practical application.

8              **MR. COREN:**  Correct.  And Young versus

9    Latta was the first foray.

10             And if we now jump to 2017 when they

11   come back with Morey's Pier to revisit the issue,

12   they cement the fact that these trials are going to

13   have allocation issues.  So before there's a

14   settlement, there's an allocation issue.

15             So we have a right to know if these

16   people are going to sit there and try to lay off the

17   blame on each other, and then why, what evidence do

18   you have, and go to delve into it, because when we

19   look, for example, in the answer of BASF, they said:

20   Well, it could be caused by the fault of other

21   people.  But they don't identify the other people.

22   That's paragraph 12 -- excuse me.  Bear with me.

23             **SPECIAL MASTER:**  It should be an

24   affirmative defense.

25             **MR. COREN:**  Yes, it was an affirmative

Page 52

1    defense, your Honor.  It's on their affirmative

2    defense 14:  Plaintiffs' damages if any were

3    proximately caused by the acts or omissions of other

4    persons or things for which BASF Catalyst is not

5    responsible and over which BASF Catalyst lacks

6    control.

7               Well, who is that?  Because all the

8    other defendants in this case were BASF lawyers.

9    And gosh-darn, BASF had control over their lawyers.

10              So who are we referring to?  If they're

11   going to sit there and make allocation arguments --

12              **SPECIAL MASTER:**  Well, you're arguing

13   against yourself, because if you're saying that BASF

14   had control over its lawyers, then that affirmative

15   defense doesn't apply.

16              **MR. COREN:**  We agree.  But that's why

17   we're saying they have never come forward and said

18   whether they are going to make allocation arguments.

19              **SPECIAL MASTER:**  I understand that.

20   They have not done that.

21              But what they have done is not assert a

22   cross-claim against the only other set of defendants

23   in this case, which are the lawyers.  That has not

24   happened.  And the lawyers have not cross-claimed

25   against BASF.  There are no cross-claims here.

USDC, District of NJ                   Williams, et al. v. BASF Catalysts, LLC, et al.                           Friday
C.A. No. 2:11-cv-01754-JLL-JAD               Special Master Conference                          February 23, 2018

Page 53

1           **MR. COREN:**  But in New Jersey, as your

2    Honor knows, while we can never suggest a dollar

3    amount, we can suggest allocations.  And if there's

4    going to be suggestions of allocations that cut

5    across the ones that we make, we have a right to do

6    that.

7               And that's the lesson in -- that's why

8    we get that language in Young versus Latta, the rule,

9    that a plaintiff should know as early in the case as

10   possible whether a defendant will seek to prove the

11   fault of a codefendant.  Plaintiff should conduct

12   their discovery accordingly.

13               And that's why we came back to you, when

14   we get now to the crime fraud exception, because now

15   when we get to the crime fraud exception -- and I'm

16   not trying to preview my colleagues' case, but it's

17   going to pop up, that on page 12 of BASF's response

18   to the crime fraud, they state the following:

19   Starting in the late 1980s, Cahill served as

20   Engelhard's national counsel in personal injury

21   lawsuits alleging that Emtal talc was contaminated

22   with asbestos.  Cahill recommended to Engelhard

23   long-range strategy and short-term tactics on an

24   overall basis for all jurisdictions generally as well

25   as in specific jurisdictions.  While local counsel

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Friday
C.A. No. 2:11-cv-01754-JLL-JAD  Special Master Conference  February 23, 2018

Page 54

1 always were consulted and provided input, all

2 substantive recommendations to Engelhard as to how to

3 respond to those lawsuits in both the long and

4 short-term were made by Cahill.

5    So that language suggests now that they

6 are saying all of the blame lies on Cahill.  Sorry to

7 point.  Okay.  So at this point --

8    **SPECIAL MASTER:**  Well, stop.   Stop.

9 Assume all of that is true.  Lawyers are only the

10 agents of their principal.

11    So even if they were to say that, isn't

12 BASF saying well, it was my agent who screwed up --

13 if someone screwed up, it was my agent.  Oh, by the

14 way, I happen to be liable for the action of my

15 agent?

16    How are you --  I don't get the logic.

17    **MR. COREN:**  Are they going to say that,

18 your Honor?  Or are they going to say Cahill went

19 rogue?  Are they going to say:  Hey, we told Cahill

20 everything that there was to know and Cahill told us

21 to do this?

22    Well, that's a breach of the duty,

23 because someone wasn't doing their job.

24    And that's why we want to see if there's

25 any agreements out there to see if anyone happens to

Page 55

```
 1    be making a malpractice claim against anybody or --

 2    you know, in good faith, because at that point in

 3    time, your Honor under C has to take that under into

 4    account.

 5              SPECIAL MASTER:  I don't agree.  I think

 6    you misread C.  I honestly think that C -- first of

 7    all, it's an exception to a rule.  And the exceptions

 8    are to be considered very narrowly.   And I read that

 9    exception as saying it applies in an argument between

10    the attorney and his client concerning a failure to

11    satisfy a duty.   I don't see (2)(C) as giving a

12    third party any rights to try to pierce the

13    privilege.   And I've been shown no case law that

14    holds that.

15              And I think the reason there's no case

16    law that holds it is because it just doesn't make any

17    sense.

18              MR. COREN:  No, your Honor.  If Cahill

19    has to defend themselves because all of a sudden BASF

20    is now saying no, it was Cahill, we told them, we're

21    exonerated, they went rogue, Cahill has the right to

22    come back and say:  Unh-unh, you knew what was going

23    on, misery loves company.  If anything, we're not all

24    responsible.  You're not responsible.

25              We haven't heard Cahill -- one peep from
```

Page 56

1    them saying no in response to that, it wasn't us or

2    we were just doing our client's bidding faithfully.

3    Okay.

4            And that statute was written broad.

5    And, your Honor, with respect, I disagree with you.

6    The statute, the exceptions -- the privilege is read

7    narrowly, not the exceptions.  Okay.  The

8    legislature used broad language.  They knew what a

9    malpractice case was.  They didn't limit it to a

10   malpractice case.

11         **SPECIAL MASTER:**  I'll tell you candidly,

12   I read your argument in respect of that, and I just

13   don't agree with it.

14         **MR. COREN:**  Understood, your Honor.  You

15   know, it's one of those things that -- hopefully you

16   will agree that I can read it that way and it's a

17   permissible reading, whether you agree with it or

18   your reading is different.

19         **SPECIAL MASTER:**  I am a firm believer

20   that everyone has the right to be wrong.  And many

21   people exercise that right quite freely.

22           So go ahead.

23         **MR. COREN:**  Also it ties in, your Honor,

24   that, hey, we have to know who's doing what to whom

25   and how in this case.

Page 57

1          **SPECIAL MASTER:**  Why do you care?  I

2     don't get that.

3          **MR. COREN:**  Because if I want to settle

4     this case with -- say I want to settle the case with

5     Mr. Halket, who wants to go out.  I need to know if

6     there's any agreements or what are the claims and

7     waive that in, because at a certain point in time I

8     may find that Cahill and BASF are laying the blame if

9     I settle with Mr. Halket on Mr. Halket.  Okay.  They

10    become liability syncs or like lightning rods.

11         **SPECIAL MASTER:**  So it's not litigation

12    purposes but settlement purposes that you think

13    entitles you to get this information?

14         **MR. COREN:**  It's one of the reasons

15    we're entitled to it.  And in fact --

16         **SPECIAL MASTER:**  Can you show me any

17    authority under New Jersey substantive law that says

18    that you have a right to discover information because

19    it's going to help you in settlement, not in

20    litigating the case?

21         **MR. COREN:**  No, it's not so much to help

22    in settlement.  It helps you evaluate a settlement.

23    Okay.  And that is legitimate.  And quite candidly,

24    courts foster those conditions.

25              The object is to sit there and to get

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                  Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 58

1    the facts out so people could weigh and people could

2    assess it.   That is an impediment that is being put

3    up.

4              Also, defendants at trial will seek to

5    put the fault on whoever we do try to settle with or

6    if we are successful.   So we need to -- you know, at

7    that time it has to come out.

8              But in a case like this, we don't have

9    the luxury with a case approaching its seventh

10   birthday to be redoing discovery.   People have to

11   know candidly who is doing what to whom and why in

12   this case.   What are the positions?   Are you going

13   to --

14             **SPECIAL MASTER:**   You say that like

15   that's black letter law.

16             **MR. COREN:**   It is.   Under Young versus

17   Latta it is.

18             **SPECIAL MASTER:**   I disagree with you.   I

19   don't think that's black letter law.   I don't think

20   you have this absolute right, as you say, to get

21   settlement agreements.

22             We argued that the last time around.

23   And I ended up deciding that based on Third Circuit

24   precedent, you only get a settlement agreement on a

25   showing of particularized need.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 59

1          So I'm sitting here saying to myself:

2     Okay, where is the particularized need?

3          And I haven't heard anything yet that

4     tells me, okay, this is the particularized need.

5          And I will tell you that saying I need

6     it in order to settle the case, that doesn't cut it.

7     And I don't mean to be rude about it.  But it just

8     doesn't do it.

9          **MR. COREN:**  Your Honor, the whole

10    purpose of discovery is to let the parties know what

11    they're going to have to meet at trial.  We all

12    learned that at law school and that hasn't changed

13    one iota, proportionality, any of these changes.

14    That is the touchstone.

15          We have a right to know if they are

16    going to do an allocation -- take a position on

17    allocation, we have a right to know what facts

18    they're going to adduce to prove their allocations,

19    because at the end of the case, no matter whether

20    they settle or not, the jury's going to be charged to

21    put a percentage on BASF, Mr. Halket, Mr. Dornbusch,

22    Mr. Sloane, Cahill in general, all of them.

23          So if they're going to sit there at

24    trial and come forward affirmatively, fine, tell us

25    now so we can take discovery on that basis.  You

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 60

1    could, you know, set aside the allocations.  But

2    otherwise, we're going to wind up blind at trial.

3    And that's what Young versus Latta says, no, at the

4    earliest time.  And this --

5              **SPECIAL MASTER:**  Let me try to put it in

6    a different setting for you.

7                   Let's assume that you get to trial and

8    the defendants have not told you that they are going

9    to seek allocation.  They haven't put you on notice

10   so that you can't get discovery in respect of the

11   allocation issues.  And you get to trial.

12                  Do you think the trial judge is going to

13   allow allocation under those circumstances?

14             **MR. COREN:**  Under Morey I don't believe

15   so, your Honor.

16             **SPECIAL MASTER:**  That's what I was

17   getting to.

18             **MR. COREN:**  Under Morey, no.

19             **SPECIAL MASTER:**  So Morey's Pier tells

20   me that the defendants have a choice to make.  They

21   can either put you on notice of allocation, which

22   would then allow you to conduct some discovery hither

23   or yon, or they don't.  But if they don't, they run

24   the risk of not being allowed to seek allocation at

25   trial.  Right?

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                        Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                February 23, 2018

Page 61

1           **MR. COREN:**  Yes, your Honor.

2           **SPECIAL MASTER:**  So is that really your

3    call to make is it theirs?  They're the ones who are

4    running the risk here, not you.

5           **MR. COREN:**  The problem is, your Honor,

6    is they have now made the case unsettleable against

7    any marginal player in this particular case.  Okay.

8                And I think that that cuts against us,

9    because part and parcel of getting the facts out is

10   to be able to make these kind of decisions.

11               And once again, they're taking and

12   they're chilling that right by not at least putting

13   the cards on the table.  And all we're --

14          **SPECIAL MASTER:**  We're going in -- we're

15   arguing in circles here, because you say that it

16   helps you settle the case.  And I said to you

17   helping you settle the case is not a particularized

18   need.  And you need particularized need in order to

19   get disclosure of a settlement agreement.  So where

20   are we?

21          **MR. COREN:**  Well, moving along, your

22   Honor, also to the extent that you disagree with us

23   whether it reaches -- you know, it violates or --

24   excuse me, triggers is the word I was looking for --

25          **SPECIAL MASTER:**  That's okay.

Page 62

1          **MR. COREN:** -- triggers section C, okay,

2     of the lawyer/client privilege statute.

3          **SPECIAL MASTER:** The exception to the

4     lawyer/client privilege statute.

5          **MR. COREN:** Correct.   Or what I call

6     the section C exception.   We get to explore whether

7     there are facts out there that will trigger that,

8     okay, because you may disagree with me, but on appeal

9     somebody may agree with me.

10          So let us at least get the facts out on

11     the table.   Okay.   What harm is it going to be to

12     find to -- look, if they don't want to give us the

13     agreement because of some confidentiality or

14     privilege, then they should give it to you in camera.

15          **SPECIAL MASTER:** And what am I to do

16     with it?

17          **MR. COREN:** To see whether or not

18     there's, for example, in the preambles or the

19     recitals, there are any admissions or anything in

20     there that bear upon the subject.   We don't know.

21          Is there an indemnity in there, your

22     Honor.   And at that point in time that indemnity

23     creates a bias issue that we are entitled to and

24     courts have time and time again -- time in and time

25     out found was a particularized need, allowing the

Page 63

1    settlement agreement to go.   So it might very well

2    be.

3              But sitting here -- first of all, one,

4    are there agreements?  Could we finally get on the

5    record somewhere that there are settlement

6    agreements?

7              **SPECIAL MASTER:**  I don't know that they

8    need to disclose that to you yet.   I really don't.

9              I think you have the burden of making

10   the initial showing of particularized need.  Once you

11   do that, then I would look at it in camera ex parte

12   and make determinations in respect of it.

13             But I don't get to my step until you've

14   satisfied yours.   Right?

15             **MR. COREN:**  Yes.  And I believe that we

16   have, given the circumstances of this particular

17   case.  We have people already starting to point the

18   finger at the other side.  We need to know -- you

19   know, and it all bears upon -- if they're going to

20   make an allocation, if those agreements affect

21   whatever the allocation is or if they've given up an

22   allocation right with an agreement, then we get to

23   know that because the way these statutes run, it may

24   affect it.

25             You're asking me to look what I don't

Page 64

1    know what is in there to tell you anything more,

2    other than the circumstances of this case justify

3    them at least giving you that agreement.

4              SPECIAL MASTER:  Let me tell you what

5    I'm having real trouble with.  And that is your

6    reliance on what BASF wrote about what happened in

7    this matter 30 years ago in their opposition to your

8    crime fraud motion.

9              I didn't see Cahill Gordon or any of the

10   Cahill Gordon defendants take issue with that

11   description.  There's nothing that was filed that

12   said, oh, by the way, the way that BASF described it,

13   that wasn't right, that's not how it happened.

14             MR. COREN:  And if there's a settlement

15   agreement where Cahill's exonerated, that may be the

16   reason why we're not seeing them say, oh, gosh-darn,

17   that ain't what happened.

18             And that's one of the reasons why you

19   need to see that agreement.

20             SPECIAL MASTER:  Okay.  Is there

21   anything else?

22             MR. COREN:  No, sir.

23             SPECIAL MASTER:  On BASF's side, who

24   will speak to this?

25             MR. ASSAF:  Mr. Bress.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 65

1          **MR. BRESS:**  Your Honor, Dan Bress for

2     BASF.

3               Judging by your comments, I think I'm

4     going to shorten what I have to say.

5          **SPECIAL MASTER:**  That's very wise.

6          **MR. BRESS:**  I'm happy to answer any

7     questions.  But on the settlement agreement --

8          **SPECIAL MASTER:**  Don't follow Mr.

9     Assaf's example of writing 14 notes and having to

10    talk about each and every one.

11         **MR. BRESS:**  We've got a lot of notes

12    here and they're all blank, your Honor.

13              I think with respect to this motion,

14    your Honor, there are really two features of it.  One

15    was the settlement agreements.  Your Honor has

16    already ruled on that.  Nothing has changed.  There's

17    no particularized need.

18              And with respect to the second piece of

19    this, it essentially asks for an early disclosure

20    about whether BASF intends to blame another party at

21    trial.

22              Our position is that that request is

23    vastly premature and that the New Jersey Rules and

24    case law that are being cited don't apply in federal

25    court and that we don't have an obligation at this

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD             Special Master Conference                  February 23, 2018

Page 66

1    time before discovery has even begun in earnest and

2    when there's no trial date to make the kind of

3    disclosure that Mr. Coren is claiming needs to be

4    made.

5              SPECIAL MASTER:  But you do accept the

6    fact that if you are going to seek allocation at

7    trial, you're going to have give the plaintiffs

8    notice of that.

9              MR. BRESS:  But the question, your

10   Honor, is when.  And I don't think --

11             SPECIAL MASTER:  Well, the case law says

12   at the earliest practicable moment.

13             MR. BRESS:  Well, but that --

14             SPECIAL MASTER:  And so at some point or

15   another, that cat's going to have to come out of the

16   bag one way or the other, because the risk you run as

17   a matter of New Jersey substantive law is you will

18   not be allowed to seek allocation if you don't give

19   them notice, because they are entitled to know

20   whether you are going to.

21             Now, the question is here when are they

22   entitled to know that?  I'm not so sure that now is

23   the right time.

24             But be that as it may, the choice is

25   yours to make.  And that is I'm going to disclose it

Page 67

1   and therefore preserve the right to seek allocation

2   at trial, or I'm not going disclose it, but I'm going

3   to be foreclosed from seeking allocation at trial,

4   because that's what Jones versus Morey's Pier, Inc.

5   says.

6           **MR. BRESS:**  Yeah.  To me, your Honor,

7   those cases involve a slightly different situation

8   where the plaintiff is not actually prosecuting a

9   claim against the defendant.  You either have a

10   settling defendant or an absent defendant.   That's

11   not the case here.

12           **SPECIAL MASTER:**  Well, in Jones versus

13   Morey's Pier you had a defendant who was dismissed

14   because they didn't -- it was a governmental agency

15   against whom a timely Tort Claims Act notice had not

16   been filed, and therefore you had no cause of action

17   under New Jersey law.

18           But the Court did say that in those

19   circumstances the defendant was entitled to make a

20   third party claim against the dismissed defendant

21   saying that they were negligent and that that

22   negligence was the proximate cause of the plaintiff's

23   damages.

24           So even though dismissed, they still say

25   on the verdict sheet, because the jury could say yes,

Page 68

1    we find the defendant liable, but the defendant's

2    liability is based upon the third party defendant's

3    liability, and there's no recourse against the third

4    party defendant because they've been dismissed for

5    failure to satisfy the Tort Claims Act.

6              **MR. BRESS:**   And that's all true, your

7    Honor.   But the point that I would make is that when

8    you're talking about an early disclosure obligation,

9    the point of that is to put the plaintiffs on notice

10   that some party not in the case may be blamed at

11   trial that allows the plaintiff to take what's

12   essentially third party discovery against either that

13   settling defendant or that absent defendant.

14             That's not the case here.   The

15   plaintiffs have sued Cahill Gordon.   They've sued

16   Arthur Dornbusch.   They have an obligation in

17   discovery and an incentive to prosecute those claims.

18             So I think it's quite different than

19   Jones and Young, because in those cases, had the

20   defendant not disclosed that there was some potential

21   third party out there they were going to blame, the

22   plaintiffs wouldn't have a reason to build up in

23   discovery whatever responses they were going to make.

24             That's not true here.   Here everybody

25   is in the room and the plaintiffs have an obligation

Page 69

1   having filed suit against everyone to build their

2   claim against everyone.

3           **SPECIAL MASTER:** I understand what the

4   plaintiffs' obligation is.

5           But I want to go back to what I think is

6   the core question in this application. And that is

7   do you agree that if you do not give the plaintiffs

8   notice of allocation, however that comes out, and

9   that it's done in sufficient time for them to prepare

10   for trial, you will not be able to seek allocation at

11   trial?

12           **MR. BRESS:** Your Honor --

13           **SPECIAL MASTER:** The sine qua non of the

14   latter is the former.

15           **MR. BRESS:** Your Honor, I'm not aware of

16   a requirement in federal court that would require

17   that. We haven't even seen the plaintiffs' case at

18   trial and we're allowed to react to that. But I

19   will say, your Honor --

20           **SPECIAL MASTER:** You're in a New Jersey

21   case, sitting in diversity, which Rudy Schlesinger

22   would have said you use the federal procedure under

23   Erie Railroad versus Tompkins, but you look at the

24   substantive law of New Jersey.

25           The substantive law of New Jersey in

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 70

1    this aspect is the Comparative Negligence Act and the

2    Joint Tortfeasor Contribution Act.

3              And when you read those together and you

4    read the case law that interprets those two statutes,

5    you come away with the conclusion, at least I do,

6    that if you want to seek allocation at trial as a

7    defendant, you need to notify the plaintiff at some

8    point so that they can prepare to meet those

9    allocations squarely.

10             It's no different than any other part of

11   your case as a defendant.  You have to let the other

12   side know.  That's the way we work.

13             Now, the question is when do you need to

14   do it?  That's a different issue.

15             My question to you is much more

16   fundamental than that.  And that is do you agree that

17   as a condition precedent of being able to seek

18   allocation at trial, it is your obligation to provide

19   the plaintiffs notice?

20             **MR. BRESS:**  Your Honor, I don't think

21   we're having a fundamental disagreement.  We're

22   having a --

23             **SPECIAL MASTER:**  Well, I'm looking for a

24   really simple yes or no answer.  So help me out.

25             **MR. BRESS:**  Your Honor, I think that at

Page 71

1   some point in these proceedings we would make that

2   kind of disclosure.

3           **SPECIAL MASTER:** Okay. Is that a yes?

4           **MR. BRESS:** Yes, it's a yes.

5           **SPECIAL MASTER:** Okay. Thank you. You

6   can start with yes and then explain. But I'd like

7   an answer to my question.

8           And you're telling me yes, you have that

9   obligation. I appreciate that because, in candor, I

10  don't think there's any question that you do. So

11  you're giving me the sleeves off your vest. All

12  right.

13          **MR. BRESS:** Your Honor, our central

14  point is just the obligation is not triggered now.

15  And that's what the application asks us to disclose

16  now. We don't think we have that obligation at this

17  time.

18          **SPECIAL MASTER:** So your answer is not

19  that I don't have the obligation, it's just not

20  mature yet, it's not ripe?

21          **MR. BRESS:** Correct, your Honor.

22  There's been very few depositions even in the case.

23          **SPECIAL MASTER:** Anything else, Mr.

24  Bress.

25          **MR. BRESS:** I do not, your Honor. Thank

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                   Special Master Conference                   February 23, 2018

Page 72

1    you.

2                    **SPECIAL MASTER:**  Mr. Coren, you get the

3    last word.

4                    **MR. COREN:**  Thank you, your Honor.

5                    **SPECIAL MASTER:**  I get the last word.

6    You get before the last word.

7                    **MS. GUSSACK:**  Your honor --

8                    **SPECIAL MASTER:**  Oh, I'm sorry.  My

9    apologies.  I'm so sorry.  You're over to the left

10   and I didn't see you.  But you did file --

11                   **MS. GUSSACK:**  Yes, we do have -- Mr.

12   Boise would like to address the Cahill response to

13   the motion.

14                   **MR. BOISE:**  Your Honor, just a point.

15   We're certainly reserving the right as to what law to

16   apply to a claim.

17                   What ultimately you have here, we're

18   still in the class certification stage of this and

19   what the shape of trial will look like is uncertain,

20   what the relief requested is uncertain.

21                   And to make defendants decide on trial

22   strategy, to make that decision and then describe

23   that decision to plaintiffs before those events are

24   also premature.

25                   Those are the only two points I wanted

Page 73

1    to make.

2              **SPECIAL MASTER:**   Okay.   But don't we

3    have to start from the proposition that you have a

4    diversity case venued in New Jersey, so that by

5    definition -- or I shouldn't say by definition.   By

6    default the substantive law of New Jersey would

7    apply, unless at some point somebody comes in and

8    says no, under choice of law principles the

9    substantive law of someplace else applies.

10             Well, the choice of law principles you

11   will be applying will be New Jersey's choice of law

12   principles because that's where you default to first.

13   The forum states substantive law.

14             No one's made a choice of law

15   application in this case yet.   It may be that you're

16   giving me a heads-up that one may be coming soon.

17             And I see everybody over there is

18   nodding your heads up and down, which I guess I

19   should gird myself for.

20             But until now there has not been a

21   choice of law application made.

22             So I'm presuming, as I think I'm not

23   only entitled to but I'm required to, that the

24   substantive law we're talking about is New Jersey

25   law.

USDC, District of NJ         Williams, et al. v. BASF Catalysts, LLC, et al.              Friday
C.A. No. 2:11-cv-01754-JLL-JAD        Special Master Conference           February 23, 2018

Page 74

1              Under New Jersey law, we are where we

2     are, which is if you want to make an allocation

3     argument, you got to give notice.   I don't think

4     that's real complicated.

5              And I know Mr. Bress fought me on it,

6     but he eventually came to the side of the angels. So

7     I guess I'm going to have to wait until I hear from

8     you on a choice of law application.

9              But until then, I understand your

10    argument about the ripeness of this application.   And

11    I guess I'm going to have to abide the latter until I

12    get a choice of law motion that we'll need to address

13    one way or the other.

14              Did I cover your points?

15         **MR. BOISE:**  You did, your Honor.

16         **SPECIAL MASTER:**  Okay.

17         **MR. COREN:**  If I may, your Honor.

18         **SPECIAL MASTER:**  Yes, Mr. Coren.

19         **MR. COREN:**  Thank you.  First off all,

20    the Third Circuit rule that New Jersey law applies

21    because of the positions that were taken, Judge

22    Linares also has held that New Jersey law applies in

23    one of his opinions.  We'll get you the citations for

24    that, but it's 350 F.3rd, page 317 with respect to

25    the Third Circuit.

Page 75

1                    The ship has sailed, your Honor, on the

2    issue of choice of law.   New Jersey law is the law

3    of the case in this matter.

4                    SPECIAL MASTER:  Well, was the --  I

5    don't remember choice of law being argued.

6                    MR. COREN:  Yes, it was argued.  And the

7    Third Circuit actually addresses it in the opinion.

8                    SPECIAL MASTER:  What page?

9                    MR. COREN:  317.

10                   SPECIAL MASTER:  Okay.

11                   MR. COREN:  316-317, your Honor.

12                   SPECIAL MASTER:  Okay.  Bear with me for

13   one second.

14                   Okay.  317.  Choice of law.  Actually

15   the discussion starts at 316.

16                   MR. COREN:  Correct, your Honor.  My

17   apology.

18                   SPECIAL MASTER:  That's okay.  What it

19   says is that the parties did not litigate the choice

20   of law question before the District Court.   The

21   plaintiff claimed that it was under New Jersey law.

22   Quote:  BASF and Cahill both agreed that New Jersey

23   law applied and, moreover, the choice of law issues

24   may be waived.   Thus, to the extent the parties may

25   have sought the application of other law to the tort

Page 76

1    claims, they have waived their right to do so.

2              **MR. COREN:**  Yes, sir.  Judge Linares

3    later will repeat that.

4              **SPECIAL MASTER:**  And as you can see,

5    that was all previously highlighted.

6              **MR. COREN:**  Understood.  There's a lot

7    of paper in front of your Honor.  But I felt duty

8    bound to call that to your attention.  I don't

9    believe other --

10             **SPECIAL MASTER:**  You may bear that in

11   mind, Mr. Boise.

12             **MR. BOISE:**  I understand that, your

13   Honor.  We're preserving that issue.  That was in the

14   context of a motion to dismiss where facts were

15   assumed to be true.

16             And it's our position going forward and

17   at the time and now that that issue has not been

18   waived beyond the motion to dismiss stage.

19             I understand plaintiffs' position.  It's

20   an issue that will I think be litigated in the

21   future.  It's just another point of not acknowledging

22   here in the face of a direct question whether New

23   Jersey law necessarily applies to this particular

24   issue of allocation.  I want to make sure that I'm

25   preserving the record for the very reason that Mr.

Page 77

1    Coren just raised.

2                    **SPECIAL MASTER:**  Okay.   I understand

3    that.   I just read Judge Fuentes' opinion where he

4    clearly says it's been waived.

5                    **MR. BOISE:**  Thank you, your Honor.

6                    **SPECIAL MASTER:**  And he on the preceding

7    page goes through the discussion of whether choice of

8    law can in fact be waived.   And he determines that

9    in the Third Circuit it can and then says in fact it

10   has been waived.

11                   So you'll do what you think is

12   appropriate in respect of representing your client.

13   Nobody's going to hold that against you.

14                   But I would suggest you might want to

15   take a real hard look at pages 316 and 17 of the

16   Third Circuit's opinion.

17                   **MR. BOISE:**  I assure you we have, your

18   Honor.

19                   **SPECIAL MASTER:**  Okay.

20                   **MR. COREN:**  Your Honor, if I may wrap

21   up, as they said in Young, a plaintiff should know as

22   early in the case as possible whether the defendant

23   will seek proof of fault from a codefendant, which

24   begets the question if not now, when?   Because the

25   law says --

USDC, District of NJ | Williams, et al. v. BASF Catalysts, LLC, et al. | Friday
C.A. No. 2:11-cv-01754-JLL-JAD | Special Master Conference | February 23, 2018

Page 78

1          **SPECIAL MASTER:**  If not us, who, if

2    you're going to quote the Kennedys.

3          **MR. COREN:**  Plus, we're --

4          **SPECIAL MASTER:**  Mr. Placitella has

5    sworn he will never play me in Trivial Pursuit.

6          **MR. COREN:**  Nor will I, your Honor.

7    Once again --

8          **MR. PLACITELLA:**  Although sometimes it

9    feels like we're playing here, but...

10          **SPECIAL MASTER:**  No slice of the pie for

11    you today.

12          **MR. COREN:**  And, your Honor, we don't

13    think that we're asking for the sun.  We may have

14    asked for an awful lot of things on that first

15    go-around.

16          But here we're coming in with a very,

17    very narrow request.   We want to know whether there

18    are agreements.  If there are settlement agreements,

19    we believe your Honor should see and review them,

20    because if there's any factually in there that begets

21    and helps illuminate the issues, then I think we're

22    entitled to those under general discovery.

23          Thank you, your Honor.

24          **SPECIAL MASTER:**  Thank you.   Anybody

25    else?  No.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD             Special Master Conference           February 23, 2018

Page 79

1              My determination is informed principally

2      by the procedural posture of this case.   We have

3      been moving along with the instruction I have been

4      operating under that this case is to be made trial

5      ready as soon as possible.

6                   There were to me two large thresholds

7      that needed to be addressed before we could get to

8      that point.

9                   One of them was the class certification

10     motion, because that will define the scope and extent

11     of factual and expert discovery that the case needs.

12     And it seemed to me that people's efforts were better

13     served focusing on that first.

14                   And as a corollary to that, a

15     determination of plaintiffs' assertion that the

16     communications between BASF and its counsel at

17     Cahill -- and BASF will forgive me, but I use BASF as

18     a shorthand for Engelhard also -- but that the

19     communications between BASF and its counsel at Cahill

20     should be produced because the crime fraud exception

21     or the Kozlov exception would vitiate the assertion

22     of attorney/client privilege.

23                   We're on our way to getting some

24     illumination in respect of the second one of those.

25     And we've at least started the process in respect of

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 80

1    the first, which is the class certification motion.

2                Given the position we are in, it seems

3    to me that the request is premature, so I really

4    don't have to reach the substance of it.

5                If I had to reach the substance of it, I

6    still would have a little bit of trouble with the

7    particularized need part that caused me to deny that

8    same application back in October.

9                So I'm going to deny this motion.  And

10   again, it's without prejudice.  The plaintiffs may

11   bring it back.  It will not be a motion for

12   reconsideration.  So you don't have to do it within

13   the next 10 days.  Bring it back after we know a

14   little bit more of where this case is headed, because

15   candidly, I don't think that any of the concerns that

16   plaintiffs have raised today or in their moving

17   papers would still be in existence if class

18   certification is denied.

19               So that would be a very different case

20   than the case we have right now and also a very

21   different case from a case if class certification is

22   granted.

23               So it strikes me that everyone's efforts

24   in this room are best directed towards dealing with

25   the class certification issue, because I'm going off

Page 81

1    the top of my head, but I think we're talking about

2    having a class certification hearing in September.

3              **MR. FARRELL:**  October.

4              **SPECIAL MASTER:**  October.  That's seven

5    months from now.  You guys got a lot of things to

6    do.  You've got fact discovery in respect of it.

7    That ends in May?

8              **MR. ASSAF:**  May 21st.

9              **SPECIAL MASTER:**  And then you've got

10   expert discovery that ends shortly after that.  You

11   got a lot of stuff to do that I think is important

12   that you do first before we go that route.

13             So I'm not saying you're never going to

14   get it.  But I'm simply not in a position today to

15   make that determination.  But I'm likewise not in a

16   position to say you should get it today.

17             So the motion is denied without

18   prejudice.  Any reapplication will not be a motion

19   for reconsideration.  And we'll address it at a more

20   timely date.

21             **MR. COREN:**  Thank you for hearing us,

22   your Honor.

23             **SPECIAL MASTER:**  My pleasure.

24             **MR. BRESS:**  Thank you, your Honor.

25             **SPECIAL MASTER:**  Thank you.  We've been

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                February 23, 2018

Page 82

1    at this now for close to two hours and we're about to

2    get to the other than that, Mrs. Lincoln, how did you

3    like the play motion, so why don't we take a short

4    break.

5                    (Break.)

6                    **SPECIAL MASTER:**  The final formal motion

7    that is before us is the plaintiffs' crime fraud

8    slash Kozlov motion.

9                    On November 2nd, 2017, by order and

10   under docket number ECF number 370, plaintiff filed a

11   motion to determine the applicability of the crime

12   fraud and Kozlov exceptions to defendant's privilege

13   claims.

14                   By way of background, there are two

15   claimed bases for disclosure.  The first is the

16   exception to the attorney/client privilege that's

17   codified at New Jersey Statutes Annotated

18   2A:84A-20(2)(a), that also appears as New Jersey Rule

19   of Evidence 504(2)(a).

20                   It states that the attorney/client,

21   quote, privilege shall not extend to a communication

22   in the course of legal services sought or obtained in

23   aid of the commission of a crime or fraud, unquote.

24                   The separate basis is In re: Kozlov,

25   which is a Supreme Court of New Jersey decision at 29

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 83

1    N.J. 232, 1979, which sets forth a three-part test

2    for the waiver of a privilege or for the exception to

3    the privilege.

4            The first part is that there must be a

5    legitimate need of the party to reach the evidence

6    sought to be shielded; second, there must be a

7    showing of relevance and materiality of that evidence

8    to the issue before the Court; and C, it also must be

9    shown to the satisfaction of the trial judge by a

10   fair preponderance of the evidence, including all

11   reasonable inferences, that the information could not

12   be secured from any less intrusive source.

13           Plaintiffs assert two bases for saying

14   that the communications between BASF and its counsel,

15   Cahill, should be produced, arguing that the crime

16   fraud exception applies and that plaintiffs should be

17   allowed to participate in any evidentiary hearing

18   concerning the specific documents.

19           I note that because, even though the

20   title of the motion talks about the Kozlov exception,

21   it appears in a footnote and only in a footnote in

22   plaintiffs' opening brief, and that would be footnote

23   22, page 37.

24           I'm not going to the say that the Kozlov

25   exception has been waived, but it certainly did not

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                      Friday
C.A. No. 2:11-cv-01754-JLL-JAD               Special Master Conference                    February 23, 2018

Page 84

1    receive any kind of prominence like the exception to

2    the attorney/client privilege was argued.

3                    According to plaintiffs, this involves a

4    two-step process.

5                    First is an evaluation of the factual

6    basis for a good faith belief that the exception

7    should apply; in other words, a prima facie showing

8    that the exception should apply.  And if there has

9    been that prima facie showing, then there's an ex

10   parte in camera evaluation of the privilege by the

11   Court.

12                   In going through that process,

13   plaintiffs explain that we apply a reasonable basis

14   standard, and that is whether there is a reasonable

15   basis to suspect that the privilege-holder was

16   committing or intending to commit a crime or fraud

17   and that the attorney/client communication or

18   attorney work product were used in furtherance of the

19   alleged crime or fraud.

20                   Plaintiffs state that if the reasonable

21   basis standard is met, an in camera review follows.

22                   Plaintiffs argue that the exception does

23   not need to fall within the definition of crime or

24   fraud and provide a number of citations in support,

25   but none of them are from the Third Circuit.

Page 85

1           Plaintiffs presume that the destruction

2      of evidence equates to spoliation once there's been

3      proof of that, a point that is at issue.

4           Plaintiffs assert that spoliation is

5      anathema to the privilege and that the crime fraud

6      exception applies where a party makes untrue factual

7      representations because that constitutes a fraud on

8      the Court.

9           Plaintiffs assert that deliberate

10     misrepresentations in this case warrant application

11     of the exception.

12          Plaintiffs do concede that, quote,

13     ordinarily crime fraud exception evidentiary hearings

14     are conducted ex parte, but then claim that because

15     they already are privy to the information from the

16     state cases, they should be allowed to participate

17     here and that the Samson record before Justice Stein

18     serving as a special master should be simply produced

19     here on en masse.

20          On January 16, 2018, under ECF number

21     408, BASF notified the clerk that their opposition to

22     plaintiffs' motion was being submitted directly to

23     me.

24          And that opposition says that plaintiffs

25     failed to make a prima facie case, they did not

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                February 23, 2018

Page 86

 1    identify any documents, that the documents must be

 2    shown to have been in furtherance of the fraud or

 3    crime, that plaintiffs failed to satisfy the

 4    preponderance of the evidence standard, that the

 5    privilege can only be overridden if it is the

 6    client's intent to misuse legal services, the

 7    plaintiffs failed to identify a single missing or

 8    destroyed document and therefore there has been no

 9    spoliation, and finally, that any in camera review

10    must be ex parte.

11              They claim that the plaintiffs

12    misconstrue the governing legal standards and that

13    plaintiffs' claims are based on factually incorrect

14    statements about the record, that there should be no

15    disclosure under Kozlov, arguing that Kozlov has been

16    since limited by State versus Mauti, M-A-U-T-I, which

17    is at 208 N.J. 519, decided in 2012.

18              And specifically Mauti says that, quote,

19    only in the most narrow of circumstances such as

20    where a privilege is in conflict with a defendant's

21    right to a constitutionality guaranteed fair trial

22    would the need prong of the Kozlov test be satisfied,

23    unquote.   That's at page 538.

24              And I note parenthetically that Appendix

25    C to the defendant's opposition says that it's

Page 87

1    federal cases in the title.  It should say it's state

2    cases discussing the in furtherance of standard.

3    Both of them say federal cases.  And C is actually

4    state cases.   So I did read it.

5                On January 16, 2018, by ECF number 409,

6    Cahill advised the clerk of the court that their

7    opposition was submitted directly to the Special

8    Master.  And that opposition essentially joins in

9    BASF's arguments.

10               On January 17, 2018, under ECF number

11   410 there is a letter submitted to the clerk of the

12   court advising that defendant Halket would submit an

13   opposition directly to the Special Master.   And in

14   the substance of his opposition, defendant Halket

15   joins in the BASF arguments and says pointedly that

16   plaintiffs' claims are focused on a period that is

17   after Halket left Engelhard.

18               On February 2nd, 2018, under ECF number

19   426, plaintiff filed a reply to the opposition to the

20   motion to determine the applicability of the crime

21   fraud and Kozlov exceptions to plaintiffs' privilege

22   claims.

23               I'm going to take a moment and talk

24   about that reply.   The reply consisted of a 28 page

25   brief, plus a five page certification of counsel, a

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 88

1    new Appendix C listing approximately 61 documents for

2    proposed in camera review, and a new Appendix D

3    consisting of nine pages of plaintiffs', quote,

4    factual rebuttal of BASF's assertions, unquote, plus

5    a new Appendix E, consisting of 44 pages of

6    plaintiffs' spoliation appendix and new exhibits 24

7    through 43.

8              I just want to note for the record that

9    under our local rules, reply briefs are limited to 15

10   pages.

11             Plaintiffs did ask for leave to file an

12   over-length brief not to exceed 35 pages, plus two

13   appendices.  Leave was granted, noting however that,

14   quote, adding appendices must be for their proper

15   purpose and not as a subterfuge to exceed the page

16   limitation.  Please bear that notion in mind while

17   submitting the reply.

18             I will note that plaintiffs since then

19   submitted three appendices, not the two that they

20   sought leave for, one of which again was a 44 page

21   brief on the issue of spoliation.

22             I was largely tempted to not read it.

23   But I did.  So you may argue it.  However, what

24   weight I give to it is left to be determined.

25             Plaintiffs claim in their reply that,

Page 89

1    quote, not only they met but have exceeded their

2    prima facie burden of proving New Jersey statutory

3    crime fraud exception negates BASF's claim to the

4    protection of attorney/client and work product

5    privileges.

6              Plaintiffs claim that defendants now

7    admit that for nearly 30 years they concealed from

8    courts and litigants that Emtal talc contained

9    asbestos and that this admission was long overdue,

10   unquote.

11             Plaintiffs take the view that, quote,

12   the only issue presently presented by plaintiffs'

13   current motion is whether the crime fraud exception

14   applies.

15             What is not before this Court at this

16   stage is to determine which specific documents should

17   be released under the crime fraud exception.

18             Plaintiffs repeat that the exception

19   applies where there is a reasonable basis to suspect

20   that the elements of the exception have been met.

21             They then argue seven different matters.

22   One, that evidence of BASF's fraud is overwhelming;

23   two, that the intent and impact of BASF's fraudulent

24   defense was obvious and lethal; three, New Jersey's

25   crime fraud exception does not require proof that use

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                  Friday
C.A. No. 2:11-cv-01754-JLL-JAD                  Special Master Conference                  February 23, 2018

Page 90

1    of legal services was in furtherance of a crime or

2    fraud; four, specific document review of all

3    documents produced in the Samson case should start

4    now, saying that the document designation does not

5    start until a prima facie showing has been made;

6    five, that plaintiffs are entitled to participate in

7    the ex parte hearing, if one is ordered of course;

8    six, suggest that we simply adopt the Samson record

9    and rule from there.   There are actually eight.   I'm

10   sorry.   Seven, that we should review the Dornbusch,

11   Sloane, Dembrow, and Halket depositions; and finally

12   that Kozlov, quote, compels production of the claimed

13   privileged documents to.

14            In footnote 8, plaintiffs assert that

15   BASF, quote, implicitly waived its privilege by

16   claiming there is no reliable evidence demonstrating

17   that the Emtal talc and the Johnson mine from which

18   it came ever contained asbestos.

19            On February 7, 2018, under ECF 247, BASF

20   objected to plaintiffs' reply brief.   BASF claims

21   that the reply brief was improper by trying to

22   correct deficiencies in plaintiffs' original motion

23   that were highlighted in BASF's opposition.

24            BASF specifically objects to the 44 page

25   Appendix E on spoliation.   BASF wants a status

Page 91

1    conference on how to deal with its reply, largely

2    eschewing the opportunity of a sur-reply.  And BASF

3    suggests limited argument on the, quote, in

4    furtherance of, unquote, element.  BASF says that's

5    the standard.  And plaintiffs say it is not.

6                    There is one more item that needs to be

7    added in the mix here.  And that is on February 6,

8    2018, and filed on February 9, 2018, the Supreme

9    Court of New Jersey issued an order granting BASF's

10   motion for leave to file an over-length brief and to

11   impound the record pending the disposition of the

12   appeal in the Appellate Division.  This has to do

13   with the review of the Samson documents.

14                    It ordered that the motion for leave to

15   appeal is granted and the matter is summarily

16   remanded to the Superior Court Appellate Division to

17   consider on the merits, denying the motion for leave

18   to file a reply brief.   Apparently that was not

19   needed.

20                    So the state of the record is now that

21   the Samson matters are before the Appellate Division

22   with an order of sealing from the Supreme Court of

23   New Jersey.

24                    So regardless of what anybody wants, I

25   cannot see those papers and I will not see those

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                    February 23, 2018

Page 92

1    papers.

2                    Mr. Placitella, you have the floor.

3            **MR. PLACITELLA:**  Thank you, your Honor.

4                    So we start from the proposition of what

5    are we here to decide?  What must the Court decide to

6    determine whether we have established our prima facie

7    case?

8                    And we say the standard is there is a

9    reasonable basis to suspect that the privilege-holder

10   was committing or intending to commit a crime or

11   fraud in violation of N.J.S.A. 2A:84A-20(2).

12                   Of course, what we're looking here at on

13   the substantive law, and the law we submit is pretty

14   clear, is the New Jersey substantive law on crime

15   fraud, while the procedural law on how we're going to

16   approach this is governed by procedure, federal

17   procedure.

18                   In fact, Judge Schwartz in the Newman

19   case, which we attached to our papers, actually in a

20   very similar case where fraudulent concealment was

21   alleged, applied the federal procedural law and the

22   New Jersey substantive law, specifically citing both

23   the Fellerman case in her opinion and the Jedlowski

24   case, which we say are applicable here.

25                   **SPECIAL MASTER:**  Now, that was when

Page 93

 1    Judge Schwartz was a Magistrate Judge, correct?

 2             **MR. PLACITELLA:** Correct.

 3             **SPECIAL MASTER:** She's now serving on

 4    the Third Circuit Court of Appeals.

 5             **MR. PLACITELLA:** Correct. So we then

 6    have to look at what's the standard that applies for

 7    crime fraud in New Jersey. And that's the statute.

 8    Your Honor referred to it before.

 9             And it talked about privilege shall not

10    extend to a communication in the course of legal

11    services sought or obtained in aid of the commission

12    of a crime or fraud. It does not statutorily use

13    the words in furtherance of.

14             **SPECIAL MASTER:** But it says in aid of

15    the commission of.

16             **MR. PLACITELLA:** Absolutely correct.

17             **SPECIAL MASTER:** Doesn't that mean the

18    same thing?

19             **MR. PLACITELLA:** It does not mean the

20    same thing.

21             **SPECIAL MASTER:** Why not?

22             **MR. PLACITELLA:** Because it talks about

23    being sought or obtained.

24             **SPECIAL MASTER:** In aid of.

25             **MR. PLACITELLA:** In aid of.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 94

1          **SPECIAL MASTER:** Okay. Doesn't that

2     sound like in furtherance of?

3          **MR. PLACITELLA:** Well, when you look

4     at --

5          **SPECIAL MASTER:** Wait --

6          **MR. PLACITELLA:** Yes.

7          **SPECIAL MASTER:** -- English is not my

8     native language, so you need to help me on this.

9          **MR. PLACITELLA:** Right.

10          **SPECIAL MASTER:** When I read in aid of,

11     for me it's like saying in furtherance of. So you

12     need to tell me why that's wrong.

13          **MR. PLACITELLA:** Because in furtherance

14     of implies that it's only acts that are happening now

15     going forward.

16          In aid of can go back, it can look in

17     time as to the totality of the circumstances. So,

18     for example, let's say --

19          **SPECIAL MASTER:** I don't understand

20     that. You got to explain that a little bit better.

21          **MR. PLACITELLA:** Sure. So under the

22     New Jersey law, if you look at, for example, a case

23     like Jedlowski, what happened in Jedlowski was that

24     the lawyer certified answers to interrogatories with

25     information that was false. And they knew that

Page 95

1      information was false because of earlier information

2      that was in the files of Owens Corning demonstrating

3      the truth of the information.

4                    So what the Court in Jedlowski, which

5      has been cited in the New Jersey Court Rules, said

6      that even though the truth of the information may

7      have not been at the time in furtherance of a fraud,

8      when you tie the two together, you can't have a lie

9      without the truth.

10                   So in aid of and in --  so what the

11     Court has done --

12                   **SPECIAL MASTER:**  I'm sorry, but if I

13     understand what you're arguing right now, you're

14     saying that in aid of is actually a lot broader than

15     in furtherance of.

16                   **MR. PLACITELLA:**  That's correct.

17                   **SPECIAL MASTER:**  How does that help you?

18     Doesn't that hurt you?

19                   **MR. PLACITELLA:**  No, it doesn't hurt us,

20     because what it's saying is that we are permitted to

21     look at the totality of all the circumstances.

22                   And the rule of Fellerman is the statute

23     is to be interpreted broadly.   The rule of Jedlowski

24     is that the statute is to be interpreted broadly.

25                   **SPECIAL MASTER:**  But Jedlowski was a

Page 96

1    little bit different, because Jedlowski involved an

2    affidavit or a certification taken by a lawyer that

3    recited facts.   Well, the fact that it's a lawyer is

4    irrelevant.   He's like any other factual witness at

5    that point.   And that's what the Court was treating

6    him as and saying:   Well, you have shed your attorney

7    mantel to take the role of a fact witness.   As a fact

8    witness, then all those facts then become

9    discoverable.

10              **MR. PLACITELLA:**   Well, that's true.

11              **SPECIAL MASTER:**   But that's not what we

12   have here.

13              **MR. PLACITELLA:**   We absolutely have that

14   here.   And I'll explain to you why and I'll show you.

15              We have the BASF general counsel

16   certifying answers --  associate general counsel

17   certifying answers to interrogatories that aren't

18   true.   And the same general counsel office has

19   information in its possession directly contrary to

20   the answers to interrogatories that are being

21   certified by the same office.   That's Jedlowski.

22   That's what happened.

23              So what Jedlowski says is you are

24   allowed to look at the truth in order to expose the

25   lie.

Page 97

1              And that's why I say it's not just in

2     furtherance of.  You are allowed to -- and the law is

3     pretty clear.  Ocean Spray is the same thing.  You

4     can't have a lie -- you can't prove a lie without the

5     truth.  So you have to link the two.

6              So what ends up happening under our law,

7     instead of just the words --  it's kind of part of

8     the res gestae, your Honor, where --

9              **SPECIAL MASTER:**  I hate that term.

10              **MR. PLACITELLA:**  Where you have to look

11     at the totality of the circumstances.  And that's why

12     Fellerman says that you can't allow a Court or a

13     litigant to operate under a misimpression of what the

14     truth is.

15              So under New Jersey law it is pretty

16     clear I would submit that you get to look at all of

17     the circumstances in making your decision.

18              And if there is information in the files

19     of either Cahill or BASF that contradicts what they

20     told Courts and litigants, that information should

21     come out regardless of whether at the time it was

22     uttered it was at that point in furtherance of a

23     crime.  It may not have been at that point in time.

24     But it was used in furtherance of a crime because --

25              **SPECIAL MASTER:**  But isn't your argument

Page 98

1    that every single step -- taking the argument that

2    you advance, every single step taken here by BASF and

3    Cahill was in furtherance of this coverup?

4               MR. PLACITELLA:  That's correct.

5    That's our argument.

6               SPECIAL MASTER:  So why don't you stick

7    with your facts?

8               MR. PLACITELLA:  And I'm going to lay

9    the facts out.  But you asked me is it exactly the

10   same.  And I'm saying that just because a statement

11   is made at a time and it could be true and it might

12   have been privileged at that time, if it turns out

13   that that is part of the coverup, then it's in

14   furtherance of the crime.  So I think we're saying

15   the same thing.

16              SPECIAL MASTER:  Well, but I guess --

17   I'm still wondering why you're even arguing it.

18   Because if your argument is that every single

19   statement that was made was made in furtherance of

20   the coverup --

21              MR. PLACITELLA:  Correct.

22              SPECIAL MASTER:  -- then why aren't you

23   embracing the in furtherance of standard?

24              MR. PLACITELLA:  Well, I am not --

25              SPECIAL MASTER:  I'm sorry.  Mr.

Page 99

1  Pratter?

2          **MR. PRATTER:**  Thank you, your Honor.  If

3  I may, the other side is arguing it's a more

4  demanding standard.  We're saying that the benchmark

5  is as Mr. Placitella has said.  And that describes

6  the privilege to be interpreted broadly, not

7  narrowly.

8          **SPECIAL MASTER:**  But if it satisfies --

9          **MR. PRATTER:**  So it may be, your Honor,

10  that it meets both standard.  But the point is if

11  they're saying it's a narrower gate to go through,

12  we're saying no, that's incorrect.

13          **SPECIAL MASTER:**  But aren't you also

14  saying that regardless of how narrow that gate is, we

15  get through it?

16          **MR. PRATTER:**  Yes.

17          **SPECIAL MASTER:**  Okay.  I just wanted

18  to make sure that we're arguing about something

19  that's worthwhile arguing about.

20          **MR. ASSAF:**  I'm sorry.  Did Mr.

21  Placitella say that?

22          **SPECIAL MASTER:**  Well, it's just -- Mr.

23  Assaf, you will have your moment.

24          **MR. ASSAF:**  Sorry.

25          **SPECIAL MASTER:**  Okay.  I just want to

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                    Special Master Conference                    February 23, 2018

Page 100

1    make sure that the plaintiffs get the full

2    opportunity to present whatever it is they want to

3    present.

4              **MR. PRATTER:**  What I'm saying, your

5    Honor, is we meet the standard.  And if you choose to

6    say where the standard fits, you may think it doesn't

7    make a difference.  They say it makes a difference.

8    We don't agree.  We also don't agree that their

9    standard applies at this stage of the case in any

10   event.

11             **SPECIAL MASTER:**  But regardless, you say

12   even assuming the standard advanced by the

13   defendants, you satisfy it?

14             **MR. PRATTER:**  In the search of justice

15   and truth and what this case is all about, we think

16   we meet the standard.

17             **SPECIAL MASTER:**  Every case is about the

18   search of justice and truth.

19             **MR. PRATTER:**  This one in particular.

20             **SPECIAL MASTER:**  Well, this is not

21   special that way, not in my book.   They all are.

22             But I will tell what you makes this case

23   special in my book.  And that is that at issue is

24   the behavior of a law firm that I would describe as

25   venerable in the practice of law.  And to me that's

Page 101

1   important.

2          I've said to the people in this room,

3   those who have been here before, my view of the legal

4   profession and the high standard that I think it

5   enjoys and should enjoy, so much so as I've actually

6   joked, I married a lawyer, as you did.  Mine was 38

7   years ago.

8          **MR. PRATTER:**  So was mine.

9          **SPECIAL MASTER:**  So I think we're about

10   the same time.  Mr. Pratter's wife and I actually

11   did a case together about 25 years ago, representing

12   separate defendants.

13          **MR. PRATTER:**  Venerable cuts both ways,

14   your Honor.

15          **SPECIAL MASTER:**  Oh, it does.  But, you

16   know, it's not every case that alleges that a

17   venerable law firm engaged in a practice that, viewed

18   independently, not in the context of this case, is

19   one that would make everyone in this room cringe.

20          So to that extent this is a different

21   case, at least in my book.

22          **MR. PRATTER:**  I agree, it makes it

23   really different.

24          **SPECIAL MASTER:**  Okay.  Sorry, Mr.

25   Placitella, we went off on a tangent.

Page 102

1        **MR. PLACITELLA:** Your Honor, to address

2 your question directly, I believe contained within

3 the New Jersey statute is the notion of in

4 furtherance of. But the New Jersey statute is

5 broader. They had the opportunity to adopt that

6 language and they chose not to. It's purposefully

7 been interpreted much more broadly than BASF would

8 have the Court look at it. And that's my point.

9         And in term of what makes this

10 different, this is not a case that is enjoyable for

11 anybody, given the circumstances.

12        **SPECIAL MASTER:** I should hope not.

13        **MR. PLACITELLA:** But it's also about the

14 integrity of our profession and what we do. And in

15 that sense, you know, it's important.

16         And no one relishes these circumstances.

17 No one relishes how we got here. But we're here and

18 we have to work our way through it.

19         And the notion -- and I'll talk about it

20 later -- that this was a rogue law firm and, you

21 know, there was complicity here and the client still

22 has a lot to say about what's happening here. And

23 this notion that somehow the Cahill firm, who

24 deserves for all the good things they've done

25 respect, was just acting on their own, the -- and

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 103

1    I'll show you that the facts don't bear that out.

2    And I believe that --

3              SPECIAL MASTER:  Well, is that at all

4    relevant to what is before me?

5              MR. PLACITELLA:  It is relevant in terms

6    of the allegations by BASF that they and Engelhard --

7    there was no client intent because the -- and they

8    try to lay off client intent on Cahill Gordon.

9              But the facts show that there was in

10   fact client intent.  And we can talk about that.

11             SPECIAL MASTER:  Well, the argument

12   about client intent is under exception (2)(c), not

13   under (2)(a). You're talking about (2)(a).

14             MR. PLACITELLA:  Right.

15             SPECIAL MASTER:  And not to tip my hand

16   too much, but I will tell you I don't find the

17   argument on behalf of finding an exception under

18   (2)(c) to be terribly persuasive.

19             MR. PLACITELLA:  I understand.  So we

20   get back to -- so what's the standard?  We're not

21   required to prove that we can win the case.  We're

22   not required to prove under the Third Circuit law

23   it's more likely than not.

24             I think it does matter or that you

25   should consider that Superior Court Judges, an

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 104

1    Appellate Division Judge, and a former Supreme Court

2    Justice have found a prima facie case.  Without

3    getting to that record, it's just information in

4    terms of --

5              SPECIAL MASTER:  None of which --

6              MR. PLACITELLA:  -- this not in a

7    vacuum.

8              SPECIAL MASTER:  None of which is final.

9    All of which is actually before the Appellate

10   Division on a mandatory order from the Supreme Court

11   that they consider it on an interlocutory basis.

12             So I don't know what I'm supposed to get

13   from what you just said, except for the fact that

14   this has been litigated, but the results are not

15   final.

16             MR. PLACITELLA:  No.  Judge Litner

17   looked at this on a prima facie basis in a different

18   case and found just from looking -- you know, that

19   there was a prima facie case.  I'm not going to get

20   into more that.

21             SPECIAL MASTER:  But where did that get

22   anybody?  Because what happened with that case?

23             MR. PLACITELLA:  The case ultimately

24   resolved.

25             SPECIAL MASTER:  Okay.  So we have a

Page 105

1   retired Appellate Division Judge who sat as special

2   master in a case, and there he is, who rendered a

3   report and recommendation to a Superior Court Judge

4   that went nowhere.

5         I don't know what I'm supposed to do

6   with that.

7         **MR. PLACITELLA:** You're here to make

8   your own independent judgment, I understand that.

9         **SPECIAL MASTER:** Okay.

10         **MR. PLACITELLA:** My point is that

11   everyone who's looked at the records at least have

12   found a prima facie case in New Jersey.

13         **SPECIAL MASTER:** I will tell you a Judge

14   Litner story parenthetically. Judge Litner, when he

15   was on the Appellate Division, would do most of his

16   writing at home. And he has two very small dogs.

17   And he took great pride in the fact that he would

18   write with the dogs on his lap because he claimed

19   they helped him write his opinions and that they made

20   the opinions better.

21         And when he explained that to someone,

22   the response that he got was: You need more dogs.

23         So I don't know how many dogs that

24   special master report applied, so I can't really

25   judge it.

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                    Special Master Conference                    February 23, 2018

Page 106

1          **MR. PLACITELLA:**  Well, I can tell you

2     when I read it, I didn't see any evidence of Alpo or

3     anything else.

4          **SPECIAL MASTER:**  Okay.

5          **MR. PLACITELLA:**  So I'm assuming that he

6     took the time and came to his own conclusions.

7          **SPECIAL MASTER:**  He's an excellent

8     judge.

9          **MR. PLACITELLA:**  Right.  I think it's

10     worth pointing out that Judge Linares in this case

11     found in fact that BASF had a duty to preserve the

12     evidence.

13          **SPECIAL MASTER:**  Every party has a duty

14     to preserve evidence.

15          **MR. PLACITELLA:**  Right.  Well, there was

16     some debate as to that.  But it's no longer a debate

17     in this case.

18          **SPECIAL MASTER:**  Not as far as I'm

19     concerned.

20          **MR. PLACITELLA:**  Okay.  Now, so BASF in

21     its brief makes a number of points.  I want to

22     address a couple of them early on and then I'll

23     address the rest during the course of argument.

24          And essentially they make six points  In

25     their brief.

Page 107

1           One of the points they make, and it's a

2    significant point in their brief, is they say that

3    our papers were faulty because we did not identify --

4           **SPECIAL MASTER:**  Mr. Placitella, I don't

5    want to cut you short, but I think, at least by my

6    introduction to this, you know that I've read

7    everybody's papers.  I know what their arguments are.

8           **MR. PLACITELLA:**  Okay.

9           **SPECIAL MASTER:**  So can you guide

10   yourself accordingly.

11          **MR. PLACITELLA:**  Sure.  Absolutely.

12          **SPECIAL MASTER:**  Thank you.

13          **MR. PLACITELLA:**  So the one issue is we

14   believe that based on the public record itself that

15   we have established a prima facie case of crime

16   fraud.

17          The Court, however, under the law is

18   still permitted if it so chooses to look at the

19   withheld documents as part of its decision in making

20   that determination.

21          **SPECIAL MASTER:**  But typically isn't it

22   really a two step process?  Isn't it first a

23   determination by a preponderance of the evidence that

24   in fact that there was a good faith belief that the

25   exception would apply?  And that's got to be by a

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                          Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                          February 23, 2018

Page 108

1    prima facie showing.  And then it's only then that

2    the in camera ex parte examination is to occur?

3              The obligation to disclose even on a

4    limited basis solely to the Court does not ripen

5    until there's been a showing by a preponderance of

6    the evidence that there is a good faith belief that

7    the exception applies.

8              That's language, by the way, from your

9    brief.

10             **MR. PLACITELLA:**  Right.   I actually

11   believe if the ultimate question is, is there a

12   reasonable basis to believe -- to suspect that the

13   privilege-holder -- and you've quoted that before --

14             **SPECIAL MASTER:**  Right.  But --

15             **MR. PLACITELLA:**  -- and then when the

16   Court says --

17             **SPECIAL MASTER:**  -- you apply a

18   reasonable basis to a burden of proof.  And the

19   burden of proof is preponderance of the evidence.

20             **MR. PLACITELLA:**  Well, I don't think

21   that's how --

22             **SPECIAL MASTER:**  The answer to that is

23   yes.

24             **MR. PLACITELLA:**  Okay.  I don't believe

25   that's how it's articulated in the cases.  But

Page 109

1   doesn't sound like I'll dissuade you from that.

2           **SPECIAL MASTER:** But a reasonable basis

3   is not a burden of proof. Okay. A burden of proof

4   is either preponderance of the evidence, clear and

5   convincing evidence, beyond a reasonable doubt.

6   That's a burden of proof.

7           And everything that you prove has to

8   satisfy a burden of proof. If what you have to

9   prove is that there is a reasonable basis to believe,

10   the question is how do you have to prove that? To

11   what level do you have to go?

12           And the answer to that is you're

13   subjected to what I think is the lowest level of

14   proof, which is a fair preponderance of the evidence,

15   which means only that it's more likely than not.

16           **MR. PLACITELLA:** Well, I believe that

17   the cases articulate an even lower burden. But

18   taking --

19           **SPECIAL MASTER:** There is no lower

20   burden.

21           **MR. PLACITELLA:** But even taking that

22   burden, I believe that we've more than satisfied

23   that.

24           **SPECIAL MASTER:** Okay.

25           **MR. PLACITELLA:** But what the case law

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 110

1    does say is that if the Court is not satisfied for

2    some reason that the publicly available information

3    establishes a prima facie case, you can actually look

4    at the documents as part of making that

5    determination.

6              **SPECIAL MASTER:**  So you can go to step

7    two to determine whether step one is satisfied.

8              **MR. PLACITELLA:**  Yes.  It says -- and if

9    you look at In re: Grand Jury, it says that a factual

10   basis adequate to support a good faith belief by a

11   reasonable person that an in camera review may reveal

12   evidence.

13             So you can actually look at the

14   documents if you so choose.  We don't think you need

15   to do that.   I'm just saying that the law will allow

16   you to do that.

17             We believe that based upon the publicly

18   available information we more than satisfy the prima

19   facie case.

20             And so what is the crime or fraud that

21   we believe?  And we've articulated it in detail in

22   our brief, that there was a misrepresentation to

23   courts and litigants that there was no asbestos in

24   the Emtal talc, there was misrepresentations that

25   there was ever any testimony to that effect to courts

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                           Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                    February 23, 2018

Page 111

1    and litigants.

2              And it's not insignificant, but that

3    once dismissals were obtained, those dismissals were

4    used to secure other dismissals as precedent.   And

5    courts were told about that.  Courts that were in

6    charge of administering justice were purposely

7    misled.

8              Any one of those things I would submit

9    to you is more than enough to satisfy our low burden.

10   But we have a multiple level set of circumstances,

11   any one of which justifies it.

12             And also, because I know we spent a

13   couple minutes on it, the issue of destruction of

14   documents.

15             The issue here today is not whether BASF

16   has reconstructed a record from rocks that people

17   never looked under to try to build up what was once

18   destroyed.

19             One of the issues on crime fraud is was

20   the evidence destroyed or secreted away with intent?

21   That's crime fraud.

22             The whole issue of whether a spoliation

23   claim survives at trial, that's a whole another

24   inquiry.  And I'm not going to spend a lot of time on

25   that.

Page 112

```
 1              In fact, I think the Court has actually
 2    invited BASF, if they believe that's the case, to
 3    file a motion for summary judgment.  And we'll meet
 4    it.
 5              But the issue here is, for purposes of
 6    crime fraud, was evidence either destroyed or
 7    secreted away that would give rise to the crime fraud
 8    exception?  Not whether they've been able to
 9    reconstruct evidence many, many years later, which we
10    take great issue with.  They take great issue with us
11    on that issue.   We take great issue with them.
12              SPECIAL MASTER:  I'm surprised by that.
13              MR. PLACITELLA:  But you do not need to
14    get there to make this determination.
15              SPECIAL MASTER:  Well, yes and no,
16    because evidentiary determinations don't exist in a
17    vacuum.   They have to have a context.
18              And the context for your request for the
19    application of the exceptions to the attorney/client
20    privilege is your underlying claim, which is one of
21    fraudulent concealment.
22              And fraudulent concealment under New
23    Jersey law is simply the cause of action for
24    spoliation.   That's all it is.  It doesn't mean what
25    the two words would normally mean in regular
```

Page 113

1    parlance.   It means spoliation.   And if there's been

2    no spoliation, then there is no cause of action.   And

3    if there is no cause of action, then there's no basis

4    for the admissibility of the evidence and therefore

5    no reason to apply an exception.

6              MR. PLACITELLA:  Well, your Honor, I

7    have to tell you that I think that that's a

8    misreading of the law.

9              I think fraudulent concealment includes

10   the issue of spoliation in terms of destruction.   But

11   it also includes the issue of having evidence that

12   you withhold.   And that's what happened here.

13             SPECIAL MASTER:  Well, if you withhold

14   and don't make it available, you've spoliated it.

15             MR. PLACITELLA:  Well, that's exactly

16   right.

17             SPECIAL MASTER:  Okay.   So it's

18   spoliation by another name.

19             MR. PLACITELLA:  That's exactly right.

20             SPECIAL MASTER:  Okay.   So we can quote,

21   you know, Romeo and Juliet about a rose by any other

22   name, but...

23             MR. PLACITELLA:  And you have to look at

24   it at the time that the cause of action existed, not

25   if they found it after the fraud was exposed.   You

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Friday
C.A. No. 2:11-cv-01754-JLL-JAD  Special Master Conference  February 23, 2018

Page 114

1 have to freeze it in time.

2      What happened in 1992?  What was

3 available to these plaintiffs?  It was spoliated.

4 The information did not exist.   They said it did not

5 exist.

6      So we have to also look at who was

7 involved in the fraud.   It was Engelhard, Cahill,

8 and BASF.

9     **SPECIAL MASTER:**  Well, BASF because it

10 acquired Engelhard, right?

11     **MR. PLACITELLA:**  Well, BASF because it

12 not only acquired Engelhard but continued the exact

13 same conduct after it acquired Engelhard.   And I

14 will demonstrate that to you.

15     **SPECIAL MASTER:**  Remind me, when did

16 they acquire Engelhard?

17     **MR. PLACITELLA:**  2006.

18     **MR. COREN:**  June 2006, your Honor, was

19 the closing.

20     **MR. PLACITELLA:**  And the same thing

21 occurred all the way up until 2009 when it was

22 exposed in a New Jersey court.   And had it not been

23 exposed, it would still be going on.   And that was

24 long after BASF took over Engelhard.

25      So we're going to talk about what

Page 115

1    misrepresentations were made.   The

2    misrepresentations, and I think it's significant, did

3    not start in litigation.   And it goes to what the

4    root of all this was and what the intent was.   The

5    misrepresentations started soon after Engelhard took

6    over the Johnson mine.

7              **SPECIAL MASTER:**  And that occurred when?

8              **MR. PLACITELLA:**  In early 1970s.

9              **SPECIAL MASTER:**  Okay.

10             **MR. PLACITELLA:**  So in 1967 they buy the

11   mine.   From the 1970s into the 1980s, customers are

12   telling them that they don't want asbestos in their

13   talc.

14             **SPECIAL MASTER:**  Can you go back to the

15   prior slide?

16             **MR. PLACITELLA:**  Sure.

17             **SPECIAL MASTER:**  What's the date of that

18   letter?

19             **MR. PLACITELLA:**  1973.

20             **SPECIAL MASTER:**  Okay.   It's hard to

21   tell.

22             **MR. PLACITELLA:**  1973.   And there are

23   numerous examples of this.   I just put up a few.   I'm

24   happy to give them all to the Court if the Court

25   wants it.

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Friday
C.A. No. 2:11-cv-01754-JLL-JAD    Special Master Conference    February 23, 2018

Page 116

1          **SPECIAL MASTER:**  I thought you did.

2          **MR. PLACITELLA:**  Well, there's even more

3  than that.   But we figured we were pressing our luck

4  with what we gave you.

5          **SPECIAL MASTER:**  That's a kind way of

6  putting it, yes.

7          **MR. PLACITELLA:**  So customers, whether

8  they were General Electric, B. F. Goodrich, GAF,

9  throughout this entire time period, because the

10  dangers were known and publicized, were telling

11  Engelhard:  We do not want asbestos in this talc.  If

12  you're going to sell it, we don't want it.  We'll buy

13  it from somebody else.

14        And Engelhard knew that.   But what did

15  they say?  They told the customers, because they knew

16  what the demands were, that there is no asbestos in

17  the talc.  Not only did they say there's no asbestos

18  in the talc, they said there's not even a trace of

19  asbestos in the talc by the most sophisticated

20  scientific evidence available.

21        And they told, as I put up on the slide,

22  entire industries that that was the case in order to

23  secure that.

24        In fact, they told the federal

25  government that.   When they filled out their MSDS

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                          Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                    February 23, 2018

Page 117

1    sheets, they attached a technical data sheet that

2    also said to the federal government and anybody who

3    would buy their product there's no trace of asbestos

4    in the talc.

5                 **MR. FARRELL:**  Mr. Placitella, just to

6    clarify, on that last slide, is that quotation from

7    the document you're showing there.

8                 **MR. PLACITELLA:**  That's from what's

9    attached to the material safety data sheet.

10                **MR. FARRELL:**  So it's not from the

11   document that's on the screen?

12                **MR. PLACITELLA:**  It is.  It's attached

13   to material safety data sheet.

14                **MR. FARRELL:**  Okay.

15                **MR. PLACITELLA:**  Okay.  So in the face

16   of all that, from the early 19 --

17                **SPECIAL MASTER:**  Can I just stop you

18   there for a moment, because according to that prior,

19   it's supposedly Exhibits 7 and 8, which I'd like to

20   look at.

21                **MR. COREN:**  Is it 8 and 9?

22                **SPECIAL MASTER:**  That's what it says --

23   I'm sorry.  8 and 9.  Based on Mr. Farrell's

24   question, I want to take a little bit of a look at

25   the material safety data sheet.  Okay.  That is not

Page 118

1    Exhibit 8.

2                     Exhibit 9, Tab A is a technical data

3    sheet.  Tab B is a technical data sheet.  The MSDS is

4    Tab C under Exhibit 9.  And what you're citing from

5    is the technical data that appears as the third page

6    of the MSDS.  But when I look at the Bates numbers on

7    the bottom, they don't seem to be sequential.   I

8    can't tell.  They're cut off.

9                    MR. PLACITELLA:  They're cut off to me

10   too.

11                   MR. FARRELL:  I've looked at the MSDSs

12   carefully, your Honor, and I don't remember ever

13   seeing that quotation in the MSDS.

14                   SPECIAL MASTER:  Do you have these

15   exhibits handy?

16                   MR. FARRELL:  We're checking it now

17   and --

18                   SPECIAL MASTER:  You're welcome to come

19   over here and take a look, because I think this

20   binder weighs more than you do.  So it's easier for

21   you to come here than for me to take it over there.

22                   MR. FARRELL:  I'll take that as a

23   compliment, your Honor.

24                   SPECIAL MASTER:  Here's the MSDS front

25   and back.  And then the next page is this.  I can't

Page 119

1    foot these --

2              **MR. FARRELL:**  They're not sequential.

3              **SPECIAL MASTER:**  Well, I don't know if

4    they are.   But the language is in the second

5    paragraph here.

6              **MR. FARRELL:**  That's correct.  But I

7    have not seen a reference to the technical data sheet

8    as an attachment to the MSDS document.

9              **SPECIAL MASTER:**  I will tell you I've

10   done MSDSs and I've never attached a technical data

11   sheet to one.  But I don't know what other people do.

12             **MR. PLACITELLA:**  It's possible, but I'll

13   check, that I misspoke.  But I know for a fact that

14   what the customers would get would be the MSDS sheet

15   along with the technical data sheet.  Whether it was

16   actually attached or not, I'll have to double-check

17   and let you know.

18             **SPECIAL MASTER:**  Okay.

19             **MR. FARRELL:**  I think the issue, your

20   Honor, was that Mr. Placitella was saying the

21   government received the technical data sheet.

22             And the point I was raising is that I

23   don't believe that language is in the MSDS.  And I

24   don't mean to interrupt his argument.

25             **MR. PLACITELLA:**  It's not in the MSDS

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 120

1   sheet itself.  Okay.  So during this period of

2   time --

3               **SPECIAL MASTER:**  And I did not mean to

4   be rude --

5               **MR. PLACITELLA:**  No, no.  It's a fair

6   point.

7               **SPECIAL MASTER:**  -- this is a pretty big

8   issue and I want to make sure I get it right.

9               **MR. PLACITELLA:**  Right.  So while the

10  representations are being made to the customers that

11  there's not even a trace of asbestos, there are --

12  and I'm not going to go through all of it, but just

13  to highlight examples, beginning in 1972 their

14  insurance carriers are telling them that they find

15  asbestos.

16               They find it in the waste rock in 1973.

17  They find it in the air samples in 1977.  They find

18  multiple forms of asbestos in the Emtal talc.  They

19  find tremolite asbestos in 1972.

20               And, again it happens multiple --

21  again, here's another example in 1977.   They find

22  chrysotile asbestos.

23               It's significant that they start

24  actually counting the number of fibers.  And they're

25  not finding a few fibers.  They're finding millions

Page 121

1 of fibers.   And this is in the testing documents

2 that are being generated.

3    And BASF in its papers constantly say:

4 Well, they only found trace amounts.

5    But when you look at the data, that's

6 just not -- that's not factual.  What they found

7 was --

8    **SPECIAL MASTER:**  How do I make that

9 differentiation?  Because all you're pointing out to

10 me is the quintessential one man's floor is another

11 man's ceiling.

12    I don't know, nor have I been given the

13 type of expert information I would need in order to

14 judge whether X number of fibers per million is a

15 good thing or a bad thing or --

16    **MR. PLACITELLA:**  And you don't have to

17 make that judgment.  What I'm saying to you is --

18    **SPECIAL MASTER:**  Well, but if they're

19 making a judgment -- if people who are experienced in

20 the area are making the judgment that based upon what

21 their results are, they can make the representation

22 that there are only trace amounts or no discernible

23 amounts of asbestos in it, I don't know what that

24 means.

25    I will tell you I recently tried a case

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                   Special Master Conference                    February 23, 2018

Page 122

1    where the expert testified at length that it was

2    highly unlikely that things as alleged by the

3    plaintiff could be so.

4              And of course, plaintiff's lawyer

5    cross-examined this witness, who was a full professor

6    at Texas Tech and the nation's leading expert on

7    blood brain barrier matters, and said:  Whoa, you

8    know, you said it was highly unlikely.  That doesn't

9    mean it's impossible.

10             And she looked at him and said:  No good

11   scientist will ever say that anything is impossible.

12   But when we say it's highly unlikely, that's really

13   what it means.

14             So I don't know what they mean by that.

15             MR. PLACITELLA:  Yes.  And you're right.

16   And we're not debating the science.

17             But what is in the files?  The files

18   don't say trace amounts.  They don't say -- the

19   files say trace to abundant.  Right.

20             They only couched their argument in

21   terms of trace.  The files that were withheld say

22   trace to abundant.

23             SPECIAL MASTER:  But I don't know what

24   abundant means.

25             MR. PLACITELLA:  It means more than

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                          Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference                      February 23, 2018

Page 123

1    trace.   And we have Dr. Hemstock's testimony, who

2    was the head scientist, explaining what that means.

3                But the point here is not that we need

4    to engage in a scientific debate at this point.

5                They said there was none, not that there

6    was trace amounts.   They said that there were no

7    tests --

8                **SPECIAL MASTER:**  But that's my point.

9    My point is can they, consistent with the reports

10   that they have, say, quote, there was none, unquote?

11               **MR. PLACITELLA:**  No, they can't.

12               **SPECIAL MASTER:**  Okay.  That's the

13   gospel according to Mr. Placitella.

14               **MR. PLACITELLA:**  No, your Honor --

15               **SPECIAL MASTER:**  Tell me someone else,

16   some other authority for that?

17               **MR. PLACITELLA:**  Their own scientist

18   when I asked him in a deposition is this a true

19   statement that there was no testing to show asbestos,

20   he said no.

21               When the three scientists were

22   questioned in the Westfall case, they all said they

23   found asbestos in the talc, not below detection

24   levels, not some debatable level.

25               The issue is did they have evidence?

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Friday
C.A. No. 2:11-cv-01754-JLL-JAD    Special Master Conference    February 23, 2018

Page 124

1   They said there was no evidence, not that the

2   evidence was unreliable, not that the evidence was

3   sporadic.

4          They made representations to courts and

5   litigants that there was, one, no asbestos in the

6   talc, but even more importantly, two, no evidence of

7   asbestos in the talc.

8         **SPECIAL MASTER:**  And I ask you these

9   questions because -- and I'm presaging what

10  defendants are going arguing --

11        **MR. PLACITELLA:**  Of course.

12        **SPECIAL MASTER:**  -- is that they're

13  basically saying:  Our representations were accurate,

14  you know, within the bubble of things that could be

15  said.

16        And I hear you to say that no, they were

17  not accurate because they could never have been

18  accurate given the facts.

19        **MR. PLACITELLA:**  Their representations

20  could never have been accurate given the facts as

21  they existed.

22        **SPECIAL MASTER:**  Okay.

23        **MR. PLACITELLA:**  If they would have

24  said --

25        **SPECIAL MASTER:**  I thought that's what I

Page 125

1 said.

2     **MR. PLACITELLA:**  If they would have

3 said, you know, there are levels that are below

4 detection but they're there, or there are levels --

5     **SPECIAL MASTER:**  Well, if they're below

6 detection, how do they know that they're there?

7     **MR. PLACITELLA:**  Well, because it

8 depends on the method you use.

9     If they would have said there are levels

10 but it didn't matter, there weren't health

11 consequences because they were so low, that might

12 have been different.

13     But what they said was there were no

14 results at all.  No results at all.  And that was

15 not true.

16     **SPECIAL MASTER:**  Okay.

17     **MR. PLACITELLA:**  And you can't slice it

18 any other way.  When they say --

19     **SPECIAL MASTER:**  Well, Mr. Assaf is

20 going to do a real hard effort at slicing it.  But

21 that's for later.

22     **MR. PLACITELLA:**  And it wasn't that it

23 was just Engelhard who did the tests.  They had

24 outside laboratories.  They had two and three

25 laboratories at a time looking at the same stuff.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 126

1   And they said:  We found asbestos in the talc.  And

2   here they say from trace to abundant.

3          SPECIAL MASTER:  I still don't know what

4   that means.

5          MR. PLACITELLA:  That's okay.  In 1979

6   they had the same samples looked at by three separate

7   laboratories.  And they found asbestos in every

8   sample.

9          Now, so then we get to -- and we talked

10   about this a little earlier.  One of the significant

11   misrepresentations in this case, and we'll get there

12   in a second, is that there was never any evidence of

13   asbestos in the mine, because if you could convince

14   somebody that the mine didn't have any asbestos, then

15   there was no reason to get to the product, because

16   the product was the product of what came out of the

17   mine.

18          SPECIAL MASTER:  There was no other

19   place where asbestos could come into the

20   manufacturing process?

21          MR. PLACITELLA:  Correct, unless they're

22   going to say it was some contaminant during testing

23   or something.

24          So what they did is they focused their

25   affidavits and their efforts to say that there was no

Page 127

1    asbestos in the mine.   But they knew that was not

2    true, because they went to the mine in 1979, the head

3    researcher, Mr. Gale, and they took samples and they

4    brought them back.

5              And what happened was that they wanted

6    to make sure they had the most sophisticated test

7    possible.   And what they did was they actually sent

8    them down to Georgia Tech.   And then Mr. Gale went to

9    Georgia Tech to use their equipment to make sure he

10   had the most sophisticated information.   And they

11   found asbestos in the talc -- in the mine, not in a

12   production sample, but in the mine itself.

13             **SPECIAL MASTER:**  You mean in the ore

14   from the mine.

15             **MR. PLACITELLA:**  In the ore.   In the

16   ore.

17             And it's interesting, because when you

18   look at -- and the documents tell us, what was the

19   purpose of the study that they were conducting?

20             Well, they were actually thinking of at

21   the time expanding the mining operation, building a

22   new mill.   So they were down there as part of that

23   process.

24             **MR. ASSAF:**  Excuse me, what slide number

25   was that?

Page 128

1       **MR. PLACITELLA:** 5/17/79.

2       **MR. FARRELL:** No, the slide, so I can --

3       **SPECIAL MASTER:** They normally have a

4 number on the bottom.

5       **MR. PLACITELLA:** 47.

6       **MR. ROTH:** 47.

7       **MR. FARRELL:** Thank you.

8       **SPECIAL MASTER:** Okay.

9       **MR. PLACITELLA:** So when they came back,

10 Peter Gale, now we know from his transcript, Glenn

11 Hemstock, Georgia Tech, they all found asbestos in

12 that ore.  They all did.

13       **SPECIAL MASTER:** You don't mean those

14 circles to be Venn diagrams, do you?

15       **MR. PLACITELLA:** There you go.

16       **SPECIAL MASTER:** Just asking.  I don't

17 want to be literal.

18       **MR. PLACITELLA:** So then they had a

19 meeting.  It was right after these results came out

20 in May of '79.  And at the meeting they concluded

21 asbestos fiber is present.

22       Now, BASF deposed Mr. Swanson, who was

23 one of the people who worked in the laboratory.  And

24 his daughter developed mesothelioma.  We discovered

25 this at his deposition.  I didn't even know it when

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                    Special Master Conference                    February 23, 2018

Page 129

1    I was asking the questions, frankly.  BASF asked him

2    the questions.

3                    And he said:  Oh, yeah, there's

4    asbestos -- there was asbestos in that talc.

5                    And they said:  No, Mr. Swanson, I'm not

6    talking about the other --  I'm talking about the

7    talc.

8                    He says:  No.  I know.  It was the

9    talc.

10                    How do you know it was the talc?

11                    I did -- you know, I was there.

12                    And then they asked him:  What happened?

13                    And he said:  Well, once we found the

14   asbestos in the talc, they closed up the mine, and we

15   were told to put all of our stuff outside our door

16   and I never saw it again.

17                    And that's what happened.

18                    **SPECIAL MASTER:**  Put all of our stuff,

19   what does that mean?

20                    **MR. PLACITELLA:**  All of our testing

21   related to the Emtal talc outside of our door.  And

22   it was picked up and we never saw the testing again.

23                    **SPECIAL MASTER:**  Was that part of the

24   March --

25                    **MR. PLACITELLA:**  Correct.

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                    February 23, 2018

Page 130

1          **SPECIAL MASTER:**  -- 7, 1984, document

2   retention and destruction memorandum?  Right.  And

3   it's interesting because --

4          **SPECIAL MASTER:**  The one you call the

5   purge memo?

6          **MR. PLACITELLA:**  Yeah.

7          **SPECIAL MASTER:**  I like that name.  It

8   may not be accurate, but it's catchy.

9          **MR. PLACITELLA:**  It's interesting that

10  when Mr. Swanson was asked questions, he did not know

11  the exact date of the memo he got, but he

12  recounted -- he said:  I had a memo after we found

13  the asbestos, and the memo told us what to do with

14  the evidence.   And I believe that the memo was sent

15  by my boss, Glenn Hemstock, but it was authored by

16  the legal department.

17          And it turns out he was pretty darn

18  accurate that it was sent by his boss.  And his boss

19  actually testified under oath that it was authored by

20  the legal department.

21          **SPECIAL MASTER:**  Was this the deposition

22  that was taken back in the 80s --

23          **MR. PLACITELLA:**  No.

24          **SPECIAL MASTER:**  -- or is this the

25  deposition more recently taken where Mr. Hemstock

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Friday
C.A. No. 2:11-cv-01754-JLL-JAD  Special Master Conference  February 23, 2018

Page 131

 1  himself was in his 80s --

 2              **MR. PLACITELLA:**  Correct.

 3              **SPECIAL MASTER:**  -- and at an assisted

 4  living facility?

 5              **MR. PLACITELLA:**  No, he wasn't at an

 6  assisted living facility.  He was at a hotel being

 7  represented.

 8              **SPECIAL MASTER:**  He wasn't living in a

 9  hotel, was he?

10              **MR. PLACITELLA:**  No, your Honor.

11              **SPECIAL MASTER:**  Where was he living?

12              **MR. PLACITELLA:**  He was living with his

13  wife.

14              **SPECIAL MASTER:**  In an assisted living

15  facility, correct?

16              **MR. PLACITELLA:**  His health was fine.

17  His wife's health was compromised.

18              **MR. ASSAF:**  You are correct, your Honor.

19              **MR. PLACITELLA:**  His health --

20              **SPECIAL MASTER:**  I did read everything.

21              **MR. PLACITELLA:**  He was living --

22  because his wife needed extra care.  His health was

23  fine.

24              **SPECIAL MASTER:**  Okay.

25              **MR. PLACITELLA:**  And if you look at his

Page 132

1   videotape, you will see that he was pretty spry.  He

2   was very well under control.

3           **SPECIAL MASTER:**  I should look that

4   good.  But I'd rather keep my hair too.

5           **MR. PLACITELLA:**  Yeah.  We went through

6   with him all the testing.  And we actually asked him,

7   because he knows what the testing was, and we went

8   through each document.  We said:  Okay, was this

9   reliable?  Did you rely upon this?  Was this

10  reliable?  Was it unreliable?  We actually asked him

11  to put it in three columns, positive, negative, and

12  tests that he thought there were problems with.

13          They say he was pressured.  So I went

14  back and I asked him questions.  And I cited to the

15  transcript.  When you went through all these tests,

16  and I went through every one all over again, did you

17  feel pressure?

18          And you can look at his videotape if you

19  so choose.

20          And he said:  No, you know, I'm good

21  with what I testified with.

22          And I asked him:  What did you mean --

23  what did it mean by trace?  What did that mean?

24          And he said:  Well, trace was in the

25  order of a couple of percent or so.

USDC, District of NJ                  Williams, et al. v. BASF Catalysts, LLC, et al.                        Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                      February 23, 2018

Page 133

1          So then I asked him:  Well, what does

2     that mean in the real world if it's just trace?

3     Forget abundant.  If it's just trace, what does that

4     mean in the real world?  And I said:  So, for

5     example, you know, given the amount of Emtal talc

6     that was sold to the Congoleum plant in Trenton, what

7     did that mean?

8                And he said:  Well, you know, and I --

9     using the two percent, it was about 1,000,800 pounds

10    of asbestos over three years inside the talc.

11                **SPECIAL MASTER:**  So if the asbestos was

12    one percent of the talc that was being sent out?

13                **MR. PLACITELLA:**  It would be half of

14    that.

15                **SPECIAL MASTER:**  I'm sorry?

16                **MR. PLACITELLA:**  Then it would have been

17    300,000 pounds.

18                **SPECIAL MASTER:**  So he used --

19                **MR. PLACITELLA:**  He used two percent --

20                **SPECIAL MASTER:**  He used two percent.

21                **MR. PLACITELLA:**  -- as a trace.

22                **SPECIAL MASTER:**  Okay.

23                **MR. PLACITELLA:**  And then he took the

24    total poundage -- and I walked through him through

25    this --

Page 134

1          **SPECIAL MASTER:**  Of the talc actually

2  sold to Congoleum?

3          **MR. PLACITELLA:**  Correct.

4          **SPECIAL MASTER:**  And it's just simple

5  arithmetic.

6          **MR. PLACITELLA:**  Exactly right.  Now, to

7  be fair, I walked him through the calculations.  But

8  that's where we got -- just to give it context --

9          **SPECIAL MASTER:**  Take it back again.

10  What's the relevance of the red box?

11          **MR. PLACITELLA:**  That's just the math.

12  He said it was 1,800 pounds over three years.

13          **SPECIAL MASTER:**  It's one million eight.

14          **MR. PLACITELLA:**  Right, a million eight

15  over three years.  So one year would have been

16  600,000.

17          **SPECIAL MASTER:**  Well, there's a

18  difference between 600,000 pounds of asbestos and

19  600,000 pounds of asbestiform material.

20          **MR. PLACITELLA:**  No.

21          **SPECIAL MASTER:**  No?

22          **MR. PLACITELLA:**  There's a difference --

23          **SPECIAL MASTER:**  The words have meaning.

24          **MR. PLACITELLA:**  There's a -- I'm not

25  sure I'm getting --

Page 135

1                    **SPECIAL MASTER:**  Asbestos is one thing.

2     Asbestiform is something else.

3                    **MR. PLACITELLA:**  I don't think that

4     that's an accurate description of the science.

5                    **SPECIAL MASTER:**  Okay.

6                    **MR. PLACITELLA:**  But we don't have to --

7                    **SPECIAL MASTER:**  Yeah, we do.  But

8     that's all right.

9                    **MR. PLACITELLA:**  Okay.  So what happens

10    in the face of all this information?  A lawsuit is

11    filed by Mr. Westfall.  And Engelhard is not

12    originally in the case.  They're joined later.  But a

13    lawsuit is filed in October of 1982.  Significantly,

14    at the same time --

15                   **SPECIAL MASTER:**  And this is the one in

16    Rhode Island?

17                   **MR. PLACITELLA:**  Correct.

18    Significantly, at the same time there's -- or close

19    in time there's another lawsuit filed in California

20    called the Schwartz case.  And the significance of

21    that will become evident in a couple minutes.

22                   In March of '83 Dr. Hemstock testifies

23    that there were tests showing from trace to abundant

24    fibers of asbestos in the talc depending on the test

25    that you looked at.  In April of --

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 136

1          **SPECIAL MASTER:**  Don't go too far,

2     because there's a little bit of confusion in respect

3     of that.

4          I thought in your brief you referred to

5     the Hemstock deposition as Exhibit 3.  And it's

6     actually Exhibit 4.

7          **MR. PLACITELLA:**  Oh.

8          **SPECIAL MASTER:**  I just want to make

9     sure that we're clear on that record.  It was in a

10    footnote, if memory serves me.  Oh, actually it's

11    footnote 4 of your brief where you refer to Exhibit 4

12    as the, quote, Cahill compilation.

13         **MR. PLACITELLA:**  That's different.

14         **SPECIAL MASTER:**  And in fact, Exhibit 4

15    is the continued deposition of Glenn Hemstock.

16         **MR. PLACITELLA:**  Right.  The Cahill

17    compilation is different.

18         **SPECIAL MASTER:**  Okay.  I thought so.

19         **MR. PLACITELLA:**  That's Exhibit 3.

20         **SPECIAL MASTER:**  And we're all going to

21    blame your son for this mistake.  You get a pass on

22    that one.

23         **MR. PLACITELLA:**  So first Dr. Hemstock

24    says that the testing showed trace to abundant

25    asbestos, depending on the tests that were done and

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Friday
C.A. No. 2:11-cv-01754-JLL-JAD    Special Master Conference    February 23, 2018

Page 137

1    when.  Dr. Triglia verifies.  Dr. Gale we know

2    now --

3             **SPECIAL MASTER:**  It's not Dr. Gale, it's

4    just Mr. Gale, correct?

5             **MR. PLACITELLA:**  Mr. Gale.  He also

6    says that they found chrysotile fibers.  So you have

7    three different scientists all testifying.  Then the

8    Westfall case settles.

9             **SPECIAL MASTER:**  They do that.

10             **MR. PLACITELLA:**  Right.  Good for Mr.

11    Westfall.

12             So what happens?  As a condition of

13    settlement, all of the information that was

14    accumulated during the case gets turned back over to

15    Engelhard.

16             **SPECIAL MASTER:**  That's not unusual.

17             **MR. PLACITELLA:**  It's not unusual --

18             **SPECIAL MASTER:**  It's not unusual.

19             **MR. PLACITELLA:**  -- it's kind of unusual

20    that the depositions get turned back over.  But it

21    does happen.  And it happened in this case.

22             **SPECIAL MASTER:**  I will tell you it

23    happens in pretty much every case I handle.  So

24    that's not unusual to me.

25             **MR. PLACITELLA:**  All right.  So what

Page 138

1    happened?  What's turned back over?  What's turned

2    back over is all of the scientific testing, all of

3    the depositions, all of the exhibits to the

4    depositions, and more than that, all of the evidence

5    that the plaintiff had amassed independently, which

6    is unusual.

7              So for example, they had a Dr. Glassley,

8    who was a geologist.  They hired him.  Dr. Glassley

9    went up to the mine.

10             **SPECIAL MASTER:**  You mean Westfall did?

11             **MR. PLACITELLA:**  Correct.  Dr. Glassley

12   went up to the mine.   Dr. Glassley, because he

13   couldn't get into the mine itself, took samples right

14   out on the side of the mine, the waste samples, and

15   he did testing.   And he was prepared to testify that

16   he found chrysotile asbestos in that mine.

17             And what he did is he had scientific

18   data.  He took photographs under the microscope.  He

19   took notes.  He had samples.  That Westfall was

20   forced to turn over to Engelhard.

21             **SPECIAL MASTER:**  Well, he wasn't forced

22   to turn over.  He agreed to turn it over as part his

23   settlement.  Nobody put a gun to his head, did they?

24             **MR. PLACITELLA:**  Well, okay.

25             **SPECIAL MASTER:**  He had the option to

Page 139

1    say no.

2                    MR. PLACITELLA:  He did have the option

3    to say no.

4                    SPECIAL MASTER:  Okay.

5                    MR. PLACITELLA:  So what happened to Dr.

6    Glassley's material?  Right.   Dr. Glassley's

7    evidence was destroyed.   Right.   It wasn't preserved

8    at this point in time.   They destroyed his samples.

9    They destroyed his notes.  They destroyed all of his

10   findings.

11                   SPECIAL MASTER:  How do we know that?

12                   MR. PLACITELLA:  Because they admitted

13   it in their request for admissions.   And we know

14   that they did that.  And that's not usual.   Okay.

15                   And the only thing that Dr. Glassley

16   kept was he had a field notebook and some notes of

17   his own because it pertained to other work that he

18   did.

19                   But the work that he turned over to

20   Westfall was destroyed.

21                   SPECIAL MASTER:  Pursuant to a

22   stipulation.

23                   MR. PLACITELLA:  Pursuant to their

24   agreement.   Now, that becomes material because that

25   same evidence in some other form surfaces 20 years

Page 140

1   later.  And we'll talk about that in a little bit.

2   It becomes significant in terms of what happens here.

3   So some months later --

4           **SPECIAL MASTER:**  I'm looking at my watch

5   because you told me --

6           **MR. PLACITELLA:**  I know that.

7           **SPECIAL MASTER:**  -- you have a hard stop

8   at 3:30.

9           **MR. PLACITELLA:**  I'm going to try move

10  through this quickly now.

11          **SPECIAL MASTER:**  Okay.  And I apologize

12  if I'm eating up your time.

13          **MR. PLACITELLA:**  That's okay.  Some

14  months later -- it settles in the fall.  And some

15  months later the purge memo is sent out over Dr.

16  Hemstock's name.  And that purge memo, calling for

17  they say the return of the information, that whole

18  process is going on and the Glassley evidence is

19  destroyed.  It's material evidence.  It shows

20  asbestos in the mine.  That all is going on while the

21  Schwartz case is still pending.

22          So the process of gathering up the

23  evidence, the process of destroying the Glassley

24  samples and the Glassley notes, that all is happening

25  while there's another case pending in California.

Page 141

1          **SPECIAL MASTER:**  To be fair with you,

2    because you are talking about the purge memo, I don't

3    read it the way you do.   I just want you to know

4    that.

5               What I find most telling about the purge

6    memo, and I'm using that term because that's what you

7    called it, is the last full sentence in the substance

8    of it, which says:  Please understand that it is our

9    intent to retain copies of those documents to be

10   preserved from discontinued operations only in our

11   central files and can be accessed there should the

12   need arise.

13          **MR. PLACITELLA:**  Yes, that's what it

14   says.  I absolutely agree.  That's not what happened

15   though.

16          **SPECIAL MASTER:**  Well, but it's not a

17   purge memo.   It is a document retention memo.   And

18   no different than what any number of companies were

19   doing in the early 1980s when all of a sudden there

20   was this explosion of information and you simply

21   couldn't keep the information any longer.   Everybody

22   started adopting document retention and destruction

23   policies.

24          **MR. PLACITELLA:**  I understand.  But what

25   we'll demonstrate to you happened -- and by the way,

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 142

1    this only proves the point about fraudulent

2    representation, because by their own memo they gather

3    all of the information in one place.

4            So even if that's true, and we don't

5    believe it was true, because we'll -- and I'll show

6    you why.  But even if that was true and that's what

7    they did, that only proves that they had the evidence

8    in their possession at a time when they were making

9    representations that the evidence did not exist.

10           So the purge memo is sent.   Dr.

11   Hemstock testifies in the Samson case that it went

12   out under his name but it was authored by Mr.

13   Dornbusch.

14           So now the Schwartz case settles in

15   July.  And then some time passes.   And then

16   litigation starts anew.

17           And one of the things that happens --

18   and I'm not going to go into this in great detail

19   because you've read it.  I just want to put some

20   things in context.

21           They hire -- they get together with

22   Johnson & Johnson and they construct this affidavit.

23   And the affidavit says, one, there's no asbestos in

24   Vermont, which we know is not true, but that the

25   Johnson mine itself is free from contamination by

Page 143

1    asbestos.

2                    And what's significant here is that --

3          **SPECIAL MASTER:**  And that affidavit was

4    submitted in which case?

5          **MR. PLACITELLA:**  It was submitted in

6    hundreds, if not thousands of cases over and over and

7    over.

8                    And what's significant in that

9    affidavit, and they do cite two articles that --

10          **SPECIAL MASTER:**  Just so that I know,

11   your referring to the Ashton affidavit?

12          **MR. PLACITELLA:**  Correct.   The Ashton

13   affidavit contains of a number of things.   It

14   contains published articles that do draw the

15   conclusion that there was no asbestos in the mine.

16                   If you look at -- we don't really have

17   to go there, but if you actually look at the

18   articles, you see the sampling that was done was done

19   in the 40s and 50s when they're at a different level.

20   But we don't have to go there.

21                   But one of the significant pieces of the

22   affidavit is they attach as proof that there was no

23   asbestos in the mine the deposition testimony of Mr.

24   Chidester, who was their expert in the Westfall case.

25                   So they clearly, both Johnson & Johnson

Page 144

1   and Engelhard, are referencing the Westfall case and

2   they're attaching sworn testimony from the Westfall

3   case.

4         **SPECIAL MASTER:**   They're referencing Dr.

5   Chidester's testimony --

6         **MR. PLACITELLA:**   Correct.

7         **SPECIAL MASTER:**   -- that could have been

8   given in any case.

9         **MR. PLACITELLA:**   No, your Honor.   They

10   attached the Westfall transcript.

11         **SPECIAL MASTER:**   I understand that.   But

12   it could have been in any case.   I don't think that

13   the plaintiff would have made any difference to what

14   Dr. Chidester said, would it?

15         **MR. PLACITELLA:**   No, that's not my

16   point.   My point is that they took the testimony from

17   the Westfall case for Chidester knowing full well

18   that their own scientists provided testimony that was

19   exactly the opposite.   And that was not part of the

20   affidavit.

21         If the affidavit was going to be

22   truthful, it would have said:   This is my opinion,

23   this is what Dr. Chidester said, and, oh, by the way,

24   there were tests but they were either unreliable or

25   they only showed trace, and by the way, our own

Page 145

1    expert -- our own scientists also testified and you

2    should look at that and then you make your

3    determination what you're going do with that

4    information.

5             They didn't do that. They knew it was

6    there.

7             **SPECIAL MASTER:** Wouldn't they have been

8    entitled to decide what they wanted to rely upon on

9    the basis of credibility? Maybe they thought Dr.

10   Chidester was more credible than their own people. I

11   don't know that.

12           **MR. PLACITELLA:** Well, they used Dr.

13   Ashton's affidavit to say there was no evidence. It

14   did not contain asbestos. That just wasn't true.

15   At most it was misleading.

16           In fact, I asked Dr. -- and I'll show

17   you the testimony. I asked Dr. Hemstock himself

18   whether the affidavit was truthful. He said no.

19          **SPECIAL MASTER:** Well, of course he's

20   going to say no. At least that's consistent with

21   what he had said before. Whether it's right or not

22   is a different story. But it is consistent.

23          **MR. PLACITELLA:** Then in order to

24   buttress that claim, they go to Mr. Carter. And

25   they have Mr. Carter execute an affidavit. And they

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 146

 1   have Mr. Carter kind of seal the deal.

 2                While Mr. Dr. Ashton talks about his

 3   opinions, Mr. Carter then comes forward and says:

 4   And there is nothing else to look at.   Right.   We

 5   don't have any other testing data.   That's his

 6   affidavit.

 7                Now, if you take the purge memo at its

 8   face, of course they had the data.   If you take the

 9   Cahill compilation which they found in Mr.

10   Dornbusch's own personal file, of course they had the

11   data.

12                But they had Mr. Carter execute an

13   affidavit saying that they don't have any testing

14   data.

15                So they used both the Carter affidavit

16   and the Dornbusch affidavit in conjunction the Ashton

17   affidavit together to convince claimants, courts, and

18   litigants that there was no merit to them going

19   forward with their case.

20                And we put in our brief a few examples

21   of the letters that were sent.   We can give you all

22   the examples if you really want to see them.   There

23   are many, many, many examples.

24                **SPECIAL MASTER:**  Do I look like I want

25   you to give me more paper?

USDC, District of NJ               Williams, et al. v. BASF Catalysts, LLC, et al.               Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 147

1              **MR. PLACITELLA:**  No.

2              **SPECIAL MASTER:**  Okay.

3              **MR. PLACITELLA:**  They did it in

4   virtually every state from Michigan to Arkansas to

5   Massachusetts.  They did it to me.   In 2009 they

6   sent us the same letter and they threatened us with

7   sanctions.

8              **SPECIAL MASTER:**  Well, did they do it to

9   you or to your wife?

10             **MR. PLACITELLA:**  Well, to my wife.  But

11  I always take the brunt of it.

12             **SPECIAL MASTER:**  Well, as it should be.

13             **MR. PLACITELLA:**  As it should be.

14             **SPECIAL MASTER:**  But I recall reading

15  that letter.  And it was not addressed to you.

16             **MR. PLACITELLA:**  Right.   It was

17  addressed to her.  But in my house we're the same.

18  So I'm saying that on the record for points.

19             **SPECIAL MASTER:**  No, I'm going to use

20  that to blackmail you, because in my house my wife

21  and I are not the same.

22             **MR. PLACITELLA:**  So this is 2009, three

23  years after BASF takes over Engelhard.

24             And they didn't just put it in letters,

25  your Honor.   They put it in sworn answers to

Page 148

1    interrogatories.   They did it in the Chernick case,

2    which is a representative of the plaintiffs in this

3    case.   In the Chernick case, not only did they say

4    that there was no asbestos in the talc, they said

5    nobody ever testified, there was no prior testimony.

6    That was just not true.

7              **SPECIAL MASTER:**   Correct me if I'm

8    wrong, the Chernick case in New York is still going

9    on?

10             **MR. PLACITELLA:**   Correct.   But Engelhard

11   is out of it -- or BASF is out of it.

12             **SPECIAL MASTER:**   How is BASF out of it?

13             **MR. PLACITELLA:**   They were dismissed

14   under the representation -- they filed a motion for

15   summary judgment and it was not opposed.   In the

16   motion for summary judgment they said there was no

17   asbestos in the talc.

18             **MR. FARRELL:**   And then withdrawn.

19             **SPECIAL MASTER:**   Have you filed a motion

20   to vacate the summary judgment?

21             **MR. FARRELL:**   I do not represent Mrs.

22   Chernick in that case.   I represent Mrs. Chernick in

23   this case, in the fraudulent concealment case.

24             **SPECIAL MASTER:**   Are you in

25   communication with her counsel in that case?

USDC, District of NJ             Williams, et al. v. BASF Catalysts, LLC, et al.             Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 149

1                   **MR. PLACITELLA:**  Yes, I am.

2                   **SPECIAL MASTER:**  What's the status of

3     the claim against BASF?  Has it been reinstated?

4                   **MR. PLACITELLA:**  To my knowledge no.

5     To my knowledge no.

6                   **SPECIAL MASTER:**  I'm sure you'll tell

7     me.  You'll write it on one of your little note

8     pieces and you'll tell me.

9                   **MR. PLACITELLA:**  Somebody told me they

10    thought the case was stayed.  But we can check and

11    let you know.

12                  **SPECIAL MASTER:**  Okay.  Mr. Assaf is

13    going to have a coronary if I don't let him speak,

14    so...

15                  **MR. ASSAF:**  I was going to say I think

16    Mr. Placitella was mistaken.  It is stayed.  I can

17    get --

18                  **SPECIAL MASTER:**  The case against BASF

19    is stayed or the entire the case?

20                  **MR. ASSAF:**  The insurance case is still

21    pending in New York and it is stayed.

22                  **SPECIAL MASTER:**  What's the status of

23    BASF in that case as stayed?

24                  **MR. ASSAF:**  We're --

25                  **SPECIAL MASTER:**  Are you still a party

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 150

1   defendant?

2          **MR. ASSAF:**  Still a party defendant.

3          **SPECIAL MASTER:**  So you have not been

4   dismissed?

5          **MR. ASSAF:**  Not to my knowledge, your

6   Honor.  And I'll check that.  If I'm wrong, I'll

7   confirm with you on Monday.  But to my knowledge

8   we're still in it.  Every once in a while we receive

9   a communication from the Court.

10         **SPECIAL MASTER:**  Okay.

11         **MR. PLACITELLA:**  They filed

12   interrogatory responses in the federal MDL saying the

13   same thing.

14         **SPECIAL MASTER:**  That's the one before

15   Judge Weiner?

16         **MR. PLACITELLA:**  Correct.  And that

17   applied to every federal case across the United

18   States.

19         They filed the same interrogatory

20   answers or similar citing the Ashton affidavit in the

21   Graham case here.  They filed it in the Ohio

22   interrogatory cases.  There's a general set of

23   interrogatories in Ohio.  And they --

24         **SPECIAL MASTER:**  And that's five of the

25   six representative plaintiffs in this case?

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 151

1            **MR. PLACITELLA:**  Correct.   And then

2    they made the representations not only to the

3    litigants but to the Courts.   They wrote a letter to

4    Judge Weiner representing that there was no asbestos

5    in the talc, citing to the Ashton affidavit.

6            **MR. FARRELL:**  Can you go back, please?

7            **MR. PLACITELLA:**  Sure.

8            **MR. FARRELL:**  Thank you.

9            **MR. PLACITELLA:**  Okay.   There were

10   summary judgment motions filed in Ohio making the

11   representation.   There was a summary judgment motion

12   filed in the Graham case making the representation.

13   There were summary judgment motions filed in

14   Massachusetts making the representation.

15            And then I asked the witnesses in

16   deposition.   I said, for example to Dr. Hemstock,

17   when I asked him about the Ashton affidavit:  From

18   everything you know, is that accurate?

19            He said no.

20            I asked their corporate representative,

21   Ellen Poole, about the Ashton affidavit:  Based on

22   everything that we've gone through and all the tests

23   you're aware of, is that a true statement?

24            And she said:  No, there were tests that

25   showed there was asbestos.

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                     February 23, 2018

Page 152

1              **SPECIAL MASTER:**  She didn't say no.  She

2      said there were tests that showed, right?

3              **MR. PLACITELLA:**  There were tests that

4      showed there was contamination by asbestos.  That's

5      what it says.

6                   When I asked him about the Carter

7      affidavit, Dr. Hemstock, he said -- I asked him:  Is

8      that a true statement?

9                   And he said:  I don't know what was in

10     Mr. Carter's mind at the time, but it appears not to

11     be true on the surface of it, on the face of it.

12                  And then there are numerous admissions

13     by Engelhard and BASF that the lies they told

14     actually worked.

15                  And we have some examples.  I didn't

16     want to overburden the Court with all of the

17     examples.  If you want them, we'll supply them to you

18     for a complete record.

19                  But there are many, many statements by

20     counsel that clearly state that all the cases in this

21     state were dismissed because of our representation,

22     all the cases in that state were dismissed based on

23     that representation.

24                  They did it to Mr. Bevan.  There's

25     actually testimony where they admit Mr. Bevan

Page 153

1    dismissed his cases based upon that representation.

2                    They actually went so far in one Ohio

3    case to say, when they were trying to convince the

4    lawyer to dismiss his cases, he said:  Look, what are

5    you doing?  Virtually everybody else who we've told

6    this to has dismissed their cases.   And --

7                    SPECIAL MASTER:  Before you go any

8    further, Mr. Placitella, a couple of times you've

9    said there's more that we could submit to you.

10                   MR. PLACITELLA:  Right.

11                   SPECIAL MASTER:  And I rather tongue in

12   cheek said:  Do I look like I need more paper from

13   you?

14                   Actually that's not the standard.   The

15   standard is you should submit whatever you think you

16   need to submit to advance your cause.  As you know, I

17   will review everything that you submit.  It's a

18   little late in the day to be doing that.

19                   MR. PLACITELLA:  Right.

20                   SPECIAL MASTER:  And if you do, it's

21   going to trigger an opportunity by BASF to respond.

22                   MR. PLACITELLA:  I understand.

23                   SPECIAL MASTER:  So bear that in mind.

24   Well, actually BASF and Cahill, because they both

25   opposed your application.

USDC, District of NJ           Williams, et al. v. BASF Catalysts, LLC, et al.           Friday
C.A. No. 2:11-cv-01754-JLL-JAD         Special Master Conference           February 23, 2018

Page 154

1              MR. PLACITELLA:  Well, we put a lot in

2     the record, your Honor.  We believe you can make it

3     based on what we've given you.  We tried to be

4     judicious in how much we were going to give you, but

5     there's a lot more where that came from.  And I'm

6     making that representation because I've read it.   I

7     asked the representative for BASF, the corporate

8     representative --

9              SPECIAL MASTER:  What is Miss Poole's

10    position with BASF?

11             MR. PLACITELLA:  She was the corporate

12    representative.

13             SPECIAL MASTER:  I know she appeared at

14    a deposition as a 30(b)(6) deponent.

15             MR. PLACITELLA:  She no longer works for

16    them.

17             SPECIAL MASTER:  What was her position

18    at BASF?

19             MR. PLACITELLA:  She no longer works for

20    them.  As I understand it, she works -- she's not

21    with them anymore.

22             SPECIAL MASTER:  At the time that her

23    deposition was taken --

24             MR. PLACITELLA:  I think she worked in

25    the accounting department.

Page 155

1         **SPECIAL MASTER:** Okay. So she was not

2 a lawyer?

3         **MR. PLACITELLA:** Correct.

4         **SPECIAL MASTER:** But she was designated

5 by BASF as their 30(b)(6) representative?

6         **MR. PLACITELLA:** That's correct.

7         **SPECIAL MASTER:** Okay. So her knowledge

8 would be on the accounting side. She's not a

9 scientist.

10         **MR. PLACITELLA:** Right. Her personal

11 knowledge, that's correct.

12         And so we went through the documents and

13 she admitted that, you know, those were the

14 representations. And based on those representations,

15 cases were dismissed all over the United States.

16         **SPECIAL MASTER:** And that's you showing

17 her documents and asking her: Is this what it says

18 and what was the result of it?

19         **MR. PLACITELLA:** Correct. So then what

20 happens, in 2004 to 2006 there's another case filed

21 in Rhode Island. It's called the Martin case. And

22 in the Martin case somehow the plaintiff's lawyer

23 found out about the Westfall case.

24         Maybe they knew each other from town.

25 Who knows? We'll find out.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 156

1          **SPECIAL MASTER:**  Rhode Island is a small

2    place.

3          **MR. PLACITELLA:**  Rhode Island is a small

4    place.  And I think the offices aren't far away from

5    each other.

6          So what happens is that the lawyer,

7    Elizabeth Quizone (phonetic), tracks down Mr.

8    Glassley and she hires Dr. Glassley.  And somehow she

9    gets her hands on some of the Hemstock -- I'm sorry,

10   some of the Westfall --

11         **SPECIAL MASTER:**  Westfall.

12         **MR. PLACITELLA:**  -- evidence.  And he

13   has some other notes of his own I believe.

14         So they piece things together with

15   what's left.  And Glassley is going to testify about

16   what he found when he went there.

17         And it's documented in answers to

18   interrogatories.  And his deposition was actually

19   taken in a New Jersey state court case.  And he says:

20   If I was asked in the Martin case, I would have

21   testified that there was asbestos in the talc.

22         **SPECIAL MASTER:**  What happened to the

23   Martin case that he didn't testify?

24         **MR. PLACITELLA:**  The Martin case -- once

25   Dr. Glassley surfaced, the Martin case was settled.

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Friday
C.A. No. 2:11-cv-01754-JLL-JAD    Special Master Conference    February 23, 2018

Page 157

1              But the interesting thing about the

2    Martin case was that now the whole issue of the

3    Westfall case resurfaces.

4              And you can even look on the privilege

5    log where there's references to the Westfall case

6    during the time that the Martin case is pending.  So

7    the whole issue --

8              **SPECIAL MASTER:**  Help me foot this to

9    the information you provided.  I don't recall seeing

10    anything in respect to the Martin case in your

11    submissions.  Am I missing something?

12              **MR. PLACITELLA:**  Appendix E Jared says.

13              **SPECIAL MASTER:**  So the 44 page

14    spoliation appendix.

15              **MR. JARED PLACITELLA:**  Yes, your Honor.

16              **SPECIAL MASTER:**  No wonder I don't

17    remember it.

18              **MR. PLACITELLA:**  So what happens here is

19    that the case is settled.  And what happened in

20    Martin is Dr. Glassley actually authored a report and

21    that was -- and as a condition of settlement that

22    report was turned back over to Engelhard and to

23    Cahill Gordon.

24              **SPECIAL MASTER:**  Well, by this point

25    isn't it BASF?

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 158

1          **MR. PLACITELLA:**  I think BASF is right

2  in the crevice.  I don't think it's BASF quite yet.

3          **SPECIAL MASTER:**  Okay.

4          **MR. PLACITELLA:**  If I get the timing

5  right.

6          **SPECIAL MASTER:**  Well, BASF acquired

7  Engelhard in 2006.

8          **MR. PLACITELLA:**  2006.  But I think --

9  I'm not positive on that issue.

10         But what's significant here is that the

11  actual report now is in issue.

12         **SPECIAL MASTER:**  Apparently somebody has

13  it, because --

14         **MR. PLACITELLA:**  Well, what happened to

15  it?  What happened was BASF and Cahill Gordon put it

16  on their privilege log.

17         So they took the plaintiff's expert

18  report that found asbestos in the talc that had

19  resurfaced in the Martin case, and then they put it

20  on their privilege log and they called it work

21  product.  And they described it on their privilege

22  log as summary of activities related to services

23  rendered.  Now, we only know that from everything

24  that's transpired.

25         No plaintiff's lawyer or anybody else

USDC, District of NJ       Williams, et al. v. BASF Catalysts, LLC, et al.       Friday
C.A. No. 2:11-cv-01754-JLL-JAD       Special Master Conference       February 23, 2018

Page 159

1   who got that privilege log was ever going to know

2   that summary of related services rendered was

3   actually a plaintiff's expert report.

4             SPECIAL MASTER:  How did you know it?

5   How did you know it?

6             MR. PLACITELLA:  I eventually found out.

7             SPECIAL MASTER:  How?

8             MR. JARED PLACITELLA:  We got the

9   report.

10            MR. PLACITELLA:  We eventually -- we now

11   have the report.

12            SPECIAL MASTER:  Okay.  How?

13            MR. PLACITELLA:  They de-privileged it

14   after a battle.

15            SPECIAL MASTER:  Okay.

16            MR. PLACITELLA:  I don't want to say

17   more than that.  It was de-privileged at some point

18   in time.

19            SPECIAL MASTER:  You mean it was --

20            MR. PLACITELLA:  In 2009 --

21            SPECIAL MASTER:  -- taken off the

22   privilege list by BASF --

23            MR. PLACITELLA:  Correct.

24            SPECIAL MASTER:  -- and handed to you?

25            MR. PLACITELLA:  Correct.

USDC, District of NJ Williams, et al. v. BASF Catalysts, LLC, et al. Friday
C.A. No. 2:11-cv-01754-JLL-JAD Special Master Conference February 23, 2018

Page 160

1     **SPECIAL MASTER:**  Okay.

2     **MR. PLACITELLA:**  All right.   That was

3 post-2009.   So between 2006 up until the Paduano

4 case, even though they had a report from the

5 plaintiff's expert saying there was asbestos in the

6 talc, people were still being told there was no

7 evidence of asbestos in the talc.  People were still

8 being told it appeared on a privilege log.

9     They had no right to put that on a

10 privilege log as their work product.   That wasn't

11 described accurately.

12     **SPECIAL MASTER:**  But you got it.  And

13 you did get it before March of 2011.

14     **MR. PLACITELLA:**  We got it.

15     **SPECIAL MASTER:**  Before March of 2011.

16     **MR. PLACITELLA:**  Yes.  But in terms of

17 fraud, this clearly demonstrates from our perspective

18 ongoing fraud.  They had it.  It was there.   It

19 came up.  They settled the case.  They buried the

20 evidence and they put it on the privilege log.   And

21 they put it on the privilege log so no one would ever

22 figure it out.  And no one did figure it out.

23     **SPECIAL MASTER:**  How did you figure it

24 out?

25     **MR. FARRELL:**  Would you like me to speak

Page 161

1    to that?

2                    MR. PLACITELLA:  I'm concerned about how

3    much I'm allowed to say.

4                    MR. FARRELL:  I'd be happy to address

5    it, your Honor, because I don't think that --

6                    SPECIAL MASTER:  Mr. Farrell, I'm dying

7    to hear this answer.

8                    MR. FARRELL:  Thank you, your Honor.

9                    The privilege log that Mr. Placitella is

10   showing you is a privilege log that was created in

11   the Paduano case after the Littleton Joyce law firm

12   went through the files of Cahill Gordon to try to

13   identify documents that were responsive to the

14   fraudulent concealment discovery Mr. Placitella was

15   taking in that case.

16                   They found in Cahill Gordon's files a

17   copy of a document titled summary of activities

18   related to a case, which they initially thought was a

19   consulting expert or draft report prepared by an

20   expert for the defense.  So they put it on the

21   privilege log believing it was a defense privileged

22   item.  Once we learned --

23                   SPECIAL MASTER:  Let me stop you right

24   there.  The title of the document is exactly the

25   language that appears in the privilege log?

Page 162

1          Can you put that back up, please?

2                    MR. FARRELL:  It's longer than that.

3                    MR. PLACITELLA:  That's the document.

4                    SPECIAL MASTER:  Well, can you put up

5     the privilege log, please?

6                    The language that it says there, summary

7     of activities related to services rendered, does that

8     come from the title of the document itself?

9                    MR. FARRELL:  I believe so, yes.

10                   MR. PLACITELLA:  Here's the title, your

11    Honor.

12                   SPECIAL MASTER:  Well, I can't read

13    that.

14                   MR. PLACITELLA:  I'll read it to you.

15                   SPECIAL MASTER:  Okay.

16                   MR. PLACITELLA:  Summary of activities

17    related to services rendered for Decof & Grimm in the

18    case of David L. Westfall versus Whittaker, Clark &

19    Daniels.

20                   Anybody who would see Decof & Grimm,

21    they would come to a different conclusion.  That was

22    left out.

23                   SPECIAL MASTER:  Only if they know who

24    Decof & Grimm are.  And I don't.

25                   MR. FARRELL:  That was exactly the point

USDC, District of NJ         Williams, et al. v. BASF Catalysts, LLC, et al.              Friday
C.A. No. 2:11-cv-01754-JLL-JAD         Special Master Conference         February 23, 2018

Page 163

1    I was going to make, your Honor.  It was thought to

2    be a report prepared for the defendants.  When we

3    learned that Decof & Grimm and Mr. Glassley were

4    actually the experts --

5              **SPECIAL MASTER:**  On the other side.

6              **MR. FARRELL:**  -- for the plaintiff, we

7    took the document off of the privilege log and

8    produced it to Mr. Placitella.

9              So any suggestion that this was a fraud

10   or effort to conceal something is simply untrue.

11             **SPECIAL MASTER:**  Okay.  And in fact the

12   designation on the privilege log is just verbatim the

13   first X number of words in the title of the document.

14             **MR. FARRELL:**  That is correct.  And to

15   the extent the argument is that this was done in

16   multiple cases or something, I believe this is the

17   only instance of it occurring.  And since that time

18   it has not appeared on any privilege log.

19             **SPECIAL MASTER:**  Okay.  All right.

20   We've gotten to the bottom of that mystery.

21             **MR. PLACITELLA:**  Your Honor, all you

22   have to do is read the report and you'll know -- you

23   can't mistake that this was a defense report.  I'm

24   happy for you to read the whole thing.

25             And Decof & Grimm was not Cahill Gordon.

Page 164

1    Decof & Grimm was not the local defense lawyer.  This

2    was no coincidence.

3                 **SPECIAL MASTER:**  Well, I don't know

4    that.  I know that because I've been told that today.

5                 **MR. PLACITELLA:**  You can't read this

6    report and come to the conclusion that it's a defense

7    report.

8                 **SPECIAL MASTER:**  I don't know what due

9    diligence whoever it was did when they were preparing

10   that privilege log.

11                I know that it was not Kirkland & Ellis.

12   And frankly, I would expect better from Kirkland &

13   Ellis.  And I'm glad that they actually went back and

14   double-checked it and released the report, because it

15   was not work product.

16                So I understand your concern.  I'm not

17   sure that it gets the credit that you want to give

18   it.

19                **MR. PLACITELLA:**  It's not to point the

20   finger at Kirkland & Ellis.  I never intended to do

21   that.  They weren't involved.

22                **SPECIAL MASTER:**  At least not in this

23   instance.

24                **MR. PLACITELLA:**  No, no, no, no.

25   Despite the acrimony, we get along fine.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 165

1          And that wasn't my issue.  They weren't

2     in the case at this point.

3          My issue was that this was produced in

4     2006.  The lawyers for Engelhard and BASF knew what

5     this was.  And for the next three years summary

6     judgment motions were still filed saying there was no

7     evidence, letters were still written saying that

8     there was no evidence, judges were still being told

9     there was no evidence.

10          And there's no getting away from the

11     fact that they had a report saying that there was

12     evidence.

13          And this report raised the whole issue

14     of the Westfall case all over again, because if you

15     look on their -- and I'll show you later.  If you

16     look on the privilege log, there's all kinds of

17     references to the Westfall case.

18          So in 2005-2006, even if everyone forgot

19     and didn't know about the Westfall case, it was hot

20     and heavy as part of what was going on here and the

21     reason, I would submit to you, and you can infer,

22     that this case was settled quietly and this report

23     was buried.  It is a logical inference that it was

24     ongoing.

25          And I don't know that it matters, if it

Page 166

1  does not, I will skip it, but there are numerous

2  examples to show that this was not just Cahill

3  Gordon, that their in-house counsel was getting

4  copied on the letters that were being sent out.

5             **SPECIAL MASTER:**  Well, Mr. Sloane is

6  from Cahill Gordon.

7             **MR. PLACITELLA:**  Michael Hassett is

8  Engelhard in-house counsel.

9             **SPECIAL MASTER:**  Okay.  But I'm just

10  saying that because --

11             **MR. PLACITELLA:**  Yes.

12             **SPECIAL MASTER:**  -- that's a little

13  misleading when you say Mr. Sloane and Michael

14  Hassett and underneath it you're saying Engelhard

15  in-house legal.

16             **MR. PLACITELLA:**  Yes.  Fair enough.

17             **SPECIAL MASTER:**  Only Mr. Hassett was

18  Engelhard, correct?

19             **MR. PLACITELLA:**  Fair enough.  And I'm

20  happy to -- Charles Carter was an Engelhard

21  executive.  He answered and swore to interrogatories

22  that were false, in addition to his affidavit.

23             Michael Hassett, who was the associate

24  general counsel, actually answered the

25  interrogatories and swore to them under oath.   Just

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 167

1    like in Jedlowski.

2              I don't know that we need to spend --

3    I'm happy to do it, but I want to take some guidance

4    from the Court on spoliation.  I will just give you a

5    summary slide because a lot of it is already in the

6    brief.

7              **SPECIAL MASTER:**  Which one?  The

8    appendix?

9              **MR. PLACITELLA:**  The appendix.  What

10   evidence is still missing today?  All of the original

11   testing reports with three exceptions are missing.

12             They have found copies of some of the

13   reports.  But even the reports they've found are

14   missing attachments.  The attachments would be the

15   scientific data -- not every time.  Some are complete

16   to be fair.  Many of the reports are missing the

17   scientific data.  That would be important to

18   interpret the reports, to verify what was in them.

19   They're not there.

20             I took the deposition of the corporate

21   representative.  There are only three original

22   documents remaining.

23             **SPECIAL MASTER:**  Why is that even

24   relevant --

25             **MR. PLACITELLA:**  It's relevant --

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 168

1          **SPECIAL MASTER:**  -- that there's only

2     three original documents left if everything else they

3     have is copies?

4          **MR. PLACITELLA:**  Because the copies,

5     they only have a portion of what was there.

6          **SPECIAL MASTER:**  Well, they have a

7     portion.

8          **MR. PLACITELLA:**  Right.

9          **SPECIAL MASTER:**  And that goes to the

10    weight of that document.  It doesn't go to its

11    admissibility.

12         **MR. PLACITELLA:**  No, no.  I'm

13    misspeaking.  There are two issues.  There is the

14    entirety of what was the testing documents.  They

15    have some portion of those, not all.  And out of

16    that portion they have another that are incomplete.

17         So there are many documents, testing

18    documents that they have not been able to find.

19         **SPECIAL MASTER:**  And these are documents

20    that go back how far?

21         **MR. PLACITELLA:**  They go back all the

22    way to the 70s.  Okay.  And they don't have Dr.

23    Hemstock's files.  They don't have Dr. Oulton.  Dr.

24    Oulton was the scientist who was in charge of keeping

25    all the raw data, all the backup data.  His files are

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 169

1    missing.

2                    **SPECIAL MASTER:**  When did he stop

3    working there?

4                    **MR. PLACITELLA:**  He stopped there

5    sometime in the early 80s.

6                    **SPECIAL MASTER:**  So 30 years ago.

7                    **MR. PLACITELLA:**  Correct.  All of the

8    original Westfall depositions are missing.   The

9    majority of the exhibits to those depositions are

10   missing.   The results from the Engelhard study of

11   the Johnson mine are missing.

12                    I mean, I could go through this in great

13   detail, and I'm happy to do it.  But I'm trying to

14   get through this presentation and get to the -- I'm

15   happy to supplement it.

16                    But I will -- and, you know, I went to

17   the witnesses and I said, Ellen Poole, out of the 51

18   documents at the Hemstock deposition, they only have

19   10.  And I highlighted those.

20                    **MR. ASSAF:**  Excuse me.  May I just see

21   slide 133 for another second, the listing?  Sorry.

22                    **SPECIAL MASTER:**  Go back one more.

23                    **MR. ASSAF:**  The previous slide.  All

24   original depositions?

25                    **MR. PLACITELLA:**  Well, yes, that's what

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 170

1    I said, all original depositions.

2                MR. ASSAF:  Okay.

3                MR. PLACITELLA:  They have --

4                MR. ASSAF:  Sorry.  Okay.  That's

5    what -- I thought he said all depositions.  I was

6    like, I --  okay.  Sorry.

7                SPECIAL MASTER:  I can read.

8                MR. PLACITELLA:  The slide says all

9    original depositions.  They have produced some

10   depositions, not all.  They've produced --

11               SPECIAL MASTER:  Out of a case that was

12   originally filed in 1979.

13               MR. PLACITELLA:  Yes, your Honor.

14               SPECIAL MASTER:  Okay.

15               MR. PLACITELLA:  But they had a duty

16   to --

17               SPECIAL MASTER:  Do you keep in your

18   firm files from cases in 1979?

19               MR. PLACITELLA:  Your Honor, I am not a

20   defendant being sued over and over.

21               SPECIAL MASTER:  It doesn't matter

22   whether you are or not.

23               MR. PLACITELLA:  Yeah, we probably have

24   it on archive somewhere.  But there is a duty to --

25               SPECIAL MASTER:  I'd be stunned if you

Page 171

1    did.  But that's a different story.

2                    MR. PLACITELLA:  Well, I wasn't

3    practicing then.

4                    SPECIAL MASTER:  In '79?

5                    MR. PLACITELLA:  The point is -- sorry.

6                    SPECIAL MASTER:  Now you're making me

7    feel old.

8                    MR. PLACITELLA:  So the point is they

9    were being sued and they were --

10                   SPECIAL MASTER:  And you've insulted

11   Miss Gussack I want you to know.

12                   MR. PLACITELLA:  They had a duty to

13   preserve this evidence, your Honor, that was imposed

14   upon them.

15                   They were being sued and they knew they

16   were going to be sued in the future.  And Judge

17   Linares had in fact ruled that they had a duty to

18   preserve the evidence.

19                   So we asked the witnesses, for example,

20   Miss Poole, only 10 exhibits were left from the

21   Hemstock deposition.  I then went back --

22                   SPECIAL MASTER:  Well, did somebody go

23   back to the lawyers who actually were representing

24   Engelhard back then and say:  Do you have it in your

25   files?

Page 172

1        **MR. PLACITELLA:** Someone should ask

2   them. I'm assuming the answer is no, that they

3   checked, because --

4        **SPECIAL MASTER:** They said no, they

5   didn't go back and check?

6        **MR. PLACITELLA:** I'm assuming that they

7   did. They're good lawyers. I'm sure they did what

8   they were obligated to do.

9        And so, for example, I went to Mr.

10   Steinmetz in August and I asked him: Let's go

11   through what you have left.

12        Now, recall Mr. Steinmetz testified he

13   didn't believe that Gale was even deposed. Okay.

14   So now we have Gale's deposition.

15        So what we did is we went back and

16   looked at what they've been able to recreate and

17   compared it to what was produced at the Gale

18   deposition. And we found that all of the exhibits in

19   red that he was examined on, they don't exist.

20        Now, I saw the letter from -- and some

21   of that was important. Some of those exhibits,

22   according to Mr. Gale's testimony, were notes he was

23   taking while he was looking under the microscope

24   saying what his findings were.

25        **SPECIAL MASTER:** But he testified at his

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 173

1   deposition about the contents of those notes,

2   correct?

3                    **MR. PLACITELLA:**  He testified --

4                    **SPECIAL MASTER:**  So even though --

5   excuse me.  But even though the notes themselves may

6   not be around anymore, there is testimony as to what

7   the contents of the document were.

8                    **MR. PLACITELLA:**  Not really.  They

9   testified what his recollection was.   But his notes

10  had to have been much more detailed, because his

11  notes were detailing what he was seeing under the

12  electron microscope.

13                   When he was deposed, he was being asked

14  what he recalled.  And sometimes he said in his

15  deposition I don't recollect this myself, but there

16  it is in the document.  I don't have an independent

17  recollection.   Right.

18                   So what was in there is not

19  insignificant.

20                   They say in their brief:  Well, he was

21  asked about Exhibit 50, which was the big binder from

22  the Hemstock deposition.  And he said:  Well, yeah, I

23  see in there, there are a couple of published reports

24  that were out in the public domain.

25                   But he also verifies in his deposition

Page 174

1    that there were many other things in that binder that

2    are never mentioned.

3              We don't know what was in that binder,

4    frankly.   We do know that we have no final report at

5    least in the public domain of what happened in that

6    investigation.   We would have had his notes, but

7    they're gone.   We have what's left of his testimony.

8              So we have a problem.   There's a lot of

9    evidence missing.   And I'm happy to have a

10   separate -- I don't want to spend all our time here

11   on this.   I'm happy to separately address this and

12   have you rule on it if you want to.   Or they can file

13   their motion for summary judgment as you've invited

14   them to do before.

15             But there is plenty of evidence on a

16   prima facie basis that there is still evidence

17   missing that they had a duty to preserve and they did

18   not.

19             **SPECIAL MASTER:**   And then tie that

20   notion to what your prima facie basis is here,

21   because whether they had a duty to preserve or not,

22   the issue is have you demonstrated on a prima facie

23   basis to a fair preponderance of the evidence that

24   there is a factual basis for a good faith belief that

25   the exception to the attorney/client privilege should

Page 175

1    apply?

2              **MR. PLACITELLA:**  Yes.   And we believe

3    that we have done that.   We believe we have

4    demonstrated to you that they had evidence.   It was

5    evidence that was not insignificant.   They had

6    multiple tests, not one or two tests.   They had

7    scientists testify as to what they found.   The

8    scientists did not say the evidence was nonsense.

9    They qualified where they could have.

10              But they had both the data, the reports,

11    the sworn testimony.   They had all of that.   Yet they

12    told litigants and courts that the data did not

13    exist, that the testimony did not exist, that the

14    information did not exist, that there was no

15    evidence, not that there was unreliable evidence.

16    They could have couched it.

17              And on that basis -- and then we have

18    them frankly boasting about the success of what they

19    did.

20              So independent of the issue of what

21    they've been able to dig up, what they've been able

22    to dig up only proves our case of what was withheld

23    from these litigants, because you have to look at the

24    point in time when the representations were made.

25              So the fact that they have dug stuff up,

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 176

1    they found a box that they -- somebody had in, you

2    know, some file in Iron Mountain, only proves that

3    the representations they made were wrong.

4              And you only have to look at this.

5    Right.   This is the Cahill collection.

6              **SPECIAL MASTER:**  You mean the Cahill

7    compilation.

8              **MR. PLACITELLA:**  The Cahill compilation.

9    The Cahill compilation as it has been represented is

10   all --  I know it's not all because we went through

11   this with Mr. Steinmetz.   But a number of testing

12   documents.

13             And that compilation has been in the

14   files of BASF by their own admission.  It was in the

15   personal file of Mr. Dornbusch by their

16   representation of their counsel -- I'm sorry, of

17   their corporate representative.

18             That compilation of all of the testing

19   documents, when they said we have no testing

20   documents, there is no evidence, when the general

21   counsel who worked in the same office was swearing on

22   interrogatories that the information did not exist,

23   this proves it.   So the fact that they found it only

24   proves it.

25             Now, why do we think you have to look at

Page 177

1    that?  Because they have stated --

2                    SPECIAL MASTER:  It's Exhibit 3 on your

3    submission.  I looked at it.

4                    MR. PLACITELLA:  Right.  Well, you

5    didn't look at the whole thing.

6                    SPECIAL MASTER:  Well, I looked at what

7    you gave me.

8                    MR. PLACITELLA:  Yes, but --

9                    SPECIAL MASTER:  Which by the way is

10   probably -- that entry alone is probably 150 pages.

11                   MR. PLACITELLA:  Yes.

12                   SPECIAL MASTER:  Actually more than

13   that.  It's double-sided.

14                   MR. PLACITELLA:  But what's missing from

15   that, your Honor?

16                   SPECIAL MASTER:  Well, the first couple

17   entries where it says privileged documents

18   potentially omitted.

19                   MR. PLACITELLA:  Yes, your Honor.  And

20   we're saying that you should --

21                   SPECIAL MASTER:  And there's three of

22   those.

23                   MR. PLACITELLA:  They have represented

24   that the Cahill compilation includes testing

25   information, information relevant to the issue of

Page 178

1    asbestos in the Emtal talc.  They are withholding

2    documents from that compilation.

3              We have indicated in our original

4    submission, they say we did not identify the

5    documents we wanted you to look at, but we did

6    identify this document on our original submission.

7    And we are asking you --

8              **SPECIAL MASTER:**  That was the one that

9    was miscited in --

10             **MR. PLACITELLA:**  Right.  The wrong

11   footnote.

12             **SPECIAL MASTER:**  Well, the right

13   footnote, wrong identification.

14             **MR. PLACITELLA:**  We are asking you --

15             **SPECIAL MASTER:**  And Mr. Jared

16   Placitella is throwing himself under the bus over

17   that one.

18             **MR. PLACITELLA:**  I would never do that.

19             **SPECIAL MASTER:**  He did it to himself.

20             **MR. PLACITELLA:**  We are -- keep your

21   hand down.

22             So we are asking you to look at the

23   entire compilation, because obviously they've already

24   admitted that the information is relevant.

25             So then the question is:  What were they

Page 179

1   withholding?  Because if they have admitted that it

2   was relevant to the issue of testing and they had it

3   in their possession at the same time the

4   misrepresentations are being made, that's a prima

5   facie case to trigger crime fraud.

6          **SPECIAL MASTER:**  Let me ask you this.

7   The Cahill compilation, did you get that from

8   Kirkland & Ellis?

9          **MR. PLACITELLA:**  Yes, your Honor.

10         **SPECIAL MASTER:**  And do you have any

11  reason to believe that the Kirkland & Ellis folks

12  have asserted attorney/client privilege or attorney

13  work product on documents where the assertion was not

14  at least colorable?

15         **MR. PLACITELLA:**  I think they made a

16  good faith judgment that they could withhold those

17  documents --

18         **SPECIAL MASTER:**  I'm thinking in --

19         **MR. PLACITELLA:**  -- on the basis that

20  they have asserted.

21         **SPECIAL MASTER:**  I'm thinking in terms

22  of the other document that you discussed that

23  appeared on a privilege log --

24         **MR. PLACITELLA:**  No.

25         SPECIAL MASTER -- that they did not

Page 180

1    prepare --

2              **MR. PLACITELLA:**  No.

3              **SPECIAL MASTER:**  -- they took a look at

4    it and they said:  This doesn't belong on the

5    privilege log --

6              **MR. PLACITELLA:**  No, no, no, I don't

7    think --

8              **SPECIAL MASTER:**  -- and they handled it

9    over.

10             **MR. PLACITELLA:**  I don't have any --

11   that's not what they do.

12             **SPECIAL MASTER:**  Okay.

13             **MR. PLACITELLA:**  No.

14             **SPECIAL MASTER:**  So it is fair for me to

15   assume that at least for the first three entries in

16   the Cahill compilation where they are asserting

17   privilege, that at least there's a good faith basis

18   for that assertion?

19             **MR. PLACITELLA:**  I understand the good

20   faith basis.  And in fact, I know what the documents

21   are.  And I can't say, you know, what they are --

22             **SPECIAL MASTER:**  No, you can't.

23             **MR. PLACITELLA:**  -- I do believe --

24             **SPECIAL MASTER:**  Not to me at least.

25             **MR. PLACITELLA:**  -- they had a good

Page 181

1    faith basis to make the --

2                SPECIAL MASTER:  To assert the

3    privilege.

4                MR. PLACITELLA:  -- assertion initially.

5                SPECIAL MASTER:  Okay.

6                MR. PLACITELLA:  But we're saying that

7    you need to look at these documents.  We believe that

8    they've already admitted that the compilation,

9    including the documents that are being withheld, are

10   relevant on that very issue that the

11   misrepresentation is being made.

12               And if this document was in Mr.

13   Dornbusch's personal file while his office was

14   swearing under oath that no documents existed, then

15   all of it has to come out, not just the documents

16   that they so choose.  So -- somebody's passing me a

17   note.

18               SPECIAL MASTER:  I think it's Mr. Assaf

19   telling you that you've gone too long.

20               MR. PLACITELLA:  Well, I'm almost done.

21               SPECIAL MASTER:  Okay.

22               MR. PLACITELLA:  I'm almost done.  So

23   let me just -- then we've asked for the evidentiary

24   record.

25               I heard -- now, there is a difference.

Page 182

1    We are not asking for you -- we've already been told

2    the Court did not want Justice Stein's opinion.  We

3    understand that.

4              What we're saying is that you should

5    look at two things.

6              **SPECIAL MASTER:** I can't.  The order

7    from the Supreme Court impounds that entire record.

8    That's what it says, the record is impounded.

9              You don't want to run the risk of giving

10   it to me.  And I certainly do not want to run the

11   risk of looking at something that's been impounded,

12   not when I know that it's been impounded.  I can't

13   say:  Gee, I didn't know that.  I now know it.  I

14   have a copy of the Court's order.

15             **MR. PLACITELLA:** We may have to do

16   something to remedy that.  But I understand.

17             **SPECIAL MASTER:** Well, you must -- I

18   can't --

19             **MR. PLACITELLA:** But I understand your

20   point.  Just so the record is clear though, when our

21   brief was originally filed, we asked for this

22   information.

23             **SPECIAL MASTER:** The order came out

24   actually after your reply brief was filed.  So I'm

25   not blaming you for it.  I'm just saying the state of

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 183

1    the universe is different now than it was when you

2    were asking for the relief here.  And I just can't

3    accept that.

4              MR. PLACITELLA:  I understand, your

5    Honor.  The point I'm making here is a statement was

6    made that we never identified any documents that we

7    wanted you to look at and therefore somehow we were

8    deficient or our submission was deficient.   That's

9    actually not true.   We first identified the

10   compilation.  We asked you to look at that.

11             SPECIAL MASTER:  Which I did because

12   gave it to me.

13             MR. PLACITELLA:  No, you didn't look at

14   the documents being withheld.

15             SPECIAL MASTER:  Okay.

16             MR. PLACITELLA:  We asked you to look

17   initially at the evidentiary record because there are

18   depositions in that record.  And those depositions

19   themselves --

20             SPECIAL MASTER:  Which evidentiary

21   record?

22             MR. PLACITELLA:  Of the Samson case.

23   I'm saying initially they said we did not identify to

24   you documents.   That was before this order came out.

25   We actually did identify documents.   We identified

Page 184

1 the Samson record.  I did not want to be anymore

2 descript than that for fear of violating the order

3 myself.

4    So what we did do is we gave you -- you

5 now have a list from us.

6    **SPECIAL MASTER:**  I have a list.  All I

7 have is a list of Bates numbers.  That doesn't make

8 me any smarter.

9    **MR. PLACITELLA:**  So I want to put some

10 things in context for you, and I went back and did

11 this, and how we can deal with the impounding order,

12 because now it's an issue.  It wasn't before.

13    So if you look, for example, at the

14 Ashton affidavit and you compare that to the

15 privilege log, you can see all of the documents that

16 surrounded the creation of the Ashton affidavit that

17 are being withheld.

18    We believe, given the fact that the

19 Ashton affidavit is at least misleading on its face,

20 if not an outright misrepresentation, that you should

21 look at the documents that are behind the Ashton

22 affidavit.  And we can identify them for you.  And

23 here they are.

24    **SPECIAL MASTER:**  Did you do that before

25 today?

Page 185

1          **MR. PLACITELLA:**  Because what we did

2   was, we did it by time frame.

3          **SPECIAL MASTER:**  Please answer my

4   question.

5          **MR. PLACITELLA:**  I'm sorry.

6          **SPECIAL MASTER:**  Did you identify those

7   documents as being disclosed or related or referred

8   to in the Ashton affidavit that you're now presenting

9   in this Power Point presentation on number 169, did

10  you ever get that to me before today?

11         **MR. PLACITELLA:**  I did not, because

12  frankly I was doing it in the last couple of days,

13  trying to figure out how to get around the fact that

14  I'm not now allowed to talk about even asking for

15  what was under the Samson proceeding.

16         So I'm trying to come up with a way to

17  put in context a way to deal with this.

18         **SPECIAL MASTER:**  Okay.

19         **MR. PLACITELLA:**  I mean, it's a little

20  bit of a moving target.  And I apologize.

21         **SPECIAL MASTER:**  Well, you're supposed

22  to make my life easier, not harder.

23         **MR. PLACITELLA:**  I understand.

24         **SPECIAL MASTER:**  But I'll blame Mr.

25  Pasternack.  It's your time to get blamed.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 186

1                MR. PLACITELLA:   The same thing, we can

2      identify in time the entries that went into creating

3      the Carter affidavit.

4                SPECIAL MASTER:   And again, same

5      question?

6                MR. PLACITELLA:   Same answer.   On the

7      asbestos in mine -- I call it the asbestos in mine

8      study, the study that was done in 1979, we can

9      identify in time the documents that appear to relate

10     to that study.

11               So for example, there are a bunch of

12     documents listed in time from the actual scientists

13     versus some lawyer.

14               SPECIAL MASTER:   Do we have a number for

15     this shot?

16               MR. PLACITELLA:   It's 171.

17               SPECIAL MASTER:   Okay.

18               MR. ASSAF:   Your Honor, just following

19     up on your earlier comment, I would ask the number of

20     the slide be put in, but also that Mr. Placitella --

21               SPECIAL MASTER:   I think every slide

22     that was shown here today must be submitted.

23               MR. PLACITELLA:   I'm going to do that.

24               SPECIAL MASTER:   And I know we talked

25     about that at the break.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 187

1              **MR. PLACITELLA:** Right.  I'm going to do

2      that.

3              **SPECIAL MASTER:**  I just wanted to put

4      that on the record.

5              **MR. ASSAF:**  And I think to your first

6      question, I think the answer is the same for all

7      these.  These have not been produced before today; in

8      other words, have not been collated.  I just want

9      that in the record.  This is the first time anybody's

10     seen this correlation, just like on the first

11     question you asked.

12             **SPECIAL MASTER:**  Okay.  I assume that

13     based upon Mr. Placitella's response to my question

14     earlier, that pretty much everything that's in this

15     section of his argument is stuff that he has

16     developed in the last few days and therefore many of

17     us in this room are seeing this for the first time.

18             Is that fair?

19             **MR. PLACITELLA:**  That's fair.  That's

20     fair.  Documents related to I call it the purge

21     memo, and this is a good example.  If you see the

22     purge memo was March 7, 1984.  And if you actually

23     look at the privilege log, there are five other

24     entries on that exact date.  And it talks about file

25     preservation.  And it comes from Cahill Gordon.   We

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 188

1    think you need to look at that.

2                SPECIAL MASTER:  These are all memos

3    from Mr. Sloane to someone in-house at BASF?

4                MR. PLACITELLA:  Correct.

5                SPECIAL MASTER:  All five of those,

6    they're the ones in yellow?

7                MR. PLACITELLA:  Correct.

8                MR. COREN:  That's not correct.  I think

9    Kempo is Cahill Gordon, your Honor.

10               SPECIAL MASTER:  So it's a within Cahill

11   Gordon communication?

12               MR. COREN:  Yes.

13               MR. PLACITELLA:  But it's the same exact

14   date.

15               SPECIAL MASTER:  I understand that.  But

16   it's still within Cahill Gordon.  Never got to BASF.

17               MR. PLACITELLA:  I'm not allowed to talk

18   about that.

19               Documents that relate to the Westfall

20   settlement all the way up to the purge memo, and we

21   believe we've showed you that they've destroyed the

22   Glassley evidence.

23               We showed you the date of the Westfall

24   settlement.  In between the Westfall settlement and

25   the purge memo are a number of entries in that also

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Friday
C.A. No. 2:11-cv-01754-JLL-JAD  Special Master Conference  February 23, 2018

Page 189

1 is destruction of the Glassley evidence.  That's the

2 time frame that we're talking about.

3    **SPECIAL MASTER:**  During which time the

4 Schwartz case was pending in California?

5    **MR. PLACITELLA:**  Right.   We believe --

6 and there are actually entries here that talk about

7 these issues.

8    We believe you need to look at the

9 documents from the date of the settlement to the date

10 of the purge memo to see really what the context was.

11 Was it really a document preservation memo?  You can

12 find that out.

13    And then for a lot of these

14 misrepresentations there are entries that correspond

15 to -- in time at least to the misrepresentations.

16    The Martin case with Dr. Glassley, there

17 are a number of entries in the privilege log related

18 to the Martin case.  And it actually says Martin

19 Emtal litigation.  We believe based upon what we've

20 shown you that you should look at that.

21    And in fact, one entry on the privilege

22 log talks about -- I'll wait --  the 7/23/2005 entry

23 actually talks about what to do about the Westfall

24 deposition.

25    **SPECIAL MASTER:**  Can you do me a favor?

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                      Friday
C.A. No. 2:11-cv-01754-JLL-JAD             Special Master Conference               February 23, 2018

Page 190

1    Can you go back --

2                 **MR. PLACITELLA:**  I want to make sure,

3    because I didn't show you each one of these and I

4    want --

5                 **SPECIAL MASTER:**  Stop right there.  Oh,

6    you went one too many.   That one.  It says in the

7    bottom righthand corner Exhibit 21B.

8                 **MR. JARED PLACITELLA:**  That's the image,

9    your Honor.  That's the image of the May 17, 1989,

10   letter.

11                **SPECIAL MASTER:**  Of the letter?

12                **MR. JARED PLACITELLA:**  Right.

13                **SPECIAL MASTER:**  Exhibit 21 is the

14   transcript of the deposition of Ernest Baim.

15                **MR. JARED PLACITELLA:**  You're correct,

16   your Honor.  I apologize.  It's paragraph 21 of the

17   certification in support of the motion, but it's

18   really Exhibit 17.

19                **SPECIAL MASTER:**  Okay.  Is it 17B?

20                **MR. JARED PLACITELLA:**  Yes, your Honor.

21                **SPECIAL MASTER:**  Okay.   And that's a

22   letter from Mr. Dembrow to Jeffrey Schwartz at Mr.

23   Rothenberg's firm of May 17, 1989?

24                **MR. JARED PLACITELLA:**  Yes, your Honor.

25                **SPECIAL MASTER:**  Okay.

Page 191

1          **MR. PLACITELLA:**  So if you look at this

2     entry of 7/22/2005, this is during the time the

3     Martin case was pending.  It talks about a review of

4     the Westfall depositions.

5          **SPECIAL MASTER:**  Who is -- Mr. Dembrow

6     is at Cahill.  Who is --

7          **MR. PLACITELLA:**  Cahill.

8          **SPECIAL MASTER:**  -- M. Sullivan?

9          **MR. PLACITELLA:**  Paralegal at Cahill.

10          **SPECIAL MASTER:**  So this is again a

11     within Cahill communication.

12          **MR. PLACITELLA:**  Correct.  And it's

13     talking about in 2005, at least on its face, a review

14     of the Westfall depositions.

15          **SPECIAL MASTER:**  Okay.

16          **MR. PLACITELLA:**  Well, the Westfall

17     depositions have never been revealed between 1988

18     when the Ashton affidavit was executed and 2005.  But

19     somebody had the Westfall depositions.  When they

20     swore under oath the depositions didn't exist,

21     somebody had the depositions.

22          **SPECIAL MASTER:**  Not unless that e-mail

23     says:  I looked for the depositions, I can't find

24     them, can you help me?

25          **MR. PLACITELLA:**  I guess you'll have to

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 192

1    find out.  But somebody knows that the depositions

2    were taken.  And somebody is still answering

3    interrogatories after this entry saying the

4    depositions were never taken.   Motions are still

5    being filed.

6              **SPECIAL MASTER:** I don't --  well, I'm

7    sorry, I don't want to interrupt your argument

8    anymore.  I just -- the rationales that you give to

9    all of these are obviously the rationale that foots

10   most cleanly with what you're trying to advance.

11             My problem is that I have to look at it

12   and say:  What are the reasonable inferences of

13   what's being said?

14             And that one in particular can mean a

15   hundred different very innocuous, meaningless things

16   that are not the color you're putting to it.

17             **MR. PLACITELLA:** Yes.  But what's the

18   reasonable inference your Honor?

19             **SPECIAL MASTER:** Well, that's the

20   problem.  What's the reasonable inference?

21             **MR. PLACITELLA:** Well, let me articulate

22   it.

23             **SPECIAL MASTER:** Is the reasonable

24   inference the inference that everything that Cahill

25   Gordon touched somehow had some kind of cooties on

Page 193

1    it?

2              Or is the reasonable inference that we

3    are talking about a venerable law firm that would be

4    acting in an honest and ethical manner?  Or somewhere

5    in between those two?

6              What's the reasonable inference?  That's

7    exactly the problem I'm having.

8              **MR. PLACITELLA:**  Well, the reasonable

9    inference as I would articulate it to you is as

10   follows.  From 1988 to 1989 they swore under oath no

11   depositions existed.   In 2005 it's clear that at

12   least they know depositions existed.

13             **SPECIAL MASTER:**  No.

14             **MR. PLACITELLA:**  And of course they did

15   know because they were at the depositions in 1983.

16   So they resurface at least in discussions in 2005.

17             **SPECIAL MASTER:**  What we know is there

18   is an e-mail from a lawyer to a paralegal in that

19   same firm about certain depositions.  And the e-mail

20   could be nothing more than:  Dear Miss Sullivan, can

21   you please retrieve from storage the depositions in

22   Westfall?

23             And there may have been an e-mail back

24   from Miss Sullivan that says:  I looked and there are

25   none.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                          Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                      February 23, 2018

Page 194

1              This is 2005.   And the deposition that

2     you're talking about was taken 22 years before.

3              **MR. PLACITELLA:**  I'm showing you a

4     single entry where I believe you can infer that

5     people at Cahill Gordon knew it was ongoing.  All

6     right.

7              **SPECIAL MASTER:**  You're absolutely

8     right.  I can infer that.   The question is, is that

9     a reasonable inference?  That's what I'm struggling

10    with.

11             **MR. PLACITELLA:**  I believe it's a

12    reasonable inference for the following reason.   They

13    were at the depositions in 1983.

14             **SPECIAL MASTER:**  You're not hearing me,

15    Mr. Placitella.   Assume they were at the depositions

16    in 1983.   Mr. Dembrow was not handling the

17    deposition in 1983, was he?

18             **MR. PLACITELLA:**  I'm sure he was not.

19             **SPECIAL MASTER:**  Okay.  In 2005, 23

20    years later, he sends an e-mail to a paralegal about

21    those depositions.  We don't know what the subject

22    matter is.

23             But is it reasonable to say that I have

24    looked at these depositions -- that the e-mail says:

25    I have looked at these depositions and I'm going to

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD
Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference
Friday
February 23, 2018

Page 195

1  put them in a very, very dark and deep corner so that

2  no one can see them?  Is that reasonable?  I don't

3  know.   I don't think so.

4          MR. PLACITELLA:  Was it reasonable, your

5  Honor, after 2005, knowing that the depositions took

6  place and that there was a discussion to continue to

7  swear in answers to interrogatories that no

8  depositions took place?

9          SPECIAL MASTER:  Well, if the paralegal

10  goes and searches and says we don't have any such

11  depositions, here you have a lawyer who was not part

12  of it at the beginning being able to say, well, okay,

13  there are no depositions.

14          MR. PLACITELLA:  Right.  And I

15  understand your issue.   That's the purpose of an in

16  camera review, for you to see that, for you to make

17  those determinations.

18          You don't have to make a leap of faith.

19  I'm saying is there a reasonable good faith belief to

20  suspect and examine it?  And I'm saying if you look

21  at the entries --

22          SPECIAL MASTER:  My problem with that is

23  that what you're proposing, which is go look at the

24  documents to then determine if we have a prima facie

25  case seems to me a post hoc ergo propter hoc kind of

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                      February 23, 2018

Page 196

1   analysis, which I don't think is appropriate under

2   these circumstances.

3            **MR. PLACITELLA:**  Your Honor, that's not

4   what I'm saying.   What I'm saying -- you can do that

5   under the law, by the way.

6            **SPECIAL MASTER:**  I'm not so sure about

7   that.

8            **MR. PLACITELLA:**  I'm pretty sure.

9            **SPECIAL MASTER:**  I know you're arguing

10  it.  But I'm not so sure.

11           **MR. PLACITELLA:**  You can do that.  I

12  don't think you need to do that.

13           And then I think you need to look at the

14  documents that -- the privilege log at the time the

15  fraud was discovered.

16           So for example, I just highlighted this

17  one, 7/13/2009.  This is after the fraud is

18  discovered in the Paduano case.  And it talks about a

19  discussion with Arthur Dornbusch regarding the

20  Paduano case.

21           Now, Arthur Dornbusch had been out of

22  there for three or four years now.  They went back

23  and apparently interviewed Arthur Dornbusch.  What he

24  had to say may be highly relevant to the issue of

25  what did he know, what information was being

Page 197

1    withheld, what documents were destroyed?

2              I mean, all those things I submit are

3    ripe for your review.

4              **SPECIAL MASTER:**  Highly relevant doesn't

5    mean you waive the privilege or that the privilege

6    should be pierced.

7              I assume -- not I assume.   Relevance

8    has nothing to do with the inquiry today.

9              The inquiry today is have you

10   demonstrated by a fair preponderance of the evidence

11   a prima facie case that would sustain the application

12   of the (a) exception to the attorney/client

13   privilege?

14             And I will tell you very candidly I

15   don't think you've argued at all today and only in a

16   footnote in your original submission and in the last

17   two pages of your reply brief the Kozlov exceptions.

18             And frankly, I think that's wise,

19   because I think that the Kozlov exception has been

20   severely limited of late and in my view properly so.

21   So I don't think that that's where you want to hang

22   your hat.

23             You want to hang your hat if at all on

24   the (2)(a) exception to the attorney/client

25   privilege, which is fine.

Page 198

1          But there's a process for that, and

2     that's what I'm trying -- I'm trying to fit all of

3     this within that process.

4          **MR. PLACITELLA:**  We rely on our brief as

5     it relates to the Kozlov exception.  I'm trying not

6     to spend all the time -- you know, we only have so

7     much time.

8          But let me just bring it back to --

9          **SPECIAL MASTER:**  And you've been at it

10    for two hours and 15 minutes.

11         **MR. PLACITELLA:**  Let me just -- let me

12    end here.  We started with is there a reasonable

13    basis to suspect that the privilege-holder was

14    intending to commit a crime or a fraud in violation

15    of the New Jersey statute?

16         I believe that within our submissions

17    and what we've highlighted here today we have

18    demonstrated to you the following.  BASF or Engelhard

19    had numerous tests and information that there was

20    asbestos in their talc at whatever levels.   They

21    sent those tests out.  They were verified by

22    multiple laboratories.  They verified it themselves.

23    Their scientists testified to the same.

24         In the face of that, they told their

25    customers there was not even a trace, nothing.  It

Page 199

1    was asbestos-free.

2            When it came to having testimony, their

3    lawyers, their scientists swore under oath with their

4    lawyers sitting right there that they found asbestos

5    in the talc at whatever levels.

6            Those same lawyers who sat in those

7    depositions, the same lawyers were in charge of that

8    litigation.  Many have showed up at conferences with

9    courts, many wrote the letters, the same lawyers

10   wrote letters to litigants saying there was no

11   evidence of asbestos in the talc.  They told courts

12   there was no evidence of asbestos in the talc.  They

13   had cases and they bragged about having dismissals,

14   about there being no evidence of asbestos in the

15   talc.

16           If you look at the totality of the

17   evidence, the fact that they had the information,

18   that they were there, there's no mistaking it, and

19   they made those representations knowing that they

20   were not true, that we have demonstrated to you by

21   more than a preponderance of the evidence, by more

22   than a reasonable basis, I think it's clear and

23   convincing that a prima facie case of crime fraud

24   under our rule and the expansive definition that our

25   rule has been given by our Supreme Court provides.

Page 200

 1              And if you look at the totality of the

 2    evidence that we've given to you and not the little

 3    pieces, the totality of the evidence, you have to

 4    come -- we submit you have to conclude that we need

 5    to go to the next step, that we've given you enough

 6    evidence to make out a prima facie case for you to go

 7    look at the documents and make a decision about

 8    whether those documents are in violation given all

 9    the circumstances of our rules and whether they

10    should be released.

11              SPECIAL MASTER:  And the documents you

12    want me to look at are those that are listed in

13    Appendix C to your motion?

14              MR. PLACITELLA:  Yes.  I understand your

15    position about you can't see the whole record.  But

16    let me say this --

17              SPECIAL MASTER:  My question is simple.

18    Okay.  You have an Appendix C which is submitted

19    only to the BASF folks and me that lists what I

20    number to be 61 documents.  Some of them are kind of

21    hard to tell because there are three entries in one

22    box.  When there's two entries I assume that the

23    first entry is the beginning page and the last --

24    the entries on the last page.  That's all assumption

25    on my part.

Page 201

1          But looking at Exhibit C, you're asking

2     me to look at those 61 entries to determine whether

3     the attorney/client privilege should be pierced in

4     respect of those documents only?

5               **MR. PLACITELLA:**  And included within

6     that, and I think it's there, is the Cahill

7     compilation, the documents within the Cahill

8     compilation.

9               **SPECIAL MASTER:**  Well, I can't make that

10    up.  Okay.  You gave me an appendix that listed the

11    documents that you think are subject to review.

12    Quote, plaintiffs list the following documents for

13    review should the Court deem an in camera evaluation

14    necessary.

15              These are the documents that you want

16    disclosed?

17              **MR. PLACITELLA:**  Yes.

18              **SPECIAL MASTER:**  Okay.  And they're

19    marked by Bates number, so they are what they are.

20              **MR. PLACITELLA:**  And we asked for in our

21    brief, if it's not there by Bates number, I think it

22    actually is, that you review the balance of the

23    documents in the Cahill compilation.

24              **SPECIAL MASTER:**  All right.  I don't

25    know what those are because they're not marked.

Page 202

1            **MR. PLACITELLA:** It's a single exhibit.

2            **SPECIAL MASTER:** No. There's an exhibit

3 of the Cahill compilation. But there are three --

4 what appear to be three documents that were withheld.

5            **MR. PLACITELLA:** I think there's more

6 than that, your Honor.

7            **SPECIAL MASTER:** Well, I'm just --

8 there might be more because I'm looking -- there's

9 one at the very end. All right. We're going to

10 make this really easy.

11            Mr. Jared Placitella, I want you to take

12 your exhibit, your Appendix C, and I want you to

13 provide me a complete list of the documents that you

14 want me to look at. Okay. And those are the

15 documents about which you are making a claim should

16 be disclosed as an exception to the attorney/client

17 privilege.

18            If it's not on that list, it's not going

19 to be considered. And it's not an invitation to

20 make that list any broader or any longer than what it

21 already is.

22            Do we understand each other?

23            **MR. JARED PLACITELLA:** Yes, your Honor.

24            **SPECIAL MASTER:** You're going to get

25 that to me by Monday? Can you do that? Is that too

USDC, District of NJ             Williams, et al. v. BASF Catalysts, LLC, et al.              Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference         February 23, 2018

Page 203

1    soon?

2                    MR. JARED PLACITELLA:  It might --

3                    SPECIAL MASTER:  Speak up.

4                    MR. JARED PLACITELLA:  It might be too

5    soon, your Honor.

6                    SPECIAL MASTER:  Okay.  When can you get

7    it to me by.

8                    MR. JARED PLACITELLA:  Can we do

9    Wednesday?

10                   SPECIAL MASTER:  Wednesday is fine.

11   That's the 28th.  Seton Hall plays Villanova that

12   night in Newark.  Basketball that is.

13                   MR. JARED PLACITELLA:  Yes, your Honor.

14                   SPECIAL MASTER:  Anything else, Mr.

15   Placitella?

16                   MR. PLACITELLA:  No, your Honor.

17                   SPECIAL MASTER:  Okay.  I don't know

18   who's going speak on behalf of BASF or Cahill, but we

19   need about a five minute break.

20                   And I should tell everyone what Mr.

21   Placitella told me during the earlier break.  He has

22   a hard stop at 3:30.

23                   But there are five other lawyers on

24   behalf of the plaintiffs here.  I'm sure that among

25   them collectively they will be able to provide an

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                 Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 204

1    approximation of Mr. Placitella's advocacy.  So we're

2    going to rely on that, if okay with you.  I don't

3    want to hold you up, Mr. Placitella.

4              **MR. PLACITELLA:**  Well, I'll make a

5    couple phone calls.

6              **SPECIAL MASTER:**  Well, no, what you got

7    to do is important.  So let's take a short break.

8              (Break.)

9              **SPECIAL MASTER:**  Mr. Assaf, are you

10   doing the honors?

11             **MR. ASSAF:**  I'm going to have a few

12   words, your Honor, and then I'm going turn it over to

13   Mr. Bress to handle some of legal issues.

14                  And then Mr. Farrell, with the kindness

15   of Mr. Placitella, I think is going to take apart a

16   couple of Mr. Placitella's slides.  So he'll ask him

17   to put up, for example, slide 33.

18                  And since we don't have the slides yet,

19   but I think Mr. Placitella or Jared will help us out

20   on that one.

21             **MR. PLACITELLA:**  We got a little

22   technical problem I just found out.  We're in the

23   same -- we use the same connection.

24             **MR. ASSAF:**  We'll take the other one

25   down.

USDC, District of NJ              Williams, et al. v. BASF Catalysts, LLC, et al.              Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 205

 1                    MR. PLACITELLA:  And Sean apparently

 2    took the adapter.

 3                    SPECIAL MASTER:  Okay.  We'll muddle

 4    along as best we can.    Okay.

 5                    MR. ASSAF:  And so, your Honor, I'm

 6    going to turn it over to Mr. Bress.

 7                    SPECIAL MASTER:  Mr. Pasternack, do you

 8    have those?

 9                    MR. PASTERNACK:  No, I don't.

10                    SPECIAL MASTER:  You don't have the

11    slides?

12                    MR. PASTERNACK:  It's on his laptop.

13                    SPECIAL MASTER:  Can you e-mail them to

14    whom ever it is that's -- is that you, Mr. Anguas?

15                    MR. ANGUAS:  No, I'm just over here

16    presenting for Kirkland.

17                    SPECIAL MASTER:  Right.  If he e-mails

18    them to you, you can then present them for the

19    Kirkland side, right?

20                    MR. ANGUAS:  Right.

21                    MR. ASSAF:  That would be great.

22                    SPECIAL MASTER:  So can you do that?

23                    MR. PLACITELLA:  Well, I have to figure

24    out -- I can't e-mail all the slides because I only

25    showed a small portion of them.

Page 206

1           **MR. ASSAF:**  Mr. Roth is going to bring

2      the slides back -- or the adapter back, so I think

3      the problem is solved.

4           **SPECIAL MASTER:**  Okay.  Whatever.  If

5      not, I'm going to submit you to the tender mercies of

6      Mr. Reiley, which means none of you is going to like

7      what the results are going to be.  I speak from

8      experience.

9           **MR. ASSAF:**  Well, thank you, your Honor.

10     Before I turn it over to Mr. Bress and Mr. Farrell, I

11     do have two -- three procedural points I'd like to

12     raise.

13          The first is actually early on in the

14     argument in response to one of your questions,

15     plaintiffs' counsel said BASF continued the fraud

16     after the acquisition and the fraud would still be

17     continuing today but for being uncovered in 2009.

18          **SPECIAL MASTER:**  Other than the

19     rhetorical flourish that I assume all of those

20     statements have --

21          **MR. ASSAF:**  Well, I just can't --  a lot

22     of things in this case, we'll argue about a lot of

23     facts.  But the notion that BASF was somehow involved

24     in orchestrating this fraud, Mr. Placitella knows

25     that's untrue.  In prior iterations he's told Courts

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 207

1    that.  And I can't allow that to go unrebutted.

2              Number 2, or along that line, I think

3    your Honor raised this question --

4              SPECIAL MASTER:  Tell me, Mr. Assaf,

5    when did Kirkland start representing BASF in this

6    matter?

7              MR. ASSAF:  We got a call in November of

8    2009.  And I was -- that's my lead into the next

9    point, your Honor.

10             SPECIAL MASTER:  I knew that.

11             MR. ASSAF:  We were engaged in 2010

12   fully.  And I talked to Miss Desai at the break.  In

13   terms of the document efforts that your Honor I think

14   asked some questions about, it took us a while to

15   start to uncover all of these documents.  BASF has

16   spent literally millions of dollars going to storage

17   facilities, going to Cahill storage facilities,

18   replicating whatever documents existed for this

19   legacy business that went out of business in 1982

20   that it acquired in 2006.

21             So again, I just don't want your Honor

22   to think BASF has done anything except exercise

23   outstanding stewardship of a problem that they

24   inherited.

25             SPECIAL MASTER:  I will tell you that,

Page 208

1    at least as far as I can tell, this case was filed in

2    March of 2011.   And there's been nothing that has

3    been said to me that would lead me to believe that

4    BASF or Cahill has done anything since the filing of

5    this lawsuit other than act in the manner that I

6    would expect litigants and their counsel to act.   So

7    that's really not a problem.

8             I think what Mr. Placitella's -- the

9    import of what Mr. Placitella was trying to say was

10   that if you look at everything up until that point,

11   it suffices to establish a prima facie case that by a

12   preponderance of the evidence there is a reasonable

13   basis upon which to pierce the attorney/client

14   privilege.

15            Now, that's a very vanilla statement

16   without any of the rhetoric that honestly I fully

17   expect advocates to throw in every so often.   After a

18   while, if you do it too often, it loses its

19   effectiveness, which sounds to me as being somewhat

20   counterproductive.

21            But be that as it may, that's what I

22   understood him to say.

23            So I don't think that Mr. Placitella or

24   anybody on the plaintiffs' side is indicting the

25   current iteration of the clients and lawyers on the

Page 209

1    defense side.  I don't think that's the case at all.

2                Am I right, Mr. Placitella?

3                MR. PLACITELLA:  Never suggested to the

4    contrary.

5                SPECIAL MASTER:  He can't bring himself

6    to say that I'm right.  But that's okay.

7                MR. PLACITELLA:  I said you're right

8    many times today.

9                MR. ASSAF:  So the second procedural

10   issue, your Honor, is the procedure here.  And I

11   think the last 25 to 35 minutes of the slides that

12   Mr. Placitella now identifying documents, I'm pretty

13   sure he said one of the reasons -- the primary reason

14   he was doing that was because of the whole Samson

15   order.  And he had just -- he had asked for Samson to

16   be reviewed and then the Samson order intervened.

17                And, your Honor, I don't think that's

18   correct with the record.  I think on January 15th at

19   the hearing, and we'll put on the record the colloquy

20   from page 176 to 182, we had this very discussion

21   about the identification of documents.

22                And Mr. Placitella told you at that time

23   that he did not identify the documents because I

24   didn't think that's what you wanted, you, Justice.

25                And you said:  I don't know where you

Page 210

1   got that from.

2                   There is no mention that, oh, well,

3   Samson, I'm just referring back to Samson.

4                   He filed this motion without identifying

5   documents.  And his point then, at least a month ago,

6   was he did it because he didn't think that's what you

7   wanted.

8                   **SPECIAL MASTER:**  Well, the record is

9   what the record is.  And the applicable legal

10  standards are what the applicable legal standards

11  are.  So can we dovetail there?

12                  **MR. ASSAF:**  And we are.  I'm going to

13  turn that over to Mr. Bress now.

14                  But the last procedural point on the

15  legal standard, just so I understand it clearly, is

16  that plaintiffs' law firm is going to provide to BASF

17  and your Honor a listing of the 61 documents that

18  they believe satisfy a prima facie case in

19  furtherance of a crime or a fraud.

20                  **SPECIAL MASTER:**  No, it's more than

21  that.  It's 61 plus the ones from the Cahill

22  compilation that they claim, number 1, satisfy the

23  prima facie -- or assist in satisfying the prima

24  facie burden they must meet, and secondly are the

25  documents for which they are seeking disclosure.

USDC, District of NJ              Williams, et al. v. BASF Catalysts, LLC, et al.              Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 211

1          Okay.  So that it's not this incredibly

2     large universe out there.  It's actually fairly

3     limited, given the number of documents in this case.

4          And as counsel already know, I mean,

5     I've done privilege reviews on more than 61 documents

6     already.  And you can ask Mr. Reiley, who had to take

7     my gibberish and turn it into redacted documents.

8          **MR. ASSAF:**  Okay.  So that's -- I'm glad

9     for clarification on that.

10          And I will now turn it over to Mr.

11     Bress, who's going to address the legal standards and

12     continue the argument.

13          **SPECIAL MASTER:**  Mr. Bress?

14          **MR. BRESS:**  Thank you, your Honor.  Dan

15     Bress with Kirkland & Ellis for BASF.

16          Your Honor, obviously on behalf of us,

17     on behalf of our client, our general counsel who's

18     here today, we appreciate you holding the hearing.

19     We appreciate --

20          **SPECIAL MASTER:**  Don't appreciate

21     holding the hearing.  It's what we're supposed to do.

22          **MR. BRESS:**  And I was also going to say

23     we appreciate the care and attention you're obviously

24     giving to this significant motion.

25          **SPECIAL MASTER:**  Just so that you know,

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                        Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference              February 23, 2018

Page 212

1    one of my favorite comics is Chris Rock.

2              **MR. BRESS:**  I enjoy him as well.

3              **SPECIAL MASTER:**  Right answer.  And he

4    has a great routine from very early on in his career

5    about people taking care of their kids.  And he's

6    paraphrasing these guys saying:  Well, I take care of

7    my kids, I do this, I do that, I do the other.

8              And his response was:  What do you want,

9    a cookie?  That's what you're supposed to do.   Okay.

10              So we have cookies.  But you don't get

11    it for doing your job.   You get it because having

12    cookies is good.

13              So please, I could have said no -- well,

14    I probably couldn't have said no to Chief Judge

15    Linares when he called me.  But that's why I'm here.

16              **MR. BRESS:**  Thank you, your Honor.  We

17    appreciate that.

18              Your Honor, the fundamental submission I

19    want to make to you today is that if the proper legal

20    standards are actually applied to the motion that the

21    plaintiffs filed, that motion fails.

22              **SPECIAL MASTER:**  Okay.  Is the standard

23    any different than I just articulated to Mr. Assaf?

24              **MR. BRESS:**  So here are the key

25    elements.  You have to identify documents that are in

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 213

1   furtherance of a crime or fraud.  And the in

2   furtherance of standard has real meaning.

3              There was some allying of what that

4   standard actually means.  And I think it's very

5   important to crystallize what it actually does

6   include and what it doesn't include.

7              But the documents have to be in

8   furtherance of a crime or fraud.   There has to be

9   client's wrongful intent.  This is another

10  significant point that I think was much allied in the

11  presentation you heard.

12             **SPECIAL MASTER:**  Let me take you back to

13  the prior element --

14             **MR. BRESS:**  Sure.

15             SPECIAL MASTER -- which the in

16  furtherance of.  What do you say in respect of

17  plaintiffs' argument that under the New Jersey

18  statute it's in aid of and not in furtherance of and

19  does that make a difference?

20             **MR. BRESS:**  Your Honor, I would say

21  exactly what you said before, which is that in aid of

22  means in furtherance of.

23             The in furtherance of standard has

24  existed in the common law for the better part of a

25  120 to 150 years.  There are case after case after

USDC, District of NJ              Williams, et al. v. BASF Catalysts, LLC, et al.              Friday
C.A. No. 2:11-cv-01754-JLL-JAD         Special Master Conference              February 23, 2018

Page 214

1   case that say the standard is in furtherance of, in

2   distinction to two other standards that proponents of

3   the crime fraud exception have often argued for,

4   which is the documents merely have to be related to

5   or they have to be evidence of a fraud.

6           I think that when you look at what the

7   plaintiffs are arguing, it appears today they

8   accepted the in furtherance of standard.

9           I can tell you when you read their

10  brief, they have been strenuously opposing the in

11  furtherance of standard.

12          And as your Honor knows, we've been at

13  this for a long time, not just here.

14          The distinction between the these three

15  standards, in furtherance of, related to, and

16  evidence of, matters massively.

17          In aid of is in furtherance of.   In aid

18  of is an active term.   It means advance, just like in

19  furtherance means.

20          And how do we know that in the context

21  of New Jersey law?   We know it from the Fellerman

22  case.

23          We have six slides, your Honor, so that

24  I think gives you some indication --

25                  SPECIAL MASTER:   Including the cover

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 215

```
 1    slide or --

 2              MR. BRESS:  Seven slides.

 3              SPECIAL MASTER:  Okay.

 4              MR. BRESS:  Ronny, if you could pull up

 5    slide 4, this is the New Jersey Supreme Court quoting

 6    at the top the in aid of language and then after the

 7    block quote construing it to mean in furtherance of.

 8              In furtherance of means in aid of.  When

 9    that statute was passed in 1960, New Jersey had a

10    crime fraud exception for the better part of probably

11    70 to 80 years based on the reported cases.  And the

12    understanding always was a more active commission of

13    a fraud in furtherance of.

14              And you have the Third Circuit, your

15    Honor, that has said the exact same thing.  And we

16    can turn to slide 1, which is In re:  Grand Jury

17    Subpoena from the Third Circuit, 2014.  In

18    delineating the connection required between the

19    advice sought and the crime or fraud, we have

20    repeatedly stated that the legal advice must be used

21    in furtherance of the alleged crime or fraud.  We

22    have rejected the more relaxed related to standard

23    and explained that the legal advice must give

24    direction for the commission of future crime or

25    fraud.
```

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                    February 23, 2018

Page 216

1          And what you see repeatedly in the case

2     law is the client has to be intending the crime or

3     fraud at the time of the communication.

4               **SPECIAL MASTER:**  Can I ask you though --

5               **MR. BRESS:**  Sure.

6               **SPECIAL MASTER:**  -- is In re: Grand Jury

7     Subpoena interpreting the New Jersey statute?

8               **MR. BRESS:**  It is not, your Honor.  But

9     if you go again to slide 4, we have Fellerman, the

10    New Jersey Supreme Court interpreting the New Jersey

11    statute treating in furtherance of and in aid of as

12    the same thing.

13          And if you look at the next slide, which

14    is a case called Sunshine Biscuits from the Appellate

15    Division, here I would say the in furtherance of --

16    obviously you see the phrase in furtherance of, but

17    actually when you look at the case, you can see the

18    work that the standard is doing, because in that case

19    at time one you have in an in-house counsel who

20    drafts a memo that says there was no contract between

21    the plaintiff and the defendant.

22          Fast-forward three years.  There's

23    litigation over this issue.  And the defendant takes

24    the legal position that there was no contract.

25    Meanwhile, this in-house clearly privileged memo gets

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference                February 23, 2018

Page 217

1    produced inadvertently.  And the plaintiff sees it

2    and says:  Aha, you've been lying to me.  In fact,

3    there was a contract and you said in this privileged

4    memo that there was a contract.

5                What the Appellate Division says is that

6    document is not discoverable under the crime fraud

7    exception because it doesn't suggest that the

8    development of false information or facts.  And it

9    goes on to say it's not discoverable even though this

10   affirmative defense is arguably inconsistent with the

11   legal position embodied in the memo.

12               And the reason why I put this up and why

13   it's so significant is that if the legal standard

14   were related to, the in-house counsel's memo was

15   clearly related to this later allegation of fraud.

16               SPECIAL MASTER:  But plaintiffs haven't

17   argued related to.  They have not argued --

18               MR. BRESS:  I would submit they --

19               SPECIAL MASTER:  Not in those terms.

20   They have argued that in aid of is far broader than

21   in furtherance of and therefore it is a larger

22   catch-all than just in furtherance of.

23               Isn't that really what they've argued?

24               MR. BRESS:  Well, I can't say I have

25   that clarity on what they argued, because in their

USDC, District of NJ               Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                       February 23, 2018

Page 218

1    opening brief they said the standard is not in

2    furtherance of.  I don't think they identified what

3    they thought the standard actually was.

4           **SPECIAL MASTER:**  Agreed.

5           **MR. BRESS:**  Then when you get to the

6    reply brief, they say it's not in furtherance of,

7    it's in aid of.

8              But, your Honor, there is not a single

9    case that I'm aware of that has said in aid of means

10   something different than in furtherance of.

11             And the in aid of formulation, which was

12   enacted in New Jersey law in 1960, is based on a set

13   of model evidentiary rules that were developed in the

14   50s.  And some states do have the language aid of.

15             And I'm not aware of and plaintiffs

16   certainly haven't cited any case that said that aid

17   of means something different than in furtherance of.

18             But to your point on the related to,

19   when Mr. Placitella puts up a slide that says here

20   are the documents on the privilege log that have the

21   word Martin in it, therefore you should review them

22   in camera, that at best is a related to analysis.

23   That's all it is, because there's no suggestion that

24   any of those documents are in furtherance of, much

25   less that they reflect the client's intent to have a

USDC, District of NJ           Williams, et al. v. BASF Catalysts, LLC, et al.           Friday
C.A. No. 2:11-cv-01754-JLL-JAD           Special Master Conference           February 23, 2018

Page 219

1    crime or fraud be committed by their lawyers.

2                But going back to Sunshine Biscuits,

3    your Honor, I think if the standard was related to,

4    that document should have been produced.  And

5    certainly if the standard was evidence of, the

6    document definitely should have been produced,

7    because clearly the earlier in-house counsel's memo

8    was some evidence of this supposed later fraud.

9                And what you heard Mr. Placitella argue

10   today was what the crime fraud exception covers is

11   essentially the truth that proves the lie.

12               That's not how the crime fraud exception

13   works.  The crime fraud exception is a much more

14   circumscribed, articulated exception with

15   specifically defined elements.

16               One of those is you must have

17   demonstrated a key timing component, which is that at

18   the time of the communication the clients intended to

19   misuse legal services in furtherance of a crime or

20   fraud.

21               I don't think, although the plaintiffs

22   seem to be finally acknowledging that perhaps the

23   standard is in furtherance of, there is a reason why

24   the plaintiffs did not argue in their brief that

25   that -- they didn't embrace the standard that

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 220

1  literally hundreds of courts have adopted.  They

2  didn't embrace the standard that the New Jersey

3  Supreme Court has articulated and that the Appellate

4  Division here applied, because I think they have to

5  realize that there are not -- there is not a good

6  faith basis to argue that any of the documents on the

7  privilege log are in furtherance of a crime or fraud.

8          And this is, by the way, your Honor,

9  part of the prima facie case.  We can go to slides 2

10  and 3.  I've put up here Chevron.  And if you look,

11  your Honor, it's talking about the prima facie case

12  and the key element number 2, the attorney/client

13  communications were in furtherance of that alleged

14  crime or fraud.

15          And if you look at the next slide, your

16  Honor --

17          **SPECIAL MASTER:**  Well, again, let me

18  take you back to that.

19          **MR. BRESS:**  Sure.

20          **SPECIAL MASTER:**  Chevron did not apply

21  the New Jersey statute.

22          **MR. BRESS:**  Well, but this, your Honor,

23  I think is --

24          **SPECIAL MASTER:**  That's a yes or no.

25          **MR. BRESS:**  Yes, it did not.

Page 221

1          **SPECIAL MASTER:**  Okay.

2          **MR. BRESS:**  But I was about to respond

3  that it doesn't make a difference, because I don't

4  think the Third Circuit law on the crime fraud

5  exception is any different than the New Jersey law.

6          **SPECIAL MASTER:**  Well, plaintiffs are

7  arguing that it is.   Plaintiffs are arguing that the

8  unique use of words in the New Jersey statute renders

9  it incompatible with the argument that in furtherance

10 of is the standard.   That's their argument.   Whether

11 it's right or wrong, that's for a later day.   But

12 that is but their argument, that the language of the

13 statute means something other than in furtherance of.

14 And they say it by saying:  Look at the exact words,

15 and if the legislature had intended to have it say in

16 furtherance of, they would have used those words, and

17 they did not, particularly in light of all of these

18 other cases all over the universe that use the in

19 furtherance of formulation, but New Jersey does not.

20 So there must be a reason we have different language

21 in New Jersey than everybody else does.   That's

22 their argument.

23          **MR. BRESS:**  Yes, that is their argument.

24 But the point I want to work up here with, your

25 Honor, is that that argument is clearly not correct.

Page 222

1          And the reason I say that is because

2  there is no basis to believe that New Jersey alone

3  among every state in the country, alone among every

4  federal circuit court of appeal somehow has a

5  different standard for the crime fraud exception.

6          I don't think that's borne out in any

7  New Jersey case.   I think it's contradicted by the

8  New Jersey cases.  It's contradicted by Fellerman,

9  which equates the two, much as your Honor did.  And I

10  think dictionaries and legal thesauruses would show

11  us the same thing.  And it is contradicted by

12  Sunshine Biscuit.  And there are other cases as well

13  that use the phrase in furtherance of.

14          But the point I also want to make, your

15  Honor, is that I think this is a question for today.

16  It's not a question for later.  It's a question for

17  today because to state a prima facie case you need to

18  be able to put forward evidence that would be

19  sufficient to meet the actual elements of the crime

20  fraud exception.

21          And the problem I have with plaintiffs'

22  submission is that they're seeking to avoid what is a

23  central element here, which the in furtherance of

24  test.

25          And I don't see how you can state a

USDC, District of NJ             Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference              February 23, 2018

Page 223

1    prima facie case when you misarticulate the legal

2    standards that apply and then when you don't put

3    forward the proof that would sustain the actual legal

4    requirements.

5              So in our view, the in furtherance of

6    standard is -- in aid of, in furtherance of, it's the

7    same thing, and that by not embracing that standard

8    and explaining how it could be met and by not

9    identifying any particular documents that would be

10   met under the standard, the prima facie case fails.

11             **SPECIAL MASTER:**  Okay.  But Mr.

12   Placitella at one point conceded that even if you

13   applied the in furtherance of standard, there is more

14   than enough in this record to satisfy the prima facie

15   showing that they are required to do so.

16             And in order to demonstrate that, he

17   marshaled a whole bunch of facts.  Now, of course,

18   interpreting them in the light most favorable to

19   him -- I shouldn't say to him -- to his clients.  But

20   he did marshal a whole bunch of facts.

21             Now, whether those facts deserve the

22   interpretation that is being advanced or they deserve

23   some other different interpretation is something that

24   we're going to have to address at some point or

25   another.

Page 224

1          But isn't it fair to say that based upon

2    the entire presentation that's been made, that at the

3    very least there's been a sufficient showing by a

4    fair preponderance of the evidence that there is a

5    reasonable basis, a reasonable factual basis for a

6    good faith belief that the exception would apply?

7          Which then takes us to step 2, which is

8    the actual in camera ex parte review of the documents

9    themselves.

10          **MR. BRESS:**  Let me respond.  I don't

11   think that's correct.   And I think here are the

12   reasons why.

13          The presentation that you saw this

14   morning, and Mr. Farrell is going to respond

15   point-by-point to some of these slides and I think

16   you're going to see a somewhat different version of

17   the facts than you heard this morning.  But set that

18   aside.

19          What Mr. Placitella came forward with

20   was evidence that he believes shows a fraud.

21          What the cases say is that a showing of

22   fraud, even a compelling one, is not enough to

23   satisfy the crime fraud exception.   Simply because

24   you plead a fraud or even if you prove a fraud in

25   front of a jury doesn't mean you then get to take the

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Friday
C.A. No. 2:11-cv-01754-JLL-JAD      Special Master Conference      February 23, 2018

Page 225

 1    privileged documents.  This is a completely separate

 2    inquiry.

 3                    And so I think at most --

 4            **SPECIAL MASTER:**  But let's deal with

 5    that.  Let us say for purposes of argument that the

 6    plaintiffs have established the existence of a fraud

 7    or a crime.  Okay.

 8            **MR. BRESS:**  We disagree, but I'll accept

 9    the premise.

10            **SPECIAL MASTER:**  I expect no less from

11    you.  But let's assume for the sake of argument that

12    the plaintiffs have established a prima facie case

13    that a crime or fraud has been committed.

14                    They then point to a number of

15    communications that in their view were -- and I'm

16    going to use what I think is the correct

17    nomenclature -- that were in furtherance of the crime

18    or fraud.

19                    And they then say that based upon their

20    proofs, which they claim are actually greater than by

21    a fair preponderance of the evidence, that the second

22    stage needs to be addressed, which is the actual

23    review of the documents themselves.

24                    I'm not going to go into the and you

25    should be able to review the documents themselves to

Page 226

1    establish the prima facie case because that strikes

2    me as putting the cart before the horse.

3              **MR. BRESS:**  That's not correct, yes.

4              **SPECIAL MASTER:**  But what's wrong with

5    that?

6              **MR. BRESS:**  So I think there are several

7    things that are wrong with it.  We haven't even

8    identified what fraud we're talking about here.   I

9    don't think that based on the submission we have seen

10   today --

11             **SPECIAL MASTER:**  I can tell you what

12   fraud has been identified here.

13             **MR. BRESS:**  Well, the point I was going

14   to make, your Honor, was the spoliation point,

15   because I really do think that has to be off the

16   table at this point when what was put forward in an

17   opening brief were allegations of document

18   destruction and the Hemstock, quote/unquote, purge

19   memo that doesn't actually call for the destruction

20   of documents.

21             We responded to this allegation of fraud

22   by saying:  How can you allege and claim you should

23   be entitled to our privileged documents based on

24   spoliation when you haven't identified any document

25   that was destroyed or missing, which is what led to

Page 227

1    Appendix C, which we have had no opportunity to

2    respond to.

3              And so if we're are talking about the

4    misstatements, I understand the -- I understand your

5    Honor's point.  I don't think that spoliation issue

6    has been properly set up in front of your Honor.

7              But to get back to --

8              **SPECIAL MASTER:**  Well, let's not go too

9    far off of that.  Are you okay if you're allowed a

10   reasonable opportunity to respond to the spoliation

11   arguments?

12             **MR. BRESS:**  Your Honor, I think that if

13   there's going to be further proceedings in the case,

14   there's going to need to be further submissions to

15   your Honor, and part of that would include --

16             **SPECIAL MASTER:**  Is that a yes?

17             **MR. BRESS:**  Yes.  Clearly, yes.

18             **SPECIAL MASTER:**  All right.  I know it's

19   your way of arguing.  But for me it's a lot more

20   helpful if you give me the conclusion up front and

21   then do the argument.

22             So if I ask you a question that's a yes

23   or no question, you can say yes and then continue.

24   But at least I know -- or no.  At least I know how to

25   cabin in what you're saying to me.

Page 228

1           **MR. BRESS:**  Yeah, I apologize.

2           **SPECIAL MASTER:**  Don't bury the lead.

3           **MR. BRESS:**  It was so obvious to me that

4    the answer was yes.  But yes.

5           **SPECIAL MASTER:**  I'm not that smart.

6    So you have to help me here.

7           **MR. BRESS:**  Yes a thousand times.  But

8    I still, your Honor, don't think that really remedies

9    the situation, because here we're talking about a

10   prima facit case.  All we have to go on is the

11   plaintiffs' showing.  And if the plaintiffs in their

12   reply brief made -- essentially sandbagged us with 45

13   pages of briefing that we didn't have a chance to

14   respond to --

15          **SPECIAL MASTER:**  And I cured the

16   sandbagging.  So what's your complaint?  If I cure

17   the sandbagging, you don't have a complaint.

18          **MR. BRESS:**  Well, I think what would

19   happen then, your Honor, is we should be allowed to

20   respond to that before your Honor makes a

21   determination on the prima facie case.

22          **SPECIAL MASTER:**  I should think so.

23          **MR. BRESS:**  Yeah.

24          **SPECIAL MASTER:**  As much as I don't like

25   it, I should think that that would be --  I think

Page 229

1   that the plaintiffs have a choice to make.  They

2   have a choice to either withdraw their spoliation

3   arguments and allow me to decide this on the record,

4   or they can maintain their spoliation arguments,

5   which means that you will get the opportunity to

6   respond.  They will not get an opportunity to reply.

7   It will be in the nature of a sur-reply, which the

8   rules are not in favor of, but I'd be happy to

9   give --  if that's the case, be happy to give to you

10   leave to respond to a 44 page appendix to a brief

11   that, if folks haven't noticed, I'm a little annoyed

12   at.  I don't think that that's how things should be

13   done.

14        If you wanted to file a 44 page brief on

15   spoliation, all you had to do was ask.  I haven't

16   turned anybody down on anything to this point.

17        So those are the choices it strikes me.

18   Either they can withdraw their spoliation claims.

19   Then there's nothing for respond to.  Or they can

20   maintain their spoliation claims, at which point BASF

21   and Cahill will be given the opportunity, a

22   meaningful opportunity to reply.  And then I'll rule.

23        **MR. BRESS:**  I guess I would say, your

24   Honor, there's to me a third option, which is just

25   simply to disregard the --

Page 230

1          **SPECIAL MASTER:**  I'm not going to do

2   that.

3          **MR. BRESS:**  -- improper reply.

4          **SPECIAL MASTER:**  I'm not going to do

5   that.  That's not an option in my book.  This is far

6   too important a motion for me to do that.  I don't

7   think I would be meeting my obligations here to the

8   Court if I were to do that.

9          **MR. BRESS:**  I understand and respect

10  that position, your Honor.  I guess my reaction to it

11  is I think it's a position the plaintiffs put you in

12  by not following the proper approach to making a

13  prima facie case.

14         And I think that to have to argue it --

15  we appreciate the opportunity to file a further

16  brief.  If that's where it goes, we will do that.

17         But point of today was to be able to

18  evaluate the plaintiffs' prima facie case as based on

19  the papers.  And I think we're at a disadvantage by

20  not having those responses for --

21         **SPECIAL MASTER:**  Let me interrupt you

22  for a moment.

23         Mr. Placitella, what choice do you want?

24         **MR. PLACITELLA:**  I would consult with my

25  brethren here before --

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Friday
C.A. No. 2:11-cv-01754-JLL-JAD    Special Master Conference    February 23, 2018

Page 231

1           **SPECIAL MASTER:**  Why don't you do that

2 right now.  Take a minute and do that.  I'm concerned

3 that you may turn into a pumpkin on me.

4           **MR. PLACITELLA:**  No, I'm good.  I took

5 care of it.

6           **SPECIAL MASTER:**  Let's get it done.

7 We'll go off the record for a minute.

8           (Break.)

9           **SPECIAL MASTER:**  Are we ready?

10           **MR. ROTH:**  Yes, your Honor.

11           **SPECIAL MASTER:**  Mr. Placitella, you got

12 something to report?

13           **MR. PLACITELLA:**  Yeah, we had a --

14           **MR. ROTH:**  Well, I think -- I'm not sure

15 what your last question was, your Honor.  I think you

16 said are we dropping the spoliation claim --

17           **SPECIAL MASTER:**  My last question was

18 are you ready to proceed?

19           **MR. ROTH:**  Before we went off the

20 record, your Honor.

21           **SPECIAL MASTER:**  The choice is simple.

22 Either withdraw your spoliation issue or agree to the

23 filing of a sur-reply brief.

24           **MR. ROTH:**  So we will agree to the

25 filing of the sur-reply brief.

Page 232

1          **SPECIAL MASTER:**  Okay.

2          **MR. ROTH:**  And perhaps there's an issue

3    to be framed here based on the argument especially as

4    it relates to the crime fraud that we've heard today.

5          Perhaps after everybody's done, I'll

6    have an opportunity to address that, rather than

7    interrupt.

8          **SPECIAL MASTER:**  I don't understand that

9    at all.

10          **MR. ROTH:**  Yeah, I've been doing that to

11    everyone here.

12          **SPECIAL MASTER:**  Well, that should tell

13    you something.

14          **MR. ROTH:**  For purposes of whether we've

15    established a prima facie case for the crime fraud,

16    we've identified evidence, even in the publicly

17    non-privileged arena, evidence that was concealed

18    from plaintiffs in their underlying cases that the

19    defendants Cahill and Engelhard knew about.

20          You and Mr. Placitella had a discussion

21    about is that spoliation if they were destroyed or

22    not destroyed.

23          And for purposes of crime fraud prima

24    facie case, it doesn't matter whether they were

25    destroyed or not.   They were concealed and not

Page 233

1    available, which your Honor defined as spoliation.

2               And we agree that for purposes of this

3    motion that was spoliation.

4               Where we get to the appendix that we

5    filed, and I can't remember, Judge, how many pages it

6    was --

7          **SPECIAL MASTER:**  It's 44, just in case

8    you forgot.

9          **MR. ROTH:**  We were responding to an

10   assertion in a reply brief that said:  You never

11   identified documents that were destroyed.  There are

12   other reasons why that may be relevant in this case.

13              There was talk before about Rosenblit

14   damages.  And there was an argument to be made that

15   the fact that some of those documents have been found

16   or could be found show that they could have been made

17   available to the plaintiffs in the underlying cases.

18              But those in our view are two distinct

19   elements of this lawsuit.

20              But for purposes of the crime fraud

21   argument, I think we've established spoliation in

22   terms of the documents that are concealed.

23              Appendix C, however, we don't want to

24   run the risk --  sorry.  Appendix E, the 44 page one.

25   Sorry.  We didn't want to run the risk of waiving any

Page 234

1    claim by saying no, we're not pursuing spoliation

2    when, as we've discussed, it's an important part of

3    our prima facie showing.

4                So it is confusing.  I don't know

5    whether I've made matters clearer.  But you've asked

6    for an answer and we said, yeah, we'll accept the

7    sur-reply.

8                **SPECIAL MASTER:**  Okay.  What's that do

9    for you, Mr. Bress?  You good?

10               **MR. BRESS:**  Yes.  We will submit a

11   sur-reply, your Honor, and then --

12               **SPECIAL MASTER:**  Can you tell me by

13   when?

14               **MR. BRESS:**  We would like three weeks on

15   the sur-reply.  And we would like 60 pages.

16               **SPECIAL MASTER:**  I'm sorry?

17               **MR. BRESS:**  We'd like 60 pages and three

18   weeks.

19               **MR. PRATTER:**  We had 44 pages.  Where do

20   they get 60?

21               **SPECIAL MASTER:**  Well, because they

22   asked for it.  You didn't.  You asked for 35 and

23   gave me a hundred.

24               **MR. BRESS:**  Your Honor, I can explain to

25   you why.

Page 235

1          **SPECIAL MASTER:**  Mr. Bress, you don't

2     have to explain why.   I assume that any lawyer t who

3     makes that request does it in a good faith basis and

4     has a reason for it.   So we're talking about --

5          **MR. GUSSACK:**  Your Honor, may I have a

6     moment to confer with my co-counsel as to timing?

7          **SPECIAL MASTER:**  Sure.

8          **MS. GUSSACK:**  As you can appreciate,

9     we're a little bit newer.   And I want to make sure

10    three versus four weeks, which makes sense for us.

11    If I might have a minute.

12         **SPECIAL MASTER:**  Absolutely.

13         **MR. GUSSACK:**  Thank you.

14         **SPECIAL MASTER:**  The only thing I have

15    to give folks a heads-up is I'm going to be out part

16    of April and may fly into May.   I'm having a medical

17    procedure done that I just found out I'm going to be

18    out of commission for two weeks.   I did not expect

19    that.   And it's going to be sometime in April.   And

20    I'd like to get this done before that.   So if you

21    could bear that in mind.

22         But, Miss Gussack, please do talk to

23    these folks and come up with a date.

24         **MR. GUSSACK:**  Thank you.

25         **MR. PLACITELLA:**  I want to be heard on

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 236

1   the date before they...

2                    **MR. BRESS:**  Your Honor, if it would be

3   okay with the Court, we would suggest March the 21st.

4                    **SPECIAL MASTER:**  March the 21st, that's

5   a Wednesday.  March the 21st it is.

6                    **MR. PLACITELLA:**  Could I be heard on

7   this, your Honor?

8                    **SPECIAL MASTER:**  Yes.  But I'm not going

9   to pay much attention to it.

10                    **MR. ROTH:**  I know that.

11                    **SPECIAL MASTER:**  Okay.  This is

12  something of your own making as far as I'm concerned,

13  Mr. Placitella.

14                    **MR. PLACITELLA:**  Well, okay.

15                    **SPECIAL MASTER:**  But whatever you want

16  to tell me, I'll be happy to listen to it.

17                    **MR. PLACITELLA:**  If that's how it's

18  going to get extended as the Court suggests, then

19  we're going to have to have a conversation about the

20  discovery end date, because a lot of what was going

21  to transpire may be impacted by that.  That's my

22  point.

23                    **SPECIAL MASTER:**  I appreciate that, that

24  there might be.  What I'm going to suggest to you is

25  don't let it, the best you can.   If it does, come

Page 237

1    back to me and we can talk.

2                    But I will tell you that my uninformed

3    reaction is no, it's not going to affect the

4    discovery end date.

5                    I don't hear the defense saying that

6    they need the discovery end date extended.   And the

7    need for this sur-reply was the result of plaintiffs'

8    actions.

9                    So, you know, you don't get to kill your

10   parents and then seek clemency because you're an

11   orphan.

12                   You wanted how many pages?

13           **MR. BRESS:**  60, your Honor.

14           **SPECIAL MASTER:**  Do you need 60?

15           **MR. BRESS:**  I believe we do in these

16   circumstances.

17           **SPECIAL MASTER:**  You do know I read each

18   one, right?

19           **MR. BRESS:**  I've seen evidence of that,

20   your Honor.

21           **SPECIAL MASTER:**  I'm not getting my

22   younger either.   Any appendices you want you to do?

23   No appendices?

24           **MR. BRESS:**  Your Honor, I think everyone

25   here has probably heard your directive on appendices.

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 238

1           **SPECIAL MASTER:** Okay. So you get

2 until March 21st. Is this going to be a consolidated

3 brief between Cahill and BASF or --

4           **MS. GUSSACK:** No, your Honor.

5           **SPECIAL MASTER:** -- are you going to do

6 separate?

7           **MR. GUSSACK:** Separate, your Honor.

8           **SPECIAL MASTER:** Okay. Miss Gussack,

9 do you also want 60 pages?

10           **MR. GUSSACK:** I'd like to bring it in

11 under 60, your Honor.

12           **SPECIAL MASTER:** I know you would.

13           **MS. GUSSACK:** But I'll hold it at 60 for

14 now.

15           **SPECIAL MASTER:** Okay. So does that

16 help you there, Mr. Bress?

17           **MR. BRESS:** Yes, I think we have that

18 issue resolved, your Honor.

19           **SPECIAL MASTER:** Okay. And I know I

20 kind of cut you off in the middle of your

21 presentation. Is there something else that you'd

22 like to bring to my attention?

23           **MR. BRESS:** Your Honor, I want to --

24 where we began this part of the conversation was

25 comments that you made to the effect that you have

Page 239

1    seen a lot of facts put up on the screen, isn't that

2    enough for a prima facie case?  I responded on the

3    spoliation piece.  We've now bracketed that to the

4    side.

5           But I want to come back to your Honor's

6    question and make a few additional points in response

7    to that, because I don't believe that what you saw

8    today does satisfy the legal requirements for a prima

9    facie case.

10          There's two key points I want to make,

11    your Honor, in why there's a deficiency.  The first

12    one is the failure to identify specific documents

13    that were subject to the crime fraud exception.

14        **SPECIAL MASTER:**  I've cured that.

15        **MR. BRESS:**  I don't think so, your

16    Honor.

17        **SPECIAL MASTER:**  Why not?

18        **MR. BRESS:**  A few reasons.

19        **SPECIAL MASTER:**  I've got an Appendix C

20    that has all sorts of Bates numbered documents that I

21    asked counsel and they said do two things.  Number 1,

22    they are the documents that they assert assist in

23    proving their prima facie case.

24          And secondly, they are the documents

25    that they want disclosure on -- or in respect of

Page 240

1    which they want disclosure on, that universe.

2              So why do I need -- other than at some

3    point, if it becomes relevant, I may ask you folks to

4    produce those documents to me ex parte so I can make

5    a determination.   But that's only after I get past

6    the prima facie burden.

7              So what more do I need to know?

8              **MR. BRESS:**  Your Honor, the central

9    problem with Appendix C is that all it does is list a

10   set of Bates numbers.

11             There has been no showing at all as to

12   how any particular document is in furtherance of a

13   crime or fraud.  And that's the legal standard that

14   governs here.

15             **SPECIAL MASTER:**  How do they do that if

16   they don't have access to the documents?

17             **MR. BRESS:**  They do it with

18   non-privileged evidence, your Honor.   In these cases

19   what people need to come forward with is an

20   explanation.

21             There were privileged logs that were

22   flashed up very briefly that we haven't even had the

23   opportunity to respond to.  That was the attempt, not

24   Appendix E but C.

25             But the last 10 slides we saw where

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD           Special Master Conference                      February 23, 2018

Page 241

1    there were red boxes around privilege log entries and

2    certain subject matter, that was an attempt to try to

3    satisfy the relevant legal standard to show that

4    there are particular communications that are in

5    furtherance of the crime or fraud.

6              But when you look at those

7    communications, your Honor, and I think you pointed

8    this out, there are communications that are purely

9    internal to Cahill.  There are communications from

10   all sorts of different time periods.

11             SPECIAL MASTER:  Well, that doesn't mean

12   that it's not a Cahill lawyer telling another Cahill

13   lawyer:  Hey, guys, this is how we can really screw

14   all these plaintiffs.

15             We don't know that, do we?

16             MR. BRESS:  But what we do know, your

17   Honor, is that on the face of the privilege log there

18   is no Engelhard in-house person listed.

19             SPECIAL MASTER:  Why does there need to

20   be an Engelhard in-house person listed --

21             MR. BRESS:  Because --

22             SPECIAL MASTER:  -- if you've got

23   Engelhard's agent talking to another one of

24   Engelhard's agents saying:  Hey, these are the things

25   that we can do where we can hide the ball on all of

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                        Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                February 23, 2018

Page 242

1    these plaintiffs who have no clue that this stuff is

2    like really bad for them, but we're not going to tell

3    them about it.

4              So what?  Why isn't that subject to the

5    exception?

6              The problem I have with your argument is

7    it is almost a Major-Major problem from Catch-22.

8    You know, I only talk to you in my office but I'm

9    never in my office.

10             How do they prove the contents of the

11   document if they don't have access to the contents of

12   the document?

13             **MR. BRESS:**  Your Honor, let me respond,

14   because I think this is reviewing a fundamental

15   disconnect between what the plaintiffs are asking and

16   what the crime fraud exception is about.

17             The crime fraud exception is not about

18   whether Cahill made misstatements to litigants.

19             The crime fraud exception as applied to

20   these factual circumstances is whether the client,

21   Engelhard and later BASF, intended for its outside

22   counsel to make misstatements in litigation.

23             The fact of a misstatement in a

24   litigation does not trigger the crime fraud

25   exception.

Page 243

1          **SPECIAL MASTER:**  Okay.  But let me then

2    change the hypo.  The hypo then becomes a memo from

3    someone at Cahill to someone else at Cahill -- I'm

4    not saying this happened.  Just hypothetically.

5    Someone from Cahill saying to somebody else at Cahill

6    saying:  I just got off the phone with John Doe from

7    Engelhard and our instructions are that we are to

8    deep-six all this information about asbestos and we

9    are to represent to whomever it is that there is no

10   evidence of any asbestos anywhere in this universe.

11          Okay.  Doesn't that -- but in order to

12   get to that, don't I have to see what the document

13   says?

14          **MR. BRESS:**  No, because otherwise there

15   would be a prima facie case in every single case.

16          **SPECIAL MASTER:**  But that's separate and

17   apart from whether they've made a prima facie case.

18          Their prima facie case is -- I guess the

19   distinction -- the disconnects that you and I are

20   having is the distinction between direct and

21   circumstantial evidence.

22          You're looking for direct evidence to

23   satisfy the prima facie case.  I'm looking at the

24   establishment of the prima facie case no matter

25   whether the evidence is direct or circumstantial.

Page 244

1          And the presentation that Mr. Placitella

2     made was largely circumstantial, but it did have some

3     direct evidence, because he had -- at least he

4     pointed out to what he said were statements made by

5     Mr. Hemstock, by -- I'm sorry, Dr. Hemstock, Mr.

6     Gale, Dr. Glassley, that all led you to the

7     conclusion that whatever the representations may have

8     been, they were incorrect, that in fact there was

9     asbestos in this talc based upon their review of it.

10          And we know objectively that BASF

11     through its counsel made representations to the world

12     at large that the Emtal talc did not contain asbestos

13     and that there was no proof that it did or it didn't.

14          Well, the plaintiffs' job is almost

15     impossible, because they have to prove a negative.

16     And the only way you can prove the negative is by

17     proving the absence of the positive, which is always

18     circumstantial.

19          So I'm not on the same page as you,

20     because I'm looking at what the plaintiffs have

21     presented through a very different prism than you

22     are, probably a much more -- I'm trying to find the

23     right word -- indulgent prism than you are.

24          **MR. BRESS:**  So let he respond, your

25     Honor.

Page 245

1          **SPECIAL MASTER:**  Please.

2          **MR. BRESS:**  I think the problem here is

3    that the central element of the crime fraud exception

4    is the client's wrongful intent.

5              What the plaintiffs are asking your

6    Honor to do, what their position is, is that there

7    was an ongoing fraud from the 70s all the way until

8    2009.

9              They've now disavowed the allegation

10   that BASF intended to commit a crime or fraud, which

11   I clearly think is outrageous.  But they're asking

12   your Honor -- in those 66 documents that they want

13   your Honor to review, there are documents spanning

14   the 70s to the late 2000s.  There are allegations --

15   sprawling allegations of fraud being made without any

16   evidence of what individual people knew and were

17   aware of.

18              You saw put up on the screen Mr.

19   Hassett, an in-house lawyer.  There is not any

20   allegation -- they haven't deposed Mr. Hassett.  They

21   haven't done the work to bring to your Honor the

22   non-privileged record that people do before they

23   bring this kind of motion.

24              And the reason they haven't done that

25   work, your Honor, is because they were banking on the

Page 246

1    Samson results.

2                    And that is why this crime fraud motion

3    wasn't even filed until your Honor prompted the

4    plaintiffs to file a class motion, to which they

5    responded:  Well, we now need to file a crime fraud

6    motion.

7              SPECIAL MASTER:  That's not exactly

8    correct.   They filed a crime fraud motion because I

9    ordered them to.

10             MR. BRESS:  Well --

11             SPECIAL MASTER:  That's why they filed.

12   Otherwise they would not have filed it, or at least

13   not yet.

14             MR. BRESS:  The reason this all came

15   about at the time it did and not years earlier in

16   this long-running case is because your Honor directed

17   the plaintiffs to file a class motion.  And they

18   claimed that as part of the class proceedings they

19   needed the privileged documents.

20                    And you said to them:  Well, if you need

21   the privileged documents, then --

22             SPECIAL MASTER:  Tee it up.

23             MR. BRESS:  -- file a motion.  But the

24   whole arc of this was not the plaintiffs going to

25   depose people on a non-privileged basis and bring the

Page 247

1    record to your Honor so that you could try to make a

2    conclusion that there was a prima facie case that the

3    client intended a crime or fraud.

4              And I think the time period we're

5    talking about is enormous.  There's an allegation

6    being made of 30 years' worth of crime or fraud.

7              And I think you have to break that

8    period up and look at the different considerations,

9    because I think these time periods are quite

10   different.

11             And let's start with the first one,

12   which is basically --

13             SPECIAL MASTER:  But isn't that your

14   argument at the ex parte in camera portion?

15             MR. BRESS:  I don't think so, your

16   Honor, because I think it goes to the failure to

17   identify any documents in furtherance of a crime or

18   fraud or that reflect the client's wrongful intent to

19   misuse legal services in furtherance of a crime or

20   fraud.

21             And if you look at the period from say

22   the 70s up until the time of Westfall, that's what

23   I'll what call the first period, when the plaintiffs

24   claim that misrepresentations were being made to the

25   customers, that's not true.  And Mr. Farrell will

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Friday
C.A. No. 2:11-cv-01754-JLL-JAD  Special Master Conference  February 23, 2018

Page 248

1 walk through some of that.  It is just not accurate.

2      But let's assume it is accurate.   In

3 what way was a lawyer involved in furthering that

4 alleged fraud on customers, who by the way, aren't

5 even plaintiffs in the case?

6      There is no identification of any lawyer

7 who was involved in furthering a fraud.  Cahill

8 Gordon didn't even represent BASF in the talc cases

9 until 1982.

10     So why are privileged documents on a

11 privilege log from the 70s -- in the late 70s and the

12 early 80s at issue?

13     We don't think there's been any showing,

14 any evidentiary showing to your Honor that that time

15 period could be put at issue.

16     And again, there's the Third Circuit --

17    **SPECIAL MASTER:**  How do I know that

18 without looking at the documents?

19    **MR. BRESS:**  Your Honor, because there's

20 not even any evidence put before you that would --

21 who is -- who are the lawyers involved in

22 perpetrating a crime or fraud in the late 70s?

23     The fraud that has been articulated to

24 your Honor has been Cahill Gordon.  The allegation is

25 that in the late 1980s, when Cahill was defending

Page 249

1 cases on behalf of Engelhard, it made misstatements

2 in litigation.

3     Cahill wasn't even involved in what

4 happened in the 1970s.  They weren't even on the

5 scene working on talc cases.

6     So what is the evidentiary basis that

7 would put at issue the client's wrongful intent?

8     And again, we could agree for argument

9 purposes, although it's not true, that there were

10 misstatements.

11     Well, all that shows is that somebody

12 can plead a fraud.  I'm talking about the 1970s and

13 the customer disclosures and the MSDS and things like

14 that.  All that shows is that if somebody wants to

15 come in and make the argument that those statements

16 were wrong, they can do that.

17     It's a completely different thing to be

18 able to bootstrap that into the privileged documents

19 without any evidentiary basis for the misuse of legal

20 services during that time period.

21     There's no allegation that lawyers were

22 involved in perpetrating a wrongful statement to a

23 customer base.

24     **SPECIAL MASTER:**  Well, that's not

25 entirely correct.  There are allegations that

Page 250

 1   lawyers were involved, because lawyers are party

 2   defendants in this case.   They're not party

 3   defendants because of their good looks, charm, and

 4   wit.   They're party defendants because it is alleged

 5   they engaged in actions that were improper.   Okay.

 6   Not yet proven.   Alleged.

 7            And for purposes of trying to pierce the

 8   attorney/client privilege, it is the plaintiffs'

 9   burden to demonstrate by a fair preponderance of the

10   evidence that there is a reasonable basis to believe

11   that the actions of the lawyers and the clients were

12   such that they were engaged in crime or fraud and

13   therefore the information should not be privileged.

14   That's what we're facing.   Okay.

15            But to say that there's nothing here

16   that tells us that there's some underlying

17   impropriety, well, there are the allegations in the

18   complaint that are pretty straightforward.   There's

19   the marshaling of the facts that Mr. Placitella

20   engaged in today.

21            Now, whether one agrees with him or not,

22   he does have his theory and he has presented facts

23   that he believes sustain his theory.

24            I'm not getting your point.   I'm just

25   not.   And maybe I'm just being super-dense.

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Friday
C.A. No. 2:11-cv-01754-JLL-JAD      Special Master Conference      February 23, 2018

Page 251

1      **MR. BRESS:** No, I don't think you are, your Honor, because I think that the catch here is that in order for the crime fraud exception to apply, the client has to be intending to misuse legal services at the relevant time period.

6      And the point I'm trying to make to your Honor is that this is not a story that stayed the same for 30 years by the allegations.

9      What they are alleging is that in the late 70s -- in the 70s there were misstatements to customers. Then there was Westfall. Then there was a gap in litigation. Then there were misstatements to litigants. And then there was a period after that when BASF acquired Engelhard.

15      And the point I'm trying to make to your Honor --

17      **SPECIAL MASTER:** But plaintiffs' argument is those are all of a whole cloth. They are not as distinct as you're pointing them out to be. They're saying this is a pattern and practice that started in the 1970s and continued until 2009. That's what they're saying.

23      And whether the people who were doing it in 2009 had the same scienter that the people who started it in 1970 had is to a large degree

Page 252

1    irrelevant.

2              The issue is you have a pattern and

3    practice, it's been in place, this is why it was in

4    place, and that therefore we should be entitled to

5    say the plaintiffs get access to these otherwise

6    privileged documents.   That's their argument.

7              **MR. BRESS:**  Yes, but the problem --

8              **SPECIAL MASTER:**  Not as elegantly said

9    as Mr. Placitella said it.   But that's their

10   argument.

11             **MR. PLACITELLA:**  That I would say no to.

12             **SPECIAL MASTER:**  Okay.   That's not your

13   argument?

14             **MR. PLACITELLA:**  No, not as eloquently

15   as you.

16             **MR. BRESS:**  Your Honor, the problem --

17             **SPECIAL MASTER:**  Flattery will get you

18   everywhere.

19             **MR. BRESS:**  The problem I have with that

20   framing of this is that there is not evidence that is

21   going to -- that can be used to support the

22   application of the crime fraud exception across this

23   entire period.

24             We already had Mr. Placitella

25   acknowledge on the record that after BASF acquired

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference              February 23, 2018

1    Engelhard --

2                **SPECIAL MASTER:**  In 2006.

3                **MR. BRESS:**  In 2006, there was no

4    client's intent.  Now --

5                **MR. PLACITELLA:**  I didn't say that.

6                **MR. BRESS:**  Well, if you're going to

7    make the allegation that BASF intended to commit a

8    crime or fraud --

9                **SPECIAL MASTER:**  Mr. Bress, talk to me.

10               **MR. BRESS:**  Your Honor, if someone is

11   going to make the allegation that BASF intended to

12   commit a crime or fraud, I think they should do so

13   today with all of us present and identify what the

14   evidence is, because I can tell you the evidence we

15   saw was that in a single privilege log in the Paduano

16   case there was a document that was inadvertently

17   logged and then, when we realized it was not

18   logged -- it should not have been logged, it was

19   produced.  Your Honor, that is not a crime or fraud.

20               And so to make the allegation that BASF,

21   after it acquired Engelhard, intended to commit a

22   crime or fraud I think is offensive and incorrect.

23   But the point --

24               **SPECIAL MASTER:**  Am I not obliged though

25   to give the plaintiff the benefit of all reasonable

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                      Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                  February 23, 2018

Page 254

1    inferences on the facts that they've marshaled?

2              **MR. BRESS:**  No, you're not, because

3    under the crime fraud exception, it's not about

4    allegations.  It's about evidence.

5              There is no evidence that BASF after it

6    acquired Engelhard intended to commit a crime or

7    fraud.

8              **SPECIAL MASTER:**  But that's a

9    distinction without a difference to me, because BASF

10   acquired Engelhard.  It acquired it with all of its

11   warts.

12             **MR. BRESS:**  Your Honor, that's a

13   question of successor liability.  It's not a question

14   of the crime fraud exception.  And here's why,

15   because I think this is a very critical point.

16             Under the crime fraud exception, the

17   client has to have the requisite intent at the time

18   of the legal consultation.

19             **SPECIAL MASTER:**  Are you saying that

20   Engelhard did not have the requisite legal intent?

21             **MR. BRESS:**  Your Honor, absolutely.  Our

22   argument is that Engelhard did not have wrongful

23   intent.  But our argument is also that BASF did not

24   have wrongful intent.

25             And you have -- on the privilege log and

USDC, District of NJ        Williams, et al. v. BASF Catalysts, LLC, et al.        Friday
C.A. No. 2:11-cv-01754-JLL-JAD        Special Master Conference        February 23, 2018

Page 255

1    the 66 documents, there are documents from 2008,

2    2009, years after the acquisition.

3                This is why we think they haven't made

4    the prima facie case, because what evidence have they

5    put before your Honor that would suggest any basis

6    that BASF intended to commit a crime or fraud after

7    BASF acquired Engelhard?  That is I think a

8    fundamental issue.

9                And it happens on the front end too,

10   your Honor.  Why in the 1970s -- what evidence has

11   been brought before your Honor that would show that

12   lawyers, legal services were misused?

13               Let's assume the marketing statements

14   were false.  We disagree.  Even if they were false,

15   that alone does not trigger the crime fraud

16   exception, because what the crime fraud exception is

17   about is not fraud writ large, but the misuse of

18   legal services in furtherance of that fraud where the

19   client intends that result.

20               And merely putting up a couple of

21   marketing statements from the 70s and claiming

22   they're false without anything more does not get the

23   plaintiffs where they need to be.  That's the problem

24   with this motion.

25               I think the same is true with documents

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                    Special Master Conference                    February 23, 2018

Page 256

1    during the Westfall case.  The allegation that

2    they've put forward is that the Westfall case was

3    designed when Engelhard was litigating the cases with

4    Cahill appropriately that the documents were

5    produced, that witnesses testified truthfully about

6    the documents.

7              SPECIAL MASTER:  But what am I to do

8    with the allegation that, as you just said, in the

9    Westfall case, Engelhard and Cahill were doing what

10   they were supposed to do.  They made disclosures, and

11   then they went:  Whoops, we got to put an end to this

12   piece of litigation.  And part of that has to be that

13   all of this information that we have disclosed needs

14   to get put in a very dark and cold corner, never to

15   be seen again.  And in the future, going forward,

16   when the same issue came up, nobody said:  Oh, here's

17   the information that was developed in Westfall.

18                  That's not what was said.  What was said

19   was there's no proof of asbestos in any of the talc,

20   when in fact the information in Westfall proved

21   something different.   That's their claim.

22              MR. BRESS:  Right.

23              SPECIAL MASTER:  And how do you get

24   around that?

25              MR. BRESS:  But, your Honor, the problem

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 257

1    is that's their claim.  There's no proof that would

2    support that claim.  What they're --

3              **SPECIAL MASTER:**  Whoa, whoa.  Slow down.

4    Okay.  The proof is I read at least the Hemstock and

5    Gale depositions.  They're not crystal clear.  And

6    they're clearly not as clear as Mr. Placitella would

7    like it to be.

8              But there's enough there where they can

9    say:  As of the Westfall case, people were on notice

10   that at least some people thought that the Emtal talc

11   contained asbestos.  In what quantities I don't know.

12   In what concentrations I don't know.  But there were

13   some people, and not John Does off the street, but

14   people who had a reason to know who thought that that

15   was the case.

16             The Westfall case gets settled with an

17   agreement of confidentiality and a return of all

18   information.  That goes off, gets put over here.

19             And then in the future what's being said

20   is:  No, there is no such evidence, when in fact it

21   is sitting in the Westfall documents, wherever they

22   may have landed.  Okay.

23             You then get to the second Rhode Island

24   case.  I forget what the plaintiff's name was.

25             **MR. PLACITELLA:**  Martin.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 258

1              **SPECIAL MASTER:**  Martin.  And that

2    plaintiff retains an expert who goes out and does an

3    investigation, comes back with a report that

4    basically says there's asbestos in them there hills.

5              And that case gets settled again with

6    another agreement that we get everything that you

7    have, including your expert's report.  And that gets

8    put on the shelf somewhere.

9              In the meanwhile, all of these other

10   cases are developing and they're all being told,

11   because I read any number of letters to that effect,

12   there is no proof of our talc containing any

13   asbestos.  Therefore, you should dismiss the case.

14   Some of them went as far as to threaten the

15   imposition of sanctions.

16              Those two sets of facts have a hard time

17   coexisting, unless there's something that connects

18   the two.

19              Plaintiff suggests that what connects

20   the two was the scheme and artifice to defraud that

21   was developed by the defendants in order to shelve

22   all of the information that showed wrongdoing and

23   make assertions that were false so that they could

24   get a litigation advantage.  That's their assertion.

25              In order for them to pierce the

Page 259

1   attorney/client privilege, they have to show, at

2   least for my purposes, a prima facie case by a

3   preponderance of the evidence in fact there is a good

4   faith basis to believe that that was the case.

5              Now, whether they've done so or not

6   we'll all find out in due course.

7              But at least for today's purposes, how

8   do you respond to that?  You can't just say:  Well,

9   they haven't done it.   Mr. Placitella spent two

10  hours of my life marshaling his facts.   He didn't

11  pull them out of thin air.   He had a document for

12  each and every thing that he said.

13             Now, whether I agree with his

14  interpretation of those documents is a different

15  story altogether.   But there certainly was some

16  showing today.

17             **MR. BRESS:**  Your Honor, the point we are

18  making is that at best the showing is one of fraud.

19  It is not a showing that would allow a prima facie

20  case to be found for the crime fraud exception.

21             And the reason is because the crime

22  fraud exception has more elements than just simply

23  fraud.

24             If you want to take away somebody's

25  privilege, there have to be various other

Page 260

1    requirements that are met.

2              There are many cases that go to trial

3    and someone successfully proves fraud.  It doesn't

4    mean at the end of the day there's a jackpot where

5    you then get your route through the privileged

6    documents.  They're two very different inquiries.

7              And the central problem we have with the

8    plaintiffs' submission is that they haven't brought

9    forward evidence of a wrongful client intent.

10              There are ways in which they -- it's not

11    up to me how they decide to build their case.  But I

12    don't think it can be built based on supposition or

13    based on speculation.

14              **SPECIAL MASTER:**  Well, I don't think

15    that that is fair or at least a fair evaluation of

16    what I'm being told, because the way I view it, the

17    way I view plaintiffs' arguments is they say:  Look,

18    there was this scheme and artifice to defraud.  It

19    was cooked up by BASF and Cahill.  Just what they're

20    claiming.  I'm not saying any of this is true.  And

21    in furtherance of this, this is what they did.  So

22    therefore, the communications between them during

23    that period of time must be vitiated because of what

24    they were doing.  It's kind of logical.

25              And the problem is I don't know what

Page 261

1    those communications are because I haven't seen them.

2    You have, I hope.  But I haven't seen them.  And so

3    I don't know if the e-mail from a partner at Cahill

4    to a paralegal at Cahill was:  Can you get me the

5    Westfall depositions, as opposed to:  I read the

6    Westfall depositions and I think we need to put this

7    in a very dark, dark corner to:  By the way, I was

8    thinking about the Westfall depositions, but how

9    about them Yankees?

10              I don't know what it says.

11              **MR. BRESS:**  Your Honor, I think that we

12   probably are going to circles, but --

13              **SPECIAL MASTER:**  We are going in

14   circles.

15              **MR. BRESS:**  And I don't want to belabor

16   these points.  I think you have our view of the crime

17   fraud exception.  And I do want to -- before we run

18   out of time, I do want to let Mr. Farrell walk

19   through some of these slides, because I think that's

20   an important thing for your Honor to see.

21              **SPECIAL MASTER:**  I'm here for however

22   long you need.  But Mr. Placitella --

23              **MR. PLACITELLA:**  I changed.

24              **SPECIAL MASTER:**  You okay?

25              **MR. PLACITELLA:**  Yeah.

Page 262

1          **SPECIAL MASTER:**  It's taken care of?

2          **MR. PLACITELLA:**  Yes, your Honor.  Thank

3   you.

4          **SPECIAL MASTER:**  All right.  Well, I

5   will say to you again, I thought that was more

6   important than what we're doing here.

7              Mr. Farrell, you are now their last

8   great hope.

9          **MR. FARRELL:**  Thank you for setting

10  appropriate expectations, your Honor.

11         **SPECIAL MASTER:**  Don't feel any pressure

12  now.

13         **MR. FARRELL:**  The issue that I wanted to

14  speak to you were all the slides that you saw this

15  morning from Mr. Placitella concerning the supposed

16  fraud.

17             You heard Mr. Bress speaking to were

18  there lawyers involved in the fraud and the absence

19  of a connection between the alleged fraud and legal

20  advice and legal advice in furtherance of fraud.

21             The issue I wanted to come back to is

22  whether there's been any fraud actually proven.

23             And I think what you saw this morning

24  actually underscores the problems that we've been

25  trying to identify for some time in plaintiffs'

USDC, District of NJ  Williams, et al. v. BASF Catalysts, LLC, et al.  Friday
C.A. No. 2:11-cv-01754-JLL-JAD  Special Master Conference  February 23, 2018

Page 263

1 theory of this case, because I really do think it's a

2 theory.

3     Your Honor will remember our very first

4 introduction on October 26th, 2017.  I think that --

5     **SPECIAL MASTER:**  I've tried very hard to

6 forget it.  But that's okay.

7     **MR. FARRELL:**  I think that issue number

8 1 on the agenda that day was science day.  We had

9 filed a motion months earlier asking for a science

10 day.  And that motion was still caught up in papers.

11 It hadn't been fully resolved.  And I believe Mr.

12 Assaf was explaining to you why we thought that

13 science day was so important.

14     And what your Honor saw this morning

15 illustrates again why the science day is important

16 and how it relates to all of the issues that you've

17 been hearing about this morning, not just the testing

18 records in the 1970s, but frankly why there was a

19 reasonable basis in the minds of lawyers and others

20 in the 80s and the 90s and the 2000s for statements

21 that were made.

22     Your Honor has been identifying the

23 point:  Well, can't I make the reasonable inference

24 from the documents that Mr. Placitella showed me this

25 morning that there was fraud and that there was a

USDC, District of NJ    Williams, et al. v. BASF Catalysts, LLC, et al.    Friday
C.A. No. 2:11-cv-01754-JLL-JAD    Special Master Conference    February 23, 2018

Page 264

1    crime of fraud?

2              And I would submit to your Honor there

3    is no reasonable inference to be made along those

4    lines because the very documents he showed you

5    undercut the point he's trying to make.

6              He would show you paragraph 1, and then

7    when you look at paragraph 2, it actually contradicts

8    the point that's made.  We tried to settle --

9              **SPECIAL MASTER:**  Sort of the like the

10   purge memo.

11             **MR. FARRELL:**  Well, I don't know that I

12   would say it's kind of like the purge memo, because I

13   think your Honor correctly described it.  It was

14   actually a retention memo.

15             I wanted to just hit on a few points

16   here because I know it's late in the day.

17             The first is we've been trying to

18   underscore the necessity of actual evidentiary proof

19   of the allegations that have been thrown around.

20             Your Honor probably noticed in

21   plaintiffs' submission no expert declaration, no

22   expert report, nobody speaking to what do these

23   actual tests mean, what are their capabilities, what

24   are their limitations and so on.

25             **SPECIAL MASTER:**  Well, but in your

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 265

1   response, in your opposition you took them to task

2   over that, didn't you?

3          **MR. FARRELL:**  And that was the point I

4   wanted to highlight is that BASF --

5          **SPECIAL MASTER:**  You don't need to

6   highlight it.  I read it.  I know what it is.

7          **MR. FARRELL:**  We have in fact put

8   forward competent expert testimony explaining what

9   the tests mean.

10         And I think that's a key point, because

11   a proper understanding of the testing record is why

12   there was a basis for all of the statements that were

13   made.

14         Now, there were a couple slides that Mr.

15   Placitella showed you this morning that I wanted to

16   just walk through briefly because I think it

17   illustrates what I'm trying to say.

18         Mr. Placitella, will you put up your

19   slide 33, please?

20          **MR. PLACITELLA:**  I have to put the

21   pieces back together here.

22          **MR. FARRELL:**  In the interest of time,

23   your Honor, I'll keep going.

24          **SPECIAL MASTER:**  This is going to be

25   forever.  He's having trouble plugging one thing into

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 266

1    the next.

2                **MR. FARRELL:**  I believe it's plaintiffs'

3    Exhibit 9 that I wanted to refer to --

4                **SPECIAL MASTER:**  Okay.

5                **MR. FARRELL:**  -- which is the technical

6    data sheet that Mr. Placitella showed you.

7                **SPECIAL MASTER:**  You mean the technical

8    data sheet that was supposedly part of the material

9    safety data sheet?

10               **MR. FARRELL:**  And actually was not, yes,

11   that's the one, your Honor.

12               **SPECIAL MASTER:**  Okay.  The one that

13   you came over here to look at?

14               **MR. FARRELL:**  That's correct.

15               **SPECIAL MASTER:**  Which one?

16               **MR. FARRELL:**  C.

17               **SPECIAL MASTER:**  Tab C?

18               **MR. FARRELL:**  We have here -- this is

19   the slide I was -- where I noticed it.  So you see

20   that Mr. Placitella has highlighted the second

21   paragraph in the document.

22               **SPECIAL MASTER:**  What does it say on the

23   bottom lefthand corner of that?

24               **MR. JARED PLACITELLA:**  October 1978.

25               **SPECIAL MASTER:**  Okay.  So I'm using the

Page 267

1    right technical data sheet.  Okay.  I just want to

2    make sure.  That would be Exhibit 9, Tab C.

3              Can you tell me, Mr. Farrell, or anybody

4    else here, whether the material safety data sheet

5    that precedes the technical data sheet, what the date

6    of it was?  Because the date is blank.

7              **MR. FARRELL:**  I don't believe the two

8    documents are connected.  And that's part of the

9    issue.

10             **SPECIAL MASTER:**  That will be my next

11   question, because when I look at the Bates numbers,

12   they don't seem to be sequential.  But I want to

13   start with dates.  So can you help me on that?

14             **MR. PLACITELLA:**  I think the proof will

15   show that every time they issued the data sheet they

16   didn't put a new date on it.

17             **MR. FARRELL:**  There's actually multiple

18   data sheets with different dates on them.  The point

19   that I wanted to make --

20             **SPECIAL MASTER:**  Well, the one that I'm

21   looking at, which is immediately preceding that

22   technical data page, has no date on it whatsoever.

23   So I don't know if this material safety data sheet

24   was ever used, was ever sent to anybody.

25             **MR. FARRELL:**  That's exactly correct,

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 268

1    your Honor.    And that I think is part of the point

2    that Mr. Bress was alluding to and that I also wanted

3    to highlight, which is the lack of evidence actually

4    proving up that documents were used in the way that

5    the plaintiffs claim they were used.

6                 I also think that this technical data

7    sheet illustrates the problems we have here with the

8    supposed reasonable inferences that can be drawn from

9    documents.

10                You see that Mr. Placitella has

11   highlighted on his slide 33 the second paragraph of

12   the technical data sheet, which is a paragraph that

13   contains the language regarding no trace of any

14   asbestos minerals.

15                And Mr. Placitella told you that this is

16   a false statement and fraud because at the time

17   Engelhard had evidence that there was asbestos in the

18   talc.

19                What he didn't tell you is that the very

20   next paragraph in the document, the third paragraph,

21   goes on to discuss the fact that the company did have

22   false positives, that there were some tests that

23   reported asbestos shaped fibers, but when you

24   actually looked at them with more powerful equipment,

25   it was determined that it wasn't asbestos.

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                  February 23, 2018

Page 269

1            And this wasn't a statement that was

2    made up out of whole cloth.  It was actually based on

3    testing data that Mr. Placitella has and that BASF

4    has today.  It is in a testing document that appears

5    in plaintiffs' Tab Number -- Exhibit 3, Tab Number 2.

6            And I have a loose copy here if it would

7    speed things along or I'd be happy to show your Honor

8    where it is in the binder.

9            **SPECIAL MASTER:**  Nothing in my life gets

10   speeded along in this case.  I think I have it right

11   here.   What's the Bates number?

12           **MR. FARRELL:**  The Bates number is BASF

13   Samson and then a bunch of zeros 13076.

14           **SPECIAL MASTER:**  Okay.  That's the

15   second page.  Now, again help me out.  Going back to

16   that technical data sheet that's up on the screen

17   when you pointed out the third paragraph of it, when

18   I read that, it tells me that randomly you might look

19   at something at relatively low magnification and it

20   may have something appearing to be asbestiform.

21           **MR. FARRELL:**  Correct.

22           **SPECIAL MASTER:**  And I asked the

23   question of Mr. Placitella, because as far as I

24   understand, asbestiform is not a supplement for

25   asbestos, it is a --

Page 270

1          **MR. FARRELL:**  It's a shape.

2          **SPECIAL MASTER:**  It's a term of art

3     defining the shame of something --

4          **MR. FARRELL:**  Your Honor is --

5          **SPECIAL MASTER:**  -- that makes it look

6     like but is not necessarily asbestos.

7          **MR. FARRELL:**  You're a hundred percent

8     correct.  The pen that I'm holding --

9          **SPECIAL MASTER:**  It happens

10    occasionally.

11         **MR. FARRELL:**  The pen that I'm holding

12    right now is asbestiform.

13         **SPECIAL MASTER:**  Because it's a straight

14    line.

15         **MR. FARRELL:**  Because it a looks like a

16    fiber.  And that's exactly what was going on in the

17    tests.  And the tests that I just referred your Honor

18    to, Tab 2 of Plaintiffs' 3, in the third full

19    paragraph, which begins:  At about 450 times

20    magnification, Engelhard scientists recount the fact

21    that using low power microscopes you occasionally see

22    asbestiform particles that look like fibers.  But

23    when you use a better microscope, it turns out it's

24    just talc that's rolled up, talc on its side, so on

25    and so forth.

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                 Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 271

1         That was all reported in the technical

2    data sheet that Mr. Placitella told you was the basis

3    for client fraud beginning in 1972.

4         They had testing data that supported the

5    conclusion and then they reported that conclusion in

6    the technical data sheet.

7         This all relates to a certain type of

8    microscope called phase contrast microscopy, which is

9    discussed in our expert reports and in those

10   documents.

11        And that brings me to the next slide of

12   Mr. Placitella's that I wanted to show you, which is

13   number 40.

14        Mr. Placitella.

15        **MR. PLACITELLA:**  Hold on one second.

16        **MR. FARRELL:**  While he's pulling it up,

17   I'll note, your Honor, this distinction, the issue of

18   unreliable tests and better tests that actually show

19   you reliable results, the limitations of PCM and so

20   on and so forth, essentially form the basis for all

21   of the company's marketing statements in the 1970s

22   and have a significant role in the statements that

23   were made in litigation later.

24        So the document that I'm showing to you,

25   this document from 1972, the test, to us is a key

Page 272

1   document.  This is showing what the company believed.

2   We have some test that are unreliable.  Better

3   testing shows different results.  And throughout the

4   early part of the 1970s, the better results, as

5   recounted in our expert report, showed no asbestos.

6          I wanted to pull up this document,

7   number 40, because it illustrates the point.

8          Mr. Placitella showed you 1972 testing

9   and then 1977 testing.

10          What he didn't say is that both of these

11   tests used the phase contrast microscope that the

12   company believed was unreliable for determining the

13   presence of asbestos.  And not just Engelhard, the

14   United States government thinks it's unreliable.

15       **SPECIAL MASTER:**  These days that's not a

16   good thing.

17       **MR. FARRELL:**  Every reputable asbestos

18   expert in the United States thinks it's unreliable

19   for differentiating asbestos from talc.

20          I think that's probably why you don't

21   see an expert declaration from the plaintiffs on this

22   issue.

23          The next slide I wanted to talk about is

24   number 45.  Mr. Placitella.

25       **MR. PLACITELLA:**  Hold on one second.

Page 273

1          **MR. FARRELL:**  So this is slide 45, which

2     quotes again a portion of a May 22nd, 1979, testing

3     document.

4               And this was the portion of the

5     plaintiffs' presentation where they started talking

6     to you about the findings of abundant fibers.  And

7     they were trying to draw the distinction between

8     abundant and trace.  And the suggestion was that

9     abundant was some monumental amount of asbestos and

10    therefore any argument by BASF that there was only

11    trace amounts of asbestos in the talc is false.

12              If you turn to the second page of the

13    document that the plaintiffs put up here, which they

14    didn't put in their slide --

15         **SPECIAL MASTER:**  And where do I find

16    that?  Because they have it as Exhibit 4E.  And we've

17    already ascertained that it's not 4, it's 3, right?

18         **MR. FARRELL:**  It's Tab 29 of plaintiffs'

19    Exhibit 3.

20         **SPECIAL MASTER:**  Tab 29.  And You want

21    me to look at the second page?

22         **MR. FARRELL:**  It's the very first

23    sentence of the second page.  After discussing the

24    test results that Mr. Placitella put up on the screen

25    and tried to suggest that abundant meant some

Page 274

1    monumental amount of asbestos, this same May 22nd,

2    1979, document says, quote:  It can be seen that most

3    of the samples have less than .01 percent fibers.

4    With the exception of 79J-4, an Emtal 42 product

5    processed 2/13/79, this particular sample had about

6    0.3 percent fibers.

7             So the point here being --

8            **SPECIAL MASTER:**  What's the magic

9    number?  At which point does this become bad for you?

10           **MR. FARRELL:**  Well, I'll submit to the

11    Court it's much higher than 0.3 percent.  And I think

12    we also --

13           **SPECIAL MASTER:**  I know you're

14    submitting that.  But what's the basis for your

15    submission?

16           **MR. FARRELL:**  The basis for my

17    submission is the expert reports that we included

18    with our materials where they discuss the fact -- and

19    I believe it's paragraph 49 of the expert report from

20    Drew Van Orden that we submitted wherein he discusses

21    the fact that words like abundant, many, trace, the

22    sorts of things that you see in those documents and

23    that the plaintiffs rely on, are just arbitrary terms

24    that don't actually tell you anything about the

25    amount of asbestos that's in a product.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 275

1                    **SPECIAL MASTER:**  Like highly unlikely

2      meaning impossible.

3                    **MR. FARRELL:**  Exactly, your Honor.

4                    Slide 47, Mr. Placitella.

5                    I'm sorry, your Honor.  I'm told it's

6      paragraph 48 of the Drew Van Orden report.

7                    **SPECIAL MASTER:**  Okay.

8                    **MR. FARRELL:**  The reason I wanted to

9      call your Honor's attention to this particular slide

10     is because Mr. Placitella showed it up.  This is a

11     few moments after he told you that the company knew

12     as of the early 1970s that there was asbestos in the

13     talc.

14                   And the language that caught my eye on

15     this document from 1979 is that the plaintiffs

16     themselves called out the sentence that characterizes

17     this as a, quote, newly recognized risk.

18                   How could it be a newly recognized risk

19     if it dated back to 1972 years later?

20                   The whole point was that in 1979 there

21     were new test results that reported new things, not

22     things that dated back to 1972.

23                   **SPECIAL MASTER:**  Well, except that if

24     the 1979 test reported a presence of asbestos, didn't

25     you have to disclose that?

Page 276

1             **MR. FARRELL:**  In what context, your

2    Honor?  Because I think --

3             **SPECIAL MASTER:**  In the context of the

4    client saying:  I don't want anything that has

5    asbestos in it.  In the context of someone who sues

6    Engelhard saying:  I used your product and I've

7    contracted asbestosis or mesothelioma or some form of

8    asbestos related cancer.

9             And instead, what plaintiffs say is that

10   in each one of those instances your response was:

11   Emtal talc does not contain asbestos, period.

12            **MR. FARRELL:**  And there was a basis for

13   that statement.  And the basis for the statement is

14   that even contemporaneous with the 1979 tests

15   reporting trace amounts of asbestos in some samples,

16   there were many other tests that still said no

17   asbestos.

18            And even testing that's been done today

19   on actual samples of Emtal talc has found no asbestos

20   in the talc.

21            That's also included as part of Mr. Van

22   Orden's and Dr. Gunther's submissions.

23            So I think by the second half of the

24   plaintiffs' presentation they were attempting to walk

25   past the issue of well, how much asbestos was there.

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.                   Friday
C.A. No. 2:11-cv-01754-JLL-JAD           Special Master Conference                February 23, 2018

Page 277

1           That's the key issue.   The whole basis

2    for these statements both in the marketing materials

3    and later in the litigation was a product of how much

4    asbestos was there and how often was it there and

5    what was the basis for saying those things.

6           The fact that there were trace amounts

7    of chrysotile asbestos in some samples of the talc in

8    only a portion of the operation of the mine is a key

9    fact that became the basis for statements that were

10   made later.

11          **SPECIAL MASTER:**  But you also have

12   deposition testimony of Dr. Hemstock who said based

13   upon his calculations in respect of one customer

14   alone, Congoleum, you're talking about 1.8 million

15   pounds of asbestos fibers that were being delivered

16   to Congoleum each year.

17          **MR. FARRELL:**  I'm glad you raised that,

18   your Honor.

19          **SPECIAL MASTER:**  I know you are.  That's

20   why I was giving you an introduction.

21          **MR. FARRELL:**  You might have looked at

22   my card.  That was the next slide on my list.

23          **SPECIAL MASTER:**  I looked at Mr. Assaf's

24   card.

25          **MR. FARRELL:**  Number 56, Mr. Placitella.

Page 278

1          This is exactly the issue that your

2    Honor observed, which is that the language quoted on

3    Mr. Placitella's slide again uses that magic word

4    asbestiform, not asbestos.

5          And when you actually look at Dr.

6    Hemstock's testimony from 2012, not from 1983, he

7    focused on that exact distinction.  He recognized the

8    distinction between asbestiform and asbestos and was

9    talking about the fact that yes, sometimes we found

10   asbestiform materials, but they weren't always

11   asbestos.

12         So to me the math equation that the

13   plaintiffs tried to walk him through is largely a red

14   herring.  It's telling us that based on some back of

15   the envelope that they tried to get Dr. Hemstock to

16   walk through, he did some math based on asbestiform

17   materials, not on asbestos.

18         The other point I would note is if it

19   really were true that there were 600,000 pounds of

20   asbestos delivered to one customer in one year, I

21   kind of think somebody would have noticed the fact in

22   1979 that there were essentially dump trucks full of

23   asbestos in this talc that was being delivered.

24         And yet what you see both from

25   government testing, from customer testing, is them

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 279

1   all agreeing with Engelhard that there's no asbestos

2   in the talc.

3            B. F. Goodrich, one of the customers

4   that Mr. Placitella has focused on and put a few

5   documents up on the slides, tested the talc itself in

6   the second half of the 1970s and said:  We found no

7   asbestos in your talc.

8            So it seems to me to be a fundamental

9   disconnect between the claim that there's 600,000

10  pounds of asbestos being delivered to one customer

11  and with the same customer saying:  We're doing this

12  testing and we're not finding any asbestos.  And the

13  government doing testing and saying:  We're not

14  finding any asbestos.

15           The explanation is first that the math

16  is absurd.  But second, we're talking about

17  asbestiform and not asbestos.

18           **SPECIAL MASTER:**  It's not math.  It's

19  arithmetic.

20           **MR. FARRELL:**  Arithmetic.

21           **SPECIAL MASTER:**  Which can still be

22  absurd, but a different issue.

23           **MR. FARRELL:**  So the point I'm trying to

24  make here, your Honor, is you had raised the issue of

25  reasonable inferences from the documents.  And I

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 280

1    believe you used terms like the facts marshaled from

2    the plaintiffs.

3              The problem is that the documents you've

4    seen, the facts that have been marshaled aren't even

5    supported by the documents that have been shown to

6    you.  And they're certainly not supported by

7    competent evidence from experts, others who could

8    actually tell you what the documents mean.

9              We have done that.  BASF has done that

10   and explained what the documents mean and how they

11   actually inform the sorts of statements that the

12   plaintiffs are claiming are false but frankly were

13   true at the time they were made.

14             Thank you, your Honor.

15             **SPECIAL MASTER:**  You want to come back,

16   Mr. Assaf?

17             **MR. ASSAF:**  A little bit back on

18   procedure, your Honor.  Thank you.

19             A couple points.  On procedure, I know

20   we're going to do the brief on the spoliation.  The

21   last 10 or so slices which Mr. Placitella

22   acknowledged were totally new in terms of him now

23   trying to say these are the in furtherance documents,

24   these are the timelines, and I appreciate your

25   anti-sandbagging sentiment, I would like the

Page 281

1    opportunity to address those either in a brief or in

2    the argument after the spoliation brief.

3    **SPECIAL MASTER:** You're assuming there

4    will be argument after the spoliation brief.

5    **MR. ASSAF:** Well, I did. Again, I'm

6    watching you. I'm learning from you. I think

7    you've already said that on important issues, you

8    know, we can come and see you. And I think these are

9    important issues. And we'd like to come back after

10    we submit and especially address those last 10

11    slides, which we'll now get copies of from Mr.

12    Placitella and do that. That's number 1.

13    **SPECIAL MASTER:** I will be guided by

14    what you all want. But I will tell you that my

15    original inclination was to get the brief and then

16    spend some time deciding it, because this is one

17    you're not going to get a decision that day. I'm

18    going to write something, because the issue merits

19    it.

20    On most of the other things I can give

21    you an explanation, do what we call in New Jersey a

22    bench opinion, which is what I normally do, and then

23    send you an order.

24    This is a little different. No matter

25    how it gets resolved, I think somebody or another is

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                 Friday
C.A. No. 2:11-cv-01754-JLL-JAD                 Special Master Conference                 February 23, 2018

Page 282

1    going to seek review.

2                    And I owe it to Chief Judge Linares to

3    give him something that he can look at and say either

4    I'm completely off my medication or maybe I actually

5    got it right.

6                    MR. ASSAF:  And I appreciate that, your

7    Honor.  For clarification, you're talking about

8    addressing stage 1, whether there's a prima facie

9    case that would then go forward?

10                    SPECIAL MASTER:  In my view, I have no

11   choice.

12                    MR. ASSAF:  Correct.

13                    SPECIAL MASTER:  It's a tiered

14   examination.   If I don't find that there's a prima

15   facie case, I don't get to the second step.

16                    I know that plaintiffs have argued that

17   I can look at step 2 to determine step 1.  I just

18   don't agree on that.   I think there is a procedure

19   and it makes sense to me.

20                    MR. ASSAF:  So I'll follow your Honor's

21   guidance.  But I would like to come back, because we

22   will have a 60 page brief and we will have --

23                    SPECIAL MASTER:  No, we're going to have

24   a brief hopefully not more than 60 pages, but

25   substantially less, because Mr. Bress is going to

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 283

1   make sure of that.

2            **MR. ASSAF:**  And we will have the

3   opportunity to review the new slides, admittedly new

4   slides.  And I'd like to argue those in front of your

5   Honor.

6            **SPECIAL MASTER:**  Okay.

7            **MR. ASSAF:**  And then in the interim,

8   your Honor, I'm going to ask you to consider, given

9   your very questions and Mr. Farrell's dispute with

10  Mr. Placitella about science, whether we can now have

11  science day, because I'll make the point to your

12  Honor no judge, no judge, no mediator, no Special

13  Master who's ever been involved in this case has had

14  a science day.

15           **SPECIAL MASTER:**  Do you really think I

16  need one --

17           **MR. ASSAF:**  I do, because --

18           **SPECIAL MASTER:**  -- in light of what

19  you've heard today?

20           Even Mr. Farrell thinks that I know my

21  stuff, so...

22           **MR. ASSAF:**  I do think you know your

23  stuff, your Honor.  And I'll be honest with you, I

24  think the reason I want one is because we're going to

25  put points on the board in terms of confirming that

Page 284

1    most of these slides cannot be trusted in terms of

2    the science.  And there's a reason why -- if the

3    plaintiffs felt so strongly about their case, why

4    wouldn't they want their expert, Fitzgerald, to spend

5    an hour and have you ask him some questions?

6                    I think that's dangerous, because you do

7    know enough.  And so I would like to have --

8                **SPECIAL MASTER:**  So you're saying I know

9    enough to be dangerous?

10               **MR. ASSAF:**  Yeah, I actually --

11               **SPECIAL MASTER:**  I don't think that's a

12   compliment actually.

13               **MR. ROTH:**  Your Honor, if I said that,

14   it would be like another weekend e-mail.

15               **SPECIAL MASTER:**  That's exactly right.

16               **MR. ASSAF:**  Mr. Roth suggested I say

17   that.

18               **MR. ROTH:**  You took my card.

19               **MR. ASSAF:**  Your Honor, that's what I'm

20   saying.  Listen, if it turns out that it's five hours

21   and it's a waste of time, our bad.

22                    But these are such important issues, why

23   wouldn't the plaintiffs want you to ask their expert

24   questions about this asbestiform issue?

25               **SPECIAL MASTER:**  I can't tell the

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference              February 23, 2018

Page 285

1    plaintiffs how they need to present their case.

2    They are very good lawyers.  This is not their first

3    rodeo.   They know what they need to do.

4              **MR. ASSAF:**  Well, then I would ask

5    permission that we be able to present -- and they

6    could cross.  If they don't want to bring anybody, I

7    could have an expert come here and what I would think

8    distill some of the key scientific points from the

9    slides that Mr. Placitella showed and show you why

10   it's just wrong on the science.

11             Mr. Placitella could ask him questions.

12   You could ask him questions.  And what's the worst

13   that could come of that?  It would be like you're a

14   litigator.

15             **SPECIAL MASTER:**  It would be another day

16   in my life I wouldn't get back.  So there's always

17   that.

18             Let me think about it.  My inclination

19   is no, I don't think it's necessary.  I don't want

20   people to do something that's unnecessary under the

21   circumstances.

22             When I look at the number of lawyers who

23   are in this room, I can hear the meters running.

24   This is an expensive proposition for all the parties

25   who are involved.

Page 286

1            And so as you well know, I tend to be

2    very cautious about that.   And we've spent a great

3    deal of time on the motions today.

4            So I do want to get Mr. Bress's brief,

5    underscore the word brief.   And I know he's going to

6    be parsimonious with his words.

7            You know why they call them briefs,

8    right?

9            **MR. BRESS:**  I'm aware, your Honor.

10           **SPECIAL MASTER:**  Okay.

11           **MR. ASSAF:**  Just procedurally then, your

12   Honor --

13           **SPECIAL MASTER:**  I think Mr. Placitella

14   is going to want to speak in reply, so --

15           **MR. ASSAF:**  Oh, I'm sorry.  Okay.

16           **MR. PLACITELLA:**  A couple of things.

17   One, science day, there was a motion for science day.

18           **SPECIAL MASTER:**  And it was denied

19   without prejudice.  So they can bring it again.

20           **MR. PLACITELLA:**  They can file the

21   motion and we'll respond again.

22           **SPECIAL MASTER:**  Exactly right.

23           **MR. PLACITELLA:**  The last 10 slides,

24   I'll send them to him.  But you basically obviated

25   those slides because you said:  I'm not going to look

Page 287

1    at that stuff that you're showing me.  Give me your

2    list.  That's what you get to do.

3              So why they would need a brief in

4    response to slides that you're refusing to look at --

5              **SPECIAL MASTER:**  Well, they want to --

6              **MR. PLACITELLA:**  -- it's fine.

7              **SPECIAL MASTER:**  They want to look at

8    the slides.  I know you're going to send them to

9    them.

10             **MR. PLACITELLA:**  Right.

11             **SPECIAL MASTER:**  And they're going to

12   make a judgment as to whether they need to address

13   them any further.

14             And I'm sure that Mr. Assaf will come to

15   the reasonable conclusion that he really does not

16   have to address them any further.  But that's Mr.

17   Assaf's conclusion to reach.

18             **MR. PLACITELLA:**  I have some substantive

19   comments.  It will take less than 10 minutes.

20             **SPECIAL MASTER:**  Okay.

21             **MR. PLACITELLA:**  Maybe less than five.

22             **SPECIAL MASTER:**  Shorter the better.

23   But take as much time as you need.

24             **MR. PLACITELLA:**  I understand.  So the

25   issue was raised why do we include the information --

Page 288

1     **SPECIAL MASTER:**  I'm so sorry.  My

2 apologies again.   You're over there to the left.

3 Miss Gussack, anything you want to add?

4     **MR. GUSSACK:**  No, your Honor.  We join

5 in the argument that BASF has made.   And we won't

6 burden the Court with further argument.

7     **SPECIAL MASTER:**  Pay attention.  That's

8 a good argument.   Okay.

9     **MS. GUSSACK:**  It's an extremely lucid

10 argument.

11     **SPECIAL MASTER:**  Short and sweet.

12     I'm sorry, Mr. Placitella.   Go ahead.

13     **MR. PLACITELLA:**  I'll try to be less

14 than five minutes.

15     **SPECIAL MASTER:**  You're taking more time

16 telling me how little time you're going to take.

17     **MR. PLACITELLA:**  Yes.   The issue was

18 why did we raise the issue about what the customers

19 were told.

20     The issue is because BASF points to

21 Cahill like it was all their idea.   The point here

22 was that the intent to --

23     **SPECIAL MASTER:**  I don't think that's a

24 fair appraisal of the evidence.  I don't think BASF

25 is --

Page 289

1           **MR. PLACITELLA:**  Well, let me rephrase

2    it.

3           **SPECIAL MASTER:**  -- dumping this on

4    Cahill.

5           **MR. PLACITELLA:**  Let me rephrase it.

6    They talk about intent.  It goes to intent.   What

7    they did even before litigation goes to intent.

8    They did not want the issue of asbestos in their talc

9    disclosed.   And they did that before there was even

10    litigation.   It was ongoing.

11           So the idea or the notion there was

12    no intent did not originate with Cahill.  It

13    originated with Engelhard.   And it just kept going.

14           Cahill might have been the agent that

15    carried out the strategy.  But the notion of where it

16    came from originated -- that's why we discussed that.

17           When you talk about that technical data

18    sheet, it's interesting and way too deep on the

19    science.  But they say they used the most

20    sophisticated methods possible and they cite x-ray

21    defraction.  They never say that they did tests with

22    a transmission electron microscope and found

23    asbestos.  So there's issues with this to begin with.

24           But without getting --

25           **SPECIAL MASTER:**  When you say this,

Page 290

1    you're waving a piece of paper.  I don't know what it

2    is.

3                    **MR. PLACITELLA:**  The technical data

4    sheet.

5                    But when they say between 2006 and 2009

6    nothing's happened, that BASF did not continue.

7    Well, they did continue.   They continued to file

8    summary judgment motions saying there was no asbestos

9    in the talc and no evidence of asbestos in the talc.

10   They continued to send letters.  They continued to

11   make representations to courts.   And they continued

12   to get dismissals.

13                   **SPECIAL MASTER:**  Was the cast of

14   characters who were Engelhard in 2006 part of what

15   had been going on before then?

16                   **MR. PLACITELLA:**  Some people stayed and

17   some people did not, as I understand.  For example,

18   Mr. --

19                   **SPECIAL MASTER:**  You got to listen to my

20   question.

21                   **MR. PLACITELLA:**  Yes.

22                   **SPECIAL MASTER:**  When the transfer

23   occurred, the people who were there at Engelhard,

24   were they part and parcel of what you allege happened

25   before then?

Page 291

1     **MR. PLACITELLA:** Some, yes.  Yes.

2     **SPECIAL MASTER:** Okay.  And of those

3  who were, did some of them stay on in appropriately

4  supervisory capacities past 2006?

5     **MR. PLACITELLA:** I'll answer it this

6  way, because I'm not sure of the answer.  For

7  example, Mr. Dornbusch was there before and he stayed

8  for a short time thereafter.  I think part of his

9  package was that he had to stay for a while.

10     **SPECIAL MASTER:** To provide for an

11  orderly transition.

12     **MR. PLACITELLA:** So he was there before

13  and after.  There were other people who were in the

14  legal department who were there long before and a

15  significant time after.  And so there were some --

16     **SPECIAL MASTER:** My concern is BASF

17  acquires Engelhard in 2006.  And at that point the

18  acquiring company, like every acquiring company in

19  the universe, looks at the company they have acquired

20  and the main decision that they make is if it ain't

21  broke, don't fix it.

22     So they're not going to go back and

23  search 20 years' worth of records.  They're going to

24  say:  Okay, what do we have that we need to confront?

25     And if they're told:  Well, you know,

Page 292

1  we've got these cases, but this is the way they've

2  been handled all the way through, there's no scienter

3  there.

4        And it's something that at some point or

5  another somebody needs to acknowledge.

6        And I think the same is true as to the

7  folks at Cahill Gordon.  If at a certain point the

8  people who were there when plaintiffs allege this

9  whole thing was concocted, if it becomes

10  institutionalized, at some point it's hard to say,

11  well, you know, you're doing this with scienter, when

12  in fact they're just doing it because that's the way

13  it's being done.

14      **MR. PLACITELLA:**  Well, their agent, Mr.

15  Sloane, sat in the depositions in Westfall and he was

16  still actively litigating the case well past the time

17  that Cahill Gordon -- I mean, I'm sorry, that BASF

18  took over Engelhard.

19        So there was continuity there.  And

20  there was clear institutional knowledge.  And we can

21  prove that pretty solidly, frankly.

22      **SPECIAL MASTER:**  Okay.

23      **MR. PLACITELLA:**  It is unclear, and

24  we're in the process of taking depositions, what

25  everybody's role was, even if they were there before

USDC, District of NJ       Williams, et al. v. BASF Catalysts, LLC, et al.       Friday
C.A. No. 2:11-cv-01754-JLL-JAD       Special Master Conference       February 23, 2018

Page 293

1  and after.  They were there before and after, we know

2  that.  What their exact role was is unclear until we

3  take those depositions.

4         **SPECIAL MASTER:**  If they had nothing to

5  do with this litigation --

6         **MR. PLACITELLA:**  Exactly.

7         **SPECIAL MASTER:**  -- or similar

8  litigation.

9         **MR. PLACITELLA:**  Right.  So it's unclear

10  to me at this point.  Keep in mind we filed this --

11  we were asked to file this motion without

12  depositions.  So I can't answer every question.

13         I may know information that if I didn't

14  want to trample a violate a Supreme Court order,

15  which I'm not going to do, I could answer many of

16  your questions.  But I can't do that.  And it's hard

17  to tell the left side of your brain, you know, not to

18  intrude on the right.  But a lot of the things I've

19  been asked point-blank I can't answer.  I would love

20  to answer them, but I can't answer them.

21         **SPECIAL MASTER:**  Well, this is not the

22  first time in your career you've had that problem.

23         **MR. PLACITELLA:**  That's exactly right.

24  Of Mr. Farrell threw up a couple of isolated test

25  results.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 294

1          **SPECIAL MASTER:**  Mr. Farrell does that.

2          **MR. PLACITELLA:**  Right.   They verified

3    asbestos in this talc using transmission electronic

4    microscopes, SEM, PLM, XRD.  And by the way, PLM is

5    what OSHA sanctioned.  It's not that great.  But it's

6    what OSHA sanctioned.  So by every scientific --

7          **SPECIAL MASTER:**  I have no clue what any

8    of those acronyms stand for.

9          **MR. PLACITELLA:**  But my point is by

10   every scientific analysis that was available by

11   multiple parties, that is multiple scientists, they

12   found asbestos.   They just didn't take some

13   unreliable -- and it almost begs the question.   All

14   right.

15          And here's where I end my presentation.

16   It almost begs the question, because the inquiry

17   isn't what information --  the inquiry here is you

18   said that -- and you told courts and litigants that

19   there was no evidence of asbestos, no evidence of

20   asbestos, no evidence exists.

21          Mr. Carter signed an affidavit saying

22   there was no testing data.   That was false.

23          Those people, respectfully, had a right

24   to hire their own experts to evaluate that.

25          And you say well, how much is enough?

Page 295

1   If you look at the Robertson case, okay, the

2   Robertson case is a significant case. The Robertson

3   case was a case that went to the Third Circuit Court

4   of Appeals. It was a case that was handled by Mr.

5   Rothenberg after Engelhard got out of the case. The

6   trial judge dismissed the case because he said there

7   just wasn't enough asbestos in that talc and the

8   proofs weren't that great, the product ID wasn't that

9   great.

10   And it went to the Third Circuit. And

11   the Third Circuit said: Well, even with this little

12   bit of asbestos -- and frankly, it was a lot less

13   than these tests show -- even with this little bit of

14   asbestos, these plaintiffs have the right to go

15   forward and litigate their case.

16   What happened here was these plaintiffs

17   lost that right. They lost the right to hire their

18   own experts with the right data.

19   So it does not matter. We don't need

20   science day. This is about -- they said there was

21   no evidence. They didn't say there was no reliable

22   evidence. They said there was no evidence. They

23   said there was no testing data.

24   **SPECIAL MASTER:** Well, but if you have

25   someone who performs a test and the test that he or

USDC, District of NJ        Williams, et al. v. BASF Catalysts, LLC, et al.        Friday
C.A. No. 2:11-cv-01754-JLL-JAD        Special Master Conference        February 23, 2018

Page 296

1    she performs is one that is not in accordance with

2    generally accepted professional standards, isn't it

3    the right of someone else to say that test was not

4    performed in accordance with generally accepted

5    professional standards, so I'm going to disregard it

6    because it's not evidence of anything, it wasn't

7    properly done.  And I --

8                **MR. PLACITELLA:**  But they didn't --  I'm

9    sorry.

10               **SPECIAL MASTER:**  And I think that that's

11   what lies at the root of Mr. Assaf's request for a

12   science day.  It's not to educate me about the

13   science, which I can assure everybody here would be

14   an entirely futile endeavor, but to put in the record

15   what the basis of those determinations was so that

16   people can say, hey, understand, there were these

17   reports, but if you look at it, you know, they were

18   testing for apples and they found oranges.  It's not

19   a good report, so it's not evidence of anything.

20               So therefore, when we say there is no

21   evidence, and they also add and we conducted our own

22   reports and they don't come to the same conclusion,

23   that maybe there's no scienter in what was being

24   done.

25               And in order to prove a crime or fraud,

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 297

1    you do have to prove a guilty mind.

2              **MR. PLACITELLA:**  Yes, your Honor.   But

3    there was a lot more than that, because they never

4    gave anybody the opportunity.

5              They said there was no testing data.

6    There was nothing for anybody to look at and

7    evaluate.  They had three of their own scientists

8    testify under oath that they found asbestos in the

9    talc.   Their own scientists.   Right.   That was

10   buried.   Right.   That was entirely buried.   They

11   said there was no --  and when they were asked under

12   oath:  Did anybody ever testify before on these

13   issues?  No.

14             Well, that's not true.   They gave

15   nobody the opportunity to pursue their case.

16             This is not about whether they would

17   have won their case or lost their case.   This is

18   about whether the opportunity was taken from them.

19             And by them stating that there was no

20   evidence of asbestos in the talc, withholding all the

21   test results so that the plaintiffs' own experts

22   could look at them and make their own judgment to go

23   forward, and by them actually having sworn testimony

24   from their own scientists, which they buried, and

25   they knew it, that's fraud.

Page 298

1          That's enough, I submit, that we have

2     made out our prima facie case.   We're only making a

3     prima facie case.   We're not trying our case here.

4          **SPECIAL MASTER:**  No, you're not.

5          **MR. PLACITELLA:**  We're not trying our

6     case here.   But here we have clear evidence.   They

7     can determine -- they can argue what it means.   But

8     there is clear data.   There's clear evidence.   You

9     have sworn testimony.   And they made the judgment

10    that they were going to withhold it.

11         That's not permitted under any court

12    rule in any place.   It impacts the integrity of what

13    we do as a profession, that no one would -- no one in

14    this room -- I know almost every lawyer in this room.

15    No one in this room would do that.   No one.

16         And what they did was wrong.   It was in

17    violation of their responsibilities.

18         These people were -- they lost their

19    rights to move forward.   They lost their right to

20    make their own informed decision.   They could have

21    taken all that data and given it to an expert and the

22    expert says:  You know what, on balance this is not

23    worth it.

24         They didn't give them that right because

25    they knew it was important enough and it was

Page 299

1    significant enough that they got rid of it.

2                    If it was so insignificant, then why

3    didn't they just turn it over?  If the testimony of

4    Dr. Hemstock, Mr. Gale, and Dr. Triglia was so

5    insignificant, then why didn't they just turn it

6    over?

7                    Because what happened here, when Mr.

8    Ashton signed his affidavit and said there's no

9    evidence of asbestos in that mine --

10                **MR. ASSAF:**  That's not what he said.

11                **MR. PLACITELLA:**  -- they knew that they

12   had their own scientists that came to a different

13   conclusion.

14                    So at the end of the day -- and I'm

15   going stop here -- courts and litigants were all told

16   the same thing.  People's cases were compromised.  It

17   was not just in letters.  It was in sworn statements.

18   It was in briefs that many judges probably spent

19   weekends reading.  And as a result --

20                **SPECIAL MASTER:**  I know the feeling.

21                **MR. PLACITELLA:**  Yes.  And as a result,

22   these people lost their rights.

23                    And that, your Honor, is a prima facie

24   case of fraud under the standard that we're talking

25   about today.

Page 300

1                    And all that does is say to you, okay,

2     let's go to the next step.   Let's actually see

3     what's there.   Maybe Placitella and Roth, they're

4     all wet.   Maybe we'll look at these documents and --

5              **SPECIAL MASTER:**  Well, there's no maybe

6     about that.

7              **MR. PLACITELLA:**  -- and there's -- maybe

8     we'll look at those documents and there nothing.

9                    But supposing the documents, despite

10    whatever Mr. Farrell said, the parties are discussing

11    the fact that, hey, there's asbestos in this talc,

12    what are we going to do about it, right.

13                   Suppose there are admissions in the

14    documents that say --

15             **SPECIAL MASTER:**  So one of the documents

16    is the proverbial smoking gun, right?

17             **MR. PLACITELLA:**  I don't know what's in

18    the documents.   Okay.   I'm not allowed to say what I

19    know.

20                   But all I'm saying to you is we're at a

21    point where we've made our prima facie case.   There

22    are less than 75 documents probably, even counting

23    whatever's in the compilation, for you to look at.

24    You spend more time --

25             **SPECIAL MASTER:**  And your son, Mr. Jared

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 301

1    Placitella, is going to get me a list of that by

2    Wednesday.

3                    **MR. JARED PLACITELLA:**  Thank you, your

4    Honor.

5                    **SPECIAL MASTER:**  Wednesday at five p.m.

6    Eastern time.

7                    **MR. PLACITELLA:**  You will spend more

8    time reading the 120 pages of briefs on whether

9    documents were destroyed or not, which -- and, you

10   know, I'll never get the opportunity to respond to

11   that.  And I understand why.

12                   But if their proof ultimately

13   demonstrates to you that all the documents are there,

14   that only proves our case.   It proves that they had

15   the information and they withheld it.

16                   So it's six of -- it's one way or the

17   other.   They had the information in their

18   possession, including -- we know Mr. Dornbusch had it

19   because he had the compilation.  But they told

20   everybody it didn't exist.

21                   So whatever they submit actually proves

22   our case.   If they submit evidence that doesn't show

23   that they have all the documents, that proves that

24   stuff is missing.   If they give you evidence that

25   shows you --

Page 302

1          **SPECIAL MASTER:**  Proof that stuff is

2     missing is not necessarily proof of spoliation.

3          **MR. PLACITELLA:**  Well, except for the

4     fact that Judge Linares has ruled that as of 1983

5     they had an obligation to retain the evidence.

6               If the conclusion is that the evidence

7     does no longer exist, then they have violated that

8     obligation.   That is different.

9               So when you're talking about a prima

10    facie case of crime fraud, you're really talking

11    about two different issues.  You can find crime fraud

12    under either one.  You can find crime fraud solely

13    based upon the misrepresentations that were made and

14    that the people acted.

15              You can also find crime fraud if you

16    find there was a -- as part of the intent to keep the

17    information away from people, that they actually went

18    through efforts to destroy documents.

19              And even if they didn't destroy

20    documents, it's clear that they secreted them away.

21              Either way -- either way -- well, if

22    they had --  I look at your face.  If they had the

23    purge memo and they collected it all, that meant they

24    had it.

25              So when they told people they didn't,

Page 303

1    that was not true.  That proves our prima facie case.

2                    What I'm saying to you is I could have

3    come here with two separate motions on crime fraud,

4    one on miss representation and prevailed and one on

5    spoliation.   And we think we will prevail.

6                    When I say spoliation, that's a bad term

7    because it's got a lot of technicals.   When I say

8    spoliation, I mean destruction of evidence.   Okay.

9    I could have come to you with the issue of --

10             **SPECIAL MASTER:**  More appropriately,

11   failure to preserve evidence.

12             **MR. PLACITELLA:**  Failure to preserve

13   evidence.   And if I came to you on that basis alone

14   and I was able to show that they had an intent to get

15   rid of the evidence and the evidence doesn't exist,

16   that would be enough to satisfy my prima facie case.

17                    Or I could have never came to you with

18   the spoliation -- with the destruction of evidence

19   and just come to you with the misrepresentations

20   based upon what they say they have and based upon

21   what's in that compilation.

22             **SPECIAL MASTER:**  That is why I gave you

23   the option --

24             **MR. PLACITELLA:**  Right.

25             **SPECIAL MASTER:**  -- of either

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Friday
C.A. No. 2:11-cv-01754-JLL-JAD      Special Master Conference      February 23, 2018

Page 304

1   withdrawing your spoliation claim or getting a

2   sur-reply brief.

3           **MR. PLACITELLA:**  I understand that.  But

4   I think both are --

5           **SPECIAL MASTER:**  You want them both in

6   play?

7           **MR. PLACITELLA:**  Right.

8           **SPECIAL MASTER:**  You want them both in

9   play.  And I understand that.  And because of the

10  importance of this application, I'm doing something

11  that runs against the grain for me, which is to

12  condone the filing of something that I think should

13  never have been filed, not based upon what I was told

14  was the burden of proof of the filing.

15         And that's troublesome to me.  I will

16  get past it.  But I have to tell you it is

17  troublesome to me.  And I want everybody to hear

18  that, because please don't do that.

19         You ask me:  Can I get additional pages?

20  You want 35, fine.  You want to do appendices, okay.

21         But there's a reason and a purpose for

22  appendices.  And it's not to throw a 44 page brief

23  over the transom and call it an appendix.  That's not

24  the way to do it.

25           **MR. PLACITELLA:**  I take responsibility

Page 305

1    for that.

2              **SPECIAL MASTER:**  I was blaming you

3    anyway, so it's okay.

4              **MR. PLACITELLA:**  I take responsibility

5    for that.  I understand what you're saying.  We'll

6    have a further conversation about some of these

7    issues.

8              All I'm saying is I'm not going to get

9    an opportunity.  And I understand why.  But whatever

10   they submit I believe proves our point, because if

11   they prove that they had the evidence, then it should

12   have been disclosed.

13             So I believe as we sit here today, we

14   have made out our prima facie case and that we should

15   move to the next step.  And we'll look forward to the

16   Court's ruling.

17             Thank you for your time.

18             **SPECIAL MASTER:**  Thank you.

19             **MR. ROTH:**  Your Honor, are you going

20   to --

21             **SPECIAL MASTER:**  Can you bear with me

22   for one second?  I'm trying to find something --

23             **MR. ROTH:**  Of course.

24             **SPECIAL MASTER:**  -- that I know I

25   misplaced.  There's far too much paper here.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 306

1              I'm sorry, Mr. Roth.  Thank you.

2              **MR. ROTH:**  Thank you, your Honor.   Two

3    things.  First of all, that weekend brief for you,

4    that wasn't my fault, was it?

5              **SPECIAL MASTER:**  I'm sorry?

6              **MR. ROTH:**  The weekend brief reading,

7    that wasn't my fault, was it?

8              **SPECIAL MASTER:**  Well, I'm happy to

9    blame you.

10             **MR. ROTH:**  Okay.  That's what I thought.

11             I just wanted to touch quickly on --

12   circle back to the standards.  We've had a lot of

13   discussion about in furtherance of.

14             And what I wanted to do is commend your

15   Honor to the briefing that we've done to show why the

16   standard in New Jersey is different from the federal

17   court cases that you've heard about today and have

18   read in the briefs.

19             **SPECIAL MASTER:**  I get that.

20             **MR. ROTH:**  Yes.  And a part of that

21   argument, your Honor, is we think we've established a

22   prima facie case in accordance with New Jersey law

23   from those public documents.

24             **SPECIAL MASTER:**  I get that also.

25             **MR. ROTH:**  And that the notion that we

Page 307

1   would have to be able to show you what privileged

2   documents prove that to meet our prima facie case is

3   sort of the Major-Major issue that you identified.

4           And so although there is some discussion

5   about, you know, are we agreeing it's in furtherance

6   of, well, everything's a question of how you

7   define -- I was actually looking at the dictionary to

8   see whether or not in furtherance is the same.   I

9   think it's a, you know, difference without --  we

10   don't have to spend much time on.

11       SPECIAL MASTER:  It's a distinction

12   without difference.

13       MR. ROTH:  Well, there is a little bit

14   of a difference the way that New Jersey law applies

15   it.  And that's why I was trying not to go down that

16   road.

17       SPECIAL MASTER:  As I said, it's not my

18   native language.  So I'm going to do my best to

19   figure it out.

20       MR. ROTH:  Today it feels like it's not

21   mine either, Judge.

22           I would point out that we don't need

23   those privileged documents to prove the prima facie

24   case, nor could we.  It would really be --

25       SPECIAL MASTER:  Well, that's not what

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 308

1    your partner argued.   Your partner argued that I can

2    use the privileged documents to --

3              **MR. ROTH:**  Yes -- I'm sorry.  Go ahead,

4    your Honor.

5              **SPECIAL MASTER:**  He argued that I could

6    use the privileged documents to determine whether in

7    fact a prima facie case has been met.

8              **MR. ROTH:**  True.  But it is not a

9    requirement that you use the privileged documents to

10   determine that a prima facie case has been met.

11             **SPECIAL MASTER:**  I actually think the

12   opposite, that I am not allowed to look at the

13   privileged documents in order to determine whether a

14   prima facie case exists.  That's putting the cart

15   before the horse in my view.

16             **MR. ROTH:**  I think we're in agreement on

17   that, your Honor.

18             **SPECIAL MASTER:**  That's because you're a

19   very wise man.   Okay.

20             I'm sorry, Mr. Pratter?

21             **MR. PRATTER:**  I just -- at the risk of

22   opening my mouth when I shouldn't --

23             **SPECIAL MASTER:**  That's every lawyer's

24   risk, so --

25             **MR. PRATTER:**  I'm going to risk it.

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 309

1          **SPECIAL MASTER:**  I figured there was no

2     stopping you.

3          **MR. PRATTER:**  I'm going to risk it.  I

4     think what we're trying to say is in order to get to

5     step 2, you have to have the documents in front of

6     you.  We don't have the documents to give you.

7          So when you said it's a Major-Major,

8     it's Catch-22, their argument is we have to present

9     the privileged documents and identify them with

10    precision in order for you to go on to the next step.

11          That's absolutely an impossible

12    standard.  It can't be done.  Its a circular

13    argument.

14          So I think your Honor is right that we

15    make a prima facie case based upon the applicable

16    standard with public documents in order to allow your

17    Honor -- forget about whether it's -- whether we've

18    proven crime fraud or not.  The question is to allow

19    your Honor to go to the next step of looking at the

20    documents.

21          And whether you say it's in order to

22    determine whether a prima facie case was made or

23    whether crime fraud has occurred almost doesn't

24    matter.  The question is the process.  And I

25    think -- well, I'm not citing any cases because I'm

Page 310

1 not sure what --

2     **SPECIAL MASTER:**  I get it.

3     **MR. PRATTER:**  I'm saying this is so much

4 to me a forest and the trees argument and --

5     **SPECIAL MASTER:**  It's not easy.

6     **MR. PRATTER:**  And you can't say I've got

7 to have all the trees in front of me in order to

8 determine there's a forest out there and what kind of

9 trees they are.  Is it a beech tree, an elm tree, an

10 oak tree, a maple tree?

11     **SPECIAL MASTER:**  As I tell my

12 children --

13     **MR. PRATTER:**  We're saying there's a

14 forest.

15     **SPECIAL MASTER:**  As I tell my children,

16 if it were easy, any idiot could do it.  Because it's

17 hard, it requires a special kind of idiot.

18     **MR. PRATTER:**  Well, I'm a special kind

19 of idiot.

20     **SPECIAL MASTER:**  Well, welcome to my

21 club.

22     **MR. PRATTER:**  But my point is, you know,

23 I just sit here and almost marvel at some of these

24 arguments, which just seem to me angels dancing on

25 the head of a pin.

USDC, District of NJ      Williams, et al. v. BASF Catalysts, LLC, et al.      Friday
C.A. No. 2:11-cv-01754-JLL-JAD      Special Master Conference      February 23, 2018

Page 311

1          **SPECIAL MASTER:**  Well, there's a little

2   bit of that.

3          Now, if I don't let Mr. Assaf talk

4   again, he's going to go home and kick his dog, so --

5          **MR. ASSAF:**  Two dogs.

6          **SPECIAL MASTER:**  Two dogs.

7          **MR. ASSAF:**  I wasn't going to, but the

8   10 minutes turned into 35, so I would like to make

9   three points, your Honor.

10         First to Mr. Pratter's point, I

11   fundamentally disagree and --

12         **SPECIAL MASTER:**  I'm shocked that you

13   would disagree.

14         **MR. ASSAF:**  I'll tell you why, your

15   Honor, because of case law.  Case after case, when

16   you review what courts have done on crime fraud

17   rulings, especially within the Third Circuit, is that

18   they've actually had evidentiary support.

19         And your colloquy with Mr. Placitella

20   regarding, well, is there a cross-over, who was there

21   when, and then he talked about Mr. Carter.

22         What normal litigants do in these cases,

23   and I've handled them before, is that they come to

24   court having taken Mr. Carter's deposition, having

25   taken depositions saying:  Your Honor, let me now

USDC, District of NJ            Williams, et al. v. BASF Catalysts, LLC, et al.            Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference            February 23, 2018

Page 312

1    show you who is where, what they're doing, without

2    even knowing the privileged information.   That's

3    what litigants do.

4              And if you review those cases within the

5    Third Circuit, that's why we've having so much

6    trouble here, because they're not offering you

7    evidentiary support such as who was there and what

8    does Mr. Carter say.

9              Mr. Carter's being deposed in two weeks.

10   And we're talking about Mr. Carter.   And Mr.

11   Placitella hasn't even deposed him.

12             Point number 2, Ashton.   I have to

13   correct this.   I know it's in the briefs, your Honor,

14   but he continues to say Ashton said there's no

15   evidence of asbestos.

16             **SPECIAL MASTER:**  I read Mr. Ashton's

17   affidavit.

18             **MR. ASSAF:**  He said based on the studies

19   above --

20             **SPECIAL MASTER:**  I read Mr. Ashton's

21   affidavit.

22             **MR. ASSAF:**  But as lawyers we just -- we

23   have to have some ground rules that if you're going

24   to quote an affidavit, it has to be -- for the

25   declarant's purposes it has to be correct.

Page 313

1          **SPECIAL MASTER:**  But as advocates we got

2    to give a little bit of rhetorical leeway to the

3    lawyer who is arguing.

4               I don't think that anybody in this room

5    is intentionally misstating something.  Just we all

6    have different perspectives.

7               And it's my job to sort of blow away the

8    smoke and try to get to the core question.  And I

9    think I've -- I hope that I've demonstrated to

10   everyone in this room that I do have the ability to

11   do that and I do, do that.

12              So I don't know why you're so terribly

13   exercised about point number 2.  But that's all

14   right.  You have one more.

15           **MR. ASSAF:**  My final point is there

16   is -- as seen here in this last 15 minutes, there is

17   an analytical divide between how we say crime fraud

18   should be approached versus Mr. Placitella's what I

19   think was a jury argument on fraud that could be

20   given virtually in any case that would then open up

21   any litigant to a crime fraud proceeding.  And I

22   think that's a huge difference.

23              And again, when we now get --

24           **SPECIAL MASTER:**  Have I given you any

25   reason to believe that I'm going to be persuaded by

Page 314

1    the functional equivalent of a jury argument?

2              **MR. ASSAF:**  I'm going to go home and hug

3    my dogs on that note.

4              **SPECIAL MASTER:**  I think you should do

5    better and hug them.

6              Okay.   Anything else on the crime fraud

7    motion?

8              **MR. ASSAF:**  That's it.

9              **SPECIAL MASTER:**  Okay.  Well, as we

10   stand now, there will be a sur-reply -- I'm sorry,

11   there will be a new list -- don't go crazy on me -- a

12   new list of Appendix C to be submitted to me by five

13   p.m. on Wednesday, what is that, the 28th of

14   February.

15             Consistent with how you did it before,

16   please send it to me.  Do not file it with a copy to

17   Mr. Assaf and a copy to Miss Gussack?

18             Did I pronounce that correctly?

19             **MR. GUSSACK:**  Yes, sir.  Thank you.

20             **SPECIAL MASTER:**  Thank you.   Okay.

21   And then a sur-reply on the issue of spoliation not

22   to exceed 60 pages each from BASF and Cahill due by

23   five p.m. on March 21st.

24             Okay.   At that time I want you to tell

25   me whether you want additional argument in respect of

Page 315

1    that.

2            If you do, I'm just telling you it is

3    going to be scheduled on fairly short notice, because

4    I do want to get this decided as promptly as

5    possible, largely because I've been told that it

6    might be an impediment to discovery that is ongoing.

7    And that needs to get done.   That has a May deadline

8    on it.

9            So I know with all the lawyers who are

10   here, you're all going to be able to get all the

11   discovery that you need done by the discovery

12   deadline.   So I'm quite confident in that.

13           But other than that, there's not much

14   more I can tell you about the crime fraud motion at

15   this stage.

16           Which then takes me to --

17           MR. ASSAF:  On crime fraud, your Honor,

18   I also think we're going to get the slides on Monday.

19           SPECIAL MASTER:  Oh, yes.

20           MR. PLACITELLA:  Is Tuesday all right?

21           SPECIAL MASTER:  Tuesday is fine.

22           MR. PLACITELLA:  Okay.  Thank you.

23           MR. ASSAF:  And then we'll also let the

24   Court know whether we want to either respond to the

25   slides in writing or whether it's going to be

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 316

1    encompassed in a request for oral argument.

2              **SPECIAL MASTER:**  You're not going to

3    respond to them in writing.

4              **MR. ASSAF:**  It will be argument.  Okay.

5    Fair enough.

6              **SPECIAL MASTER:**  If you think it is

7    really necessary, then we can talk about argument.

8              **MR. ASSAF:**  Okay.  I'll defer to Miss

9    Gussack on that.

10             **SPECIAL MASTER:**  That's wise.

11             Okay.  And now to Mr. Assaf's

12   housekeeping letter of February 22nd.

13             Does everyone know what I'm talking

14   about?

15             **MR. ROTH:**  Mr. Assaf and Mr. Pratter and

16   I had a conversation about checklist items.  We've

17   discussed this list before the letter was sent to

18   your Honor.

19             We're not here with a substantive

20   argument, but putting the cat on the roof, so to

21   speak, about issues that we're going to anticipate

22   down the road.

23             **SPECIAL MASTER:**  Well, what do you need

24   me to today?

25             **MR. ASSAF:**  I think the only thing, your

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.          Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 317

1    Honor, we'll need you to do is we will be -- not an

2    order.  I know Mr. Roth is working.  We really need

3    dates and just some judicial encouragement on dates

4    for depositions I think.

5          **SPECIAL MASTER:**  You are hereby

6    judicially encouraged.

7          **MR. ROTH:**  Got it, Judge.  I was

8    encouraged by Mr. Assaf before that.  But I

9    appreciate all the encouragement I can get.

10          **SPECIAL MASTER:**  But it's so much better

11   when it comes from me, right?  There you go.

12          **MR. ASSAF:**  And so yeah, I think you

13   have some Bevan -- I hate to put more work on you.  I

14   think you have some Bevan e-mails and documents that

15   we're --

16          **SPECIAL MASTER:**  I haven't received them

17   yet.

18          **MR. ROTH:**  You have not, your Honor.

19   You're going to have them -- on Monday I'm told -- on

20   Monday you're going to have them, your Honor.

21          **SPECIAL MASTER:**  How much is that?

22          **MR. JARED PLACITELLA:**  I'd have to

23   check, your Honor.  I'm not sure offhand.

24          **SPECIAL MASTER:**  A guess?  Is it as much

25   as the last batch you sent to me?

Page 318

1          **MR. JARED PLACITELLA:**  No, there's not

2     nearly as much.

3          **SPECIAL MASTER:**  Because I asked Mr. --

4     you sent it and I asked Mr. Reiley:  Well, can you

5     please print that out?

6          And I don't know if you're aware, but it

7     was a stack that was the size of what's in this

8     binder.  And as you've seen since then, I went

9     through each and every page.

10          **MR. JARED PLACITELLA:**  Yes, your Honor.

11     Definitely not that much.

12          **SPECIAL MASTER:**  I'll hold you to that.

13          **MR. JARED PLACITELLA:**  Yes, your Honor.

14          **SPECIAL MASTER:**  Okay.  Anything else we

15     need to discuss today?

16          **MR. ASSAF:**  I think that's it, your

17     Honor.

18          **SPECIAL MASTER:**  Okay.  Miss Gussack?

19          **MS. GUSSACK:**  Nothing, your Honor.

20          **SPECIAL MASTER:**  Well, thank you all

21     very much.  I appreciate all of the arguments.

22     Always lively.

23          (The conference adjourned at 5:45 p.m.)

24

25

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                 Friday
C.A. No. 2:11-cv-01754-JLL-JAD                 Special Master Conference                 February 23, 2018

Page 319

1                    CERTIFICATE OF OFFICER

2

3

4          I, ROBERT J. BOCCOLINI, a Certified Court

5   Reporter, do hereby certify that the foregoing is a

6   true and accurate transcript of the stenographic

7   notes taken by me at the time, place and on the date

8   hereinbefore set forth.

9          I do further certify that I am neither a

10  relative nor employee nor attorney nor counsel of any

11  of the parties to this action, and that I am neither

12  a relative nor employee of such attorney or counsel

13  and that I am not financially interested in this

14  action.

15

16

17

18  _____
    ROBERT J. BOCCOLINI, C.C.R.

19  Certificate No. XI01040
    Date:  February 26, 2018

20

21

22

23

24

25

Case 2:11-cv-01754-BRM-AME    Document 621-30    Filed 07/23/20    Page 321 of 358 PageID: 49098

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                  Special Master Conference                    February 23, 2018

Page 320

**A**

**a.m** 1:13
**abide** 20:7 74:11
**ability** 313:10
**able** 25:12 29:25
    38:10 61:10 69:10
    70:17 112:8
    168:18 172:16
    175:21,21 195:12
    203:25 222:18
    225:25 230:17
    249:18 285:5
    303:14 307:1
    315:10
**abolishing** 44:14
**absence** 42:9 43:1
    244:17 262:18
**absent** 67:10 68:13
**absolute** 58:20
**absolutely** 12:14
    93:16 96:13
    107:11 141:14
    194:7 235:12
    254:21 309:11
**absurd** 279:16,22
**abundant** 122:19,22
    122:24 126:2
    133:3 135:23
    136:24 273:6,8,9
    273:25 274:21
**accept** 66:5 183:3
    225:8 234:6
**acceptance** 18:4
**accepted** 214:8
    296:2,4
**access** 240:16
    242:11 252:5
**accessed** 141:11
**account** 8:14 55:4
**accounting** 154:25
    155:8
**accumulated** 137:14
**accurate** 124:13,17
    124:18,20 130:8
    130:18 135:4
    151:18 248:1,2
    319:6
**accurately** 160:11
**acknowledge** 252:25
    292:5
**acknowledged**
    280:22
**acknowledging**
    76:21 219:22
**acquire** 114:16

**acquired** 114:10,12
    114:13 158:6
    207:20 251:14
    252:25 253:21
    254:6,10,10 255:7
    291:19
**acquires** 291:17
**acquiring** 291:18,18
**acquisition** 206:16
    255:2
**acrimonious** 39:19
**acrimony** 39:20
    164:25
**acronyms** 294:8
**act** 43:23 47:7,8
    51:2 67:15 68:5
    70:1,2 208:5,6
**acted** 302:14
**acting** 25:21 102:25
    193:4
**action** 1:2 27:18
    54:14 67:16
    112:23 113:2,3,24
    319:11,14
**actions** 237:8 250:5
    250:11
**active** 214:18
    215:12
**actively** 292:16
**activities** 158:22
    161:17 162:7,16
**acts** 52:3 94:14
**actual** 118:11
    186:12 222:19
    223:3 224:8
    225:22 264:18,23
    276:19
**adapter** 205:2 206:2
**add** 6:23 18:12 23:7
    288:3 296:21
**added** 91:7
**adding** 14:13,16
    88:14
**addition** 166:22
**additional** 239:6
    304:19 314:25
**additions** 14:6
**address** 6:11 12:19
    15:20 72:12 74:12
    81:19 102:1
    106:22,23 161:4
    174:11 211:11
    223:24 232:6
    281:1,10 287:12
    287:16

**addressed** 79:7
    147:15,17 225:22
**addresses** 13:12
    75:7
**addressing** 282:8
**adds** 7:16
**adduce** 59:18
**adequate** 110:10
**adjourn** 23:18
**adjourned** 25:3
    318:23
**administering** 111:6
**admissibility** 113:4
    168:11
**admission** 89:9
    176:14
**admissions** 62:19
    139:13 152:12
    300:13
**admit** 89:7 152:25
**admitted** 139:12
    155:13 178:24
    179:1 181:8
**admittedly** 283:3
**adopt** 90:8 102:5
**adopted** 220:1
**adopting** 141:22
**advance** 98:2
    153:16 192:10
    214:18
**advanced** 100:12
    223:22
**advantage** 258:24
**advice** 27:11,15
    28:15 35:24
    215:19,20,23
    262:20,20
**advise** 43:4
**advised** 21:15 32:19
    87:6
**advising** 20:6 23:17
    24:1 87:12
**advocacy** 204:1
**advocates** 208:17
    313:1
**affect** 42:17 63:20
    63:24 237:3
**affidavit** 7:5 11:16
    96:2 142:22,23
    143:3,9,11,13,22
    144:20,21 145:13
    145:18,25 146:6
    146:13,15,16,17
    150:20 151:5,17
    151:21 152:7

    166:22 184:14,16
    184:19,22 185:8
    186:3 191:18
    294:21 299:8
    312:17,21,24
**affidavits** 126:25
**affirmative** 51:24
    51:25 52:1,14
    217:10
**affirmatively** 59:24
**agency** 67:14
**agenda** 263:8
**agent** 54:12,13,15
    241:23 289:14
    292:14
**agents** 54:10 241:24
**ago** 64:7 101:7,11
    169:6 210:5
**agree** 26:8 27:25
    31:7,8 32:6 34:13
    52:16 55:5 56:13
    56:16,17 62:9
    69:7 70:16 100:8
    100:8 101:22
    141:14 231:22,24
    233:2 249:8
    259:13 282:18
**agreeable** 6:15
**agreed** 23:17 24:2
    32:21 33:1,3 43:9
    43:24 75:22
    138:22 218:4
**agreeing** 32:3 279:1
    307:5
**agreement** 29:8
    35:8 42:16 49:17
    58:24 61:19 62:13
    63:1,22 64:3,15
    64:19 65:7 139:24
    257:17 258:6
    308:16
**agreements** 42:5,23
    43:4,6 44:11,20
    44:25 46:10 47:9
    54:25 57:6 58:21
    63:4,6,20 65:15
    78:18,18
**agrees** 250:21
**Aha** 217:2
**ahead** 15:24 56:22
    288:12 308:3
**aid** 82:23 93:11,14
    93:24,25 94:10,16
    95:10,14 213:18
    213:21 214:17,17

    215:6,8 216:11
    217:20 218:7,9,11
    218:14,16 223:6
**ain't** 64:17 291:20
**air** 120:17 259:11
**al** 1:3,6
**aligned** 41:8,14
**allegation** 10:8
    217:15 226:21
    245:9,20 247:5
    248:24 249:21
    253:7,11,20 256:1
    256:8
**allegations** 103:6
    226:17 245:14,15
    249:25 250:17
    251:8 254:4
    264:19
**allege** 226:22
    290:24 292:8
**alleged** 43:25 84:19
    92:21 122:2
    215:21 220:13
    248:4 250:4,6
    262:19
**alleges** 101:16
**alleging** 53:21 251:9
**allied** 213:10
**allocation** 42:14
    46:1,10,12 50:7
    50:14 51:13,14
    52:11,18 59:16,17
    60:9,11,13,21,24
    63:20,21,22 66:6
    66:18 67:1,3 69:8
    69:10 70:6,18
    74:2 76:24
**allocations** 53:3,4
    59:18 60:1 70:9
**allotted** 9:23
**allow** 32:20 60:13
    60:22 97:12
    110:15 207:1
    229:3 259:19
    309:16,18
**allowed** 30:9 32:2
    36:3 60:24 66:18
    69:18 83:17 85:16
    96:24 97:2 161:3
    185:14 188:17
    227:9 228:19
    300:18 308:12
**allowing** 62:25
**allows** 5:15 47:8
    68:11

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 322 of 358 PageID: 49099

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 321

**alluding** 268:2
**allying** 213:3
**Alpo** 106:2
**altogether** 42:24
  259:15
**amassed** 138:5
**ambiguity** 29:7
**amount** 14:12 17:6
  30:13 53:3 133:5
  273:9 274:1,25
**amounts** 121:4,22
  121:23 122:18
  123:6 273:11
  276:15 277:6
**analysis** 196:1
  218:22 294:10
**analytical** 313:17
**anathema** 85:5
**anew** 142:16
**angels** 74:6 310:24
**Anguas** 2:12 5:1,1
  205:14,15,20
**Annotated** 82:17
**annoyed** 229:11
**answer** 8:10 20:6
  28:22,24,25 29:13
  30:9 31:22 32:2
  32:21 34:1 35:2
  51:19 65:6 70:24
  71:7,18 108:22
  109:12 161:7
  172:2 185:3 186:6
  187:6 212:3 228:4
  234:6 291:5,6
  293:12,15,19,20
  293:20
**answered** 20:20
  166:21,24
**answering** 192:2
**answers** 48:23,24
  94:24 96:16,17,20
  147:25 150:20
  156:17 195:7
**anti-sandbagging**
  280:25
**anticipate** 316:21
**anybody** 4:3 36:19
  38:12 55:1 78:24
  91:24 102:11
  104:22 117:2
  158:25 162:20
  208:24 229:16
  267:3,24 285:6
  297:4,6,12 313:4
**anybody's** 187:9

**anymore** 39:7
  154:21 173:6
  184:1 192:8
**anyway** 305:3
**apart** 204:15 243:17
**apologies** 6:1 72:9
  288:2
**apologize** 22:2 23:5
  39:13 140:11
  185:20 190:16
  228:1
**apologized** 25:11
**apologizing** 22:25
  25:10
**apology** 22:1 75:17
**apparently** 91:18
  158:12 196:23
  205:1
**appeal** 62:8 91:12
  91:15 222:4
**Appeals** 93:4 295:4
**appear** 8:15 186:9
  202:4
**appearances** 2:1 4:5
**appeared** 154:13
  160:8 163:18
  179:23
**appearing** 269:20
**appears** 28:5 82:18
  83:21 118:5
  152:10 161:25
  214:7 269:4
**Appellate** 91:12,16
  91:21 104:1,9
  105:1,15 216:14
  217:5 220:3
**appendices** 88:13
  88:14,19 237:22
  237:23,25 304:20
  304:22
**appendix** 16:13,14
  29:7 86:24 88:1,2
  88:5,6 90:25
  157:12,14 167:8,9
  200:13,18 201:10
  202:12 227:1
  229:10 233:4,23
  233:24 239:19
  240:9,24 304:23
  314:12
**apples** 296:18
**applicability** 82:11
  87:20
**applicable** 92:24
  210:9,10 309:15

**application** 12:9
  17:1 21:5 40:13
  42:2,9 46:11 51:7
  69:6 71:15 73:15
  73:21 74:8,10
  75:25 80:8 85:10
  112:19 153:25
  197:11 252:22
  304:10
**applied** 51:6 75:23
  92:21 105:24
  150:17 212:20
  220:4 223:13
  242:19
**applies** 36:15 45:16
  46:6 55:9 73:9
  74:20,22 76:23
  83:16 85:6 89:14
  89:19 93:6 100:9
  108:7 307:14
**apply** 46:3 52:15
  65:24 72:16 73:7
  84:7,8,13 107:25
  108:17 113:5
  175:1 220:20
  223:2 224:6 251:3
**applying** 73:11
**apportionment**
  43:10 44:8 47:6
**appraisal** 288:24
**appreciate** 13:20
  18:8 39:23 40:10
  41:8 71:9 211:18
  211:19,20,23
  212:17 230:15
  235:8 236:23
  280:24 282:6
  317:9 318:21
**approach** 92:16
  230:12
**approached** 313:18
**approaching** 58:9
**appropriate** 12:12
  77:12 196:1
  262:10
**appropriately** 256:4
  291:3 303:10
**approximately** 88:1
**approximation**
  204:1
**April** 6:23 135:25
  235:16,19
**arbitrary** 274:23
**arbitration** 42:4
**arc** 246:24

**Arch** 2:15
**archive** 170:24
**area** 121:20
**arena** 232:17
**arguably** 217:10
**argue** 43:20 44:10
  45:24 46:1 84:22
  88:23 89:21
  206:22 219:9,24
  220:6 230:14
  283:4 298:7
**argued** 21:6 58:22
  75:5,6 84:2
  197:15 214:3
  217:17,17,20,23
  217:25 282:16
  308:1,1,5
**arguing** 17:13 52:12
  61:15 83:15 86:15
  95:13 98:17 99:3
  99:18,19 124:10
  196:9 214:7 221:7
  221:7 227:19
  313:3
**argument** 12:3
  16:11 55:9 56:12
  74:3,10 91:3
  97:25 98:1,5,18
  103:11,17 106:23
  119:24 122:20
  163:15 187:15
  192:7 206:14
  211:12 213:17
  221:9,10,12,22,23
  221:25 225:5,11
  227:21 232:3
  233:14,21 242:6
  247:14 249:8,15
  251:18 252:6,10
  252:13 254:22,23
  273:10 281:2,4
  288:5,6,8,10
  306:21 309:8,13
  310:4 313:19
  314:1,25 316:1,4
  316:7,20
**arguments** 52:11,18
  87:9,15 107:7
  227:11 229:3,4
  260:17 310:24
  318:21
**arising** 27:18 42:18
**arithmetic** 134:5
  279:19,20
**Arkansas** 147:4

**art** 270:2
**artful** 30:8
**Arthur** 3:11 5:21
  68:16 196:19,21
  196:23
**articles** 143:9,14,18
**articulate** 109:17
  192:21 193:9
**articulated** 108:25
  110:21 212:23
  219:14 220:3
  248:23
**artifice** 258:20
  260:18
**asbestiform** 134:19
  135:2 269:20,24
  270:12,22 278:4,8
  278:10,16 279:17
  284:24
**asbestos** 7:3,6 11:5
  11:11,13 53:22
  89:9 90:18 110:23
  115:12 116:11,16
  116:17,19 117:3
  120:11,15,18,19
  120:22 121:23
  123:19,23 124:5,7
  126:1,7,13,14,19
  127:1,11 128:11
  128:21 129:4,4,14
  130:13 133:10,11
  134:18 135:1,24
  136:25 138:16
  140:20 142:23
  143:1,15,23
  145:14 148:4,17
  151:4,25 152:4
  156:21 158:18
  160:5,7 178:1
  186:7,7 198:20
  199:4,11,11,12,14
  243:8,10 244:9,12
  256:19 257:11
  258:4,13 268:14
  268:17,23,25
  269:25 270:6
  272:5,13,17,19
  273:9,11 274:1,25
  275:12,24 276:5,8
  276:11,15,17,19
  276:25 277:4,7,15
  278:4,8,11,17,20
  278:23 279:1,7,10
  279:12,14,17
  289:8,23 290:8,9

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 322

294:3,12,19,20
295:7,12,14 297:8
297:20 299:9
300:11 312:15
**asbestos-free** 199:1
**asbestosis** 276:7
**ascertain** 19:9
**ascertained** 273:17
**Ashton** 7:5 11:10,19
143:11,12 146:2
146:16 150:20
151:5,17,21
184:14,16,19,21
185:8 191:18
299:8 312:12,14
**Ashton's** 11:15
145:13 312:16,20
**aside** 60:1 224:18
**asked** 29:8,10 78:14
98:9 123:18 129:1
129:12 130:10
132:6,10,14,22
133:1 145:16,17
151:15,17,20
152:6,7 154:7
156:20 171:19
172:10 173:13,21
181:23 182:21
183:10,16 187:11
201:20 207:14
209:15 234:5,22
234:22 239:21
269:22 293:11,19
297:11 318:3,4
**asking** 21:4 28:15
31:10 34:22 47:21
63:25 78:13
128:16 129:1
155:17 178:7,14
178:22 182:1
183:2 185:14
201:1 242:15
245:5,11 263:9
**asks** 17:16 65:19
71:15
**aspect** 70:1
**Assaf** 2:11 4:21,21
5:15 13:12 19:20
25:1,8 30:14 32:6
32:18 36:23 37:1
37:2 38:17 39:23
40:11,20,23 41:7
41:19 64:25 81:8
99:20,23,24
125:19 127:24

131:18 149:12,15
149:20,24 150:2,5
169:20,23 170:2,4
181:18 186:18
187:5 204:9,11,24
205:5,21 206:1,9
206:21 207:4,7,11
209:9 210:12
211:8 212:23
263:12 280:16,17
281:5 282:6,12,20
283:2,7,17,22
284:10,16,19
285:4 286:11,15
287:14 299:10
311:3,5,7,14
312:18,22 313:15
314:2,8,17 315:17
315:23 316:4,8,15
316:25 317:8,12
318:16
**Assaf's** 5:16 6:3,12
36:21 65:9 277:23
287:17 296:11
316:11
**assert** 43:17 44:5
52:21 83:13 85:4
85:9 90:14 181:2
239:22
**asserted** 42:20
179:12,20
**asserting** 31:1 33:14
45:8 180:16
**assertion** 29:18 49:5
79:15,21 179:13
180:18 181:4
233:10 258:24
**assertions** 20:2
40:13 88:4 258:23
**assess** 58:2
**assessment** 10:16
**assist** 210:23 239:22
**assisted** 131:3,6,14
**associate** 96:16
166:23
**assume** 6:2 23:6
54:9 60:7 180:15
187:12 194:15
197:7,7 200:22
206:19 225:11
235:2 248:2
255:13
**assumed** 76:15
**assuming** 100:12
106:5 172:2,6

281:3
**assumption** 200:24
**assure** 77:17 296:13
**assured** 33:6
**attach** 143:22
**attached** 19:23
92:19 117:1,9,12
119:10,16 144:10
**attaching** 29:6
144:2
**attachment** 119:8
**attachments** 167:14
167:14
**attempt** 240:23
241:2
**attempted** 7:8
**attempting** 276:24
**attention** 13:21 17:6
19:2 76:8 211:23
236:9 238:22
275:9 288:7
**attested** 7:5
**attorney** 55:10
84:18 96:6 179:12
319:10,12
**attorney/client**
28:10,17,22 29:14
29:17 30:22 31:5
32:10 33:14 35:16
44:12,17 45:15,20
46:13 47:11 79:22
82:16,20 84:2,17
89:4 112:19
174:25 179:12
197:12,24 201:3
202:16 208:13
220:12 250:8
259:1
**Attorneys** 2:7,13,18
3:4,8,11
**August** 9:14 172:10
**authored** 130:15,19
142:12 157:20
**authority** 57:17
123:16
**available** 110:2,18
113:14 114:3
116:20 233:1,17
294:10
**avoid** 33:21 222:22
**aware** 69:15 151:23
218:9,15 245:17
286:9 318:6
**awful** 78:14

|   | **B** |
| :--: | :--: |

**B** 116:8 118:3 279:3
**back** 11:1 21:24
33:15 40:7 41:25
48:14 51:11 53:13
55:22 69:5 80:8
80:11,13 94:16
103:20 115:14
118:25 127:4
128:9 130:22
132:14 134:9
137:14,20 138:1,2
151:6 157:22
162:1 164:13
168:20,21 169:22
171:21,23,24
172:5,15 184:10
190:1 193:23
196:22 198:8
206:2,2 210:3
213:12 219:2
220:18 227:7
237:1 239:5 258:3
262:21 265:21
269:15 275:19,22
278:14 280:15,17
281:9 282:21
285:16 291:22
306:12
**backdrop** 42:11
**background** 82:14
**backup** 168:25
**bad** 4:4 39:6 121:15
242:2 274:9
284:21 303:6
**bag** 66:16
**Baim** 190:14
**balance** 201:22
298:22
**ball** 241:25
**Ballard** 1:11,14
**banking** 245:25
**bankruptcy** 37:20
**barrier** 122:7
**Barry** 2:16 5:8
**base** 249:23
**based** 9:8,19 29:2
38:22 42:22 50:13
58:23 68:2 86:13
107:14 110:17
117:23 121:20
151:21 152:22
153:1 154:3
155:14 187:13
189:19 215:11

218:12 224:1
225:19 226:9,23
230:18 232:3
244:9 260:12,13
269:2 277:12
278:14,16 302:13
303:20,20 304:13
309:15 312:18
**bases** 82:15 83:13
**BASF** 1:6 2:13,24
3:4 4:22,23,24,25
5:1,2,3,4,23 7:6,8
7:10,13 9:14
10:10 12:20 13:14
14:19 15:9,10
16:3,25 19:17
23:25 26:15 38:1
38:7 42:3,7 44:5
44:12 45:2,7 46:9
47:11 51:19 52:4
52:5,8,9,13,25
54:12 55:19 57:8
59:21 64:6,12
65:2,20 75:22
79:16,17,17,19
83:14 85:21 87:15
90:15,19,20,24,25
91:2,4 96:15
97:19 98:2 102:7
103:6 106:11,20
111:15 112:2
114:8,9,11,24
121:3 128:22
129:1 147:23
148:11,12 149:3
149:18,23 152:13
153:21,24 154:7
154:10,18 155:5
157:25 158:1,2,6
158:15 159:22
165:4 176:14
188:3,16 198:18
200:19 203:18
206:15,23 207:5
207:15,22 208:4
210:16 211:15
229:20 238:3
242:21 244:10
245:10 248:8
251:14 252:25
253:7,11,20 254:5
254:9,23 255:6,7
260:19 265:4
269:3,12 273:10
280:9 288:5,20,24

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 323

290:6 291:16
292:17 314:22
**BASF's** 19:25 24:5
42:7 53:17 64:23
87:9 88:4 89:3,22
89:23 90:23 91:9
**basically** 12:3 24:4
124:13 247:12
258:4 286:24
**basis** 10:1 48:10,12
49:4 53:24 59:25
82:24 84:6,13,15
84:21 89:19 92:9
104:11,17 108:4
108:12,18 109:2,9
110:10 113:3
145:9 174:16,20
174:23,24 175:17
179:19 180:17,20
181:1 198:13
199:22 208:13
220:6 222:2 224:5
224:5 235:3
246:25 249:6,19
250:10 255:5
259:4 263:19
265:12 271:2,20
274:14,16 276:12
276:13 277:1,5,9
296:15 303:13
**Basketball** 203:12
**batch** 317:25
**Bates** 118:6 184:7
201:19,21 239:20
240:10 267:11
269:11,12
**battle** 159:14
**bear** 51:22 62:20
75:12 76:10 88:16
103:1 153:23
235:21 305:21
**bears** 63:19
**beating** 24:13,16,18
**beech** 310:9
**began** 238:24
**begets** 77:24 78:20
**beginning** 23:7
120:13 195:12
200:23 271:3
**begins** 270:19
**begs** 294:13,16
**begun** 66:1
**behalf** 5:18,21 37:12
103:17 203:18,24
211:16,17 249:1

**behavior** 100:24
**belabor** 261:15
**belief** 84:6 107:24
108:6 110:10
174:24 195:19
224:6
**believe** 8:16 15:10
60:14 63:15 76:9
78:19 102:2 103:2
107:14 108:11,12
108:24 109:9,16
109:22 110:17,21
112:2 119:23
130:14 142:5
154:2 156:13
162:9 163:16
172:13 175:2,3
179:11 180:23
181:7 184:18
188:21 189:5,8,19
194:4,11 198:16
208:3 210:18
222:2 237:15
239:7 250:10
259:4 263:11
266:2 267:7
274:19 280:1
305:10,13 313:25
**believed** 9:7,11
272:1,12
**believer** 56:19
**believes** 224:20
250:23
**believing** 161:21
**belong** 180:4
**bench** 281:22
**benchmark** 99:4
**benefit** 253:25
**best** 80:24 205:4
218:22 236:25
259:18 307:18
**better** 79:12 94:20
105:20 164:12
213:24 215:10
270:23 271:18
272:2,4 287:22
314:5 317:10
**Bevan** 25:20 26:5
27:8,19,20 28:12
29:15 31:6,13
35:10,13,15,22
36:18,24 37:3
40:2,6,8 152:24
152:25 317:13,14
**beyond** 76:18 109:5

**bias** 43:7 44:13,21
44:22 47:10 62:23
**bidding** 56:2
**big** 120:7 173:21
**binder** 118:20
173:21 174:1,3
269:8 318:8
**birthday** 58:10
**Biscuit** 222:12
**Biscuits** 216:14
219:2
**bit** 41:23 44:18 80:6
80:14 94:20 96:1
117:24 136:2
140:1 185:20
235:9 280:17
295:12,13 307:13
311:2 313:2
**black** 58:15,19
**blackmail** 147:20
**blame** 43:25 51:17
54:6 57:8 65:20
68:21 136:21
185:24 306:9
**blamed** 68:10
185:25
**blaming** 182:25
305:2
**blank** 65:12 267:6
**blind** 60:2
**block** 215:7
**blood** 22:9 122:7
**blow** 313:7
**board** 283:25
**boasting** 175:18
**Boccolini** 1:12 319:4
319:18
**Boise** 2:16 5:8,8
72:12,14 74:15
76:11,12 77:5,17
**book** 36:2 100:21,23
101:21 230:5
**bootstrap** 249:18
**borne** 222:6
**boss** 130:15,18,18
**bottom** 118:7 128:4
163:20 190:7
266:23
**Boulevard** 3:6,10
**bound** 76:8
**box** 134:10 176:1
200:22
**boxes** 241:1
**Boyle** 3:9,11 5:20,20
5:21

**bracketed** 239:3
**bragged** 199:13
**brain** 122:7 293:17
**brand** 47:4
**breach** 43:18 45:22
54:22
**break** 82:4,5 186:25
203:19,21 204:7,8
207:12 231:8
247:7
**Bress** 2:11 4:23,23
64:25 65:1,1,6,11
66:9,13 67:6 68:6
69:12,15 70:20,25
71:4,13,21,24,25
74:5 81:24 204:13
205:6 206:10
210:13 211:11,13
211:14,15,22
212:2,16,24
213:14,20 215:2,4
216:5,8 217:18,24
218:5 220:19,22
220:25 221:2,23
224:10 225:8
226:3,6,13 227:12
227:17 228:1,3,7
228:18,23 229:23
230:3,9 234:9,10
234:14,17,24
235:1 236:2
237:13,15,19,24
238:16,17,23
239:15,18 240:8
240:17 241:16,21
242:13 243:14
244:24 245:2
246:10,14,23
247:15 248:19
251:1 252:7,16,19
253:3,6,9,10
254:2,12,21
256:22,25 259:17
261:11,15 262:17
268:2 282:25
286:9
**Bress's** 286:4
**brethren** 230:25
**brief** 7:17,23,25 8:2
8:5,7,9,13,15,17
8:25 12:17 13:20
14:17,20 15:1,13
15:19,21 16:15
17:13,17 36:17
83:22 87:25 88:12

88:21 90:20,21
91:10,18 106:21
106:25 107:2
108:9 110:22
136:4,11 146:20
167:6 173:20
182:21,24 197:17
198:4 201:21
214:10 218:1,6
219:24 226:17
228:12 229:10,14
230:16 231:23,25
233:10 238:3
280:20 281:1,2,4
281:15 282:22,24
286:4,5 287:3
304:2,22 306:3,6
**briefed** 36:13
**briefing** 228:13
306:15
**briefly** 240:22
265:16
**briefs** 17:14 88:9
286:7 299:18
301:8 306:18
312:13
**bring** 19:2 80:11,13
198:8 206:1 209:5
238:10,22 245:21
245:23 246:25
285:6 286:19
**brings** 271:11
**broad** 56:4,8
**broader** 95:14
102:5 202:20
217:20
**broadly** 95:23,24
99:6 102:7
**broke** 291:21
**brought** 10:25
13:21 127:4
255:11 260:8
**brunt** 147:11
**bubble** 124:14
**build** 68:22 69:1
111:17 260:11
**building** 127:21
**built** 260:12
**bunch** 186:11
223:17,20 269:13
**burden** 63:9 89:2
108:18,19 109:3,3
109:6,8,17,20,22
111:9 210:24
240:6 250:9 288:6

USDC, District of NJ                   Williams, et al. v. BASF Catalysts, LLC, et al.                                Friday
C.A. No. 2:11-cv-01754-JLL-JAD                  Special Master Conference                          February 23, 2018

Page 324

304:14
**buried** 160:19
  165:23 297:10,10
  297:24
**bury** 228:2
**bus** 178:16
**business** 207:19,19
**buttress** 145:24
**buy** 115:10 116:12
  117:3

———————
**C**
**c** 55:3,6,6,11 62:1,6
  83:8 86:25 87:3
  88:1 103:12,18
  118:4 200:13,18
  201:1 202:12
  227:1 233:23
  239:19 240:9,24
  266:16,17 267:2
  314:12
**C-1** 1:23
**C.C.R** 319:18
**cabin** 227:25
**Cahill** 2:18,19 5:5,7
  5:8,11 7:2,7,8,10
  10:11 46:15 53:19
  53:22 54:4,6,18
  54:19,20 55:18,20
  55:21,25 57:8
  59:22 64:9,10
  68:15 72:12 75:22
  79:17,19 83:15
  87:6 97:19 98:3
  102:23 103:8
  114:7 136:12,16
  146:9 153:24
  157:23 158:15
  161:12,16 163:25
  166:2,6 176:5,6,8
  176:9 177:24
  179:7 180:16
  187:25 188:9,10
  188:16 191:6,7,9
  191:11 192:24
  194:5 201:6,7,23
  202:3 203:18
  207:17 208:4
  210:21 229:21
  232:19 238:3
  241:9,12,12
  242:18 243:3,3,5
  243:5 248:7,24,25
  249:3 256:4,9
  260:19 261:3,4

288:21 289:4,12
289:14 292:7,17
314:22
**Cahill's** 64:15
**calculations** 134:7
  277:13
**California** 135:19
  140:25 189:4
**call** 36:8,9 39:5,12
  61:3 62:5 76:8
  130:4 186:7
  187:20 207:7
  226:19 247:23
  275:9 281:21
  286:7 304:23
**called** 17:19 135:20
  141:7 155:21
  158:20 212:15
  216:14 271:8
  275:16
**calling** 140:16
**calls** 204:5
**camera** 45:1 46:22
  62:14 63:11 84:10
  84:21 86:9 88:2
  108:2 110:11
  195:16 201:13
  218:22 224:8
  247:14
**cancer** 276:8
**candidly** 48:7 56:11
  57:23 58:11 80:15
  197:14
**candor** 10:6 71:9
**capabilities** 264:23
**capacities** 291:4
**card** 277:22,24
  284:18
**cards** 61:13
**care** 57:1 131:22
  211:23 212:5,6
  231:5 262:1
**career** 212:4 293:22
**carefully** 118:12
**carried** 289:15
**carriers** 120:14
**carries** 16:5
**cart** 226:2 308:14
**Carter** 145:24,25
  146:1,3,12,15
  152:6 166:20
  186:3 294:21
  311:21 312:8,10
**Carter's** 152:10
  311:24 312:9

**case** 9:2,22 11:17
  17:5 18:23 20:14
  20:15,22 24:25
  25:16 27:20 28:12
  28:25 29:16 31:19
  31:23 32:11,13,15
  35:14,16,17 38:13
  39:19,22 42:18
  44:24 48:20 52:8
  52:23 53:9,16
  55:13,15 56:9,10
  56:25 57:4,4,20
  58:8,9,12 59:6,19
  61:6,7,16,17
  63:17 64:2 65:24
  66:11 67:11 68:10
  68:14 69:17,21
  70:4,11 71:22
  73:4,15 75:3
  77:22 79:2,4,11
  80:14,19,20,21,21
  85:10,25 90:3
  92:7,19,20,23,24
  94:22 100:9,15,17
  100:22 101:11,16
  101:18,21 102:10
  103:21 104:2,18
  104:19,22,23
  105:2,12 106:10
  106:17 107:15
  109:25 110:3,19
  112:2 116:22
  121:25 123:22
  126:11 135:12,20
  137:8,14,21,23
  140:21,25 142:11
  142:14 143:4,24
  144:1,3,8,12,17
  146:19 148:1,3,3
  148:8,22,23,23,25
  149:10,18,19,20
  149:23 150:17,21
  150:25 151:12
  153:3 155:20,21
  155:22,23 156:19
  156:20,23,24,25
  157:2,3,5,6,10,19
  158:19 160:4,19
  161:11,15,18
  162:18 165:2,14
  165:17,19,22
  170:11 175:22
  179:5 183:22
  189:4,16,18 191:3
  195:25 196:18,20

197:11 199:23
200:6 206:22
208:1,11 209:1
210:18 211:3
213:25,25 214:1
214:22 216:1,14
216:17,18 218:9
218:16 220:9,11
222:7,17 223:1,10
225:12 226:1
227:13 228:10,21
229:9 230:13,18
232:15,24 233:7
233:12 239:2,9,23
243:15,15,17,18
243:23,24 246:16
247:2 248:5 250:2
253:16 255:4
256:1,2,9 257:9
257:15,16,24
258:5,13 259:2,4
259:20 260:11
263:1 269:10
282:9,15 283:13
284:3 285:1
292:16 295:1,2,2
295:3,3,4,5,6,15
297:15,17,17
298:2,3,3,6
299:24 300:21
301:14,22 302:10
303:1,16 305:14
306:22 307:2,24
308:7,10,14
309:15,22 311:15
311:15,15 313:20
**cases** 26:7,12 35:11
  37:5,8,12 46:21
  49:23 67:7 68:19
  85:16 87:1,2,3,4
  108:25 109:17
  143:6 150:22
  152:20,22 153:1,4
  153:6 155:15
  163:16 170:18
  199:13 215:11
  221:18 222:8,12
  224:21 232:18
  233:17 240:18
  248:8 249:1,5
  256:3 258:10
  260:2 292:1
  299:16 306:17
  309:25 311:22
  312:4

**cast** 290:13
**cat** 316:20
**cat's** 66:15
**Catalyst** 52:4,5
**Catalysts** 1:6 2:13
  2:24 3:4
**catch** 251:2
**Catch-22** 242:7
  309:8
**catch-all** 217:22
**catchy** 130:8
**caught** 263:10
  275:14
**cause** 17:21 67:16
  67:22 112:23
  113:2,3,24 153:16
**caused** 51:20 52:3
  80:7
**cautious** 286:2
**ceiling** 121:11
**cement** 51:12
**Center** 3:3
**central** 71:13
  141:11 222:23
  240:8 245:3 260:7
**certain** 26:2 28:15
  57:7 193:19 241:2
  271:7 292:7
**certainly** 14:12
  15:14 16:3 72:15
  83:25 182:10
  218:16 219:5
  259:15 280:6
**Certificate** 319:1,19
**certification** 72:18
  79:9 80:1,18,21
  80:25 81:2 87:25
  96:2 190:17
**certified** 1:12,22
  94:24 96:21 319:4
**certify** 319:5,9
**certifying** 96:16,17
**chair** 50:15
**challenges** 29:5
**champion** 4:3
**chance** 228:13
**change** 243:2
**changed** 45:10
  59:12 65:16
  261:23
**changes** 59:13
**characterize** 10:20
**characterizes** 275:16
**characters** 290:14

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                 Friday
C.A. No. 2:11-cv-01754-JLL-JAD                 Special Master Conference                 February 23, 2018

Page 325

charge 111:6 168:24
  199:7
charged 59:20
Charles 166:20
charm 250:3
chastised 48:13
Chatham 3:10
check 119:13
  149:10 150:6
  172:5 317:23
checked 172:3
checking 118:16
checklist 316:16
cheek 153:12
Cherish 40:24
Chernick 148:1,3,8
  148:22,22
Cherry 1:16
Chevron 220:10,20
Chidester 11:18
  143:24 144:14,17
  144:23 145:10
Chidester's 11:21
  144:5
Chief 26:21 212:14
  282:2
children 310:12,15
chilling 61:12
choice 60:20 66:24
  73:8,10,11,14,21
  74:8,12 75:2,5,14
  75:19,23 77:7
  229:1,2 230:23
  231:21 282:11
choices 229:17
choose 100:5 110:14
  132:19 181:16
chooses 107:18
chose 102:6
Chris 4:13 212:1
CHRISTOPHER
  2:4
chrysotile 120:22
  137:6 138:16
  277:7
circle 306:12
circles 61:15 128:14
  261:12,14
circuit 58:23 74:20
  74:25 75:7 77:9
  84:25 93:4 103:22
  215:14,17 221:4
  222:4 248:16
  295:3,10,11
  311:17 312:5

Circuit's 77:16
circular 309:12
circumscribed
  219:14
circumstance 49:16
circumstances 12:7
  12:8 47:2 60:13
  63:16 64:2 67:19
  86:19 94:17 95:21
  97:11,17 102:11
  102:16 111:10
  196:2 200:9
  237:16 242:20
  285:21
circumstantial
  243:21,25 244:2
  244:18
citations 74:23
  84:24
cite 44:3 48:14
  143:9 289:20
cited 11:21 15:11,12
  16:6 45:16 65:24
  95:5 132:14
  218:16
cites 11:16
citing 48:13,15
  92:22 118:4
  150:20 151:5
  309:25
civil 1:2 24:7 33:19
  45:4 46:4 47:1,13
claim 65:25 26:23,25
  27:5 29:1 43:7,13
  44:14 55:1 67:9
  67:20 69:2 72:16
  85:14 86:11 88:25
  89:3,6 111:23
  112:20 145:24
  149:3 202:15
  210:22 225:20
  226:22 231:16
  234:1 247:24
  256:21 257:1,2
  268:5 279:9 304:1
claimants 146:17
claimed 75:21 82:15
  90:12 105:18
  246:18
claiming 66:3 90:16
  255:21 260:20
  280:12
claims 27:4 37:20
  38:13 42:17 43:18
  43:19 57:6 67:15

68:5,17 76:1
  82:13 86:13 87:16
  87:22 90:20
  229:18,20
clarification 211:9
  282:7
clarify 117:6
clarity 217:25
Clark 162:18
class 25:4,15 27:18
  27:21 46:5 72:18
  79:9 80:1,17,21
  80:25 81:2 246:4
  246:17,18
cleanly 192:10
clear 29:12 92:14
  97:3,16 109:4
  136:9 182:20
  193:11 199:22
  257:5,6 292:20
  298:6,8,8 302:20
clearer 234:5
clearly 11:19 26:22
  77:4 143:25
  152:20 160:17
  210:15 216:25
  217:15 219:7
  221:25 227:17
  245:11 257:6
clemency 237:10
clerk 85:21 87:6,11
Cleveland 33:16
client 26:19 29:10
  29:12,12 32:20
  45:22,23 55:10
  77:12 102:21
  103:7,8,10,12
  211:17 216:2
  242:20 247:3
  251:4 254:17
  255:19 260:9
  271:3 276:4
client's 56:2 86:6
  213:9 218:25
  245:4 247:18
  249:7 253:4
clients 26:5,10,11
  38:18 45:17
  208:25 219:18
  223:19 250:11
close 32:17 82:1
  135:18
closed 129:14
closing 114:19
cloth 251:18 269:2

club 310:21
clue 242:1 294:7
co-counsel 235:6
codefendant 48:21
  49:20 53:11 77:23
codefendants 42:7
  44:7 49:2
codified 82:17
coexisting 258:17
Cohen 2:2 4:7,11
  25:16 35:21,24
coincidence 164:2
cold 256:14
collated 187:8
collateral 40:4
colleagues' 53:16
collected 302:23
collection 176:5
collectively 203:25
colloquy 28:5
  209:19 311:19
color 192:16
colorable 179:14
columns 132:11
come 33:15 36:12
  40:7 51:11 52:17
  55:22 58:7 59:24
  66:15 70:5 97:21
  118:18,21 126:19
  162:8,21 164:6
  181:15 185:16
  200:4 235:23
  236:25 239:5
  240:19 249:15
  262:21 280:15
  281:8,9 282:21
  285:7,13 287:14
  296:22 303:3,9,19
  311:23
comes 36:16 69:8
  73:7 146:3 187:25
  258:3 317:11
comics 212:1
coming 35:7 36:4,10
  38:8 73:16 78:16
commencing 1:13
commend 306:14
comment 186:19
comments 65:3
  238:25 287:19
Commerce 2:3
commission 82:23
  93:11,15 215:12
  215:24 235:18
commit 84:16 92:10

198:14 245:10
  253:7,12,21 254:6
  255:6
committed 219:1
  225:13
committing 84:16
  92:10
common 36:15,18
  213:24
communication
  23:8 25:14 28:8
  29:11,14 31:4,10
  33:15 45:21 82:21
  84:17 93:10
  148:25 150:9
  188:11 191:11
  216:3 219:18
communications
  24:24 26:4 79:16
  79:19 83:14
  220:13 225:15
  241:4,7,8,9
  260:22 261:1
companies 141:18
company 55:23
  268:21 272:1,12
  275:11 291:18,18
  291:19
company's 271:21
comparative 47:7
  51:2 70:1
compare 184:14
compared 172:17
compel 41:23 42:2
  42:13 45:8 46:16
compelled 44:11
compelling 224:22
compels 90:12
competent 265:8
  280:7
compilation 136:12
  136:17 146:9
  176:7,8,9,13,18
  177:24 178:2,23
  179:7 180:16
  181:8 183:10
  201:7,8,23 202:3
  210:22 300:23
  301:19 303:21
complaint 228:16
  228:17 250:18
complete 152:18
  167:15 202:13
completely 11:22
  225:1 249:17

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 327 of 358 PageID: 49104

USDC, District of NJ　　　　Williams, et al. v. BASF Catalysts, LLC, et al.　　　　Friday
C.A. No. 2:11-cv-01754-JLL-JAD　　　　Special Master Conference　　　　February 23, 2018

Page 326

282:4
complex 40:8
complicated 74:4
complicity 102:21
compliment 118:23
    284:12
component 219:17
compromised
    131:17 299:16
conceal 163:10
concealed 89:7
    232:17,25 233:22
concealment 92:20
    112:21,22 113:9
    148:23 161:14
concede 85:12
conceded 40:15
    223:12
concentrations
    257:12
concern 13:22
    164:16 291:16
concerned 106:19
    161:2 231:2
    236:12
concerning 55:10
    83:18 262:15
concerns 80:15
concessions 40:18
conclude 200:4
concluded 128:20
conclusion 70:5
    143:15 162:21
    164:6 227:20
    244:7 247:2 271:5
    271:5 287:15,17
    296:22 299:13
    302:6
conclusions 11:4,24
    106:6
concocted 292:9
condition 70:17
    137:12 157:21
conditions 57:24
condone 304:12
conduct 48:22 53:11
    60:22 114:13
conducted 85:14
    296:21
conducting 45:5
    127:19
confer 45:5 47:1
    235:6
conference 1:11
    91:1 318:23

conferences 199:8
confident 315:12
confidentiality
    62:13 257:17
confirm 150:7
confirming 283:25
conflating 14:22,23
conflict 86:20
conflicts 45:16
confront 291:24
confusing 234:4
confusion 136:2
Congoleum 133:6
    134:2 277:14,16
conjunction 146:16
connected 267:8
connection 204:23
    215:18 262:19
connects 258:17,19
consequences
    125:11
consider 91:17
    103:25 104:11
    283:8
considerations
    247:8
considered 12:12
    55:8 202:19
consisted 87:24
consistent 123:9
    145:20,22 314:15
consisting 88:3,5
consolidated 238:2
constantly 121:3
constitutes 85:7
constitutionality
    86:21
construct 142:22
construing 215:7
consult 230:24
consultation 254:18
consulted 54:1
consulting 161:19
contain 7:6 145:14
    244:12 276:11
contained 7:3 89:8
    90:18 102:2
    257:11
containing 258:12
contains 143:13,14
    268:13
contaminant 126:22
contaminated 53:21
contamination
    142:25 152:4

contemporaneous
    276:14
contempt 20:8 33:9
    33:20
contents 173:1,7
    242:10,11
context 76:14
    101:18 112:17,18
    134:8 142:20
    184:10 185:17
    189:10 214:20
    276:1,3,5
continue 19:10,21
    195:6 211:12
    227:23 290:6,7
continued 2:1 19:11
    19:15,22 25:8
    30:7 38:11,14
    39:1 114:12
    136:15 206:15
    251:21 290:7,10
    290:10,11
continues 312:14
continuing 206:17
continuity 292:19
contract 216:20,24
    217:3,4
contracted 276:7
contradicted 222:7
    222:8,11
contradicts 97:19
    264:7
contrary 96:19
    209:4
contrast 271:8
    272:11
contribution 43:23
    44:1 49:18 51:2
    70:2
control 52:6,9,14
    132:2
conversation 28:21
    36:1 236:19
    238:24 305:6
    316:16
conversations 26:9
    27:23 32:13
convince 126:13
    146:17 153:3
convincing 109:5
    199:23
cooked 260:19
cookie 212:9
cookies 212:10,12
cooperatively 38:25

cooties 192:25
copied 9:8 166:4
copies 18:22 141:9
    167:12 168:3,4
    281:11
copy 9:15 19:19,23
    161:17 182:14
    269:6 314:16,17
core 17:5 69:6 313:8
Coren 2:5 4:16,16
    24:11 27:8 47:21
    48:1,2,4,12 49:3,6
    49:21 50:8,12,23
    50:25 51:8,25
    52:16 53:1 54:17
    55:18 56:14,23
    57:3,14,21 58:16
    59:9 60:14,18
    61:1,5,21 62:1,5
    62:17 63:15 64:14
    64:22 66:3 72:2,4
    74:17,18,19 75:6
    75:9,11,16 76:2,6
    77:1,20 78:3,6,12
    81:21 114:18
    117:21 188:8,12
corner 190:7 195:1
    256:14 261:7
    266:23
Corning 95:2
corollary 79:14
coronary 149:13
corporate 1:15
    151:20 154:7,11
    167:20 176:17
correct 12:15 42:24
    51:8 62:5 71:21
    75:16 90:22 93:1
    93:2,5,16 95:16
    98:4,21 119:6
    126:21 129:25
    131:2,15,18 134:3
    135:17 137:4
    138:11 143:12
    144:6 148:7,10
    150:16 151:1
    155:3,6,11,19
    159:23,25 163:14
    166:18 169:7
    173:2 188:4,7,8
    190:15 191:12
    209:18 221:25
    224:11 225:16
    226:3 246:8
    249:25 266:14

267:25 269:21
    270:8 282:12
    312:13,25
correcting 13:19
correctly 264:13
    314:18
correlation 187:10
correspond 189:14
couched 122:20
    175:16
counsel 4:5 5:18
    17:2 19:16 20:1
    25:21 26:2 27:6
    35:25 37:5,11
    38:1,24 53:20,25
    79:16,19 83:14
    87:25 96:15,16,18
    148:25 152:20
    166:3,8,24 176:16
    176:21 206:15
    208:6 211:4,17
    216:19 239:21
    242:22 244:11
    319:10,12
counsel's 217:14
    219:7
counterproductive
    208:20
counting 120:24
    300:22
country 222:3
couple 12:19 13:18
    106:22 111:13
    132:25 135:21
    153:8 173:23
    177:16 185:12
    204:5,16 255:20
    265:14 280:19
    286:16 293:24
course 82:22 90:7
    92:12 93:10
    106:23 122:4
    124:11 145:19
    146:8,10 193:14
    223:17 259:6
    305:23
court 1:1,12,22 7:24
    9:23 10:6 46:2,3
    48:19 65:25 67:18
    69:16 75:20 82:25
    83:8 84:11 85:8
    87:6,12 89:15
    91:9,16,22 92:5
    93:4 95:4,5,11
    96:5 97:12 102:8

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 328 of 358 PageID: 49105

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                 Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference              February 23, 2018

Page 327

103:25 104:1,10
105:3 107:17
108:4,16 110:1
112:1 114:22
115:24,24 150:9
152:16 156:19
167:4 182:2,7
199:25 201:13
215:5 216:10
220:3 222:4 230:8
236:3,18 274:11
288:6 293:14
295:3 298:11
306:17 311:24
315:24 319:4
**Court's** 13:21 18:8
18:12 25:8 182:14
305:16
**courts** 57:24 62:24
89:8 97:20 110:23
110:25 111:5,5
124:4 146:17
151:3 175:12
199:9,11 206:25
220:1 290:11
294:18 299:15
311:16
**covenants** 44:6
**cover** 74:14 214:25
**covers** 219:10
**coverup** 98:3,13,20
**crazy** 314:11
**created** 161:10
**creates** 62:23
**creating** 186:2
**creation** 184:16
**credibility** 145:9
**credible** 145:10
**credit** 50:5,10
164:17
**crevice** 158:2
**crime** 6:10 8:13
11:7 14:10 17:4
53:14,15,18 64:8
79:20 82:7,11,23
83:15 84:16,19,23
85:5,13 86:3
87:20 89:3,13,17
89:25 90:1 92:10
92:14 93:7,12
97:23,24 98:14
107:15 110:20
111:19,21 112:6,7
179:5 198:14
199:23 210:19

213:1,8 214:3
215:10,19,21,24
216:2 217:6 219:1
219:10,12,13,19
220:7,14 221:4
222:5,19 224:23
225:7,13,17 232:4
232:15,23 233:20
239:13 240:13
241:5 242:16,17
242:19,24 245:3
245:10 246:2,5,8
247:3,6,17,19
248:22 250:12
251:3 252:22
253:8,12,19,22
254:3,6,14,16
255:6,15,16
259:20,21 261:16
264:1 296:25
302:10,11,12,15
303:3 309:18,23
311:16 313:17,21
314:6 315:14,17
**cringe** 101:19
**critical** 36:23,25
254:15
**cross** 285:6
**cross-claim** 48:24
49:5,8,9 52:22
**cross-claimed** 52:24
**cross-claims** 42:20
52:25
**cross-examined**
122:5
**cross-over** 311:20
**crystal** 257:5
**crystallize** 213:5
**cure** 228:16
**cured** 228:15
239:14
**current** 89:13
208:25
**currently** 10:23
**customer** 249:13,23
277:13 278:20,25
279:10,11
**customers** 115:11
116:7,15 119:14
120:10 198:25
247:25 248:4
251:11 279:3
288:18
**cut** 53:4 59:6 107:5
118:8,9 238:20

**cuts** 61:8 101:13

_____

**D**

**D** 3:8 16:14 88:2
**D.C** 2:10
**Dalmet** 2:12 4:25,25
**damages** 20:25
33:24 52:2 67:23
233:14
**Dan** 4:23 65:1
211:14
**dancing** 310:24
**dangerous** 284:6,9
**dangers** 116:10
**DANIEL** 2:11
**Daniels** 162:19
**dark** 195:1 256:14
261:7,7
**darn** 130:17
**data** 117:1,9,13,25
118:2,3,5 119:7
119:10,15,21
121:5 138:18
146:5,8,11,14
167:15,17 168:25
168:25 175:10,12
266:6,8,9 267:1,4
267:5,15,18,22,23
268:6,12 269:3,16
271:2,4,6 289:17
290:3 294:22
295:18,23 297:5
298:8,21
**date** 1:12 15:11 66:2
81:20 115:17
130:11 187:24
188:14,23 189:9,9
235:23 236:1,20
237:4,6 267:5,6
267:16,22 319:7
319:19
**dated** 19:18 275:19
275:22
**dates** 20:10 38:17
267:13,18 317:3,3
**daughter** 128:24
**David** 162:18
**day** 21:2 22:14,17
23:11,21 47:18
48:5 153:18
221:11 260:4
263:8,8,10,13,15
264:16 281:17
283:11,14 285:15
286:17,17 295:20

296:12 299:14
**days** 8:12 19:15
33:20 80:13
185:12 187:16
272:15
**de-privileged**
159:13,17
**deadline** 315:7,12
**deal** 91:1 146:1
184:11 185:17
225:4 286:3
**dealing** 28:3 80:24
**Dear** 193:20
**debatable** 123:24
**debate** 106:16,16
123:4
**debating** 122:16
**decide** 72:21 92:5,5
145:8 229:3
260:11
**decided** 10:16 86:17
315:4
**deciding** 58:23
281:16
**decision** 32:14,15
49:13 72:22,23
82:25 97:17
107:19 200:7
281:17 291:20
298:20
**decisions** 26:6 61:10
**declarant's** 312:25
**declaration** 42:13
264:21 272:21
**Decof** 162:17,20,24
163:3,25 164:1
**deem** 201:13
**deep** 195:1 289:18
**deep-six** 243:8
**default** 73:6,12
**defend** 55:19
**defendant** 2:13 3:4
3:8,11 4:22 48:20
49:18,19,19 50:5
50:6,10,11,15,19
53:10 67:9,10,10
67:13,19,20 68:1
68:4,13,13,20
70:7,11 77:22
87:12,14 150:1,2
170:20 216:21,23
**defendant's** 44:13
68:1,2 82:12
86:20,25
**defendants** 1:6 2:18

5:7,9 18:16 42:13
42:16,20 43:3,8
43:14,24 45:24
46:8,8 47:6 48:8
52:8,22 58:4 60:8
60:20 64:10 72:21
89:6 100:13
101:12 124:10
163:2 232:19
250:2,3,4 258:21
**defending** 248:25
**defense** 42:5 51:24
52:1,2,15 89:24
161:20,21 163:23
164:1,6 209:1
217:10 237:5
**defer** 316:8
**deficiencies** 90:22
**deficiency** 239:11
**deficient** 183:8,8
**define** 79:10 307:7
**defined** 219:15
233:1
**defining** 270:3
**definitely** 219:6
318:11
**definition** 73:5,5
84:23 199:24
**defraction** 289:21
**defraud** 258:20
260:18
**degree** 28:2 251:25
**delay** 12:8
**deliberate** 85:9
**delineating** 215:18
**delivered** 277:15
278:20,23 279:10
**delve** 51:18
**demanding** 99:4
**demands** 116:16
**Dembrow** 90:11
190:22 191:5
194:16
**demonstrate** 36:14
114:14 141:25
223:16 250:9
**demonstrated**
174:22 175:4
197:10 198:18
199:20 219:17
313:9
**demonstrates**
160:17 301:13
**demonstrating**
90:16 95:2

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 328

**denial** 42:21
**denied** 15:19 17:17
    42:8 45:9 47:4
    80:18 81:17
    286:18
**deny** 38:21 80:7,9
**denying** 22:15 91:17
**department** 130:16
    130:20 154:25
    291:14
**depending** 135:24
    136:25
**depends** 125:8
**deponent** 154:14
**depose** 246:25
**deposed** 9:1,3,5,6,7
    128:22 172:13
    173:13 245:20
    312:9,11
**deposition** 6:24,25
    7:11 8:1,9,11,15
    9:12,14,19 10:8
    11:16,17,21 15:12
    16:2 18:5 19:9,11
    19:15,22 21:13,15
    21:22,25 22:3,19
    22:21 23:18 25:3
    25:4 28:5 29:23
    30:7 32:18 33:13
    33:17 34:14 36:6
    38:11,14 39:2,15
    123:18 128:25
    130:21,25 136:5
    136:15 143:23
    151:16 154:14,23
    156:18 167:20
    169:18 171:21
    172:14,18 173:1
    173:15,22,25
    189:24 190:14
    194:1,17 277:12
    311:24
**depositions** 11:22
    71:22 90:11
    137:20 138:3,4
    169:8,9,24 170:1
    170:5,9,10 183:18
    183:18 191:4,14
    191:17,19,20,21
    191:23 192:1,4
    193:11,12,15,19
    193:21 194:13,15
    194:21,24,25
    195:5,8,11,13
    199:7 257:5 261:5

261:6,8 292:15,24
    293:3,12 311:25
    317:4
**Desai** 2:22 5:3,3
    207:12
**describe** 27:19
    72:22 100:24
**described** 38:23
    64:12 158:21
    160:11 264:13
**describes** 99:5
**descript** 184:2
**description** 64:11
    135:4
**deserve** 223:21,22
**deserved** 24:17
**deserves** 102:24
**designated** 155:4
**designation** 90:4
    163:12
**designed** 256:3
**despite** 164:25
    300:9
**destroy** 7:9 25:22,24
    27:1 302:18,19
**destroyed** 86:8
    111:18,20 112:6
    139:7,8,9,9,20
    140:19 188:21
    197:1 226:25
    232:21,22,25
    233:11 301:9
**destroying** 140:23
**destroys** 36:2
**destruction** 13:2
    33:6 85:1 111:13
    113:10 130:2
    141:22 189:1
    226:18,19 303:8
    303:18
**detail** 110:21 142:18
    169:13
**detailed** 173:10
**detailing** 173:11
**detection** 123:23
    125:4,6
**detente** 32:25
**determination** 17:3
    17:8 79:1,15
    81:15 107:20,23
    110:5 112:14
    145:3 228:21
    240:5
**determinations**
    63:12 112:16

195:17 296:15
**determine** 82:11
    87:20 89:16 92:6
    110:7 195:24
    201:2 282:17
    298:7 308:6,10,13
    309:22 310:8
**determined** 11:4
    88:24 268:25
**determines** 77:8
**determining** 272:12
**developed** 43:15
    128:24 187:16
    218:13 256:17
    258:21
**developing** 258:10
**development** 217:8
**diagrams** 128:14
**dictionaries** 222:10
**dictionary** 307:7
**difference** 24:18
    100:7,7 134:18,22
    144:13 181:25
    213:19 221:3
    254:9 307:9,12,14
    313:22
**different** 14:23
    56:18 60:6 67:7
    68:18 70:10,14
    80:19,21 89:21
    96:1 101:20,23
    102:10 104:17
    125:12 136:13,17
    137:7 141:18
    143:19 145:22
    162:21 171:1
    183:1 192:15
    212:23 218:10,17
    221:5,20 222:5
    223:23 224:16
    241:10 244:21
    247:8,10 249:17
    256:21 259:14
    260:6 267:18
    272:3 279:22
    281:24 299:12
    302:8,11 306:16
    313:6
**differentiating**
    272:19
**differentiation**
    121:9
**differently** 34:21
    41:23
**dig** 175:21,22

**diligence** 164:9
**direct** 76:22 243:20
    243:22,25 244:3
**directed** 80:24
    246:16
**direction** 215:24
**directive** 237:25
**directly** 85:22 87:7
    87:13 96:19 102:2
**disadvantage**
    230:19
**disagree** 15:22
    21:17,20 56:5
    58:18 61:22 62:8
    225:8 255:14
    311:11,13
**disagreement** 70:21
**disavowed** 245:9
**discernible** 121:22
**disclose** 44:6 45:25
    46:10 63:8 66:25
    67:2 71:15 108:3
    275:25
**disclosed** 26:17
    43:16 68:20 185:7
    201:16 202:16
    256:13 289:9
    305:12
**disclosure** 26:14
    47:8,8,12,14
    61:19 65:19 66:3
    68:8 71:2 82:15
    86:15 210:25
    239:25 240:1
**disclosures** 249:13
    256:10
**disconnect** 242:15
    279:9
**disconnects** 243:19
**discontinued** 141:10
**discover** 57:18
**discoverable** 96:9
    217:6,9
**discovered** 8:3 10:4
    128:24 196:15,18
**discovery** 48:6,22
    53:12 58:10 59:10
    59:25 60:10,22
    66:1 68:12,17,23
    78:22 79:11 81:6
    81:10 161:14
    236:20 237:4,6
    315:6,11,11
**discuss** 6:7 28:15
    268:21 274:18

318:15
**discussed** 6:4 28:24
    29:1 31:11 41:10
    179:22 234:2
    271:9 289:16
    316:17
**discusses** 274:20
**discussing** 23:23
    87:2 273:23
    300:10
**discussion** 38:6
    75:15 77:7 195:6
    196:19 209:20
    232:20 306:13
    307:4
**discussions** 35:9,13
    35:21,23 193:16
**dismiss** 76:14,18
    153:4 258:13
**dismissals** 111:3,3,4
    199:13 290:12
**dismissed** 67:13,20
    67:24 68:4 148:13
    150:4 152:21,22
    153:1,6 155:15
    295:6
**disposed** 29:2
**disposition** 91:11
**dispute** 31:24 283:9
**disregard** 229:25
    296:5
**dissuade** 109:1
**distill** 285:8
**distinct** 233:18
    251:19
**distinction** 214:2,14
    243:19,20 254:9
    271:17 273:7
    278:7,8 307:11
**distinguish** 46:20
**District** 1:1,1 75:20
**diversity** 69:21 73:4
**divide** 26:3 313:17
**Division** 91:12,16
    91:21 104:1,10
    105:1,15 216:15
    217:5 220:4
**docket** 82:10
**document** 15:23
    86:8 90:2,4 117:7
    117:11 119:8
    130:1 132:8
    141:17,22 161:17
    161:24 162:3,8
    163:7,13 168:10

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 330 of 358 PageID: 49107

USDC, District of NJ                    Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                    Special Master Conference                    February 23, 2018

Page 329

173:7,16 178:6
179:22 181:12
189:11 207:13
217:6 219:4,6
226:17,24 240:12
242:11,12 243:12
253:16 259:11
266:21 268:20
269:4 271:24,25
272:1,6 273:3,13
274:2 275:15
**documented** 156:17
**documents** 7:10 9:8
13:2 18:15,21,22
26:14 42:15 43:17
47:15 83:18 86:1
86:1 88:1 89:16
90:3,13 91:13
107:19 110:4,14
111:14 121:1
127:18 141:9
155:12,17 161:13
167:22 168:2,14
168:17,18,19
169:18 176:12,19
176:20 177:17
178:2,5 179:13,17
180:20 181:7,9,14
181:15 183:6,14
183:24,25 184:15
184:21 185:7
186:9,12 187:20
188:19 189:9
195:24 196:14
197:1 200:7,8,11
200:20 201:4,7,11
201:12,15,23
202:4,13,15
207:15,18 209:12
209:21,23 210:5
210:17,25 211:3,5
211:7 212:25
213:7 214:4
218:20,24 220:6
223:9 224:8 225:1
225:23,25 226:20
226:23 233:11,15
233:22 239:12,20
239:22,24 240:4
240:16 245:12,13
246:19,21 247:17
248:10,18 249:18
252:6 255:1,1,25
256:4,6 257:21
259:14 260:6

263:24 264:4
267:8 268:4,9
271:10 274:22
279:5,25 280:3,5
280:8,10,23 300:4
300:8,9,14,15,18
300:22 301:9,13
301:23 302:18,20
306:23 307:2,23
308:2,6,9,13
309:5,6,9,16,20
317:14
**Doe** 243:6
**dog** 311:4
**dogs** 105:16,18,22
105:23 311:5,6
314:3
**doing** 6:9,13 23:5
54:23 56:2,24
58:11 141:19
153:5,18 185:12
204:10 209:14
212:11 216:18
232:10 251:23
256:9 260:24
262:6 279:11,13
292:11,12 304:10
312:1
**dollar** 53:2
**dollars** 207:16
**domain** 173:24
174:5
**door** 129:15,21
**Dornbusch** 3:11
5:21 59:21 68:16
90:10 142:13
146:16 176:15
196:19,21,23
291:7 301:18
**Dornbusch's** 146:10
181:13
**double-check**
119:16
**double-checked**
164:14
**double-sided** 177:13
**doubt** 38:9 39:17,18
109:5
**dovetail** 210:11
**Dr** 10:17,18 123:1
135:22 136:23
137:1,1,3 138:7,8
138:11,12 139:5,6
139:15 140:15
142:10 144:4,14

144:23 145:9,12
145:16,17 146:2
151:16 152:7
156:8,25 157:20
168:22,23,23
189:16 244:5,6
276:22 277:12
278:5,15 299:4,4
**draft** 161:19
**drafts** 216:20
**draw** 143:14 273:7
**drawn** 268:8
**drew** 11:3 274:20
275:6
**Drive** 1:15
**dropping** 231:16
**due** 15:21 164:8
259:6 314:22
**dug** 175:25
**dump** 278:22
**dumping** 289:3
**duty** 10:5 43:18
45:22 54:22 55:11
76:7 106:11,13
170:15,24 171:12
171:17 174:17,21
**dying** 161:6

─────────────
**E**

**E** 16:14 88:5 90:25
157:12 233:24
240:24
**e-mail** 19:18 21:4,21
22:15,18,20 23:11
23:13,16,21 24:21
25:11 39:8 191:22
193:18,19,23
194:20,24 205:13
205:24 261:3
284:14
**e-mailed** 20:1 21:24
**e-mails** 22:24 25:9
205:17 317:14
**Eagles** 4:3
**earlier** 15:4 45:9
95:1 126:10
186:19 187:14
203:21 219:7
246:15 263:9
**earliest** 60:4 66:12
**early** 10:14 48:19
53:9 65:19 68:8
77:22 106:22
115:8 117:16
141:19 169:5

206:13 212:4
248:12 272:4
275:12
**earnest** 66:1
**earth-shattering**
19:1
**easier** 118:20
185:22
**East** 1:15
**Eastern** 301:6
**easy** 6:18 202:10
310:5,16
**eating** 140:12
**ECF** 6:21 7:12 19:7
20:3,12 23:25
42:1,12,21 45:2,6
46:14,24 82:10
85:20 87:5,10,18
90:19
**educate** 296:12
**effect** 33:11 50:21
110:25 238:25
258:11
**effectiveness** 208:19
**effort** 13:22 14:4
125:20 163:10
**efforts** 79:12 80:23
126:25 207:13
302:18
**eight** 90:9 134:13,14
**either** 40:16 60:21
67:9 68:12 97:19
109:4 112:6
144:24 229:2,18
231:22 237:22
281:1 282:3
302:12,21,21
303:25 307:21
315:24
**Electric** 116:8
**electron** 173:12
289:22
**electronic** 294:3
**elegantly** 252:8
**element** 91:4 213:13
220:12 222:23
245:3
**elements** 89:20
212:25 219:15
222:19 233:19
259:22
**eliminate** 37:4
**Elizabeth** 2:12 4:25
156:7
**Ellen** 151:21 169:17

**Ellis** 2:9 40:22
164:11,13,20
179:8,11 211:15
**elm** 310:9
**eloquently** 252:14
**embodied** 217:11
**embrace** 219:25
220:2
**embracing** 98:23
223:7
**employee** 319:10,12
**empty** 50:15
**Emtal** 7:3 53:21
89:8 90:17 110:24
120:18 129:21
133:5 178:1
189:19 244:12
257:10 274:4
276:11,19
**en** 85:19
**enacted** 218:12
**enclosed** 19:19
**encompassed** 316:1
**encouraged** 317:6,8
**encouragement**
317:3,9
**encourages** 47:9
**endeavor** 296:14
**ended** 58:23
**ends** 81:7,10 97:6
**engage** 123:4
**engaged** 101:17
207:11 250:5,12
250:20
**Engelhard** 7:1,2 9:5
10:15 11:10,19
53:22 54:2 79:18
87:17 103:6 114:7
114:10,12,13,16
114:24 115:5
116:11,14 125:23
135:11 137:15
138:20 144:1
147:23 148:10
152:13 157:22
158:7 165:4 166:8
166:14,18,20
169:10 171:24
198:18 232:19
241:18,20 242:21
243:7 249:1
251:14 253:1,21
254:6,10,20,22
255:7 256:3,9
268:17 270:20

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 330

272:13 276:6
279:1 289:13
290:14,23 291:17
292:18 295:5
**Engelhard's** 53:20
241:23,24
**English** 94:7
**enjoy** 101:5 212:2
**enjoyable** 102:10
**enjoys** 101:5
**enormous** 247:5
**entered** 19:8 20:4
41:25
**entering** 48:6
**entire** 116:9,22
149:19 178:23
182:7 224:2
252:23
**entirely** 249:25
296:14 297:10
**entirety** 168:14
**entitled** 38:1 47:5
50:5 57:15 62:23
66:19,22 67:19
73:23 78:22 90:6
145:8 226:23
252:4
**entitles** 57:13
**entries** 177:17
180:15 186:2
187:24 188:25
189:6,14,17
195:21 200:21,22
200:24 201:2
241:1
**entry** 177:10 189:21
189:22 191:2
192:3 194:4
200:23
**envelope** 278:15
**equal** 46:12 50:6
**equates** 85:2 222:9
**equation** 278:12
**equipment** 11:2
127:9 268:24
**equivalent** 314:1
**erase** 7:7
**ergo** 195:25
**Eric** 2:7 3:7 4:7,11
5:18
**Erie** 69:23
**Ernest** 190:14
**eschewing** 91:2
**especially** 232:3
281:10 311:17

**ESQ** 1:16,17 2:4,5,5
2:6,6,7,10,11,12
2:12,16,17,17,21
2:22,23,23 3:4,7
3:11
**essentially** 46:25
65:19 68:12 87:8
106:24 219:11
228:12 271:20
278:22
**establish** 44:23
208:11 226:1
**established** 92:6
107:15 225:6,12
232:15 233:21
306:21
**establishes** 110:3
**establishment**
243:24
**et** 1:3,6
**ethical** 193:4
**EUGENE** 2:11
**evaluate** 57:22
230:18 294:24
297:7
**evaluation** 84:5,10
201:13 260:15
**evening** 22:20
**event** 6:2 46:18
47:19 100:10
**events** 72:23
**eventually** 74:6
159:6,10
**everybody** 6:13
22:24 25:11 68:24
73:17 141:21
153:5 221:21
296:13 301:20
304:17
**everybody's** 6:14
107:7 232:5
292:25
**everyone's** 80:23
**everything's** 307:6
**evidence** 7:2,4,9
11:11 13:6 23:24
51:17 82:19 83:5
83:7,10 85:2 86:4
89:22 90:16 106:2
106:12,14 107:23
108:6,19 109:4,5
109:14 110:12
111:20 112:6,9
113:4,11 116:20
123:25 124:1,2,2

124:6 126:12
130:14 138:4
139:7,25 140:18
140:19,23 142:7,9
145:13 156:12
160:7,20 165:7,8
165:9,12 167:10
171:13,18 174:9
174:15,16,23
175:4,5,8,15,15
176:20 188:22
189:1 197:10
199:11,12,14,17
199:21 200:2,3,6
208:12 214:5,16
219:5,8 222:18
224:4,20 225:21
232:16,17 237:19
240:18 243:10,21
243:22,25 244:3
245:16 248:20
250:10 252:20
253:14,14 254:4,5
255:4,10 257:20
259:3 260:9 268:3
268:17 280:7
288:24 290:9
294:19,19,20
295:21,22,22
296:6,19,21
297:20 298:6,8
299:9 301:22,24
302:5,6 303:8,11
303:13,15,15,18
305:11 312:15
**evident** 135:21
**evidentiary** 83:17
85:13 112:16
181:23 183:17,20
218:13 248:14
249:6,19 264:18
311:18 312:7
**evolution** 40:13
**ex** 63:11 84:9 85:14
86:10 90:7 108:2
224:8 240:4
247:14
**exact** 114:12 130:11
187:24 188:13
215:15 221:14
278:7 293:2
**exactly** 23:19 98:9
113:15,19 134:6
144:19 161:24
162:25 193:7

213:21 246:7
267:25 270:16
275:3 278:1
284:15 286:22
293:6,23
**examination** 108:2
282:14
**examine** 195:20
**examined** 172:19
**example** 16:6 28:4
29:23 34:23 39:15
51:19 62:18 65:9
94:18,22 120:21
133:5 138:7
151:16 171:19
172:9 184:13
186:11 187:21
196:16 204:17
290:17 291:7
**examples** 115:23
120:13 146:20,22
146:23 152:15,17
166:2
**exceed** 88:12,15
314:22
**exceeded** 89:1
**excellent** 106:7
**exception** 8:13
53:14,15 55:7,9
62:3,6 79:20,21
82:16 83:2,16,20
83:25 84:1,6,8,22
85:6,11,13 89:3
89:13,17,18,20,25
103:12,17 107:25
108:7 112:8 113:5
174:25 197:12,19
197:24 198:5
202:16 214:3
215:10 217:7
219:10,12,13,14
221:5 222:5,20
224:6,23 239:13
242:5,16,17,19,25
245:3 251:3
252:22 254:3,14
254:16 255:16,16
259:20,22 261:17
274:4
**exceptional** 12:7
**exceptions** 17:4 55:7
56:6,7 82:12
87:21 112:19
167:11 197:17
**excuse** 15:5 51:22

61:24 127:24
169:20 173:5
**execute** 145:25
146:12
**executed** 191:18
**executive** 166:21
**exercise** 56:21
207:22
**exercised** 313:13
**exhibit** 18:5 118:1,2
118:4 136:5,6,11
136:14,19 173:21
177:2 190:7,13,18
201:1 202:1,2,12
266:3 267:2 269:5
273:16,19
**exhibits** 14:14,16,17
14:19 88:6 117:19
118:15 138:3
169:9 171:20
172:18,21
**exist** 8:2 10:9,10,11
10:12 39:1 43:4
44:25 112:16
114:4,5 142:9
172:19 175:13,13
175:14 176:22
191:20 301:20
302:7 303:15
**existed** 7:4 9:12
10:8 113:24
124:21 181:14
193:11,12 207:18
213:24
**existence** 42:22
80:17 225:6
**exists** 32:10 294:20
308:14
**exonerated** 55:21
64:15
**expanding** 127:21
**expansive** 199:24
**expect** 29:21 38:24
164:12 208:6,17
225:10 235:18
**expectations** 262:10
**expended** 39:20
**expensive** 285:24
**experience** 206:8
**experienced** 121:19
**expert** 9:4 11:18
79:11 81:10
121:13 122:1,6
143:24 145:1
158:17 159:3

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 331

160:5 161:19,20
258:2 264:21,22
265:8 271:9 272:5
272:18,21 274:17
274:19 284:4,23
285:7 298:21,22
**expert's** 258:7
**experts** 163:4 280:7
294:24 295:18
297:21
**explain** 16:1 71:6
84:13 94:20 96:14
234:24 235:2
**explained** 105:21
215:23 280:10
**explaining** 23:14
123:2 223:8
263:12 265:8
**explanation** 15:5,18
240:20 279:15
281:21
**explore** 62:6
**exploring** 10:23
**explosion** 141:20
**expose** 96:24
**exposed** 113:25
114:22,23
**extend** 45:21 82:21
93:10
**extended** 236:18
237:6
**extent** 24:23 27:23
32:12,13 61:22
75:24 79:10
101:20 163:15
**extra** 131:22
**extremely** 288:9
**eye** 275:14

———————
**F**
**F** 2:11 116:8 279:3
**F.3rd** 74:24
**face** 76:22 117:15
135:10 146:8
152:11 184:19
191:13 198:24
241:17 302:22
**facie** 84:7,9 85:25
89:2 90:5 92:6
104:2,17,19
105:12 107:15
108:1 110:3,19
174:16,20,22
179:5 195:24
197:11 199:23

200:6 208:11
210:18,23,24
220:9,11 222:17
223:1,10,14
225:12 226:1
228:21 230:13,18
232:15,24 234:3
239:2,9,23 240:6
243:15,17,18,23
243:24 247:2
255:4 259:2,19
282:8,15 298:2,3
299:23 300:21
302:10 303:1,16
305:14 306:22
307:2,23 308:7,10
308:14 309:15,22
**facilities** 207:17,17
**facility** 131:4,6,15
**facing** 250:14
**facit** 228:10
**fact** 9:13,14 10:9
11:4 13:20 16:13
18:13 36:22,23,25
37:4 49:21 50:17
51:12 57:15 66:6
77:8,9 81:6 92:18
96:3,7,7 103:10
104:13 105:17
106:11 107:24
112:1 116:24
119:13 136:14
145:16 163:11
165:11 171:17
175:25 176:23
180:20 184:18
185:13 189:21
199:17 217:2
233:15 242:23
244:8 256:20
257:20 259:3
265:7 268:21
270:20 274:18,21
277:6,9 278:9,21
292:12 300:11
302:4 308:7
**facts** 26:5 58:1
59:17 61:9 62:7
62:10 76:14 96:3
96:8 98:7,9 103:1
103:9 124:18,20
206:23 217:8
223:17,20,21
224:17 239:1
250:19,22 254:1

258:16 259:10
280:1,4
**factual** 79:11 84:5
85:6 88:4 96:4
110:9 121:6
174:24 224:5
242:20
**factually** 78:20
86:13
**failed** 24:5 45:3
46:18 85:25 86:3
86:7
**fails** 212:21 223:10
**failure** 20:7 55:10
68:5 239:12
247:16 303:11,12
**fair** 14:8 17:6 27:17
30:13 35:11 41:7
83:10 86:21
109:14 120:5
134:7 141:1
166:16,19 167:16
174:23 180:14
187:18,19,20
197:10 224:1,4
225:21 250:9
260:15,15 288:24
316:5
**fairly** 211:2 315:3
**faith** 33:14 55:2
84:6 107:24 108:6
110:10 174:24
179:16 180:17,20
181:1 195:18,19
220:6 224:6 235:3
259:4
**faithfully** 56:2
**fall** 84:23 140:14
**Falls** 1:15
**false** 94:25 95:1
166:22 217:8
255:14,14,22
258:23 268:16,22
273:11 280:12
294:22
**far** 106:18 136:1
153:2 156:4
168:20 208:1
217:20 227:9
230:5 236:12
258:14 269:23
305:25
**fare** 19:3
**Farrell** 2:10 4:24,24
13:13,14,16,17

14:2,9,15 15:3
16:11,20 18:7,11
18:24 19:20 22:20
23:14 81:3 117:5
117:10,14 118:11
118:16,22 119:2,6
119:19 128:2,7
148:18,21 151:6,8
160:25 161:4,6,8
162:2,9,25 163:6
163:14 204:14
206:10 224:14
247:25 261:18
262:7,9,13 263:7
264:11 265:3,7,22
266:2,5,10,14,16
266:18 267:3,7,17
267:25 269:12,21
270:1,4,7,11,15
271:16 272:17
273:1,18,22
274:10,16 275:3,8
276:1,12 277:17
277:21,25 279:20
279:23 283:20
293:24 294:1
300:10
**Farrell's** 23:12
117:23 283:9
**Fast-forward**
216:22
**fault** 42:14 43:10
46:1,10,12 48:21
50:20 51:20 53:11
58:5 77:23 306:4
306:7
**faulty** 107:3
**favor** 189:25 229:8
**favorable** 223:18
**favorite** 212:1
**fear** 184:2
**features** 65:14
**February** 1:8 5:16
6:21 7:12 19:18
19:25 20:3,9,11
20:18 21:3,6,7,9
21:13,16,21,22
22:4,5 23:25
24:21 25:2 45:6
46:14,24 47:19
87:18 90:19 91:7
91:8 314:14
316:12 319:19
**federal** 23:23 46:3
47:13 65:24 69:16

69:22 87:1,3
92:16,21 116:24
117:2 150:12,17
222:4 306:16
**feel** 132:17 171:7
262:11
**feeling** 299:20
**feels** 78:9 307:20
**Fellerman** 92:23
95:22 97:12
214:21 216:9
222:8
**felt** 14:13 76:7 284:3
**fiber** 128:21 270:16
**fibers** 7:3 120:24,25
121:1,14 135:24
137:6 268:23
270:22 273:6
274:3,6 277:15
**field** 139:16
**Fifteenth** 2:9
**fight** 38:3 40:16
**figure** 160:22,22,23
185:13 205:23
307:19
**figured** 116:3 309:1
**file** 17:12,16 49:7
72:10 88:11 91:10
91:18 112:3
146:10 174:12
176:2,15 181:13
187:24 229:14
230:15 246:4,5,17
246:23 286:20
290:7 293:11
314:16
**filed** 6:22 7:13,17,24
8:5,7,9,12 12:16
14:10 20:12 21:5
24:1 37:21 42:12
45:3,7 46:15,25
64:11 67:16 69:1
82:10 87:19 91:8
135:11,13,19
148:14,19 150:11
150:19,21 151:10
151:12,13 155:20
165:6 170:12
182:21,24 192:5
208:1 210:4
212:21 233:5
246:3,8,11,12
263:9 293:10
304:13
**files** 9:11 10:10,11

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 332

10:12 95:2 97:18
122:17,17,19,21
141:11 161:12,16
168:23,25 170:18
171:25 176:14
**filing** 8:2 208:4
231:23,25 304:12
304:14
**filled** 116:25
**final** 47:17 82:6
104:8,15 174:4
313:15
**finally** 47:12 63:4
86:9 90:11 219:22
**financially** 319:13
**find** 18:1 33:12 40:9
57:8 62:12 68:1
103:16 120:14,16
120:17,17,19,21
141:5 155:25
168:18 189:12
191:23 192:1
244:22 259:6
273:15 282:14
302:11,12,15,16
305:22
**finding** 11:13
103:17 120:25,25
279:12,14
**findings** 139:10
172:24 273:6
**fine** 39:18 59:24
131:16,23 164:25
197:25 203:10
287:6 304:20
315:21
**finger** 43:11 63:18
164:20
**firm** 5:13 35:21
56:19 100:24
101:17 102:20,23
161:11 170:18
190:23 193:3,19
210:16
**first** 7:13 18:17
20:14 21:14 24:19
40:21,23 42:13
43:22 45:8 46:4
49:22 51:9 55:6
63:3 73:12 74:19
78:14 79:13 80:1
81:12 82:15 83:4
84:5 107:22
136:23 163:13
177:16 180:15

183:9 187:5,9,10
187:17 200:23
206:13 239:11
247:11,23 263:3
264:17 273:22
279:15 285:2
293:22 306:3
311:10
**fit** 198:2
**fits** 100:6
**Fitzgerald** 284:4
**five** 7:9 40:5 87:25
90:6 150:24
187:23 188:5
203:19,23 284:20
287:21 288:14
301:5 314:12,23
**fix** 291:21
**flashed** 240:22
**Flattery** 252:17
**flesh** 35:18
**floor** 1:11 3:3 48:3
92:2 121:10
**flourish** 206:19
**fly** 235:16
**focused** 87:16
126:24 278:7
279:4
**focusing** 79:13
**folks** 36:5 179:11
200:19 229:11
235:15,23 240:3
292:7
**follow** 65:8 282:20
**following** 45:8 53:18
186:18 194:12
198:18 201:12
230:12
**follows** 84:21 193:10
**foot** 119:1 157:8
**footnote** 83:21,21
83:22 90:14
136:10,11 178:11
178:13 197:16
**foots** 192:9
**foray** 51:9
**forbearance** 42:4
**forced** 138:20,21
**foreclosed** 67:3
**foregoing** 319:5
**forest** 310:4,8,14
**forever** 265:25
**forget** 6:1 133:3
257:24 263:6
309:17

**forgive** 17:23 79:17
**forgot** 165:18 233:8
**form** 30:25 34:4,5
50:18 139:25
271:20 276:7
**formal** 45:7 82:6
**format** 15:1
**former** 69:14 104:1
**forms** 120:18
**formulation** 218:11
221:19
**forth** 83:1 270:25
271:20 319:8
**forum** 73:13
**forward** 27:18 37:6
37:9,14 52:17
59:24 76:16 94:15
146:3,19 222:18
223:3 224:19
226:16 240:19
256:2,15 260:9
265:8 282:9
295:15 297:23
298:19 305:15
**foster** 57:24
**fought** 74:5
**found** 62:25 104:2
104:18 105:12
106:11 113:25
121:4,6 123:23
126:1,7 127:11
128:11 129:13
130:12 137:6
138:16 146:9
155:23 156:16
158:18 159:6
161:16 167:12,13
172:18 175:7
176:1,23 199:4
204:22 233:15,16
235:17 259:20
276:19 278:9
279:6 289:22
294:12 296:18
297:8
**four** 6:5 20:13 29:21
41:2,2 43:20 90:2
196:22 235:10
**fourth** 7:8 20:24
**Fox** 25:17
**frame** 185:2 189:2
**framed** 232:3
**framing** 252:20
**frankly** 9:21 10:5
16:14 18:14 23:19

34:1 36:14 38:12
129:1 164:12
174:4 175:18
185:12 197:18
263:18 280:12
292:21 295:12
**fraud** 6:10 8:13 11:8
14:10 17:4 53:14
53:15,18 64:8
79:20 82:7,12,23
83:16 84:16,19,24
85:5,7,13 86:2
87:21 89:3,13,17
89:22,25 90:2
92:11,15 93:7,12
95:7 107:16
110:20 111:19,21
112:6,7 113:25
114:7 160:17,18
163:9 179:5
196:15,17 198:14
199:23 206:15,16
206:24 210:19
213:1,8 214:3,5
215:10,13,19,21
215:25 216:3
217:6,15 219:1,8
219:10,12,13,20
220:7,14 221:4
222:5,20 224:20
224:22,23,24,24
225:6,13,18 226:8
226:12,21 232:4
232:15,23 233:20
239:13 240:13
241:5 242:16,17
242:19,24 245:3,7
245:10,15 246:2,5
246:8 247:3,6,18
247:20 248:4,7,22
248:23 249:12
250:12 251:3
252:22 253:8,12
253:19,22 254:3,7
254:14,16 255:6
255:15,16,17,18
259:18,20,22,23
260:3 261:17
262:16,18,19,20
262:22 263:25
264:1 268:16
271:3 296:25
297:25 299:24
302:10,11,12,15
303:3 309:18,23

311:16 313:17,19
313:21 314:6
315:14,17
**fraudulent** 89:23
92:20 112:21,22
113:9 142:1
148:23 161:14
**free** 142:25
**freely** 56:21
**freeze** 114:1
**Friday** 1:8 21:3,7
**front** 14:13 76:7
118:24 224:25
227:6,20 255:9
283:4 309:5 310:7
**Fuentes'** 77:3
**full** 41:11 100:1
122:5 141:7
144:17 270:18
278:22
**fully** 38:24 207:12
208:16 263:11
**function** 14:15
**functional** 314:1
**fundamental** 70:16
70:21 212:18
242:14 255:8
279:8
**fundamentally**
311:11
**further** 16:3 28:23
40:12 153:8
227:13,14 230:15
287:13,16 288:6
305:6 319:9
**furtherance** 84:18
86:2 87:2 90:1
91:4 93:13 94:2
94:11,13 95:7,15
97:2,22,24 98:3
98:14,19,23 102:4
210:19 213:1,2,8
213:16,18,22,23
214:1,8,11,15,17
214:19 215:7,8,13
215:21 216:11,15
216:16 217:21,22
218:2,6,10,17,24
219:19,23 220:7
220:13 221:9,13
221:16,19 222:13
222:23 223:5,6,13
225:17 240:12
241:5 247:17,19
255:18 260:21

USDC, District of NJ          Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD          Special Master Conference          February 23, 2018

Page 333

262:20 280:23
306:13 307:5,8
**furthering** 248:3,7
**futile** 47:2 296:14
**future** 23:6 76:21
171:16 215:24
256:15 257:19

_____

**G**

**G-A-L-E** 6:24
**GAF** 116:8
**Gale** 6:24,25 7:1,11
7:15 8:1,11,14
9:11 10:17 11:1
11:12 15:12 18:4
127:3,8 128:10
137:1,3,4,5
172:13,17 244:6
257:5 299:4
**Gale's** 7:7 172:14,22
**game** 35:11 38:10
**gap** 251:12
**gate** 99:11,14
**gather** 142:2
**gathering** 140:22
**gauge** 38:2
**Gee** 182:13
**Gene** 4:21
**general** 59:22 78:22
96:15,16,18 116:8
150:22 166:24
176:20 211:17
**generally** 53:24
296:2,4
**generated** 121:2
**geologist** 11:12
138:8
**Georgia** 11:1 127:8
127:9 128:11
**gestae** 97:8
**getting** 10:14 22:12
39:12 41:10 50:10
60:17 61:9 79:23
104:3 134:25
165:10 166:3
237:21 250:24
289:24 304:1
**gibberish** 211:7
**gird** 73:19
**give** 35:6 39:5 62:12
62:14 66:7,18
69:7 74:3 88:24
112:7 115:24
134:8 146:21,25
154:4 164:17

167:4 192:8
215:23 227:20
229:9,9 235:15
253:25 281:20
282:3 287:1
298:24 301:24
309:6 313:2
**given** 12:12 14:12
17:6 27:7 50:18
63:16,21 80:2
102:11 121:12
124:18,20 133:5
144:8 154:3
184:18 199:25
200:2,5,8 211:3
229:21 283:8
298:21 313:20,24
**gives** 43:23 51:3
214:24
**giving** 55:11 64:3
71:11 73:16 182:9
211:24 277:20
**glad** 164:13 211:8
277:17
**Glassley** 138:7,8,11
138:12 139:15
140:18,23,24
156:8,8,15,25
157:20 163:3
188:22 189:1,16
244:6
**Glassley's** 139:6,6
**Glenn** 128:10
130:15 136:15
**go** 19:4 23:9 27:18
27:20 28:23 41:21
51:18 56:22 57:5
63:1 69:5 81:12
94:16 99:11
109:11 110:6
115:14 120:12
128:15 136:1
142:18 143:17,20
145:24 151:6
153:7 168:10,20
168:21 169:12,22
171:22 172:5,10
190:1 195:23
200:5,6 207:1
216:9 220:9
225:24 227:8
228:10 231:7
260:2 282:9
288:12 291:22
295:14 297:22

300:2 307:15
308:3 309:10,19
311:4 314:2,11
317:11
**go-around** 78:15
**goes** 13:1 17:5 77:7
115:3 168:9
195:10 217:9
230:16 247:16
257:18 258:2
268:21 289:6,7
**going** 4:9 6:14 7:19
12:1 13:5,25 17:6
17:9,10 23:7 24:8
24:11 29:13 33:1
33:8,16 34:10,12
34:18 35:18 36:9
37:6,9,13 38:14
38:18,21,21 39:24
39:25 40:3,7,9
41:23 44:18 47:22
47:23,25 48:8,18
49:1,24 51:12,16
52:11,18 53:4,17
54:17,18,19 55:22
57:19 58:12 59:11
59:16,18,20,23
60:2,8,12 61:14
62:11 63:19 65:4
66:6,7,15,20,25
67:2,2 68:21,23
74:7,11 76:16
77:13 78:2 80:9
80:25 81:13 83:24
84:12 87:23 92:15
94:15 98:8 104:19
111:24 114:23,25
116:12 120:12
124:10 125:20
126:22 136:20
140:9,18,20
142:18 144:21
145:3,20 146:18
147:19 148:8
149:13,15 153:21
154:4 156:15
159:1 163:1
165:20 171:16
186:23 187:1
194:25 202:9,18
202:24 203:18
204:2,11,12,15
205:6 206:1,5,6,7
207:16,17 210:12
210:16 211:11,22

219:2 223:24
224:14,16 225:16
225:24 226:13
227:13,14 230:1,4
235:15,17,19
236:8,18,19,20,24
237:3 238:2,5
242:2 246:24
252:21 253:6,11
256:15 261:12,13
265:23,24 269:15
270:16 280:20
281:17,18 282:1
282:23,25 283:8
283:24 286:5,14
286:25 287:8,11
288:16 289:13
290:15 291:22,23
293:15 296:5
298:10 299:15
300:12 301:1
305:8,19 307:18
308:25 309:3
311:4,7 312:23
313:25 314:2
315:3,10,18,25
316:2,21 317:19
317:20
**good** 4:1 5:24,25
7:16 13:15,17
18:19 33:14 34:6
34:9 38:20 48:2
55:2 84:6 102:24
107:24 108:6
110:10 121:15
122:10 132:4,20
137:10 172:7
174:24 179:16
180:17,19,25
187:21 195:19
212:12 220:5
224:6 231:4 234:9
235:3 250:3 259:3
272:16 285:2
288:8 296:19
**Goodrich** 116:8
279:3
**Gordon** 2:19 46:15
64:9,10 68:15
103:8 157:23
158:15 161:12
163:25 166:3,6
187:25 188:9,11
188:16 192:25
194:5 248:8,24

292:7,17
**Gordon's** 161:16
**gosh-darn** 52:9
64:16
**gospel** 123:13
**gotten** 163:20
**governed** 92:16
**governing** 86:12
**government** 116:25
117:2 119:21
272:14 278:25
279:13
**governmental** 67:14
**governs** 240:14
**Graham** 150:21
151:12
**grain** 304:11
**Grand** 110:9 215:16
216:6
**grant** 17:10
**granted** 18:4 80:22
88:13 91:15
**granting** 91:9
**great** 105:17 112:10
112:10,11 142:18
169:12 205:21
212:4 262:8 286:2
294:5 295:8,9
**greater** 225:20
**Grimm** 162:17,20
162:24 163:3,25
164:1
**ground** 312:23
**Groundhog** 47:18
**groundhog's** 48:5
**guaranteed** 86:21
**guess** 40:11 73:18
74:7,11 98:16
191:25 229:23
230:10 243:18
317:24
**guidance** 167:3
282:21
**guide** 107:9
**guided** 281:13
**guilty** 297:1
**gun** 138:23 300:16
**Gunther's** 276:22
**Gussack** 2:17 5:6,6
72:7,11 171:11
235:5,8,13,22,24
238:4,7,8,10,13
288:3,4,9 314:17
314:19 316:9
318:18,19

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 334

| | | | | |
|---|---|---|---|---|
| **guys** 19:3 41:3 81:5 212:6 241:13 | 174:9,11 229:8,9 236:16 269:7 306:8 | **helpful** 17:7 45:18 227:20 | 32:18 37:17,18 39:15 | 214:12,23 215:15 216:8 218:8 219:3 220:8,11,16,22 |

guys 19:3 41:3 81:5
212:6 241:13

**H**

H 2:16
hair 132:4
half 133:13 276:23
279:6
Halket 3:8 5:19 57:5
57:9,9 59:21
87:12,14,17 90:11
Hall 203:11
HAMILTON 2:14
hand 8:12 103:15
178:21
handed 159:24
handle 137:23
204:13
handled 180:8
292:2 295:4
311:23
handling 194:16
hands 41:4 156:9
handy 118:15
hang 197:21,23
happen 54:14
137:21 228:19
happened 10:21
13:2 22:5,10
31:23 32:18 49:10
52:24 64:6,13,17
94:23 96:22
104:22 113:12
114:2 127:5
129:12,17 137:21
138:1 139:5
141:14,25 156:22
157:19 158:14,15
174:5 243:4 249:4
290:6,24 295:16
299:7
happening 94:14
97:6 102:22
140:24
happens 47:19
54:25 120:20
135:9 137:12,23
140:2 142:17
155:20 156:6
157:18 255:9
270:9
happy 6:8 13:7,9
65:6 115:24 161:4
163:24 166:20
167:3 169:13,15

174:9,11 229:8,9
236:16 269:7
306:8
hard 9:22 31:22
77:15 115:20
125:20 140:7
200:21 203:22
258:16 263:5
292:10 293:16
310:17
harder 185:22
harm 62:11
Harry 2:5 4:18
Hassett 166:7,14,17
166:23 245:19,20
hat 197:22,23
hate 11:17 97:9
317:13
he'll 204:16
head 11:12 81:1
123:2 127:2
138:23 310:25
headed 80:14
heads 73:18
heads-up 73:16
235:15
health 125:10
131:16,17,19,22
hear 17:9 38:6 74:7
124:16 161:7
237:5 285:23
304:17
heard 18:18 55:25
59:3 181:25
213:11 219:9
224:17 232:4
235:25 236:6
237:25 262:17
283:19 306:17
hearing 15:17 81:2
81:21 83:17 90:7
194:14 209:19
211:18,21 263:17
hearings 85:13
heart 14:3 16:17
heavy 165:20
held 74:22
help 17:21 23:2
27:16 39:12 41:18
57:19,21 70:24
94:8 95:17 157:8
191:24 204:19
228:6 238:16
267:13 269:15
helped 105:19

helpful 17:7 45:18
227:20
helping 61:17
helps 16:3,9 57:22
61:16 78:21
Hemstock 9:10
10:18,18 128:11
130:15,25 135:22
136:5,15,23
142:11 145:17
151:16 152:7
156:9 169:18
171:21 173:22
226:18 244:5,5
257:4 277:12
278:15 299:4
Hemstock's 123:1
140:16 168:23
278:6
hereinbefore 319:8
HEROLD 3:6
herring 278:14
hey 54:19 56:24
241:13,24 296:16
300:11
Hickok 2:17 5:5,5
hide 39:10 241:25
high 101:4
higher 274:11
highlight 120:13
265:4,6 268:3
highlighted 76:5
90:23 169:19
196:16 198:17
266:20 268:11
highly 122:2,8,12
196:24 197:4
275:1
Hill 1:16
hills 258:4
hire 142:21 294:24
295:17
hired 138:8
hires 156:8
hit 264:15
hither 60:22
hoc 195:25,25
hold 77:13 204:3
238:13 271:15
272:25 318:12
holding 211:18,21
270:8,11
holds 55:14,16
holiday 25:9
Holley 25:6,7 29:23

32:18 37:17,18
39:15
home 4:2 105:16
311:4 314:2
honest 34:24 193:4
283:23
honestly 38:5 55:6
208:16
honor 5:17,24 7:21
13:13 16:20,23
18:7,24 21:18,24
22:6 24:10 25:12
26:3 27:10,17
28:21 29:22 30:11
32:4 33:4,24
34:22 36:12 37:15
39:14,23 40:19,20
41:7,11,20 47:21
48:4,23 49:3,6,25
50:23 52:1 53:2
54:18 55:3,18
56:5,14,23 59:9
60:15 61:1,5,22
62:22 65:1,12,14
65:15 66:10 67:6
68:7 69:12,15,19
70:20,25 71:13,21
71:25 72:4,7,14
74:15,17 75:1,11
75:16 76:7,13
77:5,18,20 78:6
78:12,19,23 81:22
81:24 92:3 93:8
97:8 99:2,9 100:5
101:14 102:1
113:6 114:18
118:12,23 119:20
123:14 131:10,18
144:9 147:25
150:6 154:2
157:15 161:5,8
162:11 163:1,21
170:13,19 171:13
177:15,19 179:9
183:5 186:18
188:9 190:9,16,20
190:24 192:18
195:5 196:3 202:6
202:23 203:5,13
203:16 204:12
205:5 206:9 207:3
207:9,13,21
209:10,17 210:17
211:14,16 212:16
212:18 213:20

214:12,23 215:15
216:8 218:8 219:3
220:8,11,16,22
221:25 222:9,15
226:14 227:6,12
227:15 228:8,19
228:20 229:24
230:10 231:10,15
231:20 233:1
234:11,24 235:5
236:2,7 237:13,20
237:24 238:4,7,11
238:18,23 239:11
239:16 240:8,18
241:7,17 242:13
244:25 245:6,12
245:13,21,25
246:3,16 247:1,16
248:14,19,24
251:2,7,16 252:16
253:10,19 254:12
254:21 255:5,10
255:11 256:25
259:17 261:11,20
262:2,10 263:3,14
263:22 264:2,13
264:20 265:23
266:11 268:1
269:7 270:4,17
271:17 275:3,5
276:2 277:18
278:2 279:24
280:14,18 282:7
283:5,8,12,23
284:13,19 286:9
286:12 288:4
297:2 299:23
301:4 305:19
306:2,5,21 308:4
308:17 309:14,17
309:19 311:9,15
311:25 312:13
315:17 316:18
317:1,18,20,23
318:10,13,17,19
Honor's 15:4 24:20
33:18 227:5 239:5
275:9 282:20
honors 204:10
hope 22:9 39:3
40:11 102:12
261:2 262:8 313:9
hopefully 56:15
282:24
hoping 39:19

USDC, District of NJ

C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.

Special Master Conference

Friday

February 23, 2018

Page 335

**horse** 226:2 308:15
**hot** 165:19
**hotel** 131:6,9
**hour** 284:5
**hours** 82:1 198:10
    259:10 284:20
**house** 147:17,20
**housekeeping**
    316:12
**hug** 314:2,5
**huge** 313:22
**hundred** 192:15
    234:23 270:7
**hundreds** 9:25
    143:6 220:1
**hurt** 95:18,19
**hurts** 16:9
**hypo** 243:2,2
**hypothetically**
    243:4

**I**

**ID** 295:8
**idea** 6:13 35:2
    288:21 289:11
**identification**
    178:13 209:21
    248:6
**identified** 7:11 40:5
    183:6,9,25 218:2
    226:8,12,24
    232:16 233:11
    307:3
**identify** 30:16 46:9
    51:21 86:1,7
    107:3 161:13
    178:4,6 183:23,25
    184:22 185:6
    186:2,9 209:23
    212:25 239:12
    247:17 253:13
    262:25 309:9
**identifying** 209:12
    210:4 223:9
    263:22
**idiot** 310:16,17,19
**ignored** 11:22
**illuminate** 78:21
**illumination** 79:24
**illustrates** 263:15
    265:17 268:7
    272:7
**image** 190:8,9
**immediately** 267:21
**impact** 89:23

**impacted** 236:21
**impacts** 298:12
**impasse** 36:7 39:3
**impediment** 58:2
    315:6
**implicitly** 90:15
**implies** 94:14
**import** 15:23 208:9
**importance** 304:10
**important** 81:11
    101:1 102:15
    167:17 172:21
    204:7 213:5 230:6
    234:2 261:20
    262:6 263:13,15
    281:7,9 284:22
    298:25
**importantly** 124:6
**imposed** 9:23
    171:13
**imposition** 258:15
**impossible** 122:9,11
    244:15 275:2
    309:11
**impound** 91:11
**impounded** 182:8
    182:11,12
**impounding** 184:11
**impounds** 182:7
**impressed** 21:9
**improper** 7:14
    13:24 14:4,5,6
    16:4,16 34:2,4
    90:21 230:3 250:5
**improperly** 15:16
**impropriety** 250:17
**impugn** 32:10
**in-house** 166:3,8,15
    188:3 216:19,25
    217:14 219:7
    241:18,20 245:19
**inadvertently** 217:1
    253:16
**inartful** 30:18,21
**incentive** 68:17
**inclination** 281:15
    285:18
**include** 11:22 213:6
    213:6 227:15
    287:25
**included** 14:12
    16:12,14 201:5
    274:17 276:21
**includes** 113:9,11
    177:24

**including** 83:10
    181:9 214:25
    258:7 301:18
**incompatible** 221:9
**incomplete** 168:16
**inconsistent** 217:10
**incorrect** 86:13
    99:12 244:8
    253:22
**incredibly** 211:1
**indemnification**
    42:3
**indemnity** 62:21,22
**Independence** 3:6
**independent** 105:8
    173:16 175:20
**independently**
    101:18 138:5
**indicated** 7:25 9:14
    12:21,25 178:3
**indication** 214:24
**indicting** 208:24
**individual** 245:16
**indulgent** 244:23
**industries** 116:22
**infer** 165:21 194:4,8
**inference** 165:23
    192:18,20,24,24
    193:2,6,9 194:9
    194:12 263:23
    264:3
**inferences** 83:11
    192:12 254:1
    268:8 279:25
**influence** 43:15
**inform** 280:11
**information** 9:10,20
    10:15 12:4 14:10
    26:15 29:2,9
    57:13,18 83:11
    85:15 94:25 95:1
    95:1,3,6 96:19
    97:18,20 104:3
    110:2,18 114:4
    121:13 127:10
    135:10 137:13
    140:17 141:20,21
    142:3 145:4 157:9
    175:14 176:22
    177:25,25 178:24
    182:22 196:25
    198:19 199:17
    217:8 243:8
    250:13 256:13,17
    256:20 257:18

    258:22 287:25
    293:13 294:17
    301:15,17 302:17
    312:2
**informed** 79:1
    298:20
**inherited** 207:24
**initial** 8:5,12,25
    22:3 63:10
**initially** 161:18
    181:4 183:17,23
**injury** 53:20
**innocuous** 192:15
**input** 54:1
**inquiries** 260:6
**inquiry** 111:24
    197:8,9 225:2
    294:16,17
**inside** 9:2 11:20
    133:10
**insignificant** 111:2
    173:19 175:5
    299:2,5
**insistence** 10:19
**inspection** 45:1
**instance** 49:22
    163:17 164:23
**instances** 25:20
    276:10
**institutional** 292:20
**institutionalized**
    292:10
**instruct** 34:1
**instruction** 79:3
**instructions** 243:7
**insulted** 171:10
**insurance** 120:14
    149:20
**integrity** 102:14
    298:12
**intend** 45:25
**intended** 164:20
    219:18 221:15
    242:21 245:10
    247:3 253:7,11,21
    254:6 255:6
**intending** 84:16
    92:10 198:14
    216:2 251:4
**intends** 65:20
    255:19
**intent** 86:6 89:23
    103:7,8,10,12
    111:20 115:4
    141:9 213:9

    218:25 245:4
    247:18 249:7
    253:4 254:17,20
    254:23,24 260:9
    288:22 289:6,6,7
    289:12 302:16
    303:14
**intentionally** 15:15
    313:5
**interest** 36:15,19
    265:22
**interested** 319:13
**interesting** 127:17
    130:3,9 157:1
    289:18
**interfering** 22:25
**interim** 283:7
**interlocutory**
    104:11
**internal** 241:9
**interposed** 28:10
**interpret** 167:18
**interpretation**
    223:22,23 259:14
**interpreted** 95:23
    95:24 99:6 102:7
**interpreting** 216:7
    216:10 223:18
**interprets** 70:4
**interrogatories**
    94:24 96:17,20
    148:1 150:23
    156:18 166:21,25
    176:22 192:3
    195:7
**interrogatory**
    150:12,19,22
**interrupt** 119:24
    192:7 230:21
    232:7
**intervened** 209:16
**intervention** 23:20
    25:9
**interviewed** 196:23
**introduction** 107:6
    263:4 277:20
**intrude** 293:18
**intrusive** 83:12
**investigation** 174:6
    258:3
**invitation** 202:19
**invited** 112:2
    174:13
**invoking** 44:12
**involve** 67:7

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                          Friday
C.A. No. 2:11-cv-01754-JLL-JAD            Special Master Conference                             February 23, 2018

Page 336

**involved** 96:1 114:7
  164:21 206:23
  248:3,7,21 249:3
  249:22 250:1
  262:18 283:13
  285:25
**involves** 84:3
**iota** 59:13
**Iron** 176:2
**Ironstone** 1:23
**irrelevant** 96:4
  252:1
**Island** 135:16
  155:21 156:1,3
  257:23
**isolated** 293:24
**issue** 16:11 18:8,20
  26:9,19,22 30:1
  30:17 32:22 35:19
  36:11 40:7 44:23
  45:22 51:11,14
  62:23 64:10 70:14
  75:2 76:13,17,20
  76:24 80:25 83:8
  85:3 88:21 89:12
  100:23 107:13
  111:13,15,22
  112:5,10,10,11,11
  113:10,11 119:19
  120:8 123:25
  157:2,7 158:9,11
  165:1,3,13 174:22
  175:20 177:25
  179:2 181:10
  184:12 195:15
  196:24 209:10
  216:23 227:5
  231:22 232:2
  238:18 248:12,15
  249:7 252:2 255:8
  256:16 262:13,21
  263:7 267:9
  271:17 272:22
  276:25 277:1
  278:1 279:22,24
  281:18 284:24
  287:25 288:17,18
  288:20 289:8
  303:9 307:3
  314:21
**issued** 91:9 267:15
**issues** 14:23 23:22
  24:3,23 25:13
  26:8 40:2,4,8
  41:12 51:13 60:11

75:23 78:21
  111:19 168:13
  189:7 204:13
  263:16 281:7,9
  284:22 289:23
  297:13 302:11
  305:7 316:21
**item** 91:6 161:22
**items** 6:4,6,11,15
  316:10
**iteration** 208:25
**iterations** 206:25

**J**

**J** 1:12 2:23 319:4,18
**jackpot** 260:4
**January** 42:11 45:2
  85:20 87:5,10
  209:18
**Jared** 2:6 4:14,14
  12:15 157:12,15
  159:8 178:15
  190:8,12,15,20,24
  202:11,23 203:2,4
  203:8,13 204:19
  266:24 300:25
  301:3 317:22
  318:1,10,13
**Jedlowski** 92:23
  94:23,23 95:4,23
  95:25 96:1,21,23
  167:1
**Jeff** 25:17
**Jeffrey** 5:23 190:22
**Jersey** 1:1,24 36:16
  43:22 44:15,17
  46:2 48:13 50:17
  53:1 57:17 65:23
  66:17 67:17 69:20
  69:24,25 73:4,6
  73:24 74:1,20,22
  75:2,21,22 76:23
  82:17,18,25 89:2
  91:9,23 92:14,22
  93:7 94:22 95:5
  97:15 102:3,4
  105:12 112:23
  114:22 156:19
  198:15 213:17
  214:21 215:5,9
  216:7,10,10
  218:12 220:2,21
  221:5,8,19,21
  222:2,7,8 281:21
  306:16,22 307:14

**Jersey's** 73:11 89:24
**job** 23:5 54:23
  212:11 244:14
  313:7
**John** 3:11 5:20
  243:6 257:13
**Johnson** 7:5 8:3,3
  10:12,12 15:8,8
  18:13,13 90:17
  115:6 142:22,22
  142:25 143:25,25
  169:11
**join** 288:4
**joined** 135:12
**joins** 87:8,15
**joint** 42:5 43:22
  47:7 70:2
**joked** 101:6
**Jones** 44:3 67:4,12
  68:19
**Joyce** 161:11
**judge** 26:3,21 60:12
  74:21 76:2 77:3
  83:9 92:18 93:1,1
  104:1,16 105:1,3
  105:13,14,25
  106:8,10 121:14
  150:15 151:4
  171:16 212:14
  233:5 282:2
  283:12,12 295:6
  302:4 307:21
  317:7
**judges** 103:25 165:8
  299:18
**Judging** 65:3
**judgment** 105:8
  112:3 121:17,19
  121:20 148:15,16
  148:20 151:10,11
  151:13 165:6
  174:13 179:16
  287:12 290:8
  297:22 298:9
**judicial** 317:3
**judicially** 317:6
**judicious** 154:4
**Juliet** 113:21
**July** 142:15
**jump** 51:10
**juncture** 36:7 40:12
**June** 114:18
**jurisdictions** 53:24
  53:25
**jury** 50:7,14,18,18

67:25 110:9
  215:16 216:6
  224:25 313:19
  314:1
**jury's** 50:19 59:20
**justice** 85:17 100:14
  100:18 104:2
  111:6 182:2
  209:24
**justifies** 15:5,18
  111:11
**justify** 12:8 64:2
**JUSTIN** 3:4

**K**

**keep** 9:22 132:4
  141:21 170:17
  178:20 265:23
  293:10 302:16
**keeping** 168:24
**keeps** 5:14
**Kempo** 188:9
**Kennedys** 78:2
**kept** 139:16 289:13
**key** 212:24 219:17
  220:12 239:10
  265:10 271:25
  277:1,8 285:8
**kick** 311:4
**kids** 212:5,7
**kill** 237:9
**KIMBERLEE** 1:3
**kind** 12:25 38:9
  41:4 61:10 66:2
  71:2 84:1 97:7
  116:5 137:19
  146:1 192:25
  195:25 200:20
  238:20 245:23
  260:24 264:12
  278:21 310:8,17
  310:18
**kindness** 204:14
**kinds** 165:16
**Kirkland** 2:9 40:22
  164:11,12,20
  179:8,11 205:16
  205:19 207:5
  211:15
**knew** 7:2 9:7 26:10
  55:22 56:8 94:25
  116:14,15 127:1
  145:5 155:24
  165:4 171:15
  194:5 207:10

232:19 245:16
  275:11 297:25
  298:25 299:11
**know** 5:14 17:20
  21:19 27:7,8,9,14
  27:21,22 29:3,11
  29:16,24 30:14,23
  32:1,14,23 33:19
  34:22 35:16 36:21
  37:23 38:1,8
  41:15 43:12,24
  44:8,16 47:5 48:7
  48:12,19 51:15
  53:9 54:20 55:2
  56:15,24 57:5
  58:6,11 59:10,15
  59:17 60:1 61:23
  62:20 63:7,18,19
  63:23 64:1 66:19
  66:22 70:12 74:5
  77:21 78:17 80:13
  101:16 102:15,21
  104:12,18 105:5
  105:23 107:6,7
  111:12 113:21
  119:3,11,13,17
  121:12,23 122:8
  122:14,23 124:14
  125:3,6 126:3
  128:10,25 129:8
  129:10,11 130:10
  132:20 133:5,8
  137:1 139:11,13
  140:6 141:3
  142:24 143:10
  145:11 149:11
  151:18 152:9
  153:16 154:13
  155:13 158:23
  159:1,4,5 162:23
  163:22 164:3,4,8
  164:11 165:19,25
  167:2 169:16
  171:11 174:3,4
  176:2,10 180:20
  180:21 182:12,13
  182:13 186:24
  193:12,15,17
  194:21 195:3
  196:9,25 198:6
  201:25 203:17
  209:25 211:4,25
  214:20,21 227:18
  227:24,24 234:4
  236:10 237:9,17

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 337

238:12,19 240:7
241:15,16 242:8
244:10 248:17
257:11,12,14
260:25 261:3,10
264:11,16 265:6
267:23 274:13
277:19 280:19
281:8 282:16
283:20,22 284:7,8
285:3 286:1,5,7
287:8 290:1
291:25 292:11
293:1,13,17
296:17 298:14,22
299:20 300:17,19
301:10,18 305:24
307:5,9 310:22
312:13 313:12
315:9,24 316:13
317:2 318:6
**knowing** 144:17
195:5 199:19
312:2
**knowledge** 42:22
149:4,5 150:5,7
155:7,11 292:20
**known** 14:18 26:17
116:10
**knows** 40:8 53:2
132:7 155:25
192:1 206:24
214:12
**Kozlov** 6:10 17:4
79:21 82:8,12,24
83:20,24 86:15,15
86:22 87:21 90:12
197:17,19 198:5

_____

**L**

**L** 2:17 162:18
**laboratories** 125:24
125:25 126:7
198:22
**laboratory** 128:23
**lack** 42:22 268:3
**lacks** 52:5
**Lake** 1:15
**landed** 257:22
**language** 53:8 54:5
56:8 94:8 102:6
108:8 119:4,23
161:25 162:6
215:6 218:14
221:12,20 268:13

275:14 278:2
307:18
**lap** 105:18
**laptop** 205:12
**large** 32:23 79:6
211:2 244:12
251:25 255:17
**largely** 88:22 91:1
244:2 278:13
315:5
**larger** 217:21
**late** 15:5 53:19
153:18 197:20
245:14 248:11,22
248:25 251:10
264:16
**Latta** 44:3 46:20
48:17 49:7,11,15
49:16 50:2,4 51:1
51:9 53:8 58:17
60:3
**law** 1:11 3:6 36:16
46:17 48:16 50:17
55:13,16 57:17
58:15,19 59:12
65:24 66:11,17
67:17 69:24,25
70:4 72:15 73:6,8
73:9,10,11,13,14
73:21,24,25 74:1
74:8,12,20,22
75:2,2,2,5,14,20
75:21,23,23,25
76:23 77:8,25
92:13,13,14,15,21
92:22 94:22 97:2
97:6,15 100:24,25
101:17 102:20
103:22 107:17
109:25 110:15
112:23 113:8
161:11 193:3
196:5 210:16
213:24 214:21
216:2 218:12
221:4,5 306:22
307:14 311:15
**lawsuit** 135:10,13
135:19 208:5
233:19
**lawsuits** 53:21 54:3
**lawyer** 17:15 34:9
45:22,23 94:24
96:2,3 101:6
122:4 153:4 155:2

155:22 156:6
158:25 164:1
186:13 193:18
195:11 235:2
241:12,13 245:19
248:3,6 298:14
313:3
**lawyer's** 308:23
**lawyer/client** 62:2,4
**lawyers** 9:5 18:19
25:15 34:7 39:18
45:17 52:8,9,14
52:23,24 54:9
165:4 171:23
172:7 199:3,4,6,7
199:9 203:23
208:25 219:1
248:21 249:21
250:1,1,11 255:12
262:18 263:19
285:2,22 312:22
315:9
**lay** 51:16 98:8 103:8
**layers** 14:6
**laying** 57:8
**lead** 44:14 207:8
208:3 228:2
**leading** 122:6
**leap** 195:18
**learned** 39:24 59:12
161:22 163:3
**learning** 281:6
**leave** 6:19,22 14:24
17:16 18:3 88:11
88:13,20 91:10,14
91:17 229:10
**leaving** 6:10
**led** 226:25 244:6
**leeway** 313:2
**left** 72:9 87:17 88:24
156:15 162:22
168:2 171:20
172:11 174:7
288:2 293:17
**lefthand** 266:23
**legacy** 207:19
**legal** 27:11,12,15
35:24 82:22 86:6
86:12 90:1 93:10
101:3 130:16,20
166:15 204:13
210:9,10,15
211:11 212:19
215:20,23 216:24
217:11,13 219:19

222:10 223:1,3
239:8 240:13
241:3 247:19
249:19 251:4
254:18,20 255:12
255:18 262:19,20
291:14
**legislature** 56:8
221:15
**legitimate** 57:23
83:5
**length** 17:23 122:1
**Lepore** 2:23 5:2,2
**lesson** 53:7
**let's** 4:5 36:8 41:22
49:15 50:2 60:7
94:18 172:10
204:7 225:4,11
227:8 231:6
247:11 248:2
255:13 300:2,2
**lethal** 89:24
**letter** 5:16 6:3,12,16
17:24 19:19 20:1
20:18 21:21 22:3
25:2 29:6 34:23
41:9 45:3 58:15
58:19 87:11
115:18 147:6,15
151:3 172:20
190:10,11,22
316:12,17
**letters** 146:21
147:24 165:7
166:4 199:9,10
258:11 290:10
299:17
**level** 109:11,13
111:10 123:24
143:19
**levels** 10:22,24
123:24 125:3,4,9
198:20 199:5
**liability** 42:17 57:10
68:2,3 254:13
**liable** 54:14 68:1
**lie** 95:8 96:25 97:4,4
219:11
**lies** 54:6 152:13
296:11
**life** 185:22 259:10
269:9 285:16
**light** 221:17 223:18
283:18
**lightning** 57:10

**likewise** 81:15
**limit** 56:9
**limitation** 88:16
**limitations** 264:24
271:19
**limited** 18:4 23:22
26:4 86:16 88:9
91:3 108:4 197:20
211:3
**Linares** 26:3,21
74:22 76:1 106:10
171:17 212:15
282:2 302:4
**Lincoln** 82:2
**line** 17:22 48:8
207:2 270:14
**lined** 38:18
**lines** 28:6 264:4
**link** 97:5
**list** 6:6 19:16 50:19
159:22 184:5,6,7
201:12 202:13,18
202:20 240:9
277:22 287:2
301:1 314:11,12
316:17
**listed** 9:3 29:6
186:12 200:12
201:10 241:18,20
**listen** 39:9 236:16
284:20 290:19
**listing** 19:20 88:1
169:21 210:17
**lists** 6:3 200:19
**literal** 128:17
313:21
**literally** 207:16
220:1
**litigant** 97:13
313:21
**litigants** 89:8 97:20
110:23 111:1
124:5 146:18
151:3 175:12,23
199:10 208:6
242:18 251:13
294:18 299:15
311:22 312:3
**litigate** 75:19
295:15
**litigated** 76:20
104:14
**litigating** 57:20
256:3 292:16
**litigation** 42:6 57:11
115:3 142:16

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 338

189:19 199:8
216:23 242:22,24
249:2 251:12
256:12 258:24
271:23 277:3
289:7,10 293:5,8
litigations 42:6
litigator 285:14
Litner 104:16
  105:14,14
little 4:10 11:15
  35:14 37:8 41:11
  41:23 44:18 80:6
  80:14 94:20 96:1
  117:24 126:10
  136:2 140:1 149:7
  153:18 166:12
  185:19 200:2
  204:21 229:11
  235:9 280:17
  281:24 288:16
  295:11,13 307:13
  311:1 313:2
Littleton 161:11
lively 318:22
living 131:4,6,8,11
  131:12,14,21
LLC 1:6 2:13,14,24
  3:2,4
LLP 1:14 2:9,19
local 24:6 45:4 47:1
  53:25 88:9 164:1
locate 12:16
log 157:5 158:16,20
  158:22 159:1
  160:8,10,20,21
  161:9,10,21,25
  162:5 163:7,12,18
  164:10 165:16
  179:23 180:5
  184:15 187:23
  189:17,22 196:14
  218:20 220:7
  241:1,17 248:11
  253:15 254:25
Logan 2:15
logged 253:17,18,18
logic 16:10 54:16
logical 165:23
  260:24
logs 240:21
long 7:16 25:9 27:20
  38:5 54:3 89:9
  114:24 181:19
  214:13 261:22

291:14
long-range 53:23
long-running
  246:16
longer 9:12 10:8
  25:10 106:16
  141:21 154:15,19
  162:2 202:20
  302:7
look 9:9 13:3 51:19
  62:12 63:11,25
  69:23 72:19 77:15
  93:6 94:3,16,22
  95:21 96:24 97:10
  97:16 102:8
  107:18 110:3,9,13
  113:23 114:6
  117:20,24 118:6
  118:19 121:5
  127:18 131:25
  132:3,18 143:16
  143:17 145:2
  146:4,24 153:4,12
  157:4 165:15,16
  175:23 176:4,25
  177:5 178:5,22
  180:3 181:7 182:5
  183:7,10,13,16
  184:13,21 187:23
  188:1 189:8,20
  191:1 192:11
  195:20,23 196:13
  199:16 200:1,7,12
  201:2 202:14
  208:10 214:6
  216:13,17 220:10
  220:15 221:14
  241:6 247:8,21
  260:17 264:7
  266:13 267:11
  269:18 270:5,22
  273:21 278:5
  282:3,17 285:22
  286:25 287:4,7
  295:1 296:17
  297:6,22 300:4,8
  300:23 302:22
  305:15 308:12
looked 48:14 104:17
  105:11 111:17
  118:11 122:10
  126:6 135:25
  172:16 177:3,6
  191:23 193:24
  194:24,25 268:24

277:21,23
looking 29:5 41:6
  61:24 70:23 92:12
  104:18 125:25
  140:4 172:23
  182:11 201:1
  202:8 243:22,23
  244:20 248:18
  267:21 307:7
  309:19
looks 250:3 270:15
  291:19
loose 269:6
Lord 39:6
loses 208:18
lost 295:17,17
  297:17 298:18,19
  299:22
lot 10:14,15 22:10
  65:11 76:6 78:14
  81:5,11 95:14
  102:22 111:24
  154:1,5 167:5
  174:8 189:13
  206:21,22 227:19
  236:20 239:1
  293:18 295:12
  297:3 303:7
  306:12
love 293:19
loves 55:23
low 111:9 125:11
  269:19 270:21
lower 109:17,19
lowest 109:13
lucid 288:9
luck 116:3
luxury 58:9
lying 217:2

_____ M _____

M 2:4,5,6,17 191:8
M-A-U-T-I 86:16
magic 274:8 278:3
Magistrate 93:1
magnification
  269:19 270:20
main 291:20
maintain 229:4,20
Major-Major 242:7
  307:3 309:7
majority 169:9
making 55:1 63:9
  97:17 107:19
  110:4 121:19,20

142:8 151:10,12
  151:14 154:6
  171:6 183:5
  202:15 230:12
  236:12 259:18
  298:2
malpractice 55:1
  56:9,10
man 308:19
man's 121:10,11
mandatory 104:10
manner 193:4 208:5
mantel 96:7
manufacturing
  126:20
maple 310:10
March 38:16
  129:24 135:22
  160:13,15 187:22
  208:2 236:3,4,5
  238:2 314:23
marginal 61:7
Marino 3:9 5:20
Mark 17:22
marked 18:5 201:19
  201:25
marker 40:1
Market 1:11 2:3
marketing 255:13
  255:21 271:21
  277:2
married 101:6
marshal 223:20
marshaled 223:17
  254:1 280:1,4
marshaling 250:19
  259:10
Martin 155:21,22
  156:20,23,24,25
  157:2,6,10,20
  158:19 189:16,18
  189:18 191:3
  218:21 257:25
  258:1
marvel 310:23
Massachusetts
  147:5 151:14
masse 85:19
massively 214:16
master 1:11,17 4:1
  4:9 5:12,22,25
  7:22 8:6,10,19,22
  9:17 11:25 12:3,6
  12:11,22 13:5,9
  13:15,25 14:8,21

16:7,18,21,24
  18:10,17,25 21:19
  22:7,11,14 24:13
  24:17 25:6,19,25
  26:13,18,21 27:14
  27:25 28:2,23
  29:18 30:2,5,12
  30:20,24 31:7,14
  31:18,21 32:1,5
  32:25 33:5,10
  34:3,9,16 35:1,6
  36:8,18 37:1,7,11
  37:16,18,22,25
  38:20 39:17 40:10
  40:24 41:15,21
  47:24 48:2,10,25
  49:4,14 50:1,9,13
  50:24 51:5,23
  52:12,19 54:8
  55:5 56:11,19
  57:1,11,16 58:14
  58:18 60:5,16,19
  61:2,14,25 62:3
  62:15 63:7 64:4
  64:20,23 65:5,8
  66:5,11,14 67:12
  69:3,13,20 70:23
  71:3,5,18,23 72:2
  72:5,8 73:2 74:16
  74:18 75:4,8,10
  75:12,18 76:4,10
  77:2,6,19 78:1,4
  78:10,24 81:4,9
  81:23,25 82:6
  85:18 87:8,13
  92:25 93:3,14,17
  93:21,24 94:1,5,7
  94:10,19 95:12,17
  95:25 96:11 97:9
  97:25 98:6,16,22
  98:25 99:8,13,17
  99:22,25 100:11
  100:17,20 101:9
  101:15,24 102:12
  103:3,11,15 104:5
  104:8,21,25 105:2
  105:9,13,24 106:4
  106:7,13,18 107:4
  107:9,12,21
  108:14,17,22
  109:2,19,24 110:6
  112:12,15 113:13
  113:17,20 114:9
  114:15 115:7,9,14
  115:17,20 116:1,5

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 340 of 358 PageID: 49117

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                Friday
C.A. No. 2:11-cv-01754-JLL-JAD                  Special Master Conference                February 23, 2018

Page 339

117:17,22 118:14
118:18,24 119:3,9
119:18 120:3,7
121:8,18 122:23
123:8,12,15 124:8
124:12,22,25
125:5,16,19 126:3
126:18 127:13
128:3,8,13,16
129:18,23 130:1,4
130:7,21,24 131:3
131:8,11,14,20,24
132:3 133:11,15
133:18,20,22
134:1,4,9,13,17
134:21,23 135:1,5
135:7,15 136:1,8
136:14,18,20
137:3,9,16,18,22
138:10,21,25
139:4,11,21 140:4
140:7,11 141:1,16
143:3,10 144:4,7
144:11 145:7,19
146:24 147:2,8,12
147:14,19 148:7
148:12,19,24
149:2,6,12,18,22
149:25 150:3,10
150:14,24 152:1
153:7,11,20,23
154:9,13,17,22
155:1,4,7,16
156:1,11,22 157:8
157:13,16,24
158:3,6,12 159:4
159:7,12,15,19,21
159:24 160:1,12
160:15,23 161:6
161:23 162:4,12
162:15,23 163:5
163:11,19 164:3,8
164:22 166:5,9,12
166:17 167:7,23
168:1,6,9,19
169:2,6,22 170:7
170:11,14,17,21
170:25 171:4,6,10
171:22 172:4,25
173:4 174:19
176:6 177:2,6,9
177:12,16,21
178:8,12,15,19
179:6,10,18,21,25
180:3,8,12,14,22

180:24 181:2,5,18
181:21 182:6,17
182:23 183:11,15
183:20 184:6,24
185:3,6,18,21,24
186:4,14,17,21,24
187:3,12 188:2,5
188:10,15 189:3
189:25 190:5,11
190:13,19,21,25
191:5,8,10,15,22
192:6,19,23
193:13,17 194:7
194:14,19 195:9
195:22 196:6,9
197:4 198:9
200:11,17 201:9
201:18,24 202:2,7
202:24 203:3,6,10
203:14,17 204:6,9
205:3,7,10,13,17
205:22 206:4,18
207:4,10,25 209:5
210:8,20 211:13
211:20,25 212:3
212:22 213:12,15
214:25 215:3
216:4,6 217:16,19
218:4 220:17,20
220:24 221:1,6
223:11 225:4,10
226:4,11 227:8,16
227:18 228:2,5,15
228:22,24 230:1,4
230:21 231:1,6,9
231:11,17,21
232:1,8,12 233:7
234:8,12,16,21
235:1,7,12,14
236:4,8,11,15,23
237:14,17,21
238:1,5,8,12,15
238:19 239:14,17
239:19 240:15
241:11,19,22
243:1,16 245:1
246:7,11,22
247:13 248:17
249:24 251:17
252:8,12,17 253:2
253:9,24 254:8,19
256:7,23 257:3
258:1 260:14
261:13,21,24
262:1,4,11 263:5

264:9,25 265:5,24
266:4,7,12,15,17
266:22,25 267:10
267:20 269:9,14
269:22 270:2,5,9
270:13 272:15
273:15,20 274:8
274:13 275:1,7,23
276:3 277:11,19
277:23 279:18,21
280:15 281:3,13
282:10,13,23
283:6,13,15,18
284:8,11,15,25
285:15 286:10,13
286:18,22 287:5,7
287:11,20,22
288:1,7,11,15,23
289:3,25 290:13
290:19,22 291:2
291:10,16 292:22
293:4,7,21 294:1
294:7 295:24
296:10 298:4
299:20 300:5,15
300:25 301:5
302:1 303:10,22
303:25 304:5,8
305:2,18,21,24
306:5,8,19,24
307:11,17,25
308:5,11,18,23
309:1 310:2,5,11
310:15,20 311:1,6
311:12 312:16,20
313:1,24 314:4,9
314:20 315:19,21
316:2,6,10,23
317:5,10,16,21,24
318:3,12,14,18,20
**material** 12:4 44:23
117:9,13,25
134:19 139:6,24
140:19 266:8
267:4,23
**materiality** 83:7
**materials** 13:23
15:20 18:12
274:18 277:2
278:10,17
**math** 134:11 278:12
278:16 279:15,18
**Matt** 5:2
**matter** 23:10,15
26:19 28:9,16

30:9 59:19 64:7
66:17 75:3 91:15
103:24 125:10
170:21 194:22
207:6 232:24
241:2 243:24
281:24 295:19
309:24
**matters** 89:21 91:21
122:7 165:25
214:16 234:5
**MATTHEW** 2:23
**mature** 71:20
**Mauti** 86:16,18
**MDL** 150:12
**mean** 6:1 11:25
12:22 26:2 32:8
59:7 93:17,19
112:24,25 119:24
120:3 122:9,14
127:13 128:13
129:19 132:22,23
132:23 133:2,4,7
138:10 159:19
169:12 176:6
185:19 192:14
197:2,5 211:4
215:7 224:25
241:11 260:4
264:23 265:9
266:7 280:8,10
292:17 303:8
**meaning** 48:15
134:23 213:2
275:2
**meaningful** 229:22
**meaningless** 192:15
**means** 36:1 109:15
113:1 121:24
122:13,24,25
123:2 126:4 206:6
213:4,22 214:18
214:19 215:8
218:9,17 221:13
229:5 298:7
**meant** 40:14 273:25
302:23
**measure** 7:17 32:23
**Medford** 1:24
**mediation** 20:21
**mediator** 283:12
**medical** 235:16
**medication** 282:4
**meet** 24:6 45:5 47:1
59:11 70:8 100:5

100:16 112:3
210:24 222:19
307:2
**meeting** 128:19,20
230:7
**meets** 99:10
**memo** 305:11,12
130:13,14 140:15
140:16 141:2,6,17
141:17 142:2,10
146:7 187:21,22
188:20,25 189:10
189:11 216:20,25
217:4,11,14 219:7
226:19 243:2
264:10,12,14
302:23
**memorandum**
130:2
**memory** 136:10
**memos** 188:2
**mention** 210:2
**mentioned** 174:2
**mentioning** 22:2
**mercies** 206:5
**merely** 214:4
255:20
**merit** 146:18
**merits** 15:25 38:5
91:17 281:18
**mesothelioma**
128:24 276:7
**Messrs** 19:20 23:13
**met** 84:21 89:1,20
223:8,10 260:1
308:7,10
**meters** 285:23
**method** 125:8
**methods** 289:20
**Michael** 2:5 4:16
166:7,13,23
**Michigan** 147:4
**microscope** 138:18
172:23 173:12
270:23 271:8
272:11 289:22
**microscopes** 270:21
294:4
**microscopy** 271:8
**middle** 33:13
238:20
**mill** 127:22
**MILLER** 3:2
**million** 121:14
134:13,14 277:14

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 340

**millions** 120:25 207:16
**mind** 76:11 88:16 152:10 153:23 235:21 293:10 297:1
**minds** 263:19
**mine** 7:5 10:16,17 10:20,23,24 11:5 11:11,13 90:17 101:6,8 115:6,11 126:13,14,17 127:1,2,11,12,14 129:14 138:9,12 138:13,14,16 140:20 142:25 143:15,23 169:11 186:7,7 277:8 299:9 307:21
**minerals** 268:14
**mining** 127:21
**minute** 203:19 231:2,7 235:11
**minutes** 21:25 111:13 135:21 198:10 209:11 287:19 288:14 311:8 313:16
**misarticulate** 223:1
**miscited** 178:9
**misconstrue** 86:12
**misery** 55:23
**misimpression** 97:13
**misleading** 34:5 145:15 166:13 184:19
**misled** 111:7
**misplaced** 305:25
**misread** 55:6
**misreading** 113:8
**misrepresentation** 110:22 181:11 184:20
**misrepresentations** 85:10 110:24 115:1,2,5 126:11 179:4 189:14,15 247:24 302:13 303:19
**missing** 86:7 157:11 167:10,11,14,16 169:1,8,10,11 174:9,17 177:14 226:25 301:24

302:2
**misspeaking** 168:13
**misspoke** 119:13
**misstatement** 242:23
**misstatements** 227:4 242:18,22 249:1,10 251:10 251:13
**misstating** 313:5
**mistake** 13:19,21 136:21 163:23
**mistaken** 149:16
**mistaking** 199:18
**misuse** 86:6 219:19 247:19 249:19 251:4 255:17
**misused** 255:12
**mix** 91:7
**model** 218:13
**modification** 22:15
**modify** 21:11
**moment** 66:12 87:23 99:23 117:18 230:22 235:6
**moments** 275:11
**Monday** 150:7 202:25 315:18 317:19,20
**money** 33:16
**Montalto** 2:23 5:4,4
**month** 39:22 210:5
**months** 81:5 140:3 140:14,15 263:9
**monumental** 273:9 274:1
**moot** 20:19
**Morey** 49:13 60:14 60:18
**Morey's** 44:3 50:2 51:11 60:19 67:4 67:13
**morning** 4:1 5:24,25 13:15,17 224:14 224:17 262:15,23 263:14,17,25 265:15
**mother** 32:15 34:23
**motion** 6:10,19,22 7:14 14:11,24 17:4,8,10 18:3 19:5 20:13 24:2 38:21 41:22,24,24 42:13 45:8,10

46:16 47:3,5 64:8 65:13 72:13 74:12 76:14,18 79:10 80:1,9,11 81:17 81:18 82:3,6,8,11 83:20 85:22 87:20 89:13 90:22 91:10 91:14,17 112:3 148:14,16,19 151:11 174:13 190:17 200:13 210:4 211:24 212:20,21 230:6 233:3 245:23 246:2,4,6,8,17,23 255:24 263:9,10 286:17,21 293:11 314:7 315:14
**motions** 6:5,9,14 21:7 151:10,13 165:6 192:4 286:3 290:8 303:3
**motive** 43:7 47:10
**Mountain** 176:2
**mouth** 308:22
**move** 39:21 140:9 298:19 305:15
**moves** 34:14
**movie** 47:20
**moving** 8:13 18:6 29:20 61:21 79:3 80:16 185:20
**MSDS** 116:25 118:3 118:6,13,24 119:8 119:14,23,25 249:13
**MSDSs** 118:11 119:10
**muddle** 205:3
**multiple** 10:24 111:10 120:18,20 163:16 175:6 198:22 267:17 294:11,11
**mutually** 33:5
**mystery** 163:20

**N**

**N** 6:24
**N.J** 83:1 86:17
**N.J.S.A** 92:11
**N.W** 2:9
**name** 113:18,22 130:7 140:16 142:12 257:24

**narrow** 78:17 86:19 99:14
**narrower** 99:11
**narrowly** 55:8 56:7 99:7
**nation's** 122:6
**national** 53:20
**native** 94:8 307:18
**nature** 28:7,20 29:9 29:11 31:3,9 229:7
**navigate** 25:12
**nearly** 89:7 318:2
**necessarily** 12:7 34:13 76:23 270:6 302:2
**necessary** 18:18 44:23 201:14 285:19 316:7
**necessity** 264:18
**need** 14:22 23:2,5 37:7,22 38:6 39:11 42:10 43:2 43:13 44:22 45:13 46:19,23 49:7 57:5 58:6,25 59:2 59:4,5 61:18,18 61:18 62:25 63:8 63:10,18 64:19 65:17 70:7,13 74:12 80:7 83:5 84:23 86:22 94:8 94:12 105:22 110:14 112:13 121:13 123:3 141:12 153:12,16 167:2 181:7 188:1 189:8 196:12,13 200:4 203:19 222:17 227:14 237:6,7,14 240:2 240:7,19 241:19 246:5,20 255:23 261:6,22 265:5 283:16 285:1,3 287:3,12,23 291:24 295:19 307:22 315:11 316:23 317:1,2 318:15
**needed** 43:18 79:7 91:19 131:22 246:19
**needs** 66:3 79:11 91:6 225:22

256:13 292:5 315:7
**negates** 89:3
**negative** 132:11 244:15,16
**negligence** 47:7 67:22 70:1
**negligent** 67:21
**neither** 21:21 319:9 319:11
**net** 38:4
**never** 52:17 53:2 78:5 81:13 111:17 119:10 124:17,20 126:12 129:16,22 164:20 174:2 178:18 183:6 188:16 191:17 192:4 209:3 233:10 242:9 256:14 289:21 297:3 301:10 303:17 304:13
**new** 1:1,24 2:20 36:16 43:22 44:15 44:17 46:2 47:4 48:13 50:17 53:1 57:17 65:23 66:17 67:17 69:20,24,25 73:4,6,11,24 74:1 74:20,22 75:2,21 75:22 76:22 82:17 82:18,25 88:1,2,5 88:6 89:2,24 91:9 91:23 92:14,22 93:7 94:22 95:5 97:15 102:3,4 105:12 112:22 114:22 127:22 148:8 149:21 156:19 198:15 213:17 214:21 215:5,9 216:7,10 216:10 218:12 220:2,21 221:5,8 221:19,21 222:2,7 222:8 267:16 275:21,21 280:22 281:21 283:3,3 306:16,22 307:14 314:11,12
**Newark** 3:3,3 203:12
**newer** 235:9
**newly** 275:17,18

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 342 of 358 PageID: 49119

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                    Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                    February 23, 2018

Page 341

**Newman** 92:18
**night** 17:19 203:12
**Nina** 2:17 5:6
**nine** 88:3
**NJ** 1:16 3:3,7,10
**Nobody's** 77:13
**nodding** 73:18
**nomenclature** 225:17
**non** 69:13
**non-disclosure** 26:14
**non-privileged** 232:17 240:18 245:22 246:25
**non-settling** 49:18 50:4,10
**nonsense** 175:8
**normal** 311:22
**normally** 19:6 112:25 128:3 281:22
**notation** 47:17
**note** 15:7 16:1 21:14 22:23 83:19 86:24 88:8,18 149:7 181:17 271:17 278:18 314:3
**notebook** 139:16
**notes** 11:3 65:9,11 138:19 139:9,16 140:24 156:13 172:22 173:1,5,9 173:11 174:6 319:7
**nothing's** 290:6
**notice** 15:6 60:9,21 66:8,19 67:15 68:9 69:8 70:19 74:3 257:9 315:3
**noticed** 229:11 264:20 266:19 278:21
**notified** 85:21
**notify** 70:7
**noting** 88:13
**notion** 88:16 102:3 102:19,23 174:20 206:23 289:11,15 306:25
**November** 7:24 8:4 10:2 14:11 15:11 82:9 207:7
**number** 6:21 7:12 11:6 19:7 20:3,12

28:5 39:4 46:14 46:24 82:10,10 84:24 85:20 87:5 87:10,18 106:21 120:24 121:14 127:24 128:4 141:18 143:11 163:13 176:11 185:9 186:14,19 188:25 189:17 200:20 201:19,21 207:2 210:22 211:3 220:12 225:14 239:21 258:11 263:7 269:5,5,11,12 271:13 272:7,24 274:9 277:25 281:12 285:22 312:12 313:13
**numbered** 239:20
**numbering** 20:17
**numbers** 118:6 184:7 240:10 267:11
**numerous** 115:23 152:12 166:1 198:19
**NY** 2:20

---

**O**

**o'clock** 17:19
**oak** 310:10
**oath** 130:19 166:25 181:14 191:20 193:10 199:3 297:8,12
**object** 30:18 31:4 32:9 34:5 57:25
**objected** 32:19 90:20
**objecting** 16:8 22:21
**objection** 13:19 14:3 14:25 16:17 20:1 24:5 30:25,25 32:16 33:25 34:18
**objections** 16:25 19:10,16,21 20:5 23:12 38:2,25 40:14
**objectively** 244:10
**objects** 90:24
**obligated** 172:8
**obligation** 18:22

50:20 65:25 68:8 68:16,25 69:4 70:18 71:9,14,16 71:19 108:3 302:5 302:8
**obligations** 230:7
**obliged** 253:24
**observed** 278:2
**obtained** 82:22 93:11,23 111:3
**obviated** 286:24
**obvious** 89:24 228:3
**obviously** 13:18 15:22 178:23 192:9 211:16,23 216:16
**occasionally** 270:10 270:21
**occasions** 9:2
**occur** 108:2
**occurred** 27:19 114:21 115:7 290:23 309:23
**occurring** 21:15,22 163:17
**Ocean** 97:3
**October** 19:7 42:1 80:8 81:3,4 135:13 263:4 266:24
**offensive** 253:22
**offering** 312:6
**offhand** 317:23
**office** 96:18,21 176:21 181:13 242:8,9
**OFFICER** 319:1
**offices** 1:11 156:4
**oh** 54:13 64:12,16 72:8 101:15 129:3 136:7,10 144:23 190:5 210:2 256:16 286:15 315:19
**Ohio** 150:21,23 151:10 153:2
**okay** 5:12 6:12,16 13:11 22:7,13 28:14 30:12 31:20 32:5 36:5 37:25 38:20 41:5,15 49:14 50:24,25 54:7 56:3,7 57:9 57:23 59:2,4 61:7 61:25 62:1,8,11

64:20 71:3,5 73:2 74:16 75:10,12,14 75:18 77:2,19 94:1 99:17,25 101:24 104:25 105:9 106:4,20 107:8 108:24 109:3,24 113:17 113:20 115:9,20 117:14,15,25 119:18 120:1 123:12 124:22 125:16 126:5 128:8 131:24 132:8 133:22 135:5,9 136:18 138:24 139:4,14 140:11,13 147:2 149:12 150:10 151:9 155:1,7 158:3 159:12,15 160:1 162:15 163:11,19 166:9 168:22 170:2,4,6 170:14 172:13 180:12 181:5,21 183:15 185:18 186:17 187:12 190:19,21,25 191:15 194:19 195:12 200:18 201:10,18 202:14 203:6,17 204:2 205:3,4 206:4 209:6 211:1,8 212:9,22 215:3 221:1 223:11 225:7 227:9 232:1 234:8 236:3,11,14 238:1,8,15,19 243:1,11 250:5,14 252:12 257:4,22 261:24 263:6 266:4,12,25 267:1 269:14 275:7 283:6 286:10,15 287:20 288:8 291:2,24 292:22 295:1 300:1,18 303:8 304:20 305:3 306:10 308:19 314:6,9,20 314:24 315:22 316:4,8,11 318:14 318:18

**old** 39:22 171:7
**omissions** 52:3
**omitted** 177:18
**once** 9:3 61:11 63:10 78:7 85:2 111:3,17 129:13 150:8 156:24 161:22
**one's** 73:14
**ones** 53:5 61:3 188:6 210:21
**ongoing** 10:1 160:18 165:24 194:5 245:7 289:10 315:6
**open** 313:20
**open-ended** 31:9
**opening** 14:17 83:22 218:1 226:17 308:22
**operate** 97:13
**operating** 79:4
**operation** 127:21 277:8
**operations** 141:10
**opinion** 75:7 77:3 77:16 92:23 144:22 182:2 281:22
**opinions** 74:23 105:19,20 146:3
**opportunity** 15:20 91:2 100:2 102:5 153:21 227:1,10 229:5,6,21,22 230:15 232:6 240:23 281:1 283:3 297:4,15,18 301:10 305:9
**opposed** 14:25 148:15 153:25 261:5
**opposing** 214:10
**opposite** 11:23 144:19 308:12
**opposition** 7:13 12:23,24 14:20 15:13,21 21:4 45:7 46:15 64:7 85:21,24 86:25 87:7,8,13,14,19 90:23 265:1
**option** 138:25 139:2 229:24 230:5 303:23

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 343 of 358 PageID: 49120

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 342

**oral** 316:1
**oranges** 296:18
**orchestrating**
    206:24
**Orden** 274:20 275:6
**Orden's** 276:22
**order** 6:8 18:12 19:8
    19:13,14 20:4,8
    23:24 32:22 33:8
    38:2 39:24 41:25
    42:2,25 59:6
    61:18 82:9 91:9
    91:22 96:24
    104:10 116:22
    121:13 132:25
    145:23 182:6,14
    182:23 183:24
    184:2,11 209:15
    209:16 223:16
    243:11 251:3
    258:21,25 281:23
    293:14 296:25
    308:13 309:4,10
    309:16,21 310:7
    317:2
**ordered** 9:17 19:12
    90:7 91:14 246:9
**ordering** 20:5
**orderly** 291:11
**ordinarily** 85:13
**ore** 7:5 127:13,15,16
    128:12
**organized** 5:14
**original** 7:23 20:17
    29:1 35:11 90:22
    167:10,21 168:2
    169:8,24 170:1,9
    178:3,6 197:16
    281:15
**originally** 135:12
    170:12 182:21
**originate** 289:12
**originated** 289:13
    289:16
**orphan** 237:11
**OSHA** 294:5,6
**Oulton** 168:23,24
**outline** 50:20
**outrageous** 245:11
**outright** 184:20
**outside** 125:24
    129:15,21 242:21
**outsider** 27:2
**outstanding** 207:23
**over-length** 17:17

88:12 91:10
**overall** 53:24
**overburden** 152:16
**overdue** 89:9
**overridden** 86:5
**overruling** 20:4
**overwhelming**
    89:22
**owe** 282:2
**Owens** 95:2

                P

**P** 1:17
**P-R-A-T-T-E-R**
    4:20
**P.C** 2:11
**p.m** 301:5 314:13,23
    318:23
**PA** 1:12 2:4,16
**package** 291:9
**packaged** 16:13
**Paduano** 160:3
    161:11 196:18,20
    253:15
**page** 28:6 47:17
    53:17 74:24 75:8
    77:7 83:23 86:23
    87:24,25 88:15,20
    90:24 118:5,25
    157:13 200:23,24
    209:20 229:10,14
    233:24 244:19
    267:22 269:15
    273:12,21,23
    282:22 304:22
    318:9
**pages** 8:24 9:25
    77:15 88:3,5,10
    88:12 177:10
    197:17 228:13
    233:5 234:15,17
    234:19 237:12
    238:9 282:24
    301:8 304:19
    314:22
**paid** 34:24 50:6,11
**pain** 23:9
**paper** 14:12 76:7
    146:25 153:12
    290:1 305:25
**papers** 16:2,12
    17:18 18:6 36:21
    80:17 91:25 92:1
    92:19 107:3,7
    121:3 230:19

263:10
**paragraph** 51:22
    119:5 190:16
    264:6,7 266:21
    268:11,12,20,20
    269:17 270:19
    274:19 275:6
**paralegal** 191:9
    193:18 194:20
    195:9 261:4
**paraphrasing** 212:6
**parcel** 61:9 290:24
**parenthetically**
    86:24 105:14
**parents** 237:10
**Park** 1:15
**parlance** 111:9
**parsimonious** 286:6
**part** 10:14 12:9
    19:12 61:9 70:10
    80:7 83:4 97:7
    98:13 107:19
    110:4 127:22
    129:23 138:22
    144:19 165:20
    195:11 200:25
    213:24 215:10
    220:9 227:15
    234:2 235:15
    238:24 246:18
    256:12 266:8
    267:8 268:1 272:4
    276:21 290:14,24
    291:8 302:16
    306:20
**parte** 63:11 84:10
    85:14 86:10 90:7
    108:2 224:8 240:4
    247:14
**PARTICIPANTS**
    3:1
**participate** 83:17
    85:16 90:6
**particles** 270:22
**particular** 61:7
    63:16 76:23
    100:19 192:14
    223:9 240:12
    241:4 274:5 275:9
**particularized**
    42:10 43:2,13
    44:22 45:13 46:19
    46:23 58:25 59:2
    59:4 61:17,18
    62:25 63:10 65:17

80:7
**particularly** 221:17
**parties** 18:23 23:17
    23:20 24:21 45:17
    59:10 75:19,24
    285:24 294:11
    300:10 319:11
**partner** 261:3 308:1
    308:1
**party** 18:14,20
    35:23 36:3 55:12
    65:20 67:20 68:2
    68:4,10,12,21
    83:5 85:6 106:13
    149:25 150:2
    250:1,2,4
**pass** 136:21
**passed** 215:9
**passes** 142:15
**passing** 181:16
**Pasternack** 2:7 4:7
    4:7,11,11 185:25
    205:7,9,12
**pattern** 49:21
    251:20 252:2
**pay** 236:9 288:7
**PC** 2:2 3:9
**PCM** 271:19
**peep** 55:25
**pen** 270:8,11
**pending** 21:7 91:11
    140:21,25 149:21
    157:6 189:4 191:3
**Pennsylvania** 47:20
**people** 33:19 51:16
    51:21,21 56:21
    58:1,1,10 63:17
    101:2 111:16
    119:11 121:19
    128:23 145:10
    160:6,7 194:5
    212:5 240:19
    245:16,22 246:25
    251:23,24 257:9
    257:10,13,14
    285:20 290:16,17
    290:23 291:13
    292:8 294:23
    296:16 298:18
    299:22 302:14,17
    302:25
**people's** 79:12
    299:16
**PEPPER** 2:14
**percent** 132:25

133:9,12,19,20
    270:7 274:3,6,11
**percentage** 59:21
**percentages** 50:20
    51:3
**perfect** 10:2,3
**perfectly** 35:3
**performed** 296:4
**performs** 295:25
    296:1
**period** 7:16 31:19
    32:11 87:16 116:9
    120:1 247:4,8,21
    247:23 248:15
    249:20 251:5,14
    252:23 260:23
    276:11
**periods** 241:10
    247:9
**permissible** 56:17
**permission** 285:5
**permitted** 95:20
    107:18 298:11
**perpetrating** 248:22
    249:22
**person** 110:11
    241:18,20
**personal** 53:20
    146:10 155:10
    176:15 181:13
**persons** 52:4
**perspective** 160:17
**perspectives** 313:6
**persuaded** 313:25
**persuasive** 103:18
**pertained** 139:17
**Peter** 2:10 4:24 6:24
    13:14 128:10
**phase** 271:8 272:11
**Philadelphia** 1:12
    2:4,16 4:3
**phone** 5:18 39:4
    204:5 243:6
**phonetic** 156:7
**photographs** 138:18
**phrase** 216:16
    222:13
**picked** 129:22
**pie** 78:10
**piece** 37:8 65:18
    156:14 239:3
    256:12 290:1
**pieces** 143:21 149:8
    200:3 265:21
**Pier** 44:4 50:2 51:11

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 343

60:19 67:4,13
**pierce** 55:12 208:13
250:7 258:25
**pierced** 197:6 201:3
**pike** 40:12
**pin** 310:25
**Pine** 2:20
**place** 22:1,3 126:19
142:3 156:2,4
195:6,8 252:3,4
298:12 319:7
**Placitella** 2:2,4,6 4:8
4:12,13,13,14,14
7:19,21,23 8:8,16
8:21 9:1,18 12:2,5
12:10,14,24 13:7
13:11 15:11,23
16:22,23 24:15,19
25:16 27:8 35:21
35:24 78:4,8 92:2
92:3 93:2,5,16,19
93:22,25 94:3,6,9
94:13,21 95:16,19
96:10,13 97:10
98:4,8,21,24 99:5
99:21 101:25
102:1,13 103:5,14
103:19 104:6,16
104:23 105:7,10
106:1,5,9,15,20
107:4,8,11,13
108:10,15,20,24
109:16,21,25
110:8 112:13
113:6,15,19,23
114:11,17,20
115:8,10,16,19,22
116:2,7 117:5,8
117:12,15 118:9
119:12,20,25
120:5,9 121:16
122:15,25 123:11
123:13,14,17
124:11,19,23
125:2,7,17,22
126:5,21 127:15
128:1,5,9,15,18
129:20,25 130:6,9
130:23 131:2,5,10
131:12,16,19,21
131:25 132:5
133:13,16,19,21
133:23 134:3,6,11
134:14,20,22,24
135:3,6,9,17

136:7,13,16,19,23
137:5,10,17,19,25
138:11,24 139:2,5
139:12,23 140:6,9
140:13 141:13,24
143:5,12 144:6,9
144:15 145:12,23
147:1,3,10,13,16
147:22 148:10,13
149:1,4,9,16
150:11,16 151:1,7
151:9 152:3 153:8
153:10,19,22
154:1,11,15,19,24
155:3,6,10,19
156:3,12,24
157:12,15,18
158:1,4,8,14
159:6,8,10,13,16
159:20,23,25
160:2,14,16 161:2
161:9,14 162:3,10
162:14,16 163:8
163:21 164:5,19
164:24 166:7,11
166:16,19 167:9
167:25 168:4,8,12
168:21 169:4,7,25
170:3,8,13,15,19
170:23 171:2,5,8
171:12 172:1,6
173:3,8 175:2
176:8 177:4,8,11
177:14,19,23
178:10,14,16,18
178:20 179:9,15
179:19,24 180:2,6
180:10,13,19,23
180:25 181:4,6,20
181:22 182:15,19
183:4,13,16,22
184:9 185:1,5,11
185:19,23 186:1,6
186:16,20,23
187:1,19 188:4,7
188:13,17 189:5
190:2,8,12,15,20
190:24 191:1,7,9
191:12,16,25
192:17,21 193:8
193:14 194:3,11
194:15,18 195:4
195:14 196:3,8,11
198:4,11 200:14
201:5,17,20 202:1

202:5,11,23 203:2
203:4,8,13,15,16
203:21 204:3,4,15
204:19,21 205:1
205:23 206:24
208:9,23 209:2,3
209:7,12,22
218:19 219:9
223:12 224:19
230:23,24 231:4
231:11,13 232:20
235:25 236:6,13
236:14,17 244:1
250:19 252:9,11
252:14,24 253:5
257:6,25 259:9
261:22,23,25
262:2,15 263:24
265:15,18,20
266:6,20,24
267:14 268:10,15
269:3,23 271:2,14
271:15 272:8,24
272:25 273:24
275:4,10 277:25
279:4 280:21
281:12 283:10
285:9,11 286:13
286:16,20,23
287:6,10,18,21,24
288:12,13,17
289:1,5 290:3,16
290:21 291:1,5,12
292:14,23 293:6,9
293:23 294:2,9
296:8 297:2 298:5
299:11,21 300:3,7
300:17 301:1,3,7
302:3 303:12,24
304:3,7,25 305:4
311:19 312:11
315:20,22 317:22
318:1,10,13
**Placitella's** 187:13
204:1,16 208:8
271:12 278:3
313:18
**plaintiff** 19:12,23
20:5,12 21:12
22:22 30:7 39:2
48:19,21 49:20
50:11,16,21 53:9
53:11 67:8 68:11
70:7 75:21 77:21
82:10 87:19 122:3

138:5 144:13
163:6 216:21
217:1 253:25
258:2,19
**plaintiff's** 67:22
122:4 155:22
158:17,25 159:3
160:5 257:24
**plaintiffs** 1:4 2:7 4:6
4:15,17,20 6:22
7:15,17 13:19
14:16 15:9,10,20
16:5 18:15 19:10
19:21 20:2 24:1,5
35:10,15,22 37:13
42:2,12,19 43:3
43:11,13,20,23
44:2,5,7 45:3 46:2
46:7,9,18,21,25
47:5 66:7 68:9,15
68:22,25 69:7
70:19 72:23 80:10
80:16 83:13,16
84:3,13,20,22
85:1,4,9,12,24
86:3,7,11 88:11
88:18,25 89:6,11
89:18 90:6,14
91:5 100:1 114:3
148:2 150:25
201:12 203:24
212:21 214:7
217:16 218:15
219:21,24 221:6,7
225:6,12 228:11
229:1 230:11
232:18 233:17
241:14 242:1,15
244:20 245:5
246:4,17,24
247:23 248:5
252:5 255:23
268:5 272:21
273:13 274:23
275:15 276:9
278:13 280:2,12
282:16 284:3,23
285:1 292:8
295:14,16
**plaintiffs'** 6:19 9:5
13:1 16:15 17:3
19:5 20:4 21:5
41:22 45:7,9
46:16,17 47:22
52:2 69:4,17

76:19 79:15 82:7
83:22 85:22 86:13
87:16,21 88:3,6
89:12 90:20,22
206:15 208:24
210:16 213:17
222:21 228:11
230:18 237:7
244:14 250:8
251:17 260:8,17
262:25 264:21
266:2 269:5
270:18 273:5,18
276:24 297:21
**plant** 133:6
**play** 78:5 82:3 304:6
304:9
**player** 61:7
**playing** 78:9
**plays** 203:11
**plead** 224:24 249:12
**please** 12:2 17:23
18:2 19:2 88:16
141:8 151:6 162:1
162:5 185:3
193:21 212:13
235:22 245:1
265:19 304:18
314:16 318:5
**pleasure** 81:23
**plenty** 174:15
**PLM** 294:4,4
**plugging** 265:25
**plus** 78:3 87:25 88:4
88:12 210:21
**point** 6:11 13:4 15:4
15:17 26:16 31:21
35:18 43:10 48:6
49:23 50:3 54:7,7
55:2 57:7 62:22
63:17 66:14 68:7
68:9 70:8 71:1,14
72:14 73:7 76:21
79:8 85:3 96:5
97:22,23 99:10
102:8 105:10
107:2 119:22
120:6 123:3,4,8,9
139:8 142:1
144:16,16 157:24
159:17 162:25
164:19 165:2
171:5,8 175:24
182:20 183:5
185:9 207:9

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 344

208:10 210:5,14
213:10 218:18
221:24 222:14
223:12,24 225:14
226:13,14,16
227:5 229:16,20
230:17 236:22
240:3 250:24
251:6,15 253:23
254:15 259:17
263:23 264:5,8
265:3,10 267:18
268:1 272:7 274:7
274:9 275:20
278:18 279:23
283:11 288:21
291:17 292:4,7,10
293:10 294:9
300:21 305:10
307:22 310:22
311:10 312:12
313:13,15
point-blank 293:19
point-by-point
224:15
pointed 241:7 244:4
269:17
pointedly 87:15
pointing 106:10
121:9 251:19
points 13:18 20:13
41:9,9 72:25
74:14 106:21,24
107:1 147:18
206:11 239:6,10
261:16 264:15
280:19 283:25
285:8 288:20
311:9
policies 141:23
Pollock 25:17
Poole 151:21 169:17
171:20
Poole's 154:9
pop 53:17
portion 168:5,7,15
168:16 205:25
247:14 273:2,4
277:8
position 25:14 59:16
65:22 76:16,19
80:2 81:14,16
154:10,17 200:15
216:24 217:11
230:10,11 245:6

positions 48:7 58:12
74:21
positive 132:11
158:9 244:17
positives 268:22
possession 96:19
142:8 179:3
301:18
possible 18:16 48:20
53:10 77:22 79:5
119:12 127:7
289:20 315:5
post 195:25
post-2009 160:3
posture 23:14 79:2
potential 68:20
potentially 177:18
poundage 133:24
pounds 133:9,17
134:12,18,19
277:15 278:19
279:10
power 185:9 270:21
powerful 268:24
practicable 66:12
practical 34:16 51:7
practice 100:25
101:17 251:20
252:3
practicing 171:3
Pratter 2:6 4:19,19
99:1,2,9,16 100:4
100:14,19 101:8
101:13,22 234:19
308:20,21,25
309:3 310:3,6,13
310:18,22 316:15
Pratter's 101:10
311:10
preambles 62:18
precedent 58:24
70:17 111:4
precedes 267:5
preceding 77:6
267:21
precision 309:10
prejudice 38:22
42:8 47:4 80:10
81:18 286:19
premature 46:11,18
65:23 72:24 80:3
premise 225:9
prepare 69:9 70:8
180:1
prepared 138:15

161:19 163:2
preparing 17:21
164:9
preponderance
83:10 86:4 107:23
108:5,19 109:4,14
174:23 197:10
199:21 208:12
224:4 225:21
250:9 259:3
presaging 124:9
presence 272:13
275:24
present 1:13 5:13
25:21 100:2,3
128:21 205:18
253:13 285:1,5
309:8
presentation 169:14
185:9 213:11
224:2,13 238:21
244:1 273:5
276:24 294:15
presented 30:8
89:12 244:21
250:22
presenting 12:9
185:8 205:16
presently 89:12
presents 6:25
preservation 187:25
189:11
preserve 67:1
106:11,14 171:13
171:18 174:17,21
303:11,12
preserved 139:7
141:10
preserving 76:13,25
press 19:11,21
pressing 116:3
pressure 132:17
262:11
pressured 132:13
presume 85:1
presuming 73:22
presumptively
17:17
pretty 9:21 19:3,3
25:2 38:18 92:13
97:3,15 120:7
130:17 132:1
137:23 187:14
196:8 209:12
250:18 292:21

prevail 303:5
prevailed 303:4
prevent 44:12
preview 53:16
previous 169:23
previously 76:5
pride 105:17
prima 84:7,9 85:25
89:2 90:5 92:6
104:2,17,19
105:12 107:15
108:1 110:3,18
174:16,20,22
179:4 195:24
197:11 199:23
200:6 208:11
210:18,23,23
220:9,11 222:17
223:1,10,14
225:12 226:1
228:10,21 230:13
230:18 232:15,23
234:3 239:2,8,23
240:6 243:15,17
243:18,23,24
247:2 255:4 259:2
259:19 282:8,14
298:2,3 299:23
300:21 302:9
303:1,16 305:14
306:22 307:2,23
308:7,10,14
309:15,22
primary 209:13
principal 54:10
principally 79:1
principles 73:8,10
73:12
print 318:5
prior 31:23 39:20
46:22 47:3 115:15
117:18 148:5
206:25 213:13
prism 244:21,23
privilege 20:2,15
24:24 25:13,22,24
26:23,25 27:1,4,5
28:10,18,22,25
29:17 30:22 31:1
31:5 32:10 33:14
35:12 36:2 38:25
40:14 44:13,15,17
45:15,20 46:13
47:12 55:13 56:6
62:2,4,14 79:22

82:12,16,21 83:2
83:3 84:2,10 85:5
86:5,20 87:21
90:15 93:9 99:6
112:20 157:4
158:16,20,21
159:1,22 160:8,10
160:20,21 161:9
161:10,21,25
162:5 163:7,12,18
164:10 165:16
174:25 179:12,23
180:5,17 181:3
184:15 187:23
189:17,21 196:14
197:5,5,13,25
201:3 202:17
208:14 211:5
218:20 220:7
241:1,17 248:11
250:8 253:15
254:25 259:1,25
privilege-holder
84:15 92:9 108:13
198:13
privileged 20:23
21:1 25:18 27:10
27:24 28:14,16
90:13 98:12
161:21 177:17
216:25 217:3
225:1 226:23
240:21 246:19,21
248:10 249:18
250:13 252:6
260:5 307:1,23
308:2,6,9,13
309:9 312:2
privileges 89:5
privy 85:15
probably 45:18
170:23 177:10,10
212:14 215:10
237:25 244:22
261:12 264:20
272:20 299:18
300:22
probative 43:6
44:13,21 47:11
problem 19:2 25:20
28:3 61:5 174:8
192:11,20 193:7
195:22 204:22
206:3 207:23
208:7 222:21

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 345

240:9 242:6,7
245:2 252:7,16,19
255:23 256:25
260:7,25 280:3
293:22
**problematical** 35:14
**problems** 132:12
262:24 268:7
**procedural** 16:25
23:14 79:2 92:15
92:21 206:11
209:9 210:14
**procedurally**
286:11
**procedure** 46:5
47:13 69:22 92:16
92:17 209:10
235:17 280:18,19
282:18
**proceed** 33:2 231:18
**proceeding** 185:15
313:21
**proceedings** 11:21
71:1 227:13
246:18
**process** 33:22 79:25
84:4,12 107:22
126:20 127:23
140:18,22,23
198:1,3 292:24
309:24
**processed** 274:5
**produce** 42:3 43:5
240:4
**produced** 7:10 15:9
15:10 18:13,15
44:25 79:20 83:15
85:18 90:3 163:8
165:3 170:9,10
172:17 187:7
217:1 219:4,6
253:19 256:5
**product** 84:18 89:4
117:3 126:15,16
126:16 158:21
160:10 164:15
179:13 274:4,25
276:6 277:3 295:8
**production** 8:3 10:1
15:8 42:15 44:10
47:15 90:12
127:12
**profession** 101:4
102:14 298:13
**professional** 296:2,5

**professor** 46:5
122:5
**prominence** 84:1
**prompted** 246:3
**promptly** 38:19
315:4
**prong** 86:22
**pronounce** 314:18
**proof** 47:10 77:23
85:3 89:25 108:18
108:19 109:3,3,6
109:8,14 143:22
223:3 244:13
256:19 257:1,4
258:12 264:18
267:14 301:12
302:1,2 304:14
**proofs** 225:20 295:8
**proper** 20:15 35:3
40:15 88:14
212:19 230:12
265:11
**properly** 14:19 38:2
197:20 227:6
296:7
**proponents** 214:2
**proportionality**
59:13
**proposal** 23:23
**proposed** 6:9 88:2
**proposing** 195:23
**proposition** 19:1
73:3 92:4 285:24
**propounded** 16:25
**propriety** 14:24
34:21
**propter** 195:25
**prosecute** 68:17
**prosecuting** 67:8
**prospect** 30:22
**protection** 89:4
**prove** 27:4 48:21
53:10 59:18 97:4
103:21,22 109:7,9
109:10 224:24
242:10 244:15,16
292:21 296:25
297:1 305:11
307:2,23
**proved** 7:9 256:20
**proven** 250:6
262:22 309:18
**proverbial** 300:16
**proves** 7:6,8 12:25
13:4 39:16 142:1

142:7 175:22
176:2,23,24
219:11 260:3
301:14,14,21,23
303:1 305:10
**provide** 35:24 70:18
84:24 202:13
203:25 210:16
291:10
**provided** 19:14,16
54:1 144:18 157:9
**provides** 42:25
199:25
**proving** 16:3 89:2
239:23 244:17
268:4
**proximate** 67:22
**proximately** 52:3
**public** 107:14
173:24 174:5
306:23 309:16
**publicized** 116:10
**publicly** 110:2,17
232:16
**published** 143:14
173:23
**pull** 215:4 259:11
272:6
**pulling** 271:16
**pumpkin** 231:3
**punishable** 20:8
**Punxsutawney**
47:19
**purely** 241:8
**purge** 130:5 140:15
140:16 141:2,5,17
142:10 146:7
187:20,22 188:20
188:25 189:10
226:18 264:10,12
302:23
**purpose** 34:25 35:1
59:10 88:15
127:19 195:15
304:21
**purposefully** 102:6
**purposely** 111:6
**purposes** 57:12,12
112:5 225:5
232:14,23 233:2
233:20 249:9
250:7 259:2,7
312:25
**Pursuant** 139:21,23
**pursue** 49:9 297:15

**pursuing** 234:1
**Pursuit** 78:5
**put** 26:9,19 33:19
40:1 58:2,5 59:21
60:5,9,21 68:9
115:23 116:21
129:15,18 132:11
138:23 142:19
146:20 147:24,25
154:1 158:15,19
160:9,20,21
161:20 162:1,4
184:9 185:17
186:20 187:3
195:1 204:17
209:19 217:12
220:10 222:18
223:2 226:16
230:11 239:1
245:18 248:15,20
249:7 255:5 256:2
256:11,14 257:18
258:8 261:6 265:7
265:18,20 267:16
273:13,14,24
279:4 283:25
296:14 317:13
**puts** 218:19
**putting** 61:12 116:6
192:16 226:2
255:20 308:14
316:20

___

**Q**

**qua** 69:13
**qualified** 175:9
**quantities** 257:11
**question** 20:19 28:4
28:4,7,11,21
29:13,17 30:8,18
30:25 31:2,3,5,9
31:12 32:19 34:4
34:11,19 36:9
49:17 50:9 66:9
66:21 69:6 70:13
70:15 71:7,10
75:20 76:22 77:24
102:2 108:11
109:10 117:24
178:25 185:4
186:5 187:6,11,13
194:8 200:17
207:3 222:15,16
222:16 227:22,23
231:15,17 239:6

254:13,13 267:11
269:23 290:20
293:12 294:13,16
307:6 309:18,24
313:8
**questioned** 9:15
123:22
**questions** 20:6,14
20:16,21,22,24,25
24:4 29:5,8,21
30:15,16 32:9
33:23,24 34:21
36:13 65:7 124:9
129:1,2 130:10
132:14 206:14
207:14 283:9
284:5,24 285:11
285:12 293:16
**quickly** 140:10
306:11
**quietly** 165:22
**Quinn** 3:4 5:23,23
**quintessential**
121:10
**quite** 23:19 48:6
56:21 57:23 68:18
158:2 247:9
315:12
**Quizone** 156:7
**quotation** 117:6
118:13
**quote** 20:7 21:6,11
42:3 43:7,14,23
44:5 45:20 48:19
75:22 78:2 82:21
85:12 86:18 88:3
88:14 89:1,11
90:12,15 91:3
113:20 123:10
136:12 201:12
215:7 274:2
275:17 312:24
**quote/unquote**
226:18
**quoted** 108:13
278:2
**quotes** 273:2
**quoting** 215:5

___

**R**

**Railroad** 69:23
**raise** 18:8 206:12
288:18
**raised** 77:1 80:16
165:13 207:3

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 346

277:17 279:24
287:25
**raises** 15:3 30:21
31:4
**raising** 20:13 36:12
119:22
**randomly** 269:18
**rationale** 192:9
**rationales** 192:8
**raw** 168:25
**reach** 35:8 36:7 80:4
80:5 83:5 287:17
**reached** 43:8
**reaches** 61:23
**react** 69:18
**reaction** 230:10
237:3
**read** 23:3 36:21
41:16 42:25 45:19
55:8 56:6,12,16
70:3,4 77:3 87:4
88:22 94:10 106:2
107:6 131:20
141:3 142:19
154:6 162:12,14
163:22,24 164:5
170:7 214:9
237:17 257:4
258:11 261:5
265:6 269:18
306:18 312:16,20
**reading** 56:17,18
147:14 299:19
301:8 306:6
**ready** 79:5 231:9,18
**real** 14:3 23:4,4
64:5 74:4 77:15
125:20 133:2,4
213:2
**realize** 220:5
**realized** 253:17
**really** 16:16 23:8
30:16 38:6 39:18
41:2,5,25 45:10
61:2 63:8 65:14
70:24 80:3 101:23
105:24 107:22
122:12 143:16
146:22 173:8
189:10,11 190:18
202:10 208:7
217:23 226:15
228:8 241:13
242:2 263:1
278:19 283:15

287:15 302:10
307:24 316:7
317:2
**reapplication** 81:18
**reason** 55:15 64:16
68:22 76:25 110:2
113:5 126:15
165:21 179:11
194:12 209:13
217:12 219:23
221:20 222:1
235:4 245:24
246:14 257:14
259:21 275:8
283:24 284:2
304:21 313:25
**reasonable** 83:11
84:13,14,20 89:19
92:9 108:12,18
109:2,5,9 110:11
192:12,18,20,23
193:2,6,8 194:9
194:12,23 195:2,4
195:19 198:12
199:22 208:12
224:5,5 227:10
250:10 253:25
263:19,23 264:3
268:8 279:25
287:15
**reasons** 11:7 57:14
64:18 209:13
224:12 233:12
239:18
**rebuttal** 88:4
**recall** 147:14 157:9
172:12
**recalled** 173:14
**receive** 84:1 150:8
**received** 18:14
23:16 119:21
317:16
**recitals** 62:19
**recited** 96:3
**recognize** 42:19
**recognized** 26:3
275:17,18 278:7
**recollect** 173:15
**recollection** 173:9
173:17
**recommendation**
105:3
**recommendations**
26:6,11 54:2
**recommended**

53:22
**reconsideration**
19:5 20:13 21:5
24:3,6 35:5 38:22
45:11,12 47:3
80:12 81:19
**reconstruct** 112:9
**reconstructed**
111:16
**record** 4:6 6:20,23
7:7,14 14:6,14,16
14:25 16:8 17:11
17:11 28:3 34:24
35:25 37:12 41:11
41:12 43:15 45:19
63:5 76:25 85:17
86:14 88:8 90:8
91:11,20 104:3
107:14 111:16
136:9 147:18
152:18 154:2
181:24 182:7,8,20
183:17,18,21
184:1 187:4,9
200:15 209:18,19
210:8,9 223:14
229:3 231:7,20
245:22 247:1
252:25 265:11
296:14
**records** 105:11
263:18 291:23
**recount** 270:20
**recounted** 130:12
272:5
**recourse** 68:3
**recovers** 50:22
**recreate** 172:16
**red** 134:10 172:19
241:1 278:13
**redacted** 211:7
**redeemed** 22:11
**redoing** 58:10
**refer** 136:11 266:3
**reference** 119:7
**references** 8:14
157:5 165:17
**referencing** 144:1,4
**referred** 43:19 93:8
136:4 185:7
270:17
**referring** 11:20
47:18 52:10
143:11 210:3
**refers** 41:25

**reflect** 218:25
247:18
**reflection** 30:16
**reflects** 29:24
**refusing** 287:4
**regard** 36:22
**regarding** 24:24
40:8 42:15 196:19
268:13 311:20
**regardless** 91:24
97:21 99:14
100:11
**regular** 112:25
**Reiley** 1:17 5:13
206:6 211:6 318:4
**REINDEL** 2:19
**reinstated** 149:3
**rejected** 215:22
**relate** 186:9 188:19
**related** 42:5 129:21
158:22 159:2
161:18 162:7,17
185:7 187:20
189:17 214:4,15
215:22 217:14,15
217:17 218:18,22
219:3 276:8
**relates** 12:20 26:4
198:5 232:4
263:16 271:7
**relationship** 27:12
35:17
**relative** 319:10,12
**relatively** 269:19
**relaxed** 215:22
**released** 89:17
164:14 200:10
**releases** 44:6
**relevance** 83:7
134:10 197:7
**relevant** 12:4 45:21
103:4,5 167:24,25
177:25 178:24
179:2 181:10
196:24 197:4
233:12 240:3
241:3 251:5
**reliable** 90:16 132:9
132:10 271:19
295:21
**reliance** 64:6
**relied** 46:3,21
**relief** 72:20 183:2
**relishes** 102:16,17
**rely** 132:9 145:8

198:4 204:2
274:23
**remained** 24:3
**remaining** 167:22
**remanded** 91:16
**remedies** 228:8
**remedy** 182:16
**remember** 46:4 75:5
118:12 157:17
233:5 263:3
**remind** 17:15,22
18:19 21:2 114:15
**reminds** 12:15
**rendered** 105:2
158:23 159:2
162:7,17
**renders** 221:8
**repeat** 23:1 76:3
89:18
**repeated** 29:22
**repeatedly** 215:20
216:1
**rephrase** 289:1,5
**rephrased** 32:19
**replicating** 207:18
**reply** 7:17 8:6,8
12:16,21 13:23
14:4,25 15:19
16:15 46:25 87:19
87:24,24 88:9,17
88:25 90:20,21
91:1,18 182:24
197:17 218:6
228:12 229:6,22
230:3 233:10
286:14
**report** 105:3,24
157:20,22 158:11
158:18 159:3,9,11
160:4 161:19
163:2,22,23 164:6
164:7,14 165:11
165:13,22 174:4
231:12 258:3,7
264:22 272:5
274:19 275:6
296:19
**reported** 215:11
268:23 271:1,5
275:21,24
**Reporter** 1:12 319:5
**Reporters** 1:22
**reporting** 276:15
**reports** 123:9
167:11,13,13,16

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 348 of 358 PageID: 49125

USDC, District of NJ                Williams, et al. v. BASF Catalysts, LLC, et al.                        Friday
C.A. No. 2:11-cv-01754-JLL-JAD                Special Master Conference                        February 23, 2018

Page 347

167:18 173:23
175:10 271:9
274:17 296:17,22
**represent** 148:21,22
243:9 248:8
**representation** 8:23
121:21 142:2
148:14 151:11,12
151:14 152:21,23
153:1 154:6
176:16 303:4
**representations**
11:9 85:7 120:10
124:4,13,19 142:9
151:2 155:14,14
175:24 176:3
199:19 244:7,11
290:11
**representative**
19:11,22 20:5
22:22 25:5,15
27:21 30:7 35:10
35:22 37:13 39:2
148:2 150:25
151:20 154:7,8,12
155:5 167:21
176:17
**represented** 131:7
176:9 177:23
**representing** 35:15
77:12 101:11
151:4 171:23
207:5
**reputable** 272:17
**request** 45:9,11
46:17 47:15 65:22
78:17 80:3 112:18
139:13 235:3
296:11 316:1
**requested** 21:11
72:20
**require** 69:16 89:25
**required** 19:8 43:4
45:25 46:17 47:12
73:23 103:21,22
215:18 223:15
**requirement** 46:9
47:1 69:16 308:9
**requirements** 45:4
223:4 239:8 260:1
**requires** 47:14
310:17
**requisite** 254:17,20
**res** 97:8
**reschedule** 22:18

**rescheduling** 22:21
**researcher** 127:3
**reserving** 72:15
**resolve** 41:5
**resolved** 32:22
104:24 238:18
263:11 281:25
**respect** 17:1 19:22
24:24 26:13,25
27:3,6 33:23
35:17 38:7 39:1
45:5 56:5,12
60:10 63:12 65:13
65:18 74:24 77:12
79:24,25 81:6
102:25 136:2
157:10 201:4
213:16 230:9
239:25 277:13
314:25
**respectfully** 294:23
**respond** 13:12 23:4
54:3 153:21 221:2
224:10,14 227:2
227:10 228:14,20
229:6,10,19
240:23 242:13
244:24 259:8
286:21 301:10
315:24 316:3
**responded** 22:1
226:21 239:2
246:5
**responding** 13:8
23:12 233:9
**response** 13:18
18:21 21:11 22:16
24:1 53:17 56:1
72:12 105:22
187:13 206:14
212:8 239:6 265:1
276:10 287:4
**responses** 68:23
150:12 230:20
**responsibilities**
298:17
**responsibility**
304:25 305:4
**responsible** 52:5
55:24,24
**responsive** 47:14
161:13
**rest** 106:23
**result** 38:4 155:18
237:7 255:19

299:19,21
**results** 10:15 104:14
121:21 125:14,14
128:19 169:10
206:7 246:1
271:19 272:3,4
273:24 275:21
293:25 297:21
**resurface** 193:16
**resurfaced** 158:19
**resurfaces** 157:3
**retain** 141:9 302:5
**retains** 258:2
**retake** 36:6
**retention** 130:2
141:17,22 264:14
**retired** 105:1
**retrieve** 193:21
**return** 140:17
257:17
**reveal** 110:11
**revealed** 29:9
191:17
**revealing** 29:14
30:22
**review** 19:8 46:22
78:19 84:21 86:9
88:2 90:2,10
91:13 110:11
153:17 191:3,13
195:16 197:3
201:11,13,22
218:21 224:8
225:23,25 244:9
245:13 282:1
283:3 311:16
312:4
**reviewed** 209:16
**reviewing** 242:14
**reviews** 211:5
**revisit** 51:11
**rhetoric** 208:16
**rhetorical** 206:19
313:2
**Rhode** 135:16
155:21 156:1,3
257:23
**rid** 299:1 303:15
**right** 26:18,20 28:1
34:8,15 35:4
40:22 43:11,24
44:8 48:7,11
50:22 51:5,15
53:5 55:21 56:20
56:21 57:18 58:20

59:15,17 60:25
61:12 63:14,22
64:13 66:23 67:1
71:12 72:15 76:1
80:20 86:21 94:9
95:13 103:14
106:9,15 108:10
108:14 113:16,19
114:10 120:8,9
122:15,19 128:19
130:2 134:6,14
135:8 136:16
137:10,25 138:13
139:6,7 145:21
146:4 147:16
152:2 153:10,19
155:10 158:1,5
160:2,9 161:23
163:19 168:8
173:17 176:5
177:4 178:10,12
187:1 189:5 190:5
190:12 194:6,8
195:14 199:4
201:24 202:9
205:17,19,20
209:2,6,7 212:3
221:11 227:18
231:2 237:18
244:23 256:22
262:4 267:1
269:10 270:12
273:17 282:5
284:15 286:8,22
287:10 293:9,18
293:23 294:2,14
294:23 295:14,17
295:17,18 296:3
297:9,10 298:19
298:24 300:12,16
303:24 304:7
309:14 313:14
315:20 317:11
**righthand** 190:7
**rights** 55:12 298:19
299:22
**ripe** 71:20 197:3
**ripen** 108:4
**ripeness** 74:10
**rise** 112:7
**risk** 31:5 33:9 60:24
61:4 66:16 182:9
182:11 233:24,25
275:17,18 308:21
308:24,25 309:3

**risks** 29:13
**RIVERA-SOTO**
1:16
**road** 1:23 33:4 49:8
307:16 316:22
**Robert** 1:12 2:6,17
4:19 5:5 319:4,18
**ROBERTO** 1:16
**Robertson** 295:1,2,2
**ROBINSON** 3:2
**rock** 10:22,25
120:16 212:1
**rocks** 111:16
**rodeo** 285:3
**rods** 57:10
**rogue** 54:19 55:21
102:20
**role** 96:7 271:22
292:25 293:2
**rolled** 270:24
**Romeo** 113:21
**Ronald** 2:12 5:1
**Ronny** 215:4
**roof** 316:20
**room** 4:10 17:15
18:20 26:24 68:25
80:24 101:2,19
187:17 285:23
298:14,14,15
313:4,10
**root** 115:4 296:11
**rose** 113:21
**Rosenblit** 233:13
**Rosenthal** 2:21 5:10
5:10
**Roth** 2:2,5 4:8,12,18
4:18 19:19 21:9
21:17,24 22:8,12
22:13,15,17 23:12
23:14,17,22 24:8
24:10,20 25:7,17
25:23 26:1,16,20
27:3,8,17 28:1,19
29:4,20 30:4,11
30:13,21 31:2,12
31:16,20,24 32:3
32:6 33:3,7,12
34:8,15,17 35:4
35:21,25 36:11,20
36:24 37:2,10,15
37:17,19,24 38:16
39:14 40:18,21
41:10,20 128:6
206:1 231:10,14
231:19,24 232:2

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 348

232:10,14 233:9
236:10 284:13,16
284:18 300:3
305:19,23 306:1,2
306:6,10,20,25
307:13,20 308:3,8
308:16 316:15
317:2,7,18
**Roth's** 20:17
**Rothenberg** 295:5
**Rothenberg's**
190:23
**Rothschild** 25:17
**route** 81:12 260:5
**routine** 212:4
**rude** 59:7 120:4
**Rudy** 69:21
**rule** 23:23 24:7 45:4
46:2,6 47:1,13
48:13,15,16,16,18
53:8 55:7 74:20
82:18 90:9 95:22
95:23 174:12
199:24,25 229:22
298:12
**ruled** 65:16 171:17
302:4
**rules** 33:1,4 38:10
65:23 88:9 95:5
200:9 218:13
229:8 312:23
**ruling** 18:9 21:12
305:16
**rulings** 311:17
**run** 33:9 39:9 60:23
63:23 66:16 182:9
182:10 233:24,25
261:17
**running** 9:21 61:4
285:23
**runs** 304:11

——————
**S**
——————

**S** 2:7
**safety** 117:9,13,25
266:9 267:4,23
**sailed** 75:1
**sake** 225:11
**salutary** 33:10
**sample** 126:8
127:12 274:5
**samples** 10:22,25
120:17 126:6
127:3 138:13,14
138:19 139:8

140:24 274:3
276:15,19 277:7
**sampling** 143:18
**Samson** 85:17 90:3
90:8 91:13,21
142:11 183:22
184:1 185:15
209:14,15,16
210:3,3 246:1
269:13
**sanctioned** 294:5,6
**sanctions** 147:7
258:15
**sandbagged** 228:12
**sandbagging** 228:16
228:17
**sat** 105:1 199:6
292:15
**satisfaction** 83:9
**satisfied** 63:14
86:22 109:22
110:1,7
**satisfies** 99:8
**satisfy** 45:4 55:11
68:5 86:3 100:13
109:8 110:18
111:9 210:18,22
223:14 224:23
239:8 241:3
243:23 303:16
**satisfying** 45:11
210:23
**Saturday** 21:10
22:23
**saw** 129:16,22
172:20 224:13
239:7 240:25
245:18 253:15
262:14,23 263:14
**saying** 7:2 22:2,18
43:14 45:3 46:25
52:13,17 54:6,12
55:9,20 56:1 59:1
59:5 67:21 81:13
83:13 90:4 94:11
95:14,20 96:6
98:10,14 99:4,11
99:12,14 100:4
110:15 119:20
121:17 124:13
146:13 147:18
150:12 160:5
165:6,7,11 166:10
166:14 172:24
177:20 181:6

182:4,25 183:23
192:3 195:19,20
196:4,4 199:10
212:6 221:14
226:22 227:25
234:1 237:5
241:24 243:4,5,6
251:20,22 254:19
260:20 276:4,6
277:5 279:11,13
284:8,20 290:8
294:21 300:20
303:2 305:5,8
310:3,13 311:25
**says** 10:18 17:13
21:22 36:25 37:1
37:2 42:25 57:17
60:3 66:11 67:5
73:8 75:19 77:4,9
77:25 85:24 86:18
86:25 87:15 91:4
93:14 96:23 97:12
108:16 110:8,9
117:22 129:8
136:24 137:6
141:8,14 142:23
146:3 152:5
155:17 156:19
157:12 162:6
170:8 177:17
182:8 189:18
190:6 191:23
193:24 194:24
195:10 216:20
217:2,5 218:19
243:13 258:4
261:10 274:2
298:22
**scene** 249:5
**schedule** 9:22 21:12
22:16
**scheduled** 315:3
**scheme** 258:20
260:18
**Schlesinger** 46:5
69:21
**school** 59:12
**Schwartz** 92:18
93:1 135:20
140:21 142:14
189:4 190:22
**science** 122:16
135:4 263:8,9,13
263:15 283:10,11
283:14 284:2

285:10 286:17,17
289:19 295:20
296:12,13
**scienter** 47:10
251:24 292:2,11
296:23
**scientific** 116:20
123:4 138:2,17
167:15,17 285:8
294:6,10
**scientist** 7:1 11:12
122:11 123:2,17
155:9 168:24
**scientists** 11:23
123:21 137:7
144:18 145:1
175:7,8 186:12
198:23 199:3
270:20 294:11
297:7,9,24 299:12
**scope** 79:10
**score** 15:7
**screen** 117:11 239:1
245:18 269:16
273:24
**screw** 241:13
**screwed** 54:12,13
**seal** 146:1
**sealing** 91:22
**Sean** 205:1
**search** 100:14,18
291:23
**searches** 195:10
**second** 7:4 9:6 20:19
44:10 45:14 65:18
75:13 79:24 83:6
119:4 126:12
169:21 209:9
225:21 257:23
266:20 268:11
269:15 271:15
272:25 273:12,21
273:23 276:23
279:6,16 282:15
305:22
**secondly** 210:24
239:24
**secreted** 111:20
112:7 302:20
**section** 45:19 48:14
62:1,6 187:15
**secure** 111:4 116:23
**secured** 83:12
**see** 16:4 31:7 34:20
35:1 47:24 54:24

54:25 55:11 62:17
64:9,19 72:10
73:17 76:4 78:19
91:25,25 106:2
132:1 143:18
146:22 162:20
169:20 173:23
184:15 187:21
189:10 195:2,16
200:15 216:1,16
216:17 222:25
224:16 243:12
261:20 266:19
268:10 270:21
272:21 274:22
278:24 281:8
300:2 307:8
**seeing** 64:16 118:13
157:9 173:11
187:17
**seek** 42:14 43:9 44:8
47:6 48:20 53:10
58:4 60:9,24 66:6
66:18 67:1 69:10
70:6,17 77:23
237:10 282:1
**seeking** 27:11 35:4
42:2 44:1 49:1
67:3 210:25
222:22
**seen** 6:2 10:2 12:17
69:17 119:7
187:10 226:9
237:19 239:1
256:15 261:1,2
274:2 280:4
313:16 318:8
**sees** 217:1
**segues** 5:16
**sell** 116:12
**SEM** 294:4
**send** 41:16 281:23
286:24 287:8
290:10 314:16
**sends** 39:7 194:20
**sense** 35:7 55:17
102:15 235:10
282:19
**sent** 19:20 21:3
22:15,17,20 23:13
23:21 127:7
130:14,18 133:12
140:15 142:10
146:21 147:6
166:4 198:21

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 349

267:24 316:17
317:25 318:4
**sentence** 141:7
273:23 275:16
**sentiment** 280:25
**separate** 8:14 9:2
43:21 82:24
101:12 126:6
174:10 225:1
238:6,7 243:16
303:3
**separately** 174:11
**September** 81:2
**sequential** 118:7
119:2 267:12
**series** 49:23
**serve** 27:1
**served** 53:19 79:13
**serves** 37:5 136:10
**services** 82:22 86:6
90:1 93:11 158:22
159:2 162:7,17
219:19 247:19
249:20 251:5
255:12,18
**serving** 85:18 93:3
**set** 52:22 60:1
111:10 150:22
218:12 224:17
227:6 240:10
319:8
**Seton** 203:11
**sets** 83:1 258:16
**setting** 19:6 60:6
262:9
**settle** 32:15 49:9
57:3,4,9 58:5 59:6
59:20 61:16,17
264:8
**settled** 29:1 49:20
50:15 156:25
157:19 160:19
165:22 257:16
258:5
**settlement** 42:4,16
43:8 44:6,11,20
44:24 47:9 50:5
51:14 57:12,19,22
57:22 58:21,24
61:19 63:1,5
64:14 65:7,15
78:18 137:13
138:23 157:21
188:20,24,24
189:9

**settlements** 43:14
46:7,8
**settles** 137:8 140:14
142:14
**settling** 49:19,19
50:6,11 67:10
68:13
**seven** 39:21,22 81:4
89:21 90:10 215:2
**seventh** 58:9
**severely** 197:20
**shame** 270:3
**shape** 72:19 270:1
**shaped** 268:23
**shed** 96:6
**sheet** 67:25 117:1,9
117:13,25 118:3,3
119:7,11,14,15,21
120:1 266:6,8,9
267:1,4,5,15,23
268:7,12 269:16
271:2,6 289:18
290:4
**sheets** 117:1 267:18
**shelf** 258:8
**shelve** 258:21
**shielded** 83:6
**ship** 75:1
**shocked** 311:12
**short** 17:24 33:5
82:3 107:5 204:7
288:11 291:8
315:3
**short-circuit** 12:1
**short-term** 53:23
54:4
**shorten** 65:4
**shorter** 18:1 287:22
**shorthand** 79:18
**shortly** 81:10
**shot** 186:15
**show** 57:16 96:14
103:1,9 123:19
142:5 145:16
165:15 166:2
190:3 222:10
233:16 241:3
255:11 259:1
264:6 267:15
269:7 271:12,18
285:9 295:13
301:22 303:14
306:15 307:1
312:1
**showed** 136:24

144:25 151:25
152:2,4 188:21,23
199:8 205:25
258:22 263:24
264:4 265:15
266:6 272:5,8
275:10 285:9
**showing** 22:9 42:9
43:1 45:13 46:19
46:23 58:25 63:10
83:7 84:7,9 90:5
108:1,5 117:7
135:23 155:16
161:10 194:3
223:15 224:3,21
228:11 234:3
240:11 248:13,14
259:16,18,19
271:24 272:1
287:1
**shown** 55:13 83:9
86:2 186:22
189:20 280:5
**shows** 7:4 140:19
224:20 249:11,14
272:3 301:25
**shy** 14:13 39:11
**side** 34:10 47:23
63:18 64:23 70:12
74:6 99:3 138:14
155:8 163:5
205:19 208:24
209:1 239:4
270:24 293:17
**signed** 294:21 299:8
**significance** 135:20
**significant** 10:13
11:6,14 107:2
115:2 120:23
126:10 140:2
143:2,8,21 158:10
211:24 213:10
217:13 271:22
291:15 295:2
299:1
**Significantly** 135:13
135:18
**similar** 38:13 42:6
44:6 92:20 150:20
293:7
**simple** 70:24 134:4
200:17 231:21
**simply** 22:18 81:14
85:18 90:8 112:23
141:20 163:10

224:23 229:25
259:22
**sine** 69:13
**single** 86:7 98:1,2
98:18 194:4 202:1
218:8 243:15
253:15
**sir** 64:22 76:2
314:19
**sit** 36:5 51:16 52:11
57:25 59:23
305:13 310:23
**sitting** 33:7 59:1
63:3 69:21 199:4
257:21
**situation** 67:7 228:9
**six** 6:6 40:5,15 90:8
106:24 150:25
214:23 301:16
**size** 318:7
**sized** 24:20
**skip** 23:9 49:12
166:1
**slash** 6:10 17:4 82:8
**sleeves** 71:11
**slice** 78:10 125:17
**slices** 280:21
**slicing** 125:20
**slide** 115:15 116:21
117:6 127:24
128:2 167:5
169:21,23 170:8
186:20,21 204:17
215:1,5,16 216:9
216:13 218:19
220:15 265:19
266:19 268:11
271:11 272:23
273:1,14 275:4,9
277:22 278:3
**slides** 204:16,18
205:11,24 206:2
209:11 214:23
215:2 220:9
224:15 240:25
261:19 262:14
265:14 279:5
281:11 283:3,4
284:1 285:9
286:23,25 287:4,8
315:18,25
**slightly** 67:7
**Sloane** 59:22 90:11
166:5,13 188:3
292:15

**Slow** 257:3
**small** 105:16 156:1
156:3 205:25
**smart** 228:5
**smarter** 184:8
**smoke** 313:8
**smoking** 300:16
**Sneha** 2:22 5:3
**sold** 133:6 134:2
**solely** 18:4 108:4
302:12
**solidly** 292:21
**solved** 206:3
**somebody** 17:16
26:24 49:8 62:9
73:7 116:13
126:14 149:9
158:12 171:22
176:1 191:19,21
192:1,2 243:5
249:11,14 278:21
281:25 292:5
**somebody's** 35:17
181:16 259:24
**someplace** 73:9
**somewhat** 208:19
224:16
**son** 136:21 300:25
**soon** 18:16 73:16
79:5 115:5 203:1
203:5
**sooner** 12:17
**sophisticated** 11:3
116:19 127:6,10
289:20
**sorry** 5:17 8:19 20:9
23:8 37:7 54:6
72:8,9 90:10
95:12 98:25 99:20
99:24 101:24
117:23 133:15
156:9 169:21
170:4,6 171:5
176:16 185:5
192:7 233:24,25
234:16 244:5
275:5 286:15
288:1,12 292:17
296:9 306:1,5
308:3,20 314:10
**sort** 264:9 307:3
313:7
**sorts** 239:20 241:10
274:22 280:11
**sought** 7:7 75:25

USDC, District of NJ     Williams, et al. v. BASF Catalysts, LLC, et al.     Friday
C.A. No. 2:11-cv-01754-JLL-JAD     Special Master Conference     February 23, 2018

Page 350

| | | | |
|---|---|---|---|
| 82:22 83:6 88:20 | 77:2,6,19 78:1,4 | 153:7,11,20,23 | 223:11 225:4,10 | 307:11,17,25 |
| 93:11,23 215:19 | 78:10,24 81:4,9 | 154:9,13,17,22 | 226:4,11 227:8,16 | 308:5,11,18,23 |
| **sound** 94:2 109:1 | 81:23,25 82:6 | 155:1,4,7,16 | 227:18 228:2,5,15 | 309:1 310:2,5,11 |
| **sounds** 208:19 | 85:18 87:7,13 | 156:1,11,22 157:8 | 228:22,24 230:1,4 | 310:15,17,18,20 |
| **source** 83:12 | 92:25 93:3,14,17 | 157:13,16,24 | 230:21 231:1,6,9 | 311:1,6,12 312:16 |
| **Southern** 3:10 | 93:21,24 94:1,5,7 | 158:3,6,12 159:4 | 231:11,17,21 | 312:20 313:1,24 |
| **Spahr** 1:11,14 | 94:10,19 95:12,17 | 159:7,12,15,19,21 | 232:1,8,12 233:7 | 314:4,9,20 315:19 |
| **spanning** 245:13 | 95:25 96:11 97:9 | 159:24 160:1,12 | 234:8,12,16,21 | 315:21 316:2,6,10 |
| **speak** 4:10 7:19 | 97:25 98:6,16,22 | 160:15,23 161:6 | 235:1,7,12,14 | 316:23 317:5,10 |
| 28:11 29:15 31:6 | 98:25 99:8,13,17 | 161:23 162:4,12 | 236:4,8,11,15,23 | 317:16,21,24 |
| 47:23 64:24 | 99:22,25 100:11 | 162:15,23 163:5 | 237:14,17,21 | 318:3,12,14,18,20 |
| 149:13 160:25 | 100:17,20,21,23 | 163:11,19 164:3,8 | 238:1,5,8,12,15 | **specific** 53:25 83:18 |
| 203:3,18 206:7 | 101:9,15,24 | 164:22 166:5,9,12 | 238:19 239:14,17 | 89:16 90:2 239:12 |
| 262:14 286:14 | 102:12 103:3,11 | 166:17 167:7,23 | 239:19 240:15 | **specifically** 19:14 |
| 316:21 | 103:15 104:5,8,21 | 168:1,6,9,19 | 241:11,19,22 | 42:8 43:20 45:19 |
| **speaking** 24:8 34:18 | 104:25 105:1,9,13 | 169:2,6,22 170:7 | 243:1,16 245:1 | 86:18 90:24 92:22 |
| 47:22 262:17 | 105:24 106:4,7,13 | 170:11,14,17,21 | 246:7,11,22 | 219:15 |
| 264:22 | 106:18 107:4,9,12 | 170:25 171:4,6,10 | 247:13 248:17 | **speculation** 260:13 |
| **special** 1:10,17 4:1,9 | 107:21 108:14,17 | 171:22 172:4,25 | 249:24 251:17 | **speed** 269:7 |
| 5:12,22,25 7:22 | 108:22 109:2,19 | 173:4 174:19 | 252:8,12,17 253:2 | **speeded** 269:10 |
| 8:6,10,19,22 9:17 | 109:24 110:6 | 176:6 177:2,6,9 | 253:9,24 254:8,19 | **spend** 11:7 111:24 |
| 11:25 12:3,6,11 | 112:12,15 113:13 | 177:12,16,21 | 256:7,23 257:3 | 167:2 174:10 |
| 12:22 13:5,9,15 | 113:17,20 114:9 | 178:8,12,15,19 | 258:1 260:14 | 198:6 281:16 |
| 13:25 14:8,21 | 114:15 115:7,9,14 | 179:6,10,18,21,25 | 261:13,21,24 | 284:4 300:24 |
| 16:7,18,21,24 | 115:17,20 116:1,5 | 180:3,8,12,14,22 | 262:1,4,11 263:5 | 301:7 307:10 |
| 18:10,17,25 21:19 | 117:17,22 118:14 | 180:24 181:2,5,18 | 264:9,25 265:5,24 | **spent** 30:13 111:12 |
| 22:7,11,14 24:13 | 118:18,24 119:3,9 | 181:21 182:6,17 | 266:4,7,12,15,17 | 207:16 259:9 |
| 24:17 25:6,19,25 | 119:18 120:3,7 | 182:23 183:11,15 | 266:22,25 267:10 | 286:2 299:18 |
| 26:13,18,21 27:14 | 121:8,18 122:23 | 183:20 184:6,24 | 267:20 269:9,14 | **spoliated** 113:14 |
| 27:25 28:2,23 | 123:8,12,15 124:8 | 185:3,6,18,21,24 | 269:22 270:2,5,9 | 114:3 |
| 29:18 30:2,5,12 | 124:12,22,25 | 186:4,14,17,21,24 | 270:13 272:15 | **spoliation** 13:2 16:4 |
| 30:20,24 31:7,14 | 125:5,16,19 126:3 | 187:3,12 188:2,5 | 273:15,20 274:8 | 85:2,4 86:9 88:6 |
| 31:18,21 32:1,5 | 126:18 127:13 | 188:10,15 189:3 | 274:13 275:1,7,23 | 88:21 90:25 |
| 32:25 33:5,10 | 128:3,8,13,16 | 189:25 190:5,11 | 276:3 277:11,19 | 111:22 112:24 |
| 34:3,9,16 35:1,6 | 129:18,23 130:1,4 | 190:13,19,21,25 | 277:23 279:18,21 | 113:1,2,10,18 |
| 36:8,18 37:1,7,11 | 130:7,21,24 131:3 | 191:5,8,10,15,22 | 280:15 281:3,13 | 157:14 167:4 |
| 37:16,18,22,25 | 131:8,11,14,20,24 | 192:6,19,23 | 282:10,13,23 | 226:14,24 227:5 |
| 38:20 39:17 40:10 | 132:3 133:11,15 | 193:13,17 194:7 | 283:6,12,15,18 | 227:10 229:2,4,15 |
| 40:24 41:15,21 | 133:18,20,22 | 194:14,19 195:9 | 284:8,11,15,25 | 229:18,20 231:16 |
| 47:18,24 48:2,10 | 134:1,4,9,13,17 | 195:22 196:6,9 | 285:15 286:10,13 | 231:22 232:21 |
| 48:25 49:4,14 | 134:21,23 135:1,5 | 197:4 198:9 | 286:18,22 287:5,7 | 233:1,3,21 234:1 |
| 50:1,9,13,24 51:5 | 135:7,15 136:1,8 | 200:11,17 201:9 | 287:11,20,22 | 239:3 280:20 |
| 51:23 52:12,19 | 136:14,18,20 | 201:18,24 202:2,7 | 288:1,7,11,15,23 | 281:2,4 302:2 |
| 54:8 55:5 56:11 | 137:3,9,16,18,22 | 202:24 203:3,6,10 | 289:3,25 290:13 | 303:5,6,8,18 |
| 56:19 57:1,11,16 | 138:10,21,25 | 203:14,17 204:6,9 | 290:19,22 291:2 | 304:1 314:21 |
| 58:14,18 60:5,16 | 139:4,11,21 140:4 | 205:3,7,10,13,17 | 291:10,16 292:22 | **sporadic** 124:3 |
| 60:19 61:2,14,25 | 140:7,11 141:1,16 | 205:22 206:4,18 | 293:4,7,21 294:1 | **sprawling** 245:15 |
| 62:3,15 63:7 64:4 | 143:3,10 144:4,7 | 207:4,10,25 209:5 | 294:7 295:24 | **Spray** 97:3 |
| 64:20,23 65:5,8 | 144:11 145:7,19 | 210:8,20 211:13 | 296:10 298:4 | **spry** 132:1 |
| 66:5,11,14 67:12 | 146:24 147:2,8,12 | 211:20,25 212:3 | 299:20 300:5,15 | **squabble** 9:4 |
| 69:3,13,20 70:23 | 147:14,19 148:7 | 212:22 213:12,15 | 300:25 301:5 | **Square** 2:3,15 |
| 71:3,5,18,23 72:2 | 148:12,19,24 | 214:25 215:3 | 302:1 303:10,22 | **squarely** 70:9 |
| 72:5,8 73:2 74:16 | 149:2,6,12,18,22 | 216:4,6 217:16,19 | 303:25 304:5,8 | **stack** 318:7 |
| 74:18 75:4,8,10 | 149:25 150:3,10 | 218:4 220:17,20 | 305:2,18,21,24 | **stage** 72:18 76:18 |
| 75:12,18 76:4,10 | 150:14,24 152:1 | 220:24 221:1,6 | 306:5,8,19,24 | 89:16 100:9 |

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 351

225:22 282:8
315:15
**stand** 294:8 314:10
**standard** 19:3 24:6
84:14,21 86:4
87:2 91:5 92:8
93:6 98:23 99:4
99:10 100:5,6,9
100:12,16 101:4
103:20 153:14,15
210:15 212:22
213:2,4,23 214:1
214:8,11 215:22
216:18 217:13
218:1,3 219:3,5
219:23,25 220:2
221:10 222:5
223:6,7,10,13
240:13 241:3
299:24 306:16
309:12,16
**standards** 45:12
86:12 210:10,10
211:11 212:20
214:2,15 223:2
296:2,5 306:12
**standstill** 42:4
**start** 6:18 15:24
19:6 41:23 71:6
73:3 90:3,5 92:4
115:3 120:23
207:5,15 247:11
267:13
**started** 79:25 115:5
141:22 198:12
251:21,25 273:5
**starting** 4:6 20:10
49:23 50:3 53:19
63:17
**starts** 75:15 142:16
**state** 42:21 46:16
53:18 84:20 85:16
86:16 87:1,4
91:20 147:4
152:20,21,22
156:19 182:25
222:3,17,25
**stated** 177:1 215:20
**statement** 98:10,19
123:19 151:23
152:8 183:5
208:15 249:22
268:16 269:1
276:13,13
**statements** 13:1

86:14 152:19
206:20 244:4
249:15 255:13,21
263:20 265:12
271:21,22 277:2,9
280:11 299:17
**states** 1:1 48:18
73:13 82:20
150:18 155:15
218:14 272:14,18
**stating** 297:19
**status** 90:25 149:2
149:22
**statute** 44:15,17
45:16 56:4,6 62:2
62:4 93:7 95:22
95:24 102:3,4
198:15 213:18
215:9 216:7,11
220:21 221:8,13
**statutes** 51:1,4,5
63:23 70:4 82:17
**statutorily** 93:12
**statutory** 89:2
**stay** 49:14,15 291:3
291:9
**stayed** 149:10,16,19
149:21,23 251:7
290:16 291:7
**Stein** 85:17
**Stein's** 182:2
**Steinmetz** 172:10
172:12 176:11
**Steinmetz's** 9:13
**stenographic** 1:10
319:6
**step** 63:13 98:1,2
107:22 110:6,7
200:5 224:7
282:15,17,17
300:2 305:15
309:5,10,19
**stewardship** 207:23
**stick** 98:6
**stipulation** 139:22
**Stokes** 1:23
**stood** 8:23
**stop** 13:7,10 31:22
54:8,8 117:17
140:7 161:23
169:2 190:5
203:22 299:15
**stopped** 169:4
**stopping** 309:2
**storage** 193:21

207:16,17
**story** 105:14 145:22
171:1 251:7
259:15
**straight** 270:13
**straightforward** 250:18
**stranger** 36:1
**strategy** 53:23
72:22 289:15
**street** 1:11 2:3,9,20
257:13
**Streets** 2:15
**strenuously** 214:10
**strikes** 80:23 226:1
229:17
**strongly** 284:3
**struggling** 194:9
**studies** 312:18
**study** 127:19 169:10
186:8,8,10
**stuff** 11:20 23:3
39:16 81:11
125:25 129:15,18
175:25 187:15
242:1 283:21,23
287:1 301:24
302:1
**stunned** 170:25
**subject** 20:15 23:10
28:9,16 30:9
62:20 194:21
201:11 239:13
241:2 242:4
**subjected** 109:13
**submission** 177:3
178:4,6 183:8
197:16 212:18
222:22 226:9
260:8 264:21
274:15,17
**submissions** 157:11
198:16 227:14
276:22
**submit** 87:12 92:13
97:16 111:8 153:9
153:15,16,17
165:21 197:2
200:4 206:5
217:18 234:10
264:2 274:10
281:10 298:1
301:21,22 305:10
**submitted** 85:22
87:7,11 88:19

143:4,5 186:22
200:18 274:20
314:12
**submitting** 88:17
274:14
**subpoena** 18:14,20
215:17 216:7
**substance** 28:20
32:7 80:4,5 87:14
141:7
**substantially** 282:25
**substantive** 54:2
57:17 66:17 69:24
69:25 73:6,9,13
73:24 92:13,14,22
287:18 316:19
**subterfuge** 88:15
**success** 29:25
175:18
**successful** 58:6
**successfully** 260:3
**successor** 254:13
**sudden** 55:19
141:19
**sued** 68:15,15
170:20 171:9,15
171:16
**sues** 276:5
**suffices** 208:11
**sufficient** 12:8 69:9
222:19 224:3
**suggest** 7:13 34:6
53:2,3 77:14 90:8
217:7 236:3,24
255:5 273:25
**suggested** 209:3
284:16
**suggesting** 15:14
**suggestion** 163:9
218:23 273:8
**suggestions** 53:4
**suggests** 54:5 91:3
236:18 258:19
**suit** 69:1
**Suite** 1:15,23 2:3
**Sullivan** 191:8
193:20,24
**summarily** 91:15
**summarized** 25:1
**summary** 112:3
148:15,16,20
151:10,11,13
158:22 159:2
161:17 162:6,16

165:5 167:5
174:13 290:8
**sun** 78:13
**Sunshine** 216:14
219:2 222:12
**super-dense** 250:25
**Superbowl** 4:2
**Superior** 91:16
103:25 105:3
**supervisory** 291:4
**supplement** 6:19,23
7:14 13:23 14:5
14:24 17:11 18:3
169:15 269:24
**supplemental** 7:25
8:2
**supplementation**
15:18 16:12
**supplemented** 15:2
17:12
**supplementing** 16:8
**supply** 152:17
**support** 44:2 84:24
110:10 190:17
252:21 257:2
311:18 312:7
**supported** 271:4
280:5,6
**Suppose** 300:13
**supposed** 104:12
105:5 185:21
211:21 212:9
219:8 256:10
262:15 268:8
**supposedly** 117:19
266:8
**supposing** 300:9
**supposition** 260:12
**suppress** 7:9
**suppressed** 7:18
**Supreme** 82:25 91:8
91:22 104:1,10
182:7 199:25
215:5 216:10
220:3 293:14
**sur-reply** 91:2
229:7 231:23,25
234:7,11,15 237:7
304:2 314:10,21
**sure** 18:10 30:3 34:5
37:19,24 42:24
43:18 66:22 76:24
94:21 99:18 100:1
107:11 115:16
120:8 127:6,9

Case 2:11-cv-01754-BRM-AME   Document 621-30   Filed 07/23/20   Page 353 of 358 PageID: 49130

USDC, District of NJ                 Williams, et al. v. BASF Catalysts, LLC, et al.                          Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                          February 23, 2018

Page 352

134:25 136:9
149:6 151:7
164:17 172:7
190:2 194:18
196:6,8,10 203:24
209:13 213:14
216:5 220:19
231:14 235:7,9
267:2 283:1
287:14 291:6
310:1 317:23
**surface** 152:11
**surfaced** 156:25
**surfaces** 139:25
**surprised** 112:12
**surrounded** 184:16
**survives** 111:23
**suspect** 84:15 89:19
92:9 108:12
195:20 198:13
**sustain** 197:11
223:3 250:23
**Swanson** 128:22
129:5 130:10
**swear** 195:7
**swearing** 176:21
181:14
**sweet** 288:11
**swore** 166:21,25
191:20 193:10
199:3
**sworn** 78:5 144:2
147:25 175:11
297:23 298:9
299:17
**syncs** 57:10
**system** 39:7

———————
**T**

**t** 3:4 235:2
**Tab** 118:2,3,4
266:17 267:2
269:5,5 270:18
273:18,20
**table** 61:13 62:11
226:16
**tactics** 53:23
**take** 25:4 33:17
40:18,22 55:3
59:16,25 64:10
68:11 77:15 82:3
87:23 89:11 96:7
112:10,10,11
117:24 118:19,21
118:22 134:9

146:7,8 147:11
167:3 202:11
204:7,15,24 211:6
212:6 213:12
220:18 224:25
231:2 259:24
287:19,23 288:16
293:3 294:12
304:25 305:4
**taken** 1:11 8:17
9:19 38:15 74:21
96:2 98:2 130:22
130:25 154:23
156:19 159:21
192:2,4 194:2
262:1 297:18
298:21 311:24,25
319:7
**takes** 147:23 216:23
224:7 315:16
**talc** 7:3 53:21 89:8
90:17 110:24
115:13 116:11,17
116:18,19 117:4
120:18 123:23
124:6,7 126:1
127:11 129:4,7,9
129:10,14,21
133:5,10,12 134:1
135:24 148:4,17
151:5 156:21
158:18 160:6,7
178:1 198:20
199:5,11,12,15
244:9,12 248:8
249:5 256:19
257:10 258:12
268:18 270:24,24
272:19 273:11
275:13 276:11,19
276:20 277:7
278:23 279:2,5,7
289:8 290:9,9
294:3 295:7 297:9
297:20 300:11
**talk** 9:10 11:15
31:13,14,16 41:22
44:18 50:2 65:10
87:23 102:19
103:10 114:25
140:1 185:14
188:17 189:6
233:13 235:22
237:1 242:8 253:9
272:23 289:6,17

311:3 316:7
**talked** 31:18,22
38:16 93:9 126:9
186:24 207:12
311:21
**talking** 15:25 23:22
68:8 73:24 81:1
103:13 129:6,6
141:2 189:2
191:13 193:3
194:2 220:11
226:8 227:3 228:9
235:4 241:23
247:5 249:12
273:5 277:14
278:9 279:16
282:7 299:24
302:9,10 312:10
316:13
**talks** 83:20 93:22
146:2 187:24
189:22,23 191:3
196:18
**tangent** 101:25
**target** 185:20
**task** 265:1
**TATE** 1:22,22
**Tech** 11:1 122:6
127:8,9 128:11
**technical** 117:1
118:2,3,5 119:7
119:10,15,21
204:22 266:5,7
267:1,5,22 268:6
268:12 269:16
271:1,6 289:17
290:3
**technicals** 303:7
**Tee** 246:22
**TELEPHONIC** 3:1
**tell** 10:6 21:20 23:3
48:25 56:11 59:5
59:24 64:1,4
94:12 100:22
103:16 105:13
106:1 113:7
115:21 118:8
119:9 121:25
123:15 127:18
137:22 149:6,8
197:14 200:21
203:20 207:4,25
208:1 214:9
226:11 232:12
234:12 236:16

237:2 242:2
253:14 267:3
268:19 274:24
280:8 281:14
284:25 293:17
304:16 310:11,15
311:14 314:24
315:14
**telling** 21:10 30:5,6
36:4 71:8 115:12
116:10 120:14
141:5 181:19
241:12 278:14
288:16 315:2
**tells** 33:8 39:8 59:4
60:19 250:16
269:18
**tempted** 88:22
**tend** 286:1
**tender** 206:5
**term** 97:9 102:9
141:6 214:18
270:2 303:6
**terms** 20:7 29:7
103:5 104:4
113:10 122:21
140:2 160:16
179:21 207:13
217:19 233:22
274:23 280:1,22
283:25 284:1
**terribly** 103:18
313:12
**test** 83:1 86:22
127:6 135:24
222:24 271:25
272:2 273:24
275:21,24 293:24
295:25,25 296:3
297:21
**tested** 279:5
**testified** 122:1
130:19 132:21
145:1 148:5
156:21 172:12,25
173:3,9 198:23
256:5
**testifies** 135:22
142:11
**testify** 138:15
156:15,23 175:7
297:8,12
**testifying** 137:7
**testimony** 7:8 32:8
43:15 110:25

123:1 143:23
144:2,5,16,18
145:17 148:5
152:25 172:22
173:6 174:7
175:11,13 199:2
265:8 277:12
278:6 297:23
298:9 299:3
**testing** 10:15 121:1
123:19 126:22
129:20,22 132:6,7
136:24 138:2,15
146:5,13 167:11
168:14,17 176:11
176:18,19 177:24
179:2 263:17
265:11 269:3,4
271:4 272:3,8,9
273:2 276:18
278:25,25 279:12
279:13 294:22
295:23 296:18
297:5
**tests** 123:7 125:23
132:12,15 135:23
136:25 144:24
151:22,24 152:2,3
175:6,6 198:19,21
264:23 265:9
268:22 270:17,17
271:18,18 272:11
276:14,16 289:21
295:13
**Texas** 122:6
**thank** 7:22 13:13
16:20 18:24 34:10
39:14 41:19,20
48:4 71:25 72:4
74:19 77:5 78:23
78:24 81:21,24,25
92:3 99:2 107:12
128:7 151:8 161:8
206:9 211:14
212:16 235:13,24
262:2,9 280:14,18
301:3 305:17,18
306:1,2 314:19,20
315:22 318:20
**theirs** 61:3
**theory** 250:22,23
263:1,2
**thereof** 44:2
**thesauruses** 222:10
**thin** 259:11

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 353

| | | | | |
|---|---|---|---|---|
| **thing** 93:18,20 97:3 | 135:3 144:12 | 318:16 | **tie** 95:8 174:19 | 87:1 161:24 162:8 |
| 98:15 114:20 | 149:15 153:15 | **thinking** 16:19 | **tiered** 282:13 | 162:10 163:13 |
| 121:15,15 135:1 | 154:24 156:4 | 127:20 179:18,21 | **ties** 56:23 | **titled** 161:17 |
| 139:15 150:13 | 158:1,2,8 161:5 | 261:8 | **time** 7:16 9:6 11:7 | **today** 17:21 38:23 |
| 157:1 163:24 | 176:25 179:15 | **thinks** 6:4,6 272:14 | 14:18 17:16,24 | 78:11 80:16 81:14 |
| 177:5 186:1 | 180:7 181:18 | 272:18 283:20 | 18:1 21:14 23:4,4 | 81:16 111:15 |
| 215:15 216:12 | 186:21 187:5,6 | **third** 7:1,6 18:20 | 24:12,19 30:14 | 164:4 167:10 |
| 222:11 223:7 | 188:1,8 195:3 | 20:21 36:3 45:17 | 33:16,18 36:16 | 184:25 185:10 |
| 235:14 249:17 | 196:1,12,13 | 45:24 55:12 58:23 | 55:3 57:7 58:7,22 | 186:22 187:7 |
| 259:12 261:20 | 197:15,18,19,21 | 67:20 68:2,3,12 | 60:4 62:22,24,24 | 197:8,9,15 198:17 |
| 265:25 272:16 | 199:22 201:6,11 | 68:21 74:20,25 | 62:24,24 66:1,23 | 206:17 209:8 |
| 292:9 299:16 | 201:21 202:5 | 75:7 77:9,16 | 69:9 71:17 76:17 | 211:18 212:19 |
| 316:25 | 204:15,19 206:2 | 84:25 93:4 103:22 | 94:17 95:7 97:21 | 214:7 219:10 |
| **things** 9:8 12:20 | 207:2,13,22 208:8 | 118:5 215:14,17 | 97:23 98:11,12 | 222:15,17 226:10 |
| 26:17 32:17 38:11 | 208:23 209:1,11 | 221:4 229:24 | 101:10 106:6 | 230:17 232:4 |
| 39:6 43:21 52:4 | 209:17,18,24 | 248:16 268:20 | 111:24 113:24 | 239:8 250:20 |
| 56:15 78:14 81:5 | 210:6 213:4,10 | 269:17 270:18 | 114:1 116:9 120:2 | 253:13 259:16 |
| 102:24 111:8 | 214:6,24 218:2 | 295:3,10,11 | 125:25 127:21 | 269:4 276:18 |
| 122:2 124:14 | 219:3,21 220:4,23 | 311:17 312:5 | 135:14,18,19 | 283:19 286:3 |
| 142:17,20 143:13 | 221:4 222:6,7,10 | **Thomas** 3:8 | 139:8 140:12 | 299:25 305:13 |
| 156:14 174:1 | 222:15 224:11,11 | **Thorn** 2:21 5:10 | 142:8,15 152:10 | 306:17 307:20 |
| 182:5 184:10 | 224:15 225:3,16 | **thorough** 10:16 | 154:22 157:6 | 316:24 318:15 |
| 192:15 197:2 | 226:6,9,15 227:5 | **thought** 10:5 16:15 | 159:18 163:17 | **today's** 259:7 |
| 206:22 226:7 | 227:12 228:8,18 | 24:15 25:11 116:1 | 167:15 174:10 | **told** 17:2 26:5,10 |
| 229:12 239:21 | 228:22,25,25 | 124:25 132:12 | 175:24 179:3 | 33:15 50:15 54:19 |
| 241:24 249:13 | 229:12 230:7,11 | 136:4,18 145:9 | 185:2,25 186:2,9 | 54:20 55:20 60:8 |
| 269:7 274:22 | 230:14,19 231:14 | 149:10 161:18 | 186:12 187:9,17 | 97:20 111:5 |
| 275:21,22 277:5 | 231:15 233:21 | 163:1 170:5 218:3 | 189:2,3,15 191:2 | 116:15,21,24 |
| 281:20 286:16 | 237:24 238:17 | 257:10,14 262:5 | 196:14 198:6,7 | 129:15 130:13 |
| 293:18 306:3 | 239:15 241:7 | 263:12 306:10 | 209:22 214:13 | 140:5 149:9 |
| **think** 8:4 14:21,22 | 242:14 245:2,11 | **thousand** 228:7 | 216:3,19 219:18 | 152:13 153:5 |
| 15:3 16:2,8 18:18 | 247:4,7,9,15,16 | **thousands** 9:25 | 241:10 246:15 | 160:6,8 164:4 |
| 22:8 24:20 25:2 | 248:13 251:1,2 | 143:6 | 247:4,9,22 248:14 | 165:8 175:12 |
| 25:12 29:4,11,24 | 253:12,22 254:15 | **threaten** 258:14 | 249:20 251:5 | 182:1 198:24 |
| 30:19 31:8 32:23 | 255:3,7,25 260:12 | **threatened** 147:6 | 254:17 258:16 | 199:11 203:21 |
| 33:3,22 34:20 | 260:14 261:6,11 | **three** 19:4 88:19 | 260:23 261:18 | 206:25 209:22 |
| 36:20 37:25 38:5 | 261:16,19 262:23 | 89:24 123:21 | 262:25 265:22 | 258:10 260:16 |
| 38:6 39:15 40:2,4 | 263:1,4,7 264:13 | 125:24 126:6 | 267:15 268:16 | 268:15 271:2 |
| 40:5,6,16,21,25 | 265:10,16 267:14 | 132:11 133:10 | 280:13 281:16 | 275:5,11 288:19 |
| 41:8,14 55:5,6,15 | 268:1,6 269:10 | 134:12,15 137:7 | 284:21 286:3 | 291:25 294:18 |
| 57:12 58:19,19 | 272:20 274:11 | 147:22 165:5 | 287:23 288:15,16 | 299:15 301:19 |
| 60:12 61:8 63:9 | 276:2,23 278:21 | 167:11,21 168:2 | 291:8,15 292:16 | 302:25 304:13 |
| 65:3,13 66:10 | 281:6,8,25 282:18 | 177:21 180:15 | 293:22 300:24 | 315:5 317:19 |
| 68:18 69:5 70:20 | 283:15,22,24 | 196:22 200:21 | 301:6,8 305:17 | **Tom** 5:19 |
| 70:25 71:10,16 | 284:6,11 285:7,18 | 202:3,4 206:11 | 307:10 314:24 | **Tompkins** 69:23 |
| 73:22 74:3 76:20 | 285:19 286:13 | 214:14 216:22 | 319:7 | **tongue** 153:11 |
| 77:11 78:13,21 | 288:23,24 291:8 | 234:14,17 235:10 | **timelines** 280:24 | **top** 81:1 215:6 |
| 80:15 81:1,11 | 292:6 296:10 | 297:7 311:9 | **timely** 67:15 81:20 | **topic** 17:14 31:10 |
| 98:14 100:6,15 | 303:5 304:4,12 | **three-part** 83:1 | **times** 153:8 209:8 | **tort** 67:15 68:5 |
| 101:4,9 103:24 | 306:21 307:9 | **thresholds** 79:6 | 228:7 270:19 | 75:25 |
| 106:9 107:5 | 308:11,16 309:4 | **threw** 293:24 | **timing** 158:4 219:17 | **Tortfeasor** 43:23 |
| 108:20 109:13 | 309:14,25 313:4,9 | **throw** 41:4 208:17 | 235:6 | 47:7 70:2 |
| 110:14 112:1 | 313:19,22 314:4 | 304:22 | **tip** 103:15 | **Tortfeasors** 51:2 |
| 113:7,9 115:2 | 315:18 316:6,25 | **throwing** 178:16 | **tired** 6:14 | **Tortorella** 3:9 5:21 |
| 118:19 119:19 | 317:4,12,14 | **thrown** 264:19 | **title** 47:20 83:20 | **torts** 43:25 |

USDC, District of NJ                   Williams, et al. v. BASF Catalysts, LLC, et al.                          Friday
C.A. No. 2:11-cv-01754-JLL-JAD              Special Master Conference                            February 23, 2018

Page 354

total 133:24
totality 94:17 95:21
   97:11 199:16
   200:1,3
totally 280:22
touch 306:11
touched 192:25
touchstone 59:14
town 155:24
trace 116:18 117:3
   120:11 121:4,22
   122:18,19,21,22
   123:1,6 126:2
   132:23,24 133:2,3
   133:21 135:23
   136:24 144:25
   198:25 268:13
   273:8,11 274:21
   276:15 277:6
tracks 156:7
trample 293:14
transcript 1:10 6:24
   7:15 8:20,21,23
   9:15,16 11:16,18
   13:4 15:6 16:2
   19:9,24 28:6
   128:10 132:15
   144:10 190:14
   319:6
transcripts 9:9
transfer 290:22
transition 291:11
transmission 289:22
   294:3
transom 304:23
transpire 236:21
transpired 158:24
traveled 10:17
treating 96:5 216:11
tree 310:9,9,10,10
trees 310:4,7,9
tremolite 120:19
Trenton 133:6
trial 42:15 43:10,25
   44:9 46:1 47:6
   58:4 59:11,24
   60:2,7,11,12,25
   65:21 66:2,7 67:2
   67:3 68:11 69:10
   69:11,18 70:6,18
   72:19,21 79:4
   83:9 86:21 111:23
   260:2 295:6
trials 51:12
tried 121:25 154:3

263:5 264:8
   273:25 278:13,15
trigger 62:7 153:21
   179:5 242:24
   255:15
triggered 71:14
triggers 61:24 62:1
Triglia 9:10 137:1
   299:4
Trivial 78:5
trouble 64:5 80:6
   265:25 312:6
troubled 35:20
troublesome 304:15
   304:17
trucks 278:22
true 54:9 68:6,24
   76:15 96:10,18
   98:11 123:18
   125:15 127:2
   142:4,5,6,24
   145:14 148:6
   151:23 152:8,11
   183:9 199:20
   247:25 249:9
   255:25 260:20
   278:19 280:13
   292:6 297:14
   303:1 308:8 319:6
truncated 28:3
trusted 284:1
truth 95:3,6,9 96:24
   97:5,14 100:15,18
   219:11
truthful 144:22
   145:18
truthfully 256:5
try 23:4 34:17 41:18
   51:16 55:12 58:5
   60:5 103:8 111:17
   140:9 161:12
   241:2 247:1
   288:13 313:8
trying 9:22 41:13
   53:16 90:21 153:3
   169:13 185:13,16
   192:10 198:2,2,5
   208:9 244:22
   250:7 251:6,15
   262:25 264:5,17
   265:17 273:7
   279:23 280:23
   298:3,5 305:22
   307:15 309:4
Tuesday 28:12

29:15 315:20,21
Tunis 3:7 5:17,18
turn 19:5 138:20,22
   138:22 204:12
   205:6 206:10
   210:13 211:7,10
   215:16 231:3
   273:12 299:3,5
turned 137:14,20
   138:1,1 139:19
   157:22 229:16
   311:8
turns 98:12 130:17
   270:23 284:20
Twain's 17:22
twice 8:24
two 2:3,15 8:14 9:2
   10:22 14:6,23
   26:1 32:17 41:21
   41:21 51:1 65:14
   70:4 72:25 79:6
   82:1,14 83:13
   88:12,19 89:23
   95:8 97:5 105:16
   107:22 110:7
   112:25 124:6
   125:24 133:9,19
   133:20 143:9
   168:13 175:6
   182:5 193:5
   197:17 198:10
   200:22 206:11
   214:2 222:9
   233:18 235:18
   239:10,21 258:16
   258:18,20 259:9
   260:6 267:7
   302:11 303:3
   306:2 311:5,6
   312:9
two-step 84:4
type 121:13 271:7
typically 107:21

U

ultimate 108:11
ultimately 72:17
   104:23 301:12
uncertain 72:19,20
unclear 292:23
   293:2,9
uncover 207:15
uncovered 206:17
undercut 264:5
underlying 20:15

26:7,12 27:4
   32:12,15 112:20
   232:18 233:17
   250:16
underneath 166:14
underscore 264:18
   286:5
underscores 262:24
understand 14:2
   16:9,24 30:3 36:6
   36:9 41:17 52:19
   69:3 74:9 76:12
   76:19 77:2 94:19
   95:13 103:19
   105:8 141:8,24
   144:11 153:22
   154:20 164:16
   180:19 182:3,16
   182:19 183:4
   185:23 188:15
   195:15 200:14
   202:22 210:15
   227:4,4 230:9
   232:8 269:24
   287:24 290:17
   296:16 301:11
   304:3,9 305:5,9
understanding 8:1
   215:12 265:11
understands 38:9
   41:12
understood 50:23
   56:14 76:6 208:22
Unh-unh 55:22
uninformed 237:2
unique 221:8
United 1:1 150:17
   155:15 272:14,18
universe 183:1
   211:2 221:18
   240:1 243:10
   291:19
unnecessary 285:20
unquote 20:8 21:8
   43:12,16 44:9
   82:23 86:23 88:4
   89:10 91:4 123:10
unrebutted 207:1
unreliable 124:2
   132:10 144:24
   175:15 271:18
   272:2,12,14,18
   294:13
unsettleable 61:6
unsupplemented

15:2
untethered 39:7
untrue 85:6 163:10
   206:25
unusual 137:16,17
   137:18,19,24
   138:6
use 69:22 79:17
   89:25 93:12 125:8
   127:9 147:19
   204:23 221:8,18
   222:13 225:16
   270:23 308:2,6,9
uses 278:3
usual 139:14
uttered 97:22

V

vacate 148:20
vacuum 104:7
   112:17
Van 274:20 275:6
   276:21
vanilla 208:15
various 259:25
vastly 65:23
venerable 100:25
   101:13,17 193:3
Venn 128:14
venued 73:4
verbatim 163:12
verdict 50:18 67:25
verified 198:21,22
   294:2
verifies 137:1
   173:25
verify 167:18
Vermont 142:24
version 224:16
versus 44:3,3 46:20
   48:16 49:7,11,15
   49:16 50:2,4 51:1
   51:8 53:8 58:16
   60:3 67:4,12
   69:23 86:16
   162:18 186:13
   235:10 313:18
vest 71:11
videotape 132:1,18
view 14:7 25:23
   29:13 31:3 34:25
   89:11 101:3
   197:20 223:5
   225:15 233:18
   260:16,17 261:16

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 355

282:10 308:15
**viewed** 101:17
**Village** 1:23
**Villanova** 203:11
**Vince** 5:4
**VINCENT** 2:23
**violate** 293:14
**violated** 302:7
**violates** 61:23
**violating** 184:2
**violation** 92:11
198:14 200:8
298:17
**virtually** 147:4
153:5 313:20
**vitiate** 79:21
**vitiated** 260:23
**voicemail** 39:5,8
**volunteer** 47:25
**vs** 1:5

**W**

**wait** 74:7 94:5
189:22
**waiting** 47:24
**waive** 57:7 197:5
**waived** 27:24 29:3
35:12 47:11 75:24
76:1,18 77:4,8,10
83:25 90:15
**waiver** 26:4 45:14
46:12 83:2
**waiving** 233:25
**walk** 248:1 261:18
265:16 276:24
278:13,16
**walked** 133:24
134:7
**want** 6:9 12:19
15:24 17:9,15
21:19 33:12 34:19
40:1,2 54:24 57:3
57:4 62:12 69:5
70:6 74:2 76:24
77:14 78:17 88:8
99:25 100:2
106:21 107:5
115:12 116:11,12
117:24 120:8
128:17 136:8
141:3 142:19
146:22,24 152:16
152:17 159:16
164:17 167:3
171:11 174:10,12

182:2,9,10 184:1
184:9 187:8 190:2
190:4 192:7
197:21,23 200:12
201:15 202:11,12
202:14 204:3
207:21 212:8,19
221:24 222:14
230:23 233:23,25
235:9,25 236:15
237:22 238:9,23
239:5,10,25 240:1
245:12 259:24
261:15,17,18
267:1,12 273:20
276:4 280:15
281:14 283:24
284:4,23 285:6,19
286:4,14 287:5,7
288:3 289:8
293:14 304:5,8,17
304:20,20 314:24
314:25 315:4,24
**wanted** 10:19 33:21
72:25 99:17 127:5
145:8 178:5 183:7
187:3 209:24
210:7 229:14
237:12 262:13,21
264:15 265:4,15
266:3 267:19
268:2 271:12
272:6,23 275:8
306:11,14
**wanting** 17:20
**wants** 57:5 90:25
91:24 115:25
249:14
**warrant** 85:10
**Warren** 3:7
**warts** 254:11
**Washington** 2:10
**wasn't** 54:23 56:1
64:13 125:22
131:5,8 138:21
139:7 145:14
160:10 165:1
171:2 184:12
246:3 249:3
268:25 269:1
295:7,8 296:6
306:4,7 311:7
**waste** 120:16 138:14
284:21
**wasted** 33:16,17

**watch** 140:4
**watching** 281:6
**waving** 290:1
**way** 32:9,7,22
40:17 41:3 54:14
56:16 63:23 64:12
64:12 66:16 70:12
74:13 79:23 82:14
100:21 102:18
108:8 114:21
116:5 125:18
141:3,25 144:23
144:25 168:22
177:9 185:16,17
188:20 196:5
220:8 227:19
244:16 245:7
248:3,4 260:16,17
261:7 268:4
289:18 291:6
292:1,2,12 294:4
301:16 302:21,21
304:24 307:14
**ways** 26:2 101:13
260:10
**we'll** 11:7,14 16:19
36:17 74:12,23
81:19 112:3
116:12 126:11
140:1 141:25
142:5 152:17
155:25 204:24
205:3 206:22
209:19 231:7
234:6 259:6
281:11 286:21
300:4,8 305:5,15
315:23 317:1
**we're** 13:25 15:17
17:14 20:10 35:4
39:7 40:6,9 41:8
41:13,14 44:18
48:5,5,6,15 52:17
55:20,23 57:15
60:2 61:13,14,14
64:16 69:18 70:21
70:21 72:15,17
73:24 76:13 78:3
78:9,13,16,21
79:23 81:1 82:1
92:12,15 98:14
99:4,12,18 101:9
102:17 103:20,21
114:25 118:16
122:16 136:9,20

147:17 149:24
150:8 177:20
181:6 182:4 189:2
202:9 204:1,22
211:21 223:24
226:8 227:3 228:9
230:19 234:1
235:4,9 236:19
242:2 247:4
250:14 262:6
279:11,12,13,16
280:20 282:23
283:24 292:24
298:2,3,5 299:24
300:20 308:16
309:4 310:13
312:10 315:18
316:19,21 317:15
**we've** 9:21,23 30:15
33:3,22 38:16
40:4 65:11 79:25
81:25 109:22
110:21 151:22
153:5 154:3
163:20 181:23
182:1 188:21
189:19 198:17
200:2,5 214:12
232:4,14,16
233:21 234:2
239:3 262:24
264:17 273:16
286:2 292:1
300:21 306:12,15
306:21 309:17
312:5 316:16
**Wednesday** 203:9
203:10 236:5
301:2,5 314:13
**weekend** 22:25
284:14 306:3,6
**weekends** 25:10
299:19
**weeks** 15:21 234:14
234:18 235:10,18
312:9
**weigh** 58:1
**weighs** 118:20
**weight** 12:12 13:6
16:5 88:24 168:10
**Weiner** 150:15
151:4
**welcome** 4:2 118:18
310:20
**Wengerd** 19:9,12,23

20:6,20 22:19,22
23:18 30:8 38:12
39:2
**Wengerd's** 21:13
25:3 33:17
**went** 10:21 11:1,20
41:1 48:13 54:18
55:21 101:25
105:4 127:2,8
132:5,7,13,15,16
138:9,12 142:11
153:2 155:12
156:16 161:12
164:13 169:16
171:21 172:9,15
176:10 184:10
186:2 190:6
196:22 207:19
231:19 256:11
258:14 295:3,10
302:17 318:8
**weren't** 125:10
164:21 165:1
249:4 278:10
295:8
**Westfall** 9:2 11:17
11:20 123:22
135:11 137:8,11
138:10,19 139:20
143:24 144:1,2,10
144:17 155:23
156:10,11 157:3,5
162:18 165:14,17
165:19 169:8
188:19,23,24
189:23 191:4,14
191:16,19 193:22
247:22 251:11
256:1,2,9,17,20
257:9,16,21 261:5
261:6,8 292:15
**wet** 300:4
**whatever's** 300:23
**whatsoever** 267:22
**Whittaker** 162:18
**whoa** 122:7 257:3,3
**Whoops** 256:11
**wife** 17:19 101:10
131:13,22 147:9
147:10,20
**wife's** 131:17
**WILLIAM** 1:17
**Williams** 1:3 20:14
24:25 25:16 28:12
28:24 29:16 31:19

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 356

| | | | |
|---|---|---|---|
| 32:11 33:15 | world 10:2,3 34:20 | 89:7 101:7,11 | 51:22 53:17 | 194:13,16,17 |

32:11 33:15
**win** 103:21
**wind** 60:2
**wise** 65:5 197:18
  308:19 316:10
**wit** 250:4
**withdraw** 24:2
  229:2,18 231:22
**withdrawing** 304:1
**withdrawn** 148:18
**withheld** 15:15
  47:16 107:19
  122:21 175:22
  181:9 183:14
  184:17 197:1
  202:4 301:15
**withhold** 113:12,13
  179:16 298:10
**withholding** 178:1
  179:1 297:20
**witness** 32:2 36:22
  36:23,25 96:4,7,8
  122:5
**witnesses** 34:1
  151:15 169:17
  171:19 256:5
**won** 297:17
**wonder** 157:16
**wondering** 98:17
**Woodland** 1:15
**word** 61:24 72:3,5,6
  218:21 244:23
  278:3 286:5
**words** 23:7 84:7
  93:13 97:7 112:25
  134:23 163:13
  187:8 204:12
  221:8,14,16
  274:21 286:6
**work** 22:8 29:25
  38:11,24,25 39:16
  41:3 70:12 84:18
  89:4 102:18
  139:17,19 158:20
  160:10 164:15
  179:13 216:18
  221:24 245:21,25
  317:13
**worked** 32:24 33:22
  128:23 152:14
  154:24 176:21
**working** 21:10
  169:3 249:5 317:2
**works** 154:15,19,20
  219:13

**world** 10:2,3 34:20
  133:2,4 244:11
**worst** 285:12
**worth** 40:16 106:10
  247:6 291:23
  298:23
**worthwhile** 99:19
**wouldn't** 68:22
  145:7 284:4,23
  285:16
**wrap** 77:20
**writ** 255:17
**write** 17:24 18:1
  105:18,19 149:7
  281:18
**writing** 33:18 65:9
  105:16 315:25
  316:3
**written** 56:4 165:7
**wrong** 10:6,7 56:20
  94:12 148:8 150:6
  176:3 178:10,13
  221:11 226:4,7
  249:16 285:10
  298:16
**wrongdoing** 258:22
**wrongful** 213:9
  245:4 247:18
  249:7,22 254:22
  254:24 260:9
**wrote** 64:6 151:3
  199:9,10
**www.tate-tate.com**
  1:25

**X**

**X** 121:14 163:13
**x-ray** 289:20
**XI01040** 319:19
**XRD** 294:4

**Y**

**Yankees** 261:9
**yeah** 30:4 31:15
  37:19 67:6 129:3
  130:6 132:5 135:7
  170:23 173:22
  228:1,23 231:13
  232:10 234:6
  261:25 284:10
  317:12
**year** 39:6 46:4
  134:15 277:16
  278:20
**years** 39:21,22 64:7

89:7 101:7,11
  112:9 133:10
  134:12,15 139:25
  147:23 165:5
  169:6 194:2,20
  196:22 213:25
  215:11 216:22
  246:15 251:8
  255:2 275:19
**years'** 247:6 291:23
**yellow** 188:6
**yesterday** 6:3,12
**yield** 28:22
**yon** 60:23
**York** 2:20 148:8
  149:21
**Young** 44:3 46:20
  48:16 49:6,10,15
  49:16,22,23 50:2
  50:4 51:1,8 53:8
  58:16 60:3 68:19
  77:21
**younger** 237:22

**Z**

**zeros** 269:13

**0**

**0.3** 274:6,11
**01** 274:3
**07059** 3:7
**07102** 3:3
**07929** 3:10
**08002** 1:16
**08055** 1:24

**1**

**1** 20:16 24:4 28:5
  210:22 215:16
  239:21 263:8
  264:6 281:12
  282:8,17
**1,000,800** 133:9
**1,800** 134:12
**1.8** 277:14
**10** 19:15 30:16
  80:13 169:19
  171:20 240:25
  280:21 281:10
  286:23 287:19
  311:8
**10:05** 1:13
**10005** 2:20
**11** 8:24 17:19
**12** 20:25 28:6 46:24

51:22 53:17
**120** 213:25 301:8
**12th** 19:25
**13076** 269:13
**133** 169:21
**14** 52:2 65:9
**14th** 20:3
**15** 8:12 20:22 88:9
  198:10 313:16
**150** 177:10 213:25
**15th** 209:18
**16** 6:23 8:24 20:9,23
  85:20 87:5
**169** 185:9
**16th** 21:3
**17** 2:20 77:15 87:10
  190:9,18,23
**171** 186:16
**1735** 1:11
**176** 209:20
**17B** 190:19
**17th** 8:4 10:3 15:11
  21:9
**18** 20:1,6 40:14 41:1
**182** 209:20
**18th** 2:15
**19** 117:16
**19103** 2:4,16
**1960** 215:9 218:12
**1967** 115:10
**1970** 251:25
**1970s** 115:8,11
  249:4,12 251:21
  255:10 263:18
  271:21 272:4
  275:12 279:6
**1972** 120:13,19
  271:3,25 272:8
  275:19,22
**1973** 115:19,22
  120:16
**1977** 120:17,21
  272:9
**1978** 266:24
**1979** 10:13,14 83:1
  126:5 127:2
  170:12,18 186:8
  273:2 274:2
  275:15,20,24
  276:14 278:22
**1980s** 53:19 115:11
  141:19 248:25
**1982** 135:13 207:19
  248:9
**1983** 6:23 193:15

194:13,16,17
  278:6 302:4
**1984** 130:1 187:22
**1988** 191:17 193:10
**1989** 190:9,23
  193:10
**1992** 114:2
**19th** 3:3

**2**

**2** 20:16 55:11
  103:12,13,18
  197:24 207:2
  220:9,12 224:7
  264:7 269:5
  270:18 282:17
  309:5 312:12
  313:13
**2/13/79** 274:5
**2:11-cv-01754-JL...**
  1:2
**20** 20:25 21:25
  139:25 291:23
**200** 1:15
**20005-5793** 2:10
**2000s** 245:14
  263:20
**2001** 2:3
**2004** 155:20
**2005** 191:13,18
  193:11,16 194:1
  194:19 195:5
**2005-2006** 165:18
**2006** 114:17,18
  155:20 158:7,8
  160:3 165:4
  207:20 253:2,3
  290:5,14 291:4,17
**2008** 255:1
**2009** 114:21 147:5
  147:22 159:20
  206:17 207:8
  245:8 251:21,24
  255:2 290:5
**2010** 207:11
**2011** 40:23 160:13
  160:15 208:2
**2012** 86:17 278:6
**2014** 215:17
**2017** 14:11 19:7,19
  19:25 20:9 42:1
  49:24 51:10 82:9
  263:4
**2018** 1:8 6:21 7:12
  20:10,11,18 21:8

USDC, District of NJ
C.A. No. 2:11-cv-01754-JLL-JAD

Williams, et al. v. BASF Catalysts, LLC, et al.
Special Master Conference

Friday
February 23, 2018

Page 357

21:13 39:6 42:12
   45:2,6 46:14
   85:20 87:5,10,18
   90:19 91:8,8
   319:19
**208** 86:17
**20th** 6:21 23:16
**21** 7:12 20:25 21:13
   21:16,23 23:25
   190:13,16
**210** 1:15
**21B** 190:7
**21st** 21:6 22:4 29:24
   81:8 236:3,4,5
   238:2 314:23
**22** 20:16 24:4 83:23
   194:2
**22nd** 5:16 24:22
   25:2 273:2 274:1
   316:12
**23** 1:8 20:25 21:7
   28:6 194:19
**232** 83:1
**24** 19:20 20:1 40:13
   41:1 42:12 45:2
   88:6
**247** 90:19
**25** 3:6 101:11
   209:11
**26** 319:19
**26th** 263:4
**27** 19:7 42:1
**28** 87:24
**28th** 203:11 314:13
**29** 82:25 273:18,20
**2900** 2:3
**2A:84A-20(2)** 92:11
**2A:84A-20(2)(a)**
   82:18
**2A:84A-20(2)(c)**
   44:15
**2nd** 14:11 82:9
   87:18

_____ **3** _____
**3** 136:5,19 177:2
   220:10 269:5
   270:18 273:17,19
**3:30** 140:8 203:22
**30** 64:7 89:7 169:6
   247:6 251:8
**30(b)(6)** 154:14
   155:5
**300,000** 133:17
**3000** 2:15

**316** 75:15 77:15
**316-317** 75:11
**317** 74:24 75:9,14
**33** 204:17 265:19
   268:11
**34(b)(2)(C)** 47:13
**35** 88:12 209:11
   234:22 304:20
   311:8
**350** 74:24
**365** 42:1,21
**368** 19:8
**37** 83:23
**37.1** 45:4 47:1
**370** 82:10
**38** 101:6

_____ **4** _____
**4** 20:16 136:6,11,11
   136:14 215:5
   216:9 273:17
**4:7-5(c)** 46:2
**40** 271:13 272:7
**408** 85:21
**409** 87:5
**40s** 143:19
**410** 87:11
**414** 42:12
**415** 45:2
**42** 274:4
**424** 45:6
**425** 46:15
**426** 87:19
**43** 88:7
**430** 46:24
**434** 20:4
**437** 3:10
**44** 88:5,20 90:24
   157:13 229:10,14
   233:7,24 234:19
   304:22
**442** 20:12
**443** 6:22
**444** 23:25
**445** 7:13
**45** 228:12 272:24
   273:1
**450** 270:19
**47** 128:5,6 275:4
**48** 275:6
**48th** 1:11
**49** 274:19
**4E** 273:16

_____ **5** _____

**5** 20:19 24:4 28:6
   45:6 46:14
**5/17/79** 128:1
**5:45** 318:23
**50** 173:21
**502** 32:21,22
**502(d)** 23:24
**504(2)(a)** 82:19
**50s** 143:19 218:14
**51** 169:17
**519** 86:17
**520** 1:23
**538** 86:23
**56** 277:25

_____ **6** _____
**6** 91:7
**60** 234:15,17,20
   237:13,14 238:9
   238:11,13 282:22
   282:24 314:22
**600,000** 134:16,18
   134:19 278:19
   279:9
**61** 88:1 200:20
   201:2 210:17,21
   211:5
**636-8283** 1:24
**655** 2:9
**66** 245:12 255:1
**6th** 38:16

_____ **7** _____
**7** 20:16 90:19
   117:19 130:1
   187:22
**7.1(i)** 24:7
**7/13/2009** 196:17
**7/22/2005** 191:2
**7/23/2005** 189:22
**70** 215:11
**70s** 168:22 245:7,14
   247:22 248:11,11
   248:22 251:10,10
   255:21
**75** 300:22
**79** 128:20 171:4
**79J-4** 274:4

_____ **8** _____
**8** 20:25 90:14
   117:19,21,23
   118:1
**80** 2:20 215:11
**800** 1:24

**80s** 130:22 131:1
   169:5 248:12
   263:20
**83** 135:22
**856** 1:24

_____ **9** _____
**9** 20:18 21:21 24:4
   91:8 117:21,23
   118:2,4 266:3
   267:2
**90s** 49:24 263:20
**983-8484** 1:24
**9th** 19:18 20:11
   22:5